DAVID H. KRAMER, State Bar No. 168452
MAURA L. REES, State Bar No. 191698
LAUREN GALLO WHITE, State Bar No. 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

BRIAN M. WILLEN (*Pro Hac Vice Forthcoming*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.,<br><br>        Defendants<br>———————————————————<br>YOUTUBE, LLC and GOOGLE LLC;<br><br>        Counterclaimants,<br><br>    v.<br><br>PIRATE MONITOR LTD,<br><br>        Counterclaim Defendant.<br>——————————————————— | CASE NO.: 3:20-cv-04423-JD<br><br>**YOUTUBE AND GOOGLE'S ANSWER AND COUNTERCLAIMS**<br><br>**JURY TRIAL DEMANDED** |

**PRELIMINARY STATEMENT**

Since its founding in 2005, YouTube has gone far above and beyond its legal obligations to assist copyright holders in protecting their rights. It has developed best-in-class processes for removing allegedly infringing materials pursuant to the Digital Millennium Copyright Act ("DMCA"), which protects online services like YouTube from claims of infringement by their users. It has also invested well over a hundred million dollars to pioneer industry-leading copyright management tools like its Content ID system.

Precisely because YouTube's novel copyright management tools are so powerful, they must be used with care. These special tools enable users to automatically (or at the touch of a button) remove content from YouTube or block it from appearing in the first place. Misused or put in the wrong hands, these tools can be used to censor videos that others have every right to share through YouTube. These tools can also enable users to wrongfully claim ownership rights in others' content or to take for themselves revenue that rightly belongs to others.

Plaintiffs' claims in this case offer an especially pointed example of why YouTube limits access to Content ID. Both Pirate Monitor and Maria Schneider complain that they have not been allowed access to Content ID. But Pirate Monitor has clearly demonstrated why it cannot be trusted to use that tool properly. As set forth In YouTube's Counterclaims, Pirate Monitor has engaged in widespread abuse of the DMCA's notice-and-takedown process, going so far as to upload hundreds of videos to YouTube under false pretenses only then to claim, through false DMCA notices, that those same videos were infringing. This was apparently a ruse to obtain access to Content ID, and when it failed Pirate Monitor responded with this lawsuit. As for Schneider, she is suing YouTube on copyrighted musical works that she and her agents licensed YouTube to use. Not only that, despite Schneider's claims that she has no access to Content ID, her own agent in fact used the tool to generate revenue from those same musical works on her behalf. Use of Content ID requires far greater care and candor.

Plaintiffs' claims of entitlement to use Content ID are badly misguided; their claims of copyright infringement even more so. Defendants YouTube, LLC ("YouTube") and Google LLC

("Google," and collectively, "Defendants") hereby answer the Complaint ("Complaint.," Dkt. 1) and assert Counterclaims against Plaintiff Pirate Monitor LTD.[1]

### DEFENDANTS' ANSWER

To the extent the paragraphs ("Paragraphs") of the Complaint are grouped under headings and subheadings, Defendants respond generally that such headings and subheadings (some of which are repeated below for reference only and which do not constitute admissions) state legal conclusions and pejorative inferences to which no response is required. To the extent a response is necessary, Defendants deny each and every heading and subheading in the Complaint and incorporate by reference this response in each Paragraph below as if fully set forth herein.

Further, Defendants object that, rather than a short and plain statement of Plaintiffs' allegations and claims required by Fed. R. Civ. P. 8, the Complaint is an overlong narrative with lengthy Paragraph after lengthy Paragraph of advocacy. The complex rhetoric and built-in assumptions in the Complaint make straightforward responses often impossible.

Except as expressly admitted herein, Defendants deny any and all allegations as set forth in the Complaint. Defendants expressly reserve the right to amend and/or supplement their Answer as may be necessary. Defendants further answer the numbered Paragraphs in the Complaint as follows:

1. Defendants lack knowledge or information sufficient to form a belief about Plaintiffs' alleged ownership of copyrighted works. Defendants deny the remaining allegations in Paragraph 1.

2. Defendants admit that YouTube provides certain users with a tool known as "Content ID" for the purpose of managing copyrighted works. Defendants deny the remaining allegations in Paragraph 2.

---

[1] On September 21, 2020, Plaintiffs voluntarily dismissed all claims against Defendant Alphabet Inc. (Dkt. 33). This Answer and Counterclaims are accordingly made on behalf of Defendants YouTube, LLC and Google LLC.

3.      Defendants lack knowledge or information sufficient to form a belief about Plaintiffs' alleged "lack [of] resources and leverage necessary to combat copyright infringement." Defendants deny the remaining allegations in Paragraph 3.

4.      Defendants lack knowledge or information sufficient to form a belief about the allegation that "watching[ing] more than one billion hours of videos every single day ... equat[es] to approximately 5 billion videos viewed each day." Defendants otherwise admit the allegations in Paragraph 4.

5.      Defendants deny the allegations in Paragraph 5.

6.      Defendants deny the allegations in Paragraph 6.

7.      Defendants admit that they generate revenue from targeted advertising. Defendants deny the remaining allegations in Paragraph 7.

8.      Defendants admit that YouTube provides certain users with a tool known as "Content ID" for the purpose of managing copyrighted works, and that the tool scans videos uploaded to YouTube and comparing them against files previously provided to YouTube by copyright owners. Defendants also admit that an uploaded video that matches copyright material submitted through Content ID may receive a Content ID claim. Defendants further admit that copyright owners who use the Content ID tool can then choose to block that video, license and monetize that video, and/or track viewership statistics. *See* "How Content ID works," https://support.google.com/youtube/answer/2797370?hl=en. Defendants deny the remaining allegations in Paragraph 8.

9.      Defendants admit that YouTube provides certain users with a tool known as "Content ID" for the purpose of managing copyrighted works. Defendants further admit that YouTube also provides a notice-and-takedown system for the purpose of managing copyrighted works. Defendants deny the remaining allegations in Paragraph 9.

10.     Defendants admit that YouTube provides certain users with a tool known as "Content ID" for the purpose of managing copyrighted works; that Content ID screening occurs, among other times, at the moment a user uploads a video to YouTube; and that such screening

may prevent the public availability of the uploaded video, at the Content ID user's election. Defendants further admit that YouTube also provides a notice-and-takedown system for the purpose of managing copyrighted works. Defendants deny the remaining allegations in Paragraph 10.

11.     Defendants deny the allegations in Paragraph 11.

12.     Defendants admit that YouTube assesses "strikes" for copyright violations and bans repeat copyright infringers from its platform. Defendants admit that the DMCA creates a safe harbor from liability for copyright infringement to which Defendants are entitled. Defendants deny the remaining allegations in Paragraph 12.

13.     Defendants admit that YouTube has received DMCA takedown requests from Plaintiff Maria Schneider and from Pirate Monitor LLC. Defendants further admit that Plaintiffs have not been individually approved to use the Content ID tool. Defendants deny the remaining allegations in Paragraph 13.

14.     Defendants deny the allegations in Paragraph 14.

15.     Defendants deny the allegations in Paragraph 15.

**PLAINTIFFS**

16.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16.

17.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17.

**DEFENDANTS**

18.     Defendants admit that YouTube, LLC, is a Delaware limited liability company with its principal place of business at 901 Cherry Avenue, San Bruno, California 94066. Defendants also admit that in 2006, YouTube was purchased by Google and since that purchase YouTube has operated as a wholly owned and controlled subsidiary of Google. Plaintiffs' allegations regarding operation and control of the YouTube website and that YouTube "conducts business as Google" are vague and ambiguous. As a result, Defendants lack knowledge or

information sufficient to form a belief about the truth of those allegations. Defendants deny the remaining allegations of Paragraph 18.

19. Defendants admit that Defendant Google LLC is a Delaware limited liability company with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Defendants further admit Google has owned and controlled YouTube since late 2006, and that Google is a wholly owned and controlled subsidiary of Alphabet. Plaintiffs' allegation that "YouTube and Google also combine both products for purposes of Google's AdWords advertising program...." and its allegation regarding testing of search links are vague and ambiguous. As a result, Defendants lack knowledge or information sufficient to form a belief about the truth of those allegations. Defendants deny the remaining allegations of Paragraph 19.

20. Defendants admit that Alphabet Inc. is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Defendants also admit that Google is a wholly owned subsidiary of Alphabet, and that Google and YouTube report revenue through Alphabet. Defendants deny the remaining allegations of Paragraph 20.

## JURISDICTION

21. Defendants admit that the Complaint purports to assert claims for copyright infringement, but Defendants deny that the Complaint alleges adequate factual or legal predicates for those claims and otherwise deny the allegations in Paragraph 21.

22. Defendants admit the allegations in Paragraph 22.

23. Defendants admit that YouTube and Google are corporate citizens of the State of California. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23.

24. Defendants admit this Court has personal jurisdiction over them for this matter, that they are headquartered in this judicial district and transact substantial business and generate revenue in this district. Defendants further admit that YouTube's physical address for receipt of DMCA takedown requests regarding allegedly infringing content on YouTube is in California and in this district. Defendants deny the remaining allegations in Paragraph 24.

25.     Defendants admit the allegations in Paragraph 25.

26.     Defendants admit the allegations in Paragraph 26.

### NATURE OF THE ACTION

27.     Paragraph 27 sets forth legal contentions to which no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27.

28.     Paragraph 28 sets forth legal contentions to which no response is required. To the extent that a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28.

29.     Paragraph 29 sets forth legal contentions to which no response is required. To the extent that a response is required, Defendants deny that Plaintiffs have accurately summarized the 1976 Copyright Act, and deny the remaining allegations of Paragraph 29.

30.     Defendants deny the allegations in Paragraph 30.

31.     Defendants deny the allegations in Paragraph 31.

32.     Defendants admit the allegation that "YouTube, now the world's most popular online video site, launched in 2005." Defendants deny the remaining allegations in Paragraph 32.

33.     Defendants admit that, as a general matter, the video files that users upload to YouTube are automatically transcoded for safety, security, and accessibility. Defendants further admit that YouTube generates revenue from its website. Defendants deny the allegations in Paragraph 33 to the extent they purport to characterize how the video file transcoding process works in all circumstances, and deny the remaining allegations of Paragraph 33.

34.     Defendants admit that YouTube provides users with an ability to search for and view video content on the YouTube platform in web browsers and on mobile devices. Defendants also admit that searches for content on the YouTube platform will return results (if any) in the form of links to web pages where users can view video content. Defendants further admit that the search results pages and video content web pages on YouTube sometimes contain additional information about that video content, such as the title of the content supplied by the

uploader and the number of times that the content has been viewed. Defendants deny the remaining allegations in Paragraph 34.

35.     Defendants admit that the YouTube platform provides users with the optional ability to embed video content on web pages hosted by other web domains. *See* https://support.google.com/youtube/answer/171780?hl=en. Defendants further admit that the YouTube platform provides users with the optional ability to share links to video content through a variety of channels, including email messages. *See* https://support.google.com/youtube/answer/57741?hl=en&ref_topic=9257102. The ability to embed and share links to video content and the manner in which video content is embedded and shared depends on a variety of conditions, including privacy settings. For instance, users have the option to disable embedding of video content that they have uploaded. Defendants therefore deny the allegations in Paragraph 35 to the extent they purport to describe how the embedding and sharing functions work in all circumstances, and deny the remaining allegations of Paragraph 35.

36.     Defendants deny the allegations in Paragraph 36.

37.     Defendants admit that the YouTube platform may generate recommendations for video content via computer algorithms depending on a user's device and settings, and that such recommendations take into account a variety of factors to enhance user experience. Defendants admit that YouTube provides an "AutoPlay" feature that users can choose to disable and that the cited article quotes a YouTube representative as stating: "We also wanted to serve the needs of people when they didn't necessarily know what they wanted to look for."  Defendants deny the remaining allegations in Paragraph 37.

38.     Defendants deny the allegations in Paragraph 38.

39.     Defendants deny the allegations in Paragraph 39.

40.     Defendants admit that growth in the total number of users and videos is one of many factors that may influence YouTube's business. Defendants deny the remaining allegations in Paragraph 40.

1      41.     Defendants admit that YouTube generates revenue through advertising.

2  Defendants further admit that it requires users to accept its Terms of Service

3  (https://www.youtube.com/static?tgemplate=terms), which incorporate by reference Google's

4  Privacy Policy (https://policies.google.com/privacy?hl=en). Defendants also admit that user

5  engagement with video content on YouTube is one of many factors that may affect advertising

6  spend on the YouTube platform.  Defendants deny the remaining allegations in Paragraph 41.

7      42.     To the extent the allegations of Paragraph 42 purport to paraphrase and

8  characterize various extrinsic documents, Defendants deny that Plaintiffs do so correctly.

9  Defendants deny the remaining allegations in Paragraph 42.

10      43.     Defendants admit that Google once provided a service known as Google Video.

11  Defendants deny the remaining allegations in Paragraph 43.

12      44.     Defendants admit that approximately 15 years ago, a low-level Google employee

13  wrote an email that mischaracterized YouTube's copyright policy. Defendants further admit that

14  Google later acknowledged that Google was mistaken about YouTube's copyright policy.

15  Defendants deny the remaining allegations in Paragraph 44.

16      45.     Defendants admit that "Google purchased YouTube in October 2005 for $1.6

17  billion." To the extent the allegations of Paragraph 42 purport to paraphrase and characterize

18  various extrinsic documents, Defendants deny that Plaintiffs do so correctly. Defendants deny

19  the remaining allegations in Paragraph 45.

20      46.     Defendants admit that there are "over 500 hours of videos uploaded every

21  minute" to YouTube. Defendants deny the remaining allegations in Paragraph 46.

22      47.     Defendants admit that YouTube generates revenue through advertising.

23  Defendants also admit that user engagement with video content on YouTube is one of many

24  factors that may affect advertising spend on the YouTube platform.  Defendants deny the

25  remaining allegations in Paragraph 47.

26      48.     Defendants lack knowledge or information sufficient to form a belief about the

27  truth of the allegations in Paragraph 48.

28

49.     Defendants admit that YouTube generates revenue through advertising, including, as a general matter, a substantial percentage of the revenue generated by advertisements placed on YouTube's homepage (www.youtube.com) and search results pages. Defendants also admit that user engagement with video content on YouTube is one of many factors that may affect advertising spend on the YouTube platform. Defendants deny the remaining allegations in Paragraph 49.

50.     Defendants admit that the YouTube Partner Program allows for monetization of video content. Defendants further admit that together with its creators, YouTube generated approximately $15.1 billion in gross advertising revenue in 2019. Defendants deny the remaining allegations in Paragraph 50.

51.     Defendants admit that it requires YouTube users to accept its Terms of Service (https://www.youtube.com/static?template=terms), which incorporate by reference Google's Privacy Policy (https://policies.google.com/privacy?hl=en). Defendants deny the allegations in Paragraph 51 to the extent they mischaracterize those documents. Defendants admit that YouTube has approximately 2 billion monthly users. Defendants further admit that some of those users may convey information "concerning their preferences for topics, products, and services" depending on, among other things, their privacy settings. Defendants admit that the information provided by YouTube users about their preferences may be used to help YouTube grow its business (depending on user settings among other factors). Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that "Google is now estimated to control 40% of the entire online advertising market". Defendants deny the remaining allegations in Paragraph 51.

52.     Defendants admit that the DMCA creates a safe harbor from liability for copyright infringement to which Defendants are entitled. Defendants deny the remaining allegations in Paragraph 52.

53.     Defendants admit that YouTube generates revenue through advertising. Defendants deny the remaining allegations in Paragraph 53.

1    54.    Defendants deny the allegations in Paragraph 54.

2    55.    Defendants deny the allegation in the final sentence of Paragraph 55. Defendants

3    lack knowledge or information sufficient to form a belief about the truth of the remaining

4    allegations in Paragraph 55.

5    56.    Defendants admit that YouTube provides certain users with a tool known as

6    "Content ID" for the purpose of managing copyrighted works, and that the tool works by

7    scanning videos uploaded to YouTube and comparing them against files previously provided to

8    YouTube by copyright owners. Defendants also admit that an uploaded video that matches

9    copyright material submitted through Content ID may receive a Content ID claim. Defendants

10   further admit that copyright owners who use the Content ID tool can then choose to block that

11   video, license and monetize that video, or track viewership statistics. *See* "How Content ID

12   works," https://support.google.com/youtube/answer/2797370?hl=en. Defendants deny the

13   remaining allegations in Paragraph 56.

14   57.    Defendants admit that YouTube provides certain users with a tool known as

15   "Content ID" for the purpose of managing copyrighted works, and that the tool works by

16   scanning videos uploaded to YouTube and comparing them against files previously provided to

17   YouTube by copyright owners. Defendants also admit that an uploaded video that matches

18   copyright material submitted through Content ID may receive a Content ID claim. Defendants

19   further admit that copyright owners who use the Content ID tool can then choose to block that

20   video, license and monetize that video, or track viewership statistics. *See* "How Content ID

21   Works," https://support.google.com/youtube/answer/2797370?hl=en. Defendants also admit that

22   the quoted language comes from a YouTube Help page, and that it is intended to provide one

23   example of an appropriate use case for the Content ID tool. *See* "Copyright Management Tools,"

24   https://support.google.com/youtube/answer/9245819?hl=en. Defendants deny the remaining

25   allegations in Paragraph 57.

26   58.    Defendants admit that Plaintiffs have not been individually approved to use the

27   Content ID tool. Defendants deny the remaining allegations in Paragraph 58.

28

59.     Defendants admit receiving a letter from a handful of congressional members in September 2019 that Plaintiffs have accurately excerpted. Defendants deny that the letter accurately characterizes the functionality of the Content ID tool or the choices available to copyright owners on the YouTube platform. Defendants deny the remaining allegations in Paragraph 59.

60.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 60.

61.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61.

62.     Defendants admit that Plaintiff Maria Schneider applied and was rejected for direct access to the Content ID tool in 2015. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62 to the extent that Plaintiffs allege that Maria Schneider directly applied for the Content ID tool on a second occasion.

63.     Defendants admit that YouTube is aware of having received multiple DMCA takedown requests from Plaintiff Maria Schneider since 2013. Defendants lack knowledge or information sufficient to form a belief about the validity of those requests or the truth of the allegation that the video content that was the subject of those notices contained her songs or infringed her copyrights.

64.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 64.

65.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 65.

66.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66.

67.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67.

68.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68.

69.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69.

70.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70.

71.     Defendants admit that Plaintiff Pirate Monitor LTD has not been approved to use the Content ID tool. Defendants deny the remaining allegations in Paragraph 71.

72.     Defendants admit that YouTube has received DMCA takedown requests from Pirate Monitor LLC. Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 72, including whether the DMCA takedown requests received by YouTube were valid or whether they pertained to content that actually infringed copyrights.

73.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73.

74.     Defendants deny the allegations in Paragraph 74.

75.     Defendants lack knowledge or information sufficient to form a belief about the allegations in the first sentence of Paragraph 75. Defendants admit that YouTube has received DMCA takedown requests from Plaintiff Maria Schneider and from Pirate Monitor LLC. Defendants deny the remaining allegations in Paragraph 75.

76.     Defendants admit that YouTube has received DMCA takedown requests from Plaintiff Maria Schneider and from Pirate Monitor LLC. Defendants deny the allegation that they were "aware of prior infringement concerning these very same works" that were the purported subject of the DMCA takedown requests received by YouTube. Defendants deny the allegation that they "repeatedly allowed further infringing videos (often the exact same videos) to be publicly performed, displayed, reproduced, or distributed". Defendants lack knowledge or information sufficient to form a belief about the remaining allegations in Paragraph 76.

77.     Defendants deny the allegations in Paragraph 77.

78.     Defendants deny the allegations in Paragraph 78.

79.     Paragraph 79 is a legal conclusion that purports to characterize Section 1202 of the DMCA. To the extent that a response is required, Defendants deny that Paragraph 79 accurately characterizes Section 1202.

80.     Defendants deny the allegation "that Defendants and their business model and systems routinely ignore ... CMI." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 80.

81.     Defendants deny the allegations in Paragraph 81.

82.     Defendants deny the allegations in Paragraph 82.

83.     Defendants deny the allegations in Paragraph 83.

84.     Defendants admit that the DMCA creates a safe harbor from liability for copyright infringement to which they are entitled. Defendants deny the remaining allegations in Paragraph 84.

85.     Defendants admit that the DMCA creates a safe harbor from liability for copyright infringement to which they are entitled. To the extent that Paragraph 85 purports to recite the provisions of the DMCA, Defendants deny that it does so accurately or completely and otherwise deny the allegations of Paragraph 85.

86.     Defendants deny the allegations in Paragraph 86.

87.     Defendants deny the allegations in Paragraph 87.

88.     Defendants admit that the DMCA requires the adoption and implementation of a repeat infringer policy. Defendants further admit that YouTube assesses "strikes" for copyright violations and that YouTube has adopted and reasonably implemented a policy that provides for the termination in appropriate circumstances of repeat infringers. Defendants deny the remaining allegations in Paragraph 88.

89.     Defendants deny the allegations in Paragraph 89.

90.     Defendants deny the allegations in Paragraph 90.

1  91.   Defendants deny the allegations in Paragraph 91.

2  92.   Defendants deny the allegations in Paragraph 92.

3  93.   Defendants deny the allegations in Paragraph 93.

4  94.   Defendants deny the allegations in Paragraph 94.

5  95.   Defendants admit that YouTube has received DMCA takedown requests from

6  Plaintiff Maria Schneider and from Pirate Monitor LLC. Defendants deny the remaining

7  allegations in Paragraph 95.

8  96.   Defendants admit that the DMCA requires accommodation of "standard technical

9  measures." Defendants lack knowledge or information sufficient to form a belief about the

10 allegations about "Pex and similar companies." Defendants otherwise deny the allegations in

11 Paragraph 96.

12  97.   Defendants deny the allegations in Paragraph 97.

13  98.   Defendants deny the allegations in Paragraph 98.

14  **CLASS ACTION ALLEGATIONS**

15  99.   Paragraph 99 is a legal conclusion to which no response is required. To the extent

16 a response is required, Defendants deny that there are sufficient factual or legal predicates in the

17 Complaint for class certification.

18  100.   Paragraph 100 is a legal conclusion to which no response is required. To the

19 extent a response is required, Defendants deny that there are sufficient factual or legal predicates

20 in the Complaint for class certification.

21  101.   Paragraph 101 is a legal conclusion to which no response is required. To the

22 extent a response is required, Defendants deny that there are sufficient factual or legal predicates

23 in the Complaint for class certification.

24  102.   Defendants admit that YouTube has more than two billion monthly users, which

25 YouTube estimates is "almost one-third of the Internet." Defendants also admit that YouTube is

26 localized in over 100 countries and can be accessed in 80 different languages. Defendants further

27 admit that users watch more than one billion hours of video every day and that on average, an

28

estimated 720,000 hours of content are uploaded to YouTube every day.  To the extent Paragraph 102 characterizes a third-party estimate regarding the content on YouTube in 2007, Defendants deny that it characterizes them correctly.  The remaining allegations in Paragraph 102 are legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

103.    Paragraph 103 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for class certification.

104.    Paragraph 104 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for class certification.

105.    Paragraph 105 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for class certification.

106.    Paragraph 106 and its sub-paragraphs are a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates for class certification.

107.    Paragraph 107 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for class certification.

## CAUSE OF ACTION I

### (Direct Copyright Infringement)

108.    Defendants reiterate their responses to the preceding paragraphs of this Answer to the Complaint as if fully set forth herein.

109.    Defendants deny the allegations in Paragraph 109.

110.    Defendants deny the allegations in Paragraph 110.

111.    Defendants deny the allegations in Paragraph 111.

1      112.    Defendants deny the allegations in Paragraph 112.

2      113.    Defendants deny the allegations in Paragraph 113.

3      114.    Defendants deny the allegations in Paragraph 114.

4                           **CAUSE OF ACTION II**

5                   **(Inducement of Copyright Infringement)**

6      115.    Defendants reiterate their responses to the preceding paragraphs of this Answer to

7  the Complaint as if fully set forth herein.

8      116.    Defendants deny the allegations in Paragraph 116.

9      117.    Defendants deny the allegations in Paragraph 117.

10      118.    Defendants deny the allegations in Paragraph 118.

11      119.    Defendants deny the allegations in Paragraph 119.

12      120.    Defendants deny the allegations in Paragraph 120.

13      121.    Defendants deny the allegations in Paragraph 121.

14      122.    Defendants deny the allegations in Paragraph 122.

15                           **CAUSE OF ACTION III**

16                   **(Contributory Copyright Infringement)**

17      123.    Defendants reiterate their responses to the preceding paragraphs of this Answer to

18  the Complaint as if fully set forth herein.

19      124.    Defendants deny the allegations in Paragraph 124.

20      125.    Defendants deny the allegations in Paragraph 125.

21      126.    Defendants deny the allegations in Paragraph 126.

22      127.    Defendants deny the allegations in Paragraph 127.

23      128.    Defendants deny the allegations in Paragraph 128.

24      129.    Defendants deny the allegations in Paragraph 129.

25      130.    Defendants deny the allegations in Paragraph 130.

26

27

28

1

2

## CAUSE OF ACTION IV

## (Vicarious Copyright Infringement)

3        131.    Defendants reiterate their responses to the preceding paragraphs of this Answer to

4    the Complaint as if fully set forth herein.

5        132.    Defendants deny the allegations in Paragraph 132.

6        133.    Defendants deny the allegations in Paragraph 133.

7        134.    Defendants deny the allegations in Paragraph 134.

8        135.    Defendants deny the allegations in Paragraph 135.

9        136.    Defendants deny the allegations in Paragraph 136.

10       137.    Defendants deny the allegations in Paragraph 137.

11       138.    Defendants deny the allegations in Paragraph 138.

12                              ## CAUSE OF ACTION V

13   ## (Removal of Copyright Management Information and Distribution of Altered or Missing

14                          ## Copyright Management Information)

15       139.    Defendants reiterate their responses to the preceding paragraphs of this Answer to

16   the Complaint as if fully set forth herein.

17       140.    Defendants deny the allegations in Paragraph 140.

18       141.    Defendants deny the allegations in Paragraph 141.

19       142.    Defendants deny the allegations in Paragraph 142.

20       143.    Defendants deny the allegations in Paragraph 143.

21       144.    Defendants admit that YouTube has received DMCA takedown requests from

22   Plaintiff Maria Schneider and from Pirate Monitor LLC. Defendants deny the remaining

23   allegations in Paragraph 144.

24       145.    Defendants deny the allegations in Paragraph 145.

25       146.    Defendants deny the allegations in Paragraph 146.

26       147.    Defendants deny the allegations in Paragraph 147.

27       148.    Defendants deny the allegations in Paragraph 148.

28

**PRAYER FOR RELIEF**

149.    Paragraph 149 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for class certification.

150.    Paragraph 150 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 150.

151.    Paragraph 151 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 151.

152.    Paragraph 152 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 152.

153.    Paragraph 153 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 153.

154.    Paragraph 154 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 154.

155.    Paragraph 155 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 155.

156.    Paragraph 156 is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that there are sufficient factual or legal predicates in the Complaint for the relief requested in Paragraph 156.

1

## AFFIRMATIVE AND OTHER DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendants assert the following affirmative and other defenses, and do so on information and belief as to the actions of others. Defendants do not concede that they bear the burden of proof or persuasion on any of these defenses. Defendants reserve the right to assert additional defenses in the event that discovery or further investigation demonstrates that any such defense is appropriate or applicable. In particular, given that Plaintiffs have failed to identify precisely what copyrighted works they claim were infringed, or to identify the allegedly infringing activity about which they complain with specificity, Defendants are unable to fully assess the defenses that may be available to them regarding any particular infringement claim.

### FIRST DEFENSE
### (Failure to State a Claim)

Plaintiffs' Complaint fails to state a claim for copyright infringement because it lacks legally sufficient allegations of, among other things, the material on YouTube that purportedly violates Plaintiffs' copyright, that Defendants engaged in any volitional conduct in regard to Plaintiffs' works and that Defendants had specific knowledge of the alleged infringement of those works by third parties. In addition, the Complaint fails to state a claim insofar as Plaintiffs purport to be asserting infringement claims based on copyrighted works that they have not actually identified in the Complaint or works that have not been registered with the Copyright Office. Moreover, the Complaint fails to state a claim based on Section 1202 because Plaintiffs have not adequately alleged Defendants acted with the requisite mental state.

### SECOND DEFENSE
### (DMCA Safe Harbors)

Plaintiffs' claims are barred in whole or in part because Defendants are protected by one or more of the DMCA Safe Harbors set out in 17 U.S.C. § 512 et seq. Most notably, Defendants are not liable for any alleged infringement that arises by reason of the storage at the direction of users of material residing on the YouTube service. *See* 17 U.S.C. § 512(c).

1

2

### THIRD DEFENSE
### (License)

3   Plaintiff Schneider complains that she has been denied access to YouTube's Content ID

4   system, but has long had that access through her agent who has expressly used Content ID to

5   generate revenue on her behalf using the Content ID system.  More generally, Plaintiffs' claims

6   are barred in whole or in part by licenses, consents, or permissions that Plaintiffs and their

7   agents, have granted to YouTube and Google, and/or to third parties who in turn have granted

8   licenses to YouTube and Google.

9   ### FOURTH DEFENSE
    ### (Fair Use)

10

11   Although the Complaint fails to identify any specific allegedly infringing activity on the

12   YouTube platform, such activity is not infringing to the extent it constitutes a fair use of the

13   underlying copyrighted material. *See* 17 U.S.C. § 107.

14   ### FIFTH DEFENSE
     ### (Copyright Misuse)

15

16   Plaintiffs' claims are barred in whole or in part by the doctrine of copyright misuse. For

17   example, and as set forth in Defendants' Counterclaims, Plaintiff Pirate Monitor LTD has

18   misused the copyrights it acquired by having its own agents upload material from those

19   copyrighted works to YouTube.

20   ### SIXTH DEFENSE
     ### (Estoppel)

21

22   Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel. YouTube has

23   relied on representations from Plaintiffs or their representatives or agents (including but not

24   limited to Modern Works Publishing and ASCAP) about their authorization to post and

25   YouTube's authorization to use all or portions of the copyrighted works at issue.

26

27

28

**SEVENTH DEFENSE**
**(Unclean Hands)**

Plaintiffs' claims are barred in whole or in part by unclean hands. For example, and as set forth in the Defendants' Counterclaims, Plaintiff Pirate Monitor LTD has attempted to fabricate infringement claims by having its own agents upload material from its copyrighted works to YouTube.

**EIGHTH DEFENSE**
**(Failure to Mitigate)**

Plaintiffs' claims are barred in whole or in part because Plaintiffs have failed to mitigate their damages, if any. Plaintiffs are, for example, well aware of the ability to request the removal from YouTube of allegedly infringing content using the process set forth in the DMCA. To the extent Plaintiffs failed to employ that process with respect to specific allegedly infringing material on the YouTube service, Plaintiffs have failed to mitigate their damages.

**NINTH DEFENSE**
**(Statute of Limitations)**

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations, which requires Plaintiffs to have brought their claims within three years after they had accrued. *See* 17 U.S.C. § 507(b).

**TENTH DEFENSE**
**(Substantial Non-Infringing Use)**

Plaintiffs' claims are barred in whole or in part based on the doctrine of substantial non-infringing use, although Defendants submit Plaintiffs bear the burden of proving the doctrine's inapplicability.

**ELEVENTH DEFENSE**
(*De Minimis* Use)

Although the Complaint fails to identify any specific allegedly infringing activity on the YouTube platform, such activity is not infringing to the extent it constitutes *de minimis* use of the underlying copyrighted material.

**TWELFTH DEFENSE**
(Putative Class Members)

Defendants allege that this lawsuit cannot proceed as a class action. Should the Court determine otherwise, Defendants may have numerous affirmative defenses and counterclaims against individual members of any alleged class, and accordingly Defendants reserve their right to assert those affirmative defenses and counterclaims in a timely fashion.

**PRAYER FOR RELIEF**

WHEREFORE, Defendants respectfully request the following relief:

1. A judgment in favor of Defendants denying Plaintiffs all relief requested in their Complaint in this action and dismissing Plaintiffs' Complaint with prejudice;

2. That Defendants be awarded their costs of suit, including reasonable attorney's fees; and

3. That the Court award Defendants such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendants demand a trial by jury on all issues so triable.

**<u>COUNTERCLAIMS</u>**

Counterclaimants Google LLC and YouTube, LLC (collectively "YouTube") have had limited time in which to investigate potential counterclaims in this action, and expect that further investigation may reveal further actionable conduct by Plaintiffs. YouTube will add additional claims as information regarding such misconduct comes to light. For now, YouTube asserts the

following Counterclaims against Pirate Monitor LTD ("Pirate Monitor") on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

1.      Pirate Monitor has misused the YouTube service and engaged in a fraudulent scheme to obtain access to YouTube's copyright management systems. Through agents using aliases to disguise their connection, Pirate Monitor uploaded roughly two thousand videos to YouTube, each time representing that it had the rights to upload that content and that the content did not infringe any third party copyrights. Shortly thereafter, Pirate Monitor invoked the notice-and-takedown provisions of the Digital Millennium Copyright Act ("DMCA") to demand that YouTube remove the very same videos its agents had uploaded. In those notices, Pirate Monitor represented that the videos were infringing its own copyrights or those of copyright owners it claimed to represent. Pirate Monitor's deceptive actions violated the law. It is clear that Pirate Monitor lied to YouTube, either when it uploaded the videos in the first place or when it requested their removal. Its misrepresentations were intended to fool YouTube into believing that Pirate Monitor could be trusted not to abuse YouTube's powerful copyright management tools, including Content ID. And its machinations render it liable to YouTube for breach of contract and fraud or, alternatively, constitute blatant violations of Section 512(f) of the DMCA.

**THE PARTIES**

2.      Counterclaimant Google is a Delaware limited liability company with its principal place of business in Mountain View, California. YouTube, a Google subsidiary, is a Delaware limited liability company with its principal place of business in San Bruno, California.

3.      YouTube offers an online platform, including a website and mobile applications, that, among other things, enables users to share videos they post with a global audience at no charge.

4.      Counterclaim Defendant Pirate Monitor is a limited company with its principal place of business at Intershore Chambers, 3rd Floor, Geneva Place, Road Town, Tortola, VG1110 British Virgin Islands.

5.      Pirate Monitor itself, or through agents and related entities, has operations in Hungary and California.

6.      Pirate Monitor has claimed in correspondence with YouTube that it represents various copyright holders and that it is authorized by them to request removal of allegedly infringing videos from the YouTube service.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367.

8.      Pirate Monitor is subject to this Court's personal jurisdiction because it has availed itself of the jurisdiction of this Court by filing the Complaint in this action and because it has minimum contacts with this District. The Court also has personal jurisdiction over Pirate Monitor because it consented to jurisdiction in this District in contractual agreements with Counterclaimants.

9.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(a) because this Court has personal jurisdiction over Pirate Monitor, because Pirate Monitor filed the Complaint in this district, and because Pirate Monitor consented to venue in this District in contractual agreements with YouTube.

## The YouTube Service

10.      Since its founding in 2005, YouTube has pursued the goal of providing a platform for users to share their video creations with the world. YouTube serves as an unparalleled medium for free marketing, exposure, and visibility for everyone from individuals to established corporate brands.

11.      YouTube also offers a worldwide audience the opportunity to access and watch an extraordinarily diverse library of original, creative expression.

12.      YouTube has never been a service devoted to promoting piracy or illegitimate uses of copyright works. Rather, YouTube is strongly committed to helping copyright owners

1  protect against the unauthorized use of their works on the service, and it has implemented

2  numerous industry-leading initiatives toward this end.

3  13.    While YouTube complies in all respects with safe harbor provisions of the Digital

4  Millennium Copyright Act ("DMCA"), YouTube's efforts in helping copyright owners and

5  content creators protect against unwanted use of their works goes far beyond what the law

6  requires.

7  14.    For example, YouTube has invested over $100 million to develop Content ID, a

8  best-in-class content identification system that uses digital fingerprinting technology to help

9  identify copyrighted materials. Using Content ID, rightsholders and/or their agents can be

10 automatically notified of user-uploaded videos that "match" what they claim are their

11 copyrighted works and can choose in advance what they want to happen when those videos are

12 detected, including options to "monetize" the videos, (i.e. earn advertising revenue when users

13 watch the videos) or to "block" the videos from appearing altogether.

14 15.    Content ID and YouTube's other scaled copyright management tools empower

15 users to automatically, or at the touch of a button, remove content from YouTube or block it

16 from appearing in the first place. The tools thus have the potential to be used improperly to

17 censor videos that others have every right to post and share through YouTube. Further, the tools

18 enable users to claim ownership rights in others' content, and to siphon to themselves revenue

19 that rightly belongs to others.

20 16.    Because of the potential for abuse of these scaled tools, YouTube limits access to

21 them, seeking to ensure that those who use them will do so responsibly, and will not cause harm

22 to YouTube, its users, or to other copyright owners.

23 **Users' Promises and Representations to YouTube**

24 17.    To create an account and post content on the YouTube service, users must

25 affirmatively accept the YouTube Terms of Service Agreement (the "ToS Agreement").

26 18.    Under the ToS Agreement in effect during all times relevant to these

27 counterclaims, users uploading content to the YouTube service represented to YouTube that they

28

"own or have the necessary licenses, rights, consents, and permissions to publish Content [they] submit." Users also granted YouTube a copyright license in and to any content they submit. And users promised that any "content [they] submit to the Service would not contain third party copyrighted material, or material that is subject to other third party proprietary rights, unless [they had] permission from the rightful owner of the material or [they were] otherwise legally entitled to post the material and to grant YouTube all of the license rights granted [under the ToS Agreement]."

19.     Under the applicable ToS Agreement, a user creating a YouTube account promised to provide "accurate and complete" identification information for the account to YouTube.

20.     Under the applicable ToS Agreement, a user is responsible for indemnifying YouTube for any claim arising from or relating to their use of the YouTube Service. That includes any claim arising from or relating to videos the user uploads to the service.

21.     In addition to accepting the terms of the ToS Agreement, and making the representations and promises it contains, before submitting content to the YouTube service, a user must again confirm the representations and promises in the ToS Agreement. And users are again expressly warned against submitting content that violates others' copyrights.

**Pirate Monitor's Abuse of YouTube**

22.     During the fall of 2019, Pirate Monitor, through authorized agents (collectively "Pirate Monitor"), created a series of accounts on YouTube. Each time it created a new account, Pirate Monitor affirmatively agreed to the ToS Agreement. But in order to deceive YouTube and in violation of the ToS Agreement, Pirate Monitor provided bogus account registration information. Rather than properly identifying itself as the account creator, Pirate Monitor used alternative account names to mask the relationship of the account creators and the accounts to Pirate Monitor.

23.     Pirate Monitor used these accounts to upload hundreds of videos to the YouTube service during 2019.

24.     Included in the videos that Pirate Monitor uploaded in 2019 were clips from the very works that Pirate Monitor now accuses Google and YouTube of infringing in this action, including numerous excerpts from the Hungarian film *Csak szex és más semi*.

25.     Through these disguised accounts, Pirate Monitor also uploaded hundreds of excerpts from the Hungarian film, *Zimmer Feri* to YouTube.

26.     Each time these videos were uploaded, Pirate Monitor was representing and warranting that the video did not infringe anyone's copyrights, and it expressly granted YouTube a license to display, reproduce, and otherwise use the videos in connection with the service. Pirate Monitor also represented that it owned or had the rights to upload and license the material contained in the videos.

27.     Pirate Monitor reconfirmed its representations and promises in the ToS Agreement during the upload process for each video.

28.     But shortly after uploading these videos, Pirate Monitor sent YouTube hundreds of takedown requests under the DMCA, in many instances for the same videos it had just uploaded through its disguised accounts. In those notices, Pirate Monitor represented that the videos that were the subject of the notices—videos that it had uploaded—infringed its copyrights or the copyrights of a party whom Pirate Monitor was authorized to represent. YouTube processed the substantial volume of DMCA takedown requests and removed the videos.

29.     Without the benefit of discovery, it is unclear which of Pirate Monitor's conflicting representations about these videos were accurate. But either way, Pirate Monitor has made misrepresentations on which YouTube relied.

30.     On the one hand, if Pirate Monitor *falsely* represented to YouTube that it had the authority to post the videos and that the videos did not infringe anyone's copyrights, then Pirate Monitor breached the ToS Agreement and perpetrated a fraud on YouTube. Had Pirate Monitor not made the representations to YouTube that it did, YouTube would not have allowed it to create accounts on the service, and it would not have allowed Pirate Monitor to upload content to the service.

31.     On the other hand, if Pirate Monitor *accurately* represented to YouTube that it had the authority to post the videos and that the videos did not infringe any third party's copyrights, then Pirate Monitor made knowingly false statements when it subsequently represented to YouTube in its DMCA takedown requests that those same videos were infringing.

32.     Pirate Monitor's serial uploads and DMCA takedown requests for the same videos were central to a scheme through which it hoped to gain access to YouTube's powerful copyright management tools, in particular Content ID.

33.     Pirate Monitor had previously applied for and been denied access to use YouTube's advanced copyright management tools.

34.     YouTube told Pirate Monitor that access to YouTube's copyrighted management tools was predicated in part on demonstrating both a need for such access, and a history of properly using the DMCA takedown request process.

35.     Pirate Monitor believed that it could demonstrate both the need for access, and a track record of valid DMCA takedown requests, by surreptitiously uploading a substantial volume of content through accounts seemingly unconnected to it, and then sending DMCA takedown requests for that same content.

36.     Instead of showing that it could properly use YouTube's tools, Pirate Monitor's deceptive and unlawful tactics established that it could not be trusted, and that YouTube was right in rejecting its request for access.

## COUNTERCLAIM I: Against Pirate Monitor

### Breach of Contract

37.     YouTube restates and realleges the preceding allegations of its Counterclaims.

38.     Pirate Monitor repeatedly agreed to be bound by the ToS Agreement.

39.     The ToS Agreement constitutes a valid, binding contract between Pirate Monitor and YouTube.

40.     YouTube has performed its obligations under the ToS Agreement, save for any that have been excused, including by providing YouTube services to Pirate Monitor.

41.     Pirate Monitor breached the ToS Agreement by, among other things:

  i. failing to provide complete and accurate identification information in the account creation process;

  ii. uploading videos to YouTube that infringed third-party copyrights.

42.     Pirate Monitor's breaches have proximately caused damage to YouTube, including among other things, the cost of investigating and processing Pirate Monitor's subsequent claims that the content it uploaded was infringing.

43.     To the extent that Pirate Monitor's claims in this action implicate content that Pirate Monitor itself uploaded to the YouTube service, the costs of defending the action as well as any liability also constitute damages proximately caused by Pirate Monitor's breaches of contract.

44.     Pirate Monitor is additionally obligated under its agreement with YouTube to indemnify YouTube for claims arising out of or relating to its use of the YouTube service. In seeking defense costs and any potential liability in this action as damages for Pirate Monitor's contract breaches, YouTube expressly preserves its separate entitlement to contractual indemnity and will amend its counterclaims to add a claim for that indemnity if Pirate Monitor refuses to honor its indemnity obligation.

**COUNTERCLAIM II: Against Pirate Monitor**

**Fraud**

45.     YouTube restates and realleges the preceding allegations of its Counterclaims.

46.     In connection with its upload of roughly two thousand videos to YouTube, mainly from August through November 2019, Pirate Monitor created more than a dozen YouTube accounts. Each time it created a new account, it promised YouTube in the ToS Agreement that any content it uploaded through the account would not infringe third party copyrights. But Pirate Monitor had no intention of honoring that promise. Rather, it intended to use the newly created accounts to upload material that infringed third party copyrights.

47.     Pirate Monitor repeatedly made this promise in the ToS Agreement with the intent of inducing YouTube to allow it to create YouTube accounts and use those accounts to post videos and other content to the YouTube service.

48.     Had YouTube known Pirate Monitor's true intentions, YouTube would not have allowed Pirate Monitor to create the accounts or post content on the service.

49.     Pirate Monitor further represented to YouTube through the ToS Agreement and again in the video upload process that it had the authority to post the videos that it did, and that the videos did not infringe any third party's copyrights.

50.     Those representations were false, and Pirate Monitor made those representations knowing they were false.

51.     Pirate Monitor made those representations with the intention of inducing YouTube to accept and allow to be uploaded the content that Pirate Monitor was uploading to the YouTube service.

52.     Pirate Monitor made the false representations it did because it knew that YouTube would not accept or allow to be uploaded the content unless Pirate Monitor made those false representations. If Pirate Monitor had not deceived YouTube in these ways, Pirate Monitor could not then have sent DMCA takedown requests to YouTube for that content, and could not have established the track record it hoped would gain it access to YouTube's copyright management tools.

53.     YouTube reasonably relied on Pirate Monitor's representations regarding the content Pirate Monitor uploaded by accepting the content for posting on the YouTube service. YouTube would not have accepted the content but for Pirate Monitor's false representations.

54.     Because it hid its intention not to honor its promises in the ToS Agreement, and because of the misrepresentations it made in the ToS Agreement and against in the upload process. Pirate Monitor was able to upload roughly two thousand videos to YouTube, and soon thereafter sent DMCA takedown requests for those videos.

55.     As a proximate result of Pirate Monitor's promises without intention to perform and false representations, YouTube has been damaged in an amount to be proven at trial, but including among other things, the cost of investigating and processing subsequent claims that the content Pirate Monitor uploaded was infringing.

56.     To the extent that Pirate Monitor's claims in this action implicate content that Pirate Monitor itself uploaded to the YouTube service, the costs of defending the action as well as any liability also constitute damages proximately caused by Pirate Monitor's promises without intention to perform and false representations.

57.     Pirate Monitor's conduct was undertaken with the intent to injure YouTube, and with a willful and conscious disregard of YouTube's rights, and constitutes fraud and malice under California Civil Code Section 3294. As a result, YouTube is entitled to an award of punitive damages against Pirate Monitor in an amount sufficient to punish Pirate Monitor and deter it from future misconduct.

**COUNTERCLAIM III: Against Pirate Monitor**

**(In the alternative to Counterclaims I & II)**

**Violation of 17 U.S.C § 512(f)**

58.     YouTube pleads Counterclaim III as an alternative to Counterclaims I & II, and incorporates the preceding allegations of Paragraphs 1 to 36 herein.

59.     Pirate Monitor repeatedly represented to YouTube in the ToS Agreement and in the upload process that it had the authority to post the videos that it did, and that the videos did not infringe any third party's copyrights.

60.     Those representations were true.

61.     Under the ToS Agreement, by virtue of uploading content to the YouTube service, Pirate Monitor granted YouTube a license to use that content in connection with the YouTube service.

62.     On numerous occasions thereafter, Pirate Monitor sent DMCA takedown requests to YouTube for content that Pirate Monitor itself had uploaded to YouTube.

63.     In its DMCA takedown requests, Pirate Monitor represented to YouTube that certain identified videos contained content that infringed its copyrights or the copyrights of a party Pirate Monitor was authorized to represent.

64.     Pirate Monitor's representations in those DMCA takedown requests regarding infringement were knowingly false. As Pirate Monitor knew well, the videos identified as infringing in its DMCA takedown requests were not infringing its copyrights or those of copyright owners that Pirate Monitor represented. In fact, Pirate Monitor itself had uploaded those same videos. In sending DMCA takedown requests to YouTube for videos it had uploaded, and presumably in other DMCA takedown requests as well, Pirate Monitor knowingly and materially misrepresented that material or activity on YouTube was infringing.

65.     YouTube, the service provider that received Pirate Monitor's DMCA takedown requests, relied upon Pirate Monitor's misrepresentations by removing or disabling access to the material Pirate Monitor falsely claimed to be infringing. But for Pirate Monitor's misrepresentations, YouTube would not have had to incur the costs of processing a multitude of notices and removing roughly 2000 videos. Further, as a result of Pirate Monitor's material misrepresentations, YouTube had to expend substantial additional sums on an investigation in an effort to detect and thwart such behavior. YouTube was therefore injured by Pirate Monitor's misrepresentations.

66.     The sheer number of Pirate Monitor's material misrepresentations in DMCA takedown requests demonstrates that it has little fear of the threat of monetary liability under Section 512(f). Further, YouTube has no certain means of identifying future misrepresentations that Pirate Monitor may make, and no ready means of calculating the harm that such misrepresentations would cause to YouTube or its users in terms of lost goodwill, lost audiences, and lost opportunities. To prevent such irreparable harm, injunctive relief barring Pirate Monitor from future misrepresentations in DMCA takedown requests is warranted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRAYER FOR RELIEF**

Wherefore, YouTube respectfully requests that the Court:

a.     Award damages against Pirate Monitor sufficient to compensate YouTube for the harm caused by Pirate Monitor's conduct;

b.     Award punitive damages against Pirate Monitor for its fraudulent conduct;

c.     Issue an injunction barring Pirate Monitor and all those in active concert with it from submitting notices of alleged infringement to YouTube that misrepresent that material on the YouTube service is infringing copyrights held or claimed to be held by Pirate Monitor or anyone it claims to represent.

d.     Award YouTube the costs of this action along with attorneys' fees pursuant to 17 U.S.C. § 512(f) against Pirate Monitor; and

e.     Award YouTube such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  September 21, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*
       David H. Kramer

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC
.