1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated; | Case Number: 5:20-cv-4423 |
| Plaintiffs, | **JOINT CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER** |
| vs. | |
| YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.; | |
| Defendants. | |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the *Standing Order for All Judges of the Northern District of California* and Civil Local Rule 16-9.

1. Jurisdiction & Service

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* This Court has original subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the proposed Class contains more than 100 persons, the aggregate amount in controversy allegedly exceeds $5,000,000 and at least one proposed Class Member is a citizen or subject of a foreign state and Defendants are citizens of the State of California. All Defendants have been properly served.

Page **1**

1   Defendants Google LLC and YouTube, LLC have asserted counterclaims against Pirate

2   Monitor LTD for breach of contract, fraud, and violation of 17 U.S.C § 512(f) based on Pirate

3   Monitor's alleged fraudulent and abusive misuse of the YouTube service.  The court has

4   original subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331,

5   1338(a), and 1367.

6

7   2.  Facts

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

8

9   **Plaintiffs' Statement:**

10          Plaintiffs, Maria Schneider and Pirate Monitor LTD ("Pirate Monitor"), bring a

11   putative class action against Defendants, YouTube, LLC ("YouTube") and Google LLC

12   ("Google") for copyright infringement and violations of the 1976 Copyright Act, 17 U.S.C. §§

13   501 *et seq*. (the "Copyright Act").  Plaintiffs hold the exclusive copyrights to multiple works

14   that have been displayed on YouTube in violation of the Copyright Act, despite having

15   previously notified Defendants that these works were being infringed. The putative class

16   members are likewise the exclusive copyright owners of registered and recognized valid

17   copyrights. These works, as well as millions of other works by Plaintiffs and the Class, have

18   been reproduced, distributed, displayed, and publicly performed on YouTube without

19   Plaintiffs' and the Class' authorization.

20          YouTube employs a two-tiered copyright enforcement system whereby the rights of

21   large copyright holders are protected while smaller copyright owners are not protected.  Large

22   creators, who have partnered with YouTube and Google, are provided with access to Content

23   ID, a digital fingerprint tool that compares videos uploaded to YouTube to a catalogue of

24   copyrighted material provided by those large copyright owners.  When an uploaded video

25   matches with a video protected by Content ID, the copyright owner then elects whether to

26   block or permit the display of the infringing video.  Plaintiffs and the putative class have

27   applied to be a part of the Content ID program but have either been rejected or received no

28   response.  Smaller rights holders, including Plaintiffs and the putative class, who are denied

Page **2**

1    access to Content ID, are relegated to a vastly inferior and time-consuming means of trying to
2    police and manage their copyrights, which includes locating the infringing material through
3    manual searches and then filing a takedown notice with YouTube.

4         Defendants perpetuate this two-tiered enforcement system to increase their profits by
5    maximizing user volume (through pirated content) and thus advertising revenue. YouTube
6    coordinates and profits from a two-sided market in which it drives both viewers and content
7    providers to its platform to maximize "network effects." Put simply, as the volume of videos
8    increases, the volume of video watchers increases, and the YouTube platform thus becomes
9    more attractive to advertisers. The two-tiered system increases volume and traffic to
10   YouTube's platform as it permits repeat infringers to upload copyrighted content.

11
12   **Defendants' Statement:**

13        Plaintiffs' claims have no merit. Since its founding in 2005, YouTube has gone far
14   above and beyond its legal obligations to assist copyright holders in protecting their rights. It
15   has developed best-in-class processes for removing allegedly infringing materials pursuant to
16   the Digital Millennium Copyright Act ("DMCA"), which protects online services like
17   YouTube from claims of infringement by their users. It has also invested hundreds of millions
18   of dollars to pioneer industry-leading copyright management tools like its Content ID system.

19        Precisely because YouTube's novel copyright management tools are so powerful, they
20   must be used with care. These special tools empower users to automatically (or at the touch of
21   a button) remove content from YouTube or block it from appearing in the first place. Misused
22   or put in the wrong hands, these tools can be used to censor videos that others have every right
23   to share through YouTube. These tools can also enable users to wrongfully claim ownership
24   rights in others' content or to take for themselves revenue that rightly belongs to others.

25        Plaintiffs' claims in this case offer an especially pointed example of why YouTube
26   limits access to Content ID. Both Pirate Monitor and Maria Schneider complain that they have
27   not been allowed access to Content ID. But Pirate Monitor has clearly demonstrated why it

28

Page **3**

cannot be trusted to use that tool properly. As set forth In YouTube's Counterclaims, Pirate Monitor has engaged in widespread abuse of the DMCA's notice-and-takedown process, going so far as to upload hundreds of videos to YouTube under false pretenses only then to claim, through false DMCA notices, that those same videos were infringing. This was apparently a ruse to obtain access to Content ID, and when it failed Pirate Monitor responded with this lawsuit. Schneider is suing YouTube on copyrighted musical works that she and her agents licensed YouTube to use. Not only that, despite Schneider's claims that she has no access to Content ID, her own agent in fact used the tool to generate revenue from those same musical works on her behalf. Use of Content ID requires far greater care and candor.

Finally, this case is not maintainable as a class action, including because of the overwhelming predominance of unique factual and legal issues applicable to the claims of copyright infringement raised by each putative class member – as demonstrated by the specific, highly individualized issues raised by the claims and conduct of named plaintiffs Schneider and Pirate Monitor.

**Plaintiffs' Response to Defendants' Answer and Counterclaims**

Defendants' Counterclaims and Affirmative Defenses have no merit. The Counterclaims provide a speculative account of third party behavior with no connection to Pirate Monitor beyond unsupported claims that these third parties are alleged "agents," "affiliates," or "aliases" of Pirate Monitor. Defendants do not even identify these so-called "agents," "affiliates," or "aliases" or allege any facts establishing an agency relationship. Conclusory allegations of agency, absent factual support, are defective. *See Am. Nat'l Red Cross v. United Way California Capital Region*, No. S-07-1236 WBSDAD, 2007 WL 4522967, at *10 (E.D. Cal. Dec. 19, 2007) ("The FAC does not, however, allege one fact that suggests such an agency relationship. This bare legal conclusion is not sufficient to withstand a motion to dismiss."); *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (holding that

*Form updated May 2018*

"conclusory allegations" of agency absent "any stated factual basis" are "insufficient as a matter of law").

Plaintiffs also dispute the factual allegations and legal theories in Defendants' Affirmative Defenses which also lack merit.  For example, Plaintiff Schneider never authorized anyone to license her works to YouTube or Google.

3.  Legal Issues
*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

**Plaintiffs' Statement:**

- Whether Defendants' actions violated the 1976 Copyright Act, 17 U.S.C. §§ 501 *et seq.* and caused harm to Plaintiffs and the putative class.

- Whether Defendants are protected from this lawsuit by the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA") which provides a safe harbor against copyright infringement claims for entities that formulate and enforce a policy of terminating repeat copyright infringers from their platform.

**Defendants' Statement:**

- Whether Plaintiffs have stated and can carry their burden of proving claims for direct or secondary copyright infringement, especially given their failure to conclusively identify the universe of copyrighted works at issue in the case, nor any material that Plaintiffs contend infringes their claimed copyrights.

- Whether Plaintiffs' claims are barred by defenses of license, estoppel and unclean hands (in addition to the DMCA safe harbor referenced above);

- Whether Plaintiffs' claims are barred by the doctrines of fair use and/or *de minimis* use, copyright misuse, and substantial non-infringing use;

- Whether this case can be maintained as a class action, including without limitation: (1) whether the claims or defenses of the representative parties are typical of the claims or defenses of the class (2) whether the representative parties will fairly and adequately

Page **5**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

protect the interests of the class; (3) whether common questions of law or fact predominate over any questions affecting only individual members and (4) whether class resolution is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(a)-(b); *see also Football Ass'n Premier League v. Youtube, Inc*., 297 F.R.D. 64 (S.D.N.Y. 2013) (denying certification of putative class action asserting copyright infringement claims against YouTube as a "'Frankenstein monster posing as a class action'")

- Whether Counterclaim Defendant Pirate Monitor LTD is liable for fraud, breach of contract, or violation of 17 U.S.C. 512(f) due to its conduct in relation to the YouTube service

4.  Motions

*All prior and pending motions, their current status, and any anticipated motions.*

There are no pending motions currently.  The Parties have entered into a stipulation requesting an Order from the Court that Plaintiffs and Counterclaim Defendants have until November 20, 2020 to answer or otherwise respond to Defendants' Answer and Counterclaims. *See* Dkt. No. 41.  Plaintiffs anticipate filing a motion for class certification and reserve their right to file a motion for summary judgment and a motion pursuant to Rule 12(c) directed against the counterclaims against Plaintiff Pirate Monitor.

Defendants currently anticipate filing a motion for summary judgment. In addition, as set forth below, Defendants believe there is a gating case management issue that can be addressed either through motion practice or as part of the case management process.

**Defendants' Position**

Plaintiffs' infringement claims are deficient because they have not conclusively identified the copyrighted works, nor any of the alleged infringements at issue in this case. The complaint identifies three works allegedly owned by each Plaintiff, but Plaintiffs have

Page **6**

*Form updated May 2018*

characterized those works as "representative."  The complaint identifies no allegedly

infringing videos on the YouTube service, instead alleging only that such videos exist.

For purposes of case management, to ensure that any case schedule can be met, to ensure

discovery is properly focused and to ensure preservation of relevant materials, Plaintiffs must

provide a complete identification of works and alleged infringements by an early date certain,

in the same way that a patentee must provide an identification of claims and infringement

contentions.  *See* Patent L.R. 3-1.

Plaintiffs' failure to identify works and infringements renders their complaint subject to

dismissal under Rule 12.  *See, e.g.,   Richtek Tech. Corp. v. UPI Semiconductor Corp.*, No. C

09-05659 WHA, 2011 U.S. Dist. LEXIS 5132, at *8 (N.D. Cal. Jan. 18, 2011) (Alsup, J.)

(granting motion to dismiss because complaint did not provide a "description of the acts or

works that allegedly infringed; Richtek's complaint makes only conclusory statements, reciting

the statutory acts that constitute copyright infringement without providing any factual

allegations to identify Maxchip's allegedly infringing acts or works); *Sega Enters., Ltd. v.

Accolade, Inc*., Case No. C-91-3871 BAC, 1992 U.S. Dist. LEXIS 4621, at *4 (N.D. Cal. Mar.

20, 1992) (Rule 12(e) motion for more definite statement is granted to the extent that SEL

must amend its complaint to specify the particular "other works" which are the subject to the

copyright claim and registration of those works, the acts constituting infringement of those

works, and the dates when infringement occurred); *Adobe Sys. v. Software Speedy*, No. C-14-

2152 EMC, 2014 U.S. Dist. LEXIS 173670, at *16-17 (N.D. Cal. Dec. 16, 2014) (Chen, J.)

("Adobe is ORDERED to amend its complaint to expressly list the trademarks and copyrights

it has a good faith basis for believing Defendants have infringed.").

Defendants hoped to handle the required identification as a matter of sound case

management, much as the patent local rules require a patent holder to specify the patent(s) at

issue, the claims at issue, and infringing instrumentalities.

Plaintiffs have refused to provide any such identification.  Instead, they seek to reserve

the right to add new copyrighted works and new accused infringements to the case whenever

they choose.  This would be like a plaintiff suing a company like Apple for infringement of a

Page **7**

patent, without identifying any accused products, and saying that it may identify dozens of additional patents and the accused instrumentalities as the case proceeds, or at the end of discovery.  Plaintiffs' offer to provide a list of their copyrighted works does not solve the problem.  Defendants need to know which of the works are at issue in this case and that Plaintiffs contend to be infringed.

Plaintiffs' approach would be highly prejudicial.  It is clear from the few works plaintiffs have specifically identified that there are serious problems with their claims.  For example, Plaintiffs either directly or indirectly appear to have licensed some or all of their works for use by YouTube.  Without knowing the full universe of copyrighted works that are at issue and what videos are accused of infringing those copyrighted works, Defendants cannot explore their license defense in discovery, nor other work-specific and video-specific issues such as the DMCA safe harbors, fair use, *de minimis* use, ownership and validity of copyrights, and more.  Complete identification of works in suit is necessary even to determine whether the works have been properly registered with the Copyright Office.  *Sega*, 1992 U.S. Dist. LEXIS 4621, at *4.  The rational management of this case requires that Plaintiffs conclusively identify the works and alleged infringements at issue in this case by a date certain and soon. If, thereafter, Plaintiffs wish to amend their complaint to add new works or new alleged infringements, they can seek leave to do so.

**Plaintiffs' Position**

Defendants' decision to refuse Plaintiffs access to Content ID has, by definition, denied Plaintiffs the ability to identify every instance of infringement of their protected works. Content ID—the digital tool in Defendants' exclusive possession and control—can identify instances of infringement for a copyrighted work.  Defendants have described it as a "powerful" tool that provides "best-in-class processes for removing allegedly infringing materials."  *Supra* Part 1.  It is axiomatic that Content ID could only "remov[e] allegedly infringing materials" if it was first able to identify those materials, (indeed, that is precisely why Plaintiffs sought access to Content ID, which requests were denied).  Moreover,

Page **8**

Defendants, not Plaintiffs, possess the content that has been uploaded to YouTube that has infringed or continues to infringe Plaintiffs' copyrighted works and the takedown notices sent by copyright owners which sought through far inferior means than Content ID to identify infringement of copyrighted works.  Plaintiffs require discovery to identify additional instances of infringement and Plaintiffs are thus unable to agree to Defendants' attempt to deprive Plaintiffs of that right through an arbitrary and legally unsupported procedural deadline separate from the discovery deadlines.

Defendants request both: (1) a list of all of Plaintiffs' copyrighted works that have been infringed and (2) a list of each and every instance of infringement.  As to the first category, contrary to Defendants' assertion, Plaintiffs are under no obligation to list each and every copyrighted work that has been infringed in their Complaint.  *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001) (rejecting defendants' argument that plaintiff needed "to state, in its complaint, every copyright relied on, every individual image in the magazines that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement").  Nevertheless, in an effort to avoid burdening the Court with this issue, Plaintiffs have offered to provide Defendants with a list of each of the named Plaintiffs' copyrighted works despite the fact that Plaintiffs believe that Defendants have the ability to determine that based on information they either have or to which they have access.

As to the second category—each and every instance of infringement—Defendants have not cited a single authority standing for the proposition that Plaintiffs must identify every instance of copyright infringement prior to discovery.  Indeed, the weight of the authority establishes that plaintiffs in copyright actions do not need to identify every instance of infringement.  *Marvel Enters., Inc. v. NCSoft Corp*., No. CV 04-9253RGKPLAX, 2005 WL 878090, at *2 (C.D. Cal. Mar. 9, 2005) ("Plaintiffs are not required to specify each and every instance of infringement. Therefore, Plaintiffs need not, as Defendants would suggest, identify the times, similarities, or other details of the alleged infringements in their pleadings.");  *Perfect 10*, 167 F. Supp. 2d at 1120 (denying motion to dismiss a copyright claim where the

Page **9**

*Form updated May 2018*

1  plaintiff identified the copyrights associated with a product and specified some but not all
2  alleged instances of infringement).
3          In sum, there is no support for Defendants' claim that Plaintiffs have an obligation to
4  do any more than they have done here.  It simply cannot be the case that Plaintiffs must
5  identify each and every instance of infringement when the very inability to identify each and
6  every instance of infringement absent access to Content ID is what drives this lawsuit.
7
8  5.  Amendment of Pleadings
   *The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for*
9  *amending the pleadings.*
10    **Plaintiffs' Statement:**
11         Plaintiffs do not currently expect to amend the factual or legal allegations in the initial
12  Complaint except for the fact that Plaintiffs have agreed to voluntarily dismiss Alphabet Inc.
13  as a Defendant based on an agreement with Defendants that Alphabet will cooperate in
14  discovery which is referenced below.  Should Defendants file a Motion to Dismiss pursuant to
15  the Federal Rules of Civil Procedure, or should Plaintiffs gain additional facts in discovery,
16  Plaintiffs are reserving their rights to amend the complaint.
17    **Defendants' Statement:**
18  Defendants reserve the right to amend their counterclaims or to add new parties if warranted
19  by information revealed in discovery. Defendants will address any proposed amendment if
20  Plaintiffs propose it, and are not agreeing to such amendments in advance.
21
22  6.  Evidence Preservation
   *A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically*
23  *Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R.*
   *Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues*
24  *reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*
25
26
27
28
                              Page **10**
*Form updated May 2018*

**Plaintiffs' Position**

Plaintiffs have advised Defendants that the Complaint refers to representative works for the named Plaintiffs in the Class Action Complaint and that the Class Action Complaint covers all content that may infringe work by class members who issued a takedown notice, and are not works covered by the Content ID program.  It is Plaintiffs' position that, among other evidence, all data related to successful takedown notices and content that has been subject to a successful takedown notice (whether such content has been removed by YouTube or a YouTube user) can and should be preserved.  Defendants are obligated to preserve all relevant materials for both the named Plaintiffs and the putative class.

Defendants have taken the position that preservation of evidence for the putative class is "impossible."  That is not the case.  As Plaintiffs have made clear, Defendants are currently able to identify all the evidence potentially relevant to both the named Plaintiffs and to the putative class as they have exclusive possession and control over: (i) all material and content uploaded to YouTube (including content that is no longer publicly accessible through the YouTube website); (ii) Content ID; and (iii) all takedown notices sent to YouTube identifying infringement of copyrighted works.  Despite Defendants' suggestions *infra*, Defendants are obligated to preserve all relevant materials for both the named Plaintiffs and the putative class regardless of Defendants' own view on whether the class will be certified.

Moreover, for the reasons set forth *supra* in in Part 4, Plaintiffs do not have any obligation to identify each and every instance of infringement nor is it the case that absent that identification, Defendants cannot know what is at issue or what data and documents must be preserved consistent with standard evidence preservation requirements.  Put simply, Defendants have sufficient knowledge and notice of the scope of the named Plaintiffs and the class's claims to know the scope of the data and documents they must preserve, particularly given the data and tools that are solely in their possession that can allow them to identify all evidence that must be preserved.

*Form updated May 2018*

**Defendants' Position**

Defendants have taken necessary steps to preserve evidence related to the issues presented in the action to the extent they can determine what is at issue from the Complaint, and have provided Plaintiffs with a draft of a proposed ESI Order for discussion.  Defendants have also advised the named Plaintiffs that they must promptly disclose all copyrighted works at issue and all alleged instances of infringement. Without such disclosure, Defendants will be unable to determine what works or alleged infringements are at issue in the case, and would be prejudiced by new assertions of infringement made later in the case.

Plaintiffs are incorrect in believing that Defendants can or should somehow guess at what infringements Plaintiffs are asserting, whether using a matching tool like Content ID or otherwise. Whether a given video infringes a copyright (and whether a service like YouTube that stores the video at the direction of a user is liable for copyright infringement) requires a highly individualized, fact-specific inquiry based on a given copyrighted work and a given alleged infringement.  Among other issues, a copyright infringement claim requires assessing whether the work at issue was registered, whether the registration is valid, whether the work has been licensed (and the scope of any related license), whether a given party is the rightful and sole copyright owner, and whether the allegedly infringing use is fair, licensed, or de minimis.  Preservation of material for unnamed members of a putative class, claiming to own unidentified copyrighted works and making hypothetical infringement claims is impossible. To the extent Plaintiffs assert that Defendants should simply preserve all information and data available to them, the cost would be very substantial, and far out of proportion to a case where there are only two named plaintiffs asserting a total of six copyrighted works, and extremely low prospects of ever certifying a class.

7.  Disclosures

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.  For ADA and employment cases, see General Order Nos. 56 and 71.*

Pursuant to Rule 26(a)(1)(C), the parties have agreed to exchange initial disclosures on October 22, 2020.

*Form updated May 2018*

8.  Discovery

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

No discovery has been conducted and therefore no discovery disputes exist at this time.  The parties do not propose any limitations or modifications of the discovery rules except for the fact that Plaintiffs have agreed to voluntarily dismiss Defendant, Alphabet, Inc. in exchange for Defendants' agreement not to withhold documents relevant to this litigation in Alphabet's possession on the ground that Alphabet is not a named Defendant in the case.  The parties' stipulation of dismissal of Alphabet was filed on September 21, 2020.

Pursuant to Rule 26(f)(3)(D), Defendants have provided Plaintiffs with a draft of a proposed Protective Order to govern disclosure of personal, confidential information, trade secrets, proprietary or other confidential commercial information. The parties do not currently anticipate any issues relating to claims of privilege or of protection as to work-product material but plan to include a 502(d) provision in their proposed Protective Order regarding any disclosure of privileged information.

The Parties have set forth their separate proposed discovery schedules in Exhibit A to this Case Management Order.  Separate points of disagreement concerning the scope of discovery and interim deadlines not necessarily part of the discovery schedule are identified below.

**Defendants' Position**

Defendants propose that the Court impose a deadline of October 22, 2020 for Plaintiffs to identify all of the copyrighted works-in-suit owned by named plaintiffs, along with each alleged instance of infringement of those works on the YouTube service.  To the extent Plaintiffs discover additional alleged infringements after that date, they may seek leave to supplement their contentions or amend their complaint for good cause shown.  As noted

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

above, Defendants are not in possession of knowledge about which videos Plaintiffs are accusing of infringement in this case.

Pursuant to Rule 26(f)(3)(B), Defendants propose prioritizing class certification discovery over merits discovery, with class certification discovery to be completed by February 25, 2021. Class certification discovery will quickly establish that Plaintiffs will be unable to demonstrate the requirements of Rule 23 for a purported mass copyright infringement class action. Copyright infringement requires comparison of a specific, unique copyrighted work to an allegedly infringing copy, and is subject to numerous individualized, fact-specific defenses including the licenses or other authorizations granted by copyright owners (or by their co-owners or licensing agents), the DMCA safe harbor (and the individualized issues it entails), fair use, *de minimis* use, unclean hands, registration status, validity, and ownership status. Discovery into these issues with respect to the named plaintiffs will demonstrate that their claims are not typical of the class; that individual issues predominate; and that class treatment is not superior. *See Football Ass'n Premier League v. Youtube, Inc*., 297 F.R.D. 64 (S.D.N.Y. 2013) (denying class certification of purported mass copyright infringement class action against YouTube).  Defendants expect that focused discovery into these class certification issues will be more than sufficient to dispose of the class allegations at an early stage of the case.

**Plaintiffs' Position**

For the reasons stated *supra* in Parts 4 and 6, Plaintiffs are under no obligation to identify every alleged instance of infringement—nor could they as a practical matter—and therefore do not agree to a date certain to do so.  To the extent instances of infringement need to be identified, that information is in the possession of Defendants and is thus subject to discovery from Defendants to occur during the discovery scheduled in this matter.

While Plaintiffs agree that discovery related solely to class certification issues should be prioritized, the issues concerning merits and class discovery will significantly overlap such that staging discovery in the way Defendants propose is both impractical and inefficient and

Page **14**

will unnecessarily delay completion of all fact discovery.  Plaintiffs believe that the Parties will be able to prioritize class discovery through discussion of the actual discovery served but maintain that it is necessary (and as a practical matter, given the overlap in issues and fact questions, inevitable) that fact and class discovery proceed simultaneously with some discovery unrelated to class certification issues taking longer to complete.  *Cf. Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir. 1977) ("The propriety of a class action cannot be determined in some cases without discovery, as for example, where discovery is necessary to determine the existence of a class or set of subclasses.").

9. <u>Class Actions</u>

*If a class action, a proposal for how and when the class will be certified.*

Pursuant to the proposed discovery schedule, Plaintiffs propose to move for class certification on April 8, 2021.

Defendants propose a deadline of May 21, 2021 for determination of whether the case will be maintained as a class action and have proposed a briefing schedule on the class certification motion as set forth in the attached Exhibit "A".

All attorneys have reviewed the Procedural Guidance for Class Action Settlements.

10. <u>Related Cases</u>

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

The parties agree that there are no related cases or proceedings pending before this Court or another court or administrative body.

11. <u>Relief</u>

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

Plaintiffs and the putative class seek injunctive and equitable relief enjoining Defendants, their officers, agents, servants, and employees, and all those acting in concert with the aforementioned parties: (a) from directly or indirectly reproducing, publicly performing,

*Form updated May 2018*

publicly displaying, or distributing the copyrighted works to which Plaintiffs and the Class have exclusive rights; (b) from causing, contributing to, inducing, enabling, facilitating, or participating in the infringement of any of the works referred to in a supra; (c) to affirmatively adopt, implement, and offer to all persons the technological measures available now, including Content ID, and those that shall become available in the future to identify and protect copyrighted content uploaded without consent and prevent it from being posted or otherwise made available through the facilities owned, operated, or controlled by Defendants.

Plaintiffs and the putative class seek actual damages including a disgorgement of Defendants' profits derived from the infringing acts, and/or the election of statutory damages, in the amount permitted by law with respect to each work infringed, including statutory damages for willful misconduct. 17 U.S.C. § 504(c) provides statutory damages of a maximum of $150,000 for each instance of willful infringement.

Plaintiffs and the putative class seek to disgorge Defendants of all profits, direct or indirect, illegally obtained as a result of the conduct alleged herein.

Plaintiffs and the putative class also seek an order that: (a) Defendants are joint and severally liable for all monetary damages awarded; (b) awards prejudgment interest to the maximum extent permitted by law; and (c) awards attorneys' fees, costs, and expenses.


 Defendants seek:

a.      Damages against Pirate Monitor sufficient to compensate Defendants for the harm caused by Pirate Monitor's conduct;

b.       Punitive damages against Pirate Monitor for its fraudulent conduct;

c.      An injunction barring Pirate Monitor and all those in active concert with it from submitting notices of alleged infringement to YouTube that misrepresent that material on the YouTube service is infringing copyrights held or claimed to be held by Pirate Monitor or anyone it claims to represent.

d.      Costs of this action along with attorneys' fees pursuant to 17 U.S.C. § 512(f); and

e.      Such other and further relief as the Court may deem just and proper.

*Form updated May 2018*

12.  <u>Settlement and ADR</u>

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including which ADR process option the parties have selected and a proposed deadline, or if the parties do not agree, each party's preferred option and timing, in compliance with ADR L.R. 3-5. In addition, the parties should include a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties filed the ADR certification documents pursuant to ADR L.R. 3-5 on September 17, 2020.  The parties believe that at this time, prospects for settlement are low and do not believe that meaningful ADR can take place at this time, but are open to readdress the potential scheduling of an ADR following significant progress in discovery and advancement of issues concerning class certification.

13.  <u>Consent to Magistrate Judge For All Purposes</u>

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.* ____ YES   _X NO

*See* Dkt. No. 19.

14.  <u>Other References</u>

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.  <u>Narrowing of Issues</u>

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

Plaintiffs have agreed to voluntarily dismiss Alphabet, Inc. as a defendant pursuant to Defendants' agreement not to withhold documents relevant to this litigation in Alphabet's possession on the ground that Alphabet is not a named Defendant in the case. The parties filed the stipulation of dismissal of Alphabet on September 21, 2020.

16.  <u>Expedited Trial Procedure</u>

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.  If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited*

*Form updated May 2018*

*Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

This case should not be handled under the Expedited Trial Procedure.

## 17.  Scheduling

*Proposed dates for completion of initial ADR session, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

The parties' proposed respective dates for the case management deadlines set forth in L.R. 16-10 are set forth in Exhibit "A" attached hereto.

**Plaintiffs' Position**

For the reasons stated *supra* in Parts 4, 6, and 8, Plaintiffs are under no obligation to identify every alleged instance of infringement.  Any purported issues regarding disclosures of instances of infringement should be taken up at summary judgment and should not impact the trial schedule in any way.

**Defendants' Position**

As noted above, Defendants expect that the feasibility of the schedule will be dependent on Plaintiffs' immediate disclosure of works in suit and infringement contentions, and their compliance with other discovery requests.

## 18.  Trial

*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

The case will be tried to a jury and is expected to last two to three weeks.

## 19.  Disclosure of Non-party Interested Entities or Persons

*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

Defendants filed their Certification of Interested Entities of Persons on August 5, 2020 (ECF # 29).

Plaintiffs filed Plaintiff, Pirate Monitor's Certification of Interested Entities and Persons on July 13, 2020 (Dkt. No. 17) date which was supplemented on September 30, 2020 (Dkt. No.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

36).  Plaintiffs filed Plaintiff Schneider's Certification of Interested Entities and Persons on September 30, 2020 date (Dkt. No. 37).

20.  <u>Professional Conduct</u>
*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

The attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21.  <u>Other</u>
*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

Because this is a Class Action, pursuant to Civil L.R. 16-9(a) Plaintiff includes the following information:

**(1)**  <u>The specific paragraphs of Fed. R. Civ. P. 23 under which the action is maintainable as a class action:</u>

Fed. R. Civ. P. 23(a), 23(b)(1)-(3), and/or 23(c)(4)

**(2)**  <u>A description of the class or classes in whose behalf the action is brought:</u>

A. All persons holding the exclusive right to publicly perform, reproduce, publicly display, or distribute film, audiovisual, or musical works over the internet for works first going into the public domain after December 31, 1977 whose copyrighted works have been uploaded to YouTube within the relevant statute of limitations, whether in their entirety as part of one single upload or where a portion of the copyrighted work has been uploaded to YouTube, where such person has had to submit a successful takedown notice with respect to such work, and where such person's work has subsequently been infringed or uploaded without permission and where such person has not benefited from the YouTube Content ID program which would have automatically and without unilateral action allowed such person to monetize or prohibit that upload from being displayed, copied, distributed and performed on the YouTube site; and

B. All persons holding the exclusive right to publicly perform, reproduce, publicly display, or distribute film, audiovisual, or musical works over the internet for works first published after

Page **19**

1976 and whose works have been uploaded to YouTube without the associated copyright management information within the relevant statute of limitations.

Excluded from the first class, but not the second class, are United States works not registered with the United States Copyright Office and any person who has authorized the Defendants to exploit their works;

Excluded from both classes are: (a) Defendants; (b) the subsidiaries and affiliates of Defendants; (c) any person or entity who is a partner, officer, director, employee, or controlling person of any Defendant; (d) any entity in which Defendant has a controlling interest; (e) any rights holder to whom Defendants have directly granted access to YouTube's Content ID program for acts of infringement occurring after such access began; and (f) the legal representatives, heirs, successors, and assigns of any excluded party.

**(3)** Facts showing that the party is entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b);

The facts showing that Plaintiffs are entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b) are set forth in Paragraphs 102—107 of the Complaint.

**(4)** A proposed date for the Court to consider whether the case can be maintained as a class action.

Plaintiffs will move for class certification on April 8, 2021.

**Defendants' Statement:**

Defendants oppose class certification. Defendants propose that the Court impose a deadline of March 11, 2021 for Plaintiffs' anticipated motion for class certification, so that the Court may consider whether the case can be maintained as a class action on May 21, 2021.

Dated:  October 1, 2020            /s/ Philip C. Korologos

                                   Counsel for Plaintiffs


Dated:  October 1, 2020            /s/ David Kramer

                                   Counsel for Defendants

Page **20**

*Form updated May 2018*

1

2
### CASE MANAGEMENT ORDER

3
The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved

4
as the Case Management Order for this case and all parties shall comply with its provisions. [In

5
addition, the Court makes the further orders stated below:]

6

7

8
IT IS SO ORDERED.

9
 Dated:

10
                                                    UNITED STATES DISTRICT/MAGISTRATE
11
                                                                        JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Form updated May 2018*

1

**EXHIBIT A**

2

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Commencement and completion of any ADR proceedings - 16-10(1) | N/A | N/A |
| Exchange initial disclosures | October 22, 2020 | October 22, 2020 |
| Plaintiffs to serve identification of works-in-suit and alleged infringements | For the reasons stated *supra* in Parts 4, 6, and 8 Plaintiffs are under no obligation to identify every alleged instance of infringement—nor could they as a practical matter—and therefore do not agree to a date certain to do so. | October 22, 2020 |
| Plaintiffs' response to defendants' counterclaims | November 20, 2020 | November 20, 2020 |
| Close of fact discovery related to class certification only | March 13, 2021 subject to Defendants' compliance with providing ESI-related discovery and otherwise complying with class-related discovery | February 25, 2021 |
| Deadline for Plaintiffs to file motion for class certification | April 8, 2021 | March 11, 2021 |
| Deadline to file motions to amend pleadings | March 25, 2021 | March 25, 2021 |
| Deadline for Defendants to file opposition to Plaintiffs' motion for class certification | May 6, 2021 | April 15, 2021 |
| Deadline for Plaintiffs to file reply in support of motion for class certification | May 27, 2021 | May 6, 2021 |
| Hearing on Plaintiffs' motion for class certification | June 17, 2021 | May 21, 2021 |
| Close of fact discovery | October 8, 2021 | July 1, 2021 |
| Disclosure of proposed expert or other opinion witnesses | August 13, 2021 | July 8, 2021 |

Page **22**

| | | |
|---|---|---|
| Opening expert reports due | September 3, 2021 | July 29, 2021 |
| Rebuttal expert reports due | September 24, 2021 | August 19, 2021 |
| Close of expert discovery | October 8, 2021 | September 2, 2021 |
| Deadline to move for summary judgment | October 7, 2021 | October 7, 2021 |
| Deadline to file opposition to motion for summary judgment | October 28, 2021 | October 28, 2021 |
| Deadline to file reply in support of motion for summary judgment | November 18, 2021 | November 18, 2021 |
| Hearing on motion(s) for summary judgment | December 2, 2021 | December 2, 2021 |
| Serving and filing briefs on all significant disputed issues of law, including procedural and evidentiary issues (motions *in limine*, Daubert motions) | February 10, 2022 | February 10, 2022 |
| Counsel to meet and confer to prepare joint final pretrial conference statement and proposed order and coordinated submission of trial exhibits and other material | February 10, 2022 | February 10, 2022 |
| Filing joint final pretrial conference statement and proposed order | February 24, 2022 | February 24, 2022 |
| Serving and filing requested voir dire questions, jury instructions, and forms of verdict | February 24, 2022 | February 24, 2022 |
| Final pretrial conference | March 8, 2022 | March 8, 2022 |
| Lodging exhibits and other trial material, including copies of all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the trial other than for impeachment or rebuttal. Each proposed exhibit must be premarked for identification. Upon request, a party must make the original or the underlying documents of any exhibit available for inspection and copying | March 28, 2022 | March 28, 2022 |

*Form updated May 2018*

| Serving and filing statements designating excerpts from depositions (specifying the witness and page and line references), from interrogatory answers and from responses to requests for admission to be offered at the trial other than for impeachment or rebuttal | March 28, 2022 | March 28, 2022 |
|---|---|---|
| Trial | April 11, 2022 | April 11, 2022 |

*Form updated May 2018*