# EXHIBIT 1

**INTERROGATORY NO. 2:**

Identify each User or Person You claim acted as an agent for Pirate Monitor for the allegations in the Counterclaims, the specific allegation that each User or Person participated in, and state the bases (including all facts and the application of law to fact) for Your contention that these Persons acted as agents for Pirate Monitor.

**RESPONSE TO INTERROGATORY NO. 2:**

Counterclaimants object to this Interrogatory on the grounds that it is vague and ambiguous in its use of the term "specific allegation that each User or Person participated in." Counterclaimants further object to this Interrogatory on the grounds that the information sought is necessarily in Plaintiff's possession or is otherwise accessible and available to Plaintiff and is not in Counterclaimants' possession. Counterclaimants further object that this Interrogatory seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Subject to and without waiving the foregoing objections, Counterclaimants respond as follows: Based on Counterclaimants' ongoing investigation, which will be supplemented through discovery in this case, Counterclaimants have identified substantial evidence of fraudulent and other improper activity by or on behalf of Pirate Monitor. Counterclaimants have identified video clips from at least one of the copyrighted works that Pirate Monitor claims in this lawsuit to own (the Hungarian film *Csak szek és más semi*), as well as numerous clips from related works— including from the Hungarian film, *Zimmer Feri*, a prequel to *Zimmer Feri 2*, another of Pirate Monitor's alleged works in suit—that were uploaded in bulk to YouTube. The person or persons uploading these video clips used a variety of accounts and usernames, but many of them were variants of the name "Ransom Nova" (such as "RansomNova11," "RansomNova12"). Most of those videos were uploaded using Internet Protocol ("IP") addresses associated with Pakistan. That alone was unusual and suspicious: there is no obvious reason why short clips from relatively obscure Hungarian-language movies should be uploaded to YouTube from accounts and devices in Pakistan. Further, the upload behavior did not appear consistent with behavior by a user actually seeking to share copies of the works, given, among other things, the lack of any apparent order to the clips from the films, the use of nondescript, non-informative titles for the clips, and the

1   generally uniform and short length of the clips of approximately 30 seconds in duration. *See, e.g.*,
2   https://www.youtube.com/channel/UCjD2F2LhPlWLUsGN2zWt70w.

3   In many cases, just a few days after the RansomNova-related accounts uploaded these
4   videos to YouTube, and with the videos in many cases having no recorded views on YouTube, the
5   videos were the subject of takedown requests from "Pirate Monitor, LLC"—using an account
6   opened in the name of Gabor Csupo. Csupo claimed during the takedown request process to be an
7   authorized representative of Mega Film Kft ("Mega Film"), a movie producer based in Hungary.
8   Pirate Monitor, LLC is not a Plaintiff in this case. The Pirate Monitor entity that brought this case
9   is Pirate Monitor Ltd, which has represented that it is 100% owned and controlled by Csupo. It is
10  not clear what distinction, if any, there is between Pirate Monitor Ltd, Csupo, Pirate Monitor LLC,
11  and Mega Film. Counterclaimants are currently seeking discovery in order to illuminate these
12  relationships.

13  It is unclear how Pirate Monitor/Csupo/Mega Film knew that the videos that were the
14  subject of their takedown requests were on YouTube, given that in many, if not most, cases those
15  videos had not recorded any actual views on YouTube at the time they were removed. That by
16  itself suggests that the person or persons sending the takedown requests may have been involved
17  in the process of uploading them in the first place.

18  Confirming that suspicion is an even more direct connection between the takedown
19  requests and the videos uploaded by the Ransom Nova accounts. The Pirate Monitor/Csupo/Mega
20  Film account that was used to send the takedown requests was created using an IP address in
21  Hungary. This strongly suggests that the person creating the account that was used to send the
22  Pirate Monitor/Csupo/Mega Film takedown requests was based in Hungary. Not only that, the
23  Hungarian IP address that PirateMonitor/Csupo/MegaFilm used to send the takedown requests
24  was the very same Hungarian IP address used repeatedly by someone to log into one of the
25  "Ransom Nova" YouTube accounts. In fact, "Ransom Nova," though ostensibly uploading videos
26  from Pakistan, used the Hungarian IP address multiple times to log into a Ransom Nova account at
27  roughly the same time that Pirate Monitor/Csupo/Mega Film was logged into their own account
28

and sending takedown requests from that same IP address. Further, though Ransom Nova was ostensibly operating out of Pakistan (based on IP addresses associated with the videos uploads), the recovery phone number that Ransom Nova provided for at least two of the RansomNova accounts was a phone number in Hungary. One individual who has surfaced in our investigation of the "Ransom Nova" YouTube accounts is Sarfraz Arshad Khan. Counterclaimants are currently seeking discovery in order to confirm this information.

The facts that YouTube has learned based on its investigation to date leave little doubt that Pirate Monitor (and its agents, Csupo, Pirate Monitor LLC, Mega Film, Ransom Nova, and Sarfraz Arshad Khan) were responsible both for uploading clips of certain of the works-in-suit (and other related content) to YouTube in the first place and then for misusing the DMCA process to request the removal of those clips by YouTube.

Counterclaimants' response to this Interrogatory is based on information presently available to Counterclaimants, and Counterclaimants reserve the right to revise and supplement this response based on new information that comes to light.

**INTERROGATORY NO. 3:**

**For each representation You contend was fraudulent in the Counterclaims, state with particularity the circumstances You allege constitute fraud, including the identity of each User or Person You claim made a fraudulent representation, the date of the representation, the content of the representation, and how You relied on the representation, including all actions You took in reliance on the representation and every step You took to verify the accuracy of the representation.**

**RESPONSE TO INTERROGATORY NO. 3:**

Counterclaimants object to this Interrogatory to the extent the information sought is already in Plaintiff's possession or is otherwise accessible and available to Plaintiff. Counterclaimants further object that this Interrogatory is duplicative and cumulative of other discovery requests.

Subject to and without waiving the foregoing objections, Counterclaimants respond as follows, upon information and belief: From approximately August through November 2019, Pirate Monitor, through authorized agents, created more than a dozen accounts on YouTube using