1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                          NORTHERN DISTRICT OF CALIFORNIA

9                               SAN FRANCISCO DIVISION

10

11  MARIA SCHNEIDER and PIRATE            )
12  MONITOR LTD, individually and on      )  Case Number: 3:20-cv-04423-JD
    behalf of all others similarly situated, )
13                                         )  **JOINT CASE MANAGEMENT**
                    Plaintiffs,            )  **STATEMENT & [PROPOSED]**
14                                         )  **ORDER**
                    vs.                    )
15                                         )
16  YOUTUBE, LLC and GOOGLE LLC,           )
                                           )
17                  Defendants.            )
                                           )
18  ─────────────────────────────         )
    YOUTUBE, LLC and GOOGLE LLC,           )
19                                         )
                    Counterclaimants,      )
20                                         )
                    vs.                    )
21                                         )
22  PIRATE MONITOR LTD,                    )
                                           )
23                  Counterclaim Defendant. )
                                           )
24  ─────────────────────────────         )

25       The parties to the above-entitled action jointly submit this JOINT CASE

26  MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the *Standing Order for All*

27  *Judges of the Northern District of California* and Civil Local Rule 16-9.

28

1. Jurisdiction & Service
*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and independently under 28 U.S.C. § 1332(d) because the proposed Class contains more than 100 persons, the aggregate amount in controversy allegedly exceeds $5,000,000, and at least one proposed Class Member is a citizen or subject of a foreign state and Defendants are citizens of the State of California. All Defendants have been properly served.

Defendants Google LLC and YouTube, LLC have asserted counterclaims against Pirate Monitor LTD for breach of contract, fraud, and violation of 17 U.S.C § 512(f). The Court has original subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

2. Facts
*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

**Plaintiffs' Statement:**

Plaintiffs, Maria Schneider and Pirate Monitor LTD ("Pirate Monitor"), bring a putative class action against Defendants, YouTube, LLC ("YouTube") and Google LLC ("Google") for copyright infringement and violations of the 1976 Copyright Act, 17 U.S.C. §§ 501 *et seq*. (the "Copyright Act"). Plaintiffs and the putative class members hold the exclusive copyrights to multiple works displayed on YouTube in violation of the Copyright Act, despite Plaintiffs previously notifying Defendants that these works were being infringed. Millions of these works by Plaintiffs and the Class, have been reproduced, distributed, displayed, and publicly performed on YouTube without Plaintiffs' or the Class's authorization.

YouTube employs a two-tiered copyright enforcement system. Large creators, who have partnered with YouTube and Google, are granted access to Content ID, a tool that compares videos uploaded onto YouTube with digital fingerprints of copyrighted material provided by

large copyright owners.  When an uploaded video matches a copyright protected by Content ID, the copyright owner may elect to block the video or permit its display in which case it may choose to monetize its display.  Smaller copyright holders, including Plaintiffs and the putative class, who are unable to benefit from Content ID, have no viable means of preventing the public display of infringing videos on YouTube.  Instead, they are relegated to a vastly inferior and time-consuming means of trying manually to police and manage their copyrights, which requires the rights holder to locate infringing videos through searches and then file a takedown notice with YouTube.

Defendants perpetuate this two-tiered enforcement system to increase their profits by maximizing advertising revenue through "network effects."  Put simply, as the volume of videos increases (including videos with infringing content), the volume of video watchers increases, and the YouTube platform thus becomes more attractive to advertisers.

While the vast majority of copyright infringing uploads are identified via Content ID, YouTube has essentially divorced its repeat infringer policy from the Content ID system, neither issuing copyright strikes, nor attempting to identify repeat infringers whose uploads are blocked or monetized via Content ID.  By so limiting the scope of its repeat infringer enforcement to takedown notices, YouTube fails to reasonably implement its repeat infringer policy, and forfeits safe harbor protection under the DMCA.

**Defendants' Statement:**

Plaintiffs' case is an attempt to relitigate issues decided almost a decade ago in landmark cases, which held that YouTube is protected by the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(c), and that squarely rejected efforts to pursue a copyright class action against YouTube. *See Viacom Intern. Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y 2013); *Football Ass'n Premier League v. YouTube, Inc.*, 297 F.R.D. 64 (S.D.N.Y. 2013). Plaintiffs' claims here fail for the same reasons and for additional ones as well.

To begin, while the Complaint identifies only a handful of copyrighted "works in suit" (three for Pirate Monitor; three for Schneider), the Complaint ***failed to allege a single instance***

*of infringement* for even one of the six copyrighted works. That alone renders the claims deficient. Beyond that, Pirate Monitor recently admitted—five months into the case—that it does not have standing to assert infringement of one of the three works it asserted in the Complaint. Yet, Pirate Monitor refuses to dismiss that infringement claim or stipulate to judgment on it, and asserts privilege over all details of what it says was an "error."

For her part, in recent interrogatory responses, Schneider listed roughly 50 new copyrighted works that were not mentioned in her Complaint and for which she has made no allegation of ownership or registration. Moreover, Schneider has failed to identify a single alleged infringement for approximately half of the new works, and the instances of alleged infringement she did identify all fall outside the three-year statute of limitations. Further, it now appears clear that Schneider's publishing agent licensed YouTube to use all of Schneider's musical works, which would independently defeat any infringement claim.

Beyond these threshold problems, Plaintiffs' infringement theory is barred by the DMCA safe harbor, which was applied to YouTube in *Viacom* and, in more recent years, has been broadly applied by the Ninth Circuit. *See, e.g., Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018). Plaintiffs cannot overcome this established protection. They focus on YouTube's Content ID technology, a copyright management tool that YouTube voluntarily developed at great effort. Given its complexity, power, and potential for misuse, YouTube has reserved Content ID for copyright owners who can be trusted not to abuse it and who will dedicate the resources necessary to avoid costly mistakes. No law supports Plaintiffs' assertion that denying them access to it somehow makes YouTube liable for copyright infringement.

Plaintiffs' own experiences with Content ID highlight why their legal theories are misguided. Plaintiff **Schneider already has access to Content ID** through her publishing agent, who has used Content ID for years on Schneider's behalf. And ***Pirate Monitor engaged in significant abuse of YouTube's copyright systems***—in an apparent effort to gain access to Content ID under false pretenses. *See* Dkt. No. 34.

Plaintiffs' claims under Section 1202(b) of the DMCA for alleged removal of Copyright Management Information ("CMI") are also fatally flawed. Plaintiffs have not identified a single

video clip containing their works in which CMI was originally present but then removed by YouTube. Indeed, Pirate Monitor has admitted in discovery that it does not even use CMI to protect its works. And Plaintiffs have alleged no facts suggesting that YouTube knew or had reasonable grounds to know that its supposed removal of CMI would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b).

Finally, as this sample of issues illustrates, this case will not be maintainable as a class action. Copyright infringement cases are ill-suited for class treatment, and this one especially so. Here, highly individualized and plaintiff-specific issues abound, and apply to each specific claimed infringement. Even more than the last effort to pursue classwide copyright infringement claims against YouTube, this case is a "Frankenstein monster posing as a class action." *See Football Ass'n Premier League*, 297 F.R.D. at 65.

### 3. Legal Issues

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

**Plaintiffs' Statement:**

- Whether Defendants' actions violated the 1976 Copyright Act, 17 U.S.C. §§ 501 *et seq.* and caused harm to Plaintiffs and the putative class.

- Whether Defendants are protected from this lawsuit by the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA") which provides a safe harbor against copyright infringement claims for entities that have adopted and reasonably implemented a policy for terminating repeat copyright infringers from their platform.

**Defendants' Statement:**

In addition to those identified by Plaintiffs above, this case raises the following legal issues:

- Whether Plaintiffs must plead, and ultimately prove, that each of the alleged copyrighted works in suit were properly registered (or exempt from registration) and infringed by YouTube on at least one occasion;

- Whether Plaintiffs, directly or through agents, licensed or otherwise authorized their works to appear on YouTube or to be used in connection with videos posted on YouTube by third parties;

- Whether Plaintiffs' claims are barred by the statute of limitations; equitable defenses such as estoppel, unclean hands, and/or copyright misuse; and/or the doctrines of fair use, *de minimis* use, and substantial non-infringing use;

- Whether this case can be maintained as a class action under Fed. R. Civ. P. 23; and

- Whether Pirate Monitor is liable to YouTube for fraud, breach of contract, and/or violation of 17 U.S.C. § 512(f).

4.  Motions
*All prior and pending motions, their current status, and any anticipated motions.*

**Plaintiffs' Statement:**

Plaintiffs have filed a motion to dismiss Defendants' counterclaims against Pirate Monitor because they are insufficient under Rules 8 and 9(b) in that they rest on conclusory allegations that unidentified individuals who uploaded several videos to YouTube were "authorized agents" of Pirate Monitor. Defendants also fail to plead their fraud claims with the heightened level of particularity required by Rule 9(b). Plaintiffs do not anticipate filing any other motions at this time, aside from discovery motions and class certification as briefly described below.

**Defendants' Statement:**

Defendants currently anticipate filing, at the earliest opportunity, a combined motion for judgment on the pleadings with respect to Plaintiffs' claims under Section 1202(b) of the DMCA and for partial summary judgment on Plaintiffs' claims for copyright infringement, many of which (among other things) are time-barred under 17 U.S.C. § 507(b). If granted, this motion would significantly narrow the case, limit discovery, and simplify other case-management issues. Further, if Pirate Monitor will not stipulate to dismiss the infringement claim that it admits is meritless, Defendants will include a request for judgment on that claim. YouTube anticipates filing a more comprehensive motion for summary judgment on issues such as license and the applicability of the DMCA safe harbors after additional record development.

5.  Amendment of Pleadings
*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

**Defendants' Statement:**

Following the Court's ruling on Plaintiffs' motion to dismiss, and pending discovery that Defendants have requested but not yet received from Pirate Monitor, Defendants may seek to

1    amend their counterclaims to add parties who may have acted as Pirate Monitor's agents,

2    predecessors, or alter egos in connection with the scheme alleged in YouTube's counterclaims.

3          Plaintiffs' approach to amendments of their own Complaint is improper and prejudicial.

4    Plaintiffs' Complaint must set forth the complete universe of copyrighted works at issue—both

5    to define the scope of the case and to allow Defendants to investigate Plaintiffs' claims through

6    discovery. For each work, Defendants will need to investigate, among other things, whether

7    Plaintiffs actually own and have properly registered the work, whether there is actually an

8    infringement of that work in some YouTube video, and whether any defenses—including the

9    DMCA safe harbors—apply.

10         Plaintiffs' approach—refusing to plead all of the copyrighted works they seek to put at

11   issue; identifying not even a single alleged infringement for many works; and then adding and

12   dropping works on their say so—has no basis in the law. *See, e.g.*, *Gold Value Int'l Textile, Inc.*

13   *v. Sanctuary Clothing, LLC*, 2017 U.S. Dist. LEXIS 181296, at *22 (C.D. Cal. May 12, 2017)

14   (where a work "was not identified in the Complaint . . . as one of the copyrights at issue . . . .

15   [a]bsent the filing of an amended complaint, th[e] action cannot proceed as to any alleged

16   infringement" of the work); *Premier Tracks, LLC v. Fox Broad. Co*., 2012 U.S. Dist. LEXIS

17   189754, at *26 (C.D. Cal. Dec. 18, 2012) (dismissing copyright claims "as to all works, except"

18   those specifically identified in the complaint; rejecting argument that "because the FAC includes

19   a partial list of Defendants' infringing uses, Plaintiffs can still maintain claims for all, including

20   works 'yet to be identified'"); *accord* 17 U.S.C. § 508 (Court clerk must provide list of

21   copyrighted works at issue to Copyright Office within one month of case filing, and update that

22   based on any amendments to complaint).

23         If Plaintiffs want to expand the universe of works in suit beyond those identified in the

24   Complaint, the Court should set an early deadline for Plaintiffs to amend their Complaint to

25   identify the additional works and plead facts establishing a prima facie case of infringement by

26   YouTube as to each—that is, registration and ownership information, and at least one instance of

27   alleged infringement of each work in suit.

28

1   But even assuming Plaintiffs satisfied the requirement of pleading a prima facie case for a

2   work, another important issue remains. While Plaintiffs need not identify in their Complaint

3   every single YouTube video that they believe infringes their works, they should be required to do

4   so by a date well in advance of the discovery cut-off, much in the way that a patentee must

5   provide an identification of its infringement contentions. *See* Patent L.R. 3-1. Closing the

6   universe of alleged infringements prior to the close of fact discovery is necessary for Defendants

7   to have a meaningful opportunity to take discovery on each claim of infringement that Plaintiffs

8   seek to put at issue, and to investigate issues such as license, fair use, and statute of limitations.

9   **Plaintiffs' Statement:**

10   Despite Defendants' statements, Plaintiffs' approach in identifying the Works in Suit in

11   this case has been appropriate, as the Complaint alleges copyright infringement and Plaintiffs

12   have provided interrogatory responses that identify the Works in Suit and the instances of

13   infringement for which takedown notices have been filed.  Defendants now have the information

14   they purportedly need to investigate Plaintiffs' ownership, whether any YouTube videos infringe

15   Plaintiffs' works, and whether any defenses apply.  Additional information will be provided as

16   discovery progresses.

17   Defendants' argument that Plaintiffs must amend the Complaint is incorrect—the

18   Complaint itself need not set forth the complete universe of copyrighted works at issue.  *See,*

19   *e.g.*, *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 687 (9th Cir. 2000) (rejecting argument that

20   plaintiff lacked standing to sue for infringement of two songs for which ownership was not

21   alleged in the complaint because defendant was on notice that dispute related to those songs);

22   *Perfect 10, Inc. v. Cybernet Ventures, Inc*., 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001)

23   (rejecting argument that plaintiff needed "to state, in its complaint, every copyright relied on,

24   every individual image in the magazines that is being infringed, every image on specific web

25   pages that does infringe, or the dates of any infringement").  Nor do Defendants provide any

26   precedent or other support—aside from inapplicable patent rules—for imposing an arbitrary

27   deadline separate from the fact discovery cutoff by which Plaintiffs need to provide a definitive

28   list of every YouTube video that has ever infringed their copyrights.  Defendants' incorrect

1  position, which they again reiterate in Section 8 *infra* in insisting that Plaintiffs' discovery

2  obligations require them to manually scour YouTube every day to identify every time any user

3  posts an infringing video, only underscores the unfairness this lawsuit seeks to address:

4  Defendants' decision to refuse Plaintiffs access to Content ID has itself denied Plaintiffs the

5  ability to identify every instance of infringement of their protected works amongst the millions of

6  videos on YouTube.

7  6. Evidence Preservation

8  *A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues*

9  *reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

10  **Plaintiffs' Statement:**

11  Despite attempts to meet and confer with Defendants regarding preservation, Plaintiffs

12  have serious concerns about Defendants' preservation efforts.  In response to repeated questions

13  about what Defendants are preserving, both as to the named Plaintiffs' and the class, Defendants

14  have stated that Defendants will *not* preserve evidence that Plaintiffs have asked them to

15  preserve.  For example, despite stating that YouTube already preserves tens of millions of videos

16  that are uploaded to YouTube, Defendants at the same time refuse to also preserve videos that

17  are deleted from YouTube even if they infringe on a named Plaintiffs' or class member's

18  copyrights unless Plaintiffs specifically identify each video to be preserved.  Defendants have

19  also repeatedly taken the position that they will not preserve any evidence relating to the putative

20  class in this case, but such a position is contradicted by case law stating that a defendant's

21  preservation obligations extend to putative class actions absent some concrete demonstration of

22  undue burden.  *See, e.g.*, *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 423 (S.D. Cal. 2018);

23  *Czuchaj v. Conair Corp.*, No. 13CV1901 BEN (RBB), 2016 WL 4161818, at *3 (S.D. Cal. Apr.

24  1, 2016).  Defendants have not provided any concrete information to Plaintiffs about any burden.

25  Finally, Defendants have refused to answer simple questions about the effect of a legal hold on

26  YouTube's standard document retention policies and procedures and have refused to produce

27  *any* documents in response to Plaintiffs' document request for document retention policies.

28

1    Accordingly, given the lack of assurance from YouTube that it is preserving relevant

2 evidence in this case, Plaintiffs intend to seek a preservation order or other relief as to any

3 evidence that has been spoliated.

4 **Defendants' Statement:**

5    As Defendants have explained to Plaintiffs, Defendants have taken all reasonable steps to

6 preserve evidence related to the issues presented in the action to the extent they can determine

7 what is at issue from the Complaint, and have negotiated a proposed ESI Order with Plaintiffs.

8 But Defendants' ability to preserve evidence depends in part on understanding what Plaintiffs are

9 actually alleging as the basis for their claims. Defendants have not "refuse[d] to preserve videos

10 that are deleted from YouTube even if they infringe on the named Plaintiffs' or class member's

11 copyrights." Defendants are preserving (and have repeatedly told Plaintiffs that they are

12 preserving) any videos that Plaintiffs identify as allegedly infringing, but Defendants are not

13 required to (and cannot) guess at what works and alleged infringements Plaintiffs may choose to

14 assert in this case. Defendants certainly do not have the burden to proactively seek out and

15 identify potentially infringing material that Plaintiffs have not themselves identified, whether for

16 purposes of preservation or otherwise. Instead, Plaintiffs will need to identify additional works in

17 suit and additional alleged infringements (if any) if they wish to trigger additional preservation

18 steps.

19    What is true for the named Plaintiffs is even more obvious for some hypothetical, ill-

20 defined class. Defendants have not, as Plaintiffs claim, refused to "preserve any evidence relating

21 to the putative class in this case." Defendants already are preserving a significant amount of the

22 evidence that Plaintiffs have requested according to their ordinary retention practices, and

23 Defendants have agreed to preserve additional class-related evidence that Plaintiffs specifically

24 identify or put at issue, within reason. But Plaintiffs have made the extraordinary and

25 unreasonable demand that YouTube preserve all "material and content" uploaded to YouTube,

26 notwithstanding users' ordinary rights to delete their own data, simply because Plaintiffs have

27 brought this case as a putative class action. They have cited no authority requiring anything like

28 that, which would inflict huge costs and burdens on YouTube—essentially redesigning

YouTube's entire data retention system in violation of user privacy rights and at a cost of hundreds of hours of engineering time and millions of dollars—that are disproportionate to the legitimate needs of a case in which there are only two named plaintiffs asserting, at most, a small number of copyrighted works, and who have very low prospects of ever certifying a class.

7. Disclosures

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.  For ADA and employment cases, see General Order Nos. 56 and 71.*

The parties exchanged initial disclosures on October 22, 2020.

8. Discovery

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

Discovery opened in September 2020, and the parties have exchanged document requests and interrogatories. On December 18, 2020, the Court approved the parties' proposed Protective Order to govern disclosure of personal, confidential information, trade secrets, and proprietary or other confidential commercial information. The parties are currently negotiating and expect to submit a proposed stipulated ESI order. The parties do not currently anticipate any issues relating to claims of privilege or of protection as to work-product material. The parties do not propose any limitations or modifications of the discovery rules.

The parties have set forth their separate proposed discovery schedules in Exhibit A to this Case Management Order. Separate points of disagreement concerning discovery are identified below.

**Plaintiffs' Statement:**

While Plaintiffs agree that discovery related solely to class certification issues should be prioritized, the issues concerning merits and class discovery will significantly overlap such that staging discovery is impractical and inefficient and will cause unnecessary delays.  Plaintiffs remain hopeful that the Parties will be able to prioritize class discovery but maintain that it is necessary (and given the overlap in issues and fact questions, inevitable) that fact and class

1   discovery proceed simultaneously with some discovery unrelated to class certification taking
2   longer to complete.

3       Based on the pace of the meet and confer process thus far and the number of disputes that
4   have already arisen, Plaintiffs anticipate having to raise several discovery issues with the Court.
5   Plaintiffs intend, however, to continue to confer with Defendants in good faith and to seek court
6   intervention only when necessary.

7   **Defendants' Statement:**

8       Pursuant to Rule 26(f)(3)(B), Defendants propose prioritizing discovery regarding the
9   propriety of class certification over merits discovery. Discovery regarding the propriety of class
10  certification will quickly establish that Plaintiffs will be unable to meet the requirements of Rule
11  23. Further, discovery regarding the claims of absent members of a putative class should be
12  deferred until after the class certification decision.

13      As for the named plaintiffs, they assert that they need access to Defendants' internal
14  systems (such as Content ID) before they can identify alleged infringements of their works on
15  YouTube's public website (even though they were able to identify and send DMCA takedown
16  notices for alleged infringements in the past). YouTube is willing to produce reasonable and
17  proportionate discovery in response to Plaintiffs' requests, but Plaintiffs must first undertake to
18  search for additional instances of infringement or demonstrate why they are unable to do so
19  using readily available methods such as searching the site for allegedly unauthorized videos.

20      In addition, a number of discovery disputes have arisen in the first few months of
21  discovery and may require judicial resolution. Unless the Court would prefer a different
22  approach, and unless the parties are able to reach agreement about any of their outstanding
23  disputes, Defendants intend to submit a separate letter brief addressing these issues for resolution
24  pursuant to the Court's regular discovery procedures.

25  9.  Class Actions
26  *If a class action, a proposal for how and when the class will be certified.*

27      See attached schedule for the parties' proposed deadlines regarding class certification.
28      All attorneys have reviewed the Procedural Guidance for Class Action Settlements.

1
2

## 10.  Related Cases

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

3

The parties agree that there are no related cases or proceedings pending before this Court

4

or another court or administrative body.

5

## 11.  Relief

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

6
7

8

**Plaintiffs' Statement:**

9

Plaintiffs and the putative class principally seek injunctive and equitable relief, among

10

other things, (1) enjoining Defendants from infringing the class members' copyrighted works or

11

from causing infringement of the class members' copyrighted works in any way and (2)

12

enjoining Defendants from removing or failing to maintain copyright management information

13

from uploaded videos and statutory damages pursuant to 17 U.S.C. § 1203.  Plaintiffs and the

14

putative class also seek statutory damages or actual damages including disgorgement of

15

Defendants' profits and/or the election of statutory damages pursuant to 17 U.S.C. § 504(c).  *See*

16

Compl. ¶¶ 149–56.

17

**Defendants' Statement:**

18

Defendants seek: a) damages against Pirate Monitor sufficient to compensate Defendants

19

for the harm caused by Pirate Monitor's conduct; b) punitive damages against Pirate Monitor for

20

its fraudulent conduct; c) an injunction barring Pirate Monitor and all those in active concert with

21

it from its fraudulent conduct in the future; d) costs of this action along with attorneys' fees

22

pursuant to 17 U.S.C. §§ 505, 512(f); and e) such other and further relief as the Court may deem

23

just and proper.

24

## 12.  Settlement and ADR

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including which ADR process option the parties have selected and a proposed deadline, or if the parties do not agree, each party's preferred*

25
26
27
28

*option and timing, in compliance with ADR L.R. 3-5. In addition, the parties should include a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

The parties filed the ADR certification documents pursuant to ADR L.R. 3-5 on September 17, 2020. The parties believe that, at this time, prospects for settlement are low and do not believe that meaningful ADR can take place, but are open to readdress the potential scheduling of an ADR following significant progress in discovery and advancement of issues concerning class certification.

13.  Consent to Magistrate Judge For All Purposes

*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.*     ____ YES    _X_ NO

*See* Dkt. No. 19.

14.  Other References

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

This case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.  Narrowing of Issues

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

Plaintiffs voluntarily dismissed Alphabet Inc. (Dkt. No. 33) pursuant to the agreement that Defendants would not withhold documents relevant to this litigation in Alphabet's possession on the ground that Alphabet is not a named Defendant in the case. As noted, Defendants believe the case can be further streamlined via an early motion under Rule 12(c) and Rule 56.

16.  Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A.  If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

This case should not be handled under the Expedited Trial Procedure.

17. <u>Scheduling</u>
*Proposed dates for completion of initial ADR session, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

The parties' proposed respective dates for the case management deadlines set forth in L.R. 16-10 are set forth in Exhibit "A" attached hereto.

18. <u>Trial</u>
*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

The case will be tried to a jury and is expected to last two to three weeks.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>
*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

Defendants filed their Certification of Interested Entities and Persons on August 5, 2020 (Dkt. No. 29).

Plaintiffs filed Plaintiff Pirate Monitor's Certification of Interested Entities and Persons on July 13, 2020 (Dkt. No. 17), which was supplemented on September 30, 2020 (Dkt. No. 36). Plaintiffs filed Plaintiff Schneider's Certification of Interested Entities and Persons on September 30, 2020 (Dkt. No. 37). Pursuant to the General Standing Order, Paragraph 19, Plaintiffs state that no person or entity other than Plaintiffs is funding the prosecution of their claims.

20. <u>Professional Conduct</u>
*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

The attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. <u>Other</u>
*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

Because this is a putative Class Action, pursuant to Civil L.R. 16-9(a) Plaintiffs include the following information:

**(1)**    The specific paragraphs of Fed. R. Civ. P. 23 under which the action is maintainable as a class action:

Fed. R. Civ. P. 23(a), 23(b)(1)-(3), and/or 23(c)(4)

**(2)**    A description of the class or classes in whose behalf the action is brought:

A.    All persons holding the exclusive right to publicly perform, reproduce, publicly display, or distribute film, audiovisual, or musical works over the internet for works first going into the public domain after December 31, 1977 whose copyrighted works have been uploaded to YouTube within the relevant statute of limitations, whether in their entirety as part of one single upload or where a portion of the copyrighted work has been uploaded to YouTube, where such person has had to submit a successful takedown notice with respect to such work, and where such person's work has subsequently been infringed or uploaded without permission and where such person has not benefited from the YouTube Content ID program which would have automatically and without unilateral action allowed such person to monetize or prohibit that upload from being displayed, copied, distributed and performed on the YouTube site; and

B.    All persons holding the exclusive right to publicly perform, reproduce, publicly display, or distribute film, audiovisual, or musical works over the internet for works first published after 1976 and whose works have been uploaded to YouTube without the associated copyright management information within the relevant statute of limitations.

Excluded from the first class, but not the second class, are United States works not registered with the United States Copyright Office and any person who has authorized the Defendants to exploit their works;

Excluded from both classes are: (a) Defendants; (b) the subsidiaries and affiliates of Defendants; (c) any person or entity who is a partner, officer, director, employee, or controlling person of any Defendant; (d) any entity in which Defendant has a controlling interest; (e) any rights holder to whom Defendants have directly granted access to YouTube's Content ID program for acts of infringement occurring after such access began; and (f) the legal representatives, heirs, successors, and assigns of any excluded party.

**(3)** <u>Facts showing that the party is entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b);</u>

The facts showing that Plaintiffs are entitled to maintain the action under Fed. R. Civ. P. 23(a) and (b) are set forth in Paragraphs 102—107 of the Complaint.

**(4)** <u>A proposed date for the Court to consider whether the case can be maintained as a class action.</u>

Plaintiffs will move for class certification on September 17, 2021.

Dated: January 21, 2021        <u>/s/ Philip C. Korologos</u>

                                                   Counsel for Plaintiffs

Dated: January 21, 2021        <u>/s/ David Kramer</u>

                                                   Counsel for Defendants

**CASE MANAGEMENT ORDER**

The above JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved

as the Case Management Order for this case and all parties shall comply with its provisions. [In

addition, the Court makes the further orders stated below:]


IT IS SO ORDERED.

Dated:                          _____

                                        UNITED STATES DISTRICT JUDGE

**EXHIBIT A**

| Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|
| Commencement and completion of any ADR proceedings - 16-10(1) | N/A | N/A |
| Deadline to file motions to amend pleadings | May 16, 2021 | March 15, 2021 |
| Close of fact discovery related to class certification only | September 17, 2021 | July 15, 2021 |
| Deadline for Plaintiffs to file motion for class certification | September 17, 2021 | April 22, 2021 |
| Deadline for Defendants to file opposition to Plaintiffs' motion for class certification | October 15, 2021 | June 25, 2021 |
| Deadline for Plaintiffs' final identification of alleged infringements | For the reasons stated *supra* in Part 5, Plaintiffs are under no obligation to identify every alleged instance of infringement—nor could they as a practical matter—and therefore do not agree to a date certain to do so prior to the close of fact discovery. | July 15, 2021 |
| Deadline for Plaintiffs to file reply in support of motion for class certification | November 5, 2021 | July 22, 2021 |
| Hearing on Plaintiffs' motion for class certification | November 12, 2021 | August 5, 2021 |
| Close of fact discovery | January 21, 2022 | October 22, 2021 |
| Disclosure of proposed expert or other opinion witnesses | February 4, 2022 | October 29, 2021 |
| Opening expert reports due | March 4, 2022 | November 12, 2021 |
| Rebuttal expert reports due | April 8, 2022 | December 10, 2021 |
| Close of expert discovery | May 6, 2022 | January 5, 2022 |
| Deadline to move for summary judgment | June 10, 2022 | February 3, 2022 |
| Deadline to file opposition to motion for summary judgment | July 1, 2022 | March 3, 2022 |

| | | |
|---|---|---|
| Deadline to file reply in support of motion for summary judgment | July 29, 2022 | March 24, 2022 |
| Hearing on motion(s) for summary judgment | August 12, 2022 | April 7, 2022 |
| Serving and filing briefs on all significant disputed issues of law, including procedural and evidentiary issues (motions *in limine*, Daubert motions) | September 23, 2022 | May 26, 2022 |
| Counsel to meet and confer to prepare joint final pretrial conference statement and proposed order and coordinated submission of trial exhibits and other material | October 7, 2022 | June 2, 2022 |
| Filing joint final pretrial conference statement and proposed order | October 28, 2022 | June 23, 2022 |
| Serving and filing requested voir dire questions, jury instructions, and forms of verdict | October 28, 2022 | June 23, 2022 |
| Final pretrial conference | October 31, 2022 | June 30, 2022 |
| Lodging exhibits and other trial material, including copies of all exhibits to be offered and all schedules, summaries, diagrams and charts to be used at the trial other than for impeachment or rebuttal. Each proposed exhibit must be premarked for identification. Upon request, a party must make the original or the underlying documents of any exhibit available for inspection and copying | November 9, 2022 | July 11, 2022 |
| Serving and filing statements designating excerpts from depositions (specifying the witness and page and line references), from interrogatory answers and from responses to requests for admission to be offered at the trial other than for impeachment or rebuttal | November 9, 2022 | July 11, 2022 |
| Trial | November 28, 2022 | July 25, 2022 |