DAVID H. KRAMER, State Bar No. 168452
MAURA L. REES, State Bar No. 191698
LAUREN GALLO WHITE, State Bar No. 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
mrees@wsgr.com
lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants.

---

YOUTUBE, LLC and GOOGLE LLC,

Counterclaimants,

v.

PIRATE MONITOR LTD, PIRATE MONITOR LLC and GÁBOR CSUPÓ,

Counterclaim Defendants.

---

CASE NO.: 3:20-cv-04423-JD

**DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S AMENDED COUNTERCLAIMS**

## COUNTERCLAIMS

Counterclaimants Google LLC and YouTube, LLC (collectively "YouTube") assert the following Counterclaims against Pirate Monitor LTD, Pirate Monitor LLC (except where otherwise indicated, Pirate Monitor LTD and Pirate Monitor LLC are referred herein together as "Pirate Monitor") and Gábor Csupó ("Csupó"), on personal knowledge as to YouTube's own actions and on information and belief as to the actions of others, as follows:

1. Working together, Pirate Monitor and Csupó misused the YouTube service and engaged in a fraudulent scheme to obtain access to YouTube's copyright management systems. Using false identities and/or agents in an attempt to hide their involvement, Pirate Monitor and Csupó uploaded roughly two thousand videos to YouTube, each time representing that they had the rights to upload that content and that the content did not infringe any third party copyrights. Shortly thereafter, Pirate Monitor and Csupó invoked the notice-and-takedown provisions of the Digital Millennium Copyright Act ("DMCA") to demand that YouTube remove the very same videos that Pirate Monitor and Csupó had uploaded. In those notices, Pirate Monitor and Csupó represented that the videos were infringing their copyrights or those of copyright owners they claimed to represent.

2. Pirate Monitor and Csupó violated the law. Either they lied to YouTube when they uploaded the videos in the first place, or lied when they demanded their removal. Their misrepresentations were intended to fool YouTube into believing that they could be trusted not to abuse YouTube's powerful copyright management tools, including Content ID. And their machinations render them liable to YouTube for breach of contract and fraud or, alternatively, violations of Section 512(f) of the DMCA.

## THE PARTIES

3. **Counterclaim Plaintiff Google** is a Delaware limited liability company with its principal place of business in Mountain View, California. YouTube, a Google subsidiary, is a Delaware limited liability company with its principal place of business in San Bruno, California.

YouTube offers an online platform, including a website and mobile applications, that, among other things, enables users to share videos they post with a global audience at no charge.

4. **Counterclaim Defendant Pirate Monitor LTD**, a Plaintiff in this action, is a limited company claiming a principal place of business at Intershore Chambers, 3rd Floor, Geneva Place, Road Town, Tortola, VG1110 British Virgin Islands. Pirate Monitor LTD itself, or through agents and related entities, has operations in Hungary and California, but has not registered to do business in California. Pirate Monitor LTD claims in the Complaint to own the copyrights to certain works through assignment from Hungarian movie producer Mega Film Kft ("Mega Film"). Pirate Monitor LTD is a shell corporation set up principally if not exclusively for purposes of pursuing this action and furthering the unlawful scheme described below.

5. At the time of the filing of this pleading, despite filing this lawsuit against YouTube more than seven months ago, Pirate Monitor LTD has failed to produce a single document in response to YouTube's discovery requests that were served on October 12, 2020. YouTube's requests seek, among other things, information regarding Pirate Monitor LTD's corporate structure, identification of its agents and affiliates, its operations, its capitalization, and its observance of corporate formalities. Pirate Monitor LTD has not even indicated if or when document production will start. Pirate Monitor LTD is withholding the requested documentation in a further effort to conceal the facts regarding the misconduct about which YouTube complains, along with the identity of the individuals and entities involved.

6. **Counterclaim Defendant Gábor Csupó** is an individual, a Hungarian film director and a resident of California. Csupó is the managing director, sole stockholder, sole decision maker, and alter ego of Pirate Monitor LTD. From what YouTube has been able to piece together given Pirate Monitor LTD's refusal to provide any discovery, Pirate Monitor LTD has no principals or employees other than Csupó. It is inadequately capitalized, disregards corporate formalities, and commingles funds and other assets with Csupó. Csupó dominates and controls Pirate Monitor LTD to such an extent that it has no separate corporate personality. So thorough is Csupó's dominance of Pirate Monitor LTD that, if the actions of Pirate Monitor LTD

alleged herein were treated as those of Pirate Monitor LTD alone, and not those of Csupó, it would lead to an inequitable result. Csupó created Pirate Monitor LTD after his personal liability for the acts alleged herein first arose, and his misuse of the corporate form is continuing. As a result, Csupó is responsible, and personally liable for, not only his own actions, but the acts of Pirate Monitor LTD as well.

7. **Counterclaim Defendant Pirate Monitor LLC** represented itself to YouTube as a business entity, but YouTube has not found corporate registration information for a "Pirate Monitor LLC" anywhere in the world, and Pirate Monitor LTD has not provided any discovery on the question. Instead, it appears that Pirate Monitor LLC is merely an unincorporated d/b/a of Csupó. If Pirate Monitor LLC actually exists as a corporate entity at all, it is indistinguishable from Pirate Monitor LTD. Pirate Monitor LTD does not view Pirate Monitor LLC as an entity distinct from itself. In Paragraph 13 of its Complaint in this action, Pirate Monitor LTD alleges that it has applied for and been denied access to Content ID and that it has sent "successful takedown requests" to YouTube. But, according to YouTube's records, the only Pirate Monitor entity that has applied for Content ID or sent "successful takedown notices" to YouTube is the entity calling itself "Pirate Monitor LLC." By claiming Pirate Monitor LLC's actions as its own in the Complaint (in allegations that are central to its claim to represent a putative class), Pirate Monitor LTD has demonstrated that it believes itself to be, and holds itself out as, functionally the same entity as Pirate Monitor LLC.

8. No matter what Pirate Monitor LLC's corporate status, Csupó is responsible for the acts of Pirate Monitor LLC. Insofar as Pirate Monitor LLC is an unincorporated d/b/a of Csupó, Pirate Monitor LLC's actions are Csupó's actions, and Csupó is personally liable for them. Alternatively, insofar as Pirate Monitor LLC actually exists as a corporate entity, Csupó is the alter ego of Pirate Monitor LLC. From what YouTube has been able to piece together given Pirate Monitor LTD's refusal to provide any discovery, Pirate Monitor LLC has no other principals, employees, or even operations. It is a shell corporation set up for purposes of furthering the scheme described herein. Under Csupó's sole control, Pirate Monitor LLC is

inadequately capitalized, disregards corporate formalities, and commingles funds and other assets with Csupó. Csupó dominates and controls Pirate Monitor LLC to such an extent that it has no separate corporate personality. So thorough is Csupó's dominance of Pirate Monitor LLC that if its actions alleged herein were treated as those of Pirate Monitor LLC alone, and not those of Csupó, it would lead to an inequitable result. As a result, Csupó is responsible and personally liable for the acts of Pirate Monitor LLC.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367.

10. Pirate Monitor LTD is subject to this Court's personal jurisdiction because it has availed itself of the jurisdiction of this Court by filing the Complaint in this action and because it has minimum contacts with the State of California. The Court also has personal jurisdiction over Pirate Monitor LTD because it consented to such jurisdiction in the Terms of Service Agreement it entered into with YouTube and because it purposefully directed the misconduct described herein against YouTube in this District.

11. Csupó is subject to this Court's personal jurisdiction because he is a resident of California and because he has minimum contacts with this State. The Court also has personal jurisdiction over Csupó because he is the alter ego of Plaintiff Pirate Monitor LTD and thus availed himself of this Court's jurisdiction by filing the Complaint in this action. The Court also has personal jurisdiction over Csupó because he consented to such jurisdiction in the Terms of Service Agreement he entered into with YouTube and because he purposefully directed the misconduct described herein against YouTube in this District.

12. To the extent it is a corporate entity separate from Pirate Monitor LTD or Csupó, Pirate Monitor LLC is subject to this Court's personal jurisdiction because it has availed itself of the jurisdiction of this Court because it consented to such jurisdiction in the Terms of Service Agreement it entered into with YouTube, and because it purposefully directed the misconduct described herein against YouTube in this District.

13. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(a) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, because this Court has personal jurisdiction over Counterclaim Defendants, because Pirate Monitor LTD filed the Complaint in this district, and because Pirate Monitor LTD, Pirate Monitor LLC, and Csupó consented to venue in this District via the Terms of Service Agreements that they entered into with YouTube.

**The YouTube Service**

14. Since its founding in 2005, YouTube has pursued the goal of providing a platform for users to share their video creations with the world. YouTube serves as an unparalleled medium for free marketing, exposure, and visibility for everyone from individuals to established corporate brands.

15. YouTube also offers a worldwide audience the opportunity to access and watch an extraordinarily diverse library of original, creative expression.

16. YouTube has never been a service devoted to promoting piracy or illegitimate uses of copyrighted works. Rather, YouTube is strongly committed to helping copyright owners protect against the unauthorized use of their works on the service, and it has implemented numerous industry-leading initiatives toward this end.

17. While YouTube complies in all respects with safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"), YouTube's efforts in helping copyright owners and content creators protect against unwanted use of their works goes far beyond what the law requires.

18. For example, YouTube has invested over $100 million to develop Content ID, a best-in-class content identification system that uses digital fingerprinting technology to help identify copyrighted materials. Using Content ID, rightsholders and/or their agents can be automatically notified of user-uploaded videos that "match" what they claim are their copyrighted works and can choose in advance what they want to happen when those videos are

detected, including options to "monetize" the videos, (i.e. earn advertising revenue when users watch the videos) or to "block" the videos from appearing altogether.

19. Content ID and YouTube's other scaled copyright management tools empower users to automatically, or at the touch of a button, remove content from YouTube or block it from appearing in the first place. The tools thus have the potential to be used improperly to censor videos that others have every right to post and share through YouTube. Further, the tools enable users to claim ownership rights in others' content, and to siphon to themselves revenue that rightly belongs to others.

20. Because of the potential for abuse of these scaled tools, YouTube limits access to them, seeking to ensure that those who use them will do so responsibly, and will not cause harm to YouTube, its users, or to other copyright owners.

**Users' Promises And Representations To YouTube**

21. To create an account and post content on the YouTube service, users must affirmatively accept the YouTube Terms of Service Agreement (the "ToS Agreement"). Parties to the ToS Agreement consent to personal jurisdiction and exclusive venue for disputes arising out of or relating to the YouTube service in the Courts of Santa Clara County, California.

22. Under the applicable ToS Agreement in effect during all times relevant to these counterclaims, a user creating a YouTube account promised to provide "accurate and complete" identification information for the account to YouTube.

23. Under the ToS Agreement in effect during all times relevant to these counterclaims, users represent and warrant to YouTube that if they upload any content to the YouTube service, they will "own or have the necessary licenses, rights, consents, and permissions to publish Content [they] submit." Users also promise that any "content [they] submit to the Service [will] not contain third party copyrighted material, or material that is subject to other third party proprietary rights, unless [they have] permission from the rightful owner of the material or [they are] otherwise legally entitled to post the material." And users

agree to grant YouTube a copyright license in and to any content they submit, representing that they have the required rights to do so.

24. In addition to accepting the ToS Agreement and making the representations and promises it contains when creating an account, users must reaffirm their agreement to the ToS each time they upload material to the service. In that upload process, users are again expressly warned against submitting content that violates others' copyrights.

**Pirate Monitor And Csupó Uploaded Nearly 2000 Video Clips To YouTube Through "Ransom Nova" Accounts And Represented That They Did Not Infringe Anyone's Copyright**

25. From August through November 2019, Pirate Monitor and Csupó created, or authorized and directed their agents to create, at least 23 accounts on YouTube. Each time they caused a new account to be created, Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control, affirmatively agreed to the YouTube ToS Agreement, and made the representations and promises to YouTube that are set out in the ToS Agreement.

26. Among other things, Pirate Monitor and Csupó promised to provide YouTube with "accurate and complete" identification information for their YouTube accounts. They represented and warranted to YouTube that if they uploaded any content to the YouTube service, they would "own or have the necessary licenses, rights, consents, and permissions to publish Content [they] submit." They also promised that any "content [they] submit to the Service [will] not contain third party copyrighted material, or material that is subject to other third party proprietary rights, unless [they have] permission from the rightful owner of the material or [they are] otherwise legally entitled to post the material." And they granted YouTube a copyright license to the videos they submitted, representing that they had the required rights to do so.

27. To deceive YouTube, and in violation of the ToS Agreement, Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control, provided bogus account registration information. Rather than properly identifying themselves as the account creator, Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction

and control, used alternative account names and contact information designed to mask the relationship of the account creators and the accounts to Pirate Monitor and Csupó.

28. Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control, created and used at least the following YouTube accounts (or "channels") between August 23 and November 13, 2019:

| Account Name | Associated Email Address | Account Creation Date |
|---|---|---|
| ransom nova2 | ransomnova2@gmail.com | August 23, 2019 |
| ransom nova3 | ransomnova3@gmail.com | September 3, 2019 |
| ransom nova | ransomnova4@gmail.com | September 25, 2019 |
| ransom nova6 | ransomnova6@gmail.com | September 28, 2019 |
| ransom nova | ransomnova7@gmail.com | September 28, 2019 |
| ransom nova | ransomnova8@gmail.com | October 7, 2019 |
| ransom nova9 | ransomnova9@gmail.com | October 7, 2019 |
| ransom nova10 | ransomnova10@gmail.com | October 7, 2019 |
| ransom nova11 | ransomnova11@gmail.com | October 7, 2019 |
| ransom nova12 | ransomnova12@gmail.com | October 7, 2019 |
| ransom nova13 | ransomnova13@gmail.com | October 8, 2019 |
| ransom nova14 | ransomnova14@gmail.com | October 8, 2019 |
| ransom nova15 | ransomnova15@gmail.com | October 8, 2019 |
| Massive Films | ransomnova18@gmail.com | November 4, 2019 |
| Movie Mania | ransomnova19@gmail.com | November 5, 2019 |
| Movie Fun | ransomnova20@gmail.com | November 6, 2019 |
| Movie Festival | ransomnova21@gmail.com | November 8, 2019 |
| Entertainment Movie Channel | ransomnova22@gmail.com | November 8, 2019 |
| Ultimate Entertainment | ransomnova23@gmail.com | November 9, 2019 |

| | | |
|---|---|---|
| Avengers | ransomnova25@gmail.com | November 10, 2019 |
| Fantastic | ransomnova26@gmail.com | November 10, 2019 |
| Amazing Channel | ransomnova27@gmail.com | November 10, 2019 |
| Avenger film | ransomnova29@gmail.com | November 13, 2019 |

29. Most of the account names that Pirate Monitor or its agents selected for these accounts were variants on the name "Ransom Nova." Variations of the name "Ransom Nova" also appear in the email addresses that Pirate Monitor or its agents supplied in the account registration process. YouTube refers to these accounts hereafter as the "Ransom Nova accounts."

30. The person(s) who created the Ransom Nova accounts did so using a computing device connected to the YouTube service via Internet Protocol ("IP") addresses indicating that they were in Pakistan at the time the accounts were created.

31. From at least August 24, 2019 through at least November 13, 2019, Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control, used the Ransom Nova accounts to upload at least 1,960 videos to YouTube. At the time of the uploads, the Ransom Nova accounts were connected to the YouTube service from a computing device using IP addresses again indicating that they were in Pakistan.

32. Using the Ransom Nova accounts, Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control uploaded hundreds of video clips from the Hungarian film *Csak szex és más semi* ("*Csak szex*"), one of the copyrighted works that Pirate Monitor LTD claimed to own in the Complaint and accused YouTube of infringing in this action.

33. Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control, also used the Ransom Nova accounts to upload hundreds of video clips from the Hungarian film *Zimmer Feri* to YouTube. *Zimmer Feri* is a prequel to *Zimmer Feri 2*, another work that Pirate Monitor claimed to own in the Complaint and accused YouTube of infringing in this action.

34. Each time Pirate Monitor and Csupó, or the agents acting on their behalf and under their direction and control, uploaded a video to the YouTube service through the Ransom Nova accounts, they were required to and did reconfirm that they were abiding by the ToS Agreement; in relevant part, they represented and warranted to YouTube each time that they owned or had the rights to upload and license the material contained in the videos and that the videos they uploaded did not infringe any third party's copyrights.

**Pirate Monitor Demanded Removal Of The Nearly 2000 Video Clips It Had Previously Uploaded Through the Ransom Nova Accounts, Charging That They Infringed Copyrights**

35. Between October 29 and November 15, 2019, Pirate Monitor and Csupó sent YouTube hundreds of takedown notices under the DMCA for the same videos they had uploaded or had directed to be uploaded through the Ransom Nova accounts. The DMCA takedown notices were sent in the name of an entity calling itself "Pirate Monitor LLC," using a Google account opened in the name of Gábor Csupó with the email address usintellectualpropertyllc@gmail.com. Csupó electronically signed each of the takedown notices.

36. In those DMCA takedown notices, Pirate Monitor and Csupó represented to YouTube under penalty of perjury that "Mega Film" was the copyright owner of the videos that were the subject of the notices, and that they were Mega Film's authorized representatives. Pirate Monitor and Csupó also represented in the notices that the targeted video clips included material from the films *Czak Szex* and *Zimmer Feri* that infringed Mega Film's copyrights—i.e., that the use was not "authorized by Mega Film, its agents or the law." The notices were all virtually identical save for targeting different video clips uploaded through varying Ransom Nova accounts.

37. At the time YouTube received these DMCA takedown notices from Pirate Monitor and Csupó, it was not aware of the connection between Pirate Monitor and Csupó on the one hand and the Ransom Nova accounts on the other. YouTube did not know that the parties insisting that the videos were infringing and should be removed were the same parties that had

uploaded or directed the upload of the videos in the first place and who had represented in that process that the videos were not infringing.

38. In reliance on the representations from Pirate Monitor and Csupó in the takedown notices that were made to YouTube via the DMCA's statutorily prescribed mechanism, YouTube processed approximately 1,800 separate notices from Pirate Monitor and Csupó and expeditiously removed the targeted videos.

**Pirate Monitor And Csupó's Scheme Amounts Either To Fraud And Breach Of Contract Or A Violation Of Section 512(f) Of The DMCA**

39. As set forth above, Pirate Monitor and Csupó uploaded, or authorized and directed their agents to upload, nearly two thousand videos to YouTube, representing to YouTube that the videos did not infringe copyrights, and then promptly sent DMCA takedown notices for the same videos, representing to YouTube that the videos did infringe copyrights. Without the benefit of discovery, it is unclear which of these conflicting representations about the videos were truthful. But either way, Pirate Monitor and Csupó made material misrepresentations on which YouTube relied.

40. On the one hand, if Pirate Monitor and Csupó falsely represented to YouTube that they had the authority to post the videos and that the videos did not infringe anyone's copyrights, then Pirate Monitor and Csupó breached the ToS Agreement and perpetrated a fraud on YouTube. Had Pirate Monitor and Csupó not made the representations to YouTube that they did, YouTube would not have allowed them to create accounts on the service, and it would not have allowed them to upload content to the service.

41. On the other hand, if Pirate Monitor and Csupó accurately represented to YouTube that they had the authority to post the videos and that the videos did not infringe any third party's copyrights, then Pirate Monitor and Csupó made knowingly false statements when they subsequently represented to YouTube in their DMCA takedown notices that those same videos were infringing.

42. These conflicting representations from Pirate Monitor and Csupó were no accident. Their serial uploads and DMCA takedown notices for the same videos were central to a scheme through which they hoped to gain access to YouTube's powerful copyright management tools, in particular Content ID.

43. In May 2019, an entity calling itself Pirate Monitor LLC applied for access to use YouTube's copyright management tools. The application was made by Gabor Csupó, who supplied the email address usintellectualpropertyllc@gmail.com.

44. YouTube denied this application in June 2019, explaining to Pirate Monitor and Csupó that access to YouTube's copyright management tools was predicated in part on demonstrating both a need for such access and a history of properly using the DMCA takedown notice process.

45. Pirate Monitor and Csupó believed that they could demonstrate both the need for access, and a track record of valid DMCA takedown notices, by surreptitiously uploading a substantial volume of content through accounts seemingly unconnected to them, and then sending DMCA takedown notices for that same content. Three months after YouTube declined their copyright management tools application, Pirate Monitor and Csupó began the process of creating the Ransom Nova accounts and uploading videos through those accounts, in furtherance of their scheme.

**The Evidence To Date Without Discovery Of The Connection Between Pirate Monitor, Csupó, And The Ransom Nova Accounts**

46. Pirate Monitor and Csupó are in sole possession of the full information regarding their unlawful scheme, and have refused to provide any of it to YouTube in response to YouTube's specific discovery requests. By way of example, attached as Exhibit A is a true and correct copy of Pirate Monitor LTD's objections and responses to YouTube's Second Set of Document Requests in which it objects in full to every request, including those seeking information regarding *inter alia*, Ransom Nova and Pirate Monitor LLC.

47. While withholding from YouTube all relevant information they possess, Pirate Monitor and Csupó have never denied that they and/or their agents were responsible for creating the Ransom Nova accounts. They have never denied that they and/or their agents uploaded through those accounts the very same videos that they then promptly claimed in DMCA takedown notices were infringing.

48. YouTube already has overwhelming evidence that reveals Pirate Monitor and Csupó's deceptions and demonstrates that Pirate Monitor and Csupó either operated the Ransom Nova accounts directly or that the person(s) operating the Ransom Nova accounts were agents of Pirate Monitor and Csupó, acting at their direction and control and for their benefit.

49. First, the video uploading activity conducted through the Ransom Nova accounts was not consistent with the behavior of users actually seeking to share videos with others through the YouTube service. Though the videos contained clips from the Hungarian movies *Csak szex* and *Zimmer Feri*, the user(s) uploading those videos selected nondescript titles for the clips, such as "Test1" or "Hot Clip." An uploader genuinely seeking an audience on YouTube for clips from those films would have selected titles that enabled users looking for clips from the films to find them. Additionally, almost all of the nearly two thousand video clips uploaded via the Ransom Nova accounts were the same length, 31 seconds, and they did not correspond to particular moments or scenes from the films. Further, the clips were not uploaded in any recognizable order, such as to track the films sequentially. It is evident from this unusual pattern that the person(s) who uploaded these clips to YouTube through the Ransom Nova accounts did not expect anyone to actually find and watch them. That is because the videos were not uploaded by a genuine YouTube user, but instead by or at the direction of Pirate Monitor and Csupó for the purpose of sending DMCA takedown notices for those clips.

50. Second, Pirate Monitor and Csupó regularly sent DMCA takedown notices for videos uploaded through the Ransom Nova accounts within a very short time—no more than a few days—after the videos were uploaded. For example, 99 clips were uploaded through the "Ransom Nova" account, "Amazing Channel," on November 10, 2019. All 99 clips were the

subject of DMCA takedown notices four days later. When Pirate Monitor and Csupó sent their takedown notices, none of the videos targeted in those notices had an appreciable number of views on YouTube. In many cases, ***the videos targeted in Pirate Monitor and Csupó's takedown notices had not recorded even a single view on YouTube.*** In other words, Pirate Monitor and Csupó knew that the videos for which they sent takedown notices were on the YouTube service without having to actually view them. That is because Pirate Monitor and Csupó were responsible for having uploaded those videos in the first place.

51. Third, there is powerful forensic evidence tying Pirate Monitor and Csupó to the Ransom Nova accounts. When Pirate Monitor and Csupó sent their takedown notices to YouTube—on behalf of Hungarian film company Mega Film—for videos uploaded through the Ransom Nova accounts, they had no reason to conceal their identities. They correctly identified themselves and invariably sent their takedown notices from a computer connected to the Internet via a unique Hungarian IP address: 217.65.XXX.XXX. On November 12, 2019, Pirate Monitor and Csupó were sending takedown notices to YouTube from that Hungarian IP address. At roughly the same time, someone logged into one of the Ransom Nova accounts—specifically the account created by RansomNova7@gmail.com—not from a Pakistani IP address, but from the same IP address in Hungary (217.65.XXX.XXX) that Pirate Monitor and Csupó were concurrently using to send the takedown notices. **In other words, RansomNova7 was sharing a computer and/or unique Internet connection with Pirate Monitor and Csupó in Hungary on the same day (and in fact, at almost the same time) that Pirate Monitor and Csupó were using that same computer and/or Internet connection to send takedown notices to YouTube**. That is because the person operating and responsible for the RansomNova7@gmail.com account either was Pirate Monitor or Csupó, or someone acting on their behalf.

52. YouTube's investigation following the filing of this lawsuit has further revealed that the person or persons who created several of the Ransom Nova accounts on YouTube supplied the email address sarfrazjbd@gmail.com in connection with the accounts. That address

is registered to a person named Sarfraz Arshad Khan. Mr. Khan represents himself on the Internet as a Pakistani resident and computer services freelancer and advertises having expertise in data entry and promotion of content on YouTube. Mr. Khan also has a LinkedIn profile, posted under the name "Ransom Nova," which states that he is a computer science student in Pakistan. These facts make it extremely unlikely that Mr. Khan was acting on his own in setting up and using the Ransom Nova accounts, but instead suggest that he was hired by Pirate Monitor and Csupó to perform that work.

53. Although Pirate Monitor has withheld all evidence, based on what YouTube knows today, the only plausible conclusion is that the Ransom Nova accounts were created and operated directly by Pirate Monitor and Csupó as part of the scheme alleged herein, or that they were created and operated by agents, including Mr. Khan, acting at the direction and control of Pirate Monitor and Csupó and for their benefit. Either way, Pirate Monitor and Csupó are responsible for the acts performed through the Ransom Nova accounts.

**COUNTERCLAIM I: Against Pirate Monitor LTD, Pirate Monitor LLC, And Gábor Csupó**
**Breach Of Contract**

54. YouTube restates and realleges the preceding allegations of its Counterclaims.

55. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó directly themselves, and/or through their authorized agents who created the "Ransom Nova" accounts, agreed to be bound by the ToS Agreement.

56. The ToS Agreement constitutes a valid, binding contract between each of Pirate Monitor LTD, Pirate Monitor LLC, and Csupó, and YouTube.

57. YouTube has performed its obligations under the ToS Agreement, save for any that have been excused, including by providing YouTube services to the parties who created the "Ransom Nova" YouTube accounts.

58. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó directly themselves, and/or through their authorized agents who created the "Ransom Nova" accounts, breached the ToS Agreement by, among other things:

i. failing to provide complete and accurate identification information in the account creation process; and

ii. uploading videos to YouTube that infringed third-party copyrights.

59. These breaches have proximately caused damage to YouTube, including among other things, the cost of investigating and processing the subsequent DMCA takedown notices sent by Pirate Monitor and Csupó claiming that the content they uploaded was infringing.

60. To the extent that Pirate Monitor LTD's claims in this action implicate content that Pirate Monitor itself uploaded (or is responsible for causing to be uploaded) to the YouTube service, the costs of defending the action as well as any liability also constitute damages proximately caused by Pirate Monitor's breaches of contract.

61. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó are additionally obligated under their ToS Agreements with YouTube to indemnify YouTube for claims arising out of or relating to their use of the YouTube service. In seeking defense costs and any potential liability in this action as damages for these contract breaches, YouTube expressly preserves its separate entitlement to contractual indemnity and is entitled to that indemnity to the extent Pirate Monitor LTD, Pirate Monitor LLC, and Csupó refuse to honor their indemnity obligation.

**COUNTERCLAIM II: Against Pirate Monitor LTD, Pirate Monitor LLC, And Gábor Csupó**
**Fraud**

62. YouTube restates and realleges the preceding allegations of its Counterclaims.

63. Between at least August 23 and at least November 13, 2019, Pirate Monitor LTD, Pirate Monitor LLC, and Csupó directly themselves, and/or through their authorized agents, created at least 23 "Ransom Nova" YouTube accounts. Each time they created a new account, they made the representations and promises to YouTube that are set out in the ToS Agreement.

64. Among other things, Pirate Monitor LTD, Pirate Monitor LLC, and Csupó directly themselves, and/or through their authorized agents, promised to provide YouTube with "accurate and complete" identification information for their YouTube accounts. They promised YouTube that if they uploaded any content to the YouTube service, they would "own or have the

necessary licenses, rights, consents, and permissions to publish Content [they] submit." They also promised that any "content [they] submit to the Service [will] not contain third party copyrighted material, or material that is subject to other third party proprietary rights, unless [they have] permission from the rightful owner of the material or [they are] otherwise legally entitled to post the material." And they granted YouTube a copyright license to any videos they submitted, representing that they had the required rights to do so.

65. Each time Pirate Monitor LTD, Pirate Monitor LLC, and Csupó directly themselves, and/or through their authorized agents uploaded a video to the YouTube service, they reaffirmed their agreement to the ToS Agreement, and made those same promises and representations.

66. But Pirate Monitor LTD, Pirate Monitor LLC, and Csupó had no intention of honoring the promises in the ToS Agreement either at the time they created their accounts or when they uploaded videos to the service. Rather, they intended to use the service to upload material that infringed third-party copyrights.

67. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó themselves or through their authorized agents also represented to YouTube through the ToS Agreement at the time they created the Ransom Nova accounts and again in the video upload process that they had the authority to post the videos that they did, and that the videos did not infringe any third party's copyrights. These representations were made, in materially identical form, each time videos were uploaded through the Ransom Nova accounts. The representations were false, and Pirate Monitor LTD, Pirate Monitor LLC, and Csupó knew that the representations were false.

68. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó made those representations or caused their authorized agents to make them with the intention of inducing YouTube to accept and allow to be uploaded the content that Pirate Monitor LTD, Pirate Monitor LLC, and Csupó wanted uploaded to the YouTube service.

69. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó made the false promises and misrepresentations they did because they knew that YouTube would not allow them to create

accounts or allow them to upload content through those accounts if they did not make those false promises and misrepresentations. That, in turn, would have frustrated their scheme to send mass takedown notices and establish the track record they hoped would gain them access to YouTube's copyright management tools.

70. YouTube relied on Pirate Monitor LTD, Pirate Monitor LLC, and Csupó's false promises and misrepresentations by allowing them to create accounts and by accepting content uploaded through those accounts to the YouTube service. YouTube would not have allowed the creation of the accounts or accepted the content but for Pirate Monitor LTD, Pirate Monitor LLC, and Csupó's false promises and misrepresentations.

71. YouTube's reliance was justifiable. It had no reason to believe Pirate Monitor LTD, Pirate Monitor LLC, and Csupó would make promises they had no intention of performing or misrepresent the nature of the content they were uploading.

72. Because they hid their intention not to honor their promises in the ToS Agreement, and because of the misrepresentations they made in the ToS Agreement, Pirate Monitor LTD, Pirate Monitor LLC, and Csupó were able to create at least 23 accounts and upload at least 1,960 videos to YouTube, and soon thereafter sent DMCA takedown notices for those same videos.

73. As a proximate result of Pirate Monitor LTD, Pirate Monitor LLC, and Csupó's promises made without intention to perform and misrepresentations, YouTube has been damaged in an amount to be proven at trial, but including among other things, the cost of processing at least 1,800 DMCA takedown notices for the content Pirate Monitor LTD, Pirate Monitor LLC, and Csupó uploaded, and the cost of investigating and remediating their misconduct.

74. To the extent that Pirate Monitor LTD's claims in this action implicate content that Pirate Monitor LTD itself uploaded to the YouTube service, the costs of defending the action as well as any liability also constitute damages proximately caused by Pirate Monitor LTD's promises without intention to perform and false representations.

75. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó's conduct was undertaken with the intent to injure YouTube, and with a willful and conscious disregard of YouTube's rights, and constitutes fraud and malice under California Civil Code Section 3294. As a result, YouTube is entitled to an award of punitive damages against Pirate Monitor LTD, Pirate Monitor LLC, and Csupó in an amount sufficient to punish them and deter them from future misconduct.

**COUNTERCLAIM III: Against Pirate Monitor LTD, Pirate Monitor LLC, And Gábor Csupó (In the alternative to Counterclaims I & II) Violation of 17 U.S.C § 512(f)**

76. YouTube pleads Counterclaim III as an alternative to Counterclaims I & II, and incorporates the preceding allegations of Paragraphs 1 to 53 herein.

77. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó directly themselves, and/or through their authorized agents who created the "Ransom Nova" accounts, repeatedly represented to YouTube in the ToS Agreement and in the upload process that they had the authority to post the videos that they did, and that the videos did not infringe any third party's copyrights. Those representations were true.

78. From October 29, 2019 through November 15, 2019, Pirate Monitor and Csupó sent approximately 1,800 DMCA takedown notices to YouTube for content that they themselves had uploaded to YouTube. Each of those notices was sent by "Pirate Monitor LLC" signed by Csupó.

79. In their DMCA takedown notices, Pirate Monitor and Csupó expressly represented to YouTube that the videos identified in the notices infringed the copyrights of a party they were authorized to represent (Mega Film). They further declared that the information in the takedown notices was accurate, and declared under penalty of perjury that they were the owner, or an agent authorized to act on behalf of the owner, of an exclusive right that was allegedly infringed.

80. Pirate Monitor and Csupó's representations in those DMCA takedown notices regarding infringement were knowingly false. As Pirate Monitor and Csupó knew, the videos

they identified as infringing in their DMCA takedown notices were not infringing their copyrights or those of copyright owners that they represented. In fact, through their authorized agents who created the "Ransom Nova" accounts, Pirate Monitor and Csupó themselves had uploaded those same videos.

81. Each time they sent DMCA takedown notices to YouTube for videos they had uploaded, Pirate Monitor and Csupó knowingly and materially misrepresented that material or activity on YouTube was infringing.

82. YouTube, the service provider that received these DMCA takedown notices, relied upon the misrepresentations made by Pirate Monitor LLC and Csupó therein by removing or disabling access to the material they falsely claimed was infringing. YouTube's reliance was reasonable, given that the notices at issue were made in the form prescribed by the DMCA, 17 U.S.C. § 512(c)(3).

83. YouTube was injured by Pirate Monitor and Csupó's misrepresentations in their DMCA notices. But for those misrepresentations, YouTube would not have had to incur the costs of processing approximately 1,800 DMCA notices and removing the videos identified in those notices. Further, as a result of Pirate Monitor and Csupó's misrepresentations, YouTube had to expend substantial additional sums on an investigation in an effort to detect and thwart their deceptive behavior.

84. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó have yet to admit their role in the scheme detailed herein, much less forsworn similar misconduct in the future. The sheer number of material misrepresentations they made in DMCA takedown notices demonstrates that they have little fear of the threat of monetary liability under Section 512(f). Further, as the Complaint in this action demonstrates, Pirate Monitor LTD, Pirate Monitor LLC, and Csupó still harbor the same motive to obtain access to Content ID as they did when they first hatched their plan.

85. Pirate Monitor LTD, Pirate Monitor LLC, and Csupó have demonstrated their willingness to conceal their identities in furtherance of their goals. Having been caught by

YouTube, they now can learn from their mistakes to evade detection in the future by, *inter alia*, selecting new account names, masking their IP addresses, using new and different agents to upload videos, and sending new false DMCA takedown notices for different videos that their new agents upload. Because YouTube relies on the sworn representations made by those that send facially valid copyright removal requests, there is no guarantee it can detect and prevent such fraudulent behavior in the future, nor should it be forced to expend substantial sums to try to do so. Further, YouTube has no ready means of calculating the harm that such misrepresentations would cause to YouTube or its users in terms of lost goodwill, lost audiences, and lost opportunities. To prevent such irreparable harm, injunctive relief barring Pirate Monitor LTD, Pirate Monitor LLC, and Csupó from future misrepresentations in DMCA takedown notices is warranted.

**PRAYER FOR RELIEF**

Wherefore, YouTube respectfully requests that the Court:

a. Award damages against Pirate Monitor LTD, Pirate Monitor LLC, and Gábor Csupó sufficient to compensate YouTube for the harm caused by their conduct;

b. Award punitive damages against Pirate Monitor LTD, Pirate Monitor LLC, and Gábor Csupó for their fraudulent conduct;

c. Issue an injunction barring Pirate Monitor LTD, Pirate Monitor LLC, and Gábor Csupó and all those in active concert with them from submitting notices of alleged infringement to YouTube that misrepresent that material on the YouTube service is infringing copyrights held or claimed to be held by Pirate Monitor LTD, Pirate Monitor LLC, and Gábor Csupó or anyone they claim to represent.

d. Award YouTube the costs of this action along with attorneys' fees pursuant to 17 U.S.C. § 512(f) against Pirate Monitor LTD, Pirate Monitor LLC, and Gábor Csupó; and

e. Award YouTube such other and further relief as the Court may deem just and proper.

Dated: February 19, 2021

Respectfully submitted

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *\/s/ David H. Kramer*

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC