

April 2, 2021

**VIA ECF**
The Honorable James Donato
United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

*Schneider v. YouTube*—Case No. 3:20-cv-04423 (N.D. Cal.)

Dear Judge Donato,

      We represent Plaintiff, and putative class representative, Maria Schneider and respectfully submit this letter motion seeking an order compelling production of certain documents requested by Plaintiffs' October 28, 2020 First Set of Requests for Production. We certify that the parties have met and conferred on the issues raised here consistent with Your Honor's Standing Orders.

      Plaintiff respectfully requests that the Court compel Defendants to produce: (1) Takedown Notices that copyright holders have submitted requesting Defendants remove infringing videos and documents related to such notices; (2) documents and data concerning Defendants' knowledge of uploaders who are repeat infringers as evidenced by multiple instances of infringing uploads identified by YouTube's Content ID system even though YouTube did not penalize or ban them; and (3) document and data retention policies.

**I. Relevant Background**

      Ms. Schneider is a seven-time Grammy Award-winning musician who, like other members of the putative class of copyright holders, has had her music and compositions repeatedly infringed on YouTube. This lawsuit seeks redress for Defendants' systematic and intentional infringement and facilitation of infringement of copyrighted works. Defendants' wrongful conduct is motivated by, and has benefited them through, increased traffic on the YouTube platform thereby driving up Defendants' advertising revenues.

      YouTube has a two-tiered copyright enforcement system. Content ID is YouTube's premier system that uses digital fingerprints of copyrighted works to identify and block infringing videos at the time of upload and does not require the submission of a Takedown Notice. (Dkt. 1 ¶¶ 2, 8, 10, 56.) Content ID, however, is available only to large copyright holders such as record labels and production companies. (*Id.* ¶ 57.) Plaintiff and other members of the putative class are smaller copyright owners who have been denied access to Content ID. (*Id.* ¶ 99.A.) Without such access, Plaintiff and the class must manually identify infringement after it has occurred and submit Takedown Notices. (*Id.* ¶ 10.)

      Both elements of this two-tiered system are relevant to the claims here including because of their role in establishing whether Defendants should be prohibited from taking advantage of safe harbors against copyright liability granted by the Digital Millennium Copyright Act of 1998, 17 U.S.C. § 512 ("DMCA"). Those safe harbors are not available absent "a policy that provides



for the termination in appropriate circumstances of" uploaders "who are repeat infringers".  17 U.S.C. § 512(i); *see also* Dkt 1, ¶¶ 12, 88.

YouTube publicly touts Content ID as handling the vast majority of its copyright enforcement issues; but infringing uploads identified by Content ID are *never* counted as "copyright strikes" that YouTube tracks when identifying repeat infringers for termination.  (Dkt 1 ¶ 89.) Instead, the only way YouTube issues a copyright strike toward termination is on the basis of the vastly smaller number of takedown notices submitted after a copyright holder manually finds infringement. Infringement caught by Content ID is excluded entirely.  (*Id.* ¶ 88.)  Defendants' failure to assess penalties, including copyright strikes and termination for these repeat infringers: (i) fails to satisfy the reasonableness requirement to track and terminate repeat infringers as required for the safe harbors; (ii) encourages and incentivizes users to continue posting infringing content; and (iii) creates the constructive (if not actual) knowledge of infringement that is an independent basis to deny access to the DMCA safe harbors.  (*Id.* ¶¶ 88-91.)

Independent of the safe harbor issues, Takedown Notices are also relevant: (a) to the definition of the class, which includes only those copyright holders who have submitted a successful takedown notice (*id.* ¶ 99.A); (b) because YouTube claims that submitting too many such notices is a valid basis to ban non-Content ID copyright holders from using tools designed to help them manually locate infringing content (a policy that forms an independent basis to deny DMCA safe harbors) (*id.* ¶¶ 14, 86); and (c) to Defendants' knowledge that YouTube displayed and distributed unauthorized and infringing copies of putative class members' copyrighted works that contain copyright management information ("CMI") (*id.* ¶ 144) that "Defendants thereafter displayed and distributed . . . with the intent and knowledge that" the CMI identifying putative members as the rights holders "had been removed . . .  without the permission of Plaintiffs and the Class" in violation of relevant statutes (*id.* ¶¶ 145-48).

**II.  Defendants Must Produce Takedown Notices and Related Documents as Well as Data on Repeat Infringers Caught by Content ID.**

Request 20 seeks documents sufficient to identify each user who has uploaded or attempted to upload videos identified as infringing by Content ID and information about such uploads.  Request 27 seeks "All Documents Concerning Takedown Notices You have received" including the Takedown Notices and certain documents regarding such notices.  Request 28 seeks "All databases Concerning Takedown Notices and Documents sufficient to show all fields" thereof.  Excerpts of the Requests and Responses are in Exhibits A and B, hereto, respectively.

The identity of users who have uploaded infringing videos caught by Content ID, and the related requested information, go directly to whether it is reasonable for YouTube's repeat infringer policy to ignore instances of infringement caught by Content ID. This information surely will indicate multiple instances of repeat infringers—identified by Content ID—who were never terminated.  Similarly, Takedown Notices and their dispositions directly relate to the adequacy of Defendants' policy and practices regarding repeat infringers.

Notably, "Section 512(i)(1)(A) requires an assessment of the service provider's 'policy,' not how the service provider treated a particular copyright holder." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).  Whether YouTube has reasonably implemented a



repeat-infringer policy focuses on whether and how it deters users from repeatedly posting infringing content and how it identifies repeat infringers. As noted above, Takedown Notices also identify the putative class members who include all persons "whose copyrighted works have been uploaded to YouTube . . . where such person has had to submit a successful takedown notice with respect to such work, and where such person's work has subsequently been infringed or uploaded without permission." (Dkt. 1 ¶ 99.) Takedown notices are directly relevant to the class definition and identify instances of subsequent infringement of putative members' works.

Defendants have refused to produce *any* Takedown Notices beyond those submitted by the named Plaintiffs and have refused to provide any documents or data concerning infringement detected by Content ID. Defendants have raised unsubstantiated burden concerns and have even refused to confirm Plaintiff's belief that Defendants have this information (or the vast bulk of it) compiled in one or more databases that either can be copied or securely accessed to satisfy Defendants' production obligations. Plaintiff offered to narrow the Takedown Notice requests from seeking a copy of every notice to the information listed in Appendix A hereto. In response, Defendants offered one month of Takedown Notices. Such a narrow period ignores the purpose and need of this discovery and thus is not a meaningful compromise.

**III. Defendants Must Produce Document and Data Retention Policies.**

Request 69 seeks all document or data retention policies concerning certain categories of documents including Takedown Notices, Content ID (and access thereto), videos posted on or deleted from YouTube's platform, copyright policies, and repeat infringers. By refusing to produce even their retention policies, Defendants are further inhibiting Plaintiff's efforts to obtain documents generally by preventing the ability to discover what documents and data they retain in the ordinary course. This unjustifiable refusal is particularly inappropriate given that it also prevents Plaintiff from evaluating Defendants' assertions of burden. For example, without the retention policies Plaintiff is significantly disadvantaged in negotiations to try to narrow requests based on what, by policy, should readily be available.

Defendants have also refused to say whether they retain certain documents requested by Plaintiff. For example, Defendants will not say whether they have videos in the form they were originally uploaded, which contain statutorily protected CMI metadata that identifies copyrighted works. The original videos are directly relevant to Plaintiff's claim under 17 U.S.C. § 1202(b) that Defendants have eliminated, concealed, or failed to preserve CMI contained in the original videos that is plainly not present in the videos available on YouTube. (Dkt. 1 ¶¶ 139-48.)

Defendants' retention policies will help provide information concerning these questions of what is even available and allow Plaintiff to pursue a preservation order if relevant evidence is not properly being retained, as we fear is the case. Plaintiffs have put Defendants on notice of their obligation to preserve. *See Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416 (S.D. Cal. 2018) ("a litigant must preserve evidence which it knows, or would reasonably know, is relevant to the parties' claims or defenses.") (citations omitted). The retention policies are also relevant to how Defendants refer to their own documents and data and how it is stored, all of which relates to discovery and preservation issues generally.

Plaintiff respectfully requests the Court compel production of the requested documents.



        Respectfully submitted,

        <u>*/s/ Philip C. Korologos*</u>

        Philip C. Korologos

        *Counsel for Plaintiff Maria Schneider and Counterclaim Defendant Pirate Monitor LTD*

cc: All counsel via ECF



## APPENDIX A

a) The identity of all persons that have submitted a Takedown Notice from January 1, 2015 to the present;
b) the date the Takedown Notice was submitted;
c) the work(s) that were the subject of the Takedown Notice;
d) the URL of the video(s) that were the subject of the Takedown Notice;
e) the dates for which the video that was the subject of the Takedown Notice was publicly displayed on YouTube;
f) the YouTube account of the channel posting the challenged video, including the account or channel name, email address, and the IP address associated with the posting of the video that was the subject of the Takedown Notice;
g) all steps taken, and the dates on which they were taken, leading to resolution of the Takedown Notice;
h) any evidence of registration of the copyright(s) for the work(s) that were the subject of the Takedown Notice;
i) the outcome of the Takedown Notice; and
j) whether YouTube has a copy of the video that was the subject of the Takedown Notice.