**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126

O: 415.947.2000
F: 415.947.2099

April 20, 2021

<u>Via CM/ECF</u>

The Honorable James Donato
United States District Court
for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Schneider et al v. YouTube*, LLC et al., Case No. 20-cv-4423-JD

Your Honor:

      Counterclaimants YouTube, LLC and Google LLC (collectively, "YouTube") seek an Order directing Counterclaim Defendant Pirate Monitor LTD ("Pirate Monitor") to produce documents responsive to YouTube's document requests within ten calendar days. We certify that, pursuant to Your Honor's Standing Orders, the parties have extensively met and conferred (on 5 occasions by telephone between Nov. 2020 and Feb. 2021 and through a dozen letters) regarding Pirate Monitor's objections and responses to YouTube's document requests, which were served on October 12, 2020 and January 13, 2021 ("RFPs"). *See* Exs. A and B, excerpts of the RFPs and responses thereto. **Pirate Monitor still has not produced a single document in this case.**

      Pirate Monitor filed this copyright infringement case together with Maria Schneider on behalf of a putative class in July 2020. After admitting that it did not actually own at least one of the three copyrights that it had asserted in the case, and after YouTube showed that Pirate Monitor had engineered a wide-ranging fraud, Pirate Monitor dismissed its affirmative case with prejudice on March 8, 2021. Dkt. No. 66. YouTube, however, still has counterclaims against Pirate Monitor and its sole stockholder, Gábor Csupó ("Csupó"). YouTube charges them with the mass transmission of bogus DMCA takedown notices as part of a scheme to obtain access to YouTube's proprietary copyright management tools. Dkt. 60, ¶¶ 1-2. YouTube seeks in excess of $20,000 in investigative and remediation expenses as well as mandatory costs and attorney's fees recoverable as damages under 17 U.S.C. § 512(f), punitive damages, and an injunction against further misconduct. YouTube's document requests seek information directly relevant to those claims.

      1.   <u>Documents regarding Pirate Monitor's use of YouTube and DMCA takedown notices.</u> Pirate Monitor and Csupó hired agents to upload nearly two thousand videos to YouTube to manufacture a supposed need to use YouTube's Content ID system. Promptly thereafter, they sent YouTube DMCA takedown notices for the very same videos, in many cases before the videos had been viewed by anyone. Dkt. 60, ¶¶ 1, 50. Pirate Monitor and Csupó either lied to YouTube in the upload process by claiming they had the rights to upload those videos, or lied in

WILSON SONSINI

April 20, 2021
Page 2

their takedown notices when they claimed the same videos were infringing copyrights. Dkt. 60, ¶¶ 1–2, 40-41. To shed further light on this scheme, YouTube's RFP Nos. 9, 14-15, 31, 33–35, and 39 seek documents about Pirate Monitor's requests to gain access to YouTube's copyright management systems, its use of YouTube (including to upload videos), and its transmission of takedown notices. *See, e.g.*, RFP No. 9 ("All communications between You and YouTube, including but not limited to 'takedown notices'… and any other documents You sent to YouTube relating to alleged copyright infringement.").

2.  Documents regarding alter ego allegations. In its counterclaims, YouTube alleges that Pirate Monitor is the alter ego of its owner Csupó. That would fit Csupó's modus operandi. He has conceded that he used the name "Pirate Monitor LLC" in interactions with YouTube even though there is no such corporate entity. Dkt. 69 at 3 ("Pirate Monitor LLC has never been registered as a legal entity with any state or nation."). To show that "Pirate Monitor Ltd." is in name or operation likewise Csupó's alter ego, YouTube seeks, *inter alia*, "Documents sufficient to show [Pirate Monitor's] corporate organization and compliance with corporate formalities," all documents regarding its incorporation, and "Documents sufficient to show [its] financial condition and accounting controls." *See* RFP Nos. 18–21. These requests are directly relevant to YouTube's alter ego allegations.

3.  Documents regarding Pirate Monitor's agents. YouTube alleges that Pirate Monitor and Csupó hired foreign nationals in Pakistan, specifically a person or persons going by the names Ransom Nova and Sarfraz Arshad Khan, to mask their own involvement in the upload of videos to YouTube. Dkt. 60 ¶¶ 1, 52-53. YouTube thus served requests for documents identifying Pirate Monitor's employees and agents, and seeking communications that Pirate Monitor and Csupó had with them. *See* RFP Nos. 23, 51–52, and 55–62. These requests bear directly on Pirate Monitor's use of agents in its fraud.

4.  Documents regarding Pirate Monitor's Authority to Upload Videos. Whether Pirate Monitor's videos infringed copyrights is key to YouTube's counterclaims. Pirate Monitor first claimed they did not, and then claimed they did. Dkt. 60, ¶ 2, 4, 32–33, 36. RFP Nos. 49 and 50 seek documents relevant to show which of Pirate Monitor's representations were untrue.

**Pirate Monitor's Obstructions Are Unjustified.** Pirate Monitor still has not produced a single document, despite bringing this suit. Only after YouTube made clear this motion was forthcoming did Pirate Monitor say late last week that some sort of production would commence on April 23, but even that representation is subject to all manner of impenetrable caveats and limitations. For example, Pirate Monitor now claims that it "is only obligated to produce Mr. Csupó's documents that were created while acting as its agent [beginning in January 2020, after the conduct underlying YouTube's counterclaims took place]" and that Csupó will only produce documents "pre-dating his interest in Pirate Monitor Ltd. *if they exist in the documents we collected*." Pirate Monitor also represented that "there may be documents related to Pirate Monitor Ltd. that exist" outside Csupó's custody, while at the same time claiming that it is unaware of any "other potential custodians" beyond Csupó and the one other agent it claimed

WILSON SONSINI

April 20, 2021
Page 3

worked for Pirate Monitor "in a very limited capacity." Because of statements like these, even after six months and a dozen calls and letters, YouTube has no idea what Pirate Monitor will be producing, assuming its production ever commences.[1]

Pirate Monitor claims that the discovery costs it would incur are disproportionate given what it sees as the value of YouTube's counterclaims. But that is twice wrong—first, in its pie-in-the-sky cost estimates, and second, in its valuation of YouTube's claims. Originally, Pirate Monitor said its document production would cost between $100,000 and $500,000 based on collection from an estimated ten custodians. But Pirate Monitor does not have ten custodians, and may not have any beyond Csupó. When YouTube pointed that out, Pirate Monitor proffered new, but equally fantastic numbers, suggesting a price tag of $55,900 to collect and host data for two custodians (and never explaining why it had offered estimates for ten). YouTube has no idea where or how Pirate Monitor keeps its documents, but a targeted and reasonable collection of the categories of documents YouTube seeks should not cost close to what Pirate Monitor imagines.

Pirate Monitor's assumption about the value of YouTube's counterclaims is equally wrong. YouTube sought more than $20,000 in investigative and remediation expenses, but its damages also include attorney's fees, which are mandatory under 17 U.S.C. §512(f). Those are substantial given Pirate Monitor's litigation conduct, including its makework motion to dismiss. Dkt. Nos. 44, 47, 52. Further, given Pirate Monitor's fraud, YouTube should be entitled to punitive damages and injunctive relief to prevent similar misconduct in the future.

YouTube cannot effectively pursue its counterclaims in light of Pirate Monitor's obstruction. YouTube respectfully requests that this Court direct Pirate Monitor to produce documents responsive to the attached RFPs within ten calendar days.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s Lauren Gallo White*

Lauren Gallo White

*Attorneys for Defendants/Counterclaim Plaintiffs*

---

[1] Pirate Monitor (a British Virgin Islands company with a single shareholder (Csupó) who resides in Los Angeles) also has claimed that it cannot produce certain documents in light of the European General Data Protection Regulation (GDPR). The GDPR should have no application here. It regulates personal data and none of YouTube's RFPs call for personal data.