# EXHIBIT B

DAVID H. KRAMER, State Bar No. 168452
MAURA L. REES, State Bar No. 191698
LAUREN GALLO WHITE, State Bar No. 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
       mrees@wsgr.com
       lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants.<br><br>——————————————————<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD,<br><br>Counterclaim Defendant. | CASE NO.: 3:20-cv-04423-JD<br><br>**DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION (NOS. 1-77)**<br><br>Judge: Hon. James Donato |

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Local Rules of the United States District Court for the Northern District of California, Defendants and Counterclaimants YouTube, LLC and Google LLC (collectively, "Defendants") hereby respond to Plaintiff Maria Schneider's and Plaintiff and Counterclaim-defendant Pirate Monitor LTC's (collectively, "Plaintiffs") First Set of Requests for Production ("Requests") as follows:

## PRELIMINARY STATEMENT

The following responses are provided subject to all appropriate objections (including, without limitation, objections concerning competency, relevancy, materiality, and propriety) that would require the exclusion of any statement contained herein if the statement were made by a witness present and testifying in court.

In addition, all responses to the Requests are based upon the information presently known to Defendants, and Defendants expressly reserve the right to revise and supplement their responses to the Requests. A response to a Request shall not be deemed a waiver of any applicable objection or an admission of relevancy.

To the extent the Requests would require the production of information that implicates the personal privacy interests of individual employees or agents and/or of third parties of Defendants, the parties need to implement appropriate protections for personal privacy before Defendants will produce any materials responsive to the Requests.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. As a threshold matter, Plaintiffs' prolix Definitions, much like the Complaint, are replete with unsubstantiated assumptions and improper advocacy. Their byzantine structure, vagueness, and overbreadth render interpreting the Requests themselves (let alone drafting responses) an unduly burdensome effort that is disproportionate to the needs of this case.

2. Defendants object to the definition of "Account Monetization Program" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined terms "program" and "compensation." Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the

1  parties' claims or defenses and would require Defendants to collect information that is
2  disproportionate to the needs of this case. For purposes of responding to the Requests, the
3  "Account Monetization Program" will be defined as the five monetization features ("Advertising
4  revenue," "Channel memberships," Merchandise shelf," "Super Chat & Super Stickers," and
5  "YouTube Premium Revenue") that enable some users to make money on YouTube. *See* "How
6  to earn money on YouTube," https://support.google.com/youtube/answer/72857?hl=en.

7        3.      Defendants object to the definition of "AutoPlay Feature" as vague and
8  ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined term
9  "queues." Plaintiffs' "description" in Paragraph 37 of the Complaint provides no more clarity, as
10 it merely parrots the vague and ambiguous definition provided in these Requests. Defendants
11 further object to this definition as overly broad and unduly burdensome to the extent it
12 encompasses information not relevant to the parties' claims or defenses and would require
13 Defendants to collect information that is disproportionate to the needs of this case.

14       4.      Defendants object to the definition of "CMI Video" as vague and ambiguous. In
15 particular, the definition is vague and ambiguous in its use of the undefined terms "CMI,"
16 "containing," and "initiated." Defendants further object to this definition as overly broad and
17 unduly burdensome to the extent it requires Defendants to collect information relating to every
18 video uploaded to YouTube, regardless of their relevance to the parties' claims or defenses in
19 this case.

20       5.      Defendants object to the definition of "Communication" to the extent it exceeds
21 the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United
22 States District Court for the Northern District of California, or other applicable law. Defendants
23 further object to the definition as overly broad and unduly burdensome to the extent it
24 encompasses information not relevant to the parties' claims or defenses and would require
25 Defendants to collect information that is disproportionate to the needs of this case.

26       6.      Defendants object to the definition of "Concerning" as vague and ambiguous. In
27 particular, the term is vague and ambiguous in its use of the undefined terms "relating,"
28

"referring," "describing," "evidencing," and "construing." Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

7. Defendants object to the definition of "Content ID System" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the phrase "YOUR copyright management tool." Defendants have created and made available many tools for protecting the copyrights of others. Defendants further object to Plaintiffs' descriptions in Paragraphs 2, 8, 9, 10, and 12 of the Complaint as inaccurate in their characterization of Content ID. Defendants specifically object to Plaintiffs' characterization of Content ID as being "completely divorced" from YouTube, LLC's repeat-infringer policy. *See* Compl. ¶ 12. For purposes of responding to the Requests, the "Content ID System" will be defined as a tool YouTube provides to certain users for the purpose of managing copyrighted works that scans videos uploaded to YouTube and compares them against reference files previously provided to YouTube by copyright owners. *See* "How Content ID works," https://support.google.com/youtube/answer/2797370?hl=en.

8. Defendants object to the definition of "Copyright Strike" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the phrase "following a Takedown Notice." Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case. For purposes of responding to the Requests, "Copyright Strike" will be defined as the warning that a user receives when YouTube has removed the user's video from the YouTube service because a copyright owner submitted to YouTube a complete and valid legal request asking YouTube to do so. *See* "Copyright strike basics," https://support.google.com/youtube/answer/2814000?hl=en.

9.     Defendants object to the definition of "Document" to the extent it exceeds the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or other applicable law. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

10.    Defendants object to the definition of "ID3 Tags" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined terms "metadata container," "audio files," and "ID3v1 and ID3v2 tags."

11.    Defendants object to the definition of "Metadata" as overly broad (especially insofar as it encompasses "any information"), vague, and ambiguous. In particular, the definition is vague and ambiguous in its use of the phrases "attached to," "embedded in," "part of," and "provides information."

12.    Defendants object to the definition of "Unsuccessful Takedown Notice" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the term "Successful Takedown Notice." Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

13.    Defendants object to the definition of "Unsuccessful Takedown Notice Video" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined terms "Your platform," "submitted," "Unsuccessful Takedown Notice," "used," "reproducing," and "performing." The definition is further vague and ambiguous in its use of the phrase "were the subject of." Defendants also object to the definition to the extent it calls for a legal conclusion as to whether content has been reproduced or performed. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses

1    information not relevant to the parties' claims or defenses and would require Defendants to

2    collect information that is disproportionate to the needs of this case.

3    14.    Defendants object to the definition of "Pirate Monitor" as overly broad, vague and

4    ambiguous, and unduly burdensome. In particular, the definition is overly broad because it

5    encompasses "present or former … agents, representatives … investigators … advisors, and any

6    other person acting on its behalf." For purposes of responding to the Requests, "Pirate Monitor"

7    will be defined as Pirate Monitor LTD and those authorized agents and employees known or

8    believed to be acting on its behalf and within the scope of their agency or employment.

9    15.    Defendants object to the definition of "Pirate Monitor Infringing Videos" as

10   vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the

11   undefined terms "Your platform," "uses," "Pirate Monitor Works," "reproducing," and

12   "performing." Defendants also object to the definition to the extent it calls for a legal conclusion

13   as to whether content has been reproduced or performed under the Copyright Act. Defendants

14   further object to this definition as overly broad and unduly burdensome to the extent it

15   encompasses information not relevant to the parties' claims or defenses and would require

16   Defendants to collect information that is disproportionate to the needs of this case. Moreover,

17   Defendants object that this term is meaningless and untimely because Plaintiffs have failed to

18   identify any allegedly infringing content in their Complaint or in discovery, including but not

19   limited to, in response to Defendants' Interrogatory No. 2.

20   16.    Defendants object to the definition of "Pirate Monitor Works" as vague and

21   ambiguous. In particular, Defendants object that the definition is vague and ambiguous in its use

22   of the term "exclusive copyrights." Defendants object that this definition encompasses

23   documents concerning works that have not been identified as Works In Suit. Defendants also

24   object to the definition to the extent it calls for a legal conclusion as to whether Plaintiff and

25   Counterclaim-defendant Pirate Monitor LTD holds "exclusive copyrights" in any works.

26   Defendants further object to this definition as overly broad and unduly burdensome to the extent

27   it encompasses information not relevant to the parties' claims or defenses (especially insofar as it

28

encompasses works not identified by Plaintiff and Counterclaim-defendant Pirate Monitor LTD as Works In Suit and/or United States works not timely registered with the United States Copyright Office) and would require Defendants to collect information that is disproportionate to the needs of this case. For purposes of these responses, Defendants will interpret "Pirate Monitor Works" to be limited to the Works In Suit identified in response to Defendants' Interrogatory No. 1.

17. Defendants object to the definition of "Performance Rights Organizations" as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

18. Defendants object to the definition of "Red Flag Knowledge" as calling for a legal conclusion. Defendants also object that this definition encompasses documents concerning works that have not been identified as Works In Suit. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

19. Defendants object to the definition of "Removed Takedown Notice Video" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined term "Your platform" and the phrases "was removed, deleted, or no longer displayed" and "because of." Defendants also object that this definition encompasses documents concerning works that have not been identified as Works In Suit. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

20. Defendants object to the definition of "Removed Takedown Notice Re-upload" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined terms "substantively identical," "aspect," "removed Takedown Notice Video,"

"target," and "Successful Takedown Notice." Defendants also object that this definition encompasses documents concerning works that have not been identified as Work In Suit. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

21.  Defendants object to the definition of "Repeat Infringer" to the extent it calls for a legal conclusion. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

22.  Defendants object to the definition of "Schneider" as overly broad, vague and ambiguous, and unduly burdensome. In particular, the definition is overly broad because it encompasses "all agents, representatives … investigators … advisors, and any other person acting on her behalf." For purposes of responding to the Requests, "Schneider" will be defined as Maria Schneider and persons known or believed to be acting on her behalf .

23.  Defendants object to the definition of "Schneider Infringing Videos" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined terms "Your platform," "uses," "Schneider Works," "reproducing," and "performing." Defendants also object to the definition to the extent it calls for a legal conclusion as to whether content has been reproduced or performed under the Copyright Act. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case. Moreover, Defendants object that this term is meaningless and untimely because Plaintiffs have failed to identify any allegedly infringing content in their Complaint or in discovery, including but not limited to, in response to Defendants' Interrogatory No. 2.

DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION         -8-         CASE NO. 3:20-CV-04423-JD

24. Defendants object to the definition of "Schneider Works" as vague and ambiguous. In particular, Defendants object that the definition is vague and ambiguous in its use of the term "exclusive copyrights." Defendants object that this definition encompasses documents concerning works that have not been identified as Works In Suit. Defendants also object to the definition to the extent it calls for a legal conclusion as to whether Plaintiff Maria Schneider holds "exclusive copyrights" in any works. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses (especially insofar as it encompasses works not identified by Plaintiff Maria Schneider as Works In Suit and/or United States works not timely registered with the United States Copyright Office) and would require Defendants to collect information that is disproportionate to the needs of this case. For purposes of these responses, Defendants will interpret "Schneider Works" to be limited to the Works In Suit identified in response to Defendants' Interrogatory No. 1.

25. Defendants object to the definition of "Tags" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined term "descriptive keywords" and the phrase "find content."

26. Defendants object to the definition of "Takedown Notice" as vague, ambiguous, and overly broad. In particular, the definition is vague and ambiguous in its use of the term "request" and the phrases "any other way" and "via Your online platform." Defendants object that the definition is overly broad and unduly burdensome to the extent it extends beyond notices submitted to Defendants. Defendants also object to the definition to the extent it calls for a legal conclusion as to whether content has been posted or displayed without license or permission. Defendants further object to the definition to the extent it encompasses non-written communications that do not satisfy the requirements set forth in 17 U.S.C. § 512(c)(3). For purposes of responding to the Requests, "Takedown Notice" will be defined as notices that are compliant with 17 U.S.C. § 512(c)(3) and have been submitted through YouTube LLC's online form, *see* "Submit a copyright takedown notice,"

1  https://support.google.com/youtube/answer/2807622?hl=en, or to YouTube's designated agent

2  via email, facsimile, or postal mail, *see* "Copyright Contact Information,"

3  https://support.google.com/youtube/answer/6005908?hl=en.

4      27.    Defendants object to the term "Successful Takedown Notice" as vague and

5  ambiguous. In particular, the definition is vague and ambiguous in its use of the phrases

6  "resulted in a Removed Takedown Notice Video" and "otherwise determined set forth a

7  meritorious claim." Defendants object to the definition to the extent it calls for a legal

8  conclusion. Defendants also object that this definition encompasses documents concerning works

9  that have not been identified as Works In Suit. Defendants further object to this definition as

10 overly broad and unduly burdensome to the extent it encompasses information not relevant to the

11 parties' claims or defenses and would require Defendants to collect information that is

12 disproportionate to the needs of this case.

13     28.    Defendants object to the definition of "Successful Takedown Notice Video" as

14 vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the

15 undefined terms "Your platform," "submitted," "used," and "Successful Takedown Notice." The

16 definition is further vague and ambiguous in its use of the phrase "were the subject of."

17 Defendants also object to the definition to the extent it calls for a legal conclusion as to whether

18 content has been reproduced or performed under the Copyright Act. Defendants also object that

19 this definition encompasses documents concerning works that have not been identified as Works

20 In Suit. Defendants further object to this definition as overly broad and unduly burdensome to

21 the extent it encompasses information not relevant to the parties' claims or defenses and would

22 require Defendants to collect information that is disproportionate to the needs of this case.

23     29.    Defendants object to the definition of "You," "Your," and "Yourself" on the

24 grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome.

25 Defendants further object to the definition to the extent it seeks information not currently in the

26 possession, custody, or control of Defendants. Defendants will respond solely on behalf of

27 themselves (Google LLC and YouTube, LLC), and not any other subsidiaries or affiliates, or any

28

other person or entity. Defendants further object to the definition on the grounds that it includes Defendants' attorneys and requires Defendants to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Requests, "You," "Your," and "Yourself" will be defined as Google LLC, YouTube, LLC, and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.[1]

30. Defendants object to the definition of "YouTube Partner Program" as vague and ambiguous. In particular, the term is vague and ambiguous in its use of the phrase "uses AdSense to monetize content posted to Users." Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case. For purposes of responding to the Requests, the "YouTube Partner Program" will be defined as the program that gives YouTube content creators access to YouTube's Creator Support Teams, Copyright Match Tool, and monetization features. *See* "YouTube Partner Program overview & eligibility," https://support.google.com/youtube/answer/72851?hl=en.

31. Defendants object to the Instructions accompanying Plaintiffs' Requests to the extent that such Instructions purport to impose obligations on Defendants in excess of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, the Standing Order for Discovery in Civil Cases before Judge Donato, or any other applicable law, or to the extent that the Instructions purport to require Defendants to take actions or provide information not required by or which exceed the scope of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the

---

[1] Per the parties' agreement, Defendants will produce otherwise discoverable information that is retained by, owned by, possessed by, or in the control of Alphabet Inc.

Northern District of California, the Standing Order for Discovery in Civil Cases before Judge Donato, or any other applicable law.

32.     Defendants object to Instruction No. 8 insofar as it calls for information beyond the scope of the three-year statute of limitations applicable to Plaintiffs' claims. *See* 17 U.S.C. § 507(b). Defendants will produce reasonably accessible non-privileged documents following an inquiry proportionate to the needs of the case for the three-year period predating the filing of the Complaint.

**SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUESTS**

**DOCUMENT REQUEST NO. 1:**

**All Documents Concerning any of the alleged facts in the Complaint, the Answer, and Counterclaims, the Response to Counterclaims, or any statement of fact contained in any other Document filed in this Lawsuit.**

**RESPONSE TO DOCUMENTS REQUEST NO. 1:**

Defendants object to this Request on the grounds that it is vague, ambiguous, unduly burdensome, and overly broad (especially insofar as it demands that Defendants produce "[a]ll" documents). In particular, Defendants object to the Request because it is vague and ambiguous in its use of the terms "alleged facts" and "statement of fact." Defendants further object that this Request is compound to the extent that it contains multiple sub-parts.

Defendants object to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Defendants that is out of line with Plaintiffs' legitimate needs. To the extent this Request seeks materials relating to third parties, Defendants also object on the grounds that this Request calls for the production of materials not relevant to Plaintiffs' claims and for the production of proprietary, confidential, or trade secret documents without the entry of a protective order.

Defendants further object that this Request seeks documents concerning works that have not been identified as Works In Suit. In addition, Defendants object to this Request to the extent that it seeks information concerning alleged infringements that Plaintiffs have failed to identify.

Subject to and without waiving any of the foregoing objections, at a date agreed upon by the parties, Defendants will produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show YouTube's policies and procedures regarding CMI and transcoding.

**DOCUMENT REQUEST NO. 54:**

**All videos that contained CMI at the time the User initiated the upload of the video to Your platform (the "CMI Videos").**

**RESPONSE TO DOCUMENTS REQUEST NO. 54:**

Defendants object to this Request on the grounds that it is unduly burdensome and overly broad (especially insofar as it demands that Defendants produce "[a]ll" videos). Defendants object to this Request because it calls for the production of materials relevant to a putative class of plaintiffs that has not been certified by the Court. Defendants also object to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Defendants further object to this Request because it seeks information that Defendants do not collect and/or log in the ordinary course of its business and the production of which is therefore not possible.

**DOCUMENT REQUEST NO. 55:**

**Documents sufficient to show the following information Concerning each CMI Video:**

**a. The date(s) uploaded, the number of copies made, the date each copy was made, the location of each copy;**

**b. the metadata included with each video (Including before and after each video was uploaded) and whether that metadata was supplied by the User or You;**

**c. the number of views, the number of downloads, the number of likes, the number of Users who subscribed to the channel of the User that posted the video from the page containing the video;**

**d. whether the video was monetized through the Account Monetization Program and, for each video that was monetized, the total revenue collected for the video, the portion of the revenue that was paid to the User, to any third parties, and to You;**

      **e. For each User posting a CMI Video, the identity of the User, Including the User's name, username, email address, IP address, affiliation, any unique other identifier used internally by YouTube or Google tied to a User, whether the User was enrolled in the Account Monetization Program and/or the YouTube Partner Program, whether the User was a Repeat Infringer, all videos uploaded by the User that were identified in the Content ID System as containing copyright protected work, and all Copyright Strikes issued to the User;**

      **f. For each CMI Video, whether the video was subject to a Takedown Notice, the response, if any, by the User posting the video, and the ultimate determination of the Takedown Notice**.

**RESPONSE TO DOCUMENTS REQUEST NO. 55:**

      Defendants object to this Request because it calls for the production of materials relevant to a putative class of plaintiffs that has not been certified by the Court. Defendants also object to this Request on the grounds that it is vague, ambiguous, unduly burdensome, and overly broad (especially insofar as it demands that Defendants produce "[a]ll" videos). In particular, the Request is vague and ambiguous in its use of the term "Account Monetization Program." Defendants further object that this Request is compound and structurally confusing.

      Defendants also object to this Request because it seeks detailed technical information the aggregation and/or production of which would be highly burdensome in ways that are disproportionate to the legitimate needs of the case. Defendants further object to this Request because it seeks information that Defendants do not collect and/or log in the ordinary course of its business and the production of which is therefore not possible. To the extent this Request seeks materials relating to third parties, Defendants further object on the grounds that this Request calls for the production of materials not relevant to Plaintiffs' claims and for the production of proprietary, confidential, or trade secret documents without the entry of a protective order.

      In addition, Defendants object to this Request to the extent that its expansive scope seeks personal identifying information concerning numerous YouTube users and may implicate the privacy rights of users who are entitled to protection under various consumer privacy laws in the U.S. and internationally. Affected users should also be afforded an opportunity to object to

disclosure of their personal identifying information, and such an opportunity may be required as a matter of law.

**DOCUMENT REQUEST NO. 56:**

**Documents sufficient to show the precise terms of the YouTube Terms of Service Agreement in force for every day from January 1, 2014 to the present.**

**RESPONSE TO DOCUMENTS REQUEST NO. 56:**

Subject to and without waiving any of their general objections, at a date agreed upon by the parties, Defendants will produce current and historical versions of YouTube's Terms of Service for its United States, Hungarian, and Pakistani users.

**DOCUMENT REQUEST NO. 57:**

**All Documents Concerning changes to the YouTube Terms of Service Agreement and applicable policies and public statements Concerning the use of the YouTube service from January 1, 2014 to the present.**

**RESPONSE TO DOCUMENTS REQUEST NO. 57:**

Defendants object to this Request on the grounds that it is vague, ambiguous, and overly broad (especially insofar as it demands that Defendants produce "[a]ll" documents). In particular, the Request is vague and ambiguous in its use of the phrases "public statements Concerning the use of the YouTube service" and "Concerning changes." Defendants also object to the extent that this Request calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Defendants that is out of line with Plaintiff's legitimate needs.

Defendants object that this Request seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both. Defendants also object to the Request to the extent information sought is already in the possession of the Requesting party, or is otherwise equally accessible and available to the Requesting party from other sources (including themselves and the public record). Defendants further object that this Request is duplicative and cumulative of other discovery Requests.