| | |
|---|---|
| George A. Zelcs (*pro hac vice*)<br> gzelcs@koreintillery.com<br>Randall P. Ewing, Jr. (*pro hac vice*)<br> rewing@koreintillery.com<br>Ryan Z. Cortazar (*pro hac vice*)<br> rcortazar@koreintillery.com<br>**KOREIN TILLERY, LLC**<br>205 North Michigan, Suite 1950<br>Chicago, IL 60601<br>Telephone: (312) 641-9750<br>Facsimile: (312) 641-9751<br><br>Stephen M. Tillery (*pro hac vice*)<br> stillery@koreintillery.com<br>Steven M. Berezney, CA Bar #329923<br> sberezney@koreintillery.com<br>Carol O'Keefe (*pro hac vice*)<br> cokeefe@koreintillery.com<br>**KOREIN TILLERY, LLC**<br>505 North 7th Street, Suite 3600<br>St. Louis, MO 63101<br>Telephone: (314) 241-4844<br>Facsimile: (314) 241-3525 | Joshua Irwin Schiller, CA Bar #330653<br> jischiller@bsfllp.com<br>**BOIES SCHILLER FLEXNER LLP**<br>44 Montgomery St., 41st Floor<br>San Francisco, CA 94104<br>Telephone: (415) 293-6800<br>Facsimile: (415) 293-6899<br><br>Philip C. Korologos (*pro hac vice*)<br> pkorologos@bsfllp.com<br>Joanna Wright (*pro hac vice*)<br> jwright@bsfllp.com<br>Demetri Blaisdell (*pro hac vice forthcoming*)<br> dblaisdell@bsfllp.com<br><br>**BOIES SCHILLER FLEXNER LLP**<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>Telephone: (212) 446-2300<br>Facsimile: (212) 446-2350 |

*Attorneys for Maria Schneider, Pirate Monitor Ltd., Uniglobe Entertainment, LLC, and AST Publishing Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, individually and on behalf of all others similarly situated;<br><br>Plaintiff,<br><br>v.<br><br>YOUTUBE, LLC, and GOOGLE LLC,<br><br>Defendants.<br>_____<br>YOUTUBE, LLC and GOOGLE LLC;<br><br>Counter-Plaintiffs,<br><br>v.<br><br>PIRATE MONITOR LTD.,<br><br>Counter-Defendant. | **CASE NO. 3:20-cv-04423-JD**<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>**HEARING DATE: AUGUST 26, 2021**<br><br>**TIME: 10:00 A.M.** |

**ISSUE PRESENTED**

Whether this Court should grant Plaintiff Maria Schneider leave to amend her complaint, where Defendants have failed to carry their burden of showing undue delay or prejudice.

**ARGUMENT**

Defendants have not satisfied their burden of demonstrating why the Ninth Circuit's policy of "extreme liberality" in allowing amendments, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987) (quotation marks omitted), should not apply here. Defendants do not argue that bad faith, repeated failure to cure pleading deficiencies, or futility weigh against granting leave to amend, but only that the amendment was unduly delayed and prejudicial. But unlike the cases upon which Defendants rely, this is Plaintiff's first proposed amendment, it was filed before any deadline had elapsed, it adds no new causes of action, it seeks to add two existing class members as additional named plaintiffs, and Defendants' disputes and delays in discovery have constrained the parties to the early stages of discovery. Plaintiff's motion should be granted.

**I.   Schneider Did Not Unduly Delay Seeking Amendment.**

Defendants' arguments about undue delay are largely irrelevant because "delay alone is not sufficient to justify the denial of a motion requesting leave to amend." *DCD*, 833 F.2d at 187. In any event, there has been no undue delay. Defendants first claim that Schneider could have identified all 78 works listed in the proposed amendment in her original complaint. (Opp. at 7.) But Schneider is not required to identify all works in her complaint. *See, e.g., ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 687 (9th Cir. 2000); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 167 F. Supp. 2d 1114, 1120 (C.D. Cal. 2001). That legal issue has been asserted by Defendants throughout pre-trial proceedings, yet Defendants never moved to dismiss Schneider's complaint on this basis, nor moved for a more definite statement. Plaintiff's interrogatory responses put Defendants on notice of many of these works in late 2019, and all of them by March 8, 2021, (Opp. at 4); thus, adding those formally to the pleadings tells Defendants nothing they did not already know. Schneider's identification of works in the proposed amendment is neither an acknowledgement that it is necessary for her to do so, nor an attempt to expand the scope of the case, but simply an effort to eliminate a dispute otherwise requiring resolution by the Court.

Defendants' argument that the addition of AST Publishing Ltd. and Uniglobe Entertainment, LLC as class representatives was unduly delayed fares no better. AST and Uniglobe are just two of multiple entities and individuals that have approached Plaintiff's counsel to inquire about the case. Defendants cite no authority for their argument that, from the moment any of these potential class members contacted them, Plaintiffs "knew or should have known the facts and theories raised by the amendment." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). In fact, AST and Uniglobe first contacted Plaintiffs' counsel in late 2020 to learn more about this matter and, following discussions internally and with the prospective clients, counsel began investigating their claims and their appropriateness as class representatives by early 2021, which factual investigations took a few months. Such time spent complying with Rule 11's duty to investigate is not undue and is not a reason for denying amendment. *DCD*, 833 F.2d at 187 & n.4. The remainder of the time before filing was spent researching and drafting the amended complaint, then conducting a weeks-long meet-and-confer with Defendants to determine whether they would consent to the filing of that amendment. None of the time spent on those tasks was undue, so it also cannot weigh against amendment here.

Indeed, much of the purported "delay" was of Defendants' own making. By April 30, 2021, Plaintiff's counsel informed Defendants of her intent to amend and requested that Defendants respond by May 4, 2021. Defendants responded that they would not consider whether to consent to the proposed amendments until they could review the amended complaint. Pursuant to Defendants' own request, Plaintiff provided the proposed amendment to Defendants on May 24, 2021. The next day, Defendants said they could not consent unless they had more time to review the amendments; acceding to their request, Plaintiff requested that Defendants provide their response by June 2, 2021. In the interim, this Court on May 27 entered an order directing the parties to engage in an extensive meet-and-confer process about certain outstanding disputes. (Dkt. 82.) Mindful of the Court's concern about the parties' apparent lack of cooperation, (*see id.*), when Defendants responded on June 2 that they would not consent to most of the amendments (while imposing conditions on their consent as to others), Plaintiff included the proposed amendments as a topic to discuss during meet-and-confer sessions.

|   |   |
|---|---|
| 1 | Defendants never objected to holding meet-and-confer discussions about the proposed amendments, and those sessions were conducted over several dates throughout June 2021. Plaintiffs offered various concessions during that meet and confer, including ways to streamline discovery and limits on the schedule and scope of further amendments or further addition of named plaintiffs. When Defendants informed Plaintiff on July 1 that their position had not changed, Plaintiff filed the instant motion on July 2. None of this was "undue delay," but rather represents the normal passage of time occasioned by the required pre-suit investigation, Defendants' demands, and the Court's instruction that the parties attempt to cooperate to minimize the disputes requiring the Court's intervention. Once Plaintiff had given Defendants all the information they asked for and completed the meet-and-confer process without Defendants agreeing to the amendment, Plaintiff filed this motion the next day. |

Defendants never objected to holding meet-and-confer discussions about the proposed amendments, and those sessions were conducted over several dates throughout June 2021. Plaintiffs offered various concessions during that meet and confer, including ways to streamline discovery and limits on the schedule and scope of further amendments or further addition of named plaintiffs. When Defendants informed Plaintiff on July 1 that their position had not changed, Plaintiff filed the instant motion on July 2. None of this was "undue delay," but rather represents the normal passage of time occasioned by the required pre-suit investigation, Defendants' demands, and the Court's instruction that the parties attempt to cooperate to minimize the disputes requiring the Court's intervention. Once Plaintiff had given Defendants all the information they asked for and completed the meet-and-confer process without Defendants agreeing to the amendment, Plaintiff filed this motion the next day.

Defendants' cases do not help them. Defendants cite *Davis v. Pinterest, Inc.*, 2020 WL 6342936 (N.D. Cal. Oct. 29, 2020), for the proposition that a proposed amendment proffered a year after the original complaint was filed constitutes undue delay. Such a reading of *Davis* puts it in direct conflict with the law of this Circuit, which is clear that undue delay in seeking an amendment is determined not by reference to the date a complaint was filed, but by reference to the date the movant knew or should have known of the factual basis for that amendment. *Jackson*, 902 F.2d at 1388.[1] Defendants' reliance on *Jackson* as supposedly holding that a 20-day delay between stating an intention to amend and providing an amended complaint is "inexplicable delay," (Opp. at 8) (quotation marks omitted), is similarly misplaced. The plaintiffs in *Jackson* informed the court that they intended to amend the complaint in March 1987, but did not provide the proposed amendment to defendants until May 1988—*14 months later*. *Jackson*, 902 F.2d at 1388.[2] And *Harris v. Vector Marketing Corp.*, 2009 WL 3710696 (N.D. Cal. Nov. 4, 2009), denied leave to amend because the plaintiff had already filed two previous amended complaints, the proposed amendment would have transformed the lawsuit from a California-

---

[1] *Davis* is inapposite because the plaintiff there filed a previous amended complaint and sought to add a new cause of action that could have been included previously. 2020 WL 6342936, at *1-*2.

[2] *Jackson* is irrelevant for the additional reason that, unlike here, the plaintiff was attempting to add new causes of action, which would have impacted related litigation, and the new causes of action should have been known to the plaintiff when filing his original complaint. 902 F.2d at 1387-88.

**Plaintiff's Reply In Support of Motion for Leave 3:20-cv-4423**

only class action to a nationwide class action, and the facts necessary to plead a nationwide action could have been discovered with reasonable diligence prior to filing suit—none of which are present here. *Id.* at *2.

Defendants' reliance on prior discussions about a May 14 deadline to amend complaints, (Opp. at 8), is both misleading and irrelevant. The Court has never entered a deadline to amend pleadings, and discussions about a case schedule that occurred early this year are irrelevant given the unexpectedly slow pace of discovery and the number of outstanding disputes caused by Defendants' attempts to avoid providing meaningful responses and productions. Defendants seem to recognize the lack of any real May 14 "deadline" given that they recently proposed a July 15 deadline to amend the pleadings, and Plaintiff filed her motion nearly two weeks before that proposed deadline. Defendants also mischaracterize Plaintiff's prior position, because Plaintiff always conditioned any discussion about an agreed-upon deadline to amend pleadings on Defendants agreeing that the complaint did not need to specifically identify works at issue or examples of infringements. Because Defendants rejected these conditions, there never was an agreed-upon deadline to amend the pleadings. Plaintiff's actual position was accurately characterized in Defendants' administrative motion, which was that, if Defendants would not agree to forego filing their procedural motion, the deadline to amend pleadings should be 30 days after the Court's "decision on Defendants' motion," (Dkt. 72-2), which has not yet occurred. Simply put, there has never been an agreement between the parties on a deadline to amend pleadings, this Court has never set a deadline to amend the pleadings, and this motion was even filed before the deadline most recently proposed by Defendants themselves.

**II.  Schneider's Proposed Amendments Would Not Unfairly Prejudice Defendants.**

Defendants' argument that they will be unfairly prejudiced if the Court grants leave to amend mischaracterizes the proposed amendments, Schneider's claim, and the status of discovery. First, Defendants inaccurately claim that the proposed amendments expand the scope of the case in a significant way. (Opp. at 6.) But the proposed change from "persons holding the exclusive right" to "persons that are legal and beneficial owners of an exclusive right under a copyright" is not an expansion, but rather a clarification to track the statutory language. "All persons holding the exclusive

**Plaintiff's Reply In Support of Motion for Leave 3:20-cv-4423**

**4**

right," (Dkt. 1 ¶ 99), already included legal and beneficial owners of copyrights. YouTube's claim that the proposed amendments would expand the case by including works first published outside the United States, (Opp. at 14, n.5), is also wrong because the current complaint already includes in its proposed class definition works first published outside the United States. (Dkt. 1 ¶¶ 99-100.) Likewise, YouTube's argument that the proposed amendments would introduce new issues concerning "derivative" works and works-for-hire, (Opp. at 12), is misplaced because derivative works and works-for-hire have always been part of the case and included within the proposed class definitions. (Dkt. 1 ¶¶ 99-100.) The clarification of the class definition to include "motion picture" and "dramatic" works does not expand the case because the existing definition includes "film," "audiovisual," and "musical works," (Dkt. 1 ¶ 99), and motion pictures and dramatic works are just different types of audiovisual works. Defendants point to no impact that inclusion of these categories will have on discovery, which will overlap because the infringements for all works, including motion pictures, dramatic works, and literary works, are the same (*i.e.*, videos posted to YouTube). While the inclusion of works published prior to 1976 for the CMI class is a modest expansion, it is not an expansion that would prejudice Defendants because it does not increase the scope of discovery required from YouTube beyond that which is already relevant. Defendants articulate no specific reason why these changes are prejudicial, such as why or how they would increase the discovery required, so there is no basis to deny these routine amendments.

At bottom, Defendants' primary claim of prejudice stems from the addition of AST and Uniglobe as proposed class representatives. But if plaintiff-specific discovery were enough to justify denying leave to amend, as Defendants believe, then new parties could never be added after discovery has commenced. Yet, courts routinely do so because adding a new party causes no undue prejudice when, as here, the "case is still in the discovery stage with no trial date pending." *DCD*, 833 F.2d at 188. This case is still in the early discovery stage, and no depositions have been noticed or taken.

Defendants' argument about the supposed burdens that will be imposed on them if AST and Uniglobe are added to the case is unpersuasive for several reasons. First, Defendants do not respond to Plaintiff's argument that AST's and Uniglobe's preexisting membership in the putative class favors granting leave to amend because it means they are not injecting new issues into the case. *See McConnell*

*v. Red Robin Int'l, Inc.*, 2012 WL 1357616, at *2-*3 (N.D. Cal. Apr. 17, 2012) (concluding that new proposed class representative's membership in the proposed class justified granting leave to amend).[3] In fact, because AST and Uniglobe are already putative class members, Plaintiff's outstanding discovery requests already encompass a significant amount of the discovery required, including all their takedown notices and the videos that were the targets of the notices. Defendants have either already produced this information, will produce it following meet-and-confer discussions, or will likely be ordered by the Court to produce it as part of class discovery whether or not new class representatives are added.

Second, Defendants provide no specific details to support their argument that additional plaintiff-specific discovery will substantially prejudice them, which is by itself a reason to grant leave to amend. *See, e.g., State of Cal. ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 631, 637 (N.D. Cal. 1997) (explaining that party opposing amendment bears the burden of demonstrating that a substantial reason exists to deny leave to amend). Instead, Defendants detail their efforts so far, much of which does not relate to plaintiff-specific discovery, and then make vague assertions about a need to interview engineers, identify data stores, and "troubling engineers again to make sense of what is uncovered." (Opp. at 10.) Presumably, however, Defendants' counsel have at this point developed an understanding of Defendants' business, the location and composition of relevant data stores, and relevant custodians, so there is no basis to credit the assertion that permitting amendment will require Defendants "to start that process all over again." (Opp. at 10.)

Instead, Defendants largely rely on the supposed discovery efforts they have already undertaken, but this says nothing about the *additional* discovery that will be required if leave is granted. For example, Defendants note that Plaintiff has served 105 document requests, but the vast majority of those requests are not plaintiff-specific and will not be impacted by the addition of new plaintiffs. In fact, only thirteen of the 105 document requests relate to the original named plaintiffs specifically, which approximates the number of discovery requests that will be required by the proposed additional plaintiffs. Defendants'

---

[3] Instead, Defendants cite *Roling v. E*Trade Sec. LLC*, 279 F.R.D. 522 (N.D. Cal. 2012), to claim that the addition of AST and Uniglobe is "of questionable benefit" because they are already class members, but the motion in *Roling* was filed after class discovery concluded, *id.* at 525.

protestations that they have already spent "hundreds if not thousands of hours" responding to discovery requests also rings hollow considering that they have produced only 6,944 documents to date – and have made just one production of 124 documents since April 30, 2021[4] – and have unjustifiably denied most of Plaintiff's document requests. While the parties are attempting to resolve these discovery disputes, Plaintiff anticipates that, whether through the meet-and-confer process or judicial intervention, Defendants will be undertaking substantial additional discovery in the future that far outweighs the incremental discovery burden caused by two additional plaintiffs.[5]

Contrary to Defendants' claim, (Opp. at 10), *Jackson* does not stand for the proposition that any additional discovery whatsoever amounts to substantial prejudice. In that case, discovery had already concluded four months prior, and in addition to the need to re-open discovery, the motion for leave was not filed until 14 months after the plaintiff first informed the Court of its intention to amend the complaint, the plaintiff asserted an entirely new cause of action, and the plaintiff was aware of the facts supporting amendment at the time the original complaint was filed. *Jackson*, 902 F.2d at 1387-88. In contrast, Schneider was not aware of Uniglobe's and AST's claims at the time of the original complaint, the time between learning of those potential claims and moving for leave to amend was spent investigating the claims as required by Rule 11 and meeting-and-conferring with Defendants, and they assert the same preexisting causes of action based on the same preexisting legal theories.

The Court should also not credit Defendants' argument that they will be prejudiced by the inclusion of AST and Uniglobe as class representatives to make up for supposedly dispositive defenses

---

[4] Plaintiff Schneider and Pirate Monitor have produced over 54,000 documents to Defendants.

[5] Defendants cite *Feske v. MHC Thousand Trails Ltd. P'ship*, 2013 WL 1120816 (N.D. Cal. Mar. 18, 2013), for the notion that their "discovery performance" is irrelevant, but they misunderstand Schneider's arguments. *Feske* involved an attempt to add new class representatives four months after the deadline to amend pleadings had passed, on the ground that defendants had withheld discovery necessary to identify those representatives. The court rejected that argument because the plaintiffs "were not entitled to discovery from Defendants to find replacement class representatives," so even if defendants' production was "problematic," the plaintiffs were "in no worse place than if Defendants had made the production." *Id.* at *4-*5. But Schneider is not claiming she needed discovery from Defendants to identify class representatives. Instead, she is noting the unjustifiably slow pace of discovery to demonstrate why the incremental discovery burdens associated with adding Uniglobe and AST will not substantially prejudice Defendants, who will be conducting significant discovery in the future regardless.

Defendants assert against Schneider. (Opp. at 13.) Defendants' factual assertions are simply *ipse dixit* offered without any evidence whatsoever. While it is difficult to discern the basis for Defendants' factual assertions when no evidence is provided and discovery is ongoing, Defendants appear to refer to a licensing agreement with Schneider's publisher. But that agreement licenses only the works that Schneider's publisher controlled and had the right to license. But Schneider's agreement with her publisher did not grant the publisher control over her works and did not provide her publisher the right to license those works without her written consent, which was never given, which means YouTube's licensing agreement does not extend to Schneider's works. Moreover, even if some of her works were inappropriately part of Content ID for some period of time, not all works were.

Regardless, even if Schneider's claim was somehow deficient, that is not a valid reason to deny leave to amend, particularly at this stage of the proceeding. Defendants claim that amendment would "moot" the work it has already undertaken, (Opp. at 13), but because Schneider is not withdrawing her claim, whatever work Defendants have already undertaken remains relevant. For that reason, the cases cited by Defendants denying leave to amend to *substitute* plaintiffs rather than to *add* plaintiffs are simply irrelevant. *See Hitt v. Arizona Beverage Co., LLC*, 2009 WL 4261192, at *6 (S.D. Cal. Nov. 24, 2009) (substitution of class representative); *Velazquez v. GMAC Mortg. Corp.*, 2009 WL 2959838, at *4 (C.D. Cal. Sept. 10, 2009) (same); *In re Flash Memory Antitrust Litig.*, 2010 WL 2332081, at *17 (N.D. Cal. June 9, 2010) (same).[6] Defendants also argue, (Opp. at 12), that addition of class representatives in *any* case is prejudicial when discovery has already begun because of the need for discovery related to adequacy and typicality, but the cases they cite say no such thing. In *Osakan v. Apple Am. Grp.*, 2010 WL 1838701 (N.D. Cal. May 5, 2010), amendment was sought less than two weeks before the discovery deadline, required modifying a court-issued scheduling order, and would have "expand[ed] the scope of litigation" by implicating business practices not previously challenged, *id.* at *2-*5, none of which is present here.

---

[6] These cases are also distinguishable for other reasons. In *Hitt*, the plaintiff filed a prior amended complaint, and the deadline to amend the pleadings had passed. 2009 WL 4261192, at *1-*2, *6. In *Velazquez*, the plaintiff had filed a prior amended complaint, and the plaintiff had already been deposed. 2009 WL 2959838, at *1. In *Flash Memory*, the motion to substitute plaintiffs was filed after class certification briefing. 2010 WL 2332081, at *17.

As for *In re Outlaw Laboratory, LP Litig.*, 2020 WL 434477 (S.D. Cal. Jan. 28, 2020), the movant there already filed three complaints and was seeking to add new defendants and challenge business practices not previously implicated only two months before a court-ordered discovery deadline, and the court believed the amendments were likely futile, *id.* at *6. No such concerns are present here.[7]

Finally, Defendants' argument that amendment is improper because it would delay class certification, (Opp. at 13-14), fails for the simple reason that, despite bearing the burden of showing undue prejudice, *DCD*, 833 F.2d at 187; *Mueller*, 175 F.R.D. at 637, Defendants continue to offer no explanation why the proposed amendment in *this* case would result in such prejudice. Instead, they declare that discovery regarding class certification will "take[ ] months" and will be "slow and laborious," particularly when "cross-border third-party discovery" is taken into account, (Opp. at 13-14), but offer no discernible reason why issues relating solely to class certification would consume so much time, nor why they would necessitate subpoenas from third parties. Indeed, although copyright holders of non-United States works were always a part of the class, the addition of putative class representatives that own such copyrights will only streamline and focus discovery.

Defendants also declare that merely allowing the proposed amendment "may delay a decision on class certification indefinitely," (Opp. at 14), but Schneider's proposed amendment would have no such effect – indeed, Defendants attribute that delay to the lack of a scheduling order, (*id.*), not to anything relating to the proposed amendments. Defendants' cases are no help to them – *Outlaw Laboratory* involved an amendment that would require significant additional discovery because it added an entirely new RICO claim and "'at least a dozen new victims' in Michigan," 2020 WL 434477, at *6; *Nautilus, Inc. v. ICON Health & Fitness, Inc.*, involved a new counterclaim for a patent so "distinctly different" from the patent already at issue that it would not only "necessitate additional discovery, unrelated to the discovery already performed," but also "add unnecessary complexity to an already

---

[7] Similarly, *Integra Lifesciences Corp. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 634642 (D. Del. Feb. 16, 2017), is inapposite because that case was not a class action in which putative class members were stepping forward as class representatives (which means that, unlike here, permitting amendment would have injected new issues into the case), and granting leave to amend would have required changes to a court-issued scheduling order.

complex litigation [by] effectively combining two patent infringement trials into one," 2018 WL 4208072, at *3 (D. Utah Sept. 4, 2018); and *Roling* involved a request to amend made after "[c]lass discovery, as well as discovery on the individual claims of the named plaintiffs, ha[d] already closed," 279 F.R.D. at 525. Obviously, Schneider's proposed amendment is not remotely so sweeping and discovery remains ongoing, so none of these cases support denial of leave to amend here.

### III.     THIS COURT SHOULD IMPOSE NO "CONDITIONS" ON AMENDMENT.

Finally, Defendants request that this Court grant Schneider leave to amend only on two conditions: (1) that no future amendment will be allowed absent a showing of "good cause"; and (2) that no further amendment be allowed regarding "the works at issue." (Opp. at 14-15.) Tellingly, Defendants identify literally *no* authority for either request, offering only a misleading citation of a treatise discussing the imposition of conditions when adding or removing parties under Rule 21 (such as requiring certain witnesses' participation in litigation), not prohibitions or limitations on future amendments governed by Rules 15 and 16. (*Id.* (citing 7 Fed. Prac. & Proc. Civ. § 1688 (3d ed.))). Nor could they – the Supreme Court has set forth the legal standard that controls when determining whether to grant leave to amend, *Foman v. Davis*, 371 U.S. 178 (1962), and lower courts are without authority to impose more demanding standards of their own. Though Schneider does not currently contemplate seeking further amendments of her complaint, any future request for leave to make such amendments should be evaluated under *Foman*'s governing legal standard, which adequately addresses Defendants' supposed concerns about their "ability to prepare [their] defenses." (Opp. at 15.)[8]

### CONCLUSION

For the reasons stated above, Schneider respectfully requests that the Court grant her Motion for Leave to File First Amended Complaint.

---

[8] Defendants also request an order forcing Schneider to identify all works in suit by a particular date. (Opp. at 15.) This request should be stricken under Federal Rule of Civil Procedure 7(b)(1), which requires that any "request for a court order must be made by a motion." *See*, *e.g.*, *Prime Healthcare Servs.-Lehigh Acres, LLC v. Blue Cross Blue Shield of Fla., Inc.*, 2020 WL 6273744 (M.D. Fla. Oct. 26, 2020).

| | | |
|---|---|---|
| 1 | Dated: July 26, 2021 | Respectfully submitted, |
| 2 | | /s/ Randall P. Ewing, Jr.<br>George A. Zelcs |
| 3 | | Randall P. Ewing, Jr.<br>Ryan Z. Cortazar |
| 4 | | **KOREIN TILLERY, LLC**<br>205 North Michigan, Suite 1950 |
| 5 | | Chicago, IL 60601<br>Telephone: (312) 641-9750 |
| 6 | | Facsimile: (312) 641-9751 |
| 7 | | |
| 8 | | Stephen M. Tillery<br>Steven M. Berezney, CA Bar #329923 |
| 9 | | Michael E. Klenov, CA Bar #277028<br>Carol O'Keefe |
| 10 | | **KOREIN TILLERY, LLC**<br>505 North 7th Street, Suite 3600 |
| 11 | | St. Louis, MO 63101<br>Telephone: (314) 241-4844 |
| 12 | | Facsimile: (314) 241-3525 |
| 13 | | Joshua Irwin Schiller, CA Bar #330653 |
| 14 | | **BOIES SCHILLER FLEXNER LLP**<br>44 Montgomery St., 41st Floor |
| 15 | | San Francisco, CA 94104<br>Phone: (415) 293-6800 |
| 16 | | Fax: (415) 293-6899 |
| 17 | | Philip C. Korologos |
| 18 | | Joanna Wright<br>Demetri Blaisdell |
| 19 | | **BOIES SCHILLER FLEXNER LLP**<br>55 Hudson Yards, 20th Floor |
| 20 | | New York, NY 10001<br>Phone: (212) 446-2300 |
| 21 | | Fax: (212) 446-2350 |
| 22 | | *Attorneys for Maria Schneider,* |
| 23 | | *Pirate Monitor Ltd., Uniglobe Entertainment, LLC,*<br>*and AST Publishing Ltd.* |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |