

October 29, 2021

**VIA ECF**
The Honorable James Donato
United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

*Schneider v. YouTube, LLC et al.*, Case No. 3:20-cv-04423 (N.D. Cal.)

Dear Judge Donato:

      We write on behalf of Plaintiff Maria Schneider to move to compel the production of Defendants' Content ID and Takedown Notice databases, as well as documents describing and defining the database fields, all of which are directly relevant to this action. Plaintiff sought these databases by Request Nos. 28 and 78 of Plaintiff's First and Second Set of Requests for Production, excerpts of which are attached as Exhibits A and B, respectively. Excerpts of Defendants' responses thereto are attached as Exhibits C and D, respectively. We certify that we met and conferred pursuant to the Court's Orders and the Civil Local Rules.[1]

      **Content ID Database**. As outlined in the Complaint (*e.g.*, ¶¶ 8-13), YouTube's Content ID system uses digital fingerprinting technology to identify content on, or in the process of being uploaded to, YouTube that matches the fingerprints of copyrighted works. The Content ID system allows participating copyright holders to manage infringing matched content by (i) blocking the matched content from the YouTube platform or (ii) allowing the matched content to be on YouTube but monetizing it for the benefit of the copyright holder and YouTube. The Content ID system is thus a powerful tool for copyright holders to police infringement. But YouTube provides access to the Content ID system only to copyright holders with significant market power (such as very large movie studios and record labels) and not to other copyright holders (such as Plaintiff and the putative class) with insufficient market power. YouTube has one or more databases that track the matches found by its Content ID system, and how those matches are resolved by copyright holders (including by blocking or monetizing such matches).

      YouTube's limitation of its Content ID system to copyright holders with significant market power harms copyright holders without significant market power, including Plaintiff and the putative class. As a result of Content ID, YouTube is populated with content that obviously copies protected works, encouraging further infringement by users. Moreover, when a copyright holder monetizes an infringing work through Content ID, the uploader of the work is not assessed a copyright strike, enabling and encouraging the uploader to continue to engage in additional infringing acts. Even when a copyright holder blocks a Content ID match, the uploader who copied the copyrighted work to upload it onto YouTube is not issued a copyright strike. These impacts are compounded by YouTube's decision to relegate ordinary copyright

---

[1] Req. 28 was also included in Plaintiff's prior motion to compel (Dkt. 70), concerning which the Court ordered the parties to meet and confer. *See* May 27, 2021 Order (Dkt. 82).



holders to identifying infringing content through manual keyword searches (which is possible for only some, but not all, infringements) and then sending Takedown Notices regarding each infringing video they might find.  Notably, since such searches can only be done on videos that are already posted to YouTube, ordinary copyright holders without access to Content ID are unable to block infringing videos before they are posted or to monetize them from the time they are posted—both of which are available to beneficiaries of the Content ID system.

Access to YouTube's Content ID database (Exh. B, Req. 78) will enable Plaintiff's counsel to demonstrate that YouTube is capable of identifying and preventing, or monetizing, copyright infringement for all copyright holders, rather than discriminatorily limiting use of that system to only copyright holders with significant market power.  It will also establish that YouTube is not entitled to a "safe harbor" defense under the Digital Millennium Copyright Act ("DMCA") because, among other requirements that YouTube cannot establish, the DMCA safe harbors require YouTube to have a policy that terminates in appropriate circumstances those users who are repeat copyright infringers.  As will be shown by the Content ID database, YouTube's policy fails that test because even though the Content ID system identifies a significant number of incidences of infringement, no Content ID matches are counted as copyright strikes under YouTube's repeat infringer policy, even where the copyright holder exercises its rights to block or monetize the infringing content identified by the system.  The reasonableness of YouTube's implementation of its repeat infringer policy must be evaluated with respect to the prevailing practices on its platform.  Plaintiff submits that if YouTube continues to publish monetized, infringing content through its Content ID system, it must: (1) assess copyright strikes against uploaders whose infringing videos are blocked or monetized; and/or (2) offer Content ID protections, including digital fingerprint screening and blocking, to all copyright holders under equivalent terms and conditions.

**Takedown Notice Database**.  Takedown Notices are copyright holders' notices to YouTube that videos on YouTube infringe on their copyrights and should be taken down from the platform.  YouTube maintains a database of all Takedown Notices and their dispositions.

Plaintiff brought this action on behalf of a putative class of copyright holders who (i) submitted a Takedown Notice to YouTube with respect to a copyrighted work, (ii) had that work subsequently infringed again on YouTube, and (iii) were not able to use YouTube's Content ID system with respect to that work (which use could have prevented the infringement).  In addition to seeking YouTube's Content ID databases, this motion also seeks production of YouTube's Takedown Notice databases, which go directly to establishing a class, rebutting Defendants' safe harbor and other defenses, and to the merits question of infringements of copyrighted works.  Plaintiff seeks production of "All databases Concerning Takedown Notices and Documents sufficient to show all fields in any databases Concerning Takedown Notices, Including a description of the nature of each field."  Exh. A, Req. 28.

*Class certification*.  Because the putative class includes individuals who have submitted a Takedown Notice, the Takedown Notice database (Req. 28) is relevant to the identification of class members.  The Takedown Notice database contains information about the ownership of copyrights, the volume of Takedown Notices submitted, and the frequency and manner of disputes over Takedown Notices (*e.g.* "counternotices" submitted by the uploader), all of which



are relevant to the predominance analysis for the class. The Content ID databases (Req. 78) are also relevant to class certification. Plaintiff will show that the Content ID system can be used to identify infringements of copyrights held by the putative class. An understanding of how the Content ID system works, what records YouTube maintains about the operation of the Content ID system, and how YouTube manages the Content ID system bears directly on the identity of class members and infringements, as well as on predominance of common issues.

*Affirmative defenses*. Both the Content ID and Takedown Notice databases contain data that will rebut YouTube's affirmative defenses. YouTube is not entitled to DMCA safe harbor protection because it failed to adopt and reasonably implement policies to ensure the termination in appropriate circumstances of repeat infringers' accounts and, independently, because it received a financial benefit directly attributable to the infringing activity where it has the right and ability to control such activity. 17 U.S.C. § 512(c)(1)(B) & (i)(1)-(2). As the Content ID database will establish, YouTube is aware of the identity of many users that post dozens or even hundreds of infringing videos, but fails to issue copyright strikes that would penalize those users as repeat infringers. Likewise, the databases will establish that YouTube profits from infringing works on its platform while it has the ability through its Content ID system to control copyright infringement. Discovery regarding YouTube's safe harbor affirmative defenses is relevant to both the claims of the putative class and to Plaintiff's individual claims. *See Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 614 (9th Cir. 2018) (holding in a non-class case that the "repeat infringer policy requirement does not focus on the particular infringement at issue," but rather on "how the site is generally managed" to prevent repeat infringement).

*Burden*. Defendants erroneously assert that Req. Nos. 28 and 78 are "unduly burdensome." Both requests seek the production of existing databases in YouTube's control, not the compilation of new data.[2] *Cf. Shaw v. Experian Info. Sols.*, 306 F.R.D. 293, 301-02 (S.D. Cal. 2015) (pre-certification production of consumer credit-dispute data not unduly burdensome even where production would require compilation of new dataset). Plaintiff has proposed to address Defendants' privacy concerns by permitting Defendants to anonymize the identities of users in the databases, with consistent identifiers to ensure the databases can be used together and with other anonymized documents produced going forward.

In sum, the databases Plaintiff seeks are in YouTube's control and are highly relevant to class certification, to YouTube's affirmative defenses, and to Plaintiff's infringement claims. Nonetheless, YouTube has refused to produce them. Plaintiff thus asks the Court to compel production of YouTube's Content ID and Takedown Notice databases, as well as any documents describing the Takedown Notice database fields or describing the Content ID database fields.

---

[2] Despite agreeing to produce documents showing and describing the Takedown Notice and Content ID database fields and a small, anonymized sample showing the data structure and the fields populated, Defendants have not produced those documents. Plaintiff sought this information to understand the databases, and not as a compromise instead of producing the entire databases (which should be produced for the reasons noted above). While production of the full databases would obviate the need for a sample or a list of database fields, Plaintiffs ask the Court to order production of any documents describing the Takedown Notice database fields and any documents defining the Content ID database fields, consistent with the parties' prior agreements.



Respectfully submitted,

| | |
|---|---|
| */s/ Philip C. Korologos* | */s/ Carol O'Keefe* |
| Philip C. Korologos | Carol O'Keefe |
| Boies Schiller Flexner LLP | Korein Tillery, LLC |

*Counsel for Plaintiff Maria Schneider*