**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

650 Page Mill Road
Palo Alto, California 94304-1050

O: 650.493.9300
F: 650.493.6811

November 15, 2021

<u>Via CM/ECF</u>
The Honorable James Donato
United States District Court
for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD,
              Response to Discovery Letter Brief (Dkt. 95)

Your Honor:

      Plaintiff Maria Schneider has yet to articulate a viable copyright claim considering the licenses that she, her agents, and others granted to YouTube to use her works. Schneider also faces insuperable impediments to her representation of a supposed class of copyright holders. Nevertheless, she continues to pursue a sweeping, costly, and unjustified discovery campaign. She has now demanded gargantuan data stores containing private information of millions of third-party users and copyright holders, and the details of how parties have chosen to protect their works on YouTube. At the Court's direction, the parties spent hours negotiating a reasonable compromise to that unreasonable demand. But Schneider's latest discovery letter brushes aside those efforts and attempts to start this dispute from scratch. Her motion is without merit and should be denied.

      **The parties reached a compromise concerning these very requests.** Plaintiff's letter renews her demand for (1) the entirety of a database containing details of hundreds of millions of claims that copyright holders have made using YouTube's unique Content ID system, through which they can monetize or block videos on the YouTube service that match their works, and (2) the entirety of a database containing the details of each of the tens of millions of takedown notices that copyright holders have sent to YouTube requesting the removal of videos from the service pursuant to the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"). The requests are essentially the same as those raised in her prior letter brief (*see* Dkt. 70) and cover hundreds of millions of rows of data. YouTube objected on relevance and burden grounds (Dkt. 75), and the Court directed a meet-and-confer between lead counsel (Dkt. 82). Over the course of over a dozen hours of discussions on these and other issues, the parties reached an agreement whereby YouTube would produce the schemas for its Content ID and takedown databases, including names and descriptions of the database fields.[1] YouTube further

---

[1] YouTube also agreed to produce (and has produced) documents showing the number of users it terminated pursuant to its DMCA repeat infringer policy and Plaintiff's own takedown notices, and offered information from its databases for the videos and channels to which Plaintiff directed takedown notices. That is, YouTube offered the information germane to Plaintiff's own claims, rather than information on every claim anyone has ever made.

WILSON SONSINI

agreed to produce sample data, and began the process of redacting the personally identifiable information in that sample. YouTube informed Plaintiff on October 29 that it expected to produce the database schemas and privacy-redacted sample data soon. Plaintiff did not respond. Less than two hours later, Plaintiff filed this motion, reiterating her demand for the entirety of the databases, and consigning to a footnote the parties' admitted "agreement," claiming it was "not . . . a compromise." Letter at 3 n.2. That is the opposite of a cooperative and constructive meet-and-confer process. The Court should deny Plaintiff's motion for this reason alone.

**Schneider's document requests are facially problematic.** RFP No. 28 seeks "[a]ll databases Concerning Takedown Notices," regardless of the actual contents of any such database. Schneider characterizes the impenetrable language of RFP No. 78 as seeking "YouTube's Content ID database." Letter at 2. To the extent these requests are not impermissibly vague, they are overbroad because they seek hundreds of millions of rows of database information about claimants, claims, matches, works, and videos that have nothing to do with Plaintiff's case.

**Producing such databases poses serious privacy issues.** Plaintiff's request for YouTube's Content ID and takedown databases also raises serious privacy issues as it would require the production of immense amounts of third-party data, including names, phone numbers, email addresses, and physical addresses of millions of Internet users with no connection to this case. Plaintiff's demand for Content ID databases, for example, seeks data about every user who posted a video that the Content ID system matched, whether that video was blocked, monetized, or tracked. But producing databases that contain even a fraction of that data for a single year would be grossly overbroad: As of April 2021, more than **20 million** YouTube accounts had had a video blocked due to a Content ID claim received in 2020 alone. In addition, while reflecting only a tiny fraction of the total number of videos on the service, YouTube received more than **20 million** takedown notices between January 2015 and December 2020. A production of databases reflecting such activity implicates numerous national and international privacy regimes and the personal information of millions of people—for no good reason.[2]

**The sufficiency of YouTube's repeat infringer policy is a question of law.** As before, Plaintiff contends that YouTube's databases would allow her to evaluate whether YouTube reasonably implements a repeat infringer policy under the DMCA because users whose videos are monetized or blocked through Content ID should be treated as infringers. *See* Letter at 2-3. Schneider's legal premise is deeply flawed. For one thing, copyright owners who choose to monetize videos found through Content ID expressly license their works, barring any infringement claim. More fundamentally, no law states that matches generated automatically by Content ID, without a formal infringement notice or any human review, must be treated as infringements for purposes of a DMCA repeat infringer policy. To the contrary, the DMCA grants services broad discretion to design their repeat infringer policies and apply them in

---

[2] Plaintiff's suggestion that YouTube "anonymize the identities of users in the databases," using "consistent identifiers," is no solution. Letter at 3. This would require YouTube to develop a bespoke anonymization system for this case. To the extent feasible, it would require staggeringly disproportionate effort, as would applying privacy redactions to hundreds of millions of entries.

WILSON SONSINI

"appropriate circumstances." 17 U.S.C. § 512(i)(1)(A). And YouTube's policy and its implementation have been expressly validated in court. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 527-28 (S.D.N.Y. 2010) (as a matter of law, YouTube adopted and reasonably implemented a repeat infringer policy), *aff'd in part, rev'd in part*, 676 F.3d 19 (2d Cir. 2012). In any event, YouTube has offered to stipulate that it does not impose copyright "strikes" based on a Content ID match. If Plaintiff believes that means YouTube has not reasonably implemented a repeat infringer policy, she can advance that misguided legal argument without this mass of information, much of it personally identifiable.[3]

**The theoretical claims of a putative class cannot justify this discovery.** Finally, Plaintiff purports to need YouTube's databases to identify members of a putative class and evaluate the merits of their claims. *See* Letter at 2-3. Even assuming that YouTube's databases contain information about "the ownership of copyrights" and the volume of takedown notices and counter notices (*id.*), that information is not necessary for class certification—and certainly does not warrant the production of entire databases.[4] Insofar as Plaintiff seeks YouTube's databases to identify class members or evaluate their claims, her request is premature where no class exists (and certification proceedings have not been scheduled).

Plaintiff provides no reason for this Court to compel the production of an ill-defined set of databases, encompassing the data of millions, virtually none of which has any conceivable bearing on her claims. YouTube stands ready to produce the database fields, descriptions, and redacted sample data to which the parties had previously agreed, and renews its offer to stipulate regarding how YouTube treats Content ID blocks. YouTube can also agree to revisit the requests in the unlikely event a class is ever certified. *See Football Ass'n Premier League v. YouTube, Inc.*, 297 F.R.D. 64 (S.D.N.Y. 2013) (denying certification). At this stage, that is all that is appropriate.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s David H. Kramer*
David H. Kramer
Attorneys for Defendants and Counterclaimants
GOOGLE LLC and YOUTUBE, LLC

---

[3] Contrary to Plaintiff's claim, the databases will not show that YouTube controls and profits from infringement through Content ID. Letter at 2-3. Even if there were legal support for that assertion (and there is not), the argument appears to turn on the capabilities of the Content ID system, not the minute details of how all participants have used the system.

[4] Plaintiff provides no support for the conclusory and incorrect claim that these requests seek information "relevant to the predominance analysis for the class" and "relevant to class certification." *See* Letter at 2-3. That there are highly-individualized issues applicable to each claimed infringement is manifest without the production of hundreds of millions of database records.