George A. Zelcs (*pro hac vice*)
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
  rewing@koreintillery.com
Ryan Z. Cortazar (*pro hac vice*)
  rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe (*pro hac vice*)
  cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
  pkorologos@bsfllp.com
Joanna Wright (*pro hac vice*)
  jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice forthcoming*)
  dblaisdell@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd., and Attorneys for*
*Counter-Defendants Pirate Monitor Ltd. and Gábor Csupó*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC;<br><br>Defendants. | CASE NO.  3:20-cv-4423-JD<br><br>**NOTICE OF MOTION AND MOTION TO SEVER**<br><br>DATE: February 3, 2022<br>TIME: 10:00 a.m.<br>COURTROOM: 11<br>JUDGE: Honorable James Donato |
| YOUTUBE, LLC and GOOGLE LLC;<br><br>Counter-Plaintiffs,<br><br>vs.<br><br>PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC,<br><br>Counter-Defendants. | |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on February 3, 2022, at 10:00 a.m. Pacific, or as soon thereafter as the matter can be heard, in the courtroom of the Honorable James Donato located at the Phillip Burton Federal Building and United States Courthouse, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd. ("Plaintiffs") will, and hereby do, move for an order granting this Motion to Sever. This motion will be based on this Notice and Motion, the Memorandum of Points and Authorities below, and the Proposed Order.

**RELIEF REQUESTED**

1.  An order under Rule 21 of the Federal Rules of Civil Procedure severing the claims raised by Counter-Plaintiffs YouTube, LLC and Google LLC (hereafter "Counter-Plaintiffs") against

Counter-Defendants Pirate Monitor Ltd., Pirate Monitor LLC, and Gábor Csupó (hereafter "Counter-Defendants") from the claims being pursued by Plaintiffs.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC;<br><br>Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC;<br><br>Counter-Plaintiffs,<br><br>vs.<br><br>PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC,<br><br>Counter-Defendants. | CASE NO.  3:20-cv-4423-JD<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO SEVER**<br><br>DATE: February 3, 2022<br>TIME: 10:00 a.m.<br>COURTROOM: 11<br>JUDGE: Honorable James Donato |

**ISSUE TO BE DECIDED**

Whether under Federal Rule of Civil Procedure 21—which permits the severance of a claim that does not arise out of the same transaction or occurrence as the main claim; where common questions of law or fact do not exist; when settlement would not be facilitated; where prejudice and juror confusion would otherwise ensue; or where different evidence would be introduced—the Court should sever Counter-Plaintiffs' breach of contract and fraud claims against Counter-Defendants.

**INTRODUCTION**

The Court should sever the Counter-Plaintiffs' claims because they are against non-class members[1] and have nothing to do with the copyright infringement claims that Plaintiffs bring on behalf of a class of copyright holders whose copyrights have been repeatedly infringed by Counter-Plaintiffs for many years. The Counter-Plaintiffs' claims assert different legal theories than the class's claims, involve completely different evidence, will have no impact on the class's ability or desire to settle its claims, and will confuse the jury by requiring it to adjudicate two entirely separate cases at once. More importantly, allowing the Counter-Plaintiffs' claims to remain will significantly prejudice Plaintiffs and the class by putting before the jury evidence designed to encourage it to punish the class for alleged misconduct by non-class members. By contrast, Counter-Plaintiffs suffer no prejudice if their claims are severed. The motion to sever should be granted.

**BACKGROUND**

**A. Plaintiffs' Claims for Copyright Infringement and CMI Stripping**

Plaintiffs have filed claims for copyright infringement (direct, contributory, vicarious, and inducement) on behalf of themselves and a class of copyright holders challenging Counter-Plaintiffs' practice of monetizing the infringing material that pervades the YouTube platform. Plaintiffs' copyrights have been infringed repeatedly on YouTube, despite having sent prior successful takedown notices for those same works and despite Counter-Plaintiffs' actual and constructive knowledge that

---

[1] Pirate Monitor LLC and Gábor Csupó have never been members of the putative class because neither ever submitted a successful takedown notice. Because Pirate Monitor Ltd. dismissed its claims with prejudice, it is not a member of the putative class that is pursuing claims in this action against Defendants/Counter-Plaintiffs.

YouTube is being used continuously to infringe their copyrights. (ECF No. 99 at ¶ 13.) Compounding this problem, Plaintiffs and the class have been denied any meaningful opportunity to prevent YouTube's public display of videos that infringe their copyrights. (*Id.* at ¶ 1.)

The copyright management tool that YouTube provides primarily to industry behemoths (e.g., major record labels and movie studios) is called Content ID—a digital fingerprint tool that compares videos as they are uploaded on YouTube to a catalog of copyrighted material submitted by those entities. Content ID allows these behemoths to automatically identify videos that contain their works the moment an infringing video is uploaded on YouTube, and to choose whether to block the video from publication on the platform, monetize the video by running ads against it, or track the video's viewership statistics. (ECF No. 99 at ¶ 8.) Counter-Plaintiffs, however, have not made Content ID available to smaller rights holders like Plaintiffs and the class, who must scour YouTube daily to police their rights and file individual takedown notices in an endless game of whack-a-mole. (*Id.* at ¶¶ 2, 9.) Even though they may be able to locate some videos with searches, that occurs only *after* the infringing material has been posted, and in any event, there is effectively no way for Plaintiffs and the class to find infringing videos that are posted without tags or keywords.

Plaintiffs further allege that Counter-Plaintiffs have forfeited their protections under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(i)(1)(A), which provides a safe harbor against copyright infringement claims for entities that adopt and reasonably implement a policy of terminating repeat infringers. (ECF No. 99 at ¶¶ 12, 91.) YouTube seeks refuge in this safe harbor on the basis of its policy of assessing a "copyright strike" against the uploader of content subject to a successful takedown notice and terminating uploaders who accrue three copyright strikes. But when infringing content is identified by Content ID, no copyright strikes are issued. Thus, when Google brags that 98% of its "copyright issues are resolved via Content ID," this essentially means that nearly all identified infringing materials are insulated from YouTube's repeat-infringer policy. (*Id.* at ¶¶ 12, 92.) Making matters worse, in those rare instances when copyright strikes are issued, YouTube forgives those strikes after only 90 days; this allows for repeat infringement. (*Id.* at ¶ 91.)

Plaintiffs also allege that Counter-Plaintiffs have forfeited their DMCA protections by conditioning takedowns on the provision of additional information not required under the DMCA; by financially benefitting from infringements they have the right and ability to control; by substantially influencing user behavior through methods such as their Autoplay feature, which automatically queues up videos to users; and by interfering with standard technical measures designed to protect copyrighted works and CMI. (ECF No. 99 at ¶¶ 14, 86-87, 95-97, 99-102.)

In addition to copyright infringement, Plaintiffs allege that Counter-Plaintiffs have violated 17 U.S.C. § 1202 by stripping copyright management information ("CMI") (e.g., title, author, copyright owner, lyricist, producer, etc.) from uploaded videos, and knowingly displaying videos with removed or inaccurate CMI. (ECF No. 99 at ¶¶ 82-86, 143-52.) This makes it easier for infringing videos to be uploaded to and to remain on YouTube because copyright owners are unable to find and file takedown notices against infringing videos. (*Id.* at ¶¶ 85-86.)

**B. Counter-Plaintiffs' Claims Against Pirate Monitor Ltd., Pirate Monitor LLC, and Gábor Csupó for Breach of Contract and Fraud**

Pirate Monitor Ltd. was initially a plaintiff along with Ms. Schneider (before Uniglobe and AST were added as plaintiffs in the First Amended Complaint, ECF No. 99), but voluntarily dismissed all of its claims against Counter-Plaintiffs with prejudice by stipulation under FRCP 41(a)(1)(A)(ii) in March 2021. (ECF No. 66.) Counter-Plaintiffs nevertheless continue to pursue claims they filed in February 2021 against Pirate Monitor Ltd., Pirate Monitor LLC, and Gábor Csupó. (ECF No. 60.) In those claims, Counter-Plaintiffs allege that Counter-Defendants engaged in a fraudulent scheme to gain access to Content ID by uploading videos to YouTube, then demanding that YouTube remove those same videos. (*Id.* at ¶¶ 1, 72, 78.)

Based on these allegations, Counter-Plaintiffs bring three claims against Counter-Defendants. The first is for breach of contract, for violating YouTube's terms of service by failing to provide accurate identification information during the account creation process and by uploading videos to YouTube that infringed copyrights. (ECF No. 60 at ¶¶ 54-61.) The second is for common law fraud, for falsely promising when creating their YouTube accounts that they had the authority to post the videos that

they did and that any content they uploaded would not violate copyrights. (*Id.* at ¶¶ 62-75.) The third is for fraudulent misrepresentations regarding takedown notices in violation of 17 U.S.C § 512(f); Counter-Plaintiffs claim in the alternative that Counter-Defendants or their agents truthfully claimed during the account-creation and upload processes that the videos they were uploading did not violate copyrights, but then fraudulently claimed that those videos violated their copyrights. (*Id.* at ¶¶ 76-85.) Counter-Plaintiffs request compensatory damages, punitive damages, injunctive relief, costs, and attorneys' fees. (*Id.* at p. 22.) Counter-Plaintiffs estimate their actual damages to total approximately $20,000, and they also seek more than $100,000 in attorneys' fees under 17 U.S.C. § 512(f) related to pursuing their $20,000 in actual damages. *See* Ex. 1, 11/01/21 Counter-Plaintiffs' Response to Pirate Monitor Interrogatory No. 5; Ex. 2, 12/03/21 Dec. of S. Berezney at ¶ 2 (authenticating Ex. 1).[2]

**LEGAL STANDARD**

Rule 21 permits the Court to "sever any claim against a party," and Rule 42 allows the Court, "[f]or convenience, to avoid prejudice, or to expedite and economize … [to] order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Although courts have sometimes used these concepts interchangeably, "[s]eparate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n.19 (5th Cir. 1993) (quoting 9 Wright & Miller, *Federal Practice & Procedure: Civil* § 2387 (1971)); *see also Herklotz v. Parkinson*, 848 F.3d 894, 898 (9th Cir. 2017) ("When a claim is severed, it becomes an entirely new and independent case."). This Court has "broad discretion" to sever claims under Rule 21, *Earth Island Institute v. Quinn*, 56 F. Supp. 3d 1110, 1114 (N.D. Cal. 2014), "so long as they are discrete and separate," *Bias v. Wells Fargo & Co.*, No. 12-cv-664-YGR, 2012 WL 2906664, at *2 (N.D. Cal. July 13, 2012).

In determining whether severance is appropriate, courts consider: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether severance would facilitate settlement or judicial economy; (4) whether severance would

---

[2] Although the Interrogatory Response was marked Confidential under the Protective Order, Counter-Plaintiffs consented to Plaintiffs filing this exhibit publicly. *See* Ex. 2 at ¶ 3.

avoid prejudice; (5) whether different evidence is required for the separate claims, *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *6 (N.D. Cal. May 15, 2017),[3] (6) whether the factual proof and legal theories are complex; (7) whether the jury may be confused absent severance; and (8) whether severance serves the ends of justice and furthers the prompt, efficient disposition of litigation, *Lam Research Corp. v. Flamm*, No. 15-cv-01277-BLF, 2016 WL 1237831, at *2 (N.D. Cal. Mar. 30, 2016) (citing *Khanna v. State Bar of Cal.*, No. C-07-2587, 2007 WL 2288116, at *2 (N.D. Cal. Aug. 7, 2007)).[4]

## ARGUMENT

Every factor weighs in favor of severing the Counter-Plaintiffs' claims:

**Counter-Plaintiffs' Claims Are Not Based on the Same Transaction or Occurrence**: In determining whether the Counter-Plaintiffs' claims arise out of the same "transaction or occurrence," a court considers whether they arise out of "a systematic pattern of events" that ties otherwise separate events together. *E.g.*, *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

Here, the Counter-Plaintiffs' claims include entirely separate events and actions on the part of the Counter-Defendants that have no systematic tie to the events and actions of YouTube giving rise to the claims of Plaintiffs and the class. The events and actions relevant to Plaintiffs' and the class's claims took place over many years and involve the creation and management of YouTube's Content ID system, YouTube's adoption and implementation of its repeat infringer policy, the development of its AutoPlay features, YouTube users' uploading of infringing videos, and Defendants' earnings from potentially millions of infringing videos since at least 2017 to the present.

By contrast, the claims brought by YouTube and Google involve events that allegedly occurred between August and November 2019 in Hungary and Pakistan. (ECF No. 60 at ¶¶ 28, 51-52.) The relevant actions are the Counter-Defendants' alleged uploading of videos to YouTube and their making

---

[3] *See also Trazo v. Nestlé USA, Inc.*, No. 5:12-cv-02272-PSG, 2013 WL 12214042, at *2 (N.D. Cal. Dec. 4, 2013) (citing similar factors); *CJ Investment Servs., Inc. v. Williams*, No. 5:08-cv-5550-EJD, 2012 WL 547176, at *2 (N.D. Cal. Feb. 17, 2012) (same).

[4] *See also Pena v. McArthur*, 889 F. Supp. 403, 407 (E.D. Cal. 1994) ("Fairness is a critical consideration in determining whether severance is appropriate.").

allegedly false representations to YouTube when they submitted takedown notices. None of this alleged misconduct has any connection to YouTube's misconduct at the heart of the claims of Plaintiffs and the class. Indeed, nowhere in their claims do YouTube or Google suggest that the Counter-Defendants or their agents infringed Plaintiffs' or the class's works or that the Counter-Defendants' allegedly fraudulent scheme has any overlap with Plaintiffs' or the class's infringement claims. *See, e.g.*, *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 202 F.R.D. 212, 215 (S.D. Tex. 2001) (severing class claim from counterclaim because (1) transaction forming basis of plaintiff's RICO claim was an alleged scheme by defendants to defraud worker's compensation policy holders where defendant's counterclaim was based upon a transaction involving the pricing of plaintiff's insurance policies and (2) claims did not arise from same aggregate of operative facts).[5]

Put simply, Plaintiffs' claims focus on YouTube and Google's actions predominantly in the United States, while YouTube and Google's claims against the Counter-Defendants involve the actions of a few people half a world away. And Plaintiffs' claims involve a course of conduct by YouTube and Google that took place over multiple years while the Counter-Plaintiffs' claims involve allegations spanning just a few months in 2019. There is thus no way in which they involved the same transaction or occurrence.

**The Counter-Plaintiffs' Claims Do Not Present Common Questions of Law or Fact**: There are no common questions of law between the Counter-Plaintiffs' claims and Plaintiffs' underlying complaint because the legal questions are distinct. Plaintiffs and the class allege that their individual copyrights have been infringed by various videos posted on YouTube, that they have submitted a successful takedown notice, and have subsequently had infringing videos uploaded to YouTube. (ECF No. 99 at ¶ 103.) They further argue that Counter-Plaintiffs have forfeited their DMCA protection under 17 U.S.C. § 512(i)(1)(A) by:

---

[5] Counter-Plaintiffs' claims against Csupó rely on a veil-piercing theory (ECF No. 60 ¶¶ 6, 8), for which Counter-Plaintiffs have sought extensive discovery. These allegations center on another unrelated transaction or occurrence—the incorporation and corporate governance of Pirate Monitor Ltd.—which only underscores that the Counter-Plaintiffs' claims should be tried separately from claims of Plaintiffs.

6

Plaintiffs' Mem. in Support of Motion to Sever                    3:20-cv-4423

- failing to reasonably implement their repeat infringer policy by not issuing copyright strikes against users who upload infringing videos that are identified by Content ID (ECF No. 99 at ¶¶ 91-93, 110);
- conditioning takedown procedures on the provision of additional information not required under the DMCA (*id.* at ¶ 90),
- financially benefitting from infringements they have the right and ability to control (*id.* at ¶ 95); and
- substantially influencing user behavior by using methods such as their Autoplay feature (*id.* at ¶ 97).

Plaintiffs and the class also allege that Counter-Plaintiffs have violated 17 U.S.C. § 1202 by intentionally removing or altering CMI from the videos uploaded to YouTube. (ECF No. 99 at ¶¶ 82-86, 143-52.)

These claims bear no resemblance to the Counter-Plaintiffs' claims. While the legal claims of Plaintiffs and the class require interpretation of federal copyright statutes and case law, the Counter-Plaintiffs' claims turn mainly on state-law contract and tort law—indeed, even Counter-Plaintiffs' federal claim under § 512(f) relies upon a common-law inquiry into material misrepresentation. Furthermore, Pirate Monitor LLC and Csupó have never been class members because they have not submitted successful takedown notices, and Pirate Monitor Ltd. is no longer a class member after dismissing its claims with prejudice. In addition to this lack of common legal questions, Plaintiffs' claims and Counter-Plaintiffs' claims are factually distinct: Whether Counter-Defendants tried to gain access to Content ID would not prove or disprove that any class member's copyrights were infringed; that Counter-Plaintiffs have failed to qualify for DMCA protection for the many reasons outlined above; or that Counter-Plaintiffs intentionally removed CMI. And even if Counter-Plaintiffs prevail on their claims, that would say nothing about how their repeat infringer policy operates, how they profit from infringing material on YouTube, or how they strip or fail to preserve CMI. Counter-Plaintiffs' claims against Csupó rely on a veil-piercing argument (ECF No. 60 ¶¶ 6, 8) which raises entirely separate issues of corporate law, including foreign law. Courts have granted severance in similar situations. *See, e.g.*, *Lam Research*, 2016 WL 1237831, at *2 (granting severance where joint proceeding would have required

7

Plaintiffs' Mem. in Support of Motion to Sever                                3:20-cv-4423

separate "dispositive motions, each raising unique factual and legal issues that will have to be analyzed separately"). This factor weighs heavily in favor of severance.

**Severance Will Facilitate Settlement and Judicial Economy**: This factor similarly weighs heavily in favor of severance because any potential settlement of either Plaintiffs' affirmative claims or Counter-Plaintiffs' claims would have zero bearing on settlement of the other. Again, Counter-Defendants are not part of the class, and the claims against them are legally distinct, with no factual overlap with Plaintiffs' claims. Requiring Plaintiffs to adjudicate their claims alongside the Counter-Plaintiffs' claims would thus complicate any attempt at settlement.

Severance would also advance judicial economy. Most notably, trial of the Counter-Plaintiffs' claims would have to be delayed significantly for a ruling on a motion for class certification—an issue having no bearing whatsoever on the validity of those claims. Maintaining the Plaintiffs' claims and Counter-Plaintiffs' claims as one action offers no benefits to offset this inefficiency because there is unlikely to be any overlap with evidence and witnesses between the two. As a result, trying the Counter-Plaintiffs' claims alongside Plaintiffs' claims only unnecessarily delays the resolution of all claims.

**Severing the Counter-Plaintiffs' Claims Will Avoid Prejudice**: Severing the Counter-Plaintiffs' claims will also avoid the significant prejudice that Plaintiffs and the class will suffer if their claims are tried alongside the Counter-Plaintiffs' claims. Counter-Defendants are not class members, and their alleged misconduct (which they deny) has no relevance to the class's claims. Litigating these claims alongside the claims of Plaintiffs and the class serves no purpose other than to unfairly influence the jury by introducing evidence concerning the alleged misconduct of entities that are not members of the class. That is the only conceivable reason why YouTube and Google have allegedly spent over $100,000 in attorneys' fees to date (growing each day) chasing their $20,000 in claimed actual damages. Severing the Counter-Plaintiffs' claims, however, will avoid this prejudice by ensuring that the jury renders a decision based on the merits of the *class's* claims, not on its evaluation or disapproval of the conduct of non-members of the class. *Cf. United States ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. 95-1231, 2007 WL 851823, at *3 (D.D.C. Mar. 14, 2007) (severing defendants' counterclaims under FRCP

42 because they were asserted against only one plaintiff and the other plaintiff might be prejudiced by having its co-plaintiff portrayed negatively).[6]

Counter-Plaintiffs, by contrast, will suffer no prejudice if their claims are severed because they can still pursue them. That alone can warrant severance. *See CJ Investment*, 2012 WL 547176, at *2 (granting severance where no "prejudice would result from granting the motion to sever"). This factor weighs heavily in favor of severance.

**The Counter-Plaintiffs' Claims Involve Different Evidence**: This factor weighs in favor of severance for the reasons discussed in the subsection about common questions of law or fact. The evidence establishing that Plaintiffs and the class own the copyrights will consist of copyright registrations and takedown notices that have nothing to do with Counter-Defendants. The class will further establish the Counter-Plaintiffs' unlawful conduct through testimony and documents about Counter-Plaintiffs' copyright enforcement practices, which have nothing to do with their claims against Counter-Defendants.

By contrast, Counter-Plaintiffs' Answer suggests that they intend to prove their claims by citing takedown notices submitted by Counter-Defendants or their agents related to Pirate Monitor Ltd.'s copyrights, by pointing to actions taken through YouTube accounts created by Counter-Defendants or their agents, by introducing testimony of YouTube employees who allegedly addressed the alleged misconduct, and by attempting to prove that Pirate Monitor Ltd. or Pirate Monitor LLC are alter egos of Csupó—none of which would be offered by Plaintiffs or the class in support of their claims, and none of which has any discernible bearing on any viable defenses to those claims. In similar situations, courts have granted severance to avoid mini-trials of different claims using different evidence. *See, e.g.*, *Lam Research*, 2016 WL 1237831, at *2 (granting severance where alternative would have created "scores of mini-trials involving different evidence"); *cf. Winnett v. Caterpillar Inc.*, No. 3:06-cv-00235, 2010 WL

---

[6] Moreover, just as Plaintiffs and the putative class should not be burdened with the costs and distractions of having their case conjoined with Counter-Plaintiffs' claims against the Counter-Defendants, the opposite is also true: the Counter-Defendants should not have to bear the costs and distractions of having the claims against them conjoined with the claims of Plaintiffs and the putative class.

9

Plaintiffs' Mem. in Support of Motion to Sever                                    3:20-cv-4423

424914, at *2-3 (M.D. Tenn. Jan. 28, 2010) (granting motion to sever counterclaims from underlying class action case under FRCP 42 because different evidence was required which "could overwhelm and confuse a jury").

*Complexity*: The Counter-Plaintiffs' claims necessarily involve evidence that is not run-of-the-mill. Counter-Plaintiffs seek to pierce the corporate veil of a foreign corporation (Pirate Monitor Ltd.) by alleging that Csupó has engaged in a corporate shell game for purposes of furthering the alleged scheme. (ECF No. 60 at ¶¶ 4, 6, 8.) The evidence Counter-Plaintiffs will need to support that attempt and to prove the alleged misconduct (which allegedly took place overseas) is often in Hungarian.

*Severance Will Prevent Juror Confusion*: Juror confusion is inevitable if the Counter-Plaintiffs' claims are not severed. Unless those claims are severed, the jury will be distracted by evidence of an alleged scheme by non-class members who have no connection to the class or the harm suffered by the class. The fact that two unrelated cases are being tried together by itself justifies severance.

*Severance Will Serve the Ends of Justice*: Finally, the ends of justice will clearly be served by severance here because the relevant factors weigh overwhelmingly in favor of severance.

## CONCLUSION

Allowing the Counter-Plaintiffs' claims to remain in this case will create a confusing sideshow for the jury and will serve no purpose other than to unfairly prejudice Plaintiffs and the class. The Counter-Plaintiffs' claims should be severed.

Dated: December 3, 2021           Respectfully submitted,

/s/ Steven M. Berezney
George A. Zelcs (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
Steven M. Berezney, CA Bar #329923
Carol O'Keefe (*pro hac vice*)
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600

10
Plaintiffs' Mem. in Support of Motion to Sever                    3:20-cv-4423

St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
Joanna Wright (*pro hac vice*)
Demetri Blaisdell (*pro hac vice forthcoming*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd., and Attorneys for Counter-Defendants Pirate Monitor Ltd. and Gábor Csupó*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC and AST PUBLISHING LTD., individually and on behalf of all others similarly situated; | |
| Plaintiffs, | CASE NO. 3:20-cv-4423-JD |
| vs. | **PROPOSED ORDER** |
| YOUTUBE, LLC; and GOOGLE LLC; | |
| Defendants. | |
| YOUTUBE, LLC and GOOGLE LLC; | |
| Counter-Plaintiffs, | |
| vs. | |
| PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC, | |
| Counter-Defendants. | |

Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Court hereby severs the claims raised by Counter-Plaintiffs YouTube, LLC and Google LLC against Counter-Defendants Pirate Monitor Ltd., Pirate Monitor LLC, and Gábor Csupó from the claims being pursued by Plaintiffs against Counter-Plaintiffs.

SO ORDERED

_____

Judge James Donato