DAVID H. KRAMER, SBN168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email:  bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Defendants. <br><br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Counterclaimants, <br><br> v. <br><br> PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ, <br><br> Counterclaim Defendants. | CASE NO.:  3:20-cv-04423-JD <br><br> **DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S OPPOSITION TO MOTION TO SEVER** <br><br> Date Noticed: February 3, 2022 <br> Time Noticed: 10:00 am <br> Courtroom: 11 <br> Judge:  Hon. James Donato |

1

# TABLE OF CONTENTS

2  TABLE OF AUTHORITIES .................................................................................................ii

3  ISSUE TO BE DECIDED....................................................................................................1

4  INTRODUCTION.................................................................................................................1

5  FACTUAL BACKGROUND ...............................................................................................2

6      A.   Plaintiffs' Claims..................................................................................2

7      B.   YouTube's Counterclaims..................................................................2

8      C.   Pirate Monitor's Discovery Demands and Obstruction .........................................4

9      D.   Case Schedule .........................................................................5

10 ARGUMENT .......................................................................................................................5

11     I.   The Claims and Counterclaims Similarly Address Factual Issues
12         Concerning YouTube's Restrictions on Access to Content ID...........................6

13     II.   Judicial Economy Is Promoted by Proceeding with the Counterclaims in the
        Same Action .........................................................................9

14     III.  It Would Be Prejudicial to Defendants to Sever the Counterclaims, and
15         Plaintiffs' Claims of Prejudice Are Speculative and Premature ...........................10

16 CONCLUSION ..................................................................................................................11

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*A&E Prods. Grp. L.P. v. Accessory Corp.*,
5
  2002 WL 1041321 (S.D.N.Y. May 23, 2002)...............................................................6

6

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*,
  2016 WL 10514773 (C.D. Cal. Nov. 3, 2016) ........................................................6, 11
7

*Ames v. City of Novato*,
8
  2016 WL 6024587 (N.D. Cal. Oct. 14, 2016) .............................................................10

9

*Broadcom Corp. v. Sony Corp.*,
  2016 WL 9108039 (C.D. Cal. Dec. 20, 2016) .....................................................9, 10, 11
10

11

*CSAA Ins. Exch. v. Broan-Nutone LLC*,
  2017 WL 3840261 (E.D. Cal. Sept. 1, 2017) ..............................................................10
12

*Eastman Chem. Co. v. AlphaPet Inc.*,
13
  2011 WL 7121180 (D. Del. Dec. 29, 2011) ................................................................11

14

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
  297 F.R.D. 64 (S.D.N.Y. 2013) ....................................................................................2
15

16

*Gutta v. Renaud*,
  2021 WL 533757 (N.D. Cal. Feb. 12, 2021) ................................................................7

17

*Herklotz v. Parkinson*,
18
  848 F.3d 894 (9th Cir. 2017) .........................................................................................6

19

*Jacques v. Hyatt Corp.*,
  2012 WL 3010969 (N.D. Cal. July 23, 2012) ...............................................................6
20

*Kihn v. Bill Graham Archives LLC*,
21
  2022 WL 18935 (9th Cir. Jan. 3, 2022) .....................................................................2, 8

22

*Lesnik v. Eisenmann SE*,
  2018 WL 10911942 (N.D. Cal. June 19, 2018) .............................................................6
23

24

*Lindora, LLC v. Isagenix Int'l, LLC*,
  198 F. Supp. 3d 1127 (S.D. Cal. 2016) .........................................................................5
25

*Moon v. Cty. of Orange*,
26
  2020 WL 4037173 (C.D. Cal. June 10, 2020)..............................................................10

27

*Nguyen v. CTS Elecs. Mfg. Sols., Inc.*,
  301 F.R.D. 337 (N.D. Cal. 2014) ..................................................................................7
28

*Ray v. Cuccinelli*,
   2020 WL 7353697 (N.D. Cal. Dec. 15, 2020) ..............................................................6

*SEC v. Leslie*,
   2010 WL 2991038 (N.D. Cal. July 29, 2010) ..............................................................6

*Synopsys, Inc. v. Magma Design Automation*,
   2006 WL 1452803 (D. Del. May 25, 2006) ................................................................11

**Statutes**

17 U.S.C. § 512(f) ...................................................................................................................3

**Other Authorities**

16-C J. Phillips, et al., *Rutter Group Practice Guide: Fed. Civ. Proc. Before Trial*
   (The Rutter Group 2021)..........................................................................................9

9A Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2387 (3d
   ed.)..............................................................................................................................5

Fed. R. Civ. P. 21 ............................................................................................................1, 5, 6

**ISSUE TO BE DECIDED**

Under Federal Rule of Civil Procedure 21, whether Plaintiffs have met their burden of proof that severance of Defendants' counterclaims—which raise the question of appropriate access to Content ID just as Plaintiffs' claims do—is warranted or is instead inefficient, inequitable to Defendants, and premature at this stage.

**INTRODUCTION**

Plaintiffs and their counsel handpicked Pirate Monitor Ltd. ("Pirate Monitor") to lead this putative class action, claiming Pirate Monitor had copyright infringement claims against Defendants Google and YouTube ("YouTube") that were representative of those of copyright holders the world over.  They held up Pirate Monitor as a perfect example of a copyright holder wrongly denied access to YouTube's Content ID system, a proprietary technology that allows eligible users to automatically claim and/or block videos incorporating their content that others upload to YouTube.  But Pirate Monitor has instead proven to be a perfect example of why YouTube does not—and cannot—offer Content ID to everyone.

YouTube established that Pirate Monitor engaged in a sweeping fraud in an effort to gain Content ID access, using foreign operatives to flood YouTube with thousands of videos, then sending DMCA takedown notices for those same videos, swearing, falsely, that they were infringing.  Pirate Monitor then also admitted that it falsely claimed to own at least one of the three copyrighted works it put at issue in this case.  Giving Pirate Monitor the power to control and block videos based on bogus copyright claims like those it asserted here could have visited significant hardship on countless YouTube users.

When Plaintiffs could no longer deny Pirate Monitor's misconduct, Pirate Monitor dismissed its own claims with prejudice.  But YouTube's counterclaims based on Pirate Monitor's fraud remain.  Now, after Pirate Monitor has litigated the counterclaims aggressively for fifteen months, Plaintiffs ask the Court to sever them from the case.  They ask not because of any real risk of unfair prejudice, but because Pirate Monitor's continued involvement highlights the folly of their demand for universal Content ID access, and the impropriety of class

1    certification.  Under the relevant factors that take into account the similarity of the claims,

2    judicial economy, convenience, and fairness, the Motion should be denied.

3                                      **FACTUAL BACKGROUND**

4        **A.    Plaintiffs' Claims**

5        Pirate Monitor filed this copyright infringement case together with Maria Schneider in

6    July 2020.  Dkt. No. 1 ("Complaint" or "Compl.").  A principal grievance was that YouTube

7    supposedly has implemented a "two-tiered system" of copyright enforcement for its service.  *See*

8    *id.* ¶¶ 1-2, 8-11, 13, 57-58.  According to Plaintiffs, YouTube afforded major studios and record

9    labels access to its Content ID tool, while denying Pirate Monitor and Schneider (and other

10   "ordinary creators") use of the same.  *See id.* ¶ 1.  That charge was confounding given that

11   Schneider actually did have access to Content ID via her publishing agent, who granted

12   YouTube a license to all of Schneider's musical works and used Content ID for years on her

13   behalf.  Dkt. No. 34 at 2.  Nevertheless, Plaintiffs averred that they were forced to rely on less

14   robust copyright management processes or to send YouTube the takedown notices prescribed by

15   the Digital Millennium Copyright Act ("DMCA").  Compl. ¶ 9; *see also id.* ¶¶ 63, 72.

16       Plaintiffs styled their case as a putative class action on behalf of copyright holders

17   everywhere, despite the myriad individualized issues inherent in copyright infringement claims

18   that preclude class certification.  *See, e.g.*, *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935,

19   at *2-3 (9th Cir. Jan. 3, 2022) (reversing certification of copyright infringement class because

20   "individual issues of license and consent would predominate for the absent class members");

21   *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65 (S.D.N.Y. 2013)

22   ("copyright claims are poor candidates for class-action treatment").  Pirate Monitor and

23   Schneider requested an injunction that would require YouTube to "offer to all persons the

24   technological measures available now, including Content ID."  Compl. ¶ 150.

25       **B.    YouTube's Counterclaims**

26       In their responsive pleading, Defendants explained why YouTube limits access to

27   Content ID to parties that can be trusted to use it properly.  Content ID empowers users to

28   automatically remove content from YouTube or block it from appearing in the first place.  Dkt.

No. 34 ¶ 15 (counterclaims).  Accordingly, it has the potential to be used to automatically censor videos that others have every right to post and share through YouTube.  Parties can also misuse Content ID to claim ownership rights in others' content, and thereby divert to themselves revenue that rightly belongs to others.  *Id.*  Because of the potential for abuse, YouTube seeks to ensure that those using Content ID will do so responsibly, and will not cause harm to YouTube, its users, or to other copyright owners.  *Id.* ¶ 16 (counterclaims).

Defendants' responsive pleading also asserted counterclaims against Pirate Monitor for engineering a wide-ranging fraud intended to gain access to Content ID.  *See id.* ¶ 1 (counterclaims).  To fabricate a supposed need for the tool, Pirate Monitor hired agents to upload roughly two thousand videos to YouTube, representing in the process that the uploads were authorized.  *See id.* ¶¶ 1, 22 (counterclaims).  But Pirate Monitor then promptly sent DMCA takedown requests for those same videos, swearing under oath that the videos were infringing. *See id.* ¶¶ 28, 64-65 (counterclaims).  As YouTube showed following an extensive investigation, Pirate Monitor lied—either when claiming their uploads were authorized or when they sent takedown notices for them.  *See id.* ¶¶ 1, 29-31 (counterclaims).  YouTube asserted claims for breach of contract and fraud or, alternatively, for violating § 512(f) of the DMCA, which prohibits knowingly false takedown notices.  *See id.* ¶¶ 37-66 (counterclaims).  YouTube sought compensatory and punitive damages, as well as injunctive relief against Pirate Monitor to prevent such behavior in the future.  *See id.* at 34 (counterclaims).

In response, Pirate Monitor first filed a make-work motion to dismiss, claiming that Defendants' allegations were not sufficiently specific for them to understand.  Dkt. No. 44. After the motion was fully briefed and heard, Defendants amended to provide substantial additional detail about the misconduct by Pirate Monitor and its sole owner Gábor Csupó, including damning evidence of their role in the fraudulent scheme.  Dkt. No. 60.  Pirate Monitor then filed an answer with defenses that mirrored the Plaintiffs' affirmative claims in the case. Specifically, Pirate Monitor and Csupó asserted "unclean hands" and "in pari delicto" defenses to the counterclaims, alleging that "YouTube knowingly encourages, permits, and assists [infringement], including by not offering Content ID to everyone with valid copyrights."  *See*

1   Dkt. No. 68 at 13-14; Dkt. No. 69 at 13-14.  That same claim is the centerpiece of Plaintiffs'

2   case.  *See* Dkt. No. 99 at ¶¶ 2-3, 9 (amended complaint alleging that Defendants "permit and

3   facilitate [ ] infringement" by denying Content ID to certain copyright holders).

4          In the midst of this activity, Pirate Monitor admitted that it did not even own one of the

5   three copyrighted works it had asserted in the case, but refused to explain how it came to make

6   its false allegation of ownership.  Following this concession and in light of its obvious

7   malfeasance, Pirate Monitor dismissed its affirmative claims with prejudice in March 2021.  Dkt.

8   No. 66.  Its dismissal noted that YouTube's counterclaims remained unaffected.  *See id.*

9          **C.       Pirate Monitor's Discovery Demands and Obstruction**

10         Pirate Monitor has waged an exhaustive discovery campaign in this case for over a year.

11  To date, its joint document requests with Schneider number in the hundreds, inclusive of

12  subparts.  Declaration of Maura L. Rees ("Rees Decl.") ¶ 2.  Even after the dismissal of Pirate

13  Monitor's affirmative claims, Pirate Monitor and Schneider have jointly demanded, *inter alia,*

14  documents that show "every part of the Content ID System's user experience," standard and

15  template communications between YouTube and Content ID participants, all documents

16  concerning YouTube's accommodation or failure to accommodate any "Digital Fingerprinting

17  Technology" other than Content ID, all documents concerning YouTube's Recommended

18  Videos, and all documents concerning YouTube Search.  *Id.* ¶ 2.  Pirate Monitor's continuing

19  presence in the case has also been specifically cited as justification for certain discovery.  *Id.* ¶ 3

20  (Pirate Monitor and Plaintiffs claimed "dual relevance" of discovery on YouTube's copyright

21  protection efforts which "bears on the DMCA Safe Harbors defense and to Defendants' claimed

22  damages sought through the Counterclaims").[1]

23

24

_____

25  [1] A host of Plaintiffs' discovery requests encompass information about Pirate Monitor that would
    be germane to the counterclaims including, but not limited to, requests for "Documents sufficient
26  to show . . .  information Concerning each Person that sought but was not granted access to the
    Content ID System" (RFP No. 16), "All Documents Concerning determinations of access to the
27  Content ID System" (RFP No. 17), and "All Documents Concerning Takedown Notices You
    have received Concerning videos posted to Your platform" (RFP No. 27).  Rees Decl. ¶ 2.
28

1    Discovery has not been a two-way street.  Pirate Monitor has obstructed YouTube's

2    efforts to obtain documents key to its counterclaims, including documents about Pirate Monitor's

3    requests to gain access to YouTube's copyright management systems, its use of YouTube, and its

4    transmission of takedown notices.  Indeed, Pirate Monitor's failure to comply with its discovery

5    obligations was previously the subject of a letter brief before the Court.  *See* Dkt. No. 74.

6    YouTube has met and conferred with Pirate Monitor as directed by the Court (Dkt. No. 82), but

7    Pirate Monitor has refused to make any compromises, and maintains that it will not produce any

8    further documents to YouTube.[2]

9         **D.    Case Schedule**

10        The parties undertook substantial efforts to agree on a stipulated case schedule.  But

11   Plaintiffs never suggested they believed that Defendants' counterclaims should be severed or

12   tried on a different schedule.  Rees Decl. ¶ 4.  Nor did Plaintiffs make that suggestion in the

13   separate scheduling proposal they submitted to the Court.  *See* Dkt. No. 94.

14        On November 16, 2021, the Court set a unified schedule for both Plaintiffs' and

15   Defendants' claims.  Fact discovery on all claims remains open for another six months.  *See* Dkt.

16   No. 98.  Plaintiffs' deadline to move for class certification is in September 2022.  *Id.*  Trial is not

17   set until August 2023.  *Id.*

18                            **ARGUMENT**

19        Plaintiffs "bear[] the burden of proving that separation of claims is necessary."  *See*

20   *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1149 (S.D. Cal. 2016).  The

21   mechanism for separating a case into separate actions, *i.e.*, severance is provided by Federal Rule

22   of Civil Procedure 21.  9A Charles Allen Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ.

---

[2] In their Motion to Sever, Plaintiffs raise purported concerns about the complexity and burden of continued litigation with Pirate Monitor because of the need for foreign-language documents and evidence "half a world away."  Mot. at 6, 9-10 & n.6.  But that protest rings hollow not only because Plaintiffs chose to name Pirate Monitor as their putative class representative in the first place, but also because Plaintiffs' recent amended complaint added AST, a Russian publishing house, asserting foreign copyrights in foreign language audio books.  Dkt. No. 99 ¶¶ 75-76.  In any event, the architect of Pirate Monitor's misconduct, Csupó, is here in California.  Dkt. No. 69 ¶ 6.  It has been his obstruction and Pirate Monitor's, rather than some geographic or language barrier, that has made discovery difficult.

DEFENDANTS' AND COUNTERCLAIMANTS'        -5-        CASE NO. 3:20-CV-04423-JD
OPPOSITION TO MOTION TO SEVER

§ 2387 (3d ed.) ("the [separate trial] procedure authorized by Rule 42(b) should be distinguished from severance under Rule 21" because "severed claims become entirely independent actions" with separate judgments). Severing the counterclaims is a drastic remedy that would cause significant disruption to the progress of this case. It would subject Defendants' claims—filed fifteen months ago—to an entirely separate schedule, separate trial, separate judgment, and separate appeal. *See Herklotz v. Parkinson*, 848 F.3d 894, 898 (9th Cir. 2017) ("When a claim is severed, it becomes an entirely new and independent case."). Given the practical impacts of severance, courts treat it as a "procedural device to be employed only in exceptional circumstances." *A&E Prods. Grp. L.P. v. Accessory Corp.*, 2002 WL 1041321, at *2 (S.D.N.Y. May 23, 2002); *see also Ray v. Cuccinelli*, 2020 WL 7353697, at *1 (N.D. Cal. Dec. 15, 2020) ("impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties"). Concerns about potential jury confusion and prejudice at trial do not provide a good basis to sever when trial remains over 18 months away; those concerns can be better addressed upon the advent of trial. *See, e.g., Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, 2016 WL 10514773, at *1 (C.D. Cal. Nov. 3, 2016) (arguments about "'unfairness, prejudice, and jury confusion'" were "premature").

"The application of Rule 21 involves considerations of convenience and fairness." *SEC v. Leslie*, 2010 WL 2991038, at *4 (N.D. Cal. July 29, 2010). In deciding whether to sever a claim under Rule 21, a court considers (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *See Lesnik v. Eisenmann SE*, 2018 WL 10911942, at *1-2 (N.D. Cal. June 19, 2018).

## I. The Claims and Counterclaims Similarly Address Factual Issues Concerning YouTube's Restrictions on Access to Content ID

The first two factors relevant to severance concern the similarity of the claims: (i) whether they arise out of the same transaction or occurrence; and (ii) whether they share a

1   common issue of law or fact.  The "same transaction or occurrence" test focuses on whether

2   there are "related activities" and "similarity in the factual background" of the claims.  *Jacques v.*

3   *Hyatt Corp.*, 2012 WL 3010969 at *3 (N.D. Cal. July 23, 2012).  The threshold for finding

4   "common questions of law or fact" in the context of a severance motion is "very low."  *Gutta v.*

5   *Renaud*, 2021 WL 533757, at *6 (N.D. Cal. Feb. 12, 2021) ("test is met if any question of law or

6   fact common to all plaintiffs will arise in the action"); *see also Nguyen v. CTS Elecs. Mfg. Sols.,*

7   *Inc.*, 301 F.R.D. 337, 341 (N.D. Cal. 2014) ("The common question may be one of fact or of law

8   and need not be the most important or predominant issue in the litigation.").  That threshold is

9   readily satisfied here.

10      As an initial matter, Pirate Monitor has asserted affirmative defenses to YouTube's

11   counterclaims that are indistinguishable from the claims that are at the core of Plaintiffs'

12   affirmative case.  Both include inflammatory charges of copyright infringement grounded in

13   YouTube's policy of limiting access to Content ID.  *Compare* Dkt. No. 68 at 13-14 (affirmative

14   defenses to counterclaims); Dkt. No. 69 at 13-14 (same), *with* Dkt. No. 99 ¶¶ 9-15 (amended

15   complaint).  Given that obvious overlap, the analysis need go no further.  Plaintiffs' assertion

16   that their affirmative claims and YouTube's counterclaims "have nothing to do" with each other

17   is simply incorrect.  Dkt. No. 100 at 1.

18      The affirmative defenses aside, the issue of YouTube's Content ID access restrictions

19   will come directly to the fore in both Plaintiffs' case and YouTube's counterclaims.  Plaintiffs

20   allege (notwithstanding Schneider's own access) that "[t]he superior protections of the Content

21   ID system are completely denied to Plaintiffs and the Class no matter how many times their

22   copyright works are infringed on the YouTube platform."  Dkt. No. 99 ¶ 11; *see also, e.g., id.* ¶ 3

23   ("[Defendants] have determined" that "unlike YouTube's preferred Content ID partners,"

24   Plaintiffs "lack the resources and leverage necessary to" use Content ID).  Plaintiffs assert that

25   YouTube limits access to Content ID for the purpose of enabling "copyright piracy."  *Id.* ¶ 41.

26   Plaintiffs even rely on Content ID access as a basis for the "typicality" aspect of their class

27   allegations, averring: "Plaintiffs' claims are also typical in that Plaintiffs . . . have not been

28   provided access to Content ID."  *Id.* ¶ 107.

1    YouTube's counterclaims explain that Plaintiffs' theories about Content ID access are not

2    grounded in reality.  Nothing about Content ID is in any way associated with encouraging

3    "piracy"—to the contrary, YouTube invested well over $100 million to develop Content ID as

4    part of its extensive efforts to help content creators protect their copyrights, going far beyond

5    what the law requires.  Dkt. No. 60 ¶¶ 16-18.  The system gives copyright holders the ability to

6    make sweeping, automated assertions of copyright claims over content posted by others. But

7    because of the potential for abuse and fraud, "YouTube limits access to [Content ID], seeking to

8    ensure that those who use [it] will do so responsibly, and will not cause harm to YouTube, its

9    users, or to other copyright owners."  *Id.* ¶ 20.

10    It is hard to imagine a better embodiment of YouTube's concerns about Content ID

11    misuse than Pirate Monitor.  Its baseless assertion of copyright ownership and its fraudulent

12    infringement claims would, if made through Content ID's automated machinery, wreak havoc on

13    other users and YouTube itself.  As a result, the presentation of YouTube's counterclaims against

14    Pirate Monitor will confirm the need for Content ID access restrictions and refute Plaintiffs'

15    charge that the restrictions are intended to enable "copyright piracy."

16    To the extent Plaintiffs suggest that the counterclaims are irrelevant to any aspect of their

17    claims because the Pirate Monitor counter-defendants are now "non-Class members," that is also

18    incorrect.  Pirate Monitor's dismissal of its copyright claims does not sweep away its history as

19    the chosen representative of the putative class, nor its misconduct towards YouTube.  Proof of

20    YouTube's counterclaims will highlight issues such as the former lead plaintiff's lack of

21    copyright ownership, its meritless charges of infringement, its unfitness for Content ID access,

22    and its unclean hands.  That will concretely illustrate just some of the individualized issues that

23    bar certification of a class here.  And as the Ninth Circuit held just this week, attempting to

24    redefine a putative class to exclude invalid claims with inconvenient facts is improper.  *See Kihn*,

25    2022 WL 18935, at *2 (reversing class certification in copyright case in light of individualized

26    issues of license and consent).  In other words, Pirate Monitor's actions are not only the focus of

27    YouTube's counterclaims, but also bear directly on the impropriety of class certification.  That

28    too militates against severance.

**II.      Judicial Economy Is Promoted by Proceeding with the Counterclaims in the
Same Action**

The Motion seeking to sever YouTube's counterclaims comes fifteen months after they
were filed, and more than eight months after Pirate Monitor conceded its affirmative claims were
without merit and dismissed them with prejudice.  Plaintiffs offer no explanation for their
extended delay in bringing this motion. *Cf.* 16-C J. Phillips, et al., *Rutter Group Practice Guide:
Fed. Civ. Proc. Before Trial* (The Rutter Group 2021) ("A party seeking severance should
request such relief as soon as the need becomes apparent.  Delay may be a factor affecting the
court's exercise of discretion.").  Each reason offered by Plaintiffs for seeking severance was
apparent long ago.

Plaintiffs' delay has resulted in the parties and the Court expending significant resources
on, among other things, Plaintiffs' unsuccessful motion to dismiss challenging the counterclaims,
case management, devising an appropriate pretrial schedule, and addressing discovery disputes.
Severance now would undo the progress the parties have made and require additional
involvement of the Court.  *See Broadcom Corp. v. Sony Corp.*, 2016 WL 9108039, at *4 (C.D.
Cal. Dec. 20, 2016) (denying severance where it would cause court to "have to spend twice the
amount of judicial resources" and would "hinder[] judicial economy"; "[s]evering the case would
result in two discovery deadlines, two motions calendars," two separate paths for discovery
disputes, two sets of summary judgment briefing, and "two trials").

By contrast, keeping the cases together would promote judicial efficiency.  It would
allow the parties to benefit from consolidated discovery on, for example, YouTube's Content ID
tool, YouTube's policies for accessing the tool, and the reasons for those policies.  Keeping the
cases together would also avoid courts having to make multiple rulings on similar issues.  As
noted, Pirate Monitor has asserted defenses to the counterclaims (*e.g.*, unclean hands and in pari
delicto) that are identical to the affirmative claims it once asserted, and that Plaintiffs continue to
assert.  YouTube should not have to litigate those key issues twice, nor should two different
juries be tasked to separately assess them if they reach trial.

1    **III.    It Would Be Prejudicial to Defendants to Sever the Counterclaims, and**

2          **Plaintiffs' Claims of Prejudice Are Speculative and Premature**

3          Because "[f]airness is a critical consideration in determining whether severance is

4    appropriate," the Court must consider "whether any party would suffer prejudice." *CSAA Ins.*

5    *Exch. v. Broan-Nutone LLC*, 2017 WL 3840261, at *2 (E.D. Cal. Sept. 1, 2017) (denying motion

6    to sever in part because the moving party's "arguments regarding prejudice [were]

7    unconvincing" and the non-moving party "ha[d] presented genuine concerns of prejudice should

8    severance occur"); *see also id*. at *4.  Severance of the counterclaims would be prejudicial to

9    Defendants, who promptly asserted their counterclaims at the outset of the case.

10         Severance would likely delay resolution of Defendants' counterclaims.  *See Broadcom*,

11   2016 WL 9108039, at *4 ("Logic dictates that holding two trials, as opposed to one, will

12   inevitably cause delay in resolution of the parties' disputes.").  Severance would also require

13   Defendants to manage the massive discovery being sought by Plaintiffs and Pirate Monitor on

14   two separate tracks.  If Defendants' counterclaims were severed, the risks of ubiquitous Content

15   ID access would be the subject of discovery in this action, and a separate action on Defendants'

16   counterclaims.  Defendants would have to make duplicative document productions, respond to

17   duplicative sets of discovery, and offer witnesses up for multiple rounds of depositions on the

18   same topics.  That would be prejudicial to Defendants, who negotiated for a single pretrial

19   schedule, including a single document production process, one fact discovery deadline, and one

20   trial date to avoid disruptions to their business.  *See Ames v. City of Novato*, 2016 WL 6024587,

21   at *3 (N.D. Cal. Oct. 14, 2016) (denying severance in part because "separate trials would require

22   duplicative evidence and witness testimony").

23         By contrast, Plaintiffs' claim of prejudice from juror confusion is speculative and

24   premature.  After the completion of pretrial proceedings, discovery, and dispositive motions, the

25   Court will have ample opportunity to consider any motions that Plaintiffs still believe are

26   necessary, including a renewed request for severance.  On the other hand, if summary judgment

27   eliminates the need for Plaintiffs' claims or the counterclaims to be tried, then any apprehension

28   about juror confusion will be illusory.  *See Broadcom Corp.*, 2016 WL 9108039, at *4 ("severing

the case because of jury confusion is premature at this stage in the litigation"); *Allstate Ins. Co.*, 2016 WL 10514773, at \*1; *Moon v. Cty. of Orange*, 2020 WL 4037173, at \*2 (C.D. Cal. June 10, 2020) (holding that motion to sever was "premature" because "the pleadings are not yet settled"); *Eastman Chem. Co. v. AlphaPet Inc.*, 2011 WL 7121180, at \*8 (D. Del. Dec. 29, 2011) (noting that court has frequently "left open the question of how the actions will ultimately be tried"); *Synopsys, Inc. v. Magma Design Automation*, 2006 WL 1452803, at \*4 (D. Del. May 25, 2006) (denying Rule 42(b) bifurcation of antitrust counterclaims from infringement claims and noting "the court will not pre-judge the yet-unnamed jurors by assuming they are unable to digest the facts and law in this case").

Because Defendants will be prejudiced if the counterclaims were to be severed, and because Plaintiffs' claims of prejudice are premature and speculative, the Court should deny Plaintiffs' Motion to Sever, or at least delay any ruling until after further briefing at the time the contours of a trial become more visible.

## CONCLUSION

Plaintiffs chose Pirate Monitor as their standard bearer at the start of this case. They understandably now wish to distance themselves as much as possible. But the overlap between Plaintiffs' affirmative claims, YouTube's counterclaims, and Pirate Monitor's defenses is plain, and no legitimate interests would be served by severing the counterclaims at this point. For the foregoing reasons, the Court should deny the Motion.

Respectfully submitted,

Dated: January 6, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ Maura L. Rees*
    Maura L. Rees

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC