George A. Zelcs (*pro hac vice*)
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
  rewing@koreintillery.com
Ryan Z. Cortazar (*pro hac vice*)
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Michael E. Klenov, CA Bar #277028
  mklenov@koreintillery.com
Carol O'Keefe (*pro hac vice*)
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899


Philip C. Korologos (*pro hac vice*)
  pkorologos@bsfllp.com
Joanna C. Wright (*pro hac vice*)
  jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice*)
  dblaisdell@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,
Uniglobe Entertainment, LLC, and
AST Publishing Ltd. and Counter-Defendants Pirate
Monitor Ltd. and Gábor Csupó*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;<br><br>　　　　　Plaintiff,<br>　vs.<br>YOUTUBE, LLC; and GOOGLE LLC;<br>　　　　　Defendants.<br><hr>YOUTUBE, LLC and GOOGLE LLC;<br>　　　　　Counter-Plaintiffs,<br>　vs.<br>GÁBOR CSUPÓ, PIRATE MONITOR LTD., LLC, and PIRATE MONITOR LLC,<br>　　　　　Counter-Defendants. | CASE NO. 3:20-cv-4423-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SEVER**<br><br>Judge: Hon. James Donato |

**ISSUE TO BE DECIDED**

Whether under Federal Rule of Civil Procedure 21—which permits the severance of a claim that does not arise out of the same transaction or occurrence as the main claim; where common questions of law or fact do not exist; when settlement would not be facilitated; where prejudice and juror confusion would otherwise ensue; or where different evidence would be introduced—the Court should sever Defendants/Counter-Plaintiffs' (hereafter collectively "YouTube") breach of contract and fraud claims against Counter-Defendants (hereafter collectively "Pirate Monitor") whose claims in the original action have been dismissed with prejudice.

**INTRODUCTION AND RELEVANT FACTS**

Severance is granted to promote judicial economy and avoid prejudice. Both ends would be served here. The litigation of YouTube's $20,000 counterclaims has already resulted in significant

waste and prejudice to the Parties. Indeed, YouTube alone has spent more than $100,000 in attorney's fees litigating these counterclaims. That exponential disparity between YouTube's alleged damages and its attorney's fees exemplifies why $20,000 claims should not be taken to trial and why settlement is the only rational path to resolve these claims. Yet YouTube's brief—alongside its refusal to settle the counterclaims despite Pirate Monitor's attempts—reveals an uneconomical desire to spend the Court's and the Parties' time and resources pursuing relatively paltry claims against Pirate Monitor. Notably, although Plaintiffs' opening brief emphasized that severance will facilitate settlement, a factor that "weighs heavily in favor of severance," Dkt. 100 at 8, YouTube's brief fails to address settlement at all, never rebutting the fact that severance will result in a prompt settlement. The sole justification for this waste is YouTube's improper desire to distract from the claims brought by Plaintiffs Maria Schneider, Uniglobe Entertainment, and AST Publishing in their pursuit of class-wide relief. But inefficient gamesmanship is not a valid basis for denial of Plaintiffs' severance motion, particularly because severance would yield substantial benefits in judicial economy and remove potential prejudice to Plaintiffs and the putative class as well as Pirate Monitor.

Upon severance, YouTube will no longer be motivated to pursue a $20,000 claim and, absent the perceived advantage of trying these claims with the class claims, will be immediately motivated to settle. If the cases are not decoupled, however, YouTube will continue to press the claims against Pirate Monitor for the simple reason that YouTube believes these claims sully the class and will unduly influence the decision-maker—inappropriate reasons to contest severance. Dkt. 106 at 6–7. Furthermore, the discovery inefficiencies that YouTube contends will result from severance, *id.* at 10, are illusory: Pirate Monitor has substantially produced everything that it has agreed to produce, and any remaining discovery can be coordinated with the class claims to prevent duplication.

Severance would also avoid prejudice to Plaintiffs and the putative class. The Court should not permit YouTube's arguments about the unrelated alleged conduct of non-class member Pirate Monitor to infect the class certification inquiry as it pertains to Plaintiffs Maria Schneider, Uniglobe, and AST. By contrast, granting Plaintiffs' motion to sever imposes no prejudice on YouTube: YouTube is free to put forth whatever relevant arguments and whatever relevant evidence it wishes

when litigating class certification and the merits. Nor has YouTube identified any reason why it needs active counterclaims against Pirate Monitor in the class case to make those arguments or present that evidence.

Because severance would benefit the Court and would avoid undue prejudice for Plaintiffs and the putative class, the Court should grant Plaintiffs' motion to sever.

## ARGUMENT

The Parties largely agree on the relevant factors for deciding a motion to sever. *Compare* Dkt. 100 at 4–5, *with* Dkt. 106 at 6. While the factors are numerous, they ultimately boil down to two essential inquiries: (1) whether severance will further judicial economy; and (2) whether severance is the fairer option for the parties.

### I. Severance Furthers Judicial Economy.

The factors reflecting judicial economy are (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether different evidence is required for the separate claims; and, of course, (4) whether severance would facilitate settlement or judicial economy. *See* Dkt. 100 at 4–5 (citing *Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2017 WL 2081236, at *6 (N.D. Cal. May 15, 2017), and *Lam Research Corp. v. Flamm*, No. 15-cv-01277-BLF, 2016 WL 1237831, at *2 (N.D. Cal. Mar. 30, 2016)). Courts deciding severance motions place extra emphasis on settlement as an important factor related to judicial economy because settlement conserves more resources than any other judicial pathway. *See Hernandez*, 2017 WL 2081236, at *10 (denying severance would "delay resolution … [and] reduce the incentives for prompt settlement"). That is doubly true here, where the counterclaims amount to just $20,000, *see* Dkt. 100-1 at 3, a figure already dramatically overshadowed by YouTube's attorney's fees and costs, *see id.* at 4.

The greatest boon to judicial economy would be settlement of YouTube's $20,000 counterclaims. Keeping these counterclaims as part of the class case prevents settlement. So long as YouTube views its counterclaims against Pirate Monitor as a guilt-by-association weapon to be wielded against Plaintiffs and the putative class, YouTube will continue to drag its feet on providing

4

useful estimates of its damages and fees, effectively crippling all settlement attempts. A swift settlement facilitated by severance would avoid the Parties filing (and the Court deciding) competing motions for summary judgment on three separate counterclaims and three separate affirmative defenses asserted by Pirate Monitor LLC and counterclaim co-defendant Gábor Csupó. Settlement would also avoid incurring the greater expenses of trial and the additional judicial resources that trial would consume. While YouTube's brief acknowledges that "whether settlement of the claims or judicial economy would be facilitated" Dkt. 106 at 6, is relevant, it nowhere disputes that severance would, in fact, result in settlement.

YouTube also ignores the question of whether the claims arise out of the same transaction or occurrence, but this factor aids courts in estimating the efficiency gains of severance.[1] When a claim "arises out of a different transaction or occurrence than the main claim[,] [t]his means that little will be gained in terms of litigation efficiency." *See* Wright & Miller, Fed. Practice & Proc. § 3706. Here, Pirate Monitor's alleged 2019 transactions in the counterclaims have no bearing on the judicial determinations necessary to adjudicate the class claims. The two separate sets of claims require independent research and determinations for which severance will have no or little effect. The Counterclaims allege that Pirate Monitor engaged in "a scheme through which they hoped *to gain access to*" Content ID by uploading videos and submitting takedown notices against them. Dkt. 60 ¶¶ 39–42. What Pirate Monitor is alleged to have done to gain access to Content ID has no bearing on YouTube's stated concerns that copyright-holders will misrepresent ownership of copyrights *in their active use of* Content ID that purportedly justifies YouTube's access restrictions. *See* Dkt. 106 at 3 (contending that parties could "misuse Content ID to claim ownership rights in others' content"); *id.* at 7–8. The claims and counterclaims depend on different areas of substantive law (copyright infringement vs. fraud) with different elements of proof. YouTube overstates the overlap of factual

---

[1] YouTube's only case addressing the "same transaction or occurrence" simply shows that where a first personal injury claim is a but-for cause of the second, it arises out of the same transaction or occurrence. *See Jacques v. Hyatt Corp.*, No. 11-CV-5364 (WHA), 2012 WL 3010969, at *3 (N.D. Cal. July 23, 2012).

1 issues common to the Plaintiffs' claims and their counterclaims regarding YouTube's restriction of
2 access to Content ID.

3 YouTube further argues that the counterclaims against Pirate Monitor are emblematic of
4 "individualized issues that bar certification," Dkt. 106 at 8, citing *Kihn v. Bill Graham Archives LLC*, No.
5 20-17397, 2022 WL 18935 (9th Cir. Jan. 3, 2022). But this case bears no resemblance to *Kihn*, which
6 involved defining a fail-safe class by "tailor[ing] the classes to the merits of [the plaintiff's] individual
7 claims." *Id.* at *2. Here, the putative class will be identified through neutral tools such as existing
8 takedown notices and Content ID. Successful takedown notices represent identifications of
9 infringement that YouTube acted upon. They can therefore be used to identify class members and the
10 copyrights that have been infringed on YouTube, with notice to YouTube. Content ID can then be
11 used to identify other videos that infringe those works and to avoid potential individualized issues
12 such as fair use. Defining the class in this litigation will be independent of the individual class
13 representatives' claims and, instead, based on YouTube's determinations and actions, rendering *Kihn*
14 inapposite. Nonetheless, YouTube remains free to make this same argument at class certification
15 whether its counterclaims against Pirate Monitor are part of the class case or not, and it nowhere
16 explains why this argument is any different or somehow precluded by severance. Nor has YouTube
17 anywhere explained how perceived advantages gained in a Rule 23 motion have *anything* to do with the
18 considerations of judicial efficiency and prejudice that drives the decision on this motion.

19 Finally, in the unlikely event that the severed case against Pirate Monitor does not settle, there
20 is little risk of discovery inefficiencies because Pirate Monitor has already substantially produced
21 everything it has agreed to produce, and YouTube has already produced numerous documents
22 regarding the counterclaims. Any speculative future inefficiencies would be better addressed by
23 coordinating discovery between the two cases rather than maintaining the claims in a single case
24 because discovery "efficiencies can be preserved even after severance" by coordinating discovery. *See*
25 *Renati v. Wal-Mart Stores, Inc.*, No. 19-CV-02525-CRB, 2019 WL 5536206, at *6 (N.D. Cal. Oct. 25,
26 2019) (internal quotation mark omitted); Manual for Complex Litigation, Fourth § 11.455 (discussing
27 pretrial coordination). Because Pirate Monitor shares the same counsel as the class Plaintiffs,
28

coordination would be simple and achieve identical efficiencies as maintaining the claims and counterclaims in the same action, while avoiding the gross inefficiencies that arise in the absence of settlement.

## II.   Severance Provides the Fairest Path Forward

The fairness factors examine (1) whether severance would avoid prejudice; (2) whether the jury may be confused absent severance; the related question (3) whether the factual proof and legal theories are complex; and (4) whether severance serves the ends of justice and furthers the prompt, efficient disposition of the litigation. *See* Dkt. 100 at 4–5 (citing *Hernandez*, 2017 WL 2081236, at *6 and *Lam Research*, 2016 WL 1237831, at *2).

Each of the fairness factors favor severing YouTube's counterclaims. Most importantly, severance would avoid prejudice to Plaintiffs and the putative class, and would not prejudice YouTube. As Plaintiffs argued in their opening brief, they suffer prejudice by having their claims adjudicated alongside the counterclaims because Pirate Monitor's alleged actions have no bearing on the Plaintiffs' order of proof. If the claims proceed in the same action, Plaintiffs and the putative class must devote resources to explaining the significant differences between the sideshow of Pirate Monitor's alleged misconduct and the weighty claims brought by Plaintiffs and the putative class, none of which have any connection to Pirate Monitor.

Pirate Monitor will be prejudiced absent severance because the legal fees that Pirate Monitor and YouTube have expended on these counterclaims have already soared past the low $20,000 value of the claims themselves. Although Pirate Monitor disputes YouTube's claims for attorney's fees, YouTube claims as damages its alleged legal expenses, which already constitute six figures and at least five times the value of the underlying claim, according to their verified discovery responses. *Compare* Dkt. 100-1 at 3 ("Counterclaimants estimate that the resources used to investigate Pirate Monitor's misconduct equates to at least $20,000 ….") *with id.* at 4 (" "The sum total of attorneys' fees incurred by Counterclaimants in relation to [pursuing their counterclaims] … is in excess of $100,000."). This litigation waste has occurred despite Pirate Monitor's best efforts to mediate and settle these

counterclaims because YouTube has refused every effort by Pirate Monitor to resolve the counterclaims.

YouTube similarly fails to support its argument that severance would result in prejudice due to duplicative discovery. As explained above, the Court could still "coordinate discovery … to avoid conflicts and duplication." Manual for Complex Litigation, Fourth § 11.455. In any event, discovery on the claims and counterclaims has already proceeded on parallel paths that mirror coordinated discovery of related cases. In the class case, YouTube has submitted separate document requests and interrogatories to the various Plaintiffs, and Plaintiffs have coordinated and submitted parallel requests to YouTube. Severance with coordination would result in no change to the status quo.

The remaining fairness factors ensure that courts consider the prejudices that arise as a result of complexity and confusion in difficult cases. YouTube argues that it is "speculative and premature" to assert these practical difficulties now, Dkt. 106 at 10, despite claiming on the previous page that Plaintiffs' delayed too long in seeking severance, *id.* at 9. However, when YouTube has already made it clear that its strategy is to use a purported fraud *to gain access to* Content ID as evidence that nobody but a select few could be trusted *to use* Content ID, there is no reason to avoid addressing the potential for juror confusion now. *See Renati*, 2019 WL 5536206, at *4–*6 (granting motion to sever individual claims not arising out of the same transaction or occurrence, and rejecting arguments that the court should postpone deciding severance until close of discovery); *On The Cheap, LLC v. Does 1-5011*, 280 F.R.D. 500, 502 (N.D. Cal. 2011) ("The Court is permitted to sever improperly joined parties at any time, as long as the severance is on just terms and the entire action is not dismissed outright.") (citing Fed. R. Civ. P. 21).

YouTube's claim that it expended significant resources because a purported delay in moving to sever "resulted in … Plaintiffs' unsuccessful motion to dismiss challenging the counterclaims," Dkt. 106 at 9, is wrong. YouTube's description of the motion as "unsuccessful" and a "make-work motion to dismiss," *id.* at 3, is belied by its admission that the "Defendants amended to provide substantial additional detail," *id.* at 3, to the counterclaims.

## CONCLUSION

Now that Pirate Monitor is no longer a class member it is clear that the actions have no overlap and should be severed. YouTube's plan is simple: continue to expend attorney's fees on the counterclaims to make the counterclaims *de facto* settlement proof so that YouTube can keep them in the case to use them to distract from the claims brought by Plaintiffs and the class. Severance is the only way to break out of this cycle.

Plaintiffs have met their burden in proving that severance would create judicial economy and avoid prejudice to the parties. Plaintiffs respectfully ask this Court to grant their motion to sever.

Dated: January 20, 2022                                         Respectfully submitted,

/s/ Steven M. Berezney
George A. Zelcs (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
Steven M. Berezney, CA Bar #329923
Carol O'Keefe (*pro hac vice*)
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
Joanna Wright (*pro hac vice*)
Demetri Blaisdell (*pro hac vice*)

| | |
|---|---|
| 1 | BOIES SCHILLER FLEXNER LLP |
| 2 | 55 Hudson Yards, 20th Floor |
|   | New York, NY 10001 |
| 3 | Phone: (212) 446-2300 |
|   | Fax: (212) 446-2350 |
| 4 | |
|   | *Attorneys for Plaintiffs Maria Schneider, Uniglobe* |
| 5 | *Entertainment, LLC, and AST Publishing Ltd.* |
|   | *and Counter-Defendants Pirate Monitor Ltd. and* |
| 6 | *Gábor Csupó* |