1              UNITED STATES DISTRICT COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3         Before The Honorable James Donato, Judge

4

5  SCHNEIDER, et al.,           )
                                )
6          Plaintiffs,          )
                                )
7  vs.                          )   No. C 20-04423-JD
                                )
8  YOUTUBE, LLC, et al.,        )
                                )
9          Defendants.          )
   _____)

10
                               San Francisco, California
11                             Thursday, March 10, 2022

12
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13          RECORDING 10:32 - 11:05 = 33 MINUTES

14 APPEARANCES:

15 For Plaintiffs:
                               Korein Tillery LLC
16                             205 North Michigan Plaza
                               Suite 1950
17                             Chicago, Illinois 60601
                          BY:  GEORGE A. ZELES, ESQ.
18                        BY:  RANDALL P. EWING, JR., ESQ.

19                             Boies Schiller Flexner LLP
                               44 Montgomery Street
20                             41st Floor
                               San Francisco, California
21                             94104
                          BY:  JOSH SCHILLER, ESQ.
22
                               Boies Schiller Flexner LLP
23                             55 Hudson Yards, 20th Floor
                               New York, New York 10001
24                        BY:  PHILLIP C. KOROLOGOS, ESQ.

25          (APPEARANCES CONTINUED ON THE NEXT PAGE.)

2

1 | APPEARANCES:  (Cont'd.)

2 | For Defendants:

3 |                                Wilson Sonsini Goodrich &
                                     Rosati
                                   650 Page Mill Road
4 |                                Palo Alto, California 94304
                          BY:  DAVID H. KRAMER, ESQ.
5 |                        BY:  MAURA L. REES, ESQ.
                          BY:  LAUREN G. WHITE, ESQ.

6 |

7 | Transcribed by:            Echo Reporting, Inc.
                                Contracted Court Reporter/
8 |                            Transcriber
                                echoreporting@yahoo.com

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

3

1  <u>Thursday, March 10, 2022</u>                    <u>10:32 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4          THE CLERK:  Calling civil 20-4423, Schneider, et

5  al., versus YouTube, LLC.

6      Counsel, please state your appearances for the record.

7          MR. KOROLOGOS:  Good morning, your Honor.  Phil

8  Korologos with Boies, Schiller, Flexner for the Plaintiffs -

9  -

10         THE COURT:  Oh, can I have the sheet?

11         MR. KOROLOGOS:  Oh, I'm sorry.

12         THE COURT:  Okay, go ahead.

13         MR. KOROLOGOS:  Good morning, your Honor.  Phil

14 Korologos with Boies, Schiller, Flexner for the Plaintiffs

15 in the punitive class.

16         MS. REES:  Good morning, your Honor.  Maura

17 Rees --

18         THE COURT:  Are there people --

19         THE CLERK:  Use the microphones, Counsel.

20         MR. EWING:  Good morning, your Honor.  Randall

21 Ewing, Korein Tillery, LLC for the Plaintiffs.

22         MR. SCHILLER:  Good morning, your Honor.  Josh

23 Schiller, Boies, Schiller and Flexner for the Plaintiffs.

24         THE COURT:  Okay, all right.  Defendants?

25         MS. REES:  Good morning, your Honor.  Maura Rees

4

1  from Wilson Sonsini on behalf of Defendants.  And with me

2  are my colleagues David Kramer and Lauren Galloway.

3          THE COURT:  Okay, all right.  Well, I see

4  Schneider a lot in discovery letters and other things and

5  it's clear to me that there's a lot of heat.  I'm not quite

6  sure what the heat is about, but there's a lot of heat

7  between the parties and I'm just going to try to -- we've

8  got to get this thing cleaned up a little bit.

9      So, on the motion to severe, I just -- it makes no

10 sense to me lob that off as a separate case, so the

11 severance is denied.

12     Now, on the Plaintiffs' side for the amended complaint.

13 I just -- a couple things I just want to focus on.  So, just

14 show me where -- one example.  Just show me where in the

15 amended complaint facts are alleged about, you know, a

16 Plaintiff owning a copyright and then that copyright being

17 infringed; just point me to a couple of paragraphs or

18 whatever you have.

19          MR. KOROLOGOS:  Your Honor, in -- I'll start with

20 Ms. Schneider.

21          THE COURT:  Okay.

22          MR. KOROLOGOS:  Paragraph 60.

23          THE COURT:  Sixty.  All right.

24          MR. KOROLOGOS:  Six, zero.

25          THE COURT:  Okay, yes.

5

1          MR. KOROLOGOS:

2              "Plaintiff Schneider is the legal,

3          and/or beneficial owner of exclusive

4          rights held and the copyrights to

5          numerous works, including for example,

6          the songs Hang Gliding -- "

7          THE COURT:  Yes.

8          MR. KOROLOGOS:  " -- Green Peace, et cetera."  And

9 then there's a footnote to that, footnote seven.

10         THE COURT:  Okay, yes.

11         MR. KOROLOGOS:  "Schneider's claims include the

12 following additional works -- "

13         THE COURT:  Yes, we don't have to read them out.

14 A ton of songs.  Okay.  And where is the -- where are the

15 fact that these were infringed, or they were copied in some

16 unfair way?

17         MR. KOROLOGOS:  There are allegations of

18 infringement, your Honor, in the claim.

19         THE COURT:  Just show me the paragraph, please.

20         MR. KOROLOGOS:  So, for instance, your Honor,

21 paragraph 114 and 115 for the direct infringement.

22         THE COURT:  Well that's -- 114 and 115 don't --

23 aren't facts.  It just says, "By engaging in acts causing

24 these infringements."  It doesn't say when they were

25 infringed.  There are no facts there, it just says you did

6

1  it.

2         MR. KOROLOGOS:  Your Honor, the infringements are

3  effectively URLs that are on YouTube.

4         THE COURT:  Yes.

5         MR. KOROLOGOS:  The URLs and the infringements are

6  not identified in the complaint.  Your Honor entered an

7  order in November, I believe it was, docket 98, that set

8  forth a schedule for us to provide to the other side, a

9  preliminary list in November, which we provided them on

10 November 29.

11        THE COURT:  So this is what I'm getting confused

12 about.  That was a full list, from your perspective?

13        MR. KOROLOGOS:  The preliminary list was not a

14 full list.  Your Honor's order called for a final list this

15 past February 25.

16        THE COURT:  Okay.

17        MR. KOROLOGOS:  We provided that list.

18        THE COURT:  You did?

19        MR. KOROLOGOS:  Yes.

20        THE COURT:  That's it.  You're done now?

21        MR. KOROLOGOS:  It has about 745 --

22        THE COURT:  Specific -- do you happen to have a

23 copy of it there?

24        MR. KOROLOGOS:  I can pass a copy up --

25        THE COURT:  Do you mind if I -- I'm just going to

7

1 take a look at it; is it marked up in any way?

2          MR. KOROLOGOS:  It is not; May I approach?

3          THE COURT:  Would you just hand it to Ms. Clark

4 and I'll take a quick look at it.  Thank you.

5     Okay, now this is the -- is this the full list, or like

6 the second installment?

7          MR. KOROLOGOS:  This is the final installment.

8          THE COURT:  Okay, so it's not the -- this is part

9 two?

10          MR. KOROLOGOS:  This is not -- we had a --

11          THE COURT:  Okay.

12          MR. KOROLOGOS:  Well, we had some interrogatory

13 answers prior to your Honor's asking for a preliminary list.

14 We gave a preliminary list, we followed up with some

15 additional information at the request of the Defendants, we

16 then followed up some additional preliminary information and

17 then we provided this final list on February 25.

18          THE COURT:  Now, so what does this list show?  I'm

19 looking at the first page, it says, "AST Publishing".

20          MR. KOROLOGOS:  AST is one of our three Plaintiffs

21 and on page five is from Ms. Schneider.

22          THE COURT:  Okay, let's just -- looking at line

23 one here under -- what is -- what is this saying?

24          MR. KOROLOGOS:  So the URL, which is the left hand

25 side after the number one there, the https, that is the URL

8

1  of a video available on YouTube that we alleged infringes --

2        THE COURT:  Okay.

3        MR. KOROLOGOS:  -- the work over on the right.

4        THE COURT:  So you can click -- this is a

5  hyperlink, you can click this and get to the video?

6        MR. KOROLOGOS:  Yes.

7        THE COURT:  Okay.  So -- all right.  That's the

8  exact video and then what's on the right hand side?

9        MR. KOROLOGOS:  That is the name of the work at

10  issue that we say is the copyrighted work that is infringed.

11        THE COURT:  Oh, okay.  And is there another --

12        MR. KOROLOGOS:  That's the cross reference.

13        THE COURT:  Is there another chart that provides

14  the copyright information for "My Children"?

15        MR. KOROLOGOS:  You mean the registration

16  information, your Honor?

17        THE COURT:  Yes.

18        MR. KOROLOGOS:  There is not in this.

19        THE COURT:  Oh, okay.

20        MR. KOROLOGOS:  I believe we provided that in

21  response to interrogatory answers.

22        THE COURT:  Oh, you did?

23        MR. KOROLOGOS:  To the extent it's been --

24        THE COURT:  All right.  So there's something that

25  links "My Children" to a registration statement in your

9

1  discovery responses?

2          MR. KOROLOGOS:  I believe that's correct, your

3  Honor.

4          THE COURT:  Okay.  All right.  And this is the

5  full universe now, the November and February lists?

6          MR. KOROLOGOS:  It is with one -- one note, your

7  Honor.  You may recall that this case is about, in large

8  part, a program called "Content ID" that is available for

9  large music studios and recording studios, that is not

10 available to the class.

11         THE COURT:  I understand.

12         MR. KOROLOGOS:  That is digital fingerprinting.

13 We have asked and gotten the agreement of the Defendants to

14 run a series of works that we will provide them, reference

15 works, through that process of Content ID on YouTube, which

16 may identify additional infringement.

17         THE COURT:  Oh, so you worked that out -- you two

18 have all -- both sides have worked that out?

19         MR. KOROLOGOS:  We worked that out for the

20 running.

21         THE COURT:  I understand.

22         MR. KOROLOGOS:  As a result, we may come back to

23 your Honor, even though this is a final list, to address

24 what we find there.  At a minimum, we would argue that the

25 infringements that are found through that process will be

10

1  relevant at least to the liability of Content ID to expose

2  infringements that we're not able to find through a search

3  process, such as was done for this February 25.

4         THE COURT:  All right.  So there may be some

5  agreed upon additions.

6      Well, Defendants, I mean you have everything you need;

7  what's missing?

8         MS. REES:  So, if we look at the February 25th --

9         THE COURT:  You have to --

10        THE CLERK:  Use the microphone.

11        THE COURT:  It's --

12        MS. REES:  Maura Rees --

13        THE COURT:  Yes, you have to say your name.

14        THE CLERK:  Pull the microphone down to your

15  mouth.  There you go.

16        MS. REES:  Maura Rees from Wilson Sonsini.

17      So, in this February 25th, 2022 list of infringements,

18  there are -- is a list of URLs and then there is a list of

19  corresponding works next to those URLs, but this list still

20  doesn't have any URLs or infringements listed for 27 of the

21  works that are listed in the complaint.

22        THE COURT:  That's okay.  They just don't have

23  those, so you don't have to worry about them, right?

24        MS. REES:  Well, so --

25        THE COURT:  This is your operative list.  Listen,

11

1  there's always a little slip, sometimes a big slip, between

2  what a complaint says and what you finally end up with and

3  it's not a shape -- but you shouldn't be troubled by that,

4  but you have everything you need now and now you -- what are

5  you -- you're not missing anything.  You've got, what, 730

6  works, something like that?

7           MR. KOROLOGOS:  Seven hundred and forty five URLs,

8  for probably about 75 works.

9           THE COURT:  Oh, it's only about -- well, what's

10  the totality of the number, just roughly?  All of the works

11  between February and November?  Is that 75 works?

12           MR. KOROLOGOS:  Well the -- two things.

13  Copyrighted works, I think the number is around 75.

14           THE COURT:  Seventy five.

15           MR. KOROLOGOS:  Maybe it's -- I'm off by five --

16           THE COURT:  That's fine.  We're not --

17           MR. KOROLOGOS:  And then instances of infringement

18  that are identified in here is --

19           THE COURT:  Yeah, we're talking about in the

20  universe of approximately 75 copyrighted works.  That's not

21  bad.  I thought this was going to be a lot more than that.

22  So, in other words, this is looking a lot more manageable

23  than I thought a half an hour ago.

24      But what's -- what more do you need?  You got your tool

25  kit here and now you can go look at the 75, were they

12

1  actually copyrighted?  Were they copyrighted in time for the

2  lawsuit?  And then you can go back and you can look at the

3  videos, very easy, just click on the URL, does that actually

4  contain any original works from the copyrighted -- I mean,

5  what more do you mean?

6          MS. REES:  So I think what we need is what perhaps

7  your Honor just gave us, which is the assurance that this

8  was the final list.

9          THE COURT:  Okay, okay.  Let's -- that is the

10  final list, pending you agreed upon -- let's call it the

11  "Content ID process".

12          MS. REES:  So the processes agreed to, we have not

13  agreed that they are permitted to amend, to add anything

14  that they find from that process.  The reason being that,

15  you know, we agree to provide this process as an

16  accommodation to Plaintiffs, but we don't agree that they

17  need it in order to find alleged infringements.  They've

18  already found this entire list without Content ID.  They can

19  go -- YouTube is a public website, they can go to it, they

20  can search for infringements.  That's how they found all of

21  these.  And so if what they find in Content ID they could

22  have found by searching and they just didn't, I think our

23  position would be that that's not something they should be

24  able to add later.

25          THE COURT:  Well this is -- I mean discovery is

13

1  still ongoing, right?  So it's sort of like a rolling

2  evolution of facts.  I mean why would I -- here's the issue.

3  Complaints are living documents, but under Rule 8, you just

4  need a short and plain statement of the claim and then you

5  flush everything out in discovery.  What -- it occurred to

6  me that a lot of your -- Defendants' concerns were almost

7  more 12 -- Rule 12(e), motions for a more definite

8  statement, than anything else.  And you never see a 12(e), I

9  bet you've never even filed a 12(e), because it's plain as

10 day that if you can get the information in discovery, don't

11 waste your time in bringing a 12(e) motion, that's what

12 discovery is for.  So, I just -- it doesn't seem like a

13 problem to me.

14     Here's what I'm going to suggest.  Do your think with

15 the Content ID that you all agreed on.  I can't imagine why

16 you wouldn't be able to reach some agreement on adding a few

17 things.  I mean I'm -- if after all of this they've come up

18 with only 75 works, you know, it doesn't seem like a Content

19 ID process is going to open the door to too much more than

20 that, probably less, I don't know.  Who knows?  I'm just

21 guessing, but you know, if it's another 10 works, is it

22 really worth all of the time and money to fight about?

23 Can't you just get it done?  That's just a -- that's a

24 thought for right now, but you know, they don't have to

25 stuff the complaint with all of this.  In fact, in some ways

14

1  that would be antithetical to Rule 8, which a short and

2  plain statement of the case.

3      So, as long as you have, on the defense side, the tools

4  you need to work with, you could say, "No, that's absolutely

5  not right.  These are unregistered, they're not copyrighted,

6  they're not infringed."  It looks to me like you do and I'm

7  not hearing you say anything to the contrary.  It seems like

8  you're off to the races.

9          MR. KRAMER:  Your Honor, David Kramer from --

10         THE COURT:  Yes.

11         MR. KRAMER:  -- Wilson Sonsini for YouTube.

12         THE COURT:  Sure.

13         MR. KRAMER:  A couple of points here.

14     With respect to your Honor's last comment about whether

15  we have what we need, the answer is no.  In many cases we

16  don't have what we need.  There are lots of works that are

17  being put at issue here that aren't registered, or aren't

18  timely registered, and shouldn't be part of the case as a

19  result.

20      There are other works that --

21         THE COURT:  Well let me just jump in.  I

22  understand that and that's part -- I probably was not clear

23  -- that's part two.  Now you come back and say, "Well hold

24  on Plaintiffs, we looked at the copyright office, or

25  whatever, and "Nutty Buddah" is not a registered work, so

15

1  get out of town." And you bring a motion, namely summary

2  judgment, probably. So that's what you do next. Or, you

3  look at that the video and you say, "You know what, "Nutty

4  Buddah" is not featured at all and that link is about how to

5  update your Model 3 Tesla software, there's nothing in there

6  about Nutty Buddah." Do you see what I'm saying? You just

7  -- that's the next stage.

8          MR. KRAMER: I understand the point, your Honor --

9          THE COURT: Yes.

10          MR. KRAMER: -- but the proper course under the

11  Rules, under the Supreme Court's decision on registration,

12  is that those works should not -- the Court should not

13  entertain those claims that they -- that the Plaintiffs have

14  failed to state cause of action on work that hasn't been

15  registered.

16          THE COURT: I'm not going to entertain them, we're

17  going to throw them out if that's true. I -- trust me. I

18  just have to see the facts. I can't take your word for it,

19  as much as I would like to, just like I take your

20  colleague's word. I have to see -- you need to show me this

21  was never registered and I will say, in all probability,

22  then they're not in the case. That's what I'm saying.

23          MR. KRAMER: Understood, your Honor.

24          THE COURT: You see? Yeah.

25          MR. KRAMER: And I think that's in our motion to

16

1 dismiss.  I think there are various places in the pending
2 motion.
3          THE COURT:  Well none of this is in there.  This
4 is what I've -- we've been waiting to see and none of that
5 is in the complaint or the motion to dismiss, and that's
6 because it's extrinsic evidence, outside the boundaries of
7 the complaint.  Which means, in my world, which is your
8 world, Rule 56.
9          MR. KRAMER:  Your Honor, we agree that the list of
10 infringements is not in the complaint.
11          THE COURT:  Yes.
12          MR. KRAMER:  But the list of works that Plaintiffs
13 are suing over is in the complaint and we can look at the
14 list of copyrighted works and say, "Many of these works were
15 not properly registered before the lawsuit was filed."
16          THE COURT:  Well, how about this?  This is a
17 relatively -- look, this comes up -- it's relatively easy to
18 figure this out.  Can't you all just get together and go
19 through it and do something like that?  I mean don't waste
20 your time, Plaintiff, if it's -- if it's not registered,
21 you're pretty much done.  So why can't -- can't you just sit
22 down and, look the complaint was filed on -- the original --
23 you know, it has to be probably the original complaint,
24 whenever that was, and take it from there.
25          MR. KOROLOGOS:  That is the issue, the timing of

17

1  the complaint.  None of the works that we have alleged are
2  part of the case were unregistered at the time the complaint
3  was filed for those works.  There were 28 works that were --
4  out of the 75 -- there were 28 that were not registered as
5  of the original complaint, but they weren't a part of that
6  complaint.  They are in the amended complaint.  We site the
7  <u>Licorice</u> case to show that if they are registered you can
8  amend to add registered complaints.

9      The Defendants' argument is you cannot cure an invalid
10  complaint if you've brought a claim --

11          THE COURT:  Let me just jump in.  I -- I'm not
12  going to resolve that issue now, although I have my thoughts
13  on it.  The only other answer is you just file a new case.

14          MR. KOROLOGOS:  Exactly.

15          THE COURT:  And I would just relate it.  And we're
16  just going to back here anyway, okay?  The message I'm
17  trying to get through to both of you, and I'll put a finer
18  point on it, is you all are getting hung up on things that
19  don't matter.  If I grant your motion, if I say the word at
20  the time the suit is instituted, which I believe the statute
21  says, is the original complaint and they didn't do that,
22  they're not locked out of court, they just file a new
23  complaint.  That complaint gets filed here.  That judge
24  sends me a sua sponte motion to say, "Please take this,
25  Judge Donato."  And I say, "Yes."  And you're here again.

1    So I would like you to both use your years of
2 experience and practicality, save yourself some money and
3 some time and see what you all can -- just sit down and go
4 through the list and just look at the registration
5 statement, okay?  If it's registered, compare that to the
6 complaint, see what you can work out, okay?  If you can't
7 work it out, you can grind through and burn your client's
8 money any way you want, or your money, whatever.  Burn all
9 of your money any way that you want.  It's going to come
10 back here anyway, okay?  I'm just telling you, that's the
11 reality of where we are.

12          MR. KOROLOGOS:  We will do that.

13          THE COURT:  But, it does make sense to screen out
14 the things that the registration statements were.  Or, you
15 know, if you all look at these links and say, "I'm sorry, I
16 can't see where "Nutty Buddah" is even mentioned in this
17 thing."  Just have a talk about it, okay?  Let's just get on
18 to the merits is what I'm saying.  There's been a lot of,
19 you know, moving the earth around without actually building
20 a structure.  So let's just sort of get to it.

21    Yes?

22          MR. KRAMER:  Two more things, your Honor.

23          THE COURT:  Yes.

24          MR. KRAMER:  With respect to the Court's comments
25 on Content ID.  The problem that's inherent --

19

1           THE COURT:  I thought you had a deal?

2           MR. KRAMER:  We have a deal to run the process for

3    the Plaintiffs.

4           THE COURT:  Okay.

5           MR. KRAMER:  And we offered this deal to them six

6    months ago and it's going to take months to run.

7           THE COURT:  Months?

8           MR. KRAMER:  Months.

9           THE COURT:  Why does it take months?

10          MR. KRAMER:  Because the corpus of videos on

11   YouTube is enormous.

12          THE COURT:  It will literally take months with 24

13   hour/seven processing?

14          MR. KRAMER:  Months, your Honor.  I'm speaking --

15   I'm only relaying the information that --

16          THE COURT:  No, I understand.

17          MR. KRAMER:  -- was shared with me.  I don't know

18   it firsthand, but that's what I've been told and that's what

19   we told the Plaintiffs.

20          THE COURT:  And what comes out -- so then what

21   gets generated?

22          MR. KRAMER:  So there will be a list of matches.

23   "This video has some degree of similarity to the work that

24   you've provided."

25          THE COURT:  Oh, I see.

20

1         MR. KRAMER:  "Now, you tell us, looking at that

2    match, whether you think that's a problem, or whether you

3    think it's noise."

4         THE COURT:  All right.  So you'll give your

5    colleagues the printout, so to speak, and --

6         MR. KRAMER:  That is the plan.

7         THE COURT:  All right.

8         MR. KRAMER:  Here's the problem.

9         THE COURT:  Yes.

10        MR. KRAMER:  The Court set the deadline for final

11   identification of alleged infringements at February 25th so

12   that there would be a period of discovery following the list

13   of infringements that the Court now has, so that we could

14   investigate their claims of infringement.  If in fact this

15   process will take months, and we expect that it will, and

16   then Plaintiffs can amend that list again, we will be at or

17   past the fact discovery cutoff in this case before we have,

18   what would then be an amended list of alleged infringement.

19        THE COURT:  That's July 5th of this year.

20        MR. KRAMER:  Correct, your Honor.  And the reason

21   -- the reason why we offered to run this process six months

22   ago, was to avoid getting into a situation where we ran up

23   against the schedule.

24        So now we've got a problem with if we take discovery.

25   Say we depose Ms. Schneider about her claims of infringement

21

1   and it turns out that Content ID matches four new works that

2   they want to -- new videos that they want to put at issue.

3   We would have already deposed her.  We would already have

4   been through the discovery process and we will already be at

5   the fact discovery cutoff.

6          THE COURT:  No, I understand.  When -- when did

7   you make this offer?

8          MR. KRAMER:  We offered to do this in August and

9   we made a formal proposal in September.  And it's taken all

10  of this time to hash through it.  The Plaintiffs only gave

11  us the references that are needed to run this process

12  yesterday.

13         THE COURT:  Why did you wait so long, Plaintiffs?

14         MR. KOROLOGOS:  Your Honor, it is unfortunately

15  taking a very long time to engage in a variety of

16  negotiations with the other side for meet and confers,

17  including getting access to Content ID and including the

18  issue on getting the answers as to when we would get the

19  information.

20         THE COURT:  Your colleague said that they opened

21  the door in August and confirmed that in September.

22         MR. KOROLOGOS:  They confirmed that in September

23  and we've been working on a way to try to do that, including

24  to find out why it would take so long to get the

25  information.

22

1          THE COURT:  Well it's March now.  It's a long time
2   ago.  Why didn't you get it done in October?
3          MR. KOROLOGOS:  Your Honor --
4          THE COURT:  Why didn't you run through that door?
5   You got a deal and I don't understand why you waited around?
6          MR. KOROLOGOS:  Well, your Honor, without
7   rehashing all of the meet and confers with your Honor, it
8   was not an easy process to get to the point of agreement,
9   including because they would only let us agree to it if we
10  agreed we couldn't use the information before your Honor,
11  that we could not present it to the jury.  That'S not going
12  to work for us.
13         THE COURT:  Well when was your -- when was your
14  last meet and confer on this?
15         MR. KOROLOGOS:  Probably about three weeks ago
16  when we finalized the written agreement that they required
17  of the license agreement, for us to provide, that has the
18  information in it about use where we've agreed to punt on
19  that issue.  In order to get this done, we had to deal with
20  their request that we not be able to use the information.
21  And we said we want to use the information, and we finally
22  reached an agreement that we would push that issue off until
23  we see what the information is.
24         And so that and also we're asking, why can't we get it
25  on a rolling basis?  Our understanding is simply that it

23

takes six months, not to get any data back, but to get all
of the data back and to have it quality controlled.  We
think we should be able to get the information as it comes
out, regardless if there's a final list.  Much like we had
to provide a preliminary list and final list.

        But in order to get this done, because we do want to
move this along, we had to agree to the terms that we agreed
to and we now have provided them that list.

            MR. KRAMER:  We offered plenty of ways to
streamline this process, your Honor.  The problem is simply
the size of the corpus on YouTube.  Plaintiffs were willing
to accept some of those ways, looking at only those videos
that have any appreciable number of views, look at those
videos that are only a consequence of the grand scheme of
things, we said we could do this much faster.  Plaintiff
said, "Nope, you have to run it against every video that's
ever been uploaded onto the YouTube service."  And no, I
think my colleague has --

            THE COURT:  How would you -- how would you tailor
the videos you'd run it up against?

            MR. KRAMER:  Oh, certainly, your Honor.  If we
were running the system against videos that only had 1,000
views, that had only been viewed by users 1,000 times --

            THE COURT:  Oh, I see.

            MR. KRAMER:  It would be a much smaller universe

24

1  of videos against which to run the process, and we proposed

2  that.  We proposed running it against those videos that have

3  only had 100 views, or 1,000 or 10,000, proportionate

4  amounts of time --

5          THE COURT:  One hundred or more?

6          MR. KRAMER:  One hundred or more.  Correct, your

7  Honor.

8          THE COURT:  And even that would reduce the numbers

9  substantially?

10          MR. KRAMER:  Greatly.  Yes, your Honor.

11          THE COURT:  Really?

12          MR. KRAMER:  Right.  Because there's what they

13  call a "long tail" of videos on the service that have

14  rarely, if ever, been viewed by anybody.

15          THE COURT:  Really?

16          MR. KRAMER:  In deed.

17          THE COURT:  How about that?

18          MR. KOROLOGOS:  Well, your Honor, we did consider

19  that through this meet and confer process.  The problem is

20  whether it's viewed once, twice, 20 times, 50 times or

21  100,000 times.  Each one is a copyright violation.

22          THE COURT:  Look, I understand that.  We're not

23  looking for perfection here.  We're trying to get your case

24  moving along.  I don't know why you all waited six months,

25  so I'm very tempted just to say you waited too long.  This

1 is also a mountain of work and I don't -- I mean I don't --

2 I think you're lucky, to be honest, that the other side

3 agreed to it.  So you're all going to have to give a little

4 to get a little.  So -- and I don't even know what these

5 results are, it could -- you could roll snake eyes on this,

6 who knows.  Probably now, but you could come out with five

7 more things after all of this work.

8          MR. KOROLOGOS:  Or we could come out with --

9          THE COURT:  You could come out with 5,000, I

10 understand that, but nobody knows.  So I'm not -- this is a

11 2020 case.  It's gotta get done and I think you all waited

12 to long on the Plaintiffs' side.  I'm not going to turn off

13 the tap, but what number can you live with 100, 200, 50 --

14 what was the other one, 1,000?  What number do you want?

15          MR. KOROLOGOS:  I'd like to confer with my team on

16 that.

17          THE COURT:  Just do it right now.  It's your case,

18 you can just tell me.  What is the -- I'm not going to have

19 any more of these six month breaks.  What number are you

20 going -- I'll just pick it.  I'm going to give you a chance,

21 otherwise Mr. Korologos, I'm just going to give you a

22 number; so what number is it?

23          MR. KOROLOGOS:  One clarifying question to the

24 other side, if your Honor --

25          THE COURT:  Sure.

26

1          MR. KOROLOGOS:  My recollection was that if we did

2   views of 100 or more that that would cut the time period for

3   running Content ID roughly in half.

4          THE COURT:  Is that right, Mr. Kramer?

5          MR. KRAMER:  Correct.

6          THE COURT:  I mean that's still three months.

7          MR. KRAMER:  It's still three months, it's still a

8   long time, it still puts us in a precarious position, with

9   respect to discovery.  But I suspect that if we end up in

10  that place and there are all kinds of new things that are --

11  that need to be added to the case, we may come back to the

12  Court and say --

13         THE COURT:  We'll have to do something.  Look, I'm

14  fine if there's good cause, I'm perfectly fine with changing

15  the schedule, but right now there's no good cause.

16     Now, are you able to do this on a rolling?  Do you have

17  to wait until the three months are up?  In other words, do

18  you have to wait for the whole thing to finish first?

19         MR. KRAMER:  My understanding that the cost

20  associated with doing it on a rolling basis is significantly

21  greater than if --

22         THE COURT:  Well your colleagues are going to pay

23  for it, how about that?

24         MR. KRAMER:  Well that's a fish of a different

25  color, your Honor.  That was never on the table.

27

1          THE COURT:  Well, let's -- do you want to pay for

2    it and get it earlier?  This is all under proportionality,

3    so in my view this is perfectly proportioned.

4          MR. KOROLOGOS:  We haven't heard -- we haven't

5    heard the price, your Honor.

6          THE COURT:  What's the price, roughly?

7          MR. KRAMER:  Tens of thousands of dollars, your

8    Honor.  Probably not hundreds of thousands, probably tens of

9    thousands.

10          THE COURT:  Somewhere between $10,000 and

11   $100,000?

12          MR. KRAMER:  In deed.

13          THE COURT:  To get it on a rolling basis?

14          MR. KRAMER:  To get it on a rolling basis.

15          THE COURT:  And what would "rolling" mean?  Once a

16   week or?

17          MR. KRAMER:  Probably more like once every two

18   weeks.

19          THE COURT:  Does that sound like it's worth the

20   money to you, Mr. Korologos?

21          MR. KOROLOGOS:  I think it is.

22          THE COURT:  Okay.  I'm going -- you'll get 100.

23   If you want to buy it earlier, you have to buy it, okay?  So

24   that just seems fair to me under the rule of

25   proportionality.  You two work it out, okay?  How long do

28

1  you want?  Do you want a week to do this?  I'm going to have

2  to set some deadlines, I want to keep you guys moving.

3          MR. KOROLOGOS:  How about the end of next week,

4  your Honor?

5          THE COURT:  A week from tomorrow, how about that?

6  Okay.  Is today Thursday?  Yes.  A week from tomorrow.

7          MR. KRAMER:  Easy.

8          THE COURT:  Okay.  Work out a deal, okay?  Work

9  out the price.  You know, just your cost, no profit, you

10  know that, this is just your cost.

11          MR. KRAMER:  Right.

12          THE COURT:  And you're going to have to show Mr.

13  Korologos something about that.

14          MR. KRAMER:  Understood.

15          THE COURT:  And then if delivery is -- if they're

16  going to be paying, you've got to deliver it, you know every

17  -- whatever, 10 days, or they don't have to pay.

18          MR. KRAMER:  We understand, your Honor.

19          THE COURT:  All right.  Give me a week to work all

20  of that out.

21          MR. KRAMER:  One final thing, your Honor.  I stood

22  up and chimed in on Content ID, but Ms. Rees wanted to speak

23  to the issue that's raised in our motion to dismiss that is

24  the Section 1202 --

25          THE COURT:  Oh, I'm going to handle all of that

29

1  myself.  I don't -- I don't need to -- I just wanted to

2  target these things.

3         MR. KRAMER:  Very good.

4         THE COURT:  Okay, so we got -- we made a lot of

5  progress, all right.

6     So we've got these two lists, November and February,

7  that's the corpus -- main corpus --  you're going to see

8  what this Content ID process, that you two are going to

9  finalize a week from tomorrow, what it might generate and

10 everything else is on track.  I'll get an order out, but

11 just keep going.  Don't -- don't stop, okay?

12        MR. KOROLOGOS:  Does that --

13        THE COURT:   And severance is denied.

14        MR. KOROLOGOS:  Does that (indiscernible).  If I

15 can ask that we set a status conference, maybe two months

16 out?

17        THE COURT:  Sure.  You want to do 30 days?  I'll

18 give you two tranches maybe, or at least one tranche of

19 production; is that why you want to come back?

20        MR. KOROLOGOS:  I'm happy to do it -- I think that

21 helps discipline both sides to make sure that we get the

22 things we need to as we hit the final stretches.

23        THE COURT:  Let's do the -- how about the end of

24 April, Ms. Clark?  I think the second to last Thursday.

25        THE CLERK:  The 21st?

                                                              30

1          THE COURT:  All right, let's do April 21st, five

2   weeks from now.

3          MR. KOROLOGOS:  And I believe I'm scheduled to be

4   traveling from the 20th --

5          THE COURT:  Want to do the 28th?

6          MR. KOROLOGOS:  I don't remember the dates.  I

7   believe I'm back the 23rd.  I can do anything --

8          THE COURT:  Does the 28th work?  How about that?

9   Do you want to do the 28th?  I want to give you enough time

10  to have at least one round, maybe two.  If we do the 28th,

11  you might even have two, just give you a little bit of a

12  tail runway to see how things are going, okay?  So come back

13  on April 28th and we'll just have a status conference.

14      Now, what are you all doing on trying to get this

15  resolved?

16         MR. KOROLOGOS:  We had a formal mediation.

17         THE COURT:  Oh you did?

18         MR. KOROLOGOS:  With a former -- with a former

19  judge.

20         THE COURT:  Who's that?

21         MR. KOROLOGOS:  Judge Scheindlin, from the

22  Southern District of --

23         THE COURT:  Oh you did?  Is she doing mediations

24  now?

25         MR. KOROLOGOS:  She is.

31

1             THE COURT:  Does she have her own company, or?

2             MR. KOROLOGOS:  She does it through JAMS, but

3 she's with a law firm, too.

4             THE COURT:  Oh she's doing it through --

5             MR. KOROLOGOS:  A law firm that name slips my

6 mind.

7             THE COURT:  Okay.

8             MR. KOROLOGOS:  But we engaged in an all day

9 mediation session with her, with some briefing to her in

10 advance, and the parties came away with that with sort of a

11 better understanding of each side's position, I think.

12             THE COURT:  Good.

13             MR. KOROLOGOS:  But believing that at the time to

14 readdress possible resolution and narrowing of the case

15 would be further down the road, as we approach class

16 certification and/or summary judgment.

17             THE COURT:  Okay.  So you're going to have a

18 rematch with Judge Scheindlin at some point?

19             MR. KOROLOGOS:  We may -- we may do that if the

20 parties agree, we may choose somebody else.

21             THE COURT:  Well, I have ideas.  There's Judge

22 Hochberg in New Jersey, you may be familiar with her.  She's

23 got her own -- H-O-C-H-B-E-R-G, don't quote me on that -- a

24 former district judge, I believe in the district of New

25 Jersey and I've heard positive comments about her.  There's

32

1  a fellow named Eric Green, who I think is in Massachusetts

2  who does larger cases.  I'm sure you know a lot of names,

3  but let's see -- are you all on the East Coast?  Is that the

4  issue?

5          MR. KOROLOGOS:  I'm on the East Coast, he's on the

6  West.

7          THE COURT:  Oh, okay.  Well let's get some West

8  Coast people.

9          MR. KOROLOGOS:  We could always meet in Kansas.

10          THE COURT:  What's that?

11          MR. KOROLOGOS:  We can always meet in Kansas.

12          THE COURT:  Well, do you want to?

13          MR. KOROLOGOS:  No.

14          THE COURT:  Wouldn't you rather have dinner in San

15  Francisco?  So many people in the Bay area.  You know, Judge

16  Walker, John Walker, former judge of this court is

17  available.  He might be very good, too.

18      So -- but I don't -- it's totally up to you, I just --

19  just to give you some options, but you all decide, that's

20  your portion of the case, not for me.

21      Okay, anything else today, Mr. Korologos?

22          MR. KOROLOGOS:  Nothing, your Honor.

23          THE COURT:  Ms. Rees and Mr. Kramer?

24          MS. REES:  Nothing else.

25          THE COURT:  Anything else?

33

1          MR. KRAMER:   (Inaudible response).

2          THE COURT:   All right.  So one week then.  And I

3  don't need to know the details, you can just -- you can just

4  -- well if you want to share them, I'm happy to look at

5  them.   If you want to memorialize them, that's fine.  But

6  I'm perfectly happy for you to just say a week from

7  tomorrow, if you want, you've worked everything out and the

8  first roll out will be -- is likely to be, April whatever.

9  Or something like that.

10          MR. KOROLOGOS:   Thank you, your Honor.

11          THE COURT:   Okay, great, thanks.   Thanks for

12  coming in.

13     (Proceedings adjourned at 11:05 a.m.)

14

15

16

17

18

19

20

21

22

23

24

25

34

1                    CERTIFICATE OF TRANSCRIBER

2

3       I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9       I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16              Echo Reporting, Inc., Transcriber

17                  Friday, March 18, 2022

18

19

20

21

22

23

24

25