

April 21, 2022

**VIA ECF**
The Honorable James Donato
United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue, San Francisco, CA 94102

        ***Schneider, et al. v. YouTube, et al.*, Case No. 3:20-cv-04423-JD (N.D. Cal.)**

Dear Judge Donato,

        We represent Plaintiffs and the putative class in the above captioned matter.  We respectfully submit this letter motion to compel related to YouTube's Autoplay Feature, including documents requested by Plaintiff Maria Schneider's October 2020 First Set of Requests for Production ("RFP") Nos. 44 and 45.[1] To date Defendants have produced less than a hundred internal documents, which include just eight unique PowerPoint presentations, but no email or instant message communications, and have shared nothing about the process of review or collection, despite apparent deficiencies.  Plaintiffs thus respectfully request that the Court compel the production of documents sufficient to show the information sought in RFP Nos. 44 and 45 within 15 days and the disclosure of search parameters.  We certify that the parties have met and conferred on the issues raised here, consistent with Your Honor's Standing Orders.

        Autoplay automatically plays videos for users without any affirmative acts by the user, *i.e.*, no clicking of a link or selecting the next video to play, and is thus relevant to Plaintiffs' claim that YouTube actively participates in copyright infringement and Defendants' safe harbor defense under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512. AutoPlay's functionality establishes that YouTube algorithmically selects and controls a substantial portion of the views on its platform, including views of content that infringe on Plaintiffs' and the putative class's copyrights.  YouTube does not dispute the relevance of RFP Nos. 44 and 45 but has obstructed or delayed production of documents it agreed to produce.

**I.**      **Relevance of the Requested Documents**

        After a video is watched by a user, Autoplay ***automatically*** plays another related video.[2] YouTube selects and plays uploaded content without any volitional conduct by a user or third party.  According to YouTube, Autoplay "keeps videos playing without you having to select a new video when the video you're watching finishes."[3]  Put simply, Autoplay keeps users watching, thereby substantially increasing advertising revenue by intentionally playing videos that YouTube estimates the user will like and thus watch, all without any action by the user.

        Documents regarding Autoplay are relevant to Plaintiffs' direct infringement claims because they will show that YouTube is more than a passive participant; it actively selects and

---

[1] Exhibits A and B are RFP Nos. 44 and 45 and Defendants' Responses and Objections thereto.
[2] "Autoplay Videos," https://support.google.com/youtube/answer/6327615?hl=en.
[3] "Autoplay," https://www.youtube.com/howyoutubeworks/user-settings/autoplay.



displays infringing videos. (Dkt. 99 ¶ 115.) They are also relevant to Plaintiffs' inducement, contributory, and vicarious copyright claims because they will show how YouTube participates in and benefits from the dissemination of infringing content. (Dkt. 99 ¶¶ 121, 129, and 137.)

Defendants have also raised as a defense the safe harbor provision of the DMCA, which requires YouTube to show it "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(d)(2). YouTube's implementation of Autoplay in 2014 and its resulting increased advertising revenue are directly relevant to whether YouTube "has the right and ability to control" infringing activity, whether it "receive[s] a financial benefit" from such infringing activity, and thus whether it has a DMCA defense.[4] Plaintiffs assert that because Autoplay's ability to choose and play content can include choosing to play videos that infringe copyrights, the "right and ability to control" aspect of Section 512(d)(2) is established. YouTube has seen an astronomical increase in revenue since implementing Autoplay. Dkt. 99 ¶ 38.[5] The requested documents will thus show both Defendants' participation in and control over infringing content on the YouTube platform and the extent to which Autoplay has financially benefitted YouTube through its advertising revenues.

## II.   Defendants Have Agreed to Produce Certain Documents for RFP Nos. 44 and 45

RFP No. 44.   Plaintiffs requested the production of "documents describing the Autoplay Feature, including changes to how the AutoPlay Feature works and implementation of the AutoPlay Feature." Defendants agreed to produce documents "sufficient to show how the Autoplay Feature works" in their December 4, 2020 R&Os to RFP No. 44. Ex. B. When Defendants had produced just three arguably responsive documents by June 2021, Plaintiffs wrote several further discovery letters (dated 7/2/21, 12/16/21, 1/28/22, and 3/10/22), requesting more documents and trying to resolve disputes. However, after two more productions (on 1/13/22 and 2/22/22), Defendants have produced just 111 total documents concerning Autoplay, of which about 30 are either publicly available pages or rendered unusable by error messages or redactions. The remaining 82 documents include 8 unique internal PowerPoint presentations and a disjointed collection of several dozen internal pages that reference Autoplay. Fundamentally, these documents are insufficient to show how Autoplay "works," *i.e.* the process by which it selects videos to be queued up, the criteria that are used (including inputs and exclusionary criteria), the revenues YouTube earns from the process, and other relevant information.

The limited documents produced to date have also revealed several missing categories of documents. *First*, many documents contain links to other relevant internal documents.

---

[4] Notably, Defendants frequently invoke in this case the decision in *Viacom Intern. Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y 2013), to support their DMCA safe harbor defense. *See, e.g.,* Dkt. 97 at 3, Dkt. 54 at 3–4; Dkt. 47 at 8. Because Autoplay was only added after *Viacom*, the court there could not have considered its effect on the safe harbor defense.

[5] Relatedly, since the launch of Autoplay in 2014, YouTube's annual revenues have skyrocketed from $4.2 billion in 2014 to $28.8 billion in 2021. Rolfe Winkler, YouTube: 1 Billion Viewers, No Profit, WALL ST. J., Feb. 25, 2015, https://www.wsj.com/articles/viewers-dont-add-up-to-profit-for-youtube-1424897967; Alphabet Inc. 2021 ANN. REP. 33 (Feb. 1, 2022).



Defendants produced a few linked documents but will not produce all linked internal Autoplay documents. *Second*, produced documents show that YouTube has analyzed important changes to its practices over time, for example to the process of counting views for videos queued up via Autoplay, but Defendants will not produce these analyses. *Third*, though Autoplay works differently across platforms, devices, or operating systems, Defendants have refused to produce documents sufficient to show how each iteration of Autoplay works since January 1, 2015. *Finally*, Defendants refuse to share their search parameters or to negotiate search terms and custodians.[6]

  RFP No. 45.  Plaintiffs seek in response to RFP No. 45 documents sufficient to show YouTube's policies concerning Autoplay, including changes and proposed changes to Autoplay policies **concerning** copyright and revenue considerations. Plaintiffs have provisionally limited this RFP to the production of PowerPoint presentations in order to evaluate whether further production would be necessary.  Defendants agreed to this limitation on an August 8, 2021 call held as a result of the meet-and-confer process ordered by the Court.  Dkt. 82.  However, on December 23, 2021, Defendants reneged on that agreement and claimed that they had agreed to produce documents concerning changes to policies and procedures only "to the extent that such changes were **driven by** copyright or revenue considerations, if any." Dec. 23, 2021 Ltr. from Defs. at 3.  Unsurprisingly, under this new drastically narrowed "compromise," Defendants stated they had "not located any such documents" (*id.*) and have produced no documents to date.

  Plaintiffs make this letter motion to hold Defendants to their side of the bargain.  Here, where Defendants have had 16 months to produce responsive documents and have refused to do so despite repeated requests, an order to compel that production is warranted.  *See Paul v. PG&E Corp.*, No. C 09-4751 RS (JSC), 2011 WL 13376925, at *2 (N.D. Cal. July 20, 2011) (granting motion to compel where defendant had agreed to produce hard drive and almost five months later refused to produce as promised); *see also Bd. of Trustees of the Sign, Pictorial & Display Indus. Welfare Fund v. PS Servs. Co., LLC*, No. 17-CV-02452-LB, 2018 WL 6990411, at *2 (N.D. Cal. Dec. 21, 2018) (granting motion to compel where defendant had failed to produce additional documents nearly three months after court-ordered deadline and despite numerous extensions of the discovery deadline); *Zamani v. Carnes*, No. C03-00852RMWHRL, 2008 WL 913324, at *2 (N.D. Cal. Apr. 2, 2008) (granting motion to compel where plaintiff had failed to substantially produce documents four months after being served with document requests).

  In short, Defendants are wrongfully withholding documents that are undisputedly relevant to both Plaintiffs' infringement claims and Defendants' failure to qualify for DMCA safe harbor.  Plaintiffs respectfully request that the Court compel production of the requested documents within 15 days.

---

[6] Defendants' failure to engage has put Plaintiffs in the untenable position of waiting for documents to be produced in order to determine whether seeking additional documents will be necessary, all in time to satisfy the July 5, 2022 close of fact discovery. Dkt. 98.  Plaintiffs request that, as part of an order requiring a fulsome production in response to these RFPs, the Court orders Defendants to share a description of their searches, including terms, custodians, and identifying all relevant non-custodial databases.



Respectfully submitted,

*/s/ Philip C. Korologos*

Philip C. Korologos

*Counsel for Plaintiffs Maria Schneider, Uniglobe Entertainment LLC, AST Publishing, Ltd., and Counterclaim Defendant Pirate Monitor Ltd.*

cc: All counsel via ECF