KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO  63101-1625

www.KoreinTillery.com

Carol O'Keefe

COKeefe@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

VIA ECF                                                                                             June 27, 2022

The Honorable James Donato, United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:**   ***Schneider et al v. YouTube, LLC et al.*, Case No. 3:20-cv-4423-JD (N.D. Cal.)**

Dear Judge Donato,

We write on behalf of Plaintiffs and the putative class. We respectfully submit this discovery letter brief to compel the production of data relating to YouTube's implementation of its repeat infringer policy, a prerequisite to Defendants' defense under the DMCA.[1] We certify that the parties met and conferred pursuant to the Court's Orders and the Local Rules.[2]

**I.      Relevance.**

In response to earlier litigation, YouTube created Content ID, a digital fingerprint technology that allows select copyright owners to provide digital files of their protected works, which are then screened against all videos previously posted to YouTube and future videos as they are uploaded. When a match is detected, indicating that someone has copied and uploaded an identified copyright-protected work, the copyright owner can choose to block the video; allow the video to be viewed and claim its advertising revenue; or allow the video to be viewed and track it. Google boasts that 99% of copyright claims made under Content ID are unchallenged.[3]

Plaintiffs contend that YouTube's implementation of its repeat infringer policy is unreasonable because it fails to assess strikes based on unchallenged Content ID matches; indeed, Defendants ignore all evidence of pervasive copyright infringement that is generated by its highly accurate monitoring system unless a subsequent DMCA takedown notice is filed. "Since January 2014, Content ID claims have outnumbered copyright takedowns by more than

---

[1] Plaintiff Schneider's First and Second Requests for Production ("RFP") Nos. 28 and 78 are Exh. A and B, and Defendants' Responses and Objections thereto are Exh. C and D.

[2] On June 21, 2022, Defendants filed a letter with the Court (ECF 145), contending that the Court's April 28 request that the parties submit an agenda rather than further dispute letters prior to the then-scheduled June 2 conference, precludes Plaintiffs from filing any additional dispute letters. Plaintiffs do not construe the Court's remarks as foreclosing all efforts to obtain discovery relief prior to the close of fact discovery on July 5, 2022.

[3] Over 99.4% of all automated Content ID claims are unchallenged and over 98% of all manual Content ID claims are unchallenged. GOOG-SCHNDR-00041492 at -501 (99.5% of all Content ID claims were undisputed in the first half of 2021); GOOG-SCHNDR-00052970 at -979 (same for the second half of 2021).

50 to 1."[4] However, YouTube does not assess copyright strikes against these videos that copyright holders automatically block, monetize, or track. Thus, even an uploader who has uploaded hundreds of infringing videos may never receive a copyright strike so long as the copyright-protected material infringed belongs solely to Content ID partners.

Plaintiffs are raising several challenges to the way YouTube implements its three-strike policy and the way it counts and assesses strikes against users and channels.  Among other issues, YouTube fails to administer its repeat infringer policy consistently across all uploaders, allowing some users to accumulate far more than three active strikes while others are completely exempt from termination. Finally, YouTube has recently allowed takedown notices to be retracted, or to be submitted on a "delayed" basis, preventing assessment of a strike if the uploader removes the video within seven days. These and other features allow repeat infringers to continue offending. Plaintiffs contend that if YouTube had reasonably and consistently applied its repeat infringer policy, millions—or perhaps hundreds of millions—of repeat infringers would have been assessed strikes and removed from the platform.

## II.      Requests and Responses

By letter motion dated April 2, 2021, Plaintiffs moved to compel Defendants to produce databases relating to Content ID and Takedown Notices, which are directly relevant to implementation of the repeat infringer policy. ECF 70. The Court ordered lead counsel to meet and confer regarding these requests. ECF 82. When no data had been produced, Plaintiffs renewed their motion to compel by letter dated October 29, 2021. ECF 95. In an effort to evaluate Defendants' claims of burden, Plaintiffs also propounded Schneider Rog. No. 15[5], asking Defendants to identify relevant databases, including those concerning Content ID, repeat infringers under the DMCA, implementation of the DMCA, and copyright management systems. In response, Defendants initially identified a Content ID database and five discrete tables touching on takedowns, strikes, suspensions, uploaders, and copyright tool applications.

Plaintiffs objected that no schema or field definitions had been provided, and pointed out that several of the tables had been prepared expressly for the litigation and were not maintained in the ordinary course. Plaintiffs again requested that Defendants identify all fields contained in their database tracking takedown notices, strikes, and suspensions. Defendants supplemented their response by supplying schema and samples from the following tables which Defendants assert are maintained in the ordinary course: Copyright Complaints, Copyright Complaint Videos, Copyright Counters, and Copyright Counter videos. However, Defendants failed to produce schema or sample data for tables maintained in the ordinary course regarding Copyright Strikes and Channel Suspensions. When lead counsel were unable to reach agreement, Plaintiffs provided a detailed letter setting forth their specific requests in reliance on the schema and samples that had been produced.

---

[4] *The difference between copyright takedowns and Content ID claims,* YouTube Help, https://support.google.com/youtube/answer/7002106?hl=en&ref_topic=9282678 (last visited June 23, 2022).

[5] Originally, Interrogatory No. 15 was incorrectly denominated Interrogatory No. 11.

In assessing the burden of production, Plaintiffs relied upon statements in Defendants' 2021 Copyright Transparency Report, as these public statements are Plaintiffs' only available sources of information regarding the number of Content ID claims or takedown notices. Since YouTube received over 1.4 billion Content ID claims in 2021, Plaintiffs requested only 14 of 32 fields in that database. However, YouTube received only 10 million takedown notices annually, and the provided schema of the related tables range from 8 to 29 fields, all of which bear on YouTube's implementation of its repeat infringer policy (and some of which are duplicative), so Plaintiffs requested all fields other than specified redacted fields to which Plaintiffs did not object. Where Plaintiffs objected to redactions, we explained our need for the unredacted data and offered to allow for consistent anonymization across the tables where appropriate.

Plaintiffs requested data from 2012 through 2021, inclusive, explaining that "the data is necessary to identify the class, assess the numbers of successful takedown notices and hence infringements and damages, and to evaluate the reasonableness of Defendants' implementation of their repeat infringer policy over time. Takedown notices and Content ID claims pre-dating the statute of limitations would have provided Defendants with knowledge regarding the infringement of specific works, the pervasiveness of infringing uploads generally, and the pervasiveness of videos on the YouTube platform that include copies of copyright-protected works." O'Keefe letter of June 4, 2022 to Richlin.

In a letter dated June 17, 2022, Defendants flatly refused to produce any data, claiming we had asked for "for far too much, far too late," and urging that Plaintiffs "re-consult the Court's Civility Guidelines on such matters and reconsider your approach." Richlin letter of June 17, 2022 to O'Keefe and Blaisdell. That same day, Defendants served amended responses and objections to contention interrogatories concerning Defendants' DMCA defenses, which included a selectively produced, randomized and anonymized sample of takedown data from a single week in support of their claims. Def. Am. Resp. to Schn. Rog. 4.

### III.   **Defendants Should Be Compelled to Produce.**

Without data relating to takedown notices, copyright strikes, channel suspensions, and copyright counter-notifications, Plaintiffs will be prejudiced not only in assessing the reasonableness of YouTube's repeat infringer policy, but also in identifying the putative class and infringing video URLs from which direct damages are derived. Aspects of this data were first requested on October 28, 2020. Plaintiffs have met and conferred with Defendants extensively, explained our need for this data in numerous written and oral communications, and have *twice* moved to compel production. Defendants have dragged out the meet and confer process and ultimately refused to produce the data Plaintiffs need, while simultaneously choosing to rely upon a discrete sample of data for a set of fields tailored to support YouTube's policies. We therefore request that the Court order production of requested fields from Defendants' Content ID database, and all fields from Defendants' Copyright Complaint, Copyright Complaint Video, Copyright Counter, Copyright Counter Video, Copyright Strike, and Suspension databases, narrowed by acceptable redactions, anonymizations, and date ranges as Plaintiffs have requested.

Sincerely,

Carol O'Keefe

*Attorney for Plaintiffs*