DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants.<br>_____<br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants.<br>_____ | CASE NO.: 3:20-cv-04423-JD<br><br>**DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY CASE SCHEDULE**<br><br>Judge: Hon. James Donato |

Discovery in this case has been ongoing in earnest for over 20 months. And it has been extensive. Now, just two weeks before the discovery cut-off, and without previewing their need for an extension at two recent conferences with the Court, Plaintiffs move to further extend discovery. The motion should be denied. Plaintiffs should not be rewarded or excused for their dilatory conduct or for their consistently overbroad, maximalist, and uncompromising approach to discovery—behavior that the Court has repeatedly cautioned against. Even now, Defendants have attempted to be accommodating, offering to extend the deposition schedule and even the discovery cut-off subject to limited conditions. But Plaintiffs insist they be permitted to continue discovery without restriction. That is unreasonable and inequitable.

As an initial matter, Plaintiff's motion is one the parties should have worked through without the need for troubling the Court. Plaintiffs contend they require more time "to resolve (or have the Court resolve) remaining discovery disputes" and to "to complete (and reopen) depositions." Mot. at 1, 5. But they admit that ***Defendants agreed to stipulate to an extension of the discovery deadlines for these purposes***: to allow the parties to complete their productions of documents responsive to outstanding requests and to allow the parties additional time to conduct depositions. Mot. 2 n.1. Indeed, when asked on June 9, Defendants made clear that, subject to the Court's approval, they would agree to extend the fact and expert discovery deadlines by 30 days, provided that the parties would not propound new discovery requests and provided the current deadline for class certification remained in place. *Id.* Plaintiffs never responded to Defendants' proposed compromise or offered an alternative. *Id.* They simply filed this motion, notwithstanding the requirements of Local Rule 6-3(a)(2). The motion could have and should have been avoided.

On its merits, the motion fails. There is no justification—much less good cause—for an extension of the case schedule writ large. The deadline for the parties to raise discovery disputes (July 12) remains three weeks away. And that deadline is no barrier if either side obtains relief from any such dispute resulting in the production of additional documents or necessitating further depositions. Regardless, there is no reason why Plaintiffs—or Defendants, for that

matter—should need additional time to resolve their various outstanding disputes. As Plaintiffs admit, many of their disputes already have been ongoing for close to two years. More time is not the solution.

The endurance of disputes is primarily a product of Plaintiffs' oppressive discovery campaign and refusal to compromise. Plaintiffs have propounded 131 document requests including more than 400 subparts. Kramer Decl. ¶ 2. But those numbers do not begin to tell the whole story. In their multitude of requests, Plaintiffs have demanded, for example, embedded metadata files from ***every video*** uploaded to YouTube over a six-year period (Plaintiffs' Document Request No. 55), and ***entire databases*** recording each of tens of millions of copyright notices received over a six-year period, including all manner of granular data associated with those notices (*see* Dkt. 75). Over many conversations, Defendants explained that these demands were unreasonable and disproportionate in a case brought by three plaintiffs whose claims suffer from a litany of defects, and who have identified allegedly infringing YouTube videos that collectively are associated with less than four thousand dollars in revenue. Plaintiffs were implacable. Nevertheless, Defendants approached Plaintiffs' demands in good faith, with a series of productions and offers to produce.[1] Defendants also went beyond the normal discovery process, agreeing to Plaintiffs' unusual demand that YouTube operate its Content ID system for themusing reference files for works that Plaintiffs claim to own—a months-long, complex process that is nearing completion. *See* March 10 Hr'g Tr., Dkt. 124, at 21.

Defendants have consistently devised discovery compromises grounded in the reality of Plaintiffs' claims. But Plaintiffs' demands have made that difficult. In just a one of a series of document requests served on the last possible day, for example, Plaintiffs demanded ***a decade's worth*** of company-wide data having no relationship to their infringement claims:

> Documents or data sufficient to show, on a monthly basis for the period January 1, 2012 through December 31, 2021, with respect to advertising on and use of the YouTube platform, Defendants' average cost per mille (CPM), average revenue per mille (RPM),

---

[1] For example, YouTube offered and produced the embedded metadata for hundreds of videos plaintiffs identified as allegedly infringing, copies of each such video, and numerous data samples, including hundreds of takedown notices and data showing how those notices were processed as copyright strikes under YouTube's repeat infringer policy.

average cost per impression, average advertiser yield, active users, total advertising revenue including payments for any advertiser tools or exchanges, total ad impressions, total number of impressions, views per user, monetization rate (percentage or number of videos with ads), cost of revenue / traffic acquisition cost, total views, average revenue per user (ARPU), hours viewed, Watchtime, number of content creators, average time spent on the site per user, average number of ads per page view/time, minutes per view, total internet users, videos on platform, channels on platform, YouTube penetration rate, YouTube premium subscriptions, unique impressions, unique visitors to the platform, unique publicly displayed videos on the platform, unique channels on the platform, conversion rate of impressions, time spent on the site per unique visitor, YouTube's Market Share, and percentage of users using other video sites.

In another volley that same week, Plaintiffs revived an unreasonable demand for the ***entirety*** of at least six different databases containing the details on millions of DMCA takedown notices, all data relating to those notices, and every video referenced in those notices.

Plaintiffs offer a handful of cherry-picked statistics in an attempt to craft a narrative of obstructionism (Mot. 4-5), but that is counterfactual. Defendants have made 32 separate document productions over 19 months from over 20 custodians; gathered and produced non-custodial documents from a dozen groups within the companies; produced hundreds of gigabytes of information (including 1300 videos), and provided detailed bi-weekly, detailed reports from the Content ID process. Defendants have also met and conferred with plaintiffs by phone or video conference for dozens of hours (on top of dozens of letters) in an effort to reach agreements. Kramer Decl. ¶ 2. Plaintiffs identify four categories of documents where they claim Defendants' productions have been deficient (Mot. 4), but Defendants have produced hundreds of documents within those categories.

Defendants have also gone to great lengths to accommodate the full slate of deposition witnesses that Plaintiffs waited to request until the final weeks of the discovery period. Kramer Decl. ¶¶4-8. Plaintiffs requested no depositions in this case for 21 months, until April 25, 2022, when they requested two of Defendants' employees. They requested seven more in late May with just six weeks remaining before the fact discovery cut-off.[2] Kramer Decl. ¶ 4. And they

[2] Plaintiffs complain about Defendants' service of amended disclosures on June 9, 2022, with a month still remaining in the discovery period (Mot. 5), but this amendment has been no barrier to orderly discovery within the current case schedule—Plaintiffs have in fact requested and

(continued...)

waited until May 27, 2022 to seek Defendants' corporate testimony, requesting a purported

"combined" 30(b)(6) deposition of both Google LLC and YouTube, LLC on five overbroad

topics in violation of the Court's Standing Order. For example:

> Google's direct and indirect revenues and profits from the YouTube platform, including any analyses, discussions, projections, or models of revenue or profit that consider revenue or profit per uploaded video, revenue or profit per video view, revenue or profit derived from Google's ad tech tools for advertisers including Display & Video 360 and Google Ads, revenue generated for videos played as a result of Watch Next or Autoplay. or the impact or potential impact of YouTube's copyright management tools on user traffic and views.

> and

> The Content ID System's matching process, including how reference files are created, how reference files are edited to exclude non-proprietary material, how reference files are compared to the pre-existing Content ID database of reference files, how reference files are matched to videos uploads, how matches are shown to Content ID partners, the manual review process, what data YouTube stores and tracks, past and present policies and procedures applicable to the matching process, the accuracy of Content ID's matching process, and the impact of additional reference files on the accuracy of Content ID's matching process.[3]

Kramer Decl. ¶ 5. Despite the artificially tight deposition window that Plaintiffs created (and

despite Plaintiffs' refusal of at least six different offers to extend the time for depositions),

Defendants have offered dates for all of the witnesses demanded, including corporate designees,

within the current schedule. *Id.* ¶ 8.

---

scheduled the depositions of two of the three new witnesses identified in those disclosures. Kramer Decl. ¶ 7. Despite Plaintiffs' protests (Mot.5 n.2), there is nothing unusual, much less objectionable, about the fact that some of the identified individuals were not the sole or primary custodians of relevant documents. That does not mean that documents were withheld or that Defendants failed to satisfy some agreement to produce.

[3] Plaintiffs later replaced these five topics with ten new topics in a revised notice. Kramer Decl. ¶ 6. And that was on top of nine (later ten) individual depositions that Plaintiffs demanded, including one Plaintiffs canceled the night before it was scheduled to begin. *Id.* Defendants accommodated Plaintiffs' deposition barrage by having individuals whose depositions are already noticed serve as corporate designees where possible. *Id.* But Plaintiffs' broad topics required several more designees whose individual depositions are not scheduled. At no point did Defendants suggest Plaintiffs demanded 19 depositions. *Id.* Rather, Defendants pointed out that in accordance with the Court's Standing Order on corporate depositions, Plaintiffs would need to limit the designees' testimony or drop individual witnesses to avoid exceeding their deposition limit. *Id.*

Plaintiffs have caused further extended delays in producing information to Defendants. In response to document requests propounded by Defendants immediately after AST and Uniglobe joined the case in November 2021, Plaintiff AST waited **seven months**, until June 1, 2022, to produce **a single document** and then produced only a smattering of heavily-redacted and illegible documents in Russian. Kramer Decl. ¶ 9. Plaintiff Uniglobe has been little better, waiting until last week to produce nearly half of its total documents. *Id.* And in response to Defendants' interrogatories, each Plaintiff responded as recently as two weeks ago that they were "premature." Kramer Decl. ¶ 10.

Plaintiffs have stalled in presenting their witnesses as well. Anticipating complications with Plaintiffs' reliance on individuals located in Russia, Defendants asked whether Plaintiffs would accept service of subpoenas for those individuals on February 3, 2022, with five months still remaining in the discovery schedule. Kramer Decl. ¶ 11. Plaintiffs waited **over 3 months**—until May 16, 2022—to respond to that ministerial request and then waited **another 5 weeks**, until June 20, 2022, to inform defendants that the witnesses and Plaintiff AST could only be made available for deposition in the United Arab Emirates for a three-day period over the July 4th holiday weekend. *Id.* Defendants have offered to stipulate to depose AST and its witnesses on a date when they can be made available in the United States, but Plaintiffs have not responded to that request. *Id.* Nor have Plaintiffs even indicated whether their witnesses could be produced within the 45-day extension period they seek. *Id.*

* * *

Defendants have repeatedly offered to seek the Court's approval for a few extra days or weeks to allow documents to be produced and depositions to be completed in this matter. But there is no basis for a wholesale extension of the schedule in a case that has already been pending for nearly two years. In light of Plaintiffs' dilatory behavior and the already protracted discovery period in this case, Plaintiffs' motion should be denied.

1                    Respectfully submitted,

2   Dated: June 27, 2022          WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

3

4                    By:         */s/ David H. Kramer*

5                           David H. Kramer

6                    DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698

7                    LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI

8                    Professional Corporation
650 Page Mill Road

9                    Palo Alto, CA 94304-1050

10                 Telephone: (650) 493-9300
Facsimile: (650) 565-5100

11                 Email: dkramer@wsgr.com
Email: mrees@wsgr.com

12                 Email: lwhite@wsgr.com

13                 BRIAN M. WILLEN (admitted *Pro Hac Vice*)

14                 WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

15                 1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022

16                 Telephone: (212) 999-5800
Facsimile: (212) 999-5801

17                 Email: bwillen@wsgr.com

18                 Attorneys for Defendants and Counterclaimants

19                 YOUTUBE, LLC and GOOGLE LLC

20

21

22

23

24

25

26

27

28