# KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO  63101-1625
www.KoreinTillery.com

Carol O'Keefe

COKeefe@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

July 29, 2022

Honorable James Donato
United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:**    *Schneider et al v. YouTube, LLC et al.*, **Case No. 3:20-cv-4423-JD (N.D. Cal.)**

Dear Judge Donato,

We represent Plaintiffs and the putative class. We submit this letter motion following the Court's directive to meet and confer regarding outstanding data demands. ECF 153. We certify that the parties have further met and conferred. In accord with the Court's instructions, Plaintiffs reduced their data requests by 97% and later offered sampling proposals responsive to Defendants' concerns. In contrast, Defendants retreated from an earlier offer to produce one month of takedown notices, ECF 70, p. 3, instead offering takedown notice data for a single day of the 5-year limitations period. When Plaintiffs responded to overbreadth objections by narrowing their requests, Defendants claimed that querying and collecting the data was too burdensome. When Plaintiffs offered to allay that burden by accepting data in its native form, Defendants said the request was overbroad. Defendants cannot have it both ways; they should either produce the relevant data in the native databases or perform the work required to isolate the requested fields. This Court's Standing Order decrees that "[a] burden, overbreadth or similar objection shall not be a valid reason for withholding requested, responsive materials actually known to counsel or the party."  Standing Order ¶ 6.

Defendants' claims of burden are belied by the data produced for the named plaintiffs. For Maria Schneider, Defendants produced takedown notices and the metadata and revenues associated with infringing videos. This motion seeks that same data for the class. While the Court's Scheduling Orders do not bifurcate discovery, ECF 98, 155, Defendants will not treat this case as a putative class action, calling Plaintiffs' requests "wildly disproportionate and overbroad in a case brought by three named plaintiffs who collectively identified fewer than 800 allegedly infringing videos." Gallo White letter of 7/25/22, pp. 2-3. Accordingly, in the alternative, Plaintiffs respectfully request an opportunity to renew this motion following a decision on certification.

## Takedown Notice Data (RFP 28)

To identify the class and prove damages, Plaintiffs need the following data for each successful takedown notice where the video was removed: the date of the notice, claimant information, copyright owner information, copyrighted work infringed, URL of the infringing video, and Google gross ad

revenue associated with the infringing video. With two exceptions, the parties have conceptually agreed on the information to be produced but remain at odds regarding the number of entries. Rather than the "tens of millions" of entries previously referenced, Defendants now state that there are "over 10 million" takedown notices for all class members during the relevant period. Based on 100-entry samples previously produced by Defendants, Plaintiffs' statistical expert, Charles Cowan, estimates that those 10 million entries would comprise less than 4 GB of data—a volume Cowan estimates would fit into the six figurative bankers' boxes referenced by the Court. 7/7/22 Tr. 30:15-16. Nonetheless, Plaintiffs trimmed their request even further by proposing a random sampling of 180 days, which Cowan estimated would comprise 2.7 million entries and consume 1.1 GB of data.

Defendants have not moved from their offer to produce takedown notices from a single day. Defendants assert that YouTube consolidated its data in 2021, and that sampling data predating that consolidation "would require manual aggregation and would almost certainly introduce duplications and inaccuracies, doubling if not tripling the effort involved in the production Defendants have offered." Gallo White Letter of 7/25/22, p. 4. But Defendants never quantified their burden, as required when existing databases are at issue. *In re Incretin-Based Therapies Products Liab. Litig.*, 721 Fed. Appx. 580, 583 (9th Cir. 2017) (denial of plaintiffs' motion to compel is an abuse of discretion where defendants failed to quantify burden). Moreover, the added burden of producing a 180-day sample as compared with a single day sample—just two to three times more effort for 180-fold more data—is outweighed by Plaintiffs' need for this data to estimate class damages throughout the time at issue.

Finally, Defendants have refused to provide revenue data for videos that infringe the works of the putative class—data that is essential to establishing actual damages. Plaintiffs also sought data on counter-notifications to define the class, establish the accuracy of takedowns once vetted by YouTube, and quantify the rarity of colorable fair use claims. Defendants refuse to produce this data and also refuse to constrain their legal arguments in a manner that would obviate Plaintiffs' need for such data. Plaintiffs request that Defendants be required to provide counter-notification data associated with the same sampling of takedown notices the Court directs Defendants to provide.

## Content ID Claims Data (RFP 78)

Plaintiffs will contend at trial that YouTube's Content ID system provides Defendants with knowledge of rampant copyright infringement. Every Content ID claim is proof that a user committed copyright infringement by uploading a video containing copyright-protected work without permission. Plaintiffs initially sought Content ID claims data to illustrate the pervasiveness of copyright infringement and to quantify the number of channels YouTube would have terminated had strikes been assessed for Content ID claims. Given the size of this database, Plaintiffs offered to forgo all Content ID data requests in return for specified statistics. In response to Defendants' concerns, Plaintiffs refined their requests to the following statistics for the United States only on August 1st of 2017, 2018, 2019, and 2020: (i) for each of the 10 channels having the most active Content ID claims on that date, the number of active Content ID claims; (ii) for each of the 10 YouTube Partner channels having the most active Content ID claims on that date, the number of active Content ID claims; (iii) the percentage of publicly displayed videos on the platform that are monetized by Content ID; and (iv) the percentage of videos that are monetized, blocked and tracked by Content ID. Defendants

rejected these requests, calling their data "too voluminous or too ephemeral" to produce, attacking relevance, and claiming that these narrowed requests are too late despite the Court's explicit order to submit narrowed proposals. Gallo White letter of 7/25/22, p. 2.

## Fair Use Related Data (RFP 67)

The Court was clear. If Defendants intend to raise fair use, Plaintiffs are entitled to data bearing on the frequency of such claims. 7/7/22 Tr. 18:20-23. Defendants offer only "the percentage of disputed Content ID claims for the year 2021 where the user selected fair use as the ground for the user's dispute of the claim." Gallo White letter of 7/15, p. 3. Indeed, Defendants characterized as "absurd" "Plaintiffs' suggestion that Defendants will be precluded from raising fair use" if they fail to provide additional data beyond this single Content ID statistic. Gallo White letter of 7/25/22, p.1. But Content ID claims are not the relevant metric; the class excludes those with Content ID access. To evaluate the impact of fair use on the class, Plaintiffs are entitled to data establishing the frequency and success of fair use claims under the DMCA takedown and counter-notification process.

Defendants have refused to produce any counter-notification data, perhaps because their sample data shows that YouTube rejects roughly 80% of counter-notifications—though the frequency of fair use claims cannot be discerned because Defendants redacted the counter_reason field that almost certainly logs fair use claims. At the very least, if Defendants refuse to produce additional counter-notification data, they should produce the redacted fields from their samples and be precluded from challenging any statistics drawn from those samples as non-representative.

## Copyright Management Information ("CMI") and Revenue Data (RFPs 47, 54, 55, 130)

While Plaintiffs were prepared to move to compel on CMI data and revenue metrics, the Court's order precluded such motions. ECF 150. Defendants' earlier production of metadata files revealed that the CLFN ("clip file name") field was populated with the name of Schneider's infringed work in 10 of the 727 metadata files produced. Since the CLFN field only appears when a clip file name is contained in the metadata, Plaintiffs requested that Defendants screen a 60 day sampling of uploaded video files and provide the related CLFN metadata and the infringing URL to quantify the size of the CMI metadata stripping class. Defendants refused to provide any data relating to CMI.

Plaintiffs' expert Hal Singer will opine on how network effects amplify the impact of infringing works on YouTube, allowing Defendants to increase revenues and profits from non-infringing conduct. Plaintiffs propounded timely RFPs on advertising metrics—metrics that Defendants sell to third parties. Plaintiffs last requested any metrics Defendants maintain in the ordinary course at the frequency they are generated. Plaintiffs urgently require monthly ad revenue (2021-22), monthly ads served and monetized (2017-22), and monthly total unique videos on YouTube (2017-22), as such data cannot be purchased from these third party sources. Defendants refused to produce any metrics.

Plaintiffs respectfully request that the Court order Defendants to produce all data requested herein or, in the alternative, order that Defendants are precluded from raising arguments that could be rebutted by this data at class certification and trial. Alternatively, Plaintiffs request the appointment of a magistrate or special master to resolve remaining discovery disputes, or that the Court permit further discovery as appropriate on a class-wide basis if a class is certified.

Honorable James Donato
July 29, 2022
Page 4

Sincerely,

Carol O'Keefe