# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126

O: 415.947.2000
F: 415.947.2099

August 22, 2022

**Via CM/ECF**

The Honorable James Donato
United States District Court
for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

> Re:   ***Schneider et al. v. YouTube, LLC et al.***, **Case No. 3:20-cv-04423-JD**
> **Response to Discovery Letter Brief (Dkt. No. 156)**

Your Honor:

After two years of extensive discovery, Plaintiffs are flouting the Court's Order closing fact discovery. *See* Dkt. No. 98. The Court could not have been clearer in denying Plaintiffs' various efforts to compel further discovery and extend the discovery cut-off last month: "Discovery is over. I'm not taking any more letters. We're done with this now. This has taken up way too much federal judicial time already." *See* Transcript of July 7, 2022 Proceedings ("Tr.") at 36:8-10; *see also, e.g.*, Tr. at 50:13-14 ("[T]here's no basis for extending discovery. You all have had plenty of time, two years, to get this thing wrapped up."); Tr. at 50:18-19 ("I am not going to reopen discovery. That's just not going to happen."); Tr. at 49:25 ("Discovery is closed . . . ."); Tr. at 29:24 ("Discovery is closed."); Tr. at 34:11 ("[D]iscovery is over now."). The Court reiterated in its minute order that "fact discovery is closed and will not be extended." Dkt. No. 153 at 2. And the following week, after the deadline to file motions to compel had passed, the Court issued an amended scheduling order that was unambiguous: fact discovery is "Closed." Dkt. No. 155 at 1.

A handful of final discovery demands from both parties were fully addressed by the Court on July 7 (*see* Dkt. No. 153), including a demand from Plaintiffs for vast amounts of takedown notice and Content ID claims data "relating to YouTube's implementation of its repeat infringer policy" (Dkt. No. 147). The Court denied Plaintiffs' demand, making clear that the data they sought was "just way too much." Tr. at 26:9-26:18. When Plaintiffs persisted, the Court allowed a very narrow exception to the discovery cut-off, directing the parties to meet and confer over a "modest and focused" sample of takedown notices (but not Content ID claims)— "something that you can put into six bankers boxes." Tr. at 26:9-33:7. The Court's ensuing written order was similarly limited: "For Dkt. No. 147 re repeat infringer policy, the request for the takedown notices is denied as disproportionately burdensome and overbroad. The parties will meet and confer by July 14, 2022, about a **modest** and **focused** subset of documents to be produced on this issue." Dkt. No. 153 at 2 (emphasis added).

**WILSON
SONSINI**

Despite the Court's instruction, Plaintiffs filed a letter brief setting out a smorgasbord of what they call "outstanding data demands."[1] They insist they are entitled to myriad categories of data beyond the takedown notices on which the Court authorized limited further discussion. *See* Dkt. No. 156. Plaintiffs' letter brief simply ignores the Court's Order. Dkt. No. 153. Their requests are untimely, improper, and vexatious and should be denied.

## Plaintiffs' Takedown Notice Demand Far Exceeds A "Modest And Focused Subset"

The only data demand on which the Court authorized a limited exception to the close of discovery was on takedown-notice data. On that lone issue, the Court denied Plaintiffs' demands, but authorized a meet-and-confer over a "modest and focused" sample. Plaintiffs' ensuing demands were anything but. Plaintiffs began by demanding **five years'** worth of takedown notices and associated data. That demand would have necessitated production of data on more than ten million takedown notices—**enough to fill a bank, not the six bankers boxes the Court envisioned**. The sheer volume, however, was not the only problem. As Defendants explained, Plaintiffs' demand encompassed data categories (including revenue data and information related to counter notifications) that YouTube simply does not store in a readily accessible format or that would require substantial engineering effort to locate and manually aggregate at anything remotely close to the scale Plaintiffs insisted on.

Defendants nevertheless offered as a compromise to provide data in connection with approximately 25,000 more takedown notices from multiple different sources. (And that in addition to multiple samples that Defendants have already produced. *See, e.g.*, Dkt. No. 159.) Plaintiffs rejected the offer, reiterating a demand for data from 180 different dates across a five-year period—amounting to millions of takedown notices and associated (but disparate) information. When YouTube again explained why their demands were still far too much, far too burdensome, and far too late, Plaintiffs ended the meet-and-confer by filing a letter brief asking this Court to compel compliance with their unreasonable requests. Plaintiffs later came back to demand the data Defendants had offered as a compromise, but only while continuing to press this Court to order YouTube to produce far more. YouTube has diligently worked to gather what it offered, and is prepared to produce it in resolution of Plaintiffs' letter brief. But Plaintiffs are entitled to nothing else.

## Plaintiffs' Demands Reach Far Beyond Takedown Notices

Plaintiffs treated the meet-and-confer over takedown notices as a discovery free-for-all, abandoning their letter brief and the Court's Order (i.e., on data regarding YouTube's implementation of its repeat infringer policy) and substituting a variety of requests with no connection to the single, still-open data discovery issue. Plaintiffs do not even pretend that the majority of their requests fall within the limited meet-and-confer that the Court authorized. The vast majority of the document requests they now raise (Request Nos. 47, 54, 55, 67, 130) appeared nowhere in Plaintiffs' prior letter brief (*see* Dkt. No. 147), and were not even mentioned

---

[1] Compounding the problem, Plaintiffs filed an unauthorized "supplemental" letter in support of their already-improper demands. *See* Dkt. No. 159.

**WILSON SONSINI**

at the July 7 status conference.[2] The time to seek relief for these matters and requests passed weeks ago. *See* Civil L.R. 37-3. Plaintiffs' new asks should be denied for this reason alone.

Although Plaintiffs' request for Content ID-related data (RFP No. 78) was noted in Plaintiffs' prior letter (*see* Dkt. No. 147), the Court ruled that this letter demanded "way too much" and repeatedly asked Plaintiffs' counsel to identify what focused discovery they actually wanted. *See, e.g.*, Tr. at 29:24-30:1 ("Discovery is closed. You're a little bit late. So just, what discrete set of things would you like me to consider?"). Plaintiffs chose to pursue requests for takedown notices and abandoned their demands for Content ID-related data. Unsurprisingly, the Court's order was consistent, making no mention of any further obligation or avenue to seek Content ID data. *See* Dkt. No. 153 at 2. That should be the end of the discussion, and of Plaintiffs' renewed request for such data now.

Plaintiffs' continuing asks for Content ID data fare no better on the merits. Plaintiffs claim they need to show the supposed "pervasiveness of copyright infringement" on YouTube and contend, with zero legal support, that "[e]very Content ID claim is proof that a user committed copyright infringement." Dkt. No. 156 at 2. Based on that, they demand data on **billions** of claims made through the system. But Plaintiffs' demand is flawed from conception. The overwhelming majority of Content ID claims result in a content claimant **authorizing the use** in return for payment (assuming the use is not already authorized in some other manner). Even in cases where a claimant requests that a video be removed from the service, the claimant offers no allegation of infringement, let alone proof of it. Moreover, and as YouTube explained when meeting and conferring, YouTube does not and cannot reasonably or reliably calculate the figures that Plaintiffs demand. Attempting to calculate them purely for purposes of litigation would generate an incalculable engineering burden that is disproportionate to the needs of this case, assuming it is even feasible. For this reason as well, Plaintiffs' demand for Content ID data should be denied.

Discovery is closed, the deadline to file motions to compel has passed, and it is time for this case to move forward. Plaintiffs' motion should be denied.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

_____/s/ Lauren Gallo White_____
Lauren Gallo White
Attorneys for Defendants and Counterclaimants
GOOGLE LLC and YOUTUBE, LLC

---

[2] As to Request No. 67 and Plaintiffs' request for "data bearing on the frequency of [fair use] claims," the Court's recent order already addressed this specific request. *See* Dkt. No. 153 at 1 ("For documents re the frequency of fair use claims, YouTube will produce documents to the extent that it intends to raise the frequency of claims as an issue for class certification or other proceedings. YouTube is advised that an inadequate production may bar a defense or argument based on frequency."). There is no reason to revisit this decision.