DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:   (650) 493-9300
Facsimile:   (650) 565-5100
Email:        dkramer@wsgr.com
              mrees@wsgr.com
              lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone:   (212) 999-5800
Facsimile:   (212) 999-5801
Email:        bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants<br><br>_____<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants.<br>_____ | CASE NO.:  3:20-cv-04423-JD<br><br>**YOUTUBE, LLC AND GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MARIA SCHNEIDER**<br><br>Date:        October 13, 2022<br>Time:       10:00 am<br>Courtroom:  11<br>Judge:      Hon. James Donato<br><br><br>**PUBLIC VERSION** |

YouTube, LLC and Google LLC's Motion
for Summary Judgment as to Plaintiff
Maria Schneider

Case No. 3:20-cv-04423-JD

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION .................................................................................1

STATEMENT OF REQUESTED RELIEF ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

STATEMENT OF ISSUES TO BE DECIDED....................................................................2

STATEMENT OF FACTS....................................................................................................3

ARGUMENT ......................................................................................................................10

    I.      YOUTUBE HAS MULTIPLE LICENSES TO SCHNEIDER'S WORKS..........10

           A.      Through Her Publisher, Schneider Granted YouTube a License to Use Her Entire Catalog of Compositions. ...................................................10

           B.      Under YouTube's Terms of Service, Schneider Granted YouTube a License to the Works-in-Suit that She and Her Agents Uploaded to YouTube. ..........................................................................................................14

    II.     SCHNEIDER'S CMI CLAIMS FAIL ON MULTIPLE GROUNDS. ................16

           A.      Schneider Failed to Identify Any CMI Removed by YouTube. ..............17

           B.      Schneider Failed to Establish that YouTube Acted with the Requisite Scienter. ...................................................................................18

           C.      Schneider Authorized YouTube to Remove Embedded Metadata. ..........21

    III.    HUNDREDS OF SCHNEIDER'S COPYRIGHT INFRINGEMENT CLAIMS AND HER § 1202(b) CLAIMS ARE TIME-BARRED. ......................22

CONCLUSION ...................................................................................................................24

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*,
    821 F.3d 297 (2d Cir. 2016) ........................................................................ 12, 13

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
    2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ...................................................... 14

*Cambridge Elecs. Corp. v. MGA Elecs., Inc.*,
    227 F.R.D. 313 (C.D. Cal. 2004) ......................................................................... 19

*Chem. Bank v. Affiliated FM Ins. Co.*,
    169 F.3d 121 (2d Cir. 1999) ................................................................................. 11

*Color Image Apparel, Inc. v. Jaeschke*,
    2022 WL 2643476 (C.D. Cal. June 7, 2022) ....................................................... 23

*Darnaa, LLC v. Google, Inc.*,
    2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ....................................................... 22

*Fahmy v. Jay-Z*,
    835 F. Supp. 2d 783 (C.D. Cal. 2011) ................................................................. 23

*Fantastic Fakes, Inc. v. Pickwick International, Inc.*,
    661 F.2d 479 (5th Cir. Unit B 1981) .................................................................... 11

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*,
    209 Cal. App. 4th 1118 (2012) ............................................................................ 22

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998) ..................................................................... 11, 12, 13

*Great Minds v. Office Depot, Inc.*,
    945 F.3d 1106 (9th Cir. 2019) ............................................................................. 10

*Harrington v. Pinterest, Inc.*,
    2021 WL 4033031 (N.D. Cal. Sept. 3, 2021) ................................................ 16, 20

*John Hancock Life Ins. Co. of New York v. Solomon Baum Irrevocable
    Fam. Life Ins. Tr.*,
    783 F. App'x 89 (2d Cir. 2019) ........................................................................... 11

*Lake Constr. & Dev. Corp. v. City of New York*,
    621 N.Y.S.2d 337 (N.Y. App. Div. 1995) ........................................................... 13

*Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*,
    460 N.E.2d 1077 (N.Y. 1984) .............................................................................. 12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
    660 N.E.2d 415 (N.Y. 1995) ................................................................ 12

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
    971 F.3d 1042 (9th Cir. 2020) ........................................................ 22, 23

*Phx. Techs., Ltd. v. VMware, Inc.*,
    2017 WL 1957042 (N.D. Cal. May 11, 2017) .................................... 19

*Sedlik v. Von Drachenberg*,
    2022 WL 2784818 (C.D. Cal. May 31, 2022) .................................... 20

*Stevens v. Corelogic, Inc.*,
    194 F. Supp. 3d 1046 (S.D. Cal. 2016) ...................................... 18, 21

*Stevens v. CoreLogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) ........................................ 16, 19, 20, 21

*United States Naval Inst. v. Charter Commc'ns, Inc.*,
    936 F.2d 692 (2d Cir. 1991) ............................................................ 11

*Viacom Int'l Inc. v. YouTube, Inc.*,
    718 F. Supp. 2d 514 (S.D.N.Y. 2010) .......................................... 3, 16

*Viacom Int'l. Inc. v YouTube, Inc.*,
    940 F. Supp. 2d 110 (S.D.N.Y. 2013) .............................................. 3

*Victor Elias Photography, LLC*,
    2022 WL 3330350 (11th Cir. Aug. 12, 2022) .............................. 19, 20

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
    705 F.2d 1515 (9th Cir. 1983) ........................................................ 23

**STATUTES**

17 U.S.C. § 102(a)(2) ........................................................................... 5

17 U.S.C. § 106(4) ............................................................................. 13

17 U.S.C. § 507(b) ......................................................................... 2, 22

17 U.S.C. § 1202 ........................................................... 2, 7, 8, 10, 16,
    17, 20, 21, 24

17 U.S.C. § 1202(b) .......................................................... 1, 16, 18, 19, 20,
    21

17 U.S.C. § 1202(c) ........................................................................... 16

**RULES**

Fed. R. Civ. P. 56 ........................................................................................................ 1

Fed. R. Civ. P. 37(c)(1) ............................................................................................... 19

**MISCELLANEOUS**

13 Williston on Contracts § 38:7 (4th ed.) ................................................................ 11

Dani Deahl, *Metadata is the Biggest Little Problem Plaguing the Music Industry*,
       The Verge, https://www.theverge.com/2019/5/29/18531476/music-industry-
       songroyalties-metadata-credit-problems ......................................................... 20

YouTube, LLC and Google LLC's Motion
for Summary Judgment as to Plaintiff
Maria Schneider                                        -iv-                    Case No. 3:20-cv-04423-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 13, 2022 at 10:00 a.m., Defendants-Counterclaimants YouTube, LLC and Google LLC ("YouTube") will move the Court for an order granting summary judgment against the claims of Plaintiff Maria Schneider.

### STATEMENT OF REQUESTED RELIEF

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, YouTube requests that the Court grant summary judgment against Plaintiff Maria Schneider's claims for copyright infringement and for violations of 17 U.S.C. § 1202(b).

### MEMORANDUM OF POINTS AND AUTHORITIES

Maria Schneider, a jazz composer, sued YouTube for copyright infringement and improper removal of her copyright management information ("CMI") in violation of 17 U.S.C. § 1202(b). Those claims, also asserted on behalf of a putative class of copyright holders throughout the world, are meritless for myriad reasons. Schneider's infringement claims fail because she licensed use of her works on YouTube in at least two different ways. Her CMI claims fail because she cannot make out a prima facie case and because YouTube was authorized to remove any supposed CMI. In addition, much of her case is time barred.

In 2008, Schneider gave her publisher, Modern Works Music Publishing ("MWP"), the exclusive right to license her compositions. MWP then granted YouTube a blanket license to use on YouTube all works it controlled—including Schneider's entire catalog of compositions. By itself, the MWP license disposes of Schneider's case. But YouTube has additional licenses to Schneider's works. For example, under the YouTube Terms of Service Agreement ("TOS"), Schneider and her agents separately licensed YouTube to use any content they uploaded to YouTube, including Works-in-Suit.

Schneider's attempts to evade these licenses are specious. For the MWP license, she claims her publisher did not obtain her specific consent before licensing her works to YouTube. Even assuming that were true, it makes no difference because Schneider's consent was not a condition precedent to MWP's right to license her works. The license is valid and dispositive. And as to the other license, Schneider has said nothing at all.

Schneider also has charged YouTube with improperly removing CMI that she claims may have been buried in the metadata of videos uploaded by other users to YouTube.  But Schneider has refused, despite repeated requests, to identify the supposed CMI or the videos allegedly containing it.  Even putting that aside, she cannot demonstrate that YouTube's removal of any CMI was without the requisite "authority of the copyright owner or the law," because her publisher granted YouTube blanket rights to reformat videos containing her works.  Further, Schneider has failed to demonstrate the requisite scienter for a § 1202 claim.  Put simply, Schneider cannot show that YouTube intentionally removed CMI, much less that it did so knowing (or with reason to know) that such removal would foment infringement.

Finally, Schneider faces insuperable time bars for many of her infringement claims, and for her § 1202 claim as a whole.  When Schneider created her YouTube account and uploaded videos to YouTube, she agreed to YouTube's TOS, including its provision that any claim relating to YouTube's services be brought within one year of accrual.  Beyond that, the governing statute of limitations requires her claims be brought within three years of accrual (17 U.S.C. § 507(b))—that is, when a plaintiff has actual or constructive knowledge of the claims.  Schneider admits to having actual knowledge of dozens of her infringement claims years before she sued, and discovery shows she had constructive knowledge of even more.  She also had actual knowledge of YouTube's supposed § 1202 violations more than three years before she sued.

Schneider had no cause to bring claims in her own right, much less on behalf of a putative class.  The Court should summarily dispose of them and enter judgment against her.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Schneider's copyright infringement claims are barred by YouTube's MWP license and the license Schneider and her agents agreed to when agreeing to YouTube's TOS.

2.      Whether Schneider's CMI claim is barred by her failure to come forward with evidence that YouTube removed her CMI, that YouTube acted with the required scienter, and that any such removal was unauthorized.

3.       Whether Schneider's claims are time-barred by the one-year contractual

limitations provision in YouTube's TOS or by the three-year statute of limitations.

**STATEMENT OF FACTS**

*The YouTube service*.  Since its founding in 2005, YouTube has provided a platform for

users to share their video creations with the world.  Today, YouTube serves as an unparalleled

medium for original creative expression, offering a worldwide audience access to an

extraordinary diversity of content.

YouTube has devoted substantial resources to ensuring that copyrighted material

appearing on its service is authorized by copyright holders.  Declaration of Joanne Suk ("Suk

Decl.") ¶ 3.  YouTube has obtained blanket licenses from thousands of major copyright holders,

including major record labels, music publishers, television studios, and sports leagues.  *See, e.g.*,

Suk Decl. ¶ 3.  In the main, these licenses allow for broad use of massive libraries of copyrighted

content throughout the YouTube service.  *See, e.g.*, Suk Decl. ¶ 3.  In addition, ordinary users

may upload and share their videos via the service at no cost, thereby granting YouTube and other

users a license to the copyrighted material in their videos and representing that they have the

rights to do so.  *See, e.g.*, Declaration of Chenyuan Zhu ("Zhu Decl.") ¶¶ 7-8.

YouTube recognizes that despite its efforts to host only authorized material on the

service, users sometimes upload videos that they have no rights to share.  To address this,

YouTube complies in all respects with the safe harbor provisions of the DMCA, enabling

copyright holders to quickly and efficiently direct YouTube to remove allegedly infringing

materials from the service.  *See* Zhu Decl. ¶ 2; *see also, e.g.*, *Viacom Int'l Inc. v. YouTube, Inc.*,

718 F. Supp. 2d 514, 516 (S.D.N.Y. 2010), *aff'd in relevant part by Viacom Int'l, Inc. v.*

*YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012); *Viacom Int'l. Inc. v YouTube, Inc.*, 940 F. Supp. 2d

110, 122 (S.D.N.Y. 2013) (granting summary judgment to YouTube against copyright

infringement claims brought by leading studio and putative class of copyright holders; DMCA

shields YouTube from all such claims based on materials uploaded to the service by users).  But

YouTube goes well beyond the DMCA and has invested hundreds of millions of dollars in

YouTube, LLC and Google LLC's Motion          -3-          Case No. 3:20-cv-04423-JD
for Summary Judgment as to Plaintiff
Maria Schneider

cutting-edge technologies to assist copyright holders in protecting against the unauthorized use of their work on the service.  Zhu Decl. ¶¶ 3-6.

*The YouTube Terms of Service*.  By creating a YouTube account, users gain access to a host of YouTube services at no charge, including video hosting, a global audience for their content, social networking and analytics capabilities, and access to ground-breaking copyright management tools.  Zhu Decl. ¶ 7; *see also* Declaration of Paul N. Harold ("Harold Decl.") Ex. 21 ("Schneider Dep. Tr.") 104:3-19 (testifying that YouTube helped her "to reach an audience after COVID" and did so for "free"); Harold Ex. 22 ("Le Claire Dep. Tr.") 85:16-86:9, 90:13-16 (testifying that YouTube provided free video hosting services and "another way to get more people to learn about" Schneider).  Users can also make money from videos they upload.  *See, e.g.*, Le Claire Dep. Tr. 123:3-18 (acknowledging a $23.86 payment from YouTube to Schneider under a YouTube advertising program).  When creating an account or uploading a video, a user must assent to YouTube's TOS in exchange for access to these free services and tools.  Zhu Decl. ¶ 7.  Schneider agreed to the TOS on several instances, including when she created her "Maria Schneider Official Page" account in 2012.  Schneider Dep. Tr. 77:22-78:2 ("Q. In creating this YouTube account, you agreed to YouTube's terms of service; right?  A. I don't recall the terms of service. But, yes.").

Users agreeing to the TOS grant YouTube extensive rights to any content they upload. This TOS license grants both YouTube and other users a license to broadly use such content throughout the service.  *See* Zhu Ex. 1 § 6(C).  Users also agree to a bilateral clause requiring that any claims relating to the service be brought within one year of accrual.  *Id.* § 14.[1]

*Schneider's Works-in-Suit*.  Schneider asserts copyright infringement claims against YouTube based on 78 works ("Works-in-Suit").  Dkt. 99 ("FAC") ¶ 60 & n.7; *see* Dkt. 98 at 1 (requiring FAC to "identify[] all copyrighted works").  Seventy-six of these Works-in-Suit are

---

[1] The TOS provision, entitled "Limitation on Legal Action," provides: "YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED."  Zhu Ex. 1 § 14.

musical compositions; accordingly, her copyright covers the music (*e.g.*, as reflected in sheet music) but not a sound recording.  *See* 17 U.S.C. § 102(a)(2).  Schneider's two remaining Works-in-Suit, *Concert in the Garden* and *Vikings Anthem*, are registered as sound recordings. Schneider has not identified any alleged infringements of these sound recordings from within the statute of limitations period.  *See infra* at 22-24 & n.8.

***Schneider's Administration Agreement***.  Songwriters typically contract with music publishers to administer their compositions.  Suk Decl. ¶ 2.  In 2008, Schneider contracted with ArtistShare Music Publishing LLC, entering into an Administration Agreement.  As set forth in that agreement and as described by ArtistShare's Chief Operating Officer, Dan Coleman, Schneider appointed ArtistShare as "the sole and exclusive Administrator" of her musical compositions.  *See* Declaration of Dan Coleman ("Coleman Decl.") ¶¶ 2-3 & Ex. A ("Administration Agreement" or "Admin. Agreement") § 6.  Through this Agreement, Schneider granted ArtistShare "the exclusive right" to "license the performance and use of the Compositions" throughout the world.  Admin. Agreement §§ 5-6.  It also provided the exclusive worldwide right "to execute in [Schneider's] name any licenses and agreements affecting the Compositions, including, but not limited to, licenses for mechanical reproduction, public performance, synchronization uses, the use of Compositions in connection with merchandising activities, and all so-called 'digital' or 'new media' uses of the Compositions."  Admin. Agreement §§ 5-6.  The licensed Compositions included "all musical compositions, written or composed prior to or during the Term hereof, in whole or in part by [Schneider], or owned or controlled, directly or indirectly, by [Schneider] or any firm or corporation affiliated with or related to [Schneider] or which [Schneider] may form (the "Compositions")."  Admin. Agreement § 2; *see also* Coleman Decl. ¶ 3.  Both Coleman and Schneider have confirmed that the Administration Agreement has not been terminated and remains in effect.  Schneider Dep. Tr. 130:17-22; Coleman Decl. ¶ 3.

In short, the Administration Agreement gave ArtistShare the "exclusive right" to license Schneider's compositions.  Admin. Agreement § 6.  ArtistShare separately covenanted that it would "notify" Schneider and "obtain [her] prior written approval" for licenses it granted in most

cases.  Admin. Agreement § 7.  However, it would "deem" that Schneider consented if she did

not respond to a request for approval within 10 business days.  Admin. Agreement § 7.  Licenses

could also be granted without Schneider's prior written approval:  Section 7 expressly

acknowledged that the publisher might not "obtain [Schneider's] consent in each instance."  *Id.*

And the parties agreed that a failure to obtain consent would breach the covenant only where it

was intentional.  Admin. Agreement § 7 ("any inadvertent failure to timely obtain [Schneider's]

consent will not be deemed a breach of this Agreement.").

Coleman is also the Co-Founder and President of MWP—one of ArtistShare's two

members and its 50% owner.  Coleman Decl. ¶¶ 1-2.  He personally has worked with Schneider

for the past fourteen years, since her Administration Agreement went into effect.  Schneider Dep.

Tr. 131:8-11.  Coleman has explained that ArtistShare legally assigned all its duties to MWP

under § 14A of the Administration Agreement.  Coleman Decl. ¶ 4.  And under the assignment,

MWP acts as "the worldwide subpublisher" for ArtistShare with respect to Schneider's

compositions.  Coleman Decl. ¶ 4.  Schneider acknowledges that her works "are administered by

ModernWorks."  Harold Ex. 3 (Schneider stating that her works "are administered by

ModernWorks"); Harold Ex. 4 (Schneider referring to "Modern Works" as "[m]y publishing

administrator"); Schneider Dep. Tr. 131:8-11.  And she directs licensing inquiries to MWP.  *E.g.*,

Harold Ex. 5; Harold Ex. 6.

**MWP's Publishing Licensing Agreement with Google**.  In 2014, MWP licensed to

Google, YouTube's parent company, all musical compositions that MWP "owned or controlled"

for use on YouTube.  Suk Ex. 1 ("Publishing Licensing Agreement" or "PLA") Ex. A (definition

for "Publisher Composition").  This Publishing License Agreement granted to Google a

"license[] to (i) Store, Reformat, make On-Demand Streams of, make Conditional Downloads of,

and Display Publisher Compositions as have been embodied in (A) User Videos. . . and to make

available Publisher Compositions on and through the Google Services and Embedded YouTube

Video Players" and to "(ii) reproduce, distribute, and prepare derivative works (including

synchronization rights) based upon the Publisher Compositions."  PLA § 2(a).

Schneider's compositions (including those constituting Works-in-Suit) are among the many thousands of compositions that MWP licensed to YouTube under the PLA, as MWP has "control of the underlying compositional copyright[s]" in Schneider's works through the Administration Agreement.  *See* Admin. Agreement §§ 5-6; Coleman Decl. ¶ 4.

MWP's control of Schneider's works was manifest in more than just its written authorization from her.  It was also demonstrated by MWP's use of YouTube's Content ID system on Schneider's behalf, as provided for in the PLA.  *See* Coleman Decl. ¶¶ 5-8.  Content ID utilizes proprietary technology to allow eligible users to "claim" and automatically track, block, and/or share revenue associated with third-party user videos that they believe incorporate their content.  *See* Harold Ex. 7.  MWP used Content ID in connection with multiple Schneider musical works.  Coleman Decl. ¶ 7 & Ex. C (discussing delivery of Schneider works to YouTube for use in Content ID). Schneider "kn[ew]" that MWP "ha[s] a deal" with YouTube. Coleman Decl. ¶ 6 & Ex. B.  Schneider regularly received pass-through royalties from MWP that YouTube paid MWP for the monetization of Schneider's works on the platform.  *See* Coleman Decl. ¶ 8 & Ex. D.  And she was well aware of her ability to use Content ID under the PLA—she simply chose not to exercise that ability in some instances and for some works.  *See* Harold Ex. 8 (███████████████████████████████████████████████████████████████); Coleman Decl. ¶ 6.

***Schneider's lawsuit***.  On July 2, 2020, Schneider and Pirate Monitor LTD, a British Virgin Islands company purporting to own copyrights in Hungarian films, sued Defendants for copyright infringement based on the presence on YouTube of videos allegedly containing their copyrighted content.  Dkt. 1.  They also charged YouTube with violations of 17 U.S.C. § 1202 based on YouTube's supposedly improper removal of CMI from unidentified videos. Plaintiffs purported to bring the action on behalf of themselves and two sprawling putative classes of copyright holders around the world.

Pirate Monitor dismissed its claims with prejudice (*see* Dkt. 66 (dismissal)) shortly after YouTube uncovered proof of a wide-ranging fraud it orchestrated on the service (*see* Dkt. 60 (amended counterclaims)), and after Pirate Monitor acknowledged it did not own at least one of

the copyrighted works it had asserted.  *See* Harold Decl. ¶ 27 & Ex. 24 (email from plaintiffs re "error" in complaint).  Two additional plaintiffs subsequently joined the lawsuit, AST Publishing Ltd., a Russian audio book publisher, and Uniglobe Entertainment, which purports to own copyrights in three motion pictures.  Although their claims are not the subject of this motion, it is plain they suffer from dispositive flaws of their own, including admitted licenses of their Works-in-Suit to YouTube.  *See* Harold Ex. 25 at 9-14; Harold Ex. 26 at 6-7.

**Schneider's CMI claim.**  Schneider has done virtually nothing in discovery to support her unusual § 1202 removal-of-CMI claim.  Such claims are generally directed against parties that remove prototypical CMI like visible watermarks or copyright notices from works in order to facilitate infringing sales.  Here, Schneider contends certain unidentified metadata embedded in the original video files that users upload might contain details that ***might, in theory,*** qualify as CMI for her musical compositions, even though that metadata is not visible in the video itself.  Per her claim, when YouTube transcodes the original files to make the user videos accessible, it fails to retain the embedded file metadata, including whatever CMI that metadata may have contained.  FAC ¶¶ 33, 83.

In response to a YouTube interrogatory, Schneider did not identify a single video containing embedded metadata constituting her CMI.  Even for videos Schneider directed to be uploaded to YouTube, she did not put CMI in the metadata.  *See, e.g.*, Schneider Dep. Tr. 215:12-19; Le Claire Dep. Tr. 191:15-20; Harold Ex. 23 ("Bornheimer Dep. Tr.") 140:19-20.  Further, ***even if*** any videos actually contained Schneider's CMI in the embedded metadata, Schneider offered no evidence that YouTube knew such CMI was there or intentionally removed it without authorization, much less that it did so knowing or with reason to know that such removal would foment infringement of her copyrighted works.  *See* Harold Ex. 10 at 16-22.

**Schneider's discovery of alleged infringements and CMI removal**. Schneider did not identify a single alleged infringement of a copyright in her complaint. After a series of discovery disputes, the Court ordered Schneider to provide "a final list of [alleged] infringements" to YouTube by February 25, 2022.  Dkt. 98.  On that date, she provided a list of 381 alleged

1  infringements, identifying by URL the videos on the YouTube service that she contended

2  infringed the Works-in-Suit that she had listed in her complaint.  Harold Ex. 1.

3      YouTube served an interrogatory asking Schneider to provide the date she first learned of

4  each infringement and to detail how she became aware of each infringement.  Harold Ex. 12 at 4-

5  8.  After several amendments and corrections to her response, Schneider provided dates "on or

6  shortly before" which she "became aware of the alleged infringements."  *Id.*  These dates ranged

7  from December 10, 2007 (more than twelve years before Schneider sued) to February 23, 2022

8  (twenty months after she sued).  *Id.*; *see also* Harold Decl. ¶ 3, Harold Ex. 2 (chart cataloging

9  381 alleged infringements and dates of discovery for each).  Schneider said that she and her

10  agents discovered the alleged infringements by "conducting searches for unauthorized copies of

11  her work on YouTube using her name and/or the titles of the Works in Suit or by being alerted to

12  the video by a third party."  Harold Ex. 12 at 8.

13      Schneider admitted that she was actually aware of eighty-five alleged infringements of

14  the Works-in-Suit that remain in the case before July 2, 2019—more than one year before she

15  filed suit on July 2, 2020—and forty-nine alleged infringements before July 2, 2017—more than

16  three years before she sued.  *Id.*[2]  Schneider also had constructive knowledge of hundreds more

17  of the alleged infringements since she could have discovered them at or near the date of upload

18  using the same search functionality that she ultimately used to discover them (*see id.*), or by

19  using other YouTube copyright management tools available to her, including Content ID access

20  through her publisher, Modern Works (*see* Coleman Decl. ¶ 6).  Exercising reasonable diligence,

21  Schneider would have discovered 328 alleged infringements by July 2, 2019, and 261 by July 2,

22  2017.  Harold Ex. 2 at Col. F, H.  Instead, she chose to accept royalty payments for uses of her

23  works on YouTube (*see* Coleman Decl. ¶ 8 & Ex. D).  She now attempts to recharacterize those

24  same uses of her works as infringements, rather than as licensed uses that earned her money.

---

25

26      [2] Twenty-eight of Schneider's seventy-eight Works-in-Suit were not registered before the
case was filed, and Schneider agreed to but has not yet dismissed these twenty-eight Works-in-

27  Suit and the corresponding seventy-nine alleged infringements.  Harold Decl. ¶¶ 25-26.  Many of
these alleged infringements are time-barred too; Schneider admits to being aware of thirty-five of

28  the seventy-nine alleged infringements by July 2, 2019, and twenty-four by July 2, 2017.  Harold
Ex. 12 at 4-8; Harold Ex. 2 at Col. E, G.

Schneider's CMI claim also comes years after the fact.  While Schneider has not identified any evidence that YouTube removed CMI from her works, she has known the facts that form the basis for this claim since at least March 2017, when she submitted comments about the issue to the U.S. Copyright Office.  Harold Ex. 13.  Those comments purport to describe how YouTube was supposedly ███████████████████████████████  *Id.*  Her theory back then, about the general removal of metadata buried in video files, is the same as the one she has asserted in this case filed more than three years later.  *Compare id.* at 5, *with* FAC ¶ 33.

## ARGUMENT

## I.   YOUTUBE HAS MULTIPLE LICENSES TO SCHNEIDER'S WORKS.

It is elementary that a copyright infringement claim "fails if the challenged use of the work falls within the scope of a valid license."  *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019).  At least two different licenses apply here: a blanket catalog license from Schneider's publisher; and a license in the YouTube TOS to works Schneider authorized to be uploaded to YouTube.  *See* Harold Ex. 2 at Col. C, D (cataloging licenses applicable to each of Schneider's 381 alleged infringements).

### A.   Through Her Publisher, Schneider Granted YouTube a License to Use Her Entire Catalog of Compositions.

Schneider's infringement claims for seventy-six of her seventy-eight Works-in-Suit (the musical compositions) fail because Schneider's publisher, MWP, licensed them to YouTube.  MWP licensed to YouTube all compositions that it "owned or controlled."  PLA, Ex. A (definition for "Publisher Composition").  And MWP controlled "all [of Schneider's] musical compositions" by virtue of its role as "the sole and exclusive Administrator" of the compositions, its broad "exclusive" rights to license them, and its right "to prosecute, defend, and settle all claims and actions with respect to" them.  Admin. Agreement §§ 2, 6, 17; *see also* Coleman Decl. ¶¶ 3-8; Coleman Ex. B (2016 email from D. Coleman stating that MWP received revenue from YouTube because of "our control of the underlying compositional copyright" in Schneider's works).  New York law controls the agreement between Schneider and MWP.  Admin. Agreement § 20.

YouTube, LLC and Google LLC's Motion
for Summary Judgment as to Plaintiff
Maria Schneider
-10-
Case No. 3:20-cv-04423-JD

1    Schneider alleges that YouTube "reproduced, distributed, displayed, and publicly

2  performed" the Works-in-Suit by streaming videos containing the Works-in-Suit to users.  FAC

3  ¶ 113.  But the Publishing License Agreement gave YouTube a blanket license to "Store,

4  Reformat, make On-Demand Streams of," "display," and otherwise "make available Publisher

5  Compositions on and through the Google Services" including in "User Videos."  PLA § 2(a).

6  That broad license covers all the allegedly infringing conduct that could be attributed to

7  YouTube with respect to the alleged infringements in this case, and bars all of Schneider's

8  infringement claims, whether direct or secondary.

9    Schneider has contended that YouTube's license is not valid because MWP did not

10  obtain Schneider's prior written consent to grant YouTube the license that it did.  *See* Dkt. 91 at

11  8.  As an initial matter, her objection rings hollow since Schneider has known of the YouTube

12  license and accepted its benefits for years.  *See* Coleman Decl. ¶¶ 6-8; Harold Ex. 8; *accord John*

13  *Hancock Life Ins. Co. of New York v. Solomon Baum Irrevocable Fam. Life Ins. Tr.*, 783 F.

14  App'x 89, 90 (2d Cir. 2019) (principal ratifies contracts of purported agent through knowing

15  silence and acceptance of benefits); *Chem. Bank v. Affiliated FM Ins. Co.*, 169 F.3d 121, 128 (2d

16  Cir. 1999) (same), *vacated & superseded by* 196 F.3d 373 (2d Cir. 1999).  But ratification aside,

17  Schneider's objection to the license fails because she cannot show that her consent was a

18  condition precedent on her publisher's power to grant the license, rather than a mere covenant

19  her publisher made to her.  *See Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998); 13 Williston

20  on Contracts § 38:7 (4th ed.) ("A condition precedent is either an act of a party that must be

21  performed or a certain event that must happen before a contractual right accrues or a contractual

22  duty arises.").  Only a condition on MWP's licensing power could impact the validity of the

23  license it granted YouTube.  *Cf. United States Naval Inst. v. Charter Commc'ns , Inc.*, 936 F.2d

24  692, 695 (2d Cir. 1991) (noting that "'mere breach of covenant may support a claim of damages

25  for breach of contract but will not disturb the remaining rights and obligations under the license

26  including the authority to use the copyrighted material'" (quoting *Fantastic Fakes, Inc. v.*

27  *Pickwick International, Inc.*, 661 F.2d 479, 483-84 (5th Cir. Unit B 1981)).

28

YouTube, LLC and Google LLC's Motion
for Summary Judgment as to Plaintiff
Maria Schneider                                    -11-                     Case No. 3:20-cv-04423-JD

A covenant is "a manifestation of intention to act or refrain from acting in a specified way." *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 460 N.E.2d 1077, 1081 (N.Y. 1984) (citation omitted).  A condition precedent, on the other hand, is "an act or event ... which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) (citation omitted).  New York law presumes "that terms of a contract are covenants rather than conditions." *Graham*, 144 F.3d at 237.  "Conditions precedent are not readily assumed" and must be "expressed in **unmistakable language**." *Bank of N.Y. Mellon Tr. Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (emphasis added).  Any "ambiguous provisions" must "be construed as promises rather than conditions precedent." *Id.* at 306 n.8.

Schneider's consent was not a condition precedent to the licenses her publisher granted. Schneider's argument relies on Section 7 of the Administration Agreement, which provides:

> 7. YOUR CREATIVE CONTROL.  Notwithstanding anything to the contrary expressed or implied herein, we must notify you and obtain your prior written approval for any license we grant on your behalf.  It is agreed and understood that either you or your designated agent, who you may designate in writing to us from time to time ("Designated Agent") can give consent under this §7. We will deem to have received your consent under this §7 if, after ten (10) business days from the receipt of our request, we have not received a reply from you or your Designated Agent.  Notwithstanding anything contained in this §7, you agree and understand that copyright laws and common business practices outside of the USA might hinder or preclude Administrator's efforts to obtain your consent in each instance.  Administrator agrees to require all subpublishers to comply with the terms of this §7 to the extent possible in their respective territories, but any inadvertent failure to timely obtain your consent will not be deemed a breach of this Agreement.

Admin. Agreement § 7.

This provision cannot be read to impose a condition precedent on MWP's power to grant licenses for several reasons:  ***First***, the provision expressly acknowledges that the publisher might ***not*** "obtain [Schneider's] consent in each instance," recognizing that licenses granted without Schneider's prior consent would still be valid.  ***Second***, the provision recognizes that "any inadvertent failure to timely obtain [Schneider's] consent will not be deemed a breach of this Agreement."  In other words, the parties specifically agreed that the provision was a covenant, rather than a condition, enforceable via a claim for breach in certain circumstances.

1    ***Third***, the Administration Agreement "does not caption or otherwise label" Schneider's consent

2    "as a 'condition precedent'" to the grant of licenses, "as one might expect sophisticated parties to

3    do if that were their intent."  *See Bank of New York Mellon Tr. Co.*, 821 F.3d at 305.  Nor do

4    Sections 6 or 7 "employ any recognized 'linguistic conventions' of condition—such as 'if,' 'on

5    condition that,' 'provided that,' 'in the event that,' and 'subject to.'"  *See id.*

6         Schneider's failure to employ "the explicit language of condition is particularly

7    significant" with respect to the licensing powers she granted because elsewhere in the

8    Administration Agreement she "employed precisely such language to establish undoubted

9    conditions precedent."  *See id.* at 306.  For example, Section 16 requires indemnification for

10   claims, "***provided that*** such claims are reduced to final, adverse judgment."  Admin. Agreement

11   § 16 (emphasis added). In light of this language, and New York law's presumption against

12   conditions precedent (*see Bank of N.Y. Mellon Tr. Co.*, 821 F.3d at 305), the Administration

13   Agreement cannot be read to impose one.

14        In sum, the plain language of the Administration Agreement demonstrates as a matter of

15   law that any failure to obtain written pre-approval does not affect MWP's ability to grant

16   licenses to third parties.  Even assuming that Schneider's publisher had a contractual obligation

17   to obtain Schneider's consent (and failed to do so), that failure would be, at most, a "breach of

18   contract" by the publisher; it would not invalidate the licenses the publisher granted to third

19   parties or turn licensees like Defendants into copyright infringers.  *Graham*, 144 F.3d at 236.

20   Given this unambiguous provision, the Court should grant judgment against Schneider's claims

21   for infringement of her seventy-six musical compositions based on the license in the MWP

22   Publishing License Agreement.  *See Lake Constr. & Dev. Corp. v. City of New York*, 621

23   N.Y.S.2d 337, 338 (N.Y. App. Div. 1995) (noting the "well settled" rule "that, on a motion for

24   summary judgment, the construction of an unambiguous contract is a question of law for the

25   court to pass on"); Harold Ex. 2 at Col. C (identifying the 379 infringement claims licensed

26   under the PLA).[3]

27   _____

28        [3] Schneider asserts YouTube infringed her exclusive right to "publicly perform[]" her
     compositions.  *E.g.*, FAC ¶ 114 (citing 17 U.S.C. § 106(4)).  While that claim is covered by the
     (continued...)

1

**B.**    **Under YouTube's Terms of Service, Schneider Granted YouTube a License**

2

**to the Works-in-Suit that She and Her Agents Uploaded to YouTube.**

3

Schneider's infringement claims also fail for the Works-in-Suit that she and her agents

4

licensed to YouTube under its TOS.  *See* Harold Ex. 2 at Col. D (identifying the 114

5

infringement claims subject to this license grant).  Under the plain language of the TOS,

6

YouTube cannot be liable for infringing the copyright in content that a user has uploaded to its

7

channel.  *See Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *5 (S.D.N.Y.

8

Mar. 21, 2022).

9

Under the TOS license, "by submitting Content to YouTube," users grant YouTube:

10

> a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to

11

> use, reproduce, distribute, prepare derivative works of, display, and perform the
> Content in connection with the Service and YouTube's (and its successors' and
> affiliates') business, including without limitation for promoting and redistributing

12

> part or all of the Service (and derivative works thereof) in any media formats and
> through any media channels.

13

14

Zhu Ex. 1 § 6(C); *see also* Zhu Decl. ¶ 8.  Users also grant "each user of the Service a non-

15

exclusive license to access your Content through the Service, and to use, reproduce, distribute,

16

display and perform such Content as permitted through the functionality of the Service and under

17

these Terms of Service."  Zhu Ex. 1 § 6(C).  The licensed "'[c]ontent' includes the text, software,

18

scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features

19

and other materials [users] may view on, access through, or contribute to the Service."  *Id.*

20

§ 2(A).  These licenses endure until a commercially reasonable time after the user removes

21

content they have supplied from the service.  *Id.* § 6(C).  While in effect, however, the license is

22

a bar to copyright claims in any content a user has uploaded.

23

––––––––––––––––––––––––

24

Modern Works license, it also fails because YouTube purchased a catalog license to publicly
perform any composition controlled by the performing rights organization, the American Society

25

of Composers, Authors, and Publishers ("ASCAP"), including Schneider's compositions.
Schneider (and her publisher MWP) are ASCAP members and, like all members, they granted

26

ASCAP the "right to license non-dramatic public performances" of all their musical
compositions.  Harold Ex. 11, Ex. 9; see also Harold Ex. 10 at 11-12; Schneider Dep. Tr. 108:15-

27

17 ("[Q.] You are a member of ASCAP; right? A. I am.").  ASCAP subsequently licensed
YouTube to publicly perform the works of ASCAP members.  Schneider Dep. Tr. 113:6-8; Suk

28

Decl. ¶ 5.

The TOS license bars many of Schneider's claims.  In creating the "Maria Schneider Official Page" channel on YouTube in October 2012, Schneider agreed that "by submitting Content to YouTube," she "grant[ed] YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform" that Content.  Zhu Ex. 1 § 6(C); Schneider Dep. Tr. 77:22-78:2.  In the decade since, Schneider has uploaded (or authorized her agents to upload) to YouTube many videos containing the Works-in-Suit. In 2013, Schneider's agent uploaded to Schneider's YouTube account a video recording of the composition, *Hang Gliding*.  Harold Ex. 14.  *Hang Gliding* was thus licensed for use on YouTube, and cannot support an infringement claim against it.

In addition, and with Schneider's permission, Schneider's agents uploaded more than a dozen other videos to YouTube containing Works-in-Suit, including *A World Lost*; *Bluebird*; *Braided Together*; *CQ CQ, Is Anybody There?*; *Data Lords*; *Don't Be Evil*; *Look Up*; *A Potter's Song*; *Sanzenin*; *Sputnik*; and *Stone Song*.  Le Claire Dep. Tr. 217:25-218:23; Harold Ex. 15; *see also* Le Claire Dep. Tr. 86:15-25 (testifying that she had uploaded "maybe dozens" of "videos containing Ms. Schneider's compositions" and that "[e]very time [she] uploaded a video to YouTube containing Ms. Schneider's compositions, [she] had permission from Ms. Schnieder"); *id.* at 62:5-63:24, 107:4-10 (testifying about particular videos she uploaded containing Schneider's compositions); Schneider Dep. Tr. 100:7-101:9.  YouTube highlighted these uploads and the resultant license grants to YouTube in its Answer.  *See* Dkt. 34 at 2.  A week later, Schneider's agent attempted to delete the videos she had uploaded.  *See* Harold Ex. 15.  But that attempt came too late.  Schneider's claims of infringement based on the compositions reflected in those videos are barred by the licenses she and her agents granted to YouTube pursuant to the TOS.  YouTube is entitled to judgment on those claims for this reason as well.

In addition to her agents, Schneider authorized various third-parties to upload her works to YouTube.  In an interrogatory response, Schneider admitted to authorizing the upload of three Works-in-Suit: *Allegresse*; *Three Romances - Choro Dançado*; and *Dance, you monster, to my soft song*.  Harold Ex. 10 at 11.  Her response was less than thorough; at her deposition she

admitted to authorizing two additional Works-in-Suit uploaded to YouTube: *Cerulean Skies* and *Last Season*. Schneider Dep. Tr. 96:17-99:23; Harold Ex. 16, Ex. 17. YouTube is entitled to judgment based on the TOS license for these works too.

In sum, at least seventeen of Schneider's Works-in-Suit were licensed to YouTube under the TOS. YouTube is entitled to judgment on claims based on those Works-in-Suit. *See* Harold Ex. 2 at Col. D (identifying the 114 infringement claims subject to this license grant).

## II.   SCHNEIDER'S CMI CLAIMS FAIL ON MULTIPLE GROUNDS.

Schneider's separate claim alleging YouTube improperly removed her copyright management information in violation of 17 U.S.C. § 1202(b) fails on several grounds. To support a claim under this provision, Schneider must adduce proof that YouTube:

> (1) "***intentionally*** remov[ed] or alter[ed] any [CMI]" "without the authority of the copyright owner or the law" or (2) distributed or publicly performed copies of works without authorization and "***knowing*** that [CMI] has been removed or altered without authority of the copyright owner or the law."

17 U.S.C. §§ 1202(b)(1), (3) (emphases added). Schneider must also show that YouTube undertook one of these predicate actions "***knowing***" or "***having reasonable grounds to know***" that its conduct would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b) (emphases added). Both scienter elements must be satisfied for Schneider's claim to survive. *See Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 & n.4 (9th Cir. 2018); *Harrington v. Pinterest, Inc.*, 2021 WL 4033031, at *5-6 (N.D. Cal. Sept. 3, 2021).

Schneider asserts that metadata embedded in video files that users upload to YouTube may, in some cases, include data that could constitute someone's copyright management information. *See* FAC ¶¶ 83-86, 144-145; 17 U.S.C. § 1202(c) (defining CMI). She contends that in the process of reformatting (or "transcoding") the video files uploaded to YouTube, YouTube does not carry forward the metadata buried in the video. FAC ¶¶ 33, 83; *cf. Viacom Int'l, Inc.*, 676 F.3d at 39 (explaining that "transcoding" is "the conversion . . . of videos into a standard display format" via "software functions"). According to Schneider, YouTube thus violates § 1202.

This Court found that Schneider's generalized allegations were sufficient to create a plausible inference that YouTube's transcoding carried a "'substantial risk' of inducing infringement." Dkt. 157 at 4. But Plaintiffs failed to support even those general allegations with evidence. Discovery confirms that YouTube is entitled to summary judgment with respect to Schneider's § 1202 claims.

### A. Schneider Failed to Identify Any CMI Removed by YouTube.

Schneider's discovery responses failed to identify what CMI for her Works-in-Suit YouTube supposedly removed from any specific YouTube video. *See* Harold Ex. 10 at 16-22. Instead, Schneider provided a list of ISWC or ISRC codes that she claims correspond to her compositions.[4] Harold Ex. 10 at 16-22. But that information in isolation has no bearing on her § 1202 claim. At a minimum, to plausibly support her claim Schneider must present evidence that such codes were actually embedded in the metadata of a particular video uploaded to YouTube containing her work. Schneider did not even attempt to make this showing. *See id.*; Schneider Dep. Tr. 214:6-12 ("Q. Do you have any information about how often it's the case that ISWC or ISRC codes reflected in this interrogatory response are in the embedded file metadata of videos uploaded to YouTube? A. I don't know.").

The absence of any evidence of such use is perhaps unsurprising, given that Schneider and her agents repeatedly testified that they did not use any embedded metadata (ISWC, ISRC or otherwise) as CMI to protect her works from infringement. *See* Schneider Dep. Tr. 210:10-15; Le Claire Dep. Tr. 190:20-25 ("Q. Have you ever used metadata to locate videos containing Ms. Schneider's work? A. No. Q. Have you ever attempted to use metadata to locate videos containing Ms. Schneider's work? A. No."); Bornheimer Dep. Tr. at 225:12-13 (testifying "I have never searched video file metadata for files hosted on YouTube."); *id.* at 226:21-23. That they did not do so on videos they uploaded to YouTube is especially unsurprising given that it would have done them no good; YouTube is a streaming service, not a download service, and

---

[4] International Standard Recording and International Standard Musical Work Codes (ISRC and ISWC, respectively), are alphanumeric identifiers that can be assigned to specific sound recordings and musical compositions and used to identify them, for example, to share royalties for a particular performance.

thus metadata embedded in video files would not be visible or accessible to Schneider's agents or users.  *See, e.g.*, Bornheimer Dep. Tr. 224:21-23 (testifying "[y]ou can't search the file metadata. You can search the YouTube title of the video, which is different and distinct from the video metadata").

As the leading CMI case recognized in a summary judgment setting, Schneider's failure to identify any removed CMI defeats her claim.  *See Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046, 1052 (S.D. Cal. 2016) (granting summary judgment where "[p]laintiffs fail[ed] to present any evidence that the photographs had CMI at the time they were uploaded" or that defendant "removed or altered any CMI"), *aff'd*, 893 F.3d 643 (9th Cir. 2018).

**B.     Schneider Failed to Establish that YouTube Acted with the Requisite Scienter.**

*YouTube did not intentionally remove CMI or know of its removal.* Because Schneider did not identify any CMI that YouTube supposedly removed from particular videos, she could not possibly show that YouTube knew that her CMI was present in the metadata embedded in such videos, much less that YouTube intentionally removed it or distributed the video knowing it had been removed.  *See* Harold Ex. 10 at 16-22 (refusing to identify "metadata attached to or removed from videos of Schneider's Works in Suit"); Harold Ex. 18 at 6 (explaining that "YouTube's systems do not have the capacity to detect and cannot be designed to detect the existence of CMI" in video file metadata).  That failure of proof is independently fatal to her claim.  *See Stevens*, 194 F. Supp. 3d at 1052 (granting summary judgment where plaintiff failed to present evidence that defendant "intentionally removed CMI, as opposed to removal being an unintended side effect").

*YouTube did not knowingly foment infringement by removing embedded metadata.* Discovery also has established that Schneider cannot show that YouTube knew or had "reasonable grounds to know" that its alleged actions regarding CMI would "induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b) (emphasis added).  As the Ninth Circuit has made clear, to make this showing, Schneider must establish more than that YouTube's transcoding process carried "the universal possibility of encouraging infringement;

specific allegations as to how identifiable infringements 'will' be affected are necessary."

*Stevens*, 899 F.3d at 674.  She "must make an affirmative showing, such as by demonstrating a

past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable

grounds to be aware of the ***probable future impact*** of its actions." *Id.* (emphasis added).

Schneider cannot carry this burden.  In discovery, YouTube specifically asked:

> If You contend that YouTube knew of had "reasonable grounds to know" that its alleged actions with regard to CMI would "induce, enable, facilitate, or conceal an infringement of any right" within the meaning of 17 U.S.C. § 1202(b), describe in detail the basis for Your contention, including all evidence supporting Your contention.

Harold Ex. 19 at 9.  In her response on May 31, 2022 (one month before the close of discovery),

Schneider objected to the request as premature, stated "that the parties are negotiating responses

to RFPs relevant to information concerning this issue" and reserved "the right to supplement her

response" in the future as she saw fit.  *Id.*  Entirely absent from Schneider's response was any

explanation of her theory regarding YouTube's supposed knowledge or evidence supporting that

theory. Fact discovery is now closed, yet Schneider never supplemented her interrogatory

response with information of substance.  In light of her empty response, Schneider may not now

offer new evidence in opposition to this motion. The Court's inquiry can stop there. *See* Fed. R.

Civ. P. 37(c)(1); *Cambridge Elecs. Corp. v. MGA Elecs., Inc.*, 227 F.R.D. 313, 334-35 (C.D. Cal.

2004) (granting summary judgment after refusing to consider evidence that was not disclosed in

interrogatory responses); *Phx. Techs., Ltd. v. VMware, Inc.*, 2017 WL 1957042, at *7-8 (N.D.

Cal. May 11, 2017) (precluding plaintiff from introducing evidence or argument not disclosed in

interrogatory responses before the close of fact discovery).

Schneider's barren interrogatory response aside, there is simply no evidence that

YouTube knew or should have known that removal of embedded metadata would foster

infringement.[5]  This is not a case in which Schneider manually added or used CMI in embedded

---

[5] It is "not uncommon" for processing software to not retain metadata. *Stevens*, 899 F.3d at 671 n.1.  Leading "social media websites," including "Facebook, Instagram, and Twitter," use image processing software that does not retain metadata.  *Id.*; *see also Victor Elias Photography, LLC*, _ F.4th _, 2022 WL 3330350, at *2 (11th Cir. Aug. 12, 2022) (metadata allegedly removed when converting images into "industry-standard sizes" and "optimiz[ing] the image files for
(continued...)

1    metadata to police supposed infringing uses of her work.  *Cf. Stevens*, 899 F.3d at 671-72.  In

2    fact, she and her agents actually disclaimed such policing efforts.  *See supra* at 17-18 (citing,

3    *e.g.*, Le Claire Dep. Tr. 190:20-25).  And even if she had done so, she has not shown, as she

4    must, that YouTube knew anything about such behavior.  *See Victor Elias Photography, LLC*,

5    2022 WL 3330350, at *7 (affirming grant of summary judgment against § 1202 claims even

6    where plaintiff purposefully inserted CMI into his images where plaintiff failed to show

7    defendant knew of plaintiff's use of CMI).  In other words, there is nothing to suggest that

8    YouTube knew or had reason to know that its transcoding of videos and the removal of

9    embedded metadata ***would*** interfere with supposed policing efforts or promote infringement of

10   Schneider's works.  Without such evidence, YouTube is entitled to summary judgment because

11   there has been no "affirmative showing" that YouTube "was aware or had reasonable grounds to

12   be aware of the probable future impact of its actions" on "identifiable infringements."  *See*

13   *Stevens*, 899 F.3d at 674-75 ("plaintiff must provide evidence from which one can infer that

14   future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of

15   CMI"; granting summary judgment where plaintiff failed to show use of CMI metadata to

16   prevent or detect copyright infringement because there was no "ostensible relationship between

17   the removal of CMI metadata and [his] policing of infringement"); *Harrington*, 2021 WL

18   4033031, at *6 (dismissing CMI claim for lack of "any allegations that [plaintiff] actually used

19   CMI metadata to prevent or detect copyright infringement"); *see also Sedlik v. Von*

20   *Drachenberg*, 2022 WL 2784818, at *12 (C.D. Cal. May 31, 2022) (granting summary judgment

21   to defendants on § 1202(b) claim where plaintiff failed to raise triable issue regarding the

22   defendants' scienter); *see also Victor Elias Photography, LLC*, 2022 WL 3330350, at *8

23   _____

24   faster display").  There are very good reasons for this approach, as metadata can contain malware
     or other potential service exploits, and can contain personally identifiable information that users

25   do not mean to share.  Harold Ex. 18 at 6 (explaining that transcoding ensures removal of
     "potentially malicious content," "protects user privacy," promotes device "compatibility," and

26   "assists with data compression, which helps save bandwidth and storage space").  And there is
     little reason to retain metadata in the face of these risks, since it is often "[m]issing, bad, or

27   inconsistent."  Dani Deahl, *Metadata is the Biggest Little Problem Plaguing the Music Industry*,
     The Verge, https://www.theverge.com/2019/5/29/18531476/music-industry-songroyalties-

28   metadata-credit-problems.

1   ("Congress enunciated the double scienter requirement for a reason, and we must interpret the

2   statute to effectuate that intent.").[6]  Indeed, the Ninth Circuit's decision in *Stevens* affirming a

3   grant of summary judgment against § 1202 claims compels judgment against Schneider's claims

4   here.  In *Stevens*, the plaintiffs had not shown that they had ever used CMI metadata to prevent

5   or detect copyright infringement, much less how they would do so.  899 F.3d at 675.  The same

6   applies to Schneider.  And in *Stevens*, the plaintiffs failed to identify a single instance in which

7   removal of CMI induced, enabled, facilitated, or concealed infringement.  *Id.*  Schneider failed to

8   do so too.  Thus, as in *Stevens*, Schneider's § 1202 claim must fail.

9          **C.     Schneider Authorized YouTube to Remove Embedded Metadata.**

10         On top of all these failures of proof, Schneider also cannot show that YouTube removed

11   any supposed CMI embedded in metadata "without the authority of the copyright owner."  *See*

12   17 U.S.C. § 1202(b).  The PLA between MWP and YouTube authorized YouTube to "Reformat"

13   any videos containing Schneider's works (PLA § 2(a)), *i.e.*, "to digitally re-encode [such videos],

14   without modification of the content" (PLA, Definitions).  In addition, the TOS license between

15   YouTube and its users (including Schneider, her agents, and her licensees) authorized YouTube

16   to reproduce and distribute uploaded videos "in any media formats."  Zhu Ex. 1 § 6(C).  These

17   authorizations permitted YouTube to transcode the videos and remove any metadata, which is

18   merely "data about the [] file," *Stevens*, 899 F.3d at 670, not the video's content.  Those express

19   authorizations likewise bar her § 1202 claim.  *Cf. Stevens*, 194 F. Supp. 3d at 1053 (granting

20   summary judgment on § 1202(b) claim because plaintiffs could not show unauthorized removal

21   of CMI where plaintiffs "licensed their photographs to real estate agents for the express purpose

22   of uploading the photographs onto [the defendant's service,] . . . knew that the agents would be

23   manipulating the photographs specifically so they could be used on the [service]," and did not

24   "warn the agents not to remove embedded metadata not viewable with the naked eye").

25

26         [6] Notably, the metadata of videos files on YouTube is not searchable in any event. *See, e.g.*,
     Bornheimer Dep. Tr. 224:21-23; *id.* at 225:7-9; Harold Ex. 20 (Schneider describing a § 1202

27   claim as ███████████████████████████████████████████).  Thus,
     even if embedded metadata (and any CMI it supposedly contained) had been preserved, it would

28   have made no difference to Schneider's ability to police infringement.

III.    **HUNDREDS OF SCHNEIDER'S COPYRIGHT INFRINGEMENT CLAIMS AND
HER § 1202(b) CLAIMS ARE TIME-BARRED.**

Summary judgment as to a host of Schneider's claims is also warranted because those claims are time-barred.  *See* Harold Ex. 2 at Cols. E-H (identifying the 328 time-barred infringement claims).  Two separate time-bars apply here.  First, when Schneider created her "Maria Schneider Official Page" YouTube account in 2012 (Schneider Dep. Tr. 77:22-78:2), Schneider agreed to YouTube's TOS, which requires YouTube and users to bring claims arising out of or relating to the service within one year of accrual (Zhu Ex. 1 § 14).[7]  Second, all claims under the Copyright Act must be brought within three years of accrual.  17 U.S.C. § 507(b).  Claims accrue when the plaintiff acquires actual or constructive knowledge, *i.e.*, when she "discovers, or reasonably should have discovered" the basis for the claims.  *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047 (9th Cir. 2020) (citation omitted).  Schneider sued on July 2, 2020.  Thus, any claims Schneider knew or should have known about before July 2, 2019, are barred by the one-year period in the TOS, and any claims accruing before July 2, 2017, are additionally barred by the three-year statute of limitations.  Harold Ex. 2 (identifying time-barred alleged infringements).

Schneider admits she had actual knowledge of dozens of her copyright infringement claims long before she sued.  She concedes that she was "aware" of at least 121 of her alleged infringement claims more than one year before she sued.  Harold Ex. 12 at 4-8.  Those claims are time-barred under the TOS.  Schneider also admits she was "aware" of 73 infringement claims more than three years before she sued.  *Id.*[8]  All of these infringement claims are time-barred

---

[7] Contractual limitations periods for claims like the one in the TOS "have long been recognized as valid in California."  *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1126 (2012).  Indeed, this exact provision has been enforced by a court in this District to bar claims not asserted within one year of accrual.  *Darnaa, LLC v. Google, Inc.*, 2015 WL 7753406, at *3-4 (N.D. Cal. Dec. 2, 2015).

[8] This includes the only two alleged infringements of the sound recording *Concert in the Garden*.  Schneider has not identified any alleged infringements of the only other sound recording, *Vikings Anthem*.  In fact, Schneider failed to allege any infringements of twenty-seven of her Works-in-Suit, including (1) *A World Lost*; (2) *CQ CQ, Is Anybody There?*; (3) *Dissolution*; (4) *Divided by two*; (5) *Espino*; (6) *Evelyn*; (7) *Finding flight*; (8) *Free fall*; (9)

(continued...)

under the Copyright Act's statute of limitations and the TOS limitation period.  Harold Ex. 2

(identifying time-barred alleged infringements).

In addition, Schneider had constructive knowledge of hundreds of additional copyright

infringement claims long before she sued.  "'[S]uspicion' of copyright infringement 'place[s]

upon [the plaintiff] a duty to investigate further into possible infringements of [its] copyrights."

*Oracle Am., Inc.*, 971 F.3d at 1048 (alteration in original) (quoting *Wood v. Santa Barbara

Chamber of Commerce, Inc.*, 705 F.2d 1515, 1521 (9th Cir. 1983)).  "Even if the plaintiff 'may

not actually have conducted this further investigation, equity will impute to [the plaintiff]

knowledge of facts that would have been revealed by reasonably required further investigation.'"

*Id.* (alteration in original) (citation omitted); *see also Color Image Apparel, Inc. v. Jaeschke*,

2022 WL 2643476, at *5 (C.D. Cal. June 7, 2022) (infringement claims based on Instagram posts

time-barred based on constructive knowledge).  Schneider has suspected copyright infringement

on YouTube since at least 2007, when she first became aware of alleged infringements on

YouTube.  *See* Harold Ex. 12 at 6 (admitting she was "aware" of alleged infringements since

2007); *see also Wood*, 705 F.2d at 1521 (infringement claims time-barred where plaintiff

believed defendant had infringed one of plaintiff's works but failed to investigate defendant's

possible infringement of other works); *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 789-90 (C.D. Cal.

2011) (claims time-barred where plaintiff was on constructive notice of infringements after he

became aware of one alleged infringement by the defendant).

Schneider had constructive knowledge of alleged infringements at or near the time of

their upload, when a reasonable investigation would have uncovered them, for two reasons.

First, Schneider could have used YouTube's public search function to uncover allegedly

unauthorized uses of her works—the same search function she used to identify the alleged

*Lembrança*; (10) *Nimbus*; (11) *Now and then*; (12) *One for Tad*; (13) *Prairie dance*; (14)
*Recapitulation*; (15) *Returning*; (16) *Samba solstice*; (17) *Sanzenin*; (18) *Stone Song*; (19) *String
Quartet No. 1*; (20) *The blasphemy*; (21) *The Sun Waited for Me*; (22) *The willow*; (23) *This 'n
that*; (24) *Tranquilidade*; (25) *VIKINGS ANTHEM*; (26) *Waxwing*; and (27) *Willow Lake*.  *See*
Harold Ex. 1; Harold Decl. ¶ 2.  Schneider thus has not established a prima facie case of
infringement as to those Works-in-Suit, and YouTube is entitled to judgment as to those works
for that reason alone.

infringements for this lawsuit.  *See* Harold Ex. 12 at 8 ("Schneider … identified the

infringements … by conducting searches for unauthorized copies of her work on YouTube.").

Second, since 2014, Schneider through her publisher has had access to and used YouTube's

Content ID to identify uses of her works on YouTube.  Coleman Decl. ¶¶ 5-8.  Schneider was

also aware of third-party services offering Content ID access, but she did not attempt to use those

services.  *See* Le Claire Dep. Tr. 134:20-136:10.  Since 2014, in the exercise of reasonable

diligence, Schneider could have used that access to identify matches of her works and review

them for potential alleged infringement.  Her choice not to do so is no excuse.

At least 328 of the allegedly infringing videos at issue in the case were uploaded to

YouTube before July 2, 2019.  Harold Ex. 2 at Col. H.  Claims based on them are time-barred

under the TOS.  At least 261 of the allegedly infringing videos were uploaded to YouTube

before July 2, 2017.  Harold Ex. 2 at Col. F.  Claims based on them are barred under the statute

of limitations.

Schneider's § 1202 claim is also time-barred under both the TOS and the statute of

limitations.  Schneider has had actual knowledge about YouTube's alleged removal of CMI

embedded in video metadata since at least March 2017.  On March 19, 2017, Schneider

submitted comments to the U.S. Copyright Office describing how YouTube was allegedly

███████████████████████████████████████ Harold Ex. 13.  There, as in this case, her

theory was that YouTube's transcoding process removed embedded metadata that might contain

CMI.  *Compare id.* at 1-2 (alleging that YouTube ███████████████████████████████

███████████████████), *with* FAC ¶ 33. While Schneider still has not identified any specific

instance in which her CMI was removed from any particular video, her allegations regarding

transcoding in general are time-barred because Schneider waited more than three years to sue

over them.

## CONCLUSION

Schneider's infringement claims fail on multiple grounds.  The Works-in-Suit were

licensed through MWP and the Terms of Service.  Schneider's CMI claim fails because she

cannot make out a prima facie case and because any removal of CMI by YouTube was

authorized.  And both her CMI claim and many of her infringement claims are also time-barred.

Together, these overlapping grounds dispose of all of Schneider's claims against YouTube.  *See*

Harold Ex. 2 at Col. C-H.

Respectfully submitted,

Dated:  August 26, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*
David H. Kramer

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC