| | |
|---|---|
| DAVID H. KRAMER, SBN 168452<br>MAURA L. REES, SBN 191698<br>LAUREN GALLO WHITE, SBN 309075<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br>Email: dkramer@wsgr.com<br>       mrees@wsgr.com<br>       lwhite@wsgr.com | BRIAN M. WILLEN (admitted *Pro Hac Vice*)<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801<br>Email: bwillen@wsgr.com |

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>    Defendants<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>    Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>    Counterclaim Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**DECLARATION OF CHENYUAN ZHU IN SUPPORT OF YOUTUBE, LLC AND GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MARIA SCHNEIDER**<br><br>Date:      October 13, 2022<br>Time:     10:00 am<br>Courtroom: 11<br>Judge:    Hon. James Donato |

DECLARATION OF CHENYUAN ZHU ISO YOUTUBE, LLC AND GOOGLE LLC'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MARIA SCHNEIDER

CASE NO. 3:20-CV-04423-JD

I, Chenyuan Zhu, declare as follows:

1. I am currently Product Manager for Content ID for Defendant YouTube, LLC ("YouTube"). I previously worked in and then led YouTube's copyright operations team. I am familiar with YouTube's practices regarding copyright operations. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently to them.

2. YouTube enables copyright holders to quickly and efficiently obtain the removal of allegedly infringing materials from the service, pursuant to the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA"). Among other things, YouTube has designated an agent for receipt of DMCA notices, implemented a notice-and-takedown process that results in the expeditious removal of material claimed to be infringing in a DMCA takedown notice, and adopted and reasonably implemented a repeat infringer policy. Additionally, although I am not aware of any court that has recognized any technology as a "standard technical measure" as that term is defined in the DMCA, YouTube would accommodate and not interfere with any standard technical measure, should any such measure qualify.

3. YouTube has made huge investments in its DMCA compliance efforts. YouTube has also invested hundreds of millions of dollars in cutting-edge technologies and operations to assist copyright holders in protecting against the unauthorized use of their work on the service as discussed in Paragraphs 4-6 below.

4. YouTube has developed an Emmy Award-winning Content ID system, which utilizes proprietary technology to enable eligible users to automatically identify use of their copyright-protected audio or video works in videos on the service. When the system identifies what it believes to be a video matching a copyrighted work, it enables the user to "claim" that video, and (i) monetize it by sharing in the advertising revenue the video generates; (ii) block the video from appearing on the service; or (iii) track views of the video.

5. YouTube also offers a Content Verification Program and Copyright Match Tool to copyright owners to assist them in identifying the use of their works on the service. YouTube's Content Verification Tool ("CVP"), which YouTube has offered for over a decade, enhances

copyright owners' ability to search for videos on YouTube that may use their copyrighted content, and, if they so choose, to send YouTube takedown notices in accordance with the DMCA for content they contend infringes their copyrights. To use CVP, a copyright owner first enters keywords into a search box. The CVP tool then tries to match that search criteria with video titles, descriptions, tags, and other information associated with the video. If the CVP tool finds a video matching one of the keywords, the copyright owner can then choose whether to request removal of that video. Further, the tool enables the copyright holder to submit copyright takedown requests for up to 100 videos per submission. CVP is generally available to copyright owners who apply to use it, and who demonstrate a need for enhanced search and removal abilities through a history of submitting complete and valid DMCA takedown requests.

6. YouTube's Copyright Match Tool uses aspects of the video-fingerprinting technology that powers Content ID to help copyright claimants automatically detect videos that they may wish to submit DMCA takedown notices for. The Copyright Match Tool is available to any YouTube user who's submitted a valid takedown notice through the webform. Once a takedown notice is confirmed as valid, the Copyright Match Tool starts scanning YouTube uploads for potential matches to the videos reported in the removal request. The tool surfaces these potential matches to the claimant so they can decide what action to take next. For creators in the YouTube Partner Program (YPP), or any channel that's filled out the copyright management tools application and shown a need for an advanced rights management tool, the Copyright Match Tool will scan for reuploads of their videos on other YouTube channels. Creators who have access to this feature of the Copyright Match Tool simply need to be the first to upload a video to YouTube (they can upload as public, private, or unlisted). Users can choose to archive the match and leave the video up, file a takedown request (with the option to ask YouTube to automatically prevent copies), or contact the uploader through the service. As of December 2021, YouTube has made the Copyright Match Tool available to more than 2,400,000 channels.

7. By creating a YouTube account, users gain access to a host of YouTube services at no charge, including video hosting, a global audience for their content, social networking and

analytics capabilities, and access to ground-breaking copyright management tools. In exchange for access to these free services and tools, a user must assent to YouTube's Terms of Service. A true and correct copy of YouTube's Terms of Service as they existed on October 3, 2012 and produced in this litigation stamped GOOG-SCHNDR-00034933 is attached as **Exhibit 1**. Plaintiff Maria Schneider could not have created a YouTube account or a channel on the service without accepting the Terms of Service.

8. Among other things, the Terms of Service include a provision under which users, "by submitting Content to YouTube," grant YouTube "a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service and YouTube's (and its successors' and affiliates') business, including without limitation for promoting and redistributing part or all of the Service (and derivative works thereof) in any media formats and through any media channels." Ex. 1 § 6(C). Users also grant "each user of the Service a non-exclusive license to access your Content through the Service, and to use, reproduce, distribute, display and perform such Content as permitted through the functionality of the Service and under these Terms of Service." *Id.* The licensed "'[c]ontent' includes the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials [users] may view on, access through, or contribute to the Service." *Id.* § 2(A). These licenses endure until a commercially reasonable time after the user removes the content they have supplied from the service. *Id.* § 6(C). In addition, the Terms of Service contains a bilateral one-year contractual limitations period requiring that any claims relating to the service be brought within one year of accrual. *Id.* § 14. That section, entitled "Limitation on Legal Action," provides: "YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED." *Id.* While the Terms of Service have been modified several times over the years, materially identical provisions have existed in every subsequent version of the Terms of Service.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 26th day of August 2022, at Pacifica, California.

*/s/ Chenyuan Zhu*
Chenyuan Zhu

**ATTORNEY ATTESTATION**

I, David H. Kramer, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the signatory.

*/s/ David H. Kramer*
