Exhibit A

to the Declaration of Dan Coleman



## MUSIC PUBLISHING ADMINISTRATION AGREEMENT

This AGREEMENT ("Agreement"), dated as of 1 January 2008, is made between ArtistShare Music Publishing LLC (d/b/a ArtistShare East (ASCAP) and ArtistShare West (BMI)), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ nited States of America ("Administrator," "us," "we," "our"), and Maria Schneider d/b/a MSF Music, c/o Maria Schneider, Inc., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "Publisher," "you," "your").

**1. DURATION OF AGREEMENT.** The initial duration of this Agreement is one (1) year beginning on the date above and will continue automatically thereafter for successive three (3) month periods, unless terminated in writing by either party. Any termination of this Agreement will become effective on the first day of the calendar quarter following the calendar quarter in which the notice of termination was rendered. For the purposes of this Agreement, the term ("Term") is defined as: the initial one-year period plus all automatic extension periods, if any.

**2. COMPOSITIONS.** This Agreement is made with respect to all musical compositions, written or composed prior to or during the Term hereof, in whole or in part by you, or owned or controlled, directly or indirectly, by you or any firm or corporation affiliated with or related to you or which you may form (the "Compositions").

**3. WARRANTIES AND REPRESENTATIONS.** Both parties hereby warrant and represent that they are authorized and free to enter into this Agreement, that the statements represented in this Agreement are true as they apply to each party, and that the provisions contemplated by this Agreement do not conflict with the rights of any third party. If you are currently a signatory to any publishing agreements with third parties to which any Compositions are subject— excluding your agreements with performing rights organizations ("PRO(s)") such as ASCAP, BMI, or SESAC—then you hereby represent that: (A) such agreements between you and third parties must be terminated upon their earliest termination date, and (B) immediately upon such termination, this Agreement will automatically grant to us all rights to administer those Compositions in accordance with the provisions of this Agreement. Further, you represent and warrant that (i) you presently maintain—and during the Term will continue to maintain—exclusive, valid songwriters' contracts with any composers who may write or co-write any Compositions which are published by you (the "Writers"); and (ii) you will agree to use professional efforts to enforce those contracts; and (iii) you have not previously accepted—nor will you accept during the Term—an advance of publishing royalties from a record company, a PRO, or from any other third party, without our written consent.

**4. OWNERSHIP REMAINS WITH YOU.** <u>The rights granted to us in this Agreement are solely administrative in nature and do not extend any rights of ownership whatsoever in or to any of the Compositions or copyrights thereto.</u> The copyrights in the Compositions, including any registration(s), must remain in your name. Assignment or registration of copyrights for the Compositions in our name is expressly prohibited by this Agreement. Notwithstanding the foregoing, registration of so-called "publisher's shares" with third-party collection agents, subpublishers or licensees (such as ASCAP or Harry Fox Agency) may be registered in the Administrator's name to the extent required by said agents or licensees and where possible shall be credited as administered by: "MSF Music (ASCAP) administered by ArtistShare East (ASCAP) as Rights Administrator Only". If this Agreement is terminated, we will send notice within fifteen (15) business days of termination to all collective music licensing organizations with which we are direct members to adjust any registrations to reflect such termination, and instruct our subpublishers and licensees to similarly notify their respective music licensing organizations, and we agree to cooperate with any subsequent administrator or publisher with whom you may enter into an agreement on behalf of the Compositions.

**5. TERRITORY.** The World (the "Territory").

**6. APPOINTMENT AND DUTIES OF ADMINISTRATOR.** In consideration of $1 and other good and valuable consideration, you hereby appoint us, and we accept such appointment, as the sole and exclusive Administrator of the Compositions for you, the Publisher, throughout the Territory during the Term. In our discretion, and following receipt of all necessary information, we will register —in your name— all claims to copyright in the Compositions and any arrangements, adaptations, or derivative works thereof, together with any other documents which Administrator

deems necessary to register with the United States Copyright Office or with any comparable copyright registrar throughout the Territory. We will have the exclusive right to administer the Compositions throughout the Territory during the Term; to print (subject to Paragraph 12(B) below), to disseminate, display, and license the performance and use of the Compositions; and to execute in the Publisher's name any licenses and agreements affecting the Compositions, including, but not limited to, licenses for mechanical reproduction, public performance, synchronization uses, the use of Compositions in connection with merchandising activities, and all so-called "digital" or "new media" uses of the Compositions. All rights not specifically set forth herein are expressly reserved by you but may be granted to us during the Term on a case-by-case basis. For the avoidance of doubt, you reserve the exclusive right to license the so-called "world premiere" performance of a Composition.

**7. YOUR CREATIVE CONTROL.** Notwithstanding anything to the contrary expressed or implied herein, we must notify you and obtain your prior written approval for any license we grant on your behalf. It is agreed and understood that either you or your designated agent, who you may designate in writing to us from time to time ("Designated Agent") can give consent under this §7. We will deem to have received your consent under this §7 if, after ten (10) business days from the receipt of our request, we have not received a reply from you or your Designated Agent. Notwithstanding anything contained in this §7, you agree and understand that copyright laws and common business practices outside of the USA might hinder or preclude Administrator's efforts to obtain your consent in each instance. Administrator agrees to require all subpublishers to comply with the terms of this §7 to the extent possible in their respective territories, but any inadvertent failure to timely obtain your consent will not be deemed a breach of this Agreement.

**8. OBLIGATIONS OF PUBLISHER.** You agree to advise us of any Compositions applicable to this Agreement, whether previously or newly composed, including those details that we request which are necessary within common practice for the proper administration of the Compositions, including but not limited to: names and contact information for co-writers and their publishers, copies of applicable provisions of songwriter agreements, and passwords for performing rights society websites. You agree to notify us, as reasonably necessary, when you learn of any uses of the Compositions (recorded or otherwise). You agree to respond in a timely manner to our requests to supply the information necessary for proper administration of the Compositions, and you understand that without your cooperation, we cannot properly administer your songs. You agree to use your reasonable efforts to conclude written songwriter agreements with your co-writers or with Writers that you publish, but your failure to do so will not be deemed a breach of this Agreement. With the exception of the so-called "writer's share" of performing rights royalties as collected by your PRO, you agree to direct and to authorize us to direct in your name the payment of all Gross Receipts to the Administrator.

**9. COLLECTION OF GROSS RECEIPTS.**

(A) You hereby authorize us during the Term and throughout the Territory to collect all Gross Receipts (as defined later in this paragraph) earned by and derived from the Compositions during the Term and throughout the Territory hereof, regardless of when paid (including such Gross Receipts earned during the Term but paid after termination of this Agreement, but excluding so-called "special" or "retroactive" distributions from PROs or other rights organizations). For the purposes of this Agreement, the term "Gross Receipts" is defined as follows ("Gross Receipts"):

> (i) All music publishing income derived from the Compositions arising from the rights granted us hereunder, including, grand rights fees, dramatic performance fees, mechanical royalties, synchronization fees, sampling fees, ringtone, digital and other new media royalties, print income (subject to Paragraph 12(B) below), performing rights income, neighboring rights royalties such as those collected and distributed by SoundExchange® or authorized under the Digital Performance in Sound Recordings Act of 1995 or the Digital Millennium Copyright Act of 1998, and including any so-called "pipeline money" earned by not collected by you prior to the Term, and any so-called "black box" income that is attributable to you as writer or publisher (even if not allocated to a specific Composition), that may be collected by Administrator in accordance with this Agreement); <u>minus</u>
> (ii) Foreign taxes required to be paid by us or our subpublishers, and any fees deducted by third-party collection agents (other than our subpublishers) and performing and mechanical rights societies prior to their disbursing money to us or to our subpublishers.

(B) Specifically excluded from Gross Receipts are any conductor fees, so-called "commission fees" (as that term is commonly understood in the field of concert music and jazz) and similar payments to you that are separate from music publishing income, and any so-called "writer's share" of performing rights royalties (digital and otherwise) which is both (i) collected on your behalf by your PRO and (ii) paid directly to you.

**10. ADMINISTRATOR'S COMPENSATION.** As compensation for our services as your Administrator, we will retain



[content redacted]

**12. PERFORMING RIGHTS INCOME AND PRINT RIGHTS.**

(A) It is agreed and understood that our right to collect performing rights income from your PRO under this Agreement is limited to the so-called "publisher's share" of such income. Notwithstanding the foregoing, upon prior written

notice to and consent by you, we may, with proper notification of your PRO, effectuate performing rights licenses directly with licensees, and all income (including so-called "writer's shares") collected in connection with such licenses will be included in Gross Receipts.

(B) Notwithstanding anything to the contrary herein, upon prior written consent from you, Administrator may authorize print licenses that are non-exclusive to prospective licensees, and Administrator agrees that no income from print licenses entered into prior to the Term of this Agreement will be collectible by or in any way due or owing to Administrator, or included in Gross Receipts.

**13. BENEFITS AFFECTING COMPOSITIONS.** Each party to this Agreement gives the other the equal benefits of any warranties that it has obtained or will obtain under any agreement affecting the Compositions, including Writers' contracts. You grant to Administrator the non-exclusive right during the Term to use, and permit others to use, any names, approved likenesses, approved biographical materials or other approved materials of you and/or your Writers (collectively the "Materials") as news or information for purposes of advertising, marketing, or liner note materials solely in connection with exploitation of the Compositions or advertising for Administrator. All Materials furnished to us by you or your agents will be deemed approved hereunder, until you notify us otherwise. Our inadvertent failure to obtain your approval of the Materials will not be deemed a material breach of this Agreement provided that Administrator makes a good faith effort to correct such failure on a prospective basis within a reasonable time after receiving notice from Writer.

**14. ASSIGNMENTS.**

(A) We may enter into subpublishing or collection agreements with third parties throughout the world, and we may license or assign any of our rights in this Agreement to subpublishers, and delegate any of its obligations hereunder, but any rights we assign must be coterminous with this Agreement unless we have obtained your prior written approval to lengthen the duration of those rights. We may assign this entire Agreement to a third party provided that the provisions of any such assignment are no less favorable to you than the provisions of this Agreement and are coterminous with this Agreement, and further provided that both Brian Camelio and Dan Coleman are partners, shareholders, employees or consultants for the third-party assignee.

(B) You have the right to assign your Income (as defined below) to be disbursed to a third party ("Income Assignee"), but you and the Income Assignee must execute an appropriate letter of direction warranting and representing that (i) you and the Income Assignee will indemnify and hold harmless Administrator from any third party claims (including any claims made through or on behalf of the Income Assignee); (ii) the Income Assignee must not be deemed a third party beneficiary of this Agreement; and (iii) payments to Income Assignee must be made solely as an accommodation to you, and Income Assignee will have no recourse against Administrator if Administrator fails to make such payments and/or accountings.

**15. FINANCIAL STATEMENTS.**

(A) Within ninety (90) days after the end of each semi-annual period (but no later than June 30 and December 31 of each calendar year) ("Accounting Period"), we will send you a fully-itemized statement containing such information about your music publishing income as is standard in the industry, along with a disbursement of funds identifying Gross Receipts minus the Administration Fee and any expenses and deductions permitted by this Agreement ("Income"), made payable to "Maria Schneider, Inc." or another payee as designated to Administrator from time to time in writing by you. For the purpose of our accounting to you, your royalties earned outside of the United States of America will be deemed to have been earned in the same Accounting Period in which our subpublisher or licensee accounts to us or credits our account. Statements will be sent via the United States Postal Service, First Class, to the address indicated in paragraph 18 below. We reserve the right to carry over to the next Accounting Period any sum less than One Hundred Dollars ($100), but shall send you a statement concerning such Income. You will be deemed to have consented to all royalty statements and other accounts rendered by us, and said statements and other accounts will be binding upon you and not subject to any objection for any reason, unless you give us specific objection in writing, setting forth the basis of your complaint, within two (2) years from the date that statement was rendered.  You may designate a Certified Public Accountant, attorney, or other qualified representative to examine our books and records in the place where said books and records are normally maintained at your sole cost and expense—as they pertain to your Compositions and general fund (i.e. unallocated by

Composition, but attributible to you as writer or publisher) disbursements from collective rights organizations or subpublishers—during our usual business hours and upon prior reasonable notice, no more than once per year or per statement. You may examine our books during the two (2) year period following our rendering of the statement for an Accounting Period.

(B) Administrator will have the right to withhold from royalties payable to you hereunder such amount as may be required by the Internal Revenue Code of the United States of America, or any similar statute which may apply anywhere in the Territory. We will supply you with evidence of any notice, order, or regulation requiring moneys paid in accordance with the foregoing sentence.

(C) You will not be entitled to share in any advance payments, guarantee payments, or minimum royalty payments that we may receive unless such payments are made or credited in connection with your Compositions.

(D) You warrant and represent that you are solely responsible during the Term for the payment of royalties to Writers and any other parties who may be entitled to royalties with respect to the Compositions for which we have licensed and paid you the so-called "Writers' shares", and you indemnify and hold us harmless from any claims or actions (including court costs and attorney's fees) which may result if Writers or other parties fail to receive payment.

**16. INDEMNITIES.** Both parties indemnify and hold each other including, our assigns, licensees and their directors, officers, shareholders, agents and employees harmless from any liability, including, without limitation, reasonable counsel fees and court costs, arising out of or connected with or resulting from any third-party claim inconsistent with any of the warranties, representations or agreements, express or implied, made in this Agreement, provided that such claims are reduced to final, adverse judgment. Each party will give the other party written notice of any claim or action covered by said indemnity. We will have the right to withhold payment of any and all moneys hereunder in reasonable amounts related to such claim or action pending the disposition thereof. All withheld moneys will be distributed if no litigation has been commenced within one (1) year of the commencement of such withholding. In lieu of withholding such moneys, you may post a bond or make some other arrangement that is acceptable to Administrator.

**17. ADMINISTRATOR'S RIGHT TO SETTLE CLAIMS.** Administrator will have the right but not the obligation to prosecute, defend and settle all claims and actions with respect to the Compositions and the copyrights or other rights with respect to the Compositions, but Administrator will not settle claims or actions without your consent. If we recover any money on your behalf as a result of a judgment or settlement, we will retain as compensation an amount equal to our Administration Fee after first deducting the reasonable expenses of obtaining that money, including reasonable attorney fees. You have the right to provide your own counsel, to assist in or assume the prosecution or defense of any such matter, but only at your own expense. Any judgments against Administrator and any settlements by Administrator of claims against it respecting any of the Compositions, together with costs and expenses, including attorney fees, will be subject to the indemnity provisions of paragraph 16, and your indemnity payments will be paid to Administrator from any and all sums that may become due to you hereunder, or promptly upon demand by Administrator.

**18. NOTICES.** All notices applicable to this Agreement must be sent to the following address, until written notice of a new address will be duly given:

<u>Administrator</u>  
ArtistShare Music Publishing LLC

<u>Publisher</u>  
Maria Schneider

All notices will be made in writing and—with the exception of financial statements— delivered by a traceable mail service (e.g. certified mail, or Fedex) postage prepaid. Neither party will be deemed to be in material breach of any of its obligations hereunder unless and until the party claiming a breach will have given the other written notice by certified or express mail, specifying the nature of such breach and such other party will have failed to cure such breach within thirty (30) days, or, if such breach concerns the payment of moneys, ten (10) business days after receipt of such written notice. If an alleged breach is of such a nature that it cannot be completely cured within thirty (30) days, the notified party will not be deemed to be in breach if such party commences the curing of the alleged breach within such thirty (30) day period and promptly proceeds to complete the curing thereof with due diligence within a reasonable time thereafter.

**19. APPROVALS/ATTORNEY-IN-FACT.** You hereby irrevocably authorize and appoint us or any of our authorized assignees to serve as your true and lawful attorney during the Term, in Publisher's name, to take such action and to execute and deliver any documents which we may deem desirable and necessary to vest us, our successors and assigns, all of the rights and interests granted hereunder. The foregoing is acknowledged to be a power coupled with an interest and therefore irrevocable. Notwithstanding the foregoing, we will afford you the opportunity to execute documents in your own name. If you do not execute any document within ten (10) business days after our written request to you, we may exercise our power of attorney as set forth in this paragraph. Any request for your approval will be deemed granted unless we receive your written notice of disapproval within ten (10) business days after our request.

**20. MISCELLANEOUS.** Each party acknowledges and represents that, in executing this Agreement, it has received advice as to its legal rights from legal counsel and that the person signing on its behalf has read and understood all of the terms and provisions of this Agreement. Further, each party and their counsel have cooperated in the drafting and preparation of this Agreement. It will be deemed their joint work product and may not be construed against any party by reason of its preparation or word processing. If any provision of this Agreement be held void, invalid, or inoperative, then it will be severed from this Agreement, but no other provision herein will be affected, and this Agreement will otherwise remain in full force and effect. The headings are for convenience only and will not be deemed part of the Agreement. This Agreement may be signed in counterparts, each of which will be considered an original, but all of which constitute one and the same instrument. This Agreement sets forth the entire understanding between the parties, and cannot be modified, terminated or rescinded except by mutual written agreement of both parties hereto. This Agreement will be governed and construed under the laws of the State of New York applicable to agreements made and wholly performed therein without regard to any State's conflict of laws provisions. Any disputes between the parties that cannot be resolved by negotiation must be subject to arbitration under the rules of the American Arbitration Association in the City of New York; the decision of the arbitrator(s) will be deemed final, binding, and non-appealable, and neither party will seek further injunctive relief in a Court of law.

IN WITNESS WHEREOF, the parties have caused this agreement to be executed as of the day and year first set forth above.

ACCEPTED AND AGREED:

("Administrator")

By: _[signature]_

An authorized signatory on behalf of
ArtistShare Music Publishing LLC

("You," "Publisher")

By: _[signature]_

MARIA SCHNEIDER d/b/a MSF Music