Exhibit 11

to the Declaration of Paul N. Harold



# Writer Member Agreement

## WARRANTIES AND REPRESENTATIONS

A.  I represent that there are no existing assignments or licenses, direct or indirect, of non-dramatic performing rights in my musical works, except to or with the publisher(s). If there are assignments or licenses other than with publishers, I have attached copies of such assignments or licenses.

B.  I have read the ASCAP Articles of Association, Compendium of Rules and Regulations, and Second Amended Final Judgment entered in *U.S. v. ASCAP* ("*AFJ2*"), and agree to be bound by them, as now in effect, and as they may be amended, and I agree to execute agreements in such form and for such periods as the Board of Directors shall have required and shall hereafter require for all members.

C.  I represent that I meet the eligibility requirements for membership as set forth herein as I have written or co-written a musical work or song that has been performed publicly in any venue licensable by ASCAP (club, live concert, symphonic concert or recital venue, college or university, etc.), performed in an audio visual or electronic medium (film, website, television program, radio station, etc.), commercially recorded, or published as sheet music, a score, or folio which is available for sale or rental. I understand that ASCAP reserves the right to request substantiation of my eligibility for ASCAP membership at any time.

D.  I warrant and represent that all of the information furnished in this application is true. I acknowledge that any agreement entered into between ASCAP and me will be in reliance upon the representations contained in this application, and that my membership will be subject to termination if the information contained in this application is not complete and accurate.

## MEMBERSHIP AGREEMENT

Agreement made between the Undersigned (for brevity called "*Owner*") and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called "*Society*"), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1.  The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

    Of which the *Owner* is a copyright proprietor; or

    Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

    In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part; or

    Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

    In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control, whatsoever, in whole or in part.

    The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

    The rights hereby granted shall include:

    (a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

    (b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, mel-

odies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

   (i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form): provided, however, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic performances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

   (ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performances dramatic.

   (iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operettas, motion pictures or compositions, in respect of other interest under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs," or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at anytime and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this Agreement shall be for a period commencing on the date hereof and continuing indefinitely thereafter unless terminated by either party in accordance with the Articles of Association.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all roy-

GOOG-SCHNDR-00032724

alties, profits, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and in its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of apportionment and distribution of royalties as determined by the Board of Directors in accordance with the Articles of Association as they may be amended from time to time.

8. The *Owner* agrees that the apportionment and distribution of royalties by the *Society* as determined from time to time by the Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him. The *Society* shall have the right to transfer the right of review of any apportionment and distribution of royalties from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate apportionment and distribution of royalties. The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's apportionment and distribution of royalties as will assure a fair, just and equitable distribution of royalties among the membership.

9. **"Public Performance" Defined.** The term "public performance" shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. **"Musical Works" Defined.** The phrase "musical works" shallbe construed to mean musical compositions and dramatico-musical compositions, the words and music there of, and the respectivearrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which is attached hereto.

12. The grant made herein by the *Owner* is modified by and subject to the provisions of (a) the Second Amended Final Judgment in United States vs ASCAP, Civ. Action No. 41-1395 (S.D.N.Y. June 11, 2001), as the same may be amended from time to time, and (b) the provisions of the Articles of Association and resolutions of the Board of Directors.