Exhibit 18

to the Declaration of Paul N. Harold

| | | |
|---|---|---|
| 1 | DAVID H. KRAMER, SBN168452 | BRIAN M. WILLEN (admitted *Pro Hac Vice*) |
| 2 | MAURA L. REES, SBN 191698<br>LAUREN GALLO WHITE, SBN 309075 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
| 3 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation | 1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022 |
| 4 | 650 Page Mill Road<br>Palo Alto, CA 94304-1050 | Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801 |
| 5 | Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100 | Email:  bwillen@wsgr.com |

Email:  dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S CORRECTED AMENDED RESPONSE TO PLAINTIFF MARIA SCHNEIDER'S INTERROGATORY NO. 1**<br><br>Judge:  Hon. James Donato |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | |

**CONTAINS CONFIDENTIAL INFORMATION**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the Northern District of California, Defendants and Counterclaimants YouTube, LLC and Google LLC (collectively, "Defendants") hereby respond to Plaintiff Maria Schneider's Interrogatory No. 1 as follows:

## RESPONSES AND OBJECTIONS

All responses to Interrogatory No. 1 are based upon the information presently known to Defendants and are given without prejudice to Defendants' right to revise and supplement these responses. An answer to an Interrogatory shall not be deemed a waiver of any applicable objection. Likewise, an answer to an Interrogatory shall not be deemed an admission of any assertions contained in that Interrogatory.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. As a threshold matter, Plaintiffs' prolix Definitions, much like the First Amended Complaint, are replete with unsubstantiated assumptions and improper advocacy. Their nested structure, vagueness, and overbreadth render interpreting the Interrogatories themselves (let alone drafting responses to those questions) an unduly burdensome effort that is disproportionate to the needs of this case.

2. Defendants object to the definition of "CMI Video" as vague and ambiguous. In particular, the definition is vague and ambiguous in its use of the undefined terms "CMI," "containing," and "initiated." Defendants further object to this definition as overly broad and unduly burdensome to the extent it requires Defendants to collect information relating to every video uploaded to YouTube, regardless of their relevance to the parties' claims or defenses in this case.

3. Defendants object to the definition of "Concerning" as vague and ambiguous. In particular, the term is vague and ambiguous in its use of the undefined terms "relating," "referring," "describing," "evidencing," and "construing." Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses.

4.      Defendants object to the definition of "Content ID System" as vague and ambiguous, particularly in its use of the phrase "YOUR copyright management tool." Defendants have created and made available many tools for protecting the copyrights of others. Defendants further object to Plaintiffs' descriptions in Paragraphs 2, 8, 9, 10, and 12 of the Complaint as inaccurate in their characterization of Content ID. Defendants specifically object to Plaintiffs' characterization of Content ID as being "completely divorced" from YouTube, LLC's repeat-infringer policy. *See* Compl. ¶ 12. For purposes of responding to the Interrogatories, the "Content ID System" will be defined as a tool YouTube provides to certain users for the purpose of managing copyrighted works that scans videos uploaded to YouTube and compares them against files previously provided to YouTube by copyright owners. *See* "How Content ID works," https://support.google.com/youtube/answer/2797370?hl=en.

5.      Defendants object to the definition of "Metadata" as overly broad (especially insofar as it encompasses "any information"), vague, and ambiguous. In particular, the definition is vague and ambiguous in its use of the phrases "attached to," "embedded in," "part of," and "provides information."

6.      Defendants object to the definition of "Tags" as vague and ambiguous, particularly in its use of the undefined term "descriptive keywords" and the phrase "find content."

7.      Defendants object to the definition of "You," "Your," and "Yourself" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Defendants further object to the definition to the extent it seeks information not currently in the possession, custody, or control of Counterclaimants. Defendants will respond solely on behalf of themselves (Google LLC and YouTube, LLC), and not any other subsidiaries or affiliates, or any other person or entity. Defendants further object to the definition on the grounds that it includes Counterclaimants' attorneys and requires Defendants to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Interrogatories, "You,"

"Your," and "Yourself" will be defined as Google LLC, YouTube, LLC, and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.[1]

8. Defendants object to the Instructions accompanying Plaintiff's Interrogatories to the extent that such Instructions purport to impose obligations on Defendants in excess of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law, or to the extent that the Instructions purport to require Defendants to take actions or provide information not required by or which exceed the scope of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law.

9. Defendants object to the Instructions as to identification of individuals and "Users" as overbroad and unduly burdensome. In particular, the Instructions require Defendants to collect information (such as dates of hire and home telephone numbers) that is not relevant to the parties' claims or defenses in this action and is not proportional to the needs of the case. Defendants further object to the extent the Instructions seek confidential information relating to third parties or subject to privacy obligations, such home telephone numbers, physical addresses, and IP addresses.

10. Defendants object to the definition of "Relevant Period" insofar as it calls for information beyond the scope of the three-year statute of limitations applicable to Plaintiff's claims. *See* 17 U.S.C. § 507(b).

**SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES**

**INTERROGATORY NO. 1:**

**Provide the following information concerning CMI Videos:**

   **a. Do Your systems now have, or have they ever had, the capacity to detect the existence of CMI during or after the upload process?**

   **b. If the answer to subpart (a) is no, then could Your systems be designed to detect the existence of CMI during or after the upload process?**

   **c. If Your answer to subpart (b) is yes, then why have You not done so?**

---

[1] Per the parties' agreement, Defendants will produce otherwise discoverable information that is retained by, owned by, possessed by, or in the control of Alphabet Inc.

AMENDED RESPONSE TO            -3-            CASE NO. 3:20-CV-04423-JD
PLAINTIFF'S INTERROGATORY NO. 1

**d. If Your answer to subpart (a) is yes, have You ever enabled Your systems to detect the existence of CMI during or after the upload process?**

**e. If Your answer to subpart (d) is no, then why have You not done so?**

**f. If a User uploads a CMI Video, do You maintain a copy of that video in its original form with CMI intact, or do You otherwise retain copies or maintain records of the CMI associated with the video?**

**g. If a User uploads a CMI Video, do You strip, remove or otherwise fail to maintain the CMI as part of the upload process?**

**h. If a User uploads a CMI Video, do You strip, remove, or otherwise fail to maintain the CMI when the CMI Video is published on Your platform?**

**i. If a User uploads a CMI Video, do You publish the associated CMI when the video is published on Your platform?**

**<u>AMENDED RESPONSE TO INTERROGATORY NO. 1</u>:**

Defendants object to this Interrogatory on the grounds that it is vague and ambiguous. In particular, Defendants object to the Interrogatory because it is vague and ambiguous in its use of the phrases "systems," "CMI," "CMI Video," "upload process," and "strip, remove, or otherwise fail to maintain."

Defendants further object that this Interrogatory is compound to the extent that it contains multiple sub-parts, each of which may count against Plaintiff's allotted total number of interrogatories.

Defendants further object to the extent that this Interrogatory calls for the production of proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, imposing a further burden on Defendants that is out of line with Plaintiffs' legitimate needs.

Subject to and without waiving the above objections, Defendants respond as follows:

1. When users upload files to YouTube, in addition to representing that they have the right to share the content they are uploading, they grant YouTube broad licenses to use, copy, and create derivative works of the content in connection with the service. In the vast majority of cases, videos uploaded to the service are automatically transcoded as a part of the upload process. Transcoding is a widely-used process of taking encoded audio and video data and converting it

into an encoding scheme that is compatible with a service's computer systems. Transcoding can convert videos into different standards and into various resolutions within each standard.

2. After a video has been transcoded, the transcoded version is generally accessible to viewers. In some but not all cases, YouTube archives the original uploaded video in a compressed format. The transcoding process is explained in more technical detail below, in response to Interrogatory No. 5.

3. The automated transcoding process does not examine the uploaded file for the existence of metadata and does not make any determination about whether the file contains metadata or whether any such metadata might or might not constitute CMI. The transcoded version of uploaded videos does not include metadata associated with the original uploaded file (whether or not any of that metadata may include CMI), but it does include all of the original audio-visual material contained in the original video file. That includes any such audio-visual material that might constitute CMI, such as visual watermarks or other identifying information. Such material remains audible or visible as part of the transcoded video that is accessible through the YouTube service. Even without the transcoding process, any metadata that is not perceptible from the audio-visual material itself, would not, in any event, be accessible to YouTube users because, in part for copyright protection reasons, files are streamed to, rather than downloaded by, users of the service. Defendants' transcoding process uses FFmpeg, a multimedia framework used by other leading video streaming services. FFmpeg is not able to detect the existence of CMI in a CMI Video. Defendants are not aware of any commercially available software capable of detecting the existence of CMI in a CMI Video.

4. Transcoding is an essential part of video processing for YouTube, and YouTube transcodes videos for several reasons. Transcoding helps provide a safe and secure experience for YouTube's users. By transcoding videos, YouTube ensures that a video served to viewers does not have any potentially malicious content (such as malware, spyware, or bugs) that may have been included in the uploaded video file. Transcoding also protects user privacy, as an uploaded video and its metadata may contain personally identifiable information or other sensitive information

1  that could be subject to privacy regulations under various applicable laws. Transcoding also helps
2  with compatibility. An uploaded video may be in a format that is not viewable for all the devices
3  that might view it. Transcoding lets YouTube deliver the video to a variety of devices and ensures
4  that the video is playable on both modern and legacy devices. Additionally, transcoding assists
5  with data compression, which helps save bandwidth and storage space.

6       5.   As part of the video-upload process, the user uploading the video may enter data
7  about the video into text fields provided by YouTube that are used to identify and describe the
8  video. Those fields include title, description, and user-specified keywords known as "tags." This
9  entered metadata is generally available to viewers. Moreover, in connection with YouTube's
10 music licensing efforts, YouTube seeks valid and verified copyright information for the musical
11 compositions used in audio-visual content accessible through YouTube, which it uses in
12 connection with its copyright management operations.

13      6.   YouTube's systems do not have the capacity to detect and cannot be designed to
14 detect the existence of CMI, because those systems have no way to determine whether any
15 metadata in the file constitutes CMI, and no way to verify the accuracy of information in fields
16 that could conceivably contain CMI, as users can add, remove, or modify the information in
17 embedded metadata before uploading a given video. YouTube therefore does not know whether
18 the contents of any given field do or do not constitute copyright management information about
19 the associated video, or even if it were CMI, whose CMI it might be.

20      7.   YouTube has not considered "imposing a requirement for maintaining Copyright
21 Management Information for all uploads" as posited by Plaintiffs' RFP No. 53, which
22 Defendants understand as seeking information regarding whether YouTube has considered
23 maintaining all embedded metadata in uploaded video files rather than removing such metadata
24 in the transcoded versions. YouTube's transcoding process that removes embedded metadata
25 from uploaded video files is, as noted above, an essential part of the operation of YouTube's
26 video service that is necessary for multiple reasons. And, as further noted above, YouTube has
27 no way to verify whether such embedded metadata includes CMI applicable to the associated
28 video in any event. Even if metadata appeared to fall into a category that could conceivably

CONFIDENTIAL

constitute CMI, such as a title of a video, YouTube does not know whether it is accurate and therefore whether it would be CMI related to that video. Accordingly, YouTube would not consider the hypothetical "requirement" in Plaintiffs' RFP.

8. YouTube's Content ID copyright management system does not use embedded metadata from original uploaded videos. YouTube has not considered using such embedded metadata for use in Content ID, because, as noted, it is unreliable and there is no way to know whether any such metadata reflects CMI about the associated video. Such unreliable data would degrade the quality of Content ID and compromise its functionality. Further, embedded metadata in original uploaded video files can include malware or other security threats. Importing that metadata into other systems would raise unnecessary security issues.

9. YouTube ingests significant quantities of information, including CMI, about Content ID assets directly from copyright owners and their authorized representatives, such as via its DDEX feed. Because of its strong commitment to protecting copyrights, YouTube seeks to ensure that information about assets in Content ID is as accurate and reliable as possible. For that reason, YouTube places a high value on using first-party information. *See, e.g.*, GOOG-SCHNDR-0032969 (Content Identification and Management Agreement provides that "[y]ou will deliver the Reference Files and metadata in the format and via the delivery method specified by Google. You further acknowledge that the System requires certain metadata to effectively identify and manage the Works, and that your failure to provide complete, accurate and properly formatted metadata may result in the failure of the System to function as intended.") Embedded metadata from original uploaded files is not provided with any representations that it is believed to contain accurate CMI; indeed, the uploader may not even know it is there. Using such unverifiable, hidden metadata would be counterproductive as it would lead to false identifications and would generally make it more difficult for copyright owners to use YouTube's tools to protect their copyrights.

**VERIFICATION OF PARAGRAPHS 1-7 IN RESPONSE TO INTERROGATORY NO. 1**

I have read the foregoing Interrogatory response, and the answers contained therein are true to the best of my knowledge, information and belief.

/s/ Thierry Foucu
Thierry Foucu
Tech Lead Manager
Executed at San Jose, CA on March 7, 2022

**VERIFICATION OF PARAGRAPHS 8-9 IN RESPONSE TO INTERROGATORY NO. 1**

I have read the foregoing Interrogatory response, and the answers contained therein are true to the best of my knowledge, information and belief.

/s/ Julian Bill
Julian Bill
Group Product Manager
Executed at San Bruno, CA on March 7, 2022

Dated: March 8, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Lauren Gallo White
Lauren Gallo White

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

# CERTIFICATE OF SERVICE

I, Deborah Grubbs, declare:

I am employed in Santa Clara County, State of California. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

On this date, I served:

1. **DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S CORRECTED AMENDED RESPONSE TO PLAINTIFF MARIA SCHNEIDER'S INTERROGATORY NO. 1**

☒ By forwarding the document(s) by electronic transmission on this date to the Internet email address listed below:

BSFYouTube@bsfllp.com and Ktyoutube@koreintillery.com

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of documents for delivery according to instructions indicated above. In the ordinary course of business, documents would be handled accordingly.

I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct. Executed at San Mateo, California on March 8, 2022.

*Deborah Grubbs*
Deborah Grubbs