George A. Zelcs (*pro hac vice*)
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
  rewing@koreintillery.com
Ryan Z. Cortazar (*pro hac vice*)
  rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe (*pro hac vice*)
  cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
  pkorologos@bsfllp.com
Joanna Wright (*pro hac vice*)
  jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice*)
  dblaisdell@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiff Maria Schneider*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;

Plaintiffs,

vs.

YOUTUBE, LLC; and GOOGLE LLC;

Defendants.

_____

YOUTUBE, LLC and GOOGLE LLC;

Counter-Plaintiffs,

v.

PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC,
Counter-Defendants.

CASE NO.  3:20-cv-4423-JD

**PLAINTIFF MARIA SCHNEIDER'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Date: October 13, 2022
Time: 10:00 am
Courtroom: 11
Judge: Hon. James Donato

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. i

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT .................................................................................................................. 5

  I.    Defendants' License Arguments Fail. ................................................................ 5

    A.    The MWP Contract Did Not Grant YouTube a "Blanket License." .............. 6

      1.    Federal Law That Defendants Ignore Requires Resolution of Any Conflicting State-Law Interpretation of a Copyright License in Favor of Federal Principles. ......................... 6

      2.    New York Law Construes the Approval Requirement as A Condition. ...................... 7

      3.    Federal Law Likewise Construes the Approval Requirement as A Condition. ............ 8

      4.    Plaintiff's Interpretation Aligns Federal and State Law, Avoiding Any Conflict. ......... 8

      5.    Defendants' Other Interpretive Arguments Misconstrue the Contract. ...................... 9

      6.    The PLA and Agency Principles Lead to a Consistent Result. ................................... 10

      7.    Defendants Cannot Establish that Ms. Schneider Ratified any Sublicense. .............. 12

    B.    Any License Granted to YouTube by Ms. Schneider Under the YouTube TOS Did Not Permit Others to Infringe Her Works. ............................................................................... 13

  II.    Defendants Are Not Entitled to Summary Judgment on Schneider's CMI Claims. ........... 15

    A.    Plaintiff Has Identified Works at Issue with Altered or Removed CMI. ...................... 15

    B.    The Scienter Requirements in Section 1202 Do Not Insulate Defendants' Conduct. .. 18

    C.    Ms. Schneider Has Not Authorized YouTube to Remove Metadata. .......................... 20

  III.  Defendants' Arguments that Hundreds of Ms. Schneider's Infringements and Her 1202(b) Claims Are Time-Barred Raise Disputed Material Facts. ................................................... 21

    A.    The Contractual Limitation in the TOS is Unenforceable. ........................................ 21

    B.    Defendants Have Waived Any Contractual Limitations Defense. .............................. 23

    C.    The Copyright Act's Statute of Limitations Does Not Bar Ms. Schneider's Claims. .. 24

CONCLUSION ............................................................................................................... 25

**TABLE OF AUTHORITIES**

Cases

*1230 Park Assocs., LLC v. N. Source, LLC*,
48 A.D. 355 (1st Dep't 2008) ............................................................................. 11

*Adobe Sys. Inc. v. NA Tech Direct Inc.*,
2019 WL 5579472 (N.D. Cal. Oct. 29, 2019) ...................................................... 24

*Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortgage Capital, Inc.*,
821 F.3d 297 (2d Cir. 2016) ............................................................................... 7

*Baxter v. Genworth N. Am. Corp.*,
16 Cal. App. 5th 713 (2017) ............................................................................... 22

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ..................................................... 14

*Darnaa, LLC v. Google, Inc.*,
2015 WL 7753406 (N.D. Cal. Dec. 2, 2015) ...................................................... 23

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
2016 WL 11784406 (C.D. Cal. Nov. 7, 2016) .................................................... 24

*Friedman v. Live Nation Merch., Inc.*,
833 F.3d 1180 (9th Cir. 2016) ............................................................. 15, 16, 19

*Gardner v. Nike, Inc.*,
279 F.3d 774 (9th Cir. 2002) .................................................................. 6, 8, 9

*Graham v. James*,
144 F.3d 229 (2d Cir. 1998) ............................................................................. 10

*Hadcock Motors, Inc. v. Metzger*,
92 A.D.2d 1 (N.Y. App. Div. 4th Dept. 1983) .................................................. 7

*Hernandez v. Spacelabs Med. Inc.*,
343 F.3d 1107 (9th Cir. 2003) ........................................................................... 13

*Hicks v. Bush*,
10 N.Y.2d 488 (1962) ........................................................................................ 12

*Highland Cap. Mgmt. LP v. Schneider*,
607 F.3d 322 (2d Cir. 2010) ............................................................................. 11

*In re Juul Labs, Inc., Antitrust Litig.*,
555 F. Supp. 3d 932 (N.D. Cal. 2021) .............................................................. 22

*In re Software Toolworks Inc.*,
50 F.3d 615 (9th Cir. 1994) ............................................................................... 22

*Jorst v. D'Ambrosio Bros. Inv. Co.*,
No. C 00-03646 CRB, 2001 WL 969039 (N.D. Cal. Aug. 13, 2001) ................ 24

*Kling v. Hallmark Cards Inc.*,
225 F.3d 1030 (9th Cir. 2000) ........................................................................... 25

*MDY Industries, LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011) .................... 6, 8, 9

*Michael Grecco Prods., Inc. v. Ziff Davis, LLC*,
   830 F. App'x 233 (9th Cir. 2020) ........................................................................................ 25

*Moreno v. Sanchez*,
   106 Cal. App. 4th 1415 (2003) ..................................................................................... 22, 23

*Nevada v. Watkins*,
   914 F.2d 1545 (9th Cir. 1990) ............................................................................................. 7

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
   310 F. Supp. 3d 1089 (S.D. Cal. 2018) ............................................................................. 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014) ........................................................................................................... 24

*Precedo Cap. Grp. Inc. v. Twitter Inc.*,
   33 F. Supp. 3d 245 (S.D.N.Y. 2014) ............................................................................ 11, 12

*Purnell v. Lord,*
   952 F.2d 679 (2d Cir. 1992) ................................................................................................ 7

*Ramirez v. Charter Commc'ns, Inc.*,
   75 Cal. App. 5th 365 (2022) ......................................................................................... 21, 22

*S.O.S., Inc. v. Payday, Inc.*,
   886 F.2d 1081 (9th Cir.1989) .............................................................................................. 9

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) ....................................................................................................... 21

*Schnieder v. YouTube*, Order re Motion to Dismiss,
   No. 3:20-cv-04423-JD, ECF 157 (N.D. Cal. August 1, 2022) .......................................... 18

*Sun Microsystems, Inc. v. Microsoft Corp.*,
   188 F.3d 1115 (9th Cir. 1999) ......................................................................................... 6, 8

*U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*,
   893 F.2d 1117 (9th Cir. 1990) ........................................................................................... 23

*Wells Fargo Bank Nw., N.A. v. Polaris Holding Co.*,
   2005 WL 1889385 (N.D. Cal. Aug. 9, 2005) .................................................................... 18

*Winfield Cap. Corp. v. Mahopac Auto Glass, Inc.*,
   208 A.D.2d 715 (2d Dept. 1994) ......................................................................................... 8

*Zamora v. Lehman*,
   214 Cal. App. 4th 193 (2013) ............................................................................................ 23

**Statutes**

17 U.S. C. § 507(b) ................................................................................................................ 23, 24

17 U.S.C. § 1202(b) ............................................................................................................... passim

17 U.S.C. §106 ............................................................................................................................. 8

**Other Authorities**

Restatement (Second) of Contracts § 224 cmt. a (1981)...................................................................... 7

Plaintiff Maria Schneider respectfully submits this opposition to Defendants' Motion for Summary Judgment as to Plaintiff Maria Schneider (Dkt. No. 164) ("Motion" or "Br.").

## INTRODUCTION

Defendants' Motion is fundamentally flawed and should be denied.

Defendants' blanket license argument misconstrues Ms. Schneider's Administration Agreement with her publishing administrator.  The unambiguous language of that agreement unmistakably conditions the ability of Ms. Schneider's administrator to grant a license for her works on the administrator first notifying her and obtaining her prior written approval. Defendants provide no evidence of any such notification, and she never approved any such license.  Defendants also ignore federal law on interpreting copyright licenses, which makes clear that § 7 of the Administration Agreement is a condition to any license.  YouTube's other license argument improperly stretches its Terms of Service ("TOS") to claim that Ms. Schneider not only granted a license to YouTube for works she uploaded but also insulated YouTube from all claims, including inducement, contributory, and vicarious infringement claims, arising from even rampant infringement of such works by other uploaders.  Defendants' argument is contrary to the TOS and inconsistent with YouTube's practices in policing copyrights.  *See* Section I, below.

Defendants' attempts to avoid liability for their violation of § 1202(b) by failing to preserve copyright management information ("CMI") likewise fail.  Ms. Schneider's identification of nine videos where YouTube stripped her CMI metadata, together with YouTube's admission that it systematically removes *all* CMI metadata from videos uploaded to its platform, confirm YouTube's violation of § 1202(b).  And the effect of YouTube's removal of CMI is clear: it prevents Ms. Schneider and the putative CMI class from using CMI to detect infringement. YouTube's own reliance on the same kind of CMI for a variety of copyright ownership issues on its platform—including to resolve ownership disputes between copyright claimants—more than satisfies the scienter requirements of § 1202(b).  *See* Section II, below.

On the statute of limitations, Defendants waived the argument that a one-year limitations period applies by failing to raise that defense until after the close of fact discovery.  In Defendants'

1  Answer to Ms. Schneider's Original Complaint, Defendants expressly asserted a "three-year"

2  statute of limitations under the Copyright Act.  Moreover, Defendants' new position is based on

3  the TOS, which is a contract of adhesion and in the circumstances of this case is unenforceable as

4  an unreasonable modification of the statute of limitations.  Defendants' argument also relies on the

5  timing of only the first infringement of a work and thus fails to show the absence of subsequent

6  infringements during the statutory period.  *See* Section III, below.

7  **STATEMENT OF FACTS**

8  Plaintiff Schneider is a seven-time GRAMMY Award-winning jazz musician, composer,

9  and arranger, who owns copyrights in 85 musical compositions at issue in this litigation.  Blaisdell

10  Decl. Ex. 9 (Plaintiff's Second Am. Interr. Resp. No. 1).  Videos containing these works have

11  repeatedly been uploaded without authorization to and viewed by users of, YouTube.  Blaisdell

12  Decl. Exs. 10 (2/25/22 list of infringing works); 11 (7/5/22 supplemental list of infringing works),

13  7 (Plaintiff's Interr. Resp. Nos. 1 and 2); 9 (Plaintiff's Second Am. Interr. Resp. Nos. 1 and 2).

14  Ms. Schneider has been an outspoken advocate for the rights of musicians and other

15  copyright holders and a frequent critic of YouTube.  Ms. Schneider has testified before Congress,

16  and written numerous opinion editorials criticizing YouTube's role in promoting copyright

17  infringement.  Schneider Decl. ¶¶ 6, 24; Blaisdell Decl. Ex. 14.  Defendants' witness Dan

18  Coleman, who acted as Ms. Schneider's publishing administrator, was aware of Ms. Schneider's

19  positions and statements in this regard.  Blaisdell Decl. Exs. 26 (8/01/2016 email from

20  Ms. Schneider to Dan Coleman); 23 (05/26/2016 email from Coleman); Schneider Decl. ¶ 24.

21  ***Administration Agreement Between Schneider and AMP.***  On January 1, 2008,

22  Ms. Schneider entered into the Music Publishing Administration Agreement (the "Administration

23  Agreement") with ArtistShare Music Publishing LLC ("AMP").[1]  Coleman Decl. Ex. A, ECF 164-

24  7.  Ms. Schneider appointed AMP as "the sole and exclusive Administrator" of her compositions.

25  *Id.* § 6.  Schneider retained ownership of her works: "**4. OWNERSHIP REMAINS WITH YOU**.

26

27  ────────────

[1] Defendants' moving papers confusingly refer to AMP as "ArtistShare" which fails to distinguish AMP from Ms. Schneider's current record label, ArtistShare, Inc.

28

The rights granted to [AMP] in this Agreement are solely administrative in nature and do not extend any rights of ownership whatsoever in or to any of the Compositions or copyrights thereto." *Id.* § 4 (emphasis in original).  Ms. Schneider also reserved for herself full control of her copyrights because AMP was required to "notify" Ms. Schneider "and obtain" her "prior written approval for any license we grant on your behalf":

> **"7. YOUR CREATIVE CONTROL.** Notwithstanding anything to the contrary expressed or implied herein, we must notify you and obtain your prior written approval for any license we grant on your behalf. It is agreed and understood that either you or your designated agent, who you may designate in writing to us from time to time ("Designated Agent") can give consent under this §7. We will deem to have received your consent under this §7 if, after ten (10) business days from the receipt of our request, we have not received a reply from you or your Designated Agent. Notwithstanding anything contained in this §7, you agree and understand that copyright laws and common business practices outside of the USA might hinder or preclude Administrator's efforts to obtain your consent in each instance. Administrator agrees to require all subpublishers to comply with the terms of this §7 to the extent possible in their respective territories, but any inadvertent failure to timely obtain your consent will not be deemed a breach of this Agreement." *Id.* § 7.

According to Dan Coleman, one of the principals of AMP, AMP "assigned all its duties under the Administration Agreement" to MWP.  Coleman Decl., ECF 164-6, ¶ 3.  Ms. Schneider was not informed of that assignment.  Schneider Decl. ¶¶ 20-23.  She understood that, consistent with § 7 of the Administration Agreement, AMP (or any assignee) would notify her and seek her prior written approval before granting a license.  Schneider Decl. ¶ 15.  The language of § 7 is consistent with this understanding with the sole contingent exception of licenses outside the United States.  During the time in which AMP and/or MWP have served as Ms. Schneider's publishing administrator, they have consistently sought her approval before entering into any license on her behalf.  *See id.* ¶ 17; *see e.g.*, Blaisdell Decl. Exs. 27 (10/14/2016 request from Coleman to Schneider to approve license for a BBC documentary); 33 (6/26/2019 request from Coleman to Schneider to license works for a Belgian documentary).  Ms. Schneider received no notice of a grant of a license to YouTube and never provided approval to AMP or MWP to license her works to YouTube.  Schneider Decl. ¶ 29.  Defendants submit no evidence to the contrary.

***PLA Between MWP and Google.***  In April 2014, MWP entered into a Publishing License Agreement (the "PLA") with Defendant Google Inc.  Suk Decl. Ex. 1, ECF 164-3.  Under the

PLA, MWP granted to Google "solely with respect to Publisher's share of rights in each Publisher Composition, a nonexclusive, nontransferable, nonsublicensable, royalty-bearing, limited right and license, to (i) Store, Reformat, make On-Demand Streams of, make Conditional Downloads of, and Display Publisher Compositions as have been embodied in (A) User Videos . . . ." *Id.* § 2.a. The license was limited to "Publisher Composition[s]," meaning compositions "owned or controlled by" MWP. *Id.* at 11. There is little to no evidence that MWP actually provided copies of any of Ms. Schneider's copyrighted works to YouTube. *See* Br. at 7 (citing Coleman Decl., ECF 164-6, ¶¶ 5-8, which states only that MWP "provided data files to YouTube containing information about works it controls,") and Coleman Decl. Ex. C, ECF 164-9 (stating in 2016 that there were "10 titles that we supplied to YT in 2013 and 2014" and that "the songs existed but had not yet been attached to any videos"). Among other factual discrepancies, eight of these 10 titles appear to have been provided to YouTube prior to MWP entering into the PLA. Blaisdell Decl. ¶ 42; Ex. 24. Defendants present no evidence that Ms. Schneider was ever notified of a potential license pursuant to the PLA, let alone any evidence that she provided prior written approval for any license purportedly granted for her works pursuant to the PLA. Schneider Decl. ¶ 29.

Ms. Schneider received Client Royalty Summaries showing, among a myriad of other royalties, royalties from YouTube and Google that total a few cents per month. Blaisdell Decl. ¶ 43 and Exs. 18-22, 28-32, 34 (approximately $18.53 in royalties from YouTube or Google over six years). These royalties were paid for 10 of her works at issue, with 3 receiving just a penny total. *Id.* ¶ 43. Ms. Schneider did not contemporaneously review each line of these summaries. *Id.* Ex. 1. (Schneider Dep. Tr. 156:9-19); Schneider Decl. ¶ 38. She was not aware of any such royalties from YouTube or Google before this lawsuit. Schneider Decl. ¶ 40.

Neither AMP nor MWP notified Ms. Schneider prior to entering into the PLA. *Id.* ¶ 29. Indeed, conspicuously absent from Coleman's declaration is any assertion as to when MWP informed Ms. Schneider of the PLA. *See* Coleman Decl., ECF 164-6, ¶ 6 (asserting that "in multiple conversations, I told Schneider that Modern entered into the PLA to access CID for its entire administered catalog," using the past tense and without stating that any such conversation

pre-dated the PLA); *see also* Schneider Decl. ¶ 30 (confirming to Coleman her longstanding

position that she did not want her works monetized on YouTube).  Harold Decl. Ex. 8, ECF 164-

19.  The first time that Ms. Schneider learned that MWP had entered into any license agreement

involving Google was in 2020.  Schneider Decl. ¶ 26.  During a telephone call in early September

2020, Coleman told Ms. Schneider that he had entered into the PLA but stated that MWP had

never uploaded any of her works to Content ID.  Schneider Decl. ¶¶ 26-27.

   ***Schneider's Copyright Management Information.***  Ms. Schneider consistently includes

International Standard Recording Codes ("ISRC"), among other CMI such as track title and album

name, in the metadata when she releases her musical works.  *Id.* ¶ 51.  Ms. Schneider has

identified specific ISRC codes in interrogatory responses.  Blaisdell Decl. Ex. 9.  YouTube

concedes that during its upload process ("transcoding"), it ███████████████████████

███████████████████████████████████████████████ *Id.* Ex. 6

(Defendants' Interr. Resp. No. 12).  The ████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ *Id.*

   ***Facts Concerning Statute of Limitations.***  Ms. Schneider has identified 389 infringements

that are at issue in this litigation.  *Id.* Exs. 10, 11; Schneider Decl. ¶¶ 9-10.  She and her counsel

conducted searches on YouTube to identify these infringements.  Blaisdel Decl. Ex. 9.  These

infringements at issue include at least 260 infringements that she first became aware of within one

year prior to filing this lawsuit and at least 308 infringements that she first became aware of within

three years before filing.  *Id.* Ex. 12.  Plaintiff Schneider has also identified nine infringing videos

that contained CMI metadata in the form of the song titles of her copyrighted works—metadata

that YouTube removed when the videos were uploaded in violation of 17 U.S.C. §1202.  Blaisdell

Decl. Ex. 38 (Jessop Rpt.) ¶ 156.

## ARGUMENT

I.  **Defendants' License Arguments Fail.**

   The plain text of the Administrative Agreement between Ms. Schneider and AMP states,

1   "Notwithstanding anything to the contrary expressed or implied herein," AMP "must notify"

2   Ms. Schneider "and obtain" her "prior written approval for any license we grant on" her behalf.

3   Coleman Decl. Ex. A, ECF 164-7, § 7.  This unambiguous, mandatory language created a

4   condition on AMP's (and MWP's) power to grant licenses under federal and state law.

5   Defendants' argument to the contrary—that "must" actually means "should"—improperly relies

6   on a manufactured interpretation of the agreement and is inconsistent with applicable federal

7   copyright law (which Defendants entirely ignore) and agency principles.  *See* Section I.A., below.

8      Defendants' argument that Schneider granted a license under YouTube's Terms of Service

9   also fails.  First, the license YouTube claims via the TOS does not license all YouTube users to

10  infringe her works or otherwise insulate YouTube from claims arising from such users'

11  infringement.  Second, even if the TOS granted the overly broad license hoped for by Defendants,

12  Defendants have made no showing that such license was in effect for each work commencing at

13  the time of each infringing upload and throughout the period of display.  *See* Section I.B., below.

14  **A.  The MWP Contract Did Not Grant YouTube a "Blanket License."**

15     1.  Federal Law That Defendants Ignore Requires Resolution of Any Conflicting
        State-Law Interpretation of a Copyright License in Favor of Federal Principles.

16

17  A "copyright license raises issues that lie at the intersection of copyright and contract law."

18  *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1122 (9th Cir. 1999).  In navigating

19  this intersection, the Ninth Circuit examines both federal and state law, and federal law controls if

20  there are inconsistencies between the two.  *Gardner v. Nike, Inc.*, 279 F.3d 774, 781 & n.5 (9th

21  Cir. 2002).  As shown below, Plaintiff's plain reading that § 7 of the agreement constitutes a

22  condition precedent is consistent with New York and federal law and avoids any conflict.

23  Defendants' argument that § 7 is a mere covenant conveniently ignores federal precedents

24  conflicting with their reading of the clause.

25     While federal law borrows the conceptual distinction between covenants and conditions

26  when interpreting copyright licenses, in the Ninth Circuit, courts "refer to contractual terms that

27  limit a license's scope as 'conditions,' the breach of which constitute copyright infringement,"

28  while the remaining terms are "'covenants,' the breach of which is actionable only under contract

1    law." *MDY Industries, LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010).  Under this

2    test, state law informs the analysis only "to the extent consistent with federal copyright law and

3    policy."  *Id.*  Thus, while state law guides the process of contract interpretation and the semantic

4    construction of license terms, federal law examines the substantive import of the provisions in

5    light of federal policy articulated in the Copyright Act and controls if conflicts arise.[2]  *See id.*

6            2.   <u>New York Law Construes the Approval Requirement as A Condition.</u>

7            Under New York law, clauses are conditions where they require a property owner's prior

8    written consent before transferring the property.  *Morrison by Morrison v. Worldwide Ins. Group*,

9    212 A.D.2d 518, 519 (N.Y. App. Div. 2d Dept. 1995) (prior written consent a condition precedent

10   to an insurance payout); *Hadcock Motors, Inc. v. Metzger*, 92 A.D.2d 1, 5 (N.Y. App. Div. 4th

11   Dept. 1983) (prior written approval a condition precedent to property sale).  The primary function

12   of conditions is to "denote an event that limits or qualifies a transfer of property."  Restatement

13   (Second) of Contracts § 224 cmt. a (1981).  By construing prior written consent clauses as

14   conditions, New York law recognizes that a formal consent requirement limits or qualifies a

15   transfer of property by subjecting it to the independent judgment of the property owner.  Here, the

16   notice and "prior written approval" clause limits and qualifies any transfer of Schneider's

17   intellectual property by subjecting it to her independent judgement.

18           Section 7 also meets the semantic guidelines for conditions under New York law.

19   Linguistically, the clause is unambiguous—the term "must" means that AMP (or MWP) was

20   obligated to notify Ms. Schneider and was obligated to obtain "prior" written approval.  *Purnell v.*

21   *Lord,* 952 F.2d 679, 684 (2d Cir. 1992) ("must" is "language of an unmistakably mandatory

22   character").  Because this command unmistakably required Ms. Schneider's notice and prior

23   approval before AMP or MWP could grant a license, it created a condition precedent.  *See Bank of*

24   *New York Mellon Trust Co., N.A. v. Morgan Stanley Mortgage Capital, Inc.*, 821 F.3d 297 (2d Cir.

25   2016) ("specific words are strong evidence of, but not necessary to, conditions precedent; the core

---

27   [2] By failing to address this federal law in their Motion, Defendants have waived any argument that
     federal law does not conflict with and control over any state law interpretation.  *Nevada v.*
28   *Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990)

1  inquiry, as in all contracts, is to give effect to the parties' 'clear intent,' as expressed through the

2  'unmistakable language' they use); *Winfield Cap. Corp. v. Mahopac Auto Glass, Inc.*, 208 A.D.2d

3  715, 715 (2d Dept. 1994) (prior notice required before rent charges was condition precedent).

4        3.  <u>Federal Law Likewise Construes the Approval Requirement as A Condition.</u>

5        After examining a license under state contract law, the Ninth Circuit requires courts to

6  apply federal law to determine whether a provision is a condition or covenant even if state law

7  would construe it as a covenant.  *See MDY Industries, LLC*, 629 F.3d at 940.

8        Copyright licenses are thus special types of contracts that require interpretive rules

9  sensitive to copyright policy.  *See, e.g., Gardner*, 279 F.3d at 781 & n.5; *Sun Microsystems*, 188

10  F.3d at 1122.  One such rule (that Defendants conveniently ignore) defines "contractual terms that

11  limit a license's scope as 'conditions.'"  *MDY Industries*, 629 F.3d at 939.  Applying this rule,

12  copyright claims may proceed "where the licensee's action (1) exceeds the license's scope (2) in a

13  manner that implicates one of the licensor's exclusive statutory rights."  *Id.* at 940.

14        The relevant clause on its face limits the license's scope by allowing a license only in

15  instances where the administrator notifies Ms. Schneider of the potential license and obtains her

16  "prior written approval" (or a tacit approval ten days after notice).  AMP and MWP thus could not

17  have granted a license to YouTube without exceeding the scope of the license rights they obtained

18  from Ms. Schneider.  AMP or MWP would have exceeded the scope of such rights by granting a

19  license to YouTube through the PLA without notifying Schneider and without obtaining her prior

20  approval.  Such a grant would implicate Schneider's exclusive statutory rights because they would

21  result in the unauthorized performance and distribution of her works in violation of her exclusive

22  rights under 17 U.S.C. § 106.

23        4.  <u>Plaintiff's Interpretation Aligns Federal and State Law, Avoiding Any Conflict.</u>

24        Plaintiff's interpretation that § 7 is a condition precedent for a copyright license aligns

25  New York law with federal law and avoids a conflict between the two.  Defendants' interpretation,

26  however, relying solely on state law, creates a conflict between this Circuit's rules of copyright

27  license interpretation and Defendants' argument under New York law.  In the event of such a

28

conflict, the interpretation under federal law must prevail.  *Gardner*, 279 F.3d at 781 & n.5 (citing *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir.1989)) ("We rely on state law to provide the canons of contractual construction, but only to the extent such rules do not interfere with federal copyright law or policy."); *accord MDY Industries*, 629 F.3d at 939 (state law informs the interpretation of a license only "to the extent consistent with federal copyright law and policy").

Consistent with Plaintiff's interpretation, the Ninth Circuit recognized in *Gardner*, 279 F.3d  at 781, that the Copyright Act "preserve[s] the rights and control of the owners and creators" by "[r]equiring the licensee to get explicit consent from the licensor" before granting a sublicense. Under *Gardner*, "an exclusive licensee has the burden of obtaining the licensor's consent before it may assign its rights, absent explicit contractual language to the contrary."  *Id.* at 781.  Plaintiff's license avoids the "troublesome and potentially litigious situations that could arise from allowing the licensor to be excluded from the negotiations with a sublicensee" (*id.*) by reserving her right of prior approval for any sublicenses.  Defendants' reading, by contrast, doubles down on this "troublesome" problem by suggesting a sublicense through invented ambiguity inconsistent with both the language of the agreement and Ninth Circuit precedent.

5.  Defendants' Other Interpretive Arguments Misconstrue the Contract.

Defendants' attempts to manufacture factual confusion in interpreting the clearly conditional language of § 7 are likewise unavailing.  Defendants point to the second sentence of § 7, which states, "Notwithstanding anything contained in this § 7, you agree and understand that copyright laws and common business practices outside of the USA might hinder or preclude Administrator's efforts to obtain your consent in each instance."  Coleman Decl. Ex. A, ECF 164-7, § 7.  But this language applies to licenses granted pursuant to "copyright laws and common business practices outside of the USA", *id.*, while the licenses Defendants rely on in the PLA are U.S. licenses.  *See* Suk Decl. Ex. 1, ECF 164-3, § 2(b).  Moreover, that sentence at most addresses obtaining consent and does not, even for non-US licenses, alter the obligation for prior notice.

The other provision Defendants cite states, "Administrator agrees to require all subpublishers to comply with the terms of this § 7 to the extent possible in their respective

1  territories, but any inadvertent failure to timely obtain your consent will not be deemed a breach of

2  this Agreement."  Coleman Decl. Ex. A, ECF 164-7, § 7.  This provision also governs licenses

3  granted by subpublishers in "their respective territories" and thus contemplates potential licenses

4  outside the U.S.  Moreover, it does not alter or provide an exception to the unmistakable first

5  sentence requiring notification to and prior written approval.  Notably, that last sentence of § 7

6  does not contain the phrase, "Notwithstanding anything contained in this § 7".  Further, it, at most,

7  excuses a breach if "timely consent" is not obtained and even then, only if it was inadvertent.  It

8  does not excuse the requirement for approval, and it does not address the required notification.

9  Notably, Defendants put forward no incontrovertible evidence (or any at all) that MWP acted only

10  inadvertently in failing to obtain Ms. Schneider's timely approval.  Indeed, it would be impossible

11  for Defendants to do so given Mr. Coleman's knowledge of Ms. Schneider's views concerning

12  YouTube and licensing.  Blaisdell Decl. Ex. 26; Schneider Decl. ¶¶ 24, 30, 34, 36.

13        6.  <u>The PLA and Agency Principles Lead to a Consistent Result.</u>

14        Even aside from ignoring contradictory federal law principles as noted above, Defendants'

15  reliance on *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), is misplaced.  *Graham* involved a

16  direct oral licensing agreement between a copyright owner and publisher.  When the publisher

17  breached the agreement, the copyright owner brought a claim against the publisher for

18  infringement.  Here, the license trail relies on a purported assignment to an administrator (AMP)

19  who then (Defendants assert) had its assignee MWP license works that the assignee did not have

20  the right to license.  The lack of authority to act in an agency capacity that exists in the case at bar

21  is absent from *Graham* given the direct license privity there.  *Id.* at 233.

22        Applying agency principles further undermines Defendants' argument.  As an initial

23  matter, the PLA itself eliminates the ability of YouTube to rely on any agency theory since the

24  only "Publisher Compositions" licensed under the PLA are those that are "owned or controlled"

25  by MWP.  Suk Decl. Ex. 1, ECF 164-3, at 11.  The PLA thus requires that MWP have actual

26  ownership or control to license the works, not merely a belief by YouTube that MWP has the

27  authority to act on behalf of Ms. Schneider.  Moreover, as a subcontractor to Ms. Schneider's

28

publishing administrator, MWP had no ownership or control of any of Ms. Schneider's works, particularly where MWP did not notify or obtain prior approval from Ms. Schneider to grant a license on her behalf.  Schneider Decl. ¶¶ 15, 29.  And YouTube was clearly aware of the lack of such control that would occur if there was a failure to obtain "authorizations and licenses that are required in order for it to (i) fully perform its obligations", as there clearly was here.  Suk Decl. Ex. 1, ECF 164-3, § 6 (Representations and Warranties).  Finally, AMP was never Ms. Schneider's publisher and as such MWP could never have been assigned by AMP to act as Ms. Schneider's publisher.  Schneider Decl. ¶ 13; Coleman Decl. Ex. A, ECF 164-7, at preamble (Administration Agreement, defining Ms. Schneider as "Publisher").  As such, MWP could not have been a "Publisher", as MWP is referred to in the PLA, with respect to any of Ms. Schneider's works.  *See* Suk Decl. 1, ECF 164-3, at preamble.

New York agency law leads to a consistent result.  An agent can have actual or apparent authority.  *Precedo Cap. Grp. v. Twitter*, 33 F. Supp. 3d 245, 253 (S.D.N.Y. 2014).  Actual authority requires that "the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power."  *Highland Cap. Mgmt. v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010).  The "existence of apparent authority hinges upon the principal's communications to the third party," *Precedo*, 33 F. Supp. 3d at 254.

Far from providing unlimited actual authority to AMP or its purported assignee MWP, the Agreement unambiguously required AMP (or MWP) to notify Ms. Schneider and get her written approval "prior" to licensing her works—a requirement that could not be modified or rescinded other than "by mutual written agreement of both parties hereto."  Coleman Decl. Ex. A, ECF 164-7, §§ 7, 20.  Defendants do not assert that MWP or AMP sought Ms. Schneider's approval or permission, or even notified her before licensing her works to YouTube.  Schneider Decl. ¶ 29.

Defendants likewise cannot rely on apparent authority. They do not and cannot show any communications by Ms. Schneider, the principal, to YouTube.  Defendants instead rely on communications from MWP, *not* Ms. Schneider, about the PLA.  *See* Coleman Decl., ECF 164-6, ¶ 5; Schneider Decl. ¶ 29*; See Precedo Cap. Grp.*, 33 F. Supp. 3d at 253; *1230 Park Assocs., LLC*

1  *v. N. Source, LLC*, 48 A.D. 355-56 (1st Dep't 2008) (agent lacked apparent authority where "No

2  acts or statements by" plaintiff principal "conferred such authority").

3  　　　　As Ms. Schneider testified, she did not authorize AMP (or MWP) to license her works to

4  YouTube, and, pursuant to her agreement with AMP, Mr. Coleman was required to obtain her

5  approval before licensing her works, and he did not do so with regard to YouTube: "Dan Coleman

6  does not have the rights to all my works.  Only – everything is with my permission, case by case,

7  piece by piece."  Blaisdell Decl. Ex. 1 (Schneider Dep. Tr. 147:5-9).   "Control and ownership of

8  my work is very important. And I made sure that my contract with Dan Coleman administering

9  my work, knew that my creative control and my choices were what overrode everything."

10  Blaisdell Decl. Ex. 1 (Schneider Dep. Tr. 150:5-10); *see also* Blaisdell Decl. Exs. 15 (February

11  2008 exchange in which Mr. Coleman writes, █████████████████████████████████

12  █████████████████████████████████████████████████████████████████

13  █████████████████████████████████████████████████████████████████

14  ████████████████████████████ (emphasis added); 16 (July 2008 email from Mr. Coleman

15  responding to question about whether prospective license is ████████████████████

16  ████████████████████████████████████████████████████████████████████);

17  17 (Coleman email to Schneider: "I did license this use for you, and it was such a teeny tiny

18  license that I inadvertently neglected to email you separately about it. I'm so sorry about that. I

19  will do better.").  Ms. Schneider's testimony makes clear that even assuming, *arguendo*, that § 7

20  were ambiguous (which it is not), a disputed factual issue exists.  Under New York law, "[p]arol

21  testimony is admissible to prove a condition precedent . . . if the condition does not contradict the

22  express terms of such written agreement." *Hicks v. Bush*, 10 N.Y.2d 488, 491 (1962).

23  　　　　7.　Defendants Cannot Establish that Ms. Schneider Ratified any Sublicense.

24  　　　　Finally, Defendants' argument (Br. at 11) that Ms. Schneider ratified the purported

25  assignment by accepting royalty payments passed on by AMP to Schneider is likewise unavailing.

26  To establish ratification, Defendants would have to show that Ms. Schneider had "full and

27  complete knowledge of all the material facts of the transaction." *Precedo Cap. Grp. Inc.*, 33 F.

28

1  Supp. 3d at 254.  YouTube submits selected pages from royalty statements that show total royalty

2  payments of $0.47 and $1.49 from YouTube and Google on a total of five compositions over a

3  period of six months.  Coleman Decl. Ex. D, ECF 164-10.  These excerpts fail to demonstrate that

4  Ms. Schneider had "full and complete knowledge" of those royalties or that they resulted from her

5  works being licensed to YouTube under the PLA.  All of these royalty payments come from AMP

6  and none of them disclose MWP, concealing a critical step between the claimed source of the

7  revenue.  Blaisdell Decl. Exs. 18-22, 28-32, 34.  Ms. Schneider "did not notice" YouTube royalty

8  payments because the royalty summary statement was "very long," "indecipherable," and

9  "generally, the things that pay significant amounts that are concerts, various things, that's what

10  I'm scanning for."  Blaisdell Decl. Ex. 1 (Schneider Dep. Tr. 156:9-19); *see also* Schneider Decl.

11  ¶ 38.  Even had she noticed the payments, there was no way to tie them to a specific license.

12  Schneider Decl. ¶ 40.  Such disputed factual issues prevent summary judgment.

13  **B.  Any License Granted to YouTube by Ms. Schneider Under the YouTube TOS Did Not Permit Others to Infringe Her Works.**

14  The TOS do not license all uploaders to infringe works of others; Defendants' conclusory

15  statements and contradictory assertions fail to support its argument and ignore disputed factual

16  issues.  Such "conclusory allegations, unsupported by facts, are insufficient to survive a motion for

17  summary judgment."  *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1116 (9th Cir. 2003).

18  Defendants provide no support for the proposition that the TOS authorize any YouTube

19  user to upload videos infringing the copyrights of other users that have previously posted videos to

20  YouTube containing their works, or that YouTube is insulated from all infringement claims when

21  users do so.  If allowing unlimited use of one's copyrighted work was a condition of upload, few if

22  any copyright holders would ever post their works on YouTube.  Indeed, Defendants' argument is

23  contradicted by YouTube's own copyright management tools available to users who post works on

24  YouTube.  For example, YouTube's Copyright Match Tool "scans for full uploads of your videos

25  on other YouTube channels" to detect and enable the blocking of subsequently uploaded copies of

26  a user's video (Blaisdell Decl. Ex. 39)—a function entirely superfluous if YouTube's TOS granted

27  all users a license to use any works uploaded to YouTube.  Likewise, no asserted license by

28

13

1  Ms. Schneider under the TOS would insulate YouTube from contributory, inducement of, or

2  vicarious infringement claims arising out of the conduct of such users on YouTube with respect to

3  Ms. Schneider's copyrighted works since the infringement supporting such claims is by third-

4  parties rendering any purported license to YouTube irrelevant for such claims.  *See, e.g., Perfect*

5  *10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 726-31 (9th Cir. 2007).

6       The plain language of YouTube's TOS demonstrates that Defendants' interpretation of the

7  TOS is unworkable.  The TOS expressly grant uploaders "a non-exclusive license to access [their]

8  Content through the Service, and to use, reproduce, distribute, display and perform such Content

9  *as permitted through the functionality of the Service and under these Terms of Service*."  Zhu

10  Ex. 1 ¶ 6(C) (emphasis added).  But the TOS expressly prohibit copyright infringement and state

11  that "YouTube does not permit copyright infringing activities and infringement of intellectual

12  property rights on the Service, and You Tube will remove all Content if properly notified that such

13  Content infringes on another's intellectual property rights."  *Id.* ¶ 6(F).  Users further agree that

14  videos they submit "will not contain third party copyrighted material, or material that is subject to

15  other third party proprietary rights, unless you have permission from the rightful owner of the

16  material or you are otherwise legally entitled to post the material and to grant YouTube all of the

17  license rights granted herein."  *Id.* § 6(D).  Therefore, the upload of infringing content by third-

18  parties would be outside the scope of any purported license contained in the TOS.

19       The single case Defendants rely on is inapposite.  *See Bus. Casual Holdings, LLC v.*

20  *YouTube, LLC*, 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022) (granting YouTube's motion to

21  dismiss copyright infringement claim where under its TOS YouTube "cannot be liable for directly

22  infringing any copyrights associated with any content that [the plaintiff] has uploaded to its

23  channel").  The court did not find that the license the plaintiff issued to YouTube under the TOS

24  was so "clear and broad" as to allow other YouTube users to infringe plaintiff's copyrights and

25  only addressed "direct" infringement.

26       Moreover, Defendants' argument is factually unsupported.  Defendants simply assert,

27  without explanation, that the "TOS License Defense" applies to 12 of Plaintiff's works and 114 of

28

14

Plaintiff's 381 infringement claims.  Br. at 15.  Defendants do not attempt to show when the works in question were uploaded (and acknowledge that at least one license dates back to 2013, Br. at 15) compared to when they were infringed.  *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1104 (S.D. Cal. 2018) ("Declarations that contain only conclusory statements, instead of specific facts, are insufficient unless accompanied by other evidence to corroborate the statements.").  Defendants also claim blanket licenses based on videos uploaded by Ms. Schneider which generally contained only short clips of her music.  Schneider Decl. ¶ 42.

## II.     Defendants Are Not Entitled to Summary Judgment on Schneider's CMI Claims.

Ms. Schneider can establish, or raise questions of material fact regarding, each element of Defendants' violation of 17 U.S.C. § 1202(b).  First, Ms. Schneider has demonstrated that YouTube removed CMI metadata identifying the song titles of her infringed works from nine videos.  Indeed, YouTube admits that it removes all metadata, including CMI metadata, through the transcoding process upon upload.  *See* Section II.A, below.

Second, YouTube is fully aware that the removal of CMI could "induce, enable, facilitate, or conceal an infringement."  17 U.S.C. § 1202(b).  Defendants collect and exploit metadata to track ownership, to resolve ownership disputes, and for YouTube's search algorithms.  Metadata—and the ubiquitous presence of copyrighted material in uploaded videos—are twin pillars of YouTube's business model.  As the Ninth Circuit has held in a Section 1202 case at the summary judgment stage, "Questions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment."  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016).  *See* Section II.B, below.  Third, Ms. Schneider did not authorize YouTube to remove metadata from her copyrighted works because the license purportedly granted to YouTube by MWP is null and void.  Even if effective, which it is not, the license would not authorize YouTube to strip her CMI metadata, or to distribute works from which metadata had been stripped by a third party.  *See* Section II.C, below.

### A.  Plaintiff Has Identified Works at Issue with Altered or Removed CMI.

Ms. Schneider has identified two categories of works from which CMI was removed.  The

1    first category are videos that contained CMI metadata at the time of upload and the CMI was

2    removed by YouTube.  In discovery, Plaintiffs identified infringing videos and Defendants

3    produced files showing the metadata that was associated with those infringing videos at the time

4    of upload.  Those files revealed nine videos that contained Ms. Schneider's CMI—titles of her

5    copyrighted works—which YouTube removed during the transcoding process.[3]  *See* Blaisdell

6    Decl. Exs. 9 (Plaintiff's Second Am. Interr. Resp. No. 9); 38 ¶ 153 (expert report of Paul Jessop

7    noting nine instances of CMI removal).  These nine videos and the associated works for which

8    CMI was contained were identified in the expert report of Paul Jessop served on September 1,

9    2022,[4] and have now also been identified in Ms. Schneider's interrogatory responses.  *Id.* ¶ 163

10   ("Of the ten populated 'clfn' fields contained in the metadata files provided to me, 9 identify

11   Schneider works.").

12        The second category of works at issue are infringing videos that contain Ms. Schneider's

13   copyrighted works but do not contain the ISRCs that she includes when she releases her works.

14   Ms. Schneider affixed ISRCs to her works when she released them; identified the ISRC codes for

15   her works in interrogatory responses; and identified which infringing videos contain which works.

16   Blaisdell Decl. Exs. 10 (2/25/22 list of infringing works); 11 (7/5/22 supplemental list of

17   infringing works); 7 (Plaintiff' Am. Interr. Resp. No. 9 indicating the ISRC codes of Works in

18   Suit); 9 (Plaintiff's Second Am. Interr. Resps. No. 9 dated 9/9/22); Schneider Decl. ¶ 51.

19   Defendants' interrogatory responses establish that none of the infringing videos contain this

20   statutorily protected metadata.  Blaisdell Decl. Exs. 5, 6.  And Defendants' own use of ISRC codes

21   establishes their knowledge of their association with recorded musical works throughout the

22   distribution process.  YouTube either stripped the metadata itself or distributed works knowing,

23   due to the ubiquity of the use of ISRC codes in the recording industry (*see* Schneider Decl. ¶ 51.),

24   that CMI had been removed, which is prohibited by Section 1202(b)(3).  *See* Blaisdell Exs. 39, 38

25

26   [3] Specifically, the files contained a "clfn" field, a tag that has been registered by Apple Inc. for ClipFileName and which carries the file name of a clip used as a component of the resulting video.

27   [4] Defendants cannot complain these videos were identified in an expert report served after Defendants' Motion.  It was Defendants' choice to file a motion for partial summary judgment nearly five months before the Scheduling Order's deadline for doing so.

28

1  ¶ 32.  *See Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1189 (Plaintiff "could also prevail upon

2  a showing that Live Nation distributed his works with the knowledge that CMI had been removed,

3  even if Live Nation did not remove it.").

4       Defendants' mischaracterization of deposition testimony does not refute these facts.

5  Defendants' assertion (Br. at 17) that Ms. Schneider testified she did not use any embedded

6  metadata as CMI to protect her works misrepresents her testimony.  In the cherry-picked portion

7  of her deposition (Br. at 17 citing to Schneider Dep. 214:6-12), Ms. Schneider was discussing the

8  prevalence of ISRC on YouTube *in general*.  Speaking about her own works, Ms. Schneider

9  explained, "on every recorded work of mine that would be put on YouTube, there would be an

10  ISRC code.  There would be CMI on those.  That's put in by the engineer when they make -- they

11  give you the files, when you get -- when you master a recording."  Blaisdell Decl. Ex. 1,

12  (Schneider Dep. Tr. 214:12-18); *see also* Schneider Decl. ¶ 51.

13       Defendants claim that Zach Bornheimer (who has acted in various freelance roles for

14  Ms. Schneider since 2017) and Marie Le Claire (who has worked as Ms. Schneider's assistant,

15  road manager, and booking agent) "repeatedly testified that they did not use any embedded

16  metadata (ISWC, ISRC or otherwise) as CMI to protect her works from infringement."  Br. at 17.

17  Mr. Bornheimer's *actual* testimony was that he was *unable* to search the YouTube platform using

18  the metadata itself because the YouTube search function *does not permit* such searches.  Blaisdell

19  Decl. Ex. 2 (Bornheimer Dep Tr. 205:7-9) ("I don't have the ability to search video files' metadata

20  on YouTube using YouTube's search functionality.").  And Ms. Le Claire was never tasked with

21  any role that involved metadata and testified that she has a "very, very limited knowledge" about

22  metadata.  Blaisdell Decl. Ex. 4 (Le Claire Dep. Tr. 190:12-13).

23       Ms. Schneider has identified CMI that was in her copyrighted works and has shown that

24  those works have been uploaded to YouTube where, Defendants admit, they removed all such

25  CMI.  Ms. Schneider's and Mr. Bornheimer's testimony, and the expert report of Paul Jessop,

26  show that if YouTube had preserved CMI in its transcoding process, Ms. Schneider, her agents,

27  and other rightsholders could have more easily policed infringement of copyrighted work on the

28

platform.  *See also* Blaisdell Decl. Ex. 12 at -58 ("Provider will provide Google with the accurate and complete metadata…to create algorithms based on Provider Content for search functionality.").

### B. The Scienter Requirements in Section 1202 Do Not Insulate Defendants' Conduct.

YouTube admits that it removes metadata, including CMI, when videos are uploaded:



Blaisdell Decl. Ex. 6; *see also Id.* Ex. 5 (Defendants' Interr. Resp. No. 5) ▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆.  In short, if there is any metadata associated with the original upload, YouTube removes that metadata during the transcoding process.  Moreover, because YouTube utilizes some of the metadata associated with uploaded videos in its transcoding process, it must read all the associated metadata to determine whether each field is needed.  Blaisdell Decl. Ex. 38 ¶ 154.

Under the second element of the "double scienter" requirement, Defendants must have acted knowing that the removal or distribution will "induce, enable, facilitate, or conceal an infringement."  17 U.S.C. § 1202(b).  As an initial matter, that element goes to Defendants' state of mind, and "a court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder."  *Wells Fargo Bank Nw., N.A. v. Polaris Holding Co.*, 2005 WL 1889385, at *11 (N.D. Cal. Aug. 9, 2005).

Further, this Court has already found that the facts alleged create a plausible inference that "YouTube removed the CMI from plaintiffs' works with knowledge that doing so carried a 'substantial risk' of inducing infringement."  Order re Motion to Dismiss, No. 3:20-cv-04423-JD, ECF 157 (N.D. Cal. August 1, 2022) (citing *Stevens v. CoreLogic*, 899 F. 3d 666, 676 (9th Cir. 2018)).  Documents produced in discovery, deposition testimony, and YouTube's admissions

1   demonstrate at a minimum a "plausible inference" of such knowledge.

2        For example, YouTube's own conduct and documents demonstrate its understanding of the

3   importance of CMI in rights management and that failure to preserve CMI could "induce, enable,

4   facilitate, or conceal an infringement," establishing scienter consistent with §1202(b).  *See*

5   *Friedman,* 833 F.3d at 1188–89 ("whether a party had knowledge of a particular circumstance is a

6   question of fact subject to demonstration in the usual ways, including inference from

7   circumstantial evidence.").  Defendants have extensive knowledge of significant infringing content

8   being uploaded daily to YouTube's platform.  In its Copyright Transparency Report, YouTube

9   admits that YouTube's own proprietary Content ID system identified over 759 million copyright

10  claims in the first half of 2021 where content uploaded to the platform was actually owned by a

11  party other than the uploader.  Blaisdell Decl. Ex. 37.

12       Defendants are well aware of the importance of the CMI utilized by Ms. Schneider to

13  identify and protect her works.  YouTube admits that ███████████████████████████████

14  ███████████████████████████████████████████████████████████████████████

15  ██████████████████████████████  Blaisdell Decl. Ex. 8.  YouTube also *requires*

16  participants in the Content ID program to provide "accurate and complete metadata," including

17  ISRCs and ISWCs."  *See* Blaisdell Decl. Ex. 12.  YouTube uses that information as proof of

18  ████████████████████████████████████████████████████████████████████████

19  ████████████  *Id.*; *see also* Suk Ex. 1, ECF 164-3, § 3(d) ("Publisher will provide Google with

20  the metadata . . . required by Google's then-current specifications, including ISWC, ISRC, title,

21  territorial restrictions, and writer and composer data including ownership splits.").  YouTube even

22  uses such metadata to resolve ownership conflicts between rightsholders.  Blaisdell Decl. Ex. 36 at

23  -20669 ███████████████████████████████████████████████████████████

24  ██████████████████████████████████████████████; *see also id.* Exs. 13 at -935

25  ████████████████████████████████████████████████

26  ████████████████████████; 35 at -53910 ██████████████████████████

27  ████████████████████████████████████████████████████████████

28

1    █████████████████ YouTube's use of ISRCs to identify assets in the Content ID

2 database and its copyright management systems establishes that YouTube knew removal of such

3 metadata would deter discovery of infringing videos or at least creates a material question of fact.

4       Defendants cite *Stevens v. CoreLogic,* as a "leading case" on CMI claims at the summary

5 judgment stage, but *Stevens* supports denial of Defendants' Motion.  Plaintiffs in that case had

6 failed to show a pattern of infringement.  While a Plaintiff asserting a claim under Section 1202(b)

7 "need not show actual infringement," such evidence is "relevant to Plaintiffs' burden to show that

8 CoreLogic had a reasonable ground to believe it was likely to happen."  *Stevens*, 899 F.Supp.3d at

9 1053.  Here, Plaintiffs have shown that Ms. Schneider's works were actually infringed and that

10 there is manifestly rampant infringement on YouTube.  And, as discussed above, Defendants use

11 metadata to discover infringement through the Content ID system.  Therefore, Ms. Schneider has

12 made the affirmative showing required to establish that YouTube is "aware or has reasonable

13 grounds to be aware" that CMI is useful for policing infringement and that the systematic removal

14 of CMI actively hinders that policing.

15    **C.  Ms. Schneider Has Not Authorized YouTube to Remove Metadata.**

16       At no time has Ms. Schneider authorized YouTube to remove metadata, including CMI,

17 from her works.  First, as explained extensively in Section I, above, Ms. Schneider never

18 authorized AMP or MWP to license to YouTube any of her works pursuant to the PLA.

19 Therefore, the licenses and permissions purportedly granted to YouTube do not exist.  Second,

20 even if they did exist, the PLA does not permit YouTube to remove embedded metadata.

21 Defendants try to avoid this by partially excerpting the definition of the term "Reformat" in the

22 PLA.  The full definition provides, "'Reformat' means to digitally re-encode, *without modification*

23 *of the content therein*, for the purpose of facilitating its transmission in the form of an On-Demand

24 Stream or Conditional Download."  Suk Decl. Ex. 1, ECF 164-3, at 12.  CMI is metadata

25 embedded in the audio file.  If "without modification of the content" means anything, it must

26 mean that YouTube is not licensed to actively *remove* content contained in the files uploaded to its

27 platform.  Third, Ms. Schneider's Section 1202(b) claims do not only allege that YouTube

28

removed CMI through the transcoding process.  She also alleges that YouTube distributed her

copyrighted works knowing that CMI had been removed by third parties.  FAC ¶¶ 82–86.

Defendants do not argue that the purported authorizations contained in the PLA would permit

YouTube to distribute works from which CMI had been removed by a third-party.

### III.   Defendants' Arguments that Hundreds of Ms. Schneider's Infringements and Her 1202(b) Claims Are Time-Barred Raise Disputed Material Facts.

#### A.  The Contractual Limitation in the TOS is Unenforceable.

The contractual limitations period contained in the YouTube TOS is unenforceable as it is

both procedurally and substantively unconscionable.  "If a court finds a clause within a contract to

have been unconscionable at the time it was made, the court may refuse to enforce the contract, or

instead sever the unconscionable clause."  *Ramirez v. Charter Commc'ns, Inc.*, 75 Cal. App. 5th

365, 373 (2022); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 2016 WL

9223889, at *4 (C.D. Cal. Dec. 22, 2016) (denying summary judgment where plaintiff argued

YouTube searches "reveal[ed] too many results to reasonably find infringing activity").  The TOS

that Schneider agreed to when creating her YouTube account in 2012 is a "contract of adhesion"

under California law.  "An adhesive contract is standardized and offered by the party with superior

bargaining power on a take-it-or-leave-it basis."  *Id.* at 373 (internal quotation marks omitted).

When Ms. Schneider accepted the TOS, she had *no* bargaining power.  As a matter of law "the

adhesive nature of the contract is sufficient to establish some degree of procedural

unconscionability."  *Id.* (alteration omitted).  The procedural unconscionability of this contract is

compounded because Schneider did not have a meaningful choice to reject the contract—she had

to enter into it in order to protect her rights.  Schneider Decl. ¶ 47.  The Supreme Court of

California has noted that "absence of meaningful choice on the part of one of the parties" is an

important factor in an unconscionability analysis.  *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.

4th 899, 910 (2015).

Although the procedural unconscionability inherent in a contract of adhesion "does not

render it automatically unenforceable," it prompts courts to "scrutinize the substantive terms of the

contract to ensure they are not manifestly unfair or one-sided."  *Valencia Holding Co., LLC*, 61

1    Cal. 4th at 915.  The contractual limitations period is also substantively unconscionable here.

2    While courts will enforce parties' agreements for a shortened limitations period, they do so only

3    "*provided it is reasonable*."  *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1430 (2003) (emphasis

4    added).  A contractual period is "reasonable" only "if the plaintiff has a sufficient opportunity to

5    investigate and file an action, [and] the time is not so short as to work a practical abrogation of the

6    right of action, and the action is not barred before the loss or damage can be ascertained."

7    *Ramirez*, 75 Cal. App. 5th at 373 (2022) (internal quotation marks omitted).  California courts

8    typically find that modifications are reasonable only in "the context of straightforward transactions

9    in which the triggering event for either a breach of a contract or for the accrual of a right is

10   *immediate and obvious*."  *Moreno*, 106 Cal. App. 4th at 1430 (emphasis added).  Here, the accrual

11   of Ms. Schneider's claims was anything but "immediate and obvious."  The gravamen of

12   Plaintiffs' claims is that YouTube restricts access to the tools necessary to identify infringing

13   content on the platform.  YouTube should not be allowed to bind users to severely restricted,

14   contractually modified statute of limitations and simultaneously deny them the tools necessary to

15   root out copyright infringement and pursue judicial remedies.

16        California courts and federal courts in this district applying California law have routinely

17   identified one-year contractual limitations to be unreasonable and unenforceable where their

18   application would "work a practical abrogation of the right of action."  *Baxter v. Genworth N. Am.*

19   *Corp.,* 16 Cal. App. 5th 713, 731 (2017).  *See In re Juul Labs, Inc., Antitrust Litig.,* 555 F. Supp.

20   3d 932, 955 (N.D. Cal. 2021) (contractually modified one year statute of limitations was

21   "substantively unconscionable" and unenforceable); *Ramirez*, 75 Cal. App. 5th at 375 (same); *see*

22   *also Moreno*, 106 Cal. App. 4th at 1432 (contractual provision unenforceable where "shortened

23   limitations period in this context may thus foreclose an effective judicial remedy.").  Further,

24   reasonableness is a quintessential question of fact—"summary judgment is generally an

25   inappropriate way to decide questions of reasonableness because the jury's unique competence in

26   applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment." *In*

27   *re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994) (internal quotation marks omitted).

28

1  Whether the contractual limitations period is reasonable is thus a question inappropriate for

2  resolution now.  Because the contractual limitations period is procedurally and substantively

3  unconscionable, that provision of the TOS should not be enforced.

4  Defendants cite (Br. at 22 n.7 ) *Darnaa, LLC v. Google, Inc*., 2015 WL 7753406, at *3-4

5  (N.D. Cal. Dec. 2, 2015), but that decision is distinguishable.  In *Darnaa*, the court relied heavily

6  on the assumption that "plaintiff was free to take its video content elsewhere."  *Id*. at 2.  But, as

7  explained above, Ms. Schneider is unable to use the copyright management tools provided by

8  YouTube to police against the very claims at issue without creating an account and accepting the

9  TOS.  Schneider Decl. ¶ 47.  Therefore, if she wanted to police infringement of her copyrighted

10  works on YouTube she is forced to accept the shortened limitations period.  Further, on the

11  question of substantive unconscionability, the *Darnaa* court did not engage in a detailed analysis,

12  declaring only that it was "not unreasonable."  *Darnaa* at *3.  However, the cases relied on for that

13  proposition in *Darnaa* are not applicable here.  For example, in *Zamora v. Lehman*, 214 Cal. App.

14  4th 193, 208-09 (2013), the court found that a one-year contractual limitations period was not

15  unreasonable, but the court distinguished *Moreno* (cited above) at length, finding that, unlike

16  *Moreno*, the contractual limitations period at issue adopted "the delayed discovery rule" (*i.e.*, the

17  limitations period only begins to run upon discovery of the harm).  No such rule is adopted in

18  YouTube's TOS.  YouTube should not be allowed to bind users to an unreasonably short

19  limitations period that could run well before any actual infringement has been discovered,

20  particularly when the ability to discover such infringement is curtailed by YouTube.

21  **B. Defendants Have Waived Any Contractual Limitations Defense.**

22  Defendants have also waived any defense based on a shortened limitations period

23  contained in the TOS.  Federal Rule of Civil Procedure 8(c) requires that a statute of limitations

24  defense be pleaded or it is waived.  *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 893

25  F.2d 1117, 1122 (9th Cir. 1990).  Defendants' Answer to the original complaint, which contained

26  all the claims by Ms. Schneider on which this motion seeks summary judgment, pleaded only

27  17 U.S.C. § 507(b), the Copyright Act's statute of limitations, as a defense and expressly asserted

28

1   a *three-year* limitations period.  Defendants' 9/21/20 Answer and Counterclaims, ECF 34 at 22.

2   Defendants did not then assert and have since waived a one-year statute of limitations having

3   waited until August 22, 2022, in their Answer to Plaintiffs' Amended Complaint, to raise this

4   defense—over *two years* after the filing of original Complaint and nearly *two months* after the

5   close of fact discovery in this action.  It would be inequitable to permit Defendants to raise that

6   defense at this late stage.  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2016 WL 11784406, at *3

7   (C.D. Cal. Nov. 7, 2016) (finding waiver where defendants failed to plead shorter limitations

8   period than as set forth in the Copyright Act); *see also Jorst v. D'Ambrosio Bros. Inv. Co.*, 2001

9   WL 969039, at *9 (N.D. Cal. Aug. 13, 2001) (Plaintiffs "have suffered prejudice, as the parties

10   proceeded through almost a year of litigation, including the depositions of multiple witnesses and

11   preparing the summary judgment motions.").

12   **C. The Copyright Act's Statute of Limitations Does Not Bar Ms. Schneider's Claims.**

13   The Copyright Act's statute of limitations is three years from accrual.  17 U.S.C. § 507(b).

14   "[U]nder the 'discovery rule' a copyright claim accrues 'when a party discovers, or reasonably

15   should have discovered, the alleged infringement.'"  *Adobe Sys. Inc. v. NA Tech Direct Inc*., 2019

16   WL 5579472, at *8 (N.D. Cal. Oct. 29, 2019) (quoting *Media Rights Techs., Inc. v. Microsoft,*

17   *Corp*., 922 F.3d 1014, 1022 (9th Cir. 2019).  Ms. Schneider's claims of infringement against

18   YouTube accrued on or after July 2, 2017, that is, within the three years prior to this action.

19   Defendants argue that the three-year statute time-bars "hundreds" of Ms. Schneider's claims

20   because she had "constructive knowledge" or suspicion of infringements.  Br. at 28.

21   Yet Defendants' argument assumes that there were no infringements within the statutory

22   period subsequent to the first infringing upload.  A copyright holder can sue for infringements that

23   took place within the limitations period even if previous infringements would be time-barred.  "It

24   is widely recognized that the separate-accrual rule attends the copyright statute of limitations.

25   Under that rule, when a defendant commits successive violations, the statute of limitations runs

26   separately from each violation.  Each time an infringing work is reproduced or distributed, the

27   infringer commits a new wrong.  Each wrong gives rise to a discrete 'claim' that 'accrue[s]' at the

28

Schneider's Opposition to Defendants' Motion for Summary Judgment       3:20-cv-4423-JD

1  time the wrong occurs."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014).

2  Defendants thus cannot establish there is no question of fact with respect their defense without

3  establishing that there were no views or other displays of the infringing works during the statutory

4  period, even if the infringing video was first uploaded prior to that period.[5]

5        Defendants also argue that Schneider's § 1202 claims are time-barred because she had

6  knowledge that Defendants were removing CMI from videos in March 2017.  But, YouTube

7  cannot insulate itself from liability by imputing some suspicion of a general practice to Ms.

8  Schneider *before* the particular harms even occurred, and absent review of YouTube's data files,

9  Schneider could not know that videos uploaded to YouTube contained metadata including the

10  titles of her copyrighted works.

11  **<u>CONCLUSION</u>**

12        Defendants' motion for partial summary judgment against Ms. Schneider should be denied.

13  Dated: September 9, 2022                    Respectfully submitted,

14

15                                   /s/ Philip C. Korologos
                                 Philip C. Korologos (*pro hac vice*)

16                                   Joanna Wright (*pro hac vice*)
                                 Demetri Blaisdell (*pro hac vice*)

17                                   BOIES SCHILLER FLEXNER LLP
                                 55 Hudson Yards, 20th Floor

18                                   New York, NY 10001

---

19       [5] Further, Defendants assert that Ms. Schneider's claims accrued "at or near the time of"
20  upload, "when a reasonable investigation would have uncovered them."  A central aspect of this
case, however, is that the copyright management tools provided to Ms. Schneider were inadequate
21  to allow her to find infringements on a platform with *billions* of videos.  Without access to the
search capabilities Content ID, Ms. Schneider had no practical or effective way of identifying all
22  of the uploaded videos that infringed her copyrights.  *See* Schneider Decl. ¶¶ 48-50.  Forcing
rightsholders to hunt for the proverbial needle in a haystack or pay large fees for third-party
23  Content ID services does not permit a "reasonable investigation."  As Ms. Schneider testified,
third-party Content ID services do not allow users to *block* videos on YouTube, as the only option
24  is monetization.  *See id.* 30; Blaisdell Decl. Ex 1 (Schneider Dep. Tr. 91:6-8).  Further, MWP's
general access to Content ID was conditioned on licensing works to YouTube.  Suk Decl. Ex. 1,
25  ECF 164-3.  Because Ms. Schneider did not and would not license her works to YouTube, she
could not submit those works for inclusion in Content ID.  Schneider Decl. ¶ 33.  Reasonableness
26  is a question of fact generally inappropriate for resolution at summary judgment.  *Michael Grecco
Prods., Inc. v. Ziff Davis, LLC*, 830 F. App'x 233, 234 (9th Cir. 2020); *Kling v. Hallmark Cards
27  Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000).

28

Phone: (212) 446-2300
Fax: (212) 446-2350

George A. Zelcs (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
Steven M. Berezney, CA Bar #329923
Carol O'Keefe (*pro hac vice*)
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

*Attorneys for Plaintiff Maria Schneider*