1  DAVID H. KRAMER, SBN 168452
   MAURA L. REES, SBN 191698
2  LAUREN GALLO WHITE, SBN 309075
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100
   Email: dkramer@wsgr.com
6         mrees@wsgr.com
          lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**YOUTUBE, LLC AND GOOGLE LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF MARIA SCHNEIDER**<br><br>Date: October 13, 2022<br>Time: 10:00 am<br>Courtroom: 11<br>Judge: Hon. James Donato |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

I.   MWP GRANTED YOUTUBE A VALID LICENSE TO SCHNEIDER'S ENTIRE
     CATALOG OF COMPOSITIONS ................................................................................... 2

     A.   Schneider Does Not Show by Unmistakable Language that Her Prior
          Written Consent Was a Condition Precedent on MWP's License ........................ 2

     B.   Schneider Ratified YouTube's License .................................................................. 6

II.  SCHNEIDER GRANTED YOUTUBE A VALID LICENSE TO ALL WORKS
     SHE UPLOADED .............................................................................................................. 7

III. SCHNEIDER HAS NOT RAISED A TRIABLE ISSUE ON HER CMI CLAIM ............ 8

     A.   Schneider Failed to Identify Any Removed CMI ................................................... 8

     B.   Schneider Authorized YouTube to Remove Embedded Metadata ....................... 10

     C.   Schneider Failed to Establish that YouTube Acted with the Scienter
          Required for Her CMI Claim ................................................................................. 10

IV.  MOST OF SCHNEIDER'S CLAIMS ARE TIME-BARRED ........................................ 12

     A.   The One-Year Limitations Period In The TOS Applies ....................................... 12

     B.   Schneider Had Constructive Knowledge Of The Alleged Infringements ............ 13

     C.   The Separate-Accrual Rule Does Not Rescue Schneider's Claims ...................... 14

     D.   Schneider's 1202(b) Claims Are Time-Barred ...................................................... 15

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*,
 821 F.3d 297 (2d Cir. 2016) ................................................................................................. 3

*Bell v. Oakland Cmty. Pools Project*,
 2020 WL 4458890 (N.D. Cal. May 4, 2020) ....................................................................... 14

*Chelko v. Does JF Rests. LLC*,
 2019 WL 3294201 (W.D.N.C. July 22, 2019) ..................................................................... 15

*Darnaa, LLC v. Google LLC*,
 756 F. App'x 674 (9th Cir. 2018) .................................................................................. 12, 13

*Davis v. Pinterest, Inc.*,
 2022 WL 1316566 (N.D. Cal. May 3, 2022) ......................................................................... 2

*Gardner v. Nike, Inc.*,
 279 F.3d 774 (9th Cir. 2002) ................................................................................................. 5

*Greenfield v. Philles Recs., Inc.*,
 780 N.Y.2d 562 (N.Y. 2002) ................................................................................................. 4

*Hadcock Motors, Inc. v. Metzger*,
 92 A.D.2d 1 (N.Y. App. Div. 1983) ...................................................................................... 2

*Hicks v. Bush*,
 10 N.Y.2d 488 (1962) ........................................................................................................... 4

*John Hancock Life Ins. Co. of New York v. Solomon Baum
 Irrevocable Fam. Life Ins. Tr.*,
 783 F. App'x 89 (2d Cir. 2019) ............................................................................................. 7

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
 2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) ..................................................................... 9

*MDY Indus., LLC v. Blizzard Entm't., Inc.*,
 629 F.3d 928 (9th Cir. 2010) ............................................................................................. 4, 5

*Mills v. Netflix, Inc.*,
 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) ......................................................................... 12

*Morrison by Morrison v. Worldwide Ins. Grp.*,
 212 A.D.2d 518 (N.Y. App. Div. 1995) ................................................................................ 2

*Oppenheimer v. Plexuss, Inc.*,
    2021 WL 5450968 (N.D. Cal. Sept. 7, 2021) .................................................................... 12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    487 F.3d 701 (9th Cir. 2007) ............................................................................................ 7

*Philpot v. WOS, Inc.*,
    2019 WL 1767208 (W.D. Tex. Apr. 22, 2019) .............................................................. 10

*Phx. Techs., Ltd. v. VMware, Inc.*,
    2017 WL 1957042 (N.D. Cal. May 11, 2017) ................................................................ 8

*Purnell v. Lord*,
    952 F.2d 679 (2d Cir. 1992) ............................................................................................ 3

*Richardson v. CBS Studios Inc.*,
    2013 WL 12120265 (C.D. Cal. Sept. 25, 2013) ............................................................... 7

*Roley v. New World Pictures, Ltd.*,
    19 F.3d 479 (9th Cir. 1994) ............................................................................................ 14

*Sedlik v. Von Drachenberg*,
    2022 WL 2784818 (C.D. Cal. May 31, 2022) ............................................................... 10

*Stark Enterprises, Inc. v. Neptune Design Grp., LLC*,
    2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ................................................................ 9

*Stevens v. Corelogic*,
    899 F.3d 666 (9th Cir. 2018) .................................................................................... 10, 11

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    81 F.Supp.2d 1026 (N.D. Cal. 2000) ............................................................................... 5

*Thomas & Betts Corp. v. Trinity Meyer Util. Structures, LLC*,
    2021 WL 4302739 (2d Cir. Sept. 22, 2021) ..................................................................... 3

*U.S. Life Ins. Co. in City of New York v. Blumenfeld*,
    92 A.D.3d 487 (N.Y. App. Div. 2012) ............................................................................ 7

*Victor Elias Photography, LLC v. Ice Portal, Inc.*,
    43 F.4th 1313 (11th Cir. 2022) ...................................................................................... 11

*Winfield Capital Corp. v. Mahopac Auto Glass, Inc.*,
    208 A.D.2d 715 (N.Y. App. Div. 1994) ...................................................................... 3, 4

*Wolf v. Travolta*,
    167 F. Supp. 3d 1077 (C.D. Cal. 2016) .................................................................... 14, 15

**STATUTES**

17 U.S.C. § 1202(b) ................................................................................................... 8, 9, 11, 15

17 U.S.C. § 1202(b)(3) ....................................................................................................... 10

28 U.S.C. § 1746 .................................................................................................................. 6

**RULES**

Fed. R. Civ. P. 37(c) ......................................................................................................... 2, 8

Fed. R. Civ. P. 56 ................................................................................................................. 6

Fed. R. Civ. P. 56(c)(4) ........................................................................................................ 6

Schneider's licensing agent Modern Works Publishing ("MWP") granted YouTube a broad license to use all of her musical compositions on YouTube's service. That license disposes of Schneider's claims. Schneider's made-for-litigation argument—that the license is invalid because she did not consent in writing to her agent's granting it—fails as a matter of law. And Schneider admits she received and retained royalty payments from YouTube for years, never questioning why. The Court need go no further to dismiss Schneider's case.

Schneider's separate TOS License for the works that she uploaded to YouTube is likewise dispositive as to those works. Schneider concedes she agreed to the TOS and to license the content she uploaded in exchange for the service's free benefits. The TOS License bars Schneider from suing YouTube over that content.

Schneider's attempt to salvage her claim under § 1202(b) based on the supposedly improper removal of copyright management information ("CMI") fares no better. Hours before filing her opposition—and two months after the close of discovery—Schneider served interrogatory responses that she hoped would make out some CMI claim over a handful of videos, but those responses are not properly before the Court. Even with them, Schneider does not raise a triable issue; among other reasons, the song titles allegedly embedded in video files were not "removed" but were preserved as the publicly accessible video titles.

Finally, even as she admits that dozens of her infringement claims are time barred, Schneider fails in her attempts to evade the limitations periods for considerably more. As the Ninth Circuit has held, the mutual, one-year limitations period Schneider agreed to in the TOS is not unconscionable. And most of Schneider's claims accrued years ago. She identified many alleged infringements long before the contractual and statutory time bars, and could have identified others had she conducted the routine searches that she later conducted to find the videos now at issue. The fact that those videos continued to be available on YouTube due to Schneider's inaction does not restart the limitations period. Nor is it relevant that she claims to have learned of CMI embedded in the metadata of user-uploaded videos through discovery in this case. She was on notice years before filing suit that YouTube removed embedded metadata from uploaded video files, but points to nothing that excused her extensive delay in filing suit over it.

Discovery exposed multiple dispositive flaws in Schneider's claims. YouTube is entitled to judgment against her.

## I. MWP GRANTED YOUTUBE A VALID LICENSE TO SCHNEIDER'S ENTIRE CATALOG OF COMPOSITIONS

Schneider does not dispute that MWP licensed her content to YouTube or that that license bars her claims for copyright infringement.[1] Instead, she contends that her agent MWP improperly granted the license because it did not have her written permission. Even if that were so, it would make no difference: it would not invalidate the license or allow Schneider to assert infringement claims for works on which YouTube was licensed.

**A. Schneider Does Not Show by Unmistakable Language that Her Prior Written Consent Was a Condition Precedent on MWP's License.** The provision in the Administration Agreement requiring MWP to obtain Schneider's written consent is a covenant, not a condition precedent that could invalidate a license MWP issued without such consent. Mot. 11-13. Schneider cites two cases for the proposition that "[u]nder New York law, clauses are conditions where they require a property owner's prior written consent before transferring the property." Opp. 7. This case does not involve a property transfer; regardless, neither case aids her cause. Both merely conclude that the specific provisions at issue there were conditions precedent, without any discussion of the contractual language. *See Morrison by Morrison v. Worldwide Ins. Grp.*, 212 A.D.2d 518, 519 (N.Y. App. Div. 1995); *Hadcock Motors, Inc. v. Metzger*, 92 A.D.2d 1, 5 (N.Y. App. Div. 1983). It is not disputed that prior written consent *can* be a condition precedent, provided that the contractual language makes it so. But that is not the case here.

The licensing power in § 6 of the Administration Agreement is unconditional, with one

---

[1] With her opposition brief late last week—more than two months after the close of discovery and more than six months after the Court-ordered February 25, 2022 deadline for her to identify her "final" list of infringements (Dkt. 98 at 1-2)—Schneider served amended interrogatory responses purporting, among other things, to put at issue 8 new alleged infringements listed on a "July 5, 2022 List[] of Infringements." Blaisdell Ex. 9 at 6, Ex. 11 at 3. While Schneider's discovery misconduct merits sanctions, for present purposes, it suffices that she may not rely on these untimely claims or purported facts as evidence here. Fed. R. Civ. P. 37(c) (prohibiting a producing party from relying on late-produced discovery); *see, e.g.*, *Davis v. Pinterest, Inc.*, 2022 WL 1316566, at *4-9 (N.D. Cal. May 3, 2022), *appeal docketed*, No. 22-15804 (9th Cir. May 31, 2022) (precluding claims of alleged infringement identified after the relevant deadline).

notable exception: MWP's right to license print copies of Schneider's sheet music (a right not implicated here) is expressly conditioned on or "subject to" compliance with § 12B. Coleman Decl. Ex. A ("Admin. Agreement") § 12B. That is the only aspect of MWP's licensing power that uses any sort of language of condition. And that intentional use of conditional language confirms that the separate provision relating to written consent is not a condition precedent. Schneider does not dispute that conditions precedent must be "expressed in unmistakable language" or that any "ambiguous provisions" must "be construed as promises rather than conditions precedent." *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305, 306 n.8 (2d Cir. 2016). Nor does she dispute: (1) that the Administration Agreement "does not caption or otherwise label" Schneider's consent "as a 'condition precedent,'" (2) that the parties did not "employ any recognized 'linguistic conventions' of condition—such as 'if,' 'on condition that,' 'provided that,' 'in the event that,' and 'subject to,'" or (3) that the failure to use these linguistic conventions with respect to MWP's general power to grant licenses is "particularly significant" given that the parties plainly knew how to employ them, and did so elsewhere. *See id.* at 305-306; Mot. 12-13; *see also Thomas & Betts Corp. v. Trinity Meyer Util. Structures, LLC*, 2021 WL 4302739 (2d Cir. Sept. 22, 2021) (applying rules of construction to reject claim of condition precedent). The text of the Administration Agreement is plain: failure by MWP to obtain Schneider's written consent before licensing the content to YouTube does not, as a matter of law, invalidate the license.

Undaunted, Schneider argues that § 7 of the Administration Agreement—a provision distinct from the licensing authority grant in § 6—uses the word "must" with respect to obtaining her written consent.[2] Opp. 7. But she cites no authority saying that "must" alone signals a condition precedent; of the two cases she cites, one is a qualified immunity case interpreting the word "must" in a state prison's policy statement to mean "mandatory." *See Purnell v. Lord*, 952 F.2d 679, 684 (2d Cir. 1992). The other, *Winfield Capital Corp. v. Mahopac Auto Glass, Inc.*, 208

---

[2] Schneider does not have a meaningful answer for her recognition that MWP might not "obtain [Schneider's] consent in each instance," and that intentional failures to obtain consent would be a ***breach*** under § 7. Whatever their geographic limitations, these provisions make plain that consent was a covenant, enforceable through a claim for breach, not a condition. *See* Mot. 12.

A.D.2d 715, 716 (N.Y. App. Div. 1994), found a condition precedent where the language included the phrase "in the event," which is absent here. These cases do not suggest that consent was a condition on the validity of MWP's license to YouTube. Nor do Schneider's other arguments:

1. Parol Evidence Does Not Help Schneider. Schneider attempts to dispute MWP's licensing authority through "[p]arol testimony," Opp. 12 (quoting *Hicks v. Bush*, 10 N.Y.2d 488, 491 (1962)). But "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms," not "[e]xtrinsic evidence of the parties' intent." *Greenfield v. Philles Recs., Inc.*, 780 N.Y.2d 562, 569 (N.Y. 2002). That is especially true in light of the integration clause here. Admin. Agreement § 20. Schneider misstates *Hicks* by omitting the key language: "[p]arol testimony is admissible to prove a condition precedent ***to the legal effectiveness of a written agreement***, if the condition does not contradict the express terms of such written agreement." 10 N.Y.2d at 491 (emphasis added, internal citations omitted). *Hicks* is inapplicable because Schneider's consent was in no way a condition precedent to the legal effectiveness of the Administration Agreement; not even Schneider claims otherwise. In any event, the parol evidence Schneider cites changes nothing. The fact that MWP generally sought Schneider's approval before licensing her works confirms only that approval was part of the agreement; it says nothing about whether it was a covenant or a condition. The same is true for MWP's regret over issuing licenses without consent. No one disputes that MWP is generally supposed to obtain Schneider's written consent, and that it may well have feared a claim for breach for not doing so. But that does not suggest that consent is a condition-precedent to MWP's authority to enter into licenses on Schneider's behalf, or that licenses entered into without such consent are invalid.

2. Federal Law Does Not Help Schneider. Schneider purports (Opp. 8) to introduce a new federal "interpretive rule" from *MDY Indus., LLC v. Blizzard Entm't., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010). But that case merely reinforces the rule that YouTube already explained (Mot. 6-7): courts "distinguish between conditions and covenants according to state contract law, to the extent consistent with federal copyright law and policy." *MDY Indus.*, 629 F.3d at 939. "[C]onditions" are "contractual terms that limit a license's scope…, the breach of which constitute copyright

infringement," while "**all other** license terms [are] 'covenants.'" *Id.* (emphasis added); *see also id.* ("Wherever possible, equity construes ambiguous contract provisions as covenants rather than conditions."). The *MDY* panel applied that standard to recognize that a provision barring users from employing bots during video game play was not written as a limit on the scope of the users' license to the game; the prohibition was therefore a covenant, not a condition. *Id.*; *see also Sun Microsystems, Inc. v. Microsoft Corp.,* 81 F.Supp.2d 1026, 1031-32 (N.D. Cal. 2000) (provision in agreement requiring Microsoft to develop only compatible programs was not written as a limit on the scope of the license granted to Microsoft and therefore was a covenant not a condition). So too here. The provision in the Administration Agreement requiring Schneider's consent was not written as a limitation on the scope of the license to MWP, and its breach would not render MWP liable for infringing her copyrights. Instead, the provision is a promise MWP made to Schneider—a covenant, not a condition. *Id.* And a breach by MWP does not invalidate its own license, nor the license it granted YouTube.

      Schneider also relies on *Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002), for the proposition that under federal law "[c]opyright licenses … require interpretive rules sensitive to copyright policy." Opp. 8. But there is no relevant copyright policy implicated by the Administration Agreement. *Gardner* involved "the transfer of an exclusive license" and "the necessity to preserve the rights and control of the owners and creators" by limiting the right to transfer exclusive licenses. 279 F.3d at 781 & n.5. The issue here, in contrast, is whether Schneider's publisher could grant a nonexclusive sublicense. A nonexclusive license grant does not implicate *Gardner's* policy considerations. *See id.* at 777-79. In any event, *Gardner* actually permits even exclusive transfers if "explicit contractual language" allows them. *Id.* at 781. While the agreement in *Gardner* "was silent as to Sony's right to assign its rights" (*id.* at 776), here the language in the Administration Agreement explicitly contemplated MWP's sublicensing rights to Schneider's works, even in some cases without obtaining her consent. *See* Mot. 12-13.

      In short, there is no copyright policy that overrides or rewrites the Administration Agreement's plain language. Nor does federal law transmute the covenant in that agreement into a condition on MWP's licensing power.

3. _Agency Principles Do Not Help Schneider._ Schneider half-heartedly argues that AMP (and by extension, MWP) was never her "publisher," but admits that MWP acted as her "publishing administrator." Opp. 3; Schneider Decl. ¶ 13.[3] The label is immaterial; all that matters is the rights Schneider granted to AMP (and thus MWP) under the Administration Agreement. Schneider does not dispute that those include the "exclusive right to administer" and to "license" Schneider's "Compositions." Admin. Agreement § 6. Schneider gave AMP the power to "enter into subpublishing" agreements" and "license or assign any of [its] rights in this Agreement to subpublishers" without notice or consent from Schneider. Admin. Agreement § 14A. AMP undisputedly "assigned all its duties" to MWP, appointing it as its "worldwide subpublisher." Coleman Decl. ¶ 4. MWP thus had the "control[]" necessary to license Schneider's works to YouTube through the PLA. That Schneider says she was unaware of MWP's appointment (*see* Schneider Decl. ¶¶ 20-23) and "reserved for herself full control of her copyrights" (Opp. 3) is both irrelevant and properly disregarded in light of her contradictory deposition testimony and dozens of documents that say otherwise (*e.g.*, Harold Ex. 3 at 1 (Schneider writing that her works are "administered by ModernWorks (Dan Coleman)"); White ¶ 3 & Exs. 1-3 & 4 at 133:11-15, 123:9-124:11, 126:10-14). Having accepted and called out MWP's authority for years, Schneider cannot now credibly dispute it was empowered to act as her agent with respect to the license that fatally undermines her case.

**B. Schneider Ratified YouTube's License.** Schneider admits that she received royalties from YouTube, which were itemized in the "Client Royalty Summaries" MWP sent her. *See* Schneider Decl. ¶ 37; Blaisdell Decl. ¶ 43; Opp. 4; Blaisdell Ex. 1 at 153:24-154:3 ("Q. This is a royalty report that was provided to you from Dan Coleman, from Modern Works. Is that right? A. Yes." (discussing Blaisdell Ex. 21)). She does not dispute that the first page of the royalty

---

[3] The declarations accompanying Schneider's brief are neither sworn statements nor declarations made under penalty of perjury. *See* Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746. They also flout the requirement that a declaration used to oppose summary judgment "be made on personal knowledge." Fed. R. Civ. P. 56(c)(4); *see* Schneider Decl. ¶ 1 (claiming "to have knowledge … ***from information received*** directly from participants in the events addressed herein" (emphasis added)); Blaisdell Decl. ¶ 1 (same). Several of the declarants' statements manifestly flunk Rule 56's personal knowledge requirement. *See* Schneider Decl. ¶¶ 54-59; Blaisdell Decl. ¶ 43.

statements specifically mentioned payments for "sync" licenses to her works (Coleman Ex. D at 1, 2 (specifically referencing "YouTube"), 15), which Schneider knows are "a sync license for" when "music is affixed to a video" (Blaisdell Ex. 1 at 155:2-7). *See* Coleman Ex. D at 1. Schneider's response to this evidence is unpersuasive. She contends the reports are "very long" and "indecipherable," so she did not have "full and complete knowledge" of YouTube's payments to her. Opp. 13. But "full and complete" knowledge is not required. *See, e.g.*, *John Hancock Life Ins. Co. of New York v. Solomon Baum Irrevocable Fam. Life Ins. Tr.*, 783 F. App'x 89, 90 (2d Cir. 2019). It is enough that she had "knowledge which is sufficient to lead a prudent person to inquire about the matter." *U.S. Life Ins. Co. in City of New York v. Blumenfeld*, 92 A.D.3d 487, 489 (N.Y. App. Div. 2012). Schneider plainly had inquiry notice, but chose not to act on it. Her unquestioned acceptance of royalties from YouTube ratifies the license MWP granted YouTube, irrespective of Schneider's belated claim that MWP should not have granted it. *See* Mot. 11.

Schneider does not—and cannot—contest that the license MWP granted to YouTube is dispositive of her case. Her attacks on the validity of that license are refuted by the plain language of the underlying agreement. YouTube is entitled to judgment based on the MWP license alone.

## II. SCHNEIDER GRANTED YOUTUBE A VALID LICENSE TO ALL WORKS SHE UPLOADED

Schneider does not dispute that the TOS License immunizes YouTube from any of her direct infringement claims. She instead argues that it does not immunize YouTube for secondary liability based on infringements by third-party users. Opp. 13-14. Schneider cites no case making such a distinction and it finds no support in the terms of the TOS License, which expressly authorize YouTube "to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service." Zhu Ex. 1 § 6(C); *Cf. Richardson v. CBS Studios Inc.*, 2013 WL 12120265, at *4 (C.D. Cal. Sept. 25, 2013) (license bars both direct and secondary infringement claims). Invoking *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 726-31 (9th Cir. 2007), Schneider asserts that YouTube's license is "irrelevant" to her claims that YouTube is secondarily liable for the infringement of others (Opp. 14), but the citation is mystifying because there was no license at issue in that case. *Id.* In any event, Schneider has

offered no evidence of what, if anything, YouTube did to supposedly render it secondarily liable for others' infringement, much less evidence of conduct exceeding the scope of the TOS license she granted.[4]

Schneider also suggests that YouTube's TOS License defense is "factually unsupported." Opp. 14-15. But Schneider concedes that she has on "several occasions" uploaded videos containing substantially complete copies of her works and that she has on at least "four occasions" authorized third parties to upload such videos. Schneider Decl. ¶¶ 43-44. Schneider suggests there may be infringements predating the licenses she granted through her uploads (Opp. 14), but fails to support this suggestion with evidence. Merely posing the question is not enough to undermine the validity of the defense, which bars a host of Schneider's claims. Harold Ex. 2 at Col. D (listing Schneider's alleged infringements subject to the TOS License).

### III. SCHNEIDER HAS NOT RAISED A TRIABLE ISSUE ON HER CMI CLAIM.

**A. Schneider Failed to Identify Any Removed CMI.** Despite specific requests in discovery, Schneider failed to identify what CMI YouTube supposedly removed. *See* Mot. 17-18; Harold Ex. 10 at 16-22. Schneider's only answer is a far-too-late interrogatory response served with her opposition brief (*see supra* n.1), which asserts that (1) nine uploaded video files (out of hundreds) allegedly containing her works had CMI embedded in the files' ClipFileName ("clfn") metadata; and (2) YouTube violated § 1202(b) as to certain allegedly infringing videos that do not contain ISRCs in the embedded file metadata. Opp. 16. But Schneider may not rely on new theories and evidence first disclosed in an untimely discovery response (or the expert report that relies on those same new theories and supposed evidence). *See* Fed. R. Civ. P. 37(c); *Phx. Techs., Ltd. v. VMware, Inc.*, 2017 WL 1957042, at *7-8 (N.D. Cal. May 11, 2017). That bar is especially apt where YouTube expressly sought (and was denied) the information in discovery **almost two years ago**. *See* Mot. 17, 18. Schneider's new theories demonstrate that on the record properly

---

[4] Schneider's claim that the TOS License cannot be read to cover all use of her works by YouTube users (Opp. 13) is a strawman. YouTube does not contend that the TOS License fully immunizes its users from infringement. Zhu Ex. 1 § 6(C). But whether or not user-uploaded content actually infringes, there is nothing inconsistent about YouTube's honoring DMCA takedown requests for allegedly infringing uses or making copyright management tools available to those claiming unauthorized use of their works.

before the Court, she has not identified any CMI at issue. Her claim fails for that reason alone.

Even if considered, what Schneider belatedly identifies as CMI does not save her claim. Schneider does not even contend that she somehow conveyed her musical compositions with CMI in the "clfn" metadata field—a field not defined in international standard specifications or regularly used to contain copyright-related information. *See* Foucu Decl. ¶¶ 4-7. Indeed, there is no obvious means by which she could have done so, as compositions ordinarily are fixed in sheet music, not in digital video files. Beyond that, the specific data she identifies in the "clfn" field, the titles of nine of her songs, was not "removed"—in each case, the titles were publicly displayed with the videos in question on YouTube. *See infra* at 11 (citing Foucu Decl. ¶¶ 7-8, Exs. 1-3).

Nor does Schneider's belated argument about ISRCs have merit. She argues that each authorized ***sound recording*** of one of her compositions (*e.g.*, MP3) once carried an ISRC, and speculates that YouTube either removed the ISRC from the metadata of user-uploaded ***video files*** or distributed those video files knowing the ISRC had been removed at some point. Opp. 16. That claim is inscrutable.

Even Schneider must admit (Blaisdell Ex. 9 at 14) that ISRCs identify ***sound recordings***— they are not CMI for her 76 relevant ***musical compositions*** (Mot. 4-5). Further, a CMI claim does not exist where a party creates a derivative work without carrying forward the CMI from an underlying work (like a video with a sound recording playing in the background). *See Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022) ("'Removal' of CMI from a copyrighted work is not the same as the failure to add CMI to a nonidentical rendition or a derivative of the protected work."); *Stark Enterprises, Inc. v. Neptune Design Grp., LLC*, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017) (use of plaintiff's designs to generate computer-aided-design (CAD) file created new derivative work and did not "remove" the plaintiff's CMI from the original). Schneider's complaint that ISRCs of authorized sound recordings of her compositions were not later present in derivative video files using her work is no basis for a § 1202(b) claim. Finally, Schneider provides no evidence that a single video ever contained ISRCs for recordings of her compositions, let alone that YouTube intentionally

removed ISRCs or knew they had been removed.[5] That too is the end of her claim. *See Sedlik v. Von Drachenberg*, 2022 WL 2784818, at *12 (C.D. Cal. May 31, 2022) (summary judgment where plaintiff provided no "evidence that any CMI was present on the image" when defendant received it); *Philpot v. WOS, Inc.*, 2019 WL 1767208, at *8-9 (W.D. Tex. Apr. 22, 2019) (claim failed where plaintiff did not show defendant knew metadata it removed contained CMI).

**B. Schneider Authorized YouTube to Remove Embedded Metadata.** Even if Schneider could show that YouTube removed her CMI, the removal was authorized under the PLA. *See* Mot. 21. As discussed above, Schneider's argument seeking to invalidate the PLA is baseless. *See supra* at 2-7. Equally meritless is Schneider's reading of the PLA under which removal of invisible, embedded metadata from a video file modifies the "content" of the video. Opp. 20. YouTube's transcoding process reformats a video file by altering its bits, while leaving the media (*i.e.*, the audio-visual content) unchanged. *See* Foucu Decl. ¶¶ 2-3. Schneider's reading would render the license meaningless by preventing YouTube from formatting licensed content for use on the service. That is not tenable.[6]

**C. Schneider Failed to Establish that YouTube Acted with the Scienter Required for Her CMI Claim.** Schneider cannot offer any argument or evidence regarding YouTube's supposed scienter because here again she failed to respond to Defendants' interrogatory specifically directed to this element of her claim. Mot. 19. Schneider's opposition completely fails to address this threshold issue. The Court's analysis of the CMI claim can stop there.

In any event, Schneider still cannot show that YouTube knew or had reason to know that its challenged actions would "induce, enable, facilitate, or conceal an infringement" of Schneider's works. *Stevens v. Corelogic*, 899 F.3d 666, 673 (9th Cir. 2018). Schneider contends that YouTube

---

[5] Schneider actually admits that "**an ISRC code would not be part of the original metadata**" of many of the YouTube videos using her compositions, such as video performances of those compositions (where no sound recording is involved). *See* Schneider Decl. ¶ 59.

[6] Schneider has offered nothing to support her alternate theory that YouTube "knew" of third-party removal of "her" CMI, much less that any removal was unauthorized. *See* 17 U.S.C. § 1202(b)(3); 4 Nimmer on Copyright § 12A.10 (2022) (defendant "must know of the unauthorized status of the removal or alteration"). Actual, not constructive, knowledge is required.

was generally aware of infringement on its service and that YouTube acquires certain metadata directly from its partners in part to identify those partners' works on the service.[7] Opp. 18-20. This, she claims, gives rise to a "plausible inference" that YouTube acted with the requisite scienter with respect to CLFN or ISRCs. But that is not the standard; "specific allegations as to how identifiable infringements 'will' be affected are necessary." *Stevens*, 899 F.3d at 674. Schneider's unsupported supposition that she "could have more easily policed infringement" of her works using the allegedly removed metadata (Opp. 17) is just the type of "generic approach" that the Ninth Circuit rejected in *Stevens*. 899 F.3d at 673 (rejecting bare assertion that "because one method of identifying an infringing photograph has been impaired, someone might be able to use [plaintiffs'] photographs undetected"); *see also Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1321 (11th Cir. 2022) (Section 1202(b) plaintiffs must establish more than that the defendant knew "its actions 'make infringement generally possible or easier to accomplish'"). Schneider's generic claim that the absence of CMI might theoretically have impacted her fails as a matter of law.

Her claim also fails as a matter of undisputed fact. Schneider admits that, even if the embedded file metadata were preserved, she would be "*unable* to search the YouTube platform using the metadata itself because the YouTube search function *does not permit* such searches." Opp. 17; *see* Schneider Decl. ¶¶ 54 & 58 (averring that "none of that metadata is searchable or otherwise made available to users"); Harold Ex. 20. The embedded CLFN metadata would have been of no use to her. In addition, the CLFN metadata at issue is merely the titles of nine works, and in each instance, **those titles were publicly displayed on YouTube's service** within the visible, searchable titles and descriptions of the videos (*see supra* at 9; Foucu Decl. ¶¶ 5, 7-8, Exs. 1-3). Anyone searching for titles of her works would have found them regardless of whatever was buried in invisible metadata. YouTube would have had no reason to believe the absence of some

---

[7] Schneider appears to contend that by using ISRCs in connection with YouTube's Content ID tool, YouTube implicitly concedes their value as CMI in all circumstances. Opp. 19-20. Not so. Schneider's claim is based on the removal of embedded metadata in video files uploaded by unknown YouTube users. That metadata is of unknown provenance and accuracy, and it stands in stark contrast to first-party metadata submitted by YouTube ContentID partners.

invisible, non-searchable metadata field in a handful of videos would foment infringement when the same information was present, visible, and searchable on the service. *See, e.g.*, *Oppenheimer v. Plexuss, Inc.*, 2021 WL 5450968, at *5 (N.D. Cal. Sept. 7, 2021), *report and recommendation adopted*, 2021 WL 5449076 (N.D. Cal. Nov. 22, 2021) ("not plausible that [defendant] removed the CMI metadata" with the requisite scienter where defendant displayed works with visible CMI); *Mills v. Netflix, Inc.*, 2020 WL 548558, at *3 (C.D. Cal. Feb. 3, 2020) (claim "not plausible" where Defendants showed Plaintiff's name as source of video clips).

## IV. MOST OF SCHNEIDER'S CLAIMS ARE TIME-BARRED.

Schneider does not dispute that she had "actual knowledge" of at least 73 alleged infringements more than three years before suit under the statute of limitations, nor that she failed to identify any alleged infringements of 27 Works-in-Suit. *See* Mot. 22 & n.8 (listing works). Summary judgment should be granted as to these 73 alleged infringements and 27 Works-in-Suit. Harold Ex. 2 at Col. E. Schneider's arguments seeking to evade the applicable limitations periods for other claims fail as well.

**A. The One-Year Limitations Period In The TOS Applies.** Schneider does not dispute her actual knowledge of at least 121 alleged infringements more than one year before she sued. *See id.* Col. G; Harold Ex. 12 at 4-8. Because the contractual limitations provision is enforceable, it at minimum bars those alleged infringement claims.

***Unconscionability***. Attempting to avoid the limitations provision that Schneider admits she "agreed to when creating her YouTube account," Schneider calls it unconscionable. Opp. 21. It is not. The Ninth Circuit has squarely held that this exact limitations provision is not unconscionable and affirmed its application to bar claims against YouTube. *E.g.*, *Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018). For good reason: the provision is mutual—equally limiting YouTube's claims against users—and all the more reasonable given that YouTube provides its services to users for free. *Id.*; Zhu Ex. 1 § 14.[8]

---

[8] Schneider asserts that the TOS is unconscionable as to her, because she had to accept the TOS "to use the copyright management tools provided by YouTube" (Opp. 23), specifically "YouTube's takedown notice webform" (Schneider Decl. ¶ 47). This is misdirection. First, Schneider does not have to use YouTube's webform: YouTube accepts DMCA takedown notices

(continued...)

Schneider also argues that the limitation period is unconscionably short (Opp. 22), but offers no specific reason why—much less for distinguishing *Darnaa* on this basis. Schneider discovered alleged infringements "by conducting searches for unauthorized copies of her work on YouTube using her name and/or the titles of the Works in Suit." Harold Ex. 12 at 8. She could easily have done so within one year, even assuming (contrary to fact) that she did not have access to Content ID (*see* Opp. 25 n.5).

*Waiver*. YouTube pleaded the contractual limitations period in its answer to the Amended Complaint (Dkt. 160 at 23) and disclosed the limitations argument in a timely response to one of Schneider's contention interrogatories during the discovery period (White Ex. 7 at 11). Schneider cites no case where a court found a legal defense waived that was pleaded in a timely answer and disclosed in a timely discovery response. Further, it was perfectly appropriate for YouTube to add defenses to Schneider's claims after she finally identified the infringements at issue in November 2021 and February 2022. Finally, Schneider was not prejudiced by the assertion of the defense, as there is nothing she could have or would have done differently in discovery had YouTube referenced the contractual bar earlier.

**B. Schneider Had Constructive Knowledge Of The Alleged Infringements.** Hundreds of Schneider's claims of alleged infringement are time barred based on her constructive knowledge. Mot. 23-24; Harold Ex. 2 at Cols. H, F. Schneider disputes in a footnote whether a reasonable investigation would have uncovered the alleged infringements at or near the time of upload. Opp. 25 n.5. Her argument depends on the (false) premise that "[w]ithout access to the search capabilities [sic] Content ID, Ms. Schneider had no practical or effective way of identifying all of the uploaded videos that infringed her copyrights." *Id.* Schneider undisputedly did have access to Content ID through her publisher, MWP (Coleman Decl. ¶¶ 5-8), and could also have

---

(...continued from previous page)
by email, fax, and mail, and it is not necessary to have an account or to agree to the TOS to use those. White Exs. 5 at 10:11-19; 6 at 16:4-10. Second, Schneider did not create her account to use the webform. She created it to "advertise [her] new records" and to share videos with "new individual musicians subbing with [her] band who need to learn [her] compositions." Schneider Decl. ¶¶ 41-43. As in *Darnaa*, Schneider could "display [her] music videos on various websites," and she was not compelled to use the "video streaming services [that YouTube provides] at no cost," nor to agree to the TOS. 756 F. App'x at 676. There is no procedural unconscionability.

obtained access through third parties (Harold Ex. 22 at 134:20-136:10). Schneider says it would be unreasonable for her to use Content ID since it is "conditioned on licensing works to YouTube," (Opp. 25 n.5), but that too is undeniably false; YouTube does not condition access to Content ID on a license to make works available on the service. White Ex. 8 at 25:9-18; 28:4-10. And she says she should not have to "pay large fees for third-party Content ID services." Opp. 25 n.5. But she offers no evidence of these large fees, and her agent testified the fees for one such service were "$6 per year." White Ex. 9 at 50:17-51:18. All that aside, Schneider did discover all the alleged infringements actually at issue in this case **without using Content ID**. *See* Harold Ex. 12 at 8. That only confirms that a reasonable investigation would have uncovered the alleged infringements years earlier, barring the untimely claims now.

**C. The Separate-Accrual Rule Does Not Rescue Schneider's Claims.** Schneider contends that under the so-called "separate-accrual rule," YouTube bears the burden of "establishing that there were no views or other displays of the infringing works during the statutory period, even if the infringing video was first uploaded prior to that period." Opp. 24-25. That is doubly wrong.

*First*, because YouTube has carried its "initial burden" of showing that the claims are time-barred (Mot. 22-24), the burden "shifts" to Schneider to show that her "claims are not time-barred." *See Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1092 (C.D. Cal. 2016); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 482 (9th Cir. 1994) (claims time-barred where first accrual was time-barred and plaintiff "fail[ed] to produce any evidence that appellees engaged in actionable conduct" within limitations period). Schneider has failed to offer any evidence of a separate accrual within the limitations period.

*Second*, courts in this Circuit have recognized that, in the online context, a single continuing infringement begins when infringing content first appears on a service provider's website; a separate infringing act does not occur each time a user accesses the content. *See, e.g.*, *Bell v. Oakland Cmty. Pools Project*, 2020 WL 4458890, at *6 (N.D. Cal. May 4, 2020) (rejecting argument that "a reiterating display and publication" of the copyrighted work on a website triggers the separate-accrual rule); *Wolf*, 167 F. Supp. 3d at 1099 n.13 ("[T]he allegedly infringing

document's continued presence on defendants' website . . . at best constitutes 'harm from [a] past violation[ ] that [was] continuing' through 2014, and not a 'new wrong' that gave rise to '[s]eparately accruing harm' within the limitations period."). "If every access of a copyrighted work on a website establishes a new claim for infringement . . . the statute of limitations becomes obsolete for the internet. Merely checking to see if a photograph is still on a website would reset the clock and establish a new claim." *Chelko v. Does JF Rests. LLC*, 2019 WL 3294201, at *5 (W.D.N.C. July 22, 2019). The separate-accrual rule cannot save Schneider's claims for works that were uploaded prior to the applicable limitations period.

**D. Schneider's 1202(b) Claims Are Time-Barred.** Schneider does not dispute that in March 2017—more than three years before suit—she filed a public comment with the Copyright Office asserting that "YouTube is Flagrantly Violating Section 1202 of the DMCA" and "intentionally stripping off creator's metadata." Harold Ex. 13 at 1. Schneider characterizes this as "suspicion of a general practice" (Opp. 25), but awareness of the practice is all that is necessary for the claim to accrue. Schneider also says that "absent review of YouTube's data files, Schneider could not know that videos uploaded to YouTube contained metadata including the titles of her copyrighted works." Opp. 25. But Schneider filed this lawsuit without reviewing YouTube's data. And she was able to allege that "[w]hen Plaintiffs have found infringing copies of their works on YouTube, the original CMI associated with the digital file is missing, either stripped or concealed." Dkt. 1 ¶ 80. These 1202(b) claims could—and should—have been asserted years ago, if at all. They too are time-barred.

## CONCLUSION

For the many overlapping grounds discussed above and in YouTube's opening brief, YouTube is entitled to summary judgment. *See* Harold Ex. 2 at Cols. C-H.

Respectfully submitted,

Dated: September 16, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*
      David H. Kramer

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC