George A. Zelcs (*pro hac vice*)
gzelcs@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
rewing@koreintillery.com
Ryan Z. Cortazar (*pro hac vice*)
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe (*pro hac vice*)
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 3101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
pkorologos@bsfllp.com
Joanna Wright (*pro hac vice*)
jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice*)
dblaisdell@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | CASE NO.:  3:20-cv-04423-JD<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: December 15, 2022<br>Time: 10:00 a.m.<br>Dept.: 11<br>Judge: Hon. James Donato |

TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ...................................................................................... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ............................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

THE FOUR PROPOSED CLASSES .......................................................................................... 3

ARGUMENT ............................................................................................................................... 5

      I.      The Classes Are Numerous ....................................................................................... 5

            II.      Plaintiffs' Claims Are Typical of the Classes' Claims. ............................. 5

            III.     Plaintiffs and Their Counsel Will Adequately Represent the Classes. ....... 6

            IV.     Common Questions Predominate. ................................................................ 7

            V.      A Class Action is the Superior Method for Resolving this Dispute .......... 21

CONCLUSION ......................................................................................................................... 22

# TABLE OF AUTHORITIES

Cases                                                                                           Pages(s)

*B.K. by next friend Tinsley v. Snyder*
   922 F.3d 957 (9th Cir. 2019) ................................................................................. 11

*Bumpus v. Realogy Brokerage Grp*. LLC, No. 3:19-CV-03309-JD, 2022 WL 867256,
   at *10 (N.D. Cal. Mar. 23, 2022) ........................................................................... 23

*Comcast Corp. v. Behrend*
   569 U.S. 27 (2013) ................................................................................................. 29

*Dr. Seuss Enterprises, L.P. v. ComicMix LLC*
   983 F.3d 443 (9th Cir. 2020) ................................................................................. 20

*Ellison v. Robertson*
   357 F.3d 1072 (9th Cir. 2004) ................................................................................ 14

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*
   No. 13-5693 PSG (RZX), 2015 WL 4776932 (C.D. Cal. May 27, 2015) ....... 10, 11, 31

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*
   772 F.2d 505 (9th Cir. 1985) ................................................................................. 29

*Friedman v. Live Nation Merch., Inc.*
   833 F.3d 1180 (9th Cir. 2016) ................................................................................ 30

*In re Facebook, Inc. IPO Securities & Derivative Litig.*
   312 F.R.D. 332 (S.D.N.Y. 2015) ........................................................................... 29

*In re Hyundai & Kia Fuel Econ. Litig.*
   926 F.3d 539 (9th Cir. 2019) ................................................................................. 13

*In re Napster, Inc. Copyright Litig.*, No. C
   04-1671 MHP, 2005 WL 1287611 (N.D. Cal. June 1, 2005) ............................ 10, 31

*Kirk Kara Corp. v. W. Stone & Metal Corp.*
   No. 20-cv-1931, 2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ....................... 26, 31

*Lenz v. Universal Music Corp.*
   815 F.3d 1145 (9th Cir. 2016) ................................................................................ 20

*Leyva v. Medline Indus. Inc.*
   716 F.3d 510 (9th Cir. 2013) ................................................................................. 29

*Mango v. BuzzFeed, Inc.*
   970 F.3d 167 (2d Cir. 2020) .................................................................................. 27

-ii-

*MRT Constr. Inc. v. Hardrives, Inc.*
  158 F.3d 478 (9th Cir. 1998) ................................................................................. 15

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014) ................................................................................. 11

*Perfect 10, Inc. v. CCBill LLC*
  488 F.3d 1102 (9th Cir. 2007) ......................................................................... 23, 24

*Perfect 10, Inc. v. Giganews, Inc.*
  847 F.3d 657 (9th Cir. 2017) ................................................................................. 14

*Polar Bear Prod., Inc. v. Timex Corp.*
  384 F.3d 700 (9th Cir. 2004) ................................................................................. 29

*Rosen v. R & R Auction Co., LLC*
  No. CV1507950BROJPRX, 2016 WL 7626443 (C.D. Cal. Aug. 31, 2016) ................................ 18

*Stevens v. Corelogic, Inc.*
  899 F.3d 666 (9th Cir. 2018) ................................................................................. 27

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*
  718 F.3d 1006 (9th Cir. 2013) ......................................................................... 14, 18

*VHT, Inc. v. Zillow Grp., Inc.*
  918 F.3d 723 (9th Cir. 2019) ................................................................................. 14

*Viacom Int'l Inc. v. YouTube, Inc.*
  940 F. Supp. 2d 110 (S.D.N.Y. 2013) ..................................................................... 25

*Wolin v. Jaguar Land Rover N. Am., LLC*
  617 F.3d 1168 (9th Cir. 2010) ............................................................................... 30

**Statutes**

17 U.S.C. § 107 ............................................................................................................ 20

17 U.S.C. § 410(c) ....................................................................................................... 18

17 U.S.C. § 504(c)(1) ................................................................................................... 29

17 U.S.C. § 512 ............................................................................... 15, 16, 24, 25, 26

17 U.S.C. § 1202(b) ................................................................................................. 9, 27

17 U.S.C. § 1203(c) ..................................................................................................... 29

**Rules**

Federal Rule of Civil Procedure 23 ........................................................................... 5, 10, 11, 13

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 15, 2022, at 10:00 a.m., Plaintiffs will move the Court for an order granting Plaintiffs' Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23.

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Plaintiffs seek an order: (1) certifying four Rule 23(b)(3) classes; (2) appointing Maria Schneider and Uniglobe Entertainment, LLC ("Uniglobe") to represent the Registered Works Infringement Class, appointing AST Publishing Ltd. ("AST") and Uniglobe to represent the Foreign Unregistered Works Infringement Class, appointing Ms. Schneider to represent the two CMI classes (the ISRC Class and the CLFN Class); and (3) appointing Boies Schiller Flexner LLP and Korein Tillery, LLC as Class Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

YouTube is the largest video-sharing website in the world and has a massive amount of copyright infringement.  In the second half of 2021 alone, YouTube's Content ID system automatically identified and managed nearly *760 million* instances of infringement on its platform. Ex. 44 at 5.[1]  Content ID is a digital fingerprinting tool that automatically compares videos uploaded to YouTube against a database of fingerprints of copyrighted material to identify infringement. Those nearly 760 million infringements, however, leave behind a significant number of infringements not caught by YouTube's automated systems, which are underinclusive by YouTube's design.

Content ID is not available to a very large number of individual and smaller copyright holders (those other than the large music publishers or recording studios with sufficient market power to pressure YouTube into providing automated copyright policing via Content ID) who are relegated to the vastly inferior method of manually policing their copyrights through keyword search terms.  If a copyright holder can locate the infringing work in the several *billion* videos on YouTube, the copyright holder then must submit a DMCA Takedown Notice, requesting that the

---

[1] All citations to numerical exhibits are contained in the Declaration of Demetri Blaisdell.

content already appearing on YouTube (and thus infringing the copyright) be removed.  As a result of this inferior searching and policing method, Content ID accounts for over 98% of all infringements identified on YouTube.  *Id.*

This gross imbalance is no accident.  ███████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████  YouTube is incentivized to promote and, indeed, to disseminate infringing materials on its platform because it increases network effects thereby increasing advertising revenue: YouTube does not charge users to watch videos on its website, but it has monetized the platform in other ways—by selling advertising, selling subscriptions to "YouTube Premium" (its ad-free service), and monetizing the data it acquires from YouTube users.  All three revenue streams benefit from increasing the videos on the platform thereby attracting more users.  If YouTube purged all infringing materials from its website, it would lose users and thus revenue.

It should be no surprise, then, that YouTube makes the manual search process extremely difficult for ordinary copyright holders, looking the other way while infringement runs rampant on its platform.  YouTube hinders the manual search process in numerous ways.  ██████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████

Perhaps unsurprisingly, nearly all copyright holders would prefer that Content ID be available to everyone, but YouTube will not do so because that would existentially threaten its business model.  ██████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

In 2015, emboldened by its perceived insulation from any real judicial accounting for its illegal behavior, YouTube created features that play infringing content directly to users without the user doing anything to either select or play the content.  Through Watch Next and Autoplay, YouTube both chooses the content to play (based on what will maximize user engagement and therefore watch time and revenue) and then plays the content for the user with zero regard for whether that content is infringing or not.  The Copyright Act does not countenance such blatant disregard for individual artists' intellectual property and sweat equity, and YouTube is no exception. Class actions were created for this very kind of institutionalized misbehavior that relies upon the disincentives and lack of resources for a lawsuit absent collective action.  As explained below, Plaintiffs can identify their classes and demonstrate YouTube's liability through common proof.

████████████████████████████████████████████████

## THE FOUR PROPOSED CLASSES

The three named Plaintiffs bring this action against YouTube and its parent company, Google, on behalf of themselves and four classes of copyright holders alleging direct, vicarious, and contributory infringement of their copyrights and alleging the improper removal or alteration of CMI or the distribution of their works knowing that CMI was removed or altered in violation of 17 U.S.C. § 1202(b).  Courts in the Ninth Circuit have certified classes in cases involving similar claims where, as here, the primary focus of the trial will be on Defendants' conduct and any individual issues are secondary and easily manageable.  *In re Napster, Inc. Copyright Litig.*, No. C 04-1671 MHP, 2005 WL 1287611 (N.D. Cal. June 1, 2005); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693 PSG (RZX), 2015 WL 4776932 (C.D. Cal. May 27, 2015).  The class definitions are as follows:

### Copyright Infringement Classes

Registered Works Infringement Class

All persons who own copyrights in one or more works: 1) registered with the United States Copyright Office; 2) contained in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained in a video that was displayed on

-3-

1  YouTube subsequent to the first successful Takedown Notice and then removed from YouTube due

2  to a second successful Takedown Notice that was submitted on or after July 2, 2017.

3  <u>Foreign Unregistered Works Infringement Class</u>

4      All persons who own copyrights in one or more works: 1) first published outside the United

5  States; 2) contained in a video that was displayed on YouTube and then removed from YouTube due

6  to a successful Takedown Notice; and 3) contained in a video that was displayed on YouTube

7  subsequent to the first successful Takedown Notice and then removed from YouTube due to a

8  second successful Takedown Notice that was submitted on or after July 2, 2017.

9      Excluded from both Copyright Infringement Classes are: (a) the Court; (b) Defendants and

10  their subsidiaries, affiliates, officers, directors, employees, and counsel; (c) any entity in which

11  Defendants have a controlling interest; and (d) the legal representatives, heirs, successors, and

12  assigns of any excluded party.

13           **Copyright Management Information ("CMI") Classes**

14  <u>International Standard Recording Code ("ISRC") Class</u>

15      All persons who own copyrights in one or more digital form sound recordings of musical

16  works that: 1) contained an ISRC code; 2) were a component of  a video that was displayed on

17  YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) on or after

18  July 2, 2017, were displayed on YouTube with respect to a video that included such sound

19  recordings of musical works without including or referencing the associated ISRC code.

20  <u>Clip Filename Class</u>

21      All persons who own copyrights in one or more works: 1) contained in a video that was

22  displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; 2)

23  on or after July 2, 2017, contained in a video uploaded to YouTube that had an associated Clip

24  Filename ("CLFN") field populated with copyright management information; and 3) displayed on

25  YouTube with respect to a video that included such work(s) without including or referencing the

26  associated CLFN or with the copyright management information altered.

27      Excluded from both CMI Classes are: (a) the Court, (b) Defendants and their subsidiaries,

28  affiliates, officers, directors, employees, and counsel; (c) any entity in which Defendants have a

-4-

controlling interest; and (d) the legal representatives, heirs, successors, and assigns of any excluded party.

## ARGUMENT

### I.     The Classes Are Numerous

A successful Takedown Notice is required for all four classes.  In 2017, YouTube "received over 2.5 million DMCA takedown requests from over 300,000 copyright claimants" and that number increased to 4,244,257 million takedown requests in 2021.  Ex. 33 at -249; Ex. 43; Ex. 44. In 2021, 84.2% or about 3,575,032 of these Takedown Notices resulted in the content being removed.  *Id.*

### II.     Plaintiffs' Claims Are Typical of the Classes' Claims.

A plaintiff must have the "same or similar injury" as the class caused by "conduct which is not unique to the named plaintiffs." *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019) (citations omitted); *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (the class representative's claim must be "reasonably coextensive" with but not identical to the class) (citations omitted).  The class representatives for the four proposed classes are as follows:

- Copyright Infringement Classes:
    - Registered Works Infringement Class: Ms. Schneider and Uniglobe;
    - Foreign Unregistered Works Infringement Class: Uniglobe and AST;
- CMI Classes:
    - ISRC Class: Ms. Schneider;
    - CLFN Class: Ms. Schneider

***Copyright Infringement Classes*.**  Ms. Schneider, Uniglobe, AST and the members of the Copyright Infringement Classes all own copyrights in works that have been infringed through their display on YouTube.  For the Registered Works Infringement Class, both Ms. Schneider and Uniglobe own a copyright to one or more works displayed on YouTube, without authorization, for which they have submitted two successful Takedown Notices.  *See e.g.*, Exs. 25, 31, 36 & 37.  For the Foreign Unregistered Works Infringement Class, both AST and Uniglobe own copyrights to one or more works first published outside of the United States and that were contained in videos

-5-

displayed on YouTube without authorization, for which they have submitted two successful

Takedown Notices.  *See, e.g.,* Exs. 21, 23, 34–36, 40.

   ***CMI Classes*.** ███████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Ex. 14 at ¶¶ 153, 170-72; Ex. 17.  For the ISRC Class, Ms. Schneider attaches ISRCs to her

copyrighted sound recordings of musical works.  Schneider Decl. Ex. A.  YouTube knows that the

inclusion of ISRCs on recorded tracks is a near universal practice in the music industry.  *See., e.g.*,

Ex. 14 ¶¶ 170-72; Ex. 11. at 222; Ex. 50 at § 3(d).  Like members of the ISRC Class, Ms.

Schneider's works appear in videos on YouTube that do not contain ISRCs, which videos YouTube

displays knowing that ISRCs have been removed.  Schneider Decl. Ex. A at ¶¶ 10, 51-54; Ex. 22.

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████   ████████████████████████████

**III.    Plaintiffs and Their Counsel Will Adequately Represent the Classes.**

   Plaintiffs and their counsel will "fairly and adequately" protect and represent the class

members' interests pursuant to Rules 23(a)(4) and (g)(4).  Neither have any conflicts with class

members and will "prosecute the action vigorously."  *In re Hyundai & Kia Fuel Econ. Litig.*, 926

F.3d 539, 566 (9th Cir. 2019) (citation omitted).  Plaintiffs' and the classes' interests align in

seeking to hold Defendants liable and judgment in favor of Plaintiffs will benefit all class members.

Plaintiffs and their counsel will zealously advance the interests of the classes through trial and

---

[2] Defendants were ordered to produce documents containing CLFN data.  Order, ECF 165. Defendants' argument that the videos displayed on YouTube that once had CLFN data separately contain the title of the sound recording elsewhere on YouTube's platform is self-fulfilling because Defendants had thus far only produced CLFN data for videos that were taken down and thus findable through a manual search.  As of the date of this filing, Plaintiffs continued to pursue the proper production of the ordered data.

1   appeal.  Declaration of Maria Schneider at ¶¶ 8-9; Declaration of Maxim Lozovsky at ¶¶ 6-7;

2   Declaration of Namrata Singh Gujral Cooper at ¶¶ 6-7.  Proposed class counsel also satisfy Rule

3   23(g)(1)(A).  Both firms are nationally recognized for their experience and expertise in handling

4   complex litigation and class actions, and their attorneys are experienced in copyright law.[3]

5   **IV.     Common Questions Predominate.**

6          **A.     The Copyright Infringement Claims Will Be Resolved with Common Proof.**

7          For all three theories of infringement (direct, vicarious, and contributory), the proof turns

8   on whether Defendants' conduct was wrong.  The elements of a direct infringement claim are: (a)

9   ownership of a copyright; and (b) that the defendant itself caused the violation of one or more of

10  the plaintiff's exclusive rights under the Copyright Act.  *Ellison v. Robertson*, 357 F.3d 1072, 1076

11  (9th Cir. 2004).  Website owners are directly liable when they are "actively involved in the

12  infringement."  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019).

13         To establish vicarious infringement, the plaintiff must prove a direct violation by someone

14  (not necessarily the defendant) and that: (a) the defendant enjoys a direct financial benefit from

15  another's infringing activity; and (b) that the defendant has the right and ability to supervise the

16  infringing activity.  *Ellison*, 357 F.3d at 1076, 1079.  A defendant has the right and ability to

17  supervise if it has "the general ability to locate infringing material and terminate users' access."

18  *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1030 (9th Cir. 2013).

19         To establish contributory infringement, the plaintiff must prove a direct violation by

20  someone (not necessarily the defendant), and that: (a) the defendant knew or had reason to know of

21  the infringing activity; and (b) the defendant induced or materially contributed to the infringing

22  activity.  *Ellison*, 357 F.3d at 1076, 1078.  In the online context, "material contribution" is satisfied

23  if the defendant "has actual knowledge that specific infringing material is available using its system,

24  and can take simple measures to prevent further damage to copyrighted works, yet continues to

25  provide access to infringing works."  *VHT, Inc.*, 918 F.3d at 745, *quoting Perfect 10, Inc. v.

26  Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017).

27  ──────────────────

28         [3] The firms and the attorneys involved in the action are further identified and described in the
    Ewing and Korologos Declarations.

-7-

In sum, for some or all of these claims, Plaintiffs must prove: (a) ownership of the copyrights; (b) infringement; (c) YouTube's knowledge of that infringement; (d) YouTube's control of the infringement; (e) YouTube's ability to stop the infringement; and (f) YouTube's financial benefit from the infringement.

### 1. Takedown Notices Provide Common Proof of Infringement, Ownership, and Knowledge.

The Infringement Classes are made up exclusively of members who have submitted at least two successful Takedown Notices on which YouTube relied to remove an infringing work from its platform. Takedown Notices are mechanisms mandated by the DMCA to identify infringement allowing a service provider to act on it and remove the infringement. 17 U.S.C. § 512(c)(3). The Takedown Notices are reliable evidence of ownership and infringement because YouTube, itself, relies on them to remove content and issue copyright strikes. ████████████████ ████████████████████████████████████████████ ███████████████████████████ *See* Ex. 1 at 117:8-25.

Because the Infringement Classes are defined through the requirement of a successful Takedown Notice (*i.e.*, a notice that is complete and valid, consistent with the DMCA, and that resulted in YouTube relying on such notice for the removal of content uploaded to its platform), YouTube cannot credibly challenge any Takedown Notice that passed muster under its vetting process. *See MRT Constr. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998).

***Infringement.*** During the entire class period, YouTube required that every Takedown Notice include the following information:

1. The claimant's full legal name, mailing and email address, and phone number;

2. The specific URL of the video in question;

3. A description of the copyrighted content;

4. The name of the copyright owner;

5. A statement of a good faith belief that the copyrighted material is being used in an unauthorized manner;

-8-

6. A statement that the claimant is the owner (or the owner's agent) of an exclusive right that is being infringed;

7. Acknowledgment that abuse of the Takedown Notice tool (including filing claims for content not owned) may result in termination of the claimant's YouTube account.; and

8. A physical or electronic signature.

Ex. 52. Importantly, the individual or entity signing the Takedown Notice must state, under penalty of perjury, that "the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." 17 U.S.C. § 512(3)(A)(vi).

Before YouTube will act on a Takedown Notice and remove the content complained of, it comprehensively vets the Takedown Notice to ensure that it is valid and, therefore, actionable. YouTube followed a uniform takedown review policy during the class period. *See* Ex. 1 at 17 (discussing standardized training materials for copyright team). ███████████████

███████████

█ ████████████████████████████████

█ ████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████

█ ████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████

█ ████████████████████████████████

████████████████████████████████

█████████████████████████████

---

⁴ YouTube "empowers uploaders to fight wrongful claims" by filing counter-notifications if they believe "they have the required license to use content or are subject to an exception such as fair use." Ex. 43.

YouTube cannot, therefore, dispute that any videos removed by YouTube as a result of a Takedown Notice were infringements. And, in any event, *whether* YouTube can dispute that is a common question for the jury based upon YouTube's policies and procedures governing Takedown Notices.

The definition for both Copyright Infringement Classes relies on the successful submission of two Takedown Notices for the same work: the first Takedown Notice establishes that YouTube has knowledge that the copyrighted work is being infringed on its platform, and the second Takedown Notice establishes a second infringement of the copyrighted work after YouTube had knowledge that of the original infringement, as evidenced by the subsequent display of a video that infringes that same copyright. The question of infringement will therefore be resolved for all class members, including Plaintiffs, in a uniform manner and disposes of the primary issue in the case— infringement.

***Ownership.*** For the Registered Works Infringement Class, Plaintiffs will cross-reference the Takedown Notices against the U.S. Copyright Office's database of copyright registrations to verify ownership. Ex. 13 ¶¶ 48-58. By law, such registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Rosen v. R & R Auction Co., LLC*, No. CV1507950BROJPRX, 2016 WL 7626443, at *4 (C.D. Cal. Aug. 31, 2016). Similarly, for the Unregistered Foreign Works Infringement Class, Plaintiffs will offer evidence that ownership of those works can be verified using third-party databases. Ex. 13 at ¶¶ 59-63.

***Knowledge.*** Plaintiffs will establish YouTube's actual knowledge of specific instances of infringement by use of Defendants' own records of a successful Takedown Notice followed by another Takedown Notice regarding the same copyrighted work. *UMG Recordings*, 718 F.3d at 1020 (Takedown Notice is "the most powerful evidence of a service provider's knowledge").

-10-

**2.   Defendants' License and Fair Use Defenses Are Also Subject to Common Proof.**

Plaintiffs expect that Defendants will raise two types of affirmative licensing defenses as they have with respect to Ms. Schneider in their summary judgment motion.  All affirmative defenses can be resolved efficiently through the use of YouTube's own data.

*Licenses.*  YouTube's own data and records will establish whether a potential class member, or its agent, has licensed the infringed work to YouTube.  As a threshold matter, if YouTube has acted on a Takedown Notice (as it has for every class member), it has, itself, determined that the copyright in question is not licensed to the uploader—otherwise the Takedown Notice would be unsuccessful. ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████

     ████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

*Terms of Service.*  Again, the fact that YouTube acted on a successful Takedown Notice eliminates any real concern that the work was separately licensed to YouTube via uploading it to YouTube and, thus, YouTube's Terms of Service.  In any event, Defendants' own data and search algorithms will establish whether a class member has licensed a work by uploading it to YouTube and therefore entering into YouTube's Terms of Service for that work.  Defendants' Copyright

-11-

Match Tool already matches every video to every other video on the platform and, for any matches, determines which was uploaded first. ████████████████████

████████████████████████████████████████████

████████████████████████████ Moreover, the affirmative license defense involving YouTube's Terms of Service only impacts direct liability and does not impact secondary liability. Ex. 57 ("Users further agree that videos they submit "will not contain third party copyrighted material, or material that is subject to other third party proprietary rights, unless you have permission from the rightful owner of the material or you are otherwise legally entitled to post the material and to grant YouTube all of the license rights granted herein."). As YouTube has acknowledged in briefing before this Court, "YouTube does not contend that the TOS License fully immunizes its users from infringement." (Reply Br., ECF 173 at 8 n.4.).

**Fair Use Defense.** YouTube has also asserted that some unauthorized displays are protected by the doctrine of fair use, also an affirmative defense. 17 U.S.C. § 107; *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 459 (9th Cir. 2020). Defendants' own documents establish that fair use is a *de minimis* issue, as YouTube users assert fair use in less than 0.2% of total Content ID claims. Ex. 44 at 10. Moreover, Defendants' review of Takedown Notices for fair use described above ensures that fair use is an insignificant issue that does not preclude certification of the Copyright Infringement Classes.

### 3. Watch Next and Autoplay Are Common Proof of Causation and Control.

YouTube's ability to both cause and control infringement will also be established through common proof of YouTube's policies, procedures, and practices. ████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

████████████████████████████████

████████████████████████████████████████████

Ex. 5 at 76-77.  Watch Next's recommendations (and thus the videos played by Autoplay) are based on videos that will increase users' engagement and thus their watch time, which is directly related to YouTube's advertising revenue.  Ex. 54; Ex. 15 at ¶¶ 120-38. ████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████████

███████████████████████████████

██████████████████████ Whether YouTube directly causes infringement through its creation and application of Watch Next and Autoplay (it does) is a common issue of fact, proven through YouTube's data, statistics, policies, and practices, to be decided by the jury as to all class members.  Moreover, YouTube's anticipated reliance on *Viacom Int'l Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110 (S.D.N.Y. 2013) will fail and its inapplicability will apply with equal force to the entire class.  When *Viacom* was decided, Content ID was in its infancy, and more importantly, YouTube had not yet created or implemented Watch Next or Autoplay, both of which demonstrate YouTube's control over what content is played and to whom it is played, rendering *Viacom* inapposite.

### 4. The Ability to Prevent Infringement Will Be Demonstrated Through the Common Proof of Content ID.

The creation and use of Content ID demonstrate Defendants' ability to prevent infringement using a simple measure. ████████████████████

█████████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████

-13-

████████████████████████████████████████████████████████████████

███████████████████████████████████████

Content ID identifies infringement by scanning all of the content on YouTube to see if it matches a digital reference file provided by the copyright holder.  ██████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *Id.*  Defendants created Content ID to police copyright infringement, yet they limit the copyright holders who can access it.  Whether Content ID is a simple measure through which Defendants could have prevented infringement (an element of contributory liability) is a common question of fact for the jury, which will be resolved in the same way for all the class members.

**5.  Common Proof Will Also Establish YouTube's Direct Financial Benefit.**

Plaintiffs will prove that Defendants directly benefit financially from infringing content through YouTube's general business practices and business model.  █████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████

YouTube's records can be used to identify the direct advertising revenues generated by each infringing video and to attribute those revenues to class members.  ██████████████████

█████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

-14-

1 ████████████████████████████████████████████████████████

**B. YouTube's DMCA Defense Involves Common Questions that Will Be Resolved with Common Proof.**

"Section 512(i)(1)(A) requires an assessment of the service provider's 'policy,' not how the service provider treated a particular copyright holder." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007). Pursuant to the DMCA, the safe harbor only applies if Defendants have adopted and reasonably implemented a policy providing for "termination in appropriate circumstances of subscribers and accountholders" "who are repeat infringers" and that the policy "accommodates and does not interfere with standard technical measures." 17 U.S.C. § 512(i)(1); *see also* 17 U.S.C. § 512(i)(2) (defining "standard technical measures").

**1. Common Proof Demonstrates that YouTube Did Not Reasonably Implement Its Repeat Infringer Policy.**

A "reasonably" implemented repeat infringer policy requires the service provider to terminate users if it: (1) has actual knowledge of infringing activity, (2) is aware of facts or circumstances from which infringing activity is apparent, *or* (3) has received a Takedown Notice meeting the requirements of 17 U.S.C. § 512(c)(3). *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d at 1111. ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ As demonstrated below, whether YouTube implements a reasonable repeat infringer policy thereby earning the DMCA safe harbor is subject to common proof.

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

1 ██████████████████████████ ██ ██████████████████████████

2 ████████████████████████████████████████████████████

3 ██████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████

5 ████████████████████████ Whether Defendants reasonably implement their repeat infringer

6 policy will be proven through common proof and resolved by the jury in a manner equally

7 applicable to all class members.

      **2.  Common Proof Demonstrates That YouTube Failed to Accommodate Standard Technical Measures.**

10     In addition to implementing a reasonable repeat infringer policy, YouTube must also

11 accommodate standard technical measures or "technical measures that are used by copyright owners

12 to identify or protect copyrighted works."  17 U.S.C. § 512(i)(2).  The failure to do so is a separate

13 and independent basis to deny the DMCA safe harbor defense.  *See Ellison v. Robertson*, 357 F.3d

14 1072, 1080 (9th Cir. 2004) (explaining that eligibility for the safe harbor requires a reasonable

15 repeat infringer policy *and* accommodation of standard technical measures).  ████████████

16 ██████████████████████████████████████████████████

17 ████████████████████████████████████████████████████████

18 ██████████████████████████████████████████████████

19 ████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████

21 ████████████████████████████████████████████████████

22 ████████████████████████████████

23     Common proof will also show that YouTube uniformly fails to accommodate standard

24 technical measures by denying class members access to digital fingerprinting technology to locate

25 infringement on its site.  Although YouTube uses digital fingerprinting technology to identify

---

[5] YouTube's "fix" was inadequate: it began retroactively suspending only channels linked by ownership to a channel previously suspended for copyright strikes. *Id.* By maintaining its policy of assessing strikes against channels only, YouTube continues to allow users to accumulate far more than three active strikes so long as they are distributed among multiple channels.

potential infringement for its Content ID partners, YouTube prevents Plaintiffs and the class

members from using other digital fingerprinting technologies.  ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

"████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████        ████████████████Whether the class

members have access to standard technical measures  will therefore be decided based on uniform

evidence concerning YouTube's TOS.

       **3.   Common Evidence Regarding the Other DMCA Safe Harbor Requirements.**

To qualify for the DMCA safe harbor, YouTube must also demonstrate that it lacks actual

knowledge of infringement, is not aware of any facts or circumstances from which infringing

activity is apparent, has acted expeditiously when it becomes knowledgeable or aware of

infringement, and does not receive a financial benefit from infringement where it has the right and

ability to control infringement.  17 U.S.C. § 512(c)(1).  Here, as explained above, the Takedown

Notices submitted for each class member will establish knowledge of infringement.  The common

evidence discussed above concerning Watch Next, Autoplay, and even Content ID will establish

control.  Finally, Dr. Singer's expert testimony discussed above will show that YouTube derives a

financial benefit directly attributable to the infringing activity.

     **C.  Plaintiffs' CMI Claims Present Common Questions That Will Be Resolved with**

       **Common Proof.**

CMI is used for "tracking and monitoring uses of copyrighted works, as well as licensing of

rights and indicating attribution, creation and ownership."  *Kirk Kara Corp. v. W. Stone & Metal*

*Corp.*, No. 20-cv-1931, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14, 2020), *quoting* 4 Nimmer on

Copyright § 12A.08 (2019).  ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████Accordingly, 17 U.S.C. § 1202(b)(1)

1  prohibits persons from intentionally removing or altering CMI with actual or constructive

2  knowledge that doing so will "induce, enable, facilitate, or conceal" copyright infringement.

3  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018).  Additionally, section 1202(b)(3)

4  forbids persons from distributing works knowing that CMI was removed or altered and having

5  actual or constructive knowledge that it will "induce, enable, facilitate, or conceal" copyright

6  infringement.  *Id*.  Defendants' double scienter requirement can be established through common

7  proof.  *E.g., Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020).

8      **1.  Liability for the ISRC Class Will Be Established through Common Proof.**

9      An ISRC "is the globally recognized standard numbering system for audio and music video

10  recordings.  It comprises a 12-digit alphanumeric code and functions as a universal identification

11  number for each sound recording."[6]

22      Thus, YouTube has knowledge of both the presence of recorded music and the absence of

23  ISRC codes in uploaded videos as YouTube screens every video uploaded to the platform as part of

24  its Content ID program. YouTube's use of ISRC codes to both identify works and manage

25  ownership rights, provides it with knowledge that the absence of those ISRC codes from videos

26  containing recorded music will both facilitate and conceal copyright infringement.  All this evidence

[6] https://www.isrc.com/general-faq.html?msclkid=28920761d4d91a849f9064713208caa4#01 (last visited Sept. 1, 2022).

-18-

1   is generalized and not specific to any Plaintiff or class member.

2        **2.   Liability for the CLFN Class Will Be Established Through Common Proof.**

3   ████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ██████████████████████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████

8   ██████████████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████████████████

12  ███████████████████████████████████████████████████████

13  █████████████████████████████████████████████████████████████

14  ███████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████

17        **D.   Google's Liability Will Be Established through Common Proof.**

18        Finally, Plaintiffs will use common evidence to prove that Google is vicariously liable for

19  the bad acts of its subsidiary, YouTube.  A parent corporation is liable for the infringing acts of its

20  subsidiary if there is "a substantial and continuing connection between the two with respect to the

21  infringing acts."  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519–20 (9th Cir.

22  1985).  Plaintiffs will prove this with evidence regarding Defendants' interrelatedness and the

23  sharing of advertising revenue, data, and information between Google and YouTube.  ██████████

24  ████████████████████████████████████████████████████████████

25  ████████████████████████████   In addition, YouTube uses data from a user's Google account

26  to influence that user's video recommendations.  *See* Ex. 56 ("Manage your recommendations and

27  search results," *available at* https://support.google.com/youtube/answer/6342839).  Such evidence,

28  which relates solely to the relationship between Google and YouTube, is in no way dependent on

-19-

facts peculiar to any specific plaintiff: if Google is held vicariously liable under *Frank Music*, it will be liable to everyone in the classes. Thus, Google's liability presents another common issue to be resolved by common evidence, weighing in favor of predominance.

**E.   Plaintiffs' Remedies Can Be Established with Common Methods.**

**1.   Statutory and Actual Damages.**

Copyright owners may elect between statutory damages or actual damages, including direct and indirect profits. 17 U.S.C. § 504(c)(1); *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004); 17 U.S.C. § 1203(c).  The need for individualized damage calculations alone cannot defeat class certification. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *In re Facebook, Inc. IPO Securities & Derivative Litig.*, 312 F.R.D. 332, 350 (S.D.N.Y. 2015) ("*Comcast* does not bar certification" because the statute "provides a statutory formula for damages"). Plaintiffs have proposed damages models to determine class-wide damages for all four classes that is consistent with their theory of liability in accordance with *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

Members of the Foreign Unregistered Works Infringement Class are entitled to their share of the direct and indirect profits YouTube derived from the infringing activity. ███████████ █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████ ████████████████████

Members of the Registered Works Infringement Class and the CMI Classes may elect between actual and statutory damages.  The same factors and evidence will be used to establish the alternative statutory damages for all of those classes.  While the Registered Works Infringement Class is only eligible to receive a single statutory award for each work infringed, *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189–90 (9th Cir. 2016), the CMI classes are eligible for a statutory award for each video that contained the work but was displayed with CMI metadata removed or altered. ███████████████████████████████████████████████████████

1 ████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████

6     **2.  Injunctive Relief**

7       The class members' right to injunctive relief will also be established through common, class-

8 wide proof.  The injunctive relief requested here can be granted as ancillary relief to the Rule

9 23(b)(3) class.  *See* Ex. 16 at 24:3-6 ("I would encourage you not to ask for a (b)(2) and a (b)(3).

10 You can get injunctive relief in the context of a (b)(3) class.  That's ancillary relief."); *Bumpus v.*

11 *Realogy Brokerage Grp*. LLC, No. 3:19-CV-03309-JD, 2022 WL 867256, at *10 (N.D. Cal. Mar.

12 23, 2022) ("That is not to say that injunctive relief is ruled out for the (b)(3) classes.  Rather, such

13 relief may be awarded in addition to a monetary recovery.").  Here, the Copyright Infringement

14 Classes seek the provision of the digital fingerprinting functions of Content ID to class members

15 based on reasonable terms.  The availability and necessity of this relief will be established, class-

16 wide.  *See, e.g.*, Ex. 15 at ¶¶ 91-110 ████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████  Injunctive relief is also

20 appropriate for the CMI Classes based on YouTube's admission that it intentionally strips all

21 metadata, including CMI, when uploading videos to its platform.  See Ex. 19; Ex. 17 (YT Supp.

22 Resp. to Interrog. 1).  The CMI Classes seek injunctive relief that is intuitive and will follow directly

23 from the class-wide proof of liability under 17 U.S.C. § 1202(b), namely Defendants must stop

24 violating the statute and must stop altering or removing CMI and/or distributing works where CMI

25 has been removed or altered.

26 **V.**      **A Class Action is the Superior Method for Resolving this Dispute**

27       "Rule 23(b)(3)'s superiority test requires the court to determine whether maintenance of this

28 litigation as a class action is efficient and whether it is fair." *Wolin v. Jaguar Land Rover N. Am.,*

*LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). Litigating Plaintiffs' claims as a class action will be fair, efficient, and superior to other available methods for adjudicating the controversy. "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id*. at 1175. In the analogous *Napster* case, the court found that even with the incentives provided by the Copyright Act (statutory damages and attorneys' fees), "it nonetheless remains true that many small composers individually lack the time, resources, and legal sophistication to enforce their copyrights." *Id*. at *8. The same is true here.

It is desirable to concentrate the litigation in this District. Defendants are headquartered here, and this District (and the Ninth Circuit generally) are experienced in dealing with class actions and copyright cases. There can be no better forum to adjudicate class members' claims.

Courts in this Circuit have certified classes in similar cases, holding that the predominance requirement was satisfied and a class action was the superior method for resolving the claims. *See Napster*, 2005 WL 1287611 at *7; *Flo & Eddie*, 2015 WL 4776932, at *16.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court **GRANT** this motion for class certification.

Respectfully submitted,

Dated:  October 18, 2022

_____/s/ Philip C. Korologos_____

Philip C. Korologos
Joanna Wright
Demetri Blaisdell
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350
Email: pkorologos@bsfllp.com
Email: jwright@bsfllp.com
Email: dblaisdell@bsfllp.com

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104

-22-

Phone: (415) 293-6800
Fax: (415) 293-6899
Email: jischiller@bsfllp.com

George A. Zelcs
Randall P. Ewing, Jr.
Ryan Z. Cortazar
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
Email: gzelcs@koreintillery.com
Email: rewing@koreintillery.com
Email: rcortazar@koreintillery.com

Stephen M. Tillery
Steven M. Berezney, CA Bar #329923
Carol O'Keefe
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
Email: stillery@koreintillery.com
Email: sberezney@koreintillery.com
Email: cokeefe@koreintillery.com

*Attorneys for Plaintiffs*