George A. Zelcs (*pro hac vice*)
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
  rewing@koreintillery.com
Ryan Z. Cortazar (*pro hac vice*)
  rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe (*pro hac vice*)
  cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
  pkorologos@bsfllp.com
Joanna Wright (*pro hac vice*)
  jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice*)
  dblaisdell@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC,<br><br>Defendants.<br><hr>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counter-Plaintiffs,<br><br>v.<br><br>PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC,<br><br>Counter-Defendants. | CASE NO.  3:20-cv-4423-JD<br><br>**DECLARATION OF RANDALL P. EWING, JR. IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:   December 15, 2022<br>Time:   10:00 a.m.<br>Dept.:  11<br>Judge: Hon. James Donato |

I, Randall P. Ewing, Jr., declare as follows:

1.      I am a partner with Korein Tillery LLC, co-counsel to Plaintiffs and putative class representatives Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing, Ltd.  I am an attorney at law duly licensed to practice before all courts of the State of Florida and the State of Illinois and admitted *pro hac vice* for this case. Dkt. 15.  I have personal knowledge of the matters set forth herein and am competent to testify.

2.      I submit this Declaration in support of Plaintiffs' motion for class certification and appointment of class representatives and class counsel.

3.      The law firms representing Plaintiffs, Boies Schiller Flexner and Korein Tillery (collectively, "Counsel"), have collectively invested significant resources into investigating and litigating this case. Counsel now together move to be appointed co-lead class counsel. *See also* Korologos Declaration.

4.      Counsel have invested substantial resources and time in the investigation and prosecution of this case. Among other things, they have:

- Investigated the technological means by which Defendants algorithmically select videos via Autoplay, locate infringement using Content ID, and implement their repeat infringer policy, among other issues.
- Conducted substantial discovery, including taking and defending fact and expert depositions and filing and arguing several discovery dispute letters with the court.
- Prevailed on a contested motion for leave to amend the complaint and a motion to dismiss.
- Briefed and argued a motion for summary judgment against one of the putative class representatives.
- Consulted with technology and economic experts to assist in developing the case.
- Researched and analyzed potential legal claims against Defendants.
- Evaluated potential class representatives.

**A.      Relevant Firm Expertise**

5.      Korein Tillery — based in Chicago and St. Louis — is one of the country's leading and most successful plaintiffs' complex-litigation firms, representing a broad array of clients in high-stakes lawsuits and delivering over $18 billion in verdicts and settlements over the last 14 years. Most of our attorneys have represented both plaintiffs and defendants at some point in their careers, and, combined, we've handled cases covering virtually every conceivable substantive area of the law. We've litigated cases for clients ranging from individuals and certified classes to governmental entities and billion-dollar, multi-national corporations. Collectively, we've tried hundreds of cases to verdict, with several verdicts exceeding 10 figures.  Our attorneys have been nominated for numerous regional and national trial lawyer awards, and we've won many landmark decisions in state and federal appellate courts, including the Supreme Court of the United States.

6.      The National Law Journal has consistently deemed Korein Tillery to be one of the country's top plaintiffs' firms by naming it to its "Plaintiffs' Hot List" seven times in the past 15 years.  In 2014 and 2015, Korein Tillery was named by the NLJ as a member of its top 50 Elite Trial Lawyers. The American Bar Association's Securities Litigation Journal deemed two of Korein Tillery's cases, *Kircher v. Putnam Funds Trust*, 547 U.S. 633 (2006) and *Merrill Lynch Pierce Fenner & Smth, Inc. v. Dabit*, 547 U.S. 71 (2006), the two most important securities law decisions in 2006. Securities Litigation Journal, *Top 10 Securities Law Decisions of 2006* (Winter 2006). In *Kircher*, Korein Tillery served as lead counsel for the plaintiffs' class from the initial trial court filing to the Supreme Court of the United States, where the Court reversed the Seventh Circuit in a 9-0 decision.

7.      Korein Tillery has been appointed as class counsel in more than fifty class actions and has successfully negotiated some of the country's largest class action settlements. *See, e.g., Parker v. Sears Roebuck & Co.*, Case No. 04-L-716 (Ill. Cir. Ct. Jan. 16, 2008) (settlement valued at $544.5 million); *Cooper v. The IBM Pers. Pension Plan*, 2005 WL 1981501, 35 Employee Benefits Cas. 2488 (S.D. Ill. Aug. 8, 2005) ($325 million settlement); *Sparks v. AT&T Corp.*, 96-LM-983 (Ill. Cir. Ct. Nov. 4, 2002) ($350 million settlement); *Sullivan v. DB Investments, Inc.*,

04-2819 (D.N.J. May 22, 2008) ($323 million settlement); *Folkerts v. Illinois Bell Tel. Co.*, 95-L-912 (Ill. Cir. Ct. July 7, 1998) ($252 million settlement); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, 32 Employee Benefits Cas. 1362 (S.D. Ill. Jan. 22, 2004) ($240 million settlement); *Malloy v. Ameritech*, 98-488-GPM (S.D. Ill. July 21, 2000) ($180 million settlement); *City of Greenville v. Syngenta Crop Prot., Inc.*, 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012) ($105 million settlement); *In Re: MCI Non-Subscriber Tel. Rates Litig.*, MDL 1275 (S.D. Ill. Apr. 19, 2001) ($99 million settlement); and *Dunn v. BOC Group Pension Plan*, 01-CV-382-DRH (S.D. Ill. Mar. 12, 2004) ($70 million settlement).

### B.    Key Korein Tillery Team Members

8.    ***Stephen M. Tillery***: Stephen Tillery is the senior and founding member of the firm. With more than 40 years of trial experience, Mr. Tillery has acted as lead counsel in hundreds of complex cases at both the trial and appellate levels that have resulted in some of the largest trial verdicts and settlements in the United States.

9.    Mr. Tillery completed his undergraduate studies at Illinois College (B.A. *magna cum laude*, Phi Beta Kappa) in 1972. Thereafter he attended Saint Louis University School of Law (J.D. *cum laude*, Order of the Woolsack, 1976). While obtaining his law degree, Mr. Tillery was a law clerk for the Honorable James L. Foreman, United States District Court for the Southern District of Illinois. Following graduation from law school, he was a law clerk to the Honorable George J. Moran, Fifth District Court of Appeals of Illinois.

10.    Mr. Tillery was named Litigation Daily's Litigator of the Week on May 1, 2014, for successfully reinstating the trial court's $10.1 billion verdict in *Price v. Philip Morris, Inc.*, 2014 IL App (5th) 130017, 2014 WL 1696280 (Ill. App. Ct. Apr. 29, 2014).

11.    Mr. Tillery has written numerous legal articles and has served as lecturer, moderator, and panel member at dozens of legal seminars relating to litigation and trial practice. He was an adjunct professor at Saint Louis University School of Law for eleven years, and was Co-Director of the Advanced Trial Advocacy Program there from 1983 to 1988.

12.     **George A. Zelcs:** George Zelcs focuses his practice in the areas of complex commercial litigation including securities, antitrust, consumer fraud, qui tam/whistleblower, and pharmaceutical litigation in state and federal courts. Mr. Zelcs completed his undergraduate degree at Indiana University (B.A. Political Science, Urban Planning, and Sociology) in 1976. He received his law degree at Chicago-Kent College of Law and was admitted to practice law in Illinois in 1979.

13.     Mr. Zelcs has frequently served as lead counsel in numerous complex multi-party litigations. Most recently, he has represented the National Credit Union Administration in mortgage back securities litigation against certain global investment backs resulting in over $5 billion in recoveries for the NCUA. He has served in an instrumental role in developing and litigating the claims in *In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.), resulting in $2.3 billion in recoveries to date. He served as co-lead counsel in *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 15-cv-9323-LGS (S.D.N.Y.) (Schofield, J.), a class action regarding "last look" practices in foreign exchange trading, resulting in a $50 million settlement of breach of contract and other claims.

14.     Mr. Zelcs has conducted bench and jury trials in state and federal courts throughout the United States. In *Price, et al vs. Philip Morris USA, Inc.,* No. 001-0112 (Third Judicial Circuit, Illinois) (Byron, J.) he co-tried a class action asserting consumer fraud claims and achieved a $10.1 billion dollar judgment.

15.     **Carol O'Keefe:** Carol O'Keefe is a partner at Korein Tillery's St. Louis office. Ms. O'Keefe received her B.A. from Yale College *summa cum laude* in 1983 after only three years of study, and she received her J.D. from Harvard Law School *cum laude* in 1986. She is licensed in New York and Missouri and focuses her practice on antitrust and commercial litigation.

16.     After law school, Ms. O'Keefe served as a judicial law clerk for Judge Michael A. Telesca of the U.S. District Court for the Western District of New York. Thereafter, and until 2008, Ms. O'Keefe was an associate at Harter Secrest & Emery LLP, where she focused on complex litigation, including antitrust, securities, employment discrimination, civil rights, and commercial

litigation. After taking time off from the practice of law to focus on raising her four teenage children, Ms. O'Keefe worked as an Adjunct Lecturer at the State University of New York at Brockport from 2012-2015, where she designed and taught courses in modern constitutional law.

17.     Ms. O'Keefe joined Korein Tillery in 2016, and the story of her return to the legal profession is recounted in the national bestseller, "That's What She Said: What Men and Women Need to Know About Working Together," by Joanne Lipman. Ms. O'Keefe currently represents investors in cases involving benchmark and market manipulation as well as consumers harmed in the digital economy.

18.     ***Randall P. Ewing, Jr.:*** Randall Ewing is a partner at Korein Tillery's Chicago office. Mr. Ewing attended the University of Louisville Law School, where he earned the highest grade in nearly half of the classes that he took. Upon graduating *summa cum laude* in 2007, he clerked for Judge Gordon J. Quist of the U.S. District Court for the Western District of Michigan and then for Judge Kermit E. Bye of the U.S. Court of Appeals for the Eighth Circuit. Mr. Ewing is licensed to practice law in Illinois, Florida, the United States Court of Appeals for the Sixth and Eighth Circuits, and several federal district courts.

19.     Before joining Korein Tillery, Mr. Ewing was an associate at Boies Schiller & Flexner. While there, Mr. Ewing was part of the team that a brought a first-of-its-kind federal challenge to a state constitutional amendment banning same-sex marriage (California's Proposition 8), which was tried and found to be unconstitutional and was responsible for briefing dispositive issues in a False Claims Act trial that resulted in one of the largest relator-only jury verdicts in history. He was also extensively involved in an 8-month trial and multiple appeals defending Barclays from $15 billion in claims arising from its acquisition of Lehman Brothers during the financial crisis, which resulted in a complete victory for Barclays.

20.     Since joining Korein Tillery, Mr. Ewing has been responsible for case investigation, preparing pleadings, taking and defending fact and expert depositions, working alongside experts, managing discovery, briefing dispositive and other legal issues, preparing witnesses for trial, conducting cross-examinations in a federal jury trial, and appeals. Mr. Ewing

played a significant role in establishing materiality and rebutting defendant's loss causation defense in *NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW-JEM (C.D. Cal.), described below, which resulted in recoveries exceeding $5 billion for the National Credit Union Administration in litigation against 18 national and international financial institutions for allegedly misrepresented mortgage-backed securities.

21.     Mr. Ewing worked with Scott+Scott and Hausfeld to litigate antitrust claims against 16 national and international financial institutions in *In re: Foreign Exchange Benchmark Rates Antitrust Litigation* No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.), resulting in $2.3 billion in recoveries to date, earned a combined settlement of $386.5 million for class members in *In re GSE Bonds Antitrust Litig.*, 1:19-cv-01704 (S.D.N.Y.) (Rakoff, J.), a case involving the secondary market for government-issued bonds, and represented plaintiffs in *Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 15-cv-9323-LGS (S.D.N.Y.) (Schofield, J.), a class action regarding "last look" practices in foreign exchange trading, resulting in a $50 million settlement of breach of contract claims.

22.     **Steven M. Berezney:** Steven Berezney is a partner at Korein Tillery's St. Louis office. Mr. Berezney received his J.D. from the University of Illinois Urbana-Champaign College of Law in 2003 (*magna cum laude*), where he served as Editor-in-Chief of the Law Review. He is licensed in California, New York, Illinois, Missouri, and the District of Columbia, as well as the Supreme Court of the United States, the U.S. Court of Appeals for the Second, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits, and seven federal district courts.

23.     After law school, Mr. Berezney served as a judicial law clerk for Judge Laura Denvir Stith of the Supreme Court of Missouri. Upon completing his clerkship, Mr. Berezney joined Husch Blackwell in 2004 where he represented clients in the agriculture, retail, tax, financial, and consumer goods industries, including Fortune 500 companies, in complex litigation involving contract disputes and business torts in both trial and appellate courts. Mr. Berezney was part of the trial team that won a $1 billion patent infringement jury verdict in *Monsanto Co. v. E.I.*

*DuPont de Nemours & Co.,* 4:09-cv-00686-ERW (E.D. Mo. Aug. 1, 2012). He also served as either lead or co-lead on bench and jury trials on behalf of both plaintiffs and defendants.

24.     Since joining Korein Tillery, Mr. Berezney managed and litigated all aspects of multi-billion dollar cases in federal trial and appellate courts against Wall Street investment banks arising from misrepresentations made about residential mortgage-backed securities ("RMBS") in violation of the federal 1933 Securities Act and state law. Mr. Berezney played a significant role in obtaining over $5 billion in recoveries for NCUA and CUNA Mutual, including leading or co-leading several of the individual cases.

25.     Mr. Berezney has also been part of the team developing and litigating Sherman Act price fixing conspiracy claims raised against 16 investment bank defendants in *In re: Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789-LGS (S.D.N.Y.) (Schofield, J.), resulting in $2.3 billion in recoveries to date.

26.     Mr. Berezney is also currently co-leading four class action cases, including being appointed class counsel, filed on behalf of municipalities and counties in Missouri, Georgia, and Indiana seeking unpaid franchise fees from video streaming services such as Netflix, Hulu, DIRECTV, DISH Network, and Disney. *See, e.g., City of Creve Coeur v. Netflix, Inc. & Hulu, LLC*, No. 18SL-CC02819 (St. Louis County Mo.); *City of Creve Coeur v. DIRECTV LLC, DISH Network Corp., and DISH Network LLC*, No. 18SL-CC02821 (St. Louis County Mo.); *Gwinnett County, Georgia et al. v. Netflix, Inc. et al.*, Case No. 20-A-07909-10 (Gwinnett County Ga.); *City of Fishers et al. v. Netflix, Inc. et al.*, 49D01-2008-PL-026436 (Marion County Ind.). The *City of Creve Coeur* cases were the first of their kind in the nation and the first to obtain a substantive ruling recognizing the viability of the claims.

27.     ***Ryan Z. Cortazar:*** Ryan Cortazar is an attorney at Korein Tillery's Chicago office. He received his A.B. *cum laude* with high honors in his field from Harvard College and his J.D. *cum laude* from Harvard Law School. While in law school Mr. Cortazar was an articles editor and book reviews editor of the Harvard Law Review. He is licensed in Illinois.

28.     After law school, Mr. Cortazar served as a law clerk for Judge David F. Hamilton of the U.S. Court of Appeals for the Seventh Circuit. He also received the Redstone Fellowship from Harvard Law School for his placement at the Chicago Lawyers' Committee for Civil Rights where he advocated for voting rights and police accountability. At Korein Tillery, Mr. Cortazar has investigated antitrust violations in the digital economy and represented investors harmed by the manipulation of various financial instruments as well as educators advocating for the literacy rights of public schoolchildren.

29.     ***Andrew M. Ellis:*** Andrew Ellis is an attorney at the firm.  He completed his undergraduate studies at the University of Missouri (*magna cum laude*, Phi Beta Kappa) and received a J.D. from Harvard Law School.  While in law school, he was an Article Editor for the Harvard Law and Policy Review.  He is licensed in Georgia.

30.     Before joining Korein Tillery, Mr. Ellis was a litigation associate at Jones Day. While there, Mr. Ellis briefed and argued before the U.S. Court of Appeals for the Eleventh Circuit in the successful appeal of a defendant's federal tax crimes conviction.  *United States v. Saleem Hakim*, 19-11970 (11th Cir.).  He was also part of a trial team that obtained a favorable decision in an appraisal action where the petitioners asserted the acquired corporation was worth $5 billion more than the merger consideration. *In re Appraisal of Jarden Corp.*, No. 12456 (Del. Ch.).

## C.     The Firm's Recent Work

31.     ***In re: Foreign Exchange Benchmark Rates Antitrust Litigation,*** **No. 13-cv-07789-LGS (S.D.N.Y.).** Korein Tillery, working with co-counsel, developed and filed a class action on behalf of individuals who entered into foreign exchange transactions in over-the-counter exchanges and/or on exchanges with dealers, alleging violations of the Sherman Antitrust Act and Commodity Exchange Act. After almost 6 years of work, $2.3 billion in court-approved settlements were reached with 15 of the 16 defendants, constituting one of the largest antitrust class action recoveries in history. Mediator Kenneth Feinberg concluded this settlement "represent[ed] some of the finest lawyering toward a negotiated resolution that I have witnessed

in my career," and described Korein Tillery and its co-counsel as "superlative, sophisticated, and determined plaintiffs' lawyers."

32.    ***In re GSE Bonds Antitrust Litig.,*** **No. 1:19-cv-01704 (S.D.N.Y.).** Korein Tillery, along with co-counsel, alleged antitrust violations arising from coordinated price-fixing in the secondary market for bonds issued by the government-sponsored entities Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Farm Credit Banks, and Federal Home Loan Banks ("GSE Bonds"). Plaintiffs defeated two motions to dismiss and reached a settlement with all defendants, including Deutsche Bank Securities Inc., First Tennessee Bank, N.A., FTN Financial Securities Corp., Goldman Sachs & Co. LLC, Barclays Capital Inc., BNP Paribas Securities Corp., Cantor Fitzgerald & Co., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, HSBC Securities (USA) Inc., J. P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co., LLC, Nomura Securities International, Inc., SG Americas Securities LLC, TD Securities (USA) LLC, and UBS Securities LLC. The combined settlement provided $386.5 million to class members and was approved by the court on June 18, 2020.

33.    ***Sullivan v. DB Investments, Inc.,*** **No. 04-2819 (D.N.J.).**  Korein Tillery represented a nationwide class of diamond purchasers in an antitrust case against the country's largest diamond distributor. That case was consolidated with others in the Eastern District of Pennsylvania and Korein Tillery was appointed co-lead counsel. In that role, the firm helped negotiate injunctive relief and a nationwide settlement that created a $323 million fund to compensate diamond purchasers.

34.    ***In re: Google Play Consumer Antitrust Litigation,*** **No. 21-md-02981-JD (N.D. Cal.).** Korein Tillery, working with co-counsel, filed the first consumer class action in the nation alleging that Google's operation of Google Play Store and Google Play Billing, among other actions, created a wrongful monopoly over the distribution of applications and payment for in-application purchases in the Android ecosystem. Over ten similar complaints followed and are

now consolidated before Judge James Donato in the Northern District of California, where Korein Tillery serves as a member of the consumer class steering committee.

35.    ***National Credit Union Administration Mortgage-Backed Securities Litigation.*** The National Credit Union Administration ("NCUA") is the independent federal agency created by the U.S. Congress to regulate, charter, and supervise federal credit unions. On behalf of the NCUA, Korein Tillery and co-counsel Kellogg, Hansen, Todd, Figel & Frederick filed approximately 20 federal lawsuits throughout 2011-2013 alleging that Wall Street investment banks misled credit unions about the quality of certain residential mortgage-backed securities ("RMBS"), causing billions of dollars of losses that the NCUA insured. More specifically, NCUA alleged that these banks violated the Federal Securities Act by representing in federally-regulated offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines when in fact the majority of the loans did not.

36.    Throughout several years of contentious litigation, involving several successful appeals, Korein Tillery and Kellogg Hansen obtained more than $5.1 billion in legal settlements on NCUA's behalf, including but not limited to:

- *NCUA v. JP Morgan Chase Bank*, 2:13-cv-02012-JWL (D. Kan.) (obtained $1.4 billion settlement in Dec. 2013);

- *NCUA v. RBS Sec., Inc.*, 1:13-cv-06726-DLC (S.D.N.Y.) (accepted offer of judgment for $129.6 million plus fees in Sept. 2015);

- *NCUA v. Barclays Capital, Inc.*, 1:13-cv-06727-DLC (S.D.N.Y.) & 2:12-cv-02631-JWL (D. Kan.) (obtained $325 million combined settlement in Oct. 2015);

- *NCUA v. Wachovia Capital Markets LLC*, 1:13-cv-06719-DLC (S.D.N.Y.) & 2:11-cv-02649-JWL (D. Kan.) (obtained $53 million combined settlement in Oct. 2015);

- *NCUA v. Morgan Stanley & Co., Inc.*, 1:13-cv-06705-DLC (S.D.N.Y.) & 2:13-cv-02418-JWL (D. Kan.) (obtained $225 million combined settlement in Dec. 2015);

- *NCUA v. Goldman Sachs and Co.*, 1:13-cv-06721-DLC (S.D.N.Y.) & 2:11-cv-06521-GW-JEM (C.D. Cal.) (obtained $575 million combined settlement in Apr. 2016);

- *NCUA v. RBS Sec., Inc. et al.*, 11-cv-2340- JWL-JPO (D. Kan.) & 2:11-cv-05887 GW-JEM (C.D. Cal.) (obtained $1.1 billion combined settlement in Sept. 2016);

- *NCUA v. UBS Securities, LLC*, 2:12-cv-02591-JWL (D. Kan.) (obtained $445 million settlement in Mar. 2017); and

- *NCUA v. Credit Suisse Sec. (USA) LLC*, 2:12-cv-02648-JWL (D. Kan.) (obtained $400 million settlement in Mar. 2017).

37.     NCUA was the first federal regulatory agency for depository institutions to recover losses from investments in these securities on behalf of failed financial institutions. NCUA uses the net proceeds to reduce Temporary Corporate Credit Union Stabilization Fund (Stabilization Fund) assessments charged to federally insured credit unions to pay for the losses caused by the failure of five corporate credit unions.

38.     Korein Tillery and Kellogg Hansen continue to prosecute several lawsuits on behalf of the NCUA against certain RMBS trustees regarding their alleged failure to perform their duties.

39.     ***Senne v. The Office of the Comm'r of Baseball,*** **No. 14-CV-00608-JCS (N.D. Cal.).**  In this action, Korein Tillery served as co-lead counsel for a class of minor league baseball players who allege that MLB and MLB's member franchises failed to pay the players minimum wage, required overtime pay, or sometimes any wages at all. The players have asserted two claims under the federal Fair Labor Standards Act ("FLSA") and an additional thirty-one under the wage-and-hour laws of several states.

40.     Early in the case, the court denied a motion to transfer the action to another venue, and denied a motion to dismiss for purported lack of standing. *See Senne*, 2015 WL 4240716 (N.D. Cal. July 13, 2015). On October 20, 2015, the Court granted the players conditional certification of a collective under the Fair Labor Standards Act. *Senne*, 2015 WL 6152476 (N.D. Cal. Oct. 20, 2015). A court-directed notice was sent, and around 2,300 players joined the collective.

41.     In March 2017, the court certified a Rule 23 class of minor leaguers who played in California. *Senne*, 2017 WL 897338 (N.D. Cal. Mar. 7, 2017). The parties cross-appealed, with MLB arguing that no class should have been certified, and the players arguing that the court should have certified additional classes. On August 16, 2019, the Ninth Circuit agreed with the players. It affirmed the certification of the class of players who worked in California, and it certified additional classes for players who worked during spring training and other periods in Arizona and Florida. MLB petitioned the Ninth Circuit for an en banc re-hearing, which was denied, and then petitioned the U.S. Supreme Court for review, which was also denied. 934 F.3d 918 (9th Cir. 2019), cert. denied, 141 S. Ct. 248 (2020). With trial set before Judge Spero in June 2022 (N.D. Cal.) the parties reached a settlement whereby MLB agreed to pay $185 million in addition to extensive injunctive relief.

42.     ***United States ex rel. Garbe v. Kmart Corp.,*** **No. 3:12-cv-00881-NJR-PMF (S.D. Ill.).**  Since 2004, Kmart pharmacies have charged low, flat-rate prices for certain generic drug prescriptions when those drugs are purchased by customers who paid entirely out of their own pockets with no insurance coverage. Since the beginning of the Medicare Part D drug program on January 1, 2006, however, Kmart has charged higher prices—often significantly higher prices—to customers with Medicare Part D coverage than it charges self-paying customers for the same prescription. For example, Kmart charged cash customers $10 for a 60-day supply of 500 mg Naproxen (available in non-prescription strength as Aleve®), but charged the Government $58.79 for the same prescription.

43.     Korein Tillery and co-counsel Phillips & Cohen filed a False Claims Act case against Kmart after the Government declined to intervene. In the litigation, Kmart never disputed that it charges cash-paying customers lower prices than it charges to the Government. Instead, Kmart contended that it was never required to charge the Government the lower prices because those are not the prices Kmart charges to "the general public." Rather, Kmart claimed its cash-customers are not the "general public" but rather members of an exclusive "club" through which they are offered the discount prices, even though as a practical matter the discount prices are the

prices Kmart charges to all its cash customers. Kmart also has no record of denying any cash-paying customer "membership" in Kmart's "club." The U.S. District Court for the Southern District of Illinois rejected Kmart's arguments and denied its motions for summary judgment. Kmart appealed, but the Seventh Circuit affirmed the district court in large part. *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016). After remand, the case settled in late 2017 with Kmart agreeing to pay approximately $59 million.

44.    ***Lightfoot v. Arkema, Inc. Ret. Benefits Plan,*** **No. 12-773 JBS/JS (D.N.J.).** After the court certified a class of present and former retirement benefits plan participants, plaintiffs filed a motion for partial summary judgment on the issue of whether the COLAs the Plan promised to participants who elected annuities were part of participants' "accrued benefit" under ERISA. The Plan countered with a motion for summary judgment arguing the statute of limitations had run on all class members' claims owing to statements in a 1994 Summary Plan Description (SPD) and other plan documents. Although the same judge had previously ruled that the statements in the SPD and Plan were "clear repudiations" in a companion case, Korein Tillery convinced the court to deny the Plan's motion for summary judgment and to grant plaintiffs' motion for partial summary judgment, finding that the COLAs promised annuitants were accrued benefits. 2013 WL 3283951 (D.N.J. June 27, 2013). The case settled in 2014 with the average class member receiving $11,000 in cash that could be rolled into a retirement account.

45.    ***City of Greenville v. Syngenta Crop Prot., Inc.,*** **No. 3:10-CV-188-JPG-PMF (S.D. Ill.).** On October 23, 2012, the U.S. District Court for the Southern District of Illinois entered an order approving a $105 million class-action settlement designed to compensate Community Water Systems throughout the United States for the cost of removing the pesticide atrazine from public drinking water. The litigation between class members and Syngenta dated back to July 2, 2004, when Holiday Shores Sanitary District filed six separate lawsuits against manufacturers and distributors of atrazine and atrazine-containing products in the Illinois Circuit Court in Madison County.

46.     Atrazine is used to control broadleaf and grassy weeds in a variety of crops, but is applied primarily to corn fields. Atrazine has been one of the most heavily used pesticides in the U.S. Two of atrazine's key chemical characteristics—that it does not readily bind to soil and that it persists in the environment—dramatically increase atrazine's effectiveness as an herbicide. However, because atrazine does not bind to soil, it easily runs off of fields with rainfall and contaminates surface waters such as rivers, lakes, and reservoirs that act as drinking-water supplies for public water providers.

47.     Plaintiffs alleged that atrazine had continuously entered their water supplies, and, as a result of this contamination, they had to filter atrazine from their water sources. After eight years of litigation, Korein Tillery secured a $105 million settlement fund to be distributed to several hundred community water systems for costs of filtration of atrazine from their drinking-water supplies. *City of Greenville v. Syngenta Crop Prot., Inc.,* No. 3:10-CV-188-JPG-PMF, 2012 WL 1948153 (S.D. Ill. May 30, 2012); *see also* 904 F. Supp. 2d 902 (S.D. Ill. 2012) (granting final approval of settlement and attorneys' fees). The settlement amounted to approximately 76 percent of the $139 million estimated to be the Class's maximum potential recovery.

48.     To facilitate the settlement claims process, Korein Tillery lawyers collected 20 years of atrazine testing data into a database that was made available to each class member through a settlement website. From there, Claimants were able to view the test data already collected for their system and provide additional evidence of atrazine contamination to claim their share of the settlement fund. Although many class actions experience claims rates of less than 15 percent, in this case virtually all settlement funds were distributed to class members.

49.     Public Justice honored the Korein Tillery lawyers representing the plaintiffs in this case as finalists for its Trial Lawyer of the Year award.

50.     ***Missouri Utility Tax Litigation.***   Since 2007, Korein Tillery has represented Missouri municipalities in class action litigation that sought to recover unpaid license taxes. In suits against wireless and wireline carriers, Korein Tillery attorneys recovered hundreds of millions of dollars of license tax revenues—both retrospectively and prospectively—for more than

350 cities throughout Missouri. Korein Tillery has recovered more than $1 billion for Missouri municipalities. As a result of their work in these cases, the Missouri Lawyers Weekly recognized Korein Tillery partners John W. Hoffman and Douglas R. Sprong with awards in the "largest plaintiff wins" category in 2007, 2009, 2010, 2015, and 2017.

51.     In 2012, Korein Tillery was successful in persuading the Supreme Court of Missouri to issue an extraordinary writ (mandamus) declaring unconstitutional a state statute that sought to sweep away this litigation by barring cities and towns from serving as class representatives. *State ex rel. Collector of Winchester v. Jamison*, 357 S.W.3d 589 (Mo. 2012).

52.     ***Mansfield v. ALPA*, No. 06-c-6869 (N.D. Ill.).**  Beginning in 2001, United Airlines encountered financial difficulties that ultimately culminated in its filing for bankruptcy protection. During the course of United's reorganization in bankruptcy, United sought to terminate its pilots' defined benefit pension plan. In exchange for ALPA's agreement not to oppose the termination of the pension plan, United agreed to provide ALPA with $550 million in convertible notes. ALPA, through its United Airlines Master Executive Council ("MEC"), was tasked with allocating the proceeds from the sale of the convertible notes among the pilots. The MEC selected an allocation method that divided the note proceeds based upon each pilot's lost accrued benefits and lost projected benefits.

53.     Korein Tillery filed this case in 2006 contending that ALPA breached its duty of fair representation in discriminating between its members in allocating the proceeds from the sale of $550 million in convertible notes. Korein Tillery prevailed on a number of complex and novel issues in the trial court. For example, ALPA moved to exclude retirees from the class, arguing that a union owes no duties to retired pilots under the Railway Labor Act. The court denied ALPA's motion, agreeing with plaintiffs that because ALPA represented the retirees when it negotiated the convertible notes, it owed them a duty even though the retirees were no longer a part of the bargaining unit. *Mansfield v. ALPA*, 2007 WL 2903074 (N.D. Ill. Oct. 1, 2007). After Korein Tillery also successfully opposed motions for summary judgment, 2009 WL 2386281 (N.D. Ill. Jul. 29, 2009), and to decertify the class, 2009 WL 2601296 (N.D. Ill. Aug. 20, 2009), the parties

reached a settlement two weeks before trial. Per the settlement, ALPA funded an aggregate settlement fund of $44 million to be paid directly to class members. *Mansfield v. ALPA*, No. 06C6869 (N.D. Ill. Dec. 14, 2009). The settlement is believed to be one of the largest ever in a duty of fair representation case, in which unions are sued over their responsibility to fairly represent their members.

54.    ***Williams v. Rohm & Haas Pension Plan,* No. 4:04-cv-0078-SEB-WGH (S.D. Ind.).**  Korein Tillery filed this class action in 2002 alleging that the Rohm & Haas Pension Plan violated ERISA by failing to include the value of future cost-of-living adjustments (COLA) in calculating lump-sum distributions from the Plan. After eight years of litigation, Korein Tillery obtained one of the largest settlements in the history of ERISA—$180 million. In 2006, the case was certified and Korein Tillery won summary judgment convincing the district court that the terms of the Plan violated ERISA because a COLA is an "accrued benefit" requiring that it be included in lump-sum distributions. The district court's decision was affirmed on interlocutory appeal. *Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710, 714 (7th Cir. 2007) ("If a defined benefit pension plan entitles an annuitant to a COLA, it must also provide the COLA's actuarial equivalent to a participant who chooses instead to receive his pension in the form of a one-time lump sum distribution."), *cert. denied*, 128 S. Ct. 1657 (2008). Settlement approval and the fee award were later affirmed. 658 F.3d 629 (7th Cir. 2011).

55.    ***Parker v. Sears, Roebuck & Co.*, No. 04-L-716 (Ill. Cir. Ct.).**  Korein Tillery brought this action against Sears in 2004 to remedy Sears's failure to install anti-tip safety devices, which prevent ranges from tipping over and severely burning or injuring unsuspecting consumers, on ranges that it sold, delivered, and set-up in customers' homes. In the 1960s and 1970s, kitchen range manufacturers started reducing the weight of metal in an effort to competitively lower the price of kitchen ranges. Over the course of several years, advances in materials allowed manufacturers to produce ranges which were durable and light weight. However, because the oven doors on the front of the ranges serve as a lever and fulcrum, the light weight of the new ranges created an extremely dangerous tipping hazard. For example, if a person were to place a turkey

roaster on an open and horizontal oven door, the added weight would cause these newly designed ranges to tip forward, spilling the hot contents onto anyone standing in the vicinity.  Children who opened the range and used the door as a step could unwittingly tip boiling liquids onto themselves. Dozens of people had been killed and hundreds had been maimed as a result of this problem.

56.     Recognizing the need for a solution to this dangerous hazard, manufacturers and regulators began requiring installation of an anti-tip bracket that could be attached to the wall or floor at the back end of the range, preventing any forward tipping and maintaining complete stability. The installation is simple and the lightweight bracket costs pennies. The rule making bodies of most codes (BOCA Code, National Electrical Code; numerous other industry codes) thereafter required the installation of anti-tip brackets in all range installations in the United States. Even Sears acknowledged that a properly installed anti-tip bracket completely eliminates the hazards of tipping stoves.

57.     Sears, Roebuck & Company at the time was the largest retail seller of kitchen ranges in the United States—averaging more than 800,000 ranges sold every year. When selling a gas or electric range, Sears generally includes delivery, installation, and hookup in customers' homes; thus, Sears became the largest installer of kitchen ranges in the United States. To increase its profits, Sears adopted a policy of refusing to install anti-tip brackets during normal installation unless the customer agreed to incur a substantial cost. At the same time, Sears failed to disclose the hazards associated with forgoing anti-tip bracket installation.

58.     In January 2008, the Court granted final approval of a settlement which provided complete relief to the class by requiring Sears to install anti-tip brackets for the affected members of the class as well as requiring the installation of such brackets in the future. The settlement is valued at more than $544.5 million.

59.     This settlement was touted by the public interest organization Public Citizen as an example of how consumer class actions benefit society. Public Citizen nominated Stephen Tillery as Trial Lawyers for Public Justice's Trial Lawyer of the Year based upon his role in this case.

60.     ***Hoormann v. SmithKline Beecham Corp.,*** **No. 04-L-715 (Ill. Cir. Ct.).** In July 2004, Korein Tillery filed suit on behalf of a nationwide class of purchasers alleging that SmithKline Beecham promoted Paxil® and Paxil CR™ for prescription to children and adolescents despite having actual knowledge that these drugs exposed children and adolescents to dangerous side effects while failing to treat their symptoms. Following three years of litigation, Korein Tillery obtained a settlement that established a $63.8 million dollar fund to reimburse class members 100 percent of their out-of-pocket expenses. This case was featured in The American Lawyer, Aruna Viswanatha, *King & Spalding Lawyer Stirs State Judge's Ire*, [29] 1 Am.Law., Jan. 2007, at 50, and mentioned in the National Law Journal. *The Plaintiffs' Hot List*, 30 Nat'l L.J. S8 (Nov. 22, 2007).

61.     ***CUNA Mutual Mortgage-Backed Securities Litigation*** **(W.D. Wis.).** CMFG Life Insurance Company, CUMIS Insurance Society, Inc., and MEMBERS Life Insurance Company (collectively referred to as "CUNA Mutual") are financial services and insurance firms that offer insurance, investment, and retirement products and services to credit unions and their members. Korein Tillery and Kellogg Hansen filed a series of individual lawsuits in 2011 and 2013 on behalf of CUNA Mutual against eight Wall Street investment banks seeking to recover losses on $300 million of RMBS purchases using the novel common-law theory of contract rescission.

62.     As in NCUA, CUNA Mutual alleged that the banks misrepresented in offering documents that all loans backing the RMBS complied with originator underwriting guidelines or had sufficient compensating factors to allow exceptions to the guidelines. CUNA Mutual also alleged that the banks misrepresented that it conducted due diligence to verify the accuracy of its offering document representations. In mid-2015, an appellate court issued a favorable opinion in CUNA Mutual's bellwether case approving of CUNA Mutual's primary litigation arguments. *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015). On remand, the case settled in December 2015 for a confidential amount. CUNA Mutual eventually settled its remaining RMBS cases over the next two years for confidential amounts. *See, e.g.*, *CMFG Life Ins. Co. v. Credit Suisse Sec. (USA) LLC*, 3:14-cv-00249-wmc (W.D. Wis.) (settled in Oct. 2017); *CMFG*

*Life Ins. Co. v. Morgan Stanley & Co., LLC*, 3:13-cv-00577-jdp (W.D. Wis.) (settled in Sept. 2017); *CMFG Life Ins. Co. v. J.P. Morgan Sec, LLC*, 3:13-cv-00580-wmc (W.D. Wis.) (settled in Mar. 2016).

63.    ***Axiom Investment Advisors, LLC v. Barclays Bank PLC*, No. 15-cv-9323-LGS (S.D.N.Y.) (Schofield, J.).**  From 2008 to 2015, Barclays Bank PLC acted as both a buyer and seller of various foreign and domestic currencies through various trading platforms. Instead of executing foreign exchange orders placed by Barclays' customers on these platforms, Barclays instituted a secret "last look" policy that delayed execution of matched trades for several hundred milliseconds or even several seconds which allowed Barclays to determine through its algorithms whether the trade would be unfavorable to its position. If the matched trade would be unfavorable, Barclays reneged on the agreed price and rejected the trade or placed the order at a worse price. Barclays used last look to reject millions of trades that would otherwise have been executed.

64.    Korein Tillery, along with its co-counsel Scott+Scott, Attorneys at Law, LLP and Hausfeld LLP, filed a class action against Barclays Bank PLC regarding its use of "last look," raising breach of contract and other claims. The court appointed Korein Tillery and Scott+Scott as class counsel. Counsel was successful in securing a $50 million settlement from Barclays on behalf of the class, which the court ultimately approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 17th day of October, 2022.

*/s/ Randall P. Ewing*
Randall P. Ewing

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

My user ID and password are being used in the electronic filing of this document and, in compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

_/s/ Philip Korologos_
Philip Korologos