| | |
|---|---|
| DAVID H. KRAMER, SBN 168452<br>MAURA L. REES, SBN 191698<br>LAUREN GALLO WHITE, SBN 309075<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br>Email:  dkramer@wsgr.com<br>         mrees@wsgr.com<br>         lwhite@wsgr.com | BRIAN M. WILLEN (admitted *Pro Hac Vice*)<br>CATHERINE R. HARTMAN (admitted *Pro Hac Vice*)<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801<br>Email:  bwillen@wsgr.com<br>Email:  chartman@wsgr.com |

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>          Defendants<br>_____<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>          Counterclaimants,<br><br>     v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>          Counterclaim Defendants. | CASE NO.:  3:20-cv-04423-JD<br><br>**DECLARATION OF CATHERINE R. HARTMAN IN SUPPORT OF DEFENDANTS' SEALING REQUESTS** |

Catherine R. Hartman declares as follows:

1. I am an associate at the law firm Wilson Sonsini Goodrich & Rosati, counsel for Defendants-Counterclaimants YouTube, LLC and Google LLC ("YouTube") in the above-captioned matter. I am licensed to practice law in the State of New York and am admitted *pro hac vice* to practice before this Court. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify as to these facts under oath.

2. On October 13, 2022, the Court issued an Order re: Motions to Seal (ECF No. 188) setting forth the requirements for sealing certain materials at issue in sealing motions then pending before the Court. *See* ECF Nos. 163 and 170. The Court instructed Plaintiff Schneider, Defendant YouTube and third-party A Side Music LLC dba Modern Works Music Publishing ("Modern Works" or "Modern") to file a single, joint motion to seal respecting the documents at issue in those then-pending motions and terminated the pending motions without prejudice. *See* ECF No. 188.

3. Consistent with the Court's October 13th Order, YouTube submits this Declaration in support of its requests pursuant to Civil Local rules 7-11 and 79-5 to seal portions of documents filed in connection with YouTube's motion for summary judgment and Plaintiff Schneider's motion in opposition thereto.

4. Plaintiff Schneider does not oppose YouTube's narrowed sealing requests.

5. YouTube takes no position as to Modern Works' narrowed sealing requests.

6. YouTube's narrowed sealing requests are limited to specific pricing terms and royalty rates in two license agreements, which are designated "Highly-Confidential - Attorneys' Eyes Only" pursuant to this case's Stipulated Protective Order. ECF. No. 45. Both agreements have confidentiality provisions requiring the parties to safeguard the terms of the agreement.

7. The first document at issue is the "Publishing License Agreement" or "PLA," which is a license agreement between Google and Modern Works that delineates the royalty terms whereby Google compensates certain licensees, including Modern Works. Where applicable, the information proposed to be sealed is attached with proposed redactions as Exhibit 1 to the October

1  27, 2022 Declaration of Joanne Suk in support of this Motion. The second document at issue is the
2  "Sound Recording and Audiovisual Content License Agreement" or "SRAV," which delineates
3  royalty terms incorporated into certain licenses under which Google compensates certain licensees
4  for sound recording and audiovisual content. Where applicable, the information proposed to be
5  sealed is attached with proposed redactions as Exhibit 1 to the October 27, 2022 Declaration of
6  Waleed Diab in support of this Motion.

7        8.      Courts, including the Ninth Circuit, routinely recognize that "pricing terms, royalty
8  rates, and guaranteed minimum payment terms" meet the compelling reasons standard for sealing.
9  *In re Elec Arts. Inc.*, 298 F. App'x. 568, 569 (9th Cir. 2008) (holding that "pricing terms, royalty
10 rates, and guaranteed minimum payment terms" sought to be sealed "plainly f[ell] within the
11 definition of 'trade secrets'"); *Open Text S.A. v. Box, Inc.*, No. 13-cv-04910-JD, 2014 WL
12 7368594 at *3 *et seq* (N.D. Cal. Dec. 26, 2014) (Donato, J.) (granting sealing motions as to
13 "sensitive information like pricing terms, royalty rates, [and] minimum payment terms");
14 *Microsoft Corp. v. Hon Hai Precision Indus. Co. Ltd.*, No. 19-cv-01279-LHK, 2020 WL 8991707,
15 at *3 (N.D. Cal. Feb. 21, 2020) (granting defendants' motion to seal where they sought to seal
16 "three specific text items that substantively discuss royalty rates and pricing terms.");
17 *DiscoverOrg Data, LLC v. Bitnine Global, Inc.*, No. 19-cv-08098-LHK, 2020 WL 8669859 at *3
18 (N.D. Cal. Nov. 6, 2020) (granting motion seeking to seal on the basis that "the competitive harm
19 that would result from the disclosure of Plaintiff's pricing and contracts with third parties is a
20 compelling reason" to seal same). The Ninth Circuit treats such terms as "sealable trade secrets."
21 *Microsoft Corp.*, 2020 WL 8991707, at *3. "The same is true of information associating identified
22 customers with particular pricing rates or other financial terms." *Id.*

23       9.      Since the PLA identifies specific parties (here, Modern Works) with the "particular
24 pricing rates," by which Modern Works is compensated, those confidential pricing terms should
25 be kept sealed. Similarly, the confidential terms delineated in the SRAV by which YouTube
26 compensates select partners for the licensed use of sound recording works should remain sealed.
27 Revealing the pricing terms and royalty rates would not only expose terms that YouTube and its
28 partners have sought to keep confidential, but also disadvantage YouTube in its future contract

1  negotiations, thereby "harm[ing YouTube's] competitive standing." *Nixon v. Warner Commc'n,*
2  *Inc.*, 435 U.S. 589, 598 (1978).

3   10. The factors set forth in Local Rule 79-5(c)(1) are all present here. First, with
4  respect to the "legitimate private or public interests that warrant sealing" (Civil L.R. 79-5(c)(1)(i)),
5  it is settled law of this District and the Ninth Circuit that "the competitive harm that would result
6  from the disclosure of… pricing and contracts with third parties is a compelling reason that
7  outweighs the general history of access and the policies favoring disclosure." *DiscoverOrg Data*,
8  2020 WL 8669859 at *3 (citing *Kamakana v. City of & Cty. of Honolulu*, 447 F.3d 1172, 1178-79
9  (9th Cir. 2006)).

10   11. Moreover, the specific provisions YouTube seeks to seal regarding pricing and
11  compensation are not relevant to the issues in dispute. The PLA is included in support of
12  YouTube's motion for summary judgment to demonstrate that this license exists and authorizes
13  YouTube's use of works covered by it; the specific royalty rates underlying the license are not
14  relevant to establishing the existence and scope of the license. Likewise, the SRAV is cited in
15  Plaintiff's Opposition to the Motion for Summary Judgment merely to demonstrate YouTube's
16  use of certain metadata; the specific royalty rates underlying the license are not relevant to
17  establishing YouTube's use of metadata. But even if there were some public interest in the specific
18  details of these licenses, that interest must bow to the recognized private interest of YouTube in
19  maintaining the confidentiality of its "pricing terms, royalty rates, and guaranteed minimum
20  payment terms." *In re Elec. Arts, Inc.*, 298 F. App'x at 569. Further, YouTube has offered these
21  terms with the expectation (and promise) that they would be kept confidential, and the public
22  interest is furthered if parties can freely negotiate with an expectation of confidentiality.

23   12. Second, if redactions are denied, YouTube will be "injur[ed]" because public
24  disclosure of its pricing terms and royalty rates would cause competitive harm to YouTube and
25  provide an improper advantage to its competitors. Suk Decl. ¶ 4 ("To foster trust with licensors
26  and potential licensors, and thereby preserve the ability of YouTube and its licensors to continue
27  successfully negotiating license agreements, YouTube must be able to assure the confidentiality of
28  the royalty and payment terms of its license agreements. Public disclosure of the royalty and

1  payment terms would damage YouTube's standing with its existing licensors, and prejudice its
2  ability to negotiate future license agreements, causing substantial competitive harm to its business.
3  It would also improperly allow YouTube competitors to benefit from the knowledge of YouTube's
4  negotiation of these royalties to price their own products causing or threatening competitive harm
5  to YouTube's business. It may also harm YouTube's licensing partner by disclosing to the world
6  the royalty rates and the terms on which it is willing to license use of the subject works."); Diab
7  Decl. ¶ 5 (substantially similar); Civil L.R. 79-5(c)(1)(ii).

8      13.    Third, YouTube is not seeking to seal the license agreements in their entirety, only
9  redaction of specific, sensitive dollar amounts and percentages. There is no "less restrictive
10 alternative" to these tailored redactions. Civil L.R. 79-5(c)(1)(iii).

11     I declare under penalty of perjury under the laws of the United States that the foregoing is
12 true and correct. Executed this 27th day of October, 2022 at Brooklyn, New York.

13                                                          */s/ Catherine R. Hartman*
14                                                          Catherine R. Hartman