DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
CATHERINE R. HARTMAN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email:  bwillen@wsgr.com
Email:  chartman@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants<br><br>───────────────────────────<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**[REDACTED VERSION] DECLARATION OF CHENYUAN ZHU IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:   December 15, 2022<br>Time:   10:00 a.m.<br>Dept.:  11<br>Judge:  Honorable Judge James Donato |

I, Chenyuan Zhu, declare as follows:

1. I am currently a Product Manager for Content ID for Defendant YouTube, LLC ("YouTube"). I previously worked in and then led YouTube's copyright operations team. I am familiar with YouTube's practices regarding copyright operations. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would testify competently to them.

**DMCA Notice-and-Takedown Process**

2. One of the ways in which YouTube has sought to support the interests of copyright holders is by developing and implementing robust procedures for complying with the Digital Millennium Copyright Act's ("DMCA") notice-and-takedown process. Once YouTube receives a notification of alleged infringement, YouTube uses a largely automated process to review each notice to determine whether they contain the information and representations required for a DMCA notice – that is, does the notice identify the allegedly infringed work; identify the allegedly infringing material; provide the complaining party's contact information; and contain representations that the person submitting the request is authorized to act on behalf of the copyright owner and has a good faith belief that the allegedly infringing material is not authorized by the copyright owner, its agent, or the law. *See* 17 U.S.C. § 512(c)(3)(A). If a notice contains the required representations and does not otherwise carry indications of mistake or abuse, YouTube acts expeditiously to remove the identified material from its service or disable access to it.

3. On rare occasions YouTube may ask for more information from a party submitting a takedown notice, but it is in no position to ultimately determine issues such as whether the party sending the notice is, in fact, the owner or agent of the owner claiming the copyright interest asserted in the notice; whether the video the notice claims is infringing is, in fact, an infringement; or whether an allegedly infringing video is, in fact, authorized (*e.g.*, via a license agreement). Our attempts to investigate these issues just for the named plaintiffs in this case have taken hundreds of hours of my group's time over the course of this case. Evaluating all these questions for even a tiny sample of DMCA notices we receive would be impossible.

Case 3:20-cv-04423-JD   Document 198-2   Filed 11/14/22   Page 3 of 6

*Maria Schneider's DMCA Notices*

4. Maria Schneider submitted two DMCA takedown notices to YouTube alleging that videos on the service infringed her work "Concert in the Garden." Her first notice, sent February 28, 2013, claimed that the video located at http://www.youtube.com/watch?v=e04yCOqalv8 infringed that work. Schneider sent a different notice for a different video on July 27, 2015, claiming that the video located at http://www.youtube.com/watch?v=AlJ6K1x9WIw infringed "Concert in the Garden." YouTube responded promptly to both Schneider's February 28, 2013 and July 27, 2015 notices, disabling the identified videos from public access within a few days of receiving each of those notices. Neither of the videos that Schneider identified as allegedly infringing "Concert in the Garden" would have been publicly available on the YouTube service in 2017.

*AST's DMCA Notices*

5. YouTube has received at least 67 DMCA takedown notices from AST's agent, AZAPI, that identify YouTube videos as allegedly infringing certain copyrighted works. Attached as **Exhibits A-E** and **F-G** are true and correct copies of a sample of seven of YouTube's responses to those 67 DMCA takedown notices that show the contents of the original notices YouTube received.

6. AZAPI submitted other DMCA takedown notices to YouTube on AST's behalf claiming that YouTube videos infringed specific copyrighted AST works. I have attached true and correct copies of YouTube's responses to those notices, which include references to the copyrighted works AZAPI originally claimed were infringed, as **Exhibits H-J**.

**Copyright Management Tools**

7. In addition to the DMCA procedures discussed above, YouTube has created various copyright management tools to help rights holders control the use of their works on the service. One example is YouTube's Copyright Match Tool, which identifies videos on the service that match all or nearly all of a referenced video file that has previously been uploaded. The tool provides the match results to the user who first uploaded the video so that they can consider whether the matches contain their copyrighted work and, if so, whether they are authorized uses.

DECLARATION OF CHENYUAN ZHU ISO
OPPOSITION TO CLASS CERTIFICATION                -2-                CASE NO. 3:20-CV-04423-JD

1   Absent information from the copyright holder, neither YouTube nor the tool can determine
2   whether a match identified by the tool is or is not an authorized use of a given copyrighted work.

3        8.   Another copyright management tool that YouTube offers is Content ID, which
4   enables copyright claimants to identify videos on the service that match the content of reference
5   files they claim to own, and to direct YouTube on what action to take with such matches. While
6   Content ID can identify videos that match a digital reference file, it cannot (and does not attempt
7   to) determine whether a matching video infringes a copyrighted work. The tool cannot determine
8   who owns a particular copyrighted work, whether a particular copyrighted work has been
9   registered with the U.S. Copyright Office, whether the Content ID user's copyrighted content is
10  what caused the match (as opposed to some other aspect of the matching video), whether the
11  matching video has been uploaded to YouTube with authorization or whether it constitutes a fair
12  use of a copyrighted work. Those determinations require active participation from Content ID
13  users, who must continuously update the information that they provide to YouTube regarding
14  changes in their rights to a given work, or changes to the corpus of individuals and entities they
15  have authorized to use a given work.

16       9.   At times, disputes arise between those who assert claims and those who uploaded
17  the claimed videos. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
18  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
19  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅
20  ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅  But that figure does not reflect the actual volume of fair uses that exist on
21  the YouTube service. YouTube users do not face financial liability based on Content ID claims,
22  and because rightsholders typically choose to monetize their Content ID claims, a user's video
23  generally remains accessible on the service notwithstanding a claim. Accordingly, a YouTube user
24  may not have motive to dispute a claim even if they believe their use of a work is a fair use.
25  YouTube does not know how often fair use would be claimed by users outside the limited context
26  of Content ID disputes, or how often it would be claimed in actual copyright litigation where the
27  user faced potential liability and loss of their content.

28

DECLARATION OF CHENYUAN ZHU ISO
OPPOSITION TO CLASS CERTIFICATION             -3-             CASE NO. 3:20-CV-04423-JD

**Terms of Service**

10. By creating a YouTube account, users gain access to a host of YouTube services at no charge, including video hosting, a global audience for their content, social networking and analytics capabilities, and access to ground-breaking copyright management tools. In exchange for access to these free services and tools, a user must assent to YouTube's Terms of Service. A true and correct copy of YouTube's Terms of Service as they existed on October 3, 2012 and produced in this litigation stamped GOOG-SCHNDR-00034933 is attached as **Exhibit K**. Neither Maria Schneider, Uniglobe Entertainment, LLC, nor AST Publishing Ltd. could have created a YouTube account or a channel on the service without accepting YouTube's Terms of Service.

11. Among other things, the Terms of Service include a provision under which users, "by submitting Content to YouTube," grant YouTube "a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use, reproduce, distribute, prepare derivative works of, display, and perform the Content in connection with the Service and YouTube's (and its successors' and affiliates') business, including without limitation for promoting and redistributing part or all of the Service (and derivative works thereof) in any media formats and through any media channels." Ex. 1 § 6(C). Users also grant "each user of the Service a non-exclusive license to access your Content through the Service, and to use, reproduce, distribute, display and perform such Content as permitted through the functionality of the Service and under these Terms of Service." *Id.* The licensed "'[c]ontent' includes the text, software, scripts, graphics, photos, sounds, music, videos, audiovisual combinations, interactive features and other materials [users] may view on, access through, or contribute to the Service." *Id.* § 2(A). These licenses endure until a commercially reasonable time after the user removes the content they have supplied from the service. *Id.* § 6(C). In addition, the Terms of Service contains a bilateral one-year contractual limitations period requiring that any claims relating to the service be brought within one year of accrual. *Id.* § 14. That section, entitled "Limitation on Legal Action," provides: "YOU AND YOUTUBE AGREE THAT ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES. OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY

BARRED." *Id.* While the Terms of Service have been modified several times over the years, materially identical provisions have existed in every subsequent version of the Terms of Service.

**Licensor Metadata**

12. YouTube may ask certain licensors, such as parties to YouTube's Publishing License Agreement or Sound Recording Audiovisual Content License, to provide YouTube with metadata (such as work titles, ownership splits and/or ISRCs) for the copyrighted works they license to YouTube, so that YouTube can, for example, more easily account for revenues earned from videos using those works. But that subset of licensors does not always have or provide such metadata. Further, many of the licenses that YouTube obtains from copyright owners and/or their agents or licensees do not call for provision of metadata at all. For example, as discussed above, YouTube obtains licenses under its Terms of Service for content uploaded by authorized uploaders, such as copyright owners or co-owners or their agent or licensee. Those licenses, which account for a significant percentage of the videos on the service, do not require licensors to provide metadata regarding their works.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 14th Day of November 2022, at Pacifica, California.

*/s/ Chenyuan Zhu*
Chenyuan Zhu

**ATTORNEY ATTESTATION**

I, David H. Kramer, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the signatory.

*/s/ David H. Kramer*
David H. Kramer