# EXHIBIT 24

to the Declaration of Paul Harold

```
 1                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
 2                   SAN FRANCISCO DIVISION
 3      MARIA SCHNEIDER, UNIGLOBE     )  Case No.
        ENTERTAINMENT, LLC, and AST   )
 4      PUBLISHING LTD., individually )
        And on behalf of all others   )
 5      Similarly situated,           )
                                      )
 6           Plaintiffs,              )
                                      )
 7              vs.                   )
                                      )
 8      YOUTUBE, LLC and GOOGLE LLC,  )
                                      )
 9           Defendants.              )
        _____)
10      YOUTUBE, LLC and GOOGLE LLC,  )
                                      )
11           Counterclaimants,        )
                                      )
12              vs.                   )
                                      )
13      PIRATE MONITOR LTD, PIRATE    )
        MONITOR                       )
14      LLC, and GÁBOR CSUPÓ,         )
                                      )
15           Counterclaim Defendants. )
        _____)
16
17
18          REMOTE AND VIDEOTAPED DEPOSITION OF
19                MAXIM RYABYKO 30(B)(6)
20
21    Remotely Testifying from Dubai, United Arab Emirates
22
23
24    Reported by:
      Monna J. Nickeson, RPR, CRR, CCR, CSR CA 14430
25    JOB:  5363259
```

Page 1

| | | |
|---|---|---|
| 1 | part of the general policy. | 12:18 |
| 2 | Q. Does AST keep records of all the | 12:18 |
| 3 | licenses that have been granted to upload its | 12:18 |
| 4 | works online? | 12:18 |
| 5 | A. That's LitRes' responsibility. | 12:19 |
| 6 | Q. So who would you consult if you | 12:19 |
| 7 | wanted an exhaustive list of every individual | 12:19 |
| 8 | or entity who had been authorized to upload all | 12:19 |
| 9 | or part of one of AST's works online? | 12:19 |
| 10 | A. Well, we regularly asked LitRes for | 12:20 |
| 11 | an updated list which they provide us with, | 12:20 |
| 12 | showing the list of YouTube channels or partner | 12:20 |
| 13 | channels that has been authorized by them. | 12:20 |
| 14 | Q. Did AST consider whether each video | 12:20 |
| 15 | in this list in Exhibit 6 may be a fair use of | 12:20 |
| 16 | the copyrighted work? | 12:20 |
| 17 | A. After the conducted analysis we had | 12:21 |
| 18 | no doubt left that these works are in violation | 12:21 |
| 19 | and do not represent the fair use of the works. | 12:21 |
| 20 | THE INTERPRETER OF RECORD: The | 12:21 |
| 21 | interpreter would like to have counsel ask for | 12:21 |
| 22 | permission for her to ask the witness to speak | 12:21 |
| 23 | up. He's been a lot more faint ever since the | 12:21 |
| 24 | break. Would that be okay? | 12:21 |
| 25 | MR. ZELCS: Sure. | 12:21 |

Page 124

| | | |
|---|---|---|
| 1 | violation was accessible all over the world | 12:24 |
| 2 | unless YouTube limited access in some | 12:24 |
| 3 | countries. | 12:24 |
| 4 | BY MR. KRAMER: | 12:24 |
| 5 | Q.   Does AST know the country from which | 12:24 |
| 6 | this video was uploaded to YouTube? | 12:25 |
| 7 | A.   To the best of my knowledge, YouTube | 12:25 |
| 8 | is extremely careful in keeping the personal | 12:25 |
| 9 | information of their users private, including | 12:25 |
| 10 | their geo -- geographical -- geolocation. | 12:25 |
| 11 | Geolocation of the users.  So YouTube would be | 12:25 |
| 12 | the ones to have that information. | 12:25 |
| 13 | Q.   Sorry, I'm not sure that was -- that | 12:25 |
| 14 | answered my question.  Does AST know the | 12:26 |
| 15 | country from which this video was uploaded to | 12:26 |
| 16 | YouTube? | 12:26 |
| 17 | MR. ZELCS:  Objection to form. | 12:26 |
| 18 | THE WITNESS:  No, they don't know. | 12:26 |
| 19 | BY MR. KRAMER: | 12:26 |
| 20 | Q.   Does AST know the location of the | 12:26 |
| 21 | server on which this video resided after it was | 12:26 |
| 22 | uploaded to YouTube? | 12:26 |
| 23 | A.   It's a good question.  We did not | 12:26 |
| 24 | verify that information, did an intentional | 12:26 |
| 25 | research when compiling this list. | 12:27 |

Page 126

| | | | |
|---|---|---|---|
| 1 | Q. | I'm sorry, so is the answer no? | 12:27 |
| 2 | A. | No, we don't know. | 12:27 |
| 3 | Q. | Does AST know how many times this | 12:27 |
| 4 | video was viewed? | | 12:27 |
| 5 | A. | We did not record that fact. | 12:27 |
| 6 | Q. | So is the answer no? | 12:27 |
| 7 | A. | I don't have that information.  I | 12:27 |
| 8 | doubt that AST employees do.  It's possible | | 12:27 |
| 9 | that the lawyers do. | | 12:27 |
| 10 | Q. | Does AST know ---know -- I'm sorry. | 12:27 |
| 11 | Strike that. | | 12:28 |
| 12 | | Does AST know if this video was | 12:28 |
| 13 | viewed by someone in Russia? | | 12:28 |
| 14 | A. | At a minimum, it has been viewed by | 12:28 |
| 15 | AZAPI employees who are in Russia. | | 12:28 |
| 16 | Q. | Does AST know if this video has been | 12:28 |
| 17 | viewed by someone in the United States? | | 12:28 |
| 18 | A. | I will have speculations in that | 12:28 |
| 19 | regard. | | 12:28 |
| 20 | Q. | If an individual viewed this video | 12:28 |
| 21 | in Russia, does AST believe that YouTube | | 12:29 |
| 22 | infringed AST's copyright in the United States? | | 12:29 |
| 23 | A. | To my knowledge, this videos are | 12:29 |
| 24 | accessible to all, so if this link was | | 12:30 |
| 25 | available in Russia, my understanding is that | | 12:30 |

Page 127

| | | |
|---|---|---|
| 1 | the technical point of view, technically making | 12:33 |
| 2 | it available, is an act of a violation in the | 12:33 |
| 3 | United States. | 12:33 |
| 4 | Q.   Does AST know the country or | 12:33 |
| 5 | countries from which any of the 108 videos in | 12:33 |
| 6 | this list were uploaded? | 12:33 |
| 7 | THE INTERPRETER OF RECORD:  The | 12:33 |
| 8 | interpreter will interpret that question | 12:33 |
| 9 | after she makes an addition to the previous | 12:33 |
| 10 | response by the witness. | 12:33 |
| 11 | The witness ended that response | 12:33 |
| 12 | saying, is a violation in the United States | 12:33 |
| 13 | even if there were no views from the | 12:33 |
| 14 | United States. | 12:33 |
| 15 | The interpreter's apologies to not | 12:33 |
| 16 | interpret your question. | 12:34 |
| 17 | THE WITNESS:  Could you repeat that | 12:34 |
| 18 | question? | 12:34 |
| 19 | BY MR. KRAMER: | 12:34 |
| 20 | Q.   Of course.  Does AST know the | 12:34 |
| 21 | country from which any of the 108 videos listed | 12:34 |
| 22 | in Exhibit 6 were uploaded to YouTube? | 12:34 |
| 23 | A.   No, because YouTube keeps that | 12:34 |
| 24 | information private.  It's not publicly | 12:34 |
| 25 | available. | 12:34 |

| | | |
|---|---|---|
| 1 | at in that list of infringements before we | 12:50 |
| 2 | turned to this exhibit, right? | 12:51 |
| 3 |     A.   It seems that way. | 12:51 |
| 4 |     Q.   Underneath that URL, it says, | 12:51 |
| 5 | "Describe the work allegedly infringed, colon." | 12:51 |
| 6 | Do you see that? | 12:51 |
| 7 |     A.   Yes, I do see that. | 12:51 |
| 8 |     Q.   Can you please read for me what is | 12:51 |
| 9 | provided for the description of the allegedly | 12:51 |
| 10 | infringed work? | 12:51 |
| 11 |     (The Court Reporter requested | 12:52 |
| 12 |     clarification.) | 12:52 |
| 13 |     THE WITNESS:  Akunin, Boris; Pelagia | 12:52 |
| 14 | and the Black Monk. | 12:52 |
| 15 | BY MR. KRAMER: | 12:52 |
| 16 |     Q.   Pelagia and the Black Monk is a book | 12:52 |
| 17 | written by Boris Akunin; is that right? | 12:52 |
| 18 |     A.   I believe so. | 12:52 |
| 19 |     Q.   And Pelagia and the Red Rooster are | 12:52 |
| 20 | separate books, right? | 12:52 |
| 21 |     A.   Correct. | 12:53 |
| 22 |     Q.   So is this takedown notice incorrect | 12:53 |
| 23 | in saying that this video infringes the | 12:53 |
| 24 | Black Monk, or is the list of infringements we | 12:53 |
| 25 | looked at earlier incorrect in identifying it | 12:53 |

| | | |
|---|---|---|
| 1 | MR. KRAMER:  Yes. | 01:40 |
| 2 | A.   I do. | 01:40 |
| 3 | BY MR. KRAMER: | 01:40 |
| 4 | Q.   The first page says, AST Publishing | 01:40 |
| 5 | LTD, right? | 01:40 |
| 6 | A.   Yes. | 01:41 |
| 7 | Q.   And under AST's name, like in the | 01:41 |
| 8 | exhibit we just looked at, there's a list of | 01:41 |
| 9 | YouTube URLs, right? | 01:41 |
| 10 | A.   In the left column of this table, | 01:41 |
| 11 | yes. | 01:41 |
| 12 | Q.   Pages 1 through 3 of this exhibit | 01:41 |
| 13 | lists 64 YouTube videos, correct? | 01:41 |
| 14 | A.   Correct. | 01:41 |
| 15 | Q.   And these YouTube videos are alleged | 01:41 |
| 16 | infringements that AST has put at issue in this | 01:41 |
| 17 | case, right? | 01:41 |
| 18 | A.   I don't believe that all of the | 01:42 |
| 19 | links are infringements.  Because the procedure | 01:42 |
| 20 | for verification takes place gradually, and the | 01:42 |
| 21 | last stage of checking against the partner | 01:42 |
| 22 | channels are to -- placed just recently a few | 01:42 |
| 23 | days ago. | 01:42 |
| 24 | (The Court Reporter requested | 01:42 |
| 25 | clarification.) | 01:42 |

Page 151

| | | |
|---|---|---|
| 1 | THE WITNESS:  To place just recently | 01:42 |
| 2 | a few days ago. | 01:42 |
| 3 | BY MR. KRAMER: | 01:42 |
| 4 | Q.   AST served this list of | 01:43 |
| 5 | infringements on July 5th, 2022, right? | 01:43 |
| 6 | A.   That is the date that is listed | 01:43 |
| 7 | here.  When the attorneys submitted that, in | 01:43 |
| 8 | fact, I don't know. | 01:43 |
| 9 | Q.   When AST served this list of | 01:43 |
| 10 | infringements, it had not completed a check to | 01:43 |
| 11 | ensure that each video on this list was not in | 01:43 |
| 12 | fact authorized; is that right? | 01:43 |
| 13 | A.   I believe that's correct. | 01:44 |
| 14 | Q.   And yet this video is titled | 01:44 |
| 15 | "Supplemental List of Infringements," right? | 01:44 |
| 16 | A.   That's correct, because at the time | 01:45 |
| 17 | this list was being compiled, we did not yet | 01:45 |
| 18 | have the updated list of partner channels from | 01:45 |
| 19 | LitRes, and in its absence we deemed these | 01:45 |
| 20 | links to be infringements based on the data | 01:45 |
| 21 | available to us. | 01:45 |
| 22 | However, I don't remember that | 01:45 |
| 23 | decision to be final because we did not have | 01:45 |
| 24 | the verified list of the partners just yet.  We | 01:46 |
| 25 | did pass it on to the attorneys and said | 01:46 |

Page 152

|    |                                                          |       |
|----|----------------------------------------------------------|-------|
| 1  | that they were infringement based on the                 | 01:46 |
| 2  | available-then criteria.  So it's a little hard          | 01:46 |
| 3  | to comment on the finality of this document.             | 01:46 |
| 4  | Q.    AST -- it --                                       | 01:46 |
| 5  | A.    It is possible that this                           | 01:46 |
| 6  | communication occurred between us and the                | 01:46 |
| 7  | attorneys as to what procedures have to be               | 01:46 |
| 8  | completed in order for a final answer to -- in           | 01:46 |
| 9  | order to arrive at a final answer.                       | 01:46 |
| 10 | Q.    Okay.  So AST couldn't determine                   | 01:46 |
| 11 | whether each video on this list was infringing           | 01:47 |
| 12 | or not without confirming with LitRes; is that           | 01:47 |
| 13 | right?                                                   | 01:47 |
| 14 | A.    It's the other way around.  Without                | 01:47 |
| 15 | the list from LitRes, each one of these blanks           | 01:47 |
| 16 | is deemed to be a violation until proven                 | 01:48 |
| 17 | otherwise by a list from LitRes.                         | 01:48 |
| 18 | Q.    So in monitoring for infringement of               | 01:48 |
| 19 | AST's works, AZAPI assumes that a use of AST's           | 01:48 |
| 20 | work that is not a use by AST or LitRes                  | 01:48 |
| 21 | themselves is an infringement until proven               | 01:48 |
| 22 | authorized; is that right?                               | 01:48 |
| 23 | A.    Well, any use is a bit broad of a                  | 01:49 |
| 24 | statement.                                               | 01:49 |
| 25 | (The Court Reporter requested                            | 01:49 |

Veritext Legal Solutions
866 299-5127