# EXHIBIT 25

to the Declaration of Paul Harold

DAVID H. KRAMER, State Bar No. 168452
MAURA L. REES, State Bar No. 191698
LAUREN GALLO WHITE, State Bar No. 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
         mrees@wsgr.com
         lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>            Defendants.<br><br>_____<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>            Counterclaimants,<br><br>      v.<br><br>PIRATE MONITOR LTD,<br><br>            Counterclaim Defendant.<br>_____ | CASE NO.: 3:20-cv-04423-JD<br><br>**DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S RESPONSES AND OBJECTIONS TO PLAINTIFF AND COUNTERCLAIM DEFENDANT PIRATE MONITOR LTD'S FIRST SET OF INTERROGATORIES (NOS. 1-4)**<br><br>  Judge: Hon. James Donato |

*CONTAINS CONFIDENTIAL INFORMATION*

**INTERROGATORY NO. 2:**

Identify each User or Person You claim acted as an agent for Pirate Monitor for the allegations in the Counterclaims, the specific allegation that each User or Person participated in, and state the bases (including all facts and the application of law to fact) for Your contention that these Persons acted as agents for Pirate Monitor.

**RESPONSE TO INTERROGATORY NO. 2:**

Counterclaimants object to this Interrogatory on the grounds that it is vague and ambiguous in its use of the term "specific allegation that each User or Person participated in." Counterclaimants further object to this Interrogatory on the grounds that the information sought is necessarily in Plaintiff's possession or is otherwise accessible and available to Plaintiff and is not in Counterclaimants' possession. Counterclaimants further object that this Interrogatory seeks documents that are protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Subject to and without waiving the foregoing objections, Counterclaimants respond as follows: Based on Counterclaimants' ongoing investigation, which will be supplemented through discovery in this case, Counterclaimants have identified substantial evidence of fraudulent and other improper activity by or on behalf of Pirate Monitor. Counterclaimants have identified video clips from at least one of the copyrighted works that Pirate Monitor claims in this lawsuit to own (the Hungarian film *Csak szek és más semi*), as well as numerous clips from related works—including from the Hungarian film, *Zimmer Feri*, a prequel to *Zimmer Feri 2*, another of Pirate Monitor's alleged works in suit—that were uploaded in bulk to YouTube. The person or persons uploading these video clips used a variety of accounts and usernames, but many of them were variants of the name "Ransom Nova" (such as "RansomNova11," "RansomNova12"). Most of those videos were uploaded using Internet Protocol ("IP") addresses associated with Pakistan. That alone was unusual and suspicious: there is no obvious reason why short clips from relatively obscure Hungarian-language movies should be uploaded to YouTube from accounts and devices in Pakistan. Further, the upload behavior did not appear consistent with behavior by a user actually seeking to share copies of the works, given, among other things, the lack of any apparent order to the clips from the films, the use of nondescript, non-informative titles for the clips, and the

generally uniform and short length of the clips of approximately 30 seconds in duration. *See, e.g.*, https://www.youtube.com/channel/UCjD2F2LhPlWLUsGN2zWt70w.

In many cases, just a few days after the RansomNova-related accounts uploaded these videos to YouTube, and with the videos in many cases having no recorded views on YouTube, the videos were the subject of takedown requests from "Pirate Monitor, LLC"—using an account opened in the name of Gabor Csupo. Csupo claimed during the takedown request process to be an authorized representative of Mega Film Kft ("Mega Film"), a movie producer based in Hungary. Pirate Monitor, LLC is not a Plaintiff in this case. The Pirate Monitor entity that brought this case is Pirate Monitor Ltd, which has represented that it is 100% owned and controlled by Csupo. It is not clear what distinction, if any, there is between Pirate Monitor Ltd, Csupo, Pirate Monitor LLC, and Mega Film. Counterclaimants are currently seeking discovery in order to illuminate these relationships.

It is unclear how Pirate Monitor/Csupo/Mega Film knew that the videos that were the subject of their takedown requests were on YouTube, given that in many, if not most, cases those videos had not recorded any actual views on YouTube at the time they were removed. That by itself suggests that the person or persons sending the takedown requests may have been involved in the process of uploading them in the first place.

Confirming that suspicion is an even more direct connection between the takedown requests and the videos uploaded by the Ransom Nova accounts. The Pirate Monitor/Csupo/Mega Film account that was used to send the takedown requests was created using an IP address in Hungary. This strongly suggests that the person creating the account that was used to send the Pirate Monitor/Csupo/Mega Film takedown requests was based in Hungary. Not only that, the Hungarian IP address that PirateMonitor/Csupo/MegaFilm used to send the takedown requests was the very same Hungarian IP address used repeatedly by someone to log into one of the "Ransom Nova" YouTube accounts. In fact, "Ransom Nova," though ostensibly uploading videos from Pakistan, used the Hungarian IP address multiple times to log into a Ransom Nova account at roughly the same time that Pirate Monitor/Csupo/Mega Film was logged into their own account

and sending takedown requests from that same IP address. Further, though Ransom Nova was ostensibly operating out of Pakistan (based on IP addresses associated with the videos uploads), the recovery phone number that Ransom Nova provided for at least two of the RansomNova accounts was a phone number in Hungary. One individual who has surfaced in our investigation of the "Ransom Nova" YouTube accounts is Sarfraz Arshad Khan.  Counterclaimants are currently seeking discovery in order to confirm this information.

The facts that YouTube has learned based on its investigation to date leave little doubt that Pirate Monitor (and its agents, Csupo, Pirate Monitor LLC, Mega Film, Ransom Nova, and Sarfraz Arshad Khan) were responsible both for uploading clips of certain of the works-in-suit (and other related content) to YouTube in the first place and then for misusing the DMCA process to request the removal of those clips by YouTube.

Counterclaimants' response to this Interrogatory is based on information presently available to Counterclaimants, and Counterclaimants reserve the right to revise and supplement this response based on new information that comes to light.

**INTERROGATORY NO. 3:**

**For each representation You contend was fraudulent in the Counterclaims, state with particularity the circumstances You allege constitute fraud, including the identity of each User or Person You claim made a fraudulent representation, the date of the representation, the content of the representation, and how You relied on the representation, including all actions You took in reliance on the representation and every step You took to verify the accuracy of the representation.**

**RESPONSE TO INTERROGATORY NO. 3:**

Counterclaimants object to this Interrogatory to the extent the information sought is already in Plaintiff's possession or is otherwise accessible and available to Plaintiff. Counterclaimants further object that this Interrogatory is duplicative and cumulative of other discovery requests.

Subject to and without waiving the foregoing objections, Counterclaimants respond as follows, upon information and belief: From approximately August through November 2019, Pirate Monitor, through authorized agents, created more than a dozen accounts on YouTube using

1   disguised account registration information to hide Pirate Monitor's relationship to the account

2   creators and the accounts to Pirate Monitor. In creating those accounts, Pirate monitor promised to

3   provide accurate and complete information in the account registration process. That promise was

4   fraudulent, made without intention to perform it. Pirate Monitor had no intention of providing

5   accurate account information that connected these accounts to it.

6        Pirate Monitor's authorized agents used these improperly procured accounts to upload at

7   least 1,960 videos to YouTube in 2019, including multiple videos containing clips from works at

8   issue in this lawsuit. Further relevant information responsive to this Interrogatory is contained

9   above in response to Interrogatory No. 2.

10        Under the Terms of Service agreement governing use of the YouTube service, each time

11   Pirate Monitor (through its agents) uploaded these videos, it represented and warranted to

12   YouTube that it "own[ed] or ha[d] the necessary licenses, rights, consents, and permissions to

13   publish Content [it] submit[ed]" and that any "content [it] submitt[ed] to the Service [would] not

14   contain third party copyrighted material, or material that is subject to other third party proprietary

15   rights, unless [it had] permission from the rightful owner of the material or [it was] otherwise

16   legally entitled to post the material and to grant YouTube all of the license rights granted [under

17   the Terms of Service agreement]." As part of the same upload process, Pirate Monitor (through its

18   agents) also expressly granted YouTube a license to display, reproduce, and otherwise use the

19   videos in connection with the YouTube service. In reasonable reliance on the representations made

20   by the uploaders of these videos, YouTube allowed the accounts to be created and the videos to be

21   posted and agreed to host them on its service.

22        Nevertheless, as further discussed above in response to Interrogatory No. 2, Pirate Monitor

23   then submitted to YouTube numerous takedown notices under the DMCA, which demanded that

24   YouTube remove many of the same videos that Pirate Monitor had previously caused to be

25   uploaded through disguised accounts. In those notices, Pirate Monitor expressly represented to

26   YouTube that the videos at issue infringed its copyrights or the copyrights of a party whom Pirate

27   Monitor was authorized to represent. As required by the DMCA, Pirate Monitor specifically told

28

1   YouTube that it had "a good faith belief that use of the material in the manner complained of is

2   not authorized by the copyright owner, its agent, or the law." 17 U.S.C. § 512(c)(3)(A)(v).

3          In reliance on Pirate Monitor's representations, YouTube removed or disabled access to

4   the videos that were the subject of Pirate Monitor's takedown requests. At the time, this reliance

5   was reasonable, given that Pirate Monitor made representations in the takedown requests in the

6   form prescribed by the Section 512(c)(3)(A) of the DMCA, including an express representation

7   that the information contained in the notices was accurate and an under-penalty-of-perjury

8   representation that Pirate Monitor was "authorized to act on behalf of the owner of an exclusive

9   right that is allegedly infringed." 17 U.S.C. § 512(c)(3)(A)(vi). In accordance with the DMCA,

10  YouTube "respond[ed] expeditiously to remove, or disable access to, the material that is claimed

11  to be infringing or to be the subject of infringing activity." 17 U.S.C. § 512(c)(1)(C).

12         After observing a pattern of suspicious activity—including the uploading of numerous

13  uploads of short clips of generally uniform length of videos followed quickly by takedown notices

14  for those same videos which otherwise had not been viewed in many cases—Counterclaimants

15  conducted an investigation. This investigation, which is still ongoing, has required

16  Counterclaimants to expend considerable resources to, among other things, review over 1,800

17  DMCA takedown notices sent by Pirate Monitor, remove the videos identified in those notices,

18  and analyze and compare the user accounts associated with both the video uploads and the

19  subsequent takedown requests. As discussed above in response to Interrogatory No. 2, YouTube's

20  investigation revealed that many of the videos that were the subject of Pirate Monitor's DMCA

21  takedown notices had been uploaded by a series of closely related YouTube accounts linked to

22  Pirate Monitor's authorized agents. Specifically, the accounts used to upload the videos shared

23  unique, overlapping information (including a Hungarian IP address) with the accounts Pirate

24  Monitor used to send the DMCA takedown notices.

25         There are only two conclusions that can be drawn from this pattern. Either Pirate Monitor

26  made numerous false statements to YouTube when it represented (as part of the upload process)

27  that it was authorized to upload the videos to YouTube and that those videos did not infringe third-

28

party copyrights, or Pirate Monitor made numerous false representations to YouTube when it submitted takedown requests claiming that the same videos were infringing and using its copyrighted material in ways "not authorized by the copyright owner, its agent, or the law."

It was on these bases that Counterclaimants have accused Pirate Monitor of fraud. Counterclaimants continue to investigate this matter and reserve the right to revise and update this response based on new information.

In addition, it appears that Pirate Monitor has made significant misrepresentations to YouTube about its corporate identity. Pirate Monitor submitted takedown requests to YouTube under the name, "Pirate Monitor LLC," and using the contact name, Gabor Csupo. Yet it appears that Pirate Monitor LLC does not exist. The only corporate plaintiff in this lawsuit associated with Pirate Monitor has been identified as "Pirate Monitor Ltd.," which is supposedly a British Virgin Islands corporation that has represented to the Court that it is wholly owned by Gabor Csupo. Counterclaimants have not found any corporate registration information for "Pirate Monitor LLC," anywhere in the world, and Pirate Monitor LLC has not filed any claims in this case. Based on the information currently available, therefore, it seems that Pirate Monitor LLC is really Gabor Csupo, and that Gabor Csupo used Pirate Monitor LLC to send takedown notices, including in connection with videos that had been uploaded to YouTube by or at the direction of Pirate Monitor and/or Gabor Csupo.

**INTERROGATORY NO. 4:**

**Identify all Persons You claim spent time "processing Pirate Monitor's bogus takedowns and investigating its misconduct" and state each Person's hourly wage and the amount of time each spent "processing Pirate Monitor's bogus takedowns and investigating its misconduct."**

**RESPONSE TO INTERROGATORY NO. 4:**

Counterclaimants object to the extent that this Interrogatory calls for the production of personal, proprietary, confidential, or trade secret information that has little or no connection to the parties' claims and defenses in this action, and that no protective order has been yet agreed to or entered in this case.

Subject to and without waiving the foregoing objections, Counterclaimants further respond as follows: Counterclaimants' efforts in connection with "processing Pirate Monitor's bogus takedowns and investigating its misconduct" are ongoing. To date, that investigation has been conducted by several YouTube employees in its Copyright Operations group overseen by Kevin Zhu over several days, and Counterclaimants still do not know the full extent of Pirate Monitor's misconduct. Counterclaimants estimate that the present costs incurred in connection with that investigation are above $20,000 and continue to rise as Counterclaimants discover new instances of Pirate Monitor's misconduct. In response to this Interrogatory, Counterclaimants will perform a reasonable search and will produce responsive, non-privileged information responsive to this Interrogatory.

**VERIFICATION**

I have read the foregoing Interrogatory responses, and the answers contained therein are true to the best of my knowledge, information and belief.

*/s/ Chenyuan Zhu*
Chenyuan Zhu
Manager, Copyright Operations
Executed at Pacifica, CA on December 4, 2020

Dated: December 17, 2020

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ David H. Kramer*
David H. Kramer

*Attorneys for Defendants and Counterclaimants*
YOUTUBE, LLC and GOOGLE LLC