KOREIN TILLERY
*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO  63101-1625

www.KoreinTillery.com

Carol O'Keefe
COkeefe@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

November 18, 2022

Honorable James Donato
United States District Judge
San Francisco Courthouse, Courtroom 11, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *Schneider et al v. YouTube, LLC et al.*, Case No. 3:20-cv-4423-JD (N.D. Cal.)

Dear Judge Donato:

      We represent Plaintiffs and the putative class in the above-captioned action. We respectfully submit this letter motion pursuant to Fed. R. Civ. P. 37 due to Defendants' failure to comply with the Court's Order of August 30, 2022, ECF 165 (the "Order"). The Order instructed Defendants to produce "the requested CMI data from a random sampling of 30 days," "the requested takedown notice data from a random sampling of 90 days" and "the requested Content ID statistics." As described below, Defendants have not fully complied with the Order. We certify that the parties have met and conferred on the issues raised herein.

**Defendants have not produced the ordered CMI data.**

      Plaintiffs moved for a sampling of CLFN metadata associated with *all* videos uploaded on designated dates. Plaintiffs' letter motion stated, "Plaintiffs requested that Defendants screen *a 60-day sampling of uploaded video files* and provide the related CLFN metadata and the infringing URL to quantify the size of the CMI metadata stripping class." ECF 156 at 3 (emphasis added). Defendants understood that Plaintiffs' clearly articulated request was not limited to videos that were the subject of successful takedown notices.

- Plaintiffs request data "for all videos that have a populated 'clfn' field." O'Keefe letter to Rees of 6/10/22.

- Plaintiffs ask Defendants to identify "any video whose original metadata at the time of upload has a populated CLFN field" and offer to accept a random sampling amounting to 120 days. O'Keefe letter to Gallo White of 7/12/22.

- Plaintiffs offer to reduce their requested sampling to 60 days, noting, "We had previously proposed a sampling of 120 days, *where videos uploaded on those days would be screened for populated CLFN fields*." O'Keefe letter to Gallo White of 7/20/22 (emphasis added).

Ignoring the plain wording of Plaintiffs' letter motion and all prior correspondence, Defendants construed the phrase "infringing URL" to transform Plaintiffs' request into a demand that Defendants screen only those videos removed by YouTube in response to a successful takedown notice filed on the sample date. Even though Plaintiffs highlighted Defendants' error more than a week *prior* to the production, Defendants restricted their production to documents that met their artificially limited criteria.

Defendants have now manufactured a Catch-22 argument regarding the CMI claims. By limiting their production to videos that were successfully removed by takedown, Defendants by definition limited their production to videos that could be found in the system. In their reply in support of their summary judgment motion filed on September 16, 2022—well after the initial requests and meet and confer correspondence—Defendants argue that if a video can be found in the system because the infringing uploader chose to identify the artist or title with their infringing upload, Plaintiffs cannot establish the requisite scienter. ECF 173 at 11-12. Plaintiffs request that Defendants be ordered to produce all CLFN populated fields contained in any video uploaded on the relevant sample dates in compliance with the Court's Order, or be precluded from arguing that CMI metadata associated with the infringing video by the uploader impacts Defendants' scienter in any way.

**Defendants have not produced the ordered takedown notice data.**

Defendants similarly constrained their production of takedown notice data, omitting fields that the parties had agreed upon during the original meet and confer process in July, or altering them from the format contained in the sample data, including the claimant country of origin (relevant to determining membership in the foreign works class), and the create_time field in UNIX (permitting identification of discrete takedown notices as contemplated in the class definitions). Defendants also omitted a dropdown field that is *required* by their own takedown notice to identify the type of copyrighted work that was infringed, e.g., "Original song" (facilitating identification of the ISRC class).

While Defendants had agreed on October 25 to supplement their production with the country of origin field, and have recently agreed to produce the complaint origin, type of copyrighted work, and create_time in UNIX format, they have conditioned production of these fields on Plaintiffs' forgoing: (a) any right to the CLFN data described above and (b) any right to pursue remedies for spoliation of takedown notice data or CLFN metadata. Gallo White letter to O'Keefe of 11/11/22. Defendants did not supplement their production with any of the requested—or promised—fields prior to Plaintiffs' deadline to serve expert reports.

Defendants further compounded the difficulty for Plaintiffs of using the produced takedown notice data by refusing to eliminate from their production URLs that are known to have been the result of Content ID matching, either through identifying third party takedown claimants with Content ID access, or by screening out URLs known to have been identified in Content ID matching. As a result, the data produced includes URLs that are processed by third-party providers who have access to Content ID matching and URLs identified through the Copyright Match tool. With considerable effort, Plaintiffs can filter those entries by examining websites to identify which claimants might have access to Content ID matching.

Defendants' refusal to produce these requested fields prevented Plaintiffs' expert from executing the automated screening methodologies that with the full data will identify and quantify Class members, the number of infringing videos eligible for damages, and the incidence of CMI removal eligible for statutory damages. Accordingly, Plaintiffs request that Defendants be ordered to produce the following fields: copyright_complaint_id, create_time in UNIX format, complaint origin, country of origin, fields describing the copyrighted work including the type of work infringed, and fields indicating the claimant has direct or third party access to Content ID. In the alternative, Defendants should be precluded from challenging class certification on the grounds that individualized issues regarding ascertainability or damages predominate, or on the grounds of numerosity.

**Defendants have not produced the Content ID statistics in unreduced form.**

During the meet-and-confer process, Plaintiffs offered to forgo Content ID data if Defendants would agree to provide certain statistics that were, in Plaintiffs' words, "designed to show *the number and* percentage *of videos* on the platform that contain copyright-protected works uploaded without the owner's consent[.]" O'Keefe letter 7/17/22 at 2 (emphasis added). Instead of producing the actual numbers of: (1) publicly displayed videos on the platform that are monetized by Content ID over the total number of publicly displayed videos for each year; and (2) videos on the platform that are monetized, blocked or tracked by Content ID over the total number of videos on the platform, Defendant produced simplified percentage figures. Since Defendants had to calculate the actual numbers requested before reducing them to simplified percentages, there is no burden on Defendants to produce the actual numbers, which will aid Plaintiffs' experts in their computation of indirect network effects attributable to infringing videos on the platform.

Accordingly, Plaintiffs respectfully request that the Court direct Defendants to produce the requested statistics in numerator and denominator form, or be precluded from challenging any available statistics or estimates proffered or relied upon by Plaintiffs or Plaintiffs' experts regarding the number of videos publicly or privately on the YouTube platform, or the numbers of videos matched or identified by Content ID.

**Defendants have constrained their production without explanation.**

Finally, Defendants, among the most adept exploiters of data in the world, unilaterally limited their takedown notice data production and their Content ID statistics to data accessible or retained in the ordinary course of business. White letter 10/7/22 at 1-2 and 5. However, neither Defendants' request nor the Court's Order limited Defendants' production obligations in that manner. While Defendants do not appear to contend that their databases, backups, and servers lack the data that was sought and ordered to be produced, they have refused to describe the manner or extent to which their restriction to data accessible or retained in the ordinary course has constrained their production. Accordingly, Plaintiffs request that Defendants be ordered to produce all responsive takedown notice data in their possession, wherever stored, and provide Content ID statistics based on all available data, or be precluded from challenging any estimates on class membership or damages derived by Plaintiffs' experts on the basis of those statistics.

Sincerely,

Carol O'Keefe