George A. Zelcs (pro hac vice)
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. (pro hac vice)
  rewing@koreintillery.com
Ryan Z. Cortazar (pro hac vice)
  rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (pro hac vice)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe (pro hac vice)
  cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (pro hac vice)
  pkorologos@bsfllp.com
Joanna Wright (pro hac vice)
  jwright@bsfllp.com
Demetri Blaisdell (pro hac vice)
  dblaisdell@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD. LLC, individually and on behalf of all others similarly situated;<br><br>    Plaintiffs,<br><br>    vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC;<br><br>    Defendants.<br>_____<br>YOUTUBE, LLC and GOOGLE LLC;<br><br>    Counter-Plaintiffs,<br><br>    vs.<br><br>PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC,<br><br>    Counter-Defendants. | CASE NO.  3:20-cv-4423-JD<br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br><br>Judge: Hon. James Donato<br>Date:     December 15, 2022<br>Time:    10:00 a.m.<br>Dept.:    11 |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.   Common Issues Predominate for the Infringement Classes ................................... 2

   A.   Ownership and registration involve common issues and common evidence. ............... 2

   B.   Infringement involves common issues and can be proven by common evidence. ......... 4

     1.   Direct infringement can be proven by common evidence ................................. 4

     2.   Defendants' secondary liability can also be proven by common evidence ............... 5

   C.   Defendants' affirmative defenses involve common issues and evidence. ..................... 6

     1.   The DMCA defenses involve common issues and common evidence. .................... 6

     2.   The statute of limitations defenses involve common issues and evidence. ............... 7

     3.   Licensing defenses involve common issues and common evidence. ....................... 8

     4.   The Parties agree that fair use issues are de minimis. .................................... 9

II.   Common Issues Predominate for the CMI Classes. .......................................... 10

   A.   Common Issues Predominate Over Individualized Issues for the ISRC Class ............ 10

   B.   Common Issues Predominate Over Individualized Issues for the CLFN Class. .......... 11

III.   The Class Members' Remedies Can Be Established with Common Methods ................ 12

IV.   Plaintiffs Have Established Numerosity and Superiority. .................................. 14

CONCLUSION ................................................................................................................. 15

**TABLE OF AUTHORITIES**

1

**Cases**

2

*Apple Inc. v. Psystar Corp.*,
  673 F. Supp. 2d 926 (N.D. Cal. 2009) ........................................... 13

3

*Auscape Int'l v. Nat'l Geographic Soc'y*,
  2003 WL 23531750 (S.D.N.Y. July 25, 2003) ............................... 8

4

*Bateman v. Am. Multi-Cinema, Inc.*,
  623 F.3d 708 (9th Cir. 2010) ...................................................... 14

5

6

*Bebault v. DMG Mori USA, Inc.*,
  2020 WL 2065646 (N.D. Cal. Apr. 29, 2020) ............................... 1

7

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  199 F. Supp. 3d 958 (E.D. Va. 2016) ........................................... 5

8

*Brice v. Haynes Invs., LLC.*,
  2021 WL 1916466 (N.D. Cal. Apr. 23, 2021) ............................... 5

9

10

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ............................................ 9, 12, 15

11

*Bumpus v. Realogy Brokerage Grp. LLC*,
  2022 WL 867256 (N.D. Cal. Mar. 23, 2022) ................................ 1

12

*Cameron v. E. M. Adams & Co.*,
  547 F.2d 473 (9th Cir. 1976) ...................................................... 8

13

14

*Chinitz v. Intero Real Est. Servs.*,
  2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) ................................ 4

15

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ...................................................... 4

16

17

*Cream Records., Inc. v. Joseph Schlitz Brewing Co.*,
  864 F.2d 668 (9th Cir. 1989) ...................................................... 13

18

*Estate of Berlin v. Stash Records, Inc.*,
  1996 WL 374176 (S.D.N.Y. July 2, 1996) ................................... 8

19

20

*Ewert v. eBay, Inc.*,
  2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ............................... 8

21

*F. W. Woolworth Co. v. Contemp. Arts*,
  344 U.S. 228 (1952) ................................................................. 13

22

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2015 WL 4776932 (C.D. Cal. May 27, 2015).......................... 2, 4

23

24

*Football Ass'n Premier League Ltd. v. YouTube. Inc.*,
  297 F.R.D. 64 (S.D.N.Y. 2013) .................................................. 4

25

*Forcellati v. Hyland's, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)............................... 15

26

*Harrington v. Pinterest, Inc.*,
  2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)....................... 10, 11

27

28

*Idema v. Dreamworks, Inc.*,
90 F. App'x 496 (9th Cir. 2003) ............................................................................ 3

*In re Capacitors Antitrust Litig. (No. III)*,
2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ....................................................... 2

*In re Facebook Biometric Info. Priv. Litig.*,
326 F.R.D. 535 (N.D. Cal. 2018) ......................................................................... 14

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
2022 WL 2343268 (N.D. Cal. June 28, 2022) ..................................................... 13

*In re Napster, Inc. Copyright Litig.*,
2005 WL 1287611 (N.D. Cal. June 1, 2005) .................................................. 2, 14

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
300 F.R.D. 347 (C.D. Cal. 2013) ......................................................................... 15

*Kelly v. City & Cnty. of San Francisco*,
2005 WL 3113065 (N.D. Cal. Nov. 21, 2005) ....................................................... 6

*Kihn v. Bill Graham Archives LLC*,
2022 WL 18935 (9th Cir. Jan. 3, 2022) ................................................................. 9

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) ..................................................... 10

*Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*,
149 F.3d 987 (9th Cir. 1998) ............................................................................... 13

*McArdle v. AT&T Mobility LLC*,
2018 WL 6803743 (N.D. Cal. Aug. 13, 2018) ....................................................... 8

*Norton v. LVNV Funding, LLC*,
2020 WL 5910077 (N.D. Cal. Oct. 6, 2020) .......................................................... 2

*Ochoa v. McDonald's Corp.*,
2016 WL 3648550 (N.D. Cal. July 7, 2016) ........................................................ 14

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ............................................................................. 14

*Perfect 10, Inc. v. CCBill LLC*,
488 F.3d 1102 (9th Cir. 2007) ............................................................................... 4

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) ................................................................................. 6

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) .............................................................................................. 8

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) ............................................................................... 13

*Resnick v. Copyright Clearance Ctr., Inc.*,
2003 WL 22176619 (D. Mass. Sept. 22, 2003) ..................................................... 8

*Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*,
2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) .................................................... 10

*SA Music LLC v. Apple, Inc.*,
592 F. Supp. 3d 869 (N.D. Cal. 2022) ........................................................................ 3

*Schramm v. JPMorgan Chase Bank, N.A.*,
2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ......................................................... 7, 8

*Shropshire v. Canning*,
809 F. Supp. 2d 1139 (N.D. Cal. 2011) ..................................................................... 13

*Stevens v. CoreLogic, Inc.*
899 F.3d 666 (9th Cir. 2018) ..................................................................................... 11

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) ....................................................................................... 8

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ..................................................................................................... 1

*Utopia Entm't, Inc. v. Claiborne Par.*,
2006 WL 8435006 (W.D. La. Jan. 10, 2006) .............................................................. 8

*Ventura Content, Ltd. v. Motherless, Inc.*,
885 F.3d 597 (9th Cir. 2018) ....................................................................................... 7

*Viacom Int'l Inc. v. YouTube, Inc.*,
940 F. Supp. 2d 110 (S.D.N.Y. 2013) ......................................................................... 7

*Vulcan Golf, LLC v. Google Inc.*,
254 F.R.D. 521 (N.D. Ill. 2008) .................................................................................. 2

*WB Music Corp. v. Rykodisc*,
1995 WL 631690 (E.D. Pa. Oct. 26, 1995) ................................................................ 8

*Williams v. Apple, Inc.*,
338 F.R.D. 629 (N.D. Cal. 2021) ................................................................................ 6

*Wu v. Pearson Educ. Inc.*,
2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) ............................................................ 8

*Yellowcake, Inc. v. Morena Music, Inc.*,
522 F. Supp. 3d 747 (E.D. Cal. 2021) ........................................................................ 3

**Statutes**

17 U.S.C. § 205 ....................................................................................................................... 3

17 U.S.C. § 504 ..................................................................................................................... 13

17 U.S.C. § 505 ..................................................................................................................... 15

17 U.S.C. § 512 .................................................................................................................. 5, 7

17 U.S.C. §1202 ................................................................................................................... 11

# INTRODUCTION

Rather than engage the merits of Plaintiffs' Motion for Class Certification, Defendants focus almost exclusively on issues resolved by the very class definitions they ignore. Defendants' Opposition ("Opp." or "Opposition") engages in strawman arguments of the merit of each individual infringement identified on a Court-ordered list of infringements. ECF 98. Plaintiffs complied with that order by identifying all infringements on YouTube they were aware of—*not* just the infringements within the class definitions. The latter is much smaller than the former. *See* Reply Declaration of Demetri Blaisdell in Support of Plaintiffs' Motion for Class Certification ("Blaisdell Reply Decl.") (identifying infringements discussed in the Opposition that are not part of the class claims).[1] Indeed, the majority of issues and infringements discussed in the Opposition are disposed of by the class definitions themselves. As but one example, the Opposition discusses "flaws" in "hundreds" of infringements identified by Maria Schneider. (Opp. 2.) Yet, only *one* of those infringements fits within the definition of the copyright infringement class, thus rendering purported issues with other infringements inapposite. Blaisdell Reply Decl. ¶¶ 6-9. Ironically, the Opposition proves the virtue of the class definitions.[2]

"Rule 23(b)(3) permits certification when 'one or more of the central issues in the action are common to the class and can be said to predominate'" even if "'other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Bumpus v. Realogy Brokerage Grp. LLC*, 2022 WL 867256, at *6 (N.D. Cal. Mar. 23, 2022) (Donato, J.) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)); *Bebault v. DMG Mori USA, Inc.*, 2020 WL 2065646, at *5 (N.D. Cal. Apr. 29, 2020) (Donato, J.). Copyright claims are not some exotic species that necessarily require mini-trials as

---

[1] References to "Ex." herein are to the Exhibits attached to the First Declaration of Demetri Blaisdell (Exs. 1-57) dated October 17, 2022, and to the Blaisdell Reply Decl. (Exs. 58-91).

[2] Defendants' Opposition also telegraphs their strategic decision to obfuscate rather than rebut. As a result, and for the reasons previously discussed with the Court, Plaintiffs respectfully request that this Court provide a "tentative" ruling on the instant motion, as contemplated by the Court and parties during the July 7 Case Management Conference to assist the parties in attempting to reach a negotiated resolution. Ex. 81, 52:7–53:24.

1    Defendants argue.  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *8, *11

2    (C.D. Cal. May 27, 2015); *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *3 (N.D.

3    Cal. June 1, 2005).  And that is certainly not the case here, where Defendants themselves have

4    developed multiple methods for managing and adjudicating infringement claims across *billions* of

5    videos.

6          The Opposition's scattershot approach (including its Introduction that recasts elements of

7    Plaintiffs' claims as questions) does not appear intended to aid the Court.  To the extent

8    Defendants' arguments actually apply to class questions, they can be resolved more efficiently

9    through a class than individually.  "There are a variety of procedural tools courts can use to

10   manage the administrative burdens of class litigation, including the use of claim administrators,

11   various auditing processes, sampling for fraud detection, follow-up notices to explain the claims

12   process, and other techniques tailored by the parties and the court."  *Norton v. LVNV Funding,*

13   *LLC*, 2020 WL 5910077 at *11 (N.D. Cal. Oct. 6, 2020) (quotations omitted); *see also In re*

14   *Capacitors Antitrust Litig.*, 2018 WL 5980139, at *9 (N.D. Cal. Nov. 14, 2018) (Donato, J.).  As

15   explained in the Blaisdell Reply Decl., the majority of Defendants' arguments have nothing to do

16   with the class claims and, as explained below, the rest can be resolved through class-wide proof.

17                                **ARGUMENT**

18   I.    **Common Issues Predominate for the Infringement Classes.**

19          **A.  Ownership and registration involve common issues and common evidence.**

20          "Although ownership necessarily requires some individualized showing as to each class

21   member, this observation alone does not predominate over the nearly identical legal issues and

22   pattern of exploitation" where "the ownership verification procedure will be largely

23   administrative."[3]  *Flo & Eddie, Inc.*, 2015 WL 4776932, at *12.  For U.S. works, ownership is

24   determined by cross-referencing the sworn statement of ownership in a takedown notice ("TDN")

25   _____

26   [3] *Flo & Eddie* rejects Defendants' reliance on *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521
     (N.D. Ill. 2008): "It is telling of the strained nature of [defendant's] attack that it resorts entirely to

27   out-of-circuit cases to support its argument that ownership issues are inherently individualized."
     (*Flo & Eddie*, 2015 WL 4776932, at *12 (internal quotation marks omitted)).

28

                                          2

with the U.S. Copyright Office ("USCO") database.  Ex. 13[4] ¶¶ 48-58; Ex. 63 ¶ 12.  Defendants

falsely state that a TDN "need not identify the work's owner" (Opp. 8).  But Defendants' own

TDN forms expressly require the "Name of the copyright owner (required)," the submitter's

"Relationship to the copyrighted content (required),"[5] and further require the submitter of the TDN

to attest, "under penalty of perjury," that "I am the owner, or an agent authorized to act on behalf

of the owner, of an exclusive right that is allegedly infringed."  Ex. 52.  Defendants' own cases

hold that it is "reasonable" to "rely on individual assertions of rights" in TDNs.  *SA Music LLC v.*

*Apple, Inc.*, 592 F. Supp. 3d 869, 883 (N.D. Cal. 2022).  Moreover, because the class members

must submit a successful TDN in the class period cross-referenced against the USCO database for

a match, purported transfer issues are, at most, minimal and easily resolvable.[6]  Otherwise, courts

would not regularly reject challenges to USCO records (Opp. 8 n.3, 9).  *Idema v. Dreamworks,*

*Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003) (copyright registrations are "the sort as to which

judicial notice is appropriate"); *Yellowcake, Inc. v. Morena Music, Inc.*, 522 F. Supp. 3d 747, 758,

n.1 (E.D. Cal. 2021) (same); *see also* 17 U.S.C. §205(a)-(b) (requiring USCO to record properly

filed transfers).  Foreign works will proceed in the same way except using third-party databases to

cross-reference ownership and place of first publication.[7]  Ex. 13 ¶¶ 48-58; Ex. 63 ¶¶ 12, 86-88;

---

[4] Contrary to Defendants' claim, the Court did not strike the reports by Drs. Singer and Cowan. (Opp. 8 n.4.)  Defendants' failure to produce court-ordered data necessitated supplementing the timely filed expert reports.  ECF Nos. 156, 159, 161, 179; Ex. 84, 43:15-47:16.

[5] The information necessary to complete a USCO registration eliminates Defendants' concern about work-for-hire agreements (Opp. 8) because the USCO registration explicitly addresses works-for-hire by requiring the necessary information to determine ownership. Ex. 85.

[6] Defendants' argument that 65 AST TDNs do not mention AST (Opp. 9) is misleading. AST's designated agent, AZAPI, submitted the TDNs on its behalf through the Content Verification Program ("CVP") and properly identified AST in its application for CVP.  Blaisdell Reply Decl. ¶ 30 & Ex. 91.  Similar issues can be resolved at the claims administration process which can allow class members to prove ownership where the identities on the TDN and USCO database do not match exactly but there is a clear and sufficient relationship between the TDN submitter and copyright owner.

[7] Defendants claim that AST's copyrighted audiobook works are not located in certain foreign databases (Opp. at 9 n.5), but Plaintiffs' expert identified those databases as containing motion picture and musical works.  AST's works are included in the ISBN database, which is for literary works, including audiobooks.  Blaisdell Reply Decl. ¶ 23.

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

ECF 199.  Foreign ownership laws are accounted for through the TDN in which an owner must attest, under penalty of perjury, to ownership in her jurisdiction.  Ex. 52.  Self-certification for class members provides a second, reliable method for determining ownership.[8]  *See Flo & Eddie, Inc.*, 2015 WL 4776932, at *7–8 ("class members" may "self-identify under reliable circumstances") (collecting cases).

### B.  Infringement involves common issues and can be proven by common evidence.

#### 1.  Direct infringement can be proven by common evidence.

Defendants cannot simultaneously rely on "valid" TDNs in normal course and reject them as evidence of infringement.  Ex. 18 ██████████████████████████████████████████████████████████████████████████████████████████████████; Ex. 68 (prohibiting monetization where a copyright holder "issued a complete and valid copyright takedown request" because "it uses their copyright-protected work without authorization"); Ex. 44 ("The Copyright Match Tool is available to any YouTube user who's submitted a valid copyright takedown request.").  YouTube vets TDNs to determine which are "valid,"[9] weeding out 13% of TDNs.[10] Ex. 66 at 8. ████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[8] The class notification process will be straightforward as TDNs must contain the email, telephone number, and street address of the claimant.  Ex. 52; *see Chinitz v. Intero Real Est. Servs.,* 2020 WL 7042871, at *1 (N.D. Cal. Dec. 1, 2020) (approving a direct class notice plan making use of Defendant's data, email addresses, and physical addresses).

[9] Defendants' purported authority did not involve this level of scrutiny.  *Football Ass'n Premier League Ltd. v. YouTube. Inc.*, did not consider any evidence showing that YouTube both evaluates and vets the TDNs as well as its own reliance on TDNs.  297 F.R.D. 64, 68 n.2 (S.D.N.Y. 2013).  The remaining cases address the inapposite fact that a defendant may invoke DMCA immunity as well as other immunity defenses.  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007); *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004).

[10] Defendants hold out Pirate Monitor as a poster child for Defendants' assertions. (Opp. 5-6.)  Yet Defendants terminated Pirate Monitor's account prior to the filing of this lawsuit based on their own internal vetting procedures taking it outside the class definition. █████████████████████████████████████████████████ ██████████████████

1  ██████████████████████████████████[11] Ex. 79, 10:1-7, 15:20-17:15, 44:12-45:6.

2  In any event, Defendants can vet the infringement claims themselves, through Content ID,

3  a tool already at their disposal which they altogether ignore when claiming the need for

4  individualized discovery.[12]  Ex. 79.  Defendants' claim that "Content ID does not identify

5  infringements" (Opp. 12 n.6) ignores their own documents: ████████████████

6  ███████  Ex. 39 at -783; Ex. 66 at 4.  Moreover, ███████████████████████

7  ████████████████—less than 1% of the over 750 million Content ID claims were

8  disputed.  *See* Ex. 66.  Finally, Defendants' argument that Plaintiffs cannot prove that

9  infringement occurred in the U.S. on a class-wide basis (Opp. 10-11) is also disingenuous. ████

10  ████████████████████████████████████████████████████████

11  ████████████████  Ex. 77, 139:19-141:2; *see Brice v. Haynes Invs., LLC.*, 2021 WL 1916466, at *4

12  (N.D. Cal. Apr. 23, 2021) (class ascertainable where data readily available and "individual

13  entitlement to recovery [will be] proved up post-trial" in "claims administration process.").

14  **2. Defendants' secondary liability can also be proven by common evidence.**

15  As a matter of law, TDNs are evidence of knowledge for secondary liability.  *BMG Rts.*

16  *Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 979 (E.D. Va. 2016) ("[The]

17  knowledge element for contributory infringement is met" where "a party has been notified of

18  specific infringing uses of its technology and fails to act to prevent such uses, or willfully blinds

---

[11] Nor does the legislative history support Defendants' position as they claim (Opp. 13).  Congress considered a provision stating that removal of works "shall not adversely bear upon the consideration by a court of a defense to infringement" (H.R. REP. 105-551, at 8) but it was not enacted into law.  Instead, the DMCA forecloses a "claim based on the service provider's good faith disabling of access to, or removal of, material or activity claimed to be infringing." 17 U.S.C. § 512(g)(1). The fact that Congress considered but did not adopt a provision stating that removal "shall not adversely bear upon" a defense to infringement shows that the DMCA does not preclude using a recipient's review of and actions taken in response to TDNs as evidence of infringement.

[12] YouTube argues that when running Content ID on AST's reference file it returned false positives. (Opp. 11-12 & n.6).  This is disingenuous as Defendants created a litigation-specific process removing the limitations and guardrails normally employed, causing their results to be overinclusive.  For example, when applied to AST, Defendants omitted a standard feature that excludes elements of the reference file unrelated to the copyright.  Blaisdell Reply Decl. ¶ 25.

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1   itself to such infringing uses.") (quotation omitted), *aff'd in part, rev'd in part,* 881 F.3d 293 (4th

2   Cir. 2018).  *BMG* rejected Defendants' argument that TDNs "were mere allegations" that "could

3   not have imparted knowledge of infringement."  *Id.*  Material contribution will be established,

4   including by showing that Content ID and Copyright Match could prevent infringement.

5   Defendants do not say otherwise.  They simply say that is not the current application or purpose of

6   Content ID and Copyright Match (Opp. 11-12 & n.6, 15).  But that is not the question.  The

7   question is *could* they be used to prevent infringement—and that is a class-wide question.[13]

8   Finally, Defendants do not dispute (Opp. 12) that vicarious infringement can be established

9   through data showing the number of times infringing videos were displayed via Autoplay or the

10  recommendation links from Watch Next and the amount of revenue generated by those specific

11  views of infringing videos.

### C.  Defendants' affirmative defenses involve common issues and evidence.

13          "As both the United States Supreme Court and Ninth Circuit have stressed, a court may

14  certify a Rule 23(b)(3) class even though [ ] important matters will have to be tried separately,

15  such as some *affirmative defenses* peculiar to some individual class members."  *Williams v. Apple,*

16  *Inc.*, 338 F.R.D. 629, 638, 648 (N.D. Cal. 2021) (internal quotation omitted) (emphasis in

17  *Williams*).  The proper inquiry is whether "the common facts and issues that unite the class are

18  overshadowed by the use of unique affirmative defenses."  *Kelly v. City & Cnty. of San Francisco*,

19  2005 WL 3113065, at *3 (N.D. Cal. Nov. 21, 2005).

### 1.  The DMCA defenses involve common issues and common evidence.

21          Defendants concede that eligibility for the DMCA safe harbor presents at least two

22  common issues that will be resolved on a class-wide basis, namely whether YouTube reasonably

23  implements a repeat infringer policy and whether it accommodates standard technical measures

24  ("STMs") (Opp. 17-18).  If Plaintiffs prevail on either of these common issues, the DMCA

---

26  [13] Because YouTube developed and employs algorithms that routinely scan every new video
    upload for infringements, *Perfect 10, Inc. v. Giganews, Inc.*, is inapposite as, there, the court found
27  that locating future infringement would require manual searching of upwards of 354,000 hours per
    month.  847 F.3d 657, 671 (9th Cir. 2017).

28

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

defense is eliminated in total.[14]  Understanding that these two issues, alone, merit certification, Defendants misleadingly claim that the USCO has stated that no STMs exist (Opp. 18 n.12).  The USCO has done no such thing.  The USCO has stated only that "participants" in round-table discussions believe no STMs have emerged.  Standard Technical Measures and Section 512, 87 Fed. Reg. 25,050 (April 27, 2022).  Other participants, including the Recording Industry Association of America, asserted that fingerprinting technologies "qualify as an STM."  Ex. 74 at 4; *see also* Ex. 75 at 1.  Defendants block (and therefore do not accommodate) fingerprinting technology used by third parties to "scrape" YouTube to identify infringements.  Ex. 76, Nos. 59-61.  Whether that blocking eliminates the DMCA safe harbor (it does) is a class-wide issue.

Finally, were Defendants eligible for the DMCA (they are not), they still must prove its application, including that they do "not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity."  17 U.S.C. § 512(c)(1)(B).  Defendants do not dispute the class-wide method in Plaintiffs' Brief for proving this (Mot. 12–15).  *In sum, Defendants concede that each and every issue concerning the DMCA safe harbor defense can be resolved class-wide.  That concession, alone, merits certification.*

### 2.  The statute of limitations defenses involve common issues and evidence.

"Courts have been nearly unanimous" that "possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action."  *Schramm v. JPMorgan Chase Bank, N.A.*, 2011 WL 5034663, at *10 (C.D. Cal. Oct. 19, 2011); *Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (same).  Any constructive notice inquiry will necessarily be class-wide because it

---

[14] Defendants' reliance on the *Viacom* and *Motherless* cases is stale.  When *Viacom* was decided, it was assumed that copyright strikes would be applied for infringements caught by Content ID, which was then in its infancy.  940 F. Supp. 2d at 128.  Yet, YouTube decided *not* to apply copyright strikes to infringements caught by Content ID rendering *Viacom* inapposite.  Ex. 66 at 4. *Motherless* is separately inapposite as only "nine alleged repeat infringers" were identified as not having been terminated compared against  between "1,320 and 1,980" terminated infringers. *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 618 (9th Cir. 2018).

7

1  "will be based on a reasonable person test."  *Schramm,* 2011 WL 5034663, at *10.  The earliest

2  point in time for constructive notice is the date the infringing video was uploaded—information

3  already in Defendants' possession.  Ex. 46.  On actual notice, Defendants' claim that the

4  limitations clock starts "when a party knew or should have known of an infringing video," (Opp.

5  16 n.11), misstates the law.  "Each time an infringing work is reproduced or distributed, the

6  infringer commits a new wrong."  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671

7  (2014) (each film screening restarted limitation period).  ██████████████████████████

8  ████████████████████████████████████  Ex. 77, 139:21-140:25.

9          **3.   Licensing defenses involve common issues and common evidence.**

10         YouTube asserts three potential license defenses, all of which will be resolved with class-

11  wide proof.  *First,* whether the TOS license can be applied requires resolving the class-wide legal

12  question of whether the TOS insulate third-party infringements.  *McArdle v. AT&T Mobility LLC*,

13  2018 WL 6803743, at *6 (N.D. Cal. Aug. 13, 2018) (commonality where class subject to same

14  terms of service).[15]  *Second,* ████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████  Ex. 50, § 3(d); *Ewert v. eBay, Inc.*,

17  2010 WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (certifying class, holding that "actual

18  knowledge of individual class members" not relevant when "construing the form contract"); *True*

19  *Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931-32 (9th Cir. 2018)

20  (predominance met in part where proof of consent ascertainable from form licensing agreements

21  with "little or no variation").  YouTube now complains that it failed to collect that necessary

23  [15] All six out-of-circuit cases Defendants cite (Opp. 7 n.2) are distinguishable: two don't even
    discuss predominance, *see Resnick v. Copyright Clearance Ctr., Inc.*, 2003 WL 22176619 (D.

24  Mass. Sept. 22, 2003); *Estate of Berlin v. Stash Records, Inc.*, 1996 WL 374176 (S.D.N.Y. July 2,
    1996); two involve individually negotiated contracts, *see Wu v. Pearson Educ. Inc.*, 2012 WL

25  6681701 (S.D.N.Y. Dec. 21, 2012); *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 23531750
    (S.D.N.Y. July 25, 2003), *aff'd*, 282 F. App'x 890 (2d Cir. 2008); and two are fact-specific, *see*

26  *Utopia Entm't, Inc. v. Claiborne Par.*, 2006 WL 8435006 (W.D. La. Jan. 10, 2006), *report and*
    *recommendation adopted*, 2006 WL 548476 (W.D. La. Mar. 6, 2006) (colorable evidence of fair

27  use or consent); *WB Music Corp. v. Rykodisc*, 1995 WL 631690 (E.D. Pa. Oct. 26, 1995).

28

8

Plaintiffs' Reply in Support of Motion for Class Certification          3:20-cv-4423-JD

1  metadata from some alleged licensors.  (Opp. 15.)  The fact that Defendants do not have the data

2  (*i.e.*, ISRCs) to support their affirmative defense of license, does not render that an individualized

3  issue.[16]  In any event, such issues are routinely resolved during the claims administration process.

4  *See Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1131 (9th Cir. 2017) ("At the claims

5  administration stage, parties have long relied on 'claim administrators, various auditing processes,

6  sampling for fraud detection, follow-up notices to explain the claims process, and other techniques

7  tailored by the parties and the court' to validate claims.").  *Third,* the possibility that the uploader

8  had a separate license from the copyright owner is disposed of through two class-wide issues: (i)

9  whether the TDN, including the statement that the video was not authorized, and absence of a

10  subsequent counternotification, eliminates licensing issues and (ii) whether the TOS authorize

11  third parties (other than the uploader) to infringe works.

### 4. The Parties agree that fair use issues are de minimis.

13  Defendants do not dispute that the only statistic they have provided in discovery for fair

14  use shows that less than 0.2% of Content ID claims are disputed on the basis of fair use.  Instead,

15  they cherry-pick the math noting that █████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████  Defendants claim, without evidence, that this figure "grossly

18  understates how often fair use actually exists on YouTube." (Opp. 16–17).  This argument is

19  foreclosed by the Court's order that if Defendants fail to produce adequate data to test assertions in

20  support of a defense, that defense will be stricken.  Ex. 83 at 19:6–10 ("[I]f you say, somewhere in

21  opposition to class cert or something like that, 'You can't certify because we get millions of

22  claims of fair use' and you did not provide your colleagues with the means of testing that, it will

23  be stricken as a defense.").[17]

---

[16] *Kihn v. Bill Graham Archives LLC* declined to certify the class in part because the proposed class was gerrymandered to include the named plaintiff's idiosyncratic claims which is not the case here. 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022).

[17] Defendants' argument that the proposed class would "curtail the defendant's right to" litigate

## II. <u>Common Issues Predominate for the CMI Classes.</u>

████████████████████████████████████████████████████████████████████

██████████████ [18]   *See* Ex. 17.  The remaining issues can also be resolved class-wide.

### A.  Common Issues Predominate Over Individualized Issues for the ISRC Class.

Defendants' complaint that Ms. Schneider is an inadequate representative for the ISRC

class (Opp. 21) ignores the fact that Ms. Schneider has identified ISRCs for her works.[19]  Ex. 22;

ECF 190-2, Ex. A ¶¶ 51, 54, 55 (describing provision of ISRC codes as part of process of

recording and producing album); Ex. 78, 210:14-211:3 (discussing importance of ISRC "for

creators to get paid").  Defendants' argument that the videos uploaded to YouTube lacked ISRCs

(Opp. 22) is a nonstarter.  Defendants' agreements and their own expert establish that ISRCs are

common industry standard identifiers for sound recordings.  Ex. 81, 223:11-15 ("I want to make

sure it's well understood, the use of ISRCs for content available for consumption on digital

platforms as pay services is very high, it is in the range of 98 percent.");  ████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

defenses is a strawman  (Opp. 14)  The question before the Court is whether those defenses raise
individualized issues that predominate, which they do not.

[18] Defendants cite *Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) for the proposition that "an allegation of wholesale metadata removal, without more, does not suffice to allege [defendant] intentionally removed CMI." (Opp. 20).  But in *Harrington*, there was no allegation that the metadata in question *actually contained* CMI.  It is uncontested here that ISRCs are categorically CMI and that the CLFN fields for videos containing Ms. Schneider's works contained CMI. Ex. 14 ¶¶ 32, 72, 90 (ISRC); *id.* ¶¶ 35, 146 (CLFN fields); Ex. 76, Nos. 67-70; *id.* at 34 ████████████████████████████████████████████████████████
████████████

[19] Defendants' claim that derivative works cannot support a CMI claim (Opp. 21 n.14) is not supported.  In both cases cited, the court found that the CMI claims failed because no CMI had been removed.  *Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751 (W.D. Tex. Apr. 13, 2022); *Robert L. Stark Enters., Inc. v. Neptune Design Grp., LLC*, WL 1345195 (N.D. Ohio Apr. 12, 2017).  That is not the case here.  The parties agree that all standard video editing software removes ISRCs.  Ex. 80, 177:17-178:23; Ex. 81, 205: 8-12.

10

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1  ███████████████████████████████████████████████████████████

2  ██████████████████████████████████████████  Yet, ISRCs are

3  not included on the videos posted on YouTube nor can a copyright owner search YouTube for

4  ISRCs even if the video contains a sound recording ██████████████████████████

5  ████████████████  Defendants know that: (a) ISRCs are industry standard CMI used to police

6  copyright *and* (b) sound recordings on YouTube do not contain ISRCs.  Defendants, therefore,

7  knowingly distribute copyrighted works knowing the CMI has been removed.  Defendants

8  nowhere respond to or rebut the argument that they have separately violated Section 1202's

9  prohibition on knowing distribution (distinct from knowing removal).  17 U.S.C. § 1202(b)(2).

10  And whether Defendants can respond to these facts is, of course, a class-wide issue.

11      For both knowing distribution and knowing removal, Plaintiffs have detailed several

12  elements of common evidence, including that the removal of ISRCs encourages or conceals

13  infringement as demonstrated by Defendants' own pervasive use of ISRCs for that very purpose.

14  Mot. 6, 18-19.  This fact—that Defendants themselves use ISRCs to police copyright—eviscerates

15  Defendants' reliance on *Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th Cir. 2018) and *Harrington*,

16  2022 WL 4348460.  Both cases relied upon defendants' lack of awareness that the CMI at issue

17  could be used to monitor or police copyrighted material.  *See Harrington*, 2022 WL 4348460, at

18  *4-5; *Stevens*, 899 F.3d at 675.  Finally, Defendants argue, "[t]he required proof that a given

19  sound recording that once contained an ISRC was used to create a given video is likewise

20  individualized." (Opp. 22).  Not so.  First, as noted above, Defendants require ISRCs to be

21  submitted under their own license agreements which is an admission that ISRCs are ubiquitous.

22  Further, publicly available databases also defeat this issue.  Ex. 63 at 19-21; Ex. 14 ¶ 87.

23      **B.  Common Issues Predominate Over Individualized Issues for the CLFN Class.**

24      YouTube itself established that it tracks, in the normal course, whether a particular video

25  contained CLFN metadata, resolving the first issue on a class-wide basis with YouTube's data.

26  *See* ECF 198-1, Declaration of Thierry Foucu ("Foucu Decl.") at ¶¶ 5-6.  Defendants' related

27  argument that individualized issues exist concerning whether a copyrighted work was contained in

28

11

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1  a video displayed without CMI is, at best, puzzling (Opp. 19).  The proposed class definition for

2  both CMI classes requires a successful TDN, which will establish the name and other identifying

3  information concerning the work being infringed.  *See* Ex. 63 ¶¶ 29-32.  Even if determining

4  membership in the CLFN class did present an administrative hurdle (which it does not), the Ninth

5  Circuit has firmly rejected imposing a "freestanding administrative feasibility" requirement.  *See*

6  *Briseno*, 844 F.3d at 1128.

7        Defendants' asserted justification for removing CMI raises a separate class-wide issue.

8  Defendants claim that their licenses grant them the right to "reformat" musical compositions,

9  including through CMI removal (Opp. 20); ECF 172 at 20.  Yet, "reformatting" in its most

10 generous sense cannot include *removal*. ECF 172 at 20.[20]  Finally, Plaintiffs will establish

11 Defendants' scienter through common proof.  For both CMI classes, claimants must have a TDN

12 which put Defendants on notice of infringement (a fact they nowhere dispute).  Moreover, whether

13 Plaintiffs must show that they used CMI to police infringement *on YouTube*—a platform which

14 does not preserve any original CMI or standard metadata (making its use impossible)—is also a

15 class-wide issue.

16 **III.    The Class Members' Remedies Can Be Established with Common Methods.**

17        Defendants' uncited claim that actual harm must exist (Opp. 3) is not the law: A "plaintiff

18 may recover statutory damages whether or not there is adequate evidence of the actual damages

19 suffered by plaintiff." *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996

20 (9th Cir. 1998); *see also F. W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 233 (1952)

21 (liability may be imposed for "uninjurious and unprofitable invasions of copyright").  Nor is the

22 statutory range an obstacle to class certification.  Determining willfulness (and thus the

23 _____

24 [20] Defendants' further claim that removal is harmless because the CMI remained on YouTube

25 (Opp. 21) is disingenuous at best.  YouTube did not add the CMI back in after removing it, the
   uploader did, and YouTube has never identified any process by which they ensure that information

26 is reinstated.  Indeed, YouTube only produced CLFN data for videos targeted by a TDN, meaning
   videos that were located by a keyword search and therefore were likely to, if not sure to, have had

27 the CMI reinstated because the title name and other keywords were used to locate the video for the
   TDN.  This insufficient production is the subject of a pending motion to compel.  ECF 199.

28

Plaintiffs' Reply in Support of Motion for Class Certification                3:20-cv-4423-JD

1    appropriate range of damages) necessarily focuses on Defendants' conduct, raising class-wide

2    issues, including Defendants' level of control.  17 U.S.C. § 504(c)(2).  Defendants have not shown

3    that there is a sufficiently large number of works with substantial value such that the issues

4    specific to the infringement (*e.g.*, value of the copyright for the work infringed) eliminates the

5    predominance of the factors specific to Defendants' conduct.  *See In re Google Play Store*

6    *Antitrust Litigation*, No. 3:21-md-02981-JD, ECF 383 at 26 (Class action "is superior to individual

7    proceedings" where "individualized issues on impact and damages can be managed at trial.")

8    (Donato, J.).

9        Should a class member decline or be ineligible for statutory damages, Plaintiffs' expert has

10   created a method for determining disgorgement-of-profits damages.[21]  Ex. 82 ¶¶ 65-67.  On

11   apportionment, Plaintiffs may seek direct and indirect profits, with the latter requiring merely a

12   "reasonable approximation," for which Plaintiffs' experts have reliable methodologies.  Ex. 82;

13   Ex. 63; *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710-12 (9th Cir. 2004).

14   Defendants' argument on extraterritoriality relies on a 1994 case (Opp. 23), ignoring more recent

15   authority holding that the Copyright Act applies to infringement that occurred in the United States

16   via display on YouTube.  *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal.

17   2011) (video created in Canada and uploaded to YouTube's California servers was not

18   extraterritorial).  Defendants' argument that failure to submit a TDN is failure to mitigate is a non-

19   sequitur as only those who have submitted successful TDNs are in the class and, in any event,

20   such an issue would not preclude certification.  *See In re JUUL Labs, Inc., Mktg. Sales Pracs. &*

21   *Prod. Liab. Litig.*, 2022 WL 2343268, at *39 (N.D. Cal. June 28, 2022).  Finally, Defendants'

22   throwaway objection to injunctive relief cannot carry the day, especially where Defendants

23   already have and use the very tool called for by the requested relief.   Ex. 15 ¶¶ 91-110; Ex. 86.

24   Defendants do not contest injunctive relief as an appropriate remedy for the CMI classes.

25

26   [21] A plaintiff is not "oblig[ated] to provide proof of its own profits when it has elected to seek
     statutory damages."  *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 926, 929 (N.D. Cal. 2009).
27   *Cream Records., Inc. v. Joseph Schlitz Brewing Co.* is inapposite as there the court held only that
     the "grounds for apportioning damages are unclear." 864 F.2d 668 (9th Cir. 1989).
28

Plaintiffs' Reply in Support of Motion for Class Certification            3:20-cv-4423-JD

1    In sum, "while it is true that proof of ownership, registration, and actual damages

2 ultimately requires a work-by-work inquiry, viewing these determinations as purely individual

3 issues ignores the fact that the claims of every member of the class are uniformly premised upon

4 the uploading or downloading of a copyrighted work." *In re Napster, Inc. Copyright Litig.*, 2005

5 WL 1287611,  at *7 (N.D. Cal. June 1, 2005) (internal quotation omitted).

6    **IV.    Plaintiffs Have Established Numerosity and Superiority.**

7    "Numerosity" is "satisfied" with "40" members.  *Ochoa v. McDonald's Corp.*, 2016 WL

8 3648550, at *4 (N.D. Cal. July 7, 2016) (Donato, J.).  Despite having offered to stipulate to

9 numerosity in discovery, Defendants now argue that Plaintiffs have not satisfied numerosity.  All

10 four classes will be derived from nearly 12 million TDNs, meaning that if only .0003% of those

11 TDNs represent prospective class members, numerosity is established.  Foucu Decl. ¶ 6; Ex. 66

12 (stating that Defendants received 1.99 million TDNs in the first six months of 2022).  Further for

13 the CLFN class, Defendants' own testimony establishes that for a random sampling of 1.7 million

14 TDNs, at least 505 videos contained CLFN consistent with the class. Foucu Decl. ¶ 6.  And for the

15 ISRC class, any sound recording or musical composition on YouTube will have had its ISRC

16 removed.  *See* II.A *supra*.  Defendants cannot seriously dispute numerosity, not where their own

17 algorithms, used to police a very limited portion of the platform, identify over 750 million

18 infringements.

19    Nor can Defendants rebut the superiority of class-wide adjudication.  Contrary to

20 Defendants' claim (Opp. 25), statutory damages are compatible with class certification.  *See*

21 *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010) (noting that congressional

22 motivations for establishing statutory damages, namely deterrence and compensation, are not

23 undermined by class certification);  *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535,

24 548 (N.D. Cal. 2018) (Donato, J.) ("While not trivial, BIPA's statutory damages are not enough to

25 incentivize individual plaintiffs given the high costs of pursuing discovery."), *aff'd sub nom. Patel*

26 *v. Facebook, Inc.,* 932 F.3d 1264 (9th Cir. 2019).  The fact that the Copyright Act allows for a

27 discretionary award of attorneys' fees (17 U.S.C. § 505) does not impact the superiority analysis.

28

1   Even where attorneys' fees are mandatory, class actions are superior where, among other things,

2   issues of "scale" discourage individual actions.  *In re Toys R Us-Delaware, Inc.--Fair & Accurate*

3   *Credit Transactions Act (FACTA) Litig.*, 300 F.R.D. 347, 365 (C.D. Cal. 2013).  Furthermore, if a

4   class is not certified and the named Plaintiffs are successful at trial, including in defeating

5   Defendants' claimed DMCA defenses, the Court could be flooded by individual infringement and

6   CMI actions undermining Rule 23's rationale for efficiency and fairness. *See Briseno,* 844 F.3d at

7   1127.

8          Basic fairness also makes a class the superior method here.  Defendants intentionally

9   created an ecosystem that not only encourages and rewards copyright infringement but actively

10  selects and displays infringing videos.  Defendants carefully guard access to Content ID,

11  intentionally withholding it from everyday copyright holders because ███████████████████

12  ████████████████████████████████████████████████████████████████████

13  ██████████████████████████████████████████ Ex. 27 at -641.

14  Indeed, nearly all copyright holders would prefer that Content ID be available to them, but

15  YouTube will not provide it to them because that would threaten its business model (a fact

16  Defendants do not dispute).  *Id.* at -643 ███████████████████████████████

17  ███████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████████

19  ██████████████████████████████████████████████████████████████. A

20  class action is the superior method of adjudicating the claims of the ███████████████ the

21  ordinary copyright holders harmed by the institutionalized malfeasance of a multi-billion-dollar

22  enterprise.  *Forcellati v. Hyland's, Inc.,* 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014)

23  ("facilitating small claims is '[t]he policy at the very core of the class action mechanism'").

24                              <u>**CONCLUSION**</u>

25          Plaintiffs respectfully request that the Court grant the motion for class certification.

26

27

28

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1  Dated: November 28, 2022

2                                                   Respectfully submitted,

3

4                                                   /s/ *Philip C. Korologos*
                                                    Philip C. Korologos (pro hac vice)
5                                                   Joanna Wright (pro hac vice)
                                                    Demetri Blaisdell (pro hac vice)
6                                                   BOIES SCHILLER FLEXNER LLP
                                                    55 Hudson Yards, 20th Floor
7                                                   New York, NY 10001
                                                    Phone: (212) 446-2300
8                                                   Fax: (212) 446-2350

9                                                   Joshua Irwin Schiller, CA Bar #330653
                                                    BOIES SCHILLER FLEXNER LLP
10                                                  44 Montgomery St., 41st Floor
                                                    San Francisco, CA 94104
11                                                  Phone: (415) 293-6800
                                                    Fax: (415) 293-6899
12
                                                    George A. Zelcs (pro hac vice)
13                                                  Randall P. Ewing, Jr. (pro hac vice)
                                                    Ryan Z. Cortazar (pro hac vice)
14                                                  KOREIN TILLERY, LLC
                                                    205 North Michigan, Suite 1950
15                                                  Chicago, IL 60601
                                                    Telephone: (312) 641-9750
16                                                  Facsimile: (312) 641-9751

17                                                  Stephen M. Tillery (pro hac vice)
                                                    Steven M. Berezney, CA Bar #329923
18                                                  Carol O'Keefe (pro hac vice)
                                                    KOREIN TILLERY, LLC
19                                                  505 North 7th Street, Suite 3600
                                                    St. Louis, MO 63101
20                                                  Telephone: (314) 241-4844
                                                    Facsimile: (314) 241-3525
21
                                                    *Attorneys for Plaintiffs*
22

23

24

25

26

27

28
Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD