George A. Zelcs (*pro hac vice*)
   gzelcs@koreintillery.com
Randall P. Ewing, Jr. (*pro hac vice*)
   rewing@koreintillery.com
Ryan Z. Cortazar (*pro hac vice*)
   rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
   stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
   sberezney@koreintillery.com
Carol O'Keefe (*pro hac vice*)
   cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
   jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
   pkorologos@bsfllp.com
Joanna Wright (*pro hac vice*)
   jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice*)
   dblaisdell@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC;<br><br>Defendants.<br><hr>YOUTUBE, LLC and GOOGLE LLC;<br><br>Counter-Plaintiffs,<br><br>vs.<br><br>PIRATE MONITOR LTD., GÁBOR CSUPÓ, and PIRATE MONITOR LLC,<br><br>Counter-Defendants. | CASE NO. 3:20-cv-4423-JD<br><br>**REPLY DECLARATION OF DEMETRI BLAISDELL IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date: December 15, 2022<br>Time: 10:00 a.m.<br>Dept.: 11<br>Judge: Hon. James Donato |

I, Demetri Blaisdell, declare as follows:

1. I am an attorney at Boies Schiller Flexner LLP, counsel to Plaintiffs and putative class representatives Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing, Ltd. I make this reply declaration in support of Plaintiffs' Motion for Class Certification filed on October 17, 2022. ECF 190. I have knowledge of the facts stated herein from my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2. On November 16, 2021, the Court ordered Plaintiffs to "identify [a] final list of infringements" by February 25, 2022, over six months before the original deadline to file the Motion for Class Certification. ECF 98. The deadline to file the Motion for Class Certification was later set as October 17, 2022. ECF 155. The list of infringements was not limited to infringements satisfying the proposed class definitions.

3. Plaintiffs complied with that order and identified every known infringement of the works at issue in this case, regardless of whether they were subject to a defense, such as the statute of limitations, serving a list of infringements on February 25, 2022, attached hereto as **Exhibit 58**, and a supplemental list of further infringements identified by Defendants searching the YouTube platform for infringing videos containing Plaintiffs' works at the close of discovery on July 5, 2022, attached hereto as **Exhibit 59**. Combined, these two lists contain 832 infringing videos.

4. As explained below, most of the infringements that Defendants attack in their Opposition do not satisfy the proposed class definitions, which are designed to focus on the meritorious infringement claims for which common issues predominate.

### *Class Representatives*

*Maria Schneider*

5. Maria Schneider is one of two proposed class representatives for the Registered Works Infringement Class. The Registered Works Infringement Class is defined as: "All persons who own copyrights in one or more works: 1) registered with the United States Copyright Office; 2) contained in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained in a video that was displayed on YouTube

1  subsequent to the first successful Takedown Notice and then removed from YouTube due to a
2  second successful Takedown Notice that was submitted on or after July 2, 2017." Mot. 3-4.

3        6.      Maria Schneider has one work, *Scenes from Childhood: Coming About*, that is
4  included in the class definition for the Registered Works Infringement Class (the "Schneider
5  Infringement"). A true and correct copy of the United States Copyright Office ("USCO") record
6  of registration for *Scenes from Childhood: Coming About* is attached hereto as **Exhibit 60**. A true
7  and correct copy of an email from YouTube dated May 6, 2015 confirming that an infringing
8  video containing *Scenes from Childhood: Coming About* was removed from the YouTube
9  platform is attached to the Declaration of Demetri Blaisdell in Support of Plaintiffs' Motion for
10 Class Certification dated October 17, 2022 ("**Blaisdell Decl**.") as **Exhibit 25**. A true and correct
11 copy of an email from YouTube dated March 8, 2018 confirming that an infringing video
12 containing *Scenes from Childhood: Coming About* was removed from the YouTube platform is
13 attached to the Blaisdell Decl. as **Exhibit 31**.

14       *7.*      Attached to the Blaisdell Decl. as **Exhibit 46** is a true and correct copy of a chart
15 prepared by Paul N. Harold submitted by Defendants as an exhibit to their Motion for Summary
16 Judgment for the claims brought by Plaintiff Maria Schneider (ECF 164-13). Defendants' own
17 evidence claims that the Schneider Infringement is not barred by the Copyright Act's three-year
18 Statute of Limitations.

19       8.      Defendants do claim the Schneider Infringement is barred by a one-year limitations
20 period purportedly imposed by Defendants' Terms of Service ("TOS"). Plaintiffs dispute that the
21 TOS limitations period applies because, among other reasons, it is substantively and procedurally
22 unconscionable (*see* ECF 172 at 21–22), which is an issue that can be resolved on a class-wide
23 basis. Finally, while Defendants complain that Ms. Schneider will be ineligible for statutory
24 damages for works she has not registered with the USCO (Opp. 3), these works are, *by definition*,
25 excluded from the proposed Registered Works Infringement Class. Defendants also claim that
26 Ms. Schneider licensed YouTube and its users to make use of the content she, her agents, or

licensees uploaded to the platform.  But the Schneider Infringement is not one uploaded by Ms. Schneider before the infringements in question, as demonstrated by Defendants' own records.

9.  Defendants raise a series of arguments that concern infringements of Ms. Schneider's works that do not meet the class definition for the Registered Works Infringement Class.  For example, they argue that certain of Ms. Schneider's works were allegedly licensed to YouTube because Ms. Schneider or her agents uploaded the works to YouTube (Opp. 2). However, Defendants have never asserted a license under the TOS for the Schneider Infringement via an authorized upload to YouTube.  *See* Blaisdell Decl. Ex. 46 (ECF 164-13) at 21.  Defendants also argue that Ms. Schneider had "constructive knowledge" of "hundreds" of infringements (Opp. 2).  But Defendants do not assert a date that the Schneider Infringement was uploaded, meaning that they are not asserting a constructive notice argument based on the date that video was uploaded.  Blaisdell Decl. Ex. 46 (ECF 164-13) at 21.  Defendants also argue that a takedown notice was submitted for the work *Cerulean Skies* that only identified it as "Cerulean."  Harold Decl. ¶ 44.[1]  But, as Defendants well know, *Cerulean Skies* does not meet the proposed class definition for the Registered Works Infringement Class.

10.  Maria Schneider is the proposed class representative for the proposed ISRC Class. The ISRC Class is defined as:  "All persons who own copyrights in one or more digital form sound recordings of musical works that: (1) contained an ISRC code; (2) were a component of a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and (3) on or after July 2, 2017, were displayed on YouTube with respect to a video that included such sound recordings of musical works without including or referencing the associated ISRC code."  Mot. 4.

11.  Maria Schneider is the proposed class representative for the proposed CLFN Class. The CLFN Class is defined as: "All persons who own copyrights in one or more works: (1) contained in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; (2) on or after July 2, 2017, contained in a video uploaded to

---

[1] All citations to the "Harold Decl." are to the Declaration of Paul N. Harold dated November 14, 2022 (ECF 198-14), submitted with Defendants' Opposition.

YouTube that had an associated Clip Filename ("CLFN") field populated with copyright management information; and (3) displayed on YouTube with respect to a video that included such work(s) without including or referencing the associated CLFN or with the copyright management information altered." Mot. 4.

12. On September 9, 2022, Ms. Schneider served an amended response to Defendants' Interrogatory No. 9 in which she identifies the ISRC code attached to 72 of the works at issue and 9 unique videos from which CMI-containing CLFN metadata has been removed. A true and correct copy of the amended response is attached to the Blaisdell Decl. as **Exhibit 22**.

13. On March 8, 2022, Defendants served an Amended Response and Objection to Maria Schneider's Interrogatory No. 1, a true and correct copy of which is attached to the Blaisdell Decl. as **Exhibit 17**. ████████████████████████████████████████████████

### *Uniglobe Entertainment LLC*

14. Uniglobe Entertainment LLC ("Uniglobe") is one of the two proposed class representatives for the Registered Works Infringement Class. Uniglobe has offered evidence of at least one video infringing its work, *5 Weddings*, appearing on YouTube that falls within the definition of Registered Works Infringement Class. A true and correct copy of the USCO record of registration for the screenplay of *5 Weddings* is attached hereto as **Exhibit 61**. A true and correct copy of an email from YouTube dated December 19, 2018 confirming that an infringing video containing *5 Weddings* was removed from the YouTube platform was attached to the Blaisdell Decl. as **Exhibit 36**. A true and correct copy of an email from YouTube dated January 16, 2019 confirming that an infringing video containing *5 Weddings* was removed from the YouTube platform is attached to the Blaisdell Decl. as **Exhibit 37**.

15. Defendants incorrectly state that the Uniglobe entity registered in Delaware is the Plaintiff in this action (Opp. 4). In fact, Uniglobe Entertainment, LLC, "a Wyoming limited liability company with its principal place of business in Los Angeles County, California," is the Plaintiff and proposed class representative. FAC, ECF 99 ¶ 17. The copyright registration for *5*

*Weddings* identifies Uniglobe Entertainment, LLC as the owner of the copyright and identifies it by its business address of 3319 Clifden Lane, Burbank, CA, 91504.

16. Defendants argue that Uniglobe's claims are defective because Uniglobe has registered its copyright to the screenplay rather than the motion picture itself. In fact, the FAC states that "The English language version of *5 Weddings* was registered with the U.S. Copyright Office for its dramatic work and music or choreography on May 5, 2016, with a 2016 date of creation, and as a motion picture in October 2016." FAC, ECF 99 ¶ 67. A screenplay is categorized as a "dramatic work" by the USCO. Attached as **Exhibit 62** is a copy of the page from the USCO's website entitled "Help: Type of Work," available at https://www.copyright.gov/eco/help-type.html.

17. Uniglobe also properly identified videos containing excerpts of the *5 Weddings* motion picture as infringing its copyright in the screenplay. An owner of a registered work may "proceed against the infringer based on registration of the original work even if the infringer copied from a derivative work." 5 *Patry on Copyright* § 17:90  The infringing videos at issue and which are described in Plaintiffs' pleadings plainly infringe a copyright owned by Uniglobe (the screenplay) by including portions of a derivative work (the motion picture).

18. Defendants ignore the class definition for the Registered Works Infringement Class and raise irrelevant arguments concerning infringements identified by Uniglobe under the Court's order. For example, they argue that Uniglobe had actual knowledge of 83 infringements at least three years before the filing of the complaint, ignoring that these infringements are only relevant to show that Uniglobe submitted a previous successful takedown notice before submitting a second successful Takedown Notice on or after July 2, 2017.

19. Defendants also argue that Uniglobe submitted a takedown notice for a "20-second clip of the famous 20th Century Fox intro" (Opp. 14; Harold Decl. ¶ 45). But they fail to state that the very document they cite, with Bates number UNIGLOBE_0000032107 and attached hereto as **Exhibit 88** (Harold Decl. Ex. 30), shows that the URL with this video (http://www.youtube.com/watch?v=YXWFYPk11GM) was *not* removed so this was not a

5

successful takedown notice. The takedown notice record states Defendants "were **unable to remove** all of the URLs you submitted," including this URL, and asked for more information from the copyright holder, which shows that Defendants' vetting process catches deficient takedown notices. Ex. 88 (emphasis added).

20. Defendants also argue that the takedown notice reflected in the document with Bates number UNIGLOBE_0000013042 attached hereto as **Exhibit 89** (Harold Decl. Ex. 28) states that Nayomi Cooper and not Uniglobe was listed as the copyright owner. In fact, the takedown notice contains the username "UniGlobe Entertainment," the email addresses "uniglobeentertainment@gmail.com" and "Team@uniglobeentertainmmt.com," contains Uniglobe's business address (which matches the business address on the USCO records, *see* ¶ 15 above), and identifies Ms. Cooper as the "President." Ex. 89.

21. Defendants also argue that the takedown notice reflected in the document with Bates number UNIGLOBE_0000013839 attached hereto as **Exhibit 90** (Harold Decl. Ex. 31) contained "a trailer that is unrelated to *5 Weddings*. Harold Decl. ¶ 46. However, the takedown notice states the following: "This video is the trailer for a different film but they are using '5 Weddings' poster and title to promote a different video – which is NOT our trailer. Please take it down asap." Ex. 90. The takedown accurately states that the content appears in a "Custom thumbnail" and identifies the "type of copyrighted work" as "Art and movie title." Ex. 90.

22. The Foreign Unregistered Works Infringement Class is defined as: "All persons who own copyrights in one or more works: 1) first published outside the United States; 2) contained in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained in a video that was displayed on YouTube subsequent to the first successful Takedown Notice and then removed from YouTube due to a second successful Takedown Notice that was submitted on or after July 2, 2017." Mot. 4.

23. Uniglobe is one of two proposed class representatives for the Foreign Unregistered Works Infringement Class. Uniglobe has offered evidence of at least one infringing work, *5 Weddings* (Hindi version), that falls within the definition of the Foreign Unregistered Works

Infringement Class. On June 28, 2022, Uniglobe served an Amended Response and Objections to Defendants' Interrogatory No. 1, attesting to the fact that the Hindi version of *5 Weddings* was first published outside of the United States. A true and correct copy of Uniglobe's Amended Response and Objection to Defendants' Interrogatory No. 1 is attached to the Blaisdell Decl. as **Exhibit 23**. A true and correct copy of an email from YouTube dated November 8, 2018 confirming that an infringing video containing *5 Weddings* (Hindi version) was removed from the YouTube platform is attached to the Blaisdell Decl. as **Exhibit 34**. A true and correct copy of an email from YouTube dated January 16, 2019 confirming that an infringing video containing *5 Weddings* (Hindi version) was removed from the YouTube platform was attached to the Blaisdell Decl. as **Exhibit 37**.

*AST Publishing*

24.   AST is one of two proposed class representatives for the Foreign Unregistered Works Infringement Class. On August 16, 2022, AST served an Amended Response and Objection to Defendants' Interrogatory No. 1, attesting to the fact that *Zuleikha Opens Her Eyes* was first published outside of the United States. A true and correct copy of AST's Amended Response and Objections to Defendants' Interrogatory No. 1 is attached to the Blaisdell Decl. as **Exhibit 21**. A true and correct copy of an email from YouTube dated June 13, 2019 confirming that an infringing video containing *Zuleikha Opens Her Eyes* was removed from the YouTube platform is attached to the Blaisdell Decl. as **Exhibit 40**. A true and correct copy of an email from YouTube dated May 14, 2020 confirming that an infringing video containing *Zuleikha Opens Her Eyes* was removed from the YouTube platform is attached to the Blaisdell Decl. as **Exhibit 35**.

25.   On November 17, 2022 Plaintiffs' expert Charles D. Cowan, Ph.D. submitted a supplemental expert report, attached hereto as **Exhibit 63**, which describes the methodology he will use to identify members of the proposed infringement and CMI classes. Dr. Cowan proposes the following manageable methodology for identifying the proposed classes:

[redacted]



Ex. 63 ¶ 12.

26. Dr. Cowan's report also describes several databases that are among the databases he would use to identify the publication and ownership information of foreign works including MusicBrainz, EIDR, and IMDb in ¶¶ 52–54 of the report. Defendants point out that AST's works are not contained in the EIDR, MLC, SoundExchange, Spotify, and MusicBrainz databases. Harold Decl. ¶ 51. AST's copyrights at issue are copyrighted audiobook works. Dr. Cowan did not testify that the EIDR, MLC, SoundExchange, Spotify, and MusicBrainz databases would contain audiobooks, so it is unremarkable that AST's works do not appear in those databases. As an example, *Zuleikha Opens Her Eyes* is found in the ISBN database available at https://isbn.org/. Attached as **Exhibit 64** is a true and correct copy of the entry from the ISBN database for *Zuleikha Opens Her Eyes*. Defendants have not disputed any aspect of AST's verified interrogatory responses that show that *Zuleikha Opens Her Eyes* meets the class definition.

27. During discovery, the parties entered into an agreement by which Defendants would use Content ID to search for matches of the works at issue. *See* Harold Decl. Ex. 22. YouTube claims that AST's Content ID results demonstrate that Content ID does not identify infringements.

1 ▮▮▮▮▮▮▮▮ Defendants produced on August 25, 2022 an Excel spreadsheet containing the final list of Content ID matches.[2]

28. Defendants seem to have manipulated this made-for-litigation matching process to inflate the number of matches by removing guardrails they have put in place to ensure that Content ID detects infringements. As Winograd notes in his expert report (attached to the Blaisdell Decl. as **Exhibit 15**), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Ex. ¶ 43. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Harold Decl. Ex. 22. As Defendants themselves acknowledge (Harold Decl. ¶ 34), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* note 2, above. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ In short, the process employed here seems to have been manipulated and is unrepresentative of Defendants' standard approach (Content ID).

29. Defendants criticize several of the takedown notices submitted for AST's works, claiming that they were submitted by an authorized agent (AZAPI) but fail to identify AST as the copyright holder. Defendants misleadingly omit that these takedown notices were apparently submitted through the Content Verification Program (CVP), which requires an authorized agent to

---

[2] The data produced by Defendants is not being filed with the Court because it is voluminous when printed as a PDF. A native Excel or extracts can be provided to the Court upon request.

identify the copyright holders it is acting on behalf of. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, which was produced with Bates number GOOG-SCHDR-00040009 and is attached hereto as **Exhibit 91**. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 91. Defendants also observe that two takedown notices submitted for AST's works identify the owner as Audiobook, LLC (Аудиокнига). Harold Decl. ¶ 41. As AST testified at its deposition, excerpts of which are attached as **Exhibit 92**, Audiobook, LLC was a prior subsidiary of AST before it was eventually integrated into AST with its copyrights transferred to AST. Ex. 92, Lozovskiy Dep. at 116:11-17. Audiobook, LLC (Аудиокнига) was also identified on AZAPI's CVP application. Ex. 91. Any takedown notices submitted through CVP that do not include the name of the copyright holder (or contain the name of an incorrect copyright holder) can be resolved as part of the claims administration process, including by reference to the CVP application of the agent.

### *Defendants' Reliance on Takedown Notices*

30. Attached to the Blaisdell Decl. as **Exhibit 52** is a true and correct copy of the DMCA takedown notice webform made available to all YouTube users, bearing production number GOOG-SCHNDR-00050128. The webform contains, under the heading "Legal agreements," the following statement: "The information in this notification is accurate, and under penalty of perjury, I am the owner, or an agent authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed." The webform also requires that the submitter enter the "Name of the copyright owner (required)" and the submitter's "Relationship to the copyrighted content (required)." *Id.* The webform also requires that the submitter provide its email, telephone, and street address. *Id.*

31. Attached hereto as **Exhibit 66** is a true and correct excerpt from the Copyright Transparency Report released by YouTube with data from the first half of 2022. The Copyright Transparency Report demonstrates that YouTube carefully vets DMCA takedown notices

submitted through their webform.  Far from being a purely automatic process as Defendants suggest, the Copyright Transparency Report reveals that 86% of takedown notices submitted via the Webform result in the claimed material being removed while YouTube determines that 6.78% are "Invalid Request[s]," 6.22% constitute "Abuse," 0.40% are a "Copyright Exception," and 0.54% are classified as "Other."  Ex. 66 at 8.

32.  Attached hereto as **Exhibit 67** is a true and correct copy of a YouTube webpage entitled "Copyright strike basics," bearing production number GOOG-SCHNDR-0000007.  This publicly available webpage explains the process and ramifications of receiving copyright strikes if an uploader's content is removed after receipt of a "complete and valid legal request" (referring to takedown notices), as determined by YouTube.  The page explains the consequences of receiving a copyright strike against an uploaded video, including an inability to monetize the content.

33.  Attached hereto as **Exhibit 68** is a true and correct copy of a YouTube webpage entitled "Monetization Icon Guide for YouTube Studio," demonstrating that YouTube demonetizes videos subject to copyright strikes.  It states, "If the status description says 'copyright claim': That means a rightsholder has either claimed your video using our Content ID system or issued a complete and valid copyright takedown request for your video because it uses their copyright-protected work without authorization.  As a result, you are no longer monetizing the video."

34.  A true and correct copy of a document dated November 19, 2019 ████████ ████████████████████████████████ is attached hereto as **Exhibit 69** and bears production number GOOG-SCHNDR-00006651.  Attached hereto as **Exhibit 70** is a true and correct copy of ████████████████████████████████████ dated November 20, 2019, bearing production number GOOG-SCHNDR-00035749.

*Fair Use*

35.  The extent of fair use issues on the YouTube platform is exemplified by the very small fraction of Content ID claims that are disputed with an assertion of fair use—only 0.2% of the infringements identified through Content ID.  Attached as **Exhibit 71** is a letter from Nathalie

11

1  Gorman to Demetri Blaisdell dated September 9, 2022, stating that " ▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ " Attached to the

3  Blaisdell Decl. as **Exhibit 43** is the Copyright Transparency Report released by YouTube for the

4  first half of 2021.  Attached to the Blaisdell Decl. as **Exhibit 44** is the Copyright Transparency

5  Report released by YouTube for the second half of 2021. These reports indicate that Content ID

6  users made 1,482,189,768 copyright claims via Content ID throughout the entirety of 2021.  Per

7  those same documents, fewer than 1% (0.51%) of Content ID claims are disputed. ▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9  ▮▮▮▮▮▮▮▮▮▮  Furthermore, the Copyright Transparency Report for the first half of 2022

10 (**Exhibit 66**) reports that YouTube has determined only 0.4% of takedown notices submitted via

11 the webform and 0.03% of takedown notices submitted via the Enterprise Webform were subject

12 to a "Copyright Exception," which includes claims of fair use by the uploader.

13         36.    Attached hereto as **Exhibit 72** is a true and correct copy of a Google webpage

14 entitled "A Step Toward Protecting Fair Use on YouTube," dated November 19, 2015.

### *DMCA Safe Harbors*

16         37.    On April 27, 2022, the USCO sought public comment on the following question:

> 1. Are there existing technologies that meet the current statutory definition of STMs in section 512(i)? If yes, please identify. If no, what aspects of the statutory definition do existing technologies fail to meet?

19 Standard Technical Measures & § 512, 87 Fed. Reg. 25,049, 25,051 (April 27, 2022), attached

20 hereto as **Exhibit 73**.

21         38.    The Recording Industry Association of America ("RIAA") and National Music

22 Publishers' Association ("NMPA") submitted comments in response to the USCO on May 27,

23 2022, attached hereto as **Exhibit 74**.  The comments state:

> "There are also technical measures, such as audio fingerprinting, a type of automatic content recognition (ACR) technology, which have been developed and are used broadly in the marketplace to identify copyrighted sound recordings. These technologies and their use have been discussed in an asynchronous fashion among various stakeholders in the internet ecosystem for music, including rights holders, such as RIAA and NMPA members; service providers, including YouTube, Facebook, Tumblr and others; and companies that provide audio fingerprinting services, including ACR Cloud and Audible Magic. While some service providers

have elected to develop in-house solutions based on audio fingerprinting technical measures, other service providers license third-party audio fingerprinting solutions. We believe this technology should also qualify as an STM."

Ex. 74 at 4.

39. The digital content rights management company Pex also submitted comments in response to the USCO on May 27, 2022, attached hereto as **Exhibit 75**. The comments state:

"Content fingerprinting also meets the section 512(i)(2) definition. Fingerprinting is often discussed in the video or audio context, but photography, art, and text can be identified online through similar methods. Although consumers sometimes use fingerprinting merely to identify content—for example by launching the Shazam application to determine the title and artist of a song playing in a bar, restaurant, or on television—companies such as Pex employ fingerprinting to also help protect, attribute, and license copyrighted works. Pex does so by comparing material that someone has uploaded to the internet (or is in the process of uploading) against fingerprint data of copyright holders' works. A match triggers further investigation to determine if the upload was (or would be) lawful, and to potentially lead to a licensing agreement where necessary. As with web crawling, content fingerprinting methods are in wide use and have evolved through consensus-based processes by the private sector, academia, and standards bodies—for example in the world of trust and safety, where such methods are used regularly. Companies like Pex offer fingerprinting services on reasonable and non-discriminatory terms and in a manner that is neither cumbersome nor costly."

Ex. 75 at 3–4.

40. Defendants block users from employing any fingerprinting technology to identify videos without a manual keyword search. Fingerprinting technologies would require "scraping" the YouTube platform, which is not permitted under YouTube's Terms of Service. Attached as **Exhibit 76** is an excerpt from Defendants' Responses to Plaintiffs' Requests for Admission (each an "RFA") dated July 5, 2022. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

### *Additional Exhibits*

41. Attached hereto as **Exhibit 77** is a true and correct copy of excerpts from the May 24, 2022 deposition of Amy Wu.

42. Attached hereto as **Exhibit 78** is a true and correct copy of excerpts from the June 14, 2022 deposition of Maria Schneider.

43. Attached hereto as **Exhibit 79** is a true and correct copy of excerpts from the June 29, 2022 deposition of Chris Ting.

44. Attached hereto as **Exhibit 80** is a true and correct copy of excerpts from the September 28, 2022 deposition of Plaintiffs' Expert Paul Jessop.

45. Attached hereto as **Exhibit 81** is a true and correct copy of excerpts from the September 30, 2022 deposition of Defendants' Expert Francois-Xavier Nuttall.

46. Attached hereto as **Exhibit 82** is a true and correct copy of the Expert Report of Plaintiffs' Expert Hal J. Singer, Ph.D. dated November 17, 2022.

47. Attached hereto as **Exhibit 83** is a true and correct copy of excerpts from the transcript of the July 7, 2022 Status Conference held in this case.

48. Attached hereto as **Exhibit 84** is a true and correct copy of excerpts from the transcript of the October 13, 2022 hearing held in this case.

49. Attached hereto as **Exhibit 85** is a true and correct copy of Form SR, the USCO's form "for registration of published or unpublished sound recordings," available on the Office's public website at https://www.copyright.gov/forms/formsr.pdf.

50. Attached hereto as **Exhibit 86** is a true and correct copy of a document entitled "Access to Content ID and sensitive features," bearing production number GOOG-SCHNDR-00001112.

51. Attached hereto as **Exhibit 87** is a true and correct copy of a YouTube Creator Academy webpage entitled "Use the Copyright Match Tool," bearing production number GOOG-SCHNDR-00050398.

Dated: November 28, 2022                    /s/ *Demetri Blaisdell*
                                            Demetri Blaisdell

**ATTESTATION**

My user ID and password are being used in the electronic filing of this document and, in compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other signatories.

                                                        */s/ Philip Korologos*
                                                        Philip Korologos