# EXHIBIT 80

CONFIDENTIAL

```
 1         UNITED STATES DISTRICT COURT
 2        NORTHERN DISTRICT OF CALIFORNIA
 3           Case No. 20-cv-04423-JD
 4
 5   - - - - - - - - - - - - - - - - -x
 6   MARIA SCHNEIDER, et al,           :
 7                 Plaintiffs,         :
 8           - vs -                    :
 9   YOUTUBE LLC, et al,               :
10                 Defendants.         :
11   - - - - - - - - - - - - - - - - -x
12
13              ***CONFIDENTIAL***
14
15      VIDEOTAPED DEPOSITION UPON ORAL
16   EXAMINATION OF PAUL JESSOP, held in New York,
17   NY, commencing at 9:16 a.m., September 28, 2022 ,
18   before Randi Friedman, a Registered Professional
19   Reporter, within and for the State of New York.
20
21
22
23
24   JOB No. 5490181
25   PAGES 1 - 286
```

Page 1

```
 1   Q    Mr. Jessop, are you providing an        15:00:47
 2   opinion as to what types of metadata constitute   15:00:49
 3   copyright management information within the ambit   15:00:54
 4   of the Digital Millennium Copyright Act?      15:00:57
 5         MR. DWYER:  You changed "as        15:01:01
 6   defined by" to "within the ambit."           15:01:03
 7         MR. RICHLIN:  I rephrased.         15:01:05
 8         MR. DWYER:  Okay.  Objection to     15:01:06
 9   form.                                          15:01:07
10         THE WITNESS:  I don't think I need  15:01:10
11   to express an opinion on that 'cause it's      15:01:10
12   written in the legislation and defined         15:01:12
13   clearly there.  My opinion in this paragraph   15:01:15
14   relates to Google's use of that information.   15:01:26
15   Not the status that information is              15:01:26
16   conforming to the definition in the DMCA.      15:01:30
17   BY MR. RICHLIN:                                15:01:32
18   Q    That was my question, whether you were   15:01:35
19   providing an expert opinion as to whether      15:01:36
20   metadata does or does not qualify as CMI under  15:01:39
21   the DMCA?                                      15:01:44
22   A    I am providing an engineer's textual     15:01:48
23   interpretation of that, and on that basis, I   15:01:52
24   don't need to opine about it.  I just read it, 15:01:58
25   and my opinion relates to the use of information 15:02:01
```
Page 174

```
 1   that conforms to that definition within the    15:02:05
 2   systems run by Google -- by YouTube.  I beg your 15:02:08
 3   pardon.                                         15:02:12
 4   Q    How do you formulate an engineer's        15:02:33
 5   textual interpretation?                         15:02:36
 6   A    I read the words.  I use their natural    15:02:38
 7   meaning.  I look for definitions of those terms 15:02:42
 8   within the statute, and then use that to analyze 15:02:44
 9   what is going on in the systems that I'm looking 15:02:48
10   at.                                             15:02:50
11   Q    Okay.  Can you skip ahead to Paragraph   15:02:50
12   137?                                            15:03:01
13   A    Yes.                                       15:03:06
14   Q    I want to go to the last clause in        15:03:15
15   Paragraph 137.  "How YouTube reads this data in 15:03:17
16   order to delete it while knowing that it is CMI." 15:03:24
17   A    Yeah.                                      15:03:29
18   Q    The last part of that phrase, "that it    15:03:35
19   is CMI," is that based upon your engineer's    15:03:38
20   textual interpretation of the CMI definition   15:03:41
21   contained in the DMCA?                          15:03:45
22   A    It can only be so.                         15:03:47
23   Q    You're not aware of any legal             15:03:51
24   determination that any of the metadata at issue 15:03:53
25   in your report has been deemed CMI under the   15:03:57
```
Page 175

```
 1   DMCA; correct?                                 15:04:00
 2         MR. DWYER:  Objection to form.     15:04:01
 3         THE WITNESS:  If I had been using   15:04:07
 4   that, those resources would have been          15:04:08
 5   footnoted and put into the list of the         15:04:10
 6   documents at the end, so there have been no    15:04:13
 7   such.                                          15:04:15
 8   BY MR. RICHLIN:                                15:04:15
 9   Q    And there's no citation here, so the     15:04:21
10   clause, "YouTube reads this data in order to   15:04:27
11   delete it," is that the same inferential opinion 15:04:30
12   akin to the one that we discussed earlier in   15:04:36
13   Paragraphs 154 and 155?                        15:04:38
14   A    I think it's the same issue that we      15:04:40
15   discussed earlier.                              15:04:41
16   Q    Okay.                                      15:04:42
17         MR. RICHLIN:  Off the record.      15:04:59
18         MR. VIDEOGRAPHER:  The time on the 15:05:03
19   video monitor is 3:05 p.m.  We're off the      15:05:04
20   record.  This ends Media 4.                    15:05:07
21         (Whereupon there was a brief       15:24:51
22   recess.)                                        15:24:53
23         MR. VIDEOGRAPHER:  We are back on  15:25:05
24   the record.  The time on the video monitor    15:25:05
25   is 3:25 p.m.  This starts Media 5.             15:25:07
```
Page 176

```
 1   BY MR. RICHLIN:                                15:25:10
 2   Q    Mr. Jessop, can you turn to Paragraph    15:25:14
 3   40 of your report?                              15:25:16
 4   A    Yes.                                       15:25:27
 5   Q    This is the background section, so       15:25:32
 6   it's here that you are providing a summary of the 15:25:33
 7   plaintiffs' allegations in their Complaint;    15:25:39
 8   correct?                                        15:25:41
 9   A    Correct.                                   15:25:41
10   Q    And here you are reflecting the          15:25:42
11   allegation that "Software tools, typically video 15:25:45
12   editing programs used by YouTube users, often  15:25:50
13   remove that metadata, as those tools combine them 15:25:53
14   with other materials to create uploaded videos"; 15:25:56
15   correct?                                        15:25:59
16   A    Correct.                                   15:25:59
17   Q    And so here the allegation that you      15:26:01
18   are describing is not that YouTube has removed 15:26:03
19   any metadata, but rather that a video software 15:26:06
20   editing program has removed metadata; is that  15:26:11
21   correct?                                        15:26:13
22   A    That is correct.                          15:26:14
23   Q    That allegation conforms with your own   15:26:25
24   experience of video editing programs; correct?  15:26:29
25         MR. DWYER:  Objection to form.     15:26:32
```
Page 177

45 (Pages 174 - 177)

```
 1        THE WITNESS: That conforms with    15:26:38
 2   my experience, though not necessarily with   15:26:38
 3   the abbreviated experiments done in the    15:26:44
 4   course of the analysis here, but it's a    15:26:46
 5   behavior that I would expect.           15:26:48
 6 BY MR. RICHLIN:                           15:26:50
 7   Q   Okay. Let me ask it a different way.   15:26:50
 8       Is it your opinion that video editing   15:26:55
 9 programs commonly do not retain metadata      15:27:00
10 contained in underlying components?           15:27:05
11        MR. DWYER: Objection to form.        15:27:08
12        THE WITNESS: Yes.                   15:27:10
13 BY MR. RICHLIN:                             15:27:11
14   Q   So let's look to Paragraph 143.       15:27:13
15   A   Yes.                                 15:27:26
16   Q   You state that "Video files are the   15:27:32
17 product of video editing software"; correct?  15:27:34
18   A   I say that.                          15:27:39
19   Q   And here by "video editing software,"  15:27:42
20 are you referring to video editing programs that  15:27:46
21 plaintiffs allege often remove metadata?    15:27:50
22        MR. DWYER: Objection to form.        15:27:54
23        THE WITNESS: Yes.                   15:28:00
24 BY MR. RICHLIN:                             15:28:02
25   Q   I'll direct your attention to        15:28:06
                                                 Page 178
```

```
 1 Paragraph 150 on Page 49. In Paragraph 150 you  15:28:07
 2 write that "Video editing software does sometimes 15:28:24
 3 preserve CMI"; correct?                    15:28:28
 4   A   No. It says "preserve some CMI."    15:28:29
 5   Q   Excuse me. I apologize.              15:28:32
 6   A   I think the distinction is important. 15:28:34
 7   Q   I do, too. Let me state it again so  15:28:35
 8 we have a clean record.                     15:28:39
 9       In Paragraph 150 you state, "Video    15:28:40
10 editing software does sometimes preserve some 15:28:41
11 CMI"; correct?                              15:28:45
12   A   Yes.                                 15:28:47
13   Q   But "it does not include all the     15:28:48
14 available CMI of components in a video file";  15:28:50
15 correct?                                    15:28:54
16   A   Correct.                             15:28:54
17   Q   And here, again, you're referring to a 15:28:57
18 process by which video editing software does not 15:28:59
19 preserve all CMI. Not that YouTube has removed 15:29:02
20 any CMI; correct?                           15:29:05
21   A   Correct.                             15:29:07
22   Q   Go back to Paragraph 119.            15:29:17
23   A   Yes.                                 15:29:44
24   Q   I'm looking here at the very beginning 15:29:44
25 of Paragraph 119 where you state, "When a   15:29:47
                                                 Page 179
```

```
 1 component or derivative work is created, the    15:29:50
 2 metadata from the components ought to be included 15:29:53
 3 in the final result."                        15:29:56
 4       Is that an opinion that reflects your  15:29:59
 5 wish for how video editing software operated?  15:30:08
 6   A   With the correction it's "composite";  15:30:12
 7 not whatever it was you said, or "compositing." 15:30:14
 8 I think the word "ought" makes this a        15:30:23
 9 recommendation rather than a normative        15:30:30
10 requirement. Clearly video editing software does 15:30:34
11 what video editing software does. This would be 15:30:39
12 my recommendation that states it would avoid some 15:30:41
13 of the outcomes we see in this case.         15:30:45
14   Q   Who is that a recommendation to?      15:30:48
15   A   Well, it's a recommendation as I state 15:30:53
16 in the following paragraph, both to video editing 15:31:02
17 software creators. Although for reasons I    15:31:07
18 suspect we both understand, the likelihood of 15:31:12
19 them conforming to this recommendation is    15:31:15
20 limited, but there's nothing to stop users on 15:31:18
21 whom it is also a recommendation for making the 15:31:22
22 metadata transfer manually.                  15:31:26
23   Q   I think that's helpful, and that goes  15:31:31
24 to my next question.                         15:31:32
25       This recommendation, that metadata    15:31:34
                                                 Page 180
```

```
 1 from components ought to be included in the final 15:31:36
 2 result, that's directed to either companies that 15:31:39
 3 make video editing software available or the  15:31:43
 4 users of that video editing software; correct? 15:31:45
 5        MR. DWYER: Objection to form.        15:31:48
 6        THE WITNESS: That's the intention    15:31:50
 7   of my recommendation in this text.         15:31:51
 8 BY MR. RICHLIN:                             15:31:53
 9   Q   This is not a recommendation directed  15:31:53
10 to YouTube, correct, looking solely at Paragraph 15:31:56
11 119 and 120?                                 15:32:00
12        MR. DWYER: Objection to form.        15:32:02
13        THE WITNESS: That's correct.         15:32:03
14 BY MR. RICHLIN:                             15:32:03
15   Q   Is there an existing standard that    15:32:08
16 requires video editing programs to include   15:32:09
17 metadata from components in the final composite 15:32:13
18 video?                                       15:32:18
19   A   There is none.                        15:32:18
20   Q   Are you aware of any video editing    15:32:24
21 software program that automatically retains all 15:32:27
22 metadata from components in the final composite 15:32:30
23 video?                                       15:32:33
24   A   I'm aware of no such software.        15:32:34
25   Q   Are you aware of any video editing    15:32:42
                                                 Page 181
```