# EXHIBIT 83

**Pages 1 - 56**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  VS.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>      Defendants.<br>_____<br>YOUTUBE, LLC and GOOGLE LLC,<br><br>      Counterclaimants,<br><br>  VS.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>      Counterclaim Defendants.<br>_____ | **NO. C 20-04423 JD** |

                                              San Francisco, California
                                              Thursday, July 7, 2022

**TRANSCRIPT OF PROCEEDINGS**

**(APPEARANCES ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official U.S. Reporter

1  and only a fraction of those are going to be about fair use.
2  We'd like to know how many.
3      **THE COURT:**  All right.  Does YouTube do that?
4      **MR. KRAMER:**  No, Your Honor, we don't with respect to
5  takedown notices.  There's a form language that the disputer
6  has to submit in response to a counter -- as a counter
7  notification.
8      But the idea that we can quantify how often fair use comes
9  up on the service doesn't make any sense.
10     **THE COURT:**  Well, I think I'm asking a simpler question.
11 Does anybody track that at YouTube?
12     "We got 70 claims of fair use this quarter."
13     **MR. KRAMER:**  There are millions, Your Honor.  There are
14 millions.
15     **THE COURT:**  Millions of fair use claims?
16     **MR. KRAMER:**  Millions of fair use claims, Your Honor.
17     And I want to be clear.  There are millions with respect
18 to the universe where there's actually a claim, where something
19 has --
20     **THE COURT:**  Let me suggest this.  If you're going to bring
21 up this issue as a defense to certification or anything else, I
22 will look to see if you have adequately provided the plaintiffs
23 with information.  If you have not, I will strike the argument.
24     **MR. KRAMER:**  Certainly, Your Honor.
25     **THE COURT:**  So --

1    **MR. KRAMER:**  Let me be --
2    **THE COURT:**  -- I'm going to leave it up to you two to
3 calibrate it.  Okay?
4        So that's the -- I mean, this is an obvious consequence;
5 but if you're going to -- if you say -- just hypothetically
6 speaking, if you say, somewhere in opposition to class cert or
7 something like that, "You can't certify because we get millions
8 of claims of fair use" and you did not provide your colleagues
9 with the means of testing that, it will be stricken as a
10 defense.
11   **MR. KRAMER:**  Your Honor, let me be clear about this one,
12 because I think it's important.
13       This is a factor that other courts have identified as one
14 of many that stand as an obstacle to class certification in a
15 copyright infringement case.
16       But for YouTube to know how often class
17 certification [sic] arises is to know the unknowable.  It only
18 arises in a specific --
19   **THE COURT:**  How often fair use arises.
20   **MR. KRAMER:**  How often fair use arises.
21   **THE COURT:**  Okay.  That's fine.  I'm not hedging this.
22   **MR. KRAMER:**  Okay.
23   **THE COURT:**  That's my order.  Okay?  So it's really quite
24 binary.  You say it, and you did not provide adequate
25 discovery, I will not take it into account and it will be

1  stricken.
2  **MR. KRAMER:**  Well, Your Honor, I want to be --
3  **THE COURT:**  There's no "Well, Your Honor," Mr. Kramer.
4  You two work it out.  That's the dynamic.
5  All right.  144, what do we have for that, Mr. Korologos?
6  **MR. KOROLOGOS:**  Your Honor, 144 relates to internal
7  policies and procedures with respect to copyright management
8  and specifically dealing with infringers and suspensions and
9  terminations of infringer accounts.
10  **THE COURT:**  What would you like?
11  **MR. KOROLOGOS:**  Well, we've learned in the discovery we
12  have received that the defendants keep something called the
13  knowledge base.  And --
14  **THE COURT:**  Knowledge base.  Okay.
15  **MR. KOROLOGOS:**  Yes.  And the knowledge base is updated
16  regularly.
17  We have an e-mail chain, for instance, Your Honor, that
18  runs -- I think it's from July of 2020 to April of 2021, that
19  is to an internal group called the Copy Knights -- the
20  Copyright Knights, within YouTube.  And it says things like
21  "The following policy on suspensions of channels has been
22  updated.  Please review it."  And it has a link.
23  So we now know from that document and from testimony
24  associated with that document that there is a knowledge base of
25  such policies and procedures.  We would like to get the

1   **THE COURT:** -- the summary judgment, or something, out?
2   **MR. KOROLOGOS:** Well, we'd like to push --
3   **THE COURT:** Experts?
4   **MR. KOROLOGOS:** -- expert disclosure and discovery and the
5   class certification briefing.
6   **THE COURT:** That seems okay.
7   Are you okay with that, Mr. Kramer?
8   **MR. KRAMER:** So certainly, with respect to experts,
9   Your Honor, we don't have a problem with that. Both sides are
10  undoubtedly exhausted as a result of this last push to the
11  close of discovery. So pushing out the expert disclosures and
12  discovery period is fine with us.
13  We do have some hesitation about pushing off the class
14  certification issue. As the Court will recall, that is a huge
15  issue for the parties and a divide between them.
16  In our view, this case is individual plaintiffs whose
17  claims collectively are worth a few thousands dollars, and the
18  plaintiffs are saying it's worth billions. And that disconnect
19  is class certification. So the sooner that can be heard, the
20  better.
21  But if the Court is inclined, and with the Court's
22  approval, I have no problem kicking that off 30 days. I just
23  don't want to put it off months.
24  **THE COURT:** Well, I think the proposal is 45 days.
25  **MR. KOROLOGOS:** Yes, Your Honor.

1  **THE COURT:** That's fine. So I'll do a scheduling order.
2  Everything but close of fact discovery, I'll push out 45 days.
3  That will change the trial date a little bit, but that's okay.
4      Now, what's happening with settlement? You can't do it?
5  I'm hearing from Mr. Kramer you actually can't do it.
6      That's fine. If you can't do it, you can't do it.
7  **MR. KOROLOGOS:** As we've discussed before, we did have one
8  round with former Judge Scheindlin. We agreed, at that,
9  that --
10  **THE COURT:** Oh, that's right.
11  **MR. KOROLOGOS:** -- that we would best be served to await
12  and see discovery develop and likely get through class
13  certification briefing.
14      I think that the best opportunity, consistent with
15  Your Honor's discussion about class certification issues at the
16  last hearing, where Your Honor may recall, you suggested the
17  possibility of providing some preliminary indications to the
18  parties about class certification.
19  **THE COURT:** Oh, without a formal order.
20  **MR. KOROLOGOS:** Yes.
21  **THE COURT:** I see.
22  **MR. KOROLOGOS:** And --
23  **THE COURT:** That seems like a good idea.
24  **MR. KOROLOGOS:** -- Mr. Kramer and I --
25  **THE COURT:** Yeah.

1  **MR. KOROLOGOS:** Mr. Kramer and I discussed that.  I think
2  that they --
3  **THE COURT:** Do you like that idea?
4  **MR. KOROLOGOS:** I like that idea.  I don't think they like
5  that idea.
6  **MR. KRAMER:** Your Honor, given the pendency of the motion,
7  we'd rather have the issue addressed on a full record.
8  **THE COURT:** No.  It will be a full record.  I just won't
9  pull the trigger on a final order.  It's going to be a full
10 record.  You're going to file your briefs.  You're going to
11 have an argument.  And I'll tell you what my -- I'll, in
12 effect, give you a tentative.
13 **MR. KOROLOGOS:** That's what I think would help the
14 parties, Your Honor.  At argument or shortly after that, we're
15 called in and given a tentative.  I think either way that goes,
16 settlement discussions at that point have a significant
17 possibility of being fruitful.
18     I also think that it is beneficial to have those
19 settlement discussions occur before there is any ruling,
20 because if we're going to settle, my guess is they're going to
21 want to have a class settlement so that they can get a class
22 release.
23 **THE COURT:** I understand.  This is the last bet before the
24 river card shows.
25     So do you want to stick with Judge Scheindlin, or do you

want to try someone else?

**MR. KOROLOGOS:** I think we --

**THE COURT:** Talk about that with Mr. Kramer?

**MR. KOROLOGOS:** Yeah, I think we may want to try somebody else, but why don't Mr. Kramer and I talk about that.

**THE COURT:** That's a good idea.

**MR. KOROLOGOS:** We've got some time to set that up.

**THE COURT:** It's nothing about Judge Scheindlin. I don't know her personally. I'm not casting any doubts on her abilities. But sometimes a little change of scenery can help.

And I'll leave it up to you.

**MR. KRAMER:** Your Honor suggested Judge Walker, which strikes us as a great suggestion.

**THE COURT:** Well, actually, I was just reminded in that *Broadcom* case right before you, Justice Lambden, local, very, very good; and that's --

**MR. KOROLOGOS:** That's also a helpful suggestion.

**THE COURT:** -- someone I would definitely want you to consider if you were -- it's totally up to you, of course.

This is a hundred percent driven by you two and your selection. But Justice Lambden would also be someone I might want to take into account.

**MR. KRAMER:** I look forward to --

**THE COURT:** Okay. I do like the idea of the tentative, because I do think it can help to promote settlement, and it