**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

650 Page Mill Road
Palo Alto, California 94304-1050

O: 650.493.9300
F: 650.493.6811

December 12, 2022

The Honorable James Donato
United States District Court
for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Schneider, et al. v. YouTube, LLC, et al.*, Case No. 20-cv-04423-JD

Your Honor:

In full compliance with the Court's August 30 Order (Dkt. No. 165), Defendants produced all of the data and information Plaintiffs requested in their prior letter-briefs (Dkt. Nos. 156 ("July 29 Letter Br."), 159). Specifically, Defendants produced:

- Takedown-notice data from 90 "random" dates (selected by Plaintiffs), including detailed data for roughly ***1.8 million*** videos: the date of the notice, the names of the claimant and purported copyright owner, the claimant's description of the purported copyrighted work, the removed video URL, whether YouTube received a counter notification in response, and the video's total advertising revenue, if any;

- Embedded "clfn" metadata retrieved from YouTube's databases for ***all 1.8 million videos across all 90 days*** (despite having been ordered to produce such data for only 30 days);

- Every requested Content ID statistic—the number of active Content ID claims for different categories of channels, the percentage of publicly-displayed videos on the platform monetized through Content ID, and the percentage of videos monetized, blocked, and tracked through Content ID—for multiple dates spanning four years; and

- The percentage of Content ID disputes in 2021 where the user selected fair use as the basis for that dispute.

Producing all of this was a daunting undertaking. We are now more than five months after the fact discovery cut-off. *See* Civil L.R. 37-3 ("[N]o discovery-related motions may be filed more than 7 days after the discovery cut-off."); *see also* Transcript of July 7, 2022 Proceedings at 36:8-10 ("Discovery is over."). Plaintiffs have already moved to certify a class (and represented that further data was ***not necessary*** for that motion). The Court already extended the deadline for Plaintiffs' expert reports (which were served weeks ago), and has a motion for summary judgment under submission. Nevertheless, Plaintiffs now demand additional data that they did not request in their prior letter-briefs but, apparently in hindsight, wish they had. *See* Dkt. No. 199 ("Nov. 18 Letter Br.").

***"CLFN" Metadata.*** In their July 29 letter-brief, Plaintiffs asked the Court to order Defendants to produce two pieces of data for a 60-day sampling of uploaded video files: "the related CLFN metadata and the infringing URL." July 29 Letter Br. at 3. The Court

WILSON SONSINI

compromised by giving them half (30 days), and Defendants more than complied (90 days). Consistent with Plaintiffs' request, Defendants produced the "clfn" metadata and URL for "infringing" videos, as Plaintiffs defined them—i.e., videos removed by YouTube in response to "successful" takedown notices. *Id.* at 1-2. But having specifically requested information about "infringing" videos, Plaintiffs now demand "clfn" metadata for videos that were not the subject of any takedown notice (and so were not identified as allegedly "infringing" anyone's rights). Nov. 18 Letter Br. at 1-2. Plaintiffs try to sidestep this inconsistency by pointing to even broader demands made during the parties' earlier meet-and-confer process. *See id.* (citing June and July 2022 letters). But Plaintiffs did not pursue those demands with the Court. While their ask of the Court was highly burdensome, it was at least theoretically tied to their case.[1] Plaintiffs may now regret their decision to limit their ask to "infringing" videos, but they are not entitled to more.

*Takedown-Notice Data.* In their prior letter-brief, Plaintiffs asked the Court to order production of many categories of data "for each successful takedown notice where the video was removed" over a sampling of 180 dates: "the date of the notice, claimant information, copyright owner information, copyrighted work infringed, URL of the infringing video, and Google gross ad revenue associated with the infringing video." July 29 Letter Br. at 1-2. The Court cut that ask in half. Dkt. No. 165 (ordering production of "requested takedown notice data from a random sampling of 90 days"). Defendants produced what the Court ordered for 90 "random" dates. Defendants actually allowed Plaintiffs to choose those dates through a supposedly "statistically valid sampling methodology" devised by their expert. Sept. 13 Email from C. O'Keefe. The resulting production included information from takedown notices for nearly 1.8 million video URLs. Plaintiffs now want data categories they did not request in their prior letter-brief. *Compare* July 29 Letter Br. at 1-2, *with* Nov. 18 Letter Br. at 3 (seeking, for each takedown notice, notice's time, YouTube's internal ID, claimant's country, complaint origin, and type of work identified by claimants using YouTube's webform, among other things). Plaintiffs' position appears to be that, regardless of what they actually asked the Court for, they are entitled to all data fields and types the parties ever discussed. But Plaintiffs abandoned those discussions by filing their letter-brief and setting out the requests that are the subject of the Court's August 30 Order. Again, Plaintiffs cannot simply rewrite their requests.

Nevertheless, before the (extended) deadline for Plaintiffs' expert reports, **Defendants offered to produce nearly all of these new data categories on the condition that Plaintiffs' asks would end.** Specifically, Defendants offered to produce: claimant's country of origin, complaint origin, time of each takedown notice (and each counter-notification), and type of work. Defendants also offered to produce the contents of certain additional fields from YouTube's webform and Copyright Match Tool for select categories of works, which are infrequently populated (and largely optional), but which might potentially contain additional information. Plaintiffs refused Defendants' offer.

Plaintiffs' other complaints about the takedown-notice data are equally meritless. They say Defendants created "difficulty" for them "by refusing to eliminate from their production URLs that are known to have been the result of Content ID matching," and not producing what

---

[1] All of the classes Plaintiffs seek to certify, including their "CMI classes," require the removal of a video in response to a takedown notice. *See* Dkt. No. 190 at 5; Dkt. No. 203 at 12. Given that limitation, Plaintiffs' new demand for metadata associated with any video, including those never the subject of any DMCA takedown notice, makes no sense.

their experts now desire for their "screening methodologies." Nov. 18 Letter Br. at 2-3. But the Court's order imposed no screening obligation and Defendants (though not required to do so) already filtered from the sample data any notices submitted through YouTube's Content ID platform, which Plaintiffs had proposed as a "proxy for Content ID access." Oct. 13 Letter from C. O'Keefe at 1. Neither Plaintiffs' dissatisfaction nor their experts' frustration with the data they requested and received obligates YouTube to produce anything else or to undertake some convoluted process to accommodate Plaintiffs' purpose. Defendants offered more, but they cannot agree to Plaintiffs' endlessly iterative discovery demands.[2]

**Content ID Statistics.** Plaintiffs' July 29 letter-brief represented that Plaintiffs "offered to forgo all Content ID data requests in return for specified statistics," including "the ***percentage*** of publicly displayed videos on the platform that are monetized by Content ID" and "the ***percentage*** of videos that are monetized, blocked and tracked by Content ID." July 29 Letter Br. at 2 (emphases added). The Court ordered Defendants to produce those requested statistics for a series of dates spanning four years, and Defendants did just that. Having received what they requested, Plaintiffs now claim to want the numerical inputs used to calculate the percentages. Nov. 18 Letter Br. at 3 ("numerator and denominator"). But Plaintiffs did not request numerical inputs, which are non-public, highly sensitive, and irrelevant.

**Data Accessibility.** Plaintiffs challenge Defendants' production of data that is "accessible or retained in the ordinary course of business" as "constrained" and "unilaterally limited." *See* Nov. 18 Letter Br. at 3. This is specious. To produce the data and statistics Plaintiffs requested, Defendants queried the databases where the relevant data is stored. While Defendants cannot rule out the possibility that, for example, some scrap of data concerning the roughly 1.8 million URLs for which they produced data could conceivably exist elsewhere, they confirmed for Plaintiffs that there are no centralized databases where the requested takedown-notice data resides beyond those already queried. Moreover, Defendants have been transparent that their productions and calculations necessarily reflect data that presently exists in their systems, and Plaintiffs have long understood Defendants' retention policies (*see, e.g.*, Nov. 5, 2020 Letter discussing YouTube's relevant retention policies). Defendants cannot produce what is effectively unproducible.

\* \* \*

Plaintiffs may not now reimagine their prior requests to demand that Defendants produce new information. And Plaintiffs' suggestion, that Defendants should face preclusion for failing to produce data that the Court did not actually order them to produce, is offensive. That Plaintiffs are dissatisfied with what they demanded and obtained does not render Defendants' production deficient. Plaintiffs have no legitimate basis to demand more data this late in the proceedings.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s Lauren Gallo White*
Lauren Gallo White

---

[2] Notably, Plaintiffs' purported statistical expert now says no sampling will help and he will require the entirety of YouTube's takedown databases to reliably quantify and identify the putative class.