Pages 1 - 32

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC and AST PUBLISHING LTD., individually and on behalf of all others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| VS. | ) **NO. C 20-04423 JD** |
| | ) |
| YOUTUBE, LLC; and GOOGLE LLC, | ) |
| | ) |
| Defendants. | ) |
| ――――――――――――――――――――――――― | ) |
| YOUTUBE, LLC; and GOOGLE LLC, | ) |
| | ) |
| Counter-Claimants, | ) |
| | ) |
| VS. | ) |
| | ) |
| PIRATE MONITOR LTD., GABOR CSUPO, and PIRATE MONITOR LLC, | ) ) |
| | ) |
| Counter-Defendants. | ) |
| ――――――――――――――――――――――――― | ) |

San Francisco, California
Thursday, December 15, 2022

**TRANSCRIPT OF PROCEEDINGS**

**(APPEARANCES ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official U.S. Reporter

**APPEARANCES**:

For Plaintiffs and Counter-Defendants:
                    BOIES SCHILLER FLEXNER LLP
                    55 Hudson Yards, 20th Floor
                    New York, New York 10001
              BY:   **PHILIP C. KOROLOGOS, ATTORNEY AT LAW**


                    BOIES SCHILLER FLEXNER LLP
                    44 Montgomery Street, 41st Floor
                    San Francisco, California 94104
              BY:   **JOSHUA I. SCHILLER, ATTORNEY AT LAW**


                    KOREIN TILLERY LLC
                    205 North Michigan Plaza, Suite 1950
                    Chicago, Illinois 60601
              BY:   **GEORGE A. ZELCS, ATTORNEY AT LAW**



For Defendants and Counter-Claimants:
                    WILSON, SONSINI, GOODRICH & ROSATI
                    650 Page Mill Road
                    Palo Alto, California 94304
              BY:   **DAVID H. KRAMER, ATTORNEY AT LAW**
                    **LAUREN GALLO WHITE, ATTORNEY AT LAW**
                    **QIFAN HUANG, ATTORNEY AT LAW**

1   **Thursday - December 15, 2022**                        **10:23 a.m.**

2                        **P R O C E E D I N G S**

3                          ---o0o---

4      **THE CLERK:**  Calling Civil 20-4423, Schneider, et al. vs.

5   YouTube, LLC.

6      **MR. KOROLOGOS:**  Good morning, Your Honor.  Phil Korologos

7   with Boies Schiller Flexner.  My partner Josh Schiller is with

8   me as well and Mr. Zelcs from the Korein Tillery firm.

9      **MR. ZELCS:**  Good morning, Your Honor.

10     **MR. KRAMER:**  Good morning, Your Honor.  Dave Kramer from

11   Wilson Sonsini for the defendants, and with me are my

12   colleagues Lauren White and Qifan Huang.

13     **THE COURT:**  I'm not going to do the class cert today.

14     Here's what we're going to do.  I sent you -- it may be

15   that our communications were too cryptic, but I thought you

16   were going to -- you pushed all the schedule out, and you're

17   not even going to do your expert stuff until January.  The

18   final depos will close in January; right?  January 20th?  And

19   you're going to do your reports after that.

20     It just doesn't make any sense to me to do class cert.

21   Plus, I have my summary judgment order which will be coming out

22   very soon.  You need to take that into account.

23     So I'm having you in to tell you we're not going to do

24   this until all of that's done.  You've got to set the table

25   before we get to something as significant as class cert in this

1   case.  And this is not -- as you know better than I do, this is

2   not a run-of-the-mill Rule 23 motion.  It's going to have some

3   issues.

4        So summary judgment, I'm not going to tie my hands, but I

5   expect to have it out before the end of the year.  And you need

6   to take that into account in your certification motion, both of

7   you.  And then finish your expert work and make sure that all

8   goes into the class cert motion as well.

9        It's going to be one and done.  I'm not going to do class

10  cert and then have you come back and say:  Oh, there's a

11  blockbuster revelation from the experts so we need to redo it.

12  Okay?

13       **MR. KRAMER:**  Sure, Your Honor.

14       **THE COURT:**  So I'm going to terminate all this.  You can

15  refile seasonably after the experts get their things done.

16       Now, let me ask you a question.  So the revised reports

17  were finished at the end of this month; is that right?

18       **MR. KRAMER:**  The rebuttals are due at the end of this

19  month --

20       **THE COURT:**  Rebuttals.  Okay.

21       **MR. KRAMER:**  -- Your Honor.

22       We now have the revised reports.

23       **THE COURT:**  Okay.  So you have those.  One last round is

24  coming of reports.

25       **MR. KRAMER:**  Just the rebuttals.  We have the

1  plaintiffs' --

2      **THE COURT:**  No, I know.  But everybody -- the rebuttals,

3  that's when everybody suddenly sees the light and that's when

4  their real opinions come out.  So you've got to go through

5  that.

6      Then you're going to do the depos by the end of January.

7      **MR. KRAMER:**  That's correct, Your Honor.

8      **THE COURT:**  Okay.  So when would you like to file?

9      **MR. KOROLOGOS:**  I think it may have been in early

10  February.  I think depos start --

11      **THE COURT:**  Oh.

12      **MR. KOROLOGOS:**  -- January.

13      **THE COURT:**  I thought the deadline was January 20th.

14      **MR. KRAMER:**  I think Your Honor is right.

15      **MR. KOROLOGOS:**  I think that's when it starts, Your Honor.

16      **THE COURT:**  No.  Last day is January 20th.

17      **MR. KOROLOGOS:**  Okay.  I apologize.  Forget that date.

18      **THE COURT:**  I only do end dates, not start dates.

19      So are you going to be able to meet that?  Are you telling

20  me that you can't do January 20th?

21      **MR. KOROLOGOS:**  We'll meet it, Your Honor.

22      **THE COURT:**  I mean, there are four experts; right?  Cowan,

23  Singer, Peterson, and Halm?

24      **MR. KRAMER:**  Correct, Your Honor.  There are two others on

25  the plaintiffs' side --

1       **THE COURT:**  Two more?

2       **MR. KRAMER:**  -- that we've already deposed and whose --

3       **THE COURT:**  Oh.

4       **MR. KRAMER:**  -- reports we've --

5       **THE COURT:**  They're done.

6       **MR. KRAMER:**  They're done.

7       **MR. KOROLOGOS:**  And there was one other on the defendant

8   side, but we've already deposed him as well.

9       **THE COURT:**  Okay.  Wow.  There's seven experts?

10      **MR. KOROLOGOS:**  Yes, Your Honor.

11      **THE COURT:**  Seven experts for a copyright case?

12      **MR. KRAMER:**  Your Honor, it's not our case.  It's the

13  plaintiffs' case.  We're just responding to their list of four.

14      **THE COURT:**  One of the bonus ones was yours.

15      **MR. KRAMER:**  Well, I appreciate that, Your Honor.  But I

16  don't think seven experts are necessary, and I don't think

17  experts are really germane to the class cert issues.  But I'm

18  perfectly content to put them off.

19      **THE COURT:**  All right.  Seven experts.  Okay.  Well, we'll

20  talk about that later.  We will talk about that.

21      But, all right.  So January 20th, we're good; right?

22  You're going to be able to finish it.

23      Okay.  When would you like to file the class cert motion?

24  How about, can you do it by March 1st?

25      **MR. KOROLOGOS:**  Yes, Your Honor.

1      **THE COURT:**  Is that too close?

2      **MR. KOROLOGOS:**  I think we can do that.

3      **THE COURT:**  Whatever that first Monday is in March, how

4   about that?

5      **MR. KOROLOGOS:**  First Monday in March?

6      **THE COURT:**  Not March.  I'm sorry.  February.

7      **MR. KOROLOGOS:**  That may be close.

8      **THE COURT:**  What would you like?  Do you want three weeks

9   after the 20th?  I don't want to go too far out because you

10  have a trial date that I want to actually move up.  So, yeah.

11     **MR. KOROLOGOS:**  Okay.  We appreciate that.

12     **THE COURT:**  Yeah.

13     **MR. KOROLOGOS:**  I don't know -- how about February 15?  I

14  don't know what day of the week that is.

15     **THE COURT:**  Okay.  That's about -- that's, like, three

16  weeks after the end of the dead- -- that seems reasonable.

17  You're just revising it.  Okay?

18     **MR. KOROLOGOS:**  Right.

19     **THE COURT:**  You already have what you have.  And I'm

20  assuming there'll be some revisions.  You will have to account

21  for summary judgment at a minimum.  So, okay.

22     **MR. KOROLOGOS:**  Yes, Your Honor.

23     **THE COURT:**  Okay.  And then you've already seen this,

24  90 percent of it, 80 percent of it.  How about two weeks, three

25  weeks to respond?

1          **MR. KRAMER:**  Three would work, Your Honor.

2          **THE COURT:**  Okay.  So we'll do -- did you say

3     February 15th?

4          **MR. KOROLOGOS:**  Yes, Your Honor.

5          **THE COURT:**  What day of the week is that?

6          **THE CLERK:**  Wednesday.

7          **THE COURT:**  How about February 13?  Is that a Monday?

8          **THE CLERK:**  Yes.

9          **THE COURT:**  Okay.  Let's do February 13th, Monday the 13th

10    for your revised class cert brief.

11         And then what's three weeks from that, Ms. Clark?

12         **THE CLERK:**  March 6.

13         **THE COURT:**  All right.  And then the opposition will be

14    March 6th.  And the reply, which is always optional, will be

15    March 13th.  Okay.

16         All right.  Now, I have you down for August 21st for

17    trial.  I would like to have you in earlier, mainly for my

18    reasons.  So how about end of June?

19         **MR. KRAMER:**  So -- Mr. Korologos, please.

20         **THE COURT:**  You have the burden of proof; so I'll start

21    with you.  Is that -- it's just maybe 90 days sooner than you

22    were planning.

23         **MR. KOROLOGOS:**  I'm not concerned about that, Your Honor.

24    I'm trying to mentally think about whether I've got a conflict

25    in another case.

1      **THE COURT:**  Well, how about this:  Rather than putting you

2   two on the spot, just think about:  I'd like to have you in at

3   the end of June.  I'd like to have you in before July 4th; so

4   I'm thinking end of June, middle of June, somewhere around

5   there.  You two discuss it and just pick two dates, Mondays.

6   Just pick two Mondays, and we'll go from there.  Okay?

7   All right.

8      Okay.

9      **MR. KOROLOGOS:**  May I raise one question?

10     **THE COURT:**  Yes, please.  Yeah.

11     **MR. KOROLOGOS:**  Does Your Honor wish to set at this point

12  an argument date for class cert?

13     **THE COURT:**  Not yet.  I'm not sure I'm going to need one;

14  but if I do have to, I'll have you in very briskly in March.

15  Okay?

16     **MR. KOROLOGOS:**  Thank you, Your Honor.

17     **THE COURT:**  All right.  Okay.  Now, before -- you have a

18  couple of discovery things.  A little bit surprising.  I

19  thought that had closed a long time ago.

20     But is there anything else before we get to those?

21  Defendant?

22     **MR. KRAMER:**  Don't think so, Your Honor.

23     So the briefing that we've already submitted in connection

24  with the class certification motion remains on file; right?

25     **THE COURT:**  No.  It's being terminated.  You're going to

1   start all over again.

2       **MR. KRAMER:**  Okay.  Okay.  I understand.

3       **THE COURT:**  I'm not going to read -- I'm not trying to --

4   I'm not going to do a quilt.  It's vacated.  It's done.  No

5   harm, no foul to anybody.  It's just off the books.

6       Then it's going to start all over again on March -- or

7   April -- whatever we said, February.

8       **MR. KOROLOGOS:**  Understood, Your Honor.

9       **THE COURT:**  Yeah.  Okay.  All right.  Anything else on the

10  plaintiffs before we get to the -- okay.

11      **MR. KOROLOGOS:**  No, Your Honor.

12      **THE COURT:**  All right.  Let's start with -- let's see.

13      Docket Number 199, this is from the plaintiffs.  Something

14  about CMI data.  Do you happen to have this here?  Do you have

15  it handy?  CMI data, takedown notice data.

16      **MR. KOROLOGOS:**  Yes, Your Honor.  I believe that is the

17  November 18th.

18      **THE COURT:**  Content ID, yeah.

19      **MR. KOROLOGOS:**  199, docket number?

20      **THE COURT:**  199, that's right.

21      **MR. KOROLOGOS:**  Yes, Your Honor.  That relates to

22  Your Honor's order of Docket Number 165.  And it is plaintiffs'

23  position that more was ordered to be produced in response to

24  that than we have received.

25      **THE COURT:**  What did you get?  You got something, didn't

1  you?

2       **MR. KOROLOGOS:**  We did get something.  And we got 90 days

3  instead of -- I think Your Honor ordered 30 days.

4       But one of the issues -- and this relates to --

5       **THE COURT:**  Yes.  So I said 30 days for CMI; 90 days for

6  takedown.

7       **MR. KOROLOGOS:**  Right.  And for the --

8       **THE COURT:**  And Content ID, yeah.

9       **MR. KOROLOGOS:**  For the 30 days on CMI, the issue is that

10 they limited their production to CMI with respect to that clip

11 file name that Your Honor may recall from the summary judgment.

12 They limited the production to instances where a takedown

13 notice had occurred.  And what that does is it biases the issue

14 of whether the information, the CMI that was removed in the

15 clip file name ends up showing up associated with the video or

16 not, because those are videos, if they're taken down, that

17 class members could find through searches.  So the odds are

18 much greater for those instances that clip file names, which

19 would have the title of the work, would be found.

20       **THE COURT:**  Do you want a random sample?  Is that what you

21 want?

22       **MR. KOROLOGOS:**  Random sample, whether it was taken down

23 or it wasn't taken down.

24       **THE COURT:**  Okay.  And you didn't get that?

25       **MR. KOROLOGOS:**  Correct.

1     **THE COURT:**  All right.  Random sample.

2     **MR. KRAMER:**  This one, I can speak to, Your Honor.  My

3   colleague, Ms. White, would speak to the rest.

4     **THE COURT:**  Sure.

5     **MR. KRAMER:**  But on this, I'm happy to engage.

6     **THE COURT:**  Okay.

7     **MR. KRAMER:**  The Court's order actually said a 90-day

8   random -- a 30-day random sampling of infringing videos.

9        What the plaintiffs asked the Court for when we were here

10  last was for a sampling of infringing videos.

11       We gave them exactly what they asked for before the Court

12  and what the Court ordered us to provide in its August 30

13  discovery order.

14       What plaintiffs are doing now is saying:  I didn't like

15  what I got.  I could use more.

16       But discovery closed five months ago.  They didn't ask for

17  this in their motion previously.  The Court ordered what it

18  ordered, and we went to considerable expense to give them what

19  the Court ordered us to provide.  Plaintiffs are just asking

20  for a seventh or eighth bite at the apple.

21     **THE COURT:**  Okay.  Just one second.

22     **MR. KOROLOGOS:**  May I respond to that, Your Honor?

23     **THE COURT:**  Well, my text order does say "random

24  sampling."  It doesn't say anything about infringing.

25     **MR. KRAMER:**  It does, Your Honor.

1    **THE COURT:**  I'm looking at it right here.  Where does it

2    say that?  Here's the text order.  I'll just jump to Number 4

3    (as read):

4            "For the disputed discovery letters," drop down

5            to Number 4, "the requested CMI data from a random

6            sampling of 30 days."

7    Period.  There's nothing in there about infringing.

8    **MR. KRAMER:**  I'm sorry, Your Honor.  The random sampling

9    of the requested CMI.  So what plaintiffs asked for, what

10   plaintiffs requested for CMI was a random sampling of CMI from

11   infringing videos.

12   **THE COURT:**  Do you happen to know which prior discovery

13   letter -- this text order is for Dockets Number 156, 151 --

14   sorry -- 159, and 161.  Which letter had the CMI defined as

15   infringing only?

16   **MR. KRAMER:**  Their July 29th letter brief at page 3.

17   **THE COURT:**  What docket number is that?

18   **MR. KRAMER:**  I don't have the docket in front of me,

19   Your Honor.

20   **MR. KOROLOGOS:**  156, Your Honor.

21   **MR. KRAMER:**  There it is.

22   **THE COURT:**  Oh, that's 156?  Okay.

23   All right.  So --

24   **MR. KRAMER:**  So in their July 29th letter, the plaintiffs

25   asked the Court to order defendants to produce two pieces of

1   data for 60 days of uploaded video files:  the CLFN metadata

2   and the infringing URL.  That's a quote.

3       And the Court granted half of that, gave them 30 days.  We

4   gave them 90 days.  But the word "infringing" --

5       **THE COURT:**  Let's just talk about the CMI.  One thing at a

6   time.

7       **MR. KRAMER:**  Yeah.

8       **THE COURT:**  So the request -- so you're saying Docket

9   Number 156 defined "requested CMI" just to be infringing

10  videos?

11      **MR. KRAMER:**  Correct.  For the CLFN metadata, their

12  request was for the data and the infringing URL.  Not all URLs,

13  but just the infringing URL.  They asked for 60 days.

14  The Court gave them 30.  We gave them 90.

15      **THE COURT:**  What does "random sampling" mean in that

16  context, then?  Random sampling of millions of infringing --

17      **MR. KRAMER:**  That's exactly right, Your Honor.  We went

18  through 1.8 million URLs that were the subject of takedown

19  notices, and we gave them the CMI associated with those.

20      There was CMI of roughly 650 out of the 1.8 million, and

21  most of it was garbage, but we gave it to them, and we gave

22  them considerably more than they asked for.

23      **THE COURT:**  All right.  Well, I mean, if that's what you

24  asked for, you got what you asked for.

25      **MR. KOROLOGOS:**  Not quite, Your Honor.  If you notice the

```
1    sentence, which is the middle paragraph --

2        THE COURT:  I don't have it.  I am going to go back and

3    look.  So, look, we don't need to beat this --

4        MR. KOROLOGOS:  It asks for the infringing URL.  It

5    doesn't limit it to the infringing URL.  Instead, what we asked

6    for, what we identified for the Court in that letter -- and

7    this is on page 2 of 156 -- was that (as read):

8            "With two exceptions, the parties have

9            conceptually agreed on the information to be

10           produced . . . ."

11       What we were asking for with Your Honor, the request in

12   the letter, was what we had been negotiating.  And as detailed

13   in 199, the meet-and-confer process was very clear that it was

14   not a sampling of infringing videos.  It was a random sampling.

15       THE COURT:  We'll get to that one.  Okay.  But right

16   now -- I'll look at 156, and I'll just decide whether you asked

17   for it or not.

18       MR. KOROLOGOS:  Thank you, Your Honor.

19       THE COURT:  Okay.  So that takes care of 199.

20       Now, what -- oh, I'm sorry.

21       MR. KOROLOGOS:  There are other --

22       THE COURT:  That takes care of one part.

23       MR. KOROLOGOS:  -- parts of 199.

24       THE COURT:  Yeah, that's right.  Okay.  So what about the

25   takedown data?
```

1          **MR. KOROLOGOS:**  On the takedown data, Your Honor, there

2     are some fields that we had been discussing with the parties --

3     or with the defendants, and they did not provide those.  And

4     the ones --

5          **THE COURT:**  Well, so my order last time was takedown data

6     from a random sampling for a period of 90 days.  Did you not

7     get that?

8          **MR. KOROLOGOS:**  We got some of that.  We didn't get all of

9     the fields in that takedown data.

10         **THE COURT:**  Oh.

11         **MR. KOROLOGOS:**  So, for instance, we didn't get the

12    country of origin.  We didn't get the type of work.  We didn't

13    get the takedown notice identifier.  Those are fields in their

14    database that they extracted.  They also gave us a date as

15    opposed to what's called a UNIX precise time piece of

16    information.

17         So these are fields that are in the same data for those

18    90 days.  They just didn't give us those fields.  They gave us

19    90 days' worth of other fields.

20         **THE COURT:**  How many fields are you missing?  Like, five?

21         **MR. KOROLOGOS:**  I think it's four, Your Honor.

22         **THE COURT:**  Four.

23         Okay.  All right.  Defendant?

24         **MS. WHITE:**  Good morning, Your Honor.  Lauren White.

25         So two points in response to this.  Plaintiffs' July 29th

```
 1   letter brief -- that's Docket 156 -- asked for seven categories
 2   of data.  We produced all of them.
 3        THE COURT:  Is it spelled out seven in Number 156?
 4        MS. WHITE:  It does.
 5        Plaintiffs are now asking for additional data that the
 6   parties discussed before they cut the meet-and-confer process
 7   short by filing a letter brief with Your Honor.
 8        Your Honor did not have occasion to consider their request
 9   for those data fields, and Your Honor's order did not
10   contemplate those additional data fields.
11        THE COURT:  Did you get the seven you asked for?
12        MR. KOROLOGOS:  (No verbal response.)
13        THE COURT:  If you asked for seven and you got seven,
14   that's it.
15        MR. KOROLOGOS:  I don't think that's right, Your Honor,
16   but 156 will inform that.
17        THE COURT:  Okay.  I'll take a look at it.  But if you got
18   all seven that you asked for, then that will be it for that.
19        MS. WHITE:  It's also worth noting, Your Honor, that we
20   offered to provide the additional fields that they were
21   requesting after the fact in satisfaction of the parties'
22   dispute, since we're now five months after the fact discovery
23   cutoff; but they couldn't agree to that offer, which is --
24        THE COURT:  That sounds odd.
25        Did you say "no" after --
```

1    **MR. KOROLOGOS:**  They offered that if we eliminated all of

2    these issues, Your Honor, which we think we have a strong basis

3    to move or we would not have moved.  And getting those few --

4    and I don't think it was all of those fields.

5        **THE COURT:**  All right.  Well, I don't need to hear too

6    much about the secret negotiations.  Okay.  All right.  I'll

7    look at that.

8        Okay.  Now, what about the Content ID statistics in

9    unreduced form?

10       **MR. KOROLOGOS:**  And there, Your Honor, we got an estimate

11   of a fraction.

12       **THE COURT:**  Last time I said you should get Content ID for

13   the U.S. from August 1, 2017, and 2018, 2019, and 2020.  So

14   I guess they were one-day snapshots.  Is that what we were

15   doing?

16       **MS. WHITE:**  That's correct, Your Honor.

17       **THE COURT:**  Okay.

18       **MS. WHITE:**  The dispute, as I understand it, is plaintiffs

19   requested, quote, percentages; and the Court ordered defendants

20   to produce.

21       **THE COURT:**  Well, I said the requested ID statistics.  I

22   don't know what that is.  Is that a percentage?

23       **MS. WHITE:**  The statistics asked for the number of

24   Content ID claims for certain figures and percentages for

25   others.  We produced exactly that.

1          They're now claiming that they didn't want percentages;

2    they wanted the numerator and denominator that went into

3    calculating the percentages.

4          That's not what they asked for.  That information is much

5    more sensitive.  The Court didn't have occasion to consider it

6    and didn't order defendants to produce it.

7          **THE COURT:**  Is that right?

8          **MR. KOROLOGOS:**  I believe we asked for the data to show

9    the percentage, and so we're looking for both the percentage,

10   but also the raw data.

11         **THE COURT:**  Are you asking --

12         **MR. KOROLOGOS:**  The fraction, they had to look at anyway.

13         **THE COURT:**  Are you asking for a fraction versus a

14   percentage?

15         **MR. KOROLOGOS:**  Well, it's numerator and denominator.

16         **THE COURT:**  You can get that from the -- you can convert

17   the percentage to a fraction.

18         **MR. KOROLOGOS:**  If you have the denominator, you can.  But

19   that's part of it.  We need --

20         **THE COURT:**  Why do you need to know this?

21         **MR. KOROLOGOS:**  Well, in part, it shows the issue of how

22   many videos are on the system and how many are handled with

23   Content ID, which handles --

24         **THE COURT:**  That's a rather indirect way.  You didn't just

25   ask that in a more direct fashion?  I mean, that's --

1    **MR. KOROLOGOS:**  We did not.

2    **THE COURT:**  Okay.  Well --

3    **MR. KOROLOGOS:**  The numbers are huge, and so just a

4    percentage doesn't help convey to the Court or to the Court and

5    the jury what these number are.  Content ID handles 1.5 billion

6    infringements per year.

7    **THE COURT:**  How much?

8    **MR. KOROLOGOS:**  1.5 billion per year.

9    They have these things called Transparency Reports that

10   describe how much infringement Content ID identifies, and it's

11   running -- the past three Transparency Reports, each of which

12   covers six months, they run at about 750 to 760 million per

13   six-month period.

14   **THE COURT:**  Hmm.

15   **MR. KOROLOGOS:**  A fraction doesn't quite convey the issue.

16   **THE COURT:**  Well, how hard would it be to give them the

17   fraction?

18   **MS. WHITE:**  It's not an issue of burden, Your Honor.

19   **THE COURT:**  By the way, when I took the bench, I was told

20   there'd be no math, but anyway...

21   **MS. WHITE:**  Precisely.  Plaintiffs asked for --

22   **THE COURT:**  Well, you've got the percentage.  Can't you

23   just unpack that a little bit and get to the --

24   **MS. WHITE:**  Again, it's not an issue of burden.

25   Plaintiffs asked for percentages, and we provided exactly that.

1      **THE COURT:**  Yes, I know, but you're here now, and I'm just

2  looking for a way of solving this.

3      Is it a big problem to give them the percentage -- the

4  fraction?

5      **MR. KRAMER:**  Your Honor, Dave Kramer.

6      The issue is sensitivity.  Plaintiffs are trying and have,

7  in many of these filings before the Court, produced a bunch of

8  information that really is quite sensitive to YouTube.  The

9  size of the YouTube video corpus is not a public figure.  It is

10  not something that belongs in the public record.

11      **THE COURT:**  Why is that -- just, I mean, why is that

12  sensitive?

13      **MR. KOROLOGOS:**  Because it moves markets, Your Honor.

14  Because people look to see how the size has changed from

15  quarter to quarter, month to month, year to year; and they care

16  about things like the size of the corpus of the videos on

17  YouTube.

18      **THE COURT:**  All right.  So you produce it under seal.

19  That's fine.  But why can't you just do it?  I'm not -- look,

20  that's provisionally.  I will look at it if a sealing motion is

21  presented to me, but just provisionally produce it under seal.

22  It's four days, basically; right?

23      **MR. KRAMER:**  It's a little bit more than that, Your Honor.

24  It's not a question of burden.  It's a question of sensitivity.

25  And if the Court would prefer we do it, we're happy to do it.

1     **THE COURT:**  Manage it with the protective order.  But why

2     don't you go ahead and produce that.

3       And what's the last thing, Mr. Korologos?

4     **MR. KOROLOGOS:**  There was an element in 199 about

5     constraint of production, and we've not been able to find out

6     how it's been constrained.

7     **THE COURT:**  Constrained without explanation.  So what does

8     this mean?

9     **MR. KOROLOGOS:**  They produced documents that they said --

10    or data that they said was readily available.  The problem is

11    that in discussions, they told us that some data is no longer

12    available.

13      And if Your Honor looks at their response that was filed

14    on the 12th, Document 210, they don't say that there's data

15    that has disappeared or is no longer readily accessible.  They,

16    instead, skirt around that issue.

17      So they did not request, in anticipation of the order that

18    was --

19    **THE COURT:**  All right.  So you have questions.  You just

20    want to know you got everything you're entitled to.  Is that

21    basically it?

22    **MR. KOROLOGOS:**  That's right, Your Honor.

23    **THE COURT:**  Okay.  Ms. White?

24    **MS. WHITE:**  Your Honor, we have produced all the data that

25    is available in YouTube's consolidated structured databases.

1    It is --

2          THE COURT:  Just unpack "available."  What does that mean?

3          MS. WHITE:  It is conceivably possible that there may be

4    some stray piece of data somewhere out there in the universe.

5    So we can't represent that the data that is in a consolidated

6    and queryable fashion for this volume, again, roughly

7    1.8 million URLs and all of the associated data --

8          THE COURT:  Let me ask you this.

9          MS. WHITE:  -- that came with the takedown notices --

10          THE COURT:  What's the probability that there is something

11    floating around in the way you described?

12          MS. WHITE:  Negligible.  We are not aware of any other

13    data out there in the universe.  We're simply caveating the

14    fact that data is not retained indefinitely and certain data

15    may conceivably exist somewhere else that we don't know about.

16          THE COURT:  I think that's it.

17          MR. KOROLOGOS:  If it's not there, it's not there,

18    Your Honor.  However, I'd like to inquire through the Court of

19    just a couple of things.

20          One, when they -- when I hear the other side talk about

21    accessibility and queryable, that doesn't mean there's not some

22    data that is no longer readily accessible that they still have.

23          THE COURT:  Well, no.  The issue is -- what I hear

24    Ms. White saying is they're just reluctant to swear under

25    penalty of perjury that 100 percent, with full certitude --

1      **MR. KOROLOGOS:**  That relates to my --

2      **THE COURT:**  -- have been produced.

3      **MR. KOROLOGOS:**  -- second issue, which is --

4      **THE COURT:**  And she's saying:  To the best of our

5   knowledge, yes -- in a lawyerly fashion, which everybody

6   does -- I can't promise you that we might find one little thing

7   somewhere.  But she described the odds as negligible, which

8   means to me that they've shaken every tree and looked under

9   every rock that's reasonable, and you're good.  Okay?  That's

10  the end of that.

11     Okay.  What's in 210?

12     So I'm going to look at those two issues.  I'll issue a

13  text order.

14     What's happening in 210?  This is from --

15     **MR. KOROLOGOS:**  210, Your Honor, is the response letter

16  to 199.

17     **THE COURT:**  Oh, okay.  All right.

18     **MR. KOROLOGOS:**  We just did that.

19     **THE COURT:**  So that takes care of both of them.  Okay.

20     That concludes our discovery letters.  I'm telling you

21  that, no more.  Okay?  Discovery is over now for half a year.

22  So that concludes our discovery letters.

23     **MR. KOROLOGOS:**  Your Honor, may I address that?

24     Your Honor at the last conference told us to put off some

25  privilege issues.  We have one privilege issue we would like to

1    raise.

2          **THE COURT:**  Privilege issue?

3          **MR. KOROLOGOS:**  Yes, Your Honor.

4          **THE COURT:**  Okay.  What's that?

5          **MR. KOROLOGOS:**  And that's about a document that was used

6    to prepare a witness at a deposition.

7          **THE COURT:**  Well, have I -- so, in other words, you think

8    the privilege has been waived?

9          **MR. KOROLOGOS:**  Yes, Your Honor.

10         **THE COURT:**  Okay.  Why don't you just send me a letter on

11   that.  I don't want to do it on the fly.

12         **MR. KOROLOGOS:**  We'll get that letter in this week.

13         **THE COURT:**  And send me the document too, will you?

14         **MR. KOROLOGOS:**  We don't have the document.  They have the

15   document.  But they've agreed --

16         **THE COURT:**  Oh, you didn't see it in the deposition?

17         **MR. KOROLOGOS:**  Correct.  We have not seen the document.

18         **THE COURT:**  But the witness looked at it and --

19         **MR. KOROLOGOS:**  And described it.

20         **THE COURT:**  And did the witness testify about it?

21         **MR. KOROLOGOS:**  Yes.  And they've agreed in meet and

22   confers to provide the document *in camera* to the Court, and so

23   we would request that they do that.

24         **MR. KRAMER:**  I don't think we have, Your Honor.  We

25   disagree with the position, obviously, that it's been waived.

1        And we too have one privilege issue that we would want to

2   bring before the Court.

3        **THE COURT:**  All right.  So just to make sure I understand,

4   the dispute isn't whether the document's privileged; the

5   dispute is whether the privilege has been waived.

6        **MR. KOROLOGOS:**  Yes.

7        **THE COURT:**  Okay.  That's easier.

8        **MR. KRAMER:**  Right.  And so it's a legal question about

9   whether, under the circumstances, there was a waiver.  And

10  there wasn't.  So we're happy to --

11       **THE COURT:**  Send me your letters.  Okay?

12       **MR. KRAMER:**  And we do have one privilege issue that we --

13       **THE COURT:**  Okay.

14       **MR. KRAMER:**  -- want to waive as well.

15       **THE COURT:**  I'll probably --

16       **MR. KRAMER:**  That we would want to bring as well.  I'm

17  sorry, Your Honor.

18       **THE COURT:**  I'll probably need some letters on that, but

19  go ahead.  What's the top level?

20       **MR. KRAMER:**  The top level is that with respect to the

21  plaintiffs' privilege log, they have redacted out, ostensibly

22  to comply with foreign law, all identifying information of the

23  parties to each communication.

24       **THE COURT:**  You don't know who --

25       **MR. KRAMER:**  We can't tell anything at all.  The log is

1  useless to us because we can't see if they're talking to

2  non-parties, if they're talking to lawyers, if they're talking

3  to employees.  The log doesn't show us.  So that's a problem.

4       THE COURT:  Do you have that here that I can take a look

5  at?

6       MR. KRAMER:  I do, Your Honor.  I'd be happy to hand it

7  up.

8       THE COURT:  Hand it to Ms. Clark.

9            (Document handed up to the Court.)

10      THE COURT:  That doesn't sound right.  This one, I might

11  be able to solve today.  Why would you -- a privilege log is

12  meaningless if you don't know who was involved.

13      MR. KOROLOGOS:  Your Honor, I'm not as up on top of this

14  one as I should be for today.

15      THE COURT:  How about one of your colleagues there?

16  Somebody here must know it.

17      MR. KOROLOGOS:  I believe, Your Honor, all of these relate

18  to AST.  And for AST, there are privilege requirements -- not

19  privilege -- privacy requirements about identification of

20  individuals.

21      We've offered to provide this kind of information through

22  access to documents, with respect to the produced documents, by

23  setting up a website for them in Canada.

24      THE COURT:  What is the basis of the redaction?  I don't

25  understand it.

1    **MR. KOROLOGOS:**  The redaction is to protect against

2    violations of privacy laws about disclosures of names of

3    people.

4         **THE COURT:**  In which country?

5         **MR. KOROLOGOS:**  Either Russia or -- I think it's primarily

6    Russia.

7         **THE COURT:**  Why would that trump U.S. civil procedure?

8         **MR. KOROLOGOS:**  It doesn't, but there is a lesser path

9    than requiring the production that could cause them to violate

10   the law in their home countries.

11        **THE COURT:**  I don't see how --

12        **MR. KOROLOGOS:**  And that is to give them access through

13   another country.

14        **THE COURT:**  I'm sorry, but withholding the recipient, the

15   author, and the cc's makes a privilege log completely useless.

16        **MR. KOROLOGOS:**  Well, one other --

17        **THE COURT:**  And I'm not -- we're not going to do that.

18        **MR. KOROLOGOS:**  -- short step that we could do,

19   Your Honor, is to provide --

20        **THE COURT:**  Well, no.  There's no short step.  You're

21   going to do a privilege log, a real privilege log.  Okay?

22        Now, I'll tell you what.  I'll take a short submission on

23   why you think there's some barrier to that.  But it's all --

24   you're going to do all of it.  We're not doing an abbreviated.

25   Otherwise, they have -- it's not fair to the defendant because

1    they can't figure out whether they have a challenge or not or

2    whether the privilege is properly asserted.  You know that.

3    This is all critical information that makes or breaks a

4    privilege assertion.

5        So you can send me one very short three-page letter about

6    the law of whatever you think it is, but I'm highly doubtful

7    that's going to be a barrier.  So get ready to --

8        **MR. KOROLOGOS:**  Can I have a week for that, Your Honor?

9        **THE COURT:**  Get ready to do a privilege log.

10       How about by Monday?

11       **MR. KOROLOGOS:**  Monday it is, Your Honor.

12       **THE COURT:**  Okay?  Tuesday?  You want -- whatever.  Monday

13   should be fine.  I'm assuming somebody thought this through

14   before they put the privilege log together.

15       **MR. KOROLOGOS:**  Yes.  It just wasn't me.

16       **THE COURT:**  Okay.  Monday will be great.

17       Don't respond.  If I need one, I'll call for one.  Okay?

18       **MR. KOROLOGOS:**  Thank you, Your Honor.

19       **THE COURT:**  And I may.  I don't know, but -- I don't know.

20       Okay.  Now, the main thing I do want you to do, though, is

21   talk about that trial date.  Is that going to be -- I mean, as

22   a conceptual matter, it seems workable; right, plaintiffs?

23       **MR. KOROLOGOS:**  Yes, Your Honor.

24       **THE COURT:**  Defendants?

25       **MR. KRAMER:**  There are a lot of folks we have to check

1   with that are witnesses, Your Honor, but I will certainly

2   commit to doing it and getting back to the Court next week.

3       **THE COURT:**  Witnesses, they're just going to have to come.

4   Okay.

5       **MR. KOROLOGOS:**  The one --

6       **THE COURT:**  Yes.

7       **MR. KOROLOGOS:**  -- additional issue, Your Honor, we've

8   talked a few times about having another round of mediation.

9       **THE COURT:**  Yeah, I'm glad you mentioned that because I

10  actually wanted to ask that.

11      So what's happening with that?

12      **MR. KOROLOGOS:**  Well, we've been waiting for a ruling on

13  class certification, which --

14      **THE COURT:**  Don't wait on that.

15      **MR. KOROLOGOS:**  -- the defendants have previously said --

16      **THE COURT:**  I'm not going to get that out till March.

17  Okay?  So, I mean, you can wait on it if you want, but that's

18  not going to be --

19      **MR. KOROLOGOS:**  We would prefer to go forward, but the

20  other side would prefer, at least based on their previous

21  statements, to wait.

22      **THE COURT:**  All right.

23      **MR. KOROLOGOS:**  We've --

24      **THE COURT:**  Not sure I can help you with that but --

25      **MR. KOROLOGOS:**  Well --

 1          **THE COURT:**  How about summary judgment?  Will that be

 2     helpful?  Is that something that might let you --

 3          **MR. KRAMER:**  It'll help some, for sure, Your Honor.

 4          **THE COURT:**  Short of class cert?

 5          **MR. KRAMER:**  We have a perfectly good working

 6     relationship, Your Honor; and as you suggested at one of the

 7     earlier case management conferences, if there's a possibility

 8     of getting this done, I'm not sure we'd need a formal

 9     settlement conference or mediation.  We're happy to talk to one

10     another.

11          But, yes, the class cert issue does tend to be a bugaboo

12     in this context.

13          **THE COURT:**  I typically don't think class cert is a

14     mediation trigger; but in this case, I think there's some

15     grounds to think that it is more of a settlement-related event

16     than it might be in other cases.  So I can't help you with

17     that.  I certainly can't compel people to negotiate if they're

18     not into it.

19          **MR. KOROLOGOS:**  Let us work --

20          **THE COURT:**  Maybe the summary judgment order will give you

21     a chance to start talking.  I don't know.  Maybe not.

22          **MR. KOROLOGOS:**  Regardless of how that comes out, I don't

23     think that's going to really change the scope of the overall

24     issues between the parties.  But let me work with Mr. Kramer,

25     and we will try and advance that.

1      **THE COURT:**  Typically, people like to negotiate before the

2   big orders come out because one of you is going to lose, from

3   your perspective.  So this is -- when you read those little

4   mediation books and game theory, this is the optimal time.

5      **MR. KOROLOGOS:**  That's true with respect to class cert as

6   well.

7      **THE COURT:**  That's what I'm saying.  This is the optimal

8   time to get together.  You don't wait till you're on the ropes.

9      So you know all this.  Okay.

10     **MR. KRAMER:**  Thank you, Your Honor.

11     **THE COURT:**  All right.  Thanks very much.

12     **MR. KOROLOGOS:**  Thank you, Your Honor.  Good to see you.

13              (Proceedings adjourned at 10:55 a.m.)

14                        ---o0o---

15

16                  <u>**CERTIFICATE OF REPORTER**</u>

17      I certify that the foregoing is a correct transcript

18   from the record of proceedings in the above-entitled matter.

19

20   DATE:  Friday, December 16, 2022

21

22

23              *Ana Dub*

24   _____

25      Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
                 Official United States Reporter