

Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050

December 19, 2022

<u>Via CM/ECF</u>

The Honorable James Donato
United States District Court**,** N.D. Cal.

     **Re:**    *Schneider, et al. v. YouTube, LLC, et al.,* **Case No. 3:20-cv-04423-JD**

Your Honor:

     In Dkt. 188, the Court directed that Defendants ("YouTube"), no later than today, proffer the basis for and seek the Court's leave to file a summary judgment motion against all plaintiffs based on the § 512(c) safe harbor of the Digital Millennium Copyright Act ("DMCA"). YouTube long ago detailed its intention to file two summary judgment motions in the operative Joint Case Management Statement, filed in January 2021. Dkt. 54 at 6:13. YouTube's plans drew no objection. Accordingly, YouTube proceeded to file the early summary judgment motion it had described against plaintiff Maria Schneider, who faced complete license and time bars on her individual copyright infringement claims, and was the only plaintiff to attempt to assert a separate, § 1202 copyright management information claim. Dkt. 164.

     YouTube now asks to move forward with "its more comprehensive motion on . . . the applicability of the DMCA safe harbors." Dkt. 54 at 6. The DMCA safe harbor would bar any prima facie infringement claim by Plaintiffs and obviate the need for the parties and this Court to devote significantly more time and resources to a trial in this matter. The current case schedule sets the last date for summary judgment motions as March 3, 2023. Dkt. 196 at 2. Defendants will present their DMCA motion whenever the Court deems appropriate.

     Through the DMCA, Congress established a set of "safe harbors" to protect online services from the burden and expense of copyright litigation that might otherwise attend many services' routine and daily operations. The safe harbors' applicability is routinely taken up and resolved via summary judgment proceedings.[1] Indeed, YouTube has secured summary judgment on its DMCA safe harbor defense to copyright claims before (*see Viacom Int'l Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110, 123 (S.D.N.Y. 2013) ("*Viacom III*")), and the defense should end this case too. Many elements of the safe harbor are not in dispute. The few that are can be resolved efficiently as a matter of settled law and undisputed fact.

     The DMCA safe harbor immunizes qualifying online services from claims of infringement that arise "by reason of" the "storage at the direction of a user" of copyrighted material on the

---

[1] *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 620 (9th Cir. 2018) (summary judgment based on DMCA); *Shelter Cap.*, 718 F.3d at 1036 (same); *Kinsley v. Udemy, Inc.*, 2022 WL 10966073, at *1 (9th Cir. Oct. 19, 2022) (same); *Davis v. Pinterest*, 2022 WL 1316566, at *17 (N.D. Cal. May 3, 2022); *Sid Avery & Assocs., Inc. v. Pixels.com, LLC*, 2021 WL 736258, at *4 (C.D. Cal. Feb. 24, 2021); *Rosen v. eBay, Inc.*, 2015 WL 1600081, at *21 (C.D. Cal. Jan. 16, 2015); *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673, at *15 (W.D. Wash. July 16, 2015); *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1118-19 (W.D. Wash. 2004); *Hendrickson v. eBay, Inc.*, 165 F. Supp. 2d 1082, 1094 (C.D. Cal. 2001).

service. 17 U.S.C. § 512(c). Its centerpiece is a notice-and-takedown mechanism by which copyright claimants send notices of alleged infringement to services that, in turn, must remove the allegedly infringing material. *Shelter Cap.*, 718 F.3d at 1031; *Motherless*, 885 F.3d at 600. To qualify, YouTube must meet certain threshold requirements: it must be a "service provider;" maintain a designated agent to receive DMCA takedown notices; adopt, publicize and reasonably implement a policy for terminating "repeat infringers" in "appropriate circumstances;" and accommodate "standard technical measures." YouTube easily satisfies these requirements. *See Viacom II*, 676 F.3d at 27.

Plaintiffs would rewrite aspects of YouTube's repeat infringer policy, but the DMCA grants services broad discretion to set the policies they deem appropriate. *See Motherless*, 885 F.3d at 615-16 (policy based on "multiple factors" and an individual's "judgment" sufficient). Moreover, YouTube's policy has already received judicial approval. *Viacom Int'l Inc. v. YouTube, Inc.*, 718 F. Supp. 2d 514, 528 (S.D.N.Y. 2010) ("*Viacom I*"), *aff'd in relevant part*, 676 F.3d 19 (2d Cir. 2012). So too has YouTube's implementation of its policy. *Id.; see also Motherless*, 885 F.3d at 618 ("Safe harbor eligibility does not require perfection, just 'reasonable' implementation of the policy 'in appropriate circumstances.'"). As the cases make clear, both the propriety of a repeat infringer policy and its implementation are appropriate for resolution on summary judgment. *See supra*, n.1.[2]

Once the service provider makes its threshold showing, the safe harbor immunizes it from infringement claims unless an individual plaintiff can prove as to a specific alleged infringement that the service: (1) failed to "expeditiously" remove the allegedly infringing material in response to a DMCA-compliant takedown notice; (2) obtained "actual" or "red flag" knowledge of the infringing activity and failed to "expeditiously" remove the allegedly infringing material: or (3) received a "direct[]" financial benefit from the infringing activity that it has the "right and ability" to control. *Motherless*, 885 F.3d at 603-04. The record makes plain that the plaintiffs here cannot show any of their individual infringement claims fall outside the safe harbor.

***Expeditious removal***.  First, Plaintiffs sent takedown notices to YouTube for **less than half** of the 745 alleged infringements at issue. And, in every such instance, YouTube expeditiously removed the allegedly infringing video. YouTube removals were within 24 hours in most cases—considerably faster than required. *See Kinsley v. Udemy, Inc.*, 2021 WL 1222489, at *5 (N.D. Cal. Mar. 31, 2021) (courts have held "5 to 14 days" to be "expeditious"). For hundreds of other allegedly infringing videos at issue, Plaintiffs sent no notice at all.

***Actual or red flag knowledge.***  Actual knowledge means "knowledge that is actual, not merely a possible inference from ambiguous circumstances." *Motherless*, 885 F.3d at 609. The only actual knowledge alleged by Plaintiffs are the takedown notices they sent. *See* Dkt. 190 at 10, 17. Even assuming that these takedown notices established actual knowledge (*cf. Shelter Cap.*, 718 F.3d at 1021 n.12), they would not disqualify YouTube from the safe harbor. Services retain safe harbor protection if "upon obtaining such knowledge," they "act[] expeditiously to remove" the infringing material (17 U.S.C. § 512(c)(1)(A)(iii)), as YouTube did.

---

[2] As for standard technical measures, while the statute requires a service to accommodate them, the Copyright Office itself has recognized that to date, none exists.  *See* Register of Copyrights, *Section 512 of Title 17* (May 2020), at 67 ("[M]ore than twenty years after passage of the DMCA, . . . not a single technology has been designated a 'standard technical measure' under section 512(i).").

Plaintiffs do not and could not advance any colorable arguments for red flag knowledge. *See Viacom III*, 940 F. Supp. 2d at 113-15 (rejecting red flag knowledge argument against YouTube). Red flag knowledge requires the service provider to be "subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person." *Shelter Cap.*, 718 F.3d at 1025 (quoting *Viacom II*, 676 F.3d at 31). Plaintiffs have not pointed to any such facts. YouTube users all promise that their uploaded videos are authorized, and Plaintiffs here granted all manner of additional licenses for the use of their works on YouTube. Those facts alone make it anything but obvious to YouTube that any specific video at issue in this case was infringing. Nor does the receipt of a takedown notice for one video create red flag knowledge that other instances of that work on YouTube are infringing. *Viacom III*, 940 F. Supp. 2d at 116-17; *see also Business Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 17177970, at *7 (S.D.N.Y. Nov. 22, 2022) (knowledge as to one alleged infringement does not support inference of knowledge of others). The DMCA is crystal clear: a service provider need not monitor its service or affirmatively seek facts indicating infringing activity. 17 U.S.C. § 512(m); *Viacom II*, 676 F.3d at 41 ("[T]he safe harbor expressly disclaims any affirmative monitoring requirement.").

*Right and ability to control and direct financial benefit.* A showing of the right and ability to control under the DMCA requires "something more" than "the general ability to locate infringing material and terminate users' access" to it. *Shelter Cap.*, 718 F.3d at 1030. It requires "substantial influence on the activities of users," such as "high levels of control over activities of users" or "purposeful conduct" that induces infringing activity by users. *Id.* There is no "something more" here. *See Viacom III*, 940 F. Supp. 2d at 117-123 (rejecting various arguments that YouTube had the "right and ability to control infringing activity"). Plaintiffs point to YouTube's AutoPlay and WatchNext features (*see* Dkt. 190 at 12-13), but those merely surface content for users. There are no allegations that YouTube played a role in choosing the content users uploaded, that YouTube's functions targeted infringing content, or that users did not retain ultimate control over the videos they watched.

Plaintiffs likewise cannot show that YouTube earned revenue "distinctly attributable to the infringing material at issue." *Motherless*, 885 F.3d at 613. Even where an ad may have run before or after videos containing allegedly infringing material, those ads did not run *because* of any infringing material. *See Downs v. Oath Inc.*, 385 F. Supp. 3d 298, 307 (S.D.N.Y. 2019) (no directly attributable financial benefit where site "simply ran advertisements on user-generated articles, some of which inevitably contained infringing material"). In any event, Plaintiffs have not offered evidence that YouTube generated any ad revenue at all in connection with most of their alleged infringements, let alone from surfacing the videos in recommendations. *See Motherless*, 885 F.3d at 613 (granting summary judgment to defendant where there was "no evidence that [it] made any money directly from the [plaintiff's] clips").

Courts consistently apply the DMCA's safe harbors as a matter of law to shield online services from overreaching copyright claims like those plaintiffs advance here. In the interest of promoting efficiency and the policies underlying the DMCA, YouTube thus asks that the Court allow it to proceed to enforce those essential protections via a motion for summary judgment.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

*/s/ David H. Kramer*