UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA SCHNEIDER, et al.,

          Plaintiffs,

      v.

YOUTUBE, LLC, et al.,

          Defendants.

Case No.  20-cv-04423-JD

**ORDER RE SUMMARY JUDGMENT**

      Maria Schneider is one of three named plaintiffs in a putative copyright class action against YouTube and Google (together, YouTube).  Dkt. No. 99 ¶ 16.  Schneider alleges in a first amended complaint (FAC) that YouTube and its users infringed her copyrighted musical compositions and sound recordings, and that YouTube facilitated infringement by removing copyright management information (CMI) from her works in violation of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202(b).  Dkt. No 99 ¶¶ 112-152.

      YouTube has asked for summary judgment on the grounds that: (1) Schneider licensed her works to YouTube; (2) Schneider did not present evidence of a DMCA violation; and (3) the claims are untimely.  Dkt. No. 163-10.  The parties' familiarity with the record is assumed, and summary judgment is granted and denied in part.

**LEGAL STANDARD**

Summary judgment, or more aptly judgement without a trial, may be granted under Federal Rule of Civil Procedure 56 when the moving party establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Yates v. Adams*, No. 15-cv-04912-JD, 2017 WL 783520, at *1 (N.D. Cal. Mar. 1, 2017); *see also Brickman v. Fitbit, Inc.*, No. 15-cv-02077-JD, 2017 WL 6209307, at *2 (N.D. Cal. Dec. 8, 2017) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 218, 323-24 (1986)). When a party asks for summary judgement on a contested factual record, the motion will be denied in short order. *See FTC v. D-Link Sys., Inc.*, No. 17-cv-00039-JD, 2018 WL 6040192, at *2 (N.D. Cal. Nov. 5, 2018). This principle is particularly germane here because the parties filed a mountain of conflicting declarations and other evidence.

Material facts are facts that may affect the outcome of the case, and a dispute over a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for either party. *Yates*, 2017 WL 783520, at *1 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To determine if there is a genuine dispute as to any material fact, the Court will view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor. *Id.* The Court will not independently "scour the record in search of a genuine issue of triable fact," and will rely on the nonmoving party to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotation omitted).

"The Court may dispose of less than the entire case and just portions of a claim or defense" on a motion for summary judgment. *Brickman*, 2017 WL 6209307, at *2. "A principal purpose of summary judgment 'is to isolate and dispose of factually unsupported claims.'" *Id.* (quoting *Celotex*, 477 U.S. at 323-24).

**DISCUSSION**

**I.      COPYRIGHT INFRINGEMENT CLAIMS**

For a claim of direct copyright infringement, a plaintiff must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *see also Yates*, 2017 WL

United States District Court
Northern District of California

783520, at *1.  This entails proof of "causation, which is commonly referred to as the 'volitional-conduct requirement.'"  *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 731 (9th Cir. 2019) (citation omitted).  When, as here, the defendant operates an online website, volitional conduct may be established through "evidence showing [the alleged infringer] exercised control (other than by general operation of [its website]); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution" of copyrighted works.  *Id.* at 732 (internal quotation omitted).  The key concept is that "direct copyright liability for website owners arises when they are *actively involved* in the infringement," and not passive handlers of content supplied by others.  *Id.*  (emphasis in original).

For a claim of contributory copyright infringement, a plaintiff "must establish that there has been direct infringement by third parties" as a threshold matter.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007).  Liability for contributory copyright infringement requires proof that a defendant:  "'(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'"  *VHT*, 918 F.3d at 745 (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788,795 (9th Cir. 2007)).  In the online context, material contribution means the defendant "'has *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works.'"  *Id.* (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017)) (emphasis in original).   "Inducement liability requires evidence of 'active steps … taken to encourage direct infringement," such as "'advertising an infringing use or instructing how to engage in an infringing use.'"  *Id.* (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005)).

For a claim of vicarious copyright infringement, a plaintiff must prove that a defendant: "'has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity.'"  *Id.* at 746 (quoting *Giganews*, 847 F.3d at 673).  A key component of vicarious liability is evidence that the defendant had the practical and technical ability to identify or screen out infringing material, but did not do so.  *Id.*  A failure to change operations to avoid

United States District Court
Northern District of California

distribution of infringing content "'is not the same as declining to exercise a right and ability'" to stop direct infringement by others.  *Id.* (quoting *Amazon*, 508 F.3d at 1175).

### A.     The 27 Works Not Infringed

The FAC alleges direct and indirect copyright infringement claims for 76 copyrighted musical compositions and two sound recordings owned by Schneider.  Dkt. No. 99 ¶ 60 n.7.[1] Now that fact discovery has closed, Schneider acknowledges that there is no evidence of infringement for 27 of her works.  *See* Dkt. No. 195 at 13:20-25, 14:10-14; Dkt. No. 163-10 at 22 n.8 (identifying the 27 works).  Consequently, summary judgment is granted in favor of YouTube for those 27 works.[2]

### B.     The PLA License

A defendant licensee is not liable for copyright infringement "if the challenged use of the work falls within the scope of a valid license."  *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019).  The scope of the license is a critical factor because a licensee may still be liable for infringement if it acted beyond the grant of a license.  *See MDY Indus. v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010); *see also Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999).  In addition, a license granted without authority will not insulate the licensee from an infringement claim.  *See Spinelli v. NFL*, 903 F.3d 185, 203 (2d Cir. 2018) ("[i]t is without question that the sublicensor may not convey more than he owns, and if a sublicensor has no right to issue a particular license, the sublicensee cannot acquire rights in the

---

[1] Schneider's opposition brief says she owns 85 copyrights on musical compositions "at issue in this litigation." Dkt. No. 170-2 at 2.  This number is based on untimely disclosures in violation of the Court's orders.  The deadline for Schneider to identify a final list of infringements was February 25, 2022. Dkt. No. 98 at 1-2.  On July 5, 2022, Schneider identified 8 additional infringements. Dkt. No. 172-12 at 3.  On September 9, 2022, Schneider served amended interrogatory responses that referred to the July 5, 2022, list of infringements and "any amendments of those Lists." Dkt. No. 172-10 at 6.  Consequently, copyrighted works not identified in the FAC or infringements identified after the February 25, 2022, deadline will not be considered here.  *See* Federal Rule of Civil Procedure 37(c).

[2] The works are: (1) *A World Lost*; (2) *CQ CQ, Is Anybody There?*; (3) *Dissolution*; (4) *Divided by two*; (5) *Espino*; (6) *Evelyn*; (7) *Finding flight*; (8) *Free fall*; (9) *Lembrança*; (10) *Nimbus*; (11) *Now and then*; (12) *One for Tad*; (13) *Prairie dance*; (14) *Recapitulation*; (15) *Returning*; (16) *Samba solstice*; (17) *Sanzenin*; (18) *Stone Song*; (19) *String Quartet No. 1*; (20) *The blasphemy*; (21) *The Sun Waited for Me*; (22) *The willow*; (23) *This 'n that*; (24) *Tranquilidade*; (25) *VIKINGS ANTHEM*; (26) *Waxwing*; and (27) *Willow Lake*. Dkt. No. 163-10 at 22 n.8.

United States District Court
Northern District of California

1  copyrighted works because the sublicensor did so anyway.") (internal quotation and citation

2  omitted); *see also* 3 Nimmer on Copyright § 10.15 (2022) ("[B]oth the licensee and the

3  sublicensee can be held liable for acting without authorization and thereby infringing the

4  licensor's copyright.") (internal quotation omitted).

5       The Court will look to state law to interpret a copyright license, but only to the extent that

6  state interpretive rules are consistent with "the purposes underlying federal copyright law."

7  *Oracle Am., Inc. v. Hewlett Packard Ent. Co.*, 971 F.3d 1042, 1051 (9th Cir. 2020) (internal

8  quotation omitted).  "Chief among these purposes is the protection of the author's rights."  *Id.*

9  (internal quotation omitted).

10       YouTube's main defense to Schneider's infringement claims is that it has a "blanket

11  catalog license" granted by Modern Works Music Publishing (MWP) for all of Schneider's

12  musical compositions.  *See* Dkt. No. 163-10 at 10.  On January 1, 2008, Schneider appointed

13  ArtistShare Music Publishing (AMP), her management company, as the "sole and exclusive

14  Administrator" of her musical compositions via a Music Publishing Administration Agreement

15  (AA).  *See* Dkt. No. 164-7 § 6.  The AA gave AMP the "exclusive right to administer the

16  Compositions" and "to execute in [Schneider's] name any licenses and agreements affecting the

17  Compositions."  *Id.*

18       AMP subsequently assigned "all its duties" under the AA to MWP, which was a 50% co-

19  owner of AMP.  *See* Dkt. No. 164-6 ¶¶ 2-4.[3]  On April 30, 2014, MWP and YouTube signed a

20  Publishing Licensing Agreement (PLA) that granted YouTube a license to compositions "owned

21  or controlled" by MWP.  *See* Dkt. No. 163-3 at 11, § 2(a).  This is the putative "blanket" license.

22       The scope of the PLA is broad.  It granted YouTube the right to: "(i) Store, Reformat,

23  make On-Demand Streams of, make Conditional Downloads of, and Display Publisher

24  Compositions as have been embodied in (A) User Videos, (B) Art-Tracks, (C) Audio-Only

25  Tracks, and (D) Label Videos and to make available Publisher Compositions on and through the

26

27  ─────────────────

28  [3] Although the date of the assignment from AMP to MWP is not clear in the record, Schneider did not challenge YouTube's licensing defense on that ground.  Nor did she challenge the assignment as improper under section 14(A) of the AA.  *See* Dkt. No. 164-7 § 14(A).

Google Services and Embedded YouTube Video Players; and (ii) reproduce, distribute, and prepare derivative works (including synchronization rights) based upon the Publisher Compositions, solely to the extent necessary for the purpose of engaging in the activities described in the preceding clause (i)." *Id.* § 2(a).

The PLA is potentially broad enough to cover all of Schneider's works-in-suit, and would seem to sound the death knell for her infringement claims. *See Great Minds*, 945 F.3d at 1109. Schneider does not dispute that the PLA, if applied, would bar the infringement claims. Consequently, the salient question is whether YouTube has demonstrated as a matter of law and undisputed fact that the PLA grants it a license to all of Schneider's works-in-suit.

It has not. The PLA grants YouTube a license only to compositions "owned or controlled" by MWP. *See* Dkt. No. 163-3 at 11, § 2(a). Viewing the record in the light most favorable to Schneider, the question of whether MWP owned or controlled Schneider's compositions is replete with factual disputes that preclude summary judgment.

To start, the record does not establish that Schneider granted any control or ownership rights to MWP. Schneider says she was never told about the assignment from AMP to MWP, that she has never seen a document that reflects the assignment, and that MWP has never been her subpublisher. *See* Dkt. No. 184 ¶¶ 19-23. YouTube suggests that this is immaterial, and "all that matters is the rights Schneider granted to AMP (and thus MWP) under the Administration Agreement." Dkt. No. 173 at 6. But the only evidence of the assignment from AMP to MWP is the declaration of Dan Coleman, the co-founder and president of MWP. *See* Dkt. No. 164-6. All Coleman says is that AMP assigned "all its duties" under the AA to MWP, and that MWP acts as "the worldwide subpublisher" for AMP. *Id.* ¶ 4. No other facts about the assignment are presented, and the assignment agreement itself, or any other evidence that might establish that MWP had control or ownership rights to Schneider's compositions, is not in the record before the Court.

The record also does not establish that Schneider's compositions were in the catalog of works that MWP provided to YouTube. Coleman says that MWP provided data files to YouTube that contain "information about works it controls, including but not limited to works by

6

Schneider," but those files are not in the evidence.  *See id.* ¶ 7.  Some evidence hints that MWP may have "supplied" some of Schneider's songs to YouTube.  For example, an internal MWP email says "I've updated Maria's songs in YT's claim database.  There are 10 titles that we supplied to YT in 2013 and 2014.  Luckily for Maria and us, the songs existed but had not yet been attached to any videos."  *See* Dkt. No. 171-3 at 2.  What, if anything, this had to do with the PLA is far from clear, particularly since eight of the ten titles appear to have been uploaded before the PLA's effective date of April 30, 2014.  *Id*. at 3.  Consequently, whether MWP controlled Schneider's works-in-suit and licensed them to YouTube via the PLA is a disputed question of fact to be resolved at trial.

YouTube's arguments to the contrary are unavailing.  It proffers some snippets from Schneider's communications with MWP, which are said to show that she "has known of the YouTube license and accepted its benefits for years."  Dkt. No. 163-10 at 11.  It also suggests that Schneider received royalty payment summaries from YouTube for several of her works, and that Schneider knew that MWP used YouTube's Content ID tool to monitor infringements of her works.  Dkt. No. 164-6 ¶¶ 5-8; Dkt. No. 163-4 (email from Coleman to Schneider says, "I'm not saying this YouTube track will generate anything more than fractions of pennies, but we can still 'claim' it on Maria's behalf if she wants us to."); Dkt. No. 164-10 (royalty summaries sent from AMP to Schneider showing that Schneider received royalties from YouTube between November 2015 and May 2016).

The problem for summary judgment is that all of this is in dispute.  Schneider states that she was not aware of YouTube royalties or even the PLA before this lawsuit, and that she never approved licensing her works to YouTube.  Dkt. No. 184 ¶¶ 25-29, 37-40.  She says the communications and royalty statements cited by YouTube did not disclose the existence of the PLA or MWP's licensing activities.  *See* Dkt. Nos. 163-4, 164-10.  These quintessential factual disputes preclude summary judgment for YouTube on the basis of the PLA.

While that is the end of the matter for present purposes, there is a legal question for the Court to resolve before trial.  The question goes to a contractual provision in the AA, the agreement in which Schneider named AMP the "sole and exclusive Administrator" of her musical

United States District Court
Northern District of California

compositions in 2008.  The parties hotly debate the validity and enforceability of the PLA in light of Section 7 of the AA.

Section 7 of the AA required advance notice and consent by Schneider for a license of her works.  As the section states:

> "YOUR CREATIVE CONTROL.  Notwithstanding anything to the contrary expressed or implied herein, we must notify you and obtain your prior written approval for any license we grant on your behalf. It is agreed and understood that either you or your designated agent, who you may designate in writing to us from time to time ("Designated Agent") can give consent under this §7.  We will deem to have received your consent under this §7 if, after ten (10) business days from the receipt of our request, we have not received a reply from you or your Designated Agent. Notwithstanding anything contained in this §7, you agree and understand that copyright laws and common business practices outside of the USA might hinder or preclude Administrator's efforts to obtain your consent in each instance.  Administrator agrees to require all subpublishers to comply with the terms of this §7 to the extent possible in their respective territories, but any inadvertent failure to timely obtain your consent will not be deemed a breach of this Agreement."

Dkt. No. 164-7 § 7.

There is little disagreement between the parties about the pertinent facts.  Schneider says that AMP or MWP never notified her or obtained her prior written approval before MWP granted the PLA license to YouTube.  *See* Dkt. No. 184 ¶ 29.  YouTube does not contend otherwise.

The battleground is the legal consequence of a lack of notice and consent.  New York law governs the AA.  *See* Dkt. No. 164-7 § 20.  Schneider says that the notice and consent provision was a condition precedent to AMP's, and therefore MWP's, power to grant a license.  *See* Dkt. No. 170-2 at 6-8.  If the condition precedent were not satisfied, the downstream grant of a license in the PLA would be null and void.  *Id.*  YouTube says that Section 7 is a "mere covenant" such that a failure to notify Schneider and obtain her written consent might have been a breach of the AA, but did not negate the license granted in the PLA.  *See* Dkt. No. 163-10 at 11-13.

The parties devoted a substantial portion of their briefs to this dispute.  Whether Section 7 of the AA is a covenant or a condition precedent is a question of law for the Court to decide.  *See Sohm v. Scholastic, Inc.*, 959 F.3d 39, 46 (2d Cir. 2020).

"Under New York law, a covenant is a 'manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made.'" *Id.* at 45-46 (quoting *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 460 N.E.2d 1077 (N.Y. 1984)).  A condition precedent is "'an act or event … which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *Id.* at 46 (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415 (N.Y. 1995)).

The distinction matters because the breach of a covenant gives rise to "a cause of action for breach of contract, not copyright infringement." *Graham v. James*, 144 F.3d 229, 236-37 (2d Cir. 1998) (internal quotation omitted).  But if a party fails to satisfy a condition precedent, "the rights dependent upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright." *Sohm*, 949 F.3d at 45 (internal quotation omitted); *see also Spinelli*, 903 F.3d at 203 ("[I]f a sublicensor has no right to issue a particular license, the sublicensee cannot acquire rights in copyrighted works because the sublicensor did so anyway.").

As a general rule, New York presumes that the terms of a contract are covenants rather than conditions, and "'[c]onditions precedent are not readily assumed.'" *Sohm*, 959 F.3d at 46 (quoting *Bank of N.Y. Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016)).  Although no magic words are required, a condition must be "'expressed in unmistakable language,'" namely in the "'linguistic conventions of condition--such as 'if,' 'on the condition that,' 'provided that,' 'in the event that,' and 'subject to.'" *Id.* (quoting *Bank of New York Mellon*, 821 F.3d at 305-06).

As these principles indicate, determining whether the notice and consent provision in Section 7 is a covenant or a condition precedent is not a matter of hard science.  A useful approach is to compare Section 7 to contractual terms that have been determined to be conditions.  *Sohm* provides a definitive example.  Plaintiff Sohm, a professional photographer, authorized agents to license his photos on his behalf.  959 F.3d at 42.  An agent granted licenses to Scholastic.  *Id.*  The Scholastic license agreements established fees for certain print-run ranges of Sohm's photos.  *Id.*

9

United States District Court
Northern District of California

Sohm sued for infringement after Scholastic exceeded the number of authorized print runs for some photos. *Id.* at 44. The Second Circuit concluded that Scholastic's compliance with the terms of the licenses, including the print-run limitations, was a condition precedent to its right to use Sohm's photos, and that Scholastic's overuse of the photos consequently constituted infringement. *Id.* 46-47. The court reached this conclusion on the basis of the plain text of the license agreements, which were "replete with the conditional language of conditions precedent-- 'unless,' 'conditioned upon,' 'except where specifically permitted'--thereby directly refuting the conclusion that the license agreements created only contractual covenants, the violation of which sounds in breach of contract." *Id.* at 47. The license also expressly warned that unauthorized use of the photos would be deemed infringing. *Id.* at 46-47.

Section 7 of the AA is strikingly different. The notice and consent provision does not use any of the language or words recognized as the indicia of a condition precedent. To the contrary, the provision simply says MWP "must" give notice and obtain consent, which is a usage more consonant with a covenant than a condition precedent. Dkt. No. 164-7 § 7. It bears mention that Section 7 provides that, in some case, namely those involving copyright issues "outside of the USA," an "inadvertent failure to timely obtain [Schneider's] consent" would not even be deemed a breach. *Id.* Overall, Section 7 is devoid of the conditional language of conditions precedent, and the Court may not "rewrite into a contract conditions the parties did not insert by adding or excising terms under the guise of construction." *Bank of New York Mellon*, 821 F.3d at 307.

The absence of conditional language in Section 7 is particularly telling because other terms in the AA are phrased as conditions precedent. *See id.* at 306 (omission of "the explicit language of condition" in a clause "is particularly significant" when the parties "employed precisely such language to establish undoubted conditions precedent" in other clauses). Section 6, for example, states that the power to grant a license to Schneider's print compositions is "*subject to* Paragraph 12(B)," which requires "prior written consent from [Schneider]." Dkt. No. 164-7 §§ 6, 12(B) (emphasis added). Section 14(A) states that "any rights we assign must be coterminous with this Agreement *unless* we have obtained your prior written approval to lengthen the duration of those rights." *Id.* § 14(A) (emphasis added). Section 15(A) states that "You will be deemed to have

10

consented to all royalty statements and other accounts rendered by us, and said statements and other accounts will be binding upon you and not subject to any objection for any reason, *unless you give us a specific objection in writing, setting forth the basis of your complaint.*" *Id.* § 15(A) (emphasis added). Section 15(C) states that "You will not be entitled to share in any advance payments, guarantee payments, or minimum royalty payments that we may receive *unless* such payments are made or credited in connection with your Compositions." *Id.* § 15(C) (emphasis added). Section 16 states that the parties agree to indemnify each other "*provided that* such claims are reduced to final, adverse judgment." *Id.* § 16 (emphasis added). Section 18 states that "Neither party will be deemed to be in material breach of any of its obligations hereunder *unless and until* the party claiming a breach will have given the other written notice." *Id.* § 18 (emphasis added). Other examples abound but the point has been made. The drafters of the AA knew how to use the language of a condition precedent when they wanted to, and chose not to do so in the notice and consent provision of Section 7.

Schneider's inapt case citations do not save the day for her. She says clauses that "require a property owner's prior written consent before transferring the property" are conditions precedent under New York law, *see* Dkt. No. 170-2 at 7, but none of the cases she cites involved a copyright or otherwise support such a sweeping proposition.

Federal law does not lead to a different conclusion. Schneider says that, under federal law, terms that limit the scope of a copyright license are construed as conditions, and a copyright claim may proceed "where the licensee's action (1) exceeds the license's scope (2) in a manner that implicates one of the licensor's exclusive statutory rights." *Id.* at 8 (quoting *MDY*, 629 F.3d at 939-40). That may be true, but the AA is not a copyright license. It is an administration agreement that grants AMP authority to manage Schneider's copyrighted works on her behalf. *See* Dkt. No. 164-7 § 6. Schneider did not present a good reason to extend this rule of construction to administration agreements.

Schneider's reliance on *Gardner v. Nike, Inc.*, 279 F.3d 774 (9th Cir. 2002), is misplaced. In *Gardner*, Nike granted Sony an exclusive license to use a copyrighted cartoon character in a range of products. *Id.* at 776. Sony assigned its rights under the license to a third party without

11

Nike's permission.  *Id.*  The license agreement was silent with respect to an assignment, *id.*, and the circuit concluded that, "absent explicit contractual language to the contrary," the Copyright Act prohibits an exclusive licensee from assigning its rights to a third party without the licensor's consent.  *Id.* at 781.  It determined that "there are strong policy reasons to place the burden on the licensee to get the licensor's explicit consent," which "assures that the licensor will be able to monitor the use of the copyright" and avoids "the troublesome and potentially litigious situations that could arise from allowing the original licensor to be excluded from the negotiations with a sublicensee."  *Id.*

Gardner* is not germane here.  The circuit had no cause to analyze New York law or the distinction between a covenant and a condition precedent with respect to an administrator's authority to grant licenses on a copyright owner's behalf.  In addition, Schneider gave her administrator broad authority to "disseminate, display, and license the performance and use of" her works and to execute "any licenses and agreements affecting the Compositions" in her name. *See* Dkt. No. 164-7 § 6.  That is a far cry from the situation in *Gardner*, where Nike granted an exclusive license to Sony with the expectation that only Sony would use its copyrighted work, and Sony transferred the license without permission.  *See* 279 F.3d at 776.

Schneider makes a passing comment to the effect that Section 7 is ambiguous and permits consideration of parol evidence to show that MWP believed it was required to seek Schneider's consent before granting a license.  Dkt. No. 170-2 at 12.  The point, underdeveloped as it is, is not well taken.  Under New York law, "'[a] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms.'" *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 41 (2d Cir. 2019) (quoting *Greenfield v. Philles Recs., Inc.*, 780 N.E.2d 166 (N.Y. 2002)).  If the language is "susceptible to differing interpretations, each of which may be said to be as reasonable as another, then the interpretation of the contract becomes a question of fact for the jury and extrinsic evidence of the parties' intent properly is admissible." *Id.* (internal quotation omitted).  The existence of an ambiguity must "'be ascertained from the face of an agreement without regard to extrinsic evidence.'"  *Id.* (quoting *Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001)).

1    The AA contains an integration clause which provides that "[t]his Agreement sets forth the entire

2    understanding between the parties."  Dkt. No. 164-7 § 20.

3        All of this weighs against the use of parol evidence here.  Section 7 is clear and

4    unambiguous on its face.  There is no room for massaging the plain text with extra-contractual

5    evidence.

6        **C.      The YouTube Terms of Service**

7        YouTube says it is entitled to summary judgment on 114 of Schneider's 381 infringement

8    claims because Schneider agreed to license several of her works under YouTube's Terms of

9    Service (TOS) when she and her agents uploaded them to YouTube.[4]  Dkt. No. 163-10 at 14.

10       The record establishes, without dispute, that a YouTube user must agree to the TOS when

11   creating an account or uploading a video.  Dkt. No. 164-4 ¶ 7.  The TOS grant YouTube "a

12   worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use, reproduce,

13   distribute, prepare derivative works of, display, and perform" content uploaded by the user.  Dkt.

14   No. 164-5 § 6(C).  The TOS also grant a non-exclusive license to YouTube users to "use,

15   reproduce, distribute, and perform" that content "as permitted through the functionality of the

16   Service and under these Terms of Service."  *Id.*  The TOS provide that "YouTube does not permit

17   copyright infringing activities," and require the user to agree that any content they upload "will not

18   contain third party copyrighted material, or material that is subject to other third party proprietary

19   rights, unless you have permission from the rightful owner of the material or you are otherwise

20   legally entitled to post the material and to grant YouTube all of the license rights granted herein."

21   *Id.* §§ 6(D), (F).

22       The record also establishes, again without a genuine dispute, that Schneider created a

23   YouTube account in 2012, and that she and third parties acting with her permission uploaded

24   videos to YouTube that feature some of her works-in-suit.  Schneider created a Maria Schneider

25   Official Page on YouTube in 2012, and has since uploaded videos "consisting of short clips" of

26   her music.  Dkt. No. 184 ¶¶ 41-42.  Schneider authorized others to post videos containing her

27

28   _____
     [4] YouTube derives these numbers from the final list of infringements that Schneider served on
     February 25, 2022.  *See* Dkt. No. 164-12.  Schneider does not disagree.

United States District Court
Northern District of California

United States District Court
Northern District of California

works to YouTube, including performances of her works *Dance, you monster, to my soft song*; *Choro Dançado*; *Allegresse*; *Last Season*; and *Evanescence. Id.* ¶ 44.  Schneider's agent uploaded a video recording of *Hang Gliding* on YouTube in 2013, *see* Dkt. No. 163-7, and a video containing the work *Cerulean Skies* was uploaded with Schneider's permission in 2008.  Dkt. No. 164-28.  Schneider's agent also uploaded videos containing the works *Sanzenin*; *Look Up*; *CQ CQ, Is Anybody There?*; *Data Lords*; *Sputnik*; *A Potter's Song*; *Bluebird*; *Stone Song*; and *A World Lost* with Schneider's permission.  *See* Dkt. No. 164-33 at 217:25-218:23 (deposition testimony of Schneider's agent).[5]

Under the plain language of the TOS, YouTube cannot be liable for direct infringement of these works.  *See Great Minds*, 945 F.3d at 1110.  Other district courts have reached the same conclusion in similar circumstances.  *See, e.g.*, *Bus. Casual Holdings, LLC v. YouTube, LLC*, No. 21-cv-3610 (JGK), 2022 WL 837596, at *5 (S.D.N.Y. Mar. 21, 2022) ("Under the plain language of the [TOS], YouTube cannot be liable for directly infringing any copyrights associated with any content that Business Casual has uploaded to its channel."); *Bus. Casual Holdings, LLC v. YouTube, LLC,* No. 21-cv-3610 (JGK), 2022 WL 17177970, at *6 (S.D.N.Y. Nov. 22, 2022) ("[T]he display of copyrighted video segments that Business Casual had previously uploaded to YouTube" "fell within YouTube's broad rights as the licensee of the plaintiff's YouTube videos").  Any use by YouTube would fall within its broad license to "use, reproduce, distribute, prepare derivative works of, display, and perform" Schneider's works.  Dkt. No. 164-5 § 6(C).

Schneider does not argue otherwise.  She makes a rather half-hearted attempt to gin up a factual dispute by suggesting that some of the videos contain only clips of her works, and that there may be infringements that predate the licenses granted by her uploads.  Dkt. No. 170-2 at 14-15.  None of that is supported by evidence, and consequently does not create a genuine issue of material fact to preclude summary judgment for YouTube on these direct infringement claims.

---

[5] YouTube says that Schneider authorized uploads of *Braided Together* and *Don't Be Evil*, but those works are not mentioned in the portions of the record that YouTube cites.  *See* Dkt. No. 163-10 at 15.  Summary judgment is consequently denied for the direct infringement claims based on those works.  YouTube also cites to pages from deposition testimony that were not included in the excerpts it submitted to the Court.  *See id.*

The TOS do not insulate YouTube from indirect infringement liability.  The TOS grant YouTube users a license to "use, reproduce, distribute, and perform" uploaded content only as permitted "under these Terms of Service," and prohibit uploads of infringing content.  Dkt. No. 164-5 §§ 6(C), (D).  By accepting the TOS, users agree that the content they upload "will not contain third party copyrighted material" unless they have permission from the owner or are otherwise legally entitled to post the material.  *Id.* § 6(D).  Consequently, infringing uploads are outside the scope of the license and can be the basis for infringement liability.  *See MDY*, 629 F.3d at 940.  YouTube concedes as much.  *See* Dkt. No. 173 at 8 n.4 ("YouTube does not contend that the TOS License fully immunizes its users from infringement.").  The TOS certainly does not allow YouTube to materially contribute to, induce, or supervise infringement by its users with impunity.  *See VHT*, 918 F.3d at 745-46.

Summary judgment is granted in favor of YouTube for the direct infringement claims based on these works:  (1) *Dance, you monster, to my soft song*; (2) *Choro Dançado*; (3) *Allegresse*; (4) *Last Season*; (5) *Evanescence*; (6) *Hang Gliding*; (7) *Cerulean Skies*; (8) *Sanzenin*; (9) *Look Up*; (10) *CQ CQ, Is Anybody There?*; (11) *Data Lords*; (12) *Sputnik*; (13) *Bluebird*; (14) *Stone Song*; and (15) *A World Lost*.  Summary judgment is denied for the indirect infringement claims based on those works.

## II.   TIME-BARRED CLAIMS.

YouTube says that many of Schneider's infringement claims are time-barred by a contractual one-year limitations period in the TOS, Dkt. No. 164-5 § 14, and the three-year limitations period in the Copyright Act, 17 U.S.C. § 507(b).  Dkt. No. 163-10 at 22.

As discussed, there is no serious dispute that Schneider accepted the YouTube TOS when she created a YouTube account in 2012.  *See* Dkt. No. 184 ¶ 41.  And by accepting the TOS, she agreed that "ANY CAUSE OF ACTION ARISING OUT OF OR RELATED TO THE SERVICES MUST COMMENCE WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION ACCRUES.  OTHERWISE, SUCH CAUSE OF ACTION IS PERMANENTLY BARRED."  Dkt. No. 164-5 § 14 (formatting in original).  The TOS do not define when a cause of action accrues. *Id.*  The record also establishes, without dispute, that Schneider had actual knowledge of 121

alleged infringing videos more than one year before she filed suit, and actual knowledge of 73 alleged infringing videos more than three years before she filed suit.  *See* Dkt. No. 164-23 at 4-8 (Schneider's interrogatory response listing the dates she became aware of each alleged infringing video).

### A.      The contractual limitations period is not unconscionable.

"[S]tatutes of limitations provide only a default rule that permits parties to choose a shorter limitations period."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013).  "'[I]n the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.'"  *Id.* (quoting *Order of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)).

The Copyright Act does not expressly prohibit such shortening.  *See* 17 U.S.C. § 507(b). Consequently, district courts have applied shortened contractual limitations periods to federal copyright infringement claims.  *See, e.g.*, *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1154-56 (C.D. Cal. 2001) (applying six-month contractual limitations period); *Evox Prods. LLC v. Chrome Data Sols., LP*, No. 16-cv-00057-JR, 2021 WL 1406879, at *5-6 (D. Or. Mar. 3, 2021) (applying two-year contractual limitations period); *NAFRA Worldwide, LLC v. Home Depot U.S.A., Inc.*, No. 1:12-cv-02808-AT, 2013 WL 12098772, at * 11 (N.D. Ga. Aug. 29, 2013) (applying one-year contractual limitations period); *Ashland, Inc. v. Achiever Bus. Sols., Inc.*, No. C2-05-247, 2005 WL 8161380, at *4 (S.D. Ohio Dec. 20, 2005) (same).

Schneider does not disagree with any of this, and she has not identified a case where a court declined to apply a shortened contractual limitations period to a copyright claim.  Her main objection is that the one-year limitations period in the TOS is unenforceable because it is unconscionable under California law.  Dkt. No. 170-2 at 21-23.

The point is not well taken.  Unconscionability has a procedural and substantive element. *Mohamed v. Uber Tech., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016).  The procedural prong focuses "on oppression or surprise due to unequal bargaining power."  *Id.* (internal quotation omitted).

United States District Court
Northern District of California

The substantive prong looks for "overly harsh or one-sided results." *Id.* (internal quotation omitted). Both prongs must be present to find a contract unconscionable, "but they need not be present in the same degree." *Id.* (internal quotation omitted). "'[U]nconscionability requires a substantial degree of unfairness *beyond a simple old-fashioned bad bargain.*'" *Id.* (quoting *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12 (Cal. 2016)) (emphasis in original).

Several courts have applied these principles to conclude that multiple provisions in the TOS are not unconscionable. *See, e.g.*, *Lewis v. YouTube, LLC*, 197 Cal. Rptr. 3d 219, 224 (Cal. Ct. App. 2015); *Song fi, Inc. v. Google Inc.*, 72 F. Supp. 3d 53, 62 (D.D.C. 2014). The Ninth Circuit has said the same in an unpublished memorandum decision. *See Darnaa, LLC v. Google LLC*, 756 F. App'x 674, 676 (9th Cir. 2018) (unpublished).[6]

Schneider's unconscionability arguments go nowhere. The TOS are not procedurally unconscionable in any meaningful way. To be sure, the TOS are adhesive and Schneider had no opportunity to negotiate their terms, but that is a minor degree of procedural unconscionability. *See Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 751 (Cal. 2015). There is no element of surprise because the one-year limitations period in the TOS "is clearly identifiable and printed in all caps." *Darnaa,* 756 F. App'x at 676; *see also Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (arbitration clause that was "in its own section, clearly labeled, in boldface," and not "buried in fine print," was not procedurally unconscionable).

Schneider says she had no meaningful choice but to accept the TOS because the only way she could submit takedown notices was by creating a YouTube account. *See* Dkt. No. 184 ¶ 47 ("In order to use tools such as YouTube's takedown notice webform as part of my attempts to police my copyrights and prevent infringement of my works, I needed to have a YouTube account and therefore accept the TOS."). The record demonstrates otherwise. YouTube's Content ID manager testified that YouTube's copyright operations team reviews "copyright removal requests that come from e-mail, fax, web form, copyright match tool, and the enterprise web form … and

---

[6] The fact that an unpublished decision is non-binding "does not preclude the Court from finding it to be persuasive." *United States v. Wolff*, No. 14-cr-00638-JD, 2015 WL 5960117, at *4 (N.D. Cal. Oct. 14, 2015), *aff'd*, 714 F. App'x 617 (9th Cir. 2017) (unpublished).

1   the web form used by content ID partners."  Dkt. No. 173-10 at 10:13-19; *see also* Dkt. No. 173-

2   11 at 16:4-11 (further testimony that "YouTube receives takedown notices through, you know, a

3   variety of means that are available to copyright owners to submit such notices, such as the web

4   form or copyright management tool or email, fax, you know, a variety of ways.").

5   The record also indicates that Schneider identified infringements "by conducting searches

6   for unauthorized copies of her works on YouTube using her name and/or the titles of the Works in

7   Suit or by being alerted to the video by a third party."  Dkt. No. 164-23 at 8 (Schneider's

8   interrogatory responses).  Why a YouTube account might be needed to run these searches is

9   neither obvious nor explained.  Schneider further undercut her suggestion of coercion by stating in

10   a deposition and a declaration that she created a YouTube account to advertise her music and share

11   her compositions with band members.  Dkt. No. 164-32 at 77:4-6; Dkt. No. 184 ¶¶ 42-43.

12   Overall, Schneider has not demonstrated that she had no "reasonably available"

13   alternatives to creating a YouTube account, and consequently has not shown that the TOS are

14   oppressive to the point of being procedurally unconscionable.  *See Am. Bankers. Mortg. Corp. v.*

15   *Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1413 (9th Cir. 1996) (quoting *Dean Witter*

16   *Reynolds, Inc. v. Super. Ct.*, 259 Cal. Rptr. 789, 795 (Cal. Ct. App. 1989)); *Darnaa*, 756 F. App'x

17   at 676 (YouTube's TOS were not oppressive because the plaintiff could have displayed his music

18   videos on other websites).

19   For substantive unconscionability, a one-year limitations period is not unduly one-sided or

20   shocking in any respect.  It is reasonable for YouTube to require users to accept a contract that

21   provides it with a "margin of safety" "for which it has a legitimate commercial need" because it

22   provides a service to millions of users.  *See Sanchez*, 353 P.3d at 749 (internal quotation omitted);

23   *see also Darnaa*, 756 F. App'x at 676.  Schneider suggests that one year is unreasonable because

24   the "gravamen" of her complaint is that YouTube thwarts her ability to police copyright

25   infringement, Dkt. No. 170-2 at 22, but she did not present evidence of a time squeeze.  To the

26   contrary, she identified 260 alleged infringements in the year before she filed suit, *see* Dkt. No.

27   164-23 at 4-8, which indicates that the one-year limitations period did not "work a practical

28

United States District Court
Northern District of California

18

abrogation of the right of action."  *Baxter v. Genworth N. Am. Corp.*, 224 Cal. Rptr. 3d 556, 571 (Cal. Ct. App. 2017) (internal quotation omitted).

### B.      YouTube did not waive the contractual limitations period defense.

Schneider says that YouTube waived any defense under the one-year limitations period in the TOS by not asserting it as an affirmative defense in the answer to the original complaint.  Dkt. No. 170-2 at 23-24.  That goes too far.  A defendant "may raise an affirmative defense for the first time in a motion for summary judgment … if the delay does not prejudice the plaintiff."  *Hung Lam v. City of San Jose*, 869 F.3d 1077, 1087 (9th Cir. 2017) (internal quotation omitted).  No prejudice is in evidence here.  Prejudice is unlikely at all because the one-year limitations period defense would have been effective--and apparent to Schneider--when the lawsuit was filed.  *See Owens v. Kaiser Found. Health Plan*, 244 F.3d 708, 713 (9th Cir. 2001); *see also Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

### C.      The separate accrual rule does not apply.

The TOS do not alter the rules of accrual in Schneider's favor.  A copyright infringement claim accrues "'when a party discovers, or reasonably should have discovered, the alleged infringement.'"  *Media Rights Tech., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1022 (9th Cir. 2019) (quoting *Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 706 (9th Cir. 2004)).  The "'separate-accrual rule'" provides that, "'when a defendant commits separate violations of [the Copyright Act], the statute of limitations runs separately from each violation.'"  *Id.* (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)).  Each new infringement "gives rise to a discrete 'claim' that 'accrue[s]' at the time the wrong occurs."  *Id.* (quoting *Petrella*, 572 U.S. at 671).

Schneider suggests that the separate-accrual rule saves her stale claims because YouTube has not shown "that there were no views or other displays of the infringing works during the statutory period, even if the infringing video was first uploaded prior to that period."  Dkt. No. 170-2 at 24-25.

That is not the law.  The Supreme Court has expressly stated that "separately accruing harm should not be confused with harm from past violations that are continuing."  *Petrella*, 572

19

U.S. at 671 n.6.  District courts have concluded that "the mere fact that a document remained online does not trigger the separate-accrual rule."  *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-cv-01308-JST, 2020 WL 4458890, at *5 (N.D. Cal. May 4, 2020) (collecting cases).  Schneider has not provided a good reason for a different outcome.  Nor has she demonstrated that any of the untimely infringements may have given rise to a separate act of infringement within the statutory or even TOS limitations periods.

Consequently, YouTube has established that the 121 alleged infringements that Schneider admits to having had actual knowledge of more than one year before bringing suit are barred by the one-year contractual limitations period in the YouTube TOS.  *See* Dkt. No. 164-23 at 4-8.

## III.   DMCA CLAIMS

Section 1202(b) of the DMCA states in pertinent part that:

> "No person shall, without the authority of the copyright owner or the law," "(1) intentionally remove or alter any copyright management information, (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law."

17 U.S.C. § 1202(b).

The statute has an additional scienter requirement of "knowing, or with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."  *Id.*  YouTube says that Schneider has no evidence to support her claim that YouTube removed or altered CMI in her works or acted with the scienter required by Section 1202(b).  *See* Dkt. No. 163-10 at 16-21.

This argument sinks on a reef of disputed facts.  To start, it is not necessary for Schneider to establish that YouTube itself removed or altered her CMI to state a claim under section 1202(b).  Schneider could still prevail under section 1202(b)(3) upon a showing that YouTube distributed her works "with the *knowledge* that CMI had been removed, even if [YouTube] did not remove it."  *Friedman v. Live Nation Merch.*, 833 F.3d 1180, 1187 (9th Cir. 2016) (emphasis in original).

United States District Court
Northern District of California

In addition, the parties offered considerably different characterizations of the evidence with respect to CMI.  Schneider highlighted portions of the record to the effect that nine videos of her works contained "clfn" metadata[7] at the time of upload, and that the clfn metadata was removed by YouTube.  *See* Dkt. No. 170-2 at 16; Dkt. No. 170-10 at 18; Dkt. No. 171-17 ¶ 163.[8]  YouTube says that clfn was never removed from those works because "the titles were publicly displayed with the videos in question on YouTube."  Dkt. No. 173 at 9.

Schneider also states that she gave YouTube a list of the International Standard Recording Codes (ISRCs) that Schneider included in her released works.  *See* Dkt. No. 170-2 at 16; Dkt. No. 164-21 at 16-22; Dkt. No. 170-6 at 4.  Schneider says that YouTube's interrogatory responses establish that none of the alleged infringing videos containing those works contain ISRCs.  *See* Dkt. No. 170-2 at 16; Dkt. No. 170-6 at 16 ("The uploaded file is then converted into an intermediate mezzanine format … The metadata in the uploaded file, if any, is not imported into the mezzanine format."); Dkt. No. 170-7 at 25 ("[T]he automated transcoding process does not import metadata, whether 'CMI' or not, from the original file to the transcoded files ultimately shown to viewers.").  Although YouTube initially said that ISRCs are "identifiers that can be assigned to specific sound recordings and musical compositions and used to identify them," *see* Dkt. No. 163-10 at n.4, it stated in its reply brief that ISRC codes can only be CMI for Schneider's copyrighted sound recordings, and not her musical compositions.  Dkt. No. 173 at 9.  Overall, the question of whether Schneider has identified works with altered or removed CMI is replete with disputed facts, and summary judgment is denied.

Fact disputes also preclude summary judgment on the issue of whether Schneider uses CMI to monitor her works.  YouTube says that Schneider and her agents "repeatedly testified that

---

[7] Schneider describes clfn metadata as "a tag that has been registered by Apple Inc. for ClipFileName and which carries the file name of a clip used as a component of the resulting video."  Dkt. No. 170-2 at 16 n.3.  YouTube does not seriously dispute this description.

[8] YouTube objects that Schneider's disclosure of this evidence is untimely and should be excluded under Federal Rule of Civil Procedure 37(c) because it was served after YouTube moved for summary judgment on August 26, 2022.  Dkt. No. 173 at 8-9.  But the record indicates that Schneider met the expert disclosure deadline of September 1, 2022, *see* Dkt. No. 170-2 at 16; Dkt. No. 155, and served amended interrogatories shortly thereafter.  The clfn evidence will not be excluded.

they did not use any embedded metadata (ISWC, ISRC or otherwise) as CMI to protect her works from infringement." Dkt. No. 163-10 at 17.  Schneider says YouTube mischaracterizes the testimony, and that Schneider's agent stated that he was unable to use metadata on YouTube because YouTube does not permit such searches.  Dkt. No. 170-2 at 17.

So too for the issue of scienter.  Under section 1202(b), a plaintiff may establish scienter by "demonstrating a past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions."  *Stevens v. Corelogic*, 899 F.3d 666, 674 (9th Cir. 2018).  YouTube reported more than 759 million copyright claims made through Content ID in the second half of 2021, *see* Dkt. No. 171-16 at 11, and it admitted that its Content ID system uses CMI metadata to police infringement of copyrighted works.  Dkt. No. 170-9 at 35-36.  While YouTube tries to shrug this away, it indicates a factual dispute that a jury will need to resolve.

YouTube closes with the suggestion that Schneider's DMCA claims are untimely under the TOS and Copyright Act limitations periods.  Dkt. No. 163-10 at 24.  The record indicates that in 2017, Schneider submitted comments to the U.S. Copyright Office describing how YouTube was "Flagrantly Violating Section 1202 of the DMCA."  Dkt. No. 163-6 at 1.  YouTube says that this proves that Schneider learned about her alleged DMCA claims long before she filed suit.  Dkt. No. 163-10 at 24.  It may be that Schneider was doubtful about YouTube's DMCA practices in 2017.  But YouTube presents no evidence demonstrating that Schneider discovered, or reasonably should have discovered, the bases for her specific Section 1202 claims outside the limitations period.

**CONCLUSION**

Summary judgment is granted for YouTube with respect to (1) all infringement claims based on the 27 works for which Schneider failed to identify an infringement; (2) direct infringement claims based on the 15 works that were uploaded to YouTube by Schneider or with her permission; and (3) the 121 alleged infringements that Schneider had actual knowledge of more than one year before filing suit.  Summary judgment is denied in all other respects.

The parties are directed to jointly file by January 12, 2023, a numbered list of Schneider's remaining works-in-suit and infringement claims.

**IT IS SO ORDERED.**

Dated:  January 5, 2023

_____
JAMES DONATO
United States District Judge