George A. Zelcs (pro hac vice)
  *gzelcs@koreintillery.com*
Randall P. Ewing, Jr. (pro hac vice)
  *rewing@koreintillery.com*
Ryan Z. Cortazar (pro hac vice)
  *rcortazar@koreintillery.com*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750

Stephen M. Tillery (pro hac vice)
  *stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
  *sberezney@koreintillery.com*
Carol O'Keefe (pro hac vice)
  *cokeefe@koreintillery.com*
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844

Joshua Irwin Schiller, CA Bar #330653
  *jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street
41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800

Philip C. Korologos (pro hac vice)
  *pkorologos@bsfllp.com*
Joanna Wright (pro hac vice)
  *jwright@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

*Attorneys for Plaintiffs Maria Schneider,
Uniglobe Entertainment, LLC, and AST Publishing Ltd.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES** |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD,<br><br>Counterclaim Defendants. | |

**PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

I.   YouTube's Repeat Infringer Policy Does Not Satisfy DMCA Eligibility
     Conditions. ........................................................................................................ 2

     A.   YouTube Prevents Collection of Necessary Information. ..................... 3

     B.   YouTube Fails to Assess Strikes in "Appropriate Circumstances". .... 4

II.  YouTube Does Not Accommodate and Interferes with Standard Technical
     Measures. ........................................................................................................... 7

III. Factual Disputes Exist on the Additional DMCA Requirements. ..................... 8

     A.   YouTube Controls and Profits from Infringement. ............................... 8

     B.   YouTube Has Actual and Red Flag Knowledge of Plaintiffs' Infringements. ...... 9

     C.   Allowing Uploads Instead of Blocking Infringements Prevents Expeditious
          Removal. ............................................................................................. 10

CONCLUSION ............................................................................................................ 10

PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES

1

## <u>TABLE OF AUTHORITES</u>

2

**Cases**

3

*A&M Records v. Napster,*
    239 F.3d 1004 (9th Cir. 2001) ................................................................................................9

4

*A&M Records v. Napster,*
    No. C 99-05183 MHP, 2000 WL 573136 (N.D. Cal. May 12, 2000) ...................................2

5

*Arista Records v. Myxer Inc.,*
    No. CV 08-03935 GAF JCX, 2011 WL 11660773 (C.D. Cal. Apr. 1, 2011) ......................10

6

7

*Columbia Pictures Indus. v. Fung,*
    710 F.3d 1020 (9th Cir. 2013) ...........................................................................................2, 9

8

*EMI Christian Music Group v. MP3tunes,*
    844 F.3d 79 (2d Cir. 2016) ....................................................................................................2

9

*Fonovisa v. Cherry Auction,*
    76 F.3d 259 (9th Cir. 1996) ...................................................................................................9

10

*Mavrix Photographs v. Livejournal,*
    873 F.3d 1045 (9th Cir. 2017) ...............................................................................................9

11

12

*OpenTV v. Netflix,*
    76 F. Supp. 3d 886 (N.D. Cal. 2014) ...................................................................................10

13

*Peasley v. Spearman,*
    No. 15-CV-01769-LHK, 2017 WL 5451709 (N.D. Cal. Nov. 14, 2017) ............................10

14

*Perfect 10 v. CCBill,*
    488 F.3d 1102 (9th Cir. 2007) ...........................................................................................1, 3

15

*Perfect 10 v. Giganews,*
    993 F. Supp. 2d 1192 (C.D. Cal. 2014) .............................................................................1, 4

16

17

*UMG Recordings v. Shelter Cap. Partners,*
    718 F.3d 1006 (9th Cir. 2013) .............................................................................................10

18

*Ventura Content v. Motherless,*
    885 F.3d 597 (9th Cir. 2018) .............................................................................................1-8

19

*Viacom Int'l v. YouTube,*
    718 F. Supp. 2d 514 (S.D.N.Y. 2010) ...............................................................................6, 7

20

*Viacom Int'l v. YouTube,*
    940 F. Supp. 2d 110 (S.D.N.Y. 2013) ...............................................................................7, 9

21

22

*Viacom Int'l. v. YouTube,*
    676 F.3d 19 (2d Cir. 2012)……………………………………………………………….7

**Statutes**

23

17 U.S.C. § 512 ...................................................................................................................passim

24

25

26

27

28

PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES

1

2          Plaintiffs and the putative class respectfully submit this proffer of evidence pursuant to this

3     Court's order [ECF 219] and in opposition to Defendants' December 19, 2022, letter [ECF 218]

4     requesting leave to file successive summary judgment motions ("Letter" or "Def. Ltr.").

5                                      **INTRODUCTION**

6          YouTube is only eligible for safe harbors under 17 U.S.C. § 512(c) if it first satisfies the

7     DMCA's two "Conditions for Eligibility" required by section 512(i).  Thus, YouTube is eligible

8     for safe harbor "only if" it (1) "has adopted and reasonably implemented" a "policy that provides

9     for the termination in appropriate circumstances of subscribers and account holders of the service

10    provider's system or network who are repeat infringers" *and* (2) "accommodates and does not

11    interfere with standard technical measures."  17 U.S.C. § 512(i)(1)(A)-(B).  The failure to satisfy

12    *either* of these threshold conditions makes Defendants ineligible for DMCA safe harbors.

13    *Perfect 10 v. Giganews*, 993 F. Supp. 2d 1192, 1196 (C.D. Cal. 2014) ("To be eligible for any of

14    the four safe harbors stated in § 512(a)-(d), a service provider must first meet the threshold

15    conditions set out in § 512(i).").  Both eligibility conditions are in dispute in this case.

16         The parties dispute whether YouTube has implemented a repeat infringer policy because a

17    service provider may "'not actively prevent copyright owners from collecting information needed

18    to issue'" a DMCA takedown notification.  *Ventura Content v. Motherless,* 885 F.3d 597, 617 (9th

19    Cir. 2018) (quoting *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109 (9th Cir. 2007)).  ▮▮▮▮▮▮

20    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22    ▮▮  Further, to be reasonably implemented, a repeat infringer policy must "under 'appropriate

23    circumstances'" result in termination of "users who repeatedly or blatantly infringe copyright".

24    *Id*.  Yet, YouTube's policy has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The parties dispute whether Content ID identifies infringements and, if it does,

26    whether it is reasonable to forego copyright strikes for the billions of infringements it catches.

27    YouTube only assesses strikes for infringements identified by a DMCA-compliant takedown

28    notice, yet nothing in the DMCA allows such a restriction.  Independently, the parties dispute

1   whether digital fingerprinting technology is a standard technical measure ("STM").  ██████

2   ████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████

4   ██████████████████████████

5       *Only if* Defendants satisfy both threshold conditions, do the DMCA's three separate and

6   additional requirements come into play as forth in 17 U.S.C. § 512(c)(1)(A)-(C) and listed in the

7   Court's order [ECF 219].  *See Motherless*, 885 F.3d at 614 ("Congress promulgated subsection (i)

8   to limit the eligibility for safe harbor treatment.").  In essence, these additional requirements

9   consider whether Defendants receive a financial benefit from infringing activity that they control

10  or whether they had actual or red flag knowledge of infringement and failed expeditiously to

11  remove it.  17 U.S.C. § 512(c)(1)(A)-(C).  Disputes of material fact pervade these additional

12  considerations including, *e.g.*, ██████████████████████ (Ex. 17 at -882[1])

13  establishes that YouTube has control over and benefits from infringing activity given that

14  YouTube selects and displays videos, including infringing videos, without users' involvement.

15      Numerous factual disputes exist precluding an award of summary judgment on the DMCA

16  and Defendants' request for leave should be denied.  *EMI Christian Music Group v. MP3tunes*,

17  844 F.3d 79, 90–91 (2d Cir. 2016) (fact issue precluded summary judgment on DMCA issue);

18  *Columbia Pictures Indus. v. Fung*, 710 F.3d 1020, 1044 (9th Cir. 2013) (affirming summary

19  judgment holding defendant did not qualify for DMCA safe harbor); *A&M Records v. Napster*,

20  No. C 99-05183 MHP, 2000 WL 573136, at *10 (N.D. Cal. May 12, 2000) (denying motion for

21  summary judgment on DMCA issue).

## I.    YOUTUBE'S REPEAT INFRINGER POLICY DOES NOT SATISFY DMCA ELIGIBILITY CONDITIONS.

YouTube may only invoke DMCA safe harbors if it first "adopts" and "reasonably

implements" a policy that terminates "in appropriate circumstances" "subscribers and account

holders" of YouTube "who are repeat infringers."  *Motherless,* 885 F.3d at 614; *see also* 17 U.S.C.

---

[1] All numerical exhibits cited herein ("Ex. __") are attached to the Declaration of Joanna Wright in Support of Plaintiffs' Proffer of Evidence Concerning DMCA Factual Disputes.

§ 512(i).  The parties dispute whether YouTube has reasonably implemented such a policy.

**A.      YouTube Prevents Collection of Necessary Information.**

The Ninth Circuit has held "that 'a service provider implements a policy' only if it '"does not actively prevent copyright owners from collecting information needed to issue"'" DMCA takedown notifications.  *Motherless,* 885 F.3d at 617 (quoting *CCBill,* 488 F.3d at 1109).  Plaintiffs contend that YouTube "actively prevents" copyright owners from "collecting information" necessary to identify infringement on the platform and submit a takedown notice.

*First,* ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ (Ex. 19 at -191; Ex. 3— Goodrow Dep. at 17:2-22), ██████████████████████████████████████████████ ██████████████████████████████ (Ex. 10—Winograd Rpt. at ¶¶ 47-52, 58-60, Exh. D; Ex. 29—Transparency Report for H1 2022 at 2 (YouTube recognizing that search is required for takedown via the webform);). ███████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ (*See* Ex. 10—Winograd Rpt. at ¶¶ 52-54, 72, 89; Ex. 3—Goodrow Dep. at 75:20-76:13; Ex. 7—Zhu Dep. at 41:11-42:5.)  This ████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████ *Second,* █████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ (Ex. 10—Winograd Rpt. at ¶¶ 66-70; Ex. 7—Zhu Dep. at 46:19-23; Ex. 2—Bill Dep. at 125:17-126:14; 127:17-128:7.)  *Third*, YouTube's Terms of Service ("TOS") does not allow copyright holders to use "automated means" to search the ███████ of YouTube videos which prevents the use of third-party digital fingerprinting technology (irrespective of whether that technology is an STM) to find infringement.  (Ex. 14—YT Terms of Service at § 4(H).).  At the same time, YouTube prevents the use of web-scraping tools which would create a copy of some or all of the YouTube platform

PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES

1  to allow third-party digital fingerprinting technology to be run on that copy (rather than directly on

2  the YouTube platform) to identify instances of infringement.  (*See* Ex. 13—RFA Nos. 61-62.)

3        **B.**      **YouTube Fails to Assess Strikes in "Appropriate Circumstances".**

4        The implementation of a policy "is reasonable if, under 'appropriate circumstances,' the

5  service provider terminates *users* who repeatedly or blatantly infringe copyright." *Motherless*, 885

6  F.3d at 617 (emphasis added); *Giganews*, 993 F. Supp. 2d at 1196.  YouTube's policy, however, is

7  crafted to avoid assessing copyright strikes in many instances, thereby failing to terminate "repeat

8  infringers" in "appropriate circumstances".  17 U.S.C. § 512(i)(1).

9        *First*, YouTube does not assess copyright strikes for any infringements caught by

10  Content ID.  (Ex. 31 at -096.)  Content ID catches approximately *1.5 billion instances of copyright*

11  *infringement per year*, constituting "over 99% of all copyright actions on YouTube" regardless of

12  whether the rightsowner has chosen to block or monetize the infringing video.  (Ex. 27—

13  Transparency Report for H1 2021 at 4 ("over 99%"), 10; Ex. 29—Transparency Report for H2

14  2021 at 4 ("over 98%"), 10.)  Thus, *nearly all* of the infringement caught on YouTube is insulated

15  from its repeat infringer policy and "subscribers and account holders" who upload infringements

16  caught by Content ID are not assessed copyright strikes.  (Ex. 31 at -096.)  Defendants dispute the

17  unreasonableness of this exemption arguing that "Content ID does not identify ***infringements*** at

18  all." [ECF 198 at 12 n.6 (emphasis in original)]; *see also* Ex. 8—Zhu 30(b)(6) Dep. at 30:17-

19  32:2.)  This assertion contradicts Defendants' own documents, however: █████████████

20  ████████████████  (Ex. 25 at -783; *see also* Exs. 27-29—Transparency Reports at 12

21  ("Content ID's systems automatically detect potential infringement"); Ex. 24—How Google

22  Fights Piracy at 14, 23, 25 ("To avoid claiming videos which may not be infringing", "Through

23  Content ID, creators and rightsholders can earn money even when their work hasn't been properly

24  licensed by the uploader.".)  Indeed, Defendants' assertion is also belied by the billions of

25  instances where YouTube (i) monetizes an upload caught by Content ID, which diverts revenue to

26  the rightsholder and away from the uploader or (ii) blocks at the direction of the rightsholder an

27  upload caught by Content ID; both such actions are legitimate only if the upload caught by

28  Content ID was an infringement by the uploader.  (*See* Ex. 29—Transparency Report for H1 2022

1  at 1 ("$7.5 billion to rightsholders from ads alone as of December 2021, from content claimed and

2  monetized through the tool", *i.e.*, through Content ID.).)

3        *Second*, YouTube ███████████████████, not "subscribers and account holders",

4  17 U.S.C. § 512(i)(1)(A), or "users", *Motherless*, 885 F.3d at 617, ████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████ (Ex. 22 at -

7  384; Ex. 8—Zhu 30(b)(6) Dep. at 20:8-25; Ex. 21 at -918.) ████████████████

8  ████████████████████████████████████████████████████

9  ████████ (Ex. 22 at -387.) ████████████████████████████

10 ████████ (Ex. 20 at -390, -391) ████████████████████████

11 ████████████████████████████████ (Ex. 22 at -384; *see also*

12 Ex. 20 at -391; Ex. 21 at -918) ████████████████████████████

13 ████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████

16 ████████████████████████████████████████████████████

17 ████████████████ (Ex. 23 at -059, -064.) ████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████████████████████ (Ex. 12—Am. Resp. to Rog. 4 (confirming "three-

21 strike" policy); Ex. 23 at -059 ████████████████████████████;

22 Ex. 8—Zhu 30(b)(6) Dep. at 23:12-17.)

23       *Third*, an entire category of YouTube users, ████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████████

26 ████████████ (Ex. 12—Am. Resp. to Rog. 4 at 7-8.) ████████████

27 ████████████████████████████████ (Ex. 8—Zhu 30(b)(6) Dep. at 18:15-

28 20:6; *see also* Ex. 5—Ting Dep. at 83:6-22.)

These facts also collectively raise whether YouTube's policies encourage infringement on its platform.  (Ex. 10—Winograd Rpt. at ¶ 97; Ex. 9—Singer Rpt. at ¶¶ 16, 65).  This concern is hardly conjecture; Defendants' own cases worry that without an appropriate repeat infringer policy as called for by "subsection (i), an unscrupulous website might take down infringing material as soon as it received a proper takedown notice identifying it, yet still operate as a pirate site." *Motherless*, 885 F.3d at 614.  ████████████████████████████████████████████

████████████████████████ (Ex. 12—Am. Resp. to Rog. 4 at 6; Ex. 8—Zhu 30(b)(6) Dep. at 49:25-50:13.)  That limitation, however, is nowhere justified in the DMCA which obligates YouTube to terminate users "who are repeat infringers" without saying that only applies to infringers against whom a DMCA takedown is submitted (which limitation is used elsewhere in the DMCA).  *Compare* 17 U.S.C. § 512(i)(1)(A) *with, e.g.,* 17 U.S.C. § 512(d)(3).

Indeed, YouTube highlights a copyright holder's ability to profit from infringement:

> "Thanks to the different options that Content ID gives copyright owners, *it's not just an anti-piracy solution, but also a revenue-generation tool. Through Content ID, creators and rightsholders can earn money even when their work hasn't been properly licensed by the uploader.* In 2017, rightsholders choose to monetize 90% of all Content ID claims, opening up a multitude of new revenue streams for themselves.  In the music industry, rightsholders choose to monetize over 95% of Content ID claims."  (Ex. 24—How Google Fights Piracy at 25 (emphasis added).)

(*See also* Ex. 31 at -095 (Content ID "means that rights holders don't need to submit copyright takedowns" "and instead have the opportunity to monetize and run ads in exchange for the videos being live.").)  ████████████████████████████████████████████

████████████████████████ (Ex. 1—Agrawal Dep. at 69:5-70:24.)

Defendants' December 19 Letter suggests that YouTube's repeat infringer policy has "already received judicial approval," citing *Viacom I*, careful not to state that the policy had been ruled upon as it has not.  (Def. Ltr. at 2.)  *Viacom I*, an out-of-circuit district court opinion, was decided on the factors set forth in § 512(c); the *Viacom* plaintiffs did not move under § 512 (i), rendering commentary on the repeat infringer policy dicta.  *See Viacom I*, 718 F. Supp. 514, 516 (S.D.N.Y. 2010).  In any event, *Viacom I* is inapposite.  There, Defendants claimed and the Court believed that copyright strikes would be assessed for at least some content blocked through

Content ID.  *See id.*, 718 F. Supp. 2d at 528 (finding "reasonable" YouTube's "initial hesitation" in assigning strikes to manual blocks matched by Content ID but assuming strikes would be assessed going forward).  Today, YouTube does not assess any strikes for any content blocked through Content ID.  (Ex. 31 at -096; Ex. 12—Am. Response Rog. 4 at 6; Ex. 8—Zhu 30(b)(6) Dep at 51:25 – 52:21.)  Moreover, two of the threshold issues the Plaintiffs here litigate were not raised in *Viacom*, namely (1) whether YouTube's policies and algorithms block copyright holders from locating infringements to issue takedown notices (see Part I.A) and (2) whether digital fingerprinting technology was an STM.  *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 41 (2d Cir. 2012) (*Viacom II*).  With respect to the 512(c) issues the *Viacom* that the court did consider, in *Viacom III* the court held that a provider forfeits the safe harbor where it "influence[s] or participate[s] in the infringement."  *See Viacom Int'l v. YouTube*, 940 F. Supp. 2d 110, 118 (S.D.N.Y. 2012) (*Viacom III*).  With the subsequent ▇▇ launch of Autoplay, YouTube began directly to participate in infringements displayed on its platform and no court has yet opined on this fact.  *See* Section III.A, below.

## II.   YOUTUBE DOES NOT ACCOMMODATE AND INTERFERES WITH STANDARD TECHNICAL MEASURES.

YouTube cannot invoke the safe harbor for the independent reason that it does not "accommodate[]" and instead "interfere[s] with standard technical measures."  17 U.S.C. § 512(i)(1)(B).  The DMCA provides criteria defining STMs (§ 512(i)(2)).  The parties dispute whether third party digital fingerprinting technology (similar to Content ID) is an STM.  Industry leaders have clearly asserted that digital fingerprinting technology is an STM.  (Ex. 30—May 27, 2022, Comments from RIAA and NMPA to USCO at 4; Ex. 18—Comments of the MPAA at 19.)  YouTube relegates this material factual dispute to a footnote in which it misleadingly claims that the U.S. Copyright Office ("USCO") has "recognized to date" that no STMs exist.  (Def. Ltr. 2 n.2.)  Yet, the USCO has no role in determining whether an STM exists, and it certainly is not dispositive.  17 U.S.C. § 512(i)(2).  Rather than "accommodate" these STMs as it must, YouTube "interferes" with them as noted above at pages 3-4.

**III.     FACTUAL DISPUTES EXIST ON THE ADDITIONAL DMCA REQUIREMENTS.**

Once a service provider is eligible under § 512(i), it must still satisfy three additional safe harbor conditions for each infringement.  17 U.S.C. § 512(c)(1); *Motherless,* 885 F.3d at 603-04.

**A.     YouTube Controls and Profits from Infringement.**

If YouTube "'receive[s] a financial benefit directly attributable to the infringing activity'" which it "'has the right and ability to control'", it cannot assert the safe harbor as a defense. *Motherless,* 885 F.3d at 603-04 (quoting 17 U.S.C. § 512(c)(1)(B)).  The parties dispute whether Autoplay establishes Defendants' control.  (Ex. 13—RFA Nos. 10-12.) ███████████████

████████████████████████████████████████████████████ (Ex. 15 at -720 (emphasis added); s*ee also* Ex. 16 ("After you watch a YouTube video, we'll automatically play another related video based on your viewing history."); Ex. 3—Goodrow Dep. at 12:7-18 ████████████████████████████████████████████

███████████████████████████████████ (Ex. 26 at -725; Ex. 6—Wu Dep. at 108:6-8, 109:5-118:7.)  Defendants' own cases support Plaintiffs on this.  In *Motherless*, *e.g.*, the court found the absence of control where the website "did not curate uploaded content in any meaningful way."  885 F.3d at 613. ████████████

████████████████████████████████████████████████████ (Ex. 26—Autoplay Deep Dive (████████████████████████████████████████); Ex. 6—Wu Dep. at 97:7-98:1 ████████████████████████████ 17:10-20:8 ███████████████████████████████████████████████ ████████████████, 36:9-19 ████████████████████████████; Ex. 3—Goodrow Dep. 15:13-16:4; 125:20-126:20 ███████████████████████████████████████████ ██████████████; Ex. 32 ████████████████████████████████████████

Independent of Autoplay, ████████████████████████████████████████ ██████████████████████ (Ex. 33—SRAV at § 3(b)(i); Ex. 34—PLA at § 3(b); Ex. 4—Suk Dep. at 109:6-110:15, 149:9-150:10).

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

As held in *Viacom*, "The concept is that a service provider, even without knowledge of specific infringing activity, may so influence or participate in that activity, while gaining a financial benefit from it, as to lose the safe harbor." *Viacom III*, 940 F. Supp. 2d at 118.

██████████████████████████████████████████████

████████████████████████ (Ex. 17 at -912) ██████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████ (*Compare*

Ex. 9—Singer Rpt. at ¶ 16 *with,* Ex. 11—Peterson Rpt. at ¶¶ 41-43.) ████████████

████████████████ (Ex. 6—Wu Dep. at 80:4-81:6.)   Defendants' Letter (at 3) focuses on advertisements "run before or after", but not during, these infringements but misses the point. Where a platform's ecosystem is set to promote infringement from which it profits, financial benefit may be demonstrated "where infringing performances enhance the attractiveness of a venue." *See A&M Records v. Napster*, 239 F.3d 1004, 1023 (9th Cir. 2001) (quoting *Fonovisa v. Cherry Auction*, 76 F.3d 259, 263 (9th Cir. 1996)); *see also Fung*, 710 F.3d at 1044-45 (same).

**B.    YouTube Has Actual and Red Flag Knowledge of Plaintiffs' Infringements.**

"Red flag knowledge arises when a service provider is aware of facts that would have made the specific infringement objectively obvious to a reasonable person." *Mavrix Photographs v. Livejournal*, 873 F.3d 1045, 1057 (9th Cir. 2017) (internal quotation marks omitted). ████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████ (Ex. 35). ██████

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████ (Ex. 36). The Ninth Circuit has noted, "a service

---

[2]   These infringements were first uploaded to YouTube in December 2022 and thus could not

9

provider cannot willfully bury its head" to avoid obtaining knowledge of infringement.  *UMG Recordings v. Shelter Cap. Partners*, 718 F.3d 1006, 1023 (9th Cir. 2013).  Here, Defendants have done exactly that.

**C.      Allowing Uploads Instead of Blocking Infringements Prevents Expeditious Removal.**

Whether removal is "expeditious" as required by the DMCA (§ 512(c)(1)), turns on a platform's capabilities.  *See Arista Records v. Myxer Inc*., No. CV 08-03935 GAF JCX, 2011 WL 11660773, at *27 (C.D. Cal. Apr. 1, 2011).  ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████ (Ex. 10—Winograd Rpt. at ¶¶ 89, 76-84), a factual dispute exists on whether YouTube expeditiously removes infringing content.

*               *               *

"As a general rule, multiple rounds of summary judgment motions will not be entertained absent a showing of significant judicial economy in such an approach."  *OpenTV v. Netflix*, 76 F. Supp. 3d 886, 887 n.1 (N.D. Cal. 2014); *Peasley v. Spearman*, No. 15-CV-01769-LHK, 2017 WL 5451709, at *3 (N.D. Cal. Nov. 14, 2017) (same).  The disputed issues of fact identified above further establish that Defendants should not be permitted to file another motion for summary judgment on issues on which they previously could have moved.

## <u>CONCLUSION</u>

For all the reasons stated above, the Court should deny Defendants' request for leave to file successive summary judgment motions.

Dated: January 9, 2023                          Respectfully submitted,

                                                */s/ Philip Korologos*
                                                Philip C. Korologos (pro hac vice)
                                                Joanna Wright (pro hac vice)
                                                BOIES SCHILLER FLEXNER LLP
                                                55 Hudson Yards, 20th Floor

---

have been included on the February 25, 2022, list of infringements.  Plaintiffs are nonetheless cognizant of the Court's January 5, 2023, ruling [ECF 222 n. 1] that Plaintiffs may not pursue in this action infringements not included on the February 25, 2022, list but include this fact to show Defendants' continued failure to act on red flag knowledge.

PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES

New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

George A. Zelcs (pro hac vice)
Randall P. Ewing, Jr. (pro hac vice)
Ryan Z. Cortazar (pro hac vice)
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (pro hac vice)
Steven M. Berezney, CA Bar #329923
Carol O'Keefe (pro hac vice)
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs*

PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES