George A. Zelcs (*pro hac vice*)
*gzelcs@koreintillery.com*
Randall P. Ewing, Jr. (*pro hac vice*)
*rewing@koreintillery.com*
Ryan Z. Cortazar (*pro hac vice*)
*rcortazar@koreintillery.com*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe (*pro hac vice*)
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 3101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
*pkorologos@bsfllp.com*
Joanna Wright (*pro hac vice*)
*jwright@bsfllp.com*
Jeffrey Waldron (*pro hac vice*)
*jwaldron@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>        Defendants. | CASE NO.:  3:20-cv-04423-JD<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Judge:  Hon. James Donato<br><br>DATE:  March 30, 2023<br>TIME:   10:00 a.m. |

## <u>TABLE OF CONTENTS</u>

**NOTICE OF MOTION AND MOTION** ...................................................................1

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED** .......................1

**MEMORANDUM OF POINTS AND AUTHORITIES** ..............................................1

**THE FOUR PROPOSED CLASSES AND CLASS REPRESENTATIVES** ...........................3

**ARGUMENT**...............................................................................................4

**I.     The Requirements of Rule 23(a) Are Satisfied**.............................................4

A. Rule 23(a)(1)—Numerosity Is Satisfied with Thousands of Class Members .....................4

B. Rule 23(a)(2)—Common Questions Clearly Exist ................................................5

C. Rule 23(a)(3)—Plaintiffs' Claims Are Typical ..................................................5

D. Rule 23(a)(4)—Plaintiffs and Counsel Will Adequately Represent the Class .....................6

**II.  Common Questions Predominate**.................................................................7

A. Common Proof Predominates for the Direct Infringement Claims ................................7

   1.  Takedown Notices are Common Proof of Ownership and Infringement .......................7

   2.  Common Proof Concerning Autoplay and Watch Next Establishes Control ...............10

B. Common Proof Predominates for Defendants' License Defenses ................................11

C. Common Proof Predominates for Contributory Infringement Claims .............................13

   1.  Takedown Notices Provide Common Proof of Knowledge .........................................13

   2.  YouTube's Matching Technology Provides Common Proof of Material Contribution .14

D. Common Proof Predominates for Vicarious Infringement Claims ...................................15

   1.  Revenue Data and AutoPlay Establish Direct Financial Benefit..................................16

E. Common Proof Predominates for the Issue of Eligibility for DMCA Safe Harbors...........16

   1.  YouTube Has Not Reasonably Implemented a Repeat Infringer Policy .....................17

   2.  YouTube Failed to Accommodate Standard Technical Measures.................................18

3. Common Proof Will Address the Additional Safe Harbor Requirements ..................... 19

F. Common Evidence Will Resolve Any Fair Use Affirmative Defense ............................... 19

G. Common Proof Predominates for the CMI Claims ...................................................... 20

1. Liability to the ISRC Class Will Be Established through Common Proof ................... 20

2. Liability for the CLFN Class Will Be Established Through Common Proof .............. 22

H. Plaintiffs' Remedies Can Be Established with Common Methods ..................................... 22

1. Statutory and Actual Damages ...................................................................... 23

2. Injunctive Relief ........................................................................................ 24

**III. A Class Action is the Superior Method** .............................................................. 24

**IV. In the Alternative, a 23(c)(4) Issues Class Is Also Appropriate** ......................... 25

**V. Appointment of Claims Administrator** ................................................................ 25

**CONCLUSION** ............................................................................................... 25

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

**Cases**

*B.K. by Tinsley v. Snyder*,
   922 F.3d 957 (9th Cir. 2019) ............................................................................... 2

*Bd. of Trustees of San Diego Elec. Pension Tr. v. My Electrician*,
   2021 WL 254168 (S.D. Cal. Jan. 26, 2021) .......................................................... 8

*Bebault v. DMG Mori USA, Inc.*,
   2020 WL 2065646 (N.D. Cal. Apr. 29, 2020) ....................................................... 2

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   199 F. Supp. 3d 958 (E.D. Va. 2016) ............................................................ 14, 15

*Bumpus v. Realogy Brokerage Grp. LLC*,
   2022 WL 867256 (N.D. Cal. Mar. 23, 2022 ( .................................................. 2, 24

*Dr. Seuss Enterprises, L.P. v. ComicMix*,
   983 F.3d 443 (9th Cir. 2020) ............................................................................. 19

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ....................................................................... 25

*Ellison v. Robertson*,
   357 F.3d 1072 (9th Cir. 2004) .......................................................... 7, 13, 15, 16

*EMI Christian Music Grp., Inc. v. MP3tunes*,
   844 F.3d 79 (2d Cir. 2016) ............................................................................... 11

*Flo & Eddie, Inc. v. Sirius XM Radio*,
   2015 WL 4776932 (C.D. Cal. May 27, 2015) ............................................ 2, 5, 7, 10

*Friedman v. Live Nation Merch., Inc.*,
   833 F.3d 1180 (9th Cir. 2016) ........................................................................... 23

*GC2 v. Int'l Game Tech., IGT, Doubledown Interactive*,
   391 F. Supp. 3d 828 (N.D. Ill. 2019) .................................................................. 23

*In re Capacitors Antitrust Litig. (No. III)*,
   2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ..................................................... 25

*In re Facebook, Inc. IPO Securities & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ....................................................................... 22

*In re Google Play Store Antitrust Litig.*,
   2022 WL 17252587 (N.D. Cal. Nov. 28, 2022) ....................................... 2, 7, 23, 24

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................ 5

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ............................................................................... 6

*In re Napster Copyright Litig.*,
   2005 WL 1287611 (N.D. Cal. June 1, 2005) ....................................................... 2, 3

*Kirk Kara Corp. v. W. Stone & Metal Corp.*,
   2020 WL 5991503 (C.D. Cal. Aug. 14, 2020) ..................................................... 20

*Leyva v. Medline Indus.*,
   716 F.3d 510 (9th Cir. 2013) ............................................................................. 22

*Microsoft Corp. v. Nop*,
   549 F. Supp. 2d 1233 (E.D. Cal. 2008) ............................................................... 23

*Norton v. LVNV Funding, LLC*,
   2020 WL 5910077 (N.D. Cal. Oct. 6, 2020) ........................................................ 25

*Ochoa v. McDonald's Corp.*,
   2016 WL 3648550 (N.D. Cal. July 7, 2016 ............................................................ 4

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ............................................................................... 13

*Polar Bear Prod., Inc. v. Timex Corp.*,
   384 F.3d 700 (9th Cir. 2004) ............................................................................... 22

*Rosen v. R & R Auction*,
   2016 WL 7626443 (C.D. Cal. Aug. 31, 2016) ..................................................... 10

*Stevens v. Corelogic*,
   899 F.3d 666 (9th Cir. 2018) ........................................................................ 20, 21

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) .............................................................................................. 2

*UMG Recordings v. Shelter Cap. Partners*,
   718 F.3d 1006 ( 9th Cir. 2013) ..................................................................... 14, 15

*VHT v. Zillow Grp.*,
   918 F.3d 723 (9th Cir. 2019) ............................................................... 7, 13, 15

*Wolin v. Jaguar Land Rover N. Am.*,
   617 F.3d 1168 (9th Cir. 2010) ............................................................................. 24

**Statutes**

17 U.S.C. § 107 ........................................................................................................ 20

17 U.S.C. § 1202 ........................................................................................... 2, 21, 22

17 U.S.C. § 1203 ........................................................................................................ 23

17 U.S.C. § 410 ........................................................................................................ 10

17 U.S.C. § 504 .................................................................................................. 23, 24

**Rules**

Federal Rule of Civil Procedure 23 ................................................................. passim

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE: on March 30, 2023, 10:00 a.m., Plaintiffs will move the Court for an order granting Plaintiffs' Motion for Class Certification pursuant to Fed. R. Civ. P. 23.[1]

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

Plaintiffs seek an order: (1) certifying four Rule 23(b)(3) classes; (2) appointing Maria Schneider and Uniglobe Entertainment, LLC ("Uniglobe") to represent the Registered Works Infringement Class, appointing AST Publishing Ltd. ("AST") and Uniglobe to represent the Foreign Unregistered Works Infringement Class, and appointing Ms. Schneider to represent the ISRC Class and the CLFN Class; (3) appointing Boies Schiller Flexner LLP and Korein Tillery, LLC as Class Counsel; and (4) appointing Angeion Group as claims administrator.

**MEMORANDUM OF POINTS AND AUTHORITIES**

YouTube is the largest video-sharing website in the world and has a massive amount of copyright infringement. That infringement increases in magnitude each year. In 2019, YouTube had approximately ▮▮▮▮▮▮▮▮▮ on its platform. (Ex. 50—1/10/23 Ltr. at 2.)[2] By 2020, that number had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* This magnitude creates an impenetrable whack-a-mole for everyday copyright holders trying to police and protect their rights. This whack-a-mole benefits YouTube, which is incentivized to promote and disseminate infringing materials because it increases network effects, thereby increasing advertising revenue.

YouTube has avoided significant litigation for infringement by providing its premier copyright management tool, Content ID, to large music publishers and recording studios with sufficient market power and incentive to sue YouTube. (Ex. 31—email discussion, including with current Google employees at -643 (Google's current copyright counsel has explained Content ID as follows: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] Plaintiffs recognize the Court may not require argument (Ex. 21—12/15/22 Hrg. Tr. at 9:13-15) but notice this Motion consistent with Local Rule 7-2(a).

[2] All numerical exhibits cited herein ("Ex. __") are attached to the Declaration of Jeffrey Waldron in Support of Plaintiffs' Motion for Class Certification.

1     ██████   The Copyright Act does not countenance such blatant disregard of individual artists'

2   intellectual property rights.  Class actions were created for this institutionalized misbehavior that

3   relies upon the disincentives and lack of resources for a lawsuit absent collective action.  A class

4   action is the superior method through which YouTube's participation in and facilitation of

5   copyright infringement can be held to account.

6       Plaintiffs seek certification of four Rule 23(b)(3) classes alleging direct, vicarious, and

7   contributory infringement of their copyrights and improper removal, alteration, or distribution of

8   Copyright Management Information ("CMI") in violation of 17 U.S.C. § 1202(b).  "Rule 23(b)(3)

9   permits certification when 'one or more of the central issues in the action are common to the class

10  and can be said to predominate'" even if "'other important matters will have to be tried separately,

11  such as damages or some affirmative defenses peculiar to some individual class members.'"

12  *Bumpus v. Realogy Brokerage Grp.,* 2022 WL 867256, at *6 (N.D. Cal. Mar. 23, 2022 (Donato,

13  J.) (quoting *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016); *Bebault v. DMG Mori USA*,

14  2020 WL 2065646, at *5 (N.D. Cal. Apr. 29, 2020) (Donato, J.)).

15      Common proof will be used to establish the elements of Plaintiffs' claims and to defeat

16  YouTube's affirmative defenses.  Indeed, the majority of Plaintiffs' evidence comes from

17  YouTube's documents, testimony, policies, and practices, creating a "good basis for establishing

18  class-wide proof of liability and injury."  *In re Google Play Store Antitrust Litig.*, 2022 WL

19  17252587, at *12 (N.D. Cal. Nov. 28, 2022) (Donato, J.).  Courts in the Ninth Circuit have

20  certified similar classes.  *Flo & Eddie v. Sirius XM Radio*, 2015 WL 4776932 (C.D. Cal. May 27,

21  2015); *In re Napster Copyright Litig.*, 2005 WL 1287611 (N.D. Cal. June 1, 2005).

22      While Defendants have singularly focused on potential individual issues, that is not the

23  question before the Court.  Instead, the question is whether the common questions of proof and

24  law predominate, rendering those individualized issues secondary.  Put differently, the correct

25  inquiry asks: Will the common questions "generate common answers apt to drive the resolution"

26  of this "litigation"?  *B.K. by Tinsley v. Snyder,* 922 F.3d 957, 968 (9th Cir. 2019).  Here, the

27  answer is clearly yes.  Predominance is a generous standard.  *Flo & Eddie,* 2015 WL 4776932, at

28  *10 (Predominance "does not require plaintiffs to prove that every element of a claim is subject to

1   class-wide proof: they need only show that common questions predominate over questions

2   affecting only individual class members.").  In sum, "while it is true that proof of ownership,

3   registration, and actual damages ultimately requires a work-by-work inquiry, viewing these

4   determinations as purely individual issues ignores the fact that the claims of every member of the

5   class are uniformly premised upon the uploading or downloading of a copyrighted work." *In re*

6   *Napster Copyright Litig.*, 2005 WL 1287611 at *7 (N.D. Cal. June 1, 2005) (internal quotation

7   marks omitted).

8          The ████████████ deserve their day in court.

9          **THE FOUR PROPOSED CLASSES AND CLASS REPRESENTATIVES**

10         **1.   <u>Registered Works Infringement Class (Uniglobe and Ms. Schneider)</u>**

11         All persons who own copyrights in one or more works: 1) registered with the United

12   States Copyright Office; 2) contained or used in a video that was displayed on YouTube and then

13   removed from YouTube due to a successful Takedown Notice; and 3) contained or used in a video

14   that was displayed on YouTube subsequent to the first successful Takedown Notice and then

15   removed from YouTube as a result of either a second successful Takedown Notice made on or

16   after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019.

17         **2.   <u>Foreign Unregistered Works Infringement Class (Uniglobe and AST)</u>**

18         All persons who own copyrights in one or more works: 1) first published outside the

19   United States; 2) contained or used in a video that was displayed on YouTube and then removed

20   from YouTube due to a successful Takedown Notice; and 3) contained or used in a video that was

21   displayed on YouTube subsequent to the first successful Takedown Notice and then removed

22   from YouTube as a result of either a second successful Takedown Notice made on or after July 2,

23   2019, or an allegation of infringement made in a court of law on or after July 2, 2019.

24         **3.   <u>International Standard Recording Code ("ISRC") Class (Ms. Schneider)</u>**

25         All persons who own copyrights in one or more digital form sound recordings of musical

26   works that: 1) has been assigned an International Standard Recording Code ("ISRC"); and 2) was

27   a component of a video that was uploaded to YouTube that (a) did not include the assigned ISRC

28   and (b) was removed from YouTube as a result of either a successful Takedown Notice made on

1  or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2,

2  2019.

3         **4.**   <u>**Clip Filename ("CLFN") Class (Ms. Schneider)**</u>

4         All persons who own copyrights in one or more works that: (1) had an associated Clip

5  Filename ("CLFN") field populated with copyright management information ("CMI") and (2) was

6  contained in a video uploaded to YouTube (a) either without the associated CMI metadata or with

7  the CMI metadata altered and (b) that was removed from YouTube as a result of either a

8  successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made

9  in a court of law on or after July 2, 2019.

10         <u>**Excluded Entities**</u>

11         Excluded from each class are: (a) the Court; (b) Defendants and their subsidiaries (or

12  controlled entities), affiliates, officers, directors, employees, and counsel; (c) Plaintiffs' counsel;

13  and (d) the legal representatives, heirs, successors, and assigns of any excluded entity.

14                            <u>**ARGUMENT**</u>

15  **I.**      **THE REQUIREMENTS OF RULE 23(A) ARE SATISFIED**

16         **A.**   <u>**Rule 23(a)(1)—Numerosity Is Satisfied with Thousands of Class Members**</u>

17         "Numerosity" can be "satisfied" with "40" members.[3] *Ochoa v. McDonald's Corp.*, 2016

18  WL 3648550, at *4 (N.D. Cal. July 7, 2016) (Donato, J.).  Plaintiffs' expert, Dr. Charles Cowan,

19  established numerosity by determining the *minimum* class size for each class:

20        1.   Registered Works Infringement Class: Minimum of between 10,000 and 20,000

21            members.  (Ex. 3—Cowan Dep. at 147:20–48:8.)

22        2.   Foreign Unregistered Works Infringement Class: Minimum of 1,000 members. *Id.*

23        3.   ISRC Class: Minimum of 1,000 members. *Id.*

24        4.   CLFN Class: Minimum of 2,000 members. *Id.*

25

26  _____

[3] ████████████████████████████████████████ (*see* Ex. 50—1/20/23 Ltr.), Defendants initially
27  offered to stipulate to numerosity in exchange for Plaintiffs' forgoing certain discovery. (Ex. 38—
28  1/20/21 Ltr.; Ex. 39—5/7/21 Ltr.; Ex. 42—8/20/21 Ltr.)

1  Numerosity is satisfied.  *Flo & Eddie*, 2015 WL 4776932 at *8 (numerosity satisfied where

2  "proposed class contains hundreds (if not thousands)" of copyright holders and plaintiffs had

3  "preliminarily" identified "273 separate" copyright holders).

4  **B.  Rule 23(a)(2)—Common Questions Clearly Exist**

5  "For the purposes of Rule 23(a)(2) commonality analysis, even a single common question

6  satisfies the requirement."  *Id.* at *9 (internal quotations omitted).  As demonstrated in Section II,

7  below, nearly every element of every claim and affirmative defense will be established through

8  common evidence.  *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1187 (N.D. Cal.

9  2013) (commonality if "common evidence and common methodology could be used to prove the

10  elements of the underlying cause of action").

11  **C.  Rule 23(a)(3)—Plaintiffs' Claims Are Typical**

12  A plaintiff must have the "same or similar injury" as the class caused by "conduct which is

13  not unique to the named plaintiffs."  *B.K. by Tinsley*, 922 F.3d at 970.  The proposed class

14  representatives have claims that satisfy the respective class definitions:

15  ***The Registered Works Infringement Class***: (1) Uniglobe's *5 Weddings*: Ex. 62—12/19/18

16  Takedown Notice; Ex. 63—4/14/20 Takedown Notice; Ex. 64—USCO Reg.; (2) Maria

17  Schneider's *Hang Gliding*: Ex. 65—3/4/16 Takedown Notice; Ex. 61—2/25/22 List of

18  Infringements; Ex. 66—Removal Confirmation; Ex. 67—USCO Reg.; (3) *see also* Ex. 68—

19  Additional Schneider Takedown Notices; Ex. 61—2/25/22 List of Infringements; Ex. 69—

20  Removal Confirmations; Ex. 70—Additional USCO Regs.

21  ***The Foreign Unregistered Works Infringement Class***: Uniglobe's *5 Weddings*: (India

22  Release in Hindi): (1) Ex. 71—12/8/18 Takedown Notice; Ex. 72—12/17/19 Takedown Notice

23  (2) AST's *Zuleikha Opens Her Eyes*: Ex. 73—5/13/20 Takedown Notice; Ex. 74—8/3/20

24  Takedown Notice; (3) AST's *My Children*: Ex. 75—5/13/20 Takedown Notice; Ex. 76—6/5/20

25  Takedown Notice (4) *see also* Ex. 77—4/14/20 Takedown Notice; Ex. 61—2/25/22 List of

26  Infringements; Ex. 78—Removal Confirmation.

27  ***The ISRC Class***: Maria Schneider: (1) *A Potter's Song*: Ex. 25—Schneider Am. Resp. to

28  Interrog. 9 at 17 (ISRC: USDBV1500027); Ex. 61—2/25/2022 List of Infringements # 2;

Ex. 79—Removal Confirmations; (2) *Dance You Monster to My Soft Song*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 14–18 (ISRC: USDBV0521941); Ex. 61—2/25/2022 List of Infringements # 58; Ex. 79—Removal Confirmations; (3) *The Thompson Fields*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 17 (ISRC: USDBV1500024); Ex. 61—2/25/2022 List of Infringements # 220; Ex. 79—Removal Confirmations; (4) *Walking by Flashlight*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 17 (ISRC: USDBV1500021); Ex. 60—2/25/2022 List of Infringements # 250 and # 364; Ex. 79—Removal Confirmations.

*The CLFN Class*: Maria Schneider: (1) *Cerulean Skies*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 61—2/25/2022 List of Infringements # 31; Ex. 80—Removal Confirmations; (2) *A Potter's Song*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 61—2/25/2022 List of Infringements # 1; Ex. 80—Removal Confirmations; (3) *My Lament*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 61—2/25/2022 List of Infringements # 137 and # 140; Ex. 80—Removal Confirmations; (4) *Sky Blue*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 60—2/25/2022 List of Infringements # 164; Ex. 80—Removal Confirmations; (5) *Scenes from Childhood - Bombshelter Beast*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 61—2/25/2022 List of Infringements # 150; Ex. 80—Removal Confirmations; (6) *Three Romances - Choro Dancado*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 61—2/25/2022 List of Infringements # 228; Ex. 80—Removal Confirmations; (7) *Wyrgly*: Ex. 25—Schneider Am. Resp. to Interrog. 9 at 18; Ex. 61—2/25/2022 List of Infringements # 257; Ex. 80—Removal Confirmations.

Typicality is satisfied where, as here, the class representative's claim is "reasonably coextensive" with the class. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014).

### D.  Rule 23(a)(4)—Plaintiffs and Counsel Will Adequately Represent the Class

Plaintiffs and counsel will "fairly and adequately" represent the classes; they have no conflicts, their interests align with the classes' interests, and they will continue to "prosecute the action vigorously". *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019). Schneider Decl. at ¶¶ 7–8; Lozovsky Decl. at ¶¶ 6–7; Gujral Cooper Decl. at ¶¶ 6–7.  Proposed class counsel satisfy Rule 23(g)(1)(A).  Both firms are nationally recognized for complex class

1  actions, and their attorneys are experienced in copyright law.  *See* Declaration of Philip Korologos

2  in Support of Plaintiffs' Notice of Motion and Motion for Class Certification; Declaration of

3  Randall P. Ewing in Support of Plaintiffs' Notice of Motion and Motion for Class Certification.

4  **II.      COMMON QUESTIONS PREDOMINATE**

5         Where, as here, the Rule 23(a) factors are easily satisfied, Rule 23(b)(3) certification turns

6  on whether common issues predominate.  Predominance "does not require plaintiffs to prove that

7  every element of a claim is subject to class-wide proof: they need only show that common

8  questions predominate over questions affecting only individual class members."  *Flo & Eddie,*

9  2015 WL 4776932, at *10.  Here, Plaintiffs easily surpass that standard because nearly every

10 element of their claims and defenses will be proven with common evidence.  As the Court has

11 explained, "predominance does not demand perfection" and individualized issues that will be

12 resolved with claims administration does not disturb predominance.  *In re Google Play Store*,

13 2022 WL 17252587, at *12 (Donato, J.).

14         **A.   <u>Common Proof Predominates for the Direct Infringement Claims</u>**

15        The elements of direct infringement are "(1) ownership of a valid copyright; and (2) that

16 the defendant violated the copyright owner's exclusive rights under the Copyright Act."  *Ellison*

17 *v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).  Website owners are directly liable if they are

18 "actively involved in the infringement," including, for example, if they "exercised control (other

19 than by general operation of" the website); selected any material for upload, download,

20 transmission, or storage; or instigated any copying, storage, or distribution" of copyrighted

21 works.  *VHT v. Zillow Grp.*, 918 F.3d 723, 732 (9th Cir. 2019).

22              **1.   Takedown Notices are Common Proof of Ownership and Infringement**

23        The Copyright Infringement Classes are made up exclusively of rights owners who have

24 submitted at least one successful Takedown Notice.  Successful Takedown Notices are reliable

25 common evidence of ownership and infringement because YouTube admits it reviews such

26 notices to ensure they are complete and valid and relies on them to remove content and issue

27 copyright strikes.  (Ex. 23—Am. Resp. to Interrog. 4 at 7–9 ███████████████████

28 ████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

Ex. 14—Zhu 30(b)(6) Dep. at 9:2–16.)

**Infringement.**  YouTube requires that every Takedown Notice include:

1.  The claimant's full legal name, mailing and email address, and phone number;

2.  The specific URL of the video in question;

3.  A description of the copyrighted content;

4.  The name of the copyright owner;

5.  A statement of a good faith belief that the copyrighted material is being used in an unauthorized manner;

6.  A statement that the claimant is the owner (or the owner's agent) of an exclusive right that is being infringed;

7.  Acknowledgment that abuse of the Takedown Notice tool (including filing claims for content not owned) may result in termination of the claimant's account; and

8.  A physical or electronic signature.

(Ex. 57—Webform Takedown; Ex. 59—Infringement Notification Requirements.)  Moreover, the individual or entity signing the Takedown Notice must state, under penalty of perjury, that "the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed."  17 U.S.C. § 512(3)(A)(vi); *Bd. of Trustees of San Diego Elec. Pension Tr. v. My Electrician*, 2021 WL 254168, at *6 (S.D. Cal. Jan. 26, 2021) (documents were reliable in part because submitted under penalty of perjury).  (*See* Ex. 57—Webform Takedown.)

Before YouTube removes content identified in a Takedown Notice, it vets the Takedown Notice to ensure that it is valid and, therefore, actionable.  YouTube followed a uniform takedown review policy during the class period, (*see* Ex. 13—Zhu Dep. at 15:25–17:7 ████████████████

████████████████████, that includes the following steps:

1.  █████████████████████████████████ (Ex. 11—Ting Dep. at 46:8–18.)

2.  █████████████████████████████████████████████

█████████████████████████████ (Ex. 14—Zhu 30(b)(6) Dep. at 77:9–78:2;

Ex. 13—Zhu Dep. at 14:24–15:8; Ex. 23—Am. Resp. to Interrog. 4 at 8–9) ███████

1 ███████████████████████████████████████████████

2 ████████████████████ (Ex. 11—Ting Dep. at 46:8–18.)

3. ███████████████████████████████████████████████

4 ████████████████████████ (Ex. 49—Email at 3; Ex. 11—

5 Ting Dep. at 62:12–25; Ex. 14—Zhu 30(b)(6) Dep. at 79:6–14.)

4. ██████████████████████████████████████████████

6 ███████████████████ (Ex. 14—Zhu 30(b)(6) Dep. at 79:6–14; Ex. 11 Ting Dep. at

7 39:7–25, 62:12–63:16) ████████████████ (Ex. 11—Ting Dep. at 62:12–63:16;

8 Ex. 14—Zhu 30(b)(6) Dep. at 78:14–81:1.)

5. ████████████████████████████████████████████

10 ██████████████████████████████████████

11 ██████████████████████████████████.[4]  (Ex. 14—Zhu

12 30(b)(6) Dep. at 39:11–40:17; Ex. 51—"YouTube Creator Academy: Responding to

13 copyright takedowns"; Ex. 13—Zhu Dep. at 85:8–11; Ex. 53—Counter-Notification

14 Requirements.)

15 6. YouTube reviews all counter-notifications to ensure compliance with the DMCA and

16 to "assess whether that . . . appears to be a potentially valid reason . . . to file a counter-

17 notification" to screen out "misguided counter-notifications."  (Ex. 14—Zhu 30(b)(6)

18 Dep. at 39:11–13.) ████████████████████████

19 ████████████████████ (Ex. 13—Zhu Dep. at 85:9–10.)

20 7. ██████████████████████████████████████████

21 (Ex. 11—Ting Dep. at 108:9–19.) ████████████████████

22 ███████████████████████████████████████████

23 (*Id.* at 108:9–109:2.)

[4] YouTube "empowers uploaders to fight wrongful claims" by filing counter-notifications if they believe "they have the required license to use content or are subject to an exception such as fair use."  (Ex. 41—Transparency Rpt. H1 2021 at 9.)

YouTube's vetting process to determine which Takedown Notices are valid, and thus successful, weeds out 14 percent of all Takedown Notices submitted via YouTube's takedown notice webform.  (Ex. 48—Transparency Rpt. H1 2022 at 8.)  Thus, in removing the infringing content, YouTube determines that the Takedown Notice author's rights are superior to the uploader's rights, otherwise such removal would be improper.  The counter-notification process of challenging a Takedown Notice provides common proof of a further, independent verification of infringement because users are incentivized to submit counter-notifications to avoid copyright strikes and reinstate content where they can successfully contest a takedown notice.

In sum, the definitions of the Infringement Classes rely on "successful" Takedown Notices, meaning that they were: (a) complete and valid; (b) consistent with the DMCA; (c) relied upon by YouTube when removing content from its platform; and (d) not subject to a valid counternotification or retraction that reinstated the removed content.  (Ex. 17—Cowan Rpt. at ¶¶ 34–42.)  YouTube cannot credibly challenge the use of a successful Takedown Notice.

***Ownership.***  For the Registered Works Infringement Class, Plaintiffs will further substantiate registration and ownership by cross-referencing successful Takedown Notices against the U.S. Copyright Office's database of copyright registrations.  (Ex. 17—Cowan Rpt. at ¶ 12(a).)  Such registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c); *see also Rosen v. R & R Auction,* 2016 WL 7626443, at *4 (C.D. Cal. Aug. 31, 2016).  Similarly, for the Foreign Unregistered Works Infringement Class, ownership will be further substantiated by cross-referencing successful Takedown Notices with third-party databases (Ex. 17—Cowan Rpt. at ¶ 12(b)) and/or self-certification.  *Flo & Eddie*, 2015 WL 4776932, at *7–8.

### 2.   Common Proof Concerning Autoplay and Watch Next Establishes Control

In 2015, YouTube launched Autoplay which has operated continually during the class period.  (Ex. 24—Resp. to RFA No. 1.) ████████████████████

██████████████████████████████ (Ex. 27—Auto-continuation view counting: Product Review at -720; s*ee also* Ex. 55—Autoplay Videos in YouTube Go at -443— ████████

████████████████████████████

1  ██████████ Ex. 5—Goodrow Dep. at 12:7–18.) ███████████████████████████████

2  ██████████████████████████████████████████ (Ex. 12—Wu Dep. at 108:6–8,

3  109:5–118:7; Ex. 40—"Autoplay Deep Dive" at -725.) █████████████████████████

4  ██████████████████████████ (Ex. 29—""Watch Next Overview" at -882.) ████████

5  ████████████████████████████████████████████████ (Ex. 24—

6  Resp. to RFA Nos. 17, 18; Ex. 4—Froehle Dep. at 22:2–21.) ███████████████████

7  ████████████████████████████████████████████████████████████████████████████

8  ██████████████████████████ (Ex. 44—"Life of a video recommendation" at -429; Ex.

9  16—Winograd Rpt. at ¶¶ 120–139.)

10  ████████████████████████████████████████████

11  ███████████████████████████████████ (Ex. 40—Autoplay Deep Dive ████████████

12  ██████████████████████████████████████████████; Ex. 12—Wu

13  Dep. at 97:7–98:1 ████████████████████████████████████,

14  17:10–20:19 ██████████████████████████████████████████

15  ██████████████, 36:9–19 ██████████████████████; Ex. 5—Goodrow Dep. at

16  15:13–16:4, 125:20-126:20 █████████████████████████

17  ████████; Ex. 58—████████████████████████████████████

18  ████████████████████████████████████████████

19  ██████████████████████ (Ex. 32—"Watch Next Eng. Review" at -185, -186.)

20  ████████████████████████████████████████████████████████████████████████████

21  (*Id.* at -187, -240; Ex. 29—"Watch Next Overview" at -873.)  Defendants simultaneously curate

22  and affirmatively play content to users, without any action by the user, establishing common

23  evidence of control.  *EMI Christian Music Grp. v. MP3tunes*, 844 F.3d 79, 96 (2d Cir. 2016)

24  ("volitional conduct" when an internet service provider "retrieved a copyrighted item that a user

25  did not request").

26  **B.  Common Proof Predominates for Defendants' License Defenses**

27  Where affirmative defenses may raise individualized issues, the proper inquiry is whether

28  "the common facts and issues that unite the class are overshadowed by the use of unique

-11-                                                    Case No. 3:20-cv-04423-JD

1  affirmative defenses." *Kelly v. City & Cnty. of San Francisco*, 2005 WL 3113065, at *3 (N.D.

2  Cal. Nov. 21, 2005).  "As both the United States Supreme Court and Ninth Circuit have stressed, a

3  court may certify a Rule 23(b)(3) class even though . . . important matters will have to be tried

4  separately, such as some *affirmative defenses* peculiar to some individual class members."

5  *Williams v. Apple*, 338 F.R.D. 629, 638, 648 (N.D. Cal. 2021) (internal quotation marks omitted).

6  Both of the license defenses Defendants have identified can be resolved efficiently through

7  common proof and a streamlined claims administration process.

8           In any event, any licensing defense, whether based on YouTube's Terms of Service

9  ("TOS") or direct licenses, will only apply to direct infringement claims and will not insulate

10  YouTube against claims of vicarious or contributory infringement for the very same uploads.

11  [*See* ECF 222 ("The TOS do not insulate YouTube from indirect infringement liability.").]

12           ***Terms of Service License.***  To upload a work, a YouTube user must agree to YouTube's

13  TOS.  (Ex. 26—TOS at § 1(A).)  Pursuant to the TOS, a user grants YouTube a license for any

14  authorized upload of a work to YouTube.  (*Id.* at § 6(C).)  Defendants' own records will establish

15  whether a class member has granted YouTube a TOS license.  ████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████████████████  (Ex. 6—Magagna Dep. at 77:6–79:3.)

19           ***Direct Licenses.***  ████████████████████████████████████████

20  ████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████████

26

27  [5] ████████████████████████████████████████████████████████

28  ████████████████████████████  (Ex. 8—Rosenstein Dep. at 198:2–21; 199:6–200:6.)



1

2 (Ex. 54 at § 3(d).)

3

4

5 (*Id.* at § 3(d);

6 Ex. 28—PLA at § 3(d)

7

8 Defendants' inability

9 to satisfy their burden for such a defense will be further confirmed by the requirement of a

10 successful Takedown Notice which evidences (a) YouTube's considered position on whether it

11 was licensed to display the work and (b) the lack of valid counternotification by the uploader

12 claiming they were licensed to do so.

13        **C.  Common Proof Predominates for Contributory Infringement Claims**

14        To establish contributory infringement, the plaintiff must first prove a direct infringement

15 (whether by the defendant or third party) and that the defendant: (a) "knew or had reason to know

16 of the infringing activity"; and (b) induced or materially contributed to the infringing activity.

17 *Ellison*, 357 F.3d at 1076–78.  In the online context, "material contribution" is satisfied if the

18 defendant "has actual knowledge that specific infringing material is available using its system,

19 and can take simple measures to prevent further damage to copyrighted works, yet continues to

20 provide access to infringing works."  *VHT*, 918 F.3d at 745 (internal quotations omitted).

21        Direct infringement will be established with the same common evidence discussed above,

22 via successful Takedown Notices to establish ownership and infringement (Section II.A.1, above).

23 As explained below, the additional elements necessary to prove contributory infringement

24 (material contribution and knowledge) will also be established through common evidence.

25        **1.  Takedown Notices Provide Common Proof of Knowledge**

26        Plaintiffs will establish YouTube's actual knowledge of specific instances of infringement

27 through Defendants' own records of an initial successful Takedown Notice; after that knowledge,

28 the second successful Takedown Notice (or an allegation of infringement made in a court of law)

1    regarding the same copyrighted work will establish the actionable infringement by the uploader

2    after specific knowledge of infringement of the given work.  Simply put, Takedown Notices are

3    common evidence of knowledge for secondary liability.  *UMG Recordings*, 718 F.3d at 1020

4    (Takedown Notice is "the most powerful evidence of a service provider's knowledge").

### 2.  YouTube's Matching Technology Provides Common Proof of Material Contribution

7         The "knowledge element for contributory infringement is met" if "a party has been

8    notified of specific infringing uses of its technology and fails to act to prevent such uses, or

9    willfully blinds itself to such infringing uses."  *BMG Rts. Mgmt. (US) v. Cox Commc'ns*, 199 F.

10   Supp. 3d 958, 979 (E.D. Va. 2016) (internal quotation marks omitted), *aff'd in part, rev'd in part*,

11   881 F.3d 293 (4th Cir. 2018).  ██████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████

14   ████████████ (Ex. 6—Magagna Dep. at 77:6–79:3; Ex. 16—Winograd Report ¶ 89.)

15        Defendants' Content ID tool establishes Defendants' ability to have prevented

16   infringement (*i.e.,* their material contribution).  ████████████████████████████

17   ████████████████████████████████████████████████████████████████

18   █████████████████████████████ (Ex. 52—Content ID Training Deck at -929;

19   Ex. 30—Google Comment to the Register of Copyrights at -305 ██████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████ Users granted access to Content ID can elect to block videos that match their

22   copyrighted work, thereby preventing the infringing content from ever appearing on YouTube's

23   platform.  (Ex. 52—Content ID Training Deck at -951.)  But copyright holders without access to

24   the search features embodied in Content ID cannot do so.

25        The advantages of Content ID are manifest.  Simply put, "████████████████████

26   ████████████████████████████████████████ (Ex. 37—"Life of a YouTube

27   Upload" at -783; *see also* Exs. 41, 43, 48—Transparency Rpts. at 12 ("Content ID's systems

28   automatically detect potential infringement"); Ex. 36—"How Google Fights Piracy" at 14, 23, 25

1  ("Through Content ID, creators and rightsholders can earn money even when their work hasn't

2  been properly licensed by the uploader.").) ████████████████████████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████ (Ex. 2—Bill Dep. at

5  69:2–14; Ex. 8—Rosenstein Dep. 31:25–33:7.)  Similarly, YouTube's Copyright Match Tool

6  automatically finds "reuploads of videos removed through" Takedown Notices to find

7  "subsequent reuploads of the videos" that copyright holders "reported for removal."  (Ex. 41—

8  Transparency Rpt. at 2.)  Yet Defendants have not used either aspect of "YouTube's Copyright

9  Management Suite" to prevent the infringement suffered by the Infringement Classes.  Here, the

10  initial successful Takedown Notices establish knowledge of specific instances of infringement and

11  yet Defendants "fail[] to act" to "prevent" subsequent infringement of those same works that are

12  identified by ████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████  *BMG Rts. Mgmt. (US)*, 199 F. Supp. 3d at 979.  Given the

15  capabilities and employment of Copyright Match and Content ID, Defendants "willfully blind[]"

16  themselves "to such infringing uses".  *Id.*

17  **D.  Common Proof Predominates for Vicarious Infringement Claims**

18  To establish vicarious infringement, in addition to proving a third party's direct

19  infringement, the plaintiff must prove that the defendant: (a) enjoys a direct financial benefit from

20  the third party's infringing activity; and (b) has the right and ability to supervise the infringing

21  activity.  *Ellison*, 357 F.3d at 1076, 1078–79.  A defendant has the right and ability to supervise if

22  it has "the general ability to locate infringing material and terminate users' access."  *UMG*

23  *Recordings v. Shelter Cap. Partners*, 718 F.3d 1006, 1030 (9th Cir. 2013).  Similarly, "declining

24  to exercise a right and ability to make [third parties] stop direct infringement" satisfies the control

25  requirement.  *VHT*, 918 F.3d at 746 (internal quotation omitted).

26  As discussed in Section II.A.1, above, direct infringement is established by successful

27  Takedown Notices or allegations of infringement made in a court of law within the class period.

28  Takedown Notices also establish ownership.  As discussed in Section II.C.2, above, the ability to

1   "locate infringing material" and terminate users will be proven through common proof of

2   YouTube's matching systems.  As discussed below, the element of direct financial benefit will

3   also be established with common evidence.

### 1.  Revenue Data and AutoPlay Establish Direct Financial Benefit

████████████████████████████████████████████████████████████████

████████████████  (Ex. 1—Agrawal Dep. at 15:1–18:22.)  YouTube's records establish the

revenue generated by each infringement played by Autoplay and, separately, Watch Next.

(Ex. 58—██████████████████████████████████████████████

Ex. 12—Wu Dep. at 139:16–21.) ████████████████████████████████████

████████████████████████████████████████████████ (*See*

*generally* Ex. 18—Singer Rpt. at ¶¶ 97–116.)  Plaintiffs' expert, Dr. Singer, has developed a

regression methodology to calculate the direct revenues earned by the viewing of infringing

content based on YouTube's records, which include revenue information on a URL-by-URL

basis.  (*See* Ex. 18—Singer Rpt. at ¶ 74 ("using YouTube's own data, the pages, views and

revenue associated with ads served on the Infringing Content can be extracted."); Ex. 9—Singer

Dep. at 155:10–25 ████████████████████████████████████

████████████████████████  Moreover, infringing content on YouTube

increases the total size of the platform, thereby increasing audience size, thereby increasing

advertising revenues.  (Ex. 18—Singer Rpt. at ¶ 16.)  Dr. Singer has also developed a method to

calculate the increased revenue from the infringing videos on the YouTube platform caused by

indirect network effects.  (*Id.* at ¶¶ 65–78.)

### E.  Common Proof Predominates for the Issue of Eligibility for DMCA Safe Harbors

YouTube is only eligible for the DMCA safe harbors if it "adopt[s] and reasonably

implement[s]" a policy that terminates "in appropriate circumstances . . . subscribers and account

holders" of YouTube "who are repeat infringers."  *Motherless,* 885 F.3d at 614; 17 U.S.C.

§ 512(i)(1)(A); *see also* [ECF 226—Plaintiffs' Proffer of Evidence at 2–7].  Independently,

YouTube must also accommodate standard technical measures ("STMs"), *i.e.*, "technical

1  measures that are used by copyright owners to identify or protect copyrighted works."  17 U.S.C.

2  § 512(i)(2); *Ellison*, 357 F.3d at 1080; *see also* [ECF 226—Plaintiffs' 1/9/23 Proffer of Evidence

3  at 2–7].  Because these issues concern Defendants' policies and procedures, the safe harbor

4  defense necessarily turns on common evidence and legal analysis.  Indeed, Defendants admit

5  these two issues are "common questions as to [the DMCA] defense".  [ECF 198, at 17–18.]

6            **1.  YouTube Has Not Reasonably Implemented a Repeat Infringer Policy**

7        A "service provider 'implements a policy'" only if it "'does not actively prevent copyright

8  owners from collecting information needed to issue'" DMCA takedown notifications.

9  *Motherless,* 885 F.3d at 617 (*quoting Perfect 10 v. CCBill,* 488 F.3d 1102, 1109 (9th Cir. 2007)).

10  Independently, the implementation is reasonable only if "under 'appropriate circumstances,' the

11  service provider terminates users who repeatedly or blatantly infringe copyright."  *Motherless*,

12  885 F.3d at 617.  Defendants cannot satisfy either of these requirements.

13        *First*, YouTube does not assess copyright strikes for infringements caught by Content ID.

14  (Ex. 56—copyright management overview at -096.)  Content ID catches approximately *1.5 billion*

15  *instances of copyright infringement per year*, constituting "over 99% of all copyright actions on

16  YouTube" regardless of whether the copyright owner has chosen to block or monetize the

17  infringing video.  (Ex. 41—Transparency Rpt. H1 2021 at 4 ("over 99%"), 10; Ex. 48—

18  Transparency Rpt. H1 2022 at 4 ("over 98%"), 10.)  Thus, *nearly all* infringement caught on

19  YouTube is insulated from its repeat infringer policy and "subscribers and account holders" who

20  upload infringements caught by Content ID are not assessed copyright strikes.  (Ex. 56—

21  copyright management overview at -096; Ex. 37—"Life of a YouTube Upload" at -783.)

22        *Second*, YouTube assesses strikes against channels, not "subscribers and account holders"

23  as called for in 17 U.S.C. § 512(i)(1)(A), or against "users", *Motherless*, 885 F.3d at

24  617.  Users can have multiple channels—a policy flaw that YouTube itself recognizes as a

25  █████████████████████████████████████████████████████████████

26  ████████  (Ex. 33—"Automated Madison Suspension Propagation (spiderMADison)"at -384;

27  Ex. 14—Zhu 30(b)(6) Dep. at 20:8–25; Ex. 34—SpiderMADison Product Overview

28  at -918.)  ███████████████████████████████████████████████████████

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1

2

3    ██████████████ (Ex. 35—SpiderMADsense Product Overview at -059 ██████████

4    ██████████████████████; Ex. 14—Zhu 30(b)(6) Dep. at 23:12–17.)

5    ██████████████████████████████████████

6

7    █████████████████████████████████████ (Ex. 16—Winograd Rpt.

8    at ¶¶ 66–70; Ex. 13—Zhu Dep. at 46:19–23; Ex. 2—Bill Dep. at 125:17–126:14; 127:17–128:7;

9    185:23–186:2.) ████████████████████████████████████

10   ████████████████████████████████████

11   ██████████████████████████████████

12   *Fourth*, when copyright holders without access to Content ID search for infringements

13   across the *billions* of videos on YouTube's platform they are limited to using keyword searches

14   that may or may not capture words listed with the infringing videos.  (Ex. 16—Winograd Rpt. at

15   ¶¶ 47–60, Exh. D; Ex. 48—Transparency Rpt. H1 2022 at 2 (YouTube recognizing that search is

16   required for takedown via the webform)).  Even when the copyright holder succeeds in selecting

17   matching keywords, ████████████████████████████████████

18   ████████████████████████████ (*See* Ex. 16—Winograd Rpt.

19   at ¶¶ 52-54, 72, 89; Ex. 5—Goodrow Dep. at 75:20-76:13; Ex. 13—Zhu Dep. at 41:11–42:5.)

20   *Fifth*, ██████████████████████████████████████████

21   ██████████████████████████████████

22   ██████████████████████████ (Ex. 23—Am. Resp. to Interrog. 4 at 7-8)

23   ██████████████████████████████ (Ex. 14—

24   Zhu 30(b)(6) Dep. at 18:15–20:6); (*see also* Ex. 11—Ting Dep. at 83:6–22.)

25   **2.  YouTube Failed to Accommodate Standard Technical Measures.**

26   Common proof will also show that, contrary to 17 U.S.C. §§ 512(i)(1)(A) and 512(i)(2),

27   YouTube uniformly fails to accommodate and instead interferes with STMs by denying class

28   members access to digital fingerprinting technology to locate infringement on its site.  YouTube

1  prevents Plaintiffs and class members (who do not have access to Defendants' Content ID) from

2  using third-party digital fingerprinting technologies.  Indeed, YouTube's TOS expressly prohibit

3  users from "access[ing] the service using any automated means (such robots, botnets, or scrapers)

4  except (a) in the case of public search engines, in accordance with YouTube's robots.txt file; or

5  (b) with YouTube's prior written permission."  (Ex. 24—Resp. to RFA Nos. 60–63 ("web-

6  scraping data from the YouTube platform without YouTube's written permission would violate

7  the YouTube Terms of Service and therefore cannot be used to 'facilitate' activities by web

8  scrapers without YouTube's written permission.").)  Although the Recording Industry Association

9  of America has asserted that fingerprinting technologies "qualify as an STM" (Ex. 45—RIAA

10  Resp. at 4; *see also* Ex. 46—Pex Resp. at 1), Defendants block (and therefore do not

11  accommodate) fingerprinting technology used to "scrape" YouTube to identify infringements.

12  (Ex. 24—Resp. to RFA Nos. 59–61.)

13              **3.   Common Proof Will Address the Additional Safe Harbor Requirements**

14         Only if Defendants satisfy the threshold eligibility conditions of 17 U.S.C. § 512(i) do the

15  DMCA's separate and additional requirements set forth in 17 U.S.C. § 512(c)(1)(A)-(C) come

16  into play.  These additional requirements consider whether Defendants receive a financial benefit

17  from infringing activity that they control or whether they had actual or red flag knowledge of

18  infringement and failed expeditiously to remove it.  17 U.S.C. § 512(c)(1)(A)-(C).  As explained

19  above, the successful Takedown Notices submitted for each class member will establish

20  knowledge of infringement (Section II.A.1, above); the common evidence concerning Watch

21  Next, Autoplay, and Content ID will establish control (Section II.C.2, above); and Dr. Singer's

22  expert testimony and evidence of revenue through Autoplay and Watch Next will show that

23  YouTube financially benefits from the infringing activity (Section II.D.1, above).

24        **F.   Common Evidence Will Resolve Any Fair Use Affirmative Defense**

25         YouTube has also asserted that some unauthorized displays may be protected by the

26  doctrine of fair use, also an affirmative defense. 17 U.S.C. § 107; *Dr. Seuss Enterprises v.*

27  *ComicMix*, 983 F.3d 443, 459 (9th Cir. 2020).  Defendants' own documents establish that fair use

28  is a *de minimis* issue, ████████████████████████████████████

NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1   (*See* Ex. 47—9/9/22 Ltr. and Ex. 41—Transparency Rpt. H2 2021 at 10).  Moreover, Defendants'

2   review of Takedown Notices and counter-notifications for fair use establishes that the fair use

3   issue does not preclude certification of the Copyright Infringement Classes.  Notably, Plaintiffs'

4   proposed Copyright Infringement Classes rely on successful Takedown Notices.  If fair use was a

5   valid issue for an uploaded video, either YouTube's vetting process would have caught it or the

6   uploader would have raised fair use in a counternotification to avoid a strike and the removal of

7   their content.  (Ex. 11—Ting Dep. at 44:12–45:18, 63:18–64:6.)  Moreover, where a video was

8   reinstated, it is not included in the definition of *successful* Takedown Notice and thus the

9   copyright holder for that video is not a class member.

10   **G.  Common Proof Predominates for the CMI Claims**

11   Copyright management information ("CMI") is used for "tracking and monitoring uses of

12   copyrighted works, as well as licensing of rights and indicating attribution, creation and

13   ownership."  *Kirk Kara Corp. v. W. Stone & Metal*, 2020 WL 5991503, at *6 (C.D. Cal. Aug. 14,

14   2020).  Copyright owners include CMI metadata in digital versions of their works so they can

15   search for that metadata and uncover instances of infringement.  (Ex. 15—Jessop Rpt. at ¶ 69–76.)

16   Accordingly, 17 U.S.C. § 1202(b)(1) prohibits intentionally removing or altering CMI with actual

17   or constructive knowledge that doing so will "induce, enable, facilitate, or conceal" copyright

18   infringement.  *Stevens v. Corelogic*, 899 F.3d 666, 673 (9th Cir. 2018).  And 17 U.S.C.

19   § 1202(b)(3) forbids persons from distributing, importing for distribution, or publicly displaying

20   works knowing that CMI was removed or altered while having actual or constructive knowledge

21   that the removal will "induce, enable, facilitate, or conceal" copyright infringement.  *Id.*

22   **1.  Liability to the ISRC Class Will Be Established through Common Proof**

23   Each class members' sound recordings at issue for the ISRC class will have an individual

24   ISRC.[6]  Common evidence of Defendants' use of such codes across their business and by the

25   industry, as a whole, will establish the elements for Defendants' violation of 17 U.S.C. § 1202(b).

26

27

28   [6] An ISRC "comprises a 12-digit alphanumeric code and functions as a universal identification number for each sound recording."  (Ex. 60—FAQs About ISRC Codes at 3.)

In the music industry, it is a standard practice to include ISRCs with a sound recording. (Ex. 15—Jessop Rpt. at ¶¶ 32, 72; Ex. 7— Nuttall Dep. at 221:24–222:19.) ████████████

████████████████████████████████████████████████████████

(*See* Ex. 54—SRAC at § 3 ████████████████████████████████████

████████████████████████████████████████████ (emphasis added)); Ex. 10—Suk Dep. at 134:1–6, 134:22–135:10).)  YouTube's expert has noted, "the use of ISRCs for content available for consumption on digital platforms as pay services is very high, it is in the range of 98 percent."  (Ex. 7—Nuttall Dep. at 223:11–15.)

Defendants necessarily know, however, that these ubiquitous ISRC codes for sound recordings of musical works are not preserved between the time they are assigned to such work and when such works end up on the YouTube platform.  ████████████████████

████████████████████████████████████████████████

████████████████████ (Ex. 19—Nuttall Rpt. at ¶ 42 ████████████████

████████████████████████████████████████████████████

████ ; Ex. 7—Nuttall Dep. at 204:8–205:12).)  Moreover, ████████████████████

████████████████████████████████████████████████

████████████ (Ex. 22—Am. Resp. to Interrog. 1 at 4–5.)  Common evidence thus establishes that the assigned ISRCs have been removed for videos available on YouTube leaving only the question whether the scienter aspects of Section 1202(b) have been met.

With respect to the second scienter issue, as the Ninth Circuit notes in *Stevens*, a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, "such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probably future impact of its actions" distributing works with CMI removed.  *Stevens*, 899 F.3d at 674.  Common evidence of Defendants' pattern of conduct and modus operandi with respect to ISRCs will establish their scienter.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

1   ███████████████ (Ex. 54—SRAC at § 3(d).) ████████████████

2   ██████████████████████████████████████████████████████████

3   ██████████████████████ (*Id.* (emphasis added); *see also* Ex. 28—PLA at § 3(d).)

4   ████████████████████████████████████████████████████████

5   ████████████ (Ex. 10—Suk Dep. at 134:1–6; 134:22–135:10.) ████████████

6   ████████████████████████████████████████████████████████████

7   ████████████████████████ more than satisfies the standards set forth in *Stevens*.

8   **2.   Liability for the CLFN Class Will Be Established Through Common Proof**

9   When a video is created from component files, such as pre-recorded songs or video clips,

10  at least one commonly used video production software automatically stores the name of each

11  component file in a CMI metadata field called clip filename ("CLFN").  (Ex. 15—Jessop Rpt.

12  at ¶¶ 142, 147.)  Because the CLFN field is generated automatically by such software, this

13  metadata field has a unique quality: it can be used to identify an infringing component work in a

14  final rendered video even when the uploader does not identify the infringed work in the video's

15  description or keyword tags.  (*Id.* at ¶ 142.)  CMI such as song titles and artist names contained in

16  CLFN fields are present in Defendants' Takedown Notice databases; analyzing Defendants'

17  records, it is possible to determine whether CMI was present in the CLFN field when a video was

18  uploaded.  (*Id.* at ¶¶ 137–46.) ████████████████████████████████

19  ██████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████████

21  (Ex. 22—Am. Resp. to Interrog. 1 at 4–5; Ex. 7—Nuttall Dep. Tr. at 34:8–22.)

22  **H.   Plaintiffs' Remedies Can Be Established with Common Methods**

23  The classes are entitled either to statutory or actual damages.  17 U.S.C. § 504(c)(1); *Polar*

24  *Bear Prod. v. Timex.*, 384 F.3d 700, 710 (9th Cir. 2004); 17 U.S.C. § 1203(c).  Any individualized

25  damage calculations cannot by itself defeat class certification.  *Leyva v. Medline Indus.*, 716 F.3d

26  510, 514 (9th Cir. 2013);  *In re Facebook, Inc. IPO Securities & Derivative Litig.*, 312 F.R.D.

27  332, 350 (S.D.N.Y. 2015) ("*Comcast* does not bar certification" because the statute "provides a

28  statutory formula for damages").

### 1. Statutory and Actual Damages

Members of the Registered Works Infringement Class and the CMI Classes may elect between actual and statutory damages. The former is eligible to receive a single statutory award for each *work* infringed *Friedman v. Live Nation Merch.*, 833 F.3d 1180, 1189–90 (9th Cir. 2016). while the CMI classes are eligible for a statutory award for each video that contained the work. *See GC2 v. Int'l Game Tech., IGT, Doubledown Interactive*, 391 F. Supp. 3d 828, 850–51 (N.D. Ill. 2019). YouTube's Takedown Notice data will allow a straightforward administrative task to determine the statutory damages to award to each member based on their respective number of infringing works or number of videos containing a work. (Ex. 17—Cowan Rpt. at ¶¶ 95, 98.)

The appropriate range of statutory damages focuses predominantly on Defendants' conduct, raising class-wide issues, including Defendants' level of control. 17 U.S.C. § 504(c)(2).[7] Further, Dr. Singer's estimate of profits attributable to all infringing content on the YouTube platform will assist the jury in assigning the correct amount of statutory damages. (Ex. 18— Singer Rpt. at ¶ 67. ("I can also use publicly available estimates relating to the total percentage of infringing videos on the platform to estimate Defendants' profits derived from all infringing works, including those that remain undetected.").) Should a class member decline or be ineligible for statutory damages, Dr. Singer has created a method for determining disgorgement-of-profits damages on a common basis. (*See* Ex. 18—Singer Rpt. at ¶ 116.)

Members of the Foreign Unregistered Works Infringement Class are entitled to their share of the direct and indirect profits that YouTube derived from the infringing activity. Dr. Singer has developed a methodology to calculate the aggregate amount of direct and indirect profits

---

[7] Courts consider: "(1) expenses saved and the profits reaped; (2) revenues lost by the plaintiff; (3) value of the copyright; (4) deterrent effect on others besides the defendant; (5) whether defendant's conduct was innocent or willful; (6) whether defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) potential for discouraging the defendant." *Microsoft v. Nop*, 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008). Most of these factors focus on *Defendants' conduct* allowing for resolution on a class-wide basis. And, even "profits reaped" will be established through indirect network effects showing ill-gotten monetary gains class-wide. (Ex. 18—Singer Rpt. at ¶ 16.) *See also In re Google Play Store*, 2022 WL 17252587, at *15 (Donato, J.) (Class action is superior to individual proceedings" where "individualized issues on impact and damages can be managed at trial.").

1  YouTube derives from infringing content on its platform, as well as a method to calculate

2  damages for each class member.  (*See* Ex. 18—Singer Rpt. at ¶¶ 97–112.)

3  **2.  Injunctive Relief**

4  The right to injunctive relief will also be established through common proof.  The

5  injunctive relief requested can be granted as ancillary relief to the Rule 23(b)(3) class.  (*See*

6  Ex. 20—4/28/22 Hrg. Tr. at 24:23–26 ("You can get injunctive relief in the context of a (b)(3)

7  class.  That's ancillary relief."); *Bumpus v. Realogy Brokerage Grp*. LLC, 2022 WL 867256, at

8  *10 (N.D. Cal. Mar. 23, 2022) (Injunctive "relief may be awarded in addition to a monetary

9  recovery."); *In re Google Play Store*, 2022 WL 17252587, at *15 (N.D. Cal. Nov. 28, 2022)

10  (Donato, J.).  Here, the Copyright Infringement Classes seek access, on reasonable terms, to

11  digital fingerprinting functions from Defendants' own Content ID system and elimination of the

12  prohibitions on use of such technology from third parties.  The availability and necessity of this

13  relief will be established on a class-wide basis.  (*See, e.g.,* Ex. 16—Winograd Rpt. at ¶¶ 91–110.)

14  The CMI Classes seek injunctive relief that follows directly from the class-wide proof of liability

15  under 17 U.S.C. § 1202(b), namely that Defendants be ordered to stop violating the statute and to

16  stop altering or removing CMI and/or distributing works where CMI has been removed or altered.

17  **III.    A CLASS ACTION IS THE SUPERIOR METHOD**

18  A class action is superior here because the "maintenance of this litigation as a class action

19  is efficient and . . . fair."  *Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175–76 (9th Cir.

20  2010).  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an

21  individual basis, this factor weighs in favor of class certification.  *Id*. at 1175.  As with the

22  analogous *Napster* case, even with the incentives provided by the Copyright Act (statutory

23  damages and attorneys' fees), "it nonetheless remains true that many small composers

24  individually lack the time, resources, and legal sophistication to enforce their copyrights."  *In re*

25  *Napster Copyright Litig.*, 2005 WL 1287611, at *8.  Further, it is desirable to concentrate the

26  litigation in this District.  Defendants are headquartered here, and this District (and the Ninth

27  Circuit generally) are experienced in dealing with class actions and copyright cases.

28

**IV.     IN THE ALTERNATIVE, A 23(C)(4) ISSUES CLASS IS ALSO APPROPRIATE**

As explained above, the factors for a Rule 23(b)(3) class are satisfied.  In the alternative, however, because no reasonable question exists that Plaintiffs satisfy all Rule 23(a) factors and a class action is the superior method, Plaintiffs respectfully request certification of a Rule 23(c)(4) issues class, resolving the common issues identified in Section II.  *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 544 (N.D. Cal. 2012) ("even if individualized issues were to predominate with respect to Plaintiffs' monetary relief claims, the Court would utilize the mechanism under Rule 23(c)(4) to adjudicate those issues capable of class-wide resolution separately.").

**V.     APPOINTMENT OF CLAIMS ADMINISTRATOR**

Plaintiffs have retained Angeion Group as claims administrator, subject to Court approval. Angeion Group has successfully administered class actions, including in this District.  A summary of its relevant experience appears in Exhibit 81.  Any individualized issues will efficiently be resolved through claims administration.  "There are a variety of procedural tools courts can use to manage the administrative burdens of class litigation, including the use of claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court."  *Norton v. LVNV Funding, LLC*, 2020 WL 5910077 at *11 (N.D. Cal. Oct. 6, 2020) (quotation marks omitted); *see also In re Capacitors Antitrust Litig.*, 2018 WL 5980139, at *9 (N.D. Cal. Nov. 14, 2018) (Donato, J.).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court **GRANT** Plaintiffs' Motion for Class Certification.

Respectfully submitted,

Dated:  February 13, 2023                     ___*/S/ Philip Korologos*___
                                                          Philip C. Korologos (*pro hac vice*)
                                                          *pkorologos@bsfllp.com*
                                                          Joanna Wright (*pro hac vice*)
                                                          *jwright@bsfllp.com*
                                                          Jeffrey Waldron (*pro hac vice*)
                                                          *jwaldron@bsfllp.com*
                                                          BOIES SCHILLER FLEXNER LLP
                                                          55 Hudson Yards, 20th Floor

New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

George A. Zelcs (*pro hac vice*)
*gzelcs@koreintillery.com*
Randall P. Ewing, Jr. (*pro hac vice*)
*rewing@koreintillery.com*
Ryan Z. Cortazar (*pro hac vice*)
*rcortazar@koreintillery.com*
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe (*pro hac vice*)
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Attorneys for Plaintiffs*