# EXHIBIT 14

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

---oOo---


MARIA SCHNEIDER, UNIGLOBE
ENTERTAINMENT, LLC, and
AST PUBLISHING LTD.,
individually and on behalf
of all others similarly
situated;

         Plaintiffs,

vs.                    Case No. 3:20-cv-04423-JD

YOUTUBE, LLC; and GOOGLE
LLC;

         Defendants.
_____/


THIS TRANSCRIPT CONTAINS

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY TESTIMONY

30(b)(6) REMOTE VIDEOTAPED DEPOSITION OF KEVIN ZHU

PALO ALTO, CALIFORNIA

TUESDAY, JUNE 21, 2022


STENOGRAPHICALLY REPORTED BY:

ANDREA M. IGNACIO, CSR, RPR, CRR, CCRR, CLR

CSR LICENSE NO. 9830

JOB NO. 842689



Page 2

```
 1            UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                     ---oOo---
 4
 5   MARIA SCHNEIDER, UNIGLOBE
     ENTERTAINMENT, LLC, and
 6   AST PUBLISHING LTD.,
     individually and on behalf
 7   of all others similarly
     situated;
 8
          Plaintiffs,
 9   vs.            Case No. 3:20-cv-04423-JD
10   YOUTUBE, LLC; and GOOGLE
     LLC;
11
          Defendants.
12   _____/
13
14
15      30(b)(6) Remote Videotaped Deposition of
16   Kevin Zhu, taken on behalf of the Plaintiffs, on
17   Tuesday, June 21, 2022, beginning 9:03 a.m., and
18   ending at 12:12 p.m., Pursuant to Notice, and
19   before me, ANDREA M. IGNACIO, CSR, RPR, CRR, CLR ~
20   No. 9830.
21
22
23
24
25
```

Page 4

```
 1   R E M O T E   A P P E A R A N C E S:  (Cont.)
 2
 3
 4   COUNSEL FOR THE DEFENDANTS:
 5     WILSON SONSINI GOODRICH & ROSATI
 6     BY:  BRIAN M. WILLEN, Esq.
 7          QIFAN HUANG, Esq.
 8          BEN HEWITT, Esq.
 9     650 Page Mill Road
10     Palo Alto, CA 94304-1050
11     (650) 493-9300
12
13
14   ALSO PRESENT:  Richard Loftus, Videographer
15                  Samuel Reed Dippo, YouTube/Google
16
17                  ---oOo---
18
19
20
21
22
23
24
25
```

Page 3

```
 1   A P P E A R A N C E S:
 2
 3   COUNSEL FOR PLAINTIFFS:
 4     BOIES SCHILLER FLEXNER LLP
 5     By:  PHILIP C. KOROLOGOS, Esq.
 6          JEFFREY WALDRON, Esq.
 7     55 Hudson Yards, 20th Floor
 8     New York, NY 10001
 9     (212) 446-230
10
11          -- and --
12
13     KOREIN TILLERY, LLC
14     By:  CAROL O'KEEFE, Esq.
15          RYAN CORTAZAR, Esq.
16     205 North Michigan, Suite 1950
17     Chicago, IL 60601
18     Telephone: (312) 641-9750
19
20
21
22
23
24
25
```

Page 5

```
 1              I N D E X
 2
 3   WITNESS:  Kevin Zhu, 30(b)(6)
 4
 5   EXAMINATION                 PAGE
 6   By Mr. Korologos             7
 7
 8
 9            E X H I B I T S
10   EXHIBIT                     PAGE
11   Exhibit 106  How Google Fights Piracy    28
12   Exhibit 107  The difference between copyright   58
13        takedowns and Content ID claims
14   Exhibit 108  4-16-2020 The difference between   59
15        copyright takedowns and Content
16        ID claims
17
18            ---oOo---
19   HIGHLY CONFIDENTIAL ATTORNEYS' EYES ONLY
20   (See attached 7-19-22 Letter from Wilson Sonsini)
21
22
23
24
25
```




Page 6

```
 1          REMOTE ZOOM DEPOSITION
 2          TUESDAY, JUNE 21, 2022
 3                9:03 A.M.
 4
 5
 6          THE VIDEOGRAPHER:  We are now on the record.
 7    This begins Videotape No. 1 in the deposition
 8    of Kevin Zhu.  In the matter of Maria Schneider
 9    v. YouTube LLC.
10          Today is June 21st, 2022, and the time is
11    9:04 a.m.
12          This deposition is being taken virtually at
13    the request of Boies Schiller & Flexner LLP.
14          The videographer is Richard Loftus of Magna
15    Legal Services, and the court reporter is Andrea
16    Ignacio.
17          Would counsel and all parties present state
18    their appearances and whom they represent.
19          MR. KOROLOGOS:  Good morning.  Phil Korologos
20    and Jeffrey Waldron from Boies, Schiller & Flexner, on
21    behalf of the plaintiffs.
22          MR. WILLEN:  Good morning.  Oh, sorry.  This
23    is Brian Willen, along with Qifan Huang and Ben Hewitt
24    from Wilson Sonsini, on behalf of defendants.
25          MS. O'KEEFE:  Good morning.  Carol O'Keefe
```

Page 7

```
 1    and Ryan Cortazar of Korein Tillery, on behalf of the
 2    plaintiffs.
 3          MR. REED DIPPO:  Good morning.  Samuel Reed
 4    Dippo, product counsel for YouTube on behalf of Google
 5    LLC.
 6          THE VIDEOGRAPHER:  Will the court reporter
 7    please swear in the witness.
 8
 9                KEVIN ZHU,
10          having been remotely sworn as a witness
11            by the Certified Shorthand Reporter,
12                testified as follows:
13
14                EXAMINATION
15    BY MR. KOROLOGOS:
16          Q  Good morning, Mr. Zhu.
17          A  Good morning.
18          Q  We are going to start today with the
19    corporate representative deposition.  And I take it
20    you understand that for at least part of today, you'll
21    be speaking on behalf of YouTube.  And then later on
22    today, we'll ask you some questions in your individual
23    capacity.
24          Do you understand that?
25          A  Yes.
```

Page 8

```
 1          Q  Okay.  Within YouTube, what is a repeat
 2    infringer?
 3          A  So a repeat infringer is -- a repeat
 4    infringer is someone who has been terminated for --
 5    has a channel terminated for excessive copyright
 6    strikes.
 7          MR. WILLEN:  Sorry.  I just want to -- just
 8    for the record, before we get started, I just want to
 9    note that obviously, we've -- we've objected and
10    provided some -- some limitations on the 30(b)(6)
11    notice.  We did so in objections that were served on
12    June 20th.  So I just want to note for the record that
13    the witness will be appearing consistent with those
14    objections and limitations.
15          But we can go ahead.
16          MR. KOROLOGOS:  Thank you, Brian.  We
17    received those, though we don't view the objections
18    that you put in for the attempt to narrow the topics
19    as a basis to narrow what the witness' testimony can
20    be today for the 30(b)(6) portion.
21          But hopefully, that won't be an issue based
22    on what the questions are.  If it is, I'm sure you
23    will raise your objections appropriately, and we can
24    deal with that in due course.
25          MR. WILLEN:  Yeah, that -- that is the plan.
```

Page 9

```
 1    So we'll take it one question at a time.
 2          MR. KOROLOGOS:  Q.  Back to you, Mr. Zhu.
 3          How is infringement determined within
 4    YouTube?
 5          MR. WILLEN:  Objection to the form.
 6          MR. KOROLOGOS:  Q.  You can answer.
 7          A  So I guess -- how is infringement determined?
 8    I -- I would say that, you know, YouTube maintains a
 9    system compliant with the DMCA for receiving notices
10    of alleged copyright infringement from copyright
11    holders, and we offer a variety of ways to submit
12    these takedown notices.
13          And if a takedown notice is -- if a takedown
14    notice meets the requirements of the DMCA for removal,
15    then we -- we remove the video, and -- and -- and
16    copyright strike is assessed on the -- on the channel.
17          Q  So unless a notice of copyright infringement
18    from a copyright holder is sent to YouTube, there is
19    no determination of infringement within YouTube?
20          MR. WILLEN:  Objection to the form.
21          THE WITNESS:  So unless a notice of copyright
22    infringement is sent to YouTube that's compliant with
23    the requirements laid out in the DMCA, then, you
24    know -- then we don't -- then there is no, you know,
25    removal of copyright -- of videos for alleged
```

3 (Pages 6 to 9)



MAGNA
LEGAL SERVICES

Page 10

1  copyright infringement.
2      MR. KOROLOGOS:  Well, I understand there's no
3  removal.
4      Q  But is there any determination as to whether
5  there is infringement other than if a DMCA notice is
6  submitted?
7      A  I -- from my understanding, we are not in a
8  position to determine infringement unless a -- a DMCA
9  notice is submitted.
10     I guess I would say I don't know -- sorry.
11  Just to add to that, I'm not sure we're in a position
12  to determine infringement, I guess even in the case of
13  a DMCA notice.  We -- we are -- we -- we -- we comply
14  with the requirements of DMCA for assessing notices of
15  alleged infringement.
16     So I would -- I would say we -- we are -- we
17  are in a position to assess whether a notice is
18  compliant with those requirements and remove it, yes,
19  when -- when that is the case.
20     But I don't know that -- I mean, this -- this
21  seems -- sounds like -- I'm not a lawyer, so I
22  don't -- I don't know if I am in a position to
23  determine what is infringing, what is not.
24     I don't really have knowledge -- if I'm
25  looking at a particular DMCA notice, I don't

Page 11

1  necessarily have all the knowledge of the facts and
2  circumstances of the copyright holder's rights or the
3  uploader.  I only know what the -- you know, what --
4  what the notice says.
5      And in my -- in my previous role as manager
6  of the copyright operations team, the team's
7  responsibility was to compare -- is to compare the --
8  you know, the -- the takedown notices that we receive
9  with -- with the requirements of the law.
10     Q  Okay.  Let me -- let me change the word
11  "determine" to "count."
12     Does -- does YouTube count as infringement
13  any conduct by its uploaders other than if it receives
14  a DMCA takedown notice?
15     MR. WILLEN:  Objection to the form.
16     THE WITNESS:  Sorry.  Could you -- can you
17  repeat that question again.
18     MR. KOROLOGOS:  Sure.
19     Q  Does YouTube count as infringement, for
20  purposes of its repeat infringement policy, any
21  conduct by YouTube upload- -- uploaders other than if
22  YouTube receives a DMCA takedown notice?
23     A  To the best of my knowledge, no.
24     Q  So if a video is blocked as a result of
25  content ID, that is not counted as infringement?

Page 12

1      A  To the best of my knowledge, no.
2      Q  Well, when you say to the best of your
3  knowledge, you understand that you are speaking on
4  behalf of YouTube; right?
5      A  Sure, yeah.
6      Q  And -- and have you undertaken an effort, at
7  least within the scope of the topics as identified by
8  your counsel, to obtain knowledge about the topics
9  we're talking about today on the 30(b)(6)?
10     A  I have.
11     Q  Okay.  And so when you say to the best of
12  your knowledge, that's after you've done some homework
13  to try to find out; is that right?
14     A  Yes, yeah.
15     Q  Okay.  And am I correct that YouTube also
16  does not count as infringement a video that is
17  monetized as a result of a content ID match?  Is that
18  right?
19     A  That's right.
20     Q  What about if there is a copyright management
21  tool match?  Does that result in a infringement for
22  purposes of YouTube's copyright infringement policy?
23     A  It does not unless the match is used by the
24  owner -- the channel owner who has access to copyright
25  initially to send a takedown notice to YouTube.  And

Page 13

1  if the takedown notice is valid, then the video is
2  removed.  And -- and then that -- that is counted
3  toward the -- the count of copyright strikes toward
4  repeat infringement.
5      Q  When you say unless the match is used by the
6  channel owner who has access to the copyright
7  management tool, what do you mean?
8      A  Well, what I mean is, copyright management
9  tool is a feature that is available to channels in
10  their YouTube studio interface.
11  █████████████████████████████████████████████
   █████████████████████████████████████████████
   █████████████████████████████████████████████
   █████████████████████████████████████████████
   █████████████████████████████████████████████
   █████████████████████████████████████████████
   █████████████████████████████████████████████
   █████████████████████████████████████████████
20     And then that's -- that's -- that's --
21  through that interface, the channel owner can elect to
22  a user match and -- and -- and sort of prefill some
23  elements of the DMCA takedown notice.
24     So they don't necessarily need to provide the
25  URL of the video or the timestamps, for example, to --



**Page 14**

```
 1   to -- it's a way to facilitate an easier way to
 2   provide a DMCA notice.
 3        And -- and then they can fill out the rest of
 4   the form, of course, to, you know, send us a notice
 5   that, you know, then we assess whether it meets the
 6   DMCA requirements.
 7        The channel owner can also choose to contact
 8   the uploader or archive the match and just kind of
 9   make it go away, you know, if they don't want to do
10   anything, for whatever reason.
11   Q   Okay.  Other than channel owners, does
12   anybody else have access to the copyright management
13   tool?
14   A   Other than channel owners, no.  So -- so
15   having a channel is necessary to be able to operate
16   the tool, because there is a -- like, these features
17   that I'm speaking of, such as, you know, showing --
18   showing matches not just of videos that you've
19   uploaded, but also videos that you have successfully
20   taken down through a web form takedown notice
21   submission.  These are -- it's necessary to have some,
22   you know, account, just for a technical reason, to tie
23   these matches to.  So -- so we -- so we do need
24   someone to have a YouTube channel in order to be able
25   to do that.
```

**Page 15**

```
 1        Of course, if you want access to copyright
 2   management tools, you could have a forwarding channel.
 3   You don't necessarily have to operate the channel in a
 4   normal way that the YouTube creator would tend to
 5   operate the copyright match tool, you -- you know, you
 6   can take down videos through the web form.  And
 7   copyright match tool will -- you know, will -- will
 8   show you potential copies of -- of those videos, as
 9   well as, you know, for -- you can also upload videos.
10        Copyright match can also detect potential
11   copies of videos that are uploaded as private.  So the
12   original owner doesn't necessarily need to, like,
13   distribute or show their video on YouTube.
14   Q   And copyright manage -- match tool is used to
15   identify re-uploads of videos that either have been
16   uploaded by some first channel to upload it or that
17   have been taken down; is that right?
18   MR. WILLEN:  Objection to the form.
19   MR. KOROLOGOS:  Q.  You can answer.
20   A   Sorry.  I just want to make sure I understand
21   the question.  Can you -- can you repeat that.
22   Q   Sure.  The copyright management tool focuses
23   on re-uploads of videos; is that right?
24   A   That's right.
25   Q   Okay.  What is YouTube's current repeat
```

**Page 16**

```
 1   infringer policy?
 2   A   YouTube's current repeat -- repeat infringer
 3   policy.
 4        So when YouTube receives takedown notices
 5   through, you know, a variety of means that are
 6   available to copyright owners to submit such notices,
 7   such as the web form or copyright management tool or
 8   e-mail, fax, you know, a variety of ways, we assess
 9   the takedown notice against the requirements of the
10   DMCA.  And if the notice meets those requirements, we
11   remove the video, and copyright strikes are assessed.
12
13
14
15
16
17        You know, just to provide a -- this is --
18   this is one of the ways we balance the copyright
19   strike system so that it's -- it can serve an
20   educational purpose and not necessarily -- not
21   necessarily result in consequences for -- for --
22   potentially disproportionate to the conduct.
23        Then channel -- then strikes can -- once a
24   video is taken down and copyright strikes are
25   assessed, then -- one or more copyright strikes are
```

**Page 17**

```
 1   assessed by -- by the notice, then the uploader can --
 2   can seek to resolve the strike and get the video
 3   reinstated either by obtaining a retraction of the
 4   claim of copyright infringement from the claimant, or
 5   by filing a counter-notification.
 6        And, you know, if they do so, then we assess
 7   whether the counter-notification is valid.  If it --
 8   if it's valid, we, you know, follow the process
 9   described in the DMCA and forward it to the copyright
10   holder.  And, you know, that, I'm sure, sort of -- you
11   know, generally, what the -- what the DMCA prescribes
12   from there.
13        And so if strikes are not resolved through
14   those two processes, then they continue as active
15   unless -- until both 90 days have passed, as well as
16   the channel has completed copyright holds at some
17   point.  If both of those requirements are met, then
18   the strike can expire at the end of 90 days.  But if
19   three or more strikes are accrued, then the -- the
20   channel is subject to termination.
21        There are circumstances in which, you know,
22   under -- under our repeat infringer policy, you know,
23   some channels get three -- if they get -- if they --
24   once they get their third active strike within
25   90 days, they have a courtesy period of seven days
```



Page 18

1   where the channel does not get terminated.  And
2   then -- and they have that time to, you know, try to
3   resolve those strikes.
4        They get below the -- the count of -- of
5   three, and they can, you know, use the -- the -- that
6   would be through the retraction or account
7   notification processes.  And if they are able to --
8   to -- to do that successfully, then -- then the
9   channel does not get terminated.
10        So these are channels -- for instance,
11  they're -- these are channels that are in the YouTube
12  partner program and -- and channels -- channels that
13  we have more knowledge of through business
14  relationships.
15

Page 20

1

7        MR. KOROLOGOS:  Thank you.
8

Page 19

1

Page 21

1







Page 22



Page 24

1  for termination.  But the -- the reason I described it
2  as subject to is that in some cases, the channel is
3  immediately terminated due to three strikes.
4  Sometimes it is -- it has the seven-day courtesy
5  period.
6

14     Q   Okay.  Any other mechanisms for that?
15     A   Any other mechanisms for what?
16     Q   For -- for why it would be subject, as
17  opposed to just automatically terminated.
18     A   That's it.
19     Q   Okay.  And when you mentioned the seven-day
20  courtesy period, did I understand you correctly to say
21  that is available only for YouTube -- for -- let me
22  withdraw that.
23        Did I understand you correctly to say that
24  the seven-day courtesy period is only available for
25  participants in the YouTube partner program?

Page 23

1

18        MR. KOROLOGOS:  Okay.
19     Q   Now, with respect to termination, I believe
20  you used the phrase, when I asked about the repeat
21  infringer policy, that a channel would be subject to
22  termination.
23        What's the difference between subject to
24  termination or termination?
25     A   Yeah, so that means the channel is eligible

Page 25

1     A   So it's available to -- yeah, it's -- it's
2  available to channels that YouTube has a exigent
3  degree of review performed, and that has a -- YouTube
4  has more information about from -- from being in the
5  business relationship.  So that includes the YouTube
6  partner program.
7     Q   When you say has a business relationship,
8  what kind of business relationship other than being in
9  the YouTube partner program?
10        That's one business relationship; right?
11     A   Sorry.  What was the -- what was the last
12  sentence?
13     Q   Well, you -- you -- you used the phrase
14  "being in the business relationship."  And then you
15  said "that includes the YouTube partner program."
16        What other business relationships other than
17  being in the YouTube partner program count for
18  purposes of the seven-day courtesy period?
19     A   There are also channels that are -- have a --
20  a contractual relationship with YouTube outside of the
21  business -- outside of the YouTube partner program.
22  So the -- the YouTube partner program is -- is -- is
23  the -- I believe the vast majority of the channels
24  that have access to the courtesy period.
25



Page  38

1   Q  So in -- in my example, first, I had "Hang
2   Gliding."  That got taken down by Maria Schneider in
3   my hypothetical.  That was a copyright strike; right?
4   A  Where -- where a DMCA takedown notice was
5   sent, yes, uh-huh.
6   Q  Okay.  But where Bruce Springsteen's "Thunder
7   Road" was used as the audio, and that was blocked by a
8   content ID participant, that is not a copyright
9   strike; correct?
10  A  That's right.
11  Q  And if I then take the same visual portion of
12  the video and pull out Bruce Springsteen's "Thunder
13  Road," and let's say I put in Queen's "Bohemian
14  Rhapsody," and that goes up, and whoever is or is
15  among the copyright owners for the reference file and
16  content ID, if they choose to monetize, still no
17  copyright strike.  But this time, my video stays up on
18  YouTube; is that right?
19  A  So I just want to make sure.  You're --
20  you're asking about the difference between a takedown
21  notice, a claim that's blocking a video, and a claim
22  that's monetizing a video, and what the resultant
23  copyright strike situation is in which case?
24  Q  Yes.
25  A  The monetized claim does not result in the

Page  39

1   copyright strike.
2   Q  Okay.  Now, earlier this morning, you
3   mentioned that the uploader can seek to resolve a
4   takedown notice.  And one of the things I believe you
5   referenced there, but correct me if I'm wrong, was
6   that the uploader can submit a counter-notification
7   pursuant to the DMCA; is that correct?
8   A  Yes, uploader can re-- can submit a
9   counter-notification in -- in response to a video
10  that's been removed by a DMCA notice.
11  Q  Okay.  When that happens, what does YouTube
12  do to assess the completeness and validity of the
13  counter-notification?
14  A  So YouTube assesses it against the
15  requirements of a counter-notification in the DMCA.
16  So it has to contain contact information, a full legal
17  name, an address, e-mail address, phone number, I
18  believe.  Sorry.  I haven't looked at the requirements
19  in a while, but, you know, some -- some -- some forms
20  of contact information specified by the -- by the law
21  and agreed to the -- the DMCA counter-notification
22  legal statements, and specify -- specify a URL.
23

Page  40

1

18      MR. KOROLOGOS:  Q.  Now, we -- we talked a
19  little earlier this morning about termination versus
20  subject to termination, and I want to follow that up a
21  little bit.
22      Has YouTube's policy with respect to repeat
23  infringers ever been to suspend a channel as opposed
24  to terminate?
25      MR. WILLEN:  Objection to form.

Page  41

1      THE WITNESS:  What do you mean by "suspend"?
2      MR. KOROLOGOS:  Q.  Well, my understanding of
3   the word "suspend" is that it is temporary as opposed
4   to permanent, and that termination would be permanent.
5   And I -- that -- that's my understanding, and I mean
6   the -- my question in that vein.
7   A  Okay.  Thanks.
8      So the question is, has it ever been
9   YouTube's policy to temporarily suspend a channel as a
10  result of three copyright strikes rather than
11  terminating the channel?
12      The -- so since I've been at YouTube, which
13  is since 2013, that's -- that's not been -- there has
14  been no policy to temporarily suspend channels as a
15  result of copyright strikes.
16      So I will say terminate -- termination is not
17  necessarily permanent.  It's permanent if the --
18  the -- the strikes that cause the termination are
19  unresolved.  Of course, it gets resolved through
20  tracking the --
21      THE REPORTER:  Okay.  I'm sorry.  It's not
22  coming in.  "Of course, it gets resolved through
23  tracking the--"
24      THE WITNESS:  Of course, if it gets resolved
25  through a retraction or counter-notification after the

11  (Pages 38 to 41)



Page 74

1    I -- I -- I -- I don't -- I can't really answer that
2    with a simple yes or no, because I -- it's just not an
3    area that I work on.
4        MR. KOROLOGOS:  Q.  Are you aware of any
5    third-party digital fingerprint technology that people
6    are allowed to use on the content that's on YouTube's
7    platform?
8        MR. WILLEN:  So objection to form, and same
9    objection with respect to scope of the noticed topic.
10        MR. KOROLOGOS:  And same response to your
11    objection.
12        THE WITNESS:  I think your question is, what
13    other technologies are people allowed to use or, you
14    know, what is our policy around that?
15        I -- I don't know the answer.
16        MR. KOROLOGOS:  Q.  Well, to be clear, my
17    question was, are you aware of any third-party digital
18    fingerprint technology that people are allowed to use
19    to review the content that's on YouTube's platform?
20        MR. WILLEN:  So same objections.
21        MR. KOROLOGOS:  Same response.
22        THE WITNESS:  Yeah, I just want to make -- I
23    just -- I want to make sure I'm answering the right
24    question in that question.
25        I -- I think that the -- the -- the part that

Page 75

1    I don't have, I think, sufficient knowledge of to
2    answer is -- is what -- what other technologies are
3    allowed to be used.  So I can't really answer the
4    question due to that part of the question.
5        MR. KOROLOGOS:  Okay.
6        Q  But to be clear, I -- I have tried to deal
7    with your concerns about the sufficiency of your
8    knowledge on what other technologies are allowed to
9    simply ask, are you aware of any?
10        Whether it's allowed or not, are you aware of
11    any digital fingerprint technology that is not
12    YouTube's digital fingerprint technology that people
13    use on YouTube's content on its platform?
14        MR. WILLEN:  Same objections.  That is a
15    different question than what you asked before.  I
16    don't know if that was intended.  But same objections.
17        MR. KOROLOGOS:  Well, it's a question that
18    I'd like an answer to.
19        MR. WILLEN:  Sure.
20        THE WITNESS:  So your -- the question you
21    would like me to answer is, am I aware of other -- of
22    non-YouTube third-party fingerprinting technology that
23    people use on YouTube?
24        MR. KOROLOGOS:  Yes.
25        THE WITNESS:  I'm aware of the existence of

Page 76

1    such technologies.  I don't know -- I don't have much
2    working knowledge of the specific technologies or,
3    like, their names, what they're capable of.  I -- I --
4    I know generally that they exist.
5        MR. KOROLOGOS:  Q.  And do you know if
6    anybody uses them on content that's on YouTube?
7        MR. WILLEN:  Same objection.
8        THE WITNESS:  I don't know if -- I don't know
9    who or if, you know, particular technologies are
10    currently being used on YouTube.
11        MR. KOROLOGOS:  Okay.
12        THE WITNESS:  I know they have --
13        MR. KOROLOGOS:  Okay.
14        Q  Now, in what -- let me withdraw that.
15        How long has YouTube had a web form that
16    people could submit for takedown notices?
17        A  How long have people -- has there been a web
18    form for takedown notices?
19        Q  How long, yeah.
20        A  At least as long as I've been at YouTube,
21    since 2013.
22        Q  Okay.
23        A  Definitely before then.  I don't know exactly
24    how long.
25    ████████████████████████████████████████████

Page 77

1    ████████████████████████████████████████████



Page 78



Page 80

9    MR. WILLEN:  So it -- it may be that there is
10   no way to answer that question without revealing the
11   substance of communications.  I don't -- I don't know.
12       But I -- I certainly would want the witness
13   to be cognizant of the -- of the privilege.  And if --
14   if there is a way to answer that question without
15   revealing the substance of advice that's been given,
16   it's okay to answer.
17       But if -- if there isn't, then I would
18   instruct the witness not to answer the question.
19       MR. KOROLOGOS:  Well, let me ask you a
20   question, Brian:  Is it your position that a policy
21   that's been adopted by YouTube, even if legal advice
22   went into that policy, is privileged?
23       MR. WILLEN:  Not necessarily.  But -- but
24   I -- there -- it hasn't been established that there --
25   that there is a policy.  So that's assuming something

Page 79

1    Q  Does YouTube sometimes ask rights holders
7    that submit a takedown notice to confirm that they
8    have completed a fair use analysis?
9    A  Some -- sometimes YouTube, in response to a
10   takedown request, asks claimants to -- to -- to
11   provide an explanation for how they have -- how -- how
12   they have assessed that the video doesn't meet
13   copyright exception -- potential copyright exceptions,
14   including fair use in the United States.
15

Page 81

1    that may or may not be true.
2        MR. KOROLOGOS:  Well, your documents show
3    that there is.
4        MR. WILLEN:  Well, you can show him a
5    document and ask him a question about it.
6        MR. KOROLOGOS:  Well, I -- I am asking a
7    question about it.  I don't need to show the document
8    to the witness while I'm asking the question.  But I
9    press my question.
10       MR. WILLEN:  Well, can you -- can -- can we
11   repeat the question just so we know --
12       MR. KOROLOGOS:  Sure.
13       MR. WILLEN:  -- what we're...
14

21  (Pages  78  to  81)









Witness: Kevin Zhu — June 21, 2022 30(b)(6) Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

**Errata Sheet**



Witness: Kevin Zhu — June 21, 2022 30(b)(6) Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

Witness: Kevin Zhu — June 21, 2022 30(b)(6) Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

Witness: Kevin Zhu — June 21, 2022 30(b)(6) Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| | | |
|---|---|---|
| ████ | ████ | ███ |
| ██ | █████████████ | ████████ |
| ██ | █████████████ | ████████ |
| ██ | █████████████ | ████████ |
| ██ | █████████████ | ████████ |
| ██ | █████████████ | ████████ |
| ██ | ██████████ | ███████ |
| ██ | ███████████ | ███████ |
| ██ | █████████████ | ███████ |
| ██ | █████████████ | ████████ |
| ██ | █████████████ | ███████ |
| ██ | ██████████ | ███████ |
| ██ | ██████████ | ███████ |
| ███ | ██████████ | ███████ |
| ██ | ████████ | ███████ |
| ██ | █████████ | ███████ |
| ██ | █████████ | ███████ |
| ███ | ██████████ | ███████ |
| ███ | ████████████ | ████████ |
| ██ | ████████████ | ████████ |
| ██ | ████████████ | ████████ |

Witness: Kevin Zhu — June 21, 2022 30(b)(6) Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

_____   Subject to the above changes, I certify that the transcript is true and correct.

_____   No changes have been made. I certify that the transcript is true and correct.

_____
(signature)

8/12/22
(date)

5

Witness: Kevin Zhu — June 21, 2022 30(b)(6) Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

## ACKNOWLEDGMENT OF DEPONENT

I, Chenyuan Zhu, do hereby certify that I have read and examined the foregoing testimony, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____          8/12/22
      (signature)                              _____
                                                      (date)

6