# EXHIBIT 38

**WILSON SONSINI**

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126

O: 415.947.2000
F: 415.947.2099

LAUREN GALLO WHITE
Internet: LWHITE@wsgr.com

January 20, 2021

**Via Electronic Mail**

Joanna Wright
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th
New York, NY 10001

  Re: *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD

Dear Joanna:

  We write further concerning Defendants' Responses and Objections to Plaintiffs' First Set of Requests for Production ("RFPs" or "requests") and, specifically, to address your letters of December 22, 2020 and January 15, 2021.

  As a preliminary matter, each time you send a letter, we necessarily need to postpone our own response, in order to correct your further misrepresentations of our discussions and Defendants' positions and to consult with our clients regarding the various new requests you make. If you faithfully recounted the parties' positions a day or two after our meet-and-confers, that could help advance our discussion. Sending a nine-page letter with numerous mischaracterizations a week after the fact is not productive.

  Among other things, we take issue with the claims in your recent correspondence that Defendants are engaged in delay tactics. Plaintiffs filed this case in July; received Defendants' document requests in early October, weeks before Defendants received Plaintiffs' initial discovery requests; and are effectively collecting documents from just two individuals. Despite this, in their November 11 responses to a number of Defendants' document requests, Plaintiffs indicated they "ha[d] not completed [their] review and analysis of available or relevant documents responsive" to those requests. *See, e.g.*, Pirate Monitor's Responses to RFP Nos. 2, 3; Schneider's Responses to RFP Nos. 1, 2. Indeed, Plaintiffs only just began to produce documents, more than three months after receiving Defendants' initial document requests and more than six months after initiating this litigation. Meanwhile, Defendants have made three rolling productions beginning on December 4, 2020. Simply put, you have no basis for accusing Defendants of engaging in delay tactics.

  Your letter of January 6 also repeatedly quotes from paragraph 6 of the Court's standing order for discovery in civil cases, which provides that "[a] burden, overbreadth or similar

WILSON
SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 2

objection shall not be a valid reason for withholding requested, responsive materials actually known to counsel or the party." That is not what is happening here. Defendants have not withheld such documents. We hope the same can be said for Plaintiffs.

Additionally, you have no basis for accusing us of failing to confer with our clients. We have repeatedly conferred with our clients concerning Plaintiffs' discovery requests, and we continue to do so. As we stated in our original responses to your document requests and during our subsequent discussions, however, many of Plaintiffs' requests are vague or worse. We appreciate the few clarifications you have provided in your recent letters and during our recent meet-and-confers.

With respect to Plaintiffs' individual document requests, we respond further to the document requests discussed during our December 16 and 17 meet-and-confers and in Plaintiffs' December 22 correspondence as follows:

**Date Range (RFP Nos. 2-5, 8-11, 14)**: As a general matter, Defendants reiterate their objection to Plaintiffs' requests for information beyond the scope of the three-year statute of limitations applicable to their claims. Without waiving their objections, and in an effort to advance the discovery process, Defendants will expand the scope of their productions in response to RFP Nos. 2-5 and 8-11 from the three-year period predating the filing of the Complaint to the period from January 1, 2015 to October 28, 2020,[1] a span of nearly six years.[2] At this time, however, Defendants will not expand the temporal scope of their production in response to RFP No. 14, which does not specifically relate to the named plaintiffs or their works.

**RFP Nos. 2-4, 8-10**: Plaintiffs have agreed to limit the scope of these requests to documents concerning YouTube and, as noted above, Defendants have agreed to expand the timeframe for their productions in response to RFP Nos. 2-4 and 8-10. Subject to and without waiving any of their objections, Defendants will also agree to produce all reasonably accessible documents in the categories identified in Defendants' responses to RFP Nos. 2-4 and 8-10 that Defendants locate through an inquiry proportionate to the needs of the case, if any, rather than on a "sufficient to show" basis. Further, in response to RFP No. 3, Defendants can confirm that they will produce documents concerning all persons "known or believed to have licensed the Schneider Works to Defendants," though Plaintiffs should know far better than we who their

---

[1] We note that, while your December 22 correspondence reiterates that Plaintiffs seek documents from "January 1, 2015 to the present," Plaintiffs do not actually define "the present." Defendants interpret this phrase to mean October 28, 2020, the date Plaintiffs served their document requests.

[2] As a general matter, where Defendants agree to produce documents, they agree only to produce reasonably accessible documents located through an inquiry proportionate to the needs of the case, if any.

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 3

licensees are, and who their licensees' licensees are. In light of Defendants' agreement to produce all documents concerning Plaintiffs in the categories we've previously identified, we expect that Plaintiffs will similarly agree to produce all requested documents concerning Plaintiffs or their works, without limitation to the "Works in Suit."

**RFP Nos. 5, 11**: Your December 22 letter misstates the Parties' meet-and-confer concerning these requests. Plaintiffs did not describe communications and policy decisions as "two non-exhaustive examples of Documents Concerning Takedown Notices." Nor did Defendants agree to consider producing "all documents" concerning the requested takedown notices. Rather, in addition to the notices that Defendants already agreed to produce in response to RFP Nos. 5 and 11, we agreed to confer with our clients concerning the production of communications and policy decisions related to those notices. Subject to and without waiving their objections to these requests, Defendants will expand their production in response to RFP Nos. 5 and 11 to include reasonably accessible documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show (i) the outcome of takedown notices submitted through Schneider or Pirate Monitor's YouTube accounts alleging infringement of any works identified as works in suit and takedown notices submitted by others directed against Schneider or Pirate Monitor's YouTube account and (ii) communications concerning those takedown notices.

As explained above, subject to and without waiving their objections, Defendants agree to produce such documents for the nearly six-year period from January 1, 2015 to October 28, 2020. Plaintiffs have not, however, explained how documents that predate January 1, 2015 (and thus predate the statute-of-limitations period by more than two years) are relevant to their claims or defenses, and Defendants will not agree to further expand the temporal scope of their production at this time.

**RFP Nos. 6, 12**: As we have stated, it is not Defendants' burden to identify infringements for Plaintiffs. With respect to RFP Nos. 6 and 12, if Plaintiffs confirm that their responses to Interrogatory No. 2 are complete and disclose all videos that Plaintiffs are accusing of infringement in this case as of today, then Defendants will agree to produce copies of those videos in their possession, custody, or control that Schneider and Pirate Monitor identified as infringing in their supplemental responses to Interrogatory No. 2 and that relate to works that were properly alleged in the Complaint.

As to your further proposal that Defendants perform a search of YouTube's platform for Plaintiffs' works using Content ID, Plaintiffs need to first explain why their own ability to search for infringements is insufficient. Plaintiffs have admitted that they have conducted searches on YouTube to identify infringements (in their responses to Interrogatory Nos. 6 and 7), and Plaintiffs have in fact identified alleged infringements (in their supplemental responses to Interrogatory No. 2). Put simply: what, if anything, have Plaintiffs done to search YouTube for alleged infringements?

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 4

**RFP Nos. 7, 13**: In your December 22 letter, you identified the documents requested in subpart (f) of RFP Nos. 7 and 13 (which seeks, for each "Schneider Infringing Video," documents sufficient to show "whether the video was subject to a Takedown Notice, the response, if any, by the User posting the video, and the ultimate determination of the Takedown Notice") as most urgent. Defendants have already agreed to produce certain takedown notices submitted through Schneider's YouTube account and directed against her YouTube account, in response to RFP Nos. 4-5. In addition, Defendants will agree to produce documents sufficient to show (i) counter-notices, if any, that YouTube received in response to those takedown notices and (ii) YouTube's ultimate determination regarding those takedown notices, but only for works that are properly alleged in the Complaint and for which Schneider has identified at least one alleged infringement. Defendants will agree to revisit this request in the event that Plaintiffs identify additional videos that allegedly infringe works that are properly a part of this case. As to subpart (e), which Plaintiffs identified as the second-most urgent portion of these requests, the scope of personally identifying information that Plaintiffs seek concerning (non-party) YouTube users continues to pose serious privacy concerns, notwithstanding entry of the protective order. If you continue to believe that all of the information sought by subpart (e) is relevant to your claims and defenses, then please explain in writing why Plaintiffs require it. As we explained in our responses to Plaintiffs' document requests, in the event that the parties are able to reach a compromise regarding the production of a limited amount of third-party information in response to these document requests or others, affected YouTube users should be afforded an opportunity to object to disclosure of their personal identifying information, and such an opportunity may be required as a matter of law. Defendants will agree to revisit additional subparts of these requests once the parties reach agreement on subparts (e) and (f).

**RFP No. 14**: In response to RFP No. 14, we have already agreed to produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show public policies and procedures related to copyright management and internal policies and procedures related to copyright management. As we explained during our meet-and-confer, Plaintiffs have not articulated any reason why they would need every iteration of every document that could conceivably be relevant to those policies and procedures. Nor have Plaintiffs proposed any limitation that would lessen the burden of this request, which, as drafted, would seem to require Defendants to search custodial documents for well over 100 YouTube employees and vendors involved in copyright-related matters. Please explain, in writing, your basis for believing that "all" documents concerning those policies is necessary and proportionate to the needs of this case.

**RFP Nos. 29-34**: As an initial matter, your December 22 letter misstates our position on these requests. First, we did not state, as you claim, that Defendants are unwilling to produce any videos or responsive documents prior to certification of the putative class. Rather, since the putative class has not yet been certified, Defendants' position (which we have shared with you numerous times) is that the parties must consider reasonable, proportionate productions, appropriate to this stage of the litigation. Second, we did not refuse to answer questions

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 5

concerning preservation. (Indeed, the very next paragraph of your December 22 letter purports to memorialize a discussion of preservation issues that took place during our meet-and-confer, in connection with these requests.)[3] Among other things, we explained that preserving all user-deleted videos (as Plaintiffs request) would be cost prohibitive, but we agreed to consult with our clients concerning specific questions on preservation that you posed. Additionally, we did not "refuse" to speak with you concerning the Copyright Match Tool. In response to your questions, we explained that Defendants need information from users in order to understand what may or may not be a copy of a work and, likewise, require information from users in order to use the Copyright Match Tool to identify content that may have been re-uploaded.

With respect to RFP No. 29, Defendants will not agree to allow Plaintiffs remote access to YouTube's systems in order to view videos.[4] Nor will Defendants agree (in response to RFP Nos. 29 and 30, or others) to preserve all user-deleted videos pending a decision on class certification. As we explained in our January 15 letter, doing so would be extremely burdensome and disproportionate here, where there are just two named plaintiffs and a poorly defined putative class. As to RFP Nos. 31 and 32, we maintain our objections to these requests, including that the requested documents are not relevant to Schneider or Pirate Monitor's claims or defenses and do not become relevant unless and until a class has been certified. With respect to RFP No. 33, we are consulting with our clients regarding your additional questions concerning YouTube's implementation of its policy of retaining copies of all posted videos, except those deleted by users.

**RFP Nos. 15-16**: Plaintiffs still have not explained with any specificity how the documents requested by RFP Nos. 15 and 16 are relevant or how these requests are proportionate. Nonetheless, we never stated (during our meet-and-confer or otherwise) that Defendants "will not produce any documents until resolution of Plaintiffs' class certification motion," as you claim in your December 22 letter. Rather, you agreed to consider deferring this request until a class has been certified and, in exchange, we agreed to consider preserving the information requested in RFP Nos. 15 and 16 pending class certification. As we confirmed in our January 15 letter, Defendants will retain Content ID applications, including user and user-identifying information and Content ID access information, from January 2015 to the present.

---

[3] Rather than address every misstatement of the parties' preservation discussions contained in your December 22, 2020 letter, we direct you to our correspondence of January 15, 2021, which sets out Defendants' positions on preservation.

[4] We take issue with your characterization of our discussion of databases. While we agreed to consult with our clients regarding Plaintiffs' requests to remotely access videos and databases, we did not commit to "provide [Plaintiffs] a response strictly as to the feasibility of this proposal, separate and apart from whether []our client believes it is an adequate solution," as your December 22 letter indicates.

WILSON
SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 6

**RFP No. 17**: During our meet-and-confer, we explained that Plaintiffs do not need every Content ID application or decision to see that YouTube makes Content ID access determinations on an individualized basis. Rather, a sample of such determinations would suffice. Accordingly, as a compromise for RFP No. 17, Defendants propose producing documents sufficient to show Content ID applications, and YouTube's decisions on the same, for 100 applications that YouTube received during the three-year statute-of-limitations period, with personally identifying information redacted. Please let us know if you will agree to this compromise.

**RFP Nos. 18-19**: During our meet-and-confer, we did not "agree[] to provide a list of databases that Defendants maintain concerning Content ID," as you claim, though we did agree to consult with our clients regarding your proposal to provide such a list. Having considered that proposal, Defendants will not provide to Plaintiffs the nonpublic names of YouTube's internal databases concerning Content ID, the disclosure of which would pose a significant security risk. Nor will Defendants allow Plaintiffs to remotely access their internal databases. In response to RFP No. 18, we reiterate our offer (above) to produce a subset of Content ID applications that YouTube received during the three-year statute-of limitations period and can agree to revisit this request in the event that a class is certified. In an effort to reach a middle ground on RFP No. 19, and in light of your position that Plaintiffs require the requested information in support of class certification (and numerosity, in particular), Defendants can offer to stipulate to numerosity based on the putative class definition in the Complaint. Please let us know if Plaintiffs will agree to these proposed compromises.

**RFP No. 20**: Defendants are not "unwilling to produce any documents in response to this RFP," as your December 22 letter indicates. Defendants offered to meet and confer regarding RFP No. 20 in good faith, and we will consider any clarifications of this request or limitations on its scope that Plaintiffs wish to provide.

**RFP Nos. 21-22**: In addition to the documents Defendants previously agreed to produce in response to RFP Nos. 21 and 22, Defendants will agree to produce, for the three-year period predating the filing of the Complaint, reasonably accessible documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show changes to Content ID's processes for identifying matches of copyrighted works (for RFP No. 21) and sufficient to show "procedures, criteria, manuals, logic Documents, terms of service, guidelines, or policy Documents Concerning the Content ID System" (for RFP No. 22). With respect to the remaining categories of documents specified in RFP No. 21 ("any evaluations of the efficacy or accuracy of the processes, and any complaints or comments Concerning the efficacy or accuracy of the processes"), please explain with specificity how those documents are relevant to the parties' claims or defenses.

**RFP No. 23**: For subpart (a) of RFP No. 23, we did not agree to consider producing "all Documents Concerning oversight of the Content ID System by international regulators, lawmakers, or public officials, including those from the European Union," as you claim, but

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 7

rather to consult with our clients about whether a regulator has required YouTube to provide Content ID more broadly. After conferring with our clients, we have not discovered any such requirements. With respect to the various other subparts of RFP No. 23, many of the documents Plaintiffs seek, as clarified in your letter of December 22, appear to be duplicative of those the parties have already discussed (with respect to RFP Nos. 21 and 22, for example). To the extent Plaintiffs believe otherwise, please explain why, if the requested documents are relevant only to the putative class, this discovery should not be deferred pending a decision on class certification.

* * *

We respond further to the document requests discussed in the parties' correspondence of December 24, December 30, January 6, and January 15 and during our January 8 meet-and-confer as follows:

**RFP Nos. 24-27**: We explained during our meet-and-confer that RFP No. 24 is problematically overbroad, as "all" documents from Defendants' customer case management systems on the topics Plaintiffs have identified would constitute many millions of documents. We offered to consider producing a subset of the documents sought by this request (for example, documents from a more limited time period, such as one month) if Plaintiffs propose one. We also offered to revisit this request in the event that a class is certified. We understand from your January 15 letter that Plaintiffs are unwilling to limit this request to a one-month time period, and we invite a different proposal from Plaintiffs. As to RFP No. 25, Defendants are not, as you suggest in your January 15 letter, "refusing to produce any documents" in response to this request. We continue to question the relevance of this request but, as we indicated during our meet-and-confer, will continue to confer with our clients regarding the documents Plaintiffs seek here. With respect to RFP No. 26, we proposed a compromise (namely, the production of documents sufficient to show standard (template) emails and notices to users informing them that Content ID identified one or more of their videos as containing a copyrighted work), which you indicated Plaintiffs would consider. Your January 15 correspondence indicates that you will accept this compromise, but only if Defendants agree to produce communications from "January 1, 2015 to the present" and "confirm that Defendants do not send custom or unique communications when users upload videos identified by the Content ID System as containing copyright protected work." After conferring with our clients, we cannot confirm that Defendants never send custom or unique communications. While we are unaware of any specific instances where a user received a custom or unique communication, it is possible that this happens on rare occasions. That said, we do not think that searching for and producing such rare custom communications would be a reasonable or proportionate undertaking in response to this request. Please let us know whether you will accept our proposed compromise without the additional limitations introduced in your January 15 letter. With respect to RFP No. 27, we explained during our meet-and-confer that this request, as drafted, seeks millions of documents. We offered as a compromise to produce a subset of the requested documents, from a limited date range, prior to class certification. We understand from your letter of January 15, 2020 that

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 8

Plaintiffs are unwilling to agree to that compromise, and we invite a counter-proposal from Plaintiffs.

**RFP No. 28**: In response to RFP No. 28, Defendants will not agree to produce, or allow Plaintiffs to remotely access, their internal databases concerning takedown notices. As we reiterated during our meet-and-confer, this request is unduly burdensome and seeks information that is not relevant at this stage of the case and that will not be relevant unless and until a class is certified. Additionally, allowing Plaintiffs to remotely access Defendants' internal, nonpublic databases would pose a substantial security risk. In response to your questions during our meet-and-confer, we agreed that Defendants would be willing to produce reasonably accessible documents sufficient to show the fields in Defendants' databases concerning takedown notices, and descriptions of those fields, if any, that Defendants locate through an inquiry proportionate to the needs of the case. We will also consider producing a limited subset or sampling of the takedown notices stored in Defendants' databases, should Plaintiffs propose one.

**RFP Nos. 35-36**: During our meet-and-confer, we explained that, if Plaintiffs propose a more limited subset of documents that they need, then Defendants will consider those limitations to RFP Nos. 35 and 36. We proposed, for instance, the possibility of producing documents for a one-month period. We understand from your January 15 correspondence that you are rejecting this compromise and propose instead "narrowing these requests to Unsuccessful Takedown Notice Videos that were accessible on YouTube within the limitations period." Given the scale of YouTube's service and the number of takedown notices YouTube receives in a single year (much less three), however, this proposal does not meaningfully limit the burden that these productions would pose. We remain open to a reasonable proposal from Plaintiffs, but cannot accept your unreasonable one.

**RFP No. 37**: As drafted, RFP No. 37, which consists of five individual subparts seeking nearly two-dozen categories of information, is overbroad and disproportionate. Defendants have already agreed to produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show how the Copyright Match Tool works. To the extent Plaintiffs seek additional documents, we agreed to consider proposed compromises. Replacing "all documents" with "sufficient to show" does not meaningfully address the overbreadth of or burden imposed by this request, which seeks many categories of documents over a significant period of time. As we explained during our meet-and-confer, a limitation based instead on timeframe or users would be considerably more meaningful, and we invite Plaintiffs to propose one.

**RFP Nos. 38-39, 48-50**: We explained during our meet-and-confer that Defendants' production of documents sufficient to show YouTube's policies and procedures regarding copyright strikes and repeat infringers, in response to RFP Nos. 38, 48, and 50, will include readily accessible non-privileged documents sufficient to show changes and proposed changes to

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 9

those policies and procedures, if any. We noted that, as a blanket matter, Defendants are not willing to undertake any searches that would be disproportionate to the needs of this case. In response to RFP No. 48, we also agreed to produce documents sufficient to show Defendants' efforts to inform users of its policies and procedures regarding repeat infringers for the three-year period predating the filing of the Complaint.[5] As to RFP No. 39, we confirmed that Defendants will produce documents sufficient to show the different types of standard communications that YouTube sends to users who have received one or more copyright strikes in connection with their use of the service. We will do so for the three-year period predating the filing of the Complaint, not (as your January 15 letter suggests) from January 1, 2015 to the present. In response to RFP No. 49, we explained that identifying information you seek for YouTube users ("the Person's name, username, email address, IP address, affiliation, [and] any other unique identifier used internally by YouTube or Google tied to a User") does not seem necessary for Plaintiffs to understand how YouTube identifies repeat infringers. Nevertheless, given your representation that this information is relevant to YouTube's implementation of its repeat infringer policy, we agreed to consult with our clients further regarding this request.

**RFP Nos. 42, 46-47**: As an initial matter, your January 6 letter is mistaken in suggesting that we "concede[d]" the relevance of the documents requested in RFP No. 47. Defendants did not. As we explained during our meet-and-confer, the broad information Plaintiffs seek in RFP Nos. 42, 46, and 47 (for example, information concerning Defendants' "formula for determining net revenue under the Account Monetization Program") is relevant only in the event that the putative class is certified. As we discussed, Defendants are willing to revisit each of these requests in the event that a class is certified. In the meantime, we suggested, in response to RFP No. 42, that Plaintiffs consider limiting this request to documents concerning the named plaintiffs' works. If Plaintiffs are willing to accept this proposed compromise, please let us know.

**RFP Nos. 43-44**: Defendants have already agreed to produce numerous categories of documents concerning YouTube's AutoPlay feature. As we reiterated during our meet-and-confer, information concerning AutoPlay (and unrelated to YouTube's copyright management operations) does not appear relevant to Plaintiffs' claims or defenses. We do not agree that these documents are relevant to volitional conduct, as you suggested during our meet-and-confer, but we will nonetheless speak with our clients about Plaintiffs' newly-mentioned theory of relevance, in connection with RFP Nos. 43[6] and 44.

**RFP Nos. 52-55**: We reiterated during our meet-and-confer that we have already agreed to produce numerous categories of documents in response to RFP No. 52 and confirmed

---

[5] We understand from your January 15 letter that you consider identical documents responsive to RFP No. 50.

[6] We did not state, as your January 15 letter claims, that "Defendants are refusing to produce any Documents relevant to" RFP No. 43.

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 10

that Defendants' offer to produce documents sufficient to show certain "procedures" meant the technical processes involved. We also confirmed that Defendants' production of documents sufficient to show the YouTube policies and procedures identified in our response to RFP No. 53 will include readily accessible non-privileged documents sufficient to show changes and proposed changes to those policies and procedures, if any. In response to the additional questions you posed during our meet-and-confer, we agreed to consult with our clients further regarding the individual subparts of this request. As to RFP Nos. 54 and 55, we invited Plaintiffs to propose a reasonable compromise that would meaningfully narrow these requests. Proposals that Defendants produce all copyright management information for all videos ever uploaded to YouTube or that Defendants allow Plaintiffs access to Defendants' servers are not reasonable compromises. While you describe it as a "final effort to reach a compromise," your proposal that Defendants produce "the CMI contained in metadata of CMI Videos" (in your January 15 letter) is simply a reiteration of your prior proposal and, accordingly, does not appear to be a good-faith effort to reach a middle ground. We remain open to considering a reasonable compromise, should Plaintiffs propose one.

**RFP Nos. 56-57**: We confirmed during our meet-and-confer that the YouTube Terms of Service that Defendants have agreed to produce in response to RFP Nos. 56 and 57 will include readily accessible non-privileged documents sufficient to show changes and proposed changes to those terms, if any. With respect to the second part of RFP No. 57 ("public statements Concerning the use of the YouTube service from January 1, 2014 to the present"), we maintain our objections to the apparent boundlessness of this request as written, but can offer to produce, for the three-year period predating the filing of the Complaint, public statements by Defendants concerning copyright issues and YouTube's Content ID feature that appear: on Google and YouTube's official blogs, in transcripts of testimony before the U.S. Congress, or in transcripts of roundtables hosted by the U.S. Copyright Office. Please let us know if Plaintiffs will agree to that compromise or have a different proposal.

**RFP Nos. 58-59, 69**: With respect to RFP No. 58, Defendants have already agreed to produce non-privileged documents sufficient to show the general organization of YouTube's copyright operations. Individuals who work on copyright operations necessarily work on various different YouTube products, so the documents Defendants will produce will include individuals who work on monetization features, the YouTube Partner Program, and the AutoPlay feature in connection with copyright operations, but Defendants will not agree to produce separate organizational charts for various YouTube products without any connection to Plaintiffs' claims or theories. In order for Defendants to consider the production of additional documents in response to this request, Plaintiffs must first provide additional information regarding the relevance of the specific documents you have requested.[7] As to RFP No. 59, we agreed on our

---

[7] The statement in your January 6 letter that information concerning the YouTube Partner Program and the monetization and AutoPlay features is "relevant to, among other things, Defendants' defenses, including your claimed entitlement to the DMCA Safe Harbors

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 11

meet-and-confer to consult with our clients concerning the additional information your January 6 letter requests ("documents sufficient to help [Plaintiffs] understand the roles played by the various document custodians, which might include employee handbooks, job descriptions or listings, organizational charts, and other documents that explain the roles, titles, and responsibilities of document custodians"). While we still do not understand the relevance of the "Document or data retention policies" requested by RFP No. 69, as we explained during our meet-and-confer, we will consider any limitation to this request that Plaintiffs wish to propose, but repeating the same demand following our objections does not advance the ball.

**RFP Nos. 61-62**: With respect to RFP Nos. 61 and 62, Defendants have already agreed to provide notice of subpoenas issued in this action, as well as courtesy copies of documents produced to Defendants in this action pursuant to Rule 45. As drafted, however, these requests are overbroad and disproportionate. We explained during our meet-and-confer that, if Plaintiffs are willing to propose some limitation (as to date range or subpoena topic, for example), Defendants are willing to consider it. While we will consult with our clients concerning the proposal you provided in your January 15 letter, a request for "[a]ll subpoenas" Defendants "have received or served" concerning copyright infringement, takedown notices, Content ID, repeat infringers, copyright management information, or fair use, for a multi-year period, remains unduly burdensome and disproportionate. Producing all documents originally produced by Google or YouTube in response to any such subpoena (for RFP No. 62) would be even more so.

**RFP Nos. 64**: With respect to RFP No. 64, this request is extremely broad, essentially seeking all communications by Defendants concerning copyright infringement, among numerous other topics. As drafted, this request may reasonably encompass third-party communications that include competitively sensitive information of only limited (if any) relevance, such that the burden of searching for and producing such communications would be disproportionate to the needs of the case regardless of the protective order. Indeed, the definition of "media or social media outlet" you proposed in your January 6 letter—which identifies (among other things) nearly a dozen individual social media services, as well as "any other social media platform on which Defendants or their agents maintain a profile or presence and have posted about the topics in RFP No. 64," and which you describe as "non-exhaustive"— only highlights the nearly boundless scope of this request. If you agree to limit this request to communications concerning this litigation, as we discussed during our meet-and-confer, then Defendants will consider that limitation. We would also consider a limitation of this request to a particular speaker. Your proposal in your January 15 letter—that defendants produce "All Communications with any media or social media outlet You have had" concerning not only this litigation and the named plaintiffs, but also seven other broad topics (including "Enforcement of

---

and assertion that Defendants did not act with the requisite mental state, as well as damages" is vague and insufficient to explain why the particular documents sought in RFP No. 58 are relevant.

WILSON SONSINI

Joanna Wright
BOIES SCHILLER FLEXNER LLP
January 20, 2021
Page 12

copyright infringement" and "Fair Use")—does not meaningfully address Defendants' objections to RFP No. 64.

**RFP No. 40**: During our meet-and-confer, we explained that Defendants' production of documents sufficient to show YouTube's policies and procedures regarding the Content Verification Program, in response to RFP No. 40, will include readily accessible non-privileged documents sufficient to show changes and proposed changes to those policies and procedures, if any.

**RFP No. 41**: We confirmed that the only means of raising challenges to copyright infringement are through takedown notices, Content ID, the Copyright Verification Program, and the Copyright Match Tool. We should clarify that this response excludes civil litigation. Per your January 6 letter, we understand from Plaintiffs that there are no additional documents responsive to RFP No. 41.

**RFP Nos. 45, 51, 60, 65-68, 77**: Consistent with Judge Donato's standing orders, we will make ourselves available to discuss outstanding issues concerning document requests about which the parties have not yet met and conferred. As we indicated in our prior correspondence, Defendants currently rest on their objections to the requests as written, but are willing to consider specific compromises that Plaintiffs would like to propose in response to those objections. Additionally, while we still do not understand the relevance of RFP No. 60 to the parties' claims or defenses, we remain open to further explanation from Plaintiffs.

Very truly yours,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s Lauren Gallo White*

Lauren Gallo White