DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
CATHERINE R. HARTMAN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email:  bwillen@wsgr.com
Email:  chartman@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Defendants <br>_____<br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Counterclaimants, <br><br> v. <br><br> PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ, <br><br> Counterclaim Defendants. | CASE NO.:  3:20-cv-04423-JD <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date:  April 13, 2023 <br> Time:  10:00 a.m. <br> Dept.:  11 <br> Judge:  Honorable Judge James Donato |

1

# TABLE OF CONTENTS

2      TABLE OF AUTHORITIES ..................................................................................................ii

3      INTRODUCTION.................................................................................................................. 1

4      BACKGROUND.................................................................................................................... 2

5          I.      Plaintiffs Have No Admissible Evidence Of Numerosity...................................... 6

6          II.     Plaintiffs Have Failed To Prove Typicality.......................................................... 6

7
           III.    Plaintiffs Have Failed To Carry Their Burden Of Showing That Common
8                  Issues Predominate For The Putative Copyright Infringement Classes. ................. 7

9                  A.      Ownership, Registration, And Infringement Issues Preclude
                           Certification............................................................................................... 7
10
                   B.      Individualized Secondary-Liability Issues Preclude Certification............ 12
11
                   C.      YouTube's Defenses Also Require Individualized Determinations. ........ 13
12
           IV.     Plaintiffs Have Failed To Carry Their Burden Of Showing That Common
13                 Issues Predominate For The Putative CMI Classes. ............................................ 18

14
                   A.      Common Issues Do Not Predominate For The Putative CLFN Class. ..... 18
15
                   B.      Common Issues Do Not Predominate For The Putative ISRC Class........ 20
16
           V.      Plaintiffs' Proposed Remedies Cannot Be Established With Common Proof......23
17
           VI.     Plaintiffs Have Failed To Prove Superiority. ....................................................... 24
18
           VII.    Plaintiffs' Perfunctory Request For An Issue Class Fails to Satisfy Rule 23. ...... 25
19
       CONCLUSION .................................................................................................................... 25
20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*,
    944 F.2d 971 (2d Cir. 1991) ............................................................................8

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
    69 F.3d 381 (9th Cir. 1995) ............................................................................9

*ALS Scan, Inc. v. Steadfast Networks, LLC*,
    819 F. App'x 522 (9th Cir. 2020) ..................................................................12

*In re Asacol Antitrust Litig.*,
    907 F.3d 42 (1st Cir. 2018) ...........................................................................25

*Auscape Int'l v. Nat'l Geographic Soc'y*,
    2003 WL 23531750 (S.D.N.Y. July 25, 2003) ................................................7

*Bd. of Trustees of San Diego Elec. Pension Tr. v. My Electrician, Inc.*,
    2021 WL 254168 (S.D. Cal. Jan. 26, 2021) ..................................................11

*Estate of Berlin v. Stash Records, Inc.*,
    1996 WL 374176 (S.D.N.Y. July 2, 1996) ......................................................7

*Bowerman v. Field Asset Servs., Inc.*,
    — F.4th —, 2023 WL 2001967 (9th Cir. Feb. 14, 2023) ..........................23, 25

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ......................................................................................16

*Davidson v. Apple, Inc.*,
    2018 WL 2325426 (N.D. Cal. May 8, 2018) .................................................25

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ........................................................................23

*Doyle v. Chrysler Grp., LLC*,
    663 F. App'x 576 (9th Cir. 2016) .................................................................24

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ..........................................................................6

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2015 WL 4776932 (C.D. Cal. May 27, 2015) ...........................................7, 18

*Football Ass'n Premier League Ltd. v. YouTube, Inc. (Premier League)*,
    297 F.R.D. 64 (S.D.N.Y. 2013) ...............................2, 7, 11, 12, 16, 17, 24

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019) .....................................................................................9

*Harrington v. Pinterest, Inc.*,
  2022 WL 4348460 (N.D. Cal. Sept. 19, 2022)......................................................18, 19, 20, 22

*Hinds v. Fedex Ground Package Sys., Inc.*,
  2021 WL 4926980 (N.D. Cal. Aug. 18, 2021) .................................................................25

*Immigrant Defs. L. Ctr. v. Mayorkas*,
  2021 WL 4296210 (C.D. Cal. June 2, 2021)....................................................................24

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
  153 F.3d 82 (2d Cir. 1998) ...............................................................................................8

*Kihn v. Bill Graham Archives LLC*,
  2022 WL 18935 (9th Cir. Jan. 3, 2022) ...............................................1, 2, 7, 14, 18

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
  2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) ............................................................21

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ........................................................................................12

*Mays v. Wal-Mart Stores, Inc.*,
  804 F. App'x 641 (9th Cir. 2020)......................................................................................6

*In re Napster, Inc. Copyright Litig.*,
  2005 WL 1287611 (N.D. Cal. June 1, 2005) .............................................................7, 17

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  971 F.3d 1042 (9th Cir. 2020).........................................................................................16

*Palmer Kane LLC v. Scholastic Corp.*,
  2012 WL 2952898 (S.D.N.Y. July 16, 2012) ................................................................14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007).....................................................................................12, 13

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017)...........................................................................................12

*Polar Bear Prods., Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004)...........................................................................................24

*Rahman v. Mott's LLP*,
  693 F. App'x 578 (9th Cir. 2017).....................................................................................25

*Reitman v. Champion Petfoods USA, Inc.*,
  830 F. App'x 880 (9th Cir. 2020).....................................................................................25

*Resnick v. Copyright Clearance Ctr., Inc.*,
  2003 WL 22176619 (D. Mass. Sept. 22, 2003) ................................................................7

*Robert Stark Enters., Inc. v. Neptune Design Grp., LLC,*
  2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ............................................................21

*SA Music LLC v. Apple, Inc.,*
  592 F. Supp. 3d 869 (N.D. Cal. 2022) ............................................................................7

*Sanford v. MemberWorks, Inc.,*
  625 F.3d 550 (9th Cir. 2010)........................................................................................21

*Seiler v. Lucasfilm, Ltd.,*
  808 F.2d 1316 (9th Cir. 1986)......................................................................................10

*SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.,*
  804 F. App'x 668 (9th Cir. 2020)..................................................................................18

*Skidmore v. Led Zeppelin,*
  952 F.3d 1051 (9th Cir. 2020) (en banc) .......................................................................9

*Stevens v. CoreLogic, Inc.,*
  899 F.3d 666 (9th Cir. 2018)...................................................................................20, 23

*TD Ameritrade, Inc. v. Matthews,*
  2022 WL 2128897 (9th Cir. June 14, 2022) ...................................................................7

*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n,*
  953 F.3d 638 (9th Cir. 2020)........................................................................................16

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC,*
  718 F.3d 1006 (9th Cir. 2013)................................................................1, 11, 12, 17

*Utopia Entm't, Inc. v. Claiborne Par.,*
  2006 WL 8435006 (W.D. La. Jan. 10, 2006)............................................................7, 23

*Ventura Content, Ltd. v. Motherless, Inc.,*
  885 F.3d 597 (9th Cir. 2018)...................................................................................13, 17

*Viacom Int'l, Inc. v. YouTube, Inc.,*
  676 F.3d 19 (2d Cir. 2012) ...........................................................................................17

*Vulcan Golf, LLC v. Google Inc.,*
  254 F.R.D. 521 (N.D. Ill. 2008) .....................................................................................8

*Waite v. UMG Recordings, Inc.,*
  2023 WL 1069690 (S.D.N.Y. Jan. 27, 2023).............................................................2, 7

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) .....................................................................................................13

*WB Music Corp. v. Rykodisc,*
  1995 WL 631690 (E.D. Pa. Oct. 26, 1995) ....................................................................7

*Werdebaugh v. Blue Diamond Growers*,
  2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ........................................................................25

*Williams v. Apple*,
  338 F.R.D. 629 (N.D. Cal. 2021) .............................................................................................14

*Wu v. Pearson Educ. Inc.*,
  2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) ......................................................................7, 14

**Constitutional Provisions and Statutes**

17 U.S.C. § 101 ................................................................................................................................9

17 U.S.C. § 201(a) ...........................................................................................................................7

17 U.S.C. § 201(d) ...........................................................................................................................7

17 U.S.C. § 411(a) ...........................................................................................................................9

17 U.S.C. § 412 ................................................................................................................................9

17 U.S.C. § 504 ..............................................................................................................................24

17 U.S.C. § 504(a) .........................................................................................................................23

17 U.S.C. § 504(b) .........................................................................................................................24

17 U.S.C. § 504(c)(1) .....................................................................................................................23

17 U.S.C. § 505 ..............................................................................................................................25

17 U.S.C. § 507 ..............................................................................................................................16

17 U.S.C. § 512(c)(1)(C) ...............................................................................................................10

17 U.S.C. § 512(c)(3)(a) ..................................................................................................................8

17 U.S.C. § 512(g)(1) .....................................................................................................................11

17 U.S.C. § 512(m) ........................................................................................................................17

17 U.S.C. § 1202 .........................................................................................................18, 19, 20, 21, 22

17 U.S.C. § 1202(b) .......................................................................................................................19

17 U.S.C. § 1202(b)(1) ..............................................................................................................21, 22

17 U.S.C. § 1202(b)(2) ...................................................................................................................22

17 U.S.C. §§ 1501-11 .....................................................................................................................25

U.S. Const. amend. VII ...................................................................................................................25

1

**Other Authorities**

2

4 Nimmer on Copyright § 12A.10 (2022) ........................................................................22

3

Fed. R. Civ. P. 23 ..................................................................................................2, 25

4

Fed. R. Civ. P. 23(b)(3) ............................................................................................24

5

Fed. R. Civ. P. 23(c)(4) ............................................................................................25

6

Fed. R. Civ. P. 37(c)(1) ..............................................................................................6

7

Fed. R. Evid. 407 ......................................................................................................10

8

H.R. Rep. 105-551(II) (1998) ....................................................................................11

9

10

Riddhi Setty, *New Copyright Venue Fields Hundreds of Claims, Evoking Optimism*,
    Bloomberg Law (Jan. 13, 2023) ........................................................................25

11

12

U.S. Copyright Office Circular 22, *How to Investigate the Copyright Status of a
    Work* (Feb. 2023) ................................................................................................7

13

U.S. Copyright Office, *Copyright and the Music Marketplace* (Feb. 2015) ....................7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

This case demonstrates why copyright claims are ill-suited for class action treatment. The Court's resolution of Defendants' summary judgment motion as to Maria Schneider made plain that Plaintiffs' claims turn on a host of individualized issues, which must be resolved plaintiff-by-plaintiff, work-by-work, and video-by-video. Summary Judgment Order (Dkt. 222 ("SJ Order")). The Court specifically directed Plaintiffs to take the Summary Judgment Order into account in their revised certification motion. Waldron Ex. 21 at 4:6. But all Plaintiffs have done is propose a sprawling and endless "administrative" procedure to relieve class members of the scrutiny that doomed many of Schneider's claims, and to deprive YouTube of its right to highlight individualized claim deficiencies and assert individualized defenses.

Most fundamentally, every copyright infringement claim must be resolved on facts that are particular to that claim and separate from all others. Barely a year ago, the Ninth Circuit *reversed* the certification of a copyright class because "individual issues of license and consent" were, by themselves, sufficient to preclude certification. *Kihn v. Bill Graham Archives LLC*, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022). The licensing and consent issues are far more complicated here. And they are just the beginning.

To make out their claims, each putative class member bears the burden of proving individualized facts of ownership, registration or first publication abroad, infringement, and damages. And as to each, YouTube has the right to prove defenses that likewise involve individualized facts, such as the licenses and time-bars that eliminated many of Schneider's claims at summary judgment and could "sound the death knell" for her case. SJ Order at 6.

Plaintiffs cannot dodge this fundamental problem by relying on DMCA takedown notices as conclusive proof of their claims. They define their putative classes by reference to unproven allegations and unsworn DMCA notices that were processed by YouTube as required by statute, contending that these notices—by themselves—establish ownership, infringement, and the absence of defenses. Mot. 7-10, 13. But even a "[p]roper DMCA notice … provides only a *claim* of infringement," not *proof* of infringement. *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1020 n.12 (9th Cir. 2013). For that reason, a court cannot accept "that YouTube's

takedown of a clip was a tacit concession or determination that it infringed." *Football Ass'n Premier League Ltd. v. YouTube, Inc. (Premier League)*, 297 F.R.D. 64, 68 n.2 (S.D.N.Y. 2013). By deeming compliance with the statute an admission of infringement, Plaintiffs' theory turns the DMCA's safe harbor into a trap—the exact opposite of what Congress intended.

Individualized issues likewise pervade Plaintiffs' claims for improper removal of copyright management information ("CMI"). Again, each putative class member would have to establish ownership of a work and the work's presence in a video. Each claimant would then have to prove that their CMI was present in a video but removed, that YouTube knew of the CMI and either intentionally removed it or distributed copies knowing of its removal, that the removal was not authorized by one of thousands of license agreements, and that YouTube knew that the removal would foment infringement. These questions are not susceptible to classwide proof. Further, even if some class member could establish an infringement or CMI violation, they would still have to engage with myriad work- and claim-specific questions to establish any entitlement to damages.

Beyond these dispositive flaws, Plaintiffs have not and cannot satisfy Rule 23's requirements of numerosity, typicality, or superiority for their four proposed classes or their perfunctory request for an issue class. Instead, Plaintiffs propose what one court has decried as a "Frankenstein monster posing as a class action." *Premier League*, 297 F.R.D. at 65 (citation omitted). Certification should be summarily denied. *See, e.g.*, *id.*; *Kihn*, 2022 WL 18935, at *2; *Waite v. UMG Recordings, Inc.*, 2023 WL 1069690, at *10 n.85 (S.D.N.Y. Jan. 27, 2023).

**BACKGROUND**

Plaintiffs are an American jazz composer, a Russian audiobook publisher, and a Bollywood-film-producing Wyoming LLC. Their former co-Plaintiff was orchestrating a fraud on YouTube. The claims of each are replete with facts that defeat class certification.

***Schneider.*** The Court dismissed much of Schneider's case and ruled that a jury trial was required for what remained. *See* SJ Order. Individualized evidence left no triable issue on the fact that Schneider licensed YouTube to make use of the content that she, her agents, and her licensees uploaded. *See id.* at 13-15. Further claims were barred because Schneider had actual knowledge of the alleged infringements long before she brought suit. *See id.* at 15-20. This disposed of over 100

1  alleged infringements and six works-in-suit. *See* Dkt. 232. Further, Schneider's publisher, Modern

2  Works, granted a blanket license to YouTube that may bar her entire case—but a jury must

3  determine which of Schneider's compositions Modern Works "controlled." SJ Order at 4-13. All

4  of these claim- and case-dispositive issues were individualized, and the Court explained that they

5  required "a mountain of work" that it could not undertake for everybody. Decl. of Paul N. Harold

6  ("Harold") Ex. 16 (Oct. 13, 2022 Hr'g Tr.) at 27:19-24.

7      What remains of her claims, and YouTube's trial defenses, present highly individualized

8  issues. Schneider is ineligible for statutory damages on many claimed infringements because she

9  did not first register her works before the infringement began; and she lacks evidence that she

10 suffered actual harm from *any* supposed infringement. Harold ¶¶ 9-10 & Exs. 3, 7-8. Even if she

11 could show harm, individualized questions arise about failure to mitigate, including Schneider's

12 choice to not send DMCA takedown notices for alleged infringements of which she was aware.

13     So too with her CMI claims where she is the only representative. As the Court has already

14 held, the individualized question of whether Schneider's CMI was removed requires a jury

15 determination, both as to her metadata ("CLFN") claim and her International Standard Recording

16 Codes ("ISRCs") claim. SJ Order at 21. Schneider's own expert (Paul Jessop) refuted her central

17 premise that her recordings necessarily carry ISRCs. *See* Harold Ex. 38 (Jessop Dep. Tr.) at 116:5-

18 118:2. Further, a jury must determine whether Schneider's CMI theories fail because (i) her agent,

19 Modern Works, authorized YouTube to reformat videos containing Schneider's works; (ii)

20 Schneider herself authorized the same under YouTube's Terms of Service ("TOS"); or (iii)

21 Schneider did not even use metadata to police infringement of her works. SJ Order at 5-6, 21-22.

22 Finally, at trial, YouTube will present evidence that many of Schneider's individual CMI claims

23 are time-barred. *See* Harold Ex. 8 (Rog. Resp. No. 6); Dkt. 164 at 24.

24     ***Uniglobe Entertainment.*** Uniglobe asserted motion pictures in the complaint, falsely

25 claiming to hold copyright registrations for them. Dkt. 99 ¶¶ 66-69; *see* Harold Ex. 21 (Uniglobe

26 Dep. Tr.) at 54:4-57:11, 66:5-20 (admitting allegations were "not entirely correct"). Later, in

27 contravention of the Court-ordered deadline, it tried to substitute claims based on screenplays not

28 mentioned in its complaint. Harold ¶ 27 & Ex. 20; *see* SJ Order at 4 n.1 ("copyrighted works not

1   identified in the FAC" are not part of the case). Even as to those, Uniglobe's ownership is

2   doubtful. Regardless of what works are properly asserted, discovery revealed hundreds of work-

3   made-for-hire agreements, assignments between previous owners and Uniglobe, and conflicting

4   evidence about whether the plaintiff entity, Uniglobe Entertainment LLC (Wyoming), as opposed

5   to a same-named entity in Delaware, is the actual party to these agreements. *See, e.g.*, Harold Ex.

6   21 (Uniglobe Dep. Tr.) at 69:4-13, 82:4-12, 93:6-94:16, 94:17-20, 101:17-23, 112:19-22; *id.* Ex.

7   19 (Rog. Resp. Nos. 1-2). Even now, its CEO could not say which entity owns the works. *Id.* Ex.

8   21 (Uniglobe Dep. Tr.) at 77:6-10, 93:6-94:16. As with Schneider's claims, these are all

9   individualized issues that only extensive discovery and litigation could resolve.

10       Uniglobe's infringement allegations face equally individualized problems. Uniglobe

11   admitted it has hundreds of licensees and sublicensees worldwide. For any particular allegedly

12   infringing YouTube video, Uniglobe would have to "go back and review each individual contract"

13   to determine what rights it granted and consult with its licensees to determine whether they, or

14   someone they authorized, uploaded the videos. *Id.* Ex. 19 (Rog. Resp. Nos 5-6 (referring

15   Defendants to Uniglobe's Gross Contract Sales and Ex. A to Rog. Resp.)); *id.* Ex. 21 (Uniglobe

16   Dep. Tr.) at 141:2-6, 148:5-14; *id.* Ex. 22 (Uniglobe Dep. Tr.) at 300:9-23. In addition, and just

17   like Schneider (*see* SJ Order), Uniglobe created a YouTube channel for promotional purposes,

18   uploaded full movies and dozens of clips, and permitted several others to do the same—thereby

19   licensing that content to YouTube under the TOS and barring a host of its infringement claims. *Id.*

20   Ex. 21 (Uniglobe Dep. Tr.) at 123:16-19, 125:8-18, 132:23-134:24, 139:11-15; *id.* Ex. 19 (Rog.

21   Resp. No. 7). And like Schneider, Uniglobe had actual knowledge of 191 alleged infringements at

22   least one year before suit. Harold Ex. 19 (Rog. Resp. No. 12); *see* SJ Order at 15-20.

23       ***AST Publishing.*** AST's claims are similarly fraught with individualized defects. It

24   originally alleged infringement of "print and audio books." Dkt. 99 ¶ 75. When pressed, AST

25   dropped all infringement claims relating to print books, and now asserts claims on only Russian-

26   language audiobooks it supposedly owns. *See* Harold ¶ 34 & Ex. 20 at 1, 3-4. But AST did not

27   author the audiobooks either. Instead, AST claims to own the copyrights through a complex web

28   of (1) agreements with the books' authors, assigns, or licensees; and (2) questionable work-for-

1    hire agreements with audio file creators. *See id.* Ex. 23 (Rog. Resp. No. 2); *id.* Ex. 26 (AST Dep.

2    Tr.) at 95:11-14, 97:3-16, 112:23-113:6. Most of these agreements are in Russian, and AST has

3    redacted the names of all parties and signatories, supposedly to comply with Russian privacy law.

4    *Id.* ¶ 29. These individualized issues take discovery and litigation to resolve.

5           Next, AST asserts that it needs no U.S. copyright registration for its audiobooks because

6    they are foreign works first published in Russia. *Id.* Ex. 26 (AST Dep. Tr.) at 113:10-16. But

7    evidence of first publication abroad is both required (to bring suit and to qualify as a class

8    member) and individualized for each work. Further, AST has offered no evidence that any

9    allegedly infringing YouTube video was uploaded or viewed in the United States, and thus no

10   evidence of actionable infringement at all. *Id.* Ex. 27 (AST Dep. Tr.) at 126:13-127:19, 129:20-25.

11   And many of its accused videos do not implicate AST's audiobooks; some are merely videos of

12   people reading print books aloud. *See id.* ¶ 36.

13          AST also faces individualized licensing obstacles. AST created two YouTube channels to

14   promote its audiobooks, thereby licensing YouTube to freely use any content that AST or its

15   agents uploaded. *Id.* Ex. 26 (AST Dep. Tr.) at 177:1-179:11, 182:19-22, 185:19-186:1; *see* SJ

16   Order at 13-15. Those licenses bar a host of claims, as do AST's licenses to third parties that

17   authorize them or their sublicensees to upload AST's works to YouTube. *Id.* Ex. 23 (Rog. Resp.

18   No. 7); *id.* Ex. 26 (AST Dep. Tr.) at 180:12-22, 198:20-199:4; *id.* Ex. 27 (AST Dep. Tr.) at 124:2-

19   13. And AST faces time bars as well. *See id.* Ex. 24 (Rog. Resp. No. 12); *see* SJ Order at 15-20.

20          ***Pirate Monitor.*** Pirate Monitor was one of the two original plaintiffs and putative class

21   representatives in this case. Its wide-ranging fraud against YouTube (and the Court) underscores

22   the need for careful, individualized scrutiny with discovery and adversarial testing. Pirate Monitor

23   itself uploaded thousands of videos and then sent YouTube DMCA takedown requests for the

24   same videos, claiming they were infringements. *Id.* Ex. 29 (Csupo 30(b)(6) Dep. Tr.) at 191:3-12;

25   *id.* Ex. 28 (Rog. Resp. Nos. 2-3). It later admitted the uploads were authorized, meaning the

26   takedown notices were bogus (although still "successful" according to Plaintiffs' definition). *See*

27   *id.* Ex. 29 (Csupo 30(b)(6) Dep. Tr.) at 185:20-186:5. All this gave rise to YouTube's

28   counterclaims (Dkt. 160 at 44-46) and a host of defenses such as unclean hands and estoppel (Dkt.

34). Later, when pressed, Pirate Monitor admitted that it did not own at least one of the three copyrighted works asserted in the complaint. Harold ¶ 44 & Ex. 30. Once all this was revealed through discovery, Pirate Monitor dismissed its claims against YouTube with prejudice. Dkt. 66. But for that dismissal, Pirate Monitor would be a putative class member.

## ARGUMENT

### I.        Plaintiffs Have No Admissible Evidence Of Numerosity.

Despite years of litigation and investigation by Defendants (*see* Harold ¶ 5 & Ex. 4 (ROG 23)), Plaintiffs have not identified a single absent putative class member. Instead, Plaintiffs rely on class size estimates proffered by their expert (Dr. Charles Cowan) based on *previous* class definitions. *See* Mot. 4; Waldron Ex. 3 at 149:21-14; Waldron Ex. 17 ¶¶ 24-33. It is unclear how these estimates relate to Plaintiffs' *current* proposed classes. *See Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 642 (9th Cir. 2020). In any event, these mismatched estimates are not admissible because Plaintiffs did not disclose them in Dr. Cowan's report but withheld them until his deposition, precluding Defendants from addressing them in his testimony or rebuttal. *See* Waldron Ex. 3 at 148:19-149:20. They must be excluded. *See* Fed. R. Civ. P. 37(c)(1); Dkt. 262 at 2-6 (Cowan Daubert). And without them, Plaintiffs have nothing at all on numerosity.[1]

### II.       Plaintiffs Have Failed To Prove Typicality.

Plaintiffs' idiosyncratic claims and YouTube's defenses against them including licenses, the DMCA, the statute of limitations, contractual time limits, and fair use — render Plaintiffs atypical. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984-85 (9th Cir. 2011). Consider Schneider, for example. She is so *atypical* that, for her to qualify for any class, Plaintiffs had to craft a custom definition (their third attempt) to include members who made a claim "in a court of law." Mot. 5-6. And, despite purporting to represent an ISRC class, she is not even a class member since she has no remaining sound recordings at issue after the SJ Order. Nor is she properly a member of the CLFN-removal class since the information YouTube allegedly removed from nine videos she identified was retained and publicly displayed in the videos' titles.

---

[1] Defendants' long ago offer to stipulate on numerosity was tied to far different class definitions, and Plaintiffs *did not accept* it, insisting instead on discovery that failed to establish the point. *See* Waldron Ex. 38 at 6; *id.* 39 at 4; *id.* 42 at 3.

Decl. of Thierry Foucu ("Foucu") ¶ 7. The other Plaintiffs are similar. *See supra* 3-5.

## III. Plaintiffs Have Failed To Carry Their Burden Of Showing That Common Issues Predominate For The Putative Copyright Infringement Classes.

Courts routinely reject certification of copyright classes because the number and complexity of individualized questions predominate over any common issues. *E.g.*, *Kihn*, 2022 WL 18935, at *2 (9th Cir.); *Premier League*, 297 F.R.D. at 65.[2] That is plainly the case here.

### A. Ownership, Registration, And Infringement Issues Preclude Certification.

*Ownership.* Plaintiffs concede they must prove ownership on a work-by-work basis, an inherently individualized issue. This will require mini-trials for each copyrighted work and resolution of a host of individualized questions. *See SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 893-98 (N.D. Cal. 2022); *Premier League*, 297 F.R.D. at 66.

Determining ownership of a copyright is not straightforward. In the United States, all authors have an ownership interest, except in cases of works-for-hire. *See* 17 U.S.C. § 201(a). Identifying these authors is work-specific, intensive, and often disputed. *See, e.g.*, *TD Ameritrade, Inc. v. Matthews*, 2022 WL 2128897, at *1 (9th Cir. June 14, 2022). Additionally, ownership can be transferred. *See* 17 U.S.C. § 201(d). No database contains accurate, up-to-date ownership information, and in many instances, that information is completely lacking.[3]

In this case, there are difficult, individual ownership questions, readily distinguishing it from the two outlier cases that Plaintiffs cite. *See Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *11 (C.D. Cal. May 27, 2015) (defendant offered no "evidence" that "contentious ownership inquiries" would arise); *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7-9 (N.D. Cal. June 1, 2005) ("logistical difficulties" of "adjudicating …

---

[2] *See also Waite*, 2023 WL 1069690; *Wu v. Pearson Educ. Inc.*, 2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012); *Utopia Entm't, Inc. v. Claiborne Par.*, 2006 WL 8435006 (W.D. La. Jan. 10, 2006); *Resnick v. Copyright Clearance Ctr., Inc.*, 2003 WL 22176619 (D. Mass. Sept. 22, 2003); *Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 23531750 (S.D.N.Y. July 25, 2003); *Estate of Berlin v. Stash Records, Inc.*, 1996 WL 374176 (S.D.N.Y. July 2, 1996); *WB Music Corp. v. Rykodisc*, 1995 WL 631690 (E.D. Pa. Oct. 26, 1995).

[3] *See, e.g.*, U.S. Copyright Office Circular 22, *How to Investigate the Copyright Status of a Work*, at 3 (registration records "may be incomplete or lacking entirely"); U.S. Copyright Office, *Copyright and the Music Marketplace* (Feb. 2015), at 62-63 (registration database "is not a comprehensive resource;" "registration records are far from complete," "will not reflect a change in ownership" and cannot be "reliably linked to registration records").

1    ownership" could be managed where entire class shared one licensing agent). Uniglobe still

2    cannot prove ownership of the works it asserts. Harold Ex. 21 (Uniglobe Dep. Tr.) at 77:6-10,

3    93:6-94:16. AST abandoned claims over print books; and Pirate Monitor admitted to a baseless

4    ownership claim over one of three works it asserted. Harold ¶¶ 34, 44 & Exs. 20, 30. Further

5    complicating matters, every proposed class includes foreign works whose ownership is

6    determined by foreign law. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d

7    82, 91 n.11 (2d Cir. 1998). This poses nearly impenetrable issues just for AST and Uniglobe. *See*

8    *supra* at 3-5. It would be unimaginably worse for worldwide classes.

9         Notwithstanding these issues, Plaintiffs assert that ownership can be determined by cross-

10   referencing the claimed owner of a work in a DMCA takedown notice against certain databases.

11   That is unworkable. *First*, setting aside hearsay concerns, a notice need not identify the work's

12   owner—only an *agent* of that unidentified owner. 17 U.S.C. § 512(c)(3)(a). Not a single "AST"

13   takedown notice Plaintiffs cite (Mot. 5) even mentions AST (*see* Waldron Exs. 73-77

14   (identifying "АЗАПИ")). *Second*, the class definitions do not require class members to have

15   been named in the takedown notice; rather, the class members need only "own" copyrights.

16   *Third*, the Copyright Office database at the foundation of Plaintiffs' theory is neither reliable nor

17   conclusive. *See supra* n. 3. Even where a registration was accurate when filed, transfers,

18   reversions, and name changes render much public information useless. And Plaintiffs do not

19   even try to address the individualized problems of relying on non-authoritative, private databases

20   for foreign works. *See* Dkt. 262 (Cowan Daubert) at 7-10; Harold Decl. ¶¶ 55-57 & Exs. 35-37.

21   *Fourth*, even current owners cannot necessarily sue—claims accrue to the owner at the time of

22   infringement and are not transferred unless "expressly included" in the transfer. *ABKCO Music,*

23   *Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991).

24        Finally, no matter what a takedown notice or third-party database says, any ownership

25   claim would be subject to refutation through discovery. Indeed, discovery exposed flaws in

26   Plaintiffs' claims. *See supra* 2-6. Even if Plaintiffs could legitimately identify members of a

27   putative class of parties *claiming* copyright ownership, that would not avoid the need for

28   litigation and fact-finding regarding those claims. *Cf. Vulcan Golf, LLC v. Google Inc.*, 254

F.R.D. 521, 528 (N.D. Ill. 2008) (use of government trademark database for putative class would not avoid "time-consuming inquiries regarding ownership").

**Registration.** Registration of a work with the Copyright Office is a prerequisite to lawsuits over "any United States work" (17 U.S.C. § 411(a); *see Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019)); a requirement for membership in Plaintiffs' Registered Works Infringement Class (Mot. 3); and a requirement for statutory damages or attorneys' fees for any work (17 U.S.C. § 412). The evidence here shows, and Plaintiffs do not dispute, that registration is an individualized inquiry. *See, e.g.*, Harold Ex. 21 (Uniglobe Dep. Tr.) at 54:4-57:11, 66:5-20; *id.* Ex. 9 (acknowledging "discrepancies" in titles but claiming that allegedly infringed works were "movements" of registered Works-in-Suit).

Plaintiffs also seek to represent a class of "foreign works" owners for which a U.S. copyright registration would not be required. Mot. 4. But only those works that were first published outside the United States even potentially qualify. 17 U.S.C. § 411(a). Plaintiffs say nothing about how they would show, on a classwide basis, an individual work's place of first publication, including whether the work otherwise qualifies as a "United States work" because, for example, it was published "simultaneously" in the United States. 17 U.S.C. § 101.

**Infringement**. Infringement claims require copying of protectable elements of a work— an often intensely individualized and litigated inquiry. *See, e.g.*, *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc). That inquiry would be particularly important here, where the proposed classes would include all manner of copyrightable material—*e.g.*, musical compositions, sound recordings, audiobooks, screenplays, motion pictures, photos, and more. As to the named plaintiffs, Schneider and AST would have to play videos and have the fact-finder listen for matches of compositions or audio recordings. *See, e.g.*, Harold Ex. 1 (Resp. Rog. 11). Uniglobe would have to find specific language from screenplays in videos. And many of their infringement allegations will rightly be contested. For example, in this case, Uniglobe claims infringement over a 20-second video clip of the famous *20th Century Fox intro* (*id.* ¶ 50 & Ex. 33), in which Uniglobe plainly has no rights. Additionally, Plaintiffs must prove that "at least one alleged infringement [was] completed entirely within the United States." *Allarcom Pay*

*Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 387 (9th Cir. 1995). Plaintiffs have not indicated how they will make this showing for AST's Russian audiobooks, much less how they could provide such proof classwide. *See* Mot. 8-10.

Plaintiffs acknowledge that direct infringement requires proving "volitional conduct" (or "control") by YouTube. Mot. 10-11. They argue that they can establish volitional conduct for videos algorithmically surfaced by YouTube's Watch Next or Autoplay functionalities. But that legal leap turns on a host of individualized fact questions: whether the video was played after being selected by Watch Next or AutoPlay, whether the play occurred within the limitations period, and whether the play occurred in the United States. These are not corner cases. For instance, just for the Plaintiffs themselves, there is no evidence that hundreds of the allegedly infringing videos were *ever* presented or watched via Autoplay. *See* Harold ¶ 52. Defendants raised this issue in their prior opposition (Dkt. 198 at 11-12), yet Plaintiffs still have no answer.

***Takedown Notices***. To evade the individualized questions inherent in any infringement claim, Plaintiffs assert that YouTube is somehow barred from disputing the truth of anything in a takedown notice that it processed. *See* Mot. 7-10. Plaintiffs would have the Court go further— arguing, without authority, that the notices (the contents of which are almost entirely unsworn) constitute conclusive proof of infringement, ownership, and knowledge because YouTube supposedly "vets" them. *Id.* Both assertions are factually false and legally irrelevant.

Factually, YouTube does not "vet" takedown notices. It uses a largely automated process to check them for the presence of the information required by the DMCA and on rare occasions follows up with the claimant for more. That process does not determine the truth of information in a notice, nor is it even possible to do so. Decl. of Chenyuan Zhu ("Zhu") ¶¶ 2-3; *see also Seiler v. Lucasfilm, Ltd.,* 808 F.2d 1316, 1319 (9th Cir. 1986) (best evidence rule in copyright case requires comparison of original work and alleged infringement). Plaintiffs ignore that undisputed evidence.

Legally, a service's removal of content in response to an allegation of infringement is both *required* to claim the DMCA's protections (17 U.S.C. § 512(c)(1)(C)), and a subsequent remedial measure "not admissible to prove … culpable conduct" (Fed. R. Evid. 407). In fact, the

text of the DMCA draws an explicit distinction between materials "claimed to be infringing" in a takedown notice and materials "ultimately determined to be infringing," while making clear that taking down materials does not constitute such an ultimate determination. 17 U.S.C. § 512(g)(1). Notices may be evidence that "a *claim*" was made, but they are not proof the claim has merit. *See, e.g.*, *Shelter Cap.*, 718 F.3d at 1021 n.12. Thus, a court may not conclude "that YouTube's takedown of a clip was a tacit concession or determination that it infringed." *Premier League*, 297 F.R.D. at 68 n.2. The legislative history confirms as much. *See* H.R. Rep. 105-551(II), at 64 (1998) ("Section 512 does not create any new liabilities for service providers or affect any defense available to a service provider. … [I]t does not bear upon whether a service provider is or is not an infringer.").[4]

The Court need only consider Plaintiffs' own DMCA notices to recognize why they are not evidence, much less dispositive evidence, of infringement. Notices are often incomplete, inaccurate, or false because they: (i) fail to identify an owner or identify an incorrect one (Harold ¶¶ 45-46); (ii) identify the wrong work (*id.* ¶¶ 47-48); (iii) provide an incomplete or wrong title (*id.* ¶ 49); (iv) identify a video that does not infringe the work (*id.* ¶ 51); or (v) identify a work that the owner uploaded or authorized to be on the service, and therefore licensed to YouTube under the TOS (*id.* ¶¶ 19-20). And it bears repeating that former plaintiff Pirate Monitor intentionally sent *nearly two thousand* bogus, but "successful" takedowns. *See supra* 5-6.

Simply put, takedown notices are extrajudicial *allegations* of infringement, not *adjudications* of infringement. They do not obviate Plaintiffs' need to prove their claims and cannot curtail YouTube's right to defend on each work and each allegedly infringing video. Those individualized questions foreclose predominance.[5]

---

[4] Plaintiffs' lone case merely found that certain sworn documents were "more reliable" than other (unsworn) documents. *Bd. of Trustees of San Diego Elec. Pension Tr. v. My Electrician, Inc.*, 2021 WL 254168, at *6 (S.D. Cal. Jan. 26, 2021). The case says nothing about DMCA takedown notices. In any event, the allegations of ownership and infringement in a takedown notice are not made under penalty of perjury; only the "authoriz[ation]" of "the complaining party" is. Mot. 8.

[5] Plaintiffs' brand-new proposal to find class members from "allegations of infringement made in a court of law" (Mot. 13) presents similar individualized issues. Plaintiffs do not argue that such allegations can be proven by common evidence, suggest how they will identify such allegations in unidentified courts around the world, or address complicated issues surrounding preclusion and finality stemming from prior litigation of such claims.

1

**B.   Individualized Secondary-Liability Issues Preclude Certification.**

2

Plaintiffs' disjointed discourse on secondary liability neither speaks to the required

3

elements of those claims nor grapples with the individualized issues they entail.

4

***Contributory Infringement***. A contributory liability claim requires proof of an

5

underlying third-party infringement, and all the individualized inquiries that entails. *See Perfect*

6

*10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). Beyond that, it requires proof

7

that YouTube actually knew of the specific underlying infringement and materially contributed

8

to it. *See Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013).

9

YouTube's actual knowledge cannot be proven on a classwide basis because that

10

question "must be resolved upon facts which are particular to that single claim of infringement,

11

and separate from all the other claims." *Premier League*, 297 F.R.D. at 66. Again, Plaintiffs extol

12

takedown notices as a solution, claiming an identification of an allegedly infringing video in one

13

notice somehow establishes YouTube's knowledge of infringement in other videos. That is

14

wrong as a matter of law—takedown notices do not confer knowledge of alleged infringements

15

that are not specifically identified in notices. *Shelter Cap.*, 718 F.3d at 1023-24. Nor do the

16

notices even convey meaningful knowledge as to specifically identified videos because

17

Plaintiffs' class definition assumes YouTube acted to remove them. *See ALS Scan, Inc. v.*

18

*Steadfast Networks, LLC*, 819 F. App'x 522, 523 (9th Cir. 2020) (no contributory liability where

19

specific infringements identified in notices "were taken down"). Thus, a putative class member

20

must offer proof of YouTube's knowledge of a specific, underlying act of infringement (*i.e.*,

21

video by video) through some other means. *See Luvdarts*, 710 F.3d at 1072-73.

22

A showing of YouTube's material contribution requires proof of "simple measures"

23

YouTube could have taken to prevent further harm from a known specific infringement. *Perfect*

24

*10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671-72 (9th Cir. 2017). There is no such proof.

25

Plaintiffs cite YouTube's Content ID system and Copyright Match Tools (Mot. 14-15) as tools

26

that can be used to search for videos matching a work identified in a takedown notice. But those

27

complex tools do not identify *infringements* at all (Zhu ¶ 7), as even Plaintiffs' "expert"

28

admitted. *See* Harold Ex. 39 (Winograd Dep. Tr.) at 66:7-13 (admitting "[t]he Content ID system

can't automatically determine what is and isn't infringing").[6] If Plaintiffs' point is that they could

themselves use the tools to find other videos matching a work and assess potential infringement,

that would require, among other things, individualized proof on whether a given class member

already had access to the tools—as at least two Plaintiffs here did. *See* Harold Ex. 13 (Schneider

Dep. Tr.) at 163:7-12, 193:10-194:23; *id.* Ex. 21 (Uniglobe Dep. Tr.) at 160:2-11, 161:7-9.

    ***Vicarious Infringement.*** Vicarious infringement requires individualized proof of a

specific direct infringement and individualized proof that YouTube: (1) controlled that

infringement; and (2) earned a financial benefit directly from it. *See Perfect 10*, 508 F.3d at

1173. Plaintiffs claim they can prove control by showing that YouTube's Content ID and

Copyright Match Tool enable YouTube "to locate infringing material." Mot. 15-16. That is false,

as explained above. *See supra* 12-13. Showing direct financial benefit also requires video-by-

video evidence. Plaintiffs point to revenue from ads played when users view videos, but eleven

alleged infringements were never viewed and many other alleged infringements have no

associated revenue whatsoever, let alone revenue directly attributable to the Watch Next and

Autoplay functionalities that Plaintiffs argue demonstrate YouTube's control. *See* Harold ¶¶ 52-

53. Plaintiffs also point to "increased revenue … caused by *indirect* network effects," Mot. 16

(emphasis added), but that revenue is, by definition, not a "direct" financial benefit because it is

not "distinctly attributable to the infringing material at issue." *Ventura Content, Ltd. v.*

*Motherless, Inc.*, 885 F.3d 597, 612-13 (9th Cir. 2018) (rejecting argument that ad revenue

generated by increased users and views from infringing content was financial benefit "directly

attributable to the infringing activity").

    **C.    YouTube's Defenses Also Require Individualized Determinations.**

    "[A] class cannot be certified" if the proposed method for resolving individual claims

would curtail the defendant's right to "litigate its statutory defenses to individual claims." *Wal-*

---

[6] When YouTube offered to run the system for the named Plaintiffs, Plaintiffs agreed "that Google *will not know* whether Plaintiffs allege that any Video Matches identified through Google's operation of the System are infringements of a Plaintiff's copyrights," and "to the extent Plaintiffs believe Google should take action to remove or disable access to any allegedly infringing video matched through operation of the System," Plaintiffs would send YouTube a DMCA notice. Harold Ex. 25. The reference files AST provided matched over *29,000* videos. But AST identified only *64* of those matches as potentially infringing (those, only belatedly), and did not send YouTube any DMCA notices for them. Harold ¶ 38.

1   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011). Here, individual defenses like license, fair

2   use, and time-bars all require individualized proof, as does the DMCA safe harbor.[7]

3       **License.** The individualized licensing issues entailed for any given plaintiff, work, or

4   claim in this case have already been exposed. *See* SJ Order at 4-15; Harold Ex. 16 (Oct. 13, 2022

5   Hr'g Tr.) at 27:7-28:10. The existence and scope of a license inherently turns on specific

6   documents, testimony, state (or foreign) law, questions of identity, and more. Dkt. 164 at 10-16;

7   Dkt. 172 at 6-13; Dkt. 173 at 2-7. Indeed, the Ninth Circuit reversed certification in *Kihn* because

8   "individual issues of license and consent" were by themselves sufficient to preclude a copyright

9   class. 2022 WL 18935, at *2; *accord, e.g., Pearson*, 2012 WL 6681701, at *4; *Palmer Kane LLC*

10  *v. Scholastic Corp.*, 2012 WL 2952898, at *9 (S.D.N.Y. July 16, 2012). The licensing issues here

11  are *far more* individualized and complex because YouTube has thousands of varied licenses

12  sweeping across industries and the globe, and licenses from the millions of users who upload

13  content. Harold Exs. 14 ¶¶ 3-5, 15 (Suk Dep. Tr.) at 199:2-8; Zhu ¶¶ 10-11.[8]

14      Knowing this, Plaintiffs propose work-arounds that do not work. *See* Mot. 11. *First*,

15  Plaintiffs assert that if a takedown notice was successful, YouTube determined it was not

16  "licensed to display the work." Mot. 13. Again, that is factually and legally false. *See supra* 10-

17  11; Zhu ¶¶ 2-3. Pirate Monitor's takedown notices were "successful" according to Plaintiffs and,

18  of course, the Court already granted summary judgment to YouTube on its license and time-bar

19  defenses, refuting Plaintiffs' contention that Schneider's takedown notices foreclosed those

20  arguments. SJ Order at 13-22; Harold ¶¶ 19-20. *Second*, Plaintiffs contend without any evidence

21  that licensing status can be determined by consulting metadata collected from some individuals.

22

23  ---

24  [7] Plaintiffs argue that affirmative defenses can be tried separately, Mot. 12 (citing *Williams v. Apple*, 338 F.R.D. 629, 638, 648 (N.D. Cal. 2021)), but *Williams* so held because the lone affirmative defense could be resolved on common proof and the defendant had not "identif[ied]

25  even one class member" to whom the affirmative defense applied. 338 F.R.D. at 648. Here, by contrast, the affirmative defenses cannot be resolved by common proof, the Court has already

26  found that multiple defenses apply to Schneider alone (SJ Order), and the record shows that a host of other individualized defenses apply to Uniglobe and AST as well (*see supra* 3-5).

27  [8] YouTube might have a license to a given work (1) from a class member's publisher, as it does with Schneider; (2) from a class member's licensee, as it does for Uniglobe; (3) under

28  YouTube's TOS for works uploaded by a class member or authorized uploader, as it does with all Plaintiffs; or (4) from any of the foregoing via a co-owner of a work. In addition, YouTube's users could have all manner of licenses of their own authorizing use of content on the service.

*See* Mot. 12. This is also false. Mountains of YouTube's direct and indirect licenses involve no such metadata at all. Zhu ¶ 12. And even for those licenses where metadata is provided, the data is not comprehensive. Further, no matter what YouTube's data might say, a class member could dispute the existence, validity, or scope of the license, just as Schneider did at summary judgment. *See* SJ Order at 4-15; Dkt. 172 at 5-15. All of this is highly individualized.

Plaintiffs also assert that YouTube's "matching technology" could be used to identify whether a particular video was licensed through a previous upload. *See* Mot. 12. That is wrong. With the proper inputs, that technology can generally identify whether a video has previously been *uploaded*, but not whether the copyright owner granted *permission*. Zhu ¶ 7. Only through individualized document discovery, interrogatories, and depositions of Schneider and her cohorts was YouTube able to prove that allegedly infringing content was uploaded (and thus licensed) by Schneider, her agents, and others *with permission*. *See, e.g.*, Harold Ex. 13 (Schneider Dep. Tr.) at 98:9-99:23; *id.* Ex. 27 (AST Dep. Tr.) at 151:15-23, 152:9-153:9; *id.* Ex. 21 (Uniglobe Dep. Tr.) at 153:15-154:9. Similar individualized inquiries would be required for all class members.

Finally, Plaintiffs contend that "any licensing defense … will only apply to direct infringement claims." Mot. 12. Not so. The scope of a license depends on its terms, necessitating individualized inquiries. *See* Dkt. 164-2 ¶¶ 3-5; Waldron Ex. 28 § 2; *id.* Ex. 54 § 2. Plaintiffs point to the denial of summary judgment as to secondary liability under YouTube's TOS license, but that narrow denial concerned only whether the 2012 TOS released YouTube from all forms of secondary liability. SJ Order at 15 (citing Dkt. 164-5).[9] Other licenses plainly foreclose secondary liability. Plaintiffs do not dispute, for example, that the Modern Works license "sound[s] the death knell" for all of Schneider's infringement claims for every work that Modern Works controlled (SJ Order at 6), which Defendants will easily prove is all of the works at issue.

***Statutory and Contractual Limitations.*** Plaintiffs' motion does not even mention time-bars or how they could be addressed without individualized inquiry. A three-year statute of

---

[9] The Court was not asked to consider, for example, that the TOS separately authorizes all YouTube users to engage with any content uploaded to the service, so as to bar direct infringement claims against them based on their viewing, and, in turn, any secondary liability claim against YouTube. *See, e.g.*, Zhu Ex. K § 6(C) (TOS party "grant[s] each user of the Service a non-exclusive license to access [and use] your Content through the Service").

1    limitations applies to Plaintiffs' copyright infringement and CMI claims. 17 U.S.C. § 507. And

2    any claims brought by a party to YouTube's TOS must be brought within one year of accrual. SJ

3    Order at 20; Zhu Ex. K § 14. Claims accrue when a party "reasonably should have discovered

4    [an] alleged infringement." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1047

5    (9th Cir. 2020). Each class member's claim thus requires individualized determinations of when

6    an allegedly infringing video was posted and when the copyright owner discovered or should

7    have discovered it.[10] This fact-intensive analysis has already resulted in dismissal of 121

8    infringements Schneider alleged. SJ Order at 20. Similar individualized analysis is required for

9    each class member.

10        ***Fair Use.*** Plaintiffs do not dispute that fair use is an individualized question that must be

11    decided separately for each allegedly "unauthorized display[]." Mot. 19. It requires "closely

12    examin[ing] the particular facts" (*Tresóna Multimedia, LLC v. Burbank High Sch. Vocal Music

13    Ass'n*, 953 F.3d 638, 648 (9th Cir. 2020)) and calls for "case-by-case analysis" (*Campbell v.

14    Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-79 (1994)) that is uniquely ill-suited for class

15    treatment. *See Premier League*, 297 F.R.D. at 66-67. Plaintiffs' sole argument is that fair use is a

16    "*de minimis* issue." *See* Mot. 19. The reality is otherwise. In 2021, fair use was invoked by

17    37.8% of YouTube users disputing Content ID claims (almost 3 million users). Zhu ¶ 9. And that

18    far understates the percentage of challenged videos that could constitute fair use, as many users

19    do not bother disputing a Content ID claim when a litigant would assert fair use. *Id.*

20        YouTube itself is entitled to raise fair use where appropriate as a defense to infringement

21    claims from some unidentified class. *See Premier League*, 297 F.R.D. at 67. Plaintiffs' alleged

22    infringements include numerous fair uses, including, as just a few examples: a video review

23    using a 17-second song clip to discuss Schneider's concert; a 10-second video of a student band;

24    a 44-second video of a man dancing in a kitchen with background music playing; and a video of

25    children reading and discussing excerpts from a book, where AST claims only to control an

26

27    ───────────────

      [10] Limiting the proposed class claims to allegations of infringement made in successful takedown
28    notices or in court on or after July 2, 2019 does not help. *See* Mot. 3-4. The clock does not start
      with a notice (or allegation); it starts when a party knew or should have known of an infringing
      video. SJ Order at 19-20. Schneider herself admits to discovering multiple videos *years* before
      she alleged infringement in a takedown notice or in court. Harold ¶ 11.

1    audio recording (and not the text being read). Harold ¶¶ 8, 36. Plaintiffs' claims alone

2    demonstrate that fair use cannot be ignored and must be assessed on a claim-by-claim basis.

3        **DMCA.** The DMCA "places the burden of policing copyright infringement on the

4    copyright owner, not on the person or firm storing and hosting the material." *Motherless*, 885

5    F.3d at 603. Because YouTube meets the qualifications for safe-harbor protection, each plaintiff

6    must show that their infringement claim is somehow excluded from the safe harbor. That

7    requires a putative class member to make an individualized, infringement-specific evidentiary

8    showing that YouTube knew of "the videos that infringed its copyright and are the subject of its

9    claim" or failed to expeditiously remove "the infringing material" after receipt of a takedown

10   notice. *Id.* at 610, 613. Class treatment would only "multiply [the DMCA's] difficulties over the

11   normal one-by-one adjudications of copyright cases." *Premier League*, 297 F.R.D. at 66.

12   Plaintiffs' arguments to the contrary based on Content ID, Autoplay, and WatchNext cannot be

13   squared with the DMCA's express prohibition on any requirement that a service provider

14   affirmatively monitor its service for possible copyright infringement by its users. *See* 17 U.S.C.

15   § 512(m); *Shelter Cap.*, 718 F.3d at 1023-24 (§ 512(m) forecloses argument that defendant

16   "should have taken the initiative to use search and indexing tools to locate and remove from its

17   website any other content by the artists identified in the [DMCA] notices").[11]

18                                      * * *

19       This litigation demonstrates why copyright infringement claims are "poor candidates for

20   class-action treatment." *Premier League*, 297 F.R.D. at 65. Class treatment would "obliterate"

21   the "unique nature of each work and of its infringement … in a sea of other claims" (*id.* at 67)

22   and deny YouTube its right to obtain discovery and challenge individual infringement cases.[12]

23   _____

24   [11] Like the plaintiffs in *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 40-41 (2d Cir. 2012)
     Plaintiffs challenge YouTube's repeat infringer policy and its compliance with what they

25   imagine are "standard technical measures." *See* Mot. 16-17. And like the plaintiffs in *Viacom*,
     their challenges should fail as a matter of law. *Viacom*, 676 F.3d at 40-41; *see also* Dkts. 218,

26   239. While these two issues on this single defense are common, they do not predominate over the
     many individualized issues for each copyright infringement claim embraced by the class.

27   [12] Plaintiffs cite two unpublished district court orders certifying supposedly "similar" classes
     (Mot. 2), but neither remotely presents these predominance problems. In *Napster*, 2005 WL

28   1287611, at *3, the court applied a lower, pre-*Dukes* predominance standard, and the class
     shared a common licensing agent such that a single notice letter to Napster could establish

                                                              (continued...)

**IV.    Plaintiffs Have Failed To Carry Their Burden Of Showing That Common Issues Predominate For The Putative CMI Classes.**

Plaintiffs cite no case in which a court certified a class invoking §1202. That is not surprising: like infringement claims, CMI claims present a host of highly individualized issues that preclude class treatment. Uniglobe and AST do not even try to make out a CMI claim. And as the Court recognized at summary judgment, Schneider's CMI claims depend on individualized issues (including many of the same issues presented by her infringement claims). SJ Order at 20.

**A.    Common Issues Do Not Predominate For The Putative CLFN Class.**

Plaintiffs rush past the threshold individualized questions in a §1202 claim—whether a putative class member owns a work and whether some associated YouTube video contains that work. Those questions can only be answered work-by-work and video-by-video. *See supra* at 7-11. That can be the end of the Court's certification analysis—but is only the first of many reasons why a CMI claim necessitates individualized inquiry.

***The presence of CMI in CLFN metadata cannot be established classwide.*** Only a tiny fraction of video uploads (less than one tenth of one percent in a sample) even contains CLFN metadata. Foucu ¶ 5. Each claim would need individualized evidence showing that the CLFN metadata field of a particular video file contained data of any kind when it was uploaded to YouTube. And the mere presence of CLFN metadata is not enough because "metadata and CMI are not synonymous." *Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022). Even when present, CLFN metadata is often generic (*e.g.*, "My Movie," "Mein Film," "Untitled Project") and fails to identify a particular copyrighted work—that is, it is not CMI. Foucu ¶ 6; *see also SellPoolSuppliesOnline.com, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668, 670 (9th Cir. 2020) (information "was a fictitious name" and thus "was not Plaintiff's CMI"). In this context, it does not matter that it might be "possible to determine whether [someone's] CMI was present in the CLFN field when a video was uploaded." *See* Mot. 22 (citing Waldron Ex. 15

---

knowledge of all alleged infringements. In *Flo & Eddie*, 2015 WL 4776932, at *8, *11, the defendant had "a record" of all recordings it performed and conceded it performed the recordings "without first seeking licenses or paying royalties." *Id.* at *12. Neither involved material license defenses that precluded certification in *Kihn*, nor the plaintiff-specific problems here of ownership and registration, fair use, statute of limitations, DMCA safe harbor, and damages.

(Jessop Rpt.)); Dkt. 264 (Jessop Daubert). What matters is that a determination of whether any CLFN metadata qualifies as a claimant's CMI must be made on a video-by-video and claimant-by-claimant basis; a point Plaintiffs' experts themselves established. *See* Harold Ex. 38 (Jessop Dep. Tr.) at 123:1-12; Waldron Ex. 17 ¶ 12(d) (Cowan discussing "cross-referencing the CMI Data").

      ***YouTube's removal of CMI cannot be established classwide.*** If a putative class member could prove their CMI was present in the CLFN metadata field of a given video, they must next prove that YouTube removed that CMI. Schneider's own claims demonstrate this issue cannot be resolved on a classwide basis. Schneider alleges there was CMI (*i.e.*, her song names) present in the CLFN metadata of nine video files; but that same information (*i.e.*, her song names) was publicly accessible and viewable in the YouTube *video titles* on the service. Foucu ¶ 7; Waldron Ex. 80. The Court held that a factfinder must decide whether Schneider's CMI was removed at all. SJ Order at 21. This underscores the need for an individualized, video-by-video inquiry.

      ***YouTube's "intentional" removal cannot be established classwide.*** A §1202 removal claim requires proof that a defendant *intentionally* removed CMI from a work. Plaintiffs claim "YouTube has admitted that its process for preparing videos for streaming intentionally removed CMI." Mot. 22 (citing Waldron Ex. 22). That is false. YouTube's transcoding process removes all *metadata* from uploaded files;[13] but to show intentional removal of *CMI*, Plaintiffs would have to show YouTube knew CMI was present in the metadata because "wholesale metadata removal, without more, does not suffice to allege [defendant] intentionally removed CMI." *Harrington*, 2022 WL 4348460, at *4 (no § 1202(b) claim where transcoding process removed all metadata). The "more" that is needed is individualized evidence that YouTube knew of the presence of an individual claimant's CMI and removed it anyway. Plaintiffs have presented no such evidence.

      ***YouTube's additional scienter cannot be established classwide.*** Each putative class member must also prove that YouTube knew that by removing CLFN metadata, it would be fostering *specific* infringements of *that class member's* specific work. "[S]pecific allegations as to

---

[13] YouTube automatically reformats or "transcodes" most videos uploaded to the service, dropping any metadata embedded in the original uploaded file (without knowledge of or regard to whether that metadata might include CMI). It does so because such metadata is a known vector for potentially malicious material, may unwittingly include the uploader's private information, and may not be accurate or reliable. Foucu ¶ 2.

how identifiable infringements 'will' be affected are necessary." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018). Plaintiffs' expert testified that he "would not expect anybody to be using the CLFN field for metadata—rights management purposes." Harold Ex. 38 (Jessop Dep. Tr.) at 168:13-15. He waxed about how removal of CLFN metadata might hypothetically prevent someone from policing against infringement. But that does not suffice. *Id.* Rather, there must be individualized proof that a class member *was actually using* CLFN metadata to police infringement (*Stevens*, 899 F.3d at 675) and that YouTube knew or was "informed" of such policing (*Harrington*, 2022 WL 4348460, at *5). There is no evidence that Schneider, or anyone else, has ever used CLFN metadata this way, much less that they told YouTube they were doing so. The fact that Schneider's CLFN claim rests on the alleged removal of information that was *actually retained and presented in YouTube video titles* makes matters even worse. *See id.* at *7; Foucu ¶ 7. YouTube would have no reason to believe it would be fomenting infringement (or hampering policing) of Schneider's work by removing embedded metadata that no one would ever see, when that same information was featured in the public titles of those videos on the service. As to anyone else's claim, discovery about whether and how the claimant used CMI, whether the CMI remained accessible, and what YouTube knew, requires individualized litigation.

> ***Unauthorized removal of CMI cannot be established classwide.*** Finally, a §1202 claim requires proof that any CMI removal was unauthorized. The Court has ruled a trial is necessary to determine whether Schneider, through her publisher, licensed her works to YouTube. SJ Order at 7. That license expressly authorized YouTube to reformat videos containing Schneider's licensed works. *See* Dkt. 164 at 21. Indeed, it authorized YouTube to reformat videos using the works of *hundreds* of other composers as well. *See* Harold ¶ 16 & Ex. 14; Dkt. 164-6 (Coleman Decl.). And that is just one of myriad license agreements that authorize YouTube to reformat. YouTube's TOS, for example, provides the same authority. *See* Zhu Ex. K § 6(C). To prove a lack of authorization in any given case, a plaintiff would have to offer individualized evidence.

### B.  Common Issues Do Not Predominate For The Putative ISRC Class.

Plaintiffs separately move to certify a class of persons who own a copyright in a sound recording that "had been assigned" an ISRC and was a component of a video that (a) "did not

include the assigned ISRC" when it was uploaded to YouTube and (b) was removed from the service on or after July 2, 2019. Mot. 3-4. Schneider asserted only two sound recordings in this case: *VIKINGS ANTHEM* and *Concert in the Garden*. *See* SJ Order at 4 (FAC asserted "two sound recordings"); Harold ¶ 6 & Ex. 5 (Mar. 8, 2021 Am. Resp. Interrog. No. 1) at 5-6. She lost on summary judgment as to both—one because she did not identify any videos containing it, and the other because the two videos she identified were time barred. *See* SJ Order at 4 n.2, 22; Dkt. 232; Dkt. 164 at 22 n.8. Schneider thus is not a member of the class she seeks to represent, rendering certification improper. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010).[14] But that is only the start of Plaintiffs' problems.

   ***Ownership of a sound recording contained in a YouTube video cannot be established classwide.*** Per Plaintiffs' definition, each putative class member must prove their own ownership of a given sound recording and that a YouTube video contains that sound recording. That, of course, is individualized. *See supra* at 7-11 & n.14.

   ***Removal of an ISRC, if one were even present, cannot be established classwide.*** Plaintiffs pretend that they can state a §1202 claim simply by showing ISRCs "are not preserved between the time they are assigned to [a] work and when such works end up on the YouTube platform." Mot. 21. That is inscrutable.[15] To state any §1202 claim (which would require a showing of an improper removal of an ISRC), a putative class member would have to show that the specific version of a sound recording used to create a given video once had an ISRC embedded in its metadata, and that that ISRC was removed. *See* 17 U.S.C. §1202(b)(1) (improper removal),

---

[14] Based on an interrogatory response served months after the close of discovery, Schneider improperly attempts now to assert §1202 claims based on other sound recordings. Mot. at 3-4 (citing Waldron Ex. 25); *see* SJ Order at 4 n.1 (rejecting Schneider's attempt to add "copyrighted works not identified in the FAC"). Even if she could assert these untimely claims, Schneider has offered no evidence showing her ownership of the new sound recordings as the proposed class definition requires. Harold Ex. 5 at 11.

[15] The claim should fail *ab initio* because videos containing sound recordings are derivative works of those sound recordings and no CMI claim exists where a party fails to add (or carry forward or "preserve") CMI from a component audio file to a derivative video file. Dkt. 198 at 21; *see, e.g., Kipp Flores Architects, LLC v. Pradera SFR, LLC*, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022) ("'Removal' of CMI from a copyrighted work is not the same as the failure to add CMI to a nonidentical rendition or a derivative of the protected work."); *Robert Stark Enters., Inc. v. Neptune Design Grp., LLC*, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017) (creation of new derivative work without Plaintiff's CMI is not "removal" under §1202).

§1202(b)(2) (distribution with knowledge of improper removal). Such proof would necessarily be individualized. As Schneider's expert admitted, "not all sound recordings have ISRCs." *See* Harold Ex. 38 (Jessop Dep. Tr.) at 186:2-4. More importantly, even if an ISRC has been "assigned" to a sound recording, not all copies of that recording will have the assigned ISRC embedded in them. Indeed, Jessop reported that *official* MP3s of Schneider's sound recordings did not contain any ISRCs. *Id.* at 116:5-17, 117:11-20. The use of one of those recordings in a video would not involve any ISRC removal at all. As the Court put it, "the question of whether Schneider has identified works with altered or removed CMI is replete with disputed facts." SJ Order at 21. There is no common proof for this issue.[16]

**YouTube's actual knowledge of an ISRC's removal without authorization cannot be established classwide.** To show YouTube improperly distributed a video that contained a sound recording that once contained an ISRC, a class member would have to show YouTube had actual knowledge that an ISRC had been removed and that the removal was without authorization. *See Harrington*, 2022 WL 4348460, at *4 (§1202 claim based on distribution requires "actual knowledge that CMI 'has been removed or altered'"); 4 Nimmer on Copyright § 12A.10 (2022) (defendant "must know of the unauthorized status of the removal or alteration"). Again, that is not susceptible to common proof. Plaintiffs offer no explanation of how they could show YouTube actually knew an ISRC was ever present in the first place. It is likewise impossible to see how YouTube would know any removal was unauthorized. Imagine, for example, a sound recording used in a movie trailer; absent a fact-specific investigation, YouTube could not know what arrangements the movie studio made with the rightsholder regarding the treatment of an ISRC that might once have been embedded in one version of the sound recording.

**YouTube's scienter cannot be established classwide.** Finally, to make out an improper

---

[16] As noted, Plaintiffs' new class definition requires that an ISRC have been assigned to a sound recording, but "not include[d]" in the uploaded video containing the sound recording. Mot. 3. Under that definition, YouTube would not itself have removed the ISRC (because it was not there to remove). Instead, the theory is that YouTube distributed the video when it should have known an ISRC had been improperly removed by someone else. Plaintiffs equivocate saying their class might include claims that YouTube itself "removed the ISRC" (*id.* at 21), but that is not possible if, by definition, the ISRC was not in the uploaded video. Plaintiffs' inability to make up their minds about their theory compounds the individualized issues a class would face, as each class member would need to show who removed the ISRC before the Court could even know the elements of the claim they were pursuing. *Compare* 17 U.S.C. § 1202(b)(1) *with* (b)(3).

distribution claim, each putative class member would have to prove that YouTube knew or should have known that its distribution of a given video without an ISRC embedded in metadata would foment infringement of a specific copyrighted sound recording.[17] *See Stevens*, 899 F.3d at 674; *supra* at 19-20. This too must be determined case by case. As YouTube explained at summary judgment, Schneider and her agents disclaimed any use of embedded metadata (ISRC or otherwise) as CMI to protect her works from infringement. Dkt. 164 at 17. The Court found that "[f]actual disputes" require a trial "on the issue of whether Schneider uses CMI to monitor her works." SJ Order at 21. There is every reason to believe this element would founder on the same factual issues for any putative class member.

**V.       Plaintiffs' Proposed Remedies Cannot Be Established With Common Proof.**

*Damages*. Both "statutory damages" and the alternative, "actual damages and any additional profits of the infringer," present highly individualized legal and factual questions. 17 U.S.C. § 504(a). Whether or not these issues would alone defeat certification, they indisputably weigh against it. *Bowerman v. Field Asset Servs., Inc.*, — F.4th —, 2023 WL 2001967, at *8 (9th Cir. Feb. 14, 2023).

A copyright owner cannot seek statutory damages without proving that her work was "registered prior to commencement of the infringement" or within three months of first publication. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 699 (9th Cir. 2008). That requires individualized evidence of whether and when a work was registered, when it was published, and when infringement commenced. Such issues as to "each putative class member's eligibility for statutory damages" cut against certification. *Utopia Entm't*, 2006 WL 8435006, at *8. And even when statutory damages are available, the court must determine the "just" amount under the circumstances (17 U.S.C. § 504(c)(1)), including individualized factors like "revenues lost by the plaintiff" and the "value of the copyright" (Mot. 23 n.7). These are not "administrative," issues, but matters for discovery and litigation.

---

[17] Schneider appears to contend that by requesting ISRCs from certain partners and using ISRCs in connection with YouTube's Content ID tool, YouTube implicitly concedes their value as CMI in all circumstances. Mot. 21-22. But whether ISRCs can serve a useful function in the proper context is beside the point. Neither YouTube nor Schneider uses ISRCs embedded in video files to protect copyrights or police infringements in sound recordings. How YouTube and partners may use ISRCs in a very different context is irrelevant.

"Actual damages" and non-duplicative "profits" under § 504 require even more individualized proof, as Plaintiffs' initial disclosures say they will seek "lost revenues" and "the value of a hypothetical license." Harold Ex. 2. With a cursory citation to an inadmissible expert report (Waldon Ex. 18), Plaintiffs assert that their expert has "a methodology" to calculate "direct and indirect profits" on a class-wide basis (Mot. 23), but these are self-evidently individualized analyses that depend on each work and alleged infringement.[18] *See Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016) (predominance not satisfied without "common methodology for calculating damages").

***Injunction.*** Individualized issues also predominate in any injunctive relief analysis. Merits aside, each putative member would have to show irreparable harm from a lack of access to Content ID. The record shows: (i) Schneider and Uniglobe already have Content ID access through agents; (ii) AST disclaimed interest in it; and (iii) Pirate Monitor cannot be trusted with it. *See, e.g.*, Harold Exs. 13 (Schneider Dep. Tr.) at 163:7-12, 193:10-194:23; 21 (Uniglobe Dep. Tr.) at 160:2-11, 161:7-9; 26 (AST Dep. Tr.) at 235:23-236:7. These Plaintiffs thus would not be entitled to injunctive relief based just on this one of the relevant factors. *See Immigrant Defs. L. Ctr. v. Mayorkas*, 2021 WL 4296210, at *5 (C.D. Cal. June 2, 2021) (listing four injunctive relief factors). Similar individualized issues exist and predominate for every putative class member.

## VI. Plaintiffs Have Failed To Prove Superiority.

Plaintiffs have also failed to carry their burden of showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Congress "designed" the Copyright Act to facilitate and encourage individual claims. *See Premier League*, 297 F.R.D. at 66. "[S]tatutory damages ... give litigation value to each individual case" (*id.*), and attorneys' fees to prevailing parties ensure that litigation costs do not

---

[18] Damages and profits recoverable from a defendant are limited to those "attributable to the infringement" (17 U.S.C. § 504(b)), which requires "a causal link between the infringement and the monetary remedy sought" (*Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004)). Plaintiffs must establish this causal connection between a specific infringement and a specific amount, a necessarily individualized inquiry that Plaintiffs' model does not and cannot answer. *See* Dkt. 262 at 10-11. Further individualized treatment is required to exclude extraterritorial activity, to apportion damages where a work makes up only part of an alleged infringement, and to account for individual failures to mitigate, such as Schneider's failure to send takedown notices and her long delay in suing. *See id.* at 15. Plaintiffs do not remotely address any of this.

deter meritorious claims (17 U.S.C. § 505). *See Bowerman*, 2023 WL 2001967, at *9 n.8

(availability of "large damages awards" weighed against superiority). Further, Congress

established the Copyright Claims Board in 2020, to expeditiously resolve individual

infringement claims. 17 U.S.C. §§ 1501-11. It provides individuals with "affordable enforcement

of their copyright." Riddhi Setty, *New Copyright Venue Fields Hundreds of Claims, Evoking

Optimism*, Bloomberg Law (Jan. 13, 2023). Plaintiffs say "[a]ny individualized issues will

efficiently be resolved through claims administration." Mot. 25. But defendants have a right to a

"meaningful opportunity to contest" the claims. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st

Cir. 2018). Treating them as merely administrative issues would "jettison[] the rules of evidence

and procedure, the Seventh Amendment, [and] the dictate of the Rules Enabling Act." *Id.*

## VII.   Plaintiffs' Perfunctory Request For An Issue Class Fails to Satisfy Rule 23.

As an afterthought, Plaintiffs float the possibility of a Rule 23(c)(4) issue class. Mot. 25.

But an issue class must "'materially advance[] the disposition of the litigation as a whole.'"

*Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (citation omitted). Plaintiffs do not

even attempt to make that showing. The Court can stop its analysis here. *See Davidson v. Apple,

Inc.*, 2018 WL 2325426, at *26 (N.D. Cal. May 8, 2018) (denying "perfunctory request");

*Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *14 n.9 (N.D. Cal. Dec. 15, 2014)

(denying "cursory request"). Moreover, adjudicating a few common questions (which Plaintiffs do

not clearly identify) would not resolve liability, defenses, or damages on a classwide basis. *See

Reitman v. Champion Petfoods USA, Inc.*, 830 F. App'x 880, 882 (9th Cir. 2020) (Rule 23(c)(4)

class denied where "numerous individualized issues affecting determinations of liability [made]

certification inefficient"); *Hinds v. Fedex Ground Package Sys., Inc.*, 2021 WL 4926980, at *8

(N.D. Cal. Aug. 18, 2021) (denied issue class where resolution of common issue in plaintiffs'

favor would still leave individualized liability issues). That is not defensible.

## CONCLUSION

Certification should be denied.

Dated:  March 6, 2023                    By: */s/ David H. Kramer*

                                                    David H. Kramer

                                                    WSGR: Attorneys for Defendants