DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
mrees@wsgr.com
lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
CATHERINE R. HARTMAN (admitted *Pro Hac Vice)*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
Email: chartman@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants

---

YOUTUBE, LLC and GOOGLE LLC,

Counterclaimants,

v.

PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,

Counterclaim Defendants.

CASE NO.: 3:20-cv-04423-JD

**[PUBLIC REDACTED VERSION]**

**DECLARATION OF PAUL N. HAROLD IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: April 13, 2023
Time: 10:00 a.m.
Dept.: 11
Judge: Honorable Judge James Donato

I, Paul N. Harold, declare as follows:

1. I am an attorney at Wilson, Sonsini, Goodrich & Rosati, counsel to Defendants, and am over the age of 18 and competent to make this declaration. I make each of the following statements based on my personal knowledge, and I could, if necessary, testify to the truth of each of them.

**Maria Schneider**

*Schneider's Discovery Responses*

2. On December 16, 2021, Defendants served on Plaintiff Maria Schneider a set of interrogatories that, among other things, asked Schneider to describe how she first became aware of each alleged infringement that she claimed to be suing over in this case. Attached as **Exhibit 1** is a true and correct copy of Plaintiff Maria Schneider's Objections and Responses to Defendants' Fourth Set of Interrogatories, served January 14, 2022. Schneider responded to Interrogatory No. 11, in part, by stating that "[t]he means that she and/or her agents used to tie the[] infringements to the relevant works in suit involved her and/or her agents ***playing the video and listening for a match between the audio played in the video and the relevant work in suit***." *Id.* at 4 (emphasis added).

3. On October 22, 2020, Plaintiff Maria Schneider served her initial disclosures in this action pursuant to Federal Rule of Civil Procedure 26(a)(1). Attached as **Exhibit 2** is a true and correct copy of an excerpt of Plaintiffs' Rule 26(a)(1) Initial Disclosures, served October 22, 2020. In those initial disclosures, Schneider claimed that she would seek "lost revenues" and "the value of a hypothetical license." *Id.* at 9.

4. On April 29, 2022, Defendants served on Schneider a set of interrogatories that, among other things, asked Schneider to describe any actual damages that she claims to have suffered from Defendants' alleged copyright infringement. Attached as **Exhibit 3** is a true and correct copy of an excerpt of Plaintiff Maria Schneider's Responses and Objections to Defendants' Fifth Set of Interrogatories, served May 31, 2022. Schneider provided no information of substance in response to Interrogatory No. 12, stating that "Defendants have not to date produced information responsive to RFPs seeking information relevant to this issue. For example,

Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 7, 111, and 117." *Id.* at 5. Schneider has not amended her May 31, 2022 response to Interrogatory No. 12. Fact discovery in this matter closed on July 5, 2022.

5. On June 3, 2022, Defendants served on Schneider a set of interrogatories that, among other things, asked Schneider to describe for each class she seeks to represent, all facts supporting her contention that certification is appropriate. Attached as **Exhibit 4** is a true and correct copy of an excerpt of Plaintiff Maria Schneider's Objections and Responses to Defendants' Sixth Set of Interrogatories, served July 5, 2022. Schneider provided no information of substance in response to Interrogatory No. 23, instead merely offering to "meet and confer with opposing counsel regarding an appropriate scope of information to be produced in response to this Interrogatory." *Id.* at 13. Defendants served the same interrogatory on Plaintiffs Uniglobe and AST, each of whom served a response identical to Schneider's on July 5, 2022.

*Schneider's Identification of Works and Alleged Infringements*

6. On October 12, 2020, Defendants served on Schneider a set of interrogatories that, among other things, asked Schneider to (1) identify each Work In Suit (Interrogatory No. 1); (2) identify the allegedly infringing videos and the works those videos allegedly infringed (Interrogatory No. 2); and (3) describe the bases for her CMI claim, including by identifying the "specific Work In Suit on which CMI appeared" (Interrogatory No. 9). Attached as **Exhibit 5** is a true and correct copy of an excerpt of Plaintiff Maria Schneider's First Amended Responses and Objections to Defendants' First and Second Set of Interrogatories, served March 8, 2021. In her amended response to Interrogatory No. 1, Schneider identified, among other things, the titles and copyright registration numbers for the Works In Suit. She identified only two sound recordings as Works In Suit: "*Concert in the garden*" (SR0000356519) and "*VIKINGS ANTHEM*" (SRu001327179). The rest of the Works In Suit she identified were musical compositions (as indicated by their copyright registration numbers beginning in "PA" rather than "SR"). In her amended response to Interrogatory No. 9, Schneider identified ISWC and ISRC codes "associated with her Works in Suit."

7. The Court set February 25, 2022, as the deadline for Plaintiffs to identify their final list of alleged infringements in this action. *See* Dkt. 98. Attached as **Exhibit 6** is a true and correct copy of Plaintiffs' List of Infringements, served February 25, 2022. That list identified 381 YouTube videos that Schneider alleged infringe her copyrights. Schneider claimed that only two of those videos, identified at Rows 309 (video ID e04yCOqalv8) and 329 (video ID AlJ6K1x9WIw), contained her sound recording, "*Concert in the Garden*." I understand from YouTube's declarant, Chenyuan Zhu, that both videos were removed from the service before 2016 in response to DMCA takedown notices and were not publicly available on the service on or after July 2, 2019. *See* Declaration of Chenyuan Zhu in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification ("Zhu Decl.") ¶ 4.

8. In her February 25, 2022 List of Infringements, Schneider identified as an alleged infringement a video previously located at https://www.youtube.com/watch?v=HrJjJukZoRU (Exhibit 6 at 8, row 103). I have reviewed that video. It discusses several musical performances and includes a 17-second clip of what Plaintiff contends is her music during a portion of the video that discusses her concert. *See* GOOG-SCHNDR-00042911. Schneider also identified as alleged infringements: a video previously located at https://www.youtube.com/watch?v=GZii89KY_j4 (Exhibit 6 at 6, row 31), which, based on my review, is a ten-second clip of a student band playing (*see* GOOG-SCHNDR-00042701), and a video previously located at https://www.youtube.com/watch?v=bWzNqEHLww8 (Exhibit 6 at 12, row 229), which, based on my review, is a 44-second video of a man dancing in a kitchen while music plays in the background (*see* GOOG-SCHNDR-00043065).[1]

9. Attached as **Exhibit 7** are true and correct copies of the online copyright records from the U.S. Copyright Office's Official Public Catalog reflecting the registrations of the following copyrighted works asserted by Plaintiff Maria Schneider in this action: (1) *Aires de Lando*; (2) *A Potter's Song*; (3) *Arbiters of Evolution*; (4) *A World Lost*; (5) *Bluebird*; (6) *Braided Together*; (7) *Carlos Drummond de Andrade Stories (5 songs for soprano and chamber*

[1] Defendants will provide these video files for the Court's review upon request.

*orchestra)*; (8) *Cerulean Skies*; (9) *CQ CQ, Is Anybody There?*; (10) *Data Lords*; (11) *Don't Be Evil*; (11) *Home*; (12) *Lembrança;* (14) *Look Up*; (15) *Nimbus*; (16) *Rich's Piece*; (17) *Sanzenin*; (18) *Sky Blue*; (19) *Sputnik*; (20) *Stone Song*; (21) *String Quartet No. 1*; (22) *The Monarch and the Milkweed*; (23) *The Pretty Road*; (24) *The Sun Waited for Me*; (25) *The Thompson Fields;* (26) *Walking by Flashlight (instrumental big band arrangement)*; (27) *Willow Lake*; (28) *Winter Morning Walks (9 songs for soprano, string orchestra, and jazz trio).* The dates on these registrations indicate that these 28 works were not registered until November 17, 2020, more than four months after Schneider instituted this action on July 2, 2020.

10. In her supplemental response to Defendants' Interrogatory No. 6, which asked Schneider to provide the date on which she learned of alleged infringements, Schneider admitted that she was aware of allegedly infringing videos for *Arbiters of Evolution*, *Cerulean Skies, Sky Blue, The Pretty Road*, *The Thompson Fields and Walking by Flashlight* years before filing suit. Attached as **Exhibit 8** is a true and correct copy of an excerpt from Plaintiff Maria Schneider's Supplemental Objections and Responses to YouTube and Google's Second and Sixth Interrogatories to Plaintiff Maria Schneider, served January 14, 2022.

11. During her deposition, Schneider admitted that her response to Interrogatory No. 6 contained errors and that she in fact had actual knowledge of at least three allegedly infringing YouTube videos years before she submitted DMCA takedown notices for them or brought this action. When presented with email communications showing that she had known of those videos years before the date she identified in her discovery response, Schneider claimed she must have "missed" them when conducting her investigation in response to Interrogatory No. 6. *Infra* Ex. 13 at 64:2-74:23.

12. As discussed above, early in discovery, Defendants served interrogatories on Plaintiffs asking them to identify the Works-in-Suit (Interrogatory No. 1) and the allegedly infringing videos and the works those videos allegedly infringed (Interrogatory No. 2). In Schneider's response to Interrogatory No. 2, Schneider identified several videos as allegedly infringing works that she had not identified as Works-in-Suit in response to Interrogatory No. 1, including "Choro Dancado," "Pas de Deux," "Danca Illusoria," and "Coming About." After

Defendants inquired about this discrepancy, Plaintiffs responded claiming that "'Choro Dancado,' 'Pas de Deux,' and 'Danca Illusoria,' ... are movements of 'Three Romances,' which is identified as a Work in Suit" and that "'Coming About,' ... is a movement from 'Scenes from Childhood,' which is identified as a Work in Suit." Attached as **Exhibit 9** is a true and correct copy of Plaintiffs' counsel's February 17, 2021 letter.

13. Schneider sent DMCA takedown notices to YouTube for those individual movements from a larger work without mentioning the name of the work that she had actually registered. Attached as **Exhibits 10-12** are true and correct copies of emails from YouTube addressed to Maria Schneider produced by Plaintiff Maria Schneider with the bates numbers SCHNEIDER_0000009343, SCHNEIDER_0000009344, and SCHNEIDER_0000009334, respectively. Those emails state that content identified in Schneider's DMCA takedown notices has been removed and include the information that Schneider provided in that DMCA takedown notice. The information that Schneider provided in her notice identifies alleged infringements of "Choro Dancado," "Pas de Deux," and/or "Danca Illusoria" without mentioning the name of the work in which they were supposedly contained, "Three Romances."

*Schneider-Related Deposition Testimony*

14. On June 14, 2022, Defendants took a deposition of Plaintiff Maria Schneider. Attached as **Exhibit 13** is a true and correct copy of excerpts of the transcript of the deposition of Plaintiff Maria Schneider, taken June 14, 2022.

*Summary Judgment as to Schneider*

15. Defendants moved for summary judgment in this action on Maria Schneider's copyright infringement and CMI claims. Dkt. No. 164. Attached as **Exhibit 14** is a true and correct copy of the Declaration of Joanne Suk in Support of YouTube, LLC and Google LLC's Motion for Summary Judgment as to Plaintiff Maria Schneider, filed August 26, 2022, together with the revised redacted version of Exhibit 1 to that declaration, filed October 27, 2022 in connection with the parties' joint sealing submission (Dkt. 194). In her sworn declaration, Ms. Suk avers that "YouTube typically enters into broad licenses for musical works with music publishers allowing use of their entire catalogs of musical works on YouTube, which typically include works

by hundreds or thousands of individual songwriters." *Id.* at 1. "YouTube currently has license agreements with hundreds of music publishers, including the three major publishers as well as many independent publishers." *Id.* at 1-2.

16. Ms. Suk's summary judgment declaration attaches as Exhibit 1 a redacted version of the 2014 Publishing License agreement ("PLA") between Google and "A" Side Music LLC d/b/a Modern Works Music Publishing ("Modern Works"). Under the PLA, Modern Works granted Google and its affiliates a license to "Reformat" any videos containing any musical work that Modern Works had the rights to license (Suk Ex. 1 § 2(a)), *i.e.*, "to digitally re-encode [such videos] without modification of the content" (*id.*, Definitions).

17. On July 14, 2022, Plaintiffs took a deposition of Joanne Suk. Attached as **Exhibit 15** is a true and correct copy of excerpts of the transcript of the deposition of Joanne Suk, taken July 14, 2022.

18. Attached as **Exhibit 16** is a true and correct copy of excerpts of the transcript from the October 13, 2022 hearing on Defendants' motion for summary judgment as to Schneider. During that hearing, the Court voiced "concern[]" about the viability of a class action in this case in light of the "mountain of work" it took to analyze Schneider's individual claims. *Id.* at 27:10-24. Referring to the analysis required to sort through the licensing issues associated with Schneider's claims, the Court explained that it "can't do this for everybody." *Id.* at 27:20-21.

19. On January 5, 2023, the Court granted summary judgment to Defendants on three categories of Schneider's copyright-infringement claims: (1) all infringement claims based on the 27 works for which Schneider identified no alleged infringement; (2) all infringement claims based on videos that Schneider had actual knowledge of more than one year before she filed suit; and (3) direct-infringement claims based on the 15 works that Schneider or her agents licensed to YouTube under the Terms of Service when they uploaded them to YouTube. *See* Dkt. 222. The 15 works in the last category are: (1) *Dance, you monster, to my soft song*; (2) *Choro Dançado*; (3) *Allegresse*; (4) *Last Season*; (5) *Evanescence*; (6) *Hang Gliding*; (7) *Cerulean Skies*; (8) *Sanzenin*; (9) *Look Up*; (10) *CQ CQ, Is Anybody There?*; (11) *Data Lords*; (12) *Sputnik*; (13) *Bluebird*; (14) *Stone Song*; and (15) *A World Lost*. *Id.* at 15.

20. Before she filed suit, Maria Schneider, personally or through her agent, submitted DMCA takedown notices to YouTube alleging that videos on the service infringed her copyrights in several of the 15 works that the Court held at summary judgment she and her agents had licensed to YouTube. Attached as **Exhibits 17-18** are true and correct copies of a sample of emails from YouTube sent in response to those DMCA takedown notices, which were produced by Plaintiff Maria Schneider with the bates numbers SCHNEIDER_0000009455 and SCHNEIDER_0000125020, respectively, under a CONFIDENTIAL designation. [redacted]

**Uniglobe Entertainment, LLC**

*Uniglobe's discovery responses*

21. On December 14, 2021, Defendants served on Uniglobe a set of interrogatories that, among other things, asked Uniglobe to: (i) describe the basis for its claim of ownership of the works-in-suit (Nos. 1-2); (ii) identify every occasion on which someone has (a) been authorized to use one of the works-in-suit; and/or (b) uploaded one of the works-in-suit online with Uniglobe's authorization (Nos. 4 & 6); (iii) identify everyone who has been authorized to grant licenses to use the works-in-suit (No. 5); (iv) identify every occasion on which one of the works-in-suit has been uploaded to YouTube by Uniglobe or with its authorization (No. 7); (v) describe the basis for Uniglobe's allegations that Defendants violated 17 U.S.C. § 1202 (No. 9); and (vi) provide the date it first learned of each alleged infringement (No. 12). On June 28, 2022 Uniglobe served Amended Objections and Responses to YouTube and Google's First Set of Interrogatories, including amended responses to Interrogatory Nos. 1-2, 4-7, 9 and 12. Attached as **Exhibit 19** is a true and correct copy of excerpts of Uniglobe's Amended Objections and Responses to YouTube and Google's First Set of Interrogatories, served June 28, 2022, a week before the close of fact discovery.

Uniglobe's ownership

22. Defendants' Interrogatory Nos. 1 and 2 asked Uniglobe to identify the author(s) and owner(s) of each Work-in-Suit (No. 1) and describe the basis for Uniglobe's claim of copyright ownership (No. 2). *Id.* at 2-3. Uniglobe responded that it obtained ownership of the Works-in-Suit through work-for-hire agreements with the authors of the works and transfers of ownership rights. For example, Uniglobe stated that "Namrata Singh Gujral transferred her copyright in *Americanizing Shelley* to Americanizing Shelley, LLC," which in turn "produced *Americanizing Shelley* using work-for-hire agreements" and "transferred ownership of the *Americanizing Shelley* copyright to Uniglobe." *Id.* at 3-4. But when subsequently asked whether the plaintiff entity, Uniglobe Entertainment (Wyoming) (as opposed to a same-named entity in Delaware), owned the Works-in-Suit, Uniglobe could not give a definitive answer. *See* Ex. 21 at 77:6-10, 93:6-94:16.

Uniglobe's licenses

23. Defendants' Interrogatory Nos. 5 and 6 asked Uniglobe to identify everyone authorized to grant sublicenses to use one or more of the Works in Suit (No. 5) and describe every occasion on which a Work-in-Suit has been uploaded online with Uniglobe's authorization (No. 6). Ex. 19 at 5-6. Uniglobe responded, in part, by stating that it has authorized Vision Films to grant licenses to use *5 Weddings* and authorized Gravitas Ventures to grant licenses to use *1 a Minute*. *Id.* at 6-7. Uniglobe's response also referred Defendants to Exhibit A to its amended response, which identifies more than 50 licensing agreements that Uniglobe has entered for the Works in Suit including instances in which it has authorized still others to sublicense those works. *Id.*

24. Defendants' Interrogatory No. 7 asked Uniglobe to detail each occasion on which each Work-in-Suit has been uploaded to YouTube by Uniglobe itself or with its authorization. *Id.* at 7. Uniglobe admitted that it authorized Gravitas Ventures to display *1 a Minute* on YouTube and has "authorized Vision Films, Movie Central, and Encourage TV to display the English-language version of *5 Weddings*." Uniglobe also admitted that it has directly "uploaded excerpts or trailers of some or all" of the Works In Suit to YouTube and has uploaded to YouTube the entire

work "for one or more of the works at issue." Uniglobe then identified 66 YouTube videos that it has uploaded to the service and that contain all or part of the works-in-suit. *Id.* at 7-12.

Uniglobe failed to identify a CMI claim

25. Defendants' Interrogatory No. 9 asked Uniglobe to detail each alleged violation of 17 U.S.C. § 1202 that it contends Defendants committed, including by identifying the specific work on which it contends CMI appeared, the specific CMI it contends Defendants allegedly removed, and the URL of the offending YouTube video. *Id.* at 13. Uniglobe failed to provide any substantive response, instead objecting to the request as, among other things, premature. *Id.* In Plaintiffs' Motion for Class Certification, they do not identify Uniglobe as either a proposed representative or member of any putative CMI class.

Uniglobe identified alleged infringements that are time barred

26. Defendants' Interrogatory No. 12 asked Uniglobe to identify the date on which it became aware of each alleged infringement. *Id.* at 15-16. Uniglobe responded by providing dates "on or shortly before" which it "became aware of the [alleged] infringements." *Id.* at 16. These dates range from May 21, 2011 (more than eleven years before this case was filed) and February 25, 2022 (twenty months after this case was filed). *Id.* at 15-25.

*Uniglobe's identification of works*

27. Uniglobe initially claimed ownership over and accused Defendants of infringing registered "feature films." Dkt. 99 ¶ 66. On May 10, 2022 counsel for Plaintiffs wrote counsel for Defendants, stating that Uniglobe would "supplement its [interrogatory] responses to identify that . . . the screenplays of *Americanizing Shelley* and *5 Weddings* are at issue," despite the fact that Uniglobe's Amended Complaint does not assert screenplays. Attached as **Exhibit 20** is a true and correct copy of Plaintiffs' May 10, 2022 letter. Uniglobe's CEO, Nayomi Cooper, later admitted that Uniglobe's initial claims that the films were registered were "not entirely accurate," and struggled to articulate which Uniglobe entity was the owner of the Works-in-Suit. *See* Ex. 21 at 54:4-57:11, 66:5-16, 77:6-10, 93:6-94:16.

*Uniglobe's Deposition Testimony*

28. On June 30, 2022 and August 1, 2022, Defendants took the deposition of Uniglobe's 30(b)(6) designee Namrata Singh Gujral Cooper. Attached as **Exhibits 21-22** are true and correct copies of excerpts of the transcripts of the deposition of Uniglobe' s 30(b)(6) designee Namrata Singh Gujral Cooper, taken June 30 and August 1, 2022.

**AST Publishing Ltd.**

*AST's Document Production and Discovery Responses*

29. Defendants sent document requests to AST in November 2021. AST did not begin its document production in this case until June 2022 and continued to produce documents until August 15, 2022, more than a month after the fact discovery cutoff set in the Court's scheduling order. Dkt. 98. Most of the agreements that AST produced are written entirely in Russian with names of the parties to the agreements redacted. When Defendants asked Plaintiffs' counsel about the basis for these redactions, Plaintiffs' counsel stated that names in the agreements (as well as the other documents that AST produced, such as emails) were redacted due to what they said were requirements under Russian privacy laws. It is generally impossible, with the information Plaintiffs have hidden, to identify the parties to any of the agreements or to identify who the senders and recipients are to emails and other correspondence AST produced.

30. On December 14, 2021 Defendants served on AST a set of interrogatories that among other things asked AST to: (i) detail the basis for its claim of copyright ownership (No. 2); (ii) describe each instance on which a Work-in-Suit was uploaded to YouTube with AST's authorization (No. 7); and (iii) describe the basis for AST's allegations that Defendants violated 17 U.S.C. § 1202 (No. 9). Attached as **Exhibit 23** is a true and correct copy of excerpts of AST's Objections and Responses to YouTube and Google's First Set of Interrogatories, served January 26, 2022.

AST's ownership

31. Defendants' Interrogatory No. 2 asked AST to describe the basis for its claim of copyright ownership of each Work-in-Suit. *Id.* at 4. AST responded that it obtained ownership "of the audiobook and/or print or electronic versions" of the Works In Suit through "agreements with

the authors and/or agents of the authors of" the works and "work-for-hire agreements" with "[a]nyone involved in creating [the] audiobook[s]." *Id.* AST did not identify which agreements were applicable to each work it claimed to own.

AST's licenses

32. Defendants' Interrogatory No. 7 asked AST to detail each occasion on which each Work-in-Suit has been uploaded to YouTube by AST itself or with its authorization. *Id.* at 7. AST admitted that it has authorized a third party, LitRes, and other unidentified individuals or entities to upload excerpts of the Works In Suit to YouTube. *Id.*

AST failed to identify a CMI claim

33. Defendants' Interrogatory No. 9 asked AST to detail each alleged violation of 17 U.S.C. § 1202 that it contends Defendants committed, including by identifying the specific work on which it contends CMI appeared, the specific CMI it contends Defendants allegedly removed, nd the URL of the offending YouTube video. *Id.* at 8. AST failed to provide any substantive response, instead objecting to the request as, among other things, premature. *Id.* In Plaintiffs' Motion for Class Certification, they do not identify AST as either a proposed representative or member of any putative CMI class.

*AST's Identification of Works and Alleged Infringements*

34. AST initially claimed ownership over and accused Defendants of infringing "print and audio books." Dkt. 99 ¶ 75. In its May 10, 2022 letter (Ex. 20), counsel for Plaintiffs wrote counsel for Defendants, stating that AST would "supplement its response [to Interrogatory No. 2] to identify that only the audiobook versions of the Works in Suit are at issue." *Id.* at 4.

35. On August 16, 2022, over a month after fact discovery closed in this case, AST served amended objections and responses to Defendants' Interrogatory No. 12, which asked AST to, among other things, provide the date it first learned of each alleged infringement. Attached as **Exhibit 24** is a true and correct copy of an excerpt from Plaintiff AST Publishing Ltd.'s Amended Objections and Responses to YouTube and Google's First Set of Interrogatories, served August 16, 2022. After failing to identify in its original January 26, 2022 response any dates on which it became aware of alleged infringements, AST's amended response provided by which "it became

aware of" allegedly infringing videos. *Id.* at 19. These dates range from June 2019 (thirteen months before this case was filed) to June 2022 (twenty-three months after this case was filed).

36. In Plaintiffs' February 25, 2022 List of Infringements (*see* Ex. 6), AST identified 108 YouTube videos as alleged infringements. Many of those are videos of individuals reading excerpts from a print book. For example, based on my review, the allegedly infringing video previously located at https://www.youtube.com/watch?v=Ds4NAqcB1cY (Ex. 6 at 3, row 85) is a 4:40 minute video of two children, one of whom reads an excerpt from a print book in Russian and appears to discuss the book. *See* GOOG-SCHNDR-00043607.[2]

37. As part of the discovery process in this case, the parties entered into a Content ID License Agreement under which Defendants agreed to run YouTube's Content ID tool against reference files that Plaintiffs provided of the works in suit. Attached as **Exhibit 25** is a true and correct copy of the parties' Content ID License Agreement, which was designated by the parties as CONFIDENTIAL. As part of that agreement, the parties agreed "that Google will not know whether Plaintiffs allege that any Video Matches identified through Google's operation of [Content ID] are infringements of Plaintiffs' copyrights," and that "to the extent Plaintiffs believe Google should take action to remove or disable access to any allegedly infringing video matched through operation of [Content ID], Plaintiffs agree to send Google a valid notice pursuant to 17 U.S.C. § 512(c)(3) for any such video." Ex. 25 § 7. The Parties also agreed that Plaintiffs would provide Defendants with "a Reference File for each Work." *Id.* § 3.

38. Per that agreement, AST provided reference files that YouTube compared to the corpus of videos on the service. However, instead of providing a separate reference file for each Work-in-Suit (*id.*), Plaintiffs provided a staggering 715 reference files for AST's 9 Works-in-Suit. Over the ensuing months, Defendants scanned all videos on the service and produced over 29,000 matches for AST's reference files. However, according to the team that ran the process, thousands of the matches of AST's reference files were caused not by the presence of the recorded performances of literary works that AST claims to own, but rather because the matched videos contained music that happened to be included in the reference files that AST provided (e.g., as

[2] Defendants will provide the video file for the Court's review upon request.

audiobook lead-in or interlude music). Moreover, the number of matches were significantly inflated due to AST's failure to provide one file per Work-in-Suit. Of all those Content ID matches, AST ultimately identified only 64 as alleged infringements, but it did not identify even those by the February 25, 2022 deadline the Court set for final identification (Dkt. 98) or seek to extend that deadline. AST also did not send DMCA takedown notices to YouTube even for those 64 matches.

*AST's Deposition Testimony*

39. On August 18, 2022, Defendants took a deposition of AST's 30(b)(6) designee, Maxim Lozovsky. Attached as **Exhibit 26** is a true and correct copy of excerpts of the transcript of the deposition of AST's 30(b)(6) designee Maxim Lozovsky, taken August 18, 2022. During that deposition, Lozovsky testified that, although AST was added to this case via an amended complaint in November 2021, no one from AST even spoke directly with Plaintiffs' counsel until June 2022, which is when AST thought its involvement in this case began. *Id.* at 73:16-74:1, 74:17-75:1, 75:8-14. Lozovsky was unable to describe what relief AST is seeking, the class(es) of people it seeks to represent, or the duties it owes to absent class members. *Id.* at 81:16-19, 83:7-84:21, 85:22-86:1. And he confirmed that AST did not even review the initial complaint or its amended complaint in this action before they were filed. *Id.* at 80:10-16, 90:16-24.

40. On August 19, 2022, Defendants took a deposition of AST's other 30(b)(6) designee, Maxim Ryabyko. Attached as **Exhibit 27** is a true and correct copy of excerpts of the transcript of the deposition of AST's 30(b)(6) designee Maxim Ryabyko, taken August 19, 2022.

**Pirate Monitor Ltd.**

41. Pirate Monitor Ltd. ("Pirate Monitor") brought this action along with Maria Schneider in July 2020. In its complaint, Pirate Monitor asserted rights in three works, one of which was an allegedly unregistered foreign work titled *Csak szex és más semi*. Dkt. 1 ¶ 66.

42. Defendants brought counterclaims against Pirate Monitor, alleging that it had devised a wide-ranging fraud against YouTube whereby it uploaded thousands of videos to YouTube claiming the rights to do so, and shortly afterward sent YouTube DMCA takedown requests for the very same videos, representing that the videos infringed copyrights. Dkt. 34.

Defendants further detailed Pirate Monitor's scheme and the harm it caused to Defendants in sworn responses to Pirate Monitor's Interrogatory Nos. 2-3. A true and correct copy of an excerpt of Defendants and Counterclaimants YouTube, LLC and Google LLC's December 17, 2020 Responses and Objections to Plaintiff and Counterclaim Defendant Pirate Monitor Ltd.'s First Set of Interrogatories (Nos. 1-4) that contains Defendants' responses to Interrogatory Nos. 2 and 3 is attached as **Exhibit 28**.

43. Attached as **Exhibit 29** is a true and correct copy of excerpts of the transcript of the deposition of Pirate Monitor's 30(b)(6) designee, Gábor Csupó, taken on July 5, 2022. Csupó testified that its agent uploaded videos to YouTube with the copyright owner's authorization and then sent DMCA takedown notices requesting the removal of those same videos. Ex. 29 at 185:20-186:5, 191:3-12.

44. On December 18, 2020, after Defendants had served interrogatories demanding Pirate Monitor prove its ownership of the copyrighted works over which it was suing, Plaintiffs' counsel wrote to counsel for Defendants about an "error" in the complaint and Pirate Monitor's interrogatory responses. That "error," they said, was that Pirate Monitor did not in fact own one of the three works named in the complaint and identified in Pirate Monitor's interrogatory response: *Csak szex és más semi*. *See* Dkt 1 ¶ 17 (naming *Csak szex és más semi* as a Work-in-Suit). Attached as **Exhibit 30** is a true and correct copy of an email by counsel for Plaintiffs to counsel for Defendants on December 18, 2020. Pirate Monitor later dismissed all of its claims in the case with prejudice. Dkt. 66.

**<u>Plaintiffs' DMCA Takedown Notices to YouTube</u>**

45. Plaintiffs have submitted DMCA takedown notices to YouTube that do not identify Plaintiffs as the owners of the copyrights asserted in those notices. For example, attached as **Exhibit 31** is a true and correct copy of an email from YouTube addressed to Uniglobe produced by Uniglobe with the Bates number UNIGLOBE_0000013042. The email states that content identified in one of Uniglobe's DMCA takedown notices has been removed and includes the information that Uniglobe provided in that DMCA takedown notice. The information that

Uniglobe provided identifies "Nayomi Cooper," not Uniglobe, as the owner of the copyright in Work-in-Suit *5 Weddings*.

46. YouTube has also received at least 67 DMCA takedown notices from AZAPI that identify YouTube videos as allegedly infringing certain copyrighted works. *See, e.g.*, Zhu Decl. ¶ 5 & Exs. A-G. While AST has claimed in this case to own those works, 65 of these DMCA takedown notices do not mention AST or identify it as the owner of copyrights in the works. Additionally, YouTube has received two DMCA takedown notices for AST's Works in Suit *Zuleikha Opens Her Eyes* (Зулейха открывает глаза) and *My Children* (Дети мои) that identify "Audiobook, LLC" (ООО "Аудиокнига") not AST, as the owner of the copyrights in those works. *See* Zhu Decl. ¶ 5 & Exs. F-G.

47. Plaintiffs have also submitted DMCA takedown notices to YouTube that identify videos as allegedly infringing works that are different from the works that Plaintiffs later claimed those videos infringed in this action. For example, AST, through its agent AZAPI, submitted a DMCA takedown notice to YouTube alleging that the YouTube video with the URL http://www.youtube.com/watch?v=7LFHLHjyt4w infringed a work called *Pelagia and the Black Monk* (Пелагея и черный монах). *See* Zhu Decl. ¶ 6 & Ex. H. But in AST's February 25, 2022 List of Infringements, AST identified that video as allegedly infringing a different work, *Pelagia and the Red Rooster*. *See supra*, Ex. 6 at 1, row 22. At deposition, AST's corporate designee confirmed that *Pelagia and the Black Monk* and *Pelagia and the Red Rooster* are different books. *See supra*, Ex. 27 at 136:19-21.

48. AST also submitted DMCA takedown notices to YouTube that identified YouTube videos as allegedly infringing the work called *Fiery Finger* (Огненный перст). *See* Zhu Decl. ¶ 6 & Exs. I-J. But in AST's February 25, 2022 List of Infringements, AST identified both of those YouTube videos as allegedly infringing a different work, *Nutty Buddha*. *See supra*, Ex. 6 at 2, rows 38 & 39.

49. Schneider submitted a DMCA takedown notice to YouTube that identified the YouTube video with the URL http://www.youtube.com/watch?v=wmAzXaz_UaY as allegedly infringing "Cerulean." Schneider has never identified any Work-in-Suit with the title "Cerulean."

In her February 25, 2022 List of Infringements, Schneider provides the complete name of her work, *Cerulean Skies*. *See supra*, Ex. 6 at 15, row 343. Attached as **Exhibit 32** is a true and correct copy of an email from YouTube to Schneider produced by Plaintiff Maria Schneider with the Bates number SCHNEIDER_0000009453 that confirms receipt of Schneider's DMCA takedown notice and provides the information that Schneider included in her notice.

50. Plaintiffs have also submitted DMCA takedown notices for videos that do no not contain their works at all. For example, attached as **Exhibit 33** is a true and correct copy of an email from YouTube addressed to Uniglobe produced by Uniglobe with the Bates number UNIGLOBE_0000032107. The email is a response to one of Uniglobe's DMCA takedown notices and includes the information that Uniglobe provided in that DMCA takedown notice. The information that Uniglobe provided identifies the YouTube video with URL http://www.youtube.com/watch?v=YXWFYPk11GM as allegedly infringing the film *America's Forgotten*. In its February 25, 2022 List of Infringements, however, Uniglobe identified that same video as allegedly infringing a different work, *5 Weddings*. *See supra*, Ex. 6 at 22, row 153. The video is a 20-second clip of the 20th Century Fox opening sequence. When shown the video at deposition, Uniglobe could not identify any content that infringed either of those works in the video. *See supra*, Ex. 21 at 185:3-11.

51. Uniglobe also sent a DMCA takedown notice to YouTube that identified a YouTube video (http://www.youtube.com/watch?v=ndnf4uazkMc) as allegedly infringing the film *5 Weddings*. But the video is simply a trailer that is unrelated to *5 Weddings*. When shown the video at deposition, Uniglobe admitted that there is "no copyrighted work of [Uniglobe's] that's in this video." *See supra*, Ex. 22 at 328:17-330:20. Attached as **Exhibit 34** is a true and correct copy of YouTube's response to that DMCA takedown notice, which includes the contents of the original notice, produced by Uniglobe with the Bates number UNIGLOBE_0000013839.

**<u>Revenue and Views for Videos in Plaintiffs' List of Alleged Infringements</u>**

52. Defendants gathered and produced at Plaintiffs' behest the number of total views and the number of autoplayed views of 540 videos that were identified in Plaintiffs' February 25, 2022 List of Infringements, since July 1, 2017. More than half (281) of those videos had fewer

than 500 views; 225 videos had fewer than 250 views; 152 videos had fewer than 100 views; 98 videos had 50 or fewer views; 34 videos had 10 or fewer views; and 11 had none. As for Autoplay, more than 90% (526) of the videos had fewer than 1,000 autoplayed views; 487 had fewer than 100 autoplayed views; 408 had 10 or fewer autoplayed views; and 257 had none.

53. Defendants also produced monthly revenue figures for 278 videos that were identified in Plaintiffs' February 25, 2022 List of Infringements. Of those 278 videos, 219 were associated with less than $1 of total revenue since July 1, 2019, and 87 were associated with no revenue at all during that same time period.

**Plaintiffs' Expert Reports**

54. On October 13, 2022, the Court considered Plaintiffs' request for additional time to serve "supplemental" expert reports from Drs. Cowan and Singer. In response to Plaintiffs' request and to avoid the issues associated with supplemental reports, the Court "blank[ed] everything out" so that the parties could "start over" with new opening reports from Cowan and Singer. Ex. 16 at 46:15-17. Plaintiffs served those new reports on November 17, 2022. Defendants served rebuttal reports on December 29, 2022, and expert discovery closed on January 20, 2023.

55. In his November 17 report, Plaintiffs' expert, Charles Cowan, suggests that Plaintiffs could establish copyright ownership of foreign unregistered works by using privately-run "sources and databases that contain publication and ownership information on millions of foreign unregistered works, including MusicBrainz, EIDR, and IMDb." Waldron Ex. 17 ¶ 12(b). I accessed those databases, as well as the SoundExchange database that Cowan mentions elsewhere in his report, and searched for foreign unregistered works that Uniglobe, AST and Pirate Monitor have put at issue in this case. I was unable to locate most of those works in the databases that Cowan identifies, and when I was able to find a work, the ownership information was absent. For example, I searched EIDR and IMDb for "Zimmer Feri 2," a work that Pirate Monitor claimed to own in the initial Complaint. On EIDR, no copyright owner is listed. *See* https://ui.eidr.org/view/content?id=10.5240/5BF3-6719-369B-395A-8DBE-Z. On IMDb, Pirate Monitor is not mentioned on the page. *See* https://www.imdb.com/title/tt1699511/. Neither EIDR

nor IMDb returned a result that identifies the Hindi version of the *5 Weddings* film that Uniglobe has put at issue.

56. I also searched EIDR, SoundExchange, and MusicBrainz for the English and Russian titles of AST Works-in-Suit, including *Children's Book*, *Nutty Buddha*, *History of the Russian State*, *Pelagia and the Red Rooster*, *Zuleikha Opens Her Eyes*, *Selfmama: Life Hacks for a Working Mother*, *The Life of Wonderful People and Animals: Short Stories About All Sorts of Different Things*. My searches of those databases did not produce information for any of those works.

57. I reviewed the terms of service for SoundExchange, EIDR, and IMDb. Attached as **Exhibits 35-37** are true and correct copies of these terms of service as of November 14, 2022. None of the databases warrant that the information they contain is accurate, complete or reliable. To the contrary, they all disclaim any such representation. *See, e.g.*, **Ex. 35**, SoundExchange, *Terms of Use*, https://isrc.soundexchange.com/#!/search ("SoundExchange does not warrant … that information accessible via the Sites will be complete, accurate, or timely."); **Ex. 36**, EIDR, *Terms of Use*, https://www.eidr.org/assets/EIDR-Terms-of-Use-February-2021.pdf ("EIDR CANNOT MAKE ANY REPRESENTATIONS OR WARRANTIES ABOUT THE SUITABILITY, ACCURACY OR COMPLETENESS OF THE REGISTRY DATA OR REGISTRY").

**Expert Depositions**

58. On September 28, 2022, Defendants took a deposition of Plaintiffs' expert, Paul Jessop. Attached as **Exhibit 38** is a true and correct copy of excerpts of the transcript of the deposition of Paul Jessop, taken September 28, 2022.

59. On September 29, 2022, Defendants took a deposition of Plaintiffs' expert, Joseph Winograd. Attached as **Exhibit 39** is a true and correct copy of excerpts of the transcript of the deposition of Joseph Winograd, taken September 29, 2022.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 6th Day of March 2023, at Washington, District of Columbia.

*/s/ Paul N. Harold*
Paul N. Harold

**ATTORNEY ATTESTATION**

I, David H. Kramer, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the signatory.

*/s/ David H. Kramer*
David H. Kramer