George A. Zelcs*
*gzelcs@koreintillery.com*
Randall P. Ewing, Jr.*
*rewing@koreintillery.com*
Ryan Z. Cortazar*
*rcortazar@koreintillery.com*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
*pkorologos@bsfllp.com*
Joanna Wright*
*jwright@bsfllp.com*
Jeffrey Waldron*
*jwaldron@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br><br>Judge: Hon. James Donato<br><br>Date:   April 13, 2023<br>Time:  10:00 a.m. |

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.     RULE 23(A)(1)—NUMEROSITY IS SATISFIED. ....................................................... 2

II.    RULE 23(A)(3)—PLAINTIFFS' CLAIMS ARE TYPICAL. ........................................ 3

III.   COMMON QUESTIONS PREDOMINATE. ................................................................ 4

     A.     The Issues and Evidence for the Direct Infringement Claims are Common. ................. 4

     B.     The Issues and Evidence for the Secondary Liability Claims are Common. ................. 7

     C.     The Issues and Evidence for the Affirmative Defenses are Common........................... 8

     D.     Common Issues Predominate for the CMI Classes. .................................................... 11

     E.     Remedies Can Be Established with Common Methods. .............................................. 14

IV.   A CLASS ACTION IS THE SUPERIOR METHOD. ....................................................... 15

V.    IN THE ALTERNATIVE, A RULE 23(C)(4) CLASS IS APPROPRIATE. .................... 15

CONCLUSION ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*ALS Scan. v. Steadfast Networks,*
   819 F. App'x 522 (9th Cir. 2020) ................................................................ 7

*Auscape Int'l v. Nat'l Geographic Soc'y,*
   2003 WL 23531750 (S.D.N.Y. July 25, 2003) .................................... 9

*B.K. by Tinsley v. Snyder,*
   922 F.3d 957 (9th Cir. 2019) ......................................................... 1

*Bateman v. Am. Multi-Cinema,*
   623 F.3d 708 (9th Cir. 2010) .................................................. 15

*BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.,*
   199 F. Supp. 3d 958 (E.D. Va. 2016) ....................................... 7

*Briseno v. ConAgra Foods,*
   844 F.3d 1121 (9th Cir. 2017) ......................................... 2, 15

*Brown v. DirectTV,*
   562 F. Supp. 3d 590 (C.D. Cal. 2021) .................................... 2

*Cameron v. E. M. Adams & Co.,*
   547 F.2d 473 (9th Cir. 1976) ........................................... 10

*Davidson v. Apple,*
   2018 WL 2325426 (N.D. Cal. May 8, 2018) ......................... 15

*Ellis v. Costco*
   657 F.3d 970 (9th Cir. 2011) .............................................. 3

*Estate of Berlin v. Stash Records, Inc.,*
   1996 WL 374176 (S.D.N.Y. July 2, 1996) ............................ 9

*Ewert v. eBay, Inc.,*
   2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ....................... 9

*Fahmy v. Jay Z,*
   2015 WL 5680299 (C.D. Cal., Sept. 24, 2015) ...................... 2

*Football Ass'n Premier League Ltd. v. YouTube, Inc.,*
   297 F.R.D. 64 (S.D.N.Y. 2013) ...................................... 6, 11

*Forcellati v. Hyland's, Inc.,*
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ........................ 15

*GC2 v. Int'l Game Tech., IGT, Doubledown Interactive,*
   391 F. Supp. 3d 828 (N.D. Ill. 2019). ................................ 12

*Hanon v. Dataproducts,*
   976 F.2d 497 (9th Cir. 1992) .............................................. 3

*Harrington v. Pinterest, Inc.,*
   2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) .................. 11, 13

*In re Capacitors Antitrust Litig. (No. III)*,
   2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) ................................................ 14

*In re Facebook Biometric Info. Priv. Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018) ................................................................... 15

*In re JUUL Labs*,
   609 F. Supp. 3d 942 (N.D. Cal. 2022) ............................................................. 2

*Kihn v. Bill Graham Archives*,
   2022 WL 18935 (9th Cir. Jan. 3, 2022) ........................................................... 5

*Looksmart Grp. v. Microsoft*,
   386 F. Supp. 3d 1222 (N.D. Cal. 2019) .......................................................... 12

*Luvdarts v. AT&T Mobility*,
   710 F.2d 1068 (9th Cir. 2013) ..................................................................... 7, 8

*McArdle v. AT&T Mobility LLC*,
   2018 WL 6803743 (N.D. Cal. Aug. 13, 2018) .................................................. 9

*Mowdy v. Beneto Bulk Transp.*,
   2010 WL 11706895 (N.D. Cal July 8, 2010) .................................................. 15

*Mullins v. Direct Digital*,
   795 F.3d 654 (7th Cir. 2015) .......................................................................... 1

*Nat'l Photo Grp., LLC v. Allvoices*,
   2014 WL 280391 (N.D. Cal. Jan. 24, 2014) .................................................... 5

*Olean Wholesale Grocery v. Bumble Bee Foods*,
   31 F.4th 651 (9th Cir. 2022) ....................................................................... 3

*Patel v. Facebook*,
   932 F.3d 1264 (9th Cir. 2019) ....................................................................... 15

*Polar Bear Prods. v. Timex*,
   384 F.3d 700 (9th Cir. 2004) ........................................................................ 14

*Rahman v. Mott's*,
   692 F. App'x 578 (9th Cir. 2017) ................................................................... 15

*Resnick v. Copyright Clearance Ctr., Inc.*,
   2003 WL 22176619 (D. Mass. Sept. 22, 2003) ................................................ 9

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) .......................................................................... 2

*Schramm v. JPMorgan Chase Bank, N.A.*,
   2011 WL 5034663 (C.D. Cal. Oct. 19, 2011) ................................................. 10

*Seiler v. Lucasfilm*,
   808 F.2d 1316 (9th Cir. 1986) ........................................................................ 7

*Senne v. Kansas City Royals Baseball Corp.*,
   934 F.3d 918 (9th Cir. 2019) .......................................................................... 1

*Shropshire v. Canning*,
   809 F. Supp. 2d 1139 (N.D. Cal. 2011) ........................................................ 14

*Stevens v. CoreLogic, Inc.*
    899 F.3d 666 (9th Cir. 2018) ............................................................................................ 13

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018) .............................................................................................. 9

*Utopia Entm't, Inc. v. Claiborne Par.*,
    2006 WL 8435006 (W.D. La. Jan. 10, 2006) ...................................................................... 9

*Ventura Content, Ltd. v. Motherless,*
    885 F.3d 597 (9th Cir. 2018) .............................................................................................. 8

*WB Music Corp. v. Rykodisc,*
    1995 WL 631690 (E.D. Pa. Oct. 26, 1995) ......................................................................... 9

*Werdebaugh v. Blue Diamond Growers,*
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014) ................................................................... 15

*Wu v. Pearson Educ. Inc.*,
    2012 WL 6681701 (S.D.N.Y. Dec. 21, 2012) ..................................................................... 9

**Statutes**

17 U.S.C. § 1202 ................................................................................................................. passim

17 U.S.C. § 1506 ....................................................................................................................... 15

17 U.S.C. § 205 ........................................................................................................................... 5

17 U.S.C. § 512 ............................................................................................................... 6, 10, 11

**Other Authorities**

H.R. REP. 105-551 ...................................................................................................................... 6

**Rules**

Fed. R. Civ. P.  26 ....................................................................................................................... 2

Fed. R. Civ. P. 23 ............................................................................................................. 1, 2, 15

Fed. R. Evid. 407 ........................................................................................................................ 6

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

Defendants concede that common issues exist, nowhere disputing satisfaction of Rule 23(a)(2), even identifying the DMCA safe harbor as a common issue.  (Opp. 17 n.11.)  This is damning.  Rule 23 requires only that "*one* or more of the central issues in the action are common to the class and can be said to predominate".  *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 938 (9th Cir. 2019) (emphasis added).  Rather than meaningfully engage the predominance analysis, Defendants invoke "Frankenstein monsters" and "death knells," substituting rhetoric for argument.  Getting past that rhetoric to what matters for class certification, the Court's prescient observation on December 15, 2022, is apt: certification can be a straightforward matter that may not require argument.  (Ex. 21—12/15/22 Hrg. Tr. at 9:11–15.) [1]

The arguments Defendants *do* raise go to the *merits* of Plaintiffs' claims, disputing that Plaintiffs' theory of the case will prevail.  Such arguments are misplaced in a brief opposing class certification—they belong in the motion for summary judgment that Defendants battled to obtain leave to file but then did not file.  For class certification, all that matters is whether the common issues identified will "generate common answers apt to drive the resolution" of this "litigation" and thus predominate.  *B.K. by Tinsley v. Snyder,* 922 F.3d 957, 968 (9th Cir. 2019).  Here, nearly every element of every claim and defense will be established through common evidence that will generate common answers equally applicable to all class members.  Predominance is satisfied.

Defendants do not dispute that Plaintiffs' claims administration process will resolve the individualized issues they cite, complaining instead (without support), that it would be "sprawling and endless."  (Opp. 1.)  Even were that true (it is not), "courts should not refuse to certify a class merely on the basis of manageability concerns."  *Mullins v. Direct Digital*, 795 F.3d 654, 663–64 (7th Cir. 2015) ("In no event should the court use the possibility of becoming involved with the administration of a complex lawsuit as a justification for evading the responsibilities imposed by Rule 23.").  At bottom, Defendants attempt to apply a heightened ascertainability requirement rejected by the Ninth Circuit—"A separate administrative feasibility prerequisite to class

---

[1] References to "Ex." herein are to the Exhibits attached to the First Declaration of Jeffrey Waldron (Exs. 1–81) dated February 13, 2023, and to the Reply Decl. (Exs. 82–99).

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

certification is not compatible with the language of Rule 23." *Briseno v. ConAgra Foods*, 844 F.3d 1121, 1123 (9th Cir. 2017); *Brown v. DirectTV*, 562 F. Supp. 3d 590, 604 (C.D. Cal. 2021) ("concern about protecting a defendant's due process rights does not justify the heightened ascertainability requirement").  As in *Brown,* Plaintiffs' "proposed claims administration procedure allows" Defendants "to challenge the class membership of claimants," including ownership, registration, and license.  562 F. Supp. 3d at 604.  The "fact that these challenges would arise during the claims process, as opposed to at trial, does not run afoul of Rule 23 or due process.  Nor does it affect predominance or overcome the superiority of a class action." *Id.*

Copyright claims are not an exotic species necessarily requiring mini-trials.  Defendants, themselves, use expansive matching technology to adjudicate infringement claims across ██████ of videos.  YouTube "may prefer to terminate this litigation in one fell swoop at class certification rather than later challenging each individual class member's claim to recovery, but there is no due process right to 'a cost-effective procedure for challenging every individual claim to class membership.'"  *Briseno*, 844 F.3d at 1132.  The proposed classes should be certified.

## **ARGUMENT**

Defendants concede that Plaintiffs have established common questions satisfying Rule 23 (a)(2) and the adequacy of class representatives and counsel satisfying Rule 23(a)(4).  Defendants also do not object to Plaintiffs' proposal of Angeion Group as claims administrator.

## I.      RULE 23(A)(1)—NUMEROSITY IS SATISFIED.

Defendants do not dispute that the class minima exceed 40 members and are numerous, arguing admissibility instead.  (Opp. 6.)  Yet, at "the class certification stage," the "'court's consideration should not be limited to only admissible evidence.'"  *In re JUUL Labs,* 609 F. Supp. 3d 942, 1004 (N.D. Cal. 2022) (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018)).  And Dr. Cowan's testimony is plainly admissible.  Rule 26(a)(2)(B) "contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony." *Fahmy v. Jay Z*, 2015 WL 5680299 (C.D. Cal., Sept. 24, 2015; (*see also* Ex. 21—12/15/22 Hrg. Tr. at 5:2–6 (Court recognizing that rebuttals are "when everybody suddenly sees the light and

Plaintiffs' Reply in Support of Motion for Class Certification                3:20-cv-4423-JD

1  that's when their real opinions come out" followed closely by depositions)).  Nor do the class

2  definitions' adjustments reflecting the Court's Summary Judgment Order [ECF 222], materially

3  impact the minima.  The date range used by Dr. Cowan includes one year more than the current

4  range.  Taking the date range up to trial includes the more recent period that has more Takedown

5  Notices.  (Ex. 83—Cowan Dep. at 295:3–16.)  To fail numerosity, each class would have to shrink

6  by at least 95%.  (*Id.* at 147:20–48:8.)  On a platform that currently hosts over ▮▮▮▮ videos

7  (Ex. 50—1/10/23 Ltr.), numerosity is established by a "preponderance".  *Olean Wholesale*

8  *Grocery v. Bumble Bee Foods,* 31 F.4[th] 651, 664-65 (9th Cir. 2022).

9  **II.      RULE 23(A)(3)—PLAINTIFFS' CLAIMS ARE TYPICAL.**

10        Defendants' typicality arguments are not well taken.  Defendants concede that the DMCA

11  raises class-wide issues (Opp. 17 n.11) yet argue that the DMCA renders Plaintiffs atypical.[2]

12  (Opp. 6.)  Defendants further argue that Ms. Schneider is atypical because YouTube removed

13  infringements *after* she identified them in litigation and before she could submit a takedown

14  notice.  (Opp. 6.)  Yet, typicality examines whether "other class members have been injured by the

15  same course of conduct."  *Hanon v. Dataproducts,* 976 F.2d 497, 508 (9th Cir. 1992).

16  Ms. Schneider, like all class members, was harmed by YouTube's conduct and infringement on its

17  platform.[3]  Ms. Schneider also satisfies the CMI class definitions.  (*See* Opp. 6.)  For the ISRC

18  Class, Ms. Schneider identified sound recordings.  (*See* Part III.D, below.)  For the CLFN Class,

19  Defendants argue that because ▮▮▮▮▮▮▮▮▮▮▮, § 1202 does not apply.

20  (Opp. 6.)  That is a class-wide *merits* argument.

21        Defendants' "Background" section attempts to smear Plaintiffs as atypical focusing on

22  infringements *not* included in the class definition (while altogether ignoring these definitions).

23  For example, Defendants claim that Ms. Schneider cannot obtain statutory damages because she

24  ────────────

25  [2] *Ellis v. Costco* (Opp. 6) remanded to apply the correct typicality standard and did not decide
   typicality.  657 F.3d 970, 988 (9th Cir. 2011).  In any event, the unique defenses involved a gender
   discrimination plaintiff deferring promotions for "family reasons".  *Id.* at 984.

26
27  [3] The information provided to YouTube closely mirrored the information provided in a DMCA-
   compliant takedown notice.  (Reply Declaration of Jeffrey Waldron in Support of Plaintiffs'
   Motion for Class Certification ("Reply Decl.") at ¶ 7.)

28

did not timely register her works.  (Opp. 3.)  Yet, that objection does not apply to a single exemplar infringement identified (Reply Decl. at ¶ 4) and, even if it did, is not atypical. Defendants' claim that her CMI claims are untimely because she testified about a general practice of CMI removal in 2017 (Opp. 3) was already rejected by the Court.  [ECF 222 at 22.]  Changing tack with Uniglobe, Defendants claim that its ownership is unknown and complicated by "work-made-for-hire agreements".  (Opp. 4.)  As Defendants well know from the first round of briefing [ECF 203 at 3 n.5], neither complaint withstands scrutiny.  *First,* the copyright registration for *5 Weddings* identifies Uniglobe Entertainment, LLC as the owner.  (Reply Decl. at ¶ 9.)  *Second,* the U.S. Copyright Office ("USCO") registration addresses works-for-hire, requiring ownership information (Ex. 99—USCO Registration Form), and Defendants recognize that authors acting "in cases of works-for-hire" obtain no ownership interest.  (Opp. 7.)  *Finally,* the First Amended Complaint identifies both screenplays and motion pictures.  [ECF 99 at ¶ 67.]  For AST, a purported "complex web" of foreign agreements and assignments does not obscure ownership and Defendants know as much; AST provided relevant documents for ownership which Defendants do not seriously dispute.  (Opp. 4–5.)  Indeed, "class members" may "self-identify under reliable circumstances" and the claims administration process will handle these issues.  *Flo & Eddie v. Sirius*, 2015 WL 4776932, at *7–8 (C.D. Cal. May 27, 2015).

This case is about YouTube's conduct.  (Mot. 5.)  All class representatives and members had their works infringed and were harmed by YouTube.  Typicality is satisfied and, in any event, Defendants do not seriously attack the exemplar infringements identified in Plaintiffs' Brief.

## III.   COMMON QUESTIONS PREDOMINATE.

### A.  The Issues and Evidence for the Direct Infringement Claims are Common.

***Ownership and Registration.***  Defendants' arguments that ownership and registration cannot be established class-wide ignores the record.  (Opp. 7–9.)  *First*, the Takedown Notice's text demonstrates that Takedown Notices identify the owner:  YouTube's Takedown Notices requires the "Copyright owner name," the submitter's "Relationship to the copyrighted content," and an attestation, "under penalty of perjury," that "I am the owner, or an agent authorized to act

on behalf of the owner, of an exclusive right that is allegedly infringed."[4]  (Ex. 57—Webform

Takedown; Ex. 59—Infringement Notification Requirements.)  *Second*, Defendants' cases find it

"reasonable" to "rely on individual assertions of rights" in Takedown Notices.  *SA Music v. Apple*,

592 F. Supp. 3d 869, 883 (N.D. Cal. 2022).[5]  *Third*, successful Takedown Notices will be cross-

referenced against the USCO database for a match, minimizing transfer issues.  17 U.S.C.

§ 205(a)-(b) (requiring USCO to record properly filed transfers).  Indeed, courts regularly reject

challenges to USCO records.  *Idema v. Dreamworks*, 90 F. App'x 496, 498 (9th Cir. 2003)

(judicial notice for copyright registrations); *Yellowcake. v. Morena Music*, 522 F. Supp. 3d 747,

758, n.1 (E.D. Cal. 2021) (same).  *Finally*, Defendants' claim that every assertion of ownership is

subject to discovery is rejected by courts in the Ninth Circuit[6] as is their argument that transfers

must include grants of legal claims.[7]

        **Infringement**.  A *successful* Takedown Notice is proof of infringement.[8]  Defendants

cannot both rely on "valid" Takedown Notices in normal course (Mot. 7–8) and reject them as

proof of infringement.[9]  Defendants' extensive vetting process (beyond what the DMCA

_____

[4] Defendants' claim that AST's Takedown Notices do not identify AST (Opp. 8) is misleading.
███████████████████████████████████████████████████████ (Reply Decl. at ¶ 12; Ex. 97—CVP Application.)

[5] In *Kihn v. Bill Graham Archives*, (Opp. 1, 7), the class definition was gerrymandered twice, first to only include unlicensed recordings and then to "exclude" studio recordings because the plaintiff performed live.  2022 WL 18935 (9th Cir. Jan. 3, 2022).  In an unpublished opinion, the Ninth Circuit disapproved of "tailor[ing] the class to the merits of Kihn's individual claims."  *Id.* at 2.

[6] *Flo & Eddie* rejects Defendants' reliance on *Vulcan Golf v. Google*: "It is telling of the strained nature of [defendant's] attack that it resorts entirely to out-of-circuit cases to support its argument that ownership issues are inherently individualized."  2015 WL 4776932, at *12.

[7] *See Nat'l Photo Grp., LLC v. Allvoices*, 2014 WL 280391, at *3 (N.D. Cal. Jan. 24, 2014) (declining to follow *ABKCO* and noting that the case "has not been adopted by the Ninth Circuit and no district court in this Circuit that has cited the rule has explained why it should exist").

[8] Uniglobe's claim of infringement for which Defendants argue (Opp. 9) it "has no rights" does not prove the need for individual discovery.  This clip was *never* removed and *not* subject to a *successful* Takedown Notice because vetting identified the claim as deficient (Ex. 98—10/21/2020 Msg.) demonstrating the appropriateness of relying on Defendants' processes.

[9] Defendants erroneously argue Pirate Monitor Ltd. is a poster child for the supposed unreliability

requires),[10] and Defendants' own reliance on successful notices to establish infringement, renders

successful Takedown Notices evidence of infringement.  (*Id.* at 8–10.)  Recognizing this,

Defendants try to repudiate this vetting process with a Declaration from Chenyuan Zhu describing

the vetting process as "largely automated."  (Opp. 10); [ECF 268-2 (Zhu Decl.) at ¶ 2.] ████

███████████████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████ (Ex. 91—Zhu

30(b)(6) Dep. at 77:9–79:5, 81:24–82:9; *see also* Ex. 36—"How Google Fights Piracy" at 8

("Google is committed to ensuring that it detects and rejects bogus infringement allegations.").)

Moreover, to claim the DMCA safe harbor, Defendants must terminate "repeat *infringers*" (17

U.S.C. § 512(i)),[11] which they have chosen to do by processing successful Takedown Notices and

assessing copyright strikes.  (Ex. 91—Zhu 30(b)(6) Dep. at 8:1–6, 9:2–16.)  *Premier League* did

not consider these vetting processes (including that they exceed DMCA requirements) or

YouTube's reliance on successful notices.  297 F.R.D. 64, 68 n.2 (S.D.N.Y. 2013).

     Defendants argue that Takedown Notices are not admissible evidence of infringement

because they are a "subsequent remedial measure."  (Opp. 16.)  But Fed. R. Evid. 407 excludes

evidence of measures taken that "would have made an earlier injury or harm less likely *to occur.*"

The success of a Takedown Notice evinces infringement; it does not remediate infringement that

already occurred.  YouTube's removal (not the Takedown Notice) stops further harm, but it does

not impact future infringement; indeed, the class members have all submitted at least two

successful Takedown Notices for the same work.  Nor does the best evidence rule somehow apply.

(Opp. 10.)  *Seiler v. Lucasfilm* decided whether demonstratives and "reconstructions" of a

---

of Takedown Notices. (Opp. 5–6, 11.) ██████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████ (Ex. 96—

"Pirate Monitor LLC Termination"; Ex. 95—abuse detection page for Pirate Monitor LLC.)

[10] YouTube vets Takedown Notices for copyright defenses including fair use, evaluates the
validity of counternotifications, and conducts quality control of videos left live.  (Mot. 8–9.)

[11] The DMCA's legislative history does not support Defendants (Opp. 11).  Congress considered a
provision stating that removal of works "shall not adversely bear upon the consideration by a court
of a defense to infringement" (H.R. Rep. 105-551, at 8) but it was not enacted into law.

Plaintiffs' Reply in Support of Motion for Class Certification       3:20-cv-4423-JD

1    plaintiff's original work could be displayed after the court found the plaintiff "purposefully

2    destroyed or withheld in bad faith the originals."  808 F.2d 1316, 1318 (9th Cir. 1986).  This 37-

3    year-old case does not inform whether successful Takedown Notices prove infringement on an

4    online platform that uses digital matching technology to identify infringement.

5          Ultimately, for purposes of class certification*, none of this matters.*  Plaintiffs and

6    Defendants disagree on whether successful Takedown Notices are evidence of ownership and

7    infringement.  The common answer to that question will apply to the entire class and thus drive, if

8    not resolve, the question of liability.

9          **B.   The Issues and Evidence for the Secondary Liability Claims are Common.**

10         ***Contributory Infringement***.  Courts have rejected Defendants' argument that Takedown

11   Notices "were mere allegations" that "could not have imparted knowledge of infringement,"

12   holding instead that knowledge exists where "a party has been notified of specific infringing uses

13   of its technology and fails to act to prevent such uses, or willfully blinds itself to such infringing

14   uses."  *BMG Rts. Mgmt. v. Cox Commc'ns*, 199 F. Supp. 3d 958, 979 (E.D. Va. 2016), *aff'd in*

15   *part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018).  Moreover, Defendants' argument that Takedown

16   Notices do not establish knowledge of infringements not "specifically identified in notices"

17   (Opp. 12) ignores the fact that ███████████████████████████████████████████████

18   █████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████ (Ex. 85—Magagna 30(b)(6) Dep.

20   at 77:7–79:3; Ex. 87—Rosenstein Dep. at 188:19–189:18, 198:2–200:6) and creates a similar

21   digital fingerprint of every video that is removed via the takedown process (Ex. 87—Rosenstein

22   Dep. at 203:10–23.)  Defendants' cases support Plaintiffs.  In *ALS Scan v. Steadfast Networks,* the

23   plaintiff did not sue the website, but rather the lessor of a server, who was not liable because it

24   "did not operate, control, or manage any functions" of the website where infringement occurred.

25   819 F. App'x 522, 524 (9th Cir. 2020).  In *Luvdarts v. AT&T Mobility*, the notices of infringement

26   were not DMCA-compliant takedown notices and did not identify, *inter alia*, the work infringed.

27   710 F.3d 1068, 1073 (9th Cir. 2013). ████████████████████████████████████████

28

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1 ███████████████████████████████████████████████████

2 ██████████████   ███████████   █████████████████████████

3 ██████████████[13] (Ex. 37—"Life of a YouTube Upload" at -783; Mot. 14–15)) and their

4 testimony that this matching technology scans the platform for infringements in normal course.[14]

5      ***Vicarious Infringement.***  Defendants dispute that their matching technology establishes

6 control, ignoring their cases: the "'right and ability to supervise' should be evaluated in the

7 context of a system's 'current architecture.'"  *Luvdarts*, 710 F.3d at 1071.  Defendants not only

8 have the "capacity to supervise," *id.* at 1072, they already *do* supervise, running their matching

9 technology on every video uploaded to the platform.  (*See p.* 7, above.)  On revenue, Defendants

10 do not dispute that infringements played by Autoplay are evidence of both control and financial

11 benefit (Opp. 13) instead arguing that revenue from infringing videos cannot satisfy Plaintiffs'

12 burden citing *Motherless*.  *Id.*  But *Motherless* requires only that "some revenue" is "distinctly

13 attributable to the infringing material".  885 F.3d 597, 613 (9th Cir. 2018).  Dr. Singer's model can

14 establish each infringing video's pro rata revenue share.  (Ex. 88—Singer Dep. 228:15–229:2.)

15      Ultimately, for purposes of class certification, ***none of this matters.***  Plaintiffs and

16 Defendants disagree on whether successful Takedown Notices and Defendants' matching

17 technology establishes knowledge and whether Watch Next and Autoplay establishes control.  The

18 common answers to these questions apply to the entire class and thus drive, if not resolve, liability.

19      **C.  The Issues and Evidence for the Affirmative Defenses are Common.**

20      ***License.***  Plaintiffs will put forth evidence, ██████████████████████████████

---

[12] Plaintiffs' expert did not testify that Content ID does not identify infringements (Opp. 12–13): "[w]hen infringement occurs, it must be discovered, and the matching system will automatically discover it."  (Ex. 90—Winograd Dep. at 69:22–70:9.)

[13] YouTube's claim that Content ID returned false positive for AST is disingenuous.  (Opp. 13 n.6.) ███████████████████████████████████████████
███████████████████████████████████████  (*See* Ex. 16—Winograd Rpt. at ¶ 43 ████████
██████████████████████████████████████████████
██████████████████████████████████.)

[14] ████████████████████████████████████████████
███████████████████ (Ex. 82—Bill Dep. at 154:18–155:5.)

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

(Mot. 8–9), that when Defendants act on a Takedown Notice, rendering it successful, they have

already considered and resolved licensing issues.  Moreover, the license issues Defendants raise

(Opp. 14–15) will be resolved class-wide as a matter of law because the TOS and upload licenses

are form contracts with uniform terms.  *McArdle v. AT&T*, 2018 WL 6803743, at *6 (N.D. Cal.

Aug. 13, 2018) (commonality where class subject to same terms of service); *Ewert v. eBay*, 2010

WL 4269259, at *7 (N.D. Cal. Oct. 25, 2010) (same).[15] ██████████████████████████████

██████████████████████████████████████████████████████████████████████████████████

██████████[16]  (*See, e.g.*, Ex. 54—SRAC at § 3(d).)  █████████████████████████████

██████████████████████████████████████████  (Opp. 14–15.)  The fact that

Defendants lack the data (*e.g.,* ISRCs) to prove their affirmative defense does not amount to an

individualized issue.  Similarly, Defendants' merits argument that licenses may insulate them from

secondary liability (Opp. 15) is a class-wide legal issue for which no evidence has been presented.

*True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931–32 (9th Cir. 2018).

     **Statute of Limitations**.[17] "Courts have been nearly unanimous" that "possible differences

in the application of a statute of limitations to individual class members, including the named

plaintiffs, does not preclude certification".  *Schramm v. JPMorgan Chase Bank*, 2011 WL

---

[15] All of Defendants' out-of-circuit cases (Opp. 7 n.2) are distinguishable: two do not discuss predominance, *see Resnick v. Copyright Clearance*, 2003 WL 22176619 (D. Mass. Sept. 22, 2003); *Estate of Berlin v. Stash Records*, 1996 WL 374176 (S.D.N.Y. July 2, 1996); two involve individually negotiated contracts, *Wu v. Pearson Educ.*, 2012 WL 6681701. at 3-4 (S.D.N.Y. Dec. 21, 2012); *Auscape Int'l v. Nat'l Geographic*, 2003 WL 23531750, at 13 (S.D.N.Y. July 25, 2003); and two are fact-specific, *Utopia Entm't. v. Claiborne Par.*, 2006 WL 8435006, at *8 (W.D. La. Jan. 10, 2006) (fair use or consent); *WB Music Corp. v. Rykodisc*, 1995 WL 631690, at *6 (E.D. Pa. Oct. 26, 1995).  Two involve irrelevant legal issues, *Waite v. UMG Recordings,* 2023 WL 1069690, at *5–6 (S.D.N.Y. Jan. 27, 2023) (whether class members were individual employees of record label); *Resnick v. Copyright Clearance,* 2003 WL 22176619, at *1 (D. Mass. Sept. 22, 2003) (feasibility of joinder).

[16] Defendants reference to "[m]ountains of YouTube's direct and indirect licenses" (Opp. 15) is unsupported with any actual examples (other than the TOS license which is a class-wide uniform license) and license is an affirmative defense for which they have the burden of proof.

[17] Plaintiffs reserve the right to appeal the Summary Judgment Order limiting Ms. Schneider's statutory period to one year.  [ECF 222 at 20–22.]  Plaintiffs maintain that a three-year period applies but have now conformed the class definitions to that Opinion as law of the case.

Plaintiffs' Reply in Support of Motion for Class Certification        3:20-cv-4423-JD

5034663, at *10 (C.D. Cal. Oct. 19, 2011); *Cameron v. E. M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976) (same).  Any constructive notice inquiry will be class-wide, "based on a reasonable person test."  *Schramm,* 2011 WL 5034663, at *10.  The earliest time for constructive notice is the upload date—data Defendants possess to use for class-wide administration.  [*See* ECF 164-13.]

***Fair Use.***  Defendants do not dispute that less than 0.2% of Content ID claims are disputed for fair use.  Instead, they cherry-pick the math noting that "37.8% of parties disputing Content ID claims invoked fair use."  (Opp. 16.)  Yet, only 0.5% of Content ID claims are disputed—so Defendants are identifying 37.8% *of 0.5%.*  Defendants claim, without evidence, that this figure "far underestimates the percentage of challenged videos that could constitute fair use."  (Opp. 16.)  This argument is foreclosed by Defendants' failure to produce adequate data to test assertions in support of a defense.  (Ex. 93—07/07/22 Hrg. Tr. at 19:6–10 ("if you say, somewhere in opposition to class cert or something like that, 'You can't certify because we get millions of claims of fair use' and you did not provide your colleagues with the means of testing that, it will be stricken as a defense.").  Moreover, *successful* Takedown Notices have already considered and resolved fair use issues in a manner applicable to the entire class.  (Mot. 19–20; pp. 5–6, above.)

***DMCA.***  Defendants concede their eligibility for the DMCA safe harbor is a "common" issue.  (Opp. 17 n.11.)  Plaintiffs' Motion for Summary Judgment identifies an additional common question concerning Defendants' ineligibility for the DMCA because ████████████ ████████████████████████████████████████ [ECF 265 at 2–4.]  Defendants, instead, focus on the DMCA's three additional requirements claiming YouTube is eligible (it is not).  Plaintiffs' January 9, 2023, Proffer explains thoroughly why Watch Next and Autoplay establish Defendants' financial benefit and control under 17 U.S.C. § 512(c)(1)(B) using common evidence thus showing such issue is a classic class-wide issue of Defendants' conduct (as is Defendants' counter-argument that case law forecloses this determination, which it does not).  [ECF 226 at 8–9.]  Neither 17 U.S.C. § 512(m) nor *Shelter Cap* impact whether Watch Next and Autoplay establish financial benefit and control.  (Opp. 17.)  YouTube's decision to profit from infringing videos it plays has nothing to do with whether it monitors infringement on its platform.

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

The analysis under § 512(c)(1)(B) focuses on the defendant's affirmative conduct while § 512(m) focuses on whether a defendant can be forced to do something it is not already doing.  It is apples and oranges.  Red flag knowledge and expeditious removal will also be decided on a class-wide basis as, among other conduct, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████.[18]

### D.  Common Issues Predominate for the CMI Classes.

Undisputed class-wide proof exists establishing that YouTube does, in fact, violate § 1202.  Defendants cite *Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) to argue that "an allegation of wholesale metadata removal, without more, does not suffice to allege [defendant] intentionally removed CMI."  (Opp. 19.)  But in *Harrington*, there was no allegation that the metadata in question *actually contained* CMI.  ████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████  (Ex. 15—Jessop Rpt. ¶¶ 32, 72, 90 (ISRC); *id.* ¶¶ 35, 146 (CLFN fields); Ex. 94 —Resp. to RFA Nos. 67–70 (not denying that the title of a work constitutes CMI when contained in CLFN metadata).)  (*See* Ex. 22—Am. Resp. to Interrog. 1; Ex. 86—Nuttall Dep. Tr. at 34:8–22.)  The remaining issues can also be resolved on a class-wide basis.[19]

***ISRC.***  Defendants' claim that Ms. Schneider is not a member of the ISRC Class and has no sound recordings at issue (Opp. 20–21) is wrong.  (*See* Ex. 92—Schneider Am. Resp. to Interrog. 9 at 13–18.)  Ms. Schneider has identified sound recordings with ISRCs displayed on

---

[18] Defendants' quotation of *Premier League* to argue that class treatment would "multiply [the DMCA's] difficulties over the normal one-by-one adjudications of copyright cases" (Opp. 17 (alterations in original)), is grossly misleading and a violation of the Court's Standing Order ¶ 23. The actual quotation from *Premier League* has nothing to do with the DMCA: "Thus, accumulation of all the copyright claims, and claimants, into one action will not simplify or unify the process of their resolution but multiply its difficulties over the normal one-by-one adjudications of copyright cases."  *Premier League*, 297 F.R.D. at 66.

[19] Defendants' claim that "the Court recognized at summary judgment" that "Schneider's CMI claims depend on individualized issues" (Opp. 18) is wrong.  Nowhere in the Summary Judgment Order did the Court characterize Plaintiffs' CMI claims as individualized.  [ECF 222 at 20–22.]

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

YouTube without those ISRCs.[20]  Ms. Schneider can easily demonstrate ownership of those sound recordings through both the Takedown Notices for the ISRC exemplars and the Court-ordered Infringement List for which ownership is a predicate.  (Ex. 61—2/25/2022 Infringement List.)

Defendants' claim that removal of ISRCs cannot be established class-wide (Opp. 21–22) is a nonstarter.[21]  ███████████████████████████████████████████████████████

████████████████████████████████  (Ex. 86—Nuttall Dep. 223:2–15 ("I want to make sure it's well understood, the use of ISRCs for content available for consumption on digital platforms as pay services is very high, it is in the range of 98 percent."); Ex. 54—SRAC at § 3(d) ████

████████████████████████  (emphasis added)).)  Yet, ISRCs are not included in the videos posted on YouTube, and copyright owners cannot search YouTube for ISRCs even if the videos contain sound recordings (which, by Defendants' admission, are originally accompanied by ISRCs).  Defendants know that: (a) ISRCs are industry standard CMI used to police copyright *and* (b) sound recordings in videos on YouTube do not contain ISRCs.  Defendants therefore knowingly distribute copyrighted works knowing the CMI has been removed.

Defendants further argue that class members must prove that "the specific version of a sound recording used to create a given video once had an ISRC embedded in its metadata, and that that ISRC was removed."  (Opp. 21–22.)  Not so.  By definition, class members' sound recordings will have been assigned ISRCs and will have been contained in uploaded videos.  (Mot. 3–4.)  ████

████████████████████████████████████████████████████████████████████████████

████████████████████  (Ex. 22—Am. Resp. to Interrog. 1; Ex. 86—Nuttall Dep. Tr. at 34:8–22.)

Similarly, no individualized inquiry into "who removed the ISRC" (Opp. 22 n.16) is required.

YouTube "know[s] that copyright management information has been removed."  17 U.S.C.

---

[20] The Interrogatory Response is timely; it was served after discovery closed because it was a contention interrogatory and, regardless, Defendants have not moved to strike.  *See Looksmart Grp. v. Microsoft*, 386 F. Supp. 3d 1222, 1230–32 (N.D. Cal. 2019).

[21] Contrary to Defendants' argument (Opp. 21 n.15), derivative works are protected by § 1202. "[None of the] cases cited by the defendants stands for the broad proposition that derivative or collaborative works are categorically excluded from protection under" § 1202.  *GC2 v. Int'l Game Tech., IGT, Doubledown Interactive,* 391 F. Supp. 3d 828, 843 (N.D. Ill. 2019).

Plaintiffs' Reply in Support of Motion for Class Certification              3:20-cv-4423-JD

1   § 1202(b)(3).  YouTube's liability under § 1202 will thus be established on a class-wide basis.

2          Common evidence also establishes YouTube's knowledge that removal of ISRCs

3   encourages infringement, as demonstrated by Defendants' own pervasive use of ISRCs to manage

4   copyrights.  (Mot. 21–22.)  ████████████████████████████

5   ████████████████████████████████████████████

6   ████████████  (Ex. 54—SRAC at § 3(d)████████████████████

7   ████████████████████████████████████████

8   ████████████████████████████████████████████

9   ████████████████  eviscerates any reliance on *Stevens v. CoreLogic, Inc.*, 899 F.3d 666 (9th

10  Cir. 2018) and *Harrington*, 2022 WL 4348460.  (Opp. 20, 22–23.)  Both cases relied on

11  defendants' lack of awareness that the CMI at issue could be used to monitor or police copyrighted

12  material.  *See Harrington*, 2022 WL 4348460, at *4–5; *Stevens*, 899 F.3d at 675.  *Finally,*

13  Defendants' contention that class members' use of ISRCs to protect their works from infringement

14  "must be determined case by case" (Opp. 23) is unavailing.  Whether class members must prove

15  they use ISRCs to police infringement *on YouTube*—████████████████████████

16  ████████████████████████████—is a class-wide issue.[22]

17          ***CLFN.***  YouTube tracks, in the normal course, whether a particular video contains CLFN

18  metadata, resolving the first issue on a class-wide basis.  [*See* ECF 268-1 (Foucu Decl.) at ¶¶ 5–6;

19  (Opp. 18.)  And the presence of CMI in the CLFN field can be established for all class members

20  using the method described by Plaintiffs' expert.  (Ex. 15—Jessop Rpt. at ¶¶ 137–146.)  Similarly,

21  ████████████████████████████████  allows YouTube to dodge liability

22  under § 1202 (Opp. 19) is a common issue.  Plaintiffs will also establish Defendants' scienter with

23  common proof.  (Mot. at 20–22.)  ████████████████████████

24  ████████████  (*see* Ex. 22—Am. Resp. to Interrog. 1; Ex. 86—Nuttall Dep. Tr. at 34:8–22), and

25  _____

26  [22] While Defendants cherry-pick the record (Opp. 21–22), it is obvious that Ms. Schneider would
    not *authorize* removal of ISRCs.  For "people trying to earn a living from music," it is "extremely

27  hard to get into distribution without having an ISRC assigned to it because many services and
    management organizations require it as a matter of policy." (Ex. 84—Jessop Dep. at 186:5–17; *see*

28  *also* Ex. 15—Jessop Rpt. ¶¶ 50–51 (ISRCs are necessary for royalty payments)).

Plaintiffs' Reply in Support of Motion for Class Certification            3:20-cv-4423-JD

it knows that Ms. Schneider and other copyright holders use CMI such as song titles and artists

names—which are contained in the CLFN data field—to police infringement.  (Ex. 48—

Transparency Rpt. at 2; Ex. 92—Schneider Am. Resp. to Interrog. 6 at 11; Ex. 15—Jessop Rpt. at

¶¶ 145, 158–159.)  Defendants argue that proof of the second scienter requirement of § 1202(b)

"requires individualized litigation" because "[t]here is no evidence that Schneider, or anyone else,

has ever used CLFN metadata" to "police infringement."  (Opp. 19–20.)  ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████  Defendants' asserted justification for removing CMI raises a

separate class-wide issue.  Defendants claim that their licenses grant them the right to "reformat",

including CMI removal, so class members must offer individualized evidence to prove lack of

authorization.  (Opp. 20.)  "[R]eformatting" in its most generous sense does not include removal,

and thus lack of authorization will be established class-wide.  [ECF 172 at 20.]

### E.  Remedies Can Be Established with Common Methods.

The statutory damages range is compatible with class certification.  *In re Capacitors Antitrust Litig. (No. III)*, 2018 WL 5980139, at *10 (N.D. Cal. Nov. 14, 2018) (Donato, J.) ("a class action is clearly superior to individual proceedings" where "individualized questions on the calculation and distribution of damages can be managed"); *Flo & Eddie*, 2015 WL 4776932, at *15 ("denying certification on the basis of individualized damages issues is an abuse of discretion").  As to actual damages, Dr. Singer provides a method for determining disgorgement-of-profits damages and apportionment.  (Ex. 18—Singer Rpt. ¶¶ 65–67, 116; *Polar Bear Prods. v. Timex*, 384 F.3d 700, 710–12 (9th Cir. 2004)).  As to extraterritoriality, the Copyright Act applies to infringement that occurred in the United States via display on YouTube.  *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1146 (N.D. Cal. 2011).  Defendants' claim that failure to submit a Takedown Notice is failure to mitigate is a non-sequitur; successful Takedown Notices are required for the class and, in any event, such an issue would not preclude certification.  *In re JUUL Labs,* 609 F. Supp. 3d at 1001–02.  The claim that injunctive relief cannot lie class-wide is

1   puzzling.  Plaintiffs and the class have suffered the same harm (*passim*).

2   **IV.   A CLASS ACTION IS THE SUPERIOR METHOD.**

3          Contrary to Defendants' claim (Opp. 24), statutory damages align with superiority.[23]  *See*

4   *Bateman v. Am. Multi-Cinema*, 623 F.3d 708, 721 (9th Cir. 2010); *In re Facebook Biometric Info.*

5   *Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018) (Donato, J.) ("While not trivial, BIPA's

6   statutory damages are not enough to incentivize individual plaintiffs given the high costs of

7   pursuing discovery."), *aff'd sub nom. Patel v. Facebook,* 932 F.3d 1264 (9th Cir. 2019).

8   Furthermore, if a class is not certified and Plaintiffs succeed at trial and defeat Defendants'

9   DMCA defenses, the Court could be flooded by individual infringement actions undermining

10  Rule 23's rationale for efficiency and fairness.  *See Briseno,* 844 F.3d at 1127.  "[F]acilitating

11  small claims is '[t]he policy at the very core of the class action mechanism."  *Forcellati v.*

12  *Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014).

13  **V.   IN THE ALTERNATIVE, A RULE 23(C)(4) CLASS IS APPROPRIATE.**

14         Defendants cannot seriously argue that a Rule 23(c)(4) issues class would not advance the

15  litigation (Opp. 25), especially where they concede commonality (*see* p. 1, above).  The common

16  issues identified in Plaintiffs' Motion will *resolve* the litigation and, thus, predominate.  (Mot. 25.)

17  If the Court nonetheless believes predominance is somehow lacking, the common questions

18  (covering nearly every element of every claim and defense (Mot. 7–24)) will certainly "materially

19  advance" the litigation "as a whole."  *Rahman v. Mott's*, 693 F. App'x 578, 579 (9th Cir. 2017).

20  Nor is Defendants' invented procedural complaint applicable (Opp. at 25): A court may "certify

21  only particular issues *sua sponte*."  *Mowdy v. Beneto Bulk Transp.*, 2010 WL 11706895, at *4

22  (N.D. Cal July 8, 2010).[24]  Each issue identified in Plaintiffs' Motion would satisfy Rule 23(c)(4).

23                                **CONCLUSION**

24         Plaintiffs respectfully request that the Court grant the motion for class certification.

25  _____
    [23] The newly created Copyright Claims Board ("CCB") does not impact this analysis either.
26  YouTube could opt out of any proceeding in front of the CCB.  17 U.S.C. § 1506(i).

27  [24] The issues classes were denied in Defendants' cases (Opp. at 25), for lack of commonality not
    procedural issues.  *Davidson v. Apple*, 2018 WL 2325426, at *26 (N.D. Cal. May 8, 2018);
28  *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *14 n.9 (N.D. Cal. Dec. 15, 2014).

Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD

1  Dated: March 13, 2023

2  Chatham, New York

                                          Respectfully submitted,
3

4                                          /s/ *Philip Korologos*
                                          Philip C. Korologos*
5                                          Joanna Wright*
                                          Jeffrey Waldron*
6                                          BOIES SCHILLER FLEXNER LLP
                                          55 Hudson Yards, 20th Floor
7                                          New York, NY 10001
                                          Phone: (212) 446-2300
8                                          Fax: (212) 446-2350

9                                          Joshua Irwin Schiller, CA Bar #330653
                                          BOIES SCHILLER FLEXNER LLP
10                                         44 Montgomery St., 41st Floor
                                          San Francisco, CA 94104
11                                         Phone: (415) 293-6800
                                          Fax: (415) 293-6899
12
                                          George A. Zelcs*
13                                         Randall P. Ewing, Jr. *
                                          Ryan Z. Cortazar*
14                                         KOREIN TILLERY, LLC
                                          205 North Michigan, Suite 1950
15                                         Chicago, IL 60601
                                          Telephone: (312) 641-9750
16                                         Facsimile: (312) 641-9751

17                                         Stephen M. Tillery*
                                          Steven M. Berezney, CA Bar #329923
18                                         Carol O'Keefe*
                                          KOREIN TILLERY, LLC
19                                         505 North 7th Street, Suite 3600
                                          St. Louis, MO 63101
20                                         Telephone: (314) 241-4844
                                          Facsimile: (314) 241-3525
21
                                          *Admitted *pro hac vice*
22
                                          *Attorneys for Plaintiffs*
23

24

25

26

27

28
                                          16
Plaintiffs' Reply in Support of Motion for Class Certification                    3:20-cv-4423-JD