# EXHIBIT 90

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

```
_____
                                   )
MARIA SCHNEIDER, UNIGLOBE          )
ENTERTAINMENT, LLC, and AST        )
PUBLISHING LTD., individually and  )
on behalf of all others similarly  )
situated,                          )
                                   )
          Plaintiffs,              )
                                   )
vs.                                ) No. 3:20-cv-4423
                                   )
YOUTUBE, LLC; and GOOGLE LLC,      )
                                   )
          Defendants.              )
_____)
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

VIDEOTAPED DEPOSITION OF JOSEPH M. WINOGRAD

San Francisco, California

Thursday, September 29, 2022

Volume I

Reported by:
CATHERINE A. RYAN, RMR, CRR, B.S.
CSR No. 8239

Job No. 5490258

PAGES 1 - 281

Page 2

```
 1          UNITED STATES DISTRICT COURT
 2      FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4
 5   _____
                                     )
 6   MARIA SCHNEIDER, UNIGLOBE       )
     ENTERTAINMENT, LLC, and AST     )
 7   PUBLISHING LTD., individually and )
     on behalf of all others similarly )
 8   situated,                       )
                                     )
 9            Plaintiffs,            )
                                     )
10   vs.                   ) No. 3:20-cv-4423
                                     )
11   YOUTUBE, LLC; and GOOGLE LLC,   )
                                     )
12            Defendants.            )
     _____)
13
14
15
16
17       Videotaped deposition of JOSEPH M.
18   WINOGRAD, Volume I, taken on behalf of Defendants,
19   with the Witness appearing at WILSON SONSINI
20   GOODRICH & ROSATI, One Market Street Spear Tower,
21   Suite 3300, San Francisco, California, beginning at
22   9:13 a.m. and ending at 4:56 p.m., on Thursday,
23   September 29, 2022, before CATHERINE A. RYAN,
24   Certified Shorthand Reporter No. 8239.
25
```

Page 3

```
 1   APPEARANCES:
 2
 3   For Plaintiffs:
 4      KOREIN TILLERY
        BY:  GEORGE A. ZELCS
 5      Attorney at Law
        205 North Michigan Plaza, Suite 1950
 6      Chicago, Illinois  60601
        (312) 641-9750
 7      (312) 641-9751 Fax
        gzelcs@koreintillery.com
 8
        BY:  ANDREW ELLIS (appearing remotely)
 9      Attorney at Law
        505 North 7th Street, Suite 3600
10      St. Louis, Missouri  63101
        (314) 241-4844
11      aellis@koreintillery.com
12      BOIES SCHILLER FLEXNER LLP
        BY:  ROBERT DWYER (appearing remotely)
13      Attorney at Law
        55 Hudson Yards, 20th Floor
14      New York, New York  10001
        (212) 303-3524
15      (212) 446-2350 Fax
        rdwyer@bsfllp.com
16
17   For Defendants:
18      WILSON, SONSINI, GOODRICH & ROSATI, P.C.
        BY:  DAVID H. KRAMER
19           QIFAN HUANG
        Attorneys at Law
20      650 Page Mill Road
        Palo Alto, California  94304
21      (650) 320-4741 (Mr. Kramer)
        (650) 849-3456 (Mr. Huang)
22      dkramer@wsgr.com
        qhuang@wsgr.com
23      lwhite@wsgr.com
24
25   //
```

Page 4

```
 1   APPEARANCES (Continued):
 2
 3   For Defendants:
 4      WILSON, SONSINI, GOODRICH & ROSATI, P.C.
        BY:  LAUREN GALLO WHITE
 5      Attorney at Law
        One Market Street
 6      Spear Tower, Suite 3300
        San Francisco, California  94105
 7      (415) 947-2058
        lwhite@wsgr.com
 8
        (Ms. White was not present at the commencement
 9       of the deposition proceedings.)
10
11
12   ALSO PRESENT:
13   PETER YAROSCHUK, Videographer, Veritext
14
15
16
17              ---o0o---
18
19
20
21
22
23
24
25
```

Page 5

```
 1              INDEX
 2   WITNESS                  EXAMINATION
 3   JOSEPH M. WINOGRAD
     Volume I
 4       BY MR. KRAMER            8
 5       BY MR. ZELCS           272
 6       BY MR. KRAMER          275
 7
 8              EXHIBITS
 9   NUMBER       DESCRIPTION           PAGES
10   Exhibit 1  "EXPERT REPORT OF JOSEPH M. WINOGRAD   40
11      FOR PLAINTIFFS"; 86 pages
12
13   Exhibit 2  Chart; Bates GOOG-SCHNDR-00050365; 11  198
14      pages
15
16   Exhibit 3  Slide deck entitled "Watch Next Eng   254
17      Review" dated 5/8/2017; Bates
18      GOOG-SCHNDR-00052174 -
19      GOOG-SCHNDR-00052263
20
21   Exhibit 4  Slide deck entitled                   256
22      "WatchNext/Autoplay Deep Dive" dated
23      5/16/2019; Bates GOOG-SCHNDR-00035026
24      - GOOG-SCHNDR-00035049
25              ---o0o---
```

Page 6

1  San Francisco, California; Thursday, September 29, 2022
2  9:13 a.m.
3
4      THE VIDEOGRAPHER:  Good morning.  We are
5  going on the record at 9:13 a.m. on September 29th,
6  2022.
7      Please note that the microphones are
8  sensitive and may pick up whispering, private
9  conversations, and cellular interference.  Please
10 turn off all cell phones or place them away from the
11 microphones, as they can interfere with the
12 deposition audio.
13     Audio and video recording will continue to
14 take place unless all parties agree to go off the
15 record.
16     This is Media No. 1 of the video-recorded
17 deposition of Joseph Winograd, taken by counsel for
18 Defendant in the matter of Maria Schneider, et al.,
19 versus YouTube, LLC, et al., filed in the United
20 States District Court for the Northern District of
21 California, Case No. 3:20-cv-04423JD.
22     The deposition is being held at One Market
23 Street, 34th floor, San Francisco, California.
24     My name is Peter Yaroschuk, from the firm
25 Veritext.  I am the videographer.

Page 7

1      The court reporter is Catherine Ryan, from
2  the firm Veritext.
3      I am not authorized to administer an oath,
4  I am -- I am not related to any party in this
5  action, nor am I financially interested in the
6  outcome.
7      Counsel and all present and everyone
8  attending remotely, please now state your
9  appearances and affiliations for the record.
10     If there are any objections to proceeding,
11 please state them at the time of your appearance,
12 beginning with the noticing attorney.
13     MR. KRAMER:  My name is Dave Kramer.  I'm
14 a partner with Wilson Sonsini Goodrich & Rosati,
15 counsel for Defendants.  With me is Qifan Huang of
16 my firm.
17     MR. ZELCS:  George Zelcs on behalf of the
18 plaintiffs.
19     THE VIDEOGRAPHER:  On the phone?
20     MR. ZELCS:  Bob and Andrew, please state
21 your appearances.
22     MR. DWYER:  Robert J. -- Robert J. Dwyer,
23 Boies Schiller Flexner LLP, for the plaintiffs.
24     MR. ELLIS:  Andrew Ellis, with Korein
25 Tillery, for the plaintiffs.

Page 8

1      THE VIDEOGRAPHER:  Thank you.
2      Would the court reporter please swear in
3  the witness.
4
5      JOSEPH M. WINOGRAD,
6  having been administered an oath, was examined and
7  testified as follows:
8
9           EXAMINATION
10 BY MR. KRAMER:
11     Q  Mr. Winograd, good morning.
12     A  Good morning.
13     Q  Have you ever been deposed before?
14     A  Yes, I have.
15     Q  Can you give me the context in which that
16 deposition took place?
17     A  I'm happy to answer the question.  I will.
18     And afterwards, I'd like to make a comment
19 as well, before you ask your next question, if
20 that's all right.
21     Q  Feel free.
22     A  Okay.  Thank you.
23     I was deposed in a patent infringement
24 litigation for -- as an inventor of a technology.  I
25 was deposed for the defense.  I was a witness for

Page 9

1  the defense related to a patent infringement case
2  made against my employer, Verance Corporation.
3      Q  Just that one time, then, sir?
4      A  Just that one time.
5      Can I make my --
6      Q  And when was that?
7      A  Can I make my comment now?
8      Q  Sure.
9      A  Okay.  Great.
10     I wanted to just make you aware of three
11 corrections to my report that I've become aware of
12 in reviewing the report since it was submitted.  If
13 you'd like, I'll recite those.
14     There's an incorrect word on page 50, in
15 paragraph 102.  Where it says "1,000 Claims," the
16 correction is that it should say "1,000 Matches."
17     On page 82, in Exhibit B, there's a
18 citation that should be added.  The citation is a
19 document with the title "2022.01.14 AutoPlay
20 Attachment A with Works.PDF."
21     And then, third and finally, on page 69,
22 in a footnote, 181, that added reference should be
23 included in the citation there, in the
24 parenthetical, as an additional citation.
25     Q  When did you realize that the report that

Page 10

1  you submitted was inaccurate in those respects, sir?
2      A   Yesterday.
3      Q   And was there a reason why you couldn't
4  have shared that information earlier than just now
5  on the record?
6      A   I don't know of a way that I might have
7  done so.  It was late in the day yesterday.
8      Q   When were you retained in connection with
9  this matter, sir?
10     A   I believe it was around February of this
11 year.
12     Q   Who reached out to you?
13     A   George Zelcs of Korein Tillery.
14     Q   Did you know Maria Schneider before you
15 were -- personally, before you were retained in this
16 matter?
17     A   I did not.
18     Q   Did you know an attorney by the name of
19 Mark Righter before you were retained in connection
20 with this matter?
21     A   I did not.
22     Q   When did you start working in connection
23 with this matter?
24     A   Sometime in February of this year.
25     Q   Who drafted your report, sir?

Page 11

1      A   I did.
2      Q   Did Plaintiffs' counsel tell you what they
3  wanted you to say in it?
4      A   They did not.
5      Q   How did you get the materials that you
6  relied on for purposes of your report?
7      A   They were provided by Plaintiff counsel.
8      Q   Who, specifically?
9      A   They came from several different people
10 over the course of the -- over the course of my
11 work.
12     Q   And how did that happen?  Did you ask for
13 specific materials, or did Plaintiffs' counsel
14 supply you with specific materials?
15     A   Both.
16     Q   What specific materials did you request?
17     A   I don't recall with specificity the
18 specific materials.  I provided them with different
19 subject areas that I thought would be relevant, but
20 I don't recall the -- and can't distinguish those
21 that were provided specifically in response to my
22 request from those that were provided for some other
23 reason.
24     Q   And to be clear, when you said that you
25 drafted your report, did you actually type the words

Page 12

1  of the report into some word processing program?
2      A   I did.
3      Q   All of them?
4      A   All of them.
5      Q   When was the first draft of your report
6  completed?
7      A   That's -- that's a complicated question
8  because I wrote the report, which is a fairly long
9  report, over the course of several months; and
10 during the course of those months, I provided the
11 report in sections to -- to the plaintiff counsel.
12         And I guess the first -- I wouldn't be
13 able to easily distinguish the first complete
14 report.
15         If you mean the first report -- when the
16 report was finalized, it was finalized and complete,
17 I believe, you know, in the day or two before it was
18 served in the case.
19     Q   Did you communicate at any point in
20 connection with the preparation of your report with
21 Plaintiff Maria Schneider?
22     A   I did not.
23     Q   Did you communicate in connection with the
24 preparation of your report at any point with the
25 attorney named Mark Righter?

Page 13

1      A   I have not.
2      Q   Did you communicate with anyone in
3  connection with the preparation of your report other
4  than Plaintiffs' counsel?
5      A   You mean about the subject matter of the
6  report?
7      Q   Yes, sir.
8      A   Not that I'm aware of.
9      Q   The opinions that are expressed in your
10 report about YouTube, did you hold any of those
11 before you were retained to work in connection with
12 this matter?
13     A   I don't believe so.
14     Q   So the opinions that are expressed in your
15 report are opinions that you developed for purposes
16 of this litigation?
17     A   That's right.
18     Q   In paragraph 14 of your report, which we
19 will look at in just a second, you say that your
20 work is being billed at a rate of $750 an hour; is
21 that correct?
22     A   Yes, it is.
23     Q   How many hours have you spent so far?
24     A   I don't know exactly, but what I can say
25 is, as of the first of September, it was

Page 66

1   Q   Is it your view that the Content ID
2   technology itself has the ability to automatically
3   identify whether the use of a work in a video on
4   YouTube infringes a copyright?
5       A   That is -- no, that is not the intended
6   meaning of this sentence.
7       Q   The Content ID system can't automatically
8   determine what is and isn't infringing, right?
9       A   Right.
10      Q   The system can automatically identify
11  matches of a given reference file to a given video
12  file, correct?
13      A   Yes.
14      Q   Let's assume, hypothetically, that a
15  reference file for a musical composition that
16  Plaintiff Maria Schneider claims to own is in
17  Content ID, and the Content ID system recognizes
18  that someone has uploaded a video using that same
19  composition.
20          Has the Content ID system identified a
21  copyright infringement?
22      A   It may have.
23      Q   What do you mean, "it may have"?
24      A   So copyright management technologies --
25  copyright management systems I describe in the

Page 67

1   report can be understood to embody two steps -- two
2   separate steps:  A step of discovery and a step of
3   rights management.
4           The matching system I would characterize
5   as being a part of the discovery step.  It's where
6   you find -- where you identify the use of works, and
7   then -- that's the discovery step.  It may discover
8   works that are infringements.  It may also discover
9   works that aren't infringements.  But it's a
10  necessary precursor to copyright management that you
11  first find these identified works.  You identify the
12  works through discovery.
13          And in the case of YouTube, where the
14  corpus is so enormous, right -- billions of pieces
15  of content -- a matching system, in my view, is
16  really the only practical way to do it at scale.
17          And then, in the second step, the rights
18  management process, that's really a step in which
19  you take the potential infringements, the matches,
20  if you will, the places where you've identified uses
21  of a work, and then you make decisions about whether
22  they're infringements or not, whether action should
23  be taken, you know, an assertion or claim should be
24  made or not.
25          And so the statement that you highlighted

Page 68

1   in paragraph 38 is an important one because
2   infringements can take on very -- a wide range of
3   different types.  Basically, infringement can be
4   done in a variety of different ways.
5           And if you can't find or discover all the
6   different ways in which a work might be infringed,
7   you're certainly not going to be able to evaluate or
8   decide to -- to control the use of that or -- or to
9   even have the opportunity to make a decision as to
10  whether an infringement has occurred or not.
11          So --
12      Q   Do you have the question in mind, sir?
13      A   Yeah, yeah.
14      Q   Okay.
15      A   Yeah.
16      Q   Content ID's use of Defendants' matching
17  system automatically identifies matches, right?  It
18  doesn't identify, automatically, infringements, does
19  it?
20      A   That's right.  It's part of the discovery
21  step rather than the rights management step.
22      Q   So then why, sir, in paragraph 38 of your
23  report did you write the sentence saying:
24  "Content ID's use of Defendants' Matching System
25  automatically identifies a broad range of

Page 69

1   infringements"?
2       A   Because it does.  There are many -- a
3   range of different ways that works can be infringed,
4   and the matching system can automatically identify
5   them.
6       Q   It can automatically identify
7   infringements, or it can automatically identify
8   matches that, in a second step, someone would need
9   to tell YouTube is an infringement?
10      A   Both.
11      Q   How can it automatically identify a broad
12  range of infringements, sir?
13      A   It -- so infringement occurs in a variety
14  of different ways, right?  And the matching system
15  will automatically find many of these different ways
16  in which infringement occurs.
17          It finds other things as well.  It might
18  find matches that aren't infringements, but it does
19  find infringements.  And I think that's an extremely
20  important -- what makes it very important for
21  copyright management on the platform.
22      Q   Again, though, sir, you said it can
23  automatically identify the infringements.
24          How does it automatically identify
25  infringement?

Page 70

1  A   Because when --
2      MR. ZELCS:  Hold on.  Hold on, please.  I
3  know you want to answer this.
4      THE WITNESS:  Go ahead.
5      MR. ZELCS:  Objection.  Form.
6      Go ahead.
7      THE WITNESS:  When infringement occurs, it
8  must be discovered, and the matching system will
9  automatically discover it.
10 BY MR. KRAMER:
11 Q   It will automatically identify an
12 infringement, or it will automatically identify a
13 match that could be infringement?
14 A   I answered the question.  It's both.
15 Q   Okay.  Let's go back to the hypothetical,
16 then.
17     We've got a composition that Maria
18 Schneider claims to own in Content ID as a
19 reference, and the system has recognized that
20 someone has uploaded -- uploaded a video using that
21 composition.
22     When I asked you if it had identified a
23 copyright infringement, you said "maybe."  And I
24 asked you to explain that.
25     I'll give you a scenario.

Page 71

1      If the video that was matched to one of
2  Maria Schneider's reference files in Content ID had
3  been uploaded by Maria Schneider herself, would that
4  be a copyright infringement?
5  A   Not to my understanding.
6  Q   But you're aware --
7  A   Assuming -- assuming that she has -- holds
8  the rights to her work, right?
9  Q   Good assumption.
10     Do we know, in my hypothetical?
11 A   I -- I have limited knowledge of Maria
12 Schneider's copyrights, but I imagine, as a
13 plaintiff in this case, she likely does.
14 Q   Are you aware that people who upload
15 videos grant YouTube a license to use the content of
16 those videos on the service?
17 A   Not in detail, no.
18 Q   If Content ID detected a video matching
19 the reference for a Maria Schneider work where the
20 video was uploaded by someone with Maria Schneider's
21 authorization, would Content ID have detected a
22 copyright infringement?
23 A   I think what we're talking about -- and in
24 this sentence, we're discussing the matching system.
25 And the matching system will identify a match which

Page 72

1  could be a copyright infringement or it could not.
2      But in the cases where it has -- where it
3  is, in fact, an infringement, the matching system
4  has, in fact, automatically identified it.
5  Q   It's done that without any further input
6  from anyone else?
7  A   In some -- some cases, I understand that
8  the Content ID system as a whole does, without
9  further input, automatically apply claims, blocking
10 claims, monetization claims, and so forth to works.
11 Q   Yes, but has it identified an infringement
12 in that case, or has it identified a match as to
13 which policies and so forth are being applied?
14     MR. ZELCS:  Objection.  Form.
15     THE WITNESS:  So, look, I -- I'm happy to
16 agree that what the matching system does in the
17 discovery step is find matches and that some of
18 those matches will be -- may be infringements and
19 some of those matches may not be infringements.
20     And this sentence is specifically
21 referring to the cases where those matches are
22 infringements.  The matching system has
23 automatically identified them, not just in a limited
24 set of cases, but in a broad range of cases.
25 //

Page 73

1  BY MR. KRAMER:
2  Q   But the matching system in the discovery
3  phase, as you call it, doesn't know one way or
4  another whether the match that it's discovered is an
5  infringement; there needs to be a second step, where
6  rights management directives are applied to a
7  particular match, correct?
8  A   Yes, correct.
9  Q   Okay.  Assume that there is a reference
10 file for the movie "Five Weddings" that Uniglobe
11 purports to own in Content ID and the Content ID
12 system recognizes that someone has uploaded a video
13 that contains the entirety of "Five Weddings."
14     Has the Content ID system automatically
15 identified a copyright infringement?
16 A   It may have.
17 Q   The Content ID system doesn't know whether
18 the uploaded copy of "Five Weddings" is authorized
19 or not, does it?
20 A   I'm sorry.  You're -- can -- can you
21 restate the scenario?
22 Q   Sure.
23     There is a reference file in the
24 Content ID system for the movie "Five Weddings" that
25 Uniglobe claims it owns in this case.

## Errata Sheet

| Page: Line | Change | Reason |
|---|---|---|
| 15:17-18 | Replace <Authority [sic]> with <Administrator> | To correct transcription errors |
| 41:7 | Insert < But Verance does a number of indirect things related to the hundreds of millions of consumers who interact with Cinavia technology.> between <.> and <Q> | To clarify the record |
| 53:22 | Replace <and> with <in the> | To correct transcription errors |
| 80:25 | Replace <subscribers> with <channels> | To clarify the record |
| 85:7 | Replace <knows> with <"knows" –> | To correct transcription errors |
| 118:17 | Insert <, which I now see is on page 6 of that report for the second half of 2021.> between <based> and <.> | To clarify the record |
| 135:25 | Replace <anyone> with <"anyone"> | To correct transcription errors |
| 156:18 | Replace <billed> with <built> | To correct transcription errors |
| 160:15 | Replace <too> with <to> | To correct transcription errors |
| 160:17 | Replace <too> with <to> | To correct transcription errors |
| 164:25 | Replace <threat> with <thread> | To correct transcription errors |
| 173:3 | Insert <,> between <systems> and <are> | To correct transcription errors |
| 173:3 | Insert <not> between <likely> and <to> | To correct transcription errors |
| 197:2 | Replace <four – some> with <for some> | To correct transcription errors |
| 205:4 | Replace < discovery> with <"discovery"> | To clarify the record |
| 205:5 | Replace <rights management> with <"rights management"> | To clarify the record |
| 205:9 | Replace <rights management> with <"rights management"> | To clarify the record |
| 218:14 | Replace <base> with <basis> | To correct transcription errors |
| 221:25 | Replace <machine> with <regime> | To correct transcription errors |
| 244:2 | Replace <DMC> with <DMCA > | To correct transcription errors |

____X____  Subject to the above changes, I certify that the transcript is true and correct.

_____  No changes have been made. I certify that the transcript is true and correct.

_____                         11/2/2022
(Signature)                                          (date)

## ACKNOWLEDGMENT OF DEPONENT

I, Joseph Winograd, do hereby certify that I have read and examined the foregoing testimony, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____
(Signature)

11/2/2022
_____
(date)