# EXHIBIT 1

to the Declaration of Qifan Huang

PUBLIC VERSION – REDACTED

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

_____
                                   )
MARIA SCHNEIDER, UNIGLOBE          )
ENTERTAINMENT, LLC, and AST        )
PUBLISHING LTD., individually      )
and on behalf of all others        )
similarly situated,                )
                                   )
            Plaintiffs,            )
                                   )
vs.                                ) No. 3:20-CV-04423-JD
                                   )
YOUTUBE, LLC; and GOOGLE LLC,      )
                                   )
            Defendants.            )
_____)


HIGHLY CONFIDENTIAL PURSUANT TO THE PROTECTIVE ORDER

VIDEOTAPED DEPOSITION OF STEVEN D. PETERSON, Ph.D.

January 20, 2023

9:06 A.M.

44 Montgomery, 41st Floor

San Francisco, California


REPORTED BY:

LANA L. LOPER,

RMR, CRR, CCP, CME, CLR, CSR No. 9667

Magna Legal Services    866-624-6221    www.MagnaLS.com



```
 1   APPEARANCES:
 2
 3   FOR THE PLAINTIFFS:
          BOIES, SCHILLER & FLEXNER LLP
 4        BY:  PHILIP KOROLOGOS, ESQ.
               JULIA BRONT, ESQ.
 5             JOSH SCHILLER, ESQ. (VIA REALTIME)
               JEFFREY WALDRON, ESQ. (VIA REALTIME)
 6             SAMBRIA McELROY, ESQ. (VIA REALTIME)
               ROBERT J. DWYER, ESQ. (VIA REALTIME)
 7        55 Hudson Yards
          20th Floor
 8        New York, NY 10001
          212-446-2350
 9        pkorologos@bsfllp.com
          jbront@bsfllp.com
10        jischiller@bsfllp.com
          jwaldron@bsfllp.com
11        smcelroy@bsfllp.com
          rdwyer@bsfllp.com
12
                - - - and - - -
13
          KOREIN TILLERY, LLC
14        BY:  CAROL O'KEEFE, ESQ. (VIA REALTIME)
               GEORGE A. ZELCS, ESQ. (VIA REALTIME)
15        505 North 7th Street
          Suite 3600
16        St. Louis, Missouri 63101
          314-241-4844
17        cokeefe@koreintillery.com
          gzelcs@koreintillery.com
18
19   FOR THE DEFENDANTS:
          WILSON SONSINI GOODRICH & ROSATI
20        BY:  AMY CANDIDO, ESQ.
               QIFAN HUANG, ESQ.
21             ANDREW KRAMER, ESQ. (VIA REALTIME)
          One Market Plaza
22        Spear Tower
          Suite 3300
23        San Francisco, California 94105-1126
          415-947-2000
24        acandido@wsgr.com
          qhuang@wsgr.com
25        akramer@wsgr.com
```



```
                                                            Page 3
 1   ALSO PRESENT:
 2        RUSLAN GURZHIY, Legal Videographer
 3        HAL SINGER (VIA REALTIME)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```



Page 151

1  regressions, which is that the right-hand side
2  variables, the explanatory variables, should be
3  exogenous.  All of the causation should flow from the
4  right-hand side to the deep end N variable.  But that's
5  just not the case here.
6        If you regress viewer activity on content,
7  there's a feedback effect that you need to take account
8  of.  An increase in content will increase visits.  But
9  the B arrow tells you that content is also determined
10 by -- by visits.  And so the causation doesn't flow in
11 one direction; it flows in both directions.
12       So I went through some of the ways that you can
13 address that.  And the description of the problem is in
14 Wooldridge's textbook, around page 558.  And after 560
15 is a description of some of the things you can do about
16 it.
17    Q    Is that the simultaneity bias or issue that we
18 talked about earlier?
19    A    Yeah, the heading on the bottom of page 558, as
20 I recall, is simultaneity bias in OLS.
21    Q    And is that the bias you're referring to in the
22 latter part of the sentence we just looked at right
23 before the Footnote 3, when it says:
24            Otherwise regression results will
25        be biased?



Page 152

```
 1     A     Yes.
 2     Q     Yes?
 3           As I recall -- if I -- I'll withdraw that.
 4           If I recall correctly, you did some
 5   regressions, or at least one regression, on costs near
 6   the end of your report.  Is that right?
 7     A     I did.
 8     Q     And my guess is that there's a table that
 9   summarizes that?
10     A     There's not.
11     Q     There's not?
12     A     No.
13     Q     Is there in your work papers?
14     A     Yes.
15     Q     And what variables did you include in that
16   regression?
17     A     It's a regression of YouTube's total cost on
18   YouTube's revenue.
19     Q     Any other variables included?
20     A     No, that's it for that regression.
21     Q     Now, if I recall from our discussion earlier,
22   the costs that you looked at there included content
23   acquisition costs, cost of sales and infrastructure, and
24   operating expenses.  Is that right?
25     A     Correct.  The left-hand side is the sum of
```



Page 153

```
 1    those three cost categories by month.
 2         Q     The left-hand side of your regression?
 3         A     That's right.
 4         Q     Okay.  And if I recall the data correctly, the
 5    content acquisition costs as a percentage of YouTube's
 6    ad revenue ████████████████████████████████████████████
      █     █   ████████████████████████████████████
      █     █   ██████████████████████████████████████████████
 9         A     That is in the bounds of my recollection.
10         Q     I believe the result of your regression was a
11    ██████████ -- did you call it a marginal cost or
12    incremental cost or something like that?
13         A     Incremental cost is fine.
14         Q     Is that the right number, █?
15         A     It rounds to █.  It's, like, █ with --
16         Q     99 cents or something like that?
17         A     I think maybe three or four nines, yeah.
18    Computers like to write down aways.
19         Q     Like the price in a store?
20               So effectively, that ████████ on the dollar
21    rounded is a determination of the average incremental
22    cost over the period that you looked at.  Is that right?
23         A     It's the amount that YouTube's costs grew with
24    every -- for an increase in a dollar of YouTube's
25    costs -- let me start over.
```



Page 154

```
 1            It's the amount that YouTube's costs increased
 2   for a dollar increase in YouTube's revenue over the
 3   period of the regression.
 4       Q    And what was the period of the regression, if
 5   you recall?
 6       A    That data runs January 2017 through December
 7   2020, I believe.
 8       Q    And I take it from your earlier answers you
 9   gave me, you did not ask for any additional data?
10       A    I did not.
11       ████████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ████████████
16            Do you recall that?
17       A    I forget exactly when that happens, but I do
18   think that that's a fair description, and the data shows
19   what it shows, obviously.
20       Q    Right, and it will show what it shows.
21            ████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ████████████████████████████████████████████████████
     ███████████████████████████████████████
25            Does that fit with your recollection?
```



Page 155

```
 1      A    I don't disagree, sitting here; let me put it
 2   that way.  So I will accept that for purposes of your
 3   question.
 4      Q    Okay.  And I'll ask you to assume that, so we
 5   can get rid of the issue of what it shows versus not.
 6           You're also aware, are you not, that the Court
 7   has recently ruled that the statute of limitations
 8   period for this case is not going to be back in 2017,
 9   but is going to be in 2019, in fact, July 2 of 2019.
10           Do you remember that?
11      A    I did hear that.  I read that opinion.
12      Q    Does the ▮▮▮▮▮ you calculated for the period
13   back, looking at data from 2017, '18, '19, and '20,
14   still stand, or do you think that needs to be revised,
15   given the change in the Court's statute of limitations
16   period to July of 2019 from July of 2017?
17      A    The question is whether there's a break or
18   change in the relationship of YouTube's costs.  So if
19   you estimated it over the whole period or just in the
20   early period to July 2, 2019, do you get a different
21   answer than if you estimate it in the relevant period.
22           That's a really straightforward econometric
23   test.  And to the extent YouTube's costs are different
24   in the damages period, I think it could be appropriate
25   to use that if the earlier data are demonstrated to not
```



Page 156

```
 1   be representative of what was going on in that period.
 2            If they're not statistically different from
 3   each other, if you estimate the first bit and the second
 4   bit, then you could make a decision about whether it's
 5   more reasonable to have more data and accept the earlier
 6   period as representative of the later period.  So I
 7   think it's a relatively straightforward test.
 8            And if you got a straightforward difference
 9   between the rates, if the rate went from  ██████  to
10   ██████, and those two numbers were statistically
11   different from each other, then I would update.
12       Q    Okay.  Let's turn in your report, if you would
13   for me, to paragraph 93, which is the start of a
14   subsection on page 40.
15            Do you see that?
16       A    Paragraph 93?
17       Q    Yes.
18       A    I see it.
19       Q    And that's the first paragraph in subsection
20   for (a), that has some other parts above it.  But the
21   subheading there is:
22                 Dr. Singer's Disgorgement
23                 Calculation Incorrectly Treats the Error
24                 of His Regression's Revenue Predictions
25                 as Disgorgement Damages.
```



Page 157

```
 1             Do you see that?
 2      A      I do.
 3      Q      First, a question a little bit off topic.  If
 4      you look over at paragraph 94 --
 5      A      Yes.
 6      Q      -- do you see where it says, starting on the
 7      right-hand side, in what I think is the third sentence
 8      of the paragraph, it says in Table 2, and then it says:
 9                  Error reference source not found.
10             Do you see that?
11      A      I do see that.
12      Q      That's generated by the Word word-processing
13      program, correct?
14      A      Yeah.  And I'm confused by it because the
15      reference is Table 2, which is there.  So normally, that
16      happens when Table 2 disappears.  And we normally search
17      for the word error before PDF'ing these things.  So
18      multiple things went a little bit wrong.
19      Q      I just want to make sure that that was not
20      supposed to be part of your report?
21      A      No.  I think the sentence reads correctly:
22                  In Table 2 above, Dr. Singer
23             assumes.
24      Q      Right.
25      A      I think that it reads properly, so it doesn't
```



Witness: Steven R. Peterson — January 20, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

## Errata Sheet

| Page:Line | Change | Reason |
|---|---|---|
| 9:10 | Replace <account of> with <called> | To correct transcription errors |
| 10:18 | Replace <recite> with <cite> | To correct transcription errors |
| 10:21 | Replace <site> with <cite> | To correct transcription errors |
| 22:2 | Replace <but> with <and> | To correct transcription errors |
| 29:1 | Replace <were> with <were not> | To clarify the record |
| 67:21 | Remove <while> between <and> and <YouTube> | To correct transcription errors |
| 77:5 | Replace <SaaS> with <SAS> | To correct transcription errors |
| 81:14 | Insert <,> between <correlated> and <because> | To correct transcription errors |
| 82:6 | Replace <or> with <where> | To correct transcription errors |
| 91:15 | Replace <Web form> with <Webform> | To correct transcription errors |
| 99:4 | Replace <copyright ID> with <Content ID> | To clarify the record |
| 118:3 | Replace <billion> with <million> | To correct transcription errors |
| 119:12 | Replace <5.720> with <50.720> | To correct transcription errors |
| 129:20 | Replace <but> with <like a> | To correct transcription errors |
| 151:4 | Replace <deep end N> with <dependent> | To correct transcription errors |
| 166:22-23 | Replace <saw a site> with <cite> | To correct transcription errors |

_____  Subject to the above changes, I certify that the transcript is true and correct.

_____  No changes have been made. I certify that the transcript is true and correct.

_Steven R. Peterseen_   _February 22, 2023_
(signature)   (date)

1

Witness: Steven R. Peterson — January 20, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

## ACKNOWLEDGMENT OF DEPONENT

I, Steven R. Peterson, do hereby certify that I have read and examined the foregoing testimony, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____          _____
(signature)                                                                    (date)

2