George A. Zelcs*
  gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
  rewing@koreintillery.com
Ryan Z. Cortazar *
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe*
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
  pkorologos@bsfllp.com
Joanna Wright*
  jwright@bsfllp.com
Jeffrey Waldron*
  jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERTS JOSEPH M. WINOGRAD AND PAUL JESSOP**<br><br>Judge: Hon. James Donato<br><br>Date:  April 13, 2023<br>Time:   10:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

I. DR. WINOGRAD'S TESTIMONY SHOULD BE ADMITTED ................................... 2

    A. Dr. Winograd is a qualified expert. ........................................................................ 2

    B. Dr. Winograd's report is not an improper summary of the evidence. .................... 4

    C. Dr. Winograd's opinion that "Defendants could provide the plaintiff class with full access to their Matching System at limited additional cost" is fully supported. ................................................................................................................................... 6

II. MR. JESSOP'S OPINIONS ARE RELIABLE AND WILL ASSIST THE JURY ........... 8

    A. Mr. Jessop's reliance on cited evidence is proper. .................................................. 8

    B. Mr. Jessop has not offered opinions on YouTube's state of mind ....................... 10

    C. Mr. Jessop does not offer legal conclusions. ........................................................ 11

    D. Mr. Jessop is well qualified to offer his opinions. ............................................... 12

    E. Mr. Jessop's opinions on CMI that was deleted from Plaintiffs' copyrighted works are the product of a reliable methodology. .......................................................... 13

    F. Mr. Jessop's testimony regarding ISRCs will assist the jury. .............................. 13

    G. Mr. Jessop's hypothetical is relevant and helpful. ............................................... 15

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Alaska Rent–A–Car v. Avis Budget Grp.*,
   738 F.3d 960 (9th Cir. 2013) ......................................................................................................6

*Brickman v. Fitbit*,
   2017 WL 6209307 (N.D. Cal. Dec. 8, 2017) ..............................................................................6

*Brown v. Google*,
   2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ..........................................................................5

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
   2020 WL 4518978 (N.D. Cal. Aug. 5, 2020) .............................................................................9

*D.F. by & through Amador v. Sikorsky Aircraft*,
   2017 WL 4922814 (S.D. Cal. Oct. 30, 2017) .............................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ......................................................................................................1

*Day v. GEICO Cas. Co.*,
   2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) ..........................................................................7

*Dolls Kill, Inc. v. Zoetop Bus. Co.*,
   2022 WL 16961477 (C.D. Cal. Aug. 25, 2022) .......................................................................14

*DZ Rsrv. v. Meta Platforms*,
   2022 WL 912890 (N.D. Cal. Mar. 29, 2022) .............................................................................5

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*,
   2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ...............................................................................9

*Focal Point Films LLC v. Sandhu*,
   2020 WL 5760355 (N.D. Cal. Sept. 28, 2020) .........................................................................10

*GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*,
   391 F. Supp. 3d 828 (N.D. Ill. 2019) .......................................................................................14

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ............................................................................................. 11, 15

*Icon-IP Pty. v. Specialized Bicycle Components*,
   87 F. Supp. 3d 928 (N.D. Cal. 2015) .........................................................................................5

*In re Apollo Grp. Inc. Sec. Litig.*,
   527 F. Supp. 2d 957 (D. Ariz. 2007) ........................................................................................10

*In re Capacitors Antitrust Litig.*,
   2020 WL 870927 (N.D. Cal. Feb. 21, 2020) ..............................................................................8

*In re Ford Tailgate Litig.*,
   2015 WL 7571772 (N.D. Cal. Nov. 25, 2015) .........................................................................12

*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   2022 WL 1814440 (N.D. Cal. June 2, 2022) ...........................................................................10

*In re MacBook Keyboard Litigation*,
   2021 WL 1250378 (N.D. Cal. Apr. 5, 2021) ..................................................................... 12, 13

*In re PFA Ins. Mktg. Litig.*,
   2021 WL 5994908 (N.D. Cal. Nov. 3, 2021) .............................................................................4

*In re PFA Ins. Mktg. Litig.*,
  2022 WL 3146557 (N.D. Cal. June 15, 2022) ............................................................... 12, 13

*In re Twitter, Inc. Sec. Litig.*,
  2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) ...................................................................... 11

*Intel Corp. v. Tela Innovations, Inc.*,
  2021 WL 1222622 (N.D. Cal. Feb. 11, 2021) ........................................................................ 9

*Kipp Flores Architects, LLC v. Pradera SFR, LLC*,
  2022 WL 1105751 (W.D. Tex. Apr. 13, 2022) .................................................................... 14

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................. 1

*Nationwide Transp. Fin. v. Cass Info. Sys.*,
  523 F.3d 1051 (9th Cir. 2008) ............................................................................................ 11

*Open Text S.A. v. Box*,
  2015 WL 393858 (N.D. Cal. Jan. 29, 2015) ......................................................................... 7

*Open Text S.A. v. Box*,
  2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ......................................................................... 3

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ...................................................................... 9

*Robert Stark Enters., Inc. v. Neptune Design Grp., LLC*,
  2017 WL 1345195 (N.D. Ohio Apr. 12, 2017) ................................................................... 14

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  2008 WL 2037732 (N.D. Cal. May 12, 2008) .................................................................... 11

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) ................................................................................. 5, 10, 13

*United States v. Holmes*,
  2021 WL 2035177 (N.D. Cal. May 21, 2021) .................................................................... 12

*United States v. Laurienti*,
  611 F.3d 530 (9th Cir. 2010) ......................................................................................... 4, 13

*United States v. Liew*,
  2013 WL 6441259 (N.D. Cal. Dec. 9, 2013) ........................................................................ 6

*United States v. Sullivan*,
  2022 WL 3716594 (N.D. Cal. Aug. 28, 2022) ...................................................................... 5

*Utne v. Home Depot U.S.A., Inc.*,
  2022 WL 16857061 (N.D. Cal. Nov. 10, 2022) .................................................................... 9

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
  2013 WL 6905555 (N.D. Cal. Nov. 18, 2013) .................................................................... 11

**STATUTES**

17 U.S.C §1202 ............................................................................................................... 9, 15

**OTHER AUTHORITIES**

Weinstein's Federal Evidence, § 702.04 ...................................................................................... 4

**RULES**

Fed. R. Evid 702 ............................................................................................................. 3, 4, 5

Fed. R. Evid 703 ......................................................................................................................... 9

## INTRODUCTION

Plaintiffs offer the testimony of Dr. Joseph Winograd and Mr. Paul Jessop, two well-qualified experts with a combined 50 years of experience in the fields of digital content identification and protection (Winograd), and the use of metadata for content identification, attribution, and payment in the media industry (Jessop).  Defendants seek to exclude the *entirety* of Dr. Winograd's and Mr. Jessop's testimony using substantive arguments that apply to only limited portions of their opinions and cloak their ulterior motive (preventing the jury from considering damaging expert testimony) in arguments about expertise, reliability, and methodology.  Defendants' arguments fail.

The specialized knowledge of Plaintiffs' experts will "logically advance[] a material aspect" of the case.  *Daubert v. Merrell Dow Pharms., Inc*., 43 F.3d 1311, 1315 (9th Cir. 1995).  Crucial to the *Daubert* inquiry is whether the proposed testimony "can help the jury evaluate" the evidence, especially where the evidence may be "foreign" to their experience.  *Kumho Tire v. Carmichael,* 526 U.S. 137, 149 (1999).  Dr. Winograd, with a long career specializing in technologies that identify and protect copyrighted material, wrote an extensive report and testified regarding the technical aspects of YouTube's platform and its capabilities for preventing, and letting copyright owners prevent, copyright infringement, including through YouTube's proprietary digital fingerprinting technology.  Similarly, Mr. Jessop, a leading authority on digital metadata, authored a report and testified about the prevalence, reliance, and use of metadata in the media industry, and Defendants' (improper) treatment of such metadata.  The jury will benefit from Dr. Winograd and Mr. Jessop's expertise and opinions in these highly technical matters.

Defendants should not be permitted to exclude the valuable testimony of Plaintiffs' experts simply because their opinions cast Defendants in a poor light.  The weight and correctness of Dr. Winograd and Mr. Jessop's opinions should be properly left to the rigors of the adversarial process and the capable hands of the jury.  Defendants' all-out attacks on Plaintiffs' experts are misplaced as these experts are far from presenting "junk science" and because Defendants are free to cross examine them at trial.  Their testimony should thus not be excluded.  Should it assist the Court, Plaintiffs are prepared to present their experts in a concurrent expert witness proceeding.

## I. DR. WINOGRAD'S TESTIMONY SHOULD BE ADMITTED

### A. Dr. Winograd is a qualified expert.

As a developer and implementer of digital content identification technologies, Dr. Winograd is amply qualified to opine on the operation of YouTube's digital fingerprint technologies. █████████████████

██████████████████████████████

(Ex. 7—Winograd Rpt. ¶¶7–11.)[1] ██████████████████

██████████████████████████████

█████ (Declaration of Joseph M. Winograd, Ph.D. ("Winograd Decl.") ¶¶6–8.) ███

██████████████████████████████

████████████ (Ex. 7—Winograd Rpt. ¶12) and, as disclosed in his Report (id., Exh. B), ██████████████████

(id. ¶12), ██████████████████████

██████████████████████████████

█████████████████████[3] (Winograd Decl. ¶¶2–3.)

Notably, Dr. Winograd is the inventor of █████████████████ ██████████████████████████ that discloses numerous methods for application of content identification technologies to perform copyright management. (Id. ¶4.) The █████████████████

██████████████████████████████

██████████████████████████████

---

[1] All numerical exhibits cited herein ("Ex. __") are attached to the Declaration of Jeffrey Waldron in Support of Plaintiffs' Opposition to Defendants' Motion to Exclude Winograd and Jessop.

[2] ██████████████████████████████
██████████████████████████████
[3] ██████████████████████████████
██████████████████████████████
██████████████████████████████

2  Case No. 3:20-cv-04423-JD
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERTS JOSEPH M. WINOGRAD AND PAUL JESSOP

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. (*Id.*)

Defendants chose not to question Dr. Winograd about his relevant expertise and patents at his deposition but now assert that he "has no expertise with real bearing on this case" because he has not worked specifically for an "online service that hosts user-generated content" and has no direct experience with YouTube's proprietary "copyright management tools." (Mot. at 4–5.) But this ignores all of Dr. Winograd's broad experience in developing copyright management technologies including ████████████████████████████████████████████████ ████████████████████████████████████████ (Ex. 7—Winograd Rpt. ¶3.) This expertise is ample basis to allow Dr. Winograd to assist the jury in understanding how, *e.g.*, YouTube: (i) ██████████████████████████████████████████████████ ████████████████ (*id.* ¶18); (ii) ████████████████████████████████████ ████████████████████████████████ (*id.* ¶20); and (iii) ████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████ (*id*. ¶21). Defendants' argument (Mot. at 5) that Dr. Winograd is unqualified to opine on YouTube's proprietary recommendation algorithm, Watch Next (an intricate system that analyzes numerous inputs to surface relevant videos) ████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████ (Winograd Decl. ¶¶9–11.)

Citing *Open Text S.A. v. Box*, Defendants argue that Dr. Winograd invokes his expertise as a ruse to obscure the "black box" nature of his opinions. 2015 WL 349197 at *6 (N.D. Cal. Jan. 23, 2015). But, unlike here, the *Open Text* expert presented a conclusory opinion on a reasonable royalty rate without presenting her work. *Id.* Defendants cannot have it both ways in criticizing Dr. Winograd for relying on facts contained in their own documents (*see* Section I.B., below) and then turning a blind eye to his comprehensive review of those materials to claim a "black box."

Defendants also complain that Dr. Winograd is parroting "Plaintiffs' counsel's advocacy"; but the question is whether his opinions are admissible under Fed. R. Evid. 702, not whether they

(unsurprisingly) align with the theories of the party offering his testimony.  Nor does the Rule 702 analysis somehow change because he relied on certain documents selected by counsel.  *See In re PFA Ins. Mktg. Litig.*, 2021 WL 5994908, at *4 (N.D. Cal. Nov. 3, 2021).

Finally, Defendants are wrong that niche experience in YouTube's proprietary Content ID or Watch Next systems is required to satisfy Rule 702.  *United States v. Laurienti*, 611 F.3d 530, 548 (9th Cir. 2010) (abuse of discretion to exclude stock market expert with no experience in particular type of stocks at issue); *D.F. by & through Amador v. Sikorsky Aircraft*, 2017 WL 4922814, at *16 (S.D. Cal. Oct. 30, 2017) (lack of expertise in specialized areas where expert has education and experience related to the subject matter insufficient basis to exclude) (citing Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 702.04(1)(a) (2017)).

**B.    Dr. Winograd's report is not an improper summary of the evidence.**

Defendants argue (Mot. at 2) that Dr. Winograd's testimony should be excluded as "largely just [his] version of the evidence of record" but then cite only three supposedly improper statements from two paragraphs of an 86-page report.  (*See* Ex. 7—Winograd Rpt. ¶¶18, 20).[4]  For this reason alone, Defendants' argument is wholly insufficient to justify exclusion of testimony *in full*.

Regardless, "the opinions at issue constitute" the proper "application of [Dr. Winograd's] expertise to the facts in the case and, as such, do not infringe the province of the jury."  *In re PFA Ins. Mktg. Litig.,* 2022 WL 3146557, at *2 (N.D. Cal. June 15, 2022).  For example, the challenged statement that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is a concise summary of an entire section of his report. (Ex. 7—Winograd Rpt. Section III.)  The analysis in that section—relying on Dr. Winograd's knowledge of indexing, search functionalities, and fingerprinting—reflects the application of decades of experience to Defendants' internal and external documents, many of which are technical and beyond the understanding of most lay jurors.[5]  As Google itself argued in defeating a motion to exclude in

---

[4] Defendants seem (Mot. at 2) to object to the point that Content ID finds infringement.  But that is consistent with their own documents.  (Ex. 13 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮))

[5] (*See e.g.*, Ex. 14—"Watch Next Infra"; Ex. 12—"Abuse Threat in Watch Next".)

*Brown v. Google*, no empirical analysis is required to satisfy Rule 702 where the expert relied on data produced "plus his industry knowledge, to arrive at his opinion." 2022 WL 17961497, at *13–14 (N.D. Cal. Dec. 12, 2022); *accord Icon-IP Pty. v. Specialized Bicycle Components*, 87 F. Supp. 3d 928, 946 (N.D. Cal. 2015) ("Ninth Circuit has found opinions based on an expert's experience in the industry to be proper") (collecting cases).

Defendants' citation (Mot. at 3) to *DZ Rsrv. v. Meta Platforms*, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) (Donato, J.), does not support a different conclusion. The expert there was excluded because his report did "not offer any specialized or scientific expertise, or anything beyond the typical knowledge and experience of a jury" and the documents interpreted were "reasonably intelligible to a jury without special assistance." *Id*. at *9. ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (*See* Ex. 7—Winograd Rpt. ¶¶7–13, 15, Exh. B.) Dr. Winograd's analysis of such documents would benefit the jury since those documents are beyond their comprehension. *See United States v. Finley*, 301 F.3d 1000, 1013 (9th Cir. 2002) (explaining that courts "must be cautious not to overstate the scope of the average juror's common understanding and knowledge" and that "case law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge").

Defendants also seek exclusion on the basis that Dr. Winograd "testified that he believed his job as an expert was to summarize the materials he had reviewed or to restate 'facts' provided to him by Plaintiff's counsel." (Mot. at. 2.) But Dr. Winograd repeatedly explained he applied his decades-long experience and expertise to analyze relevant documents to arrive at his conclusions (*see e.g.*, Ex. 5—Winograd Dep. 56:22–57:4, 189:17–21, 194:3–14), which provide a permissible basis for his testimony. *See United States v. Sullivan*, 2022 WL 3716594, at *11–12 (N.D. Cal. Aug. 28, 2022) (rejecting argument that expert merely parroted testimony since expert's "proposed testimony does more than state undisputed facts or reiterate the testimony of lay witnesses"); *Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set

of observations based on extensive and specialized experience.").

Defendants' purported examples of Dr. Winograd improperly summarizing the evidence are cherry-picked and mischaracterized. For example, in one cited deposition exchange, Dr. Winograd explicitly testified that he considered the sentence at issue in his report to be "valuable introductory material," prefacing his further analysis in Section III.A of his report. (*See* Ex. 5—Winograd Dep. 41:8–42:14; *see generally* Ex. 7—Winograd Rpt. Section III.A). Similarly, Defendants seemingly criticize Dr. Winograd for relying on the annual report of Alphabet, Inc. (the ultimate parent of Defendants).[6] Once again, Dr. Winograd simply used facts drawn from Alphabet's own *public filings* as expository material in the section of his report where he affirmatively opines, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (Ex. 7—Winograd Rpt. Section VI (heading)) and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*id.* ¶111).

To the extent Defendants' interpretation of their documents differs from Dr. Winograd's, "That may be fertile grounds for cross-examination, but it does not make" the expert's "opinions inadmissible." *See Brickman v. Fitbit*, 2017 WL 6209307, at *4 (N.D. Cal. Dec. 8, 2017) (Donato, J.); *accord United States v. Liew*, 2013 WL 6441259, at *6 (N.D. Cal. Dec. 9, 2013) ("The appropriate method to challenge" the expert's "conclusions is vigorous cross-examination and presentation of contrary evidence."); *Alaska Rent–A–Car v. Avis Budget Grp.*, 738 F.3d 960, 969–70 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

### C. Dr. Winograd's opinion that "Defendants could provide the plaintiff class with full access to their Matching System at limited additional cost" is fully supported.

Defendants next contend that Dr. Winograd's opinion that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is based on improper "speculation." (Mot. at 6.) Defendants will be free to try to make this point on cross-examination and in closing arguments. But they cannot justify preclusion when substantial

---

[6] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*See* Ex. 8—Halm Rpt., App'x B.)

6            Case No. 3:20-cv-04423-JD
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
PROPOSED EXPERTS JOSEPH M. WINOGRAD AND PAUL JESSOP

1  evidence, including Defendants' own documents, support this opinion.

2       As Dr. Winograd explained, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4  ▮▮▮▮▮ (Ex. 7—Winograd Rpt. ¶91), and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* at ¶95).  This

7  opinion has extensive support, including from YouTube's own employees.  (*See* Ex. 2—Magagna

8  Dep. 32:18–33:9 (describing the cost of matching an additional work as ▮▮▮▮▮▮▮▮▮

9  ▮▮▮); Ex. 15—Expenditures Spreadsheet; Ex. 16—Spreadsheet of YouTube Copyright Features.)

10 As this Court has recognized, an expert can use their technical expertise and experience to

11 evaluate a counterfactual and arrive at approximate cost estimates.  *See Open Text,* 2015 WL

12 393858, at *4 (N.D. Cal. Jan. 29, 2015 (Donato, J.) (explaining that experts may estimate "design-

13 around costs based on talking to technical experts and engineers") (collecting cases).

14      To the extent Defendants assert that Dr. Winograd's cost estimates should have been more

15 precise (or different), they were free to submit a rebuttal report.  And Defendants would have been

16 free to have such a rebuttal expert analyze whatever relevant documents they had regarding the

17 costs of providing matching technology to the class.  But Defendants, for whatever tactical reason,

18 chose not to present any such rebuttal report.  They are of course still free to question the precision

19 of Dr. Winograd's estimates at trial.  But having failed to submit a rebuttal report on this point and

20 having failed to produce documents that might have enabled a more accurate assessment of the

21 costs of providing matching technology to class members (*see* Exs. 9 & 10—Resps. And Objs. To

22 RFPs 121–129), Defendants have no basis to now try to exclude Dr. Winograd based on the

23 supposed imprecision of his opinions.  *See Day v. GEICO Cas. Co.*, 2022 WL 16556802, at *4

24 (N.D. Cal. Oct. 31, 2022) (denying motion to exclude plaintiff's expert at class certification where

25 "some of the information required to further develop the model is in [defendant's] hands").

26      In any event, Dr. Winograd's cost estimation analysis, which as he described is ▮▮▮▮

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

28

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*see* Ex. 7—Winograd Rpt. ¶95), is well-founded.  Citing Defendants' documents, Dr. Winograd: (i) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. ¶93); (ii) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. ¶94); and (iii) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*.).  Based on Defendants' documents and Dr. Winograd's extensive experience, he concluded that YouTube could provide its matching technology to class members at limited additional cost.  Again, any criticisms of this well-supported conclusion can be raised during cross-examination.  *See In re Capacitors Antitrust Litig*., 2021 WL 5407452, at *2 (N.D. Cal. Feb. 21, 2020) (Donato, J.).

## II. MR. JESSOP'S OPINIONS ARE RELIABLE AND WILL ASSIST THE JURY

Paul Jessop will offer relevant and reliable expert testimony on the prevalence and use of CMI metadata in the media industry and the impact of YouTube's handling of CMI on rights owners.  He oversaw the ISRC standard as Executive Director of both the international and the US ISRC agencies. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 6—Jessop Rpt. ¶¶1, 5, 14–28), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id*. ¶¶137–48).  The handling of CMI is paradigmatically the kind of technical issue where expert testimony will assist a jury.  And, here in particular, Mr. Jessop's opinions will assist the jury in understanding the role of CMI in digital works and provide the jury with the tools needed to evaluate the evidence showing that YouTube's mistreatment of CMI has enabled, induced, concealed, and contributed to infringement of Plaintiffs' works in violation of 17 U.S.C § 1202.

### A. Mr. Jessop's reliance on cited evidence is proper.

Mr. Jessop's report sets forth multiple opinions concerning, *e.g.*, ▮▮▮▮▮▮▮▮

[REDACTED] (Ex. 6—Jessop Rpt. ¶30), [REDACTED] (id. ¶31) [REDACTED] (id. ¶35), [REDACTED] (id. ¶34), [REDACTED] (id. ¶9).

Defendants seek to exclude Mr. Jessop's opinions on the basis that they supposedly do no more than narrate facts and interpret the evidence. (Mot. at 8.) But Mr. Jessop's description of the facts properly provide the evidentiary bases of his opinions, consistent with Fed. R. Evid 703 (an expert may "base an opinion on facts or data in the case that the expert has been made aware of"); *accord Intel Corp. v. Tela Innovations, Inc.*, 2021 WL 1222622, at *41 (N.D. Cal. Feb. 11, 2021) (denying motion to exclude expert's testimony on "things fact witnesses have said that form the *basis* of [expert's] opinion.").[7] For example, at Paragraph 125, [REDACTED] (Ex. 6—Jessop Rpt. ¶125.)[8] Likewise, it is perfectly proper for Mr. Jessop to use his expertise and specialized knowledge to offer opinions that "amount to 'inferences'" (Mot. at 9) drawn from the facts. *Utne v. Home Depot U.S.A., Inc.*, 2022 WL 16857061, at *6 (N.D. Cal. Nov. 10, 2022). None of Defendants' cases suggest otherwise.

The few passages from Mr. Jessop's report that Defendants cite in arguing otherwise are not to the contrary. (Mot. at 8 (challenging ¶¶30-31, 35, 125, 130, 137, 153–155, 157, 160–167).) For example, [REDACTED] (Ex. 6—Jessop Rpt. ¶¶30–31,

---

[7] The cases on which Defendants rely (Mot. 9) are inapposite. In those cases, the experts' opinions reported what the expert observed, *see CZ Servs. v. Express Scripts Holding*, 2020 WL 4518978, at *2 (N.D. Cal. Aug. 5, 2020) (expert merely "report[ed]" what she observed and read in discovery documents), recited facts without analysis, *see Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, 2022 WL 254348, at *10 (N.D. Cal. Jan. 27, 2022) (expert's testimony was "recitation of [plaintiff's] theory of the case"), or did not exclude the challenged testimony, *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *7 (N.D. Cal. Dec. 11, 2018).

[8] (*See also, e.g.*, Ex. 6—Jessop Rpt. ¶130 [REDACTED]; ¶¶153–155 [REDACTED].)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERTS JOSEPH M. WINOGRAD AND PAUL JESSOP

130), ▮▮▮ (*id.* ¶157), ▮▮▮ (*id.* ¶125), he properly sets forth the factual support for his opinions of how, *e.g.*, ▮▮▮

Defendants' assertion that Mr. Jessop's opinions are merely "common knowledge and common sense" (Mot. at 9) also fails. Defendants do not analyze Mr. Jessop's testimony or report, instead quoting out of context deposition testimony in which Mr. Jessop referred to an inference drawn by application of "common sense." (*Id.*) In fact, Mr. Jessop described his "common sense analysis *based on knowledge of software engineering and similar fields*." (Ex. 1—Jessop Dep. 111:19–112:4.) As the Ninth Circuit observed in *Finley*, courts "must be cautious not to overstate the scope of the average juror's common understanding and knowledge." 301 F.3d at 1013. The subjects of Mr. Jessop's expert testimony are outside the understanding of average jurors, and his opinions are thus properly the subject of expert testimony.[9]

### B. Mr. Jessop has not offered opinions on YouTube's state of mind.

Defendants are also wrong in claiming (Mot. 9–10) that Mr. Jessop improperly opines on YouTube's state of mind. In fact, none of his opinions concern YouTube's subjective knowledge. Rather, in Defendants' examples, he points to evidence showing that YouTube had the ability to know and explains the factors and considerations supporting that conclusion. (Ex. 1—Jessop Dep. 131:11–20 ("[I]t's not my intention to offer opinions on whether any particular individual has any particular state of mind.").)[10] For example, at Paragraphs 168–171, ▮▮▮

▮▮▮ (Ex. 6—Jessop Rpt. ¶¶168–171.)[11]

---

[9] Defendants' cases (Mot. 9) do not support their position. In *Focal Point Films LLC v. Sandhu*, the court excluded an opinion that a co-author would receive 50% of the profits of a film as "easily underst[andable]" and "not the subject of [the expert's] expertise." 2020 WL 5760355, at *7 (N.D. Cal. Sept. 28, 2020). *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957 (D. Ariz. 2007), did not even involve a challenge to expert testimony on these grounds.

[10] In any event, "Generally, 'state of mind' and 'intent' objections are better ruled on at trial" because "the context of the testimony and the purposes for which it is offered are critical." *In re Juul Labs, Inc. Mktg., Sales Pracs. Litig.*, 2022 WL 1814440, at *14 (N.D. Cal. June 2, 2022).

[11] (*See also* Ex. 6—Rpt. ¶¶32, 171 (▮▮▮); ¶¶154–155 (▮▮▮); ¶¶37, 137, 157–162 (▮▮▮).)

This testimony, based on his knowledge of YouTube from his experience in the industry, is entirely proper. *Volterra Semiconductor v. Primarion*, 2013 WL 6905555, at *24 (N.D. Cal. Nov. 18, 2013) (testimony on "factors that led" a patentee to lower prices was not intent testimony). Defendants' own authority confirms this point: *Oracle* (Mot. 9), 2018 WL 6511146, at *3 (expert permitted to testify on "considerations" leading "persons in the field" to act);[12] *accord Therasense, Inc. v. Becton, Dickinson & Co.*, 2008 WL 2037732, at *4 (N.D. Cal. May 12, 2008) (an expert may also "point to evidence bearing on" knowledge and intent).

### C. Mr. Jessop does not offer legal conclusions.

Defendants' characterization of Mr. Jessop's testimony as "forays into statutory interpretation and legal analysis" (Mot. at 10) is also mistaken. An expert witness "may refer to the law in expressing an opinion" and "may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (opinions that "relied in part on [expert's] understanding of the requirements of state law" were admissible). Mr. Jessop does nothing more in the paragraphs about which Defendants complain. For example, ▮▮▮▮▮▮▮▮▮▮ (Ex. 6—Jessop Rpt. ¶¶30–31, 152.)[13] These are not opinions on the ultimate issues, nor do they reflect conclusions on whether YouTube's conduct violates the law.[14] "[A]ny confusion or unfair prejudice resulting from [Mr. Jessop's] testimony . . . can be mitigated by careful examination and thoughtful

---

[12] Defendants' other case, *In re Twitter Sec. Litig.*, is distinguishable—expert offered an ultimate conclusion regarding defendant's motives. 2020 WL 9073168, at *11 (N.D. Cal. Apr. 20, 2020).

[13] (*See also* Ex. 6—Jessop Rpt. ¶¶104–109 (▮▮▮▮▮▮); ¶165 (▮▮▮▮▮▮).)

[14] The cases cited by Defendants (Mot. at 10) are distinguishable. In *Nationwide Transp. Fin. v. Cass Info. Sys.*, the court determined that the expert improperly sought to "instruct" the jury on "how [the UCC] applied to the facts of the case and explain that [defendant's] conduct violated [the UCC]." 523 F.3d 1051, 1059 (9th Cir. 2008). In *In re Capacitors Antitrust Litig.*, the Court found that an engineer's opinions on "collusion" and "violations of antitrust law" were likely inadmissible legal opinions on topics on which the engineer lacked "specialized knowledge." 2020 WL 870927, at *1.

language." *United States v. Holmes*, 2021 WL 2035177, at *4 (N.D. Cal. May 21, 2021).

### D. Mr. Jessop is well qualified to offer his opinions.

Defendants' attempt to challenge Mr. Jessop's expertise is badly misplaced. ▇

▇

▇ (Ex. 6—Jessop Rpt. ¶¶1, 5, 14–28.) ▇

▇

▇ (*id.* at ¶18). ▇

▇

▇. (*Id.* at ¶24.) ▇

▇

▇ (*Id.* at ¶28.) ▇

▇

▇ (*Id.* at ¶¶14–15.)[15]

At most, Defendants contend that Mr. Jessop lacks specific experience in "video transcoding," "online search engine[s] or platform[s] for user-generated content," "the third-party video editing software that apparently generates CLFN metadata," and "CLFN." (Mot. at 11–12.) But a "court abuses its discretion when it excludes expert testimony solely on the ground that the witness's qualifications are not sufficiently specific if the witness is generally qualified." *In re MacBook Keyboard Litigation*, 2021 WL 1250378, at *6 (N.D. Cal. Apr. 5, 2021).

Here, ▇

▇ (Ex. 6—Jessop Rpt. ¶¶153–54.) Moreover, Defendants do not point to any opinions that require experience with "online search engine[s] or platform[s] for user-generated content" (*see* Mot. at 11), which "is not necessary to opine on" metadata practices that happen to be conducted by a social media platform. *PFA*, 2022 WL 3146557, at *6. And Mr. Jessop's extensive experience and knowledge of metadata qualifies him

---

[15] Defendants' case (Mot. at 12.) *In re Ford Tailgate Litig.*, 2015 WL 7571772 (N.D. Cal. Nov. 25, 2015), is misplaced. There, the court excluded a glass expert's opinions on the design of non-glass objects, corrosion of metal parts, and cars' safety features as "outside of" the expert's expertise. *Id.* at *6. Mr. Jessop's opinions are specifically relevant to his expertise—metadata.

to testify about CLFN, regardless of whether he has specific experience with this precise type of metadata. *Laurienti*, 611 F.3d at 548 (abuse of discretion to exclude a stock market expert with no experience in the particular type of stocks at issue); *MacBook*, 2021 WL 1250378, at *6 (metallurgical engineering expert could opine on keyboard design despite no prior experience with keyboards); *PFA*, 2022 WL 3146557, at *6 (pyramid scheme expert could evaluate life insurance business model for features of pyramid scheme despite no prior experience with life insurance).

### E. Mr. Jessop's opinions on CMI are the product of reliable methodology.

In Section H of his report, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 6—Jessop Rpt. ¶¶137–148.) It is entirely baseless for Defendants to claim (Mot. at 12) that this opinion "required no more skill" than that of "an ordinary observer." Defendants focus only on Mr. Jessop's assessment of whether the CFLN field accurately described the audio content in the infringed work—the last step of his analysis. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶139); ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶¶140–145); and, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*id.* ¶146). This work plainly required specialized knowledge and technical skills. Taken as a whole and considered in context, Mr. Jessop's methodology and opinions require specialized knowledge and skills beyond the average juror. *Finley*, 301 F.3d at 1013 ("case law recognizes the importance of expert testimony when an issue appears to be within the parameters of a layperson's common sense, but in actuality, is beyond their knowledge").

### F. Mr. Jessop's testimony regarding ISRCs will assist the jury.

Defendants are also wrong to challenge Mr. Jessop's opinions regarding the prevalence and industry practice surrounding ISRCs. Mr. Jessop is literally one of the most knowledgeable experts in the world on these issues. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 6—Jessop

Rpt. ¶¶32–34, 165, 169–172) under 17 U.S.C. § 1202(b).

Defendants try to claim that none of this matters because derivative works are not protected by § 1202. Defendants unsuccessfully sought summary judgment on the same ground. [ECF 173 at 9.] And, as with their summary judgment arguments, the cases cited by Defendants (Mot. at 13) are irrelevant because they involve nonidentical derivatives or re-creations of copyrighted works.[16] This case involves either identical digital copies of Plaintiffs' original works appearing in YouTube videos without CMI (ISRC class) or YouTube actually removing identifying CMI (CLFN class). Both situations are cognizable under § 1202. *See GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 844 (N.D. Ill. 2019) (appearance of original artwork in online game without CMI was violation of § 1202).

Defendants' focus (Mot. at 13–14) on videos of orchestral performances that lack ISRCs also misses the mark. Ms. Schneider (and other putative class members) allege removal of ISRCs only for sound recordings of musical works that *do* have ISRCs.[17] Mr. Jessop's testimony is clearly relevant for those claims and Defendants' assertion (Mot. at 14) that "there is no evidence of even a single instance of anyone using Schneider's music in a video where the music carried an ISRC that the user failed to carry forward" ignores the record. Ms. Schneider testified that "on every recorded work of mine that would be put on YouTube, there would be an ISRC." (Ex. 4—Schneider Dep. 214:12–18). Further, Defendants disregard the testimony of *their own expert* that ISRC saturation is "in the range of 98%" and that there is no video editing software that retains ISRCs as a matter of course. (Ex. 3—Nuttall Dep. 203:16–205:12, 223:2–15.)[18] Whether

---

[16] *Kipp Flores Architects v. Pradera SFR*, 2022 WL 1105751, at *3 (W.D. Tex. Apr. 13, 2022) (floor plan drawings based on architectural plans); *Robert Stark Enters. v. Neptune Design*, 2017 WL 1345195, at *11 (N.D. Ohio Apr. 12, 2017) (CAD model of architectural plans); *Dolls Kill v. Zoetop Bus.*, 2022 WL 16961477, at *3 (C.D. Cal. Aug. 25, 2022) (recreated clothing design).

[17] All works at issue for Ms. Schneider's ISRC claims have been assigned an ISRC. (Ex. 11—Schneider Am. Resp. to Interrog. 9 at 14–18.) Plaintiffs' ISRC Class definition requires that a class member's "digital form sound recordings of musical works" "ha[ve] been assigned an International Standard Recording Code." [ECF 245 at 3–4.]

[18] The fact that Mr. Jessop downloaded an album with Ms. Schneider's music that lacked ISRC codes does not negate either his statement that she had procured ISRCs for this album (Ex. 1—Jessop Dep. 117:21–118:2), or his opinion that "in most cases" audio recordings have "comprehensive metadata" (*id.* 116:23–117:2).

Plaintiffs can prove that works were displayed on YouTube with their ISRCs removed is an issue for the jury, and Mr. Jessop's testimony will assist on that issue.[19]

### G. Mr. Jessop's hypothetical is relevant and helpful.

Mr. Jessop's use of a hypothetical will help the jury understand ▮▮▮▮▮▮ ▮▮▮▮▮▮ a topic which is foreign to the average juror. (Ex. 6—Jessop Rpt. ¶42, *see generally* ¶¶42–61.) This example is ▮▮▮▮▮▮ ▮▮▮▮▮▮ (*Id.* ¶43). Moreover, each element of the hypothetical explains an issue relevant to Plaintiffs' case: ▮▮▮▮▮▮ ▮▮▮▮▮▮ (*id.* ¶¶44–50); ▮▮▮▮▮▮ ▮▮▮▮▮▮ (*id.* at ¶¶51–56); ▮▮▮▮▮▮ (*id.* at ¶¶57–58); ▮▮▮▮▮▮ (*id.* at ¶58); ▮▮▮▮▮▮ (*id.* at ¶¶59–61).

Defendants are wrong that Mr. Jessop's hypothetical is irrelevant because, supposedly, "there is no evidence" that works were displayed on YouTube with the CLFN metadata or ISRC removed. (Mot. at 14–15.) That is false. (*See* Part II.F, above.) And ultimately, that is for the jury to resolve, and the relevance of the hypothetical will stand or fall accordingly. Finally, Defendants vastly underestimate the jury pool, as well as the Court, in arguing (Mot. at 15) that jurors will confuse the ▮▮▮▮▮▮ person in his example (Ex. 6—Jessop Rpt. ¶43) with Ms. Schneider, even in the face of whatever instruction the Court might deem appropriate.[20]

### CONCLUSION

Defendants' Motion to Exclude Dr. Winograd and Mr. Jessop should be denied.

---

[19] Defendants attack Mr. Jessop's opinions on what YouTube "'could,' 'should,' or 'ought' to do" regarding metadata practices. (Mot. at 10 n.3, 14 n.5; Ex. 6—Jessop Rpt. ¶¶24, 116–136.) These opinions relate to best practices and industry standards for metadata and whether YouTube conforms to them. Such testimony is admissible. *Sullivan*, 2022 WL 3716594, at *8 (allowing testimony on "industry best practices"); *Hangarter* 373 F.3d at 1017–18 (allowing testimony that "Defendants failed to comport with industry standards").

[20] Defendants' citation to 56 A.L.R.3d 300 (Mot. 15) is irrelevant. That authority relates to the proper scope of questioning in examining an expert, not on an expert's use of an illustrative.

Dated: March 17, 2023

Respectfully submitted,

/s/ *Philip Korologos*
Philip C. Korologos*
Joanna Wright*
Jeffrey Waldron*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
Randall P. Ewing, Jr.*
Ryan Z. Cortazar*
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
Steven M. Berezney, CA Bar #329923
Carol O'Keefe*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*