# EXHIBIT 3

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

\- - - - - - - - - - - - - - - - - - - - x

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

Plaintiffs,

Case No. 3:20-cv-04423-JD

-against-

YOUTUBE, LLC; and GOOGLE LLC;

Defendants.

\- - - - - - - - - - - - - - - - - - - - x

**CONFIDENTIAL**

Videotaped oral deposition of FRANCOIS-XAVIER NUTTALL, taken pursuant to notice, was held at the law offices of BOIES SCHILLER & FLEXNER LLP, 55 Hudson Yards, New York, New York 10001, commencing September 30, 2022, 9:03 a.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.

\- - -

MAGNA
LEGAL SERVICES



**APPEARANCES:**

KOREIN TILLERY, LLC
Attorneys for Plaintiffs
205 North Michigan, Suite 1950
Chicago, Illinois 60601
BY: CAROL O'KEEFE, ESQUIRE
GEORGE ZELES, ESQUIRE (Appearing telephonically.)
-and-
BOIES SCHILLER & FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, New York 10001
BY: PHILIP C. KOROLOGOS, ESQUIRE
DEMETRI BLAISDELL, ESQUIRE
WALESKA SUERO GARCIA, ESQUIRE
ROBERT DWYER, ESQUIRE

WILSON SONSINI GOODRICH & ROSATI
Attorneys for Defendants
650 Page Mill Road
Palo Alto, California 94304-1050
BY: ELI RICHLIN, ESQUIRE
KELLY KNOLL, ESQUIRE

ALSO PRESENT:

PAUL JESSOP

PAUL GLAUBERSON, Videographer
Magna Legal Services

**THE VIDEOGRAPHER:** We are now on the record.
This begins video No. 1 in the deposition of Francois-Xavier Nuttall in the matter of Maria Schneider, et al., versus YouTube, LLC et al., in the United States District Court, Northern District of California, 3:20-cv-04423-JD.
Today is September 30, 2022 and the time is 9:03 a.m.
This deposition is being taken at Boies Schiller Flexner LLP, 55 Hudson Yards, New York, New York.
The videographer is Phil Glauberson of Magna Legal Services and the court reporter is Leslie Fagin of Magna Legal Services.
Will counsel state their appearances and whom they represent, after which, the court reporter will swear in the witness.
**MR. KOROLOGOS:** Phil Korologos with Boies Schiller Flexner for the

plaintiffs and the punitive class.
MS. O'KEEFE: Carol O'Keefe of Korein Tillery for the plaintiffs and punitive class.
**MR. BLAISDELL:** Demetri Blaisdell, Boies Schiller Flexner for the plaintiffs and punitive class.
**MS. GARCIA:** Waleska Suero Garcia, Boies Schiller Flexner for the plaintiffs and punitive class.
**MR. RICHLIN:** Eli Richlin, Wilson Sonsini for the defendants and the witness and I'm joined by my colleague, Kelly Knoll.
I will note Paul Jessop is in the room and who is on the line right now?
**MR. KOROLOGOS:** George Zelcs.
**MR. ZELCS:** George Zelcs on behalf of the plaintiffs and the punitive class.
**MR. DWYER:** And Robert Dwyer on behalf plaintiffs and the punitive class.

F R A N C O I S - X A V I E R N U T T A L L, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:
EXAMINATION BY
**MR. KOROLOGOS:**
**Q. Good morning.**
A. Good morning, sir.
**Q. Have you been deposed before?**
A. Yes, I have, sir.
**Q. When was that?**
A. That was about 10 years ago.
**Q. Only one time?**
A. Yes, only one time.
**Q. What kind of case was that?**
A. That was a patent litigation.
**Q. That's the patent litigation you mention in your report?**
A. I do not recall mentioning that patent litigation.
**Q. Do you recall your report identifies that you acted as an expert witness in a patent litigation --**



A. I did, I did not mention which case.
**Q. What was the name of that case?**
A. I cannot specifically recall. It was 10 odd years ago.
**Q. Do you recall any of the parties?**
A. If I were provided the names, I may recall one of them.
**Q. You don't recall them sitting here now?**
A. I don't know.
**Q. Who retained you for that case?**
A. A U.S. based company called Macrovision.
**Q. Macrovision.**
**When would that have been?**
A. That would have been possibly 2002.
**Q. Was Macrovision a party to the patent litigation?**
A. Yes, they were the defendants.
**Q. Were they the sole defendant?**
A. I believe they were.
**Q. Do you recall what patent was involved?**

A. I could not specify the patent number.
**Q. What was the subject matter of the patent?**
A. The subject matter was about digital rights management platforms.
**Q. What jurisdiction had issue?**
A. I do not recall, sir.
**Q. Was it a European jurisdiction?**
A. The case was dealt with in Washington, D.C.
**Q. Was it a United States patent?**
A. I do not recall, sir.
**Q. Let me show you a document that's been marked as Plaintiffs' Exhibit 164.**
**(Plaintiffs' Exhibit 164, copy of Francois-Xavier Nuttall's expert report, marked for identification.)**
**Q. Is that a copy of your expert report in this case?**
A. It is, sir.
**Q. In preparation for your deposition today, have you had a chance to reread your report and its appendices since you signed it**

**on September 22nd?**
A. I have, sir.
**Q. And are there any corrections you wish to make to the report?**
A. I do not, sir.
**Q. Do you consider your report a complete statement of all of the opinions you will express in this case?**
A. I will say that all the opinions I have on the Jessop report are reflected in the document.
**Q. Are there any opinions other than your opinions with respect to the Jessop report that you intend to offer as an expert witness in this case?**
A. Not at this stage.
**Q. And do you consider your report to be a complete statement of the bases and reasons for your opinions as contained in the report?**
**MR. RICHLIN:** Objection as to form.
You can answer.
A. May I ask that you repeat the question, please, sir.

**MR. KOROLOGOS:** Can you read it back, please.
(Record read.)
A. I'm sorry, can you rephrase the question so I can understand it better.
**Q. Did you understand that in offering expert testimony in this case, you not only needed to disclose your opinions, but the bases and reasons for those opinions?**
**MR. RICHLIN:** Objection to form.
You can answer.
A. Yes, to that, I agree.
**Q. And does your report achieve that? In other words, we've established it has opinions in it. Is it a complete statement of the bases and reasons for your opinions?**
**MR. RICHLIN:** Objection to form.
A. I believe I've provided sufficient argumentation to support my opinions.
**Q. Are there any bases or reasons to support your opinions that you have not put in your report?**
**MR. RICHLIN:** Objection to form.
A. There may be additional arguments



that I will make today.
**Q. Anything else?**
A. No.
**Q. Are there any additional arguments beyond what's in your report that you have in mind at this time?**
A. No, not specifically.
**Q. If you look in your report on page 7, there is a paragraph 25.**
**Do you see that?**
A. Yes, I do see.
**Q. And your report states that transcoding is the common process of converting encoded audio and video data into a different encoding format that can work with services systems.**
**Do you see that?**
A. Yes, I do, sir.
**Q. And transcoding is a process that YouTube engages in on its YouTube platform, correct?**
A. Can you repeat the question.
**Q. Sure.**
**You understand that YouTube engages**

in transcoding?
A. Yes, I do.
**Q. What are the steps that YouTube follows in its transcoding process?**
**MR. RICHLIN:** Objection to form.
A. I'm not intimately aware of the exact procedure that YouTube uses for transcoding videos.
**Q. Even if you are not intimately aware, what are you aware of that YouTube does in its transcoding process?**
A. I'm only aware of the input information that is provided to YouTube and the output that YouTube uses.
**Q. When you say, the input information as provided to YouTube, you are talking about the uploaded video that a user on YouTube will send to YouTube to be transcoded?**
A. That is correct.
**Q. When you mention the output that YouTube uses, you are talking about what is streamed from the YouTube system after the transcoding process has taken place?**
A. That is correct.

**Q. So you are not aware of what transpires between those two events, the upload and when the video is transcoded and available for view?**
**MR. RICHLIN:** Objection to form.
**Q. Let me withdraw the question.**
**You are not aware of what transpires between the upload of the video from the user and when a URL is available for streaming after YouTube has engaged in the transcoding process, is that correct?**
**MR. RICHLIN:** Objection to form.
**Q. You can answer.**
A. I have an understanding of some different steps that are taken throughout the process, but I do not have the full knowledge of all the steps that are taken for the process.
**Q. When you say you have an understanding of some different steps that are taken, is that an understanding of steps that are taken by YouTube or just generally for transcoding?**
A. Both, sir.

**Q. What different steps are you aware of that are taken throughout the process?**
**MR. RICHLIN:** Are you asking about YouTube's process or the general process?
**MR. KOROLOGOS:** YouTube's process.
A. So two elements I will mention. First, as you may be aware, I was part of the YouTube music publishing team and to that extent, I've been exposed to some of the engineering information that YouTube uses internally, not intimately, but I have been made aware of; and, second, there are depositions from YouTube engineering team in the current document that provides more technical details about what is happening during the transcoding process.
**Q. When you -- let me withdraw that.**
**Anything else other than those two elements?**
A. I would have a third element is I have some expertise in the general video processing technologies, but they are not specific to YouTube, they are general

MAGNA LEGAL SERVICES



Page 202

by the user in connection with the upload?
MR. RICHLIN: Objection to form.
**Q. You can answer.**
A. I believe I responded before, the first process where the user has a manual control over the end user provided metadata, give them a chance to review and curate as necessary and the other process where it's embedded and annotative metadata, there is no way to verify or curate the information provided.
**Q. And the first process of user-entered metadata that you just talked about requires -- I'm sorry, the first process that relates to user-entered metadata relies on the user being willing to accurately enter the information, correct?**
A. I mean the expected behavior is to enter meaningful information and accurate, but, either way, it doesn't change anything. If somebody is mischievous, he will do it any way he want, the best we can do is put some control over it.
**Q. Let's talk about ISRC codes.**

Page 203

MR. RICHLIN: If you are going into a new area, we've been going about an hour. Do you want to take five?
THE VIDEOGRAPHER: This will end video 5. The time is 4:34.
(Recess.)
THE VIDEOGRAPHER: We are back on the record at 4:56. This will begin video 6.
**Q. Mr. Nuttall, let's turn to ISRC codes and you have a section of your report that starts at paragraph 37 about ISRC, right?**
A. That is correct.
**Q. In paragraph 42, you state in your report that you are aware of no video editing software that automatically retained ISRC codes for music that may be a component of a video.**
**Do you see that?**
A. Yes, I do.
**Q. And that is the first stated reason for the support of the sentence prior to that, the last sentence in paragraph 41 which**

Page 204

says, Even if one were to accept that faulty premise of Mr. Jessop's opinion that you must conclude that ISRCs have been removed from such edited videos still is incorrect, is that right?
A. That is correct.
**Q. In paragraph 42, when you say you are not aware of any editing software that automatically retains ISRC codes for music that may be a component of a video.**
**Does that mean it's your understanding that all of the available video editing software removes ISRC codes for music that might be a component of a video?**
MR. RICHLIN: Objection to form.
A. I've never said that all video editing software. There might be some that I have eluded my research, but I have worked on quite a lot of different editing software.
As I said before, I also wrote some audio extraction tools and the retention of the ISRC is just not present in all those processes.
**Q. So another way to ask this would be**

Page 205

to say, am I correct that your -- let me withdraw that.
Am I correct that -- first of all, are you aware of a lot of video editing software, correct?
A. That is correct.
**Q. Of all the video editing software you are aware of, none of that software retains ISRC codes for music that may be a component of a video?**
A. That's correct.
**Q. And how long have you had that understanding?**
A. Since I edited video content, 20 odd years ago.
**Q. And presumably your knowledge base of different video editing software has grown over the past 20 years as you used different products?**
A. Definitely.
**Q. So that's something you were aware of when you worked at Google, is that right?**
A. The video editing software was not part of my tasks with Google, that was only



personal experience.
**Q. But when you were at Google, you had that understanding?**
A. Yes.
**Q. Now, in that first sentence, you use the word automatically.**
**Do you see that?**
A. Correct.
**Q. What do you mean by that, the use of that term?**
A. For the ISRC to be present in the final version, there is a manual intervention required in order to enter the ISRC code manually.
**Q. Okay. In paragraph 42, you refer to FFmpeg.**
**Do you see that?**
A. That's correct.
**Q. And you state that YouTube's transcoding process is based on FFmpeg, is that correct?**
A. That is correct.
**Q. What is the basis of that understanding?**

A. It's recollection from my past work.
**Q. When you were at Google?**
A. When I was at Google.
**Q. Anything else?**
A. I believe, sorry to be imprecise, it is in the Foucu description.
**Q. Anything else?**
A. No.
**Q. It's your understanding that FFmpeg makes no use of and does not retain ISRC, as you say in the third sentence of paragraph 42, right?**
A. That is correct.
**Q. Do you know whether FFmpeg extracts any metadata and stores it anywhere?**
**MR. RICHLIN:** Objection to form.
A. What was the question?
**Q. Do you know whether FFmpeg extracts any metadata from sound recordings in the transcoding or editing process of a video?**
A. Yes.
**Q. And, yes, that it does extract that metadata?**

A. So let me be specific. FFmpeg has a -- first of all, FFmpeg is a video transcoding tool, but FFmpeg has a side library which is dedicated to metadata conversion and that library does not support ISRC in any way, shape or form. The reason being, that the metadata conversion tool can only support the most commonly used fields across all the formats and it is very seldom when the ISRC is supported and, therefore, it's not part of the MPEG metadata library.
**Q. Is that information about FFmpeg generally known to people that design transcoding processes?**
**MR. RICHLIN:** Objection to form.
**Q. You can answer.**
A. FFmpeg is a very well-documented open source software and the documentation on the metadata handling is part of the general documentation of FFmpeg.
**Q. Would that documentation include that FFmpeg does to the retain ISRC codes?**
A. That is correct.
**Q. What documentation is that?**

A. It's the module called FFmpeg metadata and it has the list of all the supported fields for every video format.
**Q. How would I find that?**
A. Google FFmpeg, you will find it right away.
**Q. In paragraph 43, you say, A platform like YouTube would have no way of knowing that metadata may or may not have been attached or added to components of a video prior to use of the video editing software.**
**Do you see that?**
**MR. RICHLIN:** I think you said that metadata. It's what metadata.
**MR. KOROLOGOS:** Thank you. I will withdraw that.
**Q. Mr. Nuttall, do you see paragraph 43?**
A. I do see paragraph 43.
**Q. It states, A platform like YouTube would have no way of knowing what metadata may or may not have been attached or added to components of a video prior to use of the**



of ISRCs in professionally recorded music was higher than 75 percent, would that change your opinion about whether it is well-known that the use of ISRCs is far from universal?

A. I will rephrase. Experimentally, I would say that the number is lower, meaning, that it would be less than 75 percent, and I would say even, hopefully, in the sense that ISRC has a limited range of combinations and if we were to expand ISRC to all exploitations of professionally recorded music, the numbering system would explode.

So if you start designing rules whereby every single piece of recorded music for television or for audio books or for podcast or all these other usages, you would not have been able to use the ISRC for that purpose.

**Q. So your belief is that it's less than 75 percent, is that what you are saying?**

A. My belief is that the audio files that get allocated an ISRC are less than 75 percent of all the audio files that are being used.

**Q. If someone you trusted to be accurate were to say that the coverage of ISRCs was higher than 75 percent, would that change your opinion?**

**MR. RICHLIN:** Objection. Which particular opinion?

**MR. KOROLOGOS:** The opinion that it is well-known that the use of ISRCs is far from universal.

A. I want to make sure it's well understood, the use of ISRCs for content available for consumption on digital platforms as pay services is very high, it is in the range of 98 percent.

What I'm saying here is that there is also a very large set of audio content that has been professionally recorded that is not necessarily eligible or does not require an ISRC.

**Q. How many ISRC codes have been used, do you know?**

A. One hundred and thirty-five million.

**Q. And it's a 12-digit code, is that**

**right?**

A. It's a 12 alphanumeric.

**Q. How many digits -- let me withdraw that.**

**How many different alphanumeric codes are possible for 12 alphanumeric places?**

A. I don't have the figure in mind.

**Q. But we can calculate it, right?**

A. We can calculate it, but it's not relevant because there are reserved values. There are fields that can only have a very limited number of values, so you have to take into account every single character and see how many values it can have.

I say that the ISRC has a limited span because the existing ISRC system has already been saturated in its existing syntax, an extension already been granted to allow for more numbers and we are not unlimited in the number of ISRCs that can be allocated.

**Q. What is the limit?**

A. Sorry?

**Q. What is the limit?**

A. In 20 years, we've saturated the existing syntax. Ten years ago, we've extended the syntax which would last us another 10 years, so we have to continue. If we completely change the syntax, then maybe we can go way further, but we lose completely the original design of the ISRC system.

**Q. Was the extension that you mentioned a change that lost the original design of the ISRC system?**

A. Yes, it has.

**Q. How?**

A. The origin of the ISRC, you can infer some knowledge based on the syntax of the ISRC.

As an example, the two first characters were an ISO 3166 country code and every country was allocated its country code, plus the rest. The three following digits were the registry codes where you can have quite a lot and then you have the year of publication or fixation.

So all these are constraints and



Witness: Francois-Xavier Nuttall — September 30, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

**Errata Sheet**

| **Page:Line** | **Change** | **Reason** |
|---|---|---|
| 20:25 | Replace <WinAMP> with <Winamp> | To correct transcription errors |
| 21:6 | Replace <ASFS 5> with <ASFS file> | To correct transcription errors |
| 21:8 | Insert <them> between <protected> and <from> | To clarify the record |
| 24:11 | Replace <not, it> with <not. It> | To correct transcription errors |
| 25:14 | Replace <functionalities,> with <functionalities.> | To correct transcription errors |
| 25:15 | Replace <the software> with <The software> | To correct transcription errors |
| 26:11 | Insert <,> after <players> | To correct transcription errors |
| 27:3 | Insert <,> after <processors> | To correct transcription errors |
| 28:13 | Replace <V-R-T-U-O-S-A> with <V-I-R-T-U-O-S-A> | To clarify the record |
| 29:8 | Replace <WinAMP> with <Winamp> | To correct transcription errors |
| 29:21-29:22 | Replace <AudioSoft secure a file system> with <AudioSoft Secure File System> | To correct transcription errors |
| 29:24 | Replace <WinAMP> with <Winamp> | To correct transcription errors |
| 38:23 | Insert <,> between <does> and <an audio> | To correct transcription errors |
| 38:25 | Replace <need, but does not need or> by <not read, but does not read or> | To clarify the record |
| 43:15 | Replace <that explain mainly> with <they explain -- mainly> | To correct transcription errors |
| 46:11 | Replace <itself, the picture, the audio, you> with <itself -- the picture, the audio; you> | To correct transcription errors |

| 46:13 | Insert <;> between <video> and <and> | To correct transcription errors |
|---|---|---|
| 60:16 | Replace <majority are actually> with <majority actually> | To clarify the record |
| 62:8 | Insert <to> between <as> and <what> | To clarify the record |
| 77:9 | Replace <it should> with <the “should”> | To correct transcription errors |
| 77:20 | Replace <they still> with <is still> | To correct transcription errors |
| 78:10 | Replace <wording, used must never> with <wording used, “must never”> | To correct transcription errors |
| 82:10 | Replace <less> with <rights> | To correct transcription errors |
| 83:14 | Replace <, it should be> with <website> | To clarify the record |
| 84:10 | Replace <audio video> by <audio visual> | To clarify the record |
| 84:16-84:17 | Replace <one, but last> with <next to last> | To clarify the record |
| 89:4 | Replace <Katherine> with <Catherine> | To correct transcription errors |
| 89:6 | Replace <Katherine> with <Catherine> | To correct transcription errors |
| 89:12 | Replace <concise> with <precise> | To correct transcription errors |
| 96:6 | Replace <Van Der> with <van der> | To correct transcription errors |
| 104:18 | Replace <other> with <“other” --> | To correct transcription errors |
| 104:20 | Replace <Elysee> with <Élysée> | To correct transcription errors |
| 105:4 | Replace <’98> with <’88> | To clarify the record |
| 105:18 | Replace <date> with <update> | To correct transcription errors |
| 108:13 | Replace <baccalaureat> with <baccalauréat> | To correct transcription errors |
| 108:14 | Replace <time, science> with <time: science> | To correct transcription errors |
| 108:18 | Replace <Elysee de Chanel> by <Lycée | To correct transcription errors |

Witness: Francois-Xavier Nuttall — September 30, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

| | international de> | |
|---|---|---|
| 109:6 | Replace <basic> with <basics> | To clarify the record |
| 109:21 | Replace <Elysee> by <the lycée> | To correct transcription errors |
| 112:6 | Replace <of> by <over> | To correct transcription errors |
| 117:16 | Replace <services, Mathematica> with <services. Mathematica> | To correct transcription errors |
| 117:18 | Replace <reserve and> with <research, and> | To correct transcription errors |
| 124:4 | Replace <IRAA> with <RIAA> | To correct transcription errors |
| 125:8-9 | Replace <of which ISWC, ISTC> with <including ISWC and ISTC> | To clarify the record |
| 128:8 | Replace <what to put you at the beginning> with <where to put you at the beginning> | To clarify the record |
| 129:3 | Insert <and> between <provided,> and <defining> | To clarify the record |
| 129:5 | Replace <claims, then> with <claims. Then> | To correct transcription errors |
| 129:6-129:7 | Replace <data, meaning, the activity on the platform, the streams and> with <data -- meaning, the activity on the platform, the streams -- and> | To correct transcription errors |
| 129:11-129:12 | Replace <those performing in mechanical rights> with <either performing or mechanical rights> | To clarify the record |
| 129:14 | Insert <and> after <functionally,> | To clarify the transcript |
| 129:15 | Replace <defined> with <define> | To clarify the transcript |
| 130:4 | Replace <fragment> with <fragmented> | To correct transcription errors |
| 130:9 | Replace <effective> with <respective> | To clarify the record |

| | | |
|---|---|---|
| 131:5 | Replace <published licenses,> with <publishers license> | To correct transcription errors |
| 131:20 | Replace <ISRC> with <ISWC> | To correct transcription errors |
| 135:4 | Replace <DSB> by <DSP> | To correct transcription errors |
| 142:19 | Replace <DSBs> by <DSPs> | To correct transcription errors |
| 148:4 | Replace <topic, security> with <topic. Security> | To correct transcription errors |
| 148:5 | Replace <high matter, computer> with <important matter. Computer> | To clarify the record |
| 168:18 | Replace <name, a clip> with <name – a clip> | To correct transcription errors |
| 168:19 | Replace <name, nothing in this definition hints me> with <name. Nothing in this definition hints to me> | To clarify the record |
| 169:20 | Replace <long> with <on> | To correct transcription errors |
| 169:20 | Replace <to 15,000 tags, 10, 15,000, 20,000 tags> with <to 10,000 tags -- 15,000 20,000 tags --> | To correct transcription errors and clarify the record |
| 178:5 | Replace <BCMI> with <CMI> | To clarify the record |
| 178:5 | Insert <for> between <is> and <rights> | To clarify the record |
| 178:6 | Replace <purposes for financial claims and this is> with <purposes -- for financial claims -- and this is> | To correct transcription errors |
| 178:9 | Replace <process is> with <processes> | To correct transcription errors |
| 180:10 | Replace <to> with <two> | To correct transcription errors |
| 189:6 | Insert <on> between <work> and <on> | To clarify the record |

| 190:13 | Insert <do> after <not> | To clarify the record |
|---|---|---|
| 193:24 | Replace <void> with <devoid> | To clarify the record |
| 199:24 | Replace <sentence> with <sense> | To correct transcription errors |
| 201:16 | Replace <scientific or research> with <scientific research> | To correct transcription errors |
| 202:6 | Insert <,> between <process> and <where> | To correct transcription errors |
| 202:8 | Replace <give> with <gives> | To correct transcription errors |
| 202:9 | Insert <,> between <process> and <where> | To correct transcription errors |
| 204:18 | Remove <I> after <that> | To correct transcription errors |
| 208:12 | Replace <MPEG> with <FFmpeg> | To clarify the record |
| 210:14 | Replace <or dramatically> with <automatically> | To correct transcription errors |
| 210:16 | Replace <floor> with <tool> | To correct transcription errors |
| 218:9 | Replace <that, A,> with <that, first,> | To clarify the record |
| 218:10 | Replace <and; second, that> with <and, second, that> | To correct transcription errors |
| 220:3 | Replace <expectation> with <exploitation> | To correct transcription errors |
| 227:6-227:7 | Replace <an as easy> with <as easy a> | To clarify the record |
| 228:21 | Replace <IRAA> with <RIAA> | To correct transcription errors |
| 236:10 | Replace <content, trying to persuade you> with <content. I'm trying to persuade YouTube> | To correct transcription errors |
| 236:12 | <YouTube, it's very> with <YouTube. It's very> | To correct transcription errors |

Witness: Francois-Xavier Nuttall — September 30, 2022 Deposition
*Schneider v. YouTube, LLC,* No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

FXN Subject to the above changes, I certify that the transcript is true and correct.

__________ No changes have been made. I certify that the transcript is true and correct.

____________________ November 4th 2022
(signature) (date)

Witness: Francois-Xavier Nuttall — September 30, 2022 Deposition
*Schneider v. YouTube, LLC,* No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

ACKNOWLEDGMENT OF DEPONENT

I, Francois-Xavier Nuttall, do hereby certify that I have read and examined the foregoing testimony, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

(signature)

November 4th 2022
(date)