George A.  Zelcs*
  gzelcs@koreintillery.com
Randall P.  Ewing, Jr.*
  rewing@koreintillery.com
Ryan Z.  Cortazar *
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M.  Tillery*
  stillery@koreintillery.com
Steven M.  Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe*
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St.  Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C.  Korologos*
  pkorologos@bsfllp.com
Joanna Wright*
  jwright@bsfllp.com
Jeffrey Waldron*
  jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS' PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER**<br><br>Judge: Hon. James Donato<br><br>Date:  April 13, 2023<br>Time:   10:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.      DR. COWAN'S OPINIONS ARE ADMISSIBLE. ..................................................... 1

        A.   Dr. Cowan Provided Reliable Estimates of Minimum Floors for Each
             Class. ................................................................................................................ 1

        B.   Dr. Cowan crafted reliable methodologies to identify class members. ........ 4

        C.   Although He Does Not Name Them, Dr. Cowan's Methodologies to
             Estimate Class Size Necessarily Identify Class Members ........................... 6

        D.   Dr. Cowan Has Suitable Background and Expertise to Render His
             Opinions. ......................................................................................................... 7

II.     DR. SINGER'S OPINIONS ARE RELIABLE AND CONSISTENT
        WITH PLAINTIFFS' THEORIES OF LIABILITY ..................................................... 7

        A.   Dr. Singer's Model Does Not Require Dr. Cowan's Identification or
             Estimation of the Number of Members of Each Class. .................................. 9

        B.   Dr. Singer's Assumption Regarding the Relationship Between
             Infringing Material and Watch Time is Reliable and Supported. .................. 10

        C.   Dr. Singer's Model Calculates Specific Revenues Caused by
             Infringing Content. ......................................................................................... 12

        D.   Dr. Singer's Model Fits Plaintiffs' Theory of Liability ............................... 13

CONCLUSION ...................................................................................................................... 15

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER

# TABLE OF AUTHORITIES

**Cases**

*Brickman v. Fitbit, Inc.*,
  2017 WL 5569827 (N.D. Cal. Nov. 20, 2017) .................................................................. 4

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...................................................................................... 13

*Brown v. Google*,
  2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................................................ 13

*Bumpus v. Realogy Brokerage Group LLC*,
  2022 WL 867256 (N.D. Cal. Mar.  23, 2022) ................................................................. 6

*Chavez v. Blue Sky Nat. Beverage Co.*,
  268 F.R.D. 365 (N.D. Cal. 2010) ................................................................................... 2

*Chinitz v. Intero Real Estate Services*,
  2020 WL 7042871 (N.D. Cal. Dec. 1, 2020) .................................................................. 2

*Controversy Music v. Shiferaw*,
  2003 WL 22048519 (N.D. Cal. 2003) ............................................................................ 9

*Crunchyroll, Inc. v. Pledge*,
  2014 WL 1347492 (N.D. Cal. Mar. 31, 2014) .............................................................. 14

*Daubert v. Merrell Dow Pharmaceuticals*,
  43 F.3d 1311 (9th Cir.1995) ........................................................................................... 1

*Day v. GEICO Cas. Co.*,
  2022 WL 16556802 (N.D. Cal. Oct. 31, 2022) .............................................................. 3

*DZ Reserve v. Meta Platforms, Inc.*,
  2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ............................................................... 10

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ...................................................................................... 12

*Fahmy v. Jay Z*,
  2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ............................................................... 3

*Flo & Eddie v. Sirius XM Radio*,
  2015 WL 4776932 (C.D.  Cal. May 27, 2015) ................................................................ 6

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
  772 F.2d 505 (9th Cir. 1985) ................................................................................... 8, 15

*Goodworth Holdings Inc. v. Suh*,
  239 F. Supp. 2d 947 (N.D. Cal. 2002) ........................................................................... 3

*Hall v. City of Fairfield*,
  2012 WL 1155666 (E.D. Cal. Apr. 5, 2012) ................................................................... 3

iii

*Idema v. Dreamworks*,
  90 F. App'x 496 (9th Cir. 2003) ............................................................. 6

*In re Citimortgage, Inc. Home Affordable Modification Program Litig.*,
  2013 WL 8844095 (C.D. Cal. Oct. 7, 2013) ............................................. 11

*Krommenhock v. Post Foods*,
  334 F.R.D. 552 (N.D. Cal. 2020) .............................................................. 7

*Laughing Rabbit, Inc.  v. Laser Bonding Tech., Inc.*,
  2023 WL 1991640 (W.D. Wash. Feb. 14, 2023) ...................................... 15

*Los Angeles News Serv. v. Reuters Television Intern., Ltd.*,
  149 F.3d 987 (9th Cir. 1998) .................................................................... 15

*Maharaj v. California Bank & Tr.*,
  288 F.R.D. 458 (E.D. Cal. 2013) ............................................................... 3

*Michael Grecco Prods., Inc. v. Livingly Media, Inc.*,
  2021 WL 2546749 (C.D. Cal. Apr. 16, 2021) .......................................... 15

*Milan v. Clif Bar & Co.*,
  340 F.R.D. 591 (N.D. Cal. 2021) ............................................................... 4

*Oracle Am., Inc. v. Google Inc.*,
  2016 WL 1743154 (N.D. Cal. May 2, 2016) ............................................ 12

*Perez v. Rash Curtis & Assocs.*,
  2019 WL 1491694 (N.D. Cal. Apr. 4, 2019) ............................................ 13

*Polar Bear Productions, Inc. v. Timex Corp.*,
  384 F.3d 700 (9th Cir. 2004) ................................................................ 8, 12

*Ralston v. Mortgage Investors Group, Inc.*,
  2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) ......................................... 11

*Roditi v. New River Investments Inc.*,
  2022 WL 7454644 (S.D. Cal. Oct. 13, 2022) ........................................... 11

*Sapan v. Yelp, Inc.*,
  2021 WL 5302908 (N.D. Cal. Nov. 15, 2021) ........................................... 4

*Shropshire v. Canning*,
  809 F. Supp. 2d 1139 (N.D. Cal. 2011) ................................................... 14

*Sony Computer Entm't Am., Inc. v. Filipiak*,
  406 F. Supp. 2d 1068 (N.D. Cal. 2005) ..................................................... 9

**Statutes**

17 U.S.C. § 504 ........................................................................................ 8, 15

17 U.S.C. § 512 ............................................................................................. 6

**Other Authorities**

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Newberg and Rubenstein on Class Actions § 3:13 ........................................................... 2

**Rules**

Fed. R. Evid. 1006............................................................................................................... 9

Case No. 3:20-cv-04423-JD

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER

1

**INTRODUCTION**

2   Dr. Cowan is a noted expert in statistics and the application of statistical methodologies for

3 the extrapolation of samples and statistical matching and has proposed reliable methodologies to

4 accurately populate the four proposed classes.  Dr. Singer is a respected economist who has

5 published extensively in legal and economic journals and has developed a reliable methodology to

6 calculate the amount of revenues attributable to Defendants' unlawful conduct.  Defendants seek

7 to exclude the testimony of Drs. Cowan and Singer by mischaracterizing the nature of their

8 testimony, imposing invented requirements, and bootstrapping Defendants' own fact discovery

9 deficiencies.[1]  Defendants have couched their motivations in assertions about timeliness,

10 reliability, and methodology.  But their real concern is to the *outputs* of Dr. Cowan and

11 Dr. Singer's methodologies—███████████████████████████████

12 ████████████████████████████.  Since the "test under *Daubert* is not the

13 correctness of the expert's conclusions but the soundness of his methodology," *Daubert v. Merrell*

14 *Dow Pharmaceuticals*, 43 F.3d 1311, 1318 (9th Cir.1995), and since the methodologies of

15 Dr. Cowan and Dr. Singer are sound and far from "junk science", Defendants' motion to exclude

16 should be denied.  Defendants will have the opportunity to vigorously cross-examine Dr. Cowan

17 and Dr. Singer, but the jury should not be precluded from hearing their testimony.  Plaintiffs are

18 prepared to engage in a concurrent expert witness proceeding if the Court would find that useful.

19

**ARGUMENT**

20 **I.**  **DR. COWAN'S OPINIONS ARE ADMISSIBLE.**

21   **A.** **Dr. Cowan Provided Reliable Estimates of Minimum Floors for Each Class.**

22   Membership in the Infringement Classes is predicated on the filing of two Takedown

23 Notices.  ████████████████████████████████████████

24

25

_____

26 [1] "Except for good cause, no item shall be received as case-in-chief evidence if the proponent
failed to produce it in response to a reasonable and proper discovery request covering the item,

27 regardless of whether the other party moved to compel production. "  Standing Order for Civil
Cases before Judge Donato ¶ 6; *see also* 7/7/22 Hrg. Trs. at 19:23–20:1.

28

1

██████████████████████████ [2] (Ex. 4—Cowan Rpt. ¶ 14(d).)[3]  Accordingly, in

his Report, Dr. Cowan disclosed the *methodology* he would use to identify class members and

estimate the size of each of the classes, once he had access to the complete information in

Defendants' Takedown Notice and ISRC and CLFN metadata databases.[4]  This approach is

perfectly consistent with the legal requirements for this stage of the case, which do not require that

Plaintiffs identify all class members or allege the precise size of the classes.  *See* Newberg and

Rubenstein on Class Actions § 3:13 (6th ed.) ("it is well settled that a plaintiff need not allege the

exact number or specific identity of proposed class members"); *Chinitz v. Intero Real Estate*

*Services*, 2020 WL 7042871, at *3 (N.D. Cal. Dec. 1, 2020) ("any issue about identifying who is

entitled to recover is handled at the claims administration stage of the case"); *see also Chavez v.*

*Blue Sky Nat. Beverage*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (at class certification, it is "not

necessary to show that [plaintiff's damages] method will work with certainty").

Dr. Cowan has unambiguously opined about minimum class size.  When Defendants'

counsel asked Dr. Cowan during his deposition for "the number of infringing videos or infringed

works associated with each class," he identified (at a 95% confidence level) a lower bound

estimate for each class: (i) a minimum of 10,000 members of the U.S. Registered Works Class; (ii)

a minimum of 1,000 members of the Foreign Unregistered Works Class; (iii) a minimum of 1,000

members of the ISRC Class; and (iv) a minimum of 2,000 members of the CLFN Class.  (Ex. 1—

Cowan Dep. 147:20–148:8.)  Dr. Cowan further testified that this lower bound was a "robust

---

[2] Defendants have conceded that production of this entire database may be necessary following a
decision on Plaintiffs' motion for class certification.  (Ex. 8—1/14/22 Ltr. at 6 ("we agree that it is
appropriate to revisit these requests [for Takedown Notice data] once the court rules on class
certification.")); (Ex. 9—10/25/22 Ltr. at 2 ("If a copyright infringement class is certified, we
agree to revisit" Plaintiffs' request for identifying information about Takedown Notice
claimants)).

[3] All numerical exhibits cited herein ("Ex. ___") are attached to the Declaration of Jeffrey Waldron
in Support of Plaintiffs' Opposition to Defendants' Motion to Exclude Cowan and Singer.

[4] Without access to the full databases, ████████████████████████████████████████
████████████.  (Ex. 4—
Cowan Rpt. ¶¶ 50–64.)  ████████████████████████████████████
████████████████████████████████████ (*Id.* ¶ 60.)

2

1  estimate." (*Id.* 182:19–183:7.)[5]  Although Defendants complain that this analysis was not in Dr.

2  Cowan's report, an expert may supplement and elaborate upon his report during a deposition.

3  *Fahmy v. Jay Z*, 2015 WL 5680299, at *6 (C.D. Cal. Sept. 24, 2015); [6] [*see also* ECF 272 at 2–3.]

4  Here, Defendants cannot claim prejudice when they had the opportunity to question Dr. Cowan

5  about his estimates of class size floors (and did so at length (*see* Ex. 1—Cowan Dep. 146:22–

6  149:20)).  *Goodworth Holdings. v. Suh*, 239 F. Supp. 2d 947, 967 (N.D. Cal. 2002) (non-

7  disclosure of defendant's witness was harmless where plaintiff had opportunity to depose that

8  witness).

9        In addition, Defendants' rebuttal expert, Mr. Greg Halm, had the opportunity to critique

10 and rebut those estimates during his own subsequent deposition.  And, of course, Defendants have

11 always had everything they need to test—and try to counter—Dr. Cowan's lower bound estimates

12 since those estimates are based on data in their own possession.  *Maharaj v. California Bank &*

13 *Tr.*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (failure to disclose expert analysis was harmless since it

14 was based on data "already in Defendant's possession"); *Day v. GEICO Cas. Co.*, 2022 WL

15 16556802, at *4 (N.D. Cal. Oct. 31, 2022) (denying motion to exclude plaintiff's expert at class

16 certification where "some of the information required to further develop the model is in

17 [defendant's] hands").  Defendants' failure to do so, or to raise any criticism of Dr. Cowan's

18 analysis of the Takedown Notice data, was a strategic choice.  (Ex. 2—Halm Dep. 42:3–8 ("I was

19 not asked to undertake my own effort to independently develop a methodology to identify class

20 members or estimate the size of the classes and so I did not do that.").)

21       Defendants suggest (Mot. at 6–7) that an expert's analysis must be fully performed prior to

22 class certification.  But as this Court has recognized, no such requirement exists.  In *Milan v. Clif*

---

23 [5] These lower bound estimates establish that numerosity is satisfied for class certification.  [ECF

24 No.  245 at 4–5.]  Defendants previously offered to stipulate that numerosity is satisfied.  [*Id.* at 4 n.3.]  Defendants have not suffered any prejudice from the timing of Dr. Cowan's analysis of

25 numerosity.  *See Utne v. Home Depot U.S.A., Inc.*, 2022 WL 4139256, at *4–5 (N.D. Cal. May 9, 2022) ("Nondisclosure is harmless if it does not prejudice the other party.").

26

27 [6] "Rule 26(a)(2)(B) 'does not limit an expert's testimony simply to reading his report' and 'contemplates that the expert will supplement, elaborate upon, and explain his report in his oral

28 testimony.'" (quoting *Hall v. City of Fairfield*, 2012 WL 1155666, at *4 (E.D. Cal. Apr. 5, 2012).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER

*Bar & Co.*, 340 F.R.D. 591 (N.D. Cal. 2021) (Donato, J.), the Court certified a class related to alleged misrepresentations and omissions regarding Clif Bar's health dangers.  There, the expert's proposed damages model—which had not yet been completed—was deemed adequate.  *See id.* at 600–01.  Likewise, in *Brickman v. Fitbit*, the Court certified consumer classes based on alleged misrepresentations of the sleep-tracking functionality of Fitbit.  2017 WL 5569827, at *9 (N.D. Cal. Nov. 20, 2017) (Donato, J.).  The Court held that Plaintiffs' *intention* to rely on Fitbit documents and witnesses to show damages, and thus meet Fitbit's criticism of their expert's damages model, was sufficient at the class certification stage.  *Id.* at *7.[7]

**B.  Dr. Cowan crafted reliable methodologies to identify class members.**

Defendants' argument (Mot. at 6) that Dr. Cowan "failed to describe the methodology to ascertain class members with any specificity" is without merit.  ████████████████ ████████████ (Ex. 4—Cowan Rpt. ¶¶ 79–98), and Defendants could have questioned him about them at deposition.  (*See, e.g.*, Ex. 1—Cowan Dep. 176:10–177:16.)  While Defendants claim Dr. Cowan's report is a "work in progress" (Mot. at 6), Dr. Cowan's *methodologies* are complete.  ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (*See* Ex. 4— Cowan Rpt. ¶¶ 12–15.)

The methodologies used by Dr. Cowan to identify class members are straightforward.  For the Infringement Classes, membership is predicated on the filing of two Takedown Notices for the same copyrighted work.  ████████████████████████████████████████████████████

---

[7] Defendants' reliance (Mot. at 7) on *Sapan v. Yelp*, 2021 WL 5302908 (N.D. Cal. Nov. 15, 2021), is misplaced.  There, the expert submitted a declaration after discovery and expert proceedings had ended, but did not have adequate data for the declaration since plaintiff "dropped the ball during discovery[,]"  *Id.* at *1–2.  The Court found that the expert declaration was not "tethered to the evidence in [the] case" and the expert "did not do any work, or offer any opinions, based on the record developed during the litigation."  *Id.* at *3.  In contrast, Dr. Cowan submitted a timely expert report; Plaintiffs diligently pursued the relevant Takedown Notice data, including through numerous meet-and-confers and the filing of six motions to compel [ECF Nos. 70, 80, 95, 147, 156, 199]; and Dr. Cowan's methodology is tied to the record evidence.

1          ████████████████████████████████████████████ (Ex.

2    4—Cowan Rpt. ¶ 79d.) █████████████████████████

3    ███████████████████████████████████████████████████

4    ████████████ (*Id.* ¶ 85.) █████████████████████████

5    ███████████████████████████████████████████████████

6    █████████████████████████████████████ (*Id.* ¶ 86.)

7          Dr. Cowan uses similar methodologies for the CMI classes. █████████

8    ██████████████████████████████████████████████

9    ███████████████████████████████████████████████████

10   ███████████████.[8]  (*Id.* ¶ 93.) ██████████████████

11   ████████████████████████████████████████████████████

12   ███████████████████████████████████████████

13   ███████████████████████████████████████████████████

14   ██████████████████████████ (*Id.* ¶ 96.)

15          Defendants attack Dr. Cowan's methodology as "rudimentary," (Mot. at 7), but do not

16   offer any alternatives for the filtering and matching of this data.[9] █████████████

17   ███████████████████████████████████████████████████

18   ███████████████████ This Court approved a similar, "not particularly complicated" process

19   in *Bumpus v. Realogy Brokerage*, 2022 WL 867256, at *3 (N.D. Cal. Mar.  23, 2022) (Donato, J.).

20   ─────────────────────

21   [8] ███████████████████████████████████████████

22   ███████████████████████████████████ (Ex. 4—Cowan Rpt. ¶ 56.)

23   [9] Defendants also complain that Dr. Cowan supposedly failed to indicate what tests he performed
     to validate his methodologies and did not adequately describe his filtering and cleaning methods.
24   (Mot. at 3.)  But, as explained throughout his report, ███████████████████
     ████████████████
25   ██████████████ (Ex. 4—Cowan Rpt. ¶¶ 14, 93). ████████████████
26   ████████████████████████████████████████████
27   ████████████████████ (*id.* Section VII.A.1), ██████████████
     ████████████████████████ Defendants had ample opportunity
28   to question Dr. Cowan on these topics if they believed his explanations were unclear.

                                             5
                    PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE PLAINTIFFS'
                      PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER

1       Defendants' arguments regarding the unreliability of the data used also fail.  (Mot. at 7–

2   10.)  ███████████████████████████████████████████████████

3   ████████████████████████████████████ *See Idema v. Dreamworks*, 90 F. App'x 496,

4   498 (9th Cir. 2003) (judicial notice for copyright registrations); *Flo & Eddie v. Sirius XM Radio*,

5   2015 WL 4776932, at *7–8 (C.D.  Cal. May 27, 2015) (approving use of SoundExchange database

6   to identify class members in copyright class action).  Defendants even argue that *their own*

7   Takedown Notice database may not accurately identify copyright owners, since the DMCA does

8   not require a complaining party to list the copyright owner in a notice.  (Mot. at 8 (citing 17

9   U.S.C. § 512(c).)  ███████████████████████████████

10   ████████████████████████████████████████████

11   ████████████████████████████████████████████

12   ████████████████████████████████████████████████

13   ███████████████████████  (Ex. 4—Cowan Rpt. ¶¶ 36–39; Ex. 11—Web Form

14   Takedown Notice.)  YouTube extensively vets the Takedown Notices it receives, weeding out

15   fraudulent infringement.  [ECF 245 at 8–10; ECF 272 at 5–6.]  The data and methodology

16   proposed by Dr. Cowan is not "junk science" that warrants exclusion.

17       **C.   Dr. Cowan's Methodologies to Estimate Class Size Necessarily Identify Members**

18       Defendants criticize Dr. Cowan because his report did not "*identify a single class*

19   *member*."  (Mot. at 1, 4 (emphasis added); *see also* Ex. 6—Halm Rpt. ¶ 14(a), (a)(i), and (a)(ii).)

20   Defendants have not identified any authority that even hints at such a requirement, and

21   Defendant's rebuttal expert, Mr. Halm, conceded that it was not part of Dr. Cowan's assignment to

22   do so.  (Ex. 2—Halm Dep. 13:19–14:24 ("I don't know whether he was given that specific

23   instruction, one way or the other."); *id*. 31:2–11 ("the assignment he lays out in the beginning of

24   his report has nothing to do with identifying any class members").)  Indeed, because Defendants

25   produced only a small portion of the data that Plaintiffs will need to fully populate the classes,

26   there would be no added utility to naming individual claimants in Dr. Cowan's report.

27   ████████████████████████████████████████

28

1   ███████████████████████████████   (Ex. 4—Cowan Rep. ¶¶ 1–10.)  Dr. Cowan tested those

2   methodologies and confirmed that they were universally applicable across the classes.  Further, as

3   Dr. Cowan testified, the matching process used to identify and quantify the four classes

4   necessitated the identification of individual class members—without naming or listing them.

5   (Ex. 1—Cowan Dep. 141:11–25; 142:7–143:4.)  The matched and identified class members were

6   totaled and statistical methods were applied to extrapolate the minimum lower bound estimates.

7   As Mr. Halm conceded, Dr. Cowan never indicated that he was "unable" to identify class

8   members.  (Ex. 2—Halm Dep. 28:5–29:5.)

9         **D.   Dr. Cowan Has Suitable Background and Expertise to Render His Opinions.**

10   ████████████████████████████████████████████████████

11   █████████████████████████   (Ex. 4—Cowan Rpt. ¶ 1.)  Dr. Cowan is highly qualified

12   to do so.  █████████████████████████████████████████████

13   ███████████████████████████████████████   (*Id.* ¶ 16.)  ████████████

14   ███████████████████████████████   (Ex. 1—Cowan Dep. 110:13–16.)

15   █████████████████████████████████████

16   ████████████████████████████   (Ex. 4—Cowan Rpt. ¶ 17, App'x 2 at

17   1–2.)  ██████████████████████████████████████████

18   ████████████████████████████████████   (Ex. 1—Cowan Dep.

19   9:7–12; 106:11–22.)  Defendants argue that Dr. Cowan's lack of experience with the *YouTube*

20   *platform* undermines his qualifications.  But the law does not contemplate such a narrow concept

21   of expertise.  *See Krommenhock v. Post Foods,* 334 F.R.D. 552, 585–86 (N.D. Cal. 2020)

22   (denying motion to exclude where expert was qualified to opine on the subject for which he was

23   retained (pharmacology and pharmaceutical sciences) but lacked prior experience in the more

24   particularized subject area of the litigation (sugar content in foods)).

25   **II.    DR. SINGER'S OPINIONS ARE RELIABLE AND CONSISTENT WITH**
     **PLAINTIFFS' THEORIES OF LIABILITY.**

26         As Dr. Singer explained in his report, the profits that YouTube earns from the presence of

27   infringing content on its platform falls into two categories:  █████████████████████

28

7

1

2

3

4                                                          (Ex. 5—Singer Rpt. ¶ 3.)

5

6

7

8              (*Id.* ¶ 68.)

9

10

11             (*Id.* ¶ 104.)

12

13

14             (*Id.* ¶ 20.)



15       Dr. Singer's model is consistent with Ninth Circuit law, which recognizes that, under 17

16   U.S.C § 504(b), a plaintiff has a right to recover both "'direct profits'—those that are generated by

17   selling an infringing product—and 'indirect profits'—revenue that has a more attenuated nexus to

18   the infringement." *Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir.

19   2004) (citing 17 U.S.C. § 504(b)); *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,

20   772 F.2d 505, 518–19 (9th Cir. 1985) (finding trial court's award of profits to be "grossly

21   inadequate" and remanding to re-determine profits award, which may include non-speculative

22   indirect profits).  Dr. Singer's estimation of Defendants' revenues is also relevant to the issue of

23   statutory damages, which class members in three of the four proposed classes may elect, in an

24   amount to be determined by the jury.  17 U.S.C. § 504(c).  The factors that the jury may consider

25   to determine the amount of a statutory damages award include "profits reaped by defendant in

26   connection with the infringement" and the "goal of discouraging wrongful conduct."  *Sony*

27   *Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1074–75 (N.D. Cal. 2005) (quoting

28

8

1    *Controversy Music v. Shiferaw*, 2003 WL 22048519, at *2 (N.D. Cal. 2003)).

2    **A.    Dr. Singer's Model Does Not Require Dr. Cowan's Identification or
          Estimation of the Number of Members of Each Class.**

3

4           Defendants contend that Dr. Singer's damages model should be excluded because it

5    depends on Dr. Cowan's identification and estimation of the number of class members whose

6    works were infringed (Mot. at 1, 11–12), and that because the Court should exclude Dr. Cowan's

7    opinion, Dr. Singer's testimony should also be excluded. (*Id.* at 12). Defendants' argument fails

     for two independent reasons.

8

9           *First*, as explained above, Dr. Cowan's opinions regarding the identification and

     estimation of the number of class members are admissible.

10

11          *Second*, Dr. Singer's damages model does not require reliance on Dr. Cowan's opinions.

     Dr. Singer has not yet estimated actual damages. Rather, he created a model that shows ███

12

13   ████████████████████████████████████████████████████████████

14   ███████████ (Ex. 3—Singer Dep. 126:22–127:15.) ████████████████

15   ████████████████████████████████████████████████████████████

16   ████████████████████████████████████████

17   ██████████████████████████████ (*Id.* 151:7–12; 156:23–157:3.)

18   Dr. Singer had anticipated that his model would use Dr. Cowan's calculations of the number of

     class members as an input for the percentage of YouTube videos that infringe class members'

19   copyrights during the merits phase. (*Id.* 124:7–19; 151:13–152:5.) ████████████

20   ████████████████████████████████████████

21   ███████████████ *See above* n.4 (citing Ex. 4—Cowan Rpt. ¶¶ 50–64.) When Defendants

22   provide complete takedown notice data, Plaintiffs will have no need to rely on a statistical estimate

23   of the class size. At that point, Dr. Cowan, Dr. Singer, a summary witness pursuant to Fed. R.

24   Evid. 1006, or the class administrator can perform the requisite data matching and filtering

25   required to identify and quantify class members and infringing works. In any event, the source of

26   the input for the number of YouTube videos that infringe class members' copyrights is immaterial

27   to the adequacy of Dr. Singer's methodology for establishing and calculating direct advertising

28

1    revenues and indirect network effect revenues.  Indeed, Defendants' authority underscores that an

2    expert can rely on inputs not mentioned in the expert report.  *See DZ Reserve v. Meta Platforms*,

3    2022 WL 912890, at *8 (N.D. Cal. Mar. 29, 2022) (Donato, J.) ("Any portion of Dr.

4    Roughgarden's opinions that is drawn on Mr. McFarlane's work is also excluded, *unless an*

5    *independent basis for it is demonstrated*" (emphasis added).).

6         **B.      Dr. Singer's Assumption Regarding the Relationship Between Infringing
7                   Material and Watch Time is Reliable and Supported.**

8         Defendants also wrongly criticize Dr. Singer's assumption that infringing content on

     YouTube is watched with the same frequency as non-infringing content.  (Mot. at 12.) ███

9    ███████████████████████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████ (Ex. 3—Singer Dep. 68:25–69:21.)[10]

12   ████████████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████████ (Ex. 3—

15   Singer Dep. 105:2–106:20; 112:13–113:1; *see also* 179:12–180:6 ████████████████

16   ████████████████████████████████████████████████████████████████████████████

17   ███████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████

19   Thus, contrary to Defendants' assertions, Dr. Singer's assumption that infringing content—on

20   average—is responsible for a proportional amount of watch time as compared with all videos on

21

22

23

24   ────────────────

     [10] If infringing content ████████████████████████████████████████████

25   █████████████████████████████████████████████████████████

26   ███████████████████████████████████████████████████████████████

27   ████████████████████████████████████████████████████████ (Ex. 3—Singer

     Dep. 68:25–69:21.)

28

1   the platform, is well supported and reasonable.[11]  (*Id.* 146:16–147:3.)

2          Defendants nevertheless attack Dr. Singer's assumption by arguing that in the limited

3   sample of data provided by YouTube, infringing content generated less revenue than non-

4   infringing content over a period of 90 days.  (Mot. at 13.)  But, as Dr. Singer testified, ███

5   ████████████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████  (Ex. 3—Singer

7   Dep. 119:12–121:5; 173:12–175:11.)  Regardless, Defendants' argument goes to the weight of Dr.

8   Singer's testimony, not its admissibility, because so long as a methodology "constitutes a

9   'reasonable method for calculating damages on a class-wide basis,'" "factors or variables that

10  remain unaccounted for" do not render an opinion inadmissible.  *Ralston v. Mortgage Investors

11  Group, Inc.*, 2011 WL 6002640, at *9 (N.D. Cal. Nov. 30, 2011).  "[A]ny concern as to the

12  underlying data itself can be the subject of cross examination by counsel."  *Roditi v. New River

13  Investments Inc.*, 2022 WL 7454644, at *8 (S.D.  Cal. Oct. 13, 2022).  Put simply, if Defendants

14  believe they can support their criticisms, let them try their hand at cross examination.

15         Defendants separately criticize Dr. Singer for failing to consider whether a user would

16  watch a different video if an infringing video were removed.  (Mot. at 13 n.6.)  Whether this is

17  true is irrelevant to the calculation of disgorgement damages in a copyright action.  Presumably

18  every infringer could make money by selling or offering non-infringing content.  But the "idea

19  behind Section 504(b) is to hand over to the copyright owner the actual profits made by the

20  infringer using his copyrighted work.  If a copyright infringer could avoid disgorgement by

21  ─────────────────────

    [11] ████████████████████████████████████████  (*see* Ex. 7—Resp. to Interrog. No. 16 at 4), it has

22  not put forward any evidence showing that Dr. Singer's assumption is wrong.  ███████████████

23  ████████████████████████████████████████████████████████████  (Ex. 3—

24  Singer Dep. 143:11–144:17).  Defendants' arguments amount to an improper attempt to exclude
    Dr. Singer for not having perfect data when YouTube is the party that failed to produce that data.

25  *See In re Citimortgage, Inc. Home Affordable Modification Program Litig.*, 2013 WL 8844095, at
    *2 (C.D. Cal. Oct. 7, 2013) ("no data set is perfect;" the "question under *Daubert* is not whether

26  an expert's report relies on and analyzes perfect data—if that were the inquiry, there would be no
    data-based expert testimony in federal court—but rather whether an expert's report is sufficiently

27  reliable to warrant consideration").

28

1  claiming he could have substituted some non-infringing alternative, the infringer would rarely be

2  discouraged from infringing and the purpose of the disgorgement remedy would be eviscerated."

3  *Oracle Am. v. Google*, 2016 WL 1743154, at *4 (N.D. Cal. May 2, 2016).  And, on the facts here,

4  ███████████████████████████████████████████████████████████████████

5  ███████████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████████████████████████

7  ██████████████████  (Ex. 3—Singer Dep. 188:2–189:13.)

8      **C.   Dr. Singer's Model Calculates Specific Revenues Caused by Infringing Content.**

9      Defendants also attack Dr. Singer's model for calculating damages in the aggregate,

10  arguing that his calculations are "theoretical[]," involve "inconsequential" videos, and do not

11  involve "proof that a specific infringement *caused* an infringer to generate specific

12  revenue/profit."  (Mot. at 10 (emphasis in original).)  This argument is without merit.  █████

13  ████████████████████████████████████████████████████████████

14  ██████████████████████████████████████████████████████████████████

15  ███████████████████████████████████████████████████████████████████

16  ██████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  (Ex. 5—Singer Rpt. ¶ 3.) ██████████████████████████████████████████

19  ██████████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████████████████████

21  (*Id.* ¶ 68.)  In other words, Dr. Singer's model provides the causal connection between the specific

22  infringements (the videos that infringed class members' copyrights) and specific revenues that was

23  missing from the cases cited by Defendants.  *See Polar Bear Prods. v. Timex*, 384 F.3d 700, 710–

24  15 (9th Cir. 2004); *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).  Contrary to

25  Defendants' suggestion, Dr. Singer was not required to calculate damages on a video-by-video

26  basis.  His methodology appropriately estimates damages based on the causal link between the

27  aggregate videos that infringed class members' copyrights and YouTube's revenues.  Damages

28

1    may be apportioned to each class member in the allocation phase.[12]

2    ████████████████████████████████████████████████████████████████████

3    ███████████████████████████████████████████████████████████████ (*See*

4    Ex. 7—Resp. Interrog. No. 16 at 4.)  Given their choice not to create a record that includes this

5    information, there is no basis for YouTube's self-serving assertion or its suggestion that the videos

6    subject to takedown notices were "seldom viewed" or "never viewed at all."  (Mot. at 10.) ██████

7    ████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████

9    █████████████████████ (Ex. 3—Singer Dep. 116:7–117:23; 118:19–119:11.)  Moreover, Dr.

10   ████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████ *See* Section II.B, above.

12   Again, Defendants' criticisms of Dr. Singer's well supported assumptions at most go to the

13   weight, not the admissibility, of his testimony.  *See Brown v. Google*, 2022 WL 17961497, at *5

14   (N.D. Cal. Dec. 12, 2022) (denying a motion to exclude expert testimony because "'any arguments

15   that [an expert] based his opinions on an improper assumption go to the weight, not the

16   admissibility of the testimony'" (quoting *Perez v. Rash Curtis & Assocs.*, 2019 WL 1491694, at *3

17   (N.D. Cal. Apr. 4, 2019))).

18           **D.   Dr. Singer's Model Fits Plaintiffs' Theory of Liability.**

19           Finally, there is no merit to Defendants' claim that Dr. Singer's model fails to fit Plaintiffs'

20   theory of liability.  Defendants' cursory arguments do not show otherwise.

21           *First*, Defendants argue that Dr. Singer's model must exclude revenue from infringing

22   _____

23   [12] Defendants have no interest in whether each class member is compensated in accordance with
     the specific amount of profit generated from their copywritten work.  *Briseno v. ConAgra Foods,*

24   *Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) ("Where the only question is how to distribute damages,
     the interests affected are not the defendant's but rather those of the silent class members.").

25   However, that may be accomplished using YouTube's data. ████████████████████████
     ████████████████████████████████████████████████████████████████

26   [ECF 268-14 at ¶¶ 52–53.] █████████████████████████ (Ex. 7—Resp. Interrog. No. 16

27   at 4). ██████████████████████████████████████████████████████████

28   ████████████████████████████████████████ (Ex 3—Singer Dep. 221:11–
     222:25).

13

content that was not viewed because of Watch Next and Autoplay.  (Mot. at 14.)  But Plaintiffs have never taken the position that Watch Next and Autoplay are the only loci of infringing acts.  They contend only that WatchNext and Autoplay establish that YouTube is actively involved in the infringement of Plaintiffs' works.[13]

*Second*, Defendants incorrectly assert that Dr. Singer's model fails to account for the Court's January 5, 2023, summary judgment ruling holding that, for some works, claims for *direct* infringement are barred by licenses YouTube received from Plaintiffs.  (Mot. at 11 (citing ECF 222 at 13–15).)  As Defendants' argument concedes, this licensing defense does not insulate YouTube against claims of *vicarious* or *contributory* infringement for the very same uploads.  [*See* ECF 222 ("The TOS do not insulate YouTube from indirect infringement liability.").]  Thus, there was no reason for Dr. Singer to account for the dismissal of these claims in his model.  In any event, to the extent a license limits a class member's damages, that issue can be addressed through the claims administration process.  [*See* ECF 265 at 11-13; ECF 272 at 8-9.]

*Third*, Defendants wrongly argue that Dr. Singer's methodology does not account for the fact that some acts of infringement may have occurred "outside the U.S." and are therefore "not cognizable under the Copyright Act."  (Mot. at 15.)  But courts have found foreign videos that are uploaded to YouTube's servers in California are not "wholly extraterritorial" to the United States; these videos are thus subject to the Copyright Act because they are accessible, located, and/or viewed by viewers located in the United States.  *See Shropshire v. Canning*, 809 F. Supp. 2d 1139, 1147 (N.D. Cal. 2011); *see also Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, *17 (N.D. Cal. Mar. 31, 2014).  Further, a copyright holder is "entitled to recover extraterritorial damages" where "the damages flowed from extraterritorial exploitation of an infringing act that occurred in the United States."  *See Los Angeles News Serv. v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 992 (9th Cir. 1998).

---

[13] [*See, e.g.*, ECF 245 at 16 ("YouTube's records will also establish the direct advertising revenues generated by each infringing video and attribute those revenues to class members. . . . Plaintiffs' expert, Dr. Singer, has developed a regression methodology to calculate the direct revenues earned by the viewing of infringing content based on YouTube's records, which include revenue information on a URL-by-URL basis.").]

14

*Fourth*, Defendants' mitigation argument fail. There "is no requirement under the Copyright Act that a plaintiff mitigate damages." *Michael Grecco Prods. v. Livingly Media,* 2021 WL 2546749, at *14 (C.D. Cal. Apr. 16, 2021) (granting summary judgment against mitigation defense). Defendants have not met their burden to show that a delay in bringing suit justifies reduction of profits disgorgement. *See Laughing Rabbit v. Laser Bonding Tech.*, 2023 WL 1991640, *4 (W.D. Wash. Feb. 14, 2023) (granting summary judgment against a mitigation defense where defendant made "no attempt to show that the delay was unreasonable under the circumstances, that it has been prejudiced by or detrimentally relied on the delay, . . . that miti-gation was available, or that such efforts would have reduced the damages at issue in this case").

*Finally*, Dr. Singer did not need to apportion Defendants' profits between the infringing and non-infringing portions of videos. It is the defendant's burden to prove apportionment is appropriate. *Frank Music v. Metro-Goldwyn-Mayer*, 772 F.2d 505, 518 (9th Cir. 1985) ("When an infringer's profits are attributable to factors in addition to use of plaintiff's work," the "burden of proving apportionment, (*i.e.*, the contribution to profits of elements other than the infringed property), is the defendant's."); *see also* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."). As Dr. Singer testified, ███████████

██████████████████████████████████████████████████ (Ex. 3—Singer Dep. 223:10–224:19.)

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to exclude Plaintiffs' experts Dr. Charles D. Cowan and Dr. Hal J. Singer.

1  Dated: March 17, 2023

2

3                                          Respectfully submitted,

                                           /s/ Philip Korologos
                                           Philip C.  Korologos*
                                           Joanna Wright*
4                                          Jeffrey Waldron*
                                           BOIES SCHILLER FLEXNER LLP
5                                          55 Hudson Yards, 20th Floor
                                           New York, NY 10001
6                                          Phone: (212) 446-2300
                                           Fax: (212) 446-2350
7
                                           Joshua Irwin Schiller, CA Bar #330653
8                                          BOIES SCHILLER FLEXNER LLP
                                           44 Montgomery St., 41st Floor
9                                          San Francisco, CA 94104
                                           Phone: (415) 293-6800
10                                         Fax: (415) 293-6899

11                                         George A.  Zelcs*
                                           Randall P.  Ewing, Jr.  *
12                                         Ryan Z.  Cortazar*
                                           KOREIN TILLERY, LLC
13                                         205 North Michigan, Suite 1950
                                           Chicago, IL 60601
14                                         Telephone: (312) 641-9750
                                           Facsimile: (312) 641-9751
15
                                           Stephen M.  Tillery*
16                                         Steven M.  Berezney, CA Bar #329923
                                           Carol O'Keefe*
17                                         KOREIN TILLERY, LLC
                                           505 North 7th Street, Suite 3600
18                                         St.  Louis, MO 63101
                                           Telephone: (314) 241-4844
19                                         Facsimile: (314) 241-3525

20                                         *Admitted pro hac vice

21                                         Attorneys for Plaintiffs

22

23

24

25

26

27

28