# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

- - - - - - - - - - - - - - - - - - - - x

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

Plaintiffs,

Case No. 3:20-cv-04423-JD

-against-

YOUTUBE, LLC; and GOOGLE LLC;

Defendants.

- - - - - - - - - - - - - - - - - - - - x

**CONFIDENTIAL**

Videotaped oral deposition of GREG HALM, taken pursuant to notice, was held at the law offices of BOIES SCHILLER & FLEXNER LLP, 55 Hudson Yards, New York, New York 10001, commencing January 18, 2023, 9:07 a.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.

- - -

MAGNA LEGAL SERVICES
320 West 37th Street, 12th Floor
New York, New York 10018
(866) 624-6221



**APPEARANCES:**

KOREIN TILLERY, LLC
Attorneys for Plaintiffs
205 North Michigan, Suite 1950
Chicago, Illinois 60601
BY: CAROL O'KEEFE, ESQUIRE
-and-
BOIES SCHILLER & FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, New York 10001
BY: PHILIP C. KOROLOGOS, ESQUIRE
JEFFREY WALDRON, ESQUIRE

WILSON SONSINI GOODRICH & ROSATI
Attorneys for Defendants
650 Page Mill Road
Palo Alto, California 94304-1050
BY: ANDREW KRAMER, ESQUIRE

**ALSO PRESENT:**
CHARLES COWAN
JACOB USCINOWICZ, Videographer
Magna Legal Services

(Plaintiffs' Exhibit 170, copy of Greg Halm's report, marked for identification.)
(Plaintiffs' Exhibit 171, copy of Dr. Cowan's report of November 17, 2022, marked for identification.)
**HE VIDEOGRAPHER:** Good morning. We are now on the record.
This begins videotape No. 1 in the deposition of Greg Halm in the matter of Maria Schneider v. YouTube, LLC.
Today is Wednesday, January 18, 2023 and the time is now approximately 9:07 a.m.
This deposition is being taken at Boies Schiller Flexner LLP.
The videographer is Jacob Uscinowicz of Magna Legal Services and the court reporter is Leslie Fagin of Magna Legal Services.
Will counsel and all parties present state their appearances and who think represent.
**MR. KOROLOGOS:** Phil Korologos with

G. Halm
Boies Schiller Flexner on behalf of the plaintiffs.
**MR. KRAMER:** Andrew Kramer with Wilson Sonsini on behalf of the defendants.
**MR. WALDRON:** Jeffrey Waldron of Boies Schiller Flexner on behalf of plaintiffs.
**MS. O'KEEFE:** Carol O'Keefe of Korein Tillery on behalf of plaintiffs.
**MR. KOROLOGOS:** We also have Chuck Cowan present.
G R E G H A L M, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:
EXAMINATION BY
**MR. KOROLOGOS:**
**Q. Good morning.**
A. Good morning.
**Q. Would you state your name and address, please?**
A. My name is Greg Halm.
Are you asking for my home address

G. Halm
or business?
**Q. Business address.**
A. 2200 Powell Street, Suite 1200 in Emeryville, California.
**Q. You were retained as an expert in this case on behalf of defendants, is that right?**
A. Correct.
**Q. Do you recall when you were retained?**
A. I believe it was in late May, approximately, of 2022.
**Q. I see you brought what appears to be a copy of your report, is that right?**
A. That's correct.
**Q. Let me hand you what we have marked as Plaintiffs' Exhibit 170.**
**If you can confirm for me that is a copy also of your report?**
A. Yes, it appears to be. The only comment I would make is that my copy also contains the schedules that were referenced. There are maybe four pages at the back end which were also provided when I submitted my



G. Halm

report.

**Q. Okay. I may refer to your report throughout the deposition as Plaintiffs' Exhibit 170 or your report, but since you confirmed for me they are the same, feel free to refer to either version that you have in front of you.**

A. Thank you.

**Q. Have you had a chance to review your report and its appendices since you signed it in December of 2022?**

A. Yes.

**Q. Is there anything you wish to correct in the report?**

A. It's not so much a correction as a minor addition to -- as a minor addition.

I'm happy to tell you what that is if you would like me to.

**Q. Please.**

A. Footnote 18 on page 10 lists a number of copyright tools that YouTube uses and footnote 18 should also list the content verification program or CVP as one of those tools.

G. Halm

**Q. Any other corrections to your report?**

A. No.

**Q. Anything to add to your report?**

A. No.

**Q. Any additional opinions beyond what you've set forth in your report that you have arrived at since you wrote your report?**

A. Since I wrote my report, the court, as I understand it, made a summary judgment ruling that may impact the methodology for identifying class members.

As I understand it, there is three potential areas where that could have an impact and those areas are not reflected in Dr. Cowan's report.

Those three areas, one of them, I believe, relates to the relevant time period for inclusion in the class which is the cutoff of July 2, 2019, I believe, rather than July 2, 2017.

And then, as I understand it, the other areas, going from memory here, relate to if a video was uploaded to YouTube by the

G. Halm

owner of the copyrighted work and if that video is still on YouTube, my understanding is that the court ruled that that would grant a license to YouTube and that would also -- that fact would also make a class member perhaps not eligible for inclusion in one or more of the classes.

In addition to those factors, I did attend Dr. Cowan's deposition yesterday and heard his testimony and that perhaps caused me to form some new opinions. Those are not all fully developed since that was just yesterday.

**Q. Even though they may not be fully developed, what additional opinions have you arrived at or been considering since Dr. Cowan's deposition yesterday?**

A. One of them relates to paragraph 63 of Dr. Cowan's report, and I'm turning right now in my report because I know I cite a portion of paragraph 63 which is cited on page 15 of my report.

And so generally, as a contextual matter, it was my impression yesterday that

G. Halm

Dr. Cowan was describing a number of analyses he conducted which are not described with sufficient specificity in his report and provided explanations for the meaning of what was written in his report.

When I prepared my rebuttal report I prepared it in the context of what was written in his report and my understanding of it and he provided an explanation yesterday for paragraph 63 that struck me as not how I could possibly have read the writings in his report and so it was -- it struck me as a puzzling statement, so I will read that sentence and then provide the explanation.

So this sentence, which was from his paragraph 63, is Even if the data were perfect, I've concluded there would be no reliable way to estimate the number of class members and works associated to each class when one is only 90 days sampled out of 826 days in the investigation period.

Specifically where it says there would be no reliable way to estimate the number of class members, my understanding



G. Halm

yesterday from Dr. Cowan's testimony was that that was meant to convey that there would be a high degree of variants or essentially a large margin of error in any estimates, however, the writings describes a reliable way to estimate. It's not necessarily, at least as I read it, describing the reliability of the estimate itself or the -- not the reliability of the estimate, but the precision of the estimate.

So a reliable method can yield a wide margin of error, if you will. That was one take away that I had from yesterday.

There were other perhaps observations from various things that Dr. Cowan said. Maybe one correction, as well, for something that doctor -- I don't know if it was something he said, but there is a quote from an auditing textbook in my report. I'm just finding the location of that quote. On page 35, that refers to discovery sampling and I just wanted to clarify that I didn't cite that quote advocating for discovery sampling, it was more a general sampling

G. Halm

principle regarding locating occurrences of something in a population when perhaps the rate of occurrence is very low.

**Q. Anything else?**

A. Not necessarily, although, again, that was yesterday, so I'm still evaluating what was said and would like to review the transcript, as well.

**Q. In terms of corrections or additions to your report, are your answers any different if we make sure we include the appendices and schedules?**

A. They are not different.

**Q. What were you asked to do in this case?**

A. I was asked to evaluate Dr. Cowan's methodology.

**Q. Anything else?**

A. No.

**Q. Were you asked to identify any class members?**

A. I was not.

**Q. Were you asked to provide any estimate of the size of any class?**

**G. Halm**

A. No.

**Q. Were you asked not to identify any class member?**

A. I was never given that instruction.

**Q. Did you have any discussions with anybody about whether you should identify any class member?**

**MR. KRAMER:** I will caution you, if you had discussions with counsel, not to reveal the substance of those communications, it's privileged.

A. One way or the other, I don't recall discussions of whether I should or should not identify any class members.

**Q. Did you have any discussions with anybody about whether you should provide an estimate of the size of any class?**

**MR. KRAMER:** Same instruction.

A. No.

**Q. What's your understanding of Dr. Cowan's assignment in this case?**

A. Well, I would say, generally, it was to identify class members and estimate the size of the class or each of the classes.

G. Halm

I believe I cited more precisely what he said somewhere in my report. I think that's a general description of what he was asked to do.

So I would refer wherever I provided a more -- I know I provided a description in my report, so I would refer to that, to the extent it clarifies anything.

**MR. KOROLOGOS:** Off the record.

(Off the record.)

**THE VIDEOGRAPHER:** The time is now approximately 9:23 a.m. We are now going off the record.

(Off the record.)

**THE VIDEOGRAPHER:** The time is now approximately 9:27 a.m. We are now going back on the records.

**Q. Before the short interruption, I was asking you about Dr. Cowan's assignment and your understanding of that.**

**Could you help me find in your report where you reference what his assignment was?**

A. Paragraph 3. So my understanding



Page 14

G. Halm

is his assignment was to identify a methodology to identify class members, determine the number of class members in each of the four proposed classes and determine the number of allegedly infringing videos or number of infringing works that are allegedly infringed in those videos and associated with each class member.

**Q. Is that a fair description of your understanding of Dr. Cowan's assignment?**

A. It is.

**Q. Is it your understanding that Dr. Cowan's assignment included -- let me withdraw that.**

**Is it your understanding that Dr. Cowan was asked to identify class members to be included in his report?**

A. I don't know whether he was given that specific instruction, one way or the other.

My understanding is that that would be encompassed within the development of the methodology to do so.

**Q. Is it your opinion, as you sit here**

Page 15

**G. Halm**

**today, having sat through Dr. Cowan's deposition yesterday, that Dr. Cowan attempted to identify class members, but was unable to identify class members?**

A. I know that he has attempted to identify class members. I heard his testimony that he had identified class members, however, the identity of those class members has not been provided such that I can review and evaluate whether they -- the identification of those class members is consistent with the class definitions or the methodology he proposes.

**Q. And I take it from your earlier testimony today that you did not attempt to identify any class members yourself, is that right, for any class?**

A. I evaluated elements of Dr. Cowan's methodology that would work towards that end.

As I reviewed the methodology, it stopped short of where it could need to go to identify those class members, so it didn't lead to that conclusion.

**Q. Did you or did you not attempt**

Page 16

**G. Halm**

**yourself to identify any class members for any of the classes in this case?**

A. Not independent of the methodology described by Dr. Cowan.

**Q. Did you use Dr. Cowan's methodology to try to identify any class members?**

A. I implemented aspects of his methodology. In my opinion, the methodology doesn't lead to a systematic identification of class members, so it seems to, at least as described in the report, stops short and so I didn't implement any additional steps to do so.

There is also other flaws in his methodology that, in my view, would cause it to not reliably identify class members if implemented, so I didn't -- did not take the steps to try to identify class members by layering on some elements of additional work or applying my own judgment to filter through search results or that sort of thing.

**Q. So was that a no, that you did not use Dr. Cowan's methodology to try to identify a class member?**

Page 17

**G. Halm**

A. I suppose that's a no, yeah.

**Q. Did you attempt to estimate the size of any class in this case?**

A. No, that would require first identifying class members, which I didn't identify, so I didn't attempt to estimate the size.

Let me just add a clarifying comment with respect to identification of class members, which I think is the intention of your question is, which is identifying class members apart --

**Q. I hate to interrupt the witness, but there is no question pending. If there is something you want to add to your last answer to correct it, but your counsel gets to ask questions at the end, so if there are things you wish to clarify, I'm sure he will clear that up for you.**

A. Okay.

**Q. In your report, if you turn to paragraph 14, that's on page 5. Paragraphs 14 and 15 are the summary of your opinions, correct?**



Page 26

G. Halm
**Cowan had not identified any class members.**
**Do you recall that?**
A. I don't recall exactly what I said, but...
**Q. I get the benefit of reading it.**
A. There you go. That sounds about right. From his report, I would say, from his report.
**Q. That was your conclusion from his report?**
A. Correct.
**Q. But other than what you told me, you have not identified anything where Dr. Cowan says that, as opposed to says things from which you reached a conclusion, is that right?**
A. He does not use the exact phrase, I have not identified any class members.
**Q. Does he use a phrase that even though it does not use those exact words you just used -- let me withdraw that.**
A. It was a double negative.
**Q. It was getting complicated.**
**Does Dr. Cowan use any other phrase**

Page 27

G. Halm
**where he affirmatively indicates that he has not been able to identify any class member?**
A. The statements in paragraph 63 and 77 relate to methodologies for estimating the number of class members and works associated with each.
I believe your question is more narrow in that it would be identifying any, in other words, at least one, and so there is no statement to that effect affirmatively.
**Q. So if we look at paragraph 63 of Dr. Cowan's report, the language you focused on a while ago and that I believe you were just referencing in the last answer, is the last sentence of paragraph 63, is that right?**
A. Correct.
**Q. Sticking with your point that you covered in your last answer, you understand that last sentence does not convey that he has been unable to identify any class members, right?**
**MR. KRAMER:** Objection to form.
**Q. You can answer.**
A. Can you repeat that question one

Page 28

G. Halm
more time.
**Q. I will withdraw it and phrase it a little bit differently.**
**In the last sentence of paragraph 63 of Dr. Cowan's report, you agree with me that that sentence does not convey that he has not been able to identify any class member as in one?**
**MR. KRAMER:** Objection to form.
A. It does not affirmatively communicate that, but it allows for that possibility, so it would be somewhat ambiguous on that point perhaps.
**Q. The other paragraph you mentioned, was it 77?**
A. Correct.
**Q. Also, the last sentence, I believe, is that right?**
A. That's correct.
**Q. And is it your position that Dr. Cowan is conveying with that sentence that he was not able to identify a single class member for the CLFN class?**
**MR. KRAMER:** Objection to form.

Page 29

G. Halm
**Q. You can answer.**
A. That sentence does not convey that he was not able to identify a single member of the CLFN class.
**Q. While we are there, the next paragraph is 78 and I believe you mentioned that in your testimony this morning and again, you focused on the last sentence of paragraph 78, if I recall correctly, is that right?**
A. I believe perhaps. I don't recall exactly what I said. I refer, again, to the transcript.
**Q. Which, again, I have the benefit of having in front of me.**
A. There you go.
**Q. Would you agree with me that paragraph 78 in its last sentence reads, The methodologies are effective and will be completely effective when applied to a complete database.**
**Do you see that?**
A. I see that.
**Q. Does that tend to convey to you**



G. Halm

**that Dr. Cowan, in his report, was indicating that he had applied his methodologies?**

A. No.

**Q. Why not?**

A. As written without the analysis associated with it, it seems like an unsupported assertion, that it's speculative.

**Q. How about the first sentence of paragraph 78, does that change your view on that?**

A. No, not in the context of the report.

**Q. In paragraph 57 of Dr. Cowan's report, you referred to the first sentence earlier this morning and that first sentence reads, There are multiple issues that make the task of estimating the number of owners and the number of works posted on YouTube very difficult.**

**Do you see that?**

A. I see that sentence.

**Q. Do you recall referring to that this morning?**

A. Not specifically.

G. Halm

**Q. Is it your view that in that sentence, Dr. Cowan is talking about whether it is very difficult to identify any class members as opposed to estimating the number of class members?**

A. I don't think he is touching on identifying any, in part, because the assignment he lays out in the beginning of his report has nothing to do with identifying any class members.

**Q. Let's go back to your report, Plaintiffs' Exhibit 170.**

A. Okay.

**Q. Do you still have paragraph 14-A in front of you?**

A. I don't, but I will get that in just a moment.

**Q. Thank you.**

A. I have it in front of me now.

**Q. And you wrote there, Dr. Cowan has failed to identify a single class member, apart from the named plaintiffs. This total failure suggests that, at best, the proposed classes are extremely small, whether**

G. Halm

**identifying any class members would be extremely difficult.**

**Do you see that?**

A. Yes.

**Q. You put the word failure in italics, right?**

A. Correct.

**Q. You put the phrase, identifying any class members would be extremely difficult also in italics, right?**

A. Correct.

**Q. Since you understand that Dr. Cowan was not assigned to identify any class members, how is it that you can suggest that he failed to identify any class members?**

A. Identifying one class member in the sample is the first step in estimating the size of the class using the sample, so that's sort of like step one in the process.

You can't make an estimate of the size without an observation in the sample, so that's step one from which you would proceed with the methodology he set forth and so he wasn't expressly tasked with identifying any,

G. Halm

but in order to estimate the size other than zero, he does need to identify some.

**Q. Well, from the standpoint of -- let me withdraw that.**

**If you understand Dr. Cowan to be saying that he was not able to estimate the size of a class, how do you reach the conclusion that you appear to convey in your report that the failure was because of that first step, that is, being able to identify at least one class member?**

**MR. KRAMER:** Objection to form.

**Q. You can answer.**

A. Can I have the question reread.

**Q. Sure.**

**In your last answer, you said that -- I will withdraw the pending question.**

**In your last answer, you said that identifying one class member in the sample is the first step in estimating the size of the class.**

**Do you recall that?**

A. Yes, whether I said one or at least one, yes.

MAGNA LEGAL SERVICES



Page 38

G. Halm

of my opinions. I don't know that that's actually possible.

For example, you are essentially -- the question seems to ask me to assume away 14-B.

**Q. Well, where in 14-A do you rely on the opinions set forth in 14-B?**

A. 14-A does not rely on 14-B, but your hypothetical asked me to assume that his methodology, as presented, or his efforts to apply his method as he presents it did identify class members effectively and that runs directly to 14-B, which is dealing with his methodology.

If you were asking me to assume, I don't want to be too helpful here, but maybe if you were asking me to assume that he expressed the opinion that he had identified class members applying his methodology rather than the factual assertion that he did, so if it was his view that he had, for example, then I wouldn't have a conflict with 14-B.

**Q. Let me ask you about 14-B for a second.**

Page 39

**G. Halm**

**Are you saying that 14-B says that it's impossible to identify any class members?**

A. No.

**Q. Is it your opinion in this case, aside from whether it's in 14-B or not, that it is not possible to identify any class members in this case?**

A. No.

**Q. If you assume that Dr. Cowan used his methodology and was able to identify some number, but not all, class members, does that change any of your opinions set forth in 14-A?**

A. We still run into the problem of 14-B because there is problems with the way he proposes to go about identifying that, as expressed in the report, seem to be unworkable methods --

**Q. Well --**

A. -- in your hypothetical, sorry.

**Q. Thank you.**

**14-B seems to be talking about -- let me withdraw that.**

Page 40

**G. Halm**

**14-B, before we get to the subparts, reads, Dr. Cowan's proposed methodologies are so severely flawed that they cannot adequately serve the purpose of identifying class members, if any.**

**Do you see that?**

A. I do.

**Q. And I take it from what you told me a moment ago, this is not conveying that it is not possible to identify any class members, right?**

A. Correct.

**Q. So I'm not sure I understand why the hypothetical I've asked you to assume, that Dr. Cowan was able to identify some, but not all class members, conflicts, in your mind, with 14-B, when I ask whether that hypothetical causes you to change any of the opinions identified in 14-A?**

A. Well, unless I'm misunderstanding your question, it would seem you are asking me to assume that Dr. Cowan would apply his methodology to identify at least one class member. That's the part of the question to

Page 41

G. Halm

me that seems troubling.

If perhaps you are asking me if he applied -- to assume he applied some other methodology to identify at least one class member, that's a different hypothetical.

**Q. It would be. But I still don't see why the hypothetical that I have asked that used his methodology to identify some class members, but not all, conflicts with what you say in 14-B, when we established that 14-B does not offer the opinion that it is not possible, using Dr. Cowan's methodologies, to identify any class member?**

A. That's a different statement because you just added now, it's not impossible using Dr. Cowan's methodology.

I would say it seems to be impossible, using Dr. Cowan's methodology. I don't have the opinion that it's impossible to identify class members using some other methodology.

**Q. What methodology?**

A. I haven't developed a methodology on my own to identify class members. I



G. Halm

haven't been asked to do that.

**Q. Did you consider any such methodology?**

A. I was not asked to undertake my own effort to independently develop a methodology to identify class members or estimate the size of the classes and so I did not do that.

**Q. Even though you may not have been asked, did you consider any such methodology?**

A. No.

**Q. Is it your opinion that Dr. Cowan's methodologies are not capable of identifying any class members?**

A. As expressed in his report, yes, reliably.

**Q. Why?**

A. So paragraph B, little I, says, Dr. Cowan's proposed methodologies cannot adequately identify class members, if any, because all of the methodologies, except unreliable user-entered data at face value, as if it were completely reliable, without any empirical support, that it is actually reliable.

G. Halm

In fact, the user-entered name of copyright owner field he proposes to use does not reliably identify the name of the copyright owner and the user-entered title of copyrighted work field he proposes to use does not reliably identify the specific copyrighted work. Verifying the accuracy of any entry in these fields would require individualized inquiry.

**Q. Anything else?**

A. Item 2 would relate to the methodology to estimate the size of the class, not as much to identify any class members, so if the task is to find at least one, the issue of a manual methodology isn't really relevant, would seem to be an encumbrance, per se.

So item 2 relates more to if I'm trying to find the full quantum.

Item 3, as written in his report, would run to the issue of any, item -- paragraph 14, item B, No. 3, would run to that issue, as well, with respect to the CLFN class.

G. Halm

**Q. Are you finished?**

A. I am.

**Q. When you say that in section B of paragraph 14 of your report, you are saying that Dr. Cowan's methodologies cannot identify any class members reliably, are you saying that there are no class members that can be identified by that methodology?**

A. In the absence of a methodology to confirm or test the veracity of the fields he proposes to use, that's correct.

**Q. What do you mean by that?**

A. I mean what I said.

**Q. When you said, In the absence of -- my transcript reads, In the absence of the methodology, did you say the methodology or a methodology?**

A. A methodology.

**Q. When you referred me to subpart I of paragraph 14-B, you focused first on the part that talks about -- let me withdraw that.**

**When you referred me to paragraph 14-B(i), at the beginning of that paragraph,**

**G. Halm**

**it refers to Dr. Cowan's methodologies accepting unreliable user-entered data at face value as if it were completely reliable.**

**Do you see that?**

A. I do.

**Q. Is it your opinion that the user-entered data that Dr. Cowan proposes to rely on with his methodologies and that you were referencing there is completely unreliable?**

A. I've identified numerous instances where it is not reliable. I've reviewed or have not seen corroborative or alternate analysis confirming its reliability, however, I have not done an analysis and do not have an opinion that every entry in that field -- in those fields is unreliable.

**Q. Do you have a belief -- let me withdraw that.**

**Do you have an opinion as to whether any of the user-entered data that Dr. Cowan's methodologies propose to rely on is accurate?**

A. What do you mean by accurate?

MAGNA
LEGAL SERVICES

Witness: Greg Halm — January 18, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

**Errata Sheet**

| Page:Line | Change | Reason |
|---|---|---|
| 9:21 | Replace <is> with <has> | To correct transcription errors |
| 9:21 | Replace <826> with <1,826> | To correct transcription errors |
| 10:4 | Replace <variants> with <variation> | To correct transcription errors |
| 21:16 | Replace <created a copyright on the > with <can query the copyright owner> | To correct transcription errors |
| 23:25 | Replace <826> with <1,826> | To correct transcription errors |
| 25:16 | Replace <identify> with <identified> | To correct transcription errors |
| 42:21 | Replace <except> with <accept> | To correct transcription errors |
| 45:13 | Replace <I've> with <I haven't> | To correct transcription errors |
| 60:16 | Replace <title> with <tight> | To correct transcription errors |
| 66:9 | Insert <and> between <me> and <in> | Clarify the record |
| 70:9 | Insert <not> between <had> and <been> | To correct transcription errors |
| 81:19 | Replace <so> with <to> | To correct transcription errors |
| 87:5 | Replace <RC> with <CV> | To correct transcription errors |
| 99:15 | Replace <INDB> with <IMDb> | To correct transcription errors |
| 123:17 | Replace <you> with <I> | To correct transcription errors |
| 133:19 | Replace <interest> with <difference> | To correct transcription errors |
| 141:12 | Replace <comes> with <hums> | To correct transcription errors |
| 152:12 | Replace <it> with <in> | To correct transcription errors |
| 167:15 | Replace <but> with <about> | To correct transcription errors |

____X____ Subject to the above changes, I certify that the transcript is true and correct.

Witness: Greg Halm — January 18, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

____________ No changes have been made. I certify that the transcript is true and correct.

____________________________ February 22, 2023
(signature) (date)

2

Witness: Greg Halm — January 18, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

ACKNOWLEDGMENT OF DEPONENT

I, Greg Halm, do hereby certify that I have read and examined the foregoing testimony, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

____________________________ (signature)

February 22, 2023 (date)

3