# EXHIBIT 8

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022

O: 212.999.5800
F: 212.999.5899

ELI B. RICHLIN
Internet: ERICHLIN@wsgr.com

January 14, 2022

**Via Electronic Mail**

Phil Korologos
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, New York 10001

   Re:  *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD

Dear Phil:

  We write in further response to your letter of December 18, 2021.[1] As a preliminary matter, we note that, throughout that letter, Plaintiffs repeatedly misrepresent and mischaracterize the parties' prior correspondence and meet-and-confers, as well as Defendants' discovery responses and document productions. We assume this was not intentional, but rather the result of oversight. Regardless, we ask that Plaintiffs please show greater care in the future, to avoid wasting the parties' time and generating disputes where there are none. We also, again, reject Plaintiffs' attempts to unilaterally impose arbitrary response and production deadlines, which are divorced from the governing case schedule. This smacks of gamesmanship, and is unproductive, especially as Defendants continue to search for, review, and produce documents, and to engage with Plaintiffs' manifold discovery requests.

  **Request Nos. 2-3, 106-107, 112-113:** Defendants' review and production of documents in response to Request Nos. 2 and 3 is ongoing. As we explained in our correspondence of January 7, 2022, the parties previously agreed upon a set of search terms concerning Plaintiff Schneider and her works, which was set out in Appendix 1 to Defendants' May 7 letter. *See* May 7 Letter from L. Gallo White; July 2 Letter from D. Blaisdell.[2] Given the recent amendment of the complaint, Defendants can agree to broaden this set of search terms to encompass additional

---

[1] In our December 17 letter, we agreed to follow up with our responses regarding takedown notices, YouTube's case management system, copyright management information, and fair use. *See* Dec. 17 Letter from E. Richlin. Many of these requests have subsequently been addressed in other lines of correspondence. *See, e.g.*, Dec. 23 Letter from E. Richlin. To the extent they have not been, Defendants will address them here.

[2] We reiterate that Defendants did not, as your December 18 letter suggests, agree to the search term proposal set out in your April 16 letter, and we assume any suggestion otherwise was merely an oversight.

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 2

works of Plaintiff Schneider, insofar as they are identified as works in suit in the First Amended Complaint. Specifically, Defendants can offer to produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that concern YouTube and contain the search terms identified in the supplemental version of Appendix 1 attached here, insofar as those documents are reasonably related to Plaintiff or the claims at issue in this case. As you'll see, the search terms concerning the newly-identified works in suit hew very closely to the terms Schneider proposed. Please let us know if Plaintiffs will agree to this proposal.

With respect to Request Nos. 106, 107, 112, and 113, we indicated in our December 17 correspondence that we are open to considering a reasonable proposal to running search terms for AST Publishing and Uniglobe, but noted that the search term proposal you shared in July is incomplete. *See* Dec. 17 Letter from E. Richlin. Rather than proceed in a piecemeal fashion, which increases the burden on both parties, please provide us with your complete search term proposal for Uniglobe and AST, and Defendants will evaluate it.

**Request Nos. 4-5, 10-11, 108-109, 114-115:** Our May 7 and October 29 letters reiterated the specific categories of takedown notices and related documents and communications that Defendants have offered to produce in response to various requests concerning Plaintiff Schneider. We understand from your December 8 letter that Plaintiffs find this proposal acceptable.

As you acknowledge, Defendants have already produced many documents in response to Request Nos. 4, 5, 7, 10, 11, and 13, including numerous takedown notices submitted by or on behalf of Ms. Schneider. The statement in your December 18 letter that Defendants' productions to date do not contain several categories of takedown-related documents is mistaken. *See* Dec. 18 Letter from P. Korologos (indicating Defendants' production to date "does not appear to contain" counter-notices, communications concerning Schneider's takedown notices, and outcomes of takedown notices). Defendants have already produced numerous documents sufficient to show the outcome of Schneider's takedown notices, which likewise constitute communications concerning the same. *See, e.g.*, GOOG-SCHNDR-00000783, GOOG-SCHNDR-00000786, GOOG-SCHNDR-00000791, GOOG-SCHNDR-00000831 (email correspondence confirming removal of allegedly infringing videos). Defendants will produce additional documents—including counter-notices, if any, that YouTube received in response to takedown notices submitted through Schneider's YouTube account, insofar as they concern works that are identified in the First Amended Complaint and for which Schneider has identified at least one alleged infringement—once Plaintiffs provide an updated list of infringements that identifies the work or works allegedly infringed by each URL (*see* Dec. 31 Letter from R. Ewing), and as those documents are located, reviewed, and processed for production.

**WILSON SONSINI**

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 3

     As to Uniglobe and AST, we are troubled that, in your haste to send this letter mere hours after we served our responses and objections to Plaintiffs' Third Set of Requests for Production, you did not carefully review those Responses. *See* Dec. 18 Letter ("We are concerned that your Responses and Objections served last night do not commit to producing categories (2)-(4) for AST and Uniglobe . . . ."). We would direct you to Defendants' responses to Request Nos. 109, 111, 115, and 117, in which Defendants agreed to produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case sufficient to show: communications concerning and the outcome of certain categories of takedown notices relating to Uniglobe and AST, as well as counter-notices, if any, that YouTube received in response to certain takedown notices—the very types of documents you incorrectly claim Defendants did not agree to produce. Here too, we are concerned that, by not reviewing Defendants' correspondence, written responses to discovery requests, and productions with appropriate care, Plaintiffs are compounding burden, and generating disputes where none exist.

     Finally, we note that, within days of filing the motion to sever, Plaintiffs now claim, for the first time, that Plaintiffs "are not seeking affirmative discovery on Pirate Monitor's behalf since those claims were withdrawn" and ask that Defendants "refrain from expending time and effort in producing documents concerning any claims by Pirate Monitor." Dec. 8 Letter from D. Blaisdell. It is not clear what you are asking Defendants to do. As you know, the documents Pirate Monitor sought in connection with its affirmative claims and the documents relevant to Defendants' counterclaims are often overlapping. (Indeed, Request No. 11, which requests "All Documents Concerning any Takedown Notice Concerning Pirate Monitor or the Pirate Monitor Works," clearly seeks documents pertinent to both.) Accordingly, to the extent you wish to withdraw certain document requests, we ask that you please specify which ones.

     **Request Nos. 6-7, 13, 110-111, 116-117:** With respect to Request No. 6, as you know, we have responded to your revisions to the proposed Content ID license agreement under separate cover on December 23 and over the course of subsequent meet-and-confers on January 9 and 12.

     With respect to Request Nos. 7, 13, 111, and 117, we note first that we have already agreed to produce documents in response to several of these requests. Your letter of December 8 proposes that, as a compromise for Request Nos. 7, 13, 111, and 117, Defendants also produce documents sufficient to show certain information concerning revenue and copyright strikes "for each Video Match identified through operation of Content ID on the copyrighted works at issue." Dec. 8 Letter from P. Korologos. As a general matter, we are open to considering the production of revenue- and strikes-related information concerning the subset of video matches, if any, that are identified in the course of running Content ID as part of the discovery process (assuming we agree on that) and that Plaintiffs also allege constitute infringements. We note, however, that this discussion is premature. The parties are still in the process of negotiating an agreement to govern use of Content ID as part of the discovery process in this case. Further, having not yet run

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 4


Content ID to identify matches of Plaintiffs' works, Defendants do not have a sense of the quantity of any resulting "Video Matches," much less the burden of producing numerous additional categories of information for each one. Accordingly, we propose tabling further discussion of Plaintiffs' proposal for now and can agree to revisit it once "Video Matches" of Plaintiffs' works, if any, have been identified.

**Request Nos. 14, 24:** With respect to Request No. 14, Defendants intend to produce—or, if those documents are determined to be privileged, to log—numerous additional documents sufficient to show YouTube's policies and procedures related to copyright management. Insofar as the policies are not privileged, Defendants intend to perform a reasonable search for readily accessible non-privileged documents sufficient to show changes and proposed changes to those policies, if any, proportionate to the needs of this case.

With respect to Request No. 24, your claim that Defendants have "refused to produce anything or even to explain what Defendants' 'customer case management system' is" is incorrect, and further underscores the impropriety of Plaintiffs' sweeping request for "All Documents" from those systems related to "Content ID, Takedown Notices, or any other allegation, investigation, or policing of copyright infringement." As a preliminary matter, we can confirm that we have already produced documents, such as GOOG-SCHNDR-00040810, GOOG-SCHNDR-00040816, and GOOG-SCHNDR-00040797, that reside within Defendants' customer case management systems. In response to your request for an explanation of what Defendants' customer case management systems are, and in the interest of compromise, Defendants have produced several documents showing how YouTube's current and historical customer case management systems function. *See* GOOG-SCHNDR-00040617, GOOG-SCHNDR-00040831, GOOG-SCHNDR-00040835, GOOG-SCHNDR-00040943. To the extent you require additional information about how YouTube's case management systems work, then, as we have repeatedly indicated, Plaintiffs may propound discovery requests that specifically seek this information.

As the documents we have produced about YouTube's customer case management systems make clear, producing even "one month of sample data" from those customer case management systems, as you suggest in your December 18 letter, would encompass wide-ranging materials, which contain the private information of untold numbers of individuals and have no relevance to the claims or defenses in this case. Should Plaintiffs continue to demand such documents without focusing on what is actually at issue in this case, then Defendants will be forced to consider moving for a protective order.

**Request Nos. 15-18, 21-23, 46, 79:** With respect to Request Nos. 15 and 16, we can confirm the parties' agreement to defer further discovery unless and until a class is certified. As to Request No. 17, we will produce the agreed-to Content ID applications (along with documents in response to Plaintiffs' numerous other discovery requests) as those documents are identified,

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 5

reviewed, and processed for production. With respect to Request No. 18, we can confirm that, in satisfaction of this request, Defendants can offer to produce the schema for the Copyright Tools Application Data disclosed in Defendants' response to Schneider's Interrogatory No. 15. Please let us know if you will agree to this compromise.

In response to Request Nos. 21 and 22, Defendants agreed to produce numerous categories of documents—namely, reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show: (1) how the Content ID tool works, including documents sufficient to show changes to Content ID's processes for identifying matches of copyrighted works, (2) YouTube's policies and procedures regarding access to the Content ID tool, and (3) procedures, criteria, manuals, logic documents, terms of service, guidelines, or policy documents concerning the Content ID system, for the three-year period predating the filing of the Complaint. While Defendants have already produced many documents within these categories, Defendants' collection and review of such documents is ongoing, and Defendants may produce additional documents responsive to these requests. As explained in Defendants' prior correspondence, however, Defendants will not agree to produce documents sufficient to show changes and proposed changes to any document falling within the numerous categories of documents Defendants have already agreed to produce in response to these requests. *See, e.g.*, May 7 Letter from L. Gallo White (explaining any such demand is overbroad and unduly burdensome); July 2 Letter from D. Blaisdell; Aug. 20 Letter from E. Richlin. Any suggestion to the contrary is simply mistaken. If there is a discrete number of specified policy and procedure documents as to which Plaintiffs believe search for, review, and production of changes and proposed changes would be relevant and proportionate to the needs of the case, please let us know, and we can take that into consideration.

As to Request No. 23, we first note that Defendants have already produced numerous documents sufficient to show the terms governing access to the Content ID tool, as they agreed to do in their original Responses and Objections. As for Request No. 23(d) specifically, your December 8 letter proposed that Defendants produce documents showing "YouTube's internal and external policies and procedures for allocating all streams of revenue for videos monetized through Content ID." Dec. 8 Letter from D. Blaisdell. Defendants responded by reiterating that this request is not relevant to the issues at stake in this litigation and by pointing Plaintiffs to agreements Defendants have already produced that set out detailed information concerning YouTube's revenue-sharing terms. *See* Dec. 17 Letter from E. Richlin. Your objection that "[t]hese documents are not policy and procedure documents at all" is not well taken. YouTube's agreements embody its revenue-sharing procedures, and its policy is to comply with those agreements. YouTube has thus satisfied its commitments here. Should Plaintiffs believe that they require further information, then please explain precisely what it is Plaintiffs believe they need and the relevance of that information to the claims and defenses of individuals who (they claim) were denied access to Content ID, and Defendants will consider it.

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 6

With respect to Request No. 23(e), Defendants have located additional documents responsive to this request and produced one such document in their sixteenth production. To the extent documents are determined to be privileged, then Defendants will include them in a subsequent privilege log.

With respect to Request No. 23(f), as explained, we have already produced many documents responsive to your request for contracts that govern the relationship between Defendants and Content ID Participants. We never agreed to produce the contracts that govern relationships with specific Content ID partners, much less YouTube's contracts with any and all Content ID partners. Nor have Plaintiffs provided any explanation for the relevance of such agreements to this litigation. Absent any compelling need for this sensitive commercial information, Plaintiffs' demand appears designed solely to harass YouTube and its business partners, and Defendants will not agree to broaden their production at this time.

With respect to Request No. 79, we can confirm that Defendants have produced reasonably accessible documents, prepared in the ordinary course of business, that show the Content ID user experience between 2017 and present, including multiple screen captures from throughout this period.

**Request Nos. 29-36:** Defendants continue to object to these Requests inasmuch as they call for the production of materials relevant to a putative class of plaintiffs that has not been certified by the Court, and because they are vague, ambiguous, unduly burdensome, overly broad, and not relevant to any party's claim or defense. In seeking videos and numerous categories of data relating to millions of takedown notices submitted to YouTube over the span of many years, these Requests are clearly disproportionate to the needs of this case, particularly at this stage. Given that, we agree that it is appropriate to revisit these requests once the court rules on class certification.

Your concerns regarding preservation of the requested videos are noted. YouTube will continue to act in accordance with its legal obligations, including by taking reasonable and proportionate steps to preserve evidence related to the issues presented in the action, consistent with the requirements of the Federal Rules of Civil Procedure.

**Request Nos. 46-47:** With respect to Request No. 46, as a compromise, Defendants can offer to produce reasonably accessible documents showing YouTube's revenue, including revenue attributable to YouTube ads, for the three-year period preceding the filing of the original complaint. Please let us know if Plaintiffs will agree to this proposal. As to Plaintiffs' further request for documents concerning how revenues are paid out to users, we would direct you to GOOG-SCHNDR-00020657, the YouTube Partner Program Terms.

**WILSON SONSINI**

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 7

With respect to Request No. 47, Defendants can agree to produce documents reflecting the number of users of YouTube's platform and will do so shortly. Please let us know if Plaintiffs will accept this compromise in full or partial satisfaction of this Request. Insofar as Plaintiffs seek additional documents in response to Request Nos. 46 or 47, we remain willing to revisit these requests in the event that a class is certified in this matter.

**Request Nos. 28, 78:** As you recognize, these requests are the subject of a motion to compel now before the Court. You disavowed the parties' negotiated agreement by moving to compel production of the databases. There is no longer any agreement to produce documents responsive to these requests because you refused to honor it. We will produce documents responsive to these requests should the Court order us to do so.

**Request Nos. 38, 48, 49, 50:** In response to Request Nos. 38, 48, and 50, Defendants agreed to produce documents sufficient to show YouTube's policies and procedures regarding copyright strikes and repeat infringers, including readily accessible non-privileged documents sufficient to show changes and proposed changes to those policies and procedure, and they have done so. That some of those documents may discuss copyright strikes without incanting the phrase "repeat infringer" is immaterial. Nevertheless, we can confirm that we have identified additional documents responsive to these requests. Defendants will produce these documents or, if they are privileged, include them in a subsequent privilege log.

As to Request No. 49, Defendants have repeatedly registered their objections to this request, which seeks numerous categories of identifying information concerning each user YouTube has identified as a repeat infringer. This Request is not only vastly overbroad and burdensome, but also raises significant privacy concerns. As you acknowledge, consistent with the compromise the parties reached as part of the court-ordered meet-and-confer process, Defendants already produced a document showing, for the three-year period predating the filing of the original complaint, the number of users terminated pursuant to YouTube's repeat infringer policy, broken down by month. We also offered to produce reasonably accessible non-privileged documents located through an inquiry proportionate to the needs of the case, if any, that are sufficient to show identifying information concerning users who uploaded videos that Schneider identified as allegedly infringing in response to Interrogatory No. 2 or that are properly identified by Plaintiffs as infringing a work in suit in accordance with the Court's November order, including documents sufficient to show whether Defendants identified those users as repeat infringers. *See* March 3 Letter from L. Gallo White; Dec. 17 Letter from E. Richlin. We understand Plaintiffs are now rejecting that offer, without offering any counterproposal, and without offering any explanation as to why the personally identifiable information you seek for many individuals with no discernable link to Plaintiffs' claims (including, but not limited to, their name, username, email address, and IP address) is actually necessary. If Plaintiffs have a counterproposal to offer, then please let us know, but Defendants will not agree to produce the documents demanded by Request No. 49, as written.

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 8

**Request No. 88:** With respect to Request No. 88, we understand that Plaintiffs are rejecting our compromise offer to produce a reasonable sampling of takedown notices (*see* Nov. 24 Letter from E. Richlin), on the grounds that such a sampling would "not provide evidence of the quantity of infringements caught by Content ID and would not provide any communications or other information regarding analysis or understandings by YouTube and Google employees about the volume of infringing content on the platform" (Dec. 18 Letter from P. Korologos). As an initial matter, the notion that "infringements" are "caught by Content ID" is simply wrong. Content ID identifies potential matches of copyrighted works, which copyright owners may elect to claim, but it cannot and does not identify "infringements." Insofar as what you are seeking, then, is actually the number of claims that copyright owners have made using Content ID, we would direct you to statistics about Content ID claims contained within YouTube's recently-published Copyright Transparency Report, which Defendants will soon produce. As for communications or other documents concerning any "analysis" by Defendants "about the volume of infringing content on the platform," we have explained numerous times that Defendants are not in a position to make determinations about what is or is not infringing content. Indeed, that is the very reasoning that undergirds the DMCA's notice-and-takedown provisions. Nevertheless, as a compromise, Defendants can offer to engage in a reasonable search for non-privileged internal analysis, if any, "about the volume of infringing content on the platform." We propose to produce such documents, if they exist, from within the statute of limitations period. Please let us know if Plaintiffs will accept this proposal in satisfaction of Request No. 88.

**Request Nos. 58, 60:** With respect to Request No. 58, we disagree with your characterization of GOOG-SCHNDR-00035056 as "tangentially relat[ing]" to Defendants' copyright operations. This document is responsive to your request for "charts, tables, or other Documents detailing the hierarchical and/or organizational structure of individuals at Google or YouTube that work on the copyright operations team and on following issues" (Request No. 58) and, consistent with Defendants' agreement to produce, is "sufficient to show the general organization of YouTube's copyright operations" (Defendants' Responses and Objections). That the same document may be responsive to two different document requests is not unusual or objectionable. Notwithstanding that, Defendants do intend to produce in a forthcoming production additional information showing the general organization of YouTube's copyright operations.

With respect to Request No. 60, about which Plaintiffs have been silent for many months, we reiterate that Defendants do not agree, based on the theory of relevance you have articulated, that the requested information ("Documents sufficient to identify all non-custodian Document or database storage locations for Documents Concerning Your customer case management systems, public and internal policies and procedures related to copyright management, Takedown Notices, Content Verification Program, Copyright Match Tool, the Account Monetization Program, and the Content ID System") has any relevance to Plaintiffs' claims. Moreover, identifying and

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 9

producing documents in response to this broad-ranging request would be overly burdensome and disproportionate, especially when the apparent discovery objectives here would be better pursued through an interrogatory. Nevertheless, as we indicated in our May 7 letter, we remain open to considering any compromise concerning this request that Plaintiffs would like to propose.

**Request No. 69:** As you know, following extensive correspondence about Defendants' document and data retention practices, the parties reached a compromise during the meet-and-confer process whereby Defendants would also produce certain retention policies. *See* July 15 Letter from K. Knoll; July 27 and Aug. 9 Meet and Confers. Consistent with the parties' compromise agreement, as you acknowledge, Defendants have produced multiple documents showing YouTube's retention policies for YouTube's rights management functions. In addition, where Defendants determined that a retention policy was privileged but otherwise within the scope of the parties' agreement, Defendants included that policy in their privilege log. That Plaintiffs do not believe that the documents Defendants have produced contain "adequate detail to understand" Defendants' retention policies does not render Defendants' production insufficient. To the extent you have questions concerning Defendants' policies and practices, we would refer you to the parties' significant prior correspondence on these subjects.

**Request Nos. 81-84, 98:** As an initial matter, we do not concede that Plaintiffs are entitled to any discovery regarding purely theoretical standard technical measures. As we have explained many times now, we struggle to see the relevance of any of the documents that Plaintiffs seek through these Requests. Notably, Plaintiffs have repeatedly refused to provide additional information that could even conceivably show that these requests have any relevance to the claims or defenses at issue in this litigation. *See, e.g.*, Aug. 27 Letter from C. Hartman; Oct. 29 Letter from E. Richlin.

Nor have Plaintiffs offered any meaningful narrowing of these requests. The multi-part (and sub-part) proposal you set out in your August 17 correspondence, which requested (among numerous categories of documents) "All internal or external policies concerning Digital Fingerprinting Technology other than Content ID" and "All Communications with YouTube users concerning the use of Digital Fingerprinting Technology other than Content ID," does not meaningfully narrow the requests or make them any less onerous.

Nevertheless, as our correspondence makes plain, we have not "categorically refused to engage on any of these Requests," as you claim. In our letter of August 27, for example, Defendants offered to produce "testimony and public pronouncements regarding Standard Technical Measures made to Congress and/or the Copyright Office in satisfaction of [Request No. 82]" and undertook a reasonable search for the same. *See* Aug. 27 Letter from C. Hartman; Oct. 29 Letter from E. Richlin. Further, in our November 24 correspondence, we offered to search for and produce "any non-privileged documents from relevant members of Defendants' copyright team that specifically discuss the existence or non-existence of 'standard technical

WILSON SONSINI

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 10

measures' within the meaning of the DMCA, dating from the three years prior to the commencement of this case." *See* Nov. 24 Letter from E. Richlin.

We appreciate Plaintiffs' willingness to consider the proposal set out in our November 24 letter. The phrases "specifically discuss" and "existence or non-existence" in Defendants' proposal are not intended to exclude relevant documents, but rather to clearly delineate the scope of the search and production they are willing to undertake. Defendants are nonetheless willing to revise their proposal to strike the work "specifically," and can offer to produce "any non-privileged documents from relevant members of Defendants' copyright team that discuss the existence or non-existence of 'standard technical measures' within the meaning of the DMCA, dating from the three years prior to the commencement of this case." We note that our proposal's language about the "existence or non-existence" of standard technical measures is consistent with the document request itself, which does not seek any and all documents concerning standard technical measures, but rather "All Documents Concerning *Your evaluation* of whether any technology or technical measure constitutes a Standard Technical Measure" (Request No. 82 (emphasis added)). Please let us know if Plaintiffs will accept Defendants' revised proposal in satisfaction of Request No. 82.

With respect to Request Nos. 81, 83, 84 and 98, the offer we set out in our December 3 letter is relevant to more than Request No. 98 because it contemplates a search for correspondence not merely with vendors, but with third parties generally, regarding whether the specific digital fingerprinting technologies identified in your August 17 letter constitute standard technical measures. We cannot agree to search for any and all "communications concerning the list of technologies set out in [y]our August 17, 2021" (Dec. 18 Letter from P. Korologos), which would seemingly encompass, for example, internal or external communications concerning Content ID and would thus be problematically overbroad and burdensome. We would ask that you reconsider the compromise set out in our December 3 letter or provide a counterproposal that is reasonably narrowed. Should you have further compromise proposals to offer as to Request Nos. 81, 83, or 84, Defendants will likewise consider them.

**Request Nos. 85-87:** Once again, Defendants have not "categorically refused to engage on these Requests," as you claim. To the contrary, Defendants agreed to produce documents in their original Responses and Objections and, as you acknowledge, have done so (*see, e.g.*, GOOG-SCHNDR-00037919). And in a further attempt to reach compromise, Defendants subsequently proposed that they search for and produce "non-privileged documents, if any, from relevant members of the Checks product team sufficient to show the purpose for the creation and implementation of the Checks tool, what videos the Checks tool runs references against, and documents sufficient to show the policy rationales behind the operation of the Checks tools." Dec. 3 Letter from E. Richlin. We are glad you have accepted our compromise proposal as to Request Nos. 86 and 87. With respect to Request No. 85, we note your reservation of rights with regard to this request. As we have stated previously, the discovery process does not permit

**WILSON SONSINI**

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 11

Plaintiffs to interpose overbroad requests, agree to compromises, and then, after receiving the results of those compromises, simply come back and demand more. To that point, Defendants do not agree that any additional production in response to Request No. 85 is warranted, and any production of the proposed materials will be without waiver of the position that Defendants have satisfied their production obligations with respect to Request No. 85.

**Request No. 95:** Here too, your statement that Defendants have "refused to engage on this Request" is belied by the Parties' correspondence. Defendants will not agree to produce "all documents from January 1, 2010 to the present concerning the duties imposed by Section 1202 of the DMCA on YouTube," which seeks documents over more than *a decade*, including documents that (insofar as they exist) would presumably be privileged. Defendants are, however, willing to search for non-privileged communications, if any, between relevant members of Defendants' copyright team and third parties that discuss the duties imposed by Section 1202 of the DMCA on YouTube. We propose to produce such documents, if they exist, from within the statute of limitations period. Please let us know if Plaintiffs will accept this counterproposal.

**Request Nos. 102-103:** Here again, you incorrectly claim that Defendants have "refused to engage on these Requests" while citing correspondence that clearly refutes that. Your August 17 proposal, which you generously describe as "detailed," included numerous parts and subparts seeking (among many other things) "All documents reflecting the factors considered by the algorithms used in the Recommended Videos and YouTube Search features" and "All documents reflecting the extent to which the Recommended Videos and YouTube Search features influence or determine which videos are displayed to users." Aug. 17 Letter from D. Blaisdell. That proposal did not address the overbreadth or burden issues posed by your original requests. As you acknowledge, Defendants subsequently offered to search for and produce documents maintained in the ordinary course of business, if any, sufficient to show whether actual or alleged infringement of a given video is taken into account by YouTube's Recommended Videos and YouTube Search functions, dating from three years prior to the filing of the original complaint. *See* Dec. 3 Letter from E. Richlin. While we appreciate your willingness to consider this counterproposal, the Federal Rules do not contemplate a requirement that a party search in advance for documents and describe them to the other side in order that the other side may evaluate the theoretical sufficiency of a compromise. We have proposed a compromise and stand ready to search for, collect, review, and produce documents, if any, that are responsive. Please advise if Plaintiffs will accept it.

\*   \*   \*

In further response to Plaintiffs' letter of December 8, Defendants respond regarding Request Nos. 53 and 65 as follows:

**WILSON SONSINI**

Phil Korologos
BOIES SCHILLER FLEXNER LLP
January 14, 2022
Page 12

**Request No. 53:** With respect to Request No. 53, we reiterate that this request is overbroad and unduly burdensome. Even more problematic perhaps, Plaintiffs have yet to articulate any theory that renders the numerous categories of documents that this Request seeks (and Plaintiffs continue to press for) relevant. Defendants have already told you, in Defendants' response to Schneider's Interrogatory No. 1, how YouTube handles metadata associated with the original uploaded file in the video upload and transcoding process. Moreover, in response to this Request, Defendants have already agreed to produce documents sufficient to show YouTube's policies and procedures regarding CMI and transcoding. In the interest of compromise, we further agreed to produce publicly available documents concerning YouTube's use of ISRC/ISWC codes in its DDEX feed (Oct. 10 Letter from E. Richlin), and have done so. The various subparts of this Request, as written, appear to seek documents in support of various theoretical ways that Defendants *might* treat the metadata associated with original uploaded video files. That is perhaps not surprising, as these document requests were propounded on the same date as Schneider's Interrogatory No. 1, and so Plaintiffs did not yet have the benefit of Defendants' response to that Interrogatory. Nevertheless, we ask that you please reconsider this request, in light of the information Defendants have since provided about YouTube's treatment of metadata, rather than pressing discovery that would require the parties to engage in an extended counterfactual exercise. Should you wish to propose a narrowed version of this request, that reasonably accounts for the information Defendants have provided, then Defendants are open to considering it.

**Request Nos. 65-67:** We address Request No. 65 only to acknowledge Plaintiffs' confirmation that Defendants' production of non-privileged, reasonably accessible documents, if any, sufficient to show instances when YouTube has helped to defend a YouTube creator engaged in fair use against a copyright infringement claim in connection with the YouTube initiative described at https://support.google.com/youtube/answer/9783148?hl=en and sufficient to show YouTube's criteria for evaluation of candidates for inclusion in the YouTube initiative described at https://support.google.com/youtube/answer/9783148?hl=en satisfies Request No. 65. As to Request Nos. 66 and 67, we note that the parties' discussion concerning those requests has proceeded in a separate line of correspondence and will accordingly respond under separate cover.

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

  */s/ Eli B. Richlin*
Eli B. Richlin

**Supplemental Appendix 1**
**Defendants' Search Term Counter-Proposals**

Request No. 2 Search Term Proposal
   a) Maria Schneider
       a. Maria w/2 Schneider
       b. (Maria OR Schneider) AND (ArtistShare OR "Artist Share")
       c. Schneider AND ("Content ID" OR ContentID)
       d. Schneider AND licens*
       e. Schneider w/2 Orchestra
       f. MariaSchneider*
       g. SchneiderMaria
   b) Works in Suit:
       a. Exact Phrase Searches:
            i. Wyrgly
            ii. "Gumba blue"
            iii. "Some circles"
            iv. "Green piece"
            v. "My lament"
            vi. "Dance, you monster, to my soft song"
            vii. "Scenes from childhood"
            viii. Waxwing
            ix. "Bird count"
            x. Allegresse
            xi. "Journey home"
            xii. "Sea of Tranquility"
            xiii. "Concert in the garden"
            xiv. "Three romances"
            xv. "Buleria, solea y rumba"
            xvi. "Divided by two"
            xvii. "This 'n that"
            xviii. "Coot stew"
            xix. "Swing street"
            xx. "Baytrail shuffle"
            xxi. "City sunrise"
            xxii. "Samba solsctice"
            xxiii. "One for Tad"
            xxiv. Espino
            xxv. "The grail"
            xxvi. "Smooth talk"
            xxvii. "Prairie dance"
            xxviii. "Finding flight"
            xxix. Tranquilidade
            xxx. "Tork's café"
            xxxi. "The blasphemy"

      xxxii.    "Sue (or in a season of crime)"
     xxxiii.    "Vikings Anthem"
     xxxiv.    "The Pretty Road"
      xxxv.    "Cerulean Skies"
     xxxvi.    "Aires de Lando"
     xxxvii.    "Rich's Piece"
    xxxviii.    "Winter Morning Walks"
     xxxix.    "Carlos Drummond de Andrade Stories"
        xl.    "Walking by Flashlight"
       xli.    "The Monarch and the Milkweed"
      xlii.    "Arbiters of Evolution"
     xliii.    "The Thompson Fields"
     xliv.    "A Potter's Song"
      xlv.    Lembranca
     xlvi.    "A World Lost"
     xlvii.    "CQ CQ, Is Anybody There"
    xlviii.    "Data Lords"
     xlix.    Sanzenin
         l.    "Stone Song"
        li.    "Braided Together"
       lii.    "The Sun Waited for Me"
      liii.    "Willow Lake"
  b.  (Schneider) AND:
         i.    Evanescence
        ii.    Gush
       iii.    "Last season"
       iv.    "El viento"
        v.    Lately
       vi.    "The willow"
      vii.    "Hang gliding"
     viii.    Nocturne
       ix.    Dissolution
        x.    "Now and then"
       xi.    "In a pinch"
      xii.    "Free fall"
     xiii.    Anthem
     xiv.    Evelyn
      xv.    Recapitulation
     xvi.    Returning
     xvii.    Alchemy
    xviii.    "Sky Blue"
     xix.    Home
      xx.    Nimbus
     xxi.    "Don't Be Evil"
     xxii.    "String Quartet No. 1"

      xxiii.    Sputnik
      xxiv.    "Look up"
      xxv.    Bluebird

Request No. 3 Search Term Proposal
- a) Dan w/2 Coleman
- b) "Modern Works"
- c) Modernworks*
- d) Dancoleman
- e) "Side Music"
- f) Mark w/2 Righter
- g) Marie w/2 "Le Claire"
- h) Ryan w/2 Truesdell
- i) Zach* w/2 Bornheimer

Request Nos. 8 and 9 Search Term Proposals
- a) Pirate Monitor:
    - a. Pirate w/2 Monitor
    - b. Gabor w/2 Csupo
    - c. (Gabor OR Csupo) AND (PM OR Pirate)
    - d. Csupo AND ("Content ID" OR ContentID)
    - e. Csupo AND licens*
    - f. Piratemonitor*
    - g. Usintellectualpropertyllc*
    - h. "Intellectual Property LLC"
    - i. "IPLLC"
    - j. "IP LLC"
    - k. Ransom AND Nova
    - l. Ransomnova*
    - m. Ransom* AND (Massive w/2 Films)
    - n. Ransom* AND (Movie w/2 Mania)
    - o. Ransom* AND (Movie w/2 Fun)
    - p. Ransom* AND (Movie w/2 Festival)
    - q. Ransom* AND (Entertainment w/2 Movie w/2 Channel)
    - r. Ransom* AND (Ultimate w/2 Entertainment)
    - s. ("Ransom Nova" or ransomnova*) AND Avengers
    - t. ("Ransom Nova" or ransomnova*) AND Fantastic
    - u. ("Ransom Nova" or ransomnova*) AND (Amazing w/2 Channel)
    - v. ("Ransom Nova" or ransomnova*) AND (Avenger w/2 film)
    - w. Sarfraz AND Khan
- b) Works in Suit:
    - a. Zimmer w/3 Feri
    - b. Csak w/5 szex w/5 semi