# EXHIBIT 9

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

One Market Plaza
Spear Tower, Suite 3300
San Francisco, California 94105-1126

O: 415.947.2000
F: 415.947.2099

LAUREN GALLO WHITE
Internet: LWHITE@wsgr.com

October 25, 2022

**Via Electronic Mail**

Carol O'Keefe
KOREIN TILLERY
One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101-1625

      Re:    *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD

Dear Carol:

      I write in response to your letter of October 13, regarding Defendants' production of data pursuant to the Court's August 30 Order.

      It is troubling that Plaintiffs continue to demand data neither requested in your letter brief to the Court nor contemplated by the Court's August 30 Order. Throughout your October 13 letter, you take the untenable position that Plaintiffs are necessarily entitled to all data fields and types discussed at any point during the parties' meet-and-confers. *See, e.g.*, October 13 Letter at 1-2 ("Since this field was also a subject of our meet and confer process, it should have been produced . . . ."). Not so. The Court ordered YouTube to produce limited categories of data in response to the specific requests set out in Plaintiffs' letter brief. Plaintiffs cannot rewrite the Court's order now to include data requests the Court did not have the opportunity to consider, much less grant.

      *Claimant Information*. Defendants have satisfied the Court's order to produce the takedown-notice data Plaintiffs requested in their letter brief for a 90-day sample period. Plaintiffs' attempt to contort their two-word request for "claimant information" into a request for any and all information in Defendants' takedown-notice database that could conceivably "aid in the identification of discrete claimants" is unreasonable. Indeed, Plaintiffs do not even try to define what that information might be apart from claimant email address and country of origin and, even as to those two categories, offer no reason for their production now.

      *Claimant Email Addresses*. Plaintiffs provide no justification for their invasive demand that YouTube produce the email address of every person who submitted a takedown notice corresponding to the roughly 1.7 million videos in the sample data. Plaintiffs plainly do not need these email addresses for purposes of seeking class certification, and there is no need to identify

WILSON SONSINI

Carol O'Keefe
KOREIN TILLERY
October 25, 2022
Page 2

the members of a putative class that has not actually been certified at this time. Plaintiffs did not raise in their letter briefs—and the Court did not order—the production of many thousands of private email addresses. If a copyright infringement class is certified, we agree to revisit your new claimant email address request.

      *Claimant Country of Origin*. We disagree that Plaintiffs are entitled to "country of origin" data simply because it was discussed as part of an unrealized compromise. The question was not presented to the Court. Nevertheless, to the extent that that information is readily available, Defendants are willing to supplement their October 7 data production to include "country of origin" information.

      *Complaint Origin*. As we explained in the cover letter accompanying Defendants' production, the sample data Defendants produced on October 7 does not include takedown notices submitted through the Content ID system. While we believe that obviates any need for "complaint_origin" data, Defendants are willing to supplement their production to include this field.

      *Copyrighted Work*. The "title of copyrighted work" field contains the description of the copyrighted work that the claimant provided in submitting their takedown notice through one of YouTube's copyright tools. Depending on the type of work at issue (e.g. video, song, software) and the complaint origin (e.g., which copyright tool was used), the user may have supplied a video URL, a copyright registration number, or some other identifier. We have already provided that information. There is no separate specific data field for copyright registration numbers that Defendants have withheld.[1]

      *Counter Notification Data*. In the course of our meet-and-confers, Plaintiffs requested data showing whether a counter notification had been submitted for each sample takedown notice. *See* July 12, 2022 Letter from C. O'Keefe to L. Gallo White (seeking data showing that "No counterclaim was filed"). That data has been provided. Plaintiffs indicated during the meet-

---

[1] We note that the portion of Chris Ting's deposition that you cite does not indicate that there is a dedicated field in YouTube's webform for copyright registration number, much less that YouTube stores that data in a specific database field. Mr. Ting simply explained that, in response to a follow-up, case-specific request from YouTube for additional information about a copyrighted work at issue, a claimant could provide a copy of that work, further description, or a copyright registration number in their correspondence.

WILSON SONSINI

Carol O'Keefe
KOREIN TILLERY
October 25, 2022
Page 3

and-confers that their requests for data concerning counter notification date, reason, and resolution, however, were made "[s]olely" in connection with arguments on fair use. *Id.*

The Court's order makes no mention of counter-notice data.[2] Dkt. No. 165. And as to fair use, the Court rejected Plaintiffs' requests for any information beyond the Content ID percentage YouTube had offered to produce. *See id.* (ordering YouTube to produce only "the percentage of disputed Content ID claims for the year 2021 where the user selected fair use as the ground for the dispute"). Plaintiffs' demand for counter-notice date, reason, and resolution data thus finds no support in the order.

Your claim that YouTube's production of counter notification data is "insufficient" because "YouTube rejects the vast majority of counter notifications and refuses even to process them" is puzzling. YouTube publicly discloses statistics concerning its processing of counter notifications. *See* Copyright Transparency Report ("We accepted fewer than 19% of counter notifications submitted for removals that occurred during the second half of 2021."). Further, the granular data that Plaintiffs seek about each counter notification does not appear relevant in identifying class members since Plaintiffs have not conditioned membership on whether a counter notification resulted in a video's reinstatement. *See* Dkt. No. 190 at 3-4 (seeking certification of classes where videos were simply "removed from YouTube due to a successful Takedown Notice").

Nevertheless, without waiving these objections or conceding the data's relevance, Defendants can agree to produce the date of the counter notifications identified in the takedown data produced on October 7.

***Revenue Data***. We confirm that the produced revenue data reflects the total gross advertising revenue associated with each removed URL (before, for example, any revenue sharing). The negative values in that data, which amount to a small fraction of a cent, should be disregarded; the revenue for such videos is $0.

***Deprecated Data***. We have repeatedly informed Plaintiffs of YouTube's retention policies and made clear that YouTube does not retain certain information concerning user-

---

[2] The Court's Order is reasonably construed as including only those categories of data Plaintiffs claimed to need "for each successful takedown notice where the video was removed"—namely, "the date of the notice, claimant information, copyright owner information, copyrighted work infringed, URL of the infringing video, and Google gross ad revenue associated with the infringing video." Dkt. No. 156.

WILSON SONSINI

Carol O'Keefe
KOREIN TILLERY
October 25, 2022
Page 4

deleted videos. *See, e.g.*, January 15, 2021 Letter from L. Gallo White to J. Wright. Defendants cannot produce data they no longer possess.

**CLFN Metadata**. Defendants produced the "clfn" data in their databases for the entire 90-day sample of allegedly infringing videos—beyond the 30-day sample required by the Court. In so doing, Defendants more than satisfied their obligations. Your insistence that Defendants produce even more "clfn" metadata exceeds your request to the Court, and the data the Court ordered produced. Even more, your request is makework. All of the classes Plaintiffs seek to certify required the removal of a video in response to a takedown notice. *See* Dkt. No. 190 at 5 ("A successful Takedown Notice is required for all four classes."); *id.* at 3-4 (limiting proposed "Clip Filename Class" to persons whose works were "removed from YouTube due to a successful Takedown Notice"). Given this, and given that Defendants have already produced available "clfn" metadata for more than 1.7 million videos, there is no reasonable basis for Plaintiffs to request more.

Very truly yours,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

         */s Lauren Gallo White*

Lauren Gallo White