1  DAVID H. KRAMER, SBN 168452
   MAURA L. REES, SBN 191698
2  LAUREN GALLO WHITE, SBN 309075
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100
   Email:  dkramer@wsgr.com
6          mrees@wsgr.com
           lwhite@wsgr.com
7
   BRIAN M. WILLEN (admitted *Pro Hac Vice*)
   CATHERINE R. HARTMAN (admitted *Pro Hac Vice*)
   WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
   1301 Avenue of the Americas, 40th Floor
   New York, NY 10019-6022
   Telephone: (212) 999-5800
   Facsimile: (212) 999-5801
   Email:  bwillen@wsgr.com
   Email:  chartman@wsgr.com

8  Attorneys for Defendants and Counterclaimants
   YOUTUBE, LLC and GOOGLE LLC

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12  MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

   Plaintiffs,

   v.

   YOUTUBE, LLC and GOOGLE LLC,

   Defendants

   ─────────────────────────

   YOUTUBE, LLC and GOOGLE LLC,

   Counterclaimants,

   v.

   PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,

   Counterclaim Defendants.

CASE NO.: 3:20-cv-04423-JD

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE PORTIONS OF THE EXPERT REPORT AND TESTIMONY OF DEFENDANTS' EXPERT FRANCOIS-XAVIER NUTTALL**

Date:   April 13, 2023
Time:   10:00 a.m.
Dept.:  11
Judge:  Hon. James Donato

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

    I.     Plaintiffs' Section 1202 Claim .................................................................................. 2

    II.    Defendants' Rebuttal Expert, FX Nuttall ................................................................. 3

    III.   Plaintiffs' *Daubert* Challenge .................................................................................. 4

ARGUMENT ..................................................................................................................................... 5

    I.     Nuttall Does Not Opine On "What Constitutes CMI" Under Section 1202 ........... 5

    II.    Nuttall's Opinions Easily Meet *Daubert*'s Relevancy Requirement ...................... 6

    III.   Nuttall's Opinions Are Not Subject To Exclusion Under Rule 403 ........................ 9

CONCLUSION ............................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Baker v. SeaWorld Ent., Inc.*,
  423 F. Supp. 3d 878 (S.D. Cal. 2019) ............................................................................... 6

*Cage v. City of Chi.*,
  979 F. Supp. 2d 787 (N.D. Ill. 2013) ................................................................................. 6

*Daubert v. Merrell Dow Pharms., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ............................................................................................. 6

*Harrington v. Pinterest, Inc.*,
  2021 WL 4033031 (N.D. Cal. Sept. 3, 2021) .................................................................... 2

*Harrington v. Pinterest, Inc.*,
  2022 WL 4348460 (N.D. Cal. Sept. 19, 2022) .......................................................... 10, 11

*Isola USA Corp. v. Taiwan Union Tech. Corp.*,
  2015 WL 12555856 (D. Ariz. Aug. 13, 2015) .................................................................. 6

*Lauderdale v. NFP Ret., Inc.*,
  2022 WL 17324416 (C.D. Cal. Nov. 17, 2022) ................................................................ 9

*Messick v. Novartis Pharms. Corp.*,
  747 F.3d 1193 (9th Cir. 2014) ........................................................................................... 6

*Open Text S.A. v. Box, Inc.*,
  2015 WL 393858 (N.D. Cal. Jan. 29, 2015) ..................................................................... 9

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010) ............................................................................................. 6

*Rovid v. Graco Children's Products Inc.*,
  2018 WL 5906075 (N.D. Cal. Nov. 9, 2018) .................................................................. 10

*SPS Techs., LLC v. Briles Aerospace, Inc.*,
  2021 WL 4913509 (C.D. Cal. Sept. 8, 2021) .................................................................... 9

*Stevens v. CoreLogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ............................................................................................. 2

*United States v. Sandoval-Mendoza*,
  472 F.3d 645 (9th Cir. 2006) ............................................................................................. 6

**STATUTES**

17 U.S.C. § 1202 ........................................................................................................... *passim*

**RULES**

Fed. R. Evid. 403 ................................................................................................................................. 9

Fed. R. Evid. 702 ................................................................................................................................. 6

# INTRODUCTION

For most of this case, Plaintiff Maria Schneider cast about looking for any basis for her claim that YouTube improperly handled copyright management information ("CMI") in violation of 17 U.S.C. § 1202. Very late in the day, she claimed that for nine videos, YouTube's automated formatting process (called "transcoding") had removed song title information embedded in an obscure metadata field called "CLFN" (or Clip File Name). These same song titles remained present in the publicly-searchable and accessible names of those videos on YouTube.[1] Yet, Schneider nonetheless claims that the failure to maintain the titles in the invisible "CLFN" metadata field should be actionable under Section 1202.

YouTube has detailed why Schneider's belated claim fails on multiple independent grounds as a matter of both fact and law. *See* Dkts. 164, 173, 268.[2] To paper over these dispositive flaws, Plaintiffs offered Paul Jessop—a purported "expert" who had never heard of "CLFN" metadata before this case—to expound upon why its absence was somehow meaningful.

YouTube moved to exclude Jessop's testimony. Dkt. 264. In the alternative, YouTube offered expert Francois-Xavier Nuttall as a rebuttal witness to explain that Jessop's testimony rested on numerous faulty assumptions and fundamentally misunderstood the transcoding process. Among other things, Nuttall showed that online platforms have compelling reasons for removing metadata buried in user-uploaded content. Nuttall also demonstrated that "CLFN" metadata, an esoteric field which may be auto-generated in rare cases where users edit their

---

[1] Schneider notes, for example, that the title "My Lament" appeared in the CLFN metadata field of one video file, but that same information also appeared in the public title of the video—"Tim Acke & Quintessence Big Band: My Lament by Maria Schneider"—and so the information remained visible and discoverable on YouTube's streaming service. *See* Dkt. 268-1.

[2] Defendants have shown that: (1) YouTube did not know of the presence of Schneider's CMI in the "CLFN" metadata field of any video; (2) the information was not removed, but remained visible and searchable on the service; (3) Schneider, through her agent, granted YouTube authorization to reformat videos containing Schneider's works; and (4) YouTube did not know that the common practice of removing metadata would foment infringement of Schneider's works because Schneider never told YouTube that she used the CLFN metadata to police infringement (and, in fact, she did not).

OPPOSITION TO MOTION TO EXCLUDE FRANCOIS-XAVIER NUTTALL -1- CASE NO. 3:20-CV-04423-JD

1  videos using one particular company's software tools, is not used for copyright management
2  purposes.
3        Plaintiffs neither contest Nuttall's qualifications nor the validity of what Nuttall has to
4  say. Instead they manufacture an argument to exclude his testimony based on his supposedly
5  improper use of the phrase "copyright management information." *See* Dkt. 256 ("Mot."). Based
6  on this contrived misalignment, Plaintiffs seek to exclude broad swaths of his testimony,
7  including numerous paragraphs that do not even mention the phrase. But Nuttall does not purport
8  to opine on the statutory definition of CMI, and it would not be within his purview to do so.
9  Plaintiffs seek to exclude Nuttall's testimony not because of any supposed risk of juror
10  confusion, but because it exposes that their "CLFN" metadata claim is baseless.

## BACKGROUND

### I.  Plaintiffs' Section 1202 Claim

      When users upload content to online platforms, the files can be in all manner of different formats. Through an automated transcoding process, services reformat the files so that they can be broadly accessible to users on the platform on a wide array of devices. As part of this automated transcoding process, it is standard for services like YouTube to automatically remove whatever metadata may be embedded in the original user-uploaded files. *See Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 671 & n.1 (9th Cir. 2018); *Harrington v. Pinterest, Inc.*, 2021 WL 4033031, at *2 (N.D. Cal. Sept. 3, 2021). Services remove embedded metadata for a variety of reasons, most notably because it is a common vector for malware and privacy violations. YouTube, for example, does not know what, if anything, may be embedded in the metadata of a user-generated video file. It simply removes the metadata, without regard to what it may contain and certainly without knowledge that it contains any CMI.

      Schneider has known about YouTube's transcoding process for many years. She chose to sue over it in 2020. In late 2022, she discovered that titles to her musical compositions had been buried in the "CLFN" metadata field of nine videos that she had identified as allegedly infringing her musical compositions. Schneider now claims that because YouTube's automated transcoding process removed embedded metadata from those uploaded videos (including the titles present in

1  the "CLFN" metadata), YouTube therefore intentionally and without authorization removed the
2  CMI contained in the "CLFN" metadata field of the nine videos while knowing that the removal
3  would "induce, enable, facilitate, or conceal" the infringement of her works. This, she claims, is
4  a violation of Section 1202.

5        Plaintiffs offered Paul Jessop, a former record industry executive, as an expert on
6  metadata and standard identifiers. Despite no relevant experience, Jessop offered wide-ranging
7  opinions on online platforms, video transcoding, metadata use and processing, third-party video
8  editing software, and the law. *See* Dkt. 264-4 ("Jessop Rep."). Jessop also opined on YouTube's
9  specific transcoding process, technological capabilities, state of mind, and even its supposed
10 liability, giving improper legal opinions to try to support Plaintiffs' "CLFN" theory. *See, e.g.*,
11 Jessop Rep. ¶ 152 ("The name of the original audio recording that appears in the 'clfn' field is
12 certainly rights management metadata in terms of the definitions used here and it plainly meets
13 the definition of CMI in the DMCA . . . .").

14       Defendants moved to preclude Jessop from testifying on several grounds. *See* Dkt. 264.
15 First, Jessop's opinions on the operation and imagined capabilities of YouTube's service, its
16 state of mind, and the law are not admissible expert testimony. *Id.* at 8-10. His testimony
17 amounts to little more than slanted interpretations of the documents and pleadings in this case
18 (based on the supposed "natural meaning" of words and his "common sense"). *Id.* at 8-9.
19 Second, Jessop has no expertise on "CLFN" metadata, or YouTube's treatment of metadata more
20 broadly. *Id.* at 10-12. Even the process Jessop used to identify the supposedly relevant "CLFN"
21 metadata required no expertise at all. Jessop simply reviewed that metadata field for the videos at
22 issue looking for anything "interesting," and then manually matched the titles of nine of
23 Schneider's compositions within it. *Id.* at 12-13.

24 **II.   Defendants' Rebuttal Expert, FX Nuttall**

25       Defendants offered Francois-Xavier (FX) Nuttall as a rebuttal expert. Nuttall explained
26 that video transcoding can be performed without regard to a file's embedded metadata, and there
27 are many important reasons that platforms hosting user-generated content may remove such
28 metadata. In particular, such metadata "has not been verified, may include information that

1  uploaders do not intend to share (including personally identifiable information), and may contain
2  malware that is harmful to the platform or its users." Dkt. 256-3 ("Nuttall Rep.") ¶ 2(b); *see also*
3  *id.* ¶¶ 28-31. As to the "CLFN" field identified by Jessop, it "is not a well-known or widely-used
4  field within the industry" and Nuttall was "not aware of anyone in the digital rights management
5  industry using the 'clfn' field for rights management." *Id.* ¶ 2(d).

6  Nuttall based his opinions on the knowledge and experience he acquired over a lengthy
7  career focused on technology and metadata for digital copyright management. Nuttall is the
8  founder and chief scientist of Quansic, a company that operates the world's largest music
9  identifier-based artist database. *Id.* ¶ 3. In his 30-year career, Nuttall has founded and worked in
10 executive roles for a variety of technology companies working to create and implement solutions
11 for identification of musical works on the Internet, including through novel uses of metadata. *See*
12 *id.* ¶¶ 3-14 & Appendix A. Nuttall has extensive experience on both the engineering and business
13 sides of such companies, including at Google and YouTube, where he managed an engineering
14 team focused on using standard identifiers to properly recognize contributors to creative works.
15 *See id.* Of particular relevance here, Nuttall developed software to process and transcode audio
16 and video files, and has studied technologies used to stream or convert video data, as well as
17 most international standards or de facto standards that exist in the market that provide
18 transcoding processes. *See, e.g.*, Declaration of Kelly M. Knoll in Support of Defendants'
19 Opposition to Plaintiffs' Motion to Exclude (hereinafter "Knoll Decl."), Exhibit ("Ex.") 1 at
20 18:18-19:15, 234:23-235:6.

21 **III.    Plaintiffs'** *Daubert* **Challenge**

22 Plaintiffs do not challenge Nuttall's expertise or his qualifications to offer opinions on
23 transcoding, on metadata generally, or on "CLFN" metadata specifically. In fact, Plaintiffs take
24 issue with only one narrow aspect of Nuttall's testimony. They claim that the way he used the
25 term "CMI" would be confusing to the jury. *See* Mot. at 1-2 (arguing: "his definition of CMI is
26 more restricted and limited than the definition of CMI in the relevant statute"). In particular,
27 Plaintiffs claim that Nuttall's definition does not encompass the author, copyright owner, or title
28 of a work (i.e., information that Plaintiffs claim to have identified in "CLFN" metadata fields).

1  *See id.* at 4-5. But that myopic assessment ignores the fact that Nuttall's report repeatedly
2  suggests that such information may constitute CMI for a given work (*e.g.*, Nuttall Rep. ¶¶ 34, 65-
3  66). Worse, Plaintiffs attempt to leverage this trivial critique to exclude broad swaths of Nuttall's
4  report—including his entire rebuttal of Jessop's "CLFN" opinions—and to preclude Nuttall
5  "generally from testifying concerning CMI" at all. Mot. at 8-9. Of the 23 paragraphs Plaintiffs
6  seek to exclude, the term "copyright management information" (or "CMI") is not mentioned in
7  ***sixteen*** of them. *See* Nuttall Rep. ¶¶ 2(d), 53-55, 59-61, 63, 65, 67-73.

## ARGUMENT

### I.  Nuttall Does Not Opine On "What Constitutes CMI" Under Section 1202

Nuttall is not an attorney, and he does not purport to offer opinions on whether information falls within the legal definition of "copyright management information" set out in Section 1202. Had Nuttall done so, Plaintiffs undoubtedly would have complained that his opinions were impermissible legal conclusions. *See* Mot. at 6 n.7. Plaintiffs' position appears to be that, in responding to their expert's opinions on copyright management information, Nuttall may not use that phrase at all—whether in the manner it is used in industry or in the legal sense.

Nuttall likewise does not purport to determine whether an artist's name or the title of a song can be considered copyright management information (under the statutory definition or otherwise)—or categorically say it cannot be. To the contrary, his report contemplates numerous instances where a song title, film title, or artist name may well be copyright management information. *See, e.g.*, Nuttall Rep. ¶¶ 34, 65-66 (describing, for example, "Frank Sinatra" as "CMI" that might appear in both a video's embedded metadata and user-entered title).

Nuttall simply explained in deposition that information like an artist name or a work title can be used in different ways and for different purposes. For example, an artist's name on a placard below a work hanging in a building serves to acknowledge the artist and properly attribute authorship of the work. *See* Knoll Decl. Ex. 1 at 176:12-179:2, 180:5-181:19. Alternatively, a copyright owner may embed their name in a digital work for the specific purpose of claiming ownership or deterring unauthorized use—in other words, for rights management purposes. *See id.* Nuttall explained that whether or not information such as a work's title is being

1  used for rights management purposes depends on the context in which the title is presented. *Id.* at

2  180:22-23, 181:13-14. That is not controversial. Plaintiffs' expert agreed that he would not

3  expect anybody to be using the "CLFN" metadata field for rights management purposes. Knoll

4  Decl. Ex. 2 at 168:13-15; *see id.* at 168:16-19 (CLFN field is an artifact of a coding process and

5  not volitional). And Schneider admitted that she did not. But none of this testimony was

6  addressed to the question of whether some particular piece or category of information constitutes

7  CMI under the law. Plaintiffs' argument on this front is mystifying.

## II. Nuttall's Opinions Easily Meet *Daubert*'s Relevancy Requirement

Rule 702 requires that expert testimony be both "relevant and reliable." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006). That said, "[t]he relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196-97 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)). "Relevancy depends on the particular law at issue because '[e]xpert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.'" *Id.* (alteration in original) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)).

Nuttall's opinions easily clear the relevancy bar. His reference to common industry terms is neither unexpected nor disqualifying; it is permissible expert testimony.[3] Nuttall's invocation of "copyright management information" does not render irrelevant all of his opinions that even "relate to CMI" or to "the potential uses of such CMI" (Mot. at 8-9). That is abundantly clear from simple examination of the Nuttall's opinions that Plaintiffs would have this Court strike.

---

[3] *See, e.g.*, *Isola USA Corp. v. Taiwan Union Tech. Corp.*, 2015 WL 12555856, at *2 (D. Ariz. Aug. 13, 2015) (rejecting motion to exclude expert testimony based on expert's use of a particular word because "[a] disagreement between experts on the precise use of scientific terminology should not be so inherently confusing to a jury such that an order regarding the use of certain terminology is warranted"); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 897-99 (S.D. Cal. 2019) (finding exclusion of testimony improper where expert utilized an "economic definition" of a term, rather than its legal definition); *Cage v. City of Chi.*, 979 F. Supp. 2d 787, 803 (N.D. Ill. 2013) ("an expert witness may opine on the accepted meaning (or lack thereof) of a word or phrase within a particular industry based [on] his or her experience and training") (collecting cases).

Simply stated, Plaintiffs seek to leverage a quibble on terminology into a shield for their own expert, targeting swaths of Nuttall's opinion that never mention the term "CMI" but that do illustrate the fundamental deficiencies in Jessop's analysis.

For example, Plaintiffs seek to exclude paragraph 34 of Nuttall's report, which responds to Jessop's assertion that, by deleting embedded metadata, YouTube prevents creators from using CMI to protect their rights. Nuttall explains:

> If a given video included a metadata field populated with, for example, the name of an artist who composed or recorded a song (e.g., Frank Sinatra), the uploading user can still include that information in the publicly accessible fields in connection with the video's upload (the user-entered metadata), such as by titling the video "Favorite Song by Frank Sinatra." Thus, the removal of CMI present in the annotative embedded metadata does not prevent creators from using the same CMI to protect and exploit their rights.

Nuttall Rep. ¶ 34. First, the testimony is accurate. Second, Nuttall clearly suggests that an artist's name *can* be used as "CMI." Third, Nuttall nowhere suggests that Schneider's song titles cannot be CMI. But even assuming Nuttall was using "CMI" in some "idiosyncratic" manner, as Plaintiffs contend, his opinion—that the removal of information in a video's embedded metadata does not prevent creators from using that same information to identify videos on YouTube—is nonetheless still relevant to Schneider's CMI claim, as he is describing the very scenario at issue in Schneider's case.

Plaintiffs also seek to exclude paragraph 2(d), in which Nuttall explains:

> The "clfn" field identified by Mr. Jessop is not a well-known or widely-used field within the industry. I am not aware of anyone in the digital rights management industry using the "clfn" field for rights management (Mr. Jessop does not point to any evidence that even the Plaintiffs have done so), and Mr. Jessop does not claim otherwise.

*Id.* ¶ 2(d). Notably, this paragraph—like the vast majority of those Plaintiffs seek to exclude (*see* Mot. at 5 n.6, 8-9)—does not even use the term "copyright management information." *See* Nuttall Rep. ¶¶ 2(d), 34, 53-73. Plaintiffs argue that Nuttall's statement is "irrelevant to whether the CLFN field does or does not contain CMI as defined under 17 U.S.C. § 1202 (c)." Mot. at 8. But that completely misses the point. In a case where Plaintiffs must show that: (a) YouTube

1  *knew* that Schneider's CMI was contained in videos' "CLFN" metadata field; and (b) YouTube
2  *knew or should have known* that removing "CLFN" metadata would foment infringement,
3  Nuttall's undisputed testimony about the obscurity of the "CLFN" metadata field and the fact
4  that it is not used for rights management purposes, is not only relevant, but should dispose of the
5  claim entirely. It is plainly probative of YouTube's (lack of) scienter. The fact that Plaintiffs
6  dislike Nuttall's opinion does not render it irrelevant.
7        Plaintiffs also seek to exclude the whole section of Nuttall's report related to "CLFN"
8  metadata, seemingly because the "CLFN" metadata field "relate[s] to CMI" that they claim
9  Nuttall refuses to recognize. That position is specious. The "CLFN" portion of Nuttall's report
10 rebuts a wide range of claims from Mr. Jessop concerning, among other things, usage of the
11 "CLFN" metadata field, the costs and practical obstacles in utilizing user-provided "CLFN"
12 metadata as Jessop recommends, and the "tests" Jessop claims to have run. *See* Nuttall Rep.
13 ¶¶ 53-73. For example, Nuttall indicates:

> *Id.* ¶ 55: "Clfn" is not a well-known or widely-used field within the industry. Documentation of the "clfn" field is very scarce and imprecise. It appears to be used solely in connection with Apple products, such as its video editing software (Final Cut Pro X).
>
> *Id.* ¶ 56: There is no recognized, industry-standard use of the "clfn" field, which stands for "clip file name." That field may contain gobbledygook or text no more descriptive than "My Movie 1." . . . Today's complex environment of online music services and multi-territorial licensing has prompted the development of rules and standards for the exchange of data about works and their creator. Understandably, those standards do not use or recognize "clfn" metadata.
>
> *Id.* ¶ 66: Moreover, information in annotative embedded metadata seeming to be CMI could be false, unrelated, mistaken, or joking—for example, a video with "Lion King" in the metadata could depict a pet cat. *See, e.g.*, www.youtube.com/watch?v=08UPlYSwWZs.

24 Plaintiffs do not even try to explain how these and many other opinions are rendered "irrelevant"
25 by Nuttall's supposedly "idiosyncratic" definition of CMI. Again, Nuttall never opines that the
26 "CLFN" metadata field cannot include information that meets the statutory definition of CMI.
27 Rather, what Nuttall does in the "CLFN" section of his report is rebut and critique Jessop's
28

1  conclusions and analysis and show the Court or a jury why Schneider cannot make out the
2  elements of her Section 1202 claim.

3  Plaintiffs may disagree with Nuttall's rebuttal opinions and are entitled to cross-examine
4  him about the same. But the idea that his testimony is irrelevant is beyond the pale. *See SPS*
5  *Techs., LLC v. Briles Aerospace, Inc.*, 2021 WL 4913509, at *11 (C.D. Cal. Sept. 8, 2021)
6  (rejecting exclusion of experts' opinions based on their supposedly "flawed" use of particular
7  terms, and concluding that, while the experts' "use of these terms is not always perfectly in
8  accord with their technical meaning under California law," the potential for jury confusion did
9  not warrant exclusion where the moving party was "free to cross examine the witnesses" and
10 "the Court will instruct the jury on the law it must apply"); *Lauderdale v. NFP Ret., Inc.*, 2022
11 WL 17324416, at *9 (C.D. Cal. Nov. 17, 2022) (rejecting motion to exclude expert on the basis
12 that his analysis relied on "the wrong industry standards" because such critique went to "the
13 weight of his testimony," not its admissibility, and the proper way to address this was "vigorous
14 cross-examination"); *see also Open Text S.A. v. Box, Inc.*, 2015 WL 393858, at *2 (N.D. Cal.
15 Jan. 29, 2015) (Donato, J.) (rejecting exclusion of damages discussion where it "would be
16 straightforward to cross-examine" the expert on the critiques raised).

17 **III.  Nuttall's Opinions Are Not Subject To Exclusion Under Rule 403**

18 Plaintiffs also remarkably suggest that all of Nuttall's opinions concerning copyright
19 management information are likely to cause juror confusion and should be barred under Rule 403
20 because he describes industry usage of "copyright management information." This falls flat.
21 Nuttall never opines on the statutory definition of CMI nor undermines it; and there is no risk of
22 juror confusion in any event.

23 Plaintiffs first argue that because the presence of artist name and track title in the
24 "CLFN" field is central to their claim, any opinion that such information does not qualify as CMI
25 under Section 1202 poses a "serious risk of prejudice." Mot. at 5-7. Again, Nuttall offers no such
26 opinion. To the contrary, in the same paragraphs of his report that Plaintiffs seek to exclude,
27 Nuttall discusses the possibility of an artist's name ("Frank Sinatra"), a work's title ("Lion
28

1  King"), and an International Standard Recording Code ("USDBV0400641") all appearing in a

2  video's "CLFN" metadata field. *See* Nuttall Rep. ¶¶ 34, 64-66 (quoting Section 1202).

3        Plaintiffs separately assert that Nuttall's opinions pose a serious risk for juror confusion

4  because CMI is a "foreign concept." Mot. at 6. Not so. Examples of CMI, such as copyright

5  notices, are common in modern cultures. Jurors are more than capable of understanding that the

6  law sets out certain specific categories of "copyright management information" that are subject

7  to protection, and also appreciating that copyright owners have certain methods for using such

8  information for rights management purposes.[4] Both are true, and the Court will presumably

9  instruct the jury to that effect. Plaintiffs fall far short of showing that copyright management

10 information is so "foreign" a concept that, despite an instruction, jurors will be unable to

11 understand that, under Section 1202, CMI for a given work can include an artist's name or the

12 work's title.[5]

13       More generally, Defendants have no interest in jury confusion about the statutory

14 definition of CMI. Defendants have stressed (*e.g.*, Dkt. 268) that there is a clear distinction

15 between data in the "CLFN" metadata field and CMI generally. *Harrington v. Pinterest, Inc.*,

16 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) ("metadata and CMI are not synonymous").

---

[4] In his report, Jessop recognizes a distinction between "reference" metadata, such an artist's name or song title, and "rights management metadata," which he defines as "all the information that describes the ownership, license status, payment obligations and available licensing terms relating to the use of something." Jessop Rep. ¶¶ 65, 67, 105-106. Thus, he too expects the jury to understand there is a difference. Plaintiffs do not explain why the jury would appreciate that distinction only from their witness.

[5] Plaintiffs' "authority" on this point is no help. *See* Mot. at 6-7. In *Rovid v. Graco Children's Products Inc.*, 2018 WL 5906075 (N.D. Cal. Nov. 9, 2018), an expert performed testing and offered opinions that certain mattresses and carbon dioxide concentrations were "hazardous" or "hazardous to infants" (*id.* at *5)—a subject that was presumably "foreign" for many jurors. The court found the expert's methods were unreliable and did not support his conclusions since (among many other things) the expert could point to no standards or thresholds showing that particular carbon dioxide levels were either hazardous or safe. *Id.* at *5-8 (explaining an expert "cannot merely assert that any amount of CO2 rebreathing is hazardous"). While the Court explained that the expert's "definition of 'hazardous' d[id] not help," it was only one of many defects that the Court identified in striking his opinions. *Id.* The case certainly does not stand for the proposition that expert testimony should be stricken where use of a term departs from some statutory definition, though even that would be of little help here.

OPPOSITION TO MOTION TO EXCLUDE FRANCOIS-XAVIER NUTTALL     -10-     CASE NO. 3:20-CV-04423-JD

*Harrington* counsels that the removal of all metadata, including "CLFN" metadata, does not constitute an actionable removal of CMI, absent proof the defendant knew the removed metadata constituted CMI. *Id.* While the Parties plainly disagree on whether YouTube could be liable under Section 1202, the Parties do not disagree that Section 1202 sets out the full scope of protected copyright management information. Plaintiffs have offered no reason to think that Nuttall's rebuttal opinions are likely to mislead the jury given the plain language of the statute.

## CONCLUSION

Nuttall offers a compelling and proper rebuttal of Plaintiffs' "CLFN" theory. His testimony will aid, rather than confuse the jury. Plaintiffs' makeweight motion should be denied.

Respectfully submitted,

Dated:  March 17, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: */s/ David H. Kramer*
        David H. Kramer

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC