# EXHIBIT 1

to the Declaration of Kelly Knoll

in Support of Nuttall Opposition

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - x

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

Plaintiffs,

Case No. 3:20-cv-04423-JD

-against-

YOUTUBE, LLC; and GOOGLE LLC;

Defendants.

- - - - - - - - - - - - - - - - - - - - x

**CONFIDENTIAL**

Videotaped oral deposition of FRANCOIS-XAVIER NUTTALL, taken pursuant to notice, was held at the law offices of BOIES SCHILLER & FLEXNER LLP, 55 Hudson Yards, New York, New York 10001, commencing September 30, 2022, 9:03 a.m., on the above date, before Leslie Fagin, a Court Reporter and Notary Public in the State of New York.

- - -

MAGNA LEGAL SERVICES
320 West 37th Street, 12th Floor
New York, New York 10018
(866) 624-6221



APPEARANCES:

KOREIN TILLERY, LLC
Attorneys for Plaintiffs
205 North Michigan, Suite 1950
Chicago, Illinois 60601
BY: CAROL O'KEEFE, ESQUIRE
GEORGE ZELES, ESQUIRE (Appearing telephonically.)

-and-

BOIES SCHILLER & FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, New York 10001
BY: PHILIP C. KOROLOGOS, ESQUIRE
DEMETRI BLAISDELL, ESQUIRE
WALESKA SUERO GARCIA, ESQUIRE
ROBERT DWYER, ESQUIRE

WILSON SONSINI GOODRICH & ROSATI
Attorneys for Defendants and the Witness
650 Page Mill Road
Palo Alto, California 94304-1050
BY: ELI RICHLIN, ESQUIRE
KELLY KNOLL, ESQUIRE

ALSO PRESENT:

PAUL JESSOP

PAUL GLAUBERSON, Videographer
Magna Legal Services



A. I did not.

Q. Is the only source of the information you described as deposition from YouTube engineering team is reading Mr. Foucu's declaration as identified in footnote 17?

MR. RICHLIN: Objection to form.

A. Yeah, footnote 17 is the declaration of the Google engineer that I'm referring to.

Q. Did you have any conversations with any other YouTube engineering team members -- let me withdraw that.

Did you have any conversations with any YouTube engineering team members in preparation for your work on this case?

A. I did not.

Q. I believe you mentioned a third element of general video processing technologies that you are aware of for transcoding, is that right?

MR. RICHLIN: Objection to form.

A. Would you recall the three elements you are mentioning?



Q. My recollection is that you mentioned exposure to some engineering information that YouTube uses from when you were with Google and YouTube.

A. Correct.

Q. The second, you mentioned the declaration of an engineering team member which we've established is the declaration noted in footnote 17 and then the third, I believe you described that you are generally or you are aware of general video processing technologies not specific to YouTube, but with respect to video processing technologies generally used in the transcoding process, is that correct?

A. That is correct.

Q. What general video processing technologies are you familiar with?

A. Quite a few. I have written software to process videos, for instance, and in the process of developing this software, I became very familiar with the underlying technologies that were used to stream or convert video data.



Q. Anything else?
A. I wrote other pieces of software more specific geared towards audio file transcoding.
Q. Anything else?
A. I have studied most of the international standards or de facto standards that exist in the market that provides transcoding processes.
Q. Anything else?
A. I have been part of multiple international standards setting bodies that were dealing with transcoding video processes.
Q. Anything else?
A. Not that comes to my mind right now.
Q. When you mentioned that you have written software to process videos, what software have you written?
A. It's a layer of the AVI format that was part of the Microsoft Windows Media Player.
Q. Anything else?



A. In the more specific audio transcoding, I wrote a piece of software to edit the audio content of digital CDs.

Q. Anything else?

A. I also worked on hardware that processes metadata from the audio CDs also.

Q. When you say you worked on hardware that processes metadata from the audio CDs, what do you mean?

A. The audio CD has embedded metadata called PQ codes that support embedded metadata inside the CD player and I designed hardware to read such metadata from the CD.

Q. Any other software that you've written for the processing of media files that you haven't identified yet?

A. Yes, there is one more that's a product that was called Virtuosa. Virtuosa is a media player that allowed you to render digital audio and digital video files from a personal computer.

Q. Anything else?

A. Yes, we wrote specific plug-ins for the WinAMP Player which was a very popular



Q. Now, in your report at -- do you recall earlier today we talked about your CV and the Smart Metadata Project?
A. Yes.
Q. You started that initiative, I believe, when you were at CISAC right?
A. That is correct.
Q. You remember giving a speech in 2010 where you talked about how, among other things, you could use fingerprinting technology and a database of metadata to help identify works?
A. I don't recall specifically this conference.
Q. If you look at footnote 4, I think it is -- I'm sorry, 3, you gave the keynote speech at the Smart Metadata MidemNet Academy?
A. That is correct.
Q. Do you remember that speech?
A. I remember that speech.
Q. Have you looked at it recently?
A. I've parsed it for the purpose of refreshing the content, but I haven't looked



at it in its entirety.

Q. So well before you were even at Google, you were thinking about these issues, right?

A. Oh, yes, well before.

Q. And if you look over at the page numbered 1 on the patent which is the second page of the document, third page of the document.

A. Yes.

Q. Do you see on the background, that it talks -- about five lines down, it says, Additionally, artists associated with the musical content may want an acknowledgment of their work to be presented to a user viewing a video that includes their work.

Do you see that?

A. Yes, I do.

Q. And that you understood was some of the background that you and the Smart Metadata Project you were working on was trying to solve?

MR. RICHLIN: Objection to form.

Q. Is that right?



A. Not specifically.

Q. Why not?

MR. RICHLIN: You can answer.

Q. Why not?

A. I didn't get that part. Here, we talk about attribution, we talked about presenting to the end user the name of the contributors and it says, acknowledgment of their work, so we call this attribution, but this doesn't have the status of CMI. This is descriptive metadata, it's not rights management metadata.

Q. Are you saying that the information of who the artist is for work is not CMI?

MR. RICHLIN: Objection to form.

A. The list of contributors could have two forms. One is an informative form which is for acknowledgment and attribution, but that does not grant the cited contributors any specific financial benefit as opposed to CMI provided information where that grants them effective recognition of ownership.

Q. Do you understand that the name of the copyright owner of a work is CMI?



MR. RICHLIN: Objection to form.

A. I just explained there are two contexts. One is informative and that was not BCMI, and one is rights management purposes for financial claims and this is CMI.

Q. What's the basis of that statement?

A. The process is to derive informative information and rights management information are different. The legal liability behind each is different. The legal background for providing such data is different.

Q. What's the basis of that understanding?

A. My experience.

Q. So are you saying that CMI is limited only to information that can be used to engage in rights management for financial claims?

MR. RICHLIN: Objection to form.

A. CMI qualifies for recognition of ownership and financial benefits on the use and whereby informative information for



display does not qualify for that.

Q. Is the title of a work CMI?

MR. RICHLIN: Objection to form.

MR. KOROLOGOS: What's the basis of your objection?

MR. RICHLIN: Calls for a legal conclusion.

MR. KOROLOGOS: He has been talking and volunteering what CMI is for the last 10 minutes.

MR. RICHLIN: Because you have been asking him.

MR. KOROLOGOS: He volunteered it. Look at the transcript.

MR. RICHLIN: Same objection, whether or not he did not volunteer the word, CMI, it's improper testimony.

MR. KOROLOGOS: If he is comfortable saying what CMI is using a document cited in his report that you edited, he can answer the question.

MR. RICHLIN: I'm not directing him not to answer, but the objection still stands.



Q. The lawyers have had their fun. Let me ask the question again.
A. Please do so.
Q. Is the title of a work, CMI, in your understanding?
MR. RICHLIN: Same objection.
Q. You can answer.
A. Same answer. There are two sets of data that are provided on to different frameworks, legal frameworks and technical frameworks. They qualify as CMI.
If they are bound to warranty of accuracy -- may I rephrase.
In a CMI context, the party providing the information takes legal responsibility for the accuracy.
Q. So does that mean that you understand the title of a work to be CMI or not?
MR. RICHLIN: Objection to form.
A. Again, it depends in which context the title is provided.
Q. So there are contexts where the title of a work is not CMI, in your view?



MR. RICHLIN: Objection to form.
A. That is correct.
Q. Are there contexts where the name of the author of a work is not CMI, in your view?
MR. RICHLIN: Objection to form.
A. That is, again, correct.
Q. Are there contexts where the name of the copyright owner of a work is not CMI, in your understanding?
MR. RICHLIN: Objection to form.
A. Again, there are different contexts for different purposes.
Q. So that's a yes, that there are contexts where the name of the copyright owner of a work is not CMI?
MR. RICHLIN: Objection to form.
A. That is correct.
MR. KOROLOGOS: You have to give your lawyer a chance to object.
THE WITNESS: I'm sorry, I will.
Q. Based on your understanding, are there contexts where the name of -- I withdraw that.



Do you see paragraph 5 on page 2 of the patent which is Plaintiffs' Exhibit 169?

A. Yes, I do.

Q. This describes -- this patent concerns a method of identifying in a video sharing service and YouTube is a video sharing service, correct?

A. That is correct.

Q. A first video content item, what do you understand that to mean?

A. It means that we are designating a first element and that's all I can derive.

Q. Then it goes on to say, That includes an embedded sound recording identifying a composition associated with the embedded sound recording wherein the embedded sound recording is a particular version of the composition.

Do you see that?

A. Yes, I do.

Q. And is it your understanding that these were -- let me withdraw that.

Down at paragraph 6, same page, it says, In some embodiments, the composition



Q. Would that change any of your opinions?
A. I would have to read the recommendation, of course.
Q. Then it might?
A. I don't know what the recommendation is.
Q. You are not aware of it?
A. I am not aware of it.
MR. KOROLOGOS: Why don't we take a short break.
THE VIDEOGRAPHER: This will end video 6. Going off the record at 5:51.
(Recess.)
(Plaintiffs' Exhibit 170, printout of the Quansic website, marked for identification.)
THE VIDEOGRAPHER: We are back on the record at 6:07. This is be video 7.
Q. I asked the court reporter to mark as Exhibit 170, a printout of the Quansic website.
A. Thank you.
Q. Do you recognize that document?



MR. RICHLIN: Can you give him a minute to look at it.

MR. KOROLOGOS: All the time he needs.

A. Yes, that's the Quansic website.

Q. That's the Quansic website?

A. Correct.

Q. Does it appear to be complete?

A. I could not tell by the layout. We have product demos, we have a lot of stuff, so just looking at BOWI, it's not complete, so I could not tell if it's complete.

Q. But there is not any information that you see in Plaintiffs' Exhibit 170 that is not from the Quansic website, is that right?

A. It is all Quansic product, it's all related, yes.

Q. And your Quansic domain name is quansic.com?

A. That is correct.

Q. Do you consider yourself an expert experienced in the field of metadata for digital copyright management?



A. Yes, I am.
Q. What's the basis of your expertise?
A. It's 30 odd years of experience in metadata, in the field of audio content on digital networks.
Q. In your Quansic website, if you go, it looks like it's about four pages from the back, if you are looking down at the bottom, it's part of the portion of your website about the matching machine?
A. Okay. Matching machine, yes.
Q. Do you see the portion that says, 100 percent identifier coverage?
A. Yes.
Q. It says, Quansic introduces the first 100 percent identifier coverage dataset for sound recordings, music works and contributors, performers, songwriters, nonfeatured artists.
Do you see that?
A. Yes.
Q. Is that the same 100 percent topic we talked about earlier today that you have a current relationship with YouTube about?



A. The 100 percent is the objective. It's my vision statement for Quansic. I set up Quansic in such a way that I could deliver because I control the technology, I control the legal framework, I control the finance, so Quansic is a test bench of delivering the vision that you can have 100 percent identifier coverage for media content, audio content, trying to persuade you to do the same, but, obviously, you don't drive a Quansic like you drive a YouTube, it's very different, there are many constraints, but it is my vision that I'm trying to share.

Q. Is that part of the consultancy relationship that you have with YouTube today to discuss these topics?

A. Yes, it is.

Q. How many BOWIs have been issued?

A. About 30,000 maybe to date.

Q. How many ISWCs have been issued?

A. A little more than 60 million.

Q. 6-0?

A. 6-0 million.

Q. How many ISNIs?



**Errata Sheet**

| **Page:Line** | **Change** | **Reason** |
|---|---|---|
| 20:25 | Replace <WinAMP> with <Winamp> | To correct transcription errors |
| 21:6 | Replace <ASFS 5> with <ASFS file> | To correct transcription errors |
| 21:8 | Insert <them> between <protected> and <from> | To clarify the record |
| 24:11 | Replace <not, it> with <not. It> | To correct transcription errors |
| 25:14 | Replace <functionalities,> with <functionalities.> | To correct transcription errors |
| 25:15 | Replace <the software> with <The software> | To correct transcription errors |
| 26:11 | Insert <,> after <players> | To correct transcription errors |
| 27:3 | Insert <,> after <processors> | To correct transcription errors |
| 28:13 | Replace <V-R-T-U-O-S-A> with <V-I-R-T-U-O-S-A> | To clarify the record |
| 29:8 | Replace <WinAMP> with <Winamp> | To correct transcription errors |
| 29:21-29:22 | Replace <AudioSoft secure a file system> with <AudioSoft Secure File System> | To correct transcription errors |
| 29:24 | Replace <WinAMP> with <Winamp> | To correct transcription errors |
| 38:23 | Insert <,> between <does> and <an audio> | To correct transcription errors |
| 38:25 | Replace <need, but does not need or> by <not read, but does not read or> | To clarify the record |
| 43:15 | Replace <that explain mainly> with <they explain -- mainly> | To correct transcription errors |
| 46:11 | Replace <itself, the picture, the audio, you> with <itself -- the picture, the audio; you> | To correct transcription errors |

| 46:13 | Insert <;> between <video> and <and> | To correct transcription errors |
|---|---|---|
| 60:16 | Replace <majority are actually> with <majority actually> | To clarify the record |
| 62:8 | Insert <to> between <as> and <what> | To clarify the record |
| 77:9 | Replace <it should> with <the “should”> | To correct transcription errors |
| 77:20 | Replace <they still> with <is still> | To correct transcription errors |
| 78:10 | Replace <wording, used must never> with <wording used, “must never”> | To correct transcription errors |
| 82:10 | Replace <less> with <rights> | To correct transcription errors |
| 83:14 | Replace <, it should be> with <website> | To clarify the record |
| 84:10 | Replace <audio video> by <audio visual> | To clarify the record |
| 84:16-84:17 | Replace <one, but last> with <next to last> | To clarify the record |
| 89:4 | Replace <Katherine> with <Catherine> | To correct transcription errors |
| 89:6 | Replace <Katherine> with <Catherine> | To correct transcription errors |
| 89:12 | Replace <concise> with <precise> | To correct transcription errors |
| 96:6 | Replace <Van Der> with <van der> | To correct transcription errors |
| 104:18 | Replace <other> with <“other” --> | To correct transcription errors |
| 104:20 | Replace <Elysee> with <Élysée> | To correct transcription errors |
| 105:4 | Replace <’98> with <’88> | To clarify the record |
| 105:18 | Replace <date> with <update> | To correct transcription errors |
| 108:13 | Replace <baccalaureat> with <baccalauréat> | To correct transcription errors |
| 108:14 | Replace <time, science> with <time: science> | To correct transcription errors |
| 108:18 | Replace <Elysee de Chanel> by <Lycée | To correct transcription errors |

| | | |
|---|---|---|
| | international de> | |
| 109:6 | Replace <basic> with <basics> | To clarify the record |
| 109:21 | Replace <Elysee> by <the lycée> | To correct transcription errors |
| 112:6 | Replace <of> by <over> | To correct transcription errors |
| 117:16 | Replace <services, Mathematica> with <services. Mathematica> | To correct transcription errors |
| 117:18 | Replace <reserve and> with <research, and> | To correct transcription errors |
| 124:4 | Replace <IRAA> with <RIAA> | To correct transcription errors |
| 125:8-9 | Replace <of which ISWC, ISTC> with <including ISWC and ISTC> | To clarify the record |
| 128:8 | Replace <what to put you at the beginning> with <where to put you at the beginning> | To clarify the record |
| 129:3 | Insert <and> between <provided,> and <defining> | To clarify the record |
| 129:5 | Replace <claims, then> with <claims. Then> | To correct transcription errors |
| 129:6-129:7 | Replace <data, meaning, the activity on the platform, the streams and> with <data -- meaning, the activity on the platform, the streams -- and> | To correct transcription errors |
| 129:11-129:12 | Replace <those performing in mechanical rights> with <either performing or mechanical rights> | To clarify the record |
| 129:14 | Insert <and> after <functionally,> | To clarify the transcript |
| 129:15 | Replace <defined> with <define> | To clarify the transcript |
| 130:4 | Replace <fragment> with <fragmented> | To correct transcription errors |
| 130:9 | Replace <effective> with <respective> | To clarify the record |

| | | |
|---|---|---|
| 131:5 | Replace <published licenses,> with <publishers license> | To correct transcription errors |
| 131:20 | Replace <ISRC> with <ISWC> | To correct transcription errors |
| 135:4 | Replace <DSB> by <DSP> | To correct transcription errors |
| 142:19 | Replace <DSBs> by <DSPs> | To correct transcription errors |
| 148:4 | Replace <topic, security> with <topic. Security> | To correct transcription errors |
| 148:5 | Replace <high matter, computer> with <important matter. Computer> | To clarify the record |
| 168:18 | Replace <name, a clip> with <name – a clip> | To correct transcription errors |
| 168:19 | Replace <name, nothing in this definition hints me> with <name. Nothing in this definition hints to me> | To clarify the record |
| 169:20 | Replace <long> with <on> | To correct transcription errors |
| 169:20 | Replace <to 15,000 tags, 10, 15,000, 20,000 tags> with <to 10,000 tags -- 15,000 20,000 tags --> | To correct transcription errors and clarify the record |
| 178:5 | Replace <BCMI> with <CMI> | To clarify the record |
| 178:5 | Insert <for> between <is> and <rights> | To clarify the record |
| 178:6 | Replace <purposes for financial claims and this is> with <purposes -- for financial claims -- and this is> | To correct transcription errors |
| 178:9 | Replace <process is> with <processes> | To correct transcription errors |
| 180:10 | Replace <to> with <two> | To correct transcription errors |
| 189:6 | Insert <on> between <work> and <on> | To clarify the record |

Witness: Francois-Xavier Nuttall  — September 30, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

| 190:13 | Insert <do> after <not> | To clarify the record |
|---|---|---|
| 193:24 | Replace <void> with <devoid> | To clarify the record |
| 199:24 | Replace <sentence> with <sense> | To correct transcription errors |
| 201:16 | Replace <scientific or research> with <scientific research> | To correct transcription errors |
| 202:6 | Insert <,> between <process> and <where> | To correct transcription errors |
| 202:8 | Replace <give> with <gives> | To correct transcription errors |
| 202:9 | Insert <,> between <process> and <where> | To correct transcription errors |
| 204:18 | Remove <I> after <that> | To correct transcription errors |
| 208:12 | Replace <MPEG> with <FFmpeg> | To clarify the record |
| 210:14 | Replace <or dramatically> with <automatically> | To correct transcription errors |
| 210:16 | Replace <floor> with <tool> | To correct transcription errors |
| 218:9 | Replace <that, A,> with <that, first,> | To clarify the record |
| 218:10 | Replace <and; second, that> with <and, second, that> | To correct transcription errors |
| 220:3 | Replace <expectation> with <exploitation> | To correct transcription errors |
| 227:6-227:7 | Replace <an as easy> with <as easy a> | To clarify the record |
| 228:21 | Replace <IRAA> with <RIAA> | To correct transcription errors |
| 236:10 | Replace <content, trying to persuade you> with <content.  I'm trying to persuade YouTube> | To correct transcription errors |
| 236:12 | <YouTube, it's very> with <YouTube.  It's very> | To correct transcription errors |

Witness: Francois-Xavier Nuttall — September 30, 2022 Deposition
*Schneider v. YouTube, LLC,* No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

FXN Subject to the above changes, I certify that the transcript is true and correct.

__________ No changes have been made. I certify that the transcript is true and correct.

(signature)

November 4th 2022
(date)

Witness: Francois-Xavier Nuttall — September 30, 2022 Deposition
*Schneider v. YouTube, LLC,* No. 3:20-cv-04423-JD (N.D. Cal.)
Job No. 876151

ACKNOWLEDGMENT OF DEPONENT

I, Francois-Xavier Nuttall, do hereby certify that I have read and examined the foregoing testimony, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

[signature]
(signature)

November 4th 2022
(date)