# EXHIBIT 1

to the Declaration of Paul Harold

| | |
|---|---|
| George A. Zelcs (pro hac vice)<br>Randall P. Ewing, Jr. (pro hac vice)<br>Ryan Z. Cortazar (pro hac vice)<br>KOREIN TILLERY, LLC<br>205 North Michigan, Suite 1950<br>Chicago, IL 60601<br>Telephone: (312) 641-9750<br><br>Stephen M. Tillery (pro hac vice)<br>Steven M. Berezney, CA Bar #329923<br>Carol O'Keefe (pro hac vice)<br>KOREIN TILLERY, LLC<br>505 North 7th Street, Suite 3600<br>St. Louis, MO 63101<br>Telephone: (314) 241-4844 | Joshua Irwin Schiller, CA Bar #330653<br>BOIES SCHILLER FLEXNER LLP<br>44 Montgomery St., 41st Floor<br>San Francisco, CA 94104<br>Phone: (415) 293-6800<br><br>Philip Korologos (pro hac vice)<br>Joanna Wright (pro hac vice)<br>Demetri Blaisdell (pro hac vice)<br>BOIES SCHILLER FLEXNER LLP<br>55 Hudson Yards, 20th Floor<br>New York, NY 10001<br>Phone: (212) 446-2300<br><br>*Attorneys for Plaintiffs* |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>    Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>    Counterclaimants,<br><br>    vs.<br><br>PIRATE MONITOR LTD,<br><br>    Counterclaim Defendant. | Case Number: 3:20-cv-04423-JD<br><br>**CORRECTED DECLARATION OF MARIA SCHNEIDER IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD

I, Maria Schneider, declare as follows:

1. I am a Plaintiff and putative class representative in this case. I make this declaration in opposition to Defendants' Motion for Summary Judgment, filed on August 26, 2022. I have knowledge of the facts stated herein from my personal knowledge and, if called as a witness, I could and would competently testify thereto.

**Background**

2. I am a jazz musician, composer, and arranger. I have a bachelor's degree in music theory and composition from the University of Minnesota and a master's degree in music from the Eastman School of Music.

3. In 1992, I founded the Maria Schneider Jazz Orchestra, one of the foremost jazz ensembles in the world. For over a three-decade career, I have released nine albums and collaborated with prominent musicians including David Bowie, Gil Evans, Bob Brookmeyer, and many others.

4. I have received numerous awards and prizes for my work, including seven GRAMMY Awards and the nation's highest honor in jazz, being named an NEA Jazz Master by the National Endowment for the Arts.

5. I maintain a busy schedule of conducting jazz orchestras, lecturing on various topics and giving numerous concert performances. I have performed with more than 90 musical groups in over 30 countries.

6. I am also an advocate for the rights of musicians. I have testified before the US Congressional Subcommittee on Intellectual Property on digital rights, participated in round-table discussions for the United States Copyright Office, submitted comments to the Copyright Office, participated in a closed Congressional hearing with YouTube, and have written white papers and articles on the rights of musicians and copyright holders in the digital economy. I also offered commentary on the rights of musicians on CNN and have been quoted in numerous publications.

7. My latest album *Data Lords* (2020) received two GRAMMY Awards, was named *Jazz Album of the Year* by the Jazz Journalists Association, NPR, and international organizations and magazines, and was selected as a finalist for the Pulitzer Prize.

**Copyrighted Works at Issue**

8. I am the owner or co-owner of copyrights in works that are at issue in this litigation.

9. The 43 works at issue for my infringement claims are the following:

   a. "Wyrgly," authored and owned by Maria Schneider, 1989, PAu001628584

   b. "Evanescence," authored and owned by Maria Schneider, 1991, PAu001628588

   c. "Gumba blue," authored and owned by Maria Schneider, 1984, PAu001275028

   d. "Some circles," authored and owned by Maria Schneider, 1992, PAu001628581

   e. "Green piece," authored and owned by Maria Schneider, 1987, PAu001628590

   f. "Gush," authored and owned by Maria Schneider, 1992, PAu001803810

   g. "My lament," authored and owned by Maria Schneider, 1990, PAu001734757

   h. "Dance you monster to my soft song," authored and owned by Maria Schneider, 1991, PAu001628585

   i. "Last season," authored and owned by Maria Schneider, 1985, PAu001628586

   j. "El viento," authored and owned by Maria Schneider, 1994, PAu001952212

   k. "Scenes from childhood," authored and owned by Maria Schneider, 1995, PA0001213212

   l. "Waxwing," authored and owned by Maria Schneider, 1993, PAu001917961

   m. "Lately," authored and owned by Maria Schneider, 1988, PAu001275027

   n. "The willow," authored and owned by Maria Schneider, 1990, PAu001628587

   o. "Bird count," authored and owned by Maria Schneider, 1985, PAu001628589

   p. "Hang gliding," authored and owned by Maria Schneider, 1999, PA0001213206

   q. "Nocturne," authored and owned by Maria Schneider, 1999, PA0001213211

   r. "Allegresse," authored and owned by Maria Schneider, 1997, PA0001213207

   s. "Dissolution," authored and owned by Maria Schneider, 1998, PA0001213208

   t. "Journey home," authored and owned by Maria Schneider, 1999, PA0001213209

   u. "Sea of Tranquility," authored and owned by Maria Schneider, 1999, PA0001213210

v. "Concert in the garden," authored and owned by Maria Schneider, 2004, SR0000356519

w. "Three romances," authored and owned by Maria Schneider, 2001, PAu002834604

x. "Buleria, solea y rumba," authored and owned by Maria Schneider, 2004, PA0001234652

y. "Divided by two," authored and owned by Maria Schneider, 1994, PAu001856405

z. "In a pinch," authored and owned by Maria Schneider, 1990, PAu001628582

aa. "This 'n that," authored and owned by Maria Schneider, 1991, PAu001561822

bb. "Coot stew," authored and owned by Maria Schneider, 1990, PAu001561821

cc. "Swing street," authored and owned by Maria Schneider, 1990, PAu001561820

dd. "Baytrail shuffle," authored and owned by Maria Schneider, 1985, PAu001561819

ee. "City sunrise," authored and owned by Maria Schneider, 1991, PAu001561818

ff. "Samba solstice," authored and owned by Maria Schneider, 1985, PAu001058776

gg. "The grail," composition co-authored and co-owned by Maria Schneider, 1993, PAu001858957

hh. "Smooth talk," authored and owned by Maria Schneider, 1984, PA0000470172

ii. "Prairie dance," authored and owned by Maria Schneider, 1989, PA0000470171

jj. "Anthem," authored and owned by Maria Schneider, 1999, PAu002791175

kk. "Finding flight," authored and owned by Maria Schneider, 1997, PAu002791174

ll. "Tranquilidade," authored and owned by Maria Schneider, 1997, PAu002791171

mm. "Recapitulation," authored and owned by Maria Schneider, 1996, PAu002169603

nn. "Returning," authored and owned by Maria Schneider, 1997, PAu002169602

oo. "Tork's café," authored and owned by Maria Schneider, 1996, PAu002169601

pp. "Alchemy," composition co-authored and co-owned by Maria Schneider, 1993, PAu001859397

qq. "SUE (OR IN A SEASON OF CRIME)," co-authored by David Bowie, Maria Schneider, Paul Bateman, and Bob Bharma, owned by MSF Music, Jones/Tintoretto Entertainment Co. LLC, and Sherlock Holmes Music LTD., 2014, PA0002050446

10. The 72 works at issue for my CMI claims are contained in the following chart, along with the corresponding ISRC and ISWC codes:

| | **Work in Suit** | **ISRC** | **ISWC** |
|---|---|---|---|
| 1. | Wyrgly (1989) | USDBV0521941 | T0702071406 |
| 2. | Evanescence (1991) | USDBV0521942 | T0700525376 |
| 3. | Gumba blue (1984) | USDBV0521943 | T0700692109 |
| 4. | Some Circles (1992) | HKI191528311<br>USDBV0521944 | T0701707234 |
| 5. | Green Piece (1987) | USDBV0521945 | T0700687837 |
| 6. | Gush (1992) | USDBV0521946 | T0700692110 |
| 7. | My lament (1990) | USDBV0521947 | T0701175054 |
| 8. | Dance you monster to my soft song (1991) | USDBV0521941 | T0700452909 |
| 9. | Last Season (1985) | USDBV0521949<br>USDBV0505545 | T0701038165 |
| 10. | El Viento (1994) | USDBV0800048 | T0701965685 |
| 11. | Scenes from Childhood (1995) | HKI191528301<br>HKI191528302<br>HKI191528303<br>USDBV0800050<br>USDBV0800051<br>USDBV0800052 | T0709270643 |
| 12. | Bombshelter Beast (1995) | USDBV0800050 | T0709270643 |
| 13. | Night Watchman (1995) | USDBV0800051 | T0709270643 |
| 14. | Coming About (1995) | USDBV0800052 | T0709270643 |
| 15. | Waxwing (1993) | USDBV0800054 | T0702077993 |

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD
-5-

| | Work in Suit | ISRC | ISWC |
|---|---|---|---|
| 16. | Lately (1988) | USDBV0505541 | T0701041339 |
| 17. | The Willow (1990) | USDBV0505542 | T0702071122 |
| 18. | Bird Count (1985) | USDBV0505549 | T0700188415 |
| 19. | Hang Gliding (1999) | USQX91001088<br>USDBV0422941 | T0710633558 |
| 20. | Nocturne (1999) | USDBV0422942 | T0711863056 |
| 21. | Allegresse (1997) | HKI191528304<br>USDBV0422943 | T0710568787 |
| 22. | Dissolution (1998) | HKI191528305<br>USDBV0422944 | Preferred: T9015487588<br>Archived: T-902.929.142-7 |
| 23. | Journey Home (1999) | USDBV0422945 | T0710651845 |
| 24. | Sea of Tranquility (1999) | USDBV0422946 | T0711891585 |
| 25. | Concert in the Garden (2004) | USDBV0400641 | T0726109745 |
| 26. | Three Romances (2001) | USDBV0400642<br>USDBV0400643<br>USDBV0400644 | T0727026610 |
| 27. | Choro Dançado (2001) | USDBV0400642 | T9028532607 |
| 28. | Pas de Deux (2001) | USDBV0400643 | T0715118550 |
| 29. | Dança Ilusoria (2001) | USDBV0400644 | T9028696119 |
| 30. | Buleria, solea y rumba (2004) | USDBV0400645 | T0725997829 |
| 31. | Divided by two (1994) | USHM80989434 | T0727646743 |
| 32. | The Grail (1993) | US4W40800012 | T9015490752 |
| 33. | Anthem (1999) | NLB150100471 | T9015401260 |
| 34. | Tork's Café (1996) | USDBV0700154 | T0711906523 |
| 35. | Alchemy (1993) | US4W40800001 | T9029194318 |
| 36. | The blasphemy (1993) | US4W40800008 | T9015357456 |

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD
-6-

| | Work in Suit | ISRC | ISWC |
|---|---|---|---|
| 37. | SUE (OR IN A SEASON OF CRIME)- David Bowie and Schneider (2014) | USRF31500004 | Preferred: T-915.650.197-2<br>Archived:<br>T9162250251 |
| 38. | Sky Blue (2004) | USDBV0700154 | T0726898721 |
| 39. | The Pretty Road (2006) | USDBV0700150 | T0727115323 |
| 40. | Cerulean Skies (2006) | USDBV0700153 | T0729516077 |
| 41. | Aires de Lando (2006) | USDBV0700151 | T0725986742 |
| 42. | Rich's Piece (2005) | USDBV0700152 | T0729531467 |
| 43. | Winter Morning Walks (2013) | USDBV1301969<br>USDBV1301970<br>USDBV1301971<br>USDBV1301972<br>USDBV1301973<br>USDBV1301974<br>USDBV1301975<br>USDBV1301976<br>USDBV1301977 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111015824 |
| 44. | Perfectly Still This Solstice Morning (2013) (Winter Morning Walks) | USDBV1301969 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111029013 |
| 45. | When I Switched On a Light (2013) (Winter Morning Walks) | USDBV1301970 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111015766 |
| 46. | Walking by Flashlight (2013) (Winter Morning Walks) | USDBV1301971 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111029262 |
| 47. | I Saw a Dust Devil This Morning (2013) (Winter Morning Walks) | USDBV1301972 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111015675 |

| | Work in Suit | ISRC | ISWC |
|---|---|---|---|
| 48. | My Wife and I Walk the Cold Road (2013) (Winter Morning Walks) | USDBV1301973 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111029206 |
| 49. | All Night, in Gusty Winds (2013) (Winter Morning Walks) | USDBV1301974 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111015653 |
| 50. | Our Finch Feeder (2013) (Winter Morning Walks) | USDBV1301975 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111029115 |
| 51. | Spring, the Sky Rippled with Geese (2013) (Winter Morning Walks) | USDBV1301976 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111015608 |
| 52. | How Important It Must Be (2013) (Winter Morning Walks) | USDBV1301977 | Full Orchestra: T9063482644<br>Piano and Vocal: T3111029068 |
| 53. | Carlos Drummond de Andrade Stories (2008) – Five Movements | USDBV1301978 | T9048788789 |
| 54. | Walking by Flashlight (2013) | USDBV1500021 | T3111029091 |
| 55. | The Monarch and the Milkweed (2014) | USDBV1500022 | T9160489689 |
| 56. | Arbiters of Evolution (2012) | USDBV1500023 | T9135992380 |
| 57. | The Thompson Fields (2009) | USDBV1500024 | T9032638021 |
| 58. | Home (2012) | USDBV1500025 | T9127092313 |
| 59. | Nimbus (2009) | USDBV1500026 | T9032641160 |
| 60. | A Potter's Song (2013) | USDBV1500027 | T9135953252 |
| 61. | Lembranca (2010) | USDBV1500028 | T9050240272 |
| 62. | A World Lost (2019) | USDBV2011133 | T9280797968 |

| | **Work in Suit** | **ISRC** | **ISWC** |
|---|---|---|---|
| 63. | Don't Be Evil (2017) | USDBV2011134 | T9229890113 |
| 64. | CQ CQ, Is Anybody There? (2019) | USDBV2011135 | T9297802847 |
| 65. | Sputnik (2018) | USDBV2011136 | T9273452667 |
| 66. | Data Lords (2019) | USDBV2011137 | T9194199967 |
| 67. | Sanzenin (2017) | USDBV2011138 | T9229890088 |
| 68. | Stone Song (2019) | USDBV2011139 | T9273452372 |
| 69. | Look Up (2019) | USDBV2011140 | T9297802938 |
| 70. | Braided Together (2015) | USDBV2011141 | T9297803293 |
| 71. | Bluebird (2016) | USDBV2011142 | T9194199978 |
| 72. | The Sun Waited for Me (2016) | USDBV2011143 | T9297803191 |

**Administration Agreement with AMP**

11. I first became acquainted with Dan Coleman, the principal of ArtistShare Music Publishing LLC ("AMP") in or around 2007.

12. On January 1, 2008, I entered into the Music Publishing Administration Agreement with AMP (the "Administration Agreement").

13. Under the Administration Agreement, AMP serves as my publishing administrator. A publishing administrator is an entity that manages copyrights, including collecting licensing revenues, in exchange for a share of royalties generated by those licenses. At no time was AMP or MWP my publisher.

14. I have always recognized the importance of and have insisted on having full creative control over the licenses that are negotiated by my publishing administrator, AMP.

15. I made sure that the Administration Agreement would protect my creative control. Section 7 of the Administration Agreement states, "Notwithstanding anything to the contrary expressed or implied herein, we must notify you and obtain your prior written approval **for any**

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD
-9-

1  **license** we grant on your behalf." This provision required AMP to notify me and obtain my prior written approval before entering into any license on my behalf. In other words, I did not give AMP the authority to grant any license without my approval.

16. Section 7 of the Administration Agreement also states that "copyright laws and common business practices outside of the USA might hinder or preclude Administrator's efforts to obtain your consent in each instance." My intent was that provision, as it states, would apply only to unique foreign circumstances. Clearly this provision does not apply to U.S. licenses of any kind.

17. Over the past 14 years I have worked with Dan Coleman and others working on behalf of AMP, they have consistently notified me and sought my written approval before entering into licenses on my behalf.

18. I also ensured that, under the Administration Agreement with AMP, I retained full ownership of my works. Section 4 of the Administration Agreement states that "The rights granted to us [AMP] in this Agreement are solely administrative in nature and do not extend any rights of ownership whatsoever in or to any of the Compositions or copyrights thereto."

19. I understand that Dan Coleman, one of the principals of AMP, says in his declaration submitted with Defendants' motion for summary judgment that AMP "assigned all its duties under the Administration Agreement" to A Side Music, LLC dba Modern Works Music Publishing ("MWP") as a "worldwide subpublisher" for my works. Coleman Decl. ¶ 3. I also understand that Mr. Coleman has not identified any date for the assignment from AMP to MWP.

20. I was not made aware of that assignment, nor have I seen any document that reflects that assignment. I understood that Dan Coleman was involved with the entity that served as my publishing administrator but I never understood that there had been an assignment of any of AMP's duties under the Administration Agreement.

21. Defendants have misleadingly excerpted emails from me regarding the role of MWP. In a March 2019 email (Harold Decl. Ex. 3), I referred to my works being "administered by ModernWorks (Dan Coleman)" but referred to ModernWorks (MWP) only to identify Mr. Coleman for Mr. Barker who, being in the business, would likely have heard of MWP and not

AMP. I certainly did not think that MWP was involved in my agreement with AMP as a "subpublisher."

22. Similarly, in a September 9, 2020, email, I referred to "Dan Coleman of Modern Works" as my publishing administrator to connect Mr. Coleman to MWP, which is a more recognizable company than AMP, but did not identify Modern Works (MWP) as my publishing administrator.

23. Defendants point to an April 2014 email exchange between me and Adam Tully and a February 2019 email exchange between me and Jenny Johnson as evidence that I direct licensing inquiries to MWP. I understood that Adam Tully and Jenny Johnson also worked for MWP but, when they worked for me, it was on behalf of AMP, my publishing administrator.

24. Mr. Coleman was aware of my advocacy on behalf of musicians and other copyright holders and my role as a public critic of Google and YouTube and the digital economy's treatment of musicians. It is inconceivable to me that Mr. Coleman would have thought that I would have ever agreed to license my works to Google (or YouTube, for that matter).

**Publishing License Agreement Between MWP and Google**

25. I now understand that in approximately April 2014, MWP entered into a Publishing License Agreement (the "PLA") with Defendant Google Inc.

26. I first learned of the PLA on approximately September 11, 2020, when I spoke with Mr. Coleman by telephone to discuss a subpoena that he had received from Defendants in this case.

27. On that call, Mr. Coleman assured me that none of my works had ever been uploaded or monetized through Content ID.

28. I do not recall receiving a copy of the PLA though it was shown to me at my deposition.

29. Neither AMP nor MWP ever informed me that MWP was entering into the PLA, nor did they ever seek my written approval. I also never corresponded with anyone from YouTube or Google regarding the PLA or any attempts by AMP or MWP to license my works to YouTube or Google. I never approved any of my works being included in the PLA.

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD
-11-

30. I recall placing a call to Mr. Coleman to discuss the possibilities creators have to exclusively block through third-party vendors like Tunecore or AdRev. I wanted to gain understanding from someone I knew was working with a third-party vendor, so that I could be properly informed for public conversations I was having on the matter. Dan corroborated what others had expressed, that exclusive blocking was not a service they offered as it has no financial incentive. He told me that the third-party vendor he worked with was still a tool some of his clients wanted. I made it very clear that I was holding to my long-standing position that I wanted no part of such a model. Mr. Coleman never mentioned that MWP was contemplating entering into some kind of agreement with Google.

31. It was my understanding prior to filing this lawsuit in 2020 that Content ID could not be used without providing a recording to be used as a reference file.

32. I never provided any of my recordings to be used on Content ID. Nobody from MWP or AMP ever asked me for copies of my works (including digital reference files) to upload to Content ID. Nor did anybody from MWP or AMP ever tell me that any of my works had been uploaded to Content ID. To the contrary, Mr. Coleman informed me on a telephone call on September 11, 2020 that none of my works had been uploaded to Content ID and that none of my works had been monetized through Content ID. I cannot explain how royalty summaries appear to show that YouTube or Google paid very small royalties that AMP passed along to me when Mr. Coleman told me that none of my works had been monetized through Content ID.

33. At no time did I authorize AMP or MWP to grant any license to YouTube or Google to use my works. I therefore understood that I did not have access to Content ID.

34. As of March 2018, I was not aware that MWP had attempted to license any of my works to Google, nor was I aware that any of my works had been uploaded to Content ID. Mr. Coleman wrote, "my understanding is that Maria does *not* want me to 'monetize' her music on YouTube." Harold Ex. 8. I responded to Mr. Coleman stating, "Yes, on principle, I don't think I'll ever give way to that concept." *Id.* By that I meant that I would never monetize my works on YouTube using Content ID or otherwise.

35. Referring to an internal AMP or MWP email from August 2016 (Coleman Ex. B), I do not know what Mr. Coleman meant by his comment (apparently referring to me) that "Yes, she knows we have a deal with them" (apparently referring to YouTube). I did not know that MWP had any deal with Google (or YouTube), and I certainly did not know that YouTube was under the impression that my works were a part of any such arrangement.

36. In an email I sent to Mr. Coleman on July 25, 2016, I wrote Mr. Coleman to confirm the accuracy of a partial draft of an article I was working on which stated the following:

> When a record company puts out a record by an artist, the record company (assuming the artist hasn't kept control) likely owns the copyright to that recording. So in that case, if the record company has a deal with Content ID, they likely will let that record be monetized on YouTube collecting ad revenue. But what about the other copyright-holders? Likely there are songwriters on the that record besides the performing artist. Many times there are several or more collaborators. What about their right to block uploads or to do takedowns? What about their royalties? Who asked their permission? Where is the transparency? I speak from experience — this is happening to me. YouTube is a jumbled mess, with rights violations left and right.

Blaisdell Decl. Ex. 25 (MODWORKS00000143). The draft paragraph I sent to Mr. Coleman clearly states that I am among the "other copyright-holders," an artist that is not with a "record company [that] has a deal with Content ID." In a response sent the next day, Mr. Coleman did not disclose anything about the PLA or state that his understanding was that, although my record company (ArtistShare) did not have a deal with Content ID, my publishing administrator (AMP) did. Mr. Coleman instead wrote back the following: "Of course, if the record company monetizes the video and the composer doesn't, we are left wondering if Google/YouTube puts the composer's portion of royalties into a piggy bank for safe keeping until they claim it. Hmm. I wonder…." It is inexplicable to me that Mr. Coleman would not have spoken up at this point if he believed that my works had been licensed to Google and were being monetized through Content ID.

### Royalty Payments from Defendants

37. Approximately twice a year since at least 2014, AMP has sent me a document titled "Client Royalty Summary" that contains a summary of royalties that I have received for licenses of my works.

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD
-13-

38. As a general practice, I do not review each line of every Client Royalty Summary when I receive it. I typically review only the significant entries, including any royalties payable due to concerts or radio or television appearances.

39. I understand that Defendants have pointed to royalty payments they claim I have received from Google or YouTube as evidence that I was aware of and ratified the PLA between MWP and Google.

40. I was not aware of any royalty payments I received from Google or YouTube until after this lawsuit was filed in 2020. Even if I had noticed the payments, I would not have had any way of knowing that they correspond to a particular license.

**Use of YouTube Platform**

41. In around 2012, I created the Maria Schneider Official Page on YouTube.

42. I infrequently post public videos to the Maria Schneider Official Page channel, usually when I make a trailer to advertise a new record, consisting of short clips of my music with me talking over them. Today, there are just three publicly-available videos posted to this channel.

43. I have on several occasions posted private or unlisted videos containing my works to YouTube to be used by new individual musicians subbing with my band who need to learn my compositions.

44. I have only very seldom authorized others to post videos containing my works on YouTube. I am aware of just four occasions on which I authorized my works to music to be posted to YouTube.

    a. authorizing the display of a performance by the Royal Academy of Music of "Dance you monster to my soft song" and "Choro Dançado" to be publicly available for one month only and then unlisted for an additional six months;

    b. authorizing on April 26, 2019, the display of a performance by Elmhurst College of a unique arrangement of "Allegresse" for guitar ensemble to be publicly available;

    c. authorizing on October 22, 2012, the display of a performance by the Fresno Jazz Composers Orchestra of "Last Season"; and

        d.   authorizing on October 6, 2012, the display of a performance of "Evanescence" by the Colours Jazz Orchestra to be unlisted.

### Efforts to Prevent Infringement on YouTube

45. I have been concerned about copyright infringement on YouTube for years.

46. Over the years, along with others working at my direction, I have submitted numerous takedown notices, requesting that infringing videos be removed from the platform.

47. In order to use tools such as YouTube's takedown notice webform as part of my attempts to police my copyrights and prevent infringement of my works, I needed to have a YouTube account and therefore had to accept the TOS.

48. Even after one video would be taken down, other videos containing the same works were sometimes posted to YouTube. Searching for infringing videos on YouTube using the basic search functionality takes a significant amount of time and does not allow me to locate all videos that infringe on my copyrighted works.

49. I applied for access to Content ID in 2015. That application was rejected.

50. I applied for access to Content ID again in 2017. That application was also rejected.

### Use of Copyright Management Information

51. As part of the process of recording and producing a new album, I always provide International Standard Recording Codes ("ISRC" codes) to the mastering engineer to be included in the final released albums, along with track names, album titles, album artist names, and often composer names. Including ISRC codes and the rest of this information is a common practice for musicians and composers.

52. More recently, I have learned the importance of including International Standard Musical Work Codes ("ISWC" codes) as well.

53. I understand that these codes can be used to identify my works. I have signed interrogatory responses that identify the ISRC and ISWC codes that apply to each of the works at issue in this case. My lawyers have sent YouTube and Google lists of infringing videos posted to YouTube that contain each of these works.

Corrected Schneider Decl. in Opposition to Defs.' Mot. for Summary Judgment 3:20-cv-4423-JD
-15-

54. I understand that YouTube's transcoding process removes all metadata—including ISRC or ISWC codes—that was included with the original uploaded video and that none of that metadata is searchable or otherwise made available to users on the YouTube platform.

55. If YouTube preserved the ISRC or ISWC codes and made them available for videos uploaded to YouTube, I would be able to use these fields to locate videos that infringe my works.

56. I'm also aware that certain video editing software includes as metadata the name of files that are constituent parts of a final video file, in a field called Clip File Name or "CFLN."

57. I understand that, among the metadata produced by Defendants in this litigation, nine videos I have identified as infringing my works contained the title of one of my copyrighted works in the CFLN field.

58. I understand that YouTube's transcoding process removes all metadata—including the contents of the CFLN field—that was included with the original uploaded video and that none of that metadata is searchable or otherwise made available to users on the YouTube platform.

59. If YouTube preserved the CFLN field and made it available for videos uploaded to YouTube, I would be able to use this field as an added resource to locate videos that infringe my works. This would be especially useful to locate videos that people make of groups performing my works, where an ISRC code would not be a part of the original metadata.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 11th day of October, 2022, at New York, New York.

*[signature]*
Maria Schneider