1   George A. Zelcs*
      gzelcs@koreintillery.com
2   Randall P. Ewing, Jr.*
      rewing@koreintillery.com
3   Ryan Z. Cortazar *
      rcortazar@koreintillery.com
4   **KOREIN TILLERY, LLC**
    205 North Michigan, Suite 1950
5   Chicago, IL  60601
    Telephone: (312) 641-9750
6   Facsimile: (312) 641-9751

7   Stephen M. Tillery*
      stillery@koreintillery.com
8   Steven M. Berezney, CA Bar #329923
      sberezney@koreintillery.com
9   Carol O'Keefe*
      cokeefe@koreintillery.com
10  **KOREIN TILLERY, LLC**
    505 North 7th Street, Suite 3600
11  St. Louis, MO  63101
    Telephone: (314) 241-4844
12  Facsimile: (314) 241-3525

13  *Admitted *pro hac vice*

14  *Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
  pkorologos@bsfllp.com
Joanna Wright*
  jwright@bsfllp.com
Jeffrey Waldron*
  jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

15

16                    **UNITED STATES DISTRICT COURT**
17                   **NORTHERN DISTRICT OF CALIFORNIA**
                        **SAN FRANCISCO DIVISION**
18

19  MARIA SCHNEIDER, UNIGLOBE
    ENTERTAINMENT, LLC, and AST
20  PUBLISHING, LTD., individually and on
    behalf of all others similarly situated,
21
                    Plaintiffs,
22
    v.
23
    YOUTUBE, LLC and GOOGLE LLC,
24
                    Defendants.
25

26

27

28

Case No. 3:20-cv-04423-JD

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Judge: Hon. James Donato
Courtroom: 11

DATE:  April 13, 2023
TIME:   10:00 a.m.

Plaintiffs' motion for summary judgment ("Motion") challenges at this pre-trial stage a single glaring aspect of YouTube's ineligibility for DMCA safe harbor protections: YouTube's preclusion of more than ███████ unlisted and private videos—████████████—from surfacing in any search engine.  As a condition of seeking DMCA safe harbor protection, established Ninth Circuit precedent requires that platforms may not actively prevent copyright holders, such as Plaintiffs, from collecting the information needed to issue those notifications.  As noted in Plaintiffs' Motion (at 1), there are a multitude of other DMCA eligibility and implementation failures (including several other failures of YouTube's repeat infringer policy and failure to remove known infringements) that Plaintiffs will present at trial, should a trial remain necessary.  This Motion, however, focuses solely on YouTube's loss of the DMCA affirmative defense because YouTube prevents copyright owners from collecting the information needed to issue DMCA notifications for infringement in private and unlisted videos.

YouTube does not dispute, and instead confirms, that it does not allow rights holders to obtain any information about infringement in its ███████ of unlisted and private videos.  Defendants instead fearmonger on internet privacy claiming, without evidentiary or other support, that YouTube's ineligibility for DMCA safe harbor protections—a product of YouTube's choice of platform design—would expose all emails, other communications, and confidential files on the internet to public scrutiny.  The parade of horrors Defendants trumpet is neither relevant nor remotely accurate; moreover, it has no basis in the DMCA or case law.

Likewise unavailing is YouTube's attempt to avoid the Ninth Circuit standard set forth in *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109 (9th Cir. 2007), and *Ventura Content v. Motherless*, 885 F.3d 597, 617 (9th Cir. 2018).  Those cases clearly state that "a service provider implements" a repeat infringer "policy" only "if it does not actively prevent copyright owners from collecting information needed to issue such notifications".  *CCBill*, 488 F.3d at 1109; *Motherless*, 885 F.3d at 617.  Unable to meet that standard, YouTube pretends the standard is other than those plain words indicate by asserting that it does not "Purposely Eviscerate[ ] Implementation Of Its Repeat

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

1  Infringer Policy". (Opp. at 11, Heading II.B.)  There is simply no support for such a subjective

2  scienter standard in Ninth Circuit or any other law.

3        Finally, Plaintiffs agree this Motion may be decided, as requested by Defendants, after the

4  Court determines class certification. (Opp. at 7.)  Filing a motion for partial summary judgment

5  on DMCA issues on the March 3, 2023, deadline to do so, however (as Plaintiffs did and as

6  Defendants tellingly chose not to), does not make Plaintiffs' Motion "premature" or subject to

7  denial under the rule against one-way intervention.  To promote the orderly progress of this action

8  toward trial on June 12, 2023, the Motion should be heard as scheduled on April 13, 2023, though

9  decision can be withheld until after class determination.

10  **I.  Defendants Have Provided No Evidence That Copyright Infringement Can Be Detected**

11      **or Dealt with on ▓▓▓▓▓▓ of the YouTube Platform.**

12        The Ninth Circuit has held that to qualify for the DMCA safe harbor, an internet service

13  provider may not "actively prevent copyright owners from collecting information needed to issue

14  [DMCA] notifications." *CCBill*, 488 F.3d at 1109; *Motherless*, 885 F.3d at 617.  This is

15  consistent with Congress's intent in enacting the DMCA, which it did to "preserve[ ] strong

16  incentives for service providers and copyright owners to cooperate to detect and deal with

17  copyright infringements that take place in a digital networked environment."  S. Rep. 105–190, at

18  20 (1998); H.R. Rep. 105–551(II), at 49 (1998).

19        Plaintiffs have provided evidence establishing that they *cannot file* a DMCA takedown

20  against more than ▓▓▓▓▓ private and unlisted videos that Defendants concede they exclude from

21  search. (Mot. at 2-4; Opp. at 4-5.)[1]  Defendants also meekly admit in their opposition (at 8-9) that

22  private and unlisted videos "may be harder for members of the public, including copyright

---

[1] While YouTube tries to avoid its own statistics about its ▓▓▓▓▓▓ private and unlisted videos as supposedly not having "a proper foundation" (Opp. at 5, fn. 1), they are derived from the Content ID numerator and denominator statistics that YouTube produced on January 10, 2023, pursuant to the Court's order [ECF 265-2]. (O'Keefe Dec. ¶ 5 and Ex. 3 and 4.)  Having disregarded the requirements of Rule 56(c), Defendants have provided no evidentiary counter, and Plaintiffs' statistics stand.  The Court "is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Schmid v. Cnty. of Sonoma*, 2021 WL 1118077 at *2 (N.D. Cal. Mar. 24, 2021) (Donato, J.), *aff'd*, 2022 WL 1638198 (9th Cir. May 24, 2022) (citation omitted).

holders, to find." That should end the inquiry under *CCBill* and *Motherless*, entitling Plaintiffs to partial summary judgment. *See Capitol Recs., LLC v. Escape Media Grp.*, 2015 WL 1402049, at *8–9 (S.D.N.Y. Mar. 25, 2015) (granting summary judgment against defendant on DMCA affirmative defense where defendant "employ[ed] a practice that prevent[ed] copyright owners from being able to identify repeat infringement in the first place").

YouTube attempts to rewrite the standard as requiring Plaintiffs to provide "Evidence That YouTube Purposely Eviscerated Implementation of its Repeat Infringer Policy." (Opp. at 11, Heading II.B.) But that is not the Ninth Circuit standard. There is nothing in the text or legislative history of the DMCA conditioning the safe harbor defense on the good-heartedness of the internet service provider. Nor does the case law *restrict* denial of that defense to situations in which the provider has "purposely eviscerated" its repeat infringer policy. *Cf. Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004) (holding that AOL did not reasonably implement a termination policy when it did not have a working email for its notification systems for several months). The standard is not a subjective inquiry into YouTube's motive in excluding private and unlisted videos from search; it is an objective inquiry into the reasonableness of YouTube's actions considering the nature of infringement on its service and the way it administers its platform. The Ninth Circuit has made clear that preventing the collection of necessary information is not reasonable implementation.

Indeed, YouTube's attempts to ignore the actual holding in *Motherless* is telling in this regard. There, the Ninth Circuit itself described what it meant in its *CCBill* decision: "*Perfect 10, Inc. v. CCBill LLC* holds that a service provider implements a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and *if it does not actively prevent copyright owners from collecting information needed to issue such notifications*." *Motherless*, 885 F.3d at 617 (emphasis added, quotation marks and footnote removed). There is no heightened or subjective scienter element of "*purposely* design[ing] its private and unlisted videos functionalities to eviscerate its repeat infringer policy". (Opp. at 12.) There is only the objective prohibition against preventing copyright owners from collecting information needed to

1  issue DMCA notices—exactly what YouTube chooses to do for infringement contained in the

2  ▮▮▮▮ of videos designated unlisted or private.

3      YouTube tries to get out of the *Motherless* box by never even addressing this express

4  standard from *Motherless* and instead trying to dodge it by claiming that the case stands for the

5  proposition that privacy concerns can excuse the failure to abide by safe harbor requirements.

6  (Opp. at 11.)  But *Motherless* does not recognize a privacy trump card as YouTube suggests.

7  Indeed, *Motherless* was *not* decided based on "'anonymous' uploads" as suggested by YouTube.

8  (*Id.*).  Indeed, "anonymous users" was only mentioned in the majority opinion to respond to a

9  point made by the dissent about such users, *Motherless*, 885. F.3d at 619; moreover, the inability

10  to match an anonymous infringer with a prior infringer has nothing to do with whether "copyright

11  owners" were prevented "from collecting information needed to issue" a DMCA notification in

12  the first place, *id.* at 617, as is the case here for unlisted and private videos. Indeed, YouTube's

13  actions here not only prevent the identification of repeat infringers, they also prevent the ability to

14  request the expeditious removal of infringing material from the platform as contemplated by the

15  DMCA notice procedures in §§ 512(c)(1)(C) and 512(c)(3).

16      Similarly, YouTube's argument (Opp. at 5-6) that "YouTube applies its repeat-infringer

17  policy to all videos on the service" misses the point.  If copyright owners cannot access ▮▮▮▮

18  of the material on the site to find infringement to submit DMCA claims against that material in the

19  first place, then the repeat infringer policy is a farce and does not support the defense.  *See BMG*

20  *Rts. Mgmt. (US) v. Cox Commc'ns*, 881 F.3d 293, 303–05 (4th Cir. 2018) (affirming grant of

21  summary judgment against defendant on DMCA defense where defendant failed to implement its

22  policy in any "meaningful way").  Just as in *Aimster*, the "problem . . . is in the method the repeat

23  infringer policy is *implemented*—that is to say, the policy is *not* implemented."  *In re Aimster*

24  *Copyright Litig.*, 252 F. Supp. 2d 634, 659 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003).

25      The requirement that rights holders have access to material stored on the service provider's

26  platform was recognized as a condition of the section 512(c) safe harbor in *UMG Recordings v.*

27  *Shelter Cap. Partners*, 718 F.3d 1006, 1018 (9th Cir. 2013).  That court noted: "Indeed, it is not

28

clear how copyright holders could even discover infringing materials on service providers' sites to notify them as the protocol dictates if § 512(c) did not contemplate that there would be access to the materials." *Id.*

Congress was concerned that "those who repeatedly or flagrantly abuse their access to the [I]nternet through disrespect for the intellectual property rights of others" should face "a realistic threat of losing that access." *Arista Recs. v. Myxer*, 2011 WL 11660773, *17 (C.D. Cal. Apr. 1, 2011) (citing H.R. Rep. No. 105–551, pt. 2, at 44). Because YouTube provides *no* means of finding infringement among its unlisted and private videos, infringers are able repeatedly and with impunity to upload infringing content to YouTube, simply by classifying it as unlisted or private.

Defendants bear the burden of establishing, in the context of the platform they have created, and the copyright management tools they maintain and provide, that YouTube reasonably implements its repeat infringer policy. 17 U.S.C. § 512(i)(1)(A); *Atari Interactive v. Redbubble*, 515 F. Supp. 3d 1089, 1113–14 (N.D. Cal. 2021) ("Because the § 512(c) safe harbor is an affirmative defense, [defendant] must establish beyond controversy every essential element or lose the protection of the section 512(c)'s safe harbor.") (citation omitted); *LA Gem & Jewelry Design v. Groupon*, No. 2:19-cv-00035-ODW, 2020 WL 5440501, at *9–10 (C.D. Cal. Sept. 10, 2020) (granting summary judgment against defendants on their DMCA affirmative defense where defendants did not dispute relevant facts). YouTube provides a single evidentiary breadcrumb regarding copyright enforcement of unlisted and private videos—a statement that YouTube receives "millions" of takedowns a year, "over 100,000" of which are directed against private or unlisted videos. (Zhu Dec. [ECF 283-1] ¶ 3.)[2] Millions indeed. YouTube prosecuted over *10 million* DMCA notices against public videos in 2021.[3] That is a 100 to 1 ratio for the prosecution

---

[2] This Court's rules preclude Defendants from offering this evidence at summary judgment or at trial. *See* Standing Discovery Order ¶ 6. During discovery, Plaintiffs requested all documents to support Defendants' DMCA defense and requested that Defendants state all bases for their contention that they qualify for the DMCA safe harbor. (Declaration of Andrew Ellis ("Ellis Dec.") ¶¶ 2-3, Ex. 1 (Plaintiffs' First Set of RFPs), Ex. 2 (Plaintiff Maria Schneider's First Set Interrogatories)). But this 100,000 figure has not previously been disclosed.

[3] YouTube received 2.9 million enterprise webform takedowns and 2.2 million webform takedowns in the first half of 2021 (Zhu Dec. Ex. A, p. 5), and it received 4.1 million enterprise webform takedowns and 2.1 million webform takedowns in the second half of 2021. (Ellis Dec. Ex. 3, GOOG-SCHNDR-00052970 at 974). These numbers total 11.3 million notices

of DMCA claims against nearly equal numbers of public videos as compared to unlisted and private videos.  YouTube's touted figure merely shows it is not impossible for a DMCA claim to be brought against unlisted or private videos, but it establishes that it is *one hundred times less likely to happen* because of YouTube's chosen operating structure.[4]  This is not a case where a "minuscule" number of "repeat infringers may have slipped through the provider's net," *Motherless*, 885 F.3d at 618-19; rather, it is "a substantial failure" of YouTube's repeat infringer policy.  *CCBill*, 488 F.3d at 1110.

## II.   YouTube's Failure to Qualify for the DMCA Safe Harbor Will Not Eliminate Privacy on the Internet.

Defendants attempt but have no basis to concoct a privacy-based DMCA immunity.  This Motion is not about "intermediate and transient storage" of infringing material under § 512(a); imposing an affirmative duty to monitor contrary to § 512(m); or technical measures that "disseminate personally identifying information" of persons gaining access to a work under § 1201(i).  Those provisions do not require that the DMCA be narrowly construed to maximize privacy rights.  Instead, the statute's text is powerful evidence that Congress knew exactly how to protect user privacy interests through unambiguous, limited provisions that have no application to the reasonable implementation of a repeat infringer policy under § 512(i).

In crafting the DMCA safe harbors, Congress was cognizant of privacy concerns and specified distinct requirements for different types of providers.  Section 512(c), which includes the DMCA takedown notice procedure, applies to internet service providers, like YouTube, that store user-generated material.  In contrast, transitory communications like email are protected by § 512(a), and system caching tools are protected by § 512(b), neither of which provide for copyright claimants to enforce their rights through a DMCA takedown notice.  And Congress has made clear

---

filed.  Excluding the 100,000 takedowns filed against unlisted and private videos leaves 11.2 million takedowns filed against public videos.

[4] YouTube utterly fails to explain how copyright claimants are permitted to file takedowns against videos they cannot view. Perhaps YouTube waives the viewing requirement for Content ID partners, essentially conceding that a digital fingerprint match is conclusive evidence of infringement. Perhaps all 100,000 of these notices are filed against unlisted videos. Plaintiffs and the Court are left to speculate.

1    that qualification for the safe harbor under each of these provisions "shall be based solely on the

2    criteria in that subsection".  17 U.S.C. §512(n).  Thus, the particular standard at issue in this

3    Motion prohibiting interference with the collection of information necessary to submit a DMCA

4    notification are only applicable to § 512(c) which governs user-generated content platforms.[5]

5         With respect to user-generated content platforms covered by § 512(c), the DMCA does not

6    create or recognize a privacy exception.  Though denominated "Protection of privacy," § 512(m)

7    merely excuses a service provider from "affirmatively seeking facts indicating infringing activity"

8    (except with respect to standard technical measures) and from "disabling access to material in

9    cases in which such conduct is prohibited by law."  Neither *Motherless* nor any of the cases cited

10   in the privacy section of YouTube's Opposition bump into a § 512(m) concern: *Corbis*, *Shelter*

11   *Capital*, *Vimeo*, or *Viacom*.  As Defendants note (Opp. at 5), the court in *Viacom Int'l v. YouTube*,

12   940 F. Supp. 2d 110, 123 (S.D.N.Y. 2013), did not address the "argument about private videos

13   that Plaintiffs here advance" since Viacom did not raise that argument at summary judgment.

14   Moreover, when *Viacom* was decided (over a decade ago) there was nothing to suggest that the

15   provision for private videos prevented copyright owners from detecting copyright infringement on

16   ██████████  the platform, let alone for ██████████  videos.  Similarly, *Capitol Recs. v. Vimeo*,

17   972 F. Supp. 2d 500 (S.D.N.Y. 2013) only analyzed the platform's privacy policy in considering

18   whether Vimeo interfered with standard technical measures or induced infringement, *id.* at 517,

19

20        [5] Plaintiffs do not dispute that the DMCA safe harbor may apply to electronic storage lockers,
      such as Dropbox. (Opp. at 4, 9.)  That simply has no relevance here, as YouTube has made the
21   sharing of user-generated content with the public at large the *sine qua non* of its platform.  (Ellis
      Dec., Ex. 4, 2020 Alphabet 10-K, GOOG-SCHNDR-00041505 at 511 ("This drive to make
22   information more accessible and helpful has led us over the years to improve the discovery and
      creation of digital content, on the web and through platforms like Google Play and YouTube. With
23   the migration to mobile, people are consuming more digital content by watching more videos,
      playing more games, listening to more music, reading more books, and using more apps than ever
24   before. Working with content creators and partners, we continue to build new ways for people
      around the world to find great digital content.")).  It is the YouTube search feature that allows
25   YouTube videos to garner hundreds of millions of views and has encouraged the widespread use
      of its platform.  Thus, YouTube does not operate an electronic storage locker, but instead is very
26   much like the website at issue in *Motherless*.  There, the defendant was an operator of a website
      that contained "pictures and video clips" that were "uploaded by the site's users".  *Motherless*, 885
27   F.3d at 600.  Where, as here, a platform allows users to post content on its website, that platform is
      ineligible for the DMCA safe harbor where it "prevent[s] copyright owners from collecting
28   information needed to issue [DMCA] notifications."  *Id.* at 617.

534, not whether users were prevented from implementing the DMCA takedown notice procedure

as part of Vimeo's repeat infringer policy.  Likewise, *UMG Recordings v. Shelter Cap. Partners*,

718 F.3d 1006 (9th Cir. 2013), is also irrelevant; it expressly did "not address whether Veoh

adopted and reasonably implemented a repeat infringer termination policy as required by §

512(i)".  *Id.* at 1015 n.5.  And *Corbis v. Amazon.com*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004),

predates both *CCBill* and *Motherless*, and there was no allegation that Amazon's zShops included

unlisted or private listings of any kind.  *Id.* at 1094-96.

      Finally, contrary to Defendants' claim, labeling online material "private" does not preclude

it from consideration in evaluating the reasonable implementation of a repeat infringer policy.

Indeed, the premise of the Aimster and Napster platforms was the "private" sharing of files, but

neither one of these platforms qualified for the DMCA safe harbor.  *In re Aimster Copyright Litig.*,

334 F.3d 643, 646, 655 (7th Cir. 2003); *A&M Recs. v. Napster*, No. C 99-05183 MHP, 2000 WL

573136, at *1, *7, *9 (N.D. Cal. May 12, 2000).  In wrongly arguing that enabling the search of

private YouTube videos will break the Internet, Defendants utterly fail to address the ███████

█████████ on its platform that are excluded from search because they are "unlisted."  Unlisted

videos are not private—they can be seen by an unlimited number of viewers and shared by anyone

who has access to the URL. [ECF 265-2, O'Keefe Dec. Ex. 2, 127:17-128:7.][6]  YouTube has not

offered, because it cannot offer, any justification for precluding the search of unlisted videos by

copyright claimants, and has cited no burden that would ensue from their inclusion.  "The

common element of [the DMCA's] safe harbors is that the service provider must do what it can

reasonably be asked to do to prevent the use of its service by 'repeat infringers.'"  *In re Aimster*

*Copyright Litig.*, 334 F.3d 643, 653 (7th Cir. 2003).  The only interest that appears to be

---

    [6] Defendants compound their disregard of Rule 56's evidentiary requirements by attempting to counter Plaintiffs' evidence with the conclusory allegation that "private and unlisted videos are inevitably viewed far less often."  Opp. at 5 n.1.  Defendants are the sole repository of the data to support (or undermine) this statement but they offer none and are thus precluded from contesting this point.  There must be "sufficient probative evidence to permit a finding in favor of the opposing party based on more than mere speculation, conjecture, or fantasy."  *O.S.C. Corp. v. Apple Computer*, 792 F.2d 1464, 1467 (9th Cir.1986) (citation omitted).  In any event, limited views do not aid Defendants; the Copyright Act does not excuse some minimum threshold of infringement—a single act of copying suffices.  *See* 17 U.S.C. § 106.

1  compromised by YouTube's restriction on the search of unlisted videos is that of copyright

2  claimants in finding infringing works.  Defendants cannot justify this unreasonable

3  implementation of YouTube's repeat infringer policy.

4  **III.  This Timely-Filed Motion Should Be Decided Following Class Certification.**

5       As noted above, Plaintiffs do not oppose Defendants' request to withhold decision on the

6  instant Motion until after classes are determined.  The one-way intervention rule, however, does

7  not justify denying the Motion as "premature".  Plaintiffs timely filed their Motion for partial

8  summary judgment and compliance with the Court's deadline cannot make the Motion premature.[7]

9

10

11  Dated: March 24, 2023                     Respectfully submitted,

12

13                                            /s/ Carol O'Keefe
                                              Carol O'Keefe (*pro hac vice*)
14                                            Stephen M. Tillery (*pro hac vice*)
                                              Steven M. Berezney, CA Bar #329923
15                                            KOREIN TILLERY, LLC
                                              505 North 7th Street, Suite 3600
16                                            St. Louis, MO 63101
                                              Telephone: (314) 241-4844
17                                            Facsimile: (314) 241-3525

18
                                              George A. Zelcs (*pro hac vice*)
19                                            Randall P. Ewing, Jr. (*pro hac vice*)
                                              Ryan Z. Cortazar (*pro hac vice*)
20                                            KOREIN TILLERY, LLC
                                              205 North Michigan, Suite 1950
21                                            Chicago, IL 60601
                                              Telephone: (312) 641-9750
22                                            Facsimile: (312) 641-9751

23

24       [7] Defendants appear to suggest that they may yet again seek to file their own DMCA motion
     for summary judgment.  (Opp. at 7 (compare "If class certification is denied . . . *a* summary
25   judgment motion on the DMCA can proceed as applied to the named Plaintiffs' claims." *with*
     "Otherwise, *this* motion should be denied or tabled until after the Court determines who, if anyone
26   beyond the named Plaintiffs, will be bound by the DMCA's application in this case.") (emphasis
     added).)  YouTube was provided its sought-for chance to submit a motion for summary judgment
27   on DMCA issues but chose not to even though they could have avoided waiving the one-way
     intervention rule by asking that their motion be "tabled" until after class determination.  Having
28   decided it was unable to move for summary judgment by the specified deadline, they are now
     foreclosed from doing so.

Philip C. Korologos (*pro hac vice*)
Joanna Wright (*pro hac vice*)
Jeffrey Waldron (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

*Attorneys for Plaintiffs*

Case No. 3:20-cv-04423-JD

PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY
JUDGMENT