DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
CATHERINE R. HARTMAN (admitted *Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email:  bwillen@wsgr.com
Email:  chartman@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**DEFENDANTS AND COUNTERCLAIMANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY FROM PLAINTIFFS' PROPOSED EXPERTS CHARLES D. COWAN AND HAL J. SINGER**<br><br>Date:   April 13, 2023<br>Time:   10:00 a.m.<br>Dept.:  11<br>Judge:  Hon. James Donato |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    COWAN'S OPINIONS MUST BE EXCLUDED. ................................................. 2

        A.    Cowan's Opinions, Including The Minimum Size Of Each Class, Were Not Timely Disclosed And Must Be Excluded. ................................ 2

        B.    Cowan's Admittedly Incomplete Methodologies Are Unreliable. ............... 3

        C.    Cowan's Methodologies Are Unreliable As They Depend On Unreliable Data. ........................................................................................... 5

    II.    SINGER'S OPINIONS MUST BE EXCLUDED. .................................................. 6

        A.    Singer Cannot Sustain His Model Absent Critical Input From Cowan. ......................................................................................................... 7

        B.    Singer's Core Assumption Is Unreliable And Dooms Singer's Model. ........................................................................................................... 8

        C.    Singer's Model Does Not Fit Plaintiffs' Theories Of Liability. .................. 9

CONCLUSION ........................................................................................................................ 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Asetek Danmark A/S v. CMI USA, Inc.*,
    2014 WL 6997670 (N.D. Cal. Dec. 9, 2014) ................................................................. 3

*Assessment Techs. Inst., LLC v. Parkes*,
    2021 WL 2530977 (D. Kan. June 21, 2021) ................................................................. 8

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ................................................................................................. 1, 10

*Complex Sys., Inc. v. ABN Ambro Bank N.V.*,
    2013 WL 5970065 (S.D.N.Y. Nov. 8, 2013) ................................................................. 8

*DZ Reserve v. Meta Platforms*,
    2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ................................................................. 7

*Edwards Lifesciences Corp. v. Meril Life Scis. Pvt.*,
    2022 WL 254348 (N.D. Cal. Jan. 27, 2022) ................................................................. 3

*Fahmy v. Jay Z*,
    2015 WL 5680299 (C.D. Cal. Sept. 24, 2015) ................................................................. 2

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
    2015 WL 4776932 (C.D. Cal. May 27, 2015) ................................................................. 6

*Goodman v. Staples The Office Superstore, LLC*,
    644 F.3d 817 (9th Cir. 2011) ................................................................................................. 3

*Idema v. Dreamworks, Inc.*,
    90 F. App'x 496 (9th Cir. 2003) ................................................................................................. 6

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*,
    984 F. Supp. 2d 1021 (C.D. Cal. 2013) ................................................................. 6

*In re Graphics Processing Units Antitrust Litig.*,
    253 F.R.D. 478 (N.D. Cal. 2008) ................................................................................................. 7

*In re Hydrogen Peroxide Antitrust Litig.*,
    552 F.3d 305 (3d Cir. 2008) ................................................................................................. 7

*Mission Viejo Florist, Inc. v. Orchard Supply Co.*,
    2019 WL 13045054 (C.D. Cal. Feb. 28, 2019) ................................................................. 9

*Open Text S.A. v. Box, Inc.*,
    2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ................................................................. 5

*Polar Bear Prods. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ................................................................................................. 8

*Rearden LLC v. Walt Disney Co.*,
    2021 WL 6882227 (N.D. Cal. July 12, 2021) ................................................................. 9

*Sapan v. Yelp, Inc.*,
    2021 WL 5302908 (N.D. Cal. Nov. 15. 2021) .......................................................... 4, 5, 7

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ........................................................................................ 3

**STATUTES**

17 U.S.C. § 504 ................................................................................................................... 8

17 U.S.C. § 512 ................................................................................................................... 6

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................ 1

Fed. R. Civ. P. 26 ......................................................................................................... 2, 3, 5

Fed. R. Civ. P. 37 ................................................................................................................ 3

Fed. R. Evid. 702 ................................................................................................................ 6

Fed. R. Evid. 1006 .............................................................................................................. 8

# **INTRODUCTION**

Plaintiffs offer Charles Cowan to "prove that there are ***in fact*** sufficiently numerous parties," as required by Rule 23(a). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). And they depend on Hal Singer to "establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.* at 35. But neither's opinions withstand scrutiny, much less the "rigorous analysis" required by the Rule. *Id.* at 33 (citation omitted).

There are gaping holes in their stories. Cowan effectively concedes his opinions are not fully baked, and Singer's depend on Cowan's. Plaintiffs would wave away these fundamental defects, imagining a later ***"merits phase"*** for them to make further data demands of Defendants. But two years of extensive fact discovery closed eight months ago. Plaintiffs already twice submitted expert reports for these witnesses, specifically to account for the data they claimed to need and then received. There is no third round for Plaintiffs to fix these fatal defects. Expert discovery has closed, Defendants have provided their rebuttals, and trial is eleven weeks away.

Plaintiffs' plans for a "merits phase" is news to Defendants. It is not contemplated by the Court's Scheduling Order, and Plaintiffs explicitly rejected the idea on multiple occasions when it then served their purpose:

- "[Y]our proposal to 'revisit these requests in the event that a class is certified' is mooted by the Court's scheduling order, which contemplates the end of fact discovery on July 5, 2022 with ***no second phase of discovery following certification of the class***." Decl. of Qifan Huang ("Huang Decl.") Ex. A (Jan. 28, 2022 Letter from P. Korologos) at 1.

- "We also note that your offer to revisit these requests after the class is certified is inconsistent with the Court's scheduling order, which does not provide for bifurcated discovery." Huang Ex. B (Feb. 11, 2022 Letter from D. Blaisdell) at 5.

- "[T]he Court's Scheduling Orders do not bifurcate discovery." Dkt. 156 (Plaintiffs' July 29, 2022 Letter Brief) at 1.

In short, Plaintiffs do not get a third chance to offer viable expert opinions.

Plaintiffs' expert opinions are improper in the extreme. Cowan's opinions were not timely disclosed—even after the Court provided leave to refile an updated report. His methodologies are incomplete and unreliable. Singer's opinions, which depend on "key inputs" from Cowan, are no better. His damages theory relies on an unsupportable assumption to link alleged infringements to revenue. And his model does not fit Plaintiffs' actual liability theories. Plaintiffs hand-wave in

1  response, and offer a confounding promise of better things to come. That simply will not do.

**ARGUMENT**

**I.   COWAN'S OPINIONS MUST BE EXCLUDED.**

In defense of Cowan's untimely and unreliable opinions, Plaintiffs contend that Cowan was only showing how one might identify members of Plaintiffs' putative classes. Opp. 7. Cowan was not, Plaintiffs say, trying to identify anyone, or to estimate the size of the putative classes. Cowan does not share that view. He testified that he was asked "to determine the number of class members in each class" and "to determine the number of infringing videos or infringed works associated with each class." Huang Ex. C ("Cowan Tr.") 141:4-10. Plaintiffs argued the same in their class certification motion where their numerosity argument rests *exclusively* on Cowan having demonstrated the minimum size of each class. Dkt. 245 at 4-5. Whatever role Plaintiffs envisioned for Cowan, he disclosed no opinion whatsoever on class size in either of his reports. Accordingly, no such opinion is proper in this case.

**A.   Cowan's Opinions, Including The Minimum Size Of Each Class, Were Not Timely Disclosed And Must Be Excluded.**

In his latest expert report (which did not identify a single class member), Cowan admitted he had not estimated, and could not estimate, the size of Plaintiffs' proposed classes. *See* Opp. 2 n.4. Plaintiffs concede that it was not until Cowan's deposition that he disclosed—*for the first time*—that he had extrapolated a supposed "lower bound" of each putative class size, as well as the number of allegedly infringing videos and works. *Id.* at 2. That is sandbagging.

Plaintiffs cite *Fahmy v. Jay Z*, 2015 WL 5680299, at *6 (C.D. Cal. Sept. 24, 2015) for the proposition that "an expert may supplement and elaborate upon his report during a deposition." Opp. 3. But Cowan's deposition testimony about minimum class sizes (that his report says he had not calculated) was *contradiction*, not elaboration. Plaintiffs do not point to anything in the report that Cowan could have been elaborating on. And Plaintiffs' class certification motion cites only Cowan's testimony, not his report, driving home that these critical opinions are nowhere to be found in a report that must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

REPLY ISO MOTION TO EXCLUDE
EXPERTS COWAN AND SINGER

-2-

CASE NO. 3:20-cv-04423-JD

Cowan's belatedly disclosed opinions must be excluded pursuant to Rule 37(c)(1) because the failure to disclose them was neither substantially justified nor harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Plaintiffs offer no justification for the failure to timely disclose, arguing only that it was harmless. First, Plaintiffs note that Defendants were able to ask Cowan questions regarding new opinions he mentioned on the fly at his deposition. Opp. 3. Deposition testimony taken under "ambush" and without proper preparation is no substitute for adequate disclosure in Cowan's expert report and does not obviate the prejudice from his late disclosure. *See Edwards Lifesciences Corp. v. Meril Life Scis. Pvt.*, 2022 WL 254348, at *7 (N.D. Cal. Jan. 27, 2022); *Asetek Danmark A/S v. CMI USA, Inc.*, 2014 WL 6997670, at *2 & n.1 (N.D. Cal. Dec. 9, 2014).

Second, Plaintiffs argue that Defendants' rebuttal expert, Greg Halm, had the opportunity to address Cowan's opinions at his own deposition. Opp. 3. But Halm was deposed ***the next day***. He had virtually no information regarding the methodology Cowan used to estimate the lower bounds for class size, no information at all concerning the supposed class members Cowan said he identified, and no documentation of Cowan's actual testing or matching processes. Thus, regarding Cowan's identification of class members, Halm could only testify: "I just have no basis upon which to evaluate that or not." Huang Ex. D ("Halm Dep.") 36:5-6. Plaintiffs also ignore the "obvious prejudice" from Halm having to develop his opinions and prepare his rebuttal report without the benefit of Cowan's full opinions. *See Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). This is the gamesmanship Rule 26 is expressly intended to prevent.

Finally, Plaintiffs claim that Defendants have not suffered any prejudice because Defendants once proposed to stipulate to numerosity. Opp. 3 n.5. But, Defendants' "offer" was made over a year and a half ago, it was tied to far different putative class definitions and, most importantly, Plaintiffs rejected it. Plaintiffs instead insisted on discovery and then failed to timely disclose their expert's opinions.

### B. Cowan's Admittedly Incomplete Methodologies Are Unreliable.

Plaintiffs argue that despite Cowan's admissions that his methodologies to identify class

members were "incomplete" and still a "work in progress," his testimony should be admissible because they will work "once he ha[s] access to the complete information in Defendants' Takedown Notice and ISRC and CLFN metadata databases." Opp. 2, 4. But Plaintiffs are indulging their own imagination in suggesting that such information is forthcoming or that Defendants have agreed to some further production. *Id.* at 2 n.2.

Defendants never agreed to produce these databases or agreed that doing so after the close of discovery might be appropriate. What Defendants proposed as a discovery compromise was for the parties to "revisit" Plaintiffs' onerous requests for millions of records and vast sums of private user information in the unlikely event that a class was certified. Dkt. 280-10 at 6.[1] But here again, Plaintiffs rejected Defendants' proposal, aggressively pursued the discovery, and even moved (repeatedly and unsuccessfully) to compel production of YouTube's entire takedown-notice databases. Dkt. 147.[2] Plaintiffs also repeatedly rejected the prospect of staged discovery, insisting that the Court's Scheduling Order contemplated one fact discovery period ending on July 5, 2022 "***with no second phase of discovery following certification of the class***." Huang Ex. A at 1; *see also* Huang Ex. B at 5; Dkt. 156 at 1. Plaintiffs may regret their failure to compromise, or wish that they had not said what they did. But they do not get a do-over just because their strategic choices left their expert unable to render complete and valid opinions.

Alternatively, Plaintiffs claim that Cowan's report explains his methodologies in full and "in detail." Opp. 4. Plaintiffs say they are "straightforward" and "not particularly complicated," and boil them down to a sentence or two. *See id.* at 4-5; Dkt. 262-3 ("Cowan Rep.") ¶ 12. According to Plaintiffs, this generic articulation of Cowan's intended methodologies is all that is required at the class certification stage. Opp. 2. Plaintiffs are wrong. *See Sapan v. Yelp, Inc.*, 2021 WL 5302908, at *3 (N.D. Cal. Nov. 15. 2021) (Donato, J.) (finding "highly general"

---

[1] Plaintiffs also misleadingly cite an October 25, 2022 letter (Opp. 2 n.2), in which YouTube agreed to consider revisiting production of email addresses associated with the previously produced sample takedown notice data, not production of the entire database. Even so, Plaintiffs subsequently abandoned their request for production of the email addresses. *See* Dkt. 199.

[2] The Court unequivocally denied Plaintiffs' motion as "just way too much," ultimately granting Plaintiffs half of the more limited sample they had proposed as a more "modest and focused" alternative. Dkt. 154 (July 7 Hr'g Tr.) at 26:14-18, 33:3-6; *see also id.* 32:20-21 ("If you have to look at every notice, that's just not going to work."); Dkt. 165 (Discovery Order).

1  summary of expert's proposed method to identify class members "at some future date" was "of
2  no utility to the issue of certification").[3]

3  If Cowan was to offer opinions regarding putative class size or membership, he was
4  required to timely disclose "a complete statement" of his opinions, "the basis and reasons for
5  them," and the facts or data he considered in forming them. Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). He
6  did not do so. That is clear from Cowan's testimony that he "considered [his report] to be an
7  ***initial description*** of what the four classes were, how [he] ***would*** determine if somebody was in a
8  class and the matching that [he] was doing," Cowan Tr. 159:7-10 (emphases added), and that his
9  methodologies are still "a work in progress," *id.* 159:15-16. He explained that he and his staff
10 were "still in the process of writing the algorithms" to implement his matching processes. *Id.*
11 145:10-13. Importantly, this "initial description" in Cowan's report, *id.* 159:7-10, does not
12 describe how his proposed methodologies will actually work. To this day, Defendants know next
13 to nothing regarding what algorithms Cowan has in development, what tests he has conducted,
14 and what class members he claims to have identified. *See id.* 144:2-24.

15 Plaintiffs' answer is to generalize Cowan's methodologies to a useless level of
16 abstraction. Defendants are not required to simply trust Cowan on class size or composition
17 when they cannot examine the details of his methods or "see how the pieces fit together or how
18 the data drives [his] conclusion." *Open Text S.A. v. Box, Inc.*, 2015 WL 349197, at *6 (N.D. Cal.
19 Jan. 23, 2015) (Donato, J.). "Cross-examination cannot fix that problem." *Id.*

20 **C. Cowan's Methodologies Are Unreliable As They Depend On Unreliable Data.**

21 The data inputs on which Cowan says he will rely—the CLFN metadata, a host of third-
22 party databases, and the contents of DMCA takedown notices—simply are not reliable for his
23 intended purpose. Plaintiffs are largely silent on the point. They offer no counter on Cowan's

---

[3] In *Sapan*, as here, the plaintiff unsuccessfully pursued improper discovery and then complained that the discovery did not yield the information he claimed his expert needed. The Court explained: "This was a situation entirely of [plaintiff's] own making. Sapan requested Yelp call records during discovery, but in such an overly broad and unduly burdensome fashion that the Court could not allow them to go forward without modifications. Sapan's revised requests were equally deficient. After these tries, Sapan inexplicably gave up, and did not pursue any further requests for the records. The result is that Sapan . . . has only a few months of call records, well short of the several-year liability period alleged for the proposed class." 2021 WL 5302908, at *2 (citations omitted).

complete lack of the copyright expertise required to judge reliability, or on his failure to even try. Mot. 9 & n.5. Plaintiffs do attempt to buttress Cowan's reliance on the U.S. Copyright Office registration records and the SoundExchange database, but the circumstances in which other courts have relied on those databases are not present here. *See* Mot. 9.[4]

As for the supposed reliability of takedown notices, the record is replete with notices that identify the wrong copyright owner in the field that Plaintiffs point to. *See* Mot. 8 & n.3; Dkt. 279-7 ("Halm Rep.") ¶ 79. Plaintiffs' assertion that YouTube validates the information in notices remains one of their most egregious misrepresentations. *See* Dkt. 268-2 (Zhu Decl.) ¶ 3 ("YouTube . . . is in no position to ultimately determine issues such as whether the party sending the notice is, in fact, the owner or agent of the owner claiming the copyright interest . . . ."). Rather, YouTube takes down content specifically identified in a takedown notice that meets the legal requirements in accordance with the DMCA. And the very existence of 17 U.S.C. § 512(f), on which YouTube bases its counterclaims, flies in the face of Plaintiffs' argument that DMCA takedowns reliably (and conclusively) establish infringement. Section 512(f)'s whole premise is that takedown notices can contain bogus information, and that service providers could nonetheless honor them to claim safe harbor. Congress included Section 512(f) to provide compensation for the damage caused by misinformation in such notices.

Whatever Cowan's matching methodology entails, its reliability depends on the accuracy of data that is demonstrably unreliable. Cowan offers nothing to account for this failing, which is another ground for barring his opinions. *See, e.g., In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F. Supp. 2d 1021, 1038, 1040 (C.D. Cal. 2013) (finding Cowan's report "inadmissible under Rule 702 because the underlying data is insufficient and the sampling methodology cannot be reliably applied due to systematic error").

**II.     SINGER'S OPINIONS MUST BE EXCLUDED.**

Plaintiffs' defense of Singer offers a hodgepodge of excuses rather than engaging with

---

[4] *Cf. Idema v. Dreamworks, Inc.*, 90 F. App'x 496, 498 (9th Cir. 2003) (taking judicial notice of existence of copyright registration); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932 (C.D. Cal. May 27, 2015) (SoundExchange database could be used to assess ownership in case where court concluded no "contentious ownership inquiries" would arise).

Defendants' arguments for exclusion of his testimony. Again:

- Singer explicitly relies on Cowan for key inputs without which Singer agrees his damages model cannot work. Because Cowan must be excluded, Singer must be excluded as well.

- Singer's assumption that there is a 1:1 relationship between the share of allegedly infringing content on YouTube and the share of YouTube watch time attributable to such content—the ***only*** assumption linking the allegedly wrongful conduct with Plaintiffs' claim for profits—remains unsubstantiated and controverted by record evidence.

- Singer's opinions do not fit Plaintiffs' underlying theories of liability based on Watch Next and Autoplay and do not exclude extraterritorial acts of infringement.

Any one of these flaws warrants his exclusion.

### A.  Singer Cannot Sustain His Model Absent Critical Input From Cowan.

Singer's damages model depends on "key inputs" from Cowan about the volume of supposedly infringing content on YouTube, without which it cannot function. Huang Ex. E ("Singer Tr.") 124:13-15 ("the methodology is going to turn on certain key inputs; primarily, the infringing share"). Singer repeatedly stated exactly that in his report and during his deposition and disclaimed any reliance on the "placeholder" figure that 1.32% of all videos on YouTube are infringing. *See, e.g.*, Mot. 11-12; Dkt. 261-2 ("Singer Rep.") ¶ 103; Singer Tr. 114:22-25, 154:11-17, 156:17-18 ("the infringing share is going to be crafted, ultimately, by Dr. Cowan").

Singer does not have "the infringing share" that he repeatedly said he needs and would get from Cowan. And there is no other mechanism or justification for him to get it, notwithstanding Plaintiffs' newfound craving for a "merits phase" of the case before trial. *See, e.g.*, *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 506 (N.D. Cal. 2008) ("After eight months of discovery, plaintiffs should have the data to formulate their regression analysis with more precision. . . . [P]laintiffs should be able to provide more than promises at this late stage of the litigation."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 (3d Cir. 2008) ("The evidence and arguments a district court considers in the class certification decision call for rigorous analysis. A party's assurance to the court that it intends or plans to meet the requirements is insufficient."); *see also Sapan*, 2021 WL 5302908, at *2-3.[5]

---

[5] Plaintiffs cite this Court's opinion in *DZ Reserve v. Meta Platforms*, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) (excluding expert opinion drawn on other excluded expert "unless an independent basis for it is demonstrated"), for the proposition that "an expert can rely on inputs

(continued...)

REPLY ISO MOTION TO EXCLUDE
EXPERTS COWAN AND SINGER                        -7-                    CASE NO. 3:20-CV-04423-JD

**B.  Singer's Core Assumption Is Unreliable And Dooms Singer's Model.**

Plaintiffs do not dispute that Singer's damages model must provide a "causal link" between the allegedly infringing acts at issue and the specific profits that they seek. *See* Opp. 12; *Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004). Plaintiffs also do not dispute that Singer's damages regression only calculates the relationship between YouTube watch time and ad revenue. Singer Rep. ¶¶ 97-101. Singer explains that, as a result, his damages model "***requires*** the separation of the time on YouTube attributable to the Infringing Content." *Id.* ¶ 103 (emphasis added). Thus, Plaintiffs concede that, for Singer's damages analysis to be relevant at all, he must rely on his invented assumption that there is a ***1:1 causal relationship*** between the percentage of allegedly infringing content on YouTube and the percentage of watch time attributable to such content. Without that assumption, Singer cannot measure damages "attributable to" the alleged infringement. *See* Singer Tr. 127:5-8 ("I was forced to make that assumption. It was [the] only way I could get to a damages estimate."); *see also Polar Bear*, 384 F.3d at 707-08 (quoting 17 U.S.C. § 504).

This critical assumption goes to admissibility, not weight as Plaintiffs argue. Opp. 11, 13. District courts often exclude expert testimony on copyright damages where the requisite causal nexus is not shown. *See Assessment Techs. Inst., LLC v. Parkes*, 2021 WL 2530977, at *4-5 (D. Kan. June 21, 2021) (excluding expert on indirect profits as "unduly speculative" where causation opinion lacked "any objective data"); *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 2013 WL 5970065, at *8, 11 (S.D.N.Y. Nov. 8, 2013) (excluding indirect profits where damages expert "assume[d] a causal nexus," but "failed to identify the ways in which [defendant's] profits are attributable specifically to [the infringement]"). That is the case here.

Plaintiffs argue that Singer's 1:1 assumption was reasonable because he included a separate regression "show[ing] that infringing content is positively ***correlated*** with watch time."

---

(...continued from previous page)
not mentioned in the expert report." Opp. 10. But Singer does not have "an independent basis" for the key input in his model (the "infringing share") and Plaintiffs do not point to any in his report. Instead, Plaintiffs speculate that, in theory, Cowan, Singer, the class administrator, or "a summary witness pursuant to Fed. R. Evid. 1006" (*id.* at 9) could perform the necessary work to identify class members assuming they had a massive volume of additional data to which they are not entitled. That is not faithful to *DZ Reserve*'s holding or consistent with reality.

Opp. 10-11. But the regression Plaintiffs cite as support for Singer's 1:1 assumption yields such outrageous and improbable results that it is facially unreliable and cannot provide non-speculative support for Singer's assumption.[6] Moreover, Singer's conclusions about correlation are legally insufficient to support expert testimony regarding *causation*. *See, e.g., Rearden LLC v. Walt Disney Co.*, 2021 WL 6882227, at *6-7 (N.D. Cal. July 12, 2021) (striking expert on profits for "conflat[ing] correlation with causation").[7]

Absent *evidence* supporting Singer's critical assumption, Plaintiffs offer a familiar refrain—blaming YouTube for never producing watch time data. Opp. 11 n.11, 13. But **Plaintiffs never even sought views or watch time data** from YouTube. Indeed, in Plaintiffs' letter brief demanding further discovery a month before Singer's original expert report was due, Plaintiffs did not make any mention of views or watch time data, instead only seeking "Google gross ad revenue associated with [each allegedly] infringing video." Dkt. 156 at 2-3. Plaintiffs had two years of fact discovery but chose not to seek watch time data; they bear responsibility for the lack of support for Singer's pie-in-the-sky assumption.

**C.  Singer's Model Does Not Fit Plaintiffs' Theories Of Liability.**

Plaintiffs' opposition demonstrates that they either do not understand or are indifferent about the lack of fit between Singer's damages model and Plaintiffs' theories of liability. Plaintiffs argue that Singer's model need not exclude revenue from content that was not viewed

---

[6] Singer's regression claims that removing 1% of all allegedly infringing videos on YouTube (rather than 1% of all videos on YouTube) would result in a 0.418% reduction of **total time spent on YouTube**. Singer Rep. ¶ 95; Table 5. Using Singer's 1.32% "placeholder" for the share of infringing content on YouTube, removing 1% of allegedly infringing content on YouTube is equivalent to removing 0.0132% of all videos on YouTube (1% of 1.32% = 0.0132%). Thus, Singer's regression suggests that removing this 0.0132% of all videos would result in a 0.418% reduction in YouTube watch time, rather than the 1:1 reduction that his whole analysis rests on. There is no reason to credit an analysis that the removal of allegedly infringing videos would yield not a 1:1, but a 1:31.7 (0.418% / 0.0132% = 31.7) decrease in watch time. Put differently, Singer's regression claims that allegedly infringing videos have a **31.7 times greater impact on watch time** than any other video. That conclusion is indefensible and renders his entire analysis unreliable. *See also* Dkt. 257-3 ("Peterson Rep.") ¶ 118.

[7] Faced with evidence that allegedly infringing videos generate far less revenue than the average YouTube video (Mot. 13), Plaintiffs baldly assert that revenue discrepancy is due to YouTube's monetization policies and the early removal of videos from the platform. Opp. 11. But that claim is "mere subjective beliefs or unsupported speculation," not rooted in any data or evidence, and must be disregarded. *Mission Viejo Florist, Inc. v. Orchard Supply Co.*, 2019 WL 13045054, at *3 (C.D. Cal. Feb. 28, 2019).

1  because of Watch Next or Autoplay because "Plaintiffs have never taken the position that Watch
2  Next and Autoplay are the only loci of infringing acts." Opp. 14. But Plaintiffs' motion for class
3  certification plainly states that "[w]ebsite owners are directly liable if they are 'actively involved
4  in the infringement'" and relies on Watch Next and Autoplay to establish such involvement.
5  Dkt. 245 at 7, 10-11; Opp. 14. Under Plaintiffs' own theory of liability (and they have not
6  offered any other), there is no claim for views of a video that are not attributable to Watch Next
7  or Autoplay. Yet Singer's damages model fails to exclude revenues as a result of these views.

Similarly, Plaintiffs claim that Singer's model accounts for extraterritorial infringements, yet the cases they cite stand for the unremarkable position that if an infringement is connected to the U.S., either because it was "uploaded to YouTube's servers in California" or because there was a predicate "infringing act that occurred in the United States," the infringement is not extraterritorial. *Id.* But Plaintiffs do not actually show such connections for the allegedly infringing videos at issue, nor how they could. They do not address when a view "had no connection with the U.S." (Mot. 15)—for example, when an infringing video was "uploaded, processed and viewed in India." Singer Tr. 193:18-20. Singer admitted that his model has "no way" to account for these geographic differences. *Id.* 192:9-12.

As the Supreme Court has made clear, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to" the plaintiff's theory of liability. *Comcast*, 569 U.S. at 35. Singer does not satisfy that basic requirement.[8]

## CONCLUSION

Defendants respectfully request that the Court exclude both Cowan and Singer.

---

[8] Plaintiffs also claim that Singer's "estimation of [YouTube's] revenues" is relevant to the issue of statutory damages "in three of the four proposed classes." Opp. 8. To be clear, Singer has no admissible opinions relevant to statutory damages and should not be allowed to testify on the subject at all. Regarding the proposed CMI classes, Singer ***expressly disclaimed*** any notion that his analysis is relevant. *See* Singer Tr. 248:4-249:18 ("I'm not speaking to the damages of the CMI class."). For the proposed copyright infringement classes, as Plaintiffs' cases acknowledge, a profits analysis is relevant to evaluating statutory damages only if it measures "profits reaped by defendant ***in connection with the infringement***." Opp. 8 (emphasis added, citation omitted). As shown above, Singer's damages model neither establishes the requisite causal link between the allegedly infringing acts nor fits Plaintiffs' underlying theories of liability. *See supra* II.B-C. And Singer has not even separated domestic registered works eligible for statutory damages from works not eligible for statutory damages. *See* Singer Tr. 245:4-19. Therefore, Singer has no admissible opinions regarding statutory damages.

|    |                          |                                                      |
|----|--------------------------|------------------------------------------------------|
| 1  |                          | Respectfully submitted,                              |
| 2  | Dated:  March 24, 2023   | WILSON SONSINI GOODRICH & ROSATI                     |
| 3  |                          | Professional Corporation                             |
| 4  |                          |                                                      |
| 5  |                          | By: */s/ David H. Kramer*<br>       David H. Kramer  |
| 6  |                          | Attorneys for Defendants and                         |
| 7  |                          | Counterclaimants<br>YOUTUBE, LLC and GOOGLE LLC      |