# EXHIBIT A

to the Declaration of Qifan Huang



January 28, 2022

**VIA EMAIL**

Eli B. Richlin
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022

**Re:**   *Schneider et al v. YouTube, LLC et al.*, Case No. 3:20-cv-4423 (N.D. Cal.)

Dear Eli,

We write on behalf of Plaintiffs in response to your letter of January 14, 2022 (the "1/14 Letter").[1]

**Documents concerning repeat infringers and copyright strikes (RFP Nos. 38, 48 and 50):** Your 1/14 Letter indicates that you have identified additional responsive documents and you intend to produce them or log them in a privilege log. Please confirm by February 4, 2022 that production of the documents and/or the privilege log will be substantially complete by February 15, 2022.

**Documents concerning revenue of videos posted to YouTube (RFP Nos. 46, as well as 23(d), 88, 102, and 103):** Request No. 46 seeks documents concerning Google and YouTube's monthly revenues, including amounts from advertisements shown on the platform, and how revenues are paid to users and owners of copyrighted content. Having produced no documents responsive to this Request, you offer for the first time in your 1/14 Letter to produce "reasonably accessible documents showing YouTube's revenue, including revenue attributable to YouTube ads, for the three-year period preceding the filing of the original complaint." That information (which is available to the public in Alphabet's annual reports) is insufficient to satisfy this Request. This RFP seeks information about changes to revenue over time, which is relevant to show how revenue changes are correlated to changes in implementation of Autoplay, Content ID, and other features, and revenue that is attributable to particular categories of videos, including those that include advertisements and those that do not, none of which will be satisfied by your offer of aggregate annual revenue figures. Moreover, your proposal to "revisit these requests in the event that a class is certified" is mooted by the Court's scheduling order, which contemplates the end of fact discovery on July 5, 2022 with no second phase of discovery following certification of the class.

We hope to reach an acceptable compromise on this Request. To allow us to formulate such a proposal while minimizing any potential burden, we must understand how YouTube stores, aggregates, and categorizes its revenues. This would include, for example, the periods of

---

[1] We are still evaluating Defendants' responses regarding RFPs not discussed in this letter, which will be the subject of a forthcoming letter.



time that YouTube aggregates its revenue data in internal or external reports; the different categories of revenues YouTube tabulates (ad revenue, other revenues, etc.); and any other information that demonstrates how YouTube keeps track of its various revenue streams, as well as what those various revenue streams are.  In addition, please explain the extent to which YouTube tracks or can determine the following: revenue from the Content ID system for videos containing copyrighted material (RFP No. 23(d)); revenue attributable to videos posted to the YouTube platform that infringe on copyrights (RFP No. 88); revenue attributable to Recommended Videos (RFP No. 102); and revenue attributable to videos shown in YouTube Search (RFP No. 103). Please provide this information by February 4, 2022 so that we can propose a tailored compromise offer shortly thereafter.

**Organizational charts (RFP No. 58)**:  Your 1/14 Letter claims that your production of GOOG-SCHNDR-00035056—an undated list of 18 employees and their job titles and managers—is "sufficient to show the general organization of YouTube's copyright operations."  To date, Defendants have not produced any organizational charts, and this half-page list is insufficient to show the general organization of YouTube's copyright operations, let alone the organization of the teams that work on "enforcement of copyright infringement; Fair Use; responses to Takedown Notices; the Content ID System; the Account Monetization Program; the Content Verification Program; Copyright Match Tool; the YouTube Partner Program; the AutoPlay Feature; Repeat Infringers; and Copyright Management Information," which are also the subject of this Request.

Your 1/14 Letter also indicates that you intend to produce additional information showing the general organization of YouTube's copyright operations in a forthcoming production.  Please confirm by February 4, 2022 whether this production will include (a) organizational charts showing all departments at YouTube; (b) organizational charts showing the structure and personnel of each department referenced in GOOG-SCHNDR-0035056; and (c) an organizational chart showing the teams that work on each of the issues identified in this Request. Please also confirm by February 4, 2022 that this production will be substantially complete by February 15, 2022.

**Documents concerning Digital Fingerprinting Technology (RFP Nos. 81, 83-84, and 98)**:  Contrary to what is stated in your 1/14 letter, we have repeatedly accommodated your requests for further information regarding these Requests.  As you know, "Digital Fingerprinting Technology" is defined in the RFPs as "any software or technology which analyzes a piece of video and/or audio to determine the unique characteristics of the content and create a pattern that is stored in a database and can be used for recognizing the content in the future."  At your request, we provided in our August 17, 2021 letter the following illustrative list of software or technologies (other than Content ID) that constitute Digital Fingerprinting Technology:  "Audible Magic's content recognition software, ACRCloud, the Pex Attribution Engine, GraceNote's MusicID, Inscape Data Services' automatic content recognition software, Kantar Media's fingerprinting technology, Zapr's audio fingerprinting algorithm, and Shazam."

Defendants do not appear to dispute that these documents are relevant to show the extent to which Defendants have accommodated or interfered with Digital Fingerprinting Technology within the meaning of the DMCA.  The only dispute appears to be whether some or all Digital Fingerprinting Technologies constitute Standard Technical Measures under the DMCA.  As we have already made clear to you in our telephonic meet and confer and our November 11, 2021



letter, the fact that the parties do not agree whether Digital Fingerprinting Technology is a Standard Technical Measure under the DMCA is not a proper basis for Defendants to withhold documents responsive to these Requests.

Your 1/14 Letter also asks us to reconsider your proposal from December 3, 2021, in which Defendants offered "to conduct a search for and produce any non-privileged communications, if any, between relevant members of Defendants' copyright team and third parties that discuss whether the specific digital fingerprinting technologies you provided in your August 17 letter constitute standard technical measures." As we noted in our December 18, 2021 letter (the "12/18 Letter"), this proposal is not relevant to Request Nos. 81, 83 and 84 because it is limited to communications with third parties and does not address our Requests concerning your accommodation and/or interference with other digital fingerprinting technologies (RFP No. 81), the terms on which the digital fingerprinting technologies are available to users (RFP No. 83), and the potential cost and/or burdens of the digital fingerprinting technologies on YouTube (RFP No. 84). In light of your last correspondence standing on this irrelevant proposal, we understand the Parties to be at impasse on RFP Nos. 81, and 83-84.

To the extent RFP No. 98 contemplates third party communications, it too covers subject matters beyond merely whether digital fingerprinting technologies constitute standard technical measures, such as your accommodation of and/or interference with them, among others. Nevertheless, in the interest of compromise, our 12/18 Letter offered to narrow RFP No. 98 to communications concerning the list of digital fingerprinting technologies in our August 17 letter. You rejected this compromise proposal as overly burdensome, pointing out that our August 17 list of technologies included Content ID. You seem to have misinterpreted our proposal. To be clear, although it is our position that Content ID constitutes or incorporates one or more standard technical measures, we are seeking discovery of third-party digital fingerprinting technologies through this request and not independent discovery of Content ID. Accordingly, as a compromise, we can restrict RFP No. 98 to communications concerning the list of non-Content ID technologies set out in our August 17, 2021 letter. Please let us know by February 4, 2022 whether you will accept this compromise for RFP No. 98, which requires production to be substantially complete, including service of any privilege log, by February 15, 2022.

**Documents concerning evaluation of Standard Technical Measures (RFP No. 82):** We appreciate your clarification in your 1/14 Letter and your willingness to strike "specifically" from your proposal. Accordingly, you offered to produce "any non-privileged documents from relevant members of Defendants' copyright team that discuss the existence or non-existence of 'standard technical measures' within the DMCA, dating from the three years prior to the commencement of this case." We can accept this compromise in satisfaction of RFP No. 82 if the relevant period is extended to ten years prior to the commencement of this case (i.e. July 2, 2010). Please confirm by February 4, 2022 whether you will accept this compromise, which requires production of documents and privilege logs to be substantially complete by February 28, 2022.

**Documents concerning the number or proportion of infringing videos on the YouTube platform and revenues attributable to infringing videos (RFP No. 88)**: Request No. 88 seeks Documents and Communications concerning the number or proportion of infringing videos on the YouTube platform, and your revenues attributable to such videos. We



agree that YouTube's recently published Copyright Transparency Report, which you indicated in your 1/14 Letter would be forthcoming in a future production but is publicly available now,[2] is responsive to this RFP.  Please produce the Copyright Transparency Report and any drafts thereof without further delay.  However, that report is insufficient to satisfy this Request.  In addition, your proposed compromise in your 1/14 Letter is illusory; after explaining at length that YouTube purportedly takes the position that it neither identifies nor analyzes infringements, you then offer "to engage in a reasonable search for non-privileged analysis, if any, 'about the volume of infringing content on the platform.'"  We cannot accept a compromise designed to return a null set.

Satisfaction of this Request will require a document search.  Although you previously refused our offer to negotiate search terms and custodians, in a further attempt at compromise, we propose the search terms attached in Appendix A to be run against documents from 10 YouTube custodians from January 1, 2015 to the present (with the particular custodians to be proposed by YouTube and then negotiated among the parties following production of organizational charts sufficient to identify the relevant custodians), along with a production of presentations, memoranda, or reports relevant to this Request from January 1, 2015 to the present.  We note that this is five fewer custodians than our previous proposal made on August 17, 2021, which Defendants rejected.  To identify the ten custodians, we invite a proposal from Defendants, which must be accompanied by organizational charts or other materials sufficient to understand the teams and relevant time periods for each proposed custodian, so the parties can negotiate the list.  Please confirm by February 4, 2022 whether you will accept this compromise.  In light of the case schedule, we would need to reach agreement on the custodians and search terms no later than February 15, 2022 and for production to be substantially complete, including service of any privilege log, by March 15, 2022.

                                            Sincerely,

                                            /s/ *Phil Korologos*
                                            Phil Korologos

---

[2] The Copyright Transparency Report is apparently available at https://storage.googleapis.com/transparencyreport/report-downloads/pdf-report-22_2021-1-1_2021-6-30_en_v1.pdf.  We fail to understand how Defendants have not yet produced the report in this litigation, given that it was publicly released almost eight weeks ago.



# APPENDIX A

Plaintiffs' Search Term Proposal for RFP No. 88

1. (copyright! OR infring! OR pirat! OR pirac!) AND (proportion! OR portion OR percent! OR % OR ratio OR total OR share OR number OR overall OR frequen! OR prevalen! OR incidence)

2. (copyright! OR infring! OR pirat! OR pirac!) AND (survey OR eval! OR review! OR analys! OR analyz! OR report! OR assess! OR evaluat! OR examin! OR dive OR study OR studies OR investigat! OR memo! OR memorand!)

3. (copyright! OR infring! OR pirat! OR pirac!) /20 (revenue! OR profit! OR advert! OR ad OR ads OR view!)