# EXHIBIT B

to the Declaration of Qifan Huang




February 11, 2022

**VIA EMAIL**

Eli B. Richlin
Wilson Sonsini Goodrich & Rosati
1301 Avenue of the Americas
40th Floor
New York, NY 10019-6022

**Re: *Schneider et al v. YouTube, LLC et al.*, Case No. 3:20-cv-4423 (N.D. Cal.)**

Dear Eli,

We write on behalf of Plaintiffs in further response to your letter of January 14, 2022 (the "1/14 Letter").

**Documents concerning Plaintiffs and their copyrighted works (RFP Nos. 2, 3, 106, 107, 112 and 113):** We have reviewed the search terms proposed in Supplemental Appendix 1 of your 1/14 Letter. We can agree to your search term counterproposal for Request Nos. 2 and 3. Please confirm by February 18, 2022 that you have commenced your search with these updated terms and will substantially complete production by March 15, 2022.

With respect to Request Nos. 106, 107, 112, and 113, we attach in Appendix A proposed search terms for Plaintiffs AST Publishing and Uniglobe. Please confirm by February 18, 2022 that these search terms are acceptable and that you will substantially complete production by March 15, 2022.

**Documents concerning Plaintiffs' takedown notices (RFP Nos. 4, 5, 10, 11, 13, 108, 109, 114 and 115):** In your 1/14 Letter, you assert that you have already produced numerous documents sufficient to show all categories in the parties' agreed-upon compromise, which includes counter-notices and also communications concerning the takedown notices or counter-notices. To date, you have not produced *any* counter-notices. As to "communications," the four emails you cite are insufficient; each of these four emails says only: "Thank you very much for your notification. The content has been removed." *See* GOOG-SCHNDR-00000783, GOOG-SCHNDR-00000786, GOOG-SCHNDR-00000791, GOOG-SCHNDR-00000831. Please confirm that you will search for all communications concerning takedown notices submitted by the Plaintiffs and counter-notices, if any.

You committed in your 1/14 Letter to producing additional documents, including counter-notices, once Plaintiffs provided an updated list of infringements identifying the work(s) infringed by each URL. We provided that list on January 14, 2022 and, at your request, a further revised list on February 1, 2022. Accordingly, please begin producing these additional documents by February 18, 2022 and confirm that substantial production will be complete by March 15, 2022. It is clear from other communications Defendants have produced that Google and YouTube personnel have closely monitored Ms. Schneider's activities, including her testimony regarding



copyright issues. *See, e.g.*, GOOG-SCHNDR-00039174. Based on this, we expect this production to include, in addition to counter-notices, substantive internal and/or external communications concerning the takedown notices and counter-notices—not merely automated responses like the ones you cite.

As to AST and Uniglobe, documents similar to GOOG-SCHNDR-00000783 will not be sufficient to show communications concerning takedown notices and counter-notices for these plaintiffs. Please begin producing counter-notices and substantive communications concerning the takedown notices and counter-notices of AST and Uniglobe by February 18, 2022, and confirm that substantial production will be complete by March 15, 2022. In addition, please confirm by February 18, 2022 that production of the takedown notices will be substantially complete by March 15, 2022.

Finally, we reiterate that we are not seeking affirmative discovery on Pirate Monitor's behalf concerning the claims that were withdrawn on March 8, 2021. Defendants should refrain from expending time on Request Nos. 8-11, except to the extent they concern the Counterclaims, and Request Nos. 12, 13, and 43(b) are withdrawn entirely.

**Documents concerning videos containing Plaintiffs' copyrighted works (RFP Nos. 6, 7, 110, 111, 116 and 117):** We note that discussions have been ongoing under separate cover and in telephonic meet-and-confers held January 18 and 25 regarding not just Request No. 6 but also Request Nos. 110 and 116, concerning videos containing the Uniglobe and AST Works.

With respect to Request Nos. 7, 111, and 117, we appreciate that you are open to considering the production of revenue- and strikes-related information concerning matches found upon running Content ID. However, we do not think it is productive or efficient to table all discussion until Defendants actually run Content ID and identify further videos that infringe on Plaintiffs' works—especially since you have informed us of the possibility that identifying further videos through Content ID may take as long as six months. While we recognize that production of revenue- and strikes-related information itself cannot begin until Defendants have identified the videos that infringe on Plaintiffs' works, we must reach agreement now so that production can begin as soon as an agreement governing the use of Content ID is reached.

Moreover, your reservations about potential burden, given the unknown quantity of forthcoming matches, are misplaced. Revenue- and strikes-related information concerning infringements of Plaintiffs' works are obviously central to the claims in the case; their significant relevance substantially outweighs any potential burden. The fact that the volume of infringements turned up by Content ID may be large would not justify a claim of burden given how they go to the heart of this case. Please confirm by February 18, 2022 whether you will agree to provide the information set forth in our December 8, 2021 Letter for all videos that are identified as containing the copyrighted works. Please provide the estimated time between identification of a match and production of this information for the video as well.

**Copyright policies and procedures (RFP Nos. 14 and 24):** As to Request No. 14, your 1/14 Letter notes your intention to produce (or log, if privileged) numerous additional documents sufficient to show YouTube's policies and procedures related to copyright management. Please



begin producing these documents by February 18, 2022, and please confirm that this production will be substantially complete by March 15, 2022.

For Request No. 24, thank you for providing information for the first time regarding Defendants' customer case management system. We appreciate you identifying four documents produced in this case that you now represent "show[] how YouTube's current and historical customer case management systems function." We note that the phrase "customer case management system" appears in only one of these documents (GOOG-SCHNDR-00040835), which is seemingly from 2012 and states that "Cases is the next generation global customer case management system used to manage 1:1 email, phone and chat customer interactions for all Google products." GOOG-SCHNDR-00040835 (emphasis added). The only recent document that references Cases is GOOG-SCHNDR-00040943, which says nothing about how it is used for "Content ID, Takedown Notices, or any other allegation, investigation, or policing of copyright infringement," the topics sought by this Request. Other documents such as GOOG-SCHNDR-00040617 and GOOG-SCHNDR-00040831 refer to a second system called "YouTube Flows." None of the documents you have pointed to explain how these two systems interact, tie YouTube Flows to "customer case management systems" (a phrase Defendants used over a year ago and have refused to explain), or explain how these systems are used for "Content ID, Takedown Notices, or any other allegation, investigation, or policing of copyright infringement," the topics sought by this Request. Your 1/14 Letter also represents that GOOG-SCHNDR-00040810, GOOG-SCHNDR-00040816, and GOOG-SCHNDR-00040797 "reside within Defendants' customer case management systems." Please explain what it means for the documents to "reside" in these systems, how these documents were identified and produced, and what steps Defendants have taken to preserve, search for, and produce documents from your customer case management systems that are responsive to the RFPs. In addition, because it is not apparent from the face of these documents or any metadata in your production, please identify all other produced documents that come from Defendants' customer case management systems. Please provide a detailed explanation on these issues no later than February 18, 2022 so that we can discuss compromises in satisfaction of Request No. 24.

**Content ID policies and procedures (RFP Nos. 17, 18, 21, 22, 23, and 79):** As to Request No. 17, please confirm by February 18, 2022 that this production will be substantially complete by March 15, 2022. As to Request No. 18, we cannot accept your offer to produce the schema for the Copyright Tools Application Data, which you have already agreed to do in response to Schneider's Interrogatory No. 15, in full satisfaction of this Request. Consistent with our approach for other database RFPs, after Defendants produce the schema and field descriptions, we can discuss a compromise over data. Please produce the schema and fields by February 18, 2022.

As to Requests No. 21 and 22, your 1/14 Letter asserts that "Defendants have already produced many documents" within the three categories at issue. This statement is unhelpful. We acknowledged in our December 18, 2021 letter that you had produced various versions of YouTube's public webpages, template Content ID agreements, etc., which might indeed qualify as "many documents" from some of these categories. Our specific concern was that you have produced very few documents concerning internal policies and procedures and the process that Content ID uses for identifying matches. If you believe you have produced such documents, please identify them. You also commit in your 1/14 Letter to producing additional documents responsive to these requests. Please confirm by February 18, 2022 that substantial production will be



complete by March 15, 2022. Your offer to produce documents concerning changes and proposed changes to "specified policy and procedure documents" is an inappropriate attempt to pass your obligation to identify responsive documents to Plaintiffs. Your client is aware of the relevant policy and procedure changes and must identify them by speaking with relevant personnel and then employing keyword searches of relevant custodians. We note that documents like GOOG-SCHNDR-00001252 show that Defendants memorialize significant policy changes and strategize around rollouts of policy changes. *See* GOOG-SCHNDR-00001252 at -1258-59 ("What are we doing to make sure this doesn't blow up? We are applying several lessons from previous launches (eg: Claimageddon) . . . .").

As to Request No. 23, we understand your silence on subparts (b) and (c) in the 1/14 Letter as confirmation that the parties have reached impasse there. We note that we have addressed 23(d) under separate cover in our January 28, 2022 letter in conjunction with other Requests seeking information about revenue. As to 23(e), you have indicated that you have located additional documents responsive to this Request, including one that was produced on January 13, 2022. Although you did not identify it, we understand the document to be GOOG-SCHNDR- 00040616. This document is seemingly responsive to "the cost of . . . administering the Content ID System" since 2013, but not to administration from prior years or the cost of developing it. Given the existence of this spreadsheet, we expect there to be similar ones concerning earlier administration and development costs that should be produced. Please produce the documents responsive to 23(e) you have located by February 18, 2022 and indicate whether further documents are forthcoming or production is complete.

Request No. 23(f) seeks production of the contracts that govern the relationship between Defendants and participants in the Content ID system. We noted in our December 18, 2021 Letter that you have produced template Content ID agreements but no actual contracts. Your 1/14 Letter confirms your unwillingness to produce actual contracts. Accordingly, the parties are at an impasse.

**Revenue and volume of videos posted to YouTube (RFP Nos. 46 and 47):** Our 1/28 Letter addressed RFP No. 46 in more detail, but we note that your February 2 production contains Alphabet Forms 10-K and 10-Q. GOOG-SCHNDR-00041505, GOOG-SCHNDR-00041605, GOOG-SCHNDR-00041675, GOOG-SCHNDR-00041741, GOOG-SCHNDR-00041788, GOOG-SCHNDR-00041886, GOOG-SCHNDR-00041959, and GOOG-SCHNDR-00042010. As we already explained in our 1/28 Letter, that information is publicly available and insufficient. Please provide by February 18, 2022 a substantive response to the requests for further information about how Defendants track revenue in our 1/28 Letter.

RFP No. 47 seeks "Documents sufficient to show the following information for each month since the Content ID System was launched: a) The volume of content posted on YouTube, expressed in number of videos and total size of data; b) The proportion of videos posted by Users that consist of audio with a visual of still images or slideshows of still images; c) The volume of content deleted by Users, expressed in number of videos and total size of data; d) The number of Users." In your 1/14 Letter, you offered to produce "documents reflecting the number of users of YouTube's platform and will do so shortly." Further, you inquired whether Plaintiffs "will accept this compromise in full or partial satisfaction of this Request" and expressed willingness to "revisit" this Request "in the event that a class is certified." Assuming that your production will



show the number of users by month for the three years prior to the filing of the original complaint until the present, we can accept this offer in satisfaction of Request No. 47(d). Please confirm that your production will cover this information. However, your compromise is entirely unresponsive to the other subparts of this Request. We also note that your offer to revisit these requests after the class is certified is inconsistent with the Court's scheduling order, which does not provide for bifurcated discovery. Since you have not offered any compromise in response to subparts (a), (b), and (c) of Request No. 47, we are forced to conclude that we are at impasse for these subparts.

**Documents concerning repeat infringers (Request No. 49):** RFP No. 49 seeks documents sufficient to identify repeat infringers on the YouTube platform and associated information including the date the user was determined to be a repeat infringer, other videos posted by the user, and other data. To date you have produced a single spreadsheet containing data on the number of "channels terminated for copyright" by month for the three-year period prior to the filing of the Complaint (GOOG-SCHNDR-00037969). As we explained in our 12/18 Letter, the parties have already agreed (during meet-and-confers in July and August 2021) that you will identify the users who uploaded videos Plaintiffs identified as allegedly infringing, including producing all associated information and data from the Takedown Notice and Content ID databases. Your recent letters have asserted that this prior agreement must also fully satisfy RFP No. 49 because you will provide "documents sufficient to show whether Defendants identified those users as repeat infringers". That agreement to identify allegedly infringing users and associated data cannot be repurposed as part of a new proposal on RFP No. 49, which seeks documents concerning *all* repeat infringers Defendants have identified, nor can it be withdrawn. We expect Defendants to comply with the terms of the parties' agreement, including identifying any users that posted infringing videos who are repeat infringers.

Nevertheless, in the interest of compromise, we propose the following as a compromise for RFP No. 49: For a statistically random distribution of 10% of the repeat infringers channels identified in GOOG-SCHNDR-00037969 as channels terminated within the statutory period, Defendants would produce the data and information requested in RFP No. 49 with the users' names and email addresses anonymized using unique identifiers consistent across databases. We understand from GOOG-SCHNDR-00037969 that this will be approximately 200,000 repeat infringers. Please confirm by February 18, 2022 whether you will accept this proposal.

**Non-custodian storage locations (Request No. 60):** In response to numerous Requests, Defendants have selected a small number of documents for production that have no apparent connection to our Requests and only later explained in cryptic fashion how they relate to our Requests. Defendants' deficient production regarding YouTube's customer case management systems, described above, exemplifies this approach. Our Request for documents sufficient to show non-custodian storage locations is a practical step towards understanding how Defendants store documents relevant to the claims in this case. Since you have refused to produce any documents on relevance grounds, the parties are at an impasse on this Request.

**Document and data retention plans (RFP No. 69):** After agreeing to produce "documents sufficient to show Defendants' retention policies for YouTube user content, insofar as those policies concern data relating to Content ID or to copyright takedown notices" (July 15, 2021 Letter from K. Knoll to P. Korologos), you have produced only two documents that are responsive to that offer, GOOG-SCHNDR-00035777 and GOOG-SCHNDR-00035775, neither of



which is sufficient to show the relevant retention policies. In our December 18, 2021 letter, we requested that you produce documents sufficient to show the relevant retention policies by January 7, 2022. In your 1/14 Letter, you asserted that your production is sufficient and refer us "to the parties' significant prior correspondence on these subjects" for "questions concerning Defendants' policies and practices." Since you have failed to produce additional documents and effectively ended communications with respect to RFP No. 69, it is clear that the parties are at an impasse regarding further documents responsive to this Request.

**Documents regarding Checks tool (RFP Nos. 85, 86 and 87):** With respect to Request 85, we disagree with your characterization of our prior meet-and-confers. We have been clear that your compromise offer for Request Nos. 86 and 87 will not satisfy this Request and, we did not "agree to compromises, and then, after receiving the results of those compromises, simply come back and demand more," as you claim.

With respect to Requests 86 and 87, your February 2 production contains three documents that are seemingly responsive to these Requests, GOOG-SCHNDR-00041457, GOOG-SCHNDR-00041470, and GOOG-SCHNDR-00041477. Please confirm by February 18, 2022 whether Defendants intend to produce further documents and, if so, that the production of documents and/or the privilege log will be substantially complete no later than March 15, 2022.

**Recommended Videos and YouTube Search (RFP Nos. 102 and 103):** Your 1/14 Letter reiterates your prior offer to search for and produce documents "sufficient to show whether actual or alleged infringement of a given video is taken into account by YouTube's Recommended Videos and YouTube Search functions, dating from three years prior to the filing of the original complaint" and refuses to provide additional information on the documents contemplated in your proposal. We asked for this additional information to better assess your offer in light of your prior compromise proposals that have returned a null set and consistent with your obligation to negotiate with us in good faith to resolve discovery disputes where possible. *See, e.g.,* Mar. 3, 2021 Letter from L. Gallo White to J. Wright (compromise proposal for Request No. 23(a)); Jan. 14, 2022 Letter from E. Richlin to P. Korologos (compromise proposal for Request No. 88). Given Defendants' repeated assertions that they do not identify any infringements, including when infringements are brought to Defendants' attention via the Takedown Notice process, we have concerns that this is another example of a compromise proposal that will return a null set. *See* Jan. 14, 2022 Letter from E. Richlin to P. Korologos ("[W]e have explained numerous times that Defendants are not in a position to make determinations about what is or is not infringing content."); Aug. 17, 2021 Letter from D. Blaisdell to C. Hartman (memorializing meet-and-confers). In addition to your unwillingness to elaborate on a proposal that seems likely to return a null set, your proposal ignores multiple elements of Request Nos. 102 and 103 (including subparts (b)-(d) for each Request), leaving no doubt that the parties are at impasse on these Requests.

Sincerely,

*/s/ Demetri Blaisdell*
Demetri Blaisdell



**APPENDIX A**

Plaintiff's Search Term Proposal for Uniglobe Entertainment, LLC

a) Uniglobe
  a. Uniglobe /10 Entertainment
  b. Nayomi /5 Cooper
  c. Namrata /5 Gujral
  d. Uniglobe AND ("Content ID" OR ContentID)
  e. Uniglobe AND licens!

b) Works in Suit
  a. Phrase Searches:
    i. "5 Weddings"
    ii. "Five Weddings"
    iii. Americaniz! AND (Shelley OR Shelly)
    iv. "1 a minute"
    v. "One a minute"

c) Agents or purported agents
  a. Visionfilms!
  b. Vision /3 films
  c. Lise /2 Romanoff
  d. Gravitasventures!
  e. Gravitas /3 ventures
  f. Brendan /2 Gallagher

Plaintiff's Search Term Proposal for AST Publishing, Ltd.

a) AST Publishing:
  a. AST /10 Publishing
  b. AST AND ("Content ID" OR ContentID)
  c. AST AND licens!
  d. Maxim /5 Lozovsky
  e. Alina /5 (Olegovna OR Dvadnenko)
  f. Maria /5 (Sergeevna OR Kurunyan)
  g. Elena /5 (Danilovna OR Shubina)
  h. Evgenia /5 (Valentinovna OR Larina)
  i. Sergey /5 (Aleksandrovich OR Rubis)
  j. Elena /5 (Alexandrovna OR Zanyakina)
  k. "LitRes" [search with capital letters]
  l. Litres.ru

b) Works in Suit
  a. Phrase searches:
    i. Selfmama



ii. "Nutty Buddha"
iii. Life /5 ("Wonderful People" AND Animals)
iv. Pelagia AND Rooster
v. Zuleikha AND Opens AND Eyes
vi. History /5 "Russian State"

b. AST AND:

i. "My Children"
ii. Children /2 Book
iii. "Spy Novel"

c) Agents or purported agents

a. Maxim /5 Ryabyko