# EXHIBIT E

to the Declaration of Qifan Huang

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD individually and on behalf of all others similarly situated; et al.,

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants.

------------------------

CASE NO. 3:20-cv-04423-JD

VIDEOTAPE DEPOSITION OF:
HAL J. SINGER, Ph.D.
NEW YORK, NEW YORK
FRIDAY, JANUARY 13, 2023

REPORTED BY:
SILVIA P. WAGE, CCR, CRR, RPR
JOB NO. 5647971

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

January 13, 2023
9:11 a.m.

Videotape deposition of HAL J. SINGER, Ph.D., held at the offices of WILSON SONSINI GOODRICH & ROSATI, 1301 Avenue of the Americas, 40th Floor, New York, New York, pursuant to agreement before SILVIA P. WAGE, a Certified Shorthand Reporter, Certified Realtime Reporter, Registered Professional Reporter, and Notary Public for the States of New Jersey, New York, and Pennsylvania.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

A P P E A R A N C E S:

BOIES SCHILLER FLEXNER LLP
Attorneys for Plaintiffs
55 Hudson Yards, 20th Floor
New York, New York 10001
(212) 446-2359
Jwright@bsfllp.com
Pkorologos@bsfllp.com
BY: JOANNA WRIGHT, ESQ.
BY: PHILIP C. KOROLOGOS, ESQ. (VIA TELECONFERENCE)

KOREIN TILLERY, LLC
Attorneys for Plaintiffs
505 North 7th Street, Suite 3600
St. Louis, Missouri 63101
(314) 241-4844
Cokeefe@koreintillery.com
Gzelcs@koreintillery.com
Aellis@koreintillery.com
BY: CAROL O'KEEFE, ESQ.
BY: GEORGE ZELCS, ESQ. (VIA TELECONFERENCE)
BY: ANDREW ELLIS, ESQ. (VIA TELECONFERENCE)

WILSON SONSINI GOODRICH & ROSATI
Attorneys for Defendants
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
(212) 999-5800
Acandido@wsgr.com
Qhuang@wsgr.com
BY: AMY CANDIDO, ESQ.
BY: QIFAN HUANG, ESQ.

A L S O P R E S E N T:

STEVEN PETERSON, Ph.D.
PLAINTIFF'S EXPERT
PAUL BAKER
VIDEOGRAPHER

watch time on the platform. 11:56:44

Q. I think it's probably time for another break. 11:56:55 11:56:57

A. We're getting close to the lunch hour so... 11:56:58 11:57:00

THE VIDEOGRAPHER: One moment please. Stand by. 11:57:00 11:57:01

The time is 11:57 a.m. We are off the record. 11:57:02 11:57:05

(Recess taken 11:57 to 12:16 a.m.) 12:07:49

THE VIDEOGRAPHER: The time is 12:16 p.m. We are back on the record. You may proceed. 12:16:03 12:16:06 12:16:08

Q. Dr. Singer, do you agree in order to be reliable, an economic model must be based on reasonable assumption? 12:16:10 12:16:13 12:16:17

A. I think that's fair. 12:16:18

Q. That the assumptions must be substantiated by facts and/or data? 12:16:20 12:16:23

A. I would add that or I would amend that they should be substantiated by facts, record evidence and economic theory and then, ultimately, tested with data. 12:16:29 12:16:31 12:16:35 12:16:38

Q. Do you agree that an economic model 12:16:44

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

relied on assumptions that deviated significantly 12:16:46
from economic theory, record facts and evidence, 12:16:49
then the model would be unreliable? 12:16:59

A. I think that's fair. I think you 12:17:08
want to conform to economic theory and facts of 12:17:09
the case in setting up the model, as I've done. 12:17:13

Q. One of the assumptions that you make 12:17:18
in your report is that the percentage of 12:17:21
infringing content videos on YouTube is 12:17:24
responsible for the same percentage of time that 12:17:27
viewers spend on YouTube; is that correct? 12:17:30

A. It is an assumption that I'm forced 12:17:34
to make given YouTube's refusal to turn over the 12:17:36
data that we asked for. So I am not going to 12:17:40
going to die on the hill that that assumption is 12:17:46
necessarily true. I think that it's, roughly, 12:17:49
correlated. But what I'm hoping to get with 12:17:54
better data is a way to measure the infringing 12:17:56
share after it has been weighted by watch time or 12:18:02
buy views. 12:18:05

You should interpret, just to be 12:18:10
clear, the 1.3 that's in that class report as a 12:18:12
placeholder and only as a placeholder given the 12:18:14
limited data that I have access to. 12:18:17

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q. Okay. The 1.32 percent is a percentage of infringing content that you've calculated, correct? 12:18:22 12:18:25 12:18:30

A. Given the limited data I had available, that was the best estimate that I could come up with, yes. 12:18:31 12:18:33 12:18:35

Q. Alright. What I'd like to talk about now is the assumption that you make in your report that the percentage of infringing content, whatever that is, is responsible for the same percentage of viewer time that viewers spend on YouTube. 12:18:36 12:18:39 12:18:43 12:18:48 12:18:52 12:18:56

Do you understand that? 12:18:57

A. I understand and I just want to us both before we go into this knowing that I can allow for the possibility that once you weight these videos by either watch time or by views, you could get a very different infringing share. So I just want it to be crystal clear that that 1.32 estimate was the best that I could do given the data limitations and that when we get to the merits, I would hope to allow for the possibility that these ratios could diverge. But I don't want you to think for a second that I'm pedaling 12:18:59 12:19:01 12:19:05 12:19:08 12:19:11 12:19:15 12:19:20 12:19:25 12:19:30 12:19:34 12:19:37

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

But I just want the record to be, you know, absolutely clear that there is no reason that I should have to make that assumption given that YouTube has this data. 12:29:29 12:29:31 12:29:34 12:29:37

Q. Did you ask for watch time data before preparing your report? 12:30:01 12:30:07

A. I believe so. I'd have to go back and confirm that. But I think that we've asked for a whole litany of things that we didn't receive. And I feel like watch time and views was part of the list. 12:30:10 12:30:12 12:30:14 12:30:18 12:30:21

Q. Do you know whether your attorneys sought watch time data? 12:30:22 12:30:26

A. Sitting here I don't have perfect recall as to everything that was asked for. So I don't know with certainty, but I think it was. 12:30:32 12:30:34 12:30:39

Q. Do you know whether your attorneys moved to seek that production of that data? 12:30:47 12:30:48

A. Not with certainty. But I believe that they did and it's something that we can certainly find out. 12:30:53 12:30:55 12:30:59

Q. Do you know if the judge granted or denied those requests? 12:31:01 12:31:02

A. I'm going to assume that everything 12:31:04

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

that I've received has made it through the judge's orders. So, if I don't see something, I feel like it's a safe assumption that the judge didn't compel YouTube to turn it over at this juncture of the case. 12:31:07 12:31:11 12:31:14 12:31:17 12:31:21

Q. Your disgorgement damages calculation are all premised on this assumption that infringing content is responsible for the same percentage of viewing time, right? 12:31:28 12:31:34 12:31:36 12:31:39

A. No. I want you to interpret the model in the class cert report as a proffer of a methodology and the methodology is going to turn on certain key inputs; primarily, the infringing share. And my intention is to measure the infringing share in terms of watch time and views in both the numerator and the denominator. So I don't want you to think that I'm offering you an estimate of damages today. 12:31:43 12:31:47 12:31:52 12:31:56 12:31:59 12:32:06 12:32:10 12:32:12 12:32:14

What I'm offering you is a methodology for getting to damages that turns on certain common grammars. When I say "common," I mean, common to the class, whatever the infringing share is. It's not going to vary by class member. 12:32:15 12:32:18 12:32:22 12:32:26 12:32:28 12:32:31

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

So, when you say you're assuming this in order to get damages, I just think it's an unfair characterization of what I'm offering -- what opinion I'm offering at this point. 12:32:31 12:32:36 12:32:38 12:32:41

Q. Can you look at Page 108 of your -- I'm sorry, Paragraph 108 of your report please. 12:32:47 12:32:50

A. Yes, I saw it. 12:33:14

Q. Okay. So the first sentence is utilizing your calculations or pulling in the calculations of infringing content where there's a range and you would have corrected this of 1.32 to 6 percent of the content on YouTube. And then you go on to say, "I further assume that such content is responsible for the same percentage of time that viewers spend on YouTube." 12:33:15 12:33:19 12:33:24 12:33:29 12:33:32 12:33:35 12:33:38 12:33:40

Do you see that? 12:33:43

A. I see it. 12:33:44

Q. And then from there you go on to calculate YouTube's predicted revenues assuming that the infringing content would not have been uploaded to YouTube resulting in the disgorgement damages calculations, right? 12:33:45 12:33:47 12:33:51 12:33:54 12:33:58

A. I see it, yes. 12:34:00

Q. So that assumption is built into the 12:34:02

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

disgorgement damages methodology that you're offering, correct? 12:34:07 12:34:09

A. For the purposes of this class cert report, in which I didn't have any better data to refine the estimate of the infringement share, the infringing share, I am forced to make that assumption and only after I make that assumption can I use the model to come up with a damages estimate. 12:34:11 12:34:14 12:34:16 12:34:18 12:34:22 12:34:24 12:34:27

But I think it would be a mistake for you to interpret this to be my ultimate damages estimate of the merits. It's not. 12:34:27 12:34:30 12:34:34

What I'm offering up is a methodology, which is -- if we go out and measure as best we can the infringing share -- and I hope Dr. Peterson and I can even agree on what it is. It's not that controversial -- that we can then go and reduce the actual watch time in the real world by that amount to figure out the ill-gotten gains and revenues. 12:34:35 12:34:36 12:34:40 12:34:43 12:34:45 12:34:49 12:34:53 12:34:56

Q. Absent different data, however, the methodology -- strike that. 12:34:59 12:35:02

The methodology you've offered up in your report involves this assumption, assuming 12:35:04 12:35:07

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

that content is responsible for the same percentage of time that viewers spend on YouTube, right? 12:35:12 12:35:14 12:35:17

A. I think that in the class cert report, as I said, given the data limitations, I was forced to make that assumption. It was only way I could get to a damages estimate. 12:35:17 12:35:19 12:35:22 12:35:25

But the purposes of this report is not to offer you a damages estimate. I just want to make that crystal clear, right. The purposes of the report is to show you the methodology, which is the common to the class, as to how I would go about estimating damages at the merits phase. 12:35:27 12:35:28 12:35:31 12:35:33 12:35:35 12:35:38 12:35:41

Q. And that methodology involves that assumption? 12:35:41 12:35:43

A. It really doesn't. The methodology will not involve that assumption of the merits phase. That -- in the class cert report I was forced to make that assumption, because that's the only estimate we have in the record of what the infringing share is. 12:35:44 12:35:46 12:35:49 12:35:53 12:35:55 12:35:57

Q. But you did not disclose in this report that you were intending to use a different 12:35:59 12:36:02

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

methodology at the merits phase, right? 12:36:05

A. I don't think that's true. I think that I made it clear that I was forced to make a whole bunch of assumptions in this report by virtue of the data limitations. In fact, I lead off with the section titled, "Limitations of the data," and here's what it's going to force me to do as a result. 12:36:09 12:36:11 12:36:13 12:36:16 12:36:19 12:36:22 12:36:23

Q. I understand that. 12:36:24

But the new methodology that you're describing that you would potentially use at the merits phase is not described in this report, would you agree with that? 12:36:25 12:36:27 12:36:34 12:36:36

A. I don't think I would agree with it. But I just want to be clear that -- let me go back and see if I gave a preview of what I would like to do in terms of the infringing share. 12:36:37 12:36:39 12:36:42 12:36:45

But I think this is very fair, that economists generally doesn't like to make assumptions. Like, the fewer assumptions you have to make, the better. And the only reason I have to make this assumption here is because of the lack of data given YouTube's unwillingness to turn over the data, right. 12:36:48 12:36:51 12:36:53 12:36:55 12:36:57 12:36:59 12:37:02

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

parties' perspective, from YouTube's perspective and from the content creators -- sorry, from the copyright holder's perspective. 13:14:08 13:14:10 13:14:15

Beyond that, I don't know what more you would want from me as an economist to kind of verify that it was, in fact, infringing. I don't want to adverse step on this question of violation. I'm not going to offer any opinions about violation, in particular. 13:14:16 13:14:19 13:14:22 13:14:26 13:14:28 13:14:30

But I do think the takedowns are a reasonable approximation of infringing activity for all the reasons I've spelled out in my report. 13:14:31 13:14:34 13:14:36 13:14:38

Q. So you're aware that not all the videos in the takedown sample were, in fact, taken down? 13:14:38 13:14:43 13:14:48

A. No, that's not my understanding. I think that they -- these are successful takedowns is what -- is my understanding as what I'm looking at. I recognize that some of them could have been reposted, but I don't think they make it into the data if YouTube in the first instance disapproved of the takedown. I think Google has approved of these takedowns. 13:14:52 13:14:54 13:14:59 13:15:01 13:15:03 13:15:05 13:15:10 13:15:12

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q. Fair enough. That was -- I phrased that incorrectly. 13:15:14 13:15:18

So you're aware that the videos from the takedown sample, some of them were put back up? 13:15:19 13:15:26 13:15:29

A. My -- the record evidence suggests that 2 percent of these videos on average that are taken down are successfully challenged and put back up. 13:15:29 13:15:31 13:15:36 13:15:38

But I also understand that Dr. Cowan when we get to the merits phase will be able to employ a certain matching algorithm. I think it might involve APIs. But this, again, is in his domain. It's not mine. In which case, the correction to the infringing share could be made before it is inputted into my model. 13:15:39 13:15:41 13:15:46 13:15:50 13:15:53 13:15:55 13:15:58

Q. Does the fact that thousands of the videos identified in the takedown notice sample are still available on YouTube change your opinion? 13:16:02 13:16:03 13:16:06 13:16:09

A. No, because thousands would be a tiny share of the total that come down. I think that on average -- I'm going by memory -- 2022 we're looking at 27,000 per day. And then if you 13:16:09 13:16:11 13:16:14 13:16:20

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

stretch over a longer period, the average is about 19,000 per day over the sample that I looked at. 13:16:23 13:16:26 13:16:29

And so, then if you were to tell me a couple of thousands got put up, I mean, yeah, that makes sense. Two percent of this gigantic number got put back up. That's all consistent with my understanding. 13:16:30 13:16:32 13:16:34 13:16:38 13:16:41

Q. Would it be relevant to your analysis to know what percentage of revenue this still available videos represent out of the total revenue attributable to the videos in the takedown sample? 13:16:43 13:16:45 13:16:48 13:16:53 13:16:55

A. I do want to get at an accurate sample of what I call approximate disgorgement or direct revenue from the infringing videos. So I don't think we're going to get into a fight over this. I think that we should be able to estimate, you know, down to the less decimal what the direct revenues were of the infringing videos. 13:17:00 13:17:03 13:17:07 13:17:10 13:17:13 13:17:15 13:17:17 13:17:21

And if it changes because certain ones got taken down or put back up, I think that Dr. Cowan is going to account for all of this. 13:17:22 13:17:24 13:17:28

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q. So you're aware that some of the reasons why a takedown video can be back on the service is because the copyright holder retracted their takedown? 13:17:30 13:17:32 13:17:37 13:17:41

MS. O'KEEFE: Objection, outside the scope of his report. 13:17:41 13:17:43

A. I think there can be retractions, yes. 13:17:47 13:17:49

Q. If a user submitted a retraction of their takedown notice, would you still consider the video they identified in their retracted notice to be an infringement? 13:17:52 13:17:56 13:17:58 13:18:02

MS. O'KEEFE: Objection, calls for a legal conclusion. 13:18:04 13:18:05

A. I think I don't have an opinion on that one, because the infringing share is going to be crafted, ultimately, by Dr. Cowan. He's going to be looking at things like retractions and successful challenges and all of that is my understanding is going to be accounted before he gives me the input. 13:18:08 13:18:11 13:18:15 13:18:19 13:18:21 13:18:28 13:18:29

Q. So, in this instance, the sample that you used did, Dr. Cowan provide it to you? 13:18:31 13:18:34

A. No, I did it because I wanted to show 13:18:36

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

the judge how this methodology could be used in a common way in the merits phase. 13:18:38 13:18:42

Q. You just took the sample as it was? 13:18:45

A. Well, I took the sample, but with my understanding of what the sample represented, which was these are successful takedown notice. They represent a reasonable approximation of the ultimate set that we'll be looking at. But I recognize that there are further refinements that we can make to the data to account for things like successful challenges. 13:18:48 13:18:51 13:18:53 13:18:55 13:18:58 13:19:01 13:19:04 13:19:06

Q. So you don't have an opinion with respect to whether a takedown notice belongs in the sample, ultimately, in terms of retractions or counter notices? 13:19:23 13:19:25 13:19:29 13:19:35

MS. O'KEEFE: Objection, calls for a legal conclusion, outside the scope of his report. 13:19:40 13:19:42 13:19:44

A. Yeah, I see that falling in the ambit of Dr. Cowan. And Dr. Cowan most likely is going to follow the guidance of Counsel as to what should be included or not be included when it comes to these specific assumptions. 13:19:45 13:19:47 13:19:50 13:19:53 13:19:58

Q. Right now your regression assumes 13:20:16

looking at revenue per impression. But you know the three regressions and I think that I've accounted for various other factors that would affect revenues -- this is their aggregate revenues for the companywide level by month. And I feel like at 92 percent or 90 something percent r-squared I've accounted for all or almost all the factors that explain variations in ad revenues. 15:28:25 15:28:30 15:28:34 15:28:37 15:28:42 15:28:46 15:28:50 15:28:53 15:28:57

You know, when I go to predict Google's advertising revenues, YouTube's advertising revenue out of sample, I have something like 96 percent accuracy when I go to predict the 2021 and 2022 years. So I feel very confident that whatever is causing fluctuations in ad revenues from month to month, my model's accounting for it. 15:28:57 15:28:59 15:29:01 15:29:03 15:29:06 15:29:11 15:29:14 15:29:18

Q. Did you consider the geographic location of the -- strike that. 15:29:19 15:29:23

If there's a geographic disparity between the revenue generated by the infringing content and the rest of YouTube's revenue, the failure to take into account geographic differences would impact your analysis, correct? 15:29:38 15:30:05 15:30:15 15:30:20 15:30:22

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

MS. O'KEEFE: Objection, form. 15:30:25

A. It certainly wouldn't affect any of the regressions, right. The regressions are just telling us -- the final regression is telling us when the time spent on the site comes down controlling for all the things, how much is advertising fall. 15:30:29 15:30:31 15:30:33 15:30:35 15:30:39 15:30:42

There's no way in the regression to account or no need to even to account for these geographic differences given how I've set up the model. 15:30:43 15:30:44 15:30:47 15:30:50

And then the other input to the model, of course, is this -- what we've been talking about infringing share. And the infringing share I think that once I get the data that I'm seeking, which is weighting it on a watch time or viewing time -- again, I don't think geographic component goes into that calculus either. So I just don't think that knowing the geographic -- and, in any event, no one has established to me that the infringing content at issue in this case is occurring in certain geographic areas or doing it in a way that's any different than the distribution of all 15:30:53 15:30:55 15:30:59 15:31:00 15:31:03 15:31:06 15:31:11 15:31:14 15:31:17 15:31:20 15:31:22 15:31:26 15:31:29

content on the platform. 15:31:32

Q. Have you asked whether there is any geographic differences with respect to the infringing content at issue in this case? 15:31:38 15:31:47 15:31:47

A. I don't really know what you mean by "geographic." 15:31:47 15:31:48

Are you talking about the geography of the person who's posting or the geography of the copyright holder? 15:31:49 15:31:51 15:31:54

Q. I think there is a lot of potential geography questions to ask. 15:31:57 15:32:00

Have you asked any of them? 15:32:02

A. Well, I don't ask questions that don't have any bearing on my analysis. So I don't think that I've asked these. I just don't find them as interesting as Dr. Peterson does. 15:32:03 15:32:05 15:32:07 15:32:10

Q. Would you consider a view of a YouTube video that was uploaded, processed and viewed in India a part of this case? 15:32:54 15:32:57 15:33:01

A. Well, it could be a part of my analysis. I don't know what you mean by, part of the case, when I'm thinking what informed my analysis. When I'm thinking of the aggregate statistics that I'm looking at from Semrush and 15:33:11 15:33:15 15:33:17 15:33:19 15:33:22

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

from YouTube, I think, that activity outside of the United States could be occurring -- could be captured by this data when we look at total revenues. I don't think it's just revenues captured in the United States. And then -- so maybe I could just end there. 15:33:24 15:33:27 15:33:30 15:33:32 15:33:35 15:33:40

Does that answer it? 15:33:42

Q. In terms of whether a YouTube video that was uploaded, processed and viewed in India is or should be a part of one of the classes in this case, is that a determination that you would say is up to Dr. Cowan? 15:34:21 15:34:25 15:34:29 15:34:33 15:34:37

MS. O'KEEFE: Objection, form and outside the scope. 15:34:38 15:34:40

A. It's certainly not in my ambit. I'm not even sure it's in Dr. Cowan's ambit. I know there are -- talking about where it's -- the uploader and the viewer was both in India for this hypothetical, I think, is what you want me to assume? 15:34:41 15:34:46 15:34:49 15:34:55 15:34:58 15:35:00

Q. Yes. 15:35:01

A. I still think that it could be -- it could contain content that violates one of the class members' copyrights regardless of where 15:35:13 15:35:16 15:35:21

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

revenues related to copyrighted works eligible for statutory damages? 17:08:18 17:08:23

A. I think that we'd start with the same activity. I think the same activity -- like, for example, if I understand it, the domestic class members, domestic copyright infringement class members can choose between statutory damages or actual damages. And so it's all based on the same allegedly illegal or infringing activity. I don't think that there's different activities for each. I also understand that statutory is informed, at least, in part by the actual damages. 17:08:25 17:08:29 17:08:33 17:08:38 17:08:42 17:08:46 17:08:51 17:08:55 17:08:58 17:09:01 17:09:06

And the last thing I would say is that to me if I were the fact finder or juror and I was interested in picking that number in the statutory, you know, that it gives a range of numbers, was it willful, was it not willful when you fall on the spectrum. 17:09:06 17:09:08 17:09:13 17:09:15 17:09:18 17:09:22

I think I'd want to know what do Singer's damages look like when expressed on a per work basis. And so I think that I would -- it would be -- it would be very easy for me to provide that information for the fact finder and 17:09:23 17:09:26 17:09:29 17:09:32 17:09:35

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

then the fact finder could make a decision as to whether they pick the statutory number. 17:09:38 17:09:42

Q. Do you purport to disclose an amount of revenue associated with YouTube's copyrighted -- sorry, with the group of copyrighted works associated eligible for statutory damages in this report? 17:09:48 17:09:57 17:10:09 17:10:13 17:10:15

MS. O'KEEFE: Objection to form. 17:10:15

A. Not in this report, but it would be trivial. Once we have the pot of money, once we have aggregate damages, we also have a count of number of works that are implicated. And I think it would be trivial to divide one by the other and that would give the average damage per work. 17:10:16 17:10:18 17:10:21 17:10:24 17:10:26 17:10:29

And I think if I were the fact finder, I would, at least, want to know that when picking the statutory number for, you know, damage per work infringed. 17:10:32 17:10:33 17:10:35 17:10:40

Q. Is it your understanding that all of the class members in, for example, the copyrighted -- sorry, the registered -- oh, goodness, I think the class name is wrong. Give me a second. 17:10:42 17:10:44 17:10:48 17:10:55 17:10:57

MS. O'KEEFE: We've all been there. 17:11:03

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Q. Is it your understanding that all of the members in the registered works infringement class would be entitled to statutory damages? 17:11:07 17:11:08 17:11:12

MS. O'KEEFE: Objection, calls for a legal conclusion. 17:11:14 17:11:16

A. It is legal, but my understanding is that the domestic infringement class can elect between statutory and actual damages. 17:11:17 17:11:19 17:11:23

Q. Have you attempted to assess the value of any of the copyrighted works at issue? 17:11:33 17:11:35

A. Sure. You can say that my entire damages model is an attempt to assess the ill-gotten revenues that YouTube enjoyed as a result of the challenged conduct, the infringing activity, permitting the infringing activity. And so I would say, yes. And I'm doing a valuation exercise and we can easily denominate it in terms of damages of per work infringed. 17:11:39 17:11:41 17:11:43 17:11:46 17:11:49 17:11:52 17:11:57 17:11:59

Q. It's your view that the revenue associated with the copyrighted works -- strike that. 17:12:12 17:12:14 17:12:18

Is it your opinion that YouTube's advertising revenue associated with ads either served directly on the copyrighted works at issue 17:12:18 17:12:23 17:12:29

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

or as a result of those works speak to the value of the copyrighted works directly? 17:12:36 17:12:43

MS. O'KEEFE: Objection, form and calls for a legal conclusion. 17:12:46 17:12:48

A. No, what I'm trying to estimate and what I've been asked to estimate is the ill-gotten revenue that YouTube enjoyed. That's what I was asked to do, not necessarily to the value of the works themselves. It's the value received or the ill-gotten gains by the disgorgement, you know, what YouTube inappropriately was able to gain as a result of the challenged conduct. 17:12:51 17:12:54 17:12:56 17:13:00 17:13:04 17:13:06 17:13:09 17:13:11 17:13:15

Q. Understood. So that's why I just want to ask that other question again. 17:13:16 17:13:18

A. Okay. 17:13:19

Q. Have you attempted to assess the value of the copyright the works at issue? 17:13:20 17:13:22

A. Oh, so, yeah, I apologize. I think I heard the question the first time I was thinking about the value to YouTube. 17:13:24 17:13:27 17:13:29

But maybe now what you're asking me the value to the copyright holders? 17:13:31 17:13:33

Q. Correct. 17:13:35

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

A. Yeah. No, I haven't been asked to do that. 17:13:35 17:13:37

Q. The disgorgement opinions in your report apply to the two copyright infringement classes; is that right? 17:13:55 17:13:57 17:14:01

A. My understanding is to the domestic registered and the foreign nonregistered classes. 17:14:03 17:14:05

Q. Those are the copyright infringement classes, right? 17:14:09 17:14:11

A. Right, as opposed to the copyright management or CMI classes. 17:14:12 17:14:15

Q. Right. So that's what I was going to ask about next. Apart from those two copyright infringement classes, there are two CMI classes; is that what you understand? 17:14:16 17:14:18 17:14:22 17:14:25

A. Correct. 17:14:26

Q. The two CMI classes are seeking only statutory damages; is that your understanding? 17:14:26 17:14:29

A. Maybe. I really don't have a strong understanding with respect to those. My ambit has always been the damages related to the, you know, domestic registered and foreign unregistered classes. 17:14:34 17:14:36 17:14:40 17:14:44 17:14:47

Q. You don't offer an opinion regarding 17:14:49

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

the amount of damages for the CMI classes; is that right? 17:14:51 17:14:54

A. I think that's fair. I mean, I could be asked some at some point to weigh in on that, but I haven't been asked to date. 17:14:55 17:14:57 17:15:01

Q. Because at one point you mentioned the amount of profits that Defendants earned as a result of the challenged conduct, who may be relevant to the question of statutory damages. 17:15:03 17:15:05 17:15:08 17:15:11

But you don't offer an opinion regarding the amount of profits that Defendants earned as a result of allegedly improper CMI removal, right? 17:15:14 17:15:16 17:15:18 17:15:22

A. I think it's fair that my damage model that is set up here all -- is driven by takedowns. So I'm not speaking to the damages of the CMI class. 17:15:24 17:15:27 17:15:31 17:15:34

Q. In your report, do you calculate any damages specific to the named Plaintiffs? 17:16:00 17:16:04

A. I do not. I've given a methodology to get to the aggregate damages. But if the named Plaintiffs step forward, I could apply one of my proposed allocation methods to assign to her -- her pro rata share of the total pot of 17:16:09 17:16:11 17:16:14 17:16:19 17:16:24

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

damages. 17:16:27

Q. And you've not opined in your report currently on whether any of the Plaintiffs in this case have suffered any lost sales of their works as a result of the alleged infringement, have you? 17:16:40 17:16:43 17:16:47 17:16:51 17:16:54

A. I have not opined on that. 17:16:55

Q. You have not opined on whether any of the Plaintiffs in this case have suffered any other lost profits as a result of YouTube's alleged infringement, correct? 17:16:57 17:17:00 17:17:03 17:17:06

A. I think it's fair that I'm not looking at it from the perspective of the Plaintiffs' losses. I'm looking at it from the perspective of the ill-gotten gains by YouTube. 17:17:08 17:17:10 17:17:11 17:17:14

Q. And you have not offered any opinions regarding YouTube's subscription revenues, correct? 17:17:18 17:17:23 17:17:26

A. Correct. 17:17:29

Q. And you have a background section addressing sort of an overview of YouTube, but you're not an expert on how YouTube works or operates, right? 17:17:34 17:17:36 17:17:40 17:17:43

A. Correct. I wouldn't hold myself out 17:17:43

Witness: Hal Singer, January 13, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

**Errata Sheet**

| **Page: Line** | **Change** | **Reason** |
|---|---|---|
| 6:25 | Replace <my> with <me> | Transcription error |
| 8:7 | Replace <WeWorks> with <WeWork> | Transcription error |
| 10:13 | Replace <export> with <expert> | Transcription error |
| 10:18 | Replace <Exhibit 2 the Expert Report of Hal J. Singer, Ph.D., for Plaintiffs' errata dated January 10, 2023> with <Exhibit 2, the errata dated January 10. 2023 to the Expert Report of Hal J. Singer, Ph.D.> | To clarify the record |
| 14:11 | Replace <this> with <that's—that's> | Transcription error |
| 16:3 | Replace <exist> with <exists> | Transcription error |
| 16:4 | Relace <And I report> with <And my report> | Transcription error |
| 16:9 | Replace <page> with <pages> | Transcription error |
| 16:11 | Replace <some human number> with <some smaller number> | Transcription error |
| 18:25 | Replace <log rhythm> with <logarithm> | Transcription error |
| 19:9 | Replace <that> with <to> | Transcription error |
| 19:14 | Replace <log of YouTube> with <Log YouTube> | To clarify the record |
| 19:14-15 | Replace <log of Facebook> with <Log Facebook> | To clarify the record |
| 20:5 | Replace <was> with <were> | Transcription error |
| 21:4 | Replace <a control> with <"a control"> | To clarify the record |
| 22:10 | Replace <interests> with <interest> | Transcription error |
| 23:6 | Replace <picking> with <pick> | Transcription error |
| 23:25 | Replace <that you> with <that to you> | Transcription error |
| 25:10 | Replace <proceed> with <precede> | Transcription error |
| 27:4 | Replace <in> with <on> | Transcription error |
| 29:12 | Replace <members> with <members'> | Transcription error |

| 30:3 | Replace <process before> with <process - before> | Transcription error |
|---|---|---|
| 36:17 | Replace <sort of> with <on> | Transcription error |
| 39:9-10 | Replace <depositions sort of economic articles> with <depositions, economic articles> | Transcription error |
| 43:12 | Replace <Woo> with <Wu> | Transcription error |
| 43:25 | Delete <that> | Transcription error |
| 44:10 | Replace <Ko> with <Koh> | Transcription error |
| 46:4 | Replace <full-line> with <full-time> | Transcription error |
| 48:23 | Delete <sort of> | Transcription error |
| 49:11 | Replace <we> with <you> | Transcription error |
| 51:6 | Replace <patents> with <patent> | Transcription error |
| 53:6 | Replace <a play store> with <the Play Store> | To clarify the record |
| 53:10 | Replace <within> with <Within> | To clarify the record |
| 54:10 | Replace <the ones> with <those> | Transcription error |
| 55:18 | Replace <which if> with <which, if> | Transcription error |
| 55:19-20 | Replace <impacts to class members> with <impacts to Class Members> | To clarify the record |
| 55:21 | Replace <Plaintiffs' count> with <Plaintiffs' counsel> | Transcription error |
| 56:10 | Replace <against> with <accord> | Transcription error |
| 56:19 | Replace <challenged conduct> with <Challenged Conduct> | To clarify the record |
| 56:20 | Replace "categories. One, advertising> with <categories. 1 advertising> | To clarify the record |
| 56:24 | Replace <in the> with <from the> | Transcription error |
| 57:2 | Replace <infringing content contributing> with <Infringing Content contributed> | Transcription error |
| 59:21 | Replace <Would> with <When> | Transcription error |
| 60:6 | Replace "summing up the ads> with <summing up the revenue from the ads> | To clarify the record |

Witness: Hal Singer, January 13, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| | | |
|---|---|---|
| 61:2 | Replace <affects> with <effects> | Transcription error |
| 61:2-3 | Replace <infringing content> with <Infringing Content> | To clarify the record |
| 63:12 | Delete <the> | Transcription error |
| 63:18 | Replace <challenge> with <challenged> | Transcription error |
| 63:22 | Replace <disappear> with <disappears> | Transcription error |
| 63:25 | Replace <expert> with <experts> | Transcription error |
| 64:13-14 | Replace <you people it call it counterfactual> with <you people call it counterfactual> | Transcription error |
| 65:24 | Replace <correct> with <keep> | To clarify the record |
| 67:7 | Replace <It's simple> with <It's a simple> | Transcription error |
| 67:17 | Replace <it's> with <it'd> | Transcription error |
| 69:7 | Replace <infringing> with <infringement> | Transcription error |
| 73:4 | Replace <providers were> with <providers that were> | Transcription error |
| 74:6-7 | Replace <instance case but> with <instant case by> | Transcription error |
| 76:2 | Replace <common> with <consumer> | Transcription error |
| 76:22 | Replace <just no> with <just a no> | Transcription error |
| 76:23 | Replace <come> with <comes> | Transcription error |
| 78:20 | Replace <multisided> with <multi-sided> | Transcription error |
| 79:7 | Replace <exist> with <exists> | Transcription error |
| 79:8 | Replace <non-existent> with <nonexistent> | Transcription error |
| 79:12 | Replace <direction. Advertisers> with <direction: advertisers> | To clarify the record |
| 80:6 | Replace <the favor> with <disfavor> | Transcription error |
| 82:9 | Replace <content ID> with <Content ID> | To clarify the record |
| 82:12 | Replace <there are so> with <there is so> | Transcription error |
| 83:5 | Replace <is> with <are> | Transcription error |
| 83:23-24 | Replace <across on all> with <across all> | Transcription error |

Witness: Hal Singer, January 13, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| 85:5 | Replace <Multisided> with <Multi-sided> | Transcription error |
|---|---|---|
| 85:13 | Replace <then it attracts> with <then attracts> | Transcription error |
| 87:3 | Replace <effects> with <affects> | Transcription error |
| 92:12 | Replace <are subset> with <is a subset> | Transcription error |
| 95:17 | Replace <product> with <products> | Transcription error> |
| 97:4 | Replace <involved> with <involves> | Transcription error |
| 97:7 | Replace <used> with <use> | Transcription error |
| 97:10 | Replace <methodology that I> with <methodology I> | Transcription error |
| 101:9 | Replace <revenue's> with <revenues> | Transcription error |
| 115:25 | Replace <pedaling> with <peddling> | Transcription error |
| 124:22 | Replace <grammars> with <factors> | Transcription error |
| 125:12 | Replace <corrected> with <expected> | Transcription error |
| 134:15 | Replace <Alan> with <Allen> | Transcription error |
| 134:20 | Replace <construction> with <obstruction> | Transcription error |
| 134:21 | Replace <miss-mash> with <mishmash> | Transcription error |
| 135:5 | Replace <better videos> with <better than videos> | Transcription error |
| 135:9 | Replace <expert> with <experts> | Transcription error |
| 137:23 | Replace <four font> with <four-point font> | To clarify the record |
| 139:15 | Replace <fewer videos loss> with <fewer videos with lots> | To clarify the record |
| 145:3 | Replace <people dominant> with <people are dominant> | To clarify the record |
| 145:6 | Replace <books that dominant> with <books that are dominant> | To clarify the record |
| 145:7 | Replace <dominant and> with <are dominant and> | To clarify the record |
| 145:7 | Replace <songs that dominant> with <songs that are dominant> | To clarify the record |
| 145:13 | Replace <Are> with <And> | Transcription error |

| 145:15 | Replace <just sat that> with <just sat there> | Transcription error |
|---|---|---|
| 146:11 | Replace <review> with <view> | Transcription error |
| 146:13 | Replace <knot> with <not> | Transcription error |
| 147:9 | Replace <I mea> with <I mean> | Transcription error |
| 147:22 | Replace <decision> with <decision as a> | Transcription error |
| 149:18 | Replace <infringing> with <infringement> | Transcription error |
| 153:8 | Replace <adverse step> with <overstep> | Transcription error |
| 155:20 | Replace <less decimal> with <last decimal> | Transcription error |
| 161:8 | Replace <restating> with <reinstating> | Transcription error |
| 167:10 | Replace <interested> with <interested in> | Transcription error |
| 169:23 | Replace <108000> with <4080000> | Transcription error |
| 175:10 | Replace <to> with <for> | Transcription error |
| 180:17 | Replace <infringing> with <infringement> | Transcription error |
| 183:17 | Replace <host> with <a host> | Transcription error |
| 185:24 | Replace <in the firm> with <infirm> | Transcription error |
| 187:3 | Replace <record statement> with <record statements> | Transcription error |
| 188:10 | Delete <of> | Transcription error |
| 189:3 | Replace <advertiser's> with <advertiser> | Transcription error |
| 192:7 | Replace <how much is> with <how much does> | Transcription error |
| 192:10 | Replace <to even to account> with <to even account> | Transcription error |
| 195:4 | Replace <potentially> with <potential> | Transcription error |
| 200:14 | Replace <You are> with <Your> | Transcription error |
| 202:20 | Insert <be> between <to> and <necessarily> | Transcription error |
| 205:20 | Replace <necessarily inferior> with <necessarily be inferior> | Transcription error |
| 207:10 | Delete <and> | Transcription error |

| | | |
|---|---|---|
| 208:10 | Delete <music> | Transcription error |
| 208:16 | Replace <a damages> with <damages> | Transcription error |
| 208:21 | Replace <I am not.> with <I have not.” | Transcription error |
| 210:2 | Replace <transform> with <transformation> | Transcription error |
| 214:24 | Replace <challenge> with <challenged> | Transcription error |
| 214:25 | Replace <challenge> with <challenged> | Transcription error |
| 215:11 | Replace <parameters unbiased> with <parameters, unbiased> | Transcription error |
| 218:22 | Replace <di minimus> with <de minimis> | Transcription error |
| 233:13 | Replace <some question> with <your question> | Transcription error |
| 234:10-11 | Replace <that YouTube monetizations> with <that YouTube monetizes> | To clarify the record |
| 234:16 | Replace <down> with <time> | Transcription error |
| 238:15 | Replace <I don’t anything> with <I don’t have anything> | Transcription error |
| 247:19 | Replace <copyright the works> with <copyrighted works> | Transcription error |
| 251:10 | Replace <such key metric> with <such a key metric> | Transcription error |
| 259:5 | Replace <affect> with <affects> | Transcription error |
| 263:10 | Replace <variation advertising> with <variation in advertising> | Transcription error |
| 267:21 | Replace <pages vary visited> with <pages visited> | To clarify the record |
| 268:16 | Replace <model is bias> with <model is biased> | Transcription error |
| 269:5 | Replace <are bias> with <are biased> | Transcription error |
| 269:7 | Replace <if is> with <if it’s a> | Transcription error |
| 269:20 | Replace <are bias> with <are biased> | Transcription error |
| 271:10 | Replace <is reposted now> with <reposted is now> | Transcription error |
| 271:20 | Replace <di minimus> with <de minimis> | Transcription error |

Witness: Hal Singer, January 13, 2023 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| 272:7 | Replace <di minimus> with <de minimis> | Transcription error |
|---|---|---|
| 273:17 | Replace <serves> with <served> | Transcription error |
| 277:10 | Replace <Comsport> with <ComScore> | Transcription error |
| 277:13 | Replace <he> with <it> | Transcription error |
| 280:12 | Insert <be> between <all> and <billed> | Transcription error |
| 287:15 | Replace <suffer> with <suffers> | Transcription error |
| 288:14 | Replace <bias> with <biased> | Transcription error |
| 290:2 | Replace <than> with <then> | Transcription error |

___X___ Subject to the above changes, I certify that the transcript is true and correct.

________ No changes have been made. I certify that the transcript is true and correct.

________________
(Signature)

February 23, 2023
(date)