DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
mrees@wsgr.com
lwhite@wsgr.com

BRIAN M. WILLEN (admitted *Pro Hac Vice*)
CATHERINE R. HARTMAN (admitted *Pro Hac Vice)*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com
Email: chartman@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants

---

YOUTUBE, LLC and GOOGLE LLC,

Counterclaimants,

v.

PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,

Counterclaim Defendants.

CASE NO.: 3:20-cv-04423-JD

**DECLARATION OF ANDREW T. KRAMER IN SUPPORT OF DEFENDANTS AND COUNTERCLAIMANTS' OPPOSITION TO COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION FOR SUMMARY JUDGMENT**

Date: April 13, 2023
Time: 10:00 a.m.
Dept.: 11
Judge: Hon. James Donato

**PUBLIC VERSION – REDACTED**

I, Andrew T. Kramer, declare as follows:

1. I am an attorney at Wilson, Sonsini, Goodrich & Rosati, counsel to Counterclaimants YouTube, LLC and Google LLC (collectively, "YouTube"), and am over the age of 18 and competent to make this declaration. I make each of the following statements based on my personal knowledge, and I could, if necessary, testify to the truth of each of them.

**Gábor Csupó and Holman's partnership**

2. Attached as **Exhibit 1** is a true and correct copy of a document titled [REDACTED] as produced by Intellectual Property LLC ("IPLLC") in this action with the Bates number IPLLC_0000000781, under a CONFIDENTIAL designation. [REDACTED] These quoted portions are highlighted to aid the Court's review.

3. Attached as **Exhibit 2a** is a true and correct copy of an email chain between Endre Holman ("Holman") and Counterclaim Defendant Gábor Csupó ("Csupó"), dated August 31 to September 20, 2018, as produced by Counterclaim Defendant Pirate Monitor Ltd. in this action with the Bates number PIRATEMONITOR_0000000126, under a CONFIDENTIAL designation. Attached as **Exhibit 2b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000126. In that email, [REDACTED] *Id.* These quoted portions are highlighted to aid the Court's review.

4. Attached as **Exhibit 3a** is a true and correct copy of an email between Jennifer Rácz at "WWDH" and Csupó, copying Holman, dated November 14, 2018, as produced by Pirate Monitor Ltd. in this action with the Bates number PIRATEMONITOR_0000000135, under a CONFIDENTIAL designation, and introduced as Exhibit 9a to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. Attached as **Exhibit 3b** is a true and correct copy of a

certified English language translated version of PIRATEMONITOR_0000000135, which was introduced as Exhibit 9b to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. These quoted portions are highlighted to aid the Court's review.

5. In January 2019, Attached as **Exhibit 4a** is a true and correct copy of an email chain between Holman and Csupó, dated January 12 to January 16, 2019, as produced by Pirate Monitor Ltd. in this action with the Bates number PIRATEMONITOR_0000000099, under a CONFIDENTIAL designation. Attached as **Exhibit 4b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000099. In that email, These quoted portions are highlighted to aid the Court's review.

6. On March 20, 2019, József Kovács transferred his ownership of IPLLC to Csupó. *See* ECF 260-18 (Ewing Ex. 16). The "CONSENT TO ACT AS A DIRECTOR" show that Csupó was appointed as "Director of the Company." *Id.* at -19. The "Instrument of Transfer" shows that Csupó acquired all shares in IPLLC for $1. *Id.* at -12; *see also id.* at -18 ("Transfer of Shares").

7. Attached as **Exhibit 5** is a true and correct copy of an email dated April 18, 2019, as produced by IPLLC in this action with the Bates number IPLLC_0000000043, under a CONFIDENTIAL designation. In that email,

[redacted] These quoted portions are highlighted to aid the Court's review.

8. Csupó began pitching the PirateMonitor software to companies in the entertainment industry, and the lawyers representing them. Attached as **Exhibits 6-10 and 11a** are true and correct copies of emails sent by Csupó to various film and entertainment companies or their agents regarding the PirateMonitor software, as produced in this action by either Pirate Monitor LLC, IPLLC or Csupó bearing the Bates numbers PIRATEMONITOR_0000000238, IPLLC_0000000719, IPLLC_0000000022, IPLLC_0000000027, IPLLC_0000000031, and CSUPO_0000000057, respectively, under CONFIDENTIAL designations. Attached as **Exhibit 11b** is a true and correct copy of a certified English language translated version of CSUPO_0000000057.

**<u>IPLLC's agreement with Mega Film</u>**

9. IPLLC later entered an agreement with another company: MegaFilm Kft. ("Mega Film"). ECF 260-8 (Ewing Ex. 6). Under that agreement, if IPLLC found "Parts of [Mega Film] Works, in particular scenes, cuts, trailers, etc., which do not constitute a significant part of the Work, the Agent shall proceed at the operator of the YouTube portal to ensure that the revenue generated by the YouTube videos presenting the relevant Part of Work from advertising is paid to the Principal." *Id.* § 2.6. In exchange for these efforts, IPLLC would receive a "commission on the advertising revenue collected from the Parts of Works." *Id.* § 4.1. This commission was "50% of the net advertising revenue collected" by IPLLC. *Id.* § 4.2.

**<u>Csupó and IPLLC apply for Content ID</u>**

10. Attached as **Exhibit 12** is a true and correct copy of a document titled [redacted] as produced in this action by IPLLC with the Bates number IPLLC_0000000219, under a CONFIDENTIAL designation. The document was produced in an almost illegible form, but Csupó's name is highlighted for the Court's convenience.

11. In investigating the mass upload of videos that were promptly subject to takedown notices from Pirate Monitor LLC (aka Gábor Csupó), YouTube identified a man from Pakistan

named Sarfraz Arshad Khan. My colleague and I contacted Mr. Khan by telephone, and my colleague (who is out indefinitely on leave) subsequently spoke with him several times over the telephone. At YouTube's request, Mr. Khan provided business records reflecting invoices from his work uploading videos containing Mega Film's works onto RansomNova-related YouTube channels. Those invoices show that he was paid close to $200 by Zsombor Oszlanczi for uploading about 1800 videos onto "separate channels" on YouTube. Attached as **Exhibits 13-15** are true and correct copies of the business records that Mr. Khan provided to YouTube, as produced in this action by YouTube with the Bates numbers GOOG-SCHNDR-00054236, GOOG-SCHNDR-00054237, and GOOG-SCHNDR-00054238, respectively, under a HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY designation.

12. Despite YouTube's suspension of the Pirate Monitor LLC and IPLLC accounts, Csupó continued to instruct Búzás to submit DMCA takedown notices for Mega Film's content on behalf of IPLLC. Attached as **Exhibit 16a** is a true and correct copy of an email between Csupó and Búzás, dated February 18, 2020, as produced in this action by Pirate Monitor Ltd. with the Bates numbers PIRATEMONITOR_0000000144, under a CONFIDENTIAL designation. Attached as **Exhibits 16b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000144. In his February 18, 2020 email, Ex. 16b. This quote is highlighted to aid the Court's review.

13. On February 19, 2020, Attached as **Exhibit 17** is a true and correct copy of that email, dated February 19, 2020, as produced by IPLLC with the Bates number IPLLC_0000000453, under a CONFIDENTIAL designation. This quote is highlighted to aid the Court's review.

14. On March 9, 2020, Attached as **Exhibit 18a** is a true and correct copy of that email, dated March 9, 2020, as produced in this action by Pirate Monitor Ltd. with

the Bates numbers PIRATEMONITOR_0000000158, under a CONFIDENTIAL designation. Attached as **Exhibit 18b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000158. This quote is highlighted to aid the Court's review.

**Csupó and Pirate Monitor Ltd.' suit against YouTube**

15. On December 2, 2019, after YouTube terminated Pirate Monitor LLC's and IPLLC's accounts, [REDACTED] Attached as **Exhibit 19a** is a true and correct copy of that email chain, dated February 12, 2019 to December 2, 2019, as produced in this action by IPLLC with the Bates number IPLLC_0000000063, under a CONFIDENTIAL designation. Attached as **Exhibit 19b** is a true and correct copy of a certified English language translated version of IPLLC_0000000063. The quotes above are highlighted to aid the Court's review.

16. On December 11, 2019, [REDACTED] Attached as **Exhibit 20a** is a true and correct copy of that email, as produced in this action by Pirate Monitor Ltd. with the Bates number PIRATEMONITOR_0000000141, under a CONFIDENTIAL designation. Attached as **Exhibit 20b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000141. This quote is highlighted to aid the Court's review.

17. On December 28, 2019, [REDACTED] Kálomista responded that same day, saying "It is ok for me." Attached as **Exhibit 21a** is a true and correct copy of that email chain, as produced in this action by Pirate Monitor Ltd. with the Bates number PIRATEMONITOR_0000000149, under a CONFIDENTIAL designation. Attached as **Exhibit 21b** is a true and correct copy of a certified

English language translated version of PIRATEMONITOR_0000000149. The quotes above are highlighted to aid the Court's review.

18. Neither Mega Film, IPLLC, nor Csupó sued YouTube. Instead, on July 2, 2020, a company named Pirate Monitor Ltd., along with Maria Schneider, filed this action. ECF 1. Csupó is the sole owner, director, and shareholder of Pirate Monitor Ltd. *See infra* Ex. 29 at 25:23-26:2, 26:13-21, 132:11-18. According to Csupó's deposition testimony, József Kovács sold Pirate Monitor Ltd. to Csupó for $1. *See id.* at 60:1-2, 60:9-21.

19. Attached as **Exhibit 22a** is a true and correct copy of a January 8, 2020 email from Holman to Csupó as produced in this action by Pirate Monitor with the Bates number PIRATEMONITOR_0000000136 and introduced as Exhibit 17a to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. Attached as **Exhibit 22b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000136, which was introduced as Exhibit 17b to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. In that email, Holman recommends a list of films for which they should secure rights from Mega Film. Holman says that "[t]he Paki kid uploaded only 'Csak szex és más semmi' and 'Zimmer Feri 1'." Holman recommends a list of 5 different films. The quotes above are highlighted to aid the Court's review.

20. Attached as **Exhibit 23a** is a true and correct copy of a January 8, 2020 email as produced in this action by Pirate Monitor with the Bates number PIRATEMONITOR_0000000143, under a CONFIDENTIAL designation, and introduced as Exhibit 16a to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. Attached as **Exhibit 23b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000143, which was introduced as Exhibit 16b to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. In it, [redacted]

[redacted] The quotes above are highlighted to aid the Court's review.

21. Attached as **Exhibit 24** is a true and correct copy of that license agreement as produced in this action by Pirate Monitor Ltd. with the Bates number PIRATEMONITOR_0000000046, under a CONFIDENTIAL designation, and introduced as Exhibit 15 to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó.

22. On March 9, 2020, [redacted] Attached as **Exhibit 25a** is a true and correct copy of that email chain, dated March 9 to March 10, 2020, as produced in this action by Pirate Monitor with the Bates number PIRATEMONITOR_0000000206, under a CONFIDENTIAL designation, and introduced as Exhibit 7a to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. Attached as **Exhibit 25b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000206, which was introduced as Exhibit 7b to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó.

23. In March 2020, Csupó sent a DMCA takedown notice on Pirate Monitor Ltd.'s behalf, alleging infringement of one of the three films for which the company had licensed rights from Mega Film. Attached as **Exhibit 26** is a true and correct copy of YouTube's response to that takedown notice, as produced in this action by Pirate Monitor Ltd. with the Bates number

PIRATEMONITOR_0000000014 and introduced as Exhibit 21 to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó.

24. In July 2020, Pirate Monitor Ltd. brought this action along with Maria Schneider. In its complaint, Pirate Monitor asserted rights in three works, one of which was an allegedly unregistered foreign work titled *Csak szex és más semi*. ECF 1 ¶ 65. In discovery, YouTube served on Pirate Monitor Ltd. Interrogatory No. 1 asking it to "[i]dentify each Work In Suit by title, author, owner, date of creation and United States copyright registration number, if applicable." In its interrogatory response, signed by Plaintiffs' counsel and verified by Csupó, Pirate Monitor Ltd. identified as a "Work In Suit", "*Csak szex és más semi*, authored by Megafilm Kft, ***owned by Pirate Monitor***, 2005." (emphasis added). Attached as **Exhibit 27** is a true and correct copy of Plaintiff Pirate Monitor Ltd.'s Objections and Responses to YouTube and Google's First Set of Interrogatories to Plaintiff Pirate Monitor Ltd., served November 11, 2020.

25. On September 28, 2020, after YouTube asserted its counterclaims in this action, [redacted] Attached as **Exhibit 28a** is a true and correct copy of that email as produced in this action by Pirate Monitor Ltd. with the Bates number PIRATEMONITOR_0000000165, under a CONFIDENTIAL designation, and introduced as Exhibit 18a to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. Attached as **Exhibit 28b** is a true and correct copy of a certified English language translated version of PIRATEMONITOR_0000000165, which was introduced as Exhibit 18b to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. The quotes above are highlighted to aid the Court's review.

**Deposition testimony**

26. On July 5, 2022, Defendants took the deposition of Pirate Monitor Ltd.'s 30(b)(6) designee Gábor Csupó. Attached as **Exhibit 29** is a true and correct copy of excerpts of the transcript of the deposition of Pirate Monitor Ltd.'s 30(b)(6) designee Gábor Csupó, taken July 5, 2022. Selected excerpts are highlighted to aid the Court's review.

27. On June 14, 2022, Defendants took a deposition of Plaintiff Maria Schneider. Attached as **Exhibit 30** is a true and correct copy of excerpts of the transcript of the deposition of Plaintiff Maria Schneider, taken June 14, 2022. Selected excerpts are highlighted to aid the Court's review.

**Discovery from Csupó and IPLLC**

28. On October 22, 2020, after YouTube asserted its counterclaims, Pirate Monitor Ltd. served its initial disclosures in this action. Attached as **Exhibit 31** is a true and correct copy of Plaintiffs' Rule 26(a)(1) Initial Disclosures, served October 22, 2020.

29. In their March 12, 2021 answer to YouTube's amended counterclaims, Csupó and Pirate Monitor Ltd. asserted "that ***an entity*** sent takedown notices for the videos described in [YouTube's counterclaims] and that Gábor Csupó's electronic signature appears on the takedown notices." ECF 68 ¶ 50 (emphasis added); ECF 69 ¶ 50 (Csupó asserting same); *see also* ECF 68 ¶ 79 (Pirate Monitor Ltd. admitting "that takedown notices were sent by ***some entity***, that Gábor Csupó's electronic signature appears on the takedown notices, that the takedown notices represented that the entity) (emphasis added); ECF 69 ¶ 79 (Csupó admitting "that takedown notices were sent by ***some entity***, that his electronic signature appears on the takedown notices, that the takedown notices represented that ***the entity*** sending taking the takedown notices was authorized to represent MegaFilm, and that the videos that were the subject of the takedown notice infringed copyrights") (emphasis added).

30. YouTube served its First Set of Interrogatories on Csupó in May 2021. On June 24, 2021, Csupó served his responses and objections to those Interrogatories. In response to Interrogatory No. 3, Mr. Csupó averred that it was IPLLC who was responsible for copyright enforcement on behalf of Mega Film, and that IPLLC sent the DMCA takedown notices bearing Csupó's name that are at issue in YouTube's Counterclaims. In response to YouTube's Interrogatory No. 5, Csupó averred that "Zoltán Búzás was involved in preparing and/or sending all DMCA 'Takedown Notices' to YouTube that have [Csupó's] authorized signature." Csupó also averred, in response to Interrogatory No. 6, that Csupó "has no relationship with any business entity bearing the name Pirate Monitor LLC." And in response to Interrogatory No. 8,

Csupó averred that he is "a Director and Shareholder of Intellectual Property LLC." A true and correct copy of an excerpt of Csupó's June 24, 2021 Objections and Responses to YouTube's First Set of Interrogatories is attached hereto as **Exhibit 32**.

31. YouTube sought documents from Csupó relating to the uploading of videos to YouTube and the transmission of takedown notices to YouTube as well as Pirate Monitor Ltd.'s adherence to corporate formalities. Attached as **Exhibit 33** is a true and correct copy of a letter dated April 15, 2021, sent from counsel for Pirate Monitor Ltd. and Csupó to YouTube's counsel. In that letter, counsel for Pirate Monitor Ltd. and Csupó states, "We will produce responsive, non-privileged documents in his possession that relate to [Csupó] himself, Pirate Monitor Ltd., and Pirate Monitor LLC. But Mr. Csupó is also involved in other companies that have not been named as parties to this case. We will not produce documents from these other companies even if they are technically responsive to your document requests ***because Mr. Csupó intends to maintain corporate formalities***." Ex. 33 at 1 (emphasis added). These quotes are highlighted to aid the Court's review.

32. On June 2, 2021, YouTube served a Rule 45 subpoena on IPLLC's registered agent in Delaware. On June 15, 2021, IPLLC served its objections and responses to the subpoena through Boies Schiller Flexner LLP and Korein Tillery, LLC, the same counsel that represents Pirate Monitor Ltd. and Csupó in the underlying action. A true and correct copy of IPLLC's June 15, 2021 Objections and Responses to the Subpoena is attached hereto as **Exhibit 34**.

33. According to a Pirate Monitor Ltd.'s interrogatory response, Zoltán Búzás and Endre Holman are individuals who "performed certain limited tasks related to Pirate Monitor Ltd." A true and correct copy of Pirate Monitor Ltd.'s Amended Responses and Objections to Defendants' Interrogatory Number 4, served June 10, 2021, is attached hereto as **Exhibit 35**. These quotes are highlighted to aid the Court's review.

34. IPLLC has taken the position, through counsel, that "the cost to collect Mr. Búzás' 41 GB computer is at least $32,200 and the cost to collect a second 138 GB computer is at least $52,900, not including the cost of review." Citing this cost estimate, IPLLC refused to produce documents from Búzás. IPLLC also claimed it would not be producing documents from

Holman, because it "has no contractual right to [his] documents" and because his documents, like Búzás', might be subject to the GDPR. Attached as **Exhibit 36** is a true and correct copy of that letter, dated August 10, 2021, sent from counsel for IPLLC to counsel for YouTube.

35. On June 8, 2022, after protracted meet and confer efforts including multiple telephone calls involving Delaware counsel, YouTube moved to compel production of responsive documents from IPLLC in the District of Delaware in accordance with Rule 45. That motion seeks four categories of information, each of which YouTube believes is likely to exist and to confirm Csupó's personal knowledge of and involvement in the upload-and-takedown scheme and/or the lack of separation between Csupó and his entities such that neither IPLLC nor Pirate Monitor Ltd. should be treated as distinct legal entities from one another or from Csupó:

a. Subpoena Request Nos. 3 and 4 seek documents relating to Csupó, Pirate Monitor Ltd., and/or YouTube's copyright tools, as well as agreements between IPLLC and Csupó, Pirate Monitor Ltd., or Mega Film. *See* Ex. 34. These documents are likely to include, for example, documents related to IPLLC's motivation and plans for gaining access to Content ID and Csupó's involvement in those efforts, which will lay bare Csupó roles in the scheme.

b. Subpoena Request Nos. 5 and 6 seek documents and communications related to the DMCA takedown notices that IPLLC sent to YouTube. *See* Ex. 34. One of the most notable gaps in IPLLC's production to date is the lack of communications by Búzás, Holman, or any of IPLLC's other agents in Hungary concerning the DMCA takedown notices or the videos that were the subject of those notices. These documents are likely to reveal Csupó's, Pirate Monitor Ltd.'s, and IPLLC's respective roles in the upload-and-takedown scheme. While IPLLC has tried to cabin the scope of this request to DMCA takedown notices sent from August 2019 to November 2019, all DMCA takedown notices sent by IPLLC to YouTube are pertinent to Csupó and his entities' motivation to gain access to Content ID, the scope of their scheme to gain access to the Content ID system (including

misrepresentations made to YouTube), and the alter ego allegations insofar as they reflect the blurring of corporate lines among Csupó and his entities.

c. Subpoena Request Nos. 1, 7, 8 and 9 seek documents regarding IPLLC's agents, including communications with Holman, Búzás or Sarfraz Arshad Khan and/or Ransom Nova. *See* Ex. 34. As discussed, Csupó averred in his interrogatory responses that "Zoltán Búzás was involved in preparing and/or sending all DMCA 'Takedown Notices' to YouTube that have [Csupó's] authorized signature." But neither IPLLC, Csupó nor Pirate Monitor Ltd. have produced communications with Búzás (or Holman) regarding the takedown notices underlying YouTube's claims. There is good reason to believe such communications exist, as Csupó emailed Búzás directly in 2020 (after the flood of takedown notices at issue) asking him to send a takedown notice to YouTube. *See* Ex. 16b. Given Csupó's contention that the subject takedown notices were sent without his knowledge or instruction (ECF 260 at 7-8), these missing communications will bear directly on Csupó and Pirate Monitor Ltd.'s liability. Also, conspicuously absent from IPLLC's production are communications between IPLLC (or Búzás or Holman) and Khan, the individual who uploaded the videos. Those communications would confirm, for example, that Csupó and IPLLC knew that the videos that they claimed were infringing in their takedown notices were, in fact, uploaded with Mega Film's authorization.

d. Subpoena Request No. 2 seeks documents reflecting IPLLC's observation of corporate formalities. *See* Ex. 34. While IPLLC has produced a sampling of such documents, it appears to have withheld relevant information, such as documents reflecting its capitalization and financial statements. This category of information is also likely to include, for example, minutes from IPLLC's board meetings, which Csupó testified were held jointly with Pirate Monitor Ltd., and which neither IPLLC, Csupó nor Pirate Monitor Ltd. have produced. Given the evidence

that already demonstrates IPLLC's disregard of corporate formalities, these documents are likely to confirm IPLLC's lack of a separate corporate identity.

36. On February 21, 2023, the Delaware court held a hearing on YouTube's motion to compel and, finding exceptional circumstances, transferred the motion to this District. *YouTube, LLC v. Intellectual Property LLC*, No. 23-cv-1100-JD, ECF 1 (N.D. Cal.). That motion is currently pending before the Court and is set to be heard along with Csupó and Pirate Monitor Ltd.'s summary judgment motion at the April 13, 2023 hearing. *Id.* ECF 20.

37. On March 6, 2023, IPLLC produced its first privilege log in this case, along with an email chain and attachment regarding the PirateMonitor software.

**<u>Csupó's Content ID Application</u>**

38. On April 19, 2019, [REDACTED] Attached as Attached as **Exhibit 37a** is a true and correct copy of that email as produced in this action by IPLLC with the Bates number IPLLC_0000000217, under a CONFIDENTIAL designation, and introduced as Exhibit 25a to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó. Attached as **Exhibit 37b** is a true and correct copy of a certified English language translated version of IPLLC_0000000217, which was introduced as Exhibit 25b to the July 5, 2022 Rule 30(b)(6) deposition of Gábor Csupó.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on March 24, 2023 at San Francisco, California.

*<u>/s/ Andrew T. Kramer</u>*
Andrew T. Kramer

**ATTORNEY ATTESTATION**

I, David H. Kramer, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the signatory.

*/s/ David H. Kramer*
David H. Kramer