George A. Zelcs *
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. *
  rewing@koreintillery.com
Ryan Z. Cortazar *
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe *
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
*Admitted *pro hac vice*

*Attorneys for Counterclaim-Defendants*
*Pirate Monitor Ltd. and Gabor Csupo*

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *
  pkorologos@bsfllp.com
Joanna Wright *
  jwright@bsfllp.com
Jeffrey Waldron *
  jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:      Hon. James Donato<br><br>Date:      April 13, 2023<br>Time:     10:00 a.m. |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD, et al.,<br><br>Counterclaim Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.      DEFENDANTS' ABANDONED CLAIMS SHOULD
          BE DISMISSED ........................................................................................... 2

    II.     DEFENDANTS CANNOT RECOVER COSTS OF
          SUIT UNDER SECTION 512(f). ................................................................ 3

    III.    DEFENDANTS CANNOT SUE PIRATE MONITOR LLC
          SINCE IT DOES NOT EXIST ..................................................................... 4

    IV.    PIRATE MONITOR LTD. CANNOT BE LIABLE SINCE
          IT WAS NOT INVOLVED IN ANY ALLEGED WRONGDOING ................... 5

    V.     MR. CSUPO CANNOT BE HELD LIABLE AS A
          MATTER OF LAW ...................................................................................... 7

          A.    Mr. Csupo cannot be held directly liable based on
                California agency law ..................................................................... 7

          B.    Mr. Csupo was not directly involved in any
                wrongdoing and thus cannot be held personally liable. ............ 9

          C.    Mr. Csupo cannot be held liable for actions of IPLLC
                under an alter-ego theory because Defendants did not allege
                any misconduct by IPLLC ........................................................... 11

    VI.    DEFENDANTS LACK STANDING TO SEEK INJUNCTIVE RELIEF .......... 14

CONCLUSION ................................................................................................................. 15

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S REPLY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**Cases**

*Alexandria Real Est. Equities, Inc. v. Bugsby Prop., LLC,*
   2021 WL 821576 (Cal. Ct. App. Mar. 4, 2021) ........................................................................ 5

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ................................................................................................. 15

*Arroyo v. Int'l Paper,*
   611 F. Supp. 3d 824 (N.D. Cal. 2020) ................................................................................... 14

*Automattic Inc. v. Steiner,*
   82 F. Supp. 3d 1011 (N.D. Cal. 2015) ..................................................................................... 4

*Baisley v. Henry,*
   55 Cal. App. 760 (Cal. Ct. App. 1921) .................................................................................. 11

*Baker Botts L.L.P. v. ASARCO LLC,*
   576 U.S. 121 (2015) ................................................................................................................. 4

*Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley
   Cabinet & Mfg. Co.,*
   877 F.2d 769 (9th Cir. 1989) ................................................................................................... 6

*Blizzard Energy, Inc. v. Schaefers,*
   71 Cal. App. 5th 832 (Cal. Ct. App. 2021) ......................................................................... 5, 6

*Brae Transp., Inc. v. Coopers & Lybrand,*
   790 F.2d 1439 (9th Cir. 1986) ............................................................................................... 14

*Cadence Design Sys., Inc. v. Avant! Corp.,*
   29 Cal. 4th 215 (Cal. 2002) ................................................................................................... 11

*Cal. Beach Co. v. Han Xian Du,*
   2020 WL 6260013 (N.D. Cal. Oct. 6, 2020) ........................................................................... 4

*Casey v. Olson,*
   2010 WL 3516930 (S.D. Cal. Sept. 8, 2010) ........................................................................ 10

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................................................................. 7

*Chance v. Pac-Tel Teletrac Inc.,*
   242 F.3d 1151 (9th Cir. 2001) ............................................................................................... 14

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ................................................................ 15

*Davis v. Wal-Mart Stores Inc.*,
   2017 WL 499595 (C.D. Cal. Feb. 6, 2017) ................................ 11

*Dyke v. Lions Gate Ent. Inc.*,
   2014 WL 12586242 (C.D. Cal. July 14, 2014) ...................... 13, 14

*Frances T. v. Vill. Green Owners Assn.*,
   42 Cal. 3d 490 (Cal. 1986) ................................................... 10, 11

*In re Fu*,
   739 F. App'x 432 (9th Cir. 2018) ............................................ 14

*Grewal v. Choudhury*,
   377 F. App'x 617 (9th Cir. 2010) .............................................. 2

*Hollander v. Cap. Ltd.*,
   2018 WL 2017183 (Cal. Ct. App. May 1, 2018) ......................... 6

*Jenkins v. Cty. of Riverside*,
   398 F.3d 1093 (9th Cir. 2005) ................................................... 2

*Karsant Fam. Ltd. P'ship v. Allstate Ins. Co.*,
   2009 WL 188036 (N.D. Cal. Jan. 27, 2009) ............................. 11

*Katzir's Floor & Home Design, Inc. v. M–MLS.com*,
   394 F.3d 1143 (9th Cir. 2004) .................................................... 5

*Leer v. Murphy*,
   844 F.2d 628 (9th Cir. 1988) ...................................................... 2

*Lenz v. Universal Music Corp.*,
   2010 WL 702466 (N.D. Cal. Feb. 25, 2010) ............................... 3

*Lenz v. Universal Music Corp.*,
   815 F.3d 1145 (9th Cir. 2016) .................................................... 3

*Lorbeer Enterprises, LP v. Liberty Mut. Ins. Co.*,
   2019 WL 4284514 (C.D. Cal. May 9, 2019) ......................... 12, 13

*McClellan v. Northridge Park Townhome Owners Ass'n, Inc.*,
   89 Cal. App. 4th 746 (Cal. Ct. App. 2001) ................................. 6

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .................................................... 15

*Misik v. D'Arco*,
   197 Cal. App. 4th 1065 (Cal. Ct. App. 2011) ............................. 6

Case No. 3:20-cv-04423-JD

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S REPLY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   138 S. Ct. 617 (2018) ........................................................................................ 4

*Nuance Commc'ns, Inc. v. ABBYY Software House*,
   2012 WL 2838431 (N.D. Cal. July 10, 2012) ................................................... 13

*Oracle USA v. Rimini St., Inc.*,
   783 F. App'x 707 (9th Cir. 2019) ..................................................................... 15

*Peredia v. HR Mobile Servs., Inc.*,
   25 Cal. App. 5th 680 (Cal. Ct. App. 2018) ...................................................... 11

*PMC, Inc. v. Kadisha*,
   78 Cal. App. 4th 1368 (Cal. Ct. App. 2000),
   *as modified on denial of reh'g* (Apr. 7, 2000) .................................................. 11

*Prompt Staffing, Inc. v. United States*,
   321 F. Supp. 3d 1157 (C.D. Cal. 2018) .............................................................. 6

*Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*,
   2014 WL 12577084 (C.D. Cal. Dec. 4, 2014) .................................................. 12

*Ramirez v. City of Buena Park*,
   560 F.3d 1012 (9th Cir. 2009) ............................................................................ 2

*Riley v. Bd. of Trustees of California State Univ.*,
   2015 WL 2198247 (N.D. Cal. May 11, 2015) ................................................... 2

*Scott v. Pasadena Unified School Dist.*,
   306 F.3d 646 (9th Cir. 2002) ........................................................................... 15

*Shultz Steel Co. v. Hartford Accident & Indem. Co.*,
   187 Cal. App. 3d 513 (Cal. Ct. App. 1986) ..................................................... 11

*Signal 23 Television v. Anthony*,
   2020 WL 11206863 (N.D. Ga. Sept. 1, 2020) ................................................... 4

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*,
   217 Cal. App. 4th 1096 (Cal. Ct. App. 2013) ..................................................... 6

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
   1 Cal. 3d 586, 463 P.2d 770 (Cal. 1970) ................................................... 10, 11

*United States v. Rich*,
   603 F.3d 722 (9th Cir. 2010) ............................................................................. 4

*Water, Inc. v. Everpure, Inc.*,
   2009 WL 10670419 (C.D. Cal. Oct. 28, 2009) ................................................ 11

*Whitlow v. Rideout Mem'l Hosp.*,
    237 Cal. App. 4th 631 (Cal. Ct. App. 2015) ................................................................. 11

*Woodard v. Labrada*,
    2021 WL 4499184 (C.D. Cal. Aug. 31, 2021) .......................................................... 11

*Wright v. Serv. Emps. Int'l Union Loc. 503*,
    48 F.4th 1112 (9th Cir. 2022) ................................................................................... 14

**Statutes**

17 U.S.C. § 512(f) ........................................................................................................... 3

17 U.S.C. § 1203(b)(5) .................................................................................................... 4

17 U.S.C. § 1322(b) ........................................................................................................ 4

17 U.S.C. § 1323(d) ........................................................................................................ 4

17 U.S.C. § 1325 ............................................................................................................. 4

28 U.S.C. § 4001(g) ........................................................................................................ 4

Cal. Civ. Code § 2351 ..................................................................................................... 7

**Other Authorities**

Fed. R. Civ. P. 56(d) ..................................................................................................... 14

**INTRODUCTION**

Defendants have abandoned their counterclaims for breach of contract and fraud, which should be dismissed forthwith.  Only a single counterclaim remains: Counterclaim III for alleged violation of 17 U.S.C § 512(f) against Pirate Monitor LLC, Pirate Monitor Ltd., and Gabor Csupo, based on inaccurate takedown notices submitted during a 2-1/2-week period in October and November 2019 that allegedly caused Defendants ███ of harm.  As Defendants' Opposition demonstrates, resolution of this counterclaim does not implicate disputed facts regarding the opening of YouTube accounts, uploading of videos, submission of takedown notices, or YouTube's proven ability to detect inaccurate takedown notices.  Nor does it turn on any other fact relevant to the significant claims asserted by the class plaintiffs.  Instead, resolution of the counterclaim turns on whether Mr. Csupo is liable for the actions of others.  Because, as shown in the opening brief, Mr. Csupo is not as a matter of law liable for the acts of others, the sole remaining counterclaim should be dismissed.

Defendants' Opposition confirms that Defendants asserted their § 512(f) claim against *the wrong parties*.  The takedown notices at issue were all submitted by agents of IPLLC and/or sub-agents of MegaFilm—but Defendants chose not to sue IPLLC, MegaFilm, or any of their agents and sub-agents.  Instead, Defendants named Pirate Monitor LLC, an entity that does not exist and cannot be sued (which Defendants do not dispute), and Pirate Monitor Ltd., an entity that was dormant and not even owned by Mr. Csupo until 2020, months *after* all the takedown notices were submitted (which Defendants also do not dispute).  As to Mr. Csupo, his sole connection to the inaccurate takedown notices is that he owned IPLLC, an entity that contracted with MegaFilm to enforce MegaFilm's copyrights online.  But, under California agency law, IPLLC's owner (Mr. Csupo) cannot be held liable for the actions of IPLLC's agents or MegaFilm's sub-agents.

The only way Mr. Csupo could be held liable, if at all, would be if a judgment were entered against IPLLC and IPLLC's corporate veil were pierced under an alter ego theory.  But Defendants have not sued IPLLC despite knowing of IPLLC's connection to Mr. Csupo and its contract with MegaFilm since April 2019—i.e., ***more than a year*** before Plaintiffs filed their

initial complaint and ***more than three years*** before Defendants re-filed their Amended

Counterclaims.[1]  Voluminous discovery—including multiple interrogatory responses, the

deposition of Mr. Csupo, and thousands of pages of documents produced by Pirate Monitor Ltd.,

Mr. Csupo, and IPLLC—put Defendants on notice of IPLLC's relevance to the alleged "fraud."

But Defendants' counterclaims do not even mention IPLLC, let alone name it as a counterclaim-

defendant.

Even if Defendants' sole remaining counterclaim survives, the remedies Defendants seek

(injunctive relief and attorneys' fees) should be dismissed.

## ARGUMENT

## I.     DEFENDANTS' ABANDONED CLAIMS SHOULD BE DISMISSED.

The motion for summary judgment ("Mot.") demonstrated that Defendants' counterclaims

for breach of contract and common-law fraud fail as a matter of law (Mot. at 10-16), which

Defendants do not dispute in their Opposition.  Accordingly, these claims have been abandoned

and should be dismissed.  *See Riley v. Bd. of Trustees of California State Univ.*, 2015 WL

2198247, at *3 (N.D. Cal. May 11, 2015) (Donato, J.) ("CSU brought this motion on all of Riley's

claims, including a claim of discrimination from a raise given to Fadeff. Riley's opposition did not

address that claim, so this order deems it abandoned for all purposes in this case."); *Ramirez v.

City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009); *Jenkins v. Cty. of Riverside*, 398 F.3d

1093, 1095 n.4 (9th Cir. 2005).[2]

---

[1] Defendants filed their initial counterclaims on September 21, 2020 (EFC No. 34) ("Initial Counterclaims") and amended counterclaims on February 19, 2021 (ECF No. 60) ("Amended Counterclaims").  Defendants later re-filed their amended counterclaims on August 22, 2022 (ECF No. 160) ("re-filed Amended Counterclaims").  (Mot. 1 n.1).

[2] In a last-ditch effort to save their meritless breach of contract claim, Defendants state in a footnote that, *if* the uploads were not authorized, they could still pursue a breach-of-contract claim. (Opp. at 12 n.6).  But the undisputed evidence establishes the uploads were authorized.  (Opp. at 5).  Defendants' undeveloped argument, with no evidentiary support, cannot save their breach-of-contract claim from being deemed abandoned.  *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) (deeming abandoned all issues raised in a brief not supported by argument); *Grewal v. Choudhury*, 377 F. App'x 617, 618 (9th Cir. 2010).

**II.  DEFENDANTS CANNOT RECOVER COSTS OF SUIT UNDER SECTION 512(f).**

Defendants' Opposition does not address the plain language of the statute, which mandates attorneys' fees and costs incurred by a service provider "*as the result of* the service provider relying upon such misrepresentation in *removing or disabling access to the material* or activity claimed to be infringing, *or in replacing the removed material or ceasing to disable access to it*." 17 U.S.C. 512(f) (emphases added).  Defendants' litigation fees were not incurred because YouTube removed or disabled access to the videos as the result of the inaccurate takedown notices, and YouTube never replaced the material subject to the takedown notices or ceased disabling access to it.  After all, the user(s) who uploaded the videos that YouTube removed never sued YouTube for removing them.  Any litigation fees in this lawsuit thus were incurred voluntarily as a result of Defendants' independent choice to prosecute their § 512(f) claim and other abandoned claims.

This is the same reasoned conclusion reached by the only court within the Ninth Circuit to fully analyze this issue, *Lenz v. Universal Music Corp.*, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010).  Defendants contend that the Ninth Circuit indirectly reversed the district court in *Lenz*. (Opp. at 21).  But the Ninth Circuit did no such thing.  The panel explicitly declined to decide "whether [a plaintiff] may recover expenses following the initiation of her § 512(f) suit." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2016).

Defendants first attempt to circumvent the clear statutory language by arguing that Congress intended to mandate recovery of litigation costs under § 512(f) in order to "deter fraudsters from engaging in" "abuses of the DMCA's notice-and-takedown process."  (Opp. at 21).  However, Defendants' expansive reading of § 512(f) would allow a plaintiff who suffered no actual damages from a misrepresentation to establish damages simply by filing a § 512(f) lawsuit and incurring associated costs.  *Lenz*, 2010 WL 702466, at *11 ("Congress did not intend to allow plaintiffs to establish the damage element under § 512(f) simply by hiring an attorney and filing suit.").  Such an interpretation would, as here, multiply proceedings and result in lawyer-driven litigation where the remedies sought quickly become vastly disproportionate to the harm being

addressed.  Regardless, policy arguments do not supersede statutory language.  *United States v. Rich*, 603 F.3d 722, 731 (9th Cir. 2010) ("abstract policy concerns cannot trump statutory text"); *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 634 n.9 (2018) ("ambiguous legislative history cannot trump clear statutory language") (cleaned up).

Defendants' interpretation is also refuted by other provisions of the same statute.  All five other attorney's fee provisions in the DMCA allow that a court "in its discretion may award reasonable attorney's fees to the prevailing party" without any additional restriction.  DMCA § 103(a), 17 U.S.C. § 1203(b)(5); *accord* DMCA, §§ 406 & 502, *codified at* 17 U.S.C. §§ 1322(b), 1323(d), 1325 & 28 U.S.C. § 4001(g).  If Congress wanted to allow the recovery of full costs of litigation and attorney's fees under § 512(f), it would have followed the default wording it used repeatedly in drafting the DMCA and not added the restrictions found only in that provision.

Even if § 512(f) were ambiguous (which it is not), the Supreme Court has instructed that courts should not deviate from the "American Rule" (i.e., each litigant pays his own attorney's fees) "absent explicit statutory authority."  *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126–27 (2015) (citations omitted).  There is no "explicit statutory authority" to award attorney's fees that are not incurred "as the result of" removing, disabling access to, or replacing the removed material. This Court should reject the invitation to delete 38 words from § 512(f).[3]

## III.    DEFENDANTS CANNOT SUE PIRATE MONITOR LLC SINCE IT DOES NOT EXIST.

Defendants admit that Pirate Monitor LLC is a "nonexistent entity".  (Opp. at 4).  Thus, Pirate Monitor LLC cannot be sued.  (Mot. at 5 n.2) (citing *Thacker v. AT&T Corp.*, 2021 WL 871178, at *3 (E.D. Cal. Mar. 9, 2021)).  Defendants' Opposition does not argue otherwise, and accordingly, all claims against Pirate Monitor LLC should be dismissed.

---

[3] In Defendants' cases, the fees were awarded following default judgment with no meaningful analysis of the issue.  *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1019 (N.D. Cal. 2015); *Cal. Beach Co. v. Han Xian Du*, 2020 WL 6260013, at *1–2 (N.D. Cal. Oct. 6, 2020); *Signal 23 Television v. Anthony*, 2020 WL 11206863, at *1–2 (N.D. Ga. Sept. 1, 2020).

**IV. PIRATE MONITOR LTD. CANNOT BE LIABLE SINCE IT WAS NOT INVOLVED IN ANY ALLEGED WRONGDOING.**

It is undisputed that Pirate Monitor Ltd. had no role in any of the alleged wrongful takedown notices (Opp. at 5-6); that it was inactive when the alleged fraud took place (Opp. at 8); and that it sued Defendants over works not "implicated by the prior fraud" (Opp. at 8). As Pirate Monitor Ltd. was not involved in any alleged wrongdoing, it cannot be held directly liable—which Defendants do not dispute. (Opp. at 23-25).

Defendants instead attempt to hold Pirate Monitor Ltd. liable through retroactive reverse veil-piercing. But under California law, "piercing the veil is an extreme remedy, to be sparingly used." *Alexandria Real Est. Equities, Inc. v. Bugsby Prop., LLC*, 2021 WL 821576, at *5 (Cal. Ct. App. Mar. 4, 2021) (cleaned up). "In the reverse veil piercing context, that burden is even more onerous and its use should be extremely rare." *Id.* (cleaned up). Before applying reverse piercing, "the availability of alternative, adequate remedies must be considered by the trial court." *Blizzard Energy, Inc. v. Schaefers*, 71 Cal. App. 5th 832, 847 (Cal. Ct. App. 2021), *review denied* (Feb. 16, 2022) (cleaned up). To hold Pirate Monitor Ltd. liable under a reverse alter-ego theory, Defendants must establish (1) that there was a "unity of interest" between Pirate Monitor and Mr. Csupo; and (2) an "inequitable result would follow" if the acts of Mr. Csupo were not treated as the acts of Pirate Monitor Ltd.

On the first element, Defendants concede there was no "unity of interest" between Mr. Csupo and Pirate Monitor Ltd. in 2019 at the time of the alleged fraud. (Mot. at 9-10). None of Defendants' cases (Opp. at 24-25) support imposing retroactive liability on an entity that had no "unity of interest" at the time of any alleged wrongdoing. The record shows that Mr. Csupo acquired Pirate Monitor Ltd. months after submission of any inaccurate takedown notices, which is insufficient to pierce the corporate veil. *Katzir's Floor & Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (holding "mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law"; observing, "[e]ven if the sole shareholder is entitled to all of the corporation's profits, and dominated and

controlled the corporation, that fact is insufficient by itself to make the shareholder personally

liable"). Moreover, Defendants' own cited authority (Opp. at 24) recognizes that veil-piercing

should not be used, as here, to reach the assets of an innocent party. *See Blizzard Energy*, 71 Cal.

App. 5th at 841 (reversing because "wife may be an innocent third party who would suffer

substantial harm if respondent's recovery is accomplished through [ ] reverse veil piercing").

On the second element, Defendants point to no evidence that an inequitable result would

follow if Mr. Csupo and Pirate Monitor Ltd. were treated as separate. Instead, Defendants state,

without citation, that it is "unclear whether Csupó has sufficient assets to cover an adverse

judgment in this case." (Opp. at 24.) But Defendants identify no evidence of Mr. Csupo's

inability to satisfy a hypothetical, future judgment, despite having the opportunity to obtain such

evidence during discovery. Pirate Monitor Ltd. is thus entitled to summary judgment on this

issue. *Hollander v. Cap. Ltd.*, 2018 WL 2017183, at *7 (Cal. Ct. App. May 1, 2018) ("[S]ummary

judgment was appropriate on the [plaintiffs'] alter ego/single enterprise theory of liability because,

instead of basing their opposition to defendants' inequitable result argument on evidence about

existing facts, the [plaintiffs] relied on speculation about contingent future possibilities."). Even if

there were evidence that Mr. Csupo was insolvent (which there is not), it is well-established that

"inability to collect [from an insolvent defendant] does not, by itself, constitute an inequitable

result." *Bd. of Trustees of Mill Cabinet Pension Tr. Fund for N. California v. Valley Cabinet &

Mfg. Co.*, 877 F.2d 769, 774 (9th Cir. 1989) (citations omitted).[4]

Defendants also claim, again without citation, that "Pirate Monitor Ltd. is a pawn in Csupó

and Holman's larger scheme to obtain Content ID by fraud". (Opp. at 25.) But the only

---

[4] As Defendants' cases show (Opp. at 24-25), courts typically pierce the corporate veil only
where the corporate form was abused to shield assets from a creditor, often after first obtaining a
judgment. *Blizzard Energy*, 71 Cal. App. 5th at 842 (alter ego pursued after obtaining judgment);
*Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1069–70 (Cal. Ct. App. 2011) (same); *Toho-Towa Co. v.
Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1100 (Cal. Ct. App. 2013) (same); *McClellan
v. Northridge Park Townhome Owners Ass'n, Inc.*, 89 Cal. App. 4th 746, 749 (Cal. Ct. App. 2001)
(plaintiff-contractor could add entity as judgment-debtor under successor liability theory); *Prompt
Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1177 (C.D. Cal. 2018) (veil piercing allowed
where a tax-evader set up "countless corporations" to evade his creditors including the IRS).
Here, no judgment has been entered against Pirate Monitor Ltd. or Mr. Csupo, and there is no
allegation that Mr. Csupo used Pirate Monitor Ltd. to evade obligations to Defendants.

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S REPLY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

"fraudulent" activities alleged are the 1,975 inaccurate takedown notices submitted during October and November 2019, a time period in which it is undisputed Pirate Monitor Ltd. was dormant. (Opp. at 8). It is likewise undisputed that Pirate Monitor Ltd. legitimately acquired the rights to certain MegaFilm works and sued Defendants based on copyright infringement of those works, none of which were implicated in the prior "fraud". (Opp. at 8). If there was a "larger scheme to obtain Content ID by fraud," Defendants have not alleged that Pirate Monitor Ltd. did anything fraudulent, or that Mr. Csupo did anything fraudulent while owning Pirate Monitor Ltd.

At bottom, Defendants concede that Pirate Monitor Ltd. was not involved in the alleged conduct at issue and present no evidence, despite extensive discovery, to meet their heavy burden to establish that reverse veil-piercing is appropriate. Thus, Rule 56(c) mandates entry of summary judgment dismissing Pirate Monitor Ltd. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## V.       MR. CSUPO CANNOT BE HELD LIABLE AS A MATTER OF LAW.

### A.       Mr. Csupo cannot be held directly liable based on California agency law.

On the undisputed record, Mr. Csupo cannot be held liable for the actions of others in sending the takedown notices at issue. *First*, under traditional agency principles, Mr. Csupo, as IPLLC's owner, cannot be held personally liable for the purported wrongs committed by IPLLC's agents. (Mot. at 16-17) (collecting cases). *Second*, Mr. Holman and his team were lawful sub-agents of MegaFilm, and thus neither IPLLC nor Mr. Csupo can be held liable for their acts under California law. (Mot. at 17) (citing Cal. Civ. Code § 2351 and collecting cases).[5]

Defendants do not dispute that Mr. Csupo cannot be liable for the actions of IPLLC's agents or MegaFilm's subagents. Defendants instead concoct a new theory: that Mr. Csupo, and not IPLLC, was MegaFilm's agent and the allegedly wrongful conduct was performed by Mr. Csupo's agents, not IPLLC's agents. (Opp. at 14-15). The problem with this theory, which conveniently attempts to erase IPLLC's central role, is that it is refuted by the undisputed factual

---

[5] Defendants' argument that Section 2351 "does not relieve IPLLC of responsibility" (Opp. at 16) is at odds with the statutory text. Once the original agent (IPLLC) delegates to the sub-agent (Holman), as occurred here, "the original agent [IPLLC] is not responsible to third persons for the acts of the sub-agent [Holman]." Cal. Civ. Code § 2351 (emphasis added). In any event, the point is moot since Defendants never pleaded a cause of action against IPLLC.

1  record and contradicts other portions of Defendants' Opposition.  First, as Defendants concede,

2  MegaFilm contracted with IPLLC—and not Mr. Csupo—to enforce its rights in certain films.

3  (Opp. at 3).  Second, again as Defendants concede, MegaFilm authorized IPLLC—and not Mr.

4  Csupo—to delegate authority, and IPLLC did in fact delegate authority to Mr. Holman, Mr. Khan,

5  and others.  (Opp. at 6) ("MegaFilm authorized IPLLC to upload clips of its films and to delegate

6  that authority to others; and IPLLC delegated the authority to Khan."); (Opp. at 12) (stating that

7  Mr. Khan uploaded all 1,975 videos at issue).  Third, it is further undisputed that the contract with

8  MegaFilm was entered into by IPLLC, not Mr. Csupo personally, so in delegating authority Mr.

9  Csupo was acting on behalf of IPLLC, not himself. (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract;

10  Ex. 7 and Ex. 8—4/03/2019 email from Csupo to YouTube).[6]

11        To support this new theory, Defendants twist the record.  First, they claim that "Csupó

12  admits that he **_personally_** 'gave permission to Mr. Holman and his agents to send in takedown

13  notices on behalf of IPLLC and its client MegaFilm kft.'"  (Opp. at 14) (emphasis added) (quoting

14  Mot. at 2).  This supposed admission comes from Counterclaim-Defendants' Motion, but

15  Defendants curiously omitted a key part of the sentence: "**_Acting on behalf of IPLLC_**, Mr. Csupo

16  gave permission to Mr. Holman and his agents to send in takedown notices on behalf of IPLLC

17  and its client MegaFilm kft." (Mot. at 2) (emphasis added).  Mr. Csupo only gave permission to

18  Mr. Holman and his agents to submit takedown notices while _acting on behalf of IPLLC_.

19        Next, Defendants' claim that Csupo was MegaFilm's agent (Opp. at 14) is simply

20  inaccurate.  The contract between IPLLC and MegaFilm was explicit: IPLLC—and not Mr.

21  Csupo—was MegaFilm's agent.  (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract).  It also states

22  that Mr. Csupo's role under the contract was as a representative of IPLLC and not MegaFilm.

23  (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract).  While Mr. Csupo was authorized to submit

24  takedown notices for MegaFilm's works, he only had authority to do so by virtue of the IPLLC-

25

26        _____

27        [6] The numbered exhibits cited herein refer to the exhibits attached to the Declaration of
   Randall P. Ewing, Jr. in support of the Motion, ECF No. 260-2.  The lettered exhibits are attached
   to the Declaration of Randall P. Ewing, Jr. filed in support of this Reply.

28

MegaFilm contract that made IPLLC—and not Mr. Csupo—MegaFilm's agent.[7]

Finally, Defendants note that the "takedown notices identify 'Gábor Csupó,' not IPLLC, as the claimant submitting the notices on MegaFilm's behalf, and they contain Csupó's personal information." (Opp. at 15). For starters, the use of Mr. Csupo's name in a takedown notice does not alter the agency relationship between IPLLC and MegaFilm. That relationship was governed by the IPLLC-MegaFilm contract. Defendants also cannot credibly claim that they did not know IPLLC was MegaFilm's agent, as Mr. Csupo sent YouTube a copy of this contract in April 2019. (Ex. 7 and Ex. 8—4/03/2019 email from Csupo to YouTube). In any event, it is unsurprising that the takedown notices were submitted under the name of Mr. Csupo and not under the company name IPLLC because that is precisely what YouTube requires. (Ex. B, YouTube Help, "Requirements for copyright infringement notifications: Videos", *available at*: https://support.google.com/youtube/answer/6005900?hl=en&ref_topic=9282363 (last accessed March 31, 2023) ("the copyright owner or authorized agent may enter their full legal name as their signature at the bottom of the request. *A full legal name should be a first and last name, not a company name*.") (emphasis added)).

In sum, there is no evidence that Mr. Csupo acted separately from IPLLC to enforce MegaFilm's copyrights and no evidence that any persons who submitted takedown notices were Mr. Csupo's personal agents. As such, Defendants' newly-found theory that Mr. Csupo is liable for the actions of *his* agents (Opp. at 14-15) should be rejected.

**B.**     **Mr. Csupo was not directly involved in any wrongdoing and thus cannot be held personally liable.**

Defendants advance two arguments to manufacture Csupo's direct involvement in the inaccurate takedowns: (1) that Mr. Csupo's name and other identifying information were included on the takedown notices (Opp. at 11); and (2) "in rare moments of candor, Csupó admitted

---

[7] As IPLLC and/or MegaFilm were the principals—and not Mr. Csupo personally—Defendants' arguments and cases that Mr. Csupo "is personally liable for the torts of [his] agent" (Opp. at 14) (collecting cases) are inapplicable. Mr. Csupo was not the principal and had no agents. (Ex. A, Interrogatory Responses, Response to Interrogatory No. 1) ("Csupó responds that no other individual or entity performed services on his behalf in his personal capacity in connection with matters set forth in the Amended Counterclaims.").

sending them" (Opp. at 11). Neither stand up to scrutiny. As noted above, that the takedown notices include Mr. Csupo's name certainly does not establish that he personally submitted the takedown notices. Defendants' Opposition undermines this point as it concedes that submission of takedown notices "was up to Holman and his team" (Opp. at 3)—not Mr. Csupo. Next, Defendants' claim that Csupo admitted sending takedown notices at his deposition is misleading at best. The portion of the deposition transcript cited in the Opposition was about takedown notices submitted in April 2019—months before any alleged wrongdoing. (Kramer Decl. Ex. 29, Csupo Dep. 119:1-120:9). No evidence suggests Mr. Csupo sent in any of the inaccurate takedown notices, and thus, he cannot be held personally liable. *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595, 463 P.2d 770, 775 (Cal. 1970) ("Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done.").[8]

Even if Defendants' unsupported version of events were true (Opp. at 15) and Mr. Csupo directed or had knowledge of the submission of takedown notices (which he did not), he still could not be directly liable since the conduct at issue did not cause any physical injury. *Casey v. Olson*, 2010 WL 3516930, at *7 (S.D. Cal. Sept. 8, 2010) ("California courts have limited the imposition of liability on directors for their active participation in tortious acts to those resulting in physical injury.").

In a pair of California Supreme Court cases, the court explained that under California law, "'[l]iability imposed upon agents for active participation in tortious acts of the principal have been mostly restricted to cases involving *physical injury, not pecuniary harm*, to third persons[.]'" *Frances T. v. Vill. Green Owners Assn.*, 42 Cal. 3d 490, 505 (Cal. 1986) (quoting *Haidinger-Hayes, Inc.*, 1 Cal. 3d at 595) (emphasis added). The only actual damages identified by Defendants are pecuniary, i.e., the cost of processing takedown notices and related investigation

---

[8] All of the arguments in Section II of Defendants' Opposition ("CSUPÓ IS RESPONSIBLE FOR ACTING ON BEHALF OF OTHERS") are based on a false premise: that Mr. Csupo personally submitted the 1,975 fraudulent takedowns. (Opp. at 13). This premise is refuted by Defendants' own Opposition, which concedes that Mr. Holman and his team were responsible for submitting takedown notices. (Opp. at 3).

conducted by Defendants' employees, which Defendants estimate to total ███████. (Ex. 13—Counterclaimants' Resp. to Interrog. 5); (Ex. 14—Defs.' Am. Disclosures at 6).

Thus, even if there were evidence that Mr. Csupo actively participated in any of IPLLC's allegedly wrongful conduct (there is none), he still cannot be held liable under California law.[9] *Woodard v. Labrada*, 2021 WL 4499184, at *29 (C.D. Cal. Aug. 31, 2021) ("The Court finds that Plaintiffs fail to raise a triable issue as to Mr. Labrada's personal liability for LBN's alleged tortious conduct. While Plaintiffs have submitted evidence of Mr. Labrada's personal participation in the marketing, sale, and advertisement of the Labrada Products, there is no evidence that Woodard suffered personal harm or property damage as a result of the allegedly false label claims."); *Water, Inc. v. Everpure, Inc.*, 2009 WL 10670419, at *8–9 (C.D. Cal. Oct. 28, 2009) (dismissing individual defendants from suit where plaintiff alleged only economic losses).[10]

### C. Mr. Csupo cannot be held liable for actions of IPLLC under an alter-ego theory because Defendants did not allege any misconduct by IPLLC.

Defendants' argument that Mr. Csupo can be held liable for the actions of IPLLC (Opp. at 16-18) only works if Mr. Csupo and IPLLC are found to be alter-egos and this Court pierces IPLLC's corporate veil. But there's a major problem with this argument: despite filing and re-

---

[9] Defendants' cases (Opp. at 13-15), which by and large are personal injury actions, do not support imposition of liability on a corporate officer based on wholly pecuniary loss. *Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 692 (Cal. Ct. App. 2018) (wrongful death); *Whitlow v. Rideout Mem'l Hosp.*, 237 Cal. App. 4th 631, 635 (Cal. Ct. App. 2015) (same); *Karsant Fam. Ltd. P'ship v. Allstate Ins. Co.*, 2009 WL 188036, at *9 (N.D. Cal. Jan. 27, 2009) (intentional infliction of emotional distress); *Shultz Steel Co. v. Hartford Accident & Indem. Co.*, 187 Cal. App. 3d 513, 519 (Cal. Ct. App. 1986) (personal injury); *Davis v. Wal-Mart Stores Inc.*, 2017 WL 499595, at *3 (C.D. Cal. Feb. 6, 2017) (same); *Baisley v. Henry*, 55 Cal. App. 760, 763 (Cal. Ct. App. 1921) (same).

[10] *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379-80 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Apr. 7, 2000) does not support a different conclusion. There, a California appellate court held that corporate officers of a corporation could be held liable where they actively participated in misappropriation of trade secrets under the Uniform Trade Secrets Act. No evidence supports Defendants' speculation that Mr. Csupo actually submitted the inaccurate takedown notices at issue. In any event, the California Supreme Court has never deviated from the long-standing rule from *Frances T.* and *Haidinger-Hayes* and has limited *Kadisha*'s holding. *Cadence Design Sys., Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 225 (Cal. 2002) ("[Kadisha] holds only that there may be separate claims of continuing misappropriation among *different* defendants, with differing dates of accrual and types of tortious conduct—some defendants liable for initial misappropriation of the trade secret, others only for later continuing use.") (emphasis in original).

filing their counterclaims on three occasions (*see* ECF Nos. 34, 60, 160), Defendants never mentioned IPLLC, let alone alleged an alter-ego relationship between Mr. Csupo and IPLLC. Moreover, none of Defendants' cases (Opp. at 16-18) allow a court to hold an individual liable through veil piercing of an unnamed defendant and without a preexisting judgment. Defendants' unalleged and unsupported argument should thus be rejected. *Lorbeer Enterprises, LP v. Liberty Mut. Ins. Co.*, 2019 WL 4284514, at *2 (C.D. Cal. May 9, 2019) ("[D]espite *arguing* in its brief that facts exist to support a theory of alter ego liability, Plaintiff does not *plead* the elements of that theory, much less sufficient supporting facts. Such outside-the-pleadings arguments are not enough to survive a motion to dismiss.") (emphasis in original); *Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*, 2014 WL 12577084, at *3 (C.D. Cal. Dec. 4, 2014) (dismissing complaint and holding that "conclusory statements of theoretical corporate relationships between [defendants], without further factual allegations, do not suffice").

Defendants knew about IPLLC's role in submitting takedown notices on behalf of MegaFilm prior to filing their counterclaims. On April 3, 2019—i.e., more than a year before Defendants first filed their Initial Counterclaims—Mr. Csupo sent a copy of the IPLLC-MegaFilm contract to YouTube. (Ex. 7 and Ex. 8—4/03/2019 email from Csupo to YouTube). This contract states that IPLLC was authorized to submit takedown notices on behalf of MegaFilm on the YouTube platform. (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract, ¶1.3) ("The Parties agree, on the basis of the foregoing, that the Agent [IPLLC] shall act on behalf of the Principal [MegaFilm] against the operator of the YouTube portal in order to enforce the copyright of the Principal in the Works and the Parts of Works as set out in this Contract.").

Extensive discovery in this case left no doubt of IPLLC's central role. On June 24, 2021— i.e., over a year before Defendants re-filed their Amended Counterclaims—Mr. Csupo served an interrogatory response on Defendants stating that the entity referenced in the Counterclaim Answer responsible for sending the takedown notices was IPLLC. (Ex. A, Interrogatory Responses, Response to Interrogatory No. 3 ("Csupó responds that the 'entity' referenced is Intellectual Property LLC.")).

Further, before Defendants re-filed their Amended Counterclaims, IPLLC, Mr. Csupo, and Pirate Monitor Ltd. completed productions of thousands of pages of documents, many of which contained details about the relationship between IPLLC and MegaFilm. (E.g., Ex. 5 and Ex. 6— MegaFilm-IPLLC Contract).[11] If that was not enough, Defendants deposed Mr. Csupo on July 5, 2022—over a month before Defendants re-filed their Amended Counterclaims—and questioned him extensively on IPLLC's role enforcing MegaFilm's copyrights on YouTube.[12]

The most damning evidence of Defendants' knowledge of IPLLC is Defendants' own statements made in their motion to compel IPLLC's documents. In that motion, filed two months before the re-filed Amended Counterclaims, Defendants conceded that they knew Mr. Csupo claimed "IPLLC, rather than Pirate Monitor Ltd. [] was responsible for the video uploads and takedowns[,]" *see YouTube, LLC v. Intellectual Property LLC*, No. 23-cv-1100-JD, ECF No. 2 (N.D. Cal.), at 2-3, 11; that IPLLC had already produced documents, including documents concerning the nature of IPLLC's business, *id.* at 7 n.2; and that the takedown notices at issue "listed an email address of usintellectualpropertyllc@gmail.com[,]" *id.* at 6.

There is simply no excuse for Defendants' failure to name IPLLC in their re-filed Amended Counterclaims. At this juncture just months before trial, Defendants cannot now allege, in opposition to summary judgment, an alter-ego relationship between IPLLC and Mr. Csupo. *Lorbeer Enterprises*, 2019 WL 4284514, at *2; *Cf. Dyke v. Lions Gate Ent. Inc.*, 2014 WL 12586242, at *3 (C.D. Cal. July 14, 2014) (denying motion to amend complaint where "[m]ost of the facts that [plaintiff] obtained through deposition testimony, and which he believes are needed to make alter-ego allegations, either were known to him or could have been known to him with reasonable diligence prior to the deadline to amend pleadings").

---

[11] While Defendants insinuate that Mr. Csupo limited his production of relevant documents (Opp. at 19), Mr. Csupo produced *all* his responsive documents, identifying which parties' discovery requests the documents were produced in response to.

[12] Although IPLLC was not referenced in Plaintiffs' initial disclosures, Mr. Csupo informed Defendants of IPLLC's involvement early in discovery, including in the above-cited interrogatory responses. Supplementation under Rule 26(e)(1)(A) "is not mandatory 'if the additional or corrective information has [ ] been made known to the other parties during the discovery process or in writing'". *Nuance Commc'ns, Inc. v. ABBYY Software House*, 2012 WL 2838431, at *1 (N.D. Cal. July 10, 2012) (quoting Fed. R. Civ. Pro. 26(e)(1)(A)).

Rule 56(d) cannot save Defendants. While courts may provide limited relief to a party that "cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), the "burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment," *Dyke v. Lions Gate Ent. Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001). The party "also must demonstrate that he or she acted diligently to pursue discovery in the past." *Arroyo v. Int'l Paper*, 611 F. Supp. 3d 824, 831 (N.D. Cal. 2020).

Defendants' efforts to obtain more documents from IPLLC has been anything but diligent. After serving a subpoena on IPLLC on June 2, 2021, Defendants waited over a year to file a motion to compel on June 8, 2022, and let their motion sit on the docket for nearly eight months before pursuing their request for a hearing on February 7, 2023. *See YouTube, LLC v. Intellectual Property LLC*, No. 23-cv-1100-JD, ECF Nos. 2, 14 (N.D. Cal.). Defendants' long delay is reason enough to reject their Rule 56(d) argument. *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986) (party opposing summary judgment "cannot complain if it fails to pursue discovery diligently before summary judgment."); *In re Fu*, 739 F. App'x 432, 434-35 (9th Cir. 2018) ("It is not an abuse of discretion to deny a Rule 56(d) motion when the moving party failed to pursue discovery diligently earlier in the litigation.").

Additionally, Defendants have not shown how the discovery sought from IPLLC could advance their claim against Csupo when (1) he has already produced all responsive documents that he sent or received; (2) there are no disputed facts concerning the opening of YouTube accounts, uploading of videos, or submission of takedown notices; and (3) the only issues that remain in dispute are purely legal principles of vicarious and alter ego liability.

## VI. DEFENDANTS LACK STANDING TO SEEK INJUNCTIVE RELIEF.

Defendants' Opposition fails to demonstrate that "the threatened injury is 'certainly impending,' or that there is a 'substantial risk that the harm will occur.'" *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118 (9th Cir. 2022). Defendants have failed to state a single fact showing that Mr. Csupo or Pirate Monitor Ltd. will commit the alleged wrongs in the future. Defendants point *only* to past actions by Mr. Csupo and Pirate Monitor, which are inadequate to

establish standing.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 107 (1983) (allegations of past wrongs were "an insufficient basis to provide a federal court with jurisdiction" in claims for injunctive relief).  A mere "possibility of future injury" is simply "too weak to support standing." *Scott v. Pasadena Unified School Dist.*, 306 F.3d 646, 656 (9th Cir. 2002).

Defendants' citation to *Armstrong v. Davis* (Opp. at 22–23), a case in which plaintiffs sought injunctive relief against a government agency, is inapposite.  The *Armstrong* court explained that a plaintiff seeking prospective injunctive relief must demonstrate "that he is *realistically* threatened by a *repetition* of [the violation]."  275 F.3d 849, 861 (9th Cir. 2001) (citations omitted, first italics added).  To do so, "a plaintiff may show that the defendant had, at any time of the injury, a written policy and that the injury stems from that policy" or "that the harm is part of a pattern of officially sanctioned . . . behavior, violative of the plaintiffs' [federal] rights."  *Id.* at 861 (citations omitted).  Here, however, there is no evidence of a policy threatening a repetition of conduct, nor is there a "pattern of officially sanctioned . . . behavior." *Id.*

Similarly, Defendants' reliance upon *Melendres v. Arpaio* (Opp. at 23) is misplaced.  In *Melendres*, a class of Latino motorists alleging persistent Fourth Amendment violations sought injunctive relief against a county sheriff's office.  695 F.3d 990, 998 (9th Cir. 2012).  The court found an injunction appropriate based on defendants' express statements demonstrating an *ongoing* policy of detaining individuals solely on reasonable suspicion that they were not legally in the United States, in violation of their Fourth Amendment rights.  *Id.*  Defendants have made no comparable showing that Mr. Csupo or Pirate Monitor Ltd. is engaged in such an ongoing pattern or practice of wrongful conduct.[13]

## CONCLUSION

Counterclaim Defendants respectfully request that this Court grant the Motion.

---

[13] Defendants also rely upon *Oracle USA v. Rimini St., Inc.* for the proposition that cessation of the challenged conduct does not preclude courts from entering a permanent injunction.  (Opp. at 22 n.9.)  In *Oracle*, there were a number of factors demonstrating a risk of future injury to plaintiffs despite assertions to the contrary, including that "Oracle and Rimini were direct competitors," Remini was able to gain "increasing market share by offering lower prices for its services than Oracle," and "Rimini's infringing conduct saved the company time and money." 783 F. App'x 707, 710 (9th Cir. 2019).  These factors have no bearing on this action.

Dated: March 31, 2023                          Respectfully submitted,

/s/ Randall P. Ewing
Randall P. Ewing, Jr. (*pro hac vice*)
*rewing@koreintillery.com*
George A. Zelcs (*pro hac vice*)
*gzelcs@koreintillery.com*
Ryan Z. Cortazar (*pro hac vice*)
*rcortazar@koreintillery.com*
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe (*pro hac vice*)
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
*pkorologos@bsfllp.com*
Joanna Wright (*pro hac vice*)
*jwright@bsfllp.com*
Jeffrey Waldron (*pro hac vice*)
*jwaldron@bsfllp.com*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Counterclaim-*
*Defendants Pirate Monitor Ltd. and Gabor Csupo*

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S REPLY
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT