1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated, | CASE NO.:  3:20-cv-04423-JD |

12

**JOINT SUBMISSION REGARDING DEFENDANTS' SEALING REQUESTS**

13

Plaintiffs,

14

Judge:  Hon. James Donato

15

v.

16

YOUTUBE, LLC and GOOGLE LLC,

17

Defendants

18

YOUTUBE, LLC and GOOGLE LLC,

19

Counterclaimants,

20

21

v.

22

PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,

23

Counterclaim Defendants.

24

25

26

27

28

1    Pursuant to Civil Local Rules 7-11 and 79-5 and this Court's Standing Order for Civil

2  Cases,[1] Defendants-Counterclaimants YouTube, LLC and Google LLC ("YouTube") hereby

3  move for an order sealing limited portions of documents submitted in connection with the

4  pending non-dispositive and dispositive motions in this case. Plaintiffs do not seek to seal any

5  documents and oppose Defendants' motion in part. A chart summarizing Plaintiffs' oppositions

6  and YouTube's responses is attached at the end of the joint submission.

7  **YouTube's Position:**

8    Eight separate motions are currently pending before this Court, each with opening,

9  opposition, and reply briefs and their own supporting papers: two summary judgment motions

10  (one filed by Plaintiffs (Dkt. No. 265) and the other filed by Counterclaim Defendants Pirate

11  Monitor Ltd. and Gabor Csupo (Dkt. No. 260)); Plaintiffs' motion for class certification (Dkt.

12  No. 245); and the Parties' respective motions to exclude expert testimony (Dkt. Nos. 254, 256,

13  258, 262, 264). Across the several hundred documents and exhibits filed in connection with

14  those motions, Plaintiffs submitted nearly two thousand pages of confidential documents and

15  testimony about YouTube's technology and operations—very little of which is cited in or

16  relevant to the briefing (*see, e.g.*, Exs. 17 & 37 (1 sentence in a 24-page engineering document

17  cited in Dkt. Nos. 245 & 278); Ex. 38 (a 35-page engineering presentation cited generally in Dkt.

18  No. 278 to show that it is technical)). From this large volume of confidential materials, YouTube

19  seeks to seal only 2 documents in toto, and very limited, extremely sensitive excerpts from

20  others.

21    **A. YouTube's Sealing Requests Relating to Plaintiffs' and Counterclaim Defendants'
      Motions for Summary Judgment**

22

23    A document submitted with a dispositive motion, like Plaintiffs' Motion for Partial

24  Summary Judgment (Dkt. No. 265) and Counterclaim Defendants Pirate Monitor Ltd. and Gabor

25

26    [1] By agreement of the parties and pursuant to ¶ 31 of Your Honor's Standing Order for Civil
    Cases, the Parties submit a combined administrative motion to seal, which supersedes the interim
27  administrative motions related to Plaintiffs' Motion for Class Certification (Dkt. Nos. 243, 267,
    271), Plaintiffs' Motion for Partial Summary Judgment (Dkt. Nos. 263, 282, 291), Counterclaim
28  Defendants' Motion for Summary Judgment (Dkt. Nos. 259, 295, 298), and the *Daubert* motions
    filed by the parties (Dkt. Nos. 253, 255, 257, 261, 273, 276, 279, 285, 287, 289).

1   Csupo's Motion for Summary Judgment (Dkt. No. 260), may be filed under seal where there are

2   "compelling reasons" to do so. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-

3   82 (9th Cir. 2006). "In general, 'compelling reasons' sufficient to outweigh the public's interest

4   in disclosure and justify sealing court records" exist when necessary to protect a party's "trade

5   secrets." *See id.* at 1179 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Put

6   differently, "the common law right of inspection has bowed before the power of a court to insure

7   that its records are not used … as sources of business information that might harm a litigant's

8   competitive standing." *FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan 3. 2019)

9   (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)). This includes "sensitive

10  business information" about "non-public business practices." *Google Inc. v. Eolas Techs. Inc.*,

11  2016 WL 9243337, at *1-2 (N.D. Cal. Mar. 22, 2016).

12         In connection with the pending summary judgment motions, YouTube seeks to seal only:

13  (1) specific technical information concerning the operation of YouTube's Copyright Match Tool

14  (*see* Dkt. Nos. 265, 265-8); (2) specific figures revealing or purporting to reveal the number of

15  public and private videos in YouTube's corpus (and the number of those videos that are

16  monetized, blocked, or tracked through Content ID) (*see* Dkt. Nos. 260, 260-20; 265, 265-5,

17  265-6; 292); and (3) sensitive personally identifiable information (physical addresses) of third

18  parties (*see* Dkt. Nos. 296-43, 296-44, 296-45). Consistent with the Local Rules, YouTube's

19  request to seal is narrowly tailored to protect only competitively sensitive, confidential

20  information. *See* Civil L.R. 79-5(a), (c).

21         *First*, YouTube seeks to seal limited technical information about how its Copyright

22  Match Tool functions—namely, the tool's specific threshold for the detection of matches. *See*

23  Declaration of Qifan Huang ("Huang Decl.") Exs. 52 & 55. That threshold, which is expressed

24  as the percentage of one video that must be detected in a second video in order for those videos

25  to be identified as potential matches and surfaced for review in the Copyright Match Tool, is

26  highly sensitive, confidential commercial information. Zhu Decl. at 3-5. YouTube has developed

27  its copyright management tools, including the Copyright Match Tool, over the course of many

28  years and at significant expense. *Id.* The public disclosure of this information would reveal to

1    competitors how the Copyright Match Tool technically functions and enable them to mimic

2    YouTube's proprietary technology without having to expend the same resources. *Id.* Given the

3    risk of competitive harm, courts frequently find that compelling reasons exist to seal technical

4    information about how a party's proprietary technology functions. *See, e.g.*, *DZ Rsrv. et al. v.*

5    *Meta Platforms, Inc.*, ("*DZ Rsrv.*"), No. 3:18-cv-04978-JD, Dkt. No. 350 (N.D. Cal. Dec. 3,

6    2021) (Donato., J.) (finding "compelling reasons" to seal information regarding "technical

7    processes and functionalities of Meta's products and systems"); *Finjan, Inc. v. Cisco Sys. Inc.*,

8    2019 WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019) (same for material that "reveals the

9    identification, organization, and/or operation of Cisco's proprietary products"); *Weeks v. Google*

10   *LLC*, 2019 U.S. Dist. LEXIS 102709, at *3 (N.D. Cal. May 7, 2019) (same for materials that

11   included "technical details" and "composition and design of technology").

12         Sealing is also warranted here since public disclosure of this precise threshold for

13   detection would enable bad actors to abuse YouTube's systems. *See, e.g.*, *DZ Rsrv.*, Dkt. No.

14   325-5 (N.D. Cal. filed July 9, 2021) (requesting sealing of "details about how Facebook detects,

15   restricts, and enforces against different types of fake and duplicate accounts"), *sealing granted*

16   *by* Dkt. No. 350; *Davis v. Pinterest, Inc.*, 2022 WL 4472067, at *2 (N.D. Cal. Sept. 26, 2022)

17   (sealing "information about Pinterest's repeat infringer and takedown policies under the Digital

18   Millennium Copyright Act, which could lead to third-party abuse or competitive harm if

19   disclosed publicly"); *Adtrader, Inc. v. Google LLC*, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24,

20   2020) (compelling reasons standard met where disclosure of information could reveal to "bad

21   actors the capabilities of [defendant's] systems" and make it easier for them to "circumvent"

22   those systems). In particular, disclosure of this information would allow unscrupulous

23   individuals to upload content that is designed to circumvent YouTube's systems and avoid

24   detection by the Copyright Match Tool. Zhu Decl. at 3-5. YouTube further submits that the

25   public does not have a meaningful interest in this specific threshold figure, which appears only in

26   a footnote of Plaintiffs' brief (and the deposition transcript cited therein). *See* Dkt. No. 265 at 4

27   n.4 (citing Dkt. No. 263-6).

28

1    *Second*, YouTube seeks to seal specific highly sensitive statistics concerning the size of

2    the corpus of videos on its service—the number of public and private videos for each year

3    between 2017 and 2020; the number of those videos monetized, blocked, or tracked through

4    YouTube's Content ID system; and percentages calculated from the same. *See* Huang Exs. 52-

5    54, 57-59. Such granular data points concerning the size and growth of YouTube's platform (and

6    use of its proprietary Content ID system) are some of the most closely guarded secrets at the

7    company. Disclosure of this information may allow competitors to estimate the scale of

8    YouTube's systems and resourcing costs, which they may use to improve upon their own

9    systems and unfairly compete based on the knowledge of those resourcing costs. *See* Zhu Decl.

10   at 1-3. As YouTube's counsel explained, disclosure of specific year-over-year data about

11   YouTube's scale and use may significantly impact YouTube and Google's business even beyond

12   this. Simply put, "it moves markets." Dkt. No. 214 (Dec. 15, 2022 Hearing Tr.) 21:13; *see also*

13   Zhu Decl. at 1-3. Disclosure may also improperly affect YouTube's business by painting a

14   simplistic and grossly inaccurate picture of the performance/growth of the YouTube platform.

15   *See* Zhu Decl. at 1-3. Given the potential for such harm, courts have frequently found that data

16   about a product's scale and user base warrants sealing. *See Adtrader, Inc. v. Google LLC*, 2020

17   U.S. Dist. LEXIS 206823, at *5-6 (N.D. Cal. Feb. 24, 2020) (finding "compelling reasons" to

18   seal "information about the operation and scale of Google's advertising products"); *Cont'l Auto.*

19   *Sys., Inc. v. Avanci, LLC*, 2019 WL 6612012, at *4 (N.D. Cal. Dec. 5, 2019) (finding

20   "compelling reasons" to seal "the number of customers using Plaintiff's products"); *Huawei*

21   *Techs., Co. v. Samsung Elecs. Co.*, 2018 WL 1784065, at *2 (N.D. Cal. Apr. 13, 2018) (finding

22   "compelling reasons" to seal metrics regarding "production capacity"), *remanded on other*

23   *grounds by Huawei Techs. Co. v. Samsung Elecs. Co.*, 757 F. App'x 1011 (Fed. Cir. 2019); *see*

24   *also United States v. Chen*, 2022 WL 2789557, at *2 (N.D. Cal. July 14, 2022) (finding

25   "compelling reasons" to seal information that could be used to ascertain "sales volumes").

26       *Finally*, in consideration of the privacy interests of third parties, YouTube also seeks to

27   seal the physical addresses of individuals identified in a limited number of documents. *See*

28   Huang Exs. 59-61. The public does not have a meaningful interest in obtaining the personally

JOINT SUBMISSION REGARDING                    -4-                    CASE NO. 3:20-cv-04423-JD
DEFENDANTS' SEALING REQUESTS

1   identifiable information of non-party individuals, which is unrelated to resolution of the pending

2   summary judgment motions, and the public disclosure of such information could harm

3   individuals' privacy interests. Courts regularly grant requests to seal such personally identifiable

4   information. *See, e.g.*, *Am. Auto. Ass'n of N. Cal., Nev. & Utah v. Gen. Motors LLC*, 2019 WL

5   1206748, at *2 (N.D. Cal. Mar. 14, 2019) (finding "compelling reasons" to seal "personally

6   identifiable information of third-party individuals, including . . . addresses").

7   **B. YouTube's Sealing Requests Relating to the Parties' *Daubert* Motions and Plaintiffs' Class Certification Motion**

8

9   Documents filed in connection with a non-dispositive matter, like the parties' respective

10   motions to exclude expert testimony (Dkt. Nos. 254, 256, 258, 262, 264) and Plaintiffs' motion

11   for class certification (Dkt. No. 245), may be sealed where there is "good cause" to do so. *See,*

12   *e.g., Kamakana*, 447 F.3d at 1180; *Brickman v. Fitbit, Inc.,* 2017 U.S. Dist. LEXIS 123663, at

13   *3-4 (N.D. Cal. Aug. 4, 2017) (Donato, J.) (applying good cause standard to class certification

14   motion); *Ochoa v. McDonald's Corp.,* 2015 WL 3545921, at *1 (N.D. Cal. June 5, 2015)

15   (Donato, J.) (same); *DZ Rsrv.*, Dkt. No. 350 (applying good cause standard to documents

16   "related primarily to [plaintiff's] motion for class certification and various motions to exclude

17   expert witnesses, which are not dispositive proceedings"). Under that standard, materials may be

18   sealed "so long as the party seeking sealing makes a 'particularized showing' under the 'good

19   cause' standard of Federal Rule of Civil Procedure 26(c)." *Brickman,* 2017 U.S. Dist. LEXIS

20   123663 at *3 (citations omitted).[2]

21   YouTube's accompanying declarations (of Zhu, Wu, Agrawal, Suk, and Diab) detail the

22   specific grounds for each of YouTube's sealing requests, but the requests fall into the following

23   categories:

24   **Category 1:** Technical engineering documents that reveal highly sensitive confidential

25   information that, if disclosed, would bring competitive harm to Defendants and allow potential

26

27   ───────────────

28   [2] In any event, YouTube's sealing requests and the evidence supporting them would also satisfy the "compelling reasons" standard for dispositive motions. *See Kamakana*, 447 F.3d at 1180.

JOINT SUBMISSION REGARDING                          -5-                          CASE NO. 3:20-CV-04423-JD
DEFENDANTS' SEALING REQUESTS

1  competitors an unfair advantage. *See* Wu Decl. Examples of this category of information

2  include: Huang Ex. 13 (internal YouTube engineering presentation entitled "Watch Next Eng

3  Review" that reveals technical details of YouTube's recommendation system) and Exs. 17 & 37

4  (internal page from YouTube Developer's Handbook entitled "Life of a YouTube upload" that

5  discusses YouTube's technical infrastructure and the design of various system components).

6  Sealing of the information falling in this category is warranted. *See, e.g., DZ Rsrv.*, Dkt. No. 350

7  (sealing information regarding "technical processes and functionalities of Meta's products and

8  systems, . . . internal analyses, modeling, and assessments"); *Carnegie Mellon Univ. v. LSI Corp.*

9  *et al.,* No. 3:18-cv-04571-JD, Dkt. No. 221 (N.D. Cal. Sept. 29, 2021) (Donato, J.) (sealing

10  "proprietary technical information" regarding products); *see also Finjan*, 2019 WL 4168952 at

11  *2 (sealing material that "reveals the identification, organization, and/or operation of Cisco's

12  proprietary products"); *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2017 WL 11527607, at *2

13  (N.D. Cal. Dec. 27, 2017) (same for "proprietary business information about the architecture of

14  [party's] technology").

15       **Category 2:** Product design, internal analyses, metrics, and statistics about Content ID,

16  YouTube search, and other YouTube functions that, if disclosed, may result in competitive harm

17  and invite abuse from malicious actors seeking to circumvent YouTube's systems. *See* Wu Decl.

18  & Zhu Decl. Examples of this category of information include: Huang Exs. 8, 32 & 34 (Expert

19  Report of Joseph M. Winograd, Ph.D. for Plaintiffs, which discloses minimum detection

20  thresholds for Content ID's matching functions and YouTube's Copyright Match Tool) and

21  Ex. 12 (internal YouTube product review presentation entitled "Watch Next Overview," which

22  showcases design logics underlying YouTube's recommendation system and statistical

23  assessments). As shown in the Wu Declaration, competitors who have access to this trade secret

24  information could use it to their advantage on product design and resource allocation. Sealing of

25  the information falling in this category is warranted. *See, e.g., DZ Rsrv.,* Dkt. No. 350 (sealing

26  information regarding "technical processes and functionalities of Meta's products and systems,

27  business strategies, . . . internal analyses, modeling, and assessments"); *see also Weeks*, 2019

28  U.S. Dist. LEXIS 102709 at *3 (sealing materials that included "Google's internal testing

1   processes, procedures, and confidential analyses; proprietary data; technical details and research

2   results; . . . [and] composition and design of technology"); *Pace Anti-Piracy, Inc. v. Inside*

3   *Secure*, 2018 WL 10517182, at *3 (N.D. Cal. Jan. 8, 2018) (sealing information regarding

4   "technical features of [defendant's] software").

5       **Category 3:** Operational policies and guidelines about YouTube's copyright

6   management tools, including details about YouTube's copyright policies and mechanisms to

7   counter abuse that, if disclosed, would allow third parties to circumvent these policies and tools.

8   *See* Zhu Decl. Examples of this category of information include: Huang Exs. 10 & 44

9   (YouTube's interrogatory response, which discusses the grouping logic of copyright strikes) and

10  Exs. 14-16 (internal policy documents that detail YouTube's methods and efforts of suspending

11  channels linked to bad actors). Sealing of the trade secrets falling into this category is warranted.

12  *See DZ Rsrv.*, Dkt. No. 325 (N.D. Cal. filed July 9, 2021) (requesting sealing of "details about

13  how Facebook detects, restricts, and enforces against different types of fake and duplicate

14  accounts"), *sealing granted by DZ Rsrv.,* Dkt. No. 350; *see also e.g.*, *Davis*, 2022 WL 4472067

15  at *2 (sealing "information about Pinterest's repeat infringer and takedown policies under the

16  Digital Millennium Copyright Act, which could lead to third-party abuse or competitive harm if

17  disclosed publicly"); *Kinsley v. Udemy, Inc.*, 2021 WL 1222489, at *7 (N.D. Cal. Mar. 31, 2021)

18  (granting motion to seal internal copyright policies); *Bohannon v. Facebook, Inc.*, 2019 WL

19  188671, at *5-6 (N.D. Cal. Jan. 14, 2019) (sealing "a list of factors [defendant] considers" as part

20  of an internal "customer assistance policy" because disclosure of such information would enable

21  users to exploit the policies and practices).

22      **Category 4:** Confidential financial information, including YouTube's revenues, costs,

23  and profit that, if disclosed, would cause competitive harm by damaging YouTube's standing

24  with its existing advertising partners and content creators and prejudicing its ability to negotiate

25  future license agreements. *See* Agrawal Decl. Examples of this category of information include:

26  Huang Exs. 9, 26 & 30 (November 17, 2022 Expert Report of Hal J. Singer, Ph.D. for Plaintiffs,

27  which lists monthly YouTube financial information from January 2017 to December 2020) and

28  Ex. 47 (December 29, 2022 Expert Rebuttal Report of Steven R. Peterson, Ph.D. for Defendants,

1    which calculates YouTube's incremental costs). Sealing of the information falling in this

2    category is warranted. *See, e.g., GoPro Hong Kong Ltd. v. 2b Trading, Inc.,* 2017 U.S. Dist.

3    LEXIS 27380, at *5-6 (N.D. Cal. Feb. 27, 2017) (Donato, J.) (sealing business information

4    including "forecasts" and "marketing expenditures"); *see also Sumotext Corp. v. Zoove, Inc.*,

5    2020 WL 836737, at *2 (N.D. Cal. Feb. 20, 2020) (sealing monthly financial information);

6    *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 2010622, at *2-8 (N.D. Cal. Apr. 30, 2018)

7    (sealing "financial information" and "financial data"); *Juicero, Inc. v. iTaste Co.*, 2017 WL

8    8294276, at *2 (N.D. Cal. June 28, 2017) (sealing "confidential financial and business

9    information").

10          **Category 5:** Specific pricing terms in YouTube's business contracts that, if disclosed,

11   would cause competitive harm by damaging YouTube's standing with its existing licensors,

12   prejudicing its ability to negotiate future license agreements, and allowing YouTube competitors

13   to benefit from the knowledge of YouTube's negotiation of these royalties to price their own

14   products. *See* Suk Decl. (Dkt. No. 194-2); Diab Decl. (Dkt. No. 194-5). The two documents

15   containing this category of information are Huang Ex. 21 (standard YouTube Sound Recording

16   and Audiovisual Content License, which contains revenue share terms) and Ex. 11 (publishing

17   licensing agreement between YouTube and Maria Schneider's publisher, which contains pricing

18   terms). Sealing of this information is warranted under this Court's past decisions. *See, e.g., CZ*

19   *Servs., Inc. v. Express Scripts Holding Co. et al.,* No. 3:18-cv-04217-JD, Dkt. No. 347 (N.D. Cal.

20   Aug. 21, 2020) (Donato, J.) (requesting sealing of pricing terms in contracts), *sealing granted by*

21   Order, Dkt. No. 379 (N.D. Cal. Aug. 31, 2020); *GoPro Hong Kong Ltd.,* 2017 U.S. Dist. LEXIS

22   27380 at *5 (sealing "pricing and payment terms"); *Open Text S.A. v. Box, Inc.,* 2014 WL

23   7368594, at *3 (N.D. Cal. Dec. 26, 2014) (Donato, J.) (granting sealing motions as to "sensitive

24   information like pricing terms, royalty rates, [and] minimum payment terms").

25          **Category 6:** Personally identifiable information of a YouTube employee and third-party

26   users that is irrelevant to the issues in dispute and if disclosed would intrude on their privacy. *See*

27   Wu Decl. & Zhu Decl. The three documents containing this information are Huang Ex. 7

28   (identifying physical address) and Exs. 15-16 (identifying user ID). Sealing of this information is

1  warranted. *See, e.g., Firstface Co. v. Apple, Inc.,* 2022 U.S. Dist. LEXIS 200069, at *3-4 (N.D.

2  Cal. Nov. 2, 2022) (Donato, J.) (sealing personally identifying information of employees);

3  *Proofpoint, Inc. v. BTM Comercio De Equipamentos E Softwares De Informatica*, 2018 U.S.

4  Dist. LEXIS 49805, at *8 (N.D. Cal. Mar. 26, 2018) (sealing "contact information of current and

5  former . . . employees, such as emails and telephone numbers").

6

7  **Plaintiffs' Position:**

8          Plaintiffs oppose Defendants' motion to seal certain portions of documents that reflect:

9  (1) metrics related to YouTube's Watch Next/Autoplay functions that do not merit

10  confidentiality; (2) testimony regarding YouTube's failure to implement a reasonable repeat

11  infringer policy; and (3) the relative number of private or unlisted videos versus public videos on

12  the platform.  The specific portions of documents that Plaintiffs oppose sealing are identified at

13  the end of the joint submission.

14          *First*, Plaintiffs oppose Defendants' motion to seal portions of Plaintiffs' Motion for

15  Class Certification, YouTube internal documents, and the Expert Report of Joseph M. Winograd

16  that divulge metrics related to YouTube's Watch Next and Autoplay functions.  *See* Huang

17  Exs. 1, 7, 8, 12, 13, 32, 34.  The metrics in question reflect: (1) the percentage of total watch time

18  attributable to these functions, and (2) the role of these functions in driving watch time across the

19  YouTube platform.  Defendants' conclusory assertions and speculation concerning the purported

20  "unfair insight into YouTube's operational details" this information would provide to

21  competitors does not amount to the "'particularized showing' required to seal any individual

22  court record." *In re Google Play Store Antitrust Litig.*, 556 F. Supp. 3d 1106, 1107 (N.D. Cal.

23  2021) (Donato, J.); *see also* Wu Decl. at 7 (speculating that "a rival video streaming service may

24  analyze the various sources of YouTube's watch time data to determine what product and

25  functionality to develop next or invest in that would bring about the most significant increase in

26  user engagement, saving such service the significant time and effort YouTube had devoted into

27  determining product development directions and priorities").

28

1    *Second*, Plaintiffs oppose Defendants' motion to seal portions of documents and

2    testimony related to the details of YouTube's repeat infringer policy and certain steps that they

3    have failed to take in enforcing a reasonable repeat infringer policy as mandated by the DMCA.

4    *See* Huang Exs. 1, 10, 44.  Defendants provide the following illogical reason for why this

5    testimony should remain under seal: "Public disclosure of the limited information YouTube

6    seeks to seal would instruct bad actors on how to circumvent termination under YouTube's

7    copyright policies, or allow previously-terminated users to circumvent YouTube's efforts to

8    remove additional content linked to them, and therefore impact YouTube's ability to identify and

9    terminate these offenders." Zhu Decl. at 11.  But as described above, the information Defendants

10   seek to seal relates to YouTube's *failure* to terminate certain users.  Presumably, users that

11   YouTube has failed to terminate are already aware of how to circumvent termination, having

12   already done so.  YouTube's request to seal is also a self-serving attempt to protect its

13   inadequate repeat infringer policy. YouTube fears that users previously unaware of the loophole

14   identified in Mr. Zhu's testimony may now take advantage of it if made public.  Increased

15   adoption of this loophole would further reveal that Defendants' repeat infringer policy is

16   insufficient and not in compliance with the requirements of the DMCA.

17       *Third*, Plaintiffs oppose Defendants' motion to seal portions of documents and testimony

18   reflecting the fact that proportion of videos on YouTube are private or unlisted and therefore

19   unsearchable and not susceptible to being located and taken down by copyright holders.  *See*

20   Huang Exs. 1, 52, 54, 56.  While Plaintiffs do not object to Defendants' motion to seal the

21   absolute numbers of private, public, and total videos on YouTube, the relative proportion of

22   videos that are private or unlisted does not reveal "the size of the corpus of videos on [their]

23   service."  *See supra* at 3-4.

24       *Finally*, Plaintiffs' oppose Defendants' request to seal the four words preceding the

25   specific number of videos on page 1, line 15 of Plaintiffs' motion for class certification because

26   the request is overinclusive.  *See* Huang Ex. 1.  The "'strong presumption in favor of access to

27   court records'" is a "hallmark of our federal judiciary." *Carnegie Mellon Univ. v. LSI Corp.*, No.

28   18-CV-04571-JD, 2020 WL 5592992, at *1 (N.D. Cal. Sept. 18, 2020) (Donato, J.) (quoting

JOINT SUBMISSION REGARDING                    -10-                    CASE NO. 3:20-CV-04423-JD
DEFENDANTS' SEALING REQUESTS

1   *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  Accordingly,

2   even where there is a "compelling reason" or "good cause" sufficient to outweigh the public's

3   interest in disclosure, the material sealed should be limited to only what is absolutely necessary

4   to protect a party from harm.  *See, e.g.*, *In re Roman Cath. Archbishop of Portland in Oregon*,

5   661 F.3d 417, 425 (9th Cir. 2011);  *In re Yahoo! Inc. Sec. Litig.*, No. 17-CV-00373-LHK, 2018

6   WL 11349976, at *2 (N.D. Cal. May 9, 2018).  YouTube's stated concern regarding disclosure

7   of "granular data points" about "size of the corpus of videos on its service" is that such

8   disclosure "may allow competitors to estimate the scale of YouTube's systems and resourcing

9   costs, which they may use to improve upon their own systems and unfairly compete . . . ."  *Supra*

10  at 3-4.  But disclosing the magnitude of growth in the number of videos on YouTube, without

11  disclosing the actual numbers of videos, would create no such risk.  It is neither surprising nor

12  confidential that the YouTube platform has expanded.  Given the "strong presumption" against

13  sealing, Defendants' request is unwarranted.

14

15  **<u>YouTube's Response:</u>**

16      Plaintiffs offer objections to a handful of Defendants' sealing requests, but each is

17  meritless.

18      *First*, Plaintiffs oppose Defendants' request to seal internal statistics regarding the

19  specific amount of YouTube watch time attributable to YouTube's Watch Next and Autoplay

20  functions. As explained in the Wu Decl., YouTube's competitors may use that data, which is the

21  product of extensive user research and internal experiments by YouTube, to determine which

22  features would bring about the most significant increase in user engagement and direct their

23  product development efforts and resources accordingly. *See* Wu Decl. at 7. Plaintiffs claim that

24  this reasoning is "speculation," seemingly because YouTube cannot forecast with perfect

25  certainty which current or potential competitors may use this information. Sealing does not

26  require clairvoyance. Indeed, it would be speculative for YouTube to name names, especially

27  since there may well be entities that are planning to launch new services that compete with

28  YouTube and that would benefit from knowledge of these internal statistics.

JOINT SUBMISSION REGARDING                         -11-                    CASE NO. 3:20-CV-04423-JD
DEFENDANTS' SEALING REQUESTS

1    *Second*, Plaintiffs' argument against sealing the details of YouTube's repeat infringement

2    policy and its enforcement is specious.  Plaintiffs are saying that, because certain bad actors may

3    already know how to circumvent YouTube's enforcement of its repeat infringer policy, there is

4    no harm in disclosing to everyone the specific details of how YouTube identifies accounts for

5    termination and enforces its policies. The disclosure Plaintiffs are advocating would *enable* other

6    users to circumvent YouTube's copyright policies and so undermine the interests of copyright

7    owners, which Plaintiffs claim to represent.

8    *Third*, the relative proportion of videos on YouTube that are private or unlisted is

9    sensitive commercial information that will result in competitive harm, Plaintiffs' characterization

10   notwithstanding. Disclosure of these statistics would reveal how often YouTube users of

11   YouTube's service utilize the private or unlisted videos functions, and so disclose the relative

12   value users afford functions and features related to those different categories of content. This

13   would point YouTube's competitors to where they should direct their resources and focus their

14   product development efforts, saving them the expense and effort of figuring that out by

15   themselves. Other internal metrics and statistics reflect similar concerns about competitive harm.

16   *Finally*, YouTube's proposed redaction on page 1, line 15 of Plaintiffs' Motion to Certify

17   Class (Huang Ex. 1) is not overinclusive. The four words prior to the specific number of videos

18   on YouTube's platform in 2020 disclose how that number changed from 2019 to 2020, and

19   YouTube specifically stated why disclosure of "how [the number of videos on YouTube]

20   changed over the years" could bring business harm to YouTube by "by painting a simplistic and

21   grossly inaccurate picture of the performance/growth of the YouTube platform." Zhu Decl. at

22   1-2.

23

24

25

26

27

28

**Chart Summarizing Plaintiffs' Opposition and YouTube's Response:**

| Huang Ex. Nos. | ECF Nos. | Page:Line Nos. | Plaintiffs' Description | YouTube's Response |
|---|---|---|---|---|
| 1 | 243-1 & 245 | 1:15 (four words prior to the specific number of videos should not be sealed) | Overinclusive redaction. | Disclosure risks competitive harm because it reflects changes in the number of videos. *See supra* at 12; Zhu Decl. at 1-2. |
| | | 11:2, 11:4, 11:18-19, 11:20 | Percentage of YouTube watch time attributable to various YouTube functions, and how the distribution evolved over time. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 6-7, 11; Wu Decl. at 6-8. |
| | | 17:25-26, 17:28-18:4 | Information about the operations of YouTube's policy for terminating repeat infringers. | Disclosure risks abuse by bad actors. *See supra* at 7, 12; Zhu Decl. at 9-10. |
| | | 18:11 | Information about relative number private versus public videos on YouTube. | Disclosure risks competitive harm because it reveals features that users value. *See supra* at 6-7, 12; Zhu Decl. at 1-3. |
| 6 42 | 243-12 & 247-11 253-5 & 254-5 | 107:11-108:3 | Information about the operations of YouTube's policy for processing takedown notices. | Disclosure risks abuse by bad actors and competitive harm. *See supra* at 7, 12; Zhu Decl. at 10. |
| 7 | 243-13 & 247-12 | 115:1-12 | Percentage of YouTube watch time attributable to various YouTube functions. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 6-7, 11; Wu Decl. at 6-8. |

| Huang Ex. Nos. | ECF Nos. | Page:Line Nos. | Plaintiffs' Description | YouTube's Response |
|---|---|---|---|---|
| 8<br>32<br>34 | 243-17 & 247-16<br><br>261-5 & 264-2<br><br>276-7 & 278-10 | 3, 10, 53 | Percentage of YouTube watch time attributable to various YouTube functions. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 6-7, 11; Wu Decl. at 6-8. |
| | | 57, n.48 (last sentence of footnote should not be sealed) | Information about YouTube watch time attributable to various YouTube functions. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 6-7, 11; Wu Decl. at 6-8. |
| 10<br>44 | 243-22 & 247-23<br><br>253-11 & 254-11 | 6, 9 | Information about the operations of YouTube's policy for terminating repeat infringers. | Disclosure risks abuse by bad actors. *See supra* at 7, 12; Zhu Decl. at 10-11. |
| 12 | 244-2 & 247-29 | -873, -896 | Percentage of YouTube watch time attributable to various YouTube functions, and how the distribution evolved over time. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 6-7, 11; Wu Decl. at 6-8. |
| 13 | 244-4 & 247-32 | -185 to -187, -240 | Percentage of YouTube watch time attributable to various YouTube functions, and how the distribution evolved over time. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 6-7, 11; Wu Decl. at 6-8. |

| Huang Ex. Nos. | ECF Nos. | Page:Line Nos. | Plaintiffs' Description | YouTube's Response |
|---|---|---|---|---|
| 52 | 263-1 & 265 | 1:19, 3:12 (percentage and the three words prior to the specific number of videos should not be sealed), 3:16-22 (values in the "Percentage of All Videos that are Private or Unlisted" column should not be sealed), 4:14, 5:25 (two words after "constituting" should not be sealed) | Information about relative number private versus public videos on YouTube. | Disclosure risks competitive harm because it reveals features that users value. *See supra* at 6-7, 12; Zhu Decl. at 1-3. |
| 54 | 263-5 & 265-6 | 1 (values in the "Percentage of All Videos that are Private or Unlisted" column should not be sealed) | Information about relative number private versus public videos on YouTube. | Disclosure risks competitive harm because it reveals features that users value. *See supra* at 6-7, 12; Zhu Decl. at 1-3. |
| 56 | 291-1 & 292 | 1:3 (four words after "private videos" should not be sealed), 2:11, 4:17, 7:16 (first two words in the line should not be sealed) | Information about relative number private versus public videos on YouTube. | Disclosure risks competitive harm because it reveals features that users value. *See supra* at 6-7, 12; Zhu Decl. at 1-3. |

1

2   Dated:  April 7, 2023                    Respectfully submitted,

3                                                       */s/ Kelly M. Knoll*
                                            David H. Kramer, SBN 168452
4                                           Maura L. Rees, SBN 191698
                                            Lauren Gallo White, SBN 309075
5                                           Kelly M. Knoll, SBN 305579
                                            WILSON SONSINI GOODRICH & ROSATI
6                                           Professional Corporation
                                            650 Page Mill Road
7                                           Palo Alto, CA 94304-1050
                                            Telephone: (650) 493-9300
8                                           Facsimile: (650) 565-5100
                                            Email: dkramer@wsgr.com
9                                           Email: mrees@wsgr.com
                                            Email: lwhite@wsgr.com
10                                          Email: kknoll@wsgr.com

11                                          Brian M. Willen
                                            Catherine R. Hartman
12                                          WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
13                                          1301 Avenue of the Americas, 40th Floor
                                            New York, NY 10019-6022
14                                          Telephone: (212) 999-5800
                                            Facsimile: (212) 999-5801
15                                          Email: bwillen@wsgr.com
                                            Email: chartman@wsgr.com
16
                                            Attorneys for Defendants and
17                                          Counterclaimants
                                            YOUTUBE, LLC and GOOGLE LLC
18

19  Dated:  April 7, 2023                    Respectfully submitted,

20                                                      */s/ Philip C. Korologos*
                                            George A. Zelcs
21                                          Randall P. Ewing, Jr.
                                            Ryan Z. Cortazar
22                                          KOREIN TILLERY, LLC
                                            205 North Michigan, Suite 1950
23                                          Chicago, IL 60601
                                            Telephone: (312) 641-9750
24                                          Facsimile: (312) 641-9751
                                            Email: gzelcs@koreintillery.com
25                                          Email: rewing@koreintillery.com
                                            Email: rcortazar@koreintillery.com
26
                                            Stephen M. Tillery
27                                          Steven M. Berezney, SBN 329923
                                            Carol O'Keefe
28                                          KOREIN TILLERY, LLC
                                            505 North 7th Street, Suite 3600

JOINT SUBMISSION REGARDING                  -16-              CASE NO. 3:20-CV-04423-JD
DEFENDANTS' SEALING REQUESTS

St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
Email: stillery@koreintillery.com
Email: sberezney@koreintillery.com
Email: cokeefe@koreintillery.com

Joshua Irwin Schiller, SBN 330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899
Email: jischiller@bsfllp.com

Philip C. Korologos
Joanna Wright
Jeffrey Waldron
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350
Email: pkorologos@bsfllp.com
Email: jwright@bsfllp.com
Email: jwaldron@bsfllp.com

Attorneys for MARIA SCHNEIDER,
UNIGLOBE ENTERTAINMENT, LLC, and
AST PUBLISHING LTD.

1

## ATTORNEY ATTESTATION

2

I, Kelly M. Knoll, am the ECF User whose ID and password are being used to file this

3

document. In compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that concurrence in

4

the filing of this document has been obtained from each of the other Signatories.

5

By: _____ */s/ Kelly M. Knoll* ____

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28