# EXHIBIT 23

to the Declaration of Qifan Huang

PUBLIC VERSION - REDACTED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,

Plaintiffs,

v.

Case No.: 3:20-cv-04423-JD

YOUTUBE, LLC; and GOOGLE LLC,

Defendants.

_____________________________

CONFIDENTIAL

VIDEOTAPED DEPOSITION OF JULIAN BILL

June 22, 2022
9:09 a.m.

Magna Legal Services
866-624-6221
www.MagnaLS.com

44 Montgomery Street, 41st Floor

San Francisco, California

REPORTED BY:

Siew G. Ung

CSR No. 13994, RPR, CSR



**APPEARANCES:**

For Plaintiffs:
KOREIN TILLERY, LLC
CAROL O'KEEFE, ESQ.
505 North 7th Street, Suite 3600
St. Louis, Missouri 63101
314.241.4844
cokeefe@koreintillery.com

RYAN Z. CORTAZAR, ESQ.
205 North Michigan, Suite 1950
Chicago, Illinois 60601
312.641.9750
rcortazar@koreintillery.com,

For Defendants:

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
ELI B. RICHLIN, ESQ.
CATHERINE HARTMAN, ESQ.
1301 Avenue Of The Americas 40th Floor
New York, New York 10019
212.497.7781
erichlin@wsgr.com
chartman@wsgr.com

GOOGLE (in-house)
JOHN JANHUNEN, ESQ.

Also Present:
RANDALL THIEBEN, Videographer

INDEX TO EXAMINATIONS

**WITNESS:** Julian Bill

| EXAMINATION | PAGE |
|---|---|
| BY MS. O'KEEFE | 7 |
| BY MR. RICHLIN | 221 |

INDEX TO EXHIBITS
JULIAN BILL
WEDNESDAY, JUNE 22, 2022
Siew G. Ung CSR No. 13994, RPR

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 121 | Packet of Documents (GOOG-SCHNDR-00000924 to GOOG-SCHNDR-00001058) | 40 |
| Exhibit 122 | Pre-Publish Checks V1 Pro (GOOG-SCHNDR-00041470 to GOOG-SCHNDR-00041476) | 130 |
| Exhibit 123 | Documents (GOOG-SCHNDR-00038782 to GOOG-SCHNDR-00038807) | 158 |

(Exhibits Continued)

| MARKED | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 124 | YouTube In-Flight Report: Manual Claiming Changes (GOOG-SCHNDR-00038961 to GOOG-SCHNDR-00038965) | 190 |
| Exhibit 125 | Brandon's Quick Guide to CIMA/CLA apps (GOOG-SCHNDR-00001289 to 1290) | 196 |
| Exhibit 126 | Addressing creator feedback and an update on my 2019 priorities by Susan Wojcicki (GOOG-SCHNDR-00021200 to GOOG-SCHNDR-00021204) | 200 |
| Exhibit 127 | Master Launches, Master CommDoc (GOOG-SCHNDR-00053755 to GOOG-SCHNDR-00053763) | 204 |



SAN FRANCISCO, CALIFORNIA;
WEDNESDAY, JUNE 22, 2022, 9:09 A.M.
***
**THE VIDEOGRAPHER:** Good morning, everyone. We are on the record. This begins Videotape No. 1 in the deposition of Julian Bill in the matter of Maria Schneider versus YouTube, LLC.
It is being heard in the US District Court, Northern District of California, San Francisco Division. The case number is 3:20-cv-04423-JD. Today is Wednesday, June 22nd, 2022. The time now is 9:10 a.m. Pacific.
This deposition is being taken at the law offices of Boies Schiller Flexner at 44 Montgomery Street, 41st floor, San Francisco, California 94104, at the request of the New York office of Boies Schiller Flexner LLP.
My name is Randall Thieben. I'm the videographer from Magna Legal Services. And our court reporter today is named Siew Ung of Magna Legal Services.
If counsel and all parties present can please state their appearances and whom they represent.
**MS. O'KEEFE:** Carol O'Keefe of

Korein Tillery on behalf of the plaintiffs. With me is Ryan Cortazar also of Korein Tillery.
**MR. RICHLIN:** Eli Richlin of Wilson Sonsini Goodrich & Rosati for defendants, as well as the witness. With me is my colleague Catherine Hartman and John Janhunen, who is in-house counsel with Google.
**MS. O'KEEFE:** Can you swear the witness?
**THE VIDEOGRAPHER:** Great. Thank you everyone.
And if the court reporter can please swear in the witness, we are ready to go.
JULIAN BILL,
having been first duly sworn, was examined and testified as follows:
EXAMINATION BY MS. O'KEEFE
**Q. Good morning, Mr. Bill.**
A. Good morning.
**Q. Let's start off with your employment at Google.**
**When did you start working there?**
A. I first started at Google there in 2006.
**Q. And what was your first role there?**
A. I was a sales engineer.
**Q. In -- in what division of Google?**

A. I worked in the AdSense syndication division. The actual division was called PSO, the Partner Services Organization.
**Q. And what does a sales engineer do?**
A. My job was to partner with -- with business development to be responsible for the technical aspects of our advertising syndication deals with large publishers.
**THE REPORTER:** Technical aspects of?
**THE WITNESS:** AdSense syndication deals. So AdSense is a -- a Google products, where we can run Google Ads from third-party sites.
**MR. RICHLIN:** Mr. Bill, when she asks you a question, she just wants to hear the word again.
**THE WITNESS:** I see.
**MR. RICHLIN:** She's transcribing it.
**BY MS. O'KEEFE:**
**Q. So was your first role at Google as part of the Google Ads team?**
A. It was part of Google AdSense team, which is distinct from the Google Ads teams.
**Q. Okay. And describe what AdSense does?**
A. AdSense is a product offered by Google whereby a third-party website can run Google Ads on their -- on their sites and then share the revenue

with Google.
**Q. And am I correct that uploaders and channels who monetize on YouTube must have an AdSense account?**
**MR. RICHLIN:** Objection to form.
You can answer.
**THE WITNESS:** Okay. Yes. The reason I paused there is because that -- the product -- the AdSense products I worked on before was not associated with the issue.
**BY MS. O'KEEFE:**
**Q. All right. And how long were you in that role?**
A. I worked for PSO until it became -- it became gTech, which is a different organization that I worked at until 2015.
**Q. And what is gTech?**
A. gTech was a rebranding for the same organization, Google Technology Services.
**Q. And what were your role -- your roles were -- did they remain the same under the rebranding?**
A. So I started as a sales engineer, and then I became a technical account manager. And then I moved into a role where I was managing the technical

MAGNA
LEGAL SERVICES

enable Take Down Stay Down for their takedowns -- excuse me. That was lunch. In which case the system will attempt to find re-uploads of their videos.

**BY MS. O'KEEFE:**

**Q. Has anyone at YouTube, to your knowledge, ever considered the possibility of allowing successful DMCA takedown complaint owners to provide a reference file that represents their actual digital content in place of the uploader video that was found to infringe their content?**

**MR. RICHLIN:** Objection to form.

**THE WITNESS:** So the -- the idea of the -- the Copyright Match Tool is to -- is to allow claimants to find re-uploads of videos for -- from match videos on the channel that are a part of our program, or if they submitted a successful takedown, then we'll also try to find re-uploads of their videos.

**BY MS. O'KEEFE:**

**Q. Has anyone at YouTube ever considered allowing someone like Maria Schneider to provide you with the digital file of her musical work, "Data Lords," and allow her to use the Content ID system to find all videos that incorporate or copy that**

**file as opposed to merely copies of previously uploaded videos that were subjected to takedown processes?**

**MR. RICHLIN:** Objection to form.

**THE WITNESS:** To my -- I'm not aware of any considerations with respect -- specifically with respect to Maria Schneider and her content, no.

**BY MS. O'KEEFE:**

**Q. What about creators generally, have you ever considered offering to allow non-YouTube partners to provide digital assets -- strike that.**

**To the best of your knowledge, has YouTube ever considered allowing creators who have filed successful takedown notices, but are not YouTube partners, to provide reference files representing their copyright material for screening in the Content ID database?**

**MR. RICHLIN:** Objection to form.

**THE WITNESS:** So the -- the intent of the Copyright Match Tool Take Down Stay Down is to allow -- to provide that kind of functionality in a safe way to -- to claimants that issued successful takedowns to us.

**THE REPORTER:** To claimants that issued ...

**THE WITNESS:** Successful takedowns.

**BY MS. O'KEEFE:**

**Q. So why do you say that the purpose is to allow -- to provide that functionality in a safe way? Why do you say it's in a safe way?**

A. The -- in order -- in order for a takedown to be successful, it needs to be well-formed and -- and qualify as a takedown, and the video is removed and then the reference file that we create is limited to the taken-down video.

**Q. Why would it be unsafe to allow a copyright claimant who has filed a successful takedown notice for a work to provide you a digital copy of the protected work to use as a reference file in place of the video that was the subject of the takedown notice?**

**MR. RICHLIN:** Objection to form.

**THE WITNESS:** So to participate in Content ID comes with some obligations in terms of responsibilities on the Content ID user.

And we have -- those -- absent those responsibilities, there is harm to the ecosystem that could -- could occur if that is not done responsibly.

///

**BY MS. O'KEEFE:**

**Q. And if someone can establish their ownership of an audio asset to YouTube's satisfaction, what is the harm to the ecosystem that would result in allowing them to use only the matching function of the Content ID ecosystem?**

**MR. RICHLIN:** Objection to form.

**THE WITNESS:** So -- that is -- that's what we are trying to achieve with -- with Content ID and -- and how it's made available and used by our users, such that the contents provide -- provided to us in a -- in a manner that allows it to coexist with content provided by other users of Content ID, and also such that there are mechanisms available -- we talked about some of those reference conflicts and ownership conflicts.

**THE REPORTER:** Wait. We talked about ...

**THE WITNESS:** We talked about some of these -- these functions already such that the participants -- who can participate in the Content ID ecosystem and responsibly manage the content they are providing to YouTube.

**BY MS. O'KEEFE:**

**Q. And my question is, what would be the impact on the Content ID ecosystem to -- of allowing**



**a copyright claimant to provide the actual asset reference file for screening only and matching purposes only in the Content ID systems?**
A. When you say screening purposes only or matching purposes only?
**Q. Search purpose, finding of content that copies that reference file without the option for monetization, without the option for blocking, solely limited to the search function.**
A. The search function.
**Q. The digital fingerprint matching function.**
A. I see. So again, that's the -- the intent of Content ID is to -- to provide that.
**Q. Uh-huh.**
A. We -- there are third parties that provide Content ID services that our creators can chose to work with.
**Q. Uh-huh. And how much do those third parties charge for their services?**
A. I don't know.
**Q. And do those third parties provide services to copyright claimants who only want to block videos?**
**MR. RICHLIN:** Objection to form.
**THE WITNESS:** I know of no reason why they

wouldn't.
**BY MS. O'KEEFE:**
**Q. But do you know of any who do?**
A. Explicitly advertise services for block-only Content ID, no, I don't know.
**Q. And I'm going to ask you once again, not for the intent of a Content ID system, but what would be the incremental -- strike that.**
**What are the short match rules?**
A. Can you give me a bit more context on what you are referring to.
**Q. We have seen in the documents some discussion of limitations on claims for short matches.**
**What is considered a short match in Content ID?**
A. I'd need -- could you give me a bit more context on that one.
**Q. The requirement that manual claims be made for claims that are under [REDACTED]?**
**MR. RICHLIN:** Objection to form.
**THE WITNESS:** So there is -- for manual claiming --
**BY MS. O'KEEFE:**
**Q. Uh-huh.**

A. -- there is no minimum length of a claim for -- no minimum length of content for which a claim can be made.
**Q. In manual claiming, there is no minimum length of content --**
A. For which a claim can be made.
**Q. -- can be made. And in Automatic Claiming, is there any minimum length for which a claim can be made?**
A. So -- to -- as I mentioned earlier, we -- we -- for audio claims as we -- we often claim down to [REDACTED] provided that we can maintain our precision where we need it to be.
**Q. Uh-huh.**
A. Precision becomes harder to maintain the lower the length of content is claimed.
**Q. Okay. Why does precision become harder to maintain the lower the content is?**
A. Because the content is less distinct. It becomes more likely that one piece of content sounds or looks like another piece of content.
**THE REPORTER:** Say that again.
**THE WITNESS:** It becomes more likely that one piece of content sounds or looks like another piece of content.

**BY MS. O'KEEFE:**
**Q. And that [REDACTED] rule is a limitation that is applied only in the context of automatic claiming?**
A. The [REDACTED] rule in -- that I'm specifically referring to automatic claiming there. And that's the level that we got down to where we are still able to maintain precision of where we needed it. But it's not a limitation for manual claiming.
**Q. Okay. You are still able to maintain 99 percent precision or over 99 percent precision --**
A. With respect to automatic claiming.
**Q. -- precision with respect to automatic claiming with the [REDACTED] rule in place.**
A. Because, yes, it's not a hard and fast rule. It's not -- there -- there are other aspects of a claim that we look at to know whether or not the -- the claim can be made.
**Q. Uh-huh.**
A. But in many cases, we are able to claim -- make audio claims down to [REDACTED].
MS. O'KEEFE: Ryan, can you please mark as Plaintiff's Exhibit 123 a document ending in Bates number 38782.



**Witness: Julian Bill — June 22, 2022**

***Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)**

**Errata Sheet**

| **Page:Line** | **Change** | **Reason** |
|---|---|---|
| 8:11 | Replace <products> with <product> | To clarify the record |
| 8:12 | Replace <from> with <on> | To clarify the record |
| 8:20 | Insert <the> between <of> and <Google AdSense team> | To clarify the record |
| 9:16 | Replace <2015> with <2012> | To clarify the record |
| 23:9 - 23:11 | Replace <Insomuch as it's one of the actions that you can apply, the way you make a claim a video as monetize is – is one of those actions> with <Insomuch as monetization is a claiming policy that a Content ID partner can apply to a video that matches the partner's reference file> | To clarify the record |
| 23:24 | Replace <roles> with <rules> | To clarify the record |
| 32:12 | Replace <they> with <I> | To clarify the record |
| 41:20 | Replace <Mihel> with <Michal> | To correct transcription error |
| 42:9 | Replace <do> with <use> | To correct transcription error |
| 47:15 | Replace <determine> with <it determines> | To clarify the record |
| 50:10 | Replace <he> with <we> | To correct transcription error |
| 53:19 | Replace <slash> with <question mark> | To clarify the record |
| 56:18 | Replace <recreate> with <we create> | To clarify the record |
| 58:25 | Replace <most> with <almost> | To correct transcription error |
| 62:18 | Replace <publishing collection> with <publisher or collection> | To correct transcription error |
| 71:4 | Omit <Q.> | To correct transcription error |
| 71:19 | Omit <and> | To clarify the record |
| 85:11 | Replace <denominator> with <numerator> | To clarify the record |

**Witness: Julian Bill — June 22, 2022**

***Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)**

| 85:13 | Replace <claim> with <claimant> | To correct transcription error |
|---|---|---|
| 94:7 | Replace <service> with <surface> | To correct transcription error |
| 100:23 | Replace <the light of Responses to Objections> with <light of YouTube's Responses and Objections> | To clarify the record |
| 113:12 - 113:13 | Replace <So a record label is – is inherently what they do> with <That is inherently what a record label does> | To clarify the record |
| 117:18 | Replace <formed> with <shown> | To correct transcription error |
| 119:7 | Replace <definitely> with <differently> | To correct transcription error |
| 127:15 | Insert <Oh.> before <I agree> | To correct transcription error |
| 141:24 | Replace <off a> with <off> | To correct transcription error |
| 148:18 | Replace <content> with <Content ID> | To correct transcription error |
| 154:16 | Replace <chose> with <choose> | To correct transcription error |
| 161:15 | Replace <that are able> with <that we are able> | To correct transcription error |
| 166:23 | Omit <called product –> | To clarify the record |
| 167:23-167:24 | Replace <the content that he> with <Content ID> | To clarify the record |
| 170:17 | Replace <in the> with <and a> | To correct transcription error |
| 173:23 | Replace <instances> with <partners> | To clarify the record |
| 175:25 | Replace <substitution or> with <substitutional> | To correct transcription error |
| 181:1 - 181:2 | Replace <under services,> with <enter into agreements with YouTube pursuant to which they represent that> | To clarify the record |
| 181:2 | Replace <they have> with <they need to have> | To clarify the record |
| 182:18 | Replace <allow> with <allowlist> | To correct transcription error |
| 182:20 | Replace <product> with <partner> | To clarify the record |

**Witness: Julian Bill — June 22, 2022**

***Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)**

| | | |
|---|---|---|
| 202:6 | Replace <monetized> with <monetize> | To correct transcription error |
| 203:1 | Replace <policies> with <policy> | To correct transcription error |
| 203:2 | Delete <content> | To correct transcription error |
| 203:3 | Replace <create> with <created> | To correct transcription error |
| 203:4 | Replace <created> with <creator> | To correct transcription error |
| 203:5 | Replace <were being> with <that were then> | To clarify the record |
| 203:6 | Replace <monetizing> with <monetize> | To clarify the record |
| 203:12 | Replace <monetized> with <monetize> | To correct transcription error |
| 208:22 | Replace <pre-published> with <pre-publish> | To correct transcription error |
| 209:23 | Replace <asset> with <search> | To correct transcription error |
| 213:22 | Replace <aggregated> with <aggregator> | To correct transcription error |
| 214:3 | Replace <to> with <would> | To clarify the record |
| 215:8 | Insert <No> after <okay.> | To correct transcription error |
| 215:10 | Replace <Better ask him> with <you have better eyes than me> | To correct transcription error |
| 217:1 | Replace <contact> with <context> | To clarify the record |
| 219:21 | Replace <User> with <users of> | To correct transcription error |
| 220:9 | Replace <may> with <must> | To correct transcription error |
| 221:2 | Insert <OK, we have a copy of this email.> between <MS. O'KEEFE:> and <Do> | To correct transcription error |
| 221:5 | Insert <even> between <don't> and <know> | To correct transcription error |
| 221:6 | Replace <that it even> with <for whether it> | To clarify the record |

Witness: Julian Bill — June 22, 2022
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| 202:6 | Replace <monetized> with <monetize> | To correct transcription error |
|---|---|---|
| 203:1 | Replace <policies> with <policy> | To correct transcription error |
| 203:2 | Delete <content> | To correct transcription error |
| 203:3 | Replace <create> with <created> | To correct transcription error |
| 203:4 | Replace <created> with <creator> | To correct transcription error |
| 203:5 | Replace <were being> with <that were then> | To clarify the record |
| 203:6 | Replace <monetizing> with <monetize> | To clarify the record |
| 203:12 | Replace <monetized> with <monetize> | To correct transcription error |
| 208:22 | Replace <pre-published> with <pre-publish> | To correct transcription error |
| 209:23 | Replace <asset> with <search> | To correct transcription error |
| 213:22 | Replace <aggregated> with <aggregator> | To correct transcription error |
| 214:3 | Replace <to> with <would> | To clarify the record |
| 215:8 | Insert <No> after <okay.> | To correct transcription error |
| 215:10 | Replace <Better ask him> with <you have better eyes than me> | To correct transcription error |
| 217:1 | Replace <contact> with <context> | To clarify the record |
| 219:21 | Replace <User> with <users of> | To correct transcription error |
| 220:9 | Replace <may> with <must> | To correct transcription error |
| 221:2 | Insert <OK, we have a copy of this email.> between <MS. O'KEEFE:> and <Do> | To correct transcription error |
| 221:5 | Insert <even> between <don't> and <know> | To correct transcription error |
| 221:6 | Replace <that it even> with <for whether it> | To clarify the record |

JB Subject to the above changes, I certify that the transcript is true and correct.



Witness: Julian Bill — June 22, 2022
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

__________ No changes have been made. I certify that the transcript is true and correct.

____________________ (signature)

8/12/2022 (date)

ACKNOWLEDGMENT OF DEPONENT

I, Julian Bill, do hereby certify that I have read the transcript, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in this Errata Sheet.

8/12/2022 (Date)

____________________ (Signature)