# EXHIBIT 52

to the Declaration of Qifan Huang

PUBLIC VERSION - REDACTED

| | |
|---|---|
| George A. Zelcs* | Joshua Irwin Schiller, CA Bar #330653 |
|   gzelcs@koreintillery.com |   jischiller@bsfllp.com |
| Randall P. Ewing, Jr.* | **BOIES SCHILLER FLEXNER LLP** |
|   rewing@koreintillery.com | 44 Montgomery Street, 41st Floor |
| Ryan Z. Cortazar * | San Francisco, CA  94104 |
|   rcortazar@koreintillery.com | Telephone: (415) 293-6800 |
| **KOREIN TILLERY, LLC** | Facsimile: (415) 293-6899 |
| 205 North Michigan, Suite 1950 | |
| Chicago, IL  60601 | Philip C. Korologos* |
| Telephone: (312) 641-9750 |   pkorologos@bsfllp.com |
| Facsimile: (312) 641-9751 | Joanna Wright* |
| |   jwright@bsfllp.com |
| Stephen M. Tillery* | Jeffrey Waldron* |
|   stillery@koreintillery.com |   jwaldron@bsfllp.com |
| Steven M. Berezney, CA Bar #329923 | **BOIES SCHILLER FLEXNER LLP** |
|   sberezney@koreintillery.com | 55 Hudson Yards, 20th Floor |
| Carol O'Keefe* | New York, NY 10001 |
|   cokeefe@koreintillery.com | Telephone: (212) 446-2300 |
| **KOREIN TILLERY, LLC** | Facsimile: (212) 446-2350 |
| 505 North 7th Street, Suite 3600 | |
| St. Louis, MO  63101 | |
| Telephone: (314) 241-4844 | |
| Facsimile: (314) 241-3525 | |

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>        Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. James Donato<br>Courtroom: 11<br><br>DATE:  April 13, 2023<br>TIME:   10:00 a.m. |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 13, 2023, at 10:00 a.m., Plaintiffs will move the Court for an order granting partial summary judgment against YouTube, LLC and Google LLC ("YouTube" or "Defendants").

**STATEMENT OF REQUESTED RELIEF**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs request that the Court grant partial summary judgment determining that Defendants are not entitled to the protections of the Digital Millennium Copyright Act ("DMCA") Safe Harbors set out in 17 U.S.C. § 512 et seq. as alleged in Defendants' Second Defense, *see* ECF 160 at 22.

**ISSUE TO BE DECIDED**

Whether Defendants' YouTube platform is entitled to the safe harbor protections of the DMCA, 17 U.S.C. § 512 et seq. where the internet service provider disables application of the sole search tool it provides for a significant portion of the videos on the platform.

**MEMORANDUM OF POINTS AND AUTHORITIES**

As a condition of securing safe harbor protection under the DMCA, internet service providers like YouTube must establish and reasonably implement a policy that removes repeat infringers from their platform. YouTube has made available a limited tool, the YouTube search bar, that can be used by copyright owners to identify infringing works but has disabled that tool with respect to ▇▇▇▇▇▇▇ videos on the platform. YouTube is not entitled to the DMCA safe harbor because it excludes private and unlisted videos from discovery by its YouTube search bar tool, leaving Plaintiffs with no means of identifying videos that infringe their copyright protected works among the ▇▇▇▇▇▇▇ private or unlisted videos on the platform. While Plaintiffs maintain that Defendants have failed to comply with the requirements of the DMCA safe harbor in multiple ways, *see* ECF 226 (Plaintiffs' Proffer of Evidence Concerning DMCA), they move for partial summary judgment solely on this limited basis as there are no material facts in dispute.

## STATEMENT OF FACTS

YouTube allows uploaders to control access to their videos by designating each video as public, private, or unlisted. YouTube's help page states, "Private videos and playlists can only be **seen by you and whomever you choose.** Your private videos won't appear in the **Videos** tab of your channel homepage. *They also won't show up in YouTube's search results*. YouTube systems and human reviewers may review private videos for ad suitability, copyright, and other abuse prevention mechanisms. [. . .] Unlisted videos and playlists can be **seen and shared by anyone with the link**. Your unlisted videos won't appear in the **Videos** tab of your channel homepage. *They won't show up in YouTube's search results* unless someone adds your unlisted video to a public playlist. You can share an unlisted video's URL. Those you share the video with don't need a Google Account to see the video. Anyone with the link can also reshare it." (Ex. 1—YouTube Help Page—Change video privacy settings at 1-2, *available at*: https://support.google.com/youtube/answer/157177?hl=en&co=GENIE.Platform%3DDesktop) (last accessed: March 3, 2023) (bold text in original; italicized emphasis added).)[1] As YouTube's help page summarizes:

| Feature | Private | Unlisted | Public |
|---|---|---|---|
| Can share URL | No | Yes | Yes |
| Can be added to a channel section | No | Yes | Yes |
| ***Shows up in search***, related videos, and recommendations | ***No*** | ***No*** | Yes |
| Posted on your channel | No | No | Yes |
| Shows in Subscriber feed | No | No | Yes |
| Can be commented on | No | Yes | Yes |

(*Id.* (emphasis added).)

As YouTube's Content ID product manager confirmed, "An unlisted video is a video that an uploader has published but has not surfaced in search and discovery. So the only way another viewer could access that video is if the—if the URL had been shared." (Ex. 2—Bill Dep. at 123:16-20.) That "video is not discoverable otherwise." (*Id.* at 125:24-25.) Unlisted videos are

---

[1] All referenced Exhibits ("Ex.__") are attached to the accompanying Declaration of Carol L. O'Keefe.

not discoverable from either the YouTube search bar or the Google search bar.  (*Id.* at 126:4-14.) However, the URLs for such videos can be embedded on other websites and shared, allowing millions of people to view the video.

> "**Q**: So if Maria Schneider's song "Data Lords" is uploaded by a YouTube user, and the video contains the soundtrack to her song, and it also contains the cover of her album, and it is unlisted on the YouTube platform, she will not be able to search and find that video, will she?
>
> "**A**.  I -- I don't know.  To the extent of my knowledge, no.
>
> "**Q**.  And yet it could be seen by millions of users?
>
> "**A**.  As mentioned, it's -- it's a URL that's unlisted but is accessible on the internet."  (*Id.* at 127:17-128:7.)

Significantly, statistics produced by Defendants pursuant to this Court's Order of December 15, 2022, ECF 213, reveal that as of August 1, 2020, YouTube hosted ▉▉▉▉ private or unlisted videos, representing approximately ▉▉▉▉▉▉▉▉▉ videos on the platform. (Ex. 3—January 10, 2023 letter of Lauren Gallo White at 2; Ex. 4—Chart Summarizing Data From Content ID Statistics.)  In prior years, the number of videos designated private or unlisted is summarized in the following table:

| Year (all data as of August 1 of the relevant year) | Number of Private or Unlisted Videos[2] | Total Number of Videos | Publicly Displayed Videos | Percentage of All Videos that are Private or Unlisted[3] |
|---|---|---|---|---|
| 2017 | | | | |
| 2018 | | | | |
| 2019 | | | | |
| 2020 | | | | |

(Ex. 4—Chart Summarizing Data From Content ID Statistics.)

---

[2] Values computed by subtracting total number of "publicly displayed" videos from "videos on the platform" as set forth in Exhibit 3.  O'Keefe Decl. ¶ 5.

[3] Values computed by dividing the derived Number of Private or Unlisted Videos by the Total Number of Videos on the YouTube platform.  O'Keefe Decl. ¶ 5.

1    It is also clear that for the vast majority of copyright owners the only tool they have available among "YouTube's Copyright Management Suite" is the Webform and as a result the only tool they have to find infringing content that exists on the platform is YouTube's search function. As YouTube's Transparency Report notes, while the Webform is available to "Everyone" covering "2+ billion channels", Content ID is available only to "9K+ partners", and the Copyright Match Tool[4] is available to approximately "2+ million channels". (Ex. 5—Transparency Report for H1 2022 at 1.) As Defendants' 30(b)(6) witness Kevin Zhu testified (Ex. 7—Zhu 30(b)(6) Dep. at 67:14-69:6), other than the search function, the only means of someone finding a video on the platform that might infringe on their copyright is that "Someone could, you know, come across it through their general navigation of the service, I suppose"—a near impossible occurrence among the many billions of videos on YouTube.

## ARGUMENT

I.   **YouTube Does Not Reasonably Implement Its Repeat Infringer Policy Because It Shields ▓▓▓▓▓ of the Videos on the Platform from Detection.**

The DMCA safe harbor limitations on liability apply only if the service provider "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers[.]" 17 U.S.C. § 512(i)(1)(A). Implementation of such a repeat infringer policy is a condition of eligibility to receive the benefit of the DMCA safe harbors. *Id.* §512(i)(1). However, where a service provider adopts a repeat infringer policy but prevents that policy from functioning, the requirements of section 512(i) are not met, and the protections of the safe harbor should be denied.

---

[4] Notably, the Copyright Match Tool will only provide matches for subsequently uploaded videos that copy ▓▓▓▓▓ of an infringing video that was the subject of a DMCA takedown notice, or a first-in-time video uploaded by a user with access to the Copyright Match tool (Ex. 5—Transparency Report for H1 2022 at 2; Ex. 6—Magagna Dep. 73:21-74:25); *i.e.*, the tool is not available to find content already on the platform.

1      *Aimster Copyright Litig.*, 252 F. Supp. 2d 634 (N.D. Ill. 2002), *aff'd*, 334 F.3d 643 (7th Cir. 2003) is instructive.  The *Aimster* defendants created a file sharing platform and informed users of encryption techniques that allowed users to share digital files, including copies of copyright protected works, in complete privacy.  *Id.* at 641–43.  The encryption prevented the service provider and copyright claimants alike from identifying repeat infringers.  *Id.* at 659 ("the encryption on Aimster renders it impossible to ascertain which users are transferring which files").  In holding defendants "ineligible for any of the DMCA's safe harbor protections," the court noted, "we remain nonplused with Defendants' argument that the Aimster encryption scheme absolves them of responsibility when that scheme is voluntarily instituted by the Defendants themselves.  *Adopting a repeat infringer policy and then purposely eviscerating any hope that such a policy could ever be carried out is not an 'implementation' as required by § 512(i)*."  *Id.* (emphasis added).

       The Ninth Circuit has endorsed and expanded on this reasoning.  In *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109 (9th Cir. 2007), the court cited *Aimster* in concluding that "a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and *if it does not actively prevent copyright owners from collecting information needed to issue such notifications*."  (emphasis added).  Further, in *Ventura Content v. Motherless*, 885 F.3d 597, 614 (9th Cir. 2018), the court opined, "subsection (i)" of 17 U.S.C. § 512 "addresses how the site is generally managed, not just how the site responds to notice of a particular infringement."  "Congress promulgated subsection (i) to limit the eligibility for safe harbor treatment.  Even if a website deletes infringing material as soon as it learns about it, the safe harbor is unavailable unless the site has a policy of excluding repeat infringers."  *Id.*

       By insulating private and unlisted videos from even the most rudimentary of identification tools—the YouTube search bar, a tool YouTube otherwise implements on the platform—YouTube renders its repeat infringer policy a nullity for ▇▇▇▇ of videos constituting ▇▇▇▇ of the videos it displays.  YouTube "'actively prevent[s] copyright owners from collecting information needed to issue'" a DMCA-compliant takedown notice for private or unlisted videos.  *Motherless*,

1  885 F.3d at 617 (*quoting CCBill,* 488 F.3d at 1109).  Independent creators and copyright claimants
2  have no ability to identify private or unlisted videos that contain their copyrighted works.
3  YouTube does not reasonably implement its repeat infringer policy because its system actively
4  prevents copyright owners from searching for those infringing works, even if the infringing
5  uploader has identified such private or unlisted videos by title or theme.
6      Accordingly, Plaintiffs respectfully request that the Court grant their motion for partial
7  summary judgment, ruling that Defendants are not entitled to the safe harbor protections of the
8  DMCA by reason of their failure to reasonably implement a repeat infringer policy in accordance
9  with 17 U.S.C. § 512(i).

11  Dated: March 3, 2023                  Respectfully submitted,

13                                              /*s*/ Carol O'Keefe
                                            Carol O'Keefe (*pro hac vice*)
14                                              Stephen M. Tillery (*pro hac vice*)
                                            Steven M. Berezney, CA Bar #329923
15                                              KOREIN TILLERY, LLC
                                            505 North 7th Street, Suite 3600
16                                              St. Louis, MO 63101
                                            Telephone: (314) 241-4844
17                                              Facsimile: (314) 241-3525

19                                              George A. Zelcs (*pro hac vice*)
                                            Randall P. Ewing, Jr. (*pro hac vice*)
20                                              Ryan Z. Cortazar (*pro hac vice*)
                                            KOREIN TILLERY, LLC
21                                              205 North Michigan, Suite 1950
                                            Chicago, IL 60601
22                                              Telephone: (312) 641-9750
                                            Facsimile: (312) 641-9751

24                                              Philip C. Korologos (*pro hac vice*)
                                            Joanna Wright (*pro hac vice*)
25                                              Jeffrey Waldron (*pro hac vice*)
                                            BOIES SCHILLER FLEXNER LLP
26                                              55 Hudson Yards, 20th Floor
                                            New York, NY 10001
27                                              Telephone: (212) 446-2300
                                            Facsimile: (212) 446-2350
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

*Attorneys for Plaintiffs*