# EXHIBIT 57

to the Declaration of Qifan Huang

PUBLIC VERSION - REDACTED

George A. Zelcs *
  *gzelcs@koreintillery.com*
Randall P. Ewing, Jr. *
  *rewing@koreintillery.com*
Ryan Z. Cortazar *
  *rcortazar@koreintillery.com*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *
  *stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
  *sberezney@koreintillery.com*
Carol O'Keefe *
  *cokeefe@koreintillery.com*
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525
*Admitted *pro hac vice*

*Attorneys for Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd., and Attorneys for Counterclaim-Defendants Pirate Monitor Ltd. and Gabor Csupo*

Joshua Irwin Schiller, CA Bar #330653
  *jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *
  *pkorologos@bsfllp.com*
Joanna Wright *
  *jwright@bsfllp.com*
Jeffrey Waldron *
  *jwaldron@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>        Defendants. | Case No. 3:20-cv-04423-JD<br><br>**COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:      Hon. James Donato<br><br>Date:      April 13, 2023<br>Time:     10:00 a.m. |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>        Counterclaimants,<br><br>    v.<br><br>PIRATE MONITOR LTD, et al.,<br><br>        Counterclaim Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**NOTICE OF MOTION AND MOTION** ........................................................................... 1

**STATEMENT OF REQUESTED RELIEF** ................................................................... 1

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................. 1

**STATEMENT OF ISSUES TO BE DECIDED** ........................................................ 4

**STATEMENT OF FACTS** ............................................................................................ 5

**ARGUMENT** .................................................................................................................. 9

    I.      PIRATE MONITOR LTD. IS NOT LIABLE FOR EVENTS IN FALL
             2019. ................................................................................................................ 9

    II.     DEFENDANTS' COUNTERCLAIM FOR BREACH OF CONTRACT
             FAILS AS A MATTER OF LAW. ............................................................... 10

         A.  No Material Breach of TOS. .......................................................... 10

         B.  No Proximate Cause or Actual Damages. ..................................... 11

         C.  No Claim for Indemnification or Costs of Defending Plaintiffs' Claims. ...... 12

    III.    DEFENDANTS' COUNTERCLAIM FOR COMMON LAW FRAUD
             FAILS AS A MATTER OF LAW. ............................................................... 13

         A.  Any Common Law Fraud Claim Based on Takedown Notices Would Be
              Preempted. ...................................................................................... 13

         B.  The Non-Preempted Fraud Claims Are Duplicative of the Breach of
              Contract Claims. ............................................................................. 14

         C.  No Actual Damages Were Proximately Caused by the Allegedly
              Fraudulent Breaches. ...................................................................... 14

         D.  There Is No Basis for Punitive Damages. ...................................... 16

    IV.    MR. CSUPO IS NOT LIABLE FOR PURPORTED WRONGFUL ACTS
             OF AGENTS AND SUB-AGENTS OF IPLLC AND MEGAFILM. ............... 16

    V.     DEFENDANTS ARE NOT ENTITLED TO COSTS OF SUIT UNDER
             SECTION 512(f). ........................................................................................ 18

    VI.    DEFENDANTS LACK STANDING TO SEEK INJUNCTIVE RELIEF. ......... 19

**CONCLUSION** .............................................................................................................. 20

1

**TABLE OF AUTHORITES**

**Cases**

*Alexandria Real Est. Equities, Inc. v. Bugsby Prop., LLC,*
  2021 WL 821576 (Cal. Ct. App. Mar. 4, 2021) ...........................................................9

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
  790 F. Supp. 2d 1024 (N.D. Cal. 2011) ...........................................................18

*Beckwith v. Dahl,*
  205 Cal. App. 4th 1039 (2012) ...........................................................15

*Building Permit Consultants, Inc. v. Mazur,*
  122 Cal. App. 4th 1400 (2004) ...........................................................15

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ...........................................................19

*Crogan v. Metz,*
  47 Cal. 2d 398 (1956) ...........................................................16

*Curci Invs., LLC v. Baldwin,*
  14 Cal. App. 5th 214 (2017) ...........................................................9

*Erlich v. Menezes,*
  21 Cal. 4th 543 (1999) ...........................................................14

*Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles,*
  152 Cal. App. 4th 720 (2007) ...........................................................16

*Freeman & Mills, Inc. v. Belcher Oil Co.,*
  11 Cal. 4th 85 (1995) ...........................................................14

*Gil v. City of Pensacola, Florida,*
  396 F. Supp. 3d 1059 (N.D. Fla. 2019) ...........................................................20

*Goehring v. Chapman University,*
  121 Cal. App. 4th 343 (2004) ...........................................................15

*Ground Zero Museum Workshop v. Wilson,*
  813 F. Supp. 2d 678 (D. Md. 2011) ...........................................................18

*Hill v. Wrather,*
  158 Cal. App. 2d 818 (1958) ...........................................................15

*Hyles v. Mensing,*
  849 F.2d 1213 (9th Cir. 1988) ...........................................................14

*Izquierdo v. Panera Bread Co.,*
  450 F. Supp. 3d 453 (S.D.N.Y. 2020) ...........................................................19

*Jamison v. Royal Caribbean Cruises, Ltd.,*
  2009 WL 559722 (S.D. Cal. Mar. 4, 2009) ...........................................................17

*Jet Source Charter, Inc. v. Gemini Air Group Inc.,*
  510 Fed. Appx. 525 (9th Cir. 2013) ...........................................................14

*Kizer v. Cnty. of San Mateo,*
  53 Cal. 3d 139 (1991) ...........................................................16

*Lenz v. Universal Music Corp.,*
  2008 WL 962102 (N.D. Cal. Apr. 8, 2008) ...........................................................13

*Lenz v. Universal Music Corp.,*
  2010 WL 702466 (N.D. Cal. Feb. 25, 2010) ...........................................................18

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION
FOR SUMMARY JUDGMENT

*Littlejohn v. SF City,*
    2010 WL 5158330 (N.D. Cal. Dec. 14, 2010) .................................................................. 19

*Marek v. Chesny,*
    473 U.S. 1 (1985) .................................................................................................................. 18

*Mauia v. Petrochem Insulation, Inc.,*
    2018 WL 3241049 (N.D. Cal. July 3, 2018) ....................................................................... 19

*Mesler v. Bragg Mgt. Co.,*
    39 Cal. 3d 290 (1985) ............................................................................................................ 9

*Meyer v. Holley,*
    537 U.S. 280 (2003) ............................................................................................................. 17

*Miranda v. Coach, Inc.,*
    2015 WL 636373 (N.D. Cal. Feb. 13, 2015) ...................................................................... 19

*Online Pol'y Grp. v. Diebold, Inc.,*
    337 F. Supp. 2d 1195 (N.D. Cal. 2004) .............................................................................. 13

*Orcilla v. Big Sur, Inc.,*
    244 Cal. App. 4th 982 (2016) .............................................................................................. 15

*Patrick v. Alacer Corp.,*
    167 Cal. App. 4th 995 (2008) .............................................................................................. 15

*Sandler v. Sanchez,*
    206 Cal. App. 4th 1431 (2012) ............................................................................................ 17

*Scott v. Pasadena Unified Sch. Dist.,*
    306 F.3d 646 (9th Cir. 2002) ............................................................................................... 20

*Thacker v. AT&T Corp.,*
    2021 WL 871178 (E.D. Cal. Mar. 9, 2021) .......................................................................... 5

*UnitedHealthcare Ins. Co. v. Sahara Palm Plaza, LLC,*
    2022 WL 4700544 (C.D. Cal. July 18, 2022) ..................................................................... 17

*Wright v. Serv. Emps. Int'l Union Loc. 503,*
    48 F.4th 1112 (9th Cir. 2022) .............................................................................................. 19

**Statutes**

17 U.S.C. § 512 ...........................................................................................................................passim

37 C.J.S. 288 § 40 ............................................................................................................................. 15

Cal. Civ. Code § 2349 ....................................................................................................................... 17

Cal. Civ. Code § 2351 ....................................................................................................................... 17

Cal. Civ. Code § 3294 ....................................................................................................................... 16

**Other Authorities**

1 Nimmer on Copyright 1.01 ............................................................................................................ 13

**Rules**

Federal Rules of Civil Procedure 56 .................................................................................................. 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 13, 2023 at 10:00 a.m., Counterclaim-Defendants Pirate Monitor Ltd. and Gabor Csupo will move the Court for an order granting summary judgment in favor of Counterclaim-Defendants and against Defendants/Counterclaimants YouTube, LLC and Google LLC ("YouTube" or "Defendants").

**STATEMENT OF REQUESTED RELIEF**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Counterclaim-Defendants Pirate Monitor Ltd. and Gabor Csupo request that the Court grant summary judgment against Defendants and Counterclaimants YouTube, LLC and Google LLC dismissing the Amended Counterclaims in their entirety.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pirate Monitor Ltd. had no role in the events of Fall 2019 on which Defendants' Counterclaims are based.  It was not until January 2020 that Pirate Monitor Ltd. was acquired by Gabor Csupo, and before then it was dormant.  Pirate Monitor Ltd. has since voluntarily dismissed its claims against Defendants, with prejudice, and is no longer a member of the Plaintiff class.  All counterclaims against it should be dismissed.

Absent liability by Pirate Monitor Ltd., the thin thread connecting the counterclaims to Plaintiffs' substantial claims against Defendants dissolves, revealing the counterclaims for what they are:  limited allegations of wrongdoing, by strangers to the lawsuit, unrelated to the allegations of infringement in the Amended Complaint, with no actual damages, which Defendants have been fighting to keep alive for the sole purpose of attempting to smear the Plaintiff classes in hopes of scoring points with the jury.

It is time to bring that effort to an end.  Besides Pirate Monitor Ltd., undisputed facts also

---

[1] Defendants and Counterclaimants' Amended Counterclaims were filed on February 19, 2021 [ECF 60] ("Defs.' Counterclaims") and remain the operative Counterclaims.  They were also included, unamended, in Defendants and Counterclaimants' Answer to Amended Complaint, dated August 22, 2022 [ECF 160].  The contents and paragraph numbering remained the same. Pirate Monitor Ltd.'s Answer to Defendants' Amended Counterclaims was filed on March 12, 2021 [ECF 68] and Gabor Csupo's Answer to Defendants' Amended Counterclaims was filed on March 17, 2021 [ECF 69] ("Csupo Answer").

1  establish that there is no basis for the claims against the other Counterclaim Defendants,

2  Mr. Csupo and "Pirate Monitor LLC," the latter of which does not exist.  Further, the alleged

3  counterclaims fail as a matter of law.

4                                                          ***

5          In early 2019, Gabor Csupo, the Hungarian-American, five-time Emmy award-winning

6  producer, director, and creator of the animated series *Rugrats* and many other beloved children's

7  shows, acquired a company called Intellectual Property LLC ("IPLLC") whose purpose was to

8  identify and act on copyright infringements for a number of Hungarian films.  IPLLC had the right

9  to upload short videos of its clients' works and had the right to designate responsibilities to agents

10 and sub-agents.  Mr. Csupo enlisted Endre Holman, who had developed a software technology

11 called "Pirate Monitor" that was designed to identify copyright infringement on the internet.

12 Acting on behalf of IPLLC, Mr. Csupo gave permission to Mr. Holman and his agents to send in

13 Takedown Notices on behalf of IPLLC and its client MegaFilm kft. ("MegaFilm").  Mr. Csupo

14 was always forthcoming with YouTube as to the owner of the copyrights (MegaFilm), the

15 company responsible for enforcing them (IPLLC), and the films at issue. Following one

16 Takedown Notice sent within weeks of Mr. Csupo's acquiring IPLLC and IPLLC becoming

17 MegaFilm's agent, and months before any misconduct is alleged to have occurred, he sent

18 YouTube a copy of IPLLC's contract with MegaFilm.  Mr. Csupo never authorized nor was he

19 aware beforehand of any Takedown Notices being sent in which any of the representations therein

20 were untrue, as Defendants allege occurred during late October to mid-November 2019.

21         In January 2020, Mr. Csupo acquired previously dormant Pirate Monitor Ltd., which

22 purchased three films, none of which were the subject of the misconduct alleged to have occurred

23 in October-November 2019.  Pirate Monitor Ltd. sent in valid Takedown Notices and then filed

24 this lawsuit.

25         The problem for Defendants is that Mr. Csupo and Pirate Monitor Ltd., the only two

26 persons YouTube has sued—despite being on notice of IPLLC's, Mr. Holman's, and others' roles

27 for years—are not the persons responsible for the misconduct that occurred.  Pirate Monitor Ltd.

28

was acquired by Csupo after those events and its sole function was to, as it did, legitimately acquire full ownership of movies, send in valid Takedown Notices, and join putative class claims. There is no basis for holding Pirate Monitor Ltd. liable for actions pre-dating its operation either directly or through "reverse" piercing of the corporate veil.  As to Pirate Monitor LLC, it does not exist, and thus cannot be sued or held liable.  With respect to Mr. Csupo, all of Defendants' counterclaims fail for multiple reasons.

*First*, YouTube's breach of contract claim—based on the uploading of content owned by a third-party, MegaFilm—fails because it is undisputed IPLLC had authority to upload MegaFilm's content on YouTube.  YouTube's breach of contract claim based on the provision of an allegedly "false" name by someone working at the direction of Mr. Holman likewise fails.  There is no evidence that the information provided by that individual was untrue or materially breached any contractual obligations.  Indeed, YouTube allows users to choose any name they want and change their name whenever they want.  Any suggestion that YouTube requires users to submit their full, legal name when signing up for a YouTube account is specious and contradicts YouTube's own documents.  Finally, none of YouTube's claimed damages were caused by the opening of the accounts or the uploading of videos.  *See* Section II, below.

*Second*, YouTube's fraud claim fails because IPLLC had the authority to upload the videos, and there is no evidence of any other fraud in the opening of the accounts or the uploading of the videos.  YouTube cannot, and does not, base a common-law fraud claim on the representations in the Takedown Notices because such claims are preempted by 17 U.S.C. § 512. *See* Section III, below.

*Third*, all of the alleged wrongful conduct at issue was committed by agents of IPLLC and/or sub-agents of MegaFilm, and thus Mr. Csupo cannot be held liable as a matter of law. There are only two possibilities: when Mr. Holman submitted the alleged wrongful Takedown Notices for MegaFilm, he was either acting as an agent of IPLLC or a sub-agent of MegaFilm.  If he was acting as an agent of IPLLC, under traditional agency principles, Mr. Csupo as IPLLC's owner cannot be liable.  Alternatively, if Mr. Holman was acting as a sub-agent of MegaFilm,

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION
FOR SUMMARY JUDGMENT

1  MegaFilm's original agent (IPLLC) cannot be held liable under California law, and IPLLC's

2  owner certainly cannot be liable.  Either way, Mr. Csupo cannot be held liable and thus all claims

3  against him personally should be dismissed.  *See* Section IV, below.

4          *Fourth*, the Court should dismiss YouTube's § 512 claim for litigation attorneys' fees

5  because § 512(f) only authorizes attorneys' fees incurred "in removing or disabling access to the

6  material or activity claimed to be infringing."  17 U.S.C. § 512(f).  *See* Section V, below.

7          *Finally*, YouTube does not have standing to seek injunctive relief because it is undisputed

8  that Mr. Csupo is no longer engaged in the business of representing clients in connection with

9  copyright infringement following his involvement in IPLLC and Pirate Monitor Ltd.  *See* Section

10  VI, below.

11          There are no disputed issues of material fact on any of these points, and the counterclaims

12  should be dismissed in their entirety as a matter of law.

**STATEMENT OF ISSUES TO BE DECIDED**

14  1.     Whether Pirate Monitor Ltd. can be held liable as a matter of law for events with which it

15  could have had no involvement, because they predated its acquisition by Gabor Csupo.

16  2.     Whether Defendants have failed to come forward with any evidence showing that the

17  creation of the Ransom Nova accounts (defined below) and uploading of non-infringing videos

18  materially breached the TOS.

19  3.     Whether Defendants' Counterclaim for common law fraud, to the extent it is based on

20  allegedly false Takedown Notices, is pre-empted by 17 U.S.C. §512(f).

21  4.     Whether Defendants' Counterclaim for common law fraud, to the extent it is not based on

22  allegedly false Takedown Notices, is duplicative of Defendants' Counterclaim for breach of

23  contract and fails as a matter of law.

24  5.     Whether IPLLC's owner, Mr. Csupo, can be liable as a matter of law for conduct

25  committed by agents of IPLLC and/or sub-agents of MegaFilm.

26  6.     Whether Defendants are entitled to recovery of attorneys' fees and costs of suit based on

27  their claim for violation of 17 U.S.C. §512(f).

28

1    7.    Whether Defendants lack Article III standing to bring an action for injunctive relief

2    because they have failed to come forward with any evidence showing a threat of future injury.

3                                   **STATEMENT OF FACTS**

4          Defendants' Counterclaims turn on Takedown Notices submitted during a discrete, 2½-

5    week period in Fall 2019.  (Defs.' Counterclaims ¶¶ 35–38.)  The events of that period had

6    nothing to do with Pirate Monitor Ltd., a BVI company that was not acquired by Gabor Csupo

7    until January 2020.[2]  They also had nothing to do with the rampant infringements alleged by the

8    Plaintiff class in the Amended Complaint in this action.  [ECF 99.]

9          ***Events of 2019.***  Gabor Csupo is a well-known Hungarian-American animator and film

10   maker, who is the creator of such beloved classics as *Rugrats* and *Rocket Power*, as well as a

11   contributor to *The Simpsons*.  (Csupo Answer at 2.)  In early 2019, Mr. Csupo acquired IPLLC, a

12   Delaware company.  (Csupo Answer ¶ 4; Ex. 2—Csupo Dep. at 26:22–27:10; Ex. 16—IPLLC

13   Organizational Documents.)[3]  IPLLC was formed for the purpose of providing "intellectual rights

14   protection, online service provision, web development" and related activities.  (Ex. 16—IPLLC

15   Organizational Documents.)  IPLLC had as clients some 40 Hungarian filmmakers.  (Ex. 2—

16   Csupo Dep. at 142:10–17.)  IPLLC had responsibility for protecting their clients' films from

17   unauthorized uploads.  (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract ¶ 1.3.) [4]

18

19   _____

20   [2] To the knowledge of Mr. Csupo and Pirate Monitor Ltd., no entity registered under the name
     "Pirate Monitor LLC" exists.  (Ex. 2—Csupo Dep. at 117:18–25.)  Defendants acknowledge they
     are aware of none.  (Defs.' Counterclaims ¶ 7.)  No counsel has appeared on behalf of "Pirate
21   Monitor LLC" and no entity of that name answered the Counterclaims.  Since "Pirate Monitor
     LLC" is a non-existent entity, joinder to this action would be futile.  *Thacker v. AT&T Corp.*, 2021
22   WL 871178, at *3 (E.D. Cal. Mar. 9, 2021) ("Based on the sworn declaration accompanying
     AT&T's opposition, the court finds that it would be futile to join a nonexistent entity as a
23   defendant in this action.").

     [3] All numerical exhibits cited herein ("Ex.") are attached to the March 3, 2023 Declaration of
24   Randall P. Ewing, Jr. in Support of Counterclaim Defendants Pirate Monitor Ltd. and Gabor
     Csupo's Motion for Summary Judgment ("Ewing Decl.").  The 30(b)(6) deposition of Gabor
25   Csupo, dated July 5, 2022, is referred to as "Csupo Dep."  The 30(b)(1) deposition of Mr. Csupo,
     also dated July 5, 2022, is referred to as "Csupo 30(b)(1) Dep."  The Csupo Dep. and Csupo
26   30(b)(1) Dep. are attached as Exhibits 2 and 1 to the Ewing Decl.

27   [4] Exhibits previously introduced at the deposition of Gabor Csupo referred to herein include the A
     version, which is in the original Hungarian, and the B version, which is a verified English
28   translation of the Hungarian.

1    MegaFilm is a Hungarian company that owns the copyrights for numerous Hungarian

2    films.  (Ex. 2—Csupo Dep. at 150:23; Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract.)  MegaFilm

3    had a significant problem with unauthorized uploads of its works onto YouTube.  (Ex. 5 and Ex.

4    6—MegaFilm-IPLLC Contract; Ex. 2—Csupo Dep. at 153:14–17.)  On March 28, 2019,

5    MegaFilm entered into an agreement with IPLLC authorizing IPLLC to enforce MegaFilm's

6    copyrights that were being infringed on YouTube.  (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract

7    ¶ 1.3; Ex. 2—Csupo Dep. at 150:9–14.)  The agreement authorized IPLLC to monitor YouTube

8    and act to remove infringements.  (Ex. 2—Csupo Dep. at 150:9–14; Ex. 5 and Ex. 6—MegaFilm-

9    IPLLC Contract ¶ 2.3, ¶ 2.5.)  Pursuant to the agreement, IPLLC was MegaFilm's agent.  (Ex. 5

10   and Ex. 6—MegaFilm-IPLLC Contract at -122.)  IPLLC was also authorized to delegate authority

11   to its "employees and representatives."  (*Id*.)  The list of films covered by the agreement include

12   *Czak Szex es mas semi* and *Zimmer Feri*.  (Ex. 2—Csupo Dep. at 177:2–178:1; Ex. 7 and Ex. 8—

13   4/03/2019 email from Csupo to YouTube at -147.)  Soon after IPLLC entered into the agreement

14   with MegaFilm, it began sending Takedown Notices for infringements of MegaFilm works, for

15   which YouTube has not alleged any impropriety.  (Ex. 17—Removal Confirmation; Ewing Decl. ¶

16   18.)  Mr. Csupo was forthcoming with YouTube and sent YouTube a copy of IPLLC's contract

17   with MegaFilm identifying IPLLC and MegaFilm, and listing the films that were subject to the

18   agreement, well before the alleged misconduct occurred.  (Ex. 7 and Ex. 8—4/03/2019 email from

19   Csupo to YouTube.)  MegaFilm also wanted IPLLC to promote its films by uploading the films,

20   as well as short promotional clips, to authorized channels.  (Ex. 2—Csupo Dep. at 154:15–24,

21   162:13–22, 173:16–174:6.)

22       The person charged with running IPLLC's day-to-day operations was Endre Holman, a

23   Hungarian technology expert.  (*Id.* at 30:22–23; 132:3–4; 133:22–134:2.)  IPLLC delegated its

24   duties to Mr. Holman, which the contract permitted.  (Ex. 5 and Ex. 6—MegaFilm-IPLLC

25   Contract at -126.)  Mr. Holman had developed and owned a software program titled "Pirate

26   Monitor" that was designed to identify copyright infringements on the internet.[5]  (Ex. 2—Csupo

27   _____

28   [5] The Pirate Monitor software was ultimately unsuccessful at identifying infringements of

1    Dep. at 111:17–20.)  Mr. Holman employed a network of independent contractors and had several

2    entities of his own.  (*Id.* at 132:3–4, 135:5–13, 175:2–4.)

3        ***The Ransom Nova Accounts.***  During fall 2019, an individual, presumably hired by one of

4    Mr. Holman's employees, uploaded to YouTube clips of two films that IPLLC was authorized by

5    MegaFilm to upload, *Czak Szex es mas semi* and *Zimmer Feri*.  (*Id*. at 177:2–179:12; 181:4–14;

6    182:24–183:09; Defs.' Counterclaims ¶¶ 32–33.)  The clips were uploaded to YouTube via

7    accounts opened by a person who identified himself as a 33-year-old male, living in Pakistan,

8    using a Gmail address, all of which appears to be accurate.  The name chosen for the account was

9    "Ransom Nova," also within Google's guidelines.[6]  (Ex. 19—Ransom Nova YouTube Admin

10   Page.)

11       ***Removing the Videos.***  MegaFilm subsequently instructed IPLLC to "take down

12   everything" because IPLLC could not accomplish what MegaFilm wanted to accomplish.  (Ex.

13   2—Csupo Dep. at 191:17–22; 202:19–203:3; 204:15–17.)  MegaFilm "just wanted off --

14   everything off of YouTube."  (*Id.* at 208:19–23.)  Mr. Csupo, in turn, communicated these

15   instructions to Mr. Holman, saying "'Please take down everything.'"  (*Id.* at 191:15–192:8 ("All I

16   said, 'I got instructions from my client to take all the materials down, what you guys uploaded.'

17   That's all I said.  And that – that's the very last thing I got involved with this whole thing.").)

18       MegaFilm did not instruct IPLLC to submit Takedown Notices for the authorized video

19   uploads (Ex. 1—Csupo 30(b)(1) Dep. at 13:3–7), nor did IPLLC or Mr. Csupo instruct

20   Mr. Holman to submit Takedown Notices for those videos.  (Ex. 2—Csupo Dep. at 191:23–

21   192:15; 205:4–5; Ex. 1—Csupo 30(b)(1) Dep. at 13:15–17.)  Neither Mr. Csupo nor IPLLC ever

22   _____

23   Hungarian films on YouTube, and IPLLC lost a previous contract it had with the national
     Hungarian Film Fund.  (Ex. 2—Csupo Dep. at 112:21–113:1.)

24   [6] The instructions for opening a new YouTube account allow the individual opening the account to
     select the name they wish to use.  (*See* Ex. 20—"Create your Google account", available at:

25   https://web.archive.org/web/20190523051354/https://accounts.google.com/SignUpWithoutGmail?
     service=youtube&continue=https%3A%2F%2Fwww.youtube.com%2Fs (last accessed: March 3,

26   2023.); *see also* Ex. 22—"Change your Google Account picture, name & other info" ("You can
     change your name as many times as you want."), available at

27   https://support.google.com/accounts/answer/27442?hl=en&co=GENIE.Platform%3DDesktop#zi
     ppy=%2Cname%2Cnickname (last accessed:  March 3, 2023).)

28

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION
FOR SUMMARY JUDGMENT

authorized anyone to send a Takedown Notice if the statements listed in the Takedown Notice were not true.  (Ex. 1—Csupo 30(b)(1) Dep. at 14:21–15:7.)

Nevertheless, between October 29 through November 15, 2019, Takedown Notices were submitted that bore Mr. Csupo's electronic signature.  (*See, e.g.*, Ex. 10 and Ex. 11—Removal Confirmation.)  The Takedown Notices accurately stated that MegaFilm kft. owned the copyright to the work; however, they wrongly stated that the use of the material was not authorized by the copyright owner.  (Ex. 10 and Ex. 11—Removal Confirmation.)  Mr. Csupo testified that the Takedown Notices were likely submitted by Mr. Holman's employees, acting under Mr. Holman's direction.  (Ex. 2—Csupo Dep. at 216:25–217:8.)  YouTube removed the videos.  (Ex. 10 and Ex. 11—Removal Confirmation.)

Defendants allege they investigated the Takedown Notices submitted for the Ransom Nova account uploads and closed the accounts.  (Defs.' Counterclaims ¶ 35.)  The efficiency with which YouTube vetted the Takedown Notices demonstrated that its vetting process worked.  (Defs.' Counterclaims ¶¶ 50–51.)

***

***Pirate Monitor Ltd.***  All of the events outlined in Defendants' Counterclaims had long since ended when Gabor Csupo acquired a company called Pirate Monitor Ltd., in January 2020.  (Ex. 3 and Ex. 4—Pirate Monitor Ltd. Acquisition Documents.)  Pirate Monitor Ltd. is a BVI company that was dormant before Mr. Csupo acquired it.[7]  (Ex. 2—Csupo Dep. at 68:19–69:18.)  Pirate Monitor Ltd. subsequently acquired the rights to three films that were not part of the events of 2019:  *Immigrants – Joska Menmi Amerika*; *Vakvaganyok;* and *Zimmer Feri 2*, all from MegaFilm.  (Ex. 9—MegaFilm-Pirate Monitor Ltd. Agreement; Ex. 12—Pirate Monitor Ltd.'s Am. Resp. to Interrog. 1.)  *Zimmer Feri 2* is a different film from the film titled *Zimmer Feri* that is the subject of the Counterclaims.  (Ex. 7 and Ex. 8—4/03/2019 email from Csupo to YouTube at -147.)  Pirate Monitor Ltd. was a plaintiff in the original class action complaint filed against Defendants. [ECF 1.]  It alleged valid claims of infringement based on the three films it acquired

---

[7] Pirate Monitor Ltd. has no relationship to "Pirate Monitor LLC," which does not exist.

1   from MegaFilm,[8] but voluntarily dismissed those claims with prejudice in March 2021 in the

2   interests of simplifying class certification, and is no longer a member of the Plaintiff class.  [ECF

3   66.]

4                                    **ARGUMENT**

5   **I.      PIRATE MONITOR LTD. IS NOT LIABLE FOR EVENTS IN FALL 2019.**

6           Pirate Monitor Ltd. did not, and could not have, played any role in the events of Fall 2019

7   that are the subject of the counterclaims.  Mr. Csupo did not acquire Pirate Monitor Ltd. until

8   January 2020.  (Ex. 3 and Ex. 4—Pirate Monitor Ltd. Acquisition Documents.) In fact, in Fall

9   2019, the company was "dormant" and had no activities at all.  (Ex. 2—Csupo Dep. at 68:19–

10  69:18.)  Defendants have no claim for liability against Pirate Monitor Ltd.

11          The actions of Mr. Csupo or others in 2019 cannot be attributed to Pirate Monitor Ltd. to

12  create a claim against it retroactively.  A court may treat a corporation as the "alter ego" of its

13  shareholders "only if (1) there is such unity of interest and ownership that the separate

14  personalities of the [LLC] and the individual no longer exist"; and (2) "an inequitable result will

15  follow" "if the acts [of the individual] are treated as those of the [individual] alone." *Alexandria*

16  *Real Est. Equities, Inc. v. Bugsby Prop., LLC*, 2021 WL 821576, at *5 (Cal. Ct. App. Mar. 4,

17  2021) (cleaned up) (quoting *Mesler v. Bragg Mgt. Co.*, 39 Cal. 3d 290, 300 (1985) and citing

18  *Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 221–22 (2017)).

19          Here, there was no relationship, much less a unity of interest, between Mr. Csupo and

20  Pirate Monitor Ltd. in 2019.  In addition, there would be no inequitable result from treating them

21  as separate entities.  To the contrary, it would be unjust to pierce the corporate veil in reverse,

22  because Mr. Csupo and Pirate Monitor Ltd. had completely separate roles in their interactions with

23  defendants.  As noted, Pirate Monitor Ltd. was dormant and not even owned by Mr. Csupo at the

24  time of the alleged misconduct, so it had no role at all.  *See Alexandria*, 2021 WL 821576, at *5–6

25  (even where individual and company shared a "unity of interest," no inequitable result because

26

27  ---
    [8] Due to a scrivener's error, Pirate Monitor Ltd. mistakenly alleged ownership of a film that was
28  not among the three it owned, but quickly corrected that error.  (Ex. 12—Pirate Monitor Ltd.'s
    Am. Resp. to Interrog. 1.)

1  they had separate and distinct roles).  Pirate Monitor Ltd. is an innocent party, so piercing the veil

2  in reverse as to liability would result in an inequitable outcome.  *Id.*

3       As a result, summary judgment in favor of Counterclaim-Defendant Pirate Monitor Ltd.

4  should be entered on all of the Counterclaims.

## II.   DEFENDANTS' COUNTERCLAIM FOR BREACH OF CONTRACT FAILS AS A MATTER OF LAW.

6       Defendants' first Counterclaim alleges breach of contract based solely on the establishment

7  of and uploads to YouTube by the Ransom Nova accounts in Fall 2019.  (Defs.' Counterclaims

8  ¶¶ 55–56.)  Undisputed facts show that there was no material breach of the TOS[9] by the opening of

9  or uploads by the Ransom Nova accounts.  Nor did those activities proximately cause any actual

10  damages to Defendants.

### A.  No Material Breach of TOS.

12       Defendants allege the TOS were breached in two ways: (i) by "failing to provide complete

13  and accurate identification information" when creating the Ransom Nova accounts; and (ii) by

14  those accounts being used to upload videos that infringed third-party copyrights.  (Defs.'

15  Counterclaims ¶ 58(i), (ii).)  Undisputed facts establish that neither of those TOS provisions was

16  materially breached by the Ransom Nova accounts.

17       *First,* the video clips uploaded by the Ransom Nova accounts did not infringe any third-

18  party copyright.  Defendants acknowledge this possibility in their third counterclaim.  (*See* Defs.'

19  Counterclaims ¶ 77 (alleging in the alternative that representations made when the videos were

20  uploaded, that the videos did not infringe, "were true").)  The clips are alleged to have been from

21  two films, *Czak Szex es mas semi* and *Zimmer Feri*.  (Defs.' Counterclaims ¶ 49.)  Both films were

22  included in the license granted by MegaFilm to IPLLC.  (Ex. 7 and Ex. 8—4/03/2019 email from

23  Csupo to YouTube at -147.)  Mr. Csupo testified that none of the uploads, even the clips of which

24  he was unaware at the time, infringed on any copyright.  (Ex. 2—Csupo Dep. at 190:25–191:2.)

---

[9]  (*See* Ex. 15—5/24/2018 TOS.)  According to the Wayback machine, the TOS that were in effect in May 2018 remained in effect until December 2019, so GOOG-SCHNDR-00000263-66 would have been the governing TOS at the time the Ransom Nova accounts were established in Fall 2019.

1   There is no contrary evidence.

2       *Second,* the account opening information provided did not violate the TOS.  Defendants

3   allege that "complete and accurate identification information" was required to open an account,

4   but this is wishful thinking and rewrites the contract.  While the TOS state that "you must provide

5   accurate and complete information," they do not require complete "identification" information.

6   The Google account opening form in effect in 2019 asks for name, email (Gmail) address,

7   password, birthday, gender, mobile phone and location.[10]  But the accompanying instructions,

8   titled "Why Google asks for certain info to create an account," make it clear that the user may

9   choose whatever name that person wants, stating "Enter the name you want to use on Google

10  services.  When you share content with others, like a document or photo, your name will show up

11  with it."[11]  Birth name is not required.

12      The person who opened the Ransom Nova accounts provided the required information.

13  Documents produced by Defendants show that, besides the name selected ("Ransom Nova"), the

14  person's gender was given as male; age 33; email address was a confirmed Gmail address; and

15  location was given as Pakistan. (*e.g.*, Ex. 19—Ransom Nova YouTube Admin Page.)  Along with

16  the account name, which was in accordance with Google's instructions for opening an account,

17  that information was accurate.  There was no material misrepresentation.

18      **B.  No Proximate Cause or Actual Damages.**

19      Defendants fail to allege any actual damages attributable to the claimed breaches, namely

20  the establishment of and uploads by the Ransom Nova accounts.  Nor could there be.  Defendants

21  do not even attempt to allege any costs related to the mere opening of the accounts, the uploading

22  of content by the user, or allowing the content to remain on the YouTube platform.  The accounts

23  and video clips, even 1,900 of them, could have sat on YouTube's site—viewed or unviewed—

24

---

25  [10] (Ex. 20—" Create your Google Account", available at:
    https://web.archive.org/web/20190523051354/https://accounts.google.com/SignUpWithoutGmail?
26  service=youtube&continue=https%3A%2F%2Fwww.youtube.com%2Fs (last accessed: March 3,
    2023).)

27  [11] (Ex. 21—""Why Google asks for certain info to create an account" available at
    https://web.archive.org/web/20190602204110/https://support.google.com/accounts/answer/173322
28  4?hl=en (last accessed: March 3, 2023).)

indefinitely, with no damages to Defendants.  (*See* Ex. 18—1/10/23 Ltr. at 2 (admitting that there were approximately ▆▆▆▆ videos on the YouTube platform as of August 2019).)

Instead, in an apparent attempt to backfill this obvious gap, Defendants sweep in the cost of processing and investigating the later Takedown Notices.  (Defs.' Counterclaims ¶ 59.)  But the Takedown Notices were not submitted using the Ransom Nova accounts and are not alleged to have breached the Ransom Nova contract with Defendants.

Thus, there are no "actual damages" that were "proximately caused" by the alleged breaches of the TOS by the opening of and uploads via the Ransom Nova accounts.

**C.  No Claim for Indemnification or Costs of Defending Plaintiffs' Claims.**

Defendants attempt to tack on a claim for their costs of defending against the main class action as well as the potential liability they face to the Plaintiff class, which is qualified by the premise "To the extent Pirate Monitor LTD's claims in this action implicate content that Pirate Monitor itself uploaded."  (Defs.' Counterclaims ¶ 60.)  This, too, is defeated by undisputed facts. *Id.*  Pirate Monitor Ltd.'s original claims in this action, which have since been voluntarily dismissed with prejudice, concerned different films than the content alleged to be uploaded: *Zimmer Feri 2*, *Immigrants – Joska Menmi Amerika*, and *Vakvaganyok*.  (Ex. 12—Pirate Monitor Ltd.'s Am. Resp. to Interrog. 1.)  Thus, the premise of Defendants' claim for costs of defending Plaintiffs' action, as well as liability, fails.

Similarly, Defendants' claim to contractual indemnification based on Ransom Nova's alleged breaches fails.  (Defs.' Counterclaims ¶ 61.)  As demonstrated above, the Ransom Nova accounts did not violate the TOS or any third-party right; and the Takedown Notices that are the subject of the Counterclaims were not submitted via the Ransom Nova accounts.  In any event, Plaintiffs' substantial claims in the Amended Complaint are entirely unrelated to the Ransom Nova accounts and do not "arise from" those accounts, so Defendants' cost of defending against the class claims and those claims' potentially enormous liability do not fall within the indemnification provision of the TOS.  (Ex. 15—5/24/2018 TOS § 11.)

### III.  DEFENDANTS' COUNTERCLAIM FOR COMMON LAW FRAUD FAILS AS A MATTER OF LAW.

Defendants' second Counterclaim alleges common law fraud.  But this counterclaim repeats the same alleged violations of the TOS as the breach of contract claim, based on the very same opening of, and uploading of video clips by, the Ransom Nova accounts.  (Defs.' Counterclaims ¶¶ 63–67.)  The counterclaim then simply adds words like "intention" and "scheme."  (Defs.' Counterclaims ¶¶ 68–69.)

Undisputed facts establish that the claim for common law fraud fails as a matter of law.  Any fraud claim based on Takedown Notices is preempted by § 512(f).  As demonstrated above, none of the identified promises in the TOS related to the Ransom Nova accounts were materially false.  And as further demonstrated below, adding that the claimed breaches were "intentional" simply alleges a "willful" breach of contract, which is duplicative of the breach of contract claim.

#### A.  Any Common Law Fraud Claim Based on Takedown Notices Would Be Preempted.

Notably, while Defendants mention the Takedown Notices in their counterclaim for fraud (*see* Defs.' Counterclaims ¶¶ 69, 72), they do not expressly allege fraud based on the Takedown Notices themselves.  Nor could they.  Under well-established law, such a claim would be preempted by federal law.  *See Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004) ("If adherence to the DMCA's provisions simultaneously subjects the copyright holder to state tort law liability, there is an irreconcilable conflict between state and federal law."); *see also Lenz v. Universal Music Corp.*, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) (dismissing state common law claim as preempted by § 512(f); "[g]iven that a special provision of the Copyright Act itself regulates misrepresentation in such notifications, that provision constitutes the sole remedy for a customer who objects to its contents and their effects" (quoting 1 Nimmer on Copyright 1.01(B)(3)(a) at 1–77)).

Defendants attempt to plead around the preemption bar and create the illusion of a fraud claim by referencing a purported "scheme" to submit false Takedown Notices, without ever alleging fraud based on the Takedown Notices themselves.  This should be rejected as trying to get

in through the back door what they cannot allege directly.  *Hyles v. Mensing*, 849 F.2d 1213, 1215

(9th Cir. 1988) ("Plaintiffs may not avoid removal by 'artfully pleading' their claims to omit

references to preemptive federal law.").

**B.  The Non-Preempted Fraud Claims Are Duplicative of the Breach of Contract Claims.**

Without the allegedly false Takedown Notices, all that is left of the purported fraud claim

are the alleged breaches of the TOS that are the subject of the first counterclaim.  These

allegations are entirely duplicative of the Defendants' breach of contract counterclaims and seek

identical damages, and fail for the same reasons.  As demonstrated above, Defendants identify no

"promise" in the TOS that the Ransom Nova accounts did not comply with, and the Takedown

Notices are not actionable as common law fraud.

Under California law, "a breach of contract becomes tortious only when it also violates a

duty independent of the contract arising from principles of tort law."  *Erlich v. Menezes*, 21 Cal.

4th 543, 551 (1999) (citing cases).  Here, there was no material deceit in uploading non-infringing

video clips or opening the Ransom Nova accounts.  Tacking on a "scheme" based on a preempted

fraud claim is an attempt to extract tort damages from a breach of contract claim, which California

law does not allow.  *Jet Source Charter, Inc. v. Gemini Air Group Inc.*, 510 Fed. Appx. 525, 526

(9th Cir. 2013) (reversing jury award of tort damages because defendant had no independent duty

outside the contract that would trigger tort liability); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11

Cal. 4th 85, 103 (1995) (citing general rule precluding tort recovery for noninsurance contract

breach: "the Legislature has not manifested an intent to either expand contract breach recovery or

to provide tort damages for ordinary contract breach").

**C.  No Actual Damages Were Proximately Caused by the Allegedly Fraudulent Breaches.**

Actual damages are an essential element of a cause of action for common law fraud.  It is

widely accepted that "fraud without damage or injury is not remediable," and "[d]eception which

does not cause loss is not a fraud in the legal sense."  *Hill v. Wrather*, 158 Cal. App. 2d 818, 825

1  (1958) (citing 37 C.J.S. 288 § 40).  "Misrepresentation, even maliciously committed, does not

2  support a cause of action unless the plaintiff suffered consequential damages."  *Orcilla v. Big Sur,*

3  *Inc.,* 244 Cal. App. 4th 982, 1008 (2016) (citation and internal quotation marks omitted).

4  Additionally, "it is not enough for the complaint to allege damage was suffered"; instead, the

5  "fraud plaintiff must also allege his damages were caused by the actions he took in reliance on the

6  defendant's misrepresentations."  *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012) (*citing*

7  *Goehring v. Chapman University*, 121 Cal. App. 4th 343, 364–65 (2004)).  However, "if the

8  defrauded plaintiff would have suffered the alleged damage even in the absence of the fraudulent

9  inducement, causation cannot be alleged and a fraud cause of action cannot be sustained."  *Id.*

10  (citing *Building Permit Consultants, Inc. v. Mazur*, 122 Cal. App. 4th 1400, 1414 (2004)).

11         Here, there are no actual damages that were proximately caused by the alleged fraud.  The

12  "actual damages" Defendants point to are the cost of processing Takedown Notices and related

13  investigation conducted by Defendants' employees.  (Defs.' Counterclaims ¶ 73.)  Defendants

14  estimate this cost as $20,000-$25,000 for employee time.  (Ex. 13—Counterclaimants' Resp. to

15  Interrog. 5 (estimated cost of $20,000, based on individuals' hourly rates multiplied by number of

16  hours spent investigating and processing Takedown Notices); Ex. 14—Defs.' Am. Disclosures at 6

17  (estimated cost of $20,000–$25,000 based on hourly rates time number of person hours).)

18         Under California law, damages are not proximately caused by an alleged fraud if the

19  damages were inevitable or attributable to some other source.  Here, to the extent Defendants'

20  costs were for employee salaries, those salaries were already set and the costs inevitable, to be

21  paid regardless of the establishment of the Ransom Nova accounts (the sole non-preempted

22  conduct alleged), as well as the Takedown Notices (which are not actionable as common law

23  fraud).  There is no evidence that YouTube hired employees specifically to investigate the conduct

24  at issue here and thus there are no costs directly related to the alleged wrongful conduct.  Rather,

25  the costs were attributable to the fact that the employees were hired in the first place.  *See Patrick*

26  *v. Alacer Corp.*, 167 Cal. App. 4th 995, 1017 (2008) ("Assuming . . . a claimant's reliance on the

27  actionable misrepresentation, no liability attaches if the damages sustained were otherwise

28

1    inevitable or due to unrelated causes.").

2    **D.  There Is No Basis for Punitive Damages.**

3    Defendants seek punitive damages under Cal. Civ. Code § 3294.  (Defs.' Counterclaims

4    ¶ 75.)  Absent actual damages, however, punitive damages are not available.  "In California, as at

5    common law, actual damages are an absolute predicate for an award of exemplary or punitive

6    damages." *Kizer v. Cnty. of San Mateo*, 53 Cal. 3d 139, 147 (1991); *Fassberg Constr. Co. v. Hous.*

7    *Auth. of City of Los Angeles*, 152 Cal. App. 4th 720, 758 (2007) ("punitive damages cannot be

8    awarded without actual damages").  An award of punitive damages "may not be granted in an

9    action based on a breach of contract even though the defendant's breach was wilful or fraudulent."

10   *Crogan v. Metz*, 47 Cal. 2d 398, 405 (1956) (citing Cal. Civ. Code § 3294).

11   As demonstrated above, no actual damages were proximately caused by the alleged fraud.

12   *See* Section III.C, *supra*.  As a result, there can be no award of punitive damages.

13   **IV.   MR. CSUPO IS NOT LIABLE FOR PURPORTED WRONGFUL ACTS OF**
        **AGENTS AND SUB-AGENTS OF IPLLC AND MEGAFILM.**
14

15   Gabor Csupo, a creative artist, acquired IPLLC in 2019.  IPLLC entered into a contract

16   with MegaFilm, the owner of copyrights to many important Hungarian films.  (Ex. 5 and Ex. 6—

17   MegaFilm-IPLLC Contract; Ex. 7 and Ex. 8—4/03/2019 email from Csupo to YouTube.)  IPLLC

18   had authority to protect MegaFilm's interests in those films, including the two films at issue in the

19   Counterclaims, *Czak Szex es mas semi* and *Zimmer Feri*.  (*See* Ex. 7 and Ex. 8—4/03/2019 email

20   from Csupo to YouTube at -147.)  IPLLC's contract with MegaFilm allowed IPLLC to delegate

21   authority to others, which it did.  (*Id.* at -145.)  The contract with MegaFilm was entered into by

22   IPLLC, not Mr. Csupo personally, so in delegating authority Mr. Csupo was acting on behalf of

23   IPLLC, not himself.  (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract; Ex. 7 and Ex. 8—4/03/2019

24   email from Csupo to YouTube.)

25   Based on these undisputed facts, Mr. Csupo cannot be held liable for the actions of Mr.

26   Holman or others for two independent reasons.

27   *First*, under traditional agency principles, Mr. Csupo, as IPLLC's owner, cannot be held

28   personally liable for the purported wrongs committed by IPLLC's agent, Mr. Holman.  *See Meyer*

1    *v. Holley*, 537 U.S. 280, 285–86 (2003) (under agency principles, vicarious liability is normally

2    imposed upon the corporation, but not upon its officers or owners); *Sandler v. Sanchez*, 206 Cal.

3    App. 4th 1431, 1442–43 (2012) (under traditional agency principles, only corporation and not

4    corporation's designated officer/broker could be held liable for torts committed by corporation's

5    employee committed within the scope of his employment).  Notably, Defendants do not even

6    mention IPLLC in their Amended Counterclaims, let alone bring claims against it or allege that

7    Mr. Csupo can be personally liable for purported misconduct of IPLLC's agents.  *See Jamison v.*

8    *Royal Caribbean Cruises, Ltd.*, 2009 WL 559722, at *4 (S.D. Cal. Mar. 4, 2009) (granting motion

9    to dismiss where complaint "fail[ed] to allege any facts to support [p]laintiff's conclusory

10   allegation that [named defendant] may be an alter ego of some unknown DOE defendant").

11          *Second*, Mr. Holman himself was a lawful sub-agent of MegaFilm, and thus neither IPLLC

12   nor Mr. Csupo can be held liable for his acts.  Under California law, an agent may delegate

13   authority to a sub-agent when "such delegation is specially authorized by the principal."  Cal. Civ.

14   Code § 2349.  IPLLC's contract with MegaFilm explicitly allowed IPLLC to delegate authority to

15   others (Ex. 5 and Ex. 6—MegaFilm-IPLLC Contract), and IPLLC did in fact delegate authority to

16   a sub-agent, Mr. Holman.  (Ex. 2—Csupo Dep. at 30:20–23.)  Once the original agent delegates to

17   the sub-agent, "the *original agent is not responsible to third persons for the acts of the sub-agent*."

18   Cal. Civ. Code § 2351 (emphasis added).  As a matter of law, the original agent (IPLLC) is not

19   responsible for the acts of the sub-agent (Mr. Holman).  *See id.*; *UnitedHealthcare Ins. Co. v.*

20   *Sahara Palm Plaza, LLC*, 2022 WL 4700544, at *6 (C.D. Cal. July 18, 2022), *judgment entered*,

21   2022 WL 3971055 (C.D. Cal. Aug. 15, 2022) (insurance company could not be held responsible to

22   third persons for the acts of a sub-agent under Cal. Civ. Code. § 2351).

23          Likewise, to the extent any agent of Mr. Holman, using the name of Mr. Csupo, submitted

24   a Takedown Notice claiming infringement for the videos that are the basis of the Counterclaims,

25   that person would have been acting as a sub-agent, for whom Mr. Csupo is not responsible.  Cal.

26   Civ. Code § 2351.

27          In sum, it is undisputed that all of the alleged wrongful actions were conducted by agents

28

1    of IPLLC or sub-agents of MegaFilm.  As a matter of law, Mr. Csupo cannot be held liable for this

2    conduct, and summary judgment in favor of Counterclaim-Defendant Gabor Csupo should be

3    entered on all of the Counterclaims.

4    **V.    DEFENDANTS ARE NOT ENTITLED TO COSTS OF SUIT UNDER SECTION 512(f).**

5

6         Under § 512(f), injury must be tied to and result from the actual takedown of the video,

7    limiting Defendants' damages to their expenses, and excluding their fees in this litigation.  Section

8    512(f) allows an award of "damages, including costs and attorneys' fees, incurred . . . by a service

9    provider, who is injured by such misrepresentation, as the result of the service provider relying

10   upon such misrepresentation in removing or disabling access to the material or activity claimed to

11   be infringing."  17 U.S.C. § 512(f); *see, e.g., Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,

12   790 F. Supp. 2d 1024, 1029 (N.D. Cal. 2011) (dismissing § 512(f) claim because the claimant

13   never actually took down the material identified in the abusive takedown notice); *Ground Zero*

14   *Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 705 (D. Md. 2011) ("Plaintiffs cannot prove

15   that the service provider relied on the misrepresentation or that it incurred any damages as a result

16   of the notice.")

17        Thus, under the plain language of the statute, while attorneys' fees are included within

18   recoverable "damages," those fees must be incurred "as *the result of* the service provider relying

19   upon such misrepresentation *in removing or disabling access to the material or activity claimed to*

20   *be infringing*."  17 U.S.C. § 512(f) (emphasis added).  The courts of this District have previously

21   determined that § 512(f) allows for the recovery of attorneys' fees *only* where a plaintiff retained

22   an attorney to remove or disable access to the material targeted by a false takedown notice.  *Lenz*

23   *v. Universal Music Corp.*, 2010 WL 702466, at *11 (N.D. Cal. Feb. 25, 2010).  Furthermore,

24   § 512(f) separates "costs" and "attorneys' fees."  Any argument that attorneys' fees other than

25   those associated with removing or disabling the targeted material are included within "costs" must

26   be rejected.  *See Marek v. Chesny*, 473 U.S. 1, 8 (1985) (attorneys' fees are distinct from "costs"

27   unless the statute providing for the award of attorneys' fees expressly combines them).

28

1    **VI.    DEFENDANTS LACK STANDING TO SEEK INJUNCTIVE RELIEF.**

2          Defendants lack Article III standing to seek injunctive relief on their counterclaims.  To

3    establish standing, Defendants must demonstrate not only particularized legal harm, but that "the

4    threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"

5    *Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118 (9th Cir. 2022).  "[P]ast wrongs

6    do not in themselves amount to that real and immediate threat of injury" sufficient for standing to

7    seek injunctive relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 111 (1983) (past injury

8    does not provide standing to seek prospective injunctive relief "[a]bsent a sufficient likelihood that

9    [the plaintiff] will again be wronged in a similar way").

10         Here there is no threat of future misconduct.  Defendants base their request for injunctive

11   relief solely on alleged past wrongs—namely, allegedly false Takedown Notices submitted during

12   a 2-1/2-week period in Fall 2019.  (Defs.' Counterclaims ¶ 85.)  Nowhere do Defendants allege a

13   single fact showing a real and immediate threat that Mr. Csupo or Pirate Monitor Ltd. will commit

14   those alleged wrongs in the future.  And over the multi-year course of this litigation, the conduct

15   about which Defendants complain has not been repeated.

16         Courts, including this one, routinely dismiss claims for prospective injunctive relief for

17   failure to allege a reasonable likelihood of future harm.  *See, e.g.*, *Mauia v. Petrochem Insulation,*

18   *Inc.*, 2018 WL 3241049, at *11 (N.D. Cal. July 3, 2018) (dismissing request for injunctive relief

19   due to lack of Article III standing where plaintiff "cannot demonstrate a credible threat of future

20   injury"); *Miranda v. Coach, Inc.*, 2015 WL 636373, at *3 (N.D. Cal. Feb. 13, 2015) (Donato, J.)

21   (dismissing claim for injunctive relief where plaintiffs failed to show "any likelihood whatsoever

22   of future injury, let alone a real and immediate threat"); *Littlejohn v. SF City*, 2010 WL 5158330,

23   at *1 (N.D. Cal. Dec. 14, 2010) (dismissing amended complaint with prejudice because plaintiff

24   failed to allege "that he faces a real or immediate threat that he will be subjected to unwarranted

25   parole searches sufficient to confer standing on him to seek injunctive and declaratory relief"); *see*

26   *also Izquierdo v. Panera Bread Co.*, 450 F. Supp. 3d 453, 456 (S.D.N.Y. 2020) (granting motion

27   to dismiss request for injunctive relief for lack of standing "[b]ecause Plaintiff has failed to allege

28

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION
FOR SUMMARY JUDGMENT

1   any future injury"); *Gil v. City of Pensacola, Florida*, 396 F. Supp. 3d 1059, 1063 (N.D. Fla.

2   2019) (dismissing claim for injunctive relief due to lack of Article III standing because "Plaintiff

3   has not adequately alleged a real and immediate threat of future injury").

4           A mere "possibility of future injury" is simply "too weak to support standing." *Scott v.*

5   *Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002).  Absent a showing of future

6   threat, Defendants lack standing to seek injunctive relief, depriving this Court of subject-matter

7   jurisdiction over that request and requiring its dismissal.

8                                        **CONCLUSION**

9           For the foregoing reasons, Counterclaim-Defendants Pirate Monitor Ltd. and Gabor Csupo

10  respectfully request that the Court **GRANT** their motion for summary judgment against

11  Defendants and Counterclaimants YouTube, LLC and Google LLC in its entirety.

12

13  Dated: March 3, 2023                          Respectfully submitted,

14

15                                         */s/ Randall P. Ewing*
                                            George A. Zelcs (*pro hac vice*)
16                                          *gzelcs@koreintillery.com*
                                            Randall P. Ewing, Jr. (*pro hac vice*)
17                                          *rewing@koreintillery.com*
                                            Ryan Z. Cortazar (*pro hac vice*)
18                                          *rcortazar@koreintillery.com*
                                            KOREIN TILLERY, LLC
19                                          205 North Michigan, Suite 1950
                                            Chicago, IL 60601
20                                          Telephone: (312) 641-9750
                                            Facsimile: (312) 641-9751
21

22                                          Stephen M. Tillery (*pro hac vice*)
                                            *stillery@koreintillery.com*
23                                          Steven M. Berezney, CA Bar #329923
                                            *sberezney@koreintillery.com*
24                                          Carol O'Keefe (*pro hac vice*)
                                            *cokeefe@koreintillery.com*
25                                          KOREIN TILLERY, LLC
                                            505 North 7th Street, Suite 3600
26                                          St. Louis, MO 63101
                                            Telephone: (314) 241-4844
27                                          Facsimile: (314) 241-3525

28

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION
FOR SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
*pkorologos@bsfllp.com*
Joanna Wright (*pro hac vice*)
*jwright@bsfllp.com*
Jeffrey Waldron (*pro hac vice*)
*jwaldron@bsfllp.com*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs, Maria Schneider,
Uniglobe Entertainment, LLC, and AST
Publishing Ltd., and Attorneys for Counterclaim-
Defendants Pirate Monitor Ltd. and Gabor Csupo*

COUNTERCLAIM DEFENDANTS PIRATE MONITOR LTD. AND GABOR CSUPO'S MOTION
FOR SUMMARY JUDGMENT