# Exhibit A

**Pages 1 - 60**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>           Plaintiffs,<br><br>  VS.<br><br>YOUTUBE, LLC; and GOOGLE LLC,<br><br>           Defendants. | **NO. C 20-04423 JD** |
| YOUTUBE, LLC,<br><br>           Petitioner,<br><br> VS.<br><br>INTELLECTUAL PROPERTY LLC,<br><br>           Respondent. | **NO. 23-01100 JD** |

San Francisco, California
Thursday, April 13, 2023

**TRANSCRIPT OF PROCEEDINGS**

**(APPEARANCES ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
             CSR No. 7445, Official U.S. Reporter

1         (Pause in proceedings.)
2         **THE COURT:**  Okay.  Yes.
3     So this is a -- did I miss something, or is this --
4         **MR. VAN NEST:**  I don't think so, Your Honor.
5         **THE COURT:**  -- a recent development?
6         **MR. VAN NEST:**  It's a recent development, yes.
7         **THE COURT:**  Okay.  Great.  Well, welcome.
8     Okay.  So we're going to talk about class cert today, and
9 let me just give you the framework.  Now, it's all quite
10 thoroughly briefed; so this is not an opportunity to just
11 recite everything in the briefs.  I have some areas that I'd
12 like to solicit your thoughts on.  I'm going to tell you what
13 they are.  But let me preface it by reminding everyone what
14 we're doing.
15     As you know from my many class certification decisions,
16 this is a procedural question:  Does it make sense and is it
17 fair and efficient, particularly with an eye towards the absent
18 class members, to have this case go forward as a group; or is
19 it the kind of case where the named plaintiff really needs to
20 be pursuing her claims on her own and not on behalf of others?
21 That is the only question, what makes most sense procedurally.
22     It is not, as I and many other judges have emphasized,
23 summary judgment.  We're not going to attack the claims or talk
24 about how they can't go forward and there's this issue and that
25 issue.  So, please, I know you understand that Mr. Kramer, but

1    this is not summary judgment redux.  This is:  Does it make
2    sense to go forward?
3         Now, of course, there will be some evidentiary issues that
4    will come up; but the focus is not on the validity of the claim
5    but on the vehicle with which the claim will be driven to the
6    finish line.  Okay?  That's all we're talking about.
7         Now, having said that, I have often in many cases found it
8    appropriate to certify classes.  This has even been in very
9    factually intensive antitrust cases where I have, I think,
10   certified a class in every one of my MDL and non-MDL antitrust
11   cases, despite the fact that antitrust law is typically rife
12   with very complicated factual issues, including expert issues.
13   So I am certainly open to certification in the right
14   circumstances.
15        I'm not sure this case is the right circumstance for
16   certification.  So I wanted to have you in to hear a little bit
17   more about that from you directly.
18        ==Let me start with the infringement classes.  That would be==
19   ==the proposed registered works class and the foreign==
20   ==unregistered works class.==
21        ==Let me just put it plainly.  It was apparent on summary==
22   ==judgment that Ms. Schneider, the named plaintiff, has a lot of==
23   ==ownership issues that are going to require somebody to -- a==
24   ==trier of fact to sort through.  Did she own her licenses?  Did==
25   ==she transfer the right to license her works to this -- what==

1  was it?  Artistry management company?  Did they, in turn,
2  properly grant a license to other users?
3      Separate and independent from that, YouTube's terms of
4  service indicate that if you put anything up on the site, you
5  are essentially giving them a license just by participating in
6  the posting.
7      All of these suggest to me that -- I just don't see how
8  you're going to prove, on a class-wide basis, that works were
9  infringed.
10      I don't think the DMCA takedown notices are enough, and
11 I'll just tell you why.  DMCA is quite clear that the takedown
12 notice is a presumption.  It's a rebuttable presumption.  The
13 person who is the target of the takedown notice has a full
14 opportunity to say:  "No, takedown was wrong.  I own the
15 copyright.  I have a license," or whatever the defense may be.
16 "The notice is defective."
17      I certainly agree that YouTube, on occasion, maybe more
18 than on occasion -- let's just assume YouTube has a regular
19 practice of reviewing the DMCA letters.  But the evidence to me
20 suggests they're just reviewing their adequacy under the
21 Copyright Act; in other words, making sure that all of the
22 statutorily required information is present.  I did not see any
23 evidence that they're taking each takedown letter and
24 conducting an independent determination of whether the work is,
25 in fact, infringing or not.  I don't see how they could do that

1  dozens of individualized issues.
2          **THE COURT:** Let me ask you this: Other than
3  *Napster* --
4          **MR. KRAMER:** Yes, Your Honor.
5          **THE COURT:** -- from one of my prior colleagues, other
6  than *Napster*, has there been an infringement class certified
7  that you're aware of?
8          **MR. KRAMER:** No, Your Honor, there has not been.
9  There is a case called *Flo & Eddie* where a court certified a
10 pre-1972 sound recordings class, which is not a copyright
11 claim.
12                 (Official Reporter clarifies.)
13         **MR. KRAMER:** A class of pre-1972 sound recordings
14 owners.
15     This case is miles away from either *Napster* or the
16 *Flo & Eddie* case.
17         **THE COURT:** Well, *Flo & Eddie* also had some other
18 factors in it that made it a more cognizable class in terms of
19 predominance.
20     So, Mr. Korologos, look, this is not a headcount question.
21 We don't -- no judge -- I'm certainly not counting up who's
22 done what. But it has been a long dry spell since *Napster* and
23 maybe *Flo & Eddie*, both of which I think are easily
24 distinguishable factually, in terms of any infringement class
25 being certified.

1           For all the reasons I'm suggesting, it's quite hard to
2    show across the class, particularly of millions of people,
3    which I think is what you're contemplating, that they all have
4    rock-solid registration and ownership claims from the get-go.
5         So --
6              **MR. KOROLOGOS:**  A couple of points, Your Honor.
7              **THE COURT:**  -- why is this class different?
8              **MR. KOROLOGOS:**  Couple of points, Your Honor.
9              **THE COURT:**  Sure.
10             **MR. KOROLOGOS:**  We don't think it's millions.
11             **THE COURT:**  What?
12             **MR. KOROLOGOS:**  We do not think it's millions in the
13   size of the class.
14             **THE COURT:**  Hundreds of thousands.  I mean, it's a big
15   class.  It's not a couple hundred people.
16             **MR. KOROLOGOS:**  No, it is not.  It is probably in the
17   tens of thousands.
18        And the right to challenge --
19             **THE COURT:**  How can that be, though?  If you're going
20   to -- so you just heard your colleague say that, on average,
21   YouTube gets a million takedown letters a month.  You told me
22   that a tiny fraction of them get a response from the person
23   whose video is taken down.  So that just means there are --
24   you're going to be using millions of takedown notices to
25   populate your class.  Why would that add up to just tens of

```
 1  thousands of absent class members?
 2          MR. KOROLOGOS:  Because you have to have two takedown
 3  notices.
 4      And this goes to another issue, Your Honor.  The question
 5  of ownership of the work, which we focused on this morning, is
 6  only one issue in this case.  There are a lot of other issues.
 7  Even if you were to set that aside and say, "I can't try that
 8  on a class-wide basis," there are many issues that remain in
 9  the case that can be tried on a class-wide basis.
10      Do the DMCA defenses apply?  Does the fact that they don't
11  count --
12          THE COURT:  Well, but let's just pause.  I'm sorry to
13  interrupt.
14      But if you can't establish the predicate of a claim, which
15  is ownership of a work, doesn't matter that there are
16  downstream issues that might have some commonality.
17          MR. KOROLOGOS:  Well, unless Your Honor does an issues
18  class.  We can try a case on individual ownership for the named
19  plaintiffs and have the determinations of the many other issues
20  be resolution on a class-wide basis on things like:
21      Does their conduct -- not individual conduct, but does
22  their conduct satisfy the DMCA?
23      Does their repeat infringer policy that doesn't
24  count 1.5 billion copyright violations a year as a copyright
25  strike satisfy the repeat infringer policy?
```

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, April 17, 2023

*Ana Dub*
_____

Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official United States Reporter