KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Case No. 3:20-cv-04423-JD<br><br>**DEFENDANTS' OMNIBUS MOTIONS IN LIMINE AND PLAINTIFFS' OPPOSITIONS THERETO**<br><br>Dept.:    Courtroom 11 – 19th Floor<br>Judge:    Hon. James Donato<br><br>Date Filed: July 2, 2020<br><br>Trial Date: June 12, 2023 |

1

# **TABLE OF CONTENTS**

2  Motion in Limine No. 1 to Exclude Certain Evidence About Damages……………….....  1

3  Plaintiffs' Opposition to Defendants' Motion in Limine No. 1……………………….....  5

4  Motion in Limine No. 2 to Exclude Improper Opinion Testimony
5      and Related Irrelevant and Prejudicial Testimony……………………….…………….  10

6  Plaintiffs' Opposition to Defendants' Motion in Limine No. 2………………………….  15

7  Motion in Limine No. 3 to Exclude Improper Alleged Infringements………………......  21

8  Plaintiffs' Opposition to Defendants' Motion in Limine No. 3………………………….  26

9  Motion in Limine No. 4 to Exclude Improperly Redacted Documents…………………..  31

10 Plaintiffs' Opposition to Defendants' Motion in Limine No. 4………………………….  36

11 Motion in Limine No. 5 Re International Standard Recording Codes………………….....  40

12 Plaintiffs' Opposition to Defendants' Motion in Limine No. 5………………………….  45

13 Motion in Limine No. 6 to Exclude Discovery Search Results………………………….  50

14 Plaintiffs' Opposition to Defendants' Motion in Limine No. 6………………………….  55

15 Motion in Limine No. 7 to Exclude Evidence of Google and/or
       Youtube's Financial Condition and Potential Liabilities……………………………….  60

16 Plaintiffs' Opposition to Defendants' Motion in Limine No. 7………………………….  65

17 Motion in Limine No. 8 to Preclude Relitigation of Issues in
18     the Court's Summary Judgment Order…………………………………………………  70

19 Plaintiffs' Opposition to Defendants' Motion in Limine No. 8………………………….  75

20

21

22

23

24

25

26

27

28

DEFENDANTS' OMNIBUS MOTIONS IN LIMINE AND PLAINTIFFS' OPPOSITIONS THERETO
Case No. 3:20-cv-04423-JD

2101334

1  KEKER, VAN NEST & PETERS LLP
   ROBERT A. VAN NEST - # 84065
2  rvannest@keker.com
   DAN JACKSON - # 216091
3  djackson@keker.com
   JULIA L. ALLEN - # 286097
4  jallen@keker.com
   TRAVIS SILVA - # 295856
5  tsilva@keker.com
   ANNA PORTO - # 319903
6  aporto@keker.com
   LUKE APFELD - # 327029
7  lapfeld@keker.com
   AMOS J. B. ESPELAND - # 332895
8  aespeland@keker.com
   633 Battery Street
9  San Francisco, CA 94111-1809
   Telephone:   415 391 5400
10 Facsimile:   415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
       mrees@wsgr.com
       lwhite@wsgr.com

11 Attorneys for Defendants and Counterclaimants
   YOUTUBE, LLC and GOOGLE LLC

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16 MARIA SCHNEIDER, UNIGLOBE
   ENTERTAINMENT, LLC, and AST
17 PUBLISHING, LTD., individually and on
   behalf of all others similarly situated,
18
                    Plaintiffs,
19
        v.
20
   YOUTUBE, LLC and GOOGLE LLC,
21
                    Defendants.
22

Case No. 3:20-cv-04423-JD

**MOTION IN LIMINE NO. 1 TO
EXCLUDE CERTAIN EVIDENCE
ABOUT DAMAGES**

Date:      May 25, 2023
Time:      1:30 p.m.
Dept.:     Courtroom 11 – 19th Floor
Judge:     Hon. James Donato

Date Filed:  July 2, 2020

Trial Date:  June 12, 2023

23 YOUTUBE, LLC and GOOGLE LLC,
24
                    Counterclaimants,
25
        v.
26
   PIRATE MONITOR LTD., PIRATE
27 MONITOR LLC, and GÁBOR CSUPÓ,
28
                    Counterclaim Defendants.

Despite Defendants' requests during the discovery process, Plaintiffs offered no computation of their individual damages, much less evidence supporting any such individualized computation.  Thus, Defendants move under FRCP 26 and 37 to prevent Plaintiffs from offering at trial any damages theory, computation, or evidence that they failed to supply during discovery.

## I.    BACKGROUND

The Copyright Act enables recovery of either actual damages attributable to infringement, or, if a claim qualifies, statutory damages. A plaintiff seeking actual damages may recover its actual losses, plus any non-duplicative profits earned by the defendant from the infringement.  17 U.S.C. § 504.  But, to recover a defendant's profits, a plaintiff "must *first* show a causal nexus between the infringement and the gross revenue," *before* defendants have any "burden of apportioning the profits that were not the result of infringement." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (emphasis added).

Rule 26(a) requires a plaintiff to provide "useful" computations of damages. *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, No. 14-CV-02864-JD, 2016 WL 4182402, at *2 (N.D. Cal. Aug. 8, 2016).  The failure to meet that requirement is "an unacceptable default" resulting in exclusion.  *See id.* ("Rule 37 provides a self-executing, automatic sanction of exclusion to provide a strong inducement for disclosure of material. Exclusion is appropriate unless the failure to disclose was substantially justified or harmless. Bad faith or willfulness is not a required finding and the exclusion sanction will apply even when a litigant's entire cause of action will be precluded.") (quoting *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008) (simplified)); *accord Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

## II.    EVIDENCE OF PLAINTIFFS' ACTUAL LOSSES MUST BE EXCLUDED

To establish actual losses, a copyright plaintiff typically presents evidence of a diminution of the value of the copyrighted work, or evidence about a fair royalty rate or license fee, usually through an expert.  Plaintiffs neither included this information in their Rule 26 disclosures, nor retained an expert on the topic of losses.  Exs. 1A at 8 (internal pagination), 1B at 7), and 1C at 6

1  (initial disclosures).[1]  Defendants sought this information in fact discovery, and, again, Plaintiffs
2  did not provide it.  Exs. 1D at 5, 1E at 4-5, 1F at 4-5 (no substantive response to interrogatories
3  requesting proof of named plaintiffs' actual damages).

4      Boxed in, Plaintiffs conceded in pre-trial discussions that "they will not offer actual
5  damages testimony quantifying either a diminution in value for Plaintiffs' works or lost licensing
6  fees for Plaintiffs' works."  Ex. 1G (O'Keefe email) .  But Plaintiffs simultaneously claim they
7  "will, however, testify generally concerning the fact of diminution in value and lost sales or
8  licenses" for some purpose they do not disclose.  *Id.*

9      That is untenable. Even if Plaintiffs can articulate the relevance of this evidence, the Court
10  should bar Plaintiffs' diminution and licensing testimony. Plaintiff failed in both their self-
11  executing obligation under Rule 26 to offer a useful computation of damages and, further, in their
12  responses to targeted written discovery by Defendants directed at the actual damages that
13  Plaintiffs allegedly suffered. Simply put, Plaintiffs' failure to disclose this information in written
14  discovery prevented Defendants from examining Plaintiffs about these issues in their depositions.
15  That is firm ground to preclude Plaintiffs from offering this testimony at trial. *See Hoffman*, 541
16  F.3d at 1179–80; *Yeti*, 259 F.3d at 1106; *Johnstech*, 2016 WL 4182402, at *2; Rule 37(c)(1).

## III.   EVIDENCE OF DEFENDANTS' PROFITS PURPORTEDLY LINKED TO PLAINTIFFS' WORKS MUST BE EXCLUDED

18      Plaintiffs seek disgorgement Defendants' profits relating to Plaintiffs' individual works.
19  But Plaintiffs failed to provide any "useful" calculation of those damages that Rule 26 requires,
20  and Plaintiffs failed to address this deficiency in expert discovery.

21      Plaintiffs' disclosures say nothing "useful" about their disgorgement theory, offering
22  instead speculative narrative supported only by "estimates" plucked from thin air. Ex.1A at 8-11,
23  1B at 7, 1C at 6-7 (initial disclosures).  And their damages expert only sets forth a (flawed[2])

---

[1] Exhibit citations in Defendants' motions in limine refer to exhibits to the Declaration of Travis Silva in Support of Defendants' Motions in Limine ("Silva Decl.").

[2] Dr. Singer's class-wide theory is the subject of Defendants' pending *Daubert* motion (ECF No. 262 at 10-15) because—among other defects—he fails to account for the Ninth Circuit's requirement that Plaintiffs bear the burden of showing "a causal nexus between the infringement and the gross revenue" that they seek to put at issue.  *Polar Bear*, 384 F.3d at 711.

***class-wide*** theory about damages and fails to offer any evidence about the named Plaintiffs specifically:

> "Q. In your report, do you calculate any damages specific to the named Plaintiffs? A. ***I do not***. I've given a methodology to get to the aggregate damages. But if the named Plaintiffs step forward, I could apply one of my proposed allocation methods to assign to her -- her pro rata share of the total pot of damages."

Ex. 1H (Singer Dep. at 249:19-250:2) (emphasis added).  This is insufficient; "Plaintiffs have cited no case, and there appears to be none, to support the argument that disclosure on an individual basis was not required." *Hoffman*, 541 F.3d at 1179.

Tacitly acknowledging their failure, two days before Defendants served this motion, Plaintiffs attempted to cover their tracks by emailing a three-line damages "calculation." Ex. 1G (O'Keefe email).  And, while Plaintiffs purport to adapt the expert's classwide damages model to just Plaintiffs' Works-in-Suit, this "calculation" is facially deficient (it lacks even a top-line damages figure), and its disclosure months after the close of expert discovery is prejudicial and untimely. *Id.* It must be excluded.[3]

Respectfully submitted,

Dated:  April 27, 2023

By:   */s/ Robert A. Van Nest*
ROBERT A. VAN NEST
KEKER, VAN NEST & PETERS LLP

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

---

[3] Under this freshly-minted calculation, assuming Plaintiffs prevail in full on every one of their 387 infringement claims, they would be seeking roughly $23 in revenue per allegedly infringing video or $9,000 in total revenue, a figure that would then need to account for YouTube's costs, to arrive at an even lower figure for recoverable profits.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1**

Defendants seek to exclude two categories of evidence with their motion *in limine* No. 1: (1) general evidence of diminution in value of Plaintiffs' works and lost sales or licenses, and (2) evidence of Defendants' profits attributable to infringements of Plaintiffs' works.  As a basis, Defendants claim that Plaintiffs failed to properly disclose this evidence during discovery.  But the discovery obligations they cite require disclosure only of the *actual* damages that a plaintiff claims; here, it is undisputed that Plaintiffs do not claim actual damages.  And the calculation of disgorgement damages that Plaintiffs do seek is sufficiently disclosed in the expert report of Dr. Hal Singer.  Defendants' motion should be denied.

## ARGUMENT

I.     **The Court should allow evidence of diminution in value of Plaintiffs' works and lost sales or licenses.**

As Defendants acknowledge (Mot. 2), Plaintiffs will not seek actual damages for diminution in value of Plaintiffs' works or lost sales or licenses at trial. (Defs. Ex. 1G.)  However, general evidence of the harm caused to Plaintiff' business by Defendants' wrongful conduct will remain part of their case. (*Id.*)  In other words, while Plaintiffs will not be seeking actual damages based on evidence of a fair royalty rate or license fee, they will explain to the jury how, as an artist, rampant infringement on the YouTube platform affects their livelihood.

Defendants are wrong that such evidence is irrelevant.  While they do not seek actual damages, Plaintiffs do seek statutory damages.  Statutory damages are intended to "provide adequate compensation to the copyright holder," *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989), based on considerations of "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998).  In undertaking this inquiry, the jury is entitled to understand the nature of the harm that Defendants' copyright violations cause.  Thus, for example, just because Ms. Schneider is not seeking a specific dollar value in actual damages, she has ample basis to explain, and the jury has ample basis to hear,

the qualitative ways that infringing conduct by Defendants affects her career as an award-winning jazz musician, including through diminution in value of her work and lost sales. Indeed, absent such testimony, the jury's ability to determine "adequate compensation" and "what is just" for the purposes of a statutory damages award would be largely neutered.

Defendants are also wrong that exclusion is warranted based on Plaintiffs' supposed failure to respect their "self-executing obligation under Rule 26." (Mot. 2.) Rule 26 could not be clearer that it is limited to requiring a party to disclose "a computation of each category of *damages claimed by the disclosing party*." Fed. R. Civ. P. 26 (emphasis added). Again, Plaintiffs do not claim actual damages for diminution or lost sales, and Rule 26 is simply not implicated with respect to the general evidence of harm that is the subject of this motion.

Defendants also wrongly claim that Plaintiffs failed to disclose this evidence "in their responses to targeted written discovery." (Mot. 2.) Just like Rule 26, Defendants' interrogatories were strictly limited to seeking "specification of all evidence supporting any *actual damages claimed*." (Defs. Exs. 1D at 5, 1E at 4–5, 1F at 4–5 (emphasis added).) Plaintiffs answered these interrogatories properly.

Finally, the notion that Defendants were prevented "from examining Plaintiffs about these issues in their depositions" is absurd. (Mot. 2.) Defendants chose not to ask Ms. Schneider or any of the other Plaintiffs "How were you harmed?". Defendants thus have no one to blame but themselves. And their inability to ask Plaintiffs about their quantification of *actual* damages is a straw man, since—again—it is not part of Plaintiffs' case.

## II.     The Court should allow evidence of Defendants' profits attributable to infringement of Plaintiffs' works.

Defendants also seek to exclude evidence of Defendants' profits attributable to infringement of Plaintiffs' works, claiming that Plaintiffs failed to disclose a useful calculation of disgorgement damages during discovery. (Mot. 2–3.) But Plaintiffs' expert Dr. Singer developed, and disclosed in his expert report, a methodology to calculate YouTube's profits derived from the

1  presence of infringing content on its platform.[1]  (*See generally* Ex. 1—Singer Rpt.)  Using this

2  methodology, Dr. Singer provided an estimate of disgorgement damages, noting that the limited

3  data produced by Defendants prevented him from performing a more precise analysis.  (*Id.* Table

4  8, ¶ 114.)  Dr. Singer also provided a methodology to allocate the total amount of damages to

5  individual class members based on each member's pro rata share.  (*Id.* ¶ 111.)  Dr. Singer's report

6  thus provides a sufficient disclosure of Plaintiffs' disgorgement damages.

7        Defendants' argument that Dr. Singer's damages calculation is inadequate because it "fails

8  to offer any evidence about the named Plaintiffs specifically" is wrong.  (Mot. 2–3.)  Defendants'

9  authority, *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008), does

10  not stand for notion that named plaintiffs in a class action must disclose their individual damages.

11  In *Hoffman*, the Ninth Circuit held that individual opt-in plaintiffs bringing state law claims

12  separate from the claims of the class were required to disclose their individual damages.  541 F.3d

13  at 1179.  That case is inapplicable here, where Dr. Singer's damages methodology can be used to

14  calculate the damages for all class members, including the named Plaintiffs.

15        Indeed, there is no serious question that Defendants can identify the named Plaintiffs'

16  damages from Dr. Singer's report using simple arithmetic.  Counsel even provided Defendants

17  with a per-video damages figure by dividing Dr. Singer's damages estimate by the number of

18  infringing videos on YouTube.  (Defs. Ex. 1G.)  From there, Defendants were themselves able to

19  calculate the total damages sought by the individual Plaintiffs by multiplying the per-video

20  damages figure by the number of infringement claims—the result is even set forth in their motion.

21  (Mot. 3 n.3.)  Defendants have all the disclosure they need.  They are free to challenge Dr. Singer's

22  methodology at trial, but there is no basis to exclude it when their own motion shows they have

23  suffered no prejudice even accepting their arguments.  *See Fed*. R. Civ. P. 37(c)(1) (exclusion is

24  improper if failure to disclose is harmless).

25

26  [1] Defendants' attempt to bolster their pending *Daubert* motion to exclude Dr. Singer's testimony
(Mot. 2 n.2) is not well-taken in light of the Court's order that motions in limine "are not

27  substitutes for . . . motions to exclude expert testimony."  Standing Order ¶ 6.

28

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 5, 2023                            /s/ Philip Korologos

Philip C. Korologos*
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

5

1

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>     v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>            Defendants. | Case No. 3:20-cv-04423-JD<br><br>**MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER OPINION TESTIMONY AND RELATED IRRELEVANT AND PREJUDICIAL TESTIMONY**<br><br>Date:         May 25, 2023<br>Time:         1:30 p.m.<br>Dept.:        Courtroom 11 – 19th Floor<br>Judge:       Hon. James Donato |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>            Counterclaimants,<br><br>     v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>            Counterclaim Defendants. | Date Filed:  July 2, 2020<br><br>Trial Date:  June 12, 2023 |

Defendants move to exclude improper opinion testimony by any lay witness. In particular, plaintiff Maria Schneider suggested at her deposition that she is "qualified" to offer opinions about YouTube's Content ID system and "to speak on behalf of creators who can't effectively control what's being put on YouTube." Ex. 2A[1] (Schneider Dep.) at 180:8-14. For example, she offers her "analysis of how and why YouTube is acting in an unacceptable manner, and why the use of Content ID technology simply to block unauthorized uploads of full tracks or full albums should be considered <u>a "standard technical measure under the DMCA</u>." Ex. 2B (Dep. Ex. 38) at 1 (emphasis in original). Such opinions are either legal conclusions that are exclusively within this Court's province to declare; or, at best, they are opinions "within the scope of Rule 702," which governs expert opinions. Fed. R. Evid. 701(c). Yet Ms. Schneider was neither disclosed as an expert nor is one. *See* Fed. R. Civ. P. 26(a)(2). Thus, her opinions must be excluded under Rule 37(c)(1) unless they qualify as admissible lay opinions under Rule of Evidence 701. They do not.

Rule 701 allows a lay witness to offer opinion testimony ***only*** if her opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Far from satisfying all three conditions, as she must, Ms. Schneider's opinions fail all three.

*First*, Ms. Schneider's opinions about Content ID are not rationally based on her perception.  Her opinions are not based, for example, on her "position in the business." Fed. R. Evid. 701, Advisory Committee's Note (2000). She has no position at YouTube or Google. In fact, Ms. Schneider admits in her comments to the Copyright Office that her opinions are based on "*talk[ing] with various people who work with Content ID*," just as an expert witness—*not a percipient witness*—might. Ex. 2B (Schneider Dep. Ex. 38) at 5 (emphasis added). There is no evidence that Ms. Schneider has *ever* personally used ContentID.

*Second*, Ms. Schneider's opinions are not helpful in determining a fact at issue—they are prejudicial jeremiads against YouTube and Google, expressing her "'hurt feelings' over the

---

[1] "Ex." refers to an exhibit attached to the accompanying Declaration of Travis Silva in Support of Defendants' Motions in Limine.

MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER OPINION TESTIMONY AND RELATED IRRELEVANT AND PREJUDICIAL TESTIMONY
Case No. 3:20-cv-04423-JD

nature of the infringement," which are irrelevant. *Mackie v. Rieser*, 296 F.3d 909, 917 (9th Cir. 2002). Her opinions should therefore be excluded under Rule 701(b), as well as Rules 401, 402, and 403. They have no probative value and, even if they did, any such value is substantially outweighed by the dangers of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. A few examples demonstrate that she offers irrelevant legal conclusions within prejudicial diatribes:

> I'm of the firm opinion that YouTube should immediately lose its DMCA "safe harbor" status. And I'm of the further opinion that YouTube is guilty of racketeering. Let me explain…

> YouTube is using Content ID to make users feel good about themselves as they upload work that they don't own. YouTube baits users to upload to their hearts content and feel helpful to copyright owners. But for those of us who weren't accepted into YouTube's Content ID protection program, or didn't agree to drink the purple Kool-Aid of licensing our entire catalogue to YouTube for monetization, tough luck – you're left with an anemic takedown remedy…[2]

> There are other grounds for kicking YouTube out of the "safe harbor." To be in it, the law (section 512(i) which is written in terms even a non-lawyer like me can read) requires that YouTube make available to "<u>any person on reasonable and nondiscriminatory terms</u>" "standard technical measures" to identify or protect copyrighted works. Well guess what: YouTube has completely ignored that requirement, and struts around like a banty rooster while doing it. Content ID is pretty standard "fingerprinting" stuff…

> ### <u>YouTube is Guilty of Criminal Racketeering</u>

> So let's look at just a few examples of intimidating behavior YouTube shoves at us in the back alleys of its monstrous empire…. It's almost impossible to believe that any group of human beings could have been so bold as to dream up and implement such a sick plan as all of this… Oh my God! That brings me to my final revelation:

> ### <u>YouTube Suffers from Munchausen's Syndrome By Proxy</u>

> … I see now – they're not only evil, they're sick.

Ex. 2C (Schneider Dep. Ex. 3) at 1-6 (emphases in original); *accord* Ex. 2A (Dep.) at 21:2-10, 27:15-28:5, 47:25–48:10.

> ### <u>What Do Whore Houses, Meth Labs, and YouTube Have in Common?</u>

> <u>By Maria Schneider</u>

---

[2] Because it does not suit her narrative, Ms. Schneider conveniently ignores that her publishing agent had access to Content ID and used it for her benefit for years. Ex. 2A (Dep.) at 154:17-21, 163:7-12.

MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER OPINION TESTIMONY AND RELATED
IRRELEVANT AND PREJUDICIAL TESTIMONY
Case No. 3:20-cv-04423-JD

> OK, I know – that headline really hits below the belt. I apologize. After all – it's not fair to those whorehouses that actually are legal in many places, and that pay their share of taxes – to lump them with these other entities… And just like the tactics of the seedy businesses described above, You Tube has, in my opinion, undertaken elaborate measures (much of it through its Content ID technology) to cover for the criminality that takes place in its own illicit digital backroom.

Ex. 2D (SCHNEIDER_0000030419) at 1; *see also* Ex. 2A (Dep.) at 24:4-20.

Ms. Schneider's opinions are irrelevant, prejudicial, and should be excluded under Rules 401 to 403 and 701(b). *See, e.g., Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 409 (5th Cir. 2004) (where evidence "paint[ed] Compaq as a 'bad' company," the trial court properly concluded that "any probative value [that] evidence might hold was outweighed by its prejudicial and inflammatory nature and by its tendency to confuse the jury with tangential litigation").

*Third*, Ms. Schneider's opinions are based on, if anything, "specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Testimony falls within the scope of Rule 702 if it is "based on the perceptions, education, training, and experience of the witness." *U.S. v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997). "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702. Otherwise, a layperson witnessing the removal of a bullet from a heart during an autopsy could opine as to the cause of the decedent's death." *Id.*; *accord, e.g., Jerden v. Amstutz*, 430 F.3d 1231, 1239 (9th Cir. 2005). Ms. Schneider's opinions must be excluded *a fortiori* because they are *not* based on percipience, but rather, as she admits, on "talk[ing] with various people who work with Content ID," as an expert witness might. Ex. 2B (Schneider Dep. Ex. 38) at 5.

The presence of any *one* of the three factors mandates exclusion of Ms. Schneider's opinions; *all three* are present. The opinions are not rationally based on her perception, not helpful, and within the scope of Rule 702. *See* Fed. R. Evid. 701. Because she was not disclosed as an expert under Rule 26(a)(2), this Court should exclude her opinions under Rule 37(c)(1).

Finally, although this motion has focused on Ms. Schneider's testimony and public statements as exemplary of what the Court should exclude, no other witness for the plaintiffs should be allowed to offer improper opinion testimony. Nor should any witness be allowed to use pejorative and prejudicial language similar to Ms. Schneider's.

3
MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER OPINION TESTIMONY AND RELATED IRRELEVANT AND PREJUDICIAL TESTIMONY
Case No. 3:20-cv-04423-JD

2134284                                                                          Page 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  April 27, 2023

KEKER, VAN NEST & PETERS LLP

By:  /s/ *Robert A. Van Nest*

ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

4

MOTION IN LIMINE NO. 2 TO EXCLUDE IMPROPER OPINION TESTIMONY AND RELATED
IRRELEVANT AND PREJUDICIAL TESTIMONY
Case No. 3:20-cv-04423-JD                                              Page 14

2134284

1

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2**

2
3
4
5
6
7
8
9
10
11

Defendants' Motion in Limine No. 2 runs afoul of paragraph 5 of the Court's Standing Order for Civil Jury Trials, which requires that motions in limine address "a single specific evidentiary issue."  Defendants' overly broad motion effectively asks the Court to enforce Rules 701 and 702 by "exclud[ing] the improper opinion testimony by any lay witness."  (Mot. 1.)  Such broad, unspecific motions are disfavored.  *See Gray v. Clark*, 2023 WL 1803720, at *2 (E.D. Cal. Feb. 7, 2023) ("Importantly, motions in limine seeking the exclusion of broad categories of evidence are disfavored."); *Pollard v. FCA US LLC*, 2018 WL 10701619, at *1 (C.D. Cal. June 25, 2018) (finding "boiler plate recitations of the rules of evidence" to be "too general" for a motion in limine ruling).  Any such objection is properly made and ruled on at trial.

12
13
14
15
16
17
18
19
20
21

To the extent that Defendants' motion seeks to exclude specific testimony by Ms. Schneider, it is meritless.  Ms. Schneider's trial testimony will either be pure fact testimony based on her personal knowledge or proper opinion testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  *See Bargas v. Rite Aid*, 2016 WL 11503069, at *1 (C.D. Cal. Oct. 26, 2016) ("Rule 701 permits a lay witness to testify to any matter within the witness's personal knowledge, so long as it is 'not based on scientific, technical, or other specialized knowledge.") (quoting Fed. R. Evid. 702.).  None of Defendants' arguments show otherwise.

22
23
24
25
26
27

First, there is no basis to *per se* exclude "Ms. Schneider's opinions about Content ID" because she has no "position in the business."  (Mot. 1.)  To be sure, at trial, Plaintiffs will show infringement, and rebut Defendants' DMCA defense, using testimony from YouTube employees with direct knowledge of the workings of Content ID.  The jury will also see the abundant information that YouTube publicly discloses (to Ms. Schneider and anyone else who is interested) regarding how Content ID works.  (*See, e.g.*, Ex. 3—YouTube Help: How Content ID

28

Works; Ex. 2—Transparency Rpt. H1 2022.)  And Plaintiffs will also present expert testimony

from Dr. Joseph Winograd regarding YouTube's policies and technology.

Ms. Schneider's own experiences and personal knowledge regarding Content ID are

rationally based on her perception and helpful to issues in the case.  Indeed, her lack of access to

Content ID is central.  Without access to Content ID (and similar matching technology), Ms.

Schneider has been forced to engage in a game of whack-a-mole to keep videos infringing her

copyrighted works off YouTube.  She has identified hundreds of infringing URLs for which she

has submitted complete and valid takedown notices.  Yet infringements of her work continue to

proliferate on the platform—leading to her frustration with YouTube's two-tiered copyright

policies that deprive her of the automated tools that enable large corporations to automatically

block or monetize their copyrighted content.  Not surprisingly, Ms. Schneider believes

"YouTube is acting in an unacceptable manner".  (Mot. 1.)  Defendants are free to try to argue

otherwise, but there is no basis to deprive the jury of hearing the facts regarding her experience

and her informed views about how she was harmed by Defendants' conduct, including how they

manage their Content ID system.

To be clear, Ms. Schneider will not be asked to offer testimony regarding the technical

aspects of Content ID or the legal question of what should be deemed a "'standard technical

measure under the DMCA'".  (Mot. 1.)  But her knowledge of what digital fingerprint

technologies exist and how they compare to YouTube's own description of Content ID (*see* Ex.

1—Schneider Dep. 56:19–57:7) is appropriate fact witness testimony.  *Bargas*, 2016 WL

11503069, at *1 (C.D. Cal. Oct. 26, 2016) ("Under Rule 602, a witness may testify to any matter

of which the witness has personal knowledge — that is, the witness's 'personal observations,

experiences, and perceptions.'") (quoting Fed. R. Evid. 602).

Second, Defendants are also wrong to claim that "Ms. Schneider's opinions"—without

specification—are "not helpful in determining a fact issue" based on the substance of her prior

writings, which Defendants quote at length and characterize as a "prejudicial jeremiads."  (Mot.

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2

1–3.)  Ms. Schneider has spent years advocating for the rights of artists and copyright owners harmed by YouTube's practices.  She undisputedly feels strongly about these issues.  The jury in this case can decide whether her perspective is well grounded in YouTube's conduct as the evidence at trial comes in.  *See Obrey v. England*, 215 F. App'x 621, 623 (9th Cir. 2006) (finding an abuse of discretion where the district court "precluded [plaintiff] from testifying about his reasons for bringing suit" which was "not improper lay opinion under Federal Rule of Evidence 701").  And, just as with any witness, in the unlikely event that her testimony is not simply forceful or impassioned, but improper, the Court will be fully capable of intervening.

But Defendants offer no basis for a sweeping preclusion order now.  Indeed, their argument overwhelmingly rests on a page-long block quote from Exhibit 2D that, Defendants fail to reveal, *has not even been identified by Plaintiffs as a trial exhibit*.  The evidentiary value of the statements in this document are utterly beside the point since there is no reason to think the jury will ever see it.  And the mere fact that Ms. Schneider made out-of-court comments that would not be admissible in a court of law obviously does not justify assuming that her actual testimony will be objectionable.  Were it otherwise, any trial witness would be subject to a preclusion order based on comments made in entirely different, out-of-court contexts.

Finally, none of Defendants' cases support the sweeping relief they seek under either Rule 701 or 702.  *See Jerden v. Amstutz*, 430 F.3d 1231 (9th Cir. 2005) (finding objectionable lay witness testimony about the results of a brain scan); *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1244, 1246 (9th Cir. 1997) (finding objectionable law enforcement testimony as to matters requiring special expertise including "countersurveillance driving" and "use of code words").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in Limine No. 2 to Exclude Improper Opinion Testimony and Related Irrelevant and Prejudicial Testimony

1

2

Respectfully submitted,

3

Dated:  May 5, 2023

4

/s/ Philip Korologos
Philip C. Korologos*
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

5

6

7

8

9

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

10

11

12

13

14

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

15

16

17

18

19

20

21

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

22

23

24

25

26

27

28

4                                                    Case No. 3:20-cv-04423-JD

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 2

*Admitted *pro hac vice*
*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**MOTION IN LIMINE NO. 3 TO EXCLUDE IMPROPER ALLEGED INFRINGEMENTS**<br><br>Date:       May 25, 2023<br>Time:       1:30 p.m.<br>Dept.:      Courtroom 11 – 19th Floor<br>Judge:      Hon. James Donato<br><br>Date Filed: July 2, 2020 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Trial Date:  June 12, 2023 |

1   Plaintiffs should be precluded from introducing evidence of any alleged infringements

2   beyond those identified by the Court's February 25, 2022 deadline for a "final list of

3   infringements" (Dkt. No. 98 at 1), and not properly before the jury following summary judgment

4   (Dkt. No. 222). Plaintiffs' attempts to introduce seemingly boundless evidence of alleged

5   infringements not at issue would confuse the jury, unfairly prejudice Defendants, and waste time

6   at trial.

7   **I.      BACKGROUND**

8   Infringement claims are not a moving target. The Court issued a scheduling order

9   requiring "plaintiffs to identify [their] final list of infringements" by no later than February 25,

10  2022.  Dkt. No. 98 at 1. The Court subsequently underscored that the opportunity to identify

11  additional infringements has "[c]losed." Dkt. Nos. 155 at 1, 238 at 1.

12  Plaintiffs have nevertheless made repeated attempts to add new alleged infringements to

13  the case. They served a supplemental list of infringements in July 2022 and even unilaterally

14  asserted the right to "amend[]" that list in a supplemental interrogatory response two months later.

15  *See* Dkt. No. 222 at 4 n.1. When Schneider later attempted to introduce other alleged

16  infringements, the Court reaffirmed its earlier orders that the "deadline for Schneider to identify a

17  final list of infringements was February 25, 2022," and held that "infringements identified after

18  the February 25, 2022, deadline will not be considered." Dkt. No. 222 at 4 n.1 (citing Fed. R. Civ.

19  P. 37(c)). Undeterred, Plaintiffs later relied upon ***still more*** new alleged infringements in an

20  attempt to bolster their opposing proffer on the DMCA safe harbor. *See* Dkt. No. 226 at 9 & n.2;

21  Dkt. No. 226-37.

22  The Court's summary judgment ruling as to Plaintiff Maria Schneider further narrowed

23  the case by dismissing many claims based on license and the statute of limitations. The Court

24  ruled that under YouTube's Terms of Service Schneider licensed any works that she (or people

25  she authorized) uploaded to YouTube, and that alleged infringements of which Schneider was

26  aware more than one year before suit were time barred. Dkt. No. 222 at 13-22. At the Court's

27  direction (*id.* at 22), the parties submitted a list of "Schneider's remaining works-in-suit and

28  infringement claims." (Dkt. No. 232). Only those works and alleged infringements remain at issue

for Schneider. *See id.* The parties agree that the reasoning of the Court's summary judgment order likewise forecloses many of Uniglobe's and AST's infringement claims.

## II.    ARGUMENT

Any "infringements identified after the February 25, 2022, deadline" or disposed of by the Court's summary judgment rulings as to license and the statute of limitations are not part of the case for trial. *See* Dkt. 222 at 4 n.1 (citing Fed. R. Civ. P. 37(c)); *id.* at 13-22. Therefore, evidence related to other alleged infringements is admissible only if relevant to issues actually in the case and only if the evidence's probative value is not substantially outweighed by unfair prejudice, confusing the issues, and wasting time. *See* Fed. R. Evid. 402, 403. Evidence of other infringements meets none of these requirements.

Most importantly, such evidence is irrelevant. The only relevance theory pressed by Plaintiffs—that the post-February 2022 infringements demonstrate Defendants' failure to act on red flag knowledge and consequent ineligibility for the DMCA safe harbor—is contrary to Ninth Circuit law. A defendant loses DMCA safe harbor protection for a specific infringement only if its red flag knowledge concerns the "specific instances of infringement" at issue. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1023 (9th Cir. 2013); *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1057 (9th Cir. 2017) ("Both actual and red flag knowledge refer to knowledge of *the specific infringement alleged*." (emphasis added)). Thus, any supposed "red flag knowledge" of infringements not on trial is irrelevant to Defendants' knowledge of or safe harbor eligibility for the infringements actually at issue.[1]

Even assuming that other infringements were relevant, evidence about them is unfairly prejudicial, confusing, and time-wasting. *See* Fed. R. Evid. 403. Like any copyright case, this "is a specific lawsuit by a specific plaintiff against a specific defendant about specific copyrighted

---

[1] Plaintiffs suggest that YouTube supposedly had red flag knowledge of the infringements at issue because it could have detected them through operation of its Content ID system. But as Defendants' Motion in Limine No. 6 explains, Content ID matches are not infringements and the parties' agreement to run Content ID in this case expressly provided that Defendants *would not know* whether "any Video Matches identified through Google's operation of the System are infringements of a Plaintiff's copyrights." Ex. 3A ¶¶ 2, 7 ("Ex." refers to an exhibit accompanying the Declaration of Travis Silva in Support of Defendants' Motions in Limine). Thus a Content ID match is not even evidence that YouTube knew the *matched* video infringed, much less evidence that YouTube knew or should have known some *other* video infringed.

[works]; it is not a lawsuit against copyright infringement in general." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017).  The suggestion of other supposed infringements not actually claimed, or foreclosed by the Court's summary judgment order, are "bad acts" evidence that would unfairly prejudice the jury against Defendants. Such evidence would also confuse the jury into evaluating not specific infringement claims, but Plaintiffs' generalized grievances against Defendants. *See* Defendants' Motion in Limine No. 2. Further, if other allegations of infringement creeped into trial, Defendants would be forced to show that these videos were not infringing—causing mini trials on issues the Court's orders have already put to rest. Such "mini-trials" likewise pose similar risks. *Van v. Language Line Servs., Inc.*, 2016 WL 3566980, at *3 (N.D. Cal. June 30, 2016).[2]

   After extensive briefing, the Court properly determined that Plaintiffs' infringement claims are limited to those they identified by February 2022 and those viable after the Court's summary judgment ruling. Plaintiffs cannot now circumvent those orders by offering evidence of those alleged infringements at trial, thereby wasting time and confusing the issues to the prejudice of Defendants.

---

[2] By way of further example, the parties agree that "1 a Minute" is no longer a Work in Suit. Namrata Singh Gujral Cooper, who is on Plaintiffs' witness list, testified at deposition that the screenplay she wrote "was largely [her] journey through breast cancer at a young age that was depicted in the film." Ex. 3B (Dep.) at 113:10-14. Testimony regarding 1 a Minute or Ms. Cooper's experience with breast cancer is irrelevant and prejudicial and thus inadmissible under Federal Rules of Evidence 402 and 403.

1

2     Dated:  April 27, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP


By:    /s/ *Robert A. Van Nest*
       ROBERT A. VAN NEST
       DAN JACKSON
       JULIA L. ALLEN
       TRAVIS SILVA
       ANNA PORTO
       LUKE APFELD
       AMOS J. B. ESPELAND

       DAVID H. KRAMER
       LAUREN GALLO WHITE
       WILSON SONSINI GOODRICH &
       ROSATI
       Professional Corporation
       650 Page Mill Road
       Palo Alto, CA 94304-1050
       Telephone: (650) 493-9300
       Email:  dkramer@wsgr.com
               lwhite@wsgr.com

       Attorneys for Defendants and
       Counterclaimants
       YOUTUBE, LLC and GOOGLE LLC

4

1     **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3**

2          Multiple infringements of Plaintiff Maria Schneider's works at issue have been uploaded

3     to YouTube throughout this case.  By definition, infringements Ms. Schneider identified based

4     on Content ID searches run by YouTube in discovery and finally provided in August 2022, as

5     well as additional infringements uploaded as recently as December 2022, could not have been,

6     and were not, included on the February 25, 2022, list of infringements provided by Plaintiffs

7     earlier in the case.  Plaintiffs recognize that under the Court's January 5, 2023, ruling [ECF 222

8     at 4 n.1], Plaintiffs cannot in this case pursue claims for infringements that were not on the

9     February 25, 2022, list.  However, evidence of ongoing infringements remains relevant to the

10    issues that will be tried in this case, and there is no basis to Defendants' assertion to the contrary.

11    Nor will such evidence be "prejudicial, confusing, [or] time-wasting" (Mot. 2) under Fed. R.

12    Evid. 403.  Accordingly, the Court should deny Defendants' motion to exclude this evidence.

13                                         **ARGUMENT**

14    **I.      Evidence of infringements not on the February 25, 2022, list of infringements is
              relevant to Plaintiffs' claims at issue.**

15

16          Defendants are wrong that infringements not included on the February 25, 2022, list have

17    no evidentiary value in this case.  Regardless of whether Plaintiffs are pursuing claims based on

18    such infringements, the ongoing (indeed rampant) nature of infringing conduct will be highly

19    relevant to the jury's understanding of YouTube's two-tiered copyright system and ongoing

20    identification of infringements that are never disclosed to rightsholders like Plaintiffs.

21    YouTube's Content ID system uses a digital fingerprinting technology that scans all content on

22    YouTube and identifies content that matches a given copyrighted work.  [ECF 245 (Class

23    Certification Motion) at 14; ECF 226 (Plaintiffs' Proffer) at 9.]  YouTube limits access to

24    Content ID to a select group of rightsholders while requiring other rightsholders to police

25    infringements using the YouTube Search function.  [ECF 226 at 3.]   Rightsholders without

26    Content ID access are significantly limited in their ability to identify infringements.  As evidence

27    of this, Defendants ran its Content ID matching technology on Plaintiffs' works at issue and

28

identified numerous new infringements previously unknown to Plaintiffs, who were unable to identify these infringements despite spending hours using YouTube Search.  (Ex. 1—9/9/2022 Schneider Am. Resp. Interrog. No. 6 at 12.)  Because Defendants provided the results of their Content ID matching after the February 25, 2022, deadline, Plaintiffs were unable to include these new infringements on their final list of infringements.  [ECF 226 at 9–10.]  Nevertheless, evidence of these infringements will be compelling evidence of how Content ID works, its capabilities, and the real-world impact on rightsholders without Content ID access.

For example, after finally receiving circumscribed access to Content ID as part of this case, Ms. Schneider now knows that there were undisclosed infringements that existed at the time of her February 25, 2022, list that relate to the same work that was the basis for a takedown notice that was included on the list.  Notably YouTube's internal systems would have matched those later-identified videos with the known infringement from the takedown in the ordinary course [ECF 226 at 10], but that matching data was never disclosed to her.  Because YouTube did not, and does not, share such information, she is now unable to pursue a claim in this case based on such infringements.  It would be unjust if YouTube's failure to disclose infringements meant that the jury is precluded from hearing clear and particularized evidence that YouTube's systems identify matches with known infringing works, and that YouTube hides this fact from a broad category of rightsholders as part of its discriminatory two-tiered system of copyright "enforcement."

Plaintiffs' current awareness of infringements that were unknown at the time of the February 25, 2022, infringement list is also relevant to Plaintiffs' claims for statutory damages, attorneys' fees, and injunctive relief.  [ECF 99 (First Amended Complaint) ¶¶ 154, 155, 159.]  Deterrence is relevant both to the jury's considerations of statutory damages and this Court's consideration of whether to award attorneys' fees.  *Frank Music Corp. v. Metro-Goldwyn-Mayer*, 886 F.2d 1545, 1554 (9th Cir. 1989) (noting "[s]tatutory damages are available in order to . . . deter infringement"); *Glacier Films (USA) v. Turchin*, 896 F.3d 1033, 1037–1039 (9th Cir. 2018)

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 3

("factors for courts to consider in making a fee determination" include "the goal of deterring future copyright infringements").  The threat of future violations is also relevant to the question of whether to grant injunctive relief.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("Generally, a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction.").  Regardless of whether they are on the February 2022 infringement list for which claims are being pursued, all of the infringements of which Plaintiffs are now aware speak to these issues, especially if they show (as they do) that Defendants continue to violate Plaintiffs' copyrights even as this litigation is ongoing.

## II.     Rules 403 and 404 (the latter ignored by Defendants) do not apply.

Defendants are also wrong that Plaintiffs' awareness of infringements that were unknown at the time of the February 2022 infringement list should be excluded under Rule 403.  (Mot. 2–3.)  Defendants cite no authority for the proposition that this evidence is "'bad acts' evidence that would unfairly prejudice the jury." (Mot. 3.)  Indeed, they ignore the relevant rule—Rule 404—which permits exclusion only when evidence is used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b).  Explaining to the jury how Content ID's matching system works, with examples, is not impermissible character evidence.  Nor is there a risk of "mini trials".  (Mot. 3.[1])  As explained above, evidence of these infringements will be used to illustrate YouTube's two-tiered copyright system and show that Defendants' misconduct is ongoing, not to prove the merits of these infringements.  And there is no reason to think that a jury will be confused by the additional infringements, let alone distracted by "Plaintiffs' generalized grievances against Defendants." (Mot. 3.)  Defendants' rhetoric is disconnected from the facts.[2]

---

[1] *Van v. Language Line Servs.*, a non-copyright case, is inapposite as it involved the exclusion of evidence unrelated to the events of the case. 2016 WL 3566980, at *3 (N.D. Cal. June 30, 2016).

[2] Defendants' improper attempt to bootstrap a motion to exclude all evidence relating to a Uniglobe's film *1 a Minute* onto this motion about infringements for which recovery is no longer sought should be rejected.  (Mot. 3 n.2.)  Defendants do not articulate how any testimony from Uniglobe about its background with *1 a Minute* is irrelevant or overly prejudicial.

1

2

Respectfully submitted,

3

Dated:  May 5, 2023

/s/ Philip Korologos

4

Philip C. Korologos*
pkorologos@bsfllp.com

5

Jeffrey Waldron*
jwaldron@bsfllp.com

6

BOIES SCHILLER FLEXNER LLP

7

55 Hudson Yards, 20th Floor
New York, NY 10001

8

Telephone: (212) 446-2300
Facsimile: (212) 446-2350

9

10

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com

11

BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor

12

San Francisco, CA 94104
Telephone: (415) 293-6800

13

Facsimile: (415) 293-6899

14

George A. Zelcs*

15

gzelcs@koreintillery.com
Randall P. Ewing, Jr.*

16

rewing@koreintillery.com
Ryan Z. Cortazar*

17

rcortazar@koreintillery.com
KOREIN TILLERY, LLC

18

205 North Michigan, Suite 1950

19

Chicago, IL 60601
Telephone: (312) 641-9750

20

Facsimile: (312) 641-9751

21

Stephen M. Tillery*

22

stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923

23

sberezney@koreintillery.com
Carol O'Keefe*

24

cokeefe@koreintillery.com
KOREIN TILLERY, LLC

25

505 North 7th Street, Suite 3600

26

St. Louis, MO 63101
Telephone: (314) 241-4844

27

Facsimile: (314) 241-3525

28

1

*Admitted pro hac vice*

2

*Attorneys for Plaintiffs*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
          lwhite@wsgr.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**MOTION IN LIMINE NO. 4 TO EXCLUDE IMPROPERLY REDACTED DOCUMENTS**<br><br>Date:      May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato<br><br>Date Filed:  July 2, 2020 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Trial Date:  June 12, 2023 |

Plaintiffs should be prohibited from introducing documents redacted by Plaintiffs supposedly pursuant to Russian privacy laws. Over 12,000 documents produced by Plaintiff AST Publishing Ltd. ("AST") and its agent, AZAPI—including a host on Plaintiffs' trial exhibit list—are missing crucial information including names from legal agreements bearing on ownership and licensing issues, and communications related to the Works-in-Suit and AST's copyright enforcement efforts. Simply put, AST chose to join a U.S. lawsuit then wielded Russian privacy laws to prevent investigation and refutation of its claims. It should be precluded from introducing these redacted documents at trial or offering evidence of what they would show if unredacted.

## I.      BACKGROUND

Plaintiff AST joined this case a year after it was filed. *See* Dkt. No. 87. At the time, Plaintiffs dismissed Defendants' concerns about the difficulty of obtaining discovery from a Russian company, claiming that AST's addition would "streamline and focus discovery." Dkt. No. 91 at 9. Unfortunately, Defendants' concerns were repeatedly validated. YouTube served its requests for production to AST a week after AST joined the case. *See* Ex. 4A[1] at 2 (served Nov. 24, 2021). Yet AST and its agent, AZAPI, unreasonably waited ***seven months*** to begin their productions. AST then waited until the very last day of fact discovery to produce 55,000 pages of mostly Russian-language documents—75% of AST's production. *See* Dkt. No. 153. AST's delays prompted the Court to extend YouTube's time to pursue AST-related discovery. *See id*. AZAPI then produced 30,000 pages (nearly 90% of its production) after the cut-off.

The documents AST and AZAPI belatedly produced are written almost entirely in Russian and redact identifying names, email addresses and related metadata—rendering many of the documents impenetrable. The redacted information includes names from licenses (Exs. 4B-4G), work-for-hire agreements (Exs. 4H-4L), correspondence about rights to works (Exs. 4M-4N), correspondence about AST and AZAPI's efforts to identify infringements (Ex. 4O), and correspondence about improper takedown notices sent by AZAPI (Ex. 4P). AST concealed critical information from these relevant documents without seeking, let alone obtaining, a

---

[1] "Ex." refers to an exhibit attached to the accompanying Declaration of Travis Silva in Support of Defendants' Motions in Limine.

protective order. Their unilateral decision made it nearly impossible for Defendants to trace chains-of-title, to identify who had rights to or authorization to use the Works-in-Suit, or to determine which of the over 12,000 redacted documents warranted translation into English for use at depositions.

Despite repeated requests, Exs. 4Q-4R, AST and AZAPI refused to produce unredacted documents or to substantiate their claim that Russian law compelled redactions. Exs. 4S-4T.

## II.   ARGUMENT

Supposedly to comply with Russian privacy laws, Plaintiffs redacted relevant identifying information from over 12,000 documents, including legal agreements bearing on ownership and licensing issues and communications related to the Works-in-Suit and AST's copyright enforcement efforts. Plaintiffs were obligated to produce all documents they might use to support their claims. Fed. R. Civ. P. 26(a)(1)(A)(ii). Withholding relevant information from these documents is no different than withholding the documents entirely. *See* Fed. R. Civ. P. 37(a)(4) ("incomplete . . . response must be treated as a failure to . . . respond"). Plaintiffs should be precluded from offering the documents at trial unless they can demonstrate that their failure to produce was "substantially justified or is harmless." *See* Fed. R. Civ. P. 37(c)(1); Standing Discovery Order ¶ 6. They cannot.

Russian law cannot justify Plaintiffs' unilateral decision to redact key information where a protective order would have adequately protected any legitimate privacy interest. *See, e.g.*, *Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 618554, at *1, *3 (N.D. Cal. Feb. 14, 2019) (requiring production of unredacted foreign documents that could be protected by protective order). That is even more true here where AST and AZAPI neither timely raised privacy-related objections to Defendants' document requests, nor sought a protective order. *See* Ex. 4A (AST R&Os); Ex. 4U (AZAPI R&Os); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (state-secrecy-based objection waived when not asserted in responses).

Waiver aside, AST's convenient assertion that Russian law bars disclosure was undercut

1  by its offers to disclose the redacted information on Plaintiffs' take-it-or-leave-it terms.[2] These

2  offers undermined any claim of privacy in the redacted names and failed to provide a meaningful

3  opportunity to analyze the documents. Regardless, Plaintiffs are not entitled to strongarm

4  Defendants into their preferred process for producing relevant documents in a federal litigation in

5  which they chose to participate. Fed. R. Civ. P. 34(a)(1) (allowing the requesting party to copy

6  documents) & (b)(2)(E)(i) (requiring production of documents as kept in the ordinary course).

7          Plaintiffs' long-delayed production of redacted documents prejudiced Defendants. The

8  redactions hamstrung Defendants' preparation for depositions and trial and have made it nearly

9  impossible to trace chains of title or to conduct follow-up discovery targeted to the individuals

10 whose identities were withheld. Plaintiffs glibly note that "the *vast majority* of text in the AST

11 and AZAPI productions has not been redacted" (Ex. 4S), but that is sophistry. The summary

12 judgment proceedings over whether Schneider's publisher and other agents had the right to

13 license Works-in-Suit made clear that *who* is signing an agreement or acting is often a key fact

14 (*see* Dkt. No. 222 at 4-15). That is precisely the nature of the information AST redacted.

15         Having frustrated Defendants' reasonable discovery without cause, Plaintiffs should be

16 barred from relying on unredacted versions of the documents that they might now choose to

17 disclose. Else, Plaintiffs could cherry-pick which redacted documents they wish to disclose and

18 make it difficult or impossible for Defendants to identify the impeaching evidence buried in the

19 over 12,000 redacted documents AST and AZAPI produced. And it would compound the

20 prejudice to Defendants, who have for nearly a year been deprived of any meaningful opportunity

21 to use the redacted information at depositions of AST and AZAPI witnesses, in support of

22 briefing, and in preparation for trial.

23

24

25

26

27

28

---

[2] Counsel first said they "m[ight] be able to allow Defendants to review all documents without PII
redactions if the documents are stored in Canada or the UK" without printing, saving, or
downloading. Ex. 4S at 2. They later offered during videotaped depositions to verbally disclose
information redacted from exhibits. *See* Ex. 4T at 1. More recently—weeks before trial—counsel
offered to consider requests to lift redactions Defendants identified on a case-by-case basis.

1

2      Dated:  April 27, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP


By:    /s/ *Robert A. Van Nest*
       ROBERT A. VAN NEST
       DAN JACKSON
       JULIA L. ALLEN
       TRAVIS SILVA
       ANNA PORTO
       LUKE APFELD
       AMOS J. B. ESPELAND

       DAVID H. KRAMER
       LAUREN GALLO WHITE
       WILSON SONSINI GOODRICH &
       ROSATI
       Professional Corporation
       650 Page Mill Road
       Palo Alto, CA 94304-1050
       Telephone: (650) 493-9300
       Email:  dkramer@wsgr.com
               lwhite@wsgr.com

       Attorneys for Defendants and
       Counterclaimants
       YOUTUBE, LLC and GOOGLE LLC

1    **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO LIMINE NO. 4**

2        Defendants' motion *in limine* No. 4 belatedly attempts to bring before the Court a

3    discovery dispute that Defendants never raised with the Court during the discovery period and

4    should be denied.

5        Pursuant to Russian law, AST redacted personal identifiable information ("PII") from its

6    documents.  [*See* ECF 217 at 1].  In an effort to accommodate Defendants, while still complying

7    with AST's obligations under Russian law, AST repeatedly offered Defendants the ability to

8    review on a server hosted in Canada the fully unredacted versions of *all* documents subject to

9    this motion.  Defendants declined to do so.  They also chose not to seek relief from the Court.

10   Now—long after the August 8, 2022, deadline the Court set for Defendants to seek discovery

11   from AST [ECF 153.at 2], and on the eve of trial—Defendants claim the unredacted documents

12   are critical to their case.  (Mot. at 1.)

13       Defendants' dilatory conduct is improper under Ninth Circuit precedent.  In *Patelco*

14   *Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001), the defendant agreed to produce some

15   requested documents but objected to others.  Instead of timely raising a motion to compel, the

16   plaintiff moved *in limine* to exclude the withheld evidence.  *Id.* at 903.  The district court

17   considered the "motion *in limine*" to be an untimely discovery motion and thus denied it.  *Id.*

18   The Ninth Circuit affirmed, approving of the district court's conclusion that "[a] motion to

19   compel pursuant to Rule 37 is the proper vehicle to address instances where the responding party

20   fails to make or cooperate in providing the requested discovery" and that "Defendants' failure to

21   obtain the requested documents is due to their own lack of diligence."  *Id.* at 913.  Likewise here,

22   Defendants failed to obtain unredacted versions of AST's documents through discovery, either

23   by agreeing to Plaintiffs' (still open) offer to review unredacted documents or by filing a timely

24   motion to compel.  As in *Patelco*, Defendants' lack of diligence should not now serve as a basis

25   to exclude all of AST's documents.  *See id.*

26       Even if this motion were not considered an untimely discovery motion, it is improper for

27   another reason: it circumvents the Court's Standing Orders and Local Rules.  If AST chooses to

28

introduce redacted versions of documents at trial, that issue should first be addressed during the pre-trial meet-and-confer process as envisioned in the Court's Standing Order for Civil Jury Trials ¶ 22.  If not resolved between the parties, the documents will be listed on the joint disputed exhibit list pursuant to Standing Order ¶ 15 for the Court's ultimate resolution.  The parties' meet-and-confers regarding exhibit lists are ongoing and the parties have not yet settled on which AST documents, if any, will be included on the joint disputed exhibit list.  Separately, document sealing requests (and oppositions) are governed by the Local Rules.  In advance of trial, AST may file an administrative motion to seal portions of certain documents pursuant to LR 7-11 and LR 79-5, which Defendants can then oppose pursuant to LR 7-11(b).  At that point, the Court can consider AST's reasons for sealing portions of specific documents and Defendants' opposition (if they choose to file one).  But it is inappropriate to request sealing rulings on documents not yet at issue and outside of the processes articulated by the Standing Order and the Local Rules.

In any event, *if* AST seeks to introduce redacted versions of documents, any such redactions would be limited to personal data as defined under Russian law,[1] and would meet the "compelling reasons" standard for sealing trial exhibits.[2]  *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 2014 WL 12997348, at *1 (N.D. Cal. June 17, 2014) (citing *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006)).  Courts routinely find that PII redactions, such as AST's, meet this standard.  *See, e.g.*, *Kamakana*, 447 F.3d at 1182 (affirming magistrate judge's ruling that home addresses and social security numbers met the "compelling reason" standard); *United States v. Thompson*, 2022 WL 4321010, at *4 (W.D. Wash. Sept. 19, 2022)

---

[1] As a Russia-based entity, AST must comply with Russian Personal Data Law, which forbids disclosure of personal data except for certain limited exceptions.  "Personal data" includes "any information referring directly or indirectly to a particular or identified individual."  Federal Law of 27 July 2006 N 152-FZ ON PERSONAL DATA, Art. 3 § 1, available at https://webcache.googleusercontent.com/search?q=cache:R1ZjWXFWr6UJ:https://pd.rkn.gov.ru/docs/Federal_Law_On_personal_data.doc&cd=6&hl=en&ct=clnk&gl=us.  Plaintiffs' counsel's consultations with attorneys that specialize in Russian privacy law confirmed that this broad definition includes, inter alia, full names and email addresses.

[2] Even if the Court determined that any of AST's redactions were improper, the applicable remedy would be to revise the redactions, not wholesale exclusion of the underlying documents.

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 4

1   (redacting names from admitted trial exhibits); *Xie v. De Young Properties 5418, LP*, 2018 WL

2   3241068, at *3 (E.D. Cal. July 2, 2018) (authorizing redaction of plaintiff's current and previous

3   addresses under "compelling reason" standard).

4         The remedy that Defendants seek—exclusion of necessarily redacted versions of AST's

5   documents (Mot. at 1, 3)—would effectively prevent AST from presenting any exhibits.  That

6   would be tantamount to precluding AST's claim.  And because motions *in limine* "are not

7   substitutes for summary judgment," the motion should be denied.  *See* Standing Order for Civil

8   Jury Trials ¶ 6.

9                           Respectfully submitted,

10

11   Dated:  May 5, 2023              /s/ *Philip Korologos*

12                       Philip C. Korologos*
     *pkorologos@bsfllp.com*

13                       Jeffrey Waldron*
     *jwaldron@bsfllp.com*

14                       BOIES SCHILLER FLEXNER LLP
     55 Hudson Yards, 20th Floor

15                       New York, NY 10001
     Telephone: (212) 446-2300

16                       Facsimile: (212) 446-2350

17                       Joshua Irwin Schiller, CA Bar #330653

18                       *jischiller@bsfllp.com*
     BOIES SCHILLER FLEXNER LLP

19                       44 Montgomery St., 41st Floor
     San Francisco, CA 94104

20                       Telephone: (415) 293-6800

21                       Facsimile: (415) 293-6899

22                       George A. Zelcs*

23                       *gzelcs@koreintillery.com*
     Randall P. Ewing, Jr.*

24                       *rewing@koreintillery.com*
     Ryan Z. Cortazar*

25                       *rcortazar@koreintillery.com*
     KOREIN TILLERY, LLC

26                       205 North Michigan, Suite 1950
     Chicago, IL 60601

27

28                     3              Case No. 3:20-cv-04423-JD

Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted pro hac vice

Attorneys for Plaintiffs

4

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
         lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Case No. 3:20-cv-04423-JD<br><br>**MOTION IN LIMINE NO. 5 RE INTERNATIONAL STANDARD RECORDING CODES**<br><br>Date:      May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato<br><br>Date Filed:  July 2, 2020<br><br>Trial Date:  June 12, 2023 |

Pursuant to Federal Rule of Civil Procedure 37(c) and this Court's order (*see* Standing Discovery Order ¶ 6), Defendants move to exclude Plaintiff Maria Schneider from introducing evidence that she failed to produce in discovery: evidence that any YouTube videos contained sound recordings from which copyright management information ("CMI") in the form of International Standard Recording Codes ("ISRCs") was allegedly removed. *See* 17 U.S.C. § 1202.

## I.    BACKGROUND

To prove a claim for improper removal of CMI under Section 1202, a copyright holder must establish the existence of CMI in a work and the removal of that CMI from the work. *See Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673-75 (9th Cir. 2018)*; Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *3-5 (N.D. Cal. Sept. 19, 2022). A claim under Section 1202 also lies against a party who, with actual knowledge that CMI has been improperly removed from a work, distributes the work with actual or constructive knowledge that doing so will foment infringement. *See Harrington*, 2022 WL 4348460, at *3.

This claim has long been a focus of discovery. In November 2020, Defendants expressly asked Plaintiffs for the specific details of "each alleged violation of Section 1202 of the Copyright Act . . . *including . . . the URL of the YouTube video displaying the content without the alleged CMI.*" Ex. 5A (Schneider's First Am. Resp. and Obj. to Defs.' First and Second Set of Interrog.)[1] at 16-22 (emphasis added). Schneider, the only party asserting a 1202 claim, disclosed that the sound recordings of many of her musical works had been assigned ISRCs (*id.*), but provided no other response to Defendants' request until two months *after* the discovery cutoff. For the first time in opposition to Defendants' motion for summary judgment, Schneider disclosed that she intended to pursue two distinct CMI claims. Dkt. 172-1 (Opp.) at 15-16. *First*, she said she was claiming that YouTube improperly removed "CLFN" metadata from nine specific YouTube videos that she identified. *Second*, she said YouTube violated Section 1202 either by itself removing ISRCs from videos uploaded to the service, or by distributing videos knowing someone else had removed ISRCs from the sound recordings within those videos.

---

[1] "Ex." refers to an exhibit attached to the accompanying Declaration of Travis Silva in Support of Defendants' Motions in Limine.

1  But for her belated-disclosed ISRC claim, ***Schneider never identified a single alleged***

2  ***violation.*** That is, she did not point to any video on YouTube containing a sound recording from

3  which an ISRC had been removed by anyone. She never even identified videos containing sound

4  recordings of her compositions at all (as opposed to live performances of those compositions, for

5  example). Instead, Schneider merely argued that she uses ISRCs on sound recordings of her

6  works generally and that her works were allegedly infringed by certain videos. Dkt. 184

7  (Schneider Decl.) at ¶¶ 51-53. But that is not the information Defendants sought and need—it

8  does not identify the supposed Section 1202 violations giving rise to her claim—that is, the

9  videos on YouTube from which an ISRC was supposedly removed. Schneider has still not

10  disclosed the basis for her ISRC-based CMI claim, just weeks from trial.

11  Simply put, despite Defendants' persistent efforts during discovery, Schneider has

12  prevented them from assessing whether any video uploaded to its service actually included a copy

13  of a sound recording containing one of Schneider's ISRCs. And, because Schneider still has not

14  disclosed any video containing a sound recording from which a recording has been removed, she

15  should not be permitted to offer any such evidence at trial.

16  **II.    ARGUMENT**

17  Rule 37(c)(1) bars a party's "use at trial of any information" that "is not properly

18  disclosed" in the discovery process. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101,

19  1106 (9th Cir. 2001). The Rule is designed to provide "a strong inducement for disclosure of

20  material," *id.* at 1106, and a party can escape the "harshness" of exclusion only by proving that its

21  failure to provide the required discovery was substantially justified or harmless. *Merchant v.*

22  *Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (citing *Yeti*, 259 F.3d at 1106).

23  Despite Defendants' specific interrogatory directly requesting the URL for the video from

24  which CMI was removed, Schneider did not—and still has not—disclosed the videos that are the

25  subject of her ISRC-based CMI claim. Long after discovery closed, Schneider pointed to her list

26  of 381 allegedly *infringing* videos (164 of which are now dismissed) in a declaration filed in

27  opposition to summary judgment (*see* Dkt. 172-1 (Schneider Decl.) at 15-16), but the question is

28  not what videos she contends infringe, but which she contends contained sound recordings

2

bearing ISRCs that were improperly removed. The substantial majority of the videos on Schneider's infringement list do not appear to contain sound recordings at all, and thus could not possibly be the subject of an ISRC claim. *See*, *e.g.*, Dkt. 268-14 (Harold Decl.) ¶ 8 (10-second clip of a student band playing). Even for those allegedly infringing videos that may contain sound recordings, Defendants cannot determine the sound recording contained or the ISRC code, if any, supposedly removed. *See* 5B (Jessop Tr.) at 186:2-4 ("not all sound recordings have ISRCs").

Absence of an ISRC in the sound recording is a compelling answer to a Section 1202 claim for improper removal. Schneider's own expert highlighted the importance of determining whether a sound recording carries an ISRC code because he purchased an album with Schneider's sound recordings that carried no ISRCs at all. *See* Ex 5B (Jessop Tr.) at 116:5-17, 117:11-20. If he (or anyone else) used those recordings to create a video, no ISRCs existed to be removed.

Identification of the videos on YouTube that are the subject of her claim is central to Schneider's Section 1202 claim, and her omission of it during discovery was neither substantially justified nor harmless. *See* Fed. R. Civ. P. 37(c)(1); *Merchant*, 993 F.3d at 740. Indeed, Schneider has offered no reason why this information was not disclosed. The harm to Defendants is also manifest, as Schneider prevented Defendants from exploring the basis for the ISRC claim in discovery and gathering the evidence to refute it.[2] Allowing Schneider to introduce new evidence at trial to support her ISRC removal theory would cause unfair prejudice to Defendants. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014) ("The theory of disclosure under the Federal Rules of Civil Procedure is to encourage parties to try cases on the merits, not by surprise, and not by ambush"); *see also* Standing Discovery Order ¶ 6. Accordingly, Defendants respectfully request that the Court bar Schneider from introducing evidence of any video on YouTube from which an ISRC was supposedly removed.

---

[2] YouTube has had no opportunity to explore, for example, what Schneider's basis is for believing that YouTube actually knew a specific video used a sound recording that originally carried an ISRC, as is required to prove YouTube ***intentionally*** removed an ISRC. *See Harrington*, 2022 WL 4348460, at *4. Or if Schneider wants to show YouTube distributed the video knowing an ISRC had been removed by someone else, how Schneider intends to prove the requisite knowledge. *See id.* (actual knowledge required for a distribution claim under 1202). And YouTube has had no opportunity to explore whether any supposed removal of an ISRC was unauthorized, as it must be to prove a claim. *See* 17 U.S.C. § 1202(b).

1

Respectfully submitted,

2

Dated: April 27, 2023                                    KEKER, VAN NEST & PETERS LLP

3

4

By:   /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST

5

DAN JACKSON
JULIA L. ALLEN

6

TRAVIS SILVA
ANNA PORTO

7

LUKE APFELD
AMOS J. B. ESPELAND

8

DAVID H. KRAMER

9

LAUREN GALLO WHITE

10

WILSON SONSINI GOODRICH &
ROSATI

11

Professional Corporation
650 Page Mill Road

12

Palo Alto, CA 94304-1050
Telephone: (650) 493-9300

13

Email:  dkramer@wsgr.com
            lwhite@wsgr.com

14

15

Attorneys for Defendants and
Counterclaimants

16

YOUTUBE, LLC and GOOGLE LLC

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 5**

Defendants' fifth motion *in limine* seeks to relitigate their CMI summary judgment motion that the Court denied.  [*See* ECF No. 222 at 20–22.]  The motion attempts to prevent Ms. Schneider from presenting "any video on YouTube from which an ISRC was supposedly removed", an element of her claim.  (Mot. at 3.)  Motions *in limine* "are not substitutes for summary judgment," rendering it procedurally improper.  Standing Order for Civil Jury Trials ¶ 6.  It is also substantively meritless.  Defendants' motion fails under Rule 37(c), the authority Defendants invoke for the exclusion sanction they seek.  Rule 37(c) applies only "if a party fails to provide information . . . as required by Rule 26(a) or (e)."  Ms. Schneider went beyond Rule 26's requirements by timely supplementing her interrogatory response even though the additional information it contained had already been disclosed through discovery.  Contrary to Defendants' misrepresentations, Schneider timely responded to their contention interrogatory by providing them with all the information—including the URLs—of the videos containing sound recordings subject to her CMI claims.  Defendants' entire quarrel rests on the format and style of her response—not its substance.  The Court should deny the motion.

**BACKGROUND**

Shortly after Plaintiffs filed suit, Defendants served Interrogatory No. 9, a quintessential contention interrogatory, asking Ms. Schneider to "[d]escribe in detail each alleged violation of Section 1202 of the Copyright Act that you *contend* Defendants committed."  (Ex. 1—Defs.' Interrog. No. 9 (emphasis added).)  Ms. Schneider timely responded with a list of her works matched against ISRC metadata.  (Ex. 2—Resp. to Interrog. No. 9 at 8–10.)  She also identified the interrogatory as a premature contention interrogatory and objected on that ground while reserving the right to supplement.  (*Id.* at 2, 7.)

Complying with the Court's order, Ms. Schneider served Defendants her list of infringements on February 25, 2022.  (Ex. 4.)  The list contained the name and URL of every video containing Schneider's works that she identified on the platform for purposes of this lawsuit.  At the close of discovery, Ms. Schneider perfected her response to Defendants' CMI

contention interrogatory, stating that the URL of every video subject to her CMI claim could be found on her "February 25, 2022 . . . lists of infringements that contains her sound recording of works in suit." (Ex. 3—Am. Resp. to Interrog. No. 9 at 14.) She also included a chart with the works in suit and ISRC codes. The "missing information" is not missing at all—it just requires rudimentary cross-referencing.

## ARGUMENT

Rule 33(a) provides that a contention interrogatory "need not be answered until designated discovery is complete, or until a pretrial conference or some other time" at the court's discretion. Ms. Schneider timely served her amended response to Defendants' CMI interrogatory shortly after the close of fact discovery; well before the completion of expert discovery; and months before the dispositive motion deadline. Indeed, the Court already rejected Defendants' argument that the amended response was untimely. [ECF No. 222 at 21 n.8.] There is thus no basis for excluding this information on timeliness grounds or for challenging its completeness: it incorporates the videos and URLs disclosed in other documents identified in that response.

Despite this, Defendants invoke Rule 37(c)'s exclusion sanction but omit the limiting clause that dooms their argument. Rule 37(c) exclusion applies only "[i]f a party fails to provide information or identify a witness *as required by Rule 26(a) or (e)*" (emphasis added). Plaintiffs were never required by Rule 26(a) to identify specific URLs as part of initial, expert, or pretrial disclosures. Neither do Defendants' authorities support their argument. *Yeti by Molly v. Deckers Outdoor*, 259 F.3d 1101 (9th Cir. 2001), and *Merchant v. Corizon Health,* 993 F.3d 733 (9th Cir. 2021), examined Rule 37(c)'s exclusion sanction in the context of a party failing to make expert disclosures required by Rule 26(a)(2). Those cases have no bearing on the facts here.

Indeed, Ms. Schneider exceeded Rule 26(e)'s requirement to supplement. That Rule requires a supplemental response only "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Rule

26(e)(1)(A).  As explained above, Ms. Schneider amended out of an abundance of caution to incorporate by reference the list of URLs previously produced.  But even if Ms. Schneider had not amended, she would not have violated Rule 26(e) because the list of URLs incorporated by reference had "otherwise been made known to" Defendants through Plaintiffs' letter and Defendants' running Content ID against Ms. Schneider's works in the discovery process. Defendants' own documents show that Content ID automatically distinguishes a sound recording match from a composition/melody match—the main issue raised in Defendants' motion.  (*See* Ex. 5—"Content ID Launches for Music Labels" at -783 (Audio Short Match Policy used to identify assets of "all music labels . . . does not apply to melody match")).)

Even if Ms. Schneider's list was overinclusive, that error would be "harmless" under Rule 37(c).  Defendants' motion shows that they determined which videos contain sound recordings and which do not.  (Mot. 3.)  Ms. Schneider also identified every work in each video and matched each work with an ISRC-identified recording in the interrogatory response.  In any event, overinclusion would raise a merits issue—not an evidentiary one.  Finally, all the videos at issue here were within Defendants' possession and identified by Ms. Schneider in February 2022.  Even if she had not amended her response, it would be inappropriate to sanction her for any Rule 26 violation.  *Hamilton v. Wal-Mart Stores,* 39 F.4th 575, 591 (9th Cir. 2022) (reversing discovery sanction where information was within defendants' possession).

Nor is there any basis for Defendants' claim that they "cannot determine the sound recording contained or the ISRC code, if any, supposedly removed" from sound recording videos.  (Mot. 3.)  Defendants need only match the URLs in the letter against the ISRC codes in the interrogatory response by using the common name of the work in suit present in all documents.  Surely Google and YouTube can manage that menial data processing task.

As Defendants' brief indicates, their motion is nothing more than a second bite at the apple of their failed summary judgment motion against Schneider's CMI claims.  The Court should thus deny their motion and allow Schneider's CMI claims to proceed to trial.

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 5, 2023

/s/ Philip Korologos
Philip C. Korologos*
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Admitted *pro hac vice*
*Attorney for Plaintiffs*

1 | KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
2 | rvannest@keker.com
DAN JACKSON - # 216091
3 | djackson@keker.com
JULIA L. ALLEN - # 286097
4 | jallen@keker.com
TRAVIS SILVA - # 295856
5 | tsilva@keker.com
ANNA PORTO - # 319903
6 | aporto@keker.com
LUKE APFELD - # 327029
7 | lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
8 | aespeland@keker.com
633 Battery Street
9 | San Francisco, CA 94111-1809
Telephone:   415 391 5400
10 | Facsimile:   415 397 7188

11 | Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

12 |

13 | UNITED STATES DISTRICT COURT

14 | NORTHERN DISTRICT OF CALIFORNIA

15 | SAN FRANCISCO DIVISION

16 | MARIA SCHNEIDER, UNIGLOBE
ENTERTAINMENT, LLC, and AST
17 | PUBLISHING, LTD., individually and on
behalf of all others similarly situated,
18 |
Plaintiffs,
19 |
        v.
20 |
YOUTUBE, LLC and GOOGLE LLC,
21 |
Defendants.
22 |
YOUTUBE, LLC and GOOGLE LLC,
23 |
Counterclaimants,
24 |
        v.
25 |
PIRATE MONITOR LTD., PIRATE
MONITOR LLC, and GÁBOR CSUPÓ,
26 |
Counterclaim Defendants.

Case No. 3:20-cv-04423-JD

**MOTION IN LIMINE NO. 6 TO
EXCLUDE DISCOVERY SEARCH
RESULTS**

Date:     May 25, 2023
Time:     1:30 p.m.
Dept.:    Courtroom 11 – 19th Floor
Judge:    Hon. James Donato

Date Filed: July 2, 2020

Trial Date: June 12, 2023

During discovery the parties entered into an agreement in which Defendants agreed to operate Content ID to identify "video matches" relating to Plaintiffs' Works-In-Suit. The agreement provided that the results of these searches would not be admissible to establish Defendants' actual knowledge of alleged infringements. Yet, Plaintiffs intend to present the search results for just that purpose. Furthermore, it is undisputed that "video matches" do not establish infringement and, even if they did, none of the "video matches" that Content ID identified through this bespoke, discovery-driven process relate to infringements in this case. Any evidence of Defendants' use of Content ID for discovery purposes should therefore be excluded under FRE 402 and 403 and pursuant to the parties' discovery agreement.

## I.    BACKGROUND

Content ID is a copyright management tool allowing participating rightsholders to find YouTube videos matching the content in copyrighted works that they claim to own. To identify a match, rightsholders deliver reference files to YouTube, which then compares those files against its corpus of videos. *See* Dkt. No. 268-02 ("Zhu Decl.") ¶ 8. If Content ID finds a matching video on YouTube, the system can automatically monetize, track or block the video in accordance with standing directions from the rightsholder, or flag the match for the rightsholder to act on manually. *Id.* The system also enables rightsholders to submit a DMCA takedown notice to YouTube, alleging that the video is infringing and asking YouTube to remove it. *Id.*

During discovery, the parties entered into an agreement by which Defendants would operate Content ID on a one-time basis, solely for the purpose of this litigation, to aid Plaintiffs in identifying potential matches of their Works-in-Suit contained in YouTube videos. *See* Ex. 6A[1] (Content ID License Agreement, hereinafter "Agreement"). The Agreement specified that "***Google will not know*** whether Plaintiffs allege that any Video Matches identified through Google's operation of the System are infringements of a Plaintiff's copyrights." *Id.* at ¶ 7 (emphasis added). The Agreement also provided that "***neither Google's operation of the System at Plaintiffs' request nor the fact of any Video Matches for the Works, shall be offered as***

---

[1] "Ex." refers to an exhibit attached to the accompanying Declaration of Travis Silva in Support of Defendants' Motions in Limine.

1    ***evidence in the Litigation to show that Google in any way had actual knowledge of alleged***

2    ***infringement of any Work***." *Id.* at ¶ 6 (emphasis added).

3         Regardless, Plaintiffs now intend to mischaracterize both the process and its output as

4    evidence of Defendants' knowledge of infringement. *See* Dkt. No. 226 at 9 & 9 n.2 (arguing that

5    "YouTube Has Actual and Red Flag Knowledge of Plaintiffs' Infringements").

6    **II.    ARGUMENT**

7         The use of Content ID as a discovery mechanism is irrelevant to the issues in the case.

8    Any hypothetical probative value is far outweighed by the risk of unfair prejudice and the need

9    for mini-trials on irrelevant claims of infringement.

10        ***First***, the Content ID process Defendants voluntarily undertook and the resulting matches

11   are irrelevant to Defendants' supposed knowledge of infringements. Plaintiffs recognized as

12   much when they expressly agreed they would not "offer[]" the process or matches "as evidence"

13   of Defendants' actual knowledge of any alleged infringements, and that Defendants "w[ould] not

14   know whether" matches were infringements. *See* Agreement at ¶¶ 6-7. They cannot not violate

15   that agreement.

16        ***Second***, "video matches" don't establish infringement. Undisputed record evidence

17   establishes that Content ID merely identifies ***matches***, not ***infringements***. *See* Dkt. No. 268-02

18   (Zhu Decl.) ¶ 8. The fact that a video matches a reference file says nothing about the elements of

19   or defenses to an infringement claim, such as "who owns" the work, "whether the Content ID

20   user's copyrighted content is what caused the match (as opposed to some other aspect of the

21   matching video)," or whether the video was licensed, authorized, or a fair use. *Id.* Even Plaintiffs'

22   proffered expert agrees that Content ID identifies matches, not infringements:

23        Q: The Content ID system can't automatically determine what is and isn't
          infringing, right?  A: Right.
24

25        Q: The system can automatically identify matches of a given reference file to a
          given video file, correct?  A: Yes.

26   Ex. 6B (Winograd Tr.) at 66:7-13; *see also*, *e.g.*, *id.* at 68:16-20.

27

28

1    Indeed, the results here confirm that Content ID does not identify infringements.[2] For

2    example, the reference files AST provided generated over *29,000* matches, but AST alleged only

3    *64* to be infringing. Thousands of the matches were apparently irrelevant because they reflected

4    matches to intro music in AST's reference files, not matches to AST's audiobooks. And as AST

5    admitted, before alleging an infringement based on any match, AST would have to request a list

6    of "partner channels to whom [AST's licensing agent] gave authorization to use excerpts from the

7    works." Ex. 6C (Ryabyko 30(b)(6) Tr.) at 146:12-147:17. That research took AST months. *See*

8    *Id.* at 151:15-153:3. Getting into these issues at trial would require time-consuming mini-trials on

9    specific results that do not relate to the infringements in the case. Because video matches do not

10   establish infringement, the Content ID results should be excluded under Rule 401—and because

11   this distinction could confuse the jury, they should also be excluded under Rule 403.

12        ***Third***, these Content ID results have the potential to confuse the jury because they do not

13   relate to alleged infringements in the case. It would also confuse the issues. At most, the trial

14   concerns the 387 remaining alleged infringements following this Court's ruling on summary

15   judgment. Dkt. No. 222. ***None*** of the matches identified through the Content ID discovery

16   process relate to the 387 remaining alleged infringements. In this Circuit, the mere fact that

17   Content ID finds videos that match a digital reference file does not in any way demonstrate that

18   YouTube has any "specific knowledge" of the remaining alleged infringements in this case.

19   *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1057 (9th Cir. 2017) ("Both actual

20   and red flag knowledge refer to knowledge of the specific infringement alleged.").

21

22

23

24

25

26   _____

     [2] In fact, the reference files Plaintiffs provided generated ***over 36,000*** matches. Out of these,

27   Plaintiffs identified ***only 87***—less than half a percent of the total—as alleged infringements.
     Though they never served a DMCA notice for those alleged infringements, they did try to add
     them via what they called a "Supplemental List of Infringements" on July 5, 2022, the last day of

28   discovery. That was a clear violation of the Court's Order requiring a final identification of
     alleged infringements by February 25, 2022.  *See* Dkt. No. 172-12; Dkt. No. 268 at 13 n.6.

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  April 27, 2023

KEKER, VAN NEST & PETERS LLP

By:   /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
             lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 6**

Defendants' motion, which seeks to exclude "evidence of Defendants' use of Content ID for discovery purposes" (Mot. 1) is premised on an unsupported assertion that Plaintiffs intend to violate the parties' Content ID License Agreement (the "Agreement") by offering the results of discovery-related Content ID searches as evidence of Defendants' actual knowledge of infringement.  But Plaintiffs have no such intention, and Defendants are wrong to suggest otherwise.  Defendants also ignore that by its terms the Agreement does not limit Plaintiffs' ability to use the Content ID searches at issue for purposes other than to show Defendants' actual knowledge of infringement.  At trial, Plaintiffs' use of the evidence at issue will be fully consistent with the restrictions, and the freedom, to which Defendants agreed.  Defendants' unfounded motion thus seeks no more than confirmation of contractual provisions that are undisputed.

## BACKGROUND

Content ID is a sophisticated digital fingerprinting tool developed by Defendants which automatically compares videos uploaded to YouTube against a defined set of copyrighted material. (Ex. 4—Transparency Report for H1 2021 at 3.)  The subset of YouTube users who are permitted to benefit from Content ID are alerted when a new video is posted to the platform that matches a reference file in the database of digital fingerprints.  (*Id.*)  The user can then decide if they want to (1) block the video; (2) monetize it by running ads against it; or (3) track it without blocking or monetizing it.  (*Id.*)  Defendants' own documents establish that Content ID catches approximately 1.5 billion instances (over 99%) of copyright violations annually.  (*Id.* at 4.)

Plaintiffs intend to establish at trial that given the capabilities of YouTube's Content ID tool, Defendants either know of, or are willfully blind to, rampant infringement on their platform, which supports a finding that (i) Defendants are liable for direct, contributory, and vicarious infringement, and (ii) they are ineligible for any DMCA safe harbor.  During discovery, the parties entered into a Content ID License Agreement to enable Plaintiffs to review the results of operating Content ID against reference files of their copyrighted works.  As part of that Agreement, the parties agreed that "neither Google's operation of the System at Plaintiffs' request nor the fact of

any Video Matches for the Works, shall be offered as evidence in the Litigation to show that Google in any way had actual knowledge of alleged infringement of any Work."  Agreement ¶ 6. The Agreement does not state, nor do Defendants contend, that Plaintiffs are prohibited from using the fact of any Video Matches for other evidentiary purposes.

## ARGUMENT

There is no dispute that introducing any Content ID search results generated in connection with discovery for the purpose of showing Defendants' actual knowledge of alleged infringements is barred by the parties' Agreement.  Defendants nonetheless claim that "Plaintiffs now intend to mischaracterize both the process and its output as evidence of Defendants' knowledge of infringement."  (Mot. 2 (citing [ECF 226 (Plaintiffs' Proffer) at 9 & 9 n.2]).)  But the only evidence they cite is one paragraph in Plaintiffs' Proffer from January 2023.  And nothing in the cited language says anything about Plaintiffs' intentions for trial.  Indeed, the language in the Proffer is clear that the Content ID search results from discovery are just an example of how YouTube's copyright enforcement technologies establish actual and red flag knowledge of infringements as a general matter—a fact that can be proven independent of the search results simply by showing how YouTube's Content ID, Content Match and other technologies work.  Defendants also wrongly cite a footnote in Plaintiffs' Proffer which actually proves the opposite of what Defendants claim: it is express that while the search results establish "Defendants' continued failure to act on red flag knowledge" as to infringements that were uploaded in December 2022, *Defendants are not pursuing in this action infringements based on these uploads*.

In short, despite Defendants' claims to the contrary, Plaintiffs have no intention of violating the terms of the Agreement and, as a practical matter, there is no relief for the Court to order here.  To the extent Plaintiffs use the results of the Content ID search results at trial, it will only be for uses permissible under the Agreement, such as to give the jury clear and particularized examples of how YouTube's systems identify matches with known infringing works that YouTube then hides from a broad category of rightsholders (like Plaintiffs).

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 6

Defendants also try to use their motion as an excuse to make a variety of arguments about the extent to which Content ID matters in this case, completely independent of the provisions of the Content ID License Agreement that is the ostensible reason for the filing.  These arguments, which are a transparent effort to taint the well, are both irrelevant and meritless.  First, Defendants claim "[u]ndisputed record evidence establishes that Content ID merely identifies **matches**, not **infringements**." (Mot. 2.)  That is wrong.  The record demonstrates that Content ID **does** identify infringements. (*See* Ex. 2—"Life of a YouTube Upload" at -783; Ex. 4—Transparency Report for H1 2021 at 12; Ex. 3—How Google Fights Piracy at 14, 23, 25.[1])  Regardless, to the extent Defendants hold a different view, the evidence is certainly not "[u]ndisputed."

Second, Defendants claim that the discovery-related search results "confirm that Content ID does not identify infringements" because AST alleged only a small proportion of the videos found as "matches" to be "infringing."[2]  But as Plaintiffs have explained previously [*see* ECF 203-1 ¶¶ 27–28], the fingerprinting process YouTube ran for AST appears to have been intentionally designed to produce large amounts of non-infringing matches because (i) Plaintiffs had no opportunity to identify and exclude portions of reference files that contain non-exclusively owned content from the matching process; and (ii) the search results included a substantial amount of de minimis matches.  Such rigged search results do not support Defendants' argument.

Third, Defendants claim: "**None** of the matches identified through the Content ID discovery process relate to the 387 remaining alleged infringements," and thus admitting those results would confuse the jury.  (Mot. 3.)  But 87 of the alleged infringements that remain at issue in this action appear in the Content ID search results generated during discovery.[3]  The argument thus fails.

---

[1]  Defendants disingenuously claim that Plaintiffs' expert "agrees that Content ID identifies matches, not infringements."  But his report expressly concludes: "Content ID is highly effective in finding copyright infringement on YouTube." (Ex. 1—Winograd Rpt. Section III, ¶¶ 22–45.)

[2]  Defendants miss the irony that they are using the Content ID search results to try to *disprove* actual knowledge, which is just as impermissible as Plaintiffs using the evidence to *prove* it.

[3]  An Excel file containing the data Defendants produced can be provided upon the Court's request.

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 6

1

2

3     Dated:  May 5, 2023

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,


/s/ Philip Korologos
Philip C. Korologos*
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

5

1

*Admitted pro hac vice*

2

*Attorneys for Plaintiffs*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
         lwhite@wsgr.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF GOOGLE AND/OR YOUTUBE'S FINANCIAL CONDITION AND POTENTIAL LIABILITIES**<br><br>Date:       May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:    Hon. James Donato |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Date Filed:  July 2, 2020<br><br>Trial Date:  June 12, 2023 |

MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF GOOGLE AND/OR YOUTUBE'S FINANCIAL
CONDITION AND POTENTIAL LIABILITIES
Case No. 3:20-cv-04423-JD

2134401                                                                                              Page 60

Defendants move to exclude evidence and argument about Defendants' financial condition and potential liabilities as irrelevant and prejudicial under Federal Rules of Evidence 402 and 403.

## I.   EVIDENCE OF DEFENDANTS' FINANCIAL CONDITION IS INADMISSIBLE.

It is the law of the Ninth Circuit "that the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to be awarded." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("agree[ing] with the overwhelming majority of courts which have examined this issue and which have disapproved of the use of a defendant's financial condition in determining compensatory damages"). As the Ninth Circuit explained, "the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result." *Id.*

The same rule governs copyright cases, including with regard to statutory damages and the defendant's supposed profits. *See, e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, No. 18-CV-03451-JST, 2021 WL 6014734, at *6 (N.D. Cal. Oct. 14, 2021). In *Atari*, for example, the plaintiff argued that the jury would need to "understand the size of [the defendant's] operations, and [its] financial condition, at a high level," in order to decide the amount of statutory damages. *Id.* But the plaintiff cited "no case admitting evidence of a defendant's total revenue – as opposed to its revenue on infringing products – or net worth for purposes of calculating statutory damages." *Id.* Accordingly, the court properly excluded financial-condition evidence as irrelevant. *Id.*[1]

Similarly, in *Unicolors, Inc. v. Urban Outfitters, Inc.*, No. CV 14-01029 SJO (VBKX), 2015 WL 12758841, at *7 (C.D. Cal. Feb. 23, 2015), the plaintiff argued that the defendants' financial condition was "relevant to the issue of willfulness because it shows Defendants'

---

[1] It does not change the relevance analysis that Plaintiffs' proffered damages expert, Hal Singer, has offered unfounded opinions regarding the total revenue that an abstract group of videos might theoretically generate.  His analysis is disconnected from the specific videos at issue in this case, ignores the requirement for proof that a specific infringement caused an alleged infringer to generate specified revenue, and is the subject of Defendants' pending *Daubert* motion. *See* ECF 261-1.

1
MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF GOOGLE AND/OR YOUTUBE'S FINANCIAL CONDITION AND POTENTIAL LIABILITIES
Case No. 3:20-cv-04423-JD

2134401                                                                                      Page 61

sophistication and is relevant to the issue of statutory damages because it shows expenses saved and profits reaped by the infringement." The court rejected those arguments: "The Court finds that any probative value of evidence of Defendants' financial condition is outweighed by its prejudicial effect pursuant to FRE 403. Accordingly, … [e]vidence concerning Defendants' financial condition may not be submitted at trial." *Id.* at *8.

The Court should rule the same here. Defendants' financial condition—including evidence of their overall revenues and any revenues not proximately caused by the alleged copyright claims—is irrelevant and prejudicial. It should be excluded under Rules 402 and 403 and the established law of this Circuit. *See Geddes*, 559 F.2d at 560; *Atari*, 2021 WL 6014734 at *6; *Unicolors*, 2015 WL 12758841 at *8.

Similarly, any evidence and argument relating to Google's corporate acquisitions, including YouTube, is irrelevant and prejudicial for the same reason. *See Geddes*, 559 F.2d at 560; *Atari*, 2021 WL 6014734 at *6; *Unicolors*, 2015 WL 12758841 at *8. For example, Plaintiffs may seek to introduce evidence about Google's acquisition of YouTube as a measure of YouTube's value or net worth, but YouTube's "net worth … is not relevant." *Atari*, 2021 WL 6014734 at *6. Similarly, Plaintiffs may seek to introduce evidence of other acquisitions to establish Google's wealth. But evidence of Google's wealth, net worth, or revenues is also irrelevant, prejudicial, and inadmissible. *See Geddes*, 559 F.2d at 560; *Atari*, 2021 WL 6014734 at *6; *Unicolors*, 2015 WL 12758841 at *8.

In conferring on this motion, Plaintiffs' counsel suggested that they are attacking the business model of YouTube and Google and that acquisitions are part of the story. The suggestion that Google's 2006 acquisition of YouTube somehow bears on the claims brought by three individual plaintiffs in a 2023 trial is perplexing. Introducing such evidence would inject a "foreign, diverting, and distracting issue which may effectuate a prejudicial result." *Geddes*, 559 F.2d at 560.

## II.  EVIDENCE ABOUT POTENTIAL LIABILITIES AND OTHER LAWSUITS IS INADMISSIBLE.

The Court should similarly exclude evidence and argument about potential liabilities,

1   including other lawsuits, legal proceedings, or government investigations involving Google or

2   YouTube. As recognized in *Atari*, the relevance of such evidence "is minor at best," and is

3   outweighed by the "significant danger of undue prejudice…. Accordingly, the evidence is

4   properly excluded under Federal Rule of Evidence 403." 2021 WL 6014734 at *3. The court in

5   *Unicolors* held the same: "evidence concerning other lawsuits involving Defendants is prejudicial

6   and would cause delay and waste time pursuant to FRE 403." 2015 WL 12758841 at *8.

7   Likewise, the court in *Fahmy v. Jay Z*, No. 2:07-CV-05715-CAS (PJWX), 2015 WL 5680299

8   (C.D. Cal. Sept. 24, 2015), held that such evidence carries a "substantial risk of prejudicing the

9   jury. As defendants argue, this evidence may 'paint the defendants as serial infringers' and

10  'impugn their character.' And, evidence of these prior allegations will result in mini-trials

11  regarding these alleged instances of unrelated copyright infringement. This will unduly delay

12  these proceedings and may confuse the jury." *Id.* at *15 (citation omitted). The same is true here.

13      In sum, for the reasons explained above, the Court should exclude evidence and argument

14  about Defendants' financial condition and potential liabilities, including: (a) Defendants' net

15  worth, overall revenues and any revenues not proximately caused by the alleged copyright claims;

16  (b) Google's acquisitions of other companies, including YouTube; and (c) other legal

17  proceedings, lawsuits, and any government investigation involving Google or YouTube.

18

19                                                  Respectfully submitted,

20  Dated:  April 27, 2023                          KEKER, VAN NEST & PETERS LLP

21

22                                          By:    /s/ *Robert A. Van Nest*
                                                   ROBERT A. VAN NEST
23                                                 DAN JACKSON
                                                   JULIA L. ALLEN
24                                                 TRAVIS SILVA
                                                   ANNA PORTO
25                                                 LUKE APFELD
                                                   AMOS J. B. ESPELAND
26

27

28

3

MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF GOOGLE AND/OR YOUTUBE'S FINANCIAL
CONDITION AND POTENTIAL LIABILITIES
Case No. 3:20-cv-04423-JD                                                    Page 63

2134401

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
            lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

MOTION IN LIMINE NO. 7 TO EXCLUDE EVIDENCE OF GOOGLE AND/OR YOUTUBE'S FINANCIAL
CONDITION AND POTENTIAL LIABILITIES
Case No. 3:20-cv-04423-JD

2134401

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 7**

Plaintiffs respectfully request that the Court deny Defendants' motion to exclude evidence and argument about Defendants' financial condition and potential liabilities.  This evidence is indisputably relevant, and Defendants' conclusory claims of prejudice fail.

**ARGUMENT**

**I.   Evidence of Defendants' financial condition is admissible.**

Defendants' attempt to hide evidence of Google's and YouTube's financial condition from the jury rests on the proposition that "'that the financial standing of the defendant is inadmissible as evidence in determining the *amount of compensatory damages* to be awarded.'" (Mot. 1) (citation omitted) (emphasis added).  But separate from any compensatory damages claims, this evidence is relevant to the jury's consideration of statutory damages and Plaintiffs' theory of disgorgement.

*First*, in considering statutory damages, the jury will have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.  The jury is guided by what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." *Dream Games of Arizona v. PC Onsite*, 561 F.3d 983, 992 (9th Cir. 2009) (cleaned up).  Importantly, the law is clear that statutory damages "serve both compensatory *and* punitive purposes." *Los Angeles News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 996 (9th Cir. 1998) (emphasis added).  Thus, upon a liability verdict, the jury will be required to consider whether statutory damages "advance the interests of punishment and deterrence." *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 504, (2008).  The financial means of the defendant bear directly on these issues as courts, including those in the Ninth Circuit, recognize.  *See  Stevens v. Aeonian Press*, 2002 WL 31387224, at *3 (S.D.N.Y. Oct. 23, 2002) (finding that the "substantial assets" of defendant in copyright action are relevant in determining appropriate amount of statutory damages "that will serve to deter future infringing conduct"); *Poparic v. Minka's Grill*, 2009 WL 10671025, at *9 (C.D. Cal. June 25, 2009) (finding lesser award of statutory damages would have "adequate

deterrent effect" considering lack of financial resources).[1]  Indeed, Google is one of the biggest

of the companies in the world.  In determining "what is just" here, a jury is entitled to understand

this fact in determining whether a statutory damages award would be just a wrist slap, or a

meaningful deterrent.  *See Lee v. Edwards*, 101 F.3d 805, 813 (2d Cir. 1996) ("We recognize that

one purpose of punitive damages is deterrence, and that deterrence is directly related to what

people can afford to pay.").

Second, Defendants' financial condition includes evidence of advertising revenue that is

properly part of Plaintiffs' disgorgement case.  Plaintiffs' expert calculated the profits reaped by

Defendants attributable to infringing content, taking into account "indirect network effects",

including the "advertisements that YouTube served on Infringing Content" as well as

"advertisements that YouTube served on non-infringing content that YouTube would not have

obtained but-for the presence of Infringing Content."  [Ex. 2—Singer Rpt. ¶ 68.]  Because

infringement is rampant on YouTube, the latter category includes a significant portion of

YouTube's revenues. There is no basis to hide this information from the jury.[2]

Finally, Defendants' revenues go to motive.  Alphabet Inc., the ultimate parent of both

Google and YouTube, generated nearly 29 billion dollars in revenue from YouTube ads in 2021.

(*See* Ex. 3—Alphabet Inc. 2021 10-K at 33.)  Increased advertising revenue is a result of

increased view time.  (*See* Ex. 1—Wu Dep. at 79:1–81:6.)  Defendants have a clear motive to

increase watch time and ad revenue, and thereby profits, by doing the bare minimum to address

infringements that only impact small rights holders, like Plaintiffs.  The jury should not be

denied this motive context.

---

[1]   Defendants rely on only three sentences of analysis in *Atari Interactive, Inc. v. Redbubble, Inc.,* 2021 WL 6014734, at *6 (N.D. Cal. Oct. 14, 2021), where the court excluded evidence of defendant's financial condition because plaintiff, unlike here, failed to cite any law that the substantial assets of defendant was relevant to a calculation of statutory damages.

[2]   Defendants have already moved the court to exclude Dr. Singer's testimony.  [ECF 262.] This motion is an improper second bite at the apple, contrary to Paragraph 6 of the Court's Standing Order for Civil Jury Trials.

1

**II.  Evidence of Defendants' potential liabilities are admissible.**

2

Plaintiffs also seek to exclude *all* evidence of Defendants' potential liabilities, "including

3

other lawsuits, legal proceedings, or government investigations involving Google or YouTube."

4

(Mot. 3.)  There is no basis for such a sweeping order.  Some litigation, like the *Viacom v.*

5

*YouTube* case, which Defendants have touted as important, is directly relevant to understanding

6

Defendants' current two-tiered system of copyright "enforcement" and how, faced with

7

infringement claims by significant rightsholders with the power to hold Defendants to account,

8

YouTube capitulated to powerful industry players and offered them Content ID while depriving

9

smaller rights holders like Plaintiffs the appropriate abilities to police copyright infringement.

10

More broadly, copyright lawsuits targeting Defendants' conduct in similar circumstances

11

are at least potentially relevant to the deterrence issues raised by Plaintiffs' claims for statutory

12

damages and injunctive relief.  The Court will be capable of weighing the admissibility of any

13

such evidence of legal proceedings (or investigation) on a case-by-case basis when and if the

14

issue arises at trial.  *See Jackson v. Fed. Express,* 2011 WL 13268074, at *2 (C.D. Cal. June 13,

15

2011) ("Generally speaking, evidence of other lawsuits against a defendant is admissible where

16

relevant and offered for a proper purpose under Rule 404(b)."); *Scott v. Palmer*, 2015 WL

17

13323123, at *2 (E.D. Cal. Sept. 30, 2015) (declining  "to issue an order broadly precluding"

18

evidence of other lawsuits where such evidence may be admissible "including for impeachment

19

or to demonstrate 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

20

mistake, or lack of accident'" (quoting Fed. R. Evid. 404(b)(2)).).  The authority cited by

21

Defendants does not suggest otherwise.  *See Atari*, 2021 WL 6014734, at *3 (excluding evidence

22

of foreign litigation applying Australian law and other hearsay evidence).

23

### CONCLUSION

24

For the foregoing reasons, the Court should deny Defendants' Motion in Limine No. 2 to

25

Exclude Evidence of Google and/or YouTube's Financial Condition and Potential Liabilities.

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 5, 2023

/s/ Philip Korologos
Philip C. Korologos*
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

4

Case No. 3:20-cv-04423-JD

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 7

*Admitted *pro hac vice*
*Attorneys for Plaintiffs*

KEKER VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
           mrees@wsgr.com
           lwhite@wsgr.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**MOTION TO LIMINE NO. 8 TO PRECLUDE RELITIGATION OF ISSUES IN THE COURT'S SUMMARY JUDGMENT ORDER**<br><br>Date:        May 25, 2023<br>Time:       1:30 p.m.<br>Dept.:      Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato<br><br>Date Filed:  July 2, 2020<br><br>Trial Date:  June 12, 2023 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | |

MOTION TO LIMINE NO. 1 TO PRECLUDE RELITIGATION OF ISSUES IN THE COURT'S SUMMARY JUDGMENT ORDER
Case No. 3:20-cv-04423-JD

2134587                                                                                                          Page 70

In its summary judgment order (ECF No. 222, hereinafter "Order the Court invested significant time resolving certain aspects of YouTube's license defenses to Plaintiff Maria Schneider's claims.  Schneider's pre-trial disclosures suggest that she will seek to relitigate issues that the Court resolved on summary judgment.  Schneider intends to call her former lawyer, Andrew Sanders, to testify about contract negotiations.  But, on summary judgment, the Court construed the key provision in that contract in YouTube's favor, holding in the process that it would not be appropriate to consider parol evidence to construe the contract. Schneider should not now be allowed to introduce parol evidence through her attorney or otherwise relitigate summary judgment.  Additionally, Ms. Schneider, who tactically declined to "challenge" a key element of YouTube's license at summary judgment, now suggests that she will testify about a contract assignment that underpins the defenses.  But Ms. Schneider testified in her deposition that she had no personal knowledge about that issue, and so should be precluded from testifying on it now, pursuant to FRCP 36(c).

## 1.    BACKGROUND

Several agreements underlie this license defense.[1]  First, Ms. Schneider has an agreement (referred to in the Order as the "AA") with ArtistShare Music Publishing ("AMP").  AMP serves as Schneider's management company.  Order at 5.  As the Order notes, "Schneider appointed ArtistShare Music Publishing (AMP), her management company, as the 'sole and exclusive Administrator' of her musical compositions via a Music Publishing Administration Agreement (AA). *Id.* (citing  Dkt. No. 164-7 § 6). "The AA gave AMP the 'exclusive right to administer the Compositions' and 'to execute in [Schneider's] name any licenses and agreements affecting the Compositions.'" *Id.*  AMP's signatory to the AA is Dan Coleman. ECF No. 164-7 at 7.

---

[1] YouTube has a separate license defense based on Schneider's agreeing to YouTube's Terms of Service.  That defense is not implicated here.

Second, AMP appointed Modern Works Music Publishing ("MWP" or "Modern") to serve as its agent and Schneider's under the AA.  The same Dan Coleman who signed the AA is the Co-Founder and President of MWP, and MWP owns 50% of AMP.  YouTube's summary judgment motion is supported by Dan Coleman's declaration, which contains undisputed evidence about MWP's appointment. ECF No. 164-6 at 2.

Finally, MWP signed a Publishing Licensing Agreement ("PLA") with YouTube.  The PLA contains a broad license granting YouTube certain rights (among others) to store, reformat, stream, reproduce, distribute, and prepare derivative works of works that MWP controls.  Order at 5-6.  This chain of agreements is the basis for a license defense to Schneider's claims, with the Court identifying "whether MWP controlled Schneider's works-in-suit and licensed them to YouTube via the PLA" as "a disputed question of fact to be resolved at trial."  *Id.* at 7.

2.    **ARGUMENT**

Sanders' testimony should be excluded.  At summary judgment, Schneider put at issue the interpretation of Section 7 of the AA.  It regards MWP's authorization to license to YouTube where Schneider claimed not to have granted her consent.  The Court resolved the question in YouTube's favor.  Noting that this is a "question of law for the Court to decide," Order at 8, the Court held that Schneider's consent was not a condition on MWP's authorization but rather a covenant made to Schneider, *id.* at 10.  As a result, Schneider's claimed lack of consent did not invalidate MWP's license grant to YouTube.  The Court held that "Section 7 is clear and unambiguous on its face. There is no room for massaging the plain text with extra-contractual evidence."  *Id.* at 13.

Nevertheless, Schneider has said she intends to call Andrew Sanders, a lawyer who negotiated the AA on Schneider's behalf.  Nothing in the record suggests that Sanders knows about the subsequent contractual arrangements at issue, *i.e.*, the AMP-MWP assignment or MWP's license to YouTube. The only testimony he could offer relates to the AA, but Schneider

2

1  has not challenged any terms of that agreement other than Section 7 and the Court already

2  construed that provision. *Id.* Furthermore, Sanders' testimony presents a quintessential "sword

3  and shield" problem[2] regarding privilege claims because Schneider refused to produce

4  communications with Sanders about the AA on privilege grounds. In short, Sanders has nothing

5  relevant to say to the jury and his testimony should be excluded under Rules 401 and 403.

7          <u>Schneider's testimony about the assignment should be excluded.</u>  The record contains Dan

8  Coleman's unchallenged testimony that "[i]n accordance with §14A of the [AA], AMP assigned

9  all its duties under the [AA] to Modern.  Modern acts as the worldwide subpublisher for AMP,

10 and Schneider has never objected to Modern as subpublisher." ECF 164-6 at 2.  As the Order

11 notes, Schneider did not "challenge the" AMP-MWP "assignment as improper under section

12 14(A) of the AA."  Order at 5 n.3.  Nor did Schneider challenge the assignment as postdating

13 MWP's execution of the PLA.  *Id.*  Despite the Court's notation of those undisputed facts in the

14 Order, Schneider now appears set to mount a new challenge to the AMP-MWP assignment.  To

15 the extent Schneider intends to offer testimony on this subject, it should be excluded.  She

16 admitted in her deposition that she has no personal knowledge of the assignment.[3]  She should not

17 be permitted to come to Court now and testify to the contrary.  *See* FRCP 37(c).

19          The Court exclude Sanders from testifying about contract interpretation issues that are for

20 the Court's resolution (FRE 401 and 403) and, further, preclude Schneider from offering

21 testimony about the AMP-MWP assignment (FRCP 37(c)).

---

[2] *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield.").

[3] *See* Decl. of Travis Silva in Supp. of Defs.' Mot. in Limine, Ex. 8A (Schneider Dep.) at 126:10-14 ("Q. And Modern Works is an affiliate of Artist Share Music Publishing. Is that right? A. They have an agreement. I don't -- yeah, however you define that.").

1

2                                                          Respectfully submitted,

3

4   Dated:  April 27, 2023                                 KEKER, VAN NEST & PETERS LLP

5

6                                          By:    /s/ Robert A. Van Nest

7                                                 ROBERT A. VAN NEST
                                                  DAN JACKSON
                                                  JULIA L. ALLEN
8                                                 TRAVIS SILVA
                                                  ANNA PORTO
9                                                 LUKE APFELD
                                                  AMOS J. B. ESPELAND
10

11                                                DAVID H. KRAMER
                                                  MAURA L. REES
12                                                LAUREN GALLO WHITE
                                                  WILSON SONSINI GOODRICH &
13                                                ROSATI
                                                  Professional Corporation
14                                                650 Page Mill Road
                                                  Palo Alto, CA 94304-1050
15                                                Telephone: (650) 493-9300
                                                  Email: dkramer@wsgr.com
16                                                        mrees@wsgr.com
                                                         lwhite@wsgr.com
17

18                                                Attorneys for Defendants and
                                                  Counterclaimants
19                                                YOUTUBE, LLC and GOOGLE LLC

20

21

22

23

24

25

26

27

28

1

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 8**

2

In October 2020, Plaintiffs disclosed Andrew Sanders as a person with knowledge of the

3

"licensing rights for Schneider's works" in their initial disclosures. (Ex. 1—Plaintiffs' Rule

4

26(a)(1) Initial Disclosures at 3.)  This disclosure was timely under Rule 26 and directly responsive

5

to Defendant's affirmative license defense that they have asserted since their first Answer.  Despite

6

this disclosure and the long-running pursuit of a license defense, Defendants never deposed or

7

sought discovery from Mr. Sanders.  Only after Plaintiffs identified Mr. Sanders as a trial witness

8

did Defendants realize their mistake.

9

Now, in a belated effort to excuse their oversight, Defendants seek to exclude

10

Mr. Sanders's testimony.  Defendants cite no rule or caselaw supporting that exclusion and

11

misstate the Court's own order denying Defendants' summary judgment motion.  Because that

12

order explicitly identifies factual disputes that would justify having the testimony of both Mr.

13

Sanders and Ms. Schneider on issues related to the purported license, the Court should deny

14

Defendants' motion.

15

**BACKGROUND**

16

After Plaintiffs provided their initial disclosures in October 2020, Defendants deposed and

17

subpoenaed several persons identified by Ms. Schneider, including her contractors Marie LeClaire,

18

Zachary Bornheimer, and Ryan Truesdell, as well as ArtistShare.  Despite these efforts, Defendants

19

never deposed nor subpoenaed Andrew Sanders, the attorney Ms. Schneider regularly used to

20

negotiate her licensing agreements, including her ArtistShare publishing administration agreement

21

("AA").  Presumably, Defendants hoped that they could win summary judgment without Mr.

22

Sanders's testimony or any evidence retained by him.  Their tactic failed when the Court denied

23

Defendants' motion for summary judgment at the close of discovery.

24

Reading Defendants' motion, one would be forgiven for thinking that YouTube

25

demonstrated as a matter of law and undisputed fact that it has a license to Ms. Schneider's works.

26

But as this Court succinctly held, "It has not." [ECF 222 (Summary Judgment Order) at 6.]  In its

27

summary judgment order, the Court identified numerous disputed facts.  First, the Court said that

28

it remained an open question whether "Schneider granted any control or ownership rights to MWP." [*Id.*]  Second, the Court explained that "whether MWP controlled Schneider's works-in-suit and licensed them to YouTube via the PLA is a disputed question of fact to be resolved at trial."  [*Id.* at 7.]  And finally, the Court determined that whether Ms. Schneider ratified any unauthorized license by her subsequent acts was in dispute because Ms. Schneider said "she was not aware" of any license and "never approved licensing her works to YouTube."  [*Id.*]

The only fixed determination made by the Court in the summary judgment order was its construction of one section of the AA.  The Court explained that as a matter of law that section was a covenant and not a condition.  The Court notably made no other determinations about the meaning of this administration agreement.  It also reserved judgment on the requirements under § 14(A) of the AA to legally assign its rights and duties to MWP.  [*See* ECF 222 at 5 n.3.]

## ARGUMENT

### I.    Mr. Sanders can testify about Ms. Schneider's relationship with ArtistShare.

Defendants have cited no law that supports their motion to preclude Mr. Sanders from testifying about Ms. Schneider's copyright licenses.  Instead, their entire argument relies on this Court's construction of § 7 of the Schneider/ArtistShare agreement.  But Mr. Sanders's knowledge of relevant facts is not so limited.  *See* Fed. R. Evid. 602 & 701 (allowing witness testimony based on personal knowledge and opinion).

As Ms. Schneider's attorney, Mr. Sanders has personal knowledge about Ms. Schneider's relationship with ArtistShare.  At trial, he may testify about whether he facilitated the transfer of any ownership or control of the works in suit from Ms. Schneider to MWP.  He may also testify about whether he had knowledge of any assignment between ArtistShare and MWP and whether any purported assignment followed the requirements of § 14(A) of the Schneider/ArtistShare agreement.  He may also testify about whether he has personal knowledge of Ms. Schneider transferring control over the works in suit to MWP.  And finally, he may testify about whether he had knowledge of Ms. Schneider ratifying any unauthorized licenses.

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 8

YouTube's only remaining argument is that Mr. Sanders's testimony may open the door on privilege, but they cite no case excluding evidence on this ground.  Instead, the normal remedy to the sword-and-shield problem is waiver of privilege—not exclusion of evidence.  *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162–63 (9th Cir. 1992).  But any waiver determination is premature at this stage, particularly where Defendants have not substantiated their assertion.

**II.      Ms. Schneider can testify about lack of knowledge of the ArtistShare assignment.**

Defendants also cite no rule or caselaw supporting their novel argument that Ms. Schneider cannot testify about her lack of knowledge of ArtistShare's assignment of its agreement with her to MWP.  As the Court noted at summary judgment, Ms. Schneider "was never told about the assignment," and "the only evidence of the assignment . . . is the declaration of Dan Coleman." Indeed, Coleman's declaration alone failed to establish that ArtistShare granted a license to MWP. At trial, Defendants will have the opportunity to develop additional facts that they could not establish at summary judgment about this purported assignment.  Plaintiffs should similarly have the opportunity to rebut these facts and establish that no assignment occurred, including through Ms. Schneider's testimony about what she knew or did not know about the purported assignment.

To support their new motion, Defendants again twist the Court's order to suggest that Plaintiffs cannot challenge any assignment to MWP because they did not explicitly cite the assignment provision of the AA.  The Court's passing footnote that Ms. Schneider's opposition brief did not "challenge the assignment as improper under section 14(A)" at summary judgment does not preclude her from challenging the assignment at trial.  [ECF 222 at 5 n.3.]  That is not how waiver works. *Long v. Howard Univ.*, 550 F.3d 21, 24 (D.C. Cir. 2008) ("no requirement that a party assert [argument] in opposition to a summary-judgment motion in order to assert it at trial"); *Hockerson-Halberstadt, Inc. v. Costco Wholesale Corp.*, 2005 WL 8172688, at *1 (W.D. Wash. Nov. 29, 2005) ("did not waive . . . arguments by choosing not to present them in opposition to summary judgment").  Plaintiffs defeated summary judgment by arguing that MWP was not her agent, and they should have the opportunity to further develop this argument at trial.

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 5, 2023

/s/ Philip Korologos
Philip C. Korologos*
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844

4                      Case No. 3:20-cv-04423-JD

OPPOSITION TO DEFENDANTS' MOTION IN LIMINE NO. 8

Facsimile: (314) 241-3525

*Admitted *pro hac vice*
*Attorneys for Plaintiffs*