# EXHIBIT 1

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
MAURA L. REES, SBN 191698
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
        mrees@wsgr.com
        lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Case No. 3:20-cv-04423-JD<br><br>**DECLARATION OF TRAVIS SILVA IN SUPPORT OF DEFENDANTS' AND COUNTERCLAIMANTS' MOTIONS IN LIMINE**<br><br>Date:      May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato<br><br>Date Filed: July 2, 2020<br><br>Trial Date: June 12, 2023 |

I, Travis Silva, declare and say that:

1.      I am an attorney licensed to practice law in the State of California. I am a partner with the law firm of Keker, Van Nest & Peters LLP, and am counsel for Defendants and Counterclaimants YouTube, LLC and Google LLC in the above-captioned action. I have personal knowledge of the facts set forth herein, and if called upon as a witness thereto, could do so competently under oath.

2.      Attached as **Exhibit 1A** is a true and correct copy of Plaintiffs' Rule 26(a)(1) Initial Disclosures dated October 22, 2020.

3.      Attached as **Exhibit 1B** is a true and correct copy of Plaintiff AST Publishing LTD's Rule 26(a)(1) Initial Disclosures dated December 22, 2021.

4.      Attached as **Exhibit 1C** is a true and correct copy of Plaintiff Uniglobe Entertainment LLC's Rule 26(a)(1) Initial Disclosures dated December 22, 2021.

5.      Attached as **Exhibit 1D** is a true and correct copy of Maria Schneider's Objections and Responses to Defendant YouTube, LLC and Google LLC's Fifth Set of Interrogatories to Plaintiff Maria Schneider (Nos. 12-20) dated May 31, 2022.

6.      Attached as **Exhibit 1E** is a true and correct copy of Plaintiff Uniglobe Entertainment LLC's Objections and Responses to Defendant YouTube, LLC and Google LLC's Second Set of Interrogatories to Plaintiff Uniglobe Entertainment, LLC (Nos. 13-21) dated May 31, 2022.

7.      Attached as **Exhibit 1F** is a true and correct copy of Plaintiff AST Publishing LTD's Objections and Responses to Defendant YouTube, LLC and Google LLC's Second Set of Interrogatories to Plaintiff AST Publishing LTD (Nos. 13-21) dated May 31, 2022.

8.      Attached as **Exhibit 1G** is a true and correct copy of an email correspondence from Carol O'Keefe to Julia Allen, Robert Van Nest, et al. re Schneider v. YouTube: follow up, dated April 25, 2023.

9.      Attached as **Exhibit 1H** is a true and correct copy of an excerpt from the deposition transcript of Hal Singer dated January 13, 2023.

10.     Attached as **Exhibit 2A** is a true and correct copy of an excerpt from the deposition transcript of Maria Schneider dated June 14, 2022.

11.     Attached as **Exhibit 2B** is a true and correct copy of deposition Exhibit 38 from the deposition of Maria Schneider dated June 14, 2022.

12.     Attached as **Exhibit 2C** is a true and correct copy of deposition Exhibit 3 from the deposition of Maria Schneider dated June 14, 2022.

13.     Attached as **Exhibit 2D** is a true and correct copy of a document produced in this action and bearing Bates number SCHNEIDER_0000030419.

14.     Attached as **Exhibit 3A** is a true and correct copy of a Content ID License Agreement between Maria Schneider, Uniglobe Entertainment, LLC, AST Publishing Ltd. and Google LLC.

15.     Attached as **Exhibit 3B** is a true and correct copy of an excerpt from the deposition of Namrata Singh Gujral Cooper dated June 30, 2022.

16.     Attached as **Exhibit 4A** is a true and correct copy of Plaintiff AST Publishing LTD's Responses and Objections to YouTube and Google's First Set of Document Request, dated December 27, 2021

17.     Attached as **Exhibit 4B** is a true and correct copy of the License Agreement No. 205-VREM-16, and bates labelled AST_0000000021 -25, translated from Russian into English

18.     Attached as **Exhibit 4C** is a true and correct copy of the Additional Agreement to Amendment Agreement No. 2 dated April 25, 2014 to License Agreement No. 2M-13 dated January 1, 2013, and bates labelled AST_0000035017, translated from Russian to English.

19.     Attached as **Exhibit 4D** is a true and correct copy of the Supplementary Agreement to License Contracts No. 12-VREM–14 dated 02/13/2014, No. 84/09 T dated 10/01/2012, No. 85/09 T dated 09/01/2012, No. 86/09 T dated 10/01/2012, No. 16-VREM–14 dated 02/14/2014, No. 28-AVA-13 dated 05/15/2013, No. 166/10/T dated 10/19/2010, No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated 05/25/2016, and bates labelled AST_0000000018, translated from Russian to English.

20.     Attached as **Exhibit 4E** is a true and correct copy of the Supplementary Agreement to License Contract No. 205-VREM-16 dated 05/25/2016, dated May 27, 2021, and bates labelled AST_0000000026, translated from Russian to English.

21.     Attached as **Exhibit 4F** is a true and correct copy of the Agreement to License Contracts: No. 166/10/T dated 10/19/20120, No. 86/09/T dated 10/01/2012, No. 12-VREM-14 dated 02/13/2014, No. 16-VREM-14 dated 02/14/2014, No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated 05/25/2016, No. 182-VR-18 dated 03/24/201[cut off text], No. 183-VR-18 dated 03/24/2018, No. 150-VR-P-20 dated 03/04/2020, No. 15[1]-VR-P-20 dated 03/05/2020, No. 84/09/T dated 09/01/2012, No. 28-AVA-13 dated 05/15/2013, dated Mary 1, 2021, and bates labelled AST_0000000020, translated from Russian to English.

22.     Attached as **Exhibit 4G** is a true and correct copy of the Supplementary Agreement to License Contracts No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated 05/25/2016, dated August 21, 2020, and bates labelled AST_0000000019, translated from Russian to English.

23.     Attached as **Exhibit 4H** is a true and correct copy of the Addendum No. 1 to Agreement No. 181/17-F dated September 18, 2017, and bates labelled AST_0000000061-62, translated from Russian to English.

24.     Attached as **Exhibit 4I** is a true and correct copy of the Appendix No. 14 dated October 31, 2018 to Agreement No. 175/17-F dated August 10, 2017, and bates labelled AST_0000000142--143, translated from Russian to English.

25.     Attached as **Exhibit 4J** is a true and correct copy of the Appendix No. 54 dated November 15, 2019 to Agreement No. 221/18-F dated April 23, 2018 between AST Publishing Limited Liability Company and Direct of Audiobook Department, dated November 15, 2019, and bates labelled AST_0000000139-141, translated from Russian to English.

26.     Attached as **Exhibit 4K** is a true and correct copy of the Addendum No. 1 to Agreement No. 410/19 dated October 15, 2019, and bates labelled AST_0000000137-138, translated from Russian to English.

2134650

27.     Attached as **Exhibit 4L** is a true and correct copy of the Appendix No. 18 dated February 1, 2017 to the contract No. 111/16-F of May 4, 2016, and bates labelled AST_0000000047-49, translated from Russian to English

28.     Attached as **Exhibit 4M** is a true and correct copy of an email regarding AristoBook & LitRes, sent November 20, 2019, and bates labelled AST_0000044483-44485, translated from Russian to English.

29.     Attached as **Exhibit 4N** is a true and correct copy of an email regarding eBook Applications LLC Content Volume 7, sent November 6, 2019, and bates labelled AST_0000049541-49550, translated from Russian to English.

30.     Attached as **Exhibit 4O** is a true and correct copy of an email regarding Copyright Infringement, sent March 21, 2022, and bates labelled AZAPI_0000004025-4026, translated from Russian to English.

31.     Attached as **Exhibit 4P** is a true and correct copy of an email regarding YouTube video blocking claim, sent September 9, 2015, and bates labelled AZAPI_0000007470-7471, translated from Russian to English.

32.     Attached as **Exhibit 4Q** is a true and correct copy of a letter from Paul Harold to Randall Ewing, dated June 8, 2022.

33.     Attached as **Exhibit 4R** is a true and correct copy of a letter from Andrew Kramer to Randall Ewing, dated August 23, 2022.

34.     Attached as **Exhibit 4S** is a true and correct copy of a letter from Randall Ewing to Paul Harold, dated June 15, 2022.

35.     Attached as **Exhibit 4T** is a true and correct copy of a letter from Randall Ewing to Andrew Kramer, dated September 30, 2022.

36.     Attached as **Exhibit 4U** is a true and correct copy of Association of Copyright Holders, Licensors, and Licensees for the Protection of Copyrights on the Internet ("Azapi")'s Responses and Objections to YouTube and Google's Non-Party Document Subpoena, dated May 31, 2022.

37.     Attached as **Exhibit 5A** is a true and correct copy of Plaintiff Maria Schneider's First Amended Responses and Objections to Defendants' First and Second Set of Interrogatories, dated March 8, 2021.

38.     Attached as **Exhibit 5B** is a true and correct copy of an excerpt from the deposition transcript of Paul Jessop dated September 28, 2022.

39.     Attached as **Exhibit 6A** is a true and correct copy of the Content ID License Agreement between Maria Schneider, Uniglobe Entertainment, LLC, AST Publishing Ltd. and Google LLC.

40.     Attached as **Exhibit 6B** is a true and correct copy of an excerpt from the deposition of Joseph Winograd dated September 29, 2022.

41.     Attached as **Exhibit 6C** is a true and correct copy of an excerpt from the deposition of Maxim Ryabyko dated August 19, 2022.

42.     Attached as **Exhibit 8A** is a true and correct copy of an excerpt from the deposition of Maria Schneider dated June 14, 2022.


I declare under penalty of perjury that the foregoing is true and correct under the laws of the state of California. Executed on April 27, 2023 at San Francisco, California.


By:    */s/ Travis Silva*
       TRAVIS SILVA

SILVA DECLARATION IN SUPPORT OF MOTIONS IN LIMINE
Case No. 3:20-cv-04423-JD

2134650

# Exhibit 1A

George A. Zelcs *(pro hac vice)*
 gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
 rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
 rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
 stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
 sberezney@koreintillery.com
Carol O'Keefe *(pro hac vice)*
 cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
 jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
 pkorologos@bsfllp.com
Joanna Wright
 jwright@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Maria Schneider and
Pirate Monitor, LT*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated;

Plaintiffs,

vs.

YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.;

Defendants.

CASE NO.  5:20-cv-4423

**PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES**

Pursuant to Fed. R. Civ. P. 26(a)(1), Plaintiffs Maria Schneider and Pirate Monitor LTD ("Named Plaintiffs," and together with the Class, "Plaintiffs") make the following initial disclosures to Defendants YouTube, LLC, Google LLC, and Alphabet Inc. (collectively "Defendants") based on currently available information. Plaintiffs reserve the right to modify, amend, and supplement these initial disclosures based on further investigation and on information learned in discovery. By making these disclosures, Plaintiffs do not intend to waive any objections or privileges available to them.

1

1. **Persons likely to have discoverable information that Plaintiffs may use to support its claims and defenses.**

   A. **Named Plaintiffs and Persons Associated with Named Plaintiffs**

      a. Maria Schneider

         i. Maria Schneider should be contacted solely through her undersigned counsel.

         ii. Subjects of discoverable information: takedown notices submitted to YouTube by her or on her behalf; licensing terms and relationships associated with her copyrighted works; registration of her copyrighted works; damages suffered as a result of infringement of her copyrights; and communications with YouTube.

      b. Pirate Monitor LTD

         i. Pirate Monitor should be contacted solely through Pirate Monitor's undersigned counsel.

         ii. Subjects of discoverable information: takedown notices submitted to YouTube by or on behalf of Pirate Monitor; Pirate Monitor's relationships and licensing terms for copyrights managed by Pirate Monitor and infringed on YouTube; registration of copyrighted works licensed to Pirate Monitor; damages suffered as a result of the infringement of copyrights licensed to Pirate Monitor; and communications with YouTube.

      c. Gabor Csupo

         i. Gabor Csupo should be contacted solely through Pirate Monitor's undersigned counsel.

         ii. Subjects of discoverable information: takedown notices submitted to YouTube on behalf of Pirate Monitor; Pirate Monitor's relationships and

2

licensing terms for copyrights managed by Pirate Monitor and infringed on YouTube; registration of copyrighted works licensed to Pirate Monitor; damages suffered as a result of the infringement of copyrights licensed to Pirate Monitor; and communications with YouTube.

d. Zachary Bornheimer

  i. Zachary Bornheimer should be contacted solely through Schneider's undersigned counsel.

  ii. Subject of discoverable information: takedown notices submitted to YouTube on behalf of Schneider.

e. Marie Le Claire

  i. Marie Le Claire should be contacted solely through Schneider's undersigned counsel.

  ii. Subject of discoverable information: takedown notices submitted to YouTube on behalf of Schneider; and communications with YouTube.

f. Brian Camelio

  i. Brian Camelio should be contacted solely through Schneider's undersigned counsel.

  ii. Subject of discoverable information: Licensing rights for Schneider's copyrighted works.

g. Andrew Sanders:

  i. Email address: andrew@sandersnyc.com

  ii. Telephone number: (917) 945-7129

  iii. Subject of discoverable information: Negotiation of licensing rights for Schneider's works.

**B. Defendants and Persons associated with Defendants**

    a.  YouTube LLC

          i.  Subjects of discoverable information: Plaintiffs, their works that have been uploaded to YouTube, their takedown notices, and their Content ID applications; YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the detection, removal or maintenance of copyright management information by YouTube's technologies; the viewing statistics of videos that have been uploaded with associated copyright management information; YouTube's knowledge as to the removal or maintenance of copyright management information by others; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; YouTube's control over and influence of which videos are viewed by users; access to and the administration of Content ID; YouTube's practices regarding takedown notices; the assessment of copyright strikes against users; YouTube's AutoPlay feature; YouTube's Account Monetization Program; YouTube's creation, administration, maintenance, and discontinuation of Content Verification; licensing deals related to Content ID; efforts to

4

PLAINTIFFS' RULE 26(a)(1) INITIAL DISCLOSURES                       5:20-cv-4423

implement EU Article 13; policies and procedures relating to red flag knowledge of copyright infringement; policies and procedures relating to fair use; and the amount of revenue generated by copyright-infringing material on YouTube.

b. Google LLC

i. Subjects of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; YouTube and Google's knowledge of the removal or maintenance of copyright management information by others; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; Google's control over and influence of the videos watched by users; and the amount of revenue generated by copyright-infringing material on YouTube.

c. Scott Silver, YouTube vice president of engineering

i. Subjects of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the

5

contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

   d.   Ariel Bardin, YouTube vice president of creator products

        i.  Subjects of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

6

e. Matt Halprin, YouTube vice president and global head of trust and safety

    i. Subjects of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; adjudication of access to YouTube by repeat infringers; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

2. **Categories and locations of documents in Named Plaintiffs' possession, custody, or control.**

Named Plaintiffs may use the following categories of documents, data compilations, electronically stored information, and other tangible things in its possession, custody, or control to support their claims:

A. Named Plaintiffs' copyright registration materials and other evidence of valid copyrights.

B. Named Plaintiffs' licensing agreements for copyrighted works, if any.

C. Takedown notices or other complaints about copyright infringement sent from Named Plaintiffs to YouTube for copyrighted works.

D. Communications from YouTube to Named Plaintiffs regarding takedown notices or other complaints related to copyright infringement.

E. Communications between Named Plaintiffs and Defendants concerning copyright infringement on YouTube.

7

F.  Communications between Named Plaintiffs and defendants concerning access to Content ID.

**3.  Computation of Damages**

Named Plaintiffs' computation of damages will be the subject of both lay and expert testimony, the latter of which will be disclosed in accordance with the Court's expert disclosure schedule, and is dependent upon discovery yet to be produced from Defendants including on issues directly related to damages such as the number of takedown notices during the class period, the number of copyrighted works infringed, the scope of the removal of copyright management information ("CMI"), etc.

Pursuant to the Copyright Act, Named Plaintiffs' and the Class's damages for infringement will be measured either (1) as a combination of the actual damages suffered either based on lost profits or a hypothetical license as well as the disgorgement of YouTube's profits earned on the infringing videos or (2) as an aggregate of statutory damages measured between $750 and $30,000 per work whose copyright has been infringed, and this sum can be increased to $150,000 for willful infringement. *See* 17 U.S.C. § 504. Statutory damages are also available for each violation of § 1202 for the unlawful removal of CMI. 17 U.S.C. § 1203. Damages for CMI removal are measured between $2,500 and $25,000 for each violation. *Id.*

Named Plaintiffs and the Class may elect either actual damages plus Defendants' profits or statutory damages at any time before final judgment and have not made a choice at this early stage.

**A.  Actual Damages Estimate**

Plaintiff Maria Schneider expects that discovery shall establish lost revenues as the result of repeated infringement of her works on YouTube.  In addition, Plaintiff Maria Schneider expects that she will be able to establish through expert testimony the value of a hypothetical license for unauthorized use of her works by Defendants.

8

Plaintiff Pirate Monitor expects that discovery shall establish lost revenues as the result of repeated infringement of its works on YouTube.  In addition, Plaintiff Pirate Monitor expects that it will be able to establish through expert testimony the value of a hypothetical license for unauthorized use of its works by Defendants.

The Class expects that discovery shall establish lost revenues as the result of repeated infringement of the Class's works on YouTube.  In addition, the Class expects that it will be able to establish through expert testimony the value of hypothetical licenses for unauthorized use of its works by Defendants.

In addition, Named Plaintiffs and the Class expect to establish through discovery the extent of Defendants profits which shall be subject to disgorgement.  While these damages estimates for the Class are necessarily imprecise prior to discovery and expert analysis, Named Plaintiffs and the Class provide below a very rough estimate of the actual damages recoverable in the form of disgorgement based on some historical publicly available data and as well as their current information and belief. In 2010, it was estimated that one-third of the two billion views of YouTube videos with ads included copyrighted content. That same year, 104 billion views per year were monetized. We can then estimate that the total number of monetized views that included copyrighted content was over 34 billion views. Video views were then monetized at a median rate of approximately $11 per thousand views (of which YouTube received 45 percent or about $5) and about $3.50 per click (of which YouTube received 45 percent or about $1.60). The click rate for ads was approximately 1/3 of 1%. YouTube's take from viewership alone (and not clicks) was thus over $170 million (34 billion total monetized views of infringing content X $5 / 1000 views = $170 million). The estimated earnings on clicked ads would be $180 million (34 billion total monetized views X 0.0033 click rate X $1.60 per click=$180 million). For 2010 alone, then, YouTube made $350 million in revenue off of copyrighted content. While Google does not separately report YouTube's profit margin, Alphabet's gross profit margin has

9

ranged during 2010 to 2020 from 55% (in 2020) to 65% (in 2011).  Using 60% as a rough estimated gross profit margin and YouTube's approximate revenue of $350 million from infringing views, YouTube's profits for 2010 alone would be approximately $200 million, which would be the infringer profits portion of the damages subject to disgorgement under 17 USC § 504.

From 2018 to 2019, YouTube's increase in ad revenue was estimated at 11 percent. Assuming (likely conservatively) that this figure held from 2010 to the present, YouTube's revenue from copyrighted material in 2020 would be approximately $990 million ($350 million X $1.11^{10}$ = $993 million). For the three-year limitations period, the total revenue would be approximately $3 billion. Using a gross profit margin of 55% over this time, approximately $1.6 billion in profits would have been earned off of infringing content for the class period.

Plaintiffs expect to establish through discovery the same types of actual damages as well as profits subject to disgorgement based upon the unlawful removal of CMI from all of their collective works that were uploaded to YouTube.  Plaintiffs may also be entitled to treble damages for repeat violations of 17 U.S.C. § 1202(b) pursuant to 17 U.S.C. § 1203(c)(4).

**B.  Statutory Damages**

In 2017, YouTube received more than 2.5 million takedown requests from more than 300,000 copyright claimants. At this stage, it is impossible to know how many copyrighted works each claimant controls. The lower extreme would assume only one registered work per claimant, which likely substantially underestimates the actual number of copyrighted works at issue. At this lower-bound estimate, the total statutory damages would range between $225 million and $9 billion for ordinary violations and up to $45 billion for willful violations (300,000 works X $750 statutory damages per work = $225 million; 300,000 works X $30,000 statutory damages per work = $9 billion; 300,000 works X up to $150,000 statutory damages for willful infringement = $45 billion).

Turning to statutory damages for the § 1202 violations, while the number of videos for which

10

CMI has been removed will not be determined through discovery and expert testimony, damages will be between $2,500 and $25,000 for each work for which CMI has been removed or altered.

### 4. Insurance Agreements

Plaintiffs are not aware of any insurance agreements that would oblige an insurance business to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

 /s/ George A. Zelcs
George A. Zelcs
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Joshua Irwin Schiller
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Maria Schneider and*
*Pirate Monitor LTD*

1

## CERTIFICATE OF SERVICE

2          I  hereby  certify  that  the  following  counsel  for  were  served  by  email  at

3   schneidervyoutube@wsgr.com on October 22, 2020:

4

5          David H. Kramer
            Maura L. Rees
            Lauren Gallo White
6          WILSON SONSINI GOODRICH & ROSATI
            Professional Corporation
7          650 Page Mill Road
            Palo Alto, CA 94304-1050
8          Telephone: (650) 493-9300
            Facsimile:  (650) 565-5100
9
            Brian M. Willen
10         WILSON SONSINI GOODRICH & ROSATI
            Professional Corporation
11         1301 Avenue of the Americas, 40th Floor
            New York, NY 10019
12         Telephone: (212) 999-5800
            Facsimile:  (212) 999-5801
13

14         *Attorneys for Defendant and Counterclaimants*
            YOUTUBE, LLC and GOOGLE LLC
15

16                                        ___/s/ Ryan Z. Cortazar_____
                                          Ryan Z. Cortazar
17                                        **KOREIN TILLERY LLC**
                                          205 N. Michigan Ave., Suite 1950
18                                        Chicago, IL 60601
                                          Telephone: (312) 641-9750
19                                        rcortazar@koreintillery.com
20
                                          *Attorney for Plaintiff and Proposed Class*
21

22

23

24

25

26

27

28
                                          12

CERTIFICATE OF SERVICE                                          5:20-cv-4423

# Exhibit 1B

George A. Zelcs *(pro hac vice)*
   gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
   rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
   rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
   stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
   sberezney@koreintillery.com
Carol O'Keefe *(pro hac vice)*
   cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
   jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
   pkorologos@bsfllp.com
Joanna Wright *(pro hac vice)*
   jwright@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Maria Schneider, Uniglobe Entertainment LLC, and AST Publishing Ltd.*

1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated; | |
| | CASE NO.  5:20-cv-4423 |
| Plaintiffs, | **PLAINTIFF AST PUBLISHING LTD.'S RULE 26(a)(1) INITIAL DISCLOSURES** |
| vs. | |
| YOUTUBE, LLC; and GOOGLE LLC; | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 26(a)(1), Plaintiff AST Publishing Ltd. makes the following initial disclosures to Defendants YouTube, LLC and Google LLC (collectively "Defendants") based on currently available information. Plaintiff reserves the right to modify, amend, and supplement these initial disclosures based on further investigation and on information learned in discovery. By making these disclosures, Plaintiff does not intend to waive any objections or privileges available to it.

1.  **Persons likely to have discoverable information that Plaintiff may use to support its claims and defenses.**

   A.  **Plaintiff and Persons associated with Plaintiff**

      a.  AST Publishing Ltd.

         i.  AST should be contacted through AST's undersigned counsel.

         ii.  Subjects of discoverable information: AST's ownership of the copyrights at issue; takedown notices submitted to YouTube on behalf of AST; enforcement of AST's copyrights; AST's communications with YouTube; AST's distribution and licensing of the copyrighted works; and damages suffered as a result of the infringement of AST's copyrighted works.

      b.  Maxim Lazosvky, Deputy General Director of AST

         i.  Maxim Lazosvky should be contacted through AST's undersigned counsel.

ii. Subjects of discoverable information: AST's ownership of the copyrights at issue; and AST's distribution and licensing of the copyrighted works.

c. Association of Copyright Holders, Licensors, and Licensees for the Protection of Copyrights on the Internet ("AZAPI")

    i. AZAPI should be contacted through AST's undersigned counsel.

    ii. Subjects of discoverable information: takedown notices submitted to YouTube on behalf of AST; AST's copyright enforcement on YouTube; and AST's communications with YouTube.

d. Ryabyko Maxim, board member of AZAPI

    i. Ryabyko Maxim should be contacted through AST's undersigned counsel.

    ii. Subjects of discoverable information: takedown notices submitted to YouTube on behalf of AST and enforcement of AST's copyrights; communications with YouTube on behalf of AST; infringement of AST's works on YouTube; and damages suffered as a result of the infringement of AST's copyrighted works.

e. Sergey Anuryev, General Director of LitRes LLC

    i. Sergey Anuryev should be contacted at +7 (495) 661-08-93 and 123112, Moscow City, 1st Krasnogvardeisky Ave., Building 15, Floor 28.

    ii. Subjects of discoverable information: impact of infringement on YouTube on AST's distribution of its works and revenue; efforts to steer YouTube viewers to AST's lawful distribution channels; and damages suffered as a result of the infringement of AST's copyrighted works.

**B. Defendants and Persons associated with Defendants**

a. YouTube LLC

    i. Subject of discoverable information: YouTube's policies for dealing with

3

copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

b.   Google LLC

i.   Subject of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-

4

infringing material on YouTube.

c. Scott Silver, YouTube vice president of engineering

    i. Subject of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

d. Ariel Bardin, YouTube vice president of creator products

    i. Subject of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of

5

copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

    e.   Matt Halprin, YouTube vice president and global head of trust and safety

        i.   YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; adjudication of access to YouTube by repeat infringers; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

**2.  Categories and locations of documents in Plaintiff's possession, custody, or control.**

    Plaintiff may use the following categories of documents, data compilations, electronically stored information, and other tangible things in its possession, custody, or control to support its claims:

    A.   Plaintiff's copyright registration materials, if any, and other evidence of valid copyrights for works at issue, including ownership of the copyrights.

    B.   Plaintiff's licensing and distribution agreements for copyrighted works at issue.

    C.   Takedown notices or other complaints about copyright infringement sent from Plaintiff to YouTube for copyrighted works at issue.

    D.   Communications from YouTube to Plaintiff regarding takedown notices or other complaints related to copyright infringement.

6

E.   Communications between Plaintiff and Defendants concerning copyright infringement on YouTube.

F.   Communications between Plaintiff and Defendants concerning access to Content ID.

## 3.  Computation of Damages

Plaintiff's computation of damages and the damages of the Class will be the subject of expert testimony, which will be disclosed in accordance with the Court's expert disclosure schedule. Consistent with the provisions of the Copyright Act, Plaintiff's damages will be measured as a combination of Plaintiff's actual damages and YouTube's profits earned on the infringing videos.

Despite these ambiguities, Plaintiff can provide a very rough estimate of damages based on publicly available data and information and belief. In 2010, it was estimated that one-third of the two billion views of YouTube videos with ads included copyrighted content. That same year, 104 billion views per year were monetized. We can estimate that the total number of monetized views was thus 34,666,666,667 views. Video views were then monetized at a median rate of $11.43 per thousand views (of which YouTube receives 45 percent or $5.14) and $3.58 per click (of which YouTube receives 45 percent or $1.61). The click rate for ads was 0.34 percent. YouTube's take from viewership alone (and not clicks) was thus $178,186,666.67 (34,666,666,667 total monetized views of infringing content X $5.14 / 1000 views = $178,186,666.67). The estimated earnings on clicked ads would be (34,666,666,667 total monetized views X 0.0034 click rate X $1.61 per click=$189,765,333.34). For 2010 alone, then, YouTube made $367,952,000 off of copyrighted content.

From 2018 to 2019, YouTube's increase in ad revenue was estimated at 11 percent. Assuming conservatively that this figure held from 2010 to the present, then YouTube's revenue from copyrighted material in 2020 was ($367,952,000 X 1.11[10] = $1,044,770,631). For the three year limitations period, the total would be $3,134,311,892.

## 4.  Insurance Agreements

7

Plaintiff is not aware of any insurance agreements that would oblige an insurance business to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.


 /s/ George A. Zelcs
George A. Zelcs
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751


Joshua Irwin Schiller
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
   pkorologos@bsfllp.com
Joanna Wright *(pro hac vice)*
   jwright@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for AST Publishing Ltd.*

PLAINTIFF AST PUBLISHING LTD.'S RULE 26(a)(1) INITIAL DISCLOSURES                    5:20-cv-4423

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2021, I have caused the foregoing to be served upon the opposing counsel via email at schneidervyoutube@wsgr.com.

Dated:  December 22, 2021                                    */s/ Randall P. Ewing*

PLAINTIFF AST PUBLISHING LTD.'S RULE 26(a)(1) INITIAL DISCLOSURES                    5:20-cv-4423

# Exhibit 1C

George A. Zelcs *(pro hac vice)*
   gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
   rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
   rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
   stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
   sberezney@koreintillery.com
Carol O'Keefe *(pro hac vice)*
   cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
   jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
   pkorologos@bsfllp.com
Joanna Wright *(pro hac vice)*
   jwright@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Maria Schneider, Uniglobe Entertainment LLC, and AST Publishing Ltd.*

1

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated; | CASE NO.  5:20-cv-4423 |
| Plaintiffs, | **PLAINTIFF UNIGLOBE ENTERTAINMENT LLC'S RULE 26(a)(1) INITIAL DISCLOSURES** |
| vs. | |
| YOUTUBE, LLC; and GOOGLE LLC; | |
| Defendants. | |

Pursuant to Fed. R. Civ. P. 26(a)(1), Plaintiff Uniglobe Entertainment LLC makes the following initial disclosures to Defendants YouTube, LLC and Google LLC (collectively "Defendants") based on currently available information. Plaintiff reserves the right to modify, amend, and supplement these initial disclosures based on further investigation and on information learned in discovery. By making these disclosures, Plaintiff does not intend to waive any objections or privileges available to it.

1. **Persons likely to have discoverable information that Plaintiff may use to support its claims and defenses.**

   A. **Plaintiff and Persons associated with Plaintiff**

      a. Nayomi Cooper, also known as Namrata Singh Gujral-Cooper

         i. Nayomi Cooper should be contacted through Uniglobe's undersigned counsel.

         ii. Subjects of discoverable information: Uniglobe's ownership of the copyrights at issue; Uniglobe's registration of the copyrights at issue, if applicable; takedown notices submitted to YouTube on Uniglobe's behalf; Uniglobe's communications with YouTube; Uniglobe's distribution and licensing of the copyrighted works; and damages suffered as a result of infringement of Uniglobe's copyrights.

2

b. Uniglobe Entertainment LLC

    i. Uniglobe should be contacted through Uniglobe's undersigned counsel.

    ii. Subjects of discoverable information: Uniglobe's ownership of the copyrights at issue; Uniglobe's registration of the copyrights at issue, if applicable; takedown notices submitted to YouTube on behalf of Uniglobe; Uniglobe's communications with YouTube; Uniglobe's distribution and licensing of the copyrighted works; and damages suffered as a result of the infringement of Uniglobe's copyrighted works.

**B. Defendants and Persons associated with Defendants**

a. YouTube LLC

    i. Subject of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

b. Google LLC

    i. Subject of discoverable information: YouTube's policies for dealing with

3

copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

 c. Scott Silver, YouTube vice president of engineering

   i. Subject of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-

4

infringing material on YouTube.

d.   Ariel Bardin, YouTube vice president of creator products

   i.   Subject of discoverable information: YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; activation, deactivation, and reactivation of accounts tied to by repeat infringers on YouTube; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the location of copyright-infringing material that has been uploaded to YouTube, including material posted to, removed from, and uploaded but never posted to YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

e.   Matt Halprin, YouTube vice president and global head of trust and safety

   i.   YouTube's policies for dealing with copyright-infringing materials; the relationship between Content ID and YouTube's other tools for dealing with copyright infringement; the contents of YouTube's repeat-infringer policy; implementation of the repeat-infringer policy; adjudication of access to YouTube by repeat infringers; the relationship between the repeat-infringer policy and Content ID; the removal or maintenance of copyright management information by YouTube's technologies; the volume of copyright-infringing material on YouTube; the amount of revenue generated by copyright-infringing material on YouTube.

5

**2.   Categories and locations of documents in Plaintiff's possession, custody, or control.**

Plaintiff may use the following categories of documents, data compilations, electronically stored information, and other tangible things in its possession, custody, or control to support its claims:

> A.   Plaintiff's copyright registration materials and other evidence of valid copyrights for works at issue, including ownership of the copyrights.
>
> B.   Plaintiff's licensing and distribution agreements for copyrighted works at issue.
>
> C.   Takedown notices or other complaints about copyright infringement sent from Plaintiff to YouTube for copyrighted works at issue.
>
> D.   Communications from YouTube to Plaintiff regarding takedown notices or other complaints related to copyright infringement.
>
> E.   Communications between Plaintiff and Defendants concerning copyright infringement on YouTube.
>
> F.   Communications between Plaintiff and Defendants concerning access to Content ID.

**3.   Computation of Damages**

Plaintiff's computation of damages and the damages of the Class will be the subject of expert testimony, which will be disclosed in accordance with the Court's expert disclosure schedule. Consistent with the provisions of the Copyright Act, Plaintiff's damages will be measured either (1) as a combination of Plaintiff's actual damages and YouTube's profits earned on the infringing videos or (2) as an aggregate of statutory damages measured between $750 and $30,000 per work whose copyright has been infringed, if applicable. *See* 17 U.S.C. § 504. For infringements for which Plaintiff is entitled to either actual or statutory damages, Plaintiff may elect either option at any time before final judgment and has not made a choice at this stage.

**A.   Actual Damages Estimate**

Despite these ambiguities, Plaintiff can provide a very rough estimate of damages based on

6

publicly available data and information and belief. In 2010, it was estimated that one-third of the two billion views of YouTube videos with ads included copyrighted content. That same year, 104 billion views per year were monetized. We can estimate that the total number of monetized views was thus 34,666,666,667 views. Video views were then monetized at a median rate of $11.43 per thousand views (of which YouTube receives 45 percent or $5.14) and $3.58 per click (of which YouTube receives 45 percent or $1.61). The click rate for ads was 0.34 percent. YouTube's take from viewership alone (and not clicks) was thus $178,186,666.67 (34,666,666,667 total monetized views of infringing content X $5.14 / 1000 views = $178,186,666.67). The estimated earnings on clicked ads would be (34,666,666,667 total monetized views X 0.0034 click rate X $1.61 per click=$189,765,333.34). For 2010 alone, then, YouTube made $367,952,000 off of copyrighted content.

From 2018 to 2019, YouTube's increase in ad revenue was estimated at 11 percent. Assuming conservatively that this figure held from 2010 to the present, then YouTube's revenue from copyrighted material in 2020 was ($367,952,000 X $1.11^{10}$ = $1,044,770,631). For the three year limitations period, the total would be $3,134,311,892.

**B.  Statutory Damages**

In 2017, YouTube received more than 2.5 million takedown requests from more than 300,000 copyright claimants. At this stage, it is impossible to know how many copyrighted works each claimant controls. An extreme minimum would assume just one registered work per claimant. On this estimate, the total statutory damages would range between $225,000,000 and $9 billion (300,000 works X $750 statutory damages per work = $225,000,000; 300,000 works X $30,000 statutory damages per work = $9,000,000,000).

**4.  Insurance Agreements**

Plaintiff is not aware of any insurance agreements that would oblige an insurance business to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments

7

made to satisfy the judgment.


 /s/ George A. Zelcs
George A. Zelcs
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751


Joshua Irwin Schiller
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
   pkorologos@bsfllp.com
Joanna Wright (*pro hac vice*)
   jwright@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Uniglobe Entertainment LLC*

PLAINTIFF UNIGLOBE ENTERTAINMENT LLC'S RULE 26(a)(1) INITIAL DISCLOSURES          5:20-cv-4423

**CERTIFICATE OF SERVICE**

I certify that on December 22, 2021, I have caused the foregoing to be served upon the opposing counsel via email at schneidervyoutube@wsgr.com.

Dated:  December 22, 2021                    /s/ Randall P. Ewing

PLAINTIFF UNIGLOBE ENTERTAINMENT LLC'S RULE 26(a)(1) INITIAL DISCLOSURES        5:20-cv-4423

# Exhibit 1D

George A. Zelcs *(pro hac vice)*
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
  rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Michael E. Klenov, CA Bar #277028
  mklenov@koreintillery.com
Carol O'Keefe *(pro hac vice)*
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
  pkorologos@bsfllp.com
Joanna C. Wright *(pro hac vice)*
  jwright@bsfllp.com
Demetri Blaisdell *(pro hac vice)*
  dblaisdell@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;<br><br>        Plaintiffs,<br><br>    vs.<br><br>YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.;<br><br>        Defendants. | CASE NO. 3:20-cv-4423-JD<br><br>**PLAINTIFF MARIA SCHNEIDER'S OBJECTIONS AND RESPONSES TO DEFENDANT YOUTUBE, LLC AND GOOGLE LLC'S FIFTH SET OF INTERROGATORIES TO PLAINTIFF MARIA SCHNEIDER (NOS. 12-20)** |

1    Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Maria Schneider submits

2  the following supplemental responses and objections to Defendants YouTube, LLC ("YouTube")

3  and Google LLC ("Google") (collectively "Defendants")  Fifth Set of Interrogatories to Plaintiff

4  Maria Schneider, dated April 29, 2022, (the "Requests"), in the above-captioned action (the

5  "Action").

6    By submitting these Responses, Schneider does not concede or waive any arguments

7  regarding the scope, relevance, and timing of any discovery in the Action.

8    Schneider reserves the right to amend or revise these Responses, including based on any

9  responses or objections submitted by Defendants to any of Schneider's discovery requests.

10  Schneider also asserts that any discovery obligations should be mutual between parties, so that if

11  any of her objections are overridden, Defendants should be subject to the same scope of discovery,

12  including definitions and instructions for discovery compliance.

13                              **GENERAL OBJECTIONS**

14    1.    Schneider objects to the Interrogatories to the extent they impose obligations in

15  addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court,

16  any court governing discovery in this case, or any discovery protocol agreed upon by the parties.

17    2.    Schneider objects to the Interrogatories, and to each Definition and specific

18  Request contained therein, insofar as they seek information not in her possession, custody, or

19  control. Schneider further objects to the Requests to the extent they seek documents and

20  information that she does not have the practical ability to obtain or which would be unreasonably

21  burdensome to identify or to obtain.

22    3.    Schneider objects to the extent the Interrogatories seek information or that is

23  already in Defendants' possession, is equally accessible to Defendants, or is readily accessible to

24  Defendants.

25    4.    Schneider further objects to the Interrogatories to the extent that the burden of

26  deriving an answer from other sources of discovery will be substantially the same for Defendants

27  as it is for her.

28

5.      Schneider objects to the Interrogatories to the extent they seek information that Defendants can obtain from sources that are more convenient, less burdensome, or less expensive.

6.      Schneider objects to the Interrogatories to the extent they seek information protected by the attorney/client privilege, the work-product doctrine, Rule 408 of the Federal Rules of Evidence, any common interest privilege, joint defense agreement or any other applicable privilege.

7.      Schneider further objects to the Interrogatories to the extent that they are vague and ambiguous, overly broad, unduly burdensome, lacking in particularity or unreasonable, or otherwise seek the discovery of information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence

8.      Schneider objects to the Interrogatories to the extent they are propounded for the improper purpose of annoying or harassing her.

9.      Schneider's responses are based solely on facts reasonably known to her at the time of responding to these Interrogatories. Schneider reserves the right to supplement, amend, or otherwise modify these responses.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 12:

**For each alleged infringement of a Work In Suit that You assert in this action, describe in detail Your actual damages, if any, from the alleged infringement, including specification of all evidence supporting any actual damages claimed.**

### OBJECTIONS AND RESPONSE:

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiffs further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement her response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

1    Subject to and without waiving these objections, Plaintiff responds that Defendants have not

2    to date produced information responsive to RFPs seeking information relevant to this issue. For

3    example, Defendants have not produced information responsive to this issue that is sought, at

4    minimum, by RFPs 7, 111, and 117.

5    **INTERROGATORY NO. 13:**

6    **For each alleged infringement of a Work In Suit that You assert in this action, if You**

7    **contend that YouTube had "actual knowledge" that any material or activity using the material**

8    **on the YouTube service infringed the Work In Suit within the meaning of 17 U.S.C. §§ 512**

9    **(c)(1)(A)(i) or 512(d)(1)(A), describe in detail the basis for Your contention, including all**

10   **evidence supporting Your contention.**

11   **OBJECTIONS AND RESPONSE:**

12   Plaintiff objects to this interrogatory because it is a premature contention interrogatory

13   served before discovery is complete. Plaintiff further objects that this interrogatory is vague because

14   it does not define "actual knowledge," overbroad and unduly burdensome in that it seeks "all

15   evidence" supporting this contention. Plaintiff reserves the right to supplement her response to this

16   interrogatory after discovery has closed, before the pretrial conference, or at any other time as

17   ordered by the Court.

18   Subject to and without waiving these objections, Plaintiff responds that Defendants have not

19   to date produced information responsive to RFPs seeking information relevant to this issue. For

20   example, Defendants have not produced information responsive to this issue that is sought, at

21   minimum, by RFPs 6, 28 and 88. Despite these deficiencies, Plaintiff further identifies the following

22   documents relevant to this issue: GOOG-SCHNDR-00000774–0857; SCHNEIDER_0000002682–

23   2684, '4136, '8653, '9293, '9317–9346, '9352–9355, '9439–9482, '9659, '9665, '13447–13453,

24   '17479–17481;  GOOG-SCHNDR-00038421,  GOOG-SCHNDR-00038639,  GOOG-SCHNDR-

25   00038640,     GOOG-SCHNDR-00038668,     GOOG-SCHNDR-00038693,     GOOG-SCHNDR-

26   00039154, GOOG-SCHNDR-00039174

27   **INTERROGATORY NO. 14:**

28

**For each alleged infringement of a Work In Suit that You assert in this action, if You contend that YouTube was aware of facts or circumstances from which the infringing activity was apparent within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(ii) or 512(d)(1)(B), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this issue. Plaintiff reserves the right to supplement her response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information responsive to RFPs seeking information relevant to this contention. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 6, 48, 50, 51, or 88. Despite these deficiencies, Plaintiff identifies the following documents relevant to this issue: GOOG-SCHNDR-00000774–0857; SCHNEIDER_0000002682– 2684, '4136, '8653, '9293, '9317–9346, '9352–9355, '9439–9482, '9659, '9665, '13447–13453, '17479–17481; GOOG-SCHNDR-00038421, GOOG-SCHNDR-00038639, GOOG-SCHNDR-00038640, GOOG-SCHNDR-00038668, GOOG-SCHNDR-00038693, GOOG-SCHNDR-00039154, GOOG-SCHNDR-00039174.

**INTERROGATORY NO. 15:**

**For each alleged infringement of a Work In Suit that You assert in this action, if You contend that YouTube did not "respond[] expeditiously to remove, or disable access to, the material that is claimed to be infringing or the subject of infringing activity "upon notification by You of the alleged infringement of the Work In Suit within the meaning of 17 U.S.C. §§ 512 (c)(1)(C) or 512(d)(3), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

1   Plaintiff objects to this interrogatory because it is a premature contention interrogatory
2   served before discovery is complete in this case. Plaintiff further objects that the interrogatory is
3   overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff
4   reserves the right to supplement her response to this interrogatory after discovery has closed, before
5   the pretrial conference, or at any other time as ordered by the Court.

6   Subject to and without waiving these objections, Plaintiff responds that Defendants have not
7   to date produced information responsive to RFPs seeking information relevant to this issue. For
8   example, to date Defendants have not produced information responsive to this issue that is sought,
9   at minimum, by RFPs 6, 28, 48, or 51.

10  **INTERROGATORY NO. 16:**

11  **For each alleged infringement of a Work In Suit that You assert in this action, if You**
12  **contend that YouTube did not act "expeditiously to remove, or disable access to, the material"**
13  **within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(iii) or 512(d)(1)(C) upon obtaining knowledge**
14  **or awareness of the alleged infringing activity of the Work In Suit, (i.e., knowledge or**
15  **awareness as defined in 17 U.S.C. §§ 512 (c)(1)(A)(i)-(ii) or 512(d)(1)(A)-(B)), describe in detail**
16  **the basis for Your contention, including all evidence supporting Your contention.**

17  **OBJECTIONS AND RESPONSE:**

18  Plaintiff objects to this interrogatory because it is a premature contention interrogatory
19  served before discovery is complete in this case. Plaintiff further objects that the interrogatory is
20  overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff
21  reserves the right to supplement her response to this interrogatory after discovery has closed, before
22  the pretrial conference, or at any other time as ordered by the Court.

23  Subject to and without waiving these objections, Plaintiff responds that Defendants have not
24  to date produced information to RFPs seeking information relevant to this issue. For example,
25  Defendants have not produced information responsive to this issue that is sought, at minimum, by
26  RFPs 6, 24, 28, 48, 51, 88.

27  **INTERROGATORY NO. 17:**

28

For each alleged infringement of a Work In Suit that You assert in this action, if You contend YouTube received a "financial benefit directly attributable to the infringing activity" and that YouTube had the "right and ability to control such activity" within the meaning of 17 U.S.C. §§ 512 (c)(1)(B) or 512(d)(2), describe in detail the basis for Your contention, including all evidence supporting Your contention.

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement her response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have refused to provide information responsive to RFPs 43, 44, and 45, which seek information directly responsive to this issue. *See* Dkt. 126 (Motion to Compel Autoplay Information). Despite these deficiencies, Plaintiff identifies the following document relevant to this issue: GOOG-SCHNDR-00043844.

**INTERROGATORY NO. 18:**

If You contend that YouTube fails to accommodate and, instead, interferes with "standard technical measures" within the meaning of 17 U.S.C. § 512 (i)(B), describe in detail the basis for Your contention, including all evidence supporting Your contention.

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiffs further object that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement her response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

1    Subject to and without waiving these objections, Plaintiff responds that they are currently

2  negotiating the RFPs relevant to information concerning this issue, though Defendants have refused

3  to produce relevant information sought under, for example, RFPs 81, 83, 84, and 98. Plaintiff further

4  identifies the following documents relevant to this issue: GOOG-SCHNDR-00039095 and GOOG-

5  SCHNDR-00000924.

6  **INTERROGATORY NO. 19:**

7    **If You contend that YouTube knew or had "reasonable grounds to know" that its**

8  **alleged actions with regard to CMI would "induce, enable, facilitate, or conceal an**

9  **infringement of any right" within the meaning of 17 U.S.C. § 1202(b), describe in detail the**

10  **basis for Your contention, including all evidence supporting Your contention.**

11  **OBJECTIONS AND RESPONSE:**

12    Plaintiff objects to this interrogatory because it is a premature contention interrogatory

13  served before discovery is complete in this case. Plaintiff further objects that the interrogatory is

14  overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff

15  reserves the right to supplement her response to this interrogatory after discovery has closed, before

16  the pretrial conference, or at any other time as ordered by the Court.

17    Subject to and without waiving these objections, Plaintiff responds that the parties are

18  negotiating responses to RFPs relevant to information concerning this issue, including, for example,

19  RFPs 95, 96, 99, 100, and 101.

20  **INTERROGATORY NO. 20:**

21    **Identify all YouTube user accounts or Google user accounts that You or Your agents**

22  **have used while accessing YouTube, including by providing for each account: the name of the**

23  **individual who registered the account, any email address associated with the account, and the**

24  **account name.**

25  **OBJECTIONS AND RESPONSE:**

26    Plaintiff objects that this interrogatory is overbroad and unduly burdensome in that it asks

27  for all YouTube user accounts by Plaintiff and Plaintiff's agents to access YouTube regardless of

28

1  whether the Plaintiff or Plaintiff's agents used those accounts solely for personal or private purposes

2  unrelated to the management of the Works in Suit in ways that are entirely irrelevant to any claims

3  or defenses in this lawsuit. Plaintiff further objects that this interrogatory is cumulative and

4  vexatious because the information was produced in response to Schneider RFPs 21 and 23.

5       Subject to and without waiving these objections, Plaintiff responds that Maria Schneider

6  Official Page was registered by either Maria Schneider or Marie Le Claire. Email addresses that

7  have been associated with or identified in connection with the account include

8  mariaschneider@me.com; meemer40@gmail.com; mariaschneiderorch@gmail.com;

9  mariaschneider@mac.com; mschamberworks@gmail.com; and maria-schneider-

10  3199@pages.plusgoogle.com. Plaintiff further responds that the Marie Le Claire YouTube page

11  may have been used in connection with her works, that the page was registered by Marie Le Claire

12  and that the email address associated with the account is meemer40@gmail.com.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2 **VERIFICATION**

3 Maria Schneider has read the foregoing responses to Plaintiff's Interrogatories, and

4 the answers contained therein are true to the best of her knowledge, information, and

5 belief.

6

7 Signed: *Maria Schneider*

8

9 Dated: May 31, 2022

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: May 31, 2022                          Respectfully submitted,

2
                                                  /s/ Ryan Z. Cortazar
3                                                 George A. Zelcs (pro hac vice)
                                                  Randall P. Ewing, Jr. (pro hac vice)
4                                                 Ryan Z. Cortazar (pro hac vice)
5                                                 **KOREIN TILLERY, LLC**
                                                  205 North Michigan, Suite 1950
6                                                 Chicago, IL  60601
                                                  Telephone: (312) 641-9750
7                                                 Facsimile: (312) 641-9751

8                                                 Stephen M. Tillery (pro hac vice)
9                                                 Steven M. Berezney, CA Bar #329923
                                                  Michael E. Klenov, CA Bar #277028
10                                                Carol O'Keefe (pro hac vice)
                                                  **KOREIN TILLERY, LLC**
11                                                505 North 7th Street, Suite 3600
                                                  St. Louis, MO  63101
12                                                Telephone: (314) 241-4844
                                                  Facsimile: (314) 241-3525
13
14                                                Joshua Irwin Schiller, CA Bar #330653
                                                  **BOIES SCHILLER FLEXNER LLP**
15                                                44 Montgomery St., 41st Floor
                                                  San Francisco, CA  94104
16                                                Phone: (415) 293-6800
                                                  Fax: (415) 293-6899
17
18                                                Philip C. Korologos (pro hac vice)
                                                  Joanna C. Wright (pro hac vice)
19                                                Demetri Blaisdell (pro hac vice)
                                                  **BOIES SCHILLER FLEXNER LLP**
20                                                55 Hudson Yards, 20th Floor
                                                  New York, NY  10001
21                                                Phone: (212) 446-2300
                                                  Fax: (212) 446-2350
22
23                                                *Attorneys for Plaintiffs Maria Schneider,*
                                                  *Uniglobe Entertainment, LLC, and*
24                                                *AST Publishing Ltd.*

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2022, I caused the foregoing Plaintiff Maria Schneider's Objections and Responses to YouTube and Google's Fifth Interrogatories to Plaintiff Maria Schneider to be served on all opposing counsel of record by  email at the  addresses listed below:

Schneidervyoutube@wsgr.com


_/s/ Ryan Z. Cortazar_____

# Exhibit 1E

George A. Zelcs *(pro hac vice)*
    gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
    rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
    rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
    stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
    sberezney@koreintillery.com
Michael E. Klenov, CA Bar #277028
    mklenov@koreintillery.com
Carol O'Keefe *(pro hac vice)*
    cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
    jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
    pkorologos@bsfllp.com
Joanna C. Wright *(pro hac vice)*
    jwright@bsfllp.com
Demetri Blaisdell *(pro hac vice)*
    dblaisdell@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,
Uniglobe Entertainment, LLC, and
AST Publishing Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated; <br><br>        Plaintiffs, <br><br>    vs. <br><br> YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.; <br><br>        Defendants. | CASE NO. 3:20-cv-4423-JD <br><br> **PLAINTIFF UNIGLOBE ENTERTAINMENT LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT YOUTUBE, LLC AND GOOGLE LLC'S SECOND SET OF INTERROGATORIES TO PLAINTIFF UNIGLOBE ENTERTAINMENT, LLC (NOS. 13-21)** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Uniglobe Entertainment LLC ("Uniglobe") submits the following supplemental responses and objections to Defendants YouTube, LLC ("YouTube") and Google LLC ("Google") (collectively "Defendants")  Second Set of Interrogatories to Plaintiff Uniglobe Entertainment, LLC, dated April 29, 2022, (the "Requests"), in the above-captioned action (the "Action").

By submitting these Responses, Uniglobe does not concede or waive any arguments regarding the scope, relevance, and timing of any discovery in the Action.

Uniglobe reserves the right to amend or revise these Responses, including based on any responses or objections submitted by Defendants to any of Uniglobe's discovery requests. Uniglobe also asserts that any discovery obligations should be mutual between parties, so that if any of its objections are overridden, Defendants should be subject to the same scope of discovery, including definitions and instructions for discovery compliance.

## GENERAL OBJECTIONS

1.      Uniglobe objects to the Interrogatories to the extent they impose obligations in addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any court governing discovery in this case, or any discovery protocol agreed upon by the parties.

2.      Uniglobe objects to the Interrogatories, and to each Definition and specific Request contained therein, insofar as they seek information not in its possession, custody, or control. Uniglobe further objects to the Requests to the extent they seek documents and information that it does not have the practical ability to obtain or which would be unreasonably burdensome to identify or to obtain.

3.      Uniglobe objects to the extent the Interrogatories seek information or that is already in Defendants' possession, is equally accessible to Defendants, or is readily accessible to Defendants.

4.      Uniglobe further objects to the Interrogatories to the extent that the burden of deriving an answer from other sources of discovery will be substantially the same for Defendants as it is for Uniglobe.

5.      Uniglobe objects to the Interrogatories to the extent they seek information that Defendants can obtain from sources that are more convenient, less burdensome, or less expensive.

6.      Uniglobe objects to the Interrogatories to the extent they seek information protected by the attorney/client privilege, the work-product doctrine, Rule 408 of the Federal Rules of Evidence, any common interest privilege, joint defense agreement or any other applicable privilege.

7.      Uniglobe further objects to the Interrogatories to the extent that they are vague and ambiguous, overly broad, unduly burdensome, lacking in particularity or unreasonable, or otherwise seek the discovery of information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence

8.      Uniglobe objects to the Interrogatories to the extent they are propounded for the improper purpose of annoying or harassing Uniglobe.

9.      Uniglobe's responses are based solely on facts reasonably known to it at the time of responding to these Interrogatories. Uniglobe reserves the right to supplement, amend, or otherwise modify these responses.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 13:

**For each alleged infringement of a Work In Suit that You assert in this action, describe in detail Your actual damages, if any, from the alleged infringement, including specification of all evidence supporting any actual damages claimed.**

### OBJECTIONS AND RESPONSE:

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiffs further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information responsive to RFPs seeking information relevant to this issue. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 7, 111, and 117.

**INTERROGATORY NO. 14:**

**For each alleged infringement of a Work In Suit that You assert in this action, if You contend that YouTube had "actual knowledge" that any material or activity using the material on the YouTube service infringed the Work In Suit within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(i) or 512(d)(1)(A), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete. Plaintiff further objects that this interrogatory is vague because it does not define "actual knowledge," overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information responsive to RFPs seeking information relevant to this issue. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 28, 88, and 110. Despite these deficiencies, Plaintiff further identifies the following documents relevant to this issue: GOOG-SCHNDR-00000774–0857; SCHNEIDER_0000002682–2684, '4136, '8653, '9293, '9317–9346, '9352–9355, '9439–9482, '9659, '9665, '13447–13453, '17479–17481; GOOG-SCHNDR-00038421, GOOG-SCHNDR-00038639, GOOG-SCHNDR-00038640, GOOG-SCHNDR-00038668, GOOG-SCHNDR-00038693, GOOG-SCHNDR-00039154, GOOG-SCHNDR-00039174.

**INTERROGATORY NO. 15:**

1  **For each alleged infringement of a Work In Suit that You assert in this action, if You**

2  **contend that YouTube was aware of facts or circumstances from which the infringing activity**

3  **was apparent within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(ii) or 512(d)(1)(B), describe in**

4  **detail the basis for Your contention, including all evidence supporting Your contention.**

5  **OBJECTIONS AND RESPONSE:**

6  Plaintiff objects to this interrogatory because it is a premature contention interrogatory

7  served before discovery is complete in this case. Plaintiff further objects that the interrogatory is

8  overbroad and unduly burdensome in that it seeks "all evidence" supporting this issue. Plaintiff

9  reserves the right to supplement its response to this interrogatory after discovery has closed, before

10  the pretrial conference, or at any other time as ordered by the Court.

11  Subject to and without waiving these objections, Plaintiff responds that Defendants have not

12  to date produced information responsive to RFPs seeking information relevant to this contention.

13  For example, Defendants have not produced information responsive to this issue that is sought, at

14  minimum, by RFPs 48, 50, 51, and 110. Despite these deficiencies, Plaintiff identifies the following

15  documents relevant to this issue: GOOG-SCHNDR-00000774–0857; SCHNEIDER_0000002682–

16  2684, '4136, '8653, '9293, '9317–9346, '9352–9355, '9439–9482, '9659, '9665, '13447–13453,

17  '17479–17481;  GOOG-SCHNDR-00038421,  GOOG-SCHNDR-00038639,  GOOG-SCHNDR-

18  00038640,    GOOG-SCHNDR-00038668,    GOOG-SCHNDR-00038693,    GOOG-SCHNDR-

19  00039154, GOOG-SCHNDR-00039174.

20  **INTERROGATORY NO. 16:**

21  **For each alleged infringement of a Work In Suit that You assert in this action, if You**

22  **contend that YouTube did not "respond[] expeditiously to remove, or disable access to, the**

23  **material that is claimed to be infringing or the subject of infringing activity "upon notification**

24  **by You of the alleged infringement of the Work In Suit within the meaning of 17 U.S.C. §§ 512**

25  **(c)(1)(C) or 512(d)(3), describe in detail the basis for Your contention, including all evidence**

26  **supporting Your contention.**

27  **OBJECTIONS AND RESPONSE:**

28

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information responsive to RFPs seeking information relevant to this issue. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 28, 48, 51, and 110.

**INTERROGATORY NO. 17:**

**For each alleged infringement of a Work In Suit that You assert in this action, if You contend that YouTube did not act "expeditiously to remove, or disable access to, the material" within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(iii) or 512(d)(1)(C) upon obtaining knowledge or awareness of the alleged infringing activity of the Work In Suit, (i.e., knowledge or awareness as defined in 17 U.S.C. §§ 512 (c)(1)(A)(i)-(ii) or 512(d)(1)(A)-(B)), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information to RFPs seeking information relevant to this issue. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 24, 28, 48, 51, 88, and 110.

**INTERROGATORY NO. 18:**

For each alleged infringement of a Work In Suit that You assert in this action, if You contend YouTube received a "financial benefit directly attributable to the infringing activity" and that YouTube had the "right and ability to control such activity" within the meaning of 17 U.S.C. §§ 512 (c)(1)(B) or 512(d)(2), describe in detail the basis for Your contention, including all evidence supporting Your contention.

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have refused to provide information responsive to RFPs 43, 44, and 45, which seek information directly responsive to this issue. *See* Dkt. 126 (Motion to Compel Autoplay Information). Despite these deficiencies, Plaintiff identifies the following document relevant to this issue: GOOG-SCHNDR-00043844.

**INTERROGATORY NO. 19:**

If You contend that YouTube fails to accommodate and, instead, interferes with "standard technical measures" within the meaning of 17 U.S.C. § 512 (i)(B), describe in detail the basis for Your contention, including all evidence supporting Your contention.

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiffs further object that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

1    Subject to and without waiving these objections, Plaintiff responds that they are currently

2  negotiating the RFPs relevant to information concerning this issue, though Defendants have refused

3  to produce relevant information sought under, for example, RFPs 81, 83, 84, and 98. Plaintiff further

4  identifies the following documents relevant to this issue: GOOG-SCHNDR-00039095 and GOOG-

5  SCHNDR-00000924.

6  **INTERROGATORY NO. 20:**

7    **If You contend that YouTube knew or had "reasonable grounds to know" that its**

8  **alleged actions with regard to CMI would "induce, enable, facilitate, or conceal an**

9  **infringement of any right" within the meaning of 17 U.S.C. § 1202(b), describe in detail the**

10  **basis for Your contention, including all evidence supporting Your contention.**

11  **OBJECTIONS AND RESPONSE:**

12    Plaintiff objects to this interrogatory because it is a premature contention interrogatory

13  served before discovery is complete in this case. Plaintiff further objects that the interrogatory is

14  overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff

15  reserves the right to supplement its response to this interrogatory after discovery has closed, before

16  the pretrial conference, or at any other time as ordered by the Court.

17    Subject to and without waiving these objections, Plaintiff responds that the parties are

18  negotiating responses to RFPs relevant to information concerning this issue, including, for example,

19  RFPs 95, 96, 99, 100, and 101.

20  **INTERROGATORY NO. 21:**

21    **Identify all YouTube user accounts or Google user accounts that You or Your agents**

22  **have used while accessing YouTube, including by providing for each account: the name of the**

23  **individual who registered the account, any email address associated with the account, and the**

24  **account name.**

25

26  **OBJECTIONS AND RESPONSE:**

27

28

1    Plaintiff objects that this interrogatory is overbroad and unduly burdensome in that it asks

2  for all YouTube user accounts by Plaintiff and Plaintiff's agents to access YouTube regardless of

3  whether the Plaintiff or Plaintiff's agents used those accounts solely for personal or private purposes

4  unrelated to the management of the Works in Suit in ways that are entirely irrelevant to any claims

5  or defenses in this lawsuit. Plaintiff further objects that this interrogatory is cumulative and

6  vexatious because the information was produced in response to Schneider RFPs 21 and 23; Uniglobe

7  RFPs 15, 22, and 53; and AST RFPs 14, 21, and 52.

8    Subject to and without waiving these objections, Plaintiff responds that Namrata Singh-

9  Gujral registered the UniGlobe Entertainment and AmericanizingShelley YouTube pages and that

10  the email addresses associated with the accounts are team@uniglobeentertainment.com; uniglobe-

11  entert-0807@pages.plusgoogle.com; and uniglobeentertainment@gmail.com.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

_____ has read the foregoing responses to Plaintiff's

Interrogatories, and the answers contained therein are true to the best of her

knowledge, information, and belief.

Signed: _____

Dated: _30th May 2022_

Dated: May 31, 2022

Respectfully submitted,

/s/ Ryan Z. Cortazar
George A. Zelcs (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
Steven M. Berezney, CA Bar #329923
Michael E. Klenov, CA Bar #277028
Carol O'Keefe (*pro hac vice*)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
Joanna C. Wright (*pro hac vice*)
Demetri Blaisdell (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2022, I caused the foregoing Plaintiff Uniglobe Entertainment, LLC's Objections and Responses to YouTube and Google's Second set of Interrogatories to Plaintiff Uniglobe Entertainment, LLC to be served on all opposing counsel of record by  email at the  addresses listed below:

Schneidervyoutube@wsgr.com

_/s/ Ryan Z. Cortazar_____

# Exhibit 1F

George A. Zelcs *(pro hac vice)*
  gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
  rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Michael E. Klenov, CA Bar #277028
  mklenov@koreintillery.com
Carol O'Keefe *(pro hac vice)*
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
  pkorologos@bsfllp.com
Joanna C. Wright *(pro hac vice)*
  jwright@bsfllp.com
Demetri Blaisdell *(pro hac vice)*
  dblaisdell@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,
Uniglobe Entertainment, LLC, and
AST Publishing Ltd.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated; <br><br>       Plaintiffs, <br><br>     vs. <br><br> YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.; <br><br>       Defendants. | CASE NO. 3:20-cv-4423-JD <br><br> **PLAINTIFF AST PUBLISHING LTD'S OBJECTIONS AND RESPONSES TO DEFENDANT YOUTUBE, LLC AND GOOGLE LLC'S SECOND SET OF INTERROGATORIES TO PLAINTIFF AST PUBLISHING LTD (NOS. 13-21)** |

1   Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff AST Publishing LTD

2   ("AST") submits the following supplemental responses and objections to Defendants YouTube,

3   LLC ("YouTube") and Google LLC ("Google") (collectively "Defendants")  Second Set of

4   Interrogatories to Plaintiff AST Publishing LTD, dated April 29, 2022, (the "Requests"), in the

5   above-captioned action (the "Action").

6   By submitting these Responses, AST does not concede or waive any arguments regarding

7   the scope, relevance, and timing of any discovery in the Action.

8   AST reserves the right to amend or revise these Responses, including based on any

9   responses or objections submitted by Defendants to any of AST's discovery requests. AST also

10   asserts that any discovery obligations should be mutual between parties, so that if any of its

11   objections are overridden, Defendants should be subject to the same scope of discovery, including

12   definitions and instructions for discovery compliance.

13   **GENERAL OBJECTIONS**

14   1.   AST objects to the Interrogatories to the extent they impose obligations in addition

15   to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any court

16   governing discovery in this case, or any discovery protocol agreed upon by the parties.

17   2.   AST objects to the Interrogatories, and to each Definition and specific Request

18   contained therein, insofar as they seek information not in its possession, custody, or control. AST

19   further objects to the Requests to the extent they seek documents and information that it does not

20   have the practical ability to obtain or which would be unreasonably burdensome to identify or to

21   obtain.

22   3.   AST objects to the extent the Interrogatories seek information or that is already in

23   Defendants' possession, is equally accessible to Defendants, or is readily accessible to Defendants.

24   4.   AST further objects to the Interrogatories to the extent that the burden of deriving

25   an answer from other sources of discovery will be substantially the same for Defendants as it is

26   for AST.

27

28

5.      AST objects to the Interrogatories to the extent they seek information that Defendants can obtain from sources that are more convenient, less burdensome, or less expensive.

6.      AST objects to the Interrogatories to the extent they seek information protected by the attorney/client privilege, the work-product doctrine, Rule 408 of the Federal Rules of Evidence, any common interest privilege, joint defense agreement or any other applicable privilege.

7.      AST further objects to the Interrogatories to the extent that they are vague and ambiguous, overly broad, unduly burdensome, lacking in particularity or unreasonable, or otherwise seek the discovery of information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence

8.      AST objects to the Interrogatories to the extent they are propounded for the improper purpose of annoying or harassing AST.

9.      AST's responses are based solely on facts reasonably known to it at the time of responding to these Interrogatories. AST reserves the right to supplement, amend, or otherwise modify these responses.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 13:

**For each alleged infringement of a Work In Suit that You assert in this action, describe in detail Your actual damages, if any, from the alleged infringement, including specification of all evidence supporting any actual damages claimed.**

### OBJECTIONS AND RESPONSE:

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiffs further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information responsive to RFPs seeking information relevant to this issue. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 7, 111, and 117.

**INTERROGATORY NO. 14:**

**For each alleged infringement of a Work In Suit that You assert in this action, if You contend that YouTube had "actual knowledge" that any material or activity using the material on the YouTube service infringed the Work In Suit within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(i) or 512(d)(1)(A), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete. Plaintiff further objects that this interrogatory is vague because it does not define "actual knowledge," overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have not to date produced information responsive to RFPs seeking information relevant to this issue. For example, Defendants have not produced information responsive to this issue that is sought, at minimum, by RFPs 28, 88, and 116. Despite these deficiencies, Plaintiff further identifies the following documents relevant to this issue: GOOG-SCHNDR-00000774–0857; SCHNEIDER_0000002682–2684, '4136, '8653, '9293, '9317–9346, '9352–9355, '9439–9482, '9659, '9665, '13447–13453, '17479–17481; GOOG-SCHNDR-00038421, GOOG-SCHNDR-00038639, GOOG-SCHNDR-00038640, GOOG-SCHNDR-00038668, GOOG-SCHNDR-00038693, GOOG-SCHNDR-00039154, GOOG-SCHNDR-00039174.

**INTERROGATORY NO. 15:**

1    **For each alleged infringement of a Work In Suit that You assert in this action, if You**

2    **contend that YouTube was aware of facts or circumstances from which the infringing activity**

3    **was apparent within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(ii) or 512(d)(1)(B), describe in**

4    **detail the basis for Your contention, including all evidence supporting Your contention.**

5    **OBJECTIONS AND RESPONSE:**

6    Plaintiff objects to this interrogatory because it is a premature contention interrogatory

7    served before discovery is complete in this case. Plaintiff further objects that the interrogatory is

8    overbroad and unduly burdensome in that it seeks "all evidence" supporting this issue. Plaintiff

9    reserves the right to supplement its response to this interrogatory after discovery has closed, before

10   the pretrial conference, or at any other time as ordered by the Court.

11   Subject to and without waiving these objections, Plaintiff responds that Defendants have not

12   to date produced information responsive to RFPs seeking information relevant to this contention.

13   For example, Defendants have not produced information responsive to this issue that is sought, at

14   minimum, by RFPs 48 50, 51, and 116. Despite these deficiencies, Plaintiff identifies the following

15   documents relevant to this issue: GOOG-SCHNDR-00000774–0857; SCHNEIDER_0000002682–

16   2684, '4136, '8653, '9293, '9317–9346, '9352–9355, '9439–9482, '9659, '9665, '13447–13453,

17   '17479–17481;   GOOG-SCHNDR-00038421,   GOOG-SCHNDR-00038639,   GOOG-SCHNDR-

18   00038640,    GOOG-SCHNDR-00038668,    GOOG-SCHNDR-00038693,    GOOG-SCHNDR-

19   00039154, GOOG-SCHNDR-00039174.

20   **INTERROGATORY NO. 16:**

21   **For each alleged infringement of a Work In Suit that You assert in this action, if You**

22   **contend that YouTube did not "respond[] expeditiously to remove, or disable access to, the**

23   **material that is claimed to be infringing or the subject of infringing activity "upon notification**

24   **by You of the alleged infringement of the Work In Suit within the meaning of 17 U.S.C. §§ 512**

25   **(c)(1)(C) or 512(d)(3), describe in detail the basis for Your contention, including all evidence**

26   **supporting Your contention.**

27   **OBJECTIONS AND RESPONSE:**

28

1    Plaintiff objects to this interrogatory because it is a premature contention interrogatory

2    served before discovery is complete in this case. Plaintiff further objects that the interrogatory is

3    overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff

4    reserves the right to supplement its response to this interrogatory after discovery has closed, before

5    the pretrial conference, or at any other time as ordered by the Court.

6    Subject to and without waiving these objections, Plaintiff responds that Defendants have not

7    to date produced information responsive to RFPs seeking information relevant to this issue. For

8    example, Defendants have not produced information responsive to this issue that is sought, at

9    minimum, by RFPs 28, 48, 51, and 116.

10   **INTERROGATORY NO. 17:**

11   **For each alleged infringement of a Work In Suit that You assert in this action, if You**

12   **contend that YouTube did not act "expeditiously to remove, or disable access to, the material"**

13   **within the meaning of 17 U.S.C. §§ 512 (c)(1)(A)(iii) or 512(d)(1)(C) upon obtaining knowledge**

14   **or awareness of the alleged infringing activity of the Work In Suit, (i.e., knowledge or**

15   **awareness as defined in 17 U.S.C. §§ 512 (c)(1)(A)(i)-(ii) or 512(d)(1)(A)-(B)), describe in detail**

16   **the basis for Your contention, including all evidence supporting Your contention.**

17   **OBJECTIONS AND RESPONSE:**

18   Plaintiff objects to this interrogatory because it is a premature contention interrogatory

19   served before discovery is complete in this case. Plaintiff further objects that the interrogatory is

20   overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff

21   reserves the right to supplement its response to this interrogatory after discovery has closed, before

22   the pretrial conference, or at any other time as ordered by the Court.

23   Subject to and without waiving these objections, Plaintiff responds that Defendants have not

24   produced information to RFPs seeking information relevant to this issue. For example, Defendants

25   have not produced information responsive to this issue that is sought, at minimum, by RFPs 24, 28,

26   48, 51, 88, and 116.

27   **INTERROGATORY NO. 18:**

28

**For each alleged infringement of a Work In Suit that You assert in this action, if You contend YouTube received a "financial benefit directly attributable to the infringing activity" and that YouTube had the "right and ability to control such activity" within the meaning of 17 U.S.C. §§ 512 (c)(1)(B) or 512(d)(2), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiff further objects that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff reserves the right to supplement its response to this interrogatory after discovery has closed, before the pretrial conference, or at any other time as ordered by the Court.

Subject to and without waiving these objections, Plaintiff responds that Defendants have refused to provide information responsive to RFPs 43, 44, and 45, which seek information directly relevant to this issue. *See* Dkt. 126 (Motion to Compel Autoplay Information). Despite these deficiencies, Plaintiff identifies the following document relevant to this issue: GOOG-SCHNDR-00043844.

**INTERROGATORY NO. 19:**

**If You contend that YouTube fails to accommodate and, instead, interferes with "standard technical measures" within the meaning of 17 U.S.C. § 512 (i)(B), describe in detail the basis for Your contention, including all evidence supporting Your contention.**

**OBJECTIONS AND RESPONSE:**

Plaintiff objects to this interrogatory because it is a premature contention interrogatory served before discovery is complete in this case. Plaintiffs further object that the interrogatory is overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff

1  reserves the right to supplement its response to this interrogatory after discovery has closed, before
2  the pretrial conference, or at any other time as ordered by the Court.

3      Subject to and without waiving these objections, Plaintiff responds that they are currently
4  negotiating the RFPs relevant to information concerning this issue, though Defendants have refused
5  to produce relevant information sought under, for example, RFPs 81, 83, 84, and 98. Plaintiff further
6  identifies the following documents relevant to this issue: GOOG-SCHNDR-00039095 and GOOG-
7  SCHNDR-00000924.

8  **INTERROGATORY NO. 20:**

9      **If You contend that YouTube knew or had "reasonable grounds to know" that its**
10 **alleged actions with regard to CMI would "induce, enable, facilitate, or conceal an**
11 **infringement of any right" within the meaning of 17 U.S.C. § 1202(b), describe in detail the**
12 **basis for Your contention, including all evidence supporting Your contention.**

13 **OBJECTIONS AND RESPONSE:**

14     Plaintiff objects to this interrogatory because it is a premature contention interrogatory
15 served before discovery is complete in this case. Plaintiff further objects that the interrogatory is
16 overbroad and unduly burdensome in that it seeks "all evidence" supporting this contention. Plaintiff
17 reserves the right to supplement its response to this interrogatory after discovery has closed, before
18 the pretrial conference, or at any other time as ordered by the Court.

19     Subject to and without waiving these objections, Plaintiff responds that the parties are
20 negotiating responses to RFPs relevant to information concerning this issue, including, for example,
21 RFPs 95, 96, 99, 100, and 101.

22 **INTERROGATORY NO. 21:**

23     **Identify all YouTube user accounts or Google user accounts that You or Your agents**
24 **have used while accessing YouTube, including by providing for each account: the name of the**
25 **individual who registered the account, any email address associated with the account, and the**
26 **account name.**

27

28

**OBJECTIONS AND RESPONSE:**

Plaintiff objects that this interrogatory is overbroad and unduly burdensome in that it asks for all YouTube user accounts by Plaintiff and Plaintiff's agents to access YouTube regardless of whether the Plaintiff or Plaintiff's agents used those accounts solely for personal or private purposes unrelated to the management of the Works in Suit in ways that are entirely irrelevant to any claims or defenses in this lawsuit. Plaintiff further objects that this interrogatory is cumulative and vexatious because the information was produced in response to AST RFPs 14, 21, and 52.

Subject to and without waiving these objections, Plaintiff responds that it and its agents have used the following YouTube accounts: AST, astizdatelstvo@gmail.com, https://www.youtube.com/c/AstIzdatelstvo/; АЗАПИ (AZAPI), antipiracy@azapi.ru, https://www.youtube.com/channel/UCHa9oObsWWYeSgYq3C_iy1Q/; and ЛитРес (Litres), partners@litres.ru, https://www.youtube.com/c/LitResAudio/.

**VERIFICATION**

*Maxim Lozovskiy* has read the foregoing responses to Plaintiff's Interrogatories, and the answers contained therein are true to the best of her knowledge, information, and belief.

Signed: _____

Dated: ___01. 06. 2022___

1 | Dated: May 31, 2022

Respectfully submitted,

/s/ Ryan Z Cortazar
George A. Zelcs (*pro hac vice*)
Randall P. Ewing, Jr. (*pro hac vice*)
Ryan Z. Cortazar (*pro hac vice*)
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
Steven M. Berezney, CA Bar #329923
Michael E. Klenov, CA Bar #277028
Carol O'Keefe (*pro hac vice*)
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
Joanna C. Wright (*pro hac vice*)
Demetri Blaisdell (*pro hac vice*)
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd.*

1

## <u>CERTIFICATE OF SERVICE</u>

2

3   I hereby certify that on May 31, 2022, I caused the foregoing Plaintiff AST Publishing
LTD's Objections and Responses to YouTube and Google's Second set of
Interrogatories to Plaintiff AST Publishing LTD to be served on all opposing counsel
of record by  email at the  addresses listed below:

4

5   Schneidervyoutube@wsgr.com

6

7                                                      _/s/ Ryan Z. Cortazar_____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1G

| From: | O'Keefe, Carol <COKeefe@KoreinTillery.com> |
|---|---|
| Sent: | Tuesday, April 25, 2023 1:20 PM |
| To: | Julia L. Allen; Robert Van Nest; Travis Silva; Jazz; 'WSGR - schneidervyoutube' |
| Cc: | KTYouTube; 'BSFYouTube' |
| Subject: | Schneider v YouTube: follow-up |

**[EXTERNAL]**

Counsel,

This email responds to the issues raised during the parties' pretrial meet and confer on April 24, 2023.

First, Plaintiffs withdraw Rasty Turek from their draft witness list.

Second, Plaintiffs confirm that they will not offer actual damages testimony quantifying either a diminution in value for Plaintiffs' works or lost licensing fees for Plaintiffs' works. Plaintiffs will, however, testify generally concerning the fact of diminution in value and lost sales or licenses.

Third, you requested a quantification of the damages figure Dr. Singer would testify to at trial in the event a class is not certified. In the event a class is not certified, the individual plaintiffs' actual revenue figures can be derived from the figures in Dr. Singer's report and supporting papers, where the Damages Per Video figure is derived by dividing Damages by the number of Infringing Videos.

| | |
|---|---|
| Damages | $910,110,380 |
| Infringing Videos | 39,675,944 |
| Damages Per Video | $22.94 |

We believe that resolves your outstanding requests from yesterday's meet and confer.

Thanks,

Carol


Carol O'Keefe
**Korein Tillery**
505 North 7th Street
Suite 3600
St. Louis, Missouri 63101
314-241-4844

----------------------------
This message is from a law firm and may contain privileged or confidential information for the sole use of the intended recipient(s). If you believe that you have received this email in error, please notify the sender immediately and delete it from your system. If you have received this email in error, you do not have permission to forward, print, copy or distribute or use the information in this message.
----------------------------

# Exhibit 1H

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

1           HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
2                   UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF CALIFORNIA
3

      MARIA SCHNEIDER, UNIGLOBE   :
4     ENTERTAINMENT, LLC, and     :  CASE NO.
      AST PUBLISHING LTD          :  3:20-cv-04423-JD
5     individually and on         :
      behalf of all others        :
6     similarly situated; et      :
      al.,                        :
7              Plaintiffs,        :
                                  :
8              v.                 :
                                  :
9     YOUTUBE, LLC and GOOGLE      :
      LLC,                        :
10             Defendants.        :
      ------------------------    :
11

12                  VIDEOTAPE DEPOSITION OF:
13                   HAL J. SINGER, Ph.D.
14                   NEW YORK, NEW YORK
15                  FRIDAY, JANUARY 13, 2023
16
17
18
19
20
21
22
23
24    REPORTED BY:
      SILVIA P. WAGE, CCR, CRR, RPR
25    JOB NO. 5647971

                                            Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
 2     the amount of damages for the CMI classes; is      17:14:51
 3     that right?                                         17:14:54
 4          A.  I think that's fair.  I mean, I could      17:14:55
 5     be asked some at some point to weigh in on that,    17:14:57
 6     but I haven't been asked to date.                   17:15:01
 7          Q.  Because at one point you mentioned         17:15:03
 8     the amount of profits that Defendants earned as a   17:15:05
 9     result of the challenged conduct, who may be        17:15:08
10     relevant to the question of statutory damages.      17:15:11
11          But you don't offer an opinion                 17:15:14
12     regarding the amount of profits that Defendants     17:15:16
13     earned as a result of allegedly improper CMI        17:15:18
14     removal, right?                                     17:15:22
15          A.  I think it's fair that my damage           17:15:24
16     model that is set up here all -- is driven by       17:15:27
17     takedowns.  So I'm not speaking to the damages of   17:15:31
18     the CMI class.                                      17:15:34
19          Q.  In your report, do you calculate any       17:16:00
20     damages specific to the named Plaintiffs?           17:16:04
21          A.  I do not.  I've given a methodology        17:16:09
22     to get to the aggregate damages.  But if the        17:16:11
23     named Plaintiffs step forward, I could apply one    17:16:14
24     of my proposed allocation methods to assign to      17:16:19
25     her -- her pro rata share of the total pot of       17:16:24
```

Page 249

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
1          HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
2     damages.                                        17:16:27
3          Q.  And you've not opined in your report   17:16:40
4     currently on whether any of the Plaintiffs in   17:16:43
5     this case have suffered any lost sales of their 17:16:47
6     works as a result of the alleged infringement,  17:16:51
7     have you?                                        17:16:54
8          A.  I have not opined on that.             17:16:55
9          Q.  You have not opined on whether any of  17:16:57
10    the Plaintiffs in this case have suffered any   17:17:00
11    other lost profits as a result of YouTube's     17:17:03
12    alleged infringement, correct?                  17:17:06
13         A.  I think it's fair that I'm not         17:17:08
14    looking at it from the perspective of the       17:17:10
15    Plaintiffs' losses.  I'm looking at it from the 17:17:11
16    perspective of the ill-gotten gains by YouTube. 17:17:14
17         Q.  And you have not offered any opinions  17:17:18
18    regarding YouTube's subscription revenues,      17:17:23
19    correct?                                         17:17:26
20         A.  Correct.                               17:17:29
21         Q.  And you have a background section      17:17:34
22    addressing sort of an overview of YouTube, but  17:17:36
23    you're not an expert on how YouTube works or    17:17:40
24    operates, right?                                 17:17:43
25         A.  Correct.  I wouldn't hold myself out   17:17:43
```

Page 250

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

```
 1        C E R T I F I C A T E   O F   R E P O R T E R

 2          I, SILVIA P. WAGE, a Certified Shorthand

 3      Reporter, Certified Realtime Reporter and Registered

 4      Reporter, herby certify that the witness in the

 5      foregoing deposition was by me duly sworn to tell

 6      the truth, the whole truth, and nothing but the

 7      truth in the within-entitled cause; that said

 8      deposition was taken down in shorthand by me, a

 9      disinterested person, at the time and place

10      therein stated, and that the testimony of the

11      said witness was thereafter reduced to typewriting,

12      by computer, under my direction and supervision;

13      that before completion of the deposition, review

14      of the transcript [ ] was [X] was not requested.

15      If requested, any changes made by the deponent

16      (and provided to the reporter) during the period

17      allowed are appended hereto.

18          I further certify that I am not of counsel

19      or attorney for either or any of the parties to

20      the said deposition, nor in any way interested in

21      the event of this cause, and that I am not

22      related to any of the parties thereto.

23      Dated: 1/19/23

24

25      License No. 30X1001827
```

Page 291

# Exhibit 2A

1

2  UNITED STATES DISTRICT COURT

3  NORTHERN DISTRICT OF CALIFORNIA

4  SAN FRANCISCO DIVISION

5  ------------------------------------x

6  MARIA SCHNEIDER, UNIGLOBE

   ENTERTAINMENT, LLC and AST

7  PUBLISHING LTD., individually and

   on behalf of all others similarly

8  situated,

9                          Plaintiffs,

10 -against-          Case No. 3:20-cv-4423

11 YOUTUBE, LLC; and GOOGLE LLC,

12                         Defendants.

13 ------------------------------------x

14

15     REMOTE VIDEOTAPED DEPOSITION OF

               MARIA SCHNEIDER

16          New York, New York

               June 14, 2022

17

18

19 Reported By:

20 ERIC J. FINZ

21

22

23

24

25

                              Page 1

```
 1
 2                    June 14, 2022
                      9:32 a.m.
 3
 4        Videotaped Deposition of MARIA
 5   SCHNEIDER, taken by Defendants, pursuant
 6   to Notice, at the offices of Wilson
 7   Sonsini Goodrich & Rosati, 1301 Avenue of
 8   the Americas, New York, New York, before
 9   ERIC J. FINZ, a Shorthand Reporter and
10   Notary Public within and for the State of
11   New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page  2

```
 1
 2   A P P E A R A N C E S: (All Via Remote)
 3   KOREIN TILLERY LLC
     Attorneys for Plaintiffs
 4        205 North Michigan
          Chicago, Illinois 60601
 5
     BY:  GEORGE Z. ZELCS, ESQ.
 6        gzelcs@koreintillery.com
 7              -AND-
 8   BOIES SCHILLER & FLEXNER LLP
          55 Hudson Yards
 9        New York, New York 10001
10   BY:  PHILIP C. KOROLOGOS, ESQ.
          pkorologos@bsfllp.com
11
12
     WILSON SONSINI GOODRICH & ROSATI
13   Attorneys for Defendants
          650 Page Mill Road
14        Palo Alto, California 94304
15   BY:  MAURA L. REES, ESQ.
          mrees@wsgr.com
16        ANDREW KRAMER, ESQ.
          akramer@wsgr.com
17
18
19
20   ALSO PRESENT:
21        THOMAS DEVINE, Videographer
22
23
24
25
```

                                              Page 3

```
 1              MARIA SCHNEIDER
 2      Q.    Do you believe YouTube is a        09:54:05
 3  big evil doer?                               09:54:06
 4      A.     I think YouTube has done many     09:54:09
 5  things, and the site is a site that has     09:54:14
 6  destroyed the music marketplace for         09:54:21
 7  people like myself.  And so, I mean, I      09:54:25
 8  don't know exactly what an evil doer is.    09:54:36
 9  But YouTube is a place where bad things     09:54:39
10  are done to musicians.                      09:54:46
11      Q.    Do you believe YouTube is          09:54:49
12  evil?                                       09:54:51
13      A.    I don't really know the           09:54:53
14  definition of "evil."  It depends how you   09:54:55
15  define "evil."                              09:55:00
16      Q.    You've compared YouTube to a       09:55:03
17  molester.  Haven't you?                     09:55:05
18      A.    I don't know.  I'd have to see     09:55:09
19  the context of that.                        09:55:10
20          MS. REES:  I'd like to mark          09:55:22
21      this document as SCHNEIDER Exhibit       09:55:23
22      2.                                       09:55:25
23          (Schneider Exhibit 2 for             09:55:25
24      identification, email dated July 7,      09:55:25
25      2016, production numbers SCHNEIDER       09:55:25
```

Page 21

| | |
|---|---|
| 1 | MARIA SCHNEIDER |
| 2 | A.    No.  I didn't compare YouTube | 09:59:14 |
| 3 | to a molester. | 09:59:25 |
| 4 | Q.    So what were you saying about | 09:59:28 |
| 5 | molestation in this email? | 09:59:29 |
| 6 | MR. ZELCS:   Objection; form. | 09:59:32 |
| 7 | A.    What I was saying is that when | 09:59:34 |
| 8 | a marketplace puts you in a position or | 09:59:39 |
| 9 | puts the music industry in a position of | 09:59:41 |
| 10 | desperation, where they monetize their | 09:59:45 |
| 11 | music for a price they can't set, they | 09:59:51 |
| 12 | can't make enough to pay for the records, | 09:59:56 |
| 13 | and the situation is putting them in a | 10:00:01 |
| 14 | place of being harmed.  And somehow | 10:00:08 |
| 15 | calling that an effective business model, | 10:00:17 |
| 16 | I said that's like accepting money from | 10:00:21 |
| 17 | molestation when you have no choice but | 10:00:23 |
| 18 | to be molested and calling it a business | 10:00:25 |
| 19 | transaction.  Which is exactly what I | 10:00:29 |
| 20 | just read, what I wrote here. | 10:00:30 |
| 21 | Q.    You've written a paper in | 10:00:33 |
| 22 | which you say that you believe YouTube is | 10:00:41 |
| 23 | guilty of racketeering.  Is that right? | 10:00:43 |
| 24 | A.    I'd have to see the document | 10:00:47 |
| 25 | and exactly what I said. | 10:00:49 |

Page 24

MARIA SCHNEIDER

1

2    part yet.                                    10:04:15

3        Q.    Again, my question is simply       10:10:55

4    whether at the bottom of page 10379, you     10:10:57

5    said of YouTube, "they're not only evil,     10:11:00

6    they're sick."                               10:11:03

7            Is that something you said in        10:11:04

8    this paper?                                  10:11:05

9        A.    I'm almost there.  Just a          10:11:06

10   minute.                                      10:11:08

11           Okay.  I've read up to that          10:13:16

12   point.                                       10:13:18

13           MR. ZELCS:  Could you just           10:13:20

14      restate the question, please?             10:13:22

15       Q.    My question is whether at the      10:13:24

16   bottom of page 10379, you said of            10:13:27

17   YouTube, "They're not only evil, they're     10:13:30

18   sick"?                                       10:13:33

19       A.    Yes, I was describing my           10:13:34

20   analogy to Munchausen by proxy, which is     10:13:37

21   an illness where somebody inflicts a, you    10:13:42

22   know, a physical crisis on somebody, and     10:13:54

23   then swoops in to somehow look like they     10:13:58

24   saved them.  And so I laid out a long        10:14:01

25   analogy here where I drew the conclusion     10:14:04

Page 27

|   |   |   |
|---|---|---|
| 1 | MARIA SCHNEIDER | |
| 2 | that there was an analogy to be drawn | 10:14:13 |
| 3 | between what's happened on YouTube over | 10:14:18 |
| 4 | the years since the purchase from Google, | 10:14:19 |
| 5 | to Munchausen by proxy. | 10:14:26 |
| 6 | Q.    You've written a paper called | 10:14:31 |
| 7 | "what do whorehouses, meth labs and | 10:14:33 |
| 8 | YouTube have in common;" haven't you? | 10:14:36 |
| 9 | A.    Yes. | 10:14:40 |
| 10 | Q.    You believe that YouTube | 10:14:55 |
| 11 | controls the media? | 10:14:56 |
| 12 | A.    I don't know what that | 10:14:59 |
| 13 | question means, controls the media. | 10:15:02 |
| 14 | That's a broad statement, so I don't know | 10:15:04 |
| 15 | what that means. | 10:15:06 |
| 16 | Q.    You've written that before, | 10:15:06 |
| 17 | that YouTube controls the media? | 10:15:10 |
| 18 | A.    I don't know. | 10:15:12 |
| 19 | Q.    Sitting here, do you believe | 10:15:13 |
| 20 | that YouTube controls the media? | 10:15:45 |
| 21 | A.    I don't understand what that | 10:15:47 |
| 22 | question means in the context, controls | 10:15:48 |
| 23 | the media.  Media is -- there is print | 10:15:53 |
| 24 | media, there is news media, there is | 10:15:57 |
| 25 | content media.  I don't know what you're | 10:16:01 |

Page 28

```
 1                    MARIA SCHNEIDER
 2        A.    I have to go back to see which      10:41:36
 3    things led up to this, how far back do I      10:41:43
 4    go, which aspects we're talking about         10:41:47
 5    here.                                          10:41:50
 6              Should I read this whole            10:41:58
 7    thing?                                         10:42:00
 8        Q.    Well, sitting here, do you          10:42:00
 9    have any understanding of any irreparable     10:42:03
10    injury that you suffered based on the         10:42:05
11    claims that are alleged in this               10:42:07
12    complaint?                                     10:42:09
13              MR. ZELCS:  Objection; form.        10:42:09
14        A.    Ask -- please ask the question      10:42:12
15    again.                                         10:42:14
16        Q.    Yeah.  Sitting here, do you         10:42:14
17    have any understanding of any irreparable     10:42:17
18    injury that you have suffered due to the      10:42:19
19    claims that you are alleging against          10:42:24
20    YouTube in the complaint?                     10:42:26
21              MR. ZELCS:  Same objection,         10:42:28
22        form.                                      10:42:30
23        A.    Ask it one more time, please.       10:42:31
24    Do I have any?  Say it one more time.         10:42:34
25        Q.    Sitting here today, do you          10:42:37
```

Page 47

1              MARIA SCHNEIDER

2    have any understanding of any irreparable      10:42:39

3    injury that you have suffered as a result      10:42:42

4    of the claims that you are asserting           10:42:44

5    against YouTube in this case?                   10:42:47

6              MR. ZELCS:   Objection; form.         10:42:48

7         A.     The injury that I and creators      10:42:51

8    have suffered is the destruction of the        10:43:01

9    free marketplace for music, the devaluing      10:43:07

10   of music.   The -- yeah.                        10:43:11

11        Q.     Okay.                               10:43:26

12        A.     There is -- I mean, that's          10:43:30

13   just for starters.                              10:43:33

14        Q.     Are there other items of            10:43:36

15   irreparable injury that you're aware of?        10:43:38

16        A.     I just -- I don't know -- I'd       10:43:41

17   have to go through and know exactly in          10:43:43

18   what we're talking about, which aspects.        10:43:46

19   But yeah, I would say the overarching           10:43:50

20   thing is the destruction of the free           10:43:52

21   market for music.                               10:43:54

22        Q.     And when you say "the               10:44:04

23   destruction of the free market for             10:44:06

24   music," what are you referring to?             10:44:08

25        A.     That it's very difficult to         10:44:10

Page 48

```
 1                  MARIA SCHNEIDER
 2   from Modern Works.  Is that right?        14:37:08
 3        A.    Yes.                           14:37:10
 4        Q.    So if you look at the page     14:37:10
 5   where the Bates number ends in 575.  In   14:37:17
 6   the bottom right corner of the document.  14:37:23
 7   It's 43575.                               14:37:25
 8             Do you see that page?           14:37:29
 9        A.    Yes, I do.                      14:37:30
10        Q.    The top of the page, there is  14:37:31
11   a heading that says "Hang Gliding,        14:37:33
12   Schneider."  And then below that, a       14:37:36
13   couple of entries down, it says           14:37:39
14   "YouTube."  And then below that it has    14:37:42
15   four entries that say "sync."  And then   14:37:44
16   amount payable and amount due.            14:37:49
17             Do you recognize this as        14:37:52
18   royalties that Modern Works paid to you   14:37:56
19   from monetizing your works on YouTube?    14:37:59
20        A.    I don't -- I don't know        14:38:02
21   specifically, but it appears to be that.  14:38:06
22             Now, in retrospect, knowing     14:38:09
23   everything that I know now and that we    14:38:12
24   are discussing here today, I make that    14:38:15
25   connection.                               14:38:17
```

Page 154

```
 1                MARIA SCHNEIDER

 2           MR. ZELCS:  Is that -- I'm        14:49:47

 3      sorry.  Form.  Objection; form.        14:49:48

 4           A.    Through a third-party they  14:49:52

 5      can.  Yeah, I mean --  I don't understand  14:49:56

 6      the question.  Please ask again.       14:50:02

 7           Q.    Whether directly or through a  14:50:04

 8      third-party, Modern Works could claim  14:50:07

 9      your compositions on Content ID on your  14:50:09

10      behalf.                                14:50:12

11           A.    Yes.  And I said I didn't want  14:50:15

12      that to happen.                        14:50:17

13               THE WITNESS:  I might have to  14:50:41

14      use a bathroom break.                  14:50:42

15               MS. REES:  Sure.              14:50:44

16               THE WITNESS:  Five minutes.   14:50:45

17               THE VIDEOGRAPHER:  Thank you. 14:50:47

18      The time is approximately 2:51, we     14:50:48

19      are going off the record.  This is     14:50:50

20      the end of media 3.                    14:50:51

21               (A recess was taken.)         14:50:57

22               THE VIDEOGRAPHER:  The time is 14:58:10

23      approximately 2:59, we're back on      14:58:12

24      the record.  This is the beginning     14:58:15

25      of media 5.                            14:58:17
```

Page 163

```
 1              MARIA SCHNEIDER
 2            So my first question is, do      15:31:31
 3     you recognize Exhibit 38 and what is it?  15:31:33
 4        A.    This -- the Copyright Office    15:31:36
 5     was accepting, you know, public comments  15:31:40
 6     on a study they were doing on Section    15:31:45
 7     512.                                      15:31:49
 8        Q.    And you considered yourself     15:31:51
 9     qualified to submit a comment about      15:31:53
10     YouTube's Content ID system?             15:31:55
11        A.    Yeah, I felt I was qualified    15:31:59
12     to speak on behalf of creators who can't 15:32:02
13     effectively control what's being put on  15:32:10
14     YouTube.                                  15:32:13
15        Q.    So the paragraph in the middle  15:32:13
16     of the page that ends in Bates number 834 15:32:17
17     says, you wrote, "Independent musicians   15:32:21
18     who own their own copyrights and have not 15:32:26
19     signed deals with labels/publishers       15:32:29
20     connected to Content ID, are in desperate 15:32:32
21     need of the Content ID lifeline.  But     15:32:32
22     rather than throw us the line they have   15:32:37
23     in hand, YouTube treats Content ID like   15:32:37
24     an exclusive country club, prohibiting    15:32:40
25     copyright owners like myself from using   15:32:42
```

Page 180

```
 1               MARIA SCHNEIDER

 2           C E R T I F I C A T E

 3    STATE OF NEW YORK    )

                             : ss.

 4    COUNTY OF NEW YORK   )

 5

 6        I, ERIC J. FINZ, a Shorthand

 7    Reporter and Notary Public within and for

 8    the State of New York, do hereby certify:

 9        That MARIA SCHNEIDER, the witness

10    whose deposition is hereinbefore set

11    forth, was duly sworn by me and that such

12    deposition is a true record of the

13    testimony given by the witness.

14        I further certify that I am not

15    related to any of the parties to this

16    action by blood or marriage, and that I

17    am in no way interested in the outcome of

18    this matter.

19        IN WITNESS WHEREOF, I have hereunto

20    set my hand this 21st day of June, 2022.

21

22

23

24          ERIC J. FINZ

25
```

Page 262

# Exhibit 2B

Comments Submitted by Maria Schneider for Section 512 Study:

Ms. Karyn Temple Claggett
Register of Copyrights
The United States Copyright Office
The Library of Congress
Washington, DC

DEPOSITION EXHIBIT
Schneider 38
6 1/4/20 22
ERIC J. FINZ

February 19th, 2017

Dear Register Temple Claggett:

The U.S Copyright Office has requested additional comments in a number of different areas. Rather than addressing each area, I would like to focus my additional comments on one specific issue that came up repeatedly during the comments and roundtables: Access to Content ID.

Specifically, I am commenting on Mr. Fred von Lohmann's testimony pertaining to YouTube's policy of preventing the vast majority of copyright owners from using Content ID for the express purpose of "blocking" illegal uploads of their work. Set forth below is my analysis of how and why YouTube is acting in an unacceptable manner, and why the use of its Content ID technology simply to block unauthorized uploads of full tracks or full albums should be considered a "standard technical measure" under the DMCA. I also comment on how YouTube's policies and business strategies, to which Mr. von Lohmann testified, negatively impact important segments of our music and arts community, and our nation's culture.

**A. The Core Issue with the DMCA**: When you boil down the issues related to the internet's impact on music *under the DMCA*, much of it comes down to four simple points:

1. YouTube is the elephant in the room, because YouTube allows, facilitates, and encourages millions of users to upload incalculable amounts of unauthorized content every day for a worldwide audience that gets it for free;

2. The very existence of YouTube as a free music platform severely depresses the prices music creators can get on other platforms. YouTube kills pricing for companies or individuals that don't want to succumb to *using unauthorized uploads* as the backbone for their business model;

3. If YouTube was required to give the average musician/copyright-holder access to Content ID for the specific purpose of *blocking unauthorized uploads of full tracks or albums* (as a "standard technical measure"), YouTube could potentially lose a lot of revenue that it reaps from unauthorized content, and/ or lose their status as "the go-to place" to find just about every last piece of music on earth;

4. Therefore, YouTube has a vested interest in trying to stop Content ID from being considered a "standard technical measure" for protecting full tracks or albums from unauthorized uploading.

Content ID is actually the exact type of technology Congress expected would qualify under the law as a "standard technical measure." With section 512(i), Congress expected that a "Standard Technical

Measure" like Content ID would be required under the law to be made available to all content creators and copyright owners "on a non-discriminatory basis." As I point out in detail below, this is expressly stated in the law and the legislative history.

**B.  Content ID is Definitely a "Standard Technical Measure."**  An innovative American company, Audible Magic, created Content ID for the purpose of stopping piracy, and it's been met with great commercial success.  Unfortunately, YouTube has used:  1. Audible Magic's *technology*; 2. <u>Audible Magic's brand name of "Content ID</u>;" and 3. Audible Magic's *intellectual property* — as means to do the exact opposite of what Congress (and Audible Magic) had intended.  That is, instead of allowing copyright owners to use it to block piracy, YouTube is leveraging that standard technology to turn infringement into a money-maker, first and foremost, for YouTube.  And at the same time, YouTube is denying the majority of small musician/copyright owners access to the technology, *if* their wish is to "block" their copyrighted full-track or album property from illegal uploading.  Not every musician wants to take part in YouTube's self-serving scheme of monetizing infringement.

Independent musicians who own their own copyrights and have not signed deals with labels/publishers connected to Content ID, are in desperate need of the Content ID lifeline.  But rather than throw us the line they have in hand, YouTube treats Content ID like an exclusive country club, prohibiting copyright owners like myself, from using Content ID to block illegal uploads of our work.  The YouTube Content ID system leaves the small guy out in the cold.  And if I then use draconian DMCA measures available to remove illegal uploads of my work, YouTube then shames and stigmatizes me, by publicly "outing" me as the person who took down an upload.  They even write, "Sorry," outright apologizing to their users.  These practices prevent many rights-holders, including myself, from filing takedown notices at all.  And as discussed at length previously, the current "whack-a-mole" takedown procedures are anemic at best.

Here's why Content ID is an STM:  Content ID is essentially a digital fingerprinting technology with the following three characteristics:

> 1. It is a technology pioneered by one company, namely Audible Magic.

> 2. The technology was licensed and adapted over a period of years by a large number of major corporations (and licensed even by YouTube itself in 2006); and

> 3. It has slowly become an industry standard technology for blocking illegal uploads.

YouTube tries hard to describe its Content ID system as an expensive, custom software system, but there is no question that the main backbone of the technology, and the basic concept of digital fingerprinting and "Content ID," is essentially the same basic technology originated by and developed by the company Audible Magic.  It's a technology now being used by numerous major companies throughout the world.  The fact that YouTube has now tacked on its own capabilities for "monetization" does not change the fact that the basic "digital fingerprint" backbone to this technology is a "standard technical measure" developed by Audible Magic already back in 1999.  That technology has now been adopted by just about everyone else who has a need or vested interest in the technology.  The "expensive part" that YouTube boasts about having invested in, is not the basic blocking technology, but rather the bells and whistles

Confidential

YouTube tacked onto Content ID for *monetization purposes,* a tool that reaps billions for themselves first and foremost.

YouTube knows that if basic digital fingerprinting (for which Audible Magic coined the phrase, "Content ID") is found to be a "standard technical measure" under the DMCA, YouTube will be required under the law to give all content creators access to it on a "non-discriminatory basis" for the purpose of blocking uploads.  But right now, YouTube only makes it available on a highly selective and subjective basis, pursuant to secret terms, which are skewed to those who monetize with it.  But by tacking on a few bells and whistles (even expensive ones), YouTube can't avoid the intent of Congress — that any basic anti-piracy technology everyone else uses, cannot be withheld from the majority of copyright owners on a discriminatory basis if that company hopes to benefit from the safe harbor.  To allow YouTube to avoid STM status for its basic blocking technology because it has added bells and whistles is like saying, "well, we know we're required to give antibiotics to all infected people, but our antibiotics don't fit the technical definition of "antibiotics," because we bundle them in a package with a thermometer, some lozenges, and a special cup."  That semantics shell game won't work.  Regardless of how YouTube bundles and packages its basic Content ID blocking technology, it's in there, and it's a basic standard technical measure to fingerprint and block the illegal uploading of content.  YouTube's denial of offering Audible Magic's basic technology to rights-holders like me is, in my view, unethical and unlawful.

**C.  We Don't Need to Have a "Multi-Industry Standards Process" for there to be an STM**.  YouTube hides behind the language in the DMCA, stating that a "standard technical measure" (or STM) can be the result of a "multi-industry standards process."  Of course, YouTube knows well that this particular industry will never be able to agree on such an outcome, since it is comprised of market segments like ISPs, content creators, and worldwide digital publishers (like YouTube) that have diametrically opposed interests.  Even getting the "industry" to the table, let alone in agreement, is difficult.  So YouTube goes to bed at night with the comfort of knowing there will never be a "multiple industry standards process."  And in fact, 20 years after the passage of the DMCA, there hasn't been any attempt at a "standards process" to come up with an STM, and there won't be.

But, as much as companies like YouTube might cling to this little phrase ("standards process") from the DMCA, the legislative history of the DMCA actually makes it crystal clear that Content ID, and digital fingerprinting technologies like Content ID, are in fact an STM.  Senator Patrick Leahy, who wrote the definitive report from the judiciary committee on the DMCA, stated in plain English that an STM <u>does not</u> have to be the result of an actual formal "standards process."  That report states that an STM can result simply from an "ad hoc" evolution of a technology within an industry.  The legislative history specifically described how a technology developed solely by one company, and then slowly adapted by many others, can qualify as an STM.  The legislative history even gave one example of such an <u>ad hoc</u> technology in 1998 that was held out by the Judiciary Committee as a great example of such an STM.  That technology, known as CSS, was originally developed in a fashion very similar to Content ID.  There was no "standards process" involved in its development.  CSS was developed by Matsushita to combat piracy.  The characteristics of CSS are as follows:

>  1. Like Audible Magic and Content ID, it is a technology pioneered by one company, namely Matsushita, to combat piracy.

2. Like Audible Magic and Content ID, the CSS technology was licensed and adapted by Matsushita over a period of years to a very large number of major corporations, first to Toshiba, and then to the other major companies like Sony, Panasonic, IBM, Time Warner, Disney, etc.

3. Like Audible Magic and Content ID, CSS slowly became an industry standard technology for combatting piracy.

It's an exact parallel to Content ID. And I must point out that it is not just me who is suddenly making an argument that basic digital fingerprinting (e.g., YouTube's Content ID) is an STM. I'm not just a crazy jazz musician out of her league in suggesting this. In fact, legal scholars have asserted this long ago. For instance, Lauren G. Gallo, in an article in the *Columbia Journal of Law & the Arts* in 2010, even before digital fingerprinting had taken a hold of the industry like it has in the past five years, set forth a very clear case that indeed, that Content ID is an STM. 34 *Columbia J. L. & Arts* 283 (2010 – 2011). And it is noteworthy that Ms. Gallo, thanked none other than Fred von Lohmann himself in her acknowledgments for his "helpful feedback and suggestions." This was obviously before Fred von Lohmann was employed by Google as legal director for copyright. Ms. Gallo also thanked Professor Jane Ginsburg, one of the foremost copyright scholars in the world, for her suggestions. Thus, don't take it just from me, take it from the legal authorities who have pointed out that digital fingerprinting is clearly an STM.

Based on the foregoing, I urge the Copyright Office to consider making a finding in its report as follows: the widespread adaptation of basic digital fingerprinting technology, which was initially developed by Audible Magic, and has now been licensed and adopted in some form by just about every major company (including YouTube, Facebook, SoundCloud, Veoh, Vimeo, Viacom, DailyMotion, AOL, etc.) has evolved to the level of an STM under the DMCA. And although certain enhancements to that technology (e.g., YouTube's monetization dashboard and functions) might not yet be so standard, the basic capability of identifying and blocking unauthorized uploads is in fact, standard. Adding bells and whistles to the basic backbone of the technology does not somehow protect that backbone from being considered an STM.

I also urge the Copyright Office to report to Congress that digital fingerprinting has achieved the status of a "standard technical measure," and that such a finding should be reflected in any legislation to update copyright laws. Recognition by Congress and/or the courts of that one simple fact would do a considerable amount to bring balance to the rights of musicians and creators. It would help keep piracy on platforms like YouTube in check, and would allow for a more open and fair marketplace where it is more likely musicians and creators can receive the fair market value of their creative works. I urge the Copyright Office to take a leadership role in recommending and endorsing such a finding.

Such a finding would provide an immediate and powerful remedy for the majority of complaints lodged by content creators with regard to the ineffectiveness and inefficiencies of the DMCA. It would immediately balance the power of major corporations with the rights of the small content creator like me. It would greatly reduce the whack-a-mole problem that plagues the industry, especially for small and independent artists. It would also greatly reduce the huge number of takedown requests companies like YouTube are forced to process. And when applied to full length tracks and album uploads (which is the main issue), it would invoke not a single fair use case.

Confidential

Without such a finding, simply by packaging a basic technology with other features or functionalities, YouTube is permitted to avoid any finding of an STM. That's obviously not what Congress intended, and that's obviously not fair.

**D. Google Has No Real Argument that Content ID is not an STM.**

Of course, YouTube will fight tooth and nail to prevent Content ID from being categorized as an STM, as that might put dollars and control back in the hands of the individual and small content creators, who are currently being fleeced.

When Google's main copyright counsel, Fred von Lohmann, was asked about Content ID at the roundtable hearings, he gave testimony to the Copyright Office that I found to be wrong and highly prejudicial to small copyright owners. I am compelled to comment on that to correct the record.

In particular, when Mr. von Lohmann was asked why YouTube denies most people access to Content ID, he simply stated that Content ID was:

> *"a highly complex system . . . a very powerful system. . . and I think a small rights holder who doesn't want to spend hundreds of hours becoming expert, both in the legal question, and in the functioning of the system, it doesn't really make sense in that context. [It's] not well suited for everybody."*

Transcript, pp. 83-85. He also stated that YouTube makes its own subjective, non-transparent assessment of whether it believes it is reasonable for a particular copyright owner to have access to Content ID. Part of this determination, Mr. von Lohmann says, is whether YouTube believes the musician *"has a sophisticated understanding of the legal concepts."* Transcript, pp. 85-87.

This testimony from Mr. von Lohmann is offensive, misleading, and wrong for at least 4 reasons:

1. **Many of us want to "block" uploads, not "monetize infringement."** The folks at YouTube, always steer the conversation away from the *blocking* part of Content ID to the *monetizing* part of Content ID. I have talked with various people who work with Content ID, and I have been assured that the Content ID system *for blocking* is not complex at all. Only because YouTube's "dashboard" includes *monetization,* does it get tricky when you have various rights-holders, etc. I've been told that that monetization part can be quite complex, yes. But, on the other hand, the people I've talked to were working for companies that are handling the digital rights of *huge* catalogues from *many many* record companies. They are juggling a veritable sea of rights-holders, and are largely "monetizing" those catalogues. However, these people I've talked to say, for *"blocking"* uploads of full tracks or full albums, using Content ID is very straight forward — and that loading the music into the system is also easy. Only because YouTube has buried the basic and original *blocking function* into the dashboard for monetization, does the whole system become tricky.

SCHNEIDER_0000031837

But there's not a whole lot to get confused about when it comes to "blocking" with Content ID. It doesn't require *"a sophisticated understanding of legal concepts"* to know that when you pay for a record, compose the music, and own that record, and discover it suddenly uploaded to YouTube or anyplace at all, that it's illegal. Even a songwriter, who is a co-writer among many — unless he or she has granted permission, he or she has the right to block an upload. So those rights, while sometimes complex for monetization, are not complicated at all for *blocking*, where a single rights-holder has the right to block or remove something for which they never granted rights.

Go to Audible Magic's site, and see how they make blocking possible for any rights-holder, *free of cost*! They don't warn that it's too complex. Of course being able to use Audible Magic's tool depends upon a willing ISP or site. But YouTube is not such a willing participant, and refuses to allow me to use anyone else's technology on its site. It's their way or the highway. I'm stuck with their own amped-up version of Content ID, and their subjective decision to deny me access to it.

Meanwhile, YouTube loves to brag about how many of their Content ID participants choose to *monetize* piracy rather than *block* piracy. Well, remember, musicians like myself, who aren't *accepted* into Content ID for blocking aren't in YouTube's skewed survey group. Speaking to record companies and distributors who use Content ID has shed light on these statistics. When I've asked these Content ID participants, *"Are any recordings really making any significant money through monetizing?"* Some said a flat-out, "no," and some said it's rare — *but they each expressed that the collective field adds up to something for the labels and the digital distribution platforms.* The large labels and aggregators benefit somewhat from their large catalogues, even if most of them express the individual royalties are very weak. But for independent musicians like me, there is zero rationale for trying to monetize with YouTube's amped up system, even if we were given access to it. For the vast majority of musicians in jazz, classical, folk, reggae, roots, Latin, world music, and beyond, we will never receive any significant revenue from YouTube, and it is a platform that directly competes with our own sales where we actually can make real revenue.

Many creators deeply resent being used by companies for "monetization" of the collective whole. I know YouTube has its YouTube "stars," but personally, I have yet to meet *any* single musician who has expressed anything but disdain for YouTube's monetization system, and I know a lot of musicians — a lot of *great* musicians.

**2. Musicians Are Not as Stupid as Google Apparently Thinks.** Fred von Lohmann says the Content ID system is too complex for many of us to use. However, small content creators learn and use extremely complex software systems such as ProTools, Finale, and Sibelius, just for starters. These software programs all require extensive training and are often required tools to practice within our profession. Surely, each of these software programs is orders of magnitude more complex than Content ID. I would like to see YouTube submit an "empirical data study" (since it seems motivated to fund those) that shows that professional musicians like

Confidential

myself were not able to learn to use the Content ID system <u>to "block" unauthorized uploads of full tracks</u>.

The real irony is that YouTube clearly judges the general public to have a *"sophisticated understanding of legal concepts,"* but inversely concludes that musicians and other copyright owners don't have that same "sophisticated" understanding.  After all, YouTube allows *any person*, of *any age or nationality*, and who lives under *any kind of copyright law*, to upload *any creator's music*, <u>without being asked one single question</u>.  And YouTube knows well that millions of those uploading users are justifying the uploads with bizarre justifications of "fair use" and other copyright law pronouncements.  Funny how things work when it all benefits YouTube.  Funny how they don't even mind dealing with all the resulting billions of takedowns.  That just reveals just how absolutely massive the pay-off from this scheme must be for them.

To allow this onslaught, and in the same breath judge music creators as not being sophisticated enough at the same legal concepts to simply *block* those uploads, is beyond insulting and shows YouTube really grasping at straws to protect its cash cow.  And, even for *monetization,* that YouTube claims is so complex (where there are various rights and rights-owners to assess and account for), I must point out that most musicians are already required to have a pretty sophisticated understanding in this regard.  Independent artists already assess the "rights" on their own albums.  For instance, in most cases, we hire the performing musicians ourselves.  We clear the rights.  When we record works by other copyright holders or co-write works, we pay out mechanical royalties (a royalty that YouTube somehow manages to skirt), we negotiate shared royalties, and we deal with a host of complex legal issues while self-producing and distributing our own records.  So generally, we intimately know all the rights-holders on our own records, and we know what rights they are due.

It is indeed ironic to look at what YouTube finds to be *"too complex."*  For instance, there is no subject or legal analysis more complex than a "fair use" analysis.  It even confounds many expert copyright lawyers.  Yet YouTube feels it is perfectly fine to train an international population of its users on fair use principles with a twenty-second speech delivered by <u>Fred von Lohmann from a toilet stall right after he flushes the toilet</u>.  YouTube deems that as adequate training.  I wonder if YouTube trains rights-holders to use Content ID from a toilet stall in twenty seconds?

### 3.  There is No Fair Use Quagmire with Uploads of Full Track or Full Albums.

YouTube loves to flaunt the house of mirrors known as "fair use" as an excuse to keep its Content ID in a secret club.  But when it comes to full tracks or albums, there is no *fair use* argument for uploading to YouTube.  I am sure Mr. von Lohmann would agree on that specific "legal" point.  But he conveniently left that fact out of his toilet stall speech.  So it would come as no surprise, that when searching an artist or group name, like "Radiohead," and "full track" on YouTube, the search brings up and hundreds of thousands of results.  Certainly, if Google is launching self-driving cars and space vehicles, it can make a basic Content ID tool available to every copyright owner to block full-track and album uploads.

SCHNEIDER_0000031839

And, if this is all beyond YouTube, why doesn't *YouTube* just allow a third-party company to handle it. (see #4).  Clearly YouTube knows that Audible Magic is available and doing this already.  To deny "blocking" capability in today's economic environment is unethical, and I contend it's just plain unlawful and should eliminate 512's safe harbor for all UGCs that don't offer "blocking."

**4. YouTube Misrepresents to the World that Content ID is Available to "*Anyone*" Through Third Parties**.  YouTube consistently releases statements to this effect, including to the NY TIMES.  In fact, in his testimony, Mr. von Lohmann perpetuated this misrepresentation, by saying:

> *"So there are lots of ways for smaller creators to have access to Content ID through an intermediary effectively."*

Transcript, p. 84.   But contrary to Mr. von Lohmann's calming reassurances, **Content ID is not available through third parties, if the rights-holder is looking solely to block uploads**.  Mr. Lohmann knows full-well that the partners he's speaking of aren't in the business of blocking uploads for free.  Yes, they may do blocking here and there, but as YouTube has itself pointed out, most the content put through Content ID is monetized.  Of course that's the case.  What motivation would a third-party company have to take on thousands or millions of creators catalogues, when there's no "monetization" for them to skim their share from?  Corporations that rely on user generated content to become rich and powerful, should have to pay the basic costs of protecting creators' rights.  No rights-holder should have to pay a penny for it.  In the U.S., we would expect our major companies to safeguard the basic community against things like piracy and illegal activity.  Clearly, Audible Magic wholehearted agrees.  Companies that are willing participants with Audible Magic pay the cost, and it's a very reasonable cost.  Of course, YouTube is not such a willing participant.  YouTube only deputizes third-parties you can work with only if you succumb to monetizing infringement for a portion of your work.  It's an insane racket from the perspective of someone like myself.

**E.**  Finally, I need to comment on one related matter I read in the transcript of the Berkeley round-table.  That is, **YouTube's Practice of Publicly Displaying, *in Perpetuity*, the Identity of an Individual Artist Doing a DMCA Takedown**.  This public shaming practice keeps many of us from doing takedowns at all.  Mr. von Lohmann responded, saying:

> *"We do say — we try to be transparent on YouTube and say who the rightsholder was who asserts the copyright . . . to provide a connection so that people can say, my content got taken down by x or y and I can reach out and say I don't think that — and it can be worked out."*

Transcript, pp. 93-94.   Why does YouTube even need to get to that step?  Why doesn't YouTube simply privately inform the user that the content they uploaded was taken down due to a copyright claim, and privately offer the contact for the person that did the takedown, so the user can reach out if they feel there is valid reason to dispute it, or if they simply wish to understand the reasoning for their own education, or even if they'd wish to discuss paying a licensing fee?  What's the need for the public placeholder posted in perpetuity?  There is no need.

Confidential

Well, Mr. von Lohmann reveals his reasoning in the next sentence (and I am underlining the parts I find most intriguing):

> *"So from our perspective, both from a transparency point of view and from a communication point of view, it's a good idea to say who took down <u>your content</u>.  I think you have a right to know that and <u>I think the world has a right to know that when content is removed, who sent the notice</u>."*

Firstly, note that he exposes his prejudice in his statement, *"it's a good idea to say who took down <u>YOUR CONTENT</u>,"* by referring to the content as somehow *belonging* to the *uploader* in the face of a DMCA takedown.  But we know that the vast majority of the time, takedowns are legitimate, and when it's a full track or album upload, it's virtually 100% sure that that the content *does not belong* to the uploader.

And why on earth would Mr. von Lohmann think that when content is removed, that *"<u>the world has a right to know who sent the notice.</u>"*  It actually solidifies what every creator feels when YouTube brands them with their *scarlet letter/frownie face*.  Mr. von Lohmann reveals that he believes it's his duty to expose creators as having taken something away from the world.  In the end, this is a power game for YouTube to manipulate our fans — to turn our fans against us when we assert our legal right to protect our property.

When a crime is committed, do we say, "the world has a right to know who the victim is," while protecting the identity of perpetrator of the crime?  There's only one reason YouTube systematically brands and exposes millions of takedowns with their *frown face*.  YouTube likes to stoke their home-spun negative narrative of the *"bad copyright-owner asserting her rights."*  There's actually zero legal or policy reason for the creator to be "outed" in such a negative light.  It serves no purpose except fulfilling Mr. von Lohmann's world view that *"the world has a right to know."*

The result YouTube is clearly hoping for, and achieving quite effectively, is that many creators skip doing DMCA takedowns out of a fear of fans hating us.  Many give up and bend over *en masse* and succumb to *monetizing,* rather than face policing mountains of infringement.  This practice of shaming us before our fans makes us feel like we're displayed in stocks at the town square.  It's almost that medieval, and it shouldn't be allowed.  I was actually happy to see Mr. von Lohmann offer his true opinion on this subject.  It reveals a lot.  It's also amazing to see what he/Google thinks "transparency" is, and what "communication" is.

Actually those statements by Mr. von Lohmann felt like the most *honest* and *transparent communication* I've ever seen out of YouTube, that is since Google offered its assessment (before they bought YouTube) that YouTube is a "rogue enabler of content theft."

When asked about exposing the identity of copyright holders, Mr. von Lohmann said:

> *"For takedown notices, you can submit through an agent.  You can submit — there's lots of ways you can submit without identifying yourself as the rightsholder.  So — I think that that is a problem that can be solved under the existing statute today."*

Confidential

SCHNEIDER_0000031841

Transcript, pp. 94. However, I've explained here in great detail why someone like myself wouldn't go through an agent. And in any event, based on what Mr. von Lohmann testified to, I recently looked into if and how, creators can disguise themselves so they won't be "outed" and shamed. Once again, Mr. von Lohmann's testimony is not true. It's misleading. For example, a musician friend of mine filed his copyright claim with a username instead of his real name, but then when I did a search for his username on YouTube, his YouTube Channel came right up, showing exactly who he is. So that's just useless jumping through hoops for any musician. Let's say this: we can't figure out an effective way to do what Mr. von Lohmann describes, and should we have to spend the time to try, when YouTube could make this very simple? An artist shouldn't have to do endless research to try and think of some clever hack to avoid being "outed" by YouTube. Similarly, we shouldn't have to succumb to paying a third party to disguise ourselves in order to avoid being shamed in front of our fans by YouTube.

There are many ways in which takedowns could happen in a *productive* way, where all communication would be private and effective. Here's an example: There are numerous performances of my musical compositions uploaded to YouTube by high school, university, and professional groups. None of them asked my permission, and their performances are competing with my own. If in doing a DMCA takedown, I could *privately* write a note directly to them saying, *"I cannot allow a full performance of this work because it competes with my own work in which I am thoroughly invested. But, I appreciate you performing my work and would like allow you to do a two-minute excerpt, perhaps mixed in with other work from your concert,"* it would be a win-win for both of us. But just a cold poster with my name slapped onto YouTube, apologizing to the public? What positive result comes from that, except stoking YouTube's self-serving narrative they push on the world.

The entire ecosystem of YouTube is highly imbalanced — benefitting YouTube to the tune of billions. Their users, worldwide, are free to upload whatever they want — no questions asked — with no measures put in place to proactively protect many rights-holders like myself, even though very effective protective measures not only exist, but YouTube uses them daily to serve its own purposes.

There are endless musicians like myself — workaday musicians — committed every day to our work, honing our craft, putting our music out into the world, and trying to make a living. We are desperate. We can't fight this YouTube upload tsunami. Many of us are GRAMMY-winners, Pulitzer Prize-winners, MacArthur Genius Grant-winners, Guggenheim Grant-winners and more, but don't have audiences anywhere near the size necessary to annually earn even the first $100 from YouTube. Without exception, we are struggling. We teach, and we find our lessons illegally uploaded — we write books, we find them uploaded — we perform, and our concerts are live-streamed or recorded and uploaded — our work appears on YouTube within minutes of releasing it, and we are stigmatized if we remove these things. All the while, Google plays "the hostess with the mostest," guiding the world to an endless buffet table of illegal content — platform after platform — none being required to protect us with technology that is actually readily available.

We are all just trying to get by, working hard to support ourselves and our families. We should all have the potential to do far better than "just get by." We collectively contribute not only to *this* country's culture, but to our *world's* culture in immeasurable ways. Do we also owe Google our property, our investments, and the content of our bank accounts? Collectively, we musicians are without question, a

Confidential

force for good in the world.  Yet we are left with no way to proactively protect ourselves and our life's work — to protect our *property*, against this behemoth *"rogue enabler of content theft."*  Why *would* the vast majority of a public *pay* for music when they can easily listen to literally all of it for free on YouTube, with the option to then rip their own CDs and downloads right from YouTube's site, or search and find it for free using Google's search engine and do the same?

It's beyond high time to require companies to use the technology that exists to make this bleeding stop. It's my hope that the Copyright Office will take this opportunity to make recommendations and findings in its Report that will simplify this process, and address the grim reality that YouTube's policies and practices are not in accordance with the law.  Its actions skew the entire industry.  YouTube is indeed the elephant in this room.  And musicians are left behind, holding the brooms.

Thank you for providing me the opportunity to correct the record with regard to the statements made by YouTube in the recent roundtables.

Sincerely,

*Maria Schneider*

Maria Schneider

SCHNEIDER_0000031843

# Exhibit 2C

## Open Letter to YouTube,
### "Pushers" of Piracy
#### by Maria Schneider

Hank Green's recent open letter in support of YouTube (that was in response to Irving Azoff's open and scathing letter against YouTube) deserves a strong response from musicians and other creators.  I appreciate YouTube's illegal business model might yield a few anecdotal success stories like Mr. Green's and his videos of opening beer bottles with antlers, but for the vast majority of the artistic community, including me, and every musician I know (and I know thousands), YouTube is a resounding disaster.

There's no use in beating around the bush, so I'm going to cut to the chase – I'm of the firm opinion that YouTube should immediately lose its DMCA "safe harbor" status.  And I'm of the further opinion that YouTube is guilty of racketeering.   Let me explain:

### YouTube is Not Entitled to "Safe Harbor" Status

YouTube and its parent Alphabet have obliterated the original meaning of the "safe harbor" law with their bullying and coercive schemes to get their users to disrespect and ignore copyright.

YouTube squeaked past its litigation with Viacom by settling their case after a four-year mutual war of attrition.   But what came out of that litigation was the best measuring stick for whether YouTube is still entitled to the protections of the "safe harbor."   The most important directive from the court in those Viacom decisions goes something like this:   If YouTube is **"substantially influencing their user behavior"** toward infringing, then YouTube is not entitled to the safe harbor.   It's that straightforward.   And without doubt, since 2014, YouTube has substantially influenced the behavior of hundreds of millions of its users toward infringement, fermenting a veritable pirate orgy.   YouTube goes way beyond turning a blind eye to the marauding masses; it actively seduces its users into illegal behavior, and has even managed to make its users believe pirate behavior is beneficial to creators.  Hank Green's latest letter illustrates that perfectly, by explaining how YouTube's Content ID scheme has been building and morphing since its inception, further contributing to making YouTube and Google a global empire, causing a seismic, cataclysmic shift in creative culture in our country and the world at large.

The vast majority of music on YouTube is uploaded by people with no legal right to do so – users whom YouTube has carefully molded and brainwashed.   And I'm meeting more and more young musicians who feel a growing resentment at being duped into being a part of cannibalistic behavior that is destroying their own financial future to the benefit of a corporate giant.

DEPOSITION EXHIBIT
Schneider 3
6 /14/2022
ERIC J. FINZ

SCHNEIDER_0000010374

Here are a few things that the Viacom judges never got to hear – things that in my opinion should immediately kick YouTube out of the "safe harbor."

## Ways in Which YouTube "Substantially Influences User Behavior"

A.      YouTube allows infringers to "monetize" illegally uploaded work, encouraging a culture of piracy.   And even after a takedown, YouTube and the infringers keep their past illegal profits for themselves.

B.      YouTube has created technologies that allow lightning fast uploads of full tracks and albums, with no questions asked of the uploader, with no checkpoints of any kind.   YouTube knows full well there is almost never "fair use" for full tracks and albums.   So, to encourage this type of uploading can only be seen as blatant encouragement of out and out infringement.

C.      YouTube is using Content ID to make users feel good about themselves as they upload work that they don't own.   YouTube baits users to upload to their hearts content and feel helpful to copyright owners.   But for those of us who weren't accepted into YouTube's Content ID protection program, or didn't agree to drink the purple Kool-Aid of licensing our entire catalogue to YouTube for monetization, tough luck – you're left with an anemic takedown remedy.   YouTube should proactively direct users to a library of licensed music *before they upload*, rather than perpetuate the notion that one can upload anything, without inquiry and responsibility.   As it stands, YouTube emboldens users to assume it's OK to upload indiscriminately.

D.      YouTube has publicly offered to pay attorney's fees up to a million dollars of some users who feel they've wrongly received takedown notices.   This publicity stunt emboldens all users to feel that YouTube has their back.   What a way to intimidate the creator and stir up the infringer.

E.      YouTube consistently demonizes and intimidates musicians in the takedown process, publicly posting our names and making public apologies for our takedowns accompanied by a sad face.   And inversely, they protect the identity of the user who has infringed the creators work.   This public demonization of creators, contrasted by protection of the user, is unbalanced, and empowers the user to feel they are in the right.   The public apology should be from YouTube itself.

F.      YouTube turns a blind eye to beyond-obvious-infringement, and users know that YouTube purposely looks the other way.   Go to YouTube and search *"no infringement intended," "I don't own this, but...," "I just want to share this music,"* and millions of examples instantly appear where users openly admit to not owning the music or having the rights, but simply want to share it.   Google, the indisputable "king of data" certainly has the analytics to search this stuff and inform those that are breaking the law.

G.      YouTube intentionally confuses and misleads users about the importance of copyright rights, offering utterly inane "educational videos."   Watch Copyright Basics or Copyright School to see how YouTube completely downplays creators' rights, and overplays the impact of fair use without clarification.   And YouTube's legal eagle, Fred von Lohmann, even lectures creators about censoring negative commentary in *Copyright Basics*, so his hypocrisy at having disabled the public's

SCHNEIDER_0000010375

comments on these pathetic videos was not lost on me.  Any judge would be repulsed by YouTube's hubris and arrogance displayed in these ghastly videos. Considering that "music" is the most popular category of content on YouTube, it stands to follow that any educational video should at very least say to all users, "full tracks and albums" almost never qualify as "fair use."

For years, YouTube has been a "pusher" of pirate activity on its unsuspecting "users."  The sweeping influence of their scam has succeeded in dismantling copyright from the inside, like a flesh-eating virus, influencing citizens to destroy themselves.  Any company influencing behavior like this, especially for the purposes of eroding Constitutional rights, should lose their safe harbor.

### Withholding Content ID from Creators is Outrageous.

There are other grounds for kicking YouTube out of the 'safe harbor."  To be in it, the law (section 512(i) which is written in terms even a non-lawyer like me can read) requires that YouTube make available to "<u>any person on reasonable and nondiscriminatory terms</u>" "standard technical measures" to identify or protect copyrighted works.  Well guess what: YouTube has completely ignored that requirement, and struts around like a banty rooster while doing it.  Content ID is pretty <u>standard</u> "fingerprinting" stuff, and there are other companies that have similarly effective fingerprinting technologies like Audible Magic.  Fingerprinting has become standard, and YouTube certainly uses it very effectively when it comes to monetizing mountains of licensed works.  The DMCA makes it very clear YouTube needs to make that technology available to ANY (the word "any" is in the law) musician, not just the big powerful companies.  And certainly the technology shouldn't be able to be used to instead coerce copyright holders into monetizing their catalogues instead of protecting them.  The scheme is clear: *wear copyright owners down, and then they'll be on their knees for any scraps at all.*  I'm so sorry that so many big companies caved in to that pressure.  YouTube has brought nearly everyone in our business to our knees.

You won't see me drinking YouTube's purple Kool-Aid.  They refused me Content ID without any real explanation, but it doesn't take a rocket scientist to figure out the truth.  This truth about fingerprinting is exposed in Hank Green's own letter.  The truth even more came to light in Zoe Keating's Billboard article.  Clearly, after training their unsuspecting users to be pirates, the next tactic is to muscle the weak copyright holders into an all-or-nothing chokehold.  They never wanted creators "protecting" their work with Content ID at all – they want them <u>monetizing</u> their work, for YouTube's benefit.  (And by the way, YouTube keeps about 2/3rds of the gross ad revenue – read East Bay Ray's helpful explanation.)  Clearly, the only companies that get some protection from the Content ID service are ones licensing huge amounts of music, and then they probably get to offset a certain amount of work to be protected from upload at all.  I'm guessing a few big artists get to use Content ID as intended –  the ones that YouTube would want to keep quiet.  It's hard

SCHNEIDER_0000010376

to know the whole ugly truth that YouTube hides from us behind the NDAs Keating spoke about.

## The Emperor (or Data Lord) Has No Clothes

So if we take away YouTube's "safe harbor," what do we have left?   It's standing there naked, exposed for what it is – a huge pirate schemer, manipulating and using a lot of vulnerable people in order to feed their own greed, while intimidating and controlling the rest of the people that don't feed their needs –  the people that need to be kept out of YouTube's way.   In my opinion this scheme is an old-fashioned *racket*.

## YouTube is Guilty of Criminal Racketeering

YouTube has thoroughly twisted, contorted, and abused the original meaning of the outdated DMCA "safe harbor" to create a massive income redistribution scheme, where income is continually transferred from the pockets of musicians and creators of all types, and siphoned directly into their own pockets.   Congress seems to be too hypnotized by Alphabet lobbyists, swarming like locusts, for the lawmakers to stand up straight with a firm sense of right and wrong, and defend the Constitution and the citizens of this country.

When we analyze the bullying behavior of YouTube, in my opinion YouTube has created an illegal business through intimidation – the classic Webster's Dictionary definition of racketeering.

***Racketeer:  a person who makes money through illegal activities; one who obtains money by an illegal enterprise, usually involving intimidation.***

So let's look at just a few examples of intimidating behavior YouTube shoves at us in the back alleys of its monstrous empire.

A.      YouTube's first intimidation is that you can't join Content ID, unless you fit its special secret criteria, which we don't know what it really is, but which appears to be that you must offer up your whole catalogue for monetization, in order to get the benefit of the technology.   And it must be a big catalogue, clearly bigger than mine.
B.      YouTube's second intimidation is making the musician sign on YouTube's/Google's terms in order to do a takedown. (See Stephen Carlisle's article) It is abusive of the law, self-serving, and intimidating, as there are limits of liability, place of jurisdiction and various legalese that one shouldn't have to agree to in order to do a take-down.   None of that is in the DMCA.   That's YouTube's own special sauce.
C.      YouTube's third intimidation is to reveal to the whole world, the identity of the person exercising their Constitutional right, while protecting the uploader's identity.   That's not in the DMCA.   It's YouTube's special spin.

Confidential

D.      YouTube's fourth intimidation is to offer a permanent public apology for me and a sad face (or "frownie face" as YouTube general counsel, Katherine Oyama, corrected me at the Section 512 Hearings before Congress in 2014.  (YouTube and Google love "cute" words, *"Alphabet, Google, YouTube, Frownie..."* it creates an illusion of being harmless.)  Many rights-holders have told of bullying and threats that have resulted from exposure of their identity.  This demonization and intimidation makes many creators reticent to assert their Constitutional right. That's not in the DMCA.  That was YouTube's grand idea.

E.      YouTube's fifth intimidation is to throw a whole lot of questions at the copyright holder, and even a threat about attorney's fees, whereas none are posed to the user at the point of upload.  That's not in the DMCA.  Only YouTube could be so cunning.

F.      The sixth YouTube intimidation is the publicity stunt of offering a million dollars to defend a user against a wrongful takedown.  That's scary.  What if I make a mistake?  And why aren't they offering a million dollars to me against the endless infringements on my work on their site?  That confusing dynamic of YouTube throwing around their power to embolden their well-trained users is beyond intimidating.  It makes creators just give up, while it inversely cranks infringers up. Sure, there are wrong takedowns, but there's no comparison to the incalculable volume of infringement.  This scheme isn't in the DMCA.  That must have come from YouTube's goons.

G.      The seventh intimidation is that though they have what's now a standard finger-printing technology to keep content down, they force musicians like me into an endless whack-a-mole game that eventually wears out even the fiercest of us.  I personally know the feeling of giving up, and the resentment that builds when you feel manipulated into helplessness by corporate manipulation.

H.      And just because they're a different head of the same ugly monster, the eighth intimidation is specifically Google's – Google and their special 46-step path to a takedown (cited by Stephen Carlisle) that again, ends in having to sign on to those nasty terms and condition just like YouTube.  What an abuse of the DMCA.

It's almost impossible to believe that any group of human beings could have been so bold as to dream up and implement such a sick plan as all of this.  Even Google itself initially expressed that YouTube was dirty.  As we know, they eventually bought YouTube, so I guess Google finally decided that its inspired motto of "do no evil" was just too high of a bar to live by.  The following statements/admissions by Google employees were taken from the Viacom/YouTube case, and were made before Google acquired YouTube:

*"A large part of their traffic is pirated content."*
YouTube is a *"rogue enabler of content theft."*
*"YouTube's business model is completely sustained by pirated content."*
*"It's a video Grokster."*
*"I can't believe you're recommending buying YouTube . . . they're 80% illegal pirated content."*

Confidential                                                                 SCHNEIDER_0000010378

*"...it crosses the threshold of Don't Be Evil to facilitate distribution of other people's intellectual property."*

Google thoroughly recognized this was criminal activity.  But when Google bought YouTube in 2006 for 1.65 billion, their tune suddenly changed.

## Copyright Infringement + Intimidation = Racketeering

Since Google bought YouTube, the Alphabet empire folded their new piracy factory into the world's most powerful company, the world's richest company, and the world's most secretive company.  Alphabet encourages, for their own gain, a "free" and "open" society, where all "content" is free and accessible, as though that is some sort of measure of a free society.  But when it comes to their own "content" in the form of its database and algorithms, they choose to guard it like Fort Knox.

The recent dustup at Facebook, with the political influence wielded behind their wizard's green curtain, is just a small example of the sort of power data lords can have over us ordinary folks.  Alphabet's influence, control, and domination will only grow exponentially as the value of its "trade secret" database continues to balloon to unimaginable proportions.  Thank God the EU is holding companies like Alphabet responsible, as we in this country all seem to be asleep at the switch, so long as YouTube is there to serve us up some edifying viral videos of somebody lighting their crotch on fire.

What is especially scary about this corporate power is that YouTube is now starting to inject itself into the very manner in which art is created.  Do we really want YouTube controlling the funding of music?   How terrifying – they destroy our creative culture, and now "they" want to save it by helping to create it themselves?  Oh my God!   That brings me to my final revelation:

## YouTube Suffers from Munchausen's Syndrome By Proxy

I was thinking about this whole convoluted scheme YouTube has cooked up with its Content ID program, when something popped in my mind, *Munchausen Syndrome by Proxy*.  That's that disease you hear about sometimes on the local news where some sicko caregiver induces an illness to their own patients, so they can then turn around and quick save them and be the hero.  I suddenly realized, *oh my God, that's YouTube!*  YouTube has Munchausen by proxy!  I see now – they're not only evil, they're sick.  Too bad it's the most powerful company in the world that has the Munchausen affliction, and the entire world of music, film, and creative arts are the unsuspecting victims.  We, like the unsuspecting patient, can all feel grateful that YouTube, our savior, has come up with the life-saving solution of helping us monetize our pirated work, and they'll further save us by letting some of us be "the chosen" YouTube artists they'll produce.

Confidential

## Common Sense Solutions

I asked YouTube nicely to reform its ways when I testified before Congress, offering several key ways to even the playing field and stop destroying musicians and other creators.  But they've not only ignored me (and many others like me), they've since turned up the heat and made an even greater mockery of the "safe harbor" rules.

Recently I had the opportunity to participate in four of the seven roundtables held by the U.S. Copyright Office on the DMCA's Section 512.  I offered the following common-sense solutions:

A.      Takedown should mean stay-down.
B.      There should be mandatory checkpoints and education on the upload, with language created by the U.S. Office of Copyright, as well as a required signed perjury statement on the upload.   Parity between upload and takedown is only logical and only fair.
C.      All sites with uploaded content should have to use the latest fingerprinting technology where creators can enter their work for the purpose of protecting it, not for the purpose of being muscled into monetizing it to the benefit of the hosting company.
D.      Stop the public display of the copyright holder's identity when they do a takedown.

For starters, YouTube, would you please consider these four steps as a first, good-faith step in the right direction?

## Perspective is Everything

I appreciate that YouTube might work for a select few folks including Mr. Hank Green, but it is not in any way representative of the breadth of the arts in America – musicians, authors, filmmakers, photographers, poets, artists and more.  Alphabet is systematically leeching away our diverse and rich culture in order to become the most powerful and wealthy corporate empire the world has ever known.   And it's just getting started.

The Internet has brought the world together in many wonderful ways.   I appreciate that as much as anyone, having been the first Internet-only, fan-funded GRAMMY-winner.   But the arts have connected people far more, and for far longer, than the Internet.  The arts have connected us in times of war, brought healing through times of suppression, brought inspiration in times of need, and expression when weak voices needed to be heard.

The Internet and the arts could be powerful if they worked to help one another, but as it stands, the Internet is being used by corporate giants to gut the arts for their own gain – and they are destroying our culture.   I heard an extremely powerful quote yesterday from the great American author, T.J. Stiles, (where he paraphrased

SCHNEIDER_0000010380

Professor Jane Ginsburg from Columbia University) saying: *"the worst form of censorship is poverty."* YouTube/Google, and other data lord companies are absolutely "silencing" and thereby "censoring" the arts – just ask the 80% of Nashville songwriters who have had to leave the profession in the last decade.

Jaron Lanier, who wrote *Who Owns the Future,* describes musicians as the canary in the coal mine.  While YouTube has the canary's feathers sticking out of its mouth, we're not dead yet.  Temporarily dazed by YouTube's cunning bite, and drowning in its greedy drool, we are slowly coming to our senses.  Musicians and artists of all types, as well as record companies, publishers and agents (who only exist because of music creators), need to unite and stand up for our Constitutional right to own our copyrights, and to force data lords like YouTube out of the lucrative "safe harbor" that it has used to exploit us.


Maria Schneider is a five-time GRAMMY-winning composer and bandleader, a board member of the Council of Music Creators, and is actively involved in MusicAnswers.org.

SCHNEIDER_0000010381

# Exhibit 2D

## What Do *Whore Houses*, *Meth Labs*, and *YouTube* Have in Common?

By Maria Schneider

OK, I know – that headline really hits below the belt.  I apologize.  After all – it's not fair to those whorehouses *that actually are legal in many places,* and that pay their share of taxes – to lump them with these other entities.

When a nail salon or spa has a backroom for illegal prostitution in the U.S., we shut down the business.  When a dry cleaning plant covers for a crystal meth lab, the government comes in with guns ablazing and shuts them down.  Businesses with backroom illegal activity get boarded up, and their owners thrown in the slammer.  Just because a business carries on facade of legal activity, even offering us a good value from the facade, doesn't mean we turn a blind eye to the criminality going on behind the scenes.

YouTube's parent, Google, itself acknowledged the throbbing criminality of YouTube's "business model" right before, *ahem*, "buying" them.  Ten years later, everyone agrees a good percentage of YouTube's music and films are stolen content.  And just like the tactics of the seedy businesses described above, YouTube has, in my opinion, undertaken elaborate measures (much of it through its Content ID technology) to cover for the criminality that takes place in its own illicit digital backroom.

Before I move on – for those of you who think the three illegal activities I describe don't carry the same weight, plant these two facts in your brain: As I pointed out, prostitution in some forms, is legal in many places in the world, including Holland, but copyright infringement and piracy is illegal and criminal virtually everywhere.  That's right, *everywhere – even* in North Korea.

A.  **Money Laundering:** While a Meth Lab needs completely separate businesses to cover income and serve as a money launderer, YouTube, while not technically laundering money, has its own neat and clean way to hide and convert the income it siphons off of copyrighted content, and it's a wonder that every one of our 50 states, and cities and aren't hopping mad.

   Google and YouTube facilitate the theft of billions of dollars in stolen intellectual property – it's impossible to calculate the losses to photography, journalism, music, movies, cartoons – the list goes on and on.  These creative works were bringing billions in "sales tax" into our city and state tax systems as well as contributing billions in "income tax" to state, local, and federal governments.  As we've all seen our incomes plummet amidst the theft of our creative works, so have the amount of taxes we pay plummeted.  When all the value is siphoned off our work, making someone else rich, that "someone else" must be paying the tax, right?  Wrong.  No one is paying that sales tax,

SCHNEIDER_0000030419

and the vast majority of state, local, and federal income tax has vanished into thin air, too.

Remember, the biggest economic value in this "free" pirating culture comes to the big data lords in the form of data, and the "value" that data creates.  It's the mountains of information about all of us that's then turned into artificial intelligence from analytics.  Their market capitalization in the hundreds-of-billions is based largely on the trade secret IP of their big data that was harvested on our backs.  That market value was created with no state, local, or federal income consequences.  And even if there ever is an IPO or other stock event where investors in companies like Spotify might be making money off this scheme, they are paying the lowest (capital gains) tax rate there is.  And we all know that corporations have a whole host of tax loopholes (loopholes we regular folks don't have) to hide the real dollars that they do make on things like ad revenue.

Governments should be furious.  *We* should be furious.  Can we as an economy survive when, more and more, we "pay" by watching endless ads?  All that tax revenue vanishes, *poof.*  It doesn't go back into *our* schools, *our* roads, *our* healthcare, *our* police force, into the arts, protection of our water, air, and the many things that make our society function – this untaxed fortune mushrooms in size within the secret vault of a worldwide giant that uses it to further devour us for its own gain.  Through this "redistribution" of assets, they drain our cities, states and national culture of vitality, just like the other seedy businesses I mentioned at the beginning of this article.  Their crime is worse actually, because it's so well hidden by all the entertaining content and Google/YouTube's cutesy-ness.  And just like the other businesses, addiction benefits them, too.

## B.  YouTube Hides the "Source" of its Music to Encourage and Protect Piracy

We all use YouTube almost daily.  But when we listen to a YouTube "track," YouTube hides any information about whether, or how, the music is licensed, or whether it's simply pirated.  In my opinion, they simply don't want us to know, just like any criminal enterprise would operate.  YouTube's pirated videos look exactly like legitimate videos.  If we want to avoid pirated music on YouTube, we can't, since YouTube also helps to hide the identity of users who upload content to their site.

YouTube could easily determine a large amount of what's illegally uploaded, as it's painfully obvious just from reading what the uploader writes whether the person is the copyright owner or not.  But it seems to me YouTube pretends they don't know and can't know.  While they work feverishly to scrutinize takedowns, they're completely devoid of demanding even the tiniest bit of scrutiny on the upload, pretending to be helpless and unaware.

Confidential

SCHNEIDER_0000030420

We deserve better.  As a culture we've become very demanding about "sourcing" for our food, medicine, clothing, water, and even our coffee.  We demand to know the things we consume are sourced from a good place, don't involve exploitation, or worse yet criminality.  But when it comes to music, we have collectively allowed these big data companies pull the wool over our eyes and serve us up a steaming cow pie of exploitation and piracy.

Enormous dollars are spent by "big data" to convince the public that piracy is not a legitimate crisis.  Like a broken record, they push propaganda messages through their surrogate affiliates like the EFF (Electronic Freedom Frontier) and FFTF (Fight for the Future), to divert the public's attention from their criminal backroom business, as they promote false justifications that assuage their guilt and the public's guilt over the plight of musicians.  Their propaganda goes something like this:

1. "Musicians want to take away your "fair use" rights!
2. "Copyright enforcement will create a *chilling effect* on the internet!"
3. "Musicians are doing fine and can just earn plenty of money from concerts and t-shirt sales."
4. "We are paying out billions to artists!"
5. "Copyright lasts too long anyway, so it's OK to pirate things."
6. "Get over it you whining, self-entitled musicians.  This is the digital age and you just have to learn to adapt."

Each of these six justifications is preposterous.

**Myth 1:** **"Musicians want to take away your "fair use" rights!"**

Of the many DMCA takedowns I've been forced to file, not once did any user ever assert their "fair use" rights were violated.  They never will, because my takedowns are all aimed at straight-forward piracy.  And I've yet to meet any other musician who has ever been challenged on fair use.  The incalculable volume of piracy violations completely dwarfs "fair use" complaints.  To use wrongful takedowns of "fair use" content as a justification for not cracking down on piracy, is just perverse.

Fair use is an important legal concept that absolutely must be protected, but it's completely irrelevant when it comes to full track uploads of music.  There is no "fair use" of a whole track or whole CD, especially when a YouTube "video" graphic is simply the CD cover art itself.  Despite that, YouTube refuses to educate its users about that simple fact, because it would cost YouTube millions of dollars to lose that pirated work on their site.  The lack of education is obvious, as gazillions of users justify in their upload comments that their upload is covered by "fair use," as if saying it's so, makes it so.  YouTube knows these facts, ignores them, and even encourages them with inane and misleading "copyright education" videos.  Are we to believe the most powerful analytics company in the world that created language

SCHNEIDER_0000030421

translations, maps of the world, virtual reality, and that's creating self-driving cars, can't locate such admissions and warn their users to take the content down or face removal of their YouTube channel?!

For any user who feels their "fair use" rights were violated through a wrongful "takedown," the DMCA gives every uploader a very straight-forward way to file a "counter notice." And when they do, YouTube is required to put the video right back up. It will then stay up, unless the copyright owner somehow (never happens) files a federal lawsuit at a cost of thousands. So even when there might be a bad "takedown," the uploader has an immediate, free, and relatively painless way to make sure the video in question goes right back up, and stays up.

**Myth 2:** "**Copyright enforcement will create a *chilling effect* on the internet!**"

YouTube and its surrogate mouthpieces like EFF love to say that the enforcement of our constitutional copyright rights will somehow slow the growth of the internet. That's hogwash for 3 reasons. Firstly, the internet is full of very successful legitimate services, businesses and applications that don't depend upon stealing copyrighted work. Secondly, where else do we justify the criminality of a business because it somehow allows for economic growth? Just think of the historic implication of following that twisted reasoning, and imagine the world we might be living in if that logic ruled the land. Thirdly, YouTube's value and growth has skyrocketed at an unparalleled pace, and its parent company is now the most powerful and richest company in the world. "Chilling effect" on Alphabet and Google? Are you kidding me?

**Myth 3: "Musicians are doing fine and can just earn plenty of money from concerts and t-shirt sales."**

This piece of propaganda is the most offensive and demeaning of them all. Even if it was true (which it definitely isn't), theft should never be justified because the victim has other avenues to earn income. Let's start with the fact that songwriters and composers most often don't "perform." Also, no musician can perform continually. The touring life of a band or a musician may not be that long. We don't justify stealing apples from an orchard because the farmer can plant some other vegetable in between the trees. People don't work a lifetime to have their work ransacked by companies that aren't creative enough to make money except by stealing it. The irony is that many musicians "perform" at a great financial loss in order to *promote* their records. Now we're told to tour, so everyone can *steal* our music for their own profit? And if you're still not convinced, ask yourself this – do people seriously buy a t-shirt for every artist they go hear somewhere? It's absurd. The megastars that perform in stadiums are an infinitesimally small portion of the entire music industry. Even for those stars, this is a gross presumption for anyone to make about their work.

**Myth #4: "We are paying out billions to artists!"**

SCHNEIDER_0000030422

All the big streaming businesses that are gutting music creators and performers say this same thing.  The figures might sound good in the aggregate, but it's an illusion.  A billion dollars when spread across all the music in the world, and when placed in context of the many billions of users and trillions of "plays," is peanuts.  The simple truth is that income for independent musicians, *worldwide*, is plummeting across the boards, largely at the hands of one American corporation.  Remember, YouTube isn't just exploiting music from the U.S., this American company is exploiting the entire world's music.  And the amount of YouTube ad revenue that ends up in most musicians' pockets is mere pocket lint.  It's not even worth talking about – even less than Spotify, and the money Spotify pays out is so horrifically low that artists again and again publicly share the amounts they've received in disgust.  The whole streaming "model" based primarily on ad revenue is fatally flawed.  It can't ultimately work if it's not sustainable for the people that create the music.  And if it does continue, it can only happen at the peril of creative culture as a whole.  Read this passionate letter to the European Commission from 20,000 of Europe's creators.  Thank God *someone* is awake out there.

**Myth #5:** **"Copyright lasts too long anyway, so it's OK to pirate things."**

Nice try.  First off, a philosophical disagreement with the length of copyright should never be used as a justification for theft.  Furthermore, the length of time that a copyright lasts in the U.S. is the same as in almost every major country.  It is consistent with major international treaties.  But just as important, there is a long history, involving major figures in literature and the arts, justifying the difference between patents and copyright.  The debate involves strong advocates, with compelling statements from people like Mark Twain, and Victor Hugo.  Copyright encourages the creation of music, literature, and art that define the very core of who we are as a culture and as a nation.  This is exactly why it was written into our Constitution.  There is zero justification to shorten the term of copyright in the U.S. to somehow be different from what it is in the rest of the world.  Do we really respect art and culture less than North Korea?

**Myth #6: "Get over it you whining, self-entitled musicians.  This is the digital age and you just have to learn to to to adapt."**

It's amazing that we celebrate the wealth of those who made their fortune off of the digital world, like Steve Jobs and his 300–foot yacht, yet a musician who makes significant income is demonized and told that they have enough.  Why is it OK for a musician's main asset in life, their music, their scores, a whole life's work, to be distributed for free?  The internet is forced to put almost zero protections into place, to the financial benefit of a host of corporate monsters, and to the benefit of a population at large that had been perfectly happy paying for recorded music for a hundred years.

Confidential

These are *Constitutional rights* we're talking about.  My music is by far my main asset.  I spend on a record what most spend on a house.  And I invest two years into creating every aspect of that record.  It's not only like just investing in a home, it's like *building* it, too.  We wouldn't expect we could take over someone's home and say, "Oh, you can figure out another place to live and put your things."  Most recordings cannot be produced for less than the cost of a new car.  We don't steal cars justifying, "Oh, you can find some other way to drive to work."  If my music files are "just digital files," not worthy of protection, then logic follows that I should be able to similarly raid my neighbor's Fidelity 401(k) account; after all, it's just a digital file, too.

We all know, if someone robs a house, steals a car, or illegally accesses someone's bank account, they will (and should) go to jail.  We certainly don't say to the victim, "Oh, quit your moaning and learn to adapt!"  There's no "adapting" when assets are stolen, again and again, leaving one in debt every time one invests in one's own work.

**In Closing**

I believe the average YouTube user would wish to respect the right of musicians if they fully understood the reality.  If they personally felt the consequence of what this whole system has brought to creators lives, I believe they'd be horrified.  They'd not only be concerned about the people it's hurting, they'd be worried for music, the arts, and culture itself.  The worst offense of the data lords, was manufacturing a new culture to feed their own greed, a culture they systematically trained, a culture that is now fully indoctrinated, to expect music for free.  The calculated effort was described by none other than Daniel Ek, CEO of Spotify, when he said, "Music needs to be like **water**.  It needs to be **ubiquitous**."  Music isn't like water.  I guess Mr. Ek thinks that water, like music, will just be there forever, no matter how much we exploit and abuse the source.

The current "era" of institutional music piracy will not last long.  In 30 years, society will look back on this era with embarrassment and disbelief.  We all know it's wrong.  Our justifications for allowing piracy to fuel the most powerful company in the world are as poor as they were for allowing big companies to illegally pollute, or to abuse worker's rights.  It's time we demand more from these big data companies.  It's time they step out of the shadows, own up to their abuses, and convert to being a legitimate business that employs every available measure to assure users that the content on their site is there lawfully.

SCHNEIDER_0000030424

# Exhibit 3A

**Content ID License Agreement**

This Agreement (the "**Agreement**") is by and between Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd. (collectively "**Plaintiffs**" or individually a "**Plaintiff**") and Google LLC ("**Google**") (collectively, "**the parties**").

**1. Definitions.**

"**YouTube**" means the Google service known as YouTube, accessible through http://www.youtube.com.

"**ID File**" means a unique binary data that corresponds to a Work, and that is used for the automatic identification of that Work.

"**Litigation**" means *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD, filed in the United States District Court for the Northern District of California.

"**System**" means Google's content identification and management system, commonly known as "Content ID."

"**User Video**" means a video uploaded to YouTube by a third-party user.

"**Video Match**" means a User Video automatically determined by the System to match an ID File.

"**Work**" means an audio, audio-visual, or literary work the copyright to which (a) a Plaintiff claims to own; and (b) that Plaintiff has identified as allegedly infringed in the First Amended Class Action Complaint in this Litigation.

"**Reference File**" means a digital file containing the entirety of a Work. Where the Work is a musical composition or a book, the "Reference File" shall refer to a digital file containing the entirety of a sound recording that in turn contains the composition or the book.

**2. Purpose**. Subject to the terms below, Google agrees to operate the System on a one-time basis in an effort to identify Video Matches on YouTube, if any, for the Works. Plaintiffs acknowledge that in its ordinary operation, the System contemplates considerable cooperation between a copyright claimant and Google and that the System was not designed for use in an adversarial litigation context. The Parties will work together in an effort to resolve any unforeseen issues, but Plaintiffs acknowledge

that Google will not operate the System in this litigation context if doing so creates a risk of disrupting the normal operation of the System.

**3. Plaintiffs' Provision of Reference Files**. Plaintiffs will provide Google with: (a) written verification stating that a specific Plaintiff is the legal or beneficial owner of a copyright in a specific Work; (b) a Reference File for each Work in the format and via the delivery method specified by Google; and (c) written information showing which Reference File corresponds to which Work, and for any Work that is a musical composition or a print book, ISRC code(s) or similar information identifying the sound recording that allegedly contains the composition or the book. Plaintiffs shall send the Reference Files for all Works for which Google will operate the System within 2 business days of the execution of this Agreement. By providing Reference Files, each Plaintiff grants Google a nonexclusive, royalty-free, limited license to store, copy (including the right to make temporary cache and storage copies), modify or reformat, excerpt, analyze, use to create algorithms and binary representations, create ID Files and otherwise use those Reference Files and ID Files in connection with the System, for the purpose of Google's operation of the System as set out in Section 2.  Without limiting the foregoing and for clarification purposes, Plaintiffs do not license Google to publish or otherwise provide public access to any Reference Files through its YouTube platform.

**4. System Operation and Video Matches**.  Google will initiate the operation of its System within seven days following Plaintiffs' complete delivery to Google of the information set out in Section 3.  Following Google's operation of the System, Google will provide to Plaintiffs on a Work-by-Work basis (i) a list, by URL, of Video Matches for publicly-available videos, if any, that the System identifies for the Works, and (ii) the number of Video Matches, if any, for private videos that the System identifies.

**5. Representations and Warranties**. Plaintiffs represent and warrant that: (a) they have and will maintain all rights, authorizations and licenses that are required to grant the rights and licenses set forth herein; (b) the Reference Files, resulting ID Files and Google's use thereof do not infringe any third party right; and (c) the Reference Files do not contain or originate any contaminated file, viruses, worms, Trojan horses or other similar harmful components. If Google determines that a Reference File would compromise the effectiveness of the System, Google may elect not to use the relevant Reference File and will promptly notify Plaintiffs of the Reference File and the issue.

**6. Use of Results.** The parties agree that neither Google's operation of the System at Plaintiffs' request nor the fact of any Video Matches for the Works, shall be offered as evidence in the Litigation to show that Google in any way had actual knowledge of alleged infringement of any Work (the "Actual Knowledge Argument").  Google acknowledges Plaintiffs' contention that they should be entitled to use the results of the Content ID process as evidence to support arguments other than the Actual Knowledge Argument. Plaintiffs acknowledge that Google does not agree that Plaintiffs should be entitled to use the results of the Content ID process as evidence to support any such arguments. Nevertheless, so as not to delay Google's operation of the System, the parties agree to table these specific disputes as to the use of the outcome of this process without resolving them and to expressly preserve the parties' respective positions on them.

**7. Allegedly Infringing Matches**. Plaintiffs recognize that Google will not know whether Plaintiffs allege that any Video Matches identified through Google's operation of the System are infringements of a Plaintiff's copyrights. Accordingly, to the extent Plaintiffs believe Google should take action to remove or disable access to any allegedly infringing video matched through operation of the System in connection with this Agreement, Plaintiffs agree to send Google a valid notice pursuant to 17 U.S.C. § 512(c)(3) for any such video. Google will handle such a notice in accordance with its normal processes. Nothing in this agreement changes any document preservation obligations of the parties that otherwise exist with respect to any videos taken down pursuant to such a notice.

**8. Reservations**. Google expressly disclaims any representation or warranty that the System will identify all matches of Works that appear on the YouTube Service or any other representation or warranty regarding the conduct or output of this process or the System. Google reserves its rights concerning its position that, under Federal Rule of Civil Procedure 26, it may seek an order shifting to Plaintiffs the expense incurred in operating the system in connection with this agreement.

**9.  Confidentiality.**  This agreement, and any material received or disclosed by either party in connection with this Agreement, will be treated as Confidential, or if specifically designated, Highly Confidential - Attorneys' Eyes Only, under the Stipulated Protective Order entered in this Litigation.


Randall P. Ewing, Jr.

Attorney for Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd.


/s/ David H. Kramer

David H. Kramer

Attorney for Defendant YouTube, LLC and Google LLC

# Exhibit 3B

```
 1                 UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4    MARIA SCHNEIDER, UNIGLOBE        )
      ENTERTAINMENT, LLC, and AST      )
 5    PUBLISHING LTD., individually    )
      and on behalf of all others      )
 6    similarly situated,              )
                                       ) CASE NO. 3:20-cv-4423
 7               Plaintiffs,           )
                                       )
 8       VS.                           )
                                       )
 9    YOUTUBE, LLC, and GOOGLE LLC,    )
                                       )
10               Defendants.           )
                                       )
11    YOUTUBE, LLC, and GOOGLE LLC,    )
                                       )
12               Counter-Plaintiffs,  )
                                       )
13       VS.                           )
                                       )
14    GÁBOR CSUPÓ, PIRATE MONITOR      )
      LTD., LLC, and PIRATE MONITOR    )
15    LLC,                             )
                                       )
16               Counter-Defendants.  )
                                       )
17
18                     CONFIDENTIAL
19     REMOTELY CONDUCTED VIDEOTAPED 30(b)(6) DEPOSITION OF
                 UNIGLOBE ENTERTAINMENT, LLC
20             NAMRATA SINGH GUJRAL COOPER
           Burbank, California (Witness' Location)
21               Thursday, June 30, 2022
22
      Reported by:
23    LYDIA ZINN
      RPR, FCRR, CSR No. 9223
24    Job No. SF 5301785
25    PAGES 1 - 210
```

                                                    Page 1

CONFIDENTIAL

```
 1              UNITED STATES DISTRICT COURT
 2            NORTHERN DISTRICT OF CALIFORNIA
 3                SAN FRANCISCO DIVISION
 4   MARIA SCHNEIDER, UNIGLOBE      )
     ENTERTAINMENT, LLC, and AST    )
 5   PUBLISHING LTD., individually  )
     and on behalf of all others    )
 6   similarly situated,            )
                                    ) CASE NO. 3:20-cv-4423
 7              Plaintiffs,         )
                                    )
 8     VS.                          )
                                    )
 9   YOUTUBE, LLC, and GOOGLE LLC,  )
                                    )
10              Defendants.         )
                                    )
11   YOUTUBE, LLC, and GOOGLE LLC,  )
                                    )
12           Counter-Plaintiffs,   )
                                    )
13     VS.                          )
                                    )
14   GÁBOR CSUPÓ, PIRATE MONITOR    )
     LTD., LLC, and PIRATE MONITOR  )
15   LLC,                           )
                                    )
16           Counter-Defendants.    )
                                    )
17
18            Confidential remotely conducted videotaped
19   30(b)(6) deposition of UNIGLOBE ENTERTAINMENT, LLC,
20   NAMRATA SINGH GUJRAL COOPER, taken on behalf of
21   Defendants, at Burbank, California, beginning at
22   9:49 a.m. and ending at 6:24 p.m., on Thursday,
23   June 30, 2022, before LYDIA ZINN, Certified Shorthand
24   Reporter No. 9223.
25
```

<div align="right">Page  2</div>

```
 1    APPEARANCES (via videoconference):
 2    For Plaintiffs Maria Schneider; Uniglobe Entertainment,
      LLC; AST Publishing Ltd.; and
 3    Namrata Singh Gujral Cooper:
                            Korein Tillery, LLC
 4                          205 North Michigan
                            Suite 1950
 5                          Chicago, IL  60601
                            (312) 641-9750
 6                          rewing@koreintillery.com
                            gzelcs@koreintillery.com
 7               BY:  RANDALL P. EWING
                            GEORGE A. ZELCS
 8
      For Defendants YouTube, LLC; Google LLC:
 9                          Wilson Sonsini Goodrich &
                              Rosati
10                          1301 Avenue of the Americas
                            40th Floor
11                          New York, NY 10019
                            (212) 497-7781
12                          erichlin@wsgr.com
                 BY:  ELI B. RICHLIN
13
                            Wilson Sonsini Goodrich &
14                            Rosati
                            650 Page Mill Road
15                          Palo Alto, CA  94304-1050
                            (650) 849-3456
16                          qhuang@wsgr.com
                 BY:  QIFAN HUANG
17
18
      Also Present:
19    Kevin Metti, Courtroom Connect
      Julio Pena, Videographer, Veritext
20
21
22
23
24
25
```

Page  3

```
 1    was a docudrama.  It takes -- it's a little bit          2:27:43PM

 2    different.

 3    Q    Okay.  Does Uniglobe still have possession of all

 4    of the work-made-for-hire agreements that went into the

 5    creation of 1 a Minute?                                   2:28:03PM

 6    A    Yes, we are.

 7    Q    And is Uniglobe the counterparty -- the party that

 8    entered into all of those agreements?

 9    A    Yeah, I believe so.

10    Q    Did you personally contribute to the authorship of  2:28:53PM

11    a screenplay or a script for 1 a Minute?

12    A    I don't know if I'm supposed to say this, but it

13    was largely my journey through breast cancer at a young

14    age that was depicted in the film.

15    Q    Okay.  Well, was there a script for 1 a Minute      2:29:32PM

16    that was created?

17    A    Yes, there was.

18    Q    Did you contribute to the authorship of this

19    script?  I understand it was based upon your

20    experience, but did you contribute to actually setting   2:29:52PM

21    down the words on the page to make a script for what

22    became a screenplay?

23    A    Yes.  I wrote it.

24    Q    You wrote it.  Okay.  Did you write it with anyone

25    else, or just by yourself?                               2:30:04PM
```

                                                        Page 113

CONFIDENTIAL

1          I, the undersigned, a Certified

2     Shorthand Reporter of the State of California, do

3     hereby certify:

4          That the foregoing proceedings were taken before

5     me at the time and place herein set forth; that any

6     witnesses in the foregoing proceedings, prior to

7     testifying, were placed under oath; that a verbatim

8     record of the proceedings was made by me using machine

9     shorthand which was thereafter transcribed under my

10    direction; further, that the foregoing is an accurate

11    transcription thereof.

12         I further certify that I am neither financially

13    interested in the action nor a relative or employee of

14    any attorney or any of the parties.

15        IN WITNESS WHEREOF, I have this date subscribed my

16    name.

17

18    Dated: July 6, 2022

19

20

21

22          _Lydia Zinn_

23          LYDIA ZINN, RPR, FCRR

24          CSR No. 9223

25

                                        Page 207

CONFIDENTIAL

```
 1   ELI B. RICHLIN, ESQ.

 2   erichlin@wsgr.com

 3                                    July 6, 2022

 4   RE: SCHNEIDER VS. YOUTUBE, LLC, and GOOGLE LLC

 5   JUNE 30, 2022, NAMRATA SINGH GUJRAL COOPER, JOB NO. 5301785

 6   The above-referenced transcript has been

 7   completed by Veritext Legal Solutions and

 8   review of the transcript is being handled as follows:

 9   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, noting the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21      Counsel - Original transcript to be released for signature

22      as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24      time of the deposition.

25

                                            Page 208
```

CONFIDENTIAL

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, noting the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                        Page 209

CONFIDENTIAL

```
1   RE: SCHNEIDER VS. YOUTUBE, LLC, and GOOGLE LLC
2   NAMRATA SINGH GUJRAL COOPER, JOB NO. 5301785
3              E R R A T A   S H E E T
4   PAGE 143 LINE 20 CHANGE "Left hand" to
5   ___"Different"_____
6   REASON__ Misspoke_____
7   PAGE 175 LINE 18 CHANGE Remove "to vote"
8   _____
9   REASON Misspoke_____
10  PAGE 183 LINE 16 CHANGE "reeds" to "reads"
11  _____
12  REASON Typo_____
13  PAGE_____ LINE_____ CHANGE_____
14  _____
15  REASON_____
16  PAGE_____ LINE_____ CHANGE_____
17  _____
18  REASON_____
19  PAGE_____ LINE_____ CHANGE_____
20  _____
21  REASON_____
22
23  _____ 08/01/2022___
24  WITNESS                   Date
25
```

Page 210

# Exhibit 4A

George A. Zelcs *(pro hac vice)*
gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe *(pro hac vice)*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
pkorologos@bsfllp.com
Joanna C. Wright *(pro hac vice)*
jwright@bsfllp.com
Demetri Blaisdell (*pro hac vice forthcoming*)
dblaisdell@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

AST Publishing Ltd.'s Responses & Objections    1    Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated; <br><br> Plaintiff, <br><br> vs. <br><br> YOUTUBE, LLC; and GOOGLE LLC; <br><br> Defendants. | CASE NO. 3:20-cv-4423 <br><br> **PLAINTIFF AST PUBLISHING LTD.'S, RESPONSES AND OBJECTIONS TO YOUTUBE AND GOOGLE'S FIRST SET OF DOCUMENT REQUESTS** |
| YOUTUBE, LLC and GOOGLE LLC; <br><br> Counter-Plaintiffs, <br><br> vs. <br><br> GÁBOR CSUPÓ, PIRATE MONITOR LTD., LLC, and PIRATE MONITOR LLC, <br><br> Counter-Defendants. | |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiff AST Publishing Ltd. ("Plaintiff" or "AST") submits the following responses and objections to Defendants YouTube, LLC's ("YouTube") and Google LLC's ("Google") (collectively "Defendants") First Set of Document Requests to AST, dated November 24, 2021 (the "Requests"), in the above-captioned action (the "Action").

By these Responses, AST does not intend to, and does not, (1) waive any objection as to the admissibility of evidence or the competency of, relevancy of, materiality of, or privilege attaching to any information disclosed in these responses, or (2) waive the right to object to other discovery requests or undertakings involving or reflecting the subject matter of the Requests or these Responses. These Responses do not constitute, nor should they be construed as, admissions with respect to the relevancy or admissibility of any evidence or document identified herein or the truth or accuracy of

any statement, characterization, or other information contained in such document. AST expressly does not concede the relevance or materiality of any of these Responses or the subject matter they refer to.

AST's discovery process and preparation for trial of this matter is not complete as of the date of these Responses and is ongoing. AST anticipates that discovery and preparation for trial will reveal additional information not presently known, but that may be relied upon in the future. These Responses to the Requests are based upon information currently known to or believed to be true by AST. AST reserves the right to modify or supplement these Responses upon completion of discovery and preparation for trial of this matter, and to use at trial, or in any motion or deposition, any documents, facts, or supporting evidence of any sort later developed or discovered.

AST reserves the right to amend or revise these Responses, including based on any responses or objections submitted by Defendants to any of AST's discovery requests. AST also asserts that any discovery obligations should be mutual between parties, so that if any of AST's objections are overridden, Defendants should be subject to the same scope of discovery, including definitions and instructions for discovery compliance.

## GENERAL OBJECTIONS

1. AST objects to the Requests to the extent they impose obligations in addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any court governing discovery in this case, or any discovery protocol agreed upon by the parties.

2. AST objects to the extent that Defendants' Requests purport to seek discovery of every conceivable document, or "any" or "all" documents, relating to a particular request. Unless otherwise specified, for any categories of documents that AST agrees to produce, AST will produce documents located through a reasonable search proportionate to the needs of the case.

3. AST objects to each Request to the extent it purports to seek information protected by the attorney-client privilege or the work-product doctrine, and AST will not provide any privileged and/or protected information. Any disclosure of privileged information would be inadvertent and should not be deemed a waiver of any applicable privileges.

4.      AST objects to each Request to the extent that it contains words and/or phrases that are not defined, thereby rendering the Request overboard, vague, and ambiguous.

5.      AST objects to the Requests to the extent that they seek information not within AST's possession, custody, or control.

6.      AST objects to the Requests to the extent that they purport to impose a burden on AST to provide documents or information already in Defendants' possession, custody, or control, and/or which are publicly available, otherwise equally available to all parties, or available to Defendants from a less burdensome, more efficient, more convenient, or less expensive source than they are available to AST, or through a more convenient, more efficient, less burdensome, or less expensive means than the Requests.

7.      Any objection to any of the Requests is not an admission that AST has any information or documents responsive to a particular Request.

8.      When a response indicates that AST will produce documents, AST does not represent that any responsive documents are in their possession, custody, or control, but rather that production will be made if any such documents are located after AST performs a reasonable search proportionate to the needs of the case of documents that are in its possession, custody, or control.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      AST objects to the extent that Defendants' Definitions and Instructions seek information covered by privilege(s), including the attorney-client and attorney work product privileges. *See, e.g.*, Defendants' Definition No 1.

2.      AST objects to the extent that Defendants' Requests purport to seek discovery of every conceivable document, or "any" or "all" documents, relating to a particular request. Unless otherwise specified, for any categories of documents that AST agrees to produce, AST will produce documents located through a reasonable search proportionate to the needs of the case.

3.      AST objects to the instruction to provide all documents in the possession, custody, or control of anyone other than AST. Consistent with obligations under the Federal Rules and applicable

law, AST will undertake reasonable efforts to produce responsive documents within their possession, custody, or control.

4.   AST objects to the failure to include an instruction as to the relevant time period for the Requests. AST will apply reasonable date restrictions to their searches for responsive documents, consistent with obligations under the Federal Rules and applicable law.

<div align="center"><strong>SPECIFIC OBJECTIONS AND RESPONSES</strong></div>

The General Objections and Objections to Definitions and Instructions set forth above are incorporated into the Specific Objections below, as if incorporated therein. AST reserves the right to amend or revise their Specific Objections, including after meeting and conferring with Defendants regarding any Request. A response to any request indicating that AST agrees to produce documents is not an admission that documents responsive to the Request exist and does not waive any objections to the use of any discovery produced in response to the Request.

**DOCUMENT REQUEST NO. 1:**

All documents related to copyright registrations and renewals of registration for the Works In Suit identified in Your complaint.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 1 on the grounds that it is vague and overbroad.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 1, AST will produce copyright registrations and renewals of registration in their control, possession, or custody, if any, for the Works in Suit. For any documents requested in Request No. 1 beyond that, AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents responsive to Request No. 1, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

AST Publishing Ltd.'s Responses & Objections     5     Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

**DOCUMENT REQUEST NO. 2:**

All documents related to the authorship and/or ownership of each Work In Suit identified in Your complaint, including but not limited to the identity of the author(s) and creator(s), any agreements You have with author(s) or creator(s) of the Works In Suit, and any assignments of copyrights in relation to the Works In Suit.

**OBJECTIONS AND RESPONSE:** AST objects that this request is vague, ambiguous, and overbroad.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 2, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, sufficient to show authorship and/or ownership of each Work in Suit identified in the complaint, including any agreements AST has with the author(s) or creator(s) of the Works in Suit, and any assignments of copyrights in relation to the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents responsive to Request No. 2, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

**DOCUMENT REQUEST NO. 3:**

All documents and communications related to the ownership of the copyrights of all Works In Suit identified in Your complaint.

**OBJECTIONS AND RESPONSE:** AST objects that this request is vague, ambiguous, overbroad, and duplicative.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 3, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, sufficient to show ownership of each Work in Suit identified in the complaint. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents

AST Publishing Ltd.'s Responses & Objections        6        Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

responsive to Request No. 3, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

**DOCUMENT REQUEST NO. 4:**

For each Work In Suit identified in Your complaint, all documents relating to copyright licenses, including but not limited to all implied, exclusive, and non-exclusive licenses, to the Work In Suit.

**OBJECTIONS AND RESPONSE:** AST objects that this request is vague, ambiguous, and overbroad.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 4, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to copyright licenses to the Works in Suit.

**DOCUMENT REQUEST NO. 5:**

All documents related to the publication of each Work In Suit identified in Your complaint, including but not limited to documents related to the date and location of first publication, and the date of first publication in the United States, if applicable.

**OBJECTIONS AND RESPONSE:**

AST objects that this request is vague and ambiguous as to "publication" and "first publication." AST further objects that this request is overbroad, calls for a legal conclusion, and seeks documents not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 5, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, sufficient to show the date, location, and method of first publication of the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents responsive to Request No. 5, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

AST Publishing Ltd.'s Responses & Objections        7        Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

**DOCUMENT REQUEST NO. 6:**

For each Work In Suit identified in Your complaint, all documents relating to rights held by any person to grant licenses to the Work In Suit.

**OBJECTIONS AND RESPONSE:** AST objects that this request is vague and ambiguous as to "rights" and "licenses." AST further objects that this request is overbroad, duplicative, and seeks information that is not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 6, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to copyright licenses to the Works in Suit.

**DOCUMENT REQUEST NO. 7:**

One copy of each Work In Suit identified in Your complaint in its entirety.

**OBJECTIONS AND RESPONSE:** Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 7, AST will produce one copy of each Work In Suit.

**DOCUMENT REQUEST NO. 8:**

All communications between You and YouTube, including but not limited to "takedown notices" that You provided to YouTube pursuant to 17 U.S.C. § 512(c)(3) and any other documents You sent to YouTube relating to alleged copyright infringement, including but not limited to the instances of infringement identified in accordance with the Court's order of November 16, 2021 (Dkt. No. 98).

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 8 because it purports to impose a burden on AST to provide documents or information already in Defendants' possession, custody, or control. AST further objects to this request as overbroad and not relevant to any party's claim or defense to the extent it concerns works that are not Works in Suit.

Subject to and without waiving this objection, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 8, AST will perform a reasonable search

1  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

2  related to the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed

3  its review and analysis of available or relevant documents responsive to Request No. 8, but that it

4  currently believes that responsive documents will be withheld on the basis of the objections contained

5  herein.

6  **DOCUMENT REQUEST NO. 9:**

7      All documents and communications concerning any and all methods (including software or

8  computer programs) to prevent, detect, or remove uploads of Your copyrighted material to any

9  website or to prevent re-loading of copyrighted material after such material has been removed from

10 any website.

11 **OBJECTIONS AND RESPONSE:** AST objects to Request No. 9 as vague and ambiguous because

12 it fails to define "methods," "copyrighted material," and "re-loading," and because it does not specify

13 the time period that applies to the Request, whether the methods are those employed, created, or used

14 by AST, or the websites that are covered by this Request. AST further objects that this request is

15 overbroad and not relevant to any party's claim or defense to the extent it applies to works that are

16 not Works in Suit. AST is willing to meet and confer with Defendants about a more properly-tailored

17 and narrowed request.

18 **DOCUMENT REQUEST NO. 10:**

19     All documents and communications concerning the presence of Your copyrighted content on

20 any website that is not owned or operated by You.

21 **OBJECTIONS AND RESPONSE:** AST objects to Request No. 10 as vague and ambiguous

22 because it fails to define "copyrighted content" and "presence" and because it fails to specify the time

23 period that applies to the Request. AST also objects on the grounds that it is overbroad and seeks

24 information that is not relevant to any party's claim or defense, including because it applies to works

25 that are not Works in Suit. AST is willing to meet and confer with Defendants about a more properly-

26 tailored and narrowed request.

27

28

AST Publishing Ltd.'s Responses & Objections          9          Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

**DOCUMENT REQUEST NO. 11:**

All agreements between You and any person or entity concerning the use of Your copyrighted content on any website.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 11 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further objects to this request as vague and ambiguous as to "use" and "copyrighted content." AST also objects on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense, including because it applies to works that are not Works in Suit. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 12:**

All documents and communications concerning YouTube.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 12 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 13:**

Documents sufficient to identify all email addresses You have used to communicate with YouTube.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 13 because it purports to impose a burden on AST to provide documents or information already in Defendants' possession, custody, or control. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 13, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents responsive to Request No. 13, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

AST Publishing Ltd.'s Responses & Objections       10       Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

**DOCUMENT REQUEST NO. 14:**

Documents sufficient to identify all email addresses You have used in connection with any Google user account.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 14 because it purports to impose a burden on AST to provide documents or information already in Defendants' possession, custody, or control. AST also objects on the grounds that it seeks information that is not relevant to any party's claim or defense. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 15:**

Copies of all videos that You or Your agents uploaded to YouTube.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 15 because it purports to impose a burden on AST to provide documents or information already in Defendants' possession, custody, or control. AST also objects on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further objects to the definition of "You" and "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 16:**

All documents relating to any alleged infringement of a Work In Suit on the YouTube service.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 16 on the grounds that it is vague.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 16, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to the Works in Suit.

**DOCUMENT REQUEST NO. 17:**

Any communications with third parties concerning the applicability of the DMCA to any YouTube, Google, or third-party website.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 17 as vague and ambiguous because it fails to define "applicability" and "third-party website" and because it fails to specify the time period that applies to the Request and which entity or person communicated with any third parties. AST also objects on the grounds that it is overbroad, seeks privileged information, and seeks information that is not relevant to any party's claim or defense. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 18:**

Documents sufficient to show when You became aware of each YouTube video identified in accordance with the Court's order of November 16, 2021 (Dkt. No. 98).

**OBJECTIONS AND RESPONSE:** AST objects that this request potentially seeks documents protected by privileges, including but not limited to attorney-client privilege and the work product doctrine. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST further objects that this request is overbroad and seeks information not relevant to any party's claim or defense.

**DOCUMENT REQUEST NO. 19:**

All documents and communications concerning Your efforts, or the efforts of any third party hired by You, to monitor and report alleged copyright violations on YouTube, including but not limited to all communications or agreements between You and any third parties and invoices or other documents associated with work performed and costs thereof.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 19 as overbroad and not relevant to any party's claim or defense as applied to works that are not Works in Suit and as applied to invoices or the cost of such services, if any. AST further objects to Request No. 19 as vague and ambiguous because it fails to define "copyright violations." AST further objects to the definition of "You" and

"Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 19, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, sufficient to show agreements and efforts by AST or third parties to monitor and report alleged copyright violations on YouTube related to the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents responsive to Request No. 19, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

**DOCUMENT REQUEST NO. 20:**

All documents and communications relating to how You identified the Works In Suit and alleged infringements thereof.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 20 as vague and ambiguous because it fails to define "identified" and "alleged infringements" and because it fails to specify the time period that applies to the Request. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST further objects that this Request seeks information that is not relevant to any party's claim or defense. AST further objects to this Request to the extent it seeks information covered by privilege(s), including the attorney-client and attorney work product privileges.

**DOCUMENT REQUEST NO. 21:**

All documents and communications concerning Your use of YouTube including but not limited to:

(a) all emails sent, received, or maintained by You referring to YouTube;

(b) all documents and communications concerning any occasion on which You or Your agents have uploaded videos to YouTube;

AST Publishing Ltd.'s Responses & Objections       13       Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

1    (c) all documents and communications concerning any occasions on which You viewed videos

2  on YouTube, shared videos found on YouTube with others, or used the embed HTML code on

3  YouTube to embed videos found on YouTube onto any website; and

4    (d) documents sufficient to identify YouTube user accounts used by You or Your agents.

5  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 21 as vague and ambiguous

6  because it fails to define "shared" and because it fails to specify the time period that applies to the

7  Request. AST further objects to the definition of "You" and "Your" as overbroad and burdensome

8  and because it makes this Request seek information that is not relevant to any party's claim or defense.

9  AST also objects on the grounds that it is overbroad and seeks information that is not relevant to any

10  party's claim or defense. AST is willing to meet and confer with Defendants about a more properly-

11  tailored and narrowed request.

12  **DOCUMENT REQUEST NO. 22:**

13    All documents and communications concerning the use of YouTube to provide marketing or

14  promotion of Your content.

15  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 22 as vague and ambiguous

16  because it fails to define "marketing," "content," and "promotion" and what it means to "provide"

17  either of them and because it fails to specify the time period that applies to the Request. AST further

18  objects to the definition of "Your" as overbroad and burdensome and because it makes this Request

19  seek information that is not relevant to any party's claim or defense. AST also objects on the grounds

20  that it is overbroad and seeks information that is not relevant to any party's claim or defense in that

21  the Request is not limited to the Works in Suit.

22    Subject to and without waiving these objections, the General Objections, or the Objections to

23  Definitions and Instructions, in response to Request No. 22, AST will perform a reasonable search

24  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

25  related to its use of YouTube to market or promote the Works in Suit. AST states in accordance with

26  Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents

27

28

AST Publishing Ltd.'s Responses & Objections       14       Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

responsive to Request No. 22, but that it currently believes that responsive documents will be withheld on the basis of the objections contained herein.

**DOCUMENT REQUEST NO. 23:**

All documents and communications concerning benefits You obtained through the posting of Your content, or videos containing any portion of Your content, on YouTube.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 23 as vague and ambiguous because it fails to define "benefits" and "obtained" and because it fails to specify the time period that applies to the Request. AST further objects to the definition of "You" and "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST further objects to this request as overbroad and not relevant to any party's claim or defense to the extent it applies to works that are not Works in Suit. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 24:**

Documents sufficient to show Your corporate structure, including but not limited to all affiliated entities and shareholders.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 24 as vague and ambiguous because it fails to define "corporate structure" and "affiliated entities and shareholders." AST further objects to the definition of "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 24, AST will produce documents sufficient to show its corporate structure.

**DOCUMENT REQUEST NO. 25:**

Documents sufficient to show all individuals affiliated with You, including but not limited to employees, officers, directors, managers, agents, independent contractors, and shareholders.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 25 as vague and ambiguous because it fails to define "affiliated" and because it fails to specify the time period that applies to the

AST Publishing Ltd.'s Responses & Objections      15      Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

1   Request. AST further objects to the definition of "You" as overbroad and burdensome and because

2   it makes this Request seek information that is not relevant to any party's claim or defense. AST further

3   objects to Request No. 25 on the grounds that it seeks information that is not relevant to any party's

4   claim or defense.

5          Subject to and without waiving these objections, the General Objections, or the Objections to

6   Definitions and Instructions, in response to Request No. 25, AST will perform a reasonable search

7   proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

8   sufficient to show all employees, officers, directors, managers, agents, independent contractors, and

9   shareholders with involvement in the ownership, licensing, distribution, or enforcement of copyrights

10  for the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its

11  review and analysis of available or relevant documents responsive to Request No. 25, but that it

12  currently believes that responsive documents will be withheld on the basis of the objections contained

13  herein.

14  **DOCUMENT REQUEST NO. 26:**

15         Documents sufficient to show Your financial condition and accounting controls, including

16  but not limited to revenue, capitalization, cash flow, balance sheets, and income statements.

17  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 26 as vague and ambiguous

18  because it fails to define "financial condition" and "accounting controls" and because it fails to specify

19  the time period that applies to the Request. AST further objects to the definition of "Your" as

20  overbroad and burdensome and because it makes this Request seek information that is not relevant to

21  any party's claim or defense. AST also objects on the grounds that it is harassing and seeks information

22  that is not relevant to any party's claim or defense. AST further objects that the request is unduly

23  burdensome because it is not proportional to the needs of the case, the amount in controversy, and

24  because the burden and expense of the proposed discovery outweighs its likely benefit.

25         Subject to and without waiving these objections, the General Objections, or the Objections to

26  Definitions and Instructions, in response to Request No. 26, AST will perform a reasonable search

27  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

28

AST Publishing Ltd.'s Responses & Objections     16     Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

1   that relate to revenues derived from the Works in Suit. AST states in accordance with Rule 34(b)(2)(C)

2   that it has not completed its review and analysis of available or relevant documents responsive to

3   Request No. 26, but that it currently believes that responsive documents will be withheld on the basis

4   of the objections contained herein.

5   **DOCUMENT REQUEST NO. 27:**

6        All documents and communications concerning the financial effect or other effects, if any, on

7   You caused by the posting of the Works In Suit identified in Your complaint on YouTube or any

8   other website.

9   **OBJECTIONS AND RESPONSE:** AST objects to Request No. 27 as vague and ambiguous

10  because it fails to define "financial effect" and "other effects," and because it fails to specify the time

11  period that applies to the Request. AST further objects to the definition of "You" and "Your" as

12  overbroad and burdensome and because it makes this Request seek information that is not relevant to

13  any party's claim or defense. AST further objects that this request is not relevant to any party's claim

14  or defense to the extent it applies to "any other website."

15       Subject to and without waiving these objections, the General Objections, or the Objections to

16  Definitions and Instructions, in response to Request No. 27, AST will perform a reasonable search

17  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

18  that relate to the financial impact on AST of the posting of the Works in Suit on YouTube. AST states

19  in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis of available or

20  relevant documents responsive to Request No. 27, but that it currently believes that responsive

21  documents will be withheld on the basis of the objections contained herein.

22  **DOCUMENT REQUEST NO. 28:**

23       All documents concerning revenue obtained by You in connection with the appearance of

24  Your works on the YouTube service.

25  **OBJECTIONS AND RESPONSE:** AST objects that this request is overbroad and vague and

26  ambiguous as to "revenue obtained by You in connection with." AST further objects to the definition

27

28

of "You" and "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 28, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, that relate to revenues obtained in connection with the appearance of the Works in Suit on YouTube.

**DOCUMENT REQUEST NO. 29:**

With respect to each Work In Suit identified in Your complaint, all documents and communications concerning its financial performance, including but not limited to profitability, marketing plans, advertising revenue, licensing revenue, forecasts, sales revenue, and broadcast revenue.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 29 as vague and ambiguous because it fails to define "financial performance" and because it fails to specify the time period that applies to the Request.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 29, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to the Works in Suit and their financial performance.

**DOCUMENT REQUEST NO. 30:**

All documents and communications concerning whether YouTube affects the commercial market for the Works In Suit identified in Your complaint.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 30 as vague and ambiguous because it fails to define "affects" and "commercial market" and because it fails to specify the time period that applies to the Request.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 30, AST will perform a reasonable search

1  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

2  related to the Works in Suit.

3  **DOCUMENT REQUEST NO. 31:**

4        All documents and communications concerning any damages or harm, including but not

5  limited to monetary damage, You claim to have suffered because of YouTube, including but not

6  limited to the following:

7        (a) documents and communications concerning what, if any, sales or licensing revenues were

8  lost by You as a result of YouTube;

9        (b) documents and communications concerning any particular or individual lost sale(s) or

10  licensing revenue(s) of product(s) or of advertising revenue You claim are attributable to YouTube;

11  and

12        (c) documents and communications concerning any online consumption of Your content

13  since 2000.

14  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 31 subpart (c) on the grounds that

15  it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further

16  objects to subpart (c) on the grounds that "online consumption" is vague and ambiguous. AST objects

17  to subparts (a) and (b) as overbroad and seeking information that is not relevant to any party's claim

18  or defense as applied to works that are not Works in Suit. AST further objects to the definition of

19  "You" and "Your" as overbroad and burdensome and because it makes this Request seek information

20  that is not relevant to any party's claim or defense.

21        Subject to and without waiving these objections, the General Objections, or the Objections to

22  Definitions and Instructions, in response to Request No. 31, AST will perform a reasonable search

23  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

24  parties for subparts (a) and (b) related to the Works in Suit. AST states in accordance with Rule

25  34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents

26  responsive to Request No. 31, but that it currently believes that responsive documents will be withheld

27  on the basis of the objections contained herein. AST will not produce documents responsive to

28

subpart (c), but is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 32:**

All documents relating to the popularity of each Work In Suit, identified in Your complaint, including but not limited to unit sales, online video views, music streams, and downloads.

**OBJECTIONS AND RESPONSE:** AST objects to this request as vague and ambiguous as it relates to "popularity," "unit sales," "music streams," and "downloads."

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 32, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to unit sales, online video views, music streams, and downloads of the Works in Suit.

**DOCUMENT REQUEST NO. 33:**

All documents and communications concerning any noninfringing use of YouTube related to the Works In Suit identified in Your complaint.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 33 as vague and ambiguous because it does not explain what is meant by "noninfringing use of YouTube related to the Works In Suit," because it does not explain what person or entity "use[d] YouTube" and in what way, and because it fails to specify the time period that applies to the Request. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 34:**

All documents and communications concerning any and all efforts by You or on Your behalf to investigate, detect, assess, learn about, evaluate, and/or monitor any alleged copyright infringement that takes place on or is facilitated via the Internet.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 34 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further objects to the definition of "You" and "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST further objects

as vague and ambiguous because it fails to explain what it means for infringement to be "facilitated via the Internet" and because it fails to specify the time period that applies to the Request. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 35:**

All documents and communications concerning the monetization of Your content on the Internet by any means, including but not limited to online advertising, sales of digital content, subscription services, and partnerships with third parties.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 35 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further objects to the definition of "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST further objects as vague and ambiguous because it fails to define "monetization" and "content" and because it fails to specify the time period that applies to the Request. AST is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 36:**

All documents and communications concerning Your content on YouTube, including but not limited to documents reflecting Your posting Your content on YouTube, Your authorization of the posting and display of Your content on YouTube, decisions not to remove Your content posted on YouTube, or knowledge that Your content appeared on YouTube.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 36 as vague and ambiguous because it fails to define "content" and "display," and because it fails to specify the time period that applies to the Request. AST further objects to the definition of "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense. AST further objects that this request is overbroad and not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 36, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, related to the

1  Works in Suit and YouTube. AST states in accordance with Rule 34(b)(2)(C) that it has not completed

2  its review and analysis of available or relevant documents responsive to Request No. 36, but that it

3  currently believes that responsive documents will be withheld on the basis of the objections contained

4  herein.

5  **DOCUMENT REQUEST NO. 37:**

6       All documents and communications concerning technical measures that are used by copyright

7  owners, including but not limited to You, to identify or protect content posted on websites.

8  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 37 as vague and ambiguous

9  because it fails to define "technical measures," "protect," and "content," and because it fails to specify

10  the time period that applies to the Request. AST is willing to meet and confer with Defendants about

11  a more properly-tailored and narrowed request.

12  **DOCUMENT REQUEST NO. 38:**

13       All documents and communications concerning each DMCA "takedown notice" that You

14  have contemplated sending or have sent, whether directly or via a third party, pursuant to 17 U.S.C §

15  512(c)(3).

16  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 38 because it purports to impose

17  a burden on AST to provide documents or information already in Defendants' possession, custody,

18  or control. AST further objects to this request as overbroad and not relevant to any party's claim or

19  defense because it is not limited to the Works in Suit and is not limited to YouTube. AST further

20  objects to this request as vague with respect to "contemplated." AST further objects to the definition

21  of "You" as overbroad and burdensome and because it makes this Request seek information that is

22  not relevant to any party's claim or defense.

23       Subject to and without waiving this objection, the General Objections, or the Objections to

24  Definitions and Instructions, in response to Request No. 38, AST will perform a reasonable search

25  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

26  relating to "takedown notices" sent to YouTube for the Works in Suit. AST states in accordance with

27  Rule 34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents

28

1   responsive to Request No. 38, but that it currently believes that responsive documents will be withheld

2   on the basis of the objections contained herein.

3   **DOCUMENT REQUEST NO. 39:**

4        All documents and communications concerning any claim that You have falsely or otherwise

5   incorrectly claimed that material or activity on a website is infringing and/or unauthorized.

6   **OBJECTIONS AND RESPONSE**: AST objects to Request No. 39 on the grounds that it is

7   overbroad and seeks information that is not relevant to any party's claim or defense. AST further

8   objects to this request as vague and ambiguous because the terms "falsely or otherwise incorrectly

9   claimed" is not defined. AST further objects to the definition of "You" as overbroad and burdensome

10   and because it makes this Request seek information that is not relevant to any party's claim or defense.

11   **DOCUMENT REQUEST NO. 40:**

12        All documents and communications concerning any mistakes by You or a third party in

13   identifying allegedly infringing material on YouTube.

14   **OBJECTIONS AND RESPONSE:** AST objects to Request No. 40 on the grounds that it is

15   overbroad and unduly burdensome in that it seeks information that is not within AST's possession or

16   control, and seeks information that is not relevant to any party's claim or defense. AST further objects

17   to this request as vague and ambiguous because it fails to define "mistakes," "material," and "allegedly

18   infringing," and because it fails to specify the time period that applies to the Request. AST further

19   objects to the definition of "You" as overbroad and burdensome and because it makes this Request

20   seek information that is not relevant to any party's claim or defense.

21        Subject to and without waiving these objections, the General Objections, or the Objections to

22   Definitions and Instructions, in response to Request No. 40, AST will perform a reasonable search

23   for documents related to AST's Works in Suit and will produce responsive, non-privileged documents,

24   if any, related to the Works in Suit and YouTube. AST states in accordance with Rule 34(b)(2)(C) that

25   it has not completed its review and analysis of available or relevant documents responsive to Request

26   No. 40, but that it currently believes that responsive documents will be withheld on the basis of the

27   objections contained herein.

28

**DOCUMENT REQUEST NO. 41:**

All documents that You intend to rely on in this case and/or that serve as the basis for any allegation in Your complaint.

**OBJECTIONS AND RESPONSE:** Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 41, AST will perform a reasonable search for documents and will produce responsive, non-privileged documents.

**DOCUMENT REQUEST NO. 42:**

All documents and communications concerning any instance in which You requested access to use YouTube's Copyright Protection Services, but were denied such access.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 42 because it purports to impose a burden on AST to provide documents or information already in Defendants' possession, custody, or control. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving the General Objections or the Objections to Definitions and Instructions, in response to Request No. 42, AST will perform a reasonable search for documents and will produce responsive, non-privileged documents, if any.

**DOCUMENT REQUEST NO. 43:**

All documents and communications that You have filed with, sent to, or received from the United States Copyright Office.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 43 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 43, AST will perform a reasonable search for documents and will produce responsive, non-privileged documents, if any, related to the Works in Suit. AST states in accordance with Rule 34(b)(2)(C) that it has not completed its review and analysis

1   of available or relevant documents responsive to Request No. 43, but that it currently believes that

2   responsive documents will be withheld on the basis of the objections contained herein.

3   **DOCUMENT REQUEST NO. 44:**

4        All communications with third parties concerning YouTube or this lawsuit.

5   **OBJECTIONS AND RESPONSE:** AST objects to Request No. 44 on the grounds that it is

6   overbroad, potentially seeks privileged information, and seeks information that is not relevant to any

7   party's claim or defense. AST further objects to Request No. 44 because it fails to specify the time

8   period that applies to the Request and which entity or person communicated with any third parties.

9   **DOCUMENT REQUEST NO. 45:**

10       All communications between You and any member of the purported plaintiff class concerning

11  YouTube or Google, any matter set forth in the complaint, Your representation of the purported

12  class, and/or any matter related to the conduct of this litigation.

13  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 45 because it potentially seeks

14  information covered by privilege(s), including the attorney-client and attorney work product privileges.

15  AST also objects on the grounds that it is overbroad and seeks information that is not relevant to any

16  party's claim or defense. AST further objects to the definition of "You" and "Your" as overbroad and

17  burdensome and because it makes this Request seek information that is not relevant to any party's

18  claim or defense.

19  **DOCUMENT REQUEST NO. 46:**

20       All documents and communications concerning Your participation as a plaintiff in this action,

21  including but not limited to all communications between You and any other person or entity

22  concerning this lawsuit.

23  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 46 on the grounds that it is vague,

24  overbroad, potentially seeks privileged information, and seeks information that is not relevant to any

25  party's claim or defense. AST further objects to the definition of "You" and "Your" as overbroad and

26  burdensome and because it makes this Request seek information that is not relevant to any party's

27  claim or defense.

28

AST Publishing Ltd.'s Responses & Objections    25    Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

**DOCUMENT REQUEST NO. 47:**

All documents and communications concerning the actual, promised, or expected receipt by You of anything of monetary value from any person or entity in connection with this lawsuit.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 47 on the grounds that it potentially seeks privileged information and seeks information that is not relevant to any party's claim or defense. AST further objects to the definition of "You" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

**DOCUMENT REQUEST NO. 48:**

All documents and communications concerning any written or oral agreement between You and any person regarding the payment of the attorneys' fees, costs, or expenses of this litigation.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 48 on the grounds that it potentially seeks privileged information and seeks information that is not relevant to any party's claim or defense.

**DOCUMENT REQUEST NO. 49:**

All documents and communications concerning the date or dates on which You first communicated with each of Your counsel of record regarding the matters at issue in this lawsuit.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 49 on the grounds that it seeks privileged information and seeks information that is not relevant to any party's claim or defense.

**DOCUMENT REQUEST NO. 50:**

All documents and communications concerning Your decision to seek to be named as a plaintiff in this lawsuit.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 50 on the grounds that it seeks privileged information and seeks information that is not relevant to any party's claim or defense.

**DOCUMENT REQUEST NO. 51:**

All documents concerning use of any YouTube Copyright Protection Service system to identify, claim, block, or monetize Your copyrighted works by You, your affiliates, or any other person.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 51 on the grounds that it is unduly burdensome in that it seeks information that is not within AST's possession or control. AST further objects to this request as vague and ambiguous as to "identify, claim, block, or monetize." AST objects to this request as overbroad to the extent it applies to "works" that are not Works in Suit. AST further objects to the definition of "You" and "Your" as overbroad and burdensome and because it makes this Request seek information that is not relevant to any party's claim or defense.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 51, AST will perform a reasonable search for documents and will produce responsive, non-privileged documents, if any, related to the Works in Suit and YouTube's Copyright Protection Service.

**DOCUMENT REQUEST NO. 52:**

All documents and communications concerning YouTube accounts created or used by Oleg Novikov in connection with AST or with the Works in Suit.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 52 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense. AST further objects to the extent this request seeks documents already in Defendants' possession, custody, or control.

Subject to and without waiving the foregoing objections, the General Objections or the Objections to Definitions and Instructions, in response to Request No. 52, AST will perform a reasonable search proportionate to the needs of the case and will produce responsive, non-privileged documents, if any, relating to the documents and communications concerning YouTube accounts created or used by Oleg Novikov in connection with the business of AST.

**DOCUMENT REQUEST NO. 53:**

All agreements between You and AZAPI.

**OBJECTIONS AND RESPONSE:** AST objects to Request No. 53 on the grounds that it is overbroad and seeks information that is not relevant to any party's claim or defense.

**DOCUMENT REQUEST NO. 54:**

1    All documents and communications between You and AZAPI regarding YouTube or this

2  lawsuit.

3  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 54 on the grounds that it is

4  overbroad, seeks privileged information, and seeks information that is not relevant to any party's claim

5  or defense. AST further objects to the definition of "You" as overbroad and burdensome and because

6  it makes this Request seek information that is not relevant to any party's claim or defense.

7    Subject to and without waiving these objections, the General Objections, or the Objections to

8  Definitions and Instructions, in response to Request No. 54, AST will perform a reasonable search

9  for documents and will produce responsive, non-privileged documents, if any, related to the Works

10  in Suit, copyrights or infringement of copyrights, and YouTube. AST states in accordance with Rule

11  34(b)(2)(C) that it has not completed its review and analysis of available or relevant documents

12  responsive to Request No. 54, but that it currently believes that responsive documents will be withheld

13  on the basis of the objections contained herein.

14  **DOCUMENT REQUEST NO. 55:**

15    All documents concerning Your selection of works to be included as Works in Suit.

16  **OBJECTIONS AND RESPONSE:** AST objects to Request No. 55 on the grounds that it is vague

17  and overbroad, seeks information that is not relevant to any party's claim or defense, and potentially

18  seeks information protected by privilege, including attorney-client privilege and the work product

19  doctrine. AST further objects to the definition of "Your" as overbroad and burdensome and because

20  it makes this Request seek information that is not relevant to any party's claim or defense.

21

22    Dated: December 27, 2021          Respectfully submitted,

23                                      /s/ Randall P. Ewing, Jr.
                                        George A. Zelcs (*pro hac vice*)
24                                      Randall P. Ewing, Jr. (*pro hac vice*)
                                        Ryan Z. Cortazar (*pro hac vice*)
25                                      KOREIN TILLERY, LLC
                                        205 North Michigan, Suite 1950
26                                      Chicago, IL 60601
                                        Telephone: (312) 641-9750
27                                      Facsimile: (312) 641-9751

28

AST Publishing Ltd.'s Responses & Objections      28      Case No. 3:20-cv-4423
to Defendants' First Set of
Document Requests

Stephen M. Tillery (*pro hac vice*)
Steven M. Berezney, CA Bar #329923
Carol O'Keefe (*pro hac vice*)
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
Joanna Wright (*pro hac vice*)
Demetri Blaisdell (*pro hac vice forthcoming*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2021, I caused the foregoing to be served on all opposing counsel of record by email at the  addresses listed below:

Schneidervyoutube@wsgr.com

_____/s/ Steven M. Berezney_____

# Exhibit 4B

**License Agreement No.** [handwritten:] *205*-**VREM**-**16** [hw:] *ASE00000000078310*
**(exclusive license)**

Moscow

May 25, 2016.

**[Redacted - PII]** hereinafter referred to as the Licensor, of the one part, and AST Publishing House LLC, represented by **[Redacted - PII]**, acting under Power of Attorney (No. 20-15 dated 08/17/2015), hereinafter referred to as the Licensee, of the other part, collectively also referred to as the Parties, have entered into this Agreement (the "Agreement") and agreed as follows:

**1. Subject Matter of the Agreement**

**1.1.** In accordance with the terms and conditions of this Agreement, the Licensor, as the author of the work in Russian entitled *"Working Mom Lifehacks"* on _____ author's sheets (the "Work"), transfers to the Licensee, for a fee, the right to use it under the terms and conditions of this Agreement, and the Licensee accepts the rights transferred by the Licensor and pays the fee specified in this Agreement.

**1.2.** The list of transferred rights, the procedure, and modalities of using the Work, as well as the territorial and time limits are specified in the relevant sections of this Agreement.

**2. Fee**

**2.1.** The amount, procedure, and terms of payment of fee to the Licensor are determined in Appendix No. 1 to this Agreement *"Licensor's Fee. Payment Procedure and Terms"*. No provision of this Agreement may be interpreted in a manner that would cause the amount of fee to be different from that set forth in Appendix No. 1.

**2.2.** Fee shall be paid in Russian rubles by bank transfer to the bank account of the Licensor or by cash payment to the Licensee's cash desk.

**2.3.** Upon payment of fee, the Licensee will withhold and pay personal income tax to the budget as a tax agent of the Licensor.[1]

**3. Guarantees**

**3.1.** The Licensor hereby guarantees that it is the sole and lawful author of the Work, owns the exclusive right thereto, and that there is nothing to prevent it from entering into this Agreement. The rights to the Work have not been disputed, pledged, assigned to third parties, or encumbered by any rights or claims of third parties.

**3.2.** The Licensor hereby guarantees that the Work does not contain any unauthorized parts (borrowings, insertions, references, etc.), that the Licensor has all the necessary rights to use all the elements of the Work, including the names and descriptions of the characters, as well as[2] illustrations, epigraphs, etc., and that the use of said objects in the Work does not violate the legislation of the Russian Federation, does not infringe the rights and does not harm the business reputation, honor and dignity of third parties.

**3.3.** The Licensor hereby guarantees that the Work does not contain insults, intentional slander, information prohibited to be disclosed by law, prohibited propaganda (drugs, fascism, extremism, ethnic hostility, etc.) / appeals, etc., and does not contain other provisions, the publication of which violates the legislation of the Russian Federation.

**3.4.** The Work does not contain any registered trademarks/patents, there are no other circumstances preventing the use of the Work under the Agreement and/or requiring the Licensee to obtain additional permissions/licenses for the use of the Work.

**3.5.** The Licensee hereby guarantees that use of the Work will be only in the manner set forth in this Agreement.

**3.6.** The Licensee hereby guarantees that in the event of any claims relating to the Work, the Licensee will bring such claims to the Licensor's attention and, if necessary, assist Licensor in resolving the dispute.

**4. Rights**

**4.1.** The Licensor grants to the Licensee the right to use the Work under an *exclusive license* in the following manner:

**4.1.1.** Reproduce the Work in Russian, i. e. make one or more copies of the Work or a part thereof, including reproduction in the form of a recording/sound recording, in any tangible form, including recording in computer memory;

**4.1.2.** Distribute the Work by sale, other alienation, rental of copies (this authorization is non-exclusive from the end of the exclusive license term and ends with the end of the sale of copies of the Work);

**4.1.3.** Display a copy of the Work to public;

**4.1.4.** Import copies of the Work for the purpose of distribution;

**4.1.5.** Perform the Work in public;

**4.1.6.** Broadcast/wire (except as provided in 4.1.8);

**4.1.7.** Revise the Work (a part of the Work);

**4.1.8.** Make the Work (including its sound recording) available to the public in such a way that any person may access the Work from any place and at any time of their choice (make it available to the public).

There is no limit to the number of copies/uses of the Work as agreed.

**4.2.** The Licensor grants the Licensee, in addition to the rights referred to in  4.1 of this Agreement, the right to edit, revise and design the Work, including designating and adding

---

[1] In the event that the Licensor is a tax resident of a foreign country with which the Russian Federation has concluded an agreement for the avoidance of double taxation, the parties shall separately determine the tax regime in Appendix No. 1.

[2] If the Work contains such element

Licensor **[Redacted - PII]**                    **[Redacted - PII]** **[Redacted - PII]** Licensee **[Redacted - PII]**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    AST_0000000021

illustrations, fonts and performing other works and activities necessary for exercising the rights obtained, including concluding contracts with companies assisting in the technical implementation of the rights obtained, as well as the right to provide the Work with advertising and information material.

**4.3.** The Licensee (sublicensee) shall have the right to use the Work (or parts thereof, but not more than 10%) to promote the sale of copies of the Work and/or to increase public interest in the Work, including discussing and/or promoting the Work on the Internet and in the media (print media, electronic media, radio, television, telecommunication networks), in outdoor advertising, including the possibilities mentioned in 4.1. of this Agreement.

**4.4.** The Licensee has the right to transfer the rights obtained under the Agreement to third parties, with the right to further sublicensing. The Licensor is not entitled to independently use the transferred rights during the term of this Agreement and to assign its rights, including the right to claim, to third parties without the written consent of the Licensee.

**4.5.** The Licensor grants the Licensee the right to change the name of the Work in accordance with commercial expediency.

**4.6.** The Licensee undertakes to indicate the name of the author (right to the name of the author) when using the Work by indicating the author's name and/or, if applicable, a pseudonym, if this can be ensured according to the type of use; the spelling, form and place of the indication shall be determined by the Licensee independently.

**4.7.** When signing the Work Transfer Statement, the Licensor shall inform the Licensee of all persons to whom the Licensor has transferred rights to use the Work.

**4.8.** The Licensee undertakes to respect the personal non-property rights of the Licensor. In case of infringement of the personal non-property rights of the Licensor by third parties, the Licensee shall immediately notify the Licensor thereof.

**4.9.** The Licensee shall have the right to ensure the protection of the rights acquired under this Agreement, including by prosecuting infringements that may affect the Licensee's rights.

**4.10.** The Licensee may independently provide the Work with a cover of its choice, as well as with its own designations (trademarks, means of individualization) and those of third parties on the cover and in the imprint, independently determine the modalities of use under the Agreement, as well as the terms and frequency of use, including the number of copies, carriers, use in whole or in part, separately or as part of the collection, technical parameters of the copies of the Work (format/form/layout, recording format, color, type of binding, paper, and other parameters related to the production/use technology, medium, and appearance of the Work).

**4.11.** The Licensee is entitled to use the image of the Licensor in the use of the Work as well as in events for the promotion/popularization/advertising of the Work/Licensor/Licensee for no additional charge.

**4.12.** The Licensee may use the Work in all countries of the world in the manner specified in 4.1. of this Agreement.

If for any reason the Licensee does not use the Work during the term of the Agreement in any of the ways set forth in 4.1. hereof, then if an advance payment is made in accordance with the terms of Appendix No. 1 hereto, such advance payment shall be deemed and considered by the Parties to be a fixed fee to the Licensor for all uses of the Work specified in 4.1. of the Agreement, including but not limited to the following uses: Reproduction, redistribution, and importation for the purpose of distribution of the Work in a particular circulation, if such circulation is specified in accordance with the terms and conditions of the Agreement. If Appendix No. 1 does not provide for advance payment, the Licensee shall pay to the Licensor the amount of Two thousand (2,000) rubles as compensation for all uses of the Work in the cases referred to in the previous paragraph of this Clause within ten (10) banking days after the expiry of the term of the Agreement. If the Work of not more than two author's sheets was planned to be published as a part of a collection, the amount of compensation shall be One thousand (1,000) rubles.

The provisions of the second and third paragraphs of this Clause shall apply to the relations between the Parties in cases where the payment of fee for the use of the Work is provided for in the form of royalties (percentage/proportion of the revenues in case of appropriate use) as specified in Appendix No. 1.

**4.13.** The provisions of Article 4 of the Agreement shall apply for a period of five (5) years from the date of signing of the Work Transfer and Acceptance Statement by the Parties, which is the primary term of the license.

The provisions of Article 4 of the Agreement on the use of the Work in the form of its recording (e-book) by means of reproduction on tangible media, distribution, broadcast/wire transmission and communication to the public at the end of the primary term of the license shall be automatically renewed for one year at a time, subject to payment by the Licensee of 3% of its revenue from the use of the Work in the above-mentioned ways. Paragraph 2 of this Clause shall apply unless either of the parties to the Agreement gives notice of its refusal to renew at least 30 days before the expiry of the primary term of the license.

**5.  Liabilities. Term. Disputes and Jurisdiction.**

**5.1.** The Parties to this Agreement shall be liable for breach of the Agreement in accordance with the terms of the Agreement and the regulations of the Russian legislation.

**5.2.** The Licensor shall be liable, if it breaches the guarantees given in Section 3 of this Agreement, for the full amount of the fee specified in Appendix No. 1. This amount shall be paid to the Licensee upon its request within 10 business days from the date of detection of breach of the guarantees.

**5.3.** If the Licensee has suffered any damage as a result of the Licensor's actions, the Licensor shall, in addition to the penalties set forth in 5.2 of this Agreement, cover such damage in the amount provided by law.

**5.4.** If either Party is unable to fulfill this Agreement due to force majeure events, this Agreement shall be suspended; the Parties will draw up a Reconciliation Report, and, by mutual agreement, continue this Agreement or terminate it.

**5.5.** The Parties have agreed that:

- The Licensee shall have the right to assign the obligations under this Agreement to a third party by notifying Licensor of such assignment. The obligations under this Agreement shall be assigned to the extent and on the terms and conditions existing at the time of the assignment;
- In the event of the Licensee's restructuring (merger, consolidation, division, separation, reconstruction), the Licensee's rights and obligations under this Agreement shall pass to the legal successor in the order of universal succession pursuant to Article 58 of the Civil Code of the Russian Federation. There shall be no special (in addition to the obligatory publication about the process of restructuring) notification to the Licensor of the restructuring of the Licensee. The legal successor shall be responsible for the obligations of the restructured Licensee to the extent they exist at the time of the end of the Licensee's restructuring process.

**5.6.** This Agreement shall become effective as of the date it is signed by the Parties.

**5.7.** If the Parties have failed to settle disputes out of court by negotiation, the Party which feels that its interests have been violated shall have the right to bring the matter before the court at the seat of the Licensee.

**6. Object Transfer. Statements. Reports.**

**6.1.** The Licensor shall deliver the original Work to the Licensee in manuscript form and/or as a file in .doc format or any other electronic document format agreed upon by the Parties by June 1, 2016.

**6.2.** The Licensee shall take delivery of the Work and issue to the Licensor a signed Work Delivery and Acceptance Statement (Appendix No. 2). The Statement shall be signed even if the Licensee has an original/copy of the Work.

**6.3.** If the rights are used, the Licensee shall submit to the Licensor a report on the use of the rights. This report shall be submitted at the request of the Licensor if it is not the basis for calculating the fee under Appendix No. 1. If the report is the basis for calculating the fee, it shall be provided in accordance with the conditions set forth in Appendix No. 1.

**7. Other Conditions. Details.**

**7.1.** The Licensor confirms that over the period of the past two years (the last two years) prior to the conclusion of this Agreement, the Licensor has not been employed by the state or municipal service in the positions included in the lists established by the legal regulations of the Russian Federation.

**7.2.** This Agreement has been made in Russian in two copies, one for each Party.

**7.3.** Upon signing the Agreement, the Licensor shall submit to the Licensee an application for occupational tax deduction provided for by Article 221 of the Tax Code at the rate of 20% of all amounts due to the Licensor under the Agreement.

This application by the Licensor shall be valid for the term of the Agreement, taking into account possible changes in the provisions of the tax legislation of Russia during this period.

**7.4.** The proper address for notifications is the address of each Party as specified in the details.

**7.5.** The Parties have agreed that matters that do not require special written procedures may be discussed by exchanging messages by e-mail to the e-mail addresses specified in the details. In case of a dispute in court, such correspondence may be submitted to the court by the Parties and shall be acknowledged by them.

**7.6.** If there are any changes in the details, addresses or methods of service, the Party having such changes shall notify the other Party of such changes within three business days.

**7.7.** Upon the entry into force of this Agreement, previous negotiations and correspondence on the matters governed by the Agreement shall become null and void.

**7.8.** Agreements on termination or amendment hereof, as well as addenda, appendices, and minutes to the Agreement, shall be valid and form an integral part of the Agreement only if they are made in writing, signed by the Licensor and the Licensee or an authorized representative of the Licensee and contain a direct reference to the Agreement.

**7.9.** The headings of the articles and sections in the text of the Agreement are for convenience of reference and shall not be taken into account in interpreting the Agreement and shall not be construed as a statement or definition. The invalidity or voidability of any provision of this Agreement shall not affect the other provisions of this Agreement and shall not constitute grounds for declaring this Agreement invalid or not concluded.

**7.10.** In all matters not covered by this Agreement, the Parties shall be governed by the laws of the Russian Federation.

**7.11.** Details:

**7.11.1.** Licensor: [**Redacted - PII**]

Passport series [**Redacted - PII**] issued on December 22, 2008 by Department for [**Redacted - PII**] District at ZAO [Close Joint-Stock Company]

Unit code

Address: [**Redacted - PII**]

Date of birth: [**Redacted - PII**]

GPS: [Municipal Postal Service] [**Redacted - PII**]

Bank details: [**Redacted - PII**]

Personal account [**Redacted - PII**]; settlement account [**Redacted - PII**]; correspondent account [**Redacted - PII**]; BIC [**Redacted - PII**]

**7.11.2.** The Licensee: AST Publishing House Limited Liability Company

Mailing address: 123317, Moscow, Presnenskaya naberezhnaya, d. 6, str. 2, BC Imperia, P.O. Box 5

Registered address: 129085, Moscow, Zvezdnyi bulvar, d. 21, str. 3, komn. 5

INN [Taxpayer Identification Number] [**Redacted - PII**] KPP [Tax Registration Reason Code] [**Redacted - PII**] OGRN [Primary State Registration Number] [**Redacted - PII**]

Bank details: VTB Bank PSJC, settlement account [**Redacted - PII**] BIC [**Redacted - PII**]

Signatures of the Parties:

[**Redacted - PII**]                                                    [**Redacted - PII**]

Licensor                                                                   Licensee [seal] [**Redacted - PII**]

[**Redacted - PII**]                                                    [**Redacted - PII**]

Appendix No. 1 to License Agreement
No. [hw:] *205*-VREM-16 dated May 25, 2016 (the "Agreement")
**Licensor's Fee. Payment Procedure and Terms.**

Moscow                                                                                                      May 25, 2016.

**[Redacted - PII]** hereinafter referred to as the Licensor, of the one part, and AST Publishing House LLC, represented by **[Redacted - PII]**, acting under Power of Attorney (No. 20-15 dated 08/17/2015), hereinafter referred to as the Licensee, of the other part, collectively also referred to as the Parties, have signed this Appendix, which is an integral part of the Agreement made by and between the parties.

This Appendix has been made pursuant to 2.1 of the Agreement and other provisions of the Agreement referring to Appendix No. 1.

**1.      Fee**

1.1.  For the rights transferred under the Agreement, the Licensee will charge fee (royalties) for the benefit of the Licensor for the use:

1.1.1.  14% of the Licensee's sale price (excluding value added tax and similar taxes) as determined in calculating the Licensor's fee for each copy of the Work as hard-covered/integrated and/or paperback books sold (distributed) by or on behalf of the Licensee;

1.1.2.  5% of the Licensee's sale price (excluding value added tax and similar taxes) as determined in calculating the Licensor's fee for each copy of the Work sold (distributed) by or on behalf of the Licensee in the form of an audio book (sound recording) on a medium distributed separately from the playback device;

1.1.3.  5% of the Licensee's revenue (after payment of the statutory taxes) received in the reporting period from the use of the Work in other ways provided for in the Agreement.

If the Licensee's revenues consist of the amounts received from the use of the Work together with other works, the Licensor's fee shall be calculated and paid in proportion of the volume of the Work to the total volume of the works used together. The same shall apply in the case of use of the Work in parts.

1.2.    The Licensee shall pay the Licensor for the right to use the Work in the manner specified in the Agreement an advance in the amount of Ninety thousand (90,000) rubles on the fee specified in Section 2 of the Agreement.

The advance payment shall be made under the following conditions:
- within 60 banking days at the latest after signing the Work Delivery and Acceptance Statement.

1.2.1.  The royalties shall be paid after the Licensee has repaid (written off) the advance paid on the royalties, i. e. after the amount of the royalties accrued in accordance with the above conditions exceeds the advance amount, and only in the amount of such excess, but not later than:

- 60 banking days after the end date of the reporting period (quarterly), on the basis of the copies of the Work sold (distributed) by or on behalf of the Licensee, the revenues received under the respective method of use for the reporting period, but not before receipt by the Licensee of the signed report on the use of the Work for the reporting period.

If the amount payable to the Licensor for the reporting period is less than 1,000 rubles, the Licensee shall be entitled, upon agreement with the Licensor, to defer payment of said amount until the end of the next reporting period.

If the amount payable to the Licensor for the reporting period is less than 1,000 rubles, the Licensee shall be entitled to defer payment of such amount until the end of the next reporting period upon agreement with the Licensor.

1.3.    All payments under the Agreement in favor of the Licensor shall be made by the Licensee by transfer to the Licensor's bank account, withholding all taxes, charges, and other deductions to be levied in Russia, in the order and amount provided for by the Russian legislation at the time of payment of the fee by the Licensee to the Licensor.

1.4.    The Licensee shall submit reports on the use of the Work to the Licensor within 40 banking days after the end of the reporting period. The report on the use of the Work shall be prepared in the form of an addendum to the Agreement or a statement and shall serve as a basis for settlements between the parties hereto. If the Work has not been used in a certain way during the reporting period, no report may be submitted for this type of use.

1.5.    No fee shall be charged for copies included the Work put on the distribution on the basis of the Law of the Russian Federation "On the Legal Deposit Copy of Documents" and distributed free of charge for advertising purposes, but not more than 0.5% of the published circulation of the Work.

**1. Special Conditions**

If the Licensor is a tax resident of a foreign state in relation to the Russian Federation, the Licensor shall submit to the Licensee, for the purpose of proper fulfillment of the Licensee's public obligations under the applicable tax legislation, an official document of a competent authority confirming the status of the Licensor as a tax resident of a foreign state for the purposes of application of the agreement on avoidance of double taxation between the Russian Federation and such foreign state.

**2.  Signatures of the Parties**

Licensor                                                        Licensee
                                                                 AST Publishing House LLC

**[Redacted - PII]**                                            [seal] **[Redacted - PII]**
**[Redacted - PII]**                                            **[Redacted - PII]**

Licensor **[Redacted - PII]**                    **[Redacted - PII] [Redacted - PII]** Licensee **[Redacted - PII]**
HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    AST_0000000024

**Appendix No. 2 to License Agreement
No.** [hw:] *205*-**VREM-16 dated May 25, 2016 (the "Agreement"**)

**Delivery and Acceptance
STATEMENT No. 1**

Moscow                                                                    [hw:] *June 1,* 2016

**[Redacted - PII]** hereinafter referred to as the Licensor, of the one part, and AST Publishing House LLC, represented by **[Redacted - PII]**, acting under Power of Attorney (No. 20-15 dated 08/17/2015), hereinafter referred to as the Licensee, of the other part, collectively also referred to as the Parties, have made this Statement (Appendix) as follow:

1.  In accordance with the terms and conditions of License Agreement No. [hw:] *205*-VREM-16 dated May 25, 2016 (the "Agreement"), the Licensor has transferred a copy of the Work – *"Working Mom Lifehacks"* on                    author's sheets in the form agreed upon by the parties (_____specify the medium, format, volume (e.g. a CD-R; by forwarding it as a file in the agreed format by e-mail; as a printout on A4 paper of 24 sheets with an attached file on CD. The Licensee owns a copy of the Work) and the license (rights), determined in accordance with the Agreement, to use the Work in the manner set forth in the Agreement from the date of signing of this Statement.
2.  This Statement has been made in two original copies, one of which shall be given to the Licensor and the other of which shall be kept by the Licensee.
3.  The Work has been accepted by the Licensee and there is no claim to completeness and quality.
4.  This Statement has been signed in two copies of equal legal effect and is an integral part of the Agreement.

**SIGNATURES OF THE PARTIES**

Licensor                                                         Licensee
                                                                 AST Publishing House LLC

**[Redacted - PII]**                                             [seal] **[Redacted - PII]**
**[Redacted - PII]**                                             **[Redacted - PII]**



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000021**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



Dan McCourt

Sworn to before me this
April 27, 2023

Signature, Notary Public

Stamp, Notary Public

# Exhibit 4C

**ADDITIONAL AGREEMENT**

**TO AMENDMENT AGREEMENT No. 2 dated April 25, 2014**

**TO LICENSE AGREEMENT No. 2-M-13 dated January 1, 2013**

**Moscow**                                                        **December 24, 2018**

Limited Liability Company LitRes, represented by the General Director `Redacted for PII` acting under the Articles of Association, hereinafter referred to as "the Licensee," as the party of the first part, and Limited Liability Company AST Publishing, represented by the General Director `Redacted for PII` acting under the Articles of Association, hereinafter referred to as "the Licensor," as the party of the second part (hereinafter referred to as "the Parties"), have concluded this Additional Agreement (hereinafter referred to as "the Additional Agreement") to Amendment Agreement No. 2 dated April 25, 2014, to License Agreement No. 2-M-13 dated January 1, 2013 (hereinafter referred to as "the Agreement") as follows:

1. The Licensor shall provide the Licensee the right to use the Works <u>under an exclusive license</u> in the ways specified in paragraph a) of cl. 1.1, cl. 1.2 of the Agreement, in the Territory in accordance with cl. 4 of the Agreement, <u>till December 31, 2019</u>, on terms and conditions specified below:

    1.1. To use the Works (the list of which is given in Appendix No. 1 hereto) for the purpose of transferring them (providing a sublicense) under the relevant agreement to the Federal State Educational Institution of Culture Russian State Children's Library. Furthermore, for the fee for the use of these Works under the terms and conditions of this cl. 1.1. of the Additional Agreement, which has been calculated in accordance with the Agreement, the Licensee shall pay an advance payment to the Licensor in the amount of 248,551 (Two hundred forty-eight thousand five hundred and fifty-one) rubles 48 kopecks. The Licensee shall pay this advance payment by December 31, 2019, but not earlier than the relevant agreement is signed between OOO LitRes and Federal State Educational Institution of Culture Russian State Children's Library.

2. In all other matters not covered by this Additional Agreement, the Parties shall be governed by the terms and conditions of the Agreement and by the other Additional Agreements and Appendices to the Agreement.

3. If the provisions of this Additional Agreement contradict the provisions of the Agreement and/or other applicable Additional Agreements to the Agreement and/or Appendices to the Agreement, the provisions of this Additional Agreement shall prevail. For the avoidance of doubt, this provision applies only to the use of the Works under the terms and conditions of this Additional Agreement.

4. The Additional Agreement is an integral part of the Agreement, other valid Additional Agreements and Appendices to the Agreement, drawn up and signed by the Parties in two copies having equal legal force, one for each Party.

5. Appendices to the Additional Agreement being integral parts hereof:
    • Appendix No. 1: List of the Works for transfer to Federal State Educational Institution of Culture Russian State Children's Library (cl. 1.1 hereof).

| On behalf of the Licensor: | On behalf of the Licensee: |
|---|---|
| Redacted for PII | |

1

EXHIBIT

24B

                       AST_0000035017



TRANSPERFECT

City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**AST_0000035017**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Jacqueline Yorke

Sworn to before me this
August 12, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

# Exhibit 4D

Supplementary Agreement
to License Contracts No. 12-VREM–14 dated 02/13/2014, No. 84/09 T dated
10/01/2012, No. 85/09 T dated 09/01/2012, No. 86/09 T dated 10/01/2012, No.
16-VREM–14 dated 02/14/2014, No. 28-AVA-13 dated 05/15/2013, No. 166/10/T
dated 10/19/2010, No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated
05/25/2016

Moscow                                                          June 01, 2017

[Redacted – PII], hereinafter referred to as Licensor on the one hand and, AST
Publishers LLC, hereinafter referred to as the Licensee represented by [Redacted –
PII] acting on the grounds of [**Redacted – PII**] dated 08/17/2016), hereinafter
referred to as the Licensee on the other hand, collectively also [cut off text] this
Supplementary Agreement (hereinafter referred to as Agreement) in relation of the
Contracts mentioned above on the following:

1. The Parties have hereby agreed that when the Licensor uses the granted right
   to translate works (works are specified in each contract), the compensation of
   the Licensor is 80% of the income received by the Licensee (after payment of
   taxes prescribed by law) in the reporting period.
2. This Agreement is made in two identical copies, one for each of the Parties.
3. This Agreement is an integral part of each Agreement mentioned above.

## SIGNATURES OF THE PARTIES

Licensor:                                        Licensee:

[Redacted – PII]    [Redacted – PII]             [Redacted – PII]
                                                   [stamp: [cut off text] OGRN
                                                 [Primary State Registration Number
                                                   1177468496 [cut off text]
                                                   [Redacted – PII]]

                                                 **[REDACTED – PII]**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    AST_0000000018



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000018**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

# Exhibit 4E

Supplementary Agreement
to License Contract No. 205-VREM-16 dated 05/25/2016

Moscow                                    [handwritten:] *27 May* 20*21*

**AST Publishers LLC**, hereinafter referred to as Licensee represented by [**Redacted – PII**], acting on the grounds of Power of Attorney No. 36-20 dated August 17, 2020, on the one hand, and [**Redacted -PII**] hereinafter referred to as Licensor on the other hand, have signed this (hereinafter referred to as Agreement) and is an integral part of the Contract (hereinafter referred to as Contract).

The Work in the Agreement means a work created by the creativity of the Licensor called "**Lifehacks for a Working Mom**" with a volume of 5 author's sheets.

1. The Parties have agreed to extend the term of the license provided under the Contract for the use of the Work, as well as the Contract itself, until **06/01/2026**

It is made in two copies, one for each Party.

**Signatures of the Parties**

Licensor [**Redacted – PII**]                    Licensee [**Redacted – PII**]

**[Redacted- PII]**                              [stamp:] [**Redacted – PII**]
                                                  [**Redacted – PII**]
                                                  [**Redacted**]
                                                  [**Redacted**]

                                                  **[Redacted – PII]**

HIGHLY CONFIDENTIAL _ATTORNEY'S EYES ONLY          AST_0000000026



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000026**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



———————————————————
Dan McCourt

Sworn to before me this
April 27, 2023

———————————————————
Signature, Notary Public

———————————————————
Stamp, Notary Public

# Exhibit 4F

**AGREEMENT**
to License Contracts:
No. 166/10/T dated 10/19/20120, No. 86/09/T dated 10/01/2012, No. 12-VREM-14 dated 02/13/2014, No. 16-
VREM-14 dated 02/14/2014, No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated 05/25/2016, No.
182-VR-18 dated 03/24/201[cut off text], No. 183-VR-18 dated 03/24/2018, No. 150-VR-P-20 dated 03/04/2020,
No. 15[1]-VR-P-20 dated 03/05/2020, No. 84/09/T dated 09/01/2012, No. 28-AVA-13 dated 05/15/2013
(hereinafter referred to as – Contract)

Moscow                                                     [handwritten:] _**01 March**_ 2021

**AST Publishers LLC (INN** [Taxpayer Identification Number] [Redacted – PII], OGRN [Primary State Registration
Number] [Redacted – PII], hereinafter referred to as Licensee represented by **[Redacted – PII]**, acting on the
grounds of Power of Attorney No. 36-20 dated 08/17/2020 on the one hand and, **Individual Entrepreneur
[Redacted -PII] [Redacted – PII] (OGRNIP** [Primary State Registration Number of Individual Entrepreneur]
**[Redacted – PII] date of the assignment [Redacted – PII]**, hereinafter referred to as Licensor on the other
hand, collectively referred to as Parties, have concluded this Agreement on the following:

1. In connection with the opening of individual entrepreneurial activity of the FL [Individual], and also taking
   into account the fact that the FL [Individual] informed the Licensee about its opening on March 01, 2021,
   the Parties hereby confirm that:
   - From the specified date, the Licensor, as a party to the relevant Contract, acts as an individual
     entrepreneur;
   - From the specified date, the Licensee is not the tax agent of the Licensor;
   - From the specified date, the Licensor, independently, as an individual entrepreneur, calculates the
     taxes prescribed by law based on the compensation received under each Contract and pays them
     to the state budget.

2. From the date of signing by the Parties of this Agreement, the Licensee undertakes to pay the
   Licensor's compensation under the Contract to the bank account details of the Licensor as an individual
   entrepreneur:

   Bank account details:
   **Bank name [Redacted -PII]**
   **Settlement account [Redacted -PII]**
   **Correspondent account [Redacted -PII]**
   **BIK** [Bank Identifier Code] **[Redacted – PII]**

3. This Agreement comes into force from the date of its signing and is an integral part of the Contract.

   Licensor

   Individual entrepreneur                 **[Redacted – PII]**
                                [stamp:] **[Redacted – PII]**

   Licensee

   AST Publishers LLC
                   [stamp:] **[Redacted – PII] [Redacted – PII]**
                                        **[Redacted – PII]   [Redacted – PII]**

HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000020**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

# Exhibit 4G

SUPPLEMENTARY AGREEMENT
to License Contracts
No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated 05/25/2016

Moscow                                          [handwritten:] 21 *August* 2020

**[Redacted – PII]**, hereinafter referred to as Licensor on the one hand and, **AST Publishers LLC,** hereinafter referred to as the Licensee represented by **[Redacted – PII]**, acting on the ground of Power of Attorney No. 36-20 dated August 17, 2020, on the other hand, have concluded this Supplementary Agreement (hereinafter referred to as Agreement) which is an integral part of License Contracts No. 205-VREM-16 dated 05/25/2016, No. 554-VREM-16 dated 05/25/2016 (hereinafter referred to as Contract) on the following:

1. Amend clause 4.1.7 of the Contract and consider it valid in the following edition from the date of this Agreement:
        "revision of the Work (part of the Work), except the translation of the Work into English, German, Italian, and French."

2. Extend the term of the exclusive license granted to the Licensee under the Contract for the use of the Work in the manner specified in clause 4.1.7 of the Contract until December 30, 2024.

3. If the Licensee exercises the right to use the Work as part of a book or as part of/on other products in a foreign language (excluding English, German, Italian, and French) by granting a sublicense to a third party, the Licensee, instead of the compensation (royalty) provided for by the Contract, undertakes to pay the Licensor a reward for the current use in the amount of **80%** of all amounts (after payment of taxes prescribed by law) received by the Licensee from the Sublicensee. The payment is made by **30** banking days from the end of the calendar quarter in which the Licensee received income from the use of the Work.

4. The compensation amounts accrued to the Licensor for using the Work in the manner specified in clause 4.1.7 of the Contract are not counted towards the repayment of the advance paid under the Contract but are payable to the Licensor.

5. Establish the term of the Contract until the parties fulfill all the obligations imposed on them by the Contract.

*Made in two copies, one for each of the parties of the Agreement*

**Licensor: [Redacted – PII]**
Passport: **[Redacted – PII]** issued by the district office **[Redacted – PII]**
Address: **[Redacted – PPII]**
Date of birth: **[Redacted – PII]** GPS **[Redacted]** INN [Taxpayer Identification Number] **[Redacted – PII]**
Bank account details: ALFA-BANK JSC, BIK [Bank Identifier Code] **[Redacted – PII],** k/s [Correspondent Account] **[Redacted – PII]**

Licensee: **AST Publishers LLC**
Legal address: 129085, Moscow, Zvezdnyy Boulevard, building 21, construction 1, room 705, room I, 7th floor.
Mailing address: 123317, Moscow. a/ya No. 5
INN [Taxpayer Identification Number] **[Redacted – PII]**, KPP [Tax Registration Reason Code] **[Redacted – PII]**, OGRN [Primary State Registration Number] **[Redacted - PII]**
Bank account details: Bank: SDM-Bank (PJSC)
Settlement account (rubles): **[Redacted – PII]**
BIK [Bank Identifier Code] **[Redacted – PII]**
Correspondent account **[Redacted – PII]**

**Signatures of the parties**

**[Redacted – PII]**                    [stamp:] [cut off text] LIMITED LIABILITY OGRN
[Redacted – PII]                         [Primary State Registration Number] 1174
                                    [cut off text] AST Publishers **[Redacted – PII]**]
                                                            Licensee

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000019**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

# Exhibit 4H

**ADDENDUM No. 1**
**to Agreement No. 181/17-F dated September 18, 2017**

Moscow                                              September 18, 2017

**Audiokniga Limited Liability Company**, hereinafter referred to as the ***Customer***, represented by Director General [Redacted — PII], acting on the basis of the Articles of Association, of the one part, and Sole Proprietor [Redacted — PII] [Redacted — PII], acting on the basis of OGRNIP (*Osnovnoi Gosudarstvennyi Registracionnyi Nomer Individualnogo Predprinimatelya* [Primary State Registration Number of Sole Proprietor]) No. [Redacted — PII], hereinafter referred to as the ***Contractor***, acting on their own behalf, of the other part, hereinafter jointly referred to as the ***Parties***, have entered into this Addendum as follows:

1.    Subject to the terms and conditions of Agreement No. 181/17-F dated September 18, 2017 (hereinafter — Agreement), the ***Contractor*** provides their consent to the ***Customer*** and undertakes to take part in the creation of Audiobooks as a performer of the text of literary works:

**1)    B. Akunin — the fifth volume of the project "History of the Russian State" — "Asian Europeanization. History of the Russian State. Tsar Petr Alekseevich"**

and transfer to the ***Customer*** the exclusive associated property rights to use the results of their activity under the Agreement — the Performance of the Text of Literary Works and the Performance Sound Recordings.

2.    The term for the performance of duties by the ***Contractor***: until October 17, 2017.
3.    This Addendum is made in two counterparts, one of which is transferred to the ***Customer***, and another one — to the ***Contractor***.

Contractor:                              Customer:
                                         Director General
                                         of Audiokniga LLC

√  [Redacted — PII]  / Sole Proprietor    √  [Redacted — PII]  /
[Redacted — PII]                          [Redacted — PII]

                                         [seal:] MOSCOW * OGRN (*Osnovnoi Gosudarstvennyi Registratsyonnyi Nomer* [Primary State Registration Number] [illegible]) * Limited Liability Company * Audiokniga

HIGHLY CONFIDENTIAL — ATTORNEY'S EYES ONLY                    AST_0000000061

### CERTIFICATE NO. 1
### of Performance of Works and Transfer of Exclusive Rights under Agreement
### No. 181/17-F dated September 18, 2017

Moscow                                                        October 17, 2017

**Audiokniga Limited Liability Company**, hereinafter referred to as the ***Customer***, represented by Director General [Redacted — PII], acting on the basis of the Articles of Association, of the one part, and Sole Proprietor [Redacted — PII] [Redacted — PII], acting on the basis of OGRNIP (*Osnovnoi Gosudarstvennyi Registracionnyi Nomer Individualnogo Predprinimatelya* [Primary State Registration Number of Sole Proprietor]) No. [Redacted — PII], hereinafter referred to as the ***Contractor***, acting on their own behalf, of the other part, hereinafter jointly referred to as the ***Parties***, have entered into this Addendum as follows:

1.     Subject to the terms and conditions of Agreement No. 181/17-F dated September 18, 2017 (hereinafter — Agreement), the ***Contractor*** took part in the creation of Audiobooks as a performer of the text of literary works:

   **1) B. Akunin — the fifth volume of the project "History of the Russian State" — "Asian Europeanization. History of the Russian State. Tsar Petr Alekseevich"**

and transfers to the ***Customer*** the exclusive associated property rights to use the results of their activity under the Agreement — the Performance of the Text of Literary Works and the Performance Sound Recordings, and the ***Customer*** confirms to have accepted the exclusive rights related to the results of activity of the ***Contractor***.

2.     The ***Customer*** agrees to pay the ***Contractor*** the following lump-sum remuneration for the rights transferred under the Agreement:
-      RUB 200,000 (two hundred thousand) until October 31, 2017.

3.     This Certificate is made in two counterparts, one of which is transferred to the ***Customer***, and another one — to the ***Contractor***.

Contractor:                              Customer:
                                         Director General
                                         of Audiokniga LLC

√ _[Redacted — PII]_ / Sole Proprietor   √ _[Redacted — PII]_ /
[Redacted — PII]                         [Redacted — PII]

                                         [seal:] MOSCOW * OGRN (*Osnovnoi Gosudarstvennyi Registratsyonnyi Nomer* [Primary State Registration Number] [illegible]) * Limited Liability Company * Audiokniga

HIGHLY CONFIDENTIAL — ATTORNEY'S EYES ONLY                    AST_0000000062



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000061**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

# Exhibit 4I

APPENDIX No. 14 dated October 31, 2018
to Agreement **No. 175/17-F dated August 10, 2017**

**Terms of Reference (order)**

Product description: **Boris Akunin – "Eurasian Imperia. History of the Russian State. Era of Tsarinas"**

Product delivery date: until November 13, 2018

Cost of the Product        -

*Content of the Product:*

Phonogram in digital .WAV format and associated exclusive rights.

Additional requirements: performer - [Redacted-PII]

| **Contractor/Rights Holder** | **Customer/Acquirer** |
|---|---|
| √_[Redacted PII]___/ IP [Individual Entrepreneur] | General Director |
| | Audiokniga [Audiobook], LLC |
| | √_____[Redacted PII] [Redacted PII] |

[seal:] Moscow * Audiokniga [Audiobook], Limited
Liability Company [cut off text]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                AST_0000000142

**CERTIFICATE No. 14**
**of the Performance of Work and Transfer of Exclusive Rights to the phonogram**
**under Agreement No. 175/17-F dated August 10, 2017**

This document is made in the City of Moscow on November 13, 2018, by and between:

**Audiokniga [Audiobook], Limited Liability Company**
_____
(specify company's full name, including its legal form)
hereinafter referred to as "Customer/ Acquirer", represented by

**General Director [Redacted PII]**
_____
(specify full name and title)
acting on the basis of

**Articles of Association**
_____
(specify the document on the basis of which the person named above has the legal right to sign this document)
on the one hand, and

**Individual Entrepreneur [Redacted PII]**
_____
acting on the basis of

**OGRNIP [Primary State Registration Number of the Individual Entrepreneur] [Redacted PII]**
_____
(specify the document on the basis of which the person named above has the legal right to sign this document)
on the other hand, as follows:

1. IP [Individual Entrepreneur] M.V. Osipov performed the work and transferred to Audiokniga [Audiobook], LLC the following Audiobook: **Boris Akunin** - **"Eurasian Imperia. History of the Russian State. Era of Tsarinas"** read by Alexandr Klyukvin, **recording time – 14 hours 08 minutes**, and the related exclusive rights, namely exclusive rights to the recording and phonogram of such recording, and Audiokniga [Audiobook], LLC hereby acknowledges the receipt of the said phonogram and acceptance of the exclusive rights in respect thereof.

2. The cost of the performed works and the transferred rights is

3. The payment is made by the Customer/Acquirer to the Contractor/Right Holder until

4. This Certificate is an integral part of Agreement No. 221/18-F concluded on April 23, 2018 by and between Audiokniga [Audiobook], LLC and IP [Redacted-PII]

**Contractor/Rights Holder**                        **Customer/Acquirer**
                                                    General Director
                                                    Audiokniga [Audiobook], LLC

√__[Redacted PII]___/ IP [Redacted PII]            √_____[signature]_____/[Redacted PII]


                                                    [seal:] Moscow * Audiokniga [Audiobook], Limited
                                                    Liability Company [illegible]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                        AST_0000000143



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000142**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public

# Exhibit 4J

APPENDIX No. 54 dated November 15, 2019
to agreement **No. 221/18-F dated April 23, 2018**

This document was compiled in the city of Moscow on November 15, 2019 between:

**AST Publishing Limited Liability Company**

(indicate the full name of the enterprise, including its organizational and legal form)
hereinafter referred to as the Customer/Purchaser represented by
**Director of the Audiobook Department** Redacted PII

(indicate full name and position)
acting on the basis of
**Power of Attorney No. 35-19 dated 07/01/2019**

(indicate the document on the basis of which the above person has the legal right to sign this
document)
as the party of the first part, and
**Individual entrepreneur** Redacted PII

acting on the basis of
**OGRNIP** [Primary State Registration Number of the Individual Entrepreneur] Redacted PII

(indicate the document on the basis of which the above person has the legal right to sign this
document)
from the party of the second part, on the following:

1. AST Publishing LLC sends to IP [Individual Entrepreneur] M.V. Osipov the following Audio recording of an actor's performance of a literary work: **Boris Akunin – The History of the Russian State. Vol. 7: First Superpower** performed by Redacted PII Redacted PII for execution of work according to the agreement **No. 221/18-F dated April 23, 2018**, and IP M.V. Osipov hereby confirms receipt of the said Audio recording of an actor's performance of a literary work and bumper music, musical accompaniment to the soundtrack.

2. AST Publishing LLC entrusts IP Redacted PII with the following technical task (order):

   Soundtrack name: **Boris Akunin – The History of the Russian State. Vol. 7: First Superpower** performed by Redacted PII

   Date of the soundtrack submission: until December 27, 2019

   The cost of work and exclusive rights:

   *The content of the soundtrack:*

   Digital Audiobook in .wav format and related exclusive rights.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                    AST_0000000139

Any information that became known to the Contractor/Copyright Holder in the performance of the provisions of the Agreement and this Appendix, including, but not limited to:

information about the text of the work and any part of it, as well as illustrations included in the composition of the work according to which the soundtrack is created;

information about the existence of the text of the work;

information about the author of the work and the title of the work, according to which the soundtrack is created;

information about the fact of the creation of the soundtrack;

until the official publication of the text of the work and/or the release of the audiobook for sale it is confidential and must not be communicated in any way by the Contractor to any third parties without the written consent of the Customer/Purchaser to perform such an action.

In case of loss or disclosure of confidential information by the Contractor without written permission from the Customer/Purchaser, the Contractor undertakes to reimburse the Customer/Purchaser for all documented losses caused by the Contractor and arising from the loss/disclosure of confidential information transferred to the Contractor in full.

In addition, if the Customer/Purchaser establishes the fact of loss or disclosure of confidential information by the Contractor, the Contractor undertakes to pay the Customer/Purchaser a fine in the amount of 3,000,000 (Three million) rubles for each case of violation, payable within 10 (ten) calendar days from the date of presentation by the Customer/Purchaser of the relevant requirement with the provision of sufficient evidence of the loss or disclosure of confidential information. The penalty provided for in this paragraph shall be collected on top of the damages.

**Contractor/Copyright Holder:**

Redacted PII /IP Redacted PII
Seal here

**Customer/Purchaser:**
Director of the Audiobook Department
[seal:]
Redacted PII Redacted PII
Seal here Redacted PII

**CERTIFICATE No. 54**
**on execution of work and the transfer of exclusive rights to a soundtrack**
**according to the agreement No. 221/18-F dated April 23, 2018**

This document was compiled in the city of Moscow on December 12, 2019 between:

**AST Publishing Limited Liability Company**
_____
(indicate the full name of the enterprise, including its organizational and legal form)
hereinafter referred to as the Customer/Purchaser represented by

**Director of the Audiobook Department** Redacted PII
_____
(indicate full name and position)
acting on the basis of
**Power of Attorney No. 35-19 dated 07/01/2019**
_____
(indicate the document on the basis of which the above person has the legal right to sign this
document)
as the party of the first part, and
**Individual entrepreneur** Redacted PII
_____
acting on the basis of
**OGRNIP** Redacted PII
_____
(indicate the document on the basis of which the above person has the legal right to sign this
document)
from the party of the second part, on the following:

1. IP M.V. Osipov completed the work and handed over to AST Publishing LLC the following
   Audiobook: **Boris Akunin – The History of the Russian State. Vol. 7: First Superpower**
   performed by **Aleksandr Klyukvin**, recording time – **12 hours 28 minutes**, and related
   exclusive rights, and AST Publishing LLC hereby confirms the receipt of the said Audiobook
   and acceptance of exclusive rights related to it.

   The cost of the work performed, and the transferred rights is:

2. Payment is made by the Customer/Purchaser to the Contractor/Copyright Holder before

3. This Certificate is an integral part of the agreement No. 221/18-F concluded on April 23, 2018
   between Audiobook LLC and IP Redacted PII

**Contractor/Copyright Holder:**                **Customer/Purchaser:**
                                                Director of the Audiobook Department
                                                [seal:]

Redacted PII /IP Redacted PII                   Redacted PII Redacted PII
Seal here                                       Seal here Redacted PII

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                AST_0000000141



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000139**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

# Exhibit 4K

**ADDENDUM No. 1**
**to Agreement No. 410/19-F dated October 15, 2019**

Moscow                                                              October 15, 2019

**AST Publishing House Limited Liability Company**, hereinafter referred to as the **Customer**, represented by Director of the Department "Audiokniga" [Redacted — PII], acting on the basis of the Power of Attorney No. 35-19 dated July 01, 2019, of the one part, and **Sole Proprietor** [Redacted — PII] OGRNIP (*Osnovnoi Gosudarstvennyi Registracionnyi Nomer Individualnogo Predprinimatelya* [Primary State Registration Number of Sole Proprietor]) No. [Redacted — PII], hereinafter referred to as the **Contractor**, acting on their own behalf, of the other part, hereinafter jointly referred to as the **Parties**, have entered into this Addendum as follows:

1.     Subject to the terms and conditions of Agreement No. **410/19-F** dated **October 15, 2019** (hereinafter — Agreement), the **Contractor** provides their consent to the **Customer** and undertakes to take part in the creation of Audiobooks as a performer of the text of literary works:

**B. Akunin — "History of the Russian State. Volume VII: The First Superstate"**

and transfer to the **Customer** the exclusive associated property rights to use the results of their activity under the Agreement — the Performance of the Text of Literary Works and the Performance Sound Recordings.

2.     The term for the performance of duties by the **Contractor**: until December 05, 2019.

3.     This Addendum is made in two counterparts, one of which is transferred to the **Customer**, and another one — to the **Contractor**.

| Contractor: | Customer:<br>Director of the Department "Audiokniga"<br>of AST Publishing House LLC |
|---|---|
| √  [Redacted — PII]  /[Redacted — PII] | √  [Redacted — PII]  /[Redacted — PII]<br><br>[seal:] MOSCOW * Limited Liability<br>Company * OGRN (*Osnovnoi<br>Gosudarstvennyi Registratsyonnyi Nomer*<br>[Primary State Registration Number]<br>[illegible]) * Department "Audiokniga" *<br>AST Publishing House |

HIGHLY CONFIDENTIAL — ATTORNEY'S EYES ONLY                    AST_0000000137

# CERTIFICATE NO. 1
## of Performance of Works and Transfer of Exclusive Rights under Agreement No. 410/19-F dated October 15, 2019

Moscow                                                          December 02, 2019

**AST Publishing House Limited Liability Company**, hereinafter referred to as the **Customer**, represented by Director of the Department "Audiokniga" [Redacted — PII], acting on the basis of the Power of Attorney No. 35-19 dated July 01, 2019, of the one part, and **Sole Proprietor** [Redacted — PII] OGRNIP (*Osnovnoi Gosudarstvennyi Registracionnyi Nomer Individualnogo Predprinimatelya* [Primary State Registration Number of Sole Proprietor]) No. [Redacted — PII], hereinafter referred to as the **Contractor**, acting on their own behalf, of the other part, hereinafter jointly referred to as the **Parties**, have entered into this Addendum as follows:

1.      Subject to the terms and conditions of Agreement No. **410/19-F** dated **October 15, 2019** (hereinafter — Agreement), the **Contractor** took part in the creation of Audiobooks as a performer of the text of literary works:

**B. Akunin — "History of the Russian State. Volume VII: The First Superstate"**

and transfers to the **Customer** the exclusive associated property rights to use the results of their activity under the Agreement — the Performance of the Text of Literary Works and the Performance Sound Recordings, and the **Customer** confirms to have accepted the exclusive rights related to the results of activity of the **Contractor**.

2.      The **Customer** agrees to pay the **Contractor** the following lump-sum remuneration for the rights transferred under the Agreement:
-

The remuneration must be paid until "

3.      This Certificate is made in two counterparts, one of which is transferred to the **Customer**, and another one — to the **Contractor**.

Contractor:                                      Customer:
                                                 Director of the Department "Audiokniga"
                                                 of AST Publishing House LLC


√  [Redacted — PII] /[Redacted — PII]         √  [Redacted — PII] /[Redacted — PII]


                                                 [seal:] MOSCOW * Limited Liability
                                                 Company * OGRN (*Osnovnoi
                                                 Gosudarstvennyi Registratsyonnyi Nomer*
                                                 [Primary State Registration Number]
                                                 [illegible]) * Department "Audiokniga" *
                                                 AST Publishing House

HIGHLY CONFIDENTIAL — ATTORNEY'S EYES ONLY



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000137**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public

**LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS**
1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

# Exhibit 4L

Appendix No. 18 dated February 01, 2017
to the contract **No. 111/16-F of May 04, 2016**

**Terms of Reference (order)**

Product name: phonogram **"Lives of Wonderful People and Animals"**
**Akunin B.**

Product delivery date – until March 31, 2017

Cost of the Product - **23,010 rubles**.

*Content of the Product:*

Phonogram in digital MP3 format and associated exclusive rights.

Additional requirements: performs [Redacted-PII]

| **Contractor/Rights Holder** | **Customer/Acquirer** |
|---|---|
| Individual entrepreneur | General director |
| [Signature: Redacted-PII]/ [Redacted-PII] | Audiobook LLC |
| | [Redacted-PII]/ Signature [Redacted-PII] |
| | [Stamp: Audiobook LLC, Moscow] |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

AST  0000000047

**ANNEX No.18**
**on the performance of works and transfer of exclusive rights to the phonogram**
**under the contract No. 111/16-F dated May 04, 2016.**

This document is made in the City of Moscow on March 15, 2017, between:
***Audiobook Limited Liability Company***
(specify the full name of the company, including its legal form)
hereinafter referred to as the "Customer/ Acquirer", represented by
***General Director:*** *[Redacted-PII]*
(insert name and title)
acting on the grounds of

***Articles of Incorporation***
(indicate the document on the basis of which the above-mentioned person has the legal right to sign this document)
On the one side and,

***Individual Entrepreneur [Redacted-PII]***
(specify the full name of the company, including its legal form)
acting on the grounds of
***Primary State Registration Number of the Individual Entrepreneur [Redacted-PII]***
(indicate the document on the basis of which the above-mentioned person has the legal right to sign this document)

hereinafter referred to as the "Contractor/Rights Holder", on the other hand, on the following:

1. IE Petukhov recorded and transferred to Audiobook LLC the following phonogram **"Lives of Wonderful People and Animals" based on the book by Boris Akunin** and the related exclusive rights, and Audiobook LLC hereby acknowledges the receipt of the said phonogram in acceptance of the exclusive rights in respect thereof.
2. The cost of the executed works and the transferred rights is **23,010 (Twenty-three thousand ten) rubles. 00 kopecks.**
This Annex is an integral part of the contract No. 111/16-F dated May 4, 2016, concluded in Moscow between Audiobook LLC and [Redacted-PII]

**Contractor/Rights Holder**
Individual entrepreneur
[Signature: Redacted-PII]/ [Redacted-PII]

**Customer/Acquirer**
General director
Audiobook LLC
[Redacted-PII]/ Signature [Redacted-PII]
[Stamp: Audiobook LLC, Moscow]

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

Appendix No. 10 dated October 01, 2016
to the contract **No. 111/16-F of May 04, 2016**

**Terms of Reference (order)**

Product name: phonogram **"History of the Russian State. Between Europe and Asia. The Seventeenth Century" by Boris Akunin.**

Product delivery date - until December 01, 2016.

The cost of the product - **52 000 rubles.**

*Content of the Product:*

Phonogram in digital MP3 format and associated exclusive rights.

Additional requirements: performs [Redacted-PII]

| **Contractor/Rights Holder** | **Customer/Acquirer** |
|---|---|
| Individual entrepreneur | General director |
| [Signature: Redacted-PII]/ [Redacted-PII] | Audiobook LLC |
| | [Redacted-PII]/ Signature [Redacted-PII] |
| | [Stamp: Audiobook LLC Moscow] |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**ANNEX No.10**
**on the performance of works and transfer of exclusive rights to the phonogram**
**under the contract No. 111/16-F dated May 04, 2016.**

This document is made in the City of Moscow on November 23, 2016, between:
***Audiobook Limited Liability Company***
(specify the full name of the company, including its legal form)
hereinafter referred to as the "Customer/ Acquirer", represented by
***General Director:*** *[Redacted-PII]*
(insert name and title)
acting on the grounds of

***Articles of Incorporation***
(indicate the document on the basis of which the above-mentioned person has the legal right to sign this document)
On the one side and,

***Individual Entrepreneur [Redacted-PII]***
(specify the full name of the company, including its legal form)
acting on the grounds of
***Primary State Registration Number of the Individual Entrepreneur [Redacted-PII]***
(indicate the document on the basis of which the above-mentioned person has the legal right to sign this document)

hereinafter referred to as the "Contractor/Rights Holder", on the other hand, on the following:

1. IE Petukhov recorded and transferred to Audiobook LLC the following phonogram **"History of the Russian State. Between Europe and Asia. The Seventeenth Century" by Boris Akunin** and the related exclusive rights, and Audiobook LLC hereby acknowledges the receipt of the said phonogram in acceptance of the exclusive rights in respect thereof.
2. The cost of the executed works and the transferred rights is **52,000 (Fifty-two thousand) rubles. 00 kopecks.**
This Annex is an integral part of the contract No. 111/16-F dated May 4, 2016, concluded in Moscow between Audiobook LLC and [Redacted-PII].


**Contractor/Rights Holder**                    **Customer/Acquirer**
Individual entrepreneur                          General director
[Signature: Redacted-PII]/ [Redacted-PII]        Audiobook LLC
                                                 [Redacted-PII]/ Signature [Redacted-PII]
                                                 [Stamp: Audiobook LLC, Moscow]



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AST_0000000047**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



_____
Dan McCourt

Sworn to before me this
April 27, 2023

_____
Signature, Notary Public

_____
Stamp, Notary Public

# Exhibit 4M

| | |
|---|---|
| **From:** | Redacted for PII |
| **Sent:** | 11/20/2019 12:38:13 PM |
| **To:** | Redacted for PII |
| **Subject:** | Re: Fwd: AristoBook & LitRes |

Good afternoon, Galya,
we either buy illustrations from photobanks, or the illustrations by Sakurov; there are no agreements with Akunin on this matter, we have direct contracts with copyright holders.

--
Best regards,
Redacted for PII
AST Publishing Group,
Head of the Genres Editorial Office, Moscow,
6 Presnenskaya Naberezhnaya, apt. 2
Tel. 8-499-951-6-000, ext. 103
http://www.facebook.com/Janry.AST

**Redacted for PII**

Date: Wed, 20 Nov 2019 10:57:51 +0300
Subject: Re: Fwd: AristoBook & LitRes

Hello, Masha.
six months - it is about Akunin himself,
we have a different type of agreement with Istomin, a service

Masha, do we buy illustrations for the History of the Russian State separately? And is there a provision in these agreements saying that Akunin can use the same illustrations for his own purposes?

*Deputy Head of FDO*
Redacted for PII
*7 (499) 951 60 00**ext. 997***

**Redacted for PII**

Date: Mon, 18 Nov 2019 22:10:46 +0300
Subject: Fwd: AristoBook & LitRes

Galya, good afternoon,
forwarding Anuryev's letters to you. I didn't really understand the thing about the exclusivity for six months, I don't see such a clause in our agreement. Or am I mistaken (and we are talking about an agreement with Akunin, and not with Istomin?)? Could you check?
Thank you.

--
Sincerely,
**Redacted for PII**
AST Publishing Group,
Head of the Genres Editorial Office,
123112, Moscow, Presnenskaya Naberezhnaya., d. 6, str. 2
Tel. 8-499-951-6-000, ext. 103
http://www.facebook.com/Janry.AST



EXHIBIT

26B

CONFIDENTIAL

AST_0000044483

# Redacted for PII

Date: Mon, 18 Nov 2019 13:21:41 +0300
Subject: Fwd: AristoBook & LitRes

Sergey, Maria, good afternoon!

Erika contacted us directly with a proposal/request to make an epub for the History of the Russian State 7 project, enriched with materials from the AristoBook project (Pavel Istomin). But as far as I understand the situation, you will have an exclusive right for the History of the Russian State 7 e-book for another 6 months after the book release. If I'm right, then you must probably discuss this project with Erika and Pavel and agree on the distribution of royalties. Or we can take away the rights to materials from him, but then we will need to have a different price for this book (we have already signed an agreement with him, but in general we are ready to terminate it).

We can also make a file, but we need a properly executed set of rights. Please tell us what to do.

Best regards,

**Redacted for PII**

---------- Forwarded message ---------
From: **Redacted for PII**
Date: Thu, Oct. 31 2019 at 01:55 PM
Subject: AristoBook & LitRes
To: **Redacted for PII**

Hello Sergey,

**Redacted for PII** wrote to me the day before yesterday that LitRes wants to release a separate electronic version of the History of the Russian State 7 with our Aristo content. Ok, let's try.

Most of the content consists of static web pages like this:
http://aristobook.com/jhgmbmy
And there are some videoslike this: https://www.youtube.com/watch?v=qnYfEall-Qo
There are 136 Aristo links in total. Everything is ready. I will send the full list when we settle all the formalities.

Therefore, I have a question, what is the expected size of the "price increase for this enhanced version" and is there a forecast of how many originals can be sold? I would like to know what the financial interest of this undertaking of ours is, and whether it is worth it that the exclusivity of the paper Aristo-book is being eroded.

And a request. The title page must have a logo of our project, a link to the website and some text about it. Grigory Shalvovich might write a few words.

Coincidentally, I will be on a short week-long visit to Moscow next week. I am planning to visit Maria Sergeyeva at AST and sign an agreement. The exact date has not been agreed upon yet. If it is possible to hand over the agreement with LitRes to Maria, I will sign it as well.
Or by e-mail.

CONFIDENTIAL

AST_0000044484

Sincerely,

**Redacted for PII**

Best regards,

# Redacted for PII

AST_0000044485



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**AST_0000044483**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Jacqueline Yorke

Sworn to before me this
August 8, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

# Exhibit 4N

| | |
|---|---|
| **From:** | Redacted – PII Olga **Redacted–PII**@ast.ru] |
| **Sent:** | 11/6/2019 12:54:00 PM |
| **To:** | Redacted - PII Maria **Redacted - PII**@ast.ru] |
| **Subject:** | eBook Applications LLC_Content_Volume7 |
| **Attachments:** | Istomin_287-ZHANR-19_Akunin_Aristobook_content_services_IRG_t7_Edo_signer Redacted - PII docx |

Masha, I'm sending you the agreement.
Earlier you sent me the date 10/23/2019, and I used this date for the agreement card.

Sincerely,
Olga Redacted - P.I
Head of the Fiction Group
tel. 7-499-9516000 ext. 961)



**EXHIBIT**
**11B**

LTbsi

### Service Agreement No. 287-ZHANR-19

Moscow                                                                "___" _____2019

**AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the Customer, represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

**eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the Contractor, represented by the Chief Executive Officer [redacted], as the party of the second part,

whereas

Based on the exclusive license granted to it, the Customer is the copyright holder of the literature work by the author Boris Akunin, **THE HISTORY OF THE RUSSIAN STATE, volume 7**, and intends to publish its paper copies (the Books);

The Contractor holds the exclusive right to **AristoBook mobile application,** used in the iOS and Android operating systems, and to the information posted for general distribution on the Internet at the address: https://www.youtube.com/, http://aristobook.com.

have concluded this Agreement regarding the following:

### 1.  Subject Matter of the Agreement

**1.1.**  Under the terms and conditions of this Agreement

The Contractor shall

arrange advertising and distribution of the **AristoBook mobile application (hereinafter the Software)** through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books, as well as ensure its uninterrupted operation;

post on the Internet the information that can be accessed by the end users reading the Books using **the Software** and the markers found in the Books **(hereinafter the Information);**

The Customer agrees to pay the Contractor a fee.

**1.2.**  Uninterrupted operation of **the software** in accordance with clause 1.1 hereof is ensured by the Contractor by way of immediate elimination of the errors identified by the users reading the Books in the new releases (revised versions) of the software.

**1.3.**  Service Provision Period: five years after the date of this Agreement.

**1.4.**  The law applicable to regulate the relations of the parties hereunder is the law of the Russian Federation.

**1.5.**  The Customer may use any fragments of **the software** and/or **the Information** to advertise in any way the Book and its author, the Customer.

### 2.  Financial Terms

**2.1.**  Fee for the services provided to the Customer is a fixed amount of **1,100,000.00 (One million one hundred thousand) rubles**, comprised of 500,000.00 (Five hundred thousand) rubles for the services provided during the period from _____ 2019 to December 31, 2019; 500,000.00 (Five hundred thousand) rubles for the services provided during the period from January 1, 2020 to December 31, 2020; and 25,000.00 (Twenty five thousand) rubles for each of the subsequent periods equal to one year each. Payment is made in the form of a 100% advance payment no later than

_____

**2.2.**  The fee shall be transferred to the Contractor minus taxes and fees established by the legislation of the Russian Federation:

-   VAT of 20% of the Licensor's fee is not transferred to the Licensor, but withheld by the Customer to pay it to the budget of the Russian Federation;

-   income tax is 0% of the Licensor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident.

If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.

**2.3.**  Payment currency is US dollars. The exchange rate of the Bank of Russia as of the payment date will be applied to recalculate the fee into the currency of payment.

### 3.  Guarantees

The Contractor warrants to the Customer that:

**3.1.**  It is the lawful owner of exclusive rights and/or other rights to use **the Software** and intellectual rights that constitute **the Information**, and that nothing prevents the conclusion of the Agreement.

1

CONFIDENTIAL                                                          AST_0000049542

**3.2.**  The contents, installation and use of **the Software** by the users reading the Books, as well as the content of **the Information** do not violate intellectual or personal non-property rights of third parties, and do not harm their honor, dignity or business reputation, in particular, they do not contain insults or slander; information the disclosure of which is prohibited by the law (state, military, business secrets, other confidential information); propaganda of extremism or other information prohibited by the legislation of the Russian Federation, including pornography, information on the ways and methods of preparation, manufacture and use of narcotic drugs, psychotropic substances and their precursors, places of their purchase, methods and places of cultivation of narcotic plants, methods of committing suicide, calls to commit suicide; they do not violate other legislation of the Russian Federation, including legislation on the information, information technologies, information protection, and advertising.

**3.3.**  All details of the Contractor (company name, tax status, address, bank details), given in the agreement, are correct. The Contractor undertakes to immediately notify the Customer of any changes in its details.

**3.4.**  The Customer warrants to the Contractor that in the event it receives any claims, complaints or suggestions from the Book readers or other consumers using **the Software** and/or **the Information** relating to the operation of **the Software** and/or contents of **the Information**, it will bring such claims, complaints or suggestions to the attention of the Copyright Holder and, if necessary, assist the latter in settling the dispute.

### 4.  Liability of the Parties

**4.1.**  The Parties shall be liable for violation of the Agreement in accordance with regulations of the Russian legislation.

**4.2.**  If any of the Parties is unable to fulfill this Agreement due to force majeure events, this Agreement shall be suspended; the Parties will draw up a Reconciliation Report, and, by mutual agreement, continue this Agreement or terminate it.

**4.3.**  If it is impossible to settle the disagreements out of court through negotiations, the Party that considers that its interests have been violated may resort to the Commercial Court of Moscow.

### 5.  Other conditions

**5.1.**  In case of any changes to the Customer's organization structure, its rights and obligations are transferred to its successor via the procedures of universal succession in the scope that exists on the date of completion of the reorganization procedure. No special notification about the initiation of the reorganization procedure of the Customer shall be provided to the Contractor besides the mandatory notice of reorganization.

**5.2.**  This Agreement shall enter into force after its signing by the Parties and be valid until the parties fulfill their vested obligations.

**5.3.**  The proper addresses for notifications are the addresses of the Parties indicated in the details.

The correspondence between the Parties on the matters of relating to execution of this Agreement is carried out in Russian or in Russian and English.

When interpreting the terms and conditions of this Agreement or the content of the correspondence, the Russian version shall prevail.

**5.4.**  Any issues that do not require formalization in writing can be discussed through the exchange of e-mail messages using the addresses indicated in the details. In case of settlement of any disputes in court, such correspondence may be presented by the Parties to the court and will be recognized by them.

**5.5.**  Upon entry of this Agreement into force, any previous negotiations and correspondence on the matters regulated by the Agreement shall become invalid.

**5.6.**  Any agreements on termination or modification of the Agreement, as well as any additions, appendices and records to the Agreement shall be valid and constitute an integral part hereof only if they are made in writing, signed by the Parties, and also contain a direct reference to the Agreement.

**5.7.**  The relations of the parties hereunder, which are not regulated in the Agreement but related to its subject matter, shall be governed by the current legislation of the Russian Federation.

It is made in two original copies in Russian, one for each of the parties.

### Details of the parties

Customer: **AST Publishing House LLC**
INN [TAXPAYER IDENTIFICATION NUMBER] 7710899593, KPP [CODE OF REASON FOR REGISTRATION] 771701001, OGRN [MAIN STATE REGISTRATION NUMBER] 1117746849648
Mailing address: 123317, Moscow, a/ya 5


Registered legal address: 129085, Moscow, Zvezdny boulevard, k. 21, dom 1, premises 705, premises I, 7th floor [redacted]


e-mail:＿＿＿＿＿＿＿＿＿＿, tel.＿＿＿＿＿＿＿＿＿＿

2

AST_0000049543

Contractor: **eBook Applications LLC**
[redacted]

**Signatures of the Parties:**

_____          _____
         **Responsible party**                              **Customer**
              [redacted]                                    [redacted]

3

AST_0000049544

**Statement**
**under Service Agreement of ..................... 2019 No. 287-ZHANR-19**

Moscow                                                    "___" _____2019

    **AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the **"Customer,"**represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

    **eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the **Contractor**, represented by the Chief Executive Officer [redacted], as the party of the second part, have drawn up this statement that constitutes an integral part of the Agreement.

1. The Contractor has rendered, and the Customer has accepted the services under Agreement No. 287-ZHANR-19 of 5/20/2019, provided by the Contractor within the period from 5/20/2019 to 12/31/2019 in the following scope:
   - distribution of **AristoBook mobile application**  was provided through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books
   - uninterrupted operation of **AristoBook mobile application** was ensured;
   - information was posted on the Internet that can be accessed by the end users reading the Books via **AristoBook mobile application**, along with the markers found in the Books.

2. The Customer has no claims against the Contractor with respect to the scope and quality of the services rendered.
3. The fixed part of the Contractor's fee for the services rendered within the period from 5/20/2019 through 12/31/2019 is 500,000.00 (Five hundred thousand) rubles.
4. The fee includes taxes and charges established by the legislation of the Russian Federation:
   - VAT of 20% of the Contractor's fee is not transferred to the Contractor, but withheld by the Customer to pay it to the budget of the Russian Federation;
   - income tax is 0% of the Contractor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident.
   If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.
5. This Statement it is an integral part of the Cessionary Agreement.


**Signatures of the Parties:**


_____          _____
        **Responsible party**                                   **Customer**
         [redacted]                                           [redacted]

CONFIDENTIAL                                           AST_0000049545

**Statement**
**under Service Agreement of ..................... 2019 No. 287-ZHANR-19**

Moscow                                                    "___" _____2020

     **AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the **"Customer,"**represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

     **eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the **Contractor**, represented by the Chief Executive Officer [redacted], as the party of the second part, have drawn up this statement that constitutes an integral part of the Agreement.

1. The Contractor has rendered, and the Customer has accepted the services under Agreement No. 287-ZHANR-19 of 5/20/2019, provided by the Contractor within the period from 1/1/2020 to 12/31/2020 in the following scope:
   - distribution of **AristoBook mobile application**  was provided through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books
   - uninterrupted operation of **AristoBook mobile application** was ensured;
   - information was posted on the Internet that can be accessed by the end users reading the Books via **AristoBook mobile application**, along with the markers found in the Books.

2. The Customer has no claims against the Contractor with respect to the scope and quality of the services rendered.
3. The fixed part of the Contractor's fee for the services rendered during the period from 01/01/2020 to 12/31/2020 is 500,000.00 (Five hundred thousand) rubles.
4. The fee includes taxes and charges established by the legislation of the Russian Federation:
   - VAT of 20% of the Contractor's fee is not transferred to the Contractor, but withheld by the Customer to pay it to the budget of the Russian Federation;
   - income tax is 0% of the Contractor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident.
   If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.
5. This Statement it is an integral part of the Cessionary Agreement.

**Signatures of the Parties:**

_____          _____
          **Responsible party**                                            **Customer**
            [redacted]                                                    [redacted]

5

CONFIDENTIAL

AST_0000049546

**Statement**
**under Service Agreement of ..................... 2019 No. 287-ZHANR-19**

Moscow                                                                "___" _____2020

    **AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the **"Customer,"** represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

    **eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the **Contractor**, represented by the Chief Executive Officer [redacted], as the party of the second part, have drawn up this statement that constitutes an integral part of the Agreement.

1. The Contractor has rendered, and the Customer has accepted the services under Agreement No. 287-ZHANR-19 of 5/20/2019, provided by the Contractor within the period from 1/1/2021 to 12/31/2021 in the following scope:
   - distribution of **AristoBook mobile application**  was provided through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books
   - uninterrupted operation of **AristoBook mobile application** was ensured;
   - information was posted on the Internet that can be accessed by the end users reading the Books via **AristoBook mobile application**, along with the markers found in the Books.

2. The Customer has no claims against the Contractor with respect to the scope and quality of the services rendered.
3. The fixed part of the Contractor's fee for the services rendered within the period from 01/01 2021 to 12/31/2021 is 25,000 (twenty-five thousand) rubles.
4. The fee includes taxes and charges established by the legislation of the Russian Federation:
   - VAT of 20% of the Licensor's fee is not transferred to the Licensor, but withheld by the Customer to pay it to the budget of the Russian Federation;
   - income tax is 0% of the Licensor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident. If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.
5. This Statement it is an integral part of the Cessionary Agreement.

**Signatures of the Parties:**

_____      _____
**Responsible party**                **Customer**
[redacted]                          [redacted]

6

CONFIDENTIAL

AST_0000049547

**Statement**
**under Service Agreement of ..................... 2019 No. 287-ZHANR-19**

Moscow                                                            "___" _____2020

     **AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the **"Customer,"**represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

     **eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the **Contractor**, represented by the Chief Executive Officer [redacted], as the party of the second part, have drawn up this statement that constitutes an integral part of the Agreement.

1.   The Contractor has rendered, and the Customer has accepted the services under Agreement No. 287-ZHANR-19 of 5/20/2019, provided by the Contractor within the period from 1/1/2022 to 12/31/2022 in the following scope:

-   distribution of **AristoBook mobile application**  was provided through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books

-   uninterrupted operation of **AristoBook mobile application** was ensured;

-   information was posted on the Internet that can be accessed by the end users reading the Books via **AristoBook mobile application**, along with the markers found in the Books.

2.   The Customer has no claims against the Contractor with respect to the scope and quality of the services rendered.

3.   The fixed part of the Contractor's fee for the services rendered within the period from 01/01 2022 to 12/31/2022 is 25,000 (twenty-five thousand) rubles.

4.   The fee includes taxes and charges established by the legislation of the Russian Federation:

-   VAT of 20% of the Licensor's fee is not transferred to the Licensor, but withheld by the Customer to pay it to the budget of the Russian Federation;

-   income tax is 0% of the Licensor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident. If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.

5.   This Statement it is an integral part of the Cessionary Agreement.

**Signatures of the Parties:**

_____          _____
            **Responsible party**                                              **Customer**
              [redacted]                                                        [redacted]

7

AST_0000049548

**Statement**
**under Service Agreement of ..................... 2019 No. 287-ZHANR-19**

Moscow                                                                 "___" _____2020

**AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the **"Customer,"**represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

**eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the **Contractor**, represented by the Chief Executive Officer [redacted], as the party of the second part, have drawn up this statement that constitutes an integral part of the Agreement.

1.   The Contractor has rendered, and the Customer has accepted the services under Agreement No. 287-ZHANR-19 of 5/20/2019, provided by the Contractor within the period from 1/1/2023 to 12/31/2023 in the following scope:

-   distribution of **AristoBook mobile application**  was provided through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books
-   uninterrupted operation of **AristoBook mobile application** was ensured;
-   information was posted on the Internet that can be accessed by the end users reading the Books via **AristoBook mobile application**, along with the markers found in the Books.

2.   The Customer has no claims against the Contractor with respect to the scope and quality of the services rendered.
3.   The fixed part of the Contractor's fee for the services rendered within the period from 01/01 2023 to 12/31/2023 amounts to 25,000 (twenty five thousand) rubles.
4.   The fee includes taxes and charges established by the legislation of the Russian Federation:

-   VAT of 20% of the Licensor's fee is not transferred to the Licensor, but withheld by the Customer to pay it to the budget of the Russian Federation;
-   income tax is 0% of the Licensor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident. If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.
5.   This Statement it is an integral part of the Cessionary Agreement.

**Signatures of the Parties:**

| | |
|---|---|
| **Responsible party** | **Customer** |
| [redacted] | [redacted] |

**8**

AST_0000049549

**Statement**
**under Service Agreement of ..................... 2019 No. 287-ZHANR-19**

Moscow                                                                    "___" _____2020

     **AST Publishing House Limited Liability Company, a legal entity under the law of the Russian Federation**, hereinafter referred to as the **"Customer,"**represented by the General Director [redacted] Pavel [redacted], acting on the basis of the Charter, as the party of the first part, and

     **eBook Applications LLC, a legal entity under the legislation of the State of Massachusetts of the United States of America**, hereinafter referred to as the **Contractor**, represented by the Chief Executive Officer [redacted], as the party of the second part, have drawn up this statement that constitutes an integral part of the Agreement.

1.   The Contractor has rendered, and the Customer has accepted the services under Agreement No. 287-ZHANR-19 of 5/20/2019, provided by the Contractor within the period from 1/1/2024 to 12/31/2024 in the following scope:

-   distribution of **AristoBook mobile application**  was provided through the App store and Google Play services, as well as in other lawful ways, in the form of installation of the Software on the devices of the users reading the Books

-   uninterrupted operation of **AristoBook mobile application** was ensured;

-   information was posted on the Internet that can be accessed by the end users reading the Books via **AristoBook mobile application**, along with the markers found in the Books.

2.   The Customer has no claims against the Contractor with respect to the scope and quality of the services rendered.

3.   The fixed part of the Contractor's fee for the services rendered within the period from 01/01 2024 to 12/31/2024 amounts to 25,000 (twenty-five thousand) rubles.

4.   The fee includes taxes and charges established by the legislation of the Russian Federation:

-   VAT of 20% of the Licensor's fee is not transferred to the Licensor, but withheld by the Customer to pay it to the budget of the Russian Federation;

-   income tax is 0% of the Licensor's fee in accordance with the Agreement between the RF and the USA dated June 17, 1992 "On the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital," subject to provision by the Contractor of a notarized translation of the document issued by a competent authority of the state where the Contractor is a tax resident that certifies the status of the Contractor as the tax resident. If the Contractor fails to provide this document to the Customer before the date of payment, then the Customer, acting as the tax agent of the Contractor, will deduct from the fee the withholding tax of the Russian Federation at a rate of 20%.

5.   This Statement it is an integral part of the Cessionary Agreement.

**Signatures of the Parties:**

_____      _____
       **Responsible party**                       **Customer**
         [redacted]                          [redacted]

9

AST_0000049550



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**AST_0000049541**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Jacqueline Yorke

Sworn to before me this
August 8, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**AST_0000049542**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Jacqueline Yorke

Sworn to before me this
August 8, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

# Exhibit 4O

**From:**          [Redacted - PII] Guska [Redacted - PII]@azapi.ru]
on behalf of [Redacted - PII] Guska [Redacted - PII]@azapi.ru> [[Redacted - PII]@azapi.ru]
**Sent:**          3/21/2022 6:00:00 AM
**To:**            [Redacted - PII] Elena A[Redacted - PII]ast.ru]
Subject:          Re: Copyright infringement


Good morning, Elena,
The YouTube channel https://www.youtube.com/channel/UCseVTk15HsJK8jIUtCsZ4Vg/videos has been
blocked

Yours sincerely,
L[Redacted-PII] Guska, AZAPI


Thu., March 17, 2022 at 6:10 PM, [Redacted - PII] Elena [Redacted - PII]@ast.ru>:
Maria,

Thank you, please write regarding the facts – I will inform the management.


From: [Redacted - PII] Kotova [Redacted - PII]@azapi.ru)"[Redacted- PII]@azapi.ru>
To: [Redacted - PII] Elena [Redacted - PII] <[Redacted- PII]@ast.ru>
Cc: [Redacted - PII] Denis [Redacted - PII]@ast.ru>, [Redacted- PII] Guska [Redacted - PII]@azapi.ru>
Date: Thu, Mar 17, 2022 07:02:26 PM +0300
Subject: Re: Copyright infringement

Elena, good evening,
We will block the channel.

Yours sincerely,
Mariya

Thu, Mar. 17, 2022 at 06:51 PM, [Redacted - PII] Elena A[Redacted- PII]@ast.ru>:
Colleagues,
Good day!

Please start working (the issue is under the control of the Publishers, so please let me know if you need
documents):

The Publisher's audiobooks are uploaded on this channel:
https://www.youtube.com/channel/UCseVTkl5HsJK8iIUtCsZ4Vq/videos.


Yours sincerely,

[Redacted - PII] Elena

AST Publishers, LLC
Head of the Financial and Contractual Department

CONFIDENTIAL                                          AZAPI_0000004025

tel. (499) 951-60-00, ext. 996

postal address: 123317 Moscow City, Presnenskaya emb., bld.6, str.2
Business Complex "Imperia", 15th floor

Yours sincerely,

[Redacted – PII] Elena

AST Publishers, LLC
Head of the Financial and Contractual Department
tel. (499) 951-60-00, ext. 996

postal address: 123317 Moscow City, Presnenskaya emb., bld.6, str.2
Business Complex "Imperia", 15th floor

CONFIDENTIAL

AZAPI_0000004026



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**AZAPI_0000004025**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.



———————————————
Dan McCourt

Sworn to before me this
April 27, 2023

———————————————
Signature, Notary Public

———————————————
Stamp, Notary Public

# Exhibit 4P

| From: | |
|-------|--|
| on behalf of | **Redacted - PII** |
| **Sent:** | 9/9/2015 11:11:41 PM |
| **To:** | [redacted] Yevgeniya [redacted] azapi.ru]; Copyright [copyright@azapi.ru] |
| **Subject:** | Re: Re: YouTube video blocking claim |

I withdrew the claim because I see no reason for it.


OK.

September 10, 2015 at 0:59 AM by [redacted] Evgenia <[redacted]@azapi.ru> wrote:
  Eksmo representatives asked to include these links in the claim. It's better to ask Alexei, I received them together with the work file.


September 9, 2015 8:39 PM [redacted]> wrote:

  Can you please explain to me what the matter with these videos is? (I can't view them anymore since they have been blocked...)
  OK.
   ------- Forwarded message -----------------------------
  From: [redacted]
  Date: Sep 09, 2015 7:43 pm
  Subject: Re: YouTube video blocking claim
  To: [redacted]
  Copy:

  Dear Oleg,

  Fragments of texts from a textbook (printed) were used in these videos, as indicated in its description, and the issue was resolved with the author of this textbook. These fragments were voiced by my employees. There are no fragments of the AUDIO edition of OOO Audiokniga in the videos.

  The question remains why haven't you informed me, as the owner of the channel and these videos, before filing the claim with YouTube? If the true copyright holder has any claims against me, I will eagerly resolve the issue and remove the content that infringes the copyright. But neither you nor OOO Audiokniga is a copyright holder.

  Therefore, will you please contact YouTube and withdraw your claim to get the sanctions based on it ended.

  Sincerely,
  [redacted]

September 9, 2015 8:14 pm user Oleg [redacted] wrote:
    As far as we know, these are the fragments of the audio edition:
    "200 Dialogues in English for All Occasions" by Natalia Chernikhovskaya

    (It is available on the Litres website:
    http://www.litres.ru/natalya-chernihovskaya/200-dialogov-na-angliyskom-na-vse-sluchai-zhizni-mp3/ )


    --
    Sincerely,
    Oleg [redacted]
    General Director of AZAPI NPO

CONFIDENTIAL

September 9, 2015 5:40 pm user [redacted] <[redacted]> wrote:
Oleg, please find below the list of blocked videos:


Video title: English video lesson: Colloquial Phrases and Dialogues. Issue 8.
Video url: http://www.youtube.com/watch?v=ADAF0HFEVyU
Takedown issued by: AZAPI NPO on behalf of OOO Audiokniga

Video title: English video lesson: Colloquial Phrases and Dialogues. Issue 7.
Video url: http://www.youtube.com/watch?v=wBioiPY9iaM
Takedown issued by: AZAPI NPO on behalf of OOO Audiokniga

Video title: English video lesson: How can we apologize in English?
Video url: http://www.youtube.com/watch?v=2tIMPOHqBR0
Takedown issued by: AZAPI NPO on behalf of OOO Audiokniga

Video title: English video lesson: Colloquial Phrases and Dialogues. Issue 6.
Video url: http://www.youtube.com/watch?v=4inX_HYwMIU
Takedown issued by: AZAPI NPO on behalf of OOO Audiokniga

Video title: English video lesson: Colloquial Phrases and Dialogues. Issue 2
Video url: http://www.youtube.com/watch?v=Vv94ugGbBCg
Takedown issued by: AZAPI NPO on behalf of OOO Audiokniga


Best regards,
[redacted]

CONFIDENTIAL

AZAPI_0000007471



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**AZAPI_0000007470**" is, to the best of my knowledge and belief, a true and accurate translation from Russian into English.

_____
Jacqueline Yorke

Sworn to before me this
August 8, 2022

_____
Signature, Notary Public



_____
Stamp, Notary Public

# Exhibit 4Q

# WILSON SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

1700 K Street NW
Fifth Floor
Washington, D.C. 20006-3817

O: 202.973.8800
F: 202.973.8899

PAUL N. HAROLD
Internet: PHAROLD@wsgr.com

June 8, 2022

**<u>Via Electronic Mail</u>**

Randall P. Ewing
Korein Tillery, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101

Re: *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD

Dear Randall:

I write concerning issues with the document productions of AST Publishing, Ltd. and Association of Copyright Holders, Licensors, and Licensees for the Protection of Copyrights on the Internet ("AZAPI"), as well as productions by Pirate Monitor LTD, Gábor Csupó and Intellectual Property LLC ("IPLLC").  Given that less than a month remains in fact discovery, please provide the requested documents and information by June 10.

First, many of the documents produced by AST are illegible.  *E.g.*, AST_0000000011, AST_0000000017, AST_0000000020, AST_0000000027, AST_0000000065, AST_0000000100, AST_0000000153, AST_0000000176, AST_0000000180, AST_0000000235.  Please provide legible copies of AST's document production.

Second, AST's and AZAPI's productions lack accurate text files.  For documents in the Russian language, the .txt files do not contain the Cyrillic/Russian script text that appears in the documents themselves.  Please provide accurate text files for the AST and AZAPI productions.

Third, the documents produced by AST and AZAPI do not contain the metadata required under the Court's ESI order.  *See* Dkt. 57 at 7-9.  For example, AST_0000000017 appears to be a screenshot, but does not contain any information in the metadata fields associated with such ESI.  As another example, AZAPI_0000000001 is an email, but does

**WILSON
SONSINI**

Randall P. Ewing
June 8, 2022
Page 2

not contain information in the metadata fields associated with emails (e.g., SUBJECT, TO, FROM).  Please provide the required metadata for the AST and AZAPI productions.

Fourth, the documents produced by AST and AZAPI contain a substantial number of PII redactions, the basis for which is unclear.  For the 106 documents produced by AST, all but one have redactions, as do one-third of the documents produced by AZAPI.  Please describe the categories of information that AST and AZAPI have redacted as PII. Defendants note in particular two exemplary issues with AST's and AZAPI's PII redactions.  First, AST has produced agreements pertaining to Works-in-Suit and appears to have redacted as PII the names of the individuals signing those agreements.  *See, e.g.*, AST_0000000028, AST_0000000174.  This information is relevant and discoverable. If AST has authority justifying redactions of information of this kind, please provide it promptly.  Second, AZAPI has produced emails with Google that appear to be takedown requests and apparently has redacted the names of the individuals communicating with Google.  *E.g.*, AZAPI_0000003967.  What is AZAPI's basis for redacting information already disclosed to Google, particularly relevant information?

Finally, AST, AZAPI, Pirate Monitor, Csupó, and IPLLC have produced numerous foreign-language documents without providing translations.  Under the Court's ESI order, "[f]or any foreign-language documents responsive to document requests that a party translated or translates into the English language using human translators for its own purposes, except to the extent such translation is protected by attorney-client or work-product privileges, the producing party shall produce the translation of the original document with the original."  Dkt. 57 at 11-12.  Please produce any translations required to be produced under the ESI order or confirm that no such translations exist.

Very truly yours,

WILSON SONSINI GOODRICH & ROSATI

Professional Corporation

 */s/ Paul N. Harold*

Paul N. Harold

# Exhibit 4R

# WILSON
# SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

650 Page Mill Road
Palo Alto, California 94304-1050

O: 650.493.9300
F: 650.493.6811

ANDREW T. KRAMER
Internet: AKRAMER@wsgr.com
Direct dial: 650-565-3641

August 23, 2022

**Via Electronic Mail**
Randall Ewing Jr.
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, Il 60601

Re: *Schneider et al v. YouTube, LLC et al.*, Case No. 20-cv-4423-JD

Dear Randall:

We write with regard to AST's and AZAPI's redactions of names and email addresses from their document productions, as well as AST's redaction of that information from its privilege log. Those improper redactions, which you claimed were made pursuant to Russian privacy law, have already interfered with Defendants' ability to prepare for and conduct depositions. Your offer, made during the August 18 and August 19 depositions, to disclose to Defendants' counsel the redacted information in documents used in those depositions did not remedy that prejudice. Indeed, your offer to verbally inform Defendants of the substance of the redacted information casts doubt on the need for the redactions in the first place. We have made clear that AST's obligations are governed by the rules of the country in which it chose to file suit. Further, we cannot imagine how the Russian law(s) on which AST and AZAPI rely require redaction of the produced documents themselves but permit counsel to separately provide the redacted information by other means.

Please produce unredacted versions of all the documents that AST and AZAPI have produced in this action, including those used in last week's depositions, as well as an unredacted copy of AST's privilege log this week.

Separately, we still have not received a privilege log from AZAPI, despite having raised the issue in my July 26, 2022 letter. Please promptly provide AZAPI's privilege log pursuant to Federal Rule of Civil Procedure 45(e)(2).

Sincerely,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*s/ Andrew T. Kramer*

Andrew T. Kramer

# Exhibit 4S

KOREIN TILLERY

*Attorneys at Law*

Michigan Plaza
205 North Michigan Avenue, Suite 1950
Chicago, IL  60601-4263

www.KoreinTillery.com

Randall P. Ewing Jr.

Rewing@koreintillery.com
*p: (312) 641-9750*
*f: (314) 241-3525*

June 15, 2022                                                                  **Via Electronic Mail**

Paul N. Harold
Wilson Sonsini Goodrich & Rosati
1700 K Street NW, 5th Floor
Washington, DC 20006-3817

*Re:*      *Schneider et al. v. YouTube, LLC et al.*, **Case No. 3:20-cv-04423-JD**

Dear Paul:

We write in response to your letter of June 8, 2022 regarding document productions of AST Publishing, Ltd. ("AST"), the Association of Copyright Holders, Licensors, and Licensees for the Protection of Copyrights on the Internet ("AZAPI"), Pirate Monitor LTD ("Pirate Monitor"), Gábor Csupó, and Intellectual Property LLC ("IPLLC").

As an initial matter, AST and AZAPI are based in Russia and must comply with Russian laws, including the Russian Personal Data Law.  The Russian Personal Data Law forbids disclosure of personal data,[1] unless certain limited exceptions apply.  As Google knows all too well, a violation of the Russian Personal Data Law exposes an entity to significant liability.[2]  In an effort to comply with both Russian law and the Federal Rules of Civil Procedure, we have hired a team of Russian-literate attorneys to review AST and AZAPI documents for responsiveness and redact personal data, including full names, phone numbers, e-mail addresses, and residential addresses.  To be clear, the *vast majority* of text in the AST and AZAPI productions has not been redacted.  The only text that has been redacted is information protected by the Russian Personal Data Law, attorney-client privilege, or work-product doctrine.

In regard to your specific concerns:

---

[1] *See* Federal Law of 27 July 2006 N 152-FZ ON PERSONAL DATA (July 27, 2006), *available at*: https://pd.rkn.gov.ru/authority/p146/p164/ (defining "personal data" as "any information referring directly or indirectly to a particular or identified individual").
[2] *See* Reuters, "Russia fines Google 3 mln rbls for violating personal data law" (July 29, 2021), *available at*: https://www.reuters.com/technology/russia-fines-google-3-mln-rbls-violating-personal-data-law-2021-07-29/

P. Harold
June 15, 2022
Page 2

First, we disagree that the documents cited are illegible as evidenced by the fact our team of Russian-literate attorneys were able to review them.  Is your conclusion based on the opinion of an attorney that can read Russian-language documents?  We suspect that, to an English speaker, most of AST and AZAPI's documents would be unreadable.  As explained above, due to the Russian Personal Data Law, we are unable to produce un-redacted native versions of these documents.  Moreover, we have reviewed the original files[3] (which are largely screenshots or scanned documents) and have confirmed they are of similar quality to the produced versions.

Second, immediately following this letter, you should be receiving a link to download the Russian (Cyrillic) OCR text files.

Third, in light of the Russian Personal Data Law, we are unable to produce metadata that contains the personal data of Russian employees (e.g., names and email addresses).  We are reviewing the metadata from the prior AST and AZAPI productions and will supplement our metadata production with additional fields and personal data redacted.  We will produce the missing metadata, with necessary privacy redactions, immediately following this letter.

Fourth, as explained above, the basis for the PII redactions is the Russian Personal Data Law.  As you note, a number of documents produced thus far were "already disclosed to Google," and thus, Defendants are free to review the unredacted documents already disclosed to them.  That these documents were previously sent to Google does not, however, provide a basis to produce un-redacted versions under the Russian Personal Data Law.  In any event, we are willing to continue to meet and confer with Defendants regarding this issue.  As explained during a meet-and-confer call between Philip Korologos and David Kramer on June 9, 2022, we may be able to allow Defendants to review all documents without PII redactions if the documents are stored in Canada or the UK,[4] which may also expedite the production of documents since we could forgo the time-consuming PII redaction process.  We look forward to your response to this approach.

Finally, in accordance with the Court's ESI order, we can confirm that there are no responsive, non-privileged "foreign-language documents . . .  translated . . . into the English language using human translators."[5]

---

[3] Consistent with the Court's ESI order, we have preserved unredacted copies of all documents that were produced with redactions. Dkt. 57, p. 11.

[4] Our understanding is that the Russian Personal Data Law relaxes certain requirements where personal data is transferred to foreign states that are "parties to the Council of Europe Convention on the Protection of Individuals with Regard to Automatic Processing of Personal Data, as well as other foreign states providing adequate protection of the data subjects' rights[.]"  https://pd.rkn.gov.ru/authority/p146/p164/.

[5] Neither the Court's ESI order nor the Federal Rules of Civil Procedure require that a party translate foreign documents for a requesting party.  *See Exp.-Imp. Bank of Korea v. ASI Corp.*, CV162056MWFJPRX, 2017 WL 11509453, at *4 (C.D. Cal. June 26, 2017) ("Plaintiff is correct that there are numerous cases rejecting forced translation of documents produced in response to Rule 34 requests.") (collecting cases).  Accordingly, AST, AZAPI, Pirate Monitor, Csupó, and IPLLC decline to do so.

P. Harold
June 15, 2022
Page 3

Sincerely,

Randall P. Ewing Jr.

# Exhibit 4T

KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO  63101-1625

www.KoreinTillery.com

Randall Ewing Jr.

*Attorney*
Rewing@koreintillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

September 30, 2022                                                   via electronic mail

Andrew T. Kramer
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304-1050

**Re:   *Schneider et al. v. YouTube, LLC, et al.,* Case No. 3:20-cv-04423-JD**

Dear Mr. Kramer:

      I write in response to your August 23, 2022 letter concerning discovery for Plaintiff AST Publishing Ltd. ("AST") and the third-party entity Association of Copyright Holders, Licensors, and Licensees for the Protection of Copyrights on the Internet ("AZAPI").

      You continue to complain that AST and AZAPI have redacted personal identifying information ("PII"), despite the fact that Plaintiffs have repeatedly explained that such redactions are required under Russian law (e.g., June 15, 2022 Letter from Randall Ewing to Paul Harold), despite the fact that Defendants themselves produced many documents with extensive PII redactions, and despite the fact that Plaintiffs offered to allow Defendants to review AST and AZAPI information in unredacted form on multiple occasions (e.g., August 16, 2022 Email from Randall Ewing to Andrew Kramer).  We frankly do not understand Defendants' grievance that Plaintiffs offered to disclose certain information orally during the August 18 and August 19 depositions—yet another accommodation rejected by Defendants.  In light of Plaintiffs' multiple offers to Defendants to review unredacted information—which Defendants rejected again and again—Defendants' ill-defined claims of prejudice are unpersuasive.

      In any event, Defendants have waived this issue by raising it far too late. AST and AZAPI have followed the same redaction protocol since their very first productions on June 1, 2022, which Defendants noted in their June 8, 2022 correspondence from Mr. Harold.  During the July 7 hearing, Defendants could have raised the issue of redactions with the Court but chose not to. The Court was clear that Defendants may "seek discovery from AST until ***August 8, 2022***." Dkt. 153, p. 2 (emphasis added).  Your August 23rd request for AST and AZAPI to now produce unredacted versions of "*all the documents* that AST and AZAPI have produced in this action" is thus untimely under the Court's order.  Furthermore, your delay in raising this issue, which would require re-producing the entire production, would impose unreasonable burden.

Andrew T. Kramer
September 30, 2022
Page 2

        With respect to AZAPI's privilege log, AZAPI expects to produce a privilege log by
October 5, 2022.

                        Sincerely,

                        /s/ Randall P. Ewing, Jr.

                        Randall P. Ewing Jr.

# Exhibit 4U

George A. Zelcs *(pro hac vice)*
gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery (*pro hac vice*)
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe *(pro hac vice)*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
pkorologos@bsfllp.com
Joanna C. Wright *(pro hac vice)*
jwright@bsfllp.com
Demetri Blaisdell *(pro hac vice)*
dblaisdell@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,
Uniglobe Entertainment, LLC, and
AST Publishing Ltd.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

3
4
5
6
7
8
9
10
11
12

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated;<br><br>                    Plaintiff,<br>        vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC;<br><br>                    Defendants. | CASE NO. 3:20-cv-4423<br><br>**ASSOCIATION OF COPYRIGHT HOLDERS, LICENSORS, AND LICENSEES FOR THE PROTECTION OF COPYRIGHTS ON THE INTERNET ("AZAPI")'s RESPONSES AND OBJECTIONS TO YOUTUBE AND GOOGLE'S NON-PARTY DOCUMENT SUBPOENA** |

13
14
15
16
17
18

| |
|---|
| YOUTUBE, LLC and GOOGLE LLC;<br><br>                    Counter-Plaintiffs,<br>        vs.<br><br>GÁBOR CSUPÓ, PIRATE MONITOR LTD., LLC, and PIRATE MONITOR LLC,<br><br>                    Counter-Defendants. |

19

20          Pursuant to Federal Rule of Civil Procedure 45, Association of Copyright Holders, Licensors,

21  and Licensees for the Protection of Copyrights on the Internet ("AZAPI") submits the following

22  responses and objections ("Responses") to Defendants YouTube, LLC's ("YouTube") and Google

23  LLC's ("Google") (collectively "Defendants") Non-Party Document Subpoena to Produce

24  Documents (the "Requests"), dated March 24, 2022, in the above-captioned action (the "Action").[1]

25          By these Responses, AZAPI does not intend to, and does not, (1) waive any objection as to

26  the admissibility of evidence or the competency of, relevancy of, materiality of, or privilege attaching

27  _____

[1] By letter dated May 16, 2022, the undersigned counsel agreed to accept service of the Requests, effective May 16, 2022.

2

to any information disclosed in these responses, or (2) waive the right to object to other discovery requests or undertakings involving or reflecting the subject matter of the Requests or these Responses. These Responses do not constitute, nor should they be construed as, admissions with respect to the relevancy or admissibility of any evidence or document identified herein or the truth or accuracy of any statement, characterization, or other information contained in such document.  AZAPI expressly does not concede the relevance or materiality of any of these Responses or the subject matter they refer to.

AZAPI's discovery process and investigation into the Requests is not complete as of the date of these Responses and is ongoing.  These Responses to the Requests are based upon information currently known to or believed to be true by AZAPI.  AZAPI reserves the right to modify or supplement these Responses upon completion of discovery and more facts and information are discovered by AZAPI.

AZAPI reserves the right to amend or revise these Responses. **AZAPI** also asserts that any discovery obligations should be mutual between parties, so that if any of **AZAPI**'s objections are overridden, Defendants should be subject to the same scope of discovery, including definitions and instructions for discovery compliance.

## **GENERAL OBJECTIONS**

1.      AZAPI objects to the Requests to the extent they impose obligations in addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any court governing discovery in this case, or any discovery protocol agreed upon by the parties.

2.      AZAPI objects to the extent that Defendants' Requests purport to seek discovery of every conceivable document, or "any" or "all" documents, relating to a particular Request. Unless otherwise specified, for any categories of documents that AZAPI agrees to produce, AZAPI will produce documents located through a reasonable search proportionate to the needs of the case.

3.      AZAPI objects to each Request to the extent it purports to seek information protected by the attorney-client privilege or the work-product doctrine, and AZAPI will not provide any

privileged and/or protected information. Any disclosure of privileged information would be inadvertent and should not be deemed a waiver of any applicable privileges.

4.      AZAPI objects to each Request to the extent that it contains words and/or phrases that are not defined, thereby rendering the Request overboard, vague, and ambiguous.

5.      AZAPI objects to the Requests to the extent that they seek information not within AZAPI's possession, custody, or control.

6.      AZAPI objects to the Requests to the extent that they purport to impose a burden on AZAPI to provide documents or information already in Defendants' possession, custody, control, and/or which are publicly available, otherwise equally available to all parties, or available to Defendants from a less burdensome, more efficient, more convenient, or less expensive source than they are available to AZAPI, or through a more convenient, more efficient, less burdensome, or less expensive means than the Requests.

7.      AZAPI objects to the Requests to the extent they purport to request documents related to all of AST's copyrighted works.  As one of the largest book publishing companies in Russia, AST owns copyrights for hundreds of works.  Accordingly, any Request for "all" documents related to "AST's works" would be unduly burdensome and disproportionate to the needs of this case.  Unless otherwise stated, AZAPI will limit its production to the works identified by AST in the above-captioned lawsuit (the "Works in Suit").

8.      AZAPI objects to the Requests to the extent they purport to request documents related to copyright infringement outside of YouTube, which could involve hundreds or thousands of websites that may host infringing work.  Unless otherwise stated, AZAPI will interpret Requests for documents related to "infringement" to mean infringement of the Works in Suit on YouTube.

9.      Any objection to any of the Requests is not an admission that AZAPI has any information or documents responsive to a particular Request.

10.      When a response indicates that AZAPI will produce documents, AZAPI does not represent that any responsive documents are in its possession, custody, or control, but rather that

production will be made if any such documents are located after AZAPI performs a reasonable search proportionate to the needs of the case of documents that are in its possession, custody, or control.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     AZAPI objects to the extent that Defendants' Definitions and Instructions seek information covered by privilege(s), including the attorney-client and attorney work product privileges. *See, e.g.*, Defendants' Definition No 1 (defining "AZAPI," "You," or "Your" to include AZAPI's "lawyers").

2.     AZAPI objects to Defendants' Definition of "Communication"—which Defendants define as "communications *in any form*, including without limitation communications via WhatsApp, Facebook Messenger or *any other messaging service, application, or website*." (emphasis added). In conjunction with Defendants' overbroad definition of AZAPI—which includes AZAPI, "its employees, agents, officers, representatives, contractors, *lawyers*, affiliates, or any person or entity acting on its behalf or direction or under its control"—Defendants purport to request all communications, in any form, on any website, involving nearly anyone that has ever worked with or for AZAPI, which could potentially include privileged communications with attorneys and irrelevant (and private) communications with family members.  Any such Request is overbroad, especially since AZAPI is not a party to the lawsuit.  *See, e.g., Burdette v. Panola Cnty.*, 83 F. Supp. 3d 705, 707 (N.D. Miss. 2015) (granting motion to quash subpoena for text messages and phone call logs and stating "[t]he court will not permit irrelevant discovery that appears to be more harassing than productive"). Unless otherwise stated, AZAPI will interpret "Communication" to mean responsive, non-privileged e-mail communications.

3.     AZAPI objects to the extent that Defendants' Requests purport to seek discovery of every conceivable document, or "any" or "all" documents, relating to a particular Request. Unless otherwise specified, for any categories of documents that AZAPI agrees to produce, AZAPI will produce documents located through a reasonable search proportionate to the needs of the case.

4.     AZAPI objects to the instruction to provide all documents in the possession, custody, or control of anyone other than AZAPI. Consistent with obligations under the Federal Rules and

1    applicable law, AZAPI will undertake reasonable efforts to produce responsive documents within its

2    possession, custody, or control.

3        5.    AZAPI objects to the failure to include an instruction as to the relevant time period

4    for the Requests. AZAPI will apply reasonable date restrictions to its searches for responsive

5    documents, consistent with obligations under the Federal Rules and applicable law.

6                   **SPECIFIC OBJECTIONS AND RESPONSES**

7        The General Objections and Objections to Definitions and Instructions set forth above are

8    incorporated into the Specific Objections below, as if incorporated therein. AZAPI reserves the right

9    to amend or revise its Specific Objections, including after meeting and conferring with Defendants

10   regarding any Request.  A response to any Request indicating that AZAPI agrees to produce

11   documents is not an admission that documents responsive to the Request exist and does not waive

12   any objections to the use of any discovery produced in response to the Request.

13   **DOCUMENT REQUEST NO. 1:**

14       All documents concerning DMCA Takedown Notices submitted to YouTube by You on

15   behalf of AST.

16   **OBJECTIONS AND RESPONSE:** AZAPI objects to Request No. 1 on the grounds that it is

17   vague and overbroad with respect to the phrase "[a]ll documents[.]"  AZAPI further objects on the

18   grounds that YouTube requests documents already within its control, possession, or custody—

19   namely, "DMCA Takedown Notices submitted to YouTube[.]"

20       Subject to and without waiving these objections, the General Objections, or the Objections to

21   Definitions and Instructions, in response to Request No. 1, AZAPI will produce DMCA Takedown

22   Notices submitted to YouTube by AZAPI on behalf of AST in its control, possession, or custody, if

23   any, located through a reasonable search proportionate to the needs of the case.

24   **DOCUMENT REQUEST NO. 2:**

25       All documents concerning AST's copyright enforcement on YouTube.

26   **OBJECTIONS AND RESPONSE:** AZAPI objects that this Request is vague, ambiguous, and

27   overbroad with respect to the words "[a]ll documents" and the phrase "AST's copyright enforcement

1    on YouTube." AZAPI further objects on the grounds that this Request potentially seeks documents

2    protected by the attorney-client privilege, the attorney work product doctrine or other applicable

3    privileges.

4        Subject to and without waiving these objections, the General Objections, or the Objections to

5    Definitions and Instructions, in response to Request No. 2, AZAPI will produce non-privileged

6    documents concerning AST's copyright enforcement on YouTube, as it understands the phrase

7    "AST's copyright enforcement on YouTube," in its control, possession, or custody, if any, located

8    through a reasonable search proportionate to the needs of the case.

9    **DOCUMENT REQUEST NO. 3:**

10        All documents concerning AST's Communications with YouTube, including any such

11    Communications made by You on behalf of AST.

12    **OBJECTIONS AND RESPONSE:** AZAPI objects that this Request is vague, ambiguous, and

13    overbroad. AZAPI further objects to the Request's conflation of AST and AZAPI in requesting

14    "AST's Communications . . . made by [AZAPI]." AZAPI further objects on the grounds that

15    YouTube requests documents already within its control, possession, or custody—namely,

16    "Communications with YouTube[.]"

17        Subject to and without waiving these objections, the General Objections, or the Objections to

18    Definitions and Instructions, in response to Request No. 3, AZAPI will produce e-mail

19    communications between AST and YouTube and e-mail communications between YouTube and

20    AZAPI where AZAPI acted on behalf of AST, in its control, possession, or custody, if any, located

21    through a reasonable search proportionate to the needs of the case.

22    **DOCUMENT REQUEST NO. 4:**

23        All agreements between You and AST or LitRes relating to copyright enforcement.

24    **OBJECTIONS AND RESPONSE:** AZAPI objects that this Request is vague, ambiguous, and

25    overbroad with respect to the phrase "agreements . . . relating to copyright enforcement."

26        Subject to and without waiving these objections, the General Objections, or the Objections to

27    Definitions and Instructions, in response to Request No. 4, AZAPI will produce non-privileged

1  agreements between AZAPI and AST and/or LitRes "relating to copyright enforcement," as AZAPI

2  understands that phrase, in its control, possession, or custody, if any, located through a reasonable

3  search proportionate to the needs of the case.

4  **DOCUMENT REQUEST NO. 5:**

5      All documents concerning Communications between Ryabyko Maxim and AST relating to

6  YouTube.

7  **OBJECTIONS AND RESPONSE:**  AZAPI objects that this Request is vague and overbroad.

8  AZAPI further objects to the extent this Request seeks documents protected by the attorney-client

9  and/or work product privileges that involve Ryabyko Maxim.  AZAPI further objects that the Request

10  is ambiguous and overbroad with respect to the phrase "relating to YouTube."

11      Subject to and without waiving these objections, the General Objections, or the Objections to

12  Definitions and Instructions, in response to Request No. 5, AZAPI will produce non-privileged e-

13  mail communications between Ryabyko Maxim and AST "relating to YouTube," as AZAPI

14  understands that phrase, in its control, possession, or custody, if any, located through a reasonable

15  search proportionate to the needs of the case.

16  **DOCUMENT REQUEST NO. 6:**

17      All documents and Communications, relating to the videos that were the subject of DMCA

18  Takedown Notices sent by You to YouTube on behalf of AST.

19  **OBJECTIONS AND RESPONSE:** AZAPI objects that this Request is vague and overbroad.

20      Subject to and without waiving these objections, the General Objections, or the Objections to

21  Definitions and Instructions, in response to Request No. 6, AZAPI will perform a reasonable search

22  proportionate to the needs of the case and will produce responsive, non-privileged documents, if any,

23  related to videos that were the subject of DMCA Takedown Notices sent by AZAPI to YouTube on

24  behalf of AST.

25  **DOCUMENT REQUEST NO. 7:**

26      All Communications between You and AST concerning the Lawsuit.

27

**OBJECTIONS AND RESPONSE:** AZAPI objects to this Request on the grounds that it is overbroad, potentially seeks information protected by the attorney-client and/or work product privileges, and seeks information that is not relevant to any party's claim or defense.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 7, AZAPI will produce non-privileged e-mail communications between AZAPI and AST concerning the Lawsuit in its control, possession, or custody, if any, located through a reasonable search proportionate to the needs of the case.

**DOCUMENT REQUEST NO. 8:**

All documents concerning alleged infringement of AST's works on YouTube.

**OBJECTIONS AND RESPONSE:** AZAPI objects to this Request on the grounds that it is overbroad, potentially seeks information protected by the attorney-client and/or work product privileges, and seeks information that is not relevant to any party's claim or defense.  AZAPI further objects to this Request as overbroad and not relevant to any party's claim or defense to the extent it concerns AST's works beyond the Works in Suit.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions and Instructions, in response to Request No. 8, AZAPI will produce non-privileged documents concerning alleged infringement of AST's Works in Suit on YouTube in its control, possession, or custody, if any, located through a reasonable search proportionate to the needs of the case.  For any documents requested in Request No. 8 beyond that, AZAPI is willing to meet and confer with Defendants about a more properly-tailored and narrowed request.

**DOCUMENT REQUEST NO. 9:**

All documents concerning alleged damages suffered as a result of the infringement of AST's copyrighted works.

**OBJECTIONS AND RESPONSE:**  AZAPI objects to this Request on the grounds that it potentially seeks information protected by the attorney-client and/or work product privileges.  AZAPI further objects to this Request on the grounds it is overbroad since it seeks documents beyond the

1   Works in Suit and that it seeks documents concerning "infringement" not limited to infringement on

2   YouTube—which could potentially include infringement on hundreds or thousands of websites.

3       Subject to and without waiving these objections, the General Objections, or the Objections to

4   Definitions and Instructions, in response to Request No. 9, AZAPI will produce non-privileged

5   documents concerning damages suffered as a result of the infringement of AST's Works in Suit on

6   YouTube in its control, possession, or custody, if any, located through a reasonable search

7   proportionate to the needs of the case.  For any documents requested in Request No. 9 beyond that,

8   AZAPI is willing to meet and confer with Defendants about a more properly-tailored and narrowed

9   request.

10  **DOCUMENT REQUEST NO. 10:**

11      All documents concerning any request by You for access to any YouTube Copyright

12  Protection Service.

13  **OBJECTIONS AND RESPONSE:**  AZAPI objects to this Request to the extent that it seeks

14  documents already in the control, possession, or custody of YouTube.

15      Subject to and without waiving these objections, the General Objections, or the Objections to

16  Definitions and Instructions, in response to Request No. 10, AZAPI will produce non-privileged

17  documents concerning requests by AZAPI for access to YouTube's Copyright Protection Service in

18  its control, possession, or custody, if any, located through a reasonable search proportionate to the

19  needs of the case.

20

21      Dated: May 31, 2022                Respectfully submitted,

22                                         /s/ Randall P. Ewing, Jr.
                                           George A. Zelcs (*pro hac vice*)
23                                         Randall P. Ewing, Jr. (*pro hac vice*)
                                           Ryan Z. Cortazar (*pro hac vice*)
24                                         KOREIN TILLERY, LLC
                                           205 North Michigan, Suite 1950
25                                         Chicago, IL 60601
                                           Telephone: (312) 641-9750
26                                         Facsimile: (312) 641-9751

27                                         Stephen M. Tillery (*pro hac vice*)
                                           Steven M. Berezney, CA Bar #329923

Carol O'Keefe (*pro hac vice*)
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos (*pro hac vice*)
Joanna Wright (*pro hac vice*)
Demetri Blaisdell (*pro hac vice*)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Plaintiffs Maria Schneider,*
*Uniglobe Entertainment, LLC, and*
*AST Publishing Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 31, 2022, I caused the foregoing to be served on all opposing counsel of record by email at the addresses listed below:

Schneidervyoutube@wsgr.com

/s/ Randall P. Ewing, Jr.

AZAPI'S RESPONSES AND OBJECTIONS TO
DEFENDANTS' DOCUMENT SUBPOENA

CASE NO. 3:20-CV-4423

# Exhibit 5A

George A. Zelcs *(pro hac vice)*
   gzelcs@koreintillery.com
Randall P. Ewing, Jr. *(pro hac vice)*
   rewing@koreintillery.com
Ryan Z. Cortazar *(pro hac vice)*
   rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
   stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
   sberezney@koreintillery.com
Carol O'Keefe *(pro hac vice)*
   cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
   jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone:  (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
   pkorologos@bsfllp.com
Joanna Wright *(pro hac vice)*
   jwright@bsfllp.com *(pro hac vice)*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Telephone:  (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Maria Schneider and*
*Pirate Monitor, LTD*

1

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated;<br><br>        Plaintiffs,<br><br>     vs.<br><br>YOUTUBE, LLC; and GOOGLE LLC;<br><br>        Defendants. | CASE NO.  5:20-cv-4423<br><br>**PLAINTIFF MARIA SCHNEIDER'S FIRST AMENDED RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST AND SECOND SET OF INTERROGATORIES** |

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Maria Schneider submits the following first amended responses and objections to Defendants YouTube, LLC ("YouTube") and Google LLC ("Google") (collectively "Defendants") First and Second Set of Interrogatories to Plaintiff Maria Schneider, dated October 12, 2020 and November 5, 2020, respectively (the "Requests"), in the above-captioned action (the "Action").

By submitting these Responses, Schneider does not concede or waive any arguments regarding the scope, relevance, and timing of any discovery in the Action.

Schneider reserves the right to amend or revise these Responses, including based on any responses or objections submitted by Defendants to any of Schneider's discovery requests. Schneider also asserts that any discovery obligations should be mutual between parties, so that if any of her objections are overridden, Defendants should be subject to the same scope of discovery, including definitions and instructions for discovery compliance.

## **GENERAL OBJECTIONS**

1.      Schneider objects to the Interrogatories to the extent they impose obligations in addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, any court governing discovery in this case, or any discovery protocol agreed upon by the parties.

2.      Schneider objects to the Interrogatories, and to each Definition and specific Request contained therein, insofar as they seek information not in her possession, custody, or control. Schneider further objects to the Requests to the extent they seek documents and information that she does not have the practical ability to obtain or which would be unreasonably burdensome to identify or to obtain.

3.      Schneider objects to the extent the Interrogatories seek information that is already in Defendants' possession, is equally accessible to Defendants, or is readily accessible to Defendants.

4.      Schneider further objects to the Interrogatories to the extent that the burden of deriving an answer from other sources of discovery will be substantially the same for Defendants as it is for her.

5.      Schneider objects to the Interrogatories to the extent they seek information that Defendants can obtain from sources that are more convenient, less burdensome, or less expensive.

6.      Schneider objects to the Interrogatories to the extent they seek information protected by the attorney/client privilege, the work-product doctrine, Rule 408 of the Federal Rules of Evidence, any common interest privilege, joint defense agreement or any other applicable privilege.

7.      Schneider further objects to the Interrogatories to the extent that they are vague and ambiguous, overly broad, unduly burdensome, lacking in particularity or unreasonable, or otherwise seek the discovery of information that is neither relevant to the claims or defenses of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence

8.      Schneider objects to the Interrogatories to the extent they are propounded for the improper purpose of annoying or harassing her.

Schneider's responses are based solely on facts reasonably known to her at the time of responding to these Interrogatories. Schneider reserves the right to supplement, amend, or otherwise modify these responses.

**OBJECTIONS TO DEFINITIONS**

Schneider objects to the definition of "Works In Suit" to the extent it requires her to assert that a copyright for a specific work has been infringed prior to discovery. Schneider responds for all works for which she holds copyrights.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1: Identify each Work In Suit by title, author, owner, date of creation and United States copyright registration number, if applicable.**

**OBJECTIONS AND RESPONSE:**  Plaintiff Maria Schneider identifies the following Works In Suit:

- "Wyrgly," authored and owned by Maria Schneider, 1989, PAu001628584
- "Evanescence," authored and owned by Maria Schneider, 1991, PAu001628588
- "Gumba blue," authored and owned by Maria Schneider, 1984, PAu001275028
- "Some circles," authored and owned by Maria Schneider, 1992, PAu001628581
- "Green piece," authored and owned by Maria Schneider, 1987, PAu001628590
- "Gush," authored and owned by Maria Schneider, 1992, PAu001803810
- "My lament," authored and owned by Maria Schneider, 1990, PAu001734757
- "Dance, you monster, to my soft song," authored and owned by Maria Schneider, 1991, PAu001628585
- "Last season," authored and owned by Maria Schneider, 1985, PAu001628586
- "El viento," authored and owned by Maria Schneider, 1994, PAu001952212
- "Scenes from childhood," authored and owned by Maria Schneider, 1995, PA0001213212
- "Waxwing," authored and owned by Maria Schneider, 1993, PAu001917961
- "Lately," authored and owned by Maria Schneider, 1988, PAu001275027
- "The willow," authored and owned by Maria Schneider, 1990, PAu001628587
- "Bird count," authored and owned by Maria Schneider,  1985, PAu001628589
- "Hang gliding," authored and owned by Maria Schneider, 1999, PA0001213206

1   • "Nocturne," authored and owned by Maria Schneider, 1999, PA0001213211

2   • "Allegresse," authored and owned by Maria Schneider, 1997, PA0001213207

3   • "Dissolution," authored and owned by Maria Schneider, 1998, PA0001213208

4   • "Journey home," authored and owned by Maria Schneider, 1999, PA0001213209

5   • "Sea of Tranquility," authored and owned by Maria Schneider, 1999, PA0001213210

6   • "Concert in the garden," authored and owned by Maria Schneider, 2004, SR000356519

7   • "Three romances," authored and owned by Maria Schneider, 2001, PAu002834604

8   • "Buleria , solea y rumba," authored and owned by Maria Schneider, 2004, PA0001234652

9   • "Divided by two," authored and owned by Maria Schneider, 1994, PAu001856405

10  • "Now and then," authored and owned by Maria Schneider, 1984, PAu001628583

11  • "In a pinch," authored and owned by Maria Schneider, 1990, PAu001628582

12  • "This 'n that," authored and owned by Maria Schneider, 1991, PAu001561822

13  • "Coot stew," authored and owned by Maria Schneider, 1990, PAu001561821

14  • "Swing street," authored and owned by Maria Schneider, 1990, PAu001561820

15  • "Baytrail shuffle," authored and owned by Maria Schneider, 1985, PAu001561819

16  • "City sunrise," authored and owned by Maria Schneider, 1991, PAu001561818

17  • "Samba solstice," authored and owned by Maria Schneider, 1985, PAu001058776

18  • "One for Tad," authored and owned by Maria Schneider, 1984, PAu001058775

19  • "Espino," authored and owned by Maria Schneider, 1985, PAu001058774

20  • "The grail," authored and owned by Maria Schneider, 1993, PAu001858957

21  • "Free fall," authored and owned by Maria Schneider, 1993, PAu001858918

22  • "Smooth talk," authored and owned by Maria Schneider, 1984, PA0000470172

23  • "Prairie dance," authored and owned by Maria Schneider, 1989, PA0000470171

24  • "Anthem," authored and owned by Maria Schneider, 1999, PAu002791175

25  • "Finding flight," authored and owned by Maria Schneider, 1997, PAu002791174

26

5

27  SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
    5:20-cv-4423

28

- "Evelyn," authored and owned by Maria Schneider, 2002, PAu002791173
- "Tranquilidade," authored and owned by Maria Schneider, 1997, PAu002791171
- "Recapitulation," authored and owned by Maria Schneider, 1996, PAu002169603
- "Returning," authored and owned by Maria Schneider, 1997, PAu002169602
- "Tork's café," authored and owned by Maria Schneider, 1996, PAu002169601
- "Alchemy," authored and owned by Maria Schneider, 1993, PAu001859397
- "The blasphemy," authored and owned by Maria Schneider, 1993, PAu001858967
- "SUE (OR IN A SEASON OF CRIME)," authored by David Bowie and Maria Schneider, owned by MSF Music, Jones/Tintoretto Entertainment Co. LLC, and Sherlock Holmes Music LTD., 2014, PA0002050446
- VIKINGS ANTHEM, Maria Schneider, Maria Schneider, 2018, SRu001327179
- "Sky Blue," authored and owned by Maria Schneider, 2004, PA0002270516
- "The Pretty Road," authored and owned by Maria Schneider, 2006, PA0002270589
- "Cerulean Skies," authored and owned by Maria Schneider, 2006, PA0002270520
- "Aires de Lando," authored and owned by Maria Schneider, 2006, PA0002270528
- "Rich's Piece," authored and owned by Maria Schneider, 2005, PA0002270518
- "Winter Morning Walks (9 songs for soprano, string orchestra, and jazz trio)," authored and owned by Maria Schneider, 2013, PA0002270978
- "Carlos Drummond de Andrade Stories (5 songs for soprano and chamber orchestra)," authored and owned by Maria Schneider, 2008, PA0002270977
- "Walking by Flashlight (instrumental big band arrangement)," authored and owned by Maria Schneider, 2013, PA0002273988
- "The Monarch and the Milkweed," authored and owned by Maria Schneider, 2014, PA0002270570
- "Arbiters of Evolution," authored and owned by Maria Schneider, 2012, PA0002270513

---

- "The Thompson Fields," authored and owned by Maria Schneider, 2009, PA0002270505
- "Home," authored and owned by Maria Schneider, 2012, PA0002270508
- "Nimbus," authored and owned by Maria Schneider, 2009, PA0002270507
- "A Potter's Song," authored and owned by Maria Schneider, 2013, PA0002270550
- "Lembrança," authored and owned by Maria Schneider, 2010, PA0002270579
- "A World Lost," authored and owned by Maria Schneider, 2019, PA0002270502
- "Don't Be Evil," authored and owned by Maria Schneider, 2017, PA0002270496
- "CQ CQ, Is Anybody There?," authored and owned by Maria Schneider, 2019, PA0002270585
- "Sputnik," authored and owned by Maria Schneider, 2018, PA0002270478
- "Data Lords," authored and owned by Maria Schneider, 2016, PA0002270498
- "Sanzenin," authored and owned by Maria Schneider, 2017, PA0002270484
- "Stone Song," authored and owned by Maria Schneider, 2019, PA0002270298
- "Look Up," authored and owned by Maria Schneider, 2019, PA0002270493
- "Braided Together," authored and owned by Maria Schneider, 2015, PA0002273985
- "Bluebird," authored and owned by Maria Schneider, 2016, PA0002270501
- "The Sun Waited for Me," authored and owned by Maria Schneider, 2016, PA0002273989
- "String Quartet No. 1," authored and owned by Maria Schneider, 2010, PAu004057365
- "Willow Lake," authored and owned by Maria Schneider, 2008, PA0002270525

**INTERROGATORY NO. 2: For each Work in Suit, identify every URL (uniform resource locator) within the YouTube service at which You contend content infringing the copyright for the Work in Suit has appeared.**

**OBJECTIONS AND RESPONSE:**  Schneider maintains her objections to Interrogatory No. 2 to the extent that it imposes obligations in addition to those imposed by the Federal Rules of Civil Procedure, the Local Rules of this Court, and any court granting discovery in this case, or any discovery protocol agreed upon by the parties.

1      Schneider further objects to Interrogatory No. 2 to the extent that it requires her to identify all acts

2 of infringement prior to the completion of discovery. The records that would enable Schneider to

3 identify all specific acts of infringement are exclusively in the possession and control of YouTube and

4 Google, including a database of videos and tools to identify acts of infringement, including, but not

5 necessarily limited to, Content ID, or are more convenient, less burdensome, or less expensive for

6 Defendants to obtain than Schneider. Schneider further objects to this Interrogatory because it is unduly

7 burdensome for Schneider to identify all acts of infringement prior to other discovery.

8      Notwithstanding these objections, as of the date of this supplemental response Schneider has

9 identified the following URLs for which Schneider presently contends that content infringing

10 Schneider's Works in Suit has appeared:

| Work(s) in Suit | URL |
|---|---|
| Concert in the Garden | http://www.youtube.com/watch?v=e04yCOqalv8 |
| Evanescence | http://www.youtube.com/watch?v=mRlj6wqzW74 |
| Choro Dançado (First Movement of Three Romances) | http://www.youtube.com/watch?v=M-DlDYGAExs |
| Last Season | http://www.youtube.com/watch?v=FQq7XkFC0Do |
| Journey Home | http://www.youtube.com/watch?v=ASN9OqlqIXU |
| Bulería, Soleá y Rumba | http://www.youtube.com/watch?v=YIwyHj2Cn_Q |
| Bulería, Soleá y Rumba | http://www.youtube.com/watch?v=NML2WgRpVRc |
| Choro Dançado (First Movement of Three Romances) | http://www.youtube.com/watch?v=I9jiYSUhcPQ |
| Pas de Deux (Second Movement of Three Romances) | http://www.youtube.com/watch?v=I9jiYSUhcPQ |
| Pas de Deux (Second Movement of Three Romances) | http://www.youtube.com/watch?v=i8UlsGKsZM4 |

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

| # | | |
|---|---|---|
| 1 | Dance, you monster, to my soft song | https://www.youtube.com/watch?v=nbp43Xm7H1U |
| 2 | El Viento | http://www.youtube.com/watch?v=5oYGhrUETFc |
| 3 | El Viento | http://www.youtube.com/watch?v=fc8kek2xGUc |
| 4 | Green Piece | http://www.youtube.com/watch?v=i8BC-LH-IMg |
| 5 | Green Piece | https://www.youtube.com/watch?v=pJToOM-kkH0 |
| 6 | Gumba Blue | https://www.youtube.com/watch?v=h53bJkTiEAk |
| 7 | Hang Gliding | http://www.youtube.com/watch?v=7jfjtKRDFQI |
| 8 | Hang Gliding | https://www.youtube.com/watch?v=TIUAdc1ksYM |
| 9 | Lately | http://www.youtube.com/watch?v=htmgVKwSpMg |
| 10 | Sea of Tranquility | http://www.youtube.com/watch?v=L0cMR-x8ufo |
| 11 | Gumba Blue | https://www.youtube.com/watch?v=Z9N68OSIqps |
| 12 | Journey Home | https://www.youtube.com/watch?v=RX6OLGPCsFc |
| 13 | Journey Home | https://www.youtube.com/watch?v=CiHIu-6hyXc |
| 14 | Hang Gliding | http://www.youtube.com/watch?v=2_YT4SvCPeo |
| 15 | Hang Gliding | https://www.youtube.com/watch?v=wdIW_AoTi_4 |
| 16 17 | Choro Dançado (First Movement of Three Romances) | http://www.youtube.com/watch?v=2tJegYsmlqU |
| 18 | Concert in the Garden | http://www.youtube.com/watch?v=AlJ6K1x9WIw |
| 19 | Nocturne | http://www.youtube.com/watch?v=TPKsQoQdtB |
| 20 21 | Dança Illusoria (Third Movement of Three Romances) | http://www.youtube.com/watch?v=bjuli8HHcYo |
| 22 23 | Coming About (Third Movement of Scenes from Childhood) | http://www.youtube.com/watch?v=RiGKxmxq3Qk |
| 24 | Gush | https://www.youtube.com/watch?v=nSk8IMTU5TE |
| 25 | Gumba Blue | http://www.youtube.com/watch?v=Ft3wa0bMAmE |

9

| | |
|---|---|
| Wyrgly | http://www.youtube.com/watch?v=oZgAVwfcUY0 |
| Wyrgly | https://www.youtube.com/watch?v=zjKng4A35y8 |
| Journey Home, Choro Dançado (First Movement of Three Romances), Evanescence, and Hang Gliding | http://www.youtube.com/watch?v=MZM5ekpurvA |
| Sky Blue | http://www.youtube.com/watch?v=NJy_RXOgsts |
| The Pretty Road | http://www.youtube.com/watch?v=AH3obBV5sEw |
| The Pretty Road | http://www.youtube.com/watch?v=T-p1kPrYN_8 |
| The Pretty Road | http://www.youtube.com/watch?v=EAJPUC0mgJ8 |
| Cerulean Skies | http://www.youtube.com/watch?v=n6U7zQLKe04 |
| Cerulean Skies | http://www.youtube.com/watch?v=JERfM3g0FnM |
| Cerulean Skies | http://www.youtube.com/watch?v=wmAzXaz_UaY |
| Aires de Lando | http://www.youtube.com/watch?v=CVelapFHlP0 |
| Arbiters of Evolution | https://www.youtube.com/watch?v=C3FD5pG3RMc |
| The Thompson Fields | https://www.youtube.com/watch?v=Z8cdqri2-r8 |
| The Thompson Fields | http://www.youtube.com/watch?v=EaY_KMBoJ3g |
| Walking by Flashlight | http://www.youtube.com/watch?v=o4rYUveHBZM |
| The Thompson Fields | http://www.youtube.com/watch?v=jPEFzfWrXHg |
| Walking by Flashlight | http://www.youtube.com/watch?v=P470eEhealc |
| Arbiters of Evolution | http://www.youtube.com/watch?v=C3FD5pG3RMc |
| Walking by Flashlight | http://www.youtube.com/watch?v=lICbkKWrf-I |

1  **INTERROGATORY NO. 3: For each Work In Suit, describe in detail the basis for Your claim**

2  **of copyright ownership, including an identification of all evidence upon which You base Your**

3  **claim of ownership.**

4  **OBJECTIONS AND RESPONSE:**  Schneider is the registered copyright owner for every Work in

5  Suit identified in Interrogatory No. 1 with the exception of SUE (OR IN A SEASON OF CRIME).

6  For all Works in Suit, Schneider will prove ownership through the certificates of registration issued by

7  the U.S. Copyright Office. For SUE (OR IN A SEASON OF CRIME), Schneider will additionally

8  prove ownership through an assignment of legal rights to her from the registered owner.

9  **INTERROGATORY NO. 4: For each Work In Suit, identify by date, person, and agreement**

10  **every occasion on which any other person has been licensed or authorized to copy, display,**

11  **distribute, or publicly perform the work (or otherwise exercise any of the rights under Section**

12  **106 of the Copyright Act with respect to the work).**

13  **OBJECTIONS AND RESPONSE:**  Schneider objects that this interrogatory is overbroad and seeks

14  information irrelevant to the claims and defenses in this lawsuit.

15        Subject to and without waiving these objections, Schneider is not aware of having licensed or

16  authorized any person to copy, display, distribute, or publicly perform the Works in Suit on YouTube,

17  except for:

18  1) authorizing the display of a performance by the Royal Academy of Music of "Dance, you monster,

19  to my soft song" and "Choro Dançado" to be publicly available for one month only and then unlisted

20  for an additional six months; and

21  2) authorizing on April 26, 2019, the display of a performance by Elmhurst College of an arrangement

22  of "Allegresse" to be publicly available.

23  **INTERROGATORY NO. 5: For each Work In Suit, identify every person or entity who has**

24  **ever been authorized to grant licenses to any of the rights set forth in Section 106 of the**

25

26

27

28

| 11 | |
|---|---|
| SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES 5:20-cv-4423 | |

Copyright Act (*e.g.*, any music publisher, agent, performing rights organization, collection society, clearinghouse, or publishing administrator).

**OBJECTIONS AND RESPONSE**:  Schneider objects that Interrogatory No. 5 is overbroad and seeks information irrelevant to the claims and defenses in this lawsuit.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions, for the Works in Suit Schneider has authorized ASCAP to grant certain public performance rights. Schneider has retained ArtistShare Music Publishing as a publishing administrator that is contractually bound to seek and obtain her express written authorization separately for each and every such license granted.

**INTERROGATORY NO. 6**: Describe in detail the circumstances under which You first became aware of each alleged infringement identified in Your response to Interrogatory No. 2, including but not limited to the date and the manner in which the alleged infringement came to Your attention.

**OBJECTIONS AND RESPONSE**:  Schneider, acting alone or through her agents, identified the infringements in Interrogatory No. 2 by conducting searches for unauthorized copies of her work on YouTube. Schneider became aware of the alleged infringements identified in Interrogatory No. 2 on or shortly before the following dates:

| Work(s) in Suit | URL | Date |
|---|---|---|
| Concert in the Garden | http://www.youtube.com/watch?v=e04yCOqalv8 | 3/4/2013 |
| Cerulean Skies | http://www.youtube.com/watch?v=JERfM3g0FnM | 3/4/2013 |
| Cerulean Skies | http://www.youtube.com/watch?v=n6U7zQLKe04 | 3/4/2013 |
| Cerulean Skies | http://www.youtube.com/watch?v=wmAzXaz_UaY | 1/24/2019 |
| Sky Blue | http://www.youtube.com/watch?v=NJy_RXOgsts | 3/4/2013 |
| Evanescence | http://www.youtube.com/watch?v=mRlj6wqzW74 | 3/4/2013 |

| Choro Dançado (First Movement of Three Romances) | http://www.youtube.com/watch?v=M-DlDYGAExs | 3/4/2013 |
|---|---|---|
| The Pretty Road | http://www.youtube.com/watch?v=AH3obBV5sEw | 3/4/2013 |
| Cerulean Skies | http://www.youtube.com/watch?v=n6U7zQLKe04 | 3/4/2013 |
| Last Season | http://www.youtube.com/watch?v=FQq7XkFC0Do | 3/4/2013 |
| Aires de Lando | http://www.youtube.com/watch?v=CVelapFHlP0 | 3/4/2013 |
| Journey Home | http://www.youtube.com/watch?v=ASN9OqlqIXU | 3/10/2014 |
| Bulería, Soleá y Rumba | http://www.youtube.com/watch?v=YIwyHj2Cn_Q | 3/10/2014 |
| Bulería, Soleá y Rumba | http://www.youtube.com/watch?v=NML2WgRpVRc | 3/10/2014 |
| Choro Dançado (First Movement of Three Romances) | http://www.youtube.com/watch?v=I9jiYSUhcPQ | 3/10/2014 |
| Pas de Deux (Second Movement of Three Romances) | http://www.youtube.com/watch?v=I9jiYSUhcPQ | 3/10/2014 |
| Pas de Deux (Second Movement of Three Romances) | http://www.youtube.com/watch?v=i8UlsGKsZM4 | 3/10/2014 |
| The Pretty Road | http://www.youtube.com/watch?v=T-p1kPrYN_8 | 3/10/2014 |
| The Pretty Road | http://www.youtube.com/watch?v=AH3obBV5sEw | 3/4/2013 |
| The Pretty Road | http://www.youtube.com/watch?v=EAJPUC0mgJ8 | 3/10/2014 |
| El Viento | http://www.youtube.com/watch?v=5oYGhrUETFc | 3/10/2014 |

13

| | | | |
|---|---|---|---|
| 1 | El Viento | http://www.youtube.com/watch?v=fc8kek2xGUc | 3/10/2014 |
| 2 | Green Piece | http://www.youtube.com/watch?v=i8BC-LH-IMg | 3/10/2014 |
| 3 | Hang Gliding | http://www.youtube.com/watch?v=7jfjtKRDFQI | 3/4/2013 |
| 4 | Lately | http://www.youtube.com/watch?v=htmgVKwSpMg | 3/11/2013 |
| 5 | Sea of Tranquility | http://www.youtube.com/watch?v=L0cMR-x8ufo | 5/7/2013 |
| 6 | Gumba Blue | https://www.youtube.com/watch?v=Z9N68OSIqps | 3/4/2016 |
| 7 | Journey Home | https://www.youtube.com/watch?v=RX6OLGPCsFc | 03/12/2014 |
| 8 | Hang Gliding | http://www.youtube.com/watch?v=2_YT4SvCPeo | 03/29/2016 |
| 9 | Hang Gliding | https://www.youtube.com/watch?v=wdIW_AoTi_4 | 3/4/2016 |
| 10 11 12 | Choro Dançado (First Movement of Three Romances) | http://www.youtube.com/watch?v=2tJegYsmlqU | 3/12/2014 |
| 13 14 | Concert in the Garden | http://www.youtube.com/watch?v=AlJ6K1x9WIw | 7/28/2015 |
| 15 | Nocturne | http://www.youtube.com/watch?v=TPKsQoQdtB | 8/14/2014 |
| 16 17 18 | Dança Illusoria (Third Movement of Three Romances) | http://www.youtube.com/watch?v=bjuli8HHcYo | 5/6/2015 |
| 19 20 21 | Coming About (Third Movement of Scenes from Childhood) | http://www.youtube.com/watch?v=RiGKxmxq3Qk | 5/6/2015 |
| 22 | Gumba Blue | http://www.youtube.com/watch?v=Ft3wa0bMAmE | 03/10/2014 |
| 23 | Wyrgly | http://www.youtube.com/watch?v=oZgAVwfcUY0 | 3/31/2017 |
| 24 | Gush | https://www.youtube.com/watch?v=nSk8IMTU5TE | 1/26/2016 |

25

26

27

28

| 14 | |
|---|---|

| Journey Home, Choro Dançado (First Movement of Three Romances), Evanescence, and Hang Gliding | http://www.youtube.com/watch?v=MZM5ekpurvA | 3/10/2014 |
|---|---|---|
| Arbiters of Evolution | https://www.youtube.com/watch?v=C3FD5pG3RMc | 1/15/2016 |
| The Thompson Fields | https://www.youtube.com/watch?v=Z8cdqri2-r8 | 1/11/2016 |
| The Thompson Fields | http://www.youtube.com/watch?v=EaY_KMBoJ3g | 9/9/2015 |
| Walking by Flashlight | http://www.youtube.com/watch?v=o4rYUveHBZM | 8/9/2013 |
| The Thompson Fields | http://www.youtube.com/watch?v=jPEFzfWrXHg | 3/24/2017 |
| Walking by Flashlight | http://www.youtube.com/watch?v=P470eEhealc | 11/12/2015 |
| Arbiters of Evolution | http://www.youtube.com/watch?v=C3FD5pG3RMc | 1/14/2016 |
| Walking by Flashlight | http://www.youtube.com/watch?v=lICbkKWrf-I | 1/3/2018 |

Schneider objects that with respect to the below URLs, Interrogatory No. 6 calls for attorney-client communication and/or information protected by the work product doctrine with respect to the "manner" in which the infringements came to Schneider's attention. Schneider became aware of alleged infringements at the following URLs on or shortly before the following dates:

| Work(s) in Suit | URL | Date |
|---|---|---|
| Dance, you monster, to my soft song | https://www.youtube.com/watch?v=nbp43Xm7H1U | 02/22/2021 |
| Green Piece | https://www.youtube.com/watch?v=pJToOM-kkH0 | 02/22/2021 |
| Gumba Blue | https://www.youtube.com/watch?v=h53bJkTiEAk | 03/6/2018 |
| Hang Gliding | https://www.youtube.com/watch?v=TIUAdc1ksYM | 02/28/2020 |
| Journey Home | https://www.youtube.com/watch?v=CiHIu-6hyXc | 02/22/2021 |

| Wyrgly | https://www.youtube.com/watch?v=zjKng4A35y8 | 02/22/2021 |

**INTERROGATORY NO. 7**: Describe in detail each occasion on which each Work In Suit has been uploaded by You or with Your authorization to a website for online listening, purchase, distribution, or viewing, including but not limited to the name of the website, the location (URL) of the uploaded content, the identity of uploader, and the date of the upload.

**OBJECTIONS AND RESPONSE**:  Schneider objects that Interrogatory No. 7 is overbroad and seeks information irrelevant to the claims and defenses in this lawsuit. Schneider further objects that the term "online listening" is vague and can encompass any number of activities.

**INTERROGATORY NO. 8**: Describe in detail each occasion on which each Work In Suit was uploaded in whole or in part to the YouTube service by You or with Your authorization, including identification of the URL of the uploaded video, the identity of the uploader, the date of each such authorized upload, and (if applicable) the date the uploaded video was removed from YouTube.

**OBJECTIONS AND RESPONSE**:  Schneider is not aware of any occasion on which she uploaded or authorized the upload of any of her Works in Suit to YouTube, except for:

 1) authorizing on October 11, 2020, the display of a performance by the Royal Academy of Music of "Dance, you monster, to my soft song" and "Choro Dançado" to be publicly available for one month only and then unlisted for an additional six months; and

2) authorizing on April 26, 2019, the display of a performance by Elmhurst College of an arrangement of "Allegresse" to be publicly available.

**INTERROGATORY NO. 9**: Describe in detail each alleged violation of Section 1202 of the Copyright Act that you contend Defendants committed regarding your Works in Suit, including for each alleged violation, the specific Work In Suit on which CMI appeared, the specific CMI that Defendants allegedly removed, and the URL of the YouTube video displaying the content without the alleged CMI.

| | 16 | |

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

**OBJECTIONS AND RESPONSE:** Schneider objects to Interrogatory No. 9 because it asks Schneider to identify specific violations of Section 1202 prior to the completion of discovery. The information necessary to identify violations of Section 1202 is entirely in Defendants' possession and control, including all information related to metadata attached to or removed from videos of Schneider's Works in Suit. Schneider further objects that it would be unduly burdensome to identify all instances of her Works in Suit uploaded to YouTube that have had CMI removed prior to the close of discovery.

Subject to and without waiving these objections, the General Objections, or the Objections to Definitions, Schneider has identified the following International Standard Musical Word Codes (ISWCs) and International Standard Recording Codes (ISRCs) associated with her Works in Suit.

| Work in Suit | ISWC | ISRC |
|---|---|---|
| Wyrgly (1989) | T-070.207.140-6 | USDBV0521941 |
| Evanescence (1991) | T-070.052.537-6 | USDBV0521942 |
| Gumba blue (1984) | T-070.069.210-9 | |
| Some Circles (1992) | T-070.170.723-4 HKI191528311 | HKI191528311 USDBV0521944 |
| Green Piece (1987) | T-070.068.783-7 | USDBV0521945 |
| Gush (1992) | T-070.069.211-0 | USDBV0521946 |
| My lament (1990) | T-070.117.505-4 | USDBV0521947 |
| Dance, you monster, to my soft song (1991) | T-070.045.290-9 | USDBV0521948 |
| Last Season (1985) | T-070.103.816-5 | USDBV0521949 |
| El Viento (1994) | T-070.196.568-5 | USDBV0800048 |

| | | |
|---|---|---|
| Scenes from Childhood (1995) | T-070.927.064-3 | HKI191528301 |
| | T0702584222 | HKI191528302 |
| | | HKI191528303 |
| | | USDBV0800050 |
| | | USDBV0800051 |
| | | USDBV0800052 |
| Waxwing(1993) | T-070.207.799-3 | USDBV0800054 |
| Lately (1988) | T-070.104.133-9 | |
| The Willow (1990) | T-070.207.112-2 | USDBV0505542 |
| Bird Count (1985) | T-070.018.841-5 | USDBV0505549 |
| Hang Gliding (1999) | T-071.063.355-8 | USQX91001088 |
| | | USDBV0422941 |
| Nocturne (1999) | T-071.186.305-6 | USDBV0422942 |
| Allegresse (1997) | T-071.056.878-7 | HKI191528304 |
| | | USDBV0422943 |
| Dissolution (1998) | Preferred: T-901.548.758-8 | HKI191528305 |
| | Archived: T-902.929.142-7 | USDBV0422944 |
| Journey Home (1999) | T-071.065.184-5 | USDBV0422945 |
| Sea of Tranquility (1999) | T-071.189.158-5 | USDBV0422946 |
| Concert in the Garden (2004) | T-072.610.974-5 | USDBV0400641 |
| Three Romances (2001) | T-072.702.661-0 | |
| Choro Dançado (2001) | T0715106776 | USDBV0400642 |
| | T9028532607 | |
| Pas de Deux (2001) | T-071.511.855-0 | USDBV0400643 |
| Dança Illusoria (2001) | T-902.869.611-9 | USDBV0400644 |

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

| # | Title | Registration | USDBV |
|---|---|---|---|
| 1 | Buleria, solea y rumba (2004) | T-072.599.782-9 | USDBV0400645 |
| 2 | Divided by two (1994) | T-072.764.674-3 | |
| 3 | Now and Then (1984) | T-070.155.915-0 | |
| 4 | In a pinch (1990) | T-070.086.707-7 | |
| 5 | This 'n That (1991) | T-070.188.537-1 | |
| 6 | Coot Stew (1990) | T-070.032.976-5 | |
| 7 | Swing Street (1990) | T-070.276.787-0 | |
| 8 | Baytrail Shuffle (1985) | T-070.018.273-5 | |
| 9 | City Sunrise (1991) | T-910.693.606-5 | |
| 10 | The Grail (1993) | T-901.549.075-2 | |
| 11 | Free fall (1993) | T-901.538.395-6 | |
| 12 | Smooth Talk (1984) | T-070.169.458-7 | |
| 13 | Prairie Dance (1989) | T-070.121.432-5 | |
| 14 | Anthem (1999) | T-901.540.126-0 | |
| 15 | Finding Flight (1997) | T-072.629.435-4 | |
| 16 | Tranquilidade (1997) | T-902.908.068-0 | |
| 17 | Recapitulation (1996) | T-902.875.974-2 | |
| 18 | Returning (1997) | T-901.547.918-2 | |
| 19 | Tork's Café (1996) | T-071.190.652-3 | |
| 20 | Alchemy (1993) | T-902.919.431-8 | |
| 21 | The blasphemy (1993) | T-901.535.745-6 | |
| 22 | The Pretty Road | T-072.711.532-3 | USDBV0700150 |
| 23 | Aires de Lando | T-072.598.674-2 | USDBV0700151 |
| 24 | Cerulean Skies | T-072.951.607-7 | USDBV0700153 |
| 25 | Sky Blue | T-072.689.872-1 | USDBV0700154 |

19

| | | |
|---|---|---|
| Rich's Piece | T-072.953.146-7 | USDBV0700152 |
| Winter Morning Walks (9 songs for soprano, string orchestra, and jazz trio) | T-906.348.264-4 | USDBV1301969-77 |
| Carlos Drummond de Andrade Stories (5 songs for soprano and chamber orchestra) | T-904.878.878-9 | USDBV1301978-82 |
| Walking by Flashlight (instrumental big band arrangement) | T-906.344.637-7 | USDBV1500021 |
| The Monarch and the Milkweed | T-916.048.968-9 | USDBV1500022 |
| Arbiters of Evolution | T-913.599.238-0 | USDBV1500023 |
| The Thompson Fields | T-903.263.802-1 | USDBV1500024 |
| Home | T-912.709.231-3 | USDBV1500025 |
| Nimbus | T-903.264.116-0 | USDBV1500026 |
| A Potter's Song | T-913.595.325-2 | USDBV1500027 |
| Lembranca | T-905.024.027-2 | USDBV1500028 |
| A World Lost | T-928.079.796-8 | CD WAV 44.1: USDBV2011100 Download MP3: USDBV2011133 |
| Don't Be Evil | T-922.989.011-3 | CD WAV 44.1: USDBV2011101 |

| | | Download MP3: USDBV2011134 |
|---|---|---|
| CQ CQ, Is Anybody There? | T-929.780.286-9 | CD WAV 44.1: USDBV2011102 Download MP3: USDBV2011134 |
| Sputnik | T-927.345.266-7 | CD WAV 44.1: USDBV2011103 Download MP3: USDBV2011136 |
| Data Lords | T-919.419.996-7 | CD WAV 44.1: USDBV2011104 Download MP3: USDBV2011137 |
| Sanzenin | T-922.989.008-8 | CD WAV 44.1: USDBV2011105 Download MP3: USDBV2011138 |
| Stone Song | T-927.345.237-2 | CD WAV 44.1: USDBV2011106 Download MP3: USDBV2011139 |
| Look Up | T-929.780.293-8 | CD WAV 44.1: USDBV2011107 |

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

| | | Download MP3: |
| | | USDBV2011140 |
| Braided Together | T-929.780.329-3 | CD WAV 44.1: |
| | | USDBV2011108 |
| | | Download MP3: |
| | | USDBV2011141 |
| Bluebird | T-919.419.997-8 | CD WAV 44.1: |
| | | USDBV2011109 |
| | | Download MP3: |
| | | USDBV2011142 |
| The Sun Waited for Me | T-929.780.319-1 | CD WAV 44.1: |
| | | USDBV2011110 |
| | | Download MP3: |
| | | USDBV2011143 |
| String Quartet No. 1 | T-903.523.822-3 | |
| Willow Lake | T-902.855.444-1 | |
| SUE (OR IN A SEASON OF CRIME)- David Bowie and Schneider (2014) | Preferred: T-915.650.197-2<br>Archived: T-916.225.025-1 | |

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

**VERIFICATION**

Maria Schneider has read the foregoing responses to Defendants' Interrogatories and states that the answers contained therein are true to the best of her knowledge, information, and belief.

Signed: /s/ Maria Schneider

Dated: 3/08/2021

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

Dated: March 8, 2021

Respectfully submitted,

/s/ Randall P. Ewing, Jr.

George A. Zelcs *(pro hac vice)*
Randall P. Ewing, Jr. *(pro hac vice)*
Ryan Z. Cortazar *(pro hac vice)*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
Steven M. Berezney, CA Bar #329923
Michael E. Klenov, CA Bar #277028
Carol O'Keefe *(pro hac vice)*
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
Joanna C. Wright *(pro hac vice)*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Maria Schneider and
Pirate Monitor LTD*

---

24

SCHNEIDER'S AMENDED RESPONSES & OBJECTIONS TO DEFENDANTS' FIRST & SECOND SET OF INTERROGATORIES
5:20-cv-4423

# Exhibit 5B

1             UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3               Case No. 20-cv-04423-JD

4

5    - - - - - - - - - - - - - - - -x

6    MARIA SCHNEIDER, et al,            :

7                       Plaintiffs,    :

8               - vs -                  :

9    YOUTUBE LLC, et al,                :

10                      Defendants.    :

11   - - - - - - - - - - - - - - - - -x

12

13               ***CONFIDENTIAL***

14

15       VIDEOTAPED DEPOSITION UPON ORAL

16   EXAMINATION OF PAUL JESSOP, held in New York,

17   NY, commencing at 9:16 a.m., September 28, 2022 ,

18   before Randi Friedman, a Registered Professional

19   Reporter, within and for the State of New York.

20

21

22

23

24   JOB No. 5490181

25   PAGES 1 - 286

                                        Page 1

CONFIDENTIAL

```
 1   APPEARANCES:

 2
                  BOIES SCHILLER FLEXNER, LLP
 3                Attorneys for Plaintiffs
 4                55 Hudson Yards, 20th Floor
 5                New York, New York 10001
                  BY:  ROBERT DWYER, ESQ.
 6                     PHILIP C. KOROLOGOS, ESQ.
 7                     (Via Telephone)
 8
 9                KOREIN TILLERY, LLC
10                Attorneys for Plaintiffs
11                505 North 7th Street, Suite 3600
                  St. Louis, Missouri 63101
12                BY:  CAROL O'KEEFE, ESQ.
13                     GEORGE A. ZELCS, ESQ.
14                     (Via Telephone)
15
16                WILSON SONSINI GOODRICH & ROSATI
17                Attorneys for Defendants
                  1301 Avenue of the Americas
18                New York, New York 10019
19                BY:  ELI B. RICHLIN, ESQ.
20                     KELLY KNOLL, ESQ.
21                     KENI SABATH
22
23   ALSO PRESENT:
24                Deverell Write - Videographer
25                FX Nuttall
```

<div align="right">Page 2</div>

CONFIDENTIAL

```
 1    of your report, you were not able to see any ISRC      13:25:39
 2    being retained for those digital copies; is that       13:25:44
 3    accurate?                                              13:25:48
 4        A    That's correct.                               13:25:48
 5        Q    Now let's talk about the Maria                13:25:52
 6    Schneider works.  You said "downloaded Maria           13:25:54
 7    Schneider audio files."                                13:25:58
 8              How did you obtain copies of these           13:26:00
 9    audio files?                                           13:26:04
10        A    I flexed my credit card and bought            13:26:04
11    them from the Artist Direct website.                   13:26:07
12        Q    Which website?                                13:26:14
13        A    Artist Direct is the name of the              13:26:15
14    website that they are available from.                  13:26:16
15        Q    What form were the audio files once           13:26:19
16    you were able to download them?                        13:26:22
17        A    They were in MP3 format.                      13:26:24
18        Q    And did you use the same Kid3 audio           13:26:26
19    metadata tag editor to review the metadata for         13:26:30
20    those files?                                           13:26:33
21        A    I did.                                        13:26:33
22        Q    And what did you find?                        13:26:34
23        A    I found that in most of the cases,            13:26:36
24    there was comprehensive metadata, which included       13:26:38
25    not only track, title and artist information, but      13:26:42
```

Veritext Legal Solutions
866 299-5127

| | | |
|---|---|---|
| 1 | also ISRC codes, and unusually ISWC codes | 13:26:46 |
| 2 | identifying the music work.  In one case, the | 13:26:50 |
| 3 | ISRC codes were missing.  I crosschecked that | 13:26:56 |
| 4 | against the online database, SoundExchange, and | 13:27:00 |
| 5 | found the ISRC codes that were present were the | 13:27:05 |
| 6 | same ISRC codes that were lodged, registered at | 13:27:08 |
| 7 | the SoundExchange database.  And the ones that | 13:27:10 |
| 8 | were missing were cited in the SoundExchange | 13:27:13 |
| 9 | database, even though they hadn't found their way | 13:27:17 |
| 10 | into the downloaded files. | 13:27:22 |
| 11 | Q    Approximately how many different audio | 13:27:24 |
| 12 | files of Ms. Schneider's did you download for | 13:27:25 |
| 13 | this crosscheck? | 13:27:28 |
| 14 | A    Three albums, so probably about 30. | 13:27:29 |
| 15 | Q    How many of those were missing ISRCs? | 13:27:32 |
| 16 | A    One album. | 13:27:34 |
| 17 | Q    So approximately ten songs? | 13:27:36 |
| 18 | A    Approximately. | 13:27:39 |
| 19 | Q    Or ten works?  Okay. | 13:27:39 |
| 20 | A    Ten recordings. | 13:27:41 |
| 21 | Q    Did you investigate why ISRCs were | 13:27:56 |
| 22 | absent on that album? | 13:28:01 |
| 23 | A    I didn't investigate beyond looking at | 13:28:04 |
| 24 | the SoundExchange database, which showed they had | 13:28:06 |
| 25 | been assigned.  I was intrigued as to how they | 13:28:09 |

Page 117

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | that. | 15:40:39 |
| 2 | Q    Even as to sound recordings, not all | 15:40:42 |
| 3 | sound recordings have ISRCs; correct? | 15:40:45 |
| 4 | A    That is true. | 15:40:48 |
| 5 | Q    For example, if a mother films her | 15:40:50 |
| 6 | daughter performing at the school orchestra, has | 15:40:53 |
| 7 | that as a video and uploads it, there's no | 15:40:59 |
| 8 | obligation to associate ISRC with that video; | 15:41:02 |
| 9 | correct? | 15:41:06 |
| 10 | A    There's no obligation to associate | 15:41:07 |
| 11 | ISRC with any media entity, but within the | 15:41:10 |
| 12 | commercial music media sector, that is to say | 15:41:17 |
| 13 | people trying to earn a living from music, it is | 15:41:22 |
| 14 | becoming extremely hard to get into distribution | 15:41:27 |
| 15 | without having an ISRC assigned to it because | 15:41:35 |
| 16 | many services and management organizations | 15:41:38 |
| 17 | require it as a matter of policy. | 15:41:44 |
| 18 | Q    We'll turn to the professional | 15:41:46 |
| 19 | commercial music media sector in a moment. | 15:41:49 |
| 20 | Going back to my example, would it be | 15:41:52 |
| 21 | your expectation that for the example I provided, | 15:41:54 |
| 22 | where a mother films her daughter's school | 15:41:57 |
| 23 | orchestra performance, that that video would have | 15:42:00 |
| 24 | an ISRC associated with it? | 15:42:02 |
| 25 | A    In today's world, I would not expect | 15:42:05 |

Page 186

CONFIDENTIAL

```
1              C E R T I F I C A T I O N

2

3          I, Randi Friedman, Registered

4   Professional Reporter and Notary Public of the

5   State of New York, do hereby certify:

6       THAT, the witness whose testimony is herein

7   before set forth, was duly sworn by me, and

8   THAT, the within transcript is a true record of

9   the testimony given by said witness.

10      I further certify that I am not related

11  either by blood or marriage to any of the parties

12  to this action; and that I am in no way

13  interested in the outcome of this matter.

14      IN WITNESS WHEREOF, I have hereunto set my

15  hand this day, October 4, 2022.

16

17

18

19

20      Randi Friedman, RPR

21

22

23

24

25
                                        Page  282
```

Witness: Paul Jessop— September 28, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

## Errata Sheet

| Page: Line | Change | Reason |
|---|---|---|
| 4:4 | Remove <Excerpt of> | To clarify the record |
| 6:25 | Replace <in> with <and> | To correct transcription errors |
| 12:13 | Replace <outlying> with <outline> | To clarify the record |
| 17:23 | Insert <,> between <County Analytics> and <I> | To correct transcript error |
| 24:20 | Replace <for> with <from> | To clarify the record |
| 29:16 | Replace <DMX> with <DMS> | To clarify the record |
| 30:19 | Insert <of> between <master > and <philosophy> | To correct transcription errors |
| 35:9 | Replace <into, unlike commerce, a smooth one> with <into electronic commerce, a smooth one> | To clarify the record |
| 36:2 | Replace <former> with <formal> | To clarify the record |
| 40:23 | Replace <Rockster> with <Grokster> | To correct transcription errors |
| 44:8 | Insert <a> between <did> and <little> | To correct transcription errors |
| 46:1 | Insert <meaning> between <,> and <without> | To clarify the record |
| 46:10 | Remove <I hate it when that happens> | To correct transcription errors |
| 46:20 | Replace <recording> with <recorded> | To correct transcription errors |
| 51:5 | Replace <omissions> with <permissions> | To clarify the record |
| 52:3 | Replace <Nick> with <Nic> | To correct transcription errors |
| 53:4 | Replace <ISNI, ISNI> with <ISNI, ISNI-IA> | To clarify the record |
| 53:8 | Replace <Allison Randall> with <Alison Randle> | To correct transcription errors |
| 53:11 | Replace <Randall> with <Randle> | To correct transcription errors |
| 53:17 | Replace <Randall> with <Randle> | To correct transcription errors |
| 54:9 | Replace <Randall> with <Randle> | To correct transcription errors |
| 57:13 | Replace <IRC> with <ISRC> | To clarify the record |

Witness: Paul Jessop— September 28, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| 62:17 | Replace \<In practice, both the lecture series\> with \<In  practice: both. The lecture series\> | To clarify the record |
|---|---|---|
| 65:20 | Replace \<of Berkeley in California\> with \<of California at Berkeley\> | To clarify the record |
| 68:2 | Replace \<my\> with \<any\> | To clarify the record |
| 69:7 | Replace \<Rockster\> with \<Grokster\> | To correct transcription errors |
| 72:10 | Replace \<U.S.\> with \<U.K.\> | To clarify the record |
| 78:4 | Replace \<Zetz-- Zeltz –\> with \<Zelcs\> | To correct transcription errors |
| 90:14 | Replace \<Wileska\> with \<Waleska\> | To correct transcription errors |
| 93:7 | Replace \<Foku\> with \<Foucu\> | To correct transcription errors |
| 93:10 | Replace \<Foku\> with \<Foucu\> | To correct transcription errors |
| 94:23 | Replace \<Union Globe\> with \<Uniglobe\> | To correct transcription errors |
| 95:3 | Replace \<have\> with \<had\> | To correct transcription errors |
| 102:9 | Replace \<team\> with \<teams\> | To correct transcription errors |
| 110:13 | Replace \<for\> with \<from\> | To correct transcription errors |
| 112:14 | Replace \<was\> with \<wasn't\> | To clarify the record |
| 112:15 | Replace \<substantiated\> with \<instantiated\> | To clarify the record |
| 113:25 | Remove \<.\> | To correct transcription errors |
| 115:4 | Replace \<NXK\> with \<Annex K\> | To clarify the record |
| 116:11 | Replace \<Artist Direct\> with \<ARTISTDirect\> | To correct transcription errors |
| 116:13 | Replace \< Artist Direct\> with \<ARTISTDirect\> | To correct transcription errors |
| 118:1 | Replace \<that\> with \<but\> | To correct transcription errors |
| 119:10 | Replace \<the\> with \<a\> | To clarify the record |
| 129:10 | Replace \<of\> with \<on\> | To clarify the record |
| 131:2 | Replace \<there is\> with \<varies\> | To correct transcription errors |
| 133:19 | Insert \<be\> between \<will\> and \<the\> | To correct transcription errors |
| 141:20 | Replace \<,\> with \<.\> | To correct transcription errors |

Witness: Paul Jessop— September 28, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| 146:11 | Replace <what other> with <whatever> | To correct transcription errors |
|---|---|---|
| 146:16 | Insert <,> between <field> and <or> | To correct transcription errors |
| 146:17 | Insert <,> between <field> and <that> | To correct transcription errors |
| 149:1 | Replace <100> with <700> | To clarify the record |
| 151:8 | Remove indent after <No.> | To correct transcription errors |
| 157:6 | Replace <that that's an assumption or that's true> with <that there's an assumption that that's true> | To correct transcription errors |
| 158: 17 | Replace <information> with <metadata> | To clarify the record |
| 160:6 | Replace <it's> with <it> | To correct transcription errors |
| 160:9 | Replace <needs> with <needed> | To correct transcription errors |
| 160:17 | Insert <,> between <align it> and <to> | To correct transcription errors |
| 160:18 | Insert <,> between <co-exist> and <with> | To correct transcription errors |
| 160:19 | Insert <that> between <process> and <does> | To correct transcription errors |
| 167:14 | Replace <expressively> with <expressly> | To correct transcription errors |
| 168:14 | Replace <using> with <actively inserting> | To clarify the record |
| 170:5 | Replace <bantered> with <bandied> | To correct transcription errors |
| 174:15 | Insert <of> between <status> and <that> | To correct transcription errors |
| 174:15 | Replace <is> with <as> | To correct transcription errors |
| 178:12 | Replace <Yes> with <I have not investigated all such programs> | To clarify the record |
| 179:21 | Replace <Correct> with <At this point in the report, yes, though I refer to YouTube removing CMI elsewhere> | To clarify the record |
| 180:7 | Replace <"compositing"> with <"composites"> | To correct transcription errors |
| 180:17 | Insert <and users> between <creators> and <.> | To clarify the record |
| 198:12 | Replace <detail> with <detailed> | To correct transcription errors |
| 198:20 | Replace <copyright law is what attests, those> with <copyright lawyers will attest, those> | To clarify the record |
| 203:14 | Replace <Dixa> with <Deezer> | To clarify the record |

Witness: Paul Jessop— September 28, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

| 204:17 | Insert <Some may of course be required for other reasons such as compliance with laws or inter-party agreements.> after <.> | To clarify the record |
|---|---|---|
| 207:11 | Replace <or> with <a> | To clarify the record |
| 213:8 | Replace <discussions> with <operations> | To clarify the record |
| 223:22 | Replace <sufficiently> with <efficiently> | To clarify the record |
| 227:8-9 | Insert <bad> between <gets> and <again> | To correct transcription errors |
| 236:4 | Replace <used that way> with <actively inserted> | To clarify the record |
| 236:5 | Insert <themselves> between <recordings> and <.> | To clarify the record |
| 236:15 | Replace <Standards> with <Standardization> | To clarify the record |
| 237:6 | Replace <I got a thing that> with <I've got to think that> | To correct transcription errors |
| 240:3 | Replace <protocol buffer's> with <Protocol Buffers> | To correct transcription errors |
| 240:10 | Replace <call> with <called> | To correct transcription errors |
| 240:17 | Replace <date> with data.> | To correct transcription errors |
| 240:20 | Replace <,> with <.> | To correct transcription errors |
| 242:14 | Replace <heightened number> with <height and number> | To correct transcription errors |
| 242:15 | Replace <coded> with <codec> | To correct transcription errors |
| 242:16 | Replace <accounts> with <counts> | To correct transcription errors |
| 242:16 | Insert < start finding fields that have rights management implications> between < 'title,'> and <so I hope> | To clarify the record |
| 256:14 | Replace <hourly> with <aurally> | To clarify the record |
| 260:22 | Replace <Allegresse> with <Allégreese> | To correct transcription errors |
| 266:23 | Replace <oral> with <aural> | To clarify the record |

4

Witness: Paul Jessop— September 28, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)


_____X_____    Subject to the above changes, I certify that the transcript is true and correct.

_____    No changes have been made. I certify that the transcript is true and correct.


(Signature)                                              28 OCT 2022
                                                          (date)

5

Witness: Paul Jessop— September 28, 2022 Deposition
*Schneider v. YouTube, LLC*, No. 3:20-cv-04423-JD (N.D. Cal.)

## ACKNOWLEDGMENT OF DEPONENT

I, Paul Jessop, do hereby certify that I have read and examined the foregoing testimony,
and that the same is a correct transcription of the answers given by me to the questions therein
propounded, except for the corrections or changes in form or substance, if any, noted in the
attached Errata Sheet.

_____               28 OCT 2022
(Signature)                                                    _____
                                                                              (date)

6

# Exhibit 6A

**Content ID License Agreement**

This Agreement (the "**Agreement**") is by and between Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd. (collectively "**Plaintiffs**" or individually a "**Plaintiff**") and Google LLC ("**Google**") (collectively, "**the parties**").

**1. Definitions.**

"**YouTube**" means the Google service known as YouTube, accessible through http://www.youtube.com.

"**ID File**" means a unique binary data that corresponds to a Work, and that is used for the automatic identification of that Work.

"**Litigation**" means *Schneider et al. v. YouTube, LLC et al.*, Case No. 3:20-cv-04423-JD, filed in the United States District Court for the Northern District of California.

"**System**" means Google's content identification and management system, commonly known as "Content ID."

"**User Video**" means a video uploaded to YouTube by a third-party user.

"**Video Match**" means a User Video automatically determined by the System to match an ID File.

"**Work**" means an audio, audio-visual, or literary work the copyright to which (a) a Plaintiff claims to own; and (b) that Plaintiff has identified as allegedly infringed in the First Amended Class Action Complaint in this Litigation.

"**Reference File**" means a digital file containing the entirety of a Work. Where the Work is a musical composition or a book, the "Reference File" shall refer to a digital file containing the entirety of a sound recording that in turn contains the composition or the book.

**2. Purpose**. Subject to the terms below, Google agrees to operate the System on a one-time basis in an effort to identify Video Matches on YouTube, if any, for the Works. Plaintiffs acknowledge that in its ordinary operation, the System contemplates considerable cooperation between a copyright claimant and Google and that the System was not designed for use in an adversarial litigation context. The Parties will work together in an effort to resolve any unforeseen issues, but Plaintiffs acknowledge

that Google will not operate the System in this litigation context if doing so creates a risk of disrupting the normal operation of the System.

**3. Plaintiffs' Provision of Reference Files**. Plaintiffs will provide Google with: (a) written verification stating that a specific Plaintiff is the legal or beneficial owner of a copyright in a specific Work; (b) a Reference File for each Work in the format and via the delivery method specified by Google; and (c) written information showing which Reference File corresponds to which Work, and for any Work that is a musical composition or a print book, ISRC code(s) or similar information identifying the sound recording that allegedly contains the composition or the book. Plaintiffs shall send the Reference Files for all Works for which Google will operate the System within 2 business days of the execution of this Agreement. By providing Reference Files, each Plaintiff grants Google a nonexclusive, royalty-free, limited license to store, copy (including the right to make temporary cache and storage copies), modify or reformat, excerpt, analyze, use to create algorithms and binary representations, create ID Files and otherwise use those Reference Files and ID Files in connection with the System, for the purpose of Google's operation of the System as set out in Section 2.  Without limiting the foregoing and for clarification purposes, Plaintiffs do not license Google to publish or otherwise provide public access to any Reference Files through its YouTube platform.

**4. System Operation and Video Matches**.  Google will initiate the operation of its System within seven days following Plaintiffs' complete delivery to Google of the information set out in Section 3.  Following Google's operation of the System, Google will provide to Plaintiffs on a Work-by-Work basis (i) a list, by URL, of Video Matches for publicly-available videos, if any, that the System identifies for the Works, and (ii) the number of Video Matches, if any, for private videos that the System identifies.

**5. Representations and Warranties**. Plaintiffs represent and warrant that: (a) they have and will maintain all rights, authorizations and licenses that are required to grant the rights and licenses set forth herein; (b) the Reference Files, resulting ID Files and Google's use thereof do not infringe any third party right; and (c) the Reference Files do not contain or originate any contaminated file, viruses, worms, Trojan horses or other similar harmful components. If Google determines that a Reference File would compromise the effectiveness of the System, Google may elect not to use the relevant Reference File and will promptly notify Plaintiffs of the Reference File and the issue.

**6. Use of Results.** The parties agree that neither Google's operation of the System at Plaintiffs' request nor the fact of any Video Matches for the Works, shall be offered as evidence in the Litigation to show that Google in any way had actual knowledge of alleged infringement of any Work (the "Actual Knowledge Argument").  Google acknowledges Plaintiffs' contention that they should be entitled to use the results of the Content ID process as evidence to support arguments other than the Actual Knowledge Argument. Plaintiffs acknowledge that Google does not agree that Plaintiffs should be entitled to use the results of the Content ID process as evidence to support any such arguments. Nevertheless, so as not to delay Google's operation of the System, the parties agree to table these specific disputes as to the use of the outcome of this process without resolving them and to expressly preserve the parties' respective positions on them.

**7. Allegedly Infringing Matches**. Plaintiffs recognize that Google will not know whether Plaintiffs allege that any Video Matches identified through Google's operation of the System are infringements of a Plaintiff's copyrights. Accordingly, to the extent Plaintiffs believe Google should take action to remove or disable access to any allegedly infringing video matched through operation of the System in connection with this Agreement, Plaintiffs agree to send Google a valid notice pursuant to 17 U.S.C. § 512(c)(3) for any such video. Google will handle such a notice in accordance with its normal processes. Nothing in this agreement changes any document preservation obligations of the parties that otherwise exist with respect to any videos taken down pursuant to such a notice.

**8. Reservations**. Google expressly disclaims any representation or warranty that the System will identify all matches of Works that appear on the YouTube Service or any other representation or warranty regarding the conduct or output of this process or the System. Google reserves its rights concerning its position that, under Federal Rule of Civil Procedure 26, it may seek an order shifting to Plaintiffs the expense incurred in operating the system in connection with this agreement.

**9.  Confidentiality.**  This agreement, and any material received or disclosed by either party in connection with this Agreement, will be treated as Confidential, or if specifically designated, Highly Confidential - Attorneys' Eyes Only, under the Stipulated Protective Order entered in this Litigation.


_____

Randall P. Ewing, Jr.

Attorney for Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing Ltd.



  /s/ David H. Kramer
_____

David H. Kramer

Attorney for Defendant YouTube, LLC and Google LLC

# Exhibit 6B

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1              UNITED STATES DISTRICT COURT
2         FOR THE NORTHERN DISTRICT OF CALIFORNIA
3               SAN FRANCISCO DIVISION
4
5    _____
                                    )
6    MARIA SCHNEIDER, UNIGLOBE      )
     ENTERTAINMENT, LLC, and AST    )
7    PUBLISHING LTD., individually and )
     on behalf of all others similarly )
8    situated,                      )
                                    )
9              Plaintiffs,          )
                                    )
10   vs.                            ) No. 3:20-cv-4423
                                    )
11   YOUTUBE, LLC; and GOOGLE LLC,  )
                                    )
12             Defendants.          )
     _____)
13
14
15        HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY
16        VIDEOTAPED DEPOSITION OF JOSEPH M. WINOGRAD
17              San Francisco, California
18            Thursday, September 29, 2022
19                    Volume I
20
21   Reported by:
     CATHERINE A. RYAN, RMR, CRR, B.S.
22   CSR No. 8239
23   Job No. 5490258
24
25   PAGES 1 - 281

                                        Page 1

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1              UNITED STATES DISTRICT COURT
 2          FOR THE NORTHERN DISTRICT OF CALIFORNIA
 3                 SAN FRANCISCO DIVISION
 4
 5    _____
                                     )
 6    MARIA SCHNEIDER, UNIGLOBE       )
      ENTERTAINMENT, LLC, and AST     )
 7    PUBLISHING LTD., individually and )
      on behalf of all others similarly )
 8    situated,                       )
                                     )
 9            Plaintiffs,             )
                                     )
10    vs.                             ) No. 3:20-cv-4423
                                     )
11    YOUTUBE, LLC; and GOOGLE LLC,   )
                                     )
12            Defendants.             )
      _____)
13
14
15
16
17            Videotaped deposition of JOSEPH M.
18    WINOGRAD, Volume I, taken on behalf of Defendants,
19    with the Witness appearing at WILSON SONSINI
20    GOODRICH & ROSATI, One Market Street Spear Tower,
21    Suite 3300, San Francisco, California, beginning at
22    9:13 a.m. and ending at 4:56 p.m., on Thursday,
23    September 29, 2022, before CATHERINE A. RYAN,
24    Certified Shorthand Reporter No. 8239.
25
```

                                              Page 2

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    APPEARANCES:
 2
 3    For Plaintiffs:
 4        KOREIN TILLERY
          BY:  GEORGE A. ZELCS
 5        Attorney at Law
          205 North Michigan Plaza, Suite 1950
 6        Chicago, Illinois  60601
          (312) 641-9750
 7        (312) 641-9751 Fax
          gzelcs@koreintillery.com
 8
          BY:  ANDREW ELLIS (appearing remotely)
 9        Attorney at Law
          505 North 7th Street, Suite 3600
10        St. Louis, Missouri  63101
          (314) 241-4844
11        aellis@koreintillery.com
12        BOIES SCHILLER FLEXNER LLP
          BY:  ROBERT DWYER (appearing remotely)
13        Attorney at Law
          55 Hudson Yards, 20th Floor
14        New York, New York  10001
          (212) 303-3524
15        (212) 446-2350 Fax
          rdwyer@bsfllp.com
16
17    For Defendants:
18        WILSON, SONSINI, GOODRICH & ROSATI, P.C.
          BY:  DAVID H. KRAMER
19             QIFAN HUANG
          Attorneys at Law
20        650 Page Mill Road
          Palo Alto, California  94304
21        (650) 320-4741 (Mr. Kramer)
          (650) 849-3456 (Mr. Huang
22        dkramer@wsgr.com
          qhuang@wsgr.com
23        lwhite@wsgr.com
24
25    //
```

Page 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1   APPEARANCES (Continued):

 2

 3   For Defendants:

 4        WILSON, SONSINI, GOODRICH & ROSATI, P.C.
          BY:  LAUREN GALLO WHITE
 5        Attorney at Law
          One Market Street
 6        Spear Tower, Suite 3300
          San Francisco, California  94105
 7        (415) 947-2058
          lwhite@wsgr.com
 8
          (Ms. White was not present at the commencement
 9        of the deposition proceedings.)
10

11

12   ALSO PRESENT:

13   PETER YAROSCHUK, Videographer, Veritext

14

15

16

17                    ---o0o---

18

19

20

21

22

23

24

25

                                         Page  4
```

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1      Q    Is it your view that the Content ID        10:45:53

2   technology itself has the ability to automatically

3   identify whether the use of a work in a video on

4   YouTube infringes a copyright?

5      A    That is -- no, that is not the intended    10:46:11

6   meaning of this sentence.

7      Q    The Content ID system can't automatically

8   determine what is and isn't infringing, right?

9      A    Right.

10      Q    The system can automatically identify      10:46:20

11   matches of a given reference file to a given video

12   file, correct?

13      A    Yes.

14      Q    Let's assume, hypothetically, that a

15   reference file for a musical composition that        10:46:36

16   Plaintiff Maria Schneider claims to own is in

17   Content ID, and the Content ID system recognizes

18   that someone has uploaded a video using that same

19   composition.

20           Has the Content ID system identified a     10:46:53

21   copyright infringement?

22      A    It may have.

23      Q    What do you mean, "it may have"?

24      A    So copyright management technologies --

25   copyright management systems I describe in the      10:47:09

                                                      Page 66

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    report can be understood to embody two steps -- two        10:47:11

 2    separate steps:  A step of discovery and a step of

 3    rights management.

 4            The matching system I would characterize

 5    as being a part of the discovery step.  It's where         10:47:30

 6    you find -- where you identify the use of works, and

 7    then -- that's the discovery step.  It may discover

 8    works that are infringements.  It may also discover

 9    works that aren't infringements.  But it's a

10    necessary precursor to copyright management that you       10:47:49

11    first find these identified works.  You identify the

12    works through discovery.

13            And in the case of YouTube, where the

14    corpus is so enormous, right -- billions of pieces

15    of content -- a matching system, in my view, is           10:48:09

16    really the only practical way to do it at scale.

17            And then, in the second step, the rights

18    management process, that's really a step in which

19    you take the potential infringements, the matches,

20    if you will, the places where you've identified uses       10:48:30

21    of a work, and then you make decisions about whether

22    they're infringements or not, whether action should

23    be taken, you know, an assertion or claim should be

24    made or not.

25            And so the statement that you highlighted          10:48:44
```

Page 67

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

```
 1    in paragraph 38 is an important one because          10:48:46

 2    infringements can take on very -- a wide range of

 3    different types.  Basically, infringement can be

 4    done in a variety of different ways.

 5          And if you can't find or discover all the      10:49:03

 6    different ways in which a work might be infringed,

 7    you're certainly not going to be able to evaluate or

 8    decide to -- to control the use of that or -- or to

 9    even have the opportunity to make a decision as to

10    whether an infringement has occurred or not.          10:49:19

11          So --

12       Q    Do you have the question in mind, sir?

13       A    Yeah, yeah.

14       Q    Okay.

15       A    Yeah.                                          10:49:26

16       Q    Content ID's use of Defendants' matching

17    system automatically identifies matches, right?  It

18    doesn't identify, automatically, infringements, does

19    it?

20       A    That's right.  It's part of the discovery    10:49:36

21    step rather than the rights management step.

22       Q    So then why, sir, in paragraph 38 of your

23    report did you write the sentence saying:

24    "Content ID's use of Defendants' Matching System

25    automatically identifies a broad range of             10:49:49
```

Page 68

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

1        I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby

3   certify:

4        That the foregoing proceedings were taken

5   before me at the time and place herein set forth;

6   that any witnesses in the foregoing proceedings,

7   prior to testifying, were administered an oath; that

8   a record of the proceedings was made by me using

9   machine shorthand which was thereafter transcribed

10  under my direction; that the foregoing is a true

11  record of the testimony given.

12       Further, that if the foregoing pertains to the

13  original transcript of a deposition in a Federal

14  Case, before completion of the proceedings, review

15  of the transcript [ X ] was [  ] was not requested.

16        I further certify that I am neither

17  financially interested in the action nor a relative

18  or employee of any attorney or any party to this

19  action.

20       IN WITNESS WHEREOF, I have this date

21  subscribed my name this 5th day of October, 2022.

22

23

24       Catherine A. Ryan, RMR, CRR, B.S.

25       CSR No. 8239

Page 278

**Errata Sheet**

| Page: Line | Change | Reason |
|---|---|---|
| 15:17-18 | Replace <Authority [sic]> with <Administrator> | To correct transcription errors |
| 41:7 | Insert < But Verance does a number of indirect things related to the hundreds of millions of consumers who interact with Cinavia technology.> between <.> and <Q> | To clarify the record |
| 53:22 | Replace <and> with <in the> | To correct transcription errors |
| 80:25 | Replace <subscribers> with <channels> | To clarify the record |
| 85:7 | Replace <knows> with <"knows" –> | To correct transcription errors |
| 118:17 | Insert <, which I now see is on page 6 of that report for the second half of 2021.> between <based> and <.> | To clarify the record |
| 135:25 | Replace <anyone> with <"anyone"> | To correct transcription errors |
| 156:18 | Replace <billed> with <built> | To correct transcription errors |
| 160:15 | Replace <too> with <to> | To correct transcription errors |
| 160:17 | Replace <too> with <to> | To correct transcription errors |
| 164:25 | Replace <threat> with <thread> | To correct transcription errors |
| 173:3 | Insert <,> between <systems> and <are> | To correct transcription errors |
| 173:3 | Insert <not> between <likely> and <to> | To correct transcription errors |
| 197:2 | Replace <four – some> with <for some> | To correct transcription errors |
| 205:4 | Replace < discovery> with <"discovery"> | To clarify the record |
| 205:5 | Replace <rights management> with <"rights management"> | To clarify the record |
| 205:9 | Replace <rights management> with <"rights management"> | To clarify the record |
| 218:14 | Replace <base> with <basis> | To correct transcription errors |
| 221:25 | Replace <machine> with <regime> | To correct transcription errors |
| 244:2 | Replace <DMC> with <DMCA > | To correct transcription errors |

_____X_____     Subject to the above changes, I certify that the transcript is true and correct.

_____     No changes have been made. I certify that the transcript is true and correct.

_____
(Signature)

11/2/2022
_____
(date)

ACKNOWLEDGMENT OF DEPONENT

I, Joseph Winograd, do hereby certify that I have read and examined the foregoing

testimony, and that the same is a correct transcription of the answers given by me to the

questions therein propounded, except for the corrections or changes in form or substance, if any,

noted in the attached Errata Sheet.

_____
(Signature)

11/2/2022
_____
(date)

# Exhibit 6C

```
 1              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
 2                SAN FRANCISCO DIVISION
 3     MARIA SCHNEIDER, UNIGLOBE     )  Case No.
       ENTERTAINMENT, LLC, and AST   )
 4     PUBLISHING LTD., individually )
       And on behalf of all others   )
 5     Similarly situated,           )
                                     )
 6         Plaintiffs,               )
                                     )
 7              vs.                  )
                                     )
 8     YOUTUBE, LLC and GOOGLE LLC,  )
                                     )
 9         Defendants.               )
       _____)
10     YOUTUBE, LLC and GOOGLE LLC,  )
                                     )
11         Counterclaimants,         )
                                     )
12              vs.                  )
                                     )
13     PIRATE MONITOR LTD, PIRATE    )
       MONITOR                       )
14     LLC, and GÁBOR CSUPÓ,         )
                                     )
15         Counterclaim Defendants.  )
       _____)
16
17
18          REMOTE AND VIDEOTAPED DEPOSITION OF
19               MAXIM RYABYKO 30(B)(6)
20
21     Remotely Testifying from Dubai, United Arab Emirates
22
23
24     Reported by:
       Monna J. Nickeson, RPR, CRR, CCR, CSR CA 14430
25     JOB:  5363259
```

                                                    Page 1

```
1                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
2                  SAN FRANCISCO DIVISION
3    MARIA SCHNEIDER, UNIGLOBE     )  Case No.
     ENTERTAINMENT, LLC, and AST   )  3:20-cv-04423-JD
4    PUBLISHING LTD., individually )
     and on behalf of all others   )
5    similarly situated,           )
                                   )
6         Plaintiffs,              )
                                   )
7              vs.                 )
                                   )
8    YOUTUBE, LLC and GOOGLE LLC,  )
                                   )
9         Defendants.              )
     _____)
10   YOUTUBE, LLC and GOOGLE LLC,  )
                                   )
11        Counterclaimants,        )
                                   )
12             vs.                 )
                                   )
13   PIRATE MONITOR LTD, PIRATE    )
     MONITOR LLC,                  )
14   and GÁBOR CSUPÓ,              )
                                   )
15        Counterclaim Defendants. )
     _____)
16
17        Virtual videoconference video-recorded
18   deposition of Maxim Ryabyko, testifying as a
19   30(B)(6) witness on behalf of AST Publishing,
20   taken on behalf of the Defendants and
21   Counterclaimants and pursuant to the
22   stipulations of counsel thereof, on Friday,
23   August 19, 2022 commencing at 5:57 A.M. (PST),
24   and ending at 2:08 P.M. (PST) before Monna J.
25   Nickeson, CSR 14430.
```

                                              Page 2

```
 1          REMOTE VIDEOCONFERENCE APPEARANCES OF COUNSEL:
 2
 3        For Plaintiffs and the Witness:
 4                 KOREIN TILLERY, LLC
                   BY:  RANDALL P. EWING, JR., ESQ.
 5                 BY:  GEORGE ZELCS, ESQ.
                   205 North Michigan, Suite 1950
 6                 Chicago, Illinois 60601
                   312.641.9750
 7                 rewing@koreintillery.com
 8        For Defendants and Counterclaimants:
 9                 WILSON SONSINI GOODRICH & ROSATI
                   Professional Corporation
10                 BY:  ANDREW KRAMER, ESQ.
                   BY:  CATHERINE HARTMAN, ESQ.
11                 BY:  RHETT HUNT, ESQ.
                   1301 Avenue of the Americas
12                 40th Floor
                   New York, New York 10019-6022
13                 212.999.5800
                   akramer@wsgr.com
14                 chartman@wsgr.com
15        Also Present:
16                 JULIO PENA, Videographer
                   TATIANA HAY, Interpreter
17                 KSENIIA LEE, Check interpreter
18
19
20
21
22
23
24
25

                                         Page  3
```

```
 1        a question for interpreter.  You just used the      01:25
 2        terms between both the allegedly infringing         01:25
 3        works and the protected works, so we have           01:25
 4        now -- we have agreed to refer to works in suit     01:25
 5        as the ones that are -- that have been              01:25
 6        discussed as alleged in this suit.  In this         01:25
 7        case, what are you referring to?                    01:25
 8             Q.    I'm referring to the works in suit,      01:25
 9        all the videos on these lists are alleged           01:25
10        infringements of the works in suit.                 01:25
11             A.    Yes, that is what it says.               01:25
12             Q.    Who determined that these Content ID     01:26
13        maps infringed the works in suit?                   01:26
14             A.    It was a collective -- it was a          01:26
15        collective decision by AZAPI's employees and by     01:26
16        the attorneys.  It was made -- a decision was       01:26
17        made in stages.  The first stage, as far as I       01:27
18        understand it, was the technical identification     01:27
19        with the user Content ID -- or of the files         01:27
20        with the user Content ID.  Then the obtained        01:27
21        links were analyzed as to content, volume and       01:27
22        the number of links.                                01:27
23                  Then the list of the partners was         01:28
24        requested from LitRes by partners -- I mean         01:28
25        partner channels to whom the LitRes gave            01:28
```

Page 146

1   authorization to use excerpts from the works.   01:28

2   But there were gaps between these various   01:29

3   stages so I suspect that the final list may   01:29

4   look a little different.   01:29

5       Q.   Apart from comparing the videos   01:29

6   against the list of LitRes partner channels,   01:29

7   was there any other investigation into whether   01:29

8   the videos identified as to alleged   01:29

9   infringements on the July 5th supplemental list   01:29

10  of infringements were authorized to appear on   01:29

11  YouTube?   01:29

12      A.   There is no other way to determine a   01:30

13  violation other than to request a list of   01:30

14  partner channels from LitRes.  All the other   01:30

15  signs of violation were apparent and indicated   01:30

16  that there was no authorization from AST and   01:31

17  LitRes.   01:31

18      Q.   Are LitRes and the partners, the   01:31

19  partner channels that LitRes authorized, the   01:31

20  only entities that AST has ever authorized to   01:31

21  upload works in suit to YouTube?   01:31

22      A.   To the best of my knowledge, the   01:32

23  only entity that has the right to sublicense   01:32

24  works is LitRes.  I'm not aware from LitRes or   01:32

25  from AST of existence or any -- of any other   01:32

Page 147

```
1       authorized entity to place content on YouTube,    01:32
2       if we are talking about exclusive rights to       01:32
3       books.                                            01:32
4               There are four, I believe, that the       01:33
5       only means of verifying whether there's an        01:33
6       exception to a violation is requesting the list   01:33
7       of partner channels from LitRes.  There is no     01:33
8       other means.                                      01:33
9          Q.   Who would you speak with to confirm       01:33
10      that no other entity apart from LitRes has ever   01:33
11      been authorized to license the upload of all or   01:33
12      portions of the audiobooks to the works in suit   01:33
13      to YouTube?                                        01:33
14         A.   To confirm that there are no other        01:34
15      entities?                                          01:34
16         Q.   Let me rephrase.  With whom would         01:34
17      you speak to confirm that LitRes and the LitRes   01:34
18      partner channels are the only entities who have   01:34
19      been authorized to upload all or part of the      01:34
20      audiobooks of the works in suit to YouTube?       01:35
21              THE WITNESS:  I suspect that would        01:35
22          be Maxim Lozovsky.                            01:35
23              (The Court Reporter requested             
24          clarification.)                               
25              THE WITNESS:  Do you need to hear         01:35
```

Page 148

| | | |
|---|---|---|
| 1 | his title? | 01:36 |
| 2 | BY MR. KRAMER: | 01:36 |
| 3 | Q.    No.   We spoke to him yesterday. | 01:36 |
| 4 | Thank you, though. | 01:36 |
| 5 | Can you please turn to page 19 of | 01:36 |
| 6 | Exhibit 8?  The left column of this chart | 01:36 |
| 7 | identifies video IDs for YouTube videos; is | 01:36 |
| 8 | that right? | 01:36 |
| 9 | A.    Give me just one second, please. | 01:36 |
| 10 | Yes, I see that table. | 01:36 |
| 11 | Q.    And to the right of the video IDs is | 01:36 |
| 12 | a column of dates that represent the date by | 01:36 |
| 13 | which AST became aware of the listed video, | 01:37 |
| 14 | correct? | 01:37 |
| 15 | A.    Are you saying this is the date when | 01:37 |
| 16 | they found out about it, or the date when it | 01:37 |
| 17 | was uploaded to YouTube? | 01:37 |
| 18 | Q.    The date when AST claims to have | 01:37 |
| 19 | become aware of the video. | 01:37 |
| 20 | A.    Okay.  I see. | 01:37 |
| 21 | Q.    Line 25 lists a video ID of | 01:38 |
| 22 | NPFNJAXBWUM, right? | 01:38 |
| 23 | MR. ZELCS:  Line 25 on what page? | 01:38 |
| 24 | BY MR. KRAMER: | 01:38 |
| 25 | Q.    I'm sorry.  On page 24. | 01:38 |

Page 149

```
 1            A.   So page 24 and the number of the row    01:38
 2      is?                                                 01:38
 3            Q.   Line 25.                                 01:38
 4            A.    Right.                                  01:39
 5            Q.   The date by which AST says that it       01:39
 6      became aware of this video is September 22nd,       01:39
 7      2021, right?                                        01:39
 8            A.    That's what it states in the            01:39
 9      document.                                           01:39
10            Q.    That's a little under a year ago,       01:39
11      right?                                              01:39
12            A.    That's the date, yes.                   01:39
13            MR. KRAMER:  Catherine, can you               01:39
14            please mark tab 14?                           01:39
15            (Exhibit 9 was marked.)                       01:39
16      BY MR. KRAMER:                                      01:40
17            Q.    So I believe that is available now.     01:40
18      I'm showing you what has been marked as             01:40
19      Exhibit 9.  It is a document titled "Schneider      01:40
20      et al. versus YouTube, et al., Plaintiff's          01:40
21      July 5th, 2022, supplemental list of                01:40
22      infringements."                                     01:40
23            Do you see this document?                     01:40
24            THE INTERPRETER:  Counsel, is that            01:40
25            Exhibit 9?                                    01:40
```

Page 150

```
 1                 MR. KRAMER:  Yes.              01:40

 2           A.   I do.                           01:40

 3      BY MR. KRAMER:                            01:40

 4           Q.   The first page says, AST Publishing   01:40

 5      LTD, right?                               01:40

 6           A.   Yes.                            01:41

 7           Q.   And under AST's name, like in the   01:41

 8      exhibit we just looked at, there's a list of   01:41

 9      YouTube URLs, right?                      01:41

10           A.   In the left column of this table,   01:41

11      yes.                                      01:41

12           Q.   Pages 1 through 3 of this exhibit   01:41

13      lists 64 YouTube videos, correct?         01:41

14           A.   Correct.                        01:41

15           Q.   And these YouTube videos are alleged   01:41

16      infringements that AST has put at issue in this   01:41

17      case, right?                              01:41

18           A.   I don't believe that all of the   01:42

19      links are infringements.  Because the procedure   01:42

20      for verification takes place gradually, and the   01:42

21      last stage of checking against the partner   01:42

22      channels are to -- placed just recently a few   01:42

23      days ago.                                 01:42

24                (The Court Reporter requested   01:42

25           clarification.)                      01:42
```

Page 151

1          THE WITNESS:   To place just recently     01:42

2      a few days ago.                                01:42

3  BY MR. KRAMER:                                     01:42

4          Q.    AST served this list of             01:43

5  infringements on July 5th, 2022, right?           01:43

6          A.    That is the date that is listed     01:43

7  here.  When the attorneys submitted that, in      01:43

8  fact, I don't know.                                01:43

9          Q.    When AST served this list of        01:43

10  infringements, it had not completed a check to    01:43

11  ensure that each video on this list was not in    01:43

12  fact authorized; is that right?                   01:43

13          A.    I believe that's correct.           01:44

14          Q.    And yet this video is titled        01:44

15  "Supplemental List of Infringements," right?      01:44

16          A.    That's correct, because at the time 01:45

17  this list was being compiled, we did not yet      01:45

18  have the updated list of partner channels from    01:45

19  LitRes, and in its absence we deemed these        01:45

20  links to be infringements based on the data       01:45

21  available to us.                                  01:45

22          However, I don't remember that            01:45

23  decision to be final because we did not have      01:45

24  the verified list of the partners just yet.  We   01:46

25  did pass it on to the attorneys and said          01:46

Page 152

1    that they were infringement based on the          01:46

2    available-then criteria.  So it's a little hard    01:46

3    to comment on the finality of this document.       01:46

4          Q.    AST -- it --                           01:46

5          A.    It is possible that this               01:46

6    communication occurred between us and the          01:46

7    attorneys as to what procedures have to be         01:46

8    completed in order for a final answer to -- in     01:46

9    order to arrive at a final answer.                 01:46

10         Q.    Okay.  So AST couldn't determine        01:46

11   whether each video on this list was infringing      01:47

12   or not without confirming with LitRes; is that     01:47

13   right?                                             01:47

14         A.    It's the other way around.  Without     01:47

15   the list from LitRes, each one of these blanks     01:47

16   is deemed to be a violation until proven           01:48

17   otherwise by a list from LitRes.                   01:48

18         Q.    So in monitoring for infringement of    01:48

19   AST's works, AZAPI assumes that a use of AST's     01:48

20   work that is not a use by AST or LitRes            01:48

21   themselves is an infringement until proven         01:48

22   authorized; is that right?                         01:48

23         A.    Well, any use is a bit broad of a       01:49

24   statement.                                         01:49

25               (The Court Reporter requested          01:49

Page 153

```
1                    C E R T I F I C A T E

2                  I, MONNA J. NICKESON, CCR, CSR, CLR, RPR,

3         CRR, the undersigned Certified Court Reporter,

4         authorized to administer oaths and affirmations in and

5         for the states of Washington (3322), Oregon (16-0441),

6         Idaho (1045), and California (14430), do hereby

7         certify:

8                     That the sworn testimony and/or proceedings,

9         a transcript of which is attached, was given before me

10        at the time and place stated therein; that the witness

11        was duly sworn or affirmed to testify to the truth;

12        that the testimony and/or proceedings were

13        stenographically recorded by me and transcribed under

14        my supervision.  That the foregoing transcript contains

15        a full, true, and accurate record of all the testimony

16        and/or proceedings occurring at the time and place

17        stated in the transcript; that a review of which was

18        not requested; that I am in no way related to any party

19        to the matter, nor to any counsel, nor do I have any

20        financial interest in the event of the cause.

21        IN WITNESS WHEREOF I have set my hand on

22        August 24, 2022.

23

24        MONNA J. NICKESON, CCR, CSR, CLR, RPR, CRR

25
```

Page 162

# Exhibit 8A

```
1
2   UNITED STATES DISTRICT COURT
3   NORTHERN DISTRICT OF CALIFORNIA
4   SAN FRANCISCO DIVISION
5   -----------------------------------x
6   MARIA SCHNEIDER, UNIGLOBE
    ENTERTAINMENT, LLC and AST
7   PUBLISHING LTD., individually and
    on behalf of all others similarly
8   situated,
9                        Plaintiffs,
10  -against-          Case No. 3:20-cv-4423
11  YOUTUBE, LLC; and GOOGLE LLC,
12                       Defendants.
13  -----------------------------------x
14
15      REMOTE VIDEOTAPED DEPOSITION OF
                MARIA SCHNEIDER
16           New York, New York
              June 14, 2022
17
18
19  Reported By:
20  ERIC J. FINZ
21
22
23
24
25
```

Page 1

```
 1              MARIA SCHNEIDER
 2      A.    Could be.                    13:53:31
 3      Q.    Who is Dan Coleman?          13:53:32
 4      A.    Dan Coleman, I don't know if 13:53:34
 5  he's the owner or he runs Modern Works. 13:53:37
 6  He's certainly -- I'm not sure if it's  13:53:42
 7  his company, I don't know how it's       13:53:47
 8  structured.  But anyway, he's at Modern  13:53:48
 9  Works.                                   13:53:52
10      Q.    And Modern Works is an       13:53:52
11  affiliate of Artist Share Music          13:53:56
12  Publishing.  Is that right?             13:54:01
13      A.    They have an agreement.  I    13:54:01
14  don't -- yeah, however you define that.  13:54:03
15      Q.    And this agreement appoints  13:54:17
16  Artist Share Music Publishing LLC as your 13:54:20
17  administrator.  And gives it the         13:54:23
18  exclusive right to license and distribute 13:54:25
19  the musical compositions that are owned  13:54:28
20  or controlled by you.  Right?           13:54:29
21      A.    I'm going to read this --     13:54:31
22           MR. ZELCS:  Objection.         13:54:32
23  Objection; form.                        13:54:33
24      A.    I'm going to read this.       13:54:35
25      Q.    Okay.                        13:54:40
```

Page 126

```
 1              MARIA  SCHNEIDER

 2            C E R T I F I C A T E

 3    STATE OF NEW YORK    )

                          :  ss.

 4    COUNTY OF NEW YORK   )

 5

 6        I, ERIC J. FINZ, a Shorthand

 7    Reporter and Notary Public within and for

 8    the State of New York, do hereby certify:

 9          That MARIA SCHNEIDER, the witness

10    whose deposition is hereinbefore set

11    forth, was duly sworn by me and that such

12    deposition is a true record of the

13    testimony given by the witness.

14        I further certify that I am not

15    related to any of the parties to this

16    action by blood or marriage, and that I

17    am in no way interested in the outcome of

18    this matter.

19        IN WITNESS WHEREOF, I have hereunto

20    set my hand this 21st day of June, 2022.

21

22

23

24        ERIC J. FINZ

25
```

Page 262