George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

MARIA SCHNEIDER, UNIGLOBE
ENTERTAINMENT, LLC, and AST
PUBLISHING, LTD., individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants.

Case No. 3:20-cv-04423-JD

**PLAINTIFFS' MOTION IN LIMINE NO.
1 TO EXCLUDE EVIDENCE OF
YOUTUBE'S RECEIPT OF
TAKEDOWN NOTICES DIRECTED AT
PRIVATE OR UNLISTED VIDEOS**

Date:     May 25, 2023
Time:     1:30 p.m.
Dept.:    11
Judge:    Hon. James Donato

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court to exclude evidence of YouTube's receipt of takedown notices directed at private or unlisted videos.

Respectfully submitted,

Dated:  April 27, 2023

/s/ Philip Korologos

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar*
rcortazar@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

ii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE TO BE DECIDED**

Whether Defendants should be precluded from offering evidence concerning YouTube's receipt of takedown notices directed at private or unlisted videos where Defendants failed to produce such evidence during the discovery process.

On March 3, 2023, Plaintiffs moved for partial summary judgment on Defendants' DMCA defense, arguing that Defendants are not entitled to the DMCA safe harbor because they exclude private and unlisted videos from YouTube's search function, leaving Plaintiffs with no means of identifying such videos that infringe their copyrighted works on the platform.  [ECF No. 265.]  In opposition, Defendants submitted a declaration of Chenyuan Zhu, asserting, for the first time and without support, that "YouTube receives millions of takedown notices a year, ***over 100,000 of which per year are directed to videos on the service that are either private or unlisted***."  [ECF No. 283-1 ¶ 3 (emphasis added); *see also* ECF No. 283 at 6, 12.]  In discovery, Plaintiffs repeatedly sought this kind of information regarding the bases for Defendants' DMCA affirmative defense.  Yet the existence of a purported "100,000" takedown notices was never disclosed until Defendants filed the Zhu declaration—***9 months*** after the close of fact discovery.  Even then, Defendants provided no backup documentary evidence or data to support Zhu's assertion.  These disclosure failures warrant preclusion.  Under the best evidence rule, Defendants cannot offer testimony about the contents of takedown notices without introducing the supporting data.  And having failed to disclose *any* information regarding the asserted 100,000-plus takedown notices directed at private or unlisted videos during discovery, Defendants should be precluded from offering this information as part of their case in chief at trial to support their affirmative defense.

## ARGUMENT

Federal Rule of Evidence 1002 provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  The rule applies "when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself—particularly when the witness was not privy to the events those contents describe."  *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004).  A "writing" for purposes of the best evidence rule "consists of letters, words, numbers, or their equivalent set down in any form," Fed. R. Evid. 1001(a), which includes records stored in an electronic database.  *See United States v. Diaz-Lopez*, 625 F.3d 1198, 1202 (9th Cir. 2010).

In opposition to Plaintiffs' motion for partial summary judgment on Defendants' DMCA

1    defense, Defendants introduced statements from Mr. Zhu intended to prove the contents of certain

2    takedown notices—namely that "over 100,000" of the notices YouTube "receives" annually are

3    "directed to" private or unlisted videos.  [ECF No. 283-1 ¶ 3.]  To the extent Defendants intend to

4    introduce similar testimony at trial in support of their DMCA safe harbor affirmative defense

5    without introducing any of the notices themselves, the best evidence rule bars such testimony.

6         Moreover, any attempt to introduce such data or underlying notices at trial would be

7    prohibited by Federal Rule of Civil Procedure 37 and this Court's Standing Order on Civil

8    Discovery.  Rule 37(c)(1) provides: "If a party fails to provide information . . . as required by Rule

9    26(a) or (e)[1], the party is not allowed to use that information . . . to supply evidence on a motion,

10   at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  The rule

11   "provides a 'self-executing, automatic sanction' of exclusion 'to provide a strong inducement for

12   disclosure of material.'"  *Johnstech Int'l v. JF Microtechnology SDN BHD*, 2016 WL 4182402, at

13   *2 (N.D. Cal. Aug. 8, 2016) (Donato, J.) (quoting *Hoffman v. Constr. Protective Servs.*, 541 F.3d

14   1175, 1180 (9th Cir. 2008)).  Likewise, this Court's Standing Order provides: "Except for good

15   cause, no item shall be received as case-in-chief evidence if the proponent failed to produce it in

16   response to a reasonable and proper discovery request covering the item, regardless of whether the

17   other party moved to compel production."  Standing Order for Discovery in Civil Cases Before

18   Judge Donato ¶ 6.

19        Plaintiffs served several discovery requests which should have led to the disclosure of

20   whatever documentation there may be regarding the "over 100,000" takedown notices directed at

21   unsearchable videos (or at the very least, the figure) during discovery.  Plaintiff Maria Schneider's

22   requests for production, for example, sought, "All Documents You intend to use in support of

23   Your affirmative defenses" (Ex. 1—Plaintiffs' RFP No. 70) and "All Documents Concerning

24   Your claim that You are entitled to one or more safe harbors under the DMCA for the allegations

25   in this Lawsuit" (Ex. 1—Plaintiffs' RFP No. 75).  Ms. Schneider's interrogatories also asked

26

27   [1] Parties are required under Fed. R. Civ. Pro. 26(a)(1)(A)(ii) to produce "a copy" or "description
     by category and location" of all documents "the disclosing party . . . may use to support its claims
     or defenses, unless the use would be solely for impeachment."

28

Defendants to, "State the bases (including all facts and the application of law to fact) for Your contention that Defendants are" (i) "not liable for any alleged infringement that arises by reason of the storage at the direction of users of material residing on the YouTube service" (Ex. 2—Schneider Interrog. No. 3) and (ii) "entitled to the safe harbor from liability for copyright infringement under 17 U.S.C. Section 512" (*id.* No. 4).

Despite claiming in their summary judgment opposition that YouTube's receipt of over 100,000 takedowns annually directed at private and unlisted videos was a key fact supporting their DMCA affirmative defense [ECF No. 283 at 6, 12], Defendants did not produce any information supporting this assertion in their initial disclosures or in response to Plaintiffs' document requests. Nor did Defendants ever disclose their existence in response to Plaintiffs' interrogatories. (*See* Ex. 3—Am. Resp. to Interrog. Nos. 3, 4, 7 at 5–13.) Indeed, while Defendants disclosed that they "receive[] more than 100,000 takedown notices per week" and that they engage in the "termin[ation of] hundreds of thousands of accounts per year for repeat copyright infringement" (*id.* at 8–9) they did not mention anything about private or unlisted videos.

Further, disclosure issues aside, Defendants' new claims about YouTube's *receipt* of takedown notices directed at private or unlisted videos should also be excluded because their probative value, if any, is substantially outweighed by a danger of confusing issues or misleading the jury. *See* Fed. R. Evid. 401, 403. The mere receipt of a takedown notice, on its own, is irrelevant. What matters for purposes of the DMCA is whether such notices are *successful* in removing repeat infringers from the platform. For a notice to be *successful*, a user must accurately identify an infringing video—and if a user cannot see private or unlisted videos, it is unclear how any user could accurately identify infringement. Allowing Defendants to present evidence about the mere receipt of takedown notices would mislead the jury into believing that many such notices lead to the removal of repeat infringers—a fact for which Defendants have offered no proof.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude evidence of YouTube's receipt of takedown notices directed at private or unlisted videos.

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
         lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1 RE TAKEDOWNS ON PRIVATE UNLISTED VIDEOS**<br><br>Date:     May 25, 2023<br>Time:    1:30 p.m.<br>Dept.:   Courtroom 11 – 19th Floor<br>Judge:  Hon. James Donato<br><br>Date Filed: July 2, 2020<br><br>Trial Date: June 12, 2023 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | |

1  Plaintiffs want to hide from the jury the fact that Defendants Google and YouTube

2  ("YouTube") routinely receive and process takedown notices for videos on the service that users

3  have marked as private or unlisted because that does not fit their desired narrative.  But that is not

4  a basis for excluding relevant evidence.

5  Plaintiffs make three arguments—none have merit.  *First*, Plaintiffs claim YouTube did

6  not timely disclose this evidence—a claim both inaccurate and misleading since Plaintiffs never

7  requested this information.  *Second*, Plaintiffs suggest the best evidence rule requires reliance on

8  documents, not testimony.  That argument fails because the content of the documents is not at

9  issue.  Finally, Plaintiffs' argue the evidence is irrelevant, but the evidence directly rebuts

10  plaintiffs' theory that the DMCA safe harbor does not apply (which is precisely why they want it

11  excluded).

12  Plaintiffs served waves of written discovery but never once served a discovery request

13  seeking *any* information about private or unlisted videos on YouTube or takedown notices

14  directed at these videos.  But Plaintiffs did depose Kevin Zhu, who previously led Defendants'

15  copyright operations team responsible for processing takedown notices.  Mr. Zhu provided

16  testimony on the same information that Plaintiffs now seek to exclude based on an alleged failure

17  to disclose.  When asked how Defendants' copyright management tools work on private videos,

18  Mr. Zhu testified:

19  It's possible to file a takedown request against a private video.  We assess those --
     we would review those takedown requests as we would any other takedown
20  request.  And I -- and anecdotally, I've seen takedown requests be filed through
     the web form for private videos.

21

22  Decl. of Travis Silva in Supp. of Opp'ns. to Pls' MIL ("Silva Opp'n. Decl.") Ex. 1 at 149:2-7

23  (June 21, 2021).  The testimony made plain that (1) takedown requests may be directed to private

24  videos and (2) those takedowns are handled consistent with YouTube's regular process.  Plaintiffs

25  neither asked any follow-up questions, nor did they ever serve written discovery requesting

26  takedown notices directed to private videos.

27  In March 2023, nearly eight months after the close of discovery, Plaintiffs filed a motion

28  for partial summary judgment, alleging that Defendants did not have, or failed to implement, a

2143024

valid repeat infringer policy (and thus are not entitled to DMCA safe harbor protection) because copyright holders cannot discover and send takedown notices for private or unlisted videos.  Dkt. 265 at 5-6.  In opposition, Mr. Zhu submitted a declaration consistent with his prior testimony stating that "YouTube receives millions of takedown notices a year, over 100,000 of which per year are directed to videos on the service that are either private or unlisted," and that "YouTube receives and processes takedown notices, assesses strikes and terminates users for public, private and unlisted videos alike." Dkt. 283-1 ¶¶ 3, 7.  Plaintiffs seek to exclude that information on the basis that it was not disclosed—despite the fact it *was* disclosed and Plaintiffs simply failed to request the details they now would like to keep from the jury.

Neither Rule 37 nor this Court's Standing Order supports exclusion.  Plaintiffs do not point to a single discovery request seeking *any* information about private or unlisted videos on YouTube or takedown notices directed at these videos.  And because YouTube "receives and processes takedown notices, assess strikes and terminate users for public, private and unlisted videos alike" (Dkt. 283-1 ¶ 7), there was no reason for Defendants to respond to Plaintiffs generalized discovery requests on takedowns by separately disclosing any policy or figure concerning private or unlisted videos.  To the contrary, where the discovery requests are generalized and do not "call[] for facts related to a specific factual assertion," Defendants need not "lay[] out every jot and tittle of their evidentiary case" in response.  *Tubbs v. Sacramento Cnty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008).  Indeed, "[i]n the written discovery process, parties are not entitled to each and every detail that could possibly exist in the universe of facts. . . . Nor is Plaintiff entitled to a narrative account of Defendants' case." *Bashkin v. San Diego Cnty.*, 2011 WL 109229, at *2 (S.D. Cal. Jan. 13, 2011).

Plaintiffs' motion is also disingenuous by omitting the fact that the same witness who submitted the summary judgment declaration (Mr. Zhu) was deposed and ***specifically testified that YouTube receives and processes takedown notices directed to private videos.*** Silva Opp'n. Decl. Ex. 1 at 149:2-7.  Simply put, Plaintiffs had ample opportunity to question Mr. Zhu about details related to takedown notices directed at private or unlisted videos that Defendants receive and process, but they chose not to.  They also had the opportunity after the deposition to seek

further details through written discovery.  Plaintiffs have no one to blame but themselves.

Plaintiffs also argue that the best evidence rule precludes any testimony on Defendants' receipt and processing of takedown notices without introducing the supporting data.  Mot. at 1-2. But that rule only applies if Defendants intend to offer testimony regarding the "content" of takedown notices.  Fed. R. Evid. 1002.  In other words, "the rule applies only to the *terms of the document*, and not to *any other facts about the document*." *United States v. Diaz-Lopez*, 625 F.3d 1198, 1201-2 (9th Cir. 2010).  Mr. Zhu's testimony does not concern the **content** of takedown notices, but merely the facts that these notices may target private or unlisted videos.  The best evidence rule has no application in this context.  *See*, *e.g.*, *United States v. Sliker*, 751 F.2d 477, 483 (2d Cir. 1984) (no need to introduce original bank insurance policy just because witness testified to the fact the bank was insured); *Mobley v. Wilmington Tr., N.A.*, 2016 WL 7234099, at *2 (C.D. Cal. Sept. 9, 2016) (no need to produce loan application when witness only testified to the fact that the application was submitted); *Drange v. Mt. West Farm Bureau Ins. Co.*, 2021 WL 1627156, at *1 (D. Mont. Apr. 27, 2021) (best evidence rule inapplicable because witness testified about the existence of contracts, not their terms).

Finally, Plaintiffs claim that evidence about Defendants' mere *receipt* of takedown notices is irrelevant: "[w]hat matters for purposes of the DMCA is whether such notices are *successful* in removing repeat infringers from the platform."  Mot. at 3. That is inscrutable.  Mr. Zhu's declaration in Defendants' summary judgment opposition responds to Plaintiffs' claim that YouTube's repeat infringer policy was invalid because copyright holders could not send takedown notices for private videos.  Plaintiffs central premise for that motion is false, as Mr. Zhu explained, because copyright holders can and do send takedown notices for private videos.  How YouTube processed any such notice was not germane to the question Plaintiffs' motion presented. Regardless, Mr. Zhu went on to explain that YouTube "*receives and processes* takedown notices, assesses strikes and terminates users for public, private and unlisted videos." Dkt. 283-1 at ¶ 7 (emphasis added).

2143024

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 5, 2023

KEKER, VAN NEST & PETERS LLP


By:   /s/ Robert A. Van Nest
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
              lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1
Case No. 3:20-cv-04423-JD

2143024

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Defendants. | Case No. 3:20-cv-04423-JD <br><br> **PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUE TESTIMONY OR EVIDENCE CONTESTING FACTS DESCRIBED IN PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES** <br><br> Date:     May 25, 2023 <br> Time:     1:30 p.m. <br> Dept.:     11 <br> Judge:     Hon. James Donato |

1     TO ALL PARTIES AND COUNSEL OF RECORD:

2         Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard,

3  in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4  Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court

5  to exclude any testimony or evidence contesting facts described in Plaintiffs' Proffer of Evidence

6  Concerning DMCA Factual Disputes.

7

8                        Respectfully submitted,

9

10  Dated:  April 27, 2023             /s/ *Philip Korologos*

11                               Philip C. Korologos*
                                 *pkorologos@bsfllp.com*

12                               Joanna Wright*
                               *jwright@bsfllp.com*

13                               Jeffrey Waldron*
                               *jwaldron@bsfllp.com*

14                               BOIES SCHILLER FLEXNER LLP
                               55 Hudson Yards, 20th Floor

15                               New York, NY 10001
                               Telephone: (212) 446-2300

16                               Facsimile: (212) 446-2350

17                               Joshua Irwin Schiller, CA Bar #330653

18                               *jischiller@bsfllp.com*
                               BOIES SCHILLER FLEXNER LLP

19                               44 Montgomery St., 41st Floor
                               San Francisco, CA 94104

20                               Telephone: (415) 293-6800

21                               Facsimile: (415) 293-6899

22                               George A. Zelcs*

23                               *gzelcs@koreintillery.com*
                               Randall P. Ewing, Jr.*

24                               *rewing@koreintillery.com*
                               Ryan Z. Cortazar*

25                               *rcortazar@koreintillery.com*
                               KOREIN TILLERY, LLC

26                               205 North Michigan, Suite 1950
                               Chicago, IL 60601

27                               Telephone: (312) 641-9750

28                               Facsimile: (312) 641-9751

1

2
Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE TO BE DECIDED**

Whether Defendants should be precluded from introducing testimony or evidence contesting facts described in Plaintiffs' Proffer of Evidence Concerning DMCA Factual Disputes, which Defendants previously asserted were "undisputed."

1    At the October 13, 2022, hearing before the Court, Defendants requested leave to file a

2   second summary judgment motion, stating that the motion was "a big deal to us."  (Ex. 1—

3   10/13/2022 Hrg. Tr. at 48:12.)  At the Court's direction [ECF 188], Defendants subsequently filed a

4   letter claiming leave to file such a motion was justified because YouTube qualified for the DMCA

5   safe harbor as a matter of "undisputed fact." [ECF 218 at 1.]  The Court thereafter directed Plaintiffs

6   to file a 10-page proffer setting out the evidence establishing that YouTube "(1) did not expeditiously

7   remove infringing material in response to a takedown notice; (2) otherwise obtained actual or

8   apparent knowledge of specific infringing material and did not expeditiously remove the infringing

9   material; or (3) received direct financial benefit from infringing activity that it has the right and

10  ability to control." [ECF 219.]

11    In their January 9, 2023, proffer [ECF 226], and a supplemental letter [ECF 229], Plaintiffs

12  set out the undisputed facts on these three issues as well as undisputed facts showing Defendants

13  were not, as a general matter, eligible for the DMCA safe harbor under Section 512(i).  [ECF 226.]

14  Among other things, Plaintiffs showed:

- YouTube prevents rightsholders from using digital fingerprinting technology and other "automated means" to search for infringements.  [*Id.* at 3.]

- Rightsholders without Content ID are limited to using keyword searches when searching for infringements.  [*Id.* at 3.] ████████████████████████ *[Id.]*

- YouTube does not assess copyright strikes for infringements caught by Content ID, which constitute over 99% of all copyright actions on YouTube, but only assesses strikes for infringements identified by DMCA-compliant takedown notices.  [*Id.* at 4, 6.]



- ████████████████████████████████████ *[Id.* at 5.]

- YouTube is able to identify infringements of Plaintiffs' works on its platform using Content ID.  [*Id.* at 9.]

- ████████████████████████████████ *[Id.* at 10.]

- ████████████████████████████████ *[Id.* at 6, 8.]

- ████████████████████████████████ *[Id.* at 8.]

1   In their February 1, 2023, response to Plaintiffs' proffer, Defendants reiterated that the

2   facts relevant to the DMCA safe harbor defense were "*undisputed*"—asserting that Plaintiffs had

3   "pointed to no *disputed* material facts" such that the only issues to be litigated were "the legal

4   conclusions to be drawn from the undisputed factual record."  [ECF 239 at 1 (emphasis in

5   original); *see also id.* (observing that "on the three specific questions as to which the Court invited

6   a proffer from Plaintiffs," Plaintiffs "argued over the legal conclusions to be drawn from the

7   undisputed factual record"); *id.* at 3 (concluding that Plaintiffs' proffer "does not identify disputed

8   issues of material fact").]  In light of such assertions, the Court granted Defendants leave to file

9   their proposed summary judgment motion.  [ECF 241.]

10   Having unequivocally stated that the facts described in Plaintiffs' Proffer are "*undisputed*,"

11   Defendants should now be estopped from introducing testimony or evidence disputing such facts.

12   **ARGUMENT**

13   "[W]here a party assumes a certain position in a legal proceeding, and succeeds in

14   maintaining that position, he may not thereafter, simply because his interests have changed,

15   assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in

16   the position formerly taken by him."  *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).  "This rule,

17   known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an

18   argument and then relying on a contradictory argument to prevail in another phase."  *New*

19   *Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up).  "This court invokes judicial estoppel

20   not only to prevent a party from gaining an advantage by taking inconsistent positions, but also

21   because of general considerations of the orderly administration of justice and regard for the dignity

22   of judicial proceedings, and to protect against a litigant playing fast and loose with the courts."

23   *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (cleaned up).

24   Defendants were clear in their response to Plaintiffs' Proffer that Plaintiffs' proffered facts

25   were undisputed.[1]  Indeed, the absence of disputed facts in Plaintiffs' Proffer was the primary

26

27   _____

[1] Had Defendants wished to preserve a dispute regarding any specific fact proffered by Plaintiffs,
they could have said so in their response.  Instead, Defendants made a blanket assertion that

28   Plaintiffs' proffer included "no disputed material facts."  [ECF 239 at 1 (emphasis omitted).]

1  basis for Defendants' request for leave to file a summary judgment motion.  [*See* ECF 239 at 2

2  ("Plaintiffs' proffer underscores that the parties' disputes are *legal* ones, properly resolved by the

3  Court on summary judgment, not left for a jury at trial" (emphasis in original).).]  And, of course,

4  Defendants succeeded in persuading the Court to accept their position in granting them leave to

5  file a second summary judgment motion.  [ECF 241.]

6        Defendants should not now be allowed to switch positions regarding key facts critical to

7  this case without regard for the "orderly administration of justice" and "the dignity of judicial

8  proceedings".  *Hamilton*, 270 F.3d at 782.  As the Court stated at the October 13, 2022, hearing,

9  Defendants' first summary judgment motion would have ordinarily barred them from moving for

10  summary judgment a second time.  (*See* Ex. 1—10/13/2023 Hrg. Tr. at 48:8–10 ("**THE COURT:**

11  . . . [D]efendants already filed their motion; so you're done.");  48:17–19 ("**THE COURT:** . . . We

12  don't do death by a thousand Rule 56 bites, Mr. Kramer.").)  The Court nevertheless granted

13  Defendants an exception to this rule based on their acknowledgement that the material facts

14  regarding the DMCA safe harbor defense were undisputed.  Ultimately, Defendants chose not to

15  file the motion they fought so hard to file, both contradicting their statement that the motion was

16  "a big deal" to them (Ex. 1—10/13/2022 Hrg. Tr. at 48:12) and wasting the Court's and Plaintiffs'

17  time.  And, now, if Defendants were permitted to again reverse course and try to dispute Plaintiffs'

18  proffered facts on the DMCA safe harbor at trial, it would lead to unnecessary and prejudicial

19  inefficiencies as (i) Plaintiffs are forced to prepare to litigate facts that Defendants already

20  admitted are undisputed, and (ii) the Court and the jury are forced to waste time at trial while the

21  parties introduce testimony and documents on issues that Defendants already told the Court they

22  conceded.  This is precisely the kind of "playing fast and loose with the courts" that judicial

23  estoppel is intended to protect against.  *Hamilton*, 270 F.3d at 782.

24                            **CONCLUSION**

25        For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion

26  to exclude testimony or evidence contesting the facts described in Plaintiffs' Proffer [ECF 226]

27  and supplemental proffer [ECF 229], including those specified in this Motion.

28

1   KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
DAN JACKSON - # 216091
3   djackson@keker.com
JULIA L. ALLEN - # 286097
4   jallen@keker.com
TRAVIS SILVA - # 295856
5   tsilva@keker.com
ANNA PORTO - # 319903
6   aporto@keker.com
LUKE APFELD - # 327029
7   lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
8   aespeland@keker.com
633 Battery Street
9   San Francisco, CA 94111-1809
Telephone:    415 391 5400
10  Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
          lwhite@wsgr.com

11  Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

12

13                  UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                    SAN FRANCISCO DIVISION

16  MARIA SCHNEIDER, UNIGLOBE
ENTERTAINMENT, LLC, and AST
17  PUBLISHING, LTD., individually and on
behalf of all others similarly situated,

18              Plaintiffs,

19      v.

20  YOUTUBE, LLC and GOOGLE LLC,

21              Defendants.

Case No. 3:20-cv-04423-JD

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION IN LIMINE NO.
2 RE DMCA FACTUAL DISPUTES**

Date:      May 25, 2023
Time:      1:30 p.m.
Dept.:     Courtroom 11 – 19th Floor
Judge:     Hon. James Donato

Date Filed: July 2, 2020

Trial Date: June 12, 2023

22  YOUTUBE, LLC and GOOGLE LLC,

23              Counterclaimants,

24      v.

25  PIRATE MONITOR LTD., PIRATE
MONITOR LLC, and GÁBOR CSUPÓ,

26              Counterclaim Defendants.

27

28

2142906

1    Defendants Google and YouTube ("YouTube") oppose Plaintiffs' Motion in Limine No. 2

2 ("Motion") as contrary to both the facts of this case and the law of judicial estoppel, which is an

3 "extraordinary sanction" that Plaintiffs have not carried their "heavy burden" to invoke.  *Deppe v.*

4 *United Airlines*, 2001 WL 902648, at *9 (N.D. Cal. July 31, 2001).

5    On October 13, 2022, at the hearing on Defendants' motion for summary judgment as to

6 plaintiff Maria Schneider, counsel for YouTube reiterated—as they had indicated in their January

7 21, 2021 Case Management Statement, *see* Dkt. 54 at 6—that they intended to file another

8 summary judgment motion based on the DMCA.  *See* Waldron Decl. in Supp. of Pls' MIL No. 2,

9 Ex. 1 (Tr.) at 48:8–49:19.  The Court stated its preference for single summary judgment motions

10 but, acknowledging the absence of a "clear statement" at that time, allowed YouTube to file a

11 three-page "preview."  *Id*.  YouTube did so, and the Court then directed Plaintiffs to file a

12 "proffer of evidence that YouTube: (1) did not expeditiously remove infringing material in

13 response to a takedown notice; (2) otherwise obtained actual or apparent knowledge of specific

14 infringing material and did not expeditiously to remove the infringing material; or (3) received

15 direct financial benefit from infringing activity that it has the right and ability to control."  Dkt.

16 219.  Plaintiffs responded with their purported evidence.  Dkt. 225-2.

17    Plaintiffs' Motion focuses on YouTube's February 1, 2023 letter responding to Plaintiffs

18 proffer.  In it, YouTube illustrated that Plaintiffs' submissions failed to demonstrate any *material*

19 disputed facts as to the issues identified by this Court.  Instead, Plaintiffs "devoted the bulk of

20 their submission" to "extraneous"—*i.e., immaterial*—facts and disputes of law.  Dkt. 239 at 1–2.

21 YouTube did *not*, as Plaintiffs now falsely contend, admit that all of the purported "facts" in

22 Plaintiffs' submissions, including the many that were immaterial to the specific issues this Court

23 ordered Plaintiffs to address, were "undisputed" for the purposes then at hand, *much less for*

24 *purposes of trial.*[1]  *See id*.

25    YouTube ultimately chose not to file a second summary judgment motion while class

26 certification remained unresolved.  But Plaintiffs cannot possibly have been prejudiced by that—

27

28
_____

[1] Plaintiffs fail to identify which "facts" they are putting at issue here.  They list eight in their Motion, but appear to move on these facts "among others."

2142906

not least because Plaintiffs filed their *own* summary judgment motion based on one argument from their proffer, *acknowledging that the rest relied on disputed facts*: "While Plaintiffs maintain that Defendants have failed to comply with the requirements of the DMCA safe harbor in *multiple ways*, see Dkt. 226, they move for partial summary judgment *solely on this limited basis* [that private and unlisted videos are not searchable in YouTube], as there are no material facts in dispute" *solely on that limited issue*.  Dkt. 263-1 at 1 (emphases added).

Plaintiffs' own motion for summary judgment is also telling in light of the Ninth Circuit's holding in *Fredenburg* that "[s]traightforward summary judgment analysis, rather than theories of estoppel," is the appropriate means for addressing purported admissions.  172 F.3d at 1179. Further, this Court's Standing Order states that motions in limine "are not substitutes for summary judgment or other dispositive motions."  Standing Order for Civil Jury Trials at 3.  In any case, Plaintiffs are wrong about the doctrine of judicial estoppel, which does not apply here.

In determining whether to apply judicial estoppel, the Ninth Circuit considers:

> (1) whether a party's position in the later judicial proceeding is clearly inconsistent with that party's earlier position, (2) whether the party persuaded the first court to accept the earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that one of the two courts was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Randle v. Crawford*, 604 F.3d 1047, 1053–54 (9th Cir. 2010).  As in *Randle*, "[n]one of these considerations supports application of judicial estoppel here." *Id*. at 1054.

*First*, there is nothing inconsistent, much less *clearly* inconsistent, between requiring Plaintiffs to carry their burdens of proof at trial and Defendants' assertion, in their February 1, 2023 letter, that the bulk of Plaintiffs' proffer failed to demonstrate any *material* dispute as to the issues specified by this Court, but instead focused on legal disputes and "extraneous"—*i.e.*, *immaterial*—facts.  Dkt. 239 at 1–2.  Even if Defendants had, for purposes of the proposed summary judgment motion, characterized all the facts Plaintiffs (incorrectly) deemed to be material as "undisputed," that still would not be inconsistent with disputing those facts *at trial* because facts "presumed for purposes of the summary judgment are not binding as stipulated facts for purposes of the trial even if they were assumed true for purposes of the summary

judgment." *Chaudhry v. Angell*, 2021 WL 4461667, at *47 (E.D. Cal. Sept. 29, 2021); *accord Pietrangelo, II v. Alvas Corp.*, 2010 WL 3323701, at *2 n.2 (D. Vt. May 19, 2010) (collecting cases); *see also Heiniger v. City of Phoenix*, 625 F.2d 842, 843 (9th Cir. 1980) (emphasizing the "narrow functions" of undisputed facts on summary judgment).

*Second*, this Court did not "accept" as true for purposes of summary judgment—much less for purposes of trial—any facts characterized as "undisputed" in Defendants' February 1, 2023 letter. On the contrary, the Court's order allowing YouTube to file a motion for summary judgment *did not even mention the February 1, 2023 letter*. *See* Dkt. 241. And even if the Court had relied on the February 1 letter for purposes of allowing a summary judgment motion (which was never filed), that is far from the kind of "success in a prior proceeding" required for judicial estoppel. *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267, 274 (9th Cir. 2013) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)). Indeed, the Ninth Circuit in *Ah Quin* disapproved of the case on which Plaintiffs misplace their reliance, *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001), as contrary to the Supreme Court's requirement, not only of success, but *lasting success*. *See Ah Quin*, 733 F.3d at 274 (holding that the reasoning of *Hamilton* and similar cases cannot "withstand scrutiny" in light of *New Hampshire*).

*Third*, Defendants have not and will not gain any "unfair advantage" as a result of the statements in the February 1, 2023 letter. There can be no prejudice to Plaintiffs from Defendants' choice *not* to file a summary judgment motion. And the absence of prejudice is confirmed by the fact that Plaintiffs filed their *own* summary judgment motion, on which the preview-and-proffer proceedings gave them a jump start. *See* Dkt. 263-1. In that motion, Plaintiffs had the opportunity to assert as undisputed and material the facts they now ask this Court to improperly *decree* as such for trial. *See id*. *Yet Plaintiffs intentionally left the vast majority of these purported facts out of their motion for summary judgment, indicating that they are "in dispute." Id*. at 1 (emphasis added). Thus, Plaintiffs have not suffered any prejudice. Nor is there any precedent for the decree of indisputability they seek from this Court, and ample precedent against it, including this Court's Standing Order. *See* Standing Order for Civil Jury Trials at 3; *Fredenburg*, 172 F.3d at 1179; *Heiniger*, 625 F.2d at 843.

2142906

1

2 Dated:  May 5, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP

By: /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
   lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 3 TO EXCLUDE EVIDENCE THAT CERTAIN YOUTUBE CONTRACTS PERMIT USERS TO UPLOAD COPYRIGHTED MATERIAL WITHOUT AUTHORIZATION**<br><br>Date:      May 25, 2023<br>Time:     1:30 p.m.<br>Dept.:     11<br>Judge:    Hon. James Donato |

Case No. 3:20-cv-04423-JD

1    TO ALL PARTIES AND COUNSEL OF RECORD:

2          Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard,

3    in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4    Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court

5    to preclude arguments and exclude evidence that YouTube's agreements and policies grant

6    licenses to YouTube uploaders whose videos contain copyrighted works without authorization.

7

8                                         Respectfully submitted,

9

10   Dated:  April 27, 2023                    /s/ Philip Korologos
                                               Philip C. Korologos*
11                                             pkorologos@bsfllp.com
                                               Joanna Wright*
12                                             jwright@bsfllp.com
                                               Jeffrey Waldron*
13                                             jwaldron@bsfllp.com
                                               BOIES SCHILLER FLEXNER LLP
14                                             55 Hudson Yards, 20th Floor
                                               New York, NY 10001
15                                             Telephone: (212) 446-2300
                                               Facsimile: (212) 446-2350
16

17                                             Joshua Irwin Schiller, CA Bar #330653
                                               jischiller@bsfllp.com
18                                             BOIES SCHILLER FLEXNER LLP
                                               44 Montgomery St., 41st Floor
19                                             San Francisco, CA 94104
                                               Telephone: (415) 293-6800
20                                             Facsimile: (415) 293-6899

21

22                                             George A. Zelcs*
                                               gzelcs@koreintillery.com
23                                             Randall P. Ewing, Jr.*
                                               rewing@koreintillery.com
24                                             Ryan Z. Cortazar*
                                               rcortazar@koreintillery.com
25                                             KOREIN TILLERY, LLC
                                               205 North Michigan, Suite 1950
26                                             Chicago, IL 60601
                                               Telephone: (312) 641-9750
27                                             Facsimile: (312) 641-9751

28

                                          ii
                                                              Case No. 3:20-cv-04423-JD

1

2
Stephen M. Tillery*
*stillery@koreintillery.com*
3
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
4
Carol O'Keefe*
*cokeefe@koreintillery.com*
5
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
6
St. Louis, MO 63101
Telephone: (314) 241-4844
7
Facsimile: (314) 241-3525

8
*Admitted *pro hac vice*
9
*Attorneys for Plaintiffs*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE TO BE DECIDED**

Whether the Court should preclude arguments and exclude evidence that YouTube's agreements and policies grant licenses to YouTube uploaders whose videos contain copyrighted works without authorization.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

YouTube's contracts with content owners grant licenses to YouTube, but they provide no license to YouTube's users that allows them to upload unauthorized copies of copyrighted works. These license provisions are the same in all material respects.  For example, ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████ (Ex. 5—

PLA §§ 2.1, 2.5 at -806–07; *see also* Ex. 4—CIMA § 2 at -860; Ex. 3—CLA  § 2 at -664–665; Ex. 6— SRAV § at -862–863; Ex. 7—TOS § 6.C).

**ARGUMENT**

Three reasons support Plaintiffs' motion: (1) YouTube's contracts, previous representations to the Court, and testimony from YouTube's Joanne Suk establish that the agreements do not grant licenses to users; (2) no evidence supports the argument that YouTube's contracts provide upload licenses to YouTube uploaders; and (3) any contrary testimony would contravene copyright law barring implied retroactive licenses.

**I.     Unambiguous Contracts and Testimony Establish Uploaders Have No License**

Federal Rules of Evidence 402 and 403 exclude irrelevant or unduly prejudicial evidence. When a contract is "unambiguous on its face," extrinsic testimony is "irrelevant."  *Nat'l Repertory Theatre Found. v. Ford Theatre Soc'y*, 468 F.2d 868, 871 n.8 (D.C. Cir. 1972); *accord McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454, 457 (9th Cir. 1999) (excluding testimony where contract was "not ambiguous").  Here, the PLA unambiguously states ███████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████ (Ex. 1—Suk Dep. 146:6–12; *see also id.* 145:3–8 (no license to users)).  Defendants similarly conceded that "YouTube does not contend that the TOS license fully immunizes its users from infringement" in response to Plaintiffs' argument that users' infringing uploads to the platform would make the platform secondarily liable.  [ECF 173 at 8 n.4.]  Given this, contrary evidence would be irrelevant or confuse the jury about the legal effect of unambiguous contractual language.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    No Admissible Evidence Establishes Licenses for YouTube Uploaders

Because Defendants' Rule 26 disclosures identified no witnesses with knowledge of any other content licensing agreement other than the PLA, they cannot present witnesses with knowledge of those licenses at trial.  Rule 37(c) excludes testimony from any witness not disclosed as required under Rule 26(a) & (e).  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).  Defendants' disclosures identified only two persons with knowledge of "YouTube's contract licensing agreements"—Joanne Suk and Alex Holz.  (*See* Ex. 2—Amended Disclosures of Defendants at 2.)  Testimony on YouTube's content licenses from other witnesses must be excluded.

Ms. Suk and Mr. Holz also must be excluded from testifying about any license other than the PLA.  Federal Rule of Evidence 602 requires that a witness have "personal knowledge of the matter" about which they testify.  ████████████████████████████████████████

████████████████████ (Ex. 1—Suk Dep. 50:15–51:12 ("The SRAV and the CIMA . . . ? I don't have, like, firsthand knowledge . . . I can't definitively answer that question."), 87:24–88:4, 90:18–91:1, 97:21–25, 98:24–99:7, 109:16–17.) ████████████████████████

████████████████████████████ (*See id.* 19:24–23:4.[1])

## III.    Retroactive Licenses Have No Basis in Copyright Law

Even if YouTube were to attempt to elicit testimony that YouTube's contracts permit users to upload copyrighted material, such testimony must be barred because it contravenes the law.  In *Davis v. Bilge*, 505 F.3d 90 (2d Cir. 2007), the Second Circuit "h[e]ld that a license or assignment in copyright can only act prospectively."  *Id.* at 104.  The *Davis* court carefully distinguished a license, which looks forward, from a settlement, which looks backward.  A retroactive license defies common sense because it "would—if given legal effect—erase the unauthorized use from

---

[1] The errata establish that the transcript erroneously spelled Holz as Hoedt (Ex. 1—Suk Dep. errata); *see also* https://www.youtube.com/watch?v=gAdlkvpRAOQ (Alex Holz discussing his role at YouTube negotiating rights with songwriters and music publishers).

1  history.  *Id.* at 103 (cleaned up).  Of course, past infringement may be excused via settlement.  But

2  that does not mean that the infringement never occurred.  *Id.*[2]

3       So even if a Content ID user's monetization of an infringement creates a license between a

4  copyright owner and a YouTube user, that license does not erase the original infringement

5  occurring when a user first uploads an unauthorized use of the work.  17 U.S.C. § 106(1) (owner

6  has exclusive right "to reproduce the copyrighted work"); *Bell v. Wilmott Storage Servs., LLC*, 12

7  F.4th 1065, 1080 (9th Cir. 2021) ("Yet nowhere in the Act's numerous and detailed provisions is

8  there any exception for the de minimis use of a concededly infringing work, *i.e.*, for a 'technical

9  violation.'"); 2 Nimmer on Copyright § 8.02 (2023) ("One who makes infringing copies . . .

10  infringes the copyright owner's reproduction right under Section 106(1), even if he does not also

11  infringe the Section 106(3) distribution right . . . ."). The unauthorized upload necessarily

12  precedes YouTube's use of technology to match the upload to the reference file as well as any

13  monetization.  So while monetization may *excuse* or *compensate* the uploader's past infringement,

14  it cannot erase from history the infringement that already occurred.  Copyright law does not create

15  a wrinkle in the time-space continuum allowing YouTube to travel back and undo the user's

16  original infringement.

17                              **CONCLUSION**

18       The admissible evidence and relevant law all establish that YouTube's agreements do not

19  grant upload licenses to YouTube's users.  Plaintiffs thus respectfully request that the Court

20  preclude any arguments and exclude all evidence to the contrary.

21

22

23

24

25

26

---

27  [2] Despite attempts to limit this holding to copyrights involving more than one co-owner, Judge
   Rakoff convincingly showed that its logic and policy justifications apply to all copyrights.
28  *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 576–79 (S.D.N.Y. 2016).

1   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
    DAN JACKSON - # 216091
3   djackson@keker.com
    JULIA L. ALLEN - # 286097
4   jallen@keker.com
    TRAVIS SILVA - # 295856
5   tsilva@keker.com
    ANNA PORTO - # 319903
6   aporto@keker.com
    LUKE APFELD - # 327029
7   lapfeld@keker.com
    AMOS J. B. ESPELAND - # 332895
8   aespeland@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
10  Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

11  Attorneys for Defendants and Counterclaimants
    YOUTUBE, LLC and GOOGLE LLC

12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16  MARIA SCHNEIDER, UNIGLOBE
    ENTERTAINMENT, LLC, and AST
17  PUBLISHING, LTD., individually and on
    behalf of all others similarly situated,
18
                Plaintiffs,
19
        v.
20
    YOUTUBE, LLC and GOOGLE LLC,
21
                Defendants.
22

    YOUTUBE, LLC and GOOGLE LLC,
23
                Counterclaimants,
24
        v.
25
    PIRATE MONITOR LTD., PIRATE
    MONITOR LLC, and GÁBOR CSUPÓ,
26
                Counterclaim Defendants.
27

28

Case No. 3:20-cv-04423-JD

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION IN LIMINE NO.
3 TO EXCLUDE EVIDENCE THAT
CERTAIN YOUTUBE CONTRACTS
PERMIT USERS TO UPLOAD
COPYRIGHTED MATERIAL WITHOUT
AUTHORIZATION**

Date:       May 25, 2023
Time:       1:30 p.m.
Dept.:      Courtroom 11 – 19th Floor
Judge:      Hon. James Donato

Date Filed: July 2, 2020

Trial Date: June 12, 2023

1   Plaintiffs' Motion in Limine No. 3 ("Motion") comprises three motions for summary

2   judgment masquerading as a single motion *in limine*.  Defendants Google and YouTube

3   ("YouTube") invest substantial effort in obtaining licenses to copyrighted material—including the

4   Works in Suit— and will raise license defenses at trial.  The Motion seeks to pretermit

5   YouTube's arguments about the scope of those licenses and adopt Plaintiffs' constructions.  That

6   would amount to an improper grant of summary judgment and should be denied.

7   In Part I of the Motion, Plaintiffs argue that YouTube's "agreements do not grant licenses

8   to users."  Mot. at 1:12.  Plaintiffs paint with too broad a brush.  The Motion targets "arguments

9   and . . . evidence that YouTube's agreements and policies grant licenses to YouTube uploaders

10  whose videos contain copyrighted works without authorization."  Mot. at ii.  But Plaintiffs neither

11  specify the universe of "agreements and policies" they seek to exclude, nor explain how their

12  arguments about unambiguous language justify excluding "policies," which are presumably not

13  contracts.  Because "motions *in limine* should rarely seek to exclude broad categories of

14  evidence," the Court should deny the motion given that the request is overbroad.  *Colton Crane*

15  *Co. v. Terex Cranes Wilmington, Inc.*, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010).

16  Plaintiffs' arguments concerning specific contracts also fail.  They argue that the

17  Publishing License Agreement (PLA) is unambiguous, and they seek to preclude YouTube from

18  challenging Plaintiffs' construction of the contract language.  But contract interpretation is an

19  issue for summary judgment, not a motion *in limine*, and this Court's Standing Order is clear that

20  "[m]otions in limine . . . are not substitutes for summary judgment or other dispositive

21  motions."  Standing Order for Civ. Jury Trials ¶ 6.  Further, Plaintiffs' sloppy handling of the

22  evidence highlights why the parties must be able to present evidence about relevant contracts to

23  the jury.  In arguing that the PLA is "unambiguous," Plaintiffs rely on the ***wrong contract***,

24  pointing to an agreement that is not at issue in this case.  Mot. at 1 (citing § 2.5 of the PLA

25  submitted with the Motion and Ms. Suk's related deposition testimony). Indeed, the version of the

26  agreement that the parties actually signed omits the language that Plaintiffs rely upon to construe

27

28

1  the contract's supposedly unambiguous meaning.[1] This inability of Plaintiffs' even to identify the

2  evidence they want the Court to exclude, demonstrating the unwieldy nature of the Motion.[2]

3         Part II of the Motion makes an entirely different argument predicated on FRCP

4  37.  Plaintiffs seek to prevent two Google witnesses from testifying about "license[s] other than

5  the PLA."  Mot. at 2.  First, this manufactured disclosure attack targets evidence distinct from the

6  first argument in the Motion, thus contravening the Court's requirement that a motion should

7  address "a single specific evidentiary issue."  Standing Order at ¶ 5.  In any event, there is no

8  reason that either Ms. Suk or Mr. Holz should be precluded from testifying about licenses.

9         Ms. Suk and Mr. Holz were timely disclosed as witnesses about "YouTube's contract

10 licensing agreements."  Plaintiffs concede that Ms. Suk can testify about the PLA but want to

11 preclude her from testifying about other contracts.  Her testimony provides no such basis.  While

12 Ms. Suk testified that her knowledge about certain *specific* other licensing agreements was "much

13 more limited" than her knowledge of the PLA, that does not mean she must be completely

14 prevented from testifying about any license beyond the PLA.  Ex. 3B (Suk Dep. at 109:16-

15 17).  Simply put, Plaintiffs never established the extent of Ms. Suk's knowledge about all

16 licenses.  However,  they are certainly able to explore those topics at trial.

17        Plaintiffs have no basis to speculate about the extent of his personal knowledge. Instead,

18 Plaintiffs rely on their mischaracterization of Ms. Suk's testimony that Mr. Holz is not

19 knowledgeable about other licenses.  But Ms. Suk never opined on the extent of Ms. Holz's

20 knowledge; the cited testimony simply notes that Ms. Suk and Mr. Holz spoke in advance of her

21

22

23 [1] Modern Works Publishing, acting on Ms. Schneider's behalf, licensed her works to Defendants
   in a PLA in 2014.  That version omits the language about users' rights that Plaintiffs cite.  *See*

24 Mot. at 1:21; *compare* Silva Opp'n. Decl., Ex. 3A (Modern Works PLA) at § 2(c) *with* Waldron
   Decl., Ex. 5 § 2.5.  And, testifying in 2022, Ms. Suk spoke about the then-current PLA.  Ex. 3B

25 (Suk Dep. at 125:1-2. Exhibit citations in YouTube's oppositions to Plaintiffs' motions in limine
   refer to exhibits to the Decl. of Travis Silva in Supp. Opp'ns to Pls' MIL ("Silva Opp'n. Decl.").

26 [2] The Motion also references the YouTube Terms of Service (TOS).  Even if the TOS license
   does not cover user uploads, Defendants cannot be held secondarily liable for the upload because

27 Defendants have neither knowledge of the infringement nor the right or ability to control it at the
   time of upload.  *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829-30 (9th Cir. 2019). Further,

28 disputes about a license's scope can be appropriate for jury resolution.  E.g., Crispin v. Christian
   Audigier, Inc., 839 F. Supp. 2d 1086, 1094 (C.D. Cal. 2011).

deposition, but in no way establishes Mr. Holz's knowledge about licenses.  And even if Ms. Suk had addressed that subject, her testimony would be hearsay as to Mr. Holz.

Fundamentally, Plaintiffs' arguments are cross-examination arguments, not preclusion arguments.  If Plaintiffs come to believe that Ms. Suk or Mr. Holz testify outside of their personal knowledge at trial, they can ask questions on those subjects or attempt to impeach them.  But scant deposition testimony is not a basis for precluding a witness before they take the stand.

Finally, Part III of the Motion is yet another mini-MSJ on yet another evidentiary topic.  It seeks to bar testimony that "YouTube's contracts permit users to upload copyrighted material" because such testimony "contravenes the law" against retroactive licenses.  For this broad proposition, Plaintiffs cite *Davis v. Bilge*, 505 F.3d 90 (2d Cir. 2007).  That case involved a copyright co-owner's effort to grant a retroactive license to protect a third party against an infringement claim brought by the copyright's co-owner. *Id.* at 101. Rejecting that effort, the court limited its holding to a co-ownership scenario, which is distinguishable from this case. *Id.* at 104.  Indeed, the *Davis* court specifically noted that "[n]one of what we say above should be read as preventing an owner and an infringer from settling infringement claims among themselves." *Id.*  Plaintiffs can identify no case law to support their retroactivity argument.

Again, Plaintiffs leave the Court to guess the specific evidence they seek to exclude.  But, this is likely a back-door effort to preclude YouTube from noting that certain YouTube licenses, including the Modern Works PLA, contain a broad covenant not to sue YouTube *or its users* for their use on the service of a copyrighted work covered by the PLA.  *See* Ex. 3A  at ¶ 10(e).  This covenant is akin to a license.  *Innovus Prime, LLC v. Panasonic Corp.*, 2013 WL 3354390, at *5 (N.D. Cal. July 2, 2013) ("Under federal law, there is no substantive difference between an unconditional covenant not to sue and a non-exclusive license.").  YouTube is entitled to present—and the jury is entitled to hear—evidence of these licenses.

On the eve of trial, Plaintiffs plainly wish they had moved for summary judgment on certain contractual interpretation issues.  But they didn't, and this Court's Standing Order prohibits them from raising these three distinct arguments in the abbreviated motion *in limine* procedure.  The Motion must be denied.

1

Respectfully submitted,

2

Dated:  May 5, 2023

KEKER, VAN NEST & PETERS LLP

3

4

By:    /s/ Robert A. Van Nest
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

5

6

7

8

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
          lwhite@wsgr.com

9

10

11

12

13

14

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1  George A. Zelcs*
   *gzelcs@koreintillery.com*
2  Randall P. Ewing, Jr.*
   *rewing@koreintillery.com*
3  Ryan Z. Cortazar *
   *rcortazar@koreintillery.com*
4  **KOREIN TILLERY, LLC**
   205 North Michigan, Suite 1950
5  Chicago, IL  60601
   Telephone: (312) 641-9750
6  Facsimile: (312) 641-9751

7  Stephen M. Tillery*
   *stillery@koreintillery.com*
8  Steven M. Berezney, CA Bar #329923
   *sberezney@koreintillery.com*
9  Carol O'Keefe*
   *cokeefe@koreintillery.com*
10 **KOREIN TILLERY, LLC**
   505 North 7th Street, Suite 3600
11 St. Louis, MO  63101
   Telephone: (314) 241-4844
12 Facsimile: (314) 241-3525

13 *Admitted *pro hac vice*

14 *Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
*pkorologos@bsfllp.com*
Joanna Wright*
*jwright@bsfllp.com*
Jeffrey Waldron*
*jwaldron@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

15              **UNITED STATES DISTRICT COURT**

16        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

17 | MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated, | Case No. 3:20-cv-04423-JD |

**PLAINTIFFS' MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE RELATED TO AN UNSUCCESSFUL TAKEDOWN NOTICE SUBMITTED BY UNIGLOBE ENTERTAINMENT, LLC FOR A WORK NOT AT ISSUE**

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants.

Date:     May 25, 2023
Time:    1:30 p.m.
Dept.:    11
Judge:   Hon. James Donato

1     TO ALL PARTIES AND COUNSEL OF RECORD:

2          Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard,

3     in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4     Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court

5     to exclude evidence related to an unsuccessful takedown notice submitted by Uniglobe

6     Entertainment, LLC for a work not at issue.

7

8                                           Respectfully submitted,

9

10    Dated:  April 27, 2023                 /s/ Philip Korologos
                                             Philip C. Korologos*
11                                           pkorologos@bsfllp.com
                                             Joanna Wright*
12                                           jwright@bsfllp.com
                                             Jeffrey Waldron*
13                                           jwaldron@bsfllp.com
                                             BOIES SCHILLER FLEXNER LLP
14                                           55 Hudson Yards, 20th Floor
                                             New York, NY 10001
15                                           Telephone: (212) 446-2300
                                             Facsimile: (212) 446-2350
16
17                                           Joshua Irwin Schiller, CA Bar #330653
                                             jischiller@bsfllp.com
18                                           BOIES SCHILLER FLEXNER LLP
                                             44 Montgomery St., 41st Floor
19                                           San Francisco, CA 94104
                                             Telephone: (415) 293-6800
20                                           Facsimile: (415) 293-6899
21
22                                           George A. Zelcs*
                                             gzelcs@koreintillery.com
23                                           Randall P. Ewing, Jr.*
                                             rewing@koreintillery.com
24                                           Ryan Z. Cortazar*
                                             rcortazar@koreintillery.com
25                                           KOREIN TILLERY, LLC
                                             205 North Michigan, Suite 1950
26                                           Chicago, IL 60601
                                             Telephone: (312) 641-9750
27                                           Facsimile: (312) 641-9751
28

ii

Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION IN LIMINE NO. 4

1

**ISSUE TO BE DECIDED**

2

Whether the Court should exclude evidence related to an unsuccessful takedown notice

3

submitted by Uniglobe Entertainment, LLC ("Uniglobe") for a work not at issue.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

On October 19, 2020, Nayomi Cooper sent a takedown notice to YouTube for a documentary film owned by Uniglobe, *America's Forgotten*.  (Ex. 4—10/19/20 Copyright Infringement Notification Confirmation.)  As the takedown notice makes clear, the video itself—a version of a 20th Century Fox film trailer—did not infringe *America's Forgotten*.  (*See id.*)  Rather, the video appeared in a search for *America's Forgotten,* and the takedown notice specified that the video landing page included "[l]inks to allegedly infringing downloads."  (*Id.*)  In other words, the takedown notice was submitted because the YouTube video landing page included a link to an infringing version of *America's Forgotten*.  (*See* Ex. 1—Cooper Dep. 317:6–25.)

*America's Forgotten* has never been part of this case.  Regardless, Defendants may attempt to rely on this takedown notice and the associated video file as evidence that a takedown notice was submitted by Ms. Cooper against a video that did not contain a copy of Uniglobe's work. That is improper.

**ARGUMENT**

The Court should exclude the *America's Forgotten* takedown notice and associated video file for two reasons: (1) the evidence is irrelevant since it relates to a work not at issue, *see* Fed. R. Evid. 402; and (2) even if relevant, any probative value is substantially outweighed by a danger of misleading the jury, *see* Fed. R. Evid. 403.

**I.      The evidence is irrelevant.**

Irrelevant evidence is inadmissible.  Fed. R. Evid. 402.  *America's Forgotten* was not mentioned in Plaintiffs' First Amended Complaint [ECF 99], nor was it listed on Plaintiffs' February 25, 2022, final list of infringements.[1]  Accordingly, it is not part of this case.  [*See* Summary Judgment Order, ECF 222 at 4 n.1 ("copyrighted works not identified in the FAC or infringements identified after the February 25, 2022, deadline will not be considered").]

---

[1] The February 25, 2022 final list of infringements inadvertently included the URL https://www.youtube.com/watch?v=YXWFYPk11GM as associated with *5 Weddings*.  (*See* Ex. 5—List of Infringements No. 153.)  However, that URL was actually associated with the takedown notice for *America's Forgotten* at issue in this motion, as Defendants' records confirm. (*See* Ex. 3—partial removal following successful Takedown Notice.)  Accordingly, Plaintiffs are no longer pursuing an infringement claim related to that URL.

1  Further, the takedown notice was rejected by YouTube.  Plaintiffs' case is largely built on

2  *successful* takedown notices—*i.e.*, where an infringing video was removed by YouTube as the

3  result of the takedown notice.  [*See* First Amended Complaint, ECF 99 ¶¶ 13, 78, 79, 81;

4  Plaintiffs' Mot. for Class Certification, ECF 245 at 3–4 (defining each class to include successful

5  takedown notice).  But the takedown notice at issue here was *unsuccessful*—as Defendants'

6  documents establish. ██████████████████████████████████████

7  ████████████████████

8  Further, Defendants repeatedly took the position in discovery that unsuccessful takedown

9  notices are irrelevant.  (*See* Ex. 2—Obj. to RFPs ¶¶ 12, 13 (objecting to definition of

10  "Unsuccessful Takedown Notice" and "Unsuccessful Takedown Notice Video" in part because it

11  seeks information "not relevant to the parties' claims or defenses");*id.* No. 35 (refusing to produce

12  any "Unsuccessful Takedown Notice Videos" in part because they are "not relevant to any party's

13  claim or defense"), *id.* No. 36 (refusing to produce any information related to "Unsuccessful

14  Takedown Notice Videos" in part because they are "not relevant to any party's claim or defense").)

15  Defendants cannot assert that certain documents are irrelevant for purposes of discovery and then,

16  when their interests change, reverse course and claim the documents are relevant for trial.  *See*

17  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position

18  in a legal proceeding, [. . .] he may not thereafter, simply because his interests have changed,

19  assume a contrary position[.]").

20  At bottom, the evidence at issue here—*i.e.*, an unsuccessful takedown notice and video

21  related to a work not at issue—is irrelevant and thus inadmissible.  *Leegin Creative Leather*

22  *Products, Inc. v. Belts by Nadim, Inc.*, 316 Fed. Appx. 573, 575 (9th Cir. 2009) (affirming district

23  court's exclusion of evidence of copyrights not at issue under Rules 401 and 403).

24  ## II.    The evidence would confuse or mislead the jury.

25  Even relevant evidence may be excluded "if its probative value is substantially outweighed

26  by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

27  jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid.

28  403.  Defendants' motivation for seeking to introduce this evidence is clear: to tell the jury that

Ms. Cooper sent in a takedown notice for a video that does not contain Uniglobe's copyrighted work.  To rebut this claim (and rehabilitate Ms. Cooper's credibility), Plaintiffs would need to submit evidence that (i) links to download infringing videos are often pasted in the comments or descriptions on YouTube video landing pages; (ii) these links navigate a YouTube user to a third-party site to download or view an infringing version of a video; (iii) where a copyright owner finds an infringing link on a YouTube landing page, the only way to request removal is to submit a takedown notice; and (iv) when Ms. Cooper found a link to an infringing version of *America's Forgotten*, she submitted a takedown notice that accurately stated that YouTube's landing page included links to infringing downloads (*see* Ex. 4—10/19/2020 confirmation email from the YouTube Copyright team to Uniglobe Entertainment.)

This evidence would detour the trial into a mini-trial about a work not at issue, the prevalence of links to infringing content on YouTube's landing pages, and Ms. Cooper's good faith reason for submitting a takedown notice for a video that did not contain Uniglobe's copyrighted work.  Rule 403 is intended to prevent such a diversion.  *See Leegin*, 316 Fed. Appx. at 575; *Apple Inc. v. Samsung Elecs. Co.*, 2018 WL 1586276, at *22 (N.D. Cal. Apr. 2, 2018) (excluding expert survey evidence under Rule 403 where survey evidence was "not sufficiently tied to the facts in this case" and would "potentially mislead the jury").

## CONCLUSION

Plaintiffs respectfully request that the Court preclude any arguments and exclude all evidence related to *America's Forgotten*, including any takedown notices submitted related to *America's Forgotten* and videos subject to those takedown notices.

1

2   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
3   rvannest@keker.com
    DAN JACKSON - # 216091
    djackson@keker.com
4   JULIA L. ALLEN - # 286097
    jallen@keker.com
5   TRAVIS SILVA - # 295856
    tsilva@keker.com
6   ANNA PORTO - # 319903
    aporto@keker.com
    LUKE APFELD - # 327029
7   lapfeld@keker.com
    AMOS J. B. ESPELAND - # 332895
8   aespeland@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:   415 391 5400
10  Facsimile:   415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

11  Attorneys for Defendants and Counterclaimants
    YOUTUBE, LLC and GOOGLE LLC

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15                      SAN FRANCISCO DIVISION

16  MARIA SCHNEIDER, UNIGLOBE              Case No. 3:20-cv-04423-JD
    ENTERTAINMENT, LLC, and AST
17  PUBLISHING, LTD., individually and on   **DEFENDANTS' OPPOSITION TO
    behalf of all others similarly situated,   PLAINTIFFS' MOTION IN LIMINE NO.
18                                          4 TO EXCLUDE EVIDENCE RELATED
                Plaintiffs,                 TO AN UNSUCCESSFUL TAKEDOWN
19                                          NOTICE SUBMITTED BY UNIGLOBE
          v.                                ENTERTAINMENT, LLC FOR A WORK
20                                          NOT AT ISSUE**
    YOUTUBE, LLC and GOOGLE LLC,
21                                          Date:      May 25, 2023
                Defendants.                 Time:      1:30 p.m.
22                                          Dept.:     Courtroom 11 – 19th Floor
    YOUTUBE, LLC and GOOGLE LLC,            Judge:     Hon. James Donato
23
                Counterclaimants,           Date Filed: July 2, 2020
24
          v.                                Trial Date: June 12, 2023
25
    PIRATE MONITOR LTD., PIRATE
26  MONITOR LLC, and GÁBOR CSUPÓ,

                Counterclaim Defendants.
27

28

Plaintiffs' Motion in Limine No. 4 ("Motion") seeks to exclude a video that Uniglobe has claimed for over a year infringes its work and for which Uniglobe submitted a takedown notice.  This video is relevant for rebutting (1) Plaintiffs' argument that YouTube is liable for indirect infringement because it did not grant Plaintiffs access to its Content ID technology to police infringement, and (2) Plaintiffs' expected testimony about damages.  Fed. R. Evid. 401.

Plaintiffs seek to exclude a 20-second video clip of the familiar 20th Century Fox fanfare sequence that precedes many motion pictures ("Fox Clip").[1]  Nayomi Cooper, Uniglobe's President, made an unsuccessful takedown request for the Fox Clip.  Mot. at 2; Decl. of Jeffrey Waldron in Supp. of Pls' MIL No. 4 ("Waldron Decl."), Ex. 4.  Plaintiffs alleged and have maintained in this case since at least February 1, 2022, that the Fox Clip infringed 5 Weddings, which Uniglobe claims to own.  Decl. of Travis Silva in Supp. of Opp'ns. to Pls' MIL ("Silva Opp'n. Decl."), Ex. 4A (Pls.' 2/1/22 Preliminary List of Infringements) at 15, No. 153; *see also* Waldron Decl. Ex. 5 (Pls.' 2/25/22 Final List of Infringements) at 22, No. 153.  Nearly two months after YouTube identified the absurdity of Plaintiffs' allegation in its Opposition to Plaintiffs' Motion for Class Certification (*see* Dkt. 268 at 9), Plaintiffs effectively retracted their claim as "inadvertent[]" through this motion.  Mot.  at 1 n.1.

First, Uniglobe's error rebuts Plaintiffs' argument that YouTube is liable for indirect infringement because it did not share Content ID with Plaintiffs.  Innocent or not, Uniglobe's error is relevant evidence rebutting its claims.  To establish that YouTube is vicariously liable for infringing videos on its service, Plaintiffs must establish that YouTube "had the practical and technical ability to identify or screen out infringing material, but did not do so."  Dkt. 222 at 3.  Plaintiffs' central argument to meet its burden is that YouTube could have prevented the infringement by granting Plaintiffs access to YouTube's powerful Content ID technology to police infringement.  *See* Dkt. 99 ¶¶ 2–3, 9–11, 55–58; Dkt. 243-01 at 1–2.

Uniglobe's confusion about whether the Fox Clip infringed its work is powerful evidence why access to Content ID is limited to partners with a demonstrated need and the capacity to manage the complex technology.  Uniglobe maintained for over a year (and with the assistance of

[1] YouTube Video ID YXWFYPk11GM.

1  sophisticated counsel) that a 20-second clip of the 20th Century Fox fanfare infringed its movie-

2  length screenplay for *5 Weddings*.  Uniglobe only now admits that it was mistaken.  Mot. at 1

3  n.1.  But that mistake is highly probative.  If Uniglobe had been granted authority to submit a

4  Content ID claim for the Fox Clip, Ms. Cooper could have blocked ***every single 20th Century Fox***

5  ***movie*** on YouTube, leaving YouTube and other rightsholders with the burden of untangling

6  disputes between untold parties over an untold number of videos.  This is a perfect illustration of

7  why YouTube grants Content ID only to entities that invest in employing and training dedicated

8  professionals to use the system.  The fact that an individual copyright owner, even one

9  represented by counsel, cannot recognize which videos infringe its works, and which videos do

10  not, further underscores the complexity of administering digital copyrights and undermines

11  Plaintiffs' argument that YouTube has the practical ability to identify and remove each and every

12  infringement from its service.

13        Second, Uniglobe's erroneous representation is relevant to rebut Uniglobe's expected

14  testimony about damages.  Plaintiffs presently assert that they intend to present hundreds of

15  alleged infringements at trial.  It is implausible that Plaintiffs can establish infringement for that

16  volume of videos (totaling roughly 250 hours of content) on a video-by-video basis within the

17  bounds of the time limits that will be imposed by the Court.  Consequently, Defendants anticipate

18  that, if Uniglobe establishes that at least one video infringed its work, Uniglobe will suggest that

19  many other videos infringe and seek a large damages award through witness testimony suggesting

20  the actual number of infringing videos is much larger than the number of videos the jury had time

21  to compare with Plaintiffs' work.[2]  Indeed, Ms. Cooper testified at her deposition that "there was

22  a time when there were infringements literally by the minute."  Silva Opp'n. Decl., Ex. 4B

23  (Cooper 6/30/22 Depo) at 163:608.  YouTube is entitled to confront any trial witness who claims

24  that numerous videos on YouTube infringe the witness's work with evidence that the same

25  witness has made mistakes about whether a particular video infringed his or her work.

26        Finally, Plaintiffs argue that if Uniglobe's faulty takedown for the Fox Clip was

27

28  [2] Such testimony would be improper and YouTube reserves the right to object to such testimony
   at trial.  *See, e.g.*, Fed. R. Evid. 602.

2135799

introduced into evidence, then Plaintiffs would be forced to take the trial on a "diversion" to "rehabilitate Ms. Cooper's credibility." Mot. at 3.  Fine.  Whether Uniglobe's president had a "good faith reason for submitting a takedown notice" (*id.*) each time she did so is relevant for assessing Uniglobe's argument that YouTube is liable because it failed to give Uniglobe access to Content ID to police infringements.

YouTube respectfully request that the Court deny Plaintiffs' Motion.

Respectfully submitted,

Dated:  May 5, 2023                                KEKER, VAN NEST & PETERS LLP

By:    /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
              lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING THE PRESENCE OF COPYRIGHT MANAGEMENT INFORMATION ADDED BY USERS AFTER VIDEOS ARE UPLOADED TO THE YOUTUBE PLATFORM**<br><br>Date:      May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     11<br>Judge:    Hon. James Donato |

1     TO ALL PARTIES AND COUNSEL OF RECORD:

2        Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard,

3   in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4   Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court

5   to exclude any testimony or evidence regarding the presence of copyright management

6   information added by users after videos are uploaded to the YouTube platform.

7

8                      Respectfully submitted,

9

10  Dated:  April 27, 2023            /s/ *Philip Korologos*

                              Philip C. Korologos*

11                       *pkorologos@bsfllp.com*

                       Joanna Wright*

12                       *jwright@bsfllp.com*

                       Jeffrey Waldron*

13                       *jwaldron@bsfllp.com*

14                       BOIES SCHILLER FLEXNER LLP

                       55 Hudson Yards, 20th Floor

15                       New York, NY 10001

                       Telephone: (212) 446-2300

16                       Facsimile: (212) 446-2350

17

18                       Joshua Irwin Schiller, CA Bar #330653

                       *jischiller@bsfllp.com*

19                       BOIES SCHILLER FLEXNER LLP

                       44 Montgomery St., 41st Floor

20                       San Francisco, CA 94104

                       Telephone: (415) 293-6800

21                       Facsimile: (415) 293-6899

22                       George A. Zelcs*

                       *gzelcs@koreintillery.com*

23                       Randall P. Ewing, Jr.*

                       *rewing@koreintillery.com*

24                       Ryan Z. Cortazar*

                       *rcortazar@koreintillery.com*

25                       KOREIN TILLERY, LLC

                       205 North Michigan, Suite 1950

26                       Chicago, IL 60601

                       Telephone: (312) 641-9750

27                       Facsimile: (312) 641-9751

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Case No. 3:20-cv-04423-JD

PLAINTIFFS' MOTION IN LIMINE NO. 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE TO BE DECIDED**

Whether pursuant Paragraph 6 of the Standing Order for Civil Discovery, and Federal Rule of Evidence 403, the Court should exclude evidence or testimony regarding the presence of copyright management information added by users after videos are uploaded to the YouTube platform.

**INTRODUCTION**

YouTube strips all CLFN metadata associated with videos uploaded to the platform by users.  Plaintiffs maintain that removing CLFN metadata that contains copyright management information ("CMI") from uploaded videos violates 17 U.S.C. § 1202(b), which prohibits the intentional removal of CMI "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of" copyright-protected works.

YouTube permits users to manually add metadata, including CMI ("CMI metadata"), to videos during the upload process, and this user-provided metadata is used to power the YouTube search bar.  In discovery, Plaintiffs sought documents to show whether users add CMI metadata to *all* videos that had CMI metadata removed during the upload process.  Because Defendants refused to produce that information, they should be precluded from introducing evidence to show that users add CMI metadata to *isolated* videos during upload.

**ARGUMENT**

Plaintiffs anticipate that Defendants will argue at trial that YouTube users independently added, to the video landing page, the CMI contained in removed CLFN metadata, and that the CMI therefore remained on the platform after YouTube stripped that CLFN metadata.  Defendants might introduce this evidence in an attempt to negate *scienter* under 17 U.S.C. § 1202(b), or to persuade the jury that metadata stripping is not harmful to plaintiffs.

**I.      Paragraph 6 of the Standing Order for Civil Jury Trials**

Defendants should be precluded from introducing evidence that users manually added CLFN metadata to videos files after upload because YouTube refused to produce this information in discovery.  Paragraph 6 of Your Honor's Standing Order for Civil Discovery provides, "Except for good cause, no item shall be received as case-in-chief evidence if the proponent failed to produce it in response to a reasonable and proper discovery request covering the item, regardless of whether the other party moved to compel production."  Throughout discovery, Plaintiffs sought evidence regarding the presence of CMI added by users.  In Request for Production No. 55(b), Plaintiffs sought "Documents sufficient to show the following information Concerning each CMI Video: . . . the metadata included with each video (Including before and after each video was

uploaded) and whether that metadata was supplied by the User or You."  (Ex. 1—Plaintiffs' First Set of RFPs No. 55.)  For the purposes of this request for production, "CMI Video" was defined as "a video containing CMI at the time the User initiated the upload of the video to Your platform." (*Id.* ¶ 6.)  For purposes of trial, Plaintiffs focus on videos containing CLFN metadata fields that are populated with CMI.

Defendants refused to produce this evidence, despite repeated offers from Plaintiffs to narrow the request to (a) a sample of videos containing only CLFN fields, as opposed to CMI generally (Ex. 2—6/10/2022 Letter from C. O'Keefe to M. Rees at 2); (b) a 120-day random sample of "any video whose original metadata at the time of upload has a populated CLFN field" (Ex. 3—7/12/2022 Letter from C. O'Keefe to L. White at 4); and (c) a 60-day sample "where videos uploaded on those days would be screened for populated CLFN fields" (Ex. 4—7/20/2022 Letter from C. O'Keefe to L. White at 3).  These samples would have allowed Plaintiffs to determine whether the CMI contained in CLFN metadata in fact remained on the platform after YouTube removed it, and the *frequency* with which the CMI remained on the platform.  Yet Defendants rejected these attempts at compromise.

Then, in response to the Court's order on Plaintiffs' motion to compel [ECF 165], Defendants produced a sample of videos subject to takedown notices that contained CLFN metadata at the time of upload.  As Plaintiffs explained to Defendants before the production of this sample and in a subsequent letter brief, this sample provides no evidence with respect to the presence of user-added metadata across YouTube as a whole.  [ECF 199 at 2.]  A dataset drawn from takedown notices necessarily includes only those videos that copyright holders could find— due to the presence of CMI metadata provided by the uploader—and thus overstates the frequency with which users add CMI metadata.  It provides no actual insight into user practices with respect to CMI metadata across YouTube.

Plaintiffs properly sought evidence showing the universe of videos uploaded to YouTube that contained CMI metadata "before and after each video was uploaded" and "whether that metadata was supplied by the User or [YouTube]."  (Ex. 1—Plaintiffs' First Set of RFPs No. 55; *id.* ¶ 6.)  Because Defendants refused to produce that information, the Court should exclude any

1   evidence that users manually add CMI metadata to videos after upload whether introduced to

2   negate *scienter*, to show lack of harm to Plaintiffs, or for any other purpose.

3   **II.      Federal Rule of Evidence 403**

4          Introduction of evidence drawn from takedown notice videos would also mislead the jury

5   with respect to the frequency with which users associate metadata to videos uploaded to YouTube.

6   Federal Rule of Evidence 403 permits the Court to exclude evidence where "its probative value is

7   substantially outweighed by a danger of . . . misleading the jury."  Any probative value of this data

8   is based on the fallacious assumption that the presence of CMI metadata in videos subject to

9   takedown notices informs the presence of CMI metadata in videos across YouTube.  Courts

10  exclude evidence where its probative value is based on an unjustified assumption regarding the

11  issue it seeks to inform, and would therefore risk misleading the jury.  *See Apple Inc. v. Samsung*

12  *Elecs. Co.*, 2018 WL 1586276, at *22–23 (N.D. Cal. Apr. 2, 2018) (excluding expert survey

13  evidence under Rule 403 where survey evidence was "not sufficiently tied to the facts in this case"

14  and would "potentially mislead the jury").  Since CLFN metadata helps copyright claimants find

15  infringing videos, evidence from a sample of videos that copyright claimants found and submitted

16  takedown notices for will mislead the jury regarding the frequency with which videos contain that

17  metadata—and may lead the jury to mistakenly conclude that YouTube reasonably relies on users

18  to add CMI metadata after the platform removes it.  This risk substantially outweighs any

19  probative value of the evidence.

20                                  **CONCLUSION**

21         Plaintiffs repeatedly sought evidence that would have allowed Plaintiffs (and YouTube) to

22  show the extent to which users manually add CMI metadata to videos after YouTube removes it.

23  YouTube refused to provide that evidence.  It should accordingly be precluded from introducing

24  evidence that users add CMI metadata to videos after upload for purposes of negating *scienter*,

25  showing lack of harm to Plaintiffs, or for any other purpose.

26

27

28

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
          lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 5 RE CMI DATA**<br><br>Date:      May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato<br><br>Date Filed: July 2, 2020 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | Trial Date:  June 12, 2023 |

1    Plaintiffs' Motion in Limine No. 5 ("Motion") must be denied.  Defendants Google and

2    YouTube ("YouTube") fully complied with the Court's order on the discovery request at issue.

3    Indeed, they went beyond the Court's order by producing more metadata than they were

4    compelled to do.  Plaintiffs' Rule 403 argument boils down to "please exclude the evidence that is

5    potentially fatal to my case from trial."  Neither Rule 37 nor Rule 403 provides a basis for

6    granting the motion.

7    The Motion should be denied if this case proceeds as an individual action.  Maria

8    Schneider is the only plaintiff asserting a Section 1202 claim.  Her claim relates to nine videos

9    and their associated CLFN metadata.  YouTube has already shown that the same supposedly

10    removed CMI (here, song titles) was included by the uploaders in the video's public title on

11    YouTube. Dkt. 173-1 ¶¶7-8.  The Court concluded that the retention and display of this

12    information creates a fact issue over whether CMI was ever "removed." Dkt. 222 at 21.

13    If this case proceeds as an individual action, there is no basis for granting this motion

14    because there is no dispute that YouTube produced all CLFN data associated with Ms.

15    Schneider's alleged infringements.  *See* Dkt. 172 at 16.  Neither Rule 37 nor this Court's Standing

16    Order provides a basis for exclusion.  Even more, YouTube has produced information regarding

17    how the nine CLFN videos were displayed on YouTube. Dkt. 173-1 ¶¶7-8; Dkt. 173-4.  Even

18    crediting *arguendo* Plaintiffs' misguided arguments about "a sample of videos," *see* Mot. at 3, the

19    fact that evidence is available about all nine videos disposes of any possible Rule 403 issue with

20    respect to Ms. Schneider individually.

21    Even if this case proceeds as a class action, the Motion should be denied.  Plaintiffs seek

22    to prevent YouTube from presenting evidence, as to anyone besides Ms. Schneider, that alleged

23    CMI was actually retained and presented with videos on YouTube.  But there is no Rule 37 or

24    Rule 403 for this request in the class context, either.

25    *First*, YouTube made relevant information available in discovery.  In terms of witnesses,

26    in response to discovery on Schneider's CMI claim, YouTube explained that: "As part of the

27    video-upload process, the user uploading the video may enter data about the video into text fields

28    provided by YouTube that are used to identify and describe the video," and "[t]his entered

metadata is generally available to viewers." Dkt. 164-29 at 6.  YouTube's timely response plainly put Plaintiffs on notice that alleged CMI is generally available to viewers.  Plaintiffs neither deposed the employee who verified the response, nor sought related testimony from a corporate designee.

*Second*, Plaintiffs' overbroad discovery demands, which YouTube objected to, cannot be the basis for the relief they seek.  Plaintiffs demanded "[a]ll videos that contained CMI" at the time of upload along with "the metadata included with each video." Waldron Ex. 1 at 24. YouTube objected because compliance would have required assessment of the metadata for each of the billions of videos on YouTube and—putting that massive burden aside—YouTube would not know whether any particular metadata constitutes CMI.  *Harrington v. Pinterest, Inc.*, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) ("metadata and CMI are not synonymous").

After meet-and-confer, Plaintiffs ultimately dropped their demand for the metadata of every video on YouTube.  Instead, they asked the Court to compel YouTube to produce a sampling of the requested data, specifically, to "screen a 60 day sampling of uploaded video files and provide the related CLFN metadata and the infringing URL," claiming that was what their expert needed. Dkt. 156 at 3.  The Court narrowed Plaintiffs' request, ordering production of the "requested" metadata only for a sample "of 30 days."  Dkt. 165. YouTube compiled with that Order and then some, ultimately producing CLFN metadata for a 90-day sample of allegedly infringing videos—***the metadata from over 1.7 million videos***.  Decl. of Travis Silva in Supp. of Opp'ns. to Pls' MIL Ex. 5 at 4.

Now seeking preclusion, Plaintiffs argue that YouTube should have produced more and that the sample should not have been taken from "videos subject to takedown notices" (Mot. at 2). But they received precisely the sample their motion to compel sought and that the Court ordered. See Dkt. 156 at 3 (seeking production of "the related CLFN metadata and the infringing URL" (emphasis added)); Dkt. 165.  If Plaintiffs wanted a different sample, they could have requested it; but they cannot use a motion *in limine* as a belated (and improper) request to reconsider the Court's Order.  *See* Civil L.R. 7-9.  More fundamentally, this Court's Standing Order on Civil Discovery, paragraph 6, provides that "[e]xcept for good cause, no item shall be received as case-

in-chief evidence if the proponent failed to produce it in response to a ***reasonable and proper discovery request*** covering the item, regardless of whether the other party moved to compel production." (emphasis added). The Court's prior order established the metes and bounds of reasonableness in this context, and YouTube more than satisfied it.

Nor does Plaintiffs' alternative argument seeking exclusion under Rule 403 have merit. Plaintiffs argue the "sample" of metadata taken from videos subject to takedown notices "will mislead the jury regarding the frequency with which videos contain that metadata …. across YouTube" as a whole. Mot. at 2-3. But the sample size is substantial; containing metadata for over 1.7 million videos. And, moreover, Plaintiffs' and their expert have had access to it for months. Plaintiffs are welcome to use cross examination to highlight for the jury any perceived limitations in the sample that they specifically sought and received. *See Pac. Nw. Solar, LLC v. Nw. Corp.*, 2023 WL 2945314, at *1 (9th Cir. Apr. 14, 2023) (reversing based on erroneous exclusion under Rule 403). But they are not entitled to prevent YouTube from discussing the fatal deficiencies to the class's claim evidenced by the data.

Respectfully submitted,

Dated:  May 5, 2023

KEKER, VAN NEST & PETERS LLP

By:   /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:   dkramer@wsgr.com
         lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

MARIA SCHNEIDER, UNIGLOBE
ENTERTAINMENT, LLC, and AST
PUBLISHING, LTD., individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

YOUTUBE, LLC and GOOGLE LLC,

Defendants.

Case No. 3:20-cv-04423-JD

**PLAINTIFFS' MOTION IN LIMINE NO. 6 TO EXCLUDE TESTIMONY AND EVIDENCE THAT A PLAINTIFF TRANSFERRED AN EXCLUSIVE RIGHT IN A WORK**

Date:    May 25, 2023
Time:    1:30 p.m.
Dept.:   11
Judge:   Hon. James Donato

1    TO ALL PARTIES AND COUNSEL OF RECORD:

2    Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard,

3    in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4    Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court

5    to exclude testimony and evidence that a Plaintiff transferred or licensed an exclusive right in a

6    work absent a showing that the Plaintiff failed to retain any exclusive right or beneficial ownership

7    interest supporting the Plaintiff's infringement claim, or an intention to show based on the transfer

8    or license that the copy was an authorized use.

9

10

11                                      Respectfully submitted,

12

13   Dated:  April 27, 2023                  /s/ Philip Korologos
                                             Philip C. Korologos*
14                                           pkorologos@bsfllp.com
                                             Joanna Wright*
15                                           jwright@bsfllp.com
                                             Jeffrey Waldron*
16                                           jwaldron@bsfllp.com
                                             BOIES SCHILLER FLEXNER LLP
17                                           55 Hudson Yards, 20th Floor
                                             New York, NY 10001
18                                           Telephone: (212) 446-2300
                                             Facsimile: (212) 446-2350
19
                                             Joshua Irwin Schiller, CA Bar #330653
20                                           jischiller@bsfllp.com
                                             BOIES SCHILLER FLEXNER LLP
21                                           44 Montgomery St., 41st Floor
                                             San Francisco, CA 94104
22                                           Telephone: (415) 293-6800
                                             Facsimile: (415) 293-6899
23
                                             George A. Zelcs*
24                                           gzelcs@koreintillery.com
                                             Randall P. Ewing, Jr.*
25                                           rewing@koreintillery.com
                                             Ryan Z. Cortazar*
26                                           rcortazar@koreintillery.com
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

PLAINTIFFS' MOTION IN LIMINE NO. 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE TO BE DECIDED**

Whether pursuant to Federal Rules of Evidence 104(b), 401 and 403 the Court should exclude evidence that a Plaintiff transferred an exclusive right in a work absent a showing that the Plaintiff failed to retain any exclusive right or beneficial ownership interest supporting the Plaintiff's infringement claim, or an intention to show based on the transfer or license that the copy was an authorized use.

1

## INTRODUCTION

2

To prove their infringement claims, Plaintiffs will have to establish ownership of exclusive

3

rights that were infringed.  Defendants may seek to dispute ownership by introducing evidence

4

that Plaintiffs transferred or licensed exclusive rights in their works to others.  But a transfer or

5

license of exclusive rights does not preclude a plaintiff from bringing an infringement claim

6

unless: (1) it covered the work at issue; (2) there was a transfer of all rights claimed to be

7

infringed; *and* (3) the plaintiff failed to retain a beneficial interest in the rights asserted.

8

Separately, a transfer or license of exclusive rights may be relevant to show that the copy at issue

9

in the infringement claim was authorized.  Evidence presented to suggest that a Plaintiff

10

transferred or licensed exclusive rights outside of the above situations should be excluded as

11

irrelevant to Plaintiffs' infringement claims and because it would only confuse the issues, mislead

12

the jury, and waste time at trial.

13

## ARGUMENT

14

To own a copyright is to own or co-own one or more exclusive rights in a given work.  *See*

15

17 U.S.C. § 106 (listing exclusive rights).  A person who owns exclusive rights in a work has

16

standing to sue both for copies of the work itself and for unauthorized copies of derivative works

17

that copy the underlying work (e.g., an owner of a screenplay copyright can sue for unauthorized

18

copies of the finished movie).  *See DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015).

19

A copyright owner may transfer any one of these exclusive rights to another party "in

20

whole or in part."  17 U.S.C. § 201(d)(1).  When a copyright owner transfers or licenses some

21

exclusive rights but not others, they can still sue for the infringement of the exclusive rights

22

retained.  *See Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, 284 F. Supp. 3d 1160, 1167-68

23

(D. Or. 2018) (explaining that a copyright owner who transfers an exclusive right "will still have

24

standing to sue as the legal owner of the rights that were not transferred").

25

In addition, even where a copyright owner has previously transferred or licensed all of the

26

exclusive rights at issue, that copyright owner retains standing under the Copyright Act to bring

27

claims for infringement of those exclusive rights so long as the owner retains a beneficial

28

ownership interest in those rights.  *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an

1

1    exclusive right under a copyright is entitled . . . to institute an action for any infringement of that

2    particular right committed while he or she is the owner of it.").  One way copyright owners retain

3    a beneficial ownership interest is by retaining a percentage of royalties.  *See DRK Photo v.*

4    *McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) ("The classic

5    example of a beneficial owner is an author who has parted with legal title to the copyright in

6    exchange for percentage royalties based on sales or license fees." (cleaned up)); *see also First Am.*

7    *Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, 2020 WL 5898973, at *7 (C.D. Cal. July 2,

8    2020).

9    **I.    Relevance**

10    For the reasons outlined above, a plaintiff's transfer or license of particular exclusive rights

11    is not relevant to a plaintiff's right to bring claims for infringement of that work unless (1) it

12    covered the work at issue; (2) it covered ***all*** the exclusive rights at issue; and (3) the plaintiff failed

13    to retain any sort of beneficial interest in the exclusive rights.  Outside of those situations, a

14    transfer's or license's relevance is limited solely to whether the person uploading the video was

15    personally granted a license covering that upload.

16    Uniglobe, for instance, owns a registered copyright in the *5 Weddings* screenplay, and

17    unregistered copyrights in the English and Hindi language motion pictures.  Transfers, licenses, or

18    distribution agreements concerning the motion picture can only impact Uniglobe's screenplay

19    infringement claims if the person uploading the alleged infringing videos personally received a

20    license.  And where Uniglobe brings a claim based on infringement of the copyright of the *motion*

21    *picture*, transfers of rights or license agreements are irrelevant so long as Uniglobe retained legal

22    title or beneficial ownership through a continued right to proceeds from exploitation of the movie.

23    (*See, e.g.*, Ex. 1—Vision Films Distribution Agreement signed by Nayomi Cooper.)

24    The relevance of evidence of an exclusive rights transfer or license is thus conditional on

25    Defendants' intention and ability to show that the Plaintiff transferred all exclusive rights

26    supporting the infringement claim and failed to retain any beneficial ownership interests in those

27    exclusive rights, or Defendants' intention to show that the transfer or license authorized the copy

28    at issue.  The Court "may admit the proposed evidence [of exclusive rights transfers] on the

condition that th[is] proof . . . be introduced later[,]" Fed. R. Evid. 104(b); otherwise, the Court should exclude evidence that Plaintiffs transferred or licensed certain exclusive rights in their works as irrelevant to Plaintiffs' infringement claims.  *See* Fed. R. Evid. 401.

## II.    Prejudice

Outside of the scenarios outlined above, the probative value of evidence that a Plaintiff transferred a given exclusive right will be outweighed by the danger of confusing the issues, misleading the jury, and wasting time.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: . . . confusing the issues, misleading the jury, undue delay, wasting time . . . .").  As explained above, evidence that a Plaintiff transferred or licensed certain exclusive rights is, in the vast majority of circumstances, not probative of the Plaintiff's infringement claims.  Walking through the various transfers of exclusive rights—each of Uniglobe's transfers of theatrical release rights, for instance—would thus be a waste of time.

Introducing this evidence is also likely to confuse the issues and mislead the jury.  A jury hearing evidence that a Plaintiff transferred "exclusive rights" in a work is liable to mistakenly conclude that the Plaintiff wholly abandoned an ownership interest in the work, or is not the proper plaintiff to be bringing infringement claims.  This risk of jury confusion is particularly high where a Plaintiff is bringing multiple infringement claims.  *See Disorderly Kids, LLC v. Fam. Dollar Stores, Inc.,* 2015 WL 11117073, at *3 (C.D. Cal. Dec. 17, 2015) (acknowledging that "a jury may have difficulty separating argument" regarding distinct copyrights and testimony could "confuse the issues and mislead the jury").  Evidence of exclusive rights transfers where it is not probative of Plaintiffs' right to bring infringement claims, or authorization of copies at issue, is liable to confuse the issues, mislead the jury, and waste time. It should be excluded here.

## CONCLUSION

Plaintiffs respectfully request that the Court exclude testimony and evidence that a Plaintiff transferred or licensed an exclusive right in a work absent a showing that the Plaintiff failed to retain any exclusive right or beneficial ownership interest supporting the Plaintiff's infringement claim, or an intention to show based on the transfer or license that the copy was an authorized use.

1   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
    DAN JACKSON - # 216091
3   djackson@keker.com
    JULIA L. ALLEN - # 286097
4   jallen@keker.com
    TRAVIS SILVA - # 295856
5   tsilva@keker.com
    ANNA PORTO - # 319903
6   aporto@keker.com
    LUKE APFELD - # 327029
7   lapfeld@keker.com
    AMOS J. B. ESPELAND - # 332895
8   aespeland@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
10  Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

11  Attorneys for Defendants and Counterclaimants
    YOUTUBE, LLC and GOOGLE LLC
12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                  SAN FRANCISCO DIVISION

16  MARIA SCHNEIDER, UNIGLOBE
    ENTERTAINMENT, LLC, and AST
17  PUBLISHING, LTD., individually and on
    behalf of all others similarly situated,
18
                Plaintiffs,
19
         v.
20
    YOUTUBE, LLC and GOOGLE LLC,
21
                Defendants.
22
    YOUTUBE, LLC and GOOGLE LLC,
23
                Counterclaimants,
24
         v.
25
    PIRATE MONITOR LTD., PIRATE
26  MONITOR LLC, and GÁBOR CSUPÓ,
27
                Counterclaim Defendants.
28

Case No. 3:20-cv-04423-JD

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 6 TO EXCLUDE TESTIMONY AND EVIDENCE THAT A PLAINTIFF TRANSFERRED AN EXCLUSIVE RIGHT IN A WORK**

Date:       May 25, 2023
Time:       1:30 p.m.
Dept.:      Courtroom 11 – 19th Floor
Judge:      Hon. James Donato

Date Filed:  July 2, 2020

Trial Date:  June 12, 2023

1    Plaintiffs' Motion in Limine No. 6 ("Motion") "to exclude testimony and evidence that a

2    Plaintiff transferred an exclusive right in a work" is a blatant violation of this Court's Standing

3    Order that motions in limine must identify "*specific* evidentiary issue[s]" and "*are not substitutes*

4    *for summary judgment* or other dispositive motions." Standing Order for Civil Jury Trials at 2:25,

5    3:7 (emphases added).  It should be denied on that basis alone.  Even more, the Motion would

6    have been meritless even if it had been properly presented as a motion for partial summary

7    judgment, because this Court's order regarding summary judgment as to Maria Schneider held

8    that elements of Defendants Google and YouTube's (YouTube's) license defenses must be

9    resolved by a jury.  Dkt. 222.  Plaintiffs' Motion would exclude wide swathes of evidence related

10   to those disputes and YouTube's licenses more generally.  The Court should deny Plaintiffs'

11   improper effort to obtain summary judgment of the multiple license defenses in the case.

12        Without identifying any "*specific* evidentiary issue," Standing Order at 2:25 (emphasis

13   added), Plaintiffs broadly seek to limit evidence regarding licenses or transfers except insofar as it

14   satisfies Plaintiffs' misstatement of the elements of YouTube's license defenses.  This broad

15   sweep would exclude evidence that easily meets the Rule 401 requirements.  Plaintiffs confuse

16   the question of whether Plaintiffs have *standing* with the distinct question of whether YouTube

17   has valid *licenses*.  The Ninth Circuit's model instruction explains that "to show the existence of

18   an express license, the defendant has the burden of proving that the defendant received an express

19   license to copy[,] distribute[, or] use the plaintiff's copyrighted work." Ninth Cir. Model Civ. Jury

20   Instr. 17.25A Copyright—Affirmative Defense—Express License.  For example, license defenses

21   do not require license exclusivity or that the plaintiff have transferred all beneficial ownership of

22   the work, *e.g.*, *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 755 (9th Cir. 2008) (elements of

23   license by implication do not turn on beneficial ownership).  Put differently, Plaintiffs have

24   invented a relevance standard that lacks a basis in law, and excluding evidence that does not meet

25   it would prejudice YouTube's ability to put on its license defense.

26        If the evidence alluded to in Plaintiffs' motion regarding Uniglobe, for example, is

27   relevant and otherwise admissible regarding Uniglobe's burden, then Uniglobe may seek to

28   introduce that evidence at trial.  *See* Mot. at 2–3.  But Plaintiffs *cannot* preemptively limit

*YouTube's* license evidence *across the board*, without citing any *specific* evidence, in *summary-judgment* fashion, through their improper Motion, simply because, for example, Unigloble appears to retain a beneficial interest in its copyrights.  *See, e.g.*, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed").

Moreover, far from supporting Plaintiffs' motion, the case they rely on for their Rule 403 argument, *Disorderly Kids, LLC v. Fam. Dollar Stores, Inc.*, 2015 WL 11117073 (C.D. Cal. Dec. 17, 2015), confirms that Plaintiffs' motion should be denied:

> [A] motion in limine should not be used to resolve factual disputes or weigh evidence.  To exclude evidence on a motion in limine, the evidence must be clearly inadmissible on all potential grounds.  Unless evidence meets this high standard, evidentiary rulings should be deferred until trial. . . . This is because although rulings on motions in limine may save time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence.

*Id.* at *1 (citations, quotation marks, and paragraph breaks omitted).

Plaintiffs cite *Disorderly Kids* for the proposition that the risk of juror confusion regarding the license defenses here is high because Plaintiffs have brought "multiple infringement claims."  Mot. at 3:14-23.  But *Disorderly Kids* held nothing of the kind.  On the contrary, it did not address a license defense, or any other defense.  Instead, the court addressed potential juror confusion arising from testimony about "other copyright designs that are no longer at issue given the court's previous rulings." 2015 WL 11117073 at *2.  The court agreed that the *defendant's* argument about the *plaintiff* confusing and misleading the jury regarding *infringement* "has substantial merit." *Id.* at *3.  But the court held that "determinations of the relevancy and potential for jury confusion regarding plaintiff's various designs will be made at trial." *Id.*

Here, the jury will not be confused by YouTube's license defenses, and nothing in *Disorderly Kids* supports Plaintiffs' argument that they might be.  On the contrary, *Disorderly Kids* confirms that, as this Court's Standing Order makes clear, Plaintiffs' Motion should be denied for failure to identify any *specific evidence* to be excluded.  To the extent Plaintiffs can articulate specific evidentiary arguments, which they have not done in their Motion, those determinations should be "made at trial." *Id.*

2

1

2   Dated:  May 5, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP


By:   /s/ Robert A. Van Nest
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
          lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

1  George A. Zelcs*
   *gzelcs@koreintillery.com*
2  Randall P. Ewing, Jr.*
   *rewing@koreintillery.com*
3  Ryan Z. Cortazar *
   *rcortazar@koreintillery.com*
4  **KOREIN TILLERY, LLC**
   205 North Michigan, Suite 1950
5  Chicago, IL  60601
   Telephone: (312) 641-9750
6  Facsimile: (312) 641-9751
7  Stephen M. Tillery*
   *stillery@koreintillery.com*
8  Steven M. Berezney, CA Bar #329923
   *sberezney@koreintillery.com*
9  Carol O'Keefe*
   *cokeefe@koreintillery.com*
10 **KOREIN TILLERY, LLC**
   505 North 7th Street, Suite 3600
11 St. Louis, MO  63101
   Telephone: (314) 241-4844
12 Facsimile: (314) 241-3525

   Joshua Irwin Schiller, CA Bar #330653
   *jischiller@bsfllp.com*
   **BOIES SCHILLER FLEXNER LLP**
   44 Montgomery Street, 41st Floor
   San Francisco, CA  94104
   Telephone: (415) 293-6800
   Facsimile: (415) 293-6899

   Philip C. Korologos*
   *pkorologos@bsfllp.com*
   Joanna Wright*
   *jwright@bsfllp.com*
   Jeffrey Waldron*
   *jwaldron@bsfllp.com*
   **BOIES SCHILLER FLEXNER LLP**
   55 Hudson Yards, 20th Floor
   New York, NY 10001
   Telephone: (212) 446-2300
   Facsimile: (212) 446-2350

13 *Admitted *pro hac vice*

14 *Attorneys for Plaintiffs*

15 **UNITED STATES DISTRICT COURT**

16 **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

17
18 MARIA SCHNEIDER, UNIGLOBE
   ENTERTAINMENT, LLC, and AST
   PUBLISHING, LTD., individually and on
19 behalf of all others similarly situated,

20         Plaintiffs,

21     v.

22 YOUTUBE, LLC and GOOGLE LLC,

23         Defendants.

Case No. 3:20-cv-04423-JD

**PLAINTIFFS' MOTION IN LIMINE
NO. 7 TO EXCLUDE TESTIMONY
RELATED TO THE MARGINAL COST
OF ADDING ADDITIONAL
REFERENCE FILES TO THE
CONTENT ID DATABASE**

Date:      May 25, 2023
Time:      1:30 p.m.
Dept.:     11
Judge:     Hon. James Donato

24
25
26
27
28

1    TO ALL PARTIES AND COUNSEL OF RECORD:

2         Please take notice that on May 25, 2023, or as soon thereafter as the matter may be heard,

3    in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4    Avenue, San Francisco, CA 94102, the undersigned Plaintiffs will, and hereby do, move this Court

5    to exclude any testimony related to the marginal cost of adding additional reference files to the

6    Content ID database.

7
                                        Respectfully submitted,
8

9

10   Dated:  April 27, 2023                    /s/ Philip Korologos
                                        Philip C. Korologos*
11                                      pkorologos@bsfllp.com
                                        Joanna Wright*
12                                      jwright@bsfllp.com
                                        Jeffrey Waldron*
13                                      jwaldron@bsfllp.com
                                        BOIES SCHILLER FLEXNER LLP
14                                      55 Hudson Yards, 20th Floor
                                        New York, NY 10001
15                                      Telephone: (212) 446-2300
                                        Facsimile: (212) 446-2350
16

17                                      Joshua Irwin Schiller, CA Bar #330653
                                        jischiller@bsfllp.com
18                                      BOIES SCHILLER FLEXNER LLP
                                        44 Montgomery St., 41st Floor
19                                      San Francisco, CA 94104
                                        Telephone: (415) 293-6800
20                                      Facsimile: (415) 293-6899

21
                                        George A. Zelcs*
22                                      gzelcs@koreintillery.com
                                        Randall P. Ewing, Jr.*
23                                      rewing@koreintillery.com
                                        Ryan Z. Cortazar*
24                                      rcortazar@koreintillery.com
                                        KOREIN TILLERY, LLC
25                                      205 North Michigan, Suite 1950
                                        Chicago, IL 60601
26                                      Telephone: (312) 641-9750
                                        Facsimile: (312) 641-9751
27

28

                                        ii

1

2          Stephen M. Tillery*
           *stillery@koreintillery.com*
3          Steven M. Berezney, CA Bar #329923
           *sberezney@koreintillery.com*
4          Carol O'Keefe*
           *cokeefe@koreintillery.com*
5          KOREIN TILLERY, LLC
           505 North 7th Street, Suite 3600
6          St. Louis, MO 63101
           Telephone: (314) 241-4844
7          Facsimile: (314) 241-3525

8          *Admitted *pro hac vice*

9          *Attorneys for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ISSUE TO BE DECIDED**

Whether Defendants should be precluded from offering any witness testimony at trial, related to the marginal cost of adding additional reference files to the Content ID database, given that they failed to produce documentary evidence of such costs during the discovery process.

1    Plaintiffs respectfully request that the Court exclude any witness testimony offered at trial

2    by Defendants regarding the marginal cost of adding an additional reference file to the Content ID

3    database.  Reference files are digital copies of copyrighted works provided to YouTube by entities

4    with access to Content ID.  For Content ID partners, YouTube uses reference files with its

5    fingerprinting technology to detect automatically unauthorized uploads of works that correspond

6    to reference files.  YouTube does not allow smaller rights holders, like Plaintiffs, to provide

7    reference files.  During discovery, Plaintiffs requested information about the costs associated with

8    expanding the Content ID database.  Defendants produced just one document, a spreadsheet that

9    provides nothing more than generalized information about the expenses incurred by YouTube's

10   Content ID team, without detailing *any* of the information that would allow Plaintiffs to estimate

11   the costs associated with expanding the database on a file-by-file basis.  Moreover, YouTube's

12   corporate representative admitted at deposition that this spreadsheet was both "old" and

13   "inaccurate".  Nor is there anything else in the record that evidences the marginal costs of adding

14   additional reference files to the Content ID database.  Having failed to produce competent

15   evidence on this issue during the discovery period, Defendants should be precluded from offering

16   any witness testimony on this subject, the veracity of which Plaintiffs have been unable to confirm

17   during the discovery process.

18                                   **ARGUMENT**

19   **I.    Having Failed to Produce Evidence in Discovery Related to the Cost of Expanding
           the Content ID Database, Plaintiffs Should Be Precluded from Offering Testimony
20         on Such Costs at Trial.**

21        To prove contributory infringement, Plaintiffs must demonstrate direct infringement (by

22   either Defendants or a third party) and that the defendant: (a) "knew or had reason to know of the

23   infringing activity"; and (b) induced or materially contributed to the infringing activity.  *Ellison v.*

24   *Robertson*, 357 F.3d 1072, 1076–78 (9th Cir. 2004).  In the online context, "material contribution"

25   is satisfied if the defendant "has actual knowledge that specific infringing material is available

26   using its system, and *can take simple measures to prevent further damage to copyrighted works*,

27   yet continues to provide access to infringing works."  *VHT v. Zillow Grp.*, 918 F.3d 723, 745 (9th

28   Cir. 2019) (emphasis added).  During discovery, Plaintiffs sought information regarding the

operational costs of YouTube's Content ID system with the anticipation that Defendants may try to claim that providing their digital matching technology to copyright holders as a matter of course would be cost prohibitive, and therefore not a "simple measure" available to prevent further infringement.  (*See* Ex. 2—Plaintiffs RFP No. 23(e) (seeking "All documents Concerning… the cost to YouTube or Google of developing and administering the Content ID System" (emphasis added).).)

Defendants initially produced a single document: a public report titled "How Google Fights Piracy".  (Ex. 3—"How Google Fights Piracy".)  The document claimed that Defendants had spent over $100 million on the creation of their Content ID system but included no information about the operational costs of the Content ID system, let alone information regarding the marginal cost of additional reference files, or any metrics from which Plaintiffs could deduce that information.  The total cost of creating Content ID is not at issue; the issue is whether *expanding* the matching technology to people like Plaintiffs would be cost prohibitive.

Later in the discovery process, Defendants supplemented their production with a single spreadsheet containing information about the costs of operating Content ID.  (Ex. 4—Costs of Operating Spreadsheet).  At deposition, however, YouTube's corporate designee on the topic of Content ID costs, Fabio Magagna, revealed that this spreadsheet was both "old" and "inaccurate".  Magagna explained that while he thought some of the information (like "resource costs") was "definitely correct", there were "misses" with "the other numbers".  (Ex. 1—Magagna Dep. 29:22–30:16.)

Regardless, even assuming arguendo that it is competent evidence (and, in light of the Magagna testimony, it is not), the spreadsheet provides only high-level data related to the annual personnel and computing costs of administering Content ID.  It provides no information on granular operational costs and, again, is useless in determining the marginal cost of adding additional reference files to the Content ID database.  For example, the spreadsheet provides a yearly figure for total employee compensation, broken up between the product management and engineering divisions of the Content ID product team.  This figure intermingles a variety of different expenses, ranging from employee stock compensation to the respective entertainment and

travel budgets for both divisions; however, there is no information related to the number of employees or their individual salaries.  Therefore, it is impossible to determine how much the team has grown in relation to the size of the Content ID database.  Similarly, the spreadsheet provides an estimated yearly cost of "machines", but it does not define what infrastructure costs are included or specify the number of machines in question.  Without more information, Plaintiffs are unable to estimate the marginal cost of expanding the Content ID database.

Defendants should not be allowed to now offer testimony related to the costs of expanding the Content ID database.  Defendants were expressly asked for the information that spoke directly to these issues through both RFPs and 30(b)(6) examinations, yet Defendants chose to produce nothing more than a public report and an outdated spreadsheet that YouTube concedes contains numerous inaccuracies.  In any event, those documents do not provide the kind of operational information necessary to calculate marginal costs.  In the absence of competent and responsive documents, Plaintiffs were deprived the ability to investigate these issues meaningfully during discovery.  To the extent that Defendants seek to provide testimony about the contents of actual financial records in their possession, the Best Evidence Rule precludes that testimony.  *See* Fed. R. Evid. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.")

Independently, because Defendants have shirked their disclosure obligations under Rule 26 by failing to respond to requests regarding the costs of operating Content ID, they should also be precluded from offering testimony at trial on these topics under Rule 37.  *Viasphere Int'l, v. Vardanyan*, 2014 WL 12709000, at *1 (N.D. Cal. Feb. 24, 2014) (excluding documents not disclosed during discovery and related testimony); *Memry Corp. v. Kentucky Oil Tech.*, 2007 WL 4208317, at *4 (N.D. Cal. Nov. 27, 2007) ("As a general proposition, no party will be allowed to offer facts or documents that were not disclosed in discovery that go beyond information provided in discovery.").

## CONCLUSION

For the foregoing reasons, any evidence or testimony offered by Defendants regarding the marginal cost of adding additional reference files to the Content ID database should be excluded.

3

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
           lwhite@wsgr.com

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 7 RE CID MARGINAL COST**<br><br>Date:       May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:    Hon. James Donato<br><br>Date Filed:  July 2, 2020<br><br>Trial Date:  June 12, 2023 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | |

2143090

Plaintiffs seek to exclude Defendants from offering trial testimony regarding the theoretical costs of adding unidentified, hypothetical reference files to Content ID.  They contend that, in response to a generic document request, Defendants should be penalized for failing to produce unrequested evidence that would allow Plaintiffs to "estimate the costs associated with expanding the database on a file-by-file basis."  Mot. at 1-2.  That is untenable.  Plaintiffs further seek to broadly preclude Defendants from offering *any* trial testimony regarding the costs of operating Content ID based on some imaginary discovery slight.  Plaintiffs' motion ignores the evidentiary record which establishes that Defendants: (i) served a 3-page interrogatory response describing the costs of expanding access to Content ID over two years ago; (ii) produced documents showing the costs of operating the system; and (iii) presented a corporate designee to testify on the topic.  Defendants' discovery responses were more than adequate.  The Court should deny the motion.

Plaintiffs asked Defendants in an interrogatory to "[s]tate the estimated monetary cost to You if You were to make Content ID available to Plaintiffs in this Lawsuit … and all Users." Ex. 7A at 22.  Subject to a variety of well-founded objections, Defendants explained in detail why they could not reasonably calculate the cost of extending direct Content ID access (beyond the access available through intermediaries) because of unknown variables like the extent to which new users might misuse or abuse the system.  *Id.* at 22-24.  Plaintiffs also deposed at least three witnesses who testified on these issues.  *See*, *e.g.*, Ex. 7B at 116:6-118:16.

Separately, Plaintiffs sought "All documents Concerning . . . (e) the cost to YouTube of developing and administering the Content ID System."  Waldron Ex. 2, RFP No. 23(e). Defendants again asserted valid burden, overbreadth and vagueness objections. After meeting and conferring, Defendants produced a spreadsheet breaking down the annual cost of operating Content ID, from 2013 to 2020, by machine cost, network cost, and the cost of the Content ID engineering and product teams.  *See* Waldron Ex. 4.  At no point did Plaintiffs assert that this RFP sought documents showing "the marginal cost of adding an additional reference file to the Content ID database."  Mot. at 1.  And no discovery request sought that specific information.

In July 2022, Plaintiffs took a 30(b)(6) deposition seeking information about "the

2143090

resources required for YouTube to operate Content ID . . . and the implications for YouTube of expanding access . . ." Ex. 7C at 6.  But instead of asking YouTube's designee questions about that general topic, the produced costs spreadsheet, or about the detailed interrogatory response, Plaintiffs asked the witness to calculate the incremental cost of adding various amounts of reference files to Content ID on the fly.[1] Notwithstanding the discovery Defendants provided, Plaintiffs want the Court to exclude anything and everything having to do with YouTube's operational costs for Content ID because the designee could not come up with figures on the fly.[2]

Plaintiffs seem to believe that, because their requests were highly generic and they never identified what they were really after, they can now exclude any minutiae that they can shoehorn under the umbrella of those requests.  That is not how discovery works.  Defendants were not obligated to produce extremely specific evidence of hypothetical calculations in response to a general discovery request that sought documents about the cost of "developing and administering" Content ID.  *See supra* at 1.  Neither Plaintiffs' RFP nor their 30(b)(6) notice put Defendants on notice that Plaintiffs would ask specific questions about the hypothetical cost of adding reference files to Content ID.  *See id.*; Waldron Ex. 1 at 32:18-33:25.  And the parties' meet-and-confer discussions did not cover these areas either.  *See, e.g.*, Ex. 7D at 5.  Defendants cannot reasonably be expected to read Plaintiffs' mind to anticipate what tangential information

---

[1] It is unreasonable to ask YouTube's witness to calculate the hypothetical marginal cost of adding a reference or multiple references to Content ID without additional context. If Uniglobe, for example, was granted access to the system and then used it to claim and block videos containing the 20th Century Fox intro logo (which it claimed as infringing through counsel), the "cost" to YouTube and others would be tremendous. Countless users, including Fox itself, would be unable to display and earn money from content they have every right to share. And YouTube would have to spend significant sums digging out from under Uniglobe's misuse of the system. By contrast, if AST uploaded a reference of some obscure Russian audiobook that never appeared in a video on the service, the cost of adding that reference would be minimal.

[2] Plaintiffs also argue that Defendants' spreadsheet should be excluded because it contained "numerous inaccuracies." Mot. at 2-3. Not so. YouTube's designee testified that, while there may have been "a few misses" in the spreadsheet, "the resource costs there are definitely correct." Waldron Ex. 1 at 30:6-16. Regardless, any inaccuracy goes to weight, not admissibility. *See, e.g.*, *Guidetech, Inc. v. Brilliant Instruments, Inc.*, 2014 WL 12643007, at *1 (N.D. Cal. Mar. 25, 2014) (denying motion in limine to exclude testimony because "any inconsistencies [in the testimony] go to its weight, not to its relevance and reliability). Plaintiffs cite no authority warranting exclusion in these circumstances.

they actually sought by their requests.  *See, e.g.*, *Tubbs v. Sacramento Cnty. Jail*, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (absent request "for facts related to a specific factual assertion," party need not "lay[] out every jot and tittle of [its] evidentiary case").  Defendants produced what they were asked for—a spreadsheet showing operational costs by category and by year, and a designee ready to answer questions about the spreadsheet.  That was ample.

But Plaintiffs don't stop there.  They go on to ask the Court to broadly preclude Defendants from offering *any* testimony "regarding the costs of operating Content ID."  Mot. at 3. That is frivolous.  "Orders in limine which exclude broad categories of evidence should rarely be employed," (*Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)), especially here, where Defendants produced the evidence Plaintiffs reasonably sought.  For example, in addition to a detailed spreadsheet and deposition testimony from a corporate designee, Defendants' provided a thoughtful interrogatory response explaining that "[w]hile the monetary costs of [expanding] access could easily run into the many millions if not billions of dollars" due to the cost-prohibitive nature and the infeasibility of manual oversight, the intangible harm resulting from the potential for rampant abuse "would mean the end of YouTube as a viable service."  Ex. 7A at 24.  That Plaintiffs sought hyper-detailed speculation does not impact Defendants' ability to introduce evidence related to a general subject for which they provided extensive written, documentary and testimonial evidence.

In short, Plaintiffs sought and obtained extensive evidence from Defendants on the costs of operating Content ID.  Their Rule 37 cases discussing discovery misconduct have no application in this context.  And their motion should be denied.

Respectfully submitted,

Dated:  May 5, 2023                                   KEKER, VAN NEST & PETERS LLP

By:  /s/ *Robert A. Van Nest*

1

ROBERT A. VAN NEST
DAN JACKSON

2

JULIA L. ALLEN
TRAVIS SILVA

3

ANNA PORTO
LUKE APFELD

4

AMOS J. B. ESPELAND

5

DAVID H. KRAMER
LAUREN GALLO WHITE

6

WILSON SONSINI GOODRICH &
ROSATI

7

Professional Corporation

8

650 Page Mill Road
Palo Alto, CA 94304-1050

9

Telephone: (650) 493-9300
Email:  dkramer@wsgr.com

10

          lwhite@wsgr.com

11

Attorneys for Defendants and
Counterclaimants

12

YOUTUBE, LLC and GOOGLE LLC

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

George A. Zelcs*
gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe*
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
pkorologos@bsfllp.com
Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**COUNTERCLAIM DEFENDANTS' MOTION IN LIMINE NO. 8 TO EXCLUDE TESTIMONY OR EVIDENCE CONTESTING FACTS CONCEDED DURING SUMMARY JUDGMENT**<br><br>Date:      May 25, 2023<br>Time:      1:30 p.m.<br>Dept.:      11<br>Judge:     Hon. James Donato |

1    TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2          Please take notice that on May 25, 2023 or as soon thereafter as the matter may be heard,

3    in the Courtroom of the Honorable James Donato, Courtroom 11, 19th Floor, 450 Golden Gate

4    Avenue, San Francisco, CA 94102, Pirate Monitor Ltd. and Gabor Csupo will, and hereby do,

5    move this Court to exclude testimony or evidence contesting facts conceded by Defendants in

6    their opposition to Pirate Monitor Ltd. and Mr. Csupo's Motion for Summary Judgment.

7
                                    Respectfully submitted,
8

9

10   Dated:  April 27, 2023                  /s/ Randall P. Ewing
                                             George A. Zelcs*
11                                           gzelcs@koreintillery.com
                                             Randall P. Ewing, Jr.*
12                                           rewing@koreintillery.com
                                             Ryan Z. Cortazar*
13                                           rcortazar@koreintillery.com
                                             KOREIN TILLERY, LLC
14                                           205 North Michigan, Suite 1950
                                             Chicago, IL 60601
15                                           Telephone: (312) 641-9750
                                             Facsimile: (312) 641-9751
16

17                                           Stephen M. Tillery*
                                             stillery@koreintillery.com
18                                           Steven M. Berezney, CA Bar #329923
                                             sberezney@koreintillery.com
19                                           Carol O'Keefe*
                                             cokeefe@koreintillery.com
20                                           KOREIN TILLERY, LLC
                                             505 North 7th Street, Suite 3600
21                                           St. Louis, MO 63101
                                             Telephone: (314) 241-4844
22                                           Facsimile: (314) 241-3525

23

24

25

26

27                                           Philip C. Korologos*
                                             pkorologos@bsfllp.com
28

                                     ii

Joanna Wright*
jwright@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899


*Admitted *pro hac vice*

*Attorneys for Plaintiffs*

COUNTERCLAIM DEFENDANTS' MOTION IN LIMINE NO. 8

1

**ISSUE TO BE DECIDED**

2          Whether Defendants should be precluded from introducing testimony or evidence

3    contesting facts that Defendants admitted in response to Pirate Monitor Ltd. and Mr. Csupo's

4    motion for summary judgment.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2

On March 3, 2023, Pirate Monitor Ltd. and Gabor Csupo moved for summary judgment.

3

[ECF No. 260.]  In their opposition [ECF No. 296, "Opp."], Defendants admitted a number of

4

facts, including:

5

    1.  Pirate Monitor LLC is a non-existent entity.  (Opp. at 4.)

6

    2.  MegaFilm kft. ("MegaFilm") contracted with IPLLC to enforce its rights in certain films.

7

        (Opp. at 3.)

8

    3.  MegaFilm authorized IPLLC to delegate authority, and IPLLC did in fact delegate

9

        authority to Mr. Holman, Mr. Khan, and others. (Opp. at 3, 6.)

10

    4.  Mr. Khan "uploaded a total of 1,975 clips in four batches between August and November

11

        2019".  (Opp. at 5.)

12

    5.  The upload of the 1,975 video clips was authorized.[1] (Opp. at 9–10.)

13

    6.  The submission of takedown notices "was up to Holman and his team". (Opp. at 3.)

14

    7.  After submission of the 1,975 inaccurate takedown notices at issue, a "new" company,

15

        Pirate Monitor Ltd., was enlisted to protect MegaFilm's works.  (Opp. at 8.)

16

    8.  Mr. Csupo purchased Pirate Monitor Ltd. after submission of the 1,975 inaccurate

17

        takedown notices at issue.  (Opp. at 8.)

18

    9.  Pirate Monitor Ltd. legitimately acquired the rights to certain MegaFilm works and sued

19

        Defendants based on copyright infringement of those works, none of which were

20

        implicated in the prior "fraud". (Opp. at 8.)

21

Because Defendants admitted each of these facts, Defendants should now be precluded

22

from introducing testimony or evidence disputing them at trial.

23

24

25

---

26

[1]  Because the video clips were uploaded with authorization from the copyright owner, Defendants have abandoned their claims for breach of the terms of service and common law

27

fraud.  [Opp. at 9-10.]  That leaves Defendants' § 512(f) claim as their sole remaining counterclaim.  In any event, any common law fraud claim would be preempted by Defendants'

28

§ 512(f) claim.  [*See* ECF No. 260 at 13 (collecting cases).]

1

**ARGUMENT**

2

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in

3

maintaining that position, he may not thereafter, simply because his interests have changed,

4

assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in

5

the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). "This rule,

6

known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on

7

an argument and then relying on a contradictory argument to prevail in another phase.'" *New*

8

*Hampshire v. Maine*, 532 U.S. 742, 749 (2001). "This court invokes judicial estoppel not only to

9

prevent a party from gaining an advantage by taking inconsistent positions, but also because of

10

'general consideration[s] of the orderly administration of justice and regard for the dignity of

11

judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'"

12

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citation omitted).

13

Defendants should be estopped from asserting facts at trial that contradict the facts they

14

admitted in their summary judgment opposition. Such a sudden reversal is precisely the kind of

15

"playing fast and loose with the courts" that judicial estoppel is intended to protect against. *See*

16

*Hamilton*, 270 F.3d at 782. Not only would Defendants' approach violate the longstanding

17

principle that parties should be bound by positions taken prior in the litigation, it would also

18

confuse the jury and waste time. The counterclaims involve, among other things, complicated

19

agency (and sub-agency) relationships, veil-piercing, and even reverse veil-piercing. The

20

relevant facts may be difficult for the jury to keep straight, even more so if Defendants suddenly

21

backtrack on which facts are undisputed at trial. Any "new" facts asserted by Defendants would

22

require Pirate Monitor Ltd. and Mr. Csupo to introduce rebuttal witnesses and documents, further

23

prolonging the trial. To prevent such a sideshow, this Court should preclude Defendants from

24

offering facts contradicting the facts admitted in their summary judgment opposition. *See Braun*

25

*v. O'Brien*, 2006 WL 8458557, at *7 (E.D. Cal. Feb. 27, 2006) ("This Court PRECLUDES

26

attempts to disprove the pretrial order's undisputed facts[.]"); *Thompson v. Gomez*, 2022 WL

27

4664481, at *5 (E.D. Cal. Sept. 30, 2022) ("Defendants' motion in limine is granted and the

28

undisputed facts set forth in their pretrial statement and the Court's pretrial order are deemed

admitted."); *see also Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988) ("For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit."); *Cayne v. Washington Tr. Bank*, 2016 WL 6247023, at *6 (D. Idaho Feb. 17, 2016) (stating court "will be entering an order consistent with its authority under Rule 56(g) identifying which material facts are deemed established in this case").[2]

## CONCLUSION

For the foregoing reasons, Pirate Monitor Ltd. and Mr. Csupo respectfully request that the Court grant their motion to exclude testimony or evidence contesting the admitted facts from Defendants' opposition to summary judgment.

---

[2]  Notably, Defendants did not state that they were admitting facts for summary judgment only. *Cf. Barr v. Lab. Corp. of Am. Holdings*, 2021 WL 3856487, at *5 (S.D. Cal. Aug. 30, 2021) (noting that defendant conceded point for "sole purpose of summary judgment" and reserved right to argue otherwise "should the merits of the claim survive summary judgment").

1   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
    DAN JACKSON - # 216091
3   djackson@keker.com
    JULIA L. ALLEN - # 286097
4   jallen@keker.com
    TRAVIS SILVA - # 295856
5   tsilva@keker.com
    ANNA PORTO - # 319903
6   aporto@keker.com
    LUKE APFELD - # 327029
7   lapfeld@keker.com
    AMOS J. B. ESPELAND - # 332895
8   aespeland@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:   415 391 5400
10  Facsimile:   415 397 7188

11  Attorneys for Defendants and Counterclaimants
    YOUTUBE, LLC and GOOGLE LLC
12

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
        lwhite@wsgr.com

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16  MARIA SCHNEIDER, UNIGLOBE
    ENTERTAINMENT, LLC, and AST
17  PUBLISHING, LTD., individually and on
    behalf of all others similarly situated,
18
              Plaintiffs,
19
        v.
20
    YOUTUBE, LLC and GOOGLE LLC,
21
              Defendants.
22  _____

    YOUTUBE, LLC and GOOGLE LLC,
23
              Counterclaimants,
24
        v.
25
    PIRATE MONITOR LTD., PIRATE
26  MONITOR LLC, and GÁBOR CSUPÓ,

27            Counterclaim Defendants.

28

Case No. 3:20-cv-04423-JD

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION IN LIMINE NO.
8 RE INTERNAL CHART RE:
REACTION & RECOMMENDATION**

Date:     May 25, 2023
Time:     1:30 p.m.
Dept.:    Courtroom 11 – 19th Floor
Judge:    Hon. James Donato

Date Filed: July 2, 2020

Trial Date: June 12, 2023

1   To avoid having to prove facts (or negotiate in good faith during pre-trial), Counterclaim

2   Defendants (collectively, "Pirate Monitor") pretend that Defendants Google and YouTube

3   ("YouTube") admitted certain facts in a summary judgment opposition (Dkt. 296).  They did not.

4   Their request to establish those facts is not a proper use of a motion in limine.  Regardless, it fails

5   on the merits.

6   First, the Motion is unnecessary as to facts 1-2, 4-5, and 8.  *See* Mot. at 1 (listing "facts" at

7   issue).  YouTube has offered to stipulate to those facts in the pretrial order while reserving its

8   right to dispute them based on the delayed production from Counterclaim Defendant Gabor

9   Csupó's shell company, IPLLC.  Absent a material change to the record, YouTube will not

10   introduce evidence contesting those facts.

11   Second, YouTube did not admit the remaining "facts," which it can contest.  Even if

12   YouTube had assumed at summary judgment that Pirate Monitor's remaining "facts" were true,

13   the Motion would fail.  *See*, *e.g.*, *Chaudhry v. Angell*, 2021 WL 4461667, at *47 (E.D. Cal. Sept.

14   29, 2021) (facts "presumed for purposes of the summary judgment are not binding as stipulated

15   facts for purposes of the trial") (citation omitted).  But YouTube did no such thing.[1]  The

16   remaining "facts" mischaracterize and take out of context language from YouTube's opposition

17   to Pirate Monitor's summary judgment motion (Dkt. 296) in an apparent attempt to establish

18   "facts" that Pirate Monitor *wishes* YouTube had admitted.  A comparison of these "facts" against

19   YouTube's brief exposes the subterfuge.

20

21

22

23

24

---

25   [1] Plaintiffs do not remotely meet the standard for judicial estoppel: "(1) whether a party's position
in the later judicial proceeding is clearly inconsistent with that party's earlier position, (2)
26   whether the party persuaded the first court to accept the earlier position, so that judicial
acceptance of an inconsistent position in a later proceeding would create the perception that one
27   of the two courts was misled, and (3) whether the party seeking to assert an inconsistent position
would derive an unfair advantage or impose an unfair detriment on the opposing party if not
28   estopped." *Randle v. Crawford*, 604 F.3d 1047, 1053–54 (9th Cir. 2010). As in *Randle*, "[n]one
of these considerations supports application of judicial estoppel here." *Id.* at 1054.

| "Fact" No. 3 | Statement in YouTube's MSJ Opp. |
|---|---|
| "MegaFilm authorized IPLLC to delegate authority, and IPLLC did in fact delegate authority to Mr. Holman, Mr. Khan, and others.  (Opp. at 3, 6.)" | "With the contract in hand, it was up to Holman and his team to deliver by finding clips of MegaFilm's movies, claiming them, and collecting advertising revenue from YouTube."  Opp. at 3.<br><br>"MegaFilm authorized IPLLC to upload clips of its films and to delegate that authority to others; and IPLLC delegated the authority to Khan."  *Id.* at 6. |

"Fact" No. 3's vague language appears designed to preclude YouTube from contesting that IPLLC legally delegated any and all of the activities underlying YouTube's counterclaims to Holman, Khan, and unspecified "others." That sweeps far beyond what YouTube said in its brief and seeks to establish a contested legal conclusion.  For example, YouTube denies that IPLLC was authorized to and did delegate away its authority to send the specific DMCA takedown notices at issue.  *See* Dkt. 296 at 16 ("According to Csupó, that provision 'specially authorized' IPLLC to appoint Holman as MegaFilm's subagent so as to absolve IPLLC (and Csupó) of responsibility for Holman's wrongdoing.  *Not so.*") (citations omitted) (emphasis added).

| "Fact" No. 6 | Statement in YouTube's MSJ Opp. |
|---|---|
| "The submission of takedown notices 'was up to Holman and his team'.  (Opp. at 3.)" | "With the contract in hand, it was up to Holman and his team to deliver by finding clips of MegaFilm's movies, claiming them, and collecting advertising revenue from YouTube."  Opp. at 3. |

"Fact" No. 6 quotes language from YouTube's brief that relates to the task of "finding" and "claiming" clips of MegaFilm's movies, such as through the use of Content ID.  As YouTube explained, that process requires the claimed videos to remain on the service to generate revenue and thus would not involve the submission of DMCA takedown notices.  Dkt. 296 at 3.  YouTube *did not* admit that the separate task of submitting takedown notices "was up to Holman and his team."  To the contrary, YouTube argued a jury could (and indeed should) find that Csupó was responsible for the submission of the fraudulent notices carrying his signature.  *Id.* at 11-15.

| "Fact" No. 7 | Statement in YouTube's MSJ Opp. |
|---|---|
| "After submission of the 1,975 inaccurate takedown notices at issue, a 'new' company, Pirate Monitor Ltd., was enlisted to protect MegaFilm's works.  (Opp. at 8.)" | "The new shell company, they hoped, could pursue copyright infringement litigation using MegaFilm's works and would appear "clean" in ways that IPLLC, Csupó, Pirate Monitor LLC, Holman, and MegaFilm were not.  Of course, there was no real distinction between Csupó (dba Pirate Monitor LLC), IPLLC, and Pirate Monitor Ltd. . . ."  Opp. at 8 (citations omitted). |

"Fact" No. 7 mischaracterizes YouTube's statements in order to make Pirate Monitor Ltd. seem like a "new" entity wholly separate from IPLLC, Csupó, and Pirate Monitor LLC.  But YouTube made clear that Pirate Monitor Ltd. is a "shell company" that Csupó purchased as a vehicle to continue his scheme.  *See e.g.*, Dkt. 296 at 8.  Pirate Monitor cannot manufacture an indisputable "fact" by selectively quoting from YouTube's brief.

| "Fact" No. 9 | Statement in YouTube's MSJ Opp. |
|---|---|
| "Pirate Monitor Ltd. legitimately acquired the rights to certain MegaFilm works and sued Defendants based on copyright infringement of those works, none of which were implicated in the prior 'fraud'.  (Opp. at 8.)" | "Still, Csupó thought that Pirate Monitor Ltd. as copyright plaintiff could work.  He solicited MegaFilm for the rights needed to sue, but wanted to avoid works implicated by the prior fraud. … Csupó sent MegaFilm a request for the right to sue over three other works.  MegaFilm granted those rights shortly thereafter."  Opp. at 8-9 (citations omitted). |

"Fact" No. 9 seeks to establish a legal conclusion about Pirate Monitor Ltd.'s rights.  That is improper.  *See Nationwide Agribusiness Ins. v. George Perry & Sons, Inc.*, 338 F. Supp. 3d 1063, 1073 (E.D. Cal. 2018) ("plaintiffs ask the court to make the inferential leap to a legal conclusion, not to bind" defendant to a factual admission).  YouTube did not assert that Pirate Monitor Ltd. "legitimately acquired" any rights from MegaFilm. Beyond that, "Fact" No. 9 is vague as to what "rights" were supposedly acquired as to what "works."  And it attempts to obfuscate the fact that Pirate Monitor Ltd. originally brought claims based on one of the works implicated in the fraudulent scheme: *Csak szex es mas semmi. See* Dkt. 296 at 9 n.5.

Pirate Monitor's Motion should be denied.

3

2142979

1

2     Dated:  May 5, 2023

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

KEKER, VAN NEST & PETERS LLP


By:   /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
      lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC