# EXHIBIT 2

George A. Zelcs*
  gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
  rewing@koreintillery.com
Ryan Z. Cortazar*
  rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
  stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
  sberezney@koreintillery.com
Carol O'Keefe*
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
  jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
  pkorologos@bsfllp.com
Joanna Wright*
  jwright@bsfllp.com
Jeffrey Waldron*
  jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Defendants. | Case No. 3:20-cv-04423-JD <br><br> **DECLARATION OF JEFFREY WALDRON IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 2 TO EXCLUDE TESTIMONY OR EVIDENCE CONTESTING FACTS IN PLAINTIFFS' PROFFER OF EVIDENCE CONCERNING DMCA FACTUAL DISPUTES** <br><br> Date:      May 25, 2023 <br> Time:     1:30 p.m. <br> Dept.:    11 <br> Judge:    Hon. James Donato |

I, Jeffrey Waldron, declare as follows:

1.     I am an attorney at Boies Schiller Flexner LLP, co-counsel to Plaintiffs and putative class representatives Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing, Ltd.  I make this declaration in support of Plaintiffs' Motion in Limine No. 2 to Exclude Testimony or Evidence Contesting Facts in Plaintiffs' Proffer of Evidence Concerning DMCA Factual Disputes.  I have knowledge of the facts stated herein from my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.     Attached hereto as **Exhibit 1** is a true and correct copy of the transcript of the October 13, 2022, proceedings held in this case.


I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of April, 2023 at New York, New York.


                                                    _____*/s/ Jeffrey Waldron*_____
                                                         Jeffrey Waldron

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

My user ID and password are being used in the electronic filing of this document and, in compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

*/s/ Philip Korologos*
Philip Korologos

# EXHIBIT 1

Pages 1 - 51

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC and AST PUBLISHING LTD., individually and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| VS. | ) **NO. C 20-04423 JD** ) |
| YOUTUBE, LLC; and GOOGLE LLC, | ) ) |
| Defendants. | ) ) |
| YOUTUBE, LLC; and GOOGLE LLC, | ) ) |
| Counter-Claimants, | ) ) |
| VS. | ) ) |
| PIRATE MONITOR LTD., GABOR CSUPO, and PIRATE MONITOR LLC, | ) ) ) |
| Counter-Defendants. | ) ) |

San Francisco, California
Thursday, October 13, 2022

**TRANSCRIPT OF PROCEEDINGS**

**(APPEARANCES ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
CSR No. 7445, Official U.S. Reporter

```
 1    APPEARANCES:

 2    For Plaintiffs and Counter-Defendants:

 3                        BOIES SCHILLER FLEXNER LLP
                          55 Hudson Yards, 20th Floor
 4                        New York, New York 10001
               BY:   PHILIP C. KOROLOGOS, ATTORNEY AT LAW
 5

 6                        BOIES SCHILLER FLEXNER LLP
                          44 Montgomery Street, 41st Floor
 7                        San Francisco, California 94104
               BY:   JOSHUA I. SCHILLER, ATTORNEY AT LAW
 8

 9                        KOREIN TILLERY LLC
                          205 North Michigan Plaza, Suite 1950
10                        Chicago, Illinois 60601
               BY:   GEORGE A. ZELCS, ATTORNEY AT LAW
11

12

13    For Defendants and Counter-Claimants:
                          WILSON, SONSINI, GOODRICH & ROSATI
14                        650 Page Mill Road
                          Palo Alto, California 94304
15             BY:   DAVID H. KRAMER, ATTORNEY AT LAW
                     LAUREN GALLO WHITE, ATTORNEY AT LAW
16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| <u>**Thursday - October 13, 2022**</u> | <u>**10:11 a.m.**</u> |

P R O C E E D I N G S

---o0o---

**THE CLERK:**  Please be seated.

Calling Civil 20-4423, Schneider, et al. vs. YouTube, LLC.

Counsel, please state your appearances for the record.

**MR. KOROLOGOS:**  May I remove my mask, Your Honor?

**THE CLERK:**  Yes.

**MR. KOROLOGOS:**  Phil Korologos with Boies Schiller & Flexner for the plaintiffs.  Also with me are Mr. Zelcs and Mr. Schiller.

**MR. ZELCS:**  Good morning, Your Honor.

**MR. KRAMER:**  Hello, Your Honor.  Good morning.  Dave Kramer from Wilson Sonsini.  With me is Lauren White from my firm.  We represent the defendants, Google and YouTube.

**THE COURT:**  Okay.  All right.  Are you going to take the lead on the plaintiff side?

**MR. KOROLOGOS:**  Pardon me, Your Honor?

**THE COURT:**  You're going to take the lead on the plaintiff side, Mr. Korologos?

**MR. KOROLOGOS:**  I am.

**THE COURT:**  All right.  Let's start with -- I just want to talk about CMI -- and you can sit down for a bit -- and the contractual barriers to the copyright claim.  Let's start with that.  Okay?

1          I think your colleague has a pretty good position that

2     Ms. Schneider is out of luck in terms of infringement.

3          Looks to me like she might have a question with -- what is

4     it? -- ArtistShare, the management agency, with that Section 7

5     about "You need to ask my consent."  Your client,

6     Ms. Schneider, might have an issue with ArtistShare about that.

7     But that's not with YouTube.  They're not a party to that

8     contract.  So I'm just not seeing how that in any way affects

9     YouTube's copyright defenses.

10         **MR. KOROLOGOS:**  May I start, Your Honor?

11         **THE COURT:**  Yes, please.

12         **MR. KOROLOGOS:**  So on infringement, I think the way to

13    look for all of the questions of fact is to start with what

14    Google got.  They have a license from Modern Works called the

15    publishing license agreement.

16         **THE COURT:**  PLA, yes.

17         **MR. KOROLOGOS:**  So under the PLA, that is very limited,

18    Your Honor, and that's the end of the path that they have to

19    argue there's a license for.  That's well before you get to

20    what Section 7 does or does not do.

21         And so where we are with the license that Google receives

22    is, it's from Modern Works as a publisher to Google, but it's

23    clear that Modern Works is not Ms. Schneider's publisher.  She

24    says that.

25         **THE COURT:**  Well, but ArtistShare gave Modern Works --

1    they assigned it to Modern Works.

2       **MR. KOROLOGOS:**  Let me come to that.  That's actually the

3    second issue.  I'll jump to that, and then I'll go back to my

4    first point.

5       Modern Works, according to the defendants, got an

6    assignment from ArtistShare Music Publishing, AMP; and --

7       **THE COURT:**  I don't think it's "according to defendants."

8    I think there's a declaration from Ms. Schneider's --

9       **MR. KOROLOGOS:**  It is.

10      **THE COURT:**  -- representative --

11      **MR. KOROLOGOS:**  Let's look at that, though, Your Honor --

12      **THE COURT:**  Well, let me finish.

13      **MR. KOROLOGOS:**  -- because --

14      **THE COURT:**  There's a declaration from Ms. Schneider's

15   representative to the effect that "I assigned it."  It's not

16   just defendants saying that.  There's evidence in the record

17   that an assignment was made.

18      **MR. KOROLOGOS:**  Well, there's not evidence in the record,

19   Your Honor, that ArtistShare gave Modern Works the right to

20   license.

21      **THE COURT:**  Okay.  Let me try it this way:  I'm going to

22   assume just for today -- I'm not making these findings by any

23   stretch.  Just for our discussion today.  I'm going to make

24   your life easy -- Article 7 in the agreement between Schneider

25   and ArtistShare was a condition precedent.  They had to get

1    consent -- okay? -- before they gave a license to Google.  And

2    I'll throw in:  And ArtistShare should never have assigned the

3    contract to -- what is it?  Modern Works?  Okay.  That's fine.

4         What does that have to do with Google?  Google got a

5    license.  I mean, if anything, they're sort of an innocent

6    third party.  I mean, none of this -- you may have a great suit

7    against -- I'm not saying you do.  But you may have a great

8    suit against ArtistShare and Modern Works, and Ms. Schneider

9    can get every penny out of them that she thinks Google owes

10   because they breached the contract.  But that has nothing to do

11   with YouTube and Google.

12       **MR. KOROLOGOS:**  Respectfully, Your Honor, I think it does

13   because they either have a license or they don't.  And in order

14   to have a license, to have a defense, they have to go through

15   three steps.

16        First, they have to argue that ArtistShare had the ability

17   to grant a license and had the right to license.

18        Second, they have to establish that ArtistShare assigned

19   that right -- not a duty, but a right -- to Modern Works.

20        Third -- they still don't have a license yet --

21   Modern Works has to have licensed Google for Ms. Schneider's

22   works.

23        Modern Works licenses a lot of different things than

24   Ms. Schneider's work.  Ms. Schneider is not mentioned in the

25   PLA.  They can't establish that there's no question of fact

1   with any of those --

2       **THE COURT:**  The problem I have is, one, you did not cite

3   any cases to this effect.  We looked at them very carefully.

4       This is the situation:  You have an A and B series of

5   parties, an upstream contract between Schneider and

6   ArtistWorks [sic].  Okay?  Then you have a downstream contract

7   between ArtistWorks/MWP and Google.

8       You can go to town on the upstream contract, but that's

9   not Google.  And it's not Google's job -- when Modern Works

10  comes to them and says "We'd like to give you a license," it's

11  not Google's job to say, "Wait a minute.  Let's trace back to

12  Day 1, for each and every artist in your portfolio, your right

13  to make a license."

14      I mean, if anything, certainly the doctrine of apparent

15  authority would apply.  There's nothing in the record that

16  suggests to me that Modern Works in any way pulled the wool

17  over Google's eyes or defrauded them, misled them, gave them a

18  false impression about the scope of the licensing power they

19  had or anything else.

20      **MR. KOROLOGOS:**  Well --

21      **THE COURT:**  So it is not -- I don't agree with you.  It is

22  not Google's job to drive through three tunnels to get to the

23  answer.  It's your client's job to protect her rights.

24      **MR. KOROLOGOS:**  Well, I'm not saying that Google, in its

25  business, needed to go through those paths, but they only get

1   what they're licensed.  And the PLA --

2        **THE COURT:**  They got a license.

3        **MR. KOROLOGOS:**  Pardon me, Your Honor?

4        **THE COURT:**  They got a license.

5        **MR. KOROLOGOS:**  But not for Ms. Schneider's works.

6        The PLA says it is only -- and the defendants ignore this

7   language in their papers.  We cite it however.

8        (As read):

9             ". . . solely with respect to publisher's share

10       of rights in each publisher composition."

11       Modern Works is not a publisher.  They're not

12   Ms. Schneider's publisher.  In fact, the agreement that they

13   rely on from Section 7 has Ms. Schneider as the publisher.

14       So ArtistShare was never the publisher.  It had a right to

15   license, but ArtistShare only assigned, according to

16   Mr. Coleman, the declaration that you mentioned -- if you look

17   at paragraph 4, he does not say they assigned any rights to

18   Modern Works.  ArtistShare did not assign rights.  It only

19   assigned duties.

20       So the right to license, which is separate in the

21   administration of --

22       **THE COURT:**  You're not answering the question.  Why is

23   this Google's problem?  This is ArtistWorks and Schneider and

24   MWP.  This isn't Google's problem.

25       They had a company come to them in the normal course of

1   business and say, "Here's a license."  Google said "Great,"

2   signed it, went into business.  Why is it their problem?

3       **MR. KOROLOGOS:**  Here's why.

4       **THE COURT:**  Why is the consequence of all this that Google

5   owes Ms. Schneider a ton of money?  That's just not right.

6       **MR. KOROLOGOS:**  Here's why, Your Honor.  Ms. Schneider, at

7   most under the agreements that they rely on, had a publishing

8   administrator that was ArtistShare and then maybe Modern Works

9   for some duties.  That means Modern Works handled collections

10  and publishing administration work for Ms. Schneider.  It did

11  not have any rights to Ms. Schneider's works, which were

12  reserved for Ms. Schneider, and it did not -- Modern Works did

13  not have the right to license her work.

14      So when Modern Works grants a broad license to everything

15  that it controls, which it doesn't do, by the way, under the

16  agreement --

17      **THE COURT:**  But you still haven't answered -- there's no

18  authority for this point that you're arguing, that Google gets

19  left holding the bag.  You did not cite a single case or

20  anything in the copyright statute that says:  Okay.  Google

21  gets left writing the check.

22      There's just nothing -- I haven't found anything either.

23      **MR. KOROLOGOS:**  Well, the check comes from the

24  infringement.  Okay?  This is a defense.  It's an affirmative

25  defense of license.

 1          In order to have the affirmative defense, they have to

 2     establish there's a license.

 3          **THE COURT:**  Well, let me put it your way, then.  I don't

 4     necessarily agree with that.  Let me put it this way.

 5          **MR. KOROLOGOS:**  Yeah.

 6          **THE COURT:**  You haven't cited any authority to say this is

 7     anything other than Ms. Schneider's problem.  This is her

 8     problem to work out with her agents or her managers or whoever,

 9     her business representatives.  You've not indicated -- there's

10     nothing that I have seen in your case citations or arguments --

11     and it's too late to supplement now; you've had your day --

12     that says this is the third party's problem.  There just isn't.

13          And they had a license.  It looks good on paper, which

14     I think makes your life a lot more challenging to say it's a

15     third party's problem.

16          But anyway, who's going to take the lead for Google?

17          Okay.  Mr. Kramer.

18          **MR. KRAMER:**  Thank you, Your Honor.

19          It will not come as a stirring surprise to Your Honor that

20     we agree with your analysis.  We believe that Modern Works, as

21     Schneider's agent, granted a blanket license to her

22     compositions to Google and YouTube back in 2014.

23          **THE COURT:**  Let me ask you a question on that.  Is there

24     any evidence you know of -- this is against you; so I'm

25     expecting you to be candid, as you always have been.  But is

1   there any evidence; did Ms. Schneider ever say "I never

2   intended to give a license to Google.  I never intended to let

3   this happen"?

4        **MR. KRAMER:**  Only in connection with her declaration in

5   this action, Your Honor.  In fact, over time, Schneider

6   received royalty reports every six months that said she was

7   receiving royalties from YouTube.

8        Schneider says:  Oh, those were incomprehensible and

9   impenetrable.

10       They're not.  They're quite clear.  They identify the

11  sources of the license payments she's receiving, and YouTube is

12  listed among the others with Sirius, Pandora, and so forth.

13       **THE COURT:**  She got money from YouTube?

14       **MR. KRAMER:**  She did and hasn't given it back.

15       But the point that I think is dispositive here is that,

16  yes, YouTube got a license from Schneider's agent Modern Works

17  Publishing.  Modern Works was appointed by ArtistShare,

18  undisputedly, as a sub-publisher empowered to grant those

19  licenses that it did, and it swept for the entire catalog of

20  Schneider's works.

21       That ends the analysis as far as we're concerned.

22       **THE COURT:**  This is just for the infringement claim.  CMI,

23  I'm going to deal with differently.

24       **MR. KRAMER:**  There is an issue that the license spills

25  over to in connection with the CMI claims.

1      **THE COURT:**  We'll get to that.

2      **MR. KRAMER:**  But I'll talk about that when you are on that

3   subject, Your Honor.

4      **THE COURT:**  Okay.  All right.  Anything else to add on the

5   infringement point?

6      **MR. KRAMER:**  The only thing I would otherwise add,

7   Your Honor, is that there are 27 works, independent of the

8   license, for which Schneider has never identified any alleged

9   infringement; so separate and apart from the license.

10      In order to establish a *prima facie* case, she's got to

11   offer evidence of some alleged infringement on YouTube.  She

12   hasn't done that with respect to 27 works.  Those are

13   identified in Footnote 8 of our opening brief.

14      The Court set a deadline of February 25th for the

15   identification -- final identification of alleged infringement.

16   Schneider did not identify any alleged infringement for those

17   27 works by that date or since.  So as to those 27 --

18      **THE COURT:**  Or since?

19      **MR. KRAMER:**  Or since.  At any point.

20      **THE COURT:**  Okay.

21      **MR. KRAMER:**  So as to those 27 works, summary judgment is

22   appropriate based on a failure of the *prima facie* case,

23   irrespective of the license.

24      **THE COURT:**  All right.

25      **MR. KRAMER:**  Thank you.

1    **THE COURT:**  What about those 27 works, Mr. Korologos?

2    **MR. KOROLOGOS:**  Your Honor, with respect to the 27, there

3    are or are not.  I'm not debating what Mr. Kramer says in terms

4    of there's a number of them.  Whether it's 27 or not doesn't

5    eliminate all of the --

6    **THE COURT:**  Well, whatever is --

7    **MR. KOROLOGOS:**  -- issues --

8    **THE COURT:**  -- in Footnote 8, I guess.

9    **MR. KOROLOGOS:**  And I'm not going to -- I believe it's

10   accurate.

11   **THE COURT:**  All right.

12   **MR. KOROLOGOS:**  But with respect to Your Honor's last

13   question before Mr. Kramer spoke, I believe we do identify,

14   Your Honor, why Section 7 creates a condition.

15   First of all, Section 7 relates to --

16   **THE COURT:**  Wait.  No, no.  I don't understand your

17   answer.

18   So your colleague here said there are 27 works you never

19   disclosed.  Is that right?

20   **MR. KOROLOGOS:**  No.  There are 27 works for which we do

21   not include in our list of 389, or whatever it is,

22   infringements.  There are 27 works in suit for which I believe

23   an infringement during the period has not been identified.

24   **THE COURT:**  All right.  So you agree those are out?

25   **MR. KOROLOGOS:**  Yes, Your Honor.

1      **THE COURT:**  Okay.

2      **MR. KOROLOGOS:**  I may quibble one or two in one direction

3  or another, but --

4      **THE COURT:**  Well, the time --

5      **MR. KOROLOGOS:**  -- I believe the 27 --

6      **THE COURT:**  -- for quibbling is over.  You can't quibble

7  anymore.

8      **MR. KOROLOGOS:**  Okay.  Your Honor.

9      **THE COURT:**  You had your chance.

10     Okay.  So those are all in Footnote 8.  We all agree on

11  that; is that right?

12     **MR. KRAMER:**  Yes, Your Honor.

13     **THE COURT:**  Okay.  All right.  So Footnote 8 will be out

14  by agreement.

15     Okay.  Go ahead.  Condition precedent.

16     **MR. KOROLOGOS:**  Your Honor, with respect to the condition,

17  which is the first step in the triple step they have to take

18  for license --

19     **THE COURT:**  But remember, I'm spotting you that.  I'll buy

20  it.  You're right; it's a condition precedent.  So what?

21     So they breached -- so ArtistShare breached it with

22  respect to --

23     **MR. KOROLOGOS:**  Let me try it this way.

24     **THE COURT:**  ArtistShare --

25     **MR. KOROLOGOS:**  If there is an infringement --

1    **THE COURT:**  -- breached it with respect to Ms. Schneider.

2    So what?

3    **MR. KOROLOGOS:**  For all of the infringements that are not

4    taken out by Footnote 8, we've got an infringement claim.

5    Okay?  And we've got claims against YouTube for that.

6    They say no; there's a license.  And then, what's the

7    license?  In order to have the license, they have to say they

8    had a right to license; that the right was assigned to Modern

9    Works and then a license was granted.  They can't do any one of

10   those three.  If you consider it a condition precedent, they

11   haven't met the condition.

12   There's no question that there's no notice.  The

13   assignment is only of duties.  It's not of a license right.

14   And what is granted is only a share that Modern Works has.

15   And since Modern Works does two things with its customers,

16   it does publishing work and it does publishing administration

17   work, and Ms. Schneider only engaged in publishing

18   administration work -- she was the publisher.  The

19   administration agreement, which has Section 7 in it, identifies

20   her as the publisher.  She's the publisher.  ArtistShare is

21   the --

22   **THE COURT:**  I understand that.  But she let her manager,

23   ArtistShare, make all the licensing decisions.  They were given

24   free rein.  All they had to do was tell her.

25   Now, I'm willing, for the sake of discussion, because I

1    don't actually think it is a condition precedent.  If I'm

2    forced to decide the issue, I don't think I'm going to decide

3    it your way.  But short of that, I don't think I have to.

4        Why does it matter?  Okay.  So maybe she has a huge

5    problem with her managers.  This is not atypical in the music

6    business.  You read the Hollywood -- for reasons I won't bore

7    you with, I happen to follow the music royalty world.  I have

8    no stake in it.  I have no financial interest.  But I know

9    somebody who's near and dear to me who is sort of/kind of in

10   it.  So I follow the news in *Variety* and occasionally

11   *The Wall Street Journal*.

12       This happens all the time.  I think Taylor Swift --

13       **MR. KOROLOGOS:**  Wouldn't be the first time, Your Honor.

14       **THE COURT:**  Taylor Swift had a huge thing.  Right?

15       Okay.  Managers and musicians often don't see eye to eye

16   on the business side.  That's fine.  Has nothing to do with

17   Google.

18       Google got a document saying:  You're a licensee.

19       Now you're saying:  Oh, okay.  Well, retrospectively, we

20   have to claw that back.

21       And now infringement in millions of dollars, I'm assuming,

22   is on the table.  That's just not right.  Analytically, it's

23   suspect.  And you have not tendered a single case citation to

24   that effect.  And I don't see one, because I don't think it's

25   right.

1        **MR. KOROLOGOS:**  Let me try one last time.

2        **THE COURT:**  Sure.  Then we'll do CMI.  Yeah.

3        **MR. KOROLOGOS:**  And let's say the person who's near and

4    dear to you is a songwriter and performer and has no

5    relationship with Modern Works or ArtistShare.  Certainly, that

6    person would not be covered by the Modern Works license to

7    Google.  And therefore, Google can point to the Modern Works

8    license and say "Look, it's everything Modern Works controls or

9    owns" and make an argument that that controls your friend's or

10   your relative's works.  But if there's no relationship, it

11   certainly wouldn't cover it.

12       There's only one step difference in this situation, which

13   is that instead of having a publishing relationship with

14   Modern Works, Ms. Schneider has a publishing administrator

15   relationship with ArtistShare and then with Modern Works.  And

16   so as a result, you've got rights and duties that are laid out

17   in the administration agreement that is only a right to

18   license, not a license.  Modern Works did not have the share of

19   Ms. Schneider's rights that the license they rely on calls for

20   to be granted to them.

21       **THE COURT:**  For today's discussion, I really am not -- I'm

22   spotting you all of that.

23       You still haven't told me why that's Google's or some

24   third party's problem.

25       **MR. KOROLOGOS:**  Well --

1      **THE COURT:**  They have a license.  Now, whether that

2  license means anything, whether that license was something

3  Ms. Schneider authorized her agent to do -- I'm assuming --

4  let's just go with your way, just for discussion, and say no.

5      **MR. KOROLOGOS:**  Okay.

6      **THE COURT:**  So what?  That doesn't mean she's now entitled

7  to go after all these people for copyright infringement.  I

8  just -- you haven't told me -- haven't shown me a case that

9  says that.

10     **MR. KOROLOGOS:**  Well, Your Honor, they don't argue that

11  there's no infringement claim if there's no license.  They

12  concede that.  There's -- there's clearly infringement.

13     **THE COURT:**  I don't think anyone's arguing -- they're

14  saying, "We're a licensee; so" --

15     **MR. KOROLOGOS:**  Then they've got to establish that.

16     **THE COURT:**  -- "can't sue for infringement."

17     **MR. KOROLOGOS:**  So there's -- I don't think there's any

18  dispute that there is at least a question of fact about whether

19  there's infringement or not.  Okay?

20      Once you start with infringement, now, is it licensed or

21  is it not licensed?  That's a defense.  They have to establish

22  the defense.  So if there's no license, there's no defense.

23      If it's conditional and she didn't grant the authority to

24  do it, there's no license.  If --

25      **THE COURT:**  You haven't cited any cases to that effect.

1       **MR. KOROLOGOS:**  We have, Your Honor.

2       **THE COURT:**  None.  None.  You cited a case about a prison

3    warden and condition precedent, something like that.  There was

4    some odd New York state law case you cited.  But there's no

5    case you cited.  If I missed it, tell me right now what the

6    citation is.

7       **MR. KOROLOGOS:**  Certainly, Your Honor.  How about the *MDY*

8    case.

9       **THE COURT:**  *MDY*?

10      **MR. KOROLOGOS:**  *MDY*.

11      **THE COURT:**  That is not -- I read *MDY*.  That has nothing

12   to do -- the fact pattern here could not be more different.

13   You have two tiers; you have an upstream contract and a

14   downstream contract.  *MDY* didn't have that.

15      **MR. KOROLOGOS:**  Right.  But in order --

16      **THE COURT:**  Well, you say "right"; but that means *MDY* is

17   factually distinguishable.

18      **MR. KOROLOGOS:**  No, I don't think -- let me address that,

19   Your Honor, because maybe that's why we're not quite --

20      **THE COURT:**  No, that's not why.  It's the facts in the

21   case are adverse to your position.

22      **MR. KOROLOGOS:**  I don't think so.

23      **THE COURT:**  Go ahead.

24      **MR. KOROLOGOS:**  I don't think so, Your Honor.  Let me

25   explain why.

1    **THE COURT:**  It's not because the old judge has misread

2    *MDY*.  I can assure you of that.  But go ahead.

3    **MR. KOROLOGOS:**  I don't think Your Honor has, but I think

4    it's the question of applicability here.

5    Now, with respect to -- the reason *MDY* matters is if they

6    can't establish that the condition in the administration

7    agreement was met, then they can't establish that a license --

8    **THE COURT:**  Let me read to you --

9    **MR. KOROLOGOS:**  -- could have been granted.

10   **THE COURT:**  -- why *MDY* is not on point.

11   This is 629 F.3d 928 at page 941.  Quote (as read):

12        "We conclude that for a licensee's violation of

13        a contract to constitute copyright infringement,

14        there must be a nexus between the condition and the

15        licensor's exclusive rights of copyright."

16   Closed quote.

17   Black letter law.  Nothing surprising.  And it has nothing

18   to do with this case because there's no contract that Google

19   violated.  They did not breach the license that they got.

20   They're not a licensee in breach of a contract provision in a

21   license.  That is the upstream contract.  They are the

22   downstream contract.  They're not subject to Ms. Schneider's

23   agreements with ArtistShare.  They're not subject to Article 7

24   in the ArtistShare agreement with Ms. Schneider.  That's

25   between those two parties.  Google is not a party to that

 1  contract.  That's why *MDY* is not on point.

 2      In the rare circumstances where you've cited cases -- and

 3  there aren't many; I'll spot you this one -- they're at the

 4  same contract level.  This is different.  Google is a different

 5  level of contract.  So that's why it's not on point.  And you

 6  did not -- I'm certain of this.  Tell me if I'm wrong.  You did

 7  not show me that second level that flows from the first level

 8  for copyright liability.

 9      **MR. KOROLOGOS:**  I think we do describe that in the factual

10  section, Your Honor.

11      But the reason *MDY* matters is because with the language

12  being a condition in the first step of the linear three steps

13  they have to follow to establish a defense of a license, if

14  that's a condition, the condition was not met; and therefore,

15  the next two steps can't happen, even if they happen to be

16  right.

17      **THE COURT:**  I know that's your argument, but we're sort of

18  going around the merry pole right now.

19      **MR. KOROLOGOS:**  And let me --

20      **THE COURT:**  That's not advancing your point, just to

21  repeat it.

22      **MR. KOROLOGOS:**  Let me advance one last issue with respect

23  to *MDY*.

24      *MDY* talks about the need to interpret clauses that affect

25  licenses consistent with the federal copyright laws.  And it

1   finds, for instance -- I think it's the example Your Honor may

2   recall of the license, the hypothetical license to make one

3   copy of a book as long as you don't read the last ten pages.

4          The license path that Google has -- this is not a breach

5   of contract claim.  This is a license defense.  The license

6   path they have relies on a condition; and as a result, cases

7   like *Gardner* and *Graham* and *MDY* matter from a federal

8   standpoint, even before you get to the lack of communications

9   necessary for apparent authority, to show that they do not have

10  sufficient grounds to assert a license.

11         **THE COURT:**  Please.

12         **MR. KRAMER:**  May I, Your Honor?

13         **THE COURT:**  Yes.

14         **MR. KRAMER:**  Two very quick points.

15         The Modern Works power to grant this license is described

16  by Dan Coleman in his declaration.  It's undisputed that it was

17  appointed as the sub-publisher under Section 14 of the

18  administration agreement and stands in the shoes of ArtistShare

19  and exercises ArtistShare's rights under the administration

20  agreement.

21         The summary judgment record is replete with documents,

22  correspondence between Schneider and Modern Works in which

23  Modern Works is exercising the power to grant licenses.

24  Exhibit 5 to the Harold declaration, that's Schneider saying to

25  Modern Works "Hey, grant this license for me."  Exhibits 1 and

1   2 to the White declaration.  Exhibits 3 to 6, actually, of the

2   Harold declaration.  There are a host -- and there are 50 of

3   these in the overall case record, as my colleague's

4   declaration, Loren White's declaration on reply demonstrates.

5        So this idea that Modern Works wasn't empowered to grant

6   licenses, it finds no support in the record at all, much less

7   the summary judgment record.

8        That's all.

9        **THE COURT:**  Okay.  Let me ask you a question.  Then I'm

10  going to ask your colleague this.

11       So let's just assume -- I haven't decided yet.  Still

12  thinking about it.  But let's assume that Schneider's copyright

13  claims are dismissed.  What's the effect going to be on class

14  certification?

15       We're just talking among friends.  I'm not tying your

16  hands, not foreclosing anything.  Just, while we're here, what

17  do you think the effect will be?

18       **MR. KRAMER:**  It's a good question, Your Honor, and I think

19  the answer is, it's plain from this record and, frankly, from

20  the record that was established with respect to the former

21  plaintiff, Pirate Monitor, that there are a host of

22  individualized issues with respect to these claims of copyright

23  infringement.  Is there a license?  Is there a statute of

24  limitations?  What is your CMI?

25       **THE COURT:**  Well, just to jump in, according to your

1    colleague, at least the way I'm hearing him say it, it's not

2    just whether was there a license; was the license valid.  So

3    for each person, you're going to have to go through -- we're

4    just going to have to go back to Day One and see how the -- I

5    mean, I just --

6        **MR. KRAMER:**  That's exactly right, Your Honor.  And you're

7    starting to see why copyright cases are very poor candidates

8    for class certification.  All of the individualized issues that

9    are raised here, not just this Modern Works license.  There's

10   also the terms of service license that we talk about in our

11   papers.  There's just --

12       **THE COURT:**  Well, that's for everybody.  I mean, that's a

13   uniform --

14       **MR. KRAMER:**  No, it isn't, Your Honor.  There would be

15   plaintiffs in this class that may not have granted a terms of

16   service license to YouTube.  Maria Schneider has for 17 of the

17   works.

18       **THE COURT:**  I thought they were all required to.

19       **MR. KRAMER:**  I'm sorry?  Only if they're --

20       **THE COURT:**  I thought they were all --

21       **MR. KRAMER:**  No, Your Honor.  Only if they're actually

22   account holders on YouTube have they entered into a terms of

23   service license with YouTube, and only for the works that they

24   or their agents have uploaded to the service.

25       But there's also the issues of ownership.  What does she

 1  own?  What --

 2      **THE COURT:**  I thought they all had to be account holders.

 3  No?

 4      **MR. KRAMER:**  In order to grant YouTube a license under the

 5  terms of service license, separate and apart from the

 6  Modern Works license, there needs to be entry into the YouTube

 7  terms of service.  Not all users -- I'm sorry.  Not all

 8  copyright holders in the world, which is what the plaintiffs

 9  purport to represent, have entered into agreements with

10  YouTube.  There is no requirement that they do so.

11      **THE COURT:**  I'm sorry.  I may be making this more

12  complicated.

13      I thought every person who -- every licensor to Google is

14  necessarily also subject to the terms of service; right?

15      **MR. KRAMER:**  That is certainly --

16      **THE COURT:**  Okay.  That's all --

17      **MR. KRAMER:**  -- true.

18      **THE COURT:**  -- I was asking.

19      **MR. KRAMER:**  Yes, Your Honor.

20      **THE COURT:**  No, I understand the world is full of people

21  who aren't subject to the terms.  But that's right; right?

22  Every licensor is also under the -- TUS or TOS?

23      **MR. KRAMER:**  TOS.  Absent some agreement separate and

24  apart from that saying this overrides.

25      **THE COURT:**  Okay.  Got it.  All right.

1    **MR. KRAMER:**  But there are issues of ownership.  There are

2    issues of registration.  There are issues of eligibility for

3    statutory damages.  There are issues like what we've got here,

4    which is somebody put forward 27 works that they said were

5    allegedly infringed and then they failed to identify what the

6    alleged infringement was.

7         So what the Court is seeing in connection with this motion

8    is a preview of all of the reasons why a class could not be

9    certified here, because every copyright claim requires

10   individualized determinations on a dozen or two dozen issues.

11        It's why Judge Stanton, in the *Viacom vs. YouTube* case,

12   called the idea of a class certification in that case a

13   Frankenstein's monster masquerading as a class action.

14        So we don't think a class could be certified, but this

15   is --

16        **THE COURT:**  I don't necessarily agree with that, but I

17   understand what you're saying.

18        **MR. KRAMER:**  Understood, Your Honor.  Understood.

19        So --

20        **THE COURT:**  Good to see some liveliness in judicial

21   discourse.  That's good.

22        **MR. KRAMER:**  I appreciate that.  It was colorful language.

23   That's why I'm passing it on.

24        So that's the problem.  This motion highlights the

25   problems that are endemic to a copyright class action.

1      We're going to see it, too, with plaintiffs AST and

2  Uniglobe, the other added plaintiffs in this case.  They have

3  licensing issues.  They have -- they have statute of

4  limitations issues.  They have ownership and registration

5  issues.  There are all sorts of individualized issues in their

6  claims as well.

7      **THE COURT:**  I mean, class cert's coming up.  I have an

8  open mind.  I'm looking forward to seeing everybody's

9  arguments.

10     But I will say, Mr. Korologos, I was a little concerned.

11 In order to get to Ms. Schneider's copyright claims, you've got

12 to go through three documents just for one person.  Because

13 Google says, "We have a license."  You say, "Hold on.  No,

14 we've got to peel this back.  We've got to go back to this

15 document; then we've got to go back to a document before that."

16     I do have some -- I'll be interested to see how you intend

17 to finesse that on class cert, because I --

18     **MR. KOROLOGOS:**  We'll address that, Your Honor.

19     **THE COURT:**  I kept coming, as I was reading the summary

20 judgment papers, to the conclusion that I can't do this for

21 everybody.

22     **MR. KOROLOGOS:**  And we don't think --

23     **THE COURT:**  This is a mountain of work to get through all

24 this --

25     **MR. KOROLOGOS:**  We don't think --

1      **THE COURT:**  -- just for one person.

2      **MR. KOROLOGOS:**  -- you'll need to, Your Honor.

3      **THE COURT:**  What's that?

4      **MR. KOROLOGOS:**  We don't think you'll need to, Your Honor,

5  including --

6      **THE COURT:**  But how can that be?  If Google says "We have

7  a license" and your response each time or half the time or a

8  third of the time is "Well, that license is bogus," which is

9  what you're saying here, I don't see how you're going to get

10  around that.

11      **MR. KOROLOGOS:**  Well, if there's --

12      **THE COURT:**  You don't have to tell me now.  It's a

13  question I'm looking forward to seeing your answer on.  Let's

14  put it that way.

15      All right.  Now, let's talk about CMI.

16      And, Mr. Kramer, I think -- I'm not sure you have good

17  grounds for the CMI case, CMI issue.

18      **MR. KRAMER:**  Let me see if I can disabuse you of that,

19  Your Honor.

20      **THE COURT:**  Good.  All right.

21      **MR. KRAMER:**  Okay.  In order to state a 1202 claim,

22  Your Honor, Ms. Schneider needs to show that she had copyright

23  management information in a work; that it was removed; that it

24  was removed intentionally; that it was removed without

25  authorization; and that YouTube knew or should have known that

1   the removal of that CMI would foment copyright infringement.

2   And she fails at every step of that analysis.

3       And that, by the way, is assuming you credit the evidence

4   that she put in, in unsworn declarations.  I'm not sure why

5   that evidence isn't sworn, but there are declarations in

6   opposition to our summary judgment motion that are not under

7   penalty of perjury and, thus, are inadmissible.  That's all

8   they've put in.

9       But let's put that aside for a second, Your Honor.  I want

10  to speak to the substance of the CMI claim.

11      She's got two theories.  One is this CLFN.

12      **THE COURT:**  I've read the briefs.  Let me just ask you a

13  couple of questions.  Okay?

14      **MR. KRAMER:**  Yes.  Sure.

15      **THE COURT:**  So you agree that when YouTube formats, it has

16  to put it in a standardized form for its platform.  There's

17  nothing suspicious about that.  But metadata does get stripped

18  out in that process.

19      **MR. KRAMER:**  With respect to one of the plaintiffs'

20  theories, that is so.

21      **THE COURT:**  All right.

22      **MR. KRAMER:**  With respect to -- assuming it's there in the

23  first place.

24      **THE COURT:**  Right.

25      **MR. KRAMER:**  She's identified nine videos that contain

1   CLFN metadata.  The thing is, the CLFN metadata she's

2   identified is still there in the title of the video.

3        The same information, this song "Hang Gliding" which is in

4   the CLFN metadata, is still in the title of the video on

5   YouTube.  So the information --

6        **THE COURT:**  What does that mean, it's in the title?

7        **MR. KRAMER:**  If you go to YouTube and you do a search for

8   "hang gliding" and you pull this video up, you will see a video

9   called "Hang Gliding," the name in the title of the video.  The

10  information matches that which is in the CLFN field.

11       So nothing is removed.  Anyone who --

12       **THE COURT:**  So the CMI that may be in the CLFN field is

13  still accessible --

14       **MR. KRAMER:**  Yes, Your Honor.

15       **THE COURT:**  -- in every title?

16       **MR. KRAMER:**  All nine of these titles.  That's set forth

17  in the Foucu declaration that we --

18       **THE COURT:**  How do you see it?

19       **MR. KRAMER:**  You can't see the CLFN metadata.  No one can

20  see it.  No one can access it.  It's useless to anybody.

21       **THE COURT:**  Unless you're doing a forensic --

22       **MR. KRAMER:**  Well, I suppose -- even if you were doing a

23  forensic analysis, this information wouldn't be accessible to

24  you, absent some download of -- no, it wouldn't be there.

25       If you had the original file, I suppose.

1    **THE COURT:**  So remind me -- for these nine songs, remind

2    me what data was actually in those fields.

3    **MR. KRAMER:**  It's the title of the videos.  It's the

4    actual title of the --

5    **THE COURT:**  No, I know.  But what copyright management

6    information?

7    **MR. KRAMER:**  The name of the song.

8    **THE COURT:**  That's it?

9    **MR. KRAMER:**  The name of Schneider's song in nine of these

10   videos.  And it's still there on the service in the publicly

11   accessible video.  That's undisputed.

12   **THE COURT:**  But it's just the name of the song?

13   **MR. KRAMER:**  Correct, Your Honor.  Correct.  So there

14   wasn't a removal.

15   We can talk about the intentional element of Section 1202,

16   but Judge Davila spoke to this directly in *Harrington vs.*

17   *Pinterest* two weeks ago, and he said this wholesale removal of

18   copyright management information -- sorry -- this wholesale

19   removal of metadata cannot be equated to removal --

20   **THE COURT:**  All right.  But CMI is more than just the

21   title.  I mean, in *Stevens v. CoreLogic*, a relatively recent

22   decision, CMI is defined as title, author, copyright owner,

23   terms and conditions for use of work, and other identifying

24   information set forth in a copyright notice.

25   You're just saying YouTube took everything out but the

1   title.

2        **MR. KRAMER:**  No, Your Honor.  The CLFN metadata that

3   Schneider is talking about is just the title.  That's all that

4   was there in the first place, just the title of the song.

5        **THE COURT:**  Is that right, Mr. Korologos?  She didn't put

6   any other information in?

7        **MR. KOROLOGOS:**  In the CLFN title, it has two pieces of

8   information:  the track number and the title of the sound

9   recording that is a component of the video that ends up being

10  uploaded to YouTube.

11       **THE COURT:**  Let me ask -- I'm just going to switch to your

12  colleague here just for a minute.

13       I'm a little confused after spending a fair amount of time

14  with all of this.  The works in issue for Ms. Schneider are

15  videos and audio tracks; right?

16       **MR. KOROLOGOS:**  Well, the works at issue for Ms. Schneider

17  are musical compositions or sound recordings.

18       **THE COURT:**  Okay.  Sound recordings.  Okay.  But there's

19  no video component to these things?

20       **MR. KOROLOGOS:**  Not for her works in suit.

21       **THE COURT:**  All right.

22       **MR. KOROLOGOS:**  But for the infringement.

23       So videos infringe either the sound recording because it

24  has the sound recording in it without permission, or the video

25  infringes also --

1      **THE COURT:**  For the sound recordings --

2      **MR. KOROLOGOS:**  -- the composition.

3      **THE COURT:**  -- where is the CMI?

4      **MR. KOROLOGOS:**  Well, there are two principal places we

5    focus on, Your Honor:  CLFN for these nine instances and ISRC

6    codes.

7        An ISRC code is a unique code assigned to every sound

8    recording.  And it's required by YouTube that every time a

9    sound recording is identified to them for their content ID

10   system, that an ISRC code has to be provided.

11       And so, Your Honor, in Blaisdell Declaration Exhibit 12,

12   which is the sound recording and audiovisual --

13     **THE COURT:**  Let's just break this down a bit.

14       So the CLFN, is it just the title?

15     **MR. KOROLOGOS:**  It's title and the track number.

16     **THE COURT:**  All right.  And what's in the ISRC?

17     **MR. KOROLOGOS:**  ISRC, it's a code; it's a unique

18   identifier that's used for copyright purposes to distribute

19   money and uniquely identify each sound recording individually.

20   And so it falls -- I can't remember whether it's -- I think

21   it's -- I'm going to get the cite wrong.

22       The definition of CMI in the statute, I think it's

23   Number 6, which is an identifying code that talks about --

24     **THE COURT:**  That's fine, but where is it in the track?

25     **MR. KOROLOGOS:**  It's metadata embedded, that goes along

1   with the file.

2        **THE COURT:**  All right.  So your colleague says --

3        **MR. KOROLOGOS:**  You won't hear it.

4        **THE COURT:**  -- the CFLN data is preserved.

5        You're saying the ISRC is removed?

6        **MR. KOROLOGOS:**  Well, two different parts to

7   Section 1202(b).  One is removal or alteration.

8        **THE COURT:**  I'm just talking about what actually happens

9   in real life, not the statute.

10       So when YouTube uploads it, is the ISRC data, in your

11  view, always blanked out?

12       **MR. KOROLOGOS:**  It never makes it to the end.  It's

13  usually, we understand now, including from some depositions

14  over the past two weeks, it's not in what YouTube receives from

15  the user, but it's in every sound recording to begin with.

16       So YouTube knows, including its documents establish, every

17  sound recording in the music industry has an ISRC code.  They

18  know that when the video gets uploaded, it's not there; and

19  therefore, under 1202(b)(3), they know that there's been

20  removal of the ISRC code.

21       **THE COURT:**  All right.  So you're not contending that

22  Google removes CMI.  You're contending that they upload

23  materials for which CMI is removed by a third party.

24       **MR. KOROLOGOS:**  When I stick with ISRC, they've either

25  removed it, which we understand may not have happened very much

1   because it didn't get there, or they know that it's been taken

2   out.

3        Video processing that's necessary to prepare the video to

4   be uploaded to YouTube, we understand, often takes the ISRC

5   code out, but they know that, and they know every sound

6   recording has to get it.

7        So back to Exhibit 12.  There's one paragraph that

8   establishes all of the elements that are required by *Stevens*

9   *vs. CoreLogic* or *Harrington*; because, remember, in *Stevens* what

10  happened was it was photographers, and the Ninth Circuit said:

11  Well, you didn't establish what the photographers did with this

12  CMI and you didn't establish that the technical --

13       **THE COURT:**  Didn't establish knowingness --

14       **MR. KOROLOGOS:**  -- company knew about that.

15       **THE COURT:**  -- also.

16       **MR. KOROLOGOS:**  Pardon me?

17       **THE COURT:**  It didn't establish knowingness, they

18  knowingly, pattern of conduct, all that kind of thing.

19       **MR. KOROLOGOS:**  Right.  The pattern --

20       **THE COURT:**  Look, here's my concern.  I'm not saying

21  plaintiffs are right or wrong.  I'm just saying I don't

22  think -- there's enough of a fact dispute that I think this

23  probably has to go to trial.

24       **MR. KRAMER:**  Let me --

25       **THE COURT:**  That's all I'm saying.

1      **MR. KRAMER:**  Your Honor, may I take one more run at it?

2      **THE COURT:**  Just let me illustrate.  What does Google

3  remove?  Where does it come from?  How many of these have the

4  data still left in them?  How many of them have it taken out?

5  What did Schneider's tracks actually have encoded?  Is there a

6  pattern?

7      You know, the plaintiffs' big theme in the case is -- this

8  is them; not me.  I'm just paraphrasing but -- YouTube is a

9  known purveyor of copyright infringement material.  Of course,

10  you deny that, but that's a fact issue.  That's for the trier

11  of fact to decide:  Yes, that's enough for a pattern.  No,

12  that's not enough.

13      So I just don't see how you get summary judgment on this.

14      **MR. KRAMER:**  So I think the record is quite clear in that

15  there is no issue of disputed fact here.

16      And I want to, if Your Honor will indulge me, spend just

17  two minutes on each of these theories.

18      **THE COURT:**  Yes.

19      **MR. KRAMER:**  With respect to the CLFN theory, there is

20  data that is embedded in a file.  That data isn't removed

21  because it remains there in the title of these nine videos.

22  You can still access it.  When you look up the video, the

23  information is there.

24      And that means that on the intent element, the second

25  *scienter* element, that YouTube knows or should know that

1   removing this information would foment infringement, plaintiff

2   can't possibly make that showing because losing information

3   that isn't visible, accessible, or usable to anyone, while

4   preserving the same information searchable and publicly

5   accessible in the title of the video, can't possibly

6   demonstrate that *scienter*.  YouTube has no reason to believe

7   that removing CLFN, while preserving the same information in

8   the title of the video where it's searchable and usable and

9   accessible, could possibly foment infringement.  That's the

10  problem with the CLFN theory, among others.

11       The *Harrington vs. Pinterest* case, which I commend to

12  Your Honor, is quite helpful to us on this point as a matter of

13  law as well.

14       The ISRC claim is entirely theoretical.  Schneider has not

15  pointed to an instance in which there was a sound recording

16  used that had an ISRC code in it that found its way into a

17  video -- a sound recording that found its way into a video.

18  She hasn't pointed to a video on the YouTube service from which

19  an ISRC code was ever present -- or in which it was ever

20  present and from which it was removed.

21       **THE COURT:**  By anybody?

22       **MR. KRAMER:**  By anybody.  There's not any evidence in the

23  record of any video that once contained an ISRC code in a sound

24  recording and isn't there any longer.  That's just not part of

25  this record.

1      THE COURT:  Well, let's ask Mr. Korologos.

2      What exhibit shows me that?

3      MR. KOROLOGOS:  Several, Your Honor.

4      So, first of all --

5      THE COURT:  No, no, no.  Let's answer my question first.

6  Which exhibits show that?

7      MR. KOROLOGOS:  Exhibit 12 of Blaisdell, which the --

8      THE COURT:  Exhibit 12 of who?

9      MR. KOROLOGOS:  The Blaisdell declaration, Your Honor.

10      THE COURT:  Blaisdell?  Okay.

11      MR. KOROLOGOS:  It was the Exhibit 12 to plaintiffs'

12  papers, paragraph 3(d).

13      THE COURT:  Wait.  Exhibit 12 to who?  To Schneider or to

14  Blaisdell?

15      MR. KOROLOGOS:  Blaisdell.

16      THE COURT:  Blaisdell.  Okay.  All right.

17      MR. KOROLOGOS:  And paragraph 3(d).

18      THE COURT:  Paragraph 3(d).  Okay.  Anything else?

19      MR. KOROLOGOS:  And this shows, Your Honor -- may I stick

20  with that one for a moment?

21      THE COURT:  Sure.

22      MR. KOROLOGOS:  This shows that Google knows every sound

23  recording in the music industry has an ISRC code.  It says it

24  on its face, paragraph 3(d).  It's called "Provider Data."  So

25  this is an agreement about sound recordings, and it's to assist

1   in content ID for dealing with copyright issues.

2       And the provider of this license has to provide certain

3   data.  What do they have to provide?  It says (as read):

4           "Provider will provide Google with the accurate

5       and complete metadata required by Google's then

6       current data specification via the metadata feed or

7       other Google-provided interface along with every

8       delivery of provider content."

9       And then you have to update it.

10      Now, the purpose of that --

11      **THE COURT:**  Just hit me with all your exhibits.  Give me

12  your full list.  So Exhibit 12 to Blaisdell.  What else?

13      **MR. KOROLOGOS:**  Well, Your Honor, we've got the exhibit

14  that Ms. Schneider put in, in declaration, that shows what her

15  ISRC codes are, which are for sound recordings, not for videos.

16      **THE COURT:**  Do you have the number for that, the Schneider

17  exhibit?

18      **MR. KOROLOGOS:**  It's the Schneider declaration,

19  Your Honor.

20      **THE COURT:**  The Schneider declaration.  Okay.

21      **MR. KOROLOGOS:**  She includes a table at paragraph --

22      **THE COURT:**  Is that under penalty of perjury?

23      **MR. KOROLOGOS:**  Your Honor, I have a version that I

24  brought with me today that adds the --

25      **THE COURT:**  It doesn't matter what you have.

1      **MR. KOROLOGOS:**  -- the statutory language.

2      **THE COURT:**  Do I have one under penalty of perjury?

3      **MR. KOROLOGOS:**  I would like to pass that up,

4    Your Honor --

5      **THE COURT:**  No.

6      **MR. KOROLOGOS:**  -- and hand it to the other side.

7      **THE COURT:**  You have to file that.  Why was that not

8    filed?

9      **MR. KOROLOGOS:**  Your Honor, it was a ministerial mistake

10   to not include the statutory language at the end.  That's all.

11   It was a lawyer's issue.

12     **THE COURT:**  It's not ministerial.

13     **MR. KOROLOGOS:**  That was a lawyer's issue.  It was not the

14   client's issue.  She signed this under penalty of perjury now.

15     **THE COURT:**  You file that.  It's the same declaration,

16   nothing's been changed?

17     **MR. KOROLOGOS:**  Everything's the same, other than that and

18   the personal knowledge paragraph at the very --

19     **THE COURT:**  File that today.  Don't file anything else.

20   Just file that as a document.

21     **MR. KOROLOGOS:**  We will, Your Honor.

22     **THE COURT:**  All right.  So the Schneider --

23     **MR. KOROLOGOS:**  There's also the answers to

24   interrogatories that we cite that previously identified --

25     **THE COURT:**  Hold on.  You're going to walk me through this

1   with detail.  I'm not just --

2       **MR. KOROLOGOS:**  Okay.

3       **THE COURT:**  -- going to say:  Look at the discovery.

4       Now, Schneider declaration, paragraph?

5       **MR. KOROLOGOS:**  Get the right paragraph number for

6   Your Honor.

7       Paragraph 10, Your Honor.

8       **THE COURT:**  10.  All right.  And what else?

9       **MR. KOROLOGOS:**  Let me -- may I have a moment, Your Honor?

10      **THE COURT:**  Yes.

11                          (Pause in proceedings.)

12      **MR. KOROLOGOS:**  Your Honor, in discovery, we provided the

13  ISRC codes in what --

14      **THE COURT:**  Well, no, no, no.  You need to cite to your

15  summary judgment papers.

16      **MR. KOROLOGOS:**  I understand.

17      **THE COURT:**  So I need your exhibits and declarations for

18  the summary judgment motion.  So it should be easy to find in

19  your opposition.  I just want to make sure I know exactly what

20  you're talking about.

21      So I've got Blaisdell.  I've got Schneider.  Anything

22  else?  Last call.

23      **MR. KOROLOGOS:**  Blaisdell Exhibit 9, Your Honor, is the...

24      **THE COURT:**  Exhibit 9 and Exhibit 12 to Blaisdell.  Okay.

25      Okay.  Now --

1      **MR. KOROLOGOS:**  I still think, Your Honor --

2      **THE COURT:**  I'm just going to look.  I don't need any

3   argument.

4      **MR. KRAMER:**  The point is that there's not a single video

5   there, Your Honor.

6      **THE COURT:**  I understand.

7      **MR. KRAMER:**  There's not a single video identified in any

8   of what he just cited to you.

9      **THE COURT:**  I understand.  I'll take a look.

10      **MR. KOROLOGOS:**  May I address that?

11      **THE COURT:**  What's that?

12      **MR. KOROLOGOS:**  If I may have two minutes on some

13   procedural issues.

14      **THE COURT:**  On what?

15      **MR. KOROLOGOS:**  Some procedural issues.

16      **THE COURT:**  Yeah.  I wanted to go to -- you wanted some

17   more time for experts or something?  Is that the --

18      **MR. KRAMER:**  Yes.  But, Your Honor, there's actually one

19   more point I have to make about this CMI claim, which is it's

20   time-barred.

21      **THE COURT:**  I have all that.

22      **MR. KRAMER:**  But she wrote an article to the Copyright

23   Office.

24      **THE COURT:**  I don't need --

25      **MR. KRAMER:**  Okay.

1        **THE COURT:**  I don't need --

2        **MR. KRAMER:**  Fair enough, Your Honor.

3        **THE COURT:**  Okay.  Now, what do you want to do with the

4    experts?

5        **MR. KOROLOGOS:**  Before I get to that, Your Honor, three

6    quick procedural issues.  Well, maybe it's just two.

7        Your Honor, we object to the White declaration and the

8    Foucu declaration that were put in.

9        **THE COURT:**  Well, don't worry about all that.  I'll take

10   care of -- I'll handle all that.  I don't need argument on

11   that.

12       **MR. KOROLOGOS:**  It's in reply.  They put in evidence in

13   reply.  We object to their putting it in as evidence in reply.

14       **THE COURT:**  What do you want to do with the experts?

15       **MR. KOROLOGOS:**  We just got some data on the day before

16   our expert reports were due that affects two of the experts.

17   We got some new data last Friday.  I believe we sent out a

18   letter this morning -- if not, it'll go out later today -- with

19   some concerns about that data.

20       But if we can get those concerns promptly addressed, we

21   could provide the supplemental declarations that Mr. Kramer and

22   I have been discussing from our experts in five weeks, giving

23   him five weeks for the rebuttal reports to our experts and then

24   a period for depositions.

25       The five weeks --

1    **THE COURT:**  Look, all I'm asking is, just tell me what you

2   want.  You want to move these dates out five weeks?

3    **MR. KOROLOGOS:**  We'd like to move rebuttal -- supplemental

4   expert reports for two of our experts --

5    **THE COURT:**  Supplemental?

6    **MR. KOROLOGOS:**  Yes, Your Honor, to deal with the data

7   that came in the day before our expert reports were due.

8   Actually, the order came in the day before.  We only got the

9   data last Friday.

10    **THE COURT:**  I really don't -- supplemental reports just

11   make a mess.  Can't you just redo the main report?

12    **MR. KOROLOGOS:**  Well, we'll redo the main report.  That's

13   fine.

14    **THE COURT:**  How about that?

15    **MR. KOROLOGOS:**  That's fine.

16    **THE COURT:**  You want five weeks for that?

17    **MR. KOROLOGOS:**  Yes, Your Honor, to deal with the data.

18    **THE COURT:**  Okay.  Then what, Mr. Kramer?  What would you

19   like?

20    **MR. KRAMER:**  This is the first that we're talking about

21   this.  I kind of thought we would sit and talk about it amongst

22   ourselves.  We put in a stipulation as a stopgap, Your Honor.

23    And I'm happy to have the conversation with my colleague,

24   Mr. Korologos, and work it out.  Five weeks sounds like a lot

25   of time, but if it's five weeks, I'm happy to talk through this

1   with him and put in the stipulation to that.

2       **THE COURT:**  I'm happy to do whatever you all want to do as

3   long as it doesn't affect me.  Okay?  So if you start cutting

4   into my time for prep for trial and things like that, then I

5   won't be able to do that for you.

6       But if you wanted to take -- so right now under the

7   amended scheduling order, Docket 155 -- well, the expert stuff

8   is all done.  So you want to reopen it and get five more weeks?

9   Is that basically what you want to do?

10      **MR. KOROLOGOS:**  Essentially, Your Honor.  But --

11      **THE COURT:**  Okay.

12      **MR. KOROLOGOS:**  -- we have talked about this.

13      **THE COURT:**  Is that going to derail -- what's that going

14  to do to class cert?  Because class cert's due in --

15      **MR. KOROLOGOS:**  Due Monday.

16      **THE COURT:**  Monday, yeah.

17      **MR. KOROLOGOS:**  I don't think it's going to impact class

18  cert, Your Honor.

19      **THE COURT:**  It won't affect class cert.  Okay.  All right.

20  So that's good.

21      **MR. KRAMER:**  That is good, Your Honor.

22      It may affect summary judgment and *Daubert*, though.  There

23  are deadlines in the Court's schedule for those things; and if

24  we're moving out the expert disclosures five weeks and then

25  five weeks for supplementals, I think we're going to have to

```
 1   readjust the summary judgment --

 2       THE COURT:  I don't see any expert issues that I am going

 3   to rely on for summary judgment; so I'm not worried about that.

 4       So let's see what you -- why don't you try to work it out.

 5   I don't have a problem.

 6       So you want five weeks.  And then what?  You're going

 7   to -- so he's going to redo his reports; right?

 8       MR. KOROLOGOS:  Two of them.

 9       THE COURT:  You're going to revise -- we'll revise the --

10   what's the other report?  Two opening reports?

11       MR. KOROLOGOS:  We had four opening reports.

12       THE COURT:  Oh, I see.  Okay.  And you're going to do two

13   of them?

14       MR. KOROLOGOS:  Two of them, we need to --

15       THE COURT:  All right.  Two will be revised.  Then there

16   will be two new.  We're just going to blank everything out.

17   All right?  So for those two, we're just going to start over.

18       How much time do you want for that?  Five weeks?

19       MR. KRAMER:  I think that's fine, Your Honor.

20       THE COURT:  Okay.  And then have you had depositions yet,

21   or no?

22       MR. KOROLOGOS:  Yeah.  We then need to do the depositions

23   of these experts.

24       THE COURT:  Redo them or do them in the first --

25       MR. KOROLOGOS:  We haven't done those.
```

 1          **THE COURT:**  Oh, you haven't done.  Okay.  That's good.

 2       **MR. KOROLOGOS:**  And so that's where we discussed before,

 3    was putting those off.

 4       So what we'd like to do is then -- what I think is going

 5    to work is five weeks, five weeks, and then a period for

 6    depositions.

 7          **THE COURT:**  That's fine.

 8       **MR. KOROLOGOS:**  If we do it only in a week, that's four

 9    depositions; that's pretty busy.  That gets us done, I think,

10    either December 16 or December 23, which bumps into the

11    holidays.

12          **THE COURT:**  Well, you two work it out.  I just --

13       **MR. KOROLOGOS:**  If we go beyond --

14          **THE COURT:**  Here's my goal.  I don't want -- I don't want

15    supplemental reports.  It's much better just to -- just redo it

16    and there's one for each person.

17       **MR. KOROLOGOS:**  Then one remaining question --

18          **THE COURT:**  Yeah.

19       **MR. KOROLOGOS:**  -- with respect to that.

20       Is Your Honor open to moving the January 16 date, which is

21    the date -- I think that's the date -- maybe it's the 15th --

22    for *Daubert* motions, which obviously ought to come some period

23    of time --

24          **THE COURT:**  Well, that's fine, yeah.

25       **MR. KOROLOGOS:**  Okay.

1          **THE COURT:**  That's fine.  I mean --

2          **MR. KOROLOGOS:**  And then I'm not sure I heard correctly

3     when --

4          **THE COURT:**  January 19th.  Yeah, that's fine.

5          **MR. KOROLOGOS:**  That was the date for summary judgment,

6     but he's moved for summary judgment already.  I'm not sure

7     the Court --

8          **THE COURT:**  The last day for dispositive motions and

9     summary judgment.  But plaintiffs have already asked for -- I

10    mean, defendants already filed their motion; so you're done.

11         **MR. KRAMER:**  No.  Your Honor, hang on one second.  That's

12    a big deal to us.  There is a dispositive motion based on the

13    Digital Millennium Copyright Act and various copyright

14    doctrines that we have yet to file.

15         The Court doesn't have an order that says you can only

16    file one summary judgment motion.

17         **THE COURT:**  You know, we were just talking about that.  I

18    am about to amend my standing order to say that.  We don't do

19    death by a thousand Rule 56 bites, Mr. Kramer.

20         **MR. KRAMER:**  It will only be one more, Your Honor, but it

21    is exactly the --

22         **THE COURT:**  One more is a mountain of work for this case.

23         **MR. KRAMER:**  Your Honor, it's --

24         **THE COURT:**  Here's what you're going to do:  You're going

25    to give me a three-page preview of what you'd like to file, and

1    I will decide whether I'll let you do it or not.

2        **MR. KRAMER:**  Happy to do that, Your Honor.

3        **THE COURT:**  But the practice in federal court is, you do

4    not get multiple summary judgments.

5        **MR. KRAMER:**  Understood, but there are --

6        **THE COURT:**  Tell me that's a surprise to you --

7        **MR. KRAMER:**  No, it is not --

8        **THE COURT:**  -- because I know --

9        **MR. KRAMER:**  -- a surprise to me --

10       **THE COURT:**  -- it's not --

11       **MR. KRAMER:**  -- in other courts, Your Honor.

12       But in this Court, I've actually seen serial summary

13   judgment motions.

14       **THE COURT:**  Ordinarily, rarely.  In special circumstances,

15   which are not present here.

16       Now, because, however, I do not have a clear statement as

17   of today, I will let you tell me in three pages, make a little

18   proffer, what you intend to do; and then I'll see if I'm going

19   to let you do that.

20       **MR. KRAMER:**  Certainly, Your Honor.  It's the same --

21       **THE COURT:**  Now, let me ask --

22       **MR. KRAMER:**  It's the same ground that was dispositive in

23   the *Viacom vs. YouTube* case.

24       **THE COURT:**  Let me ask you about -- not ask you.  Let me

25   tell you about your sealing motions.

1       All right.  Now, I have 12 of these things flopping around
2   in the docket.  Some of them are ridiculous.  Some of them are
3   generic contract terms that are blanked out for who knows why
4   or what possible grounds might justify this.

5       Now, I have written extensively, as my brothers and
6   sisters on the bench have as well, that this is a courtroom of
7   the people of the United States, and we do not keep things
8   secret unless there's a good reason for it.

9       And your motions don't meet that, both sides.  So I'm
10  blanking all of those out.  They're all denied.  I will give
11  you one chance to file a single statement identifying the core
12  things that you absolutely must have me think about for
13  sealing, and that's it.  Both sides.  All right?

14  **MR. KRAMER:**  Understood.

15  **THE COURT:**  Now, I'm going to tell you, if you don't do
16  that and if I see the same ridiculousness that I've seen
17  already about generic terms and things that nobody in the world
18  would ever possibly be uncomfortable with being in the public
19  domain, there will be sanctions.  So I'll give you two weeks.
20  I'm blanking all these out.

21      I'm not going to order you to file things.  That is going
22  to be the next step.  Anything I don't approve will be filed
23  immediately as a public document.

24      All these are going to be terminated.  I'm going to give
25  you two weeks.  You do a joint statement.  Joint statement;

1    all right?  You just put it in.  One half for you; one half for

2    the other side.  And you tell me what they are.  And please,

3    follow to the letter what I've said in the Google MDL antitrust

4    case about sealing and my other orders on sealing, because I

5    just -- I can't -- 12 of these things?  And this is just a

6    fraction of the ones you've already filed to date.  I'm just

7    not going to do it.  It's just --

8         **MR. KOROLOGOS:**  Understood, Your Honor.

9         **THE COURT:**  -- an extraordinary tax that is unjustified on

10   scarce federal judicial resources.

11        So, I don't care what your clients say.  I know what

12   clients say.  "Oh, this has to be sealed."  I'm holding you two

13   responsible, Mr. Korologos and Mr. Kramer.  You can talk with

14   whoever you want to, Mr. Kramer, but this is between you and

15   me, and it's between you and me that the sanctions will be

16   discussed if -- I hope we don't, but if we get to that point.

17        All right?

18        **MR. KRAMER:**  We'll take care of it, Your Honor.

19        **MR. KOROLOGOS:**  Understood, Your Honor.

20        **THE COURT:**  Two weeks from today.

21        **MR. KOROLOGOS:**  Just to be clear on that --

22        **THE COURT:**  All right.  Thanks for coming in.

23        **MR. KOROLOGOS:**  Thank you, Your Honor.

24        **MR. KRAMER:**  Thank you, Your Honor.

25                    (Proceedings adjourned at 11:07 a.m.)

1

2                    <u>**CERTIFICATE OF REPORTER**</u>

3        I certify that the foregoing is a correct transcript

4  from the record of proceedings in the above-entitled matter.

5

6  DATE:  Saturday, October 15, 2022

7

8

9  _____

10      Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
              Official United States Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25