# EXHIBIT 5

George A. Zelcs*
 gzelcs@koreintillery.com
Randall P. Ewing, Jr.*
 rewing@koreintillery.com
Ryan Z. Cortazar*
 rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
 stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
 sberezney@koreintillery.com
Carol O'Keefe*
 cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

* Admitted *pro hac vice*

*Attorneys for Plaintiffs*

Joshua Irwin Schiller, CA Bar #330653
 jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
 pkorologos@bsfllp.com
Joanna Wright*
 jwright@bsfllp.com
Jeffrey Waldron*
 jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> YOUTUBE, LLC and GOOGLE LLC, <br><br> Defendants. | Case No. 3:20-cv-04423-JD <br><br> **DECLARATION OF JEFFREY WALDRON IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING THE PRESENCE OF COPYRIGHT MANAGEMENT INFORMATION ADDED BY USERS AFTER VIDEOS ARE UPLOADED TO THE YOUTUBE PLATFORM** <br><br> Date:    May 25, 2023 <br> Time:    1:30 p.m. <br> Dept.:    11 <br> Judge:    Hon. James Donato |

I, Jeffrey Waldron, declare as follows:

1.      I am an attorney at Boies Schiller Flexner LLP, co-counsel to Plaintiffs and putative class representatives Maria Schneider, Uniglobe Entertainment, LLC, and AST Publishing, Ltd.  I make this declaration in support of Plaintiffs' Motion in Limine No. 5 to Exclude Testimony and Evidence Regarding the Presence of Copyright Management Information Added by Users After Videos Are Uploaded to the YouTube Platform.  I have knowledge of the facts stated herein from my personal knowledge and, if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of excerpts of Plaintiffs' First Set of Requests for the Production of Documents to Defendants, dated October 28, 2020.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of a letter from C. O'Keefe to M. Rees concerning Defendants' production of videos and related data and revenue information, dated June 10, 2022.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of a letter from C. O'Keefe to L. Gallo White concerning Plaintiffs' data request proposals, dated July 12, 2022.

5.      Attached hereto as **Exhibit 4** is a true and correct copy of a letter from C. O'Keefe to L. Gallo White summarizing Plaintiffs' positions on data collection, dated July 20, 2022.


I declare under penalty of perjury that the foregoing is true and correct. Executed this 27th day of April, 2023 at New York, New York.


                                                     */s/ Jeffrey Waldron*
                                                     Jeffrey Waldron

DECLARATION OF JEFFREY WALDRON IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING THE PRESENCE OF COPYRIGHT MANAGEMENT INFORMATION ADDED BY USERS AFTER VIDEOS ARE UPLOADED TO THE YOUTUBE PLATFORM

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTESTATION**

My user ID and password are being used in the electronic filing of this document and, in compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

*/s/ Philip Korologos*
Philip Korologos

DECLARATION OF JEFFREY WALDRON IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE NO. 5 TO EXCLUDE TESTIMONY AND EVIDENCE REGARDING THE PRESENCE OF COPYRIGHT MANAGEMENT INFORMATION ADDED BY USERS AFTER VIDEOS ARE UPLOADED TO THE YOUTUBE PLATFORM

# EXHIBIT 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA SCHNEIDER and PIRATE MONITOR LTD, individually and on behalf of all others similarly situated;<br><br>       Plaintiffs,<br><br>       vs.<br><br>YOUTUBE, LLC; GOOGLE LLC; and ALPHABET INC.;<br><br>       Defendants. | Case Number: 3:20-cv-04423-JD<br><br>**PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS YOUTUBE, LLC AND GOOGLE LLC** |

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs Maria Schneider and Pirate Monitor LTD ("Pirate Monitor"), by their attorneys Boies Schiller Flexner LLP and Korein Tillery, LLC, request that Defendants, YouTube, LLC ("YouTube") and Google LLC ("Google") respond to the following document requests (the "Requests") within thirty days of service and produce responsive documents, and afterwards supplement such production as may become necessary to comply with the requirements of Rule 26(e) of the Federal Rules of Civil Procedure.

## **DEFINITIONS**

1.    The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure, unless otherwise stated.  All definitions herein include both the singular and plural.

2.    "And" and "Or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise

be construed to be outside of its scope.

3.     "Account Monetization Program" means any program by which Users receive compensation on YouTube, Including the YouTube Partner Program.

4.     "Answer" means the Defendants' answer filed on September 21, 2020.

5.     "AutoPlay Feature" means Your system that queues subsequent videos to play sequentially, Including the system described in Paragraph 37 of the Complaint.

6.     "CMI Video" means a video containing CMI at the time the User initiated the upload of the video to Your platform.

7.     "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

8.     "Complaint" means the complaint filed by Plaintiffs against Defendants on July 2, 2020.

9.     "Concerning" means relating to, referring to, describing, evidencing or constituting.

10.     "Content ID System" means Your copyright management tool described throughout the Complaint, Including at Paragraphs 2, 8, 9, 10, and 12.

11.     "Copyright Management Information" or "CMI" has the meaning it has under 17 U.S.C. § 1202.

12.     "Copyright Strike" means the strike issued by You to a User following a Takedown Notice.

13.     "Counterclaims" means the counterclaims filed by Defendants Google and YouTube on September 21, 2020.

14.     "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(1)(A) and includes Communications. A draft or non-identical copy is a separate Document within the meaning of this term.

15.     "Fair Use" has the meaning it has under 17 U.S.C. § 107.

16.     "ID3 Tags" means the metadata container used in conjunction with audio files,

Including MP3 files and includes ID3v1 and ID3v2 tags.

17.    "Including" or "includes" means including without limitation.

18.    "ISRC" means the International Standard Recording Code.

19.    "ISWC" means the International Standard Musical Work Code.

20.    "Lawsuit" means the case filed by Plaintiff against Defendants in the United States District Court for the Northern District of California, number 20-cv-04423.

21.    "Metadata" means any information attached to, embedded in, or a part of a digital video file that provides information Concerning that file, Including CMI and Tags.

22.    "Unsuccessful Takedown Notice" means a Takedown Notice that is not a Successful Takedown Notice.

23.    "Unsuccessful Takedown Notice Video" means any video uploaded to Your platform subsequent to the date that an Unsuccessful Takedown Notice was submitted that is not the subject of the Unsuccessful Takedown Notice but that used the work or works that were the subject of an Unsuccessful Takedown Notice in whole or in part, either by reproducing them or performing them.

24.    "Person" means any natural person or any legal entity, Including, without limitation, any business or governmental entity or association.

25.    "Pirate Monitor" means Plaintiff Pirate Monitor LTD and all present and former subsidiaries, predecessors, parents, successors, affiliates, segments, divisions, and all present or former owners, officers, directors, managers, limited partners, general partners, agents, representatives, accountants, investigators, consultants, attorneys, attorneys-in-fact, predecessors or successors in interest, employees, trustees, advisors, and any other Person acting on its behalf.

26.    "Pirate Monitor Infringing Videos" means any video uploaded to Your platform that uses any of the Pirate Monitor Works in whole or in part, either by reproducing them or performing them.

27.    "Pirate Monitor Works" means any works to which Pirate Monitor holds or has held since January 1, 2005 exclusive copyrights, Including the works identified in Paragraph 65 of the Complaint.

28.     "Performance Rights Organizations" means any organization that collects royalties on behalf of copyright owners and includes but is not limited to Broadcast Music, Inc. ("BMI"), the American Society of Composers, Authors, and Publishers ("ASCAP"), the Society of European Stage Authors and Composers ("SESAC"), and the American Music Rights Association ("AMRA").

29.     "Plaintiffs" means Schneider and Pirate Monitor.

30.     "Red Flag Knowledge" means Your subjective awareness of facts that would have made copyright infringement objectively obvious to a reasonable person.

31.     "Removed Takedown Notice Video" means a video posted to Your platform that was removed, deleted, or no longer displayed because of a Takedown Notice.

32.     "Removed Takedown Notice Video Re-upload" means a video that is substantively identical to a Removed Takedown Notice Video or contains the portion or aspect of the removed Takedown Notice Video that was the target of a Successful Takedown Notice.

33.     "Repeat Infringer" has the meaning it has under 17 U.S.C. § 512(i).

34.     "Response to Counterclaims" means Plaintiff Pirate Monitor's Rule 12 motion and/or responsive pleading filed in response to Defendants' Counterclaims.

35.     "Schneider" means Plaintiff Maria Schneider and all agents, representatives, accountants, investigators, consultants, attorneys, attorneys-in-fact, advisors, and any other Person acting on her behalf.

36.     "Schneider Infringing Videos" means any video uploaded to Your platform that uses any of the Schneider Works in whole or in part, either by reproducing them or performing them.

37.     "Schneider Works" means any works to which Schneider holds or has held since January 1, 2005 exclusive copyrights, Including the works identified in Paragraph 60 of the Complaint.

38.     "Tags" are descriptive keywords Users add to a video to help viewers find content.

39.     "Takedown Notice" means a request submitted via Your online platform, by email, or in any other way that seeks to have content of any kind removed, deleted, or no longer displayed

1    because the content contains copyrighted material that has been posted or is being displayed without

2    a license or permission.

3        40.    "User" means a user of Your YouTube platform.

4        41.    "Successful Takedown Notice" means a Takedown Notice that resulted in a

5    Removed Takedown Notice Video or that You otherwise determined set forth a meritorious

6    claim that copyrighted material has been posted or is being displayed without a license or

7    permission.

8        42.    "Successful Takedown Notice Video" means any video uploaded to Your

9    platform subsequent to the date that a Successful Takedown Notice was submitted that used the

10   work or works that were the subject of a Successful Takedown Notice in whole or in part, either

11   by reproducing them or performing them.

12       43.    The terms "You," "Your," and "Yourself" mean Defendants YouTube and

13   Google and all present and former subsidiaries, predecessors, parents, successors, affiliates,

14   segments, divisions, and all present or former owners, officers, directors, managers, limited partners,

15   general partners, agents, representatives, accountants, investigators, consultants, attorneys,

16   attorneys-in-fact, predecessors or successors in interest, employees, trustees, advisors, and any other

17   Person acting on its behalf.

18       44.    "YouTube Partner Program" means the program launched in 2007 that uses

19   AdSense to monetize content posted by Users.

l)   The questions You ask, if any, during the upload process Concerning copyright issues related to a video.

**REQUEST NO. 54**

All videos that contained CMI at the time the User initiated the upload of the video to Your platform (the "CMI Videos").

**REQUEST NO. 55**

Documents sufficient to show the following information Concerning each CMI Video:

a.   The date(s) uploaded, the number of copies made, the date each copy was made, the location of each copy;

b.   the metadata included with each video (Including before and after each video was uploaded) and whether that metadata was supplied by the User or You;

c.   the number of views, the number of downloads, the number of likes, the number of Users who subscribed to the channel of the User that posted the video from the page containing the video;

d.   whether the video was monetized through the Account Monetization Program and, for each video that was monetized, the total revenue collected for the video, the portion of the revenue that was paid to the User, to any third parties, and to You;

e.   For each User posting a CMI Video, the identity of the User, Including the User's name, username, email address, IP address, affiliation, any unique other identifier used internally by YouTube or Google tied to a User, whether the User was enrolled in the Account Monetization Program and/or the YouTube Partner Program, whether the User was a Repeat Infringer, all videos uploaded by the User that were identified in the Content ID System as containing copyright protected work, and all Copyright Strikes issued to the User;

f.   For each CMI Video, whether the video was subject to a Takedown Notice, the response, if any, by the User posting the video, and the ultimate determination of the Takedown Notice.

**REQUEST NO. 77**

All Documents Concerning any insurance policies relevant to this action, Including the policy through IMI Assurance Inc. identified in Your Initial Disclosures.

DATED:      New York, New York

October 28, 2020

By:        */s/ Joshua Irwin Schiller*

George A. Zelcs *(pro hac vice)*
Randall P. Ewing, Jr. *(pro hac vice)*
Ryan Z. Cortazar *(pro hac vice)*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
Steven M. Berezney, CA Bar #329923
Michael E. Klenov, CA Bar #277028
Carol O'Keefe *(pro hac vice)*
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Phone: (415) 293-6800
Fax: (415) 293-6899

Philip C. Korologos *(pro hac vice)*
Joanna C. Wright *(pro hac vice)*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY  10001
Phone: (212) 446-2300
Fax: (212) 446-2350

*Attorneys for Maria Schneider and*
*Pirate Monitor LTD*

## **CERTIFICATE OF SERVICE**

I hereby certify that the following counsel of record were served by email on October 28, 2020:

> DAVID H. KRAMER
> dkramer@wsgr.com
> MAURA L. REES
> mrees@wsgr.com
> LAUREN GALLO WHITE
> lwhite@wsgr.com
> WILSON SONSINI GOODRICH & ROSATI
> Professional Corporation
> 650 Page Mill Road
> Palo Alto, CA 94304-1050
> Telephone: (650) 493-9300
> Facsimile:  (650) 565-5100
>
> *Attorneys for Defendants and Counterclaimants*
> YOUTUBE, LLC and GOOGLE LLC

> */s/ Demetri Blaisdell*
> Demetri Blaisdell

# EXHIBIT 2

KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO  63101-1625
www.KoreinTillery.com

Carol O'Keefe
COKeefe@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

June 10, 2022                                                                  via electronic mail

Maura L. Rees
Wilson Sonsini Goodrich & Rosati
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050

Re: ***Schneider et al. v. YouTube, LLC et al.***, Case No. 3:20-cv-04423-JD

Dear Maura,

I write in response to your letter of April 15, 2022 concerning Defendants' production of videos and related data and revenue information. Initially, thank you for the clarification regarding the six orphan .csv files, which relate to videos produced in April and December, 2021. Thank you as well for your commitment to continuing to produce the remaining URLs from Plaintiffs' lists. I note, however, that you indicate production will not be made "for those few videos that were set to private before we received Plaintiffs' lists of alleged infringements." Can you kindly clarify the basis for withholding the videos and related data and information for those videos? If those videos contain infringing material, they are relevant to this litigation regardless of whether they are currently displayed publicly on the YouTube platform.

In terms of the productions themselves, we have reached the following conclusions and would appreciate your confirmation in each instance. We assume the .pb extension files are the metadata files that were either embedded within or associated with the original user-generated video at the time of upload.  The .csv extension files include metadata independently supplied by the user at the time of upload and metadata generated by YouTube either through the transcoding process, or through channel/URL statistics. If these conclusions are incorrect, we would appreciate any input you can provide.

With respect to the produced .pb files, we note that in a number of instances, the filename field states: "(redacted)". See, e.g., GOOG-SCHNDR-00043869. Kindly inform us of the basis for this redaction. Filenames have been recognized as metadata CMI, *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 277 (5th Cir. 2020), and are relevant to the allegations herein. Kindly provide un-redacted versions of these .pb files. Given that the rolling

Maura L. Rees
June 10, 2022
Page 2

Content ID process has identified additional infringing works, kindly confirm that you will provide videos and associated metadata for those matches as well.

Thank you for your continuing efforts to provide revenue information associated with the infringing videos identified in Plaintiffs' lists of November 29 and February 25. We assume that Defendants will also provide revenue figures for those infringing videos identified through the rolling Content ID process. If that is not your intention, kindly inform us.

With respect to RFP No. 55, your production of .pb files has allowed us to identify a field that is routinely populated with metadata CMI of component works, metadata that is then stripped by YouTube's transcoding process and not preserved. While our efforts at identifying additional metadata CMI fields are ongoing, we request that you provide the information and data requested in RFP No. 55 for all videos that have a populated "clfn" field. We note that while you have provided some sample data that could be responsive to RFP No. 55 (e) and (f), your combined redactions and failure to consistently anonymize identifiers precludes us from accessing a substantial portion of the information sought.  *See*, O'Keefe letter to Richlin of June 4, 2022.

We are, of course, happy to meet and confer regarding all of these requests.

Sincerely,

Carol O'Keefe

# EXHIBIT 3

KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101-1625
www.KoreinTillery.com

Carol O'Keefe

COKeefe@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

July 12, 2022

via electronic mail

Lauren Gallo White
Wilson Sonsini Goodrich & Rosati
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105

**Re:**   ***Schneider et al v. YouTube, LLC et al.*, Case No. 3:20-cv-4423-JD (N.D. Cal.)**

Dear Lauren,

Thank you for our conversation today at the meet and confer. As we discussed, this letter contains a summary of our proposals. We have eliminated all data requests designed to support our challenges to YouTube's enforcement of its repeat infringer policy, instead focusing exclusively on class membership and damages.

In short, we are prepared to forego all Content ID claims data, apart from data Defendants intend to use to support any fair use defense in opposition to class certification. In return, we ask only that Defendants provide several summary statistics.

With respect to Takedown Notice data, we are seeking only 25% of all entries, limited to those originating from the webform or Content Verification Program legacy members. From the 94 fields presented,[1] we have whittled our request to 16. Since we are no longer using data to evaluate the repeat infringer policy, we are reducing the timing of our request from 10 years to 5 years, reflecting only data from the period of limitations, commencing July 3, 2017. These three steps, in combination, reduce the data requested by over 97%.

---

[1] The 94 fields are from the following sample data and schemas produced by Defendants: GOOG-SCHNDR-00043867 (29 fields), GOOG-SCHNDR-00043865 (16 fields), GOOG-SCHNDR-00043866 (25 fields), GOOG-SCHNDR-00043868 (9 fields), GOOG-SCHNDR-00043857 (9 fields) and GOOG-SCHNDR-00043854 (6 fields).

**Content ID Claims Data**

With respect to the multi-billion entry Content ID database, we are willing to forego all data requests if Defendants are willing to provide and stipulate to the accuracy of several statistics that we believe can be easily gleaned by Defendants through simple data inquiries. However, in the event that Defendants choose to rely upon Content ID claims data to establish the number or frequency of fair use defenses being raised in the context of Content ID claims, we would request access to the same data set for any field that Defendants may utilize, and any additional fields that might be required to place fair use statistics in context.

The inquiries below are designed to illustrate the prevalence of Content ID claims, allow us to estimate the number of videos blocked by Content ID claims, and allow us to estimate the number of videos on the platform that are being monetized under the Content ID program. To accomplish these goals, we request the following statistics, but are open to discussing alternatives should you wish to provide them.

1. Average number of videos subject to Content ID claims per channel per month or annually across all channels;

2. Average number of videos subject to Content ID claims per channel per month or annually across channels in the YouTube partner program;

3. Percentage of videos on the platform at one or more points in time that are monetized by Content ID claims;

4. Percentage of videos monetized, blocked and tracked by Content ID claims.

**Takedown Notice Data**

With respect to data relating to Google's processing of DMCA takedown notices, we are prepared to eliminate 75% of all entries. As we pointed out today during the meet and confer, the 100 sample entries Defendants provided in GOOG-SCHNDR-00043867 can be filtered on Column E, complaint_origin, to determine whether the takedown notice was submitted through the webform or by a legacy member of the CVP program (which together total 25 entries), or by an entity with access to Content ID (75 entries). Entities with access to Content ID are not members of the class, and filtering on this field to limit complaint_origin to WEBFORM or LEGACY_CVP would eliminate 75% of all entries. You have indicated doubts as to whether this is a representative sample. Kindly let us know the results of your inquiries in that regard. Moreover, if you would be so kind as to quantify the number of DMCA takedown notices during the class period, that would allow us to better evaluate your burden and to work with you to determine whether sampling is essential given our dramatic reductions in the data requested.

With respect to requested fields, Defendants originally provided schema for 4 tables produced for this litigation and schema and sample data for another 4 tables that Defendants maintain in the ordinary course. As reflected in the schema provided, Plaintiffs requested data from 6 of those tables totaling 94 fields. In our requests below, we have both identified the

Lauren Gallo White
July 12, 2022
Page 3

information sought in plain English, as you requested, and have suggested one or more fields
where we believe such information may be gleaned. Our suggestions reflect a total of 16
potentially responsive fields, encompassing 8 specific goals. So again, we are dramatically
reducing our requested fields by more than 75%, reflecting our responsiveness to the Court's
concerns.

| Goal | Suggested field | Source |
|------|-----------------|--------|
| Identify the takedown notice | copyright_complaint_id | GOOG-SCHNDR-00043867 |
| Identify the takedown notice claimant and the copyright owner | Gaia_id | GOOG-SCHNDR-00043867 |
| | external_content_owner_id | GOOG-SCHNDR-00043867 |
| | claimant_entity_info | GOOG-SCHNDR-00043867 |
| | claimant_contact_info_id | GOOG-SCHNDR-00043867 |
| Confirm that the takedown is not filed by an entity with access to Content ID | Complaint_origin is WEBFORM or LEGACY_CVP | GOOG-SCHNDR-00043867 |
| Determine date of takedown notice to confirm within statute of limitations | Create_time | GOOG-SCHNDR-00043867 |
| Identify the copyrighted work | | |
| Identify the URL of the infringing videos | external_video_id | GOOG-SCHNDR-00043865 |
| Confirm that a strike was assessed and the video was taken down | Takedown_video_infos | GOOG-SCHNDR-00043867 |
| | complaint_status | GOOG-SCHNDR-00043867 |
| | complaint_video_status | GOOG-SCHNDR-00043865 |
| | Close_reason | GOOG-SCHNDR-00043865 |
| | create_time | GOOG-SCHNDR-00043857 |
| | update_time | GOOG-SCHNDR-00043857 |

Lauren Gallo White
July 12, 2022
Page 4

| | Strike_id | GOOG-SCHNDR-00043857 |
|---|---|---|
| No counterclaim was filed | If copyright_complaint_id DOES NOT EQUAL ANY ENTRY IN external_claim_id | GOOG-SCHNDR-00043867<br><br>GOOG-SCHNDR-00043868 |

With respect to our goal of "identify the copyrighted work," we know this data is a required element of the takedown notice on the webform and is present in the takedown notices filed by the representative plaintiffs. Mr. Ting also testified that his team routinely reviews the copyrighted work in evaluating the applicability of fair use when assessing the adequacy of takedown notices. We further note that Defendants produced this data for Pirate Monitor in the "description" field of GOOG-SCHNDR-00039141. However, it has not been included in any of the sample data or schema produced by Defendants. Your cooperation in establishing the correct field is appreciated.

Solely in the event that Defendants intend to contend that the prevalence of fair use issues precludes class certification, or that fair use is a defense to claims of infringement, we would request the following fields from GOOG-SCHNDR-00043866:

1. Identify the counter: Copyright_counter_id

2. Date of counter: create_time

3. Reason for Counter: counter_reason

4. Resolution of Counter: counter_status and review_decision

As discussed, where the entries for a field are not self-explanatory, we would like to know the meaning of the various entries. Kindly let us know the number of entries represented by the restriction to webform and legacy CVP entries, and the anticipated size of the resulting field requests. We hope that this proposal alleviates your concerns.

## Copyright Management Information ("CMI") Data

We ask that you identify the URL of any video whose original metadata at the time of upload has a populated CLFN field and provide that CLFN data. We require this data for the entire limitations period in order to identify the class. However, if Defendants agree to provide complete data following certification, we would accept a random sampling without replacement of 2 days per month for each month from July 3, 2017 through July 3, 2022. Kindly let us know whether this proposal alleviates your concerns.

Lauren Gallo White
July 12, 2022
Page 5

**<u>Advertising Metrics</u>**

     Defendants have indicated that they will not respond to Plaintiffs' RFP 130 regarding advertising metrics. You confirmed today that Defendants will not provide any such materials. Nonetheless, in the spirit of cooperation, we provide the following tailored requests that are needed for our expert to estimate network effects on the YouTube platform.  We request weekly data from January 1, 2016 to the present, representing 341 data points, for the following metrics, or for any equivalents that Defendants maintain in the ordinary course:

- Number of unique videos on platform
- Number of unique monetized videos on platform
- Number of unique active users (visitors) on platform
- Total video views
- Number of ad impressions on platform, by ad type
- YouTube Videos Shown on Google Video Network (outside YouTube)
- Advertising revenue
- Cost of Revenue/Traffic Acquisition Cost
- Subscription revenue
- Number of Channels on platform
- Number of user engagements with ad
- Average time on site per visitor
- Total user time spent on site
- Videos added this period
- Videos removed this period
- New monetized videos this period

     I suggest that we schedule a follow-up meeting for late Wednesday afternoon, pacific time. Kindly let me know your availability.

Sincerely,

Carol O'Keefe

# EXHIBIT 4

KOREIN TILLERY

*Attorneys at Law*

One U.S. Bank Plaza
505 North 7th Street, Suite 3600
St. Louis, MO 63101-1625
www.KoreinTillery.com

Carol O'Keefe

COKeefe@KoreinTillery.com
*p: (314) 241-4844*
*f: (314) 241-3525*

July 20, 2022                                                           Via electronic mail

Lauren Gallo White
Wilson Sonsini Goodrich & Rosati
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105

***Re:***   ***Schneider et al. v. YouTube, LLC et al., Case No. 3:20-cv-04423-JD (N.D. Cal.)***

Dear Lauren,

Thank you for meeting with us yesterday and discussing the outstanding issues regarding Defendants' production of data. I summarize below the parties' most recent positions as set forth in that call.

## **Content ID Claims Data**

Plaintiffs have agreed to forgo Content ID data, asking instead that Defendants produce specified summary statistics. Plaintiffs have also offered to have our statistical expert and his team provide assistance in formulating the appropriate queries, and in the alternative we are willing to renew our data request and to discuss an appropriate sampling that would allow our expert to derive these statistics.

You asserted that the burden associated with preparing summary statistics from data across channels and time periods was onerous. I explained that given the changing nature of the YouTube platform, we needed to understand data points across time. Plaintiffs have reformulated their requests in an effort to accommodate Defendants' claims of burden, and accordingly request that Defendants provide the following statistics for August 1st of 2017, 2018, 2019, and 2020:

1. For each of the 10 channels having the most active Content ID claims on that date, the number of active Content ID claims;

2. For each of the 10 YouTube Partner channels having the most active Content ID claims on that date, the number of active Content ID claims;

3. The percentage of publicly displayed videos on the platform that are monetized by Content ID claims;

4. The percentage of videos that are monetized, blocked and tracked by Content ID claims.

You further stated that it might be far easier to provide these metrics for the United States only. I agreed that we would accept such a limitation if it significantly reduces Defendants' burden.

**Takedown Notice Data**

You were personally unable to quantify the number of takedown notices and data that are at issue with respect to this request. Further, you have failed to describe in any detail how the requests are burdensome, such as the time or cost associated with complying with them. *See Shaw v. Experian Info. Sols., Inc.*, 306 F.R.D. 293, 301 (S.D. Cal. 2015) (in order to satisfy the burden of showing that a discovery request is "unduly burdensome," a defendant "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents") (citations omitted). Defendants' continuing refusal to provide these metrics, which would require investigation commensurate with your duty to meet and confer as the Court has ordered us to do, hinders our ability to craft a sampling methodology and reduce your burden.

As we explained, the total number of claimants filing webform, email, or CVP takedowns was approximately 300,000 in both 2017 and 2021. Even assuming that half of those claimants filing takedowns in 2017 were replaced with new claimants by 2021, that would result in a class of 450,000 claimants *globally*. I further note that Defendants' initial field proposal included "information concerning the claimant submitting the takedown notice." Gallo White Letter to O'Keefe of July 15, 2022, p. 2. We assume that includes country of origin. Kindly confirm.

That is certainly a reasonable class size, and we believe Judge Donato would likely grant us complete data for that class—even if it were in excess of 10 million entries. I also explained that internal Google documents indicate that the average number of takedown notices filed each day in 2017 was only 5,000 as compared with the sample of 25,000 notices from a single day in 2021 that Defendants had offered. Our statistical expert estimates, based on the sample Defendants previously provided, that 10 million entries consisting of 15 fields would total approximately 4 GB of data—hardly a staggering burden for data covering the entire global class.

Nonetheless, as I communicated today, we are willing to accept a sampling of takedown notices filed by non-Content ID claimants on 180 days across the class period, with the days to be chosen by our statistical expert. Based on the documents referenced in footnote 1, and the sample Defendants provided at GOOG-SCHNDR-00043867, our statistical expert estimates that this would result in 2.7 million entries, requiring up to 1.1 GB of data for 15 fields. Please note,

that while we are willing to accept a sample at this time, in the event the class is certified, we reserve the right to seek further data, including data necessary to provide adequate notice.

You stated that at some point in 2021, Defendants modified their data storage practices, and that accessing data prior to that change would be more burdensome. You could neither quantify nor explain the nature of that increased burden. I inquired whether the burden was in crafting the query and accessing the data, such that it would be roughly the same for a single day or for multiple days prior to the change. You said that you would investigate that question, but expressed skepticism that Defendants would agree to produce any data pre-dating that change.

With respect to fields, I indicated that we are willing to forgo strikes data and counter-notice data so long as Defendants will agree not to introduce evidence of strikes or counter-notices in opposing class certification or challenging our damages calculations. You stated that you did not anticipate any evidentiary submissions regarding the frequency of strikes or counter-notices. I further offered that if Defendants should decide to submit such evidence in the future, it would be conditional on producing the underlying data and further data adequate to provide context for any claims made by Defendants. You said you would consider this proposal.

We continue to ask that Defendants produce the fields external_copyright_owner_id and copyright_display_name as the field definitions produced by Defendants in GOOG-SCHNDR-00043856 and GOOG-SCHNDR-00043861 indicate that these include the "content owner" or "copyright owner." If they are never populated, the production should be limited. I explained that these fields were redacted in the sample data Defendants provided, and asked that you produce samples of these fields so that we may ascertain whether they do, in fact, contain data identifying the copyright owner.

Finally, we require revenue data to establish or even estimate damages. Defendants refuse to produce any additional revenue data. The parties are therefore at impasse.

**Fair-Use Related Data**

Our last request was reasonable and proportionate, and we stand by our objections to the single summary statistic Defendants have proposed to share. We will make no further requests on this issue, and will object based on your failure to produce should Defendants attempt to raise fair use at class certification, summary judgment, or trial.

**Copyright Management Information ("CMI") Data and Revenue Metrics**

We had previously proposed a sampling of 120 days, where videos uploaded on those days would be screened for populated CLFN fields. As indicated, based upon further discussions with our expert, we can reduce that request to 60 days, with the days to be selected by our expert. As with our sampling offer for takedown notice data, we reserve the right to seek additional data following class certification, as necessary. We have offered to limit our metrics requests to those generated by Google in the ordinary course at the frequency in which they are routinely

Lauren Gallo White
July 20, 2022
Page 4

generated. Defendants flatly refuse to produce any CMI data and refuse even to identify revenue metrics that are maintained in the ordinary course.

You advised that you have blocks of unavailability this week and would not be able to provide us with a response until next week. I asked if anyone else on your team could follow up, as Plaintiffs are reluctant to delay resolution of these issues. You assured me that you could provide all responses by Monday or Tuesday of next week, and that if Defendants intend to adhere to their prior positions on any of these points, that could be communicated by the end of this week.  We look forward to your response.

Sincerely,

Carol O'Keefe