1   KEKER, VAN NEST & PETERS LLP
    ROBERT A. VAN NEST - # 84065
2   rvannest@keker.com
    DAN JACKSON - # 216091
3   djackson@keker.com
    JULIA L. ALLEN - # 286097
4   jallen@keker.com
    TRAVIS SILVA - # 295856
5   tsilva@keker.com
    ANNA PORTO - # 319903
6   aporto@keker.com
    LUKE APFELD - # 327029
7   lapfeld@keker.com
    AMOS J. B. ESPELAND - # 332895
8   aespeland@keker.com
    633 Battery Street
9   San Francisco, CA 94111-1809
    Telephone:    415 391 5400
10  Facsimile:    415 397 7188

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
         lwhite@wsgr.com

11  Attorneys for Defendants and Counterclaimants
    YOUTUBE, LLC and GOOGLE LLC

12

13                      UNITED STATES DISTRICT COURT

14                     NORTHERN DISTRICT OF CALIFORNIA

15                         SAN FRANCISCO DIVISION

16  MARIA SCHNEIDER, UNIGLOBE
    ENTERTAINMENT, LLC, and AST
17  PUBLISHING, LTD., individually and on
    behalf of all others similarly situated,

18              Plaintiffs,

19         v.

20  YOUTUBE, LLC and GOOGLE LLC,

21              Defendants.

22  YOUTUBE, LLC and GOOGLE LLC,

23              Counterclaimants,

24         v.

25  PIRATE MONITOR LTD., PIRATE
    MONITOR LLC, and GÁBOR CSUPÓ,

26              Counterclaim Defendants.

27

28

Case No. 3:20-cv-04423-JD

**DEFENDANTS' TRIAL BRIEF**

Dept.:     Courtroom 11 – 19th Floor
Judge:     Hon. James Donato

Date Filed: July 2, 2020

Trial Date: June 12, 2023

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................2

        A.      Plaintiffs cannot prove the elements of their causes of action. ..................2

                1.      Plaintiffs' allegations of direct copyright infringement will fail. ................2

                2.      Plaintiffs' allegations of contributory copyright infringement will
                        fail. ...........................................................................................................3

                3.      Plaintiffs' allegations of vicarious copyright infringement will fail............4

                4.      Plaintiffs' allegations of intentional removal of CMI will fail. ...................4

                5.      Plaintiffs' damages claims will fail...........................................................5

                        a.      Defendants cannot prove proximate causation. ..............................5

                        b.      Statutory damages, if any, will be minimal. ...................................7

        B.      Defendants will prevail on their affirmative defenses. ..............................8

                1.      Defendants will prevail on their license defenses.....................................8

                2.      Defendants will prevail on their time-bar defenses. ..................................9

                3.      Defendants will prevail on their mitigation defense. ................................10

                4.      Defendants will prevail on their fair-use defense. ...................................10

        C.      The counterclaim against Pirate Monitor and Gabor Csupó..................................10

III.    CONCLUSION....................................................................................................10

1

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bank of America Corp. v. City of Miami, Fla.*,
    581 U.S. 189 (2017)................................................................................................5, 6, 7

*Bourne v. Walt Disney Co.*,
    68 F.3d 621 (2d Cir. 1995)..............................................................................................9

*Bryant v. Media Right Prods., Inc.*,
    603 F.3d 135 (2d Cir. 2010).............................................................................................8

*City of Oakland v. Wells Fargo & Co.*,
    14 F.4th 1030 (9th Cir. 2021) .........................................................................................5

*Harrington v. Pinterest, Inc.*,
    No. 5:20-cv-05290-EJD, 2022 U.S. Dist. LEXIS 168788 (N.D. Cal. Sep. 19,
    2022) ...............................................................................................................................5

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992)........................................................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)........................................................................................................6

*MAI Sys. Corp. v. Peak Comput., Inc.*,
    991 F.2d 511 (9th Cir. 1993) .........................................................................................9

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ...............................................................................2, 5, 6, 7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984).................................................................................................3, 4, 7

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) .........................................................................................5

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) .........................................................................................3

**Statutes**

17 U.S.C. § 504...........................................................................................................................2, 8

17 U.S.C. § 512...........................................................................................................................1, 10

ii

1

17 U.S.C. § 1202.............................................................................................................1, 2, 4, 5

2

**Rules**

3

Federal Rule of Civil Procedure 26 ...........................................................................................2

4

**Other Authorities**

5

4 M. Nimmer & D. Nimmer, Copyright § 14.04 [B][1][a] (2020) .................................................8

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' TRIAL BRIEF
Case No. 3:20-cv-04423-JD

2143897

## I.   INTRODUCTION

The Court's Standing Order directs the parties to specify each cause of action and defense still in dispute. Plaintiffs allege that Defendants are liable for direct, contributory, and vicarious copyright infringement and Plaintiff Maria Schneider alleges that Defendants are liable for removing copyright management information (CMI), or distributing works with CMI removed, in alleged violation of 17 U.S.C. § 1202. Plaintiffs have agreed not to pursue claims based on works and allegedly infringing videos resolved by the reasoning in this Court's order granting in part Defendants' motion for summary judgment as to Ms. Schneider (Dkt. 222) and have also voluntarily dropped additional works and allegedly infringing videos without explanation.

But that is nowhere near enough streamlining to make this case trial ready. Plaintiffs still contend that they will prove *317 separate acts of infringement*, varying from concert videos to audiobooks, movies, trailers, and various other works. Defendants have repeatedly asked Plaintiffs to narrow their claims, or at least to identify what subset of these 317 separate acts of infringement will be presented to the jury, but Plaintiffs have refused to do so. This hide-the-ball approach is extremely unfair and will lead to great confusion and inefficiencies for the Court, the jurors, and the parties. Plaintiffs should be required to identify immediately a reasonable number of infringements to be tried in the limited time for trial that will be available.

As for defenses, Defendants contend that Plaintiffs cannot meet their burden of proving the elements of their claims. In addition, Defendants contend that Plaintiffs' remaining claims are barred by express and implied licenses, by statutory and contractual limitations periods, and by the doctrine of fair use.[1] Defendants also have a counterclaim against former Plaintiff Pirate Monitor and its principal Gabor Csupó for violation of 17 U.S.C. § 512(f).

Liability issues aside, it is also important to highlight what remains in dispute regarding Plaintiffs' damages claims. Plaintiffs are seeking roughly $23 in revenue per work, so even if they prevail on every one of their 317 infringement claims, they would be seeking roughly $7,300 in

---

[1] As Defendants have informed Plaintiffs and the Court, Defendants do not intend to pursue the DMCA safe-harbor defense if the Court denies the pending class-certification motion. Based on the Court's comments at the hearing on class certification, Defendants present this trial brief assuming the case will proceed as an individual action, and thus do not discuss the safe harbor.

total gross revenue, *before* YouTube deducts its "expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see* Defs.' MIL 1 at 3 n.3.[2] Plaintiffs *did not dispute that form of calculation*; instead, they *endorsed it* as the "computation" of damages Plaintiffs were required to provide under Rule 26(a)(1)(iii). *See* Pls.' Opp. to MIL 1 at 3:15-21. Thus, by Plaintiffs' own admissions (setting aside statutory damages for the moment, *but see* § II.A.5.b, *infra*), this is *at most* a $7,300 case. Indeed, as a matter of law, this is not even a $7,300 case because that figure has no basis in proximate causation, which is a fundamental element of all of Plaintiffs' causes of action. *See*, *e.g.*, *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

Plaintiffs' claims will fail at trial. Plaintiffs will not be able to prove the elements of their causes of action. And Defendants have strong affirmative defenses that will prevail.

## II.      ARGUMENT

### A.      Plaintiffs cannot prove the elements of their causes of action.

Plaintiffs allege that Defendants are liable for direct, contributory, and vicarious copyright infringement, and for removing CMI in alleged violation of 17 U.S.C. § 1202. Plaintiffs will not be able to prove the elements of any of their claims and, even if they do, Defendants will prevail on their affirmative defenses, as discussed further below.

#### 1.      Plaintiffs' allegations of direct copyright infringement will fail.

To prove direct copyright infringement, each plaintiff must prove, by a preponderance of the evidence, for each of that plaintiff's works at issue: (1) plaintiff is the owner of a valid copyright; (2) the defendant copied original expression from the copyrighted work; (3) the defendant's role was active, rather than passive, consisting of more than automatically copying, transmitting, and displaying materials upon the instigation of others; and (4) at least one act that the plaintiff alleges constitutes an infringement occurred within the United States. *See* Disputed Instruction No. 41. Further, Plaintiffs must establish that the work was registered with the U.S. Copyright Office before the plaintiff filed suit, or that it is an exempt "foreign work."

---

[2] Except as otherwise noted, emphasis in quotations has been added, citations have been omitted, and quotations have been further simplified by the removal of internal quotation marks, etc.

1   But Defendants did not copy anything of Plaintiffs', much less do so actively:

2   That "direct" infringement requires "active" involvement is hardly surprising,
    given the correlation between the words "active" and "direct." … By contrast,
3   activities that fall on the other side of the line, such as automatic copying, storage,
    and transmission of copyrighted materials, when instigated by others, do not
4   render an Internet service provider strictly liable for copyright infringement. In
    other words, to demonstrate volitional conduct, [a plaintiff] must provide some
5   evidence showing the alleged infringer exercised control (other than by general
    operation of its website); selected any material for upload, download, transmission,
6   or storage; or instigated any copying, storage, or distribution of its photos.

7   *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (citing *Perfect 10, Inc. v.*

8   *Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017)); see also S.J. Order (Dkt. 222) at 3.  While

9   Plaintiffs tout Defendants' Autoplay and Watch Next features as evidence of volitional conduct,

10  those features have nothing to do with the creation or uploading of infringing works, and instead

11  are automatic features of the platform designed for *non-infringing* purposes, as Plaintiffs' expert

12  admits. *See* Dkt. 262-5 (Singer Rpt.) ¶ 113.

13      **2.      Plaintiffs' allegations of contributory copyright infringement will fail.**

14      To prove contributory copyright infringement, each plaintiff must prove, by a

15  preponderance of the evidence, for each of that plaintiff's works at issue: (1) the YouTube user

16  who uploaded the allegedly infringing video infringed the plaintiff's copyright within the United

17  States; (2) the defendant had actual knowledge of the specific infringing activity of the YouTube

18  user who uploaded the video; and (3) the defendant intentionally induced or materially

19  contributed to the YouTube user's infringing activity. *See* Disputed Instruction No. 44.

20      Even if Plaintiffs can prove the first element, which is doubtful in many instances, they

21  will not be able to prove the second and third as to the Defendants. Plaintiffs point to DMCA

22  takedown notices and Defendants' Content ID tool to suggest knowledge of infringing activity on

23  the YouTube platform, but neither evidences infringement, let alone knowledge of the alleged

24  specific infringing activity. Furthermore, as discussed above, the Supreme Court held in *Sony*

25  *Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) that a product does not

26  contribute to infringement if it is "widely used for legitimate, unobjectionable purposes. Indeed, it

27  need merely be *capable* of substantial noninfringing uses." *Id.* at 442. YouTube is indisputably

28  *capable* of substantial non-infringing uses. Indeed, Plaintiffs' damages expert *admits* that

3

DEFENDANTS' TRIAL BRIEF
Case No. 3:20-cv-04423-JD

2143897

1    Plaintiffs seek disgorgement of profits from *non*-infringing uses. Dkt. 262-5 (Singer Rpt.) ¶ 113.

2        **3.        Plaintiffs' allegations of vicarious copyright infringement will fail.**

3        To prove vicarious copyright infringement, each plaintiff must prove, by a preponderance

4    of the evidence, for each of that plaintiff's works at issue: (1) the YouTube user who uploaded the

5    allegedly infringing video infringed the plaintiff's copyright; (2) the defendant *directly* benefited

6    financially from—*i.e.*, *because* of—the infringing activity of the YouTube user; (3) the defendant

7    had the legal right and practical ability to supervise or control the infringing activity of the

8    YouTube user; and (4) the defendant failed to exercise that right and ability. *See* Disputed

9    Instruction No. 43; S.J. Order (Dkt. 222) at 3–4 ("A failure to change operations to avoid

10   distribution of infringing content is not the same as declining to exercise a right and ability to stop

11   direct infringement by others.") (quotation marks omitted). Further, Plaintiffs must establish the

12   infringement occurred within the United States. For the reasons stated above and more to be

13   proven at trial, Plaintiffs cannot prove these elements.

14       Plaintiffs cannot establish that Defendants directly benefited from any of the allegedly

15   infringing activity. Plaintiffs' reliance on Content ID to argue a right to control or supervise is

16   equally misplaced: Content ID identifies only matches with certain partner-provided reference

17   files, not infringements.  Plaintiffs' vicarious infringement claim cannot succeed.

18       **4.        Plaintiffs' allegations of intentional removal of CMI will fail.**

19       In order to prevail on a claim for removing or altering CMI, a plaintiff must prove by a

20   preponderance of the evidence that (1) the defendant either (a) intentionally removed or altered

21   CMI without the plaintiff's permission; or (b) distributed or imported for distribution the

22   plaintiff's works knowing at the time of distribution or importation that the CMI had been

23   removed or altered without the plaintiff's permission; and (2) at the time the defendant took any

24   such actions, it knew or had reasonable grounds to know that doing so will induce, enable,

25   facilitate or conceal copyright infringement. *See* 17 U.S.C. § 1202.

26       Plaintiff Maria Schneider will not be able to prove these elements. *First*, she will not be

27   able to meet the statutory definition of CMI, 17 U.S.C. § 1202(c), because she cannot prove that

28   any ISRCs associated with her works were in fact "conveyed in connection with" the copies of

1    her works at issue in this case. *Second*, she will not be able to prove the scienter requirement of

2    element one: Plaintiff must prove that the defendant knew what was removed or altered was CMI.

3    It is not enough for the plaintiff to assert that, because some information has been removed or

4    altered, and that information might include CMI, the defendant knew the information was CMI.

5    *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) (describing scienter

6    requirement); *Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 U.S. Dist. LEXIS

7    168788, at *10-11 (N.D. Cal. Sep. 19, 2022) (requiring actual knowledge that removed

8    information was CMI). *Third*, she will not be able to prove that Defendants knew, or had

9    reasonable grounds to know, that removal of the information *will* induce, enable, facilitate or

10   conceal copyright infringement. 17 U.S.C. § 1202.

11          **5.      Plaintiffs' damages claims will fail.**

12                 **a.      Defendants cannot prove proximate causation.**

13          Plaintiffs' claims for damages will fail, first and foremost, because Plaintiffs cannot prove

14   proximate causation. In *Polar Bear*, a Ninth Circuit panel led by Judge McKeown held that

15   copyright plaintiffs must carry the burden of proving a causal nexus in order to obtain direct or

16   indirect profits. *See* 384 F.3d at 711 n.7 (direct profits); *id.* at 710–16 (indirect profits). Plaintiffs

17   "must *first* show a causal nexus between the infringement and the gross revenue," and *only then*,

18   "once the causal nexus is shown, the infringer bears the burden of apportioning the profits that

19   were not the result of infringement." *Id.* at 711. The court concluded that the plaintiff's effort to

20   recover profits from "enhanced prestige" failed as a matter of law. *Id.* at 713–14. The plaintiff's

21   "theory stretche[d] the causation rubber band to its breaking point." *Id.* at 714.

22          Seventeen years later, Judge McKeown, writing for the Ninth Circuit *en banc* this time,

23   held that proximate causation is not like a rubber band after all because it generally *does not*

24   *stretch beyond direct causation*, as the Supreme Court held over the intervening years, especially

25   in *Bank of America Corp. v. City of Miami, Fla.*, 581 U.S. 189 (2017) (*Miami*); *see City of*

26   *Oakland v. Wells Fargo & Co.*, 14 F.4th 1030, 1032–42 (9th Cir. 2021) (en banc). *Miami* and

27   *Oakland* addressed the Fair Housing Act (FHA), but the Supreme Court made clear that the

28

principles of proximate causation it set forth in *Miami* apply to *all* "federal causes of action,"[3]

unless Congress specifically states otherwise:

> It is a well established principle of the common law that in all cases of loss, we are
> to attribute it to the proximate cause, and not to any remote cause. We assume
> Congress is familiar with the common-law rule and does not mean to displace it
> *sub silentio* in federal causes of action. A claim for damages [that is] akin to a tort
> action is no exception to this traditional requirement. Proximate-cause analysis is
> controlled by the nature of the statutory cause of action. The question it presents is
> whether the harm alleged has a sufficiently close connection to the conduct the
> statute prohibits.

*Id.* at 201;[4] *see also Polar Bear*, 384 F.3d at 708 (causation requirement in copyright cases is

"akin to tort principles of causation and damages").

In *Miami*, the Eleventh Circuit had espoused a theory of proximate causation in which the

foreseeability that one event might lead to another was sufficient to establish a causal nexus

between the two, but the Supreme Court rejected that theory: "foreseeability alone does not

ensure the close connection that proximate cause requires." *Miami*, 581 U.S. at 202. A statutory

violation might be "expected to cause ripples of harm to flow far beyond the defendant's

misconduct," but "[n]othing in the statute suggests that Congress intended to provide a remedy

wherever those ripples travel." *Id.* Instead, proximate causation requires a "direct connection"

between the alleged violation and the remedy sought, and the Supreme Court has "repeatedly

applied directness principles to statutes with common-law foundations. *The general tendency in*

*these cases, in regard to damages at least, is not to go beyond the first step.*" *Id.* at 203.

Even more clearly than the FHA—which has an exceptionally broad reach, *see id.* at 197–

99—nothing in the Copyright Act suggests that Congress intended to allow plaintiffs to go

---

[3] Indeed, the Court declined to prescribe a specific proximate-causation standard for the FHA, underscoring that the principles it set forth are generally applicable. *See* 581 U.S. at 203.

[4] In *Miami*, Justice Breyer relied heavily on in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), in which Justice Scalia convinced the unanimous Court to endorse the point he had made in his concurrence in *Holmes v. Securities Investor Protection Corp.*:

> [I]t has always been the practice of common-law courts (and probably of all courts, under all
> legal systems) to require as a condition of recovery, unless the legislature specifically
> prescribes otherwise, that the injury have been proximately caused by the offending conduct.
> Life is too short to pursue every human act to its most remote consequences; "for want of a
> nail, a kingdom was lost" is a commentary on fate, not the statement of a major cause of action
> against a blacksmith.

503 U.S. 258, 287 (1992) (Scalia, J., concurring); *see Lexmark*, 572 U.S. at 132 (citing same).

DEFENDANTS' TRIAL BRIEF
Case No. 3:20-cv-04423-JD

2143897

1    beyond the "first step" of direct causation, *see id.* at 202–03. On the contrary, when the Supreme

2    Court held that the sale of video recorders was not contributory copyright infringement, it

3    concluded: "One may search the Copyright Act in vain for any sign that the elected

4    representatives of the millions of people who watch television every day have made it unlawful to

5    copy a program for later viewing at home, or have enacted a flat prohibition against the sale of

6    machines that make such copying possible." *Sony*, 464 U.S. at 456. Copyright owners can only

7    recover for *infringement*; not *non*-infringement. *Id.* at 442. A product does not contribute to

8    infringement if it is "widely used for legitimate, unobjectionable purposes. Indeed, it need merely

9    be *capable* of substantial noninfringing uses." *Id.*

10          Here, Plaintiffs not only seek disgorgement of Defendants' profits "from ads that

11   YouTube serves on Infringing Content," but *also* profits from "*indirect* network effects" in the

12   form of "revenues from ads served on *non-infringing* content." Dkt. 262-5 (Singer Rpt.) ¶ 113.

13   Even under *Polar Bear*'s "rubber band" theory of causation, that "stretches the causation rubber

14   band to [the] breaking point." *Polar Bear*, 384 F.3d at 714. And Plaintiffs' causation theory must

15   fail *a fortiori* under the Supreme Court's more recent instruction "not to go beyond the first step"

16   of direct causation without a statutory basis. *Miami*, 581 U.S. at 203. There is no such basis here

17   because the YouTube features at the heart of plaintiffs' claims for indirect profits, Watch Next

18   and Autoplay, are clearly "capable of substantial noninfringing uses." *Sony,* 464 U.S. at 442.

19   Indeed, Dr. Singer *admits* that they offer the user "*non-infringing* content." Dkt. 262-5 (Singer

20   Rpt.) ¶ 113. Watch Next gives users a choice of what to watch next, and Autoplay gives them an

21   experience like watching television: videos play continuously. To paraphrase *Sony*, one may

22   search the Copyright Act in vain for any sign that Congress made it unlawful for YouTube to

23   provide these TV-like features to the public. *See Sony*, 464 U.S. at 456.

         **b.      Statutory damages, if any, will be minimal.**

25          Plaintiffs also will not be able to recover high amounts of statutory damages. When

26   determining the amount of such damages, juries may consider "(1) the infringer's state of mind;

27   (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright

28   holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in

1    providing evidence concerning the value of the infringing material; and (6) the conduct and

2    attitude of the parties." *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

3         Here, as in *Bryant*, Defendants, if they infringed at all, which they did not, did so

4    innocently. Also as in *Bryant*, Defendants' alleged profits were "meager," *id.—roughly $7,300*,

5    even under Plaintiffs' theory, which fails to account for proximate causation *and* includes

6    "deductible expenses and the elements of profit attributable to factors other than the copyrighted

7    work." 17 U.S.C. § 504(b). Furthermore, and unlike in *Bryant*—thus counseling for minimal

8    damages *a fortiori*—Plaintiffs could have, but failed to, mitigate their damages and/or

9    Defendants' profits from the alleged infringements. Indeed, plaintiff Maria Schneider

10   *intentionally refused* to mitigate. "A properly instructed jury could therefore choose to award

11   minimal amounts of statutory damages for each such instance." 4 M. Nimmer & D. Nimmer,

12   Copyright § 14.04 [B][1][a] (2020).

13   **B.       Defendants will prevail on their affirmative defenses.**

14           **1.       Defendants will prevail on their license defenses.**

15           In order to prevail on their express license defense, Defendants must prove that they

16   received an express license to copy, distribute, or use the plaintiff's copyrighted work. They will

17   so prove. Ms. Schneider, Uniglobe, and AST Publishing licensed some or all of their works to the

18   Defendants under the YouTube Terms of Service. Plaintiff Schneider further licensed her works

19   to Defendants via Artistshare Publishing and Modern Works Publishing. And Uniglobe licensed

20   its works to Defendants via Vision Films and ValleyArm Digital Limited.[5] YouTube may also

21   have various other licenses for the CMI claims.

22           Defendants alternatively have an implied license defense as to Ms. Schneider, and the

23   elements of that defense include: (1) Ms. Schneider knew or should have known that YouTube

24   was displaying or distributing her works on her behalf; and (2) Ms. Schneider received a benefit

25   from the display or distribution of her works. Both are true, as Defendants will prove at trial.

26           While Plaintiffs may try to escape these license defenses through offering parol-evidence

27

28   [5] AST Publishing likewise may have licensed its work to Defendants, but its failure to produce
     unredacted documents makes discerning the state of its rights impossible.  *See* Defs.' MIL 4.

1  testimony, Plaintiffs' witnesses—especially Ms. Schneider and her lawyer, Andrew Sanders—

2  should not be allowed to offer such testimony in an improper effort to evade the Court's summary

3  judgment order. *See* Dkt. 222 at 12–13. Nor should they be able to testify about the AMP to

4  MWP assignment with self-serving testimony, rather than proving the scope of the license itself.

5        "To prevail on a claim of copyright infringement, a plaintiff must prove ownership of a

6  copyright and a copying of protectable expression *beyond the scope of a license.*" *MAI Sys. Corp.*

7  *v. Peak Comput., Inc.*, 991 F.2d 511, 517 (9th Cir. 1993) (citing *S.O.S., Inc. v. Payday, Inc.*, 886

8  F.2d 1081, 1085 (9th Cir. 1989) ("To prevail on its claim of copyright infringement, S.O.S. must

9  prove (1) ownership of copyright in the payroll programs, and (2) "copying" of protectible

10  expression by Payday *beyond the scope of Payday's license.*")). Thus, "in cases where only the

11  scope of the license is at issue, *the copyright owner bears the burden of proving that the*

12  *defendant's copying was unauthorized.*" *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.

13  1995) (citing *S.O.S.,* 886 F.2d at 1085; *Microsoft Corp. v. Harmony Computs. & Elecs., Inc.*, 846

14  F. Supp. 208, 210 (E.D.N.Y. 1994); *NLFC, Inc. v. Devcom Mid–America, Inc.*, 45 F.3d 231, 235

15  n.5 (7th Cir.), *cert. denied*, 515 U.S. 1104 (1995)). "Copyright disputes involving only the scope

16  of the alleged infringer's license present the court with a question that essentially is one of

17  contract: whether the parties' license agreement encompasses the defendant's activities. Just as in

18  an ordinary contract action, the party claiming a breach carries the burden of persuasion." *Bourne,*

19  68 F.3d at 631 (citing *Gordon v. Leonetti*, 324 F.2d 491, 492 (2d Cir.1963)). *Plaintiffs cannot*

20  *carry that burden with parol evidence. See id.* at 629 ("In order to analyze [plaintiff's] contention

21  that [defendant] has no right to produce videocassettes utilizing the Compositions, *we first must*

22  *look to the specific language of the grants.*").

23        **2.**      **Defendants will prevail on their time-bar defenses.**

24        To prevail on their statute-of-limitations defense, Defendants must prove by a

25  preponderance of the evidence that the plaintiff failed to file the lawsuit within three years after

26  the plaintiff knew or should have known about the infringement. *See* Disputed Instruction No. 50.

27  To prevail on their contractual-limitations defense, Defendants must prove by a preponderance of

28  the evidence that (1) the plaintiff accepted YouTube's Terms of Services agreement; and (2) the

plaintiff failed to file the plaintiff's lawsuit within one year after the plaintiff knew or should have known about the infringement or the content management information violation. Defendants will prove that many of Plaintiffs' claims are time-barred under the three-year period, and certainly under the contractual one-year period.

**3.    Defendants will prevail on their mitigation defense.**

As already noted above in the context of statutory damages (*see* § II.A.5.b, *supra*), Plaintiffs have failed to mitigate what they seek to recover from Defendants' alleged infringements—in this case, Defendants' profits. Defendants will establish this by proving, by a preponderance of the evidence, the plaintiff's failure to use reasonable efforts to mitigate those profits and the amount by which damages would have been mitigated.

**4.    Defendants will prevail on their fair-use defense.**

In considering fair use, the jury will consider (1) the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. These factors favor Defendants.

**C.    The counterclaim against Pirate Monitor and Gabor Csupó.**

Finally, Defendants have a counterclaim against former Plaintiff Pirate Monitor and its principal Gabor Csupó for violating 17 U.S.C. § 512(f). Counterclaimants have the burden of proving that (1) Pirate Monitor and/or Mr. Csupó represented that a video on YouTube was infringing; (2) that representation was materially false; (3) Pirate Monitor and/or Mr. Csupó knew that the representation was false at the time the representation was made, or was willfully blind to the falsity of the representation; (4) YouTube and Google relied on Pirate Monitor and/or Mr. Csupó's misrepresentation in removing videos from YouTube; and (5) YouTube and Google were damaged as a result. YouTube and Google will prevail on this counterclaim.

**III.    CONCLUSION**

Plaintiffs cannot prove their claims. And even if they could, Defendants have strong affirmative defenses, as well as a counterclaim, that will prevail.

10

2143897

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated:  May 11, 2023

KEKER, VAN NEST & PETERS LLP

By:   /s/ *Robert A. Van Nest*
ROBERT A. VAN NEST
DAN JACKSON
JULIA L. ALLEN
TRAVIS SILVA
ANNA PORTO
LUKE APFELD
AMOS J. B. ESPELAND

DAVID H. KRAMER
LAUREN GALLO WHITE
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Email:  dkramer@wsgr.com
           lwhite@wsgr.com

Attorneys for Defendants and
Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

DEFENDANTS' TRIAL BRIEF
Case No. 3:20-cv-04423-JD

2143897