George A. Zelcs *
gzelcs@koreintillery.com
Randall P. Ewing, Jr. *
rewing@koreintillery.com
Ryan Z. Cortazar *
rcortazar@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Tel: (312) 641-9750/ Fax: (312) 641-9751

Stephen M. Tillery *
stillery@koreintillery.com
Steven M. Berezney, CA Bar #329923
sberezney@koreintillery.com
Carol O'Keefe *
cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Tel: (314) 241-4844/ Fax: (314) 241-3525

Joshua Irwin Schiller, CA Bar #330653
jischiller@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Tel: (415) 293-6800/ Fax: (415) 293-6899

Philip C. Korologos *
pkorologos@bsfllp.com
Jeffrey Waldron*
jwaldron@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel: (212) 446-2300/ Fax: (212) 446-2350

*Admitted pro hac vice*

*Attorneys for Plaintiffs and Counterclaim Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., et al.,<br><br>Counterclaim Defendants. | Case No. 3:20-cv-04423-JD<br><br>**PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' TRIAL BRIEF**<br><br>Judge: Hon. James Donato<br><br>Date:  June 12, 2023<br>Time: 9:00 a.m |

Pursuant to Paragraph 4 of this Court's Standing Order for Civil Jury Trials, Plaintiffs Maria Schneider, Uniglobe Entertainment, LLC ("Uniglobe"), and AST Publishing, Ltd. ("AST") hereby submit this Trial Brief "specifying each cause of action and defense remaining to be tried along with a statement of the applicable legal standard."  Standing Order for Civil Jury Trials ¶ 4.

## PROCEDURAL HISTORY

Plaintiffs assert claims against Defendants for violations of the Copyright Act, including direct copyright infringement (Cause of Action I), contributory copyright infringement (Cause of Action III), vicarious copyright infringement (Cause of Action IV), and violations of 17 U.S.C. § 1202, which prohibits the removal of copyright management information or the distribution of copies of copyrighted works with knowledge that copyright management information had been removed (Cause of Action V).

Plaintiffs bring their claims against Defendants on behalf of themselves and four proposed classes: (1) the Registered Works Infringement Class; (2) the Foreign Unregistered Works Infringement Class; (3) the ISRC Class; and (4) the CLFN Class.  [*See* ECF 245 at 3–4.] Plaintiffs' motion for class certification remains pending before the Court.

Defendants assert that they cannot be held liable for Plaintiffs' copyright infringement claims because (1) they are eligible for the protections of the safe harbor provisions of the Digital Millennium Copyright Act (DMCA)[1]; (2) the alleged copyright violations were authorized by express licenses of the works; (3) the alleged infringements constitute fair use; and (4) some of the alleged infringements are outside of the applicable limitations period.

The Court issued a Summary Judgment Order on January 5, 2023 [ECF 222], granting Defendants' partial summary judgment motion against Ms. Schneider "with respect to (1) all infringement claims based on the 27 works for which Schneider failed to identify an infringement;

---

[1] On May 4, 2023, Defendants informed Plaintiffs that they will seek not to pursue a defense under the safe harbor provisions of the DMCA if neither of the putative infringement classes is certified. Plaintiffs oppose their attempt to unilaterally amend their pleadings to withdraw this defense which has been vigorously litigated for three years.  Plaintiffs filed an administrative motion on May 5, 2023, bringing this issue to the Court's attention and requesting further argument or briefing on its impact on class certification issues.  [ECF 309.]

(2) direct infringement claims based on the 15 works that were uploaded to YouTube by Schneider or with her permission; and (3) the 121 alleged infringements that Ms. Schneider had actual knowledge of more than one year before filing suit." [*Id.* at 22.]  As a result, Ms. Schneider's claims are limited to infringements for which she did not have actual knowledge more than one year before filing suit.  Further, Ms. Schneider's direct infringement claims are limited to those works that were not licensed to YouTube through upload.  Ms. Schneider's indirect infringement claims were not affected by the Summary Judgment Order.  Uniglobe and AST eliminated claims of direct infringement for their works that were uploaded to YouTube, and claims for any instances of infringement of which they had actual knowledge more than one year before the commencement of this action, consistent with that Order.

On March 3, 2023, Plaintiffs submitted a partial motion for summary judgment as to whether Defendants are eligible for the safe harbor provisions of the Digital Millennium Copyright Act ("DMCA").  [ECF 265].  That motion set forth sufficient, but not comprehensive, reasons why that issue should be resolved in favor of Plaintiffs—specifically because YouTube prevents copyright holders from seeing search results for the huge number of videos that are private or unlisted.  Plaintiffs' partial motion for summary judgment remains pending before the Court.

Defendants also bring a counterclaim against Pirate Monitor Ltd. (formerly a Plaintiff but which voluntarily dismissed its claims [ECF 66]) and Gabor Csupo under 17 U.S.C. 512(f) for allegedly submitting false takedown notices in 2019 that caused videos to be removed from YouTube.[2]  Defendants cannot carry their burden of proof as to these counterclaims.  Pirate Monitor Ltd. was dormant at the time the alleged violations occurred, and the takedown notices in question were submitted by agents or sub-agents of another company, Intellectual Property LLC, for which Mr. Csupo is not liable.  [*See* ECF 260 at 9–10, 16–18.]  Mr. Csupo and Pirate Monitor Ltd. assert affirmative defenses of unclean hands and *in pari delicto*.

---

[2] Defendants purport to bring counterclaims against Pirate Monitor, LLC, a non-existent entity.

## I. COPYRIGHT ACT VIOLATIONS

### A. Direct Copyright Infringement

In the Ninth Circuit, a *prima facie* case of direct copyright infringement requires that the plaintiff show (1) "ownership of the allegedly infringed material," (2) that "the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106," and (3) "causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10 v. Giganews*, 847 F.3d 657, 666 (9th Cir. 2017).

A plaintiff bears the burden of proving copyright ownership, which is a threshold question in copyright infringement actions. *See Fleischer Studios v. A.V.E.L.A.*, 654 F.3d 958, 962 (9th Cir. 2011) (citing *Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir. 1984)). "To prove ownership, Plaintiff must establish either that it authored the asserted work, or that there has been a 'transfer of rights or other relationship between the author and the plaintiff so as to constitute the plaintiff as the valid copyright claimant.'" *Art of Living Found. v. Does 1-10*, 2012 WL 1565281, at *8 (N.D. Cal. May 1, 2012) (quoting 4-13 Nimmer on Copyright § 13.01). A copyright registration certificate is "prima facie evidence of the validity of the copyright and the facts stated in the certificate." *United Fabrics Int'l. v. C&J Wear.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

The following exclusive rights attach to the Plaintiffs' copyrighted works:

> "(1)  to reproduce the copyrighted work in copies or phonorecords;
> (2)  to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5)  in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6)  in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C § 106.

Pursuant to 17 U.S.C. § 501, a plaintiff has standing to sue if he or she has "a legal or beneficial interest in at least one of the exclusive rights described in § 106." *Silvers v. Sony Pictures Ent.*, 402 F.3d 881, 885 (9th Cir. 2005).

1  "*Direct* liability must be premised on conduct that can reasonably be described as the
2  *direct cause* of the infringement 'with a nexus sufficiently close and causal to the illegal copying
3  that one could conclude that the machine owner himself trespassed on the exclusive domain of the
4  copyright owner.'" *Perfect 10. v. Giganews*, 2014 WL 8628034, at *7 (C.D. Cal. Nov. 14, 2014)
5  (quoting *Costar Group v. Loopnet*, 373 F.3d 544, 550 (4th Cir. 2004). The issue of direct
6  infringement for an internet service provider like YouTube thus turns on whether the defendant:
7  (1) exercised control over the infringing act; (2) selected the infringing material; or (3) instigated
8  any copying, storage, or distribution. *See Giganews*, 847 F.3d at 670.
9        Plaintiffs bring claims for infringements of United States works and foreign works. A
10 "United States work" is a work that is "first published—(A) in the United States; (B)
11 simultaneously in the United States and another treaty party or parties, whose law grants a term of
12 copyright protection that is the same as or longer than the term provided in the United States."
13 17 U.S.C. §101 (omitting subparts not relevant). Under 17 U.S.C. § 411(a) and (c), no action for
14 infringement may be brought for a "United States work" unless the work is registered prior to
15 infringement or within three months of its first transmission.
16       A "foreign work" is any work that is not a "United States work" in 17 U.S.C. § 101.
17 Foreign works are exempt from the registration requirements of the Copyright Act. *See TVB*
18 *Holdings USA. v. Enom.*, 2014 WL 12581778, at *4 (C.D. Cal. Jan. 6, 2014) ("[R]egistration is
19 not a prerequisite to bringing suit over a copyrighted work originating outside the United States.").
20     **B. Contributory Copyright Infringement**
21       "A party engages in contributory copyright infringement when it (1) has knowledge of
22 another's infringement and (2) either (a) materially contributes to or (b) induces that
23 infringement." *Erickson Productions v. Kast*, 921 F.3d 822, 831 (9th Cir. 2019) (citation omitted).
24 "Contributory liability requires that the secondary infringer 'know or have reason to know' of
25 direct infringement." *A&M Recs. v. Napster*, 239 F.3d 1004, 1020 (9th Cir. 2001). "There is no
26 dispute that a proper takedown notice under the DMCA would confer [the defendant] with actual
27 knowledge of the specific acts of infringement identified in the notice." *Perfect 10 v. Giganews*,
28 2014 WL 8628031, at *8 (C.D. Cal. Nov. 14, 2014). The element of material contribution is

satisfied when the alleged contributory infringer "can take simple measures to prevent further damage to copyrighted works yet continues to provide access to infringing works." *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1172 (9th Cir. 2007) (cleaned up).

### C. Vicarious Copyright Infringement

"To prevail on a vicarious liability claim, plaintiff must prove defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Erickson*, 921 F.3d at 829 (cleaned up). "A vicarious infringer exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Williams v. Gaye*, 895 F.3d 1106, 1132 (9th Cir. 2018) (cleaned up). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps." *Erickson*, 921 F.3d at 829.

## II. VIOLATIONS OF 17 U.S.C. § 1202(b)

Plaintiffs assert claims against Defendants for violations of 17 U.S.C § 1202(b), which prohibits the knowing removal of copyright management information ("CMI") or the distribution of copyrighted works with the knowledge that copyright management information has been removed. 17 U.S.C § 1202(b) provides in relevant part:

> "No person shall, without the authority of the copyright owner or the law—
>
> "(1) intentionally remove or alter any copyright management information, [or] . . .
>
> "(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
>
> "knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title."

To establish a claim under Section 1202(b)(1), Plaintiffs must show "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *Mango v. BuzzFeed*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019).

To establish a claim under Section 1202(b)(3), Plaintiffs must similarly establish: "(1) the existence of CMI on the infringed work; (2) distribution of the infringed work containing missing and/or altered CMI; and (3) that the distribution was done knowing that the CMI was removed and/or altered without permission." *Id.*

"Both provisions . . . require the defendant to possess the mental state of knowing, or having a reasonable basis to know, that his actions 'will induce, enable, facilitate, or conceal infringement.'" *Stevens v. Corelogic*, 899 F.3d 666, 673 (9th Cir. 2018).

## III.   DEFENSES

### A.  DMCA Safe Harbor

Defendants assert that they cannot be held liable for any direct or secondary copyright infringements because they qualify for the safe harbor provisions of the DMCA. *See* 17 U.S.C §§ 512(c) and (d).  To be eligible for the safe harbor protections of the DMCA, Defendants must demonstrate that they meet the two conditions set forth in § 512(i)(1).  The failure to satisfy *either* of these threshold conditions deprives Defendants of eligibility. *Giganews*, 993 F. Supp. at 1196 (C.D. Cal. 2014) ("To be eligible for any of the four safe harbors stated in § 512(a)-(d), a service provider must first meet the threshold conditions set out in § 512(i).").

> "The limitations on liability established by this section shall apply to a service provider only if the service provider—
> (A)   "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers; and
> (B)   "accommodates and does not interfere with standard technical measures." 17 U.S.C. § 512(i)(1).

The term "standard technical measures" is set forth in 17 U.S.C. § 512(i)(2):

> "As used in § 512(i)(1)(B), the term "standard technical measures" means: technical measures that are used by copyright owners to identify to protect copyrighted works and—
> (A)   "have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process;
> (B)   "are available to any person on reasonable and nondiscriminatory terms; and

  (C) "do not impose substantial costs on service providers or substantial burdens on their systems or networks."

In addition, in order to show that Defendants have adopted, reasonably implemented and informed users of their policy to terminate repeat copyright infringers from using the platform, Defendants must meet their burden of proving by a preponderance of the evidence that: (1) YouTube "has a working notification system"; (2) YouTube has "a procedure for dealing with DMCA-compliant notifications"; (3) YouTube "does not actively prevent copyright owners from collecting information needed to issue such notifications"; and (4) YouTube's implementation of its policy did not allow a substantial number of repeat infringers to access the platform without restriction.  *See Perfect 10 v. CCBill*, 488 F.3d 1102, 1110 (9th Cir. 2007).

If an internet service provider can satisfy these threshold eligibility requirements, they may then be eligible for the DMCA safe harbor provisions if for each alleged infringement the service provider demonstrates that it:

  (A)
    "(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
    "(i) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
    "(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

  (B) "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

    "upon notification of claimed infringement . . . responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity." 17 U.S.C. 512(c)(1).

A service provider must "expeditiously" remove infringing material if it has either actual knowledge or "red flag knowledge" of the infringement.  "Actual knowledge refers to whether the service provider had subjective knowledge, while red flag knowledge turns on whether a

reasonable person would objectively know of the infringements. Both actual and red flag knowledge refer to knowledge of the specific infringement alleged." *Mavrix Photographs v. Livejournal*, 873 F.3d 1045, 1057 (9th Cir. 2017) (citations omitted). Failure "to remove, or disable access to, the material" renders the service provider ineligible for the DMCA's safe harbor protections. 17 U.S.C. § 512(c)(1). General knowledge that the service is used for copyright infringement is insufficient. *UMG Recordings. v. Shelter Capital Partners*, 718 F.3d 1006, 1022 (9th Cir. 2013). The requirement that the service provider has not received a financial benefit directly attributable to the infringement applies "in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(d). To have "the right and ability to control," the service provider must exert "substantial influence on the activities of users." *UMG Recordings*, 718 F.3d at 1030.

### B. Express License

Defendants contend that they are not liable for direct copyright infringement because Plaintiffs granted YouTube an express license in certain of Plaintiffs' copyrighted works. Defendants claim that Plaintiffs cannot assert direct copyright infringement against them where Defendant was granted an express license to copy or distribute the work. The "existence of a license creates an affirmative defense to a claim of copyright infringement.'" *Oracle USA v. Rimini St.*, 879 F.3d 948, 954 (9th Cir. 2018) (quoting *Worldwide Church of God v. Phila. Church of God*, 227 F.3d 1110, 1114 (9th Cir. 2000). However, "'[w]hen a licensee exceeds the scope of the license granted by the copyright holder, the licensee is liable for infringement.'" *Oracle USA*, 879 F.3d at 954 (quoting *LGS Architects, v. Concordia Homes of Nev.*, 434 F.3d 1150, 1156 (9th Cir. 2006)).

### C. Fair Use

Under the Copyright Act, "Courts are directed to determine fair use on the basis of the following non-exclusive factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the

1   copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of
2   the copyrighted work." *Monge v. Maya Mags.*, 688 F.3d 1164, 1171 (9th Cir. 2012).

### D. Statute of Limitations

Defendants assert that some of Plaintiffs' alleged infringements are barred by the one-year limitations period set forth in YouTube's Terms of Service. The Court's Summary Judgment Order [ECF 222] found that the contractual limitations period, rather than the three-year limitations period under the Copyright Act, applies. Plaintiffs have eliminated all infringement claims of which they had actual knowledge more than one year before filing suit to streamline the issues to be litigated at trial.[3] Defendants claim that a portion of the remaining infringements are barred by Plaintiffs' constructive knowledge, which Plaintiffs dispute. *See Fahmy v. Jay-Z*, 835 F. Supp. 2d 783, 787–88 (C.D. Cal. 2011) ("A claim for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge. Actual or constructive knowledge of facts giving rise to the alleged infringement is sufficient" (citations omitted).).

## IV. DEFENDANTS' COUNTERCLAIM

Defendants' counterclaims against Mr. Csupo and Pirate Monitor Ltd. assert that they violated 17 U.S.C § 512(f) by submitting false takedown requests in 2019 that caused videos to be removed from YouTube. To prevail on this claim, Defendants must demonstrate by a preponderance of the evidence that Mr. Csupo and Pirate Monitor Ltd. submitted the takedown notices, that they "knowingly and materially misrepresent[ed] that copyright infringement has occurred," that Defendants "relied on such misrepresentations," and that Defendants "have been "injured as a result." *See Automattic v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015) (cleaned up). Defendants cannot meet this burden of proof for several reasons. First, Pirate Monitor Ltd. did not submit to YouTube the takedown notices at issue; it was dormant in 2019 and was not acquired by Mr. Csupo until 2020. As to Mr. Csupo, he also did not submit the takedown notices; they were submitted by agents or sub-agents of another company, Intellectual Property LLC, for which Mr. Csupo is not liable as a matter of law. Alternatively or in addition,

---

[3] Plaintiffs reserve their ability to challenge this finding on appeal.

the takedown notices were submitted by agents or sub-agents of a different company, MegaFilm kft., for which Mr. Csupo is not liable as a matter of law, including as explained in the pending motion for summary judgment filed by Pirate Monitor Ltd. and Mr. Csupo.  [ECF 260.]

Mr. Csupo and Pirate Monitor Ltd. assert two affirmative defenses in response to Defendants' allegations: (1) unclean hands and (2) *in pari delicto*.  These defenses are grounded in Defendants' inequitable conduct of encouraging copyright infringement via YouTube.

"'To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant.'"  *Metro-Goldwyn-Mayer Studios, v. Grokster*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (quoting *Survivor Productions v. Fox Broadcasting Co.*, 2001 WL 35829270, at *3 (C.D. Cal. June 12, 2001)).  "The doctrine of *in pari delicto* dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them."  *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1143 n.1 (2005).

Respectfully submitted,

Dated:  May 11, 2023

/s/  *Philip Korologos*
Philip C. Korologos*
Jeffrey Waldron*
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Phone: (212) 446-2300
Fax: (212) 446-2350

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

|     |     |
| --- | --- |
| 1   | George A. Zelcs* |
| 2   | Randall P. Ewing, Jr.* |
|     | Ryan Z. Cortazar* |
| 3   | KOREIN TILLERY, LLC |
|     | 205 North Michigan, Suite 1950 |
| 4   | Chicago, IL 60601 |
|     | Telephone: (312) 641-9750 |
| 5   | Facsimile: (312) 641-9751 |

Stephen M. Tillery*
Steven M. Berezney, CA Bar #329923
Carol O'Keefe*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted pro hac vice*

*Attorneys for Plaintiffs Schneider, Uniglobe and AST and for Counterclaim Defendants Pirate Monitor Ltd. and Csupo*