George A. Zelcs*
*gzelcs@koreintillery.com*
Randall P. Ewing, Jr.*
*rewing@koreintillery.com*
Ryan Z. Cortazar *
*rcortazar@koreintillery.com*
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and Counterclaim
Defendants*

KEKER, VAN NEST & PETERS LLP
ROBERT A. VAN NEST - # 84065
rvannest@keker.com
DAN JACKSON - # 216091
djackson@keker.com
JULIA L. ALLEN - # 286097
jallen@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ANNA PORTO - # 319903
aporto@keker.com
LUKE APFELD - # 327029
lapfeld@keker.com
AMOS J. B. ESPELAND - # 332895
aespeland@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:      415 391 5400
Facsimile:      415 397 7188

*Attorneys for Defendants and Counterclaimants
YouTube, LLC and Google LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br><br>Judge: Hon. James Donato<br><br><br>Trial Date:  June 12, 2023<br>Time: 9:00 a.m |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., et al.,<br>Counterclaim-Defendants. | **JOINT PRETRIAL STATEMENT** |

*Additional Counsel*

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
*pkorologos@bsfllp.com*
Jeffrey Waldron*
*jwaldron@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

   *Admitted *pro hac vice*

*Attorneys for Plaintiffs and Counterclaim-
Defendants*

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:  dkramer@wsgr.com
          lwhite@wsgr.com

*Attorneys for Defendants and
Counterclaimants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JOINT PRETRIAL STATEMENT

In accordance with Paragraph 3 of this Court's Standing Order for Civil Jury Trials, the parties hereby submit this Joint Pretrial Statement.  Currently pending before the Court are:

- Plaintiffs' Motion for Class Certification [ECF 245][1];

- Plaintiffs' Motion for Partial Summary Judgment [ECF 265];

- Plaintiffs' and Defendants' Daubert Motions [ECFs 254, 256, 258, 262, 264]; and

- Counterclaim Defendants' Motion for Summary Judgment [ECF 260].

The parties note that resolution of these  motions may affect the nature and scope of the issues to be tried.  The submission of this Joint Statement does not waive any rights and the parties both reserve all rights respectively, including to modify any and all positions in this Pretrial Statement as necessary, including after any of the pending motions are decided.

## I.    SUBSTANCE OF THE ACTION

### A.    The Parties

*Plaintiffs.*  Maria Schneider alleges that she owns copyrights in numerous works including U.S. registered copyrights in the compositions for and unregistered U.S. copyright interests in the sound recordings of the musical works Bird Count, Dance You Monster to My Soft Song, and Three Romances Choro Dancado, among others. Uniglobe Entertainment, LLC ("Uniglobe") alleges that it owns a U.S. registered copyright in the screenplay of the film 5 Weddings and an unregistered foreign copyright in the Hindi-dubbed film 5 Weddings.  AST Publishing Ltd. ("AST") alleges that it owns foreign unregistered copyrights to the audiobooks of numerous works, including My Children and Zuleikha Opens Her Eyes.

Ms. Schneider and Uniglobe serve as the class representatives for the putative Registered Works Infringement Class which consists of all persons who own copyrights in one or more works: 1) registered with the United States Copyright Office; 2) contained or used in a video that

---

[1] Defendants object to a trial beginning prior to resolution of the pending class certification motion.  In the event any class is certified, the parties agree that any class notice and opt-out processes will make a classwide trial on June 12 infeasible.  However, as set forth in Section IX below, Plaintiffs support bifurcation to allow any non-class claims to proceed on the current trial schedule while class notice proceeds on the class claims.  Defendants object to that proposal.

was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained or used in a video that was displayed on YouTube subsequent to the first successful Takedown Notice and then removed from YouTube as a result of either a second successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019.

Uniglobe and AST serve as the class representatives for the putative Foreign Unregistered Works Infringement Class, which consists of all persons who own copyrights in one or more works: 1) first published outside the United States; 2) contained or used in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained or used in a video that was displayed on YouTube subsequent to the first successful Takedown Notice and then removed from YouTube as a result of either a second successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019.

Ms. Schneider serves as the class representative for the putative International Standard Recording Code ("ISRC") Class, which consists of all persons who own copyrights in one or more digital form sound recordings of musical works that: 1) has been assigned an International Standard Recording Code ("ISRC"); and 2) was a component of a video that was uploaded to YouTube that (a) did not include the assigned ISRC and (b) was removed from YouTube as a result of either a successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019.

Ms. Schneider serves as the class representative for the putative Clip Filename ("CLFN") Class which consists of all persons who own copyrights in one or more works that: 1) had an associated CLFN field populated with copyright management information ("CMI") and 2) was contained in a video uploaded to YouTube (a) either without the associated CMI metadata or with the CMI metadata altered and (b) that was removed from YouTube as a result of either a successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019.

***Defendants and Counterclaim Plaintiffs.***  Defendant and Counterclaim Plaintiff YouTube LLC ("YouTube") is a Delaware limited liability company that owns and operates YouTube, an online video hosting service where users can share and access video content.  Defendant and Counterclaim Plaintiff Google LLC ("Google") is a Delaware limited liability company that wholly owns and controls YouTube.

***Counterclaim Defendants.***  The Counterclaim Defendants in this action are Pirate Monitor Ltd., a limited company with its principal place of business in the British Virgin Islands, Pirate Monitor LLC, which does not exist, and Gabor Csupó, a citizen of Hungary and a resident of the State of California.

### B.   Plaintiffs' Statement Regarding Substance of the Claims

Plaintiffs and the putative class allege that Defendants are liable for direct, contributory, and vicarious copyright infringement because YouTube copied, reproduced, distributed, publicly performed, and/or publicly displayed Plaintiffs' works without authorization, and it induced, materially contributed to, and controlled the copying, reproduction, distribution, public performance, and/or public display of infringing videos uploaded to YouTube by users and financially benefited from the infringing activity.  Plaintiff Schneider also alleges that Defendants are liable for the removal of copyright management information from videos containing her works and for the distribution, import for distribution, or public performance of videos containing such works without their associated copyright management information in violation of 17 USC §§1202(b)(1) and 1202(b)(3).

YouTube is the largest video-sharing website in the world.  Faced with litigation by major music labels and other significant rights holders, YouTube crafted a two-tiered system of copyright "enforcement" on its platform.  For large and significant rights holders with the power to hold Defendants to account, YouTube developed Content ID, a copyright management system and digital fingerprint matching technology that enables the identification of copyright infringing works on YouTube. In this program, videos uploaded to YouTube are scanned against a database of files submitted by Content ID participants. These large rights holders can block the infringing

video, monetize the infringing video by running ads against it, or just track the infringing video's viewership statistics.

By contrast, smaller rights holders like Plaintiffs are denied appropriate abilities to police copyright infringement—no matter how many times their copyrighted works are infringed on YouTube. These smaller rights holders are relegated to the YouTube search bar, which can only locate infringing works if the infringing uploader has voluntarily identified the work infringed or its author; which de-duplicates search bar results so only some, but not all, results for an infringement are displayed; and which does not show search results for private and unlisted videos at all, even though they comprise ▮▮▮▮▮ of the YouTube platform and can be publicly displayed to millions of viewers. Such limitations prevent copyright owners from using the search bar to locate information needed (*e.g.*, identifying infringements) to submit DMCA takedown notifications.

In 2017, in response to complaints by YouTube Partner channels, YouTube expanded the use of YouTube's fingerprint matching technology to include video to video matching across the platform for what it termed "Copyright Match". As part of this program (and to establish what YouTube internally calls the "Content Age" of material uploaded to YouTube), YouTube matches each newly uploaded video against the corpus of videos previously uploaded to the platform, including videos that have been the subject of successful DMCA takedown notices. While YouTube's matching technology accurately identifies *all* matches down to ▮▮ seconds, YouTube refuses to disclose any matches of private or unlisted videos or any matches that contain less than ▮▮ of the work claimed in a DMCA takedown.

Moreover, it was not until after this lawsuit was commenced that YouTube provided copyright owners other than the select number of "YouTube Partner Program" participants information about these content matches. This meant that until 2021, a copyright owner that identified an infringement in a takedown notice was not provided the data that YouTube had in its possession of matches of essentially the same content elsewhere on the platform. Plaintiffs maintain that as a result of this video-to-video matching, YouTube has actual or red-flag

knowledge of infringing videos across its platform that it neither removes nor discloses to copyright claimants to allow them to identify and seek removal of such infringing videos.

As a result of its disparate, two-tier enforcement system, Defendants reap substantial profits.  Pirated content is readily available on YouTube (as evidenced by the 1.5 billion instances of infringement identified by Content ID each year), which draws users to the site, and the growth in users incentivizes the posting of more infringing content on YouTube, which in turn enables Defendants to reap more advertising revenue.  Defendants also profit because the growth of the YouTube platform—including through the availability of pirated content owned by small rights holders—generates valuable user information on user preferences and demographics which is used to develop targeted advertising for YouTube, Google, and Google's various products and services in the online advertising market.

Here, Plaintiffs have filed successful takedown notices identifying certain infringements of their works on the YouTube site, following the procedures of § 512(c) of the Digital Millennium Copyright Act ("DMCA").  YouTube removed those infringing videos and the infringing videos have not been reinstated pursuant to a counter-notification by the uploader or to a retraction by the claimant.  During this litigation, Plaintiffs identified still more infringements of their work during discovery and YouTube removed these infringing videos before plaintiffs filed takedown notices, obviating the need for plaintiffs to file DMCA takedowns for such works.

The DMCA provides platforms like YouTube with a safe harbor from copyright infringement claims in certain defined circumstances.  YouTube is only eligible to pursue the DMCA safe harbors if: (1) it first adopts and reasonably implements a policy that terminates, in appropriate circumstances, YouTube account holders who are repeat infringers; and (2) it accommodates and does not interfere with Standard Technical Measures ("STM") for identifying infringements.  YouTube fails both of these "eligibility conditions"; hence, it does not qualify for any safe harbor affirmative defense in this case.

YouTube fails to reasonably implement its repeat infringer policy including because, as noted, its exclusion of private and unlisted videos and search result de-duplication prevents copyright owners from gathering information necessary to submit takedown requests; it fails to

1  issue copyright strikes for the billions of infringements identified by Content ID; it assesses strikes

2  against channels, not users, even though one user can have multiple channels; ██████████████

3  ████████████████████████████████████████████████████████; and it

4  excludes its Trusted Enterprise Partners from termination, regardless of the number of strikes they

5  receive.  YouTube also admittedly does not accommodate and instead interferes with the use of

6  third-party digital fingerprinting technology, which technology Plaintiffs will establish is a

7  "standard technical measure" as defined in the DMCA.

8       Independent of these failures to satisfy the eligibility conditions for safe harbor against any

9  infringements, YouTube separately cannot claim safe harbor protection in the context of the

10  specific infringements of the plaintiffs given that it had either actual or red flag knowledge of

11  those infringements upon which it did not act to remove the infringing material.  And, with respect

12  to infringements viewed as a result of YouTube's Autoplay and Watch Next functions, YouTube

13  had both the right and ability to control the infringing activity while it received financial benefits

14  directly attributable to the infringements including from revenues generated by advertisements run

15  against infringing videos played as a result of such functions.

16       As to Plaintiffs' CMI claims under 17 U.S.C. § 1202, Plaintiffs assert that YouTube has

17  allowed users to post videos containing sound recordings of their works knowing the uploads do

18  not contain the International Standard Recording ("ISRC") codes that are the internationally

19  recognized identification tool for sound recordings.  Further, it is undisputed that YouTube's

20  upload and transcoding process removes CMI, like a song name, included in the clip file name

21  ("CLFN") metadata from infringing videos.  Plaintiffs contend that YouTube well understood that

22  its removal or alteration of CLFN metadata including CMI, or its distribution or public display of

23  videos with CMI (including ISRC codes) removed, would likely induce, enable, facilitate, or

24  conceal infringement.

25      **C.**    **Defendants' Statements Regarding Substance of the Claims**

26       YouTube is not liable for direct, contributory, or vicarious copyright infringement, because

27  Plaintiffs cannot establish the elements of any of those claims.  Furthermore, YouTube has

28  affirmative defenses to Plaintiffs' claims.  Specifically, YouTube has licenses to Plaintiffs' works,

1  and Plaintiffs' claims are barred by the statute of limitations and contractual limitations, and

2  YouTube has a fair use defense for certain infringements.   Finally, YouTube is not liable for

3  Plaintiffs' direct or indirect copyright infringement claims because it is protected by the DMCA

4  safe harbor.[2]

5      YouTube also is not liable for Schneider's claim under 17 U.S.C. § 1202 for the removal

6  of copyright management information ("CMI") from videos containing Schneider's works,

7  because Schneider cannot show that the elements of that claim are satisfied for either her ISRC or

8  CLFN theories.  And YouTube also has affirmative license defenses that defeat Schneider's CMI

9  claim.

10     Plaintiffs are not owed damages to the extent they could have mitigated any damages

11  caused by copyright infringement through their access to Content ID.  Finally, Plaintiffs cannot

12  obtain judgment, or seek certain damages, because of their failure to register their copyrights.

13     **D.     Defendants and Counterclaim Plaintiffs' Statement Regarding Substance of
        the Counterclaims[3]**

14

15     Defendants and Counterclaim Plaintiffs assert counterclaims against Pirate Monitor Ltd.,

16  and its sole-owner, Mr. Csupó, for violation of 17 U.S.C. § 512(f).

17     YouTube operates an online video hosting service that allows users to upload video

18  content to YouTube's servers. Subject to limited exceptions not relevant here, YouTube allows

19  anyone who purports to act on behalf of copyright owners to submit takedown notices under

20  Section 512 of the Digital Millennium Copyright Act ("DMCA takedown notices").

21  Counterclaimants assert that Mr. Csupó, acting directly, on behalf of others, or through his agents

22

23  [2] As Defendants have informed Plaintiffs and the Court, Defendants do not intend to pursue the DMCA safe harbor affirmative defense should the Court deny the pending class certification motion.  ECF Nos. 310, 309-2.  As Plaintiffs have informed the Court, under Rule 15, Defendants
24  have no right unilaterally to amend their pleading to withdraw an affirmative defense and Plaintiffs do not consent to Defendants' effort to avoid having their DMCA affirmative defense
25  proceed to trial.  ECF No. 309.

26  [3] Despite the Court's order that Intellectual Property LLC produce documents by no later than April 27, 2023, Defendants did not receive the complete production of documents from
27  Intellectual Property LLC until May 10, 2023, just one day before the pretrial filings are due.  As a result, Defendants and Counterclaim Plaintiffs reserve the right to supplement or amend portions
28  of this statement and other pretrial filings related to the counterclaims.

or alter ego, knowingly submitted 1,975 false DMCA takedown notices to Counterclaimants, in violation of 17 U.S.C. § 512(f). Counterclaimants further assert that Pirate Monitor Ltd. is responsible for this scheme as Mr. Csupó's alter ego. See Dkt. 160 at ¶¶ 76-85; Dkt. 296. Counterclaimants assert that they have suffered actual damages as a result of Counterclaim Defendants' scheme, including costs to investigate and respond to the scheme, and attorneys' fees incurred to further investigate and pursue claims against Counterclaim Defendants.

### E. Counterclaim Defendants' Statement Regarding Substance of the Counterclaim Defenses

Mr. Csupó is a five-time Emmy award-winning producer, director, and the creator of the animated series *Rugrats* and many other beloved shows. He owned a company called Intellectual Property LLC ("IPLLC") that partnered with MegaFilm Kft. ("MegaFilm") to protect the copyrights of various Hungarian films.  Mr. Csupó disputes that he had any involvement with the submission of 1,975 inaccurate takedown notices. Further, he claims that he cannot be held liable as a matter of agency and corporate law.

Pirate Monitor Ltd., a British Virgin Islands corporation, sued YouTube and Google for copyright infringement of certain works unrelated to the works subject to the 1,975 takedown notices at issue, ECF No. 1, but later voluntarily dismissed its claims with prejudice, ECF No. 66. Pirate Monitor Ltd. was dormant during the period in which the 1,975 takedown notices at issue were submitted and had no role in those events and contends it cannot be held liable.

## II.   RELIEF REQUESTED

### A. Plaintiffs and the Classes

For their claims for violation of the Copyright Act, Plaintiffs and the Classes seek the following relief:

1. A judgment that each Defendant violated the Copyright Act;

2.  An award of actual damages equal to all profits, direct or indirect, illegally obtained by Defendants for each infringing video;

3.      In the alternative, an award of statutory damages for willful infringement for each registered work that was infringed in the range of $750 to $150,000 per work given the willfulness of Defendants' violations;

4.      An order granting Plaintiffs Schneider and Uniglobe, and each member of the Registered Works Class, the right to elect between the actual damages award and the statutory damages award prior to the entry of judgment;

5.      An order enjoining Defendants from directly, vicariously, or contributorily infringing Plaintiffs' copyright-protected works;

6.      An order enjoining YouTube from withholding any known match of 10 seconds or more in length, for any reference file generated from a video that was the subject of a successful DMCA takedown notice from the copyright claimants identified in such notices;

7.      An order directing YouTube to provide, to any copyright owner who provides YouTube with a reference file, all matches longer than 10 seconds in length to any pre-existing video on YouTube and any video subsequently uploaded to YouTube;

8.      An award of pre-judgment interest;

9.      An award of reasonable attorney's fees and full costs;

10.     Any further relief that the Court may deem proper and just.

For their claims for violation of the protections afforded under the DMCA to copyright management information, Plaintiffs seek the following relief:

1.      A judgment that each Defendant violated 17 USC §1202 of the DMCA;

2.      An award of statutory damages for each violation of Section 1202 in the range of $2,500 to $25,000 per violation;

3.      An order enjoining Defendants from stripping and failing to preserve any copyright management information contained in the CLFN metadata field of videos uploaded to YouTube;

4.      An order enjoining Defendants from distributing videos containing sound recordings of musical works without their associated ISRC Codes or, alternatively, directing Defendants to associate ISRC codes provided by any copyright claimant to any videos on YouTube that digitally match the sound recording of the provided ISRC code.

5.      An award of pre-judgment interest;

6.      An award of reasonable attorney's fees and full costs;

7.      Any further relief that the Court may deem proper and just.

**B.      Defendants**

1.      Defendants deny that Plaintiffs are entitled to any relief.

2.      Defendants request a judgment in favor of Defendants denying Plaintiffs all relief requested.

3.      Defendants request an award of reasonable attorneys' fee and costs.

**C.      Counterclaim Plaintiffs**

For their claim for violation of the 17 U.S.C.  § 512(f), Counterclaim Plaintiffs seek the following relief:

1.      A judgment that Counterclaim Defendants' actions violated 17 U.S.C. § 512(f);

2.      A permanent injunction restraining Counterclaim Defendants and their employees, agents, alter egos, or any person or entity acting on their behalf or direction or under their control from violating 17 U.S.C. § 512(f);

3.      An award of compensatory damages sufficient to compensate Counterclaimants for the harm caused by Counterclaim Defendants' conduct;

4.      An award of Counterclaimants' reasonable attorneys' fees, expenses, and costs incurred in connection with the Counterclaims under 17 U.S.C. § 505;

5.      Any further relief that the Court may deem just and proper.

**D.      Counterclaim Defendants**

Counterclaim Defendants deny that Counterclaim Plaintiffs are entitled to any relief, as detailed in their motion for summary judgment. See ECF No. 260. Counterclaim Defendants also assert the following affirmative defenses:

1.      that the claims asserted by Counterclaim Defendants are barred by the doctrine of unclean hands; and

2.      that the claims are barred by the doctrine of in pari delicto.

III.     **UNDISPUTED FACTS**

    **A.     Parties**

    1.     Plaintiff Maria Schneider is a citizen of the State of New York.

    2.     Plaintiff Uniglobe Entertainment, LLC is a Wyoming limited liability company with its principal place of business in Los Angeles County, California.

    3.     Plaintiff AST Publishing Ltd. is a Russian company.

    4.     Defendant and Counterclaim Plaintiff YouTube, LLC is a Delaware limited liability company with its principal place of business in San Bruno, California.

    5.     Defendant and Counterclaim Plaintiff Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California.

    6.     YouTube is a wholly owned and controlled subsidiary of Defendant Google.

    7.     Counterclaim Defendant Pirate Monitor Ltd. is a limited company with its principal place of business in the British Virgin Islands.

    8.     Counterclaim Defendant Pirate Monitor LLC does not exist.

    9.     Counterclaim Defendant Gabor Csupó is citizen of Hungary and a resident of the State of California.

    10.     Counterclaim Defendant Csupó is the sole stockholder and managing director of Counterclaim Defendant Pirate Monitor LTD.

    **B.     Pleadings**

    1.     Plaintiffs Schneider and Pirate Monitor Ltd. filed the Class Action Complaint on July 2, 2020.

    2.     Defendants YouTube and Google filed their Answer and Counterclaims on September 21, 2020.

    3.     Defendants YouTube and Google filed their Amended Counterclaims on February 19, 2021.

    4.     Plaintiff and Counterclaim Defendant Pirate Monitor Ltd. filed its Voluntary Dismissal Pursuant to Stipulation Under FRCP 41(a)(1)(A)(ii) on March 8, 2021.

5.      Counterclaim Defendant Pirate Monitor Ltd. filed its Answer to Defendants' Amended Counterclaims on March 12, 2021.

6.      Counterclaim Defendant Csupó filed his Answer to Defendants' Amended Counterclaims on March 17, 2021.

7.      Plaintiffs Schneider, Uniglobe and AST filed their First Amended Class Action complaint on November 17, 2021.

8.      Defendants YouTube and Google filed their Answer and Counterclaims to the Amended Complaint on August 22, 2022.

9.      Counterclaim Defendant Pirate Monitor Ltd. filed its Answer to Defendants' Amended Counterclaims on March 12, 2021.

10.     Counterclaim Defendant Csupó filed his Answer to Defendants' Amended Counterclaims on March 17, 2021.

**C.      Stipulated Facts Regarding Counterclaims**

1.      Pirate Monitor LLC does not exist.

2.      Pirate Monitor Ltd. was dormant in 2019.

3.      Mr. Csupó acquired Pirate Monitor Ltd. in January 2020.

4.      Mr. Csupó did not own Pirate Monitor Ltd. in 2019.

5.      Videos that are the subject of the 1,975 DMCA takedown notices at issue in Defendants' counterclaims were uploads authorized by their respective copyright owners.

6.      Videos that are the subject of the 1,975 DMCA takedown notices at issue in Defendants' counterclaims were uploaded in four batches between August and November 2019.

7.      Gabor Csupó purchased Pirate Monitor Ltd. after submission of the 1,975 takedown notices at issue in Defendants' counterclaims.

8.      Pirate Monitor Ltd. entered into a License Agreement with MegaFilm dated January 24, 2020 for the rights to the usage of *Juska Menni Amerika*, *Zimmer Feri 2*, and *Vakvaganyok*.

9.      Mr. Csupó acquired IPLLC in March 2019.

10.     MegaFilm entered into a contract with IPLLC in 2019.

11.     Under the contract, MegaFilm authorized IPLLC to enforce MegaFilm's copyrights in several Hungarian films, including two films titled *Czak Szex es mas semi* and *Zimmer Feri*.

12.     YouTube disabled public access to the videos that were the subject of the takedown notices submitted in October-November 2019 for *Czak Szex es mas semi* and *Zimmer Feri*.

13.     YouTube spent approximately $20,000-$25,000 in personnel time in its 2019 investigation into the takedown notices submitted in October-November 2019 for *Czak Szex es mas semi* and *Zimmer Feri*.

14.     The individual(s) who personally uploaded the approximately 1,970 video clips of *Czak Szex es mas semi* and *Zimmer Feri* in August-November 2019 has/have not personally brought claims against YouTube in a court of law alleging that YouTube wrongfully disabled public access to the videos.

15.     In 2019, a YouTube account was opened called "Pirate Monitor LLC" through which access to ContentID was requested.

16.     After the investigation in November 2019, YouTube suspended the account with the name "Pirate Monitor LLC."

17.     After the investigation in November 2019, YouTube suspended the account with the name "IPLLC."

## IV.     <u>DISPUTED QUESTIONS OF FACT</u>

Subject to the resolution of the pending motions, the parties jointly submit that the following are disputed factual issues.  This list is not intended to bind the parties in any way with respect to the pending motions, and the parties reserve the right to add, delete, or modify this list.

1.     Whether Schneider is the owner of a valid copyright for each of the compositions identified in Attachment 1 (listing the remaining compositions that Schneider alleges are infringed).[4]

---

[4] Less than a week before the filing of this Joint Pretrial Statement, Plaintiffs notified Defendants that Plaintiffs intend to produce copyright registration certificates for Ms. Schneider's works.  Plaintiffs did not produce registration certificates in discovery and still have not, to date,

2.      Whether Schneider is the owner of U.S registered copyrights for the sound recordings listed in Attachment 2 (listing the ISRCs for sound recordings that Schneider alleges are the basis for her CMI Claim).

3.      Whether Uniglobe is the owner of a valid copyright for 5 Weddings (English Version) or 5 Weddings (Hindi Version).

4.      Whether AST is an owner, assignee, or exclusive licensee for each of the audiobooks of the works identified in Attachment 3 (listing the remaining audiobooks that AST alleges are infringed).

5.      Whether a successful takedown notice establishes copyright infringement.

6.      Whether takedown notices provide actual knowledge of specific instances of infringement.

7.      Whether Autoplay and Watch Next establish Defendants' ability to control infringement on YouTube.

8.      Whether Defendants' matching technology establishes that Defendants have the right and ability to supervise or control the infringing activity.

9.      Whether Defendants receive a direct financial benefit from the infringing activity.

10.      Whether Defendants have committed direct, contributory, and/or vicarious copyright infringement.

11.      Whether Defendants are eligible for any DMCA safe harbor under 17 U.S.C. § 512.[5]

_____

done so.  If the registration certificates confirm Ms. Schneider's prior representations that she registered her compositions with the Copyright Office, Defendants do not intend to challenge that Ms. Schneider is the owner of the copyright she has put at issue.  But Defendants reserve their right to raise this issue to the jury if, upon their review of the registration certificates, it appears that those certificates do not support Ms. Schneider's prior representations.

Plaintiffs note that there should be no serious question about the ownership of Ms. Schneider's copyrights, as Defendants could readily confirm by reference to the copyright registration certificates which are public documents and locatable in the Copyright Office database readily searchable online.  Because Defendants have insisted they will not stipulate to ownership, Plaintiffs have moved forward with obtaining the registration certificates from the Copyright Office and will provide copies of such public documents to Defendants once they are received.

[5] *See* n.2, above. Defendants note that numerous issues identified here as well as related disputes

12.     Whether, if Defendants establish they are eligible for the DMCA safe harbor, Defendants can meet their burden of showing the § 512(c) safe harbor affirmative defense applies.

13.     Whether, if Defendants establish they are eligible for the DMCA safe harbor, Defendants can meet their burden of showing the § 512(d) safe harbor affirmative defense applies.

14.     Whether YouTube has allowed users to post videos that include Schneider's sound recordings of musical works knowing, or having reason to know, that the ISRCs identifying the sound recordings of those musical works had been removed without authorization, and knowing, or having reasonable grounds to know, that such removal would induce, enable, facilitate, or conceal an infringement of any copyright.

15.     Whether YouTube removed copyright management information included in the CLFN metadata field knowing, or having reasonable grounds to know, that such removal would induce, enable, facilitate, or conceal an infringement of any copyright.

16.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by licenses granted to YouTube and Google and/or to third parties who have in turn granted licenses to YouTube and Google.

17.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by YouTube's Terms of Service license.

18.     Whether Plaintiffs' damages arising from their copyright infringement and copyright management information claims are barred in whole or in part by failure to mitigate.

19.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by the statute of limitations.

20.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by the statute of limitations set forth in YouTube's Terms of Service.

21.     Whether any use of Plaintiffs' works constituted a fair use of the underlying copyrighted material.

---

of fact and law may be narrowed following the Court's decision on the pending class certification motion.

22.    Whether any use of Plaintiffs' works constituted a substantial use of the underlying copyrighted material.

## V.    DISPUTED QUESTIONS OF LAW

Subject to the resolution of the pending motions, the parties jointly submit that the following are disputed legal issues.  This list is not intended to bind the parties in any way with respect to the pending motions, and the parties reserve the right to add, delete, or modify this list.

1.    Whether Schneider is the owner of a valid copyright for each of the compositions identified in Attachment 1 (listing the remaining compositions that Schneider alleges are infringed).[6]

2.    Whether Schneider is the owner of U.S registered copyrights for the sound recordings listed in Attachment 2 (listing the ISRCs for sound recordings that Schneider alleges are the basis for her CMI Claim).

3.    Whether Uniglobe is the owner of a valid copyright for 5 Weddings (English Version) or 5 Weddings (Hindi Version).

4.    Whether AST is an owner, assignee, or exclusive licensee for the works identified in Attachment 3 (listing the remaining audiobooks that AST alleges are infringed).

5.    Whether a successful takedown notice establishes copyright infringement.

6.    Whether takedown notices provide actual knowledge of specific instances of infringement.

7.    Whether Autoplay and Watch Next establish Defendants' ability to control infringement on YouTube.

8.    Whether Defendants' matching technology establishes that Defendants have the right and ability to supervise or control the infringing activity.

9.    Whether Defendants receive a direct financial benefit from the infringing activity.

10.    Whether Defendants have committed direct, contributory, and/or vicarious copyright infringement.

---

[6] See n.3, above.

11.     Whether Defendants are eligible for any DMCA safe harbor under 17 U.S.C. § 512.

12.     Whether, if Defendants establish they are eligible for the DMCA safe harbor, Defendants can meet their burden of showing the § 512(c) safe harbor affirmative defense applies.

13.     Whether, if Defendants establish they are eligible for the DMCA safe harbor, Defendants can meet their burden of showing the § 512(d) safe harbor affirmative defense applies.

14.     Whether YouTube has allowed users to post videos that include Schneider's sound recordings of musical works knowing, or having reason to know, that the ISRCs identifying the sound recordings of those musical works had been removed without authorization, and knowing, or having reasonable grounds to know, that such removal would induce, enable, facilitate, or conceal an infringement of any copyright.

15.     Whether YouTube removed copyright management information included in the CLFN metadata field knowing, or having reasonable grounds to know, that such removal would induce, enable, facilitate, or conceal an infringement of any copyright.

16.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by licenses granted to YouTube and Google and/or to third parties who have in turn granted licenses to YouTube and Google.

17.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by YouTube's Terms of Service license.

18.     Whether Plaintiffs' damages arising from their copyright infringement and copyright management information claims are barred in whole or in part by failure to mitigate.

19.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by the statute of limitations.

20.     Whether Plaintiffs' copyright infringement and copyright management information claims are barred in whole or in part by the statute of limitations set forth in YouTube's Terms of Service.

21.     Whether any use of Plaintiffs' works constituted a fair use of the underlying copyrighted material.

22.     Whether any use of Plaintiffs' works constituted a substantial use of the underlying copyrighted material.

## VI. DISPUTED QUESTIONS OF FACT RE COUNTERCLAIMS.

1.     Whether Mr. Csupó directed, authorized, participated in, or ratified the submission of false DMCA takedown notices to YouTube on behalf of himself.

2.     Whether Mr. Csupó directed, authorized, participated in, or ratified the submission of false DMCA takedown notices to YouTube on behalf of IPLLC.

3.     The extent to which Mr. Csupó, acting on behalf of himself, his principal, or his alter ego, coordinated with others to upload or uploaded videos to YouTube that would be the subject of false DMCA takedown notices.

4.     Whether Mr. Csupó was the alter ego of Pirate Monitor Ltd..

5.     If Counterclaim Defendants are responsible for the submission of false DMCA takedown notices to YouTube in violation of § 512(f), whether and how much damages Counterclaimants are entitled to receive.

## VII.  DISPUTED QUESTIONS OF LAW RE COUNTERCLAIMS

1.     Whether, to the extent Mr. Csupó acted on behalf of others, he can be held liable for his actions on behalf of others.

2.     Whether Mr. Csupó had personal agents.

3.     Whether Mr. Csupó can be held liable for the actions of his agents.

4.     Whether Mr. Csupó can be held liable for the actions of IPLLC.

5.     Whether Mr. Csupó can be held liable for the actions of IPLLC's agents or sub-agents.

6.     Whether Mr. Csupo can be held liable for the actions of MegaFilm's agents or sub-agents.

7.     Whether Pirate Monitor Ltd. can be held liable for the actions of Mr. Csupó.

8.     Whether Counterclaimants can recover attorneys' fees, expenses, and costs as damages under 17 U.S.C. § 512(f).

9.      The parties incorporate the disputed legal issues raised in their respective motions *in limine* now pending before the Court.

10.      The parties also incorporate the disputed legal issues raised in Counterclaim Defendants' motion for summary judgment. ECF No. 260.

11.      The parties also incorporate the disputed facts listed in Section VI above to the extent that they involve disputed legal issues and/or mixed questions of law and fact.

## VIII.      STIPULATIONS

The parties stipulate as follows:

**Party Documents**

The Parties stipulate that all documents listed on the joint exhibit list shall be deemed to be true and correct copies of documents maintained in the producing party's files as of the date of that party's document collection under Federal Rule of Evidence 901.

The parties continue to discuss additional potential evidentiary stipulations.

## IX.      BIFURCATION

Defendants believe that bifurcation is not necessary.

Plaintiffs' position on bifurcation depends on whether all, some, or no classes are certified.  If the Court certifies just one proposed class (i.e., either one or more infringement classes or just one or more CMI class), Plaintiffs support bifurcation to allow the non-class claims to proceed on the current trial schedule while class notice proceeds on the class claims and to avoid the potential confusion to a jury of a trial where Plaintiffs would be pursuing some claims solely on an individual basis while simultaneously acting as class representatives on separate claims.

## X.      SETTLEMENT STATUS

The parties engaged in a remote mediation session before the Honorable Shira Scheindlin on April 28, 2021, which was attended by the then-named Plaintiffs (Schneider and Csupó), and client representatives of Defendants.

There are no settlement discussions currently taking place. The parties have agreed that should additional formal settlement discussions occur, Judge Vaughn Walker (Ret.) would be an

1   agreed-upon mediator.

2   **XI.**   **ESTIMATE OF TRIAL LENGTH**

3         Plaintiffs propose that each side have 25 hours of trial time, exclusive of opening

4   statements and closing arguments.  While the parties are committed to trying this case as

5   efficiently and effectively as possible, a portion of the testimony will be translated.  Plaintiffs

6   further propose that each side be permitted up to 45 minutes  for opening statements and up to 90

7   minutes for closing arguments.

8         Defendants propose that each side have 12 hours, exclusive of opening statements and

9   closing arguments.  Defendants further propose that each side be permitted up to 30 minutes for

10   opening statements and up to 1 hour for closing arguments.

11

12   Dated:  May 11, 2023                    */s/ Philip Korologos*
                                              Philip C. Korologos*
13                                            *pkorologos@bsfllp.com*
                                              Jeffrey Waldron*
14                                            *jwaldron@bsfllp.com*
                                              BOIES SCHILLER FLEXNER LLP
15                                            55 Hudson Yards, 20th Floor
                                              New York, NY 10001
16                                            Telephone: (212) 446-2300
                                              Facsimile: (212) 446-2350
17

18                                            Joshua Irwin Schiller, CA Bar #330653
                                              *jischiller@bsfllp.com*
19                                            BOIES SCHILLER FLEXNER LLP
                                              44 Montgomery St., 41st Floor
20                                            San Francisco, CA 94104
                                              Telephone: (415) 293-6800
21                                            Facsimile: (415) 293-6899

22                                            George A. Zelcs*
23                                            *gzelcs@koreintillery.com*
                                              Randall P. Ewing, Jr.*
24                                            *rewing@koreintillery.com*
                                              Ryan Z. Cortazar*
25                                            *rcortazar@koreintillery.com*
                                              KOREIN TILLERY, LLC
26                                            205 North Michigan, Suite 1950
                                              Chicago, IL 60601
27                                            Telephone: (312) 641-9750
28

Facsimile: (312) 641-9751

Stephen M. Tillery*
*stillery@koreintillery.com*
Steven M. Berezney, CA Bar #329923
*sberezney@koreintillery.com*
Carol O'Keefe*
*cokeefe@koreintillery.com*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Maria Schneider, Uniglobe
Entertainment, LLC, and AST Publishing Ltd. and and
Attorneys for Counterclaim-Defendants Pirate Monitor
Ltd. and Gabor Csupó.*

Dated:  May 11, 2023                    KEKER, VAN NEST & PETERS LLP

                                  By:    /s/ *Robert A. Van Nest*
                                         ROBERT A. VAN NEST
                                         DAN JACKSON
                                         JULIA L. ALLEN
                                         TRAVIS SILVA
                                         ANNA PORTO
                                         LUKE APFELD
                                         AMOS J. B. ESPELAND

                                         DAVID H. KRAMER
                                         LAUREN GALLO WHITE
                                         WILSON SONSINI GOODRICH &
                                         ROSATI
                                         Professional Corporation
                                         650 Page Mill Road
                                         Palo Alto, CA 94304-1050
                                         Telephone: (650) 493-9300
                                         Email:  dkramer@wsgr.com
                                                 lwhite@wsgr.com

                                         Attorneys for Defendants and
                                         Counterclaimants
                                         YOUTUBE, LLC and GOOGLE LLC

1                **<u>Attachment 1—Maria Schneider's Works at Issue</u>**

1. *Alchemy*

2. *Allegresse*

3. *Anthem*

4. *Bayrail Shuffle*

5. *Bird Count*

6. *Buleria, Solea y Rumba*

7. *City Sunrise*

8. *Coot Stew*

9. *Dance You Monster to My Soft Song*

10. *El Viento*

11. *Evanescence*

12. *Green Piece*

13. *Gumba Blue*

14. *Gush*

15. *Hang Gliding*

16. *Journey Home*

17. *Last Season*

18. *Lately*

19. *My Lament*

20. *Scenes from Childhood*

21. *Sea of Tranquility*

22. *Smooth Talk*

23. *Sue (or In a Season of a Crime)*

24. *The Grail*

25. *Three Romances*

26. *Tork's Café*

## Attachment 2 – ISRCs for Schneider Works at Issue[7]

1. *A Potter's Song* - USDBV1500027

2. *Alchemy* - US4W40800001

3. *Dance You Monster to My Soft Song* - USDBV0521941

4. *Hang Gliding* - USDBV0422941

5. *Scenes from Childhood - Coming About* - USDBV0800052

6. *Sue (or In a Season of Crime)* - USRF31500004

7. *The Grail* - US4W40800012

8. *The Thompson Fields* - USDBV1500024

9. *Three Romances - Choro Dancado* - USDBV0400642

10. *Walking by Flashlight (Big Band)* - USDBV1500021

---

[7] Defendants note their objection to Plaintiffs' belated disclosure of the works and specific URLs allegedly impacted by its ISRC theory, which Plaintiffs disclosed for the first time in pretrial exchanges.

Plaintiffs' note that all of Schneider's works relevant to the ISRC claims (together with the relevant ISRC Codes) were in fact disclosed no later than September 9, 2022.

1

**<u>Attachment 3 – AST Publishing Ltd.'s Works at Issue</u>**

2       1. *My Children*

3       2. *Zuleikha Opens Her Eyes*

4       3. *Children's Book*

5       4. *History of the Russian State*

6       5. *Nutty Buddha*

7       6. *Pelagia and the Red Rooster*

8       7. *Life of the Wonderful People and Animals*

9       8. *Spy Novel*

10      9. *#Selfmama – Lifehacks for the Working Mother*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTESTATION

2       My user ID and password are being used in the electronic filing of this document and, in

3   compliance with N.D.  Cal.  Civil L.R.  5-1(h)(3), I hereby attest that concurrence in the filing of

4   the document has been obtained from each of the other Signatories.

5

6                                                                          By:____/s/ Philip Korologos_____
                                                                                Philip Korologos

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28