1

## Stipulated Instruction No. 1: Duty of Jury

2
3
Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

4
5
6
7
8
9
These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected, and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

10
11
12
13
14
It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

15
16
Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

17
18
*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.2 (2017).

19
20
21
22
23
24
25
26
27
28

3:20-cv-04423-JD

1

**Stipulated Instruction No. 2: Duty of Jury**

2

3

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

4

5

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

6

7

8

9

10

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

11

12

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

13

14

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.4 (2017).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Stipulated Instruction No. 3: Claims and Defenses[1]**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiffs Maria Schneider, Uniglobe Entertainment, and AST Publishing, individually and on behalf of class members bring claims of copyright infringement and violation of the DMCA against defendants YouTube and its parent Google. Plaintiffs have the burden of proving each of these claims by a preponderance of the evidence.

Defendants Google and YouTube deny that they have infringed the plaintiffs' copyrights. The defendants also assert affirmative defenses based on license and the DMCA. The defendants have the burden of proof on their affirmative defenses.

Google and YouTube also assert a counterclaim against defendants Pirate Monitor Ltd. and Gabor Csupó for violating the DMCA. Google and YouTube bear the burden of proof on their counterclaims.

The counterclaim defendants deny those counterclaims.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.5 (2017).

---

[1] The parties agree to revise this Instruction (and to consider revisions to other impacted instructions) once the Court resolves the pending class certification motion and in light of the claims and defenses presented at trial.

3:20-cv-04423-JD

**Stipulated Instruction No. 4: Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.6 (2017).

1

**Stipulated Instruction No. 5: Two or More Parties—Different Legal Rights**

2

You should decide the case as to each party separately. Unless otherwise stated, the

3

instructions apply to all parties.

4

5

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.8 (2017).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-04423-JD

**Stipulated Instruction No. 6: What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.      the sworn testimony of any witness;

2.      the exhibits that are admitted into evidence;

3.      any facts to which the lawyers have agreed; and

4.      any facts that I have instructed you to accept as proved.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.9 (2017).

**Stipulated Instruction No. 7: What is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.10 (2017).

**Stipulated Instruction No. 8: Evidence for Limited Purpose**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

[The testimony [you are about to hear] [you have just heard] may be considered only for the limited purpose of [describe purpose] and not for any other purpose.]

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.11 (2017).

3:20-cv-04423-JD

**Stipulated Instruction No. 9: Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.12 (2017).

**Stipulated Instruction No. 10: Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.13 (2017).

### Stipulated Instruction No. 11: Credibility of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1

2  *Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 1.14 (2017).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Stipulated Instruction No. 12: Stipulations of Fact**

The parties have agreed to certain facts, which have been provided to you in writing as Trial Exhibit ___. You must therefore treat these facts as having been proved.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.2 (2017).

**Stipulated Instruction No. 13: Judicial Notice**

The court has decided to accept as proved the fact that [*state fact*]. You must accept this fact as true.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.3 (2017).

**Stipulated Instruction No. 14: Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You heard the deposition testimony of a number of witnesses. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Most of the deposition testimony you heard was presented by video, but some was presented by counsel reading from a written transcript. For testimony that was read to you, do not place any significance on the behavior or tone of voice of any person reading the question or answers.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.4 (2017).

**Stipulated Instruction No. 15: Foreign Language Testimony**

You have heard testimony of a witness who testified in the Russian language. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know the Russian language, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony. You must disregard any different meaning.

You must not make any assumptions about a witness, or a party based solely on the use of an interpreter to assist that witness or party.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.8 (2017).

**Disputed Instruction No. 16: Tests and Experiments: Offered by Plaintiffs**

A test or experiment was conducted.

You observed the conditions under which that test or experiment was made. These conditions may or may not duplicate the conditions and other circumstances that existed at the time and place of the incident involved in this case.

It is for you to decide what weight, if any, you give to the test or experiment.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.10 (2017).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Argument re Disputed Instruction No. 16: Tests and Experiments**

Plaintiffs offer the model instruction. Plaintiffs are considering the use of tests and experiments at trial and submit the model instruction for such purpose if a test or experiment is conducted.  In such event, Plaintiffs will inform Defendants of the nature of the test or experiment by 4:00 pm two days before it will be performed, in accordance with the standing order on witnesses.  If Plaintiffs do not perform such tests or experiments, the instruction will not be needed.

3:20-cv-04423-JD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DISPUTED INSTRUCTION NO. 16—DEFENDANTS' POSITION

After Plaintiffs proposed this model instruction, Defendants asked to confer about the "tests or experiments" that Plaintiffs intend to present to the jury.  Plaintiffs responded by stating "We are under no obligation to identify any test or experiment that we intend to run at trial prior to trial."  This unhelpful approach to the meet-and-confer process deprives Defendants of any meaningful ability to assess whether the model instruction, or modifications thereto, would be appropriate in light of the unidentified test or experiment that Plaintiffs apparently intend to run.

Given Plaintiffs' refusal to confer on in good faith, Defendants lack the information necessary to agree to its use and thus oppose inclusion of this instruction; ask the Court to preclude Plaintiffs from running a test or experiment at trial; and reserve their right to propose an alternative objection tailored to the nature of any test or experiment that Plaintiffs may seek to perform at trial should such a test or experiment be disclosed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Instruction No. 17: Use of Interrogatories**

Evidence was presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.11 (2017).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Stipulated Instruction No. 18: Use of Requests for Admission**

Evidence was presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.12 (2017).

1

**Stipulated Instruction No. 19: Expert Opinion**

2      You have heard testimony from witnesses who testified to opinions and the reasons for

3   their opinions. These witnesses include the plaintiffs' experts Charles Cowan, Paul Jessop, Hal

4   Singer, and Joseph Winograd and the defendants' experts Greg Halm, Francois-Xavier Nuttall,

5   and Steven Peterson. This opinion testimony is allowed, because of the education or experience of

6   those witnesses.

7      Such opinion testimony should be judged like any other testimony. You may accept it or

8   reject it and give it as much weight as you think it deserves, considering the witness's education

9   and experience, the reasons given for the opinion, and all the other evidence in the case.

10

11   *Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.13 (2017).

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                                                                    3:20-cv-04423-JD

**Stipulated Instruction No. 20: Charts and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.14 (2017).

3:20-cv-04423-JD

**Stipulated Instruction No. 21: Charts and Summaries Received in Evidence**

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.15 (2017).

**Stipulated Instruction No. 22: Evidence in Electronic Format**

Those exhibits received in evidence that are capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer, and accessory equipment will be available to you in the jury room.

A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence. You may request a paper copy of any exhibit received in evidence by sending a note through the courtroom deputy. If you need additional equipment or supplies or if you have questions about how to operate the computer or other equipment, you may send a note to the courtroom deputy, signed by your foreperson or by one or more members of the jury. Do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the courtroom deputy present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any nonjuror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any nonjuror other than to describe the technical problem or to seek information about operation of the equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to ensure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform the court immediately and refrain

3:20-cv-04423-JD

from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 2.16 (2017).

**Stipulated Instruction No. 23: Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight of the evidence simply to reach a verdict.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.1 (2017).

**Stipulated Instruction No. 24: Consideration of Evidence—Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet (including YouTube), or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place or website discussed in this case, and do not use Internet programs or other devices to search for or view any place or website discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or

investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.2 (2017).

**Stipulated Instruction No. 25: Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.3 (2017).

**Stipulated Instruction No. 26: Return of Verdict**

A verdict form has been prepared for you. [Explain verdict form as needed.] After you have reached unanimous agreement on a verdict, your foreperson should complete the verdict form according to your deliberations, sign and date it, and advise the courtroom deputy that you are ready to return to the courtroom.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 3.5 (2017).

**Stipulated Instruction No. 27: Liability of Corporations—Scope of Authority Not in Issue**

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.2 (2017).

1

**Stipulated Instruction No. 28: Agent and Principal**

2       An agent is a person who performs services for another person under an express or implied

3 agreement and who is subject to the other's control or right to control the manner and means of

4 performing the services. The other person is called a principal. The agency agreement may be oral

5 or written.

6

7 *Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.4 (2017).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 29: Preliminary Instruction—Copyright: Offered by Plaintiffs**

The plaintiffs Maria Schneider, AST Publishing Ltd., and Uniglobe Entertainment, LLC, claim ownership of copyrights and seek damages against defendants Google and YouTube for copyright infringement. The defendants deny infringing the copyright. The defendants assert affirmative defenses of license and a safe harbor under a statute called the Digital Millennium Copyright Act, or the DMCA. To help you understand the evidence in this case, I will explain some of the legal terms you will hear in this trial.

### DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, motion picture, audiovisual work, or sound recording.

### COPYRIGHT INTERESTS

The copyright owner may transfer or convey to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. To be valid, the transfer must be in writing and signed by the transferor. The person to whom a right is transferred is called an assignee.

In addition, the copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work. To be valid, the transfer must be in writing and signed by the transferor. The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has the right to exclude others in the manner described in the license.

### HOW COPYRIGHT IS OBTAINED

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. Some of the works in this case are covered by United States copyright registrations. Other works in this case are covered by foreign copyrights.

### PROOF OF COPYING

To prove that a person copied the plaintiff's work, the plaintiff may show that the person had access to the plaintiff's copyrighted work and that there are substantial similarities between the person's work and the plaintiff's copyrighted work.

### LIABILITY FOR INFRINGEMENT

One who reproduces, publicly distributes, publicly performs, publicly displays, or prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.

Copyright may also be infringed by vicariously infringing, or contributorily infringing.

### VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.

### CONTRIBUTORY INFRINGEMENT

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.

### DEFENSES TO INFRINGEMENT

The defendants contend that there is no copyright infringement when the plaintiff, the plaintiff's agent, or an assignee of the plaintiff, granted the defendant an express license to use,

copy, or publicly display the plaintiff's copyrighted work or when the defendant's conduct is protected by the DMCA's safe harbor.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.1 (2017).

**Disputed Instruction No. 29 Re: Preliminary Instruction—Copyright;
Offered by Defendants**

The plaintiffs, Maria Schneider, AST Publishing, and Uniglobe Entertainment, claim ownership of a copyright and seek damages against the defendants, YouTube and Google, for copyright infringement. The defendants deny infringing the copyright. The defendants assert affirmative defenses of license, the statute of limitations, contractual limitations, fair use, and a safe harbor under a statute called the Digital Millennium Copyright Act, or the DMCA. To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

## DEFINITION OF COPYRIGHT

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, motion picture, audiovisual work, or sound recording.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original. An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

## COPYRIGHT INTERESTS

The copyright owner may transfer or convey to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. The person to whom a right is transferred is called an assignee.

In addition, the copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work. The person to whom this right is transferred is called an exclusive licensee. The exclusive licensee has

the right to exclude others in the manner described in the license.

### HOW COPYRIGHT IS OBTAINED

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression. The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office. In addition, some of the works at issue in this case are foreign works, and foreign copyright law may govern those copyrights. After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

### PLAINTIFF'S BURDEN OF PROOF

In this case, the plaintiffs contends that the defendants have infringed the plaintiff's copyright. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendant copied original expression from the copyrighted work. Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

The plaintiff must also prove that the defendant's use of the copyrighted work was substantial. In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.

### PROOF OF COPYING

To prove that a person copied the plaintiff's work, the plaintiff may show that the person had access to the plaintiff's copyrighted work and that there are substantial similarities between the person's work and the plaintiff's copyrighted work.

### LIABILITY FOR INFRINGEMENT

One who reproduces, publicly distributes, publicly performs, publicly displays, or prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.

Copyright may also be infringed by vicariously infringing or contributorily infringing.

## VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.

## CONTRIBUTORY INFRINGEMENT

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.

## DEFENSES TO INFRINGEMENT

The defendant contends that there is no copyright infringement. There is no copyright infringement when the defendant made fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment, news reporting, teaching, scholarship, or research; when the plaintiff, the plaintiff's agent, or an assignee of the plaintiff, granted the defendant an express license to use, copy, or publicly display the plaintiff's copyrighted work; when the plaintiff's claim is barred by the statute of limitations or a similar contractual agreement between the parties; when the infringement occurred wholly outside the United States; or when the defendant's conduct is protected by the DMCA's safe harbor.

Authority: This is the model Ninth Circuit Model Instruction 17.1 adapted to the needs of this case

**Plaintiffs' Argument re Disputed Instruction 29: Preliminary Instruction: Copyright**

Plaintiffs have modified the model instruction to identify the parties in a consistent manner, to describe specific elements of this case, to eliminate instructions on uncontested elements, and to better track the facts of this case, which involves copying of Plaintiffs' works and copyright infringement in the first instance by uploaders of videos to YouTube. These infringing videos are then reproduced, distributed, publicly performed, and publicly displayed by YouTube during the upload and streaming process. Plaintiffs do not contend that YouTube had access to or directly copied Plaintiffs' works. The specifics of these changes are as follows:

**Preliminary Paragraph:** Plaintiffs identify the parties in a consistent fashion, and include affirmative defenses of license and DMCA. Defendants have not identified any specific infringing video URLs that involve fair use or that fail to conform with the Court's ruling on statute of limitations.

**DEFINITION OF COPYRIGHT**: Plaintiffs have modified this section to eliminate language on uncontested elements including: that facts and ideas cannot be copyrighted; and that a copyrighted work must be original. These uncontested elements may be confusing to the jury.

**COPYRIGHT INTERESTS:** Plaintiffs have acquiesced in Defendants' request to include both assignment and exclusive license pending trial, though we question the necessity for both. Plaintiffs have included the model charge's requirement under 17 U.S.C. § 204 that the transfer be in a signed writing. Defendants have provided no authority or rationale to justify the deletion of this requirement. *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."); *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355, 356-57 (9th Cir. 1994) (noting that § 204(a) provides that "a transfer of copyright is simply 'not valid' without a writing").

**HOW COPYRIGHT IS OBTAINED:** Plaintiffs have deleted language describing the mechanics of seeking copyright registration as the validity of Plaintiffs' registrations have not been challenged. Plaintiffs have added language simply stating that "Some of the works in this case are covered by United States copyright registrations. Other works in this case are covered by foreign copyrights."

**PLAINTIFF'S BURDEN OF PROOF:** Plaintiffs do not contend that YouTube had access to or directly copied Plaintiffs' works. Hence, some of the instructions contained in this section of the model rule do not apply, and their inclusion in this preliminary instruction is more likely to be confusing to the jury than helpful. This section includes a requirement "that the defendant copied original expression from the copyrighted work," which is not the factual scenario of this case.  It also includes a requirement that "the defendant's use of the copyrighted work was substantial."  Defendants have not presented evidence or argument contesting the substantiality of use of any infringing URLs.  Accordingly, Plaintiffs submit that this section is better deleted in its entirety

**DEFENSES TO INFRINGEMENT**: Plaintiffs included in this section only those affirmative defenses for which evidence and argument have been offered. Defendants have not identified any specific infringing video URLs that involve fair use or that fail to conform with the Court's ruling on statute of limitations.

## DISPUTED INSTRUCTION NO. 29—DEFENDANTS' POSITION)

Plaintiffs' proposed instruction unnecessarily departs from the Ninth Circuit Model Instruction No. 17.1.  By contrast, Defendants' proposed instruction adopts the model instruction in full with a necessary edit reflecting the unique circumstances of this case and supported by Ninth Circuit precedent.

*First*, Plaintiffs' proposed instruction omits key affirmative defenses that Defendants have repeatedly highlighted in Defendants' proposed jury instructions.  Plaintiffs identify Defendants' express license affirmative defense and Defendants' affirmative defense based on the safe harbor provisions of the DMCA.  But Plaintiffs' proposal fails to inform the jury that Defendants also raise affirmative defenses based on the statute of limitations, a contractual limitations period, fair use, and implied license.  Plainly, jury instructions on Defendants' affirmative defenses should not be hidden from the jury simply because Plaintiffs disapprove of them.

*Second*, Plaintiffs' instruction entirely removes the Model Instruction's description of the Plaintiff's burden of proof, which improperly minimizes Plaintiffs' burden and could mislead the jury into thinking that Plaintiffs' burden is something different than what is required under the law. The jury should receive the standard instruction on Plaintiffs' burden of proof.

*Third*, Plaintiffs' proposed instruction liberally removes—without explanation or supporting authority—other useful portions of the Model Instructions, such as removing the requirement that a copyrighted work must be original and failing to inform the jury about the process of registering works with the United States Copyright Office.  Defendants' instruction faithfully tracks the model's explanation of these topics.

Defendants make one substantive change of Model Instruction No. 17.1 to avoid confusion about Defendants' affirmative implied license defense, which requires proving that a license was established by conduct, not by writing.  Specifically, Defendants propose removing the requirement that the transfer of a copyright or the grant of an exclusive license to a copyright be in writing—a change necessary under the facts to avoid confusing the jury into requiring Defendants' to prove more in support of their implied license defense than is necessary under the law.  "Though exclusive licenses must be in writing, 17 U.S.C. § 204, grants of nonexclusive

licenses need not be in writing, and may be granted orally or by implication." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001) (same).  The "in-writing" requirement of 17 U.S.C. §§ 101, 204 thus does not foreclose Defendants' implied license defense, because Defendants do not contend YouTube received an exclusive implied license.  To avoid needlessly confusing the jury about whether the "in-writing" requirement bars Defendants' implied license defense, and to avoid potentially improperly heightening Defendants' burden at trial, Defendants propose simply omitting the "in-writing" requirement from this instruction.

The Court's summary judgment order further supports this modification of the model instruction.  The Court held that the Music Publishing Administration Agreement ("AA") that Ms. Schneider entered into was an "administration agreement," "not a copyright license," much less an exclusive one, and so the requirements of 17 U.S.C. § 204 do not apply to the AA.  Dkt. 222 at 11–12.  Unqualified statements about the requirements of Section 204 may therefore confuse the jury.

Defendants' instruction adheres closely to the model instruction and makes only one modification to account for the unique circumstances of this case.  The Court should adopt that instruction rather than Plaintiffs' proposal, which selectively deviates from the model instruction when convenient for Plaintiffs.

**Disputed Instruction No. 30: Copyright—Defined: Offered by Plaintiffs**

Copyright is the exclusive right to copy. This right to copy includes the exclusive rights to, or authorize others to:

1.  reproduce the copyrighted work, in whole or in part, in digital copies;

2.  prepare derivative works that copy all or part of the copyrighted work;

3.  distribute copies of the copyrighted work to the public by transfer or through downloading;

4.  perform publicly, including by streaming over the internet to members of the public, a copyrighted literary work, musical work, dramatic work including a screenplay, motion picture, or a derivative work that copies all or part of a copyrighted work; and

5.  display publicly including by streaming over the internet to members of the public, a copyrighted literary work, musical work, dramatic work including a screenplay, motion picture, or a derivative work that copies all or part of a copyrighted work.

It is the owner of a copyright who may exercise these exclusive rights. The term "owner" includes the author or composer of the work, an assignee, a beneficial owner, or an exclusive licensee. In general, copyright law protects against reproduction, public performance, or public display of identical or substantially similar copies of all or a portion of the owner's copyrighted work without the owner's permission. An owner may enforce these rights to exclude others in an action for copyright infringement.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.2 (2017);
- 17 U.S.C.§ 101 ("To perform or display a work "publicly" means … (2) to transmit or otherwise communicate a performance or display of the work … to the public, by means

of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.");

- *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001) (users who make digital copies of copyrighted works available for others to download violate the exclusive distribution right);

- *Warner Bros. Entm't v. WTV Systems, Inc.*, 824 F.Supp.2d 1003, 1008–1012 (C.D.Cal.2011) (provider of unauthorized on-demand movie streaming service violated the performance right of copyright owners);

- *Columbia Pictures Indus., Inc. v. Galindo*, 2022 WL 17094713, at *7 (C.D. Ca. Nov. 18, 2022) ("Streaming a copyrighted work over the internet qualifies as public performance."); *Id.* at *8 (making a copy of a digital movie file for purposes of streaming constitutes direct infringement);

- 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.");

- 5 Patry on Copyright § 17:90 (An owner of a registered work may "proceed against the infringer based on registration of the original work even if the infringer copied from a derivative work.");

- *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015) ("Logically, therefore, if a third party copies a derivative work without authorization, it infringes the original copyright owner's copyright in the underlying work to the extent the unauthorized copy of the derivative work also copies the underlying work.").

**Disputed Instruction No. 30 Re: Copyright—Defined;**
**Offered by Defendants**

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

1.   reproduce the copyrighted work in copies;

2.   transform or adapt the work, that is, prepare derivative works based upon the copyrighted work;

3.   distribute copies of the copyrighted work to the public;

4.   perform publicly a copyrighted literary work, musical work, dramatic work, or motion picture;

5.   display publicly a copyrighted literary work, musical work, dramatic work, or individual image of a motion picture; and

6.   perform a sound recording by means of digital audio transmission.

It is the owner of a copyright who may exercise these exclusive rights. The term "owner" includes the author of the work, an assignee, or an exclusive licensee. In general, copyright law protects against reproduction, public performance, or public display of identical or substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce the se right s to exclude others in an action for copyright infringement.

Authority: This is the model Ninth Circuit Model Instruction 17.2.

**Plaintiffs' Argument re Disputed Instruction No. 30: Copyright—Defined**

Plaintiffs adapted the model instruction to eliminate examples not relevant to this case and to provide examples that are relevant to this case. In subpart (1), Plaintiffs added the phrase "in whole or in part" since in some instances, YouTube uploaders copied only portions of Plaintiffs' works. For example, many infringing uploads of AST's audiobooks have been broken into chapters. Plaintiffs also added the word "digital" to describe the nature of the copying at issue.

In subpart (2), Plaintiffs do not include the phrase "transform or adapt the work" since there is no allegation that YouTube uploaders have transformed or adapted Plaintiffs' works—they have simply been copied into videos. Plaintiffs have included the phrase "that copy all or part of" to reflect the nature of the infringement by I uploaders. In subpart (3), Plaintiffs include the phrase "by transfer or through downloading" to describe the nature of the distribution at issue, *i.e.*, transfer of videos over the internet and downloading. Defendants allow downloading of videos by paid subscribers.

In subparts (4) and (5), Plaintiffs add the phrase "including by streaming over the internet to members of the public" to describe the type of public performance and public display at issue. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001)  (users who make digital copies of copyrighted works available for others to download violate the exclusive distribution right); *Warner Bros. Entm't v. WTV Systems, Inc.*, 824 F.Supp.2d 1003, 1008–1012 (C.D.Cal.2011) (provider of unauthorized on-demand movie streaming service violated the performance right of copyright owners); *Columbia Pictures Indus., Inc. v. Galindo*, 2022 WL 17094713, at *7 (C.D. Ca. Nov. 18, 2022) ("Streaming a copyrighted work over the internet qualifies as public performance."). Plaintiffs have also added the word "screenplay" to encompass Uniglobe's *5 Weddings* English copyright interest, and Plaintiffs have added the phrase "a derivative work that copies all or part of a copyrighted work" to account for YouTube's public performance and public display that involves YouTube streaming the videos of YouTube uploaders. An owner of a registered work may "proceed against the infringer based on registration of the original work even

3:20-cv-04423-JD

if the infringer copied from a derivative work." 5 Patry on Copyright § 17:90; *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015) ("if a third party copies a derivative work without authorization, it infringes the original copyright owner's copyright in the underlying work to the extent the unauthorized copy of the derivative work also copies the underlying work.").

In the final paragraph, Plaintiffs have added "or composer" to reflect Ms. Schneider's interests in her compositions, and the phrase "a beneficial owner" to reflect Uniglobe's retained beneficial ownership interest through retention of royalty payments, which allows it to sue for copyright infringement following the grant of an exclusive license to distribute. Even where a copyright owner has previously transferred or licensed all of the exclusive rights at issue, that copyright owner retains standing under the Copyright Act to bring claims for infringement of those exclusive rights so long as the owner retains a beneficial ownership interest in those rights. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it."). One way copyright owners retain a beneficial ownership interest is by retaining a percentage of royalties. *See DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) ("The classic example of a beneficial owner is an author who has parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." (cleaned up)); *see also First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, No. CV 19-9577 PSG (GJSx), 2020 WL 5898973, at *7 (C.D. Cal. July 2, 2020).

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**DISPUTED INSTRUCTION NO. 30—DEFENDANTS' POSITION**

Defendants' instruction adopts Ninth Circuit Model Instruction 17.2 with no modification. That is the preferred approach.  *See* Standing Order for Civil Jury Trials Before Judge James Donato ¶ 7 ("The parties should use the Ninth Circuit Model Jury Instructions to the fullest extent possible.  Modifications and 'custom' proposed instructions are discouraged."); *see also United States v. Peppers*, 697 F.3d 1217, 1220 (9th Cir. 2012) (noting preference for model jury instructions).

Plaintiffs offer two unjustified custom deviations.

*First*, Plaintiffs add language to allow for derivative works that copy "all *or part of* a copyrighted work" in Items #2 and #4 whereas the model instruction does not include the "part of" language that Plaintiffs propose adding.  Plaintiffs have not provided any authority to support this change, and there is no reason to make it.

*Second*, Plaintiffs propose adding "including by streaming over the internet to members of the public" to Item 3 and "through downloading" to Item 2, which invite jury confusion. YouTube, for example, is a streaming service that does not permit downloading, illustrating that Plaintiffs' proposals are not tailored to the facts of the case and will only serve to mislead the jury.

*Third*, Plaintiffs add an entirely new category to the list of exclusive rights included in the model instruction: "display publicly including by streaming over the internet to members of the public, a copyrighted literary work, musical work, dramatic work including a screenplay, motion picture, or a derivative work that copies all or part of a copyrighted work."  That addition is unnecessary, duplicative of the general rights to display and perform, and places undue emphasis on that right.

*Finally*, Plaintiffs add language from the model instruction for "a beneficial owner" but have not explained why that language is necessary or appropriate under the facts of this case.

The Court should adopt Defendants' instruction that adopts in full the model instruction.

**Stipulated Instruction No. 31: Copyright—Subject Matter—Generally: Offered by Plaintiffs**

The works involved in this trial are known as:

1.   literary works, including screenplays and the text of audiobooks; in which words, numbers, or other verbal or numerical symbols are expressed;

2.   musical works, including compositions, and any accompanying words;

3.   dramatic works, including any accompanying music;

4.   motion pictures and other audiovisual works; and

5.   sound recordings, which are works that result from fixation of a series of musical, spoken, or other sounds;

You are instructed that a copyright may be obtained in such works.

These works can be protected by copyright law.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.3 (2017).

**Stipulated Instruction No. 32: Copyright Infringement—Ownership of Valid Copyright—Definition**

The plaintiff is the owner of a valid copyright in a work if the plaintiff proves by a preponderance of the evidence that:

1.      the plaintiff's work is original; and

2      the plaintiff is the author or creator of the work, received a transfer of the copyright, or received a transfer of the right to reproduce, distribute, perform, display or prepare derivative works.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.6 (2017).

**Disputed Instruction No. 33: Copyright Infringement—Copyright Registration Certificate: Offered by Plaintiffs**

A copyright owner may obtain a certificate of registration from the Copyright Office.

The evidence in this case includes Exhibits ___, certificates of copyright registration from the Copyright Office. You are instructed that the certificate is sufficient to establish that there is a valid copyright in each of the works identified in those certificates.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.7 (2017).

3:20-cv-04423-JD

**Disputed Instruction No. 33 Re: Copyright Infringement—Copyright Registration Certificate (17 U.S.C. § 410(c)); Offered by Defendants**

A copyright owner may obtain a certificate of registration from the Copyright Office.

[*When defendant does not present evidence regarding validity or ownership of copyright*]

The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office. You are instructed that the certificate is sufficient to establish that there is a valid copyright in [*identify the work in question*].

[*When defendant presents evidence regarding validity or ownership of copyright*]

The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office. [If you find that this certificate was made within five years after first publication of the plaintiff's work, you may consider this certificate as evidence of the facts stated in the certificate.] From this certificate you may, but need not, conclude that: [*state specifics of the certificate relevant to the case, e.g., that plaintiff's work is the original and copyrightable work of the author and that the plaintiff owns the copyright in that work*], which I explain in Instructions [*insert instruction numbers relevant to elements of plaintiff's burden*].

Authority: This is the model Ninth Circuit Model Instruction No. 17.7.

**Plaintiffs' Argument re Disputed Instruction No. 33: Copyright Infringement—Copyright Registration Certificate**

Plaintiffs have selected the version of the model rule that applies where the defendant does not present evidence challenging validity or ownership of copyright.  No such evidence has been presented. While Defendants question whether suit has been brought in the name of the corporation that owns the copyright registration for a Uniglobe work, no evidence has been proffered to contest the validity of that registration.

3:20-cv-04423-JD

## DISPUTED INSTRUCTION NO. 33—DEFENDANTS' POSITION

Defendants' instruction does not modify the Ninth Circuit Model Instruction 17.70, which relates to the evidence of copyright registration.  Plaintiffs propose to omit much of the Model Instruction.  But Plaintiffs offer no legal or factual justification for such omission for their proposal, which strays far from the model jury instructions. *See, e.g.*, *Peppers*, 697 F.3d at 1221 (9th Cir. 2012) (noting preference for model jury instructions); *H.I.S.C. v. Rajanayagam*, 810 Fed.Appx.560, 561 (9th Cir. 2020) (same); *United States v. Dobbins*, 191 F.3d 461, *2 (9th Cir. 1999)  (same).

As of the filing of this brief, Plaintiffs have not even produced their copyright registration certificates.  Plaintiffs have informed Defendants that Plaintiffs intend to produce them before trial.  Plaintiffs' untimely disclosure prejudices Defendants' ability to prepare for trial, including by assessing this specific jury instruction and the extent to which Defendants will challenge ownership and registration.  Defendants reserve the right to propose a modification to this instruction, if, upon a review of Plaintiffs' registration certificates, such a proposal is warranted.  Otherwise, the Court should adopt Defendants' instruction that adopts in full the model instruction.

**Disputed Instruction No. 34: The Pre-Suit Registration Requirement and Foreign Works:**

**Offered by Plaintiffs**

For some of the copyrights in this case, you must decide whether the copyright is for a United States work or a foreign work. A work is a United States work only if the work is first published:

1. in the United States; or

2. simultaneously in the United States and a country that protects copyright for as long as the United States.

A foreign work is any work that is not a United States work.

For purposes of this instruction, publication includes offering a work for sale or distribution. Publication does not include posting a work online.

*Authority*: 17 U.S.C. § 101; *Moberg v. 33T LLC*, 666 F. Supp. 2d 415, 423 (D. Del. 2009) (posting a work online is not publishing within the meaning of a United States work in the Copyright Act).

.

1

**Disputed Instruction No. 34 Re: The Pre-Suit Registration Requirement and Foreign Works; Offered by Defendants**

For some of the copyrights in this case, you must decide whether the copyright is for a "United States work" or a "foreign work."

Uniglobe asserts that *5 Weddings (Hindi Version)* is a foreign work.  The defendants assert that it is a United States work because it was first published globally.  Uniglobe must prove by a preponderance of the evidence that *5 Weddings (Hindi version)* is a foreign work; if it does not do so, you must find that *Weddings (Hindi version)* is a United States work.

AST asserts that all of its copyrights are for foreign works.  The defendants assert that they are United States works because they were first published globally.  AST must prove by a preponderance of the evidence that its works are foreign works; if it does not do so, you must find that AST's works are United States works.

A work is a United States work only if the work was first published:

1. in the United States;

2. simultaneously in the United States and a country whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States; or

3. simultaneously in the United States and a country that is not a party to a copyright treaty to which the United States is a party.

A foreign work is any work that is not a United States work.

For purposes of this instruction, publication includes offering a work for sale, rent, or lease, or offering to distribute a work for the purposes of further distribution, public performance, or public display.  Publication may occur on streaming services such as YouTube.  If someone publishes a work on a public website that is hosted in one country, it is simultaneously published in all other countries.

Authority: 17 U.S.C. § 101 (definitions for "United States work" and "publication"), § 411 (pre-suit registration requirement); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019); *Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *14 (M.D. Tenn. Mar. 28, 2023) ("[W]hen Plaintiff made Plaintiff's work available on YouTube, Instagram, and Twitter, she published her work within the meaning of the Copyright Act."); *see also New Show*

*Studios, LLC v. Needle*, No. 214CV01250CASMRWX, 2016 WL 5213903, at *7 (C.D. Cal. Sept. 20, 2016) (videos first "published" on YouTube); *Kernal Recs. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011) ("[P]ublishing [a work] on a website in Australia was an act tantamount to global and simultaneous publication of the work."), *aff'd on other grounds* 694 F.3d 1294 (11th Cir. 2012); 2 Nimmer on Copyright § 7.16(B)(6)(e).

1
2

**Plaintiffs' Argument re Disputed Instruction No. 34: The Pre-Suit Registration Requirement and Foreign Works**

3     Plaintiffs' proposed instruction tracks the definition of "United States work" from 17

4  U.S.C. § 101.  Under the statute, a work is a "United States work" only if "(1) in the case of a

5  published work, the work is first published (A) in the United States; [or] (B) simultaneously in the

6  United States and another treaty party or parties, whose law grants a term of copyright protection

7  that is the same as or longer than the term provided in the United States…." 17 U.S.C. § 101.  A

8  foreign work is any work that is not a United States work.  Plaintiffs' instruction also includes the

9  definition of "publication," again based on the definition from 17 U.S.C. § 101 and case law that

10  interpret this definition.  As that case law makes clear, posting a work online does not constitute

11  simultaneous publication within the meaning of the Copyright Act.  *See Moberg v. 33T LLC*, 666

12  F. Supp. 2d 415, 423 (D. Del. 2009); *Rogers v. Better Bus. Bureau of Metro. Houston, Inc.*, 887 F.

13  Supp. 2d 722, 731 (S.D. Tex. 2012).  The Copyright Office's own definition of "publication" is in

14  accord.  *See* Compendium of U.S. Copyright Office Practices § 1008.3(B) ("the Office does not

15  consider a work to be published if it is merely displayed or performed online").

16     Defendants' proposed instruction ignores this case law and the Copyright Office's

17  guidance and assumes that any work uploaded to the internet is simultaneously published within

18  the meaning of the Act.  This theory—raised for the first time in a proposed jury instruction—

19  would render null the Copyright Act's protection for the millions of foreign works uploaded to the

20  internet prior to publication.  *Cf. Rogers*, 887 F. Supp. 2d at 732 n. 34 ("A determination that a

21  live website is necessarily published would have wide-ranging effects on the rights of authors and

22  users[.]").  This sweeping change to the scope of the Copyright Act should be rejected.

23     Further, Defendants' newfound argument would cause the Copyright Act to violate

24  international law.  "[A]n act of Congress ought never to be construed to violate the law of nations

25  if any other possible construction remains, and consequently can never be construed to violate

26
27
28

3:20-cv-04423-JD

neutral rights, or to affect neutral commerce, further than is warranted by the law of nations as understood in this country." *Murray v. Schooner Charming Betsy, The*, 6 U.S. 64, 118 (1804). The Ninth Circuit affirmed that the *Charming Betsy* canon applies with full force to the Copyright Act. *Fox Television Stations, Inc v. Aereokiller, LLC*, 851 F.3d 1002, 1011 (9th Cir. 2017) ("interpreting § 111 so as to include Internet-based retransmission services would risk putting the United States in violation of certain of its treaty obligations. An age-old canon of construction instructs that 'an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.'")). The Berne convention excludes streaming and broadcast from publication. Berne Conv. art. 3 § 3 ("The expression 'published works' means works published with the consent of their authors, whatever may be the means of manufacture of the copies, provided that the availability of such copies has been such as to satisfy the reasonable requirements of the public, having regard to the nature of the work. . . . The communication by wire or the broadcasting of literary or artistic works . . . shall not constitute publication."). To conform to international law, the Copyright Act should be interpreted in the same way.

In addition, offering worldwide rights of distribution does not render the work in question a United States work because it will simultaneously be offered to treaty another treaty party or parties, whose law grants a term of copyright protection that is the *not* the same as or longer than the term provided in the United States." *Dish Network v. Fraifer*, 2020 W.L. 1515938 (M.D. Fla. 2020) (concluding that simultaneous offering for distribution in United States and the Middle East does not render work a United States work because several Middle Eastern treaty countries offer copyright protection of a shorter duration than that provided under U.S. law). *Cf. Elliott v. Gouverneur Tribune Press, Inc.*, 7:13-CV-00055, 2014 WL 12598275, at *3 (N.D.N.Y. Sept. 29, 2014) (denying Defendants' motion for summary judgment and rejecting Defendants' argument that Plaintiff published her photographs when she posted them on the internet). In any event, Defendants' instruction misstates the law and should thus not be presented to the jury.

3:20-cv-04423-JD

**DISPUTED INSTRUCTION NO. 34—DEFENDANTS' POSITION**

This instruction pertains to Uniglobe's infringement claim for *5 Weddings (Hindi version)* and AST's infringement claim for all of its works.  In general, a plaintiff must register its work with the U.S. Copyright Office before an infringement case can move forward in federal court. 17 U.S.C. § 441; 2 Nimmer on Copyright § 7.16(B)(1)(a) (2023).  However, this pre-suit registration requirement applies only to "United States works," and not "foreign works."  *See* 17 U.S.C. §§ 101 (definition of "United States work"), 441 (imposing the pre-suit registration requirement only on "civil action[s] for infringement of the copyright in any United States work"); 2 Nimmer on Copyright § 7.16(B)(1)(b)(ii) (2023).  Uniglobe does not contend that it has a copyright registration for *5 Weddings (Hindi version)*.  AST does not contend that it has a copyright registration for any of its works.  Accordingly, Uniglobe and AST cannot maintain an action for infringement with respect to *5 Weddings (Hindi Version)* and AST's works unless the plaintiffs establish that these are "foreign works" under the Copyright Act.

Defendants have largely adopted Plaintiffs' Disputed Instruction No. 34: The Pre-Suit Registration Requirement and Foreign Works.  The two issues that remain are (1) correctly stating the definition of "United States work," and (2) the meaning of the word "published."

*First*, Plaintiffs' proposed instruction omits two conditions under which a work is a "United States work" as stated in 17 U.S.C. § 101.  Defendants' proposed instruction corrects those omissions by adding conditions that are present in the statute.  17 U.S.C. § 101, *United States work*, (1)(B), (D).

*Second*, Defendants' proposed instruction accurately states that a work is "published" under the act if it is broadly shared online for the purpose of further distribution, public performance, or public display.  Under 17 U.S.C. § 101, "'[p]ublication' [includes] the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  Publication also includes "[t]he offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display" although "[a] public performance or display of a work" is not "itself" sufficient for publication. *Id.*  Accordingly, the "[U.S. Copyright Office generally considers a work 'published' when the

copyright owner makes copies or phonorecords available online and offers to distribute them to a group of persons for purposes of further distribution, public performance, or public display." *Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *8 (M.D. Tenn. Mar. 28, 2023) (quoting U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1008.3(B) (3d ed. 2021), *available at* https://www.copyright.gov/comp3/).

Because online distribution for the purpose of further distribution, public performance, or public display qualifies as publication, courts have found that when a plaintiff "made [the plaintiff's] work available on YouTube, Instagram, and Twitter, she published her work within the meaning of the Copyright Act." *Brunson,*2023 WL 2668498 at *14; *see also New Show Studios, LLC v. Needle*, No. 2:14-CV-01250-CAS (MRWx), 2016 WL 5213903, at *7 (C.D. Cal. Sept. 20, 2016) (videos first "published" on YouTube).  And because a public website can be reached worldwide, publication on a website is "an act tantamount to global and simultaneous publication of the work, bringing [the work] within the definition of a "United States work" under § 101(1)(C) and subject to § 411(a)'s registration requirement. *Kernal Recs. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011), *aff'd on other grounds* 694 F.3d 1294 (11th Cir. 2012).

By contrast, Plaintiffs' proposed instruction incorrectly defines publication.  Plaintiffs rely on *Moberg v. 33T LLC*, 666 F. Supp. 2d 415 (D. Del. 2009), for the proposition that "posting a work online is not publishing within the meaning of a United States work in the Copyright Act." Setting aside the fact that *Moberg*'s reasoning has been harshly criticized (*e.g.,* 2 Nimmer on Copyright § 7.16(B)(6)(e) ("*Moberg* swims against the tide of other cases construing the Copyright Act.")), Plaintiffs' case does not even stand for the proposition for which Plaintiffs have cited it.  The *Moberg* court explicitly stated that it "d[id] not need to delve into . . . [the] unsettled issue" of whether a "German website 'published' plaintiff's photographs."  666 F. Supp. 2d at 422.

The Court should adopt Defendants' instruction that more accurately tracks governing law.

---

1

2

**Disputed Instruction No. 35: Copyright Interests—Authorship: Offered by Plaintiffs**

3

4

5

The creator of an original work is called the author of that work. An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

6

7

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.8 (2017).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-04423-JD

**Disputed Instruction No. 35 Re: Copyright Interests—Authorship (17 U.S.C. § 201(a));**
**Offered by Defendants**

  The creator of an original work is called the author of that work. An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

  Others may help or may make valuable or creative contributions to a work. However, such contributors cannot be the authors of the work unless they caused the work to come into being. One must translate an idea into a fixed, tangible expression in order to be the author of the work. Merely giving an idea to another does not make the giver an author of a work embodying that idea.

Authority: This is the model Ninth Circuit Model Instruction 17.8.

**Plaintiffs' Argument re Disputed Instruction No. 35: Copyright Interests—Authorship**

There are no competing claims of creation or ownership for any of Plaintiffs' works and no allegations that Plaintiffs' ownership interests do not vest in them the rights to pursue the claims of copyright infringement asserted in this action.  Accordingly, Plaintiffs have deleted from the model those portions of the instruction that are meant to determine ownership of copyright amongst joint creators. That point is not in contention.

3:20-cv-04423-JD

## DISPUTED INSTRUCTION NO. 35—DEFENDANTS' POSITION

Defendants' instruction adopts Ninth Circuit Model Instruction 17.8 without modification. Plaintiffs' instruction removes the explanation that, while others may help make valuable contributions to a work, merely giving an idea to another does not make the giver an author of the work.  Plaintiffs offer no legal or factual justification for removing language from the model instruction and thus their instruction should be rejected.  *See, e.g*., *Peppers*, 697 F.3d at 1221 (9th Cir. 2012) (noting preference for model jury instructions); *H.I.S.C.  v. Rajanayagam*, 810 Fed. Appx. 560, 561 (9th Cir. 2020) (same); *United States v Dobbins*, 191 F.3d 461, *2 (9th Cir. 1999) (same).

The Court should adopt Defendants' instruction that adopts in full the model instruction.

**Disputed Instruction No. 36: Copyright Interests—Work Made for Hire by Employee:**

**Offered by Plaintiffs**

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.

A work made for hire is one that is prepared by an employee and is within the scope of employment. The employer is considered to be the author of the work and owns the copyright.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.11 (2017).
- *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1017 (9th Cir. 2012) ("absent a written agreement to the contrary, the employer is the author of a work made for hire");
- *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1144 (9th Cir. 2003) (a work for hire clause in a contract, or a work for hire relationship, vests all rights of authorship in the employer).

**Disputed Instruction No. 36 Re: Copyright Interests—Work Made for Hire by Employee (17 U.S.C. § 201(b)); Offered by Defendants**

A copyright owner is entitled to exclude others from copying a work made for hire.

A work made for hire is one that is prepared by an employee and is within the scope of employment.

A work is made for hire within the scope of employment if:

1.      it is the kind of work the employee is employed to create;

2.      it occurs substantially within the authorized time and space limits; and

3.      it is made, at least in part, for the purpose of serving the employer.

The employer is considered to be the author of the work and owns the copyright [unless the employer and employee have agreed otherwise in writing].

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.

Authority: This is the model Ninth Circuit Model Instruction 17.11.

**Plaintiffs' Argument re Disputed Instruction No. 36: Copyright Interests—Work Made for Hire by Employee**

The works of both Uniglobe and AST are works made for hire.  Plaintiffs have moved the last paragraph of the model to the beginning of the instruction to provide context.  Plaintiffs have eliminated the language discussing what constitutes a work made for hire. Defendants have adduced no evidence that the works of Uniglobe and AST are not works for hire.  The point is not in contention; hence, the inclusion of these definitions in the instructions are unnecessary

3:20-cv-04423-JD

## DISPUTED INSTRUCTION NO. 36—DEFENDANTS' POSITION

Defendants' instruction is the Ninth Circuit Model Jury Instruction 17.11 without modification.  Plaintiffs' instruction modifies the model instruction without explanation. For example, Plaintiffs revise the model language explaining the three elements to establish that a work made for hire is within the scope of employment without explanation or any supporting authority.  Plaintiffs also remove the language explaining that an employee and an employer may alter in writing the presumption that "[t]he employer is considered to be the author of the work and owns the copyright."  Plaintiffs offer no justification for this omission in their proposal, which strays from the model jury instructions.  *See, e.g.*, *United States v. Peppers*, 697 F.3d 1217, 1220 (9th Cir. 2012) (noting preference for model jury instructions); *H.I.S.C. v. Rajanayagam*, 810 Fed. Appx. 560, 561 (9th Cir. 2020) (same); *United States v Dobbins*, 191 F.3d 461, *2 (9th Cir. 1999) (same).

It is appropriate to use the model language where, as here, there are substantial questions surrounding ownership and the applicability of the works for hire doctrine to the Works in Suit. Plaintiff AST produced its ownership documents in redacted form; they are the subject of a pending motion in limine.  Because AST failed to comply with its discovery obligations, Defendants probe ownership issues during trial, and the resulting testimony and evidence may implicate the works for hire doctrine.  The model instruction should be given to the jury on this issue.

The Court should adopt Defendants' instruction because it adopts in full the model instruction.

appropriate here.  That additional language will serve only to confuse the jury and thus should not be added to the model instruction.

1

**Disputed Instruction No. 37: Copyright Interests—Assignee: Offered by Plaintiffs**

2   For some of the works in this case, the plaintiff does not claim to be the author, creator, or

3   initial owner of the copyright at issue. Instead, the plaintiff claims that it received the copyright by

4   virtue of assignment from the work's author, creator, or initial owner so that the plaintiff is now

5   the assignee of the copyright.

6   A copyright owner may transfer, sell, or convey to another person all or part of the owner's

7   property interest in the copyright; that is, the right to exclude others from copying the work. The

8   person to whom the copyright is transferred, sold, or conveyed, becomes the owner of the copyright

9   in the work.

10   To be valid, the transfer, sale, or conveyance must be in a writing signed by the transferor.

11   The person to whom this right is transferred is called an assignee.

12

13   *Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.12

14   (2017).

15

16

17

18

19

20

21

22

23

24

25

26

27

3:20-cv-04423-JD

28

**Disputed Instruction No. 37 Re: Copyright Interests—Assignee (17 U.S.C. § 201(d)(1)); Offered by Defendants**

For some of the works in this case, the plaintiff does not claim to be the author, creator, or initial owner of the copyright at issue. Instead, the plaintiff claims that it received the copyright by virtue of assignment from the work's author, creator, or initial owner so that the plaintiff is now the assignee of the copyright.

A copyright owner may transfer, sell, or convey to another person all or part of the owner's property interest in the copyright; that is, the right to exclude others from copying the work. The person to whom the copyright is transferred, sold, or conveyed becomes the owner of the copyright in the work.

The person to whom this right is transferred is called an assignee.

Authority: This is an adaptation of the Ninth Circuit Model Instruction 17.12 drafted in light of the facts of the case.

1

**Plaintiffs' Argument re Disputed Instruction No. 37: Copyright Interests—Assignee**

2

3

4

5

6

7

8

9

Plaintiffs' proposed instruction follows the model. Plaintiffs have included the model charge's requirement under 17 U.S.C. § 204 that the transfer be in a signed writing. Defendants have provided no authority or rationale to justify the deletion of this requirement. *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."); *Konigsberg Int'l Inc. v. Rice*, 16 F.3d 355, 356-57 (9th Cir. 1994) (noting that § 204(a) provides that "a transfer of copyright is simply 'not valid' without a writing").

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 37—DEFENDANTS' POSITION

Defendants propose Model Instruction No. 17.12 with one modification that is necessary under the unique facts of this case. Defendants' instruction removes the requirement that the transfer of a copyright or the grant of an exclusive license to a copyright be in writing, which is necessary in light of Defendants' implied license defense.

Defendants are raising an implied license affirmative defense, which is by definition not in writing. In this Circuit, "[t]hough exclusive licenses must be in writing, 17 U.S.C. § 204, grants of nonexclusive licenses need not be in writing, and may be granted orally or by implication." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001) (same).

The "in-writing" requirement of 17 U.S.C. §§ 101, 204 does not foreclose Defendants' implied license defense, because Defendants do not contend YouTube received an exclusive implied license. To avoid needlessly confusing the jury about whether the "in-writing" requirement bars Defendants' implied license defense, and to avoid potentially improperly heightening Defendants' burden at trial, Defendants remove the "in-writing" requirement from this instruction.

The Court's summary judgment order further supports this modification of the model instruction because the Court held that the Music Publishing Administration Agreement ("AA") that Ms. Schneider entered into was an "administration agreement," "not a copyright license," and so the requirements of 17 U.S.C. § 204 do not apply to the AA. Dkt. 222 at 11–12. Unqualified statements about the requirements of Section 204 may therefore confuse the jury.

The Court should adopt Defendants' instruction that tailors the model instruction to the unique facts of this case.

**Disputed Instruction No. 38: Copyright Interests—Exclusive Licensee: Offered by Plaintiffs**

In this case, certain plaintiffs do not claim to be the author, creator, or initial owner of the copyright at issue. Instead, the plaintiff claims the copyright by virtue of an exclusive license from the work's author, creator, or initial owner and that the plaintiff is now the exclusive licensee of the copyright.

A copyright owner may transfer, sell, or convey exclusively to another person any of the rights comprised in the copyright. To be valid, the transfer, sale, or conveyance must be in a writing signed by the copyright owner. The person to whom this right is transferred is called a licensee.

An exclusive licensee has the rights to exclude others from copying, adapting, distributing, performing, or displaying the work to the extent of the rights granted in the license. An exclusive licensee is entitled to bring an action for copyright infringement of the right licensed.

A copyright owner who grants an exclusive license retains the right to bring an action for copyright infringement if they retain a beneficial interest in the copyright, as by retaining an interest in royalties.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.13 (2017);
- 17 U.S.C. § 501(b);
- *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) ("The classic example of a beneficial owner is an author who has parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." (cleaned up));
- *First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, No. CV 19-9577, 2020 WL 5898973, at \*7 (C.D. Cal. July 2, 2020) ("The License agreement provides Plaintiff a

'percentage [of] royalties based on sales or license fees' from SMV's distribution of the Film, making Plaintiff a beneficial owner of the Film's distribution rights, and Plaintiff has standing to sue for unlawful distribution.").

**Disputed Instruction No. 38 Re: Copyright Interests—Exclusive Licensee**
**(17 U.S.C. § 201(d)(2)); Offered by Defendants**

In this case, some plaintiffs do not claim to be the author, creator, or initial owner of some of the copyrights at issue. Instead, the plaintiff claims the copyright by virtue of an exclusive license from the work's author, creator, or initial owner and that the plaintiff is now the exclusive licensee of the copyright.

A copyright owner may transfer, sell, or convey exclusively to another person any of the rights comprised in the copyright. The person to whom this right is transferred is called a licensee.

An exclusive licensee has the rights to exclude others from copying, adapting, distributing, performing, or displaying the work to the extent of the rights granted in the license. An exclusive licensee is entitled to bring an action for copyright infringement of the right licensed.

An exclusive licensee may transfer, sell, or convey exclusively to another person any of the rights comprised in the copyright.

Authority: This is adapted from the model Ninth Circuit Model Instruction 17.13.

1
2

**Plaintiffs' Argument re Disputed Instruction No. 38: Copyright Interests—Exclusive Licensee**

3    Plaintiffs have included the language of the model.  Plaintiffs have included the model

4  charge's requirement under 17 U.S.C. § 204 that the transfer be in a signed writing.  Defendants

5  have provided no authority or rationale to justify the deletion of this requirement.  *See* 17 U.S.C.

6  § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless

7  an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by

8  the owner of the rights conveyed or such owner's duly authorized agent."); *Konigsberg Int'l Inc.*

9  *v. Rice*, 16 F.3d 355, 356-57 (9th Cir. 1994) (noting that § 204(a) provides that "a transfer of

10  copyright is simply 'not valid' without a writing").

11    Plaintiffs have also included language regarding beneficial ownership. Plaintiffs will

12  provide evidence that Uniglobe granted an exclusive distribution license but retained a right of

13  royalties. Even where a copyright owner has previously transferred or licensed all of the exclusive

14  rights at issue, that copyright owner retains standing under the Copyright Act to bring claims for

15  infringement of those exclusive rights so long as the owner retains a beneficial ownership interest

16  in those rights. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under

17  a copyright is entitled . . . to institute an action for any infringement of that particular right

18  committed while he or she is the owner of it.").  One manner by which copyright owners retain a

19  beneficial ownership interest is by retaining a percentage of royalties. *See DRK Photo v. McGraw-*

20  *Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) ("The classic example of a

21  beneficial owner is an author who has parted with legal title to the copyright in exchange for

22  percentage royalties based on sales or license fees." (cleaned up)); *see also First Am. Cinema, LLC*

23  *v. Chicken Soup for the Soul Ent., Inc.*, No. CV 19-9577 PSG (GJSx), 2020 WL 5898973, at *7

24  (C.D. Cal. July 2, 2020).  Thus, Uniglobe remains a beneficial owner entitled to enforce claims for

25
26
27
28

3:20-cv-04423-JD

copyright infringement, and thus the language to this effect should be included in the jury instruction.

1

**DISPUTED INSTRUCTION NO. 38—DEFENDANTS' POSITION**

2

Defendants propose two adaptations of Model Instruction No. 17.13 to meet the needs of

3

this case.

4

*First*, Defendants propose removing the requirement that the transfer of a copyright or the

5

grant of an exclusive license to a copyright be in writing because, in the context of this case, that

6

language will invite jury confusion.  Defendants are raising an implied license affirmative

7

defense, which is by definition not in writing.  In this Circuit, "[t]hough exclusive licenses must

8

be in writing, 17 U.S.C. § 204, grants of nonexclusive licenses need not be in writing, and may be

9

granted orally or by implication."  *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir.

10

2008); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001) (same).

11

The "in-writing" requirement of 17 U.S.C. §§ 101, 204 does not foreclose Defendants

12

implied license defense, because Defendants do not contend YouTube received an exclusive

13

implied license.  To avoid needlessly confusing the jury about whether the "in-writing"

14

requirement bars Defendants' implied license defense, and to avoid potentially improperly

15

heightening Defendants' burden at trial, Defendants remove the "in-writing" requirement from

16

this instruction.

17

The Court's summary judgment order further supports this modification of the model

18

instruction because the Court held that the Music Publishing Administration Agreement ("AA")

19

that Ms. Schneider entered into was an "administration agreement," "not a copyright license," and

20

so the requirements of 17 U.S.C. § 204 do not apply to the AA.  Dkt. 222 at 11–12.  Unqualified

21

statements about the requirements of Section 204 may therefore confuse the jury.

22

*Second*, Defendants propose explaining that the holder of an exclusive license may grant a

23

sublicense to the holder's rights.  Consistent with this Court's Order re Summary Judgment (Dkt.

24

222), the requirements of 17 U.S.C. § 201(d) do not apply to the AA that Schneider entered into.

25

Plaintiffs' instruction proposes adding the following language to the model instruction: "A

26

copyright owner who grants an exclusive license retains the right to bring an action for copyright

27

infringement if they retain a beneficial interest in the copyright, as by retaining an interest in

28

royalties."  Plaintiffs have not provided any explanation for why that addition is necessary or

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

appropriate here.  That additional language will serve only to confuse the jury and thus should not be added to the model instruction.

**Disputed Instruction No. 39: Copyright Interests—Derivative Work: Offered by Plaintiffs**

A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as a musical composition or arrangement, screenplay or other dramatic work, motion picture, sound recording, or audio book. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission.

If the copyright owner allows others to create a derivative work based on the copyrighted work, the copyright owner of the pre-existing work retains a copyright in that derivative work with respect to all of the elements from the pre-existing work that were used in the derivative work.

The author of the derivative work may enforce the right to exclude others from the original elements added by the author in an action for copyright infringement.

The copyright owner of the pre-existing work may enforce the right to exclude others in an action for copyright infringement to the extent that the material copied derived from the pre-existing work.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.15 (2017).

**Disputed Instruction No. 39 Re: Copyright Interests—Derivative Work**
**(17 U.S.C. §§ 101, 106(2)); Offered by Defendants**

A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work. The term derivative work refers to a work based on one or more pre-existing works, such as a musical arrangement, motion picture, or sound recording. Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission.

If the copyright owner exercises the right to create a derivative work based on the copyrighted work, this derivative work may also be copyrighted. Only what was newly created, such as editorial revisions, annotations, elaborations, or other modifications to the pre-existing work is considered to be the derivative work.

If the copyright owner allows others to create a derivative work based on the copyrighted work, the copyright owner of the pre-existing work retains a copyright in that derivative work with respect to all of the elements from the pre-existing work that were used in the derivative work. The author of the derivative work is entitled to copyright protection only for original contributions made by that author that are more than trivial. If the derivative work incorporates pre-existing work by others, the derivative author's protection is limited to elements added by the derivative author to the pre-existing work of others.

The author of the derivative work may enforce the right to exclude others from the original elements added by the author in an action for copyright infringement.

The copyright owner of the pre-existing work may enforce the right to exclude others in an action for copyright infringement to the extent that the material copied derived from the pre-existing work.

Authority:  This is the model Ninth Circuit Model Instruction 17.15.

1

2

**Plaintiffs' Argument re Disputed Instruction No. 39: Copyright Interests—Derivative Work**

3

4

5

6

7

8

9

10

11

12

13

Plaintiffs have relied on the model instruction.  Plaintiffs have added "composition," "screenplay" and "audiobook" to reflect Plaintiffs' works in suit. Plaintiffs have removed from the model instruction language relating to the scope of rights in the derivative since that is not a point in contention. As a matter of law, Uniglobe's copyright in the screenplay *5 Weddings* extends to both the English and Hindi-dubbed versions of the movie under the Copyright Act's definition of a derivative work.  *See* 17 U.S.C. § 101 ("A 'derivative work' is a work based upon one or more preexisting works, such as a [. . .] motion picture version[.]").   Defendants have offered no argument or authority suggesting otherwise.  Nor have Defendants provided any argument or evidence indicating that AST's copyright interest in its audiobooks does not extend to the partial copies of those audiobooks with an image imposed, which comprise the infringing AST videos at issue.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-04423-JD

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**DISPUTED INSTRUCTION NO. 39—DEFENDANTS' POSITION**

Defendants' instruction adopts Ninth Circuit Model Instruction No. 17.15. Plaintiffs' instruction improperly omits language explaining the extent to which the owners of a derivative work may assert copyright protection—without explanation.

Plaintiffs cannot argue that the statements of the law that they seek to omit are inaccurate. As the Comment to the model instruction makes clear, these principles are well established and not controversial. 17 U.S.C. § 103(b) ("The copyright in a . . . derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work . . . [and] . . . is independent of . . . any copyright protection in the preexisting material."); *see also Stewart v. Abend*, 495 U.S. 207, 223 (1990) (holding that aspects of derivative work added by derivative author are that author's property and elements drawn from pre-existing work remain property of owner of pre-existing work).

Plaintiffs' self-serving omission should not be allowed. This case is full of derivative works. Ms. Schneider claims to own rights to compositions; audiovisual and sound recordings of performances of those works are derivative works. Uniglobe claims to own rights to certain screenplays. Audiovisual recordings of performances of those works are derivative works. AST claims to own the rights to certain audiobooks. But the public performance is a derivative work of the underlying book, and a sound recording of the public reading of a book would be derivative, too.

The jury should have the benefit of the full model instruction. That is the preferred approach. *See* Standing Order for Civil Jury Trials Before Judge James Donato ¶ 7 ("The parties should use the Ninth Circuit Model Jury Instructions to the fullest extent possible. Modifications and 'custom' proposed instructions are discouraged."); *see also United States v. Peppers*, 697 F.3d 1217, 1220 (9th Cir. 2012) (noting preference for model jury instructions). That is particularly salient here, where Plaintiffs have been cagey about their assertion of Uniglobe's and AST's rights, the origin of the copyrights at issue, and which works are derivative of what.

The Court should adopt Defendants' instruction that adopts in full the model instruction.

---

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Disputed Instruction No. 40: Substantial Similarity—Extrinsic Test; Intrinsic Test: Offered by Plaintiffs**

In order to determine whether a work has been copied, you must compare the copyrighted work with the allegedly infringing work to determine whether an ordinary person would find that they are substantially similar under both the extrinsic and intrinsic tests of similarity.

The "extrinsic test" is an objective comparison of specific expressive elements. For a musical composition, you may consider such specific expressive elements as melody, harmony, rhythm, pitch, and tempo. For literary or dramatic works, including a screenplay, you may consider such expressive elements as articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works. You must consider the extent that expressive elements relevant to the type of work at issue are equally present in the allegedly infringing video. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works. If you find the copyright protected and infringing works to be substantially similar under these tests, you should find that the plaintiff's copyright protected work was copied in the infringing work.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.19 (2017).

**Disputed Instruction No. 40 Re: Substantial Similarity—Extrinsic Test; Intrinsic Test; Offered by Defendants**

As part of its burden in Instruction 41, the plaintiff must prove by a preponderance of the evidence that the defendant copied the plaintiff's work.

To determine whether YouTube or a YouTube user copied any of plaintiffs' works, you must consider whether the video that each plaintiff alleges copied the plaintiff's work was substantially similar to the work that the plaintiff owns. This means you must compare the work that the plaintiff owns with the video that the plaintiff claims infringes that work, according to the guidelines discussed in this instruction.

Ms. Schneider claims that she owns copyright in 27 written musical compositions. To assess her claims of copyright infringement, you must compare the videos on YouTube that Ms. Schneider claims infringe her works with the written musical compositions that Ms. Schneider claims was infringed.

Uniglobe claims that it owns copyright in a written screenplay for 5 Weddings (English version) and in a written screenplay for 5 Weddings (Hindi version). To assess its claims of copyright infringement, you must compare the videos on YouTube that Uniglobe claims infringes its work with the written screenplay that Uniglobe claims it owns.

AST claims that it owns copyright in 8 audiobooks. To assess AST's claims of copyright infringement, you must compare the videos on YouTube that AST claims infringes its work with the print books and/or audio books that Uniglobe claims it owns.

A plaintiff must prove both substantial similarity under the "extrinsic test" and substantial similarity under the "intrinsic test."

The "extrinsic test" is an objective comparison of specific expressive elements. For a musical composition, you may consider such specific expressive elements as melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics, for example. For literary or dramatic works, including a screenplay, you may consider such expressive elements as articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works, for example. You must consider the extent that expressive elements relevant to the type of work at issue are equally present in the allegedly infringing video.

The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works. You must assess, for each alleged infringement, whether a reasonable audience would find that it is substantially similar in the total concept and feel of the work that plaintiff claims to own.

To find that the defendant copied the plaintiff's work, you must find that the allegedly infringing work is substantially similar to the copyright by applying both the extrinsic test and the intrinsic test. If, by a preponderance of the evidence, you find substantial similarity under both tests, you must find for plaintiff as to the second element in Instruction 41. If you do not find substantial similarity under both tests, you must find for the defendant as to that work.

Authority:  The Ninth Circuit Model Instruction 17.19 includes a Comment recommending that "the Court and counsel specially craft instructions on substantial similarity."  This instruction relies upon the following cases, which are cited in the Comment: *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (citing factors and listing cases); *Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th Cir. 1990), overruled on other grounds by, *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

**Plaintiffs Argument re Disputed Instruction No. 40: Substantial Similarity—Extrinsic Test; Intrinsic Test**

Plaintiffs have followed the advice of the model to craft an instruction based on the facts of the case.  All the infringing videos in this case involve copying.  YouTube uploaders have either dropped Ms. Schneider's recordings into videos or they have recorded groups playing her compositions.  Uniglobe's *5 Weddings* English and Hindi movies have been uploaded in full or part.  Copies of chapters of AST's audiobooks have been uploaded as well.  Given the clear copying prevalent throughout the infringing videos at issue, a simple instruction on the substantial similarity test suffices.

Defendants have deviated from the parties' practice in these instructions of framing each instruction in an objective manner, choosing instead to quantify the number of works at issue and to frame the jury's obligations under this instruction in an extremely burdensome way.  Each step of the process is repeated several times (a burdensome and unnecessary approach carried over to their proposed verdict form, which suffers similar issues as noted in the argument associated with that document).  Plaintiffs' instruction provides a simple streamlined description of the relevant tests in an objective and unbiased manner.

## DISPUTED INSTRUCTION NO. 40—DEFENDANTS' POSITION

The Ninth Circuit has no model instruction on substantial similarity; the Comment to model instruction 17.19 provides a recommendation that "the court and counsel specifically craft instructions on substantial similarity based on the particular work(s) at issue, the copyright in question, and the evidence developed at trial."

There are two principal differences between the proposals. *First*, Defendants add uncontroversial prefatory material to aid jury comprehension. Second, Defendants' proposal follows the Comment's recommendation to tailor the instruction to the works at issue by providing the jury some guidance, based on the case law that is cited in the Comment, as to how to apply the extrinsic test.

For example, *Swirsky v. Carey* explains how a jury is supposed to apply the extrinsic test in the music context. 376 F.3d 841, 849 (9th Cir. 2004) (noting that, although no one specific test governs, courts will consider factors such as melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics as part of the extrinsic test). Likewise, *Shaw v. Lindheim* explains the analysis with respect to a literary work; these criteria would seem to apply to screenplays (Unigloble) and audiobooks (AST) alike. *See* 919 F.2d 1353, 1359 (9th Cir. 1990), overruled on other grounds by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065-66 (9th Cir. 2020) ("The extrinsic test focuses on specific similarities between the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events, the actual concrete elements that make up the total sequence of events and the relationships between the major characters.") (simplified). The extrinsic and intrinsic tests are challenging concepts and the jury should have some guidance as to how to apply the objective extrinsic test as it marches through the analysis.

Plaintiffs' sole objection to this instruction seems to be "the works are exact copies," so no instructions are necessary. Not so. Defendants' review of the remaining alleged infringements suggests otherwise and that, at the time of the charging conference, it will be apparent that the jury may need assistance in assessing substantial similarity.

**Disputed Instruction No. 41: Copyright Infringement—Elements—Ownership and Copying: Offered by Plaintiffs**

In this case, the plaintiffs assert both primary and secondary copyright infringement claims. I will now instruct you about the plaintiffs' claim for primary copyright infringement. I will discuss indirect copyright infringement in later instructions.

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving infringement by a preponderance of the evidence. To establish infringement, two elements must be proven:

1.      ownership of a valid copyright; and

2.      copying of constituent elements of the work that are original.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, you should find for the defendant as to the direct infringement claim for that work.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.5 (2017).

**Disputed Instruction No. 41 Re: Copyright Infringement—Elements—Ownership and Copying (17 U.S.C. § 501(a)-(b)); Offered by Defendants**

In this case, the plaintiffs assert both direct and indirect copyright infringement claims. I will now instruct you about the plaintiffs' claim for direct copyright infringement. I will discuss indirect copyright infringement in later instructions.

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright. In this case, Ms. Schneider claims that YouTube directly infringed 22 works. AST claims that YouTube directly infringed 1 work. Uniglobe does not claim that YouTube directly infringed any of its works.

On the plaintiffs' copyright infringement claim, the plaintiff has the burden of proving by a preponderance of the evidence that:

1.     the plaintiff is the owner of a valid copyright; and

2.     the defendant copied original expression from the copyrighted work;

3.     the defendant's role was active, rather than passive, consisting of more than automatically copying, transmitting, and displaying materials upon the instigation of others; and

4.     at least one act that the plaintiff alleges constitutes an infringement occurred within the United States.

You must assess these questions for each work that the plaintiffs allege was directly infringed. With respect to each work, if you find that the plaintiff has proved these elements, you should find direct infringement as to that work. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, you should find for the defendant as to the direct infringement claim for that work.

Authority: This is an adaptation of the Ninth Circuit's Model Instruction No. 17.5. *See also VHT, Inc. v. Zillow Grp., Inc*., 918 F.3d 723, 732 (9th Cir. 2019) ("activities that fall on the other side of the line, such as automatic copying, storage, and transmission of copyrighted materials, when instigated by others, do not render an Internet service provider strictly liable for copyright infringement. In other words, to demonstrate volitional conduct, [a plaintiff] must provide some evidence showing the alleged infringer] exercised control (other than by general operation of its website; selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos.") (internal quotation marks, alterations, and citations omitted) (citing *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 670 (9th Cir. 2017));

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994) ("wholly extraterritorial acts of infringement are not cognizable under the Copyright Act").

**Plaintiffs' Argument re Disputed Instruction No. 41: Copyright Infringement—Elements—Ownership and Copying:**

Plaintiffs' instruction largely follows the model. The wording of the additional first paragraph is stipulated other than for Plaintiffs' proposed use of "primary" and "secondary," and Defendants' proposed use of "direct" and "indirect". Plaintiffs' wording follows the model as the headings on vicarious and contributory infringement refer to them as "secondary" infringement. "Primary" infringement is the corollary, and, in the context of this case, use of the phrase "direct infringement" could mislead the jury to believe Defendants' liability turns on whether YouTube directly copied a plaintiff's work or had "direct" access to a plaintiff's work. This is not the law: YouTube's copying and public display of videos that are infringements and that were uploaded by users can constitute both primary (*i.e.,* direct) and secondary infringement. *See generally A&M Recs v. Napster*, 239 F.3d 1004, 1015 (9th Cir. 2001). Similarly, Plaintiffs modify subpart (2) to make clear that YouTube need not directly copy any Plaintiff's work, an important issue in this case. Subpart (1) is modified to conform its grammatical structure to that of modified subpart (2).

Defendants' additional language should be rejected as the proposed verdict form will require the jury to make findings for every work-in-suit. Defendants' proffered subpart (3), suggesting that Defendants' "automatic copying, transmittal, or display of "materials upon the instigation of others" overstates the law, risks confusing the jury and could improperly insulate YouTube from liability for primary infringement. In *Perfect 10 v. Giganews*, 847 F.3d 657, 666 (9th Cir. 2017), the Ninth Circuit stated, "the so-called 'volition' element of direct infringement … is a basic requirement of causation. As its name suggests, direct liability must be premised on conduct that can reasonably be described as the direct cause of the infringement". Plaintiffs will demonstrate YouTube's volitional conduct through evidence that WatchNext and Autoplay serve nearly 50% of the content viewed and that Autoplay automatically plays videos selected by YouTube when a YouTube viewer that has AutoPlay enabled (as it is by default).

3:20-cv-04423-JD

1       Defendants' subpart (4) should be rejected.  It seeks to impose a requirement of at least one

2  domestic infringement.  Defendants failed, however, to produce location data in response to

3  Plaintiffs' requests and cannot now seek to impose proof requirements related to withheld evidence.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-04423-JD

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

## DISPUTED INSTRUCTION NO. 41—DEFENDANTS' POSITION

Defendants' instruction closely tracks the Ninth Circuit Model Instruction No. 17.5 with two necessary modifications.

**First**, it includes an element on causation—a change that is necessary here given that causation is contested.  The Comment to the Ninth Circuit Model Jury Instruction No. 17.5 specifically contemplates this change: "[i]f causation is contested, it may be appropriate to modify this instruction to explicitly include causation as an element."

As the Comment explains, "[t]o establish the defendant's liability on a direct infringement theory, the plaintiff must show that the defendant was the cause of the infringement."  Comment, Model Instruction No. 17.5 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019)).  In *VHT*, the Ninth Circuit explained that, where a plaintiff alleges that a defendant infringed the plaintiff's copyright by the operation of the defendant's website, the element of causation requires that the "actual infringing conduct" of the defendant have a "sufficiently close and causal" nexus with "the illegal copying" such that "one could conclude that the [website] owner [itself] trespassed on the [copyright]."  918 F.3d at 732.  Plaintiff thus must establish the defendant's "'active' involvement" in infringement, rather than passive "activities . . . such as automatic copying, storage, and transmission of copyrighted materials . . . instigated by others," such as by establishing "evidence showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or support; or instigated any copying, storage, or distribution of [the plaintiffs' work]."  *Id.* (cleaned up).  Defendants' proposed causation element closely tracks the Ninth Circuit's language in *VHT* and *Perfect 10*, this Circuit's leading cases on applying the requirements of an infringement in the online context.

**Second**, Defendants adapt the Model Instruction to the international context of this case by adding language to address the requirement—long established in Ninth Circuit caselaw—that "wholly extraterritorial acts of infringement are not cognizable under the Copyright Act."  *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994) (en banc); *see*

---

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

*also id.* at 1095 ("we are unwilling to overturn over eighty years of consistent jurisprudence on the extraterritorial reach of the copyright laws without further guidance from Congress.").

Rather than addressing these issues, Plaintiffs' make unsupported and confusing edits to the existing elements in the Model Instruction.  Defendants request that the Court adopt Defendants' instruction.

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Disputed Instruction No. 42: Copyright Infringement—Volitional Conduct: Offered by**

**Plaintiffs**

On a claim of primary copyright infringement, a plaintiff must establish that the defendant played an active role in the infringement or was a direct cause of the infringement. In considering whether the defendant played an active role, you should consider whether the defendant's conduct extended beyond merely providing a platform for the upload and display of user-generated content, including whether the defendant: (1) exercised control over the infringing act; (2) selected the infringing material; or (3) instigated any copying, storage, or distribution of the infringing material.

*Authority:*

- *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (Volitional conduct "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts.")

- 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.08[C][1] (2016) (Matthew Bender, Rev. Ed.).

**Disputed Instruction No. 42 Re: Copyright Infringement: Volitional Conduct;
Offered by Defendants**

As part of its burden in Instruction 41, the plaintiffs must establish that the defendants engaged in "volitional conduct" with regard to the alleged infringements at issue in this case. This means that plaintiffs must show that defendants, rather than the persons who uploaded the allegedly infringing videos to YouTube's service, were actively involved in the alleged infringement.

The plaintiffs assert that by making WatchNext and Autoplay available on the YouTube platform, the defendants engage in volitional conduct. The defendants assert that WatchNext and Autoplay are part of YouTube's general operation and that users, not YouTube, determine which videos they watch on YouTube.

It is not enough for the plaintiff to show that the defendants' services automatically copied, stored, or transmitted materials in response to users' decision to upload allegedly infringing videos. Nor is it enough to show that users may use YouTube to display infringing videos, or that YouTube automatically recasts user-uploaded content in a format that is readily accessible to its users. Rather, plaintiffs must prove that YouTube exercised control over any infringement that went beyond the general operation of the YouTube's service, such as by instigating any copying, storage, or distribution of Plaintiffs' work.

Authority:  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("activities that fall on the other side of the line, such as automatic copying, storage, and transmission of copyrighted materials, when instigated by others, do not render an Internet service provider strictly liable for copyright infringement. In other words, to demonstrate volitional conduct, [a plaintiff] must provide some evidence showing the alleged infringer] exercised control (other than by general operation of its website; selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos.") (internal quotation marks, alterations, and citations omitted) (citing *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 670 (9th Cir. 2017).

**Plaintiffs' Argument re: Disputed Instruction No. 42: Copyright Infringement—Volitional Conduct:**

The Court should adopt Plaintiffs' volitional conduct instruction, which appropriately limits the application of the volitional conduct requirement to primary (direct) infringement. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("[D]irect copyright liability for website owners arises when they are *actively involved* in the infringement.") (emphasis original); *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017) (referencing the "so-called 'volition' element of direct infringement"). Plaintiffs' instruction concisely reflects the relevant caselaw, instructing the jury that, for an internet service provider, the volitional conduct requirement turns on whether the defendant: (1) exercised control over the infringing act; (2) selected the infringing material; or (3) instigated any copying, storage, or distribution. *Id.* ("Perfect 10 provides no evidence showing Giganews exercised control (other than by general operation of a Usenet service); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution.")

Plaintiffs' instruction appropriately refrains from supplying specific contentions regarding the precise conduct from which the jury may find the volitional conduct requirement satisfied. Should the Court deem such contentions appropriate at the close of the case, Plaintiff will provide appropriate contention instructions based on the evidence presented regarding all conduct, not limited to WatchNext and AutoPlay, that may provide the jury with a basis for finding the volitional conduct requirement satisfied.

Defendants' proposed jury instruction should be rejected for multiple reasons.  First, it obscures that the volitional conduct requirement applies only to claims of direct, or primary, infringement.  *See Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 670–73 (9th Cir. 2017) (extensively analyzing volitional conduct as an element of direct infringement and omitting volitional conduct as an element of contributory or vicarious infringement).

3:20-cv-04423-JD

Second, Defendants' proposed instruction states that the volitional conduct element requires that Plaintiffs prove that Defendants, "*rather than* the persons who uploaded the allegedly infringing videos to YouTube, were actively involved in the infringement." That instruction misstates the law, which recognizes that two parties (here, the original creator—the uploader—of the infringing video and then YouTube as it, *e.g.*, engages in volitional conduct in the copying, distribution, and public display of that infringing video) can be liable for direct infringement, although only the liability of YouTube is at issue here. *See id.* at 666 (9th Cir. 2017) (noting that volitional conduct "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts.").

Third, Defendants' proposed instruction strongly, and wrongly, implies that Watch Next and Autoplay are insufficient *per se* to satisfy the volitional conduct element of Plaintiffs' primary infringement claim because Plaintiffs purportedly must prove conduct that goes "beyond the general operation" of the platform. Defendants' instruction falsely implies that automated conduct cannot serve as the basis for liability. This erroneous standard is reinforced by Defendants' admonition that "it is not enough…that YouTube automatically recasts user uploaded content in a format that is readily accessible to its users" thereby precluding the jury from deciding the scope, and significance, of YouTube's control over what users watch. Framing Watch Next and Autoplay as automatic processes that cannot provide a basis for liability leads the jury by the nose to the conclusion that YouTube does *not* exercise control over the content viewed by users.

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

### DISPUTED INSTRUCTION NO. 42—DEFENDANTS' POSITION

As explained in Defendants' statement regarding Disputed Instruction No. 41 (*cf.* Model Instruction 17.5), the jury instructions for this case must include a discussion of the element of causation (or "volitional conduct") for liability for direct copyright infringement.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019).  Defendants offer this instruction for two purposes.

**First**, the language of Defendants' proposed instruction hews closely to the language of the Ninth Circuit's decision in *VHT, Inc. v. Zillow Grp., Inc.*  In that case, the Ninth Circuit explained that, in the online context, the element of causation requires that the "actual infringing conduct" of the defendant have a "sufficiently close and causal" nexus with "the illegal copying" such that "one could conclude that the [website] owner [itself] trespassed on the [copyright]." 918 F.3d at 732.  Plaintiff thus must establish the defendant's "'active' involvement" in infringement, rather than passive "activities . . . such as automatic copying, storage, and transmission of copyrighted materials . . . instigated by others," such as by establishing "evidence showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or support; or instigated any copying, storage, or distribution of [the plaintiffs' work]." *Id.* (cleaned up).  Defendants' proposed instruction closely tracks the Ninth Circuit's language, which this Court has already endorsed in granting in part YouTube's motion for summary judgment against Ms. Schneider. *See* Dkt.  222 at 3 ("The key concept is that 'direct copyright liability for website owners arises when they are *actively involved* in the infringement,' and not passive handlers of content supplied by others." (emphasis in original)).

**Second**, Defendants' proposed instruction No. 42 explains how the volitional conduct requirement applies in this case.  Specifically, Defendants' proposed instruction explains how the jury should evaluate the volitional conduct requirement against Plaintiffs' claims about YouTube's accused WatchNext and Autoplay functions.

Plaintiffs' abbreviated proposal would have limited value to the jury because it fails to explain the volitional conduct requirement in the context of Plaintiffs' claims about WatchNext

and Autoplay.

**Disputed Instruction No. 43: Secondary Liability—Vicarious Infringement—Elements and Burden of Proof: Offered by Plaintiffs**

The plaintiffs also assert that defendants are liable for secondary copyright infringement. There are two types of secondary copyright infringement. The first is vicarious copyright infringement. The plaintiffs assert a vicarious liability claim for all of the copyrights at issue in this case.

If you find that uploaders of videos to YouTube infringed the plaintiffs' copyrights in their works you must determine whether the defendants vicariously infringed those copyrights. The plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1.   The defendants directly benefitted financially from the infringing activity;

2.   The defendants had the right and ability to supervise, control, block, or police the infringing activity; and

3.   The defendants failed to exercise that right and ability to stop or limit the infringement, including by failing to exercise to its fullest extent, the right to police infringement.

The plaintiffs can establish that a defendant has the right and ability to supervise infringing conduct if they show that the defendant had the technical ability to identify and remove infringements or prevent access to infringements.

If you find that the plaintiffs have proved each of these elements, your verdict should be for the plaintiffs if you also find that YouTube uploaders infringed the plaintiffs' copyrights. If, on the other hand, the plaintiffs have failed to prove any of these elements, your verdict should be for the defendants.

*Authority*:

3:20-cv-04423-JD

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.20 (2017);

- *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1023 (9th Cir. 2001) ("To escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent.");

- *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) ("the technical ability to screen out or identify infringing … photos");

- *Id*. ("the vicarious liability standard applied in Napster can be met by merely having the general ability to locate infringing material and terminate users' access.").

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Disputed Instruction No 43 Re: Vicarious Infringement—Elements and Burden of Proof; Offered by Defendants**

The plaintiffs also assert that defendants are liable for indirect copyright infringement. There are two types of indirect copyright infringement. The first is vicarious copyright infringement. The plaintiffs assert a vicarious liability claim for all of the copyrights at issue in this case.

The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    the YouTube user who uploaded the allegedly infringing video infringed the plaintiff's copyright;

2.    the defendants directly benefited financially from the infringing activity of the YouTube user;

3.    the defendants had the legal right and practical ability to supervise or control the infringing activity of the YouTube user; and

4.    the defendant failed to exercise that right and ability.

For the first element, you must assess each of the elements in Instruction 41 to determine whether the YouTube user directly infringed the plaintiff's copyright.

For the second element, the plaintiff must prove that there is a causal relationship between the infringing activity and the financial benefit.

For the third element, a defendant's failure to change its operations to avoid assisting users in distributing infringing content is not the same as declining to exercise a right and ability to make users stop their direct infringement.

You must assess these questions for each work that the plaintiffs allege was vicariously infringed. With respect to each work, if you find that the plaintiff has proved each of these elements, you should find vicarious liability as to that work. If, on the other hand, the plaintiff has failed to prove any of these elements, you should find for the defendant as to the vicarious infringement claim for that work.

Authority:  This is adapted from the Ninth Circuit Model Instruction 17.20 and informed by the following cases cited in the Comment to that instruction: *Erickson Prods., Inc. v. Kast*, 921 F.3d

822, 829-30 (9th Cir. 2019) ("A financial benefit is not 'direct' unless there is a causal relationship between the infringing activity and [the] financial benefit.'" (quoting *Ellison*, *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (element regarding supervision and control "requires 'both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'") (quoting *Amazon*, 508 F.3d at 1173); *id.* (noting defendant's "failure to change its operations to avoid assisting [users] to distribute . . . infringing content . . . is not the same as declining to exercise a right and ability to make [third parties] stop their direct infringement.") (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007))).

**Plaintiffs' Argument re: Disputed Instruction No. 43: Secondary Liability—Vicarious Infringement—Elements and Burden of Proof**

Plaintiffs follow the model instruction, identifying "uploaders of videos to YouTube" as the direct infringers and defendants as the alleged vicarious infringers. Plaintiffs have added the phrase "block, or police" to subpart (2) to account for Defendants' use of Content Age and Copyright Match for video-to-video matching and the knowledge of infringement generated by that technology. *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("To escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent.")

Defendants' supplemental language should be rejected. Defendants' subpart (1) is already contained in the final paragraph of the model and there is no justification for inflating its importance by moving the language. Subpart (2) needlessly identifies the "YouTube user" and pointedly uses a broader term, more likely to encompass members of the jury, than the word "uploader." Defendants have added the words "legal" and "practical" to subpart (3), neither of which are appropriate under the case law.

There is no justification to depart from the model instruction by needlessly directing the jury to "assess each of the elements" in a separate instruction. Nor is there any authority for Defendants' claim that "plaintiff must prove that the infringing activity caused the financial benefit." As explained in the pending *Daubert* motions, regardless of whether Defendants could have run advertising against other, non-infringing videos, they chose to run ads against infringing videos. The proffered language will confuse the jury and should be rejected.

Defendants' proffered language that "a defendant's decision not to change its operations to avoid assisting users to distribute infringing content is not the same as declining to exercise a right and ability to make users stop their direct infringement" is unsupported by the case law.

### DISPUTED INSTRUCTION NO. 43—DEFENDANTS' POSITION

Defendants' instruction tracks Ninth Circuit Model Instruction 17.20, incorporates relevant holdings from case law identified in the comments to the Ninth Circuit Model Instruction No. 17.20, and accounts for the logical structure of a claim for indirect infringement.

*First*, Defendants' proposed instruction closely tracks the Ninth Circuit's requirement that a plaintiff show both the legal right and practical ability to stop directly infringing conduct.  *See VHT, Inc. v. Zillow Grp., Inc*., 918 F.3d 723, 746 (9th Cir. 2019) (element regarding supervision and control "requires 'both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'")

*Second*, Defendants' proposed instruction includes the Ninth Circuit's recent holdings that the "[defendant's] failure to change its operations to avoid assisting [users] to distribute . . . infringing content . . . is not the same as declining to exercise a right and ability to make [third parties] stop their direct infringement," *VHT, Inc*., 918 F.3d at 746, and that "a financial benefit is not 'direct' unless there is a 'causal relationship between the infringing activity and [the] financial benefit,'" *Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829-30 (9th Cir. 2019). This Court has already endorsed this standard in granting in part YouTube's motion for summary judgment against Ms. Schneider. *See* Dkt.  222 at 3-4 ("A failure to change operations to avoid distribution of infringing content 'is not the same as declining to exercise a right and ability' to stop direct infringement by others." (citation omitted)).

*Finally*, Defendants' instruction makes clear that vicarious infringement first requires Plaintiffs prove that a YouTube user is directly liable for infringement.  For many of the Works-in-Suit, Plaintiffs only allege that Defendants indirectly infringed on the copyrights.  Unlike in the typical copyright case, Plaintiffs did not sue any of the people who actually uploaded the videos at issue.  Nevertheless, the law still requires Plaintiffs to prove that the absent third party directly infringe.  E.g., *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1173 (9th Cir. 2007) (there must be a direct infringer as a predicate for indirect liability).  Consequently, to avoid jury confusion, the jury instructions should explain that each of Plaintiffs' indirect claims can succeed only if Plaintiffs also establish for each claim that a third-party directly infringed a Work-in-Suit.

In contrast, Plaintiffs' proposed instruction edits the Model Instruction's language by including the phrases "block" and "police," apparently to buttress Plaintiffs' theory that Defendants are somehow liable for failing to grant Plaintiffs access to Defendants' Content ID technology. This is confusing and unfair. In support of their adaptation of the Model Instruction, Plaintiffs cite *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001). The *Napster* court used the word "block" in discussing the Napster's technical ability to block or prevent *users* from accessing Napster's service. *Id.* at 1023. In contrast, in this case "block[ing]" is a technical feature of the Content ID technology that prevents users from viewing an individual video. *See, e.g.*, Dkt. 99 ¶ 8 (Content ID provides the option to "block the whole infringing video"). The model jury instruction should not be manipulated to include specific language regarding a feature of Defendants' tool in the requisite claim elements, particularly given the absence of supporting authority (only a case using the same word in a *different* context not applicable here).

**Disputed Instruction No. 44: Secondary Liability—Contributory Infringement—Elements and Burden of Proof: Offered by Plaintiffs**

The second type of secondary copyright liability is contributory copyright infringement. The plaintiffs assert a contributory liability claim for all of the copyrights at issue in this case.

A defendant may be liable for copyright infringement engaged in by another if it knew or had reason to know of, or was willfully blind to, the infringing activity and intentionally induced or materially contributed to that infringing activity.

If you find that uploaders to YouTube infringed the plaintiffs' copyrights in their works, you must determine whether the defendants contributorily infringed that copyright. The plaintiffs have the burden of proving both of the following elements by a preponderance of the evidence:

1. the defendants knew or had reason to know of, or were willfully blind to, the infringing activity of uploaders to YouTube; and

2. the defendants intentionally induced or materially contributed to the infringing activity of uploaders to YouTube.

YouTube or Google's intent to induce or materially contribute to the infringing activity must be shown by clear expression of that intent or by active steps taken by the defendant to encourage the direct infringement.

In the online context, a computer system operator is liable for material contribution if the operator has actual knowledge of specific infringement, can take simple measures to prevent further infringement, and yet fails to do so.

If you find that uploaders to YouTube infringed the plaintiffs' copyrights and you also find that the plaintiffs have proved both of the above elements, your verdict should be for the plaintiffs. If, on the other hand, the plaintiffs have failed to prove either or both of these elements, your verdict should be for the defendants.

3:20-cv-04423-JD

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.21 (2017);
- *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir. 2017) ("In the online context, we have held that a 'computer system operator' is liable under a material contribution theory of infringement 'if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works'") (cleaned up);
- *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir. 2019) (stating that website did not have "information necessary to take 'simple measures' to remedy the violation" because website had no means to identify allegedly infringing images uploaded by users).

**Disputed Instruction No. 44 Re: Contributory Infringement—Elements and Burden of Proof; Offered by Defendants**

The second type of indirect copyright liability is contributory copyright infringement. The plaintiffs assert a contributory liability claim for all of the copyrights at issue in this case.

A defendant may be liable for contributory copyright infringement engaged in by another if it knew or had reason to know of the infringing activity and intentionally induced or materially contributed to that infringing activity.

The plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

1.    the YouTube user who uploaded the allegedly infringing video infringed the plaintiff's copyright

2.    the defendant had actual knowledge of the specific infringing activity of the YouTube user who uploaded the video; and

3.    the defendant intentionally induced or materially contributed to the YouTube user's infringing activity.

For the first element, you must assess each of the elements in Instruction 17.5 to determine whether the YouTube user directly infringed the plaintiff's copyright.

For the third element, the defendant's intent to induce or materially contribute to the infringing activity must be shown by clear expression of that intent or other affirmative steps taken by the defendant to encourage the direct infringement.

You must assess these questions for each work that the plaintiffs allege was contributorily infringed.  With respect to each work, if you find that the plaintiff has proved each of these elements, you should find contributory infringement as to that work.  If, on the other hand, you find that the plaintiff has failed to prove any or all of these elements, your verdict should be for the defendant as to the contributory infringement claim for that work.

Authority: This is adaptation of the model Ninth Circuit Model Instruction 17.21.  *See also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (requiring actual knowledge of specific infringing material).

**Plaintiffs' Argument re: Disputed Instruction No. 44: Secondary Liability—Contributory Infringement—Elements and Burden of Proof**

Plaintiffs follow and supplement the model instruction by identifying "uploaders to YouTube" as direct infringers and Defendants as alleged contributory infringers.  The first paragraph is stipulated other than Plaintiffs' use of "secondary" in accordance with the model and Defendants' use of "indirect," which, as previously stated, is less clear than the term "primary" which is the corollary of "secondary".  In the second paragraph, Plaintiffs add the phrase "or was willfully blind to" based on caselaw establishing that a refusal to act upon known infringements gives rise to liability.  *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) ("Willful blindness of specific facts would establish knowledge for contributory liability.")

Plaintiffs' supplemental paragraph beginning, "In the online context" is taken directly from the Comment to the model instruction, which reads, with supporting authority, "In the online context, a computer system operator may be liable under a material contribution theory if the operator has actual knowledge of specific infringement, can take simple measures to prevent further infringement, and yet fails to do so." *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir. 2017); *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir. 2019) (stating that website did not have "information necessary to take 'simple measures' to remedy the violation" because website had no means to identify allegedly infringing images uploaded by users)."

Defendants' supplemental language should be rejected.  Defendants' subpart (1) is already contained in the final paragraph of the model and there is no justification for inflating its importance by moving the language.  Subparts (2) and (3) needlessly identify the "YouTube user" and pointedly uses a broader term, more likely to encompass members of the jury, than the word "uploader."  Subpart (2) inappropriately imposes a requirement of "actual" knowledge when the statute, case law, and model all support use of "knew or had reason to know."  "Contributory liability requires that the secondary infringer 'know or have reason to know' of direct

3:20-cv-04423-JD

infringement." *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019-20 (9th Cir. 2001). And once again, there is no basis to instruct the jury to assess these questions for each work. That is done in the context of the jury verdict form.

## DISPUTED INSTRUCTION NO. 44—DEFENDANTS' POSITION

Defendants' instruction tracks Ninth Circuit Model Instruction 17.21 and incorporates Ninth Circuit law applying useful context concerning Plaintiffs' allegations of online infringement, which is a necessary and appropriate adaptation of the model instruction to the circumstances of this case.

*First*, Defendants' instruction incorporates the scienter requirement for contributory infringement in the online context.  To be liable for contributory copyright infringement in the online context, the Ninth Circuit has emphasized that "*'actual* knowledge of *specific* acts of infringement' is required for contributory infringement liability."  *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added) (quoting *Napster*, 239 F.3d at 1021); *see also id.* ("the first prong requires more than a generalized knowledge . . .  of the possibility of infringement"); Comment, Ninth Circuit Model Instruction No. 17.21 ("[i]n the online context, a computer system operator may be liable under a material contribution theory if the operator has actual knowledge of specific infringement, can take simple measures to prevent further infringement, and yet fails to do so." (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 671 (9th Cir. 2017); *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir. 2019)).  The knowledge required is "more than a generalized knowledge . . . of the possibility of infringement" because "contributory liability [does] not automatically follow where the [computer] 'system allows for the exchange of copyrighted material.'"  *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001)). This Court has endorsed the application of these authorities and the applicable standard in granting in part YouTube's motion for summary judgment against Ms. Schneider. *See* Dkt. 222 at 3.

In contrast, Plaintiffs' discussion of the scienter requirement is legally incorrect and internally inconsistent.  Plaintiffs confusingly acknowledge the standard of "actual knowledge of specific infringement" while simultaneously modifying the scienter element found in the Model Instruction to allow liability if Defendants were "willfully blind."  That is internally inconsistent and contrary to the law of this Circuit.  Tellingly, even the authorities relied upon by Plaintiffs to

support their adaptation, *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017); *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723 (9th Cir. 2019), do not include the phrase "willful blindness" in their discussions of contributory infringement liability.

***Second***, as with Defendants' Instruction 17.20, Defendants' instruction makes clear that an act of contributory infringement can be established only if Plaintiffs prove that a YouTube user is directly liable for that same act of infringement.  In this case, Plaintiffs Uniglobe and AST allege only indirect infringement for most if not all of their works.  To avoid jury confusion, the jury instructions should explain that Plaintiffs' indirect claims can succeed only if the plaintiffs first establish that a third-party directly infringed their works.

**Disputed Instruction No. 45: Copyright—Affirmative Defense—Fair Use**

Plaintiffs object to this Instruction in its entirety.

**Disputed Instruction No. 45 Re: Copyright—Affirmative Defense—Fair Use
(17 U.S.C. § 107); Offered by Defendants**

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Defendant contend that, as to some of plaintiffs' claims, the YouTube user who uploaded the video made fair use of the copyrighted work for purposes such as but not limited to criticism, comment, news reporting, teaching, scholarship, or research. The defendant has the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors:

1.    the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

2.    the nature of the copyrighted work;

3.    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

4.    the effect of the use upon the potential market for or value of the copyrighted work.

You must consider all of these factors together, and no one factor is more important than the others.

You must assess these questions for each work that the plaintiffs allege was contributorily infringed. With respect to each work, if you find that the defendant has proved by a preponderance of the evidence that the defendant made a fair use of the plaintiff's work, you must note that finding on your verdict form for that work.

Authority: This is adapted from the model Ninth Circuit Model Instruction 17.22.

**Plaintiffs' Argument re: Disputed Instruction No. 45: Copyright—Affirmative Defense—Fair Use**

Plaintiffs object to this Instruction in its entirety.  Defendants have not identified a single video that they claim uses Plaintiffs' works for purposes of criticism, comment, news reporting, teaching, scholarship, or research—the entirety of the purposes expressed in the model instruction. The law is clear that use of Ms. Schneider's music in the background of a video does not constitute fair use, and the unauthorized public performance of Ms. Schneider's compositions is not fair use. *See Worldwide Church of God v. Philadelphia Church of God*, 227 F.3d 1110, 1118 (9th Cir. 2000) ("[C]opying an entire work militates against a finding of fair use.  Moreover, the fact that a substantial portion of the infringing work was copied verbatim is evidence of the qualitative value of the copied material, both to the originator and to the plagiarist who seeks to profit from marketing someone else's copyrighted expression.") (internal citations omitted).

Defendants' assertion that no fair use factor is more important than any other factor is also contrary to law.  "Although . . . transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works.  Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 579 (1994)

Should Defendants identify infringements that might amount to fair use, Plaintiffs submit the model instruction should be utilized without Defendants' repeated admonition that the determination must be made as to each work, which is amply covered by the structure of the verdict form.

3:20-cv-04423-JD

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**DISPUTED INSTRUCTION NO. 45—DEFENDANTS' POSITION**

Defendants' instruction closely tracks Ninth Circuit Model Jury Instruction 17.22. Plaintiffs object to including any fair use instruction without offering any legal or factual basis for that objection.

Defendants are entitled to an instruction on fair use, which is a relevant affirmative defense to many of the several of hundreds of third-party videos that Plaintiffs contend are infringing.  For example, the jury could find fair use for the user videos in which one of Ms. Schneider's copyrighted compositions plays only in the background.  *See Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 463 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021) (fair use where "the portion of the Song used by Defendants is neither quantitively nor qualitatively excessive").  Similarly, the jury could find fair use for user videos in which only an insignificant portion of Ms. Schneider's composition or Uniglobe's screenplay appear.  *See id.*  As another example, the jury could find fair use where the videos take on "new aesthetics" because the performer transforms one of Ms. Schneider's compositions into a new creative expression. *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006).  Finally, the jury may find fair use for user videos in which a school band plays the copyrighted composition, or in which school children read copyrighted audiobooks.  *See Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (use of copyrighted song in sheet music for competitive high school choir showpiece was fair use).  Plaintiffs have alleged infringement based on each of these types of works in this litigation; the jury should be instructed on fair use.

Defendants proposal makes minor modifications to the model instruction to avoid juror confusion since Defendants are not asserting this defense as to all alleged infringements, that the fair use defense applies to videos uploaded by users not Defendants, and to assist jurors in considering the alleged infringements on a work-by-work basis.

**Disputed Instruction No. 46: Copyright—Affirmative Defense—Express License: Offered by Plaintiffs**

The defendants contend that they are not liable for copyright infringement because one or more of the plaintiffs granted them an express license in their copyrighted work. The plaintiff cannot claim primary copyright infringement against a defendant who copies, distributes, or uses the plaintiff's copyrighted work if the plaintiff granted the defendant an express license to copy, distribute, or use the work.

In order to show the existence of an express license, the defendant has the burden of proving that the defendant received an express license to copy, distribute, or use the plaintiff's copyrighted work.

If the defendant proves this, the burden shifts to the plaintiff to show that the defendant's copying, distribution, or use of the plaintiff's copyrighted work exceeded the scope of the license.

If you find that the defendants have proved that the plaintiff granted them an express license to copy, distribute, or use the copyrighted work, your verdict should be for the defendants on that portion of the plaintiff's copyright infringement claim, unless the plaintiff proves the defendant's copying, distribution, or use of the plaintiff's copyrighted work exceeded the scope of the license. If the plaintiff proves this, your verdict must be for the plaintiff.

*Authority*:  Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.25A (2017).

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Disputed Instruction No. 46 Re: Copyright—Affirmative Defense—Express License; Offered by Defendants**

In this case, YouTube and Google assert that Ms. Schneider, Uniglobe, and AST Publishing licensed, whether directly or indirectly, their works to the defendants.

YouTube and Google assert that Ms. Schneider, Uniglobe, and AST Publishing licensed some or all of their works to the defendants under the YouTube Terms of Service.

YouTube and Google assert that Ms. Schneider licensed her works to the defendants via Artistshare Publishing and Modern Works Publishing. Ms. Schneider denies that the defendants possessed a valid license.

The defendants assert that Uniglobe licensed its works to defendants via Vision Films and ValleyArm Digital Limited. Uniglobe denies that the defendants possessed a valid license.

A plaintiff cannot claim copyright infringement against a defendant who copies, distributes, or uses the plaintiff's copyrighted work if the plaintiff or the plaintiff's assignee granted the defendant an express license to copy, distribute, or use the work.

In order to show the existence of an express license, the defendant has the burden of proving that the defendant received an express license to copy, distribute, or use the plaintiff's copyrighted work.

If the defendant proves this, the burden shifts to the plaintiff to show that the defendant's copying, distribution, or use of the plaintiff's copyrighted work exceeded the scope of the license.

If you find that the defendant has proved that the defendant was granted a license to copy, distribute, or use the copyrighted work, your verdict should be for the defendant on that portion of the plaintiff's copyright infringement claim.

Authority: This is adapted from the model Ninth Circuit Model Instruction 17.25A.

**Plaintiffs' Argument re: Disputed Instruction No. 46: Copyright—Affirmative Defense—Express License**

Plaintiffs have adopted the Ninth Circuit's Model Civil Jury Instruction as to Defendants' express license defense nearly verbatim, with one exception. Plaintiffs' proposed instruction makes clear that an express license would only release Defendants from liability as to Plaintiffs' *primary* copyright claims. An express license does not impact Plaintiffs' contributory or vicarious infringement claims, as the Court has already determined. [*See* ECF 222 at 15 (holding that "The TOS certainly does not allow YouTube to materially contribute to, induce, or supervise infringement by its users with impunity.")] This clarification ensures the jury does not mistakenly let license issues infect their analysis of claims where a license is not relevant.

Defendants' alterations to the Model Civil Jury Instructions should be rejected. First, Defendants' divergence from the model simply rehashes their theory of the case, which they are free to present in closing arguments, but does not present a unique legal issue warranting amendments to the default Ninth Circuit approach.

Second, Defendants' instruction that Plaintiffs' works were licensed "directly or indirectly" is confusing and prejudicial. It is for Defendants to show through the evidence adduced at trial, rather than in the jury instructions, how Plaintiffs' license with a third-party authorizes YouTube to copy, distribute or use Plaintiffs' copyrighted works. The unnecessary reference to "indirect[]" authorization muddles this issue.

Third, Defendants wrongly seek to hide from the jury the significance of the scope of any relevant license. The. model instructions rightly note that if the copying, distribution or use of Plaintiffs' copyrighted works exceed the scope of the license, then the verdict must be for the Plaintiff. There is no basis to obscure this point. And Defendants' instruction wrongly compounds the prejudice by failing to indicate that an express license would only affect Plaintiffs' *primary* copyright infringement claims.

**DISPUTED INSTRUCTION NO. 46—DEFENDANTS' POSITION**

Defendants' instruction is based on the Ninth Circuit Model Instruction No. 17.25A with modifications to tailor the instruction to the facts of this case and promote jury comprehension.

*First*, Defendants proposed instruction includes prefatory information designed to help the jury understand which express licenses Defendants are asserting against which Plaintiff.  To begin, Defendants contend that each Plaintiff has accepted YouTube's Terms of Service agreement.  Further, Defendants argue that Ms. Schneider licensed her works to YouTube via Artistshare Publishing and Modern Works Publishing.  And Defendants contend that Uniglobe licensed its works to YouTube via Vision Films and ValleyArm Digital Limited.  Defendants' proposed instruction identifies these licenses and entities to promote juror comprehension in this multiple-plaintiff case, with multiple licenses at issue and hundreds of alleged infringements.  *See* Standing Order For Civil Jury Trials Before Judge James Donato at 1 ("Counsel and their clients are invited to think creatively about ways to … enhance jury comprehension and deliberations[.]").

Plaintiffs' proposed instruction will have limited value to the jury because it fails to identify the licenses or licensing entities that Defendants allege establish Defendants' affirmative defense.

*Second*, Defendants make clear that an affirmative defense for express license may be established where YouTube received a license for the plaintiff's work from an intermediary to whom the plaintiff granted permission to sublicense the work (as Defendants argue occurred for some of the licenses granted to YouTube).

*Finally*, Defendants have faithfully retained the Model Instruction's description of the Plaintiffs' burden to show that the Defendants' display of Plaintiffs' work exceeded the scope of an established express license.  Defendants propose a minor modification to remove a portion of the Model Instruction that states that if Plaintiffs establish their burden of showing that Defendants exceeded the scope of an established express license, that "your verdict should be for the plaintiff."  This might be true in other cases, but here it would confuse the jury because Defendants advance several affirmative defenses and the failure of YouTube's express license

defense does not necessarily result in a verdict for the plaintiff.

Defendants' instruction tracks the model instruction with modifications necessary to aid in jury comprehension and thus should be adopted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 46.5: Instruction Regarding Interpretation of Contracts**

Plaintiffs object to this instruction in its entirety.

**Disputed Instruction No. 46.5 Re: Instruction Regarding Interpretation of Contracts;**
**Offered by Defendants**

It is the task of the judge, and not the jury, to interpret a contract and determines the rights and obligations of a party under a contract.  In this case, I have already made rulings about the meaning of certain contracts, and I instruct you to take the following ruling as true.

Section 7 of the Administration Agreement that Maria Schneider signed with Artistshare Publishing Inc. requires Artistshare to obtain Ms. Schneider's written approval for any license that it grants on Ms. Schneider's behalf.  But, if Artistshare grants a license on Ms. Schenider's behalf without her approval, her lack of approval does not invalidate the license that Artistshare grants. In other words, when Artistshare or its valid assignee enters a license on Ms. Schneider's behalf but without her approval, that license is valid under the Administration Agreement whether or not Ms. Schneider granted written approval. And, the rights of the licensee do not depend on whether Ms. Schneider approved the license. Under that circumstance, Ms. Schneider may have a right to sue Artistshare or its assignee for breach of the Administration Agreement, but she has no right to invalidate the license.

Authority:  This Court's Order Granting In Part and Denying In Part Summary Judgment (ECF No. 22).

**Plaintiffs' Argument re: Disputed Instruction No. 46.5: Interpretation of Contracts**

Plaintiffs object to this instruction as unnecessary and confusing to the jury.  On its face, it notes that interpretation of an unambiguous contract is a matter of law for "the judge, and not the jury" but then attempts to confuse the jury by seeking to leverage an issue of law decided by the Court in the January 5, 2023, Summary Judgment Order in an attempt improperly to influence the jury as to whether Ms. Schneider's works were or were not governed by a separate license agreement than the Administration Agreement referenced in the proposed instruction (i.e., the Publishing License Agreement (PLA).)  ECF 222 at 4-13.

As a question of law, the applicability of the Administration Agreement's language can and will be applied by the Court as necessary and that application should not be used to confuse the jury in the apparent hope that the Court's ruling on the Administration Agreement will hint to the jury that the Court has chosen sides on whether the separate agreement, the PLA, has or has not granted a license to Google for any of Ms. Schneider's compositions.  That question is already covered by other instructions and queried in the verdict form is whether Defendants' use of one or more of Ms. Schneider's compositions was licensed by her agent.  Defendants are free to argue that position (provided they present evidence suggesting such license) in closing and if the jury finds Defendants' use to be licensed, they will have established their affirmative defense.

In that event, the defense will prevent the infringement liability. There is no basis to suggest in an instruction that the existence of such licensing rights is based on a Court's interpretation of a separate agreement.  Nor is there a basis to suggest to the jury that Ms. Schneider has no right to invalidate a license that only is at issue if the jury would have already found it to apply.

3:20-cv-04423-JD

## DISPUTED INSTRUCTION 46.5—DEFENDANTS' POSITION

This Instruction would instruct the jury on a legal issue that the Court resolved on summary judgment.  It is necessary to avoid the jury intruding upon the Court's exclusive authority to determine purely legal issues.

This Court's summary judgment order (Dkt. 222, hereinafter "Order") definitively construed Section 7 of the Administrative Agreement ("AA") between Plaintiff Maria Schneider and Artistshare Music Publishing.  Section 7 provides that Artistshare Music Publishing is obligated to inform Ms. Schneider and "obtain [her] prior written approval for any license [it] grant[s] on [her] behalf."  Order at 8.  The parties disputed whether, under New York law, this provision is a covenant or a condition precedent.  The Court held that this was "a legal question for the Court to resolve before trial."  *Id.* at 7.  The Court construed Section 7 to be a covenant. *See id.* at 11. The Court also held that "[t]here is no room for massaging the plain text with extra-contractual evidence" and that "parol evidence" should not be used to construe the AA.  *Id.* at 13. The consequence of the Court's ruling is that Section 7 does not negate any downstream sub-license that originated in the AA, even if Artistshare Music Publishing failed to comply with Section 7's notice-and-approval requirement.  *See id.* at 8.

Where a court has determined that a contract is unambiguous, it is "necessary and appropriate to give the jury an instruction interpreting the various [contract] terms" at issue. *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH-PA, 2015 WL 5090791, at *3 (D. Nev. Aug. 26, 2015); *see also id.* (accepting argument that a jury instruction "is necessary to prevent juror confusion and to maintain the same legal interpretations of the [contracts] as found by the court during summary judgment thereby preventing defendants from seeking new interpretations of the [contracts] from the jury").

Defendants expect Ms. Schneider to argue to the jury that downstream licenses issued under the authority of the AA should be invalid because of Section 7's notice-and-approval provision.  The Court should instruct the jury on its summary judgment finding to prevent Ms. Schneider from making an end-run around the Court's authority and "seeking new interpretations" of the AA "from the jury." *Id.*

**Disputed Instruction No. 47: Copyright: Affirmative Defense: Implied License: Offered by Plaintiffs**

The defendants contend that they are not liable for primary copyright infringement because the plaintiff granted them an implied license in the plaintiff's copyrighted work. The plaintiff cannot claim copyright infringement against a defendant who copies, distributes, uses, modifies, or retains the plaintiff's copyrighted work if the plaintiff granted the defendant an implied license to copy, distribute, use, modify, or retain the work.

In order to show the existence of an implied license, the defendant has the burden of proving that:

1.     the defendant requested that the plaintiff create a work;

2.     the plaintiff made that particular work and delivered it to the defendant; and

3.     the plaintiff intended that the defendant copy, distribute, use, modify, or retain the plaintiff's work.

If you find that the defendant has proved by a preponderance of the evidence that the plaintiff granted them an implied license to copy, distribute, use, modify, or retain the copyrighted work, your verdict should be for the defendant.


*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.25 (2017).

one particular set of facts that has no application here.  There are no work-for-hire allegations that YouTube requested Ms. Schneider make a particular work and "deliver it" to YouTube.  Instead, Defendants argue that Ms. Schneider granted an implied license to YouTube because she knew of her works' existence on YouTube and accepted the benefits of the YouTube service, including royalty payments.

This case reflects different facts than the model instructions contemplate; Defendants' instruction is more appropriate.

**Disputed Instruction No.** 47 Re: Copyright—Affirmative Defense—Implied License; Offered by **Defendants**

The defendants contend that, even if YouTube did not receive an express license from Ms. Schneider, YouTube received an implied license from Ms. Schneider with respect to Ms. Schneider's works. An implied license is valid like an express license. A plaintiff cannot claim copyright infringement against a defendant who copies, distributes, uses, modifies, or retains the plaintiff's copyrighted work if the plaintiff granted the defendant an implied license to copy, distribute, use, modify, or retain the work.

In order to show the existence of an implied license between Ms. Schneider and YouTube, the defendants have the burden of proving that:

1.      Ms. Schneider knew or should have known that YouTube was displaying or distributing her works on her behalf; and

2.      Ms. Schneider received a benefit from the display or distribution of her works.

If you find that Ms. Schneider granted an implied license to YouTube, you find for YouTube and Google with respect to any work within the scope of the implied license.

Authority: *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 824 (9th Cir. 2001)

**Plaintiffs' Argument re: Disputed Instruction No. 47: Copyright: Affirmative Defense: Implied License**

Plaintiffs have adopted the Ninth Circuit's Model Civil Jury Instruction as to Defendants' implied license defense nearly verbatim, with one exception. Plaintiffs' proposed instruction makes clear that an implied license would only release Defendants from liability as to Plaintiff's' *primary* copyright claims. An implied license does not impact Plaintiffs' contributory or vicarious infringement claims. The Court made a similar finding when Defendants advanced an express license defense at summary judgment. [*See* ECF 222 at 15 (holding that "The TOS certainly does not allow YouTube to materially contribute to, induce, or supervise infringement by its users with impunity.")] This clarification ensures the jury does not mistakenly let license issues infect their analysis of claims where it is irrelevant.

The Court should reject Defendants' radical departure from the Ninth Circuit's model instructions for multiple reasons. First, Defendants wrongly cite *Asset Marketing Systems. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008), as the source for their proposed alteration to the Ninth Circuit's model. But this case expressly adopts the same standard for the grant of an implied license used in the model instruction: "Thus, we have held that an implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it,4 and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 754–55. Nothing in *Asset Marketing Systems* stands for the proposition that an implied license is granted if a copyright holder knew or should have known that their copyrighted work was being displayed and the copyright owner received a benefit from the display or distribution of that work.

Second, Defendants' instruction unnecessarily and prejudicially states that an "implied license is valid like an express license". Defendants must demonstrate proof of the validity of an

implied license in the case they present to the jury, without muddying the waters through reference to an express license in this instruction.

Third, Defendants' instruction fails to recognize that an implied license would only affect Defendants' liability as to Plaintiffs' *primary* infringement claims.  As discussed above, such an instruction is important to ensure the jury does not mistakenly let license issues infect their analysis of claims where license issues are not relevant.

Fourth, Defendants have no justification for hiding from the jury that they bear the burden of proof to establish that Plaintiffs granted them an implied license.  Ensuring the jury understands the burden of proof on an affirmative defense is fundamental.

3:20-cv-04423-JD

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

## DISPUTED INSTRUCTION NO. 47—DEFENDANTS' POSITION

Plaintiffs insist on an implied license instruction that has no relevance to this case. The Comment to Model Ninth Circuit Instruction 17.25 notes: "Although this model instruction accurately captures one recurring set of implied license facts, implied licenses arise in a wide variety of circumstances, including many . . . for which the elements of an implied license will be different." In the face of this clear guidance, Plaintiffs blindly adhere to the text of the model instruction itself, even though that proposal does not correspond to the facts of this case.

State law dictates whether an implied license exists. *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("[W]here the Copyright Act does not address an issue," federal courts "turn to state law to resolve the matter, so long as state law does not otherwise conflict with the Copyright Act"). "[I]mplied copyright licenses" are not treated "any differently." *Id.* "Thus, so long as it does not conflict with the Copyright Act, state law determines whether a copyright holder has granted such a license." *Id.* Under California law, "there is no difference between an express and implied contract." *Levy v. Only Cremations for Pets, Inc.*, 57 Cal. App. 5th 203, 211 (2020). Indeed, "an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998). The Ninth Circuit recognizes that a party can imply a copyright license by conduct. *Foad Consulting Grp.*, 270 F.3d at 825.

Defendants' instruction tracks the elements of a contract (express or implied) under California law and will aid the jury in evaluating the applicability of the defense to the specific facts of this case. *First*, Defendants' instruction requires a showing that Ms. Schneider "knew or should have known that YouTube was displaying or distributing works on her behalf," which reflects that there must be an "objective manifestation of the party's assent" to a contract. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001). *Second*, Defendants' instruction requires a showing that "Ms. Schneider received a benefit from the display or distribution of her works," which reflects that "a contract requires consideration." *San Luis Obispo Loc. Agency Formation Comm'n v. City of Pismo Beach*, 61 Cal. App. 5th 595, 600 (2021).

In contrast, Plaintiffs' proposal instruction refers to implied contract law based only on

one particular set of facts that has no application here.  There are no work-for-hire allegations that YouTube requested Ms. Schneider make a particular work and "deliver it" to YouTube.  Instead, Defendants argue that Ms. Schneider granted an implied license to YouTube because she knew of her works' existence on YouTube and accepted the benefits of the YouTube service, including royalty payments.

This case reflects different facts than the model instructions contemplate; Defendants' instruction is more appropriate.

1

**Disputed Instruction 47.5: Ratification**

2

Plaintiffs object to this instruction in its entirety.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 47.5 Re: Ratification; Offered by Defendants**

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

Authority:  This is the Ninth Circuit Model Instruction 4.7.

**Plaintiffs' Argument re: Disputed Instruction 47.5: Ratification**

Because Defendants have never alleged ratification and there is no evidence of ratification—either related to Defendants' counterclaim or Ms. Schneider's claims—any such instruction would be confusing and prejudicial.  Defendants' answer contains no allegation that Ms. Schneider ratified the actions of any purported agents.  *See generally* ECF No. 160.  There is also no record evidence that Ms. Schneider ratified the conduct of any purported agents. Accordingly, an instruction on this unalleged and unsupported theory would be improper.  *Parada v. Gonzales*, 204 Fed. Appx. 610, 611 (9th Cir. 2006) ("The district court correctly declined to instruct the jury on a substantial truth defense because there was no evidence in the record to support it."); *United States v. Falsia,* 724 F.2d 1339, 1342 (9th Cir.1983) ("A defendant is not entitled to a jury instruction where there is no evidence to support it....").

Defendants' Amended Counterclaims and its' Opposition to the Motion to Dismiss are likewise void of any reference to ratification. Defendants attempted to raise an unsupported "claim" of ratification for the first time in their Opposition to Plaintiffs' Motion for Summary Judgement, stating *only* that "[a]fter YouTube suspended IPLLC's and Pirate Monitor LLC's accounts in response to the fraudulent takedown notices, Csupo personally defended the notices and demanded reinstatement, complaining that the suspension prevented them from submitting further takedown requests." (Opp. at 15). But Defendants do not identify any evidence that Csupo had knowledge of all material facts concerning those takedown notices, as would be required to support an instruction on ratification.  *See Parada*, 204 Fed. Appx. at 611; *Falsia,* 724 F.2d at 1342.  As the Court in *Salaiz v. eHealth Servs., Inc.*, explained "[e]ven if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" WL 2622138, at *4 (N.D. Cal. Mar. 22, 2023) (quoting *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). There, the Court found that Plaintiffs failed to

---

allege knowledge of material facts sufficient to form the basis of the ratification claim. In the instance the Court were to find that Defendants properly raised a claim for ratification, Defendants' alleged ratification claim would fail for similar reasons.

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**DISPUTED INSTRUCTION NO. 47.5—DEFENDANTS' POSITION**

Defendants propose the inclusion of this standard Ninth Circuit instruction, without modification.  Model Instruction 4.7 is commonly included in cases involving the agency relationship.  Defendants contend that Plaintiff Schneider ratified certain acts of her agents.  Plaintiffs can offer no persuasive reason for omitting this instruction, when Plaintiffs have stipulated to including the Model Instruction 4.4 on the agent and principal relationship and first proposed the custom-drafted Instruction No. 67 on sub-agency.  The model instruction properly instructs the jury on a defense at issue in the case and should be included with the jury charge.

**Disputed Instruction No. 48: Copyright—Affirmative Defense—Limitation on Liability for Information Residing on Systems or Networks at the Direction of Users and Information Location Tools: Offered by Plaintiffs**

The defendants contend that they are not liable for copyright infringement because they are entitled to safe harbor protections afforded under certain circumstances pursuant to the DMCA. To benefit from such DMCA safe harbors, the defendants have the burden of proving each element of this defense by a preponderance of the evidence.

The defendants are only eligible to assert this defense if the defendants:

1.    adopted, reasonably implemented, and informed users of a policy to terminate users who are repeat copyright infringers; and

2.    accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works;

An internet service provider reasonably implements a repeat infringer policy:

a.    if it has a working system to allow copyright holders to provide DMCA-compliant notifications;

b.    if it has a procedure for dealing with DMCA-compliant notifications;

c.    if it does not actively prevent copyright owners from collecting information needed to issue such notifications;

d.    if, under appropriate circumstances, it terminates users who repeatedly or blatantly infringe copyright; and

e.    a substantial number of repeat infringers do not remain on the platform.

The term "standard technical measure" means technical measures that are used by copyright owners to identify or protect copyrighted works and (a) have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process; (b) are available to any person on reasonable

3:20-cv-04423-JD

and nondiscriminatory terms; and (c) do not impose substantial costs on service providers or substantial burdens on their systems or networks.

If you determine that the defendants are eligible to assert the DMCA safe harbor defenses, the defendants have the additional burden of proving each element of the specific safe harbor defense that as a service provider it is not liable for copyright infringement caused by information residing on YouTube's systems or networks at the direction of users or YouTube's information location tools. The defendants can establish these defenses only if they can establish that:

1. they lacked actual knowledge that the material or activity on the system or network was infringing;

2. they were either (a) not aware of facts or circumstances from which specific infringing activity was apparent, or (b) upon obtaining knowledge or awareness, acted expeditiously to remove or disable access to the material; and

3. while having the right and ability to control the infringing activity, they did not receive a financial benefit directly attributable to the infringing activity.

In determining whether the defendants were aware of facts or circumstances from which specific infringing activity was apparent, the defendants have the burden of proving by a preponderance of the evidence that the defendants were not aware of objective facts and circumstances that would have made a specific instance of copyright infringement obvious to a reasonable person. Evidence that the defendants actually knew about specific infringing activity could suffice to make that infringing activity apparent.

If you find the defendants have proved all of the above elements, your verdict should be for the defendants on the copyright infringement claims only. If, on the other hand, you find that the defendants have failed to prove any one of these elements, the defendants are not entitled to prevail on this affirmative defense.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.30 (2017);
- 17 U.S.C. § 512(i);
- 17 U.S.C. 512(c) and (d);
- *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) ("the service provider terminates users who repeatedly or blatantly infringe copyright");
- *Id.* at 1109 ("We hold that a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications.");
- *Ventura Content, Ltd. v. Motherless, Inc*., 885 F.3d 597, 617 (9th Cir. 2018) ("a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications.");
- *Mavrix Photographs, LLC v. Livejournal, Inc.,* 873 F.3d 1045, 1052 (9th Cir. 2017) ("Because the § 512(c) safe harbor is an affirmative defense, LiveJournal must establish 'beyond controversy every essential element,' and failure to do so will render LiveJournal ineligible for the § 512(c) safe harbor's protection.");
- *Id*. at 1057 ("Red flag knowledge arises when a service provider is 'aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person.");
- *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 6094 (9th Cir. 2018) ("Motherless would also lose its safe harbor if it was 'aware of facts or circumstances from which infringing activity is apparent' and did not 'act[ ] expeditiously to remove, or disable access to, the material.' This is different from actual knowledge because instead of looking at

3:20-cv-04423-JD

subjective thoughts, we look at objective facts and circumstances from which the specific infringement would be obvious to a reasonable person. The statutory term 'apparent' is often described, in the cases and secondary literature, as 'red flag' knowledge.");

- From the comment to the model instruction:   "However, evidence that the defendant actually knew about specific infringing activity could suffice to make that infringing activity apparent. *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1043-46 (9th Cir. 2013) (holding that evidence that defendant encouraged and assisted users who were infringing copyright in "current and well-known" works created "red flag" knowledge of infringement)."

3:20-cv-04423-JD

**Disputed Instruction No. 48 Re: Copyright—Affirmative Defense—Limitation on Liability for Information Residing on Systems of Networks at Direction of Users (17 U.S.C. § 512(c)); Offered by Defendants**

The defendant contends that the defendant is a service provider and therefore is not liable for copyright infringement because the infringement was caused by information residing on the defendant's systems or networks at the direction of users. The defendant has the burden of proving each element of this defense by a preponderance of the evidence.

The defendant is eligible to use this defense if the defendant:

1.    is a service provider of network communication services, online services or network access;

2.    adopted, reasonably implemented and informed users of a policy to terminate users who are repeat copyright infringers;

3.    accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works;

4.    designated an agent to receive notifications of claimed infringement, and made the agent's name, phone number and email address available on its website and to the Copyright Office; and

5.    is facing liability for copyright infringement based on information residing on the defendant's systems or networks at the direction of users.

This defense applies if the defendant:

1.    either (a) lacked actual knowledge that the material or activity on the system or network was infringing and was either not aware of facts or circumstances from which specific infringing activity was apparent, or (b) upon obtaining knowledge or awareness or upon receiving a valid notification of claimed infringement, acted expeditiously to remove or disable access to the material; and

2.    while having the right and ability to control the infringing activity, did not receive a financial benefit directly attributable to the infringing activity.

If you find the defendant has proved all of these elements, your verdict should be for the defendant. If, on the other hand, you find that the defendant has failed to prove any of these

elements, the defendant is not entitled to rely on this affirmative defense.

Authority:  This is the model Ninth Circuit Model Instruction 17.30, adapted per *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1020 n.11 (9th Cir. 2013) ("[T]he statute must be read to have an implicit "and" between § 512(c)(1)(A)(i) and (ii).").

**Plaintiffs' Argument re: Disputed Instruction No. 48: Copyright—Affirmative Defense—Limitation on Liability for Information Residing on Systems or Networks at the Direction of Users and Information Location Tools**

Plaintiffs' proposed instruction appropriately follows the Ninth Circuit Model Civil Jury Instruction 17.30 except for modifications that fit the facts of this case.

*First*, because Plaintiffs stipulate that Defendants qualify as service providers under 17 U.S.C. § 512(k)(1), Plaintiffs have removed that phrase and subparts (1), (4), and (5) from the model to streamline this instruction. *Second*, Plaintiffs' proposed instruction appropriately explains that to be eligible for any DMCA safe harbor, Defendants must first satisfy the two eligibility conditions of Section 512(i). Plaintiffs have included supplemental language regarding reasonable implementation of a repeat infringer policy and standard technical measures to ensure the jury understands the requirements for eligibility for the DMCA safe harbor defense—a core issue in this case. The language on repeat infringer policy is based on *Ventura Content, Ltd. v. Motherless, Inc*., 885 F.3d 597, 617 (9th Cir. 2018) ("a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications."), and *Perfect 10 v. CCBill*, 488 F.3d 1102, 1109 (9th Cir. 2007) ("We hold that a service provider 'implements' a policy if it has a working notification system, a procedure for dealing with DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications."); *see also id.* ("the service provider terminates users who repeatedly or blatantly infringe copyright"). The language on standard technical measures is taken verbatim from the statute, 17 U.S.C. § 512(i)(2).

*Third,* because the contested safe harbor conditions of Sections 512(c) and (d) are the same, Plaintiffs submit a single, instruction with tailored language that covers both subparts of the statute. Two instructions are not necessary to address the same conditions and would confuse the jury by causing them to think there was some difference between the two instructions.*Fourth,* Plaintiffs have removed the words "or upon receiving a valid notification of claimed infringement" from

---

subpart (2) of the model to avoid jury confusion and reflect that Defendants' knowledge of specific infringing activity is not limited to takedown notices of claimed infringement.  This issue is relevant in light of Defendants' matching systems, Content Age and Copyright Match, which provide Defendants with knowledge of specific infringement because they match every newly uploaded video against the entire corpus of videos previously uploaded, including videos identified as infringing in a takedown notice.  *Mavrix Photographs v. Livejournal*, 873 F.3d 1045, 1057 (9th Cir. 2017) ("Red flag knowledge arises when a service provider is aware of facts that would have made the specific infringement objectively obvious to a reasonable person"  (cleaned up).); *UMG Recordings v. Shelter Cap. Partners*, 718 F.3d 1006, 1023 (9th Cir. 2013) ("a service provider cannot willfully bury its head  in the sand to avoid obtaining such specific knowledge").

*Fifth*, Plaintiffs have included supplemental language to establish that, consistent with the case law, Defendants bear the burden of proving lack of knowledge for the DMCA affirmative defense.  *Mavrix,* 873 F.3d at 1052 ("Because the § 512(c) safe harbor is an affirmative defense, LiveJournal must establish 'beyond controversy every essential element,' and failure to do so will render LiveJournal ineligible for the § 512(c) safe harbor's protection.").  *Sixth*, Plaintiffs have added language to more clearly explain the concept of red flag knowledge to the jury given the importance of this issue to the facts of this case.  The supplemental language is taken from *Mavrix*, 873 F.3d at 1057 ("Red flag knowledge arises when a service provider is 'aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person."); *Motherless*, 885 F.3d at 604 (Red flag knowledge "is different from actual knowledge because instead of looking at subjective thoughts, we look at objective facts and circumstances from which the specific infringement would be obvious to a reasonable person."); and the comment to the model instruction, which reads: "evidence that the defendant actually knew about specific infringing activity could suffice to make that infringing activity apparent.  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1043-46 (9th Cir. 2013) (holding that evidence that defendant encouraged and assisted users who were infringing copyright in 'current and well-known' works created 'red flag' knowledge of infringement).

**DISPUTED INSTRUCTION NO. 48—DEFENDANTS' POSITION**

Defendants propose using Ninth Circuit Model Instructions 17.30 and 17.31 with only one modification based on the Ninth Circuit's clarification of the law in *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1020 n.11 (9th Cir. 2013) ("[T]he statute must be read to have an implicit 'and' between § 512(c)(1)(A)(i) and (ii)."). By contrast, Plaintiffs improperly seek to combine these two separate affirmative defenses into one instruction, which will only serve to confuse and mislead the jury, and further compound the problem through adding elements absent from the model instructions that are unfounded.

Subsections (c) and (b) of Section 512 address the requirements to qualify for an affirmative defense under the safe harbor of the DMCA. The Ninth Circuit has clarified that "to qualify for the safe harbor, a service provider must either (1) have no actual knowledge *and* no 'aware[ness] of facts or circumstances from which infringing activity is apparent' or (2) expeditiously remove or disable access to infringing material of which it knows or is aware." *Id.* The Ninth Circuit explained that in order to "be coherent," "the statute must be read to have an implicit 'and' between § 512(c)(1)(A)(i) and (ii)" in order to "be coherent." *Id.* The same language clarified that the Ninth Circuit clarified for subsection (c) in *UMG Recordings* appears in subsection (d) of Section 512. Defendants' sole modification to the model instructions is to incorporate that guidance from the Ninth Circuit to ensure the instructions are "coherent."

By contrast, Plaintiffs' instruction conflates two separate defenses and adds elements that are unnecessary and unfounded. To begin, combining two model instructions into one instruction will confuse and mislead the jury into believing that they are the same defense when the jury instead should evaluate each affirmative defense separately. Further, Plaintiffs add *five* custom-written sub-elements to the Model Instruction's "repeat infringer" element that place undue emphasis on that element and add vague language that is likely to confuse the jurors. Plaintiffs then add additional custom language for a definition of a "standard technical measure" as well as language detailing additional requirements on the requisite level of awareness—both of which place undue emphasis on those elements and could mislead the jury into thinking Defendants' burden is higher than it is.

The Court should adopt Defendants' instruction that closely tracks the Ninth Circuit Model instructions and only clarifies a point based on guidance from the Ninth Circuit.

1

**Disputed Instruction No. 49: Copyright—Affirmative Defense—Limitation on Liability for**

2

**Information Location Tools**

3

Plaintiffs object to this Instruction in its entirety.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Disputed Instruction No. 49 Re: Copyright—Affirmative Defense—Limitation on Liability for Information Location Tools (17 U.S.C. § 512(d)); Offered by Defendants**

The defendant contends that the defendant is a service provider and therefore not liable for copyright infringement because the infringement occurred in the context of the defendant's provision of information location tools to refer or link users to infringing material or activity. The defendant has the burden of proving this defense by a preponderance of the evidence.

Although some elements of this defense are the same as the defense described in Instruction 48, this is an independent defense. The defendant can assert multiple defenses to any infringement allegation.

The defendant is eligible to use this defense if the defendant:

1.  is a service provider of network communication services, online services or network access;

2.  adopted, reasonably implemented and informed users of a policy to terminate users who are repeat copyright infringers;

3.  accommodated and did not interfere with standard technical measures used to identify or protect copyrighted works;

4.  designated an agent to receive notifications of claimed infringement, and made the agent's name, phone number and email address available on its website and to the Copyright Office; and

5.  is facing liability for copyright infringement for providing information location tools or services.

The defense applies if the defendant:

1.  either (a) lacked actual knowledge that the material or activity was infringing and was not aware of facts or circumstances from which specific infringing activity was apparent, or (b) upon obtaining knowledge or awareness or upon receiving a valid notification of claimed infringement, acted expeditiously to remove or disable access to the material; and

2.  while having the right and ability to control the infringing activity, did not receive a financial benefit directly attributable to the infringing activity.

1        If you find that the defendant has satisfied these requirements, your verdict should be for

2   the defendant. If, on the other hand, you find that the defendant has failed to prove any of these

3   elements, the defendant is not entitled to rely on this affirmative defense.

Authority:  This is the Ninth Circuit Model Instruction 17.31, adapted per *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1020 n.11 (9th Cir. 2013) ("[T]he statute must be read to have an implicit "and" between § 512(c)(1)(A)(i) and (ii).").

**Plaintiffs' Argument re: Disputed Instruction No. 49: Copyright—Affirmative Defense—Limitation on Liability for Information Location Tools**

Plaintiffs object to this instruction in its entirety because the DMCA safe harbor for infringement based on information location tools, 17 U.S.C. § 512(d), is inapplicable to Defendants' conduct in this case.

Section 512(d) protects a service provider against claims for infringement "by reason of the provider referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link." The statute is intended to protect against service providers of "information location tools" like "search engines" that refer users to infringing content hosted on *other* websites. *See Perfect 10, Inc. v. Yandex N.V.*, 2013 WL 1899851, at *3 (N.D. Cal. May 7, 2013); *Capitol Recs., Inc. v. MP3tunes, LLC*, 821 F. Supp. 2d 627, 639 (S.D.N.Y. 2011) ("Subsection 512(d) governs information location tools, e.g., search engines.").

Courts have declined to apply this safe harbor when the service provider's *own* website hosted the infringing content. *Perfect 10, Inc. v. GUBA, LLC*, 2002 WL 34940074, at *1 (N.D. Cal. Dec. 30, 2002) (defendant not entitled to summary judgment on § 512(d) where infringement was "by reason of [defendant's] own copying of the 322 infringing images from other sites and then posting those images on its website, not by reason of [defendant] referring or linking its users to other sites" (cleaned up)); *Incredible Features, Inc. v. Backchina, LLC*, 2021 WL 6337194, at *5 (C.D. Cal. Dec. 16, 2021) (declining to apply § 512(d) where "Defendant did not merely direct users to a third-party site that contained the Subject Images, it caused the Images to display on its own site."); *Collins v. Easynews, Inc.*, 2008 WL 11404949, at *12 (W.D. Tex. Feb. 20, 2008) (declining to apply § 512(d) where defendants' "Website is not merely an index to information available on the internet or Usenet. Rather, as the evidence clearly shows, the Website consists of indexes and links to information which is stored on and then provided from servers owned by Defendants"); *contrast Perfect 10, Inc. v. Google, Inc.*, 2010 WL 9479059, at *6 (C.D. Cal. July

26, 2010) ("To the extent that Google's Blogger service and web search caching feature function as information location tools by linking users to content *hosted on third-party websites, rather than any content hosted by Google*, [§ 512(d)] will apply to those tools" (emphasis added)); *Totally Her Media, LLC v. BWP Media USA, Inc.*, 2015 WL 12659912, at *10 (C.D. Cal. Mar. 24, 2015) (granting defendant summary judgment on § 512(d) because "the evidence is undisputed that none of the images at issue in this litigation were stored on [defendant's] servers, and were only displayed on [defendant's] website by hypertext links to third-party websites").

Here, all infringing content at issue was hosted on YouTube's own website.  Plaintiffs' claims do not involve YouTube linking or referring its users to infringing content on a third-party website.  As such, YouTube's alleged infringement was not "by reason of" its use of information location tools, and YouTube does not qualify for the protection of § 512(d) as a matter of law.

**DISPUTED INSTRUCTION NO. 49—DEFENDANTS' POSITION**

Defendants propose using Ninth Circuit Model Instructions 17.31 with only one modification based on the Ninth Circuit's clarification of the law in *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1020 n.11 (9th Cir. 2013) ("[T]he statute must be read to have an implicit 'and' between § 512(c)(1)(A)(i) and (ii)."). By contrast, and as articulated above, Plaintiffs improperly seek to combine two separate affirmative defenses into one instruction, which will only serve to confuse and mislead the jury, and further compound the problem through adding vague and confusing elements absent from the model instructions. Plaintiffs have not articulated why the conflation of two separate affirmative defenses is necessary, let alone required under the law.

The Court should adopt Defendants' instruction that closely tracks the Ninth Circuit Model instructions and only clarifies a point based on guidance from the Ninth Circuit.

**Disputed Instruction No. 50: Statute of Limitations: Offered by Plaintiffs**

The defendants contend that some of the plaintiffs' copyright claims are barred by a three-year statute of limitations, which is a time limit for bringing a claim. Each act of infringement is a separate harm that creates an independent claim for relief and restarts the statute of limitations.

To invoke the three-year statute of limitations as a bar to a claim, the defendants must establish by a preponderance of the evidence that the plaintiff knew, or in the exercise of reasonable diligence should have known, of the specific act of infringement more than three years prior to the filing of the lawsuit.

This lawsuit was filed on July 2, 2020.


*Authority*: This is a special instruction. Plaintiffs Uniglobe and AST should be deemed to have filed their lawsuit on July 2, 2020, when this class action was commenced. *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1101 (N.D. Cal. 2007) ("The class tolling doctrine holds that the commencement of a class action stops the running of statutes of limitations as to all claims that might be asserted by all members of the class.") (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

**Disputed Instruction No. 50 Re: Statute of Limitations; Offered by Defendants**

Defendants claim that some of plaintiffs' copyright claims are barred by the statute of limitations, which is a time limit for bringing a claim.

To establish that the statute of limitations bars the plaintiff's copyright claim, the defendants must prove by a preponderance of the evidence that the plaintiff failed to file her or its lawsuit within three years after she or it knew, or, in the exercise of reasonable diligence, should have known about the infringement.

Each act of infringement is a separate harm that creates an independent claim for relief. The statute of limitations only prevents the plaintiff from recovering remedies for infringing acts that occurred more than three years before the plaintiff filed the lawsuit.

Ms. Schneider filed her lawsuit on July 2, 2020.

AST filed its lawsuit on November 17, 2021.

Uniglobe filed its lawsuit on November 17, 2021.

Authority: There is no model Ninth Circuit instruction.  This is adapted from the model Eleventh Circuit instruction (9.29).

**Plaintiffs' Argument re: Disputed Instruction No. 50: Statute of Limitations: Offered by Plaintiffs**

This is a special instruction that has no corresponding Ninth Circuit model instruction. Although the parties' instructions are largely similar, Plaintiffs' version adheres more closely to Ninth Circuit law.

*First*, Plaintiffs' instruction properly notes that "[e]ach act of infringement is a separate harm that . . . restarts the statute of limitations"; this language makes clear that even if the three-year statute of limitations has run on certain claims, separate claims that accrued during the limitations period are unaffected. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue."); *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023 (9th Cir. 2019) ("when a defendant commits successive violations [of the Copyright Act], the statute of limitations runs separately from each violation"); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) ("In a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit.").

*Second*, Plaintiffs' proposed instruction more clearly explains that the statute of limitations begins running only from the time that a plaintiff knew or reasonably should have known of the specific act of infringement. *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022) ("the three-year limitations period runs from the date the claim accrued, *i.e.*, from the date when the copyright holder knew or should have known of the infringement"); *Media Rts. Techs.*, 922 F.3d at 1022 ("a copyright infringement claim accrues . . . when a party discovers, or reasonably should have discovered, the alleged infringement"); *Roley*, 19 F.3d at 481 ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.").

*Third*, Defendants' proposed instruction wrongly asserts that Plaintiffs AST and Uniglobe commenced their lawsuits on the date they joined this action, November 17, 2021, and that the limitations period should be counted from that date. "The class tolling doctrine holds that the

commencement of a class action stops the running of statutes of limitations as to all claims that might be asserted by all members of the class." *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1101 (N.D. Cal. 2007) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Tolling is appropriate when the previously commenced class action "involved exactly the same cause of action subsequently asserted." *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975). Uniglobe and AST bring "exactly the same cause[s] of action" as those brought by Ms. Schneider in the initial July 2, 2020, class action complaint— direct, contributory, and vicarious infringement—and they are members of the putative infringement classes. Accordingly, Uniglobe and AST should be deemed to have commenced their actions on July 2, 2020, as stated in Plaintiffs' proposed instruction.

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

## DISPUTED INSTRUCTION NO. 50—DEFENDANTS' POSITION

The parties dispute whether the contractual limitations period governs all claims (Defendants' position) or whether the longer statute-of-limitations period governs some claims (Plaintiffs' position). Instruction 50 is only necessary if the Court accepts Plaintiffs' argument that not all claims are subject to the contractual limitations period.

There is no Ninth Circuit Model Jury Instruction for a statute of limitations affirmative defense. Defendants propose adopting the Eleventh Circuit Pattern Jury Instruction (Civil) No. 9.29, Copyright – Defenses – Affirmative Defense – Statute of Limitations. Defendants make no substantive modifications to the Eleventh Circuit's Instruction beyond adding the relevant dates that each Plaintiff filed suit.

Defendants' proposed instruction should be preferred over Plaintiffs' because, rather than adapting the Eleventh Circuit Pattern Jury Instruction No. 9.29, Plaintiffs have elected to draft a special instruction. "[T]he preferred practice is for district courts, where possible, to follow the model instructions and avoid unnecessary disputes like this one." *United States v. Peppers*, 697 F.3d 1217, 1221 (9th Cir. 2012); *see also* N.D. Cal., Standing Order for Civil Jury Trials Before Judge James Donato ¶ 7 ("The parties should use the Ninth Circuit Model Jury Instructions to the fullest extent possible. Modifications and 'custom' proposed instructions are discouraged.").

Plaintiffs' proposed instruction seeks to obtain for Plaintiffs AST and Uniglobe the benefit of *American Pipe* tolling. But Plaintiffs cite no authority for their claim that *American Pipe* tolling, which is "based in equity," applies to a *contractual* limitations period, to which the parties have consented. *Cf. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 510 (2017) (*American Pipe* tolling does not apply to statutes of repose because the purpose of "grant[ing] complete peace to defendants, supersedes the application of a tolling rule based in equity").

More fundamentally, *American Pipe* is inapposite in the scenario where class certification is denied. Plaintiffs' sole authority cited in their model instruction for this authority refused to apply *American Pipe* tolling. *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1103 (N.D. Cal. 2007) ("[T]he court declines to apply the class tolling

doctrine to plaintiffs' claims").  That decision made clear that *American Pipe* tolling has been recognized to apply where the plaintiff filed a subsequent lawsuit after class certification in a previous lawsuit was denied or the plaintiff opted out of the class action.  *See id.* at 1102.  But Plaintiffs have provided no authority that *American Pipe* tolling benefits a plaintiff who joins a putative class action a year and a half after it was filed, where class certification is later denied. . Defendants should be allowed to assert the defense that AST and Uniglobe have slept on their rights.

1

2

**Disputed Instruction No. 51: Contractual Limitations: Offered by Plaintiffs**

3

4     The defendants contend that some of the plaintiffs' copyright claims are barred by a one-

5 year contractual period of limitations, which is a time limit for bringing a claim. Each act of

6 infringement is a separate harm that creates an independent claim for relief and restarts the

contractual period of limitations.

7     To invoke the one-year contractual limitations period as a bar to a claim, the defendants

8 must establish by a preponderance of the evidence that: (1) the plaintiff entered into the contract

9 with the defendants with respect to the specific work that was infringed; and (2) the plaintiff

10 knew, or in the exercise of reasonable diligence should have known, of the specific act of

11 infringement of that work more than one year prior to the filing of the lawsuit.

12 This lawsuit was filed on July 2, 2020.

13

14

15 *Authority*: This is a special instruction. Plaintiffs Uniglobe and AST should be deemed to have

16 filed their lawsuit on July 2, 2020, when this class action was commenced. *In re Dynamic*

17 *Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1101 (N.D. Cal. 2007)

18 ("The class tolling doctrine holds that the commencement of a class action stops the running of

19 statutes of limitations as to all claims that might be asserted by all members of the class.") (citing

20 *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

21 .

22

23

24

25

26

27

28

3:20-cv-04423-JD

**Disputed Instruction No. 51 Re: Contractual Limitations; Offered by Defendants**

Defendants assert as a defense that a contractual limitations period prohibits some of plaintiff's claims. This defense only applies if you find that plaintiffs and defendants agreed to a limitations period in a contract. In this case, YouTube asserts that the contractual limitations period is contained in the YouTube Terms of Service.

If you find that a plaintiff agreed to YouTube's Terms of Services, then I instruct you that the limitations period for any claim between that plaintiff and YouTube is one year.

To establish that the contractual limitations period prohibits plaintiffs' copyright infringement claims and Ms. Schneider's content management information claims, YouTube must prove by a preponderance of the evidence for each plaintiff that:

1.  the plaintiff accepted YouTube's Terms of Services agreement; and

2.  the plaintiff failed to file the plaintiff's lawsuit within one year after the plaintiff knew or, in the exercise of reasonable diligence, should have known about the infringement or the content management information violation.

Ms. Schneider filed her lawsuit on July 2, 2020.

AST and Uniglobe filed their lawsuit on November 17, 2021.

Each act of infringement is a separate harm that creates an independent claim for relief. The limitations period only prevents the plaintiff from recovering remedies for infringing acts that occurred more than one year before the plaintiff filed the lawsuit.

Authority:  There is no model Ninth Circuit instruction.  This is adapted from the Eleventh Circuit's statute of limitation model instruction for copyright cases (9.29).

**Plaintiffs' Argument re: Disputed Instruction No. 51: Contractual Limitations: Offered by Plaintiffs**

This is a special instruction that has no corresponding Ninth Circuit model instruction. Although the parties' instructions are largely similar, Plaintiffs' version adheres more closely to Ninth Circuit law.

*First*, Plaintiffs' instruction properly notes that "[e]ach act of infringement is a separate harm that . . . restarts contractual period of limitations"; this language makes clear that even if the one-year contractual limitations period has run on certain claims, separate claims that accrued during the limitations period are unaffected. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue."); *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023 (9th Cir. 2019) ("when a defendant commits successive violations [of the Copyright Act], the [limitations period] runs separately from each violation").

*Second*, Plaintiffs' proposed instruction more clearly emphasizes that the limitations period begins running only from the time that a plaintiff knew or reasonably should have known of the specific act of infringement. *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022) (copyright "limitations period runs from the date the claim accrued, *i.e.*, from the date when the copyright holder knew or should have known of the infringement"); *Media Rts. Techs.*, 922 F.3d at 1022 ("a copyright infringement claim accrues . . . when a party discovers, or reasonably should have discovered, the alleged infringement"); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.").

*Third*, Defendants' proposed instruction wrongly asserts that Plaintiffs AST and Uniglobe commenced their lawsuits on the date they joined this action, November 17, 2021, and that the limitations period should be counted from that date. "The class tolling doctrine holds that the

3:20-cv-04423-JD

commencement of a class action stops the running of statutes of limitations as to all claims that might be asserted by all members of the class." *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1101 (N.D. Cal. 2007) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).  Tolling is appropriate when the previously commenced class action "involved exactly the same cause of action subsequently asserted." *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975).  Uniglobe and AST bring "exactly the same cause[s] of action" as those brought by Ms. Schneider in the initial July 2, 2020, class action complaint— direct, contributory, and vicarious infringement—and they are members of the putative infringement classes.  Accordingly, Uniglobe and AST should be deemed to have commenced their actions on July 2, 2020, as stated in Plaintiffs' proposed instruction.

### DISPUTED INSTRUCTION NO. 51—DEFENDANTS' POSITION

There is no Ninth Circuit Model Jury Instruction for a contractual limitations period affirmative defense.  Defendants propose adapting the Eleventh Circuit Pattern Jury Instruction (Civil) No. 9.29, Copyright – Defenses – Affirmative Defense – Statute of Limitations to the context of a contractual limitations period.

Defendants' proposed instruction should be preferred over Plaintiffs' because, rather than adapting the Eleventh Circuit Pattern Jury Instruction No. 9.29, Plaintiffs have elected to draft a special instruction.  "[T]he preferred practice is for district courts, where possible, to follow the model instructions and avoid unnecessary disputes like this one." *United States v. Peppers*, 697 F.3d 1217, 1221 (9th Cir. 2012); *see also* N.D. Cal., Standing Order for Civil Jury Trials Before Judge James Donato ¶ 7 ("The parties should use the Ninth Circuit Model Jury Instructions to the fullest extent possible.  Modifications and 'custom' proposed instructions are discouraged.").

Plaintiffs' proposed instruction seeks to obtain for Plaintiffs AST and Uniglobe the benefit of *American Pipe* tolling.   But Plaintiffs cite no authority for their claim that *American Pipe* tolling, which is "based in equity," applies to a *contractual* limitations period, to which the parties have consented.  *Cf. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 510 (2017) (*American Pipe* tolling does not apply to statutes of repose because the purpose of "grant[ing] complete peace to defendants, supersedes the application of a tolling rule based in equity").

More fundamentally, *American Pipe* is inapposite in the scenario where class certification is denied. Plaintiffs' sole authority cited in their model instruction for this authority refused to apply *American Pipe* tolling.  *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1103 (N.D. Cal. 2007) ("[T]he court declines to apply the class tolling doctrine to plaintiffs' claims").  That decision made clear that *American Pipe* tolling has been recognized to apply where the plaintiff filed a subsequent lawsuit after class certification in a previous lawsuit was denied or the plaintiff opted out of the class action.  *See id.* at 1102.  But Plaintiffs have provided no authority that *American Pipe* tolling benefits a plaintiff who joins a putative class action a year and a half after it was filed, where class certification is later denied.

Defendants should be allowed to assert the defense that AST and Uniglobe have slept on their rights.

**Disputed Instruction No. 51.5: Damages—Proof**

Plaintiffs object to this Instruction in its entirety.

**Disputed Instruction No. 51.5 Re: Damages—Proof; Offered by Defendants**

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for any plaintiff, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  I will provide you with more specific instructions about damages in later instructions.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Authority:  This is adapted from the model Ninth Circuit Model Instruction 5.1.

1

2

**Plaintiffs' Argument re: Disputed Instruction No. 51.5: Damages—Proof**

3

Plaintiffs object to this instruction in its entirety. In the context of this action, and the

4

damages sought by Plaintiffs, this general instruction on damages is both unnecessary and likely

5

to confuse the jury. The proposed instruction states, "The plaintiff has the burden of proving

6

damages by a preponderance of the evidence." That is not the case here as the Copyright Act

7

imposes a shifting burden of proof.

8

Under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages

9

suffered by him or her as a result of the infringement, *and any profits of the infringer that are*

10

*attributable to the infringement* and are not taken into account in computing the actual damages."

11

(Emphasis added.) Plaintiffs are not seeking actual damages for diminution in value of Plaintiffs'

12

works or lost sales or licenses. Rather, Plaintiffs seek only disgorgement of Defendants' profits

13

and statutory damages. "In establishing the infringer's profits, the copyright owner is required to

14

present proof only of the infringer's gross revenue, and *the infringer* is required to prove his or her

15

deductible expenses and the elements of profit attributable to factors other than the copyrighted

16

work" 17 U.S.C. § 504(b) (emphasis added). This general instruction wrongly implies that

17

Plaintiffs bear the burden of proof on costs and the burden on apportioning costs. *Polar Bear*, 384

18

F.3d at 711 ("§ 504(b) creates a two-step framework for recovery of indirect profits: 1) the

19

copyright claimant must first show a causal nexus between the infringement and the gross revenue;

20

and 2) once the causal nexus is shown, *the infringer bears the burden of apportioning the profits*

21

*that were not the result of infringement*" (emphasis added)). It will confuse the jury.

22

23

24

25

26

27

28

3:20-cv-04423-JD

## DISPUTED INSTRUCTION 51.5—DEFENDANTS' POSITION

This is a standard Ninth Circuit instruction that is commonly included as prefatory to more specific instructions about damages.  Plaintiffs can offer no persuasive reason for omitting this instruction as prefatory to the more specific damages instructions.  By contrast, the model instruction frames important issues for the jury, including that Plaintiffs' bear the burden of proof, which is preponderance of the evidence, and that damages cannot be speculative.

**Stipulated Instruction No. 52: Copyright—Damages**

If you find for any plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. That plaintiff is entitled to recover any profits of the defendant attributable to the infringement. The plaintiff must prove damages by a preponderance of the evidence.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.32 (2017).

**Disputed Instruction No. 53: Damages—Mitigation**

Plaintiffs object to this Instruction in its entirety

**Contested Instruction No. 53 Re: Damages—Mitigation; Offered by Defendants**

The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

If you found that YouTube established these elements for a plaintiff, you may reduce the award of damages to that plaintiff due to the plaintiff's failure to mitigate the damages.

Authority:  This is adapted from the model Ninth Circuit Model Instruction 5.3.

**Plaintiffs' Argument re: Disputed Instruction No. 53: Damages—Mitigation**

Plaintiffs object to this Instruction in its entirety.  Plaintiffs are not seeking actual damages for diminution in value of Plaintiffs' works or lost sales or licenses.  Rather, Plaintiffs seek only disgorgement of Defendants' profits and statutory damages.  The defense of mitigation does not apply to either of these damages theories.

Under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and any profits of the infringer that are attributable to the infringement* and are not taken into account in computing the actual damages." (Emphasis added.)  Disgorgement of profit is an equitable remedy that awards a plaintiff the amount of benefit received by a defendant due to its wrongful acts.  *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020) ("Decisions from this Court confirm that a remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts.").  On the other hand, mitigation is a defense of law and is not relevant to equitable relief like disgorgement.  *F.T.C. v. Medicor LLC*, 2001 WL 765628, at *2 (C.D. Cal. June 26, 2001) ("All relief sought by Plaintiff is equitable and dependent upon the amount of gain received by the Defendants, not the amount of loss suffered by the Plaintiff.  Thus, mitigation of damages is not relevant."); *Microsoft Corp. v. U-Top Printing Corp.*, 1996 WL 479066, at *1 (N.D. Cal. Aug. 13, 1996) ("The Court found that defendants' remaining affirmative defense, the Sixth Affirmative Defense (failure to mitigate) did not apply to this award of disgorgement of profits.").

Likewise, it is well established that mitigation is inapplicable when a plaintiff seeks statutory damages.  *See, e.g.*, *J & J Sports Prods., Inc. v. Dean*, 2011 WL 4080052, at *2 (N.D. Cal. Sept. 12, 2011) ("defense of mitigation is not applicable" because "Plaintiff seeks statutory damages"); *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 422 (D.N.J. 2005) (defense of "failure to mitigate damages" was "previously waived by Defendants upon Plaintiffs' representation that they would be seeking damages under 17 U.S.C. § 504(c)"); *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2014) ("Because Plaintiff has elected

3:20-cv-04423-JD

statutory damages in this case, Defendant Smoak's failure-to-mitigate defense should be stricken.").

Defendants' proposed instruction should be rejected in its entirety.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 53—DEFENDANTS' POSITION

Defendants' instruction adopts Ninth Circuit's Model Instruction No 5.3 with one modification.  Defendants add a statement tying the instruction to the facts of this case and the legal consequence of the instruction, noting that "if you found that YouTube established these elements for a plaintiff, you may reduce the award of damages to that plaintiff due to the plaintiff's failure to mitigate the damages."

Plaintiffs maintain that no instruction is necessary, without explanation, and despite the clear factual basis for the instruction.  In particular, there is evidence that Plaintiffs refused to use copyright management tools available to them that would have allowed them to more effectively police their copyrights, instead allowing works posted without their authorization to stay on YouTube (and accrue damages).  *See Malibu Media, LLC v. Guastaferro*, 1:14-cv-1544, 2015 U.S. Dist. LEXIS 99217, at *13-14 (E.D. Va. July 28, 2015) ("Some courts have recognized that a plaintiff's knowing failure to stop ongoing copyright infringement may represent a failure to mitigate.").  In light of this factual predicate, the jury should be instructed on mitigation.

**Disputed Instruction No. 54: Copyright—Damages—Defendant's Profits: Offered by Plaintiffs**

As damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and defendants' gross revenue. To recover indirect profits, plaintiffs must establish a causal relationship between the infringement and the profits generated indirectly from such infringement. A causal nexus exists if the infringement at least partially caused the profits that defendants generated as a result of the infringement.

The defendants' profits are determined by subtracting all expenses from the defendants' gross revenue.

The defendants' gross revenues include the direct and indirect advertising revenues generated from the presence of the copyright infringing videos on the YouTube platform. The plaintiffs have the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all marginal production costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the presence of copyright infringing videos on the YouTube platform is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying the copyrighted work.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.34 (2017);
- 17 U.S.C. 504;

- *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (The "fundamental standard" for whether a causal nexus is shown as required for an award of indirect profits is that the plaintiff "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement.").

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Contested Instruction No. 54 Re: Copyright—Damages—Defendant's Profits**
**(17 U.S.C. § 504(b)); Offered by Defendants**

As damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal nexus between the infringement and the profits generated from the infringement.

The "causal nexus" that is required is also called "proximate causation." This requirement precludes plaintiffs from recovering profits that are too remote from the alleged infringement. Proximate causation generally requires a direct relationship between the infringement and the profits sought. Proximate causation generally does not allow plaintiffs to go beyond the first step in the causal chain. In other words, plaintiffs' proof of damages must begin with proof of defendants' gross revenues actually caused by the alleged infringement.

The defendant's profit is determined by deducting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the use of a work proximately caused by the infringement. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence. You may not speculate when determining gross revenue.

Expenses are all operating costs, overhead costs, and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence. You may not speculate when determining a defendant's expenses.

Unless you find that a portion of the profit from the use of a work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

Authority:  This is adapted from the model Ninth Circuit instruction.  *See also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 713 (9th Cir. 2004) (requiring "causal nexus between the infringement and the profits sought").

**Plaintiffs' Argument re: Disputed Instruction No. 54: Copyright—Damages—Defendant's Profits**

Plaintiffs' proposed instruction is based largely on the Ninth Circuit Model Civil Jury Instruction 17.34, except for several modifications tailored to the facts of this case.

*First*, because Plaintiffs seek indirect profits, Plaintiffs' proposed instruction elaborates on the meaning of "causal relationship" in the context of indirect profits.  This language is drawn from *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (The "fundamental standard" for whether a causal nexus is shown as required for an award of indirect profits is that the plaintiff "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement" (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)).).

*Second*, Plaintiffs have included language explaining what certain phrases mean in the context of this case.  Plaintiffs' proposed instruction specifies that "gross revenues" means "the direct and indirect advertising revenues generated from the presence of the copyright infringing videos on the YouTube platform" and that "use of the copyrighted work" means "the presence of copyright infringing videos on the YouTube platform."  Such elaboration will aid the jury and is neutrally presented.

By contrast, Defendants' proposed instruction both deviates from the model and misstates the law.

*First*, the Court should reject Defendants' paragraph explaining the meaning of "causal nexus" and "proximate causation".  This language does not appear anywhere in the model instruction.  Moreover, language such as "Proximate causation generally does not allow plaintiffs to go beyond the first step in the causal chain" wrongly implies that Plaintiffs bear the burden of apportioning costs.  17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and *the infringer* is required to prove his or her deductible expenses and the elements of profit attributable to factors other than

3:20-cv-04423-JD

the copyrighted work" (emphasis added)); *Polar Bear*, 384 F.3d at 711 ("§ 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, *the infringer bears the burden of apportioning the profits that were not the result of infringement*" (emphasis added)).

*Second*, the Court should also reject Defendants' addition of language on speculation when determining gross revenue and expenses. This language is absent from the model instructions, and Defendants have proffered no factual basis necessitating such a gratuitous warning.

### DISPUTED INSTRUCTION NO. 54—DEFENDANTS' POSITION

Defendants adopt the Model Instruction as supplemented by a discussion of proximate causation drawn from *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700 (9th Cir. 2004).

***First***, Defendants' proposed instruction explains that in order for Plaintiffs to receive Defendants' profits, Plaintiffs must first establish a direct relationship between the infringement and the profits sought. As the Ninth Circuit explained in *Polar Bear*, plaintiffs "must *first* show a causal nexus between the infringement and the gross revenue," then, "once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement." 384 F.3d at 711. Defendants' proposed instruction explains the importance of *Polar Bear*'s first step.

***Second***, Defendants' proposed instruction clarifies that the jury should not speculate when determining the defendants' gross revenue or expenses. This is established law. *Id.* ("When an infringer's profits are only remotely and speculatively attributable to infringement, courts will deny recovery to the copyright owner."); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir. 1985) ("[A] court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement."); *see also* 4 Nimmer on Copyright § 14.03(B)(2)(a).

Plaintiffs' amendment to the Model Instruction—that "[a] causal nexus exists if the infringement at least partially caused the profits that defendants generated as a result of the infringement"–-is misleading and premised on a misinterpretation of the *Polar Bear* decision. A jury might infer from this sentence that it could award plaintiffs the full value of Defendants' undifferentiated profits, even if the plaintiff has only proven that some portion of those profits were caused by infringement. Not so. Plaintiffs state that their amendments are supported by a quotation from *Polar Bear* that a plaintiff "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *See Polar Bear*, 384 F.3d at 711 (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)). But this quotation is taken out of context. The *Polar Bear* court was quoting the standard employed in *Mackie* to determine whether a plaintiff could create a triable issue of fact to survive

summary judgment.  *Id.*  The *Polar Bear* court reasoned "[f]rom [*Mackie's*] principle," that "profits sought are those that arise from the infringement."  Accordingly, "a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement" and "a plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.'"  *Id.*  (citing 4 Nimmer on Copyright § 14.03[B]).  Far from weakening the requirement of proximate causation, the *Polar Bear* court was emphasizing it. Plaintiffs' misleading instructions should not be given to the jury.

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Disputed Instruction No. 55: Copyright—Damages—Statutory Damages: Offered by Plaintiffs**

If you find for the plaintiff on the plaintiff's copyright infringement claims, you must determine the plaintiff's damages. Ms. Schneider and Uniglobe seek a statutory damage award, established by Congress for each U.S. Copyright registered work infringed. The purpose of statutory damages is not only to compensate the plaintiff for her or its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

However, if you find the infringement was innocent, you may award as little as $700 for each work innocently infringed.

Instruction <u>57</u> will tell you what constitutes willful infringement. Instruction <u>56</u> will tell you what constitutes innocent infringement.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.35 (2017).

**Contested Instruction No. 55 Re: Copyright—Damages—Statutory Damages**
**(17 U.S.C. § 504(c)); Offered by Defendants**

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. Ms. Schneider and Uniglobe seek a statutory damage award for some of the infringements in this case. The purpose of statutory damages is not only to compensate the plaintiff for her or its losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

To obtain statutory damages for a given work, the plaintiff must prove that the infringement took place after the date the copyright was registered.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

However, this range may vary if you find either that the infringement was innocent or willful. If you find the infringement was innocent, you may award as little as $200 for each work innocently infringed. The same is true if you find that plaintiffs failed to mitigate their damages. I will discuss mitigation further in a later instruction. If you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Instructions 56 and 57 will tell you what constitutes innocent infringement and what constitutes willful infringement.

Authority: This is adapted from the model Ninth Circuit instruction.

**Plaintiffs' Argument re Disputed Instruction No. 55: Copyright—Damages—Statutory Damages**

Plaintiffs offer a slightly modified version of the model instruction tailored to Plaintiffs' claims in this case.

Defendants' proposed instruction should be rejected for two reasons.

First, Defendants misstate the law through inclusion of the following sentence: "The same is true if you find that plaintiffs failed to mitigate their damages. I will discuss mitigation further in a later instruction." Mitigation of damages are not relevant to statutory damages. *Arista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 422 (D.N.J.2005) (mitigation of damages defense not appropriate in copyright infringement case where plaintiffs sought only statutory damages); *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2014) ("A copyright plaintiff's exclusive pursuit of statutory damages invalidates a failure-to-mitigate defense."). Accordingly, a reference to mitigation of damages in the instruction is inappropriate. *Cf. New Form, Inc. v. Tekila Films, Inc.*, 357 Fed. Appx. 10, 11–12 (9th Cir. 2009) ("The district court did not abuse its discretion in declining to adopt Tekila Films's proposed jury instruction that would direct the jury to measure statutory damages in relation to actual damages[.]").

Second, Defendants inappropriately ask the jury to usurp this Court's role, through inclusion of the following sentence: "To obtain statutory damages for a given work, the plaintiff must prove that the infringement took place after the date the copyright was registered." This question—i.e., whether a given work was properly registered—can be determined as a matter of law, as this Court previously determined in its ruling on Defendants' motion to dismiss. *See* ECF No. 157 at 3 ("Schneider's works identified in the original complaint were properly registered. In the amended complaint, Schneider added new claims for works that were registered prior to the filing of the amended complaint. Consequently, the amended complaint complies with the registration requirement.") (citations omitted). Because the registration dates and dates of infringement are undisputed, Plaintiffs' entitlement to statutory damages can be determined by the Court, and there is

3:20-cv-04423-JD

no need to burden the jury with this task.  *See Tobinick v. Scripps Clinic Med. Grp., Inc.*, 81 Fed. Appx. 677, 679 (9th Cir. 2003) (holding the district court did not err by rejecting a jury instruction that was for a matter within the sole province of the court).

## DISPUTED INSTRUCTION NO. 55—DEFENDANTS' POSITION

Defendants' proposed jury instruction is more faithful to the law and to the facts of the case.

**First**, Defendants note that Plaintiffs seek statutory damages for some, but not all, of the alleged infringements in the case.  It is undisputed that Uniglobe is seeking to recover damages for an unregistered work, and it is black letter law that statutory damages are available only where a work is registered. 17 U.S.C. § 412(2).  Including language as to which Plaintiffs are seeking statutory damages is critical to jury comprehension.

**Second**, Defendants note that statutory damages are available only for infringements that post-date registration.  *Id.*  This is also black letter law, and the jury should be instructed as such given that volume of alleged infringements Plaintiffs have put at issue in this case.

**Third**, Defendants note that the jury may consider Defendants' duty-to-mitigate defense when awarding statutory damages.  A jury may consider "the conduct and attitude of the parties" when awarding statutory damages.  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).  The Fifth Circuit has held that a district court "appropriately instructed the jury to consider [a plaintiff's] lost revenues **and mitigation** in determining the amount of statutory damages."  *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 275 (5th Cir. 2020) (emphasis added).  The Nimmer treatise agrees: "A properly instructed jury could therefore choose to award minimal amounts of statutory damages for each such instance." 4 M. Nimmer & D. Nimmer, Copyright § 14.04 [B][1][b] (2020).

**Finally**, Plaintiffs' effort to flip the order of innocent and willful damages is unnecessary and illogical.  The Court should follow the text, and order of the text, in the model instruction.

**Stipulated Instruction No. 56: Copyright—Damages—Innocent Infringement**

An infringement is considered innocent when the defendant has proved both of the following elements by a preponderance of the evidence:

1.  the defendant was not aware that its acts constituted infringement of the copyright; and

2.  the defendant had no reason to believe that its acts constituted an infringement of the copyright.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.36 (2017).

**Stipulated Instruction No. 57: Copyright—Damages—Willful Infringement**

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.      the defendant engaged in acts that infringed the copyright; and

2.      the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.37 (2017).

**Disputed Instruction No. 58: Preliminary Instruction—Copyright Management Information: Offered by Plaintiffs**

The plaintiffs claim that the defendants violated the Digital Millennium Copyright Act, or DMCA, by (i) removing or altering metadata constituting copyright management information associated with their works contained in videos on YouTube or (ii) displaying videos containing their works knowing that copyright management information associated with those works had been removed or altered. The defendants deny that they violated the copyright management information protections of the Digital Millennium Copyright Act.

I will now instruct you on the law regarding copyright management information, and the damages you may award if you find that the plaintiffs have met their burden to prove that the defendants violated the protections afforded by the Digital Millennium Copyright Act.

*Authority*: This is a special instruction.

**Contested Instruction No. 58 Re: Preliminary Instruction—Copyright Management
Information, Offered by Defendants**

The plaintiffs claim that the defendants violated the Digital Millennium Copyright Act, or
DMCA, by intentionally removing copyright management information, or CMI, without authority
from the copyright owner, or distributing a copyrighted work knowing that the CMI has been
removed without authority from the copyright owner, while knowing that the removal or the
distribution will induce or conceal copyright infringement. The defendants deny that they violated
the copyright management information protections of the Digital Millennium Copyright Act.

I will now instruct you on the law regarding copyright management information, and the
damages you may award if you find that the plaintiffs have met their burden to prove that the
defendants violated the protections afforded by the Digital Millennium Copyright Act.

Authority: This is a special instruction.

**Plaintiffs' Argument re Disputed Instruction No. 58: Preliminary Instruction—Copyright Management Information**

Plaintiffs offer this preliminary instruction to provide the jury with an overview of Plaintiffs' claim under 17 U.S.C. § 1202 of the DMCA.  The instruction is not intended to explain the elements of Section 1202, which is covered in Disputed Instruction 60.

Defendants' instruction, in contrast, merely re-states the statutory elements of Section 1202(b).  Because these elements are already addressed by Disputed Instruction 60, there is no need to include them again in this instruction.  Further, the jury would benefit from a brief preliminary instruction on Section 1202, which Defendants instruction does not provide.

## DISPUTED INSTRUCTION NO. 58—DEFENDANTS' POSITION

There is no Model Instruction for Section 1202. Defendants' proposed instruction provides an overview of Ms. Schneider's claims while closely tracking the statutory language. *See* 17 U.S.C. § 1202.

Plaintiffs' proposed Jury Instruction No. 58 omits key elements in Section 1202. Most critically, it fails to mention that Section 1202 unambiguously imposes a "double scienter" requirement: a defendant is only liable if it (1) "intentionally" removes or alters CMI, or distributes copyrighted works "knowing" that CMI was removed or altered; ***and*** (2) possesses the mental state of knowing, or having a reasonable basis to know, that its actions "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b); *see also Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018). Given that Defendants challenge Ms. Schneider's ability to demonstrate either one of the scienter requirements (*see* Dkt. 164 at 18-21), a preliminary instruction without any discussion of scienter is likely to confuse the jury and prejudice Defendants.

Further, Plaintiffs' proposed Jury Instruction No. 58 omits the statutory requirement that a defendant must have acted "without the authority of the copyright owner or the law." 17 U.S.C. § 1202(b). Defendants contend that they are not liable under Section 1202 because, for example, Ms. Schneider's publisher authorized YouTube to remove or alter metadata. *See* Dkt. 164 at 21. It is therefore important to instruct the jury on this requirement of a Section 1202 claim.

In lieu of this Instruction 58, Defendants' proposed Instruction 60 contains a preface that will aid jury comprehension and that is faithful to the statutory requirements.

---

**JOINT SET OF PROPOSED PRELIMINARY JURY INSTRUCTIONS**

**Stipulated Instruction No. 59: Copyright Management Information—Defined**

As used in the Digital Millennium Copyright Act, the term "copyright management information" means any of the following information conveyed in connection with copies of a work or performances or displays of a work, including in digital form:

1.      The title and other information identifying the work, including the information set forth on a notice of copyright.

2.      The name of, and other identifying information about, the author of a work.

3.      The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

4.      With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

5.      With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

6.      Identifying numbers or symbols referring to such information or links to such information.

*Authority*: Adapted from 17 U.S.C. §1202

3:20-cv-04423-JD

**Disputed Instruction No. 60: Copyright Management Information—Liability: Offered by Plaintiffs**

On the plaintiffs' copyright management information claims, the plaintiffs have the burden of proving by a preponderance of the evidence that:

1. the defendants, without authorization, intentionally removed or altered copyright management information associated with their work; or

2. the defendants distributed, imported for distribution, or publicly performed videos containing copies of their work knowing that copyright management information had been removed or altered without authority from the plaintiffs or the law.

The plaintiffs must also prove by a preponderance of the evidence that defendants knew the removal or alteration of copyright management information or distribution, import for distribution or public performance of works with their associated copyright management information removed or altered will induce, enable, facilitate, or conceal infringement. The plaintiffs may make this showing by demonstrating a past pattern of conduct or modus operandi by defendants.

*Authority*:

- Adapted from 17 U.S.C. § 1202;

- *Stevens v. Corelogic, Inc*., 899 F.3d 666, 674 (9th Cir. 2018) ("Applying that concept here, we hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions.")

**Contested Instruction No. 60 Re: Copyright Management Information—Liability;**
**Offered by Defendants**

Ms. Schneider claims that YouTube and Google violated the Digital Millennium Copyright Act, or DMCA, intentionally removing copyright management information, or CMI, without authority from the copyright owner, or distributing a copyrighted work knowing that the CMI has been removed without authority from the copyright owner, while knowing that the removal or the distribution will induce or conceal copyright infringement.

Defendants deny this claim and assert that any violation was innocent.

Only Ms. Schneider asserts this claim.

In order to prevail on a claim for removing or altering copyright management information, a plaintiff must prove by a preponderance of the evidence:

1. that the defendants either:

   a. Intentionally removed or altered CMI without the plaintiff's permission; or

   b. Distributed or imported for distribution the plaintiff's works knowing at the time of distribution or importation that the CMI had been removed or altered without the plaintiff's permission; and

2. at the time the defendants took any such actions, they knew or had reasonable grounds to know that doing so would induce, enable, facilitate or conceal copyright infringement.

In order to prove the first element, the plaintiff must prove that the defendants knew what was removed or altered was CMI. It is not enough for the plaintiff to assert that, because some information has been removed or altered, and that information might include CMI, defendants knew that the information removed or altered was CMI.

In order to prove the second element, the plaintiff must prove that future infringement is likely to occur as a result of the removal or alteration of CMI.  It is not enough for the plaintiff to assert that, because CMI has been removed, someone might be able to infringe undetected.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority: 17 U.S.C. § 1202; *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) (describing scienter requirement); *Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 U.S. Dist. LEXIS 168788, at *10-11 (N.D. Cal. Sep. 19, 2022) (requiring actual knowledge that removed information was CMI).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Plaintiffs' Argument re Disputed Instruction No. 60: Copyright Management Information—Liability**

There is no model instruction for liability under 17 U.S.C. § 1202.

Plaintiffs offer an instruction that tracks 17 U.S.C. § 1202(b) and that sub-section's elements.  One element is that defendants knew the removal or alteration of copyright management information or distribution, import for distribution or public performance of works with their associated copyright management information removed or altered will induce, enable, facilitate, or conceal infringement.  *See* 17 U.S.C. § 1202(b).  Plaintiffs' instruction also explains that Plaintiffs may establish this element by demonstrating a past pattern of conduct or modus operandi by defendants under Ninth Circuit precedent.  *Stevens v. Corelogic, Inc*., 899 F.3d 666, 674 (9th Cir. 2018) ("Applying that concept here, we hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions.").

Defendants' version improperly adds an element not found in Section 1202: that "plaintiff must prove that the defendants knew what was removed or altered was CMI".  Defendants' cases do not support such an addition.  This proposal appears to be an eleventh-hour attempt to re-write this Court's order denying Defendants' motion to dismiss Plaintiffs' CMI claims.  ECF No. 157.  That Order accurately and succinctly states the elements to state a 1202 claim, *see id.* at 3-4, which does not include Defendants' extra-textual element.

Defendants' other addition is redundant and thus unnecessary.  Their version states, "the plaintiff must prove that future infringement is likely to occur as a result of the removal or alteration of CMI".  However, the text of Section 1202 already covers that point, which provides that a plaintiff must establish the defendant knew or had reasonable grounds to know that its conduct would induce, enable, facilitate, or conceal an infringement.  This element is included in Plaintiffs' proposal and there is no need to add Defendants' gloss to this clear statutory element.

3:20-cv-04423-JD

**DISPUTED INSTRUCTION NO. 60—DEFENDANTS' POSITION**

The parties' proposed Jury Instruction No. 60 differ in two crucial aspects. ***First***, YouTube's proposed instruction clarifies that the first scienter requirement under Section 1202—that a defendant either "intentionally" removed or altered CMI, or distributed copyrighted works "knowing" that CMI had been removed or altered (17 U.S.C. § 1202(b))—requires specific knowledge that what was removed or altered was CMI, as opposed to metadata. *See Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (Section 1202(b) requires that the defendant "knew that the metadata it removed contained CMI"; "wholesale metadata removal, without more, does not suffice to allege [defendant] intentionally removed CMI"); *Philpot v. WOS, Inc.*, No. 1:18-cv-339-RP, 2019 WL 1767208, at *8-9 (W.D. Tex. Apr. 22, 2019) (same). Plaintiffs' proposed instruction is silent on the first scienter requirement, and risks confusing the jury into thinking that knowledge of wholesale metadata removal, without more, could suffice.

*Second*, YouTube's proposed instruction is based on controlling Ninth Circuit law on the second scienter requirement under Section 1202—that a defendant must possess actual or constructive knowledge that the removal or alteration of CMI, or the distribution of copyrighted works with CMI removed or altered, would "induce, enable, facilitate or conceal [copyright] infringement." 17 U.S.C. § 1202(b). The Ninth Circuit is clear that it is not enough for a plaintiff to simply allege that, because CMI has been removed or altered, "someone might be able to [infringe] undetected": a plaintiff must come up with evidence that "future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673-75 (9th Cir. 2018). Yet Plaintiffs' proposed instruction not only omits the teachings of the Ninth Circuit, but also instructs that Plaintiffs may meet their burden "by demonstrating a past pattern of conduct or modus operandi [*by*] *defendants*." *Id.* at 674. The Court has already explained this position is a "misreading" of *Stevens*. Tr. of Hearing Dated Apr. 13, 2023, at 36:1-37:24 ("each plaintiff is going to have to show that he or she relied on the CMI data to help police protection of their rights and to combat infringement. . . . That is all on you. That is not on the defendant."); 39:8-20 ("you need to show . . . that each and every plaintiff

relied on the CMI data that was removed to police infringement and that the resulting removal impaired their ability to do it"); *Stevens*, 899 F.3d at 674 (explaining that the second scienter requirement "signifies 'a state of mind in which the knower [the defendant] is familiar with a pattern of conduct' or 'aware of an establishes modus operandi that will in the future cause a person to engage in' a certain act" and that "specific allegations as to how identifiable infringements 'will' be affected are necessary"); *see also Harrington,* 2021 WL 4033031, at *6 (a plaintiff must show their own "pattern of conduct" or "modus operandi" (rather than a defendant's conduct) involved policing infringement to satisfy the second scienter requirement under Section 1202).

**Disputed Instruction No. 61: Copyright Management Information—Damages—Statutory Damages: Offered by Plaintiffs**

If you find for the plaintiffs on their copyright management information claims, you must determine the plaintiffs' damages. On their copyright management information claims only, the plaintiffs have elected to pursue only a statutory damages award, established by Congress for each violation of the copyright management information protections. Its purpose is not only to compensate the plaintiffs for their losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

If you find that the defendants have violated the copyright management information protections, you must then determine how many violations have occurred. In the context of this case, a violation occurs each time a video is uploaded to the YouTube platform with the copyright management information removed or altered, whether by the defendants or others.

The amount you may award as statutory damages is not less than $2,500, nor more than $25,000 for each violation of the copyright management information protections.

However, if you find that the violation was innocent you may award less than $2,500 for each violation. A violation is innocent if the defendant was not aware and had no reason to believe that its acts constituted a violation.

*Authority*: Adapted from 17 U.S.C. §1203 and Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.35; *GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 850 (N.D. Ill. 2019) ("The statute does not only prohibit, as the defendants would have it, the first such distribution; it forbids all of them"); *Id*. ("the defendant was held responsible for each 'web upload' of infringing material").

3:20-cv-04423-JD

**Contested Instruction No. 61 Re: Copyright Management Information—Damages—
Statutory Damages; Offered by Defendants**

If you find for plaintiffs on their copyright management information claims, you must determine plaintiffs' damages. On their copyright management information claims only, plaintiffs have elected to pursue only a statutory damages award.

If you find that defendants have violated the copyright management information protections, you must then determine how many violations have occurred. In the context of this case, a violation occurs each time a video is uploaded to the YouTube platform with the copyright management information removed or altered.

The amount you may award as statutory damages is not less than $2,500, nor more than $25,000 for each violation of the copyright management information protections.  However, if you find that the violation was innocent you may award less than $2,500 for each violation. A violation is innocent if the defendant was not aware and had no reason to believe that its acts constituted a violation.

Within the appropriate range, you should award an amount that you believe is just in light of the evidence presented.

Authority: 17 U.S.C. § 1203.

**Plaintiffs' Argument re Disputed Instruction No. 61: Copyright Management Information—Damages—Statutory Damages**

The parties largely agree on this instruction, but with two differences.

First, Defendants have removed any reference to the purpose of statutory damages for violations of Section 1202. Plaintiffs' version includes the following statement in the first paragraph: "Its purpose is not only to compensate the plaintiffs for their losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws." This same sentence appears in the model instructions for statutory damages for copyright infringement. *See* Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.35. The purpose of statutory damages under Section 1202 is also to penalize and deter, *see Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075–76 (N.D. Cal. 2005) (finding it consistent with Congressional intent that statutory damages under 17 U.S.C. § 1203(c) be used to "discourage wrongful conduct"), and the jury would benefit from having this Congressional purpose in mind when assessing the proper amount of damages.

Second, Defendants' version of the second paragraph omits the following italicized phrase: "In the context of this case, a violation occurs each time a video is uploaded to the YouTube platform with the copyright management information removed or altered, *whether by the defendants or others*." Section 1202(b)(3) makes it a violation to "distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law". Under this subsection, there is no requirement that Defendants themselves removed or altered the CMI at issue, only that Defendants "distribute" these works with knowledge that CMI has been "removed or altered", as the Court's ruling on Defendants' motion to dismiss made clear (ECF No. 157 at 3-4) and consistent with 17 U.S.C. §1202(b). The italicized phrase should not be omitted since that could suggest to the jury that, contrary to the statute, Defendants themselves must have removed or altered the CMI at issue.

## DISPUTED INSTRUCTION NO. 61—DEFENDANTS' POSITION

Plaintiffs' proposed instruction risks misleading the jury on statutory damages under Section 1203 by adding "whether by the defendants or others" after explaining what a violation is. That language does not appear anywhere in the statute, in Model Jury Instruction 17.35, or in the sole case Plaintiffs cite as authority. To the extent third-party conduct is relevant to a liability finding, Instruction 60 provides the jury with the necessary information. It is unnecessary and confusing to import that information into a damages instruction; as the challenged language improperly suggests that YouTube uploads user videos onto its platform, and that, irrespective of how the jury is instructed on liability, YouTube may be held liable for the actions of others. YouTube's proposed instruction, which does not include the language, poses no risk of confusion.

**Stipulated Instruction No. 62: Preliminary Instruction Regarding YouTube and Google's Counterclaim**

I will now instruct you about YouTube and Google's counterclaim against Pirate Monitor Ltd. and Mr. Gábor Csupó. For this claim, YouTube and Google are the plaintiffs. Pirate Monitor Ltd. and Mr. Csupó are the defendants. YouTube and Google do not assert any claim against Pirate Monitor LLC because it is a nonexistent entity.  For Pirate Monitor Ltd. and Mr. Csupó, you must assess each defendant's liability to YouTube and Google individually. You may find that both, either or none of these defendants is liable, and any one defendant's liability does not bear on the other defendant's liability. Also, your findings about the claims that Ms. Schneider, AST, and Uniglobe assert against YouTube and Google do not bear on your findings about YouTube and Google's claims against Pirate Monitor Ltd. and Mr. Csupó.  Likewise, your findings about the claims that YouTube and Google assert against Pirate Monitor Ltd. and Mr. Csupó do not bear on your findings about the claims that Ms. Schneider, AST, and Uniglobe assert against YouTube and Google.

*Authority*: This is a special instruction.

**Disputed Instruction No. 63: Violation of 17 U.S.C § 512(f): Offered by Plaintiffs and Counterclaim Defendants**

YouTube and Google claim that Pirate Monitor Ltd. and Mr. Csupó are liable for violating 17 U.S.C. § 512(f) of the DMCA for submitting false takedown requests that caused a video to be removed from YouTube.  You must  find whether each defendant is liable for this claim.  You must consider each defendant  separately, and your decision about any one defendant does not necessarily affect any other  defendant's liability. For this claim, YouTube and Google have the burden of proving the following by a preponderance of the evidence:

1. Pirate Monitor Ltd. and/or Mr. Csupó submitted takedown requests that caused videos to be removed from YouTube;

2. Pirate Monitor Ltd. and/or Mr. Csupó represented that a video on YouTube was infringing;

3. That representation was materially false;

4. Pirate Monitor Ltd. and/or Mr. Csupó knew that the representation was false at the time the  representation was made;

5. YouTube and Google relied on Pirate Monitor Ltd. and/or Mr. Csupó's misrepresentation in removing videos from YouTube;

6. YouTube and Google were damaged as a result; and

7. That the misrepresentation was the proximate cause of injury to YouTube and Google.

A representation is material if it affected YouTube and Google's response to the takedown notice.

To find that Pirate Monitor Ltd. and/or Mr. Csupó acted "knowingly," you must find that Pirate Monitor Ltd. and/or Mr. Csupó actually knew that takedown notices were being submitted, that they knew the contents of the takedown notices were false, and that they acted with an intent to deceive, manipulate or defraud YouTube and Google.  Pirate Monitor Ltd. and Mr. Csupó cannot be liable if they did not know about the takedown notices or if they simply made an unknowing mistake.  Rather, YouTube and Google must demonstrate that Pirate Monitor Ltd. and/or Mr. Csupó had some actual knowledge of misrepresentation in order for Pirate Monitor Ltd. and/or Mr. Csupó to be liable.

If Pirate Monitor Ltd. and Mr. Csupó did not know the takedown notices were being submitted, then you must find against YouTube and Google.  If Pirate Monitor Ltd. and Mr. Csupó did not know that the takedown notices were inaccurate, then you must find against YouTube and Google, even if you believe that Pirate Monitor Ltd. and Mr. Csupó acted unreasonably in making a mistake.

Because YouTube and Google brought this claim against Pirate Monitor Ltd. and Mr. Csupó, YouTube and Google have the burden of proof.  Thus, YouTube and Google, not Pirate Monitor Ltd. and Mr. Csupó, must prove all elements by a preponderance of the evidence.  If the proof fails to establish any of the elements by a preponderance of the evidence, you must find against YouTube and Google and for Pirate Monitor Ltd. and Mr. Csupó.

*Authorities:* There is no Ninth Circuit Model Jury Instruction for this issue.  This  instruction is informed by the text of 17 U.S.C. § 512(f) and case law—*Lenz v. Universal Music  Corp.*, 815 F.3d 1145 (9th Cir. 2016); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal.  2015); *Online Policy Grp. v. Diebold, Inc*., 337 F. Supp. 2d 1195 (N.D. Cal. 2004).

**Disputed Instruction No. 63 Re: Violation of 17 U.S.C § 512(f): Offered Counterclaimants**

YouTube and Google claim that Pirate Monitor Ltd. and Mr. Csupó are liable for violating 17 U.S.C. § 512(f) of the DMCA for submitting false takedown requests.  You must  find whether each defendant is liable for this claim.  You must consider each defendant  separately, and your decision about any one defendant does not necessarily affect any other  defendant's liability. For this claim, YouTube and Google have the burden of proving the following by a preponderance of the evidence:

1.  Pirate Monitor Ltd. and/or Mr. Csupó represented that a video on YouTube was infringing;

2.  That representation was materially false;

3.  Pirate Monitor Ltd. and/or Mr. Csupó knew that the representation was false at the time the  representation was made, or was willfully blind to the falsity of the representation;

4.  YouTube and Google relied on Pirate Monitor Ltd. and/or Mr. Csupó's misrepresentation in removing videos from YouTube; and

5.  YouTube and Google were damaged as a result.

A representation is material if it affected YouTube and Google's response to the takedown notice.

YouTube can prove that the defendant knew it made a misrepresentation by proving that the defendant actually knew that the representation was false, or that the defendant subjectively believed that there is a high probability that the representation was false and took deliberate actions to avoid learning of that fact.

Authority: There is no Ninth Circuit Model Jury Instruction for this issue. This instruction is informed by the text of 17 U.S.C. § 512(f) and case law—*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 63:**

**Violation of 17 U.S.C. § 512(f)**

The parties largely agree on the elements to establish a violation of 17 U.S.C. § 512(f). The principal dispute is over the scienter requirement. Section 512(f) only imposes liability against someone that "knowingly" makes a "material[]" "misrepresent[ation]". This is a high bar, as explained by the Ninth Circuit in *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004):

> In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation. A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. *See* § 512(f). Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner. *Id.*

Accordingly, "under Ninth Circuit case law a plaintiff in a § 512(f) action must demonstrate that the copyright owner acted with ***subjective bad faith***." *Lenz v. Universal Music Corp.*, C 07-3783 JF, 2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010) (emphasis added) (citing *Rossi,* 391 F.3d at 1004–05). As explained by Judge Milan Smith, "Section 512(f) creates a statutory misrepresentation action, and it is likely Congress intended the action to mirror analogous common law torts like fraud, deceit, and misrepresentation." *See Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1142 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g,* 815 F.3d 1145 (9th Cir. 2016) (Smith, J., concurring in part). Since a Section 512(f) claim is akin to a common-law fraud claim, an "intent to deceive" standard applies. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance,

and damages.") (citations omitted); *Warkentin v. Federated Life Ins. Co.*, 594 Fed. Appx. 900, 902 (9th Cir. 2014) (statutory definition of fraud requires "intent to deceive" under California law).

Plaintiffs' and Counterclaim Defendants' proposed instruction reflects the Ninth Circuit's scienter standard from *Rossi*. Accordingly, Plaintiffs and Counterclaim Defendants submit that this Court should adopt their proposed instruction.

## DISPUTED INSTRUCTION NO. 63—COUNTERCLAIMANTS' POSITION

There is no Model Instruction for Section 512(f). YouTube's instruction hews closely to the statutory text as it has been interpreted by courts in the Ninth Circuit. *See* 17 U.S.C. § 512(f) ("Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages . . . incurred . . . as the result of the service provider relying upon such misrepresentation"); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015) ("Plaintiffs must allege that Defendant 'knowingly and materially misrepresent[ed]' that copyright infringement has occurred, that Automattic 'relied' on such misrepresentations, and that Plaintiffs have been 'injured' as a result."). In particular, YouTube's instruction clarifies that a showing of willful blindness is sufficient to establish knowledge of the misrepresentation and provides important guidance about how willful blindness should be determined. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016) (willful blindness can establish knowledge under section 512(f)).

Counterclaim Defendants' version, by contrast, adds additional instructions that extend beyond the statutory text and are more likely to confuse the jury than aid it. ***First***, Counterclaim Defendant's version seeks to add as an element of a claim a requirement that it was the Counterclaim Defendants who "submitted" the fraudulent takedown notices. That additional element is nowhere in the statutory text and is likely to confuse a jury into believing that Csupó must himself have sent the notices at issue. As discussed in YouTube's summary judgment opposition (Dkt. 296) and with regard to Instruction Nos. 64-66, that is not the case. ***Second***, Counterclaim Defendants also seek to include paragraphs of instructions that obfuscate the applicable legal standard. For example, Counterclaim Defendants' instructions would require a finding that Counterclaim Defendants "actually knew" the notices at issue were being submitted with false representations and acted with specific "intent" to deceive; it makes no mention of willful blindness. These lengthy instructions are unnecessary to educate the jury on the straight-forward elements of a § 512(f) claim. Rather than aiding the jury, they are likely to create uncertainty about the applicable standards.

**Disputed Instruction No. 64: Submission of Takedown Notices – Personal Liability: Offered by Plaintiffs and Counterclaim Defendants**

YouTube and Google claim that they were harmed by the submission of takedown notices.  If you find that Mr. Csupó personally submitted the 1,975 takedown notices at issue and the submission of those takedown notices harmed YouTube and Google, then Mr. Csupó can be held personally liable.

*Authority:* This is a special instruction.

**Disputed Instruction No. 64 Re: Submission of Takedown Notices – Personal Liability: Offered by Counterclaimants[1]**

YouTube and Google claim that they were harmed by the submission of takedown notices.  If you find that Mr. Csupó directed, authorized, participated in, or ratified the submission the 1,975 takedown notices at issue and the submission of those takedown notices harmed YouTube and Google, then Mr. Csupó can be held personally liable.

Authority: This is a special instruction.

---

[1] Despite the Court's order that Intellectual Property LLC produce documents by no later than April 27, 2023, Defendants did not receive the complete production of documents from Intellectual Property LLC until May 10, 2023, just one day before the pretrial filings are due.  As a result, Defendants and Counterclaim Plaintiffs reserve the right to supplement or amend portions of this statement and other pretrial filings related to the counterclaims.

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 64:**

**Submission of Takedown notices – Personal Liability**

Plaintiffs' and Counterclaim Defendants' proposed Instructions 64 and 65 work in tandem to explain the two possible ways Mr. Csupó could be held liable for the submission of the 1,975 inaccurate takedown notices at issue.  He could either be held personally liable (Instruction 64) for his own actions or vicariously liable (Instruction 65) for the actions of others.   Defendant-Counterclaimants' edits to Instruction 64 are improper as they attempt to blend together these two distinct forms of liability.  Specifically, Defendant-Counterclaimants propose adding to Instruction 64 that Mr. Csupó can be personally liable if he "directed", "authorized", or "ratified" the wrongful conduct of others.   But those concepts by definition rely on the actions of others, and thus they are only relevant to vicarious liability, which is addressed in Instruction 65.  Accordingly, the "personal liability" instruction should be limited to whether Mr. Csupó *personally* submitted the 1,975 takedown notices at issue, as in Plaintiffs' and Counterclaim Defendants' proposed Instruction 64.

### DISPUTED INSTRUCTION NO. 64—COUNTERCLAIMANTS' POSITION

Counterclaim Defendants'[1] proposed instruction would limit Csupó's direct liability to circumstances where he "personally submitted" the fraudulent notices. As YouTube explained in its opposition to Counterclaim Defendants' summary judgment motion (Dkt. 296 at 13), Csupó can be held personally liable for his own wrongful actions if he directed, authorized, participated in, or ratified the submission, regardless of whether he was the person who physically sent the notices to YouTube. *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379-80 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Apr. 7, 2000) ("Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct."). YouTube's proposed jury instruction properly explains the scope of Csupó's direct liability.

To the extent Counterclaim Defendants contend that Csupó cannot be held directly liable because "the conduct at issue did not cause any physical injury" (Dkt. 299 at 10), that argument is as baseless now as it was when they raised it in their summary judgment reply. *See  In re JUUL Labs, Inc., Mktg., Sales Practices., & Prod. Liab. Litig.*, 533 F. Supp. 3d 858, 877-78 (N.D. Cal. 2021) (rejecting argument that "plaintiffs improperly seek economic damages from corporate directors"); *EduMoz, LLC v. Republic of Mozambique*, No. CV 13-02309 MMM (CWx),  2015 WL 13697385, at *10 n.83 (C.D. Cal. Apr. 20, 2015) ("The *Haidinger-Hayes* Court did not hold that a plaintiff had to suffer personal injury or property damage, however, to sue the officer in tort."); *see also PMC, Inc. v. Kadisha,* 78 Cal. App. 4th 1368, 1381 (2000) ("All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered.").

---

[1] Despite the Court's order that Intellectual Property LLC produce documents by no later than April 27, 2023, Defendants did not receive the complete production of documents from Intellectual Property LLC until May 10, 2023, just one day before the pretrial filings are due.  As a result, Defendants and Counterclaim Plaintiffs reserve the right to supplement or amend portions of this statement and other pretrial filings related to the counterclaims.

**Disputed Instruction No. 65: Submission of Takedown Notices – Vicarious Liability: Offered by Plaintiffs and Counterclaim Defendants**

In the alternative, YouTube and Google claim that the person who submitted the 1,975 takedown notices at issue was Mr. Csupó's agent and Mr. Csupó was the principal. For ease of reference, the person who submitted the takedown notices at issue will be referred to as "Takedown Submitter X". YouTube and Google claim that Takedown Submitter X was acting as Mr. Csupó's agent. Mr. Csupó denies that Takedown Submitter X was acting as Mr. Csupó's agent.

If you find that Takedown Submitter X was the agent of Mr. Cuspo and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of Mr. Csupó.

If you find that Takedown Submitter X was <u>not</u> acting within the scope of authority as Mr. Csupó's agent, then you must find for Mr. Csupó.

Mr. Csupó claims that Takedown Submitter X was an agent of Intellectual Property LLC ("IPLLC") (and not Mr. Csupó's agent) and that Mr. Csupó is therefore not responsible for the conduct of Takedown Submitter X. If you find that Takedown Submitter X was the agent of IPLLC and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of IPLLC (and not Mr. Csupó).

*Authorities:* This is a modified instruction based on Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.12, and Judicial Council of California Civil Jury Instructions, Instr. 3705, "Existence of 'Agency' Relationship Disputed".

**Disputed Instruction No. 65 Re: Submission of Takedown Notices – Vicarious Liability: Offered by Counterclaimants**

In the alternative, YouTube and Google claim that the person who submitted the 1,975 takedown notices at issue was Mr. Csupó's agent and Mr. Csupó was the principal.  For ease of reference, the person who submitted the takedown notices at issue will be referred to as "Takedown Submitter X".  YouTube and Google claim that Takedown Submitter X was acting as Mr. Csupó's agent.  Mr. Csupó denies that Takedown Submitter X was acting as Mr. Csupó's agent.

If you find that Takedown Submitter X was the agent of Mr. Cuspo and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of Mr. Csupó.

If you find that Takedown Submitter X was <u>not</u> acting within the scope of authority as Mr. Csupó's agent, then you must find for Mr. Csupó, <u>unless</u> you find that Mr. Csupó ratified the submission of the takedown notices, as explained by Instruction No. 47.5.

Mr. Csupó claims that Takedown Submitter X was an agent of Intellectual Property LLC ("IPLLC") (and not Mr. Csupó's agent) and that Mr. Csupó is therefore not responsible for the conduct of Takedown Submitter X.  If you find that Takedown Submitter X was the agent of IPLLC and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of IPLLC (and not Mr. Csupó).

However, YouTube and Google claims that IPLLC was Mr. Csupó's mere instrument or tool – what the law calls an alter ego. Should you find that YouTube and Google have proved this claim by a preponderance of the evidence, the law requires you to disregard the separate status of IPLLC and hold Mr. Csupó legally responsible for the corporation's acts.

To decide whether to treat IPLLC as the alter ego of Mr. Csupó, you should consider:

a)   whether there is a sufficient unity of interest and ownership that the separate personalities of Mr. Csupó and IPLLC no longer exists; and

b)   whether treating the acts as those of IPLLC alone will sanction a fraud, promote injustice, or cause an inequitable result.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Authority: This is a modified instruction based on Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.12, and Judicial Council of California Civil Jury Instructions, Instr. 3705, "Existence of 'Agency' Relationship Disputed". The last paragraph is based on Eleventh Circuit Pattern Jury Instructions, Instr. 4.26, as revised by California law, because there is no model instruction in the Ninth Circuit Manual. *See Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (Cal. Ct. App. 2011)

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 65:**

**Submission of Takedown Notices – Vicarious Liability**

Plaintiffs' and Counterclaim Defendants' proposed instruction provides guidance on Mr. Csupó's liability depending on whether the person that submitted the 1,975 takedown notices (referred in the instruction as "Takedown Submitter X") was the agent of Mr. Csupó or IPLLC.  If Takedown Submitter X was the agent of Mr. Csupó and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of Mr. Csupó.  Alternatively, if Takedown Submitter X was the agent of IPLLC and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of IPLLC (and not IPLLC's owner, Mr. Csupó).  *See Meyer v. Holley*, 537 U.S. 280, 285–86 (2003) (under agency principles, vicarious liability is normally imposed upon the corporation, but not upon its officers or owners); *Sandler v. Sanchez*, 206 Cal. App. 4th 1431, 1442–43 (2012) (under traditional agency principles, only corporation and not corporation's designated officer/broker could be held liable for torts committed by corporation's employee committed within the scope of his employment).

Plaintiffs' and Counterclaim Defendants' proposed instruction mirrors the example set forth in the Ninth Circuit Manual of Model Civil Jury Instructions regarding principal-agent liability: "[i]f you find that [name of alleged agent][was the agent of [name of alleged principal] and] was acting within the scope of authority, then any act or omission of [name of alleged agent] was the act or omission of [name of alleged principal]."

Defendant-Counterclaimants' edits are improper for two reasons.  First, Defendant-Counterclaimants propose a deviation from the model, as indicated in the italicized language: "If you find that Takedown Submitter X was <u>not</u> acting within the scope of authority as Mr. Csupó's agent, then you must find for Mr. Csupó, *<u>unless you find that Mr. Csupó ratified the submission of the takedown notices, as explained by Instruction No. [4.7]</u>*."  It would be confusing to the jury

to incorporate one instruction into another.   The Court should instead adopt Plaintiffs' and Counterclaim Defendants' proposal that follows the model language.

Second, Defendant-Counterclaimants' proposed instruction states that Mr. Csupó can be held liable for the actions of IPLLC under an alter ego theory.  But there's a major problem with this argument: despite filing and re-filing their counterclaims on three occasions (*see* ECF Nos. 34, 60, 160), Defendant-Counterclaimants never mentioned IPLLC, let alone alleged an alter-ego relationship between Mr. Csupó and IPLLC.  Such an unalleged claim should be dismissed as a matter of law and certainly should not be presented to the jury.  *Lorbeer Enterprises, LP v. Liberty Mut. Ins. Co.*, 2019 WL 4284514, at *2 (C.D. Cal. May 9, 2019) ("[D]espite *arguing* in its brief that facts exist to support a theory of alter ego liability, Plaintiff does not *plead* the elements of that theory, much less sufficient supporting facts. Such outside-the-pleadings arguments are not enough to survive a motion to dismiss.") (emphasis in original); *Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*, 2014 WL 12577084, at *3 (C.D. Cal. Dec. 4, 2014) (dismissing complaint and holding that "conclusory statements of theoretical corporate relationships between [defendants], without further factual allegations, do not suffice").

**DISPUTED INSTRUCTION NO. 65—COUNTERCLAIMANTS' POSITION**

The parties' proposed instructions differ in two material respects. ***First***, YouTube's instruction clarifies that, even if the jury finds that individuals other than Csupó physically submitted the fraudulent takedown notices and that those persons acted beyond the scope of their authority in doing so, Csupó can still be held liable for the wrongful acts of his agents if he ratified those actions. *See Karsant Family Ltd. P'ship v. Allstate Ins. Co.*, No. C 08-1490 SI, 2009 WL 188036, at *9 (N.D. Cal. Jan. 27, 2009) (an agent "is personally liable for the torts of [his] agent if [he] directed or authorized the agent to perform the tortious act, ***or if [he] ratified that act***.") (emphasis added) (citing *Shultz Steel Co. v. Hartford Accident & Indem. Co.*, 187 Cal. App. 3d 513, 519 (Cal. Ct. App. 1986)). Counterclaim Defendants' proposed instruction elides that legal issue and is likely to mislead the jury into believing that Csupó cannot be held liable for the actions of his agents if he did not direct or authorize those actions from the start.

***Second***, as YouTube explained in its opposition to Counterclaim Defendants' summary judgment motion, a jury could find that IPLLC is liable for the fraudulent takedown notices and that Csupó is thus liable as IPLLC's alter ego. *See* Dkt. 296 at 16-18. Counterclaim Defendants' proposed instruction ignores that theory of liability and would incorrectly instruct the jury that Csupó cannot be found liable if those who submitted the fraudulent takedown notices were IPLLC's agents. YouTube's proposed instruction includes an instruction on alter ego liability to correct that omission.

**Stipulated Instruction No. 66: Principal Responsible for Agent's Conduct within Scope of  Authority**

A principal is responsible for harm caused by the wrongful conduct of its agents while acting within the scope of their authority.  An agent is always responsible for harm caused by their own wrongful conduct, whether or not the principal is also liable.

*Authority*:  This proposed instruction is based on the Judicial Council of California Civil Jury Instructions, Instr. 3700, "Introduction to Vicarious Responsibility".  *See also* Cal. Civ. Code §§ 2295, 2330, 2338, 2339, 2343.

**Stipulated Instruction No. 67: Agent—Scope of Authority Defined**

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.5 (2017).

**Disputed Instruction No. 68: Existence of "Sub-Agent" Relationship: Offered by Plaintiffs and Counterclaim Defendants**

Mr. Csupó contends that MegaFilm's original agent was IPLLC and that IPLLC delegated its power to submit takedown notices to a sub-agent (Endre Holman). An agent can delegate its powers to another person when such delegation is specially authorized by the principal. To "delegate" means that an agent gives part of his or its power to someone else. Once the original agent delegates to the sub-agent, the original agent is not responsible to third persons for the acts of the sub-agent. If you find that the original agent (IPLLC) delegated its power to submit takedown notices to a sub-agent, IPLLC cannot be held not responsible for the acts of the sub-agent.

*Authorities:* This proposed jury instruction is based on sub-sections of California's agency statute that relate to sub-agency relationships, Cal. Civ. Code § 2349, 2351, and the definition of "delegate", *see* DELEGATE, Black's Law Dictionary (11th ed. 2019).

3:20-cv-04423-JD

**Disputed Instruction No. 68 Re: Existence of "Sub-Agent" Relationship;**
**Offered by Counterclaimants**

Mr. Csupó contends that MegaFilm's original agent was IPLLC and that IPLLC delegated its power to submit takedown notices to a sub-agent (Endre Holman).  An agent can delegate its powers to another person when such delegation is specially authorized by the principal.  To "delegate" means that an agent gives part of his or its power to someone else and no longer exercise his or its power.  Once the original agent lawfully delegates to the sub-agent, the original agent is generally not responsible to third persons for the acts of the sub-agent.  However, if the original agent is not completely independent from the sub-agent, or if the delegation is not authorized by the principal, the original agent cannot avoid responsibility.  The original agent also cannot avoid responsibility if it directed, participated in, or ratified the sub-agent's actions.  If you find that the original agent (IPLLC) lawfully delegated its power to submit takedown notices to a sub-agent, and that IPLLC is completely independent from the sub-agent and did not direct, participate in, or ratify the sub-agent's actions, IPLLC cannot be held not responsible for the acts of the sub-agent.

Authority: This proposed jury instruction is based on sub-sections of California's agency statute that relate to sub-agency relationships, Cal. Civ. Code § 2349, 2351, and the definition of "delegate", *see* DELEGATE, Black's Law Dictionary (11th ed. 2019). It is also based on case law. *See George F. Hillenbrad, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 822 (Cal Ct. App. 2002); *Davis v. Wal-Mart Stores Inc.*, 2017 WL 499595, at *3 (C.D. Cal. Feb. 6, 2017).

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 68:**

**Existence of "Sub-Agent" Relationship**

Plaintiffs' and Counterclaim Defendants' proposed instruction closely tracks the relevant California sub-agency statutes.  Under California law, an agent may delegate authority to a sub-agent when "such delegation is specially authorized by the principal." Cal. Civ. Code § 2349. Once the original agent delegates to the sub-agent, "the original agent is not responsible to third persons for the acts of the sub-agent."  Cal. Civ. Code § 2351.  In accord with Sections 2349 and 2351, Plaintiffs' and Counterclaim Defendants' proposed instruction states: "If you find that the original agent (IPLLC) delegated its power to submit takedown notices to a sub-agent, IPLLC cannot be held not responsible for the acts of the sub-agent."

In contrast, the italicized portions from Defendant-Counterclaimants' instruction are not supported by Sections 2349 and 2351:

Once the original agent lawfully delegates to the sub-agent, the original agent is *generally* not responsible to third persons for the acts of the sub-agent.  However, *if the original agent is not completely independent from the sub-agent*, or if the delegation is not authorized by the principal, *the original agent cannot avoid responsibility.  The original agent also cannot avoid responsibility if it directed, participated in, or ratified the sub-agent's actions.*  If you find that the original agent (IPLLC) lawfully delegated its power to submit takedown notices to a sub-agent, *and that IPLLC is completely independent from the sub-agent and did not direct, participate in, or ratify the sub-agent's actions,* IPLLC cannot be held not responsible for the acts of the sub-agent.

Simply put, Defendant-Counterclaimants' extra-statutory (and confusing) requirements should not be presented to the jury.  Plaintiffs' and Counterclaim Defendants' proposal, which adheres closely to the relevant statutes, should be adopted instead.

3:20-cv-04423-JD

**DISPUTED INSTRUCTION NO. 68—COUNTERCLAIMANTS' POSITION**

YouTube's proposed instruction provides the jury with necessary context regarding the nature and scope of a sub-agency relationship. As YouTube explained in its opposition to Counterclaim Defendants' summary judgment motion, California Civil Code Sections 2349 and 2351 "contemplate a situation where an agent appoints somebody completely independent to assume a responsibility." *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 822 (Cal. Ct. App. 2002) (quoting trial court with approval). It "does not provide an escape hatch" for companies to avoid liability when they act through their employees and representatives, as corporate entities must. *Id.* at 824. Thus, where there "is no evidence [the principal] could control the acts of [the sub-agent] or that [the principal] agreed [the agent] would be absolved of liability when it" delegated its duties to the sub-agent, the agent is not absolved of liability for the actions of the sub-agent. *See id.* Beyond that, an agent remains liable for its own actions if it directs, participates in, or ratifies a sub-agent's wrongful conduct. *See Davis v. Wal-Mart Stores Inc.*, No. 2:16-CV-9480-JFW (AJWx), 2017 WL 499595, at *3 (C.D. Cal. Feb. 6, 2017) (agent is liable for subagent's conduct if agent "improperly co-operates in the latter's acts or omissions" (quoting *Baisley v. Henry*, 55 Cal. App. 760, 763 (Cal. Ct. App. 1921))). YouTube's instruction clarifies these important points about California sub-agency law, which are absent from Counterclaim Defendants' instruction.

**Disputed Instruction No. 69: Damages for Violation of 17 U.S.C. § 512(f): Offered by Plaintiffs and Counterclaim Defendants**

If you find for YouTube and Google on YouTube and Google's counterclaim against Pirate Monitor Ltd. or Mr. Csupó for submitting false takedown requests in violation of 17 U.S.C. § 512(f), you also must decide how much money will reasonably compensate YouTube and Google for the harm. This compensation is called "damages."

YouTube and Google must prove the amount of their damages by the preponderance of the evidence.  You must not speculate or guess in awarding damages.

YouTube and Google may recover for any damages, including actual damages and costs proximately caused by Pirate Monitor Ltd.'s or Mr. Csupó's false statements.

Alternatively, you may award YouTube and Google nominal damages for an injury incurred as a result  of a § 512(f) misrepresentation.  If you find for YouTube and Google but you find that YouTube and Google failed to prove actual damages as defined in these instructions, you must award nominal damages.  Nominal damages may not exceed one dollar.

YouTube claims that it suffered actual damages as a result of the defendants' takedown notices.  YouTube claims that its actual damages are the cost of its investigation and processing of the takedown notices.

*Authorities:* There is no Ninth Circuit Model Jury Instruction for this issue.  This  instruction is informed by the text of 17 U.S.C. § 512(f); the Judicial Council of California Civil  Jury Instruction (CACI) 3900, entitled Introduction to Tort Damages—Liability Contested; and  case law—*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

**Disputed Instruction No. 69 Re: Damages for Violation of 17 U.S.C. § 512(f):
Offered by Counterclaimants**

If you find for YouTube and Google on YouTube and Google's counterclaim against Pirate Monitor Ltd. or Mr. Csupó for submitting false takedown requests in violation of 17 U.S.C. § 512(f), you also must decide how much money will reasonably compensate YouTube and Google for the harm. This compensation is called "damages."

YouTube and Google must prove the amount of their damages by the preponderance of the evidence. However, YouTube does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The amount of damages must include an award for all harm that Pirate Monitor LTD or Mr. Csupó was a substantial factor in causing, even if the particular harm could not have been anticipated. YouTube may recover for any damages, including actual damages, costs, and attorney's fees, caused by Pirate Monitor LTD's or Mr. Csupó's false statements.

Alternatively, you may award YouTube and Google nominal damages for an injury incurred as a result of a § 512(f) misrepresentation. If you find for YouTube and Google but you find that YouTube and Google failed to prove actual damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

YouTube claims that it suffered actual damages as a result of the defendants' takedown notices. YouTube claims that its actual damages are the cost of its investigation and processing of the takedown notices, including the attorneys' fees.

Authority: There is no Ninth Circuit Model Jury Instruction for this issue. This instruction is informed by the text of 17 U.S.C. § 512(f); the Judicial Council of California Civil Jury Instruction (CACI) 3900, entitled Introduction to Tort Damages—Liability Contested; and case law—Lenz v. Universal Music Corp., 815 F.3d 1145 (9th Cir. 2016).

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 69:**

**Damages for Violation of 17 U.S.C. § 512(f)**

The parties largely agree on the instruction for damages under 17 U.S.C. § 512(f), but dispute whether attorney's fees are available.  Plaintiffs and Counterclaim Defendants contend that the plain language of 17 U.S.C. § 512(f) bars Defendant-Counterclaimants' claims for attorneys' fees, and Defendant-Counterclaimants argue that they entitled to attorneys' fees – including for the entire case.  This issue has been fully briefed in Mr. Csupó and Pirate Monitor's motion for summary judgment, *see* ECF No. 260 at 18; ECF No. 296 at 20-22; ECF No. 299 at 3-4, so Plaintiffs will not repeat those arguments here.  In any event, the amount of attorneys' fees (if any) should be decided by the Court, so there is no need to instruct the jury on this issue.  *Evanston Ins. Co. v. Clartre, Inc.*, 2:14-CV-00085-BJR, 2016 WL 1105799, at *2 (W.D. Wash. Mar. 22, 2016) ("The question of award of attorney's fees, as well as what amount of attorney's fees qualify as "reasonable," is a question for the court.") (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) and *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

**DISPUTED INSTRUCTION NO. 69—COUNTERCLAIMANTS' POSITION**

YouTube's proposed instruction provides important context to the jury on the issues of causation and damages. ***First,*** it provides guidance about how the jury should consider the issue of causation. That guidance is necessary to avoid jury confusion regarding the applicable legal standard. ***Second,*** it clarifies that YouTube need not prove the exact amount of damages that would reasonably compensate it for the harm it suffered. *See* Judicial Council of California Civil Jury Instruction (CACI) 3900. ***Third***, the instruction clarifies the categories of damages that are recoverable under the statute. As YouTube explained in its summary judgment opposition (Dkt. 296 at 20-22), YouTube's litigation costs and fees are a proper element of its damages claim. *See, e.g.*, *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2016) (the plaintiff's litigation costs and attorneys' fees "arose as a result of the injury incurred"). YouTube's instruction makes clear that its damages may include those attorney's fees.

1
2

**Disputed Instruction No. 70: Unclean Hands: Offered by Plaintiffs and Counterclaim**
**Defendants**

3
4

YouTube and Google cannot recover against Pirate Monitor Ltd. or Mr. Csupó if they

5

had unclean hands.  YouTube and Google had unclean hands if their conduct was inequitable and

6

their conduct relates to their claim against Pirate Monitor Ltd. and Mr. Csupó and harmed Pirate

7

Monitor Ltd. and/or Mr. Csupó.

8
9
10

*Authorities:* This instruction is based on case law regarding unclean hands. *Metro-Goldwyn-*

11

*Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) ("'To

12

establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff;

13

(2) that the plaintiff's conduct directly relates to the claim which it has asserted against the

14

defendant; and (3) plaintiff's conduct injured the defendant.'") (quoting *Survivor Productions*

15

*LLC v. Fox Broadcasting Co.,* 2001 WL 35829270, at *3 (C.D.Cal. June 12, 2001)); *Burger v.*

16

*Kuimelis*, 325 F. Supp. 2d 1026, 1040 (N.D. Cal. 2004) (The unclean hands doctrine "closes the

17

doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in

18

which he seeks relief, however improper may have been the behavior of the defendant. In

19

California, the unclean hands doctrine applies not only to equitable claims, but also to legal

20

ones.") (cleaned up).

21
22
23
24
25
26
27
28

3:20-cv-04423-JD

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 70: Unclean Hands**

Mr. Csupó and Pirate Monitor Ltd.'s affirmative defense of unclean hands is grounded in Defendants and Counterclaimants' inequitable conduct of encouraging copyright infringement via YouTube.  "'To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant.'" *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (quoting *Survivor Productions LLC v. Fox Broadcasting Co.,* 2001 WL 35829270, at *3 (C.D.Cal. June 12, 2001)); *see also Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1040 (N.D. Cal. 2004) ("The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones.") (cleaned up).

Plaintiffs' and Counterclaim Defendants' proposal is in accord with this case law. Defendant-Counterclaimants have not offered a counter-proposal, nor have they suggested any edits to Plaintiffs' and Counterclaim Defendants' proposal (other than to delete it in its entirety). Accordingly, Plaintiffs and Counterclaim Defendants respectfully request that the Court adopt their proposal.

**DISPUTED INSTRUCTION NO. 70—COUNTERCLAIMANTS' POSITION**

An instruction on unclean hands is both unnecessary and improper. Unclean hands is an equitable defense. *See*, *e.g.*, *Metal Jeans, Inc. v. Metal Sport, Inc.*, 987 F.3d 1242, 1244 (9th Cir. 2021) ("The doctrine of unclean hands arises in equity . . ."); *United States v. Kaczynski*, 551 F.3d 1120, 1129 (9th Cir. 2009) ("The doctrine of unclean hands is an equitable doctrine . . ."). There is no jury right to an equitable claim or defense. *See Granite State Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) ("no right to a jury exists" for equitable claims). Moreover, Counterclaim Defendants have not identified any case where unclean hands was a defense, let alone a successful defense, to a 512(f) claim. Instead, their cases are about copyright infringement or California contract law. And Counterclaim Defendants have failed to substantiate the affirmative defense with any evidence that YouTube played any role in the transmission of fraudulent takedown notices, rendering a jury instruction unnecessary.

**Disputed Instruction No. 71: In Pari Delicto: Offered by Plaintiffs and Counterclaim Defendants**

Pirate Monitor Ltd. and Mr. Csupó claim that YouTube and Google may not recover because YouTube and Google are equally responsible for the harmful conduct. To succeed, Pirate Monitor Ltd. and Mr. Csupó must prove all of the following: 1. That YouTube and Google have economic strength at least equal to Mr. Csupó and Pirate Monitor Ltd.; 2. That YouTube and Google are at least equally responsible for the harmful conduct as Pirate Monitor Ltd. and Mr. Csupó; and 3. That YouTube and Google were not compelled by economic pressure to engage in the harmful conduct.

*Authorities:* This is based on the Judicial Council of California Civil Jury Instructions, Instr. 3431, "Affirmative Defense—In Pari Delicto".

**Plaintiffs' and Counterclaim Defendants' Argument re Disputed Instruction No. 71: In Pari Delicto**

Mr. Csupó and Pirate Monitor, Ltd.'s affirmative defense of in pari delicto is grounded in Defendant-Counterclaimants' inequitable conduct of encouraging copyright infringement via YouTube. "The doctrine of in pari delicto dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed in pari delicto, and the law will aid neither, but rather, will leave them where it finds them." *Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 1143, 26 Cal. Rptr. 3d 401, 404 (2005).

Plaintiffs' and Counterclaim Defendants' proposal is in accord with this case law. Defendant-Counterclaimants have not offered a counter-proposal, nor have they suggested any edits to Plaintiffs' and Counterclaim Defendants' proposal (other than to delete it in its entirety). Accordingly, Plaintiffs and Counterclaim Defendants respectfully request that the Court adopt their proposal.

**DISPUTED INSTRUCTION NO. 71—COUNTERCLAIMANTS' POSITION**

Similar to unclean hands, an instruction on *in pari delicto* is unnecessary and improper. Like unclean hands, *in pari delicto* is an equitable defense not submitted to the jury. *See*, *e.g.*, *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 278 (9th Cir. 1976) ("The equitable defense of *in pari delicto* . . ."); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986) (explaining "the equitable doctrine of *in pari delicto*"). And instead of pointing to even a single case where *in pari delicto* was asserted against a copyright infringement or 512(f) claim and included in the jury instructions, Counterclaim Defendants cite to a plainly inapplicable model jury instruction for a California state law antitrust claim under the Cartwright Act.