| | |
|---|---|
| George A. Zelcs* | KEKER, VAN NEST & PETERS LLP |
| *gzelcs@koreintillery.com* | ROBERT A. VAN NEST - # 84065 |
| Randall P. Ewing, Jr.* | rvannest@keker.com |
| *rewing@koreintillery.com* | DAN JACKSON - # 216091 |
| Ryan Z. Cortazar * | djackson@keker.com |
| *rcortazar@koreintillery.com* | JULIA L. ALLEN - # 286097 |
| **KOREIN TILLERY, LLC** | jallen@keker.com |
| 205 North Michigan, Suite 1950 | TRAVIS SILVA - # 295856 |
| Chicago, IL  60601 | tsilva@keker.com |
| Telephone: (312) 641-9750 | ANNA PORTO - # 319903 |
| Facsimile: (312) 641-9751 | aporto@keker.com |
| | LUKE APFELD - # 327029 |
| Stephen M. Tillery* | lapfeld@keker.com |
| *stillery@koreintillery.com* | AMOS J. B. ESPELAND - # 332895 |
| Steven M. Berezney, CA Bar #329923 | aespeland@keker.com |
| *sberezney@koreintillery.com* | 633 Battery Street |
| Carol O'Keefe* | San Francisco, CA 94111-1809 |
| *cokeefe@koreintillery.com* | Telephone:    415 391 5400 |
| **KOREIN TILLERY, LLC** | Facsimile:    415 397 7188 |
| 505 North 7th Street, Suite 3600 | |
| St. Louis, MO  63101 | *Attorneys for Defendants and Counterclaimants* |
| Telephone: (314) 241-4844 | |
| Facsimile: (314) 241-3525 | |

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and Counterclaim Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**JOINT SUBMISSION REGARDING DEFENDANTS' SEALING REQUESTS**<br><br>Dept.:     Courtroom 11 – 19th Floor<br>Judge:     Hon. James Donato<br><br>Date Filed: July 2, 2020<br><br>Trial Date: June 12, 2023 |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>Counterclaim Defendants. | |

*Additional Counsel*

Joshua Irwin Schiller, CA Bar #330653
*jischiller@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Philip C. Korologos*
*pkorologos@bsfllp.com*
Jeffrey Waldron*
*jwaldron@bsfllp.com*
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

 *Admitted *pro hac vice*

*Attorneys for Plaintiffs and Counterclaim-Defendants*

DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
QIFAN HUANG, SBN 339672
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email:   dkramer@wsgr.com
             lwhite@wsgr.com
             qhuang@wsgr.com

*Attorneys for Defendants and Counterclaimants*

Pursuant to Civil Local Rules 7-11 and 79-5 and this Court's Standing Order for Civil Cases,[1] Defendants-Counterclaimants YouTube, LLC and Google LLC ("YouTube") hereby move for an order sealing limited portions of documents submitted in connection with parties' pretrial filings in this case. Plaintiffs do not seek to seal any documents.

**YouTube's Position:**

**A.     YouTube's Sealing Requests Relating to Parties' Joint Pretrial Statement**

Joint Pretrial Statements may be filed under seal where there are "compelling reasons" to do so. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-82 (9th Cir. 2006). "In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records" exist when necessary to protect a party's "trade secrets." *See id.* at 1179 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Put differently, "the common law right of inspection has bowed before the power of a court to insure that its records are not used … as sources of business information that might harm a litigant's competitive standing." *FTC v. Qualcomm Inc.*, 2019 WL 95922, at *3 (N.D. Cal. Jan 3. 2019) (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)). This includes "sensitive business information" about "non-public business practices." *Google Inc. v. Eolas Techs. Inc.*, 2016 WL 9243337, at *1-2 (N.D. Cal. Mar. 22, 2016).

In connection with the Joint Pretrial Statement, YouTube seeks to seal only: (1) specific information concerning the operation of YouTube's Copyright Match Tool and the grouping logic under YouTube's repeat infringer policy; and (2) specific data revealing or purporting to reveal the share of private and unlisted videos in YouTube's corpus. Consistent with the Local Rules, YouTube's request to seal is narrowly tailored to protect only competitively sensitive, confidential information. *See* Civil L.R. 79-5(a), (c).

*First*, YouTube seeks to seal limited information about how its Copyright Match Tool functions—namely, the tool's specific threshold for the detection of matches. *See* Declaration of

---

[1] By agreement of the parties and pursuant to ¶ 31 of Your Honor's Standing Order for Civil Cases, the Parties submit a combined administrative motion to seal, which supersedes the interim administrative motions related to Plaintiffs' motions in limine and YouTube's oppositions thereto (Dkt. No. 315), YouTube's motions in limine and Plaintiffs' oppositions thereto (Dkt. No. 311), and parties' Joint Pretrial Statement (Dkt. No. 322).

Qifan Huang ("Huang Decl.") Ex. 14 at 4. The threshold, which is expressed as both the percentage of one video that must be detected in a second video in order for those videos to be identified as potential matches and surfaced for review in the Copyright Match Tool and the minimum length of a match, is highly sensitive, confidential commercial information. Declaration of Chenyuan Zhu ("Zhu Decl.") at 1-2. YouTube has developed its copyright management tools, including the Copyright Match Tool, over the course of many years and at significant expense. *Id.* The public disclosure of this information would reveal to competitors how the Copyright Match Tool technically functions and enable them to mimic YouTube's proprietary technology without having to expend the same resources. *Id.* Given similar risks of competitive harm, courts frequently find that compelling reasons exist to seal technical information about how a party's proprietary technology functions. *See, e.g.*, *DZ Reserve, et al. v. Meta Platforms, Inc.*, ("*DZ Reserve*"), No. 3:18-cv-04978-JD, Dkt. No. 350 at 1-2 (N.D. Cal. Dec. 3, 2021) (Donato., J.) (finding "compelling reasons" to seal information regarding "technical processes and functionalities of Meta's products and systems"); *Finjan, Inc. v. Cisco Sys. Inc.*, 2019 WL 4168952, at *2 (N.D. Cal. Sept. 3, 2019) (same for material that "reveals the identification, organization, and/or operation of Cisco's proprietary products"); *Weeks v. Google LLC*, 2019 U.S. Dist. LEXIS 102709, at *3 (N.D. Cal. May 7, 2019) (same for materials that included "technical details" and "composition and design of technology").

      Sealing is also warranted here since public disclosure of this precise threshold for detection would enable bad actors to abuse YouTube's systems. *See, e.g.*, *DZ Reserve*, Dkt. No. 325-5 (N.D. Cal. July 9, 2021) (requesting sealing of "details about how Facebook detects, restricts, and enforces against different types of fake and duplicate accounts"), *sealing granted by* Dkt. No. 350; *Davis v. Pinterest, Inc.*, 2022 WL 4472067, at *2 (N.D. Cal. Sept. 26, 2022) (sealing "information about Pinterest's repeat infringer and takedown policies under the Digital Millennium Copyright Act, which could lead to third-party abuse or competitive harm if disclosed publicly"); *Adtrader, Inc. v. Google LLC*, 2020 WL 6391210, at *2 (N.D. Cal. Mar. 24, 2020) (compelling reasons standard met where disclosure of information could reveal to "bad actors the capabilities of [defendant's] systems" and make it easier for them to "circumvent"

those systems). In particular, disclosure of this information would allow unscrupulous individuals to upload content that is designed to circumvent YouTube's systems and avoid detection by the Copyright Match Tool. Zhu Decl. at 1-2. YouTube further submits that the public does not have a meaningful interest in this specific threshold figure, which appears only in a footnote of Plaintiffs' brief (and the deposition transcript cited therein). *See* Dkt. No. 265 at 4 n.4 (citing Dkt. No. 263-6).

For the same reasons as above, YouTube seeks to seal specific information concerning how it groups copyright strikes under the repeat infringer policy. *See* Huang Ex. 14 at 6. Disclosure of the grouping logic for copyright strikes would pose serious risks of abuse by encouraging claimants to circumvent YouTube's copyright policies and effectuate unwarranted terminations, undermining the careful balance YouTube has struck between the interests of claimants and users after years of evaluations. *See* Zhu Decl. at 4.

*Second*, YouTube seeks to seal a specific, highly sensitive statistic concerning the share of private and unlisted videos on its service. *See* Huang Ex. 14 at 4. Disclosure of this data point would reveal how often users of YouTube's service utilize the private or unlisted videos functions, and so disclose the relative value users afford functions and features related to those different categories of content. This would point YouTube's competitors to where they should direct their resources and focus their product development efforts, saving them the expense and effort of figuring that out by themselves. *See* Zhu Decl. at 2. Moreover, as YouTube's counsel explained, disclosure of specific data about YouTube's scale and use may significantly impact YouTube and Google's business even beyond this. Simply put, "it moves markets." Dkt. No. 214 (Dec. 15, 2022 Hearing Tr.) at 21:13; *see also* Zhu Decl. at 2. Given the potential for such harm, courts have frequently found that data about a product's scale and user base warrants sealing. *See Adtrader, Inc. v. Google LLC*, 2020 U.S. Dist. LEXIS 206823, at *5-6 (N.D. Cal. Feb. 24, 2020) (finding "compelling reasons" to seal "information about the operation and scale of Google's advertising products"); *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 2019 WL 6612012, at *4 (N.D. Cal. Dec. 5, 2019) (finding "compelling reasons" to seal "the number of customers using Plaintiff's products"); *Huawei Techs., Co. v. Samsung Elecs. Co. Ltd.*, 2018 WL 1784065, at *2

(N.D. Cal. Apr. 13, 2018) (finding "compelling reasons" to seal metrics regarding "production capacity"), *remanded on other grounds by Huawei Techs. Co. v. Samsung Elecs. Co.*, 757 F. App'x 1011 (Fed. Cir. 2019); *see also United States v. Chen*, 2022 WL 2789557, at *2 (N.D. Cal. July 14, 2022) (finding "compelling reasons" to seal information that could be used to ascertain "sales volumes").

**B.      YouTube's Sealing Requests Relating to the Parties' Motions in Limine**

Documents filed in connection with a non-dispositive matter, like the parties' respective motions in limine and oppositions thereto (Dkt. Nos. 311 & 315), may be sealed where there is "good cause" to do so. *See, e.g., Kamakana*, 447 F.3d at 1180; *Open Text S.A. v. Box, Inc.,* 2015 U.S. Dist. LEXIS 111174, at *4-12 (N.D. Cal. Aug. 20, 2015) (Donato, J.) (applying good cause standard to motions in limine). Under that standard, materials may be sealed "so long as the party seeking sealing makes a 'particularized showing' under the 'good cause' standard of Federal Rule of Civil Procedure 26(c)." *Brickman v. Fitbit, Inc.,* 2017 U.S. Dist. LEXIS 123663, at *3 (N.D. Cal. Aug. 4, 2017) (citations omitted).[2]

YouTube's accompanying declarations (of Zhu, Diab, Suk, Wu (at Dkt. No. 233-1), and Agrawal (at Dkt. No. 301-1)) detail the specific grounds demonstrating good cause for each of YouTube's sealing requests, which fall into the following categories:

**Category 1:** Specific pricing terms in YouTube's business contracts that, if disclosed, would cause competitive harm by damaging YouTube's standing with its existing licensors, prejudicing its ability to negotiate future license agreements, and allowing YouTube competitors to benefit from the knowledge of YouTube's negotiation of these royalties to price their own products. *See* Declaration of Waleed Diab and Declaration of Joanne Suk. The four documents containing this category of information are Huang Ex. 2 (standard YouTube Content Licensing Agreement), Ex. 3 (standard YouTube Publishing License Agreement), Ex. 4 (standard YouTube Sound Recording and Audiovisual Content License), and Ex. 7 (publishing licensing agreement between YouTube and Maria Schneider's publisher, which contains pricing terms). Sealing of

---

[2] In any event, YouTube's sealing requests and the evidence supporting them would also satisfy the "compelling reasons" standard for dispositive motions. *See Kamakana*, 447 F.3d at 1180.

this information is warranted under this Court's past decisions. *See, e.g., CZ Servs., Inc. v. Express Scripts Holding Co. et al.,* No. 3:18-cv-04217-JD, Dkt. No. 347 (N.D. Cal. Aug. 21, 2020) (Donato, J.) (requesting sealing of pricing terms in contracts), *sealing granted by* Order, Dkt. No. 379 (N.D. Cal. Aug. 31, 2020); *GoPro Hong Kong Ltd. v. 2b Trading, Inc.*, 2017 U.S. Dist. LEXIS 27380, at *5 (Donato, J.) (sealing "pricing and payment [terms]"); *Open Text S.A. v. Box, Inc.,* 2014 WL 7368594, at *3 (N.D. Cal. Dec. 26, 2014) (Donato, J.) (granting sealing motions as to "sensitive information like pricing terms, royalty rates, [and] minimum payment terms").

**Category 2:** Technical engineering documents that reveal highly sensitive confidential information that, if disclosed, would bring competitive harm to Defendants and allow potential competitors an unfair advantage. *See* Dkt. No. 233-1 (Wu Decl.). The two documents containing this category of information are Huang Ex. 10 (Expert Report of Joseph M. Winograd, Ph.D. for Plaintiffs, which reveals technical details of YouTube's recommendation system) and Ex. 11 (internal page from YouTube Developer's Handbook entitled "Life of a YouTube upload" that discusses YouTube's technical infrastructure and the design of various system components). Sealing of the information falling in this category is warranted. *See, e.g., DZ Reserve*, Dkt. No. 350 at 1 (Donato., J.) (sealing information regarding "technical processes and functionalities of Meta's products and systems, . . . internal analyses, modeling, and assessments"); *Carnegie Mellon Univ. v. LSI Corp. et al.,* No. 3:18-cv-04571-JD, Dkt. No. 221 (N.D. Cal. Sept. 29, 2021) (Donato, J.) (sealing "proprietary technical information" regarding products); *see also Finjan*, 2019 WL 4168952 at *2 (sealing material that "reveals the identification, organization, and/or operation of Cisco's proprietary products"); *Synchronoss Techs., Inc. v. Dropbox Inc.*, 2017 WL 11527607, at *2 (N.D. Cal. Dec. 27, 2017) (same for "proprietary business information about the architecture of [party's] technology").

**Category 3:** Product design, metrics, and statistics about Content ID, Copyright Match Tool, and other YouTube functions that, if disclosed, may result in competitive harm and invite abuse from malicious actors seeking to circumvent YouTube's systems. *See* Dkt. No. 233-1 (Wu Decl.) & Zhu Decl. The three documents containing this category of information are Huang Ex.

10 (Expert Report of Joseph M. Winograd, Ph.D. for Plaintiffs, which discloses minimum detection thresholds for Content ID's matching functions and YouTube's Copyright Match Tool), Ex. 9 (same), and Ex. 12 (excerpts of the deposition transcript of Amy Wu, which discloses certain YouTube functions' contribution to total YouTube watch time). As shown in the Wu and Zhu Declarations, competitors who have access to this trade secret information could use it to their advantage on product design and resource allocation. Sealing of the information falling in this category is warranted. *See, e.g., DZ Reserve*, Dkt. No. 350 at 1 (Donato., J.) (sealing information regarding "technical processes and functionalities of Meta's products and systems, business strategies, . . . internal analyses, modeling, and assessments"); *see also Weeks*, 2019 U.S. Dist. LEXIS 102709 at *3 (sealing materials that included "Google's internal testing processes, procedures, and confidential analyses; proprietary data; technical details and research results; . . . [and] composition and design of technology"); *Pace Anti-Piracy, Inc. v. Inside Secure*, 2018 WL 10517182, at *3 (N.D. Cal. Jan. 8, 2018) (sealing information regarding "technical features of [defendant's] software").

**Category 4:** Operational policies and guidelines about YouTube's copyright management tools, including details about YouTube's copyright policies and mechanisms to counter abuse that, if disclosed, would allow third parties to circumvent these policies and tools. *See* Zhu Decl. The sole exhibit containing this category of information is Huang Ex. 1 (YouTube's interrogatory response, which discusses the grouping logic of copyright strikes). Sealing of the information falling into this category is warranted. *See DZ Reserve*, Dkt. No. 325 (N.D. Cal. filed July 9, 2021) (requesting sealing of "details about how Facebook detects, restricts, and enforces against different types of fake and duplicate accounts"), *sealing granted by DZ Reserve*, Dkt. No. 350; *see also e.g.*, *Davis*, 2022 WL 4472067 at *2 (sealing "information about Pinterest's repeat infringer and takedown policies under the Digital Millennium Copyright Act, which could lead to third-party abuse or competitive harm if disclosed publicly"); *Kinsley v. Udemy, Inc.*, 2021 WL 1222489, at *7 (N.D. Cal. Mar. 31, 2021) (granting motion to seal internal copyright policies); *Bohannon v. Facebook, Inc.*, 2019 WL 188671, at *5-6 (N.D. Cal. Jan. 14, 2019) (sealing "a list of factors [defendant] considers" as part of an internal "customer assistance policy" because

disclosure of such information would enable users to exploit the policies and practices).

**Category 5:** Confidential financial information, including YouTube's revenues, costs, and profit that, if disclosed, would cause competitive harm by damaging YouTube's standing with its existing advertising partners and content creators and prejudicing its ability to negotiate future license agreements. *See* Dkt. No. 301-1 (Agrawal Decl.). The three documents containing this category of information are Huang Exs. 8 & 13 (November 17, 2022 Expert Report of Hal J. Singer, Ph.D. for Plaintiffs, which lists non-public monthly YouTube financial information from January 2017 to December 2020), and Ex. 6 (spreadsheet summarizing YouTube's costs in developing and operating Content ID). Sealing of the information falling in this category is warranted. *See, e.g., GoPro Hong Kong Ltd.*, 2017 U.S. Dist. LEXIS 27380, at *5-6 (sealing business information including "forecasts" and "marketing expenditures"); *see also Sumotext Corp. v. Zoove, Inc.*, 2020 WL 836737, at *2 (N.D. Cal. Feb. 20, 2020) (sealing monthly financial information); *Arista Networks, Inc. v. Cisco Sys. Inc.*, 2018 WL 2010622, at *2-8 (N.D. Cal. Apr. 30, 2018) (sealing "financial information" and "financial data"); *Juicero, Inc. v. iTaste Co.*, 2017 WL 8294276, at *2 (N.D. Cal. June 28, 2017) (sealing "confidential financial and business information").

**Category 6:** Personally identifiable information of a YouTube employee and third-party users that is irrelevant to the issues in dispute and, if disclosed, would intrude on their privacy. *See* Dkt. No. 233-1 (Wu Decl.) & Zhu Decl. The two documents containing this information are Huang Ex. 5 (identifying IP address and user ID) and Ex. 12 (identifying physical address). Sealing of this information is warranted. *See, e.g., Firstface Co., Ltd. v. Apple, Inc.,* 2022 U.S. Dist. LEXIS 200069, at *3-4 (N.D. Cal. Nov. 2, 2022) (Donato, J.) (sealing personally identifying information of employees); *Proofpoint, Inc. v. BTM Comercio De Equipamentos E Softwares De Informatica*, 2018 U.S. Dist. LEXIS 49805, at *8 (N.D. Cal. Mar. 26, 2018) (sealing "contact information of current and former . . . employees, such as emails and telephone numbers").

**Plaintiffs' Position**

Plaintiffs oppose Defendants' motion to seal certain portions of documents that reflect: (1)

7
JOINT SUBMISSION REGARDING DEFENDANTS' SEALING REQUESTS
Case No. 3:20-cv-04423-JD

metrics related to YouTube's Watch Next/Autoplay functions that do not merit confidentiality; (2) portions of the Joint Pretrial Statement and Defendants' interrogatory responses regarding YouTube's failure to implement a reasonable repeat infringer policy; and (3) the relative number of private or unlisted videos versus public videos on the platform.  The specific portions of documents that Plaintiffs oppose sealing are identified at the end of the joint submission.

*First*, Plaintiffs oppose Defendants' motion to seal portions of testimony and the Expert Report of Joseph M. Winograd that divulge metrics related to YouTube's Watch Next and Autoplay functions.  *See* Huang Exs. 10, 12.  The metrics in question reflect: (1) the percentage of total watch time attributable to these functions, and (2) the role of these functions in driving watch time across the YouTube platform.  Defendants' conclusory assertions and speculation concerning the purported "unfair insight into YouTube's operational details" this information would provide to competitors does not amount to the "'particularized showing' required to seal any individual court record." *In re Google Play Store Antitrust Litig.*, 556 F. Supp. 3d 1106, 1107 (N.D. Cal. 2021) (Donato, J.); *see also* ECF 233-1, Wu Decl. at 2 (speculating that "a rival video streaming service may analyze the various sources of YouTube's watch time data to determine what product and functionality to develop next or invest in that would bring about the most significant increase in user engagement, saving such service the significant time and effort YouTube had devoted into determining product development directions and priorities").

*Second*, Plaintiffs oppose Defendants' motion to seal portions of the Joint Pretrial Statement and Defendants' interrogatory responses related to the details of YouTube's repeat infringer policy that make it inadequate and unreasonable under the DMCA.  *See* Huang Exs. 1, 14.  Defendants claim this material must be sealed because "[p]ublic disclosure . . . would instruct bad actors on how to circumvent termination under YouTube's copyright policies, or allow previously-terminated users to circumvent YouTube's efforts to remove additional content linked to them, and therefore impact YouTube's ability to identify and terminate these offenders, or encourage copyright claimants to effectuate unwarranted channel terminations."  Zhu Decl. at 4.  But that reasoning is illogical.  The information Defendants seek to seal relates to YouTube's *failure* to enforce a reasonable repeat infringer policy.  The numerous users that YouTube has

failed to terminate are already aware of how to circumvent termination, having already done so. And Defendants' purported fear that some number of additional users who were previously unaware of the loophole identified in their documents may now be prompted take advantage of it is yet more evidence that their repeat infringer policy is insufficient and not in compliance with the requirements of the DMCA.  In any event, such speculative and self-serving "fear" is insufficient to overcome the "'strong presumption in favor of access to court records'" which is a "hallmark of our federal judiciary." *Carnegie Mellon Univ. v. LSI Corp.*, No. 18-CV-04571-JD, 2020 WL 5592992, at *1 (N.D. Cal. Sept. 18, 2020) (Donato, J.) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  Further, Defendants' claim that disclosure of this information would "encourage copyright claimants to effectuate unwarranted channel terminations" also does not justify sealing.  The channel terminations in question would only be "unwarranted" when applying the flawed logic of Defendants' repeat infringer policy, which they are attempting to keep from the public eye.

*Third*, Plaintiffs oppose Defendants' motion to seal a portion of the Joint Pretrial Statement reflecting the fact that proportion of videos on YouTube are private or unlisted and therefore unsearchable and not susceptible to being located and taken down by copyright holders. *See* Huang Ex. 14.  The relative proportion of videos that are private or unlisted is not a "highly sensitive statistic" that would "point YouTube's competitors to where they should direct their resources and focus their product development efforts, saving them the expense and effort of figuring that out by themselves." *See supra* at 3.

**YouTube's Response**

Plaintiffs offer objections to a handful of sealing requests, but each is meritless.

*First*, Plaintiffs oppose Defendants' request to seal internal statistics regarding the specific amount of YouTube watch time attributable to YouTube's Watch Next and Autoplay functions. As explained in the previously-submitted Declaration of Amy Wu (Dkt. No. 233-1), YouTube's competitors may use that data, which is the product of extensive user research and internal experiments by YouTube, to determine which features would bring about the most significant

increase in user engagement and direct their product development efforts and resources accordingly. *See* Dkt. No. 233-1 (Wu Decl.) at 7. Plaintiffs claim that this reasoning is "speculation," seemingly because YouTube cannot forecast with perfect certainty which current or potential competitors may use this information. Sealing does not require clairvoyance. Indeed, it would be speculative for YouTube to name names, especially since there may be entities unknown to YouTube that are planning to launch new services that compete with YouTube and that would benefit from knowledge of these internal statistics.

*Second*, Plaintiffs' argument against sealing the details of YouTube's repeat infringer policy and its enforcement is specious. Plaintiffs argue that, because certain bad actors may already know how to circumvent YouTube's enforcement of its repeat infringer policy, there is no harm in disclosing to everyone the specific details of how YouTube identifies accounts for termination and enforces its policies. But, the disclosure Plaintiffs are advocating would *enable* still more users to circumvent YouTube's copyright policies and undermine the interests of copyright owners, which Plaintiffs claim to represent. Moreover, abuse of YouTube's repeat infringer policy flows both ways. As cases like *YouTube, LLC v. Brady* demonstrate, individuals, motivated by avarice or animus, send knowingly false takedown notices in hope of causing YouTube to terminate a user's account for accumulated copyright strikes. *See* No. 8:19CV353, Dkt. No. 1 (D. Neb. filed Aug. 19, 2019). Disclosure of the highly sensitive grouping logic of copyright strikes may foster such abuse and result in legitimate YouTube channels being wrongfully terminated. Plaintiffs' argument wholly disregards these risks.

*Third*, the relative proportion of videos on YouTube that are private or unlisted is sensitive commercial information that will result in competitive harm, Plaintiffs' characterization notwithstanding. Disclosure of these statistics would reveal how often YouTube users of YouTube's service utilize the private or unlisted videos functions, and so disclose the relative value users afford functions and features related to those different categories of content. This would point YouTube's competitors to where they should direct their resources and focus their product development efforts, saving them the expense and effort of figuring it out by themselves. Other internal metrics and statistics reflect similar concerns about competitive harm.

**Chart Summarizing Plaintiffs' Oppositions and YouTube's Response**

| Huang Ex. Nos. | ECF Nos. | Page:Line Nos. | Plaintiffs' Description | YouTube's Response |
|---|---|---|---|---|
| 1 | 314-3 at 16:31; 315-2 at 16 | 6 | Information about the operations of YouTube's policy for processing takedown notices. | Disclosure risks abuse by bad actors and competitive harm. *See supra* at 2-3, 6-7, 10; Zhu Decl. at 4. |
| 10 | 312-3; 311-7 at 5–91 | Portions of pages 3, 10, 53, 57 | Percentage of YouTube watch time attributable to various YouTube functions.<br><br>Information about YouTube watch time attributable to various YouTube functions. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 5-6, 9-10; Wu Decl. (Dkt. 233-1) at 1-2. |
| 12 | 312-5; 311-8 at 5–15 | Portions of pages 82-85 | Percentage of YouTube watch time attributable to various YouTube functions. | Disclosure risks competitive harm because it reflects internal metrics and statistics. *See supra* at 5-6, 9-10; Wu Decl. (Dkt. 233-1) at 1-2. |
| 14 | 321-1; 322 | 4:9 | Information about relative number private versus public videos on YouTube. | Disclosure risks competitive harm because it reveals features that users value. *See supra* at 3-4, 10; Zhu Decl. at 2. |
| | | 6:2-3 | Information about the operations of YouTube's policy for processing takedown notices. | Disclosure risks abuse by bad actors and competitive harm. *See supra* at 2-3, 6-7, 10; Zhu Decl. at 4. |

|   |   |   |   |
|---|---|---|---|
| 1 |   |   | Respectfully submitted, |
| 2 | Dated: May 18, 2023 | By: | /s/ *Philip C. Korologos* |
|   |   |   | Philip C. Korologos* |
| 3 |   |   | Jeffrey Waldron* |
|   |   |   | BOIES SCHILLER FLEXNER LLP |
| 4 |   |   | 55 Hudson Yards, 20th Floor |
|   |   |   | New York, NY 10001 |
| 5 |   |   | Phone: (212) 446-2300 |
|   |   |   | Fax: (212) 446-2350 |

Joshua Irwin Schiller, CA Bar #330653
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Phone: (415) 293-6800
Fax: (415) 293-6899

George A. Zelcs*
Randall P. Ewing, Jr.*
Ryan Z. Cortazar*
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Stephen M. Tillery*
Steven M. Berezney, CA Bar #329923
Carol O'Keefe*
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Admitted pro hac vice*

*Attorneys for Plaintiffs Schneider, Uniglobe and AST and for Counterclaim Defendants Pirate Monitor Ltd. and Csupo*

| | | |
|---|---|---|
| Dated:  May 18, 2023 | | KEKER, VAN NEST & PETERS LLP |
| | By: | /s/ *Robert A. Van Nest* |
| | | ROBERT A. VAN NEST |
| | | DAN JACKSON |
| | | JULIA L. ALLEN |
| | | TRAVIS SILVA |
| | | ANNA PORTO |
| | | LUKE APFELD |
| | | AMOS J. B. ESPELAND |
| | | |
| | | DAVID H. KRAMER |
| | | LAUREN GALLO WHITE |
| | | QIFAN HUANG |
| | | WILSON SONSINI GOODRICH & ROSATI |
| | | Professional Corporation |
| | | 650 Page Mill Road |
| | | Palo Alto, CA 94304-1050 |
| | | Telephone: (650) 493-9300 |
| | | Email:  dkramer@wsgr.com |
| | |           lwhite@wsgr.com |
| | |           qhuang@wsgr.com |
| | | |
| | | Attorneys for Defendants and Counterclaimants |
| | | YOUTUBE, LLC and GOOGLE LLC |

**ATTORNEY ATTESTATION**

I, Robert A. Van Nest, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(h)(3), I hereby attest that the concurrence in the filing of this document has been obtained from the signatory.

*/s/ Robert A. Van Nest*
Robert A. Van Nest