# Exhibit 1

## to the Declaration of Qifan Huang
## PUBLIC VERSION - REDACTED

| | |
|---|---|
| DAVID H. KRAMER, SBN 168452<br>MAURA L. REES, SBN 191698<br>LAUREN GALLO WHITE, SBN 309075<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300<br>Facsimile: (650) 565-5100<br>Email: dkramer@wsgr.com<br>        mrees@wsgr.com<br>        lwhite@wsgr.com | BRIAN M. WILLEN (admitted *Pro Hac Vice*)<br>WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br>1301 Avenue of the Americas, 40th Floor<br>New York, NY 10019-6022<br>Telephone: (212) 999-5800<br>Facsimile: (212) 999-5801<br>Email: bwillen@wsgr.com |

Attorneys for Defendants and Counterclaimants
YOUTUBE, LLC and GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING LTD., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>    Defendants.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>    Counterclaimants,<br><br>    v.<br><br>PIRATE MONITOR LTD, PIRATE MONITOR LLC, and GÁBOR CSUPÓ,<br><br>    Counterclaim Defendants. | CASE NO.: 3:20-cv-04423-JD<br><br>**DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF MARIA SCHNEIDER'S INTERROGATORIES NOS. 3, 4, 7**<br><br>Judge: Hon. James Donato |

***CONTAINS CONFIDENTIAL AND HIGHLY CONFIDENTIAL***
***ATTORNEYS EYES ONLY INFORMATION***

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the Northern District of California, Defendants and Counterclaimants YouTube, LLC and Google LLC (collectively, "Defendants") hereby respond to Plaintiff Maria Schneider's Interrogatories Nos. 3, 4, and 7 ("Interrogatories") as follows:

## RESPONSES AND OBJECTIONS

All responses to the Interrogatories are based upon the information presently known to Defendants and are given without prejudice to Defendants' right to revise and supplement these responses. An answer to an Interrogatory shall not be deemed a waiver of any applicable objection. Likewise, an answer to an Interrogatory shall not be deemed an admission of any assertions contained in that Interrogatory.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. As a threshold matter, Plaintiffs' prolix Definitions, much like the Complaint, are replete with unsubstantiated assumptions and improper advocacy. Their nested structure, vagueness, and overbreadth render interpreting the Interrogatories themselves (let alone drafting responses to those questions) an unduly burdensome effort that is disproportionate to the needs of this case.

2. Defendants object to the definition of "Document" to the extent it exceeds the scope contemplated by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or other applicable law. Defendants further object to this definition as overly broad and unduly burdensome to the extent it encompasses information not relevant to the parties' claims or defenses and would require Defendants to collect information that is disproportionate to the needs of this case.

3. Defendants object to the definition of "Takedown Notice" as vague, ambiguous, and overly broad. In particular, the definition is vague and ambiguous in its use of the term "request" and the phrases "any other way" and "via Your online platform." Defendants object that the definition is overly broad and unduly burdensome to the extent it extends beyond notices submitted to Defendants. Defendants also object to the definition to the extent it calls for a legal

conclusion as to whether content has been posted or displayed without license or permission. Defendants further object to the definition to the extent it encompasses non-written communications that do not satisfy the requirements set forth in 17 U.S.C. § 512(c)(3). For purposes of responding to the Interrogatories, "Takedown Notice" will be defined as notices that are compliant with 17 U.S.C. § 512(c)(3) and have been submitted through YouTube LLC's online form, *see* "Submit a copyright takedown notice," https://support.google.com/youtube/answer/2807622?hl=en, or to YouTube's designated agent via email, facsimile, or postal mail, *see* "Copyright Contact Information," https://support.google.com/youtube/answer/6005908?hl=en.

4. Defendants object to the definition of "You," "Your," and "Yourself" on the grounds that the definition is overbroad, vague and ambiguous, and unduly burdensome. Defendants further object to the definition to the extent it seeks information not currently in the possession, custody, or control of Counterclaimants. Defendants will respond solely on behalf of themselves (Google LLC and YouTube, LLC), and not any other subsidiaries or affiliates, or any other person or entity. Defendants further object to the definition on the grounds that it includes Counterclaimants' attorneys and requires Defendants to provide a legal conclusion or to produce information that is protected by any privilege, including the attorney-client privilege, work product immunity doctrine, common interest privilege, or any other applicable privilege, immunity, or restriction on discovery. For purposes of responding to the Interrogatories, "You," "Your," and "Yourself" will be defined as Google LLC, YouTube, LLC, and those authorized agents and employees acting on its behalf and within the scope of their agency or employment.[1]

5. Defendants object to the Instructions accompanying Plaintiff's Interrogatories to the extent that such Instructions purport to impose obligations on Defendants in excess of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law, or to the extent that the Instructions purport to require Defendants to take actions or provide information not required by or which

---

[1] Per the parties' agreement, Defendants will produce otherwise discoverable information that is retained by, owned by, possessed by, or in the control of Alphabet Inc.

DEFENDANTS' AMENDED RESPONSE TO MARIA SCHNEIDER'S INTERROGATORY NOS. 3,4,7 -3- CASE NO. 3:20-cv-04423-JD

exceed the scope of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Northern District of California, or any other applicable law.

6. Defendants object to the Instructions as to identification of individuals and "Users" as overbroad and unduly burdensome. In particular, the Instructions require Defendants to collect information (such as dates of hire and home telephone numbers) that is not relevant to the parties' claims or defenses in this action and is not proportional to the needs of the case. Defendants further object to the extent the Instructions seek confidential information relating to third parties or subject to privacy obligations, such home telephone numbers, physical addresses, and IP addresses.

7. Defendants object to the definition of "Relevant Period" insofar as it calls for information beyond the scope of the three-year statute of limitations applicable to Plaintiff's claims. *See* 17 U.S.C. § 507(b).

### SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 3:**

**State the bases (including all facts and the application of law to fact) for Your contention that Defendants are not liable for any alleged infringement that arises by reason of the storage at the direction of users of material residing on the YouTube service.**

**RESPONSE TO INTERROGATORY NO. 3:**

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, and overly broad. In particular, Defendants object to the Interrogatory because it is vague and ambiguous in its use of the term "alleged infringement." Defendants object that this Interrogatory is significantly overbroad insofar as it extends to any contention by Google and YouTube that they are not liable for "copyright infringement," whether or not it relates to this action or to any claims of infringement by Plaintiffs.

Defendants also object that this request assumes a factual predicate for which there is no record support at this time, namely that Plaintiffs have provided discovery sufficient to enable Defendants to respond to this request. Defendants object that this Interrogatory seeks information that is protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Defendants further object that this Interrogatory is duplicative and cumulative of Interrogatory No. 4.

Defendants understand this Interrogatory to only seek information about Defendants' eligibility for protections under the Section 512(c) safe harbor, which applies to any claim for "infringement of copyright *by reason of the storage at the direction of a user of material* that resides on" a service. 17 U.S.C. § 512(c)(1) (emphasis added). Defendants do not construe this Interrogatory to seek information about Defendants' affirmative defenses to copyright infringement other than the Section 512(c) safe harbor, including but not limited to the existence of a license and fair use.

Subject to and without waiving the above objections, Defendants refer Plaintiffs to the response to Interrogatory No. 4, below.

**INTERROGATORY NO. 4:**

**State the bases (including all facts and the application of law to fact) for Your contention that Defendants are entitled to the safe harbor from liability for copyright infringement under 17 U.S.C. § 512.**

**RESPONSE TO INTERROGATORY NO. 4:**

Defendants object to this Interrogatory on the grounds that it is vague, ambiguous, and overly broad. In particular, Defendants object that this Interrogatory is significantly overbroad insofar as it extends to any contention by Google and YouTube that they are entitled to Section 512's safe harbor for "copyright infringement," whether or not it relates to this action or to any claims of infringement by Plaintiffs.

Defendants further object that this Interrogatory assumes a factual predicate for which there is no record support at this time. In particular, Defendants object to the Interrogatory because it assumes without foundation that Plaintiffs' copyrights were infringed. Defendants further object that this Interrogatory seeks information that is protected by the attorney-client privilege, the attorney work-product doctrine, or both.

Subject to and without waiving the above objections, Defendants respond as follows: Defendants satisfy the threshold eligibility requirements for protection under various DMCA safe

Confidential

harbors. YouTube provides an online service and thus qualifies as a "service provider" under Section 512(k)(1)(B).

<u>YouTube's Repeat Infringer Policy.</u> In connection with its system of copyright "strikes," YouTube has adopted and reasonably implements a repeat infringer policy, which provides for the termination of repeat infringers' access to YouTube's service in appropriate circumstances. 17 U.S.C. § 512(i)(1)(A).

When YouTube receives a complete and valid copyright takedown notice pursuant to Section 512(c) of the DMCA, the allegedly infringing content is removed and a copyright strike is applied to the uploading user's channel. Channels that accrue three or more copyright strikes, along with any channels associated with the uploading user's account, are subject to termination for repeat copyright infringement. When an account is terminated, YouTube takes down all videos uploaded to the site from the terminated account, including videos that were not subject to any DMCA notice. YouTube takes this protective step even though it may result in the removal of large volumes of videos that the user may have had every right to upload and against which no allegation of copyright infringement has been or could be made. In addition, YouTube employs technical measures to prevent the user from creating a new account. When YouTube learns that a user has circumvented an account termination to create a new account, the new account is terminated. Consistent with this policy, each year YouTube terminates hundreds of thousands of accounts for repeat infringement of copyright.

<u>Assessing and accumulating copyright strikes.</u> ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This calculation is embedded in the logic of the copyright strike system. This approach serves to afford users an opportunity to learn from their mistakes and reform their behavior. Once the takedown occurs, a user cannot avoid receiving a copyright strike by deleting the allegedly infringing video. If a claimant retracts its DMCA notice, the associated copyright

strike will be resolved and lifted from the uploading user's account. Similarly, if a user submits a valid counter notification, YouTube may lift the strike. If YouTube is given proof that a court action has confirmed the alleged infringement through a default or final judgment, the strike will be reinstated.

Upon receiving a first copyright strike, the user can opt to learn about copyright and become eligible to have strikes expire from their account (after 90 days) by completing an online "Copyright School" program. Once the user completes Copyright School (including passing a quiz), the strike expires after 90 days, unless a channel accrues 2 more copyright strikes within the 90-day period, in which case the channel is terminated for repeat copyright infringement.

When content is matched through one of YouTube's automated copyright management tools, such as Content ID or Copyright Match Tool, the matches do not result in strikes being assessed against users whose videos are matched because the claimant has not identified an alleged infringement consistent with the DMCA. However, program participants may, at any time, choose to send a takedown request for any match that they believe constitutes an alleged infringement, and that notice will be handled in accordance with this policy. *See, e.g.*, GOOG-SCHNDR-00051596.

Trusted Enterprises Limited exemptions from standard termination. A limited number of trusted enterprises, who upload large volumes of content, are involved in complex rights management relationships, and have demonstrated both an understanding of copyright laws and a history of copyright compliance, are treated differently under YouTube's repeat infringer policy. Examples of these trusted enterprises include major record labels, multinational media conglomerates, national political campaigns, and sports leagues. For these trusted enterprises, copyright strikes are still recorded when we receive valid copyright takedown notices for content uploaded to their accounts, but the users will not be struck out (i.e. will not have their accounts terminated) while they remain trusted enterprises. This trusted enterprise exemption is subject to revocation if the user's account accumulates what YouTube deems to be excessive strikes or where YouTube deems the enterprise to have engaged in other abusive behavior. YouTube

evaluates the eligibility of trusted enterprises to remain in the program through an annual review process and upon receipt of complaints from other users. YouTube has revoked the trusted enterprise status of entities in accordance with that process, though fewer than .003% of these trusted enterprises currently carry more than three strikes.

Courtesy Period. Channels operated by parties with whom YouTube has an ongoing business relationship, about whom YouTube knows more than it knows about an ordinary user, receive a Courtesy Period before their channels are terminated under the Repeat Infringer Policy. If their channels accrue three copyright strikes, the channel loses the ability to upload new videos or livestream content, but the channel operator is given seven days to seek remediation through a counter notification or retraction before the channel is terminated.

Implementation of YouTube's Repeat Infringer Policy. YouTube implements its repeat infringer policy with a working notification system, a procedure for dealing with DMCA-compliant notifications, and it does not actively prevent copyright owners from collecting information needed to issue such notifications.

YouTube receives copyright takedown notices from a variety of entry points, including mail, email, and through automated management tools like Copyright Match Tool. The vast majority of takedown notices are received through YouTube's webform. Since January of 2021, YouTube typically receives more than 100,000 takedown notices per week. YouTube reviews takedown notices upon receipt to determine whether the notice satisfies the statutory requirements for a notice and does not otherwise carry clear indications of fraud. Once a takedown notice is verified as valid and complete, YouTube applies a copyright strike to the uploading channel, consistent with the policy described above. The uploading user is notified of the strike and receives a warning (for the first or second strikes), or a notice that their account has been or will be terminated (for any subsequent strikes). Strikes are recorded with the uploading user's account, visible to non-terminated users in their account dashboard, and tracked in YouTube's account database.

Today, YouTube's Copyright Operations team employs 20 full time staff members and

326 vendors to review copyright takedown notices, remove allegedly infringing content, and assess copyright strikes. As noted above, YouTube terminates hundreds of thousands of accounts per year for repeat copyright infringement. *See* GOOG-SCHNDR-00037969. When a channel is terminated for repeat copyright infringement, YouTube uses ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to propagate termination to what it believes to be associated channels. YouTube uses similar tools in an effort to detect and prevent terminated users from returning to the service with new accounts, and will terminate such accounts if it learns they are operated by users whose accounts were previously terminated for repeat infringement.

To illustrate YouTube's implementation of its policy, YouTube randomly selected 500 copyright complaints (takedown notices) received on or after 06/29/2020 and through 07/05/2020, that resulted in a successful takedown, and recorded the takedown notice ID (Column A), the number of channels associated with the notice (Column B), the number of strikes issued in response to the notice (Column C), and the number of channels terminated in response to the notice (Column D). Exhibit 1. YouTube also randomly selected 500 channels that were and remain terminated for repeat copyright infringement due to an accrual of at least three active copyright strikes, and recorded the terminated channels' ID (Column A), the date of termination (Column B), the number of active strikes at the time of termination (Column C), and the date each strike accrued (Columns D-F). Exhibit 2. These samples reflect YouTube's reasonable implementation of its repeat infringer policy and its proactive efforts in responding to takedown notices.

YouTube informs users of this Repeat Infringer policy in its Terms of Service and on various pages of its website that explain YouTube's rules and policies. *See* "YouTube Terms of Service," https://www.youtube.com/static?template=terms&gl=US; *see also, e.g.*, "Rules and Policies: Copyright," https://www.youtube.com/howyoutubeworks/policies/copyright/#enforcing-copyright; "YouTube Help: Copyright strike basics," https://support.google.com/youtube/answer/2814000?hl=en&p=c_strike_basics.

<u>YouTube Videos are Stored at Its Users' Direction.</u> At minimum, YouTube qualifies for

the protections of Section 512(c) since Plaintiffs' theory of copyright infringement appears to turn on videos uploaded to YouTube by third parties. *See* 17 U.S.C. § 512(c) (limiting liability for copyright infringement that occurs "by reason of the storage at the direction of a user"). In Plaintiffs' final list of allegedly infringing videos served on February 25, 2022 (the "Alleged Infringements"), Plaintiffs identified 745 videos by URL on YouTube.com, all of which had been uploaded by YouTube users who are not party to this litigation. YouTube did not play any role in creating these videos or selecting them to be uploaded to its service. That YouTube provides various functions "to help YouTube users locate and gain access to material stored at the direction of other users" does not affect its statutory protection, because Section 512(c)'s safe harbor "extends to software functions performed 'for the purpose of facilitating access to user-stored material.'" *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39-40 (2d Cir. 2012).

<u>YouTube Did Not Have Knowledge of—or the Right or Ability to Control Coupled with a Direct Financial Benefit—Plaintiffs' Alleged Infringements.</u> The burden of showing knowledge falls on Plaintiffs, because a "service provider cannot reasonably be expected to prove broad negatives." *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 94 (2d Cir. 2016). Plaintiffs have not produced any evidence to suggest that YouTube had actual or red flag knowledge that the Alleged Infringements were infringing. As discussed below, to the extent YouTube may have obtained such knowledge or awareness from the receipt of a valid DMCA notice, YouTube acted expeditiously to remove, or disable access to, the Alleged Infringements identified in these notices. For the Alleged Infringements that were never the subject of any takedown request prior to being identified as Alleged Infringements in this case, Plaintiffs' decisions "to forgo the DMCA notice protocol stripped [them] of the most powerful evidence of a service provider's knowledge—actual notice of infringement from the copyright holder." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1021 (9th Cir 2013) (cleaned up). Plaintiffs know (or should know) precisely what materials they own, and are thus better able to efficiently identify infringing copies than service providers like YouTube, who cannot readily ascertain what material is copyrighted and what is not. Moreover, barring a valid DMCA notice, YouTube lacks

knowledge, actual or red flag, whether any of the Alleged Infringements appear on YouTube with the authorization of Plaintiffs, or are subject to defenses such as fair use. Indeed, in some situations, even Plaintiffs themselves, after over a year of investigation, were not able to determine whether an Alleged Infringement was licensed and not infringing. *See, e.g.*, SCHNEIDER-0000122591. The law does not place the investigative duties of determining whether materials are actually infringing on service providers like YouTube. *See* 17 U.S.C. § 512(m)(1).

Nor have Plaintiffs produced any evidence to suggest that YouTube received a direct financial benefit directly attributable to the Alleged Infringements, in a case where it had the right and ability to control the infringement. YouTube did not receive a financial benefit directly attributable to the Alleged Infringements because it did not advertise itself as a place to get pirated materials, did not attract primarily visitors who were seeking to engage in infringing activity, and did not encourage that infringing activity in any way. To the contrary, YouTube actively works with copyright owners to remove alleged infringements from its service. Similarly, YouTube did not have the right or ability to control the Alleged Infringements. It did not exert substantial influence on the activities of users: the users and the users alone decided what to upload and YouTube did not engage in any culpable, inducing activity.

Designated Agent. Consistent with the requirements of Section 512(c), YouTube has designated an agent to receive notices of claimed infringement and has provided its agent's contact information to the Copyright Office and on its website. *See* DMCA Designated Agent Directory, YouTube, LLC (Effective: November 5, 2020 to Present), *available at* https://dmca.copyright.gov/osp/publish/history.html?search=youtube&id=17a12a16f333dfd42c937a5295f99ae7; DMCA Designated Agent Directory, YouTube, LLC (Effective: November 8, 2017 to November 5, 2020), *available at* https://dmca.copyright.gov/osp/publish/history.html?search=youtube&rid=e54b1160c476f4de6fa9796fa9999810; Amended Interim Designation of Agent to Receive Notification of Claimed Infringement, YouTube, LLC, *available at* https://cdn.loc.gov/copyright/onlinesp/agents/y/youtubellc.pdf; "YouTube Help: Copyright

Contact Information," https://support.google.com/youtube/answer/6005908. YouTube also provides a webform that allows copyright owners to quickly and easily submit such notices to YouTube. *See* "YouTube Help: Submit a copyright takedown notice," https://support.google.com/youtube/answer/2807622.

<u>Expeditious Removal in Response to Takedown Notices.</u> Upon receipt of a valid notice of infringement, whether sent directly to YouTube's designated agent or submitted through its webform, YouTube expeditiously removes or blocks access to allegedly infringing content. *See* 17 U.S.C. § 512(c)(1)(C). For example, in the second half of 2021 (the most recent reporting period), in response to complete and valid notices of infringement that satisfy the statutory criteria under the DMCA, YouTube removed over 98% of videos claimed as allegedly infringing through YouTube's Copyright Management Suite within 48 hours.

With respect to the Alleged Infringements, YouTube searched its records to determine whether Plaintiffs had submitted a valid notice of infringement that complied with the criteria set forth in 17 U.S.C. § 512(c)(3). Where YouTube had received a valid notice of infringement in connection with one of the Alleged Infringements (for 322 of the total 745), YouTube expeditiously removed the allegedly infringing video from its public website. Attached hereto as Exhibit 3 is a list of the 322 allegedly infringing videos URLs for which YouTube received a valid takedown notice (Column A), along with the date the takedown notice was received by YouTube (Column B), and the date the video was removed from YouTube's public website (Column C). In addition to removing the allegedly infringing video URLs, YouTube also assessed a copyright strike against the uploading channel in accordance with the Repeat Infringer Policy described above.

<u>Standard Technical Measures.</u> YouTube employs a variety of technical measures, including its proprietary Content ID system, its Takedown Notice webform, and its internal search function, to help copyright owners identify and protect their copyrighted works. However, these tools are not required by the DMCA. No court has recognized the existence of any "standard technical measures," as that term is defined in 17 U.S.C. §§ 512(i)(1)(B), 512(i)(2), because there

has never been an "open, fair, voluntary, multi-industry process" through which a "broad consensus" of copyright owners and service providers developed any technology to identify and protect copyrighted works. *See* Register of Copyrights, *Section 512 of Title 17*, at 67 ("[M]ore than twenty years after passage of the DMCA, . . . not a single technology has been designated a 'standard technical measure' under section 512(i)."); Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12B.02 (rev. ed. 2021) ("[N]o published judicial decision has recognized the existence of qualifying standard technical measures."). Should a court one day recognize a given technology as a qualifying "standard technical measure" under the statute, YouTube would accommodate and not interfere with its operation.

**INTERROGATORY NO. 7:**

**State the bases (including all facts and the application of law to fact) for Your contention that Defendants do not have actual or constructive knowledge that uploaded videos infringing Plaintiffs' copyrights are routinely publicly performed, publicly displayed, distributed, and/or reproduced on YouTube. If the bases differ for YouTube or Google, state the bases for each Defendant separately.**

**RESPONSE TO INTERROGATORY NO. 7:**

Defendants object to this Interrogatory on the ground that it is vague and ambiguous. In particular, Defendants object to the Interrogatory because it is vague and ambiguous in its use of the term "Plaintiffs' copyrights." Defendants object that this Interrogatory seeks information concerning works that have not been identified as works-in-suit. Defendants also object that this Interrogatory assumes a factual predicate for which there is no record support at this time. In particular, Defendants object to the Interrogatory because it assumes without foundation that Plaintiffs' copyrights were infringed. Defendants also object to the extent this Interrogatory seeks information that is protected by the attorney-client privilege, the attorney work-product doctrine, or both. Defendants also object that this Interrogatory is improper in that it purports to require Defendants to prove a negative, i.e. the absence of "actual or constructive knowledge." Defendants further object that this Interrogatory is duplicative and cumulative of Interrogatory No. 4.

Subject to and without waiving the above objections, Defendants respond as follows: Plaintiffs have not produced any evidence to suggest that YouTube had actual or constructive knowledge that the Alleged Infringements were infringing (*see* response to Interrogatory No. 4 above), much less that the Alleged Infringements are "routinely publicly performed, publicly displayed, distributed, and/or reproduced on YouTube."

**VERIFICATION OF AMENDED RESPONSES TO INTERROGATORIES NOS. 3, 4, 7**

I have read the foregoing Interrogatory responses, and the answers contained therein are true to the best of my knowledge, information and belief.

*/s/ Chenyuan Zhu*
Chenyuan Zhu
Product Manager, Content ID

Executed at Pacifica, CA on June 17, 2022

Dated: June 17, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   */s/ Lauren Gallo White*
         Lauren Gallo White

*Attorneys for Defendants and Counterclaimants*
YOUTUBE, LLC and GOOGLE LLC

# CERTIFICATE OF SERVICE

I, Deborah Grubbs, declare:

I am employed in Santa Clara County, State of California. I am over the age of 18 years and not a party to the within action. My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

On this date, I served:

1. **DEFENDANTS AND COUNTERCLAIMANTS YOUTUBE, LLC AND GOOGLE LLC'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFF MARIA SCHNEIDER'S INTERROGATORIES NOS. 3, 4, 7**

☒ By forwarding the document(s) by electronic transmission on this date to the Internet email address listed below:

BSFYouTube@bsfllp.com and Ktyoutube@koreintillery.com

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of documents for delivery according to instructions indicated above. In the ordinary course of business, documents would be handled accordingly.

I declare under penalty of perjury under the laws of the United States of America and State of California that the foregoing is true and correct. Executed at San Mateo, California on June 17, 2022.

_____
Deborah Grubbs