# Exhibit 2

to the Declaration of Qifan Huang

PUBLIC VERSION - REDACTED

GOOGLE CONFIDENTIAL

UPDATED: 2020-09-15

## CONTENT LICENSING AGREEMENT

This agreement ("**Agreement**") is entered into by [full legal name of Licensor], whose principal place of business is at [insert address] ("**Licensor**") and **Google LLC,** a Delaware corporation, with offices at 1600 Amphitheatre Parkway, Mountain View, CA 94043 ("**Google**") and becomes effective on the Effective Date.

## 1.   DEFINITIONS.

1.1   In this Agreement, unless expressly stated otherwise:

"**Affiliate**" means any entity that directly or indirectly controls, is controlled by, or is under common control with, a party.

"**Alternative Tiers**" has the meaning given to it in clause 2.11.

"**Apportionment**" means the percentage split between Performing Rights and Reproduction Rights allocated to Musical Works in [each country of] the Territory for exploitation on the Services, which will be determined in accordance with Google's standard practices.

"**Art Track**" means a musical sound recording that is played back to a user with an accompanying image(s) that is, in each case, designated by the applicable licensor (or by Google on such licensor's behalf) using tools, including auto-generation tools, provided by Google.

"**Audio-Only Play**" means a single stream satisfying Google's durational threshold (e.g., thirty (30) seconds) (if any) of a Sound Recording on the Audio-Only Service, which will count as a single stream whether via individual or grouped devices.

"**Audio-Only Service**" means the free-to-the-user, audio-only streaming service, which may or may not be supported by advertising, available on YouTube (including via any music-specific application, and which may be accessible on any user device). The Audio-Only Service is separate and distinct from the AVOD Service and the SVOD Services but may be offered with the AVOD Service. The functionality of the Audio-Only Service is more particularly described in clause 2.5A.

"**AVOD Service**" means the ad-supported, free-to-the consumer, streaming service available on YouTube that excludes the SVOD Services, YouTube TV (or any successor service/brand for such service), or any other paid offerings on YouTube, whether now existing or hereinafter created.

"**Blanket-licensed Country**" means a [country within the] Territory for which Google has an effective "blanket" licence (as determined by Google) in the so-called "global repertoire" for the Services, which blanket licence may be obtained via separate agreements with different licensors.

"**Brand Features**" means trademarks, trade names, logos, color combinations, insignia or other appropriate marks and slogans.

"**CIMA**" has the meaning given to it in clause 4.1.

"**Closing Balance**" means any revenue associated with Remaining Content, together with all corresponding revenue attributed to General Entertainment Content not identified by the System as matching any Music Video, Sound Recording or Melody ID File.

"**Closing Balance Activity Ratio**" means, for the applicable period, the fraction resulting from A divided by B, where:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                          GOOG-SCHNDR-00020659

(i)     'A' is the total number of views of Music Content and General Entertainment Content, in each case identified as embodying a Licensor Work (adjusted pro rata to reflect fractional interests and/or the Apportionment, if applicable); and

(ii)     'B' is the total number of views of:

    (a)     all Music Content; and

    (b)     all General Entertainment Content identified by the System as matching any Music Video, Sound Recording or Melody ID File (but which matches do not meet the Music Content Threshold) or to which a Reclassified Manual Claim applies,

in each case of (a) and (b) identified as embodying a Musical Work (meaning that: (1) any of Google's music publishing licensors has claimed (via the Data Exchange process or otherwise via the System) that the relevant Video contains a Musical Work licensed by that licensor; (2) the claim is not in Conflict and (3) there is no Dispute) and adjusted pro rata to reflect fractional interests of each licensor and/or the Apportionment, if applicable.

The Closing Balance Activity Ratio will be calculated separately for the Audio-Only Service, the AVOD Service and for each SVOD Service, and on a country-by-country basis. The reference in part (i) above to "identified as embodying a Licensor Work" means as set out in paragraph 1 of Exhibit B.

"**CMO**" means a collective rights management organisation.

"**Conditional Downloading**" means a user's receipt of a digital transmission that results in a specifically identifiable, tethered (but obfuscated) reproduction of such digital file that is available to such user for offline playback on the user's device for up to thirty-one (31) consecutive days (as such time period may be renewed periodically), which transmission may originate either directly from the Services or from another device (subject to any restrictions and limitations applicable under this Agreement).

"**Confidential Information**" means information that one party (or an Affiliate) discloses to the other party in connection with this Agreement, and that is marked as confidential or would normally be considered confidential information under the circumstances. It does not include information that is independently developed by the recipient, is lawfully given to the recipient by a third party without confidentiality obligations, or becomes public through no fault of the recipient.

"**Conflict**" means, with respect to a given Musical Work, a conflict between the claims made to Google by two or more licensors of Musical Works on the Services regarding the ownership of the rights in such Musical Work (or part thereof).

"**Contract Year**" means a period of one year starting on the Effective Date or the relevant anniversary of the Effective Date, as applicable.

"**Data Exchange**" has the meaning given to it in clause 3.

"**Dispute**" means that (i) Video has been identified as including a Musical Work (either via the System or by a manual claim by a music publishing rights licensor) and (ii) the uploader of the Video either disputes that the Video includes such Musical Work or asserts that it is otherwise entitled to use such Musical Work within the Video on the Services.

"**Effective Date**" means [INSERT DATE].

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020660

GOOGLE CONFIDENTIAL

"**Free Trials**" has the meaning given to it in clause 2.9.

"**General Entertainment Content**" means a Live Stream or a Video that is not Music Content, but which is 'monetised' by the uploader (or in respect of which the uploader has elected to disable 'monetisation') or which has a 'monetise' or 'track' policy applied to it via the System.

"**GE Share**" equals one hundred percent (100%) minus the Music Share percentage. The GE Share will be calculated separately for each SVOD Service.

"**Google Play Agreement**" means the Music Publishing Content Licensing Agreement between _____, on one hand, and Google Ireland Limited and Google Commerce Limited, on the other hand, with an effective date of _____.

"**Label Partner**" means a record label or other professional content partner that owns or controls rights in sound recordings of Musical Works.

"**Licensor's Activity Ratio**" means, for the applicable period, the fraction resulting from A divided by B, where:

(i)     'A' is the total number of views of Music Content and General Entertainment Content, in each case identified as embodying a Licensor Work (adjusted pro rata to reflect fractional interests and/or the Apportionment, if applicable); and

(ii)    'B' is the total number of views of:

     (a)     all Music Content; and

     (b)     all General Entertainment Content identified by the System as matching any Music Video, Sound Recording or Melody ID File (but which matches do not meet the Music Content Threshold) or to which a Reclassified Manual Claim applies.

Licensor's Activity Ratio will be calculated separately for the Audio-Only Service, the AVOD Service and for each SVOD Service, and on a country-by-country basis. The reference in part (i) above to "identified as embodying a Licensor Work" means as set out in paragraph 1 of Exhibit B.

"**Licensor Works**" means all those Musical Works owned and/or controlled, in whole or in part (if in part, to the extent of such part only) by Licensor in the Territory during the Term in respect of which Licensor is entitled to grant the rights granted pursuant to this Agreement.

"**Live Stream**" and "**Live Streaming**" mean real-time and near real-time streaming of audiovisual content.

"**Melody ID File**" means a melody-based reference file created via the System for a Musical Work as embodied in a specific Sound Recording.

"**Music Content**" means:

(i)     any Music Video or Art Track;

(ii)    any Video identified by the System as matching, at the Music Content Threshold, any Music Video (audio-visual match), Sound Recording (audio only match) and/or Melody ID File (Melody ID match);

(iii)   any Video claimed directly by: (a) a Label Partner as including a Music Video or Sound Recording licensed by such Label Partner; (b) Licensor as including a Licensor Work;

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020661

GOOGLE CONFIDENTIAL

and/or (c) any other music publishing licensor as including a Musical Work licensed by such licensor, in each case whether claimed manually via the System or otherwise in accordance with Google's policies (a "**Manual Claim**").

Google reserves the right, acting reasonably, to re-classify Manual Claims, including reclassification as General Entertainment Content ("**Reclassified Manual Claims**") where Google believes that the Video does not meet the Music Content Threshold.  In case of disagreement regarding any such reclassification, the parties will enter into good faith discussions to seek to resolve such disagreement.

"**Music Content Threshold**" means that: (a) ninety percent (90%) or more (in duration) of at least one Music Video, Sound Recording or Melody ID File is included in or matched to the Video; and (b) ninety percent (90%) or more (in duration) of the Video is comprised of or matched with one or more Music Videos, Sound Recordings and/or Melody ID Files. Google reserves the right, acting reasonably, to lower such Music Content Threshold, subject to notification to Licensor (which may be via YouTube's content management system).

"**Music Share**" means, for the applicable period, the fraction calculated by dividing (i) the total number of views of Music Content by (ii) the total number of views of Music Content and General Entertainment Content. The Music Share will be calculated separately for each SVOD Service and on a territory-by-territory basis. Google may substitute views in the foregoing calculation with watchtime.

"**Music Video**" means a Video licensed by, and delivered by or on behalf of, a Label Partner for use on the Services, and which is designated as a music video by or on behalf of such Label Partner.

"**Musical Work**" means a musical composition with or without lyrics (i.e., a musical and literary work).

"**Net Ad Revenue**" means for each applicable period, revenues recognised by Google and its Affiliates, in accordance with US Generally Accepted Accounting Principles, in the Territory from ads provided by Google or a Google-approved third party and displayed or streamed on the Playback Pages, or on or in the YouTube Video Player, less, off the top, VAT (if any) and other applicable taxes, and any carriage or in-app commission fees (if any). Net Ad Revenue specifically excludes any e-commerce and referral fees received by Google and its Affiliates related to "upsells".

"**Net Subscription Revenue**" means, for each separate SVOD Service, any revenues recognised by Google and its Affiliates, in accordance with US Generally Accepted Accounting Principles, in the Territory from users in consideration for access to the relevant SVOD Service (including subscription fees from users of such SVOD Service (prorated for 'bundled' subscription offers to reflect the portion of the bundled offer applicable to the SVOD Service, as reasonably determined by Google)), less, off the top, VAT (if any) and other applicable taxes, refunds, charge-backs, declined payments, carriage or in-app commission fees or any other fees payable to platform, device or other distribution partners in connection with SVOD Service transactions. Net Subscription Revenue for a particular SVOD Service specifically excludes any Net Ad Revenue and Net Subscription Revenue from any other SVOD Service. Net Subscription Revenue also specifically excludes any e-commerce and referral fees received by Google and its Affiliates related to "upsells".

"**Ownership Data**" means the following information in respect of a Musical Work: (i) the full title; (ii) the International Standard Musical Work Code (ISWC); (iii) the name(s) of the writer(s); (iv) information identifying the owner(s)/administrator(s) of the reproduction (or "mechanical") rights in the Musical Work in the Territory and the proportions in which those rights are owned/administered,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    GOOG-SCHNDR-00020662

GOOGLE CONFIDENTIAL

if there is more than one owner/administrator; (v) information identifying the owner(s)/administrator(s) of the making available (or "performing") rights in the Musical Work in the Territory and the proportions in which those rights are owned/administered, if there is more than one owner/administrator; (vi) any other information that may be used, generally, within the music publishing industry, from time to time, to identify a Musical Work and the owner(s)/administrator(s) of the rights in such Musical Work; and (vii) the necessary ISRC or asset ID code to identify which Sound Recording or Music Video the applicable Musical Work is embodied in.

"**Partially-licensed Country**" means a [country within the] Territory which is not a Blanket-Licensed Country.

"**Performing Rights**" means rights commonly referred to as performing rights or communication to the public rights (including, for clarity, making available rights).

"**Playback Page**" means a page on the Services that is dedicated to a Video or Live Stream on which a user can view such Video or Live Stream and also see more detailed information relating to such Video or Live Stream.

"Reconciliation Period" means the period of eighteen (18) months (or less, at Google's sole discretion) from the end of each calendar quarter.

"Remaining Content" means any Music Content or General Entertainment Content identified by the System as matching any Music Video, Sound Recording or Melody ID File, as streamed during the applicable calendar quarter, which remains either (i) unclaimed by Licensor or any third party licensor of Musical Works in the Territory, or (ii) in unresolved Conflict (having been in Conflict from the end of the applicable calendar quarter).

"**Reproduction Rights**" means rights commonly referred to as reproduction or mechanical reproduction rights.

"**Royalties**" has the meaning given to it in clause 5.2.

"**Services**" means:
(i)      the Audio-Only Service,
(ii)     the AVOD Service; and
(iii)    the SVOD Services,

each of which may include:
(x)  the Live Streaming; and/or
(y)  the making available and delivery of Conditional Downloads of Music Content and/or General
      Entertainment Content.

References to "YouTube" in this Agreement include all mirror and derivative sites, all replacements or successor versions thereof, and all international versions thereof, the YouTube Video Player, APIs and any associated applications (e.g. the 'YouTube Music', 'YouTube Gaming' and 'YouTube Kids' applications).

"**Sound Recording**" means a master sound recording of a Musical Work as licensed by, and delivered by or on behalf of, a Label Partner for use on the Services (including for use in the System as an audio reference file).

"**SVOD Services**" means one or more subscription services that permit users to access, stream (including via a Live Stream) and (if Google enables such functionality) Conditionally Download, and get additional features on, all or a subset of content on YouTube, for which a fee is paid (or a Free Trial is activated) by or on behalf of a user. Certain content may only be available within one

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                                    GOOG-SCHNDR-00020663

Case 3:20-cv-04423-JD   Document 328-21   Filed 05/18/23   Page 7 of 26

GOOGLE CONFIDENTIAL

or more SVOD Services, but paid services whereby users pay a fee in exchange for access to specific items of content, such as rentals and purchases, paid-for channels and live pay-per-view, are not SVOD Services.

"**System**" means Google's content identification and management system, also commonly known as "Content ID".

"**Term**" and "**Initial Term**" have the meanings given to them in clause 11.

"**Territory**" means [▨▨▨▨].

"**VAT**" means value-added tax and/or any equivalent sales tax (including GST).

"**Videos**" means any audiovisual content on the Services, other than Live Streams.

"**YouTube Video Player**" means one or more digital media players made available to users that is used in the transmission, performance and/or playback of audio or audiovisual content so that the digital data that embodies such audio or audiovisual content can be perceived by and communicated to a user of the digital media player when used in conjunction with the aid of a machine or device, and which is embeddable in non-YouTube-branded products, services and applications, including those of third parties and Google services other than the Services.

1.2     The words "**include**" and "**including**" will not limit the generality of any words preceding them.

1.3     References to any statute or other legislative enactment include references to that statute or legislative enactment as amended or re-enacted from time to time.

## 2.      LICENCE, GRANT OF RIGHTS.

2.1     Licensor grants to Google, on a non-exclusive basis during the Term and in respect of the Territory (and otherwise in accordance with the terms of this Agreement), the right to use the Licensor Works in connection with the Services, including all rights necessary for Google to:

(a)     reproduce (including as Conditional Downloads), host on servers, buffer, distribute, deliver, embed, display, stream, adapt (including by algorithmically generating previews of Videos that embody Licensor Works) or otherwise transmit the Licensor Works, as embodied in Videos and Live Streams, on the Services and for transfer onto, or reception or performance by, users' individual electronic devices;

(b)     perform, communicate, utilize, and make available to the public and synchronise the Licensor Works (including, for clarity, lyrics in Licensor Works) in connection with the operation of the Services and the utilisation thereof by users;

(c)     store database, cached and archival copies of Licensor Works, as embodied in Videos;

(d)     use the Licensor Works in connection with the audio library currently known as 'AudioSwap', the generation of Art Tracks or similar such feature(s) on the Services; and

(e)     promote, market, and advertise the Services.

Notwithstanding the foregoing, a subscriber to an SVOD Service, whose home country is within the Territory, may continue to have access to the SVOD Service's content and features when travelling outside of the Territory.

2.2     **Scope of Rights.** The parties agree that the licence in clause 2.1 above provides Google with all of the rights necessary to operate the Services with respect to all of the Licensor Works in the Territory. In addition to any rights the parties may have under applicable law, Google may sublicense any of its rights and licenses under this Agreement or subcontract any of its obligations

v.1.0                                                6

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                        GOOG-SCHNDR-00020664

GOOGLE CONFIDENTIAL

or rights under this Agreement to any of its Affiliates, provided that Google will be liable for any breach of this Agreement by its Affiliates.

2.3 **Alternate Rights Clearance**. Google may choose in its sole discretion to obtain the rights (or any part thereof) granted under this Agreement through any other available licensor or channel including:

(a) from a collecting society or other collective rights administrator;

(b) from a record label or other content provider that has, or will have, all or some portion of the rights granted in this Agreement and the right to "pass through" such rights to Google; and

(c) via licences created by operation of law, statute or ruling.

If Google obtains any such rights from a third party, Royalties will not be payable by Google to Licensor in respect of the relevant rights.

2.4 **Reservation of Rights.** This Agreement does not authorise or permit any use of the Licensor Works not expressly set out in this Agreement. Licensor reserves all rights not expressly granted to Google in this Agreement. All rights granted under this Agreement are granted on a non-exclusive basis. Except as specifically set out in this Agreement, no rights are granted or conveyed to users under this Agreement. Except as otherwise set out herein, this Agreement does not affect any right or defence that either party would have had, or will have, independent of the Agreement including rights under copyright, trademark, trade secret, moral rights, privacy rights, rights of publicity, or any other intellectual property or proprietary rights or analogous laws in applicable jurisdictions.

2.5 **SVOD Service Features.** The SVOD Services may include features to play back Videos and Live Streams: (a) Conditionally Downloaded onto the applicable device, which may include audio-only Conditional Downloads; (b) in an audio-only and/or background streaming mode; (c) without the Video rendered in a manner that is visible to the user; and/or (d) ads-free or with ads. Notwithstanding anything to the contrary herein, Google may enable any or all of the foregoing features across the Services generally (including on the ad-supported component of the Services) for Music Content and General Entertainment Content that is licensed to Google by public service broadcasters. The SVOD Services may be offered on a monthly basis, or as fractions thereof, as determined by Google, and any applicable royalty calculations will be prorated and adjusted to account for subscription periods that are shorter than a month.

2.5A **Audio-Only Service Features.** The following functionality and restrictions will apply to the Audio-Only Service:

(a) a user may select a single song, album, artist, genre or playlist to generate a station algorithmically based on content similar to such selected song, album, artist, genre or playlist. Notwithstanding the foregoing, a user-selected song will not play as the first track of the station;

(b) a user may select playlists that are created by Google or a third party to playback in a randomized order, but will not have the ability to play (whether randomized or in order) a playlist of songs, albums or listening history created by such user in the AVOD Service (though notwithstanding the foregoing, Google may include a user's listening history from the Audio-Only Service in the AVOD Service and SVOD Services);

(c) a user will not have the ability to skip backward or have the ability to restart the current Sound Recording from the beginning, but will have the ability to skip forward no more than six (6) times via a particular station or playlist during any sixty (60) minute period;

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                GOOG-SCHNDR-00020665

GOOGLE CONFIDENTIAL

(d)     a user will not have the ability to Conditionally Download or otherwise download any Sound Recording from the Audio-Only Service;

(e)     a user will have the ability to stream no more than four (4) Sound Recordings by the same featured artist (or from an individual compilation album) via a particular station within a three (3) hour period;

(f)     a user will have the ability to stream no more than three (3) Sound Recordings from the same featured artist album via a particular station within a three (3) hour period (provided that no more than two (2) of those Sound Recordings may be streamed consecutively); and

(g)     Google may from time to time present upsell prompts to any SVOD Service or other interruptions to users of the Audio-Only Service.

2.6     **Cross Authentication [and Services Combination].**

[IF Partner is also signed to a GPM PLA - (a) If Google offers another music subscription service (e.g. Play Music), then, at Google's discretion, subscribers to the other Google music subscription service may access the SVOD Services and vice versa at no additional cost to them or to Google.  Additionally, if Google offers a so-called 'site-wide' SVOD Service (e.g. YouTube Premium), then, at Google's discretion, subscribers to such SVOD Service may access all other SVOD Services hereunder at no additional cost to them or to Google. no person will be counted as a subscriber more than once, unless he/she is paying separately for more than one subscription service (e.g. an SVOD Service subscriber who accesses another Google music subscription service will be counted only as a subscriber of the SVOD Service, and not as a subscriber of both the SVOD Service and the other Google music subscription service.

[IF Partner is also signed to a GPM PLA - (b)  Services Combination. Google is in the process of combining the services licensed pursuant to the Google Play Music Agreement and the music portion of the YouTube Service.  The terms of the Google Play Agreements will continue to apply to such services licensed under the Google Play Agreements, except as otherwise stated in this Agreement.  Notwithstanding anything to the contrary in the Google Play Music Agreement, the Licensed Service (as defined in the Google Play Music Agreement) may be branded with YouTube or other Google-owned or controlled branding.  Furthermore, if Google chooses to migrate users from the Google Play subscription service to an SVOD Service, the terms applicable to such users from the date on which the migration is complete will be this Agreement and not the applicable Google Play Agreement(s).]

2.7     **SVOD Usage Rules.** Access to an SVOD Service will be available only via the subscriber's account with a log-in and password. No more than ten (10) authorised devices per account may be registered at any one time for an SVOD Service that includes Conditional Downloads, and no premium streaming features (meaning features only available as part of the SVOD Service) will be available on more than one device per subscriber account at any given time.  Each SVOD Service will enforce a limit of one stream (via the applicable SVOD Service), at any given time, per subscriber account for such SVOD Service across devices that have premium streaming features unlocked as part of that SVOD Service. The only exception to this general rule is a limited-time transitional overlap that allows a second device to stream for a short "cross over period" of up to the conclusion of the current Video and the next selected Video (if any) during which a user can simultaneously stream on up to two (2) devices. Features generally available through the Services that are not part of an SVOD Service (e.g. a web-based video without any restrictions) are not part

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                    GOOG-SCHNDR-00020666

of this stream limitation. For the purposes of this clause 2.7, in the case of a so-called 'family plan' account, the master account holder and each sub-account holder will be deemed to have a separate account.

2.8    **Bundling**. Google will have the right to bundle SVOD Services with other products and services. Licensor's share of the revenue for the applicable SVOD Service will be calculated in accordance with **Exhibit B** based on the value of the applicable SVOD Service in the overall bundle, as such value is reasonably determined by Google.

2.9    **Promotional Programmes.** Google may offer to prospective subscribers free or nominally priced (e.g., $1.00 per month) trials of each SVOD Service, whether directly or in connection with third-party promotional partners, such as device manufacturers or wireless carriers ("**Free Trials**") and/or other promotional or discounted plans which may include, by way of example only, family plans, student plans, non-mobile or other limited device offers and/or six month or annual plans.

2.10   **Co-Branding.** The SVOD Services may be promoted, marketed, offered and branded:

(a)    with one or more Google brands or trade names, including Google Play and YouTube; and/or

(b)    as follows:

(i)    with third party branding pursuant to a limited-time third party sponsorship arrangement, provided that Licensor's revenue share is not subject to any deductions by the third party; or

(ii)   on a non-exclusive basis with a device manufacturer or wireless carrier, provided that any such co-branding will be of lesser prominence than the Google owned or controlled brand.

The SVOD Services may not be branded with a third party brand as part of a business-to-business white label service.

2.11   **Alternative Tiers.**   In addition to the foregoing, Google anticipates that over time it may offer additional tiers or features in relation to the Services, which may include, by way of example only, a lossless or HD tier of service ("**Alternative Tiers**"). Under this Agreement, Google may include Licensor Works in any such Alternative Tier(s) and, if the Alternative Tier(s) are not already covered by the Royalty rates/provisions set out in this Agreement, Google will apply the same terms for such Alternative Tier(s) as it applies to other similarly situated Musical Works licensors in the Territory.

2.12   **Legal Action.** To the maximum extent permitted by applicable law, Licensor will not commence, join or directly or indirectly support, assist or fund any legal action against Google, Google's Affiliates, or any user (including any user with a commercial purpose or who is earning revenue) for use of the Licensor Works on the Services during the Term where such use is consistent with Google's authorisation under this Agreement, including a user's failure to obtain a synchronisation license for the Licensor Works.

2.13   **Third Party Clearances.** Licensor is responsible for procuring and paying for all necessary third party rights, licences and clearances in connection with the grant of licence in clause 2.1 above.

2.14   **Brand Features License.**   Licensor grants to Google a limited, non-exclusive, worldwide, royalty-free right to use Licensor's Brand Features in connection with the Licensor Works licensed under this Agreement, including for use in presentations, marketing materials, financial reports, press

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020667

GOOGLE CONFIDENTIAL

releases and customer lists.  As between Google and Licensor, any goodwill associated with Google's use of the Licensor Brand Features will inure to the benefit of Licensor.

**3.      DATA EXCHANGE.**

3.1     So that each Licensor Work can be identified and associated with the corresponding sound recording(s) embodying such Licensor Work, Licensor will provide Ownership Data to Google (such process is referred to as "**Data Exchange**").  Licensor will use commercially reasonable efforts to:

(a)     provide Ownership Data in respect of all existing Licensor Works within thirty (30) days after the date of signature hereof; and

(b)     thereafter, update such data as frequently as is reasonably practicable during the Term and, in any event, no less frequently than monthly.

3.2     At the Effective Date, Licensor is required to provide Ownership Data by delivering a CSV file in the form set out in Exhibit A.   On written notice to Licensor, Google may require Licensor to provide Ownership Data via a different method/form. However, Google will continue to accept Ownership Data in CSV file format for a reasonable period (as reasonably determined by Google) after the date on which the notice is given.

**4.      GOOGLE OBLIGATIONS.**

4.1     **Content Identification**. The availability of the System will be subject to Licensor separately executing Google's standard Content Identification and Management Agreement ("**CIMA**") and the terms and conditions set out in the CIMA.

4.2     **Licensor Takedowns.** Subject to clause 4.3, in the event of a bona fide writer issue or an actual legal claim, Licensor may initiate removal of Videos containing a Licensor Work from the Services in one or more regions within the Territory by means of the System. If a Licensor Work continues to appear on the Services for more than five (5) business days after Licensor successfully initiates removal of such Licensor Work, Licensor will notify Google by sending an email with the URL of the Video(s) containing the relevant Licensor Work to partner-takedownrequest@youtube.com or such other address as Google may designate from time to time. Google will use commercially reasonable efforts to disable access to such Video(s) in the applicable region(s) in the Territory within seven (7) business days of confirmed receipt of Licensor's notice, subject to any of Google's processes and policies in respect thereof and any rights that Google or the uploader(s) of the relevant Video(s) may have under applicable law (for example, under the principles of "fair use" or "fair dealing"). As between the parties, Google's compliance with such take-down notice will eliminate liability for Google with respect to the removed Video(s). Licensor will not use (i) the take-down right and/or (ii) the 'block' policy in the System to frustrate the purpose of this Agreement.

4.3     **Disputes.** Google may establish procedures to resolve Disputes (or any other disagreements) with respect to Licensor claims and takedowns, and Licensor will cooperate with Google to resolve the same. If, during the course of evaluating whether Licensor has rights to specific content, Licensor reviews content designated as private by a user, Licensor will not disclose the content to any third party except as necessary for this process or a judicial proceeding.

4.4     **Conflicts**. A Conflict may be caused when two or more licensors claim rights to the same Musical Work. If there are any Conflicts regarding ownership of Musical Works that are claimed as Licensor Works, then: (a) Google will promptly notify Licensor (which may be via email or via Google's content management system) of such Conflicts; and (b) Licensor will work directly with the applicable other licensors to resolve the Conflicts.  Google and Licensor agree to work together and discuss in good faith ways of automating Conflict resolution and/or improving the speed at which Conflicts are resolved.  Notwithstanding the foregoing, it is agreed that Google may:

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020668

GOOGLE CONFIDENTIAL

(i)     notify Licensor (including via email or via Google's content management system) to request that Licensor reconfirm its ownership claims for certain Musical Works that are in Conflict and, if Licensor fails to reconfirm such ownership claims within the time period specified in the notice, Licensor will be deemed to have withdrawn its claims for such Musical Works for the relevant period; and

(ii)    at the close of each Reconciliation Period (as defined at Clause 5.3 below), and prior to allocating the applicable Closing Balance in accordance with Clause 5.3 below, review Musical Works in Conflict for the applicable calendar quarter and may resolve such Conflicts in accordance with the following:

(A)    Google may review the ownership information in its content management system, as provided by the licensors (including Licensor) involved in the Conflict, as at the close of the applicable Reconciliation Period. If the Musical Work is not in Conflict in Google's content management system at that time, Google may use the ownership information in Google's content management system to resolve the Conflict for the applicable period; and

(B)    if the process in 4.4(ii)(A) does not resolve the Conflict, then to the extent that Licensor has not at any time in the twelve (12) month period preceding the close of the Reconciliation Period claimed the relevant Musical Work (or confirmed their ownership share of the applicable Musical Work in Conflict in accordance with 4.4(i) above), then Google may release Licensor's claim over such Musical Work for the applicable calendar year and resolve the Conflict in favour of (an)other licensor(s) that has claimed such Musical Work during the twelve (12) month period.

Google and Licensor will agree to work together and discuss in good faith ways of automating Conflict resolution and/or improving the speed at which Conflicts are resolved.

4.5   **Unclaimed Licensor Works**.   As part of Google's reconciliation processes during each Reconciliation Period and in order to maximise the payments made to Licensor hereunder, Google may use the then current ownership information in its content management system (based on previous claims provided by Licensor) as at the date of any such reconciliation to generate claims on behalf of Licensor against any remaining unclaimed Licensor Works for the applicable calendar quarter.   Google will pay any Royalties due with respect to any additional Musical Works claimed as Licensor Works through the foregoing process at the same time as Google makes payment to similarly situated licensors during the Reconciliation Period.

4.6   **Google Takedowns.** Google has no obligation to make available Videos containing Licensor Works.  Further, while Google does not intend, and does not undertake, to monitor content on the Services, if Google is notified by Licensor, or otherwise becomes aware and determines in its sole discretion, that any Licensor Work or Video containing a Licensor Work:

(a)    violates the intellectual property rights or any other rights of any third party;
(b)    violates any applicable law or is subject to an injunction;
(c)    is pornographic, obscene or otherwise violates Google's hosting policies or other terms of service as may be updated by Google from time to time in its sole discretion; or
(d)    may create liability for Google (or any of its Affiliates),

Google may elect not to display, or to cease displaying the relevant Video(s) on the Services with no liability to Google.

4.7   **Google Servers.** Google will protect the servers within its control that host Licensor Works with commercially reasonable security.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020669

GOOGLE CONFIDENTIAL

**5.    PAYMENTS AND TAXES.**

5.1    **Advertising.** Advertising may be served by or on behalf of Google on any and all Services, including the display of ads on the Playback Pages and within the YouTube Video Player, in conjunction with the display or playback of Videos containing Licensor Works. Google has sole discretion over the style and format of the ads, which may be modified from time to time.

5.2    **Royalties.** Subject to the terms of this Agreement, Google will pay to Licensor the royalties set out in **Exhibit B** (the "**Royalties**"). The Royalties will be calculated by Google separately for the Audio-Only Service, the AVOD Service, and for each SVOD Service, based on the current Ownership Data in Google's content management system, as provided to Google by its music publishing licensors (including Licensor), as at the point at which such calculations are made [and on a country-by-country basis within] **-OR-** [in] the Territory. Google will retain all other revenues derived from the Services, including any revenues from ads that may appear on any search results pages.

5.3    **Closing Balance payment.** If, by the end of the Reconciliation Period, there is any Remaining Content relating to such calendar quarter, Google will pay to Licensor its corresponding Royalties in relation to the Closing Balance (prorated to reflect, as applicable, (i) Licensor's Closing Balance Activity Ratio in each Blanket-licensed Country of the Territory in the applicable calendar quarter, or (ii) Licensor's Activity Ratio in each Partially-licensed Country of the Territory in the applicable calendar quarter) within sixty (60) days after the end of the Reconciliation Period for the applicable calendar quarter, subject to the following conditions:

(a)    the significant majority of licensors of Musical Works in the applicable country of the Territory have agreed to similar Closing Balance distribution rules;

(b)    Licensor is in material compliance with its responsibilities and obligations under clause 3;

(c)    subject to clause 5.13 below, Licensor indemnifies Google (and its Affiliates) against all third party copyright claims in respect of any Remaining Content, provided that Licensor's liability under such indemnity is limited to the amount of such third party claims prorated to reflect Licensor's Closing Balance Activity Ratio on the Services in the applicable country within the Territory during the period in question; and

(d)    [the applicable country in] the Territory to which the Closing Balance applies does not have a regime of statutory damages (or similar) punitive damages, or criminal liability for copyright infringement (although Google may elect to waive the condition in this clause 5.3(c) in its discretion).

5.4    **Multiple SVOD Services.** If any Video or Live Stream in which a Licensor Work is embodied is available in more than one SVOD Service that a particular user has subscribed to and that user watches such Video or Live Stream, then, where technically feasible, Google will pay pursuant to paragraph 2 of **Exhibit B**, based on the SVOD Service in which the applicable Video or Live Stream was viewed or, if that is not technically feasible for Google, based on the SVOD Service with the highest ranking, as determined by Google. Google will rank SVOD Services based on the SVOD Service with the most Net Subscription Revenue in the relevant period, as of the date on which such determination is made. Google may recalculate such rankings based on factors such as, by way of example only, adding or removing SVOD Services or if there is a significant change in the composition of any SVOD Services. Licensor will be paid for such views in one SVOD Service only and will not, for clarity, be paid for the same view of a Video or Live Stream embodying a Licensor Work in multiple SVOD Services.

5.5    **Payment Terms.**

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                           GOOG-SCHNDR-00020670

GOOGLE CONFIDENTIAL

(a)     Save for as otherwise provided under this Agreement, within approximately forty-five (45) days, but no later than sixty (60) days after the end of each calendar quarter (or, at Google's discretion, each calendar month), Google will pay to Licensor any Royalties due with respect to Music Content and General Entertainment Content identified as embodying a Licensor Work, together with Licensor's corresponding prorata share of Royalties for any General Entertainment Content not identified by the System as matching any Music Video, Sound Recording or Melody ID File, provided that: (i) Licensor's earned balance is at least $100 at the time payment is due; (ii) Licensor has an active AdSense account associated with Licensor's YouTube user account(s) or such other type of payment account as required by Google in the future; and (iii) Licensor provides any additional information reasonably required by Google in order to process payment, including accurate contact information and tax identification numbers and forms. Google has no obligation to pay any Royalties relating to Musical Works (or parts thereof) claimed as Licensor Works that are in Conflict or Dispute. The reference in this clause 5.5 to "identified as embodying a Licensor Work" means as set out in paragraph 1 of Exhibit B.

(b)     The number of queries, impressions of and clicks on ads, as reported by Google to the applicable advertiser, will be the number used in calculating payments hereunder. Payments to Licensor will be made by electronic funds transfer to Licensor's designated bank account. Any bank fees related to returned or cancelled payments due to a contact or payment information error or omission by Licensor may be deducted from the newly issued payment. If Google fails to pay any undisputed amount due to Licensor under this Agreement, Licensor may charge simple interest on such amount at the rate of 4% per annum above the European Central Bank's official bank rate from time to time, from the due date until the date of actual payment, whether before or after judgment, save that Licensor will not charge Google de minimis interest of less than fifty United States dollars ($50) that accrues in respect of any given accounting period.

(c)     For the avoidance of doubt, and notwithstanding anything to the contrary herein, Google's payment or credit of royalties to a third party licensor for the use of Musical Works that are Licensor Works extinguishes Google's payment obligations to Licensor with respect to the use of such Licensor Works for which such third party licensor received or was credited with royalties. Licensor acknowledges and agrees that its sole recourse with respect to Royalties that would otherwise have been due from Google will be to the third party licensor that received or was credited with such payment.

5.6   **Non-Qualifying Ads.** Notwithstanding any other provision of this Agreement, Google will not be liable, and reserves the right to withhold payment or charge back Licensor's account or demand a refund from Licensor for, any payment based on the following:

(a)     any amounts which result from invalid queries, or invalid clicks on ads, generated by any person, bot, automated program or similar device, including through any clicks or impressions: (i) originating from Licensor's IP addresses or computers under Licensor's control, or (ii) solicited by payment of money, false representation or request for users to click on ads;

(b)     ads delivered to users whose browsers have JavaScript disabled;

(c)     Google advertisements for its own products or services;

(d)     clicks co-mingled with a significant number of invalid clicks described in clause 5.6(a) above; or

(e)     as a result of any breach of clause 5.7 or clause 7 by Licensor.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020671

GOOGLE CONFIDENTIAL

Google reserves the right to withhold payment of amounts due as a result of any of the foregoing, pending Google's reasonable investigation of any of the above and Licensor agrees to cooperate with Google in its investigation.

5.7     **Prohibited Acts.** Licensor will not, and will not authorise or encourage any third party to, directly or indirectly generate queries, impressions of, or clicks on, any ad or to obtain access to Videos or Live Streams through any automated, deceptive, fraudulent or other invalid means, including via repeated manual clicks, the use of robots or other automated query tools or computer generated search requests, or the fraudulent use of other search engine optimisation services or software. Google reserves the right to investigate, at its own discretion, any activity that may violate this Agreement, including any use of a software application to access ads or any engagement in any activity prohibited by this Agreement, and Licensor will cooperate with Google in any such investigation.

5.8     **Full Payment.** The parties agree that any Royalties payments will represent a full and final settlement for the exploitation of the Licensor Works (and rights therein) by Google on the Services in the Territory for the period from inception of the Services to the end of the Term.

5.9     **Taxes.** Google will be responsible for any taxes relating to payments it makes under or related to this Agreement other than taxes based on Licensor's income. If Google is required to deduct or withhold taxes from any payments made to Licensor and remit such taxes to the local taxing jurisdiction, then Google will duly withhold such taxes and will pay to Licensor the remaining net amount after the taxes have been withheld. As between the parties, Licensor will be responsible for any taxes relating to payments it makes to third parties related to this Agreement.

5.10    **Proration of Multi-Track Videos.** All calculations of Royalties payable to Licensor under this Agreement will be prorated to account for the total number of claimed Musical Works within each streamed or Conditionally Downloaded Video or audio-only track hereunder. With respect to the foregoing, Google may apportion payment to each claiming owner or administrator (including a user) of the exploited rights on a pro rata basis (either across all claims on such Video or across claims for those portions of the Video actually viewed by a user, as determined by Google).

5.11    **Reporting.** Within sixty (60) days after the end of each calendar month, Google will make available to Licensor, via Google's content management system, usage reports in respect of the Services. Such reports will contain, at a minimum, on a per asset basis for all Music Content and General Entertainment Content identified as embodying a Licensor Work: (i) the total views and Net Ad Revenue or Net Subscription Revenue, as applicable, generated for that calendar month; (ii) the daily views generated; and (iii) the total views and Net Ad Revenue or Net Subscription Revenue, as applicable, generated on a country-by-country basis, where applicable.

Reports will include all Music Content for which Royalties are payable based on the Ownership Data provided via the Data Exchange process.

5.12    **Reporting and Payments for the Audio-Only Service.** Solely with respect to the Audio-Only Service there will be no reporting, claims or payments relating to General Entertainment Content (whether identified by the System as matching any Music Video, Sound Recording or Melody ID File or not).

5.13    **Third party claims post-payment of Closing Balance.** Google may deduct from future Royalties payable to Licensor a prorated amount (based on Licensor's Closing Balance Activity Ratio on the Services in the applicable country within the Territory during the period in question) with respect to third party claims for payment in connection with the Remaining Content, to the extent such claims in the aggregate exceed thirty thousand dollars (USD 30,000) or more during any twelve (12) month period.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                          GOOG-SCHNDR-00020672

GOOGLE CONFIDENTIAL

6.    **SONGWRITER CREDITS AND TOOLS**.  Google may use the Ownership Data, and data received from its other music licensors, together with its own data regarding the usage of Musical Works (including Licensor Works) on the Services, to: (a) provide songwriter/composer credits on the Services; and (b) create tools and analytics for songwriters/composers (for example, in the form of dashboards) and/or publicly available metrics and insights (equivalent to 'Music Insights'). Accordingly, Licensor grants to Google the right to use for such purposes the Ownership Data provided by Licensor under this Agreement.

7.    **WARRANTIES.**

7.1   Each party warrants that it has full power and authority to enter into this Agreement.

7.2   Licensor warrants that:

(a)     it has and will maintain throughout the Term all rights, authorisations and licences that are required to fully perform its obligations under this Agreement, to grant the rights and licences granted in this Agreement, and to permit Google to exploit the Licensor Works as contemplated in this Agreement;

(b)     any rights granted by it pursuant to this Agreement are not administered by a third party (such as, by way of example only, a CMO) in any part of the Territory;

(c)     it has not exclusively licensed any rights granted by it pursuant to this Agreement to any third party;

(d)     it is not affiliated with any CMO in respect of the rights granted pursuant to this Agreement;

(e)     the authors or composers of the Licensor Works are not members of any CMO, or, to the extent that they are, each Licensor Work has been excluded from the mandate of the CMO of which the author or composer is a member, in strict accordance with the CMO's membership or other rules, in respect of all of the rights licensed pursuant to this Agreement;

(f)     it has the right to collect the Royalties hereunder;

(g)     it will only claim Musical Works that are Licensor Works;

(h)     it will not act in any manner which conflicts with or infringes any existing commitment or obligation, and that no agreement previously entered into by Licensor will interfere with its performance of its obligations under this Agreement; and

(i)     Google's authorised use of the Licensor Works does not and will not infringe any third party right, including rights arising from contracts between Licensor and third parties, copyright, trademark, trade secret, moral rights, privacy rights, rights of publicity, or any other intellectual property or proprietary rights.

7.3   **Appointment of Collective Rights Management Organisation**. If, during the Term, a CMO is registered as per the then applicable statutory requirements in the applicable part(s) of the Territory, as the sole body authorised to issue and grant licences for any or all rights in Musical Works throughout any part of the Territory, then, once Google obtains the requisite rights from such CMO any part of the Territory subject to such CMO's exclusive mandate will be excluded from this Agreement with respect to the rights controlled by the CMO. Google will (a) notify Licensor of the rights obtained from the CMO and (b) cease paying Royalties with respect to the rights obtained

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020673

GOOGLE CONFIDENTIAL

from the CMO as of the date on which the grant of rights from the CMO becomes effective. Licensor also undertakes to keep Google informed in a timely manner of the registration of a CMO in any part of the Territory under applicable local laws that is empowered to exclusively administer the Licensor Works.

**8.     DISCLAIMERS**.

Apart from the terms set out in this Agreement, and subject to clause 10.1, no conditions, warranties or other terms will apply. In particular, no implied conditions, warranties or other terms relating to satisfactory quality or fitness for any purpose will apply to anything supplied by either party.

**9.     INDEMNIFICATION**.

9.1     **Indemnity**. Licensor will indemnify Google and its Affiliates, directors, officers and employees against all liabilities, damages, losses, costs, fees (including reasonable legal fees) and expenses relating to any allegation or third-party legal proceeding to the extent based upon or otherwise arising from:

(a)     Google's (and its Affiliates') authorised use of any Licensor Works or Musical Works that are not Licensor Works but which are claimed by Licensor (including pursuant to clause 4.5 above) as Licensor Works, or any other content or materials made available by Licensor to Google under this Agreement; or

(b)     a claim alleging facts that would constitute a breach of Licensor's warranties in clause 7,

(each a "**Third-Party Legal Proceeding**").

9.2     **Conditions**. The obligation to indemnify under clause 9.1 is subject to:

(a)     Google promptly notifying Licensor of the Third-Party Legal Proceeding and cooperating reasonably with Licensor to resolve the Third-Party Legal Proceeding; and

(b)     Google not agreeing to any settlement thereof which requires Licensor to admit liability, pay money, or take (or refrain from taking) any action, without Licensor's prior written consent (not to be unreasonably withheld or delayed).

**10.    LIMITATION OF LIABILITY**.

10.1    Nothing in this Agreement will exclude or limit either party's liability for:

(a)     death or personal injury resulting from the negligence of either party or their servants, agents or employees;
(b)     fraud or fraudulent misrepresentation;
(c)     misuse of Confidential Information;
(d)     claims under the indemnity in clauses 5.3(c) and 9; or
(e)     payment of sums properly due and owing to the other in the course of normal performance of this Agreement.

10.2    To the maximum extent permitted by law, subject to clause 10.1, neither party will be liable under or in connection with this Agreement (whether in contract, tort (including negligence) or otherwise) for any:

(a)     loss of revenue;
(b)     loss of contracts or business opportunity;
(c)     loss of or corruption of data;

v.1.0                                          16

GOOGLE CONFIDENTIAL

(d)     loss of anticipated savings or any cost of substitute services;

(e)     loss of goodwill or reputation; or

(f)      special, indirect or consequential losses

suffered or incurred by the other party (whether or not any such losses were or were not foreseeable or within the contemplation of the parties).

10.3    Subject to clauses 10.1 and 10.2, each party's total aggregate liability under or in connection with this Agreement (whether in contract, tort (including negligence) or otherwise) arising in any Contract Year is limited to the greater of:

(a)     one hundred and twenty five percent (125%) of the amounts paid and payable by Google to Licensor under this Agreement in the relevant Contract Year; or

(b)     one hundred thousand United States dollars ($100,000).

## 11.    TERM AND TERMINATION.

11.1    **Term.**  This Agreement will commence on the Effective Date and will continue until/for a period of [TBD] unless terminated earlier as provided for in this Agreement (the "**Initial Term**"). Following the Initial Term, this Agreement will automatically renew for additional one (1) year terms unless either party gives at least ninety (90) days' written notice before the end of the then-current renewal term of its intent not to renew (the Initial Term and all renewal terms, collectively, the "**Term**").

11.2    **Termination.**

(a)     Either party may suspend performance or terminate this Agreement upon written notice to the other party if the other party:

(i)      is in material breach of this Agreement where such breach is incapable of remedy; or

(ii)     is in material breach of this Agreement where such breach is capable of remedy, and fails to remedy that breach within thirty (30) days after receiving written notice of such breach.

(b)     Either party may suspend performance or terminate this Agreement with immediate effect upon written notice to the other party, if in respect of the other party any of the following events occur:

(i)      it is, or is deemed for the purposes of any applicable law to be, unable to pay its debts as they fall due for payment;

(ii)     a petition is presented or documents filed with a court or any registrar or any resolution is passed for its winding-up, administration or dissolution or for the seeking of relief under any applicable bankruptcy, insolvency, company or similar law;

(iii)    any liquidator, trustee in bankruptcy, judicial custodian, compulsory manager, receiver, supervisor, administrative receiver, administrator or similar officer is appointed in respect of it or any of its assets; or

(iv)    any event analogous to the events listed in (i) to (iii) above takes place in any jurisdiction.

11.3    Google may terminate this Agreement immediately upon written notice to Licensor if Licensor breaches its warranties in clause 7 of this Agreement.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                          GOOG-SCHNDR-00020675

GOOGLE CONFIDENTIAL

11.4    Google may terminate this Agreement for convenience upon no less than sixty (60) days' prior written notice to Licensor.

11.5    **INTENTIONALLY DELETED**.

11.6    Following any expiry or termination of this Agreement, if Licensor has a surviving CIMA, Licensor will manage the display of Licensor Works on the Services via the System pursuant to such CIMA, save that: (a) all of Licensor's claims within the System may be set to a 'track' policy (and Licensor may choose to change the match policy to 'block'); and (b) Licensor will no longer be able to apply a 'monetize' policy. If Licensor does not have a surviving CIMA, all of Licensor's claims within the System may be released (including Licensor claims relating to 'monetized' content) and Google will use commercially reasonable efforts to cease display of Licensor Works to users within thirty (30) days after the effective date of expiry or termination (provided that the parties acknowledge and agree that any expiry or termination of this Agreement will be without prejudice to any separate rights to continue to include Licensor Works on the Services that may exist under applicable law (including, for example, under the principles of "fair use" or "fair dealing")).

11.7    Clauses 8, 9, 10, 11, 12 and 13 and of any other clauses that under their terms or by implication ought to survive, will survive the expiry or termination of this Agreement.

11.8    Where applicable, the parties agree that for the effectiveness of the termination clauses under this Agreement, to waive any provisions, procedures and operation of any applicable law to the extent that a court order is required for termination of this Agreement.

12.     **CONFIDENTIALITY**

12.1    The recipient of Confidential Information will not disclose it, except to Affiliates, employees, agents or professional advisors who need to know it and who have agreed in writing (or, in the case of professional advisors, are otherwise bound) to keep it confidential. The recipient will ensure that those people and entities use the received Confidential Information only to exercise rights and fulfil obligations under this Agreement, and that they keep it confidential. The recipient may also disclose Confidential Information when required by law, after giving reasonable notice to the discloser (if giving such notice is permitted by law).

12.2    Clause 12.1 above does not prevent Licensor from sharing (on a confidential basis) with an individual songwriter/composer client of Licensor such information as is reasonably required to explain to that songwriter/composer the basis and calculation methodology of the underlying payments, from Google to Licensor under this Agreement, on which his/her Licensor distributions are based (including, if applicable, for the AVOD Service, on a video-by-video basis, the number of views and the Net Ad Revenues reported by Google to Licensor in respect of each Video that embodies a Licensor Work in which the relevant Licensor member holds rights). Notwithstanding the foregoing, in no circumstances will Licensor disclose to any songwriter/composer or other third party (save in accordance with clause 12.1 above) the total Royalties (or any sub-totals for the Audio-Only Service, AVOD Service or any SVOD Service) paid, credited or otherwise reported to Licensor for any period.

13.     **GENERAL**

13.1    **Compliance with Anti-Bribery Laws.** In performing its obligations under this Agreement, Licensor will comply with all applicable commercial and public anti-bribery laws ("**Anti-Bribery Laws**"), including the U.S. Foreign Corrupt Practices Act of 1977 and the UK Bribery Act of 2010, which prohibit corrupt offers of anything of value, either directly or indirectly to anyone, including government officials, to obtain or keep business or to secure any other improper commercial advantage. Furthermore, Licensor will not make any facilitation payments, which are payments to induce officials to perform routine functions they are otherwise obligated to perform. "Government

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                          GOOG-SCHNDR-00020676

GOOGLE CONFIDENTIAL

officials" include any government employee; candidate for public office; and employee of government-owned or government-controlled companies, public international organisations, and political parties. Google may terminate this Agreement immediately upon written notice to Licensor if Google believes, in good faith, that Licensor has violated or caused Google to violate any Anti-Bribery Laws.

13.2    **Notices.** All notices of termination or breach must be in writing and addressed to the other party's Legal Department. The email address for notices being sent to Google's Legal Department is legal-notices@google.com.  All other notices must be in English, in writing and addressed to the other party's primary contact.  Notice will be treated as given on receipt, as verified by written or automated receipt or by electronic log (as applicable).

13.3    **Miscellaneous.**

    (a)    Publicity. Neither party may make any public statement regarding this Agreement without the other's written approval.

    (b)    Assignment. Neither party may assign any part of this Agreement without the written consent of the other, except that either party may assign any part of this Agreement to an Affiliate where: (i) the assigning party remains liable for obligations under this Agreement; and (ii) if Licensor is the assigning party, the assignee has agreed in writing to be bound by the terms of this Agreement and Licensor has notified Google of the assignment. Any other attempt to assign is void.

    (c)    Change of Control.  If a party experiences a change of control (for example, through a stock purchase or sale, merger, or other form of corporate transaction): (i) that party will give written notice to the other party within thirty (30) days after the change of control, and (ii) the other party may immediately terminate this Agreement any time between the change of control and thirty (30) days after it receives that written notice.

    (d)    Force Majeure. Neither party will be liable for failure or delay in performance to the extent caused by circumstances beyond its reasonable control.

    (e)    No Waiver. No party will be treated as having waived any rights by not exercising (or delaying the exercise of) any rights under this Agreement.

    (f)    No Agency. This Agreement does not create any agency, partnership or joint venture between the parties.

    (g)    No Third Party Beneficiaries. This Agreement does not confer any benefits on any third party unless it expressly states that it does.

    (h)    Counterparts. The parties may execute this Agreement in counterparts, including facsimile, PDF, and other electronic copies, which taken together will constitute one instrument.

    (i)    Amendments. Any amendment must be in writing, signed by both parties, and expressly state that it is amending this Agreement.

    (j)    Entire Agreement. Subject to clause 10.1(b), this Agreement sets out all terms agreed between the parties and supersedes all other agreements between the parties relating to its subject matter.  In entering into this Agreement neither party has relied on, and neither party will have any right or remedy based on, any statement, representation or warranty (whether made negligently or innocently), except those expressly set out in this Agreement.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020677

GOOGLE CONFIDENTIAL

(k)    <u>Severability</u>. If any term (or part of a term) of this Agreement is invalid, illegal or unenforceable, the rest of the Agreement will remain in effect.

(l)    <u>Conflicting Terms</u>. To the extent this Agreement conflicts with the CIMA, this Agreement will govern.

(m)    <u>Conflicting Languages</u>. If this Agreement is translated into any other language, and there is a discrepancy between the English text and the text of the other language, the English text will govern.

(n)    <u>Governing Law and Forum</u>.

> **[AU, NZ, JP, SG --** ALL CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, AND WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA COUNTY, CALIFORNIA, USA; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THOSE COURTS.**]**

–OR—

**[REST OF APAC --**This Agreement is governed exclusively by the laws of the State of California (excluding California's choice of law rules) and applicable federal U.S. laws. The parties will try in good faith to settle any dispute relating to this Agreement ("**Matter**") within 30 days after such Matter arises.  If the Matter is not resolved within 30 days, it must be resolved by arbitration by the International Centre for Dispute Resolution of the American Arbitration Association and conducted in accordance with its Expedited Commercial Rules in force as of the date of this Agreement.  There will be one arbitrator selected by mutual agreement of the parties. The arbitration will be conducted in English in Santa Clara County, California, USA.  Either party may apply to any court having jurisdiction for injunctive relief necessary to protect its rights pending resolution of the arbitration.  Any decision rendered by the arbitrator will be final and binding on the parties, and judgment thereon may be entered by any court of competent jurisdiction.  The arbitrator may order equitable or injunctive relief consistent with the remedies and limitations in this Agreement. All information disclosed in connection with the arbitration, including the existence of the arbitration, will be Confidential Information governed by clause 12.1 (Confidentiality) of this Agreement.

**Signed by the parties on the dates set out below.**

| Google LLC | _____ |
|---|---|
| BY:_____ | BY:_____ |
| NAME:_____ | NAME:_____ |
| TITLE:_____ | TITLE:_____ |
| DATE:_____ | DATE:_____ |
| | |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                            GOOG-SCHNDR-00020678

GOOGLE CONFIDENTIAL

## EXHIBIT A
## CSV FILE FORMAT FOR DATA EXCHANGE

| Field | Required | Description | Format | Example |
|---|---|---|---|---|
| custom_id | Required | A unique value that you use to identify a composition asset. For example, the custom id value could be a unique ID that you created for the asset or a standard identifier. Each composition asset must be identified by either a unique custom_id or a unique asset_id. Compositions with different titles must have different custom ids. | Text. This field has a maximum length of 64 bytes and may contain alphanumeric characters, hyphens (-), underscores (_), periods (.), arrobas (@), or forward slashes (/). | AAEE135A |
| asset_id | Optional | The ID of the composition asset you wish to update. Each particular value should only appear once in this spreadsheet. | Asset ID may contain alphanumeric characters, hyphens (-), or underscores (_) | A123456789012345 |
| related_isrc | Required if related_asset_id not provided | A pipe-delimited ('\|') list of ISRCs. No spaces around the pipe ('\|'). | The ISRC (International Standard Recording Code) of a sound recording. | US0000088888\|US0000099999 |
| related_asset_id | Required if related_isrc not provided | Related Asset IDs of the sound recording assets you would like to link your composition to. | A pipe-delimited ('\|') list of related Asset IDs. Asset ID may contain alphanumeric characters, hyphens (-), or underscores (_). | |
| iswc | Optional. | The unique ISWC (International Standard Musical Work Code) identifier for a composition. | Text. Must contain exactly 11 characters. | T0910050000 |
| title | Required. | The composition title. | Text. Maximum length of 255 characters. | My awesome title |
| add_asset_labels | Optional. | A list of labels to apply to the asset. You can apply a label to multiple assets to group them. You can use the labels as search filters to perform bulk updates or download reports, or to filter YouTube Analytics. | A pipe-delimited ('\|') list of labels. Labels may contain spaces, meaning an individual label can be more than one word long. Each label must be at least 2 characters long and may not be | Label One\|Label Two |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020679

GOOGLE CONFIDENTIAL

| | | | longer than 30 characters. You can provide up to 30 labels per asset with a maximum combined total length of 500 characters. | |
|---|---|---|---|---|
| hfa_song_code | Optional. | A six-character code that the Harry Fox Agency (HFA) issued to uniquely identify a composition. | Text. Must contain exactly 6 characters. | G1497T |
| writers | Required. | Writers associated with the composition. | A pipe-delimited ('\|') list of values. Maximum 50 writers. | Writer One\|Writer Two \| Writer Three |
| match_policy | Optional. | If Content ID is in use, this field specifies the policy that YouTube will apply to content uploaded by other users that matches this video. See http://support.google.com/youtube/answer/107383 for more information about CMS policies or https://www.youtube.com/content_id?#policy/m to see the policies defined for your CMS account. If you do not specify a policy, the policy that is set as the 'Default Match Policy' in your CMS account will be used. | | Monetize in all countries |
| publisher_name | Required. | The publisher's name. | Text. | Foo Publishing |
| mechanical_ownership_share | Required | Provide mechanical ownership share information. If several different values need to be provided, use separate lines | Numerical value between 0 and 100. No % symbol. | 50 |
| mechanical_ownership_territory | Required if mechanical_ownership_restriction is 'include'. Can be blank if mechanical_ownership_restriction is 'exclude'. | Provide the list of territories where the mechanical_ownership_share should be applied. Use different lines if different percentages should be applied. The list of territories should match the list of licensed territories as specified in the contract. | A space-delimited list of ISO country codes. For WW ownership, enter 'include' in the mechanical_ownership_restriction column and 'WW' in this column. For ISO country codes, see https://www.iso.org/obp/ui/#search/code/. | JP KR AU |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

GOOG-SCHNDR-00020680

GOOGLE CONFIDENTIAL

| mechanical_owne rship_restriction | Required if mechanical_owne rship_share is provided. | | Always "include" | include |
|---|---|---|---|---|
| performance_own ership_share | Required | Provide ownership share information for performance/performing rights. If several different values need to be provided, use separate lines as in the example below | Numerical value between 0 and 100. No % symbol. | include |
| performance_own ership_share | Required | | Always "include" | 44 |
| performance_own ership_territory | Required if performance_own ership_restriction is 'include'. Can be blank if performance_own ership_restriction is 'exclude'. | Provide the list of territories where the performance_ownership_ share should be applied. Use different lines if different percentages should be applied. The list of territories should match the list of licensed territories as specified in the contract. | A space-delimited list of ISO country codes. For WW ownership, enter 'include' in the performance_owners hip_restriction column and 'WW' in this column. For ISO country codes, see https://www.iso.org/o bp/ui/#search/code/. | JP KR AU |
| performance_own ership_restriction | Required if performance_own ership_share is provided. | Always "include" | Always "include" | include |

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                          GOOG-SCHNDR-00020681

GOOGLE CONFIDENTIAL

## EXHIBIT B
## ROYALTIES

Where Google uses the rights granted herein in connection with the exhibition of content via the Services, the following rates apply.

1.    **AVOD Service.** The Royalties for the AVOD Service are:

(a)    <u>Music Content</u> - ███████████ of Net Ad Revenues attributable to any Music Content which has been identified as embodying a Licensor Work (adjusted pro rata to reflect fractional interests and/or the Apportionment, if applicable);

plus

(b)    <u>General Entertainment Content</u> - █████████████████ of Net Ad Revenues attributable to:

(i)    General Entertainment Content identified by the System as matching any Music Video, Sound Recording and/or Melody ID File which has been identified as embodying a Licensor Work (adjusted pro rata to reflect fractional interests and/or the Apportionment, if applicable); and

(ii)    General Entertainment Content not identified by the System as matching any Music Video, Sound Recording or Melody ID File, multiplied by Licensor's Activity Ratio.

For the purposes of this paragraph 1, and for the purposes of the definition of Licensor's Activity Ratio and clause 5.5(a) of the Agreement, references to "identified as embodying a Licensor Work" mean that: (i) Licensor has claimed (via the Data Exchange process or otherwise via the System) that the relevant Video contains a Licensor Work; (ii) the claim is not in Conflict and (iii) there is no Dispute.

2.    **SVOD Services.** The Royalties for the SVOD Services are:

Net Subscription Revenues multiplied by the percentage resulting from the sum of A and B (where (i) 'A' equals ████████ multiplied by the Music Share; and (ii) 'B' equals █ multiplied by the GE Share), then multiplied by Licensor's Activity Ratio.

The Royalties for the SVOD Services will be calculated separately for each SVOD Service and may also be calculated separately in respect of particular pools of subscribers (e.g., for subscribers in Free Trials).

3.    **Advertising in SVOD Services.**  If any SVOD Service contains advertisements, then Royalties arising from the serving of any ads within any SVOD Service (if applicable) will also be calculated and paid in accordance with paragraph 1 of this Exhibit B.

4.    **Audio-Only Service**.  The Royalties for the Audio-Only Service will be calculated in accordance with a rate and methodology that is at least as favorable as the rate and methodology applied to at least one similarly situated music publishing licensor as at the time of launch in the applicable country.

For clarity, the royalties set forth herein will only apply to the Audio-Only Service and not to the AVOD Service or the SVOD Services.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                      GOOG-SCHNDR-00020682

GOOGLE CONFIDENTIAL

5.   **Rate Change.**   If any major publisher agrees to any rates for the Services that are lower than the rates set forth in this Exhibit B, including with respect to bundling, Google will have the right to reduce Licensor's analogous rates accordingly, following written notice (email to suffice) to Licensor.

v.1.0                                              25

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY                                              GOOG-SCHNDR-00020683