# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, and AST PUBLISHING, LTD., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YOUTUBE, LLC and GOOGLE LLC,<br><br>Defendants. | Case No. 3:20-cv-04423-JD<br><br>**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS** |
| YOUTUBE, LLC and GOOGLE LLC,<br><br>Counterclaimants,<br><br>v.<br><br>PIRATE MONITOR LTD., et al.,<br><br>Counterclaim Defendants. | |

The Court will give these final instructions for the *Schneider v. YouTube* trial, Case No. 3:20-cv-04423-JD.

**IT IS SO ORDERED.**

Dated: []

 

_____

JAMES DONATO
United States District Judge

INSTRUCTION NO. 1

DUTIES OF JURY TO FIND FACTS AND FOLLOW LAW

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law that applies to this case. You will each be given a copy of these instructions to refer to during your deliberations.

It is your duty to weigh and to evaluate all the evidence received in the case and, in that process, to decide the facts. It is also your duty to apply the law as I give it to you to the facts as you find them, whether you agree with the law or not. You must decide the case solely on the evidence and the law. Do not allow personal likes or dislikes, sympathy, prejudice, fear, or public opinion to influence you. You should also not be influenced by any person's race, color, religion, national ancestry, gender, sexual orientation, profession, occupation, economic circumstances, or position in life or in the community. You will recall that you took an oath promising to do so at the beginning of the case.

You must follow all these instructions and not single out some and ignore others; they are all important. Please do not read into these instructions or into anything I may have said or done any suggestion as to what verdict you should return -- that is a matter entirely up to you.

INSTRUCTION NO. 2

CLAIMS AND DEFENSES

I will give you a brief summary of the positions of the parties:

The Plaintiffs are Maria Schneider, Uniglobe Entertainment, and AST Publishing. They bring claims of copyright infringement against YouTube and Google.  The Defendants Google and YouTube deny that they have infringed the plaintiffs' copyrights. The defendants also assert affirmative defenses, such as license and the statute of limitations. The defendants have the burden of proof on their affirmative defenses.

Plaintiff Maria Schneider claims that Defendants YouTube and Google violated the Digital Millennium Copyright Act, or the "DMCA." Ms. Schneider has the burden of proving each of these claims by a preponderance of the evidence.  Defendants Google and YouTube deny Ms. Schneider's claims.  Google and YouTube also assert affirmative defenses based on the statute of limitations. Defendants have the burden of proof on their affirmative defenses.

Google and YouTube also assert a counterclaim against Counterclaim Defendants Pirate Monitor Ltd. and Gabor Csupó for violating the DMCA.  Google and YouTube bear the burden of proof on their counterclaims.

The Counterclaim Defendants deny those counterclaims.

1

<u>INSTRUCTION NO. 3</u>

2

BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

3      When a party has the burden of proving any claim or affirmative defense by a

4  preponderance of the evidence, it means you must be persuaded by the evidence that the claim or

5  affirmative defense is more probably true than not true.

6      You should base your decision on all of the evidence, regardless of which party presented

7  it.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>INSTRUCTION NO. 4</u>

CORPORATIONS -- FAIR TREATMENT

Some of the parties in this case are corporations. All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers, performed within the scope of authority. An act is within the scope of a person's authority if it is within the range of reasonable and foreseeable activities that an employee, agent, director, or officer engages in while carrying out that person's business.

1

INSTRUCTION NO. 5

2

WHAT IS EVIDENCE

3  The evidence you are to consider in deciding what the facts are consists of:

4  1.      the sworn testimony of any witness;

5  2.       the exhibits that are admitted into evidence;

6  3.      any facts to which the lawyers have agreed; and

7  4.      any facts that I may instruct you to accept as proved.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

INSTRUCTION NO. 6

WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

3.      Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4.      Anything you may see or hear when the court was not in session is not evidence. You ar to decide the case solely on the evidence received at the trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 7</u>

DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

1

## INSTRUCTION NO. 8

2

## RULING ON OBJECTIONS

3      There are rules of evidence that control what can be received into evidence. When a lawyer

4   asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was

5   not permitted by the rules of evidence, that lawyer objected. If I overruled the objection, the question

6   was answered or the exhibit was received. If I sustained the objection, the question was not answered,

7   or the exhibit was not received. Whenever I sustained an objection to a question, you must ignore the

8   question and must not guess what the answer might have been.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 9

### DEPOSITION IN LIEU OF LIVE TESTIMONY

During the trial, you heard testimony by witnesses in the form of previously recorded depositions rather than live here in court. A deposition is the sworn testimony of a witness taken before trial. The witness was placed under oath to tell the truth, and lawyers for each side asked questions. The questions and answers were recorded.

Insofar as possible, you should consider deposition testimony presented to you in court in lieu of live testimony, in the same way as if the witnesses had been present to testify.

INSTRUCTION NO. 10

CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness's memory;

(3)    the witness's manner while testifying;

(4)    the witness's interest in the outcome of the case, if any;

(5)    the witness's bias or prejudice, if any;

(6)    whether other evidence contradicted the witness's testimony;

(7)    the reasonableness of the witness's testimony in light of all the evidence; and

(8)    any other factors that bear on believability.

Sometimes a witness may have said something that is not consistent with something else he or she said. Sometimes different witnesses gave different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

INSTRUCTION NO. 11

EXPERT OPINION

You have heard testimony from expert witnesses who testified to opinions and the reasons for their opinions. This opinion testimony was allowed because of the education or experience of the expert witness.

Such opinion testimony should be judged like any other testimony. You may accept it, reject it, or give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

## INSTRUCTION NO. 12

## CHARTS AND SUMMARIES

During trial, certain charts and summaries were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Some of those charts or summaries were admitted into evidence, while others were not. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

## INSTRUCTION NO. 13

2

FOREIGN LANGUAGE TESTIONY

3       You heard witnesses testifying in Russian. Witnesses who do not speak English or are

4   more proficient in another language testify through an official court interpreter. Although you

5   may know Russian, and be tempted to rely on your own understanding of the language, you

6   cannot do that because it is important that all jurors consider the same evidence. You must accept

7   the interpreter's translation of the witness's testimony, and disregard any different meaning or

8   interpretation from any other source, including your own understanding of the language.

9       You must not make any assumptions about a witness, or a party based solely on the use

10  of an interpreter to assist that witness or party.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSTRUCTION NO. 14

TRANSLATED DOCUMENTS

You saw English translations of documents that were written originally in Russian or Hungarian. You must accept the translation of the document, and disregard any different meaning or interpretation from any other source, including any understanding of the foreign language that you might have. The translation is the evidence, not the foreign language in the original document. This is important to ensure that all jurors consider only the same evidence.

INSTRUCTION NO. 15

STIPULATIONS OF FACT

The parties have agreed to certain facts that I will now read to you. You must treat these facts as having been proved.

1.      Plaintiff Maria Schneider is a citizen of the State of New York.

2.      Plaintiff Uniglobe Entertainment, LLC is a Wyoming limited liability company with its principal place of business in Los Angeles County, California.

3.      Plaintiff AST Publishing Ltd. is a Russian company.

4.      Defendant and Counterclaim Plaintiff YouTube, LLC is a Delaware limited liability company with its principal place of business in San Bruno, California.

5.      Defendant and Counterclaim Plaintiff Google LLC is a Delaware limited liability company with its principal place of business in Mountain View, California.

6.      YouTube is a wholly owned and controlled subsidiary of Defendant Google.

7.      Counterclaim Defendant Pirate Monitor Ltd. is a limited company with its principal place of business in the British Virgin Islands.

8.      Counterclaim Defendant Pirate Monitor LLC does not exist.

9.      Counterclaim Defendant Gabor Csupó is citizen of Hungary and a resident of the State of California.

10.     Counterclaim Defendant Csupó is the sole stockholder and managing director of Counterclaim Defendant Pirate Monitor LTD.

11.     Plaintiffs Schneider and Pirate Monitor Ltd. filed the Class Action Complaint on July 2, 2020.

12.     Defendants YouTube and Google filed their Answer and Counterclaims on September 21, 2020.

13.     Defendants YouTube and Google filed their Amended Counterclaims on February 19, 2021.

14.     Plaintiff and Counterclaim Defendant Pirate Monitor Ltd. filed its Voluntary Dismissal Pursuant to Stipulation Under FRCP 41(a)(1)(A)(ii) on March 8, 2021.

15.     Counterclaim Defendant Pirate Monitor Ltd. filed its Answer to Defendants' Amended Counterclaims on March 12, 2021.

16.     Counterclaim Defendant Csupó filed his Answer to Defendants' Amended Counterclaims on March 17, 2021.

17.     Plaintiffs Schneider, Uniglobe and AST filed their First Amended Class Action complaint on November 17, 2021.

18.     Defendants YouTube and Google filed their Answer and Counterclaims to the Amended Complaint on August 22, 2022.

19.     Counterclaim Defendant Pirate Monitor Ltd. filed its Answer to Defendants' Amended Counterclaims on March 12, 2021.

20.     Counterclaim Defendant Csupó filed his Answer to Defendants' Amended Counterclaims on March 17, 2021.

21.     Pirate Monitor LLC does not exist.

22.     Pirate Monitor Ltd. was dormant in 2019.

23.     Mr. Csupó acquired Pirate Monitor Ltd. in January 2020.

24.     Mr. Csupó did not own Pirate Monitor Ltd. in 2019.

25.     Videos that are the subject of the 1,975 DMCA takedown notices at issue in Defendants' counterclaims were uploads authorized by their respective copyright owners.

26.     Videos that are the subject of the 1,975 DMCA takedown notices at issue in Defendants' counterclaims were uploaded in four batches between August and November 2019.

27.     Gabor Csupó purchased Pirate Monitor Ltd. after submission of the 1,975 takedown notices at issue in Defendants' counterclaims.

28.     Pirate Monitor Ltd. entered into a License Agreement with MegaFilm dated January 24, 2020 for the rights to the usage of *Juska Menni Amerika*, *Zimmer Feri 2*, and *Vakvaganyok*.

29.     Mr. Csupó acquired IPLLC in March 2019.

30.     MegaFilm entered into a contract with IPLLC in 2019.

31.     Under the contract, MegaFilm authorized IPLLC to enforce MegaFilm's copyrights in several Hungarian films, including two films titled *Czak Szex es mas semi* and *Zimmer Feri*.

32.     YouTube disabled public access to the videos that were the subject of the takedown notices submitted in October-November 2019 for *Czak Szex es mas semi* and *Zimmer Feri*.

33.     YouTube spent approximately $20,000-$25,000 in personnel time in its 2019 investigation into the takedown notices submitted in October-November 2019 for *Czak Szex es mas semi* and *Zimmer Feri*.

34.     The individual(s) who personally uploaded the approximately 1,970 video clips of *Czak Szex es mas semi* and *Zimmer Feri* in August-November 2019 has/have not personally brought claims against YouTube in a court of law alleging that YouTube wrongfully disabled public access to the videos.

35.     In 2019, a YouTube account was opened called "Pirate Monitor LLC" through which access to ContentID was requested.

36.     After the investigation in November 2019, YouTube suspended the account with the name "Pirate Monitor LLC."

37.     After the investigation in November 2019, YouTube suspended the account with the name "IPLLC."

.

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 16</u>

AGENT AND PRINCIPAL

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal.  One may be an agent without receiving compensation for services.  The agency agreement may be oral or written.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.4 (2017).

INSTRUCTION NO.17

PRELIMINARY INSTRUCTION—COPYRIGHT

Plaintiffs Maria Schneider and Uniglobe Entertainment claim ownership of a copyright and seek damages against the defendants Google and YouTube for copyright infringement. Defendants deny infringing the copyright and assert affirmative defenses of license, the statute of limitations, contractual limitations, and fair use.  To help you understand the evidence in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF COPYRIGHT**

The owner of a copyright has the right to exclude any other person from reproducing, distributing, performing, displaying, or preparing derivative works from the work covered by copyright for a specific period of time.

A copyrighted work can be a literary work, musical work, dramatic work, choreographic work, motion picture, audiovisual work, or sound recording.

Facts, ideas, procedures, processes, systems, methods of operation, concepts, principles, or discoveries cannot themselves be copyrighted.

The copyrighted work must be original.  An original work that closely resembles other works can be copyrighted so long as the similarity between the two works is not the result of copying.

**COPYRIGHT INTERESTS**

The copyright owner may transfer or convey to another person all or part of the owner's property interest in the copyright, that is, the right to exclude others from reproducing, distributing, performing, displaying or preparing derivative works from the copyrighted work. To be valid, the transfer or conveyance must be in writing and signed by the transferor.  The person to whom a right is transferred is called an assignee.

The copyright owner may agree to let another person exclusively reproduce, distribute, perform, display, use, or prepare a derivative work from the copyrighted work.  To be valid, the transfer or conveyance must be in writing and signed by the transferor.  The person to whom this

3:20-cv-04423-JD

right is transferred is called an exclusive licensee.  The exclusive licensee has the right to exclude others in the manner described in the license.

## HOW COPYRIGHT IS OBTAINED

Copyright automatically attaches to a work the moment the work is fixed in any tangible medium of expression.  The owner of the copyright may apply to register the copyright by completing a registration form and depositing a copy of the copyrighted work with the Copyright Office.  After determining that the material deposited constitutes copyrightable subject matter and that certain legal and formal requirements are satisfied, the Register of Copyrights registers the work and issues a certificate of registration to the copyright owner.

## PLAINTIFF'S BURDEN OF PROOF

In this case, plaintiffs contend that defendants have infringed the plaintiffs' copyrights. The plaintiff has the burden of proving by a preponderance of the evidence that the plaintiff is the owner of the copyright and that the defendant copied, publicly performed, or publicly displayed original expression from the copyrighted work.  Preponderance of the evidence means that you must be persuaded by the evidence that it is more probably true than not true that the copyrighted work was infringed.

The plaintiff must also prove that the defendant's use of the copyrighted work was substantial.  In determining whether the defendant's use of the copyrighted work was substantial, you may consider how important the copied portion was to the copyrighted work as a whole.

## PROOF OF COPYING

To prove that a person copied the plaintiff's work, the plaintiff may show that a person had access to the plaintiff's copyrighted work and that there are substantial similarities between the person's work and the plaintiff's copyrighted work.

## LIABILITY FOR INFRINGEMENT

One who reproduces, publicly distributes, publicly performs, publicly displays, or prepares derivative works from a copyrighted work without authority from the copyright owner during the term of the copyright infringes the copyright.

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

Copyright may also be infringed by vicariously infringing or contributorily infringing.

## VICARIOUS INFRINGEMENT

A person is liable for copyright infringement by another if the person has profited directly from the infringing activity and had the right and ability to supervise or control the infringing activity, whether or not the person knew of the infringement.

## CONTRIBUTORY INFRINGEMENT

A person is liable for copyright infringement by another if the person knows or should have known of the infringing activity and induces or materially contributes to the activity.

## DEFENSES TO INFRINGEMENT

Defendants contend that there is no copyright infringement.  There is no copyright infringement when the defendant made fair use of the copyrighted work by reproducing copies for purposes such as criticism, comment, news reporting, teaching, scholarship, or research, the plaintiff granted the defendant an express license to use or copy the plaintiff's copyrighted work, or the plaintiff granted the defendant an implied license to use the plaintiff's copyrighted work.

Authority: Circuit Model Instruction 17.1 adapted to the needs of this case.

1
2

<u>DISPUTED INSTRUCTION NO. 18</u>

COPYRIGHT—DEFINED: OFFERED BY PLAINTIFFS

3     Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights

4   to, or authorize others to:

5       1.      reproduce the copyrighted work in copies;

6       2.      recast, transform, or adapt the work, that is prepare derivative works based

7               upon the copyrighted work;

8       3.      distribute copies of the copyrighted work to the public;

9       4.      perform publicly, including by streaming over the internet, a copyrighted

10              literary work, musical work, dramatic work, or motion picture;

11      5.      display publicly, including by streaming over the internet, a copyrighted

12              literary work, musical work, dramatic work, or individual image of a

13              motion picture; and

14      6.      perform a sound recording by means of digital audio transmission.

15      It is the owner of a copyright who may exercise these exclusive rights.  The term "owner"

16   includes the author of the work, an assignee, or an exclusive licensee.  In general, copyright law

17   protects against reproduction, adaptation, public distribution, public performance, or public

18   display of identical or substantially similar copies of the owner's copyrighted work without the

19   owner's permission.  An owner may enforce these rights to exclude others in an action for

20   copyright infringement.

21
22
23
24
25
26
27
28

3:20-cv-04423-JD

DISPUTED INSTRUCTION NO. 18

COPYRIGHT—DEFINED: OFFERED BY DEFENDANTS

Copyright is the exclusive right to copy.  This right to copy includes the exclusive rights to, or authorize others to:

1. reproduce the copyrighted work in copies;

2. recast, transform, or adapt the work, that is prepare derivative works based upon the copyrighted work;

3. distribute copies of the copyrighted work to the public;

4. perform publicly a copyrighted literary work, musical work, dramatic work, or motion picture;

5. display publicly a copyrighted literary work, musical work, dramatic work, or individual image of a motion picture; and

6. perform a sound recording by means of digital audio transmission.

It is the owner of a copyright who may exercise these exclusive rights.  The term "owner" includes the author of the work, an assignee, or an exclusive licensee.  In general, copyright law protects against reproduction, adaptation, public distribution, public performance, or public display of identical or substantially similar copies of the owner's copyrighted work without the owner's permission.  An owner may enforce these rights to exclude others in an action for copyright infringement.

Authority: Ninth Circuit Model Instruction 17.2

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

1

**Plaintiffs' Argument re Disputed Instruction No. 18: Copyright—Defined**

2
       Plaintiffs' and Defendants' proposed instructions are nearly identical, with one important

3 difference.

4
       In subparts (4) and (5), Plaintiffs add the phrase "including by streaming over the internet"

5 to describe the type of public performance and public display at issue. *A&M Recs., Inc. v. Napster,*

6 *Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001)  (users who make digital copies of copyrighted works

7 available for others to download violate the exclusive distribution right); *Warner Bros. Entm't v.*

8 *WTV Systems, Inc.*, 824 F.Supp.2d 1003, 1008–1012 (C.D.Cal.2011) (provider of unauthorized

9 on-demand movie streaming service violated the performance right of copyright owners);

10 *Columbia Pictures Indus., Inc. v. Galindo*, 2022 WL 17094713, at *7 (C.D. Ca. Nov. 18, 2022)

11 ("Streaming a copyrighted work over the internet qualifies as public performance.").  This modest

12 addition to the Ninth Circuit model instruction thus clarifies to the jury that the rights to public

13 performance and public display encompass streaming over the internet, consistent with Ninth

14 Circuit law.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Argument re Disputed Instruction No. 18: Copyright—Defined**

There is one difference between the Plaintiffs' and the Defendants' proposals.  Apart from minor modifications agreed upon by the parties, Defendants adapt the Ninth Circuit's model instruction in full.  Plaintiffs seek to add the phrase "including by streaming over the Internet" to two places in the model instruction.  Plaintiffs cannot justify their effort to depart from the model instruction, and their proposal should be rejected.

Plaintiffs can offer no convincing reason for the gratuitous suggestion that the instruction should highlight "streaming over the Internet."  Plaintiffs cannot establish that streaming a video over the Internet infringes a copyright, but inclusion of Plaintiffs' phrase draws undue attention to Internet-based conduct and may mislead the jury into believing that the exclusive rights are different on the Internet than in the non-digital world, when that is not the case.

<u>INSTRUCTION NO. 19</u>

COPYRIGHT—SUBJECT MATTER—GENERALLY

The works involved in this trial are known as:

1.     literary works, including screenplays and the text of audiobooks; in which words, numbers, or other verbal or numerical symbols are expressed;

2.     musical works, including compositions, and any accompanying words;

3.     dramatic works, including any accompanying music;

4.     motion pictures and other audiovisual works; and

5.     sound recordings, which are works that result from fixation of a series of musical, spoken, or other sounds;

You are instructed that a copyright may be obtained in such works.

These works can be protected by copyright law.


*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.3 (2017).

<u>INSTRUCTION NO. 20</u>

COPYRIGHT INFRINGEMENT—OWNERSHIP OF VALID COPYRIGHT—DEFINITION

The plaintiff is the owner of a valid copyright in a work if the plaintiff proves by a preponderance of the evidence that:

1.      the plaintiff's work is original; and

2      the plaintiff is the author or creator of the work, received a transfer of the copyright, or received a transfer of the right to reproduce, distribute, perform, display or prepare derivative works.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.6 (2017).

<u>INSTRUCTION NO. 21</u>

COPYRIGHT INFRINGEMENT—COPYRIGHT REGISTRATION CERTIFICATE[1]

A copyright owner may obtain a certificate of registration from the Copyright Office.

[*When defendant does not present evidence regarding validity or ownership of copyright*]

The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office. You are instructed that the certificate is sufficient to establish that there is a valid copyright in [*identify the work in question*].

[*When defendant presents evidence regarding validity or ownership of copyright*]

The evidence in this case includes Exhibit ___, a certificate of copyright registration from the Copyright Office. [If you find that this certificate was made within five years after first publication of the plaintiff's work, you may consider this certificate as evidence of the facts stated in the certificate.] From this certificate you may, but need not, conclude that: [*state specifics of the certificate relevant to the case, e.g., that plaintiff's work is the original and copyrightable work of the author and that the plaintiff owns the copyright in that work*], which I explain in Instructions [*insert instruction numbers relevant to elements of plaintiff's burden*].

Authority: Ninth Circuit Model Instruction No. 17.7.

---

[1] The parties agree to submit a superseding instruction, prior to the charging conference, based on the evidence presented at trial.

DISPUTED INSTRUCTION NO. 22

THE PRE-SUIT REGISTRATION REQUIREMENT AND FOREIGN WORKS:  OFFERED BY PLAINTIFFS[2]

For some of the copyrights in this case, you must decide whether the copyright is for a United States work or a foreign work. A work is a United States work only if the work is first published:

1.  in the United States; or

2.  simultaneously in the United States and a country that protects copyright for as long as the United States.

A foreign work is any work that is not a United States work.

For purposes of this instruction, publication includes offering a work for sale or distribution. Publication does not include posting a work online.

*Authority*: 17 U.S.C. § 101; *Moberg v. 33T LLC*, 666 F. Supp. 2d 415, 423 (D. Del. 2009) (posting a work online is not publishing within the meaning of a United States work in the Copyright Act).

.

---

[2] At the timing of this filing, the parties are conferring about a trial-presentation plan that would streamline trial.  Based on the parties' ultimate agreement and subject to the Court's approval thereof, this Instruction and others may ultimately be unnecessary.

DISPUTED INSTRUCTION NO. 22

THE PRE-SUIT REGISTRATION REQUIREMENT AND FOREIGN WORKS:  OFFERED

BY DEFENDANTS

For some of the copyrights in this case, you must decide whether the copyright is for a "United States work" or a "foreign work."

Uniglobe asserts that *5 Weddings (Hindi Version)* is a foreign work.  The defendants assert that it is a United States work because it was first published globally.  Uniglobe must prove by a preponderance of the evidence that *5 Weddings (Hindi version)* is a foreign work; if it does not do so, you must find that *Weddings (Hindi version)* is a United States work.

AST asserts that all of its copyrights are for foreign works.  The defendants assert that they are United States works because they were first published globally.  AST must prove by a preponderance of the evidence that its works are foreign works; if it does not do so, you must find that AST's works are United States works.

A work is a United States work only if the work was first published:

1.      in the United States;

2.      simultaneously in the United States and a country whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States; or

3.      simultaneously in the United States and a country that is not a party to a copyright treaty to which the United States is a party.

A foreign work is any work that is not a United States work.

For purposes of this instruction, publication includes offering a work for sale, rent, or lease, or offering to distribute a work for the purposes of further distribution, public performance, or public display.  Publication may occur on streaming services such as YouTube. If someone publishes a work on a public website that is hosted in one country, it is simultaneously published in all other countries where that website is accessible.

Authority: There is no Ninth Circuit Model Instruction for this topic.  Defendants rely on 17 U.S.C. § 101 (definitions for "United States work" and "publication"), § 411 (pre-suit registration requirement); *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 886 (2019); *Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *14 (M.D. Tenn. Mar. 28, 2023) ("[W]hen Plaintiff made Plaintiff's work available on YouTube, Instagram, and Twitter, she published her work within the meaning of the Copyright Act."); *see also New Show Studios, LLC v. Needle*, No. 214CV01250CASMRWX, 2016 WL 5213903, at *7 (C.D. Cal. Sept. 20, 2016) (videos first "published" on YouTube); *Kernal Recs. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011) ("[P]ublishing [a work] on a website in Australia was an act tantamount to global and simultaneous publication of the work."), *aff'd on other grounds* 694 F.3d 1294 (11th Cir. 2012); 2 Nimmer on Copyright § 7.16(B)(6)(e).

1

2

**Plaintiffs' Argument re Disputed Instruction No. 22: The Pre-Suit Registration Requirement and Foreign Works**

3       Plaintiffs' proposed instruction tracks the definition of "United States work" from 17

4   U.S.C. § 101.  Under the statute, a work is a "United States work" only if "(1) in the case of a

5   published work, the work is first published (A) in the United States; [or] (B) simultaneously in the

6   United States and another treaty party or parties, whose law grants a term of copyright protection

7   that is the same as or longer than the term provided in the United States…." 17 U.S.C. § 101.  A

8   foreign work is any work that is not a United States work.  Plaintiffs' instruction also includes the

9   definition of "publication," again based on the definition from 17 U.S.C. § 101 and case law that

10  interpret this definition.  As that case law makes clear, posting a work online does not constitute

11  simultaneous publication within the meaning of the Copyright Act.  *See Moberg v. 33T LLC*, 666

12  F. Supp. 2d 415, 423 (D. Del. 2009); *Rogers v. Better Bus. Bureau of Metro. Houston, Inc.*, 887 F.

13  Supp. 2d 722, 731 (S.D. Tex. 2012).  The Copyright Office's own definition of "publication" is in

14  accord.  *See* Compendium of U.S. Copyright Office Practices § 1008.3(B) ("the Office does not

15  consider a work to be published if it is merely displayed or performed online").

16      Defendants' proposed instruction ignores this case law and the Copyright Office's

17  guidance and assumes that any work uploaded to the internet is simultaneously published within

18  the meaning of the Act.  This theory—raised for the first time in a proposed jury instruction—

19  would render null the Copyright Act's protection for the millions of foreign works uploaded to the

20  internet prior to publication.  *Cf. Rogers*, 887 F. Supp. 2d at 732 n. 34 ("A determination that a

21  live website is necessarily published would have wide-ranging effects on the rights of authors and

22  users[.]").  This sweeping change to the scope of the Copyright Act should be rejected.

23      Further, Defendants' newfound argument would cause the Copyright Act to violate

24  international law.  "[A]n act of Congress ought never to be construed to violate the law of nations

25  if any other possible construction remains, and consequently can never be construed to violate

26

27                                                                    3:20-cv-04423-JD

28
                    **REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

neutral rights, or to affect neutral commerce, further than is warranted by the law of nations as understood in this country." *Murray v. Schooner Charming Betsy, The*, 6 U.S. 64, 118 (1804). The Ninth Circuit affirmed that the *Charming Betsy* canon applies with full force to the Copyright Act. *Fox Television Stations, Inc v. Aereokiller, LLC*, 851 F.3d 1002, 1011 (9th Cir. 2017) ("interpreting § 111 so as to include Internet-based retransmission services would risk putting the United States in violation of certain of its treaty obligations. An age-old canon of construction instructs that 'an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.')). The Berne convention excludes streaming and broadcast from publication. Berne Conv. art. 3 § 3 ("The expression 'published works' means works published with the consent of their authors, whatever may be the means of manufacture of the copies, provided that the availability of such copies has been such as to satisfy the reasonable requirements of the public, having regard to the nature of the work. . . . The communication by wire or the broadcasting of literary or artistic works . . . shall not constitute publication."). To conform to international law, the Copyright Act should be interpreted in the same way.

In addition, offering worldwide rights of distribution does not render the work in question a United States work because it will simultaneously be offered to treaty another treaty party or parties, whose law grants a term of copyright protection that is the *not* the same as or longer than the term provided in the United States." *Dish Network v. Fraifer*, 2020 W.L. 1515938 (M.D. Fla. 2020) (concluding that simultaneous offering for distribution in United States and the Middle East does not render work a United States work because several Middle Eastern treaty countries offer copyright protection of a shorter duration than that provided under U.S. law). *Cf. Elliott v. Gouverneur Tribune Press, Inc.*, 7:13-CV-00055, 2014 WL 12598275, at *3 (N.D.N.Y. Sept. 29, 2014) (denying Defendants' motion for summary judgment and rejecting Defendants' argument that Plaintiff published her photographs when she posted them on the internet). In any event, Defendants' instruction misstates the law and should thus not be presented to the jury.

1

2

**Defendants' Argument re Disputed Instruction No. 22: The Pre-Suit Registration Requirement and Foreign Works**

3

4

5

6

7

8

9

10

11

12

13

14

This instruction pertains to Uniglobe's infringement claim for *5 Weddings (Hindi version)* and AST's infringement claim for all of its works.  In general, a plaintiff must register its work with the U.S. Copyright Office before an infringement case can move forward in federal court. 17 U.S.C. § 441; 2 Nimmer on Copyright § 7.16(B)(1)(a) (2023).  However, this pre-suit registration requirement applies only to "United States works," and not "foreign works."  *See* 17 U.S.C. §§ 101 (definition of "United States work"), 441 (imposing the pre-suit registration requirement only on "civil action[s] for infringement of the copyright in any United States work"); 2 Nimmer on Copyright § 7.16(B)(1)(b)(ii) (2023).  Uniglobe does not contend that it has a copyright registration for *5 Weddings (Hindi version)*.  AST does not contend that it has a copyright registration for any of its works.  Accordingly, Uniglobe and AST cannot maintain an action for infringement with respect to *5 Weddings (Hindi Version)* and AST's works unless the plaintiffs establish that these are "foreign works" under the Copyright Act.

15

16

17

18

19

20

21

22

23

24

25

The proposed instruction informs the jury that a work is "published" under the Act if it is broadly shared online for the purpose of further distribution, public performance, or public display.  Under 17 U.S.C. § 101, "'[p]ublication' [includes] the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." Publication also includes "[t]he offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display" although "[a] public performance or display of a work" is not "itself" sufficient for publication.  *Id.*  Accordingly, the "U.S. Copyright Office "generally considers a work 'published' when the copyright owner makes copies or phonorecords available online and offers to distribute them to a group of persons for purposes of further distribution, public performance, or public display."  *Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *8 (M.D. Tenn. Mar. 28, 2023) (simplified).

26

27

28

Because online distribution for the purpose of further distribution, public performance, or public display qualifies as publication, courts have found that when a plaintiff "made [the plaintiff's] work available on YouTube, Instagram, and Twitter, she published her work within

the meaning of the Copyright Act." *Brunson,* 2023 WL 2668498  at *14; *see also New Show Studios, LLC v. Needle*, No. 2:14-CV-01250-CAS (MRWx), 2016 WL 5213903, at *7 (C.D. Cal. Sept. 20, 2016) (videos first "published" on YouTube).  And because a public website can be reached worldwide, publication on a website is "an act tantamount to global and simultaneous publication of the work, bringing [the work] within the definition of a 'United States work' under § 101(1)(C) and subject to § 411(a)'s registration requirement."  *Kernal Records. Oy v. Mosley*, 794 F. Supp. 2d 1355, 1368 (S.D. Fla. 2011).

Plaintiffs' proposed instruction incorrectly defines publication. Plaintiffs rely on *Moberg v. 33T LLC*, 666 F. Supp. 2d 415, 423 (D. Del. 2009), for the proposition that "posting a work online is not publishing within the meaning of a United States work in the Copyright Act." Setting aside the fact that Moberg's reasoning has been harshly criticized (*e.g.*, 2 Nimmer on Copyright § 7.16(B)(6)(e) ("*Moberg* swims against the tide of other cases construing the Copyright Act.")), Plaintiffs' case does not even stand for the proposition for which Plaintiffs have cited it. *Moberg* explicitly stated that it "d[id] not need to delve into . . . [the] unsettled issue" of whether a "German website 'published' plaintiff's photographs." 666 F. Supp. 2d at 422.

INSTRUCTION NO. 23

COPYRIGHT INTERESTS—AUTHORSHIP

The creator of an original work is called the author of that work. An author originates or "masterminds" the original work, controlling the whole work's creation and causing it to come into being.

Others may help or may make valuable or creative contributions to a work. However, such contributors cannot be the authors of the work unless they caused the work to come into being. One must translate an idea into a fixed, tangible expression in order to be the author of the work. Merely giving an idea to another does not make the giver an author of a work embodying that idea.

*Authority*: This is the model Ninth Circuit Model Instruction 17.8 (2017).

<u>INSTRUCTION NO. 24</u>

COPYRIGHT INTERESTS—WORK MADE FOR HIRE BY EMPLOYEE

A copyright owner is entitled to exclude others from copying a work made for hire.

A work made for hire is one that is prepared by an employee and is within the scope of employment.

A work is made for hire within the scope of employment if:

1.      it is the kind of work the employee is employed to create;

2.      it occurs substantially within the authorized time and space limits; and

3.      it is made, at least in part, for the purpose of serving the employer.

The employer is considered to be the author of the work and owns the copyright.

A copyright owner of a work made for hire may enforce the right to exclude others in an action for copyright infringement.


Authority: This is the model Ninth Circuit Model Instruction 17.11.

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

1

INSTRUCTION NO. 25

2

COPYRIGHT INTERESTS—ASSIGNEE

3      For some of the works in this case, the plaintiff does not claim to be the author or creator

4   of the copyright at issue.  Instead, the plaintiff claims that it received the copyright by virtue of

5   assignment from the work's author or creator so that the plaintiff is now the assignee of the

6   copyright.

7      A copyright owner may transfer or convey to another person all or part of the owner's

8   property interest in the copyright; that is, the right to exclude others from copying the work.  The

9   person to whom the copyright is transferred or conveyed becomes the owner of the copyright in

10  the work.

11     To be valid, the transfer or conveyance must be in a writing signed by the transferor.  The

12  person to whom this right is transferred is called an assignee.  The assignee may enforce this

13  right to exclude others in an action for copyright infringement.

14

15  _Authority_: Adapted from the Ninth Circuit Manual of Model Jury Instructions, Instr. 17.12

16  (2017).

17

18

19

20

21

22

23

24

25

26

27

28

DISPUTED INSTRUCTION NO. 26

COPYRIGHT INTERESTS—EXCLUSIVE LICENSEE: OFFERED BY PLAINTIFFS

In this case, certain plaintiffs do not claim to be the author, creator, or initial owner of the copyright at issue. Instead, the plaintiff claims the copyright by virtue of an exclusive license from the work's author, creator, or initial owner and that the plaintiff is now the exclusive licensee of the copyright.

A copyright owner may transfer, sell, or convey exclusively to another person any of the rights comprised in the copyright. To be valid, the transfer, sale, or conveyance must be in a writing signed by the copyright owner. The person to whom this right is transferred is called a licensee.

An exclusive licensee has the rights to exclude others from copying, adapting, distributing, performing, or displaying the work to the extent of the rights granted in the license. An exclusive licensee is entitled to bring an action for copyright infringement of the right licensed.

A copyright owner who grants an exclusive license retains the right to bring an action for copyright infringement if they retain a beneficial interest in the copyright, as by retaining an interest in royalties.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.13 (2017);
- 17 U.S.C. § 501(b);
- *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) ("The classic example of a beneficial owner is an author who has parted with legal title to the copyright in exchange for percentage royalties based on sales or license fees." (cleaned up));
- *First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, No. CV 19-9577, 2020 WL 5898973, at *7 (C.D. Cal. July 2, 2020) ("The License agreement provides Plaintiff a 'percentage [of] royalties based on sales or license fees' from SMV's distribution of the

Film, making Plaintiff a beneficial owner of the Film's distribution rights, and Plaintiff has standing to sue for unlawful distribution.").

1

DISPUTED INSTRUCTION NO. 26

2

COPYRIGHT INTERESTS—EXCLUSIVE LICENSEE: OFFERED BY DEFENDANTS

3       In this case, some plaintiffs do not claim to be the author, creator, or initial owner of

4   some of the copyrights at issue. Instead, the plaintiff claims the copyright by virtue of an

5   exclusive license from the work's author, creator, or initial owner and that the plaintiff is now the

6   exclusive licensee of the copyright.

7       A copyright owner may transfer, sell, or convey exclusively to another person any of the

8   rights comprised in the copyright. The person to whom this right is transferred is called a

9   licensee.

10      An exclusive licensee has the rights to exclude others from copying, adapting,

11  distributing, performing, or displaying the work to the extent of the rights granted in the license.

12  An exclusive licensee is entitled to bring an action for copyright infringement of the right

13  licensed.

14

15  Authority: This is adapted from the model Ninth Circuit Model Instruction 17.13.

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

1   **Plaintiffs' Argument re Disputed Instruction No. 26: Copyright Interests—Exclusive**

2   **Licensee**

3       Plaintiffs have included the language of the model.  Plaintiffs have included the model

4   charge's requirement under 17 U.S.C. § 204 that the transfer be in a signed writing.  Defendants

5   have provided no authority or rationale to justify the deletion of this requirement.  *See* 17 U.S.C.

6   § 204(a) ("A transfer of copyright ownership, other than by operation of law, is not valid unless

7   an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by

8   the owner of the rights conveyed or such owner's duly authorized agent."); *Konigsberg Int'l Inc.*

9   *v. Rice*, 16 F.3d 355, 356-57 (9th Cir. 1994) (noting that § 204(a) provides that "a transfer of

10  copyright is simply 'not valid' without a writing").

11      Plaintiffs have also included language regarding beneficial ownership. Plaintiffs will

12  provide evidence that Uniglobe granted an exclusive distribution license but retained a right of

13  royalties. Even where a copyright owner has previously transferred or licensed all of the exclusive

14  rights at issue, that copyright owner retains standing under the Copyright Act to bring claims for

15  infringement of those exclusive rights so long as the owner retains a beneficial ownership interest

16  in those rights. *See* 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under

17  a copyright is entitled . . . to institute an action for any infringement of that particular right

18  committed while he or she is the owner of it.").  One manner by which copyright owners retain a

19  beneficial ownership interest is by retaining a percentage of royalties. *See DRK Photo v. McGraw-*

20  *Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 988 (9th Cir. 2017) ("The classic example of a

21  beneficial owner is an author who has parted with legal title to the copyright in exchange for

22  percentage royalties based on sales or license fees." (cleaned up)); *see also First Am. Cinema, LLC*

23  *v. Chicken Soup for the Soul Ent., Inc.*, No. CV 19-9577 PSG (GJSx), 2020 WL 5898973, at *7

24  (C.D. Cal. July 2, 2020).  Thus, Uniglobe remains a beneficial owner entitled to enforce claims for

25

26

27                                                                              3:20-cv-04423-JD

28  **REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

1  copyright infringement, and thus the language to this effect should be included in the jury

2  instruction.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Argument re Disputed Instruction No. 26: Copyright Interests—Exclusive Licensee**

The sole material difference between the parties' proposals is whether to strike this sentence from the model instruction: "To be valid, the transfer, sale, or conveyance must be in a writing signed by the copyright owner." In the model instruction, that sentence is bracketed, indicating that the Court should consider whether its inclusion is appropriate under the circumstances of the case.

In the case, the reference to a written assignment is likely to mislead the jury and prejudice Defendants. In its summary judgment order, the Court noted that the record did not then contain a writing documenting the intra-enterprise assignment of Artistshare's administrative rights to Modern Works. *See* Dkt. 222 at 6. Whether Artistshare and Modern Works, which do not operate at an arm's length, have a written agreement is not relevant because Artistshare is not an exclusive licensee of Ms. Schneider's. Rather, Ms. Schneider granted administrative rights to Artistshare and Artistshare assigned *those* rights to Modern Works.

Including the model instruction's optional reference to a written assignment is thus unnecessary. It's not relevant under 17 U.S.C. 204 because no exclusive license of a copyright is at issue. The contractual arrangement between Artistshare and Modern Works need not be reduced to writing to be valid, and Plaintiffs' contrary suggestion in this instruction would serve no purpose other than to confuse the jury.

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

INSTRUCTION NO. 27

COPYRIGHT INTERESTS—DERIVATIVE WORK

A copyright owner is entitled to exclude others from creating derivative works based on the owner's copyrighted work.  The term derivative work refers to a work based on one or more pre-existing works, such as a translation, musical arrangement, dramatization, motion picture version, sound recording, abridgement, condensation, or any other form in which the pre-existing work is recast, transformed, or adapted.  Accordingly, the owner of a copyrighted work is entitled to exclude others from recasting, transforming, or adapting the copyrighted work without the owner's permission.

If the copyright owner exercises the right to create a derivative work based on the copyrighted work, this derivative work may also be copyrighted.  Only what was newly created, such as editorial revisions, annotations, elaborations, or other modifications to the pre-existing work is considered to be the derivative work.

If the copyright owner allows others to create a derivative work based on the copyrighted work, the copyright owner of the pre-existing work retains a copyright in that derivative work with respect to all of the elements from the pre-existing work that were used in the derivative work.  The author of the derivative work is entitled to copyright protection only for original contributions made by that author that are more than trivial.  If the derivative work incorporates pre-existing work by others, the derivative author's protection is limited to elements added by the derivative author to the pre-existing work of others.

The author of the derivative work may enforce the right to exclude others from the original elements added by the author in an action for copyright infringement.

The copyright owner of the pre-existing work may enforce the right to exclude others in an action for copyright infringement to the extent that the material copied derived from the pre-existing work.

*Authority*: This is the model instruction, Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.15 (2017).

<u>DISPUTED INSTRUCTION NO. 28</u>

SUBSTANTIAL SIMILARITY—EXTRINSIC TEST; INTRINSIC TEST: OFFERED BY

PLAINTIFFS

In order to determine whether a work has been copied, you must compare the copyrighted work with the allegedly infringing work to determine whether an ordinary person would find that they are substantially similar under both the extrinsic and intrinsic tests of similarity.

The "extrinsic test" is an objective comparison of specific expressive elements. For a musical composition, you may consider such specific expressive elements as melody, harmony, rhythm, pitch, and tempo. For literary or dramatic works, including a screenplay, you may consider such expressive elements as articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works. You must consider the extent that expressive elements relevant to the type of work at issue are equally present in the allegedly infringing video. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works. If you find the copyright protected and infringing works to be substantially similar under these tests, you should find that the plaintiff's copyright protected work was copied in the infringing work.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.19 (2017). As the model comment states, relative to the facts of this case:

- *Antonick v. Elec. Arts, Inc.*, 841 F.3d 1062 (9th Cir. 2016) (plaintiff "must prove both substantial similarity under the 'extrinsic test" and substantial similarity under the "intrinsic test."  The "extrinsic test' is an objective comparison of specific expressive elements.  The 'intrinsic test' is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.")

- *Swirsky v. Carey*, 376 F.3d 841, 848-49 (9th Cir. 2004) ("Other courts have taken account of additional components of musical compositions, including melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics.")

- *Shaw v. Lindheim*, 919 F.2d 1353, 1357 (9th Cir. 1990) (listing factors courts have considered for dramatic works, including plot, themes, dialogue, mood, setting, pace, characters, and sequence of events).

1

DISPUTED INSTRUCTION NO. 28

2

SUBSTANTIAL SIMILARITY—EXTRINSIC TEST; INTRINSIC TEST: OFFERED BY

3

DEFENDANTS

4

As part of its burden in Instruction __, the plaintiff must prove by a preponderance of the

5

evidence that the defendant copied the plaintiff's work.

6

To determine whether a YouTube user copied any of plaintiffs' works, you must consider

7

whether the video that each plaintiff alleges copied the plaintiff's work was substantially similar

8

to the work that the plaintiff owns. This means you must compare the work that the plaintiff

9

owns with the video that the plaintiff claims infringes that work, according to the guidelines

10

discussed in this instruction.

11

Ms. Schneider claims that she owns copyright in 27 written musical compositions. To

12

assess her claims of copyright infringement, you must compare the videos that Ms. Schneider

13

claims infringe her works with the written musical compositions that Ms. Schneider claims was

14

infringed.

15

Uniglobe claims that it owns copyright in a written screenplay for 5 Weddings (English

16

version) and in a motion picture for 5 Weddings (Hindi version). To assess its claims of

17

copyright infringement, you must compare the videos that Uniglobe claims infringes its works

18

with the written screenplay and Hindi motion picture that Uniglobe claims it owns.

19

AST claims that it owns copyright in 8 audiobooks. To assess AST's claims of copyright

20

infringement, you must compare the videos that AST claims infringes its work with audiobooks

21

that Uniglobe claims it owns.

22

A plaintiff must prove both substantial similarity under the "extrinsic test" and substantial

23

similarity under the "intrinsic test."

24

The "extrinsic test" is an objective comparison of specific expressive elements. For a

25

musical composition, you may consider such specific expressive elements as melody, harmony,

26

rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics, for example. For

27

literary or dramatic works, including a screenplay, you may consider such expressive elements as

28

articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters, and sequence of events in two works, for example. You must consider the extent that expressive elements relevant to the type of work at issue are equally present in the allegedly infringing video.

The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works. You must assess, for each alleged infringement, whether a reasonable audience would find that it is substantially similar in the total concept and feel of the work that plaintiff claims to own.

To find that the defendant copied the plaintiff's work, you must find that the allegedly infringing work is substantially similar to the copyright by applying both the extrinsic test and the intrinsic test. If, by a preponderance of the evidence, you find substantial similarity under both tests, you must find for plaintiff as to the second element in Instruction ___. If you do not find substantial similarity under both tests, you must find for the defendants as to that work.

Authority:  The Ninth Circuit Model Instruction 17.19 includes a Comment recommending that "the Court and counsel specially craft instructions on substantial similarity."  This instruction relies upon the following cases, which are cited in the Comment: *Swirsky v. Carey*, 376 F.3d 841, 849 (9th Cir. 2004) (citing factors and listing cases); *Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th Cir. 1990), overruled on other grounds by, *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

**Plaintiffs Argument re Disputed Instruction No. 28: Substantial Similarity—Extrinsic Test; Intrinsic Test**

Plaintiffs have followed the advice of the model to craft an instruction based on the facts of the case.  All the infringing videos in this case involve copying.  YouTube uploaders have either dropped Ms. Schneider's recordings into videos or they have recorded groups playing her compositions.  Uniglobe's *5 Weddings* English and Hindi movies have been uploaded in full or part.  Given the clear copying prevalent throughout the infringing videos at issue, a simple instruction on the substantial similarity test suffices.

In contrast, Defendants frame the jury's obligations under this instruction in an extremely burdensome way.  As one example, Defendants would have the jury compare each of Ms. Schneider's *written* musical compositions with the infringing YouTube *videos* at issue to assess whether they are substantially similar.  Such an instruction—requiring an analysis between sheet music and videos—would be burdensome and confusing for a lay jury.  It also contravenes Ninth Circuit precedent explaining that substantial similarity "focuses on the response of the ordinary reasonable person".  *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1112 (9th Cir. 1998).  Consistent with the "ordinary reasonable person" standard, no complicated comparison is required to determine substantial similarity here.

Accordingly, the Court should instead adopt Plaintiffs' instruction, which provides a simple description of the relevant tests.

3:20-cv-04423-JD

**Defendants' Argument re Disputed Instruction No. 28: Substantial Similarity—Extrinsic Test; Intrinsic Test**

The Ninth Circuit has no model instruction on substantial similarity; the Comment to model instruction 17.19 provides a recommendation that "the court and counsel specifically craft instructions on substantial similarity based on the particular work(s) at issue, the copyright in question, and the evidence developed at trial."

There are two principal differences between the proposals. First, Defendants add uncontroversial prefatory material to aid jury comprehension. Second, Defendants' proposal follows the Comment's recommendation to tailor the instruction to the works at issue by providing the jury some guidance, based on the case law that is cited in the Comment, as to how to apply the extrinsic test. For example, *Swirsky v. Carey* explains how a jury is supposed to apply the extrinsic test in the music context. 376 F.3d 841, 849 (9th Cir. 2004) (noting that, although no one specific test governs, courts will consider factors such as melody, harmony, rhythm, pitch, tempo, phrasing, structure, chord progressions, and lyrics as part of the extrinsic test). Likewise, *Shaw v. Lindheim* explains the analysis with respect to a literary work; these criteria would seem to apply to screenplays (Unigloble) and audiobooks (AST) alike. See 919 F.2d 1353, 1359 (9th Cir. 1990), overruled on other grounds by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065-66 (9th Cir. 2020) ("The extrinsic test focuses on specific similarities between the plot, theme, dialogue, mood, setting, pace, characters, and sequence of events, the actual concrete elements that make up the total sequence of events and the relationships between the major characters.") (simplified). The extrinsic and intrinsic tests are challenging concepts and the jury should have some guidance as to how to apply the objective extrinsic test as it marches through the analysis.

Plaintiffs' sole objection to this instruction seems to be "the works are exact copies," so no instructions are necessary. Not so. Defendants' review of the remaining alleged infringements suggests otherwise and that, at the time of the charging conference, it will be apparent that the jury may need assistance in assessing substantial similarity.

DISPUTED INSTRUCTION NO. 29

COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING; OFFERED BY PLAINTIFFS

In this case, the plaintiffs assert both primary and secondary copyright infringement claims. I will now instruct you about the plaintiffs' claim for primary copyright infringement. I will discuss secondary copyright infringement in later instructions.

Anyone who copies original expression from a copyrighted work during the term of the copyright without the owner's permission infringes the copyright.

On the plaintiff's copyright infringement claim, the plaintiff has the burden of proving infringement by a preponderance of the evidence. To establish infringement, two elements must be proven:

    1.      ownership of a valid copyright; and

    2.      copying of constituent elements of the work that are original.

If you find that the plaintiff has proved both of these elements, your verdict should be for the plaintiff. If, on the other hand, you find that the plaintiff has failed to prove either of these elements, you should find for the defendant as to the primary  infringement claim for that work.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.5 (2017).

1

<u>DISPUTED INSTRUCTION NO. 29</u>

2

COPYRIGHT INFRINGEMENT—ELEMENTS—OWNERSHIP AND COPYING; OFFERED

3

BY DEFENDANTS

4

Anyone who copies original expression from a copyrighted work during the term of the

5

copyright without the owner's permission infringes the copyright.

6

On the plaintiff's direct copyright infringement claim, for all of the works where this

7

claim is asserted, the plaintiff has the burden of proving by a preponderance of the evidence that:

8

1.     the plaintiff is the owner of a valid copyright;

9

2.     the defendant copied original expression from the copyrighted work;

10

3.     the defendants' role in the infringement was active, rather than passive, consisting

11

of more than automatically copying, transmitting, and displaying materials upon

12

the instigation of others; and

13

4.     at least one act that the plaintiff alleges constitutes an infringement occurred

14

within the United States.

15

You must consider each work separately. If, for any work, you find that the plaintiff has

16

proved all of these elements, you should find that the defendant infringed the work.  If, on the

17

other hand, you find that the plaintiff has failed to prove either of these elements for any work,

18

your verdict should be for the defendant for that work.

19

20

Authority:  Ninth Circuit Model Instruction No. 17.5; Ninth Circuit Model Instruction No. 17.5

21

Comment ("If causation is contested, it may be appropriate to modify this instruction to explicitly

22

include causation as an element."); Dkt. 222 at 3 (noting, in the context of this case, that "[t]he key

23

concept is that 'direct copyright liability for website owners arises when they are *actively involved*

24

in the infringement,' and not passive handlers of content supplied by others" (citing *VHT, Inc. v.*

25

*Zillow Group, Inc.*, 918 F.3d 723, 731 (9th Cir. 2019))); *VHT*, 918 F.3d at 731–32 ("[D]irect

26

liability must be premised on conduct that can reasonably be described as the *direct cause* of the

27

infringement.... [E]very Court of Appeals to have considered an automated-service provider's

28

direct liability for copyright infringement has adopted the [volitional-conduct] rule…. [Under this rule] 'direct' infringement requires 'active' involvement…. By contrast, activities that fall on the other side of the line, such as automatic copying, storage, and transmission of copyrighted materials, when instigated by others, do not render an Internet service provider strictly liable for copyright infringement. In other words, to demonstrate volitional conduct, [a plaintiff] must provide some evidence showing [the alleged infringer] exercised control (other than by general operation of its website; selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos.") (internal quotation marks, alterations, and citations omitted); *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 670 (9th Cir. 2017); *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co*., 24 F.3d 1088, 1090 (9th Cir. 1994) ("[W]holly extraterritorial acts of infringement are not cognizable under the Copyright Act").

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

**Plaintiffs' Argument re Disputed Instruction No. 29: Copyright Infringement—Elements— Ownership and Copying (17 U.S.C. § 501(a)–(b)):**

Plaintiffs' instruction largely follows the model. Plaintiffs offer the additional first paragraph as a necessary clarification for the jury that this instruction applies only to primary infringement claims.  Plaintiffs' proposed use of "primary" and "secondary" to describe their copyright infringement claims follows the model as the headings on vicarious and contributory infringement refer to them as "secondary" infringement.  "Primary" infringement is the corollary, and, in the context of this case, use of the phrase "direct infringement" as proposed by Defendants' could mislead the jury to believe Defendants' liability turns on whether YouTube directly copied a plaintiff's work or had "direct" access to a plaintiff's work.  This is not the law:  YouTube's copying and public display of videos that are infringements and that were uploaded by users can constitute both primary (*i.e.,* direct) and secondary infringement.  *See generally A&M Recs v. Napster*, 239 F.3d 1004, 1015 (9th Cir. 2001).  Similarly, Plaintiffs modify subpart (2) to make clear that YouTube need not directly copy any Plaintiff's work, an important issue in this case.  Subpart (1) is modified to conform its grammatical structure to that of modified subpart (2).

Defendants' additional language should be rejected as the proposed verdict form will require the jury to make findings for every work-in-suit. Defendants' proffered subpart (3), suggesting that Defendants' automatic copying, transmittal, or display of "materials upon the instigation of others" is non-culpable overstates the law, risks confusing the jury and could improperly insulate YouTube from liability for primary infringement.  In *Perfect 10 v. Giganews*, 847 F.3d 657, 666 (9th Cir. 2017), the Ninth Circuit stated, "the so-called 'volition' element of direct infringement … is a basic requirement of causation.  As its name suggests, direct liability must be premised on conduct that can reasonably be described as the direct cause of the infringement".  Plaintiffs will demonstrate YouTube's volitional conduct through evidence that WatchNext and Autoplay serve nearly 50% of the content viewed and that Autoplay automatically

plays videos selected by YouTube when a YouTube viewer that has AutoPlay enabled (as it is by default). Defendants' subpart (4) should be rejected.  First, because it is not included in the model instruction.    Second, it seeks to impose a requirement of at least one domestic infringement. Defendants failed, however, to produce location data in response to Plaintiffs' requests and cannot now seek to impose proof requirements related to withheld evidence.

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Defendants' Argument re Disputed Instruction No. 29: Copyright Infringement—
Elements—Ownership and Copying (17 U.S.C. § 501(a)–(b))**

Defendants' instruction closely tracks the Ninth Circuit Model Instruction No. 17.5 with two modifications designed to align the Instruction with this Court's prior orders and Ninth Circuit law.

*First*, it includes an element on causation. This Court has noted that to establish this claim, Plaintiffs must show "proof of 'causation, which is commonly referred to as the 'volitional-conduct requirement.'" Dkt. 222 at 3. The Model Instruction expects courts to add an instruction in line with this law. The Comment to the Ninth Circuit Model Jury Instruction No. 17.5 also specifically recommends that the Court "modify this instruction to explicitly include causation as an element" where, as here, "causation is contested."

The modification is necessary to align the instruction to Ninth Circuit law. As the Comment explains, "[t]o establish the defendant's liability on a direct infringement theory, the plaintiff must show that the defendant was the cause of the infringement." Comment, Model Instruction No. 17.5 (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019)). In *VHT*, the Ninth Circuit explained that, where a plaintiff alleges that a defendant infringed the plaintiff's copyright by the operation of the defendant's website, the element of causation requires that the "actual infringing conduct" of the defendant have a "sufficiently close and causal" nexus with "the illegal copying" such that "one could conclude that the [website] owner [itself] trespassed on the [copyright]." 918 F.3d at 732. Plaintiff thus must establish the defendant's "'active' involvement" in infringement, rather than passive "activities . . . such as automatic copying, storage, and transmission of copyrighted materials . . . instigated by others," such as by establishing "evidence showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of [the plaintiffs' work]." *Id.* (cleaned up); *see also* Dkt. 222 at 3 (quoting *VHT*). Defendants' proposed causation element closely tracks the Ninth Circuit's language in *VHT* and *Perfect 10*, this Circuit's leading cases on applying the requirements of an infringement in the

online context, and this Court's language in the summary judgment order.  *Id.*

**Second**, Defendants adapt the Model Instruction to the international context of this case by adding language to address the requirement—long established in Ninth Circuit caselaw—that "wholly extraterritorial acts of infringement are not cognizable under the Copyright Act." *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1090 (9th Cir. 1994) (en banc); *see also id.* at 1095 ("we are unwilling to overturn over eighty years of consistent jurisprudence on the extraterritorial reach of the copyright laws without further guidance from Congress.").

Rather than addressing these issues, Plaintiffs' make unsupported and confusing edits to the existing elements in the Model Instruction.  There is no reason to strike "original expression from the copyrighted work," which is blackletter copyright law.  The phrase "constituent elements" is unsupported by case law.  And Plaintiffs' effort to change the term "direct" to "primary" appears to be some focus group-inspired change that has no basis in law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION 30</u>

COPYRIGHT INFRINGEMENT—VOLITIONAL CONDUCT: OFFERED BY PLAINTIFFS

On a claim of primary copyright infringement, a plaintiff must establish that the defendant played an active role in the infringement or was a direct cause of the infringement. In considering whether the defendant played an active role, you should consider whether the defendant's conduct extended beyond merely providing a platform for the upload and display of user-generated content, including whether the defendant: (1) exercised control over the infringing act; (2) selected the infringing material; or (3) instigated any copying, storage, or distribution of the infringing material.

*Authority:*

- *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 666 (9th Cir. 2017) (Volitional conduct "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts.")

- 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 13.08[C][1] (2016) (Matthew Bender, Rev. Ed.).

DISPUTED INSTRUCTION 30

COPYRIGHT INFRINGEMENT—VOLITIONAL CONDUCT: OFFERED BY
DEFENDANTS

As part of its burden in Instruction ___, the plaintiffs must establish that the defendants engaged in "volitional conduct" with regard to the alleged infringements at issue in this case. This means that plaintiffs must show that defendants, rather than the persons who uploaded the allegedly infringing videos to YouTube's service, were the direct cause of the infringement by being actively involved in the alleged infringement.

The plaintiffs assert that by making WatchNext and Autoplay available on the YouTube platform, the defendants engage in volitional conduct. The defendants assert that WatchNext and Autoplay are part of YouTube's general operation and that users, not YouTube, determine which videos they watch on YouTube.

It is not enough for the plaintiff to show that the defendants' services automatically copied, stored, or transmitted materials in response to users' decision to upload allegedly infringing videos. Nor is it enough to show that users may use YouTube to display infringing videos, or that YouTube automatically recasts user-uploaded content in a format that is readily accessible to its users. Rather, plaintiffs must prove that YouTube was the direct cause of the infringement because it exercised control over any infringement that went beyond the general operation of the YouTube's service, such as by instigating any copying, storage, or distribution of Plaintiffs' work.

Authority: *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731–32 (9th Cir. 2019) ("[*D*]*irect* liability must be premised on conduct that can reasonably be described as the *direct cause* of the infringement.... [E]very Court of Appeals to have considered an automated-service provider's direct liability for copyright infringement has adopted the [volitional-conduct] rule…. [Under this rule] 'direct' infringement requires 'active' involvement…. "By contrast, activities that fall on the other side of the line, such as automatic copying, storage, and transmission of copyrighted

materials, when instigated by others, do not render an Internet service provider strictly liable for copyright infringement. In other words, to demonstrate volitional conduct, [a plaintiff] must provide some evidence showing the alleged infringer] exercised control (other than by general operation of its website; selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of its photos.") (internal quotation marks, alterations, and citations omitted) (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017).

**Plaintiffs' Argument re Disputed Instruction No. 30: Copyright Infringement—Volitional Conduct**

The Court should adopt Plaintiffs' volitional conduct instruction, which appropriately limits the application of the volitional conduct requirement to primary (direct) infringement. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) ("[D]irect copyright liability for website owners arises when they are *actively involved* in the infringement.") (emphasis original); *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017) (referencing the "so-called 'volition' element of direct infringement"). Plaintiffs' instruction concisely reflects the relevant caselaw, instructing the jury that, for an internet service provider, the volitional conduct requirement turns on whether the defendant: (1) exercised control over the infringing act; (2) selected the infringing material; or (3) instigated any copying, storage, or distribution. *Id.* ("Perfect 10 provides no evidence showing Giganews exercised control (other than by general operation of a Usenet service); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution.")

Plaintiffs' instruction appropriately refrains from supplying specific contentions regarding the precise conduct from which the jury may find the volitional conduct requirement satisfied. Should the Court deem such contentions appropriate at the close of the case, Plaintiff will provide appropriate contention instructions based on the evidence presented regarding all conduct, not limited to WatchNext and AutoPlay, that may provide the jury with a basis for finding the volitional conduct requirement satisfied.

Defendants' proposed jury instruction should be rejected for multiple reasons. First, it obscures that the volitional conduct requirement applies only to claims of direct, or primary, infringement. *See Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 670–73 (9th Cir. 2017) (extensively analyzing volitional conduct as an element of direct infringement and omitting volitional conduct as an element of contributory or vicarious infringement).

Second, Defendants' proposed instruction states that the volitional conduct element requires that Plaintiffs prove that Defendants, "*rather than* the persons who uploaded the allegedly infringing videos to YouTube, were actively involved in the infringement."  That instruction misstates the law, which recognizes that two parties (here, the original creator—the uploader—of the infringing video and then YouTube as it, *e.g.*, engages in volitional conduct in the copying, distribution, and public display of that infringing video) can be liable for direct infringement, although only the liability of YouTube is at issue here.  *See id.* at 666 (9th Cir. 2017) (noting that volitional conduct "simply stands for the unremarkable proposition that proximate causation historically underlines copyright infringement liability no less than other torts.").

Third, Defendants' proposed instruction strongly, and wrongly, implies that Watch Next and Autoplay are insufficient *per se* to satisfy the volitional conduct element of Plaintiffs' primary infringement claim because Plaintiffs purportedly must prove conduct that goes "beyond the general operation" of the platform. Defendants' instruction falsely implies  that automated conduct cannot serve as the basis for liability. This erroneous standard is reinforced by Defendants' admonition that "it is not enough…that YouTube automatically recasts user uploaded content in a format that is readily accessible to its users"  thereby precluding the jury from deciding the scope, and significance, of YouTube's control over what users watch.  Framing Watch Next and Autoplay as automatic processes that cannot provide a basis for liability leads the jury by the nose to the conclusion that YouTube does *not* exercise control over the content viewed by users.

3:20-cv-04423-JD

**Defendants' Argument re Disputed Instruction No. 30: Copyright Infringement: Volitional Conduct**

Volitional conduct is a required element of Plaintiffs' direct infringement claim.  *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019); *see also* Dkt. 222 at 3.  Both sides propose an instruction explaining this element, demonstrating the necessity of an instruction to explain this requirement to the jury.

Defendants' proposed instruction is better than Plaintiffs' because Defendants' instruction actually explains the law to the jury, whereas Plaintiffs' instruction contains a watered-down misstatement of the law.  In *VHT*, the Ninth Circuit explained that, in the online context, the element of causation requires that the "actual infringing conduct" of the defendant have a "sufficiently close and causal" nexus with "the illegal copying" such that "one could conclude that the [website] owner [itself] trespassed on the [copyright]." 918 F.3d at 732. Plaintiff thus must establish the defendant's "'active' involvement" in infringement, rather than passive "activities . . . such as automatic copying, storage, and transmission of copyrighted materials . . . instigated by others," such as by establishing "evidence showing the alleged infringer exercised control (other than by general operation of its website); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution of [the plaintiffs' work]." *Id.* (cleaned up). Defendants' proposed instruction closely tracks the Ninth Circuit's language in *VHT*.  And the Court has already recognized that this key language from VHT is the "key concept" here.  *See* Dkt. 222 at 3 ("The key concept is that 'direct copyright liability for website owners arises when they are *actively involved* in the infringement,' and not passive handlers of content supplied by others." (emphasis in original)).  In contrast, Plaintiffs' proposed instruction does not even include *VHT* as an authority for its instruction and instead discusses "exercis[ing] control," which is an element of vicarious liability, not direct liability..

***Second***, Defendants' proposed instruction No. 42 explains how the volitional conduct requirement applies in this case. Specifically, Defendants' proposed instruction explains how the jury should evaluate the volitional conduct requirement against Plaintiffs' claims about YouTube's accused WatchNext and Autoplay functions. Plaintiffs' abbreviated proposal would

1  have limited value to the jury because it fails to explain the volitional conduct requirement in the

2  context of Plaintiffs' claims about WatchNext and Autoplay.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO 31</u>

SECONDARY LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN

OF PROOF: OFFERED BY PLAINTIFFS

The plaintiffs also assert that defendants are liable for secondary copyright infringement. There are two types of secondary copyright infringement. The first is vicarious copyright infringement.  The plaintiffs assert a vicarious liability claim for all of the copyrights at issue in this case.

If you find that uploaders of videos to YouTube infringed the plaintiffs' copyrights in their works you must determine whether the defendants vicariously infringed those copyrights. The plaintiffs have the burden of proving each of the following elements by a preponderance of the evidence:

1.    The defendants directly benefitted financially from the infringing activity;

2.    The defendants had the right and ability to supervise, control, block, or police the infringing activity; and

3.    The defendants failed to exercise that right and ability to stop or limit the infringement, including by failing to exercise to its fullest extent, the right to police infringement.

The plaintiffs can establish that a defendant has the right and ability to supervise infringing conduct if they show that the defendant had the technical ability to identify and remove infringements or prevent access to infringements.

If you find that the plaintiffs have proved each of these elements, your verdict should be for the plaintiffs if you also find that YouTube uploaders infringed the plaintiffs' copyrights. If, on the other hand, the plaintiffs have failed to prove any of these elements, your verdict should be for the defendants.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.20 (2017);

- *A & M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1023 (9th Cir. 2001) ("To escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent.");

- *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) ("the technical ability to screen out or identify infringing … photos");

- *Id*. ("the vicarious liability standard applied in Napster can be met by merely having the general ability to locate infringing material and terminate users' access.").

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

DISPUTED INSTRUCTION NO 31

SECONDARY LIABILITY—VICARIOUS INFRINGEMENT—ELEMENTS AND BURDEN

OF PROOF: OFFERED BY DEFENDANTS

If you find that a YouTube user infringed a plaintiff's copyright, you must determine whether defendants vicariously infringed that copyright.  For all of the works at issue, the plaintiff has the burden of proving each of the following elements by a preponderance of the evidence:

    1.      the defendants directly benefitted financially from the infringing activity;

    2.      the defendants had the legal right and practical ability to supervise or control the infringing activity; and

    3.      the defendants failed to exercise that right and ability.

You must consider each work separately. If you find that the plaintiff has proved all of these elements, you should find that the defendants vicariously infringed if you also find that the YouTube user infringed plaintiff's copyright in that work.  If, on the other hand, the plaintiff has failed to prove any of these elements for a work, your verdict should be for the defendants for that work.


Authority:  Ninth Circuit Model Instruction 17.20; Dkt. 222 at 3 ("A key component of vicarious liability is evidence that the defendant had the practical and technical ability to identify or screen out infringing material, but did not do so." (citing *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (element regarding supervision and control "requires 'both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'"))); Dkt. 330 at 13 (same); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007) ("[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.").

**Plaintiffs' Argument re Disputed Instruction No. 31: Secondary Liability—Vicarious**

**Infringement—Elements and Burden of Proof**

Plaintiffs follow the model instruction, identifying "uploaders of videos to YouTube" as the direct infringers and defendants as the alleged vicarious infringers.  Plaintiffs offer the first paragraph to clarify for the jury that they are asserting two separate claims of secondary liability.  Plaintiffs have added the phrase "block, or police" to subpart (2) to account for Defendants' use of Content Age and Copyright Match for video-to-video matching and the knowledge of infringement generated by that technology.  *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) ("To escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent.")

Defendants' language should be rejected.  Defendants identify a "YouTube user" as the direct infringer, pointedly using a broader term than Plaintiffs have adopted and more likely to encompass members of the jury than the word "uploader."  Defendants have added the words "legal" and "practical" to subpart (3), neither of which are appropriate under the case law.

There is no justification to depart from the model instruction by needlessly directing the jury to "consider each work separately."  That is done in the context of the verdict form.

Finally, there is no basis to instruct the jury to assess these questions for each work.  That is done in the context of the verdict form.

3:20-cv-04423-JD

**Defendants' Argument re Disputed Instruction No. 31: Secondary Liability—Vicarious Infringement —Elements and Burden of Proof**

While Plaintiffs' proposed instruction makes broad departures from the Ninth Circuit Model Instruction 17.20, Defendants adopt the model instruction with minimal changes based on Ninth Circuit case law discussed by this Court's orders describing vicarious infringement.  *See* Dkt. 330 at 13; Dkt. 222 at 3.

Defendants' proposed instruction closely tracks the Ninth Circuit's requirement that a plaintiff show both the legal right and practical ability to stop directly infringing conduct. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (element regarding supervision and control "requires 'both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.'"); Dkt. 330 at 13 ("A key component of vicarious liability is evidence that the defendant had the practical and technical ability to identify or screen out infringing material."); Dkt. 222 at 3 (same).

In contrast, Plaintiffs' proposed instruction makes significant edits to the Model Instruction's language.  First, plaintiffs add two new paragraphs to the Model Instruction and gratuitous additions to the third element.  Plaintiffs' paragraph discussing the second element fails to track the language this Court used in its discussion of the same element, for example, by dropping the word "practical" and adding the phrase "or prevent access to infringements."  *Cf.* Dkt. 330 at 13; Dkt. 222 at 3.  Second, Plaintiff's proposed instruction adds the phrases "block" and "police" to the elements of vicarious liability, apparently to buttress Plaintiffs' theory that Defendants are somehow liable for failing to grant Plaintiffs access to Defendants' Content ID technology.  Further, in support of their adaptation of the Model Instruction, Plaintiffs cite *A&M Records., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001). The citation is misleading. The *Napster* court used the word "block" in discussing the Napster's technical ability to block or prevent users from accessing Napster's service. *Id.* at 1023. In contrast, in this case "block[ing]" is a technical feature of the Content ID technology that prevents users from viewing an individual video. *See, e.g.,* Dkt. 99 ¶ 8 (Content ID provides the option to "block the whole infringing video"). The model jury instruction should not be manipulated to include specific language

regarding a feature of Defendants' tool in the requisite claim elements, particularly given the absence of supporting authority (only a case using the same word, in a different context, not applicable here).

1

<u>DISPUTED INSTRUCTION 32</u>

2

SECONDARY LIABILITY—CONTRIBUTORY INFRINGEMENT—ELEMENTS AND

3

BURDEN OF PROOF: OFFERED BY PLAINTIFFS

4

The second type of secondary copyright liability is contributory copyright infringement.

5

The plaintiffs assert a contributory liability claim for all of the copyrights at issue in this case.

6

A defendant may be liable for copyright infringement engaged in by another if it knew or

7

had reason to know of, or was willfully blind to, the infringing activity and intentionally induced

8

or materially contributed to that infringing activity.

9

If you find that uploaders to YouTube infringed the plaintiffs' copyrights in their works,

10

you must determine whether the defendants contributorily infringed that copyright. The plaintiffs

11

have the burden of proving both of the following elements by a preponderance of the evidence:

12

    1.    the defendants knew or had reason to know of, or were willfully blind to, the

13

        infringing activity of uploaders to YouTube; and

14

    2.    the defendants intentionally induced or materially contributed to the infringing

15

        activity of uploaders to YouTube.

16

YouTube or Google's intent to induce or materially contribute to the infringing activity

17

must be shown by clear expression of that intent or by active steps taken by the defendant to

18

encourage the direct infringement.

19

In the online context, a computer system operator is liable for material contribution if the

20

operator has actual knowledge of specific infringement, can take simple measures to prevent

21

further infringement, and yet fails to do so.

22

If you find that uploaders to YouTube infringed the plaintiffs' copyrights and you also find

23

that the plaintiffs have proved both of the above elements, your verdict should be for the plaintiffs.

24

If, on the other hand, the plaintiffs have failed to prove either or both of these elements, your

25

verdict should be for the defendants.

26

27

28

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.21 (2017);

- *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir. 2017) ("In the online context, we have held that a 'computer system operator' is liable under a material contribution theory of infringement 'if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works'") (cleaned up);

- *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir. 2019) (stating that website did not have "information necessary to take 'simple measures' to remedy the violation" because website had no means to identify allegedly infringing images uploaded by users).

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

1

<u>DISPUTED INSTRUCTION 32</u>

2

SECONDARY LIABILITY—CONTRIBUTORY INFRINGEMENT—ELEMENTS AND

3

BURDEN OF PROOF: OFFERED BY DEFENDANTS

4

A defendant may be liable for copyright infringement engaged in by another if it knew or

5

had reason to know of the infringing activity and intentionally induced or materially contributed

6

to that infringing activity.

7

If you find that YouTube users infringed a plaintiff's copyright, you must determine

8

whether defendants contributorily infringed that copyright.  For all of the works at issue, the

9

plaintiff has the burden of proving all of the following elements by a preponderance of the

10

evidence:

11

    1.    the defendant had actual knowledge of the specific infringing activity; and

12

    2.    the defendant intentionally induced or materially contributed to the infringing

13

        activity.

14

The defendant's intent to induce the infringing activity must be shown by clear

15

expression of that intent or other affirmative steps taken by the defendant to encourage.

16

You must consider each work separately. If you find that a YouTube user infringed the

17

plaintiff's copyright and you also find that the plaintiff has proved these elements, you should

18

find that the defendants contributorily infringed.  If, on the other hand, the plaintiff has failed to

19

prove these elements or that a YouTube user infringed, your verdict should be for the defendants.

20

21

Authority: Ninth Circuit Model Instruction 17.21; Dkt. 222 at 3 ("In the online context, material

22

contribution means the defendant has *actual* knowledge that *specific* infringing material is

23

available using its system, and can take simple measures to prevent further damage to

24

copyrighted works, yet continues to provide access to infringing works." (citing *VHT, Inc. v.*

25

*Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019)) (emphasis original, internal quotation marks

26

omitted)); Dkt. 330 at 12 (same); Comment, Ninth Circuit Model Instruction 17.21 ("In the

27

online context, a computer system operator may be liable under a material contribution theory if

28

1  the operator has actual knowledge of specific infringement, can take simple measures to prevent

2  further infringement, and yet fails to do so." (citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

3  657, 671 (9th Cir. 2017); *VHT*, 918 F.3d at 745)).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

**Plaintiffs' Argument re Disputed Instruction No. 32: Secondary Liability—Contributory Infringement—Elements and Burden of Proof**

Plaintiffs follow and supplement the model instruction by identifying "uploaders to YouTube" as direct infringers and Defendants as alleged contributory infringers.  Plaintiffs offer the first paragraph to clarify for the jury that they are asserting two separate claims of secondary liability.  In the second paragraph, Plaintiffs add the phrase "or was willfully blind to" based on caselaw establishing that a refusal to act upon known infringements gives rise to liability.  *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) ("Willful blindness of specific facts would establish knowledge for contributory liability.")

Plaintiffs' supplemental paragraph beginning, "In the online context" is taken directly from the Comment to the model instruction, which reads, with supporting authority, "In the online context, a computer system operator may be liable under a material contribution theory if the operator has actual knowledge of specific infringement, can take simple measures to prevent further infringement, and yet fails to do so." *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir. 2017); *VHT, Inc. v. Zillow Grp.*, 918 F.3d 723, 745 (9th Cir. 2019) (stating that website did not have "information necessary to take 'simple measures' to remedy the violation" because website had no means to identify allegedly infringing images uploaded by users)."

Defendants' language should be rejected. Defendants identify a "YouTube user" as the direct infringer, pointedly using a broader term than Plaintiffs' have adopted and more likely to encompass members of the jury, than the word "uploader."  Subpart (2) inappropriately imposes a requirement of "actual" knowledge of "specific infringement" when the statute, case law, and model all support use of "knew or had reason to know."  "Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement." *A&M Records, Inc. v. Napster, Inc*., 239 F.3d 1004, 1019-20 (9th Cir. 2001). And once again, there is no basis to

3:20-cv-04423-JD

instruct the jury to consider each work separately. That is done in the context of the jury verdict form.

3:20-cv-04423-JD

1

**Defendants' Argument re Disputed Instruction No. 32: Secondary Liability—Contributory Infringement—Elements and Burden of Proof**

2

3          Defendants' instruction tracks Ninth Circuit Model Instruction 17.21 and incorporates

4    language from this Court's orders discussing contributory infringement.  *See* Dkt. 330 at 12; Dkt.

5    222 at 3.

6          As this Court has explained in its orders denying plaintiffs' motion for class certification

7    and granting in part defendants' motion for summary judgment against Ms. Schneider, "[i]n the

8    online context, material contribution means the defendant 'has ***actual*** knowledge that ***specific***

9    infringing material is available using its system."  Dkt. 330 at 12 (quoting citing *VHT, Inc. v.*

10   *Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019)) (emphasis added); Dkt. 222 at 3 (same).

11   Ninth Circuit case law makes clear that to be liable for contributory copyright infringement in the

12   online context "'***actual*** knowledge of ***specific*** acts of infringement' is required for contributory

13   infringement liability." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir.

14   2013) (emphasis added) (quoting *A&M Records, Inc. v. Napster Inc.*, 239 F.3d 1004, 1021 (9th

15   Cir. 2001); *see also id.* ("the first prong requires more than a generalized knowledge . . . of the

16   possibility of infringement"); Comment, Ninth Circuit Model Instruction No. 17.21 ("[i]n the

17   online context, a computer system operator may be liable under a material contribution theory if

18   the operator has ***actual*** knowledge of ***specific*** infringement, can take simple measures to prevent

19   further infringement, and yet fails to do so." (*citing Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

20   657, 671 (9th Cir. 2017) (emphasis added); *VHT, Inc.*, 918 F.3d at 745). The knowledge required

21   is "more than a generalized knowledge . . . of the possibility of infringement" because

22   "contributory liability [does] not automatically follow where the [computer] 'system allows for

23   the exchange of copyrighted material.'" *Luvdarts*, 710 F.3d 1072 (*quoting Napster*, 239 F.3d at

24   1021). Defendants' instruction incorporates this well-established scienter requirement for

25   contributory infringement in the online context.  It would be error not to give this instruction.

26          In contrast, Plaintiffs' discussion of the scienter requirement is legally incorrect and

27   internally inconsistent. Plaintiffs confusingly acknowledge the standard of "actual knowledge of

28   specific infringement" while simultaneously modifying the scienter element found in the Model

Instruction to allow liability if Defendants were "willfully blind." That is internally inconsistent and contrary to the law of this Circuit. Tellingly, even the authorities relied upon by Plaintiffs to support their adaptation, *Perfect 10, Inc.* and *VHT, Inc.*, do not include the phrase "willful blindness" in their discussions of contributory infringement liability.

INSTRUCTION NO. 33

COPYRIGHT—AFFIRMATIVE DEFENSE—FAIR USE

One who is not the owner of the copyright may use the copyrighted work in a reasonable way under the circumstances without the consent of the copyright owner if it would advance the public interest. Such use of a copyrighted work is called a fair use. The owner of a copyright cannot prevent others from making a fair use of the owner's copyrighted work.

Defendant contends that defendant made fair use of the copyrighted work for the purpose of criticism, comment, news reporting, teaching, scholarship, or research. The defendant has the burden of proving this defense by a preponderance of the evidence.

In determining whether the use made of the work was fair, you should consider the following factors:

(1)     the purpose and character of the use, including whether the use is of a commercial nature or is for nonprofit educational purposes;

(2)     the nature of the copyrighted work;

(3)     the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)     the effect of the use upon the potential market for or value of the copyrighted work.

If you find that the defendant has proved by a preponderance of the evidence that the defendant made a fair use of the plaintiff's work, your verdict should be for the defendant.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.22 (2017).

1    <u>DISPUTED INSTRUCTION NO. 34</u>

2    REGARDING INTERPRETATION OF CONTRACTS: OFFERED BY PLAINTIFFS

3          In this case, I have already made rulings regarding the Administrative Agreement entered

4    into between Maria Schneider and ArtistShare. I will now instruct you on the impact of those

5    findings.

6          On January 1, 2008, Schneider appointed ArtistShare Music Publishing, her management

7    company, as the "sole and exclusive Administrator" of her musical compositions via a Music

8    Publishing Administration Agreement. The Administrative Agreement gave ArtistShare the

9    "exclusive right to administer the Compositions" and "to execute in Ms. Schneider's name any

10   licenses and agreements affecting the Compositions."

11         While Section 7 of the Administration Agreement that Maria Schneider signed with

12   Artistshare Publishing Inc. requires Artistshare to obtain Ms. Schneider's written approval for

13   any license that it grants on Ms. Schneider's behalf, I now instruct you that Ms. Schneider's lack

14   of approval does not invalidate a license granted, if any, by Artistshare.

15         However, you should not take this instruction to mean that I have found Artistshare

16   granted a license to Modern Works Publishing. It is the province of you, the jury, to determine

17   whether any such license was granted in accordance with the instructions I provide to you today.

18

19   This is a special instruction based on ECF 222.

20

21

22

23

24

25

26

27

28

1    <u>DISPUTED INSTRUCTION NO. 34</u>

2    REGARDING INTERPRETATION OF CONTRACTS: OFFERED BY DEFENDANTS

3         It is the task of the judge, and not the jury, to interpret a contract and determines the

4    rights and obligations of a party under a contract.  In this case, I have already made rulings about

5    the meaning of certain contracts, and I instruct you to take the following ruling as true.

6         The PLA that Modern Works signed with the defendants is a valid contract.  This is true

7    even if Ms. Schneider had no knowledge of the PLA or if Ms. Schneider did not consent to the

8    PLA.  Ms. Schneider's rights under Section 7 of the Administration Agreement between her and

9    Artistshare cannot invalidate the PLA between Modern Works and the defendants.

10        The issue for you to decide regarding the PLA is whether Ms. Schneider's works fall

11   within the scope of the license that the PLA grants to the defendants.

12

13   Authority:  This Court's Order Granting In Part and Denying In Part Summary Judgment (ECF

14   No. 222).

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-04423-JD

**Plaintiffs' Argument re Disputed Instruction No. 34: Regarding Interpretation of Contracts**

The Court should adopt Plaintiffs' instruction regarding the interpretation of the Administrative Agreement entered into between Maria Schneider and ArtistShare. Plaintiffs' proposed instruction effectively informs the jury of three key points. First, the instruction informs the jury that Court has already made binding determinations regarding the interpretation of the Administrative Agreement. Second, the instruction sets forth the nature of the Court's findings regarding the Administrative Agreement using language drawn verbatim from the Court's Summary Judgment Order [ECF 222]. Third, the instruction clarifies that a question of fact regarding whether ArtistShare ever granted Modern Works any control or ownership rights over Ms. Schneider's catalog, regardless of whether Ms. Schneider knew of or consented to that license.

The Court should reject Defendants' proposed instruction for multiple reasons. First, the jury may be confused by the instruction that it is for the judge "to interpret a contract and determine[] the rights and obligations of a party under a contract." Leading with that admonition may suggest that the jury has no role in deciding the applicability of the Administrative Agreement to the works at issue and may encourage jury members to abdicate their responsibility as the finders of fact. Second, Defendants' instruction obscures the identity of the contract at issue. In its Summary Judgment Order, the Court made findings of law related to the Administrative Agreement between Ms. Schneider and ArtistShare, as Plaintiffs' instruction makes clear. Defendants' reference to "the meaning of certain contracts" muddles the record. Third, Defendants' proposed instruction is confusing as it suggests that the validity of the PLA between Modern Works and defendants is dispositive of the separate question as to whether ArtistShare ever granted a license to Modern Works in the first instance. That was not the finding of the Court. The Court found that "the record does not establish that Schneider granted any control or ownership rights to MWP." [ECF 222 at 6]. Unlike Plaintiffs' proposed instruction, Defendants'

3:20-cv-04423-JD

instruction nowhere indicates that the jury must decide the threshold question of whether ArtistShare granted any rights to Modern Works.  Fourth, Defendants' instruction that the jury must decide "whether Ms. Schneider's works fall within the scope of the license that the PLA grants to the defendants" is confusing as it suggests that the jury's finding as to the scope of the license must be uniform as to *all* works.

3:20-cv-04423-JD

**Defendants' Argument re Disputed Instruction No. 34: Instruction Regarding Interpretation of Contracts**

This Instruction would instruct the jury on a legal issue that the Court resolved on summary judgment. It is necessary to avoid the jury intruding upon the Court's exclusive authority to determine purely legal issues.  Both sides propose an instruction, demonstrating that an instruction is necessary in this case.

This Court's summary judgment order (Dkt. 222, hereinafter "Order") definitively construed Section 7 of the Administrative Agreement ("AA") between Plaintiff Maria Schneider and Artistshare Music Publishing. Section 7 provides that Artistshare Music Publishing is obligated to inform Ms. Schneider and "obtain [her] prior written approval for any license [it] grant[s] on [her] behalf." Order at 8. The parties disputed whether, under New York law, this provision is a covenant or a condition precedent. The Court held that this was "a legal question for the Court to resolve before trial." *Id.* at 7. The Court construed Section 7 to be a covenant. *See id.* at 11. The Court also held that "[t]here is no room for massaging the plain text with extra-contractual evidence" and that "parol evidence" should not be used to construe the AA. *Id.* at 13. The consequence of the Court's ruling is that Section 7 does not negate any downstream sublicense that originated in the AA, even if Artistshare Music Publishing failed to comply with Section 7's notice-and-approval requirement. *See id.* at 8.

Where a court has determined that a contract is unambiguous, it is "necessary and appropriate to give the jury an instruction interpreting the various [contract] terms" at issue. *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH-PA, 2015 WL 5090791, at *3 (D. Nev. Aug. 26, 2015); *see also id. at 2* (accepting argument that a jury instruction "is necessary to prevent juror confusion and to maintain the same legal interpretations of the [contracts] as found by the court during summary judgment thereby preventing defendants from seeking new interpretations of the [contracts] from the jury").

Defendants expect Ms. Schneider to argue to the jury that downstream licenses issued under the authority of the AA should be invalid because of Section 7's notice-and-approval provision. The Court should instruct the jury on its summary judgment finding to prevent Ms.

Schneider from making an end-run around the Court's authority and "seeking new interpretations" of the AA "from the jury." *Id.*

Plaintiffs' counter-proposal should be rejected for three reasons.  First, the introductory paragraph to Defendants' proposal better explains to the jury that it is the Court's job, not the jury's, to interpret contracts.  That fundamental point should be made clear to avoid jury confusion.  Second, the third paragraph of Plaintiffs' proposal gratuitously highlights facts favorable to Ms. Schneider, while Defendants' proposal is more neutrally written.  Finally, Defendants' proposal identifies for the jury the factual dispute that the summary judgment order noted remains open for the jury to resolve, a point that Plaintiffs' proposal ignores.

<u>DISPUTED INSTRUCTION NO. 35</u>

COPYRIGHT—AFFIRMATIVE DEFENSE—EXPRESS LICENSE: OFFERED BY

PLAINTIFFS

The defendants contend that they are not liable for copyright infringement because one or more of the plaintiffs granted them an express license in their copyrighted work. The plaintiff cannot claim primary copyright infringement against a defendant who copies, distributes, or uses the plaintiff's copyrighted work if the plaintiff granted the defendant an express license to copy, distribute, or use the work.

In order to show the existence of an express license, the defendant has the burden of proving that the defendant received an express license to copy, distribute, or use the plaintiff's copyrighted work.

If the defendant proves this, the burden shifts to the plaintiff to show that the defendant's copying, distribution, or use of the plaintiff's copyrighted work exceeded the scope of the license.

I have separately instructed you on the impact of the administrative agreement between Maria Schneider and Artist Share.

If you find that the defendants have proved that the plaintiff granted them an express license to copy, distribute, or use the copyrighted work, your verdict should be for the defendants on that portion of the plaintiff's copyright infringement claim, unless the plaintiff proves the defendant's copying, distribution, or use of the plaintiff's copyrighted work exceeded the scope of the license. If the plaintiff proves this, your verdict must be for the plaintiff.

*Authority*:  Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.25A (2017).

<u>DISPUTED INSTRUCTION NO. 35</u>

COPYRIGHT—AFFIRMATIVE DEFENSE—EXPRESS LICENSE: OFFERED BY
DEFENDANTS

In this case, YouTube and Google assert that Ms. Schneider, Uniglobe, and AST
Publishing licensed, whether directly or indirectly, their works to the defendants.

YouTube and Google assert that Ms. Schneider, Uniglobe, and AST Publishing licensed
some or all of their works to the defendants under the YouTube Terms of Service.

YouTube and Google assert that Ms. Schneider licensed her works to the defendants via
Artistshare Publishing and Modern Works Publishing. Ms. Schneider denies that the defendants
possessed a valid license.

The defendants assert that Uniglobe licensed its works to defendants via Vision Films
and ValleyArm Digital Limited. Uniglobe denies that the defendants possessed a valid license.

A plaintiff cannot claim copyright infringement against a defendant who copies,
distributes, or uses the plaintiff's copyrighted work if the plaintiff or the plaintiff's assignee
granted the defendant an express license to copy, distribute, or use the work.

In order to show the existence of an express license, the defendant has the burden of
proving that the defendant received an express license to copy, distribute, or use the plaintiff's
copyrighted work.

If the defendant proves this, the burden shifts to the plaintiff to show that the defendant's
copying, distribution, or use of the plaintiff's copyrighted work exceeded the scope of the
license.

If you find that the defendant has proved that the defendant was granted a license to copy,
distribute, or use the copyrighted work, your verdict should be for the defendant on that portion
of the plaintiff's copyright infringement claim.


Authority: This is adapted from the model Ninth Circuit Model Instruction 17.25A.

**Plaintiffs' Argument re Disputed Instruction No. 35: Copyright—Affirmative Defense—Express License**

Plaintiffs have adopted the Ninth Circuit's Model Civil Jury Instruction as to Defendants' express license defense nearly verbatim, with one exception. Plaintiffs' proposed instruction makes clear that an express license would only release Defendants from liability as to Plaintiffs' *primary* copyright claims. An express license does not impact Plaintiffs' contributory or vicarious infringement claims, as the Court has already determined. [*See* ECF 222 at 15 (holding that "The TOS certainly does not allow YouTube to materially contribute to, induce, or supervise infringement by its users with impunity.")] This clarification ensures the jury does not mistakenly let license issues infect their analysis of claims where a license is not relevant.

Defendants' alterations to the Model Civil Jury Instructions should be rejected. First, Defendants' divergence from the model simply rehashes their theory of the case, which they are free to present in closing arguments, but does not present a unique legal issue warranting amendments to the default Ninth Circuit approach.

Second, Defendants' instruction that Plaintiffs' works were licensed "directly or indirectly" is confusing and prejudicial. It is for Defendants to show through the evidence adduced at trial, rather than in the jury instructions, how Plaintiffs' license with a third-party authorizes YouTube to copy, distribute or use Plaintiffs' copyrighted works. The unnecessary reference to "indirect[]" authorization muddles this issue.

Third, Defendants wrongly seek to hide from the jury the significance of the scope of any relevant license. The. model instructions rightly note that if the copying, distribution or use of Plaintiffs' copyrighted works exceed the scope of the license, then the verdict must be for the Plaintiff. There is no basis to obscure this point. And Defendants' instruction wrongly compounds the prejudice by failing to indicate that an express license would only affect Plaintiffs' *primary* copyright

3:20-cv-04423-JD

**Defendants' Argument re Disputed Instruction No. 35: Copyright—Affirmative Defense—Express License**

Defendants' instruction is based on the Ninth Circuit Model Instruction No. 17.25A with modifications to tailor the instruction to the facts of this case and promote jury comprehension.

*First*, Defendants proposed instruction includes prefatory information designed to help the jury understand which express licenses Defendants are asserting against which Plaintiff. Most cases have just one license defense, but because this case involves multiple plaintiffs, each of whom granted multiple licenses, it is useful to explain to the jury why this instruction even matters.  To illustrate the point: Defendants contend that each Plaintiff has accepted YouTube's Terms of Service agreement. Further, Defendants argue that Ms. Schneider licensed her works to YouTube via Artistshare Publishing and Modern Works Publishing. And Defendants contend that Uniglobe licensed its works to YouTube via Vision Films and ValleyArm Digital Limited. Defendants' proposed instruction identifies these licenses and entities to promote juror comprehension in this multiple-plaintiff case, with multiple licenses at issue and hundreds of alleged infringements. *See* Standing Order For Civil Jury Trials Before Judge James Donato at 1 ("Counsel and their clients are invited to think creatively about ways to … enhance jury comprehension and deliberations[.]"). Plaintiffs' proposed instruction will have limited value to the jury because it fails to identify the licenses or licensing entities that Defendants allege establish Defendants' affirmative defense.

*Second*, Defendants make clear that an affirmative defense for express license may be established where YouTube received a license for the plaintiff's work from an intermediary to whom the plaintiff granted permission to sublicense the work (as Defendants argue occurred for some of the licenses granted to YouTube).

Plaintiffs commit error by asking for an instruction that express licenses can defense against only a "primary" infringement claim.  Setting aside Plaintiffs' bizarre insistence on rebranding "direct" infringement as "primary" infringement, the statement is wrong because it overreads this Court's summary judgment order, where the Court noted that Defendants have conceded that the express license defense in the TOS does not "fully immunize its **users** from

infringement." Dkt. 222 at 15 (emphasis added). That is not the same as stating that the TOS license does not immunize ***YouTube's*** conduct in at least some indirect-infringement contexts. Furthermore, even if the summary judgment order said what Plaintiffs claim it says, the TOS is not the only express license in the case. Uniglobe and Modern Works have each granted ***different*** express licenses to YouTube (whether directly or indirectly), and the Court did not opine on those at summary judgment. Plaintiffs' focus on "primary" infringement claims is baseless.

DISPUTED INSTRUCTION NO. 36

COPYRIGHT: AFFIRMATIVE DEFENSE: IMPLIED LICENSE: OFFERED BY PLAINTIFFS

The defendants contend that they are not liable for primary copyright infringement because the plaintiff granted them an implied license in the plaintiff's copyrighted work. The plaintiff cannot claim copyright infringement against a defendant who copies, distributes, uses, modifies, or retains the plaintiff's copyrighted work if the plaintiff granted the defendant an implied license to copy, distribute, use, modify, or retain the work.

In order to show the existence of an implied license, the defendant has the burden of proving that:

1.   the defendant requested that the plaintiff create a work;

2.   the plaintiff made that particular work and delivered it to the defendant; and

3.   the plaintiff intended that the defendant copy, distribute, use, modify, or retain the plaintiff's work.

If you find that the defendant has proved by a preponderance of the evidence that the plaintiff granted them an implied license to copy, distribute, use, modify, or retain the copyrighted work, your verdict should be for the defendant.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.25 (2017).

<u>DISPUTED INSTRUCTION NO. 36</u>

COPYRIGHT: AFFIRMATIVE DEFENSE: IMPLIED LICENSE: OFFERED BY DEFENDANTS

The defendants contend that they are not liable to Ms. Schneider for copyright infringement because she granted them an implied license in the plaintiff's copyrighted work. The plaintiff cannot claim copyright infringement against a defendant who copies, distributes, uses, modifies, or retains the plaintiff's copyrighted work if the plaintiff granted the defendant an implied license to copy, distribute, use, modify, or retain the work.

In order to show the existence of an implied license, the defendant has the burden of proving that:

1. Ms. Schneider knew or should have known that YouTube was displaying or distributing her works on her behalf; and

2. Ms. Schneider received a benefit from the display or distribution of her works.

If you find that the defendants have proved by a preponderance of the evidence that Ms. Schneider granted them an implied license to copy, distribute, use, modify, or retain the copyrighted work, your verdict should be for the defendants on that portion of the plaintiff's copyright infringement claim.


Authority: Ninth Circuit Model Instruction 17.25; Comment, Ninth Circuit Model Instruction 17.25 ("[a]lthough this model instruction accurately captures one recurring set of implied license facts, implied licenses arise in a wide variety of circumstances, including many . . . for which the elements of an implied license will be different."); *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("[S]o long as it does not conflict with the Copyright Act, state lawdetermines whether a copyright holder has granted . . . a license."); *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008) ("[G]rants of nonexclusive licenses need not be in writing, and may be granted orally or by implication.").

**Plaintiffs' Argument re Disputed Instruction No. 36: Copyright —Affirmative Defense—**

**Implied License**

Plaintiffs have adopted the Ninth Circuit's Model Civil Jury Instruction as to Defendants' implied license defense nearly verbatim, with one exception. Plaintiffs' proposed instruction makes clear that an implied license would only release Defendants from liability as to Plaintiff's *primary* copyright claims. An implied license does not impact Plaintiffs' contributory or vicarious infringement claims. The Court made a similar finding when Defendants advanced an express license defense at summary judgment. [*See* ECF 222 at 15 (holding that "The TOS certainly does not allow YouTube to materially contribute to, induce, or supervise infringement by its users with impunity.")] This clarification ensures the jury does not mistakenly let license issues infect their analysis of claims where it is irrelevant.

The Court should reject Defendants' radical departure from the Ninth Circuit's model instructions for multiple reasons. First, nothing in Defendants' cited case law stands for the proposition that an implied license is granted if a copyright holder knew or should have known that their copyrighted work was being displayed and the copyright owner received a benefit from the display or distribution of that work. For example, *Asset Marketing Systems. v. Gagnon*, 542 F.3d 748 (9th Cir. 2008) expressly adopts the same standard for the grant of an implied license used in the model instruction: "Thus, we have held that an implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it,4 and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 754–55.

Second, Defendants' instruction fails to recognize that an implied license would only affect Defendants' liability as to Plaintiffs' *primary* infringement claims. As discussed above, such an instruction is important to ensure the jury does not mistakenly let license issues infect their analysis of claims where license issues are not relevant.

**Defendants' Argument re Disputed Instruction No. 36: Copyright—Affirmative Defense—Implied License**

Plaintiffs insist on an implied license instruction that has no relevance to this case. The Comment to Model Ninth Circuit Instruction 17.25 notes: "Although this model instruction accurately captures one recurring set of implied license facts, implied licenses arise in a wide variety of circumstances, including many . . . ***for which the elements of an implied license will be different***" (emphasis added).  In the face of this clear guidance, Plaintiffs blindly adhere to the text of the model instruction even though that proposal does not correspond to the facts of this case.  This is an invitation for error.

State law dictates whether an implied license exists. *Foad Consulting Grp., Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("[W]here the Copyright Act does not address an issue," federal courts "turn to state law to resolve the matter, so long as state law does not otherwise conflict with the Copyright Act"). "[I]mplied copyright licenses" are not treated "any differently." *Id.* "Thus, so long as it does not conflict with the Copyright Act, state law determines whether a copyright holder has granted such a license." *Id.* Under California law, "there is no difference between an express and implied contract." *Levy v. Only Cremations for Pets, Inc.*, 57 Cal. App. 5th 203, 211 (2020). Indeed, "an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 455 (1998). The Ninth Circuit recognizes that a party can imply a copyright license by conduct. *Foad Consulting Grp.*, 270 F.3d at 825.

Defendants' instruction tracks the elements of a contract (express or implied) under California law and will aid the jury in evaluating the applicability of the defense to the specific facts of this case. First, Defendants' instruction requires a showing that Ms. Schneider "knew or should have known that YouTube was displaying or distributing works on her behalf," which reflects that there must be an "objective manifestation of the party's assent" to a contract. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001). Second, Defendants' instruction requires a showing that "Ms. Schneider received a benefit from the display or distribution of her works," which reflects that "a contract requires consideration." *San Luis Obispo Loc. Agency Formation*

*Comm'n v. City of Pismo Beach*, 61 Cal. App. 5th 595, 600 (2021). In contrast, Plaintiffs' proposal instruction refers to implied contract law based only on one particular set of facts that has no application here. There are no work-for-hire allegations that YouTube requested Ms. Schneider make a particular work and "deliver it" to YouTube. Instead, Defendants argue that Ms. Schneider granted an implied license to YouTube because she knew of her works' existence on YouTube and accepted the benefits of the YouTube service, including royalty payments.

This case reflects different facts than the model instructions contemplate. Defendants' instruction is more appropriate.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 37</u>

RATIFICATION; OFFERED BY DEFENDANTS

A purported principal who ratifies the acts of someone who was purporting to act as the principal's agent will be liable for the acts of that purported agent, provided that the principal made a conscious and affirmative decision to approve the relevant acts of the purported agent while in possession of full and complete knowledge of all relevant events.

Authority:  This is the Ninth Circuit Model Instruction 4.7.

**Plaintiffs' Argument re Disputed Instruction 37: Ratification**

Because Defendants have never alleged ratification and there is no evidence of ratification—either related to Defendants' counterclaim or Ms. Schneider's claims—any such instruction would be confusing and prejudicial.  Defendants' answer contains no allegation that Ms. Schneider ratified the actions of any purported agents.  *See generally* ECF No. 160.  There is also no record evidence that Ms. Schneider ratified the conduct of any purported agents.  Accordingly, an instruction on this unalleged and unsupported theory would be improper.  *Parada v. Gonzales*, 204 Fed. Appx. 610, 611 (9th Cir. 2006) ("The district court correctly declined to instruct the jury on a substantial truth defense because there was no evidence in the record to support it."); *United States v. Falsia,* 724 F.2d 1339, 1342 (9th Cir.1983) ("A defendant is not entitled to a jury instruction where there is no evidence to support it....").

Defendants' Amended Counterclaims and its' Opposition to the Motion to Dismiss are likewise void of any reference to ratification. Defendants attempted to raise an unsupported "claim" of ratification for the first time in their Opposition to Plaintiffs' Motion for Summary Judgement, stating *only* that "[a]fter YouTube suspended IPLLC's and Pirate Monitor LLC's accounts in response to the fraudulent takedown notices, Csupo personally defended the notices and demanded reinstatement, complaining that the suspension prevented them from submitting further takedown requests." (Opp. at 15). But Defendants do not identify any evidence that Csupo had knowledge of all material facts concerning those takedown notices, as would be required to support an instruction on ratification.  *See Parada*, 204 Fed. Appx. at 611; *Falsia,* 724 F.2d at 1342.  As the Court in *Salaiz v. eHealth Servs., Inc.*, explained "[e]ven if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.'" WL 2622138, at *4 (N.D. Cal. Mar. 22, 2023) (quoting *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). There, the Court found that Plaintiffs failed to allege knowledge of material facts sufficient to form the basis of the ratification claim. In the

**Defendants' Argument re Disputed Instruction No. 37: Ratification**

This is a standard model instruction.  Defendants contend, as an alternative argument, that Ms. Schneider ratified the Artistshare to Modern Works assignment by conduct.  Defendants also contend that Ms. Schneider ratified the broader Schneider/Coleman/YouTube relationship by conduct.  The jury should receive this standard instruction.

Plaintiffs' complaint appears to be that Defendants failed to raise this defense in their Answer.  This argument misses the mark.  The Ninth Circuit model instruction that supports model instruction 4.7 is *United States v. Alaska S. S. Co.*, 491 F.2d 1147 (9th Cir. 1974).  In that case, the Ninth Circuit treated ratification as a contract-formation concept, not an affirmative defense.  Thus, ratification need not be pleaded in an answer for it to be submitted to the jury.

Even if ratification was necessarily an affirmative defense, this Court has indicated that it may entertain a post-trial motion to conform the pleadings to the proof after trial.  5/25/23 Hr'g Tr. at 24:2.  A ratification instruction would be proper in that scenario, as well.

DISPUTED INSTRUCTION 38

CONTRACTUAL LIMITATIONS: OFFERED BY PLAINTIFFS

The defendants contend that some of the plaintiffs' copyright claims are barred by a one-year contractual period of limitations, which is a time limit for bringing a claim. Each act of infringement is a separate harm that creates an independent claim for relief and restarts the contractual period of limitations.

To invoke the one-year contractual limitations period as a bar to a claim, the defendants must establish by a preponderance of the evidence that: (1) the plaintiff entered into the contract with the defendants with respect to the specific work that was infringed; and (2) the plaintiff knew, or in the exercise of reasonable diligence should have known, of the specific act of infringement of that work more than one year prior to the filing of the lawsuit.

This lawsuit was filed on July 2, 2020.


*Authority*: This is a special instruction. Plaintiff Uniglobe should be deemed to have filed its lawsuit on July 2, 2020, when this class action was commenced. *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1101 (N.D. Cal. 2007) ("The class tolling doctrine holds that the commencement of a class action stops the running of statutes of limitations as to all claims that might be asserted by all members of the class.") (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

DISPUTED INSTRUCTION 38

CONTRACTUAL LIMITATIONS: OFFERED BY DEFENDANTS

Defendants claim that some of plaintiffs' copyright claims are barred by the contractual limitations period, which is a time limit for bringing a claim.

To establish that the contractual limitations period bars the plaintiff's copyright claim, the defendants must prove by a preponderance of the evidence that the plaintiff failed to file her or its lawsuit within one year after she or it knew, or, in the exercise of reasonable diligence, should have known about the infringement.

Ms. Schneider filed her lawsuit on July 2, 2020.

AST and Uniglobe filed their lawsuit on November 17, 2021.

Authority: There is no model Ninth Circuit instruction.  This is adapted from the model Eleventh Circuit instruction (9.29).

**Plaintiffs' Argument re Disputed Instruction No. 38: Contractual Limitations: Offered by Plaintiffs**

This is a special instruction that has no corresponding Ninth Circuit model instruction. Although the parties' instructions are largely similar, Plaintiffs' version adheres more closely to Ninth Circuit law.

*First*, Plaintiffs' instruction properly notes that "[e]ach act of infringement is a separate harm that . . . restarts contractual period of limitations"; this language makes clear that even if the one-year contractual limitations period has run on certain claims, separate claims that accrued during the limitations period are unaffected. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) ("For ordinary claims of copyright infringement, each new infringing act causes a new claim to accrue."); *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1023 (9th Cir. 2019) ("when a defendant commits successive violations [of the Copyright Act], the [limitations period] runs separately from each violation").

*Second*, Plaintiffs' instruction explains, and Defendants' instruction omits, that for a contractual limitations period to apply, a plaintiff must have entered into a contract to shorten the limitations period in the first place. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 106–07 (2013) (explaining that a contractual limitations period applies only when "the parties have agreed by contract"); *Seagate Tech. LLC v. Dalian China Express Int'l Corp.*, 169 F. Supp. 2d 1146, 1159 (N.D. Cal. 2001) ("*parties to a contract* may stipulate therein for a period of limitation" (emphasis added)).

*Third,* Plaintiffs' proposed instruction more clearly emphasizes that the limitations period begins running only from the time that a plaintiff knew or reasonably should have known of the specific act of infringement. *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1244 (9th Cir. 2022) (copyright "limitations period runs from the date the claim accrued, *i.e.*, from the date when the copyright holder knew or should have known of the infringement"); *Media Rts. Techs.*, 922 F.3d at 1022 ("a copyright infringement claim accrues . . . when a party discovers, or reasonably should have discovered, the alleged infringement"); *Roley*

---

*v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994) ("A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.").

*Fourth* Defendants' proposed instruction wrongly asserts that Plaintiffs AST and Uniglobe commenced their lawsuits on the date they joined this action, November 17, 2021, and that the limitations period should be counted from that date. "The class tolling doctrine holds that the commencement of a class action stops the running of statutes of limitations as to all claims that might be asserted by all members of the class." *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1101 (N.D. Cal. 2007) (citing *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Tolling is appropriate when the previously commenced class action "involved exactly the same cause of action subsequently asserted." *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975). Uniglobe and AST bring "exactly the same cause[s] of action" as those brought by Ms. Schneider in the initial July 2, 2020, class action complaint—direct, contributory, and vicarious infringement—and they are members of the putative infringement classes. Accordingly, Uniglobe and AST should be deemed to have commenced their actions on July 2, 2020, as stated in Plaintiffs' proposed instruction.

### Defendants' Argument re Disputed Instruction No. 38: Contractual Limitations

There is no Ninth Circuit Model Jury Instruction for a contractual limitations period affirmative defense. Defendants propose adapting the Eleventh Circuit Pattern Jury Instruction (Civil) No. 9.29, Copyright – Defenses – Affirmative Defense – Statute of Limitations to the context of a contractual limitations period.

First, Defendants' proposed instruction should be preferred over Plaintiffs' because, rather than adapting the Eleventh Circuit Pattern Jury Instruction No. 9.29, Plaintiffs have elected to draft a special instruction. "[T]he preferred practice is for district courts, where possible, to follow the model instructions and avoid unnecessary disputes like this one." *United States v. Peppers*, 697 F.3d 1217, 1221 (9th Cir. 2012); *see also* Standing Order for Civil Jury Trials Before Judge James Donato ¶ 7 ("The parties should use the Ninth Circuit Model Jury Instructions to the fullest extent possible. Modifications and 'custom' proposed instructions are discouraged.").

Second, Plaintiffs' proposed instruction seeks to obtain for Plaintiffs AST and Uniglobe the benefit of *American Pipe* tolling.  But *American Pipe* concerns the tolling of the "statute of limitations." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974).  Plaintiffs cite no authority for their claim that *American Pipe* tolling, which is "based in equity," applies to a contractual limitations period, to which the parties have expressly consented. *Cf. California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 510 (2017) (*American Pipe* tolling does not apply to statutes of repose because the purpose of "grant[ing] complete peace to defendants, supersedes the application of a tolling rule based in equity"); Dkt. 222 at 16 (distinguishing the statute of limitations from a contractual limitations period).

Moreover, in general "*American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or file individual claims if the class fails."  *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).  But, here, AST and Uniglobe entered this lawsuit as named plaintiffs a year and a half after the lawsuit was filed, but *before* Plaintiffs even filed a motion for class certification.  *See* Dkt. 1, 99, 190.  It cannot be said that AST and Uniglobe acted like unnamed class members waiting to file suit only once the class certification motion was denied. Plaintiffs fail to provide any authority for

applying *American Pipe* tolling in the unusual circumstances to extend the claims of a plaintiff that joins a putative class action as a named plaintiff *before* class certification is denied, for the benefit of pursuing those claims in the same litigation after class certification is denied. In fact, the authority Plaintiffs cited in support of their model instruction did not even apply *American Pipe* tolling. *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1103 (N.D. Cal. 2007) ("[T]he court declines to apply the class tolling doctrine to plaintiffs' claims").  Defendants should be allowed to assert the defense that AST and Uniglobe have slept on their rights, after expressly agreeing to a one-year contractual limitations period.

1

DISPUTED INSTRUCTION NO. 39

2

DAMAGES—PROOF

3

Plaintiffs object to this Instruction in its entirety.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 39</u>

DAMAGES—PROOF; OFFERED BY DEFENDANTS

It is the duty of the Court to instruct you about the measure of damages.  By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for any plaintiff, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  I will provide you with more specific instructions about damages in later instructions.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.


Authority:  This is adapted from the model Ninth Circuit Model Instruction 5.1.

**Plaintiffs' Argument re Disputed Instruction No. 39: Damages—Proof**

Plaintiffs object to this instruction in its entirety. In the context of this action, and the damages sought by Plaintiffs, this general instruction on damages is both unnecessary and likely to confuse the jury. The proposed instruction states, "The plaintiff has the burden of proving damages by a preponderance of the evidence." That is not the case here as the Copyright Act imposes a shifting burden of proof.

Under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and any profits of the infringer that are attributable to the infringement* and are not taken into account in computing the actual damages." (Emphasis added.) Plaintiffs are not seeking actual damages for diminution in value of Plaintiffs' works or lost sales or licenses. Rather, Plaintiffs seek only disgorgement of Defendants' profits and statutory damages. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and *the infringer* is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work" 17 U.S.C. § 504(b) (emphasis added). This general instruction wrongly implies that Plaintiffs bear the burden of proof on costs and the burden on apportioning costs. *Polar Bear*, 384 F.3d at 711 ("§ 504(b) creates a two-step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, *the infringer bears the burden of apportioning the profits that were not the result of infringement*" (emphasis added)). It will confuse the jury.

**Defendants' Argument re Disputed Instruction No. 39: Damages—Proof**

Defendants offer Ninth Circuit Model Instruction 5.1 with minimal modification to adapt it to the facts of this case.  Plaintiffs have not proposed a corresponding instruction.

This is a standard Ninth Circuit instruction that is commonly included as prefatory to more specific instructions about damages. Plaintiffs can offer no persuasive reason for omitting this instruction as prefatory to the more specific damages instructions. By contrast, the model instruction frames important issues for the jury, including that Plaintiffs' bear the burden of proof, which is preponderance of the evidence, and that damages cannot be speculative.

## INSTRUCTION NO. 40

### COPYRIGHT—DAMAGES

If you find for any plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. That plaintiff is entitled to recover any profits of the defendant attributable to the infringement. The plaintiff must prove damages by a preponderance of the evidence.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.32 (2017).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DISPUTED INSTRUCTION NO. 41

### DAMAGES—MITIGATION

Plaintiffs object to this Instruction in its entirety.

1

<u>DISPUTED INSTRUCTION NO. 41</u>

2

DAMAGES—MITIGATION; OFFERED BY DEFENDANTS

3       The plaintiff has a duty to use reasonable efforts to mitigate damages.  To mitigate means

4   to avoid or reduce damages.

5       The defendant has the burden of proving by a preponderance of the evidence:

6       1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

7       2.      the amount by which damages would have been mitigated.

8       If you found that YouTube established these elements for a plaintiff, you may reduce the

9   award of damages to that plaintiff due to the plaintiff's failure to mitigate the damages.

10

11  Authority:  This is adapted from the model Ninth Circuit Model Instruction 5.3.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiffs' Argument re Disputed Instruction No. 41: Damages—Mitigation**

Plaintiffs object to this Instruction in its entirety.  Plaintiffs are not seeking actual damages for diminution in value of Plaintiffs' works or lost sales or licenses.  Rather, Plaintiffs seek only disgorgement of Defendants' profits and statutory damages.  The defense of mitigation does not apply to either of these damages theories.

Under 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and any profits of the infringer that are attributable to the infringement* and are not taken into account in computing the actual damages." (Emphasis added.)  Disgorgement of profit is an equitable remedy that awards a plaintiff the amount of benefit received by a defendant due to its wrongful acts.  *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020) ("Decisions from this Court confirm that a remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts.").  On the other hand, mitigation is a defense of law and is not relevant to equitable relief like disgorgement.  *F.T.C. v. Medicor LLC*, 2001 WL 765628, at *2 (C.D. Cal. June 26, 2001) ("All relief sought by Plaintiff is equitable and dependent upon the amount of gain received by the Defendants, not the amount of loss suffered by the Plaintiff.  Thus, mitigation of damages is not relevant."); *Microsoft Corp. v. U-Top Printing Corp.*, 1996 WL 479066, at *1 (N.D. Cal. Aug. 13, 1996) ("The Court found that defendants' remaining affirmative defense, the Sixth Affirmative Defense (failure to mitigate) did not apply to this award of disgorgement of profits.").

Likewise, it is well established that mitigation is inapplicable when a plaintiff seeks statutory damages.  *See, e.g.*, *J & J Sports Prods., Inc. v. Dean*, 2011 WL 4080052, at *2 (N.D. Cal. Sept. 12, 2011) ("defense of mitigation is not applicable" because "Plaintiff seeks statutory damages"); *Arista Recs., Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 422 (D.N.J. 2005) (defense of "failure to mitigate damages" was "previously waived by Defendants upon Plaintiffs' representation that they would be seeking damages under 17 U.S.C. § 504(c)"); *Purzel Video GmbH v. Smoak*, 11 F. Supp. 3d 1020, 1031 (D. Colo. 2014) ("Because Plaintiff has elected

---

statutory damages in this case, Defendant Smoak's failure-to-mitigate defense should be stricken.").

Defendants' proposed instruction should be rejected in its entirety.

**Defendants' Argument re Disputed Instruction No. 41: Damages—Mitigation**

Defendants offer the Ninth Circuit Model Instruction 5.3 concerning the plaintiffs' duty to mitigate damages, as tailored to the facts of this case.  There is evidence that Plaintiffs refused to use copyright management tools available to them that would have allowed them to more effectively police their copyrights, instead allowing works posted without their authorization to stay on YouTube (and accrue damages).  *See Malibu Media, LLC v. Guastaferro*, C.A. No. 1:14-cv-1544, 2015 WL 4603065, at *5-6 (E.D. Va. July 28, 2015) ("Some courts have recognized that a plaintiff's knowing failure to stop ongoing copyright infringement may represent a failure to mitigate.").

In the meet-and-confer and even during the first round of briefing, Plaintiffs failed to cite any case holding that a failure-to-mitigate defense is unavailable as to disgorged profits in a copyright case.  Plaintiffs note that disgorged profits sound in equity, but, here, they are provided for by *statute* and so are a *legal* remedy.  Plaintiffs have cited two cases, *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020) and *F.T.C. v. Medicor LLC*, 2001 WL 765628, at *2 (C.D. Cal. June 26, 2001), that aren't even copyright cases.  And while *Microsoft Corp. v. U-Top Printing Corp.*, 1996 WL 479066, at *1 (N.D. Cal. Aug. 13, 1996), did include a copyright claim, its statement about the failure-to-mitigate defense is all of one declarative sentence that isn't about copyright at all.

DISPUTED INSTRUCTION NO. 42

COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS: OFFERED BY PLAINTIFFS

As damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal relationship between the infringement and defendants' gross revenue. To recover indirect profits, plaintiffs must establish a causal relationship between the infringement and the profits generated indirectly from such infringement. A causal nexus exists if the infringement at least partially caused the profits that defendants generated as a result of the infringement.

The defendants' profits are determined by subtracting all expenses from the defendants' gross revenue.

The defendants' gross revenues include the direct and indirect advertising revenues generated from the presence of the copyright infringing videos on the YouTube platform. The plaintiffs have the burden of proving the defendants' gross revenue by a preponderance of the evidence.

Expenses are all marginal production costs incurred in producing the defendants' gross revenue. The defendants have the burden of proving the defendants' expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the presence of copyright infringing videos on the YouTube platform is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the percentage of the profit, if any, attributable to factors other than copying the copyrighted work.

*Authority*:

- Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.34 (2017);
- 17 U.S.C. 504;

- *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (The "fundamental standard" for whether a causal nexus is shown as required for an award of indirect profits is that the plaintiff "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement.").

DISPUTED INSTRUCTION NO. 42

COPYRIGHT—DAMAGES—DEFENDANT'S PROFITS: OFFERED BY DEFENDANTS

As damages, the copyright owner is entitled to any profits of the defendant attributable to the infringement.

You may make an award of the defendant's profits only if you find that the plaintiff showed a causal nexus between the infringement and the profits generated indirectly from the infringement.

The defendant's profit is determined by deducting all expenses from the defendant's gross revenue.

The defendant's gross revenue is all of the defendant's receipts from the use of a work containing or using the copyrighted work. The plaintiff has the burden of proving the defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating costs, overhead costs, and production costs incurred in producing the defendant's gross revenue. The defendant has the burden of proving the defendant's expenses by a preponderance of the evidence.

Unless you find that a portion of the profit from the use of a work containing or using the copyrighted work is attributable to factors other than use of the copyrighted work, all of the profit is to be attributed to the infringement. The defendant has the burden of proving the portion of the profit, if any, attributable to factors other than infringing the copyrighted work.

Authority:  This is the Ninth Circuit Model Instruction 17.34.

**Plaintiffs' Argument re Disputed Instruction No. 42: Copyright—Damages—**

**Defendant's Profits**

Plaintiffs' proposed instruction is based largely on the Ninth Circuit Model Civil Jury Instruction 17.34, except for several modifications tailored to the facts of this case.

*First*, because Plaintiffs seek indirect profits, Plaintiffs' proposed instruction elaborates on the meaning of "causal relationship" in the context of indirect profits.  This language is drawn from *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004) (The "fundamental standard" for whether a causal nexus is shown as required for an award of indirect profits is that the plaintiff "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement" (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)).).

*Second*, Plaintiffs have included language explaining what certain phrases mean in the context of this case.  Plaintiffs' proposed instruction specifies that "gross revenues" means "the direct and indirect advertising revenues generated from the presence of the copyright infringing videos on the YouTube platform" and that "use of the copyrighted work" means "the presence of copyright infringing videos on the YouTube platform."  Such elaboration will aid the jury and is neutrally presented.

By contrast, Defendants' proposed instruction both deviates from the model and misstates the law.

*First*, the Court should reject Defendants' paragraph explaining the meaning of "causal nexus" and "proximate causation".  This language does not appear anywhere in the model instruction.  Moreover, language such as "Proximate causation generally does not allow plaintiffs to go beyond the first step in the causal chain" wrongly implies that Plaintiffs bear the burden of apportioning costs. 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and *the infringer* is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work" (emphasis added)); *Polar Bear*, 384 F.3d at 711 ("§ 504(b) creates a two-

3:20-cv-04423-JD

step framework for recovery of indirect profits: 1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and 2) once the causal nexus is shown, *the infringer bears the burden of apportioning the profits that were not the result of infringement*" (emphasis added)).

     *Second*, the Court should also reject Defendants' addition of language on speculation when determining gross revenue and expenses.  This language is absent from the model instructions, and Defendants have proffered no factual basis necessitating such a gratuitous warning.

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Defendants' Argument re Disputed Instruction No. 42: Copyright—Damages**

The dispute over this instruction boils down to the fact that Plaintiffs have added a sentence–"A causal nexus exists if the infringement at least partially caused the profits that defendants generated as a result of the infringement."--to the model instruction.  That is a misstatement of the law and the Court should not provide the jury with that instruction.

Plaintiffs' amendment to the Model Instruction is misleading and premised on a misinterpretation of the *Polar Bear* decision.  *Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700 (9th Cir. 2004).  A jury might infer from this sentence that it could award plaintiffs the full value of Defendants' undifferentiated profits, even if the plaintiff has only proven that some portion of those profits were caused by infringement. Not so. Plaintiffs state that their amendments are supported by a quotation from *Polar Bear* that a plaintiff "must proffer some evidence . . . [that] the infringement at least partially caused the profits that the infringer generated as a result of the infringement." *See Polar Bear*, 384 F.3d at 711 (quoting *Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002)).  But this quotation is taken out of context. The *Polar Bear* court was quoting the standard employed in *Mackie* to determine whether a plaintiff could create a triable issue of fact to survive summary judgment. *Id.* The *Polar Bear* court reasoned "[f]rom [Mackie's] principle," that "profits sought are those that arise from the infringement." Accordingly, "a copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement" and "a plaintiff seeking to recover indirect profits must 'formulate the initial evidence of gross revenue duly apportioned to relate to the infringement.'" *Id*. (citing 4 Nimmer on Copyright § 14.03[B]). Far from weakening the requirement of proximate causation, the *Polar Bear* court was emphasizing it.

Plaintiffs' misleading instructions should not be given to the jury.  Instead, the Court should issue the model instruction proposed by Defendants.

INSTRUCTION NO. 43

COPYRIGHT—DAMAGES—STATUTORY DAMAGES

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages. The plaintiff seeks a statutory damage award, established by Congress for each work infringed. Its purpose is not only to compensate the plaintiff for their losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

The amount you may award as statutory damages is not less than $750, nor more than $30,000 for each work you conclude was infringed.

However, if you find the infringement was innocent, you may award as little as $200 for each work innocently infringed.

However, if you find the infringement was willful, you may award as much as $150,000 for each work willfully infringed.

Instruction __ will tell you what constitutes innocent infringement and Instruction __ will tell you what constitutes willful infringement.

*Authority*: This is the model instruction, Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.35 (2017).

## INSTRUCTION NO. 44

COPYRIGHT—DAMAGES—INNOCENT INFRINGEMENT

An infringement is considered innocent when the defendant has proved both of the following elements by a preponderance of the evidence:

1.  the defendant was not aware that its acts constituted infringement of the copyright; and

2.  the defendant had no reason to believe that its acts constituted an infringement of the copyright.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.36 (2017).

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

INSTRUCTION NO. 45

COPYRIGHT—DAMAGES—WILLFUL INFRINGEMENT

An infringement is considered willful when the plaintiff has proved both of the following elements by a preponderance of the evidence:

1.   the defendant engaged in acts that infringed the copyright; and

2.   the defendant knew that those acts infringed the copyright, or the defendant acted with reckless disregard for, or willful blindness to, the copyright holder's rights.

*Authority*: Adapted from Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.37 (2017).

1

2

3

DISPUTED INSTRUCTION NO. 46

PRELIMINARY INSTRUCTION—COPYRIGHT MANAGEMENT INFORMATION:

OFFERED BY PLAINTIFFS

4

5

6

7

8

9

The plaintiffs claim that the defendants violated the Digital Millennium Copyright Act, or DMCA, by (i) removing or altering metadata constituting copyright management information associated with their works contained in videos on YouTube or (ii) displaying videos containing their works knowing that copyright management information associated with those works had been removed or altered. The defendants deny that they violated the copyright management information protections of the Digital Millennium Copyright Act.

10

11

12

I will now instruct you on the law regarding copyright management information, and the damages you may award if you find that the plaintiffs have met their burden to prove that the defendants violated the protections afforded by the Digital Millennium Copyright Act.

13

14

15

*Authority*: This is a special instruction based on 17 U.S.C. § 1202.

16

17

18

19

20

21

22

23

24

25

26

27

28

3:20-cv-04423-JD

REVISED JOINT FINAL JURY INSTRUCTIONS

<u>DISPUTED INSTRUCTION NO. 46</u>

PRELIMINARY INSTRUCTION—COPYRIGHT MANAGEMENT INFORMATION:

OFFERED BY DEFENDANTS

The plaintiffs claim that the defendants violated the Digital Millennium Copyright Act, or DMCA, by distributing a copy of a copyrighted work knowing that the CMI has been removed without authority from the copyright owner, while knowing that the distribution will induce or conceal copyright infringement. The defendants deny that they violated the copyright management information protections of the Digital Millennium Copyright Act.

I will now instruct you on the law regarding copyright management information, and the damages you may award if you find that the plaintiffs have met their burden to prove that the defendants violated the protections afforded by the Digital Millennium Copyright Act.

Authority: 17 U.S.C. §§ 1202-1203.

1   **Plaintiffs' Argument re Disputed Instruction No. 46: Preliminary Instruction—Copyright**

2   **Management Information**

3       Plaintiffs offer this preliminary instruction to provide the jury with an overview of

4   Plaintiffs' claim under 17 U.S.C. § 1202 of the DMCA.  The instruction is not intended to explain

5   the elements of Section 1202, which is covered in Disputed Instruction 60.

6       Defendants' instruction, in contrast, merely re-states the statutory elements of Section

7   1202(b).  Because these elements are already addressed by Disputed Instruction 60, there is no

8   need to include them again in this instruction.  Further, the jury would benefit from a brief

9   preliminary instruction on Section 1202, which Defendants instruction does not provide.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

**Defendants' Argument re Disputed Instruction No. 46: Preliminary Instruction—Copyright Management Information**

3

4

5

There is no Model Instruction for Section 1202. Defendants' proposed instruction provides an overview of Ms. Schneider's claims while closely tracking the statutory language. *See* 17 U.S.C. § 1202.

6

7

8

9

10

11

12

13

14

15

Plaintiffs' proposed Jury Instruction No. 58 omits key elements in Section 1202. Most critically, it fails to mention that Section 1202 unambiguously imposes a "double scienter" requirement: a defendant is only liable if it (1) distributes copyrighted works "knowing" that CMI was removed or altered; and (2) possesses the mental state of knowing, or having a reasonable basis to know, that its actions "will induce, enable, facilitate, or conceal" infringement. 17 U.S.C. § 1202(b); *see also Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018); *Schneider v. YouTube, LLC*, 2023 WL 3605981, at *12 (N.D. Cal. May 22, 2023) (emphasizing the scienter requirement). Given that Defendants challenge Ms. Schneider's ability to demonstrate either one of the scienter requirements (*see* Dkt. 164 at 18-21), a preliminary instruction without any discussion of scienter is likely to confuse the jury and prejudice Defendants.

16

17

18

19

20

21

22

23

Further, Plaintiffs' proposed Jury Instruction No. 58 omits the statutory requirement that a defendant must have acted "without the authority of the copyright owner or the law." 17 U.S.C. § 1202(b); *see also Schneider v. YouTube, LLC*, 2023 WL 3605981, at *11 ("the predicate of a claim under either prong of Section 1202(b) is that CMI was removed or altered ***without a copyright owner's permission***") (emphasis added). Defendants contend that they cannot be liable under Section 1202 if the uploading user who allegedly removed CMI had been authorized by Schneider or her agents to remove that CMI. *See* Dkt. 164 at 21. It is therefore important to instruct the jury on this requirement of a Section 1202 claim.

24

25

Finally, Plaintiffs' version includes instructions related to a CMI removal claim, which Ms. Schneider is no longer pursuing.

26

27

28

In lieu of this Instruction 58, Defendants' proposed Instruction 60 contains a preface that will aid jury comprehension and that is faithful to the statutory requirements.  The Court should dismiss Instruction 58 and instead use Stipulated Instruction 59 and Defendant's Instruction 60,

which together provide the jury with sufficient guidance.

<u>INSTRUCTION NO. 47</u>

COPYRIGHT MANAGEMENT INFORMATION—DEFINED

As used in the Digital Millennium Copyright Act, the term "copyright management information" means any of the following information conveyed in connection with copies of a work or performances or displays of a work, including in digital form:

1.     The title and other information identifying the work, including the information set forth on a notice of copyright.

2.     The name of, and other identifying information about, the author of a work.

3.     The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

4.     With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.

5.     With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.

6.     Identifying numbers or symbols referring to such information or links to such information.

*Authority*: Adapted from 17 U.S.C. §1202.

<u>DISPUTED INSTRUCTION NO. 48</u>

COPYRIGHT MANAGEMENT INFORMATION—LIABILITY: OFFERED BY PLAINTIFFS

On the plaintiffs' copyright management information claims, the plaintiffs have the burden of proving by a preponderance of the evidence that:

1.  the defendants, without authorization, intentionally removed or altered copyright management information associated with their work; or

2.  the defendants distributed, imported for distribution, or publicly performed videos containing copies of their work knowing that copyright management information had been removed or altered without authority from the plaintiffs or the law.

The plaintiffs must also prove by a preponderance of the evidence that defendants knew the removal or alteration of copyright management information or distribution, import for distribution or public performance of works with their associated copyright management information removed or altered will induce, enable, facilitate, or conceal infringement.  The plaintiffs may make this showing by demonstrating a past pattern of conduct or modus operandi by defendants.

*Authority*:

- Adapted from 17 U.S.C. § 1202;

- *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) ("Applying that concept here, we hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions.")

<u>DISPUTED INSTRUCTION NO. 48</u>

COPYRIGHT MANAGEMENT INFORMATION—LIABILITY: OFFERED BY
DEFENDANTS

Ms. Schneider claims that YouTube and Google violated the Digital Millennium
Copyright Act, or DMCA, by distributing a copyrighted work knowing that the CMI has been
removed without authority from the copyright owner, while knowing that the distribution will
induce or conceal copyright infringement.

Defendants deny this claim and assert that any violation was innocent.

Only Ms. Schneider asserts this claim.

In order to prevail on this claim, a plaintiff must prove by a preponderance of the
evidence:

1.  that the defendants distributed or imported for distribution the plaintiff's works
    knowing at the time of distribution or importation that the CMI had been removed or
    altered without the plaintiff's permission; and

2.  at the time the defendants took any such actions, they knew or had reasonable
    grounds to know that doing so would induce, enable, facilitate or conceal copyright
    infringement.

In order to prove the first element, the plaintiff must prove that the defendants knew that
information had been removed from the copy of the copyrighted work that it distributed. It is not
enough for the plaintiff to assert that, because some information has been removed or altered,
and that information might include CMI, defendants knew that the information removed or
altered was CMI.

In order to prove the second element, the plaintiff must prove that future infringement is
likely to occur as a result of the removal or alteration of CMI.  It is not enough for the plaintiff to
assert that, because CMI has been removed, someone might be able to infringe undetected.

If you find that Ms. Schneider has proven both elements by a preponderance of the
evidence, you should find the defendants liable for this claim.  If you find that Ms. Schneider has

failed to prove either one of these elements, then you should enter verdict for the defendants on this claim.

Authority: 17 U.S.C. § 1202; *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 675 (9th Cir. 2018) (describing scienter requirement); *Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 U.S. Dist. LEXIS 168788, at *10-11 (N.D. Cal. Sep. 19, 2022) (requiring actual knowledge that removed information was CMI).

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

**Plaintiffs' Argument re Disputed Instruction No. 48: Copyright Management**

**Information—Liability**

There is no model instruction for liability under 17 U.S.C. § 1202.

Plaintiffs offer an instruction that tracks 17 U.S.C. § 1202(b) and that sub-section's elements. One element is that defendants knew the removal or alteration of copyright management information or distribution, import for distribution or public performance of works with their associated copyright management information removed or altered will induce, enable, facilitate, or conceal infringement. *See* 17 U.S.C. § 1202(b). Plaintiffs' instruction also explains that Plaintiffs may establish this element by demonstrating a past pattern of conduct or modus operandi by defendants under Ninth Circuit precedent. *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 674 (9th Cir. 2018) ("Applying that concept here, we hold that a plaintiff bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a past 'pattern of conduct' or 'modus operandi', that the defendant was aware or had reasonable grounds to be aware of the probable future impact of its actions.").

Defendants' version improperly adds an element not found in Section 1202: that "plaintiff must prove that the defendants knew what was removed or altered was CMI". This proposal appears to be an eleventh-hour attempt to re-write this Court's order denying Defendants' motion to dismiss Plaintiffs' CMI claims. ECF No. 157. That Order accurately and succinctly states the elements to state a 1202 claim, *see id.* at 3-4, which does not include Defendants' extra-textual element.

Defendants' other addition is redundant and thus unnecessary. Their version states, "the plaintiff must prove that future infringement is likely to occur as a result of the removal or alteration of CMI". However, the text of Section 1202 already covers that point, which provides that a plaintiff must establish the defendant knew or had reasonable grounds to know that its conduct would induce, enable, facilitate, or conceal an infringement. This element is included in Plaintiffs' proposal and there is no need to add Defendants' gloss to this clear statutory element.

**Defendants' Argument re Disputed Instruction No. 48: Copyright Management Information—Liability**

The parties' proposed Jury Instruction No. 48 differ in three crucial aspects. ***First***, YouTube's version makes it clear that Plaintiffs must prove that the specific copy of the copyrighted work at issue in each alleged violation must have previously contained the alleged CMI at issue because, by definition, CMI must have been "conveyed in connection with" the copyrighted work. 17 U.S.C. § 1202(c). Standalone information that identifies the copyrighted work or its author but is not conveyed in connection with the copyrighted work is not CMI. *See Sellpoolsuppliesonline, LLC v. Ugly Pools Ariz., Inc.*, 804 F. App'x 668, 670-71 (9th Cir. 2020) ("copyright notice did not meet the definition of CMI because it was not 'conveyed in connection with' Plaintiff's [works]"). In addition, the CMI must at one point in time have been present in or attached to the specific copy of the work at issue in order for it to have been "removed or altered" in violation of the statute. 17 U.S.C. § 1202(b)(3). It is not enough for the CMI merely to have been assigned or associated with a given work in the abstract–which is what the Plaintiff is claiming–or for the CMI to have been attached to certain versions or copies of the work that are not at issue in the violations alleged in this case.

***Second***, YouTube's proposed instruction clarifies that the first scienter requirement under Section 1202—that a defendant distributed copyrighted works "knowing" that CMI had been removed or altered (17 U.S.C. § 1202(b))—requires specific knowledge that CMI was in fact removed from a given work, not merely that the CMI was not added to or carried forward with the work. *See Harrington v. Pinterest, Inc.*, No. 5:20-cv-05290-EJD, 2022 WL 4348460, at *4 (N.D. Cal. Sept. 19, 2022) (Section 1202(b) requires that the defendant "knew that the metadata it removed contained CMI"; "wholesale metadata removal, without more, does not suffice to allege [defendant] intentionally removed CMI"); *Philpot v. WOS, Inc.*, No. 1:18-cv-339-RP, 2019 WL 1767208, at *8-9 (W.D. Tex. Apr. 22, 2019) (same). Plaintiffs' proposed instruction is silent on the first scienter requirement, and risks confusing the jury into thinking that knowledge that CMI is absent—without showing that the CMI had once been present, but was later removed—could suffice.

**Third**, YouTube's proposed instruction is based on controlling Ninth Circuit law on the second scienter requirement under Section 1202—that a defendant must possess actual or constructive knowledge that the distribution of copyrighted works with CMI removed or altered would "induce, enable, facilitate or conceal [copyright] infringement." 17 U.S.C. § 1202(b). The Ninth Circuit is clear that it is not enough for a plaintiff to simply allege that, because CMI has been removed or altered, "someone might be able to [infringe] undetected": a plaintiff must come up with "specific proof" (*Schneider v. YouTube, LLC*, 2023 WL 3605981, at *12) that "future infringement is likely, albeit not certain, to occur as a result of the removal or alteration of CMI." *Stevens v. CoreLogic, Inc.*, 899 F.3d 666, 673-75 (9th Cir. 2018). Yet Plaintiffs' proposed instruction not only omits the teachings of the Ninth Circuit, but also instructs that Plaintiffs may meet their burden "by demonstrating a past pattern of conduct or modus operandi [by] defendant[s]." *Id.* at 674. The Court has already explained that this position is a "misreading" of *Stevens*. Dkt. No. 325 (Apr. 13, 2023 Hr'g Tr.) at 36:1-37:24 ("each plaintiff is going to have to show that he or she relied on the CMI data to help police protection of their rights and to combat infringement. . . . That is all on you. That is not on the defendant."); 39:8-20 ("you need to show . . . that each and every plaintiff relied on the CMI data that was removed to police infringement and that the resulting removal impaired their ability to do it"); *Schneider v. YouTube, LLC*, 2023 WL 3605981, at *12 ("To establish scienter, each plaintiff was required to make an '[a]ffirmative [s]howing' with 'specific evidence that removal of CMI metadata' from their copyrighted works 'will impair **their** policing of infringement) (citing *Stevens*, 899 F.3d at 675) (emphasis added); *see also Harrington*, 2021 WL 4033031, at *6 (a plaintiff must show their own "pattern of conduct" or "modus operandi" (rather than a defendant's conduct) involved policing infringement to satisfy the second scienter requirement under Section 1202).

<u>DISPUTED INSTRUCTION NO. 49</u>

CONTRACTUAL LIMITATIONS PERIOD

Plaintiffs object to this Instruction in its entirety.

DISPUTED INSTRUCTION NO. 49

CONTRACTUAL LIMITATIONS PERIOD, OFFERED BY DEFENDANTS

Defendants claim that some of Ms. Schneider's CMI claims are barred by the contractual limitations period, which is a time limit for bringing a claim.

To establish that the contractual limitations period bars Ms. Schneider's CMI claim, the defendants must prove by a preponderance of the evidence that Ms. Schneider failed to file her lawsuit within one year after she knew, or, in the exercise of reasonable diligence, should have known about her CMI claim.

Ms. Schneider's lawsuit was filed on July 2, 2020.


Authority: There is no model Ninth Circuit instruction.  This is adapted from the model Eleventh Circuit instruction (9.29).

1    **Plaintiffs' Argument re Disputed Instruction No. 49: Contractual Limitations Period**

2         Plaintiffs object to separate instructions regarding the effect of the contractual limitations

3    period on Plaintiffs' copyright claims and CMI claims.  The limitations period stems from a  single

4    contract—the YouTube Terms of Service—and is applicable to both sets of claims.  There is no

5    need to repeat the same instruction twice. Repetitive instructions are likely to confuse the jury and

6    overemphasize the importance of the limitations period, which is prejudicial.

7         Further, Defendants' proposed instruction is prejudicial to the extent that it speaks of a

8    singular "CMI claim."  Under 17 U.S.C. 1202(b), a separate claim accrues each time that YouTube

9    strips CMI from a copyrighted work uploaded to the platform or distributes a copyrighted work

10   knowing that CMI has been removed.  Defendants' instruction suggests that Ms. Schneider's

11   general awareness that YouTube mishandles CMI is enough to start the limitations period.  The

12   Court rejected that argument in its Summary Judgment Order. [ECF 222 at 22].  To resolve any

13   confusion regarding the applicability of the limitations period, Plaintiffs suggest providing a single

14   instruction regarding the contractual limitations period either before all instructions relevant to the

15   copyright claims and CMI claims or after all instructions relevant to the copyright claims or CMI

16   claims.

17

18

19

20

21

22

23

24

25

26

27

28                                                                                    3:20-cv-04423-JD

**Defendants' Argument re Disputed Instruction No. 49: Contractual limitations period**

There is no Ninth Circuit Model Jury Instruction for a contractual limitations period affirmative defense. Defendants propose adapting the Eleventh Circuit Pattern Jury Instruction (Civil) No. 9.29, Copyright – Defenses – Affirmative Defense – Statute of Limitations to the context of a contractual limitations period.

Plaintiffs object to this Instruction as duplicative.  They reason that because Instruction 38 is also about the contractual limitations period, the jury does not need to receive a similar instruction here.  But Instruction 38 is about *all* Plaintiffs' copyright infringement claims only; indeed, both versions offered specifically refer to "copyright claims."  If the Court does not include a parallel instruction here, it may be unclear to the jury whether the contractual limitations period is a valid defense to Ms. Schneider's section 1202 claim.  This clarity is important where, as here, *most* of the alleged section 1202 violations involve videos uploaded to YouTube outside the limitations period.  The jury should receive this brief instruction to make clear that the limitations period applies equally to this claim.

DISPUTED INSTRUCTION NO. 50

COPYRIGHT MANAGEMENT INFORMATION—DAMAGES—STATUTORY DAMAGES:

OFFERED BY PLAINTIFFS

If you find for the plaintiffs on their copyright management information claims, you must determine the plaintiffs' damages. On their copyright management information claims only, the plaintiffs have elected to pursue only a statutory damages award, established by Congress for each violation of the copyright management information protections. Its purpose is not only to compensate the plaintiffs for their losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws.

If you find that the defendants have violated the copyright management information protections, you must then determine how many violations have occurred. In the context of this case, a violation occurs each time a video is uploaded to the YouTube platform with the copyright management information removed or altered, whether by the defendants or others.

The amount you may award as statutory damages is not less than $2,500, nor more than $25,000 for each violation of the copyright management information protections.

However, if you find that the violation was innocent you may award less than $2,500 for each violation. A violation is innocent if the defendant was not aware and had no reason to believe that its acts constituted a violation.

*Authority*: Adapted from 17 U.S.C. §1203 and Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 17.35; *GC2 Inc. v. Int'l Game Tech., IGT, Doubledown Interactive LLC*, 391 F. Supp. 3d 828, 850 (N.D. Ill. 2019) ("The statute does not only prohibit, as the defendants would have it, the first such distribution; it forbids all of them"); *Id*. ("the defendant was held responsible for each 'web upload' of infringing material").

DISPUTED INSTRUCTION NO. 50

COPYRIGHT MANAGEMENT INFORMATION—DAMAGES—STATUTORY DAMAGES:

OFFERED BY DEFENDANTS [3]

If you find for plaintiffs on their copyright management information claims, you must determine plaintiffs' damages. On their copyright management information claims only, plaintiffs have elected to pursue only a statutory damages award.

If you find that defendants have violated the copyright management information protections, you must then determine how many violations have occurred.

The amount you may award as statutory damages is not less than $2,500, nor more than $25,000 for each violation of the copyright management information protections.  However, if you find that the violation was innocent you may award less than $2,500 for each violation. A violation is innocent if the defendant was not aware and had no reason to believe that its acts constituted a violation.

Within the appropriate range, you should award an amount that you believe is just in light of the evidence presented.

Authority: 17 U.S.C. § 1203.

---

[3] Defendants believe that the Court, not the jury, should fix any statutory damages.  Defendants propose this Instruction in the event that the Court submits damages to the jury.

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

**Plaintiffs' Argument re Disputed Instruction No. 50: Copyright Management**

**Information—Damages—Statutory Damages**

The parties largely agree on this instruction, but with two differences.

First, Defendants have removed any reference to the purpose of statutory damages for violations of Section 1202.  Plaintiffs' version includes the following statement in the first paragraph: "Its purpose is not only to compensate the plaintiffs for their losses, which may be hard to prove, but also to penalize the infringer and deter future violations of the copyright laws."  This same sentence appears in the model instructions for statutory damages for copyright infringement. *See* Ninth Circuit Manual of Model Civil Jury  Instructions, Instr. 17.35.  The purpose of statutory damages under Section 1202 is also to penalize and deter, *see Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1075–76 (N.D. Cal. 2005) (finding it consistent with Congressional intent that statutory damages under 17 U.S.C. § 1203(c) be used to "discourage wrongful conduct"), and the jury would benefit from having this Congressional purpose in mind when assessing the proper amount of damages.

Second, Defendants' version of the second paragraph omits the following italicized phrase: "In the context of this case, a violation occurs each time a video is uploaded to the YouTube platform with the copyright management information removed or altered, *whether by the defendants or others*."  Section 1202(b)(3) makes it a violation to "distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law".  Under this subsection, there is no requirement that Defendants themselves removed or altered the CMI at issue, only that Defendants "distribute" these works with knowledge that CMI has been "removed or altered", as the Court's ruling on Defendants' motion to dismiss made clear (ECF No. 157 at 3-4) and consistent with 17 U.S.C. §1202(b).  The italicized phrase should not be omitted since that could suggest to the jury that, contrary to the statute, Defendants themselves must have removed or altered the CMI at issue.

1       Although Defendants have proposed a competing jury instruction, they claim that the

2  Court, and not the jury, should set the proper amount of statutory damages under § 1203(c)(3)(B).

3  That is incorrect.  See *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 353 (1998)

4  (holding that copyright owners have a "right to have a jury determine the amount of statutory

5  damages" and explaining that it "has long been recognized that by the law the jury are judges of

6  the damages") (cleaned up); *Huffman v. Activision Publ'g, Inc.*, 219CV00050RWSRSP, 2021 WL

7  2339193, at *7 (E.D. Tex. June 8, 2021) (concluding that § 1203(c)(3)(B) provides a right to a jury

8  trial).

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Defendants' Argument re Disputed Instruction No. 50: Copyright Management Information—Damages—Statutory Damages**

No damages instruction should be submitted to the jury. In the event of a liability finding adverse to Defendants, the Court, not the jury, should fix statutory damages. However, Defendants propose a jury instruction to counter Plaintiffs' version, should the Court choose to submit the issue to the jury.

The Court, not the jury, should set any statutory damages. The statute provides that statutory damages should be set, within the prescribed range, "as the court considers just." 17 U.S.C. 1203(c)(3)(A). "The word 'court' in this context appears to mean judge, not jury," *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 346 (1998), and the term "just" evinces that a court may consider equitable principles when fixing damages. Judges, not juries, consider equitable principles. Further, courts in this District award statutory damages under this statute without input from a jury. *Sony Computer Entm't Am., Inc. v. Divineo, Inc*., 457 F. Supp. 2d 957, 966 (N.D. Cal. 2006) (granting summary judgment to plaintiff and setting section 1203 penalties without jury); *Sony Computer Entm't Am., Inc. v. Filipiak*, 406 F. Supp. 2d 1068, 1069 (N.D. Cal. 2005) (fixing statutory damages after bench trial). Other courts are in accord. *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 376 (S.D.N.Y. 2019), *aff'd*, 970 F.3d 167 (2d Cir. 2020) (bench trial).

*Feltner* cannot be read to confer a constitutional right to have a jury decide damages here. *Feltner* observes that, at the time of the Founding, juries set copyright infringement damages, including statutory damages. Accordingly, the Seventh Amendment thus confers a right to have a jury fix statutory damages for copyright infringement claims as a part of protecting the common law right to a jury as that right existed in 1789. *Feltner*, 523 U.S. at 349-55. But Section 1203 is not analogous because it does not pertain to any common law right existing at the time of the Founding. The Founding generation never litigated over "copyright management information," and the statute codifying that right, the ***Digital*** Millennium Copyright Act, was not enacted until the late twentieth century. Where Congress creates statutory rights and remedies that did not exist at the time of the Founding, it may constitutionally provide that judges, rather than juries, set

1    statutory penalties.  *E.g.*, *Tull v. United States*, 481 U.S. 412 (1987) (judges can set penalties

2    under the Clean Water Act).

3         If the Court chooses to instruct the jury on damages, Defendants offer the better

4    instruction.  The key problem is Plaintiffs' effort to smuggle in this phrase: "In the context of this

5    case, a violation occurs each time a video is uploaded to the YouTube platform with the copyright

6    management information removed or altered, whether by the defendants or others."  That

7    language is a not-so-subtle way of restating the elements of the claim, which are set forth in the

8    prior instruction.  Those elements include the statute's ***two*** scienter requirements, which Plaintiffs

9    eliminate from their proposed damages instruction.  Plaintiffs' effort to restate the elements of the

10   claim, in a minimal fashion that is inconsistent with *Stevens v. CoreLogic, Inc.*, 899 F.3d 666,

11   673-75 (9th Cir. 2018), is likely to lead to jury confusion and must be avoided.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSTRUCTION NO. 51

PRELIMINARY INSTRUCTION REGARDING YOUTUBE AND GOOGLE'S

COUNTERCLAIM

I will now instruct you about YouTube and Google's counterclaim against Pirate Monitor Ltd. and Mr. Gábor Csupó. For this claim, YouTube and Google are the plaintiffs. Pirate Monitor Ltd. and Mr. Csupó are the defendants. YouTube and Google do not assert any claim against Pirate Monitor LLC because it is a nonexistent entity.  For Pirate Monitor Ltd. and Mr. Csupó, you must assess each defendant's liability to YouTube and Google individually. You may find that both, either or none of these defendants is liable, and any one defendant's liability does not bear on the other defendant's liability. Also, your findings about the claims that Ms. Schneider, AST, and Uniglobe assert against YouTube and Google do not bear on your findings about YouTube and Google's claims against Pirate Monitor Ltd. and Mr. Csupó.  Likewise, your findings about the claims that YouTube and Google assert against Pirate Monitor Ltd. and Mr. Csupó do not bear on your findings about the claims that Ms. Schneider, AST, and Uniglobe assert against YouTube and Google.

*Authority*: This is a special instruction.

1

<u>DISPUTED INSTRUCTION NO. 52</u>

2

VIOLATION OF 17 U.S.C § 512(F): OFFERED BY COUNTERCLAIM DEFENDANTS

3

4   YouTube and Google claim that Pirate Monitor Ltd. and Mr. Csupó are liable for

5   violating 17 U.S.C. § 512(f) of the DMCA for submitting false takedown requests that caused a

6   video to be removed from YouTube.  You must  find whether each defendant is liable for this

7   claim.  You must consider each defendant  separately, and your decision about any one

8   defendant does not necessarily affect any other  defendant's liability. For this claim, YouTube

9   and Google have the burden of proving the following by a preponderance of the evidence:

10       1.  Pirate Monitor Ltd. and/or Mr. Csupó submitted takedown requests that caused

11           videos to be removed from YouTube;

12       2.  Pirate Monitor Ltd. and/or Mr. Csupó represented that a video on YouTube was

13           infringing;

14       3.  That representation was materially false;

15       4.  Pirate Monitor Ltd. and/or Mr. Csupó knew that the

16           representation was false at the time the  representation was made;

17       5.  YouTube and Google relied on Pirate Monitor Ltd. and/or Mr. Csupó's

18           misrepresentation in removing videos from YouTube;

19

20       6.  YouTube and Google were damaged as a result; and

21       7.  That the misrepresentation was the proximate cause of injury to YouTube and

22           Google.

23

24   A representation is material if it affected YouTube and Google's response to the takedown

25   notice.

26   To find that Pirate Monitor Ltd. and/or Mr. Csupó acted "knowingly," you must find that

27   Pirate Monitor Ltd. and/or Mr. Csupó actually knew that takedown notices were being submitted,

28

that they knew the contents of the takedown notices were false, and that they acted with an intent to deceive, manipulate or defraud YouTube and Google.  Pirate Monitor Ltd. and Mr. Csupó cannot be liable if they did not know about the takedown notices or if they simply made an unknowing mistake.  Rather, YouTube and Google must demonstrate that Pirate Monitor Ltd. and/or Mr. Csupó had some actual knowledge of misrepresentation in order for Pirate Monitor Ltd. and/or Mr. Csupó to be liable.

If Pirate Monitor Ltd. and Mr. Csupó did not know the takedown notices were being submitted, then you must find against YouTube and Google.  If Pirate Monitor Ltd. and Mr. Csupó did not know that the takedown notices were inaccurate, then you must find against YouTube and Google, even if you believe that Pirate Monitor Ltd. and Mr. Csupó acted unreasonably in making a mistake.

Because YouTube and Google brought this claim against Pirate Monitor Ltd. and Mr. Csupó, YouTube and Google have the burden of proof.  Thus, YouTube and Google, not Pirate Monitor Ltd. and Mr. Csupó, must prove all elements by a preponderance of the evidence.  If the proof fails to establish any of the elements by a preponderance of the evidence, you must find against YouTube and Google and for Pirate Monitor Ltd. and Mr. Csupó.


*Authorities:* There is no Ninth Circuit Model Jury Instruction for this issue.  This  instruction is informed by the text of 17 U.S.C. § 512(f) and case law—*Lenz v. Universal Music  Corp.*, 815 F.3d 1145 (9th Cir. 2016); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal.  2015); *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195 (N.D. Cal. 2004).

<u>DISPUTED INSTRUCTION NO. 52</u>

VIOLATION OF 17 U.S.C § 512(F): OFFERED BY COUNTERCLAIMANTS

YouTube and Google claim that Pirate Monitor Ltd. and Mr. Csupó are liable for violating 17 U.S.C. § 512(f) of the DMCA for submitting false takedown requests.  You must  find whether each defendant is liable for this claim.  You must consider each defendant  separately, and your decision about any one defendant does not necessarily affect any other  defendant's liability. For this claim, YouTube and Google have the burden of proving the following by a preponderance of the evidence:

1.      Pirate Monitor Ltd. and/or Mr. Csupó represented that a video on YouTube was infringing;

2.      That representation was materially false;

3.      Pirate Monitor Ltd. and/or Mr. Csupó knew that the representation was false at the time the  representation was made, or was willfully blind to the falsity of the representation;

4.      YouTube and Google relied on Pirate Monitor Ltd. and/or Mr. Csupó's misrepresentation in removing videos from YouTube; and

5.      YouTube and Google were damaged as a result.

A representation is material if it affected YouTube and Google's response to the takedown notice. YouTube can prove that the defendant knew it made a misrepresentation by proving that the defendant actually knew that the representation was false, or that the defendant subjectively believed that there is a high probability that the representation was false and took deliberate actions to avoid learning of that fact.

Authority: There is no Ninth Circuit Model Jury Instruction for this issue. This instruction is informed by the text of 17 U.S.C. § 512(f) and case law—*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

**Counterclaim Defendants' Argument re Disputed Instruction No. 52:**

**Violation of 17 U.S.C. § 512(f)**

The parties largely agree on the elements to establish a violation of 17 U.S.C. § 512(f). The principal dispute is over the scienter requirement.  Section 512(f) only imposes liability against someone that "knowingly" makes a "material[]" "misrepresent[ation]".  This is a high bar, as explained by the Ninth Circuit in *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1004–05 (9th Cir. 2004):

> In § 512(f), Congress included an expressly limited cause of action for improper infringement notifications, imposing liability only if the copyright owner's notification is a knowing misrepresentation. A copyright owner cannot be liable simply because an unknowing mistake is made, even if the copyright owner acted unreasonably in making the mistake. *See* § 512(f). Rather, there must be a demonstration of some actual knowledge of misrepresentation on the part of the copyright owner. *Id.*

Accordingly, "under Ninth Circuit case law a plaintiff in a § 512(f) action must demonstrate that the copyright owner acted with ***subjective bad faith***."  *Lenz v. Universal Music Corp.*, C 07-3783 JF, 2010 WL 702466, at *10 (N.D. Cal. Feb. 25, 2010) (emphasis added) (citing *Rossi,* 391 F.3d at 1004–05).  As explained by Judge Milan Smith, "Section 512(f) creates a statutory misrepresentation action, and it is likely Congress intended the action to mirror analogous common law torts like fraud, deceit, and misrepresentation." *See Lenz v. Universal Music Corp.*, 801 F.3d 1126, 1142 (9th Cir. 2015), *opinion amended and superseded on denial of reh'g,* 815 F.3d 1145 (9th Cir. 2016) (Smith, J., concurring in part).  Since a Section 512(f) claim is akin to a common-law fraud claim, an "intent to deceive" standard applies.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) ("Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance,

and damages.") (citations omitted); *Warkentin v. Federated Life Ins. Co.*, 594 Fed. Appx. 900, 902 (9th Cir. 2014) (statutory definition of fraud requires "intent to deceive" under California law).

Plaintiffs' and Counterclaim Defendants' proposed instruction reflects the Ninth Circuit's scienter standard from *Rossi*. Accordingly, Plaintiffs and Counterclaim Defendants submit that this Court should adopt their proposed instruction.

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Counterclaimants' Argument re Disputed Instruction No. 52: Violation of 17 U.S.C § 512(f)**

There is no Model Instruction for Section 512(f). YouTube's instruction hews closely to the statutory text as it has been interpreted by courts in the Ninth Circuit. *See* 17 U.S.C. § 512(f) ("Any person who knowingly materially misrepresents under this section . . . that material or activity is infringing . . . shall be liable for any damages . . . incurred . . . as the result of the service provider relying upon such misrepresentation"); *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1026 (N.D. Cal. 2015) ("Plaintiffs must allege that Defendant 'knowingly and materially misrepresent[ed]' that copyright infringement has occurred, that Automattic 'relied' on such misrepresentations, and that Plaintiffs have been 'injured' as a result."). In particular, YouTube's instruction clarifies that a showing of willful blindness is sufficient to establish knowledge of the misrepresentation and provides important guidance about how willful blindness should be determined. *See Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016) (willful blindness can establish knowledge under section 512(f)).

Counterclaim Defendants' version, by contrast, adds additional instructions that extend beyond the statutory text and are more likely to confuse the jury than aid it. ***First***, Counterclaim Defendant's version seeks to add as an element of a claim a requirement that it was the Counterclaim Defendants who "submitted" the fraudulent takedown notices. That additional element is nowhere in the statutory text and is likely to confuse a jury into believing that Csupó must himself have sent the notices at issue. As discussed in YouTube's summary judgment opposition (Dkt. 296), that is not the case. ***Second***, Counterclaim Defendants also seek to include paragraphs of instructions that obfuscate the applicable legal standard. For example, Counterclaim Defendants' instructions would require a finding that Counterclaim Defendants "actually knew" the notices at issue were being submitted with false representations and acted with specific "intent" to deceive; it makes no mention of willful blindness. These lengthy instructions are unnecessary to educate the jury on the straightforward elements of a § 512(f) claim. Rather than aiding the jury, they are likely to create uncertainty about the applicable standards.

DISPUTED INSTRUCTION NO. 53

SUBMISSION OF TAKEDOWN NOTICES – PERSONAL LIABILITY: OFFERED BY

COUNTERCLAIM DEFENDANTS

YouTube and Google claim that they were harmed by the submission of takedown notices.  If you find that Mr. Csupó personally submitted the 1,975 takedown notices at issue and the submission of those takedown notices harmed YouTube and Google, then Mr. Csupó can be held personally liable.


*Authority:* This is a special instruction.

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS

<u>DISPUTED INSTRUCTION NO. 53</u>

SUBMISSION OF TAKEDOWN NOTICES – PERSONAL LIABILITY: OFFERED BY

COUNTERCLAIMANTS[4]

YouTube and Google claim that they were harmed by the submission of takedown notices.  If you find that Mr. Csupó directed, authorized, participated in, or ratified the submission of the 1,975 takedown notices at issue and the submission of those takedown notices harmed YouTube and Google, then Mr. Csupó can be held personally liable.

Authority: This is a special instruction.

---

[4] Despite the Court's order that Intellectual Property LLC produce documents by no later than April 27, 2023, Defendants did not receive the complete production of documents from Intellectual Property LLC until May 10, 2023.  As a result, Defendants and Counterclaim Plaintiffs reserve the right to supplement or amend portions of this statement and other pretrial filings related to the counterclaims.

**Counterclaim Defendants' Argument re Disputed Instruction No. 53:**

**Submission of Takedown Notices – Personal Liability**

Plaintiffs' and Counterclaim Defendants' proposed Instructions 64 and 65 work in tandem to explain the two possible ways Mr. Csupó could be held liable for the submission of the 1,975 inaccurate takedown notices at issue.  He could either be held personally liable (Instruction 64) for his own actions or vicariously liable (Instruction 65) for the actions of others.   Defendant-Counterclaimants' edits to Instruction 64 are improper as they attempt to blend together these two distinct forms of liability.  Specifically, Defendant-Counterclaimants propose adding to Instruction 64 that Mr. Csupó can be personally liable if he "directed", "authorized", or "ratified" the wrongful conduct of others.   But those concepts by definition rely on the actions of others, and thus they are only relevant to vicarious liability, which is addressed in Instruction 65.   Accordingly, the "personal liability" instruction should be limited to whether Mr. Csupó *personally* submitted the 1,975 takedown notices at issue, as in Plaintiffs' and Counterclaim Defendants' proposed Instruction 64.

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Counterclaimants' Argument re Disputed Instruction No. 53: Submission of Takedown Notices – Personal Liability**

Counterclaim Defendants'[1] proposed instruction would limit Csupó's direct liability to circumstances where he "personally submitted" the fraudulent notices. As YouTube explained in its opposition to Counterclaim Defendants' summary judgment motion (Dkt. 296 at 13), Csupó can be held personally liable for his own wrongful actions if he directed, authorized, participated in, or ratified the submission, regardless of whether he was the person who physically sent the notices to YouTube. *See PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379-80 (Cal. Ct. App. 2000), *as modified on denial of reh'g* (Apr. 7, 2000) ("Directors are jointly liable with the corporation and may be joined as defendants if they personally directed or participated in the tortious conduct."). YouTube's proposed jury instruction properly explains the scope of Csupó's direct liability.

To the extent Counterclaim Defendants contend that Csupó cannot be held directly liable because "the conduct at issue did not cause any physical injury" (Dkt. 299 at 10), that argument is as baseless now as it was when they raised it in their summary judgment reply. *See In re JUUL Labs, Inc., Mktg., Sales Practices., & Prod. Liab. Litig.*, 533 F. Supp. 3d 858, 877-78 (N.D. Cal. 2021) (rejecting argument that "plaintiffs improperly seek economic damages from corporate directors"); *EduMoz, LLC v. Republic of Mozambique*, No. CV 13-02309 MMM (CWx), 2015 WL 13697385, at *10 n.83 (C.D. Cal. Apr. 20, 2015) ("The *Haidinger-Hayes* Court did not hold that a plaintiff had to suffer personal injury or property damage, however, to sue the officer in tort."); *see also PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1381 (2000) ("All persons who are shown to have participated in an intentional tort are liable for the full amount of the damages suffered.").

---

[1] Despite the Court's order that Intellectual Property LLC produce documents by no later than April 27, 2023, Defendants did not receive the complete production of documents from Intellectual Property LLC until May 10, 2023, and did not provide unredacted privilege logs until May 30, 2023. As a result, Defendants and Counterclaimants reserve the right to supplement or amend portions of this statement and other pretrial filings related to the counterclaims.

DISPUTED INSTRUCTION NO. 54

SUBMISSION OF TAKEDOWN NOTICES – VICARIOUS LIABILITY: OFFERED BY

COUNTERCLAIM DEFENDANTS

In the alternative, YouTube and Google claim that the person who submitted the 1,975 takedown notices at issue was Mr. Csupó's agent and Mr. Csupó was the principal.  For ease of reference, the person who submitted the takedown notices at issue will be referred to as "Takedown Submitter X".  YouTube and Google claim that Takedown Submitter X was acting as Mr. Csupó's agent.  Mr. Csupó denies that Takedown Submitter X was acting as Mr. Csupó's agent.

If you find that Takedown Submitter X was the agent of Mr. Cuspo and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of Mr. Csupó.

If you find that Takedown Submitter X was <u>not</u> acting within the scope of authority as Mr. Csupó's agent, then you must find for Mr. Csupó.

Mr. Csupó claims that Takedown Submitter X was an agent of Intellectual Property LLC ("IPLLC") (and not Mr. Csupó's agent) and that Mr. Csupó is therefore not responsible for the conduct of Takedown Submitter X.  If you find that Takedown Submitter X was the agent of IPLLC and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of IPLLC (and not Mr. Csupó).

*Authorities:* This is a modified instruction based on Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.12, and Judicial Council of California Civil Jury Instructions, Instr. 3705, "Existence of 'Agency' Relationship Disputed".

1

<u>DISPUTED INSTRUCTION NO. 54</u>

2

SUBMISSION OF TAKEDOWN NOTICES – VICARIOUS LIABILITY: OFFERED BY

3

COUNTERCLAIMANTS

4

      In the alternative, YouTube and Google claim that the person who submitted the 1,975

5

takedown notices at issue was Mr. Csupó's agent and Mr. Csupó was the principal.  For ease of

6

reference, the person who submitted the takedown notices at issue will be referred to as

7

"Takedown Submitter X".  YouTube and Google claim that Takedown Submitter X was acting

8

as Mr. Csupó's agent.  Mr. Csupó denies that Takedown Submitter X was acting as Mr. Csupó's

9

agent.

10

      If you find that Takedown Submitter X was the agent of Mr. Cuspo and was acting within

11

the scope of authority, then any act or omission of Takedown Submitter X was the act or

12

omission of Mr. Csupó.

13

      If you find that Takedown Submitter X was <u>not</u> acting within the scope of authority as

14

Mr. Csupó's agent, then you must find for Mr. Csupó, <u>unless</u> you find that Mr. Csupó ratified the

15

submission of the takedown notices, as explained by Instruction No. 47.5.

16

      Mr. Csupó claims that Takedown Submitter X was an agent of Intellectual Property LLC

17

("IPLLC") (and not Mr. Csupó's agent) and that Mr. Csupó is therefore not responsible for the

18

conduct of Takedown Submitter X.  If you find that Takedown Submitter X was the agent of

19

IPLLC and was acting within the scope of authority, then any act or omission of Takedown

20

Submitter X was the act or omission of IPLLC (and not Mr. Csupó).

21

However, YouTube and Google claims that IPLLC was Mr. Csupó's mere instrument or tool –

22

what the law calls an alter ego. Should you find that YouTube and Google have proved this

23

claim by a preponderance of the evidence, the law requires you to disregard the separate status of

24

IPLLC and hold Mr. Csupó legally responsible for the corporation's acts.

25

      To decide whether to treat IPLLC as the alter ego of Mr. Csupó, you should consider:

26

    a)       whether there is a sufficient unity of interest and ownership that the separate

27

                 personalities of Mr. Csupó and IPLLC no longer exists; and

28

b)      whether treating the acts as those of IPLLC alone will sanction a fraud, promote injustice, or cause an inequitable result.

Authority: This is a modified instruction based on Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.12, and Judicial Council of California Civil Jury Instructions, Instr. 3705, "Existence of 'Agency' Relationship Disputed". The last paragraph is based on Eleventh Circuit Pattern Jury Instructions, Instr. 4.26, as revised by California law, because there is no model instruction in the Ninth Circuit Manual. *See Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1072 (Cal. Ct. App. 2011).

**Counterclaim Defendants' Argument re Disputed Instruction No. 54:**

**Submission of Takedown Notices – Vicarious Liability**

Plaintiffs' and Counterclaim Defendants' proposed instruction provides guidance on Mr. Csupó's liability depending on whether the person that submitted the 1,975 takedown notices (referred in the instruction as "Takedown Submitter X") was the agent of Mr. Csupó or IPLLC.  If Takedown Submitter X was the agent of Mr. Csupó and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of Mr. Csupó. Alternatively, if Takedown Submitter X was the agent of IPLLC and was acting within the scope of authority, then any act or omission of Takedown Submitter X was the act or omission of IPLLC (and not IPLLC's owner, Mr. Csupó).  *See Meyer v. Holley*, 537 U.S. 280, 285–86 (2003) (under agency principles, vicarious liability is normally imposed upon the corporation, but not upon its officers or owners); *Sandler v. Sanchez*, 206 Cal. App. 4th 1431, 1442–43 (2012) (under traditional agency principles, only corporation and not corporation's designated officer/broker could be held liable for torts committed by corporation's employee committed within the scope of his employment).

Plaintiffs' and Counterclaim Defendants' proposed instruction mirrors the example set forth in the Ninth Circuit Manual of Model Civil Jury Instructions regarding principal-agent liability: "[i]f you find that [name of alleged agent][was the agent of [name of alleged principal] and] was acting within the scope of authority, then any act or omission of [name of alleged agent] was the act or omission of [name of alleged principal]."

Defendant-Counterclaimants' edits are improper for two reasons.  First, Defendant-Counterclaimants propose a deviation from the model, as indicated in the italicized language: "If you find that Takedown Submitter X was <u>not</u> acting within the scope of authority as Mr. Csupó's agent, then you must find for Mr. Csupó, *<u>unless</u> you find that Mr. Csupó ratified the submission of the takedown notices, as explained by Instruction No. [4.7]*."  It would be confusing to the jury to incorporate one instruction into another.  The Court should instead adopt Plaintiffs' and Counterclaim Defendants' proposal that follows the model language.

1        Second, Defendant-Counterclaimants' proposed instruction states that Mr. Csupó can be

2   held liable for the actions of IPLLC under an alter ego theory.  But there are at least two major

3   problems with this argument: for one thing, despite filing and re-filing their counterclaims on three

4   occasions (*see* ECF Nos. 34, 60, 160), Defendant-Counterclaimants never mentioned IPLLC, let

5   alone alleged an alter-ego relationship between Mr. Csupó and IPLLC.  Such an unalleged claim

6   should be dismissed as a matter of law and certainly should not be presented to the jury.  *Lorbeer*

7   *Enterprises, LP v. Liberty Mut. Ins. Co.*, 2019 WL 4284514, at *2 (C.D. Cal. May 9, 2019)

8   ("[D]espite *arguing* in its brief that facts exist to support a theory of alter ego liability, Plaintiff

9   does not *plead* the elements of that theory, much less sufficient supporting facts. Such outside-the-

10   pleadings arguments are not enough to survive a motion to dismiss.") (emphasis in original);

11   *Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.*, 2014 WL 12577084, at *3 (C.D. Cal. Dec. 4, 2014)

12   (dismissing complaint and holding that "conclusory statements of theoretical corporate

13   relationships between [defendants], without further factual allegations, do not suffice").

14   Furthermore, alter ego is an equitable remedy, to be decided by the judge and not the jury, under

15   California law.  *Dow Jones Co. v. Avenel*, 151 Cal. App. 3d 144, 147, 198 Cal. Rptr. 457, 460 (Ct.

16   App. 1984) (alter ego is equitable doctrine and "particularly within the province of the trial court,"

17   with no right to jury).  As a result, the issue of piercing the corporate veil should not go to the jury

18   at all.  <u>Cummings v. Worktap, Inc.</u>, C 17-6246 SBA, 2019 WL 4221652, at *5 (N.D. Cal. Sept. 4,

19   2019) ("There is no right to a jury trial for alter ego claims because they are equitable in nature.").

20

21

22

23

24

25

26

27

28

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Counterclaimants' Argument re Disputed Instruction No. 54: Submission of Takedown Notices – Vicarious Liability**

The parties' proposed instructions differ in two material respects. ***First***, YouTube's instruction clarifies that, even if the jury finds that individuals other than Csupó physically submitted the fraudulent takedown notices and that those persons acted beyond the scope of their authority in doing so, Csupó can still be held liable for the wrongful acts of his agents if he ratified those actions. *See Karsant Family Ltd. P'ship v. Allstate Ins. Co.*, No. C 08-1490 SI, 2009 WL 188036, at *9 (N.D. Cal. Jan. 27, 2009) (an agent "is personally liable for the torts of [his] agent if [he] directed or authorized the agent to perform the tortious act, ***or if [he] ratified that act.***") (emphasis added) (citing *Shultz Steel Co. v. Hartford Accident & Indem. Co.*, 187 Cal. App. 3d 513, 519 (Cal. Ct. App. 1986)). Counterclaim Defendants' proposed instruction elides that legal issue and is likely to mislead the jury into believing that Csupó cannot be held liable for the actions of his agents if he did not specifically direct or authorize those actions from the start.

***Second***, as YouTube explained in its opposition to Counterclaim Defendants' summary judgment motion, a jury could find that IPLLC is liable for the fraudulent takedown notices and that Csupó is thus liable as IPLLC's alter ego. *See* Dkt. 296 at 16-18. Counterclaim Defendants' proposed instruction ignores that theory of liability and would incorrectly instruct the jury that Csupó cannot be found liable if those who submitted the fraudulent takedown notices were IPLLC's agents. YouTube's proposed instruction includes an instruction on alter ego liability to correct that omission.

1

<u>INSTRUCTION NO. 55</u>

2

PRINCIPAL RESPONSIBLE FOR AGENT'S CONDUCT WITHIN SCOPE OF

3

AUTHORITY

4

    A principal is responsible for harm caused by the wrongful conduct of its agents while

5

acting within the scope of their authority.  An agent is always responsible for harm caused by

6

their own wrongful conduct, whether or not the principal is also liable.

7

8

*Authority*:  This proposed instruction is based on the Judicial Council of California Civil Jury

9

Instructions, Instr. 3700, "Introduction to Vicarious Responsibility".  *See also* Cal. Civ. Code §§

10

2295, 2330, 2338, 2339, 2343

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INSTRUCTION NO. 56

AGENT—SCOPE OF AUTHORITY DEFINED

An agent is acting within the scope of authority if the agent is engaged in the performance of duties which were expressly or impliedly assigned to the agent by the principal.

*Authority*: Ninth Circuit Manual of Model Civil Jury Instructions, Instr. 4.5 (2017).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>DISPUTED INSTRUCTION NO. 57</u>

EXISTENCE OF "SUB-AGENT" RELATIONSHIP: OFFERED BY COUNTERCLAIM

DEFENDANTS

Mr. Csupó contends that MegaFilm's original agent was IPLLC and that IPLLC delegated its power to submit takedown notices to a sub-agent (Endre Holman).  An agent can delegate its powers to another person when such delegation is specially authorized by the principal.  To "delegate" means that an agent gives part of his or its power to someone else. Once the original agent delegates to the sub-agent, the original agent is not responsible to third persons for the acts of the sub-agent.  If you find that the original agent (IPLLC) delegated its power to submit takedown notices to a sub-agent, IPLLC cannot be held not responsible for the acts of the sub-agent.

*Authorities:* This proposed jury instruction is based on sub-sections of California's agency statute that relate to sub-agency relationships, Cal. Civ. Code § 2349, 2351, and the definition of "delegate", *see* DELEGATE, Black's Law Dictionary (11th ed. 2019).

1

2

<u>DISPUTED INSTRUCTION NO. 57</u>

EXISTENCE OF "SUB-AGENT" RELATIONSHIP: OFFERED BY COUNTERCLAIMANTS

3           Mr. Csupó contends that MegaFilm's original agent was IPLLC and that IPLLC

4    delegated its power to submit takedown notices to a sub-agent (Endre Holman).  An agent can

5    delegate its powers to another person when such delegation is specially authorized by the

6    principal.  To "delegate" means that an agent gives part of his or its power to someone else and

7    no longer exercise his or its power.  Once the original agent lawfully delegates to the sub-agent,

8    the original agent is generally not responsible to third persons for the acts of the sub-agent.

9    However, if the original agent is not completely independent from the sub-agent, or if the

10   delegation is not authorized by the principal, the original agent cannot avoid responsibility.  The

11   original agent also cannot avoid responsibility if it directed, participated in, or ratified the sub-

12   agent's actions.  If you find that the original agent (IPLLC) lawfully delegated its power to

13   submit takedown notices to a sub-agent, and that IPLLC is completely independent from the sub-

14   agent and did not direct, participate in, or ratify the sub-agent's actions, IPLLC cannot be held

15   not responsible for the acts of the sub-agent.

16

17   Authority: This proposed jury instruction is based on sub-sections of California's agency statute

18   that relate to sub-agency relationships, Cal. Civ. Code § 2349, 2351, and the definition of

19   "delegate", *see* DELEGATE, Black's Law Dictionary (11th ed. 2019). It is also based on case

20   law. *See George F. Hillenbrad, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 822 (Cal Ct.

21   App. 2002); *Davis v. Wal-Mart Stores Inc.*, 2017 WL 499595, at *3 (C.D. Cal. Feb. 6, 2017).

22

23

24

25

26

27

28

**Counterclaim Defendants' Argument re Disputed Instruction No. 57:**

**Existence of "Sub-Agent" Relationship**

Plaintiffs' and Counterclaim Defendants' proposed instruction closely tracks the relevant California sub-agency statutes.  Under California law, an agent may delegate authority to a sub-agent when "such delegation is specially authorized by the principal." Cal. Civ. Code § 2349.  Once the original agent delegates to the sub-agent, "the original agent is not responsible to third persons for the acts of the sub-agent."  Cal. Civ. Code § 2351.  In accord with Sections 2349 and 2351, Plaintiffs' and Counterclaim Defendants' proposed instruction states: "If you find that the original agent (IPLLC) delegated its power to submit takedown notices to a sub-agent, IPLLC cannot be held not responsible for the acts of the sub-agent."

In contrast, the italicized portions from Defendant-Counterclaimants' instruction are not supported by Sections 2349 and 2351:

Once the original agent lawfully delegates to the sub-agent, the original agent is *generally* not responsible to third persons for the acts of the sub-agent.  However, *if the original agent is not completely independent from the sub-agent*, or if the delegation is not authorized by the principal, *the original agent cannot avoid responsibility.  The original agent also cannot avoid responsibility if it directed, participated in, or ratified the sub-agent's actions.*  If you find that the original agent (IPLLC) lawfully delegated its power to submit takedown notices to a sub-agent, *and that IPLLC is completely independent from the sub-agent and did not direct, participate in, or ratify the sub-agent's actions,* IPLLC cannot be held not responsible for the acts of the sub-agent.

Simply put, Defendant-Counterclaimants' extra-statutory (and confusing) requirements should not be presented to the jury.  Plaintiffs' and Counterclaim Defendants' proposal, which adheres closely to the relevant statutes, should be adopted instead.

3:20-cv-04423-JD

---

**REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS**

**Counterclaimants' Argument re Disputed Instruction No. 57: Existence of "Sub-Agent" Relationship**

YouTube's proposed instruction provides the jury with necessary context regarding the nature and scope of a sub-agency relationship. As YouTube explained in its opposition to Counterclaim Defendants' summary judgment motion, California Civil Code Sections 2349 and 2351 "contemplate a situation where an agent appoints somebody completely independent to assume a responsibility." *George F. Hillenbrand, Inc. v. Ins. Co. of N. Am.*, 104 Cal. App. 4th 784, 822 (Cal. Ct. App. 2002) (quoting trial court with approval). It "does not provide an escape hatch" for companies to avoid liability when they act through their employees and representatives, as corporate entities must. *Id.* at 824. Thus, where there "is no evidence [the principal] could control the acts of [the sub-agent] or that [the principal] agreed [the agent] would be absolved of liability when it" delegated its duties to the sub-agent, the agent is not absolved of liability for the actions of the sub-agent. *See id.* Beyond that, an agent remains liable for its own actions if it directs, participates in, or ratifies a sub-agent's wrongful conduct. *See Davis v. Wal-Mart Stores Inc.*, No. 2:16-CV-9480-JFW (AJWx), 2017 WL 499595, at *3 (C.D. Cal. Feb. 6, 2017) (agent is liable for subagent's conduct if agent "improperly cooperates in the latter's acts or omissions" (quoting *Baisley v. Henry*, 55 Cal. App. 760, 763 (Cal. Ct. App. 1921))). YouTube's instruction clarifies these important points about California sub-agency law, which are absent from Counterclaim Defendants' instruction.

<u>DISPUTED INSTRUCTION NO. 58</u>

DAMAGES FOR VIOLATION OF 17 U.S.C. § 512(F): OFFERED BY COUNTERCLAIM DEFENDANTS

If you find for YouTube and Google on YouTube and Google's counterclaim against Pirate Monitor Ltd. or Mr. Csupó for submitting false takedown requests in violation of 17 U.S.C. § 512(f), you also must decide how much money will reasonably compensate YouTube and Google for the harm. This compensation is called "damages."

YouTube and Google must prove the amount of their damages by the preponderance of the evidence. You must not speculate or guess in awarding damages.

YouTube and Google may recover for any damages, including actual damages and costs proximately caused by Pirate Monitor Ltd.'s or Mr. Csupó's false statements.

Alternatively, you may award YouTube and Google nominal damages for an injury incurred as a result of a § 512(f) misrepresentation. If you find for YouTube and Google but you find that YouTube and Google failed to prove actual damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

YouTube claims that it suffered actual damages as a result of the defendants' takedown notices. YouTube claims that its actual damages are the cost of its investigation and processing of the takedown notices.

*Authorities:* There is no Ninth Circuit Model Jury Instruction for this issue. This instruction is informed by the text of 17 U.S.C. § 512(f); the Judicial Council of California Civil Jury Instruction (CACI) 3900, entitled Introduction to Tort Damages—Liability Contested; and case law—*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

<u>DISPUTED INSTRUCTION NO. 58</u>

DAMAGES FOR VIOLATION OF 17 U.S.C. § 512(F): OFFERED BY

COUNTERCLAIMANTS

If you find for YouTube and Google on YouTube and Google's counterclaim against Pirate Monitor Ltd. or Mr. Csupó for submitting false takedown requests in violation of 17 U.S.C. § 512(f), you also must decide how much money will reasonably compensate YouTube and Google for the harm. This compensation is called "damages."

YouTube and Google must prove the amount of their damages by the preponderance of the evidence. However, YouTube does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

The amount of damages must include an award for all harm that Pirate Monitor LTD or Mr. Csupó was a substantial factor in causing, even if the particular harm could not have been anticipated. YouTube may recover for any damages, including actual damages, costs, and attorney's fees, caused by Pirate Monitor LTD's or Mr. Csupó's false statements.

Alternatively, you may award YouTube and Google nominal damages for an injury incurred as a result of a § 512(f) misrepresentation. If you find for YouTube and Google but you find that YouTube and Google failed to prove actual damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

YouTube claims that it suffered actual damages as a result of the defendants' takedown notices. YouTube claims that its actual damages are the cost of its investigation and processing of the takedown notices, including the attorneys' fees.


Authority: There is no Ninth Circuit Model Jury Instruction for this issue. This instruction is informed by the text of 17 U.S.C. § 512(f); the Judicial Council of California Civil Jury Instruction (CACI) 3900, entitled Introduction to Tort Damages—Liability Contested; and case law—*Lenz v. Universal Music Corp.*, 815 F.3d 1145 (9th Cir. 2016).

**Counterclaim Defendants' Argument re Disputed Instruction No. 58:**

**Damages for Violation of 17 U.S.C. § 512(f)**

The parties largely agree on the instruction for damages under 17 U.S.C. § 512(f), but dispute whether attorney's fees are available.  Plaintiffs and Counterclaim Defendants contend that the plain language of 17 U.S.C. § 512(f) bars Defendant-Counterclaimants' claims for attorneys' fees, and Defendant-Counterclaimants argue that they entitled to attorneys' fees – including for the entire case.  This issue has been fully briefed in Mr. Csupó and Pirate Monitor's motion for summary judgment, *see* ECF No. 260 at 18; ECF No. 296 at 20-22; ECF No. 299 at 3-4, so Plaintiffs will not repeat those arguments here.  In any event, the amount of attorneys' fees (if any) should be decided by the Court, so there is no need to instruct the jury on this issue.  *Evanston Ins. Co. v. Clartre, Inc.*, 2:14-CV-00085-BJR, 2016 WL 1105799, at *2 (W.D. Wash. Mar. 22, 2016) ("The question of award of attorney's fees, as well as what amount of attorney's fees qualify as "reasonable," is a question for the court.") (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) and *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)).

**Counterclaimants' Argument re Disputed Instruction No. 58: Damages for Violation of 17 U.S.C. § 512(f)**

YouTube's proposed instruction provides important context to the jury on the issues of causation and damages. ***First***, it provides guidance about how the jury should consider the issue of causation. That guidance is necessary to avoid jury confusion regarding the applicable legal standard. ***Second***, it clarifies that YouTube need not prove the exact amount of damages that would reasonably compensate it for the harm it suffered. *See* Judicial Council of California Civil Jury Instruction (CACI) 3900. ***Third***, the instruction clarifies the categories of damages that are recoverable under the statute. As YouTube explained in its summary judgment opposition (Dkt. 296 at 20-22), YouTube's litigation costs and fees are a proper element of its damages claim. *See*, *e.g.*, *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2016) (the plaintiff's litigation costs and attorneys' fees "arose as a result of the injury incurred"). YouTube's instruction makes clear that its damages may include those attorney's fees.

DISPUTED INSTRUCTION NO. 59

UNCLEAN HANDS: OFFERED BY COUNTERCLAIM-DEFENDANTS

YouTube and Google cannot recover against Pirate Monitor Ltd. or Mr. Csupó if they had unclean hands.  YouTube and Google had unclean hands if their conduct was inequitable and their conduct relates to their claim against Pirate Monitor Ltd. and Mr. Csupó and harmed Pirate Monitor Ltd. and/or Mr. Csupó.

*Authorities:* This instruction is based on case law regarding unclean hands. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) ("'To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant.'") (quoting *Survivor Productions LLC v. Fox Broadcasting Co.,* 2001 WL 35829270, at *3 (C.D.Cal. June 12, 2001)); *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1040 (N.D. Cal. 2004) (The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones.") (cleaned up).

1

## DISPUTED INSTRUCTION NO. 59

2

UNCLEAN HANDS

3

Counterclaimants object to this instruction in its entirety.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Counterclaim Defendants' Argument re Disputed Instruction No. 59:**

**Unclean Hands**

Mr. Csupó and Pirate Monitor Ltd.'s affirmative defense of unclean hands is grounded in Defendants and Counterclaimants' inequitable conduct of encouraging copyright infringement via YouTube.  "'To establish unclean hands, a defendant must demonstrate (1) inequitable conduct by the plaintiff; (2) that the plaintiff's conduct directly relates to the claim which it has asserted against the defendant; and (3) plaintiff's conduct injured the defendant.'" *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007) (quoting *Survivor Productions LLC v. Fox Broadcasting Co.,* 2001 WL 35829270, at *3 (C.D.Cal. June 12, 2001)); *see also Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1040 (N.D. Cal. 2004) ("The unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. In California, the unclean hands doctrine applies not only to equitable claims, but also to legal ones.") (cleaned up).

Plaintiffs' and Counterclaim Defendants' proposal is in accord with this case law. Defendant-Counterclaimants have not offered a counter-proposal, nor have they suggested any edits to Plaintiffs' and Counterclaim Defendants' proposal (other than to delete it in its entirety). Accordingly, Plaintiffs and Counterclaim Defendants respectfully request that the Court adopt their proposal.

## Counterclaimants' Argument re Disputed Instruction No. 59: Unclean Hands

An instruction on unclean hands is both unnecessary and improper. Unclean hands is an equitable defense. *See*, *e.g.*, *Metal Jeans, Inc. v. Metal Sport, Inc.*, 987 F.3d 1242, 1244 (9th Cir. 2021) ("The doctrine of unclean hands arises in equity . . ."); *United States v. Kaczynski*, 551 F.3d 1120, 1129 (9th Cir. 2009) ("The doctrine of unclean hands is an equitable doctrine . . ."). There is no jury right to an equitable claim or defense. *See Granite State Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1027 (9th Cir. 1996) ("A litigant is not entitled to have a jury resolve a disputed affirmative defense if the defense is equitable in nature."); *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir. 1989) ("no right to a jury exists" for equitable claims). Moreover, Counterclaim Defendants have not identified any case where a court allowed a section 512(f) defendant to assert an unclean hands defense. Instead, their cases are about copyright infringement or California contract law. And Counterclaim Defendants have failed to substantiate the affirmative defense with any evidence that YouTube played any role in the transmission of fraudulent takedown notices, rendering a jury instruction unnecessary.

## DISPUTED INSTRUCTION NO. 60

### IN PARI DELICTO: OFFERED BY COUNTERCLAIM-DEFENDANTS

Pirate Monitor Ltd. and Mr. Csupó claim that YouTube and Google may not recover because YouTube and Google are equally responsible for the harmful conduct. To succeed, Pirate Monitor Ltd. and Mr. Csupó must prove all of the following: 1. That YouTube and Google have economic strength at least equal to Mr. Csupó and Pirate Monitor Ltd.; 2. That YouTube and Google are at least equally responsible for the harmful conduct as Pirate Monitor Ltd. and Mr. Csupó; and 3. That YouTube and Google were not compelled by economic pressure to engage in the harmful conduct.

*Authorities:* This is based on the Judicial Council of California Civil Jury Instructions, Instr. 3431, "Affirmative Defense—In Pari Delicto".

1

## DISPUTED INSTRUCTION NO. 60

2

IN PARI DELICTO

3

Counterclaimants object to this instruction in its entirety.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Counterclaim Defendants' Argument re Disputed Instruction No. 60: In Pari Delicto**

Mr. Csupó and Pirate Monitor, Ltd.'s affirmative defense of in pari delicto is grounded in Defendant-Counterclaimants' inequitable conduct of encouraging copyright infringement via YouTube. "The doctrine of in pari delicto dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed in pari delicto, and the law will aid neither, but rather, will leave them where it finds them." *Casey v. U.S. Bank Nat. Assn.,* 127 Cal. App. 4th 1138, 1143, 26 Cal. Rptr. 3d 401, 404 (2005).

Plaintiffs' and Counterclaim Defendants' proposal is in accord with this case law. Defendant-Counterclaimants have not offered a counter-proposal, nor have they suggested any edits to Plaintiffs' and Counterclaim Defendants' proposal (other than to delete it in its entirety). Accordingly, Plaintiffs and Counterclaim Defendants respectfully request that the Court adopt their proposal.

**Counterclaimants' Argument re Disputed Instruction No. 60: In Pari Delicto**

Similar to unclean hands, an instruction on *in pari delicto* is unnecessary and improper. Like unclean hands, *in pari delicto* is an equitable defense not submitted to the jury. *See*, *e.g.*, *Javelin Corp. v. Uniroyal, Inc.*, 546 F.2d 276, 278 (9th Cir. 1976) ("The equitable defense of in pari delicto . . ."); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356, 1367 (9th Cir. 1986) (explaining "the equitable doctrine of *in pari delicto*"). And instead of pointing to even a single case where *in pari delicto* was asserted against a copyright infringement or 512(f) claim and included in the jury instructions, Counterclaim Defendants cite to a plainly inapplicable model jury instruction for a California state law antitrust claim under the Cartwright Act.

## INSTRUCTION NO. 61

CONSIDERATION OF THE EVIDENCE -- CONDUCT OF THE JURY

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet social media site, blog, website or other feature. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter, and report the contact to the Court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the Court immediately.

INSTRUCTION NO. 62

USE OF NOTES

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

INSTRUCTION NO. 63

COMMUNICATION WITH THE COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through Ms. Clark, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing, and I will respond to the jury concerning the case only in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone -- including me or Ms. Clark -- how the jury stands, numerically or otherwise, on any question submitted to you, including the question of the liability of the defendants, until after you have reached a unanimous verdict or have been discharged.

1

INSTRUCTION NO. 64

2

RETURN OF VERDICT

3       A verdict form has been prepared for you. After you have reached unanimous agreement on a

4 verdict, your presiding juror should complete the verdict form according to your deliberations, sign

5 and date it, and advise Ms. Clark that you are ready to return to the courtroom

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REVISED JOINT PROPOSED FINAL JURY INSTRUCTIONS