No. 23-_____

IN THE

# United States Court of Appeals
# For the Ninth Circuit

MARIA SCHNEIDER, UNIGLOBE ENTERTAINMENT, LLC, AND AST
PUBLISHING LTD., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

*Plaintiffs-Petitioners*,

v.

YOUTUBE, LLC AND GOOGLE LLC,

*Defendants-Respondents.*

Petition for Review of Order Denying Class Certification from the
United States District Court for the Northern District of California
No. 3:20-cv-04423-JD
District Judge James Donato

## PETITION FOR PERMISSION TO APPEAL AN ORDER DENYING
## CLASS CERTIFICATION PURSUANT TO RULE 23(f)

Philip C. Korologos
pkorologos@bsfllp.com
Eric J. Brenner
ebrenner@bsfllp.com
Jeffrey Waldron
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing, Jr.
rewing@koreintillery.com
David Walchak
dwalchak@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
*Counsel for Plaintiffs-Petitioners*

*Additional Counsel*

Joshua Irwin Schiller
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA  94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

Stephen M. Tillery
stillery@koreintillery.com
Carol O'Keefe
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

*Counsel for Plaintiffs-Petitioners*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Plaintiffs-Petitioners state that Uniglobe Entertainment, LLC, and AST Publishing Ltd. have no parent companies and no publicly held corporation owns 10% or more of either company's stock.

Date: June 2, 2023                    _/s/ Philip C. Korologos_
                                      Philip C. Korologos

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES FOR REVIEW ....................................................1

INTRODUCTION ...............................................................................................1

STATEMENT OF THE CASE..............................................................................3

REASONS FOR GRANTING THE PETITION.....................................................5

I.    THE DISTRICT COURT ERRED IN RESTING ITS COMMONALITY
      AND PREDOMINANCE HOLDINGS ON IMPERMISSIBLE MERITS
      DETERMINATIONS. ..................................................................................6

           A. Ownership........................................................................................7

           B. Infringement ...................................................................................10

II.   THE DISTRICT COURT ERRED IN REFUSING TO ALLOW
      CLASSWIDE ADJUDICATION OF DEFENDANTS' DMCA SAFE
      HARBOR DEFENSE UNDER RULE 23(c)(4). ..........................................13

III.  THE DISTRICT COURT ERRED IN CONCLUDING THAT MS.
      SCHNEIDER WAS NOT A MEMBER OF THE ISRC CLASS AND IN
      MISINTERPRETING CIRCUIT PRECEDENT ON §1202 CLAIMS. .......19

           A. Ms. Schneider is a Member of the CMI Classes............................19

           B. The District Court Sorely Misconstrued *Stevens v. Corelogic* .......21

CONCLUSION ...................................................................................................23

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)..........................................................................................7, 12

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ...............................................................9

*Chamberlan v. Ford Motor Co.*,
  402 F.3d 952 (9th Cir. 2005) .................................................................5

*Desire, LLC v. Manna Textiles, Inc.*,
  986 F.3d 1253 (9th Cir. 2021) ..............................................................10

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  2015 WL 4776932 (C.D. Cal. May 27, 2015)........................................9

*In re Activision Sec. Litig.*,
  621 F. Supp. 415 (N.D. Cal. 1985).......................................................13

*Kamakahi v. Am. Soc'y for Reprod. Med.*,
  305 F.R.D. 164 (N.D. Cal. 2015)................................................... 15, 17

*Microsoft Corp. v. Baker*,
  582 U.S. 23 (2017)..................................................................................5

*Newton v. Diamond*,
  388 F.3d 1189 (9th Cir. 2004) ..............................................................20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) (en banc) ......................................... 6, 8, 12

*Pac. Studios Inc. v. W. Coast Backing Inc.*,
  2012 WL 12887637 (C.D. Cal. Apr. 18, 2012)....................................20

*Rahman v. Mott's LLP*,
  693 F. App'x 578 (9th Cir. 2017) .........................................................13

*Russell v. Educ. Comm'n for Foreign Med. Graduates*,
  15 F.4th 259 (3d Cir. 2021) ................................................... 15, 16, 17

*Stevens v. Corelogic, Inc.*,
  899 F.3d 666 (9th Cir. 2018) ......................................................... 22, 23

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
  308 F.R.D. 630 (N.D. Cal. 2015)..........................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)....................................................................................6, 12

*United States v. Orm Hieng*,
  679 F.3d 1131 (9th Cir. 2012) ................................................................9

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................... 13, 16, 17

*Zinser v. Accufix Research Institute*, 253 F.3d 1180 (9th Cir.),
  *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)..................16

**Statutes**

17 U.S.C. §1202 ................................................................................ passim
17 U.S.C. §512 ................................................................................3, 14

**Rules**

Federal Rule of Civil Procedure 23 ................................................... passim

## STATEMENT OF THE ISSUES FOR REVIEW

1.     Did the district court err in denying class certification based on merits determinations regarding the weight to be given proposed common evidence, without regard for whether such proof is sufficient to make a *prima facie* showing, without regard to certain key evidence, and without regard to controlling precedent about the legal significance of such proof?

2.     Did the district court err in refusing to certify a Rule 23(c)(4) issues class to resolve undisputedly common issues at the core of the litigation that will otherwise evade judicial review based on Defendants' demonstrated litigation tactics?

3.     Did the district court err in refusing to certify the proposed ISRC Class by misinterpreting the scienter requirements of 17 U.S.C. §1202 and ignoring that Plaintiff Maria Schneider is a proper class representative based on her ownership of unregistered copyrights in sound recordings?

## INTRODUCTION

The district court refused to certify putative classes of copyright holders based on its premature determination that Plaintiffs' proposed classwide evidence of copyright ownership and infringement would not suffice to *prove* those issues at trial. The merits of Plaintiffs' evidence is a question properly left for the jury. Plaintiffs' proffered common evidence is more than sufficient for the required

*prima facie* showing of copyright ownership and infringement on a classwide basis. This evidence includes sworn statements of ownership in DMCA takedown notices and cross-references to the federal copyright registry. Both types of evidence are sufficient class proof under this Court's precedent, but the district court disregarded that law—and ignored entirely the existence of the copyright registry evidence that would confirm class members' ownership rights.

The district court compounded this error by refusing to certify an issues class with respect to the DMCA safe harbor where Defendants conceded the question was common to the class. The district court also incorrectly determined that Plaintiff Maria Schneider could not act as class representative for the 17 U.S.C. §1202 classes, and misinterpreted this Circuit's precedent on the scienter requirements under §1202 even while recognizing that its interpretation would create "a bright-line rule that you can never have a" class targeting the wrongful removal of copyright management information ("CMI") under the statute.[1]

The Court should grant this petition to correct these manifest errors and to clarify its precedents regarding both §1202 and the level of proof Plaintiffs must put forth for class certification. At minimum, this Court should grant review and reverse the district court's denial of an issues class, so that Defendants are not permitted cynically to drag out copyright litigation by insisting for over three years

---

[1] Dkt. 325 at 43.

that they benefit from the DMCA safe harbor, only to run from that defense on the eve of trial, before the merits of their position can be tested in a dispositive ruling.

## STATEMENT OF THE CASE

Plaintiffs are 7-time GRAMMY award-winning jazz musician Maria Schneider, filmmaker Uniglobe Entertainment, LLC, and Russian audiobook company AST Publishing Ltd. Plaintiffs' copyrighted works have been repeatedly uploaded and infringed by their display on YouTube and they intend to show at trial that YouTube willfully turns a blind eye to this infringement on its platform, and as a result, is vicariously, contributorily, and directly liable for copyright infringement. Dkt. 99 ¶¶ 1–20, 112–42 (Plaintiffs' First Amended Complaint).

YouTube claims it has structured its platform to limit its liability for displaying infringing content under the safe harbors of the Digital Millennium Copyright Act, 17 U.S.C. §512. The merits of this defense were at the core of the litigation below. For example, Defendants admitted in open court that this defense was "a big deal" and *Plaintiffs* moved for partial summary judgment to show that YouTube was not eligible to assert this defense because it had not reasonably implemented a repeat infringer policy required under 17 U.S.C. §512(i). Dkt. 195 at 48:11–16; Dkt. 265 at 2–5. Plaintiffs stood ready to prove that YouTube cannot satisfy the requirements of the DMCA safe harbor defense, relying on evidence that YouTube has broadly sought to seal from public eyes. Then, on the eve of

trial, after years of discovery to show it did not qualify for the DMCA safe harbor, and before the district court decided Plaintiffs' motion for summary judgment on the issue, YouTube stated it would withdraw its affirmative defense *if an infringement class were not certified*. Dkt. 309 at 2.

On May 22, 2023, a mere three weeks before trial, the district court denied class certification. Order re Class Certification ("Order"), Dkt. 330. Then, the court permitted YouTube to withdraw its DMCA defense, declined to decide Plaintiffs' fully-briefed motion for summary judgment on the DMCA, and denied Plaintiffs' motion to stay the trial to resolve in the ordinary course this petition and any subsequent appeal. 5/25/2023 Hrg. Tr. at 21:9–15. YouTube's gamesmanship demonstrates the importance of certifying a class of copyright holders. YouTube is ready, willing, and able to spend its effectively unlimited resources insisting that it complies with the DMCA when presented with infringement claims by small copyright holders, but if they make it to trial, YouTube runs from its defense, preferring the risk of small-value individual infringement judgments to a dispositive and binding ruling that it is not eligible for safe harbors. Only a certified class of small copyright holders can test the concededly common issue of

whether such safe harbors apply.[2] Unfortunately, the district court foreclosed this possibility in its eleventh hour, manifestly erroneous denial of class certification.

## REASONS FOR GRANTING THE PETITION

This Court may grant Rule 23(f) review of a class certification "on the basis of *any* consideration." *Microsoft Corp. v. Baker*, 582 U.S. 23, 32–33 (2017) (emphasis in original). All three circumstances that this Court has recognized as "most appropriate" for Rule 23(f) review apply here. *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005) (per curiam). The district court's last-minute class certification ruling was "manifestly erroneous" in multiple respects, hinges on certain "fundamental issue[s] of law relating to class actions" that may otherwise evade review, and has left Plaintiffs in a position where they are going to trial (in a matter of days) on a small number of individual claims regardless of whether they "justify the expense of the litigation." *Id.* at 958–59. The Court should grant this petition.

---

[2] YouTube ensures large copyright holders lack any incentive to litigate infringement by providing a powerful but limited access tool, "Content ID," which automatically identifies—and monetizes or blocks—infringing videos as they are uploaded. YouTube has historically denied small copyright holders access to this tool. Dkt. 245 at 1–2.

## I.   THE DISTRICT COURT ERRED IN RESTING ITS COMMONALITY AND PREDOMINANCE HOLDINGS ON IMPERMISSIBLE MERITS DETERMINATIONS.

To satisfy Rule 23's commonality requirement, plaintiffs must identify at least one "common question . . . capable of classwide resolution." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 663 (9th Cir. 2022) (en banc). "A common question," the Supreme Court has explained, "is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). In analyzing predominance, the district court then "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (quoting *Tyson Foods*, 577 U.S. at 453).

For their claims brought on behalf of the two proposed infringement classes, Plaintiffs propose to make the required *prima facie* showing of ownership and infringement with common evidence that includes sworn DMCA takedown notices and the federal copyright registry. The district court dismissed such evidence as insufficient, selectively mining the record and badly misconstruing Plaintiffs' proposed evidence. The Supreme Court has cautioned that "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."

6

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* In its analysis of common issues, the district court crossed this line and decided questions properly reserved for the jury.

The district court's rejection of these proposed common questions served as the basis for its predominance ruling. Order at 18 ("Without a viable method of classwide proof, plaintiffs' infringement claims will necessarily require highly individualized inquiries into the merits."). Because the court's commonality and predominance rulings rested on its premature merits determinations, this Court should reverse or, at a minimum, vacate its order.

### A. Ownership

Plaintiffs' motion for class certification described how, for the Registered Works Class, *prima facie* evidence of ownership could be established through sworn DMCA takedown notices that identify copyright owners, which would be "further substantiate[d]" by "cross-referencing successful Takedown Notices against the U.S. Copyright Office's database of copyright registrations."[3] Dkt. 245 at 10.

---

[3] Plaintiffs proposed a similar procedure for Foreign Unregistered Works Class, relying on third-party copyright databases. Dkt. 245 at 10.

The district court rejected the takedown procedures as insufficient under Rule 23. But the district court's conclusion turned on its view that Plaintiffs' proposed evidence was "miles away from *substantive proof* of copyright ownership." Order at 13 (emphasis added). That is not the test at the class certification stage, which turns on the existence of *prima facie* evidence. As this Circuit recently explained *en banc*, "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is capable of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean*, 31 F.4th at 666–67.

YouTube's takedown notice requires identification of the "copyright owner," and requires the submitter to sign and swear, "[U]nder penalty of perjury, I am the owner, or an agent authorized to act on behalf of the owner, of an exclusive right that is allegedly infringed." Dkt. 248-9 at 2–3. YouTube's response to a takedown notice Ms. Schneider submitted confirms its understanding that the accuracy of the entire submission is certified "under penalty of perjury." *Id.* at 5.

As explained in *Briseno v. ConAgra Foods, Inc.*, sworn declarations of ownership like the takedown notices on which Plaintiffs will rely are sufficient *prima facie* classwide evidence, and a defendant's desire to contest such sworn statements is properly reserved for the class administration process—it is no barrier

to certification. 844 F.3d 1121, 1131–33 (9th Cir. 2017); *see also Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *7–8 (C.D. Cal. May 27, 2015) (certifying copyright class and holding self-identification a sufficiently reliable means of determining ownership). In fact, the sworn statements here are *more reliable* than the evidence in *Briseno*, where the Court approved absent class members' affidavits that they purchased Wesson oil during the class period as sufficient *prima facie* evidence of ownership. 844 F.3d at 1132. Takedown notices are filed by class members or their agents at the moment they identify infringement of the copyrighted work. They thus have added reliability as present sense impressions and recorded recollections. *See United States v. Orm Hieng*, 679 F.3d 1131, 1143 (9th Cir. 2012).

The district court's *per se* dismissal of sworn statements of ownership was manifestly erroneous. Although YouTube "may prefer to terminate this litigation in one fell swoop at class certification rather than later challenging each individual class member's claim to recovery," it cannot defeat class certification by pointing to individualized questions of ownership that may arise in the administration process. *Briseno*, 844 F.3d at 1132. To the contrary, "Rule 23 specifically contemplates the need for such individualized claim determinations after a finding of liability." *Id.* at 1131.

Moreover, in addition to the independently sufficient sworn takedown notices to establish *prima facie* ownership, Plaintiffs' common proof includes information in the U.S. Copyright Office database, which can confirm ownership. Dkt. 245 at 10; Dkt. 272 at 4–5. This Circuit has held that the federal copyright registry is presumptive evidence of copyright ownership. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021). Not only did the district court refuse to engage with this precedent at oral argument, stating that the registry is only "a slight help," Dkt. 325 at 18:6–23, it ignored entirely the existence and significance of the confirming copyright databases in its class certification order. Order at 13–18.

## B. Infringement

The district court also jumped the gun with respect to Plaintiffs' proposal to establish infringement on a classwide basis in reliance on robust evidence of the scope and rigor of YouTube's takedown evaluation procedures. This kind of evidence shows that when YouTube receives a takedown notice claiming infringement, it does not merely take the allegation at face value. Instead, *e.g.*, YouTube has both automated and manual procedures to assess the *validity* of takedown notices alleging infringement. YouTube applied these takedown notice review procedures on a uniform basis during the class period. Dkt. 245 at 8. These processes include, for instance, independent evaluation of whether the claimed

infringement is fair use, as well as numerous other steps, detailed in Plaintiffs' briefing, that YouTube takes to ensure takedown notices result in the removal only of infringing content, and that all other content remains on the platform. Dkt. 245 at 8–10, 19–20.

To be sure, at trial, YouTube will have every right to contest whether its vetting of takedown notices establishes infringement. And a jury can weigh evidence and arguments about takedown-processing based on YouTube witnesses' testimony and YouTube documents. But, at class certification, Plaintiffs' proposed classwide evidence of YouTube's rigorous procedures more than suffices the *prima facie* showing of infringement.

Indeed, the district court all but conceded that Plaintiffs' evidence sufficed for *prima facie* evidence of infringement, acknowledging that the allegation of infringement in takedown notices "may be a strong one," but decided based on its evaluation of the evidence that YouTube's subsequent processes did not tip the scales into reliably "adjudicat[ing] copyright claims." Order at 15. In so holding, the district court weighed the evidence, opining that takedown notices would be "*doubtful* sources of classwide proof," *id.* at 17 (emphasis added), and questioning whether "50 to 100 monthly contacts with legal counsel about fair use"—in addition to YouTube staff members' own assessments—was really enough "in light of the volume of takedown notices." *Id.* at 16. The district court also made

much of its finding that YouTube only manually reviews takedown notices "in limited situations," *id.*, notwithstanding sworn testimony to the contrary in Plaintiffs' briefing. Dkt. 272 at 6.

The district court's examination of Plaintiffs' proposed common evidence went far beyond assessing whether it could support a "prima facie showing." *Tyson Foods*, 577 U.S. at 453. Indeed, the errors in the court's analysis demonstrate why this Court expressly instructs courts not to "'put the cart before the horse' by requiring plaintiffs to show at certification that they will prevail on the merits." *Olean*, 31 F.4th at 667 (quoting *Amgen*, 568 U.S. at 460). The district court neglected to assess whether Plaintiffs' proposed evidence "establishes that a common question is *capable* of class-wide resolution," and instead declined certification "merely because it consider[ed] plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.* at 667–68.

The Court should grant this petition to correct this manifest error in the district court's analysis of commonality under Rule 23(a)(2), which also formed the basis for its predominance ruling under Rule 23(b)(3).

12

II.   **THE DISTRICT COURT ERRED IN REFUSING TO ALLOW CLASSWIDE ADJUDICATION OF DEFENDANTS' DMCA SAFE HARBOR DEFENSE UNDER RULE 23(c)(4).**

Independent of its errors in denying Rule 23(b)(3) infringement classes, the district court erred in summarily refusing to apply Rule 23(c)(4) to allow resolution on a class basis of the undisputedly common—and centrally consequential—issue of whether the YouTube platform qualifies for, and satisfies, the safe harbor in the DMCA.

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). "Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23[(c)(4)] authorizes the district court in appropriate cases to isolate the common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Issue certification must "materially advance[] the disposition of the litigation as a whole." *Rahman v. Mott's LLP*, 693 F. App'x 578, 579 (9th Cir. 2017) (unpublished). Even a single common issue can warrant certification under Rule 23(c)(4). *See, e.g.*, *In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985).

The DMCA safe harbor applies "only if the service provider" has "adopted and reasonably implemented" a repeat infringer policy and "accommodates and does not interfere with standard technical measures." 17 U.S.C. §512(i). These are structural issues that depend *solely* on *Defendants'* conduct without any need for individualized inquiries about class members. Defendants have acknowledged that questions necessary to resolve this affirmative defense are common across the class. Dkt. 268 at 17 n.11.

Whether YouTube qualifies for the DMCA safe harbor has been central to this litigation from the start. Dkt. 99 ¶ 12. Defendants themselves have made no secret that the DMCA safe harbor "is a big deal to us," Dkt. 195 at 48:11–16, and the significance of this common issue was discussed extensively in the class certification briefing below. Dkt. 245 at 16–19; Dkt. 272 at 1. In support of issues class certification, Plaintiffs explained that given that Defendants conceded "commonality" for the safe harbor defense, they "cannot seriously argue that a Rule 23(c)(4) issues class would not advance the litigation." Dkt. 272 at 15.

The district court, however, barely engaged on Rule 23(c)(4), derisively suggesting Plaintiffs were seeking an issues class as a "consolation prize in the event certification is denied under Rule 23(b)(3)." Order at 25. But Plaintiffs' entirely typical and appropriate decision to present its Rule 23(c)(4) arguments in the alternative hardly justifies inferring the argument lacks merit.

14

The district court appears to have erroneously believed that issues class certification is improper as to a common defense where the court concludes there is an absence of common questions with respect to liability. At the class certification hearing, the district court explained that Plaintiffs' proposal to try a DMCA issues class "doesn't matter" because Plaintiffs could not "establish the predicate of a claim, which is ownership of a work." Dkt. 325 at 29:14–16. A footnote in the Order also states that the "absence of common proof of liability makes the question of common proof of defenses beside the point." Order at 17 n.3.

The district court was badly mistaken. It is well established that "district courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability, provided that such certification substantially facilitates the resolution of the civil dispute." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 270 (3d Cir. 2021); *see also Kamakahi v. Am. Soc'y for Reprod. Med.*, 305 F.R.D. 164, 182 n.14, 193 (N.D. Cal. 2015) ("an issue class may be certified even where liability will not be fully determined by the classwide issue").

This Court should grant the petition to correct the district court's error, and also to provide clarity to district courts on the circumstances where issues class certification is appropriate. By Plaintiffs' assessment, this Court has not issued a published, precedential decision describing the circumstances in which issues class

15

certification is appropriate for over 25 years—not since the *Valentino* decision cited by the district court. 97 F.3d 1227 (9th Cir. 1996); Order at 25.[4] Yet even *Valentino* offers only limited guidance as to *when* certification of issues classes is proper. *See Valentino*, 97 F.3d at 1234–35. The decision does not provide, for instance, a list of factors to consider when deciding whether an issues class should be certified. *See Russell*, 15 F.4th at 268 (listing factors that provide "a functional framework to aid the district courts tasked with resolving issue-class certification questions").

This case illustrates the need for additional guidance. If there was any doubt after oral argument that issues class certification was proper, that doubt was eliminated when, on May 4, 2023, in the face of Plaintiffs' motion for partial summary judgment on Defendants' DMCA defense, Dkt. 265, with the class certification briefing and argument complete, and with trial less than six weeks away, Defendants stated for the first time that they would seek to avoid taking to decision their nearly three-year old DMCA safe harbor affirmative defense if an infringement class were not certified. *See* Dkt. 309.

---

[4] The Court mistakenly also cited this Circuit's published decision in *Zinser v. Accufix Research Institute*, but that case that deals with the entirely separate issue of certification of *subclasses*, which is now addressed by Rule 23(c)(5). 253 F.3d 1180, 1192 n.8 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001); Order at 25.

As Plaintiffs promptly thereafter explained to the court, this new position overwhelmingly confirmed that resolution of the merits of the DMCA safe harbor issues on a classwide basis was superior to individualized actions, furthered judicial economy, and would materially advance the litigation in an efficient and fair manner. *Id.*; *see Valentino*, 97 F.3d at 1229. Absent an issues class, each of the putative class members will face the prospect of individually developing evidence to defeat Defendants' DMCA defense in discovery, as Plaintiffs did here, and overcoming any preliminary rulings on that defense, if they hope to enforce their copyrights—as will the named Plaintiffs in any future infringement actions they may bring. *See Kamakahi*, 305 F.R.D. at 193 (certifying issues class on statutory question, where certification of damages class was denied, because "[a]djudicating once for all class members whether the Guidelines violate the Sherman Act would be far more efficient for both the parties and the courts than requiring Defendants to litigate the same issue against however many individual donors (or smaller classes of donors) may decide to proceed with their own claims if certification is denied"); *see Russell*, 15 F.4th at 268 (explaining that issues class certification rulings should take into account "the potential preclusive effect . . . of the proposed issue class," any "repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues," and "the impact individual proceedings may have upon one another, including whether . . . granting

or not granting relief to any claimant as a practical matter determines the claims of others"). Only a classwide judgment with issue-preclusive effect can avoid these inefficiencies of repeatedly developing proof that YouTube may not moor in the DMCA safe harbor.

Worse still, YouTube's conduct suggests that if any individual plaintiff is willing to expend the resources to develop such proof, the company is prepared to then withdraw the defense and risk a comparatively small copyright judgment rather than allow a preclusive judgment denying its safe harbor. But for certification under Rule 23(c)(4), YouTube will continue to take steps to prevent a decision on the lack of merits of its DMCA defense in an individualized action, thus evading judicial review that could call into question the structure of its platform. *See Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 640 (N.D. Cal. 2015) (Rule 23(c)(4) class may be appropriate "where vindication of important public policy interests (as embodied, for instance, in a statute) may be jeopardized in the absence of class certification").

This case is thus a paradigmatic situation where an issues class is appropriate to ensure critically important classwide issues that *can* be commonly resolved *are* commonly resolved—especially when they might otherwise be litigated on an individual basis by putative class members without resolution on the key question. The district court did not even acknowledge these relevant facts in its

18

Order, let alone engage with them. *See* Order at 25. Its failure to certify a Rule

23(c)(4) class was manifest error.

## III.   THE DISTRICT COURT ERRED IN CONCLUDING THAT MS. SCHNEIDER WAS NOT A MEMBER OF THE ISRC CLASS AND IN MISINTERPRETING CIRCUIT PRECEDENT ON §1202 CLAIMS.

Plaintiffs allege, and defendants do not dispute, that YouTube knowingly

displays videos on its platform without copyright management information

("CMI") metadata that it removes or that YouTube knows that uploaders remove

from every upload containing a sound recording of a musical work. Dkt. 247-22.

The CMI at issue here includes International Standard Recording Code ("ISRC")

metadata that YouTube itself uses to manage copyrights on its platform and

"CLFN" (Clip Filename) metadata automatically generated in certain uploaders'

video editing software that often contains CMI. Dkt. 245 at 20–22. The district

court nonetheless concluded that YouTube's uniform treatment of CMI metadata,

and its uniform handling of that same metadata on its own platform, was not a

sufficient basis to certify the CMI classes. Order at 20–23. This decision

constituted manifest error.

### A. Ms. Schneider is a Member of the CMI Classes.

First, the district court's ruling about the classwide evidence of ownership to

support the CMI claims is no different than the court's manifestly erroneous

19

analysis of the same issue in connection with Plaintiffs' infringement claims, and should be reversed for the reasons addressed above.

Second, the district court erred in finding that Ms. Schneider is not a member of, and cannot be the class representative for, the ISRC class. Order at 22–23. Defendants argue that because Ms. Schneider's only registered sound recording at issue in this case (*Concert in the Garden*) was eliminated at summary judgment based on the statute of limitations, she no longer met the class definition requiring ownership of a copyright in a sound recording of a musical work. Dkt. 268 at 21.

But Ms. Schneider performs the works she composes. The fact that she registered copyrights in the *compositions* of her works, but did not register all of the *sound recordings* when she performed them, does not mean she lacks copyright protection for those performances. She still owns the copyrights in those derivative sound recordings. *See Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir. 2004) ("Sound recordings and their underlying compositions are separate works with their own distinct copyrights."). And Section 1202 liability is not limited to registered works, unlike infringement liability. *See* 17 U.S.C. §1202(b); *see Pac. Studios Inc. v. W. Coast Backing Inc.*, 2012 WL 12887637, at *3 (C.D. Cal. Apr. 18, 2012) (rejecting argument that §1202 protects CMI only where the relevant work has been registered).

20

Thus, regardless of whether *Concert in the Garden* is the only sound recording for which Ms. Schneider owns a *registered* copyright, she holds *unregistered* copyrights to sound recordings of numerous works still in suit, all of which Plaintiffs listed—with their corresponding ISRC codes, which are each unique to sound recordings, not compositions—in their responses to discovery seeking information about Ms. Schneider's ISRC claims. Dkt. 268-19 at 17–22 (initial interrogatory response); Dkt. 272-11 (amended interrogatory response).[5]

In short, the ownership requirement of the ISRC class does not depend on whether the class member has a registered or unregistered copyright; Ms. Schneider put forth her ownership of unregistered copyrights in sound recordings of remaining works in suit as the basis for her §1202 claims, and she is therefore a proper representative of the ISRC class. The district court's contrary conclusion ignoring these facts and legal issues is reversible error.

### B. The District Court Sorely Misconstrued *Stevens v. Corelogic*

The district court had no basis to reject certification of the ISRC class based on the observation that the scienter requirement for §1202 claims "weighs against

---

[5] The district court asked at the class certification hearing, "are any of Schneider's remaining works post summary judgment, are any of those sound recordings?" Dkt. 325 at 40:22–24. Plaintiffs' counsel responded, "Everything … in response to Interrogatory Number 9, Your Honor," and explained that the response to this contention interrogatory was an exhibit to Plaintiffs' Reply brief, Dkt. 272-11, and that it contained "a list of all of the ISRCs for the sound recordings that are at issue for the 1202(b) claim." *Id.* at 40:25–42:1.

certification," Order at 20, a statement that scrupulously avoids committing to a position on the legal significance of this issue.

Regardless, the district court was wrong that proof of scienter for §1202(b) claims requires "specific evidence" from "each putative class member." Order at 21–22. In *Stevens v. Corelogic, Inc.*, this Court explained that a plaintiff must only show "the *defendant* was aware or had reasonable grounds to be aware of the probable future impact of its actions," 899 F.3d at 674 (emphasis added), *i.e.*, that removing CMI "will induce, enable, facilitate, or conceal" infringement under the statute, *id.* at 673. This Court was also clear that a plaintiff could make this showing "by demonstrating a past 'pattern of conduct' or 'modus operandi.'" *Id.*

The district court made much of the fact that in *Stevens* itself, the case turned on the plaintiff-photographers' failure to offer evidence that they "ever used CMI metadata to prevent or detect copyright infringement." *Id.* at 675. But the plaintiffs' practices were at issue in *Stevens* only because there was otherwise no direct evidence that the defendant knew infringement would result from its removal of CMI. *Id.* at 676 ("Photographers have not put forward *any* evidence that CoreLogic knew" of a risk of infringement.). By contrast, here, Defendants' own pattern of conduct shows their understanding of the importance of ISRCs to manage and police copyrights. Dkt. 272 at 13. For example, Defendants' form licenses *require* submission of ISRC codes for this very purpose. *Id.* This

classwide evidence is sufficient *prima facie* proof under Section 1202 to show (at a minimum) that Defendants understood that stripping CMI would frustrate such policing, thereby facilitating and concealing infringement.

Indeed, the district court's application of *Stevens* is particularly egregious because requiring plaintiffs to prove their own conduct to establish a defendants' scienter would effectively preclude *any* classwide enforcement of §1202(b). The district court itself recognized this issue at oral argument. *See* Dkt. 325 at 43:15–18 (recognizing that requiring a plaintiff to establish scienter based on its own practices "comes dangerously close to a bright-line rule that you can never have a CMI class"). This Court should grant this petition to correct the district court's mistaken reading of *Stevens* and ensure that video platforms can be held to account for their systematic removal of artists' copyright management information.

## CONCLUSION

Plaintiffs respectfully request that this Court grant their petition to file an interlocutory appeal.

Respectfully submitted,

Dated: June 2, 2023

*/s/ Philip C. Korologos*

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing, Jr.
rewing@koreintillery.com
David Walchak
dwalchak@koreintillery.com
KOREIN TILLERY, LLC
205 North Michigan, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Philip C. Korologos
pkorologos@bsfllp.com
Eric J. Brenner
ebrenner@bsfllp.com
Jeffrey Waldron
jwaldron@bsfllp.com
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

Stephen M. Tillery
stillery@koreintillery.com
Carol O'Keefe
cokeefe@koreintillery.com
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Joshua Irwin Schiller
jischiller@bsfllp.com
BOIES SCHILLER FLEXNER LLP
44 Montgomery St., 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6800
Facsimile: (415) 293-6899

*Counsel for Plaintiffs-Petitioners*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations of Federal Rule of Appellate Procedure 5(c)(1) and 9th Circuit Rules 5-2(b) and 32-3 because it contains 5,163 words, excluding the parts of the brief exempted by Federal Rules of Appellate Procedure 5(b)(1)(E) and 32(f).

This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in Times New Roman 14-point font.

*/s/ Philip C. Korologos*
Philip C. Korologos

# ADDENDUM

1

2

3

4              UNITED STATES DISTRICT COURT

5             NORTHERN DISTRICT OF CALIFORNIA

6

7    MARIA SCHNEIDER, et al.,              Case No.  20-cv-04423-JD

8              Plaintiffs,

9         v.                              **ORDER RE MOTIONS TO CERTIFY**
                                          **CLASS AND EXCLUDE EXPERTS**
10   YOUTUBE, LLC, et al.,

11             Defendants.

12

13        In this copyright dispute, named plaintiffs Maria Schneider, Uniglobe Entertainment, and

14   AST Publishing have asked to certify four classes under Federal Rule of Civil Procedure 23(b)(3),

15   or, in the alternative, an issues class under Rule 23(c)(4).  Dkt. No. 243-1.  Defendants YouTube

16   and Google (YouTube) oppose certification and have asked to strike the testimony of two of

17   plaintiffs' experts.  Dkt. Nos. 261-1, 268.  Certification is denied across the board, and the motion

18   to strike is terminated without prejudice to renewal, as circumstances might warrant.

19                              **BACKGROUND**

20        The summary judgment order provides a wealth of background on this litigation, and is

21   incorporated here.  *See* Dkt. No. 222.  In pertinent part, the gravamen of plaintiffs' case is that

22   YouTube is a known hotbed of copyright piracy but denies most copyright owners access to its

23   premier anti-piracy tool, known as Content ID.  *See* Dkt. No. 99 ¶¶ 1-2.  Content ID is "a digital

24   fingerprint tool that compares videos being uploaded on YouTube to a catalogue of copyrighted

25   material submitted by those entities permitted access to the tool."  *Id*. ¶ 2.  According to plaintiffs,

26   only a select group of "powerful" copyright owners are permitted to use Content ID, which allows

27   them to readily identify infringing works and pursue anti-piracy measures.  *Id.* ¶¶ 1, 56.  Plaintiffs

28   say that they and other "ordinary" copyright owners who do not have access to Content ID "are

relegated to vastly inferior and time-consuming manual means" of searching for infringing videos on the massive YouTube platform. *Id.* ¶¶ 1, 9. Plaintiffs allege that this two-tiered system has allowed repeated infringement of their works. Specifically, plaintiffs say that after they submitted a takedown notice and YouTube removed the challenged video, "the same person or another person has subsequently re-uploaded Plaintiffs' copyrighted feature-length films, music recordings, or books." *Id.* ¶ 79.

In effect, plaintiffs allege that YouTube has violated the copyright laws by withholding broad access to Content ID. *See id.* ¶ 80 ("[C]opyright holders should not be forced to *repeatedly* demand that the *same* platform take down infringing uses of the *same* copyrighted work, while other rights holders are provided access to standard digital fingerprinting and blocking tools.") (emphasis in original). Plaintiffs also allege that YouTube automatically strips metadata out of uploaded videos, including copyright management information (CMI), which makes it harder to catch infringing conduct. *Id.* ¶¶ 83-86. The first amended complaint (FAC) presents claims for direct, contributory, and vicarious copyright infringement, and violations of Section 1202(b) of the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1202(b)(1)-(3), for removal of CMI and distribution of works with CMI removed.

A number of developments have changed the litigation terrain since the filing of the complaint. In the original complaint, plaintiff Pirate Monitor, a British Virgin Islands company that owns copyrights to foreign films, alleged that YouTube denied it access to Content ID and restricted the number of takedown notices it could submit in a day. Dkt. No. 1 ¶¶ 17, 65-74. Discovery indicated that Pirate Monitor may have uploaded thousands of videos and then submitted corresponding takedown notices under the DMCA to bolster its infringement claims. *See, e.g.*, Dkt. No. 268-42 at 11 (YouTube interrogatory response stating that "[t]he facts that YouTube has learned based on its investigation to date leave little doubt that Pirate Monitor [and its agents] were responsible both for uploading clips of certain of the works-in-suit (and other related content) to YouTube in the first place and then for misusing the DMCA process to request the removal of those clips by YouTube"). YouTube filed counterclaims against Pirate Monitor based on the alleged scheme, and Pirate Monitor subsequently dismissed all of its claims against

2

YouTube with prejudice.  Dkt. Nos. 34, 66.  Pirate Monitor remains in the case as a counterclaim defendant and has filed a motion for summary judgment on the counterclaims.  *See* Dkt. Nos. 160, 260.

Another significant development was the Court's order on YouTube's summary judgment motion against Schneider.  *See* Dkt. No. 222.  YouTube fired a blunderbuss of defenses at Schneider's infringement claims, *see* Dkt. No. 163-10, but its main argument was that it held a "blanket catalog license" to all 76 of the musical compositions that Schneider asserted as works-in-suit.  Dkt. No. 222 at 5; *see also Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019) (licensee is not liable for copyright infringement "if the challenged use of the work falls within the scope of a valid license").

The parties submitted reams of evidence on this issue, which established that there were substantial disputes of material facts.  The disputes centered on a chain of contracts and agreements for Schneider's works.  In 2008, Schneider appointed her management company, ArtistShare Music Publishing (AMP), as the "sole and exclusive Administrator" of her musical compositions via a Music Publishing Administration Agreement (AA).  Dkt. No. 164-7 § 6.  The AA gave AMP "the exclusive right to administer the Compositions" and "to execute in [Schneider's] name any licenses and agreements affecting the Compositions."  *Id.*  AMP assigned "all its duties" under the AA to Modern Works Music Publishing (MWP), which was a 50% co-owner of AMP.  Dkt. No. 164-6 ¶¶ 2-4.  In 2014, MWP granted YouTube a broad license to compositions "owned or controlled" by MWP via a Publishing License Agreement (PLA).  Dkt. No. 163-3 at 11, § 2(a).  The PLA was said to be the "blanket" license that covered Schneider's musical compositions.

The factual conflicts concerned Schneider's knowledge and authorization of these arrangements.  Schneider stated that she had not been advised about the assignment from AMP to MWP or the existence of the PLA, and that MWP has never been her publisher.  *See* Dkt. No. 222 at 6.  For its part, YouTube proffered emails indicating that MWP "supplied" some of Schneider's songs to YouTube, and royalty summaries showing that Schneider had received payments from YouTube for several of her works.  *Id.* at 7.  YouTube also submitted email communications

3

between MWP's president and Schneider to show that Schneider knew about the PLA and knew that MWP used Content ID to monitor her works.  *Id.*  Schneider stated that the communications and royalty statements did not disclose to her the existence of the PLA or MWP's licensing activities.  *Id.*

Another subject of intense disagreement between the parties was the validity of the PLA in light of a consent provision in the AA between Schneider and AMP.  *Id.* at 7-8.  Section 7 of the AA required advance notice and written consent by Schneider for a license of her works.  *See* Dkt. No. 164-7 § 7 ("Notwithstanding anything to the contrary expressed or implied herein, we must notify you and obtain your prior written approval for any license we grant on your behalf.").  There was no evidence on summary judgment that AMP or MWP notified Schneider or obtained her written consent before MWP executed the PLA with YouTube.  Dkt. No. 222 at 8.

Schneider contended that this was fatal to the PLA because under New York law, which governed the AA, Section 7 was a condition precedent to AMP's, and therefore MWP's, power to grant a license to YouTube.  *Id.*  In Schneider's view, a failure to satisfy the condition precedent negated any licenses ostensibly granted by the PLA.  *Id.*  YouTube argued that Section 7 was a covenant and not a condition precedent, and so a failure to notify Schneider and obtain her consent might have breached the AA, but did not invalidate the PLA.  *Id.*  The distinction was critical because the failure to satisfy a condition precedent would mean that "any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright," but the breach of a covenant would give rise only to "a cause of action for breach of contract, not copyright infringement."  *Sohm v. Scholastic, Inc.*, 959 F.3d 39, 45 (2d Cir. 2020) (internal quotations omitted).

Determining whether Section 7 was a condition precedent or a covenant required a detailed analysis of other provisions in the AA, comparisons to other contractual terms that have been deemed conditions precedent under New York law, and consideration of the policy goals of federal copyright law.  *See* Dkt. No. 222 at 9-12; *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1051 (9th Cir. 2020) ("A copyright license must be construed in accordance with the purposes underlying federal copyright law.") (internal quotation omitted).  On the facts in the

4

1    record, the Court concluded that Section 7 was a covenant because it did not contain

2    "'unmistakable language'" in the "'linguistic conventions of condition.'"  Dkt. No. 222 at 9

3    (quoting *Sohm*, 959 F.3d at 46).  Consequently, a failure to satisfy the notice and consent

4    provision in Section 7 of the AA would not nullify the PLA.

5        In the end, a multiplicity of disputes of fact about Schneider's contractual arrangements

6    and licenses, and related issues, precluded summary judgment.  Dkt. No. 222 at 7.  A jury will

7    need to resolve these disputes.

8        YouTube raised another license defense on summary judgment based on its Terms of

9    Service (TOS).  *Id.* at 13.  The TOS grant a broad license to YouTube for content uploaded by

10   users, and the record established that users must agree to the TOS when creating an account or

11   uploading a video.  *Id.*; Dkt. No. 164-5 § 6(C).  YouTube argued it was entitled to summary

12   judgment on more than 100 of Schneider's infringement claims because she and her agents

13   uploaded several of her works-in-suit to YouTube.  Dkt. No. 222 at 13.

14       This question was properly resolved on summary judgment because the record established

15   that Schneider created a YouTube account in 2012, and that at least 15 of her works-in-suit were

16   included in videos that she and third parties acting with her permission uploaded to YouTube.  *Id.*

17   at 13-15.  Summary judgment was granted in favor of YouTube for Schneider's direct

18   infringement claims based on those works.  *Id.* at 15.

19       YouTube also asked for summary judgment on the grounds that many of the alleged

20   infringing videos Schneider identified were time-barred by a one-year limitations period in the

21   TOS.  *Id.*; Dkt. No. 164-5 § 14.  The record did not support Schneider's suggestion that the

22   contractual limitations period was unconscionable, and her interrogatory responses established that

23   she had actual knowledge of 121 alleged infringing videos more than one year before she filed

24   suit.  *See* Dkt. No. 222 at 16-20.  Summary judgment was granted for YouTube on the 121

25   untimely alleged infringements.  *Id.* at 20.  The parties agreed that Schneider had not identified

26   any infringements of 27 of her works-in-suit, and so summary judgment was granted in favor of

27   YouTube for those works.  *Id.* at 4 n.2.

28

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    Material disputes of fact again precluded summary judgment on Schneider's claims with

2    respect to CMI under Section 1202(b) of the DMCA.  The parties presented conflicting evidence

3    on whether Schneider had identified any works-in-suit for which CMI had been removed, whether

4    she and her agents use CMI to monitor infringement, and whether she had adduced evidence of

5    scienter as required by the statute.  *See id.* at 21-22.

6    Although the claims of plaintiffs Uniglobe and AST were not challenged on summary

7    judgment, the parties' filings indicate that they have their own factual disputes about ownership

8    and licenses akin to Schneider's.  The FAC alleges that Uniglobe owns copyrights to motion

9    pictures, *see* Dkt. No. 99 ¶¶ 66-69, but Uniglobe subsequently stated the allegations were "not

10   entirely correct" because the copyright registrations were for dramatic works and screenplays.

11   Dkt. No. 268-35 at 54:4-57:11, 66:5-20 (deposition testimony of Uniglobe's CEO).  Uniglobe also

12   stated that it owns its works-in-suit through transfers of ownership rights and work-for-hire

13   agreements.  Dkt. No. 268-33 at ECF p. 5 (Uniglobe's amended interrogatory responses).

14   Although the takedown notices that Uniglobe submitted to YouTube identified "Uniglobe

15   Entertainment" as the owner of the works, Uniglobe's representative could not say whether the

16   plaintiff entity, Uniglobe Entertainment LLC (Wyoming), or the separate entity Uniglobe

17   Entertainment LLC (Delaware), owned the works.  *See* Dkt. No. 268-35 at 77:6-10, 93:6-94:16;

18   *see also* Dkt. No. 248-22 (takedown notice identifying "Uniglobe Entertainment" as the copyright

19   owner).  Uniglobe identified more than 60 YouTube videos uploaded by Uniglobe or its agents

20   that contain parts of its works-in-suit, and more than 50 licensing agreements that cover its works-

21   in-suit, including multiple licenses that permit sub-licensing.  Dkt. No. 268-33 at ECF pp. 9-14,

22   Ex. A.

23   AST's situation is similarly convoluted.  AST originally asserted infringement claims for

24   print and audio books, Dkt. No. 99 ¶¶ 75-76, but stated later that "only the audiobook versions of

25   the Works in Suit are at issue."  Dkt. No. 268-34 at ECF p. 5 (letter clarifying AST's interrogatory

26   responses).  AST also said that it obtained ownership of its works-in-suit through "agreements

27   with the authors and/or agents of the authors," and that it uploaded and authorized others to upload

28   clips of its works-in-suit to YouTube.  Dkt. No. 268-37 at 4, 7 (AST's interrogatory responses).

Plaintiffs ask to certify four classes under Rule 23(b)(3).  *See* Dkt. No. 243-1.  The first proposed class is a "Registered Works Infringement Class" (Registered Works class), to be represented by Uniglobe and Schneider.  *Id.* at 3.  It is defined as "[a]ll persons who own copyrights in one or more works:  1) registered with the United States Copyright Office; 2) contained or used in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained or used in a video that was displayed on YouTube subsequent to the first successful Takedown Notice and then removed from YouTube as a result of either a second successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019."  *Id.*

The second proposed class is a "Foreign Unregistered Works Infringement Class" (Foreign Works class), to be represented by Uniglobe and AST.  *Id.*  It is defined as "[a]ll persons who own copyrights in one or more works:  1) first published outside the United States; 2) contained or used in a video that was displayed on YouTube and then removed from YouTube due to a successful Takedown Notice; and 3) contained or used in a video that was displayed on YouTube subsequent to the first successful Takedown Notice and then removed from YouTube as a result of either a second successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019."  *Id.*

The third proposed class is an "International Standard Recording Code Class" (ISRC class), to be represented by Schneider.  *Id.*  It is defined as "[a]ll persons who own copyrights in one or more digital form sound recordings of musical works that:  1) has been assigned an International Standard Recording Code ('ISRC'); and 2) was a component of a video that was uploaded to YouTube that (a) did not include the assigned ISRC and (b) was removed from YouTube as a result of either a successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019."  *Id.* at 3-4.

The fourth proposed class is a "Clip Filename Class" (CLFN class), again to be represented by Schneider.  *Id.* at 4.  It is defined as "[a]ll persons who own copyrights in one or more works that:  (1) had an associated Clip Filename ('CLFN') field populated with copyright management information ('CMI') and (2) was contained in a video uploaded to YouTube (a)

7

either without the associated CMI metadata or with the CMI metadata altered and (b) that was removed from YouTube as a result of either a successful Takedown Notice made on or after July 2, 2019, or an allegation of infringement made in a court of law on or after July 2, 2019." *Id.* at 4.

**DISCUSSION**

## I.    LEGAL STANDARDS

The overall goal of Rule 23 is "to select the method best suited to adjudication of the controversy fairly and efficiently." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (cleaned up).  "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).

Plaintiffs bear the burden of proving by a preponderance of the evidence that the proposed classes satisfy all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). *Id.*; *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664-65 (9th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 424 (2022).  The Court's analysis "must be rigorous and may entail some overlap with the merits of the plaintiff's underlying claim," but the merits are to be considered only to the extent that they are "relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 465-66 (internal quotations and citations omitted).  The class certification procedure is decidedly not an alternative form of summary judgment or an occasion to hold a mini-trial on the merits. *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1053 (9th Cir. 2015).  The decision of whether to certify a class is entrusted to the sound discretion of the district court. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Under Rule 23(b)(3), a class is appropriate when "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Each of the four required elements of Rule 23(a) -- numerosity, commonality, typicality, and adequacy -- must also be established.

The commonality requirement of Rule 23(a)(2) is satisfied when there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Because "any competently crafted class complaint literally raises common questions," the Court's task is to look for a common contention "capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Alcantar*, 800 F.3d at 1052 (internal quotations omitted).  What matters is the "capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted) (emphasis in original).  This does not require total uniformity across a class.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338.  The commonality standard imposed by Rule 23(a)(2) is "rigorous."  *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 512 (9th Cir. 2013).

Rule 23(b)(3) sets out the related but nonetheless distinct requirement that common questions of law or fact predominate over individual ones.  Fed. R. Civ. P. 23(b)(3).  This inquiry focuses on "'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Olean*, 31 F.4th at 664 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  Each element of a claim need not be susceptible to classwide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class."  *Torres v. Mercer Canyons Inc*., 835 F.3d 1125, 1134 (9th Cir. 2016).  Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate," even if "other important matters will have to be tried separately, such as damages or some affirmative defenses particular to some individual class members."  *Tyson Foods*, 577 U.S. at 453 (internal quotations omitted).

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)," *Comcast*, 569 U.S. at 34. "If the defendant provides evidence that a valid defense -- affirmative or otherwise -- will bar recovery on some claims," then the Court must "determine, based on the particular facts of the case, 'whether individualized questions … will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).'" *Van v. LLR, Inc.*, 61 F.4th 1053, 1067 (9th Cir. 2023) (quoting *Olean*, 31 F.4th at 669). "The question is not whether a great number of plaintiffs will win or lose at trial on the individualized issue." *Id.* at 1067 n.11. Rather, the Court "must assess the necessity and manageability of the potential class-member-by-class member discovery process and trial." *Id.* Individualized issues "weigh heavy in the predominance balancing" if discovery and trial "must assess thousands of claims one claim at a time." *Id.*; *see also Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 458, 469 (9th Cir. 2023) (decertifying class where trial of individualized issues would be "prohibitively cumbersome," and plaintiffs did not prove that class issues predominated).

The "requirements of Rule 23(b)(3) overlap with the requirements of Rule 23(a)" and "courts must consider cases examining both subsections in performing a Rule 23(b)(3) analysis." *Olean*, 31 F.4th at 664. The Court finds it appropriate to assess commonality and predominance in tandem, with a careful eye toward ensuring that the specific requirements of each are fully satisfied. *See, e.g., Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120-21 (9th Cir. 2017).

It has been said that "copyright claims are poor candidates for class-action treatment," and for good reason. *Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 297 F.R.D. 64, 65 (S.D.N.Y. 2013). Every copyright claim turns "upon facts which are particular to that single claim of infringement, and separate from all the other claims." *Id.* at 66. Every copyright claim is also subject to defenses that require their own individualized inquiries. *See, e.g.*, *Kihn v. Bill Graham Archives LLC,* No. 20-17397, 2022 WL 18935, at *2 (9th Cir. Jan. 3, 2022) (unpublished) (reversing certification of a copyright class action because "individual issues of license and consent would predominate for the absent class members, who have not yet had the opportunity Plaintiffs had to sift through their claims and exclude those that lack merit"). A claim of copyright infringement typically entails a fact-specific evaluation of "the objective similarities of specific

1    expressive elements in the two works" that distinguishes "between the protected and unprotected

2    material in a plaintiff's work," and tests "for similarity of expression from the standpoint of the

3    ordinary reasonable observer, with no expert assistance." *Skidmore as Tr. for Randy Craig Wolfe*

4    *Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc) (internal quotations omitted).

5         This is not to say that certification of a copyright infringement class is per se impossible.

6    The Court certainly does not hold that here. But these factors underscore the challenges that

7    plaintiffs face in seeking to obtain class certification.

8    **II.     THE REGISTERED WORKS AND FOREIGN WORKS CLASSES**

9         The usual approach to class certification is to march through the Rule 23 factors in

10   statutory order, starting with the requirements of Rule 23(a). A different organization is warranted

11   for this copyright case. Plaintiffs face overwhelming problems with commonality and

12   predominance that in themselves bar certification. Consequently, it makes sense to start the

13   analysis with these dispositive issues. The other Rule 23 factors will be discussed in closing. *See*

14   *McCarty v. SMG Holdings, I, LLC*, No. 17-cv-06232-JD, 2022 WL 913092, at *7 (N.D. Cal. Mar.

15   29, 2022) ("Because the factors the Court has discussed are sufficient to support the denial of the

16   pending class certification request in its entirety, the Court declines to discuss the remaining Rule

17   23 factors."); *see also Waite v. UMG Recordings, Inc.*, No. 19-CV-01091 (LAK), 2023 WL

18   1069690 (S.D.N.Y. Jan. 27, 2023) (denying certification of a putative copyright class action on

19   commonality and predominance grounds alone).

20        All of the class definitions proposed by plaintiffs, including those with respect to CMI, are

21   based on a shared element: persons who own copyrights in one or more works. Dkt. No. 243-1 at

22   3-4. Ownership of a copyright is an essential predicate for these claims, *see Feist Publ'ns, Inc. v.*

23   *Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991), just as the existence of a license or other

24   permission to use the works is an essential defense against them, *Great Minds*, 945 F.3d at 1110;

25   *see also* 17 U.S.C. § 1202(b) (prohibiting removal or alteration of CMI "without the authority of

26   the copyright owner or the law," or distribution of such works).

27        Consequently, all of the proposed classes may be evaluated for Rule 23 purposes on the

28   threshold question of whether plaintiffs can demonstrate copyright ownership on a classwide

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1    basis, or whether issues of ownership and licenses will entail individualized proof that precludes

2    certification.  YouTube's main argument against certification of each of the proposed classes is

3    that proof of ownership and licensing will necessarily require individualized evidence for each

4    claimant, as the named plaintiffs' own circumstances indicate.  *See* Dkt. No. 268 at 7-21.

5    Plaintiffs say these questions can be answered on a classwide basis by leveraging takedown

6    notices and other evidence in YouTube's possession.  *See* Dkt. No. 243-1.

7           The proposed infringement classes are a bellwether test of certification, and so will be

8    taken up first.  "Considering whether 'questions of law or fact common to class members

9    predominate' begins, of course, with the elements of the underlying cause of action."  *Erica P.*

10   *John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  The elements of direct copyright

11   infringement are "(1) ownership of a valid copyright, and (2) copying of constituent elements of

12   the work that are original."  *Feist Publ'ns*, 499 U.S. at 361.

13          For a claim of contributory copyright infringement, a plaintiff "must establish that there

14   has been direct infringement by third parties" as a threshold matter.  *Perfect 10, Inc. v.*

15   *Amazon.com, Inc.,* 508 F.3d 1146, 1169 (9th Cir. 2007).  Liability for contributory infringement

16   also requires proof that a defendant "'(1) has knowledge of another's infringement and (2) either

17   (a) materially contributes to or (b) induces that infringement.'"  *VHT, Inc. v. Zillow Grp., Inc.,* 918

18   F.3d 723, 745 (9th Cir. 2019) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795

19   (9th Cir. 2007)).  In the online context, material contribution means the defendant "'has *actual*

20   knowledge that *specific* infringing material is available using its system, and can take simple

21   measures to prevent further damage to copyrighted works, yet continues to provide access to

22   infringing works.'"  *Id*. (quoting *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 671 (9th Cir.

23   2017)) (emphasis in original).  "Inducement liability requires evidence of 'active steps … taken to

24   encourage direct infringement,'" such as "'advertising an infringing use or instructing how to

25   engage in an infringing use.'"  *Id*. (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

26   545 U.S. 913, 936 (2005)).

27          Vicarious copyright infringement also requires a gateway showing of direct infringement

28   by a third party.  *See Amazon*, 508 F.3d at 1173.  In addition, a plaintiff must demonstrate that a

1  defendant: "'has (1) the right and ability to supervise the infringing conduct and (2) a direct

2  financial interest in the infringing activity.'"  *VHT*, 918 F.3d at 746 (quoting *Giganews*, 847 F.3d

3  at 673).  A key component of vicarious liability is evidence that the defendant had the practical

4  and technical ability to identify or screen out infringing material, but did not do so.  *Id.*  A failure

5  to change operations to avoid distribution of infringing content "'is not the same as declining to

6  exercise a right and ability'" to stop direct infringement by others.  *Id.* (quoting *Amazon*, 508 F.3d

7  at 1175).

8      **A.**    **The DMCA Takedown Procedures Do Not Supply Classwide Proof.**

9        For the proposed Registered Works and Foreign Works classes, plaintiffs say that "nearly

10  every element of every claim and affirmative defense will be established through common

11  evidence."  Dkt. No. 243-1 at 5.  This common evidence is said to be "successful" takedown

12  notices, meaning a takedown notice under the DMCA that resulted in the removal of the allegedly

13  infringing content by YouTube, or the blocking of access to it.  *See* 17 U.S.C. § 512(c)(3); Dkt.

14  No. 243-1 at 10.  Plaintiffs say a takedown establishes copyright ownership, registration,

15  infringement, and the absence of affirmative defenses, "because YouTube admits it reviews such

16  notices to ensure they are complete and valid and relies on them to remove content and issue

17  copyright strikes."  Dkt. No. 243-1 at 7.[1]

18        The problem with this approach is that the takedown of content in response to a DMCA

19  notice is miles away from substantive proof of copyright ownership or infringement.  The

20  takedown procedure is part of the safe harbor provisions that Congress established in the DMCA

21  to allow online service providers like YouTube to manage their risks with respect to infringing

22  materials posted by users.  *See* 17 U.S.C. § 512(a)-(d); *Ventura Content, Ltd. v. Motherless, Inc.*,

23  885 F.3d 597, 603-04 (9th Cir. 2018).  A service provider may avoid infringement liability if it

24  "responds expeditiously to remove, or disable access to, the material that is claimed to be

25  infringing or to be the subject of infringing activity," upon receipt of a valid takedown notice that

26  makes a claim of infringement pursuant to the DMCA's procedural requirements.  17 U.S.C.

27  

28  ──────────────
[1] This is in some tension with the FAC, which expressly criticized YouTube's "rudimentary tools" with respect to "the takedown notification process."  Dkt. No. 99 ¶ 14.

United States District Court
Northern District of California

§ 512(c)(1)(C); *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1151 (9th Cir. 2016) (same).[2]  A failure to promptly remove or disable access in response to a valid takedown notice forfeits the protection of the safe harbor.  *Ventura Content*, 885 F.3d at 604 ("[T]he service provider, to maintain its shield, must respond expeditiously and effectively to the policing."); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 37 (2d Cir. 2012) (service provider "who receives a takedown notice from a copyright holder is *required* to 'remove, or disable access to, the material' in order to claim the benefit of the safe harbor") (citation omitted) (emphasis in original).

To preserve the protections of the safe harbor, a service provider must also give the user an opportunity to respond to a takedown under the DMCA's "put-back procedures."  *Lenz*, 815 F.3d at 1151.  These procedures are codified in Section 512(g) of the DMCA and require the service provider to give notice of the takedown to the user, and allow the user an opportunity to restore the content by sending a counternotification to the effect that the takedown was in error.  *See* 17 U.S.C. § 512(g); *Lenz*, 815 F.3d at 1151.  When a valid counternotification is received, the service provider must then advise the copyright holder of the response, and must restore the content "not less than 10, nor more than 14 business days" thereafter, unless the service provider is given notice that the copyright holder has filed an infringement lawsuit in court against the user.  *Lenz*, 815 F.3d at 1151 (quoting 17 U.S.C. § 512(g)(2)(B)-(C)).

As these plainly worded statutory provisions demonstrate, the DMCA does not contemplate that a takedown of content is a substantive determination of copyright ownership or infringement.  An adjudication of those questions is expressly reserved for the courts in a lawsuit filed by the copyright claimant, with the attendant judicial scrutiny of ownership and "the objective similarities of specific expressive elements in the two works" to determine infringement liability.  *Skidmore*, 952 F.3d at 1064.  Irrespective of the takedown procedures, a copyright holder always retains the burden of establishing infringement.  *See UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1022 (9th Cir. 2013).  A service provider retains all defenses to infringement, even if it did not act in a manner to preserve the benefits of the safe harbor.  *See* 17

United States District Court
Northern District of California

---

[2] A valid notice must be signed under penalty of perjury, identify the copyrighted work and the alleged infringing use, and provide other information as stated in 17 U.S.C. § 512(c)(3).

14

U.S.C. § 512(l) ("The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense."); *see also* 4 Nimmer on Copyright § 12B.04 (the "penalty" for failing to remove or disable access to material in response to a takedown notice "is not automatic liability -- instead, the service provider simply loses the benefit of the safe harbor that Section 512 affords.") (citations omitted).

Consequently, a takedown under the DMCA indicates only an allegation of infringement. The allegation may be a strong one, *see UMG*, 718 F.3d at 1020, but in the end it is "only a *claim* of infringement," *id.* at 1020 n.12 (emphasis in original); *see also* 17 U.S.C. § 512(c)(3)(ii) (takedown notice must identify "the copyrighted work *claimed* to have been infringed") (emphasis added). The claim is subject to termination by operation of the statute unless the copyright claimant files a lawsuit in court to stop the restoration of access to the accused use. It is true that a takedown notice must be made under penalty of perjury, 17 U.S.C. § 512(c)(3)(vi), but that does not make it more than an allegation, just as the requirement that a counternotification must be made under penalty of perjury does not make it dispositive of non-infringement, *id.* § 512(g)(3)(C). It bears mention that Congress anticipated the possibility of fraudulent takedown notices by providing for an award of damages and attorneys' fees to a user who was wrongly accused of infringement. *Id.* § 512(f).

Plaintiffs try to overcome the provisional nature of takedowns by contending that YouTube "vets" every takedown notice to ensure "the Takedown Notice author's rights are superior to the uploader's rights" before removing a video. Dkt. No. 243-1 at 10. In effect, plaintiffs suggest that YouTube actually adjudicates copyright claims in response to a takedown notice, and expresses a substantive conclusion about ownership, infringement, and defenses every time it removes or blocks access to a video.

The record demonstrates otherwise. YouTube receives millions of DMCA takedown notices annually. *See* Dkt. No. 248-8 at 5 (YouTube Copyright Transparency Report showing that approximately two million removal requests were submitted via YouTube's webform in the first

15

half of 2022); Dkt. No. 325 at 23:11-24 (certification hearing transcript).  To handle this volume, YouTube relies primarily on an automated process in the first instance to review notices for conformance to the DMCA's procedural requirements.  *See, e.g.*, Dkt. No. 243-12 at 45:10-13, 46:11-24 (YouTube copyright review manager testifying that an automated "classifier" assesses takedown notices for "completeness on the basis of the DMCA statutory requirements"); *see also* Dkt. No. 268-2 ¶¶ 2-3 (YouTube declaration stating that "YouTube uses a largely automated process to review each notice to determine whether they contain the information and representations required for a DMCA notice").

YouTube's copyright operations team and contractors manually review takedown notices in limited situations.  *See, e.g.*, Dkt. No. 243-12 at 46:22-24 ("[I]f the classifier is uncertain that one of these requirements has been met, then it will route it for a human to take a look at.").  Human review typically is reserved for checking whether the notices contain the information required by the DMCA and screening out suspicious and facially invalid notices.  *Id.* at 47:8-10.

On occasion, YouTube may contact the sender of a takedown notice and engage YouTube's legal counsel on questions of fair use and the like.  *Id.* at 62:18-25, 63:4-5 (YouTube may "ask the claimants to consider fair use and respond back to us with more detail about why they believe the content that they are targeting for removal does not qualify under a copyright exception such as fair use").  Contacts with legal counsel are infrequent in light of the volume of takedown notices.  *Id.* at 60:4-21 (estimating approximately 50 to 100 monthly contacts with legal counsel about fair use).

Overall, this record demonstrates that YouTube "vets" takedown notices to ensure that they comply with the DMCA's procedural requirements, but does not make a substantive determination of copyright ownership, infringement, or defenses.  For the most part, YouTube uses an automated process to handle DMCA notices.  To the extent follow-up work is pursued, it is limited to a fraction of the notices received and involves inquiries into highly individualized issues like fair use.  The same goes for YouTube's handling of counternotifications from users contesting a takedown.  *See id.* at 111:18-24 ("So when the YouTube review team -- copyright ops review team reviews the counter-notification, we are checking to see whether the counter is valid

on its face and meets the requirements of the DMCA and otherwise would be fine to forward to the claimant to -- to initiate the counter process which is described by statute.").

There are other reasons why takedowns are doubtful sources of classwide proof.  Consider the situation of plaintiff AST.  YouTube noted that none of the takedown notices submitted for works ostensibly owned by AST actually identified or even mentioned AST.  *See* Dkt. Nos. 244-17, 244-18, 244-19, 244-20, 244-21 (identifying a Russian name "АЗАПИ").  Plaintiffs say this is "misleading" because АЗАПИ is AZAPI in English, and other documents show that AZAPI was authorized to submit notices on AST's behalf through YouTube's content verification program.  *See* Dkt. No. 271-1 at 5 n.4.  Even if that were the case, the salient point is that it took plaintiffs multiple steps through language translation and documents to get to their ownership claim on behalf of a named plaintiff.  Plaintiffs have not demonstrated that anything less will be required for the claims of absent class members.

Consequently, reliance on takedown procedures will not provide classwide proof of copyright ownership, infringement, or defenses.  Plaintiffs have not demonstrated that these "central issues in the action" are subject to common evidence, and so the Registered Works and Foreign Works classes cannot be certified.[3]  *Tyson Foods*, 577 U.S. at 453 (internal quotation omitted).  This conclusion applies to all of the infringement claims, whether direct or indirect.  *See Amazon,* 508 F.3d at 1169 (contributory and vicarious copyright infringement liability require proof of an underlying act of direct infringement as a threshold matter).

Plaintiffs' mention of two cases that certified copyright classes does not lead to a different outcome.  In *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. 13-5693 PSG (RZx), 2015 WL 4776932 (C.D. Cal. May 27, 2015), a copyright class was certified where the defendant admitted that it had used the works "without first seeking licenses or paying royalties," and the record did not demonstrate that "contentious ownership inquiries" would arise.  *Id.* at *11-12.  In *In re Napster, Inc. Copyright Litig.*, Nos. C MDL-00-1369 MHP, C 04-1671 MHP, 2005 WL 1287611

---

[3] This conclusion also relates to plaintiffs' lengthy discussion in their brief that YouTube's affirmative defenses, including eligibility for the DMCA safe harbor in 17 U.S.C. § 512, may be established with common evidence.  *See* Dkt. No. 243-1 at 16-20.  The absence of common proof of liability makes the question of common proof of defenses beside the point.

(N.D. Cal. June 1, 2005), a class was certified for a single notice of infringement on behalf of copyright owners who retained a single agent as their "common licensing and collection agent." *Id.* at *4-5. The streamlined circumstances that gave rise to certification in those cases are a far cry from the factually contested issues of ownership and licensing here, and so the cases do not offer a basis for certification of the classes plaintiffs propose.

### B.   Individualized Questions Predominate.

Without a viable method of classwide proof, plaintiffs' infringement claims will necessarily require highly individualized inquiries into the merits. The question of a license is a good example of this. There can be no infringement of a copyrighted work if the challenged use falls within the scope of a valid license. *Great Minds*, 945 F.3d at 1110. Consequently, whether YouTube has a license for a particular work will be a matter of intense inquiry at trial.

As the record for plaintiff Schneider demonstrates, the answer to this inquiry will depend upon facts and circumstances unique to each work and copyright claimant. YouTube's assertion of a license on summary judgment raised a flurry of factual and legal disputes about whether Schneider had actually granted licensing authority to a publisher. *See* Dkt. No. 222 at 4-13. The disputes prompted the filing of a mountain of evidence and arguments by the parties, and necessitated a close reading of multiple contracts. *Id.* Even then, the Court concluded that the license defense entailed disputes of material fact that a jury will need to decide. *Id.* at 7.

So too for plaintiffs Uniglobe and AST, who have their own factual complications with respect to whether YouTube has a license under the TOS or otherwise to works these plaintiffs uploaded themselves. *See, e.g.*, Dkt. No. 268-33 at ECF pp. 9-14, Ex. A (Uniglobe granted approximately 60 licenses for its works-in-suit, and uploaded or authorized its agents to upload some of its works-in-suit to YouTube); Dkt. No. 268-37 at 7 (AST and its authorized agents uploaded portions of audiobooks to YouTube, including its works-in-suit).

As other courts have aptly concluded, such "individual issues of license" in themselves typically preclude certification of copyright class actions under Rule 23(b)(3). *Kihn*, 2022 WL 18935, at *2; *see also Palmer Kane LLC v. Scholastic Corp.*, No. 11 Civ. 7456(KBF), 2012 WL 2952898, at *7 (S.D.N.Y. July 16, 2012). Plaintiffs have not demonstrated otherwise here.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plaintiffs suggest that YouTube "can cross-reference the ISRCs and other required CMI in

2   YouTube's database against that information for the copyrighted work claimed by a class

3   member" to establish whether a direct license exists.  Dkt. No. 243-1 at 13.  Even accepting this as

4   true for present purposes, the approach might work as a first cut, but as the record for Schneider

5   demonstrates, a grant of a license may be much more complicated and disputed than surface

6   appearances indicate.  *See* Dkt. No. 222 at 4-13; *see also Spinelli v. Nat'l Football League*, 903

7   F.3d 185, 203 (2d Cir. 2018) ("[I]f a sublicensor has no right to issue a particular license, the

8   sublicensee cannot acquire rights in copyrighted works simply because the sublicensor did so

9   anyway.").  Plaintiffs have not demonstrated that a database cross-check will provide a clear-cut

10  answer to the question of licenses on a classwide basis.

11  **III.    THE ISRC AND CLFN CLASSES**

12          Plaintiffs' requests to certify the proposed ISRC and CLFN classes are equally unavailing.

13  These classes are based on the CMI provisions of Section 1202(b) of the DMCA.  Section

14  1202(b)(1) provides that "[n]o person shall, without the authority of the copyright owner or the

15  law … intentionally remove or alter" CMI "knowing" or "having reasonable grounds to know, that

16  it will induce, enable, facilitate, or conceal" infringement.  17 U.S.C. § 1202(b)(1).  Section

17  1202(b)(3) provides that "[n]o person shall, without the authority of the copyright owner or the

18  law," distribute or perform works "knowing that [CMI] has been removed or altered without

19  authority of the copyright owner or the law," and "knowing" or "having reasonable grounds to

20  know, that it will induce, enable, facilitate, or conceal" infringement.  *Id.* § 1202(b)(3).

21          As this plain language states, the predicate of a claim under either prong of Section

22  1202(b) is that CMI was removed or altered without a copyright owner's permission.

23  Consequently, the ISRC and CLFN classes share with the Registered Works and Foreign Works

24  classes the threshold element of copyright ownership.  *See* Dkt. No. 243-1 at 3-4.  In the opening

25  brief for certification, plaintiffs did not say how they might establish ownership for the ISRC or

26  CLFN classes with common evidence.  In a reply brief, they made a somewhat offhand mention of

27  an intention to use again the takedown procedures as common proof of ownership for the ISRC

28  class, *see* Dkt. No. 271-1 at 12, but said nothing with respect to the CLFN class.  Plaintiffs made

19

1    no other proposals for determining copyright ownership for either class on a common basis.

2    Giving plaintiffs every benefit of the doubt by assuming they proposed to rely on takedown

3    notices for both classes, the takedown approach works no better here than it did for the

4    infringement classes.  This is enough to deny certification of the ISRC and CLFN classes.

5        The scienter requirement in Section 1202(b) also weighs against certification.  As the

6    frequent use of "knowing" conveys, the statute puts an emphasis on scienter as an element of

7    liability.  Some courts have found a "double-scienter" requirement in Section 1202(b).  *See, e.g.*,

8    *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020).  What matters here is our circuit's

9    conclusion that, for both subsections (b)(1) and (b)(3), a plaintiff must prove that the defendant

10   possessed "the mental state of knowing, or having a reasonable basis to know, that his actions

11   'will induce, enable, facilitate, or conceal' infringement."  *Stevens v. Corelogic, Inc.*, 899 F.3d

12   666, 673 (9th Cir. 2018).

13       This scienter element demands specific proof.  A "generic" assertion that a "general

14   possibility" of infringement exists because CMI was removed "won't wash."  *Id.*  "[A] plaintiff

15   bringing a Section 1202(b) claim must make an affirmative showing, such as by demonstrating a

16   past 'pattern of conduct' or 'modus operandi,' that the defendant was aware or had reasonable

17   grounds to be aware of the probable future impact of its actions."  *Id.* at 674.  This entails

18   "evidence from which one can infer that future infringement is likely, albeit not certain, to occur

19   as a result of the removal or alteration of CMI."  *Id.* at 675.

20       Cases that discuss Section 1202(b) in the summary judgment context illustrate the type of

21   evidence sufficient to prove scienter.  In *Stevens,* for example, two photographers brought a

22   putative class action against a defendant that developed software used by online real estate

23   services.  *Id.* at 670.  The software automatically stripped photographs of CMI metadata during the

24   uploading process without the copyright holders' authorization.  *Id.* at 671.  As a result, the

25   photographers alleged that the defendant had violated Sections 1202(b)(1) and (3).  *Id.* at 672.

26       The Ninth Circuit affirmed the district court's grant of summary judgment for the

27   defendant.  *Id.* at 670.  To establish scienter, each plaintiff was required to make an "[a]ffirmative

28   [s]howing" with "specific evidence that removal of CMI metadata" from their copyrighted works

United States District Court
Northern District of California

20

"will impair their policing of infringement." *Id.* at 675. The photographers did not prove this because they had no evidence that they "ever used CMI metadata to prevent or detect copyright infringement" and identified "*no* instance in which the removal of CMI metadata from any photograph 'induce[d], enable[d], facilitate[d], or conceal[ed] an infringement.'" *Id.* (emphasis and alterations in original). In the one instance where the defendant removed a photograph in response to a DMCA takedown notice, there was no evidence that the claimant "used metadata to identify the allegedly infringing copies, that her photograph even contained metadata, or that the infringement identified had anything to do with removal or alteration of metadata." *Id.* at 676 n.6.

In *Victor Elias Photography, LLC v. Ice Portal, Inc.*, the Eleventh Circuit reached a similar outcome in another case where a photographer alleged Section 1202(b) claims against a defendant whose software automatically removed CMI metadata from photographs before they were posted online. 43 F.4th 1313, 1315-16 (11th Cir. 2022). The Eleventh Circuit affirmed the district court's grant of summary judgment for the defendant. *Id.* at 1316. Although the record established that the photographer used CMI to police infringement and had identified specific infringements of his works with missing CMI, there was "no evidence linking [the defendant's] actions of removing the photographs' CMI with the instances of infringement." *Id.* at 1323. The photographer had no evidence of where or how the infringing works were copied, and so could not show that the infringements occurred because the defendant's software removed CMI from his works. *Id.* at 1324-25. The circuit concluded that the photographer had not shown an "identifiable connection between the defendant's actions and the infringement or the likelihood of infringement" necessary to establish the scienter element of Section 1202(b). *Id.* at 1325.

Neither *Stevens* nor *Victor Elias* should be read as imposing exacting requirements of certain types of evidence to prove scienter for a Section 1202(b). To the contrary, both cases noted the possibility that a wide range of evidence might do the job. *See Stevens*, 899 F.3d at 675; *Victor Elias*, 43 F.4th at 1323. But they nonetheless inform the Rule 23 question here in that they underscore the individualized showing that each ISRC and CLFN class member would need to make to prove the Section 1202(b) claims. To satisfy the statute's scienter element, each putative class member would need to show, with specific evidence for each work-in-suit, how the removal

of an ISRC or CLFN induced, enabled, facilitated, or concealed an identifiable infringement of that work.

This requirement raises obvious barriers to classwide proof, as illustrated by the individualized disputes of fact that precluded summary judgment on Schneider's CMI claims. *See* Dkt. No. 222 at 21-22. Plaintiffs again have not demonstrated that "common, aggregating-enabling, issues" with respect to the scienter element of Section 1202(b) are "more prevalent or important the non-common, aggregation-defeating, individual issues." *Olean*, 31 F.4th at 664 (internal quotation omitted).

Another barrier to certification for the ISRC class is that Schneider, who was identified as the representative claimant for the class, does not have a work-in-suit that fits the class definition. The ISRC class is defined as "persons who own copyrights in one or more *digital form sound recordings* of musical works." Dkt. No. 243-1 at 3 (emphasis added). It does not include persons who own copyrights in the musical compositions underlying those recordings. *Id.* "It is well settled that '[s]ound recordings and musical compositions are separate works with their own distinct copyrights,'" *Williams v. Gaye*, 895 F.3d 1106, 1121 (9th Cir. 2018) (citation omitted and alteration in original), and a copyright in the composition does not automatically give the owner a copyright in a sound recording of it, *see Newton v. Diamond*, 388 F.3d 1189, 1191 (9th Cir. 2004).

The problem for Schneider is that her works-in-suit do not include sound recordings. She initially alleged ownership and infringement of two copyrighted sound recordings: *VIKINGS ANTHEM* and *Concert in the garden. See* Dkt. No. 99 ¶ 60 n.7; Dkt. No. 268-19 at 5-6 (interrogatory response). The other 76 works-in-suit she alleged were all copyrighted musical compositions. *Id.* Summary judgment was granted in favor of YouTube for both of the sound recordings. The record did not demonstrate that *VIKINGS ANTHEM* had been infringed, *see* Dkt. No. 222 at 4 n.2, and the alleged infringements of *Concert in the garden* were time-barred, *id.* at 20. The Court directed the parties to jointly file "a numbered list of Schneider's remaining works-in-suit and infringement claims" following summary judgment. *Id.* at 23. *VIKINGS ANTHEM* and *Concert in the garden* are not on the list. Dkt. No. 232. In effect, plaintiffs agreed that Schneider's remaining works-in-suit do not include any sound recordings.

Plaintiffs suggest that there may be ISRCs associated with other recordings of Schneider's works, *see, e.g.,* Dkt. No. 271-1 at 11-12; Dkt. No. 271-10 at 14-18; but that is of no moment here. She did not allege ownership or infringement of those sound recordings separate from the underlying compositions, and so she does not have a work-in-suit that fits the proposed ISRC Class definition. *See* Dkt. No. 99 ¶ 60 n.7; Dkt. No. 268-19 at 5-6. Consequently, Schneider is not a typical or adequate representative of the putative ISRC class. *See* Fed. R. Civ. P. 23(a)(3)-(4); *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) ("A named plaintiff must be a member of the class she seeks to represent").

## IV.    OTHER RULE 23(A) ELEMENTS

Given the shortfall on commonality and predominance, a detailed discussion of the other Rule 23(a) elements is not particularly called for. Even so, the Court makes the ensuing observations.

### A.    Numerosity (23(a)(1))

Rule 23(a)(1) requires that a proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In most cases, numerosity is readily established. Here, the question is more nuanced. In the absence of a classwide method of establishing copyright ownership and infringement, it is difficult to estimate numerosity with any degree of precision. The commonality and predominance concerns discussed above indicate that a headcount for the classes would require individual inquires into the merits. While it is true that ascertainability is not an element of certification in our circuit, *see Briseno v. ConAgra Foods*, 844 F.3d 1121, 1131 (9th Cir. 2017), numerosity should be established by something more than a good guess. *See, e.g., Mays v. Wal-Mart Stores, Inc.*, 804 F. App'x 641, 642 (9th Cir. 2020) (unpublished) ("bare assertions of numerosity without any clear factual grounding" and speculative expert testimony did not support a finding of numerosity).

Plaintiffs came rather close to doing just that by saying that numerosity must exist because YouTube hosts billions of videos and receives millions of takedown notices annually. *See* Dkt. No. 271-1 at 3; Dkt. No. 244-12; Dkt. No. 248-8 at 5. They dressed this up a bit with opinions by an expert that there are at least one thousand members in each proposed class. *See* Dkt. No. 243-1

United States District Court
Northern District of California

at 4. YouTube objected to the opinions as not properly disclosed during discovery, *see* Dkt. No. 268 at 6, and it is not entirely clear that the class size estimates are based on reliable methods. But "[i]nadmissibility alone is not a proper basis to reject evidence submitted in support of class certification." *Sali*, 909 F.3d at 1004. On the record before the Court, it is plausible that the putative classes cross the threshold required under Rule 23(a)(1). *See Ochoa v. McDonald's Corp.*, No. 3:14-cv-02098-JD, 2016 WL 3648550, at \*4 (N.D. Cal. July 7, 2016) (numerosity is satisfied if a class comprises of 40 or more members).

### B.      Typicality (23(a)(3))

Rule 23(a)(3) requires plaintiffs to prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is intended to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To satisfy this requirement, the named plaintiffs' claims need only be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Just Film*, 847 F.3d at 1116 (internal citations and quotations omitted). Typicality may be found when other members have the same or similar injury as the named plaintiffs arising out of the same course of conduct. *Id.* Typicality should not be found, and a class should not be certified, in cases where other members would suffer because the named plaintiffs would be "'preoccupied with defenses unique to'" them. *Id.* (quoting *Hanon*, 976 F.2d at 508).

Typicality is questionable here. Each work-in-suit will be the subject of individualized proof of ownership and infringement, which necessarily makes the claim of each plaintiff a *sui generis* inquiry. The summary judgment record for Schneider, and YouTube's filings with respect to Uniglobe and AST, highlight these concerns. *See* Dkt. No. 222.

### C.      Adequacy (23(a)(4))

Except for the issues discussed with respect to Schneider and the ISRC class, YouTube did not challenge the adequacy of the proposed class representatives or proposed class counsel under Rule 23(a)(4). Consequently, this element is not in dispute.

1    **V.      RULE 23(C)(4)**

2            "Even if the common questions do not predominate over the individual questions so that

3    class certification of the entire action is warranted," Rule 23(c)(4) "authorizes the district court in

4    appropriate cases to isolate the common issues … and proceed with class treatment of these

5    particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) (citing

6    Fed. R. Civ. P. 23(c)(4)).  An issues class must "have proper representatives and otherwise comply

7    with Rule 23's requirements." *Zinser*, 253 F.3d at 1192 n.8; *see also Betts v. Reliable Collection*

8    *Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).  Certification of an issues class may be

9    warranted when certifying particular issues "would significantly advance the resolution of the

10   underlying case." *Valentino*, 97 F.3d at 1229; *see also Reitman v. Champion Petfoods USA, Inc.*,

11   830 F. App'x 880, 882 (9th Cir. 2020) (unpublished) (affirming denial of certification because

12   "numerous individualized issues affecting determinations of liability make Rule 23(c)(4)

13   certification inefficient")

14           Plaintiffs' cursory request for a Rule 23(c)(4) certification is not well taken.  *See* Dkt. No.

15   243-1 at 25.  They appear to regard it as something of a consolation prize in the event certification

16   is denied under Rule 23(b)(3).  That is not the case.  Plaintiffs did not explain why an issues class

17   might advance the litigation as a whole, particularly in light of all the individualized questions that

18   foreclosed certification of a (b)(3) class.  Consequently, certification of an issues class is denied.

19   **VI.     THE MOTION TO EXCLUDE EXPERTS**

20           YouTube asked to exclude the opinions of plaintiffs' proposed experts, Dr. Charles Cowan

21   or Dr. Hal Singer, under Federal Rule of Evidence 702 and *Daubert*.  *See* Dkt. No. 261-1.  The

22   Court did not rely on any of these opinions, or the work of either expert, in deciding the

23   certification motion.  Consequently, the questions of admissibility that YouTube raised are

24   deferred to another day, as warranted by developments.  *See Milan v. Clif Bar & Co.*, 340 F.R.D.

25   591, 602 (N.D. Cal. 2021).

26

27

28

United States District Court
Northern District of California

## CONCLUSION

Plaintiffs' requests for certification of a class under Rule 23(b)(3), and for issues under Rule 23(c)(4), are denied.

**IT IS SO ORDERED.**

Dated:  May 22, 2023

_____
JAMES DONATO
United States District Judge

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form15instructions.pdf](http://www.ca9.uscourts.gov/forms/form15instructions.pdf)

**9th Cir. Case Number(s)** | 23-

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Petition for Permission to Appeal an Order Denying Class Certification Pursuant to Rule 23(f)

**Signature** | s/Philip Korologos | **Date** | June 2, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at [forms@ca9.uscourts.gov](mailto:forms@ca9.uscourts.gov)