# EXHIBIT 7

                             Pages 1 - 37

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

MARIA SCHNEIDER, individually  )
and on behalf of all others    )
similarly situated,            )
                               )
          Plaintiffs,          )
                               )
  VS.                          )     NO. C 20-4423 JD
                               )
YOUTUBE, LLC,                  )
                               )
          Defendant.           )
_____)
                             San Francisco, California
                             Monday, June 5, 2023

                  <u>**TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES**</u>:

For Plaintiffs:
                    BOIES, SCHILLER & FLEXNER LLP
                    55 Hudson Yards - 20th Floor
                    New York, New York  10001
              BY:   **PHILIP C. KOROLOGOS, ATTORNEY AT LAW**
                    **JEFFREY P. WALDRON, JR., ATTORNEY AT LAW**
                    **JOSH SCHILLER, ATTORNEY AT LAW**

                    KOREIN TILLERY LLC
                    505 North 7th Street - Suite 3600
                    St. Louis, Missouri  63101
              BY:   **CAROL L. O'KEEFE, ATTORNEY AT LAW**
                    **ANDREW M. ELLIS, ATTORNEY AT LAW**

              **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

REPORTED BY:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
              United States District Court - Official Reporter

**APPEARANCES:**   (CONT'D)

For Plaintiff:

                        KOREIN TILLERY LLC
                        205 North Michigan Avenue - Suite 1950
                        Chicago, Illinois  60601
                   BY:  **GEORGE A. ZELCS, ATTORNEY AT LAW**

For Defendant:

                        KEKER & VAN NEST LLP
                        633 Battery Street
                        San Francisco, California  94111
                   BY:  **ROBERT VAN NEST, ATTORNEY AT LAW**
                        **JULIA L. ALLEN, ATTORNEY AT LAW**
                        **LUKE P. APFELD, ATTORNEY AT LAW**
                        **AMOS ESPELAND, ATTORNEY AT LAW**


                        WILSON SONSINI GOODRICH & ROSATI
                        650 Page Mill Road
                        Palo Alto, California  94304
                   BY:  **DAVID H. KRAMER, ATTORNEY AT LAW**
                        **LAUREN GALLO WHITE, ATTORNEY AT LAW**
                        **QIFAN HUANG, ATTORNEY AT LAW**

**Thursday - May 25, 2023**                              **1:35 p.m.**

**P R O C E E D I N G S**

---000---

    **THE CLERK:**  All rise.  This court is now in session.
The Honorable James Donato presiding.  Please be seated.

                (Pause in the proceedings.)

    **THE CLERK:**  Calling civil case number 20-4423, Maria
Schneider, et al. versus YouTube, et al.

    Will Counsel please step forward and state your
appearances for the record.

    **MR. KOROLOGOS:**  Good afternoon, Your Honor, Phil
Korologos with Boies Schiller Flexner for the Plaintiffs.  With
me, my colleagues from Boies Schiller, Josh Schiller and
Jeffrey Waldron; and from the Korein Tillery firm, George
Zelcs, Carol O'Keefe, and Andrew Ellis.

    **MR. VAN NEST:**  Good afternoon, Your Honor, Bob Van
Nest of Keker Van Nest & Peters for YouTube.  I'm here with
Julia Allen, Travis Silva, Luke Apfeld, Amos Espeland from our
firm; and from the Wilson Sonsini firm David Kramer, Lauren
White and Qifan Huang and our client is represented by Matt
Gubiotti, who is here in the gallery.  Good afternoon.

    **THE COURT:**  Okay.  Counting down to the big day, one
week from today.

    Let's just roll through what we have left.  So I received
the proposal.  It all looks fine to me.

1      I will make reference to it in the next pretrial order.

2  Oh, I did have one question.  So, I'm looking at docket 341,

3  the joint proposed trial plan.  So, in paragraph 4.3, there was

4  a reference to statutory damages awarded on a per infringement

5  basis.  Should that be per work basis?

6          **MR. VAN NEST:**  It should, Your Honor.

7          **THE COURT:**  All right.  Okay.  I will make sure that

8  we clarify that.

9      Not a big problem.  I just wanted to make sure we are all

10  on the same page.

11      All right.  Let's roll through a couple of things.  Oh,

12  the jury questionnaires, the written ones, will be back on

13  June 7th, so we will meet -- let's do a Zoom -- well, you are

14  all in town, aren't you?

15          **MR. KOROLOGOS:**  Yes, Your Honor.

16          **THE COURT:**  Why don't you come in at 2:00 o'clock on

17  June 7th, and we will go through the questionnaires just for

18  the screening, no challenges, no peremptories, just for the

19  initial screening.  And we will send them to you on the 7th,

20  but you need to -- as you can see, Ms. Clark is not here today.

21  You need to send her an e-mail with an address so she can send

22  the responses to you.  So, it is a big file.  It is like a zip

23  file of all the written responses.

24          **MR. VAN NEST:**  We can send that today?

25          **THE COURT:**  You can send that to Ms. Clark today,

1    yeah, that will be great.  And let's see --

2         MR. KOROLOGOS:  You said 2:00 o'clock on the 7th,

3    Your Honor.

4         THE COURT:  2:00 o'clock on the 7th.

5         Okay.  All right.  Here are your dispositions for Dauberts

6    and motions in limine:  Okay.  Mr. Winograd, I just -- I have

7    doubts he is doing anything other than commenting on evidence.

8    I don't see any electrical engineering.  His field of expertise

9    being engaged by any of his proposed opinions and a lot of it

10   is just publishing comments about YouTube.

11        So I'm excluding now the request -- I'm granting now the

12   request to exclude paragraph 95 of Mr. Winograd's report with

13   respect to his lack of an analysis on the scope and effort

14   required to reconfigure the capabilities of Copyright Match

15   Tool.

16        When you start from that premise -- oh, there has been a

17   switch of personnel, okay -- when you start from that premise,

18   you can't really go on to say "but in any event, take it from

19   me.  They could have done all of this with Copyright Match

20   Tool."  So that's definitely out.

21        The rest just really looks like it's not within the

22   provisions of Rule 702, not particularly subject to anything

23   that the jury will need to have spoonfed to them.  I don't see

24   any particular expertise in any of his opinions, and I'm sure

25   there will be a lot of percipient witnesses who will answer a

1  lot of questions about these Copyright Match Tools.

2     So, 95 is out and I'm leaning strongly to just having them

3  out completely.  Do you have a comment?

4        MS. O'KEEFE:  I do, Your Honor.  Mr. Winograd has

5  created a number of patents and developed software that is

6  intended to identify content on digital platforms and also in

7  consumer electronics.

8     He has extensive experience with precisely the type of

9  identification and copyright management tools that are embodied

10  in Content ID and in Copyright Match.

11     His watermark technology is very similar to the digital

12  fingerprinting technology that Copyright Match uses, and I do

13  believe that the jury would be aided by his testimony regarding

14  the functioning of Copyright Match and its ability to

15  identify --

16        THE COURT:  You are going to get that all from

17  witnesses.  Just, you can ask -- you can go to the fountain

18  itself, Google or YouTube.  YouTube will tell you everything

19  you want to know; okay.  All right.  So he is out.

20        MS. O'KEEFE:  All right.

21        THE COURT:  Let's move on to Paul Jessop.  Now, the

22  CLFN portion of Mr. Jessop's testimony is out by agreement;

23  right?

24        MS. O'KEEFE:  Correct, Your Honor.

25        THE COURT:  Okay.  So it's just the ISRC portion and

1   the Mary Doe hypothetical?

2       **MS. O'KEEFE:**  We will not offer the Mary Doe

3   hypothetical during the --

4       **THE COURT:**  You will what?

5       **MS. O'KEEFE:**  We will not offer the Mary Doe

6   hypothetical during trial, Your Honor.

7       **THE COURT:**  You are not going to offer it?

8       **MS. O'KEEFE:**  No.

9       **THE COURT:**  Oh, I was going to tell you it's okay.

10  That's fine.  Too late now.  I don't see any problem with

11  Mr. Jessop.  What's the issue, Defendant?  As long as it's just

12  ISRC.

13      **MR. SILVA:**  Thank you, Your Honor, Travis Silva for

14  the Defendant.  I think he suffers from some of the same flaws

15  that the other expert suffers from and in particular when he

16  opines on YouTube's state of mind, that is an issue that's not

17  for an expert to --

18      **THE COURT:**  Okay.  I'm perfectly fine.  Mr. Jessop

19  can't say that he knows YouTube knew.

20      **MS. O'KEEFE:**  Understood.

21      **THE COURT:**  But it is perfectly okay for him to say

22  "here is why I think they should have known," that's fine.

23  Okay, but nothing past that.  Okay.

24      **MS. O'KEEFE:**  Understood, Your Honor.

25      **THE COURT:**  Do you want to use the Mary Doe thing?

1  You actually want to use that?

2      **MS. O'KEEFE:**  We may re-visit it if Your Honor is so

3  inclined.

4      **THE COURT:**  I will let you think about it.  I'm not

5  going to categorically rule that out but you did decide to

6  withdraw.  That's fine if you want to take that up.  All right.

7  So he will not testify about CLFN but in other respects, motion

8  to exclude Jessop is denied.

9      **MR. SILVA:**  Your Honor, may I clarify one question

10  about the CLFN issue?

11      **THE COURT:**  Yes.

12      **MR. SILVA:**  I take it then that the matching process

13  that Mr. Jessop did would also fall out of the case?

14      **THE COURT:**  I don't know.  Will it?

15      **MS. O'KEEFE:**  Excuse me, Your Honor.

16      **THE COURT:**  The matching process --

17      **MR. SILVA:**  The expert engaged in a matching process

18  about the CLFN, and I'm just seeking confirmation that that

19  also falls out with --

20      **MS. O'KEEFE:**  Yes.

21      **MR. SILVA:**  Seems like this is not the appropriate

22  time but at the appropriate time we would like to challenge the

23  Mary Doe hypothetical.

24      **THE COURT:**  You did and I overruled it.  You already

25  said it in your exclusion papers.

1        **MR. SILVA:**  We would like to be heard.

2        **THE COURT:**  If they want to use it, they can.  Let's

3  see.  I mean, that's subject to adequate foundation and

4  everything else, just as -- look, this is just the gate; okay.

5  You can have other things you can object about.  As a gate

6  matter, Mary Doe can walk through the gate.  Now, whether she

7  walks farther than that will depend what you do at trial.

8        **MS. O'KEEFE:**  Understood, Your Honor.

9        **THE COURT:**  Okay.  Mr. Nuttal, let's see.  Well, I

10  mean, Nuttal is out, right, because he was only CLFN?

11        **MR. WALDRON:**  Well, Jeffrey Waldron for Plaintiffs,

12  not necessarily, Your Honor.  I think the issue is most potent

13  to CLFN, but he repeatedly offered an incorrect definition

14  that -- of CMI that contradicts the statutory definition; and

15  Plaintiffs believe that he should not be able to opine on what

16  does or does not constitute CMI based on that as it would be

17  confusing to the jury because the only definition that's

18  relevant is the one that's in Section 1202.

19        **THE COURT:**  I mean, we don't need him anymore; right?

20        **MR. ESPELAND:**  Your Honor, I disagree.  Amos Espeland

21  for the Defendants.  Plaintiff's motion in limine only attacks

22  portions of Mr. Nuttal's testimony that purports to address

23  CLFN.

24     I want to make two points.  First, as an initial matter,

25  let's be clear that Nuttal did not offer an opinion about what

1  constitutes CMI under Section 1202.  His testimony concerns

2  whether the industry custom and practice of using CMI, but

3  Plaintiff's motion attacks more than just --

4          **THE COURT:**  What do you want him to say?

5          **MR. ESPELAND:**  Well, if you look at --

6          **THE COURT:**  He can't say anything about CLFN.  That's

7  out of the case.  What do you want him to say?

8          **MR. ESPELAND:**  Before he testifies about CLFN, he has

9  got testimony on ISRC and that's --

10          **THE COURT:**  What is he going to say?

11          **MR. ESPELAND:**  Sorry, Your Honor.

12          **THE COURT:**  What is he going to say about ISRC?

13          **MR. ESPELAND:**  He is going to testify about in the

14  industry that the types of files that typically do and do not

15  have ISRC and customary practices concerning ISRC.  I would

16  also like to point you to --

17          **THE COURT:**  What's wrong with that?

18          **MR. WALDRON:**  Your Honor, because there is a

19  definition of CMI in the statute that we think that any

20  testimony that is infected by his incorrect definition is

21  irrelevant, and the industry standard here is not relevant

22  because a jury just needs to make a decision based off of the

23  statutory text of the --

24          **THE COURT:**  ISRC is not something the average person

25  is going to know anything about.  He is just going to -- as I

1   understand it, Mr. Nuttal is going to set the table a little

2   bit and say, "Here is what it is.  Here is how it works.  Here

3   is why artists like that."  What's wrong with that?

4          MR. WALDRON:  Sure.  I agree that the average juror

5   does not know what an ISRC is, and that's precisely why he

6   should be excluded because this is kind of a foreign topic that

7   even if jurors have some fluency in what copyright is, what it

8   is not, copyright management information is definitely not, you

9   know, within the kin of the average juror.

10          THE COURT:  He should be excluded because the jurors

11   don't know what it is and he might shed light on it.  I don't

12   understand what that means.  Why should that precisely why he

13   should be excluded?

14          MR. WALDRON:  Because his incorrect definition will

15   simply infect their --

16          THE COURT:  You can cross-examine him; okay.  All

17   right.  He can talk about ISRC.  Look, I'm going to be here.

18   These are just macro-rulings.  All right.  So I'm not going to

19   kick him out on that but that's fine.  And that's basically all

20   he is going to do; right?

21          MR. WALDRON:  Thank you.

22          THE COURT:  That's basically all he is going to do?

23          MR. WALDRON:  Yes.

24          THE COURT:  Okay.  Good.  Okay.  That will be that for

25   that one.  And that's it; right?  The other two are out, Singer

1  and --

2         **MR. KOROLOGOS:**  That's it for the Dauberts,

3  Your Honor.

4         **THE COURT:**  Who is the other fellow?

5         **MR. KOROLOGOS:**  Singer, Peterson.

6         **THE COURT:**  They are both out?

7         **MR. VAN NEST:**  They are both out.  That's right.

8         **THE COURT:**  All right.  Motions in limine.

9  Plaintiff's motion in limine number 1, docket number 339, has

10 been withdrawn by agreement.

11     Plaintiff's motion in limine number 2, they are not

12 judicially estopped.  That's a misapplication.  YouTube is not

13 judicially estopped by the three-page little proffers they

14 made.  That's a misunderstanding of how judicial estoppel

15 works.  So that is denied.

16     The only question I have -- I mean, how much -- now that

17 the DMCA defense is out, how much of all this is going to be

18 relevant?

19        **MR. VAN NEST:**  Well, I think that depends on what the

20 Plaintiffs present, Your Honor, but the safe harbor is out,

21 that's for sure.  They purport to want to say something about

22 Content ID.

23     I understood that with respect to who gets Content ID and

24 what the qualifications requirements are, that's all out now

25 with the class denied.

1    They made some comment about willfulness which is subject

2    to our motion 6; but regardless of the result on that, there

3    shouldn't be testimony from multiple witnesses that they have

4    lined up on who gets it and why and who doesn't get it and what

5    the requirements are, what the qualifications are.  That's all

6    out of the case.

7        If they have some angle that they are going to articulate

8    today on willfulness, we should listen to it; but I don't think

9    that works either.  Certainly, the bulk of what they have

10   designated in the depositions and with witnesses about Content

11   ID is now out.

12       **THE COURT:**  Well, we will see how it goes.  This is --

13   they are not estopped.  So that motion is denied.

14       Plaintiff's motion in limine number 3 with respect to

15   YouTube contracts and uploading, I just -- I don't see any

16   basis for excluding that.  What is it that's bothering you?

17       **MS. O'KEEFE:**  So we want to exclude evidence that

18   YouTube uploaders whose works are caught by Content ID have a

19   license or some other permission from the Content ID partner to

20   keep those works online.

21       That partner retains the right to always file a DMCA

22   notice and take that work down at any time there is no license.

23       **THE COURT:**  What's the point of keeping it out?

24   What's the problem?  First of all, this should have come up on

25   summary judgment arguably.  It didn't, but why should the jury

1   not hear this?

2       **MS. O'KEEFE:**  The jury needs to hear this because it

3   bears on our infringement claims.  One of our allegations of

4   infringement is an inducement of infringement.

5       We intend to show that Content ID catches copyright

6   infringement.  YouTube does not disclose on its platform that

7   videos that are monetized by Content ID have been claimed by

8   the copyright owner or that they are infringing.  As a result,

9   fully 25 to 35 percent of the videos on YouTube --

10      **THE COURT:**  All right.  These are all fine things for

11  you to try.  Motion in limine number 3 is denied.

12      Plaintiff's motion in limine number 4, to exclude evidence

13  about unsuccessful takedown notices presented by Uniglobe.

14  Well, I mean Uniglobe is one of the Plaintiffs.  Why would this

15  not be something the jury should hear?

16      **MR. WALDRON:**  Sure, Your Honor, because, as --

17  Plaintiffs are asking to exclude any evidence related to the

18  Work America's Forgotten, which was a work not at issue in this

19  case.  It is not presented in the first amended complaint and

20  it was not on the list of infringements that Plaintiffs

21  submitted to the Court and specifically excluding evidence of a

22  takedown directed at a video that had links to America's

23  Forgotten on the landing page but was not the video itself.

24      So we think this is just a straightforward issue of

25  relevancy.  It is not relevant because it is not a work at

1    issue.  And to the extent that there's any relevance, it's

2    outweighed by the fact that it would just divert the jury to

3    issues that are not really at stake here.

4         **MR. ESPELAND:**  Your Honor, Amos Espeland for the

5    Defendants.  Let's be clear, Plaintiff's Counsel represented

6    for over a year that the video at issue, which was a 20-second

7    sequence of the familiar Fox Fanfare sequence infringed their

8    works Five Weddings, which is a work in suit which remains a

9    work in suit.

10        Digital copyright management is complicated and mistakes

11   do happen.  In this case a mistake happened.  Now, this is

12   directly relevant for expected testimony about damages,

13   Your Honor.

14        In Plaintiff's response to Defendant's first MIL,

15   Plaintiffs said -- and I'm quoting -- (as read:) "They plan to

16   explain to the jury how rampant infringement on the YouTube

17   platform affects their livelihood."

18        Well, if Plaintiffs get to get up and testify about

19   infringements that they have not proven in court today, I think

20   Defendants should be able to confront Plaintiffs with testimony

21   and with evidence that they have sometimes been mistaken about

22   whether their work was or was not infringed.

23        **THE COURT:**  Well, you know what?  Trial is coming up.

24   Exclusion on evidence is a thin read.  So that one is denied.

25        Motion in limine number 5 by the Plaintiffs is withdrawn

1  by agreement.

2      Motion in limine number 6, Plaintiff's motion in limine

3  number 6, exclude evidence that Plaintiff transferred an

4  exclusive right in a work.  I just -- I really can't see why we

5  would exclude that.

6      **MR. ELLIS:**  Good afternoon, Your Honor, Andrew Ellis

7  on behalf of the Plaintiffs.

8      The issue here is that Defendants may attempt to use

9  license agreements from Uniglobe to argue that we have -- that

10  Uniglobe has granted an exclusive license to a third party and

11  then that could imply that Uniglobe is not actually an owner

12  because it is granted exclusive license.

13      Now, just to be clear, we are not trying to wholly exclude

14  such licenses if they are used for a different purpose such as

15  if the licensee uploaded something to YouTube.

16      **THE COURT:**  Look, here is the thing, this is one of

17  the problems with motions in limine that sometimes gets

18  overlooked by the parties, who knows what will happen.

19      You can object at trial, okay, but I can't -- I can't make

20  conditional exclusions or grants because we don't know what's

21  going to happen.  So you can reserve that for trial but -- the

22  motion is denied pending developments at trial.

23      Okay.  Motion -- Plaintiff's motion in limine number 7

24  with respect to marginal cost of Content ID database.  I have

25  to say, YouTube, your proffer of a quarter page, maybe a fifth

```
 1   of a page -- I would say a quarter page -- I'm holding in my
 2   hands.  It is docket 314-6 -- is awfully skimpy.
 3       It looks like you didn't produce anything else during
 4   discovery.
 5           MR. APFELD:  Good afternoon, Your Honor, Luke Apfeld
 6   representing Defendants.  The issue here is more so with the
 7   scope and breadth of Plaintiffs.
 8           THE COURT:  Let's talk about my issue first.  You want
 9   to get all this marginal cost information in, and you are only
10   support for it was this one document, which is, one, skimpy, as
11   I just said; and two, doesn't even mention marginal cost.  Did
12   you produce anything during discovery?  This is all you showed
13   me.
14           MR. APFELD:  There is a rog response as well answering
15   this question.
16           THE COURT:  You have got to have data.  I mean, you
17   wrote the interrogatory.  Somebody signed it, I know.  Where is
18   the about big box of data showing "here is our marginal cost"?
19           MR. APFELD:  Your Honor, this is the data that
20   directly replies to Plaintiff's request.  Plaintiff's request
21   was broad in scope, sought evidence and --
22           THE COURT:  That's it?  This is it?  This little
23   25 percent page thing?
24           MR. APFELD:  They asked for operational costs.
25           THE COURT:  It's not going to be enough.  So, why
```

didn't you produce it during discovery?

       **MR. APFELD:**  Your Honor, we produced what they asked for.  They asked for the cost -- the operational cost by year of operating Content ID from an engineering perspective and from a managing product perspective.  And that's -- excuse me, that's what this -- that's what this chart shows.

       **THE COURT:**  Let me ask you this:  I mean, how do you get marginal cost off of this 314-6?  I don't even see it on there.

       **MR. APFELD:**  Your Honor, nowhere in the discovery correspondence, nowhere in the RFPs, nowhere in the rogs did Plaintiffs request the marginal cost of adding specific reference files.  That's not a -- that's not a request that they offered.  They offered overarching and broad requests.

       **THE COURT:**  In this entire case not once did the Plaintiffs ever say, "How much more would it cost to do this"?

       **MR. APFELD:**  That's in the rog, Your Honor.  In the rog, they asked what would it cost if Content ID was given to individual Plaintiffs and YouTube offered a rog response on that.

       **THE COURT:**  But no data?

       **MR. APFELD:**  It was not asked -- they did not ask --

       **THE COURT:**  The interrogatory asked you and you didn't provide any data in response to it.

       **MR. APFELD:**  We explained in the interrogatory

1   response how unless we had more specific requests about what

2   the data files were, what files were being uploaded by these

3   Plaintiffs, we wouldn't be able to determine with specificity

4   what the cost of unknown and unidentified reference files were.

5          Plaintiffs never followed up with specificity as to these

6   reference files or specificity as to the information that they

7   wanted Content ID and YouTube to consider.  Instead, it was a

8   broad, overarching sentiment which YouTube answered to the best

9   of its ability.

10          **THE COURT:**  Well, broad and overarching are apt

11   descriptions for your interrogatory response as well.

12   Plaintiff?

13          **MR. WALDRON:**  Thank you, Your Honor, Jeffrey Waldron

14   for Plaintiffs.  Your Honor, we agree that the Defendants'

15   proffer here was very lacking and not really responsive.

16          **THE COURT:**  Your colleague here says you never asked.

17   How about that point?

18          **MR. WALDRON:**  Well, we did ask.  We asked for the

19   administrative cost of Content ID, which is presumably included

20   in the administrative cost of Content ID is how much it costs

21   to add files to Content ID, how the day-to-day function works.

22   Instead, we got a single page -- not even a page of financial

23   information that has to do with employee entertainment --

24          **THE COURT:**  That's the exhibit I have, Exhibit 314-6.

25          **MR. WALDRON:**  Yes, correct.

1          **THE COURT:**  Docket number, yeah.

2          **MR. WALDRON:**  And there are essentially no broken down

3     costs from this very broad document.

4          **THE COURT:**  You can't get marginal cost off of this

5     sheet; right?

6          **MR. WALDRON:**  You cannot, no.  That's true,

7     Your Honor.

8          **THE COURT:**  So you asked for the administrative costs

9     for Content ID?

10          **MR. WALDRON:**  Yes, and then in our rog we asked for

11     more specificity.

12          **THE COURT:**  How about at depositions, did you ask any

13     YouTube witnesses?

14          **MR. WALDRON:**  Yes, we did.  Their 30(b)(6) designee

15     Fabio Magagna was asked specifically about this, and he, first

16     of all, said that that spreadsheet contained inaccuracies and

17     then didn't offer any other response.

18          **THE COURT:**  YouTube, you are a day late and a dollar

19     short.  That motion is granted.

20          Motion in limine number 8 by the Plaintiffs to exclude

21     YouTube admissions and imposing -- oh, yeah, you know, all of

22     these, I think, have been -- I think there are nine points here

23     that have all been more or less taken care of by fact

24     stipulations.

25          I think the only three things -- you-all tell me if you

```
 1  disagree -- the only three things I see left are, let's see,
 2  number 3, Mega Film authorized IP LLC to delegate authority and
 3  IP LLC did, in fact, delegate authority to Coleman, Kahn
 4  (phonetic) and others.  I didn't -- that's not in summary
 5  judgment.  So...
 6        MR. ELLIS:  That's right, Your Honor.  Andrew Ellis
 7  again for the Plaintiffs.  We are seeking here to hold these as
 8  judicial admissions which the Court can do under the Ninth
 9  Circuit's precedent in Lacelaw.
10        We also mention --
11        THE COURT:  This is not -- here is how estoppel
12  works -- I happen to know this doctrine quite well -- estoppel
13  is:  In case A, okay, you say the stoplight is green and you
14  win a verdict.  In case B, the next case, you say the stoplight
15  was red and you win another verdict.
16        Judicial estoppel is when you have succeeded in one case
17  on a fact that you then contradict to succeed a second time in
18  a subsequent case.
19        The fact that somebody stood up in front of me and said,
20  "It's 1982," does not mean later in the case they can say, "No,
21  it was actually 1986."  They are not judicially estopped.
22  That's not how to works; okay.
23        So these facts I didn't touch.  I have made -- I don't
24  even know what Mega Film and IP LLC are other than I see them
25  in the briefs because I have had no occasion to get into them.
```

```
 1   So I don't know.  What's the problem?
 2            MR. ELLIS:  Your Honor, we present two bases.
 3            THE COURT:  I know.  Judicial estoppel is out.  Don't
 4   argue that one.
 5            MR. ELLIS:  The other one is an admission in a summary
 6   judgment briefing which this is.  They made certain admissions
 7   in a summary judgment briefing, excuse me, Your Honor, and
 8   under the Ninth Circuit's precedent in Lacelaw the Court said
 9   courts will hold parties to their admissions in summary
10   judgment briefing.  And that's what these are.
11        So, what we want to hold Defendants to are the statements
12   they made in their summary judgment briefing that they will not
13   then just really, a couple of months later, contradict those
14   same statements.
15            THE COURT:  I'm not -- let me ask the Defendants.  So
16   did you make an admission about Mega Film to the effect that it
17   authorized IP LLC to delegate authority to people; Coleman,
18   Kahn and others?
19            MR. HUANG:  Your Honor, Qifan Huang representing
20   Defendants here.  The answer is no.  YouTube did not say that
21   what Plaintiffs wanted YouTube to admit here.  As a matter of
22   fact, our opposition lists side-by-side what we actually said
23   in the opposition and what Plaintiffs allege that we admitted
24   as a fact.
25        As you can see, Your Honor, the admissions that they
```

quoted selectively are very incomplete and are missing crucial

facts.  For example, the fact number 3 that you just mentioned,

just talks about Mega Film authorizing IP LLC to delegate

authority.  It doesn't tell what authority that is being

delegated is.  It doesn't tell the other stories we present in

the opposition.

And most importantly for the matter Your Honor just said,

what parties say presume for the fact -- for the purpose of

summary judgment is not an admission.  It's not binding.  It's

not stipulated.  It can be used and can be disputed by a party

at trial.

THE COURT:  All right.  Look, you can fight about

these things at trial; but I'm going to deny that one.  Okay.

YouTube's motions in limine, docket number 331.  Motion in

limine number 1, actual damages are relevant to statutory

damages.  So that one is denied.

Motion in limine number 2, you know, I don't -- I'm not

going to bar Plaintiff Schneider from stating strong opinions

about Google.  That's totally up to her.  You know, you can

cross-examine her on whether she knows anything about Content

ID or not.  So that's denied.

Motion in limine number 3, with respect to improperly

alleged infringements, you know, anything you didn't identify,

Plaintiffs, after February -- by February 25th, 2022, I have

already said you can't use.

1       So you can't -- you can't keep opening the door.  I set

2   you a deadline and I told you in summary judgment that any

3   infringements after identified after February 25, 2022, would

4   not be considered; and I'm not going to make an exception for

5   that.

6       **MR. KOROLOGOS:**  Your Honor, these are not being

7   offered as claims or instances of infringement, but that

8   doesn't make them irrelevant to the case for other purposes.

9   So the issue is -- we agree with Your Honor ruling to follow,

10  that the only claims in this case will be for infringements

11  that are on that list; but other events that we believe are

12  infringements --

13      **THE COURT:**  What are you -- what are you going to use

14  them for in a way that is not going to hopelessly befuddle the

15  jury about what the infringement claims are?

16      **MR. KOROLOGOS:**  It goes to willfulness, for instance,

17  Your Honor.  If as the Content ID running that they did as part

18  of this discovery, where we gave them reference files and they

19  ran it through their system, that identified a number of other

20  instances.

21      First of all, that happened after February 25; but more

22  importantly, what those show is that despite their knowledge

23  through other takedowns that they agreed to take down and were

24  not challenged with counter-notifications, that they took those

25  videos down, and that's what our claims are about, those works

```
1   are still on the system infringed.  The existence of those
2   works still on the system infringe despite their knowledge, not
3   just that they could find it out.
4           THE COURT:  How many are there?
5           MR. KOROLOGOS:  They acknowledge that they are in
6   there.  It goes to willfulness that they haven't taken those
7   down.
8           THE COURT:  How many are there that you are going to
9   use?
10          MR. KOROLOGOS:  Not very many, Your Honor.
11          THE COURT:  Just put a number on that.
12          MS. ALLEN:  Your Honor, I can answer that question.
13          MR. KOROLOGOS:  Well, for the post I'm not sure you
14  can.  I mean, in terms of --
15          THE COURT:  Just give me a ballpark.
16          MR. KOROLOGOS:  There are 54 instances --
17          THE COURT:  Fifty-four?
18          MR. KOROLOGOS:  -- from which, Your Honor, we would
19  select five.
20          THE COURT:  Five?
21          MR. KOROLOGOS:  Yes.
22          THE COURT:  It doesn't seem unreasonable.  Willfulness
23  is an issue in the case.
24          MS. ALLEN:  Good morning -- good afternoon, Julia
25  Allen for the Defendants.  The problem with this position is as
```

1   Your Honor pointed out, the Plaintiffs have elected to pursue

2   certain works in suit, allow -- and I think this is

3   particularly relevant given the agreement that the parties have

4   reached as to how to proceed on representative works for the

5   infringement claims and then certain URLs for the 1202 claims.

6       And in the context of that agreement, the parties have now

7   exchanged lists of works and lists of URLs.

8       **THE COURT:**  Okay.  They are for infringement claims.

9   There is no doubt about that, but your colleague here is saying

10  it provides evidence of scienter, so to speak, knowledge,

11  awareness; that there is a problem --

12      **MS. ALLEN:**  So --

13      **THE COURT:**  It seems perfectly fine to do that, and I

14  don't think that's going to be particularly problematic for the

15  jury to understand.

16      **MS. ALLEN:**  It is problematic because the assumption

17  underlying that argument is that the Content ID system is

18  identifying infringements, which is not accurate.  It is

19  identifying matches.  And so allowing them to present evidence

20  to --

21      **THE COURT:**  That's for you to do at trial.  I mean, we

22  are just talking about whether they should categorically not be

23  allowed to mention them, not whether you can effectively cross,

24  which would be perfectly fine.  You can cross your witnesses --

25  you can examine your witnesses until the cows come home about

1  what Content ID does and doesn't do.  Why should these five

2  examples not come in before we even hear the evidence?

3       **MS. ALLEN:**  Because these examples will also then lead

4  to confusion and mini trials about whether these particular

5  URLs, that are not the subject of the infringement claims, are,

6  in fact, infringement.

7       So, the parties have endeavored to identify the works and

8  the alleged violations that are the subject of the infringement

9  and the 1202 claims.  And so having these other videos that are

10  not actually the subject of the claim is going to create mini

11  trials on videos that are not actually the subject of either

12  the infringement or the 1202 claims.

13       **THE COURT:**  Well, I can manage that.  Okay.  I'm going

14  to do it provisionally.  You get five; okay.  You are going to

15  have to lay an adequate foundation and this will be subject to

16  what I hear at trial about what Content ID does and everything

17  else; okay.

18       So, I'm not going to exclude them now but consider them

19  yellow flags, so to speak.  Okay.

20       Defendant's motion in limine number 4 is withdrawn by

21  agreement.

22       Defendant's motion in limine number 5, exclude evidence of

23  videos from which ISRCs were removed.

24       I mean, now that we are down to, is it, 22 works?  What

25  are we doing?

1       **MR. KOROLOGOS:**  Six works, Your Honor.

2       **THE COURT:**  No.  For the ISRC, it is six works?

3       **MR. KOROLOGOS:**  Well, we will try in ISRC six works --

4       **THE COURT:**  Okay.

5       **MR. KOROLOGOS:**  -- on a bellwether basis representing.

6       **THE COURT:**  Oh, that's right.

7       **MR. KOROLOGOS:**  -- representing 20 -- I'm sorry -- six

8  violations, alleged violations, representing 22 alleged

9  violations over all that cover ten works.

10      **THE COURT:**  Okay.  And YouTube is going to select

11 three works; right?

12      **MR. KOROLOGOS:**  They have selected and we have

13 selected.

14      **THE COURT:**  Okay.  So is this all moot now, this

15 motion in limine?

16      **MS. ALLEN:**  No it's not, Your Honor.

17      **THE COURT:**  Why is that?

18      **MS. ALLEN:**  So the issue here is Plaintiffs never

19 identified any ISRC violations, any URLs from which an ISRC was

20 removed.  So this motion seeks to exclude them from introducing

21 such evidence at trial.  They never produced it.

22      **THE COURT:**  That's going to be subject -- you are

23 going to have to do that at trial.  I'm not granting summary

24 judgments now; okay.  I'm just not.  You had your chance for

25 that.  I'm just not doing.  That my standing order is crystal

1    clear.  This is not a time to say they have no proof of X.

2    This is just:  Can this evidence come in because it's okay

3    under the Federal Rules of Evidence or is this hearsay?  Is

4    this some other acceptable form of -- that's all.  That's

5    denied.

6       Defendant's motion in limine number 6, exclude Content

7    ID -- look, you had an agreement with YouTube that you wouldn't

8    use it at trial.

9            MR. KOROLOGOS:  It wasn't an agreement not to use it

10   at trial, Your Honor.  It was an agreement not to use it for a

11   specific purpose at trial.  The specific purpose being their

12   knowledge that those were on the system, and we don't intend to

13   offer for that purpose, Your Honor.

14           THE COURT:  What do you intend to use them for?

15           MR. KOROLOGOS:  Again, the willfulness point we talked

16   about earlier, Your Honor.

17           THE COURT:  Okay.

18           MR. KOROLOGOS:  And as the agreement --

19           THE COURT:  I'm not sure that's honoring the spirit of

20   your agreement.

21           MR. KOROLOGOS:  The agreement in paragraph 6 is

22   express to -- and this is Exhibit 311-2 in the docket --

23   neither Google's operation of the system at Plaintiff's request

24   nor the fact of any video matches for the works shall be

25   offered as evidence in the litigation to show that Google in

 1  any way had actual knowledge of alleged infringement of any

 2  work.

 3          THE COURT:  Well, that goes to willfulness.

 4          MR. KOROLOGOS:  And goes on --

 5          THE COURT:  It goes to willfulness.  You have to know

 6  that there has been ongoing infringement to be willful.  I

 7  don't think you are honoring the commitment you made.

 8      Anyway, Google -- I'm sorry, YouTube.

 9          MR. HUANG:  Your Honor, Qifan Huang here.  We

10  completely agree.  In fact, if Your Honor looks at paragraph

11  number 7 of the agreement, the agreement specifically says (as

12  read:) "Google will not know whether Plaintiffs allege that any

13  video matches identified through Content ID are infringements

14  of a Plaintiff's copyrights."

15      So, yes, we completely agree, willfulness goes to show

16  knowledge.  And if Plaintiffs are trying to offer these results

17  for willfulness, that is precisely forbidden by this agreement.

18          THE COURT:  Well, I also remember, I think I may have

19  brokered this deal or helped broker this deal in the discovery

20  thing.  And my recollection was it was to solve a discovery

21  issue with the understanding that it wouldn't be a Judo move

22  against YouTube.  So motion -- that one is granted.

23      Defendant's motion in limine number 7, to exclude

24  YouTube's financial condition.  You know, a little bit is fine.

25  You know, I don't mind.  It is perfectly fine to say they are

1   an X billion-dollar a year corporation or something like that.

2   How much farther were you planning to go past that?

3         **MR. WALDRON:**  Your Honor, I don't think that we can

4   make a definitive representation right now; but that is exactly

5   the sort of evidence that we would be likely to introduce.

6         **THE COURT:**  Yeah.  I mean, you don't have to talk

7   about how they -- they have more money than 99 percent of the

8   countries in the world or anything like that, but just one or

9   two numbers is perfectly fine.

10        **MR. WALDRON:**  Sure.  Thank you, Your Honor.

11        **THE COURT:**  That's -- so that's denied.  With that

12  understanding, motion in limine number 7 is denied.

13        You know, number 8, preclude litigation.  Okay.  As a

14  principle, sure.  But, you know, they are interlocutory orders.

15  So to the extent I said there are fact disputes, so those would

16  go to trial.  I don't -- I don't have any trouble with

17  re-visiting, you know, we had an image in the summary judgment

18  in the AA and the A&P and all these agreements and now we have

19  live witnesses who are going to testify about it, I'm not going

20  to stop them.

21        **MR. VAN NEST:**  That's right, Your Honor.  And I just

22  want to make sure that we don't re-litigate the one key point

23  that's already been established by your order, and that was

24  that this paragraph 7 on creative control is a condition -- is

25  not a condition --

1          **THE COURT:**  A covenant.

2          **MR. VAN NEST:**  Right.

3          **THE COURT:**  No.  That's my ruling.  That's not an

4     evidentiary -- that interpretation is up to me and that has

5     been my ruling.  So -- and that's based on New York State law.

6     It's based on the words in the contract, and I don't think

7     there's anything that -- I mean, if you want to have -- what do

8     you -- I mean, let me just speak -- speak off the top of my

9     head -- it's been a long day for me -- speak off the top of my

10    head.

11        I don't want Schneider coming in and saying, "This is not

12    a condition precedent.  This is a covenant."  She is not in the

13    position to do that, okay, or vice versa.

14         **MR. KOROLOGOS:**  She is not going to say that.

15         **THE COURT:**  Okay.  That's good.  I don't want her to

16    say, "I never understood this to be just an agreement.  I

17    thought it was" -- you can't do any of that.  All right.  But

18    the rest of it is fine.  I let them have this.  I didn't let

19    them have it.  I didn't know they did X.  They hoodwinked me.

20    I had bad managers.  Whatever you want to do is fine.

21         **MR. KOROLOGOS:**  It has gotten a little broader in the

22    past few days, Your Honor.  There was a supplemental --

23         **THE COURT:**  Broader?  Yeah, I saw that.

24         **MR. KOROLOGOS:**  -- motion put in and we put a response

25    in on Saturday or Sunday.  I lose track of the days.

1    **THE COURT:**  Well, that's all for trial.

2    **MR. KOROLOGOS:**  Well, it is but I think, Your Honor,

3    that it --

4    **THE COURT:**  Before you move on, let me just interrupt

5    for one second.  I just want to be clear about that, the

6    covenant versus condition precedent, A, not a jury issue.  It's

7    a legal issue for the Court.  I have ruled on it and I don't

8    want any testimony about that.

9    **MR. KOROLOGOS:**  There will not be, Your Honor.

10   **THE COURT:**  No.

11   **MR. KOROLOGOS:**  But their motion goes a lot broader

12   than that.

13   **THE COURT:**  Well, I'm denying the rest of it.  If you

14   want to have her come in and say, "I never signed this" or

15   whatever -- I mean, I'm just hypothesizing -- that's perfectly

16   fine.

17   **MR. KOROLOGOS:**  It's even better than that.

18   **THE COURT:**  It's even better?

19   **MR. KOROLOGOS:**  Yes.  Because last week they produced

20   new evidence.  There is one page that shows up at docket 343-6,

21   which they say is the missing assignment that Your Honor was

22   looking for in the summary judgment opinion.

23   You may recall Mr. Coleman said that he had assigned the

24   administration agreement from artist share to Modern Works

25   which is a necessary predicate for them to have the license

1   defense because Modern Works is the entity that entered into

2   the PLA with Google.   They say they produced this and they show

3   it to us.   They call it "the assignment" and they call it the

4   assignment that Your Honor said was missing.

5       Turns out that that assignment could not have been the

6   assignment of the administration agreement.   It predates the

7   administration agreement.   It's before it.   And they are trying

8   to exclude Ms. Schneider from saying she didn't know anything

9   about any assignment.

10      **THE COURT:**  She can.   That's fine.   She can say

11  whatever she wants about this web of contracts.   I mean, that's

12  perfectly fine.

13      **MR. KOROLOGOS:**  Okay, but in light of the new

14  evidence, we don't believe there is any basis to argue that

15  there is a license at all.

16      **THE COURT:**  I haven't heard any new evidence.   We have

17  got to hear the testimony first; okay.   You can make a motion.

18  You know, you can do something at the end of evidence, at the

19  close of their case, before it goes to the jury, whatever you

20  want to do; but I haven't heard -- I have got one piece of

21  paper over the transit.   I'm not going to start making any

22  calls about the evidence.   You have to do that at trial.   All

23  right.

24      Okay.   I think that takes care of all of the motions in

25  limine and the Dauberts.   And I think that's it.   Anything else

1    for today?

2              MR. VAN NEST:  I think we would use -- could use some

3    guidance, Your Honor.

4              THE COURT:  Sure.

5              MR. VAN NEST:  What we see coming over the -- and

6    maybe your ruling on our motion in limine 7 or 6 deals with it,

7    but they have designated a ton of testimony, as I mentioned a

8    few minutes ago, about who gets Content ID and who doesn't.

9         Seems to me that should clearly be out under what we have

10   been talking about because we are not trying a safe harbor

11   anymore.  We are not trying a case about who gets or doesn't

12   get Content ID.

13        And so I think this has now been established that that is

14   not going to be part of the evidence, but we keep getting

15   designations from depositions and all this sort of stuff from

16   multiple witnesses about who gets or doesn't get Content ID and

17   what are the requirements for getting it.

18        It seems to me based on what you have said and the rulings

19   so far and the comments we have made about cutting this case

20   down, that's clearly out; and we shouldn't have to worry

21   about --

22             THE COURT:  I'm not going to say that.  Look, they

23   have got their 12 hours.  They can use their time however they

24   choose.  If they want to talk about Content ID for 11 of the

25   12, I don't see how they are going to win their infringement

1    claims, but it's up to them.  Okay.

2            **MR. KOROLOGOS:**  Thank you, Your Honor.

3            **MR. VAN NEST:**  Very well.  We will see you Wednesday.

4            **THE COURT:**  Thursday.

5            **MR. KOROLOGOS:**  Your Honor, said the 7th.

6            **THE COURT:**  Oh, no, no.  You are getting the responses

7    on the 7th.  You are coming in on the 8th, June 8th.

8            **MR. VAN NEST:**  Thank you.  I'm glad I asked.

9            **THE COURT:**  Yeah, I'm glad you did.  You are going to

10   get the responses on the 7th.  Then you are going to come in on

11   Thursday, the 8th, at 2 p.m.  Just come back here at 2 p.m.

12       Oh, and by the way, I put this in the first pretrial

13   order.  I'm not sure I mentioned it.  So, you are going to have

14   a chance to give a little mini opening.  All right.  And have

15   you done one of those before for jury selection?

16           **MR. KOROLOGOS:**  Yes, Your Honor.

17           **THE COURT:**  Mr. Van Nest?

18           **MR. VAN NEST:**  Sure.

19           **THE COURT:**  Okay.  So non-argumentative, just very

20   factual; three minutes tops, okay, which is actually a long

21   time.  Introduce yourself.  Say whatever you want to say.  But

22   it's good to just kind of let each other know ahead of time so

23   that we don't have a problem.  You are both okay, more or less,

24   with what the other side is saying.

25           **MR. KOROLOGOS:**  We will do that, Your Honor.

1          **THE COURT:**  You don't have to do a verbatim script or

2  anything like that.  Just say "here are the points I'm going to

3  hit;" okay.  Just do that before Monday, this coming Monday.

4          **MR. VAN NEST:**  We shall.

5          **THE COURT:**  This coming Monday.  All right.  Good.

6  Thanks a lot.  We will see you on Thursday.

7          **THE CLERK:**  Court is in recess.

8              (Proceedings adjourned at 2:18 p.m.)

9                      ---oOo---

1
2
3                    **CERTIFICATE OF REPORTER**

4          I certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6

7    DATE:    June 6, 2023

8

9

10

11    _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
            United States District Court - Official Reporter
13